**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION, | ) ) ) | C.A. No. 20-613-LPS |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ROSS INTELLIGENCE INC., | ) | |
| | ) | |
| Defendants. | ) | |

**ROSS INTELLIGENCE, INC.'S OPENING BRIEF
IN SUPPORT OF ITS MOTION TO DISMISS UNDER RULE 12(b)(6)**

OF COUNSEL:

Gabriel M. Ramsey
Kayvan M. Ghaffari
Crowell & Moring LLP
3 Embarcadero Ctr., 26th Floor
San Francisco, CA 94111
Tel: (415) 986-2800

Mark A. Klapow
Joshua M. Rychlinski
Crowell & Moring LLP
1001 Pennsylvania Avenue NW
Washington, DC 20004
Tel: (202) 624-2500

Dated: July 13, 2020
6798002/50241

David E. Moore (#3983)
Stephanie E. O'Byrne (#4446)
Tracey E. Timlin (#6469)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
sobyrne@potteranderson.com
ttimlin@potteranderson.com

*Attorneys for Defendant
ROSS Intelligence, Inc.*

## TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................................... 1

II.    NATURE AND STAGE OF THE PROCEEDINGS ........................................... 3

III.   SUMMARY OF ARGUMENT ............................................................................. 3

IV.    STATEMENT OF FACTS ..................................................................................... 3

       A.  Plaintiffs Thomson Reuters and West Publishing ....................................... 3

       B.  ROSS Intelligence, Inc................................................................................. 4

       C.  Plaintiffs' Prior Lawsuit Against LegalEase................................................ 5

V.     LEGAL STANDARD............................................................................................ 5

VI.    PLAINTIFFS FAIL TO STATE A CLAIM FOR COPYRIGHT INFRINGEMENT ....... 6

       A.  Any Alleged Copyright In Plaintiffs' West Key Number System Has
           Expired......................................................................................................... 6

       B.  Plaintiffs Do Not Allege Any Copying By ROSS ......................................... 7

       C.  Plaintiffs Fail To Specify The Works Owned By Plaintiffs That Are The
           Subject Of The Copyright Claim .................................................................. 8

       D.  Plaintiffs Identify No Accused Product Or Infringing Material .................... 9

       E.  The Westlaw Content Are Not Protected Elements Under The Copyright
           Act................................................................................................................. 9

           1.  Plaintiffs' West Headnotes Are Not Original Or Creative ..................... 9

           2.  Plaintiffs' West Key Number System Is An Unprotectable System And
               Method Of Operation Comprised Of Elements That Are Not Original
               Or Creative.......................................................................................... 11

VII.   PLAINTIFFS' TORTIOUS INTERFERENCE CLAIM SHOULD BE DISMISSED .... 14

       A.  Plaintiffs' Tortious Interference Claim Is Time-Barred Under The
           Relevant California Statute Of Limitations ................................................ 14

           1.  Delaware's Borrowing Statute Requires Application Of California's
               Statute Of Limitations......................................................................... 14

               a.  Plaintiffs' Tortious Interference Claim Arose in California .......... 15

2.   Under California Law, Plaintiffs' Action is Time Barred. ................................... 19

B.  Plaintiffs Tortious Interference Claim Fails Under California Law. .......................... 19

VIII.   CONCLUSION.............................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Abselet v. Hudson Labor Sols., Inc.*,
    2020 U.S. App. LEXIS 3588 (9th Cir. Feb. 4, 2020) ............................................................19

*Amsterdam v. Triangle Publ'ns., Inc.*,
    189 F.2d 104 (3d Cir. 1951).................................................................................................11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).........................................................................................................5-6

*Baker v. Selden*,
    101 U.S. 99 (1879)............................................................................................................11

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..........................................................................................5, 6, 14, 20

*Bell Helicopter Textron, Inc. v. Arteaga*,
    113 A.3d 1045 (Del. 2015) ................................................................................................18

*Benihana of Tokoyo, Inc. v. Benihana, Inc.*,
    828 F. Supp. 2d 720 (D. Del. 2011)....................................................................................15

*Bos. Sci. Corp. v. Nevro Corp.*,
    415 F. Supp. 3d 482 (D. Del. 2019).....................................................................................20

*Bulldog New York LLC v. Pepsico, Inc.*,
    8 F. Supp. 3d 152 (D. Conn. 2014)......................................................................................19

*CAE Inc. v. Gulfstream Aero. Corp.*,
    203 F. Supp. 3d 447 (D. Del. 2016) ...............................................................................17, 18

*Calixto v. Watson Bowman Acme Corp.*,
    637 F. Supp. 2d 1064 (S.D. Fla. 2009) ................................................................................18

*Corning Inc. v. SRU Biosystems, LLC*,
    292 F. Supp. 2d 583 (D. Del. 2003).....................................................................................18

*DC Comics v. Pacific Pictures Corp.*,
    938 F. Supp. 2d 941 (C.D. Cal. 2013) .................................................................................19

*Deutsch v. Turner Corp.*,
    324 F.3d 692 (9th Cir. 2003) ..............................................................................................18

*Educ. Testing Servs. v. Katzman*,
    793 F.2d 533 (3d Cir. 1986)................................................................13

*Eureka Res., LLC v. Range Res. Appalachia, LLC*,
    62 A.3d 1233 (Del. Super. 2012) ......................................................17

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
    499 U.S. 340 (1991)...............................................................6, 9, 12

*Furnari v. Wallpang, Inc.*,
    2014 Del. Super. LEXIS 199 (Del. Super. Apr. 16, 2014) ....................18

*Georgia v. Public.Resource.Org Inc.*,
    140 S. Ct. 1498 (2020)...............................................................10, 11

*Grynberg v. Total Compagnie Francaise Des Petroles*,
    891 F. Supp. 2d 663 (D. Del. 2012)................................................14, 15

*Harper & Row Publishers, Inc. v. Nation Enterprises*,
    471 U.S. 539 (1985).......................................................................10

*Idenix Pharm., Inc. v. Gilead Scis., Inc.*,
    2014 U.S. Dist. LEXIS 118789 (D. Del. Aug. 25, 2014) .........................9

*Impact Applications, Inc. v. CNS Vital Signs*,
    2013 U.S. Dist. LEXIS 158261 (W.D. Pa. Sept. 26, 2013) ......................8

*Int'l Bus. Machs. Corp. v. Comdisco, Inc.*,
    1991 Del. Super. LEXIS 453 (Del. Super. Dec. 4, 1991) ......................16

*Integral Res. (PVT) Ltd. v. Istil Grp., Inc.*,
    2004 Bankr. LEXIS 1859 (Bankr. D. Del. Dec. 2, 2004)...................17, 18

*Levey v. Brownstone Inv. Grp., LLC*,
    590 F. App'x 132 (3d Cir. 2014) ....................................................6, 7

*Marvullo v. Gruner & Jarh*,
    105 F. Supp. 2d 225 (S.D.N.Y. 2000)..................................................7

*Matthew Bender & Co.*,
    158 F.3d 674 (2d Cir. 1998)..............................................................11

*Matthew Bender & Co. v. W. Publ'g Co.*,
    1997 U.S. Dist. LEXIS 6915 (S.D.N.Y. May 19, 1997)........................10

*Midway Mfg. Co. v. Bandai-America, Inc.*,
    546 F. Supp. 125 (D. N.J. 1982) ........................................................7

*MultiCraft Imports, Inc. v. Mariposa USA, Inc.*,
2017 WL 5664996 (C.D. Cal. Sept. 14, 2017) ........................................................8

*Network Managing Sols., LLC v. AT&T Inc.*,
2017 U.S. Dist. LEXIS 19274 (D. Del. Feb. 3, 2017) ............................................7

*Pac. Gas & Elec. Co. v. Bear Stearns & Co.*,
50 Cal.3d 1118 (1990) ...........................................................................................20

*Riordan v. H.J. Heinz Co.*,
2009 U.S. Dist. LEXIS 114165 (W.D. Pa. Dec. 8, 2009) ......................................8

*Salt Optics, Inc. v. Jand, Inc.*,
2010 U.S. Dist. LEXIS 131388 (C.D. Cal. Nov. 19, 2010) ...................................8

*Sony Corp. of America v. Universal City Studios, Inc.*,
464 U.S. 417 (1984) ...............................................................................................10

*Southco, Inc. v. Kanebridge Corp.*,
390 F.3d 276 (3d Cir. 2004) ..................................................................................14

*Square 1 Bank v. Lo*,
2014 U.S. Dist. LEXIS 117524 (N.D. Cal. Aug. 22, 2014) ..................................19

*In re Stampone v. Stahl*,
2005 U.S. Dist. LEXIS 48534 (D.N.J. July 19, 2005) ...........................................8

*Tegg Corp v. Beckstrom Elec. Co.*,
2008 U.S. Dist. LEXIS 52184 (W.D. Pa. July 1, 2008) .........................................8

*TexasLDPC Inc. v. Broadcom Inc.*,
2020 U.S. Dist. LEXIS 46773 (D. Del. Mar. 18, 2020) .....................................6, 9

*Travel Syndication Tech., LLC v. Fuzebox, LLC*,
2012 U.S. Dist. LEXIS 73117 (D. Del. May 25, 2012)....................................19, 20

*Travelers Indem. Co. v. Lake*,
594 A.2d 38 (Del. 1991) ........................................................................................15

*West Pub. Co. v. Edward Thompson Co.*,
169 F. 833 (E.D.N.Y. 1909).....................................................................................7

*West Publishing Corp. v. LegalEase Solutions, LLC*,
Case No. 18-cv-01445-DSD (D. Minn. May 25, 2018)...........................................5

*Wheaton v. Peters*,
33 U.S. 591 (1834).............................................................................................10, 11

**Statutes & Rules**

10 Del. C. § 8121 ...............................................................................................15

17 U.S.C. § 102(b) .........................................................................................9, 12

17 U.S.C. § 304(a) ...............................................................................................6

Fed. R. Civ. P. 12(b)(6).....................................................................................1, 3

D. Del. L.R. 3.1(b)(3) ...........................................................................................5

Restatement (Second) Conflict of Laws § 6 ....................................................15, 18

Restatement (Second) Conflict of Laws § 145 ...........................................15, 17, 18

## I.    <u>INTRODUCTION</u>

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant ROSS Intelligence, Inc., ("ROSS") moves to dismiss Plaintiffs Thomson Reuters Enterprise Centre GmbH and West Publishing Corporation's complaint for copyright infringement and tortious interference (D.I. 1). Plaintiffs' copyright claim does not plausibly allege copyrightable material or the copying of such material. Plaintiffs' tortious interference claim is time barred and does not plausibly allege the elements of that claim. Thus, the Complaint should be dismissed.

This case is problematic. As the entire legal industry knows, Plaintiffs operate a large database of public domain judicial opinions, statutes, and regulations: the bedrock of United States law. None of this is protected by copyright; it is all public. Indeed, public interest demands public access to read, review, analyze and engage in discourse regarding the law.

Plaintiffs' business model, however, is based on the improper control and monetization of key public legal texts on which our democracy is based. Knowing full well that judicial opinions are in the public domain, Plaintiffs developed a roundabout method to attempt to copyright those public texts through headnotes and a key number system. A cursory glance at either feature confirms they are neither original nor creative; quite the opposite, they are intuitive, dictated by established modes of legal analysis, and antiquated. They are based on the sweat of contract attorneys with one job: read judicial opinions and copy key legal rules and concepts. The headnotes closely paraphrase from, or copy directly, legal opinions or other law. The key numbers simply reflect an alphabetical or sequential listing of legal concepts gleaned from the headnotes. Not only are these increasingly unnecessary to the modern practice of law, but Plaintiffs' model of using them to monopolize public texts is a misuse of copyright law and must be stopped.

ROSS is a modern legal research company. Instead of relying on lists of concepts

embodied in legal texts, such as Plaintiffs' headnotes and keynotes, ROSS has developed a powerful natural language search engine based on artificial intelligence. Its goals are simple: enable the public to find relevant legal texts based on the language used in those texts and, thereby, democratize legal research. ROSS recognizes that public policy demands public participation in the legal system. By training its AI system solely based on public legal text, ROSS provides a modern, state-of-the-art search experience that makes the law available to the public in plain English – at a fraction of the cost of Westlaw.

To develop its natural language search engine, ROSS trains its AI on the actual text of judicial opinions. Nothing more. Indeed, to do otherwise would be antithetical to ROSS's technical strategy. ROSS deliberately chose to avoid methods requiring continuous and significant human labor, such as classification systems like Westlaw's number system or headnotes. The ROSS system seeks to find the natural language that courts use in their opinions, *not* some abstracted legal concepts or any content other than the opinions themselves. Indeed, given its approach, ROSS would have no use for Plaintiff's headnotes or numbering system.

The Complaint *does not allege any facts* evidencing that ROSS copied the headnotes or number system. ROSS did not copy either and it makes absolutely no sense that it would do so. Instead, Plaintiffs' Complaint imagines, purely on "information and belief," that in hiring a third-party legal research firm to answer legal questions to inform its AI, ROSS must have clandestinely instructed that party to leverage Plaintiffs' headnotes and number system in knowing violation of Plaintiffs' license agreement purporting to prohibit competition. Absolutely no facts are alleged to plausibly establish any of this.

Although nascent, ROSS's model threatens Plaintiffs' monopoly over access to public legal texts. Obviously threatened, Plaintiffs have moved aggressively to destroy ROSS before it

gains further traction. Further illustrative of this anticompetitive purpose, Plaintiffs reveal in their Complaint that their standard license prohibits anyone who merely reads public legal text on Westlaw from competing with Westlaw. This is not just wrong; it is dangerous.

ROSS is making the law easily and inexpensively available to the public. It is doing so without copying, or inducing others to copy, any material of Plaintiffs. Because Plaintiffs have failed to allege any facts evidencing otherwise, ROSS respectfully requests this Court dismiss Plaintiffs' Complaint.

## II. NATURE AND STAGE OF THE PROCEEDINGS

On May 6, 2020, Plaintiffs filed the Complaint alleging copyright infringement and tortious interference, purportedly stemming from ROSS's creation of a legal research tool. ROSS now files this Rule 12(b)(6) motion to dismiss all claims set forth in the Complaint.

## III. SUMMARY OF ARGUMENT

1.      Plaintiffs fail to state an infringement claim under the Copyright Act because the Complaint does not allege copyrightable material or any copying of any protectable material.

2.      Plaintiffs' tortious interference claim fails as the statute of limitations has run under California law, which applies under Delaware's "most significant relationship" test and pursuant to Delaware's Borrowing Statute.

3.      Even assuming the statute of limitations does not apply, Plaintiffs' tortious interference claim fails because Plaintiffs fail to allege that ROSS knew of any of Plaintiffs' contractual terms or that ROSS acted with the intention to induce breach.

## IV. STATEMENT OF FACTS

### A.      Plaintiffs Thomson Reuters and West Publishing

Plaintiffs own and operate Westlaw, an online legal research platform. D.I. 1, ¶¶ 1, 11. Westlaw contains a database offering users access to various legal content, including public

domain federal and state case law and statutes. *Id.,* ¶ 15. Plaintiffs contend that Westlaw makes legal research easier through the use of West Headnotes and the West Key Number System ("headnotes" and "number system"), which reflect the "concepts" in the underlying law. *Id.* The number system was created at the inception of West Publishing. *Id*., ¶ 1.

The Plaintiffs' number system lists legal topics alphabetically and, within each topic, subtopics defined by the underlying legal text and concepts commonly deployed in legal analysis and reasoning. *Id.*, ¶¶ 12-13. For example, the topic "Abandoned and Lost Property" contains subtopics, including "Nature and Elements," "evidence and questions for jury," and "operation and effect." *Id.,* ¶ 13. Plaintiffs assign sequential numbers to the topics and subtopics, in the order of their appearance in the listing. *Id.*, ¶¶ 12-15.

The headnotes are nothing more than legal topics or concepts taken directly from judicial opinions. *Id.*, ¶¶ 14, 15. The topics and concepts in the number system align with the headnotes. *Id.*, ¶ 14.

Each Westlaw subscriber must agree to West's Subscriber Agreements ("Agreement"). *Id.*, ¶ 18. The Agreement prohibits subscribers from copying, downloading, publishing, transferring, distributing, or disseminating any content on Westlaw, including judicial opinions, for any purpose, except as expressly permitted by Plaintiffs. *Id.* The Agreement also prevents subscribers from creating any competing products. *Id.*

## B.    ROSS Intelligence, Inc.

ROSS is an innovative technology company offering legal research tools and services powered by its natural language search algorithms. *Id.*, ¶¶ 24-26. Similar to Westlaw, LEXIS, or Public Access to Court Electronic Records ("PACER"), and other services, ROSS offers users access to public domain case law, statutes, and regulations across various practice areas. *Id.*, ¶¶ 25, 27. ROSS's algorithm searches and generates results from this public information. *Id.*, ¶ 26.

4

According to the Complaint, ROSS contracted with LegalEase Solutions, LLC ("LegalEase") to provide legal research and writing services. *Id.*, ¶ 29. LegalEase was a Westlaw Subscriber since 2008, well before ROSS's founding. *Id.* Plaintiffs allege that LegalEase obtained content from Westlaw purportedly for use in ROSS's platform, and allegedly in violation of LegalEase's agreement with Plaintiff West. *Id.*, ¶¶ 34-36.

### C.     Plaintiffs' Prior Lawsuit Against LegalEase

On January 4, 2018, Plaintiff West terminated LegalEase's Service Agreement. *Id.*, ¶ 36. West then sued LegalEase for breach of contract. *See West Publishing Corp. v. LegalEase Solutions, LLC*, Case No. 18-cv-01445-DSD (D. Minn. May 25, 2018) (the "LegalEase Case"). In that litigation, West served a subpoena on ROSS and moved to compel the production of documents concerning ROSS's use of and contract with LegalEase to provide legal research and writing services. *See* LegalEase Case, D.I. 62. Even before that motion, ROSS had produced nearly 40,000 documents concerning LegalEase and ROSS's development of its legal research algorithms and platform. *See id.,* D.I. 74 at 2. West filed a consent judgment on May 4, 2020, in that matter. *Id.* at D.I. 118. That court entered it on May 5 (*id. at* D.I. 119), the day before Plaintiffs filed the present case.[1]

## V.     LEGAL STANDARD

A complaint must include sufficient allegations "to give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (citations omitted). The plaintiff is obligated to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* A complaint must "show" an entitlement to relief through factual allegations. *Ashcroft v. Iqbal*, 556

---

[1] Plaintiffs omitted reference of this related litigation in their civil cover sheet, which was required by Local Rule 3.1(b)(3). *See* D. Del. LR 3.1(b)(3).

U.S. 662, 678-79 (2009). District courts are encouraged to identify deficiencies in a complaint at the pleading stage – "the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558 (internal citations omitted).

## VI.   PLAINTIFFS FAIL TO STATE A CLAIM FOR COPYRIGHT INFRINGEMENT

To establish copyright infringement, Plaintiffs must prove (1) ownership of a valid copyright, and (2) copying of protected elements of the work that are original. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). "The mere fact that a work is copyrighted does not mean every element of the work may be protected." *Id.* at 348. Further, Plaintiffs must allege facts from which it can be inferred that copying *actually* occurred and it is insufficient to allege only that two works "share a common purpose or function." *Levey v. Brownstone Inv. Grp., LLC*, 590 F. App'x 132, 136-37 (3d Cir. 2014). Where the court is "not provided with any detail" about the allegedly infringing material, a copyright claim must be dismissed. *Id.* Thus, Plaintiffs must allege some facts showing copying of *protectable* elements. *See TexasLDPC Inc. v. Broadcom Inc.*, 2020 U.S. Dist. LEXIS 46773, *3-4 (D. Del. Mar. 18, 2020) (dismissing claim where plaintiff failed to identify facts supporting inference of copying of protectable elements). Plaintiffs' allegations show neither copying of protectable material, nor copying generally.

### A.   Any Alleged Copyright In Plaintiffs' West Key Number System Has Expired

Plaintiffs' Complaint confirms the Key Number System is no longer protected by copyright and, therefore, cannot form the basis of a claim. Works created and copyrighted prior to January 1, 1978 are protected for 95 years from the date the copyright was originally secured (95 years from the earlier of registration or publication). 17 U.S.C. § 304(a). The 95-year period is divided into an initial 28 year term and a 67 year renewal term. *Id.* Thus, any work registered for copyright or published prior to January 1, 1925 are now in the public domain.

Plaintiffs' opening allegation states that the Key Number System has existed since West's

inception in 1879. D.I. 1, ¶ 1; *see also W. Publ. Co. v. Edward Thompson Co.*, 169 F. 833, 839 (E.D.N.Y. 1909) ("West Publishing Company [ ] had been formed in 1879"). Thus, the Complaint itself invalidates Plaintiffs' copyright claim. Therefore, any claim of infringement based upon the system comprising the Key Number System must be dismissed with prejudice.

## B.    Plaintiffs Do Not Allege Any Copying By ROSS

Plaintiffs' copyright infringement claim fails because Plaintiff does not plead facts showing direct copying, or facts about the accused product that could support an inference of infringement. *See Levey*, 590 F. App'x at 136-37 (plaintiff must plead facts demonstrating copying); *Midway Mfg. Co. v. Bandai-America, Inc.*, 546 F. Supp. 125, 146 (D. N.J. 1982) (stating that plaintiff has the burden of proving substantial similarity); *see also Marvullo v. Gruner & Jarh*, 105 F. Supp. 2d 225, 230 (S.D.N.Y. 2000) ("Broad sweeping allegations" of infringement do not comply with Rule 8).

Nor can Plaintiffs claim here that the actual evidence of copying is not in their control or otherwise unavailable to them. Plaintiffs admittedly accessed ROSS's website and ran searches in natural language. D.I. 1, ¶ 26. Plaintiffs' Complaint concludes that ROSS "clear[ly]" infringed Plaintiffs' copyrights (*Id.*, ¶ 37). But Plaintiffs do not offer a single specific instance of copying. Instead, Plaintiffs litter the Complaint with unsubstantiated allegations "upon information and belief."[2] *See, e.g., Id.* at ¶¶ 24-29, 32-35, 38-39; *see also Network Managing Sols., LLC v. AT&T Inc.*, 2017 U.S. Dist. LEXIS 19274, at *3-4 (D. Del. Feb. 3, 2017) (dismissing claims based on "information and belief" where facts are public and available to the plaintiff). Stripped of its conclusory allegations (e.g., D.I. 1, ¶ 37), the Complaint offers no facts (from Plaintiffs' investigation or otherwise) purporting to show that ROSS copied any material from the

---

[2] Indeed, this is particularly telling given that Plaintiffs fail to mention in its Complaint the separate litigation or discuss any of the nearly 40,000 documents ROSS produced to West Publishing pursuant to a subpoena.

"Westlaw Content," and it should be dismissed. *See, e.g., Riordan v. H.J. Heinz Co.*, 2009 U.S. Dist. LEXIS 114165, at *42 (W.D. Pa. Dec. 8, 2009) (dismissing copyright claim in part because plaintiff failed to allege defendant copied any purportedly protectable materials); *In re Stampone v. Stahl*, 2005 U.S. Dist. LEXIS 48534, at *6 (D.N.J. July 19, 2005) (dismissing copyright claim that fails to allege with any specificity acts of infringement).

C.    **Plaintiffs Fail To Specify The Works Owned By Plaintiffs That Are The Subject Of The Copyright Claim**

It is black letter law that a copyright plaintiff must specify the works that are the subject of a copyright claim or face dismissal. *Impact Applications, Inc. v. CNS Vital Signs*, 2013 U.S. Dist. LEXIS 158261, at *13 (W.D. Pa. Sept. 26, 2013) ("Plaintiff merely lists its copyrights registrations which does not permit the Court to discern from the pleadings which 'components of the [copyrighted works] are protected.'"); *MultiCraft Imports, Inc. v. Mariposa USA, Inc.*, 2017 WL 5664996, at *3 (C.D. Cal. Sept. 14, 2017) (granting motion to dismiss where plaintiff's complaint only contained a "vague allegation[] that it owns copyrights in the content of its website and product catalog").

Ignoring this, Plaintiffs' Complaint lumps together Westlaw's headnotes and number system as "Westlaw Content" and identifies hundreds of copyright registrations. Those registrations appear to cover the entire "Westlaw" database, including judicial "opinions, synopses, syllabi, or case law paragraphs." *See* D.I. 1-1 at 3. Plaintiffs make no effort, however, to allege what particular protectable elements among this massive agglomeration are allegedly infringed. *See Tegg Corp v. Beckstrom Elec. Co.*, 2008 U.S. Dist. LEXIS 52184, at *21-22 (W.D. Pa. July 1, 2008) (dismissing copyright claim where plaintiffs did not identify the protectable elements in registered copyrights); *Salt Optics, Inc. v. Jand, Inc.*, 2010 U.S. Dist. LEXIS 131388, at *20-21 (C.D. Cal. Nov. 19, 2010) (dismissing complaint which alleged only

broad ownership of all "text, photograph(s), selection, arrangement and compilation" of the plaintiff's website and catalog). This deficiency is exacerbated because Plaintiffs' copyrights assert ownership of materials that are not protectable as a matter of law. *See e.g.*, D.I. 1-1 at 3 (claiming copyright over "opinions, synopses, syllabi, or case law paragraphs").

### D.    Plaintiffs Identify No Accused Product Or Infringing Material

The Complaint fails for an additional reason: Plaintiffs do not identify the accused product in which content is allegedly copied. While there are passing vague references to a "legal research product," (D.I. 1, ¶¶ 29, 33) there are no facts specifying what product is allegedly infringing the "Westlaw Content." Without more, ROSS has no notice of its purportedly actionable conduct and is left guessing whether the allegedly infringing product is the web interface that displays cases, the use of bold letters hitting on search terms, some form of categorization of cases or something else. Copyright claims that are essentially a guess, like Plaintiffs' claims here, should be dismissed. *See TexasLDPC Inc.*, 2020 U.S. Dist. LEXIS 46773, at *4 (dismissing copyright claim where plaintiff fails to identify facts about the accused software that is purportedly infringing, making it "impossible to compare" any purported infringement); *Idenix Pharm., Inc. v. Gilead Scis., Inc.*, 2014 U.S. Dist. LEXIS 118789, at *25 (D. Del. Aug. 25, 2014) (dismissing counterclaims that do not "hint" at the nature of invalidity arguments because "Twombly do[es] not sanction the need for such guesswork").

### E.    The Westlaw Content Are Not Protected Elements Under The Copyright Act

#### 1.    Plaintiffs' West Headnotes Are Not Original Or Creative

Copyright only protects the expression of an idea, not the idea itself. 17 U.S.C. § 102(b). The claimed work must be original and creative. *Feist*, 499 U.S. at 361; 1 Nimmer on Copyright § 2.05[B] (2017) ("[C]opyrightable works require two ingredients. The first is originality, which signifies that the work originates in the author rather than having been copied from past sources.

9

The second is creativity, signifying that the work has a spark that goes beyond the banal or trivial."). Westlaw's headnotes are neither. No one can claim ownership of any government edict, including judicial opinions and state or federal laws. *See Wheaton v. Peters*, 33 U.S. 591, 668 (1834) (establishing the government edicts doctrine); *Georgia v. Public.Resource.Org Inc.*, 140 S. Ct. 1498 (2020) (extending the government edicts doctrine to annotations of state laws); *Matthew Bender & Co. v. W. Publ'g Co.*, 1997 U.S. Dist. LEXIS 6915, at *4 (S.D.N.Y. May 19, 1997) (stating West has no copyright in judicial decisions; it was permissible for copying party to scan "up to 75% of West cases into its system"), *aff'd*, 158 F.3d 674 (2d Cir. 1998). But that is what Plaintiffs are attempting to do.

The Complaint concedes the West headnotes are recitations of rules and concepts copied from judicial opinions. D.I. 1, ¶ 14 ("West Headnotes [ ] describe the key concepts discussed in the case"). These are not protected under the government edict doctrine. For example, Plaintiffs assert a copyright in headnote 8 of *Harper & Row Publishers*, which states: "Every commercial use of copyrighted material is presumptively an unfair exploitation of the monopoly privilege that belongs to the owner of the copyright." *Id.,* ¶ 15. Plaintiffs copied this headnote *verbatim* from Justice O'Connor's opinion, which in turn directly quoted *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 451 (1984). An examination of the other headnotes reveals the same. And the ordering of headnotes simply corresponds to the order of quotations and ideas in the opinion itself. *See e.g. Harper & Row, Publrs., Inc. v. Nation Enters.*, 471 U.S. 539 (1985) (headnotes 1 through 12 correspond to ordering of quotations and ideas in the opinion). Plaintiffs have not alleged (other than conclusory statements) how or why headnote 8 or any others are creative or original when they are non-protectable recitations or annotations of judicial opinions or federal or state law stated in the order of appearance in the opinions. *See Wheaton*, 33 U.S.

668; *Public.Resource.Org Inc.*, 140 S. Ct. 1498. Even if Plaintiffs could show slight variations from the judicial text, such "obvious and typical" choices would not be given copyright protection, as doing so would "give West an effective monopoly over the commercial publication of case reports." *Matthew Bender & Co.*, 158 F.3d at 687-88.

Thus, Plaintiffs' claim should be dismissed because the headnotes are not copyrightable. *See e.g.*, *Amsterdam v. Triangle Publ'ns., Inc.*, 189 F.2d 104, 106 (3d Cir. 1951) (affirming district court's dismissal of copyright claim where plaintiff's map of Delaware was not copyrightable because "the location of county lines, township lines and municipal lines is information" contained in a government publication that is not subject to copyright). If held otherwise, recasting legal principles as "headnotes" would allow Plaintiffs to circumvent the government edicts doctrine and claim a copyright over legal rules and judicial opinions. In other words, for the same reasons that public domain demarcations in a map are not protectable, it would be improper to permit Plaintiffs to monopolize the conceptual, public domain "contours" of legal rules and opinions. Such would also contravene the Copyright Act's prohibition on copyright protection for any "idea," "concept," or "principle," such as those embodied in the headnotes.

> ## 2. Plaintiffs' West Key Number System Is An Unprotectable System And Method Of Operation Comprised Of Elements That Are Not Original Or Creative

Plaintiffs attempt to rewrite history by alleging that copyright protects their so-called Key Number System. But, as long ago as 1879—the same year that the asserted number system was made available to the public—the Supreme Court held that publication of a book explaining a particular accounting system gives the author no rights under the copyright laws to prevent others from *using* the system. *Baker v. Selden,* 101 U.S. 99, 103 (1879). That principle was embodied in 17 U.S.C. § 102(b) of the Copyright Act, which provides: "[i]n no case does

copyright protection … extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work."

The overall arrangement and structure of the topics in the number system is not creative. The Complaint concedes the topics are arranged in alphabetical order and the numbers are assigned sequentially to the topics and subtopics, in the order of their appearance in the listings. *Id.*, ¶¶ 12-15. Thus, the arrangement of the words themselves lacks the modicum of creativity necessary to transform the number system into a copyrightable expression. *See Feist*, 499 U.S. at 363.

Moreover, instead of being creative, the structure of the number system reflects a traditional mode of legal analysis and reasoning, dictated by underlying legal texts, in varying levels of depth, organized alphabetically. *See* D.I. 1, ¶ 13 (identifying the broad legal issue of "Abandoned and Lost Property" and associated subtopics including identifying the "Nature and Elements" of the claim). Identifying legal concepts and analyzing common associated legal questions, issues, topics, concepts and principles is an intrinsic part of all legal analysis: it is what law students learn during their first year of law school; it is what lawyers do when presented with new cases and legal issues; and it is how judges structure opinions. In other words, the structure, sequence, and organization of the number system is nothing more than an "age-old [method of analytical thinking], firmly rooted in tradition and so commonplace that it has come to be expected as a matter of course." *Feist*, 499 U.S. at 363. Plaintiffs' copyright claim over the number system would be akin to a legal writing professor claiming ownership over the IRAC method. There is nothing original or creative about it.

An essential attribute of the quick identification of legal concepts and sub-concepts is the

utter *absence* of originality or creativity in the structure, sequence, and organization of the number system. Suppose, for example, that the number system were structured such that "Nature and Elements" of an "Abandoned and Lost Property" claim in the number system should fall under "Copyright" instead. Any Westlaw subscriber who wished to research the elements of "Abandoned and Lost Property" would be unable to "seamless[ly]" identify them. By nature of such a conceivably creative choice, the number system would no longer make "legal research seamless," as Plaintiffs allege. D.I. 1, ¶ 11. Thus, any creative formulation of this alleged "complex hierarchy" would ultimately defeat the utility of the system. The number system works precisely because it is structured in a way that all legal readers, researchers and thinkers expect and predict, as it simply reflects how the underlying law itself organizes and presents constituent legal elements and ideas.

Devoid of any creative spark – which would destroy the very purpose of the system – the number system is instead based on and dictated solely by functional considerations. "When the idea and the expression of the idea coincide, then the expression will not be protected in order to prevent creation of a monopoly on the underlying 'art.'" *Educ. Testing Servs. v. Katzman*, 793 F.2d 533, 539 (3d Cir. 1986). Plaintiffs flout this long held doctrine. The functional considerations of the number system dictate how to logically approach an issue, in a manner dictated by the common law legal system, using established modes of legal analysis and reasoning, and the manner in which judges organize and articulate concepts and ideas in public domain legal opinions. In other words, the topics, subtopics and the alleged structure, sequence and organization of the number system are so dictated by external factors and age-old analytical and judicial practices that they do not (and simply cannot) possess requisite originality or creativity. In this way, the number system is so constrained by the unprotectable ideas in

established general modes of analysis and the particular modes of analysis in the cases they reflect, that any "expression" merges with the ideas themselves. As a result, Plaintiffs' copyright claims effectively cover not just expressions but fundamental ideas in American jurisprudence.

Accordingly, the number system is not protected by copyright. *Southco, Inc. v. Kanebridge Corp.*, 390 F.3d 276, 282 (3d Cir. 2004) (*en banc*) (holding product numbers that could assist customers in identifying and distinguishing products were not original or creative because they were dictated by a separate system). This is evident from the face of the Complaint. Plaintiffs' bare allegation that the number system is the result of "numerous creative choices" (¶ 12) cannot overcome this plain reality, and is so conclusory it must be rejected under *Twombly*.

## VII.   <u>PLAINTIFFS' TORTIOUS INTERFERENCE CLAIM SHOULD BE DISMISSED</u>

Plaintiffs' tortious interference with contract claim is governed by California law because any purported unlawful conduct occurred exclusively in California. Because Plaintiffs filed their tortious interference claim more than two years after the claim first accrued, the claim is time barred under California law and must be dismissed. Further, regardless of whether California or Delaware law applies, Plaintiffs fail to sufficiently plead a tortious interference claim.

### A.   **Plaintiffs' Tortious Interference Claim Is Time-Barred Under The Relevant California Statute Of Limitations**

#### 1.   **Delaware's Borrowing Statute Requires Application Of California's Statute Of Limitations**

"Traditionally, statutes of limitations are governed by forum law; however, Delaware's borrowing statute has modified the traditional rule." *Grynberg v. Total Compagnie Francaise Des Petroles*, 891 F. Supp. 2d 663, 678 (D. Del. 2012). In cases involving foreign plaintiffs, as is the case here (*see e.g.*, D.I. 1, ¶ 6 (Thomson Reuters is based in Switzerland) and ¶ 7 (West is based in Minnesota)), Delaware's borrowing statute governs for claims arising in a different jurisdiction. The borrowing statute provides:

> Where a cause of action arises outside of this state, an action cannot be brought in a court of this State to enforce such a cause of action after the expiration of whichever is shorter, the time limited by the law of this State, or the time limited by the law of the state or country where the cause of action arose, for bringing an action upon such cause of action.

10 Del. C. § 8121. "Delaware conflict of law rules direct that the Court determine where Plaintiffs' claims arose by application of the 'most significant relationship' test, as set forth in the Restatement (Second) Conflict of Laws ("Restatement") §§ 145 and 188." *Grynberg*, 891 F. Supp. 2d at 679. As tortious interference is a tort, the court should apply Section 145. *Travelers Indem. Co. v. Lake*, 594 A.2d 38, 47 (Del. 1991) ("[Under Section 145], local law of the state which has the most significant relationship… will govern the rights of litigants in a tort suit.").

"In determining the most significant relationship, the court must evaluate the relative importance of four factors: "(a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (d) the place where the relationship, if any, between the parties is centered." *Benihana of Tokoyo, Inc. v. Benihana, Inc.*, 828 F. Supp. 2d 720, 725 (D. Del. 2011) (citing Restatement). Section 145 directs the court to apply its factors under the policy principles illuminated in Section 6:

(1) the needs of the interstate and international systems;
(2) the relevant policies of the forum;
(3) the relevant policies of other interested states and the relative interests of those states in determination of the particular issue;
(4) the protection of justified expectations;
(5) the basic policies underlying the particular field of law;
    certainty, predictability, and uniformity of result; and
(6) ease in the determination and application of the law to be applied.

*See* Restatement § 6.

### a.   Plaintiffs' Tortious Interference Claim Arose in California

Weighing the "most significant relationship" factors set forth in Section 145 of the

Restatement conclusively establishes that Plaintiffs' tortious interference claim "arose" in California and, thus, California's statute of limitations applies.

**1. The place where the injury occurred.** This factor tips in favor of applying California law. None of the alleged tortious conduct occurred in Delaware, nor do Plaintiffs reside in Delaware such that they would be harmed in Delaware. In fact, Plaintiffs do not allege a location of the purported injury. It appears Plaintiffs selected Delaware simply because ROSS is incorporated there. However, a company's principal place of business is a more important factor with respect to tortious interference claims. *See Int'l Bus. Machs. Corp. v. Comdisco, Inc.*, 1991 Del. Super. LEXIS 453, at *25 (Del. Super. Dec. 4, 1991) (noting a corporation's principal place of business is a more important contact than the place of incorporation (citing Restatement §145, cmt. e)). ROSS's principal place of business is in California. D.I. 1 at ¶ 8.

Moreover, where injury is not alleged or difficult to ascertain, courts analyze where the purported conduct occurred. *See Int'l Bus. Machs. Corp.*, 1991 Del. Super. LEXIS 453, at *25 (stating that the place where the conduct occurred is given great consideration where the location of injury occurred is difficult to ascertain) (applying the law of the state of "the alleged primary wrongdoer"). This further supports California because ROSS is based in California and Plaintiffs fail to allege where it was injured.

**2. The place where the conduct causing the injury occurred.** This is unquestionably California. ROSS is a legal research startup founded in 2015 with its headquarters located in San Francisco, California. D.I. 1, ¶¶ 8, 24. Plaintiffs allege LegalEase accessed Westlaw at the "direction of and to benefit ROSS." *Id.*, ¶ 33. Because ROSS's only alleged office is in San Francisco (¶ 8), any action ROSS took vis-à-vis LegalEase occurred in California. Plaintiffs offer no facts suggesting otherwise. *Id.,* ¶ 29 (alleging ROSS contracted with LegalEase to access to

16

Westlaw material).

ROSS purportedly interfered with Plaintiffs' contract with a customer, LegalEase. ¶ 53 ("As a result of ROSS's intentional and tortious interference with West's contract with LegalEase, Plaintiffs have been damaged in an amount to be determined at trial"). This purported injury must have occurred out of ROSS's office in California, confirming the *situs* California should be given the "greatest weight." *CAE Inc. v. Gulfstream Aero. Corp.*, 203 F. Supp. 3d 447, 456 n.10 (D. Del. 2016) ("Where, as here, the claimed injury is a plaintiff's loss of customers, the principal location of the defendant's conduct is given the greatest weight in the choice of law analysis") (citing Restatement § 145(2) cmt. f.). In *CAE,* this Court recognized Georgia has the most significant relationship to a tortious interference with prospective business relations claim because the defendant was headquartered there. ROSS is no different.

**3. The domiciles of the parties.** While ROSS is a Delaware corporation, Plaintiffs have alleged no business contacts with the state. *Cf.* Restatement § 145 ("a corporation's principal place of business is a more important contact than the place of incorporation, and this is particularly true in situations where the corporation does little, or no, business in the latter place."). ROSS's principal place of business is California. D.I. 1, ¶ 8. Plaintiffs, on the other hand, are foreign companies with zero contacts with Delaware. *Id.,* ¶ 6-7. This factor, thus, is either neutral or tips in favor of California. *Eureka Res., LLC v. Range Res. Appalachia, LLC*, 62 A.3d 1233, 1238 (Del. Super. 2012) (observing that plaintiff's principal place of business in one state and defendants' in another neutralized this factor).

**4. Relationship between the parties.** "The last element of § 145…is inapplicable because [Plaintiff] and [Defendant] did not have an existing relationship." *Integral Res. (PVT) Ltd. v. Istil Grp., Inc.*, 2004 Bankr. LEXIS 1859, at *11 (Bankr. D. Del. Dec. 2, 2004). The same

17

is true here.

While the Restatement Section 145 factors tip strongly in favor of applying California law, the policy principles underlying Delaware's borrowing statute in view of Restatement Section 6 cement that conclusion. *Furnari v. Wallpang, Inc.*, 2014 Del. Super. LEXIS 199, at *14 (Del. Super. Apr. 16, 2014) (stating that purpose of the borrowing statute is to "prevent a non-resident plaintiff [or, here, plaintiffs] from forum shopping"). The statute is "designed to address a specific kind of forum shopping scenario — cases where a plaintiff brings a claim in a Delaware court that (i) arises under the law of a jurisdiction other than Delaware and (ii) is barred by that jurisdiction's statute of limitations but would not be time-barred in Delaware." *Id.* (citing *Saudi Basic Indus. Corp. v. Mobil Yanbu Petrochem. Co., Inc.*, 866 A.2d 1, 16 (Del. 2005)); *see also Bell Helicopter Textron, Inc. v. Arteaga*, 113 A.3d 1045, 1059 (Del. 2015).

California has an important interest in applying its laws—especially the statute of limitations—to its own residents. Restatement §§ 6(3)-(4); *Deutsch v. Turner Corp.*, 324 F.3d 692, 717 (9th Cir. 2003) ("California's interest in applying its own law is strongest when its statute of limitations is shorter than that of the foreign state.").

And applying California law is consistent with the law in this circuit and elsewhere, which looks beyond the tortfeasor's principal place of business. *See e.g.*, *Integral Res. (PVT) Ltd. v. ISTIL Grp.*, Inc., 155 F. App'x 69, 72 (3d Cir. 2005); *CAE*, 203 F. Supp. 3d at 456 n.10; *Corning Inc. v. SRU Biosystems*, LLC, 292 F. Supp. 2d 583, 585 (D. Del. 2003) (dismissing Massachusetts law despite the harm occurring there and applying Delaware law "because the conduct underlying any liability…occurred in Delaware."); *Calixto v. Watson Bowman Acme Corp.*, 637 F. Supp. 2d 1064, 1067 (S.D. Fla. 2009) (applying law of defendant's principal place of business (New York) because in tortious interference cases "the principal location of the

18

defendant's conduct is the contact that will usually be given the greatest weight in determining the [applicable law]") (citing Restatement § 145 cmt. f.); *Bulldog New York LLC v. Pepsico, Inc.*, 8 F. Supp. 3d 152, 165 (D. Conn. 2014) (applying New York law to a tortious interference claim where defendant was headquartered in New York under Section 145).

### 2. Under California Law, Plaintiffs' Action is Time Barred.

Plaintiffs' tortious interference claim is barred by California's two-year statute of limitations. *Square 1 Bank v. Lo*, 2014 U.S. Dist. LEXIS 117524, at *15 (N.D. Cal. Aug. 22, 2014). Plaintiffs' cause of action first accrued on or before January 4, 2018, when Plaintiffs, by their own allegations, terminated LegalEase's Service Agreement "due to LegalEase's material breach and violation of [the Agreement]." D.I. 1, ¶ 36. In addition, Plaintiffs were on actual or constructive notice by July 2017 that LegalEase was working with "a machine learning legal research firm." *Id*. Under California law, not only does the tortious interference claim "typically accrue 'at the date of the wrongful act'", *in no event does it accrue later than the actual breach of the contract*. *DC Comics v. Pacific Pictures Corp*., 938 F. Supp. 2d 941, 948 (C.D. Cal. 2013) (citing *Trembath v. Digardi*, 43 Cal. App. 3d 834, 836 (1974)). As has been California law since the 1970s, "the accrual date could not be later than the actual breach of the contract by the party who was wrongfully induced to breach." *Abselet v. Hudson Labor Sols., Inc.*, 2020 U.S. App. LEXIS 3588, at *3 (9th Cir. Feb. 4, 2020). Plaintiffs waited two and half years to assert their claim. Plaintiffs' claim, therefore, is barred under California law and must be dismissed with prejudice.

### B. Plaintiffs Tortious Interference Claim Fails Under California Law.

Plaintiffs' tortious interference claim fails as pled. Plaintiffs must plead ROSS had knowledge of the contract *and* intentionally acted to bring about its breach. *Travel Syndication Tech., LLC v. Fuzebox, LLC*, 2012 U.S. Dist. LEXIS 73117, at *17-19 (D. Del. May 25, 2012)

("plaintiff must allege: (1) a valid contract, (2) about which the defendant knew, (3) an intentional act that is a significant factor in the breach of the contract…"); *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal.3d 1118, 1126 (1990) (reciting the elements as "… (2) defendant's knowledge of [a contract between plaintiff and a third party]; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship").

Plaintiffs' claim must be dismissed under California or Delaware law because Plaintiffs do not assert any facts to support their claim. For example, while Plaintiffs allege LegalEase breached certain provisions of the Service Agreement, Plaintiffs fail to allege any facts suggesting ROSS knew of these provisions. Nor do Plaintiffs allege any intentional acts by ROSS "designed to induce breach" of the contract. Instead, Plaintiffs make only threadbare, conclusory allegations that recite the statutory elements of tortious interference. *See generally*, D.I. 1, ¶¶ 3, 51-52. Plaintiffs' claim is, thus, insufficiently pled under *Twombly*. *Twombly*, 550 U.S. at 555.

In addition, Plaintiffs fail to plead ROSS acted without justification as required under Delaware law. *See Travel Syndication Tech.,* 2012 U.S. Dist. LEXIS 73117, at *18. Plaintiffs allege nothing by a single conclusory allegation that ROSS instructed LegalEase to breach the contract "without justification." D.I. 1, ¶ 51. Such a conclusory allegation that is essentially a "formulaic recitation of the elements of a cause of action" cannot plead a cognizable claim. *Bos. Sci. Corp. v. Nevro Corp.*, 415 F. Supp. 3d 482, 498 (D. Del. 2019) (citing *Twombly*). For this reason as well, Plaintiffs fail to state a claim for tortious interference.

## VIII.   CONCLUSION

For the foregoing reasons, this Court should dismiss Plaintiffs' Complaint in its entirety.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

By: _/s/ David E. Moore_

Gabriel M. Ramsey
Kayvan M. Ghaffari
CROWELL & MORING LLP
3 Embarcadero Center, 26th Floor
San Francisco, CA 94111
Tel:  (415) 986-2800

Mark A. Klapow
Joshua M. Rychlinski
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC  20004
Tel:  (202) 624-2500

David E. Moore (#3983)
Stephanie E. O'Byrne (#4446)
Tracey E. Timlin (#6469)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
Tel:  (302) 984-6000
dmoore@potteranderson.com
sobyrne@potteranderson.com
ttimlin@potteranderson.com

_Attorneys for Defendant ROSS Intelligence, Inc._

Dated:  July 13, 2020
6798002/50241

21