IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 20-613 (LPS) |
| | ) | |
| ROSS INTELLIGENCE INC., | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
mflynn@mnat.com

OF COUNSEL:

Dale M. Cendali
Joshua L. Simmons
Eric A. Loverro
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
(212) 446-4800

*Attorneys for Plaintiffs Thomson Reuters
Enterprise Center GmbH and West Publishing
Corporation*

August 10, 2020

<u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     NATURE AND STAGE OF THE PROCEEDINGS ...........................................................1

II.    INTRODUCTION AND SUMMARY OF ARGUMENT ...................................................1

III.   STATEMENT OF ALLEGED FACTS...........................................................................3

      A.     Thomson Reuters, West, and the Westlaw Content...............................................3

      B.     ROSS, Its Copyright Infringement, and Its Tortious Interference..........................4

IV.   ARGUMENT ...................................................................................................................4

      A.     Plaintiffs' Copyright Claim is Well-Pleaded ...........................................................5

            1.     Thomson Reuters Alleged that it Owns Valid Copyrights in Westlaw.......................................................................................................6

            2.     ROSS Is On Notice that it Copied from Westlaw.......................................9

            3.     ROSS's Affirmative Defenses Cannot Be Decided in this Motion ..........11

      B.     Plaintiffs' Tortious Interference Claim Also Is Properly Pleaded ........................14

            1.     Delaware Law Applies and Uses a Three-Year Statute of Limitations ................................................................................................16

            2.     A Statute of Limitations Defense Is Not Established Under California Law ...............................................................................................19

V.    CONCLUSION...............................................................................................................20

TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abselet v. Hudson Labor Sols., Inc.*,
  804 F. App'x 448 (9th Cir. 2020) ............................................20

*AGA Shareholders, LLC v. CSK Auto, Inc.*,
  No. 07-0062, 2007 WL 1101264 (D. Ariz. Apr. 12, 2007) ....................20

*Am. Bd. of Internal Med. v. Von Muller*,
  No. 10-2680, 2012 WL 2740852 (E.D. Pa. July 9, 2012) .....................11

*Am. Dental Ass'n v. Delta Dental Plans Ass'n*,
  126 F.3d 977 (7th Cir. 1997) ..............................................12

*Apple Comput., Inc. v. Franklin Comput. Corp.*,
  714 F.2d 1240 (3d Cir. 1983) ..............................................12

*Auto. Data Sols., Inc. v. Directed Elecs. Can., Inc.*,
  No. 18-1560, 2018 WL 4742289 (C.D. Cal. Aug. 15, 2018) ....................7

*Baker v. Selden*,
  101 U.S. 99 (1879) ........................................................12

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .......................................................5

*Bell Helicopter Textron, Inc. v. Arteaga*,
  113 A.3d 1045 (Del. 2015) .................................................19

*Boston Scientific Corp. v. Nevro Corp.*,
  415 F. Supp. 3d 482 (D. Del. 2019) ........................................16

*Brinkmeier v. Graco Children's Prods. Inc.*,
  767 F. Supp. 2d 488 (D. Del. 2011) ........................................10

*Broad. Music, Inc. v. Moor-Law, Inc.*,
  484 F. Supp. 357 (D. Del. 1980) ...........................................5

*Brody v. Hankin*,
  145 F. App'x 768 (3d Cir. 2005) ...........................................12, 14

*Bulldog N.Y. LLC v. Pepsico, Inc.*,
  8 F. Supp. 3d 152 (D. Conn. 2014) .........................................19

*CAE Inc. v. Gulfstream Aerospace Corp.*,
    203 F. Supp. 3d 447 (D. Del. 2016) ......................................................................17

*Calixto v. Watson Bowman Acme Corp.*,
    637 F. Supp. 2d 1064 (S.D. Fla. 2009) ................................................................19

*Callaghan v. Myers*,
    128 U.S. 617 (1888) .............................................................................................8

*Castle Rock Entm't, Inc. v. Carol Publ'g Grp.*,
    150 F.3d 132 (2d Cir. 1998) .................................................................................7

*Corning Inc. v. SRU Biosystems, LLC*,
    292 F. Supp. 2d 583 (D. Del. 2003) ....................................................................19

*DC Comics v. Pac. Pictures Corp.*,
    938 F. Supp. 2d 941 (C.D. Cal. 2013) .................................................................20

*Deutsch v. Turner Corp.*,
    324 F.3d 692 (9th Cir. 2003) ..............................................................................18

*E.E.O.C. v. Vanguard Grp., Inc.*,
    No. 04-4126, 2006 WL 931613 (E.D. Pa. Apr. 10, 2006) ..................................6

*Educ. Testing Servs. v. Katzman*,
    793 F.2d 533 (3d Cir. 1986) ...............................................................................12

*Eureka Res., LLC v. Range Res.-Appalachia, LLC*,
    62 A.3d 1233 (Del. Super. Ct. 2012) ..............................................................17, 18

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
    499 U.S. 340 (1991) .............................................................................................5

*Ford Motor Co. v. Summit Motor Prods., Inc.*,
    930 F.2d 277 (3d Cir. 1991) .................................................................................5

*Furnari v. Wallpang, Inc.*,
    No. 13C04287, 2014 WL 1678419 (Del. Super. Ct. Apr. 16, 2014) ..................19

*Ga. v. Public.Resource.Org, Inc.*,
    140 S. Ct. 1498 (2020) .........................................................................................8

*Golan v. Holder*,
    565 U.S. 302 (2012) ...........................................................................................12

*Grynberg v. Total Compagnie Francaise Des Petroles*,
    891 F. Supp. 2d 663 (D. Del. 2012) ....................................................................17

*Gullo v. Equifax Info. Servs. LLC*,
    No. 15-01312, 2016 WL 3221735 (M.D. Fla. June 8, 2016)....................................................19

*H2L2 Architects/Planners, LLC v. Tower Invs., Inc.*,
    No. 12-6927, 2013 WL 373281 (E.D. Pa. Jan. 31, 2013) ..........................................................6

*Harper & Row, Publishers, Inc. v. Nation Enters.*,
    471 U.S. 539 (1985).................................................................................................................9

*Idenix Pharms., Inc. v. Gilead Scis., Inc.*,
    No. 13-1987, 2014 WL 4222902 (D. Del. Aug. 25, 2014)....................................................10

*Impact Applications, Inc. v. CNS Vital Signs*,
    No. 13-580, 2013 WL 5936422 (W.D. Pa. Nov. 5, 2013)......................................................7

*Int'l Bus. Machs. Corp. v. Comdisco, Inc.*,
    No. 91-C-07-199, 1991 WL 269965 (Del. Super. Ct. Dec. 4, 1991)....................................17

*Integral Res. (PVT) Ltd. v. Istil Grp., Inc.*,
    155 F. App'x 69 (3d Cir. 2005) ...........................................................................................19

*Integral Resources (PVT) Ltd. v. Istil Grp., Inc.*,
    No. 03-904, 2004 WL 2758672 (D. Del. Dec. 2, 2004) ........................................................18

*J & J Snack Food Corp. v. Soft Pretzel Franchise Sys., Inc.*,
    No. 09-1214, 2009 WL 10737680 (E.D. Pa. Oct. 27, 2009) ...................................................6

*Kallok v. Medtronic, Inc.*,
    573 N.W.2d 356 (Minn. 1998)........................................................................................14, 15

*L.A. T-Shirt & Print, Inc. v. Rue 21, Inc.*,
    No. 16-5400, 2017 WL 3575699 (S.D.N.Y. Aug. 17, 2017)...................................................6

*Levey v. Brownstone Inv. Grp., LLC*,
    590 F. App'x 132 (3d Cir. 2014) .........................................................................................10

*Lincoln Benefit Life Co. v. AEI Life, LLC*,
    800 F.3d 99 (3d Cir. 2015)...................................................................................................10

*Lipton v. Nature Co.*,
    71 F.3d 464 (2d Cir. 1995)..............................................................................................12, 13

*Malibu Media, LLC v. Doe*,
    No. 13-365, 2014 WL 7188822 (D. Md. Dec. 16, 2014).....................................................10

*Marvullo v. Gruner & Jahr*,
    105 F. Supp. 2d 225 (S.D.N.Y. 2000)..................................................................................10

*Ausikaitis ex rel. Masimo Corp. v. Kiani*,
    962 F. Supp. 2d 661 (D. Del. 2013)................................................................11, 19

*Matthew Bender & Co. v. West Publ'g Co.*,
    158 F.3d 674 (2d Cir. 1998)..............................................................................9, 13

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
    545 U.S. 913 (2005)..............................................................................................6

*Micro Focus (US), Inc. v. Ins. Servs. Office, Inc.*,
    125 F. Supp. 3d 497 (D. Del. 2015)......................................................................9

*Microsoft Corp. v. MY Choice Software, LLC*,
    No. 15-0515, 2015 WL 12765460 (C.D. Cal. Sept. 22, 2015) ..............................7

*In re Mobile Telecomms. Techs., LLC*,
    No. 16-699, 2017 WL 1053099 (D. Del. Mar. 20, 2017) ......................................5

*Montgomery v. Noga*,
    168 F.3d 1282 (11th Cir. 1999) ............................................................................8

*MultiCraft Imps., Inc. v. Mariposa USA, Inc.*,
    No. 16-3975, 2017 WL 5664996 (C.D. Cal. Sept. 14, 2017) ..................................7

*Nelson v. Fleet Nat'l Bank*,
    949 F. Supp. 254 (D. Del. 1996)..........................................................................15

*Network Managing Sols., LLC v. AT&T Inc.*,
    No. 16-295, 2017 WL 472080 (D. Del. Feb. 3, 2017).........................................11

*Oracle Am., Inc. v. Google Inc.*,
    750 F.3d 1339 (Fed. Cir. 2014)......................................................................11, 12

*PDS Pathology Data Sys. Ltd. v. Zoetis Inc.*,
    No. 16-2072, 2018 WL 5033751 (D.N.J. Oct. 17, 2018) .......................................5

*Riordan v. H.J. Heinz Co.*,
    No. 08-1122, 2009 WL 4782155 (W.D. Pa. Dec. 8, 2009) ...................................10

*Robert Kubicek Architects & Assocs., Inc. v. Bosley*,
    No. 09-00145, 2009 WL 3188391 (D. Ariz. Sept. 29, 2009) ................................10

*Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*,
    786 F.3d 510 (7th Cir. 2015) ...............................................................................18

*Salt Optics, Inc. v. Jand, Inc.*,
    No. 10-0828, 2010 WL 4961702 (C.D. Cal. Nov. 19, 2010) ..................................8

*Southco, Inc. v. Kanebridge Corp.*,
   390 F.3d 276 (3d Cir. 2004)............................................................................13

*Southco, Inc. v. Kanebridge Corp.*,
   258 F.3d 148 (3d Cir. 2001)............................................................................13

*Square 1 Bank v. Lo*,
   No. 12-05595, 2014 WL 4181907 (N.D. Cal. Aug. 22, 2014) ...............................20

*Stampone v. Stahl*,
   No. 05-1921, 2005 WL 1694073 (D.N.J. July 19, 2005) ......................................10

*TD Bank N.A. v. Hill*,
   928 F.3d 259 (3d Cir. 2019)......................................................................12, 13

*Tegg Corp. v. Beckstrom Elec. Co.*,
   No. 08-435, 2008 WL 2682602 (W.D. Pa. July 1, 2008) ........................................7

*Telluride Asset Mgmt., LLC v. Bridgewater Assocs., Inc.*,
   No. 04-4862, 2005 WL 1719204 (D. Minn. July 11, 2005) ...................................16

*Tetris Holding, LLC v. Xio Interactive, Inc.*,
   863 F. Supp. 2d 394 (D.N.J. 2012) ..................................................................7

*TexasLDPC Inc. v. Broadcom Inc.*,
   No. 18-1966, 2020 WL 1285916 (D. Del. Mar. 18, 2020) ...................................10

*TL of Fla., Inc. v. Terex Corp.*,
   54 F. Supp. 3d 320 (D. Del. 2014) (Stark, J.) ...................................................20

*Travel Syndication Tech., LLC v. Fuzebox, LLC*,
   No. 11-553, 2012 WL 1931238 (D. Del. May 25, 2012) .....................................15

*Travelers Indemnity Co. v. Lake*'s,
   594 A.2d 38 (Del. 1991) ........................................................................16, 17

*Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.*,
   996 F.2d 1366 (2d Cir. 1993)........................................................................7

*UbiquiTel Inc. v. Sprint Corp.*,
   No. Civ.A. 1489-N, 2005 WL 3533697 (Del. Ch. Dec. 14, 2005) ....................18, 19

*Vianix LLC v. Nuance Commc'ns, Inc.*,
   No. 09-348, 2010 WL 2898289 (D. Del. July 20, 2010) .......................................7

*Visual Commc'ns, Inc. v. Assurex Health, Inc.*,
   No. 14-3854, 2015 WL 430779 (E.D. Pa. Feb. 2, 2015) .....................................10

*Wainwright Secs. Inc. v. Wall St. Transcript Corp.*,
    558 F.2d 91 (2d Cir. 1977).................................................................7

*Waterfront Renaissance Assocs. v. City of Phila.*,
    701 F. Supp. 2d 633 (E.D. Pa. 2010) ...............................................5

*Webloyalty.com, Inc. v. Consumer Innovations, LLC*,
    388 F. Supp. 2d 435 (D. Del. 2005) ................................................11

*West Publ'g Corp. v. LegalEase Sols., LLC*,
    No. 18-1445 (D. Minn. July 18, 2018) .......................................11, 17

*West Publ'g Co. v. Mead Data Center, Inc.*,
    799 F.2d 1219 (8th Cir. 1986) ..........................................................8

*Whelan Assocs., Inc. v. Jaslow Dental Lab., Inc.*,
    797 F.2d 1222 (3d Cir. 1986).........................................................12

*Wild v. Rarig*,
    302 Minn. 419 (Minn. 1975)...........................................................16

*Williams v. Caruso*,
    966 F. Supp. 287 (D. Del. 1997).....................................................16

*Zanders v. Ferko*,
    389 F. App'x 88 (3d Cir. 2010) ......................................................20

**Statutes**

17 U.S.C. § 102.....................................................................................12

17 U.S.C. § 103.......................................................................................8

17 U.S.C. § 410.......................................................................................5

Cal. Civ. Proc. Code § 339 ..................................................................20

Del. Code Ann. § 8121 .........................................................................16

Minn. Stat. Ann. § 541.05 ....................................................................16

**Rules**

Fed. R. Civ. P. 8 .............................................................................4, 7, 19

Fed. R. Civ. P. 12 .......................................................................1, 2, 5, 19

## I.      NATURE AND STAGE OF THE PROCEEDINGS

Plaintiffs filed a Complaint against ROSS for copyright infringement and tortious interference.  D.I. 1.  ROSS has filed a motion to dismiss the Complaint.  D.I. 12.  This is Plaintiffs' brief in opposition to that motion.

## II.     INTRODUCTION AND SUMMARY OF ARGUMENT

On a Rule 12(b)(6) motion to dismiss, the key issue is whether, applying a notice pleading standard, Plaintiffs adequately alleged their claims.  ROSS's brief, however, reads more like a summary judgment brief or an argument to the jury than a motion to dismiss.

Nowhere in its brief does ROSS dispute that it was denied access to Westlaw, that it hired LegalEase to get that access surreptitiously, that it directed LegalEase to give it content downloaded from Westlaw, or that it built its competitive system off of Westlaw.  In short, ROSS does not deny that it used Plaintiffs' product to create a competing platform.

Instead, ROSS diverts by referring to "artificial intelligence," as though it matters what technology ROSS created using Plaintiffs' work.  ROSS also misdescribes this case as being about owning the law, even though the Complaint is clearly focused on ROSS's copying of Plaintiffs' creative expression in Westlaw, including its West Headnotes and West Key Number System ("WKNS") (collectively, "Westlaw Content").  And ROSS's suggestion that it is somehow improper for Plaintiffs to seek payment for that content, which Plaintiffs spent decades creating, ignores the fact that ROSS charges for access to its own platform.

But the Court need not address ROSS's diversions on this motion.  As to copyright infringement, Plaintiffs (a) alleged ownership of Westlaw, D.I. 1 ¶¶ 6, 23; (b) attached registrations for it, D.I. 1-1; and (c) asserted that ROSS copied it, D.I. 1 ¶¶ 34–35, and caused and benefited from LegalEase's copying, *id.* ¶¶ 44–45.  The claim has been properly pleaded.

ROSS's arguments ignore the pleading standard, the Complaint's factual allegations, and

well-settled copyright principles:

- ROSS argues that Plaintiffs insufficiently identified the work-at-issue, even though the Complaint identified Westlaw, *id.* ¶ 1, and attached its copyright registrations.  D.I. 1-1.

- ROSS asserts that the WKNS's copyright has expired, but the Complaint attached copyright registrations within the statutory period.  D.I. 1-1.

- ROSS's assertion that the West Headnotes merely copy judicial opinions is unfounded. *See infra* 8.  At best, that is a subject for discovery, as Plaintiffs have pleaded originality.

- ROSS argues failure to allege the "accused product," but Plaintiffs specifically pleaded that ROSS copied the Westlaw Content to create the ROSS platform.  D.I. 1 ¶¶ 24–39.

- ROSS asserts that the Complaint alleges copying "upon information and belief," even though it clearly details ROSS's copying.  *Id.*  In any event, Plaintiffs' pleading is proper where, as here, ROSS has control of the copying evidence.

- ROSS raises affirmative defenses of *scènes à faire* and merger, but those are factual matters not appropriate on a motion to dismiss, and the Complaint alleges that the WKNS could have been organized in enumerable ways and, thus, is copyrightable expression. *Id.* ¶¶ 12–13, 21.[1]

ROSS also asserts that Plaintiffs' claim for tortious interference with contract is not properly pleaded, but it ignores Plaintiffs' allegations that (1) West and LegalEase contracted, D.I. 1 ¶ 29; (2) ROSS knew the contract's terms, *id.* ¶¶ 3, 28–29, 51–52; (3) ROSS hired LegalEase to act in violation of its terms, *id.*; (4) it did so without justification, *id.* ¶¶ 3, 30–31, 51; and (5) ROSS's actions damaged West, *id.* ¶ 53.  And ROSS relies on a statute of limitations affirmative defense that fails for at least two reasons.  ***First***, Minnesota has the most significant

---

[1]    ROSS did not address indirect infringement and, thus, those theories may proceed regardless.

relationship to Plaintiffs' claim and, thus, under Delaware's borrowing statute, Delaware's three-year statute applies and has not run.  ***Second***, even under California's two-year statute, the Complaint's allegations do not establish that the limitations period has run.

ROSS's scattershot motion should be denied.  If, however, the Court believes additional pleading is necessary, Plaintiffs respectfully request an opportunity to amend.

## III.   STATEMENT OF ALLEGED FACTS

### A.      Thomson Reuters, West, and the Westlaw Content

Plaintiffs' Complaint includes the following allegations, which must be accepted as true on this motion.  Plaintiffs created Westlaw, including its creative and original WKNS and West Headnotes through "a rigorous editorial process" with "dedicated attorney-editors" who created those "[e]ditorial enhancements."  D.I. 1 ¶¶ 1, 11.  The WKNS is a "complex hierarchy" that organizes the law into numerous topics, and then subclassifies them into key numbers, within which are legal issues and points of law.  *Id.* ¶ 13.  Topics and their subcategories change and are revised over time, which explains why the topic numbers are not sequential.  *Id.* ¶¶ 13–14.

The West Headnotes involve similar creative choices.  "West's attorney-editors—all of whom are bar-admitted—carefully review [each decision] and create original West Headnotes to describe the key concepts discussed in the case."  *Id.* ¶¶ 14, 20.  Plaintiffs then take them and select where in the WKNS they should be categorized.  *Id.*  Over time, "West's attorney-editors regularly edit and revise the West Headnotes and the West Key Numbers of previously integrated cases so that subscribers can trust the accuracy and timeliness of the information that is offered."  *Id.* ¶¶ 14, 20.  "Cases, areas of law, legal topics, legal issues, subtopics, and subissues can all be summarized and organized in a variety of different ways—the structure, sequence, and organization of the WKNS is not something that has been achieved by accident or necessity; rather, it is the result of decades of human creativity and choices."  *Id.* ¶ 21.

"To protect Westlaw, Thomson Reuters registers" it with the Copyright Office "every three months," *id.* ¶ 22, and West requires its users to sign Subscriber Agreements that are intended to prevent the very activity in which ROSS has engaged. *Id.* ¶¶ 17–19.

### B.   ROSS, Its Copyright Infringement, and Its Tortious Interference

Instead of creating its own product, "ROSS illicitly and surreptitiously used a then-Westlaw licensee [LegalEase] to acquire access to and copy Plaintiffs' valuable content." D.I. 1 ¶ 1.  ROSS had asked for, and been explicitly denied, access to Westlaw, *id.* ¶ 3, but it "knew that LegalEase had a valid contract with West." *Id.* ¶ 51.  That is why, "knowing that it violated the terms of LegalEase's contract with West," ROSS "induced LegalEase to engage" in "unlawful activity," including the "reproduction of Plaintiffs' copyrighted content and distribution of that content *en masse* to ROSS." *Id.* ¶¶ 3, 28–29.  ROSS knew when it "contracted with LegalEase" that it would violate LegalEase's Subscriber Agreement "to obtain the password-protected and copyrighted content from Westlaw that ROSS was explicitly denied access to." *Id.* ¶¶ 51–52.

ROSS used "the Westlaw Content from Westlaw to build ROSS's competing platform." *Id.* ¶ 34.  At ROSS's direction, "LegalEase copied the Westlaw Content" and "distributed [it] to ROSS." *Id.* ¶ 35.  Then, ROSS "copied the content and used it to create its platform." *Id.* Plaintiffs have sued ROSS for direct and indirect copyright infringement due to ROSS's own copying of Westlaw Content, as well as its liability for LegalEase's copying. *Id.* ¶¶ 43–45. Plaintiffs also have sued for tortious interference with the Subscriber Agreement. *Id.* ¶¶ 50–53.[2]

## IV.   ARGUMENT

A complaint must provide "a short and plain statement of the claim," Fed. R. Civ. P.

---

[2]   ROSS references West's prior litigation against LegalEase that ended with LegalEase being enjoined.  D.I. 12, at 5.  As ROSS was not a party to that case, it did not involve a copyright claim, and it had ended prior to the filing of this lawsuit, it is not a related case.

8(a)(2), not "detail all of the facts upon which" the plaintiff's claim is based.  *See Waterfront Renaissance Assocs. v. City of Phila.*, 701 F. Supp. 2d 633, 639 (E.D. Pa. 2010).  Thus, it need allege only "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).  A Rule 12(b)(6) motion may be granted only if, after "accept[ing] all factual allegations in the complaint as true," and liberally drawing "all reasonable inferences in favor of the plaintiff," the plaintiff is not entitled to relief.  *Waterfront*, 701 F. Supp. 2d at 639; *In re Mobile Telecomms. Techs., LLC*, No. 16-699, 2017 WL 1053099, at *2 (D. Del. Mar. 20, 2017) ("issue is not whether a plaintiff will ultimately prevail but whether" it "is entitled to offer evidence to support the claims").  As the Complaint alleges more than sufficient facts to state plausible claims, ROSS's motion should be denied.

### A.      Plaintiffs' Copyright Claim is Well-Pleaded

To state a copyright claim, Plaintiffs need allege only "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); D.I. 12, at 6.  Plaintiffs did so here.

*First*, the Complaint alleges that the Copyright Office registered Westlaw, D.I. 1 ¶ 22, and attaches such registrations.  D.I. 1-1.  They "constitute *prima facie* evidence of the validity of the copyright," 17 U.S.C. § 410(c), including "ownership" as well as "originality, authorship, and compliance with statutory formalities."  *Broad. Music, Inc. v. Moor-Law, Inc.*, 484 F. Supp. 357, 362–63 (D. Del. 1980); *see also Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 294 (3d Cir. 1991).  This alone is "sufficient to meet the first prong."  *PDS Pathology Data Sys. Ltd. v. Zoetis Inc.*, No. 16-2072, 2018 WL 5033751, at *2 (D.N.J. Oct. 17, 2018).  The Complaint goes further by alleging that Plaintiffs own Westlaw and that it is a creative work resulting from Plaintiffs' numerous choices.  *See supra* 3.  This too satisfies *Feist's* "extremely low" standard for creativity and independent creation.  499 U.S. at 345.

*Second*, Plaintiffs alleged that ROSS copied the Westlaw Content and used it to create ROSS's competing platform.  *See supra* 4.  They also alleged that ROSS (a) encouraged LegalEase's infringement, D.I. 1 ¶ 44; and (b) benefited financially from LegalEase's actions, which it could control, *id.* ¶ 45.  Thus, Plaintiffs have stated direct and indirect copyright claims. *See H2L2 Architects/Planners, LLC v. Tower Invs., Inc.*, No. 12-6927, 2013 WL 373281, at *3 (E.D. Pa. Jan. 31, 2013) (denying motion to dismiss complaint that alleged defendant "made unauthorized use" of material); *J & J Snack Food Corp. v. Soft Pretzel Franchise Sys., Inc.*, No. 09-1214, 2009 WL 10737680, at *2 (E.D. Pa. Oct. 27, 2009) (allegation of "copying" sufficient); *E.E.O.C. v. Vanguard Grp., Inc.*, No. 04-4126, 2006 WL 931613, at *4 (E.D. Pa. Apr. 10, 2006) (same where plaintiff alleged defendant infringed by "copying, using, creating derivative works, or otherwise commercially exploiting the Software for his own benefit"); *see also Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005).

ROSS's motion fails to show how these elements are not supported by the Complaint's allegations.  Indeed, ROSS does not even address Plaintiffs' indirect infringement theory and, thus, Plaintiffs' copyright claim may proceed for that reason alone.  *See L.A. T-Shirt & Print, Inc. v. Rue 21, Inc.*, No. 16-5400, 2017 WL 3575699, at *8 n.12 (S.D.N.Y. Aug. 17, 2017).  As to direct infringement, instead of taking Plaintiffs' allegations as true, as legally required, *see supra* 4, ROSS raises a series of fact-intensive arguments that are both factually wrong and, in any case, improper on a motion to dismiss.  Each is addressed in turn below.

### 1.   Thomson Reuters Alleged that it Owns Valid Copyrights in Westlaw

With regard to ownership of a valid copyright, ROSS raises three arguments, none of which is correct.

*First*, ROSS asserts that Plaintiffs' identification of the work-at-issue is insufficient,

evidently because they attached multiple registration certificates to the Complaint.  D.I. 12, at 8.

Plaintiffs' Complaint, however, could not be clearer: the work at issue is Westlaw.  D.I. 1 ¶¶ 1,

22, 41–42.  Plaintiffs attached multiple registrations because they register Westlaw with the

Copyright Office "every three months," *id.* ¶ 22, with each registration covering the "original

and revised text and compilation of legal material" over the prior registration.  *See, e.g.*, D.I. 1-1,

at 326.[3]  Naming a technology and providing its registrations (even when there are multiple

registrations) satisfies Rule 8.  *See Vianix LLC v. Nuance Commc'ns, Inc.*, No. 09-348, 2010 WL

2898289, at *3 (D. Del. July 20, 2010) (denying motion to dismiss where plaintiff identified

"MASC Technology" and pointed to four copyright registrations covering it).[4]  Further, Plaintiffs

alleged that ROSS copied the Westlaw Content, which is owned by and original to Plaintiffs.

*See supra* 3.  They are not required to do more.  *See Auto. Data Sols., Inc. v. Directed Elecs.*

*Can., Inc.*, No. 18-1560, 2018 WL 4742289, at *7 (C.D. Cal. Aug. 15, 2018) (similar allegations

sufficient); *Microsoft Corp. v. MY Choice Software, LLC*, No. 15-0515, 2015 WL 12765460, at

*2 (C.D. Cal. Sept. 22, 2015) (plaintiff not required to provide "copy of evidence supporting"

claim or specify "nature and extent of . . . alleged . . . infringement").[5]

---

[3]   ROSS misquotes the registrations as covering material Plaintiffs did not create, D.I. 12, at 9, but they are clear that Plaintiffs do not claim copyright in works created by the U.S. government, just their "Compilation" and new material created by Plaintiffs.  D.I. 1-1, at 2.

[4]   It is typical to refer to related versions of a work collectively.  *See Tetris Holding, LLC v. Xio Interactive, Inc.*, 863 F. Supp. 2d 394, 396 (D.N.J. 2012) (versions of Tetris discussed in aggregate); *see also Castle Rock Entm't, Inc. v. Carol Publ'g Grp.*, 150 F.3d 132, 138 (2d Cir. 1998) (*Seinfeld* treated "as a single work"); *Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.*, 996 F.2d 1366, 1372–73, 1381 (2d Cir. 1993) (*Twin Peaks* the same); *Wainwright Secs. Inc. v. Wall St. Transcript Corp.*, 558 F.2d 91, 94 (2d Cir. 1977) (abstracts addressed cumulatively).

[5]   ROSS's cited cases are not to the contrary and do not involve complaints, like Plaintiffs', that contain clear allegations as to Westlaw and its registration.  *See Impact Applications, Inc. v. CNS Vital Signs*, No. 13-580, 2013 WL 5936422, at *6 (W.D. Pa. Nov. 5, 2013) ("boilerplate legal conclusions," not factual allegations as to work); *Tegg Corp. v. Beckstrom Elec. Co.*, No. 08-435, 2008 WL 2682602, at *8 (W.D. Pa. July 1, 2008) (no allegation of ownership of registered copyrights and not clear what was registered); *see also MultiCraft Imps., Inc. v. Mariposa USA,*

**Second**, ROSS argues that the WKNS's copyright expired because it has "existed since West's inception."  D.I. 12, at 6–7.  That nonsensical argument misapprehends copyright law. This case is not about a work created in the 1800s, but about Westlaw, including its organization, which has been registered by the Copyright Office within the statutory period.  D.I. 1-1.  Further, the Complaint alleges that the WKNS is "regularly edit[ed] and revise[d]."  D.I. 1 ¶ 14; *see also* D.I. 1-1 (reflecting changes and additions).  Any selection or arrangement within the statutory period is copyrightable.  *See* 17 U.S.C. § 103(b) (copyright in compilation or derivative work is "independent of . . . preexisting material"); *Montgomery v. Noga*, 168 F.3d 1282, 1290 (11th Cir. 1999) (program protectable even if earlier versions were not).

**Third**, ROSS argues that, on a motion to dismiss, this Court can conclude that all of the West Headnotes are not copyrightable under the government edicts doctrine.  D.I. 12, at 9–10. ROSS's overreach is unavailing, as the Supreme Court distinguishes works created by "officials empowered to speak with the force of law," which are not protectable, from works like the Westlaw Content that are created by private parties, which are (including any "headnotes").  *Ga. v. Public.Resource.Org, Inc.*, 140 S. Ct. 1498, 1504, 1507 (2020) (discussing *Callaghan v. Myers*, 128 U.S. 617 (1888)).[6]  The Eighth Circuit rejected a similar argument in *West Publishing Co. v. Mead Data Center, Inc.*, holding that West's original expression is protectable. 799 F.2d 1219, 1223 (8th Cir. 1986) (doctrine did not apply to West's case arrangement).

Moreover, ROSS does not attempt to address each of the West Headnotes.  Instead, it offers one misleading example.  In the Complaint, Plaintiffs showed how Westlaw displays

---

*Inc.*, No. 16-3975, 2017 WL 5664996, at *1 (C.D. Cal. Sept. 14, 2017) (complaint did "not identify or illustrate, even in a representative capacity, the works"); *Salt Optics, Inc. v. Jand, Inc.*, No. 10-0828, 2010 WL 4961702, at *6 (C.D. Cal. Nov. 19, 2010) (unclear which allegations related to copyright versus trade dress claim).

[6]   ROSS's cited cases, D.I. 12, at 10–11, are inapposite as they involved government authors.

headnotes for the Supreme Court's decision in *Harper & Row*.  D.I. 1 ¶ 15.  ROSS asserts that

one of the headnotes that appears in that image is a quotation and that "[a]n examination of the

other headnotes reveals the same."  D.I. 12, at 10.  But ROSS does not address the other

headnote in the Complaint, which is original to Plaintiffs, much less all others.  *Compare* D.I. 1 ¶

15 ("Magazine's unauthorized publication of verbatim quotes from essentially the 'heart' of

unpublished presidential memoirs, which was intended to supplant copyright holders'

commercially valuable right of first publication, was not a 'fair use' within meaning of

Copyright Revision Act.") *with Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539

(1985) (no similar sentence).  Plaintiffs are not required to dissect Westlaw down to each

headnote at the pleadings stage, particularly given that their registration certificates provide

Westlaw a presumption of originality.  *See supra* 5.  To hold otherwise would require the owner

of copyrights in a book to explain how each sentence is original.  That is not the standard.  *See*

*Micro Focus (US), Inc. v. Ins. Servs. Office, Inc.*, 125 F. Supp. 3d 497, 503 (D. Del. 2015)

(pleading each protectable element not required, only that overall work is copyrightable).[7]

### 2.    ROSS Is On Notice that it Copied from Westlaw

With regard to ROSS's copying, ROSS raises two additional arguments.  Both are

misguided.

***First***, ROSS argues that Plaintiffs have not identified an "accused product."  D.I. 12, at 9.

But the Complaint identified ROSS's platform, and described it extensively.  D.I. 1 ¶¶ 24–28.

Likewise, ROSS feigns confusion as to whether Plaintiffs have accused its "web interface that

displays cases, the use of bold letters hitting on search terms, [or] some form of categorization of

cases."  D.I. 12, at 9.  Yet, the Complaint could not be clearer: this case is about ROSS's

---

[7]    The four elements at issue in *Matthew Bender & Co. v. West Publishing Co.*, cited by ROSS
(at 11), are not at issue here, nor is this a bench trial.  158 F.3d 674, 676–77 (2d Cir. 1998).

nefarious conduct, after being denied access to Westlaw, in hiring LegalEase to copy the Westlaw Content to create the ROSS platform. D.I. 1 ¶¶ 28–37. That is all that is required. *See Robert Kubicek Architects & Assocs., Inc. v. Bosley*, No. 09-00145, 2009 WL 3188391, at *2 (D. Ariz. Sept. 29, 2009) (plaintiff sufficiently alleged Defendants "used, copied, and/or modified" works); *Visual Commc'ns, Inc. v. Assurex Health, Inc.*, No. 14-3854, 2015 WL 430779, at *4 (E.D. Pa. Feb. 2, 2015) (allegation that defendant distributed work sufficient).[8]

*Second*, ROSS argues that Plaintiffs have not pleaded that it engaged in copying. D.I. 12, at 7. That argument is simply wrong, given the extensive allegations of copying discussed above. *See supra* 4, 6.[9] Nothing more is required. Instead, ROSS asks the Court to disregard Plaintiffs' allegations as some of them were framed "upon information and belief." D.I. 12, at 7. But the Third Circuit and this Court have held that such pleadings are appropriate where the required information is "within another party's control." *Brinkmeier v. Graco Children's Prods. Inc.*, 767 F. Supp. 2d 488, 496 (D. Del. 2011) (Stark, J.); *see Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 107 (3d Cir. 2015). ROSS's acts of copying are the type that this rule is intended to address. *See Malibu Media, LLC v. Doe*, No. 13-365, 2014 WL 7188822, at *4

---

[8] ROSS's cited cases, D.I. 12, at 9, are not to the contrary. *See TexasLDPC Inc. v. Broadcom Inc.*, No. 18-1966, 2020 WL 1285916, at *1 (D. Del. Mar. 18, 2020) (allegation that "basic program structure and logic" had been copied without explaining what they were); *Idenix Pharms., Inc. v. Gilead Scis., Inc.*, No. 13-1987, 2014 WL 4222902, at *7 (D. Del. Aug. 25, 2014) (patent case, considering invalidity counterclaim that did not explain how patent was invalid). ROSS knows what Westlaw, the West Headnotes, and the WKNS are.

[9] ROSS's cited cases, D.I. 12, at 7–8, are inapposite. *See Levey v. Brownstone Inv. Grp., LLC*, 590 F. App'x 132, 136 (3d Cir. 2014) (allegation that defendant used program with "same capabilities" as plaintiff's not enough to plead use of *plaintiff's* program); *Riordan v. H.J. Heinz Co.*, No. 08-1122, 2009 WL 4782155, at *10 (W.D. Pa. Dec. 8, 2009) (*pro se* plaintiff submitted "improper legal conclusions"); *Stampone v. Stahl*, No. 05-1921, 2005 WL 1694073, at *2 (D.N.J. July 19, 2005) (*pro se* plaintiff did not explain how defendant infringed "by not returning the disk"); *Marvullo v. Gruner & Jahr*, 105 F. Supp. 2d 225, 230 (S.D.N.Y. 2000) (allegation that defendant procured license and went beyond its scope not sufficient). Here, Plaintiffs alleged that ROSS engaged in a calculated scheme to hire LegalEase to copy Westlaw Content and used it to build a competing platform. *See supra* 4.

(D. Md. Dec. 16, 2014) (alleging copying "upon information and belief" appropriate).[10]

ROSS also argues that Plaintiffs should have further detailed its infringement because it believes Plaintiffs ran searches on its website, D.I. 12, at 7, but that makes no sense. First, the Complaint already contains detailed allegations. Second, this case is about what ROSS copied to create its platform, not just what it chose to make available. One cannot tell from using ROSS's platform how it was created or what materials were copied. That information is solely in ROSS's possession.[11] Third, ROSS's platform is not public—it is subject to ROSS's terms of service. That is why the image of ROSS's platform in the Complaint, which ROSS mistakenly believes Plaintiffs created, came from a public article. *Compare* D.I. 1 ¶ 26 *with* https://techcrunch.com/2017/10/11/ross-intelligence-lands-8-7m-series-a-to-speed-up-legal-research-with-ai/. Thus, Plaintiffs' pleading was appropriate.

3.    ROSS's Affirmative Defenses Cannot Be Decided in this Motion

Although ROSS does not recite the doctrines by name, its final argument asking this Court to find the WKNS unprotectable is based on the doctrines of *scènes à faire* and merger. D.I. 12, at 11–14. Those doctrines are affirmative defenses on which ROSS bears the burden of proof. *See Webloyalty.com, Inc. v. Consumer Innovations, LLC*, 388 F. Supp. 2d 435, 440 (D. Del. 2005) (merger and *scènes à faire* are affirmative defenses).[12] It is black-letter law that a "plaintiff is not required to plead sufficient facts so as to avoid an affirmative defense." *Ausikaitis ex rel. Masimo Corp. v. Kiani*, 962 F. Supp. 661, 674 (D. Del. 2013). Thus,

---

[10]   *Cf.* D.I. 12, at 7 (citing *Network Managing Sols., LLC v. AT&T Inc.*, No. 16-295, 2017 WL 472080, at *1 (D. Del. Feb. 3, 2017) (basis for infringement was "public")).

[11]   ROSS's reference to documents that it produced in West's prior litigation with LegalEase, D.I. 12 n.2, is surprising given that ROSS previously took the position that such documents should be used only in the *LegalEase* litigation, and had West return them.

[12]   *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1358 (Fed. Cir. 2014); *Am. Bd. of Internal Med. v. Von Muller*, No. 10-2680, 2012 WL 2740852, at *8 (E.D. Pa. July 9, 2012).

ROSS's argument fails as the Complaint does not establish ROSS's defenses on its face.  *See*

*Brody v. Hankin*, 145 F. App'x 768, 773 (3d Cir. 2005) (reversing dismissal where grounds for

affirmative defense "not present on the face of" complaint).  To the contrary, the Complaint is

replete with factual allegations making dismissal inappropriate.

As an initial matter, 17 U.S.C. § 102(b) merely codifies the traditional "idea/expression

dichotomy." *Golan v. Holder*, 565 U.S. 302, 328 (2012).  All that means is that although

"copyright does not protect ideas," it does protect "expressions of ideas." *Whelan Assocs., Inc.*

*v. Jaslow Dental Lab., Inc.*, 797 F.2d 1222, 1234 (3d Cir. 1986) (citing *Baker v. Selden*, 101 U.S.

99 (1879)).  The merger doctrine is an extension of this principle that "prohibits the copyrighting

of expression 'when "there are no or few other ways of expressing a particular idea."'" *TD Bank*

*N.A. v. Hill*, 928 F.3d 259, 277–78 (3d Cir. 2019) (quoting *Educ. Testing Servs. v. Katzman*,

793 F.2d 533, 539 (3d Cir. 1986) and *Apple Comput., Inc. v. Franklin Comput. Corp.*, 714 F.2d

1240, 1253 (3d Cir. 1983)).  Likewise, the *scenes à faire* doctrine "leaves unprotected 'incidents,

characters or settings which are as a practical matter indispensable in the treatment of a given

topic.'" *Id.* at 278 (quoting *Whelan*, 797 F.2d at 1236).

With these principles in mind, numerous courts have held that a taxonomy or hierarchical

organization is protected by copyright.  In *American Dental Ass'n v. Delta Dental Plans Ass'n*,

the Seventh Circuit considered whether Section 102(b) made ADA's *Code on Dental Procedures*

*and Nomenclature* unprotectable, and it concluded that it did not because "[c]lassification is a

creative endeavor."  126 F.3d 977, 979–981 (7th Cir. 1997).  Similarly, in *Oracle*, the Federal

Circuit held that Oracle's organization of its Java platform was protectable because it was

"original and creative," and it "could have been written and organized in any number of ways."

750 F.3d at 1368.  And in *Lipton v. Nature Co.*, the Second Circuit held that the plaintiff's

"arrangement of . . . terms [was] similarly protectible."  71 F.3d 464, 470 (2d Cir. 1995).[13]

ROSS argues (notably without support in the Complaint) that the entire WKNS "reflects a traditional mode of legal analysis and reasoning, dictated by underlying legal texts," D.I. 12, at 12, or that these practices are "unprotectable ideas" that "constrained" the WKNS such that "any 'expression' merges with the ideas themselves," *id.* at 13–14.  In other words, it asserts that the WKNS is unprotectable under the *scènes à faire* or merger doctrines.  Again, this rhetoric is divorced from what is contained in the Complaint, which does not allege that there was only one way to organize the WKNS.  ROSS's argument thus fails.  *See TD Bank*, 928 F.3d at 278 (no *scènes à faire* or merger where plaintiff could express ideas "in numerous ways").

Moreover, contrary to ROSS's argument, the Complaint actually shows the opposite: it alleges that the "development of the WKNS, beginning in print and now in a digital format, has been and continues to be the result of Plaintiffs' numerous creative choices about how to organize cases and which cases to place in that classification."  D.I. 1 ¶ 12.  "Nothing dictated the hierarchy that Plaintiffs created as cases, topics, legal issues, and points of law could be arranged in an unlimited number of combinations."  *Id.* ¶ 13.  Indeed, "[c]ases, areas of law, legal topics, legal issues, subtopics, and subissues can all be . . . organized in a variety of different ways—the structure, sequence, and organization of the WKNS is not something that has been achieved by accident or necessity; rather it is the result of decades of human creativity and choices."  *Id.* ¶ 21.  Although ROSS characterizes these as "bare allegation[s]," D.I. 12, at

---

[13]   Unlike this case, *Southco, Inc. v. Kanebridge Corp.*, on which ROSS relies (at 14), involved uncreative part numbers, not their overall organization.  390 F.3d 276, 285 n.4 (3d Cir. 2004).  It also cited approvingly the prior panel's contrasting of taxonomies that "reflected creative thought," as opposed to "leav[ing] no room for creativity."  258 F.3d 148, 156 (3d Cir. 2001); *see Matthew Bender*, 158 F.3d at 682 (creativity in "non-obvious choices from among more than a few options").

13

14,[14] they are deeply factual, must be taken as true, *see supra* 4, and are more than sufficient to establish that Plaintiffs chose one from enumerable ways to organize the corpus of all legal decisions.  If anything, this is something for summary judgment or trial, not a motion to dismiss.

ROSS's argument is further undermined by its absurd and unsupported suggestion that the subtopics within the "Abandoned and Lost Property" topic referenced in the Complaint were not selected by Plaintiffs.  D.I. 12, at 13.  Nothing in the Complaint (or the law) indicates that Plaintiffs were required to create such a topic at all, much less any of the other topics in the WKNS.  Indeed, a first year law student taking a Property course might have anticipated a "Property" topic, under which all property topics would appear.  Plaintiffs made a different decision.  Likewise, nothing dictated starting that topic with a subtopic on "Nature and Elements," as opposed to perhaps a subtopic on real property.  The choices are endless.  *See supra* 13.  This Court, however, need not decide this issue now.  ROSS can try to develop its unfounded theory that there is only one way to organize the law; the Complaint does not establish it.  That is enough to proceed to discovery.  *See Brody*, 145 F. App'x at 773.

### B.   Plaintiffs' Tortious Interference Claim Also Is Properly Pleaded

"It is well-established that a third party who interferes with and causes the breach of a contract may be held liable for damages."  *Kallok v. Medtronic, Inc.*, 573 N.W.2d 356, 361 (Minn. 1998).  "A cause of action for tortious interference with a contractual relationship requires five elements: '(1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) intentional procurement of its breach; (4) without justification; and (5) damages.'"  *Id.* at 362; D.I. 12, at 20.  The Complaint factually pleads each element: (1) West

---

[14]   ROSS also misdescribes the WKNS as an alphabetical, sequential list.  D.I. 12, at 12.  This is both wrong and misleading.  Out of all of the possible top-level topics, Plaintiffs chose a specific set, and the myriad subtopics are not alphabetical.  *See supra* 3.  ROSS cannot claim that the entire WKNS is uncreative, certainly not based on the Complaint.  D.I. 1 ¶¶ 12–13.

and LegalEase entered into a Subscription Agreement, D.I. 1 ¶ 29; (2) ROSS knew the terms of the agreement, *id.* ¶¶ 3, 28–29, 51–52; (3) ROSS hired LegalEase and directed it to act in violation of those terms, *id.*; (4) it did so without justification, *id.* ¶¶ 3, 30–31, 51; and (5) ROSS's actions damaged West in an amount to be determined at trial, *id.* ¶ 53.

Although ROSS agrees that the first and fifth elements have been properly pleaded, it conclusorily argues that the remaining elements were not. D.I. 12, at 20. Yet, contrary to ROSS's bald assertions that Plaintiffs did not allege that it "knew of [the Subscriber Agreement's] provisions," caused LegalEase's breach, and the breach was "without justification," *id.*, the Complaint does just that. Plaintiffs alleged that West and LegalEase had a Subscription Agreement, under which West provided access to Westlaw for many years. D.I. 1 ¶¶ 3, 30–31. Then, after ROSS requested and was denied access to Westlaw, it hired LegalEase "to acquire access to and copy Plaintiffs' valuable content," *id.* ¶¶ 1, 3, because it "knew that LegalEase had a valid contract with West." *Id.* ¶ 51. ROSS is alleged to have instigated its scheme "knowing that it violated the terms of LegalEase's contract with West." *Id.* ¶ 3. Thus, when ROSS caused LegalEase's "reproduction of Plaintiffs' copyrighted content and distribution of that content *en masse* to ROSS," it did so knowing of the Subscription Agreement and that doing so would breach its terms. *Id.* ¶¶ 3, 28–29, 51–52. The Complaint properly pleaded the elements of Plaintiffs' claim, just as the plaintiff in the case cited by ROSS (at 20) did. *See Travel Syndication Tech., LLC v. Fuzebox, LLC*, No. 11-553, 2012 WL 1931238, at *6–7 (D. Del. May 25, 2012) (claim sufficiently pleaded by alleged knowledge of a contract, breach of that contract, and plaintiff's performance of obligations under that contract, such that breach was not justified); *see also Nelson v. Fleet Nat'l Bank*, 949 F. Supp. 254, 260–61 (D. Del. 1996) ("It is a fair inference from the complaint that [the defendant] had no legitimate self-interest in

causing [contractual party's] alleged breach of contract with [the plaintiff].").[15]

ROSS also argues that Plaintiffs did not plead a lack of justification, but as just discussed, they did so.  D.I. 1 ¶¶ 3, 30–31, 51.  Moreover, as the "burden of proving justification is on the defendants," it was ROSS that was required to provide a justification for procuring LegalEase's breach of the Subscriber Agreement.  *See Telluride Asset Mgmt., LLC v. Bridgewater Assocs., Inc.*, No. 04-4862, 2005 WL 1719204, at *3 (D. Minn. July 11, 2005) (denying motion to dismiss where defendant did not satisfy its burden).  It did not do so.

Finally, ROSS argues, relying on California law, that this claim should be dismissed based on ROSS's statute of limitations affirmative defense.  D.I. 12, at 14.  ROSS is wrong as Delaware's three-year statute of limitations applies and, in any case, even under California law, ROSS's defense cannot be decided on a motion to dismiss.  Each issue is discussed below.

1.    Delaware Law Applies and Uses a Three-Year Statute of Limitations

ROSS's motion to dismiss fails because Delaware's three-year statute of limitations applies.  That is because, as discussed below, the tortious interference claim arose under Minnesota law, which uses a six-year statute of limitations.  Minn. Stat. Ann. § 541.05(1); *Wild v. Rarig*, 302 Minn. 419, 445–46 (Minn. 1975).   Under Delaware's borrowing statute, Delaware's shorter, three-year period applies.  Del. Code Ann. § 8121 (shorter of state where claim arose and Delaware applies); *Williams v. Caruso*, 966 F. Supp. 287, 292 (D. Del. 1997) (three-year statute of limitations for Delaware tortious interference claims); D.I. 12, at 14–15.

Tellingly, ROSS did not analyze Minnesota's relationship to the tortious interference claim.  Yet, each of *Travelers Indemnity Co. v. Lake*'s most significant relationship test factors

---

[15]   Unlike Plaintiffs' allegations of ROSS's hiring of LegalEase, the plaintiff in *Boston Scientific Corp. v. Nevro Corp.*, cited by ROSS (at 20), merely alleged that the defendant "encourag[ed]" the breach without specifics.  415 F. Supp. 3d 482, 498 (D. Del. 2019).

supports a finding that the claim arose under Minnesota law.  *See* 594 A.2d 38, 48 (Del. 1991).

***First***, as to "the place where the injury occurred," this Court has held that a "corporation sustains injury where it is incorporated and where it has offices."  *Grynberg v. Total Compagnie Francaise Des Petroles*, 891 F. Supp. 2d 663, 680 (D. Del. 2012) (Stark, J.); *Eureka Res., LLC v. Range Res.-Appalachia, LLC*, 62 A.3d 1233, 1238 (Del. Super. Ct. 2012) (injury of tortious interference claim is "principal place of business").  As West is incorporated and has its principal place of business in Minnesota, D.I. 1 ¶ 7; D.I. 12, at 14, this factor favors Minnesota.[16]

***Second***, as to "the place where the conduct causing the injury occurred," when the injury occurred "in only one state," this factor will not "be given particular weight."  *Eureka*, 62 A.3d at 1237–38.[17]  Moreover, although ROSS claims that conduct occurred out of its California offices, D.I. 12, at 16–17, there is nothing in the Complaint to support that conclusion.  Indeed, LegalEase is incorporated and has its principal place of business in Michigan.  D.I. 15 ¶ 13, *West Publ'g Corp. v. LegalEase Sols., LLC*, No. 18-1445 (D. Minn. July 18, 2018).  It is equally possible that ROSS and LegalEase hatched their plan in that location—certainly LegalEase's actions occurred there.  In any case, this factor is outweighed by all of the other factors that favor Minnesota and, at best, would require discovery, not resolution on a motion to dismiss.

***Third***, as to the parties' locations, West and ROSS are based in Minnesota and California, respectively.  D.I. 1 ¶¶ 7–8.  Normally, this would be "a wash."  *Eureka*, 62 A.3d at

---

[16]  The 30-year-old case ROSS cited (at 16) found the principal place of business relevant, but did not decide where the harm of a tortious interference claim was felt.  *See Int'l Bus. Machs. Corp. v. Comdisco, Inc.*, No. 91-C-07-199, 1991 WL 269965, at *8 (Del. Super. Ct. Dec. 4, 1991).  As it now is clear that the injury from this tort is felt where the plaintiff is located, its focus on the place where the conduct occurred, *id.*, no longer is relevant.

[17]  *CAE Inc. v. Gulfstream Aerospace Corp.*, cited by ROSS (at 17–18), is inapposite as (a) the claim was tortious interference with *prospective business relations*, not contact; and (b) the parties agreed on what law to apply, making the court's footnote concerning only one of the relevant factors dicta.  203 F. Supp. 3d 447, 456–57 n.10 (D. Del. 2016).

1238; D.I. 12, at 17.  Yet, as ROSS and West are incorporated in Delaware and Minnesota, respectively, D.I. 1 ¶ 8, this factor favors application of the statute of limitations for causes arising under those states' laws—here, Delaware.  *Eureka*, 61 A.3d at 1238.

**Fourth**, as to "the place where the relationship . . . between the parties is centered," in a tortious interference with contract case, the state governing the contract controls.  *Eureka*, 62 A.3d at 1237, 1239.  Minnesota law governs West's Subscriber Agreement with LegalEase. Declaration of Dale M. Cendali ("Cendali Decl.") Ex. 1 ¶ 17; *see Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 528 n.8 (7th Cir. 2015) (considering documents incorporated by reference).  Thus, this factor favors Minnesota.[18]

**Finally**, as to policy considerations, they too favor Minnesota.  The "relevant policies of the forum" and "other interested states" favor Minnesota's "greater interest" because it is where the "injured party resides and operates," and its longer statute is designed to "protect[] its residents from [harm]."  *Eureka*, 62 A.3d at 1237, 1239; *UbiquiTel Inc. v. Sprint Corp.*, No. Civ.A. 1489-N, 2005 WL 3533697, at *5 (Del. Ch. Dec. 14, 2005) (states have interest in "deterring tortious interference . . . and punishing those who do so interfere").[19]  The "protection of justified expectations" favors Minnesota because West is incorporated and based in Minnesota, D.I. 1 ¶ 7, and the contract with which ROSS interfered was a Minnesota contract, Cendali Decl. Ex. 1 ¶ 17.  *See Eureka*, 62 A.3d at 1239–40 (looking to contract and distinguishing situation where defendant "acted without giving thought to the legal consequences").  And "certainty, predictability and uniformity of result" favors Minnesota as

---

[18]   *Integral Resources (PVT) Ltd. v. Istil Group, Inc.*, cited by ROSS (at 17), did not consider the contract or support its analysis.  No. 03-904, 2004 WL 2758672, at *4 (D. Del. Dec. 2, 2004).

[19]   ROSS's reliance (at 18) on *Deutsch v. Turner Corp.* is misplaced as that case considered the "governmental interest" test, which "generally leads California courts to apply California law." 324 F.3d 692, 716 (9th Cir. 2003).  The "most significant relationship" test applies here, D.I. 12, at 15, and this case was not filed in California.

West has many users, all of whom are bound by a Subscription Agreement, D.I. 1 ¶ 18, and it would be inefficient not to apply Minnesota law just because a party from another state chooses to interfere with them.  *See UbiquiTel*, 2005 WL 3533697, at *5 (inefficient to apply different laws to similar situations).[20]  As all of these factors favor Minnesota, the Delaware borrowing statute applies Delaware's three-year statute of limitation, which has not run on Plaintiffs' claim.

2. <u>A Statute of Limitations Defense Is Not Established Under California Law</u>

A statute of limitations is an affirmative defense under Federal Rule of Civil Procedure 8(c)(1).  As a result, "only if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations" can the statute of limitations be raised on a Rule 12(b)(6) motion.  *Ausikaitis*, 962 F. Supp. 2d at 673.  "If the bar is not apparent on the face of the complaint, then it may not afford the basis for dismissal . . . ."  *Id.*

ROSS argues that California's two-year statute of limitations began running when Plaintiffs terminated the Service Agreement.  D.I. 1 ¶ 36.[21]  What ROSS fails to tell this Court is

---

[20]  ROSS only addresses this last factor and only with regard to concerns of forum shopping. D.I. 12, at 18.  Yet, the cases it cites (at 18) are inapposite.  *See Furnari v. Wallpang, Inc.*, No. 13C04287, 2014 WL 1678419, at *5 (Del. Super. Ct. Apr. 16, 2014) (Delaware's borrowing statute has built-in forum shopping deterrent; not addressing what law to apply); *Bell Helicopter Textron, Inc. v. Arteaga*, 113 A.3d 1045, 1059 (Del. 2015) (states that the forum shopping this factor considers is where the plaintiff tries "to opt out of the remedial schemes created by *their own* laws" (emphasis added)).  ROSS's cases do not establish that the tortfeasor's principal place of business is a litmus test.  *See Integral Res. (PVT) Ltd. v. Istil Grp., Inc.*, 155 F. App'x 69, 73 (3d Cir. 2005) (considering other factors, such as where injury occurred); *Calixto v. Watson Bowman Acme Corp.*, 637 F. Supp. 2d 1064, 1067 (S.D. Fla. 2009) (same); *see also Bulldog New York LLC v. Pepsico, Inc.*, 8 F. Supp. 3d 152, 165 (D. Conn. 2014) (same and considering tortious interference with *business expectancy*, not contract, claim); *Corning Inc. v. SRU Biosystems, LLC*, 292 F. Supp. 2d 583, 585 (D. Del. 2003) (tortious interference with *advantageous relationship*, not contract, claim).

[21]  ROSS also hedges by asserting that Plaintiffs may have known that LegalEase was working with "a machine learning legal research firm" in July 2017, D.I. 12, at 19, but the Complaint merely states that LegalEase gave an interview in July 2017, not that Plaintiffs were aware of it. This is insufficient to establish that the statute of limitations ran.  *See Gullo v. Equifax Info. Servs. LLC*, No. 15-01312, 2016 WL 3221735, at *3 (M.D. Fla. June 8, 2016) (denying motion

that California uses the discovery rule for contract-based claims, such that they "shall not be deemed to have accrued until the discovery of the loss or damage suffered by the aggrieved party." Cal. Civ. Proc. Code § 339(1). Thus, the LegalEase termination date cannot establish, based on the allegations in the Complaint, when Plaintiffs discovered or should have discovered that LegalEase's breach had been caused by ROSS. *Cf. AGA Shareholders, LLC v. CSK Auto, Inc.*, No. 07-0062, 2007 WL 1101264, at *2 (D. Ariz. Apr. 12, 2007) ("Plaintiff's knowledge of the breach of contract in January of 2004 does not imply that it should have known that the contract was breached due to tortious interference at that time."). "Frequently, determining whether the statute of limitations has been tolled pursuant to the 'discovery rule' or due to fraudulent concealment requires a factual inquiry not amenable to resolution on a motion to dismiss." *TL of Fla., Inc. v. Terex Corp.*, 54 F. Supp. 3d 320, 329 (D. Del. 2014) (Stark, J.) (denying motion to dismiss where court "cannot determine at this stage of the proceedings whether [plaintiff] knew, or should have known").[22] There is no reason or basis to decide it now.

## V.   CONCLUSION

Plaintiffs request that ROSS's motion be denied. Yet, if this Court believes further pleading to clarify any of the foregoing issues is necessary, Plaintiffs request an opportunity to file an amended complaint. *See Zanders v. Ferko*, 389 F. App'x 88, 89 (3d Cir. 2010).

---

to dismiss as SOL defense not proved on face of complaint).

[22]   ROSS's out-of-Circuit cases, D.I. 12, at 19, are inapposite. *See Abselet v. Hudson Labor Sols., Inc.*, 804 F. App'x 448, 449 (9th Cir. 2020) (summary judgment, not motion to dismiss; disputed issues of material fact requiring trial); *Square 1 Bank v. Lo*, No. 12-05595, 2014 WL 4181907, at *5 (N.D. Cal. Aug. 22, 2014) (complaint alleged actions constituting tortious interference began prior to limitations period); *DC Comics v. Pac. Pictures Corp.*, 938 F. Supp. 2d 941, 950 (C.D. Cal. 2013) (summary judgment; plaintiff had almost all information when limitations period began).

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jack B. Blumenfeld*

_____

Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
mflynn@mnat.com

*Attorneys for Plaintiffs Thomson Reuters*
*Enterprise Center GmbH and West Publishing*
*Corporation*

OF COUNSEL:

Dale M. Cendali
Joshua L. Simmons
Eric A. Loverro
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
(212) 446-4800

August 10, 2020

## CERTIFICATE OF SERVICE

I hereby certify that on August 10, 2020, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on August 10, 2020, upon the following in the manner indicated:

David E. Moore, Esquire                                      *VIA ELECTRONIC MAIL*
Stephanie E. O'Byrne, Esquire
Tracey E. Timlin, Esquire
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE  19801
*Attorneys for Defendant*

Joshua M. Rychlinski, Esquire                               *VIA ELECTRONIC MAIL*
Mark A. Klapow, Esquire
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, DC  20004
*Attorneys for Defendant*

Gabriel M. Ramsey, Esquire                                  *VIA ELECTRONIC MAIL*
Kayvan M. Ghaffari, Esquire
CROWELL & MORING LLP
3 Embarcadero Center, 26th Floor
San Francisco, CA  94111
*Attorneys for Defendant*

*/s/ Jack B. Blumenfeld*

_____
Jack B. Blumenfeld (#1014)