# EXHIBIT 1

**DENNIS RIORDAN, Plaintiff,**

**v.**

**H.J. HEINZ COMPANY, Defendant.**

**Civil Action No. 08-1122**

**United States District Court, W.D. Pennsylvania.**

**December 8, 2009**

**MEMORANDUM OPINION**

NORA BARRY FISCHER, District Judge.

I. INTRODUCTION

This action involves *pro se* Plaintiff Dennis Riordan's ("Plaintiff") claims against H.J. Heinz Company ("Defendant" or "Heinz") related to Plaintiff's unsolicited submission of a proposed bottling device invention to Defendant and Defendant's later sale of its condiments in an up-side down bottle. Presently before the Court is a third motion to dismiss filed by Defendant, pursuant to which it seeks to dismiss Plaintiff's misappropriation of ideas and copyright infringement claims set forth in his Second Amended Complaint (Docket No. 37). In support of its motion, Defendant argues that Plaintiff's misappropriation claim is barred by a waiver agreement executed by Plaintiff and submitted to Defendant in conjunction with his proposed invention and/or the applicable statute of limitations and that Plaintiff has otherwise properly failed to state claims upon which relief may be granted for both misappropriation of ideas and copyright infringement. (Docket Nos. 39, 42). Plaintiff maintains that the waiver is not enforceable, the statute of limitations should be tolled and that he has properly pled his claims. (Docket Nos. 41 and 42). Upon consideration of the parties' submissions, and for the following reasons, Defendant's motion to dismiss is GRANTED.

II. FACTUAL BACKGROUND

On January 21, 1999, Plaintiff filed an application with the United States Patent and Trademark Office in order to obtain a patent for a bottling container for condiments and flavored beverages, which he named a "Dual Chamber Container." (Docket No. 37 at ¶¶ 3, 9). Shortly thereafter, on January 28, 1999, Plaintiff initiated contact with Defendant by sending a letter to Dan Vogus, Defendant's Associate General Counsel, informing him that he recently applied for a patent for a container that would be "highly advantageous" to Defendant's business. (Docket No. 37 at ¶ 5; Docket No. 39-2).[1] Specifically, the letter stated that the device is a "unique innovation that allows you to provide the consumer with two (2) products occupying the same vertical space (Space Saver), e.g., mustard and catsup." (Docket No. 39-2).[2] On February 1, 1999, Defendant responded that it does not, as a matter of policy, accept any unsolicited submission of ideas from outside the company absent a written understanding defining the conditions relating to such unsolicited submissions.[3] (Docket No. 37 at ¶ 6; Docket No. 39-4). Defendant informed Plaintiff that he must execute and return the attached "Request for Consideration of Idea" form prior to Defendant considering Plaintiff's proposed device. (Docket No. 37 at ¶ 6; Docket No. 39-4).

Plaintiff signed, executed and mailed the "Request for Consideration of Idea" form on April 20, 1999 along with a minimal description of his idea and drawings of his bottling concept. (Docket No. 37 at ¶¶ 6-7; Docket No. 39-5). Pursuant to the "Request for Consideration of Idea" form, Plaintiff agreed that "[s]ubject to the conditions set forth in this document, I am submitting for [Defendant's] consideration my idea relating to:... Dual Chamber Bottle with Symmetrical Ends." (Docket No. 39-5). Plaintiff's submission further explains that the device "[c]an be used as dispenser of for ex. Mustard &

Catsup or other combinations." (Docket No. 39-5). The executed form also sets forth the terms of the solicitation as follows:

1. I acknowledge and agree that this submission has not in any way been solicited by H.J. Heinz Company ("HEINZ"), is not made in confidence, and does not establish any confidential relationship between HEINZ and me.

2. I agree that the use or non-use that HEINZ may make of any ideas submitted by me shall be at the exclusive discretion of HEINZ.

3. I acknowledge and agree that HEINZ has not and is not promising any compensation for my idea or the use of my idea, and that all agreements as to compensation, if any, shall be in writing.

4. I waive and relinquish any rights that I may have in connection with said idea, except those rights that a valid patent, trademark, or copyright may cover.

5. I agree that HEINZ shall be under no obligation to return any material that [I] submit to HEINZ.

6. I further agree that the conditions set forth in this letter shall apply to any additional disclosures I make to HEINZ by me relating to the above idea.

(*Id.* ). As a supplement to the brief description on the form, Plaintiff attached a handwritten descriptive page[4] and a notarized typewritten page,[5] containing bullet point descriptions of his bottle invention. ( *Id.* ). Also attached were a series of technical illustrations of the container labeled Figure 1 through Figure 6.[6] (*Id.* ). Defendant responded to Plaintiff in June of 1999, thanking him for his letter regarding a potential new bottle, but ultimately rejecting his idea after reviewing the concept with the appropriate department.[7] (Docket No. 37 at ¶ 8).

Plaintiff claims that he introduced an idea for a "new bottling concept" to Defendant in his 1999 correspondence. (Docket No. 37 at ¶ 12). Plaintiff's submission of his idea to Defendant was financially motivated. (*Id.* at ¶ 16). With respect to the specifics of the idea which he submitted, he avers that it was a "new bottle which can stand up-side down by the novel idea of creating a base by extending the walls of the container beyond it's [sic] capped closure and standing on the circumferential edge of that extension." (*Id.* ). He complains that Defendant "knowingly and unlawfully deceived [him] by not informing him of [the] company's intent to expand on [his] idea by simply making the base detachable." ( *Id.* ). He further maintains that his idea was "the impetus in the development of dispensing ketchup and other condiments in an up-side' down manner." (*Id.* ).

Plaintiff alleges that Defendant permitted its employees to review and examine his idea, including his drawings and description, which enabled Defendant to adapt or alter his idea and ultimately develop its up-side down condiment dispenser. (Docket No. 37 at ¶ 15). He contends that these alterations were made by Defendant "in an attempt to conceal" its misappropriation of his idea. (*Id.* at ¶ 15). Moreover, Plaintiff complains that the Defendant's misappropriation or theft of his idea occurred three years after he submitted his "novel idea, drawings included, to Defendant," i.e., in 2002. (*Id.* at ¶¶ 12, 16).

After his 1999 submissions to Defendant, on August 22, 2000, the United States Patent and Trademark Office issued Plaintiff Patent Number 6,105,812, for his "Dual Chamber Container." (Docket No. 37 at ¶ 9; Docket No. 39-3). Plaintiff avers that Defendant officially introduced its "up-side down bottle" via a press release in August of 2002. (Docket No. 37 at ¶ 10). He further alleges that in 2005 or 2006, Defendant altered their bottling terminology from "up-side down" to "top-down" bottle. (*Id.* ). In January of 2006, Plaintiff contacted Defendant's legal department to request copies of their previous correspondence. (Docket No. 37 at ¶ 11). Plaintiff alleges that Defendant informed him that he had been "red-flagged" in their system and an attorney for Defendant asked Plaintiff if he was going to sue for any reason. (*Id.* ).

Based on the above allegations, Plaintiff asserts claims of misappropriation of ideas and copyright infringement against Heinz. (Docket No. 37). With respect to his claim of copyright infringement, Plaintiff avers that he sought a valid copyright registration for his "bottle design drawings," "artwork" and associated text on September 2, 2009, prior to the filing of his Second Amended Complaint. (Docket No. 37 at ¶ 18). In support of this claim, Plaintiff has attached a "Form CO - Application for Copyright Registration" dated September 1, 2009 to his Second Amended Complaint, which he claims was mailed to the United States Copyright Office. (Docket No. 37 at ¶ 19; Docket No. 37-3). He states that because of his ignorance of the law, he believed that his patent protected the subject matter of the materials to which he now seeks copyright protection. (Docket No. 37 at ¶ 20).

Finally, Plaintiff seeks the following relief: (1) a declaratory judgment stating that Defendant violated Plaintiff's rights, including causing Plaintiff psychological trauma by misappropriating his idea and by infringing Plaintiff's copyright privileges; (2) an injunction ordering Defendant to cease and desist all bottling production "until a favorable resolution can be satisfactorily substantiated by all parties of concern"; and (3) compensatory and punitive damages in the amount of $57,000,000, plus royalties. (Docket No. 37 at 5).

III. PROCEDURAL HISTORY

Plaintiff initially commenced this action by filing his Complaint *pro se* in the United States District Court for the Southern District of New York. (Docket No. 4). Thereafter, on August 11, 2008, that Court entered an order transferring the case to the United States District Court for the Western District of Pennsylvania. ( *Id.* ). On August 22, 2008, Plaintiff moved for Leave to Proceed *in forma pauperis* (Docket No. 5), which this Court denied. (Docket No. 6). After paying the proper filing fee on August 25, 2008, Plaintiff filed his Complaint with this Court. (Docket No. 8).

On October 20, 2008, Defendant filed a Motion to Dismiss Pursuant to Rules 12(b)(6), 12(e), and, in the alternative, Rule 12(d) and 56. (Docket No. 11). Plaintiff filed his response on December 23, 2008. (Docket No. 18). Then, on December 30, 2008, upon consideration of the parties' submissions, this Court ordered Plaintiff to file an Amended Complaint. (Docket No. 22).

Pursuant to this Order, Plaintiff filed his Amended Complaint on February 17, 2009. (Docket No. 25). Defendant again moved to dismiss Plaintiff's claims. (Docket No. 26). The Court liberally construed Plaintiff's Amended Complaint as potentially asserting claims of misappropriation of ideas, misappropriation of trade secrets, trademark infringement and copyright infringement. (Docket No. 35 at 6). Further, the Court recognized that Plaintiff had voluntarily withdrawn any claim of patent infringement in his pleadings. (*Id.* ). After considering the parties' submissions, the Court granted Defendant's motion and ordered that: Plaintiffs' misappropriation of trade secrets and trademark infringement claims were dismissed, with prejudice; Plaintiffs' misappropriation of ideas and copyright infringement claims were dismissed, without prejudice; and Plaintiff was granted leave to amend his misappropriation of ideas and copyright infringement claims. (Docket No. 35 at 19). Specifically, the Court granted Plaintiff leave to amend his misappropriation of ideas claim in order to describe succinctly his "idea" that was allegedly misappropriated and to amend his copyright infringement claim "to the extent that he can allege that he owns a registered copyright in any of the subject matter at issue." (*Id.* ).

As directed, Plaintiff filed his Second Amended Complaint on September 14, 2009. (Docket No. 37). Defendant then filed its third Motion to Dismiss and Brief in Support on September 28, 2009. (Docket Nos. 38, 39). Plaintiff filed two pleadings in response, the first styled as a "Sur-Reply" and the second as a "Brief in Support," on October 28, 2009 and October 30, 2009, respectively. (Docket Nos. 41, 42). Finally, Defendant filed its Reply Brief on November 11, 2009.

All briefing has concluded and the motion is now ripe for disposition.

IV. LEGAL STANDARD

A valid complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). To survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* ___ U.S. ____, ____, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2008)); *see also Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3d Cir. 2009).

The Supreme Court in *Iqbal* clarified that the decision in *Twombly* "expounded the pleading standard for all civil actions.'" *Iqbal,* 129 S.Ct. at 1953; *Fowler,* 2009 U.S.App. LEXIS 18626, at *15. The Court further explained that although a district court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, the pleadings must include factual allegations to support the legal claims asserted. *Iqbal,* 129 S.Ct. at 1949, 1953. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949 (citing *Twombly,* 550 U.S. at 555); see also *Fowler,* 578 F.3d at 210; and *Phillips v. County of Allegheny,* 515 F.3d 224, 232 (3d Cir.2008). The determination of whether a complaint contains a plausible claim for relief under the facts asserted "is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 129 S.Ct. at 1950 (citing *Twombly,* 550 U.S. at 556); *Fowler,* 578 F.3d at 211. In light of *Iqbal,* the United States Court of Appeals for the Third Circuit has instructed that district courts should first separate the factual and legal elements of a claim and then, accepting the "well-pleaded facts as true," "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief.'" *Fowler,* 578 F.3d at 210-11. Ultimately, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 556).

Additionally, because Plaintiff is proceeding *pro se,* his allegations are to be liberally construed as he is held to a less stringent standard than attorneys. *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007); *see also Washam v. Stesis,* 321 Fed.Appx. 104, 105 (3d Cir. 2009)(not precedential).

In evaluating a Rule 12(b)(6) motion, a court "may look beyond the complaint to matters of public record, including court files and records... and documents referenced in the complaint or essential to a plaintiff's claim which are attached to either the [c]omplaint or the defendant's motion." *Spence v. Brownsville Area Sch. Dist.,* Civ. A. No. 08-0626, 2008 U.S. Dist. LEXIS 55026, at *7 (W.D.Pa. July 15, 2008) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.,* 998 F.2d 1192, 1196 (3d Cir. 1993)). A court may consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Miller v. Clinton County,* 544 F.3d 542, 550 (3d Cir. 2008) (quoting *Pension Benefit Guar. Corp.,* 998 F.2d at 1196.). Otherwise, a plaintiff with a legally insufficient claim could survive a motion to dismiss "simply by failing to attach a dispositive document on which it relied." *Pension Benefit Guar. Corp.,* 998 F.2d at 1196.

## V. DISCUSSION

The Court first turns to the alleged waiver, a threshold issue, and will then address the sufficiency of Plaintiff's allegations set forth in his misappropriation of ideas and copyright infringement claims.

### A. *Effectiveness of the Waiver in the Request for Consideration of Idea Form*

In his Second Amended Complaint, as well as several other pleadings in this case, Plaintiff admits that he signed the "Request for Consideration of Idea" form in conjunction with his submissions to Heinz in 1999. (Docket No. 37 at ¶ 6). Pursuant to its terms, Plaintiff agreed, in pertinent part, that: (1) his idea submission was not solicited by Defendant; (2) no confidential relationship between Plaintiff and Defendant was created by his submission; (3) no compensation for the idea was promised by Defendant and that any agreement regarding compensation would be set forth in a separate written agreement; and (4) he "waived and relinquished" any rights in his ideas, except those covered by a "valid patent, trademark or copyright." (Docket No. 39-5). Defendant argues that the language of the "Request for Consideration of Idea" form is legally binding and operates as a waiver of Plaintiff's misappropriation of

ideas claim. (Docket No. 39 at 6). Plaintiff contends that the form is not a contractual agreement and, further maintains that he was not made fully aware of the form's intent and that "there was not a knowing, voluntary and intelligent waiver." (Docket No. 41 at 1-2).

This Court has previously applied Pennsylvania choice of law rules, and concluded that Pennsylvania law governs Plaintiff's misappropriation of ideas claim. *See Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 498 (1941); *Hammersmith v. TIG Ins. Co.,* 480 F.3d 220, 230 (3d Cir.2007). With respect to the Defendant's waiver defense, there are no substantive differences in the laws of Pennsylvania and New York[8] regarding general principles of contractual waivers or release agreements. Accordingly, as there is no conflict between the laws of the two jurisdictions, the Court will apply Pennsylvania law to this dispute. *See Hammersmith,* 480 F.3d at 230 ("If two jurisdictions' laws are the same, then there is no conflict at all, and a choice of law analysis is unnecessary.").

Releases of liability, such as that contained in paragraph 4 of the "Request for Consideration of Idea" agreement, "are not favored" under Pennsylvania law. *Beck-Hummel v. Ski Shawnee, Inc.,* 902 A.2d 1266, 1269 (Pa.Super. 2006)(citing *Zimmer v. Mitchell and Ness,* 385 A.2d 437, 439 (Pa.Super. 1978), *aff'd,* 416 A.2d 1010 (Pa. 1980)). However, a release agreement may be enforceable if: (1) it does "not contravene any policy of the law"; (2) it involves a "contract between individuals relating to their private affairs"; (3) each party is a "free bargaining agent"; and (4) the agreement "spell[s] out the intent of the parties with the utmost particularity." *Id.* (citing *Kotovsky v. Ski Liberty Operating Corp.,* 603 A.2d 663, 665 (Pa. Super. 1992)). In addition, the release must be strictly construed and "against the party asserting it." *Id.* (citing *Kotovsky,* 603 A.2d at 665).

In this Court's estimation, all of the above requirements have been established in this case, and the "Request for Consideration of Idea" form is a binding agreement, which will be enforced.

The agreement does not contravene any public policy as there are no statutes or regulations barring parties from limiting their rights to those arising under the patent, copyright or trademark laws of the United States in an agreement involving an unsolicited idea submission by an inventor to a company. In fact, several district courts have held that similar waivers were effective to bar common law claims.[9] Moreover, an unsolicited submission of an idea by an individual inventor to a company pursuant to the type of agreement involved in this case does not constitute an unconscionable contract of adhesion,[10] which generally arises in the context of a consumer purchasing goods or services from a company. *See Victor G. Reiling Assoc.,* 406 F.Supp.2d at 185 ("Plaintiffs' argument that the [agreement] was a contract of adhesion and therefore unenforceable because it was not fairly negotiated and/or because [the inventor] did not understand its terms also fails as a matter of law."). With respect to Plaintiff's contention that the waiver was not knowing and voluntary because he believed "[t]here would eventually be some sort of compensation forthcoming for the use of any and all ideas,'" his allegations and correspondence with Defendant demonstrate otherwise. Indeed, he presently avers that he executed the "Request for Consideration" form and submitted it, along with his drawings, etc., to Defendant "in an attempt to be compensated from the defendant for the introduction of the idea," (Docket No. 37 at ¶ 15), that he was on a "quest to find suitable financial backing and/or compensation for release of the idea to the bottle concept" (Docket No. 41 at 1), and the form itself explicitly states that "I acknowledge and agree that HEINZ has not and is not promising any compensation for my idea or the use of my idea, and that all agreements as to compensation, if any, shall be in writing" (Docket No. 39-5).

The "Request for Consideration of Idea" form also clearly involves a "contract between individuals relating to their private affairs" and both parties can be considered "free bargaining agents." *Beck-Hummel,* 902 A.2d at 1269. Again, the substance of the agreement involves the unsolicited submission of an idea by a private individual to a corporation for its consideration to determine if a potential business relationship could be formed. (Docket No. 39-5). Moreover, although Defendant's initial correspondence directed Plaintiff to execute and return the attached "Request for Consideration of Idea" form, which he did without question, Plaintiff does not allege that he was prevented from negotiating the terms with Defendant.

Further, the "Request for Consideration of Idea" agreement, strictly construed against Defendant, its drafter, "spell[s] out the intent of the parties with [the] utmost particularity." *Beck-Hummel,* 902 A.2d at 1269. The pertinent provision states that "I waive and relinquish any rights that I may have in connection with said idea, except those rights that a valid patent, trademark, or copyright may cover." (Docket No. 39-5 at ¶ 4). This language is clear and unambiguous, explicitly providing that Plaintiff agreed to waive any rights that he possessed in the unsolicited ideas he presented to Defendant, except those covered by the patent, trademark, or copyright laws. *See American Flint Glass Workers Union, AFL-CIO v. Beaumont Glass Co.,* 62 F.3d 574, 581 (3d Cir. 1995)(ambiguity is a question of law for the court and "[t]o be unambiguous, an agreement must be reasonably capable of only one construction."). No other construction is reasonable.

Therefore, given the express language of the waiver in the "Request for Consideration of Idea" agreement, which is enforceable, Plaintiff plainly waived any potential claims arising from his submissions to Defendant in 1999, except to the extent that his rights were covered by a valid patent, trademark or copyright. *See Hassell,* 982 at 528 ("The Court concludes that the language contained in the Suggestion Agreement is susceptible of only one interpretation. The plaintiffs may only bring claims against Chrysler resulting from patent, copyright or trademark infringement."). Plaintiff's remaining claims[11] are only for misappropriation of ideas, a state common law claim, and copyright infringement. Accordingly, Plaintiff waived his right to assert a claim for misappropriation of ideas and this claim must be dismissed.

B. *Plaintiff's Claims Fail as a Matter of Law*

Although the Court has found that the waiver in the "Request for Consideration of Idea" form is enforceable, and that Plaintiff's misappropriation of ideas claim must be dismissed because it is precluded by the waiver, the Court will now address Plaintiff's allegations of his misappropriation of ideas and copyright infringement claims, which are also subject to dismissal for failure to state a claim upon which relief can be granted.

1. Misappropriation of Ideas

Plaintiff was granted leave to amend his misappropriation of ideas claim in order to permit him to clarify the idea which he alleges he submitted to Defendant. (Docket No. 35 at 19). He alleges in his Second Amended Complaint that the idea he submitted is for a "new bottle which can stand up-side down by the novel idea of creating a base by extending the walls of the container beyond it's [sic] capped closure and standing on the circumferential edge of that extension." (Docket No. 37 at ¶ 12). He references the patent he owns for a "Dual Chamber Container" as well as the six drawings he submitted to Defendant, which are virtually identical to the drawings in his patent. (Docket No. 37). Plaintiff maintains that Defendant permitted its employees to review and examine his idea, including his drawings and descriptions. (Docket No. 37 at ¶ 15). He claims that this review enabled Defendant to enhance, adapt or alter his idea "by simply making the base detachable" and, ultimately, develop its up-side down condiment dispenser. (Docket No. 37 at ¶ 15). These allegations are insufficient as a matter of law.

Under Pennsylvania law, the tort of misappropriation of ideas has two elements: (1) the plaintiff had an idea that was novel and concrete, and (2) his idea was misappropriated by the defendant. *Blackmon v. Iverson,* 324 F.Supp.2d 602, 607 (E.D.Pa.2003)(citing *Sorbee Int'l Ltd. v. Chubb Custom Ins. Co.,* 735 A.2d 712, 714 (Pa.Super. 1999).

For an idea to be legally protected, the idea must meet the threshold requirement of novelty. *Blackmon,* 324 F.Supp.2d at 607. An idea is novel and merits protection when it is truly innovative, inventive, and new. *Id.* An idea is not novel if it is merely a clever version or variation of already existing ideas. *Id.* Novelty and concreteness are required so that the court can identify an idea as having been created by one party and stolen by another. *Sorbee,* 735 A.2d at 714.

At this stage, Plaintiff has sufficiently alleged a novel and concrete idea for a dual-chamber container with extended walls that create bases around the capped enclosures on both ends of the bottle,

permitting the container to stand on either side. However, Plaintiff has not sufficiently alleged that Defendant misappropriated this idea.

With respect to whether an idea has been misappropriated, Pennsylvania courts look to the three elements of common law misappropriation:

> (1) the plaintiff "has made substantial investment of time, effort, and money into creating the thing misappropriated such that the court can characterize the thing' as a kind of property right," (2) the defendant "has appropriated the thing' at little or no cost such that the court can characterize the defendant's actions as reaping where it has not sown,'" and (3) the defendant "has injured the plaintiff by the misappropriation."

*Sorbee,* 735 A.2d at 716 (quoting *LeBas Fashion Imports of USA, Inc. v. ITT Hartford Ins. Group,* 50 Cal. App.4th 548, 59 Cal.Rptr.2d 36 (Ca.App.1996)).[12] The first requirement is met, as the Court can reasonably infer from the allegations in the Second Amended Complaint that Plaintiff invested time and money in the creation of his idea, including by obtaining a patent for his dual chamber container. However, Plaintiff has not sufficiently alleged the remaining elements. Plaintiff has not alleged that Defendant produced a "dual chamber container" or even a single chamber bottle "which can stand up-side down" on a base which extends from the "walls of the container beyond it's capped closure." (*See* Docket No. 37). Instead, he maintains that Defendant improved his idea for a dual chamber container "by making the base detachable,"creating its up-side down or TOPDOWN® bottle within which its condiment products are now sold. (Docket No. 37 at ¶ 10). He also voluntarily submitted his ideas to Defendant, subject to the terms of the "Request for Consideration of Ideas" form, agreeing that "the use or non-use that HEINZ may make of any ideas submitted by [Plaintiff] shall be at the exclusive discretion of HEINZ." (Docket No. 39-5). Therefore, he has not established that Defendant "appropriated" his idea.

Plaintiff has also failed to allege that he was injured by the alleged misappropriation, as he maintains only that he was not paid for his idea.

> In order to state a claim for idea misappropriation, it must be the taking of the idea itself that causes the plaintiff a competitive or other financial harm. This occurs only when the defendant's use of the idea deprives the plaintiff of some competitive or financial benefit or causes some other detriment separate from the misappropriation.

*Blackmon,* 324 F.Supp.2d at 610. Merely alleging that one was not paid for an idea which was voluntarily submitted to another is insufficient. *Id.* [13]

For the above reasons, Defendant's motion to dismiss Plaintiff's misappropriation of ideas claim is granted, and said claim is dismissed, with prejudice.[14]

2. Copyright Infringement

The Court also granted Plaintiff leave to amend his claim of copyright infringement against Defendant, "to the extent that he can allege he owns a registered copyright in any of the subject matter at issue." (Docket No. 35 at 19). In his Second Amended Complaint, Plaintiff alleges that he has submitted an application to register a copyright "relating to subject matter originating in 1998 of plaintiff's bottle design drawings' as described art-work' within the initial complaint, as well as the first amended complaint." (Docket No. 37). Upon consideration of the allegations of his Second Amended Complaint, and the attachments thereto, Plaintiff has failed to properly allege either registration or ownership of a copyright, and his copyright infringement claim must be dismissed.

Initiation of a civil suit for copyright infringement requires either preregistration or registration of the work in question in accordance with the United States Copyright Act prior to initiating the suit. 17 U. S.C. § 411(a).[15] This Court has previously recognized that there is a split amongst the Courts of Appeals as to whether a suit can be maintained while an application for copyright registration remains

pending, as it is in this case. *See Tegg Corp. v. Beckstrom Elec. Co.,* Civ. A. No. 08-435, 2008 WL 2682602, at *5-6 (W.D.Pa. July 1, 2008). The United States Court of Appeals for the Third Circuit has not addressed this issue. One line of cases, relying on *Apple Barrel Prod., Inc. v. Beard,* 730 F.2d 384, 386-87 (5th Cir.1984), permits the commencement of a copyright infringement action in district court upon the Copyright Office's receipt of the copyright registration application, copies of the works sought to be copyrighted and the payment of a filing fee. *See Tang v. Hwang,* 799 F.Supp. 499, 502-03 (E.D.Pa. 1992); *R & B, Inc. v. Needa Parts Mfg.,* Civ. A. No. 01-1234, 2001 U.S. Dist. LEXIS 17406, 2001 WL 1251211 (E.D.Pa. Aug. 13, 2001); *Bieg v. Hovnanian Enters., Inc.,* Civ. A. No. 98-5528, 1999 U.S. Dist. LEXIS 17387, 1999 WL 1018578 (E.D.Pa. Nov.8, 1999). A second line of cases requires a plaintiff to plead that he has actually registered the works in question with the Copyright Office prior to commencement of the copyright infringement action. *See La Resolana Architects, PA v. Clay Realtors Angel Fire,* 416 F.3d 1195, 1200, 1208 (10th Cir.2005)("A suit for copyright infringement cannot be brought unless and until the copyright is registered."); *Brewer-Giorgio v. Producers Video, Inc.,* 216 F.3d 1281, 1285 (11th Cir.2000); *In re Literary Works in Electronic Databases Copyright Litigation,* 509 F.3d 116 (2d Cir.2007), *cert. granted Reed Elsevier, Inc. v. Muchnick, ___ U.S. ____,* 129 S.Ct. 1523, 173 L. Ed.2d 655 (2009); *Wellness Pub v. Barefoot,* Civ. A. No. 02-3773, 2008 WL 108889 at * 8 (D.N.J. Jan. 8, 2009). In this Court's estimation, the more persuasive view is that set forth in the second line of cases, which adhere to the plain language of 17 U.S.C. § 411(a), and preclude a plaintiff from bringing a copyright infringement claim while a registration is pending. Plaintiff alleges in his Second Amended Complaint only that he has submitted an application for copyright registration and affixes proof of the filing of the application and, therefore, has failed to meet the jurisdictional prerequisites for bringing a copyright infringement claim in this Court. Accordingly, Plaintiff's copyright infringement claim must be dismissed as this Court lacks subject matter jurisdiction over his claim.

In addition, even if the registration requirement had been met, Plaintiff's allegations fail to properly set forth the essential elements of a copyright infringement claim. To establish a claim of federal copyright infringement, a plaintiff must establish "(1) ownership of a valid copyright; and (2) unauthorized copies of original elements of the Plaintiff's work." *Dun & Bradstreet Software Servs. v. Grace Consulting, Inc.,* 307 F.3d 197, 206 (3d Cir.2002). Ownership of a valid copyright requires the following: "(1) originality in the author; (2) copyrightability of the subject matter; (3) a national point of attachment of the work, such as to permit a claim of copyright; (4) compliance with applicable statutory formalities; and (5) (if the owner is not the author) a transfer of rights or other relationship between the owner and the author." 13 MELVILLE B. NIMMER AND DAVID NIMMER, NIMMER ON COPYRIGHTS, § 13.01[A] (2007).

Plaintiff's allegations in his Second Amended Complaint that he submitted copyrightable subject matter to Defendant are improper legal conclusions which are not credited at the motion to dismiss stage. *See Fowler,* 578 F.3d at 210-11. Further, Plaintiff's "idea" for an up-side down bottle is not copyrightable subject matter. *See* 17 U.S.C. § 102(b)("In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of form in which is described, explained, illustrated, or embodied in such work."); 17 U.S.C. § 102(a)(Copyright law only protects a work of authorship "fixed in a tangible medium of expression."). Moreover, to the extent that the text, drawings or other elements contained in the '812 patent contain copyrightable subject matter, Plaintiff has failed to specifically allege same in his Second Amended Complaint. He has also failed to allege that Defendant copied any of these materials. Accordingly, Plaintiff has failed to state a claim for relief for copyright infringement that is plausible on its face.

Based on the foregoing, Plaintiff's copyright infringement claim must be dismissed.[16]

C. *Leave to Amend Complaint*

The United States Court of Appeals for the Third Circuit has held that "if a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips,* 515 F.3d at 245. Further, "even when [a] plaintiff does not seek

leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time." *Id.*

Plaintiff will not be granted leave to amend his complaint a third time as any further amendment would be futile. Plaintiff expressly waived any claims against Defendant which were not covered by a valid patent, trademark or copyright in 1999, including his claim for misappropriation of ideas. Moreover, even without these deficiencies, Plaintiff has failed to set forth sufficient facts to demonstrate a plausible claim to relief for misappropriation of ideas as he has not alleged that Defendant misappropriated his "idea" nor that he was injured by said misappropriation as required by Pennsylvania law. Further amendment cannot cure these deficiencies. Accordingly, Plaintiff's misappropriation of ideas claims must be dismissed, with prejudice.

In addition, this Court lacks subject matter jurisdiction over Plaintiff's copyright infringement claim because he has not met the statutory prerequisites for filing suit. Given Plaintiff's allegations that he has only applied for a copyright of certain subject matter, further amendment cannot cure this defect. Accordingly, as Plaintiff's copyright infringement claim is premature, it must be dismissed, without prejudice.

## VI. CONCLUSION

Based on the foregoing, Defendant's Motion to Dismiss [38] is GRANTED. Plaintiff's misappropriation of ideas claim is dismissed, with prejudice, and his claim for copyright infringement is dismissed, without prejudice. However, as all of Plaintiff's claims have been dismissed from this action, the Clerk of Court is directed to mark this case CLOSED.

---------

Notes:

[1] The letter reads as follows: Dear Mr. Vogus:

I have recently filed a patent for a container which I strongly feel would be highly advantageous and well worth the time of investigating.

This is a great opportunity for your company as you well know that packaging is of utmost importance in selling your product in today's competitive market. Companies are currently devising advertising strategies to enhance their innate value by obtaining a competitive edge. Think of what such a product will do for company sales, revenue and increased market value.

Are you willing to let this innovative "Blockbuster Bottle for the Millennium" pass you by? More importantly, are you willing to let your competition take advantage of this futuristic innovation? Do not hesitate.

This unique innovation allows you to provide the consumer with two (2) products occupying the same vertical space (Space Saver), e.g., mustard and catsup. A perfect combination for any household, convenient and practical, but most of all total satisfaction for the consumer.

Lead the way into the new century and blow away your competition. This unique packaging is inevitable, be the first to utilize its marketing power.

I can be reached at (914) ***_**** for further questions and information.

s/ Dennis Riordan Dennis Riordan, Inventor Patent Pending

(Docket No. 39-2).

[2] Plaintiff sent a similar letter and submission to Crown, Cork & Seal Co. Inc. by fax on February 8, 1999. (Docket No. 37-2).

[3] The February 1, 1999 letter states: Dear Mr. Riordan:

Thank you very much for your letter, dated January 28, 1999, in which you indicate that you believe you may have ideas that may be of interest to H.J. Heinz Company ("Heinz").

As a matter of policy, Heinz does not solicit the submission of ideas from outside our company. This being the case, I am returning your letter dated January 28, 1999. Heinz is willing to consider unsolicited ideas only if a written understanding defining the conditions relating to such unsolicited submissions exists.

On the reverse side of this letter, you will find a request form setting forth such conditions. You should execute this form and return it to me at the time you submit your idea in order for Heinz to receive or consider your idea.

Very truly yours, s/ Max F. Miller

(Docket No. 39-4).

[4] The handwritten descriptive page is dated 4/20/99 and states the following:

- A Revolutionary bottle appropriate to your product line.

- A "Space Saver" which houses Mustard and Catsup in one vertical space.

- Perfect for picnics, sports events, college students or single people.

- Bottle can be altered to accomodate [sic] current triangular pour spouts AND decreasing deviation from the true scope and spirit of the invention.

- Make a tremendous impact on market AND increase company revenue.

- Innovative packaging for the "Millenium" "Two for 2 Thousand"

Thank you s/ Dennis Riordan # 914-***-****

(Docket No. 39-5).

[5] The typewritten descriptive page is dated in November of 1998 and states the following:

*"The 2 Liter Flavor Saver": "The Flavor Saver that Savors the Flavor"*

*"Savor the Flavor With the Flavor Saver"*

 Unique compartimentalization will prevent 2 liter carbonated beverage from going flat (MAJOR CONSUMER COMPLAINT) 1 liter remains carbonated during consumption of opposite liter.

 Conical divider displaces carbonated beverage so weight is distributed as to prevent "Top-Heaviness".

 Circumference is same as present 2 liter bottle so as not to cause interference with present crate shipping.

 Conical divider allows for mixing 2 liter carbonated beverage that offers more than one flavor, i.e.; diet/regular>>>*"2 Liter Buddy Pac"*

Not limited to 2 liter bottle>>>Perfect for 3 liter; 1.5 + 1.5 = 3

 Symmetrical base allows identical 2-way spout. Ultimately, this innovative shape is neither up-side down nor right-side up. Promotionally, 2 chances to win.

 Symmetrical base ensures stability when standing.

Symmetrical base serves as spill-guard.

Symmetrical base contains easy-carry two finger punch design.

Symmetrical base contains rounded and/or tapered edge for safety.

Unique symmetrical design makes any household combinations available, i.e.; juices, foods, detergents, spreads. Serves as a *"Space Saver"*.

Current bottles are mundane and boring. People will buy solely because of uniqueness and futuristic design. Similar to Coca-Cola Twist Bottle, an American Icon.

Advertising; *"Turn of the Century",* "turn" the bottle either way and still have the same great product. *"Blockbuster Bottle for the Millenium"*

This Descriptive page entitled "The 2 Liter Flavor Saver" and attached diagrams labeled Fig. 1 through Fig. 6 is the property of Dennis Riordan.

(Docket No. 39-5).

[6] The Court notes that the drawings submitted to Heinz by Plaintiff, labeled Figure 1 through Figure 6, are identical to the drawings in Patent Number 6,105,812, dated Aug. 22, 2000, except that they lack the reference numbers contained in the patent itself. (Compare Docket No. 39-2 at 2-6 with Docket No. 39-5 at 4-8).

[7] The June 16, 1999 letter provides that: Dear Mr. Riordan:

Thank you for your letter regarding a new bottle for Heinz ketchup and mustard.

After reviewing your idea with the appropriate department, H.J. Heinz Company ("Heinz") has determined that it has no present interest in this concept.

Heinz would like to thank you for your interest in and consideration of Heinz.

Thank you again for writing to us. Very truly yours, s/ Max F. Miller

(Docket No. 39-6).

[8] It is well established in New York that a valid release which is clear and unambiguous on its face and which is knowingly and voluntarily entered into will be enforced as a private agreement between parties. Thus, a release will be binding on the parties absent a showing of fraud, duress, undue influence, or some other valid legal defense.

*Skylon Corp. v. Guilford Mills, Inc.,* 864 F.Supp. 353, 358 (S.D.N.Y. 1994)(quoting *DuFort v. Aetna Life Ins. Co.,* 818 F.Supp. 578 (S.D.N.Y.1993) (internal quotations and citations omitted); *see also Hummel v. AstraZeneca LP,* 575 F.Supp.2d 568, 570 (S.D.N.Y. 2008)(quoting *Skluth v. United Merch. & Mfr., Inc.,* 163 A.D.2d 104, 559 N.Y.S.2d 280, 282 (N.Y.App.Div. 1st Dep't 1990) and citing *Laramee v. Jewish Guild for the Blind,* 72 F.Supp.2d 357, 359 (S.D.N.Y. 1999))("Courts applying New York law will enforce valid releases that are clear and unambiguous on their face and which were knowingly and voluntarily entered into and were not the product of fraud, duress, or undue influence.'").

The Court notes that if New York law was applied, the contractual waiver/release in the Request for Consideration of Idea form would still be enforced.

[9] *See, e.g., Victor G. Reiling Assoc. and Design Innovation, Inc. v. Fisher-Price,* 406 F.Supp.2d 175, 182-86 (D.Conn. 2005) (applying New York law and upholding a contractual waiver provision which stated that "[y]ou must understand and agree that in return for receiving and examining your disclosure, we are released from any liability in connection with the receipt and examination of your disclosure, except as to such liability that may accrue under any valid patents or copyrights that you now or hereafter own or control."); *Taylor v. DaimlerChrysler AG,* 237 F.Supp.2d 789 (E.D. Mich. 2002)(applying Michigan law

and upholding a contractual waiver provision which stated that "I do not hereby give Chrysler Corporation any rights under any patents, trademarks or copyrights I now have or may later obtain covering my suggestion, but I do hereby in consideration of the examination of my suggestion release it from any liability in connection with my suggestion or liability because of use of any portion thereof except such liability as may arise under valid patents, trademarks or copyrights now or hereafter issued or obtained...."); *Hassell v. Chrysler Corp.,* 982 F.Supp. 515, 528 (S.D.Ohio 1997)(upholding a contractual waiver which stated that "I do not hereby give Chrysler Corporation any rights under any patents... I may now have or later obtain covering my suggestion, but I do hereby in consideration of the examination of my suggestion release it from any liability in connection with my suggestion or liability because of use of any portion thereof except such liability as may arise under valid patents, trademarks, or copyrights now or hereafter issued or obtained."); *M.H. Segan Ltd. P'ship v. Hasbro, Inc.,* 924 F.Supp. 512, 526 (S.D.N.Y. 1996), *abrogated on other grounds by Nadel v. Play-By-Play Toys & Novelties, Inc.,* 208 F.3d 368 (2d Cir. 2000) (applying New York law and upholding a waiver which provided that "[a]ll of inventor's rights and remedies arising out of Inventor's Submission(s) to Hasbro shall be limited to any rights and remedies Inventor is accorded under United States Patent and Copyright Laws. All other claims of whatever nature arising out of Inventor's submission to Hasbro are hereby waived."); *Kearns v. Ford Motor Co.,* 203 U.S.P.Q. 884, 886 (E.D.Mich.1978)(applying Michigan law and upholding a waiver which provided that "[a]ll rights and remedies of the undersigned (and principals, if any, of the undersigned) arising out of the disclosure of such suggestions to, or the use thereof by the Ford Motor Company or any of its representatives, shall be limited to any rights and remedies, as may now or in the future be accorded to the undersigned under United States Patents or Copyrights... All other claims of any nature whatever arising out of any disclosure of the undersigned to Ford Motor Company are hereby waived."); *but see Burten v. Milton Bradley Co.,* 763 F.2d 461, 462-68 (1st Cir. 1985)(applying Massachusetts law and refusing to enforce a waiver to bar a claim for misappropriation of trade secrets because the language of the agreement did not explicitly waive a confidential relationship between the parties but stated only that "I understand that this submission by me and its acceptance by Company does not, in whole or in part, establish or create by implication or otherwise any relationship between Company and me...").

[10] Under Pennsylvania law,

[g]enerally, an adhesion contract is a standardized contract form offered to consumers of goods and services on an essentially take it or leave it basis without affording the consumer a realistic opportunity to bargain and under such conditions that the consumer cannot obtain the desired product or services except by acquiescing to the form contract. The fundamental nature of this type of contract is such that the consumer who is presented with it has no choice but to either accept the terms of the document as they are written or reject the transaction entirely.

*Todd Heller, Inc. v. United Parcel Service, Inc.,* 754 A.2d 689, 700 (Pa.Super. 2000)(internal citations and quotations omitted).

[11] As discussed in the Court's previous Memorandum Opinion, Plaintiff has expressly withdrawn any patent infringement claim against Defendant and this Court dismissed his trademark infringement and trade secrets claims, with prejudice. (Docket No. 35 at 19).

[12] A plaintiff may also be required to establish that there is competition between the plaintiff and the defendant. *Sorbee,* 735 A.2d at 716 (quoting *Atlantic Mutual Ins. Co. v. Badger Medical Supply Co.,* 191 Wis.2d 229, 528 N.W.2d 486 (Wis.1999) ("[The] essence of [a] cause of action of misappropriation is the defendant's use of the plaintiff's product, into which plaintiff has put time, skill and money; and the defendant's use of the plaintiff's product or a copy of it in competition with the plaintiff and gaining an advantage in that competition because the plaintiff, and not the defendant, has expended the energy to produce it.")); *see also Blackmon,* 324 F.Supp.2d at 607. However, as was recognized in the previous Memorandum Opinion, the Court need not reach the issue because Plaintiff's claims are deficient for other reasons.

[13] Given the Court's rulings that Plaintiff's misappropriation of ideas claim must be dismissed based on the waiver and for failure to state a claim upon which relief can be granted, the Court need not address Defendant's alternative argument that this claim is barred by the statute of limitations. However, the Court notes that Plaintiff alleges that his idea was misappropriated three years after his submissions, i.e., in 2002 and his initial complaint in this action was not filed until six years later, in August of 2008. This filing is clearly outside the applicable two-year statute of limitations for tort claims under Pennsylvania law. *See* 42 Pa.C.S. § 5524(7)("The following actions and proceedings must be commenced within two years:... (7) Any other action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct..."); *see also Robinson v. Johnson,* 313 F.3d 128, 134-35 (3d Cir.2002) ("If the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6).").

In addition, to the extent that Plaintiff maintains that the statute of limitations should be tolled based on the discovery rule, his arguments lack credibility and do not demonstrate that he acted with reasonable diligence in preserving his claim. The discovery rule precludes the application of the statute of limitations to bar a claim when an injury is not discovered due to "a plaintiff's complete inability, due to facts and circumstances not within his control, to discover an injury despite the exercise of due diligence." *Kingston Coal Co. v. Felton Min. Co., Inc.,* 690 A.2d 284, 288 (Pa.Super 1997). The inquiry as to reasonable diligence is generally left for a jury except "where the facts are so clear that reasonable minds cannot differ as to whether the plaintiff should reasonably be aware that he has suffered an injury, the determination as to when the limitations period commences may be made as a matter of law." *Kingston Coal,* 690 A.2d at 288. Plaintiff complains that his idea for an up-side down bottle was misappropriated by Defendant's production and national distribution of its ketchup products in up-side down bottles in 2002. (Docket No. 37 at ¶¶ 12, 16). He alleges that Defendant changed its bottling terminology from up-side down to top-down in 2005-2006. (*Id.* at ¶ 10). He then contacted Defendant's legal department in January of 2006 in an attempt to recover his earlier submissions. (*Id.* at ¶ 11). Despite the national distribution of Defendant's products in up-side down bottles in 2002, Plaintiff's awareness of the change in terminology describing Defendant's bottle in 2005-2006, and his contacting Defendant in January of 2006, Plaintiff contends that he did not learn of the misappropriation until 2007, when he allegedly began investigating press releases. (Docket Nos. 41, 42). In this Court's estimation, Plaintiff's tolling argument contradicts the allegations in his complaint and is weak, at best.

[14] As set forth in section V(C) *infra,* any further amendment of this claim would be futile.

[15] Section 411(a) provides:

no action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title. In any case, however, where the deposit, application, and fee required for registration have been delivered to the Copyright Office in proper form and registration has been refused, the applicant is entitled to institute an action for infringement if notice thereof, with a copy of the complaint, is served on the Register of Copyrights.

17 U.S.C. § 411(a).

[16] As set forth in section V(C) *infra,* Plaintiff will not be granted leave to amend this claim.

---------

# EXHIBIT 2

**Network Managing Solutions, LLC, Plaintiff,**

**v.**

**AT&T INC. and AT&T MOBILITY, LLC, Defendant.**

**Network Managing Solutions, LLC, Plaintiff,**

**v.**

**Sprint Corporation and Sprint Spectrum L.P., Defendant.**

**Network Managing Solutions, LLC, Plaintiff,**

**v.**

**T-Mobile USA, Inc., Defendant.**

**Network Managing Solutions, LLC, Plaintiff,**

**v.**

**United States Cellular Corporation d/b/a/ U.S. Cellular Defendant.**

**Network Managing Solutions, LLC, Plaintiff,**

**v.**

**Verizon Communications Inc. and Cellco Partnership d/b/a Verizon Wireless, Defendant.**

**Nos. 16-cv-295 (RGA), 16-cv-296 (RGA), 16-cv-297 (RGA), 16-cv-298 (RGA), 16-CV-299 (RGA)**

**United States District Court, D. Delaware**

**February 3, 2017**

### MEMORANDUM ORDER

Defendants have moved under Federal Rule of Civil Procedure 12(b)(6) for dismissal of all the claims in suit. There are five separate complaints but the complaints are, in relevant parts, the same. Defendants' motions (No. 16cv295 D.I. 7; No. 16cv296 D.I. 7; No. 16cv297 D.I. 7; No. 16cv298 D.I. 7; No. 16cv299 D.I. 9) are GRANTED.

Defendants' motion to dismiss Plaintiffs direct infringement claim is GRANTED. Plaintiff makes three primary allegations related to infringement. First, Plaintiff identifies at least one claim from each asserted patent that it alleges Defendants infringed. Second, Plaintiff alleges that the 3rd Generation Partnership Project Standards incorporate the technologies covered by the patents. Third, Plaintiff also alleges on information and belief that Defendants adopted the 3GPP standards.

The first and third allegations are sufficient. In particular, Plaintiff cannot be expected to allege more about Defendants' use of the patented technology as Defendants keep information about their own technology secret and Defendants do not offer some public product that can be reverse engineered.

The second allegation, however, is incomplete. Plaintiff knows its own patents. The standards are public. Saying on "information and belief that the standards "incorporate the fundamental technologies"

covered by the patents, without more, is insufficient to plausibly allege that to practice the standard necessarily means that a defendant also practices the patent.

Defendants' motion to dismiss Plaintiffs indirect infringement claims is GRANTED. There are additional reasons to grant dismissal of the allegations of indirect infringement. First, Plaintiff has failed to identify in any manner, directly or by implication, some third party that actually infringes. Second, Defendants' participation in standard setting does not create a plausible claim Defendants possessed specific intent to induce another's infringement.

Defendants' motion to dismiss Plaintiffs willful infringement claims is GRANTED. As explained, Plaintiff has not adequately pled direct infringement. Otherwise, Plaintiffs allegations about Defendants' knowledge of the patent through its licensing attempts would adequately allege a claim of willful infringement.

Defendant Verizon Communications Inc. (VCI) has moved for dismissal of all claims against it because it is a holding company that does not make or sell any products or services in Delaware. While ultimately this may be grounds for judgment against Plaintiff and grounds for a § 285 motion, Rule 12(b)(6) requires me to consider only the pleadings. Because I have granted the motion on other grounds, however, I do not need to reach this issue.

The dismissal is without prejudice. Plaintiff is granted three weeks to file an amended complaint.

IT IS ORDERED.

# EXHIBIT 3

**LOU ANN WOERNER, as the beneficiary of Michael J. Woerner, Plaintiff,**

**v.**

**FRAM GROUP OPERATIONS, LLC, and ERIC SCHUENEMAN, Defendants.**

**Civil Action No. 12-6648 (SRC)**

**United States District Court, D. New Jersey.**

**April 29, 2013**

OPINION

STANLEY R. CHESLER, District Judge.

This matter comes before the Court on the motion by Defendant Eric Schueneman to dismiss the claims against him pursuant to Federal Rule of Civil Procedure 12(b)(6). (Docket Entry 7) Plaintiff Lou Ann Woerner has opposed the motion. (Docket Entry 16) The Court will rule on the papers submitted, and without oral argument. See Fed.R.Civ.P. 78. For the reasons that follow, the Court will grant the motion in part and deny it in part.

I. THE FACTS

In July 2010, Plaintiff Lou Ann Woerner's husband, Michael J. Woerner, was diagnosed with brain cancer. At the time of his diagnosis, Mr. Woerner worked for Honeywell and participated in the company's ERISA-covered benefits plans. In January 2011, Honeywell agreed to sell the business unit employing Mr. Woerner to Defendant FRAM. This sale closed on July 29, 2011, about a month after Mr. Woerner took a leave of disability from work. The Woerners were concerned that the sale would adversely affect Mr. Woerner's employee benefits and insurance coverages, and they actively sought information from both Honeywell and FRAM. At some point, the Woerners were told that they would have to speak with FRAM's Director of Compensation, Benefits, and HRIS, Defendant Eric Schueneman.

The Woerners initially had difficulty reaching Schueneman, and when they did, they were told that the information they sought was not yet available. The Woerners continued to seek information, by phone and email, from Honeywell, FRAM, and Schueneman about how the sale might affect Mr. Woerner's benefits. During this time, the Woerners were given the impression that Mr. Woerner would be eligible for life insurance through FRAM. Plaintiff points to a conversation she had with Schueneman on or about December 5, 2011, in which Schueneman indicated that he was "sure" Mr. Woerner could enroll in FRAM's life insurance plan.

On December 7, 2011, the Woerners made their benefits and insurance coverage elections for 2012. Mr. Worerner elected to enroll in a $297, 000 basic life insurance policy and a $198, 000 voluntary life insurance policy. Both had effective dates of January 1, 2012, and named Plaintiff as beneficiary. Mr. Woerner received written confirmation of his "enrolled" status and life insurance converage.

Mr. Woerner's voluntary life insurance policy required a monthly contribution of $16.91, and in January, 2012, the Woerners noticed that premium contributions were not being automatically deducted from Mr. Woerner's compensation. Plaintiff emailed Schueneman to discuss this and other issues but received no response. After repeated attempts, Plaintiff reached Schueneman by telephone in mid to late January 2012. Schueneman told Plaintiff not to worry, that the Woerners were covered, and that letters would be going out to explain how to make premium contributions by check. The Woerners never received such a letter.

Plaintiff alleges, upon information and belief, that around this time, Schueneman learned that it might be necessary for Mr. Woerner to attend work for a day in order to become eligible for life insurance benefits. Schueneman never shared this information with the Woerners.

Mr. Woerner passed away on February 24, 2012. After a number of unsuccessful attempts to get information from Schueneman about the pay out on Mr. Woerner's life insurance policy, Plaintiff spoke directly with the insurance company, who disclosed that Mr. Woerner was not covered at the time of his death.

Plaintiff has brought suit against both FRAM and Schueneman, alleging five separate counts under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002, et seq.[1] Plaintiff seeks a constructive trust and other equitable relief.

II. DISCUSSION

A. Standard of Review

A complaint will survive a motion under Rule 12(b)(6) if it states "sufficient factual allegations, accepted as true, to state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal* , 129 S.Ct. 1937 , 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly* , 550 U.S. 544, 570 (2007)). The Third Circuit, following Twombly and Iqbal, has held that Rule 8(a) "requires not merely a short and plain statement, but instead mandates a statement showing that the pleader is entitled to relief.'" *Phillips v. County of Allegheny* , 515 F.3d 224, 234 (3d Cir. 2008). In a Rule 12(b)(6) motion, the Court is limited in its review to a few basic documents: the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon those documents. See *Pension Benefit Guar. Corp. v. White Consol. Indus.* , 998 F.2d 1192, 1196 (3d Cir. 1993).

B. Breach of Fiduciary Duty

Schueneman moves to dismiss Counts Two, Three, and Four of the Complaint on the grounds that Plaintiff has failed to adequately plead that Schueneman is an ERISA fiduciary. The Court disagrees.

Fiduciary status is broadly defined under ERISA. *Curcio v. John Hancock Mut. Life Ins. Co.* , 33 F. 3d 226 (3d Cir. 1994). In Unisys Corp. Retiree Med. Benefits Erisa Litig. v. Unisys Corp., the Third Circuit articulated the general standards for determining who is an ERISA fiduciary:

> "ERISA... defines fiduciary' not in terms of formal trusteeship, but in functional terms of control and authority over the plan." *Mertens v. Hewitt Assocs.* , 508 U.S. 248, 262 (1993). Accordingly, "[f]iduciary duties under ERISA attach not just to particular persons, but to particular persons performing particular functions." *Hozier v. Midwest Fasteners, Inc.* , 908 F.2d 1155, 1158 (3d Cir. 1990). Accordingly, "a person is a fiduciary with respect to a plan only to the extent that he has any discretionary authority or discretionary responsibility in the administration of such plan." *Varity Corp. v. Howe* , 516 U.S. 489, 527 (1996) (internal quotation marks omitted). "A plan administrator... acts as a fiduciary when explaining plan benefits and business decisions about plan benefits to its employees. *Adams v. Freedom Forge Corp.* , 204 F.3d 475, 492 (3d Cir. 2000).

579 F.3d 220, 228 (3d Cir. 2009).

Schueneman argues that his position as FRAM's Director of Compensation, Benefits and HRIS is insufficient to establish his status as an ERISA fiduciary. Schueneman also maintains that Plaintiff has failed to allege specific facts that Schueneman exercised individual discretionary authority over the plan's management, assets, and administration and was performing a fiduciary function when taking the challenged action.

The Court concludes that Plaintiff has alleged sufficient facts to survive a motion to dismiss based on Schueneman's non-fiduciary status. Schueneman's title, while perhaps not adequate, by itself, certainly qualifies as a non-conclusory factual allegation supporting a claim that Schueneman was an ERISA fiduciary. The Complaint also alleges that Schueneman had discretionary authority to act on behalf of the plan and that no other natural person had any information about the plan. Finally, the Complaint alleges that Schueneman expressly assured Plaintiff that her husband would have life insurance coverage at FRAM. In *Adams v. Freedom Forge Corp* ., the Third Circuit stated that "[a] plan administrator... acts as a fiduciary when explaining plan benefits and business decisions about plan benefits to its employees." 204 F.3d 475 (3d Cir. 2000). Under the factual allegations contained in the Complaint, it would be improper to dismiss Plaintiff's claims for fiduciary breach at this early stage. A determination on Schueneman's fiduciary status must await an evidentiary hearing. If discovery indicates that Schueneman did not function as a fiduciary, he may move for summary judgment on the issue.

## C. Equitable Estoppel

Next, Schueneman argues that Plaintiff has failed to state a claim against him on a theory of equitable estoppel. The Court agrees.

The parties do not dispute that to state a claim for equitable estoppel, a Plaintiff must show "(1) a material representation, (2) reasonable and detrimental reliance upon the representation, and (3) extraordinary circumstances.'" *Burstein v. Ret. Account Plan for Emples. of Allegheny Health Educ. & Research Found.* , 334 F.3d 365, 383 (3d Cir. 2003) (quoting *Curcio, supra* , 33 F.3d at 235).

Schueneman first argues that Plaintiff has not sufficiently pled the presence of "extraordinary circumstances." The Third Circuit has not clearly defined "extraordinary circumstances" but instead relies on case law to establish its parameters. *Kurz v. Phila. Elec. Co. (Kurz II)* , 96 F.3d 1544, 1553 (3d Cir. 1996). Extraordinary circumstances may "involve acts of bad faith on the part of the employer, attempts to actively conceal a significant change in the plan, or commission of fraud.'" *Burstein, supra* , 334 F.3d at 383 (quoting *Jordan v. Federal Express Corp.* , 116 F.3d 1005, 1011 (3d Cir. 1997)). Extraordinary circumstances may also be present "where there is a network of misrepresentations over an extended course of dealing, ' or where particular plaintiffs are especially vulnerable." *Pell v. E. I. DuPont De Nemours & Co.* , 539 F.3d 292, 303-04 (3d Cir. 2008) (citing *Kurz, supra* , 96 F.3d at 1553). The Third Circuit has "consistently rejected estoppel claims based on simple ERISA reporting errors or disclosure violations, such as variations between a plan summary and the plan itself." *Kurz (II)* , 96 F.3d at 1553.

According to Schueneman, Plaintiff has, at most, alleged facts showing that Schueneman was "dilatory and may have made some mistakes in delivering information" to Mr. Woerner. (Def.'s Br. Supp. Mot. Dismiss 6) In this Court's view, Plaintiff's allegations, taken as true, satisfy the "extraordinary circumstances" element of a claim for equitable estoppel.

The Third Circuit has held that "extraordinary circumstances" may exist where an ERISA fiduciary's repeated assurances of coverage and ultimate disclamation sends a beneficiary on a "roller coaster" ride. See *Curcio, supra* , 33 F.3d at 238. In assessing whether extraordinary circumstances are present, the Third Circuit has also considered a defendant's "repeated oral and written misrepresentations, " a beneficiary's "diligence in attempting to obtain accurate answers, " and the amount of coverage at stake. *Smith v. Hartford Ins. Group* , 6 F.3d 131, 142 (3d Cir. 1993). Plaintiff has pled repeated misrepresentations and omissions by Schueneman and the Woerner's diligent attempts to obtain accurate information. Although the amount of disputed coverage in this case falls short of the $1 million policy at issue in Smith, the Court concludes that the amount is significant enough to support a claim of extraordinary circumstances.

The Court also concludes that Plaintiff has alleged extraordinary circumstances based on Plaintiff's vulnerable position. The Third Circuit has generally recognized the presence of extraordinary circumstances based on particular vulnerability only "in instances of imminent and life threatening health emergencies to the plaintiff himself or to his family members." Araujo v. Kraft Foods Global, Inc., 387

Fed.Appx. 212, 217 (3d Cir. 2010) (citing Smith, supra, and Curcio, supra). Aware of the life-threatening nature of Mr. Woerner's brain cancer diagnosis and the uncertainty posed by the sale of his employer, Mr. Woerner tried assiduously to ensure that his family would be financially secure in the event of his death. Plaintiff alleges, upon information and belief, that Schueneman knew but failed to disclose that Mr. Woerner could only qualify for coverage if he worked for at least one day in 2012. According to the Complaint, Mr. Woerner was ready, willing, and able to satisfy that requirement, had he known about it, and Schueneman's failure to convey this information resulted in a substantial financial loss to Plaintiff.

While Plaintiff has shown "extraordinary circumstances, " the claim must nevertheless be dismissed. A claim for equitable estoppel prevents a plan from denying benefits it promised to a participant or beneficiary. See Kimberly A. Kralowec, Comment: Estoppel Claims against ERISA Employee Benefit Plans, 25 U.C. Davis L. Rev. 487, 492 (1992) ("Plaintiffs in estoppel cases are ineligible for benefits under the plan's terms, but argue that the plan is estopped from so asserting."). Since a claim of equitable estoppel seeks benefits that only the *plan* can provide, such a claim simply makes no sense as against anyone else. As Schueneman correctly points out, the defendants in the cases relied upon by Plaintiff were *employers,* not individual employees. Schueneman, who is not the plan, is simply not amenable to suit on a theory of equitable estoppel. Therefore, the claim must be dismissed with prejudice.

D. Illegal Statutory Interference

Finally, Schueneman moves to dismiss Plaintiff's claim for illegal statutory interference under § 510 of ERISA on the grounds that Plaintiff has failed to allege facts showing Schueneman had a "specific intent" to interfere with Mr. Woerner's benefits. The Court agrees.

Section 510 of ERISA provides, in part, that

> [i]t shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, section 1201 of this title, or the Welfare and Pension Plans Disclosure Act [29 U.S.C. 301 et seq.], or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter, or the Welfare and Pension Plans Disclosure Act.

"To establish a prima facie case under ERISA § 510, an employee must demonstrate (1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled." *Gavalik v. Cont'l Can Co.* , 812 F.2d 834, 852 (3d Cir. 1987). "[T]he essential element of proof under § 510 is specific intent to engage in proscribed activity." *Id* . 851; see also *Jakimas v. Hoffmann-LaRoche, Inc.* , 485 F.3d 770, 785 (3d Cir. 2007) ("a plaintiff must demonstrate that the defendant had the specific intent' to violate ERISA"). Proof of specific intent "can be demonstrated through direct or circumstantial evidence, because the smoking gun' evidence may be rare." *Id* . (citing *Gavalik* , 812 F.2d at 852). This means that, at the motion to dismiss stage, "[i]t is sufficient to plead facts that, when taken as true, constitute circumstantial evidence of the employer's specific intent to interfere with the ERISA plan." Stabile v. Allegheny Ludlum, LLC, No. 12-168, 2012 U.S. Dist. LEXIS 126703, at *27 (W.D. Pa. Sept. 6, 2012); see also Pailleret v. Jersey Constr., Inc., No. 09-1325, 2010 U.S. Dist. LEXIS 2313 (D.N.J. Jan. 11, 2010).

According to Schueneman, Plaintiff has failed to plead facts showing specific intent - the Complaint contains no allegations that Schueneman had a mindset to prevent Mr. Woerner from obtaining any benefit and does not allege that Schueneman held any "animosity owing to Mr. Woerner's illness or his work status." (Def.'s Moving Br. 10) The Court agrees. In opposition, Plaintiff only points to allegations made "upon information and belief." For example, the Complaint alleges upon information and belief that Schueneman knew Mr. Woerner would have to work at least one day in 2012 in order to qualify for supplemental life insurance. While specific intent may be shown by circumstantial evidence, Plaintiff cannot survive a motion to dismiss by offering only conclusory, unsupported allegations made

upon information and belief. Such allegations, without more, fail to demonstrate Plaintiff's plausible entitlement to relief. Therefore, the Court will dismiss the claim against Schueneman for illegal statutory interference without prejudice.

### III. CONCLUSION

For the foregoing reasons, Schueneman's motion to dismiss the complaint will be granted in part and denied in part. An appropriate order accompanies this opinion.

---------

Notes:

[1] The Complaint contains the following counts: (1) ERISA equitable estoppel; (2) ERISA equitable relief for material misrepresentation; (3) violation of ERISA breach of fiduciary duties; (4) violation of ERISA co-fiduciary duties; and (5) violation of ERISA statutory illegal interference.

---------

# EXHIBIT 4

TexasLDPC Inc. v. Broadcom Inc., 031820 DEDC, C. A. 18-1966-RGA

## TEXASLDPC INC., Plaintiff,

### v.

## BROADCOM INC., LSI CORPORATION and AVAGO TECHNOLOGIES U.S., INC. Defendants.

### Civil Action No. 18-1966-RGA

### United States District Court, D. Delaware

### March 18, 2020

### MEMORANDUM ORDER

RICHARD G. ANDREWS, UNITED STATES DISTRICT JUDGE

Plaintiff TexasLDPC Inc. brought this action for patent and copyright infringement against Defendants Broadcom Inc., LSI Corp., and Avago Technologies U.S., Inc. Currently before me is Defendants' Motion to Dismiss. (D.I. 27). The matter has been fully briefed. (D.I. 28, 31, 33). I heard oral argument on March 11, 2020. The motion is granted with respect to the copyright claims and Wi-Fi patent claims, but it is otherwise denied.

## I. LEGAL STANDARD

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept the complaint's factual allegations as true. *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555-56 (2007). Rule 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* at 555. The factual allegations do not have to be detailed, but they must provide more than labels, conclusions, or a "formulaic recitation" of the claim elements. *Id.* ("Factual allegations must be enough to raise a right to relief above the speculative level... on the assumption that all the allegations in the complaint are true (even if doubtful in fact).").

Moreover, there must be sufficient factual matter to state a facially plausible claim to relief. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). The facial plausibility standard is satisfied when the complaint's factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief") (cleaned up).

## II. DISCUSSION

### A. Copyright Claims

Plaintiffs copyright claims are based on software code developed by Dr. Kiran Gunnam. According to the amended complaint, Dr. Gunnam was an employee of Texas A&M University in 2007 and 2008 when he developed three computer programs, which all relate to "Low-Density Parity Check" (LDPC) algorithms. (D.I. 9, "Amended Complaint," ¶¶ 32-38). Plaintiff asserts it has an exclusive license to those works, including the right to sue for infringement. (*Id.* ¶ 38).

Defendant LSI hired Dr. Gunnam in 2008. (*Id.* ¶ 46). Plaintiff claims Dr. Gunnam shared parts of his copyrighted LDPC works with LSI, but he warned the company it needed to obtain a license from Texas A&M. (*Id.* ¶¶ 47-48). Plaintiff alleges Madhu Kalluri, an LSI circuit designer, "was directed to rewrite [Gunnam's code], while maintaining the same basic program structure and logic." (*Id.* ¶ 51). This new code, according to the complaint, was at least a derivative work of the original code. (Id.). Plaintiff

alleges Defendants used Gunnam's code or derivative works of that code in the engineering and design of their products without ever obtaining a license. (*Id.*).

I do not find these allegations are sufficient to state a claim under Rule 12(b)(6). Plaintiffs key factual contention is that Defendants produced programs that have "the same basic program structure and logic" as the asserted copyrights. That, however, is not enough to allege infringement. "It is axiomatic that copyright does not protect ideas, but only expressions of ideas." *Whelan Assocs., Inc. v. Jas!ow Dental Lab., Inc.,* 797 F.2d 1222, 1234 (3d Cir. 1986). Thus, not all elements of software code are protectable by copyright. *Id.* at 1239. Plaintiff has failed to identify what "basic program structure and logic" Defendants copied or to provide other facts about the accused software that could support an inference that it infringes copyrightable elements. It is unclear whether Plaintiff is alleging infringement under the "substantial similarity" test, but without more facts about the asserted and accused works, it is impossible to compare their similarity or infer infringement.

*Levey v. Brownstone Inv. Grp., LLC* is instructive here. 590 Fed.Appx. 132 (3d Cir. 2014). In that case, the plaintiff claimed that, after a software license expired, the defendant continued to use software that had "the same capabilities" as the licensed software. *Id.* at 136. The court held "[t]hat is simply not enough to infer that" the defendant was still using the protected software as opposed to some other product. "Nor can we infer substantial similarity from those facts, which, at most, tell us that the two programs share a common purpose or function." *Id.* Like Plaintiff here, the plaintiff in *Levey* did not "provide[] . . . any detail about [the defendant's] software, let alone [the asserted software], in regard to their look and feel, structure, sequence, organization, or other potentially expressive and copyrightable elements." *Id.* at 136-37. Therefore, the court concluded, "It would be implausible" to find infringement. *Id.* at 137. Similarly here, the allegation that the programs share "basic program structure and logic" is not enough to support a plausible inference of infringement.

### B. Wi-Fi Patent Claims

Plaintiff has failed to adequately state a claim of patent infringement with regard to Defendants' Wi-Fi products. Plaintiff states that Broadcom chipsets support two engineering standards, 802.1 lac and 802.1 lad, and that those standards incorporate designs from U.S Patent No. 8, 341, 488 ('488 patent). (Amended Complaint ¶¶ 98-99). According to the complaint, that patent in turn describes architecture which "would, if operated, practice the inventions described" in Plaintiffs asserted patent claims. (*Id.* ¶ 99).

Plaintiff, however, has not provided any facts to explain why practicing the invention of the '488 patent would infringe Plaintiffs asserted patents. Plaintiff has not clearly identified which Broadcom Wi-Fi products it is accusing and has made no effort to compare those products to the asserted claim elements. Such "threadbare recitals of a cause of action's elements, supported by mere conclusory statements" are not enough to survive a motion to dismiss. *Iqbal,* 556 U.S. at 129 (2009). The allegations as to the Wi-Fi products do not meet the minimal requirements of Federal Circuit precedent. *See Disc Disease Solutions, Inc. v. VGH Solutions, Inc.,* 888 F.3d 1256 (Fed. Cir. 2018).

### C. Other Patent Claims

Plaintiff has provided sufficient factual support for its other patent claims to survive Defendants' Rule 12(b)(6) motion. For the accused products other than the Wi-Fi products, Plaintiff provides technical mappings and alleges the products meet each and every element of at least one of the asserted patent claims. (*See* Amended Complaint ¶¶ 105-28, 138-61, 169-91, 199-215, 223-59, 270-93). That is enough to state a claim of patent infringement under the standard set by the Federal Circuit. In *Disc Disease,* the Federal Circuit found a complaint was sufficient because it "specifically identified the three accused products" and alleged that those products met "each and every element of at least one claim" of the asserted patent, "either literally or equivalently." 888 F.3d 1256, 1260 (Fed. Cir. 2018). Plaintiffs technical mapping of representative products here exceeds that standard.

The complaint identifies the accused products (other than the Wi-Fi products) as the Hard Disk Controller Products, SandForce Products, and the Densbits Products. (Amended Complaint ¶ 100).

Plaintiff largely identifies these products by describing their features, rather than by naming exact model numbers. That does not prevent its claims from moving forward, however. The Federal Circuit has held that, at the motion to dismiss stage, a plaintiff need not "identify an accused device by name," especially when the "operation of the systems is not ascertainable without discovery." *K-Tech Telecommunications, Inc. v. Time Warner Cable, Inc.,* 714 F.3d 1277, 1286 (Fed. Cir. 2013).

### D. Leave to Amend

"Motions to amend under Rule 15 are typically granted liberally, and a court may deny leave to amend only when (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." *Wolflngton v. Reconstructive Orthopaedic Assocs. II PC,* 935 F.3d 187, 210 (3d Cir. 2019) (cleaned up).

Because none of those conditions have been shown here, I grant Plaintiff leave to amend its complaint.

### III. Conclusion

For the reasons stated, Defendants' motion to dismiss for failure to state a claim (D.I. 27) is GRANTED with respect to the Wi-Fi products and the copyright claims (Counts VII, VIII, and IX of the complaint). The motion is DENIED with respect to all other counts (and with respect to the facial attack on Plaintiffs standing to bring this case, which I ruled on at oral argument). Plaintiff is GRANTED leave to amend its complaint. If Plaintiff does not file a second amended complaint within fourteen days, the case will proceed on what remains of the first amended complaint.

# EXHIBIT 5

**GORDON LEVEY, Plaintiff,**

**v.**

**BROWNSTONE INVESTMENT GROUP, LLC, et al., Defendants.**

**Civil Action No. 11-395 (ES)**

**United States District Court, D. New Jersey.**

**June 26, 2013**

OPINION

ESTHER SALAS, District Judge.

I. Introduction

Pending before the Court is Defendants Brownstone Investment Group, LLC ("Brownstone"), Douglas B. Lowey ("Lowey"), and Barret P. Naylor's ("Naylor") (collectively, "Defendants") motion to dismiss Plaintiff Gordon Levey's ("Levey" or "Plaintiff") Third Amended Complaint ("TAC") for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3), and for failing to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). (D.E. No. 74). Also pending before this Court is Plaintiff's motion to file a sur-reply. (D.E. No. 85). The Court has considered the briefs submitted in support of and in opposition to the present motions, and decides the motions without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons set forth below, the Court grants Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and dismisses Plaintiff's TAC with prejudice.[1] The Court further denies Plaintiff's motion for leave to file a sur-reply.

II. Jurisdiction

Plaintiff frames his TAC as a "violat[ion] of the United States Copyright Law, 17 U.S.C. § 101, *et seq.* " (D.E. No. 73, TAC ¶ 18). Accordingly, subject matter jurisdiction is proper under 28 U.S.C. § 1338 (a). *See Zuk v. E. Pa. Psychiatric Inst. of the Med. College of Pa.,* 103 F.3d 294, 296 n.1 (3d Cir. 1996) ("The lawsuit... alleged violations of... federal copyright law, and the district court thus had jurisdiction pursuant to 28 U.S.C. § 1338, which confers exclusive original jurisdiction over copyright cases.").

III. Background

As the Court writes solely for the parties who are thoroughly familiar with the underlying issues relating to Defendants' motion to dismiss, the Court limits its discussion to the salient facts and procedural history.

This matter stems from an alleged violation of copyright law in which Plaintiff has now had three opportunities to amend his complaint. ( *See* D.E. Nos. 27, 56 & 73, respectively, Amended Complaint, Second Amended Complaint ("SAC") & TAC). This Court has issued two opinions dismissing Plaintiff's complaints for failure to state a prima facie case for copyright infringement, *Levey v. Brownstone Inv. Grp., LLC,* No. 11-395, 2012 WL 295718 (D.N.J. Feb. 1, 2012), and for failure to allege a claim for copyright infringement that was not time barred, (D.E. No. 71, Opinion, Sept. 14, 2012). In the latter opinion, this Court afforded Plaintiff "one last opportunity to sufficiently plead a cause of action for copyright infringement because Plaintiff... averred that Defendants' illegal violation of our copyright laws continued today, "-the filing date of the SAC. (*Id.* at 7 (citation omitted & internal quotation marks omitted)).

On September 24, 2012, Plaintiff filed his TAC. (D.E. No. 73). Plaintiff alleges that he authored software referred to as "Levtek a/k/a Brownstone Live and Brownstone Trading System" and that he provided an oral license to Brownstone as long as he was affiliated with Brownstone. (TAC ¶ 8). Plaintiff asserts that he registered Levtek with the United States Copyright Office on June 9, 2011. (*Id.* at ¶11 (citing Ex. A, Copyright Registration No. TXU001759286 ("Levtek Registration"))). Plaintiff further alleges that Defendants used the "copyright and software without Plaintiff's knowledge or consent." (*Id.* at ¶ 10).

Additionally, Plaintiff avers that he did not have access to information from January 2006 to the present "regarding the internal workings of Defendants[] or the use of the... copyrighted materials... other than what was disclosed pursuant to Court Ordered Stipulation in an ongoing Delaware Chancery Court [case]" and in litigation involving the Financial Industry Regulatory Authority ("FINRA"). (*Id.* at ¶ 15). Plaintiff asserts that he had access to limited discovery over the value of his ownership interest in the Delaware action. (*Id.* ). In the FINRA litigation, Plaintiff claims that he was not privy to information about the alleged copyright infringement other than the representation that Defendants "had ceased all use of all software at issue." (*Id.* ).

Plaintiff now alleges that he first discovered that Defendants infringed on his copyright at an industry convention in June 2011. (*Id.* at ¶ 16). Specifically, Plaintiff avers that he spoke to Brian Lane ("Lane")-a Sales Director for a company known as Codestreet-who made a sales pitch on the Codestreet software system, which had some of the same capabilities that Plaintiff's software offered. (*Id.* ). Plaintiff also alleges that Lane told him that "3-6 months ago, " he met with John Sablowsky, a head trader at Brownstone, who said, "they had all of what CodeStreet has to offer[] in a proprietary system that they have had for years and have been using for years and years." (*Id.* ). Plaintiff asserts that the system that Sablowsky was referring to is his system. (*Id.* ).

Defendants' motion to dismiss and Plaintiff's motion for leave to file a sur-reply are now ripe for this Court's adjudication.

IV. Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to set forth "a short and plain statement of the claim showing that a pleader is entitled to relief." The pleading standard announced by Rule 8 does not require detailed factual allegations; however, it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal citation omitted). In addition, the plaintiff's short and plain statement of the claim must "give the defendants fair notice of what the... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 545 (2007).

For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 570). A claim has facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citation omitted). "The plausibility standard is not akin to a probability requirement, ' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

In evaluating the sufficiency of a complaint, a court must accept all well-pleaded factual allegations contained in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cnty. of Allegheny,* 515 F.3d 224, 234 (3d Cir. 2008). But, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions, " and "[a] pleading that offers labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555).

Furthermore, a district court deciding a motion to dismiss generally does not consider material beyond the pleadings. *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997). "[When] deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached [thereto], matters of the public record, as well as undisputedly authentic documents if the complainant's

claims are based upon these documents." *Mayer v. Belichick,* 605 F.3d 223, 230 (3d Cir. 2011); *see also In re Burlington Coat Factory Secs. Litig.,* 114 F.3d at 1426 ("[A]n exception to the general rule is that a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment.") (emphasis in original) (citation omitted & internal quotation marks omitted).

"[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips,* 515 F.3d at 245.

V. Analysis

*a. Request To File A Sur-reply Is Denied*

As a preliminary matter, this Court must decide whether to allow Plaintiff to file a sur-reply that seeks to submit an audio recording of a conversation between Plaintiff and Lane that Plaintiff secretly recorded, as well as Lane's sworn affidavit.[2] (D.E. No. 85).

Sur-replies may not be submitted without the permission from the Court, and permission is generally denied where the record and prior submissions are deemed sufficient. L. Civ. R. 7.1(d)(6). This district has allowed sur-replies to address a new issue in the "interest of completeness, " for "complicated and novel legal questions, " or for unusual circumstances. *See, e.g., Christion v. Pressler & Pressler, LLP,* No. 07-1938, 2010 WL 988547, at *2 n.3 (D.N.J. Mar. 12, 2010); *United States v. Lane Labs-USA,* 324 F. Supp.2d 547, 563 (D.N.J. 2004); *Arcand v. Brother Int'l Corp.,* 673 F.Supp.2d 282, 290 (D.N.J. 2000). But, the Court may not consider supplemental factual allegations that are submitted in opposition to a motion to dismiss because such documents do not constitute pleadings under Rule 7(a). *Pennsylvania ex. rel . Zimmerman v. PepsiCo, Inc.,* 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."); *see also McMahon v. Gen. Dynamics Corp.,* No. 12-4994, 2013 WL 1164850, at *13 (D.N.J. Mar. 30, 2013) (finding that court may not consider supplemental factual allegations made by Plaintiff in a certification).

Here, Plaintiff seeks to amend his allegations in the TAC by submitting an audio recording and non-party affidavit. This Court will not allow Plaintiff to amend his TAC in a sur-reply. *See Pennsylvania ex. rel. Zimmerman,* 836 F.2d at 181.[3] Accordingly, Plaintiff's motion for leave to file sur-reply is denied.

*b. Copyright Infringement Claim Is Not Time Barred*

The Court must now determine whether Plaintiff's claim for copyright infringement is time-barred. Defendants argue that Plaintiff has abandoned his claim that Defendants' alleged copyright infringement continues through today in the TAC. (D.E. No. 74-2, Memorandum of Law in Support of Defendants' Brief in Support of its Motion to Dismiss the TAC ("Def. Br.") 7). Therefore, Defendants contend that Plaintiff fails to allege, even in general terms, the sole basis that the Court provided leave to file a Third Amended Complaint. (*Id.* at 6-7).

The Copyright Act provides that "[n]o civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim has accrued." 17 U.S.C. § 507(b). A claim "accrues when the plaintiff discovers, or with due diligence should have discovered, the injury that forms the basis for the claim.'" *William A. Graham Co. v. Haughey,* 568 F.3d 425, 438 (3d Cir. 2009) (quoting *Disabled in Action v. SEPTA,* 539 F.3d 199, 209 (3d Cir. 2008)). "Applying that precept here, [this Court must] ask whether [the plaintiff] should have known of the basis for [his] claim[] [, which] depends on whether [he] had sufficient information of possible wrongdoing to place [him] on inquiry notice or to excite storm warnings of culpable activity." *Id.* (internal citation & quotation marks omitted).

In dismissing the SAC, the Court afforded Plaintiff one last opportunity to sufficiently plead a cause of action for copyright infringement because Plaintiff averred that "[Defendants'] illegal violation of our copyright laws continue through today." ( *See* D.E. No. 71 at 7 (citing SAC ¶ 18)); *see also William A. Graham Co.,* 568 F.3d at 433 ("[E]ach act of infringement is a distinct harm giving rise to an

independent claim for relief[.]"). In the operative complaint, Plaintiff did not include his previous allegation that Defendants' copyright infringement continues through today, but instead, now avers that he did not have notice of possible copyright violations until June 2011.[4] (TAC ¶¶ 16-17 (alleging "he was unaware of Defendants [sic] use of said copyright software system, until the [June 2011] coincidental meeting at the aforesaid Convention")). Thus, this Court finds that Plaintiff's claim is not time-barred as pled in his TAC because he alleges that he discovered the copyright infringement in June 2011, which date falls within three years of the filing of the TAC on September 24, 2012.

> *c. The TAC Fails To State A Claim for Copyright Infringement*

The Court now turns to whether Plaintiff states a valid claim for copyright infringement. In support of their motion to dismiss, Defendants contend that Plaintiff fails to meet Rule 8's requirements. (Def. Br. 8). Defendants argue that Plaintiff fails to "allege any actual infringement by Defendants" and, instead, "leaps to the conclusion that [Defendants are] using Plaintiff's alleged proprietary system because a non-party allegedly advised Plaintiff that [Defendants'] purported unidentified system has similarities to a completely separate system used by [the non-party]." (*Id.* at 8-9). By Plaintiff's own admission, Defendants aver that Plaintiff has no "information regarding the internal workings of Defendants, or the use of the aforesaid copyrighted materials" and, therefore, cannot state a prima facie case. (*Id.* at 9).

Plaintiff argues that Defendants have conceded that Plaintiff satisfied the first three *Gee* factors and that Defendants only take issue with the fourth factor, namely that he has "failed to specify by what acts the Defendants infringed upon [his] copyright." (D.E. No. 77, Memorandum of Law of Plaintiff Gordon Levey ("Pl. Br.") 6 (citing *Gee v. CBS, Inc.,* 471 F.Supp. 600, 643 (E.D. Pa.), *aff'd,* 612 F.3d 572 (3d Cir. 1979)).[5] As to the fourth factor, Plaintiff concedes that he "cannot provide further information in his copyright infringement claim, " but that like the plaintiff in *Leaf, Inc. v. Burdeen,* No. 95-5959, 1996 WL 89070 (N.D. Ill. Feb. 28, 1996), Plaintiff contends that the motion to dismiss should be denied and he should be allowed proper discovery. (*Id.* at 7-10).

To state a claim for copyright infringement pursuant to Rule 8, a plaintiff must adequately allege: (1) "which specific original work is the subject of the copyright claim, " (2) "that plaintiff owns the copyright, " (3) "that the work in question has been registered in compliance with the statute, " and (4) "by what acts and during what time defendant has infringed the copyright." *Gee,* 471 F.Supp. at 643; *see also Bradshaw v. Am. Inst. For History Educ.,* No. 12-1367, 2013 WL 1007219, at *3 (D.N.J. Mar. 13, 2013); *Hanover Arch. Serv., P.A. v. Christian Testimony-Morris, N.P.,* No. 10-5455, 2011 WL 6002045, at *5 (D.N.J. Nov. 29, 2011); Fed.R.Civ.P. Form 19 (providing generic complaint for alleging copyright infringement and including allegations that describe, *inter alia,* the specific infringing acts by the defendant).[6]

This Court is persuaded that Plaintiff's allegations have failed to meet the minimal Rule 8 burden. Plaintiff sufficiently satisfies the first and second factors by alleging that he is the "sole author" of his original software known as "Levtek a/k/a Brownstone Live and Brownstone Trading System." (TAC ¶ 8 (internal quotation marks omitted)). The Court also finds that Plaintiff has satisfied the third factor by registering that copyright in compliance with the statute and attaching a copy of the "Levtek Trading System" copyright registration.[7] (TAC ¶¶ 11-13, Ex. A).

However, Plaintiff has not demonstrated by what specific acts and during what time Defendants infringed the copyright. The Court agrees that Plaintiff's allegation of infringement rests on speculation: (1) Defendants' "unnamed proprietary system' has some of the same features as [non-party] Codestreet's software system; (2) Plaintiff's alleged copyrighted software "has some of the same capabilities as Codestreet's software system, " and (3) therefore, Brownstone must be infringing upon Plaintiff's purported copyrighted software. (D.E. No. 78, Defendants' Reply Brief in Support of its Motion to Dismiss the TAC ("Def. Reply Br.") 4-5). Plaintiff relies on one conversation that allegedly took place between him and a non-party in which Plaintiff recalls that the non-party recounted a conversation with a Brownstone head trader who purported said the Brownstone software had some features like the non-party's software. (TAC ¶ 16). Aside from this allegation, Plaintiff acknowledges that he "had no access to information regarding the internal workings of Defendants, or the use of the aforesaid copyrighted

materials." (*Id.* at ¶ 15). Indeed, Plaintiff admits that he offers nothing more and requests discovery. (Pl. Br. 7-10).

Thus, Plaintiff's factual and conclusory allegations do not "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555; *compare Stampone v. Stahl,* No. 05-1921, 2005 WL 1694073, at \*2 (D.N.J. July 19, 2005) (finding that alleging that "by not returning the disk, [the defendant] was using it to steal and reproduce [the] plaintiff's artwork, " the allegation was "too broad and sweeping to satisfy Rule 8'" and the plaintiff failed to allege any specific acts or times for infringement), *with Bradshaw,* 2013 WL 1007219, at \*4 (stating that a bald assertion was not enough to satisfy the final element, but where the complaint offered a correlation chart that described the similarities between the items, it was just enough to allege infringing acts). Plaintiff's TAC is devoid of any factual allegations of how the software systems are similar, much less any allegations of specific acts or times of infringement. Accordingly, the Court is convinced that Plaintiff has not stated a plausible claim for copyright infringement.[8]

Because Plaintiff has now had four opportunities to draft a plausible claim for copyright infringement, but has been unable to specify a single act of infringement by Defendants under Rule 8's pleading requirements, this Court will exercise its discretion in dismissing with prejudice. *See Barnard v. Verizon Commc'ns, Inc.,* 451 F.Appx. 80, 87 (3d Cir. 2011), *cert.* denied, 132 S.Ct. 2107 (2012) (finding it was not an abuse of discretion to deny leave for a curative amendment that would be futile where plaintiff "presented only claims that were well below governing pleading standards" even after being granted two opportunities to file amended complaints). Here, Plaintiff has not availed himself of the numerous opportunities to plead sufficient facts to allege a plausible copyright infringement claim.

## VI. Conclusion

For the foregoing reasons, Defendant's motion to dismiss Plaintiff's Third Amended Complaint is granted with prejudice. An appropriate Order shall follow.

---------

Notes:

[1] Since this Court dismisses Plaintiff's TAC for failure to state a claim upon which relief can be granted, it declines to address Defendants' alternative arguments for dismissal. *See JAKKS Pac., Inc. v. Conte,* No. 11-479, 2011 WL 6934856, at \*1 n.2 (D. N.J. Dec. 30, 2011) (citation omitted) ("Since the Court dismisses Plaintiff's Complaint for lack of personal jurisdiction, it declines to address Defendants' alternative arguments, *i.e.,* dismissal for improper venue as well as transfer for the convenience of the parties and witnesses.").

[2] This Court notes that Plaintiff filed another sur-reply on December 5, 2012, (D.E. No. 79), which this Court struck because Plaintiff filed same without leave of court. (D.E. No. 83). Thereafter, Plaintiff filed a motion for leave to file a sur-reply on January 14, 2013. (D.E. No. 84). Four days later, Plaintiff withdrew this motion and filed the instant motion for leave to file a sur-reply, claiming that he was now in possession of Lane's sworn affidavit. (D.E. No. 85). On June 19, 2013, this Court terminated Plaintiff's January 14, 2013, motion for leave to file a sur-reply as withdrawn. (D.E. No. 93).

[3] This Court further finds that Plaintiff's sur-reply seeks to introduce additional factual allegations that are either duplicative or contrary to Plaintiff's pled allegations. First, Plaintiff seeks to bolster his allegation concerning his conversation with Lane by submitting an audio recording of a telephone conversation that purportedly took place on December 3, 2012 in which Lane recalled a conversation that Plaintiff had with Lane at the 2011 convention. (D.E. No. 85, Memorandum of Law of Plaintiff Gordon Levey ("Sur-reply Br.") 7). By Plaintiff's own admission, this recording seeks to "confirm all facts alleged in the [TAC]." (*Id.* ). Because this Court must accept Plaintiff's factual allegations as true on a motion to dismiss, and this audio recording does not add any new facts to the allegation in paragraph 16 of the TAC, this Court is further convinced that it should not consider the audio recording. Second, this Court is perplexed as to why Plaintiff would seek to submit Lane's sworn affidavit, which as Defendants point out, plainly contradicts Plaintiff's core allegations in the TAC. (D.E. No. 87, Defendants' Brief in Response to Plaintiff's Motion to File Sur-reply ("Defs. Sur-reply Br.") 3-4). However, as this Court has already explained, Plaintiff is not permitted to amend his allegations by submitting an affidavit in opposition to the motion to dismiss. *See Pennsylvania ex. rel. Zimmerman,* 836 F.2d at 181.

[4] The Court recognizes that Plaintiff has taken inconsistent positions on when he first became aware of the alleged copyright infringement. On the one hand, Plaintiff brought his initial lawsuit on January 21, 2011. (D.E. No. 1). On the other hand, he now claims that he did not become aware of the alleged infringement until 5 months after he filed his complaint that purportedly gave rise to his claim-June 2011. (TAC ¶¶ 16-17). The Court further observes that Plaintiff previously alleged contradictory dates of when his claim accrued. In the SAC, Plaintiff alleged that he was put on notice of the alleged wrongdoing in January 2006 and in another paragraph in May 2008. ( *See* D.E. No. 71 at 3 (citing SAC ¶¶ 10, 16)). But, the TAC supersedes the SAC, and the facts in the prior complaints no longer bind Plaintiff. *See W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank,* 712 F.3d 165, 171-73 (3d Cir. 2013). Furthermore, in his brief, Plaintiff asserts that "Defendants' copyright infringement continues to this day." (Pl. Br. 4 (citing TAC ¶¶ 9-19)). However, Plaintiff misleads the Court because the allegations in ¶¶ 9-19 do not state that the infringement continues to this day. Again, this Court will not allow Plaintiff to amend his complaint by submitting new facts in opposition to the motion to dismiss. *See Pennsylvania ex. rel. Zimmerman,* 836 F.2d at 181.

[5] Because Plaintiff's brief does not include page numbers, this Court cites to the page number generated by the docket entry.

[6] This Court recognizes that other courts in this Circuit have held that to state a cause of action for copyright infringement, a Plaintiff must allege two factors: (1) ownership of the copyright, and (2) copying by the defendant. *See Bradshaw,* 2013 WL 1007219, at *3 (noting that ownership of the copyright has been pled by alleging facts that a certification of a registration has been obtained, and that copying by the defendant has been pled with facts that the defendant had access to the copyrighted work and that the two works bear substantial similarities). Recently, this district court explained in *Bradshaw* that: (1) these two broad factors nevertheless "entail certain specific pleading requirements" set forth in *Gee;* (2) "recent decisions from this Circuit have embraced *Gee* 's more detailed pleading standard;" and (3) that "this view finds further support in Form 19 of the Federal Rules of Civil Procedure." Accordingly, this Court is persuaded that the more stringent standard in *Gee* applies to copyright infringement claims to be sufficient under Rule 8.

[7] Defendant argues that Plaintiff has not previously asserted a copyright infringement claim for the "Brownstone Trading System, " and that Plaintiff has not alleged that he registered the Brownstone Trading System or that Brownstone Trading System is a derivative work of Levtek. (Def. Br. 3 n.2). But, Plaintiff alleges that he was the legitimate author of "Levtek *and* Brownstone Live *and/or* Brownstone Trading System." (TAC ¶ 10) (formatting altered & emphasis added); *see also id.* at ¶ 8 (stating "Levtek a/k/a Brownstone Live") (internal quotation marks omitted). Additionally, citing to the Levtek registration, Plaintiff alleges that he has "legitimate authorship and copyright interest in certain software - Levtek and Brownstone Live and Brownstone Trading System and has registered that copyright." (*Id.* at ¶ 13 (citing Ex. A) (formatting altered)). Viewing these facts in the light most favorable to Plaintiff and drawing all reasonable inferences in favor of Plaintiff, this Court will accept these allegations to purport that Brownstone Live and Brownstone Trading System are derivative works of the underlying copyrighted work, i.e., Levtek. ( *See* D.E. No. 71 at 5 n.4).

[8] Even holding Plaintiff to the broader standard, Plaintiff has not alleged how the two software programs bear " *substantial* similarities" based on a vague conversation with a non-party. *See Bradshaw,* 2013 WL 1007219, at *3 (emphasis added); *supra* n.6 at 10. Without more detail, this Court cannot conclude that Plaintiff has stated a plausible claim. Additionally, the Court will deny Plaintiff's request for discovery. *See Obgin v. GE Money Bank,* No. 10-5651, 2011 WL 2436651, at *4 n.3 (D.N.J. Jun. 13, 2011) ("A plaintiff's request for discovery cannot serve as a basis to deny a defendant's motion to dismiss, as the filing of such a motion serves to protect a defendant from being subjected to discovery, during which a plaintiff hopes that facts will be unearthed to support plaintiff's speculation."); *Giovanelli v. D. Simmons Gen. Contracting,* No. 09-1082, 2010 WL 988544, at *5 (D.N.J. 2010) ("Discovery... cannot serve as a fishing expedition through which plaintiff searches for evidence to support facts he has not yet pleaded."). The Court need not distinguish *Leaf, Inc.,* a case from a foreign jurisdiction, but will note that, there, the plaintiff was able to specifically plead enough facts on when the infringement occurred, how it occurred, and the amount of damages. 1996 WL 89070 at *1.

---------

# EXHIBIT 6

**VIANIX LLC, Plaintiff,**

**v.**

**NUANCE COMMUNICATIONS, INC., Defendant.**

**C.A. No. 09-348-JJF**

**United States District Court, District of Delaware**

**July 20, 2010**

Peter C. Schechter, Esquire of EDWARDS ANGELL PALMER & DODGE LLP, New York, New York, Denise Seastone Kraft, Esquire of EDWARDS ANGELL PALMER & DODGE LLP, Wilmington, Delaware, Attorneys for Plaintiff.

Faith Gay, Esquire; Jeffrey A. Conciatori, Esquire; Robert C. Juman, Esquire; and Benjamin W. Thorn, Esquire of QUINN EMANUEL URQUHART OLIVER & HODGES, LLP, New York, New York, Daniel A. Dreisbach, Esquire; Jeffrey L. Moyer, Esquire; and Anne Shea Gaza, Esquire of RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware, Attorneys for Defendants.

**MEMORANDUM OPINION**

Fernan, District Judge.

July Wilmington, Delaware Pending before the Court is Defendant Nuance Communications, Inc.'s Motion To Dismiss (D.I. 5.) For the reasons to be discussed, this Motion will be denied.

**I**. **Background**

Plaintiff Vianix LLC ("Plaintiff") initiated this copyright infringement action against Defendant Nuance Communications, Inc. ("Defendant") on May 13, 2009. (D.I. 1.) The parties' dispute stems from a Technology License Agreement (the "Agreement") entered into by Dictaphone Corporation[1] and Vianix Delaware LLC, [2]effective January 23, 2009, which concerned the licensing of Plaintiff's Managed Audio Sound Compression Technology[3] ("MASC Technology"). (*Id.* ¶¶ 18-19.) Plaintiff is the owner of U.S. Copyright Registrations for four computer programs (collectively, the "Subject Works") alleged to embody MASC Technology. (*Id.* ¶ 16.) Generally speaking, the Agreement gave Defendant a license to use MASC Technology in connection with Defendant's products, and to use MASC Technology for certain internal purposes. (D.I.8, at 5.)

For reasons which need not be addressed in the context of this Motion, Plaintiff came to believe that Defendant was in breach of the Agreement. Accordingly, Vianix Delaware filed a breach of contract action against Defendant in the Delaware Court of Chancery on June 2, 2008. (D.I. 1 ¶¶ 34-45, 49.) By letter dated September 22, 2008, pursuant to the "for cause" provision of the Agreement, Vianix Delaware terminated the Agreement effective December 21, 2008. (*Id.* ¶ 50; D.I. 8, at 6.) On January 27, 2009, Vianix Delaware brought suit against Defendant in this District alleging copyright infringement.[4] The Honorable Noel L. Hillman dismissed the suit on May 12, 2009, finding that the Court lacked subject matter jurisdiction because Vianix Delaware had no standing to sue for copyright infringement. (D.I. 7, Thorn Decl., Ex. M.) Specifically, Vianix Delaware was not the owner of the copyrights alleged to be violated, nor did it have a beneficial interest in the copyrights, and therefore, the Court concluded Vianix Delaware did not suffer an invasion of a legally protected interest. (*Id.*) Plaintiff initiated the present copyright infringement action against Defendant the next day, May 13, 2009.

By its Complaint in the present action, Plaintiff alleges that, post-termination of the Agreement, Defendant has infringed and continues to infringe Plaintiff s copyright interests relating to the Subject Works by "archiving, retrieving, loading, running, operating, displaying, maintaining, debugging and performing other computer operations involving computer programs including Vianix's MASC Technology" without approval or authorization. (D.I. 1 ¶ 67 .)

## II. Parties' Contentions

As the first basis for its Motion To Dismiss, Defendant contends that Plaintiff has failed to state a claim upon which relief can be granted because Plaintiff has not identified the specific original works forming the basis of its copyright infringement claim, and because Plaintiff has not identified specific acts committed by Defendant which are actionable as infringement. (D.I. 8, at 10.) Defendant contends that a copyright infringement complaint must identify which specific original works are the subject of the infringement claim, and that Plaintiff has failed to identify which of the four Subject Works are allegedly infringed. (*Id.* at 11-12.) Further, Defendant contends that a copyright infringement complaint must allege the specific acts by which the copyright is infringed, and that none of the specifically-alleged acts in Plaintiff s Complaint qualify as infringement as a matter of law. (*Id.* at 13-19.)

As the second basis for its Motion To Dismiss, Defendant contends that the Agreement is unambiguous and should be interpreted as a matter of law. (*Id.* at 19.) Defendant contends that under the Agreement, termination does not affect the rights of Defendant's customers to use MASC Technology. (*Id.* at 20.) In addition, Defendant argues that under the Agreement, Defendant is entitled to retain back-up copies of its Legacy Programs. (*Id.* at 20-23.)

Plaintiff responds that a complaint sufficiently states a claim for copyright infringement if it alleges that a defendant infringed "one or more" of the plaintiff's copyrights, and that a complaint need not plead exactly which individual elements of the copyrighted works were infringed. (D.I. 10, at 4.) According to Plaintiff, Defendant has adequate notice that the MASC Technology copyrighted works form the basis of the claim, and that where there are only four copyrighted works, as here, there is little risk of confusion or prejudice to Defendant. (*Id.* at 5.) In addition, Plaintiff contends that a complaint for copyright infringement need not specify each individual act a defendant allegedly performed, and that there is no requirement that it provide a detailed account of all of Defendant's objectionable conduct. (*Id.* at 8-10.) Plaintiff argues that it has sufficiently alleged the acts constituting its copyright infringement claim, and notes that it alleged which specific copies of products containing MASC Technology Defendant produced after termination of the Agreement. (*Id.*)

With regard to Defendant's substantive arguments concerning the Agreement, Plaintiff contends that it has a different interpretation than Defendant on post-termination rights under the Agreement. (*Id.* at 12-13.) Because the Agreement is ambiguous, according to Plaintiff, any contractual ambiguities must be resolved in its favor at the pleading stage. (*Id.* at 11-12.)

## III. Legal Standard

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move for dismissal based on a plaintiff s "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). When reviewing a motion to dismiss under Rule 12(b) (6), the Court must accept all factual allegations in a complaint as true and view them in the light most favorable to the plaintiff. *See Christopher v. Harbury* , 536 U.S. 403, 406 (2002) . A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Assuming the factual allegations are true, even if doubtful in fact, the "factual allegations must be enough to raise a right to relief above the speculative level." *Bell A. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While the complaint need not make detailed factual allegations, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than mere labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* (internal quotations and citations omitted). Thus, stating a claim upon which relief can be granted ""requires a complaint with enough factual matter (taken as true) to suggest' the required element" of a cause of action. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008)(citing *Twombly*, 550 U.

S. at 556.) In sum, if a complaint "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged, " *Ashcroft v. Iqbal*. 129 S.Ct. 1937, 1949 (2009), then the complaint is "plausible on its face, " and will survive a motion to dismiss under Rule 12 (b)(6). *Twombly*, 550 U.S. at 570.

## IV. Discussion

### A. *Whether Plaintiff Sufficiently Alleged Copyrighted Works And Conduct That Constitutes Infringement*

A successful copyright infringement claim requires proof of (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). With regard to the second element, "[c]opying is a 'shorthand reference to the act of infringing any of the copyright owner's five exclusive rights set forth at 17 U.S.C. § 106.'" *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 291 (3d Cir. 1991)(citing *Paramount Pictures v. Video Broad. Sys.*, 724 F.Supp. 808, 819 (D. Kan. 1989)). In order to be sufficiently pled under Rule 8, a claim for copyright infringement must state (1) "which specific original work is the subject of the copyright claims, " (2) "that plaintiff owns the copyright, " (3) "that the work in question has been registered in compliance with the statute, " and (4) "by what acts and during what time defendant has infringed the copyright." *Gee v. CBS*, 471 F.Supp. 600, 643 (E.D. Pa. 1979), *aff'd*, 612 F.3d 572 (3d Cir. 1979) (pre- *Twombly* decision); *see also Home & Nature Inc. v. Sherman Specialty Co., Inc.*, 322 F.Supp. 2d 260, 266 (E.D.N.Y. 2004)(reciting same pleading standard in pre- *Twombly* decision); *Plunket v. Doyle*, No. 99 Civ. 11006, 2001 WL 175252, at *4 (S.D.N.Y. Feb. 22, 2001)(reciting same pleading standard in pre-*Twombly* decision).

The Court concludes that Plaintiff s Complaint sufficiently pleads which specific original works are the subject of its copyright claim. The Complaint identifies the Subject Works as four computer programs, in the form of source code, embodying the MASC Technology, with U.S. Copyright Registration Nos. TX 6-879-210, TX 6-879-213, TX 6-879-215, and TX 6-879-216. (D.I. 1 ¶¶ 16, 21.) The Complaint further alleges that pursuant to the Agreement, Plaintiff provided "one or more" of the four Subject Works to Defendant in the form of "object code, " a machine- readable translated form of source code. (*Id.* ¶¶ 20-21.) Additionally, the Complaint identifies seven specific products and alleges that since 2005, Defendant incorporated the Subject Works into "at least" those products. (*Id.* ¶ 30.)

Defendant cites to the case of *Tegg Corp v. Beckstrom Elec. Co.*, C.A. No. 08-435, 2008 WL 2682602 (E.D. Pa. July 1, 2008) to support its contention that Plaintiff must specifically identify which of the "one or more" Subject Works Defendant is alleged to infringe. However, *Tegg* is inapposite; in that case, a motion to dismiss a copyright infringement claim was granted because the complaint was unclear as to which original works were protected by which of the registered copyrights. *Tegg*, 2008 WL 2682602, at *8. In particular, the complaint in *Tegg* identified a broad software system with smaller components as the original work(s), but failed to "identify whether a single copyright registration protects the [] software as a whole, if multiple registrations protect the individual components in their entirety, . . . or if the registrations protect the Confidential and proprietary' database scheme contained therein." *Id.* In contrast, in the present action, the Complaint makes clear that four computer programs, each protected by a copyright registration, are alleged to be infringed.

In addition, the Court concludes that the Complaint sufficiently pleads by what acts Plaintiff alleges Defendant has infringed. Plaintiff alleges that on January 16, 2009, Defendant informed Vianix Delaware that Defendant made "archived copies of its own products, including versions that contain Vianix" (D.I. 1 ¶ 59), but that the Agreement did not grant any post-termination rights to make and store such archived copies (*Id.* ¶ 63) . Accordingly, Plaintiff alleges that Defendant's act of "making and storing [] "archived copies of its own products, including versions that contain Vianix' including the Subject Works, " constitutes infringement. (*Id.* ¶ 61) In the January 16, 2009 email, which serves as the factual basis for this allegation, counsel for Defendant stated "[Defendant] maintains archived copies of its own products, including versions that contain Vianix, but those programs are not currently running on any computer, and are kept in case they are needed in order to provide customer support to customers with older versions of the software."[5] (D.I. 7, Thorn Decl., Ex. G.) Although Defendant contends that the email

makes clear that Defendant has not made any *new* archived copies since termination of the Agreement (and therefore that any claimed infringing act is pure conjecture), the email is not so explicit. Accordingly, at this stage, the Court must accept as true Plaintiff's factual allegation that Defendant is making and storing archived copies of its products which include the Subject Works. In turn, the Court concludes that Plaintiff s factual allegations rise above the speculative level, and support an inference that Defendant is liable for the misconduct alleged. *See* 17 U.S.C. § 106(1)(stating that it is an infringing act to "reproduce the copyrighted work in copies or phonorecords").

Because Plaintiff has sufficiently identified which specific original works are the subject of the claim, as well as a specific act by which Defendant has allegedly infringed the copyright(s), the Court concludes that Plaintiff's Complaint is plausible on its face and states a claim for copyright infringement.

**B.** *Whether, Under The Agreement, Defendant Has A Valid License To Perform The Alleged Infringing Acts*

Section 11.2(c) of the Agreement provides that "[termination shall not affect the rights of DICTAPHONE Clients and DICTAPHONE Distributors to continue to use the MASC Technology acquired from DICTAPHONE in accordance with the terms of this Agreement." (D.I. 7, Thorn Decl., Ex. B, Agreement § 11.2(c)). Section 4.2(c) provides that Defendant has the obligation to "provide technical support appropriate for the DICTAPHONE Products to End Users and Sublicensees." (*Id.* § 4.2(c)). Defendant contends that these provisions demonstrate that Defendant had to retain historical copies of its software products in order to fulfill its obligations under the Agreement, and thus, Plaintiff's "infringement claim based on [Defendant]'s post-termination storage of pre-existing archival copies containing the MASC Technology is without legal support."[6] (D.I. 8, at 23.) However, as discussed above, the Court accepts as true Plaintiff's factual allegation that Defendant is making and storing archived copies of its products, which include the Subject Works, after termination of the Agreement. By its Motion, Defendant does not argue that the Agreement allows for the making and storing of archived copies of its products after termination of the Agreement. At this stage, therefore, the Court cannot conclude as a matter of law that the Agreement allowed for Defendant to perform the infringing act alleged in the Complaint.

**V. Conclusion**

For the reasons discussed, Defendant's Motion To Dismiss will be denied.

An appropriate Order will be entered.

**ORDER**

At Wilmington, this 20 day of July 2010, for the reasons set forth in the Memorandum Opinion issued this date; NOW THEREFORE, IT IS HEREBY ORDERED that Nuance Communications, Inc.'s Motion To Dismiss (D.I. 5.) is *DENIED*.

---------

Notes:

[1]Dictaphone Corporation was acquired by Defendant on or about March 31, 2006, and is now a wholly-owned subsidiary of Defendant. (D.I. 1 ¶ 5; D.I. 8, at 1.)

[2] Vianix Delaware LLC ("Vianix Delaware") is a wholly-owned subsidiary of Plaintiff. (D.I. 1 ¶ 2.)

[3]MASC Technology is "audio compression software" which "allows direct recording of a voice into a compressed file format that minimizes the costs of file storage and transmission prior to compression." (*Id.* ¶¶ 9, 12.)

[4]*Vianix Delaware LLC v. Nuance Communications, Inc.*, C.A. No. 09-67-NLH-JS.

[5] The Court may consider the actual text of the January 16, 2009 email because it was explicitly relied on in Plaintiff's Complaint. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment")(internal quotation marks omitted).

[6] The Court may consider the text of the Agreement without converting the present Motion To Dismiss into a motion for summary judgment because the Agreement is explicitly relied on in Plaintiff's Complaint. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

---------

# EXHIBIT 7

Ubiquiti Networks, Inc. v. Cambium Networks, Inc., 052219 ILNDC, 18 C 5369

## UBIQUITI NETWORKS, INC., Plaintiff,

### v.

## CAMBIUM NETWORKS, INC., CAMBIUM NETWORKS, LTD., BLIP NETWORKS, LLC, WINNCOM TECHNOLOGIES, INC., SAKID AHMED, and DMITRY MOISEEV, Defendants.

### No. 18 C 5369

### United States District Court, N.D. Illinois, Eastern Division

### May 22, 2019

### MEMORANDUM OPINION AND ORDER

GARY FEINERMAN JUDGE

Ubiquiti Networks, Inc. brings this suit against Cambium Networks, Inc., its parent Cambium Networks, Ltd., its employees Sakid Ahmed and Dmitry Moiseev, and its customers Blip Networks, LLC and Winncom Technologies, Inc., alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq*., and other laws. Doc. 1. Defendants move to dismiss under Civil Rules 12(b)(1) and 12(b)(6). Doc. 37. The Rule 12(b)(1) motion is denied, the Rule 12(b)(6) motion is granted, and Ubiquiti will be given a chance to replead.

### Background

In resolving a Rule 12(b)(1) motion asserting a facial challenge to subject matter jurisdiction, as in resolving a Rule 12(b)(6) motion, the court assumes the truth of the operative complaint's well-pleaded factual allegations, though not its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016) (Rule 12(b)(6)); *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015) (Rule 12 (b)(1)). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice, " along with additional facts set forth in the non-movant's brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019-20 (7th Cir. 2013). The facts are set forth as favorably to Ubiquiti as those materials allow. *See Domanus v. Locke Lord, LLP*, 847 F.3d 469, 478-79 (7th Cir. 2017). In setting forth the facts at this stage, the court does not vouch for their "objective truth." *Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018).

In 2009, Ubiquiti introduced its M-series products, which are broadband devices that enhance wireless connectivity and are sold primarily to wireless internet service providers. Doc. 1 at ¶¶ 21-22, 35. The M-series devices run on Ubiquiti's firmware, which includes radio control software, file system software, a calibration protocol, the airOS® operating system, the AirMAX® technology platform, and various access control and verification measures. *Id*. at ¶¶ 23, 74-75, 77-78, 84; Doc. 1-2 at 2 (defining "Ubiquiti Firmware" as "the firmware in object code form made available by Ubiquiti for Ubiquiti devices"). Each user of an M-series device must accept Ubiquiti's Terms of Use and Firmware User License Agreement ("FULA") before configuring the device, Doc. 1 at ¶¶ 24, 37; Doc. 1-2, and must agree to Ubiquiti's End User License Agreement ("EULA") before downloading firmware updates from Ubiquiti's website, Doc. 1 at ¶ 41; Doc. 1-3.

The FULA prohibits an M-series device user from "using the Ubiquiti Firmware on any device other than a Ubiquiti Device" and "copying, us[ing], or modif[ying] … ANY PART OF [Ubiquiti's] firmware." Doc. 1 at ¶ 38 (quoting Doc. 1-2 at 2); *id*. at ¶ 39 (similar, quoting Doc. 1-2 at 3). The FULA further provides that "[u]nauthorized copying of the Ubiquiti Firmware or failure to comply with the [FULA's] restrictions will result in automatic termination of th[e FULA] and will make available to

Ubiquiti other legal remedies." *Id.* at ¶ 40 (quoting Doc. 1-2 at 4). The EULA similarly prohibits an M-series device user from "reverse engineer[ing]" or "otherwise attempt[ing] to … derive the source code or the underlying ideas, algorithms, structure or organization" of Ubiquiti's firmware, as well as from "circumvent[ing] any software protection mechanisms, " including "such mechanism[s] used to restrict or control the" Ubiquiti firmware's "functionality." Doc. 1-3 at 4; Doc. 1 at ¶ 42. The EULA also prohibits M-series device users from "publicly perform[ing] or display[ing]" Ubiquiti firmware without Ubiquiti's consent. Doc. 1-3 at 4.

The FULA states that "Ubiquiti Firmware may contain Open Source Software." Doc. 1-2 at 3. The FULA defines "Open Source Software" as "any software or software component, module or package that contains, or is derived in any manner (in whole or in part) from, any software that is distributed as free software, open source software or similar licensing or distribution models, including … GNU's General Public License, " known as the "GPL." *Id.* at 2. Ubiquiti's website confirms that "[s]ome of the software in the firmware is licensed under the" GPL and similar open source software licenses. Doc. 33-1 at 2-3. The FULA provides that open source software licenses take "precedence over [any inconsistent] rights and restrictions granted in" the FULA. Doc. 1-2 at 4. Likewise, the EULA advises that Ubiquiti's firmware may include "software products that are subject to separate license terms"-such as "software or software components that are derived, in whole or in part, from software that is distributed as free software, open source software or under similar licensing or distribution models"-and that those separate license terms "shall take precedence over the rights and restrictions granted in this EULA solely with respect to" the open source software. Doc. 1-3 at 4-5.

As an open source software license, the GPL provides that a licensee (here, Ubiquiti) that "convey [s] a covered work … waive[s] any legal power to forbid circumvention of technological measures to the extent such circumvention is effected by exercising rights under" the GPL. Doc. 33-4 at 4 (GPL version 3, effective June 29, 2007). The GPL also requires the licensee to "disclaim any intention to limit operation or modification of the [covered] work as a means of enforcing, against the work's users, [the licensee's] … legal rights to forbid circumvention of technological measures." *Ibid.* A "covered work" under the GPL includes "a work based" in whole or in part on open source software, but does not include "separate and independent works, which are not by their nature extensions of the covered work, and which are not combined with it such as to form a larger program." Doc. 33-4 at 2, 5. As a result, the GPL propagates the rights associated with open source software to derivative programs, affording users of derivative programs the same "freedom to change the software" that the GPL guarantees. *Id.* at 2; *see Wallace v. IBM Corp.*, 467 F.3d 1104, 1105 (7th Cir. 2006) ("[T]he GPL propagates from user to user and revision to revision: neither the original author, nor any creator of a revised or improved version, may charge for the software or allow any successor to charge."). (Contrary to Ubiquiti's submission, Doc. 39 at 16, the GPL may be considered on a Rule 12(b)(6) motion. Where "a plaintiff attaches to the complaint a document" like the FULA or EULA "that qualifies as a written instrument, and [the] complaint references and relies upon that document in asserting [the] claim[s], the contents of that document become part of the complaint and may be considered as such when the court decides a motion attacking the sufficiency of the complaint." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013); *see also Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501, 505 (7th Cir. 2013) ("[A] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.") (quoting Fed.R.Civ.P. 10 (c)). And where, as here, the defendants "attac[h] to a motion to dismiss" documents that "are referred to in the plaintiff's complaint and are central to [its] claim"-here, the GPL, which the FULA and the EULA expressly incorporate-those documents "are considered part of the pleadings" as well. *Burke*, 714 F.3d at 505 (internal quotation marks omitted); *see also Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 895 (7th Cir. 2018) (same).)

At some point before November 30, 2016, Cambium created a modified version of the M-series firmware by: modifying, copying, and deleting portions of Ubiquiti's firmware, user interfaces, and copyright notices; replacing the radio operating software; circumventing access control mechanisms on the M-series devices; and using without authorization Ubiquiti's trademarks and original firmware that remained on the devices following the modifications. Doc. 1 at ¶¶ 43-51, 57. On November 30, 2016, Cambium began promoting its modified firmware under the product name ePMP Elevate for installation on Ubiquiti's M-series devices. *Id.* at ¶¶ 54, 63-64, 70. Cambium's promotional materials for ePMP Elevate included a webinar in which Ahmed, Cambium's Vice President of Engineering, and Moiseev, a

Cambium employee, demonstrated how to navigate Ubiquiti's web user interface to replace Ubiquiti's firmware with ePMP Elevate. *Id*. at ¶¶ 93-100; Doc. 1-6. Cambium's promotional materials stated that "Ubiquiti® XW/XM" devices supported ePMP Elevate, Doc. 1-9 at 8; Doc. 1 at ¶¶ 109, 118, and Cambium repeatedly referenced Ubiquiti in online forums discussing ePMP Elevate, Doc. 1 at ¶¶ 120, 122-126. With support from its parent company, Cambium offered customers like Winncom and Blip a special discount for promoting ePMP Elevate through positive reviews. *Id*. at ¶¶ 142, 145-146, 148-152, 155-157.

Cambium's promotional materials further represented that downloading ePMP Elevate onto Ubiquiti's M-series devices allows users "to increase [broadband] performance without replacing" their existing hardware. *Id*. at ¶ 63 (emphasis omitted) (quoting Doc. 1-7 at 2); *see also* Doc. 1-8 at 3 ("ePMP Elevate is a software solution that is hardware agnostic … ."). When installed on M-series devices, ePMP Elevate deletes various portions of Ubiquiti's firmware while preserving others; alters the user interface and copyright notices; and changes the radio software to operate in violation of Federal Communications Commission ("FCC") rules. Doc. 1 at ¶¶ 73-82, 84-87. In promoting ePMP Elevate, Cambium misrepresented that ePMP Elevate would entirely replace Ubiquiti's firmware; that Ubiquiti's warranty would cover devices running ePMP Elevate; and that Ubiquiti devices running ePMP Elevate would remain compliant with FCC rules. *Id*. at ¶¶ 110-117; Doc. 1-4 at 3-5. Despite Ubiquiti's enhancing its firmware's access control mechanisms by introducing "signed" versions of airOS® in early 2017, Cambium has instructed users how they can bypass those mechanisms to install ePMP Elevate on Ubiquiti devices. Doc. 1 at ¶¶ 88, 92; Doc. 1-11 at 3-4, 8-9.

**Discussion**

Ubiquiti alleges that Cambium violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, the Illinois Computer Crime Prevention Law, 720 ILCS 5/17-51, the Copyright Act, 17 U.S.C. § 101 *et seq*., the Digital Millennium Copyright Act, 17 U.S.C. §§ 1201-02, the Lanham Act, 15 U.S.C. §§ 1114, 1125, and state common law in connection with Cambium's misuse of Ubiquiti's M-series broadband products. Doc. 1 at ¶¶ 168-356. Ubiquiti also alleges that Defendants have formed an enterprise led by Cambium in violation of RICO to promote the unlawfully altered M-series devices. *Id*. at ¶¶ 357-398.

Defendants seek dismissal under Rule 12(b)(1) on the ground that the GPL and other open source software licenses deprive Ubiquiti of "standing" to enforce its copyright and contract rights. Doc. 33 at 36-37. Although Defendants assert this "standing" argument as a jurisdictional ground for dismissal under Rule 12(b)(1), the Seventh Circuit has held that whether a party has sufficiently alleged its right to enforce a contract or copyright is properly addressed as a merits issue under Rule 12(b)(6), not as a jurisdictional issue under Rule 12(b)(1). *See JPMorgan Chase Bank, N.A. v. McDonald*, 760 F.3d 646, 650 (7th Cir. 2014) ("The [defendants' conduct] appears to have violated the clause of their contract with the [plaintiff], and the [plaintiff's] claim of the violation is enough to give the [plaintiff] standing to bring this action to enforce the clause."); *HyperQuest, Inc. v. N'Site Solutions, Inc.*, 632 F.3d 377, 381 (7th Cir. 2011) (explaining that "the Copyright Act spells out who has enforceable rights under the statute, " and that "someone who does not" have an enforceable copyright "has failed to state a claim upon which relief may be granted, " which results in dismissal under Rule 12(b)(6)); *see also Sierra Club v. EPA*, 774 F.3d 383, 389 (7th Cir. 2014) ("In reviewing the standing question, the court must be careful not to decide the questions on the merits for or against the plaintiff, and must therefore assume that on the merits the [plaintiff] would be successful in [its] claims.") (alteration and internal quotation marks omitted); *Grede v. Bank of N.Y. Mellon*, 598 F.3d 899, 900 (7th Cir. 2010) ("Whether a given action is within the scope of [a statute] is a question on the merits rather than one of justiciability.").

As to their Rule 12(b)(6) motion, Defendants submit that the GPL and other open source software licenses incorporated into the FULA and EULA narrow the rights Ubiquiti may assert against downstream users like Cambium and thereby undermine Ubiquiti's claims on the merits. Doc. 33 at 16-19. Ubiquiti concedes the point, at least in part: While the complaint generally and broadly alleges that Cambium acted unlawfully in deleting, modifying, and copying largely unspecified portions of Ubiquiti's firmware, Doc. 1 at ¶¶ 44-45, 48, 67, 73-78, 171, 186, 193, 196, 203, 207, 214-215, 217, 227, 235, 248,

278, 280, 285, 307-311, Ubiquiti clarified at the motion hearing that its firmware-related claims are limited to adjustments Cambium made to the "proprietary user interface, " "configuration code, " and "calibration code, " and the AirMAX® platform-terms that the complaint does not clearly define.

This disconnect presents a problem under governing pleading rules. Rule 8(a)(2) requires "straightforward" pleadings, *Stanard v. Nygren*, 658 F.3d 792, 800 (7th Cir. 2011) (internal quotation marks omitted), and the Rule's "primary purpose … is to give defendants fair notice of the claims against them and the grounds supporting the claims, " *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 946 (7th Cir. 2013) (internal quotation marks omitted). The complaint violates Rule 8(a)(2) because it does not provide adequate notice of how Defendants allegedly violated Ubiquiti's firmware-related rights in light of the GPL's and other open source software licenses' incorporated limitations. The fact that Ubiquiti at the motion hearing had to go to great lengths to explain the rough contours of its claims, even after full briefing on the motion to dismiss, confirms the point. *See Stanard*, 658 F.3d at 800 (noting that a complaint may violate Rule 8 where "discerning the basic legal and factual basis of the claims is not impossible but merely unnecessarily difficult"); *United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003) (holding that a complaint must provide notice of "the principal contested matters").

Ubiquiti responds that Rule 8(a)(2) does not require its complaint "to identify particular source code within its firmware that is protected by copyright." Doc. 39 at 16. True enough, a complaint "need not plead factual allegations." *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016) (internal quotation marks omitted). But the disconnect between the broad claims articulated in the complaint, on the one hand, and Ubiquiti's acknowledgement that the GPL and other open source software licenses limit its rights and therefore the scope of its claims, on the other, makes the scope of Defendants' allegedly unlawful conduct "unintelligible, " thereby violating Rule 8(a)(2). *Beyrer*, 722 F.3d at 946 ("If neither the adverse party nor the court can make out the essence of the claims[, ] dismissal of a complaint on the ground that it is unintelligible is unexceptionable.") (internal quotation marks omitted); *see Synopsys, Inc. v. ATopTech, Inc.*, 2013 WL 5770542, at *4 (N.D. Cal. Oct. 24, 2013) ("Plaintiff muddles [its copyright] claim by also asserting that parts of its software and documentation are open-source, which makes its contention that essentially all of its materials are under Plaintiff's copyright protection less plausible. … Plaintiff need not reach any heightened level of particularity for its copyright claims, but those claims must be plausible under Rule 8, *Twombly*, and *Iqbal*."). Until Ubiquiti spells out at least the general nature of its allegedly misused firmware that is not covered by the GPL and other open source software licenses, Defendants will not have adequate notice of Ubiquiti's claims. *See Stanard*, 658 F.3d at 799 ("To form a defense, a defendant must know what he is defending against; that is, he must know the legal wrongs he is alleged to have committed and the factual allegations that form the core of the claims asserted against him."); *Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1276 (10th Cir. 2009) ("[P]lausibility in the context of determining the sufficiency of a complaint refers to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible.") (alteration and internal quotation marks omitted).

Because the complaint violates Rule 8(a)(2), it is dismissed under Rule 12(b)(6). *See Davis v. Anderson*, 718 Fed.Appx. 420, 424 (7th Cir. 2017) ("[I]t's usually preferable to require repleading rather than ordering a more definite statement so that a plaintiff's allegations are not split between the complaint and the more definite statement.") (citing *Davis v. Ruby Foods, Inc.*, 269 F.3d 818, 820 (7th Cir. 2001)); *Griffin v. Milwaukee Cnty.*, 369 Fed.Appx. 741, 743 (7th Cir. 2010) (same). The dismissal is without prejudice, and Ubiquiti will be given a chance to replead. *See Pension Trust Fund for Operating Eng'rs v. Kohl's Corp.*, 895 F.3d 933, 941 (7th Cir. 2018) ("We repeatedly have said that a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend [the] complaint before the entire action is dismissed.") (internal quotation marks omitted). Once Ubiquiti repleads, the court and Defendants will be in a better position to ascertain whether (and to what extent) the GPL and other open source software licenses cover Cambium's alleged firmware modifications, and therefore to determine the legal sufficiency of Ubiquiti's claims.

**Conclusion**

Defendants' motion to dismiss is denied in part (as to Rule 12(b)(1)) and granted in part (as to Rule 12(b)(6)). The complaint is dismissed without prejudice. Ubiquiti has until June 5, 2019 to file an amended complaint. If it does not do so, the dismissal will convert automatically to a dismissal with prejudice. If Ubiquiti files an amended complaint, Defendants will have until June 19, 2019 to file their response.

# EXHIBIT 8

Purohit v. Legend Pictures, LLC, 032420 DEDC, C. A. 18-1907-RGA

## KALYAN PUROHIT a.k.a. CLEMENT GORE, Plaintiff,

### v.

## LEGEND PICTURES, LLC, d.b.a. LEGENDARY ENTERTAINMENT, UNIVERSAL STUDIOS LLC, and UNIVERSAL STUDIOS HOME ENTERTAINMENT LLC, Defendants.

### Civil Action No. 18-1907-RGA

### United States District Court, D. Delaware

### March 24, 2020

Timothy Devlin, James Lennon, DEVLIN LAW FIRM LLC, Wilmington, DE; Attorneys for Plaintiff

Elizabeth Sloan, BALLARD SPAHR LLP, Wilmington, DE; David Grossman, LOEB & LOEB LLP, Los Angeles, CA; Attorneys for Defendants

### MEMORANDUM OPINION

ANDREWS, U.S. DISTRICT JUDGE

Before the Court is Defendants' Motion to Dismiss Pursuant to FRCP 12(b)(6). (D.I. 18). The Court has considered the parties' briefing and related papers. (D.I. 19, 22, 24, 36, 37). The Court has reviewed Plaintiff's Book (D.I. 43) and YouTube Video (D.I. 42) as well as Defendants' Krampus Film (D.I. 41) and Graphic Novel (D.I. 47).

## I. BACKGROUND

In the instant case, Plaintiff's operative complaint alleges copyright infringement of his work entitled "The Krampus Night Before Christmas" ("the Book"). (D.I. 15 at 3). The text of the Book parodies Clement Clarke Moore's 1823 poem "A Visit from St. Nicholas" and tells the story of a family's visit from Krampus. (*Id.* at 5). Krampus is an anthropomorphic folklore figure who is the devilish foil of Saint Nikolaus. (*Id.* at 4-5). Plaintiff hired an artist to create illustrations for the Book to go along with the text that Plaintiff wrote. (*Id.* at 6). The artist assigned all rights in his illustrations to Plaintiff. (*Id.*). The Book was published on October 13, 2012, and Plaintiff obtained a United States copyright on the Book on September 13, 2017 (Registration No. TX0008463196). (*Id.* at 3). Plaintiff created a video in 2012 that he posted on YouTube ("YouTube Video"), in which a voiceover reads the text of the Book while illustrations from the Book are shown. (D.I. 15 at 6).

On November 30, 2018, Plaintiff filed the instant suit alleging that Defendants' "Krampus" motion picture ("Film") infringes his copyright in the Book. (D.I. 1 at 8). Defendants subsequently filed a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (D.I. 9). Plaintiff filed an amended complaint in response. (D.I. 15). Defendants then filed a Rule 12(b)(6) motion to dismiss the amended complaint. (D.I. 18).

## II. LEGAL STANDARD

### A. Rule 12(b)(6)

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept the complaint's factual allegations as true. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). Rule 8(a) requires "a short and plain statement of the claim showing that the pleader

is entitled to relief." *Id.* at 555. The factual allegations do not have to be detailed, but they must provide more than labels, conclusions, or a "formulaic recitation" of the claim elements. *Id.* ("Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact).")). Moreover, there must be sufficient factual matter to state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facial plausibility standard is satisfied when the complaint's factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted)).

## B. Copyright Infringement

"To establish a claim of copyright infringement, a plaintiff must establish: (1) ownership of a valid copyright; and (2) unauthorized copying of original elements of the plaintiff's work." *Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 206 (3d Cir. 2002). There are, in turn, two elements required to prove unauthorized copying of original elements of the plaintiff's work: (1) material appropriation of the copyrighted work, and (2) actual copying. *Tanksley v. Daniels*, 902 F.3d 165, 173 (3d Cir. 2018).

The material appropriation inquiry examines the "substantial similarity" between the protectable elements of plaintiff's work and defendant's work, asking whether a "lay observer" would believe that defendant's work copied protectable elements from plaintiff's copyrighted work. *Id.* at 174. This analysis requires the trier of fact to filter out the unprotectable elements of the copyrighted work and compare the remaining elements with the accused work to see if the two are substantially similar. *Id.* Under the *scènes à faire* doctrine, some elements are unprotectable because they are standard expressions that logically flow from a general idea and are therefore common among works of a kind. *Swirsky v. Carey*, 376 F.3d 841, 850 (9th Cir. 2004). The "total concept and feel" of a work can also show substantial similarity between two works. *Tanksley*, 902 F.3d at 175. This analysis can be helpful when the copyrighted work is a compilation of unprotectable elements, but the author's original contributions in the selection, coordination, and arrangement of those elements is protectable. *Id.*

Actual copying requires that the defendant used the copyrighted work in creating the infringing work. *Id.* A defendant's work is not infringing if it was created independently of the plaintiff's work. *Id.* Absent direct evidence, actual copying may be "shown through circumstantial evidence of access and similarity." *Id*.

"Upon review of the works themselves, if the court concludes that no trier of fact could rationally determine the two to be substantially similar, it can render a defense judgment as a matter of law." 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 12.10[B][3] (2019). The Third Circuit has confirmed that district courts have authority to render such judgments on a motion to dismiss if "no reasonable juror could find substantial similarity." *Tanksley*, 902 F.3d at 172. I think this is such a case. The Court offered to hold a hearing to aid in its consideration of the substantial similarity analysis. (D.I. 34). Neither side requested a hearing. (D.I. 36, 37). Defendants "[did] not object [to one]." (D.I. 36 at 1). Plaintiff "[was] willing to forego a further hearing [in reference to substantial similarity]." (D.I. 37 at 2). Based on the parties' responses, the Court obtained the relevant artistic works at issue (D.I. 38-43, 47), and I read or watched them. No. one has suggested any other evidence, such as expert testimony, would make a difference.

## III. DISCUSSION

## A. Direct Infringement

*a. Substantial Similarity*

i. *Plaintiff's Book*

The first count of Plaintiff's amended complaint alleges that Defendants infringe Plaintiff's exclusive rights in the Book and other derivative works, including the YouTube Video. (D.I. 15 at 20). Plaintiff alleges that Defendants' Film is substantially similar to the Book in that it "copies original and distinctive elements" of the depiction of Krampus in the Book. (*Id.* at 9). Plaintiff's claimed "original and distinctive elements" include horns like those of a Walia ibex, a lack of black fur, a pronounced hunch, a long beard, glowing slanted eyes, a tattered red robe, limply bent arms, and clawed hands. (*Id.* at 9-10). Plaintiff also alleges that the Film "copies [the] original and distinctive" entrance of Krampus "through the chimney headfirst, cracking part of the flue and spreading [his] hands out to the side of the fireplace" with a hood obscuring his eyes. (*Id.* at 11-12). Plaintiff further alleges that the Film "copies original and distinctive elements" of the Book like "dark elves, " "demonic toys, " and "evil, shaggy reindeer." (*Id.* at 12-15). Plaintiff also claims that the Film's title style "copies the distinctive and creative title style of the [Book]." (*Id.* at 15). Finally, Plaintiff claims that the cover of Defendants' Graphic Novel (a companion work to the Film) "copies the distinctive and creative cover image of the [Book]" and that the depictions of Krampus in the Graphic Novel infringe those in the Book. (*Id.* at 16-17).

Plaintiff's allegations of infringement of the Book focus around the image of the Krampus character. I will therefore begin with the Krampus character and filter out the unprotectable elements. As Plaintiff states in his complaint, the Krampus character in the Book is based on the folklore Krampus, a public domain character. (*Id.* at 4-5). The Krampus character in the abstract is thus unprotectable because it is an idea and in the public domain. 17 U.S.C. § 102(b); *DiTocco v. Riordan*, 815 F.Supp.2d 655, 666, 668 (S.D.N.Y. 2011). While a public domain character is unprotectable, a particular expression of that character might be protectable if it is a "distinguishable variation." *Gerlach-Barklow Co. v. Morris & Bendien, Inc.*, 23 F.2d 159, 161 (2d Cir. 1927).

Applied to Plaintiff's Krampus, only elements that distinguish the Book's illustrations of Krampus from the Krampus in the public domain may be protectable. Plaintiff contends that those elements are the horns like those of a Walia ibex, a lack of black fur, a pronounced hunch, a long beard, glowing slanted eyes, a tattered red robe, limply bent arms, and clawed hands. (D.I. 15 at 9-10). Plaintiff argues that Krampus in the Film also has these characteristics and thus is substantially similar to the Book's Krampus. (*Id.*). The elements claimed by Plaintiff, however, are not protectable. These elements are "too common and generic, and constitute *scenes-a-faire* that flow directly from" historical depictions of Krampus and themes of both Christmas and horror entertainment. *Newt v. Twentieth Century Fox Film Corp.*, 2016 WL 4059691, at *11 (C.D. Cal. July 27, 2016); (*see* D.I. 15 at 4-5). While the Film's Krampus does have some of these features, the elements are not sufficiently distinctive to allow for copyright protection. Further, a lay observer would not believe that the Film copied the Book's protectable elements of expression-the exact illustrations in the Book-such as to support a finding of substantial similarity between the expression of Krampus in the Book and in the Film.

The "total concept and feel" of the two Krampus expressions also does not show substantial similarity. In the Film, Krampus only appears for a brief time while his monstrous minions do most of the action. When Krampus is seen in the Film, he is mostly in shadow, except for the climactic scene towards the end when protagonist Max tries to sacrifice himself to save his family. Only then do we see the sunken eyes and decrepit, zombie-like face of Krampus. The Film's Krampus has the air of a mystical and demonic being as he jumps between rooftops, sneak-attacks from deep underneath the snow, and has powers to open a fiery crater in the earth. While certainly not human, the Book's Krampus is more anthropomorphous and is less covert than Krampus in the Film. The face of the Book's Krampus is always readily seen, and in the Book, Krampus is present during the punishment and damage to the family and home. Rather than eerily ravaging an entire neighborhood, inducing a blizzard, and employing minions to pick off the family one-by-one (as in the Film), the Book's Krampus descends upon the family's home, steals the children, and promptly leaves in a sleigh. The "total concept and feel" of Krampus as expressed in the Film is significantly different from how Krampus is expressed in the Book. A lay observer would not find substantial similarity between the two.

I next turn to Plaintiff's infringement claims relating to Krampus's entrance through the chimney and his monstrous minions. Plaintiff claims that the Film copies from the Book Krampus's head-first entrance through the chimney, which cracks the flue. (D.I. 15 at 11-12). Krampus's entrance is an

unprotectable idea and thus Defendants' Film cannot infringe it. Plaintiff also alleges that the Film copied the "dark elves, " "demonic toys, " and "evil, shaggy reindeer" from the Book. (*Id.* at 12-15). These too are each ideas that cannot be protected by copyright and are therefore not infringed.

Plaintiff further alleges that the Film copies the title style of the Book because the Film title also is in a serif font with white text on a colored background and has "a curly 'S,' and a descending stroke of the 'R'." (D.I. 15 at 15). These elements, however, are unprotectable as they are in the public domain. *Tufenkian Imp./Exp. Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 132 (2d Cir. 2003) ("Thus the public domain includes, for example, both the generic shape of the letter "L" and all of the elaborately more specific "L's" from the hundreds of years of font designs that have fallen into the public domain."). The Book's title style therefore cannot be infringed.

Regarding Defendants' Graphic Novel, Plaintiff alleges that it copies both the cover of the Book and the depictions of Krampus in the Book. (D.I. 15 at 16-17). The elements of the Book cover that Plaintiff claims are "distinctive and creative" are unprotectable ideas. (*Id.* at 16). For example, Plaintiff points to the image of Krampus with glowing eyes and an open mouth, and a house with lights in the windows. (*Id.*). An open mouth and lit-up windows are ideas that cannot be protected by copyright. The "total concept and feel" of the two covers is also different such that it does not support a finding of substantial similarity. The Book cover is a silhouette of Krampus as he swallows up Christmas trees. The Graphic Novel cover, however, has a detailed image of Krampus from the Film in the background behind the house and a group of menacing-looking snowmen in the foreground.

As for the expressions of Krampus in the Graphic Novel, Plaintiff again alleges similarity in the horns, glowing eyes, and tattered red robe. (*Id.* at 17). As previously stated, these elements are unprotectable ideas. The "total concept and feel" of the Graphic Novel is also different from that of the Book. Like in the Film, Krampus in the Graphic Novel is barely shown, leaving much of the story to other characters. Graphic Novel Krampus is more like a villain in action-genre entertainment than the Book's folklore character. The Graphic Novel tells four different, dark, and complex stories where Krampus is the villain aided by his monstrous minions. These stories do center around Christmastime, but stray far from the folklore Krampus punishing naughty children. A lay observer would not find the Book and the Graphic Novel to have the same total concept and feel such as to find them substantially similar. Further, a lay observer would not believe that the Graphic Novel copied the Book's protectable elements of expression-the exact cover and illustrations in the Book. Thus, there is no support for finding substantial similarity between the Book and in the Graphic Novel.

Plaintiff also claims that Defendants' promotional materials, the Film Facebook Page and "Halloween Horror Nights" event, contain images and content (some of which are from the Film) that copy the Book. (D.I. 15 at 17-19). To the extent that these promotional materials contain direct images from the Film, these images are not substantially similar for the reasons already stated. Plaintiff alleges that the display at the "Halloween Horror Nights" event copied the Book because it showed Krampus's hand coming out of the chimney and the Film title in the curly serif font. (*Id.* at 18). As previously discussed, these elements are unprotectable. Defendants' promotional materials are therefore not substantially similar to the protected elements of the Book.

After comparing the protectable elements of the Book to the Film, Graphic Novel, and Defendants' promotional material, I find that there is no substantial similarity between the Book and Defendants' works. Plaintiff has therefore not stated a claim of copyright infringement of his Book against Defendants.

ii. *Plaintiff's YouTube Video*

In 2012, Plaintiff made the YouTube Video containing illustrations from the Book and a voiceover reading the text of the Book. (D.I. 15 at 6). Plaintiff did not obtain a copyright registration on the YouTube Video, but the Video is a derivative work of the Book. "[W]here the preexisting work is registered, but the derivative work is not, a suit for infringement may be maintained as to any protected element contained in the registered preexisting work, but not as to any element original to the unregistered derivative work." *Well-Made Toy Mfg. Corp. v. Goffa Int'l Corp.*, 210 F.Supp.2d 147, 158

(E.D.N.Y. 2002). Plaintiff may therefore claim infringement of the YouTube video only for elements that are also present in the Book.[1] For the same reasons as stated for the Book, there is no substantial similarity between the protectable elements in the YouTube Video and either Defendants' Film or Graphic Novel. Plaintiff has therefore not stated a claim of copyright infringement against Defendants. *b. Access* The second factor in analyzing whether there has been "unauthorized copying of original elements of plaintiff's work" is actual copying. *Tanksley*, 902 F.3d at 173. Both factors, however, must be satisfied for an adequate showing of unauthorized copying. *See Id.* Plaintiff has failed to sufficiently allege substantial similarity between the Book and Defendants' accused works. Thus, I need not and will not consider whether the complaint sufficiently alleges actual copying. *See id.*

### c. Summary

In the instant case, there is no substantial similarity between Plaintiff's works (the Book and YouTube Video) and Defendants' Film, Graphic Novel, or promotional materials. Thus, Plaintiff's amended complaint fails to state a claim of copyright infringement.

## B. Indirect Infringement

In the second and third counts of Plaintiff's amended complaint, Plaintiff alleges that Defendants are contributorily and vicariously liable for infringement of the Book. (D.I. 15 at 20-22). There can be no indirect infringement without direct infringement. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005). Plaintiff has failed to sufficiently allege direct infringement by Defendants. Thus, Plaintiff does not state claims for contributory infringement or infringement based on vicarious liability.

## C. Moral Rights

The fourth count of Plaintiff's amended complaint alleges that Defendants have "infringed upon Plaintiff's moral rights by not attributing Mr. Purohit as the author/creator" of the Film, Graphic Novel, or promotional materials. (D.I. 15 at 22-23). The Book, however, is not eligible for moral rights protection under 17 U.S.C. §106A. Section 106A only applies to "works of visual art." "A work of visual art" is "a painting, drawing, print, or sculpture, existing in a single copy, in a limited edition of 200 copies or fewer that are signed and consecutively numbered by the author." 17 U.S.C. § 101. "A work of visual art does not include any . . . book." *Id.* Plaintiff's copyrighted work is a book, which is explicitly exempt from being "a work of visual art." Plaintiff argues that the Book is a "work of visual art" because it contains paintings and drawings. (D.I. 22 at 16). In doing so, Plaintiff ignores the requirement that the painting or drawing must be limited to 200 copies or fewer. 17 U.S.C. § 101. Plaintiff has sold "over 500 copies" of the Book. (D.I. 15 at 7). The Book is therefore not eligible for moral rights protection under § 106A.

## D. Remedies

Plaintiff has failed to state a claim of copyright infringement. Thus, the fifth and sixth counts, which do not allege additional claims, but instead request remedies, cannot stand alone. They too will be dismissed.

## III. CONCLUSION

For the reasons stated above, the Court GRANTS Defendants' Motion to Dismiss Pursuant to FRCP 12(b)(6) (D.I. 18). An accompanying order will issue.

---------

Notes:

[1] Plaintiff also claims that the "Day of the Dead Krampus" skull and "Krampus Masks" are copied by Defendants, but these derivative works are so different from the Book that they do not benefit from the protection of the copyright registration and thus they cannot be the basis for a claim of copyright infringement. (D.I. 15 at 19); 17

---------

# EXHIBIT 9

Gamble v. Citizen Bank, 032119 DEDC, Civ. 18-1374-LPS

**WAYNE T. GAMBLE, Plaintiff,**

**v.**

**CITIZEN BANK (MAIN OFFICE), Defendant.**

**Civ. No. 18-1374-LPS**

**United States District Court, D. Delaware**

**March 21, 2019**

Wayne T. Gamble, Wilmington, Delaware, Pro Se Plaintiff.

**MEMORANDUM OPINION**

Stark, U.S. District Judge.

## I. INTRODUCTION

Plaintiff Wayne T. Gamble ("Plaintiff") filed this action on September 5, 2018. (D.I. 2) He appears *pro se* and has been granted leave to proceed *in forma pauperis.* (D.I. 4) The Court proceeds to review and screen the Complaint pursuant to 28 U.S.C. § 1915(e)(2).

## II. BACKGROUND

Plaintiff alleges his farm money has been stolen and "they said murderer." Plaintiff alleges Defendant broke the law. He also refers to Kenny Gamble.

## III. LEGAL STANDARDS

A federal court may properly dismiss an action *sua sponte* under the screening provisions of 28 U.S. C. § 1915(e)(2)(B) if "the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief." *Ball v. Famiglio,* 726 F.3d 448, 452 (3d Cir. 2013); *see also* 28 U.S.C. § 1915(e)(2) *(in forma pauperis* actions). The Court must accept all factual allegations in a complaint as true and take them in the light most favorable to *a pro se* plaintiff. *See Phillips v. County of Allegheny,* 515 F.3d 224, 229 (3d Cir. 2008); *Erickson v. Pardus,* 551 U.S. 89, 93 (2007). Because Plaintiff proceeds *pro se,* his pleading is liberally construed and his Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson,* 551 U.S. at 94 (citations omitted).

An action is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). Under 28 U.S.C. § 1915(e)(2)(B)(i), a court may dismiss a complaint as frivolous if it is "based on an indisputably meritless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario. *Neitzke,* 490 U.S. at 327-28; *see also Wilson v. Rackmill,* 878 F.2d 772, 774 (3d Cir. 1989).

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B) (ii) is identical to the legal standard used when deciding Rule 12(b)(6) motions. *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Fed.R.Civ.P. 12(b)(6) standard to dismissal for failure to state a claim under § 1915(e)(2)(B)). However, before dismissing a complaint or claims for failure to state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S. C. § 1915, the Court must grant a plaintiff leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

A complaint may be dismissed only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Though "detailed factual allegations" are not required, a complaint must do more than simply provide "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (internal quotation marks omitted). In addition, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *See Williams v. BASF Catalysts LLC*, 765 F.3d 306, 315 (3d Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Twombly*, 550 U.S. at 570). Finally, a plaintiff must plead facts sufficient to show that a claim has substantive plausibility. *See Johnson v. City of Shelby*, ___ U.S. ___, 135 S.Ct. 346, 347 (2014). A complaint may not be dismissed for imperfect statements of the legal theory supporting the claim asserted. *See id*. at 346.

Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps: (1) take note of the elements the plaintiff must plead to state a claim; (2) identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). Elements are sufficiently alleged when the facts in the complaint "show" that the plaintiff is entitled to relief. *See Iqbal*, 556 U.S. at 679 (citing Fed.R.Civ.P. 8 (a)(2)). Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## IV. DISCUSSION

The allegations in the Complaint are both legally and factually frivolous and do not rise to the level of any constitutional violations. Plaintiff has raised many of these claims in cases previously dismissed by the Court. As pled, there is no legal basis for Plaintiff's claims. Indeed, the allegations are conclusory, somewhat delusional, and the Court's experience and common sense lead it to recognize that the Complaint does not state a facially plausible claim for relief. *See Iqbal*, 556 U.S. at 679.

## V. CONCLUSION

For the above reasons, the Court will dismiss the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) (i). The Court finds amendment futile.

An appropriate Order follows.

# EXHIBIT 10

### M2M SOLUTIONS LLC, Plaintiff,

### v.

### TELIT COMMUNICATIONS PLC and TELIT WIRELESS SOLUTIONS INC., Defendants.

### Civil Action No. 14-1103-RGA

### United States District Court, D. Delaware

### August 5, 2015

Richard D. Kirk, Esq., Stephen B. Brauerman, Esq., Vanessa R. Tiradentes, Esq., Sara E. Bussiere, Esq., BAYARD, P.A., Wilmington, DE. Attorneys for Plaintiff.

Jack B. Blumenfeld, Esq., Rodger D. Smith II, Esq., Morris, Nichols, Arsht & Tunnell LLP, Wilmington, DE. Attorneys for Defendant Telit Communications PLC.

**MEMORANDUM**

ANDREWS, U.S. DISTRICT JUDGE

## I. INTRODUCTION

On August 26, 2014, Plaintiff M2M Solutions LLC ("Plaintiff') filed this patent infringement action against Defendants Telit Communications PLC ("Telit UK") and Telit Wireless Solutions Inc. ("Telit US") to enforce its rights in United States Patent No. 8, 648, 717 (the "patent-in-suit"), asserting claims of direct infringement in violation of 35 U.S.C. § 271(a), active inducement of infringement in violation of 35 U.S.C. § 271(b), and contributory infringement in violation of 35 U.S.C. § 271(c). (D.I. 1). Presently before the Court is Defendant Telit UK's motion to dismiss all three claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (D.I. 27). The motion has been fully briefed (D.I. 28, 40, 47). For the reasons set forth herein, Telit UK's motion is granted.

## II. BACKGROUND

Plaintiff is a limited liability company organized and existing under the laws of the State of Delaware, having its principal place of business in Shepherdstown, West Virginia. (D.I. 1 at 1). Defendant Telit U.S. is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business in Morrisville, North Carolina. (*Id.* at 2). Defendant Telit UK is a corporation formed and existing under the laws of the United Kingdom, having its principal place of business in London. (*Id.* at 1). Telit UK is the ultimate parent company of Telit US. (*Id.* at 1).

Plaintiff is the owner of the patent-in-suit. (D.I. 1 at 3). The '717 patent was issued on February 11, 2014 and is entitled "Programmable Communicator." *(*Id.).

Plaintiff alleges in its complaint that "Telit has and continues to directly infringe" the '717 patent-in-suit by "making, using, offering for sale, and/or selling within the United States, and/or importing into the United States" various "M2M module products" that are "designed and promoted for use in M2M communications applications, and that embody and/or practice the inventions of one or more claims of the '717 patent-in-suit." (*Id.* at 4).[1] Plaintiff also alleges that "Telit has actively induced direct infringement" by "designing and introducing into the stream of commerce its M2M module products, " by "publishing manuals and promotional literature, " by "offering support and technical assistance, " all of which induce "its customers" to commit direct infringement of the '717 patent-in-suit. (*Id.* at 5). Plaintiff additionally claims that "Telit" committed contributory infringement "by selling, offering for sale, and/or importing" its products "within or into the United States knowing that [its] products are

especially made or especially adapted for use in direct infringement" and that "those products are not... suitable for substantial noninfringing use." (*Id.* at 5-6). By its present motion, Defendant Telit UK argues that Plaintiff fails to state a claim upon which relief could be granted against Telit UK in all three infringement claims. (D.I. 27).

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) stipulates that a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." In order to survive a Rule 12(b)(6) motion to dismiss, a plaintiffs pleading must contain "enough facts to state a claim for relief that is plausible on its face." *Bell Ail. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal,* 556 U.S. 662, 663 (2009). When considering Rule 12(b)(6) motions, the court "must accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom." *Nami v. Fauver,* 82 F.3d 63, 65 (3d Cir. 1996).

### IV. DISCUSSION

#### A. Direct Infringement

#### 1. Standard

35 U.S.C. § 271(a) provides for the cause of action for direct infringement, under which "whoever without authority makes, uses, offers to sell, or sells any patented invention ... during the term of the patent therefor, infringes the patent." The Court of Appeals for the Federal Circuit has held that compliance with Form 18 is sufficient to state a claim of direct infringement. *In re Bill of Lading,* 681 F.3d 1323, 1334 (Fed. Cir. 2012) (acknowledging that "to the extent the parties argue that *Twombly* and its progeny conflict with the Forms and create differing pleading requirements, the Forms control."); *McZeal v. Sprint Nextel Corp.,* 501 F.3d 1354, 1357 (Fed. Cir. 2007). Requirements for Form 18 are: "(1) an allegation of jurisdiction; (2) a statement that plaintiff owns the patent; (3) a statement that defendant has been infringing the patent by 'making, selling, and using [the device] embodying the patent'; (4) a statement that the plaintiff has given the defendant notice of its infringement; and (5) a demand for an injunction and damages." *McZeal,* 501 F.3d at 1357.

#### 2. Discussion

Defendant Telit UK argues that Plaintiffs claim fails to identify Telit UK's enumerated acts that constitute direct infringement and is merely a verbatim repetition of the language in 35 U.S.C. § 271(a). (D.I. 28 at 7) (citing *Mobil Oil Corp. v. Linear Film, Inc.,* 718 F.Supp. 260, 265 (D. Del. 1989).[2] Telit UK also argues that Plaintiffs factual inference is not only unfounded, but also directly contradictory to the uncontroverted evidence that Plaintiff has obtained in another lawsuit between the same parties, making the claim against Telit UK implausible and unable to pass muster under *Iqbal.* (D.I. 47 at 6) (citing *Iqbal,* 556 U.S. at 678).

Plaintiffs allegation of the infringing acts satisfies the pleading standard. When the Forms conflict with *Twombly* and its progeny by creating differing pleading requirements, the Federal Circuit has held that "the Forms control." *In re Bill of Lading,* 681 F.3d at 1334. In the pending case, Plaintiffs claim identifies acts that directly infringe the patent: "making, using, offering for sale, and/or selling within the United States" M2M module products. (D.I. 1 at 4). Consequently, Plaintiffs allegations of infringing acts are sufficient because they comply with Form 18.

Arguing that Plaintiffs factual allegation of infringing acts is directly contrary to the evidence that has been provided to Plaintiff in another case (D.I. 28 at 3).[3] Telit UK uses extrinsic evidence that is not included in Plaintiffs complaint to demonstrate the implausibility of Plaintiff s factual inference. The use of extrinsic evidence is improper. "To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record."[4]

*Schmidt v. Skolas,* 770 F.3d 241, 249 (3d Cir. 2014). As a result, extrinsic evidence from the 12-033-RGA action cannot be considered at the present stage.

Plaintiffs direct infringement claim does suffer from a pleading defect which Defendant Telit UK does not explicitly raise. Plaintiffs decision to lump two defendants together in addressing its direct infringement claim cannot pass muster under Form 18, which also requires the identification of the accused product, process or method for each defendant. Indeed, Plaintiffs complaint does not identify which particular defendant or defendants are responsible for which allegedly infringing products, process or method. Failing to satisfy Form 18, Plaintiffs direct infringement claim must be dismissed.

In its answering brief (D.I. 40), Plaintiff asserts that it decided to group Telit UK and Telit U.S. under an umbrella term "Telit" because "[t]here is little distinction between [Telit UK] and [Telit US]" based on Telit UK's public representations suggesting its actual control over Telit U.S. in its machine-to-machine communication business. (D.I. 40 at 2-4). For the same reason, Plaintiff alleges that even if Telit UK insists that Telit U.S. is the relevant entity responsible for the products shipped to the United States, Plaintiff is "seeking to hold [Telit UK] liable for [Telit US]'s sales" due to Telit UK's total control over Telit US. (D.I. 40 at 10).

Plaintiffs claim that a foreign parent is responsible for the alleged infringement by its domestic subsidiary must also satisfy the pleading standard of Rule 8(a). *See Novo Nordisk v. Caraco Pharmaceutical Laboratories,* 450 F.Supp.2d 757, 761 (E.D. Mich. 2006). As that court held, to state a claim "based on an alleged parent-subsidiary relationship, a plaintiff would have to allege: (1) the existence of a parent-subsidiary relationship, and (2) facts that justify piercing the corporate veil." *See Id.* (citation omitted). "[T]he existence of an agency relationship between the entities where the parent effectively controls the conduct of the subsidiary" could satisfy the second condition. *Id.*

In its complaint, Plaintiff alleges the existence of a parent-subsidiary relationship. (D.I. 1 at 1-2). However, nowhere in its complaint does Plaintiff present facts that demonstrate the parent's effective control over the subsidiary. All the facts alleged to support Plaintiffs assertion that Telit UK controls Telit US's conduct are contained in Plaintiffs answering brief in opposition to Telit UK's motion to dismiss (D.I. 40 at 2-4) and its attached exhibits (D.I. 41). As the Third Circuit has stated, "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Com. of Pa. ex rel. Zimmerman v. PepsiCo. Inc.,* 836 F.2d 173, 181 (3d Cir. 1988) (citation omitted). As a result, the factual allegations of Telit UK's control over Telit U.S. are not included in the complaint and are not entitled to consideration in the pleading stage. *See Telecomm Innovations, LLC v. Ricoh Company, Ltd.,* 966 F.Supp.2d 390, 393 (D. Del. 2013) (holding that "a court may consider the pleadings, public record, orders, exhibits attached to the complaint, and documents incorporated into the complaint by reference"). Thus, the direct infringement claim will be dismissed.

### B. Indirect infringement claims

### 1. Inducement standard

Under 35 U.S.C. § 271(b), "whoever actively induces infringement of a patent shall be liable as an infringer." In order to plead induced infringement, the patentee "must show direct infringement, and that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *Toshiba Corp. v. Imation Corp.,* 681 F.3d 1358, 1363 (Fed. Cir. 2012) (citation omitted). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead facts "plausibly showing that [the alleged infringer] specifically intended [a third party] to infringe [the patent-in-suit] and knew that the [third party's] acts constituted infringement." *In re Bill of Lading,* 681 F.3d at 1339.

### a. Knowledge that direct infringer's acts constituted infringement

Plaintiff sufficiently alleges Telit UK's knowledge of the existence of the patent-in-suit. (D.I. 1 at 4, ¶ 10). Defendant Telit UK claims, nevertheless, that Plaintiff fails to state an induced infringement claim because it lacks any plausible facts to demonstrate Telit UK's knowledge that the alleged third party's acts constitute direct infringement. (D.I. 28 at 7-8). Plaintiff asserts in its complaint that "[u]pon

information and belief, Telit has performed the acts that constitute inducement of infringement with the knowledge or willful blindness that the acts induced thereby would constitute direct infringement by its customers." (D.I. 1 at 5). This assertion based on no factual allegations cannot pass muster under the plausibility standards. *Iqbal,* 556 U.S. at 687; *see also Bascom Research LLC v. Facebook, Inc.,* 2013 WL 968210, at *4 (N.D. Cal. 2013) (holding that "conclusory allegations regarding knowledge are insufficient" in induced claims). Consequently, Plaintiff insufficiently pleads the requisite knowledge element of the induced infringement claim.

### b. Specific intent to infringe

In addition to the knowledge of a third party's direct infringement, Plaintiff also has to demonstrate specific intent to infringe. The Supreme Court has held that "[e]vidence of 'active steps ... taken to encourage direct infringement, ' such as advertising an infringing use or instructing how to engage in an infringing use, shows an affirmative intent that the product be used to infringe." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.,* 545 U.S. 913, 936 (2005). This Court has also held that "[allegations of the marketing activities of the Defendants do not, on their own, demonstrate that Defendants knew such activities were infringing or that Defendants possessed the specific intent to encourage another's infringement." *MONEC Holding AG v. Motorola Mobility, Inc.,* 897 F.Supp.2d 225, 234 (D. Del. 2012); *see also Neology Inc. v. Kapsch Trafficcom IVHS, Inc.,* 2014 WL 467316 at *6 (D. Del. 2014) (recognizing that "assertions that a defendant provided unspecified 'training and instructions to its customers concerning the use of the Accused Products' are not specific enough ... and simply begs the question: 'Provided 'training and instructions' as to what?'").

In the pending case, Telit UK argues that Plaintiffs general allegations of Defendants "publishing manuals and promotional literature" and "offering support and technical assistance" similarly fail to show an affirmative intent to induce infringement. (D.I. 28 at 11). The Court disagrees. Plaintiff at bar alleges: "Telit has actively induced direct infringement by, *inter alia,* ... publishing manuals and promotional literature describing and instructing the configuration and operation of those products in an infringing manner by its customers, and by offering support and technical assistance to its customers that encourage use of those products in ways that directly infringe one or more claims of the [patent in suit]." (D.I. 1 at 5). In short, Plaintiff alleges that Defendants provided instructions to their customers on use of those products in a manner that would directly infringe the patent. This allegation is sufficient to plead Defendants' specific intent. *See Telecomm Innovations, LLC v. RICOH Company, Ltd.,* 966 F.Supp.2d 390, 395 (D. Del. 2013) (denying a motion to dismiss, since the complaint alleged that the defendant induced infringement by "providing those customers and others with technical support and services, as well as detailed explanations, instructions and information as to arrangements, applications and uses of the [a]ccused [instrumentalities that promote and demonstrate how to use the [a]ccused [instrumentalities in a manner that would infringe the [patent]").

Even if the specific intent requirement were satisfied by alleging acts that induce direct infringement, the complaint suffers from yet another defect: fusing the two Defendants as one is also problematic for Plaintiffs indirect infringement claims against Telit UK. With regard to inducement claims, this Court has held that "[w]hen articulating certain of its inducement allegations, " the plaintiff has to identify "which particular Defendant or Defendants are said to have disseminated the training or instructional materials at issue." *Neology,* 2014 WL 467316 at *7 (explaining that "treating these Defendants as one big group for purpose of articulating how each has encouraged the induced infringement at issue says nothing plausible as to what any particular one of them might have done"). Referring to both Defendants under one single term, Plaintiff has not pled a plausible inducement claim against Telit UK as a result.

### C. Contributory Infringement Claim

To state a contributory infringement claim under 35 U.S.C. § 271(c), a plaintiff has to allege that a defendant "offers to sell or sells within the United States or imports into the United States a component of a patented machine ...." Telit UK argues that Plaintiff has not plausibly alleged Telit UK as a contributory infringer because Plaintiff offers no evidence to demonstrate that Telit UK offers to sell, sells or imports any products or components in or to the United States. (D.I. 28 at 12). Plaintiff, once

again, bases its contributory infringement claim against Telit U.S. and Telit UK under the umbrella term "Telit" on Telit UK's "public representation that, *inter alia,* Telit UK operates as a single global company with offices and facilities under its direction and control in the United States." (D.I. 40 at 12). Plaintiffs argument is similar to its reasoning behind lumping Telit U.S. and Telit UK together in the direct and induced infringement claims. The contributory claim thus also is insufficiently stated and must be dismissed.[5]

## V. Conclusion

For the aforementioned reasons, Defendant Telit UK's motion to dismiss for failure to state a claim (D.I. 27) is granted without prejudice. A separate order, consistent with this Memorandum Opinion, will be entered.

---------

Notes:

[1] Other than in paragraphs 1-3 of the complaint, Plaintiff refers to the two Defendants as "Telit, " as if both Defendants were one entity.

[2] The *Mobil Oil Corp* case did not address Form 18 or Rule 8 pleading standards, but was on a summary judgment motion under Rule 56(c), *see* 718 F.Supp. at 263-65, which makes it irrelevant to the pleading stage of the pending case.

[3] "During discovery in the 2012 case, [Telit UK] provided sworn interrogatory responses that it has not' "made, used, offered for sale or sold within the United States, and/or imported into the United States" any of the products at issue, ' which M2M used in a Rule 30(b)(6) deposition." (internal citation omitted) (D.I. 28 at 3).

[4] One exception is that a "document integral to or explicitly relied upon in the complaint" could be considered "without converting the motion to dismiss into one for summary judgment." 770 F.3d at 249 (citation omitted). Since Plaintiff did not base its complaint on discovery from the 12-033-RGA action, evidence from that case should not be used in deciding a motion to dismiss, even though the parties agreed to use the discovery taken in the 2012 case in this case. (D.I. 47 at 6).

[5] The contributory infringement claim is also factually too conclusory to state a claim. *(See* D.I. 1 at 5, 115).

---------

EXHIBIT 11

Abselet v. Hudson Labor Solutions, Inc., 020420 FED9, 18-56027

**HOWARD L. ABSELET, an individual and derivatively on behalf of ROOSEVELT LOFTS, INC., Plaintiff - Appellee,**

**v.**

**HUDSON LABOR SOLUTIONS, INC., a California corporation; et al., Defendants - Appellants.**

**No. 18-56027**

**United States Court of Appeals, Ninth Circuit**

**February 4, 2020**

NOT FOR PUBLICATION

Argued and Submitted January 9, 2020 Pasadena, California

Appeal from the United States District Court No. 2:16-cv-06263-JFW-JEM for the Central District of California John F. Walter, District Judge, Presiding

Before: WATFORD, BENNETT, and LEE, Circuit Judges.

**MEMORANDUM** [*]

Hudson Labor Solutions, Inc. and its owners, brothers Raymond and Rodney Yashouafar ("Raymond Y." and "Rodney Y."), appeal the district court's grant of summary judgment in favor of Howard Abselet on his claim for intentional interference with contractual relations. We have jurisdiction under 28 U.S.C. § 1291, and we review the district court's ruling *de novo*. *See Bravo v. City of Santa Maria*, 665 F.3d 1076, 1083 (9th Cir. 2011). We reverse and remand.

In 2008, Abselet loaned six million dollars from a medical malpractice settlement to a group that included Solyman Yashouafar and Massoud Yashouafar (together, the "Judgment Debtors"), who are the father and uncle, respectively, of Raymond Y. and Rodney Y. When the Judgment Debtors defaulted on the loan, Abselet sued for recovery of his principal. The February 10, 2012 settlement of that lawsuit is the contract at issue here. The Judgment Debtors agreed to repay Abselet by, among other things, conveying their interest in up to $1.125 million from a bankruptcy class action reserve.

Abselet subsequently executed writs of attachment against the Judgment Debtors and undertook various efforts to recover the amounts owed. Unfortunately, these efforts have been repeatedly frustrated by fraudulent conveyances of assets from the Judgment Debtors to family members.

The intentional interference claim here involves a transaction that Abselet alleges was fraudulently made to circumvent the $1.125 million owed from the class action reserve under the settlement agreement. In March 2012, the Judgment Debtors authorized a $300, 000 payment to Hudson - an apparent shell company owned by Raymond Y. and Rodney Y. - from the class action reserve. Over the next two years, Hudson paid $267, 000 in "wages" to the Judgment Debtors and their spouses, which appears to be an improper pass-through of most of the $300, 000 payment.

1. Despite strong evidence of egregious misconduct by the appellants and the Judgment Debtors, we are unable to affirm the district court's summary judgment ruling because, viewing the record in a light most favorable to the appellants, there is a genuine issue of material fact as to whether Abselet's intentional interference claim was timely filed. *See Bravo*, 665 F.3d at 1083. An intentional interference claim typically accrues for statute of limitations purposes "at the date of the wrongful act," or no later "than the actual breach of the contract." *See Trembath v. Digardi*, 118 Cal.Rptr. 124, 125 (Cal.Ct.App.

1974). Here, the allegedly induced breach occurred on or about March 20, 2012, while this action was not filed until August 22, 2016 - after either the two or three-year limitations period that applies to intentional interference claims. *See id.* (normal limitations period is two years); *Romano v. Wilbur Ellis & Co.*, 186 P.2d 1012, 1015 (Cal.Ct.App. 1947) (three-year limitations period where fraudulent inducement is alleged).

The delayed discovery rule can extend a statute of limitations, such that it "begins to run when the plaintiff has reason to suspect an injury and some wrongful cause, unless the plaintiff pleads and proves that a reasonable investigation at that time would not have revealed a factual basis for that particular cause of action." *Fox v. Ethicon Endo-Surgery, Inc.*, 110 P.3d 914, 917 (Cal. 2005). The district court relied on this rule to find that the earliest Abselet could have discovered the factual predicate for his claim was during the August 27, 2015 deposition of Raymond Y. in a different case. But on March 29, 2013, Abselet's attorney sent a demand letter that accused the $300,000 payment to Hudson of being an improper distribution to the Judgment Debtors "through a variety of entities and third-party obligors." Because we must accord all inferences in the appellants' favor at this stage, we conclude that the letter raises a genuine issue of material fact as to whether, under the delayed discovery rule, the March 29, 2013 letter triggered the statute of limitations for the intentional interference claim.

Abselet alternatively argues that the district court's ruling should be affirmed on the basis of equitable tolling. A statute of limitations may be tolled "when an injured person has several legal remedies and, reasonably and in good faith, pursues one." *McDonald v. Antelope Valley Cmty. Coll. Dist.*, 194 P.3d 1026, 1031 (Cal. 2008). Three elements are required: (i) timely notice; (ii) lack of prejudice to the defendant; and (iii) reasonable and good faith conduct by the plaintiff. *See id.* at 1033.

While Abselet identifies two events that he contends tolled the statute of limitations, genuine issues of material fact exist as to whether either event provided the appellants with timely notice of a potential intentional interference claim. First, Abselet filed a July 9, 2013 bankruptcy motion challenging certain distributions from the class action reserve. The motion, however, did not discuss the $300,000 payment to Hudson, but instead identified seven other distributions it deemed improper. And second, Raymond Y. filed a third-party motion in a different action related to the transfer of stock in two companies. But neither the third-party motion nor the action in which it was brought had any connection to the $300,000 payment. Accordingly, there remain genuine disputes of material fact, and so we are unable to hold that Abselet is entitled to equitable tolling as a matter of law.

2. Intentional interference with contractual relations requires: (i) a valid contract; (ii) defendant's knowledge of the contract; (iii) intentional acts designed to induce a breach of the contract; (iv) actual breach; and (v) damages. *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 791 P.2d 587, 589-90 (Cal. 1990). The record reflects genuine issues of material fact as to whether the settlement agreement had taken effect when Hudson received the $300,000 payment, whether the appellants knew about the settlement agreement at that time, and whether the appellants induced a breach of the settlement agreement. The district court therefore also erred in granting summary judgment with respect to these elements of the intentional interference claim.

**REVERSED AND REMANDED.**

---------

Notes:

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

---------