IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | C.A. No. 20-613 (LPS) |
| v. | ) | |
| | ) | |
| ROSS INTELLIGENCE INC., | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFFS' OPENING BRIEF IN SUPPORT OF THEIR
MOTION TO DISMISS DEFENDANT'S ANTITRUST COUNTERCLAIMS**

OF COUNSEL:

Dale M. Cendali
Joshua L. Simmons
Eric A. Loverro
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
(212) 446-4800

Daniel E. Laytin
Christa C. Cottrell
Cameron D. Ginder
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

March 25, 2021

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com

*Attorneys for Plaintiffs Thomson Reuters Enterprise Centre GmbH and West Publishing Corporation*

TABLE OF CONTENTS

Page

I.     NATURE AND STAGE OF PROCEEDINGS ................................................... 1

II.    INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

III.   STATEMENT OF ALLEGED FACTS............................................................. 4

IV.    ARGUMENT ......................................................................................... 7

       A.    ROSS's § 2 Claim Should Be Dismissed Because the Sherman Act Does
             Not Require a Firm (Even an Alleged Monopolist) to Contract with
             Competitors............................................................................... 8

             1.    ROSS's Refusal-to-Deal Claim Fails Because Plaintiffs Have No
                   Obligation to Contract with Anyone, Let Alone a Competitor like
                   ROSS............................................................................... 9

             2.    Any Essential Facility Argument Fails Because ROSS Alleges that
                   Plaintiffs' "Public Law Database" Is Not Essential to Compete. ............. 11

             3.    ROSS's Tying Allegations Fail Because ROSS Has Not Plausibly
                   Identified Two Separate Products or Product Markets. ........................... 13

       B.    ROSS's § 1 Claim Should Be Dismissed for Failure to Plead a
             Conspiracy. ............................................................................... 15

       C.    ROSS's State Law Claims Should Be Dismissed for Failure to State a
             Claim........................................................................................ 16

             1.    ROSS's California Unfair Competition Claim Fails for the Same
                   Reasons as Its Federal Antitrust Claims. .................................... 17

             2.    ROSS Has Failed to Plead the Necessary Elements of a Delaware
                   Unfair Competition Claim. .................................................... 18

V.     CONCLUSION............................................................................... 19

TABLE OF AUTHORITIES

Page(s)

**Cases**

*Accenture Glob. Servs. GmBH v. Guidewire Software Inc.*,
   581 F. Supp. 2d 654 (D. Del. 2008).........................................................................18

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).....................................................................................................7

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*,
   472 U.S. 585 (1985).........................................................................................9, 10, 11

*In re Baby Food Antitrust Litig.*,
   166 F.3d 112 (3d Cir. 1999).......................................................................................15

*Bejou v. Bank of Am., N.A.*,
   2013 WL 1759126 (E.D. Cal. Apr. 24, 2013).......................................................17, 18

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).....................................................................................................7

*Blix Inc. v. Apple, Inc.*,
   2020 WL 7027494 (D. Del. Nov. 30, 2020) ...............................................................10

*Blue Cross & Blue Shield United of Wis. v. Marshfield Clinic*,
   65 F.3d 1406 (7th Cir. 1995) ......................................................................................13

*Broadcom Corp. v. Qualcomm Inc.*,
   501 F.3d 297 (3d Cir. 2007)......................................................................................8, 9

*Chavez v. Whirlpool Corp.*,
   113 Cal. Rptr. 2d 175 (Cal. Ct. App. 2001) ...............................................................17

*Copperweld Corp. v. Indep. Tube Corp.*,
   467 U.S. 752 (1984)....................................................................................................16

*Doug Grant, Inc. v. Greate Bay Casino Corp.*,
   232 F.3d 173 (3d Cir. 2000)........................................................................................14

*FMC Corp. v. Summit Agro USA, LLC*,
   2014 WL 6627727 (D. Del. Nov. 14, 2014) ...............................................................19

*Garshman v. Universal Res. Holding Inc.*,
   824 F.2d 223 (3d Cir. 1987)........................................................................................16

*Gonzalez-Maldonado v. MMM Healthcare, Inc.*,
    693 F.3d 244 (1st Cir. 2012) ....................................................................16

*InterVest, Inc. v. Bloomberg, L.P.*,
    340 F.3d 144 (3d Cir. 2003) .....................................................................15

*JamSports & Ent., LLC v. Paradama Prods., Inc.*,
    336 F. Supp. 2d 824 (N.D. Ill. 2004) .......................................................13

*Kaufman v. Time Warner*,
    836 F.3d 137 (2d Cir. 2016) .....................................................................13

*Kenney v. Am. Bd. of Internal Med.*,
    412 F. Supp. 3d 530 (E.D. Pa. 2019) .......................................................13

*Kerwin v. Parx Casino*,
    802 F. App'x 723 (3d Cir. 2020) .........................................................11, 12

*Kerwin v. Parx Casino*,
    2019 WL 1098949 (E.D. Pa. Mar. 8, 2019) ........................................11, 12

*Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*,
    847 F.3d 1221 (10th Cir. 2017) ...............................................................16

*LiveUniverse, Inc. v. MySpace, Inc.*,
    304 F. App'x 554 (9th Cir. 2008) ...........................................................3, 17

*In re NAHC, Inc. Sec. Litig.*,
    306 F.3d 1314 (3d Cir. 2002) ...................................................................16

*Neitzke v. Williams*,
    490 U.S. 319 (1989) ...................................................................................7

*Olympia Equip. Leasing Co. v. W. Union Tel. Co.*,
    797 F.2d 370 (7th Cir. 1986) ....................................................................15

*Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*,
    555 U.S. 438 (2009) ................................................................................8, 9

*Preston Hollow Cap. LLC v. Nuveen LLC*,
    2019 WL 3801471 (Del. Ch. Aug. 13, 2019) ...........................................18

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*,
    124 F.3d 430 (3d Cir. 1997) .....................................................................13

*S&S Worldwide, Inc. v. Wells Fargo Bank*,
    2020 WL 7714534 (N.D. Cal. Dec. 29, 2020) .........................................18

*Satellite Fin. Planning Corp. v. First Nat'l Bank of Wilmington*,
 643 F. Supp. 449 (D. Del. 1986).........................................................................................2, 16

*SEI Glob. Servs., Inc. v. SS&C Advent*,
 2020 WL 6262187 (E.D. Pa. Oct. 23, 2020)..............................................................10, 11, 12

*Siegel Transfer, Inc. v. Carrier Exp., Inc.*,
 54 F.3d 1125 (3d Cir. 1995).............................................................................................3, 16

*Simon & Simon, PC v. Align Tech., Inc.*,
 2020 WL 1975139 (D. Del. Apr. 24, 2020)..............................................................7, 10, 11

*TreeFrog Devs., Inc. v. Seidio, Inc.*,
 2013 WL 4028096 (S.D. Cal. Aug. 6, 2013) ..................................................................18

*United States v. Colgate & Co.*,
 250 U.S. 300 (1919)..................................................................................................2, 9, 17

*Verizon Commc'ns Inc. v. Law Offs. of Curtis V. Trinko, LLP*,
 540 U.S. 398 (2004)..............................................................................................9, 10, 11, 15

*You Map, Inc. v. Snap Inc.*,
 2021 WL 106498 (D. Del. Jan. 12, 2021)........................................................................19

**Statutes**

15 U.S.C § 1 ............................................................................................................ *passim*

15 U.S.C § 2 ............................................................................................................ *passim*

17 U.S.C. § 301 ...............................................................................................................18

Cal. Bus. & Prof. Code § 17200 ....................................................................................17

## I.      NATURE AND STAGE OF PROCEEDINGS

Plaintiffs filed a complaint against ROSS for copyright infringement and tortious interfer-ence with contract.  D.I. 1.  ROSS filed a motion to dismiss.  D.I. 12.  Briefing on ROSS's motion is complete.  *See* D.I. 12; D.I. 15; D.I. 17.  ROSS withdrew its motion to dismiss the tortious interference claim.  D.I. 22.  ROSS then filed an amended answer and amended its counterclaims to assert antitrust and unfair competition counterclaims (the "Counterclaims").  D.I. 24.  This is Plaintiffs' motion to dismiss the Counterclaims.

## II.     INTRODUCTION AND SUMMARY OF ARGUMENT

This is not an antitrust case.  As ROSS alleges in its Counterclaims, Westlaw is the indus-try's leading legal research service.  ROSS wanted to compete with Westlaw but chose not to do so through innovation.  Instead, it decided to build its competing service by paying LegalEase to illegally download mass quantities of Plaintiffs' proprietary content.  ROSS does not deny that it hired LegalEase or that it used Plaintiffs' proprietary content obtained from LegalEase to compete with Plaintiffs.

Now, having been caught and sued for copyright infringement and tortious interference with contract, ROSS contends—for the first time—that Westlaw is an unlawful monopoly in the legal-search-platform market.  ROSS's Counterclaims suffer from a fundamental failing:  its own allegations, accepted as true for the purposes of this motion, do not state antitrust or unfair com-petition claims.  The reason is simple:  it is black-letter law that a company is not required to do business with a would-be competitor.  Yet ROSS's Counterclaims amount to the complaint that, when competing, it did not want to build its own "public law database" from scratch and Plain-tiffs would not license Westlaw to ROSS.  Plaintiffs, however, do not license Westlaw to com-petitors to use in creating competing products.  So, ignoring the proprietary content that it copied to operate its platform, ROSS alleges that it acquired the legal decisions that it provides to its users

from other sources.  After initial success selling its legal research service, ROSS ultimately failed to gain traction with consumers.  As ROSS now concedes, lawyers and law firms wanted to stick with what they knew and trusted, rather than switch to ROSS.

Despite ROSS's insistence that the antitrust laws require Plaintiffs to license Westlaw to competitors, whether they want to or not, that is not the law.  And based on ROSS's own factual allegations, each of its Counterclaims fail.  ***First***, ROSS claims Plaintiffs violated § 2 of the Sherman Act by refusing to license ROSS their "public law database."  But nothing in the antitrust laws requires Plaintiffs to contract with ROSS, a competitor.  Plaintiffs own Westlaw.  ROSS may want to access it.  ROSS may be willing to pay to access it.  ROSS may believe it would be a better competitor with access to it.  But antitrust law preserves Plaintiffs' ability to decide for themselves whether to license Westlaw to ROSS.  In fact, the Supreme Court made clear in its 1919 *Colgate* decision that the Sherman Act "does not restrict the long recognized right" of a company "freely to exercise [its] own independent discretion as to parties with whom [it] will deal." *United States v. Colgate & Co.*, 250 U.S. 300, 307 (1919).  Since then, courts have consistently recognized a company's unilateral business decisions regarding with whom and on what terms to do business.  ROSS alleges nothing, and can allege nothing, that dictates a different result here.  ROSS's allegations that West has built a great product and that West's customers want its product simply do not provide any basis under the antitrust laws to require Plaintiffs to contract with ROSS.  Thus, ROSS's § 2 claim fails.

***Second***, ROSS claims that Plaintiffs violated § 1 of the Sherman Act.  Section 1 requires a conspiracy among two or more entities.  Here, ROSS alleges a supposed conspiracy between Thomson Reuters Enterprise Centre GmBH and West Publishing Corporation—wholly owned subsidiaries of the same parent company.  But the Third Circuit, applying long-standing Supreme

Court precedent, has held that "two subsidiaries wholly owned by the same parent are legally incapable of conspiring with one another for purposes of § 1." *Siegel Transfer, Inc. v. Carrier Exp., Inc.*, 54 F.3d 1125, 1133 (3d Cir. 1995).  Thus, ROSS's § 1 claim fails.

*Third*, ROSS's California unfair competition claim based on antitrust violations should be dismissed because it rises and falls with ROSS's Sherman Act claim, and "a finding that the conduct is not an antitrust violation precludes a finding of unfair competition." *LiveUniverse, Inc. v. MySpace, Inc.*, 304 F. App'x 554, 557 (9th Cir. 2008).  ROSS's California unfair competition claim based on a "violation of the Copyright Act" similarly should be dismissed because it does not allege that Plaintiffs violated the Copyright Act and, if it did, such a claim would be preempted by the Copyright Act.  Thus, ROSS's California unfair competition claim fails.

*Fourth*, ROSS's Delaware common law unfair competition claim cannot survive a motion to dismiss either.  That claim, a variation of a tortious interference claim, fails because ROSS has not identified a specific party who was prepared to enter into a business relationship with ROSS or alleged that Thomson Reuters or West interfered with any potential business relationship.  Thus, ROSS's Delaware unfair competition claim fails.

At bottom, ROSS attempts to defend its theft by trying to turn the table on Plaintiffs.  But even accepting its allegations as true, ROSS has not stated an antitrust or unfair competition claim.  Nor could it.  Plaintiffs can choose with whom to do business.  ROSS should not be allowed to dramatically expand the scope and nature of this straightforward lawsuit by injecting principles of antitrust law into a case where they do not belong.  Plaintiffs respectfully request that this Court dismiss ROSS's Counterclaims in their entirety and focus this case on what it is really about:  ROSS's decision to steal rather than innovate.

3

III.     STATEMENT OF ALLEGED FACTS

*Westlaw.*   Westlaw is the premier legal research service.  D.I. 24 ¶¶ 2, 5.  That success is, as ROSS repeatedly acknowledges, no historical accident.  West has worked "since the 19th century" to "buil[d] up its comprehensive collection of public law"—a collection that "includes at least every federal and state judicial opinion, statute, and regulation in United States history."  *Id.* ¶ 39.  Because West has devoted so many resources to developing its database, "consumers can feel confident when looking for cases in Westlaw's digital collection."  *Id.* ¶ 44.  "Not only do users know that Westlaw's digital collection includes all the potentially relevant public law, but they also have (in many cases) years and years of experience knowing that Westlaw's collection of public law is complete and reliable."  *Id.*  "No other available public law database product is as comprehensive" or "as reliable" as Westlaw's.  *Id.* ¶¶ 97–98.  Consumers know that West has built "its public law collection for over one hundred years" and that if they "pursue a legal research question for long enough," "they eventually can find the right case."  *Id.* ¶ 99.  "This level of reassurance is also extraordinarily powerful, and only Westlaw can offer it."  *Id.* ¶ 100.

*Westlaw Content.*   ROSS alleges that a "public law database" alone is useless to consumers:  if "the database is not connected to a legal search tool, then it holds no value."  *Id.* ¶ 78.  There is simply "too much public law to efficiently and effectively identify the relevant material without a search functionality."  *Id.*  Lawyers thus "need tools to search through the enormous amount of public law."  *Id.* ¶ 45.  So Plaintiffs, like other legal search providers, incorporated technology that allows users to search for relevant public law.  *Id.*

Westlaw is not merely a trove of cases, statutes, and regulations customers can search with keyword, natural language, and Boolean search inquiries.  West has devoted substantial resources to enhancing Westlaw to ensure customers can easily identify key cases.  The backbone of West's search tool is its West Key Number System (WKNS).  *Id.* ¶ 46.  The WKNS organizes cases into

4

numerous legal topics and then subclassifies them into key numbers based on legal issues and points of law. In addition to the WKNS, West uses dedicated attorney editors to carefully review decisions and create original West Headnotes that describe and summarize key concepts for each case in West's database. West's attorney editors then integrate the West Headnotes into the WKNS. These editors continuously review existing West Headnotes and the WKNS to ensure accuracy and consistency with the hundreds of new cases added every day. This creative and original content allows thousands of attorneys to research public law efficiently.

***ROSS Intelligence.*** ROSS hoped to compete with Westlaw by leveraging artificial intelligence to offer customers what it contends is a superior legal research tool. According to ROSS, it "developed a powerful natural language search engine based on artificial intelligence" that would allow customers to search public law more quickly and efficiently than possible using platforms, including Westlaw. *Id.* ¶ 24.

ROSS needed a public law database to use with its search tool; otherwise, all it had was a search tool with no content. As ROSS itself pleads, West does not separately license its "public law database" to anyone—not to ROSS, not to any client. West also, of course, does not allow its licensees to copy the database or otherwise support one of Westlaw's competitors. *Id.* ¶¶ 34, 69. So "ROSS knew that it could not obtain access to Westlaw's database." *Id.* ¶ 69.

Without access to West's database, ROSS alleges that it "built its public law database through other sources." *Id.* ¶ 71. ROSS started narrowly, purchasing bankruptcy-related caselaw from companies called Casemaker and Fastcase before expanding to intellectual property and labor and employment. *Id.* ROSS's strategy proved successful, "secur[ing] a license with a large national labor/employment firm." *Id.* ROSS then "made a large investment to partner with Fastcase

and fill the gaps in its digital collection." *Id.* ¶ 72.  Through this process, ROSS was able to "build an enthusiastic user base in 2019 and become a market competitor." *Id.* ¶ 112.

After an initial burst of publicity and success, ROSS hit a wall.  Despite ROSS's work to build a legal search platform, customers proved skeptical "that a substitute database might not be sufficiently comprehensive." *Id.* ¶¶ 72–73.  These customers "had confidence that Westlaw's database would have the materials they needed through years of using the database" and could not rely on a "new digital public law collection, pulled together by smaller and unknown companies." *Id.* ¶ 75.  So ROSS resorted to theft.

**The Theft.**  ROSS contracted with a company called LegalEase to help train its search tool. *Id.* ¶ 30.  LegalEase, a legal research and writing support services company, had a Westlaw license. For years, LegalEase appeared to use Westlaw to conduct legal research for customers.  But in 2017, LegalEase's use skyrocketed.  When West investigated the irregularity, it discovered that LegalEase's Westlaw activity suggested LegalEase had used a bot to systematically work through the WKNS to download and store mass quantities of proprietary content.  LegalEase reproduced and distributed the content to ROSS; ROSS used the content to build its competing service. *Id.* ¶ 33.  By copying the content, ROSS was able to drastically speed up the development of its product while simultaneously avoiding the immense investment required to legitimately build a competing service.

West terminated LegalEase's Westlaw license and sued it in federal court in Minnesota. *Id.* ¶ 35.  The parties settled. *Id.*  Plaintiffs then sued ROSS in this case for copyright infringement and tortious interference with West's license agreement with LegalEase. *Id.* ¶ 33.

**Antitrust Allegations.**  ROSS answered and asserted counterclaims under § 1 and § 2 of the Sherman Act and California and Delaware unfair competition law.  D.I. 24.  Having failed to

6

compete and gotten caught stealing Plaintiffs' content, ROSS now contends that Westlaw is an unlawful monopoly in the legal-search-platform market. *Id.* ¶ 82.  ROSS claims Plaintiffs engage in several purportedly anticompetitive practices, including (1) refusing to license their proprietary content separately from the search service, *id.* ¶¶ 102, 104–05; (2) prohibiting licensees from downloading or transferring Plaintiffs' content to competitors, *id.* ¶¶ 103, 106–08; and (3) refusing to license Plaintiffs' legal search platform to ROSS, *id.* ¶ 69.  But at bottom, these allegations rest on one core complaint:  "rivals are not allowed to license Westlaw" or "contract with Westlaw platform licensees ... to develop or test their own products.  Westlaw denies rivals any path for access even if those rivals are willing to pay Westlaw's commercial rates." *Id.* ¶ 108.

## IV.   ARGUMENT

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  Although this Court must accept all well-pleaded allegations as true, dismissal is appropriate if "as a matter of law it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989) (citation omitted).  "So, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007) (citation and alternation omitted).  "Antitrust claims in particular must be reviewed carefully at the pleading stage because false condemnation of competitive conduct threatens to chill the very conduct the antitrust laws are designed to protect." *Simon & Simon, PC v. Align Tech., Inc.*, 2020 WL 1975139, at *3 (D. Del. Apr. 24, 2020) (citation omitted).

7

A. **ROSS's § 2 Claim Should Be Dismissed Because the Sherman Act Does Not Require a Firm (Even an Alleged Monopolist) to Contract with Competitors.**

Section 2 of the Sherman Act makes it unlawful to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States." 15 U.S.C. § 2. Despite that sweeping language, "[s]imply possessing monopoly power and charging monopoly prices does not violate § 2." *Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438, 447–48 (2009). Rather, to make out a § 2 claim, a plaintiff must establish the defendant willfully acquired and maintained its monopoly power through "exclusionary conduct." *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 308, 311 (3d Cir. 2007). Exclusionary conduct is "distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *Id.* at 307.

ROSS devotes 15 paragraphs of its counterclaim to supposed "exclusionary conduct." *See* D.I. 24 ¶¶ 101–15. But its allegations boil down to the same argument: that "Westlaw denies rivals any path for access" to its "public law database" "to develop or test their own products." *Id.* ¶ 108. Specifically, ROSS alleges that Plaintiffs engage in several exclusionary practices that all amount to not selling or licensing their "public law database" to ROSS, including (i) prohibiting licensees from sharing Plaintiffs' database with non-licensees like ROSS, (ii) refusing to sell their search platform and database separately to ROSS, and (iii) refusing to license their Westlaw platform to competitors like ROSS. *See id.* For instance, ROSS alleges that West "uses restrictive licensing conditions" that "expressly prohibit[] licensees from using the platform to create a competitive product." *Id.* ¶ 107. ROSS further contends that "Westlaw [sic] has never provided consumers with an option to only license the public law database, or to only license the legal search tools, and does not plan to ever provide such an option." *Id.* ¶ 104. No matter how ROSS tries to

8

spin it, the complaint is the same:  ROSS wants to buy West's "public law database" to create a product to compete with Westlaw.

Based on this factual premise, ROSS's complaint hints at three theories of § 2 liability:  (1) refusal to deal, (2) essential facility, and (3) tying.  *E.g.*, *id.* ¶¶ 69, 75, 102.  Each fails.

### 1.   ROSS's Refusal-to-Deal Claim Fails Because Plaintiffs Have No Obligation to Contract with Anyone, Let Alone a Competitor like ROSS.

ROSS argues that Plaintiffs have engaged in unlawful exclusionary conduct by refusing to license their "public law database" to competitors.  D.I. ¶¶ 69, 108.  As an initial matter, ROSS cannot prove a refusal-to-deal claim because the Supreme Court has long held that the Sherman Act "does not restrict the long recognized right" of a company "freely to exercise [its] own independent discretion as to parties with whom [it] will deal." *Colgate*, 250 U.S. at 307.  Since *Colgate*, courts have consistently held that even a monopolist has *no obligation* to cooperate or contract with its rivals.  *See linkLine*, 555 U.S. at 448 ("As a general rule, businesses are free to choose the parties with whom they will deal, as well as the prices, terms, and conditions of that dealing."); *Verizon Commc'ns Inc. v. Law Offs. of Curtis V. Trinko, LLP*, 540 U.S. 398, 407–08 (2004) (quoting *Colgate*).  As the Third Circuit has recognized, it is the essence of competition that a "firm is generally under no obligation to cooperate with its rivals." *Broadcom*, 501 F.3d at 316.

There is one narrow exception to this longstanding rule—when a firm can show a historical course of dealing.  *See Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585 (1985).  In *Aspen Skiing*, competing ski companies operated skiing facilities in Aspen.  Plaintiff operated one resort; defendant operated three.  For several years the companies sold a joint ticket book, which allowed the skier to use tickets at any of the four resorts.  *Id.* at 589–90.  After several years, defendant refused to continue participating unless plaintiff agreed to accept a reduced profit split.  When plaintiff refused, defendant terminated the arrangement.  *Id.* at 592–93.  Plaintiff tried selling

9

its own ticket book that included vouchers covering the face value of a ticket to defendant's mountains, but defendant refused to accept them.  *Id.* at 593–94.

Based on those facts, the Court upheld a § 2 claim.  But the Court has since made clear that the "limited exception recognized in *Aspen Skiing*" does not apply unless the defendant unilaterally terminated a voluntary and profitable historical course of dealing under circumstances suggesting a willingness to forsake short-term profits to achieve an anticompetitive end.  *Trinko*, 540 U.S. at 409 ("The complaint does not allege that Verizon voluntarily engaged in a course of dealing with its rivals ...."); *see also Simon & Simon*, 2020 WL 1975139, at *5 ("To proceed under the limited duty to deal exception created by *Aspen*, not only must the plaintiff show a pre-existing business relationship with the defendant, the circumstances surrounding the termination of that relationship must suggest a willingness to forsake short-term profits to achieve an anticompetitive end.") (citation omitted); *SEI Glob. Servs., Inc. v. SS&C Advent*, 2020 WL 6262187, at *8 (E.D. Pa. Oct. 23, 2020) (same).

ROSS has not alleged any facts to fit into this "historical dealing" exception.  Instead of alleging a historical business relationship, ROSS alleges that no such course of dealing has ever existed between the parties.  ROSS asserts that "Westlaw [sic] has never offered to license its database separate from its search tools" and has "denied ROSS access to the platform as well." D.I. 24 ¶ 69.  And ROSS also asserts that West's conduct was not irrational but for an anticompetitive effect:  ROSS contends that West charges a premium for its product to maximize profits.  *Id.* ¶¶ 87–88.  ROSS itself has made clear that this is not an *Aspen Skiing* case.  Accordingly, any refusal to deal claim fails as a matter of law.  *See, e.g.*, *Blix Inc. v. Apple, Inc.*, 2020 WL 7027494, at *7–8 (D. Del. Nov. 30, 2020) (granting motion to dismiss refusal-to-deal claim where plaintiff failed to plead a "long-term business relationship" or "any facts suggesting Apple's willingness to

forsake short-term profits to achieve an anticompetitive end") (citation omitted); *see also Simon &*
*Simon*, 2020 WL 1975139, at *6–7 (granting motion to dismiss refusal-to-deal claim "[b]ecause
companies are generally free to choose with whom they deal" and plaintiff's "allegations lack the
essential feature of an anticompetitive refusal to deal ... as required by *Aspen*"); *SEI Glob.*, 2020
WL 6262187, at *8–9 (granting motion to dismiss refusal-to-deal claim because plaintiff "fail[ed]
to allege facts resembling those of *Aspen Skiing* in any of the specifics identified by the Supreme
Court in *Trinko* as significant").

> ## 2.   Any Essential Facility Argument Fails Because ROSS Alleges that Plaintiffs' "Public Law Database" Is Not Essential to Compete.

ROSS next hints at an argument that Plaintiffs' "public law database" is an "essential fa-
cility," such that ROSS is entitled to access it to compete with Plaintiffs.  *See* D.I. 24 ¶¶ 71–76.
Essential, however, does not mean "best," "most economical," or "preferable."  *Kerwin v. Parx*
*Casino*, 2019 WL 1098949, at *7 (E.D. Pa. Mar. 8, 2019), *aff'd* 802 F. App'x 723 (3d Cir. 2020).
Rather, a facility is essential *only* if it is necessary "to competitive viability, *i.e.*, competitors cannot
effectively compete in the relevant market without it."  *SEI Glob.*, 2020 WL 6262187, at *9 (cita-
tion omitted).  When a facility can be reasonably replicated, "the doctrine serves no purpose."
*Trinko*, 540 U.S. at 411; *see also Kerwin*, 802 F. App'x at 727 (stating that a "facility is essential
only if it is otherwise unavailable and cannot be reasonably or practically replicated") (citation
omitted).

Here, ROSS has pleaded itself out of an essential-facilities claim by alleging that (1) others,
including ROSS, have competed and can compete without Westlaw; and (2) customers' preference
for Plaintiffs' database does not make it essential.

According to ROSS, it "built its public law database through other sources," including
making "a large investment to partner with Fastcase and fill the gaps in its digital collection" of

11

public law. *Id.* ¶¶ 71–72; *see also id.* ¶ 28 (alleging that ROSS "looked for alternatives" to West's database and "eventually obtained a degree of access to the public law through small companies called Fastcase and Casemaker"). By 2019, "ROSS was beginning to build an enthusiastic user base ... and bec[a]me a market competitor" after having "put a significant investment into building its ... digital public law collection." *Id.* ¶ 112. And ROSS alleges that other companies compete in the legal-search-platform market without access to West's "public law database." According to ROSS, 20 percent of the legal-search-platform market is comprised of non-Westlaw competitors— none of which has access to West's database. *See id.* ¶ 5. This alone is grounds for dismissing any essential-facility claim. *SEI Glob.*, 2020 WL 6262187, at *9 (dismissing claim where "thirty percent of the top twenty providers" competed using another facility).

At most, ROSS alleges that customers prefer Westlaw because they "ha[ve] confidence that Westlaw's database would have the materials they needed." D.I. 24 ¶ 75. West has, since the nineteenth century, worked to develop a "truly comprehensive" collection of public law. *Id.* ¶ 42. Through decades of work, West has created "a highly valuable," "comprehensive and reliable" database. *Id.* ¶ 43. Consumers "feel confident when looking for cases in Westlaw's digital col- lection," knowing it is "the standard for collecting judicial opinions, legislation, and regulations since before any currently practicing lawyer was born." *Id.* ¶ 44.

ROSS thus alleges that, having spent over a century developing an industry-leading prod- uct, Plaintiffs must now provide access to ROSS so it can compete when other options exist. Clearly not: "A facility is not essential even if it is widely preferred by consumers and producers in the market, as long as there is an alternative (albeit inferior) venue." *Kerwin*, 2019 WL 1098949, at *7 (quoting *JamSports & Ent., LLC v. Paradama Prods., Inc.*, 336 F. Supp. 2d 824, 839 (N.D. Ill. 2004)); *see also Blue Cross & Blue Shield United of Wis. v. Marshfield Clinic*, 65 F.3d 1406,

1413 (7th Cir. 1995) ("The suggestion that the price of being 'best' is to be brought under the regulatory aegis of antitrust law and stripped of your power to decide whom to do business with does not identify an interest that the antitrust laws protect.").

### 3.    ROSS's Tying Allegations Fail Because ROSS Has Not Plausibly Identified Two Separate Products or Product Markets.

Finally, ROSS appears to bring a "tying" theory, asserting Plaintiffs should not sell together two components of an integrated product: their legal search technology (including their proprietary content) and "public law database."[1]  D.I. 24 ¶¶ 102, 104–05.  A tying arrangement exists when a seller conditions the sale of one product (the tying product) on the purchase of a second product (the tied product).  The antitrust concern is that, if the seller of the tying product is a monopolist, the tie will force anyone who wants the monopolized product to buy the tied product, too, creating a second monopoly.  There is no tying arrangement if the two "products" are in reality components of a single product, which turns on whether there is sufficient demand for the tied, or unwanted, product separate from the tying, or wanted, product.  *Kaufman v. Time Warner*, 836 F.3d 137, 142 (2d Cir. 2016); *Kenney v. Am. Bd. of Internal Med.*, 412 F. Supp. 3d 530, 544–45 (E.D. Pa. 2019), *aff'd* 2021 WL 732715 (3d Cir. Feb. 25, 2021).  Thus, a tying claim "requires a finding that two separate product markets exist and a determination precisely what the tying and tied product markets are."  *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 443 (3d Cir. 1997) (citation omitted).

ROSS has failed to plead plausibly two relevant products or product markets.  ROSS purports to define separate public-law-database and legal-search-technology product markets.  D.I. 24

---

[1] Although Plaintiffs accept ROSS's allegations for the purposes of this motion, Plaintiffs note that, because Westlaw is an integrated service, it is inaccurate to say that the proprietary content is solely part of Plaintiffs' legal search technology.  Westlaw also provides that content in response to users' searches.

¶¶ 79–80.  But even on a motion to dismiss, the Court need not accept unreasonable factual allegations or draw unreasonable inferences in ROSS's favor.  *E.g.*, *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183–84 (3d Cir. 2000).  And ROSS's complaint undermines any argument that these are actually distinct product markets.

As an initial matter, common sense shows that the supposedly "tied" products are components of a single product:  ROSS itself wants access to Plaintiffs' database so it can package the database with ROSS's search platform to sell one product.  What's more, ROSS readily acknowledges that, for end users like lawyers, "there is currently no substitute for a legal search platform" that "combines a legal search functionality product with a database of public law."  D.I. 24 ¶¶ 77–78.  According to ROSS, a public law database "holds no value" if it "is not connected to a legal search tool":  "There is too much public law to efficiently and effectively identify the relevant material without search functionality."  *Id.* ¶ 78.  Nor is a legal search tool of any use without the underlying public law.  Although ROSS claims bar associations and major law firms "*could be*" interested in a legal search tool, it admits that would be truly only "as long as the technology" is "combine[d] ... with a public law database."  *Id.* ¶ 79 (emphasis added).  Thus, the only "consumers" plausibly interested in public law without search functionality are potential competitors (like ROSS) that allegedly "need access to a database to develop, test and market their platform products."  *Id.* ¶ 80.

True to market realities, ROSS's antitrust claims are based on the legal-search-platform market, not some hypothetical search-technology or public-law-database market.  *Id.* ¶¶155, 164.  Indeed, ROSS's Delaware state law claim is based on the allegation that "customers ... would [have] purchase[d] access to the ROSS platform once it was tied to a reliable database."  *Id.* ¶ 177.  So ROSS's claim is nothing more than a refusal-to-deal claim dressed in tying language.  And on

this point, the antitrust law is clear: "there is no duty to aid competitors." *E.g.*, *Trinko*, 540 U.S. at 411; *Olympia Equip. Leasing Co. v. W. Union Tel. Co.*, 797 F.2d 370, 375 (7th Cir. 1986) ("Today it is clear that a firm with lawful monopoly power has no general duty to help its competitors, whether by holding a price umbrella over their heads or by otherwise pulling its competitive punches.").

## B.   ROSS's § 1 Claim Should Be Dismissed for Failure to Plead a Conspiracy.

Nor can ROSS recast its case under § 1 of the Sherman Act. Section 1 is focused on agreements among competitors rather than unilateral conduct by monopolists. It prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce." 15 U.S.C. § 1. The "existence of an agreement is the hallmark of a § 1 claim." *In re Baby Food Antitrust Litig.*, 166 F.3d 112, 117 (3d Cir. 1999). "Unilateral activity by a defendant, no matter the motivation, cannot give rise to a § 1 violation." *InterVest, Inc. v. Bloomberg, L.P.*, 340 F.3d 144, 159 (3d Cir. 2003).

ROSS's Counterclaims are clear that ROSS's issue is with West's unilateral decision not to license its "public law database"—not any concerted action as required under § 1. ROSS nevertheless tries to shoehorn this unilateral action into an agreement subject to § 1 by claiming that Plaintiffs jointly decided not to agree to the license. D.I. 24 ¶ 163. But named plaintiffs West Publishing Corporation and Thomson Reuters Enterprise Centre GmBH are both wholly owned subsidiaries of Thomson Reuters Corporation.[2] Nearly forty years ago, the Supreme Court conclusively established that a parent corporation and "its wholly owned subsidiary ... are incapable of conspiring with each other for purposes of § 1 of the Sherman Act." *Copperweld Corp. v. Indep.*

---

[2] *See* Exhibit A, Thomson Reuters Corporation Form 40-F at 192–93. The court may take judicial notice of public disclosure documents filed with the SEC on a motion to dismiss. *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1331 (3d Cir. 2002).

*Tube Corp.*, 467 U.S. 752, 777 (1984).  And following *Copperweld*, the Third Circuit has held that "two subsidiaries wholly owned by the same parent are legally incapable of conspiring with one another for purposes of § 1."  *Siegel*, 54 F.3d at 1133; *see also Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1234 (10th Cir. 2017) (concluding that "*Copperweld* supports treating the coordinated acts of sister subsidiaries wholly owned by the same parent as those of a single enterprise, such that the subsidiaries are incapable of conspiring under § 1 of the Sherman Act."); *Gonzalez-Maldonado v. MMM Healthcare, Inc.*, 693 F.3d 244, 249–50 (1st Cir. 2012) ('The rationale and underlying policy [of *Copperweld*] apply with equal force to sister corporations that are wholly owned subsidiaries of the same parent.").

This blackletter law compels dismissal.  *See Satellite Fin. Planning Corp. v. First Nat'l Bank of Wilmington*, 643 F. Supp. 449, 451 (D. Del. 1986) (granting motion to dismiss because the "three defendants cannot be held to have conspired with each other because, as a parent company and its wholly owned subsidiaries, the three defendants are unable, as a matter of law, to conspire to violate Section 1 of the Sherman Act"); *see also Garshman v. Universal Res. Holding Inc.*, 824 F.2d 223, 230 (3d Cir. 1987) (affirming dismissal in part because "[c]learly, Universal cannot base its claim on any conspiracy between System and its subsidiary, Transmission.")

### C.    ROSS's State Law Claims Should Be Dismissed for Failure to State a Claim.

In addition to its Sherman Act claims, ROSS claims that Plaintiffs have violated California and Delaware unfair competition law.  D.I. 24 ¶¶ 170–75 (California Unfair Competition Law); *id.* ¶¶ 176–80 (Delaware Common Law Unfair Competition).  For the reasons discussed below, those claims should be dismissed.

16

1.    ROSS's California Unfair Competition Claim Fails for the Same Reasons
as Its Federal Antitrust Claims.

ROSS contends that Plaintiffs have violated California's Business and Professions Code § 17200, which makes actionable "any unlawful, unfair or fraudulent business act or practice." ROSS's California claim based on a "violation of Sections 1 and 2 of the Sherman Act" fails for the same reasons as its federal antitrust claim.  D.I. 24 ¶¶ 172–73.  When "the same conduct is alleged to support both a plaintiff's federal antitrust claims and state-law unfair competition claim, a finding that the conduct is not an antitrust violation precludes a finding of unfair competition." *LiveUniverse*, 304 F. App'x at 557 (affirming dismissal); *Chavez v. Whirlpool Corp.*, 113 Cal. Rptr. 2d 175, 184 (Cal. Ct. App. 2001) ("[W]e conclude as a matter of law that conduct that the courts have determined to be permissible under the *Colgate* doctrine cannot be deemed 'unfair' under the unfair competition law.").

ROSS's unfair competition claim premised on a "violation of the Copyright Act" fares no better.  D.I. 24 ¶ 174.  "By proscribing 'any unlawful' business practice, section 17200 borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable."  *Bejou v. Bank of Am., N.A.*, 2013 WL 1759126, at *4 (E.D. Cal. Apr. 24, 2013) (citation omitted).  Nowhere does ROSS allege that Plaintiffs violated the Copyright Act.  Each of ROSS's copyright claims relate to the alleged invalidity of Thomson Reuters' copyrights and ROSS's own non-infringement.  D.I. 24 p. 35 (Count I: Declaratory Judgment of No Valid Copyrights in the Westlaw Content); *id.* p. 38 (Count II: Declaratory Judgment of Non-Infringement); *id.* p. 39 (Count III: Declaratory Judgment of Fair Use); *id.* p. 40 (Count IV: Declaratory Judgment of Copyright Misuse).  With no allegation of a violation of the Copyright Act, ROSS's California unfair competition claim necessarily fails and must be dismissed.  *E.g.*, *S&S*

*Worldwide, Inc. v. Wells Fargo Bank*, 2020 WL 7714534, at *9 (N.D. Cal. Dec. 29, 2020) (dismissing unfair competition claim where plaintiff failed to "identify the section(s) of the Bank Secrecy Act, any regulation promulgated thereunder, or any other law [defendant] is alleged to have violated"); *TreeFrog Devs., Inc. v. Seidio, Inc.*, 2013 WL 4028096, at *5 (S.D. Cal. Aug. 6, 2013) (dismissing unfair competition claim where "Defendant alleges no statutory violation underlying its UCL claim").[3]

### 2. ROSS Has Failed to Plead the Necessary Elements of a Delaware Unfair Competition Claim.

Finally, ROSS claims that Plaintiffs engaged in unfair competition under Delaware common law. "To the extent that unfair competition exists as an independent common-law tort, it is essentially the same tort ... [as] tortious interference with prospective business relations." *Preston Hollow Cap. LLC v. Nuveen LLC*, 2019 WL 3801471, at *9 n.96 (Del. Ch. Aug. 13, 2019). To state an unfair competition claim, ROSS was required to allege "a reasonable expectancy of entering a valid business relationship, with which the defendant wrongfully interferes, and thereby defeats the plaintiff's legitimate expectancy and causes him harm." *Accenture Glob. Servs. GmBH v. Guidewire Software Inc.*, 581 F. Supp. 2d 654, 665-66 (D. Del. 2008) (citation omitted).

ROSS failed to plead the necessary elements of a Delaware unfair competition claim. ROSS alleges only that it "had a business expectancy to sell its legal search platform in the market" without identifying any customer with which it reasonably expected to contract. D.I. 24 ¶ 177. Such "generalized allegations of harm" are not enough: a plaintiff must identify "a specific party who was prepared to enter into a business relationship." *You Map, Inc. v. Snap Inc.*, 2021 WL

---

[3] And if ROSS had alleged that Plaintiffs had infringed a copyright, the claim would be preempted by 17 U.S.C. § 301.

106498, at *9 (D. Del. Jan. 12, 2021) (citation omitted).  Further, ROSS does not allege that Plaintiffs wrongfully interfered with any "business expectancy."  ROSS merely alleges that it would have had more success with access to their "public law database" because customers preferred it. *Compare* D.I. 24 ¶ 72 ("Even after ROSS made a large investment to partner with Fastcase and fill the gaps in its digital collection, customers were still not convinced."), *with id.* ¶ 99 ("Consumers know that Westlaw [sic] has been building its public law collection for over one hundred years, and that it is comprehensive and reliable.  ...  This level of reassurance is unique to Westlaw."). But it is not unfair competition to create a superior product and win customers as a result—that is the essence of competition.  And, as discussed above, Plaintiffs were under no obligation to contract with ROSS and thus did not "wrongfully" interfere with any business relationship, had ROSS even identified one.

Thus, this Court should dismiss ROSS's Delaware unfair competition claim.  *See You Map*, 2021 WL 106498, at *9 (dismissing Delaware unfair competition claim where plaintiff failed to "plead facts suggesting the existence of a specific party who was prepared to enter into a business relationship with Plaintiff but was dissuaded from doing so as the result of Defendants' wrongful interference"); *FMC Corp. v. Summit Agro USA, LLC*, 2014 WL 6627727, at *14 (D. Del. Nov. 14, 2014) (dismissing Delaware unfair competition claim because plaintiff's complaint made "no reference ... to any particular valid business relationship ... that Defendants are alleged to have interfered with").

## V.    CONCLUSION

ROSS's Counterclaims are simply an attempt to complicate a copyright case.  Allowing ROSS's federal antitrust and state unfair competition claims to proceed when the Counterclaims themselves show that ROSS cannot state a claim would threaten to prolong the case by years and add substantial discovery costs for no reason.  Plaintiffs request that this Court dismiss ROSS's

19

Counterclaims and allow the case to proceed as the copyright case it really is.  And because ROSS

cannot amend its complaint to cure these deficiencies and adequately state a claim, Plaintiffs ask

that the Counterclaims be dismissed with prejudice.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
mflynn@mnat.com

*Attorneys for Plaintiffs Thomson Reuters Enterprise Center GmbH and West Publishing Corporation*

OF COUNSEL:

Dale M. Cendali
Joshua L. Simmons
Eric A. Loverro
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
(212) 446-4800

Daniel E. Laytin
Christa C. Cottrell
Cameron Ginder
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

March 25, 2021

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 25, 2021, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on March 25, 2021, upon the following in the manner indicated:

David E. Moore, Esquire                                      *VIA ELECTRONIC MAIL*
Stephanie E. O'Byrne, Esquire
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE  19801
*Attorneys for Defendant*

Joshua M. Rychlinski, Esquire                          *VIA ELECTRONIC MAIL*
Mark A. Klapow, Esquire
Lisa Kimmel, Esquire
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, DC  20004
*Attorneys for Defendant*

Gabriel M. Ramsey, Esquire                             *VIA ELECTRONIC MAIL*
Kayvan M. Ghaffari, Esquire
Jacob Canter, Esquire
CROWELL & MORING LLP
3 Embarcadero Center, 26th Floor
San Francisco, CA  94111
*Attorneys for Defendant*


*/s/ Michael J. Flynn*
_____
Michael J. Flynn (#5333)