# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| Thomson Reuters Enterprise Centre GmbH and West Publishing Corp., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | C.A. No. 20-613-LPS |
| | : | |
| ROSS Intelligence Inc., | : | |
| | : | |
| Defendant. | : | |
| | : | |

Jack B. Blumenfeld, Michael J. Flynn, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE

Dale M. Cendali, Joshua L. Simmons, Eric A. Loverro, KIRKLAND & ELLIS LLP, New York NY

      Attorneys for Plaintiffs


David E. Moore, Stephanie E. O'Byrne, Tracey E. Timlin, POTTER ANDERSON & CORROON LLP, Wilmington, DE

Gabriel M. Ramsey, Kayvan M. Ghaffari, CROWEL & MORING LLP, San Francisco, CA

Mark A. Klapow, Joshua M. Rychlinski, CROWELL & MORING LLP, Washington, DC

      Attorneys for Defendant


## MEMORANDUM OPINION




March 29, 2021
Wilmington, Delaware

**STARK, U.S. District Judge:**

Plaintiffs Thomson Reuters Enterprise Centre GmbH ("Thomson Reuters") and West Publishing Corp. ("West") (collectively, "Plaintiffs") have sued Defendant ROSS Intelligence Inc. ("ROSS" or "Defendant") for copyright infringement and tortious interference with contract. (D.I. 1)  In general, this dispute concerns whether Defendant improperly accessed and infringed Plaintiffs' purported copyrights to certain Westlaw material through a third party to develop Defendant's own artificial intelligence-based legal search product.  Pending before the Court is Defendant's Rule 12(b)(6) motion to dismiss.  (D.I. 11)  For the reasons that follow, the Court will deny the motion.

# I.     BACKGROUND[1]

## A.     Westlaw

Thomson Reuters is a Swiss limited liability company having its principal place of business in Switzerland.  (D.I. 1 ¶ 6)  West is an entity incorporated and headquartered in Minnesota.  (*Id.* ¶ 7)

Plaintiffs own and operate Westlaw, a widely-known search platform used throughout the legal industry, including by judges, law clerks, practicing lawyers, and law students.  The platform started in books and is now available online.  Subscribers to Westlaw have access to a comprehensive collection of legal information that is searchable through keywords, natural language, and/or Boolean inquiries.  (*Id.* ¶ 11)  According to Plaintiffs, "Westlaw includes access to volumes of proprietary material (such as West Headnotes, case summaries, and other Westlaw-created content), databases, and compilations of case law, state and federal statutes,

---

[1] The following facts are taken from Plaintiffs' complaint and the parties' papers.  (D.I. 1; *see also* D.I. 12, 15, 17)  At this stage of the case, the Court takes as true all well-pled factual allegations in the complaint.

state and federal regulations, law journals, treatises, and other resources – all organized and curated by West's editorial team." (*Id.* ¶ 15)

Particularly relevant to this dispute are Westlaw's Headnotes and the Westlaw Key Number System ("WKNS") (collectively referred to by Plaintiffs as "Westlaw Content"), both of which are developed through a "rigorous editorial process" by attorney-editors. (*Id.* ¶¶ 1, 11) The WKNS is a "complex hierarchy" that organizes the law into numerous topis, and then subclassifies them into key numbers for legal issues and points of law. (*Id.* ¶ 13) (providing exemplary discussion of "Abandoned and Lost Property" topic) Plaintiffs allege that the development of the WKNS "has been and continues to be the result of Plaintiffs' numerous creative choices about how to organize cases and which cases to place in that classification, requiring substantial investments of time, technological and human resources, and money over the course of decades." (*Id.* ¶ 12) In addition to the WKNS, Headnotes summarize concepts discussed in cases and are created by attorney-editors as judges issue their opinions. (*Id.* ¶ 14) Attorney-editors integrate Headnotes into the WKNS – which are regularly edited and revised – "so subscribers can easily find the latest decisions on any given topic or issue." (*Id.*)

Plaintiffs contend that they own valuable copyrights in Westlaw. (*See id.* ¶¶ 20-23) Plaintiffs allege that the attorney-editors' "sole responsibility is to review decisions, create original and creative West Headnotes summarizing key points of law, and organizing those cases and West Headnotes in the WKNS." (*Id.* ¶ 20) Plaintiffs further allege that "[c]ases, areas of law, legal topics, legal issues, subtopics, and subissues can all be summarized and organized in a variety of different ways – the structure, sequence, and organization of WKNS is not something that has been achieved by accident or necessity; rather, it is the result of decades of human creativity and choices." (*Id.* ¶ 21)

"To protect Westlaw, Thomson Reuters registers the database with the United States Copyright Office every three months." (*Id.* ¶ 22 & Ex. A) ("[C]ertificates of registration issued by the Copyright Office and other documents reflecting Westlaw's registrations") Thomson Reuters owns the alleged copyrights in the Westlaw Content, while West allegedly "creates and authors" Westlaw Content. (*Id.* ¶¶ 6-7)

To access and use Westlaw, subscribers agree to West's Subscriber Agreements laying out, among other things, what they are and are not allowed to do with Westlaw's content. (*Id.* ¶ 18 (identifying specific provisions); *see also* D.I. 16) One provision states that a subscriber "may not sell, sublicense, distribute, display, store or transfer [West's] products or any data in [its] products in bulk or in any way that could be used to replace or substitute for [its] products in whole or in part or as a component of any material offered for sale, license or distribution to third parties." (D.I. 1 at ¶ 18) (alterations in original) Thus, according to Plaintiffs, subscribers are "expressly prohibited from using Westlaw Content to create a competitive product or to sell the Plaintiffs' proprietary content to others." (*Id.* ¶ 19) West "constantly monitor[s] user activity for behavior that would breach the terms of its subscriber agreement." (*Id.*)

### B.   ROSS

ROSS is an entity incorporated in Delaware and headquartered in San Francisco, California. (*Id.* ¶ 8)

Defendant was founded in 2015 and is engaged in the business of offering and providing legal research services through its ROSS platform. (*See id.* ¶ 24) Rather than searching with Boolean terms or keywords, ROSS users are able to search for relevant law by posing a question in natural language. (*Id.* ¶ 26) The ROSS platform provides users with cases summaries and treatments, and it allows a user to "use the initial search results as a jumping-off point to find additional cases with similar facts and/or procedural postures." (*Id.* ¶ 27) ROSS states that it

leverages a natural search engine based on artificial intelligence to generate results from public

information, such as "case law, statutes, and regulations across various practice areas." (D.I. 12

at 2, 4)

### C.    ROSS And LegalEase

LegalEase Solutions, LLC ("LegalEase") is a legal research and writing support services

company; it is not a legal research platform like West or ROSS. (D.I. 1 ¶ 29)  Starting in 2008,

LegalEase obtained a limited license to use Westlaw to conduct legal research for customers.

(*Id.*)  According to Plaintiffs, the "Service Agreement between LegalEase and West prohibited

LegalEase from running or installing any computer software on West's products or network, as

well as selling, sublicensing, distributing, displaying, storing, or transferring Westlaw

information in bulk to third parties." (*Id.*)  Plaintiffs allege that LegalEase started to breach these

terms by July 2017. (*Id.* ¶ 30)

In July 2017, LegalEase stated in an interview that it was working with a machine

learning research firm (later revealed to be ROSS) to help create a legal research platform, and

that LegalEase was feeding that firm with "tons and tons of legal research." (*Id.* ¶ 33)  Around

this time, Plaintiffs observed a nearly 40-fold increase over LegalEase's historical usage pattern,

i.e., from approximately 6,000 Westlaw transactions per month to a maximum of about 236,000

transactions per month (a usage rate nearly five times greater than the average monthly usage

rate of the top 100 law firms, as ranked by "The American Lawyer"). (*Id.* ¶ 31)  According to

Plaintiffs, their investigation revealed that the users of certain Westlaw credentials assigned to

LegalEase were exhibiting bot-like behavior and that content from Westlaw was being

downloaded and stored in bulk by computer software. (*Id.* ¶ 32)

Plaintiffs allege, on information and belief, that "ROSS paid LegalEase to copy Westlaw

Content from Westlaw to build ROSS's competing platform, thereby knowingly and deliberately

instructing LegalEase to breach its Service Agreement with West" and that the two companies have been working together since at least October 2015. (*Id.* ¶ 34) Plaintiffs further allege, on information and belief, that LegalEase copied the Westlaw Content and distributed it to ROSS, and then ROSS "copied that content and used it to create its platform." (*Id.* ¶ 35; *see also id.* ¶ 3 ("ROSS intentionally and knowingly induced . . . LegalEase . . . to breach its contract with West by engaging in the unlawful reproduction of Plaintiffs' copyrighted content and distribution of that content *en masse* to ROSS."))

West subsequently terminated its agreement with LegalEase in January 2018. (*Id.* ¶ 36) It appears that West then sued LegalEase for breach of contract. (*See* D.I. 12 at 5) (citing *West Publ'g Corp. v. LegalEase Sols., LLC*, No. 18-cv-01445-DSD (D. Minn. May  25, 2018) ("the LegalEase Case")) Defendant states that, in that litigation, it "produced nearly 40,000 documents concerning LegalEase and ROSS's development of its legal research algorithms and platform" and that a subpoena and motion to compel further production by ROSS were filed. (*Id.*) On May 5, 2020, a consent judgment ended the LegalEase Case. (*Id.*)

### D.    Procedural History

On May 6, 2020 (the day after the LegalEase Case closed), Plaintiffs filed the above-captioned matter against Defendant, alleging infringement of the Westlaw copyrights (*see* D.I. 1 ¶¶ 40-48) and tortious interference with West's contract with LegalEase (*id.* ¶¶ 49-53). Plaintiffs seek various forms of relief, including removal and destruction of Westlaw Content from ROSS's legal search product, injunctive relief, and monetary damages. (*See id.* ¶¶ A-M)

On July 13, 2020, Defendant filed the pending motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6). (D.I. 11) The motion is directed to both the copyright infringement and tortious interference claims. (*See id.*; *see also* D.I. 12 at 3) The motion is fully briefed. (*See* D.I. 12, 15-17) The Court held telephonic oral argument on October 30, 2020.

(D.I. 20) ("Tr.")

## II.    LEGAL STANDARDS

Evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires the Court to accept as true all material allegations of the complaint. *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted). Thus, the Court may grant such a motion to dismiss only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks omitted).

However, "[t]o survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At bottom, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted).

The Court is not obligated to accept as true "bald assertions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted), "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*,

113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false," *Nami v. Fauver*,

82 F.3d 63, 69 (3d Cir. 1996).

**III.   DISCUSSION**

      Plaintiffs have sued ROSS for copyright infringement under 17 U.S.C. § 101 *et seq.*

(Count I) and for tortious interference of contract (Count II).  As discussed below, the Court will

deny ROSS's motion to dismiss these claims.

      **A.   Copyright Infringement**

      The Constitution authorizes Congress to grant exclusive copyrights for a limited duration

of time "[t]o promote the Progress of Science and useful Arts."  U.S. Const. art. I, § 8, cl. 8.

Acting on that power, Congress codified federal copyright protections in various statutes,

including the Copyright Act of 1976.  *See* 17 U.S.C. § 101 *et seq.*  The Copyright Act provides a

cause of action for copyright infringement.  *Id.* § 501(b).

      To establish a claim for copyright infringement, the plaintiff must prove "(1) ownership

of a valid copyright, and (2) copying of constituent elements of the work that are original."  *Feist*

*Publ'ns, Inc. v Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *see also Brownstein v. Lindsay*,

742 F.3d 55, 77 n.16 (3d Cir. 2014).  In *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 166

(2010), the Supreme Court held that 17 U.S.C. § 441(a) "imposes a [registration] precondition"

to filing a copyright infringement claim.  *See also Fourth Estate Pub. Benefit Corp. v. Wall-*

*Street.com, LLC*, 139 S. Ct. 881, 892 (2019).  Therefore, courts within the Third Circuit have

developed a four-factor test for "identifying whether the *Feist* and *Reed Elsevier* requirements

can potentially be fulfilled through discovery."  *Greenberg v. Scholastic, Inc.*, 2018 WL

6268411, at *3 (E.D. Pa. Nov. 30, 2018).  That is, "[t]o survive a motion to dismiss, a claim must

allege: '(1) which specific original works are the subject of the copyright claim; (2) ownership of

the copyrights in those works; (3) registration of the works in question with the Copyright Office in accordance with 17 U.S.C. §§ 101, *et seq.*; and (4) by what acts the defendant infringed the copyright.'" *Micro Focus (US), Inc. v. Ins. Servs. Off., Inc.*, 125 F. Supp. 3d 497, 501 (D. Del. 2015) (quoting *Key Consol. 2000, Inc. v. Troost*, 432 F. Supp. 2d 484, 488 (M.D. Pa. 2006)).[2]

    The Court addresses these considerations below.

### 1.    The Complaint Alleges Specific Original Works That Are Subject To Plaintiff's Copyright Claim

    Section 102(a) of the Copyright Act grants protection for "original works of authorship," while Section 102(b) provides that copyright protection extends only to expressions of ideas, not ideas themselves. "The *sine qua non* of copyright is originality." *Feist*, 499 U.S. at 345. What constitutes "original" work is left undefined in the Copyright Act. The Supreme Court, however, has explained that "[o]riginal . . . means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." *Id.* (citing 1 M. Nimmer & D. Nimmer, *Copyright* §§ 2.01[A], [B] (1990)). "[T]he requisite level of creativity is extremely low; even a slight amount will suffice." *Id.*

    Pursuant to 17 U.S.C. § 410(c), in judicial proceedings, "the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright," as well as evidence of originality, authorship, compliance with statutory formalities, and ownership. *See Broadcast Music, Inc. v. Moor-Law, Inc.*, 484 F. Supp. 357, 362-63 (D. Del. 1980).

    The complaint alleges that Thomson Reuters registers the Westlaw database with the

---

[2] Neither party here relies on the four-factor test outlined in *Micro Focus*. Rather, each party generally relies on the two-pronged test articulated in *Feist*. The Court would reach the same conclusion under either rubric.

Copyright Office every three months (D.I. 1, ¶ 11) and attaches over 300 pages of registration certificates, spanning from 1981 through 2020 (*id.*, Ex. A). These allegations satisfy the requirement to allege which specific original works are the subject of the copyright claim and are, therefore, "sufficient to meet the first prong of the [*Feist*] analysis" at the pleading stage. *PDS Pathology Data Sys. Ltd. v. Zoetis Inc.*, 2018 WL 5033751, at *2 (D.N.J. Oct. 17, 2018). Accordingly, the complaint passes the first hurdle of the four-factor test.

Defendant largely avoids the legal implications of copyright registration, instead arguing that Westlaw Content is not copyrightable under the government edicts doctrine, and further that the WKNS is an unprotectable system and method of operation comprising elements that are allegedly not original or creative. (D.I. 12 at 9-14; *see also* Tr. at 19-22) These are important and interesting questions that will, almost certainly, be confronted at some stage of this case. They do not, however, provide a basis for granting Defendant's motion, as they do not support a conclusion that Plaintiffs have failed to state a claim for copyright infringement. *See generally Robinson v. Johnson*, 313 F.3d 128, 134-35 (3d Cir. 2002) (explaining that Federal Rule of Civil Procedure 8(c) requires defendant to plead affirmative defense in answer, not in motion to dismiss).[3]

---

[3] Defendant's reliance on *Riordan v. H.J. Heinz Co.*, 2009 U.S. Dist. LEXIS 114165 (W.D. Pa. Dec. 8, 2009), is unpersuasive. (*See* D.I. 12 at 7-8; Tr. at 21) In that case, a motion to dismiss a copyright claim was granted at the pleadings stage on the basis that plaintiff's "'idea' for an up-side down bottle [was] not copyrightable subject matter," and furthermore, because no copyright registration had been obtained. *Riordan*, 2009 U.S. Dist. LEXIS 114165, at *37-42. Here, Plaintiffs have alleged and attached copyright registrations, giving rise to a rebuttable presumption of originality that Defendant has not rebutted. *See* 17 U.S.C. § 410(c).

Moreover, the Court is persuaded that Plaintiffs have, on the face of the complaint, plausibly alleged originality in certain Westlaw materials. (*See, e.g.*, D.I. 1, ¶ 14 (alleging that attorney-editors "carefully review [decisions] and ***create original*** West Headnotes to describe the key concepts discussed" in the decisions) (emphasis added); *id.* ¶ 12 (alleging attorney-editors make "numerous creative choices about how to organize cases and which cases to place in that classification, requiring substantial investments of time, technological and human

Defendant also argues that the complaint does not identify the specific works that are subject to the copyright claim. Although a more particularized identification of the specific material that Plaintiffs contend is copyrighted will be necessary as this case proceeds, the complaint satisfies Rule 8's requirement of a short and plain statement giving Defendant notice of Plaintiffs' claims. (*See, e.g.*, D.I. 1, ¶¶ 11-19 (section titled "Plaintiffs and the Creativity of Westlaw," focusing on allegedly creative and original work by attorney-editors); *id.*, Ex. A at 326-27 (registration certificate of August 2019 stating author created "original and revised text and compilation of legal material" including new "daily updates," and expressly excluding "government edicts . . . including legislative enactments, judicial decisions . . . or similar types of official legal materials")).[4]

### 2.   The Complaint Alleges Ownership Of The Copyrights in Those Works

The complaint alleges that West creates and authors Westlaw Content, while Thomson Reuters is the owner of the copyrights to the Westlaw Content. (D.I. 1, ¶¶ 6-7) It is further alleged that "Thomson Reuters is the sole owner and proprietor of all right, title, and interest in

---

resources, and money over the course of decades")) When these allegations are accepted as true, Plaintiffs' works are plausibly within the gambit of copyrightable subject matter. *See generally Georgia v. Public.Resource.Org, Inc.*, 140 S. Ct. 1498, 1507 (2020) (stating that "authorship" rule underlying government edicts doctrine applies to "non-binding works (such as headnotes and syllabi)" but not to "works created by . . . private parties[] who lack the authority to make or interpret the law, such as court reporters"); *Callaghan v. Myers*, 128 U.S. 617, 645-47 (1888) (upholding reporter's copyright interest in explanatory material that reporter had created, including headnotes, syllabi, and table of contents); *Am. Dental Ass'n v. Delta Dental Plans Ass'n*, 126 F.3d 977, 979-81 (7th Cir. 1997) ("Classification is a creative endeavor."); *West Publ'g Co. v. Mead Data Cent., Inc.*, 799 F.2d 1219, 1226-27 (8th Cir. 1986) ("[T]he arrangement West produces through [its reporting process] is the result of considerable labor, talent, and judgment."). *But see Matthew Bender & Co. v. West Publ'g Co.*, 158 F.3d 693, 699-700 (2d Cir. 1998) (rejecting originality of internal pagination of West's case reporters).

[4] The parties should consider including in the proposed schedule that they will submit for the Court's consideration a requirement that Plaintiffs disclose and perhaps refine their contentions at appropriate points as the case develops. (*See* Tr. at 70-71)

and to the copyrights in Westlaw." (*Id.* ¶ 23)  These allegations are sufficient to plausibly state

ownership in the alleged copyrighted works and meet the second prong of the analysis.[5]

### 3.     The Complaint Alleges Registration Of The Work In Question

The complaint alleges that "Thomson Reuters registers the database with the United

States Copyright Office every three months," and Plaintiffs attach numerous certificates of

registration.  (*Id.* ¶ 22)  Thus, the third prong of the four-factor test is satisfied.

### 4.     The Complaint Alleges Acts By
####        Which Defendant Infringed The Copyright

ROSS contends that the complaint does not allege any copying by a specific accused

product.  (D.I. 12 at 7-9; *see* Tr. at 62-65)  The Court disagrees.  Paragraphs 24 to 39 of the

complaint allege that ROSS gained access to LegalEase's Westlaw subscription and downloaded

significant amounts of allegedly copyrighted material that ROSS was not granted access to via a

subscriber agreement.  (*See, e.g.*, D.I. 1, ¶¶ 31-32) (describing 40-fold increase in LegalEase's

Westlaw usage rate supposedly indicative of bot-like behavior)  ROSS is alleged to have

leveraged the Westlaw information obtained via LegalEase "to develop its platform."  (*Id.* ¶ 29;

*see also id.* ¶¶ 26-35)  To be sure, Plaintiffs' allegations are mostly made "upon information and

belief," which is permitted "when the facts at issue are peculiarly within the defendant's

possession."  *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 107 n.31 (3d Cir. 2015).

The Court does not agree with Defendant that Plaintiffs were required to have conducted

---

[5] Defendant contends that any alleged copyright in the WKNS has expired because the complaint alleges that the WKNS has existed since West's inception in 1879, thereby extending beyond the 95-year term of protection.  (D.I. 12 at 6-7) (citing D.I. 1, ¶ 1)  This position, which Defendant appears to have abandoned on reply (*see* D.I. 17), runs contrary to Section 103(b) of the Copyright Act, which permits copyrights independent of preexisting material.  In view of the allegation that the WKNS is "regularly edit[ed] and revise[d]" (D.I. 1, ¶ 14), and the attached copyright registration certificates filed every three months (*id.* ¶ 22), ROSS's argument does not provide a basis to dismiss the complaint.

more fact finding before pleading, such as reverse engineering the ROSS platform.[6] Plaintiffs explain that "[o]ne cannot tell from using ROSS's platform how it was created or what materials were copied. That information [would be] solely in ROSS's possession." (D.I. 15 at 11; *see also Malibu Media, LLC v. Doe*, 2014 WL 7188822, at *3-4 (D. Md. Dec. 16, 2014) (finding allegations of copyright infringement based upon information and belief plausible)) Considering the totality of the allegations made against Defendant, accepting them as true, and drawing all reasonable inferences in favor of Plaintiffs, the complaint plausibly alleges acts of infringement – namely that Defendants have engaged in mass, illicit downloading of copyrighted Westlaw material through LegalEase, which material was then used to develop the ROSS platform. Therefore, the complaint satisfies the fourth prong of the analysis.

As all four prongs of the four-factor test have been met, the Court concludes that the complaint adequately states a claim for direct copyright infringement. Accordingly, the Court will deny ROSS's motion to dismiss Count I.[7]

## B.   Tortious Interference With Contract

Count II of the complaint alleges tortious interference with contract, but the claim is not asserted under any particular state's law. (*See* D.I. 1, ¶¶ 49-53) ROSS moves to dismiss Count

---

[6] Defendant's analogy to cases, including patent infringement cases that have ***not*** required pre-suit reverse engineering in order to state a claim, is unpersuasive. (*See* Tr. at 11, 63-64, 69-70; *see also id.* at 34; *Network Managing Sols., LLC v. AT&T Inc.*, 2017 WL 472080, at *1 (D. Del. Feb. 3, 2017) (finding allegations based on information and belief sufficient where defendants kept "information about their . . . technology secret and . . . [did] not offer some public product that can be reverse engineered"))

[7] It follows that, to the extent Defendant also intended its motion to challenge Plaintiffs' pleading of indirect infringement based on the lack of adequate allegations of direct infringement (*see* Tr. at 67-68; *see also id.* at 64 ("It's the same [failing] as the direct infringement claim.") – a matter on which the parties disagree, and which the Court need not decide (*see* D.I. 15 at 2 n.1; D.I. 17 at 6 n.5; Tr. at 15-18, 41, 64-65) – that portion of the motion is also denied.

II, reasoning that, under Delaware's borrowing statute for statutes of limitations, 10 Del. C.

§ 8121, California's two-year statute applies, and therefore, the claim must be dismissed as

untimely.  (D.I. 12 at 14-19)[8]  ROSS also argues that elements of tortious interference have not

been adequately pled.  (*Id.*)

Plaintiffs counter that the claim arises under Minnesota law, which has a six-year statute

of limitations.  Therefore, in Plaintiffs' view, application of Delaware's borrowing statute means

that Delaware's three-year time bar applies, making Count II timely.  (D.I. 15 at 16-19)

In the Third Circuit, statute of limitations defenses do not provide a basis for dismissal on

a Rule 12(b)(6) motion unless the bar is apparent on the face of the complaint.  *See Schmidt v.*

*Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).  That standard is not met here.  To the contrary, the

parties have identified factual disputes – such as where the alleged injury occurred – which will

require further proceedings before the Court is in a position to resolve the statute of limitations

defense.  To determine where a cause of action "arises" for purposes of the borrowing statute,

Delaware's choice of law rules ask which state has the most significant relationship to the claim

and to the parties.  *See Johnson v. Warner Bros. Ent., Inc.*, 2017 WL 588714, at * 3 (D. Del. Feb.

14, 2017).  In the circumstances presented here, that determination cannot be made on the face of

the complaint.  *See generally Benihana of Tokyo, Inc. v. Benihana, Inc.*, 828 F. Supp. 2d 720,

725 (D. Del. 2011) (identifying four factors, pursuant to Section 145 of Restatement (Second) of

---

[8] "Traditionally, statutes of limitations are governed by forum law; however, Delaware's
borrowing statute has modified the traditional rule." *Grynberg v. Total Compagnie Française*
*des Pétroles*, 891 F. Supp. 2d 663, 678 (D. Del. 2012), *vacated in part on other grounds*, 2013
WL 5459913 (D. Del. 2013).  When a non-resident plaintiff files an action in Delaware for a
claim arising outside of the state, the Delaware borrowing statute applies: "Where a cause of
action arises outside of this State, an action cannot be brought in a court of this State to enforce
such cause of action after the expiration of whichever is shorter, the time limited by the law of
this State, or the time limited by the law of that state or country where the cause of action arose,
for bringing an action upon such cause of action."  10 Del. C. § 8121.

Conflict of Laws, for assessing most significant relationship: (a) place where injury incurred; (b) place where conduct causing injury occurred; (c) domicile, residence, nationality, place of incorporation, and place of business of parties; and (d) place where relationship, if any, between parties is centered).

Nor is the Court persuaded at this stage that the complaint fails to adequately allege the elements of tortious interference with contract.  As an initial matter, the parties dispute whether the claim is governed by Minnesota law, as Plaintiffs contend, or California law, as Defendant argues.  Without deciding the choice-of-law question at this point, the Court concludes that the claim is sufficiently pled either way.[9]  The complaint alleges that LegalEase had a contract with West, which ROSS knew, and that ROSS nonetheless pursued LegalEase "to acquire access to and copy Plaintiffs' valuable content" while "knowing that it violated the terms of LegalEase's contract with West." (D.I. 1, ¶¶ 1, 3, 51)  The complaint further alleges that ROSS's activities were without justification, particularly in view of the allegation that ROSS had been denied access to Westlaw (*see id.* ¶¶ 1, 3, 30-31, 51) – an issue on which, in any event, Defendant may have the burden.  *See Telluride Asset Mgmt., LLC v. Bridgewater Assocs., Inc.*, 2005 WL 1719204, at *3 (D. Minn. July 11, 2005).

Accordingly, the Court concludes that the complaint adequately states a claim for tortious interference with contract.

## III.   Conclusion

Defendant's motion to dismiss will be denied.  An appropriate Order follows.

---

[9] *See Kallok v. Medtronic, Inc.*, 573 N.W.2d 356, 362 (Minn. 1998) (stating claim for tortious interference requires allegations of (1) existence of contract, (2) alleged wrongdoer's knowledge of contract, (3) intentional procurement of its breach, (4) without justification, and (5) damages); *see also* D.I. 12 at 19-20 (Defendant analyzing claim under California law).

14