IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION,<br><br>   Plaintiffs and Counterdefendants,<br><br>   v.<br><br>ROSS INTELLIGENCE INC.,<br><br>   Defendant and Counterclaimant. | C.A. No. 20-613 (LPS) |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR
MOTION TO DISMISS DEFENDANT'S ANTITRUST COUNTERCLAIMS**

OF COUNSEL:

Dale M. Cendali
Joshua L. Simmons
Eric A. Loverro
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Daniel E. Laytin
Christa C. Cottrell
Alyssa C. Kalisky
Cameron D. Ginder
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

May 13, 2021

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com

*Attorneys for Plaintiffs and Counterdefendants
Thomson Reuters Enterprise Centre GmbH
and West Publishing Corporation*

Megan McKeown
KIRKLAND & ELLIS LLP
609 Main Street
Houston, TX 77002
(713) 836-3600

TABLE OF CONTENTS

Page

I.   INTRODUCTION ................................................................................................................ 1

II.  ARGUMENT ...................................................................................................................... 2

     A.   ROSS Fails To Allege Anticompetitive Conduct Under § 2. ................................. 2

          1.   ROSS's Refusal-To-Deal Claim Does Not Fit The *Aspen Skiing* Exception. ................................................................................................. 2

          2.   ROSS's Tying Claim Fails Because It Does Not Identify Two Products. ........................................................................................... 4

          3.   ROSS Fails To Plead Any Other Theory Of "Anticompetitive Conduct." .................................................................................................. 6

     B.   ROSS's § 1 Claim Fails Because ROSS Only Pleads Unilateral Conduct. ............ 8

     C.   ROSS's State Law Claims Should Be Dismissed For Failure To State A Claim. ......................................................................................................... 9

III. CONCLUSION ................................................................................................................. 10

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*3Shape Trios A/S v. Align Tech., Inc.*,
 No. 18-1332-LPS, 2019 WL 3824209 (D. Del. Aug. 15, 2019)..............................................8

*Accenture Glob. Servs. GmbH v. Guidewire Software Inc.*,
 581 F. Supp. 2d 654 (D. Del. 2008).....................................................................................10

*Allen-Myland, Inc. v. Int'l Bus. Machs. Corp.*,
 33 F.3d 194 (3d Cir. 1994)............................................................................................5, 6, 9

*Am. Airlines v. Christensen*,
 967 F.2d 410 (10th Cir. 1992) ...............................................................................................9

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)...............................................................................................................4

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*,
 472 U.S. 585 (1985)...........................................................................................................2, 3

*Blix Inc. v. Apple, Inc.*,
 No. 19-1869-LPS, 2020 WL 7027494 (D. Del. Nov. 30, 2020)............................................4

*Cal. Motor Transp. Co. v. Trucking Unlimited*,
 404 U.S. 508 (1972)...............................................................................................................7

*Chavez v. Whirlpool Corp.*,
 113 Cal. Rptr. 2d 175 (Cal. Ct. App. 2001) ........................................................................10

*Copperweld Corp. v. Indep. Tube Corp.*,
 467 U.S. 752 (1984)...............................................................................................................8

*Eastman Kodak Co. v. Image Tech. Servs., Inc.*,
 504 U.S. 451 (1992)...............................................................................................................5

*EDIX Media Grp. v. Mahani*,
 No. Civ.A. 2186-N, 2006 WL 3742595 (Del. Ch. Dec. 12, 2006) .........................................10

*F'Real Foods, LLC v. Hamilton Beach Brands, Inc.*,
 No. 16-41-CFC, 2020 WL 4932223 (D. Del. June 24, 2020)....................................................7

*F.T.C. v. AbbVie Inc.*,
 976 F.3d 327 (3d Cir. 2020)..................................................................................................8

*Hanover 3201 Realty, LLC v. Vill. Supermarkets, Inc.*,
    806 F.3d 162 (3d Cir. 2015) ....................................................................................................7

*Insulate SB, Inc. v. Advanced Finishing Sys., Inc.*,
    797 F.3d 538 (8th Cir. 2015) ..................................................................................................9

*Jefferson Parish Hosp. Dist. No. 2 v. Hyde*,
    466 U.S. 2 (1984) ............................................................................................................4, 5, 6

*Kaufman v. Time Warner*,
    836 F.3d 137 (2d Cir. 2016) ....................................................................................................5

*Lenovo (United States) Inc. v. Interdigital Tech. Corp.*,
    No. 20-493-LPS, 2021 WL 1123101 (D. Del. March 24, 2021) .........................................8, 9

*Olympia Equip. Leasing Co. v. W. Union Tel. Co.*,
    797 F.2d 370 (7th Cir. 1986) ...................................................................................................2

*Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*,
    508 U.S. 49 (1993) ..................................................................................................................7

*Roland Mach. Co. v. Dresser Indus. Inc.*,
    749 F.2d 380 (7th Cir. 1984) ...................................................................................................9

*Simon & Simon, PC v. Align Tech., Inc.*,
    No. 19-506-LPS, 2020 WL 1975139 (D. Del. Apr. 24, 2020) .................................................2

*Talley v. Christiana Care Health Sys.*,
    No. 17-926-CJB, 2018 WL 4938566 (D. Del. Oct. 11, 2018) .............................................8, 9

*United States v. Colgate & Co.*,
    250 U.S. 300 (1919) ................................................................................................................2

*United States v. Microsoft Corp.*,
    253 F.3d 34 (D.C. Cir. 2001) ...................................................................................................5

*Verizon Commc'ns Inc. v. Law Offs. of Curtis V. Trinko, LLP*,
    540 U.S. 398 (2004) ............................................................................................................2, 3

*Viamedia, Inc. v. Comcast Corp.*,
    951 F.3d 429 (7th Cir. 2020) ..............................................................................................2, 3

*In re Wellbutrin XL Antitrust Litig. Indirect Purchaser Class*,
    868 F.3d 132 (3d Cir. 2017) ....................................................................................................7

*You Map, Inc. v. Snap Inc.*,
    No. 20-162-CFC/JLH, 2021 WL 106498 (D. Del. Jan. 12, 2021) ........................................10

*ZF Meritor, LLC v. Eaton Corp.*,
    696 F.3d 254 (3d Cir. 2012)......................................................................................9

**Statutes**

15 U.S.C. § 1..............................................................................................................1, 6, 8, 9

15 U.S.C. § 2..................................................................................................................2, 3, 6

Copyright Act....................................................................................................................9

**I.      INTRODUCTION**

ROSS's Opposition confirms that it has a complaint in search of a viable theory. While its legal arguments are scattered, ROSS concedes it alleges the basic facts that require dismissal here:

- **The Parties Sell <u>One</u> Product.**  Thomson Reuters Enterprise Centre GmbH and West Publishing Corporation (collectively, "West") offer a single product:  a legal search platform.  D.I. 24 ¶¶ 26, 45, 76, 81, 105.  It includes search tools, a legal database, and editorial enhancements.  *Id.* ¶¶ 26, 39, 43–46, 76, 97.  ROSS also sold one product, consisting of a "public law database" and search tools.  *Id.* ¶¶ 24, 28, 57, 71–75, 81, 112.

- **West's Product is "Reliable."**  West's comprehensive legal database is complete, reliable and instills "confidence" in consumers.  *Id.* ¶¶ 39, 43–45, 73–75, 97–100.

- **ROSS Wants To Use West's Database To Compete With West.**  ROSS wanted to buy West's database to (i) benefit from West's strong reputation, and (ii) use it to compete against West.  *Id.* ¶¶ 26–28, 43–44, 69, 71–76, 81, 97–100.

- **West Refused.**  West refused to sell its "public law database" to ROSS for use against West.  *Id.* ¶¶ 27, 69, 107.  Importantly, West does not sell its "public law database" to anyone on a standalone basis.  *Id.* ¶¶ 26, 69, 104–105.

These allegations are fatal to ROSS's claims.  The antitrust laws were not designed to force a company to sell part of its product—that it worked for years to develop, enhance, and build—to a competitor.  Especially where, as here, that competitor intends to use the product to turn around and compete against the creator.  That is the opposite of competition.

ROSS tellingly ignores the context here:  ROSS stole West's product.  The antitrust laws do not excuse that conduct.  This is why ROSS is left trying to force square peg theories into a round hole.  For instance, its refusal-to-deal claim makes no sense where ROSS pleads no prior course of dealing.  Its "tying" claim fares no better, as that requires showing that "two products" are tied together.  But here ROSS pleads only one product:  a legal search platform.  Its "sham" litigation theory—based on just two paragraphs—is far too thin to be cognizable.  And its § 1 claim—that West's terms of use constitute collusion with its own ***customers*** to harm ROSS—

defies logic. At bottom, ROSS wanted the Westlaw product, but the law does not require West to sell it. This is not a violation of the antitrust laws; it is the essence of competition.

## II. ARGUMENT

### A. ROSS Fails To Allege Anticompetitive Conduct Under § 2.

ROSS throws (and even withdraws) a variety of "anticompetitive conduct" labels at the wall in an effort to state a § 2 claim. None stick.

#### 1. ROSS's Refusal-To-Deal Claim Does Not Fit The *Aspen Skiing* Exception.

ROSS does not dispute that the Supreme Court has consistently held that a firm generally has **no duty to deal with its rivals.** *See, e.g.*, *United States v. Colgate & Co.*, 250 U.S. 300, 307 (1919); *Verizon Commc'ns Inc. v. Law Offs. of Curtis V. Trinko, LLP*, 540 U.S. 398, 407–11 (2004). Indeed, even a monopolist has "no duty to extend a helping hand to new entrants." *Olympia Equip. Leasing Co. v. W. Union Tel. Co.*, 797 F.2d 370, 376 (7th Cir. 1986). The parties further agree that:

- *Aspen Skiing* is the "leading case" on the "'limited circumstances' under which a monopolist's refusal to deal with another party will be illegal anticompetitive conduct." *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 454–55 (7th Cir. 2020) (discussing *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585 (1985)). *See* D.I. 38 at 17–18 (discussing *Viamedia* and *Aspen Skiing*).

- *Aspen Skiing* recognized an exception to the right to refuse to deal where there was a long-term **historical course of dealing** between the parties. D.I. 38 at 17–18.

- No "historical course of dealing" exists here; to the contrary, ROSS readily concedes that West has never contracted with ROSS. D.I. 24 ¶¶ 27, 69.

This should be the end of the inquiry: without a historical course of dealing alleged, there is no refusal-to-deal claim. *See, e.g.*, *Simon & Simon, PC v. Align Tech., Inc.*, 2020 WL 1975139, at *7 (D. Del. Apr. 24, 2020) ("the first requirement of *Aspen*" is a preexisting course of dealing). But ROSS does not retreat. Instead, it makes a strained, untenable argument: that *Aspen Skiing* is "broader than Westlaw suggests." D.I. 38 at 18. Ignoring Supreme Court precedent stating that

*Aspen Skiing* is "at or near the outer boundary of § 2 liability," *Trinko*, 540 U.S. at 409, ROSS relies exclusively on a Seventh Circuit case to argue that a refusal-to-deal claim may be brought without a prior course of dealing. That is incorrect. In *Viamedia*, the defendant had terminated a ***decade-long course of dealing*** with the plaintiff. 951 F.3d at 443–44. And nowhere did that court hold (or even suggest) that a historical course of dealing is not required.

Neither of ROSS's strained arguments supports any new exception in any event. ***First***, ROSS argues that West "made an important change in how it distributed its collection of public law"—meaning Westlaw went online. D.I. 38 at 18. This misses the point. The Seventh Circuit, like other courts applying *Aspen Skiing*, did not allow a claim to proceed based on the defendant making ***any*** change to its distribution strategy. The court focused on whether there was a "pre-existing relationship" between the parties that "persisted for several years," which was ***then*** followed by a unilateral refusal to continue with that relationship on the same terms. *Viamedia*, 951 F.3d at 456. ROSS alleges nothing like that here, nor can it. Presumably like most companies in existence at the time, West, long ago, went "digital." ROSS does not allege this "change" had anything to do with ROSS (which did not even exist until 2014, *see* D.I. 24 ¶ 57) or any entity like it. Nor does ROSS allege this move "cut off" or affected any rival in any way. In short: there is no anticompetitive intent that could plausibly be inferred from West's "important" decision to move its product to the Internet.

***Second***, ROSS argues West also "foregoes profitable transactions" when it refuses to deal with rivals like ROSS. D.I. 38 at 18. ROSS again misconstrues *Aspen Skiing* (and *Viamedia*'s discussion of it). In *Aspen Skiing*, the defendant's sudden refusal to deal suggested a willingness to forego profitable transactions ***because*** of the parties' prior—presumably profitable—dealing. 472 U.S. at 610–11. As this Court has stated, "the presumption of profitability emerges only from

3

evidence of a 'long-term business relationship.'" *Blix Inc. v. Apple, Inc.*, 2020 WL 7027494, at *7 (D. Del. Nov. 30, 2020). Simply put: there are no allegations of a prior course of dealing here. Thus, there can be no refusal-to-deal claim. *Id.* at *7.

2. ROSS's Tying Claim Fails Because It Does Not Identify Two Products.

ROSS's "tying" theory requires this Court to conclude that ROSS has sufficiently alleged that a legal search platform is really two products—despite ROSS's admission in its Counterclaims that it has never been sold that way before. This is why ROSS's *lead* argument, remarkably, is to ask this Court to ignore plausibility and leave common sense at the door. D.I. 38 at 13. But when evaluating a motion to dismiss, the Court must determine whether a plaintiff has stated a "plausible claim for relief," which "requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). ROSS pleads neither a plausible claim, nor one that comports with common sense.

The essence of a tying claim is that an alleged monopolist forces buyers to purchase a less desirable product by "tying" it to another in-demand product. There can be no "tying" claim when there is only *one* product. Thus, ROSS must allege facts showing that *two separate products* are at issue. ROSS concedes its allegations must satisfy "the separate products test." D.I. 38 at 14. That test asks whether there is sufficient demand "in the eyes of *buyers*" for the tied product "*separate from*" the purchase of the tying product. *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 19–22 (1984) (emphasis added). Here, ROSS comes nowhere close to alleging consumer demand for legal search tools (the purportedly "tied" product) *separate from* a "public law database" (the alleged "tying" product). Quite the opposite: ROSS pleads that even it only ever sold *one product* of a combined database and legal search tool.

*First*, in considering whether an antitrust plaintiff has alleged sufficient direct evidence of demand for a tied product, courts examine whether there are allegations of it ever having been sold

4

separately. *See, e.g.*, *Kaufman v. Time Warner*, 836 F.3d 137, 145 (2d Cir. 2016) (affirming dismissal after finding "[n]otably lacking" "any allegation that there has ever been separate sales" of the allegedly tied product). Unsurprisingly, in each tying case ROSS cites, the tied products were sold separately at some point by some party. *See, e.g.*, *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 462 (1992) (products were "sold separately in the past and still are sold separately"); *Jefferson Parish*, 466 U.S. at 22 (selecting tied product separate from tying product was "particularly frequent"); *United States v. Microsoft Corp.*, 253 F.3d 34, 88 (D.C. Cir. 2001) (undisputed that "many consumers demand" alternative tied product and industry generally allowed tied product to be uninstalled); *Allen-Myland, Inc. v. Int'l Bus. Machs. Corp.*, 33 F.3d 194, 212 (3d Cir. 1994) (selling tied product separately was "conclusive evidence" of demand). ROSS, in contrast, does not allege that *any* party has *ever* sold legal search tools that are not connected to a database.

Instead, ROSS argues it has alleged direct evidence of demand for legal search tools by pointing to unspecified "praise" and "widespread support" for its product. But general enthusiasm for ROSS's product fails to plead what is critical here: that "[a]t least some consumers would purchase" search tools alone—without being connected to a database. *Kodak*, 504 U.S. at 463. In fact, ROSS's allegations make clear there is decidedly *no interest* in legal search tools disconnected from a database of cases and statutes:

- After expressing "widespread support" for ROSS's "AI-based legal search product," customers "then [] asked what digital public law collection was connected to the legal search engine." D.I. 24 ¶¶ 68–69.

- Despite having a "valuable" search engine, ROSS's "customer needed" a more "comprehensive" database than the one "connected to [its] search engine." *Id.* ¶ 73.

- Legal search tools are only "valuable" if "the consumer [can] combine the tools with a public law database." *Id.* ¶ 79.

5

Nor is separate demand evidenced by the purported anonymous statement that "combining ROSS's search engine with Westlaw's database would produce a better platform than anything available on the market." D.I. 38 at 15. A car shopper may dream of combining the seating capacity of a minivan with the speed of a Porsche, but that does not mean a driver has any interest in buying a passenger seat without a car attached. Rather, it confirms what ROSS consistently pleads: there is no demand for a search tool that is not combined with a legal database to search.

*Second*, ROSS's allegations of "indirect" evidence fares no better. Allegations that venture capitalists invested in ROSS—a company which only ever sold search tools **combined with** a database—do not show demand (even indirectly) for legal search tools alone. Nor do ROSS's allegations that various bar associations and corporate clients expressed interest in "innovations that improve the affordability, effectiveness, efficiency, and accessibility of legal services." *See, e.g.*, D.I. 24 ¶¶ 59–62, 79. It is not surprising that these entities would be interested in more affordable and effective service, if it existed. But it is also not relevant: these statements say nothing about a desire to purchase legal search tools without being connected to something to search. Thus, ROSS's tying theory fails to state a claim because only *one product* is at issue.[1]

3.   ROSS Fails To Plead Any Other Theory Of "Anticompetitive Conduct."

Finally, ROSS tries to cram a § 2 claim into the exceedingly narrow "sham litigation" theory. D.I. 38 at 12. As a preliminary matter, ROSS incorrectly states that West "does not dispute" that ROSS has sufficiently pled a § 2 claim under this theory. *Id*. at 1. In fact, West moved to dismiss ROSS's § 2 claim for failure to identify *any* actionable "exclusionary conduct,"

---

[1]  In a single footnote, ROSS suggests its tying theory sufficiently states a claim under § 1, in addition to § 2. D.I. 38 at 16 n.2. But a § 1 claim fails for the same reasons as the § 2 claim. *See, e.g.*, *Allen-Myland*, 33 F.3d at 211 (applying *Jefferson Parish* "separate demand" test to § 1 tying claim). And contrary to ROSS's assertion, West has not improperly "conflate[d]" the issues of products and markets. D.I. 38 at 16. As *Jefferson Parish* makes clear, "a tying arrangement cannot exist unless two *separate product markets* have been linked." 466 U.S. at 21 (emphasis added).

6

regardless of "how ROSS tries to spin it." D.I. 28 at 8–9. Contrary to ROSS's suggestion, there is no separate "sham litigation" Count in the Counterclaims. It is hardly mentioned at all, other than sentence fragments in two paragraphs (of 180), neither of which identify even *a single "sham" lawsuit*.[2] *See* D.I. 38 at 12 (citing D.I. 24 ¶¶ 110, 111). Instead, ROSS vaguely alleges West has "a long practice of aggressively pursuing" "objectively baseless" copyright infringement claims. D.I. 24 ¶¶ 110–111.

The "sham litigation" theory is a rare exception to the well-established principle that filing a lawsuit cannot violate the antitrust laws. *See, e.g.*, *Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 56–57 (1993) ("*PRE*"). To establish that litigation is a "sham," it must be: (1) objectively baseless—meaning "no reasonable litigant could realistically expect success on the merits;" and (2) brought with an improper motivation. *Id.* at 60–61.[3] Any party alleging this theory "faces an uphill battle." *In re Wellbutrin XL Antitrust Litig. Indirect Purchaser Class*, 868 F.3d 132, 147 (3d Cir. 2017). With its threadbare, two-paragraph set of allegations, ROSS has not pled anything close to sufficient facts to overcome this "high hurdle." *Id.* at 149.

*First*, ROSS does not allege West ever filed a lawsuit that "no reasonable litigant" would expect to win. To the contrary, ROSS pleads that users "risk[] a copyright lawsuit" when they fail to use West's materials "in legitimate ways," and that "it is not difficult for Westlaw to find a way to sue [] for copyright infringement." D.I. 24 ¶ 110. *Second*, ROSS fails to plead any plausible

---

[2] Nor is West barred by local rules from responding to the "sham litigation" arguments "raised in [ROSS's] answering brief." *F'Real Foods, LLC v. Hamilton Beach Brands, Inc.*, 2020 WL 4932223, at *1 (D. Del. June 24, 2020). This is particularly true where, as here, ROSS's pleading lacks any detail that would support application of this narrow theory.

[3] ROSS cites only *PRE*, which "applies to the evaluation of a single suit." *Hanover 3201 Realty, LLC v. Vill. Supermarkets, Inc.*, 806 F.3d 162, 180 (3d Cir. 2015). For the reasons stated herein, ROSS's allegations would also fail the *California Motor* test for "a series" of suits, as ROSS similarly fails to allege any suits were filed "without regard to merit" or for an improper purpose. *Id.* at 179 (discussing *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508 (1972)).

improper intent.  Intent may be established where, for instance, a party is "indifferent to the outcome on the merits."  *F.T.C. v. AbbVie Inc.*, 976 F.3d 327, 360 (3d Cir. 2020).  ROSS pleads the opposite:  that West seeks to "extend its alleged copyrights," maintain "control over the full content" of material, and "police" its "platform access policies."  D.I. 24 ¶¶ 110–111.  Thus, any claim based on ROSS's "sham litigation" theory must be dismissed.  *See, e.g.*, *3Shape Trios A/S v. Align Tech., Inc.*, 2019 WL 3824209, at *5–6 (D. Del. Aug. 15, 2019), *report and recommendation adopted*, 2019 WL 4686614 (D. Del. Sept. 26, 2019).

      **B.**     **ROSS's § 1 Claim Fails Because ROSS Only Pleads Unilateral Conduct.**

ROSS does not dispute that unilateral conduct is not actionable under § 1.  Nor does ROSS dispute that § 1 requires an agreement between two or more parties.  Instead, ROSS now argues that West's agreements ***with its own customers*** "represent the 'contract' that satisfies" § 1.  D.I. 38 at 12.  That is not enough.

To state a § 1 claim, ROSS must "plausibly allege an agreement ***in furtherance of a common scheme***."  *Lenovo (United States) Inc. v. Interdigital Tech. Corp.*, 2021 WL 1123101, at *6 (D. Del. March 24, 2021) (emphasis added).  Stated differently, ROSS must allege that ***all*** parties to the agreement had "a ***unity of purpose*** or a ***common design*** and understanding, or a ***meeting of minds*** in an ***unlawful arrangement***."  *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 771 (1984) (emphasis added) (internal citation omitted).

Here, not a single allegation suggests that any of West's customers—*i.e.*, law students, lawyers, law clerks, and judges—had a "meeting of minds" to conspire with West to achieve an unlawful objective.  To the contrary, ROSS alleges that customers are "forced" to agree to West's licensing terms through a "contract of adhesion."  D.I. 24 ¶¶ 34, 76, 103, 105.  It "borders on frivolous" to now argue that parties who are "forced" to sign a contract somehow have a "unity of purpose" or "common design and understanding" with West.  *Talley v. Christiana Care Health*

8

*Sys.*, 2018 WL 4938566, at *5 n.5 (D. Del. Oct. 11, 2018).  Moreover, the "mere fact that [West] stated its policy and [customers] complied" fails to allege concerted action under § 1.  *See Insulate SB, Inc. v. Advanced Finishing Sys., Inc.*, 797 F.3d 538, 545–46 (8th Cir. 2015); *see also Roland Mach. Co. v. Dresser Indus. Inc.,* 749 F.2d 380, 393 (7th Cir. 1984) ("mere announcement of [a] policy, and the carrying out of it by canceling [a] noncomplying dealer, would not establish an agreement"); *Am. Airlines v. Christensen*, 967 F.2d 410, 413–14 (10th Cir. 1992) ("mere fact that its members accepted those terms does not generate the kind of concerted action needed to violate Section 1.").

Merely identifying a contract does not state a § 1 claim; but that is all ROSS has done here.[4] *See, e.g.*, *Lenovo*, 2021 WL 1123101, at *6–7 (dismissing § 1 claim for failure to plead concerted action); *Talley*, 2018 WL 4938566, at *5–6 (same).

### C. ROSS's State Law Claims Should Be Dismissed For Failure To State A Claim.

Neither of ROSS's state law claim can survive dismissal, either.  ***First***, ROSS's California claim is premised on violation of:  (1) the Sherman Act and (2) the Copyright Act.  ROSS does not dispute that it has not actually alleged any violation of the Copyright Act, so its state claim on that basis must fail.  With regard to the Sherman Act, ROSS argues its California claim can survive even if its antitrust claims fail because its "copyright misuse" defense suggests a violation of the

---

[4] The cases ROSS cites are inapposite.  *Allen-Myland* is a § 1 tying case; ROSS's tying theory fails for the reasons stated previously.  33 F.3d 194.  And *ZF Meritor, LLC v. Eaton Corp.* is an exclusive dealing case, not at issue here.  696 F.3d 254 (3d Cir. 2012).  Nor does *ZF Meritor* stand for the broad proposition ROSS suggests—*i.e.*, that ***any*** customer contract satisfies the "concerted action" requirement of § 1.  In that case, the defendant contracted with four customer distributors, each of whom "worked with [the defendant] to develop a strategy to combat [the plaintiff's] growth."  *Id.* at 266.  Through the exclusive dealing contracts, each of the four customers agreed to "impose[] price penalties on [downstream customers] that selected [plaintiff's] products, 'force fed' [defendant's] products to customers, and sought to persuade [plaintiff's customers] to shift to [defendant]."  *Id.*  Such conduct is a far cry from that alleged here:  that thousands of lawyers, law clerks, and judges merely agreed to West's "contract of adhesion," which prohibits unbundling West's database or violating its copyrights.

"policy or spirit" of the antitrust laws. D.I. 38 at 19. This is incorrect. Where *the same conduct* forms the basis of both claims, the conduct cannot be deemed "unfair" for the California claim if it is "deemed reasonable and condoned under the antitrust laws." *Chavez v. Whirlpool Corp.*, 113 Cal. Rptr. 2d 175, 184 (Cal. Ct. App. 2001). For good reason: "[t]o permit a separate inquiry into essentially the same question" would "invite conflict and uncertainty and could lead to the enjoining of procompetitive conduct." *Id.* ROSS does not dispute that its Sherman Act claims are based on the same conduct alleged to support its "copyright misuse" defense. D.I. 24 ¶¶ 138–146, 153, 162. Thus, ROSS's California claim fails for the same reasons as its antitrust claims.

*Finally*, ROSS's Delaware claim fails, as ROSS does not allege that West dissuaded any party from entering a business relationship with ROSS that it was otherwise prepared to enter.[5] While ROSS "need not name specific parties" yet, it still must plead enough facts so the Court can "reasonably infer that specific parties were involved." *You Map, Inc. v. Snap Inc.*, 2021 WL 106498, at *9 (D. Del. Jan. 12, 2021) (internal citations omitted). This, ROSS fails to do. But more fundamentally, ROSS fails to allege that West "wrongfully interfered" with any business relationship. ROSS merely alleges that it would have had more success if it had access to West's "public law database" because customers preferred it. As explained previously, creating a superior product and winning customers as a result is not "unfair" competition.

## III.   CONCLUSION

West requests that ROSS's federal antitrust and state unfair competition claims be dismissed with prejudice.

---

[5] Although ROSS suggests a more lenient standard applies, the two cases it points to cite the same general requirements set forth in West's opening brief. D.I. 38 at 20; *see also EDIX Media Grp. v. Mahani*, 2006 WL 3742595, at *11 n.47 (Del. Ch. Dec. 12, 2006); *Accenture Glob. Servs. GmbH v. Guidewire Software Inc.*, 581 F. Supp. 2d 654, 664 (D. Del. 2008).

|  |  |
|---|---|
| | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
| | */s/ Michael J. Flynn* |
| OF COUNSEL: | Jack B. Blumenfeld (#1014)<br>Michael J. Flynn (#5333)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE  19899<br>(302) 658-9200<br>jblumenfeld@morrisnichols.com<br>mflynn@morrisnichols.com |
| Dale M. Cendali<br>Joshua L. Simmons<br>Eric A. Loverro<br>KIRKLAND & ELLIS LLP<br>601 Lexington Avenue<br>New York, NY  10022<br>(212) 446-4800 | |
| | *Attorneys for Plaintiffs and Counterdefendants Thomson Reuters Enterprise Center GmbH and West Publishing Corporation* |

Daniel E. Laytin
Christa C. Cottrell
Cameron Ginder
Alyssa C. Kalisky
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL  60654
(312) 862-2000

Megan McKeown
KIRKLAND & ELLIS LLP
609 Main Street
Houston, TX  77002
(713) 836-3600

May 13, 2021

11

## CERTIFICATE OF SERVICE

I hereby certify that on May 13, 2021, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on May 13, 2021, upon the following in the manner indicated:

| | |
|---|---|
| David E. Moore, Esquire<br>Stephanie E. O'Byrne, Esquire<br>POTTER ANDERSON & CORROON LLP<br>Hercules Plaza, 6th Floor<br>1313 North Market Street<br>Wilmington, DE  19801<br>*Attorneys for Defendant and Counterclaimant* | *VIA ELECTRONIC MAIL* |
| Joshua M. Rychlinski, Esquire<br>Mark A. Klapow, Esquire<br>Lisa Kimmel, Esquire<br>CROWELL & MORING LLP<br>1001 Pennsylvania Avenue NW<br>Washington, DC  20004<br>*Attorneys for Defendant and Counterclaimant* | *VIA ELECTRONIC MAIL* |
| Gabriel M. Ramsey, Esquire<br>Kayvan M. Ghaffari, Esquire<br>Jacob Canter, Esquire<br>Warrington Parker, Esquire<br>CROWELL & MORING LLP<br>3 Embarcadero Center, 26th Floor<br>San Francisco, CA  94111<br>*Attorneys for Defendant and Counterclaimant* | *VIA ELECTRONIC MAIL* |

/s/ *Michael J. Flynn*

_____

Michael J. Flynn (#5333)