**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION, | ) ) ) | C.A. No. 20-613-LPS |
| | ) | |
| Plaintiffs/Counterdefendants, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| v. | ) | |
| | ) | |
| ROSS INTELLIGENCE INC., | ) | |
| | ) | |
| Defendants/Counterclaimant. | ) | |

**NOTICE OF DOCUMENT SUBPOENA TO LEGALEASE SOLUTIONS, LLC**

PLEASE TAKE NOTICE that pursuant to Federal Rule of Civil Procedure 45, Defendant and Counterclaimant ROSS Intelligence, Inc. will serve the attached Subpoena to Produce Documents, Information, or Objects in a Civil Action on LegalEase Solutions, LLC requesting that it produce the specified documents and things for inspection and copying at the time and location noticed in the subpoena or at a time and location as may be agreed upon by counsel.

OF COUNSEL:

Gabriel M. Ramsey
Warrington Parker
Kayvan M. Ghaffari
Jacob Canter
CROWELL & MORING LLP
3 Embarcadero Center, 26th Floor
San Francisco, CA 94111
Tel:  (415) 986-2800

Mark A. Klapow
Lisa Kimmel
Joshua M. Rychlinski
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC  20004
Tel:  (202) 624-2500

Dated:  May 17, 2021

POTTER ANDERSON & CORROON LLP

By:  _/s/ Stephanie E. O'Byrne_____
     David E. Moore (#3983)
     Stephanie E. O'Byrne (#4446)
     Hercules Plaza, 6th Floor
     1313 N. Market Street
     Wilmington, DE  19801
     Tel:  (302) 984-6000
     dmoore@potteranderson.com
     sobyrne@potteranderson.com

*Attorneys for Defendant/Counterclaimant*
*ROSS Intelligence, Inc.*

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Delaware ▼

| | |
|---|---|
| Thomson Reuters Enterprise Centre GmbH, et al. | ) |
| _____ | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. 1:20-cv-00613-LPS |
| ROSS Intelligence, Inc. | ) |
| _____ | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:          LegalEase Solutions, LLC c/o Tariq Hafeez
          2723 South State Street, Suite 150, Ann Arbor, MI 48104

*(Name of person to whom this subpoena is directed)*

☛ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Exhibit A

| | |
|---|---|
| Place: Kayvan Ghaffari c/o Hansen IP Law PLLC<br>2550 Telegraph Road, Suite 112<br>Bloomfield Hills, Michigan 48302 | Date and Time:<br><br>06/17/2021 10:00 am |

❑ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| | |
|---|---|
| Place: | Date and Time: |
| | |

        The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:     05/17/2021

| | | |
|---|---|---|
| *CLERK OF COURT* | | |
| | OR | *Kayvan M. Ghaffari* |
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
ROSS Intelligence, Inc. _____ , who issues or requests this subpoena, are:
Kayvan Ghaffari, Crowell & Moring LLP, 3 Embarcadero Ctr., 26th Flr, SF, CA 94111; kghaffari@crowell.com;
415.365.7223

## Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 1:20-cv-00613-LPS

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____      _____
                                               *Server's signature*

                                    _____
                                               *Printed name and title*

                                    _____
                                               *Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 **(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## ATTACHMENT A

### DEFINITIONS

Insofar as any of the terms below are used herein, the following definitions shall apply:

1.      "PLAINTIFFS" as used herein means THOMSON REUTERS and WEST.

2.      The term "THOMSON REUTERS" as used herein means Plaintiff / Counterdefendant Thomson Reuters Enterprise Centre GMBH, and its present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on its behalf.

3.      The term "WEST" as used herein means Plaintiff / Counterdefendant West Publishing Corporation and its present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on its behalf.

4.      The terms "YOU," "YOUR," mean and refer to LegalEase Solutions, LLC, and any of its former or current parents, subsidiaries, predecessors, successors, affiliated entities, controlled entities, joint ventures, related entities, agents, attorneys, employees, interns, representatives, assigns, directors, or officers and all other PERSONS acting or purporting to act on their behalf, including without limitation the entity LegalEase Solutions India Pvt. Ltd. and Codematrix Solutions Pvt. Ltd.

5.      "WESTLAW" means the product that YOU licensed to conduct legal research.

6.      "WESTLAW PRODUCT" has the same meaning as the term "Westlaw product" used in the COMPLAINT ¶ 1.

7.      "WESTLAW CONTENT" has the same meaning as the term "Westlaw content" as used in the COMPLAINT ¶ 1.

8.      "WKNS" or "KEY NUMBER SYSTEM" means the Westlaw Key Number System as discussed in the COMPLAINT.

9. "HEADNOTES" means the West Headnotes as discussed in the COMPLAINT.

10. "WESTLAW DATABASE" has the same meaning as "database" referenced in the COMPLAINT ¶ 15.

11. The terms "ROSS," "DEFENDANT," and "COUNTERCLAIMANT," as used herein means ROSS Intelligence, Inc., and its present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on its behalf.

12. "COMPLAINT" means the Complaint filed by PLAINTIFFS in this litigation in the United Stated District Court for the District of Delaware on May 6, 2020 (D.I. 1). The COMPLAINT is attached as **Appendix A**.

13. "LEGALEASE MATTER" means the litigation filed in the United States District Court for the District of Minnesota, docketed at 18 Civ. 1445, and bearing the caption *West Publishing Corp. v. LegalEase Solutions, LLC*. The LEGALEASE COMPLAINT means the complaint filed by West Publishing Corp. in the LEGALEASE MATTER, which is attached as **Appendix B**.

14. "LEXISNEXIS" as used herein means LEXISNEXIS Group, Inc., and its present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on its behalf, including without limitation RELX Group plc and Matthew Bender & Company Inc.

15. The terms "DOCUMENT" or "DOCUMENTS" is used in the broadest sense permissible under the Federal Rules of Civil Procedure and shall include, without limitation any written, printed, typed, recorded, or graphic matter, however produced, reproduced, or stored, including the originals and all nonidentical copies, whether different from the originals by reason of any notations made on such copies or otherwise, in the actual or constructive possession, custody, or control of PLAINTIFFS, including without limitation contracts, letter agreements,

- 2 -

records, correspondence, COMMUNICATIONS, electronically stored information, emails, tweets, blog or Internet forum posts or comments, text messages on portable devices, Blackberry Messenger messages, SMS messages, instant messenger messages (e.g. Skype, Slack, etc.), memoranda, handwritten notes, source code, object code, binaries and associated files and/or structures, source code comments, source repository logs, server logs, records or summaries of negotiations, records or summaries of interviews or conversations, audio or video recordings, copies of video games, all Internet-based media, photographs, corporate minutes, diaries, telephone logs, instant messaging logs, chat room logs, schedules, drawings, product storyboards, product mockups, statistical statements, work papers, disks, data cards, films, data processing files, charts, graphs, microfiche, microfilm, contracts, notices, reports, recitals, statements, worksheets, abstracts, resumes, summaries, jottings, market data, books, journals, ledgers, audits, maps, diagrams, research documents, newspapers, appointment books, desk calendars, project management charts (e.g., Gantt charts), task management records (e.g., to-do lists), expense reports, computer printout and other computer readable or electronic records, and all drafts or modifications thereof, and all non-identical copies of any such items. Any such DOCUMENT with any sheet or part thereof bearing any marks, such as initials, stamped indices, comments or notations, or any character or characters, that are not part of the signed text or photographic reproduction thereof is to be considered as a separate DOCUMENT. Where there is any question about whether a tangible item otherwise described in these requests falls within the definition of "DOCUMENT(S)," such tangible item shall be produced.

16.     The terms "COMMUNICATION" or "COMMUNICATIONS" mean any manner or method in which information is communicated from one human being to another, including, but not limited to, any means of transmission, sending, and/or receipt of information of any kind, such as speech, writing, language, nonverbal signals, computer electronics of any kind, magnetic tape, video tape, photographs, graphs, symbols, magnetic disks, sound, radio and/or video signal,

- 3 -

telephone, teletype, telecommunication, telegram, microfilm, microfiche, photographic film of any type, and/or media of any kind.

17.     "AND" and "OR" and "BETWEEN" and "AMONG" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of a request all information that otherwise might be construed to be outside of its scope.

18.     "ANY" shall mean any or all and the term "ALL" shall mean any or all.

19.     "IDENTIFY" means to provide a description sufficient in specificity such that the document or thing can be unambiguously obtained by means of such description in a request for production pursuant to Rule 34 of the Federal Rules of Civil Procedure, which will include, whether applicable, the document's or thing's title, date, author(s) or creator(s), recipient(s), Bates number, and present location.

20.     "INCLUDING" means not limited to.

21.     The terms "PERSON" and "PERSONS" means any individual, corporation, partnership, association, organization, or other entity of any type or nature.

22.     The terms "RELATE TO," "RELATED TO," AND "RELATING TO" mean constituting, pertaining to, in connection with, reflecting, respecting, regarding, concerning, referring to, based upon, stating, showing, evidencing, establishing, supporting, negating, contradicting, describing, recording, noting, embodying, memorializing, containing, mentioning, studying, analyzing, discussing, specifying, identifying or in any manner logically, factually, indirectly or directly, or in any other way connecting to the matter addressed, in whole or in part.

23.     The singular form of a noun or pronoun shall be considered to include within its meaning the plural form of the noun or pronoun, and vice versa; and the past tense shall include the present tense where the clear meaning is not distorted. The term "or" shall mean "and" and vice-versa, as necessary to bring within the scope of the following requests all information or DOCUMENTS that would be excluded absent this definition.

## **INSTRUCTIONS**

- 4 -

1.      LegalEase shall IDENTIFY, produce, AND permit the visual inspection AND reproduction of the following DOCUMENTS, electronically stored information, AND things which are in its possession, custody, or control, INCLUDING DOCUMENTS, electronically stored information, AND things in the actual OR constructive possession of LegalEase, its attorneys, experts, AND anyone else acting on its behalf.  The production and visual inspection shall take place at Crowell & Moring LLP, 3 Embarcadero Center, 26th Fl., San Francisco CA 94111 (or such other place as may be stipulated by the parties).

2.      These requests are not limited by time unless stated within the request itself.

3.      Unless otherwise stated, the geographic scope covered by these requests is worldwide.

4.      If LegalEase claims that ANY DOCUMENT, tangible object, OR other thing responsive to ANY request was once in its possession, custody OR control AND has since been lost, discarded, destroyed, deleted, relinquished, OR disposed in some other manner, LegalEase shall IDENTIFY with particularity each such DOCUMENT AND set forth:

> (a) The date the DOCUMENT was lost, discarded, destroyed, deleted, relinquished, OR disposed;
>
> (b) The circumstances under which the DOCUMENT was lost, discarded, destroyed, deleted, relinquished, OR disposed; AND
>
> (c) The identity of ALL PERSONS who had knowledge of, OR were present when, the DOCUMENT was lost, discarded, destroyed, deleted, relinquished, OR disposed, as well as ALL PERSONS who authorized such actions.

5.      In the event that LegalEase contends that ANY DOCUMENT responsive to ANY discovery request below is privileged or otherwise excludable from discovery, LegalEase shall:

> (a) IDENTIFY each such DOCUMENT by date, author(s), signer(s), intended recipient(s), AND addressee(s);

- 5 -

(b), IDENTIFY each PERSON to whom a copy was furnished OR to whom the information OR advice was conveyed;

(c) state the general subject matter of the DOCUMENT; AND

(d) state the ground on which the claim of privilege OR immunity from disclosure is based.

Failure to do so will constitute a waiver of such a claim.

6.     If LegalEase claims a privilege OR immunity with regard to ANY DOCUMENT responsive to ANY discovery request below, LegalEase should nevertheless produce ALL portions of such DOCUMENT that contains information not appropriately subject to a claim of privilege OR immunity.

7.     These requests are continuing in nature under Rule 26(e) of the Federal Rules of Civil Procedure.  If, at ANY time prior to the completion of the above-captioned matter, LegalEase obtains OR becomes aware of additional DOCUMENTS, tangible objects, AND things responsive to these requests, LegalEase shall promptly supplement its response to provide such DOCUMENTS, tangible objects, AND things to ROSS.

SFACTIVE-906063701.1

## Requests for Production of Documents and Things

### REQUEST FOR PRODUCTION NO. 1:

ALL DOCUMENTS AND COMMUNICATIONS provided to WEST regarding ROSS in connection with the LEGALEASE MATTER.

### REQUEST FOR PRODUCTION NO. 2:

ALL DOCUMENTS AND COMMUNICATIONS, including interrogatory and document request responses, YOU provided to WEST in connection with the LEGALEASE MATTER.

### REQUEST FOR PRODUCTION NO. 3:

ALL DOCUMENTS AND COMMUNICATIONS, including interrogatory and document request responses, WEST provided to YOU in the LEGALEASE MATTER.

### REQUEST FOR PRODUCTION NO. 4:

ALL transcripts of depositions taken in the LEGALEASE MATTER.

### REQUEST FOR PRODUCTION NO. 5:

ALL DOCUMENTS RELATING TO ROSS.

### REQUEST FOR PRODUCTION NO. 6:

ALL subscription agreements, research subscriber agreements, OR other agreements, including modifications OR renewals, with WEST.

### REQUEST FOR PRODUCTION NO. 7:

ALL DOCUMENTS AND COMMUNICATIONS RELATING TO ANY subscription agreements, research subscriber agreements, OR other agreements, including modifications, OR renewals, with WEST.

- 7 -

**REQUEST FOR PRODUCTION NO. 8:**

ALL DOCUMENTS OR COMMUNICATIONS RELATING to the use of a "bot" OR "other automated electronic method" as referenced in ¶¶ 48-53 of the LEGALEASE COMPLAINT.

**REQUEST FOR PRODUCTION NO. 9:**

ALL DOCUMENTS AND COMMUNICATIONS RELATING TO how YOU used WESTLAW to gather legal research AND legal analytics for YOUR clients, including ROSS.

**REQUEST FOR PRODUCTION NO. 10:**

ALL DOCUMENTS AND COMMUNICATIONS RELATING TO how YOU used ANY LEXISNEXIS product to gather legal research AND legal analytics for YOUR clients, including ROSS.

**REQUEST FOR PRODUCTION NO. 11:**

ALL DOCUMENTS AND COMMUNICATIONS RELATING TO how YOU used ANY other legal research provider OR legal text database aside from ANY LEXISNEXIS product AND WESTLAW to gather legal research AND legal analytics for YOUR clients, including ROSS.

**REQUEST FOR PRODUCTION NO. 12:**

ALL DOCUMENTS AND COMMUNICATIONS RELATING TO ANY directions OR instructions YOU provided any of YOUR employees, contractors, OR ANY third parties, including but not limited to Kelly Services, Morae Global, Clutch Group, AND LegalEase India, including but not limited to ANY directions OR instructions RELATING TO the work YOU performed for ROSS.

- 8 -

**REQUEST FOR PRODUCTION NO. 13:**

ALL DOCUMENTS AND COMMUNICATIONS RELATING TO WEST'S January

2018 termination of YOUR Subscription Agreement.

**REQUEST FOR PRODUCTION NO. 14:**

All settlement agreements between YOU and WEST.

**REQUEST FOR PRODUCTION NO. 15:**

All DOCUMENTS CONCERNING COMMUNICATIONS between YOU and

PLAINTIFFS from May 5, 2020 to the present.

- 9 -

# APPENDIX A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | C.A. No. _____ |
| | ) | |
| v. | ) | **DEMAND FOR JURY TRIAL** |
| | ) | |
| ROSS INTELLIGENCE INC., | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiffs Thomson Reuters Enterprise Centre GmbH ("Thomson Reuters") and West Publishing Corporation ("West") (collectively, "Plaintiffs"), for their Complaint, hereby allege against Defendant ROSS Intelligence Inc. ("ROSS") as follows:

## NATURE OF THE ACTION

1.       Plaintiffs created and nurtured their well-known Westlaw product since its inception, including without limitation its unique West Key Number System ("WKNS") and West Headnotes (collectively, "Westlaw Content"). ROSS is attempting to create a business by taking for itself critical features of Westlaw, without permission from or compensation to Plaintiffs. Upon information and belief, ROSS illicitly and surreptitiously used a then-Westlaw licensee to acquire access to and copy Plaintiffs' valuable content. ROSS did so, not for the purposes of legal research, but to rush out a competing product without having to spend the resources, creative energy, and time to create it itself. The net result is that Plaintiffs are now being put in the unfair position of having to compete with a product that they unknowingly helped create.

2.      This action seeks to recover damages that Plaintiffs have suffered and to prevent the irreparable harm that continues to threaten them as a result of ROSS's deceitful and willful copying of Plaintiffs' copyrighted content and organization, as well as ROSS's tortious interference with contract.

3.      Specifically, upon information and belief, ROSS intentionally and knowingly induced a third-party called LegalEase Solutions, LLC ("LegalEase")—a legal support services company—to breach its contract with West by engaging in the unlawful reproduction of Plaintiffs' copyrighted content and distribution of that content *en masse* to ROSS.  ROSS did so after asking for and explicitly being denied access to Westlaw by West on the basis that West does not give competitors access to its products.  Thus, ROSS induced LegalEase to engage in this unlawful activity, knowing that it violated the terms of LegalEase's contract with West and that West would not grant ROSS a license to use Plaintiffs' content to create a competing product.    ROSS committed direct copyright infringement by reproducing and creating a derivative work based on Plaintiffs' content, and is also secondarily liable for LegalEase's copyright infringement.

4.      In short, ROSS has engaged, and continues to engage, in a pattern and practice of knowingly, intentionally, and willfully infringing Plaintiffs' copyrights.  Further, it is obvious from the roundabout and deceitful tactics ROSS employed to gain access to Westlaw, , that it was aware what it was doing was improper, and without authorization or consent from the Plaintiffs.

5.      Hence, due to ROSS's blatant and willful infringement, Thomson Reuters and West file this lawsuit seeking injunctive relief and damages that they have suffered as a result of ROSS's direct, contributory, and vicarious copyright infringement under the Copyright Act of

1976, 17 U.S.C. § 101 *et. seq.*, and intentional and tortious interference with contractual relations.

## PARTIES

6.      Plaintiff Thomson Reuters Enterprise Centre GmbH is a limited liability company having its principal place of business in Zug, Switzerland.  It is the owner of the copyrights in and to Westlaw Content.

7.      Plaintiff West Publishing Corporation is a Minnesota corporation having its principal place of business at 610 Opperman Drive, Eagan, Minnesota 55123.  West creates and authors Westlaw Content.

8.      Defendant ROSS Intelligence Inc. is a corporation organized and existing under the laws of the State of Delaware and having an office in San Francisco, California.

## JURISDICTION AND VENUE

9.      This action arises under the Copyright Act of 1976, 17 U.S.C. § 101 *et. seq.* and Delaware law.  This Court has jurisdiction under 28 U.S.C. §§ 1331, 1338 and 1367.

10.      Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400.

## ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

**I.      Plaintiffs and the Creativity of Westlaw**

11.      Plaintiffs are well-known as industry leaders in online legal research.  Westlaw, in particular, offers to West's subscribers access to a comprehensive collection of legal information that is easily searchable through keywords, natural language, and/or Boolean inquiries, backed by a rigorous editorial process that makes navigating the legal field simple.  Editorial enhancements, such as Plaintiffs' proprietary West Headnotes, notes of decisions, and the WKNS are but a few examples of the creative and original material authored by West's dedicated attorney-editors.  Westlaw makes legal research seamless through its well-designed

structure, sequence, and organization.  Below is Westlaw's home page, which helps subscribers easily navigate to the exact information for which they are looking.

**Westlaw's Home Page**



12.     Integral to Westlaw is Plaintiffs' WKNS, which organizes U.S. law using a hierarchy that is unique to Plaintiffs.  The WKNS is the backbone through which thousands of lawyers conduct legal research.  The development of the WKNS, beginning in print and now in a digital format, has been and continues to be the result of Plaintiffs' numerous creative choices about how to organize cases and which cases to place in that classification, requiring substantial investments of time, technological and human resources, and money over the course of decades. Below is the WKNS home page that can be navigated by Westlaw subscribers.

**The WKNS Home Page**



13.     As an example of Plaintiffs' complex hierarchy, within the "Abandoned and Lost Property" topic are the Key Numbers "Nature and elements," "evidence and questions for jury," and "operation and effect."  Within the "Nature and elements" Key Number are Key Numbers assigned to the legal issues and points of law "In general," "Intent," and "Acts and omissions" topics.  The "In general" Key Number is delineated 1k1.1, and currently contains 603 cases. Nothing dictated the hierarchy that Plaintiffs created as cases, topics, legal issues, and points of law could be arranged in an unlimited number of combinations.

14.     As decisions are issued, West's attorney-editors—all of whom are bar-admitted— carefully review them and create original West Headnotes to describe the key concepts discussed in the case.  West's attorney-editors then integrate those West Headnotes into the WKNS so subscribers can easily find the latest decisions on any given topic or issue.  Moreover, West's attorney-editors regularly edit and revise the West Headnotes and the West Key Numbers of previously integrated cases so that subscribers can trust the accuracy and timeliness of the information that is offered.

15.     Westlaw includes access to volumes of proprietary material (such as West Headnotes, case summaries, and other Westlaw-created content), databases, and compilations of case law, state and federal statutes, state and federal regulations, law journals, treatises, and other resources—all organized and curated by West's editorial team. Westlaw incorporates decades of search and editorial intelligence with the latest technological innovations to bring its subscribers the most comprehensive legal research platform on the market. Below is an example of West Headnotes describing the key concepts discussed in the *Harper & Row* case, as well as the manner in which subscribers can see and further navigate to corresponding West Key Numbers.



16.     The WKNS adds immeasurable value to Westlaw. It is how thousands of professionals learn to navigate and conceptualize the legal field and is what helped position Westlaw as the leading legal research service.

17.     Plaintiffs take great care in deciding who they permit to access Westlaw and what those with access are allowed to do with it. Plaintiffs have invested hundreds of millions of dollars in Westlaw and thus take measures, such as those limitations set forth in West's Subscriber Agreements, to protect the proprietary nature of Westlaw Content.

18. Specifically, each of West's Subscriber Agreements with third parties—like the one it entered into with LegalEase (the "Service Agreement")—provides precisely what third parties are and are not allowed to do with Westlaw content. Critically, the Service Agreement provides that a subscriber "may not sell, sublicense, distribute, display, store or transfer [West's] products or any data in [its] products in bulk or in any way that could be used to replace or substitute for [its] products in whole or in part or as a component of any material offered for sale, license or distribution to third parties." Moreover, although a subscriber may "store, on a matter-by-matter basis, *insubstantial portions* of [Westlaw content]… in connection with an active matter being handled by Subscriber in its regular course of business," the amount stored must "(a) have no independent value other than as part of Subscriber's work product; and (b) c[an] not be used in any way in whole or in part as a substitute for any service or product provided by West." Similarly, although a subscriber may **"**on *an occasional basis* and via *Product functionality*, direct West to transmit individual documents in electronic format to… individual third parties in connection with actual, ascertainable matters being handled by Subscriber…. [a]ll other direct transmission of electronic copies by Subscriber is *prohibited*." Finally, the Service Agreement provides that a "Subscriber shall not copy, download, scrape, store, publish, post, transmit, retransmit, transfer, distribute, disseminate, broadcast, circulate, sell, resell, license, sublicense or otherwise use [Westlaw content], or any portion of [Westlaw content], in any form or by any means except as expressly permitted by [the License Grant], or as otherwise expressly permitted in writing by West."

19. As these restrictions show, although Westlaw subscribers are permitted to use Westlaw in certain ways, they are expressly prohibited from using Westlaw Content to create a competitive product or to sell the Plaintiffs' proprietary content to others. Westlaw, including

Westlaw Content, is extremely valuable, and thus West is constantly monitoring user activity for behavior that would breach the terms of its subscriber agreement—which is precisely how West discovered ROSS's unlawful infringement and covert activity.

## II.    Plaintiffs' Valuable Intellectual Property Rights in Westlaw

20.    Plaintiffs have invested vast resources, including creativity, talent, time, effort, and money, to create Westlaw Content.  West employs attorney-editors whose sole responsibility is to review decisions, create original and creative West Headnotes summarizing key points of law, and organizing those cases and West Headnotes in the WKNS.  In addition, the editors are regularly reviewing existing West Headnotes and the WKNS to ensure the greatest accuracy in light of the countless new cases that are added every day.

21.    Cases, areas of law, legal topics, legal issues, subtopics, and subissues can all be summarized and organized in a variety of different ways—the structure, sequence, and organization of the WKNS is not something that has been achieved by accident or necessity; rather, it is the result of decades of human creativity and choices.

22.    To protect Westlaw, Thomson Reuters registers the database with the United States Copyright Office every three months.  For example, attached hereto as **Exhibit A**, and incorporated herein by reference, are true and correct copies of certificates of registration issued by the Copyright Office and other documents reflecting Westlaw's registrations.  They reflect the effective date of registration, as well as the assigned registration numbers.

23.    Thomson Reuters is the sole owner and proprietor of all right, title, and interest in and to the copyrights in Westlaw.  The copyrights in Westlaw are presently valid and subsisting and were valid and subsisting at all times affecting the matters complained of herein.

## III.     ROSS Intelligence and Its Infringement of Westlaw

24.     Upon information and belief, ROSS was founded in 2015 and is engaged in the business of offering and providing to the public legal research services through its ROSS platform.

25.     Upon information and belief, ROSS first began by offering research services in both bankruptcy and intellectual property law, but now offers case law, statutes, and regulations across various practice areas and all 50 states.

26.     Upon information and belief, as the screenshot below illustrates, ROSS's users are able to search for relevant law by posing a question in natural language, as opposed to Boolean terms or key words.

### Results of Natural Language Search on ROSS



27.     Upon information and belief, similar to Westlaw, the ROSS platform provides users with case summaries and treatments, as well as allows the user to use the initial search

results as a jumping-off point to find additional cases with similar facts and/or procedural postures.

28. Upon information and belief, to create a legal research platform that could compete with Westlaw, ROSS needed to acquire vast amounts of legal content, descriptions of that content, and a means by which to organize that legal content. ROSS knew that it would not be granted access to Westlaw for such a purpose, so instead ROSS opted to gain access to Westlaw through deceitful and undisclosed tactics.

29. Upon information and belief, to develop its platform, ROSS contracted with LegalEase—a legal research and writing support services company. Because LegalEase only provides research and writing services, not a competing legal research product like ROSS does, it was able to obtain a limited license beginning in 2008 to use Westlaw to conduct legal research for customers. The Service Agreement between LegalEase and West prohibited LegalEase from running or installing any computer software on West's products or network, as well as selling, sublicensing, distributing, displaying, storing, or transferring Westlaw information in bulk to third parties.

30. For years, LegalEase's usage appeared to show that it abided by the terms of the Service Agreement. That all changed in July 2017.

31. Prior to July 2017, LegalEase had consistently averaged approximately 6,000 Westlaw transactions per month.[1] Beginning in about July 2017, LegalEase's use of Westlaw spiked dramatically, eventually reaching approximately 236,000 transactions per month, which, as shown below, is nearly a forty-fold increase over LegalEase's historical usage pattern and

---

[1] For the purposes of this complaint, a "transaction" refers to any executed search, as well as any viewing, printing, downloading, or emailing of a specific document.

represents a usage rate of nearly five times greater than the average monthly usage of the "AmLaw 100" law firms.

**LegalEase's Westlaw Usage[2]**



32.    Further investigation revealed that users of certain Westlaw credentials assigned to LegalEase were exhibiting activity that indicated that computer software, or a "bot," was being used, and that it appeared as though content from Westlaw was being downloaded and stored in bulk by said those software tools in violation of the Service Agreement.  West observed that LegalEase's software was systematically making its way through the WKNS to, upon information and belief, reproduce and store the manner in which the WKNS was organized.

33.    Upon information and belief, LegalEase implemented this automated software, materially breached its Service Agreement with West, and unlawfully reproduced and distributed the copyright-protected Westlaw Content at the direction of and to benefit ROSS.  In a July 2017 interview—the same time LegalEase's Westlaw transactions began to skyrocket—LegalEase stated that it was working with "a machine learning legal research firm," later revealed to be ROSS, to help create a new legal research product.  LegalEase explained that it was feeding

---

2        This graph is based on usage data West regularly tracks and records for its subscribers.

ROSS with "tons and tons of legal research," which, upon information and belief, was copyrighted content from Westlaw, to help create ROSS's competing product.

34.     Upon information and belief, ROSS paid LegalEase to copy the Westlaw Content from Westlaw to build ROSS's competing platform, thereby knowingly and deliberately instructing LegalEase to breach its Service Agreement with West.  Upon information and belief, LegalEase and ROSS have been working together since at least October 2015.

35.     Upon information and belief, after LegalEase copied the Westlaw Content, it distributed that content to Ross.  Ross then copied that content and used it to create its platform.

36.     By letter dated January 4, 2018, West terminated LegalEase's Service Agreement due to LegalEase's material breach and violation of the Service Agreement.  The effective date of termination was January 17, 2018.

37.     It is clear that by copying the copyright-protected Westlaw Content—piggybacking off of the creativity, countless hours, and extraordinary expense that have gone into creating Westlaw—ROSS drastically sped up its development time and reduced the cost associated with the development of its competing platform.

38.     Upon information and belief, ROSS's copying has allowed it to forego the immense expenditure of resources—including creativity, talent, time, effort, and money—that otherwise would be required to create its competing platform as the algorithms comprising ROSS's platform function in a manner analogous to those of Westlaw.

39.     Upon information and belief, unless enjoined by this Court, ROSS intends to continue to infringe upon Plaintiffs' copyrights and otherwise to profit from Plaintiffs' works. Accordingly, Plaintiffs have suffered irreparable damage.  Plaintiffs have no adequate remedy at law to redress all of the injuries that ROSS has caused, and intends to cause, by its conduct.

Plaintiffs will continue to suffer irreparable damage until ROSS's actions alleged above are enjoined by this Court.

## CLAIMS FOR RELIEF

### COUNT I
### Copyright Infringement (17 U.S.C. § 101 *et seq.*)

40.     Plaintiffs repeat and reallege each and every allegation above as if fully set forth herein.

41.     Westlaw, including, without limitation, the Westlaw Content, is original and creative.  As a result, it constitutes copyrightable subject matter under the laws of the United States.

42.     Thomson Reuters is the owner of valid copyrights in Westlaw, and the Register of Copyrights has issued certificates of registration for it.  It has complied in all respects with 17 U.S.C. § 101, *et seq.*, and has secured the exclusive rights and privileges in and to the copyrights in Westlaw Content.

43.     By its actions, alleged above, ROSS has infringed and will continue to infringe the Westlaw Content's copyrights by, *inter alia*, reproducing and creating a derivative work using the Westlaw Content without any authorization or other permission from Plaintiffs. ROSS's direct infringement of Plaintiffs' copyrights has been deliberate, willful, and in utter disregard of Plaintiffs' rights.

44.     Moreover, as LegalEase clearly infringed Plaintiffs' copyrights by reproducing and distributing the Westlaw Content to ROSS, ROSS is contributorily liable for materially and knowingly contributing to LegalEase's infringement.  Upon information and belief, ROSS induced LegalEase to infringe Plaintiffs' copyrights by directly contracting with LegalEase to reproduce and distribute Westlaw content to ROSS.  Moreover, it knew that LegalEase was

unlawfully reproducing and distributing the copyrighted Westlaw Content as ROSS received tens of thousands of documents from LegalEase containing the Westlaw Content or materials based thereon.

45.     Further, ROSS is vicariously liable for LegalEase's direct infringement.  Upon information and belief, ROSS had a financial interest in LegalEase's direct infringement, including, without limitation, significantly reducing the cost of development of its platform, procuring investments in ROSS to which ROSS was not entitled, and avoiding the cost that ROSS would have to pay to obtain this content.  LegalEase was an agent of ROSS, and ROSS exercised the requisite levels of control over the creation and distribution of the documents that LegalEase sent to ROSS to support a finding of vicarious liability.

46.     As a direct and proximate result of ROSS's wrongful conduct, Plaintiffs have been substantially and irreparably harmed in an amount not readily capable of determination. Unless restrained by this Court, ROSS will cause further irreparable injury to Plaintiffs.

47.     Plaintiffs are entitled to injunctive relief preventing ROSS, its agents and employees, and all persons acting in concert or participation with it, from engaging in any further infringement of Westlaw.

48.     Plaintiffs are further entitled to recover from ROSS the damages, including attorneys' fees and costs, they have sustained and will sustain, and any gains, profits, and advantages obtained by ROSS as a result of its acts of infringement as alleged above.  At present, the amount of such damages, gains, profits, and advantages cannot be fully ascertained by Plaintiffs, but will be established according to proof at trial.  Plaintiffs are also entitled to recover statutory damages for ROSS's willful infringement of its copyrights.

## COUNT II
## Tortious Interference with Contract

49.     Plaintiffs repeat and reallege each and every allegation above as if fully set forth herein.

50.     A valid contractual relationship between West and LegalEase existed for nearly ten years prior to ROSS's inducement of LegalEase to breach the Service Agreement.

51.     Upon information and belief, ROSS knew that LegalEase had a valid contract with West—as apparent from the fact ROSS contracted with LegalEase to obtain the password-protected and copyrighted content from Westlaw that ROSS was explicitly denied access to—and intentionally instructed LegalEase to act in breach of that contract without justification.

52.     Upon information and belief, ROSS knew that it would not be able to receive permission from Thomson Reuters or West to access Westlaw, that Westlaw was secured behind a paywall, and that LegalEase's Service Agreement did not permit the naked reproduction and distribution of copyrighted material from Westlaw.

53.     As a result of ROSS's intentional and tortious interference with West's contract with LegalEase, Plaintiffs have been damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Thomson Reuters and West respectfully request judgment in their favor and against Defendant ROSS as follows:

A.     Finding that ROSS has directly and indirectly infringed Plaintiffs' copyrights in Westlaw;

B.     Finding that ROSS's infringement of Plaintiffs' copyrights was willful;

C.     Finding that ROSS has tortiously interfered with West's contract with LegalEase;

Case 1:20-cv-00613-UNA Document 1 Filed 05/06/20 Page 16 of 17 PageID #: 16

D.      Finding that there is a substantial likelihood that ROSS will continue to infringe Plaintiffs' copyrights unless enjoined from doing so;

E.      Issuing a preliminary and permanent injunction enjoining ROSS, and its agents, servants, employees, attorneys, successors and assigns, and all persons, firms and corporations acting in concert with it, from directly or indirectly infringing Plaintiffs' copyrights, including, but not limited to, offering ROSS's legal research product;

F.      Ordering the removal and destruction of Westlaw Content from ROSS's legal research product;

G.      Ordering ROSS to render a full and complete accounting to Thomson Reuters and West for ROSS's profits, gains, advantages and the value of the business opportunities received from the foregoing acts of infringement;

H.      Entering judgment for Plaintiffs against ROSS for all damages suffered by Plaintiffs and for any profits or gain by ROSS attributable to infringement of Thomson Reuters' copyrights in amounts to be determined at trial;

I.      Entering judgment for Plaintiffs against ROSS for statutory damages based upon ROSS's willful acts of infringement pursuant to 17 U.S.C. § 504;

J.      Entering judgment for Plaintiffs against ROSS for punitive damages based on ROSS's tortious interference with the contractual relationship between LegalEase and West in amounts to be determined at trial;

K.      Awarding Plaintiffs the costs and disbursement of this action, including reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505;

L.    Awarding Plaintiffs pre-judgment and post-judgment interest, to the fullest extent available, on the foregoing; and

M.    Granting such other, further and different relief as the Court deems just and proper.

### **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on all issues so triable.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jack B. Blumenfeld*
_____
Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
mflynn@mnat.com

*Attorneys for Plaintiffs Thomson Reuters Enterprise Center GmbH and West Publishing Corporation*

OF COUNSEL:

Dale M. Cendali
Joshua L. Simmons
Eric A. Loverro
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
(212) 446-4800

May 6, 2020

# APPENDIX B

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

WESTPUBLISHING CORPORATION,    )
    )
                Plaintiff,    )
    )
                v.    )    Case File No. _____
    )
LEGALEASE SOLUTIONS, LLC,    )
    )
                Defendant.    )

## COMPLAINT

Plaintiff West Publishing Corporation ("West"), by and through its attorneys, asserts the following cause of action against LegalEase Solutions, LLC ("LegalEase").  In support of its claims, West alleges the following:

1.    West provides industry-leading legal technology solutions, proprietary information, and legal online research platforms to a broad array of subscribers, including companies and law firms.  Among the products offered by West is Westlaw®, a legal research platform, which is available via a paid subscription.

2.    Upon information and belief, LegalEase offers legal research and writing support services to attorneys and law firms.  For example, LegalEase advertises its ability to provide attorneys with court pleadings and motions, discovery documents, draft contracts and agreements, legal research memoranda, claims research analysis and demand letters, and appeal briefs.

3.      In 2008, LegalEase entered into a contract with West (a Thomson Reuters business) to access Westlaw®.  At all relevant times, LegalEase paid West a subscription fee that was less than $5,000 per month for its subscription to Westlaw®.

4.      In January, 2018, West provided notice of termination of LegalEase's access to all Westlaw® products.  West informed LegalEase that its sharing of Westlaw® passwords with employees of a separate company violated the terms of their contract.

5.      From 2013 until July, 2017, LegalEase's use of Westlaw® was about 6,000 transactions per month, which, upon information and belief, is consistent with LegalEase's stated use of the product, namely to assist it in preparing legal writing for law firms, in-house counsel, and other attorneys.

6.      According to LegalEase, in July, 2017 it was working with a machine learning and artificial intelligence firm to create a new legal research product. As part of this undertaking, LegalEase "fed" the "machine" with "tons and tons of legal research."[1]  In a July, 2017 interview, LegalEase stated the following with respect to LegalEase's business:

> One of our clients is a machine learning legal research firm that's using artificial intelligence to create a much stronger legal research product.  We're feeding this machine tons and tons of legal research that we're doing manually, to help train that machine to do this automatically.  And we are already seeing the power of this type of technology.[2]

---

[1]      *See http://www.reinventingprofessionals.com/tag/tariq-hafeez/* beginning at 12:55 (last accessed on May 25, 2018).

[2]      *Id.*

2

Upon information and belief, LegalEase obtained this "legal research" from Westlaw®.

7.     Beginning in about July, 2017, LegalEase's use of Westlaw® spiked, eventually reaching approximately 236,000 transactions[3] per month, which is a twenty-fold increase over LegalEase's historical usage pattern and represents a usage rate greater than the average monthly usage of the "AmLaw 100" law firms.[4]

8.     Upon information and belief, LegalEase was only able to obtain the "tons and tons of legal research" from Westlaw® between, at least, July, 2017 and January 17, 2018, by breaching its Subscription Agreement (as defined herein) with West.  Upon information and belief, LegalEase, among other things, deployed computer programs, automated processes, or "bots" to capture and store Westlaw® information, and shared Westlaw® passwords with multiple individuals (including, upon information and belief, non-LegalEase employees) in violation of the Subscription Agreement.

9.     Upon information and belief, LegalEase stored and conveyed Westlaw® information obtained during this period to its "machine learning" customer, thereby further violating LegalEase's agreement with West and other of West's legal rights.

---

[3]     For the purposes of this complaint, a "transaction" refers to any executed search, as well as any viewing, printing, downloading, or emailing of a specific document.

[4]     The "AmLaw 100" is a list generated by The American Lawyer that ranks the largest 100 law firms in the country by revenue.  *See* https://www.law.com/americanlawyer/almID/1202784597030/ (last accessed on May 25, 2018).

10. West's termination of LegalEase's Westlaw® subscription was effective on January 17, 2018. Nonetheless, LegalEase still proclaims to this day, that: "[u]sing powerful legal research tools including . . . Westlaw, combined with our years of experience researching a vast array of legal issues for corporate customers and law firms, the LegalEase team is well equipped to research a diverse array of legal issues."[5]

11. During the period July, 2017 to January 17, 2018, LegalEase accessed Westlaw® information valued in the millions. LegalEase was able to access this volume of information in such a short period of time by engaging in conduct that is expressly prohibited in its Subscription Agreement with West.

## PARTIES

12. West Publishing Corporation is a citizen of Minnesota, is a Minnesota corporation, and has its principal place of business at 610 Opperman Drive, Eagan, Minnesota 55123. West is a wholly-owned subsidiary of Thomson Reuters (Legal) Inc., a Minnesota corporation.

13. Defendant LegalEase Solutions, LLC is a citizen of Michigan, is a Michigan limited liability company, and has its principal place of business at 2301 Platt Road, Suite 20, Ann Arbor, Michigan 48104.

## JURISDICTION AND VENUE

14. Jurisdiction is proper under 28 U.S.C. §§ 1332(a) and (c) because there is complete diversity of citizenship between West and LegalEase and the amount in controversy exceeds $75,000.

---

[5]     *See https://legalresearch.uslegal.com/LegalEase/* (last accessed on May 25, 2018).

15.     This Court has personal jurisdiction over LegalEase, as LegalEase has significant contacts with, derives value from, and transacts and does business in the District.

16.     Venue is proper in this District under 28 U.S.C. § 1391(b) because West resides in this District and a substantial part of the events or omissions giving rise to the claims occurred in this District.

17.     Venue is also proper in this District because the express terms of the parties' Subscription Agreement at issue state that any claim "may be brought in the state or federal courts in Minnesota."

FACTUAL BACKGROUND

West's Westlaw® Products and Services

18.     Westlaw® is an online legal research platform offered to subscribers by West, which is a subsidiary of Thomson Reuters (Legal) Inc.

19.     Westlaw® offers to subscribers access to a comprehensive collection of legal information, backed by a rigorous editorial process; editorial enhancements such as proprietary headnotes, notes of decisions, and the West Key Number System; technological innovation from its WestSearch® and Research Recommendations tools that provide subscribers with cutting-edge technology and a competitive edge; dedicated attorney-editors, who are bar-admitted, to track legal changes every day, so that its subscribers can trust the accuracy and timeliness of the information that is offered; access to on-demand legal research support to help subscribers; and the KeyCite® citation

service to ensure that subscribers cite good law with the industry's most accurate, up-to-the-minute citation service.

20.    Westlaw®'s platform includes access to volumes of proprietary material, databases, and compilations of case law, state and federal statutes, state and federal regulations, law journals, treatises, and other resources.  Westlaw® incorporates decades of search and editorial intelligence with the latest technological innovations.

21.    Integral to the Westlaw® platform is the proprietary organizational system referred to as the "West Key Number System".

22.    West has created the West Key Number System, beginning over 100 years ago.  Initially developed in printed digest format, the West Key Number System has been continually updated and digitally transformed onto the online Westlaw® research platform.  The development of the West Key Number System, both in print and digital formats, has been and continues to be the result of a substantial investment of time, resources, and editorial choices made by West over decades.

23.    The West Key Number System works as a master classification system through which West's attorney-editors organize cases by corresponding legal issues and topics.

24.    The West Key Number System adds significant value to the Westlaw® product.  It has also helped position West as a leader in the legal research sector.

25.    West's original and revised text and compilation of legal material made available through Westlaw®, including the West Key Number System and

6

headnote system, has independent economic value. West has invested hundreds of millions of dollars in Westlaw® and takes measures, such as those limitations set forth in the parties' agreements, to protect the proprietary nature of Westlaw® information, including its West Key Number System and headnote system.

Relationship Between West and LegalEase

26.     Upon information and belief, LegalEase provides legal research and writing services to law firms and corporate counsel across the United States, and this work involves drafting research memorandums for customers on various legal topics.

27.     LegalEase historically used Westlaw® to carry out its services on behalf of its customers.

28.     LegalEase first contracted with West to obtain a limited license to Westlaw® in 2008.

29.     LegalEase, acting through its President and Co-Founder Tariq Hafeez, renewed its Subscription Agreement for Westlaw® most recently on October 4, 2017.

30.     The terms of LegalEase's agreement with West are set forth in a product Order Form, which expressly incorporates the Thomson Reuters Legal Products and Professional Services General Terms and Conditions (the "Terms and Conditions"). Collectively, the Order Form and the Terms and Conditions (and the earlier iterations of the order forms and terms and conditions, which previously were titled Research Subscriber Agreements) establish the contract terms between LegalEase and West, which is referred to herein as LegalEase's "Subscription Agreement."

7

31.     At all times during LegalEase's relationship with West, LegalEase had a Subscription Agreement in place that governed the terms of the limited license granted by West.  The various iterations of the Subscription Agreement were substantively consistent during the time periods relevant to West's claims.

32.     The Order Forms set forth the specific product or product bundles licensed by LegalEase, including any additional or custom products; the minimum term of the order; the monthly charges; and the individual users who are authorized to access the Westlaw® research platform.

33.     Under the Subscription Agreement, LegalEase was granted a limited license to access Westlaw®'s information, including editorially enhanced case law, statutes, and regulations, and major secondary publications, in exchange for paying a monthly fee of less than $5,000.  LegalEase accepted this Order Form and was charged its monthly subscription fee until January 4, 2018, at which time West terminated LegalEase's access to Westlaw®.

34.     The Terms and Conditions govern LegalEase's use of Westlaw®.  Throughout the entirety of the parties' relationship, West granted to LegalEase "a non-exclusive, non-transferable, limited license to [LegalEase] to use the product in [their] ordering document in the regular course of [LegalEase's] business."  West expressly "maintain[s] all rights of ownership to [its] products."

35.     LegalEase's use of Westlaw® was expressly restricted in a number of ways, including by the following terms of the Subscription Agreement:

> Section 1(d). You may not sell, sublicense, distributed, display, store or transfer our product or any data in our

8

products in bulk or in any way that could be used to replace or substitute for our products in whole or in part or as a component of any material offered for sale, license or distribution to the third parties. You may not use any means to discern the source code of our products.

Section 1(e). Your access to certain products is password protected. You are responsible for assigning the passwords and maintaining password security. Sharing passwords is strictly prohibited.

Section 1(f). You may not run or install any computer software or hardware on our products or network or introduce any spyware, malware, viruses, Trojan horses, backdoors or other software exploits.

36.     The Subscription Agreement maintained the confidentiality and proprietary nature of Westlaw® by including a:

a.  Strict prohibition from sharing Westlaw® passwords;

b.  Strict prohibition from selling, sublicensing, distributing, displaying, storing or transferring West information in bulk or in any way that could be used to replace or substitute West products in whole or in part or as a component of any material offered for sale, license or distribution to third parties; and

c.  Strict prohibition from running or installing any computer software or hardware on West products or networks or introducing any other software or technical exploits.

37.     Section 12 of the Terms and Conditions provides that LegalEase "may not assign the agreement to anyone else without our prior written consent."

9

38.     Section 10 of the Terms and Conditions grants West the discretion to suspend or limit LegalEase's access to Westlaw® in the event LegalEase materially breaches its obligations under the Subscription Agreement. Pursuant to the express terms of Section 10(f) of the Terms and Conditions, all licenses granted by West to LegalEase ended immediately upon West's termination of the Subscription Agreement.

39.     By letter dated January 4, 2018, West terminated LegalEase's Subscription Agreement due to material breach and violation of the Subscription Agreement. The effective date of West's termination was January 17, 2018. As such, LegalEase's limited license to Westlaw® terminated on January 17, 2018.

<u>LegalEase Materially Violated the Subscription Agreement</u>

40.     During most of LegalEase's approximately nine-year license agreement with West, LegalEase maintained a generally consistent number of monthly Westlaw® transactions. On average, during the period January, 2013 to June, 2017, LegalEase conducted approximately 6,000 Westlaw® transactions per month.

41.     During the period January, 2017 to January, 2018, LegalEase was charged approximately $60,000 pursuant to the Subscription Agreement, which includes its monthly charge as well as fees in connection with LegalEase's access to Westlaw® information that was not included in LegalEase's limited license.

42.     Beginning in July, 2017, LegalEase's Westlaw® usage increased dramatically. LegalEase's monthly transactions peaked in November, 2017 at 236,000 transactions within a single month. In comparison, the average "AmLaw 100" law firm averages 52,000 Westlaw® transactions per month. See Figure A.

Figure A  - LegalEase's Westlaw® Usage



43.　　This inexplicable and sudden increase in monthly transactions prompted West to examine LegalEase's Westlaw® usage in greater detail.

44.　　Between 2008 and 2015, LegalEase had licensed between two and eight Westlaw® passwords pursuant to the Subscription Agreement.  In August, 2017, LegalEase expanded its limited license to 20 Westlaw® passwords.  In September, 2017, LegalEase expanded its limited license to 40 Westlaw® passwords.  In October, 2017, LegalEase expanded its limited license to 50 Westlaw® passwords.

45.　　Despite this increase in the number of passwords, LegalEase engaged in sharing Westlaw® passwords in violation of the Subscription Agreement. Although West had warned LegalEase about this prohibited activity, LegalEase did not stop this improper practice of password sharing.

46.　　Certain LegalEase passwords were used in October, November, and December of 2017 to access large amounts of Westlaw® information, and, at times, certain users accessed Westlaw® information for longer than 24 hours in a single session. Exemplary information is below in Figure B.

Figure B – LegalEase's Westlaw® Usage for Particular Users

| User | Month | Avg. Hours per Business Day | Longest Access Hrs/Day |
|------|-------|------------------------------|------------------------|
| User A | 10/2017 | 9.97 | 19.34 |
| User B | 10/2017 | 9.49 | 22.85 |
| User C | 10/2017 | 11.67 | 23.87 |
| User D | 11/2017 | 17.23 | 22.47 |
| User E | 11/2017 | 15.32 | 21.97 |
| User F | 11/2017 | 18.48 | 33.87 |
| User G | 12/1-15/2017 | 17.63 | 27.95 |
| User H | 12/1-15/2017 | 16.08 | 23.66 |
| User I | 12/1-15/2017 | 18.17 | 23.22 |

Upon information and belief, Westlaw® usage for certain days by, at least, Users A–I (above), was possible only through the sharing of passwords between individuals or concurrent usage by an automated process, machine, software, or "bot." Through these Westlaw® sessions alone, LegalEase accessed substantially more than $75,000 of Westlaw® information.

47. Upon information and belief, LegalEase's usage patterns from July, 2017 through January 4, 2018 are also indicative of the use of computer software or a "bot" to access Westlaw® information, in violation of the Subscription Agreement. Further, upon information and belief, this Westlaw® information was bulk "scraped" by LegalEase, in violation of the Subscription Agreement.

48. For example, between October 1, 2017 and November 21, 2017, the user named "LegalEase8" accessed more than 8,200 Westlaw® documents. "LegalEase8's" access to each document lasted for less than 30 seconds; no document

was accessed using Westlaw®'s Search feature; no documents were printed, downloaded, or e-mailed using Westlaw®'s features for doing so.

49.     Upon information and belief, "LegalEase8's" activity cannot be performed by a single human password holder and indicates that computer software, an automated process or machine, or a "bot" was utilized to access protected and proprietary Westlaw® information.  For example, for six of "LegalEase8's" Westlaw® sessions:

> a.     Each Westlaw® session lasted between two and a half hours and approximately four hours;
>
> b.     Each Westlaw® session involved the viewing of approximately 1,000 documents, with the fewest number of views being 916 documents and the highest number of views being 1,490 documents;
>
> c.     During each Westlaw® session, each document was accessed for only approximately 10 seconds at a time; and
>
> d.     None of its Westlaw® sessions resulted in the printing or downloading of a single document.

See Figure C.

Figure C – "LegalEase8" Sessions

| Details | 10/30/17 | 11/2/17 | 11/3/17 (1) | 11/3/17 (2) | 11/5/17 | 11/15/17 |
|---|---|---|---|---|---|---|
| Duration (hrs:min) | 2:50 | 3:15 | 3:12 | 4:01 | 2:47 | 4:16 |
| # of Doc Views | 1,042 | 1,150 | 1,150 | 1,490 | 916 | 1,352 |
| Average Doc View Length | ~10 secs | ~10 secs | ~10 secs | ~10 secs | ~10 secs | ~10 secs |
| Downloads | 0 | 0 | 0 | 0 | 0 | 0 |
| Prints | 0 | 0 | 0 | 0 | 0 | 0 |

Exact same document view sequence in both sessions

50.    The activity in each of these six sessions followed an identical or a consistent pattern.  Specifically, in these sessions, "LegalEase8" first browsed to Westlaw®'s West Key Numbers.  Next, "LegalEase8" selected a Key Number of interest. "LegalEase8" then selected a West Key Number sub-section of interest.  Finally, "LegalEase8" would run a search for all cases in that West Key Number sub-section without using any search terms.

51.    LegalEase8" would then view the West Key Number search results in an identical pattern, including viewing a case in the results list, then viewing each document cited in the paragraph of the case associated with the searched key number sub-section, the list of cases citing the headnote associated with the searched key number sub-section, and the first twenty cases in that list of cases.  "LegalEase8" would then repeat the process for the next case in the results list.

52.      Upon information and belief, based on the characteristics of these exemplary sessions identified in Figures B and C -- including, the length of the sessions, with some being longer than 24 hours at a time, the high number of documents viewed, the limited viewing time of each document, the same pattern of usage, and the failure to download or print a single document -- LegalEase employed computer software, a "bot," or some other automated electronic method or browser plug-in to rapidly access Westlaw®'s information, and simultaneously scrape, copy, or otherwise store the Westlaw® information accessed.

53.      LegalEase's password sharing directly and materially violated the Subscription Agreement, including, but not limited to, Section 1 of the Terms and Conditions.

54.      As a result of LegalEase's actions, West sent LegalEase's President and Co-Founder Tariq Hafeez a letter on January 4, 2018 terminating the Subscription Agreement, which was effective on January 17, 2018.

55.      LegalEase has not denied materially breaching the Subscription Agreement.

56.      Upon information and belief, LegalEase was copying, storing, and then transferring and/or selling West's information, which had been accessed and acquired in violation of the Subscription Agreement, to its machine learning customer for use in developing another legal research product.  The Subscription Agreement expressly restricts LegalEase from selling, sublicensing, distributing, displaying, storing, or transferring Westlaw® material.

57.     Upon information and belief, LegalEase and its machine-learning customer continue to possess and store Westlaw® information that LegalEase acquired in violation of the Subscription Agreement.

## COUNT I
(Breach of Contract)

58.     Plaintiff repeats and realleges the allegations of paragraphs 1 through 57 as though fully set forth herein.

59.     The Subscription Agreement, consisting of the West ProFlex Order Form and the Terms and Conditions (and all prior iterations of said order forms and terms and conditions), which are incorporated by reference therein, is a valid and binding contract.

60.     West fully performed its obligations under the Subscription Agreement.

61.     LegalEase breached the Subscription Agreement by, at least:

a.  sharing passwords with unauthorized users; and

b.  utilizing an automated method or browser plug-in to scrape Westlaw® information, including in bulk.

62.     LegalEase continues to possess, store, and otherwise have access to Westlaw® material that it acquired in violation of the Subscription Agreement.

63.     As a direct and proximate cause of LegalEase's breach, West has suffered, and will continue to suffer, damages in an amount to be determined at trial, including, but not limited to, LegalEase's violative access of Westlaw® and Westlaw® information valued in the millions.

64.     As a result of LegalEase's breach, West is entitled to injunctive relief enjoining LegalEase from accessing, using, storing, selling, or transferring any information that it acquired from Westlaw® in violation of the Subscription Agreement.

65.     West is further entitled to specific performance of the Subscription Agreement.

## JURY DEMAND

West requests a jury on all claims triable by jury.

WHEREFORE, Plaintiff respectfully requests that this Court:

i.      Enter judgment in favor of West and against LegalEase on West's claims;

ii.     Award damages to West in an amount to be determined at trial against LegalEase;

iii.    Permanently enjoin LegalEase from accessing, using, selling, or transferring any information that it acquired from Westlaw® in violation of the Subscription Agreement;

iv.     Award West reasonable attorneys' fees and costs against LegalEase; and

v.      Award such other relief as the Court deems just and proper.

Dated: May 25, 2018                          Respectfully submitted,


                                             s/Lora Mitchell Friedemann
                                             Lora Mitchell Friedemann (#0259615)
Scott T. Lashway (pro hac vice               Fredrikson & Byron, P.A.
   application to be filed)                   200 South Sixth Street, Ste. 4000
Benjamin A. Stern (pro hac vice              Minneapolis, MN 55402
   application to be filed)                   (612) 492-7185
Holland & Knight LLP                         lfriedemann@fredlaw.com
10 Saint James Avenue
Boston, MA 02116
(617) 523-2700
Scott.Lashway@hklaw.com                      Attorneys for West Publishing
Benjamin.Stern@hklaw.com                     Corporation


64072363.1

18