# Morris, Nichols, Arsht & Tunnell llp

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware  19899-1347

(302) 658-9200

**Michael J. Flynn**
(302) 351-9661
mflynn@morrisnichols.com

September 1, 2021

The Honorable Leonard P. Stark                    *VIA ELECTRONIC FILING*
J. Caleb Boggs Federal Building
844 King Street, Unit 26, Room 6124
Wilmington, DE  19801-3556

      Re:    *Thomson Reuters Enterprise Centre GmbH v. ROSS Intelligence Inc.*,
             C.A. No. 20-613-LPS

Dear Judge Stark:

      Pursuant to the Court's August 30, 2021 Order, Plaintiffs submit this letter and request that the Court permit Carolyn Blankenship to access information that ROSS designates as Highly Confidential ("HC – AEO") pursuant to the Court's Protective Order.  D.I. 48.  Pursuant to the Protective Order, ROSS "bear[s] the burden of proving that the risk of harm that the disclosure would entail (under the safeguards proposed) outweighs the Receiving Party's need to disclose the Protected Material to its Designated House Counsel or Expert." *Id.* ¶ 7.5(c).  Yet, despite Ms. Blankenship's role solely involving legal advice, the lack of harm to ROSS from such disclosure, and Ms. Blankenship's obligations as an attorney and the Protective Order, ROSS opposes and offers only conclusory assertions that Ms. Blankenship is a competitive decisionmaker.  As Ms. Blankenship is responsible for managing this case, Plaintiffs would be significantly harmed if she were unable to view information ROSS designates as HC – AEO.

## Background

      Plaintiffs designated Ms. Blankenship to receive access to ROSS's information designated as HC – AEO pursuant to Paragraph 7.5(a)(1) of the Protective Order, and ROSS objected.  Although Plaintiffs have shared with ROSS additional information about Ms. Blankenship's role, the parties were unable to reach a resolution.

## Ms. Blankenship's Access Will Not Risk Harm to ROSS

      To determine whether in-house counsel may properly be granted access to HC – AEO information, courts evaluate "the risk of inadvertent disclosure or competitive use" by considering whether in-house counsel participates in competitive decisionmaking.  *See In re Deutsche Bank Tr. Co. Ams.*, 605 F.3d 1373, 1380 (Fed. Cir. 2010).  Then, "[e]ven if a district court is satisfied that such a risk exists, the district court must balance this risk against the potential harm to the opposing party from restrictions imposed on that party's right to have the benefit of counsel of its choice." *Id.* at 1380.

      *First*, the risk of inadvertent disclosure or competitive use is low.  As Ms. Blankenship states in her sworn declaration (**Exhibit A**), she provides legal advice, and the legal decisions in which she participates are not "made in light of similar or corresponding information about a competitor." *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984); *see*

*also* Ex. A ¶¶ 5, 11.  Although she advises on issues relating to product development and acquisitions, her advice is ***legal*** in nature, rather than competitive.  Ex. A ¶ 11.  Where in-house counsel's advice is purely legal, the fact that the advice touches matters that implicate competition does not convert counsel into a competitive decisionmaker.  *See ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 274 F.R.D. 576, 580 (E.D. Va. 2010) (attorney's "involvement in corporate mergers" was not "competitive decisionmaking").

*Second*, Ms. Blankenship's role shows her distance from competitive decisionmaking.  To be clear, although her title is "General Counsel," she is not the head legal officer at Thomson Reuters, and she does not hold a board-level position.  Ex. A ¶¶ 7, 10.  She does not make decisions relating to competitive strategy, including those connected to product designs, development, testing, manufacture, pricing, or marketing of artificial intelligence or machine learning products.  *Id.* ¶ 8.  Moreover, she is one of 56 attorneys working for Thomson Reuters, *id.* ¶ 7, further insulating her from competitive decisions.  All of these facts reduce the risk of inadvertently misusing ROSS's HC – AEO information.  *See, e.g.*, *Brit. Telecomm. PLC v. IAC/InterActiveCorp*, 330 F.R.D. 387, 394 (D. Del. 2019).

*Third*, Ms. Blankenship has already seen much of what Plaintiffs expect ROSS to produce and designate as HC – AEO.  In *West Publishing Corp. v. LegalEase Solutions, LLC*, No. 18 Civ. 01445 (D. Minn.) (the "LegalEase Litigation"), West, a Thomson Reuters subsidiary, sued LegalEase.  Through a third-party subpoena in that case, ROSS produced documents concerning the work it did with LegalEase.  Ex. A ¶ 20.  Ms. Blankenship served as in-house counsel responsible for the LegalEase Litigation on behalf of West and, pursuant to the protective order in that case, accessed documents designated as Highly Confidential.  *Id.* ¶¶ 17–20.  Allowing her to access these documents again would not pose any additional risk to ROSS.

*Fourth*, ROSS ended its operations as of January 31, 2021.  *Id.* ¶ 22.  ROSS's status as an inactive company further reduces any risk of harm to ROSS.  *See Standard Space Platforms Corp. v. United States*, 35 Fed. Cl. 505, 508 (1996); *Softwareworks Grp., Inc. v. IHosting, Inc.*, 2006 WL 3456695, at *2 (N.D. Cal. Nov. 29, 2006).

*Fifth*, if Ms. Blankenship is given access, there are numerous safeguards in place to protect ROSS's confidential information.  Competitive decisionmakers at Thomson Reuters will have no access to ROSS's information as Ms. Blankenship's email account is password-protected, confidential litigation information is stored on password-protected databases, and physical documents will not be accessible to them.  Ex. A ¶ 16; *see Sanofi-Aventis U.S. LLC v. Breckenridge Pharm., Inc.*, 2016 WL 308795, at *4 (D.N.J. Jan. 25, 2016) (safeguards such as "separating [in-house litigation counsel's] computer systems" from the rest of the company reduced risk of disclosure).  Ms. Blankenship also will sign and be bound by the Protective Order.  Ex. A ¶ 14.  Her professional obligations to the Court will further prevent her from misusing any confidential information she accesses.  *Id.* ¶ 13; *see also Avery Dennison Corp. v. Minnesota Mining & Mfg. Co.*, 2001 WL 1339402, at *2 (D. Del. Oct. 26, 2001) (rejecting protective order that denied in-house counsel access to "'top' tier" confidential information due to counsel's "professional and ethical responsibilities").[1]

---

[1] Ms. Blankenship would not see ROSS's source code as the Protective Order precludes in-house counsel from reviewing it.  *See* D.I. 48 ¶ 7.4.  This too weighs in favor of allowing access.  *See Brit.*, 330 F.R.D. at 394.  During the parties' meet and confer, ROSS's counsel indicated for the

The Honorable Leonard P. Stark                                                                                    Page 3
September 1, 2021

      Despite all of the above, ROSS has seized on conclusory claims that Ms. Blankenship provides strategic advice. The standard, however, is not whether in-house counsel offers strategic advice, but whether that advice is on competitive matters. All attorneys offer their clients strategic advice, but where that advice is limited to legal issues, counsel should not be barred from accessing information necessary to manage litigation effectively. *See Brit.*, 330 F.R.D. at 394. Moreover, as noted above, Ms. Blankenship has sworn she is not involved in competitive decisionmaking. Ex. A ¶ 8; *see Matsushita Elec. Indus. Co. v. United States*, 929 F.2d 1577, 1580 (Fed. Cir. 1991) (in-house counsel's sworn affidavit "form[ed] a reasonable basis . . . to conclude that [he] was sufficiently insulated").

### **Barring Ms. Blankenship from HC – AEO Information Would Harm Plaintiffs**

      After considering the risk of inadvertent disclosure or competitive use, courts next "balance" any risk of disclosure "against the potential harm to the opposing party from restrictions imposed on that party's right to have the benefit of counsel of its choice." *In re Deutsche Bank*, 605 F.3d at 1380. In contrast to the lack of risk to ROSS, Plaintiffs will be harmed if Ms. Blankenship is unable to view information ROSS designates as HC – AEO.

      *First*, Plaintiffs have a strong interest in selecting the counsel that will oversee the prosecution of its case. *See Evertz Microsystems Ltd. v. Lawo Inc.*, 2019 WL 5864173, at *2 (D. Del. Nov. 8, 2019). Here, Ms. Blankenship serves an important role as a senior member of the in-house team and the primary contact for outside counsel. Preventing her from accessing HC – AEO would unjustly impede her ability to advise both outside counsel and Plaintiffs' management of case strategy in light of all relevant information. Ex. A ¶¶ 23, 25; *see Intervet, Inc. v. Merial Ltd.*, 241 F.R.D. 55, 56 (D.D.C. 2007). Although ROSS may point to Jeanpierre Giuliano, a member of Thomson Reuters' in-house team who has been granted full access, Ms. Blankenship fills a unique position. Ms. Blankenship's history with this case and the LegalEase Litigation has afforded her the context necessary to direct the litigation, and preventing her from accessing the same and similar information in this litigation makes no sense and limits her ability to manage the case. Moreover, the Protective Order contemplates designating multiple in-house counsel, allowing those people to confer on difficult issues before recommending a strategy to Thomson Reuters. *See* D.I. 48, ¶ 2.4. As the senior member of the in-house legal team, Ms. Blankenship must ultimately make the recommendations to her company and will be hindered in her ability to do so without access to all relevant information.

      *Second*, ROSS is inclined to over-designate its information as HC – AEO even where such designation is not warranted. For example, ROSS originally designated the entirety of its interrogatory response as HC – AEO, and only de-designated some portions after Plaintiffs objected. Ex. A ¶¶ 23–24. Even if ROSS agrees to de-designate improper designations each time Plaintiffs object, this process delays Ms. Blankenship's ability to view the information and to participate meaningfully. This weighs in favor of giving her access. *See Acuity Brands Lighting, Inc. v. Bickley*, 2015 WL 12976102, at *3 (E.D. Ky. Sept. 4, 2015).

*   *   *

      Plaintiffs thus respectfully request that the Court allow Ms. Blankenship full access.

---

first time that ROSS expects to produce unspecified technical documents beyond those produced in the LegalEase Litigation. If ROSS is willing to provide more detail on those documents, Plaintiffs can further consider whether Ms. Blankenship will need access to them.

The Honorable Leonard P. Stark  Page 4
September 1, 2021

                                              Respectfully,

                                              Michael Flynn (# 5333)

cc:    All counsel of record