# EXHIBIT A

DocuSign Envelope ID: AA4G4E9F-CB34-4EE2-BA4E-CFC68D8503BC

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 20-613 (LPS) |
| ROSS INTELLIGENCE INC., | ) ) | |
| Defendant. | ) | |

**DECLARATION OF CAROLYN BLANKENSHIP, ESQ.**

DocuSign Envelope ID: AA46A4E9F-CB31-4E52-BA4E-CFC68D8503BC

I, Carolyn Blankenship, Esq., declare as follows:

1.      I am General Counsel, Innovation and Product for Thomson Reuters Corporation, a position I have held since October 2018.  Prior to that, I served as Senior Vice President, Associate General Counsel, Intellectual Property for Thomson Reuters, a position I held for ten years beginning in October of 2008.

2.      I earned a Bachelor of Arts in Biology from Harvard University and a J.D. from Arizona State University College of Law.  I am a member in good standing of the New York State Bar and am bound by its standards of professional responsibility.

3.      I understand that outside counsel for Thomson Reuters Enterprise Centre Gmbh ("Thomson Reuters") and West Publishing Corp. ("West") (collectively, "Plaintiffs") at Kirkland & Ellis LLP ("Kirkland") contacted outside counsel for ROSS Intelligence Inc. ("ROSS") identifying me as one of the two in-house attorneys from Thomson Reuters who would receive access to information that ROSS designated as HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY ("HC – AEO") pursuant to the Court's Protective Order (D.I. 48).  I further understand that ROSS objected to my ability to access such information, indicating its belief that I am involved in competitive decision-making and that disclosure to me could harm ROSS.

4.      I submit this declaration in support of Plaintiffs' request that I be permitted access to ROSS's information designated as HC – AEO.  As discussed below, given my role and the obligations set forth in the Protective Order, ROSS would not be harmed by such access.  In particular, I am not involved in the type of competitive decision-making about which ROSS could be concerned.  This declaration is based on my personal knowledge and is made to the best of my knowledge, information, and belief.

## I.   ROLE AT THOMSON REUTERS, INCLUDING IN THIS LITIGATION

5.      As General Counsel, Innovation and Product, my role is to oversee intellectual property litigations like this one and to provide intellectual property legal advice related to Thomson Reuters' products and technology.  In this (and my previous) role(s), I have overseen more than 15 litigations. I have never been excluded from reviewing highly confidential information in any of those cases.

6.      In this case, as in others, I am responsible for managing the overall case strategy, overseeing and communicating with outside counsel, reviewing pleadings, discovery requests and responses, and motion briefing, and participating in the negotiation of any settlement.

7.      Thomson Reuters is a large company with more than 25,000 employees.  Because of this, my role does not encompass all of the legal issues the company may encounter.  Moreover, although my title is General Counsel, Innovation and Product, that does not mean that I am the chief legal officer at Thomson Reuters.  Thomas Kim, Chief Legal Officer and Company Secretary fills that role. We currently have 56 lawyers on staff as in-house counsel, including 4 individuals with the title "General Counsel" who oversee divisions of the broader legal team, allowing each attorney and each General Counsel to specialize in a particular practice area.

8.      Contrary to ROSS's belief, I am not involved in competitive decision-making.  I am never the decision-maker on any competitive or business matters.  I do not make decisions related to strategy against competitors.  I do not make the decision to license any intellectual property or to pursue litigation against competitors.  I do not make decisions surrounding Thomson Reuters' product designs, development, testing, manufacture, pricing, or marketing of artificial intelligence or machine learning products.  These decisions are made by other departments and people.

9. I do not conduct or oversee scientific research or market research. I do not participate in patent licensing or patent prosecution.

10. I also do not have the type of position that one would naturally expect to make competitive decisions. For example, I am not an officer or a member of the Board of Directors of Thomson Reuters or any affiliated company and hold no position in the Company outside of the General Counsel's Office (*i.e.*, the Legal Department). I do not regularly attend or participate in board meetings and have only appeared at such meetings maybe once or twice in my entire career at Thomson Reuters to provide a legal update.

11. It is true that I provide legal advice that relates in general to projects surrounding product development, artificial intelligence, and other forms of technology, and I do advise the business on the legal aspects of its mergers and acquisitions activities. That advice, however, is purely ***legal***. The advice I give is generally not based on the kind of information where similar or corresponding information from a competitor would provide an advantage. In particular, I provide advice on the state of the law, evaluate the risks in light of that law, and present options that are available to ensure compliance and to mitigate risk. My advice is provided based on my understanding of the law's requirements and limitations, not on any information I may have regarding a competitor's plans for or perspective on any related products. The decision on how to proceed in light of this advice is not made by me, as discussed above.

## II.    ROSS WILL NOT BE HARMED FROM DISCLOSURE

12. ROSS will not be harmed if I am able to see information that it designates as HC – AEO for a number of reasons.

13. ***First***, as a member of the New York State Bar, I am required to follow the New York Rules of Professional Conduct and to otherwise uphold my duties as an officer of the court.

I understand that I may be subject to sanctions should I misuse any HC-AEO information that I access during this Litigation.

14.     **Second**, I agree to and am willing to be bound by the terms of the Protective Order that has been entered in this case.  D.I. 48.  Likewise, I will not use ROSS's confidential or highly confidential information for any purpose other than this Litigation, and I will not disclose ROSS's confidential information to anyone, except as set forth in the Protective Order.

15.     **Third**, ROSS already has agreed that I am permitted to review information designated as CONFIDENTIAL under the Protective Order.  To me, this is a concession that I can be trusted with confidential information, making it incongruous to suggest that I cannot be trusted with information that ROSS chooses to designate as HC – AEO.

16.     **Fourth**, Thomson Reuters has safeguards in place to prevent inadvertent disclosure of ROSS's HC – AEO information, including:

- My email account is password protected.  It is not accessible to employees who are involved in competitive decision-making;

- ROSS's confidential information will be stored in password-protected systems that are not accessible to employees who are involved in competitive decision-making; and

- Any hard copies of documents that contain confidential information will be kept in a place that is not accessible to employees who are involved in competitive decision-making.

17.     **Fifth**, I already have seen much of the information that ROSS is likely to produce in this case.  Prior to this lawsuit, West, a Thomson Reuters subsidiary, sued LegalEase Solutions, LLC in the District of Minnesota.  The case caption for that litigation is *West Publishing Corp. v.*

*LegalEase Solutions, LLC*, No. 18 Civ. 01445 (D. Minn.) (the "LegalEase Litigation"). The protective order in that case (D.I. 28 in the LegalEase Litigation, attached as **Exhibit 1**) was specifically negotiated to permit in-house counsel at Thomson Reuters, including myself, to access both confidential and highly confidential information, including documents that ROSS produced under that protective order.

18.     Specifically, Paragraph 4(e) of the protective order in the LegalEase Litigation provides that "access to any Discovery Material that has been designated 'Confidential' shall be limited to the below-listed persons," including "(e) in-house counsel responsible for the Litigation on behalf of a party to the Litigation." Paragraph 5 further provides that disclosure of "Highly Confidential" information "shall be limited to the persons designated in Paragraphs 4(a), (b), (c), (d), (e), and (g)." Thus "in-house counsel responsible for the Litigation on behalf of a party to the Litigation" may similarly view "Highly Confidential" information as well.

19.     Although Thomson Reuters was not a party to the LegalEase Litigation, Thomson Reuters is the parent of West, which was a party, and West does not have its own legal department or separate in-house attorneys from Thomson Reuters. For that reason, counsel for West and counsel for LegalEase specifically negotiated the language in the protective order allowing in-house counsel "responsible for the Litigation on behalf of a party to the Litigation" to view designated documents so that I and members of my team could have access to them. LegalEase was aware that I would be responsible for the LegalEase Litigation on behalf of West and that I would be permitted to access confidential and highly confidential information. Both parties to the protective order understood the language in Paragraph 4(e) to include me.

20.     Through the LegalEase Litigation, West learned that ROSS had contracted with LegalEase to download copyrighted content from Westlaw and distributed that content to ROSS

for ROSS to use in creating its own legal research product.  Thus, in connection with the LegalEase Litigation, ROSS was served with a subpoena and produced documents accordingly.  Some of the documents ROSS produced in the LegalEase Litigation were designated Highly Confidential.  Because I was the in-house counsel responsible for the LegalEase Litigation on West's behalf, I had the ability to view the documents ROSS produced through the discovery database, which included ROSS's confidential and highly confidential documents, and, in fact, did so.  Moreover, members of the Thomson Reuters legal team attended depositions designated under the protective order, including the deposition of ROSS, so there never was a question that we were accessing this information.  To my knowledge, ROSS did not pursue excluding in-house counsel from Thomson Reuters having access to highly confidential information, although it did inquire about whether the protective order would allow non-lawyers, particularly those who might work in Thomson Reuters' artificial intelligence group, to have access.

21.    Now that Plaintiffs have sued ROSS for copyright infringement based on similar facts, I would expect all of the documents ROSS produced in the LegalEase Litigation to be produced again in this case.  As I have already seen these documents, ROSS could not be harmed if I am provided with the ability to see them again.  Moreover, managing the case will be more difficult if I am required to ignore the knowledge I previously gained through the LegalEase Litigation.

22.    **Finally**, ROSS also will not be harmed if I am able to see its HC – AEO information because, upon information and belief, ROSS has shut down operations and is no longer operating its legal research platform.  On December 11, 2020, ROSS issued an announcement that it decided to "shut down operations at ROSS Intelligence" and that "[a]s of January 31, 2021, the ROSS

DocuSign Envelope ID: AA464E9F-CB34-4EF2-BA4E-CFC68DB503BC

platform [would] no longer be available." A true and correct copy of this announcement is attached hereto as **Exhibit 2**.

### III.   PLAINTIFFS WILL BE PREJUDICED IF I CANNOT FULLY PARTICIPATE IN THIS LITIGATION

23.      In contrast to the lack of harm to ROSS, Plaintiffs will be prejudiced if I am unable to view ROSS's HC – AEO information. As discussed above, my role is to be responsible for this litigation, which requires meaningful discussions with outside counsel in the strategy and direction of this case. If I am not permitted access to the full scope of discovery, my ability to fulfill that role will be significantly limited. For example, on July 2, 2021, ROSS served its Response to Plaintiffs' First Set of Interrogatories (the "Response") and designated the entirety of its Response as HC – AEO. This prevented me from being able to view **_any aspect_** of ROSS's Response, even if there were portions that did not contain "extremely sensitive" information, such as "trade secrets or other competitively sensitive business or financial information," as defined in the Protective Order. D.I. 48, at 4.

24.      After Kirkland raised this issue with ROSS's counsel, ROSS subsequently de-designated portions of its responses. Plaintiffs are concerned that ROSS will continue to overdesignate the information it produces in this Litigation, even if such designation is not warranted. Having the ability to view information that ROSS has designated as HC – AEO will ensure that I am able to continue effectively coordinating this case, even if ROSS continues to overdesignate.

25.      I have worked for Thomson Reuters for significantly longer than any other in-house counsel involved in this case, and as such, I have historical knowledge and context relating to this case that is not easily transferred to another member or my team or outside counsel. As the senior member of the team, I will be responsible for assessing the strengths and weaknesses of the case

and directing outside counsel accordingly.  Those decisions are in my hands, and can only be made

effectively if I am privy to all relevant information.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed on this 1st day of September, 2021.

DocuSigned by:

*Carolyn Blankenship*

678DCD59B6054B5...

_____

Carolyn Blankenship, Esq.

# EXHIBIT 1

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
WEST PUBLISHING CORPORATION,
 
        Plaintiff / Counterclaim-Defendant,    :     Civ No. 18-CV-01445 (DSD/ECW)

            v.

LEGALEASE SOLUTIONS, LLC,

        Defendant / Counterclaim-Plaintiff.
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## PROTECTIVE ORDER

Plaintiff and Counterclaim-Defendant, West Publishing Corporation and Defendant, and Counterclaim-Plaintiff, LegalEase Solutions, LLC, hereby stipulate and request that the Court enter a confidentiality and protective order under Fed. R. Civ. P. 26(c) as follows:

1.    As used in this Protective Order, these terms have the following meanings:

    a.  "Attorneys" means counsel of record in the Litigation;

    b.  "Confidential" Discovery Material, as defined below, is designated pursuant to Paragraphs 2-3;

    c.  "Highly Confidential" Discovery Materials is the subset of "Confidential" Discovery Material designated pursuant to Paragraph 6;

    d.  "Discovery Material" shall include all materials and information within the scope of Fed. R. Civ. P. 34, as well as all documents, pleadings, responses to discovery requests, deposition testimony and transcripts, trial testimony and transcripts, and all other material or information produced or provided in the course of this

Litigation by any party to the Litigation, witness, or non-party, including, but not limited to, all copies, all extracts thereof, and all information contained therein or derived or derivable therefrom;

    e.   "Litigation" means the above-captioned civil action currently pending in the United States District Court for the District of Minnesota, Civ. A. No. 18-CV-01445 (DSD/ECW).

    f.   "Written Assurance" means an executed document in the form attached as Exhibit A;

    2.   Any party or non-party to this Litigation may designate Discovery Material as "Confidential" so long as the party or non-party reasonably believes, in good faith, the Discovery Material to be designated is confidential or proprietary business information, technical information, trade secrets, confidential commercial or financial information (including financial plans and records, customer information, vendor information, business and employment contracts) or competitive information. The designation of a document as "Confidential" shall constitute a representation that such document has been reviewed by an attorney for the designating party and that there is a valid, good faith basis for such designation.

    3.   A designating party shall designate documents "Confidential" by marking each page thereof with the word "CONFIDENTIAL." A designating party shall designate its electronic data as "Confidential" by affixing a stamp with the words "CONFIDENTIAL" on the medium (including, but not limited to, tapes and CDs) on which the electronic data is stored before copies are delivered to the receiving party, and/or by including the word "CONFIDENTIAL" in the file name.

4.      Except with the prior written consent of the designating party or upon Order of the Court, access to any Discovery Material that has been designated "Confidential" shall be limited to the below-listed persons ("Qualified Persons"):

(a)      the Court and its officers;

(b)      Counsel of record in the Litigation and their law firm associates, legal assistants, and stenographic and clerical employees;

(c)      persons shown on the face of the document to have authored or received it;

(d)      court reporters retained to transcribe testimony;

(e)      in-house counsel responsible for the Litigation on behalf of a party to the Litigation;

(f)      The parties' non-attorney representatives directly responsible for the oversight of this Litigation on behalf of that party; and

(g)      Third-parties (*i.e.*, persons not currently or formerly employed by, consulting with, or otherwise associated with any party) who are expressly retained to assist counsel of record in the Litigation in the prosecution, defense, settlement or other disposition of this Litigation, to furnish technical or expert services in connection with this Litigation and/or to give testimony in this Litigation.

5.      The parties shall have the right to further designate Discovery Material or portions of Discovery Material as "Highly Confidential."  Disclosure of such information shall be limited to the persons designated in Paragraphs 4(a), (b), (c), (d), (e), and (g).

6.      A designating party shall designate documents "Highly Confidential" by marking each page thereof with the word "HIGHLY CONFIDENTIAL" or "ATTORNEYS' EYES

3

ONLY." A designating party shall designate its electronic data as "Highly Confidential" by affixing a stamp with the words "HIGHLY CONFIDENTIAL" or "ATTORNEYS' EYES ONLY" on the medium (including, but not limited to, tapes and CDs) on which the electronic data is stored before copies are delivered to the receiving party, and/or by including the word "HIGHLY CONFIDENTIAL" or "ATTORNEYS' EYES ONLY" in the file name.

7. All Confidential and Highly Confidential Discovery Material, along with the information contained therein, shall be used solely for purposes of this Litigation, or for a related Litigation, and any such Confidential or Highly Confidential Discovery Material, or its contents, shall not be, directly or indirectly, transferred, disclosed, or communicated in any way to any person other than those specified in Paragraph 4 and as provided for in Paragraph 5 or otherwise by Court order.

8. Third parties producing documents in the course of this Litigation may also designate documents as "Confidential" or "Highly Confidential," subject to the same protections and constraints as the parties to the Litigation. A copy of the Protective Order shall be served along with any subpoena served in connection with this Litigation.

9. Each person designated under Paragraph 4(g) to receive "Confidential" or "Highly Confidential" information shall execute a "Written Assurance" in the form attached as Exhibit A. Prior to disclosing any "Confidential" or "Highly Confidential" material to any Qualified Person designated under Paragraph 4(g), counsel for the Party making the disclosure shall: (i) ensure that a copy of this Protective Order has been provided to such Qualified Person; and (ii) obtain from such Qualified Person a signed Written Assurance, which Written Assurance shall be retained by the Party disclosing the Confidential Material.

10.     All depositions, portions of depositions, transcripts of such depositions, and any related exhibits taken in this Litigation may be designated "Confidential" or "Highly Confidential" and thereby obtain the protections accorded other "Confidential" or "Highly Confidential" Discovery Material.  Confidentiality designations for depositions shall be made either on the record by counsel for the Party or witness producing such information; or by written notice to the other party within ten (10) days of receipt of the final transcript.  Unless otherwise agreed, depositions shall be treated as "Highly Confidential" during the 10-day period following receipt of the final transcript.  The deposition of any witness (or any portion of such deposition) that encompasses Highly Confidential or Confidential information shall be taken only in the presence of persons who are qualified to have access to such information.  One or both of the following legends shall be placed on the transcript and each copy of the transcript containing such Confidential or Highly Confidential Discovery Material: "CONTAINS CONFIDENTIAL INFORMATION" or "CONTAINS HIGHLY CONFIDENTIAL INFORMATION."  If all or part of a videotaped deposition is designated as Confidential or Highly Confidential, the videocassette disk, drive, or other storage device, and digital file name, shall be labeled with one or both of such legends.

11.     The inadvertent or unintentional disclosure of Confidential or Highly Confidential Discovery Material that should have been designated as such, regardless of whether the information, document or thing was so designated at the time of disclosure, shall not be deemed a waiver in whole or in part of a party's or non-party's claim of confidentiality, either as to the specific information, document or thing disclosed or as to any other material or information concerning the same or related subject matter.  Any party or non-party who inadvertently fails to identify documents as "Confidential" or "Highly Confidential" shall have fourteen (14) days

from the discovery of its oversight to correct its failure. Such failure shall be corrected by providing written notice of the error and substituted copies of the inadvertently produced documents. Any party receiving such inadvertently unmarked documents shall make reasonable efforts to retrieve documents distributed to persons not entitled to receive documents with the corrected designation.

12. When the inadvertent or mistaken disclosure of any information, document or thing protected by privilege, the work-product immunity, or other applicable legal protection, is discovered by the producing party and brought to the attention of the receiving party, the receiving party's treatment of such material shall be in accordance with this Stipulated Protective Order and Fed. R. Civ. P. 26(b)(5)(B). Such inadvertent or mistaken disclosure of such information, document or thing shall not by itself constitute a waiver by the producing party of any claims of privilege, work-product immunity, or other applicable legal protection. However, nothing herein restricts the right of the receiving party to challenge the designating party's claim of privilege if appropriate after receiving notice of the inadvertent or mistaken disclosure. Any party who inadvertently discloses documents that are privileged or otherwise immune from discovery shall, promptly upon discovery of such inadvertent disclosure, so advise the receiving party and request that the documents be returned. The receiving party shall return such inadvertently produced documents, including all copies, within five (5) days of receiving such a written request. The party returning such inadvertently produced documents may thereafter seek re-production of any such documents pursuant to applicable law.

13. Any party may request a change in the designation of any information designated "Confidential" and/or "Highly Confidential." If the requested change in designation is not agreed to, the party seeking the change may move the Court for appropriate relief, providing

notice to any third party whose designation of produced documents as "Confidential" and/or "Highly Confidential" in the Litigation may be affected. The party asserting that the material is Confidential or Highly Confidential shall have the burden of proving that the information in question is within the scope of protection afforded by this Protective Order. Pending the Court's determination, the Discovery Material at issue shall continue to be treated as "Confidential" or "Highly Confidential" as appropriate.

14.     Within sixty (60) days of the termination of this Litigation, including any appeals, each party shall either destroy or return to the opposing party all documents designated by the opposing party as "Confidential" and "Highly Confidential" and all copies of such documents, and shall destroy all extracts and/or data taken from such documents. Each party shall provide a certification as to such return or destruction within the 60-day period. Attorneys shall be entitled to retain, however, a set of all documents filed with the Court, all deposition transcripts and deposition exhibits, and all correspondence generated in connection with this Litigation.

15.     Any party may apply to the Court for a modification of the Protective Order, and nothing in the Protective Order shall be construed to prevent a party from seeking such further provisions enhancing or limiting confidentiality as may be appropriate.

16.     No Litigation taken in accordance with the Protective Order shall be construed as a waiver of any claim or defense in the Litigation or of any position as to discoverability or admissibility of evidence.

17.     Nothing in this Confidentiality Order shall be deemed or construed to create any presumption that any document or information designated by a Party as "Confidential Information" or "Highly Confidential Information" is in fact confidential or proprietary, or otherwise protected by law.

18.     A Party's compliance or failure to comply with the terms of this Stipulated Protective Order shall not operate as an admission that any particular document is or is not (a) Confidential, (b) Highly Confidential, (c) privileged, or (d) admissible in evidence at trial.

19.     The obligations imposed by the Protective Order shall survive the termination of this Litigation.

20.     In the event that any Party subject to this Protective Order receives a subpoena, discovery request outside of this Litigation, or other process or order (each, a "Request") seeking the production of "Confidential" or "Highly Confidential" Discovery Material belonging to a Party other than the Party receiving the Request, the recipient of the Request (the "Requested Party") shall promptly: (i) advise the person issuing the Request that the Discovery Material being requested is subject to this Protective Order; and (ii) notify counsel for the designating party in writing of such Request within forty-eight (48) hours of receiving the Request and furnish them with copies of the Request and any other documents served in connection therewith.  The designating party shall have at least five (5) business days from receiving a copy of the Request to file a motion to quash or otherwise object to the Request.  If production of Discovery Material is required prior to the expiration of this five-day period, the Requested Party shall move for a protective order (or other like relief) on the grounds that the requested material has been designated as "Confidential" or "Highly Confidential" pursuant to this Protective Order.

21.     This Confidentiality Order is binding on all Parties and on all non-parties who have been served with a copy of this Confidentiality Order and who either produce or receive Discovery Material designated "Confidential" or "Highly Confidential," or information

therefrom or derived or derivable therefrom, and shall remain in force and effect until modified, superseded, or terminated by consent of the Parties or by Order of the Court.


Dated: September 28, 2018           SO ORDERED:


                                    _s/Elizabeth Cowan Wright_
                                    Elizabeth Cowan Wright
                                    United States Magistrate Judge
                                    District of Minnesota

# EXHIBIT A
## WRITTEN ASSURANCE

_____ declares that:

I reside at _____ in the city of _____ , county of _____ , state of _____ ;

I am currently employed by _____ located at _____and my current job title is _____ .

I have read and understand the terms of the Protective Order in *West Publishing Corp. v. LegalEase Soutions, LLC*, Case No. 18-CV-01445 (DSD/ECW), pending in the United States District Court of Minnesota, and I understand that access to information designated as "Confidential" or "Highly Confidential" may be provided to me and that such access is pursuant to the Protective Order's terms, conditions, and restrictions.  I agree to comply with and be bound by the provisions of the Protective Order.

I shall not divulge any documents, or copies of documents, designated "Confidential" or "Highly Confidential" obtained pursuant to the Protective Order, or the contents of such documents, to any person other than those specifically authorized by the Protective Order. I shall not copy or use such documents except for the purposes of this Litigation and pursuant to the terms of the Protective Order.

As soon as practical, but no later than 30 days after final termination of this Litigation, I shall return to the attorney from whom I have received them any documents in my possession designated "Confidential" or "Highly Confidential", and all copies, excerpts, summaries, notes, digests, abstracts, and indices relating to such documents.

I declare under penalty of perjury that the foregoing is true and correct.


_____
Date

_____
Signature


_____
Printed Name

# EXHIBIT 2

ROSS    Features    Coverage    Pricing    Customers    About Us    Blog                    Log In

# Announcement

**By The Founders    -    December 11, 2020    -    ROSS News**



Dear customers, friends, supporters,

We have made the difficult decision to shut down operations at ROSS
Intelligence. As of Monday of this week, we have no longer been accepting new
customers. As of January 31, 2021, the ROSS platform will no longer be
available. Between now and then, our priority is to help our current customers
transition to other services.

## What happened

Six years ago, we set out to make legal services more accessible by innovating legal research. We felt then, as we do today, that legal research could be more efficient, less expensive, and more accessible.

Since then, we've created a product that legal researchers love. We've worked with amazing partners to make legal research tasks more efficient and delightful. At every turn, we've been grateful to receive lawyers' and other legal researchers' feedback to shape ROSS's development. We've been honored to serve legal researchers in many contexts across the U.S.: lawyers in large firms and small firms; solo practitioners; students; pro se litigants; academics; librarians; and more.

In the spring of this year, Thomson Reuters and Westlaw brought a spurious lawsuit against ROSS. When the news broke, we were grateful to receive so much community support. However, just as Westlaw devised it to be, this ongoing suit has been heavy for ROSS to bear. Litigation is expensive — no matter how speculative the claims against you nor how worthy your position. With our company ensnared by this legal battle, we have been unable to raise another round of funding to fuel our development and marketing efforts. Our bank account is running out, and we must cease operations in the New Year.

## What this means for our customers

ROSS will continue to be available as it is today until January 31, 2021. Each customer will be able to export their personal data, including all data from their saved folders, beginning in January. We will be working with our customers to transition them to other services — including platforms by our friends at Fastcase, vLex and Casetext. If you are a user, please follow the instructions available in this link.

## What this means for the legal industry

We have not abandoned our vision for access to justice through the use of technology. We will continue to fight the good fight.

However, we are now pursuing that vision in the courthouse rather than the marketplace. Although we are out of funds for our operations, ROSS has insurance for our litigation costs. The company will continue as a going concern so that the facts at the heart of this lawsuit are brought to light and so that Westlaw's tactics — using litigation as a weapon and stifling competition — do not succeed.

We hope that by continuing in this way, the precedent this court case sets will inspire innovation rather than shut down competition. We must go, but we will not go gently.

Andrew Arruda, Jimoh Ovbiagele, Pargles Dall'Oglio, and the ROSS team







The Founders

# Popular Articles



**ROSS NEWS**

**Enough.**

**ROSS NEWS**

**Announcement**

**AI AND THE LAW**

**ROSS partners with OpenAI for the launch of its API**

ROSS is working with

OpenAI to refine their first commercial product. What does that mean for AI and legal tech?

**ROSS**

Twitter

Facebook

LinkedIn

© ROSS Intelligence, Inc. 2014–2020

**Company**

About Us

Careers

Terms of Service

Privacy Policy

**Product**

Features

Coverage

Pricing

Academic Access

Why ROSS

What is AI

**Resources**

Contact Us

FAQ + Support

Blog