

1313 North Market Street
P.O. Box 951
Wilmington, DE 19801-0951
302 984 6000
www.potteranderson.com

Stephanie E. O'Byrne
Counsel
Attorney at Law
sobyrne@potteranderson.com
302 984-6067 Direct Phone
302 658-1192 Firm Fax

September 3, 2021

**VIA CM/ECF**

The Honorable Leonard P. Stark
U.S. District Court for the District of Delaware
844 North King Street
Wilmington, DE 19801-3555

    Re: *Thomson Reuters Enterprise Centre GmbH et al. v. ROSS Intelligence Inc.*,
          C.A. 20-613-LPS

Dear Judge Stark:

    ROSS writes in response to Plaintiffs' September 1, 2021 letter regarding the designation of Carolyn Blankenship as in-house counsel pursuant to Paragraph 7.3(b) of the Protective Order. Neither Plaintiffs' many arguments nor Ms. Blankenship's declaration justifies providing Ms. Blankenship access to ROSS's highly confidential information.

### I.     <u>Plaintiffs' Submission Does Not Support Plaintiffs' Request.</u>

    Regardless of how diligent and ethical Ms. Blankenship may be, courts recognize that one simply is unable to compartmentalize and keep separate competitor information provided in litigation from information in the same competitive space received and acted upon as part of one's job. That is the reason access is denied. *See, e.g.*, *PhishMe, Inc. v. Wombat Sec. Techs., Inc.*, 2017 WL 4138961, at *3-5 (D. Del. Sept. 8, 2017) (Stark, J.); *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1469-72 (9th Cir. 1992) (upholding the trial court's denial of in-house counsel's access to its competitors' trade secrets because in-house counsel's role advising on legal issues, such as competitive marketing, touched on information that would be learned during the litigation); *Sullivan Mkt., Inc. v. Valassis Communications, Inc.*, 1994 WL 177795, at *3 (S.D.N.Y. May 5, 1994) (denying requested designation due to risk of inadvertent disclosure).

    Ms. Blankenship's declaration avoids counsel's prior acknowledgement that she actively participated in and advised Thomson Reuters' executives on competitive business decisions, and hedges as to what types of decisions she makes in her role.[1] *See* D.I. 64, Ex. A (August 5, 2021

---

[1] Plaintiffs did not provide ROSS the information submitted in Ms. Blankenship's declaration during the conferral process. *See* D.I. 64, Exhibit A (Email Thread re Carolyn Blankenship's Designation). Had they, ROSS would have asked questions that follow from the information now provided. Some examples: What does it mean to provide advice "*in general* to projects . . . ."? *See* Blankenship Decl. ¶ 11. What does it mean that the advice "*is generally not based* on the kind of information where similar or corresponding information from a competitor would provide an advantage." *See id.* What "other forms of technology" does Ms. Blankenship advise on? *See id.*

K. Ghaffari Email). While Ms. Blankenship attests that she does not make competitive decisions, D.I. 63, Ex. A, Carolyn Blankenship Decl. ("Blankenship Decl.") ¶¶ 8-10, she confirms that she does in fact provide "legal advice that relates in general to projects *surrounding product development, artificial intelligence and other forms of technology* . . . ." *Id.* ¶ 11 (emphasis added). And while the declaration is vague in terms of details, Ms. Blankenship states more plainly elsewhere that she "deliver[s] strategic advice on multi-faceted innovation, litigation, and product development issues, including artificial intelligence/machine learning . . . ." D.I. 64, Ex. A (LinkedIn profile); *see also id.* ("Articulate the intellectual property, artificial intelligence and open-source strategy for the company."). In other words, she advises Plaintiffs on competitive business decisions involving the technology at issue in this case and that Plaintiffs have asked ROSS to produce. *See PhishMe, Inc.*, 2017 WL 4138961.

Moreover, Ms. Blankenship cannot categorically deny that competitor information is without relevance to her work. She states carefully: "The advice I give *is generally* not based on the kind of information where similar or corresponding information from a competitor would provide an advantage." Blankenship Decl. ¶ 11 (emphasis added). It is unclear, for example, how she can provide legal advice relating to projects surrounding artificial intelligence, but avoid doing so without utilizing information about competitors' plans. *Id.* Ms. Blankenship does not appear to be an intellectual property prosecuting attorney, and Ms. Blankenship surely cannot provide artificial intelligence project advice to Thompson Reuters in a vacuum. Rather, Ms. Blankenship provides legal advice based on facts in the same space as ROSS's competitor technology, specifically artificial intelligence, whatever "other forms of technology" encompasses, and machine learning. Blankenship Decl. ¶ 11; D.I. 64 Ex. A.

Ms. Blankenship insiszts that the advice provided "is purely *legal*." Blankenship Decl. ¶ 11 (emphasis in original). This makes little difference in the context of whether she should be allowed access to highly confidential documents and information. This Court has already concluded that it is not enough to try to cabin one's role as providing legal advice. *See PhishMe, Inc*, 2017 WL 4138961, at * 5; *see also, e.g.*, *Intel Corp. v. VIA Techs., Inc*., 198 F.R.D. 525, 529 (N.D. Cal. 2000); *Sullivan Mktg., Inc.*, 1994 WL 177795 at *3. As explained above, one cannot provide legal advice without knowing a set of sets.

Finally, the cases cited by Plaintiffs do not support their position. In *Standard Space Platforms Corp. v. U.S.*, the person seeking access was a life insurance salesman, having left the field of work that was the basis for the challenged designation. 35 Fed. Cl. 505, 509 (1996). In *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, each of the attorneys at issue professed not to be involved "in decisions involving pricing, products and services sold by Verizon or its affiliated entities, marketing, technology, or any other similar competitive decision making." 274 F.R.D. 576, 580, 581, 583 (E.D. Va. 2010). And in *Sanofi-Aventis U.S., LLC v. Breckenridge Pharmaceutical, Inc.*, the in-house designee was completely insulated from the legal department, worked remotely or in offices located outside of the state where the corporate office was located, and without access to the corporation's network drives. 2016 WL 308795, at *1 (D.N.J. Jan. 25, 2016). These circumstances are not present in this case. In contrast, Ms. Blankenship *is* undisputedly involved in Thomson Reuters' products and technology. Blankenship Decl. ¶ 11; D.I. 64, Ex. A.

The Honorable Leonard P. Stark
September 3, 2021
Page 3

## II. There Is Prejudice To ROSS, But Not Plaintiffs.

While ROSS has ceased operations after Plaintiffs filed their lawsuit, there is value to the technology, and once the specter of litigation is removed ROSS will seek to capitalize on what it created. Providing someone involved in competitive decision-making on artificial and machine learning products access to ROSS's artificial intelligence and machine learning technology will prejudice ROSS on a go-forward basis, potentially, even preclude the possibility that it will be able to recoup value if otherwise successful in this suit.

For this reason, *Softwareworks Group, Inc. v. IHosting, Inc.*, 2006 WL 3456695 (N.D. Cal. Nov. 29, 2006), is distinguishable. Defendant sought to preclude plaintiff's in-house counsel from access to certain materials. But plaintiff was a defunct company having sold its assets and customers to defendant. ROSS has not sold itself away. It still has assets, including its artificial intelligence/machine learning legal research technology. Moreover, the stated reason for preclusion in *Softwareworks* was fear that in-house counsel would disparage defendant's customers. That is not the concern at issue in this case.

In contrast, there is no prejudice to Plaintiffs.[2] As Ms. Blankenship makes clear, there are 56 attorneys available. Blankenship Decl. ¶ 7. Plaintiffs are also ably represented by a national law firm. *See Intel Corp.*, 198 F.R.D. at 529 (denying designation for this reason). While Ms. Blankenship claims she has historical knowledge, Ms. Blankenship has not explained how such knowledge is relevant here. For example, it is unclear how she would be precluded from using that knowledge given that she otherwise would have access to ROSS's documents and information except a subset designated "highly confidential."

## III. Prior Access To The Legalese Documents Is Irrelevant.

Finally, that Ms. Blankenship has reviewed documents produced in the *LegalEase* matter does not mean she had access to ROSS's highly confidential, technical documents. As explained in ROSS's opening letter, the *Legalese* case did not involve ROSS's technology. In footnote 1 of their letter, Plaintiffs argue that Plaintiffs were unaware that ROSS intended to produce "unspecified technical documents" beyond that produced in *LegalEase* matter. However, Plaintiffs actually requested ROSS's technical documents, even specifying which documents they sought. *See* D.I. 64, Exhibit C, Plaintiffs Requests for Production, Set One, Nos. 1-3, 9, 12, 28, 33, 67-72, and 81.

For the foregoing reasons, ROSS requests that the Court denies Plaintiffs' request to designate Carolyn Blankenship, General Counsel of Innovation and Technology.

---

[2] Ms. Blankenship claims that she should have access because Plaintiffs anticipate ROSS will over designate documents. *See* Blankenship Decl. ¶¶ 23-24. ROSS does not intend to arbitrarily designate documents. In any event, the Protective Order provides recourse. D.I. 48, Section 6.

The Honorable Leonard P. Stark
September 3, 2021
Page 4

                                                Respectfully,

                                                */s/ Stephanie E. O'Byrne*

                                                Stephanie E. O'Byrne

SEO:nmt/7361958/50241

Enclosures
cc: Counsel of record (via electronic mail)