# Morris, Nichols, Arsht & Tunnell LLP

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347

(302) 658-9200

Michael J. Flynn
(302) 351-9661
mflynn@morrisnichols.com

September 3, 2021

The Honorable Leonard P. Stark   *VIA ELECTRONIC FILING*
J. Caleb Boggs Federal Building
844 King Street, Unit 26, Room 6124
Wilmington, DE  19801-3556

      Re:   *Thomson Reuters Enterprise Centre GmbH v. ROSS Intelligence Inc.*,
             C.A. No. 20-613-LPS

Dear Judge Stark:

      Further to the Court's August 30, 2021 Order, we are writing on behalf of Plaintiffs in response to ROSS's September 1, 2021 letter (D.I. 64) opposing the designation of Carolyn Blankenship as in-house counsel to access information that ROSS designates as Highly Confidential ("HC-AEO") pursuant to the Court's Protective Order ("P.O.").  D.I. 48.

      As an initial matter, ROSS's letter tellingly ignores that, pursuant to the P.O., ROSS bears the burden to prove "that the risk of harm" from disclosing HC-AEO information to Ms. Blankenship "outweighs" Plaintiffs' "need to disclose the Protected Material" to Ms. Blankenship, as Plaintiffs' "Designated House Counsel."  D.I. 48 ¶ 7.5(c).  Moreover, ROSS's letter shows that ROSS cannot meet its burden.  Contrary to ROSS's assertion that Ms. Blankenship is "involved in competitive decisionmaking," D.I. 64, at 1, as explained in Ms. Blankenship's sworn declaration, the advice she provides surrounding product development and artificial intelligence is *legal* advice.  D.I. 63-1 ¶ 11.  Further, denying Ms. Blankenship visibility into all aspects of the case will significantly limit her ability to fulfill her role in managing this case, which prejudices Plaintiffs.  Thus, in addition to the lack of risk of harm to ROSS, any risk is outweighed by the harm to Plaintiffs from the "restrictions imposed on [Plaintiffs'] right to have the benefit of counsel of its choice."  *See In re Deutsche Bank Tr. Co. Ams.*, 605 F.3d 1373, 1380 (Fed. Cir. 2010).  Ms. Blankenship thus should be allowed access.

**Ms. Blankenship is Not a Competitive Decisionmaker and ROSS Will Not Be Harmed**

      ROSS first claims that Ms. Blankenship should not be allowed access to HC-AEO information because she is "*involved, or may become involved,* in . . . competitive decisionmaking."  D.I. 64, at 2 (citing D.I. 48 ¶ 7.5(b)).  But several sworn-to facts from Ms. Blankenship's declaration show that she is neither involved in, nor likely to become involved in, competitive decisionmaking.  She is not the chief legal officer, nor a member of the Board of Directors at Thomson Reuters.  D.I. 63-1 ¶¶ 7, 10.  She does not "make decisions related to strategy against competitors" or "make decisions surrounding Thomson Reuters' product designs, development, testing, manufacture, pricing, or marketing of artificial intelligence or machine learning products."  *Id.* ¶ 8.

      As Plaintiffs have repeatedly explained to ROSS, and as Ms. Blankenship has sworn, the advice Ms. Blankenship provides surrounding product development and artificial intelligence is

The Honorable Leonard P. Stark                                                                                          Page 2
September 3, 2021

*legal* in nature.  D.I. 63-1 ¶ 11.  Thus, *PhishMe, Inc. v. Wombat Sec. Techs., Inc.*, which ROSS cites, is inapposite.  In that case, the court found that the plaintiff's counsel participated in competitive decisionmaking where he managed patent prosecution and "act[ed] as a strategic business partner" during a "'pivotal year' for the company" when its prime motivation was technological development and patent enforcement, making "patent infringement (or license) . . . a particularly 'important' part of its business strategy."  2017 WL 4138961, at *3, *6 (D. Del. Sept. 8, 2017).  He was at the heart of the decision-making process, because he was one of 15 executives on the plaintiff's management team, reported directly to the CEO, regularly attended meetings with the board, and was the highest-ranking of the three licensed attorneys at the company.  *Id.* at *4, *7.  By contrast, Ms. Blankenship does not participate in patent prosecution or licensing, and Thomson Reuters is an established company that has not been the plaintiff in patent litigation in many years.  D.I. 63-1 ¶ 9.  Her participation in board meetings is rare (once or twice in her long career) and was limited to providing a legal update.  *Id.* ¶ 10.  She is not the company's chief legal officer and is part of a much larger team of attorneys with specialized roles.  As the court noted in *Phish Me*, a larger legal team "lessen[s] concerns about future misuse," because it is less likely that counsel will be called to provide advice implicating the confidential information at issue, and in that situation, counsel could decline the project and ask that another attorney handle the matter.  2017 WL 4138961 at *7; *see also Brit. Telecomm. PLC v. IAC/InterActiveCorp*, 330 F.R.D. 387, 394 (D. Del. 2019) (distinguishing *PhishMe* where plaintiff was "a large company" and counsel did "not engage in patent prosecution").[1]  Thus, the risk of inadvertent disclosure or competitive use is low.

      ROSS next claims it will be harmed from disclosure to Ms. Blankenship because it is producing "technical information" concerning its "artificial intelligence/machine learning technology," which was not produced or reviewed by Ms. Blankenship in *West Publishing Co. v. LegalEase Solutions, LLC*, Case No. 18-cv-01445 (DSD/ECW) (D. Minn.) (the "LegalEase Litigation").  D.I. 64, at 2–3.  But ROSS has not explained what these unspecified "technical" documents concerning its technology will entail.  To the extent it is source code, Ms. Blankenship would not see ROSS's source code as the P.O. precludes her from reviewing it, D.I. 48 ¶ 7.4, which weighs in favor of allowing her access.  *See Brit.*, 330 F.R.D. at 394.  If it is something other than source code, and if ROSS is willing to provide more detail on those documents, then Plaintiffs can further consider whether Ms. Blankenship will need access to them.  Having failed to do so, ROSS cannot justify its blanket refusal to grant Ms. Blankenship access to HC-AEO information.

      Faced with the fact that Ms. Blankenship already had access to ROSS's documents that were produced in the LegalEase Litigation, ROSS argues "as a third-party," it did not "have an opportunity in the [LegalEase Litigation] to address the issue of who reviewed its documents."  D.I. 64, at 3.  ROSS's position is undermined, however, by the fact that ROSS inquired in that case about whether non-lawyers, particularly those who might work in Thomson Reuters' artificial intelligence group, might have access to its information.  D.I. 63-1 ¶ 20.  If ROSS had

---

[1] ROSS's other cases also are inapposite.  *See Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1471 (9th Cir. 1992) (counsel "was hired just a few weeks prior to the hearing, . . . was one of thirteen or fourteen employees, and . . . was responsible for advising his employer on a gamut of legal issues, including contracts, marketing, and employment"); *Intel Corp. v. VIA Techs., Inc.*, 198 F.R.D. 525, 530 (N.D. Cal. 2000) (counsel's role was to "evaluate[] the strength of the patent, Intel's products implicated by the patent, and competitors' products implicated by the patent").

the opportunity to inquire about non-lawyer access, then it also had an equal opportunity to address the issue of lawyer access to its documents. And notably, ROSS has not articulated any harm as a result of Ms. Blankenship having had access to those documents.[2]

### Plaintiffs Will Be Harmed if Ms. Blankenship is Barred from HC-AEO Information

In contrast to the lack of harm to ROSS, Plaintiffs will be prejudiced if Ms. Blankenship is unable to view HC-AEO information. She is an important, senior member of the in-house litigation team and the primary contact for outside counsel. As Ms. Blankenship explained, to advise outside counsel and manage case strategy, she required access to all relevant information. D.I. 63-1 ¶¶ 23, 25; *see Intervet, Inc. v. Merial Ltd.*, 241 F.R.D. 55, 56 (D.D.C. 2007).

ROSS nevertheless claims that Plaintiffs will not be harmed if she is precluded from accessing HC-AEO information because Plaintiffs also designated Jeanpierre Giuliano, and ROSS does not object to his designation. D.I. 64, at 3. But as ROSS concedes, the P.O. (which ROSS negotiated and agreed to) allows for multiple in-house counsel to be designated. *Id.* In fact, it allows up to ***four*** (not three) in-house counsel. D.I. 48 ¶ 2.4. Plaintiffs should thus be allowed to designate up to three more individuals of its choice, including Ms. Blankenship, as is Plaintiffs' right. *See Evertz Microsystems Ltd. v. Lawo Inc.*, 2019 WL 5864173, at *2 (D. Del. Nov. 8, 2019) ("A party has a strong interest in choosing counsel to represent it . . ."); *Deutsche Bank*, 605 F.3d at 1380 (discussing the balancing of the risk of disclosure against a "party's right to have the benefit of counsel of its choice"). Moreover, Ms. Blankenship's history with this case and the LegalEase Litigation has afforded her the unique knowledge necessary to direct the litigation, which cannot "easily [be] transferred to another member of [her] team or outside counsel." D.I. 63-1 ¶ 25. She is the one responsible for reviewing the case to direct outside counsel, which she cannot effectively do unless she is privy to all relevant information. *Id.*

That ROSS does not object to Ms. Blankenship's ability to access merely confidential information is insufficient, as ROSS already has shown a propensity to over-designate its documents. ROSS originally designated the entirety of its interrogatory response as HC-AEO, and only de-designated *some* portions after Plaintiffs objected. The process of objecting and de-designating (even where ROSS agrees to do so) delays Ms. Blankenship's ability to meaningfully participate in this lawsuit. This weighs in favor of giving her access. *See Acuity Brands Lighting, Inc. v. Bickley*, 2015 WL 12976102, at *3 (E.D. Ky. Sept. 4, 2015).

\* \* \*

Because ROSS has not met its burden under the P.O. to show that the risk of harm from disclosing HC-AEO information to Ms. Blankenship outweighs Plaintiffs' need to disclose such information to her, Plaintiffs respectfully request that the Court allow Ms. Blankenship full access. D.I. 48, ¶ 7.5(c).

---

[2] ROSS also claims that Plaintiffs' "information and belief" allegations in the Complaint and its representations that discovery is necessary to determine what ROSS copied are at odds with Plaintiffs' claim that Ms. Blankenship has already reviewed ROSS's documents. D.I. 64, at 3. This is nonsensical, because, as ROSS knows, Plaintiffs were required to "destroy" the designated documents produced in the LegalEase Litigation, pursuant to the Protective Order in that matter. D.I. 63-1, Exhibit 1, ¶ 14.

The Honorable Leonard P. Stark  Page 4
September 3, 2021

                                                     Respectfully,

                                                     Michael Flynn (# 5333)

cc:     All counsel of record