# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION, | ) ) ) ) C.A. No. 20-613-LPS ) |
| Plaintiffs/Counterdefendants, | ) **JURY TRIAL DEMANDED** ) |
| v. | ) **PUBLIC VERSION** ) |
| ROSS INTELLIGENCE INC., | ) ) |
| Defendants/Counterclaimant. | ) |

## LETTER TO THE HONORABLE LEONARD P. STARK FROM DAVID E. MOORE

OF COUNSEL:

Gabriel M. Ramsey
Warrington Parker
Kayvan M. Ghaffari
Jacob Canter
CROWELL & MORING LLP
3 Embarcadero Center, 26th Floor
San Francisco, CA 94111
Tel: (415) 986-2800

Crinesha B. Berry
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004
Tel: (202) 624-2500

Dated: January 5, 2022
Public Version Dated: January 5, 2022
7543058 / 50241

David E. Moore (#3983)
Bindu A. Palapura (#5370)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com

*Attorneys for Defendant/Counterclaimant ROSS Intelligence, Inc.*

Dear Judge Stark:

Pursuant to this Court's January 4, 2022 (D.I. 85) Order, Defendant/Counterclaimants ROSS Intelligence Inc. ("ROSS") submits this letter and requests the Court to compel Plaintiffs/Counterdefendants Thomson Reuters Enterprise Centre GmbH and West Publishing Company to provide documents responsive to the Requests outlined below.[1]

## I.     Background

The discovery requests at issue in this brief seek information regarding the basis for Plaintiffs' copyright infringement and tortious interference claims. The information ROSS seeks includes Plaintiffs' (1) agreements with third-parties regarding Plaintiffs' alleged copyrighted materials (RFP Nos. 1, 3-4, 53-54); (2) interpretations (parol evidence) relating to their licensing agreements (RFP Nos. 48-54); and (3) agreements by which Plaintiffs obtain judicial opinions and the agreements relating to use and the provision of headnotes (RFP Nos. 57-65). *See, e.g.*, Ex. E.

## II.    Argument[2]

### A.     Settlement Agreements with Third-Parties (RFP Nos. 1, 3-4)

Plaintiffs refuse to provide any settlement agreements with third-parties, including those with LexisNexis, regarding Plaintiffs' "Westlaw Content"—the term used by Plaintiffs to describe the materials and works at issue (Complaint ¶ 1). Plaintiffs claim these agreements "are irrelevant to the claims in this case against ROSS and would create mini trials about the circumstances and issues of other cases and situations." *See* Ex. D at 12. Plaintiffs do not claim there is any burden or prejudice in producing these agreements.

Courts recognize that settlement agreements in patent and copyright cases are discoverable and relevant to assessing ownership rights, determining damages, and proving affirmative defenses, including unclean hands, waiver, non-enforcement, and copyright misuse. *See Bandai Am. Inc. v. Bally Midway Mfg. Co.*, 775 F.2d 70 (3d Cir. 1985) (holding that a pre-existing settlement agreement establishes a copyright ownership interest); *Abbvie Inc. v. Boehringer Ingelheim Int'l GMBH*, 2019 U.S. Dist. LEXIS 62493, at *6-7 (D. Del. Apr. 11, 2019) (settlement agreements were discoverable and relevant to defendants' unenforceability defense); *Santrayll v. Burrell*, 1998 U.S. Dist. LEXIS 586, at *5 (S.D.N.Y. Jan. 22, 1998) (settlement agreement was

---

[1] The parties made reasonable efforts to resolve these disputes. The parties exchanged conferral letters on August 3, 2021, Ex. A, August 25, 2021, Ex. B, and October 4, 2021, Ex. C; *see also* Ex. D (further conferral). The parties conferred telephonically on October 22 and December 16.

[2] Plaintiffs object to ROSS's Requests as unlimited in temporal scope. For those requests that had no natural time limitation and that are issue in this letter brief, ROSS agreed to limit the scope of the Requests to the last 20 years. ROSS did not further limit the temporal scope for two reasons. First, Plaintiffs have yet to identify the specific Westlaw Content that ROSS is alleged to have infringed. Thus, ROSS still does not know the headnotes or the Key Numbers, or any other specific copyrighted materials, that are at issue. Second, many, if not all, of Plaintiffs' copyrights are far older than 20 years. *See, e.g.*, Compl., Ex. A (identifying several copyright registrations dating to 1981). ROSS has and does reserve its rights to seek discovery beyond this period once Plaintiffs detail the specific copyrights. There are some Requests that by their nature are specific and no temporal limitation needed to be applied as the Request itself provides the timeframe, implicitly or explicitly. *See* Ex. E (RFP No. 1).

The Honorable Leonard P. Stark
January 5, 2022
Page 2

discoverable in a copyright case); *Key Pharms., Inc. v. ESI-Lederle, Inc.*, 1997 U.S. Dist. LEXIS 13328, at *9-10 (E.D. Pa. Aug. 29, 1997)[3].

    Settlement agreements between Plaintiffs and third-parties relating to the "Westlaw Content" are relevant to the financial value Plaintiffs place on the content at issue in this dispute. *See Oppenheimer v. Episcopal Communicators, Inc*., 2020 U.S. Dist. LEXIS 146398, at *6-7 (W.D.N.C. Aug. 14, 2020) (finding that "past licensing and settlement agreements" are relevant because they can shed light on "instances where the Plaintiff has asserted his rights in his copyrights [and] the amounts recovered from those assertions"); *see also Smith v. NBC Universal*, 2008 U.S. Dist. LEXIS 13280, at *17 (S.D.N.Y. Feb. 22, 2008).

    Settlement agreements are additionally relevant to ROSS' copyright misuse affirmative defense. "The doctrine [of copyright misuse] is principally aimed at avoiding anticompetitive conduct that contravenes the goal of copyright law – 'to stimulate artistic creativity or the general public good.'" *Malibu Media, LLC v. Doe*, 381 F. Supp. 3d 343, 359 (M.D. Pa. 2018) (quoting *Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*, 342 F.3d 191, 204 (3d Cir. 2003)). Settlement agreements covering the "Westlaw Content" can shed light on Plaintiffs' understanding as to what content is properly subject to copyright protection. For example, the settlement agreements are relevant to determining whether Plaintiffs use copyrights to control the public distribution of judicial opinions, or whether Plaintiffs have taken inconsistent positions regarding what is copyrightable or requiring a license. *See, e.g.*, Counterclaim, ¶¶ 138-146. As a species of unclean hands, such discovery can also shed light on whether standard licensing practices and settlement agreements across multiple industry participants unfairly extend the copyright grant to force anticompetitive terms or licensing of things not protected by copyright. *See, e.g.*, *Practice Management Information Corp. v. Am. Med. Ass'n*, 121 F.3d 516 (9th Cir. 1997); *Lasercomb America, Inc. v Reynolds*, 911 F.2d 970 (4th Cir. 1990) (finding the misuse defense applies even if the copyright defendant at issue is not subjected to the conduct constituting misuse).

    Finally, settlement agreements regarding "Westlaw Content" can establish Plaintiffs' knowledge of which entity owns the copyrights at issue in this dispute, which bears on Plaintiffs' standing to bring claims for copyright misuse, and ROSS' defenses. Plaintiffs allege Thomson Reuters Enterprise Centre GmbH is the "sole owner" of the Westlaw Content. Compl. ¶ 32. Discovery has also shown that Plaintiff West Publishing Corp. ("West") has not held legal ownership in the Westlaw Content since, at least, June 2005. *See* Ex. F; Ex. G. If West is not the legal owner, then West has no authority to enter settlement agreements regarding a third-party's right to use or access the copyrights. *See Bandai Am. Inc.*, 775 F.2d at 73-74. It also has no right to license or enforce licenses of any Westlaw Content, even if West were considered a "beneficial owner." *See SBK Catalogue P'ship v. Orion Pictures Corp.*, 723 F. Supp. 1053, 1062 (D.N.J. 1989); *see also John Wiley & Sons, Inc. v. DRK Photo*, 882 F.3d 394, 414 (2d Cir. 2018).

    Therefore, this also bears on Plaintiffs' tortious interference claim. West purported to license the "Westlaw Content" and relevant databases to LegalEase, the third-party whose contract ROSS purportedly interfered with. It appears that it did not have the power to do so. Therefore,

---

[3] Rule 408 does not limit the discoverability. *See Abbvie Inc.*, 2019 U.S. Dist. LEXIS at *7; *S.E.C. v. Downe*, 1994 U.S. Dist. LEXIS 708 (S.D.N.Y. Jan. 27, 1994).

The Honorable Leonard P. Stark
January 5, 2022
Page 3

there is reason to seek settlement agreements to determine whether and how Plaintiffs consider this lack of legal ownership by West.

### B. Interpretative Documents re License Agreements (RFP Nos. 48-54)

ROSS requests documents regarding Plaintiffs' interpretation (parol evidence) of and relating to their licensing agreements. *See* Ex. E. Plaintiffs argue parol evidence is improper because the "interpretation of its licensing agreements with respect to parties other than LegalEase is not relevant to Plaintiffs' tortious interference claim." Ex. D at 13.

Courts regularly allow discovery into extrinsic evidence regarding a party's interpretation of its own agreements. *See Ferro v. Atl. City Showboat, Inc.*, 2009 U.S. Dist. LEXIS 140525, at *4-5 (D.N.J. July 13, 2009) ("[I]t is inappropriate to deny discovery of parol evidence simply because it may be inadmissible at trial.") (collecting cases); *Grossman v. First Pa. Corp.*, 1992 U.S. Dist. LEXIS 2266, at *3 (E.D. Pa. Feb. 24, 1992).

Such evidence is all the more important to this case. Plaintiffs' own documents show there has been internal confusion concerning the interpretation of certain provisions in the research agreement. *See* Ex. H (internal email where Plaintiffs' Head of Client Management ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. In addition, Plaintiffs' licensing agreement prohibits Westlaw users from distributing Westlaw content to competitors. D.I. 16-1. ROSS is entitled to understand how Plaintiffs interpret and enforce this provision (and others), how it defines "competitor," and what forms of distribution it contends would violate this provision.[4]

### C. Origin of Content Contained on the Westlaw Platform (RFP Nos. 57-65)

ROSS seeks the contracts by which Plaintiffs obtain judicial opinions. Plaintiffs receive judicial opinions from certain states cases with headnotes created by the states. Ex. I. In such instances, Plaintiffs cannot rightly claim a copyright in those headnotes. ROSS does not know what else is provided. Also, if this activity influences any compilation claimed, it may be that Plaintiffs cannot claim copyright there. More generally, ROSS is entitled to know whether there are any other terms or restrictions or conditions regarding the use of judicial opinions.

Plaintiffs refuse to provide the requested documents, arguing the copyright claim is based on "Plaintiffs' original headnotes, not headnotes that were written by states." Ex. D at 14. Since Plaintiffs have failed to specifically identify any headnote that ROSS allegedly infringed, ROSS is entitled to test that assertion. Moreover, ROSS is entitled to discovery to test the veracity of Plaintiffs allegations, considering Plaintiffs' represented to the Court that they were claiming copyrights in the *entirety* of their legal database. *See* Ex. J (Mot. Hearing Tr. 37:8-18) (Oct. 30, 2020). Finally, because Plaintiffs claim a copyright in a compilation, ROSS is entitled to determine whether state provided or third party provided headnotes influence the compilation.

---

[4] As noted, West does not appear to have any legal ownership over the "Westlaw Content." Thus, Plaintiffs' interpretation goes to whether West understood it was unable to enforce a license agreement (without any legal rights to "Westlaw Content") and whether ROSS engaged in intentional and unjustified conduct based on Plaintiffs' interpretations of the agreements.

The Honorable Leonard P. Stark
January 5, 2022
Page 4

                          Respectfully,

                          */s/ David E. Moore*

                          David E. Moore

DEM:nmt/7543059/50241

Enclosures
cc: Counsel of record (via electronic mail)