IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

THOMSON REUTERS ENTERPRISE          )
CENTRE GMBH and WEST PUBLISHING     )
CORPORATION,                        )
                                    )
            Plaintiffs,             )   C.A. No. 20-613 (LPS)
                                    )
      v.                            )   REDACTED - PUBLIC VERSION
                                    )
ROSS INTELLIGENCE INC.,             )
                                    )
            Defendant.              )


**LETTER TO THE HONORABLE LEONARD P. STARK
FROM MICHAEL FLYNN**


                                        MORRIS, NICHOLS, ARSHT & TUNNELL LLP
                                        Jack B. Blumenfeld (#1014)
                                        Michael J. Flynn (#5333)
                                        1201 North Market Street
                                        P.O. Box 1347
OF COUNSEL:                             Wilmington, DE  19899
                                        (302) 658-9200
Dale M. Cendali                         jblumenfeld@mnat.com
Joshua L. Simmons                       mflynn@mnat.com
Eric A. Loverro
KIRKLAND & ELLIS LLP                    *Attorneys for Plaintiffs Thomson Reuters*
601 Lexington Avenue                    *Enterprise Centre GmbH and West*
New York, NY  10022                     *Publishing Corporation*
(212) 446-4800

Miranda Means
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116

 Originally Filed:  January 18, 2022
 Redacted Version Filed:  January 25, 2022

Dear Judge Stark:

Pursuant to D.I. 85, Plaintiffs submit this letter in opposition to ROSS's request that the Court compel them to produce certain documents. ROSS has identified those documents as "(1) agreements with third-parties regarding Plaintiffs' alleged copyrighted materials (RFP Nos. 1, 3-4, 53-54); (2) interpretations (parol evidence) relating to their licensing agreements (RFP Nos. 48-54); and (3) agreements by which Plaintiffs obtain judicial opinions and the agreements relating to use and the provision of headnotes (RFP Nos. 57-65)." *See* D.I. 86, at 1.[1]

As detailed below, these categories of documents are neither relevant nor proportional to the needs of the case. Rather, ROSS is trying to engage in a wide-ranging fishing expedition, apparently calculated to circumvent this Court's Order that discovery on ROSS's antitrust counterclaims is stayed. D.I. 41 ¶ 4. ROSS further overreaches by seeking documents spanning the past 20 years, asserting that this time period is appropriate because "Plaintiffs have yet to identify the specific Westlaw Content that ROSS is alleged to have infringed." D.I. 86, at 1 n.2. That is incorrect. Plaintiffs have identified the material that they allege ROSS infringed, which started at earliest in 2015, and agreed to produce it. *See* **Exhibit 1**; D.I. 1 ¶¶ 30–34. ROSS's attempt to burden Plaintiffs by seeking irrelevant third-party documents, including from many years before the copying even began, should be rejected.

## I.   SETTLEMENT AGREEMENTS WITH THIRD PARTIES

ROSS moves to compel Plaintiffs to produce "settlement agreements with third parties" related to all "Westlaw Content." D.I. 86, at 1. Yet, despite ROSS's statement to the contrary, *id.*, Plaintiffs already have produced the only settlement agreement that is directly related to this case: their agreement with LegalEase. As to other settlement agreements, ROSS has the burden to "show the relevance of the information requested." *See Invensas Corp. v. Renesas Elecs. Corp.*, 2013 WL 12146531, at *2 (D. Del. May 8, 2013). It cannot meet that burden because agreements "related to other infringement actions concerning other infringing products and other defendant entities are not relevant." *See Sweet People Apparel Inc. v. Saza Jeans Inc.*, 2015 WL 12645756, at *3 (C.D. Cal. Mar. 12, 2015).

ROSS puts forward a scattershot argument that third-party settlement agreements are relevant to "ownership rights, determining damages, and proving affirmative defenses, including unclean hands, waiver, non-enforcement, and copyright misuse." D.I. 86, at 1. But each of ROSS's arguments fails. First, its cases are inapposite. In *Santrayll v. Burrell*, for example, the settlement agreement was signed by a third-party scheduled to testify at trial. 1998 WL 24375, at *2–3 (S.D.N.Y. Jan. 22, 1998). The equivalent here would be LegalEase, for which the settlement agreement has been produced. ROSS's other cases involve circumstances not at issue here. *See Bandai Am. Inc. v. Bally Midway Mfg. Co.* 775 F.2d 70, 71–72 (3d Cir. 1985) (settlement involved a party *to the instant action*); *AbbVie Inc. v. Boehringer Ingelheim Int'l GmbH*, 2019 WL 1571666, at *3 (D. Del. Apr. 11, 2019) (settlement was relevant to patent non-obviousness); *Key Pharms., Inc. v. ESI-Lederle, Inc.*, 1997 WL 560131, at *3 (E.D. Pa. Aug. 29,

---

[1]   As ROSS grouped its requests, *see e.g.*, D.I. 86-1, Exhibit D at 5, 11–15, ROSS has moved only on them. Should the Court grant ROSS relief, Plaintiffs respectfully request that the Court limit its order to the categories as the RFPs may be broader than what ROSS now seeks.

The Honorable Leonard P. Stark
January 18, 2022

1997) (settlement may have unlawfully delayed entry of competition into relevant product market).

ROSS further contends that such agreements are relevant to "what content is properly subject to copyright protection" and "whether Plaintiffs use copyrights to control the public distribution of judicial opinions, or whether Plaintiffs have taken inconsistent positions regarding what is copyrightable or requiring a license." D.I. 86, at 2. Injecting into this case settlement agreements with *irrelevant third parties* for this purpose would convert this case from one about *ROSS's* infringement to a burdensome series of mini-trials on whether unrelated third parties infringe and the circumstances of each settlement. *See, e.g.*, *ICU Med., Inc. v. RyMed Techs., Inc.*, 752 F. Supp. 2d 486, 493–94 (D. Del. 2010) (facts about other copying would cause "substantial delay, wasted time, and confusion" and "require mini-trials"); *Santrayll*, 1998 WL 24375, at *3. Plaintiff's speculation that these agreements *might* bear on such issues is not sufficient to justify this risk, let alone the significant burden of producing such agreements for the past 20 years. *See Brit. Telecomms. PLC v. IAC/Interactivecorp*, 2020 WL 1043974, at *7 (D. Del. Mar. 4, 2020) ("Speculation that there is more will not suffice.").

ROSS also argues that Plaintiffs' settlement agreements with third parties are "relevant to the financial value" of "the content at issue." D.I. 86, at 2. ROSS never raised this argument before and, thus, it is not "well-considered." *Apple Inc. v. Samsung Elecs. Co.*, 2013 WL 3246094, at *23 n. 88 (N.D. Cal. June 26, 2013). In any case, courts routinely deny discovery into settlement agreements *even where the same content is infringed* as negotiated settlements "do not reflect the fair market value" for a license and "do not show what the parties would have willingly negotiated prior to litigation in an open and fair market." *See Attachmate Corp. v. Health Net, Inc.*, 2010 WL 11561518, at *1 (W.D. Wash. June 18, 2010). Moreover, ROSS has not identified any situation where a party has copied the content that ROSS is alleged to infringe, and its cases are thus inapposite.[2]

Nor can ROSS show that such agreements are relevant to copyright misuse. D.I. 86, at 2. This defense applies "only in narrow circumstances." *See Ass'n of Am. Med. Colls. v. Princeton Rev., Inc.*, 332 F. Supp. 2d 11, 19 (D.D.C. 2004). For example, in *Video Pipeline, Inc. v. Buena Vista Home Entertainment, Inc.*, the Third Circuit found that Video Pipeline was *unlikely* to succeed on the merits of its copyright misuse defense where Disney's licenses "restrict[ed] expression by licensing the Disney trailers for use on the internet only" if the websites on which they appeared did "not derogate Disney," because the "agreements do not . . . interfere with the licensee's opportunity to express such criticism on other web sites." 342 F.3d 191, 206 (3d Cir. 2003). Plaintiffs have already produced the general terms and conditions and subscriber agreements to which LegalEase agreed and breached. **Exhibits 2, 3**. ROSS has not shown how other agreements would show copyright misuse related to ROSS or the content it copied.

ROSS's argument that settlement agreements are relevant to ownership or standing makes no sense. D.I. 86, at 2. Plaintiffs already produced the contracts showing Thomson

---

2   *See Oppenheimer v. Episcopal Communicators, Inc.*, 2020 WL 4732238, at *3 (W.D.N.C. Aug. 14, 2020) (relevant where plaintiff "asserted his copyrights in the Work on two occasions"); *Smith v. NBC Universal*, 2008 WL 483604, at *3–4 (S.D.N.Y. Feb. 22, 2008) (relevant to value where third parties had infringed same video).

The Honorable Leonard P. Stark
January 18, 2022

Reuters's ownership. *See e.g.*, D.I. 86-1, Exhibits F, G; *see Reflex Media, Inc. v. Luxy Ltd.*, 2021 WL 5937650, at *8 (C.D. Cal. Oct. 20, 2021) (denying motion to compel where plaintiffs produced documents showing ownership). And ROSS's assertion that West has no right to enter into or enforce licenses involving Westlaw Content unless it is the legal owner is incorrect: ███ ████████████████████████████████████ *See* **Exhibits 4, 5**. And West has standing as the contractual counterparty to the contract with which ROSS interfered. *See* Restatement (Second) of Torts § 766 cmt. p; *see also Spanish Sports Network, LLC v. Spanish Football Prods., LLC*, 2021 WL 2284260, at *12 (D.N.J. June 4, 2021).

## II.   DOCUMENTS INTERPRETING LICENSE AGREEMENTS

ROSS further overreaches by admittedly seeking "parol evidence" on unspecified license agreements. D.I. 86, at 3. Not only is this non-specific and overbroad, Plaintiffs' interpretation of licenses that are not at issue in this case is plainly irrelevant. *See United States v. Kellogg Brown & Roots Servs., Inc.*, 284 F.R.D. 22, 38 (D.D.C. 2012) (denying motion to compel production of contracts with third parties); *Sun Pac. Mktg. Co-op., Inc. v. DiMare Fresh, Inc.*, 2009 WL 4673900, at *11 (E.D. Cal. Dec. 4, 2009) (same). As to Plaintiffs' agreements with LegalEase, Plaintiffs ***already produced*** them. **Exhibits 2, 3**. Parol evidence on such agreements is generally inadmissible, and therefore irrelevant. *Sapa Extrusions, Inc. v. Liberty Mut. Ins. Co.*, 939 F.3d 243, 257 (3d Cir. 2019); *Freeman v. Witco Corp.*, 1999 WL 389892, at *1 (E.D. La. June 11, 1999) (denying motion to compel documents related to contract negotiations with other parties as irrelevant). ROSS does not explain how those two agreements are incomplete or ambiguous such that it would need Plaintiffs' interpretations thereof—although it points to the word "competitor," its motion is far broader and does not explain how this term is ambiguous. *Buddy's Plant Plus Corp. v. CentiMark Corp.*, 978 F. Supp. 2d 523, 536 (W.D. Pa. 2013) (rejecting argument that the term "waterproof" is ambiguous). And ROSS's request is for interpretations concerning *all* licensing agreements, not just the two at issue. The overbreadth of the request is compounded by the fact that ROSS is seeking such documents for the past 20 years. Overall, "the burden and expense these far-reaching requests" place on Plaintiffs "substantially outweighs the documents' relevance and value." *Kellogg Brown*, 284 F.R.D. at 37; *see also* **Exhibit 6**, RFP Nos. 48–54.

## III.   PLAINTIFFS' CONTRACTS WITH JUDICIAL ENTITIES

ROSS moves to compel Plaintiffs to produce contracts with states through which ROSS claims "Plaintiffs obtain judicial opinions." D.I. 86, at 3. It claims such documents are relevant because some states provide their own headnotes and it speculates that there might have been something "else [] provided" or "restrictions or conditions" regarding such judicial opinions. *Id.* This is vague and nonsensical, as Plaintiffs have made clear they are not claiming copyright in judicial opinions. ROSS knows exactly what states provide their own headnotes, *see* D.I. 86-1, Exhibit I, at 12 ███████████████ and if it wants to compare the headnotes in the state judicial opinions to the versions on Westlaw, it can do so, as it is aware that Plaintiffs ████ ████████████████████████████████████ D.I. 86-1, Exhibit I, at 11. Ultimately, ROSS's speculation that there might be something else relevant in these contracts does not justify the burden of requiring Plaintiffs to produce their contracts with every state, court, and agency for 20 years. *See Kellogg Brown*, 284 F.R.D. at 37.

The Honorable Leonard P. Stark
January 18, 2022

Respectfully,

Michael Flynn (#5333)
*Counsel for Plaintiffs*

cc: Counsel of record (via electronic mail)

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION, | ) ) ) | |
| | ) | |
| Plaintiffs and Counterdefendants, | ) ) ) | C.A. No. 20-613 (LPS) REDACTED - PUBLIC VERSION |
| v. | ) ) | (Supplemental Response to Interrogatory No. 1 Only) |
| ROSS INTELLIGENCE INC., | ) ) | |
| Defendant and Counterclaimant. | ) ) | |

**PLAINTIFFS AND COUNTERDEFENDANTS THOMSON REUTERS
ENTERPRISE CENTRE GMBH AND WEST PUBLISHING CORPORATION'S FIRST
SUPPLEMENTAL RESPONSES AND OBJECTIONS TO DEFENDANT AND
COUNTERCLAIMANT ROSS INTELLIGENCE INC.'S
FIRST SET OF INTERROGATORIES**

Pursuant to Federal Rules of Civil Procedure 26 and 33 and the Local Rules of the United States District Court for the District of Delaware (the "Local Rules" and each a "Local Rule"), Plaintiffs and Counterdefendants Thomson Reuters Enterprise Centre GmbH ("Thomson Reuters") and West Publishing Corporation ("West") (collectively "Plaintiffs"), hereby supplement their responses to Defendant and Counterclaimant ROSS Intelligence Inc.'s ("Defendant") Interrogatories, served on May 12, 2021 (the "First Set of Interrogatories" and each individually, an "Interrogatory") in the above-captioned action ("Action") as follows:

## GENERAL OBJECTIONS

1.      Plaintiffs object to the First Set of Interrogatories to the extent that it purports to impose obligations beyond those set forth in the Federal Rules of Civil Procedure, the Local Rules, or other applicable law.

2.      Plaintiffs object to the First Set of Interrogatories to the extent that it seeks proprietary or confidential business information, trade secrets or other sensitive information.  To the extent that the response to any Interrogatory requires the disclosure of any non-privileged proprietary or confidential information, trade secrets or other sensitive information, Plaintiffs will provide such information subject to the Protective Order so ordered by the Court in this case.  D.I. 48.

3.      Plaintiffs object to the First Set of Interrogatories to the extent that it seeks information that is subject to the attorney-client privilege, the work product privilege, or any other applicable privilege or protection under federal or state law.  Plaintiffs do not waive, intend to preserve, and are preserving any such privilege with respect to any information protected by such privilege.

4.      The responses provided to the First Set of Interrogatories are based on Plaintiffs' interpretation of the language used in the First Set of Interrogatories.  Plaintiffs reserve their right to amend or to supplement their responses and objections in the event that Defendant asserts an interpretation that differs from Plaintiffs' interpretation.

5.      Plaintiffs object to the First Set of Interrogatories to the extent that it seeks information that is outside of Plaintiffs' possession, custody, or control, including in Instruction No. 7.  For the purpose of responding to the First Set of Interrogatories, Plaintiffs will provide

responses based on the information that is reasonably within their possession, custody, or control.

6.      The responses below shall not be interpreted to concede the truth of any factual assertion or implication contained in the First Set of Interrogatories.  Plaintiffs' responses to the First Set of Interrogatories in no way constitute admissions or acknowledgements by Plaintiffs as to the relevance, materiality, or admissibility of any of the information contained therein, and Plaintiffs expressly reserve their rights to object as such.

7.      Plaintiffs reserve the right to modify or supplement their objections and responses to the First Set of Interrogatories to conform to the results of continuing discovery.  These responses also are subject to correction for omissions or errors.

8.      In providing responses to the First Set of Interrogatories, Plaintiffs do not in any way waive or intend to waive, but rather are preserving and intend to preserve:

(i)      All objections as to competency, authenticity, relevancy, materiality and admissibility;

(ii)      All rights to object on any grounds to the use in any subsequent proceedings of any of the responses or information contained herein, including but not limited to the right to object at the trial of this or any other action;

(iii)      All objections as to vagueness and ambiguity; and

(iv)      All rights to object on any grounds to any further interrogatories.

9.      Plaintiffs object to the First Set of Interrogatories to the extent that any Interrogatory's subparts, including those arising from Defendant's "Definitions" and

3

"Instructions," actually constitute separate interrogatories, thereby exceeding the number of interrogatories permitted under Federal Rule of Civil Procedure 33(a)(1).

10.     Plaintiffs object to the First Set of Interrogatories as premature to the extent that it asks or requires Plaintiffs to provide information that is the subject of expert disclosures under Federal Rule of Civil Procedure 26(a)(2).

11.     Plaintiffs object to the First Set of Interrogatories to the extent that it is premature in that it asks or requires Plaintiffs to analyze or formulate contentions on matters for which Plaintiffs' investigation and discovery have not yet been completed.  The responses provided below are based on the investigation conducted to date and are without prejudice to any later supplementation, amendment, or modification.

12.     Plaintiffs objects to the First Set of Interrogatories as overly broad to the extent that it defines the term "THOMSON REUTERS" to include "its present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on its behalf."  For the purpose of responding to the First Set of Interrogatories, Plaintiffs will construe this term to mean solely Thomson Reuters Enterprise Centre GmbH, and not any other person or entity.

13.     Plaintiffs objects to the First Set of Interrogatories as overly broad to the extent that it defines the term "WEST" to include "its present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on its behalf."  For the purpose of responding to the First Set of Interrogatories, Plaintiffs will construe this term to mean solely West Publishing Corporation, and not any other person or entity.

14.     Plaintiffs objects to the First Set of Interrogatories as overly broad to the extent that it defines the terms "YOU," "YOUR," and "PLAINTIFFS" to incorporate the definitions of the terms "THOMSON REUTERS" and "WEST" and thus are defined to include Thomson Reuters Enterprise Centre GmbH's and West Publishing Corporation's "present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on [their] behalf."   For the purpose of responding to the First Set of Interrogatories, Plaintiffs will construe the terms "YOU," "YOUR," and "PLAINTIFFS" to mean solely Thomson Reuters Enterprise Centre GmbH and West Publishing Corporation, and not any other person or entity.

15.     Plaintiffs objects to the First Set of Interrogatories as overly broad to the extent that it defines the terms "ROSS," "DEFENDANT," and "COUNTERCLAIMANT" to include "its present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on its behalf."  For the purpose of responding to the First Set of Interrogatories, Plaintiffs will construe these terms to mean solely ROSS Intelligence, Inc., and not any other person or entity.

16.     Plaintiffs object to the First Set of Interrogatories as vague and ambiguous to the extent that it defines the term "DESCRIBE" using the capitalized term "Identifying."   It is unclear whether Defendant intended to incorporate the definition of the defined term "IDENTIFY," in which case the definition of the term "DESCRIBE" is nonsensical, or to give that word a separate definition.  For the purpose of responding to the First Set of Interrogatories,

5

Plaintiffs will construe the term "Identifying" as used in the definition of the term "DESCRIBE" with its ordinary meaning.

17.     Plaintiffs object to Instruction No. 6 to the extent it purports to impose obligations with regard to the production of privilege logs that differ from those required by the Federal Rules and Local Rules.  Plaintiffs will log information pursuant to the Protective Order.

18.     Plaintiffs object to Instruction Nos. 7 and 9 as vague and ambiguous to the extent that they use the undefined term "FOUNDATION."  For the purpose of responding to the First Set of Interrogatories, Plaintiffs will construe that term to mean Thomson Reuters Enterprise Centre GmbH and West Publishing Corporation, and not any other person, entity, or foundation.

19.     Plaintiffs object to the First Set of Interrogatories as overly broad and unduly burdensome to the extent that its Interrogatories do not specify timeframes and are thus unlimited as to time.

20.     Plaintiffs incorporate the foregoing General Objections into each and every one of its responses to the First Set of Interrogatories as set forth below.

## RESPONSES AND OBJECTIONS TO INTERROGATORIES

**INTERROGATORY NO. 1:**

IDENTIFY the specific portions of the WESTLAW CONTENT that you claim is subject to copyright that ROSS INFRINGES.

**RESPONSE TO INTERROGATORY NO. 1:**

Plaintiffs incorporate by reference the above-stated General Objections as if fully set forth herein.  Plaintiffs specifically object to this Interrogatory as vague and ambiguous to the extent that the phrases "specific portions" and "you claim is subject to copyright" are unclear and undefined.  Plaintiffs object to this Interrogatory as overly broad, unduly burdensome, and premature to the extent that it asks Plaintiffs to identify any and all WESTLAW CONTENT owned by Plaintiffs that ROSS has infringed and continues to infringe, without ROSS first responding to Plaintiffs' discovery requests, which will narrow the focus of the parties' discovery efforts to the content actually at issue in this case.  Plaintiffs object to this Interrogatory as overly broad and unduly burdensome to the extent that the First Set of Interrogatories define the term "ROSS" overly broadly as indicated in General Objection No. 15. Plaintiffs object to this Interrogatory to the extent that it seeks information that is or will be in the possession of ROSS by referring to documents, taking depositions, or any other means of obtaining discovery in this Litigation that is more convenient, efficient, practical, and less burdensome.  Plaintiffs object to this Interrogatory to the extent that it calls for confidential information, trade secrets, or proprietary business information.  Plaintiffs will provide such information subject to the Protective Order so ordered by the Court in this case.  D.I. 48.

Subject to, as limited by, and without waiver of the foregoing objections, Plaintiffs respond as follows:  Thomson Reuters owns copyrights in the content that is part of Westlaw that was created by Plaintiffs' attorney-editors through a rigorous editorial process.  As alleged in

Plaintiffs' Complaint, this content includes original Westlaw headnotes and the West Key Number System ("WKNS").

With regard to judicial opinions, the editorial process begins with newly published opinions being divided into different categories that are assigned a priority level by Plaintiffs' attorney-editors. Priority cases include opinions from the United States Supreme Court, the federal courts of appeals, and the States' highest courts, along with some jurisdictions Plaintiffs have designated. Beginning with the highest priority cases, Plaintiffs' attorney-editors carefully review the opinion to identify concepts discussed by the court that they select to call out as points of law. Each point of law is reflected in a headnote, and each headnote will, ordinarily, contain a single point of law. In some cases, however, multiple points of law may be included in a single headnote to compare and contrast, or to show how they operate in conjunction with each other—this is a decision left to the attorney-editors' discretion.

Many creative choices are made by Plaintiffs' attorney-editors when they create headnotes. For example, headnotes are written to be understood standing alone—*i.e.*, no reference to the opinion or any other headnote should be necessary for it to be understood. Thus, Plaintiffs' attorney-editors write the headnotes so that they summarize only certain, selected facts, and explain in clear language the holding of the court or contentions of the parties. Plaintiffs' attorney-editors will also make the editorial judgment of recommending Key Number topics to assign to headnotes to integrate the new opinion into the West Key Number System. Although Plaintiffs have created tools to assist their attorney-editors in this effort, such as the tool discussed in Plaintiffs' response to Interrogatory No. 12, which Plaintiffs incorporate hereto by reference, it is ultimately Plaintiffs' attorney-editors that arrange the headnotes in the WKNS. Pursuant to Rule 33(d), Plaintiffs incorporate by reference the editorial manual used by

8

Plaintiffs' attorney-editors for creating headnotes and assigning Key Number topics during the editorial process, which was produced in this Litigation at TR-0002864–TR-0003137.

Plaintiffs' attorney-editors will also create headnotes for the various legal standards, factual holdings, and legal conclusions made by the court, create original synopses and holdings to be included at the beginning of the opinion in Westlaw, and determine which legal topics covered in the opinion and what search terms should be associated with the opinion so it may be integrated into the database of opinions on Westlaw and the WKNS.

After Plaintiffs' attorney-editors have created the headnotes and made initial recommendations of where they might be placed in the WKNS, the opinion is assigned to one or more "classifiers"—attorney-editors who are responsible for classifying headnotes in the WKNS—who actually assign Key Numbers to the headnote (including reassigning the suggested Key Number topics of the headnote writers), and/or send the case back to the original attorney-editor for further review.  Senior classifiers also will reorganize parts of the WKNS from time to time.  There is nothing that dictates how the WKNS is organized or what keywords are used to express it.

As indicated in the certificates of registration for Westlaw, Thomson Reuters does not claim copyrights in material prepared by a United States Government officer or employee as a part of that person's official duties, including without limitations government edicts, legislative enactments, judicial decisions, or similar types of official legal materials.  Pursuant to Federal Rule of Civil Procedure 33(d), Plaintiffs incorporate by reference those certificates, which were produced as Exhibit A to Plaintiffs' Complaint.  Plaintiffs also incorporate the deposit copies for those certificates, which were produced in this Litigation at TR-0003138–TR-0033981.

With regard to ROSS's infringement of Plaintiffs' content, ROSS and LegalEase Solutions, LLC ("LegalEase") have agreed to produce in this Litigation documents responsive to Plaintiffs' discovery requests, but Plaintiffs have yet to receive any such documents. Nevertheless, it is Plaintiffs' understanding that, at ROSS's request and with its knowledge and participation, LegalEase created "Memos" using Westlaw.  As explained in Section 1.3 of the "Statement of Work II for ROSS Bulk Memos" that was published on May 7, 2020 by ROSS on the website available at https://medium.com/@AndrewArruda/hold-59effcd819b0, each Memo was to contain (1) a "Legal Research Question" created by LegalEase, which the SOW defines as "a question grounded in legal principles," (2) a "Reference List," which the SOW defines as "the list of Case Law included in the Memo," and (3) "a target of at least four (4) and no more than six (6) Quotes," which are defined as "an independent paragraph excerpt from Case Law."  It is Plaintiffs' understanding that the questions were based on headnotes from Westlaw that were written by Plaintiffs' attorney-editors.  In addition to paraphrasing the headnotes, the Memos' list of cases were selected by Plaintiffs' attorney-editors for that headnote and arranged in Plaintiffs' WKNS hierarchy.  It is further Plaintiffs' understanding, based on Mr. Arruda's blog post, that ROSS used the Memos to create the ROSS platform.  Pursuant to Federal Rule 33(d), the SOW is incorporated by reference herein as are the memoranda produced by ROSS in this Litigation at ROSS-000000001–ROSS-000175081.

Plaintiffs' discovery efforts in this case are ongoing, and they reserve the right to further supplement this response in light of facts learned during discovery.  In particular, once they have the opportunity to review fully the memoranda ROSS recently produced, Plaintiffs will provide a supplemental response to this Interrogatory.

**\* BEGIN HIGHLY CONFIDENTIAL — ATTORNEYS' EYES ONLY DESIGNATION \***

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1 (NOVEMBER 19, 2021):**































**\*END OF HIGHLY CONFIDENTIAL — ATTORNEYS' EYES ONLY DESIGNATION\***

**INTERROGATORY NO. 2:**

IDENTIFY the specific HEADNOTES that you claim is subject to copyright that ROSS INFRINGES.

**RESPONSE TO INTERROGATORY NO. 2:**

Plaintiffs incorporate by reference the above-stated General Objections as if fully set forth herein. Plaintiffs specifically object to this Interrogatory as vague and ambiguous to the extent that the phrase "you claim is subject to copyright" is unclear and undefined. Plaintiffs object to this Interrogatory as overly broad, unduly burdensome, and premature to the extent that it asks Plaintiffs to identify "specific HEADNOTES" owned by Plaintiffs that ROSS has infringed and continues to infringe, without ROSS first responding to Plaintiffs' discovery requests, which will narrow the focus of the parties' discovery efforts to the content actually at issue in this case. Plaintiffs object to this Interrogatory as overly broad and unduly burdensome

to the extent that the First Set of Interrogatories define the term "ROSS" overly broadly as indicated in General Objection No. 15.  Plaintiffs object to this Interrogatory to the extent that it seeks information that is or will be in the possession of ROSS by referring to documents, taking depositions, or any other means of obtaining discovery in this Litigation that is more convenient, efficient, practical, and less burdensome.  Plaintiffs object to this Interrogatory to the extent that it calls for confidential information, trade secrets, or proprietary business information.  Plaintiffs will provide such information subject to the Protective Order so ordered by the Court in this case.  D.I. 48.

Subject to, as limited by, and without waiver of the foregoing objections, Plaintiffs respond as follows:  Plaintiffs incorporate by reference their response to Interrogatory No. 1.

**INTERROGATORY NO. 3:**

IDENTIFY the specific portions of the KEY NUMBER SYSTEM that you claim is subject to copyright that ROSS INFRINGES.

**RESPONSE TO INTERROGATORY NO. 3:**

Plaintiffs incorporate by reference the above-stated General Objections as if fully set forth herein.  Plaintiffs specifically object to this Interrogatory as vague and ambiguous to the extent that the phrases "specific portions" and "you claim is subject to copyright" are unclear and undefined.  Plaintiffs further object to this Interrogatory as overly broad, unduly burdensome, and premature to the extent that it asks Plaintiffs to identify "specific portions of the KEY NUMBER SYSTEM" owned by Plaintiffs that ROSS has infringed and continues to infringe, without ROSS first responding to Plaintiffs' discovery requests, which will narrow the focus of the parties' discovery efforts to the content actually at issue in this case.  Plaintiffs object to this Interrogatory as overly broad and unduly burdensome to the extent that the First Set of Interrogatories define the term "ROSS" overly broadly as indicated in General Objection No. 15.

Plaintiffs object to this Interrogatory to the extent that it seeks information that is or will be in the possession of ROSS by referring to documents, taking depositions, or any other means of obtaining discovery in this Litigation that is more convenient, efficient, practical, and less burdensome.  Plaintiffs object to this Interrogatory to the extent that it calls for confidential information, trade secrets, or proprietary business information.  Plaintiffs will provide such information subject to the Protective Order so ordered by the Court in this case.  D.I. 48.

Subject to, as limited by, and without waiver of the foregoing objections, Plaintiffs respond as follows:  Plaintiffs incorporate by reference their response to Interrogatory No. 1.

**INTERROGATORY NO. 4:**

State all facts describing how ROSS infringes Plaintiffs' asserted copyrights in WESTLAW CONTENT.

**RESPONSE TO INTERROGATORY NO. 4:**

Plaintiffs incorporate by reference the above-stated General Objections as if fully set forth herein.  Plaintiffs specifically object to this Interrogatory as vague and ambiguous to the extent that the phrase "Plaintiffs' asserted copyrights" is unclear and undefined.  Plaintiffs object to this Interrogatory as overly broad and unduly burdensome to the extent that it asks Plaintiffs to state "all facts" regarding how ROSS infringes Plaintiffs' copyrights in WESTLAW CONTENT without limitation.  Plaintiffs further object to this Interrogatory as premature to the extent that it asks Plaintiffs to state "all facts" regarding how ROSS infringes Plaintiffs' copyrights in WESTLAW CONTENT without ROSS first responding to Plaintiffs' discovery requests, which will narrow the focus of the parties' discovery efforts to the content actually at issue in this case.  Plaintiffs object to this Interrogatory as overly broad and unduly burdensome to the extent that the First Set of Interrogatories define the term "ROSS" overly broadly as indicated in General Objection No. 15.  Plaintiffs object to this Interrogatory to the extent that it seeks information

that is or will be in the possession of ROSS by referring to documents, taking depositions, or any other means of obtaining discovery in this Litigation that is more convenient, efficient, practical, and less burdensome.   Plaintiffs object to this Interrogatory to the extent that it calls for confidential information, trade secrets, or proprietary business information.   Plaintiffs will provide such information subject to the Protective Order so ordered by the Court in this case. D.I. 48.

Subject to, as limited by, and without waiver of the foregoing objections, Plaintiffs respond as follows: Plaintiffs incorporate by reference their response to Interrogatory No. 1.

**INTERROGATORY NO. 5:**

State all facts describing how ROSS infringes Plaintiffs' asserted copyrights in the specific structure, sequence and organization of specific elements of the KEY NUMBER SYSTEM.

**RESPONSE TO INTERROGATORY NO. 5:**

Plaintiffs incorporate by reference the above-stated General Objections as if fully set forth herein.   Plaintiffs specifically object to this Interrogatory as overly broad and unduly burdensome to the extent that it asks Plaintiffs to state "all facts" regarding how ROSS infringes Plaintiffs' copyrights in the "specific structure, sequence and organization of specific elements of the KEY NUMBER SYSTEM" without limitation.   Plaintiffs object to this Interrogatory as vague and ambiguous to the extent the phrases "Plaintiffs' asserted copyrights," "specific structure, sequence and organization" and "specific elements" are unclear and undefined. Plaintiffs further object to this Interrogatory as premature to the extent that it asks Plaintiffs to state "all facts" regarding how ROSS infringes Plaintiffs' copyrights in the "specific structure, sequence and organization of specific elements of the KEY NUMBER SYSTEM" without ROSS first responding to Plaintiffs' discovery requests, which will narrow the focus of the parties'

discovery efforts to the content actually at issue in this case.  Plaintiffs object to this Interrogatory as overly broad and unduly burdensome to the extent that the First Set of Interrogatories define the term "ROSS" overly broadly as indicated in General Objection No. 15. Plaintiffs object to this Interrogatory to the extent that it seeks information that is or will be in the possession of ROSS by referring to documents, taking depositions, or any other means of obtaining discovery in this Litigation that is more convenient, efficient, practical, and less burdensome.  Plaintiffs object to this Interrogatory to the extent that it calls for confidential information, trade secrets, or proprietary business information.  Plaintiffs will provide such information subject to the Protective Order so ordered by the Court in this case.  D.I. 48.

Subject to, as limited by, and without waiver of the foregoing objections, Plaintiffs respond as follows: Plaintiffs incorporate by reference their response to Interrogatory No. 1.

**INTERROGATORY NO. 6:**

DESCRIBE how the ROSS product allegedly infringes the WESTLAW CONTENT that you claim is subject to copyright.

**RESPONSE TO INTERROGATORY NO. 6:**

Plaintiffs incorporate by reference the above-stated General Objections as if fully set forth herein.  Plaintiffs specifically object to this Interrogatory as overly broad and unduly burdensome to the extent that it asks Plaintiffs to describe how the ROSS product infringes Plaintiffs' copyrights in WESTLAW CONTENT without limitation.  Plaintiffs object to this Interrogatory as vague and ambiguous to the extent the phrases "ROSS product" and "you claim is subject to copyright" are unclear and undefined.  Plaintiffs further object to this Interrogatory as premature to the extent that it asks Plaintiffs to describe how the ROSS product infringes Plaintiffs' copyrights in WESTLAW CONTENT without ROSS first responding to Plaintiffs' discovery requests, which will narrow the focus of the parties' discovery efforts to the content

actually at issue in this case.  Plaintiffs object to this Interrogatory as overly broad and unduly

burdensome to the extent that the First Set of Interrogatories define the term "ROSS" overly

broadly as indicated in General Objection No. 15.  Plaintiffs object to this Interrogatory to the

extent that it seeks information that is or will be in the possession of ROSS by referring to

documents, taking depositions, or any other means of obtaining discovery in this Litigation that

is more convenient, efficient, practical, and less burdensome.   Plaintiffs object to this

Interrogatory to the extent that it calls for confidential information, trade secrets, or proprietary

business information.  Plaintiffs will provide such information subject to the Protective Order so

ordered by the Court in this case.  D.I. 48.

Subject to, as limited by, and without waiver of the foregoing objections, Plaintiffs

respond as follows: Plaintiffs incorporate by reference their response to Interrogatory No. 1.

**INTERROGATORY NO. 7:**

For each WESTLAW CONTENT identified in Interrogatory No. 1, STATE ALL FACTS
describing how ROSS allegedly infringes the WESTLAW CONTENT that you claim is subject
to copyright.

**RESPONSE TO INTERROGATORY NO. 7:**

Plaintiffs incorporate by reference the above-stated General Objections as if fully set

forth herein.  Plaintiffs specifically object to this Interrogatory as overly broad and unduly

burdensome to the extent that it asks Plaintiffs to state "all facts" regarding how ROSS infringes

Plaintiffs' copyrights in WESTLAW CONTENT without limitation.  Plaintiffs object to this

Interrogatory as vague and ambiguous to the extent the phrase "you claim is subject to

copyright" is unclear and undefined. Plaintiffs further object to this Interrogatory as premature to

the extent that it asks Plaintiffs to state "all facts" regarding how ROSS infringes Plaintiffs'

copyrights in WESTLAW CONTENT without ROSS first responding to Plaintiffs' discovery

requests, which will narrow the focus of the parties' discovery efforts to the content actually at

issue in this case.  Plaintiffs object to this Interrogatory as overly broad and unduly burdensome to the extent that the First Set of Interrogatories define the term "ROSS" overly broadly as indicated in General Objection No. 15.  Plaintiffs object to this Interrogatory to the extent that it seeks information that is or will be in the possession of ROSS by referring to documents, taking depositions, or any other means of obtaining discovery in this Litigation that is more convenient, efficient, practical, and less burdensome.  Plaintiffs object to this Interrogatory to the extent that it calls for confidential information, trade secrets, or proprietary business information.  Plaintiffs will provide such information subject to the Protective Order so ordered by the Court in this case.  D.I. 48.  Plaintiffs object to this Interrogatory to the extent that it is duplicative of other Interrogatories, including Interrogatory No. 1.

Subject to, as limited by, and without waiver of the foregoing objections, Plaintiffs respond as follows: Plaintiffs incorporate by reference their response to Interrogatory No. 1.

## INTERROGATORY NO. 8:

For each WESTLAW CONTENT identified in Interrogatory No. 1, STATE ALL FACTS that support YOUR contention that the WESTLAW CONTENT that you claim is subject to copyright is original and creative.

## RESPONSE TO INTERROGATORY NO. 8:

Plaintiffs incorporate by reference the above-stated General Objections as if fully set forth herein.  Plaintiffs specifically object to this Interrogatory as overly broad and unduly burdensome to the extent that it asks Plaintiffs to state "all facts" regarding how each WESTLAW CONTENT identified in Interrogatory No. 1 is original and creative without limitation.  Plaintiffs object to this Interrogatory as vague and ambiguous to the extent that the phrases "you claim is subject to copyright," "original," and "creative," are unclear and undefined.  Plaintiffs further object to this Interrogatory as premature to the extent that it asks Plaintiffs to state "all facts" regarding how each WESTLAW CONTENT identified in

Interrogatory No. 1 is original and creative without ROSS first responding to Plaintiffs' discovery requests, which will narrow the focus of the parties' discovery efforts to the content actually at issue in this case.  Plaintiffs object to this Interrogatory as overly broad and unduly burdensome to the extent that the First Set of Interrogatories define the term "YOUR" overly broadly as indicated in General Objection No. 14.  Plaintiffs object to this Interrogatory as overly broad and unduly burdensome to the extent that the First Set of Interrogatories define the term "ROSS" overly broadly as indicated in General Objection No. 15.  Plaintiffs object to this Interrogatory to the extent that it seeks information that is or will be in the possession of ROSS by referring to documents, taking depositions, or any other means of obtaining discovery in this Litigation that is more convenient, efficient, practical, and less burdensome.  Plaintiffs object to this Interrogatory to the extent that it calls for confidential information, trade secrets, or proprietary business information.   Plaintiffs will provide such information subject to the Protective Order so ordered by the Court in this case.  D.I. 48.

Subject to, as limited by, and without waiver of the foregoing objections, Plaintiffs respond as follows: Plaintiffs incorporate by reference their response to Interrogatory No. 1.

**INTERROGATORY NO. 9:**

For each HEADNOTE identified in Interrogatory No. 2, STATE ALL FACTS that support YOUR contention that the HEADNOTE that you claim is subject to copyright is original and creative.

**RESPONSE TO INTERROGATORY NO. 9:**

Plaintiffs incorporate by reference the above-stated General Objections as if fully set forth herein.   Plaintiffs specifically object to this Interrogatory as overly broad and unduly burdensome to the extent that it asks Plaintiffs to state "all facts" regarding how each HEADNOTE identified in Interrogatory No. 2 is original and creative without limitation. Plaintiffs object to this Interrogatory as vague and ambiguous to the extent that the phrases "you

claim is subject to copyright," "original," and "creative" are unclear and undefined.  Plaintiffs

further object to this Interrogatory as premature to the extent that it asks Plaintiffs to state "all

facts" regarding how each HEADNOTE identified in Interrogatory No. 2 is original and creative

without ROSS first responding to Plaintiffs' discovery requests, which will narrow the focus of

the parties' discovery efforts to the content actually at issue in this case.  Plaintiffs object to this

Interrogatory as overly broad and unduly burdensome to the extent that the First Set of

Interrogatories define the term "YOUR" overly broadly as indicated in General Objection No.

14.  Plaintiffs object to this Interrogatory as overly broad and unduly burdensome to the extent

that the First Set of Interrogatories define the term "ROSS" overly broadly as indicated in

General Objection No. 15.   Plaintiffs object to this Interrogatory to the extent that it seeks

information that is or will be in the possession of ROSS by referring to documents, taking

depositions, or any other means of obtaining discovery in this Litigation that is more convenient,

efficient, practical, and less burdensome.  Plaintiffs object to this Interrogatory to the extent that

it calls for confidential information, trade secrets, or proprietary business information.  Plaintiffs

will provide such information subject to the Protective Order so ordered by the Court in this

case.  D.I. 48.

Subject to, as limited by, and without waiver of the foregoing objections, Plaintiffs

respond as follows: Plaintiffs incorporate by reference their response to Interrogatory No. 1.

**INTERROGATORY NO. 10:**

For each specific element of the KEY NUMBER SYSTEM identified in Interrogatory
No. 3, STATE ALL FACTS that support YOUR contention that the specific element of the KEY
NUMBER SYSTEM that you claim is subject to copyright is original and creative.

**RESPONSE TO INTERROGATORY NO. 10:**

Plaintiffs incorporate by reference the above-stated General Objections as if fully set

forth herein.  Plaintiffs specifically object to this Interrogatory as overly broad and unduly

burdensome to the extent that it asks Plaintiffs to state "all facts" regarding how each specific element of the KEY NUMBER SYSTEM identified in Interrogatory No. 3 is original and creative without limitation.  Plaintiffs further object to this Interrogatory as premature to the extent that it asks Plaintiffs to state "all facts" regarding how each specific element of the KEY NUMBER SYSTEM identified in Interrogatory No. 3 is original and creative without ROSS first responding to Plaintiffs' discovery requests, which will narrow the focus of the parties' discovery efforts to the content actually at issue in this case.  Plaintiffs object to this Interrogatory as overly broad and unduly burdensome to the extent that the First Set of Interrogatories define the term "YOUR" overly broadly as indicated in General Objection No. 14.  Plaintiffs object to this Interrogatory as overly broad and unduly burdensome to the extent that the First Set of Interrogatories define the term "ROSS" overly broadly as indicated in General Objection No. 15.  Plaintiffs object to this Interrogatory as vague and ambiguous to the extent that the phrases "specific element," "you claim is subject to copyright," "original," and "creative" are unclear and undefined.  Plaintiffs object to this Interrogatory to the extent that it seeks information that is or will be in the possession of ROSS by referring to documents, taking depositions, or any other means of obtaining discovery in this Litigation that is more convenient, efficient, practical, and less burdensome.  Plaintiffs object to this Interrogatory to the extent that it calls for confidential information, trade secrets, or proprietary business information.  Plaintiffs will provide such information subject to the Protective Order so ordered by the Court in this case.  D.I. 48.

Subject to, as limited by, and without waiver of the foregoing objections, Plaintiffs respond as follows:  Plaintiffs incorporate by reference their response to Interrogatory No. 1.

**INTERROGATORY NO. 11:**

For the specific structure, sequence and organization of the specific elements of the KEY NUMBER SYSTEM identified in Interrogatory No. 3, STATE ALL FACTS that support YOUR contention that such structure, sequence and organization of the KEY NUMBER SYSTEM that you claim is subject to copyright is original and creative.

**RESPONSE TO INTERROGATORY NO. 11:**

Plaintiffs incorporate by reference the above-stated General Objections as if fully set forth herein.  Plaintiffs specifically object to this Interrogatory as overly broad and unduly burdensome to the extent that it asks Plaintiffs to state "all facts" regarding how the specific structure, sequence and organization of the specific elements of the KEY NUMBER SYSTEM identified in Interrogatory No. 3 is original and creative without limitation.  Plaintiffs further object to this Interrogatory as premature to the extent that it asks Plaintiffs to state "all facts" regarding how the specific structure, sequence and organization of the specific elements of the KEY NUMBER SYSTEM identified in Interrogatory No. 3 is original and creative without ROSS first responding to Plaintiffs' discovery requests, which will narrow the focus of the parties' discovery efforts to the content actually at issue in this case.  Plaintiffs object to this Interrogatory as overly broad and unduly burdensome to the extent that the First Set of Interrogatories define the term "YOUR" overly broadly as indicated in General Objection No. 14.  Plaintiffs object to this Interrogatory as overly broad and unduly burdensome to the extent that the First Set of Interrogatories define the term "ROSS" overly broadly as indicated in General Objection No. 15.  Plaintiffs object to this Interrogatory as vague and ambiguous to the extent that the phrases "specific structure, sequence and organization," "specific elements," "you claim is subject to copyright," "original," and "creative" are unclear and undefined.  Plaintiffs object to this Interrogatory to the extent that it seeks information that is or will be in the possession of ROSS by referring to documents, taking depositions, or any other means of

38

obtaining discovery in this Litigation that is more convenient, efficient, practical, and less burdensome.  Plaintiffs object to this Interrogatory to the extent that it calls for confidential information, trade secrets, or proprietary business information.  Plaintiffs will provide such information subject to the Protective Order so ordered by the Court in this case.  D.I. 48.

Subject to, as limited by, and without waiver of the foregoing objections, Plaintiffs respond as follows: Plaintiffs incorporate by reference their response to Interrogatory No. 1.

**INTERROGATORY NO. 12:**

DESCRIBE how YOUR algorithmically generated key number categorization system, known as the Classification and Recommendation Engine (CaRE) system, classifies "millions of headnotes to a Key Number taxonomy with more than 90,000 categories," stated on the website https://web.archive.org/web/20210507051753/https://www.thomsonreuters.com/en/artificialintell igence/ai-timeline.html, attached hereto as Exhibit A.

**RESPONSE TO INTERROGATORY NO. 12:**

Plaintiffs incorporate by reference the above-stated General Objections as if fully set forth herein.  Plaintiffs specifically object to this Interrogatory as overly broad and unduly burdensome to the extent that it asks Plaintiffs to describe how the Classification and Recommendation Engine (CaRE) system classifies HEADNOTES to a Key Number taxonomy without limitation.  Plaintiffs object to this Interrogatory as overly broad and unduly burdensome to the extent that the First Set of Interrogatories define the term "YOUR" overly broadly as indicated in General Objection No. 14.  Plaintiffs object to this Interrogatory to the extent that it is neither relevant to any claim or defense of any party in this Litigation nor proportional to the needs of the case. Plaintiffs object to this Interrogatory to the extent that it seeks information that is or will be in the possession of ROSS by referring to documents, taking depositions, or any other means of obtaining discovery in this Litigation that is more convenient, efficient, practical, and less burdensome.  Plaintiffs object to this Interrogatory to the extent that it seeks information that is publicly available and therefore is equally or less burdensome for ROSS to procure itself.

Plaintiffs object to this Interrogatory to the extent that it calls for confidential information, trade secrets, or proprietary business information.  Plaintiffs will provide such information subject to the Protective Order so ordered by the Court in this case.  D.I. 48.

Subject to, as limited by, and without waiver of the foregoing objections, Plaintiffs respond as follows: The Classification and Recommendation Engine (CaRE) is a tool used by West's attorney-editors during the editorial process to assist "classifiers"—attorney-editors who are responsible for classifying headnotes in the West Key Number System ("WKNS").  Once a headnote is written by an attorney-editor, it is submitted to one or more classifiers along with the highest-level topic to which the attorney-editor believes the headnote belongs.  Then, one or more classifiers assign more granular Key Numbers to the headnote and/or reassigned the headnote to a new highest-level topic.  To assist the classifier in doing so, the CaRE tool identifies five or more possible Key Numbers to which the headnote could be classified.  The tool does not select which Key Number(s) are assigned to the headnote.  Instead, Plaintiffs' attorney-editors review the options and decide whether to classify the headnote under any of the suggested Key Numbers.  Thus, the CaRE tool is not an automated tool for the finalized classification of headnotes in the WKNS, but rather a tool used to assist Plaintiffs' attorney-editors in making their own editorial decision as to which of the numerous options will be selected for each headnote.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

_____

Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com

OF COUNSEL:

Dale M. Cendali
Joshua L. Simmons
Eric A. Loverro
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
(212) 446-4800

Daniel E. Laytin
Christa C. Cottrell
Cameron Ginder
Alyssa C. Kalisky
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL  60654
(312) 862-2000

Megan McKeown
KIRKLAND & ELLIS LLP
609 Main Street
Houston, TX  77002
(713) 836-3600

November 19, 2021

*Attorneys for Plaintiffs and Counterdefendants*
*Thomson Reuters Enterprise Center GmbH*
*and West Publishing Corporation*

### CERTIFICATE OF SERVICE

I hereby certify that on November 19, 2021, copies of the foregoing were caused to be served upon the following in the manner indicated:

David E. Moore, Esquire                               *VIA ELECTRONIC MAIL*
Stephanie E. O'Byrne, Esquire
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE  19801
*Attorneys for Defendant and Counterclaimant*

Joshua M. Rychlinski, Esquire                         *VIA ELECTRONIC MAIL*
Mark A. Klapow, Esquire
Lisa Kimmel, Esquire
Crinesha B. Berry, Esquire
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, DC  20004
*Attorneys for Defendant and Counterclaimant*

Gabriel M. Ramsey, Esquire                          *VIA ELECTRONIC MAIL*
Kayvan M. Ghaffari, Esquire
Jacob Canter, Esquire
Warrington Parker, Esquire
CROWELL & MORING LLP
3 Embarcadero Center, 26th Floor
San Francisco, CA  94111
*Attorneys for Defendant and Counterclaimant*

*/s/ Michael J. Flynn*

_____

Michael J. Flynn (#5333)

# EXHIBITS 2-6
# REDACTED IN THEIR ENTIRETY