IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION, | ) ) ) ) | |
| Plaintiffs and Counterdefendants, | ) ) ) | C.A. No. 20-613 (LPS) |
| v. | ) ) | |
| ROSS INTELLIGENCE INC., | ) ) | |
| Defendant and Counterclaimant. | ) ) | |

## <u>NOTICE OF DEPOSITION SUBPOENA TO LEGALEASE SOLUTIONS, LLC</u>

PLEASE TAKE NOTICE that, pursuant to Federal Rules of Civil Procedure Rules 30 and 45, Plaintiffs and Counterdefendants Thomson Reuters Enterprise Centre GmbH  and West Publishing Corporation will serve the attached subpoena on LegalEase Solutions, LLC to testify at a deposition on February 28, 2022 at 9:00 am ET by electronic means.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

_____
Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com

*Attorneys for Plaintiffs and Counterdefendants*
*Thomson Reuters Enterprise Center GmbH*
*and West Publishing Corporation*

OF COUNSEL:

Dale M. Cendali
Joshua L. Simmons
Eric A. Loverro
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
(212) 446-4800

Daniel E. Laytin
Christa C. Cottrell
Cameron Ginder
Alyssa C. Kalisky
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL  60654
(312) 862-2000

Miranda D. Means
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
(617) 385-7500

February 16, 2022

AO 88A  (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### District of Delaware

| | | |
|---|---|---|
| Thomson Reuters Enterprise Centre GmbH, et al. | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   1:20-cv-00613-LPS |
| | ) | |
| ROSS Intelligence Inc. | ) | |
| *Defendant* | ) | |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:       LegalEase Solutions, LLC c/o Tariq Hafeez
          47910 Edingburgh Dr, Plymouth, MI 48710
          *(Name of person to whom this subpoena is directed)*

☑ Testimony:  YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters:

| Place: Remote Deposition | Date and Time: 02/28/2022 9:00 am |
|---|---|

The deposition will be recorded by this method:     via stenographic and videographic means

☐ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:      02/16/2022

        *CLERK OF COURT*

                                              OR

                                                        /s/ Miranda Means
_____              _____
      *Signature of Clerk or Deputy Clerk*                    *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   Thomson Reuters Enterprise Centre GmbH and West Publishing Corporation
_____, who issues or requests this subpoena, are:
Miranda Means, Kirkland & Ellis, 200 Clarendon St., Boston, MA 02116, miranda.means@kirkland.com, 617-385-7500

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.    1:20-cv-00613-LPS

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❐  I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❐  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2) *For Other Discovery.*** A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2) *Command to Produce Materials or Permit Inspection.***
   **(A) *Appearance Not Required.*** A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B) *Objections.*** A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3) *Quashing or Modifying a Subpoena.***

   **(A) *When Required.*** On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
   **(B) *When Permitted.*** To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C) *Specifying Conditions as an Alternative.*** In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
   **(A) *Documents.*** A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B) *Form for Producing Electronically Stored Information Not Specified.*** If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C) *Electronically Stored Information Produced in Only One Form.*** The person responding need not produce the same electronically stored information in more than one form.
   **(D) *Inaccessible Electronically Stored Information.*** The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2) *Claiming Privilege or Protection.***
   **(A) *Information Withheld.*** A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B) *Information Produced.*** If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# EXHIBIT A

## **DEFINITIONS**

Unless otherwise defined, all words and phrases used herein shall be accorded their usual meaning and shall be interpreted in their common, ordinary sense.  Should LegalEase not understand the meaning of any term, it is requested to immediately seek clarification through Plaintiffs' counsel.  As used in these requests, the words set forth below shall be defined as follows:

1.     The term "AGREEMENT(S)" means and refers to written and oral agreements and contracts.

2.     The term "COMMUNICATION(S)" should be interpreted in its broadest sense to include without limitation all oral or written communications, including any writings, emails, or other electronically stored information as that term is defined by Federal Rule of Civil Procedure 34(a).

3.     The terms "CONCERNING" and "REFERRING OR RELATING TO" should be construed in the broadest possible sense to mean analyzing, citing, commenting upon, comprising, concerning, consisting of, constituting, containing, dealing with, describing, discussing, embodying, evidencing, identifying, involved with, mentioning, monitoring, referring to, reflecting, responding to, pertaining to, showing, stating, summarizing, or bearing any logical or factual connection with the matter discussed, as these terms are understood in the broadest sense.

4.     The term "CONTRACTOR(S)" means and refers to any outside parties that LEGALEASE was, is, or considered working with to provide ROSS with TRAINING DATA, work product, or services in connection with the ROSS PLATFORM, including without limitation Morae Global Corporation and Clutch Group LLC.

5.      The term "DESCRIBE" means to state what is requested to be described, including all facts and opinions known or held by LEGALEASE CONCERNING, relating to, or pertinent to what is requested to be described; and (i) the identity of each person or entity involved or having any knowledge of each fact or opinion that relates to what is so described; (ii) the identity of each document evidencing the answer or response given or relating, referring or pertaining to said subject matter in any way; and (iii) all relevant or material dates and time periods, specifying the way in which said dates or time periods are pertinent to the subject matter described.

6.      The term "DOCUMENT(S)" means any written, printed, typed, recorded, or graphic matter, however produced, reproduced, or stored, including the originals and all non-identical copies, whether different from the originals by reason of any notations made on such copies or otherwise, in the actual or constructive possession, custody, or control of LEGALEASE, including without limitation contracts, letter agreements, records, correspondence, COMMUNICATIONS, electronically stored information, emails, tweets, blog or Internet forum posts or comments, text messages on portable devices, Blackberry Messenger messages, SMS messages, instant messenger messages (e.g. Skype, Slack, etc.), memoranda, handwritten notes, source code, source code comments, source repository logs, server logs, records or summaries of negotiations, records or summaries of interviews or conversations, audio or video recordings, copies of video games, all Internet-based media, photographs, corporate minutes, diaries, telephone logs, instant messaging logs, chat room logs, schedules, drawings, product storyboards, product mockups, statistical statements, work papers, disks, data cards, films, data processing files, charts, graphs, microfiche, microfilm, contracts, notices, reports, recitals, statements, worksheets, abstracts, resumes, summaries, jottings, market data, books,

2

journals, ledgers, audits, maps, diagrams, research documents, newspapers, appointment books, desk calendars, project management charts (e.g., Gantt charts), task management records (e.g., to-do lists), expense reports, computer printouts and other computer readable or electronic records, and all drafts or modifications thereof, and all non-identical copies of any such items. Any such DOCUMENT with any sheet or part thereof bearing any marks, such as initials, stamped indices, comments or notations, or any character or characters, that are not part of the signed text or photographic reproduction thereof is to be considered as a separate DOCUMENT. Where there is any question about whether a tangible item otherwise described in these requests falls within the definition of "DOCUMENT(S)," such tangible item shall be produced.

7.      The terms "LEGALEASE," "YOU," and "YOUR" mean and refer to LegalEase Solutions, LLC, and any of its former or current parents, subsidiaries, predecessors, successors, affiliated entities, controlled entities, joint ventures, related entities, agents, attorneys, employees, interns, representatives, assigns, directors, or officers and all other PERSONS acting or purporting to act on their behalf, including without limitation the entity LegalEase Solutions India Pvt. Ltd. and Codematrix Solutions Pvt. Ltd.

8.      The term "LEGALEASE LITIGATION" means and refers to the lawsuit filed by WEST against LEGALEASE in the United States District Court for the District of Minnesota with case number 18-CV-01445.

9.      The term "LEGALEASE COMPLAINT" means and refers to the Complaint filed by WEST in the LEGALEASE LITIGATION on May 25, 2018.

10.     The term "MATERIALS" means and refers to all DOCUMENTS, products, tools, data, knowledge, information, and resources, including without limitation ROSS MEMOS.

3

11.     The term "ROSS COMPLAINT" means and refers to the Complaint filed by
PLAINTIFFS in the ROSS LITIGATION on May 6, 2020 and any amendments thereto.

12.     The term "ROSS LITIGATION" means and refers to the lawsuit filed by
PLAINTIFFS against ROSS in the United States District Court for the District of Delaware with
case number 20-cv-00613.

13.     The term "PERSON(S)" means any natural person, firm, corporation, partnership,
group, association, governmental entity, or business entity.

14.     The term "PLAINTIFFS" means and refers to THOMSON REUTERS and
WEST.

15.     The term "ROSS" means and refers to Defendant ROSS Intelligence Inc., and any
of its former or current parents, subsidiaries, predecessors, successors, affiliated entities,
controlled entities, joint ventures, related entities, agents, attorneys, employees, interns,
representatives, assigns, directors, or officers and all other PERSONS acting or purporting to act
on their behalf, including without limitation ROSS Intelligence, Inc., the Canadian entity,
Andrew Arruda, and Jimoh Ovbiagele.

16.     The term "ROSS MEMOS" means and refers to any work product created or
distributed by LEGALEASE or any other outside party for or to ROSS, including without
limitation any "Memos" or "Legal Research Questions" as defined by Sections 1.2 and 1.3 of the
"STATEMENT OF WORK II FOR ROSS BULK MEMOS" that was published by ROSS on
May 7, 2020, on the website available at https://medium.com/@AndrewArruda/hold-
59effcd819b0, attached hereto as **Exhibit 1**.

17.     The term "ROSS PLATFORM" means and refers to any and all services and
products offered by ROSS, including without limitation the online legal research platform

referred to as "ROSS" previously offered through the website available at

https://www.rossintelligence.com/.

18.     The term "THOMSON REUTERS" means and refers to Plaintiff Thomson

Reuters Enterprise Centre GmbH, and any of their former or current parents, subsidiaries,

predecessors, successors, affiliated entities, controlled entities, joint ventures, related entities,

agents, attorneys, employees, interns, representatives, assigns, directors, or officers and all other

PERSONS acting or purporting to act on their behalf.

19.     The term "TRAINING DATA" means and refers to any MATERIALS, data or

sets of data used by ROSS to train any artificial intelligence algorithms or systems, including

without limitation any ROSS MEMOS and WESTLAW CONTENT.

20.     The term "WEST" means and refers to Plaintiff West Publishing Corporation, and

any of their former or current parents, subsidiaries, predecessors, successors, affiliated entities,

controlled entities, joint ventures, related entities, agents, attorneys, employees, interns,

representatives, assigns, directors, or officers and all other PERSONS acting or purporting to act

on their behalf.

21.     The term "WEST HEADNOTES" means and refers to the proprietary text created

by WEST's attorney-editors to DESCRIBE and summarize the key concepts, points of law, or

facts of judicial opinions found on WESTLAW.

22.     The term "WESTLAW" means and refers to PLAINTIFFS' online legal research

product named Westlaw.

23.     The term "WESTLAW CONTENT" means and refers to any and all WESTLAW

content owned by PLAINTIFFS, including without limitation the WKNS and WEST

HEADNOTES, and expressly excluding any work prepared by a United States Government

officer or employee as a part of that person's official duties, including without limitations

government edicts, legislative enactments, judicial decisions, or similar types of official legal

materials.

24.     The term "WKNS" means and refers to the taxonomy of cases, topics, legal

issues, points of law, and WEST HEADNOTES created and maintained by WEST's attorney-

editors for WESTLAW.

25.     The words "and" and "or" shall be construed both conjunctively and

disjunctively, and each shall include the other wherever such dual construction will serve to

bring within the scope of a Request any PERSONS, COMMUNICATIONS, or DOCUMENTS

which otherwise would not be brought within its scope.

26.     The words "any" and "all" are mutually interchangeable and are meant to

encompass each other.

27.     The singular includes the plural and vice versa.

28.     The past tense shall be construed to include the present tense and vice versa.

## **TOPICS**

1.     The substance and nature of all services YOU provided to ROSS, including

without limitation (a) all MATERIALS that YOU created for or supplied to ROSS; (b) all

MATERIALS that ROSS created for or supplied to YOU; and (c) ROSS's role in overseeing,

reviewing, and approving any services YOU performed for and/or MATERIALS YOU created

for or supplied to ROSS.

2.     All COMMUNICATIONS between YOU and any PERSON CONCERNING (a)

how ROSS intended to use any of the MATERIALS that YOU created for or supplied to ROSS

and (b) the reasons ROSS hired YOU.

3.      YOUR knowledge of any third party legal research suppliers that ROSS hired.

4.      YOUR use of WESTLAW in connection with any services performed for or MATERIALS provided to ROSS, including without limitation (a) how YOU used WESTLAW and WESTLAW CONTENT to create ROSS MEMOS; (b) YOUR practice of sharing login information among YOUR employees and to CONTRACTORS; and (c) YOUR use of any automated tool, bot, or other method to interact with or download content from WESTLAW.

5.      All instructions YOU received from ROSS CONCERNING WESTLAW, including without limitation any instructions that YOU use, scrape, or otherwise access WESTLAW, WEST HEADNOTES, WESTLAW CONTENT, and/or WKNS.

6.      ROSS's knowledge that YOU were using, scraping, or otherwise accessing WESTLAW in connection with the services YOU provided to ROSS.

7.      All COMMUNICATIONS between YOU and ROSS, including without limitation COMMUNICATIONS CONCERNING (a) services YOU provided to ROSS; (b) the ROSS MEMOS and/or the ROSS PLATFORM; (c) TRAINING DATA; and (d) PLAINTIFFS, WESTLAW, the WESTLAW CONTENT, WEST HEADNOTES, and/or WKNS.

8.      All COMMUNICATIONS between YOU and any PERSON CONCERNING PLAINTIFFS.

9.      All PERSONS who created or supplied MATERIALS or services to ROSS on YOUR behalf, including without limitation any PERSONS who created, maintained, or operated any tool that YOU used to create MATERIALS or perform services for ROSS.

10.     All AGREEMENTS between YOU and ROSS, including without limitation (a) YOUR understanding of the terms of such AGREEMENTS; (b) all PERSONS with access to or knowledge of the AGREEMENTS; (c) all COMMUNICATIONS between YOU and ROSS

7

REFERRING OR RELATING TO the AGREEMENTS; (d) any payments made to ROSS under such AGREEMENTS; and (f) the termination of any such AGREEMENTS.

11.     Any PERSON involved in establishing and maintaining YOUR relationship with ROSS.

12.     Any PERSON involved in establishing and maintaining YOUR relationship and/or AGREEMENTS with PLAINTIFFS.

13.     The circumstances of and reasons for Teri Whitehead's termination from and subsequent rehiring by YOU.

14.     The LEGALEASE LITIGATION, including without limitation (a) all COMMUNICATIONS between YOU and ROSS CONCERNING the LEGALEASE LITIGATION or the LEGALEASE COMPLAINT, and (b) YOUR discovery responses and deposition testimony from the LEGALEASE LITIGATION.

15.     The ROSS LITIGATION, including without limitation all COMMUNICATIONS between YOU and ROSS CONCERNING the ROSS LITIGATION or the ROSS COMPLAINT.

16.     All AGREEMENTS between YOU and PLAINTIFFS, including without limitation (a) YOUR understanding of the terms of such AGREEMENTS; (b) all PERSONS with access to or knowledge of the AGREEMENTS; (c) all COMMUNICATIONS between YOU and PLAINTIFFS REFERRING OR RELATING TO the AGREEMENTS; (d) all COMMUNICATIONS between YOU and ROSS REFERRING OR RELATING TO the AGREEMENTS; (e) any payments made to PLAINTIFFS under such AGREEMENTS; and (f) the termination of any such AGREEMENTS.

8

17.     The value of WESTLAW CONTENT, including without limitation the value of the WESTLAW CONTENT that YOU used in connection with any services performed for or any MATERIALS provided to ROSS.

18.     All COMMUNICATIONS between YOU and any other PERSON CONCERNING the services you provided to ROSS, including without limitation COMMUNICATIONS with CONTRACTORS.

19.     YOUR knowledge of PLAINTIFFS' copyrights and/or any other rights PLAINTIFFS have in the WESTLAW CONTENT.

20.     Any payment or other compensation that YOU received from ROSS, including without limitation as consideration for services YOU performed for or MATERIALS you provided to ROSS.

# EXHIBIT 1

STATEMENT OF WORK II
FOR ROSS BULK MEMOS

This Statement of Work II incorporates and is made pursuant to the October 15, 2015 Master Services Agreement ("MSA") by and between ROSS Intelligence, Inc. ("ROSS"), a Delaware corporation and LegalEase Solutions, LLC ("Contractor") a Michigan limited liability company.

1. Definitions:  Terms and expressions not expressly defined in this Statement of Work, shall have the following meanings:

    1.1. "Case Law" means judicial decisions originating from a judicial or administrative body in the United States of America, or as otherwise prescribed in writing by ROSS and sent to Contractor.

    1.2. "Legal Research Question" means a question grounded in legal principles.

    1.3. "Memorandum or Memo" means a memorandum of law that answers a Legal Research Question.

    1.4. "Quote" means an independent paragraph excerpt from Case Law.

    1.5. "Reference List" means the list of Case Law included in the Memo.

    1.6. "Deficiency" means a reference quote that does not directly answer the ROSS question.

2. Additional Terms and Expressions: Additional capitalized terms and expressions have the meanings ascribed to them in the MSA.

3. Currency: Unless stated otherwise, all dollar figures in this Statement of Work are in United States dollars.

4. Term: Subject to the termination provisions of this Agreement, the term of this Statement of Work shall be for a period of three months commencing on September 19, 2017 and expiring on December 19, 2017 ("Initial Term"). Upon the expiration of the Initial Term, this Statement of Work shall renew with the prior written mutual consent of ROSS for successive three month periods ("Renewal Terms"), unless terminated pursuant to the terms of the Agreement. The terms Initial and Renewal Terms shall be collectively referred to as the "Term".

5. Description of Service:

5.1. Contractor agrees to provide ROSS with bulk Memos. Contractor agrees to meet the expectations for performance as set forth in this Statement of Work. Contractor's attorneys will research topics and Legal Research Questions from any Federal or State jurisdiction in the United States, without regard to any legal decisions, draft Memos, and compile the Memos in the format approved by ROSS.

5.2. Each Memo shall include a Legal Research Question and a Reference list with a target of at least four (4) and no more than six (6) Quotes.

5.3. Two (2) to four (4) Quotes in each Memo shall contain either a "great" or "good" independent answer to the Legal Research Question. A "great" Quote is one that contains an answer to all essential elements of the Legal Research Question while a "good" Quote is one that contains an answer to most essential elements of the Legal Research Question. The Contractor shall strive for four (4) "good" or "great" Quotes per question. However, if

Contractor is only able to find 2 or 3 "good" or "great" Quotes, they shall only provide 2 or 3 "good" or "great" Quotes. Contractor shall strive to have more "great" than "good" Quotes.

5.4. One (1) Quote in each Memo shall contain a "topical" independent response to the Legal Research Question. A "topical" response is a response that answers and/or references limited components of a Legal Research Question but does not answer the essential elements of such Legal Research Question.

5.5. One (1) Quote in each Memo shall contain an "irrelevant" independent response to the Legal Research Question. An "irrelevant" response is a response that contains one or more keywords from the Legal Research Question but does answer and/or reference any elements of the Legal Research Question, either limited or essential.

5.6. Contractor shall label whether a Quote contains a response that is "great", "good", "topical" or "irrelevant" and double bracket and bold the specific component(s) of each such Quote that is "great", "good", "topical" or "irrelevant." Contractor shall also label which legal practice area each Quote falls under.

6.  Changes: ROSS reserves the right to request changes, deletions, or additions as deemed necessary by ROSS and Contractor. ROSS' proposed changes shall become effective only by written agreement of Contractor.

7.  Production/Delivery Schedule: Contractor agrees to draft ROSS questions and Memos pursuant to the Production Run schedule below. In the First Production Run of Memos, Contractor shall commence providing deliverables on October 19, 2017 and conclude on December 19, 2017, as outlined below. For the Subsequent Production Runs of Memos, Contractor shall provide 20,000 Memos in subsequent months to ROSS.

First Production Run

| Delivery Date | Amount of Memos |
| --- | --- |
| October 19, 2017 | 5,000 |
| November 19, 2017 | 10,000 |
| December 19, 2017 | 10,000 |

Subsequent Production Run

| Delivery Date | Amount of Memos |
| --- | --- |
| Month 1 | 20,000 |
| Month 2 | 20,000 |
| Month 3 | 20,000 |
| Month 4 | 15,000 |

8.  Fee: ROSS shall pay Contractor pursuant to the schedule below:

| Reference Quotes | Price per Memo |
| --- | --- |

| | |
|---|---|
| 4 Quotes + 1 topical and 1 irrelevant Quote | $26.17 |
| 3 Quotes + 1 topical and 1 irrelevant Quote | $24.55 |
| 2 Quotes + 1 topical and 1 irrelevant Quote | $21.00 |

Contractor shall provide a 5% volume discount to ROSS for any Memo purchase over 25,000 and a 15% volume discount for a total order of 100,000 Memos.

9. Payment: ROSS shall pay Contractor in advance at the beginning of each month for the following 30 days of expected output at a minimum $21.00 price per Memo (each, an "Advance Payment"). For clarity, the Advance Payment for the (i) first 5,000 Memos of the First Production Run due October 19, 2017 shall be $105,000 and shall be made on September 19, 2017; (ii) subsequent 10,000 Memos of the First Production Run due November 19, 2017 shall be $210,000 and shall be made on October 19, 2017 and (iii) final 10,000 Memos of the First Production Run due December 19, 2017 shall be $210,000 and shall be made on November 20, 2017. For any Subsequent Production Run, the Advance Payment shall be $420,000. If there is a difference between an Advance Payment amount and aggregate Memo cost during a Production Run pursuant to the Section 8 Fee schedule (the "Cost Difference"), Contractor shall provide ROSS a detailed accounting of such Cost Difference in a timely manner and ROSS shall pay such Cost Difference within seven (7) days receipt of such detailed accounting.

10. Delivery: Contractor shall deliver batched Memos via e-mail or FTP to ross@rossintelligence.com and via the ROSS Memo upload portal (the "Portal"). The Portal shall meet necessary specifications of speed and capacity to process daily batched Memo uploads.

11. Quality Assurance: Contractor shall ensure the Memos submitted follow the (i) quality control processes detailed in the LegalEase Solutions Quality Control Guide ("QCG") provided in Schedule A to this Statement of Work and the (ii) Quality Control Checklist provided in Schedule B to this Statement of Work. Contractor shall follow a staged quality control process. There will be 100% quality control for the first 2000 Memos, 75% for the next 10,000 Memos and 25% for the remaining Memos. If any of the Memos submitted do not meet the parameters prescribed in the QCG, ROSS shall inform Contractor of such Deficiencies within 14 days of receipt of the applicable Memos. If no such notice is received within the prescribed 14 days, the applicable Memos shall be deemed fully accepted by ROSS. A 15% penalty shall be charged to any Memo and/or batch of Memos that fail to meet the QCG requirements.

12. Reporting: Contractor shall email daily reports to ROSS which include the production totals, QCG results, and other requested information from ROSS.

13. Destruction of Memos: Contractor acknowledges that the Memos constitute Confidential Information and shall remove and destroy all Memos and copies of Memos in its

possession within sixty (60) days of each Production Run and shall concurrently confirm to ROSS that such removal and destruction has occurred.

14. <u>Existing Agreements</u>: This Statement of Work is ancillary to existing agreements, including, but not limited to the MSA and prior Statements of Work.

Date: September _15_, 2017

ROSS INTELLIGENCE, INC.

By: _____

Name: Andrew Arruda
Title: Chief Executive Officer

LEGALEASE LLC

By: _____

Name: Tariq Hafeez
Title: President

# Quality Control Guide for ROSS Intelligence

Drafting Questions, Preparing Responsive
Memorandum, and Quality Control
Procedures

LegalEase Solutions LLC



## TABLE OF CONTENTS

Overview ............................................................................................... 2
    Introduction ...................................................................................... 2
    Audience .......................................................................................... 2
    Objectives ........................................................................................ 2
Legal Disclaimer ................................................................................... 3
The LegalEase Ross Team and Process ................................................ 4
    Attorneys ......................................................................................... 4
    Quality Control Attorneys ................................................................ 4
    Staged Quality Control Process ....................................................... 4
    Production Expeditors ...................................................................... 5
    India and US Project Managers ....................................................... 5
    ROSS Operations ............................................................................. 5
The LegalEase ROSS Process Flowchart ............................................... 6



## Overview

### Introduction

The LegalEase Solutions Quality Control Guide ("QCG") is the primary quality assurance resource and playbook for our attorneys.  This QCG provides all the tools and resources needed for the drafting and delivery of ROSS Intelligence memos.

### Audience

The intended audience for this guide is our attorneys who prepare Ross memos. Additionally, this guide may be utilized by ROSS to review our internal process.

### Objectives

This guide:

- Identifies clear guidelines for attorneys to follow when designing, developing, and researching, drafting, and delivering ROSS memos.
- Describes quality control standards for ROSS memos.
- Describes quality control procedures and processes set in place for ROSS memo production.



**Legal Disclaimer**

This Quality Control Guide includes proprietary, confidential, and/or trade secret information. LegalEase considers this information to be a trade secret not subject to disclosure.



**The LegalEase ROSS Team and Process**

We have organized a comprehensive team for this project.  Leading the team for ROSS operations are Teri Whitehead, VP of Global Strategy and Gayathri Rajeev, Director of Operations in India.  Teri and Gayathri will oversee operations and are available anytime to address and resolve any potential concerns.

**Attorneys.** Our team of attorneys will research topics and questions, draft the memos, and compile the memos in the ROSS approved format.   We will ensure that our attorneys follow this QCG for drafting memos and utilize our internal associate work product checklists. The steps include:

    i.    Using our LegalEase's creative process, to produce ROSS questions.
    ii.    Research answers to questions.
    iii.    Draft ROSS memorandum.

**Quality Control Attorneys.** We have allocated a minimum of 5 separate QC attorneys to independently review memos, ensuring that ROSS standards are met.  These attorneys have a minimum of 3 years' experience in these positions.  The QC team will be expanded as needed per the scope and requirements of this project. The QC team will follow the QC checklist setting out the steps to be followed in completing the process. These steps include:

    i.    Review and confirm the grammar, question format, and citations.
    ii.    Confirm and review short answer and legal analysis.
    iii.    Review reference quotes for relevancy.
    iv.    Confirm case law.
    v.    Advise associates of errors and design action plan to avoid future errors.

**Staged Quality Control Process.**  Our QC attorneys will follow LegalEase's staged quality control process.  We have used this process with success on other large accounts with over 50,000 documents.

First Stage:
    100% QC of 2000 Memos.  Our QC attorneys will QC 100% of the first 2000 memos.
Second Stage:
    75% for the next 10,000 memos. Our QC attorneys will QC 75% of the next 10,000 memos.
Third Stage:
    25% for the remaining memos. Our QC attorneys will QC 25% or more of the remaining memos.



**Production Expeditors.** Our dedicated ROSS production expeditors will comply and follow ROSS' process on delivery, including the portal upload, data tracking, and logistics. These steps include:

    i.      Validate question originality.
    ii.     Upload memorandum to ROSS dedicated portal.
    iii.    Update internal LE production tracking sheet.
    iv.    Email production totals of attorneys and QC attorneys to Project Managers.
    v.     Update internal exception error tracking sheet.
    vi.    Update ROSS' completion tracking sheet.

**India and US Project Managers.** We have assigned to ROSS, three project managers. Our project managers will guarantee and ensure ROSS quality and processes.  Having project managers in different time zones will provide round the clock attention and access.

The role of the PM's include:

    i.      Review production of attorneys, QC attorneys, production expeditors.
    ii.     Daily review protocol and process for efficiencies following LE model theory of constraints.
    iii.    Address any concerns.
    iv.    Email daily reports to LegalEase Operations detailing production, legal topics addressed, upload process production, improved efficiencies, and QC results.

**Ross Operations.** Teri Whitehead and Gayathri Rajeev will oversee all aspects of this project.  Teri and Gayathri's role includes the following:

    i.      Address any concerns.
    ii.     Email daily reports to the ROSS team providing production totals, QC results, and other requested information.
    iii.    Host daily conference status calls with the ROSS Production team.



**The LegalEase ROSS Process Flowchart**



| | |
|---|---|
| Document ID | : ROSS Bulk QCC |
| Date of Issue | : 07.08.2017 |
| Periodic Review | : 09.15.2017 |
| Revision No | : |

# Quality Control Checklist for ROSS Intelligence

## LegalEase Solutions LLC

Schedule B

| | |
|---|---|
| Document ID | : ROSS Bulk QCC |
| Date of Issue | : 07.08.2017 |
| Periodic Review | : 09.15.2017 |
| Revision No | : |

**QUALITY CONTROL CHECKLIST FOR ROSS BULK MEMOS**

**Attorney - ROSS Intelligence Checklist**

| Description | Completed |
|---|---|
| 1. Draft ROSS questions following LegalEase Creative Process. | |
| 2. Research questions using online resources and accounts. | |
| 3. Label cases as great, good, topical, and irrelevant. | |
| 4. Confirm that great, and good quotes answer the question directly. | |
| 5. Add topical and irrelevant cases. | |
| 6. Confirm that the topical and irrelevant cases meet the criteria. | |
| 7. Confirm grammar correct throughout memo. | |
| 8. Confirm the font and space of the memo. | |
| 9. Follow file name convention. | |

**Review Attorney - ROSS Intelligence Checklist**

| Description | QC 1 | QC 2 |
|---|---|---|
| Question should not be state specific. | | |
| Grammar check of question. | | |
| Quotes to be labeled correctly. GREAT – must contain **all** essential elements of the question. GOOD – contains **most** of the essential elements of the question. | | |

2

Schedule B

Document ID      : ROSS Bulk QCC
Date of Issue    : 07.08.2017
Periodic Review  : 09.15.2017
Revision No      :

| | | | |
|---|---|---|---|
| | TOPICAL – foundation quote, background information.<br><br>IRRELEVANT– has no reference or relevance. | | |
| | Should label as Great Case 1, Great Case 2, and not Great Quote. | | |
| | Bracketed language **must** answer question.<br><br>Bracketed language may be up to a paragraph.<br><br>If necessary, you can double bracket separate sentences.<br><br>Bracketed language must be a sentence. Not just two words. | | |
| | Double Brackets, and Content in Bold. | | |
| | No red squiggly line. | | |
| | Confirm reference quote.  Ensure Topical quote and Irrelevant quotes are added. | | |
| | Smartsheet updates. | | |
| | Double check the Form - Double Brackets for Quotes.  No highlights. | | |
| | Memo number. | | |
| | Memo saved in correct format – naming convention. | | |

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 16, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on February 16, 2022, upon the following in the manner indicated:

David E. Moore, Esquire                          *VIA ELECTRONIC MAIL*
Stephanie E. O'Byrne, Esquire
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE  19801
*Attorneys for Defendant and Counterclaimant*

Mark A. Klapow, Esquire                          *VIA ELECTRONIC MAIL*
Lisa Kimmel, Esquire
Crinesha B. Berry, Esquire
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, DC  20004
*Attorneys for Defendant and Counterclaimant*

Gabriel M. Ramsey, Esquire                       *VIA ELECTRONIC MAIL*
Kayvan M. Ghaffari, Esquire
Jacob Canter, Esquire
Warrington Parker, Esquire
CROWELL & MORING LLP
3 Embarcadero Center, 26th Floor
San Francisco, CA  94111
*Attorneys for Defendant and Counterclaimant*

*/s/ Michael J. Flynn*
_____
Michael J. Flynn (#5333)