IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION,<br><br>            Plaintiffs and Counterdefendants,<br><br>    v.<br><br>ROSS INTELLIGENCE INC.,<br><br>            Defendant and Counterclaimant. | C.A. No. 20-613 (LPS) |

**PLAINTIFFS AND COUNTERDEFENDANTS THOMSON REUTERS ENTERPRISE CENTRE GMBH AND WEST PUBLISHING CORPORATION'S NOTICE OF 30(b)(6) DEPOSITION OF DEFENDANT ROSS INTELLIGENCE INC.**

PLEASE TAKE NOTICE that commencing at a date and location to be agreed upon by the parties, Plaintiffs and Counterdefendants Thomson Reuters Enterprise Centre GmbH ("Thomson Reuters") and West Publishing Corporation ("West") (collectively "Plaintiffs") will take the deposition of the corporate designee of Defendant and Counterclaimant ROSS Intelligence Inc. ("ROSS" or "You") by oral examination. ROSS must designate one or more persons as ROSS's representative(s) to testify on its behalf as to each of the topics identified in Attachment A.

The deposition will begin on **March 30, 2022**, at the offices of Kirkland & Ellis LLP, 555 California Street, San Francisco, CA 94104, at 9:00 a.m. PT, and will be held before a notary public or other person authorized to administer oaths in this action. The deposition will continue from day to day until completed, with such adjournments as to time and place as may be necessary. The deposition may be recorded by stenographic, audio, audiovisual, video and/or

real-time computer means. The deposition will be taken for purposes of discovery, use at trial or hearings, and for any other purpose permitted under the orders of the presiding Court, the Federal Rules of Civil Procedure, and the Federal Rules of Evidence.

## DEFINITIONS

Unless otherwise defined, all words and phrases used herein shall be accorded their usual meaning and shall be interpreted in their common, ordinary sense. Should ROSS not understand the meaning of any term, it is requested to immediately seek clarification through Plaintiffs' counsel. As used in these requests, the words set forth below shall be defined as follows:

1. The term "AGREEMENT(S)" means and refers to written and oral agreements and contracts.

2. The term "ANSWER" means and refers to the answer filed by ROSS in this LITIGATION on December 13, 2020, the amended answer filed by ROSS in this LITIGATION on January 25, 2021, the second amended answer filed by ROSS in this LITIGATION on April 12, 2021, and any further amendments thereto.

3. The term "COMMUNICATION(S)" should be interpreted in its broadest sense to include without limitation all oral or written communications, including any writings, emails, or other electronically stored information as that term is defined by Federal Rule of Civil Procedure 34(a).

4. The term "COMPLAINT" means and refers to the Complaint filed by PLAINTIFFS in this LITIGATION on May 6, 2020, and any amendments thereto.

5. The terms "CONCERNING" and "REFERRING OR RELATING TO" should be construed in the broadest possible sense to mean analyzing, citing, commenting upon, comprising, concerning, consisting of, constituting, containing, dealing with, describing,

discussing, embodying, evidencing, identifying, involved with, mentioning, monitoring, referring to, reflecting, responding to, pertaining to, showing, stating, summarizing, or bearing any logical or factual connection with the matter discussed, as these terms are understood in the broadest sense.

6.  The term "CONTRACTOR(S)" means and refers to any outside parties that ROSS was, is, or considered working with to provide ROSS with TRAINING DATA, work product, or services in connection with the ROSS PLATFORM, including without limitation LegalEase Solutions, LLC and Cobra Legal Solutions, LLC.

7.  The term "DOCUMENT(S)" means any written, printed, typed, recorded, or graphic matter, however produced, reproduced, or stored, including the originals and all non-identical copies, whether different from the originals by reason of any notations made on such copies or otherwise, in the actual or constructive possession, custody, or control of ROSS or its employees, including without limitation contracts, letter agreements, records, correspondence, COMMUNICATIONS, electronically stored information, emails, tweets, blog or Internet forum posts or comments, text messages on portable devices, Blackberry Messenger messages, SMS messages, instant messenger messages (e.g. Skype, Slack, etc.), memoranda, handwritten notes, source code, source code comments, source repository logs, server logs, records or summaries of negotiations, records or summaries of interviews or conversations, audio or video recordings, copies of video games, all Internet-based media, photographs, corporate minutes, diaries, telephone logs, instant messaging logs, chat room logs, schedules, drawings, product storyboards, product mockups, statistical statements, work papers, disks, data cards, films, data processing files, charts, graphs, microfiche, microfilm, contracts, notices, reports, recitals, statements, worksheets, abstracts, resumes, summaries, jottings, market data, books, journals,

ledgers, audits, maps, diagrams, research documents, newspapers, appointment books, desk calendars, project management charts (e.g., Gantt charts), task management records (e.g., to-do lists), expense reports, computer printouts and other computer readable or electronic records, and all drafts or modifications thereof, and all non-identical copies of any such items.

8.  The term "FASTCASE" means and refers to Fastcase, Inc., and any of its former or current parents, subsidiaries, predecessors, successors, affiliated entities, controlled entities, joint ventures, related entities, agents, attorneys, employees, interns, representatives, assigns, directors, or officers and all other persons acting or purporting to act on their behalf, including but not limited to Casemaker, Inc.

9.  The term "INITIAL DISCLOSURES" means and refers to the Rule 26 initial disclosures filed by ROSS in this LITIGATION on May 13, 2021, and any amendments thereto.

10. The term "LEGALEASE" means and refers to LegalEase Solutions, LLC, and any of its former or current parents, subsidiaries, predecessors, successors, affiliated entities, controlled entities, joint ventures, related entities, agents, attorneys, employees, interns, representatives, assigns, directors, or officers and all other PERSONS acting or purporting to act on their behalf, including without limitation Teri Whitehead, Tariq Hafeez, and Merin Sony.

11. The term "LEGALEASE LITIGATION" means and refers to the lawsuit filed by WEST against LEGALEASE in the United States District Court for the District of Minnesota with case number 18-CV-01445.

12. The term "LEGALEASE COMPLAINT" means and refers to the Complaint filed by WEST in the LEGALEASE LITIGATION on May 25, 2018.

13. The term "LITIGATION" means and refers to the lawsuit filed by PLAINTIFFS against ROSS in the United States District Court for the District of Delaware with case number

20-cv-00613.

14. The term "MATERIALS" means and refers to all DOCUMENTS, products, tools, data, knowledge, information, and resources, including without limitation ROSS MEMOS.

15. The term "PERSON(S)" means any natural person, firm, corporation, partnership, group, association, governmental entity, or business entity.

16. The term "PLAINTIFFS" means and refers to THOMSON REUTERS and WEST.

17. The terms "ROSS," "YOU," and "YOUR" mean and refer to Defendant ROSS Intelligence Inc., and any of its former or current parents, subsidiaries, predecessors, successors, affiliated entities, controlled entities, joint ventures, related entities, agents, attorneys, employees, interns, representatives, assigns, directors, or officers and all other PERSONS acting or purporting to act on their behalf, including without limitation ROSS Intelligence, Inc., the Canadian entity, Andrew Arruda, and Jimoh Ovbiagele.

18. The term "ROSS CASE CLASSIFIER" means and refers to the artificial intelligence algorithm(s) or system(s) that ROSS developed and refers to as "case classifier," as shown in the document produced at ROSS-003658597–ROSS-003658604.

19. The term "ROSS MEMOS" means and refers to any work product created or distributed by a CONTRACTOR for or to ROSS, including without limitation any "Memos" or "Legal Research Questions" as defined by Sections 1.2 and 1.3 of the "STATEMENT OF WORK II FOR ROSS BULK MEMOS" that was published by ROSS on May 7, 2020, on the website available at https://medium.com/@AndrewArruda/hold-59effcd819b0.

20. The term "ROSS PLATFORM" means and refers to any and all services and products offered by ROSS, including without limitation the online legal research platform referred to as "ROSS" previously offered through the website available at https://www.rossintelligence.com/.

21. The term "ROSS Q&A DATA" means and refers to the "new Q&A data," referenced in the document produced at ROSS-003419784–ROSS-003419786, consisting of "25,539 Q&A pairs from which [ROSS] extracted 151,695 labels for cases mapped to a practice area."

22. The term "SECOND AMENDED ANSWER" means and refers to the second amended answer filed by ROSS in this LITIGATION on April 12, 2021.

23. The term "THOMSON REUTERS" means and refers to Plaintiff and Counterdefendant Thomson Reuters Enterprise Centre GmbH, and any of its former or current parents, subsidiaries, predecessors, successors, affiliated entities, controlled entities, joint ventures, related entities, agents, attorneys, employees, interns, representatives, assigns, directors, or officers and all other PERSONS acting or purporting to act on their behalf.

24. The term "TRAINING DATA" means and refers to any MATERIALS, data or sets of data used by ROSS to train any artificial intelligence algorithms or systems, including without limitation any ROSS MEMOS and WESTLAW CONTENT.

25. The term "WEST" means and refers to Plaintiff and Counterdefendant West Publishing Corporation, and any of its former or current parents, subsidiaries, predecessors, successors, affiliated entities, controlled entities, joint ventures, related entities, agents, attorneys, employees, interns, representatives, assigns, directors, or officers and all other PERSONS acting or purporting to act on their behalf.

26. The term "WEST HEADNOTES" means and refers to the proprietary text created by WEST's attorney-editors to describe and summarize the key concepts, points of law, or facts of judicial opinions found on WESTLAW.

27. The term "WEST SUBSCRIPTION AGREEMENT" means and refers to the agreement entered into between a WESTLAW subscriber and WEST.

28. The term "WESTLAW" means and refers to PLAINTIFFS' online legal research product named Westlaw.

29. The term "WESTLAW CONTENT" means and refers to any and all WESTLAW content owned by PLAINTIFFS, including without limitation the WKNS and WEST HEADNOTES, and expressly excluding any work prepared by a United States Government officer or employee as a part of that person's official duties, including without limitations government edicts, legislative enactments, judicial decisions, or similar types of official legal materials.

30. The term "WKNS" means and refers to the taxonomy of cases, topics, legal issues, points of law, and WEST HEADNOTES created and maintained by WEST's attorney-editors for WESTLAW.

31. The words "and" and "or" shall be construed both conjunctively and disjunctively, and each shall include the other wherever such dual construction will serve to bring within the scope of a Request any PERSONS, COMMUNICATIONS, or DOCUMENTS which otherwise would not be brought within its scope.

32. The words "any" and "all" are mutually interchangeable and are meant to encompass each other.

33. The singular includes the plural and vice versa.

34. The past tense shall be construed to include the present tense and vice versa.

## **TOPICS**

1. The conception, creation, development, and testing of the ROSS PLATFORM and ROSS CASE CLASSIFIER, including without limitation any COMMUNICATIONS related thereto and the PERSONS involved in such conception, creation, development or testing.

2. The process through which TRAINING DATA was used to create, develop, and/or train the ROSS PLATFORM or ROSS CASE CLASSIFIER, including without limitation the purpose of any TRAINING DATA, how such TRAINING DATA was created and obtained, who created such TRAINING DATA, the market for such TRAINING DATA, and how such TRAINING DATA was used by ROSS to train any artificial intelligence algorithms or systems.

3. The value of any TRAINING DATA that ROSS used in creating, developing, or training any artificial intelligence algorithms or systems (*e.g.*, the ROSS PLATFORM and ROSS CASE CLASSIFIER), including without limitation the respective value of the ROSS MEMOS and ROSS Q&A DATA.

4. ROSS's relationship with all CONTRACTORS (*e.g.*, LEGALEASE and Cobra Legal Solutions, LLC)

5. ROSS's reason(s) for entering into a contract with all CONTRACTORS (*e.g.*, LEGALEASE and Cobra Legal Solutions, LLC), including without limitation the reason(s) behind subsequent decisions to continue or modify the contract, or enter into a subsequent contract(s) with them.

6. What all CONTRACTORS (*e.g.*, LEGALEASE and Cobra Legal Solutions, LLC) were told to do under each contract they entered into with ROSS, including without limitation (i) what they actually did under each contract, and (ii) what ROSS did with the work product created or delivered under each contract.

7. ROSS's COMMUNICATIONS with CONTRACTORS CONCERNING the ROSS PLATFORM or the ROSS CASE CLASSIFIER.

8. All materials and services that all CONTRACTORS created, performed, or delivered to ROSS, including without limitation the ROSS MEMOS, the "Case Classifier" project, the "ROSS Variation" project, and the "ROSS Nuance" project.

9. ROSS's COMMUNICATIONS CONCERNING CONTRACTORS using WESTLAW, including without limitation how WESTLAW was or was anticipated to be used.

10. ROSS's knowledge that LEGALEASE was copying, using, scraping, or otherwise accessing WESTLAW, including without limitation in connection with the services it provided to ROSS (*e.g.*, the ROSS MEMOS and the "Classifier" project).

11. ROSS's COMMUNICATIONS with LEGALEASE CONCERNING LEGALEASE sending ROSS judicial opinions from WESTLAW that contained WEST HEADNOTES, including without limitations ROSS's subsequent instructions to LEGALEASE to send judicial opinions without WEST HEADNOTES, how LEGALEASE responded to ROSS's instructions, and the reason why ROSS did not tell LEGALEASE to cease its use of WESTLAW.

12. ROSS's knowledge that any materials and services that ROSS's CONTRACTORS created, performed, or delivered to ROSS copied or included any material from WESTLAW, including without limitation the WEST HEADNOTES, WKNS, and Key Numbers, or were created by copying, using, scraping, or otherwise accessing WESTLAW.

13. Any potential or actual acquisitions of ROSS, including without limitation ROSS's attempts to be acquired by FASTCASE in February 2020, April 2020, and November 2020.

14. The decision to cease operation of the ROSS PLATFORM.

15. ROSS's past, present, or future business plans, including without limitation plans to sell the ROSS PLATFORM, any artificial intelligence algorithms or systems, or any TRAINING DATA, as well as any plans to resume operations of ROSS or the ROSS PLATFORM in any capacity.

16. ROSS accessing, or attempting to gain access to, WESTLAW, whether directly or indirectly.

17. ROSS's knowledge of WEST SUBSCRIPTION AGREEMENTS or WESTLAW's terms of use, including without limitation the terms of LEGALEASE's WEST SUBSCRIPTION AGREEMENTS.

18. ROSS's knowledge of PLAINTIFFS' intellectual property right in WESTLAW and WESTLAW CONTENT, including without limitation ROSS's knowledge of copyright protection of annotations to judicial opinions or other legal material.

19. ROSS's basis for using WESTLAW, directly or indirectly, to create TRAINING DATA for training any artificial intelligence algorithms, including without limitation the ROSS PLATFORM and ROSS CASE CLASSIFIER.

20. ROSS's revenues, expenses, and profits (both gross and net), including without limitation those attributable to or associated with the ROSS PLATFORM.

21. Financial investments (actual or potential) in ROSS and the ROSS PLATFORM.

22. The topics, subjects, witnesses, and DOCUMENTS relied on by ROSS to file its ANSWER, including without limitation each of ROSS's responses and allegations in its ANSWER, the factual basis for each of ROSS's admissions and denials, and the assertions in ROSS's copyright misuse counterclaims.

23. COMMUNICATIONS between ROSS and third parties CONCERNING PERSONS accessing, or attempting to gain access to, WESTLAW, including without limitation CONTRACTORS, David Aloyts, Charles Von Simson, Ashley Stenning, and Rohit Jayawardhan.

24. COMMUNICATIONS between ROSS and PLAINTIFFS, either directly or indirectly.

25. ROSS's COMMUNICATIONS CONCERNING this LITIGATION, both internally and with other PERSONS.

26. The substance and nature of all services ROSS provided to FASTCASE, including without limitation (a) all MATERIALS that ROSS created for or supplied to FASTCASE; (b) all MATERIALS that FASTCASE created for or supplied to ROSS; and (c) the purpose of the MATERIALS and services ROSS provided to FASTCASE.

27. ROSS's COMMUNICATIONS CONCERNING the ROSS MEMOS and/or the ROSS PLATFORM, TRAINING DATA, PLAINTIFFS, WESTLAW, the WESTLAW CONTENT, WEST HEADNOTES, and/or WKNS.

28. The LEGALEASE LITIGATION, including without limitation (a) ROSS's COMMUNICATIONS CONCERNING the LEGALEASE LITIGATION, both internally and with other PERSONS, and (b) ROSS's deposition testimony from the LEGALEASE LITIGATION.

29. The topics, subjects, witnesses, DOCUMENTS, and damages referenced in ROSS's INITIAL DISCLOSURES.

30. The topics, subjects, witnesses, and DOCUMENTS relied on by ROSS in responding to PLAINTIFFS' discovery requests.

31. ROSS's DOCUMENT retention policies and practices, including but not limited to ROSS's policies and practices CONCERNING (a) the retention or deletion of DOCUMENTS, (b) whether and when ROSS deletes DOCUMENTS, (c) the date on which ROSS began preserving DOCUMENTS, and (d) the steps ROSS took and the nature of the timing of ROSS's efforts to institute a litigation hold and preserve DOCUMENTS in its possession, custody, and control.

32. The steps ROSS took and the nature and timing of ROSS's efforts to search for and collect DOCUMENTS in connection with this LITIGATION.

|  |  |
|---|---|
| OF COUNSEL:<br><br>Dale M. Cendali<br>Joshua L. Simmons<br>Eric A. Loverro<br>KIRKLAND & ELLIS LLP<br>601 Lexington Avenue<br>New York, NY 10022<br>(212) 446-4800<br><br>Daniel E. Laytin<br>Christa C. Cottrell<br>Cameron Ginder<br>Alyssa C. Kalisky<br>KIRKLAND & ELLIS LLP<br>300 North LaSalle<br>Chicago, IL 60654<br>(312) 862-2000<br><br>Miranda D. Means<br>KIRKLAND & ELLIS LLP<br>200 Clarendon Street<br>Boston, MA 02116<br>(617) 385-7500<br><br>March 1, 2022 | MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br><br>*/s/ Michael J. Flynn*<br><br>Jack B. Blumenfeld (#1014)<br>Michael J. Flynn (#5333)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE 19899<br>(302) 658-9200<br>jblumenfeld@morrisnichols.com<br>mflynn@morrisnichols.com<br><br>*Attorneys for Plaintiffs and Counterdefendants Thomson Reuters Enterprise Center GmbH and West Publishing Corporation* |

## CERTIFICATE OF SERVICE

I hereby certify that on March 1, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on March 1, 2022, upon the following in the manner indicated:

| | |
|---|---|
| David E. Moore, Esquire<br>Stephanie E. O'Byrne, Esquire<br>POTTER ANDERSON & CORROON LLP<br>Hercules Plaza, 6th Floor<br>1313 North Market Street<br>Wilmington, DE 19801<br>*Attorneys for Defendant and Counterclaimant* | *VIA ELECTRONIC MAIL* |
| Mark A. Klapow, Esquire<br>Lisa Kimmel, Esquire<br>Crinesha B. Berry, Esquire<br>CROWELL & MORING LLP<br>1001 Pennsylvania Avenue NW<br>Washington, DC 20004<br>*Attorneys for Defendant and Counterclaimant* | *VIA ELECTRONIC MAIL* |
| Gabriel M. Ramsey, Esquire<br>Kayvan M. Ghaffari, Esquire<br>Jacob Canter, Esquire<br>Warrington Parker, Esquire<br>CROWELL & MORING LLP<br>3 Embarcadero Center, 26th Floor<br>San Francisco, CA 94111<br>*Attorneys for Defendant and Counterclaimant* | *VIA ELECTRONIC MAIL* |

*/s/ Michael J. Flynn*
_____
Michael J. Flynn (#5333)