## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION,<br><br>  Plaintiffs/Counterdefendants,<br><br>  v.<br><br>ROSS INTELLIGENCE INC.,<br><br>  Defendants/Counterclaimant. | C.A. No. 20-613-LPS<br><br>**JURY TRIAL DEMANDED** |

### DEFENDANT ROSS INTELLIGENCE, INC.'S AMENDED NOTICE OF 30(b)(6) DEPOSITION TO PLAINTIFF THOMSON REUTERS ENTERPRISE CENTRE GMBH

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT, pursuant to Federal Rule of Civil Procedure 30(b)(6), Defendants ROSS Intelligence, Inc. ("ROSS"), through their attorneys, will take the deposition upon oral examination of one or more representatives of Thomson Reuters Enterprise Centre GmbH ("Plaintiff") on the topics specified in the attached Schedule A. The deposition will begin on April 18, 2022, at the offices of Crowell & Moring LLP, 590 Madison Ave #20th, New York, NY 10022 at 9:00 a.m. ET, and continue from day to day thereafter, Saturdays, Sundays and holidays excepted, until completed. The deposition will be taken before an officer duly authorized to administer oaths under the laws of the United States and/or the State of New York, and will be recorded by audio, audio-visual, and stenographic means.

Pursuant to Federal Rule 30(b)(6), Plaintiff shall designate and produce at the deposition one or more officers, directors, managing agents, or other persons who consent to testify on its behalf with respect to the matters specified in Schedule A.

PLEASE TAKE FURTHER NOTICE THAT in light of the uncertainty surrounding the COVID-19 pandemic, ROSS reserves the right, in consultation with counsel for the deponent, to hold this deposition remotely.

NOTICE IS FURTHER GIVEN THAT ROSS reserves the right to record the deposition either by stenographic means by a court reporter certified to record depositions or a digital reporter utilizing state-of-the-art digital recording equipment. Both the court reporter and digital reporter are authorized to administer the oath and serve as the deposition officer in the State of New York. ROSS further reserves the right to record the deposition utilizing audio or video technology and the right to utilize Exhibit Share (picture-in-picture) technology in which any exhibit reviewed by the deponent during the deposition can be captured visually.

Should the deposition be recorded in either video format, ROSS reserves the right to utilize any portion of the audio or video recording of the proceeding in Court. In the event ROSS utilizes the stenographic reporting method, it reserves the right to utilize instant visual display such that the reporter's writing of the proceeding will be available to all who are a party to this proceeding to request and receive it in real time.

NOTICE IS FURTHER GIVEN THAT ROSS reserves the right to conduct this deposition utilizing a paperless exhibit display process called Exhibit Share provided and supported by Veritext Legal Solutions. The parties are advised that one paper set of exhibits will be utilized at the deposition for the court reporter's purposes of compiling, exhibit stamping, and ultimate production of the final certified transcript. However, no other paper copies will be provided as they will be available for visual display using Exhibit Share. Please contact the noticing attorney at least two (2) business days prior to the deposition to advise that it is your desire to be set up for Exhibit Share access so that the necessary credentials, testing and

information, if necessary, can be provided to you prior to the proceedings. For information and available tutorial videos demonstrating Exhibit Share, please utilize this link to access additional information: https://www.veritext.com/services/exhibitshare/.

      NOTICE IS FURTHER GIVEN THAT ROSS reserves the right to conduct this deposition utilizing the secure web-based deposition option afforded by Veritext or in the alternative video teleconferencing (VTC) services or telephonically only to provide remote/virtual access for those parties wishing to participate in the deposition via the internet and/or telephone. Also take notice that, the court reporter may also be remote via one of the options above for the purposes of reporting the proceeding and may or may not be in the presence of the deponent. Please contact the noticing attorney at least two (2) business days prior to the deposition to advise that it is your desire to appear via this remote participating means so that the necessary credentials, call-in numbers, testing and information, if necessary, can be provided to you prior to the proceedings. In addition, ROSS also reserves the right to utilize instant visual display technology such that the court reporter's writing of the proceeding will be displayed simultaneous to their writing of the same on one's laptop, iPad, tablet or other type of display device connected to the court reporter.

OF COUNSEL:

Gabriel M. Ramsey
Warrington Parker
Kayvan M. Ghaffari
Joachim B. Steinberg
Jacob Canter
CROWELL & MORING LLP
3 Embarcadero Center, 26th Floor
San Francisco, CA 94111
Tel:  (415) 986-2800

Crinesha B. Berry
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC  20004
Tel:  (202) 624-2500

Dated:  March 7, 2022
10066074 / 50241

POTTER ANDERSON & CORROON LLP

By:  */s/ David E. Moore*
    David E. Moore (#3983)
    Bindu A. Palapura (#5370)
    Carson R. Bartlett (#6750)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, DE  19801
    Tel:  (302) 984-6000
    dmoore@potteranderson.com
    bpalapura@potteranderson.com
    cbartlett@potteranderson.com

*Attorneys for Defendant/Counterclaimant*
*ROSS Intelligence, Inc.*

## SCHEDULE A

### Definitions

1. The term "THOMSON REUTERS" as used herein means Plaintiff / Counterdefendant Thomson Reuters Enterprise Centre GMBH, and its present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on its behalf.

2. The term "WEST" as used herein means Plaintiff / Counterdefendant West Publishing Corporation and its present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on its behalf.

3. The terms "YOU," "YOUR," and "PLAINTIFF" are used herein to mean THOMSON REUTERS and WEST.

4. "WESTLAW" means the product that WEST license as discussed in YOUR COMPLAINT.

5. "WESTLAW CONTENT" has the same meaning as the term "Westlaw content" as used in the COMPLAINT ¶ 1.

6. "WKNS" or "KEY NUMBER SYSTEM" means the Westlaw Key Number System as discussed in YOUR COMPLAINT.

7. "KEY NUMBERS" mean the component parts of the KEY NUMBER SYSTEM.

8. "HEADNOTES" means the West Headnotes as discussed in YOUR COMPLAINT.

9. "WESTLAW DATABASE" has the same meaning as "database" referenced in the COMPLAINT ¶ 15.

10. The terms "ROSS," "DEFENDANT," and "COUNTERCLAIMANT," as used herein means ROSS Intelligence, Inc., and its present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on its behalf.

11. "COMPLAINT" means the Complaint filed by THOMSON REUTERS in this litigation in the United Stated District Court for the District of Delaware on May 6, 2020 (D.I. 1).

12. "LEGALEASE" as used herein means LegalEase Solutions, LLC, and its present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on its behalf.

13. The term "LICENSEE" as used herein means any third party who has a license to access WESTLAW as described in the COMPLAINT ¶ 1.

14. The terms "DOCUMENT" or "DOCUMENTS" is used in the broadest sense permissible under the Federal Rules of Civil Procedure and shall include, without limitation any written, printed, typed, recorded, or graphic matter, however produced, reproduced, or stored, including the originals and all nonidentical copies, whether different from the originals by reason of any notations made on such copies or otherwise, in the actual or constructive possession, custody, or control of THOMSON REUTERS, including without limitation contracts, letter agreements, records, correspondence, COMMUNICATIONS, electronically stored information, emails, tweets, blog or Internet forum posts or comments, text messages on portable devices, Blackberry Messenger messages, SMS messages, instant messenger messages (e.g. Skype, Slack, etc.), memoranda, handwritten notes, source code, object code, binaries and associated files and/or structures, source code comments, source repository logs, server logs, records or

summaries of negotiations, records or summaries of interviews or conversations, audio or video recordings, copies of video games, all Internet-based media, photographs, corporate minutes, diaries, telephone logs, instant messaging logs, chat room logs, schedules, drawings, product storyboards, product mockups, statistical statements, work papers, disks, data cards, films, data processing files, charts, graphs, microfiche, microfilm, contracts, notices, reports, recitals, statements, worksheets, abstracts, resumes, summaries, jottings, market data, books, journals, ledgers, audits, maps, diagrams, research documents, newspapers, appointment books, desk calendars, project management charts (e.g., Gantt charts), task management records (e.g., to-do lists), expense reports, computer printout and other computer readable or electronic records, and all drafts or modifications thereof, and all non-identical copies of any such items. Any such DOCUMENT with any sheet or part thereof bearing any marks, such as initials, stamped indices, comments or notations, or any character or characters, that are not part of the signed text or photographic reproduction thereof is to be considered as a separate DOCUMENT. Where there is any question about whether a tangible item otherwise described in these requests falls within the definition of "DOCUMENT(S)," such tangible item shall be produced.

15.     The terms "COMMUNICATION" or "COMMUNICATIONS" mean any manner or method in which information is communicated from one human being to another, including, but not limited to, any means of transmission, sending, and/or receipt of information of any kind, such as speech, writing, language, nonverbal signals, computer electronics of any kind, magnetic tape, video tape, photographs, graphs, symbols, magnetic disks, sound, radio and/or video signal, telephone, teletype, telecommunication, telegram, microfilm, microfiche, photographic film of any type, and/or media of any kind.

16. "AND" and "OR" and "BETWEEN" and "AMONG" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of a request all information that otherwise might be construed to be outside of its scope.

17. "ANY" shall mean any or all and the term "ALL" shall mean any or all

18. "IDENTIFY" means to provide a description sufficient in specificity such that the document or thing can be unambiguously obtained by means of such description in a request for production pursuant to Rule 34 of the Federal Rules of Civil Procedure, which will include, whether applicable, the document's or thing's title, date, author(s) or creator(s), recipient(s), Bates number, and present location.

19. "INCLUDING" means not limited to.

20. The terms "PERSON" and "PERSONS" means any individual, corporation, partnership, association, organization, or other entity of any type or nature.

21. The terms "RELATE TO," "RELATED TO," AND "RELATING TO" mean constituting, pertaining to, in connection with, reflecting, respecting, regarding, concerning, referring to, based upon, stating, showing, evidencing, establishing, supporting, negating, contradicting, describing, recording, noting, embodying, memorializing, containing, mentioning, studying, analyzing, discussing, specifying, identifying or in any manner logically, factually, indirectly or directly, or in any other way connecting to the matter addressed, in whole or in part.

22. The singular form of a noun or pronoun shall be considered to include within its meaning the plural form of the noun or pronoun, and vice versa; and the past tense shall include the present tense where the clear meaning is not distorted. The term "or" shall mean "and" and vice-versa, as necessary to bring within the scope of the following requests all information or DOCUMENTS that would be excluded absent this definition.

**Deposition Topics**

1. THOMSON REUTERS' knowledge of its copyrights in WESTLAW CONTENT, including but not limited to the WKNS AND Headnotes.

2. THOMSON REUTERS' knowledge of its ownership and rights to WESTLAW CONTENT.

3. THOMSON REUTERS' collection of Federal AND State judicial opinions including but not limited to how judicial opinions are structured, sequenced, AND organized.

4. The creation and function of HEADNOTES AND the WKNS, including any automated systems, such as JCaRE.

5. The organization, sequence and structure of HEADNOTES.

6. The organization, sequence, and structure of the WKNS.

7. The purpose of WESTLAW CONTENT.

8. THOMSON REUTERS' policies, practices, and guidelines RELATING TO applying for copyright protection of any WESTLAW CONTENT with the United States Copyright Office.

9. TR-0036335.

10. The creation of topic names[1] used in the WKNS.

11. The relationship between the HEADNOTES AND KEY NUMBERS on judicial opinions contained on WESTLAW.

---

[1] Examples of these include, but are not limited, to topic names such as "311H Privileged Communications and Confidentiality," "3111Hk81 Communications through or in presence or hearing of others; communications with third parties (Formerly 410k193)," "272 Negligence," and "272k202 Elements in general."

12. The relationship between the HEADNOTES AND KEY NUMBERS AND the WESTLAW search engines.

13. Training of attorney editors to prepare, create, AND develop the WKNS AND HEADNOTES, INCLUDING revisions, organization, AND structure.

14. Patents RELATING TO the WESTLAW CONTENT, INCLUDING the WKNS, HEADNOTES, search engines, AND algorithms.

15. THOMSON REUTERS' knowledge of policies AND practices RELATING to WEST providing third-parties, including competitors, access to WESTLAW.

16. THOMSON REUTERS' knowledge and understanding of the Sales and Marketing Agreement (TR-0358927).

17. How THOMSON REUTERS obtained the copyrights assigned in the Sales and Marketing Agreement (TR-0358927).

18. THOMSON REUTERS' knowledge and understanding of the Intellectual Property Assignment (Legacy Legal, Serengti, FindLaw, WeComply, and other assets) (TR-0359401).

19. THOMSON REUTERS' knowledge of WEST'S licensing strategies regarding access to AND use of WESTLAW.

20. THOMSON REUTERS' enforcement of the copyrights in WESTLAW CONTENT.

21. THOMSON REUTERS' knowledge of WEST'S policies AND practices RELATING to WEST'S assessment of activity that may violate ANY WESTLAW license.

22. THOMSON REUTERS' COMMUNICATIONS with ROSS.

23. THOMSON REUTERS' COMMUNICATIONS with LEGALEASE RELATING to LEGALEASE'S use of AND access to WESTLAW.

24. THOMSON REUTERS' knowledge and understanding of LEGALEASE'S work for ROSS, including without limitation THOMSON REUTERS' understanding of the work product and the date THOMSON REUTERS learned LEGALEASE had a contract for services with ROSS.

25. THOMSON REUTERS' COMMUNICATIONS with LEGALEASE RELATING to ROSS.

26. THOMSON REUTERS' knowledge of LICENSEES that resell OR relicense the WESTLAW PRODUCT as referenced in TR-0037754.

27. THOMSON REUTERS' claim of infringement against ROSS.

28. The WESTLAW CONTENT that THOMSON REUTERS claim ROSS infringed.

29. THOMSON REUTERS' knowledge of WEST'S pricing of WESTLAW CONTENT.

30. THOMSON REUTERS' copyright damages.

31. How THOMPSON REUTERS calculated the damages figures in the response to ROSS's Interrogatory No. 21.

32. THOMPSON REUTERS' total damages.

33. How THOMSON REUTERS values HEADNOTES.

34. How THOMSON REUTERS values individual KEY NUMBERS.

35. How THOMSON REUTERS values the structure, sequence, and organization of the HEADNOTES with the WESTLAW search engine.

36. How THOMSON REUTERS values the structure, sequence, and organization of the WKNS with the WESTLAW search engine.

37. THOMPSON REUTERS' use of artificial intelligence.

38. THOMPSON REUTERS' use of scraping technology.

39. THOMSON REUTERS' tortious interference damages.

40. THOMSON REUTERS' policies and practices RELATED TO the retention of DOCUMENTS and COMMUNICATIONS.

41. THOMSON REUTERS' Responses and Objections to Defendants' Requests for Production.

42. THOMSON REUTERS' knowledge of the terms of any licensing agreement(s) between WEST and LEGALEASE.

43. THOMSON REUTERS' knowledge of the settlement agreement between WEST and LEGALEASE in the matter West Publishing Corporation v. LegalEase Solutions, LLC, Case No. 18-cv-01445 (D. Minn.).

44. YOUR policies and practices for training YOUR employees, contractors, and agents about copyright creation and ownership.

45. The value of WESTLAW subscriptions, including without limitation the value of a monthly subscription versus the "pro forma value" referenced in TR-0894151-TR-0894157.

46. THOMPSON REUTERS' pro forma pricing.

47. The prices actually paid by WESTLAW subscribers.

48. THOMPSON REUTERS' discounts to customers.

49. THOMPSON REUTERS' monthly and yearly revenue.

50. The creation and development of each allegedly infringed HEADNOTE.

51. The creation and development of each allegedly infringed portion of the KEY NUMBER SYSTEM.

52. The creation and development of every other allegedly infringed WESTLAW CONTENT, including without limitation any topics, subtopics, or KEY NUMBERS that are part of the KEY NUMBER SYSTEM.