IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

THOMSON REUTERS ENTERPRISE )
CENTRE GMBH and WEST PUBLISHING )
CORPORATION, )
)
)
Plaintiffs and ) C.A. No. 20-613 (LPS)
Counterdefendants, )
)
v. )
)
ROSS INTELLIGENCE INC., )
)
Defendant and )
Counterclaimant. )

**NOTICE OF DOCUMENT SUBPOENA TO
Y COMBINATOR INVESTMENTS, LLC SERIES S15
(COMMON)**

PLEASE TAKE NOTICE that pursuant to Federal Rule of Civil Procedure 45, Plaintiffs

and Counterdefendants Thomson Reuters Enterprise Centre GmbH and West Publishing

Corporation will serve the attached Subpoena to Produce Documents, Information, or Objects in

a Civil Action on Y Combinator Investments, LLC Series S15 (Common) requesting that it

produce the specified documents and things for inspection and copying at the time and location

noticed in the subpoena or at a time and location as may be agreed upon by counsel.

OF COUNSEL:

Dale M. Cendali
Joshua L. Simmons
Eric A. Loverro
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
(212) 446-4800

Daniel E. Laytin
Christa C. Cottrell
Cameron Ginder
Alyssa C. Kalisky
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL  60654
(312) 862-2000

Miranda D. Means
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
(617) 385-7500

March 18, 2022

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com

*Attorneys for Plaintiffs and Counterdefendants*
*Thomson Reuters Enterprise Center GmbH and*
*West Publishing Corporation*

2

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

### for the

### District of Delaware

| | |
|---|---|
| Thomson Reuters Enterprise Centre GmbH, et al. | ) |
| _____ | ) |
| *Plaintiff* | ) |
| v. | )  Civil Action No.  1:20-cv-00613-LPS |
| | ) |
| ROSS Intelligence Inc. | ) |
| _____ | ) |
| *Defendant* | ) |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:　　　Y Combinator Investments, LLC Series S15 (Common) c/o ATTN: CAROLYN LEVY
　　　　335 PIONEER WAY, MOUNTAIN VIEW, CA, 94041

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Exhibit A attached.

| Place: Eric Loverro | Date and Time: |
|---|---|
| KIRKLAND & ELLIS LLP | |
| 3330 HILLVIEW AVENUE, PALO ALTO, CA 94304 | 04/04/2022 10:00 am |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

　　　The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:　　03/18/2022

CLERK OF COURT

　　　　　　　　　　　　　　　　　　　　　　　　OR

_____　　　　　_____
*Signature of Clerk or Deputy Clerk*　　　　　　　　　*Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*　Thomson Reuters
Enterprise Centre GmbH and West Publishing Corporation　　　　, who issues or requests this subpoena, are:

Eric Loverro, Kirkland & Ellis LLP, 601 Lexington Ave., New York, NY 10022, eric.loverro@kirkland.com, 212-446-4800

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   1:20-cv-00613-LPS

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____                        _____
                                                                  *Server's signature*

                                                         _____
                                                                  *Printed name and title*

                                                         _____
                                                                  *Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
 **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
 **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
  **(i)** is a party or a party's officer; or
  **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
 **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
 **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
 **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
 **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
  **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
  **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***
 **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
  **(i)** fails to allow a reasonable time to comply;
  **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
  **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
  **(iv)** subjects a person to undue burden.
 **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
  **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

  **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
 **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
  **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
  **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
 **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
 **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
 **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
 **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
 **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
  **(i)** expressly make the claim; and
  **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
 **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# EXHIBIT A

## DEFINITIONS

Unless otherwise defined, all words and phrases used herein shall be accorded their usual meaning and shall be interpreted in their common, ordinary sense.  Should Y Combinator Investments, LLC Series S15 (Common) not understand the meaning of any term, it is requested to immediately seek clarification through Plaintiffs' counsel.  As used in these Requests, the words set forth below shall be defined as follows:

1.      The terms "COMMUNICATED" and "COMMUNICATION(S)" should be interpreted in their broadest sense to include without limitation all oral or written communications, including any writings, emails, or other electronically stored information as that term is defined by Federal Rule of Civil Procedure 34(a).

2.      The term "ROSS COMPLAINT" means and refers to the Complaint filed by PLAINTIFFS in this LITIGATION on May 6, 2020.

3.      The terms "CONCERNING" and "REFERRING OR RELATING TO" should be construed in the broadest possible sense to mean analyzing, citing, commenting upon, comprising, concerning, consisting of, constituting, containing, dealing with, describing, discussing, embodying, evidencing, identifying, involved with, mentioning, monitoring, referring to, reflecting, responding to, pertaining to, showing, stating, summarizing, or bearing any logical or factual connection with the matter discussed, as these terms are understood in the broadest sense.

4.      The term "DESCRIBE" means to state what is requested to be described, including all facts and opinions known or held by YOU CONCERNING, relating to, or pertinent to what is requested to be described; and (i) the identity of each person or entity involved or having any knowledge of each fact or opinion that relates to what is so described; (ii) the identity of each document evidencing the answer or response given or relating, referring or pertaining to

said subject matter in any way; and (iii) all relevant or material dates and time periods, specifying the way in which said dates or time periods are pertinent to the subject matter described.

5.      The term "DOCUMENT(S)" means any written, printed, typed, recorded, or graphic matter, however produced, reproduced, or stored, including the originals and all non-identical copies, whether different from the originals by reason of any notations made on such copies or otherwise, in the actual or constructive possession, custody, or control of YOU or YOUR employees, including without limitation contracts, letter agreements, records, correspondence, COMMUNICATIONS, electronically stored information, emails, tweets, blog or Internet forum posts or comments, text messages on portable devices, Blackberry Messenger messages, SMS messages, instant messenger messages (e.g. Skype, Slack, etc.), memoranda, handwritten notes, source code, source code comments, source repository logs, server logs, records or summaries of negotiations, records or summaries of interviews or conversations, audio or video recordings, copies of video games, all Internet-based media, photographs, corporate minutes, diaries, telephone logs, instant messaging logs, chat room logs, schedules, drawings, product storyboards, product mockups, statistical statements, work papers, disks, data cards, films, data processing files, charts, graphs, microfiche, microfilm, contracts, notices, reports, recitals, statements, worksheets, abstracts, resumes, summaries, jottings, market data, books, journals, ledgers, audits, maps, diagrams, research documents, newspapers, appointment books, desk calendars, project management charts (e.g., Gantt charts), task management records (e.g., to-do lists), expense reports, computer printouts and other computer readable or electronic records, and all drafts or modifications thereof, and all non-identical copies of any such items. Any such DOCUMENT with any sheet or part thereof bearing any marks, such as initials, stamped indices, comments or notations, or any character or characters, that are not part of the

signed text or photographic reproduction thereof is to be considered as a separate DOCUMENT. Where there is any question about whether a tangible item otherwise described in these requests falls within the definition of "DOCUMENT(S)," such tangible item shall be produced.

6.      The terms "Y COMBINATOR INVESTMENTS, LLC SERIES S15 (COMMON)," "YOU," or "YOUR" mean and refer to Y Combinator Investments, LLC Series S15 (Common), and any of its former or current parents, subsidiaries, predecessors, successors, affiliated entities, controlled entities, joint ventures, related entities, agents, attorneys, employees, interns, representatives, assigns, directors, or officers and all other persons acting or purporting to act on their behalf, including without limitation Y Combinator Investments, LLC Series S15 (Common).

7.      The term "LEGALEASE" means and refers to LegalEase Solutions, LLC and any of its former or current parents, subsidiaries, predecessors, successors, affiliated entities, controlled entities, joint ventures, related entities, agents, attorneys, employees, interns, representatives, assigns, directors, or officers and all other persons acting or purporting to act on their behalf.

8.      The term "LEGALEASE LITIGATION" means and refers to the lawsuit filed by PLAINTIFFS against LegalEase Solutions, LLC in the United States District Court for the District of Minnesota with case number 18-CV-01445.

9.      The term "LEGALEASE COMPLAINT" means and refers to the Complaint filed by PLAINTIFFS in the LEGALEASE LITIGATION on May 25, 2018.

10.     The term "ROSS LITIGATION" means and refers to the lawsuit filed by PLAINTIFFS against ROSS in the United States District Court for the District of Delaware with case number 20-cv-00613.

11.     The term "PERSON(S)" means any natural person, firm, corporation, partnership, group, association, governmental entity, or business entity.

12.     The term "PLAINTIFFS" means and refers to THOMSON REUTERS and WEST.

13.     The term "ROSS" means and refers to Defendant ROSS Intelligence Inc., and any of its former or current parents, subsidiaries, predecessors, successors, affiliated entities, controlled entities, joint ventures, related entities, agents, attorneys, employees, interns, representatives, assigns, directors, or officers and all other PERSONS acting or purporting to act on their behalf, including without limitation ROSS Intelligence, Inc., the Canadian entity, Andrew Arruda, and Jimoh Ovbiagele.

14.     The term "ROSS PLATFORM" means and refers to any and all services and products offered by ROSS, including without limitation the online legal research platform referred to as "ROSS" previously offered through the website available at https://www.rossintelligence.com/.

15.     The term "ROSS MEMO(S)" means and refers to any work product created or distributed by LEGALEASE for or to ROSS, including without limitation any "Memos" or "Legal Research Questions" as defined by Sections 1.2 and 1.3 of the "STATEMENT OF WORK II FOR ROSS BULK MEMOS" that was published by ROSS on May 7, 2020, on the website available at https://medium.com/@AndrewArruda/hold-59effcd819b0.

16.     The term "STATE" means to state all relevant facts discoverable under FRCP 26(b) relating to a particular matter that is known to YOU.

17.     The term "THOMSON REUTERS" means and refers to Plaintiff Thomson Reuters Enterprise Centre GmbH, and any of their former or current parents, subsidiaries, predecessors, successors, affiliated entities, controlled entities, joint ventures, related entities,

agents, attorneys, employees, interns, representatives, assigns, directors, or officers and all other PERSONS acting or purporting to act on their behalf.

18.     The term "TRAINING DATA" means and refers to any material, data or sets of data used by ROSS to train any artificial intelligence algorithms or systems, including without limitation any memos created for ROSS and WESTLAW CONTENT.

19.     The term "WEST" means and refers to Plaintiff West Publishing Corporation, and any of their former or current parents, subsidiaries, predecessors, successors, affiliated entities, controlled entities, joint ventures, related entities, agents, attorneys, employees, interns, representatives, assigns, directors, or officers and all other PERSONS acting or purporting to act on their behalf.

20.     The term "WEST HEADNOTES" means and refers to the proprietary text created by WEST's attorney-editors to DESCRIBE and summarize the key concepts, points of law, or facts of judicial opinions found on WESTLAW.

21.     The term "WESTLAW" means and refers to PLAINTIFFS' online legal research product named Westlaw.

22.     The term "WESTLAW CONTENT" means and refers to any and all WESTLAW content owned by PLAINTIFFS, including without limitation the WKNS and WEST HEADNOTES, and expressly excluding any work prepared by a United States Government officer or employee as a part of that person's official duties, including without limitations government edicts, legislative enactments, judicial decisions, or similar types of official legal materials.

23.     The term "WEST SUBSCRIBER AGREEMENT" means and refers to the agreement entered into between WEST and its customers regarding the customer's license to

WESTLAW, including without limitation any terms and/or conditions referenced and incorporated therein.

24.     The term "WKNS" means and refers to the taxonomy of cases, topics, legal issues, points of law, and WEST HEADNOTES created and maintained by WEST's attorney-editors for WESTLAW.

25.     The words "and" and "or" shall be construed both conjunctively and disjunctively, and each shall include the other wherever such dual construction will serve to bring within the scope of a Request any PERSONS, COMMUNICATIONS, or DOCUMENTS which otherwise would not be brought within its scope.

26.     The words "any" and "all" are mutually interchangeable and are meant to encompass each other.

27.     The singular includes the plural and vice versa.

28.     The past tense shall be construed to include the present tense and vice versa.

## **GENERAL INSTRUCTIONS**

1.     These Requests are intended to cover all DOCUMENTS in YOUR possession, custody or control, whether located at YOUR offices, home, stored via server, or at any other place.  If any DOCUMENT was, but is no longer, in YOUR possession or subject to YOUR control, or in existence, state whether it (i) is missing or lost; (ii) has been destroyed; (iii) has been transferred, voluntarily or involuntarily, to others (and if so, to whom); or (iv) has been disposed of in some other manner.  If YOU have reason to believe a responsive DOCUMENT is in the possession of another PERSON, STATE (i) the basis for this belief; (ii) the PERSON believed to be in possession of the responsive DOCUMENT(s); (iii) where YOU believe the responsive DOCUMENT(s) may be located; and (iv) other information as is sufficient to identify the DOCUMENTS for a subpoena *duces tecum*.

2.      If a DOCUMENT that is responsive to a Request has been lost or destroyed, it should be identified as follows: (i) preparer; (ii) addressor (if different); (iii) addressee; (iv) each recipient and each person to whom distributed or shown; (v) date prepared; (vi) date transmitted (if different); (vii) date received; (viii) description of contents and subject matter; (ix) date of destruction; (x) manner of destruction; (xi) name, title, and address of the person who directed that the DOCUMENT be destroyed and (if different) the person who destroyed the DOCUMENT; (xii) the reason for the DOCUMENT's destruction; (xiii) the names of persons having knowledge of the destruction; and (xiv) a full description of the efforts made to locate the DOCUMENT.

3.      The production should include every DOCUMENT known to YOU and every such DOCUMENT that can be located or discovered by reasonably diligent efforts by YOU.

4.      If any of the requested DOCUMENTS cannot be disclosed or produced in full, produce the DOCUMENTS to the extent possible, and STATE YOUR reasons for YOUR inability to produce the remainder, stating whatever information, knowledge, or belief YOU have CONCERNING the unproduced portions.

5.      If any of the DOCUMENTS requested below are claimed to be privileged or are otherwise withheld, YOU are requested to provide a privilege log which identifies: (i) the date of the DOCUMENT; (ii) the identity of all PERSONS who sent, authored, signed or otherwise prepared the DOCUMENT; (iii) the identity of all PERSONS designated as addressee or copyees; (iv) a description of the contents of the DOCUMENT that, without revealing information itself privileged or protected, is sufficient to understand the subject matter of the DOCUMENT and the basis of the claim or privilege or immunity; (v) the type or nature of the privilege asserted (e.g., attorney-client privilege, work product doctrine, etc.); and (vi) for redacted DOCUMENTS only, the Bates numbers corresponding to the first and last page of any

DOCUMENT redacted.  To the extent e-mail is included and described on the privilege log, any e-mail chain (i.e., a series of e-mails linked together by e-mail responses and forwarding) that is withheld or redacted on the grounds of privilege, immunity or any similar claim may be logged as a single entry and identified by the most recent (i.e., top-most) e-mail.  YOU shall not be required to break up an e-mail chain and log each individual e-mail separately.  If, however, e-mail contained within a given chain exists separately, then YOU shall log that material in accordance with this Paragraph.  If an e-mail chain contains one or more privileged e-mails requiring redaction, the e-mail chain may be logged as a single entry and identified by the most recent redacted e-mail.

6.     All DOCUMENTS or other things responsive to a Request shall be produced as they are kept in the usual course of business or shall be organized and labeled to correspond to the Request to which they are responsive.

7.     All electronically stored information responsive to a Request shall be produced in black-and-white, single-page TIFF (300 dpi, Group IV) or color JPEG format.  The file names of the images should correspond to the appropriate Bates number and should be accompanied by an OPT file mapping each Bates number with the associated image file.  All corresponding metadata shall be produced in a DAT file, separated with consistent Concordance delimiters.  All corresponding document text (extracted text or optical character recognition) information should be provided as document level text files with file names corresponding to the beginning Bates number of the document, and text files should be in plain-text format (not Unicode or UTF).  Productions should be compatible with Concordance version 8.26.  All electronically stored audio or audiovisual files shall be produced in their native format as maintained and retained by YOU.  In addition, PLAINTIFFS reserve the right to request particular electronically stored information in another format, including native file format.

8.      All electronically stored information shall be produced with the following corresponding metadata fields: APPLICATION, AUTHOR, BEGBATES, ENDBATES, BEGBATES_ATT, ENDBATES_ATT, CUSTODIAN, FILE_NAME, FILE_PATH, FILE_SIZE, EXTENSION, TEXT_FILE, NATIVEFILE, DATE_CREATED, TIME_CREATED, DATELAST_MOD, TIMELAST_MOD, SUBJECT, FROM, TO, CC, BCC, DATE_SENT, TIME_SENT, DATE_RECD, TIME_RECD, CONFIDENTIALITY, and MD5HASH.

9.      Any DOCUMENT responsive to a Request should be produced in and with a file folder and other DOCUMENT (e.g., envelope, file cabinet marker) in or with which the DOCUMENT was located when this Request was served.

10.     All pages of any DOCUMENT(s) now stapled or fastened together should be produced stapled or fastened together.  Where DOCUMENT(s) are produced electronically, attachments shall be produced with the parent DOCUMENT(s) together as a family.

11.     If it is otherwise not possible to produce any DOCUMENT called for by any Request, or if any part of any Request is objected to, the reasons for the objection should be stated with specificity as to all grounds and, for the convenience of the Court and the parties, each Request should be quoted in full immediately preceding the objection.

12.     These Requests shall be deemed continuing and require further and supplemental production by YOU as and whenever YOU acquire, make, or locate additional DOCUMENTS between the time of the initial production and the time of final judgment in this LITIGATION.

## **DOCUMENTS TO BE PRODUCED**

### **REQUEST FOR PRODUCTION NO. 1:**

All DOCUMENTS and COMMUNICATIONS CONCERNING ROSS.

**REQUEST FOR PRODUCTION NO. 2:**

All DOCUMENTS and COMMUNICATIONS between YOU and ROSS, including without limitation COMMUNICATIONS CONCERNING (a) LEGALEASE; (b) the ROSS MEMOS and/or the ROSS PLATFORM; (c) TRAINING DATA; and (d) PLAINTIFFS, the ROSS LITIGATION, the ROSS COMPLAINT, the LEGALEASE LITIGATION, WESTLAW, WEST SUBSCRIBER AGREEMENT, WESTLAW CONTENT, WEST HEADNOTES, and/or WKNS.

**REQUEST FOR PRODUCTION NO. 3:**

All DOCUMENTS and COMMUNICATIONS between YOU and ROSS CONCERNING the value of any TRAINING DATA that ROSS used in creating, developing, or training any artificial intelligence algorithms or systems.

**REQUEST FOR PRODUCTION NO. 4:**

All DOCUMENTS and COMMUNICATIONS between YOU and ROSS CONCERNING any potential or actual acquisitions of ROSS.

**REQUEST FOR PRODUCTION NO. 5:**

All DOCUMENTS and COMMUNICATIONS between YOU and ROSS CONCERNING the decision to cease operation of the ROSS PLATFORM.

**REQUEST FOR PRODUCTION NO. 6:**

All DOCUMENTS and COMMUNICATIONS between YOU and ROSS CONCERNING ROSS accessing, or attempting to gain access to, WESTLAW, whether directly or indirectly, including without limitation COMMUNICATIONS CONCERNING ROSS's knowledge of WEST SUBSCRIPTION AGREEMENTS,  and/or WESTLAW's terms of use.

**REQUEST FOR PRODUCTION NO. 7:**

All DOCUMENTS and COMMUNICATIONS CONCERNING ROSS's financials, including without limitation any monies provided by YOU (directly or indirectly) to ROSS.

**REQUEST FOR PRODUCTION NO. 8:**

All DOCUMENTS and COMMUNICATIONS CONCERNING any PERSON who invested in ROSS.

**REQUEST FOR PRODUCTION NO. 9:**

All DOCUMENTS and COMMUNICATIONS CONCERNING ROSS's knowledge of PLAINTIFFS' intellectual property right in WESTLAW and WESTLAW CONTENT, including without limitation ROSS's knowledge of copyright protection of annotations to judicial opinions or other legal material.

# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

THOMSON REUTERS ENTERPRISE    )
CENTRE GMBH and    )
WEST PUBLISHING CORPORATION,    )
    )
      Plaintiffs,    )   C.A. No. _____
    )
    v.    )   **DEMAND FOR JURY TRIAL**
    )
ROSS INTELLIGENCE INC.,    )
    )
      Defendant.    )

## COMPLAINT

Plaintiffs Thomson Reuters Enterprise Centre GmbH ("Thomson Reuters") and West Publishing Corporation ("West") (collectively, "Plaintiffs"), for their Complaint, hereby allege against Defendant ROSS Intelligence Inc. ("ROSS") as follows:

## NATURE OF THE ACTION

1. Plaintiffs created and nurtured their well-known Westlaw product since its inception, including without limitation its unique West Key Number System ("WKNS") and West Headnotes (collectively, "Westlaw Content"). ROSS is attempting to create a business by taking for itself critical features of Westlaw, without permission from or compensation to Plaintiffs. Upon information and belief, ROSS illicitly and surreptitiously used a then-Westlaw licensee to acquire access to and copy Plaintiffs' valuable content. ROSS did so, not for the purposes of legal research, but to rush out a competing product without having to spend the resources, creative energy, and time to create it itself. The net result is that Plaintiffs are now being put in the unfair position of having to compete with a product that they unknowingly helped create.

2.      This action seeks to recover damages that Plaintiffs have suffered and to prevent the irreparable harm that continues to threaten them as a result of ROSS's deceitful and willful copying of Plaintiffs' copyrighted content and organization, as well as ROSS's tortious interference with contract.

3.      Specifically, upon information and belief, ROSS intentionally and knowingly induced a third-party called LegalEase Solutions, LLC ("LegalEase")—a legal support services company—to breach its contract with West by engaging in the unlawful reproduction of Plaintiffs' copyrighted content and distribution of that content *en masse* to ROSS.  ROSS did so after asking for and explicitly being denied access to Westlaw by West on the basis that West does not give competitors access to its products.  Thus, ROSS induced LegalEase to engage in this unlawful activity, knowing that it violated the terms of LegalEase's contract with West and that West would not grant ROSS a license to use Plaintiffs' content to create a competing product.  ROSS committed direct copyright infringement by reproducing and creating a derivative work based on Plaintiffs' content, and is also secondarily liable for LegalEase's copyright infringement.

4.      In short, ROSS has engaged, and continues to engage, in a pattern and practice of knowingly, intentionally, and willfully infringing Plaintiffs' copyrights.  Further, it is obvious from the roundabout and deceitful tactics ROSS employed to gain access to Westlaw, , that it was aware what it was doing was improper, and without authorization or consent from the Plaintiffs.

5.      Hence, due to ROSS's blatant and willful infringement, Thomson Reuters and West file this lawsuit seeking injunctive relief and damages that they have suffered as a result of ROSS's direct, contributory, and vicarious copyright infringement under the Copyright Act of

1976, 17 U.S.C. § 101 *et. seq.*, and intentional and tortious interference with contractual relations.

**PARTIES**

6.      Plaintiff Thomson Reuters Enterprise Centre GmbH is a limited liability company having its principal place of business in Zug, Switzerland.  It is the owner of the copyrights in and to Westlaw Content.

7.      Plaintiff West Publishing Corporation is a Minnesota corporation having its principal place of business at 610 Opperman Drive, Eagan, Minnesota 55123.  West creates and authors Westlaw Content.

8.      Defendant ROSS Intelligence Inc. is a corporation organized and existing under the laws of the State of Delaware and having an office in San Francisco, California.

**JURISDICTION AND VENUE**

9.      This action arises under the Copyright Act of 1976, 17 U.S.C. § 101 *et. seq.* and Delaware law.  This Court has jurisdiction under 28 U.S.C. §§ 1331, 1338 and 1367.

10.      Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400.

**ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF**

I.      **Plaintiffs and the Creativity of Westlaw**

11.      Plaintiffs are well-known as industry leaders in online legal research.  Westlaw, in particular, offers to West's subscribers access to a comprehensive collection of legal information that is easily searchable through keywords, natural language, and/or Boolean inquiries, backed by a rigorous editorial process that makes navigating the legal field simple.  Editorial enhancements, such as Plaintiffs' proprietary West Headnotes, notes of decisions, and the WKNS are but a few examples of the creative and original material authored by West's dedicated attorney-editors.  Westlaw makes legal research seamless through its well-designed

Case 1:20-cv-00613-SB Document 144 Filed 03/18/22 Page 22 of 36 PageID #: 3195

structure, sequence, and organization.  Below is Westlaw's home page, which helps subscribers easily navigate to the exact information for which they are looking.

**Westlaw's Home Page**



12.     Integral to Westlaw is Plaintiffs' WKNS, which organizes U.S. law using a hierarchy that is unique to Plaintiffs.  The WKNS is the backbone through which thousands of lawyers conduct legal research.  The development of the WKNS, beginning in print and now in a digital format, has been and continues to be the result of Plaintiffs' numerous creative choices about how to organize cases and which cases to place in that classification, requiring substantial investments of time, technological and human resources, and money over the course of decades. Below is the WKNS home page that can be navigated by Westlaw subscribers.

**The WKNS Home Page**



13.     As an example of Plaintiffs' complex hierarchy, within the "Abandoned and Lost Property" topic are the Key Numbers "Nature and elements," "evidence and questions for jury," and "operation and effect."  Within the "Nature and elements" Key Number are Key Numbers assigned to the legal issues and points of law "In general," "Intent," and "Acts and omissions" topics.  The "In general" Key Number is delineated 1k1.1, and currently contains 603 cases. Nothing dictated the hierarchy that Plaintiffs created as cases, topics, legal issues, and points of law could be arranged in an unlimited number of combinations.

14.     As decisions are issued, West's attorney-editors—all of whom are bar-admitted— carefully review them and create original West Headnotes to describe the key concepts discussed in the case.  West's attorney-editors then integrate those West Headnotes into the WKNS so subscribers can easily find the latest decisions on any given topic or issue.  Moreover, West's attorney-editors regularly edit and revise the West Headnotes and the West Key Numbers of previously integrated cases so that subscribers can trust the accuracy and timeliness of the information that is offered.

15.     Westlaw includes access to volumes of proprietary material (such as West Headnotes, case summaries, and other Westlaw-created content), databases, and compilations of case law, state and federal statutes, state and federal regulations, law journals, treatises, and other resources—all organized and curated by West's editorial team.  Westlaw incorporates decades of search and editorial intelligence with the latest technological innovations to bring its subscribers the most comprehensive legal research platform on the market.  Below is an example of West Headnotes describing the key concepts discussed in the *Harper & Row* case, as well as the manner in which subscribers can see and further navigate to corresponding West Key Numbers.



16.     The WKNS adds immeasurable value to Westlaw.  It is how thousands of professionals learn to navigate and conceptualize the legal field and is what helped position Westlaw as the leading legal research service.

17.     Plaintiffs take great care in deciding who they permit to access Westlaw and what those with access are allowed to do with it.  Plaintiffs have invested hundreds of millions of dollars in Westlaw and thus take measures, such as those limitations set forth in West's Subscriber Agreements, to protect the proprietary nature of Westlaw Content.

18.     Specifically, each of West's Subscriber Agreements with third parties—like the one it entered into with LegalEase (the "Service Agreement")—provides precisely what third parties are and are not allowed to do with Westlaw content.  Critically, the Service Agreement provides that a subscriber "may not sell, sublicense, distribute, display, store or transfer [West's] products or any data in [its] products in bulk or in any way that could be used to replace or substitute for [its] products in whole or in part or as a component of any material offered for sale, license or distribution to third parties."  Moreover, although a subscriber may "store, on a matter-by-matter basis, *insubstantial portions* of [Westlaw content]… in connection with an active matter being handled by Subscriber in its regular course of business," the amount stored must "(a) have no independent value other than as part of Subscriber's work product; and (b) c[an] not be used in any way in whole or in part as a substitute for any service or product provided by West."   Similarly, although a subscriber may **"**on *an occasional basis* and via *Product functionality*, direct West to transmit individual documents in electronic format to… individual third parties in connection with actual, ascertainable matters being handled by Subscriber…. [a]ll other direct transmission of electronic copies by Subscriber is *prohibited*."  Finally, the Service Agreement provides that a "Subscriber shall not copy, download, scrape, store, publish, post, transmit, retransmit, transfer, distribute, disseminate, broadcast, circulate, sell, resell, license, sublicense or otherwise use [Westlaw content], or any portion of [Westlaw content], in any form or by any means except as expressly permitted by [the License Grant], or as otherwise expressly permitted in writing by West."

19.     As these restrictions show, although Westlaw subscribers are permitted to use Westlaw in certain ways, they are expressly prohibited from using Westlaw Content to create a competitive product or to sell the Plaintiffs' proprietary content to others.  Westlaw, including

Westlaw Content, is extremely valuable, and thus West is constantly monitoring user activity for behavior that would breach the terms of its subscriber agreement—which is precisely how West discovered ROSS's unlawful infringement and covert activity.

## II. Plaintiffs' Valuable Intellectual Property Rights in Westlaw

20.     Plaintiffs have invested vast resources, including creativity, talent, time, effort, and money, to create Westlaw Content. West employs attorney-editors whose sole responsibility is to review decisions, create original and creative West Headnotes summarizing key points of law, and organizing those cases and West Headnotes in the WKNS. In addition, the editors are regularly reviewing existing West Headnotes and the WKNS to ensure the greatest accuracy in light of the countless new cases that are added every day.

21.     Cases, areas of law, legal topics, legal issues, subtopics, and subissues can all be summarized and organized in a variety of different ways—the structure, sequence, and organization of the WKNS is not something that has been achieved by accident or necessity; rather, it is the result of decades of human creativity and choices.

22.     To protect Westlaw, Thomson Reuters registers the database with the United States Copyright Office every three months. For example, attached hereto as **Exhibit A**, and incorporated herein by reference, are true and correct copies of certificates of registration issued by the Copyright Office and other documents reflecting Westlaw's registrations. They reflect the effective date of registration, as well as the assigned registration numbers.

23.     Thomson Reuters is the sole owner and proprietor of all right, title, and interest in and to the copyrights in Westlaw. The copyrights in Westlaw are presently valid and subsisting and were valid and subsisting at all times affecting the matters complained of herein.

## III. ROSS Intelligence and Its Infringement of Westlaw

24.     Upon information and belief, ROSS was founded in 2015 and is engaged in the business of offering and providing to the public legal research services through its ROSS platform.

25.     Upon information and belief, ROSS first began by offering research services in both bankruptcy and intellectual property law, but now offers case law, statutes, and regulations across various practice areas and all 50 states.

26.     Upon information and belief, as the screenshot below illustrates, ROSS's users are able to search for relevant law by posing a question in natural language, as opposed to Boolean terms or key words.

### Results of Natural Language Search on ROSS



27.     Upon information and belief, similar to Westlaw, the ROSS platform provides users with case summaries and treatments, as well as allows the user to use the initial search

results as a jumping-off point to find additional cases with similar facts and/or procedural postures.

28.     Upon information and belief, to create a legal research platform that could compete with Westlaw, ROSS needed to acquire vast amounts of legal content, descriptions of that content, and a means by which to organize that legal content.  ROSS knew that it would not be granted access to Westlaw for such a purpose, so instead ROSS opted to gain access to Westlaw through deceitful and undisclosed tactics.

29.     Upon information and belief, to develop its platform, ROSS contracted with LegalEase—a legal research and writing support services company.  Because LegalEase only provides research and writing services, not a competing legal research product like ROSS does, it was able to obtain a limited license beginning in 2008 to use Westlaw to conduct legal research for customers.  The Service Agreement between LegalEase and West prohibited LegalEase from running or installing any computer software on West's products or network, as well as selling, sublicensing, distributing, displaying, storing, or transferring Westlaw information in bulk to third parties.

30.     For years, LegalEase's usage appeared to show that it abided by the terms of the Service Agreement.  That all changed in July 2017.

31.     Prior to July 2017, LegalEase had consistently averaged approximately 6,000 Westlaw transactions per month.[1]  Beginning in about July 2017, LegalEase's use of Westlaw spiked dramatically, eventually reaching approximately 236,000 transactions per month, which, as shown below, is nearly a forty-fold increase over LegalEase's historical usage pattern and

---

[1]     For the purposes of this complaint, a "transaction" refers to any executed search, as well as any viewing, printing, downloading, or emailing of a specific document.

represents a usage rate of nearly five times greater than the average monthly usage of the "AmLaw 100" law firms.

**LegalEase's Westlaw Usage[2]**



32.     Further investigation revealed that users of certain Westlaw credentials assigned to LegalEase were exhibiting activity that indicated that computer software, or a "bot," was being used, and that it appeared as though content from Westlaw was being downloaded and stored in bulk by said those software tools in violation of the Service Agreement.  West observed that LegalEase's software was systematically making its way through the WKNS to, upon information and belief, reproduce and store the manner in which the WKNS was organized.

33.     Upon information and belief, LegalEase implemented this automated software, materially breached its Service Agreement with West, and unlawfully reproduced and distributed the copyright-protected Westlaw Content at the direction of and to benefit ROSS.  In a July 2017 interview—the same time LegalEase's Westlaw transactions began to skyrocket—LegalEase stated that it was working with "a machine learning legal research firm," later revealed to be ROSS, to help create a new legal research product.  LegalEase explained that it was feeding

---

[2]     This graph is based on usage data West regularly tracks and records for its subscribers.

ROSS with "tons and tons of legal research," which, upon information and belief, was copyrighted content from Westlaw, to help create ROSS's competing product.

34.    Upon information and belief, ROSS paid LegalEase to copy the Westlaw Content from Westlaw to build ROSS's competing platform, thereby knowingly and deliberately instructing LegalEase to breach its Service Agreement with West. Upon information and belief, LegalEase and ROSS have been working together since at least October 2015.

35.    Upon information and belief, after LegalEase copied the Westlaw Content, it distributed that content to Ross. Ross then copied that content and used it to create its platform.

36.    By letter dated January 4, 2018, West terminated LegalEase's Service Agreement due to LegalEase's material breach and violation of the Service Agreement. The effective date of termination was January 17, 2018.

37.    It is clear that by copying the copyright-protected Westlaw Content—piggybacking off of the creativity, countless hours, and extraordinary expense that have gone into creating Westlaw—ROSS drastically sped up its development time and reduced the cost associated with the development of its competing platform.

38.    Upon information and belief, ROSS's copying has allowed it to forego the immense expenditure of resources—including creativity, talent, time, effort, and money—that otherwise would be required to create its competing platform as the algorithms comprising ROSS's platform function in a manner analogous to those of Westlaw.

39.    Upon information and belief, unless enjoined by this Court, ROSS intends to continue to infringe upon Plaintiffs' copyrights and otherwise to profit from Plaintiffs' works. Accordingly, Plaintiffs have suffered irreparable damage. Plaintiffs have no adequate remedy at law to redress all of the injuries that ROSS has caused, and intends to cause, by its conduct.

Plaintiffs will continue to suffer irreparable damage until ROSS's actions alleged above are enjoined by this Court.

## CLAIMS FOR RELIEF

### COUNT I
### Copyright Infringement (17 U.S.C. § 101 *et seq.*)

40.     Plaintiffs repeat and reallege each and every allegation above as if fully set forth herein.

41.     Westlaw, including, without limitation, the Westlaw Content, is original and creative.  As a result, it constitutes copyrightable subject matter under the laws of the United States.

42.     Thomson Reuters is the owner of valid copyrights in Westlaw, and the Register of Copyrights has issued certificates of registration for it.  It has complied in all respects with 17 U.S.C. § 101, *et seq.*, and has secured the exclusive rights and privileges in and to the copyrights in Westlaw Content.

43.     By its actions, alleged above, ROSS has infringed and will continue to infringe the Westlaw Content's copyrights by, *inter alia*, reproducing and creating a derivative work using the Westlaw Content without any authorization or other permission from Plaintiffs. ROSS's direct infringement of Plaintiffs' copyrights has been deliberate, willful, and in utter disregard of Plaintiffs' rights.

44.     Moreover, as LegalEase clearly infringed Plaintiffs' copyrights by reproducing and distributing the Westlaw Content to ROSS, ROSS is contributorily liable for materially and knowingly contributing to LegalEase's infringement.  Upon information and belief, ROSS induced LegalEase to infringe Plaintiffs' copyrights by directly contracting with LegalEase to reproduce and distribute Westlaw content to ROSS.  Moreover, it knew that LegalEase was

unlawfully reproducing and distributing the copyrighted Westlaw Content as ROSS received tens of thousands of documents from LegalEase containing the Westlaw Content or materials based thereon.

45.     Further, ROSS is vicariously liable for LegalEase's direct infringement.  Upon information and belief, ROSS had a financial interest in LegalEase's direct infringement, including, without limitation, significantly reducing the cost of development of its platform, procuring investments in ROSS to which ROSS was not entitled, and avoiding the cost that ROSS would have to pay to obtain this content.  LegalEase was an agent of ROSS, and ROSS exercised the requisite levels of control over the creation and distribution of the documents that LegalEase sent to ROSS to support a finding of vicarious liability.

46.     As a direct and proximate result of ROSS's wrongful conduct, Plaintiffs have been substantially and irreparably harmed in an amount not readily capable of determination. Unless restrained by this Court, ROSS will cause further irreparable injury to Plaintiffs.

47.     Plaintiffs are entitled to injunctive relief preventing ROSS, its agents and employees, and all persons acting in concert or participation with it, from engaging in any further infringement of Westlaw.

48.     Plaintiffs are further entitled to recover from ROSS the damages, including attorneys' fees and costs, they have sustained and will sustain, and any gains, profits, and advantages obtained by ROSS as a result of its acts of infringement as alleged above.  At present, the amount of such damages, gains, profits, and advantages cannot be fully ascertained by Plaintiffs, but will be established according to proof at trial.  Plaintiffs are also entitled to recover statutory damages for ROSS's willful infringement of its copyrights.

## COUNT II
### Tortious Interference with Contract

49.　Plaintiffs repeat and reallege each and every allegation above as if fully set forth herein.

50.　A valid contractual relationship between West and LegalEase existed for nearly ten years prior to ROSS's inducement of LegalEase to breach the Service Agreement.

51.　Upon information and belief, ROSS knew that LegalEase had a valid contract with West—as apparent from the fact ROSS contracted with LegalEase to obtain the password-protected and copyrighted content from Westlaw that ROSS was explicitly denied access to— and intentionally instructed LegalEase to act in breach of that contract without justification.

52.　Upon information and belief, ROSS knew that it would not be able to receive permission from Thomson Reuters or West to access Westlaw, that Westlaw was secured behind a paywall, and that LegalEase's Service Agreement did not permit the naked reproduction and distribution of copyrighted material from Westlaw.

53.　As a result of ROSS's intentional and tortious interference with West's contract with LegalEase, Plaintiffs have been damaged in an amount to be determined at trial.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Thomson Reuters and West respectfully request judgment in their favor and against Defendant ROSS as follows:

A.　Finding that ROSS has directly and indirectly infringed Plaintiffs' copyrights in Westlaw;

B.　Finding that ROSS's infringement of Plaintiffs' copyrights was willful;

C.　Finding that ROSS has tortiously interfered with West's contract with LegalEase;

D.     Finding that there is a substantial likelihood that ROSS will continue to infringe Plaintiffs' copyrights unless enjoined from doing so;

E.     Issuing a preliminary and permanent injunction enjoining ROSS, and its agents, servants, employees, attorneys, successors and assigns, and all persons, firms and corporations acting in concert with it, from directly or indirectly infringing Plaintiffs' copyrights, including, but not limited to, offering ROSS's legal research product;

F.     Ordering the removal and destruction of Westlaw Content from ROSS's legal research product;

G.     Ordering ROSS to render a full and complete accounting to Thomson Reuters and West for ROSS's profits, gains, advantages and the value of the business opportunities received from the foregoing acts of infringement;

H.     Entering judgment for Plaintiffs against ROSS for all damages suffered by Plaintiffs and for any profits or gain by ROSS attributable to infringement of Thomson Reuters' copyrights in amounts to be determined at trial;

I.     Entering judgment for Plaintiffs against ROSS for statutory damages based upon ROSS's willful acts of infringement pursuant to 17 U.S.C. § 504;

J.     Entering judgment for Plaintiffs against ROSS for punitive damages based on ROSS's tortious interference with the contractual relationship between LegalEase and West in amounts to be determined at trial;

K.     Awarding Plaintiffs the costs and disbursement of this action, including reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505;

L.      Awarding Plaintiffs pre-judgment and post-judgment interest, to the fullest extent

available, on the foregoing; and

M.      Granting such other, further and different relief as the Court deems just and

proper.

### DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jack B. Blumenfeld*

Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
mflynn@mnat.com

OF COUNSEL:

Dale M. Cendali
Joshua L. Simmons
Eric A. Loverro
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

May 6, 2020

*Attorneys for Plaintiffs Thomson Reuters
Enterprise Center GmbH and West Publishing
Corporation*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 18, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on March 18, 2022, upon the following in the manner indicated:

David E. Moore, Esquire                                    *VIA ELECTRONIC MAIL*
Stephanie E. O'Byrne, Esquire
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE  19801
*Attorneys for Defendant and Counterclaimant*

Mark A. Klapow, Esquire                                   *VIA ELECTRONIC MAIL*
Lisa Kimmel, Esquire
Crinesha B. Berry, Esquire
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, DC  20004
*Attorneys for Defendant and Counterclaimant*

Gabriel M. Ramsey, Esquire                               *VIA ELECTRONIC MAIL*
Kayvan M. Ghaffari, Esquire
Jacob Canter, Esquire
Warrington Parker, Esquire
CROWELL & MORING LLP
3 Embarcadero Center, 26th Floor
San Francisco, CA  94111
*Attorneys for Defendant and Counterclaimant*

*/s/ Michael J. Flynn*
_____
Michael J. Flynn (#5333)