# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION, | ) ) ) ) C.A. No. 20-613-SB ) |
| Plaintiffs/Counterdefendants, | ) **JURY TRIAL DEMANDED** ) |
| v. | ) ) **PUBLIC VERSION** |
| ROSS INTELLIGENCE INC., | ) ) |
| Defendants/Counterclaimant. | ) |

## LETTER TO THE HONORABLE STEPHANOS BIBAS FROM DAVID E. MOORE

OF COUNSEL:

Gabriel M. Ramsey
Warrington Parker
Joachim B. Steinberg
Jacob Canter
CROWELL & MORING LLP
3 Embarcadero Center, 26th Floor
San Francisco, CA 94111
Tel: (415) 986-2800

Mark A. Klapow
Crinesha B. Berry
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004
Tel: (202) 624-2500

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Carson R. Bartlett (#6750)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
cbartlett@potteranderson.com

*Attorneys for Defendant/Counterclaimant ROSS Intelligence, Inc.*

Dated: July 11, 2022
10228208 / 50241
Public Version Dated: July 18, 2022



1313 North Market Street
P.O. Box 951
Wilmington, DE 19801-0951
302 984 6000
www.potteranderson.com

David E. Moore
Partner
Attorney at Law
dmoore@potteranderson.com
302 984-6147 Direct Phone
302 658-1192 Firm Fax

July 11, 2022
Public Version Dated: July 18, 2022

**VIA ELECTRONIC FILING**

PUBLIC VERSION

The Honorable Stephanos Bibas
James A. Byrne United States Courthouse
601 Market Street
Philadelphia, PA  19106

      Re:    *Thomson Reuters Enterprise Centre GmbH et al. v. ROSS Intelligence Inc.*,
            C.A. No. 20-613-SB

Dear Judge Bibas:

      Thomson Reuters Enterprise Center GmbH and West Publishing Corporation (collectively "Plaintiffs") sued ROSS Intelligence, Inc ("ROSS"), a startup that developed a legal search platform that uses artificial intelligence ("AI") for copyright infringement and tortious interference with contract. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇[1]

      Plaintiffs claim that ROSS copied "Westlaw Content." Plaintiffs allege that ROSS infringed "Westlaw Content" in the creation of 25,000 memoranda used to train its AI. These memoranda, prepared for ROSS by a company called LegalEase, pose a question that is answered with direct quotes from case law. Exhibit 10 is an example. ROSS used the question/answer pairing to train its AI to identify when language in judicial opinions provided relevant answers and when it did not, which is the reason that quotes were rated great, good, topical or irrelevant.

      Although Plaintiffs seek nearly ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Plaintiffs have not disclosed what they specifically allege that ROSS infringed. Plaintiffs claim that the memos infringe their copyrights, but have not ever said what specific copyrights they infringe. Plaintiffs' Complaint (Dkt. No. 1) refers to the allegedly infringed material in the memos as "Westlaw Content," including the "West Key Number System" and the West Headnotes." ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇[2] Except to provide nine examples of headnotes allegedly infringed, Plaintiffs have provided no greater specificity. Plaintiffs also incorporate by reference a registration certificate, *see* Complaint ¶ 22, Ex. A, but that registration is for a database, and does not specify what content Plaintiffs allege was infringed.[3]

      ROSS has attempted to determine the headnotes at issue, but there are difficulties. LegalEase also used Lexis. ROSS has identified instances where the Lexis headnotes and Westlaw

---

[1] *See* Ex. 1, Plaintiffs' Second Supplemental Responses and Objections to ROSS's Interrogatory No. 21 at 23-25.

[2] Ex. 2, Plaintiffs' Response to Interrogatory No. 14; Ex. 3, Declaration of W.S. Parker ("Parker Decl."), ¶ 2.

[3] *See* footnote 9, *infra*.

The Honorable Stephanos Bibas
July 11, 2022
Page 2

headnotes are identical. ROSS has identified a case used to create a memo that has no headnotes. ROSS, therefore, cannot work backwards from the memos, which ROSS did not prepare, to determine what headnotes are at issue. And as for key numbers allegedly infringed, those simply have not been specified.

Separately, Plaintiffs have also resisted discovery showing how each headnote and key number is created. This is important because there must be a showing a creativity. Plaintiffs have documents reflecting the process of creating headnotes. Since many headnotes are verbatim quotes of opinions or so substantially similar, ROSS expects the records reflecting the process of creation will reflect that that was the decision made. For key numbers, there is a computer program, JCaRE, that selects the key numbers for a headnote. *See* Ex. 4, TR-0036336 at 4. That certainly bears on creativity and even whether there can be a copyright claimed.

In addition to these failings, Plaintiffs have failed to produce discovery relevant to ROSS's fair use defense or Plaintiffs' damages. Plaintiffs have failed to produce documents showing how often people use the headnotes and key numbers at issue, the financial value of those headnotes and key numbers, and how they decide to license their headnotes. ROSS has corresponded and conferred with Plaintiffs, but Plaintiffs have consistently delayed the resolution of disputes or stonewalled ROSS.[4] Each discovery dispute can be viewed individually. However, the collection of disputes reflects a resistance to allow discovery concerning Plaintiffs' claims.

## I. Plaintiffs' Response to Interrogatory No. 1

ROSS asked Plaintiffs to "IDENTIFY the specific portions of the WESTLAW CONTENT that you claim is subject to copyright that ROSS INFRINGES." Under this Court's scheduling order, ROSS was allowed to serve five "copyright infringement contention interrogatories," apart from the twenty-five interrogatories both sides could serve. Dkt. 41 at 5. This is one of the five. This Court ordered Plaintiffs to respond to contention interrogatories styled on infringement contentions in patent litigation. *Cosmo Techs. Ltd. v. Lupin Ltd.*, 2017 WL 4063983, at *1 (D. Del. Sept. 14, 2017) (J. Stark) ("infringement contentions must set forth particular theories of infringement with sufficient specificity to provide defendants with notice of infringement beyond that which is provided by the mere language of the patents themselves.").[5] Plaintiffs have supplemented their response to Interrogatory No. 1 twice, but have not identified the specific portions of the Westlaw Content that Plaintiffs alleges are infringed.

---

[4] For example, discussions over RFP Nos. 132-135 took over four months, largely because of Plaintiffs' delays in responding. Parker Decl. ¶ 5. Similarly, ROSS had to make five separate requests for either the production of or a meet and confer on documents mentioned at the deposition of Cameron Tario, and six separate requests for documents mentioned at another deposition, before receiving any substantive response. *See* Ex. 5, J. Steinberg Email M. Means, June 13, 2022.

[5] Ex. 6, Dkt. No. 20, Oct. 30, 2020 Oral Argument Tr. 69:14-71:4 (Court: "In patent cases, we usually have infringement contentions at a fairly early stage in the discovery process. Isn't that part of the answer here? They will be required, if they survive this motion to dismiss, to, in a fairly expeditious manner that we would build into the schedule, serve something like infringement contentions on you that make clear, here is what we contend is protectable about, you know, our intellectual property, and here is what we contend you copied.").

█████████████████████████.⁶

More specificity is required even without this Court ordering responses akin to patent contentions. Without a full understanding of *precisely* what particular content is alleged to have been infringed, it is impossible for this court and ROSS to move forward. Among other reasons, if neither the court nor ROSS know what specifically is at issue, the parties are unable to conduct the filtering analysis necessary to any copyright claim. *See, e.g.*, *Tanksley v. Daniels*, 902 F.3d 165, 175 (3d Cir. 2018); *Nicassio v. Viacom Int'l, Inc.*, 776 F. App'x 761, 765 (3d Cir. 2019). Plaintiffs know this because their present counsel had a case dismissed for failure to specify the copyrights at issue sufficiently to allow the type of copyright analysis that must occur before taking a case to trial. *See SAS Inst. Inc. v. World Programming Ltd.*, 496 F. Supp. 3d 1019, 1027-28 (E.D. Tex. 2020) *appeal argued Jan. 13 2022, SAS Inst. Inc. v. World Programming Ltd,* Appeal No. 12-1542 (Appeal Filed, Fed. Cir. May 14, 2021). "Indeed, the purpose of contention interrogatories is to narrow and define issues for trial and to enable the propounding party to determine the proof required to rebut the respondent's position." *Integra Lifesciences Corp. v. Hyperbranch Med. Tech., Inc.*, 2017 WL 11558096, at *7 (D. Del. Dec. 11, 2017) (cleaned up).

Even aside from the issue of filtering, allegations of copyright infringement cannot be abstract, categorical assertions, devoid of the particular contour needed to assess the merits of the assertions. Rather, the specific alleged expression at issue must be identified in order to frame the dispute, meet Plaintiffs' burden and afford ROSS the ability to defend itself. 6 Patry on Copyright § 19:6 (2022) ("In order to give fair notice of the claim, plaintiff must identify both the work alleged to have been infringed and the infringing work"); *Iglesia Ni Cristo v. Cayabyab*, 2018 WL 4674603, at *6 (N.D. Cal. Sept. 26, 2018) ("A plaintiff suing for copyright infringement must identify with specificity which work or works were copied."); *TVB Holdings USA Inc. v. Enom Inc.*, 2014 WL 12581778, at *3 (C.D. Cal. Jan. 6, 2014) ("The Court will not attempt to review and compile the thousands of links provided by Plaintiff to determine the actual copyrighted works and whether and to what extent Plaintiff may be entitled to relief, including the scope of injunctive relief.").

Rather than provide specificity as to their claims, Plaintiffs have instead cast that burden on ROSS. Plaintiffs have repeatedly claimed that ROSS can tell what they are alleging was infringed. *See, e.g.*, Ex. 7, M. Means Ltr. J. Steinberg, Apr. 21, 2022, at 3 ("ROSS has all the information that it needs to determine what specific content Plaintiffs allege was copied already in its possession."); Ex. 8, M. Means Ltr. J. Steinberg, Jun. 9, 2022, at 1 ("ROSS knows better than anyone how it built its legal research platform using the memoranda that LegalEase and Morae Global created by copying from Westlaw.").

Whatever ROSS can glean, it is incumbent on a plaintiff to set forth the facts of their case when asked in an interrogatory. It is not enough to point to 25,000 different memorandum and ask ROSS to make the determination as to what Plaintiffs will allege. *Reinsdorf v. Skechers U.S.A., Inc.*, 2012 WL 12882125, at *3 (C.D. Cal. May 11, 2012) ("The Court finds that Plaintiff's use of Rule 33(d) here was improper. The response fails to provide sufficient detail such that Defendants can ascertain the answer to the interrogatory.").

Also, ROSS has tried to reverse engineer the copyrights at issue based on the memos

---

⁶ The response to Interrogatory No. 1 is lengthy. But it simply does not answer the specific question posed. *See, e.g.*, *Speed RMG Partners, LLC v. Arctic Cat Sales Inc.*, 2021 WL 5087362, at *74 (D. Minn. Jan. 5, 2021) (ordering plaintiffs to "plainly and directly" answer the interrogatory, because the "lengthy narrative response . . . provides a winding labyrinth of tangential that is utterly incomprehensible") (cleaned up).

The Honorable Stephanos Bibas
July 11, 2022
Page 4

created by LegalEase and provided to ROSS. ███████████████
███████████████.[7]
███████████████.[8] The memos do not reflect which service LegalEase used. Nor do they identify the content on which the questions were based. Many of the headnotes are taken verbatim from the uncopyrightable language of judicial decisions and the Lexis and Westlaw headnotes are identical in certain cases. For example, Memorandum # 10, Ex. 10, ROSS-000216835, quotes *Brookfield Communications, Inc. v. West Cost Ent. Corp.*, 174 F.3d 1036 (9th Cir. 1999). The language quoted is identical in both the Westlaw and Lexis headnotes for that case. Ex. 3, Parker Decl. ¶ 3. In Memorandum # 841, Ex. 11, ROSS-000216835, the question was "[d]oes double jeopardy clause protect against a second prosecution for the same offense after acquittal?" The memorandum refers to a case, *Stamps v. State*, 151 So.3d 248 (Miss. App. 2014) where the language answering that question is identical in both the Lexis and Westlaw headnotes. Ex. 3, Parker Decl. ¶ 4. As a result, ROSS cannot tell what it has been accused of infringing or even figure out if Plaintiffs own the material ROSS is accused of copying.

Nor does the copyright registration assist. As noted, it identifies databases as the subject of registration, providing no assistance as to what is specifically at issue in this case.[9] *See, e.g.*, *Mantel v. Microsoft Corp.*, 2019 WL 367823, at *3 (S.D.N.Y. Jan. 30, 2019) ("Plaintiff failed to provide any actual evidence that would show that the [work] in question was part of that registration."); *Ferdman v. CBS Interactive Inc.*, 342 F. Supp. 3d 515, 524-30 (S.D.N.Y. 2018) (denying plaintiff's motion for summary judgment on issue of infringement where plaintiff did not produce evidence proving that the photos at issue were covered by the asserted registration).

Specificity is essential for two additional reasons. As noted, prior to trial, there needs to be a filtering process. Some headnotes are direct quotes from judicial opinions. Those can no more be copyrighted than the opinions themselves. *Callaghan v. Myers*, 128 U.S. 617, 647 (1888) ("there can be no copyright in the opinions of the judges"); *see also Du Puy v. Post Telegram Co.*, 210 F. 883, 884 (3d Cir. 1914) (public official documents are not eligible for copyright protection). Some headnotes were created by state courts.[10] Those too cannot be copyrighted. *Georgia v. Public.Resource.Org, Inc.*, 590 U.S. ___, 140 S. Ct. 1498, 1509 (2020). And without specificity, it is impossible for a fact-finder to analyze whether the allegedly infringing materials are substantially similar to the allegedly infringed materials. *See, e.g., Tanksley*, 902 F.3d at 171; *Digital Dream Labs, LLC. v. Living Tech. (Shenzhen) Co.*, 2022 WL 597358, at *6 (W.D. Pa. Feb. 28, 2022) ("In analyzing works that contain "a mix of protected and unprotected elements," the first step "is to identify and exclude from the substantial similarity analysis any unprotected

---

[7] *See, e.g.*, Ex. 9, LegalEase Dep. Tr. 34:1-6 (May 26, 2022).
[8] *Id.* at 85:4-15 ███████████████
[9] Plaintiffs identified a single copyright registration in their complaint. *See* Dkt. No. 1-1. In addition to the original registration (Registration Number TXu-65- 600), Exhibit A of the Complaint also included registrations for the updated versions of that same registration. *Id.* at Ex. A. This registration is for the "automated database titled 'Westlaw.'" *Id.* at 93. Plaintiffs allege copyright infringement of the Westlaw materials covered by the "automated database" registration. *Id.* ¶ 41-43.
[10] Plaintiffs have admitted that some states provide headnotes to Westlaw, but have refused to provide the opinions and headnotes obtained from the courts for ROSS to compare to the alleged copyrighted material, or any information about how Plaintiffs source the state court judicial opinions. *See* Ex. 12, M. Means Email J. Steinberg June 30, 2022.

The Honorable Stephanos Bibas
July 11, 2022
Page 5

material.").

Finally, specificity is crucial to other aspects of the case. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ See Ex. 13, J. Steinberg Ltr. M. Means, Feb. 24, 2022. Any assertion of willful infringement of the 25,000 memos would require Plaintiffs to "analyze[] each memo individually and all memos collectively to determine what aspects of [the] registered copyrights and allegedly copyrighted "Westlaw Content" . . . these memos, individually and/or collectively have infringed." *Id.* at 2. Plaintiffs must know the information sought. The rules of discovery simply do not require ROSS to guess.

ROSS asks this Court to compel Plaintiffs to respond fully to Interrogatory No. 1 and state what copyrights they allege that ROSS infringed, what registrations are linked to those copyrights, and how ROSS infringed those copyrights.

As shown in the issues raised in the rest of this letter, Plaintiffs' refusal to provide a definite statement of what content they allege was infringed has had consequences across discovery.

II.     **Audit Trails—Documents Reflecting the Creation of Headnotes and Key Numbers**

*Headnotes.* ROSS has asked for the "audit trails" for each of the headnotes at issue in this case. Plaintiffs have audit trails—files that track the version history and categories of headnotes, from the original language to later edits of the headnote text—for every headnote in the Westlaw database made since at least 2011.[11] The audit trails show what, if any, creativity is used when Plaintiffs draft headnotes, an essential element of any copyright claim. *See e.g., Southco, Inc. v. Kanebridge Corp.*, 390 F.3d 276, 281-82 (3d Cir. 2004). ROSS is prejudiced by Plaintiffs' refusal to produce existing documents that may put an essential element of the copyrightability of the Westlaw Content into dispute. *See, e.g., In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, 325 F.R.D. 551, 556 (E.D. Pa. 2016) ("downstream evidence" was discoverable when it was relevant to a core element of a claim).

Plaintiffs' witnesses have testified that the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Ex. 15, Laurie Oliver Dep. Tr., 115:23-116:3. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at 114:18-115:18; 116:22-24. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 32, TR-0002864 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ROSS need not accept that the headnotes are "creative," and the audit trail will reveal the authorship scope of the copyrights at issue in the case.

*Key Numbers.* Like headnotes, Plaintiffs also track the creation of their key numbers. These documents are important because Plaintiffs have produced documents ▮▮▮▮▮▮▮

---

[11] ROSS requested the audit trails in RFP Nos. 118 and 143-149. Relatedly, ROSS also requested documents showing the sourcing of state judicial opinions provided to Westlaw. RFP Nos. 128, 129, and 131. This request is also vital to ROSS's copyright defenses, as judicial opinions and state laws are uncopyrightable. *See, e.g., Public.Resource.Org, Inc.*, 140 S. Ct. at 1509. Plaintiffs have admitted that some states provide headnotes to Westlaw, but have refused to provide the opinions and headnotes obtained from the courts for ROSS to compare to the alleged copyrighted material, or any information about how Plaintiffs source the state court judicial opinions. *See* Ex. 12, M. Means Email J. Steinberg June 30, 2022.

███████████████████████████ *See* Ex. 4, TR-0036336 at 4.

Of course, these documents are important to show whether there is creativity. *Southco, Inc. v. Kanebridge Corp.*, 258 F.3d 148, 152 (3d Cir. 2001) ("mechanical application" of a system lacks creativity). They are important to show that Plaintiffs created the headnotes and did not just pluck them from the public domain. *See Purohit v. Legend Pictures, LLC*, 448 F. Supp. 3d 382, 389 (D. Del. 2020) (elements that plaintiff claimed were "distinctive and creative" are unprotectable as they are in the public domain). They are important to show how much a machine is responsible in which case there may be no copyright at all. 11 Nimmer on Copyright § 306 (2022) ("Because copyright law is limited to 'original intellectual conceptions of the author,' the Office will refuse to register a claim if it determines that a human being did not create the work. *Burrow-Giles Lithographic Co. v. Sarony*, 111 U.S. 53, 56-58 (1884)".).

Plaintiffs have refused to produce the audit trails because they claim they are not "easily producible," and "Plaintiffs would need to have someone go into their system and copy the information manually[.]" *See* Ex. 14, M. Means Ltr. J. Steinberg, Mar. 11, 2022.[12] ███████████████████████████ *See* Ex. 15, Oliver Dep. Tr. 264:15-24; Ex. 16, J. Steinberg Ltr. M. Means, April 21, 2022, at 1-2. Plaintiffs' burden must also be weighed against the relevance of the material to the litigation. *See* Fed. R. Civ. P. 26(b)(1).

The audit trails sought are as to the headnotes allegedly infringed. They therefore go directly to the claims asserted. They go to an element. The burden issue is irrelevant. *See Takeda Pharm. Co. v. Teva Pharms. USA, Inc.*, 2010 WL 2640492, at *1 (D. Del. June 21, 2010) (ordering discovery of 18 years of ESI where it was relevant to an invalidity defense and possibly not available elsewhere). Further, Plaintiffs' burden of production does not outweigh the benefit of this discovery where Plaintiffs contend that they are entitled to ███████ in copyright damages. *See, e.g., P.H. Glatfelter Co. v. Babcock & Wilcox Power Generation Grp., Inc.*, 2021 WL 3403531, at *3 (M.D. Pa. Aug. 4, 2021) (the burden involved in producing documents is inherently tied to the amount in controversy); *In re Domestic Drywall Antitrust Litig.*, 2016 WL 4414640, at *9 (E.D. Pa. Aug. 18, 2016). ROSS thus requests that Plaintiffs provide the audit trail for every headnote that Plaintiffs allege has been infringed.

### III. Search Functionality and Source Code

ROSS requested access to Plaintiffs' source code. RFP Nos. 67-68, 120-22 ("Source Code Requests"). ROSS also requested access to documents related to the operation of Westlaw's Boolean and natural language search functionalities, RFP Nos. 132-33 ("Operation Requests"), and to the financial value of these Westlaw search functionalities. RFP Nos. 134-35.

These requests are relevant because Plaintiffs claim that ROSS infringed its source code. *See* Ex. 6, Dkt. No. 20, Mot. Hearing Tr. 39:25-40:7 (Oct. 30, 2020). It is relevant because Plaintiffs claim that LegalEase infringed on headnotes and key numbers when it conducted

---

[12] Though the audit trails are in Plaintiffs' software, Plaintiffs' claim the audit trails cannot be exported and must be opened one-by-one. Ex. 17, M. Means Ltr. J. Steinberg, May 20, 2022, at 4 (proposing that ROSS pay for Plaintiffs to build a computer program to export the information). ROSS agreed to consider development and costs of a computer program to get this vital information, but asked clarifying questions. Ex. 18, J. Steinberg Email M. Means, May 23, 2022. Plaintiffs have still not given ROSS a definite answer on what format they would produce the audit trails in beyond some form of XML data, and Plaintiffs have not provided a date by which they would produce the audit trails in any format. Ex. 19, J. Steinberg Email M. Means, Jun. 28, 2022.

The Honorable Stephanos Bibas
July 11, 2022
Page 7

searches because Plaintiffs' legal search engine uses headnotes and key numbers when conducting searches. It is also relevant because there is no dispute that a machine selects key numbers. And there is a dispute how that operates. Finally, the source code is relevant to damages, as discussed in section IV.E.

The Source Code Requests are relevant because Plaintiffs have alleged that ROSS has infringed its source code. *Updatecom, Inc. v. Firstbank P.R.*, 2012 WL 12996276, at *2-3 (D.P.R. Sept. 27, 2012) ("Source code is indisputably relevant" when plaintiff alleges that defendant improperly reproduced or used derivative works from copyrighted software); *Dynamic Microprocessor Assocs. v. EKD Comput. Sales*, 919 F. Supp. 101, 105 (E.D.N.Y. 1996) (source code must be produced because it was "critical to the . . . defense of claims relating to copyrightability").

The Source Code and Operation Requests are also relevant to infringement and fair use. ████████████████████████████████████████████████████████████████████ *See* Ex. 20, Plaintiffs' Second Supp. Resp. Interrogatory No. 1, at 26. Thus, ROSS has a right to investigate how the Boolean and natural language search functionalities and the associated source code operate to challenge whether the results of the searches result in the cases that Plaintiffs contend they do. *See Centurion Indus. v. Steurer*, 665 F.2d 323, 326 (10th Cir. 1981). And as discussed below, these requests are also relevant to damages.

Plaintiffs have also stated that the key number system is the "backbone" of the Westlaw Boolean and natural language search functionalities. *See* Dkt. No. 28 (Plaintiffs' Motion to Dismiss Defendants' Counterclaims), at 4. The first fair use factor asks whether the purpose and character of the infringing party's use is the same or different from the purpose and character of the original owner's use. 17 U.S.C. § 107(1). Thus, ROSS has a right to investigate how headnotes and key numbers contribute to the Westlaw Boolean and natural language search functionalities. *Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183, 1202-04 (2021) (finding that factor one favors fair use after determining that Google's purpose for copying portions of the Sun Java API was to "expand the use and usefulness of Android-based smartphones" and noting that "Google, through Android, provided a new collection of tasks operating in a distinct and different computing environment" which were "carried out through the use of new implementing code (that Google wrote)").

The Source Code Requests are also relevant to how JCaRE operates. ████████████[13]
████████████████████████████████████████████████████████████████████
████████████[4]

---

[13] *Compare* Ex. 17, M. Means Ltr. J. Steinberg, May 20, 2022 at 3 (disagreeing with ROSS' position and stating that ████████████████████████████████████████
*with* Ex. 16, J. Steinberg Ltr. M. Means, Apr. 21, 2022, at 1 ████████████████
████████████████████████████████████████████████████████████

[14] *See, e.g.*, U.S. Copyright Office Review Board, *Second Request for Reconsideration for Refusal to Register A Recent Entrance to Paradise* (Correspondence ID 1-3ZPC6C3; SR #1-7100387071), at 3 (rejecting a request to copyright an AI-generated work because "human authorship is a prerequisite to copyright protection"), *available at* https://www.copyright.gov/rulings-filings/review-board/docs/a-recent-entrance-to-paradise.pdf (visited July 9, 2022).

## IV. Requests Related to Damages and Fair Use

▮▮▮▮▮▮▮▮▮▮ TR-0836004. *See* Ex. 20, Plaintiffs' Second Supp. Resp. Interrogatory No. 1, at 18.[15] ▮▮▮▮▮▮▮▮▮▮ Ex. 21, Hoffman Dep. Tr., 19:17-22:2. ▮▮▮▮▮▮▮▮▮▮ *See id.* at 95:3-96:20. ▮▮▮▮▮ *See id.* at 96:21-100:22. The result is that where, for example, ▮▮▮▮▮▮. *See id.* at 114:19-115:14. As a result, ROSS believes that the fair market value of these materials is far less than what Plaintiffs have claimed. ROSS has requested documents directly relevant to the actual value of these materials, but Plaintiffs have refused to produce these materials.

Plaintiffs assert that their discovery obligations only require them to produce documents supporting their theory of damages. *See, e.g.*, Ex. 22, M. Means Ltr. J. Steinberg, May 11, 2022, at 1. But ROSS is entitled to documents relevant to damages, not just those that Plaintiffs would like to produce. The scope of discovery is "any nonprivileged matter that is relevant to *any party's claim or defense...*" Fed. R. Civ. P. 26 (emphasis added). *Fassett v. Sears Holdings Corp.*, 319 F.R.D. 143, 152 (M.D. Pa. 2017) (granting a motion to compel designs of gas caps that are similar though not identical to the gas cap at issue in this case in part because "'a party should not be limited by its opponent's theory of the case in determining what is discoverable.'") (quoting *Trask v. Olin Corp.*, 298 F.R.D. 244, 265 (W.D. Pa. 2014)).

### A. The Financial Value of Westlaw Content

ROSS requested information about the financial value of the Westlaw Content, including the financial value of headnotes and key number systems, the specific portions of the key number system that ROSS has allegedly infringed, and all documents Plaintiffs intend to rely on in support of their claims and defenses. ROSS RFP Nos. 100-102, 123-126, and 141; *see also* Ex. 23, J. Steinberg Ltr M. Means, Apr. 18, 2022, at 2-3. Plaintiffs have not met their production burden for these requests.

Plaintiffs identified five documents in response to these requests.[16] Those documents do not show the value of the specific headnotes, the value of the specific portions of the key number system, or the harm Plaintiffs allegedly suffered in connection with their copyright infringement and tortious interference claims. Plaintiffs later identified several other marketing documents that purport to show the value of the headnotes and the key number system, which included screenshots of YouTube video descriptions and screenshots of user interfaces. These other documents do not display any financial information about the claimed damages and therefore do not help satisfy Plaintiffs' discovery obligations.

As it stands, Plaintiffs' responses simply show what ROSS would have paid if it had been a Westlaw user subject exclusively to pro forma pricing. ▮▮▮▮▮▮▮▮▮▮ *See* Ex. ▮▮▮▮▮▮▮▮▮▮

---

[15] ▮▮▮▮▮▮▮▮▮▮ *See* Ex. 3, Parker Decl. ¶ 6.

[16] Ex. 3, Parker Decl. ¶ 7.

The Honorable Stephanos Bibas
July 11, 2022
Page 9

24, Martens Dep. Tr. 252: 13-20. Production of the requested documents will allow ROSS to understand the specific harm Plaintiffs are claiming, rather than trying to discern the alleged loss through documents outlining the cost of Westlaw services generally. *See Corning Inc. v. SRU Biosystems, LLC*, 223 F.R.D. 191, 193 (D. Del. 2004) (granting a motion to compel documents that may "assist in illuminating the reasonableness of [the movant's] claim of damages due to lost sales" based on a claim of tortious interference). ROSS requests that this Court order Plaintiffs to supplement their production of documents responsive to RFP Nos. 100, 101, 102, 123, 124, 125, 126, and 141.

### B. Usage Statistics

ROSS seeks production of Plaintiffs' statistics showing usage of the headnotes and key numbers at issue in this case. *See* ROSS's RFP No. 136.

Statistics showing how often the key numbers at issue are used are relevant to Plaintiffs' claim for damages. It is relevant to the value a key number adds. Low usage over time would show that subscribers do not value that key number. Usage statistics are also relevant to the market for the alleged copyrights, an aspect of fair use analysis. *Murphy v. Millennium Radio Grp. LLC*, 650 F.3d 295, 308-09, n. 16 (3d Cir. 2011) (quoting *Princeton Univ. Press v. Mich. Document Servs.*, 99 F.3d 1381, 1387 (6th Cir. 1996)).

Plaintiffs have objected to this request, claiming that they do not track usage.[17] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* Ex. 25, TR-0040227 at -231 ▮▮▮▮▮▮▮▮▮▮ One of Plaintiffs' witnesses ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Ex. 21, Hoffman Dep. Tr. 31:8-25 and 81:20-82:2. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ his information is discoverable, and this Court should compel Plaintiffs to produce it.

### C. Licensing Strategy Documents

ROSS requested documents describing Plaintiffs' licensing strategy for the Westlaw Product[18] (RFP No. 87) and for the Westlaw Content (RFP No. 88). By party agreement, Plaintiffs agreed to produce documents sufficient to show "Plaintiffs overall licensing strategy." *See* Ex. 26, M. Means Email J. Steinberg, Mar. 7, 2022. Plaintiffs produced and identified only three documents. *See* Ex. 27, E. Loverro Email J. Steinberg, Apr. 26, 2022. None of the documents, either individual or collectively, demonstrates Plaintiffs' licensing strategy.[19]

Documents "sufficient to show" Plaintiffs licensing strategy would include documents showing decisions by Plaintiffs about what to license to customers, what Westlaw Content is offered as part of the license, how Plaintiffs set the various prices for their license, and how Plaintiffs decided to offer a discounting policy to their customers and how such policy is set. *See*

---

[17] Plaintiffs have continued to claim that they "do not have existing reports that identify usage statistics" for the key number system, but acknowledge that the "underlying data" exists. M. Means Email J. Steinberg, Jun. 30, 2022.
[18] "Westlaw Product" refers to the online legal research platform, Westlaw, which includes "without limitation its unique West Key Number System ('WKNS') and West Headnotes." *See* Dkt. No. 1, ¶ 1.
[19] *See* Ex. 28, TR-0908413, TR-0908414, and TR-0908708. TR-0908413 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ TR-0908414 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ TR-0908708 ▮▮▮▮▮▮

The Honorable Stephanos Bibas
July 11, 2022
Page 10

Ex. 29, J. Steinberg Ltr. M. Means, Jun. 9, 2022. The three documents produced do not contain this information.

Licensing strategy documents are relevant to damages and fair use. *Murphy*, 650 F.3d at 308 (to determine whether the fourth factor weighs in favor of fair use, the court "look[s] to 'the impact on potential licensing revenues for traditional, reasonable, or likely to be developed markets.'") (quoting *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 614 (2d Cir. 2006)); *see also Google*, 141 S. Ct. at 1207 (analyzing whether evidence of licensing negotiations between Google and Oracle weighed in favor of fair use on factor 4). Plaintiffs base their tortious interference damages on the pro forma fees for out-of-subscription use. These documents would show how Plaintiffs set their license prices, how costs affect the license prices, and whether customers actually pay pro forma prices. ROSS needs this information to challenge Plaintiffs' damages and to show the impact on the market from ROSS's use of the alleged copyrights. Plaintiffs should be compelled to produce these documents, or in the alternative, be precluded from using any other document to show Plaintiffs' licensing strategy.

### D. Cease-and-Desist Correspondences and DMCA Notices

ROSS's RFP Nos. 111-115 ask for cease-and-desist correspondence and DMCA notices related to the Westlaw Content at issue. ROSS seeks these communications to determine the scope and value of Plaintiffs' alleged copyrights and whether Plaintiffs have taken a consistent position for the Westlaw Content at issue here.

The cease-and-desist correspondences and DMCA notices are relevant to Plaintiffs' claims about the value of the Westlaw Content. Have Plaintiffs previously sought the pro forma value of this content? Or have they used an alternative valuation? *See* Ex. 30, TR-0035897 ROSS has a right to challenge Plaintiffs' damages demand, including how it measures damages and whether Plaintiffs' method of measuring damages is consistent.

### E. Value of Source Code and Search Engine

ROSS requested documents regarding the value of Plaintiffs' source code and Boolean and natural language search functionalities. RFP Nos. 134-35. Plaintiffs have produced eleven public marketing documents. None of these documents make a single statement about the financial value of the Boolean and natural language search functionalities. These are instead marketing materials that describe the Westlaw platform in generic terms. Ex. 31, TR-0179887, TR-0179889, TR-0179885, TR-0179877, TR-0179884, TR-0179863, TR-0179838, TR-0179876, TR-0179830, TR-0179867, and TR-0179843.

For the reasons stated above, ROSS requests this Court to compel Plaintiffs to (1) supplement their response to Interrogatory No. 1 to specifically identify the headnote, key number, and any other Westlaw Content Plaintiffs contend ROSS has infringed; and (2) produce documents responsive to RFP Nos. 67, 68, 87, 88, 100-102, 111-115, 118, 123-126, 128, 129, 131-136, 141, and 143-149.

Respectfully,

/s/ David E. Moore

David E. Moore

DEM:nmt/10228208/20516.00001
Enclosures
cc: Counsel of Record (via electronic mail)