# EXHIBIT 1

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

# EXHIBIT 2

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION, | ) ) ) | |
| | ) | C.A. No. 20-613-LPS |
| Plaintiffs, Counterdefendants | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ROSS INTELLIGENCE INC., | ) | |
| | ) | |
| Defendant, Counterclaimant. | ) | |

**DECLARATION OF WARRINGTON S. PARKER, III, IN SUPPORT OF ROSS INTELLIGENCE, INC.'S OMNIBUS DISCOVERY LETTER BRIEF**

I, Warrington S. Parker, III, declare as follows:

1.      I am a partner at Crowell & Moring, LLP, lead counsel of record for ROSS Intelligence, Inc. I am licensed in the State of California and admitted *pro hac vice* with this Court. I submit this declaration in support of ROSS's Omnibus Discovery Letter Brief. The following statements are based on my personal knowledge.

2.      Plaintiffs have produced a document at Bates number TR-0044730, ███████ ████████████████████████████████████████████████████████ ██████████████████████████████████████████████

3.      Certain cases cited in the LegalEase memorandums contain identical Lexis and Westlasw headnotes.  For example, Memorandum # 10, Ex. 10, ROSS-000216835, quotes *Brookfield Communications, Inc. v. West Cost Ent. Corp*., 174 F.3d 1036 (9th Cir. 1999).  As shown in the below screen shots, the quoted language from the memorandums is identical to both the Westlaw and Lexis headnotes for that case:

**Westlaw Headnote from *Brookfield Communications, Inc. v. West Cost Ent. Corp*., 174 F.3d 1036 (9th Cir. 1999):**



**Lexis Headnote from *Brookfield Communications, Inc. v. West Cost Ent. Corp*., 174 F.3d 1036 (9th Cir. 1999):**

Trademark Law > ... > Similarity of Marks ▾ > Appearance, Meaning & Sound ▾ > General Overview ▾
View more legal topics

*HN2* Similarity of Marks, Appearance, Meaning & Sound

A plaintiff is entitled to a preliminary injunction in a trademark case when he demonstrates either (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) the existence of serious questions going to the merits and that the balance of hardships tips sharply in his favor. To establish a trademark infringement claim under Lanham Act, 15 U.S.C.S. § 1114, or an unfair competition claim under Lanham Act, 15 U.S.C.S. § 1125(a), the claimant must establish that the company against which the claim is brought is using a mark confusingly similar to a valid, protectable trademark of the claimant. 🔍 More like this Headnote

4.      Similarly, in Memorandum # 841, Ex. 11, ROSS-000216835, the question was "[d]oes double jeopardy clause protect against a second prosecution for the same offense after acquittal?" The memorandum refers to a case, *Stamps v. State*, 151 So.3d 248 (Miss. Ct. App. 2014) where, as shown in the below screenshots, the language answering that question is identical in both the Lexis and Westlaw headnotes.

**Westlaw Headnote from *Stamps v. State*, 151 So.3d 248 (Miss. Ct. App. 2014):**



**Lexis Headnote from *Stamps v. State*, 151 So.3d 248 (Miss. Ct. App. 2014):**



5.      ROSS first raised an issue with Plaintiffs' responses to RFP Nos. 132-135 by letter on January 12, 2022.  K. Ghaffari Ltr. E. Loverro, Jan. 12, 2022, at 7-9.   Plaintiffs provided a two-paragraph response a month later, on February 10, 2022.  M. Means Ltr. K. Ghaffari, Feb. 10, 2022, at 5.  One week later, ROSS raised the issue again. J. Steinberg Ltr. M. Means, Feb. 17, 2022, at 3.  Plaintiffs provided a single-paragraph response three weeks after that.  M. Means Ltr. J. Steinberg, Mar. 11, 2022, at 3.  ROSS then prepared a detailed, three-page response to every concern Plaintiffs raised about RFP Nos. 132-135.  J. Steinberg Ltr. M. Means, 4-6.  It took Plaintiffs a month to respond with just one paragraph.  M. Means Ltr. J. Steinberg, Apr. 21, 2022, at 2-3.  This pattern of delay is not unique to the dispute regarding RFP Nos. 132-135.

6.      Plaintiffs produced a spreadsheet at Bates number TR-0836004 in this litigation.

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████  ████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

███████████████████

7.      Plaintiffs identified five documents in response to Requests 100-102, 123-126,

and 141: a pricing guideline for out-of-subscription access (TR-0894151), a spreadsheet

purporting to show that value of LegalEase's use of Westlaw (TR-0836004), a pricing guideline

for nonprofit and privately held corporations (TR-0002846), a spreadsheet that shows the actual

revenue generated by different Westlaw initiatives (TR-0908447), and a print-out of a

SalesForce page (TR-0521595).

I declare under penalty of perjury under the laws of the United States that the foregoing is

true and correct. Executed at San Francisco, California, on this 11th day of July, 2022

*/s/ Warrington S. Parker III*

_____

Warrington S. Parker III

# EXHIBIT 4

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT 5

**Saber, Anna**

| | |
|---|---|
| **From:** | Steinberg, Joachim |
| **Sent:** | Monday, June 13, 2022 12:06 PM |
| **To:** | Means, Miranda |
| **Cc:** | ROSS Lit Team; #Thomson-Ross; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; *dmoore@Potteranderson.com1; *bpalapura@potteranderson.com |
| **Subject:** | RE: Thomson Reuters v. ROSS - Amended Complaint |

Miranda,

We have not withheld a meet and confer on this topic. We are, as we said below, willing to meet and confer on the proposed amendments. However, given the delays that have taken place because of Plaintiffs' refusal to engage in the meet and confer process, we think it's reasonable to discuss the other outstanding discovery topics at the same time. For example, we asked Plaintiffs to either produce documents or be willing to meet and confer on the documents mentioned at Mr. Tario's deposition five separate times, beginning in early May. Your email is the first time we have received any substantive response to those questions, and it still asks us to wait for more information. For Mr. Cavalieri's documents, we requested the same six times before receiving a substantive response. On several other occasions, we have had to make multiple requests for meet and confer calls before receiving any response from your team.

We are available to meet and confer regarding the proposed amendments on Friday, June 17, Tuesday, June 21, or Wednesday, June 22, but expect that your team will also be prepared to discuss other discovery issues on those calls. Please let us know a few times on those days that work for you.

Kind regards,
Joachim

**Joachim B. Steinberg**
Pronouns: he/him/his
Crowell & Moring LLP
jsteinberg@crowell.com
+1.415.365.7461 direct   |   +1.917.575.6244 mobile

---

**From:** Means, Miranda <miranda.means@kirkland.com>
**Sent:** Friday, June 10, 2022 5:17 PM
**To:** Steinberg, Joachim <JSteinberg@crowell.com>
**Cc:** ROSS Lit Team <Rosslitteam@crowell.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters v. ROSS - Amended Complaint

External Email

Dear Joachim,

First, it is completely improper for you withhold a meet and confer with Plaintiffs on an issue that you admit is ripe for a meet and confer.   You have stated below, without any explanation, that ROSS does not consent to the proposed amendment.   When the parties reached an impasse on other issues, we scheduled meet and confers with your team.   Indeed, we have two in a row scheduled on issues that ROSS wished to discuss next week.   Discovery is a two way

street.  Provide your team's availability, or be prepared to explain to the Court why you refused to meet and confer with Plaintiffs on this amendment.

Second, you sent us five different lengthy discovery letters this week.  Two of them were sent in response to a letter we sent you *over a month* ago April 21.  Two of them, which you sent yesterday, were letters sent following a meet and confer three weeks ago.  Some of them raise new issues and arguments that ROSS never mentioned during fact discovery, and our client has every right to address.   For the letters you sent this week that we have not responded to yet, we will respond in due course, but we will not rush because ROSS unilaterally decided to make this week the week it dredges up discovery issues it has conveniently ignored for over a month.

Third, there are a number of issues Plaintiffs have been working diligently to resolve.  With regard to Mr. Cavalieri's documents, we should be able to produce documents early next week (likely Monday).  With regard to the documents from Cameron Tario's deposition, many of the documents you asked for do not exist, but we are still investigating whether there is anything to produce, and hope to know more next week.  On the audit trails, we are expecting to be able to get back to you on that shortly as well.


Best regards,
Miranda

**Miranda Means**
She/Her/Hers

**KIRKLAND & ELLIS LLP**
200 Clarendon Street, Boston, MA 02116
**T**  +1 617 385 7419
**M** +1 617 320 9248

miranda.means@kirkland.com

---

**From:** Steinberg, Joachim <JSteinberg@crowell.com>
**Sent:** Friday, June 10, 2022 3:11 PM
**To:** Means, Miranda <miranda.means@kirkland.com>
**Cc:** ROSS Lit Team <Rosslitteam@crowell.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters v. ROSS - Amended Complaint

Miranda,

ROSS does not consent to the proposed amendment to the Complaint. We are willing to meet and confer with you on the amendment, however, as we have repeatedly requested meet and confers on several issues, including but not limited to the Andrew Cavalieri documents, the documents mentioned at the Cameron Tario deposition, and Plaintiffs' proposal regarding audit trails, we believe that the parties should schedule those final meet and confer discussions, as well as any other issues still outstanding, for the same time that we meet and confer on Plaintiffs' proposed amendment.

Kind regards,
Joachim

**Joachim B. Steinberg**
Pronouns: he/him/his
Crowell & Moring LLP
jsteinberg@crowell.com
+1.415.365.7461 direct  |  +1.917.575.6244 mobile

2

**From:** Means, Miranda <miranda.means@kirkland.com>
**Sent:** Friday, June 3, 2022 4:25 PM
**To:** Steinberg, Joachim <JSteinberg@crowell.com>
**Cc:** ROSS Lit Team <Rosslitteam@crowell.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** Thomson Reuters v. ROSS - Amended Complaint

External Email

Dear Joachim,

Based on the new information discovered during the course of fact discovery, including the deposition of Charles von Simson, Plaintiffs intend to amend their complaint.  Attached is a redline of the proposed amended complaint.  Please let us know if ROSS will consent to Plaintiffs' request, or provide a time when you are available to meet and confer.

Best regards,
Miranda

**Miranda Means**
She/Her/Hers

**KIRKLAND & ELLIS LLP**
200 Clarendon Street, Boston, MA 02116
**T** +1 617 385 7419
**M** +1 617 320 9248

miranda.means@kirkland.com

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

# EXHIBIT 6

1                    IN THE UNITED STATES DISTRICT COURT

2                    IN AND FOR THE DISTRICT OF DELAWARE

3                                 - - -
     THOMSON REUTERS ENTERPRISE CENTRE
4    GMBH and WEST PUBLISHING CORPORATION,:   CIVIL ACTION
                                            :
5              Plaintiffs,                   :
     v                                       :
6                                            :
     ROSS INTELLIGENCE INC.,                 :
7                                            :   NO. 20-613-LPS
               Defendant.
8                                 - - -

9                         Wilmington, Delaware
                         Friday, October 30, 2020
10                        *Telephonic Argument*

11                                - - -

12   BEFORE:        HONORABLE LEONARD P. STARK, Chief Judge

13   APPEARANCES:                - - -

14
                 MORRIS, NICHOLS, ARSHT & TUNNELL LLP
15               BY:  JACK B. BLUMENFELD, ESQ.

16                   and

17               KIRKLAND & ELLIS LLP
                 BY:  DALE M. CENDALI, ESQ., and
18                    JOSHUA L. SIMMONS, ESQ.
                      (New York, New York)
19
                         Counsel for Thomson Reuters
20                       Enterprise Center GmbH and West
                         Publishing Corporation
21

22               POTTER ANDERSON & CORROON LLP
                 BY:  DAVID E. MOORE, ESQ., and
23                    STEPHANIE E. O'BYRNE, ESQ.

24                   and

25                           Brian P. Gaffigan
                             Official Court Reporter

1    APPEARANCES:   (Continued)

2

3              CROWELL & MORING LLP
          BY:   GABRIEL M. RAMSEY, ESQ.,
4              KAYVAN M. GHAFFARI, ESQ., and
              JACOB CANTER, ESQ.
5              (San Francisco, California)

6              and

7              CROWELL & MORING LLP
          BY:   MARK A. KLAPOW, ESQ.
8              JOSHUA M. RYCHLINSKI, ESQ.
              (Washington, District of Columbia)

9                   Counsel for ROSS Intelligence Inc

10

11

12

13

14

15

16

17

18

19

20

21

22                        - oOo -

23              P R O C E E D I N G S

24         (REPORTER'S NOTE:  The following telephonic

25    argument was held remotely, beginning at 11:04 a.m.)

```
 1              And our point is, well, we don't know, since
 2    we're not inside their company, exactly what they took but
 3    they took all of our content.  And to make it also clear, I
 4    realize I didn't completely answer your question, we did
 5    not define and did not intend to define Westlaw content as
 6    relating to unprotected materials.
 7              The copyright registrations in fact are clear
 8    on that.  The copyright registrations state on their face,
 9    and this is annexed to the complaint in Docket 1-1, page 3
10    as well, that copyright is not claimed as to any part of the
11    original work prepared by United States Government officer
12    or employee as part of that person's official duties.
13              That material would not be included in the
14    definition of Westlaw content.  It couldn't be because it's
15    not part of our copyright registrations.  Rather --
16              THE COURT:  Yes.  Where does your complaint make
17    that clear and give the defendant notice of that?
18              MS. CENDALI:  Well, I think it makes it clear
19    by defining Westlaw content for, for what it is, which is
20    its unique West key number system and the West headnotes,
21    without limitation.  And I think it also makes it clear
22    because we attached 161 copyright registrations to the
23    complaint that disclaimed that material.  We are not
24    claiming copyright on that.
25              THE COURT:  How about the search engines and
```

1     algorithms?  Are you claiming copyright protection on those?

2             MS. CENDALI:  Yes, the search engines and

3     algorithms are part -- they're part of the compilation.

4     They're part of the hierarchy and the structure of how

5     Westlaw is created and operates.  And that is definitely

6     part of our, of our copyright claim, and part of our

7     registration.

8             THE COURT:  And how does your complaint give

9     reasonable and adequate notice to the defendants that that

10    is part of what they are alleged and have to defend against?

11            MS. CENDALI:  Well, if Your Honor doesn't think

12    it gives reasonable notice, then, you know, we submit we

13    would be happy to amend to say that.  But I think that we

14    did our best.  I hope we succeeded, but we did our best to

15    say that, such as on paragraph 11, editorial enhancements

16    such as West proprietary headnotes, notes of decisions,

17    and the WKNS are just a few examples of the creative and

18    original material authored by West.

19            And then we spent a lot of time talking

20    especially in paragraph 13, about the different hierarchy

21    and structure that was created.  And we annexed the

22    copyright registration that was clear that it covers

23    revisions, compilations and does not cover material created

24    by people like yourself.  That's what the registrations

25    reflect, and that is what we thought we did in the

1          But it's incumbent to meet the pleadings

2     standard, in other words, to meet Factor 4 of Judge Andrews'

3     test, it's incumbent upon the plaintiffs to do that.  And

4     they have just not done so now.

5          THE COURT:  If the allegation as I think they

6     have made very clear at least now is that it was at the

7     development stage of your client's product that they're

8     alleging there was copying of their protected content that

9     is not public.  It is not discernible through use of the

10    product.

11         So how else could they plead about that or, you

12    know, get information about it without information and

13    belief allegations followed by discovery?

14         MR. RAMSEY:  I submit it is knowable, at least

15    inferentially from the reverse engineering.  Just like in

16    the patent cases.  I don't mean to keep referring to patent

17    cases, but in a technical case like this, it's no different.

18    It's true in every patent case, much like the copyright case

19    here, that the plaintiff can't know everything about a

20    product, but in the words of *Network Managing Solution*,

21    where there is "some public product that can be reverse

22    engineered" to shore up at least inferentially some more

23    specific features than, hey, this is a search product, it

24    must be in there somewhere.  Well, the same is true here.

25    And we're only asking you to apply in an evenhanded way the

1   rules on pleading information and belief and the rules about

2   alleging specific acts.

3            There has to be -- we're not saying prove the

4   whole case.  We're realistic.  What we're saying, there must

5   be something to put the defendants on notice.  This is not

6   just about meeting the pleading standard because it is

7   stated in a case someplace.  It is about allowing the

8   defendant to say, ah, we now understand more specific ways

9   of parameters of the theory in the claim.  We can formulate

10  a defense, admit or deny, and we'll frame the scope of

11  discovery.

12           So, more is possible without sitting in the lab

13  at ROSS through the investigation of the product just like

14  other IP cases, and something more is required here.  They

15  can do more.

16           THE COURT:  All right.  Just one more question.

17  I'm not in any way offended by your reference to patent

18  cases.  My question actually relates to that.

19           In patent cases, we usually have infringement

20  contentions at a fairly early stage in the discovery

21  process.  Isn't that part of the answer here?  They will

22  be required, if they survive this motion to dismiss, to, in

23  a fairly expeditious manner that we would build into the

24  schedule, serve something like infringement contentions on

25  you that make clear, here is what we contend is protectable

1   about, you know, our intellectual property, and here is what

2   we contend you copied.

3              What would be inadequate from your perspective

4   with that approach?

5              MR. RAMSEY:  Well, broadly, there is nothing

6   offensive about such an approach and that sort of mechanism

7   is useful, of course, in any sort of litigation.

8              But my point is we're not quite there yet, Your

9   Honor.  We're still at the pleadings stage.  The pleadings

10  rules do require some level of specificity to open the doors

11  of discovery at all.

12             And plaintiffs have plenty of resources to avail

13  themselves to set the framing of this case beyond we have

14  databases and algorithms and headnotes and key numbers and

15  compilations and something in some way, somehow must be in

16  their product, but we're not, we're not going to frame it in

17  any sort of even, in any inferential way that is useful to

18  frame our case.

19             There is more work to be done in the complaint,

20  I would submit, Your Honor, before we get to the kind of

21  case management details like that.  We're not at that point

22  yet, and the pleadings standards exist for a reason, I would

23  submit.

24             THE COURT:  Okay.  Thank you very much.  I want

25  to thank all three of you for the very helpful argument.

1          I'm going to take the motion under advisement.

2     If I need anything further from you, I will let you know.   I

3     hope everybody enjoys the weekend.   Happy Halloween, I

4     suppose, and stay safe.

5               Thank you again.   We will be in recess.

6               (The attorneys respond, "Thank you, Your Honor.")

7               (Telephonic argument ends at 12:48 p.m.)

8

9          I hereby certify the foregoing is a true and accurate
      transcript from my stenographic notes in the proceeding.

10

11                         /s/ Brian P. Gaffigan
                          Official Court Reporter
12                         U.S. District Court

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT 7

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

Miranda Means
To Call Writer Directly:
+1 617 385 7419
miranda.means@kirkland.com

200 Clarendon Street
Boston, MA 02116
United States

+1 617 385 7500

www.kirkland.com

Facsimile:
+1 617 385 7501

April 21, 2022

**Via Email**

Joachim B. Steinberg
Crowell & Moring LLP
3 Embarcadero Center
26th Floor
San Francisco, CA 94111

> Re:   *Thomson Reuters Enter. Centre GmbH v. ROSS Intelligence Inc.*,
>        Case No. 20-613

Dear Mr. Steinberg:

We write in response to ROSS Intelligence, Inc.'s ("ROSS") letter of April 11, 2022 ("April 11th Letter"), regarding Thomson Reuters Enterprise Center GmbH and West Publishing Corporation's (collectively, "Plaintiffs") responses to ROSS's Second Set of Requests for Production ("RFPs").

## 1.   <u>Request Nos. 111–115, 128–129, and 131</u>

<u>Cease and Desist/DMCA Notices</u>: ROSS insists that these requests are relevant to (1) "whether or not a third party with a subscription can provide legal analyses to what Plaintiffs consider to be a competitor" and (2) "why LegalEase's subscription was terminated." April 11th Letter at 1. Plaintiffs have already produced documents showing why LegalEase's subscription was terminated, and Plaintiffs' witnesses have provided testimony to that effect. It is unclear why Plaintiffs' assessment of whether an unrelated third party is a "competitor" is relevant to this case, or how DMCA and cease and desist correspondence would even show that. Damages in this case similarly do not depend on what Plaintiffs may have requested from other parties for unrelated infringements, and ROSS's curiosity on the matter is not enough to make those requests relevant or proportional to the needs of this case. As we noted before, this request carries the risk of creating mini-trials within this litigation, which the Court already has cautioned ROSS to avoid, and Plaintiffs will not be producing these documents.

<u>Judicial Opinions</u>: The judicial opinion sourcing process continues to lack relevance to the creativity of Plaintiffs' content. Plaintiffs are not claiming copyrights in underlying judicial

## KIRKLAND & ELLIS LLP

Joachim B. Steinberg
April 21, 2022
Page 2

opinions.  To the extent ROSS is interested in learning which state courts write their own headnotes, it has made clear that it already has documents sufficient to show that.  *See* April 11th Letter at 2.  ROSS may compare the cases Plaintiffs have produced with Westlaw content to the original text of the cases as offered by the courts.  Given the lack of relevance and the equal availability to ROSS, as well as the fact that ROSS already has questioned Plaintiffs' witnesses on this topic, a production of documents is not proportional to the needs of this case.

**2.**   **General Objection Regarding Temporal Scope**

ROSS cannot identify a place where Plaintiffs' production has been deficient due to this objection, so we do not understand what the issue is here.  If there are specific categories of documents that Plaintiffs agreed to produce and that ROSS believes were improperly limited in temporal scope, ROSS can identify them and we can consider the request.

**3.**   **Audit Trails for Headnotes**

ROSS asserts that there cannot possibly be a burden in producing the audit trails for each headnote that ROSS infringed, because they "are electronic and have only been maintained since 2011."  *See* April 11th Letter at 4.  Not all electronic information is easily producible, however; as Plaintiffs have already stated in their letter of March 11, the information is not exportable and would need to be copied manually for tens of thousands of headnotes. ███████████████████ ██████████████████████████████████████████████████████████████████ ████████████████████████████.  *See* April 11th Letter at 3; Final Transcript, Deposition of Laurie Oliver ("Oliver Tr.") at 253:16–20.  If ROSS is claiming that the Westlaw headnotes are not creative because they are drawn from the text of a judicial opinion, that issue can best be evaluated by comparing the headnote to the opinion text, and the audit trails are unnecessary for that exercise.  Plaintiffs will therefore not take on the disproportionate burden of producing the audit trails for every headnote when ROSS is capable of evaluating creativity just as easily by comparing the text of each headnote to the text of the opinion.  If there are a reasonable number of audit trails that ROSS would like produced, please identify them so that Plaintiffs can consider the burden of producing them.

**4.**   **Search Functionality**

Plaintiffs have continually informed ROSS that they are not claiming ROSS copied the Westlaw Boolean and natural language search engine or algorithm.  Repeatedly citing to a statement in a hearing nearly six months ago, despite later discovery and communications with Plaintiffs that clarify exactly what content they claim was infringed, is disingenuous.  Plaintiffs do not assert that ROSS copied the Westlaw Boolean and natural language search engines and algorithms but rather that ROSS copied protectible Westlaw content and have used it for an

# KIRKLAND & ELLIS LLP

Joachim B. Steinberg
April 21, 2022
Page 3

identical purpose: training a legal research AI program.  Plaintiffs have provided documents on this issue, and beyond that, it is unclear what documents could be relevant.

> ### 5.      Usage of Key Numbers

As we have stated, Key Numbers can be used in a host of ways that cannot be tracked. For example, a user could view a case containing West Headnotes and Key Numbers and read through some or all of them, and West would not be able to tell which were "used."  Although Plaintiffs can, as ROSS notes, track certain usage of an individual Westlaw account, it would be burdensome for Plaintiffs to pull together usage reports for all users of Westlaw, particularly when the relevance of this request is unclear.  Plaintiffs already produced a usage report for LegalEase's use of Westlaw, which should be sufficient.

> ### 6.      Documents Responsive to RFP Nos. 96–99

ROSS asserts that Plaintiffs' production of documents in response to RFP Nos. 96–99 is insufficient but continues to fail to identify any documents it believes to exist that might be missing from Plaintiffs' production.  Plaintiffs have already produced the cases that contain the infringed Westlaw content.  LegalEase Solutions, Inc. has produced documents showing the method by which it copied Westlaw content and the memos it produced using Westlaw content, Plaintiffs have served an 83-page interrogatory response that details the same information, and ROSS has extensively questioned Plaintiffs' witnesses on these topics.  ROSS has all the information that it needs to determine what specific content Plaintiffs allege was copied already in its possession.  Moreover, ROSS now seems to be asking for documents that explicitly *identify* the Westlaw content that ROSS copied; Plaintiffs did not agree to produce documents making these identifications in response to these RFPs.[1]  Given ROSS's failure to point to responsive documents that have not been produced, it does not appear that Plaintiffs' production is, in fact, insufficient for ROSS's purposes.

*      *      *

---

[1]     Plaintiffs agreed to produce the following documents: (i) for RFP No. 96, "Plaintiffs state that they will produce relevant, non-privileged responsive documents showing Plaintiffs' content that Defendant used that are located after a reasonably diligent search, if any"; (ii) for RFP No. 97, "Plaintiffs state that they will produce relevant, non-privileged responsive documents showing Defendant's use of Plaintiffs' content that are located after a reasonably diligent search, if any"; (iii) for RFP No. 98, "Plaintiffs state that they will produce relevant, non-privileged responsive documents showing Defendant's use of Plaintiffs' content that are located after a reasonably diligent search, if any;"; and (iv) for RFP No. 99, "Plaintiffs state that they will produce relevant, non-privileged responsive documents showing Defendant's use of the WKNS that are located after a reasonably diligent search, if any."

# KIRKLAND & ELLIS LLP

Joachim B. Steinberg
April 21, 2022
Page 4

    The foregoing is not intended to be a full and complete recitation of Plaintiffs' position with respect to any discovery issues.  Plaintiffs hereby expressly reserve, and do not waive, all of their rights and remedies in connection with these issues.

                    Sincerely,

                    Miranda Means

# EXHIBIT 8

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

200 Clarendon Street
Boston, MA 02116
United States

Miranda Means
To Call Writer Directly:
+1 617 385 7419
miranda.means@kirkland.com

+1 617 385 7500

Facsimile:
+1 617 385 7501

www.kirkland.com

June 9, 2022

**Via Email**

Joachim Steinberg
Crowell & Moring LLP
3 Embarcadero Center
26th Floor
San Francisco, CA 94111
jsteinberg@crowell.com

Re:   *Thomson Reuters Enterprise Centre GmbH v. ROSS Intelligence, Inc.*,
      Case No. 20-613-LPS, Requests for Production 96, 97, and 99

Dear Joachim:

We write on behalf of Thomson Reuters Enterprise Centre GmbH and West Publishing Corp. (collectively "Plaintiffs") in response to ROSS Intelligence, Inc.'s ("ROSS") letter of June 7, 2022, concerning Request for Production Nos. 96, 97, and 99.

Your extremely belated letter, sent well over a month after the close of fact discovery, does not appear to genuinely seek to resolve any lingering discovery disputes in this case. Rather, its entire purpose appears to be to engage in a legal argument about the sufficiency of Plaintiffs' copyright claims and lock Plaintiffs into ROSS's misstatements about the evidence.[1] Indeed, almost half your letter is devoted to ROSS's erroneous assertions about what evidence Plaintiffs can and cannot rely on in "establishing what *Westlaw content* was used." Letter at 2. It is not up to ROSS to decide what evidence is sufficient to establish how ROSS used Westlaw Content. Plaintiffs are free to rely on all of the fact evidence elicited in this case to establish such use, including deposition testimony, documents, and written discovery.

ROSS's protestations that it does not know or does not have documents showing how ***ROSS itself*** used the Westlaw Content ring hollow and are frankly baffling. ROSS knows better than anyone how it built its legal research platform using the memoranda that LegalEase and Morae Global created by copying from Westlaw. If ROSS still has trouble understanding this, it

---

[1]   Plaintiffs also note that, throughout discovery, ROSS has sent seriatim letters, sometimes two or three a day, engaging in arguments about the sufficiency of the claims under the guise of a "discovery dispute." This wastes time and resources and is especially egregious now that fact discovery has been over since April.

---

# KIRKLAND & ELLIS LLP

Joachim Steinberg
June 9, 2022
Page 2

can look to numerous sources, including: (1) Plaintiffs' 62-page response to Interrogatory No. 1, which includes countless citations to documents showing precisely how ROSS used the Westlaw Content; (2) the testimony of LegalEase's and Morae Global's 30(b)(6) corporate representatives, who both provided *hours* of testimony explaining step-by-step how Westlaw was used to create the bulk memoranda that ROSS used; and (3) the testimony of its own corporate representative, Jimoh Ovbiagele, who detailed precisely how ROSS used the memoranda to build its legal research platform.

Although ROSS may advance its own legal theories and disagree with Plaintiffs' claims, this is not a discovery dispute for Plaintiffs to resolve. Plaintiffs are not obligated to convince ROSS of their claims or "prove" anything to ROSS's unilateral satisfaction. If ROSS disagrees that the Bulk Memos were created by copying Plaintiffs' copyrighted content, in spite of the extensive evidence showing that they were, it can argue that to the Court at the appropriate time.[2]

If you think any additional documents showing what ROSS did with the Westlaw Content are missing from the productions in this case, you should search your client's files for them and produce them immediately, as documents concerning ROSS's use of the Westlaw Content should be in ROSS's possession, not Plaintiffs'. Indeed, ROSS made overt efforts to conceal from Plaintiffs the fact that it was using Westlaw, such that it is ***ROSS*** who has the best access to documents showing how it used such content. Please confirm that you are not withholding any such documents, or explain your basis for doing so.

As always, Plaintiffs reserve all rights and waive none.

Sincerely,

Miranda Means

---

[2]   You claim that the evidence does not establish that ROSS used Westlaw Content because LegalEase may have used Lexis. Although this argument clearly has nothing to do with the sufficiency of Plaintiffs' document production, it is also demonstrably incorrect. In July 2017, LegalEase decided that it would use Westlaw for the ROSS Bulk Memos project. *See, e.g.,* T. Hafeez Tr. at 334:17–341:20; *see also* LEGALEASE-00059362. In addition, Morae Global, which created over 20,000 of the approximately 25,000 memos, *only* had access to and used Westlaw. All of this is evident from the documents and testimony in ROSS's own possession.

# EXHIBIT 9

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT 10

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

# EXHIBIT 11

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT 12

**Saber, Anna**

---

| | |
|---|---|
| **From:** | Means, Miranda <miranda.means@kirkland.com> |
| **Sent:** | Thursday, June 30, 2022 6:11 AM |
| **To:** | Steinberg, Joachim |
| **Cc:** | ROSS Lit Team; #Thomson-Ross; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; *dmoore@Potteranderson.com1; *bpalapura@potteranderson.com |
| **Subject:** | RE: Thomson Reuters v. ROSS - Audit Trails |

External Email

Dear Joachim,

*First*, in terms of the audit trails, as we already explained, ROSS's request is incredibly burdensome.  Nevertheless, as an accommodation, Plaintiffs are going to create a special program, just for this litigation, so that the audit trails can be exported.  As the audit trails are not normally kept in a way that permits their export, Plaintiffs were not required to build that special tool, and they certainly are not required to go through a far more expensive and laborious process to retrieve the same information in ROSS's preferred format.  Thus, we are moving ahead with Plaintiffs' proposal.  In terms of your concerns about the formatting, we are expecting it to be XML -- we are certainly not expecting to produce the audit trails in some rare format that ROSS or its document vendor will not be able to open.  We are moving as fast as we can on it, but July 8 is not feasible given the holiday and the fact that we need to build this program from scratch.  If ROSS is insisting on Plaintiffs producing the screenshots, then it should take that issue to the Court, as we simply cannot agree to that, nor will that provide more information that what Plaintiffs already plan to provide.  Given that Plaintiffs are under no obligation to produce the audit trails at all, we think the fact that they are building a program to export them is more than reasonable.

*Second*, in terms of the usage statistics, we can confirm that Plaintiffs do not have existing reports that identify usage statistics of the West Key Numbers on United States Westlaw.  While Plaintiffs' systems store lots of data related to usage of Westlaw, it is not reasonable to ask Plaintiffs to produce all of this underlying data, and it was not our understanding that ROSS is even asking for all of this data.  We think this resolves the issue, but please confirm.

*Third*, in terms of the judicial opinion sourcing documents, our understanding was that ROSS's main concern is being able to tell which headnotes were written by state courts.  ROSS can do that with the documents it has.  It has a list of the states that write their own headnotes.  And it can look at the opinions themselves and see where a court has its own headnotes at the beginning of the case.  If there is a specific case ROSS is unsure about, it should be able to pull that case from public sources and check the headnotes, such as from the court's website.  Given that this was ROSS's primary concern, we trust this resolves the issue, but if ROSS is still insisting on judicial opinion sourcing documents even though those documents will not provide it any more insights than the sources mentioned above, it can request relief from the Court.

We'll hold off commenting on the joint letter until we hear back from you on these three issues, as they may change what you choose to include therein.

Best regards,
Miranda

**Miranda Means**
She/Her/Hers
—————————————————
**KIRKLAND & ELLIS LLP**
200 Clarendon Street, Boston, MA 02116
**T** +1 617 385 7419

**M** +1 617 320 9248

miranda.means@kirkland.com

---

**From:** Steinberg, Joachim <JSteinberg@crowell.com>
**Sent:** Tuesday, June 28, 2022 9:03 PM
**To:** Means, Miranda <miranda.means@kirkland.com>
**Cc:** ROSS Lit Team <Rosslitteam@crowell.com>; #Thomson-Ross <thomson-ross@kirkland.com>;
mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; *dmoore@Potteranderson.com1
<dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters v. ROSS - Audit Trails

Miranda,

Thank you for this information. We are still not sure if this proposal is acceptable to us, because we are still unclear on when Plaintiffs would be able to produce the audit trails, what format the audit trails would be produced in, and whether that format would be accessible or understandable absent a deposition. While we are still willing to discuss this further, crucial deadlines in this case are approaching very quickly. Based on the Court's order directing the parties to file a single discovery motion "addressing all pending discovery disputes," we have drafted a joint letter informing the Court that we intend to include the following topics: (1) audit trails (RFP 118, 143-149), (2) usage statistics (RFP 136), and (3) judicial opinion sourcing documents (RFP 128, 129, 131).  The parties have met and conferred on these topics several times and have not resolved these issues, and we think it is thus appropriate to include them in the discovery motion to be filed on July 11.  Please let us know if you consent to the filing of this letter by Thursday, June 30th, so we can advise the Court well in advance of the July 11 filing. If we can reach a resolution on the audit trails (or any other issues) before then, we can update the Court that the issue has been resolved.

For the audit trails, when do you think you could produce these materials in the "raw format," which would allow us to determine if such a production was adequate? Unless it could be completed sometime before July 8, we think we would have to involve the Court on this issue.

Kind regards,
Joachim

**Joachim B. Steinberg**
Pronouns: he/him/his
Crowell & Moring LLP
jsteinberg@crowell.com
+1.415.365.7461 direct  |  +1.917.575.6244 mobile

---

**From:** Means, Miranda <miranda.means@kirkland.com>
**Sent:** Tuesday, June 28, 2022 3:50 PM
**To:** Steinberg, Joachim <JSteinberg@crowell.com>
**Cc:** ROSS Lit Team <Rosslitteam@crowell.com>; #Thomson-Ross <thomson-ross@kirkland.com>;
mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; *dmoore@Potteranderson.com1
<dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** Thomson Reuters v. ROSS - Audit Trails

External Email

Dear Joachim,

We are writing in response to your letter of May 20, 2022 concerning the audit trails. **First**, our calculated length of time needed to capture the audit trails does **not** take into account searching time. This is just our estimate for how long it would take to click through and capture the screenshots. Therefore, this hours estimate is conservative. Moreover, it does not follow that just because Plaintiffs can identify the headnotes ROSS copied, they must know which headnotes have audit trails. Some headnotes have audit trails, some do not. Whether a headnote has an audit trail is a separate question from whether ROSS copied that headnote.

**Second**, Plaintiffs do not know the approximate cost of it being done using screenshots, but as we detailed in our letter, we expect that the process would be very expensive, given the hours calculation. It would be expensive regardless of whether the parties use an outside contractor. Even conservatively assuming an hourly rate for an outside contractor of $15.00 an hour, the project would potentially cost around $100,000 or more. Moreover, we think this process would need to be done by someone at Thomson Reuters who knows the system. Having an outside contractor do it would require having the contractor trained in the Thomson Reuters system, which still takes hours away from Thomson Reuters' employees, and the contractor would have to go through security measures and set up. Given the security risks and extensive access to Thomson Reuters' system that would be required, Thomson Reuters would need to pick the contractor.

Thus, given the clear burden and cost of producing the screenshots, Plaintiffs are moving forward with developing a program to extract the audit trails in a raw format. By "raw format" we mean not the format in which the information appears in the system, because to produce it that way would require the laborious screenshotting method we discussed. We would expect the data to be in an XML format or something similar.

Best regards,
Miranda

**Miranda Means**
She/Her/Hers

**KIRKLAND & ELLIS LLP**
200 Clarendon Street, Boston, MA 02116
**T** +1 617 385 7419
**M** +1 617 320 9248

miranda.means@kirkland.com

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

# EXHIBIT 13



**Joachim B. Steinberg**
jsteinberg@crowell.com
(415) 365-7461  direct

Crowell & Moring LLP
3 Embarcadero Center
26th Floor
San Francisco, CA 94111
+1.415.986.2800  main
+1.415.986.2827  fax

February 24, 2022

**VIA E-MAIL**

Miranda Means
Kirkland & Ellis LLP
200 Clarendon Street
Boston, MA 02116
miranda.means@kirkland.com

Dear Miranda:

We write on behalf of ROSS Intelligence, Inc ("ROSS"), about Thomson Reuters
Enterprise Center GmbH and West Publishing Corporation's (collectively "Plaintiffs") response
to ROSS's Interrogatory No. 1. In our February 22, 2022 letter, we asked that you supplement
Plaintiffs' response to this and other Interrogatories by March 2, 2022. We are now in receipt of
Plaintiffs' Responses to ROSS's Interrogatories Nos. 14-21.

Based on Plaintiffs' responses to those Interrogatories,[1] Plaintiffs cannot claim that they
are unable to supplement their Response to Interrogatory No. 1, unless the Responses to
Interrogatories Nos. 14-21 lack a factual basis in contravention of the requirements of Rule 11.
We reiterate that if Plaintiffs will not supplement their response to Interrogatory No. 1 by March
2, 2022, we will move the Court to compel further responses, or in the alternative, move to limit
Plaintiffs' copyright claims to the substance set forth specifically in the complaint and the
existing Response to Interrogatory No. 1, to preclude any further identification of asserted
copyrighted content in this case and/or for discovery sanctions. Furthermore, given your obvious
ability to answer Interrogatory No. 1, as shown by your responses to Interrogatories Nos. 14-21,
you are also able to supplement and fully respond to Interrogatories Nos. 2-11. Please also
supplement these responses by March 2. If you will not supplement your responses by that date,
please provide your availability for a final meet-and-confer call on March 3, 2022.

ROSS's Interrogatory No. 21 asked you to:

> Describe in detail the complete legal and factual bases for all
> damages to which PLAINTIFFS contend they are entitled. To be
> complete, your answer must describe each category of damages to
> which PLAINTIFFS contends they are entitled (including, for
> example, reasonable royalty, lost profits, price erosion, convoyed
> or collateral sales, or any other form of damages); all theories of

---

[1] ROSS will address other deficiencies in Plaintiffs' Responses to Interrogatories Nos. 14-21 at another
time, and reserves all rights as to those responses.



recovery under each category and all factual support for each such theory; and your computation of damages under each category.

In your response to this Interrogatory, ███████████████████████████████████ ████████████████  Given that statement, you are undeniably able to fully respond to Interrogatory No. 1. If you choose not to do so, you proceed at your peril.

To assert an entitlement to damages from the 50,000 allegedly infringing memos, your response indicates that you have analyzed each memo individually and all memos collectively to determine what aspects of your registered copyrights and allegedly copyrighted "Westlaw Content" that these memos, individually and/or collectively have infringed. Otherwise, you would not have had a good-faith basis for asserting this very granular and targeted damages figure and specific damages theory in your Response. Because we assume that you had a good-faith basis for this assertion in your Response to Interrogatory No. 21, it is absolutely clear that there is no reason why you would be unable to supplement your Response to Interrogatory No. 1 by March 2, 2022.

To be more specific, given that you have already undertaken a specific copyright damages analysis regarding particular alleged Westlaw Content and specific asserted copyrights, in relation to particular accused memos and have now confirmed the same in a signed pleading submitted under Rule 11, ROSS has a right to know the basis for the copyright infringement allegations that you clearly have developed and fully are able to articulate.  Indeed, to have responded with your damages theory and figure, you must know the answers to, at least, the following non-limiting questions which are within the scope of Interrogatory No. 1:

- Are you asserting that each of the memos identified by you directly copies copyrighted "Westlaw Content" covered by registered copyrights belonging to Plaintiffs?

- If so, which specific Westlaw Content is allegedly infringed in connection with each accused memo?

- If you contend that specific Westlaw Content is allegedly infringed in connection with all or some subset of accused memos collectively, what is that content?

- Which specific registered copyright or copyrights are asserted with respect to the memos identified by you, individually?

- Which specific registered copyright or copyrights are asserted with respect to all or some subset of accused memos collectively, if you assert such a theory?

- What are the specific headnotes, if any, asserted with respect to particular memos, individually and with respect to all or some subset of accused memos collectively, if you assert either such theory?

**Crowell**

- What are the specific portions of the Key Number System that you assert with respect to particular memos, individually and with respect to all or some subset of accused memos collectively, if you assert either such theory?

- Is it your assertion that each of the memos individually copies the structure, sequence and organization of the West Key Number System?

- If so, what are the specific elements (e.g. topics, subtopics, key numbers, headnotes and/or other elements) that you allege constitute such structure, sequence and organization?

- Is it your assertion that all or some subset of accused memos collectively copies the structure, sequence and organization of the West Key Number System?

- If so, what are the specific elements (e.g. topics, subtopics, key numbers, headnotes and/or other elements) that you allege constitute such structure, sequence and organization?

Your answers must account for each of the alleged 50,000 memos that you have clearly analyzed and already formulated an infringement theory, and must account for all and/or any asserted subset of memos that you assert collectively are infringing. Moreover, your response to Interrogatory No. 21 is itself deficient, because while it alleges that Plaintiffs are entitled to damages on each of the 50,000 memos, it does not state any facts as to how each of those memos is allegedly infringing.

You clearly have formulated detailed answers to these questions, as evidenced by your response regarding damages. Each of these matters is necessarily encompassed within the scope of Interrogatory No. 1.

ROSS reserves all rights and waives none.

Very truly yours,

Joachim B. Steinberg

JBS

# EXHIBIT 14

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

200 Clarendon Street
Boston, MA 02116
United States

Miranda Means
To Call Writer Directly:
+1 617 385 7419
miranda.means@kirkland.com

+1 617 385 7500

Facsimile:
+1 617 385 7501

www.kirkland.com

March 11, 2022

**Via E-mail**

Joachim B. Steinberg
Crowell & Moring LLP
3 Embarcadero Center
26th Floor
San Francisco, CA 94111

Re:     *Thomson Reuters Enterprise Centre GmbH v. ROSS Intelligence Inc.*, C.A.
No. 20-613-LPS

Dear Mr. Steinberg:

We write in response to your February 17, 2022 letter ("ROSS's Letter") regarding
Thomson Reuters Enterprise Centre GMBH ("Thomson Reuters") and West Publishing
Corporation's ("West") (collectively, "Plaintiffs") responses to Defendant ROSS Intelligence
Inc.'s ("ROSS") Second Set of Requests for Production ("ROSS's RFPs", and each, an "RFP").

## I.     Issues Resolved by the Court's Order

At the outset, ROSS contends that the Court's Order does not apply here because ROSS's
motion to compel was denied without prejudice. That is a straw man. Plaintiffs are not arguing
that RFP Nos. 111–115, 128–129, and 131 were the subject of that Order. Rather, we are
pointing out that ROSS is making the exact same relevance arguments about these documents
that it made about related documents in its prior motion to compel. The Court already
summarily rejected these arguments. In particular, your Letter asserts that RFP Nos. 111-115,
which seek cease and desist correspondence and DMCA notices, is relevant because they go to
the "scope" of Plaintiffs' copyrights. That is precisely the argument ROSS already made to the
Court about third party settlement agreements, and that argument was rejected. Like these third
party settlement agreements, cease and desist correspondence related to other parties and, likely,
different Westlaw Content, does not have any bearing on what Plaintiffs are asserting in this
case. The risk here, as with the third party settlements that the Court refused to compel, is that
such documents will create "mini-trials," wherein the parties are litigating issues in these other
disputes, rather than the dispute at hand. Plaintiffs will not be producing these documents.

# KIRKLAND & ELLIS LLP

Joachim B. Steinberg
March 11, 2022
Page 2

With regard to RFP Nos. 128–129, which concern how Plaintiffs source judicial opinions, the Court already acknowledged, and Plaintiffs have repeatedly explained, that Plaintiffs are not claiming any rights in judicial opinions. The sourcing of such opinions is not relevant. ROSS calls this a "core" part of Plaintiffs' operations, but does not explain how it has any bearing on this litigation. Plaintiffs will not be producing these documents.

With regard to RFP No. 131, ROSS proposes limiting the request to "communications with state and federal agencies regarding the judicial opinions and Headnotes that are at issue in this litigation." Plaintiffs still do not see how the documents responsive to this request would be relevant to any of the parties' claims or defenses. Plaintiffs do not claim copyrights in judicial opinions. To the extent ROSS believes any headnotes originate from the states, rather than Plaintiffs, it is equipped to make that determination with the documents already in its possession. Requesting such communications serves no purpose, and the Court already acknowledged this very clearly in its Order.

## II. Temporal Scope

ROSS asserts that all Plaintiffs' objections as to temporal scope are inappropriate, but again fails to provide any specific RFPs where an unlimited or 20-year-long temporal scope is necessary. Moreover, ROSS fails to identify any RFPs for which Plaintiffs' production has been deficient due to exclusion of documents based on temporal scope. If ROSS can explain which responses are deficient or what documents it thinks it is missing, Plaintiffs will consider the Request, but Plaintiffs will not agree to drop all of their temporal scope objections based on ROSS's generalized assertions.

## III. Plaintiffs' Responses and Objections to Specific RFPs

1. <u>Creation of *Google v. Oracle* Headnotes</u>

ROSS's RFP No. 118 requests "DOCUMENTS sufficient to show the creation of the HEADNOTES assigned to the Supreme Court's decision in *Google LLC v. Oracle America, Inc.*, 593 U.S. ___ (2021)" (with a suggested revision in ROSS's February 17, 2022 letter to seek such documents for *Bristol-Myers Squibb Co. v. Superior Ct. of California*, 582 U.S. ___, 137 S. Ct. 1773 (2017) instead). ROSS's January 12, 2022 letter describes this RFP as seeking documents on "Plaintiffs' process for creating, drafting, and assigning Headnotes and whether any part of that process is automated or mere copying and/or word-swapping." Plaintiffs have already produced documents showing the process by which the West Headnotes are created. Nonetheless, Plaintiffs have investigated further, and to the extent ROSS is seeking documents showing how individual headnotes in *Google LLC v. Oracle America, Inc.*, are revised and edited by attorney editors, such information appears in an "audit trail" that is incredibly burdensome to produce and not exportable. To be able to produce it, Plaintiffs would need to

# KIRKLAND & ELLIS LLP

Joachim B. Steinberg
March 11, 2022
Page 3

have someone go into their system and copy the information manually, and such a burdensome process is not proportional to the needs of the case, particularly given that the *Google* case was issued after the events in this case transpired.  That said, if ROSS will agree that the only audit trail it will seek in discovery is in connection with *Google LLC v. Oracle America, Inc.*, 593 U.S. ___ (2021), we will endeavor to produce that audit trail.

2.     Search Functionality and Value

In RFP Nos. 132–135, ROSS has requested documents sufficient to explain how the Westlaw Boolean and natural language search functions operate, as well as the financial value of such search functions.  Although Plaintiffs dispute the relevance of such documents, they have already produced TR-0884952-TR-0884970, which explains Westlaw's Boolean and natural language search functionality.  Plaintiffs have also produced documents showing the value of the Westlaw platform and Westlaw Content, which are cited in their responses to Plaintiffs' Third Set of Interrogatories.  *See* Plaintiffs' Responses and Objections to ROSS's Third Set of Interrogatories, at 18.  If ROSS can explain what documents it is seeking beyond what Plaintiffs have already produced, Plaintiffs will consider the request.

In RFP No. 136, ROSS requests "DOCUMENTS sufficient to identify the average frequency of use of the KEY NUMBER SYSTEM by YOUR LICENSEES from 2011 to present."  ROSS's letter does not explain how such documents would be relevant to the value of Plaintiffs' copyrights.  Regardless, Plaintiffs have investigated and are having trouble locating documents that would provide this information because it is unclear what "use of the KEY NUMBER SYSTEM" means here.  There are lots of ways a customer can use the Key Numbers, including in ways that Plaintiffs would not be able to measure or track.  For example, a user could choose to read the Headnotes and associated Key Numbers at the top of the case, and Plaintiffs would not know the customer had done so.  Can you explain further what specific information ROSS is looking for here, so that we may investigate whether it exists?

3.     Documents Responsive to RFP Nos. 96–99

ROSS asserts that it cannot identify any documents that are responsive to RFP Nos. 96–99 in Plaintiffs' production.

Plaintiffs have already produced the documents they agreed to produce in response to each of these RFPs.[1]  In particular, Plaintiffs have produced the cases with the Westlaw

---

[1]     Plaintiffs agreed to produce the following documents: for RFP No. 96, "Plaintiffs state that they will produce relevant, non-privileged responsive documents showing Plaintiffs' content that Defendant used that are located after a reasonably diligent search, if any"; for RFP No. 97, "Plaintiffs state that they will produce relevant, non-privileged responsive documents showing Defendant's use of Plaintiffs' content that are located after a reasonably diligent search, if any"; for  RFP No. 98, "Plaintiffs state that they will produce relevant, non-

# KIRKLAND & ELLIS LLP

Joachim B. Steinberg
March 11, 2022
Page 4

Headnotes and linked Key Numbers that were copied by LegalEase, distributed to ROSS through the memos that LegalEase created, and used by ROSS to train its platform.  Of course, most documents showing ROSS's use of Westlaw content would be in ROSS's possession already.  It is therefore unclear what further documents ROSS believes Plaintiffs possess and have not produced that would fall within the scope of what Plaintiffs agreed to produce.  Can you explain what you think is missing?

*      *      *

The foregoing is not intended to be a full and complete recitation of Plaintiffs' position with respect to any discovery issues.  Plaintiffs hereby expressly reserve, and do not waive, all of their rights and remedies in connection with these issues.

Sincerely,

Miranda Means

---

privileged responsive documents showing Defendant's use of Plaintiffs' content that are located after a reasonably diligent search, if any;"; and for RFP No. 99, "Plaintiffs state that they will produce relevant, non-privileged responsive documents showing Defendant's use of the WKNS that are located after a reasonably diligent search, if any."

# EXHIBIT 15

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT 16



**Joachim B. Steinberg**
jsteinberg@crowell.com
(415) 365-7461  direct

Crowell & Moring LLP
3 Embarcadero Center
26th Floor
San Francisco, CA 94111
+1.415.986.2800  main
+1.415.986.2827  fax

April 21, 2022, 10:41 PM PT

Miranda Means
Kirkland & Ellis LLP
200 Clarendon Street
Boston, MA 02116
miranda.means@kirkland.com

Re:   *Thomson Reuters Enterprise Centre GmbH v. ROSS Intelligence Inc.*, Case No. 20-613-LPS, Plaintiffs' Responses to the Second Set of Requests for Production – Audit Trail Request Only

Dear Miranda:

We write on behalf of ROSS Intelligence, Inc. ("ROSS") in response to the portion of Plaintiffs Thomson Reuters Enterprise Center GmbH and West Publishing Corporation's (collectively "Plaintiffs") letter dated April 21, 2022 ("April 21 Letter"), regarding the audit trail for headnotes requested by ROSS in Request for Production Nos. 143-149.  ROSS requests a final meet-and-confer on this topic for the week of April 25, 2022.[1]

Plaintiffs have refused to produce the audit trails for headnotes because Plaintiffs contend that "the audit trails are unnecessary" for determining whether "the Westlaw headnotes are creative."  April 21 Letter, at 2.  However, ROSS is entitled to challenge this statement.

And ROSS has a good faith basis for seeking to challenge this assertion.



*See* TR-0002864.

*Id*; *see also id.*

ROSS has also identified documents which show the relevance of the audit trails to determining whether the headnotes are creative and original.  *See* J. Steinberg letter dated April 11, 2022, at 3 (citing TR-0036336 at -39) ("April 11 Letter").  For example, the document at Bates no. TR-0036339                                                                              *See* TR-0036339 at -39.  ROSS is entitled to investigate the audit trails to determine

---

[1] ROSS is still reviewing the remaining responses in the April 21 Letter, and will send a separate letter in regards to those responses.

**C** Crowell

███████████████████████████████████████████
█████████████████ .

Against the backdrop of these materials, ROSS certainly need not accept the assertion that headnotes are creative. In any case, the audits will show that or not. And thus, the audit trails for the allegedly infringed headnotes are discoverable.

Given this, Plaintiffs' claim that ROSS is misconstruing testimony is beside the point as the documents produced by Plaintiffs provides a sufficient basis for ROSS's request. April 21 Letter, at 2.

In any case, it is not true that ROSS mischaracterizes the testimony relevant to this issue.



Finally, Plaintiffs have refused to produce the audit trails because they are not "easily producible," *see* April 21 Letter, at 4, and because "Plaintiffs would need to have someone go into their system and copy the information manually," *see* M. Means Letter, dated March 11, 2022. Plaintiffs have provided no greater specificity about the burden that would be required to produce the audit trails for the allegedly infringed headnotes. But courts do not accept burden arguments as a basis for refusing to comply with discovery requests unless specific evidence describing the burden is provided. *See e.g.*, *Barnum v. Equifax Info. Servs., LLC*, 2018 U.S. Dist. LEXIS 39424, *4 (D. Nev. Mar. 9, 2018) ("As a result, it has long been clear that a party claiming that discovery imposes an undue burden must allege specific facts which indicate the nature and extent of the burden, usually by affidavit or other reliable evidence.") (citing *Jackson v. Montgomery Ward & Co.*, 173 F.R.D. 524, 529 (D. Nev. 1997)).

Moreover, Plaintiffs' burden argument must be weighed against the relevance of the material to the litigation. *See* Fed. R. Civ. P. 26(b)(1) (a party must produce relevant, non-privileged material, considering "whether the burden or expense of the proposed discovery outweighs its likely benefit."). ████████████████████
████████████████████████ *See* Plaintiffs and Counterdefendants' Thomson Reuters Enterprise Centre GmbH and West Publishing Corporation's Second Supplemental Responses and Objections to Defendant and Counterclaimant ROSS Intelligence Inc.'s Interrogatory No. 1, at 33 n. 2 ████████████████████
████████████████████████ ("Plaintiffs' Second Supplemental Response to Interrogatory No. 1"); *see also* Plaintiffs and Counterdefendants' Thomson Reuters Enterprise Centre GmbH and West Publishing Corporation's First Supplemental Responses and Objections to Defendant and Counterclaimant ROSS Intelligence Inc.'s Interrogatory No. 21, at 23 ████████████████████



The copyrightability of the allegedly infringed headnotes is directly relevant to determining whether ROSS willfully or negligently infringed Plaintiffs' copyrights, and audit trails for the headnotes are plainly relevant to determining whether the headnotes are copyrightable. The importance of defending against a multi-billion-dollar infringement claim outweighs the vague and generalized burden on Plaintiffs. *See e.g.*, *Vesta Corp. v. Amdocs Mgmt.*, 2017 U.S. Dist. LEXIS 25898, *9 (D. Or. Feb. 21, 2017) ("The Court finds that Plaintiff's discovery request is proportional to the needs of the case. Defendants do not persuade the Court that the burden or expense of proposed discovery outweighs its likely benefit, given the significant resources of the parties and the high amount of damages alleged by Plaintiff.").

Plaintiffs have offered to produce the audit trails from a subset of headnotes. But the only material "subset" is each headnote that Plaintiffs' allege ROSS infringed. If Plaintiffs cannot identify those headnotes, then they have no basis for their claims of statutory damages. If they can identify those headnotes, then they must produce the audit trails for each of them.

\* \* \*

ROSS is available for a final meet-and-confer on this issue immediately. Please let us know your availability as soon as possible. ROSS reserves all rights and waives none.

Very truly yours,

Joachim B. Steinberg

# EXHIBIT 17

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

200 Clarendon Street
Boston, MA 02116
United States

Miranda Means
To Call Writer Directly:
+1 617 385 7419
miranda.means@kirkland.com

+1 617 385 7500

Facsimile:
+1 617 385 7501

www.kirkland.com

May 20, 2022

**Via Email**

Joachim B. Steinberg
Crowell & Moring LLP
3 Embarcadero Center
26th Floor
San Francisco, CA 94111
jsteinberg@crowell.com

Re:     *Thomson Reuters Enterprise Centre GmbH et al. v. Ross Intelligence, Inc.*,
Case No. 20 Civ. 613 (D. Del.)

Dear Joachim,

We write in response to your letters of April 21, 2022 (the "April 21 Letter") and April 22, 2022 (the "April 22 Letter") concerning the production of audit trails for the headnotes that ROSS copied.

1.     **Burden of Producing the Audit Trails**

ROSS' April 21 Letter questions the burden of providing audit trails for all of the headnotes that ROSS copied (e.g., at least 25,000 headnotes to create the bulk memos and far more than that in all of the cases that LegalEase copied without the benefit of a license).[1] To be clear, in the interest of reaching a compromise on this issue, Plaintiffs have already thoroughly investigated whether it is possible to produce such audit trails, and have explained the burden to ROSS. The audit trails are located within Plaintiffs' internal software. To access them, the audit trails need to be separately opened within that software—**they cannot be exported**.[2] As a result,

---

[1] ROSS asserts that it seeks audit trails "solely" for the Westlaw content it allegedly infringed, as though this decreases the burden on Plaintiffs. *See* April 22 Letter at 1. Given ROSS' extensive copying, this purported "limitation" is toothless.

[2] The fact that the audit trails are electronic does not make them easy to produce, as Plaintiffs' second letter on this subject implies, *see* April 22 Letter at 1-2, because they are not exportable. Further, in both Letters, ROSS cites *Barnum v. Equifax Info. Servs., LLC*, No. 2:16 Civ. 02866, 2018 WL 1245492 (D. Nev. Mar. 9, 2018), to state that a party claiming undue burden must allege specific facts to explain that burden. The *Barnum* court

## KIRKLAND & ELLIS LLP

May 20, 2022
Page 2

based on Plaintiffs' investigation, the only way to produce the audit trails to ROSS would be to have someone go into Plaintiffs' system, search for each individual headnote, screenshot images of the audit trails (some of which have several pages), copy those images into a document, and produce that document.  For even one or two audit trails, this is a time consuming endeavor.  To capture an entire audit trail for a single headnote can require 80 or more screenshots and clicking through dozens of pages.

Plaintiffs have estimated that it would take roughly 15–20 minutes to capture certain limited audit trail information (headnote text and key number changes) for a single headnote. That means it would take, **at minimum, 6,250 hours to 8,333 hours** to capture limited audit trail information for 25,000 headnotes using this method.  Although not all headnotes have audit trails, Plaintiffs would still need to run searches to make the determination as to which do and which do not, and the number of audit trails that Plaintiffs would need to screen capture could still number in the thousands to tens of thousands even assuming Plaintiffs are able to narrow down the pool.[3]  Even if only a quarter of the copied headnotes have audit trails, Plaintiffs would still estimate that it would take, at minimum, over a thousand hours to capture limited audit trail information.  This is not to mention the time it would take to capture the entire audit trail, which would be significantly longer.[4]

### 2.  **ROSS' Purported Need for the Audit Trails**

ROSS has not shown that its need for the audit trails outweighs the significant burden of manually capturing and producing them.  ROSS' primary claim for the relevance of the audit trails is its baseless assertion that the headnotes are "copy-pasted" from judicial opinions.  ROSS seems to believe that the audit trails will prove up this claim,[5]  but that argument rests on a

---

found that Equifax had met this standard because it filed a declaration explaining that the discovery requested would require review of millions of files.  The Court thus denied the request to compel.  Likewise, here, Plaintiffs are able to state specific facts showing why the discovery requested by ROSS is unduly burdensome.

[3]  ROSS' April 22 Letter asks for clarification of whether there is a separate "classification trail" in addition to the audit trails showing the creation of the headnotes.  To the extent ROSS is looking for information on how the West Key Number(s) was assigned to the headnote, that information is contained in the audit trail.

[4]  Indeed, ROSS' reliance on *Eagle Air Med Corp. v. Sentinel Air Med. Alliance* in the April 22 Letter is inapposite because in that case the court found the discovery sought to be both relevant *and* the cost of such discovery to be "de minimis."  No. 2:18 Civ. 680, 2019 WL 2028511, at *4 (D. Nev. May 7, 2019).  Here, the thousands of hours of work involved in extracting the discovery sought alone distinguishes this case.

[5]  ███████████████████████████████████████████████████████████

# KIRKLAND & ELLIS LLP

May 20, 2022
Page 3

misunderstanding of the testimony of Laurie Oliver and an evident misapprehension of what is actually in the audit trails.  In particular, ROSS seems to believe that the audit trails will show whether an attorney-editor created a headnote by selecting text from the judicial opinion and using it to create a headnote.  ████████████████████████████████████████████████ ██████████████████████████████████████████ . *See* TR-0532236–373. ████████████████████████████████████████████████ Oliver Dep. Tr. 115:23–116:6, Furthermore, Plaintiffs have separately confirmed that there is in fact no way to know for certain if that inference is correct based on the information provided in the audit trails.

Nor will the audit trails show JCare assigning key numbers to headnotes, as ROSS suggests.  As Plaintiffs have repeatedly stated, and ROSS has never actually addressed in any of its capacious letters, ████████████████████████████████████████████████

ROSS' claim to be prejudiced is meritless.  ROSS has all of the headnotes and judicial opinions at issue in its possession, as well as extensive documentation showing just how the headnotes were created.  If it wishes to compare the headnotes to the judicial opinions, it can readily do so because it has access to both.[6]  If it wants to argue that the headnotes are too similar to the judicial opinions to be protectable, it can compare them and try to make that argument.  The audit trails will do nothing to elucidate that argument, because they cannot show definitively one way or the other whether a headnote was initiated by selecting text from the judicial opinion.

---

████████████████████████████████████████████████ . *See* TR-0002864. ████████████████████████████████████████████████

[6] ████████████████████████████████████████████████ citing *Vesta Corp. v. Amdocs Mgmt.*, No. 3:14 Civ. 01142, 2017 WL 714354 (D. Or. Feb 21, 2017).  In that case, however, the discovery sought by plaintiffs was the very source code that they alleged defendants copied - the benefit to plaintiffs in proving their misappropriation claim was thus clear.  Here, nothing supports the notion that ROSS will benefit in any way by the production it seeks, regardless of the amount in controversy.  Moreover, given that ROSS claims to have no money to satisfy a judgment in this case, it would seem that the amount of the judgment will not be material to ROSS' prejudice.  If ROSS has more than a million dollars in cash-on-hand, please produce a document or documents reflecting that amount.

# KIRKLAND & ELLIS LLP

May 20, 2022
Page 4

* * *

Thus far, ROSS has shown no interest in meeting Plaintiffs halfway on this issue. Indeed, Plaintiffs had previously offered to produce an example for ROSS to show what the audit trails look like and what information they contain (which would have helped ROSS understand why certain information it is seeking is not even contained in the audit trails), but Plaintiffs never even received a response from ROSS on their offer.

That said, Plaintiffs are committed to attempting to find reasonable solutions to these disputes so as to avoid burdening the Court with unnecessary motion practice. As a result, Plaintiffs would propose developing a program, at ROSS' expense, to gather audit information from the headnotes at issue in this litigation. Such data would be produced in a raw format, not in the format in which it appears in Plaintiffs' systems, as the latter would require the laborious screenshotting method described above. To be clear, such a program does not currently exist, so it would require development. If ROSS is prepared to bear that expense, please let us know.

As always, Plaintiffs reserve all rights and waive none.

Sincerely,

Miranda Means

# EXHIBIT 18

**Saber, Anna**

| | |
|---|---|
| **From:** | Steinberg, Joachim |
| **Sent:** | Monday, May 23, 2022 9:32 AM |
| **To:** | Means, Miranda; *sobyrne@potteranderson.com; *dmoore@Potteranderson.com1; ROSS Lit Team |
| **Cc:** | #Thomson-Ross |
| **Subject:** | RE: D.Del. 1:20-cv-00613-LPS Thomson Reuters Enterprise Centre GmbH et al v. ROSS - Service - Letter |

Miranda,

Thank you for your May 20, 2022 letter about audit trails. At the end of that letter, you suggest that Plaintiffs would be willing to produce the audit trails if ROSS pays to develop a program to gather them. ROSS is willing to discuss this option but has a few preliminary questions.

First, we would like to clarify whether your proposal is for Plaintiffs to develop this program themselves. If that's the case, please let us know how much you believe it would cost. ROSS may believe that it would make sense for a neutral third party to be engaged to create any program, especially if ROSS is bearing all of the costs of development. And we would need to know what the cost of development would be in any event.

Second, your letter says that "data would be produced in a raw format." What kind of format are you anticipating exporting the information in? Presumably, if a program is being developed from scratch, we would have some ability to determine what the outputs of that program would be. We would also want to ensure that it is produced in a format that we could access.

Third, we are not sure we understand how you calculated the length of time that would be needed to capture and produce the audit trails. Do the hours calculations you include account for the time needed to "search" to identify which headnotes have audit trails? We would think that if Plaintiffs can identify which headnotes they allege that ROSS infringed, Plaintiffs would know, at the very least, which ones have audit trails, which should substantially cut down that hours calculation.

Fourth, have Plaintiffs calculated the approximate cost of the production described if done using screenshots? Based on your description, that does not appear to be work that needs to be done by lawyers, and may be possible using substantially cheaper hourly rates. ROSS would like to compare the relative cost of that process to the development of any program before committing to either approach.

Please let me know if it would be helpful to discuss any of these questions and a few times that would work for you.

Kind regards,
Joachim

**Joachim B. Steinberg**
Pronouns: he/him/his
Crowell & Moring LLP
jsteinberg@crowell.com
+1.415.365.7461 direct  |  +1.917.575.6244 mobile

---

**From:** Means, Miranda <miranda.means@kirkland.com>
**Sent:** Friday, May 20, 2022 4:07 PM
**To:** Steinberg, Joachim <JSteinberg@crowell.com>; *sobyrne@potteranderson.com <sobyrne@potteranderson.com>;

*dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; ROSS Lit Team <Rosslitteam@crowell.com>
**Cc:** #Thomson-Ross <thomson-ross@kirkland.com>
**Subject:** D.Del. 1:20-cv-00613-LPS Thomson Reuters Enterprise Centre GmbH et al v. ROSS - Service - Letter

External Email

Counsel,

Please see attached.

Best regards,
Miranda

**Miranda Means**
She/Her/Hers

**KIRKLAND & ELLIS LLP**
200 Clarendon Street, Boston, MA 02116
**T**  +1 617 385 7419
**M** +1 617 320 9248

miranda.means@kirkland.com

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

# EXHIBIT 19

## Saber, Anna

| | |
|---|---|
| **From:** | Steinberg, Joachim |
| **Sent:** | Tuesday, June 28, 2022 6:03 PM |
| **To:** | Means, Miranda |
| **Cc:** | ROSS Lit Team; #Thomson-Ross; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; *dmoore@Potteranderson.com1; *bpalapura@potteranderson.com |
| **Subject:** | RE: Thomson Reuters v. ROSS - Audit Trails |
| **Attachments:** | Joint Letter to Court (RFP 118, 128, 129, 131, 136, 143-149)(906718718.1).docx |

Miranda,

Thank you for this information. We are still not sure if this proposal is acceptable to us, because we are still unclear on when Plaintiffs would be able to produce the audit trails, what format the audit trails would be produced in, and whether that format would be accessible or understandable absent a deposition. While we are still willing to discuss this further, crucial deadlines in this case are approaching very quickly. Based on the Court's order directing the parties to file a single discovery motion "addressing all pending discovery disputes," we have drafted a joint letter informing the Court that we intend to include the following topics: (1) audit trails (RFP 118, 143-149), (2) usage statistics (RFP 136), and (3) judicial opinion sourcing documents (RFP 128, 129, 131).  The parties have met and conferred on these topics several times and have not resolved these issues, and we think it is thus appropriate to include them in the discovery motion to be filed on July 11.  Please let us know if you consent to the filing of this letter by Thursday, June 30th, so we can advise the Court well in advance of the July 11 filing. If we can reach a resolution on the audit trails (or any other issues) before then, we can update the Court that the issue has been resolved.

For the audit trails, when do you think you could produce these materials in the "raw format," which would allow us to determine if such a production was adequate? Unless it could be completed sometime before July 8, we think we would have to involve the Court on this issue.

Kind regards,
Joachim

**Joachim B. Steinberg**
Pronouns: he/him/his
Crowell & Moring LLP
jsteinberg@crowell.com
+1.415.365.7461 direct  |  +1.917.575.6244 mobile

**From:** Means, Miranda <miranda.means@kirkland.com>
**Sent:** Tuesday, June 28, 2022 3:50 PM
**To:** Steinberg, Joachim <JSteinberg@crowell.com>
**Cc:** ROSS Lit Team <Rosslitteam@crowell.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** Thomson Reuters v. ROSS - Audit Trails

External Email

Dear Joachim,

We are writing in response to your letter of May 20, 2022 concerning the audit trails.  **First**, our calculated length of time needed to capture the audit trails does **not** take into account searching time.  This is just our estimate for how long it would take to click through and capture the screenshots.  Therefore, this hours estimate is conservative.  Moreover, it does not follow that just because Plaintiffs can identify the headnotes ROSS copied, they must know which headnotes have audit trails.  Some headnotes have audit trails, some do not.  Whether a headnote has an audit trail is a separate question from whether ROSS copied that headnote.

**Second**, Plaintiffs do not know the approximate cost of it being done using screenshots, but as we detailed in our letter, we expect that the process would be very expensive, given the hours calculation.  It would be expensive regardless of whether the parties use an outside contractor.  Even conservatively assuming an hourly rate for an outside contractor of $15.00 an hour, the project would potentially cost around $100,000 or more.  Moreover, we think this process would need to be done by someone at Thomson Reuters who knows the system.  Having an outside contractor do it would require having the contractor trained in the Thomson Reuters system, which still takes hours away from Thomson Reuters' employees, and the contractor would have to go through security measures and set up.  Given the security risks and extensive access to Thomson Reuters' system that would be required, Thomson Reuters would need to pick the contractor.

Thus, given the clear burden and cost of producing the screenshots, Plaintiffs are moving forward with developing a program to extract the audit trails in a raw format.  By "raw format" we mean not the format in which the information appears in the system, because to produce it that way would require the laborious screenshotting method we discussed.  We would expect the data to be in an XML format or something similar.

Best regards,
Miranda

**Miranda Means**
She/Her/Hers
_____

**KIRKLAND & ELLIS LLP**
200 Clarendon Street, Boston, MA 02116
**T**  +1 617 385 7419
**M** +1 617 320 9248
_____

miranda.means@kirkland.com

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

# EXHIBIT 20

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

# EXHIBIT 21

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

# EXHIBIT 22

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

Miranda Means
To Call Writer Directly:
+1 617 385 7419
miranda.means@kirkland.com

200 Clarendon Street
Boston, MA 02116
United States

+1 617 385 7500

www.kirkland.com

Facsimile:
+1 617 385 7501

May 11, 2022

**By E-mail**

Joachim Steinberg
Crowell & Moring LLP
3 Embarcadero Center
26th Floor
San Francisco, CA 94111

       Re:    *Thomson Reuters Enter. Centre GmbH v. ROSS Intelligence Inc.*, No. 20
                Civ. 613 (C.D. Del.)

Dear Joachim,

We write in response to ROSS Intelligence, Inc.'s ("ROSS") letter of April 18, 2022 (the "Letter"), regarding Thomson Reuters Enterprise Center GmbH and West Publishing Corporation's (collectively, "Plaintiffs") responses to ROSS' Second Set of Requests for Production ("RFPs"), which asserts that Plaintiffs have not produced sufficient documents in response to ROSS' RFP Nos. 100, 101, 123, 124, 125, 126, and 141. Plaintiffs disagree.

Rather than identifying specific documents to which it believes it is entitled or proposing solutions for resolving the parties' discovery disputes, ROSS' complaint appears actually to be that it disagrees with Plaintiffs' damages theory. Such disagreement is not a basis to claim that Plaintiffs' production is insufficient.

Moreover, Plaintiffs did not agree to produce all documents responsive to ROSS' requests. Rather, subject to their objections, Plaintiffs agreed to produce the following: documents showing Plaintiffs' harm from Defendant's conduct, RFP Nos. 100, 101, and 141; documents that Plaintiffs will rely on in support of their claims or defenses, RFP No. 102; documents sufficient to show the value of West Headnotes, RFP No. 123; documents sufficient to show the value of Plaintiffs' content that Defendant copied, RFP No. 124; and documents sufficient to show the value of the WKNS, RFP Nos. 125 and 126. Plaintiffs have done so. To the extent ROSS now wants documents that it did not ask for during fact discovery or that Plaintiffs did not agree to produce, ROSS' requests are out of time. Nevertheless, we discuss each set of requests below.

## KIRKLAND & ELLIS LLP

Joachim B. Steinberg
May 11, 2022
Page 2

    (a)    **Plaintiffs Produced Documents Sufficient to Show the Value of West Headnotes and West Key Numbers**

As an initial matter, ROSS asserts that Plaintiffs have not produced documents sufficient to show the "financial value" of the West Headnotes, West Key Number System, or Westlaw Content that ROSS copied. This is not true.[1]

In particular, Plaintiffs provided a robust spreadsheet that shows the amount of content that LegalEase used on Westlaw during the relevant period when it was creating memos for ROSS, LegalEase's subscription costs, the pro forma value of the content taken, the number of hours spent on Westlaw by LegalEase's employees, and more. *See* TR-0836004. Plaintiffs also provided a document that shows how content accessed outside of a subscription is priced. *See* TR-0894151. They further produced a second spreadsheet that shows Plaintiffs' investment in the Westlaw platform, including investments related to the West Key Number System. *See* TR-0908447. Together, these documents clearly show the value of the content that ROSS copied and the losses that Plaintiffs incurred due to ROSS' failure to pay the price of this content. *See* Pls.' 1st Supp. Resp. to ROSS' 3d Interrog. Nos. 19–21.

Although these documents alone would have been sufficient, Plaintiffs have produced additional documents showing the value of the WKNS and West Headnotes. *See* TR-0179887; TR-0179889; TR-0179885; TR-0179877; TR-0179884; TR-0179863–TR-0179866; TR-0179838–TR-0179842; TR-0179876; TR-0179830–TR-0179837; TR-0179867–TR-0179869; TR-0179843–TR-0179846. ROSS' own documents and testimony also show the value of the content that ROSS copied from Plaintiffs. ████████████████████████████████████████████████████████████████ ███████████████████████ hafik Rough Tr. 118:17–119:09. These 25,000 memos were created by copying Westlaw Content, in particular West Headnotes and sections of the West Key Number System.

ROSS asserts that the documents that Plaintiffs have identified do not "even mention headnotes or the key number system." Letter at 5. That too is simply not true. ██████████ ████████████████████████████████████████████████████████████████████ Many other documents, including some of the ones identified above, show the value of West Headnotes and WKNS to Plaintiffs and their users—indeed, some of ROSS' own customers describe how valuable they are and suggest that ROSS adopt a similar feature. *See* ROSS-003343202 ████████████████████████████ ROSS-003598768 ████████████████████████████████████████████████████ Similarly, ROSS' own

---

[1]    To the extent ROSS incorrectly avers that the total *number* of documents produced in response to these RFPs is low, Letter at 4, that argument is irrelevant. Indeed, ROSS has produced millions of documents in this litigation containing little or no responsive information whatsoever, proving that quantity does not always equal quality. When the substance of the documents that Plaintiffs have produced is actually examined, as discussed below, Plaintiffs' production is clearly sufficient.

## KIRKLAND & ELLIS LLP

Joachim B. Steinberg
May 11, 2022
Page 3

witness, Tomas van der Heijden, speaking as ROSS' 30(b)(6) witness, ███████████
███████████████████████████ Van der Heijden Dep. Tr. 319:7–8.

ROSS goes on to say that "[n]o one could deduce a per-headnote price, or even a global pricing for the use of the headnotes or key number system" from the documents that Plaintiffs identified. Letter at 5. And it asserts that the documents produced do not "identify" the specific West Headnotes and Key Numbers infringed. *Id.* This is perplexing. As ROSS knows, Westlaw Headnotes and Key Numbers are provided as editorial enhancements to case law, and therefore the price thereof is based on a user's access to that case law. This pricing is laid out clearly in the pricing guidelines that Plaintiffs have produced. What more is ROSS looking for here?

ROSS' argument that the Pricing Guidelines for Corporate Plans document, TR-0894151, cannot show the financial value of Westlaw content because customers are sometimes given certain discounts also falls flat. Letter at 5. ███████████████████████████
███████████████████ *See* Pls.' Resp. to ROSS' 1st RFAs Nos. 128 and 129. In any case, Plaintiffs have produced Thomson Reuters' discounting policy. *See e.g.*, TR-0908944.

### (b)    Plaintiffs Produced Documents Sufficient to Show Plaintiffs' Harm

As detailed above, Plaintiffs have produced extensive documentation of the harm that Plaintiffs have incurred due to ROSS' infringement of Westlaw Content. For example, a spreadsheet shows the amount of content that LegalEase used on Westlaw during the relevant period when it was creating memos for ROSS, LegalEase's subscription costs, and the pro forma value of the content taken. TR-0836004. Another document shows how content accessed outside of a subscription is priced. TR-0894151. These documents show Plaintiffs' losses from the misappropriation of Westlaw Content. *See* Pls.' 1st Supp. Resp. to ROSS' 3d Interrog. No. 21. ███████████████████████████████████████████
███████████████████████████████ TR-0521595.

ROSS nevertheless claims that none of the documents Plaintiffs have produced show the harm to Plaintiffs caused by ROSS. It asserts that the pro forma value of the Westlaw Content cannot show harm to Plaintiffs because "Mark Hoffman testified that he is not aware of a single user who has entered a subscription to pay for Westlaw based on the pro forma prices described in Exhibit F." Letter at 6. Although ROSS may disagree with this method of measuring harm, that does not make Plaintiffs' document production inadequate or incomplete. Putting that aside, it is also a gross mischaracterization of the testimony. ███████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████ Indeed, a robust spreadsheet shows that *LegalEase* paid the pro forma value of some content accessed outside of its subscription plan. TR-0836004.

## KIRKLAND & ELLIS LLP

Joachim B. Steinberg
May 11, 2022
Page 4

ROSS' own documents also show Plaintiffs' harm as a result of ROSS' infringement. *See* Pls.' 1st Supp. Resp. to ROSS' 3d Interrog. No. 21. ROSS' production shows that ROSS was attempting to emulate Westlaw features to lure Plaintiffs' users away, and LegalEase and ROSS have both produced documents showing the extent of LegalEase's copying of Plaintiffs' content and the value that it provided to ROSS in the form of training data. ROSS' 30(b)(6) witness on its finances agreed that ROSS ███████████████████████████ Shafik Rough Tr. 101:14–105 ███████████████████████████████████████████████████
███████████

     (c)    **ROSS' Speculation on the Contents of Plaintiffs' Documents Is Not a Basis for Further Production**

ROSS' attempt to identify a document that it believes would be responsive to its requests is speculative at best. ROSS argues that Plaintiffs must have assessed the value of the West Headnotes and the WKNS, ███████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████ Letter at 6 (citing TR-0358927 ████████████████████████████████████████████ TR-0358948). Yet, ROSS is merely guessing on what documents showing operating expenses might contain, and Plaintiffs are not required to produce documents in response to a fishing expedition just to prove to ROSS that they do not contain the information that ROSS supposes.

***

ROSS' arguments all amount to the same thing: ROSS disagrees with Plaintiffs' valuation of their content and their harm. A disagreement over whether Plaintiffs documents and other discovery responses can prove what Plaintiffs say they do means that the parties are likely to dispute damages at summary judgment and at trial, not that Plaintiffs' productions are inadequate.

Needless to say, Plaintiffs disagree with ROSS' assertions that they have not fulfilled their discovery obligations, and will not produce further documents related to these topics.

Sincerely,

Miranda Means

# EXHIBIT 23



**Joachim B. Steinberg**
jsteinberg@crowell.com
(415) 365-7461 direct

Crowell & Moring LLP
3 Embarcadero Center
26th Floor
San Francisco, CA 94111
+1.415.986.2800 main
+1.415.986.2827 fax

April 18, 2022

Miranda Means
Kirkland & Ellis LLP
200 Clarendon Street
Boston, MA 02116
miranda.means@kirkland.com

Re:    *Thomson Reuters Enterprise Centre GmbH v. ROSS Intelligence Inc.*, Case No. 20-613-
       LPS, Plaintiffs' Responses to RFPs 100, 101, 102, 123, 124, 125, 126, and 141

Dear Miranda:

       We write on behalf of ROSS Intelligence, Inc. ("ROSS") in response to Plaintiffs
Thomson Reuters Enterprise Center GmbH and West Publishing Corporation's (collectively
"Plaintiffs") production of documents in response to Request for Production ("RFP") Nos. 100,
101, 102, 123, 124, 125, 126, and 141.  Plaintiffs have agreed to produce documents in response
to these requests.  However, to date, Plaintiffs have produced only five documents responsive to
RFP Nos. 100-101, 123-126, and 141.  ROSS demands that Plaintiffs supplement their
production of documents in response to RFP Nos. 100-101, 123-126, and 141.

**I.    Plaintiffs Agreed to Produce Documents in Response to RFP Nos. 100, 101, 102, 123,
       124, 125, 126, and 141.**

       ROSS served its First Set of RFPs eleven months ago, on May 12, 2021.  *See* Exhibit A
(Excerpts from Defendant/Counterclaimant ROSS Intelligence, Inc.'s First Set of Requests for
Production (Nos. 1-103)).  This first set included:

       **RFP No. 100**:  All DOCUMENTS and COMMUNICATIONS
       which mention, discuss, or refer to any damages, injuries, or harms
       YOU claim to have suffered as a result of ROSS's alleged
       copyright infringement alleged in YOUR COMPLAINT, or that
       support the damages or other relief YOU seek in YOUR copyright
       infringement claim

       **RFP No. 101**:  All DOCUMENTS and COMMUNICATIONS
       which mention, discuss, or refer to any damages, injuries, or harms
       YOU claim to have suffered as a result of ROSS's alleged tortious
       interference alleged in YOUR COMPLAINT, or that support the
       damages or other relief YOU seek in YOUR tortious interference
       claim.

**Crowell**

**RFP No. 102**: All DOCUMENTS and COMMUNICATIONS that
RELATE TO YOUR claims, including but not limited to all
DOCUMENTS and COMMUNICATIONS that YOU will rely on
in support of any of YOUR claims and defenses in this action.

On July 12, 2021, Plaintiffs responded to ROSS' First Set of RFPs. *See* Exhibit B (Excerpts
from Plaintiffs Thomson Reuters Enterprise Centre GmbH and West Publishing Corporation's
Responses and Objections to Defendant and Counterclaimant ROSS Intelligence, Inc.'s First Set
of Requests for Production (Nos. 1-103)). In response to both RFP Nos. 100 and 101, Plaintiffs
said that they would "produce relevant, non-privileged responsive documents showing Plaintiffs'
harm from Defendant's conduct that are located after a reasonably diligent search, if any." *Id.*, at
122-24. For RFP No. 102, Plaintiffs stated that they would "produce relevant, non-privileged
responsive documents that Plaintiffs will rely on in support of their claims or defenses that are
located after a reasonably diligent search, if any." *Id.* at 126.

ROSS served its Second Set of RFPs six months ago, on November 12, 2021. *See*
Exhibit C (Excerpts from Defendant/Counterclaimant ROSS Intelligence, Inc.'s Second Set of
Requests for Production (Nos. 104-141)). The second set included:

**RFP No. 123**: DOCUMENTS AND COMMUNICATIONS
sufficient to identify the financial value to YOU of the
HEADNOTES.

**RFP No. 124**: DOCUMENTS AND COMMUNICATIONS
sufficient to identify the financial value to YOU of any
HEADNOTES that YOU contend ROSS infringed, directly or
indirectly.

**RFP No. 125**: DOCUMENTS AND COMMUNICATIONS
sufficient to identify the financial value to YOU of the KEY
NUMBER SYSTEM.

**RFP No. 126**: DOCUMENTS AND COMMUNICATIONS
sufficient to identify the financial value to YOU of any KEY
NUMBERS that YOU contend ROSS infringed, directly or
indirectly.

**RFP No. 141**: ALL DOCUMENTS RELATING TO damages
YOU claim to have suffered or be entitled to.

Plaintiffs served their response to the Second Set of RFPs on December 13, 2021. *See*
Exhibit D (Excepts from Plaintiffs Thomson Reuters Enterprise Centre GmbH and West
Publishing Corporation's Responses and Objections to Defendant and Counterclaimant ROSS
Intelligence, Inc.'s Second Set of Requests for Production (Nos. 104-141)). Plaintiffs agreed to
produce documents in response to these requests as well. The response to RFP No. 123 states
that Plaintiffs "will produce relevant, non-privileged documents sufficient to show the value of
West Headnotes that are located after a reasonably diligent search, if any." *Id.*, at 34-35. The
response to RFP No. 124 states that Plaintiffs "will produce relevant, non-privileged documents

2



sufficient to show the value of Plaintiffs' content that Defendant copied that are located after a reasonably diligent search, if any." *Id.*, at 35-36.  The response to RFP No. 125 states that Plaintiffs "will produce relevant, non-privileged documents sufficient to show the value of the WKNS that are located after a reasonably diligent search, if any." *Id.*, at 36-38.  The response to RFP No. 126 states that Plaintiffs "will produce relevant, non-privileged documents sufficient to show the value of the WKNS that are located after a reasonably diligent search, if any." *Id.*, at 38-39.  And the response to RFP No. 141 states that Plaintiffs will "produce relevant, non-privileged documents showing Plaintiffs' harm from Defendant's conduct that are located after a reasonably diligent search, if any." *Id.*, at 54-55.

Accordingly, Plaintiffs have agreed to produce documents which show (1) the harm allegedly caused by ROSS' copyright infringement and tortious interference, (2) the financial value of the headnotes and key number system generally, and (3) the financial value of the specific headnotes and the specific portions of the key number system that ROSS has allegedly infringed.  And consistent with RFP No. 102, Plaintiffs have agreed to produce all documents which they intend to rely on in support of their claims and defenses.

## II.   Plaintiffs Have Produced Five (5) Total Documents in Support of RFP Nos. 100, 101, 123, 124, 125, 126, and 141.

On March 8, 2022, ROSS told Plaintiffs that it did not believe that Plaintiffs had "produced documents sufficient to respond to" RFP Nos. 100, 101, 102, 123, 124, 125, 126, and 141, and asked Plaintiffs to either produce documents or identify which documents were responsive to these requests.  *See* Exhibit E (Email from J. Steinberg, Mar. 8, 2022, 1:47 PM).  After a month, in which Plaintiffs did not respond, ROSS asked again for, at the very least, Plaintiffs to identify which documents were responsive to these requests.  *Id.* (Email from J. Steinberg, April 7, 2022, 11:07 PM).  Plaintiffs' responded that they were "under no obligation to identify these documents for ROSS," and identified a handful of documents that they contend are responsive to the Requests.  *Id.* (Email from M. Means, April, 11, 2022, 2:47 PM).[1]

Plaintiffs identified only five documents responsive to these requests.[2]  These documents are insufficient to fully respond to these requests. They include, in their entirety:

- **TR-0894151**: ████████████████████████████████████
  ████████████████████████████████████████████
  ██████  *See* Exhibit F.

- **TR-0836004**: ████████████████████████████████
  ████████████████████████████████████████

---

[1] In contrast, when Plaintiffs asked ROSS to identify financial documents from its production, ROSS responded within one day and identified over 140 financial documents. *See* Exhibit E. (Email from M. Means, March 7, 2022, 6:59 PM; Email from J. Steinberg, March 8, 2022, 1:47 PM).

[2] Plaintiffs also stated that "all of the documents that Plaintiffs have produced in this case" are responsive to RFP No. 102.  *See* Exhibit E (Email from M. Means April 11, 2022, 2:47 PM).

**Crowell**

███████████████████████████ *See* Exhibit G.
████████

- **TR-0002846**: ██████████████████████████
  ███████████████████████████ *See*
  Exhibit H.

- **TR-0908447**: ██████████████████████████
  ███████████████████████████ *See* Exhibit I.

- **TR-0521595**: ██████████████████████████
  ███████████████████████████ *See* Exhibit J.

Plaintiffs have not satisfied their discovery obligations under RFP Nos. 100, 101, 102, 123, 124, 125, 126, and 141 through the production of these five documents. These five documents cannot, on their own, show the value of headnotes or the key number system, and thus cannot support Plaintiffs' damages contentions. These documents also cannot, on their own, show the harm that ROSS caused Plaintiffs due to the alleged copyright infringement and tortious interference, and thus cannot support actual damages for either the infringement or interference claims.

### III.   Plaintiffs Fail to Comply with Their Discovery Obligations through the Production of the Five Documents

The Federal Rules of Civil Procedure require a good-faith effort to produce all relevant documents consistent with the response provided, after a reasonably diligent search. *See e.g.*, *Bishop v. Shorter Univ.*, 2016 U.S. Dist. LEXIS 190267, at *21-23 (N.D. Ga. Aug. 5, 2016) (party violated Rule 37 when it failed to "show[] either that [it] made any effort to respond completely to [an interrogatory request] or to find any documents responsive to [document requests] or that [it] did so in a timely manner."). Producing five documents, of limited relevance, which cannot support the damages theories asserted, does not meet Plaintiffs' discovery obligations.

The documents do not describe or reflect any information about the financial value of headnotes or the key number system, and thus cannot satisfy Plaintiffs' discovery obligations under RFP Nos. 123-126. The documents also do not provide any information that reflects or describes any harm that ROSS caused Plaintiffs, and thus cannot satisfy Plaintiffs' discovery obligations under RFP Nos. 123-126 and 141. And because RFP Nos. 102 covers the same content as RFP Nos. 100-101, 123-126, and 141, Plaintiffs have not met their discovery burdens for this request either.



### A. The Documents Do Not Even Mention Headnotes or the Key Number System and Do Not Otherwise Respond to RFP Nos. 123-126 At All

Exhibit F, G, H, and I are not responsive RFP Nos. 123-26.[3]  None of these documents reflect or describe the financial value of the headnotes or the key number system; none of these documents even mention headnotes or the key number system.  *See* Exhibits F-J.  Also, not a single one of these documents reflects or describes the financial value of the allegedly infringed headnotes or the allegedly infringed portions of the key number system.

Pricing guidelines for Westlaw do not describe or reflect the financial value of headnotes or the key number system.  *See* Exhibits F, H.  No one could deduce a per-headnote price, or even a global pricing for the use of the headnotes or key number system from these numbers.  And Plaintiffs' witnesses have conceded the market value of the Westlaw content may not be accurately reflected in these price lists.  Exhibit K (Excerpts from Tr., Hoffman Dep. 54:16-58:5



; *id.*, 83:23-84:18                                             ; *see also* Exhibit L (Excerpts from Rough Tr., Martens Dep. 156:9-21)

The spreadsheet reflecting actual and forecasted revenue for Westlaw US is deficient for similar reasons: it reflects only the revenue generated by Westlaw US "initiatives."  *See* Exhibit I.  But an initiative for Westlaw is not the same as the collection of headnotes and the key number system.  This document also fails to reflect the financial value of the headnotes and key number system because it does not state anything about the value of these intellectual property assets.  It instead only provides information about actual and projected revenue generated in relation to Westlaw US initiatives.  Revenue that Plaintiffs generate through the sale or license of Westlaw is plainly not the same as the financial value of specific intellectual property that can be accessed on the platform.

The spreadsheet showing the apparent "pro forma" value of LegalEase's activity on Westlaw also does not reflects or describes the value of the headnotes or key number system. *See* Exhibit G.  The spreadsheet does not identify a single headnote that was allegedly accessed by LegalEase or a single key number allegedly accessed by LegalEase.  The spreadsheet also only relates to LegalEase's alleged activity, and thus cannot state anything about the financial value of the headnotes and key number system generally.  Even if the spreadsheet identified the headnotes and key numbers that LegalEase purportedly accessed (which it does not), the pro forma value of accessing these materials outside of a subscription plan is not the same as the value that Plaintiffs attribute to this intellectual property.

Plaintiffs surely understand that these four documents are inadequate to comply with RFP Nos. 123-126.  Plaintiffs are one of the largest and most sophisticated publishing companies in the world.  It is implausible that they have not completed a single assessment of the value of the headnotes and key number system—the intellectual property at issue in this litigation, and which

---

[3] Plaintiffs do not contend that the Sales Force print-out, *see* Exhibit J, reflects or describes the financial value of the headnotes or key number system, or the allegedly infringed headnotes or portions of the key number system.

they apparently put enormous financial and human resources into producing.  *See* Dkt. No. 1, ¶¶ 12, 20 (Plaintiffs' Complaint); *see also e.g.,* Exhibit M (Excerpts from Rough Tr., Lindberg Dep. 71:19-72:7)



*See* Exhibit N (TR-0358927).

*Id.*, at 4.

*Id.*, at 18.

*Id.*, at 22.

It seems likely that Plaintiffs' operating expense will reflect the value it attributes to the headnotes and key number system.[4]

### B.  The Documents Do Not State Anything About the Alleged Harm Caused by ROSS, and Do Not Otherwise Respond to RFP Nos. 100, 101, and 141

The five documents are not responsive to RFP Nos. 100, 101, and 141.  In response to these requests, Plaintiffs agreed to produce documents "showing Plaintiffs' harm from Defendants' conduct."  *See* Exhibit B, at 122-24; Exhibit D, at 54-55.  But these documents do not reflect or describe *any harm* allegedly caused by ROSS.

The pricing guidelines plainly cannot reflect how ROSS caused Plaintiffs harm.  *See* Exhibits F, H.  These guidelines merely state the cost Plaintiffs demand Westlaw users pay for certain services.  They have no relation to ROSS' conduct and thus cannot reflect anything about the harm ROSS allegedly caused.  Moreover, Plaintiffs' own witnesses have testified that these rigid figures do not accurately reflect the actual price that users pay for access to the Westlaw platform.



*See* Exhibit K, 98:6-100:22

*See id.*, 54:11-56:3

The spreadsheet reflecting Westlaw US revenue is similarly inadequate.  *See* Exhibit I. The revenue that a product generates does not reveal anything about the monetary harm allegedly

---

[4] ROSS demanded the production of this document from Plaintiffs on March 30, 2022, in relation to Plaintiffs' failure to produce any documents that reflect its Westlaw licensing strategy.  *See* Exhibit O (Email from J. Steinberg, March 30, 2022, 12:34 PM).  Plaintiffs have not responded to this email.

**C** Crowell

caused by another party.  To do that, documents would need to be produced that explain why or how that revenue amount was reached—for example, whether that amount exceeded or failed to meet reasonable projections.  The document alone—or in tandem with any other document produced by Plaintiffs—does not state anything about ROSS' impact on the amounts, or whether ROSS' impact had anything to do with the allegedly harmful acts at issue in this dispute.

███████████████████████████████████████████████ *See* Exhibit J.  However, this information does not describe or reflect whether the Westlaw user *in fact* left Westlaw to use ROSS; whether the reason why the user left Westlaw to use ROSS was due to ROSS' alleged infringement and/or tortious interference; and the amount of projected or actual financial loss that Plaintiffs' incurred due to losing this user.

Finally, the pro forma value spreadsheet that Plaintiffs created after the start of this litigation cannot on its own satisfy Plaintiffs' obligations to produce documents in response to RFP Nos. 100, 101, and 141. ██████████████████████████████████████ ████████████████████████████████████████ *See* Exhibit M, 97:18-100:10.  Even if this document reflects Plaintiffs' sole theory of harm, this document alone does not satisfy Plaintiffs' discovery obligations, as any documents and communications related to the preparation of this document would be responsive to the requests as well.

Again, Plaintiffs are the largest publishing company in the world.  It is not plausible that no other documents or communications exist which reflect or describe in more detail the amounts that customers pay for the Westlaw platform, or the differences between actual and projected revenue for the Westlaw platform, or the number of customers who left Westlaw due to learning about the ROSS platform.

## C.  The Five Documents Do Not Adequately Respond to RFP No. 102

In response to RFP No. 102, Plaintiffs stated that they would "produce relevant, non-privileged responsive documents that Plaintiffs will rely on in support of their claims or defenses that are located after a reasonably diligent search, if any."  Exhibit B, at 126.  The value of the headnotes and key number system are relevant to Plaintiffs claim of copyright infringement, and defenses associated with that claim.  And the harm caused by ROSS is relevant to Plaintiffs' infringement and interference claims as well, as Plaintiffs have alleged that they are entitled to actual damages, and damages is an element that Plaintiffs must prove to make out a tortious interference claim.  Accordingly, to the extent Plaintiffs intend to rely on any documents in addition to the five documents discussed herein to establish the value of the Westlaw Content, or to prove actual damages, Plaintiffs have also failed to comply with their discovery obligations under RFP No. 102.  Vaguely pointing to the remainder of Plaintiffs' production does not show that Plaintiffs have complied with RFP No. 102.  Rather, it shows that Plaintiffs have *not* complied with this request, as there are no other documents which reflect or describe the value of the Westlaw Content, or which show that Plaintiffs have been harmed by ROSS.



**IV.     ROSS is Severely Prejudiced by Plaintiffs' Refusal to Produce Documents Related to Its Alleged Injury.**

ROSS is severely prejudiced by Plaintiffs' refusal to meet its discovery obligations. Plaintiffs' refusal to produce documents that show particularized financial harm caused by the alleged infringement and interference, and Plaintiffs' refusal to produce documents that show the financial value of the headnotes and key number system make it impossible for ROSS to prepare its defenses.

ROSS demands that Plaintiffs either immediately supplement their production of documents responsive to RFP Nos. 100, 101, 102, 123, 124, 125, 126, and 141, or otherwise stipulate that: (1) no such other documents exist, (2) no such other documents will be produced as part of this litigation, and (3) Plaintiffs will not rely on any other documents to show any financial harm caused by ROSS or to reflect the value of the headnotes and portions of the key number system at issue in this case.

ROSS is available for a final meet-and-confer on this issue immediately. Please let us know your availability as soon as possible.  ROSS reserves all rights and waives none.


Very truly yours,

Joachim B. Steinberg

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION, | ) ) ) | C.A. No. 20-613-LPS |
| | ) | |
| Plaintiffs/Counterdefendants, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| v. | ) | |
| | ) | |
| ROSS INTELLIGENCE INC., | ) | |
| | ) | |
| Defendants/Counterclaimant. | ) | |

**DEFENDANT/COUNTERCLAIMANT ROSS INTELLIGENCE, INC.'S
FIRST SET OF REQUESTS FOR PRODUCTION (NOS. 1-103)**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the Local Rules of this Court, Defendant / Counterclaimant ROSS Intelligence, Inc. ("ROSS") serves the following requests for production on Plaintiffs / Counterdefendants Thomson Reuters Enterprise Centre GmbH ("Thomson Reuters") and West Publishing Corporation ("West").

**DEFINITIONS**

Insofar as any of the terms below are used herein, the following definitions shall apply:

1.      The term "THOMSON REUTERS" as used herein means Plaintiff / Counterdefendant Thomson Reuters Enterprise Centre GMBH, and its present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on its behalf.

2.      The term "WEST" as used herein means Plaintiff / Counterdefendant West Publishing Corporation and its present and former officers, directors, employees, attorneys,

agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on its behalf.

3.      The terms "YOU," "YOUR," and "PLAINTIFFS" are used herein to mean THOMSON REUTERS and WEST.

4.      "WESTLAW" means the product that YOU license as discussed in YOUR COMPLAINT.

5.      "WESTLAW PRODUCT" has the same meaning as the term "Westlaw product" used in the COMPLAINT ¶ 1.

6.      "WESTLAW CONTENT" has the same meaning as the term "Westlaw content" as used in the COMPLAINT ¶ 1.

7.      "WKNS" or "KEY NUMBER SYSTEM" means the Westlaw Key Number System as discussed in YOUR COMPLAINT.

8.      "HEADNOTES" means the West Headnotes as discussed in YOUR COMPLAINT.

9.      "WESTLAW DATABASE" has the same meaning as "database" referenced in the COMPLAINT ¶ 15.

10.     The terms "ROSS," "DEFENDANT," and "COUNTERCLAIMANT," as used herein means ROSS Intelligence, Inc., and its present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on its behalf.

11.     "COMPLAINT" means the Complaint filed by PLAINTIFFS in this litigation in the United Stated District Court for the District of Delaware on May 6, 2020 (D.I. 1).

12.     "LEGALEASE" as used herein means LegalEase Solutions, LLC, and its present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on its behalf.

13.     "LEGALEASE MATTER" means the litigation filed in the United States District Court for the District of Minnesota, docketed at 18 Civ. 1445, and bearing the caption *West Publishing Corp. v. LegalEase Solutions, LLC*.

14.     "LEXISNEXIS" as used herein means LEXISNEXIS Group, Inc., and its present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on its behalf, including without limitation RELX Group plc and Matthew Bender & Company Inc.

15.     The terms "DOCUMENT" or "DOCUMENTS" is used in the broadest sense permissible under the Federal Rules of Civil Procedure and shall include, without limitation any written, printed, typed, recorded, or graphic matter, however produced, reproduced, or stored, including the originals and all nonidentical copies, whether different from the originals by reason of any notations made on such copies or otherwise, in the actual or constructive possession, custody, or control of PLAINTIFFS, including without limitation contracts, letter agreements, records, correspondence, COMMUNICATIONS, electronically stored information, emails, tweets, blog or Internet forum posts or comments, text messages on portable devices, Blackberry Messenger messages, SMS messages, instant messenger messages (e.g. Skype, Slack, etc.), memoranda, handwritten notes, source code, object code, binaries and associated files and/or structures, source code comments, source repository logs, server logs, records or summaries of

negotiations, records or summaries of interviews or conversations, audio or video recordings, copies of video games, all Internet-based media, photographs, corporate minutes, diaries, telephone logs, instant messaging logs, chat room logs, schedules, drawings, product storyboards, product mockups, statistical statements, work papers, disks, data cards, films, data processing files, charts, graphs, microfiche, microfilm, contracts, notices, reports, recitals, statements, worksheets, abstracts, resumes, summaries, jottings, market data, books, journals, ledgers, audits, maps, diagrams, research documents, newspapers, appointment books, desk calendars, project management charts (e.g., Gantt charts), task management records (e.g., to-do lists), expense reports, computer printout and other computer readable or electronic records, and all drafts or modifications thereof, and all non-identical copies of any such items. Any such DOCUMENT with any sheet or part thereof bearing any marks, such as initials, stamped indices, comments or notations, or any character or characters, that are not part of the signed text or photographic reproduction thereof is to be considered as a separate DOCUMENT. Where there is any question about whether a tangible item otherwise described in these requests falls within the definition of "DOCUMENT(S)," such tangible item shall be produced.

16.     The terms "COMMUNICATION" or "COMMUNICATIONS" mean any manner or method in which information is communicated from one human being to another, including, but not limited to, any means of transmission, sending, and/or receipt of information of any kind, such as speech, writing, language, nonverbal signals, computer electronics of any kind, magnetic tape, video tape, photographs, graphs, symbols, magnetic disks, sound, radio and/or video signal, telephone, teletype, telecommunication, telegram, microfilm, microfiche, photographic film of any type, and/or media of any kind.

17.     "AND" and "OR" and "BETWEEN" and "AMONG" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of a request all information that otherwise might be construed to be outside of its scope.

18.     "ANY" shall mean any or all and the term "ALL" shall mean any or all.

19.     "IDENTIFY" means to provide a description sufficient in specificity such that the document or thing can be unambiguously obtained by means of such description in a request for production pursuant to Rule 34 of the Federal Rules of Civil Procedure, which will include, whether applicable, the document's or thing's title, date, author(s) or creator(s), recipient(s), Bates number, and present location.

20.     "INCLUDING" means not limited to.

21.     The terms "PERSON" and "PERSONS" means any individual, corporation, partnership, association, organization, or other entity of any type or nature.

22.     The terms "RELATE TO," "RELATED TO," AND "RELATING TO" mean constituting, pertaining to, in connection with, reflecting, respecting, regarding, concerning, referring to, based upon, stating, showing, evidencing, establishing, supporting, negating, contradicting, describing, recording, noting, embodying, memorializing, containing, mentioning, studying, analyzing, discussing, specifying, identifying or in any manner logically, factually, indirectly or directly, or in any other way connecting to the matter addressed, in whole or in part.

23.     The singular form of a noun or pronoun shall be considered to include within its meaning the plural form of the noun or pronoun, and vice versa; and the past tense shall include the present tense where the clear meaning is not distorted. The term "or" shall mean "and" and vice-versa, as necessary to bring within the scope of the following requests all information or DOCUMENTS that would be excluded absent this definition.

## INSTRUCTIONS

1.      PLAINTIFFS shall IDENTIFY, produce, AND permit the visual inspection AND reproduction of the following DOCUMENTS, electronically stored information, AND things which are in its possession, custody, or control, INCLUDING DOCUMENTS, electronically stored information, AND things in the actual OR constructive possession of PLAINTIFFS, its attorneys, experts, AND anyone else acting on its behalf.  The production and visual inspection shall take place at Crowell & Moring LLP, 3 Embarcadero Center, 26th Fl., San Francisco CA 94111 (or such other place as may be stipulated by the parties).

2.      These requests are not limited by time unless stated within the request itself.

3.      Unless otherwise stated, the geographic scope covered by these requests is worldwide.

4.      If PLAINTIFFS claim that ANY DOCUMENT, tangible object, OR other thing responsive to ANY request was once in its possession, custody OR control AND has since been lost, discarded, destroyed, deleted, relinquished, OR disposed in some other manner, PLAINTIFFS shall IDENTIFY with particularity each such DOCUMENT AND set forth:

> (a) The date the DOCUMENT was lost, discarded, destroyed, deleted, relinquished, OR disposed;
>
> (b) The circumstances under which the DOCUMENT was lost, discarded, destroyed, deleted, relinquished, OR disposed; AND
>
> (c) The identity of ALL PERSONS who had knowledge of, OR were present when, the DOCUMENT was lost, discarded, destroyed, deleted, relinquished, OR disposed, as well as ALL PERSONS who authorized such actions.

6

5.      In the event that PLAINTIFFS contend that ANY DOCUMENT responsive to ANY discovery request below is privileged or otherwise excludable from discovery, PLAINTIFF shall:

(a) IDENTIFY each such DOCUMENT by date, author(s), signer(s), intended recipient(s), AND addressee(s);

(b), IDENTIFY each PERSON to whom a copy was furnished OR to whom the information OR advice was conveyed;

(c) state the general subject matter of the DOCUMENT; AND

(d) state the ground on which the claim of privilege OR immunity from disclosure is based.

Failure to do so will constitute a waiver of such a claim.

6.      If PLAINTIFFS claim a privilege OR immunity with regard to ANY DOCUMENT responsive to ANY discovery request below, PLAINTIFFS should nevertheless produce ALL portions of such DOCUMENT that contains information not appropriately subject to a claim of privilege OR immunity.

7.      These requests are continuing in nature under Rule 26(e) of the Federal Rules of Civil Procedure.  If, at ANY time prior to the completion of the above-captioned matter, PLAINTIFFS obtain OR become aware of additional DOCUMENTS, tangible objects, AND things responsive to these requests, PLAINTIFFS shall promptly supplement its response to provide such DOCUMENTS, tangible objects, AND things to ROSS.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

## REQUEST FOR PRODUCTION NO. 1.:

All settlement agreements between YOU and LEXISNEXIS.

**REQUEST FOR PRODUCTION NO. 95.:**

All WESTLAW CONTENT ROSS purportedly obtained as alleged in COMPLAINT ¶¶

28-29, 35.

**REQUEST FOR PRODUCTION NO. 96.:**

All DOCUMENTS and COMMUNICATIONS RELATING TO ROSS's use of

WESTLAW CONTENT as alleged in COMPLAINT ¶¶ 35, 37.

**REQUEST FOR PRODUCTION NO. 97.:**

All DOCUMENTS and COMMUNICATIONS RELATING TO ROSS's use of

WESTLAW PRODUCT.

**REQUEST FOR PRODUCTION NO. 98.:**

All DOCUMENTS and COMMUNICATIONS RELATING TO ROSS's use of the

HEADNOTES.

**REQUEST FOR PRODUCTION NO. 99.:**

All DOCUMENTS and COMMUNICATIONS RELATING TO ROSS's use of the KEY

NUMBER SYSTEM.

**REQUEST FOR PRODUCTION NO. 100.:**

All DOCUMENTS and COMMUNICATIONS which mention, discuss, or refer to any

damages, injuries, or harms YOU claim to have suffered as a result of ROSS's alleged copyright

infringement alleged in YOUR COMPLAINT, or that support the damages or other relief YOU

seek in YOUR copyright infringement claim.

**REQUEST FOR PRODUCTION NO. 101.:**

All DOCUMENTS and COMMUNICATIONS which mention, discuss, or refer to any

damages, injuries, or harms YOU claim to have suffered as a result of ROSS's alleged tortious

interference alleged in YOUR COMPLAINT, or that support the damages or other relief YOU

seek in YOUR tortious interference claim.

**REQUEST FOR PRODUCTION NO. 102.:**

      All DOCUMENTS and COMMUNICATIONS that RELATE TO YOUR claims,

including but not limited to all DOCUMENTS and COMMUNICATIONS that YOU will rely on

in support of any of YOUR claims and defenses in this action.

**REQUEST FOR PRODUCTION NO. 103.:**

      DOCUMENTS sufficient to show YOUR document retention practices or policies in

force on an annual basis, including the retention of emails or other electronic Documents and

Communications.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

By:  */s/ Stephanie E. O'Byrne*
     David E. Moore (#3983)

Gabriel M. Ramsey
     Stephanie E. O'Byrne (#4446)
Warrington Parker
     Hercules Plaza, 6th Floor
Kayvan M. Ghaffari
     1313 N. Market Street
Jacob Canter
     Wilmington, DE  19801
CROWELL & MORING LLP
     Tel:  (302) 984-6000
3 Embarcadero Center, 26th Floor
     dmoore@potteranderson.com
San Francisco, CA 94111
     sobyrne@potteranderson.com
Tel:  (415) 986-2800

*Attorneys for Defendant/Counterclaimant*
Mark A. Klapow
*ROSS Intelligence, Inc.*
Lisa Kimmel
Joshua M. Rychlinski
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC  20004
Tel:  (202) 624-2500

Dated:  May 12, 2021
7198450 / 50241

## CERTIFICATE OF SERVICE

I, Stephanie E. O'Byrne, hereby certify that on May 12, 2021, true and correct copies of the within document were served on the following counsel of record at the addresses and in the manner indicated:

## VIA ELECTRONIC MAIL

Jack B. Blumenfeld
Michael J. Flynn
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@mnat.com
mflynn@mnat.com

Dale Cendali, P.C.
Joshua L. Simmons
Eric Loverro
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
dale.cendali@kirkland.com
joshua.simmons@kirkland.com
eric.loverro@kirkland.com

Daniel E. Laytin
Christa C. Cottrell
Cameron Ginder
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL  60654
daniel.laytin@kirkland.com
christa.cottrell@kirkland.com
cameron.ginder@kirkland.com

Megan L. McKeown
KIRKLAND & ELLIS LLP
609 Main Street
Houston, TX 77002
megan.mckeown@kirkland.com

_/s/ Stephanie E. O'Byrne_
Stephanie E. O'Byrne

7193230 / 50241

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION, | ) ) ) ) ) | |
| Plaintiffs and Counterdefendants, | ) ) ) | C.A. No. 20-613 (LPS) |
| v. | ) ) | |
| ROSS INTELLIGENCE INC., | ) ) | |
| Defendant and Counterclaimant. | ) ) | |

**PLAINTIFFS AND COUNTERDEFENDANTS THOMSON REUTERS
ENTERPRISE CENTRE GMBH AND WEST PUBLISHING
CORPORATION'S RESPONSES AND OBJECTIONS TO
DEFENDANT AND COUNTERCLAIMANT ROSS INTELLIGENCE
INC.'S FIRST SET OF REQUESTS FOR PRODUCTION (1–103)**

Pursuant to Federal Rules of Civil Procedure 26 and 34 and the Local Rules of the United

States District Court for the District of Delaware (the "Local Rules" and each a "Local Rule"),

Plaintiffs and Counterdefendants Thomson Reuters Enterprise Centre GmbH ("Thomson

Reuters") and West Publishing Corporation ("West") (collectively "Plaintiffs"), hereby respond to

Defendant and Counterclaimant ROSS Intelligence Inc.'s ("Defendant") First Set of Requests for

Production, served on May 12, 2021 (the "Requests" and each individually, a "Request") in the

above-captioned action ("Litigation") as follows:

## <u>GENERAL OBJECTIONS</u>

1.        Plaintiffs object to the Requests to the extent that they purport to impose obligations beyond those set forth in the Federal Rules of Civil Procedure, the Local Rules, or other applicable law.

2.        Plaintiffs object to the Requests to the extent that they seek information that is subject to the attorney-client privilege, the work-product privilege, and/or any other applicable privilege or protection.  Plaintiffs do not waive, intend to preserve, and are preserving the attorney-client privilege, the work-product privilege, and every other applicable privilege or protection with respect to any information protected by such a privilege or protection.

3.        Plaintiffs object to the Requests to the extent that they seek proprietary or confidential business information, trade secrets, or other sensitive information, or documents that contain information that is non-responsive to the Requests.  To the extent that the response to any Request requires the disclosure of any non-privileged proprietary or confidential information, trade secrets or other sensitive information, Plaintiffs will provide such information pursuant to the Protective Order governing the parties to this Litigation.  D.I. 48.  By responding to the Requests, Plaintiffs do not waive, intend to preserve, and are preserving all of their rights to assert that any and all such information is confidential.  Information furnished by Plaintiffs shall be used only in connection with this Litigation and shall not be disclosed, in whole or in part, to any person or entity apart from the parties and their representatives in this Litigation and only as permitted by the Protective Order.

4.        Plaintiffs object to the Requests to the extent that they seek information that Defendant equally may otherwise obtain from public sources or with less burden and expense by using other means of discovery.

5.      In providing this response to the Requests, Plaintiffs do not in any way waive or intend to waive, but rather are preserving and intend to preserve:

> (i)     All objections as to competency, authenticity, relevancy, materiality and admissibility;
>
> (ii)    All rights to object on any grounds to the use in any subsequent proceedings of any of the responses or information contained herein, including but not limited to the right to object to the trial of this or any other action;
>
> (iii)   All objections as to vagueness and ambiguity; and
>
> (iv)    All rights to object on any grounds to any further requests for production.

6.      Plaintiffs object to the Requests to the extent that they seek information set forth in documents that are outside Plaintiffs' possession, custody, and control.

7.      Plaintiffs object to the Requests to the extent that they are not limited to the time or geography relevant to this Litigation.  Indeed, Instruction No. 2 states that the Requests "are not limited by time unless stated within the request itself."  Similarly, Instruction No. 3 states, "Unless otherwise stated, the geographic scope covered by these requests is worldwide," and no Request includes a geographic limitation.

8.      The responses below shall not be interpreted to concede the truth of any factual assertion or implication contained in the Requests.  Plaintiffs' responses to the Requests in no way constitute an admission or acknowledgment by Plaintiffs as to the relevancy, materiality, or admissibility of any of the information contained there, and Plaintiffs expressly reserve their rights to object as such.

9.      Plaintiffs object to the Requests to the extent that they unfairly seek to restrict the facts upon which Plaintiffs may rely at trial.  Discovery has not been completed and Plaintiffs are

not necessarily in possession of all the facts and documents upon which Plaintiffs intend to rely. The responses submitted herewith are tendered to Defendant with the reservation that responses are submitted without limiting the evidence on which Plaintiffs may rely to support the contentions they may assert at the trial on this Litigation and to rebut or impeach the contentions, assertions, and evidence that Defendant may present.  Plaintiffs reserve the right to supplement or amend this response at a future date.

10.     Plaintiffs object to the Requests as overly broad and unduly burdensome to the extent that any Request purports to seek "all DOCUMENTS," "all COMMUNICATIONS," or "all WESTLAW CONTENT," responsive to the subject matter of a particular Request.  Plaintiffs will produce responsive documents, if any, that are located after a reasonably diligent search, taking into account the many potential sources of information arguably responsive to the Requests, and the proportionality of the information sought to the burden of its production.

11.     Plaintiffs object to the First Set of Interrogatories to the extent that it is premature in that it asks or requires Plaintiffs to analyze or formulate contentions on matters for which Plaintiffs' investigation and discovery have not yet been completed.  The responses provided below are based on the investigation conducted to date and are without prejudice to any later supplementation, amendment, or modification.

12.     A response indicating that Plaintiffs will produce documents that are responsive to a Request is not a representation or statement of belief that any such documents exist or have existed.

13.     Plaintiffs object to the Requests as overly broad to the extent that the Requests define the term "THOMSON REUTERS" to include "its present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents,

subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on its behalf." For the purpose of responding to the Requests, Plaintiffs will construe this term to mean solely Thomson Reuters Enterprise Centre GmbH, and not any other person or entity.

14. Plaintiffs object to the Requests as overly broad to the extent that the Requests define the term "WEST" to include "its present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on its behalf." For the purpose of responding to the Requests, Plaintiffs will construe this term to mean solely West Publishing Corporation, and not any other person or entity.

15. Plaintiffs objects to the Requests as overly broad to the extent that the Requests define the terms "YOU," "YOUR," and "PLAINTIFFS" to incorporate the definitions of the terms "THOMSON REUTERS" and "WEST" and thus are defined to include Thomson Reuters Enterprise Centre GmbH's and West Publishing Corporation's "present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on [their] behalf." For the purpose of responding to the Requests, Plaintiffs will construe the terms "YOU," "YOUR," and "PLAINTIFFS" to mean solely Thomson Reuters Enterprise Centre GmbH and West Publishing Corporation, and not any other person or entity.

16. Plaintiffs object to the Requests as overly broad to the extent that the Requests define the terms "ROSS," "DEFENDANT," and "COUNTERCLAIMANT" to include ROSS Intelligence Inc.'s "present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on its behalf." For the purpose of responding

to the Requests, Plaintiffs will construe this term to mean solely ROSS Intelligence Inc., and not any other person or entity.

17.    Plaintiffs object to the Requests as overly broad to the extent that the Requests define the term "LEGALEASE" to include LegalEase Solutions, LLC's "present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on its behalf."  For the purpose of responding to the Requests, Plaintiffs will construe this term to mean solely LegalEase Solutions, LLC, and not any other person or entity.

18.    Plaintiffs object to the Requests as overly broad to the extent that the Requests define "LEXISNEXIS" to include LexisNexis Group, Inc.'s "present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on its behalf."  For the purpose of responding to the Requests, Plaintiffs will construe this term to mean solely LexisNexis Group, Inc. and not any other person or entity.

19.    Plaintiffs object to the Requests as improper to the extent that the Requests define the term "IDENTIFY" to require Plaintiffs to provide a description of any document or thing as such a description is not required by Federal Rule of Civil Procedure 34.

20.    Plaintiffs object to Instruction No. 1 to the extent that it uses the term "IDENTIFY" as indicated in General Objection No. 19.  They also object to Instruction No. 1 to the extent that it purports to require Plaintiffs to produce documents and things "at Crowell & Moring LLP, 3 Embarcadero Center, 26th Fl., San Francisco CA 94111 (or such other place as may be stipulated by the parties)."  Plaintiffs will produce documents electronically, or at such place as the parties may agree.

21.     Plaintiffs object to Instruction No. 4 as overly broad and unduly burdensome to the extent it purports to require Plaintiffs to "IDENTIFY with particularity each such DOCUMENT" that was "once in [Plaintiffs'] possession, custody OR control AND has since been lost, discarded, destroyed, deleted, relinquished, OR disposed in some other manner," by setting forth "(a) The date the DOCUMENT was lost, discarded, destroyed, deleted, relinquished, OR disposed; (b) The circumstances under which the DOCUMENT was lost, discarded, destroyed, deleted, relinquished, OR disposed; AND (c) The identity of ALL PERSONS who had knowledge of, OR were present when, the DOCUMENT was lost, discarded, destroyed, deleted, relinquished, OR disposed, as well as ALL PERSONS who authorized such actions."

22.     Plaintiffs object to Instruction No. 5 to the extent it suggests a failure to identify documents "responsive to ANY discovery request . . . is privileged or otherwise excludable from discovery" constitutes "a waiver of such a claim" of privilege.  Plaintiffs will produce a privilege log within a reasonable period of time after the document substantially complete deadline or upon a mutually agreeable schedule.

23.     Plaintiffs incorporate the foregoing General Objections into each and every one of their responses to the Requests as set forth below.

Request to the extent that it is duplicative of other Requests, including Request Nos. 32, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 90, 91, 92, 93, 94, 95, 96, 97, and 98.

Subject to, as limited by, and without waiver of the foregoing objections, Plaintiffs state that they will produce relevant, non-privileged responsive documents showing Defendant's use of the WKNS that are located after a reasonably diligent search, if any.

**REQUEST FOR PRODUCTION NO. 100:**

All DOCUMENTS and COMMUNICATIONS which mention, discuss, or refer to any damages, injuries, or harms YOU claim to have suffered as a result of ROSS's alleged copyright infringement alleged in YOUR COMPLAINT, or that support the damages or other relief YOU seek in YOUR copyright infringement claim.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 100:**

Plaintiffs incorporate by reference the above-stated General Objections as if fully set forth herein.  Plaintiffs specifically object to this Request as overly broad and unduly burdensome to the extent that it seeks "[a]ll DOCUMENTS/COMMUNICATIONS" as indicated in General Objection No. 10, and more specifically, "[a]ll DOCUMENTS and COMMUNICATIONS which mention, discuss, or refer to any damages, injuries, or harms YOU claim to have suffered as a result of ROSS's alleged copyright infringement alleged in YOUR COMPLAINT, or that support the damages or other relief YOU seek in YOUR copyright infringement claim."  Plaintiffs object to this Request to the extent that it is premature in that it asks or requires Plaintiffs to produce documents on matters for which Plaintiffs' investigation and discovery have not yet been completed.  The documents that Plaintiffs produce will be based on the investigation conducted to date and are without prejudice to any later supplementation, amendment, or modification. Plaintiffs object to this Request as vague and ambiguous to the extent that the terms "mention, discuss, or refer" and "any damages, injuries, or harms," are unclear and undefined.  Plaintiffs object to this Request to the extent that it seeks documents that are protected by the attorney work-

product doctrine, attorney-client privilege, or any other privilege or protection. Plaintiffs object to this Request as overly broad to the extent that it defines the terms "YOU" and "YOUR" to incorporate the definitions of the terms "THOMSON REUTERS" and "WEST" and thus are defined to include Thomson Reuters Enterprise Centre GmbH's and West Publishing Corporation's "present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on [their] behalf," as indicated in General Objection No. 15. Plaintiffs object to this Request as overly broad to the extent that it defines the term "ROSS" to include ROSS Intelligence Inc.'s "present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on its behalf," as indicated in General Objection No. 16.

Subject to, as limited by, and without waiver of the foregoing objections, Plaintiffs state that they will produce relevant, non-privileged responsive documents showing Plaintiffs' harm from Defendant's conduct that are located after a reasonably diligent search, if any.

## REQUEST FOR PRODUCTION NO. 101:

All DOCUMENTS and COMMUNICATIONS which mention, discuss, or refer to any damages, injuries, or harms YOU claim to have suffered as a result of ROSS's alleged tortious interference alleged in YOUR COMPLAINT, or that support the damages or other relief YOU seek in YOUR tortious interference claim.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 101:

Plaintiffs incorporate by reference the above-stated General Objections as if fully set forth herein. Plaintiffs specifically object to this Request as overly broad and unduly burdensome to the extent that it seeks "[a]ll DOCUMENTS and COMMUNICATIONS" as indicated in General Objection No. 10, and more specifically, "[a]ll DOCUMENTS and COMMUNICATIONS which

mention, discuss, or refer to any damages, injuries, or harms YOU claim to have suffered as a result of ROSS's alleged tortious interference alleged in YOUR COMPLAINT, or that support the damages or other relief YOU seek in YOUR tortious interference claim." Plaintiffs object to this Request to the extent that it is premature in that it asks or requires Plaintiffs to produce documents on matters for which Plaintiffs' investigation and discovery have not yet been completed. The documents that Plaintiffs produce will be based on the investigation conducted to date and are without prejudice to any later supplementation, amendment, or modification. Plaintiffs object to this Request as vague and ambiguous to the extent that the terms "mention, discuss, or refer" and "any damages, injuries, or harms" are unclear and undefined. Plaintiffs object to this Request as overly broad to the extent that it defines the terms "YOU" and "YOUR" to incorporate the definitions of the terms "THOMSON REUTERS" and "WEST" and thus are defined to include Thomson Reuters Enterprise Centre GmbH's and West Publishing Corporation's "present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on [their] behalf," as indicated in General Objection No. 15. Plaintiffs object to this Request as overly broad to the extent that tit defines the term "ROSS" to include ROSS Intelligence Inc.'s "present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on its behalf," as indicated in General Objection No. 16.

Subject to, as limited by, and without waiver of the foregoing objections, Plaintiffs state that they will produce relevant, non-privileged responsive documents showing Plaintiffs' harm from Defendant's conduct that are located after a reasonably diligent search, if any.

**REQUEST FOR PRODUCTION NO. 102:**

All DOCUMENTS and COMMUNICATIONS that RELATE TO YOUR claims, including but not limited to all DOCUMENTS and COMMUNICATIONS that YOU will rely on in support of any of YOUR claims and defenses in this action.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 102:**

Plaintiffs incorporate by reference the above-stated General Objections as if fully set forth herein.  Plaintiffs specifically object to this Request as overly broad and unduly burdensome to the extent that it seeks "[a]ll DOCUMENTS and COMMUNICATIONS" as indicated in General Objection No. 10, and more specifically, "[a]ll DOCUMENTS and COMMUNICATIONS that RELATE TO YOUR claims, including but not limited to all DOCUMENTS and COMMUNICATIONS that YOU will rely on in support of any of YOUR claims and defenses in this action."  Plaintiffs object to this Request to the extent that it is premature in that it asks or requires Plaintiffs to produce documents on matters for which Plaintiffs' investigation and discovery have not yet been completed.  The documents that Plaintiffs produce will be based on the investigation conducted to date and are without prejudice to any later supplementation, amendment, or modification.  Plaintiffs object to this Request as overly broad to the extent that it is unlimited as to time and does not specify a timeframe that is relevant to this Litigation as indicated in General Objection No. 7.  Plaintiffs object to this Request as unduly burdensome to the extent that it seeks documents made unavailable by the passage of time.  Plaintiffs object to this Request as premature to the extent that it seeks documents that are solely relevant to Defendant's antitrust and unfair competition counterclaims (Counterclaims VI–IX), which are not yet the subject of discovery.  See D.I. 41.  Plaintiffs object to this Request to the extent that it is duplicative of other Requests, including Request Nos. 2, 5, 6, 10, 27, 28, 32 through 36, among others.  Plaintiffs object to this Request as overly broad to the extent that it defines the terms "YOU" and "YOUR" to incorporate the definitions of the terms "THOMSON REUTERS" and

125

"WEST" and thus are defined to include Thomson Reuters Enterprise Centre GmbH's and West Publishing Corporation's "present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on [their] behalf," as indicated in General Objection No. 15.

Subject to, as limited by, and without waiver of the foregoing objections, Plaintiffs state that they will produce relevant, non-privileged responsive documents that Plaintiffs will rely on in support of their claims or defenses that are located after a reasonably diligent search, if any.

**REQUEST FOR PRODUCTION NO. 103:**

DOCUMENTS sufficient to show YOUR document retention practices or policies in force on an annual basis, including the retention of emails or other electronic Documents and Communications.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 103:**

Plaintiffs incorporate by reference the above-stated General Objections as if fully set forth herein.  Plaintiffs specifically object to this Request as overly broad and unduly burdensome to the extent that it seeks "DOCUMENTS sufficient to show YOUR document retention practices or policies in force on an annual basis, including the retention of emails or other electronic Documents and Communications."  Plaintiffs object to this Request as overly broad to the extent that it is unlimited as to time and does not specify a timeframe that is relevant to this Litigation as indicated in General Objection No. 7.  Plaintiffs object to this Request as unduly burdensome to the extent that it seeks documents made unavailable by the passage of time.  Plaintiffs object to this Request to the extent that it seeks documents that are protected by the attorney work-product doctrine, attorney-client privilege, or any other privilege or protection.  Plaintiffs object to this Request as vague and ambiguous to the extent that the terms "document retention practices or policies in force

on an annual basis" are unclear and undefined.  Plaintiffs object to this Request as overly broad to the extent that it defines the term "YOUR" to incorporate the definitions of the terms "THOMSON REUTERS" and "WEST" and thus is defined to include Thomson Reuters Enterprise Centre GmbH's and West Publishing Corporation's "present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on [their] behalf," as indicated in General Objection No. 15.

Subject to, as limited by, and without waiver of the foregoing objections, Plaintiffs state that they will produce relevant, non-privileged responsive documents sufficient to show Plaintiffs' document retention policies from 2017 to the present that are located after a reasonably diligent search, if any.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

_____

Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com

*Attorneys for Plaintiffs and
Counterdefendants Thomson Reuters
Enterprise Center GmbH and West Publishing
Corporation*

OF COUNSEL:

Dale M. Cendali
Joshua L. Simmons
Eric A. Loverro
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
(212) 446-4800

Daniel E. Laytin
Christa C. Cottrell
Cameron Ginder
Alyssa C. Kalisky
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL  60654
(312) 862-2000

Megan McKeown
KIRKLAND & ELLIS LLP
609 Main Street
Houston, TX  77002
(713) 836-3600

July 12, 2021

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 12, 2021, copies of the foregoing were caused to be served

upon the following in the manner indicated:

David E. Moore, Esquire                                     *VIA ELECTRONIC MAIL*
Stephanie E. O'Byrne, Esquire
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE  19801
*Attorneys for Defendant and Counterclaimant*

Joshua M. Rychlinski, Esquire                              *VIA ELECTRONIC MAIL*
Mark A. Klapow, Esquire
Lisa Kimmel, Esquire
Crinesha B. Berry, Esquire
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, DC  20004
*Attorneys for Defendant and Counterclaimant*

Gabriel M. Ramsey, Esquire                                 *VIA ELECTRONIC MAIL*
Kayvan M. Ghaffari, Esquire
Jacob Canter, Esquire
Warrington Parker, Esquire
CROWELL & MORING LLP
3 Embarcadero Center, 26th Floor
San Francisco, CA  94111
*Attorneys for Defendant and Counterclaimant*


*/s/ Michael J. Flynn*
_____
Michael J. Flynn (#5333)

# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION, | ) ) ) | C.A. No. 20-613-LPS |
| | ) | |
| Plaintiffs/Counterdefendants, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| v. | ) | |
| | ) | |
| ROSS INTELLIGENCE INC., | ) | |
| | ) | |
| Defendants/Counterclaimant. | ) | |

**DEFENDANT/COUNTERCLAIMANT ROSS INTELLIGENCE INC.'S SECOND SET
OF REQUESTS FOR PRODUCTION (NOS. 104-141)**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the Local Rules of this Court, Defendant / Counterclaimant ROSS Intelligence, Inc. ("ROSS") serves the following requests for production on Plaintiffs / Counterdefendants Thomson Reuters Enterprise Centre GmbH ("Thomson Reuters") and West Publishing Corporation ("West").

**<u>DEFINITIONS</u>**

Insofar as any of the terms below are used herein, the following definitions shall apply:

1.      The term "THOMSON REUTERS" as used herein means Plaintiff / Counterdefendant Thomson Reuters Enterprise Centre GMBH, and its present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on its behalf.

2.      The term "WEST" as used herein means Plaintiff / Counterdefendant West Publishing Corporation and its present and former officers, directors, employees, attorneys,

agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on its behalf.

3.      The terms "YOU," "YOUR," and "PLAINTIFFS" are used herein to mean THOMSON REUTERS and WEST.

4.      "WESTLAW" means the product that YOU license as discussed in YOUR COMPLAINT.

5.      "WESTLAW PRODUCT" has the same meaning as the term "Westlaw product" used in the COMPLAINT ¶ 1.

6.      "WESTLAW CONTENT" has the same meaning as the term "Westlaw content" as used in the COMPLAINT ¶ 1.

7.      "WKNS" or "KEY NUMBER SYSTEM" means the Westlaw Key Number System as discussed in YOUR COMPLAINT.

8.      "KEY NUMBERS" mean the component parts of the KEY NUMBER SYSTEM.

9.      "HEADNOTES" means the West Headnotes as discussed in YOUR COMPLAINT.

10.     "WESTLAW DATABASE" has the same meaning as "database" referenced in the COMPLAINT ¶ 15.

11.     "DMCA NOTICES" means any takedown notices or requests sent pursuant to the Digital Millennium Copyright Act, 28 U.S.C. §§ 512 *et seq.*

12.     The terms "ROSS," "DEFENDANT," and "COUNTERCLAIMANT," as used herein means ROSS Intelligence, Inc., and its present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on its behalf.

13.     "COMPLAINT" means the Complaint filed by PLAINTIFFS in this litigation in the United Stated District Court for the District of Delaware on May 6, 2020 (D.I. 1).

14.     "LEGALEASE" as used herein means LegalEase Solutions, LLC, and its present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on its behalf.

15.     "LEGALEASE MATTER" means the litigation filed in the United States District Court for the District of Minnesota, docketed at 18 Civ. 1445, and bearing the caption *West Publishing Corp. v. LegalEase Solutions, LLC.*

16.     "LEXISNEXIS" as used herein means LEXISNEXIS Group, Inc., and its present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on its behalf, including without limitation RELX Group plc and Matthew Bender & Company Inc.

17.     The term "LICENSEE" as used herein means any third-party who has a license to access WESTLAW as described in the COMPLAINT ¶ 1.

18.     The terms "DOCUMENT" or "DOCUMENTS" is used in the broadest sense permissible under the Federal Rules of Civil Procedure and shall include, without limitation any written, printed, typed, recorded, or graphic matter, however produced, reproduced, or stored, including the originals and all nonidentical copies, whether different from the originals by reason of any notations made on such copies or otherwise, in the actual or constructive possession, custody, or control of PLAINTIFFS, including without limitation contracts, letter agreements, records, correspondence, COMMUNICATIONS, electronically stored information, emails,

tweets, blog or Internet forum posts or comments, text messages on portable devices, Blackberry Messenger messages, SMS messages, instant messenger messages (e.g. Skype, Slack, etc.), memoranda, handwritten notes, source code, object code, binaries and associated files and/or structures, source code comments, source repository logs, server logs, records or summaries of negotiations, records or summaries of interviews or conversations, audio or video recordings, copies of video games, all Internet-based media, photographs, corporate minutes, diaries, telephone logs, instant messaging logs, chat room logs, schedules, drawings, product storyboards, product mockups, statistical statements, work papers, disks, data cards, films, data processing files, charts, graphs, microfiche, microfilm, contracts, notices, reports, recitals, statements, worksheets, abstracts, resumes, summaries, jottings, market data, books, journals, ledgers, audits, maps, diagrams, research documents, newspapers, appointment books, desk calendars, project management charts (e.g., Gantt charts), task management records (e.g., to-do lists), expense reports, computer printout and other computer readable or electronic records, and all drafts or modifications thereof, and all non-identical copies of any such items. Any such DOCUMENT with any sheet or part thereof bearing any marks, such as initials, stamped indices, comments or notations, or any character or characters, that are not part of the signed text or photographic reproduction thereof is to be considered as a separate DOCUMENT. Where there is any question about whether a tangible item otherwise described in these requests falls within the definition of "DOCUMENT(S)," such tangible item shall be produced.

19.     The terms "COMMUNICATION" or "COMMUNICATIONS" mean any manner or method in which information is communicated from one human being to another, including, but not limited to, any means of transmission, sending, and/or receipt of information of any kind, such as speech, writing, language, nonverbal signals, computer electronics of any kind, magnetic

tape, video tape, photographs, graphs, symbols, magnetic disks, sound, radio and/or video signal, telephone, teletype, telecommunication, telegram, microfilm, microfiche, photographic film of any type, and/or media of any kind.

20.     "AND" and "OR" and "BETWEEN" and "AMONG" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of a request all information that otherwise might be construed to be outside of its scope.

21.     "ANY" shall mean any or all and the term "ALL" shall mean any or all

22.     "IDENTIFY" means to provide a description sufficient in specificity such that the document or thing can be unambiguously obtained by means of such description in a request for production pursuant to Rule 34 of the Federal Rules of Civil Procedure, which will include, whether applicable, the document's or thing's title, date, author(s) or creator(s), recipient(s), Bates number, and present location.

23.     "INCLUDING" means not limited to.

24.     The terms "PERSON" and "PERSONS" means any individual, corporation, partnership, association, organization, or other entity of any type or nature.

25.     The terms "RELATE TO," "RELATED TO," AND "RELATING TO" mean constituting, pertaining to, in connection with, reflecting, respecting, regarding, concerning, referring to, based upon, stating, showing, evidencing, establishing, supporting, negating, contradicting, describing, recording, noting, embodying, memorializing, containing, mentioning, studying, analyzing, discussing, specifying, identifying or in any manner logically, factually, indirectly or directly, or in any other way connecting to the matter addressed, in whole or in part.

26.     The singular form of a noun or pronoun shall be considered to include within its meaning the plural form of the noun or pronoun, and vice versa; and the past tense shall include

5

the present tense where the clear meaning is not distorted. The term "or" shall mean "and" and vice-versa, as necessary to bring within the scope of the following requests all information or DOCUMENTS that would be excluded absent this definition.

## **INSTRUCTIONS**

1.      PLAINTIFFS shall IDENTIFY, produce, AND permit the visual inspection AND reproduction of the following DOCUMENTS, electronically stored information, AND things which are in its possession, custody, or control, INCLUDING DOCUMENTS, electronically stored information, AND things in the actual OR constructive possession of PLAINTIFFS, its attorneys, experts, AND anyone else acting on its behalf. The production and visual inspection shall take place at Crowell & Moring LLP, 3 Embarcadero Center, 26th Fl., San Francisco CA 94111 (or such other place as may be stipulated by the parties).

2.      These requests are not limited by time unless stated within the request itself.

3.      Unless otherwise stated, the geographic scope covered by these requests is worldwide.

4.      If PLAINTIFFS claim that ANY DOCUMENT, tangible object, OR other thing responsive to ANY request was once in its possession, custody OR control AND has since been lost, discarded, destroyed, deleted, relinquished, OR disposed in some other manner, PLAINTIFFS shall IDENTIFY with particularity each such DOCUMENT AND set forth:

(a) The date the DOCUMENT was lost, discarded, destroyed, deleted, relinquished, OR disposed;

(b) The circumstances under which the DOCUMENT was lost, discarded, destroyed, deleted, relinquished, OR disposed; AND

(c) The identity of ALL PERSONS who had knowledge of, OR were present

when, the DOCUMENT was lost, discarded, destroyed, deleted, relinquished, OR disposed, as well as ALL PERSONS who authorized such actions.

5.     In the event that PLAINTIFFS contend that ANY DOCUMENT responsive to ANY discovery request below is privileged or otherwise excludable from discovery, PLAINTIFF shall:

(a) IDENTIFY each such DOCUMENT by date, author(s), signer(s), intended recipient(s), AND addressee(s);

(b) IDENTIFY each PERSON to whom a copy was furnished OR to whom the information OR advice was conveyed;

(c) state the general subject matter of the DOCUMENT; AND

(d) state the ground on which the claim of privilege OR immunity from disclosure is based.

Failure to do so will constitute a waiver of such a claim.

6.     If PLAINTIFFS claim a privilege OR immunity with regard to ANY DOCUMENT responsive to ANY discovery request below, PLAINTIFFS should nevertheless produce ALL portions of such DOCUMENT that contains information not appropriately subject to a claim of privilege OR immunity.

7.     These requests are continuing in nature under Rule 26(e) of the Federal Rules of Civil Procedure. If, at ANY time prior to the completion of the above-captioned matter, PLAINTIFFS obtain OR become aware of additional DOCUMENTS, tangible objects, AND things responsive to these requests, PLAINTIFFS shall promptly supplement its response to provide such DOCUMENTS, tangible objects, AND things to ROSS.

**REQUEST FOR PRODUCTION NO. 121.:**

DOCUMENTS sufficient to identify the KEY NUMBERS that are or have been assigned or ascribed to a judicial opinion by a machine, computer, software, or any non-human that assists in the assigning of KEY NUMBERS.

**REQUEST FOR PRODUCTION NO. 122.:**

DOCUMENTS sufficient to identify any machine, computer, software, or non-human that creates or assists in the process to determine which HEADNOTES or KEY NUMBERS should be assigned to a judicial opinion.

**REQUEST FOR PRODUCTION NO. 123.:**

DOCUMENTS AND COMMUNICATIONS sufficient to identify the financial value to YOU of the HEADNOTES.

**REQUEST FOR PRODUCTION NO. 124.:**

DOCUMENTS AND COMMUNICATIONS sufficient to identify the financial value to YOU of any HEADNOTES that YOU contend ROSS infringed, directly or indirectly.

**REQUEST FOR PRODUCTION NO. 125.:**

DOCUMENTS AND COMMUNICATIONS sufficient to identify the financial value to YOU of the KEY NUMBER SYSTEM.

**REQUEST FOR PRODUCTION NO. 126.:**

DOCUMENTS AND COMMUNICATIONS sufficient to identify the financial value to YOU of any KEY NUMBERS that YOU contend ROSS infringed, directly or indirectly.

**REQUEST FOR PRODUCTION NO. 127.:**

DOCUMENTS AND COMMUNICATIONS sufficient to identify the financial value to YOU of any copyrights that YOU contend ROSS infringed, directly or indirectly.

**REQUEST FOR PRODUCTION NO. 135.:**

DOCUMENTS sufficient to identify the financial value of the WESTLAW natural

language search functionality.

**REQUEST FOR PRODUCTION NO. 136.:**

DOCUMENTS sufficient to identify the average frequency of use of the KEY NUMBER

SYSTEM by YOUR LICENSEES from 2011 to present.

**REQUEST FOR PRODUCTION NO. 137.:**

DOCUMENTS sufficient to identify every HEADNOTE where the top suggested KEY

NUMBER by the JCaRE system was selected by the classifier, as stated at Bates TR-0036339.

**REQUEST FOR PRODUCTION NO. 138.:**

DOCUMENTS sufficient to identify every "Abstract Headnote" as defined at Bates TR-

0040287.

**REQUEST FOR PRODUCTION NO. 139.:**

DOCUMENTS sufficient to identify every "Concrete Headnote" as defined at Bates TR-

0040294.

**REQUEST FOR PRODUCTION NO. 140.:**

All DOCUMENTS produced to YOU in response to YOUR subpoena requests.

**REQUEST FOR PRODUCTION NO. 141.:**

ALL DOCUMENTS RELATING TO damages YOU claim to have suffered or be

entitled to.

OF COUNSEL:

Gabriel M. Ramsey
Warrington Parker
Kayvan M. Ghaffari
Jacob Canter
CROWELL & MORING LLP
3 Embarcadero Center, 26th Floor
San Francisco, CA 94111
Tel: (415) 986-2800

Mark A. Klapow
Lisa Kimmel
Joshua M. Rychlinski
Crinesha B. Berry
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004
Tel: (202) 624-2500

Dated: November 12, 2021
7491111 / 50241

POTTER ANDERSON & CORROON LLP

By: _/s/ Stephanie E. O'Byrne_____
    David E. Moore (#3983)
    Stephanie E. O'Byrne (#4446)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, DE 19801
    Tel: (302) 984-6000
    dmoore@potteranderson.com
    sobyrne@potteranderson.com

*Attorneys for Defendant/Counterclaimant*
*ROSS Intelligence, Inc.*

## CERTIFICATE OF SERVICE

I, Stephanie E. O'Byrne, hereby certify that on November 12, 2021, true and correct copies of the within document were served on the following counsel of record at the addresses and in the manner indicated:

## VIA ELECTRONIC MAIL

Jack B. Blumenfeld
Michael J. Flynn
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@mnat.com
mflynn@mnat.com

Daniel E. Laytin
Christa C. Cottrell
Cameron Ginder
Alyssa C. Kalisky
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
daniel.laytin@kirkland.com
christa.cottrell@kirkland.com
cameron.ginder@kirkland.com
alyssa.kalisky@kirkland.com

Dale Cendali, P.C.
Joshua L. Simmons
Eric Loverro
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
dale.cendali@kirkland.com
joshua.simmons@kirkland.com
eric.loverro@kirkland.com

Megan L. McKeown
KIRKLAND & ELLIS LLP
609 Main Street
Houston, TX 77002
megan.mckeown@kirkland.com

_/s/ Stephanie E. O'Byrne_
Stephanie E. O'Byrne

7193230 / 50241

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION, | ) ) ) ) ) | |
| Plaintiffs and Counterdefendants, | ) ) ) | C.A. No. 20-613 (LPS) |
| v. | ) ) ) | |
| ROSS INTELLIGENCE INC., | ) ) | |
| Defendant and Counterclaimant. | ) ) | |

**PLAINTIFFS AND COUNTERDEFENDANTS THOMSON REUTERS
ENTERPRISE CENTRE GMBH AND WEST PUBLISHING
CORPORATION'S RESPONSES AND OBJECTIONS TO
DEFENDANT AND COUNTERCLAIMANT ROSS INTELLIGENCE
INC.'S SECOND SET OF REQUESTS FOR PRODUCTION (NOS. 104–141)**

Pursuant to Federal Rules of Civil Procedure 26 and 34 and the Local Rules of the United

States District Court for the District of Delaware (the "Local Rules" and each a "Local Rule"),

Plaintiffs and Counterdefendants Thomson Reuters Enterprise Centre GmbH ("Thomson

Reuters") and West Publishing Corporation ("West") (collectively "Plaintiffs"), hereby respond to

Defendant and Counterclaimant ROSS Intelligence Inc.'s ("Defendant") Second Set of Requests

for Production, served on November 12, 2021 (the "Requests" and each individually, a "Request")

in the above-captioned action ("Litigation") as follows:

**GENERAL OBJECTIONS**

1. Plaintiffs object to the Requests to the extent that they purport to impose obligations

beyond those set forth in the Federal Rules of Civil Procedure, the Local Rules, or other applicable

law.

2.     Plaintiffs object to the Requests to the extent that they seek information that is subject to the attorney-client privilege, the work-product privilege, and/or any other applicable privilege or protection.  Plaintiffs do not waive, intend to preserve, and are preserving the attorney-client privilege, the work-product privilege, and every other applicable privilege or protection with respect to any information protected by such a privilege or protection.

3.     Plaintiffs object to the Requests to the extent that they seek proprietary or confidential business information, trade secrets, or other sensitive information, or documents that contain information that is non-responsive to the Requests.  To the extent that the response to any Request requires the disclosure of any non-privileged proprietary or confidential information, trade secrets or other sensitive information, Plaintiffs will provide such information pursuant to the Protective Order governing the parties to this Litigation.  D.I. 48.  By responding to the Requests, Plaintiffs do not waive, intend to preserve, and are preserving all of their rights to assert that any and all such information is confidential.  Information furnished by Plaintiffs shall be used only in connection with this Litigation and shall not be disclosed, in whole or in part, to any person or entity apart from the parties and their representatives in this Litigation and only as permitted by the Protective Order.

4.     Plaintiffs object to the Requests to the extent that they seek information that Defendant equally may otherwise obtain from public sources or with less burden and expense by using other means of discovery.

5.     In providing this response to the Requests, Plaintiffs do not in any way waive or intend to waive, but rather are preserving and intend to preserve:

(i)     All objections as to competency, authenticity, relevancy, materiality and admissibility;

    (ii)    All rights to object on any grounds to the use in any subsequent proceedings of any of the responses or information contained herein, including but not limited to the right to object to the trial of this or any other action;

    (iii)    All objections as to vagueness and ambiguity; and

    (iv)    All rights to object on any grounds to any further requests for production.

6.    Plaintiffs object to the Requests to the extent that they seek information set forth in documents that are outside Plaintiffs' possession, custody, and control.

7.    Plaintiffs object to the Requests to the extent that they are not limited to the time or geography relevant to this Litigation.  Indeed, Instruction No. 2 states that the Requests "are not limited by time unless stated within the request itself."  Similarly, Instruction No. 3 states, "Unless otherwise stated, the geographic scope covered by these requests is worldwide," and no Request includes a geographic limitation.

8.    The responses below shall not be interpreted to concede the truth of any factual assertion or implication contained in the Requests.  Plaintiffs' responses to the Requests in no way constitute an admission or acknowledgment by Plaintiffs as to the relevancy, materiality, or admissibility of any of the information contained there, and Plaintiffs expressly reserve their rights to object as such.

9.    Plaintiffs object to the Requests to the extent that they unfairly seek to restrict the facts upon which Plaintiffs may rely at trial.  Discovery has not been completed and Plaintiffs are not necessarily in possession of all the facts and documents upon which Plaintiffs intend to rely.  The responses submitted herewith are tendered to Defendant with the reservation that responses are submitted without limiting the evidence on which Plaintiffs may rely to support the contentions they may assert at the trial on this Litigation and to rebut or impeach the contentions, assertions,

and evidence that Defendant may present.  Plaintiffs reserve the right to supplement or amend this response at a future date.

10.     Plaintiffs object to the Requests as overly broad and unduly burdensome to the extent that any Request purports to seek "all DOCUMENTS," "all COMMUNICATIONS," or "all WESTLAW CONTENT," responsive to the subject matter of a particular Request.  Plaintiffs will produce responsive documents, if any, that are located after a reasonably diligent search, taking into account the many potential sources of information arguably responsive to the Requests, and the proportionality of the information sought to the burden of its production.

11.     Plaintiffs object to the First Set of Interrogatories to the extent that it is premature in that it asks or requires Plaintiffs to analyze or formulate contentions on matters for which Plaintiffs' investigation and discovery have not yet been completed. The responses provided below are based on the investigation conducted to date and are without prejudice to any later supplementation, amendment, or modification.

12.     A response indicating that Plaintiffs will produce documents that are responsive to a Request is not a representation or statement of belief that any such documents exist or have existed.

13.     Plaintiffs object to the Requests as overly broad to the extent that the Requests define the term "THOMSON REUTERS" to include "its present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on its behalf."  For the purpose of responding to the Requests, Plaintiffs will construe this term to mean solely Thomson Reuters Enterprise Centre GmbH, and not any other person or entity.

14.     Plaintiffs object to the Requests as overly broad to the extent that the Requests define the term "WEST" to include "its present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on its behalf." For the purpose of responding to the Requests, Plaintiffs will construe this term to mean solely West Publishing Corporation, and not any other person or entity.

15.     Plaintiffs objects to the Requests as overly broad to the extent that the Requests define the terms "YOU," "YOUR," and "PLAINTIFFS" to incorporate the definitions of the terms "THOMSON REUTERS" and "WEST" and thus are defined to include Thomson Reuters Enterprise Centre GmbH's and West Publishing Corporation's "present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on [their] behalf." For the purpose of responding to the Requests, Plaintiffs will construe the terms "YOU," "YOUR," and "PLAINTIFFS" to mean solely Thomson Reuters Enterprise Centre GmbH and West Publishing Corporation, and not any other person or entity.

16.     Plaintiffs object to the Requests as overly broad to the extent that the Requests define the terms "ROSS," "DEFENDANT," and "COUNTERCLAIMANT" to include ROSS Intelligence Inc.'s "present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on its behalf." For the purpose of responding to the Requests, Plaintiffs will construe this term to mean solely ROSS Intelligence Inc., and not any other person or entity.

17.     Plaintiffs object to the Requests as overly broad to the extent that the Requests define the term "LEGALEASE" to include LegalEase Solutions, LLC's "present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on its behalf."  For the purpose of responding to the Requests, Plaintiffs will construe this term to mean solely LegalEase Solutions, LLC, and not any other person or entity.

18.     Plaintiffs object to the Requests as overly broad to the extent that the Requests define "LEXISNEXIS" to include LexisNexis Group, Inc.'s "present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on its behalf."  For the purpose of responding to the Requests, Plaintiffs will construe this term to mean solely LexisNexis Group, Inc. and not any other person or entity.

19.     Plaintiffs object to the Requests as improper to the extent that the Requests define the term "IDENTIFY" to require Plaintiffs to provide a description of any document or thing as such a description is not required by Federal Rule of Civil Procedure 34.

20.     Plaintiffs object to Instruction No. 1 to the extent that it uses the term "IDENTIFY" as indicated in General Objection No. 19.  They also object to Instruction No. 1 to the extent that it purports to require Plaintiffs to produce documents and things "at Crowell & Moring LLP, 3 Embarcadero Center, 26th Fl., San Francisco CA 94111 (or such other place as may be stipulated by the parties)."  Plaintiffs will produce documents electronically, or at such place as the parties may agree.

21.     Plaintiffs object to Instruction No. 4 as overly broad and unduly burdensome to the extent it purports to require Plaintiffs to "IDENTIFY with particularity each such DOCUMENT"

that was "once in [Plaintiffs'] possession, custody OR control AND has since been lost, discarded, destroyed, deleted, relinquished, OR disposed in some other manner," by setting forth "(a) The date the DOCUMENT was lost, discarded, destroyed, deleted, relinquished, OR disposed; (b) The circumstances under which the DOCUMENT was lost, discarded, destroyed, deleted, relinquished, OR disposed; AND (c) The identity of ALL PERSONS who had knowledge of, OR were present when, the DOCUMENT was lost, discarded, destroyed, deleted, relinquished, OR disposed, as well as ALL PERSONS who authorized such actions."

22.     Plaintiffs object to Instruction No. 5 to the extent it suggests a failure to identify documents "responsive to ANY discovery request . . . is privileged or otherwise excludable from discovery" constitutes "a waiver of such a claim" of privilege.  Plaintiffs will produce a privilege log within a reasonable period of time after the document substantially complete deadline or upon a mutually agreeable schedule.

23.     Plaintiffs incorporate the foregoing General Objections into each and every one of their responses to the Requests as set forth below.

**REQUEST FOR PRODUCTION NO. 123:**

DOCUMENTS AND COMMUNICATIONS sufficient to identify the financial value to YOU of the HEADNOTES.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 123:**

Plaintiffs incorporate by reference the above-stated General Objections as if fully set forth herein. Plaintiffs specifically object to this Request to the extent that it seeks documents that are neither relevant to any claim or defense of any party in this Litigation nor proportional to the needs of the case because it seeks "DOCUMENTS AND COMMUNICATIONS sufficient to identify the financial value to YOU of the HEADNOTES." Plaintiffs object to this Request as vague and ambiguous to the extent that the term "financial value" is unclear and undefined. Plaintiffs object to this Request as overly broad to the extent that it is unlimited as to time and does not specify a timeframe that is relevant to this Litigation as indicated in General Objection No. 7. Plaintiffs object to this Request as unduly burdensome to the extent that it seeks documents made unavailable by the passage of time. Plaintiffs object to this Request as overly broad and unduly burdensome to the extent that it seeks "DOCUMENTS AND COMMUNICATIONS sufficient to identify the financial value to YOU of the HEADNOTES." Plaintiffs object to this Request to the extent that it is duplicative of other Requests, including Request Nos. 86, 89, 100, 101, 102, 124, 125, 126, 127, 134, 135, and 141. Plaintiffs object to this Request as overly broad to the extent that it defines the term "YOU" to incorporate the definitions of the terms "THOMSON REUTERS" and "WEST" and thus is defined to include Thomson Reuters Enterprise Centre GmbH's and West Publishing Corporation's "present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on [their] behalf," as indicated in General Objection No. 15. Plaintiffs object to this Request to the extent that it calls for confidential

information, trade secrets, or proprietary business information. Plaintiffs will produce documents subject to the Protective Order, D.I. 48, which the Court ordered on May 21, 2021.

Subject to, as limited by, and without waiver of the foregoing objections, Plaintiffs state that they will produce relevant, non-privileged documents sufficient to show the value of West Headnotes that are located after a reasonably diligent search, if any.

## REQUEST FOR PRODUCTION NO. 124:

DOCUMENTS AND COMMUNICATIONS sufficient to identify the financial value to YOU of any HEADNOTES that YOU contend ROSS infringed, directly or indirectly.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 124:

Plaintiffs incorporate by reference the above-stated General Objections as if fully set forth herein. Plaintiffs specifically object to this Request to the extent that it seeks documents that are neither relevant to any claim or defense of any party in this Litigation nor proportional to the needs of the case because it seeks "DOCUMENTS AND COMMUNICATIONS sufficient to identify the financial value to YOU of any HEADNOTES that YOU contend ROSS infringed, directly or indirectly." Plaintiffs object to this Request as vague and ambiguous to the extent that the term "financial value" is unclear and undefined. Plaintiffs object to this Request as overly broad to the extent that it is unlimited as to time and does not specify a timeframe that is relevant to this Litigation as indicated in General Objection No. 7. Plaintiffs object to this Request as unduly burdensome to the extent that it seeks documents made unavailable by the passage of time. Plaintiffs object to this Request as overly broad and unduly burdensome to the extent that it seeks "DOCUMENTS AND COMMUNICATIONS sufficient to identify the financial value to YOU of any HEADNOTES that YOU contend ROSS infringed, directly or indirectly." Plaintiffs object to this Request to the extent that it is duplicative of other Requests, including Request Nos. 86, 89, 100, 101, 102, 123, 125, 126, 127, 134, 135, and 141. Plaintiffs object to this Request as overly

broad to the extent that it defines the term "YOU" to incorporate the definitions of the terms "THOMSON REUTERS" and "WEST" and thus is defined to include Thomson Reuters Enterprise Centre GmbH's and West Publishing Corporation's "present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on [their] behalf," as indicated in General Objection No. 15.  Plaintiffs object to this Request as overly broad to the extent that it defines the term "ROSS" to include ROSS Intelligence Inc.'s "present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on its behalf," as indicated in General Objection No. 16.  Plaintiffs object to this Request to the extent that it calls for confidential information, trade secrets, or proprietary business information.  Plaintiffs will produce documents subject to the Protective Order, D.I. 48, which the Court ordered on May 21, 2021. Plaintiffs object to this Request to the extent that it is premature in that it asks or requires Plaintiffs to produce documents on matters for which Plaintiffs' investigation and discovery have not yet been completed.  The documents that Plaintiffs produce will be based on the investigation conducted to date and are without prejudice to any later supplementation, amendment, or modification.

Subject to, as limited by, and without waiver of the foregoing objections, Plaintiffs state that they will produce relevant, non-privileged documents sufficient to show the value of Plaintiffs' content that Defendant copied that are located after a reasonably diligent search, if any.

**REQUEST FOR PRODUCTION NO. 125:**

DOCUMENTS AND COMMUNICATIONS sufficient to identify the financial value to YOU of the KEY NUMBER SYSTEM.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 125:**

Plaintiffs incorporate by reference the above-stated General Objections as if fully set forth herein.  Plaintiffs specifically object to this Request to the extent that it seeks documents that are neither relevant to any claim or defense of any party in this Litigation nor proportional to the needs of the case because it seeks "DOCUMENTS AND COMMUNICATIONS sufficient to identify the financial value to YOU of the KEY NUMBER SYSTEM."  Plaintiffs object to this Request as vague and ambiguous to the extent that the term "financial value" is unclear and undefined.  Plaintiffs object to this Request as overly broad to the extent that it is unlimited as to time and does not specify a timeframe that is relevant to this Litigation as indicated in General Objection No. 7.  Plaintiffs object to this Request as unduly burdensome to the extent that it seeks documents made unavailable by the passage of time.  Plaintiffs object to this Request as overly broad and unduly burdensome to the extent that it seeks "DOCUMENTS AND COMMUNICATIONS sufficient to identify the financial value to YOU of the KEY NUMBER SYSTEM."  Plaintiffs object to this Request to the extent that it is duplicative of other Requests, including Request Nos. 86, 89, 100, 101, 102, 123, 124, 126, 127, 134, 135, and 141.  Plaintiffs object to this Request as overly broad to the extent that it defines the term "YOU" to incorporate the definitions of the terms "THOMSON REUTERS" and "WEST" and thus is defined to include Thomson Reuters Enterprise Centre GmbH's and West Publishing Corporation's "present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on [their] behalf," as indicated in General Objection No. 15.  Plaintiffs object to this Request to the extent that it calls for confidential information, trade secrets, or proprietary business information.  Plaintiffs will produce documents subject to the Protective Order, D.I. 48, which the Court ordered on May 21, 2021.

Subject to, as limited by, and without waiver of the foregoing objections, Plaintiffs state that they will produce relevant, non-privileged documents sufficient to show the value of the WKNS that are located after a reasonably diligent search, if any.

**REQUEST FOR PRODUCTION NO. 126:**

DOCUMENTS AND COMMUNICATIONS sufficient to identify the financial value to YOU of any KEY NUMBERS that YOU contend ROSS infringed, directly or indirectly.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 126:**

Plaintiffs incorporate by reference the above-stated General Objections as if fully set forth herein.  Plaintiffs specifically object to this Request to the extent that it seeks documents that are neither relevant to any claim or defense of any party in this Litigation nor proportional to the needs of the case because it seeks "DOCUMENTS AND COMMUNICATIONS sufficient to identify the financial value to YOU of any KEY NUMBERS that YOU contend ROSS infringed, directly or indirectly."  Plaintiffs object to this Request as vague and ambiguous to the extent that the term "financial value" is unclear and undefined.  Plaintiffs object to this Request as overly broad to the extent that it is unlimited as to time and does not specify a timeframe that is relevant to this Litigation as indicated in General Objection No. 7.  Plaintiffs object to this Request as unduly burdensome to the extent that it seeks documents made unavailable by the passage of time. Plaintiffs object to this Request as overly broad and unduly burdensome to the extent that it seeks "DOCUMENTS AND COMMUNICATIONS sufficient to identify the financial value to YOU of any KEY NUMBERS that YOU contend ROSS infringed, directly or indirectly."  Plaintiffs object to this Request to the extent that it is duplicative of other Requests, including Request Nos. 86, 89, 100, 101, 102, 123, 124, 125, 127, 134, 135, and 141.  Plaintiffs object to this Request as overly broad to the extent that it defines the term "YOU" to incorporate the definitions of the terms "THOMSON REUTERS" and "WEST" and thus is defined to include Thomson Reuters

Enterprise Centre GmbH's and West Publishing Corporation's "present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on [their] behalf," as indicated in General Objection No. 15.  Plaintiffs object to this Request as overly broad to the extent that it defines the term "ROSS" to include ROSS Intelligence Inc.'s "present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on its behalf," as indicated in General Objection No. 16.  Plaintiffs object to this Request to the extent that it calls for confidential information, trade secrets, or proprietary business information.  Plaintiffs will produce documents subject to the Protective Order, D.I. 48, which the Court ordered on May 21, 2021. Plaintiffs object to this Request to the extent that it is premature in that it asks or requires Plaintiffs to produce documents on matters for which Plaintiffs' investigation and discovery have not yet been completed.  The documents that Plaintiffs produce will be based on the investigation conducted to date and are without prejudice to any later supplementation, amendment, or modification.

Subject to, as limited by, and without waiver of the foregoing objections, Plaintiffs state that they will produce relevant, non-privileged documents sufficient to show the value of the WKNS that are located after a reasonably diligent search, if any.

**REQUEST FOR PRODUCTION NO. 127:**

DOCUMENTS AND COMMUNICATIONS sufficient to identify the financial value to YOU of any copyrights that YOU contend ROSS infringed, directly or indirectly.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 127:**

Plaintiffs incorporate by reference the above-stated General Objections as if fully set forth herein.  Plaintiffs specifically object to this Request to the extent that it seeks documents that are

**REQUEST FOR PRODUCTION NO. 140:**

All DOCUMENTS produced to YOU in response to YOUR subpoena requests.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 140:**

Plaintiffs incorporate by reference the above-stated General Objections as if fully set forth herein.  Plaintiffs object to this Request as overly broad to the extent that it defines the term "YOU" to incorporate the definitions of the terms "THOMSON REUTERS" and "WEST" and thus is defined to include Thomson Reuters Enterprise Centre GmbH's and West Publishing Corporation's "present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on [their] behalf," as indicated in General Objection No. 15.

Subject to, as limited by, and without waiver of the foregoing objections, Plaintiffs state that they will provide Defendant with a copy of the productions received in response to Plaintiffs' subpoenas.

**REQUEST FOR PRODUCTION NO. 141:**

ALL DOCUMENTS RELATING TO damages YOU claim to have suffered or be entitled to.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 141:**

Plaintiffs incorporate by reference the above-stated General Objections as if fully set forth herein.  Plaintiffs specifically object to this Request as overly broad and unduly burdensome to the extent that it seeks "ALL DOCUMENTS" as indicated in General Objection No. 10, and more specifically, "ALL DOCUMENTS RELATING TO damages YOU claim to have suffered or be entitled to."  Plaintiffs object to this Request to the extent that it is duplicative of other Requests, including Request Nos. 86, 89, 100, 101, 102, 123, 124, 125, 126, 127, 134, and 135.  Plaintiffs

object to this Request to the extent that it is premature in that it asks or requires Plaintiffs to produce documents on matters for which Plaintiffs' investigation and discovery have not yet been completed. The documents that Plaintiffs produce will be based on the investigation conducted to date and are without prejudice to any later supplementation, amendment, or modification.

Subject to, as limited by, and without waiver of the foregoing objections, Plaintiffs state that they will produce relevant, non-privileged documents showing Plaintiffs' harm from Defendant's conduct that are located after a reasonably diligent search, if any.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

OF COUNSEL:

Dale M. Cendali
Joshua L. Simmons
Eric A. Loverro
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
(212) 446-4800

Daniel E. Laytin
Christa C. Cottrell
Cameron Ginder
Alyssa C. Kalisky
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL  60654
(312) 862-2000

Megan McKeown
KIRKLAND & ELLIS LLP
609 Main Street
Houston, TX  77002
(713) 836-3600

December 13, 2021

_____

Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com

*Attorneys for Plaintiffs and
Counterdefendants Thomson Reuters
Enterprise Center GmbH and West Publishing
Corporation*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 13, 2021, copies of the foregoing were caused to be

served upon the following in the manner indicated:

David E. Moore, Esquire                                          *VIA ELECTRONIC MAIL*
Stephanie E. O'Byrne, Esquire
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE  19801
*Attorneys for Defendant and Counterclaimant*

Joshua M. Rychlinski, Esquire                               *VIA ELECTRONIC MAIL*
Mark A. Klapow, Esquire
Lisa Kimmel, Esquire
Crinesha B. Berry, Esquire
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, DC  20004
*Attorneys for Defendant and Counterclaimant*

Gabriel M. Ramsey, Esquire                                  *VIA ELECTRONIC MAIL*
Kayvan M. Ghaffari, Esquire
Jacob Canter, Esquire
Warrington Parker, Esquire
CROWELL & MORING LLP
3 Embarcadero Center, 26th Floor
San Francisco, CA  94111
*Attorneys for Defendant and Counterclaimant*


*/s/ Michael J. Flynn*
_____
Michael J. Flynn (#5333)

# EXHIBIT E

**Canter, Jacob**

| | |
|---|---|
| **From:** | Means, Miranda <miranda.means@kirkland.com> |
| **Sent:** | Monday, April 11, 2022 2:47 PM |
| **To:** | Steinberg, Joachim; Ghaffari, Kayvan; ROSS Lit Team; Berry, Crinesha |
| **Cc:** | #Thomson-Ross; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; *dmoore@Potteranderson.com1; *bpalapura@potteranderson.com |
| **Subject:** | RE: TR v. ROSS - Missing ROSS Financial Information |

External Email

Dear Joachim,

Plaintiffs are under no obligation to identify these documents for ROSS. We had asked ROSS about whether it had updated its own financial document production in light of the fact that ROSS's initial production was incomplete, and at the time of our request it was unclear whether ROSS had included further financial documents in amongst the millions of documents it produced after the document production substantially complete deadline. This is entirely different from your broad request to identify documents responsive to a number of different requests, particularly when Plaintiffs' production was timely and did not include millions of cases through which ROSS must sift. Nonetheless, in the interest of moving things forward, we provide below examples of documents responsive to each of the requests you mentioned, which are consistent with what Plaintiffs agreed to produce in this case. We trust this resolves the issue.

- **RFP Nos. 100, 101, and 141:** Plaintiffs have produced relevant, non-privileged responsive documents showing Plaintiffs' harm from Defendant's conduct, including without limitation: TR-0836004; TR-0894151; TR-0002846; TR-0908447; and TR-0521595.

- **RFP No. 102**: This request seeks all documents relating to Plaintiffs' claims. We would direct you to all of the documents that Plaintiffs have produced in this case. Of course, discovery is not over, and we reserve the right to produce additional documents and rely on them in support of Plaintiffs' claims.

- **RFP No. 123, 124, 125, and 126:** Plaintiffs have produced relevant, non-privileged documents sufficient to show the value of the content copied, including the value of the West Headnotes and West Key Numbers, including, without limitation: TR-0836004; TR-0894151; TR-0002846; and TR-0908447.

Best regards,
Miranda

**Miranda Means**
She/Her/Hers

**KIRKLAND & ELLIS LLP**
200 Clarendon Street, Boston, MA 02116
**T** +1 617 385 7419
**M** +1 617 320 9248

miranda.means@kirkland.com

**From:** Steinberg, Joachim <JSteinberg@crowell.com>
**Sent:** Thursday, April 7, 2022 11:07 PM
**To:** Means, Miranda <miranda.means@kirkland.com>; Ghaffari, Kayvan <KGhaffari@crowell.com>; ROSS Lit Team <Rosslitteam@crowell.com>; Berry, Crinesha <CBerry@crowell.com>
**Cc:** #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com

<bpalapura@potteranderson.com>
**Subject:** RE: TR v. ROSS - Missing ROSS Financial Information

Miranda,

Following up on the below, can Plaintiffs please identify documents responsive to ROSS's RFPs Nos. 100, 101, 102, 123-27, and 141? If Plaintiffs will not do so, please let us know your availability for a meet and confer on Monday, April 11.

Best regards,
Joachim

**Joachim B. Steinberg**
Pronouns: he/him/his
Crowell & Moring LLP
jsteinberg@crowell.com
+1.415.365.7461 direct   |   +1.917.575.6244 mobile

---

**From:** Steinberg, Joachim
**Sent:** Tuesday, March 8, 2022 1:47 PM
**To:** Means, Miranda <miranda.means@kirkland.com>; Ghaffari, Kayvan <KGhaffari@crowell.com>; ROSS Lit Team <Rosslitteam@crowell.com>; Berry, Crinesha <CBerry@crowell.com>
**Cc:** #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: TR v. ROSS - Missing ROSS Financial Information

Miranda,

ROSS has produced the consolidated financial statements within its possession, custody, or control, located after a reasonable search, from May 2015 until June 2020, after this litigation began. In particular, please see ROSS-009494331 (monthly balance sheets from May 2015 through December 2016); ROSS-010300426 (consolidated balance sheet from December 2017); ROSS-009668639 (consolidated balance sheet from December 2018); ROSS-010318459 (consolidated balance sheet from December 2019); ROSS-009721064 (consolidated balance sheet from June 2020); and ROSS-010364506  (financial projections through December 2020). Other financial documents produced include:

ROSS-003278267, ROSS-003278045, ROSS-010221960, ROSS-010221959, ROSS-010323324, ROSS-010323272, ROSS-009725908, ROSS-009725864, ROSS-010323194, ROSS-010323018, ROSS-009725677, ROSS-009725675, ROSS-009725612, ROSS-009725605, ROSS-010322928, ROSS-010322920, ROSS-010322919, ROSS-009725538, ROSS-009725534, ROSS-009725472, ROSS-010322787, ROSS-009725466, ROSS-009725036, ROSS-010322631, ROSS-010322551, ROSS-009724983, ROSS-010322513, ROSS-010322423, ROSS-010322390, ROSS-010322226, ROSS-009724653, ROSS-009724635, ROSS-010321970, ROSS-010321701, ROSS-009724328, ROSS-010321557, ROSS-010321554, ROSS-010321552, ROSS-010321551, ROSS-009724273, ROSS-009724002, ROSS-009724001, ROSS-010321322, ROSS-010321321, ROSS-010321010, ROSS-009723513, ROSS-010320799, ROSS-010320798, ROSS-010320776, ROSS-010320775, ROSS-010320773, ROSS-009723321, ROSS-010320665, ROSS-009723190, ROSS-009723181, ROSS-010320544, ROSS-009723167, ROSS-010320363, ROSS-009722867, ROSS-010320219, ROSS-010320092, ROSS-009722810, ROSS-010320024, ROSS-009722781, ROSS-009722699, ROSS-010320005, ROSS-010319997, ROSS-009722606, ROSS-010319914, ROSS-009722349, ROSS-010319771, ROSS-010319595, ROSS-009722081, ROSS-010319520, ROSS-010319517, ROSS-009722034, ROSS-009722028, ROSS-009721539, ROSS-009721525, ROSS-009721522, ROSS-009721521, ROSS-010318686, ROSS-010318684, ROSS-009721139, ROSS-009721138, ROSS-009721062, ROSS-010318448, ROSS-009720977, ROSS-010318437, ROSS-010318435, ROSS-010318431, ROSS-009720945, ROSS-010316866, ROSS-010316865, ROSS-010306690, ROSS-010306683, ROSS-

009705710, ROSS-009705518, ROSS-010300433, ROSS-009698876, ROSS-010300416, ROSS-010300415, ROSS-010300414, ROSS-010292067, ROSS-010292064, ROSS-010291962, ROSS-010291961, ROSS-009690394, ROSS-009690393, ROSS-010291541, ROSS-009688583, ROSS-010290089, ROSS-009688516, ROSS-010279751, ROSS-009677267, ROSS-010279547, ROSS-009676660, ROSS-009676260, ROSS-009676258, ROSS-010278634, ROSS-009676233, ROSS-009676232, ROSS-009675875, ROSS-009668796, ROSS-009668688, ROSS-010271702, ROSS-010271701, ROSS-009668640, ROSS-010271696, ROSS-009668638, ROSS-010271649, ROSS-010270844, ROSS-010270585, ROSS-009667620, ROSS-009667571, ROSS-009666105, ROSS-010268840, ROSS-009664862, ROSS-010268031, ROSS-010265185, ROSS-009661179, ROSS-010264450, ROSS-009660815, ROSS-010264083, ROSS-009660296, ROSS-009659609, ROSS-009659437, ROSS-009659301, ROSS-009659108, ROSS-010262295, ROSS-010262269, and ROSS-009503144.

We trust this resolves this issue.

We have also requested financial data related to Westlaw's value. In particular, please refer to ROSS's RFPs Nos. 100, 101, 102, 123-27, and 141. We do not believe you have produced documents sufficient to respond to these requests. Please produce all responsive documents immediately, or identify every document responsive to these requests that you have produced.

Kind regards,
Joachim

**Joachim B. Steinberg**
Pronouns: he/him/his
Crowell & Moring LLP
jsteinberg@crowell.com
+1.415.365.7461 direct  |  +1.917.575.6244 mobile

---

**From:** Means, Miranda <miranda.means@kirkland.com>
**Sent:** Monday, March 7, 2022 6:59 AM
**To:** Steinberg, Joachim <JSteinberg@crowell.com>; Ghaffari, Kayvan <KGhaffari@crowell.com>; ROSS Lit Team <Rosslitteam@crowell.com>; Berry, Crinesha <CBerry@crowell.com>
**Cc:** #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** TR v. ROSS - Missing ROSS Financial Information

External Email

Dear Joachim,

Plaintiffs' Request for Production No. 84 asked that ROSS produce documents sufficient to show ROSS's yearly and monthly gross and net revenues, expenses, and profits, from conception until today.  We have only been able to locate documents showing ROSS's monthly income statements from May 2015 to May 2017, and a consolidated balance sheet from July 2017.  ROSS also produced projected financial information from 2018, but nothing from a later date, and certainly nothing up until the present.  If ROSS contends that these documents have already been produced, please identify them by Bates Number.  If ROSS has not produced updated financial documents responsive to Request No. 84, please produce such documents by **March 8**, or explain ROSS's basis for withholding such documents.

Best regards,
Miranda

**Miranda Means**
She/Her/Hers

**KIRKLAND & ELLIS LLP**
200 Clarendon Street, Boston, MA 02116
**T**  +1 617 385 7419
**M** +1 617 320 9248

miranda.means@kirkland.com

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

# EXHIBIT F

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

EXHIBIT G

**NATIVE DOCUMENT PLACEHOLDER**

**Please review the native document TR-0836004_HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY.xlsx**

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

TR-0836004

# EXHIBIT H

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT I

**NATIVE DOCUMENT PLACEHOLDER**

**Please review the native document TR-0908447_HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY.xlsx**

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

TR-0908447

# EXHIBIT J

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

# EXHIBIT K

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT L

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT M

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

# EXHIBIT N

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

# EXHIBIT O

## Canter, Jacob

| | |
|---|---|
| **From:** | Steinberg, Joachim |
| **Sent:** | Wednesday, March 30, 2022 9:34 AM |
| **To:** | Means, Miranda |
| **Cc:** | ROSS Lit Team; #Thomson-Ross; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; *dmoore@Potteranderson.com1; *bpalapura@potteranderson.com |
| **Subject:** | Thomson Reuters Enterprise Centre GmBH et al v. ROSS: Licensing Documents |

Miranda,

Plaintiffs have previously stated that TR-0908414-TR-908442 and TR-0908413 are sufficient to show Thompson Reuter's licensing strategy. We do not think that is accurate. Those two documents consist, in their entirety, of a one-page guidance of fewer than 250 words and an addendum to general policies from one year, 2021, which, as you know, is after the complaint was filed. At the very minimum, meeting your burden to produce documents sufficient to show Plaintiffs' licensing strategy would include addenda from previous years and the general polices themselves. And the addendum that was produced clearly indicates that there are other documents that exist that are necessary to understand it. For example, at page 17 (TR-0908432), ██████████████████████████████████████████ ████████████████████████████████ Authorized and standard discounts are not discussed anywhere else in this document, except to note that certain discounting practices might implicate antitrust concerns. As a result, this production is insufficient.

████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████ nd other documents produced by Plaintiffs show that there are unproduced documents which reflect Plaintiffs' overall licensing strategy.  For example, TR-0358927 █████████████████████ *See* TR-0358927 at 22.  If the transfer pricing documentation reflects the value of any Westlaw-products, then it is plainly relevant to understanding Plaintiffs' overall licensing strategy.  In addition, TR-0908447 ██████████████████ ████████████████████████████████████████ Based on this information, documents must exist which detail how Plaintiffs reached these expenditure amounts.

If you will not produce documents sufficient to show Plaintiffs' licensing strategy, please provide your earliest availability for a meet-and-confer call.

Kind regards,
Joachim

**Joachim B. Steinberg**
Pronouns: he/him/his
jsteinberg@crowell.com
+1.415.365.7461 direct  |  +1.917.575.6244 mobile
LinkedIn

Crowell & Moring LLP
3 Embarcadero Center
26th Floor

San Francisco, CA 94111

# Crowell

**Collaboration Powers Success**

crowell.com

This message may contain privileged and confidential information. IF IT WAS SENT TO YOU BY MISTAKE, DO NOT READ IT. Instead, please notify the sender (or postmaster@crowell.com) by reply e-mail, and delete this e-mail. Unauthorized dissemination, forwarding or copying of this e-mail is strictly prohibited.