IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION, | ) ) ) ) ) | |
| Plaintiffs and Counterdefendants, | ) ) ) | C.A. No. 20-613 (SB) **REDACTED - PUBLIC VERSION** |
| v. | ) ) | |
| ROSS INTELLIGENCE INC., | ) ) | |
| Defendant and Counterclaimant. | ) ) ) | |

## LETTER TO THE HONORABLE STEPHANOS BIBAS
## FROM MICHAEL FLYNN

OF COUNSEL:

Dale M. Cendali
Joshua L. Simmons
Eric A. Loverro
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
(212) 446-4800

Miranda Means
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
mflynn@mnat.com

*Attorneys for Plaintiffs and Counterdefendants Thomson Reuters Enterprise Center GmbH and West Publishing Corporation*

**Original Filing Date: July 11, 2022**
**Redacted Filing Date: July 18, 2022**

Dear Judge Bibas:

Pursuant to D.I. 188, Plaintiffs submit this letter concerning the Parties' pending discovery disputes, namely, ROSS's request that Plaintiffs further supplement their Second Supplemental Response to Interrogatory No. 1 and produce certain categories of documents. ROSS's request is just another in a long line of attempts to burden Plaintiffs and disrupt their business with prolonged and disproportionate discovery.

Plaintiffs brought this case after they learned that ROSS impermissibly copied extensive content from Westlaw for competitive purposes. Plaintiffs own copyrights in the original editorial content created by their attorney-editors. This includes West Headnotes, which describe and synthesize key concepts in a judicial opinion, as well as editorial decisions to recommend West Key Number topics to a particular headnote, resulting in the organization of that judicial opinion into the West Key Number System ("WKNS"). ROSS is a competitor trying to develop an artificial intelligence-based legal research platform to replace Westlaw. ROSS needed a large amount of high quality "training data" to do this, in particular, memos consisting of topical questions, ranked answers, and a reference list of cases. To create this large dataset, rather than writing questions itself, creating its own topics, or developing its own list of responsive cases, ROSS copied from Plaintiffs. In particular, at ROSS's direction and control, LegalEase Solutions ("LegalEase") created 25,000 memos by navigating to a West Key Number, reproducing the West Headnotes listed therein as the memo "question" and then linking those to cases citing the West Headnote. These memos used by ROSS to train its search algorithm.

Plaintiffs have produced almost a *million* pages of documents in this case, put up multiple 30(b)(6) witnesses, and provided detailed written discovery responses. All 25,000 memos have been produced, as have the cases and headnotes that were copied. *Fact discovery has now been closed for over two months*, the Parties are in the midst of preparing expert reports, and each now knows exactly how the infringement occurred. While fact discovery should rightfully be behind them, ROSS has made every effort to mire Plaintiffs in continued discovery disputes. While Plaintiffs have attempted to accommodate ROSS's requests where reasonable, ROSS goes well beyond the needs of the case. It has become clear that Plaintiffs can never do enough to satisfy the abusive demands.

*First*, ROSS is claiming that Plaintiffs' response to Interrogatory No. 1, which asks Plaintiffs to identify the specific portions of the Westlaw Content that Plaintiffs claim is subject to the copyright that ROSS infringes, is insufficient. As the Court can see from Plaintiffs' 62-page second supplemental Interrogatory Response, attached hereto as **Exhibit 1**, Plaintiffs already clearly identify the portions of Westlaw Content that ROSS infringed, including portions of WKNS to assign topics to memos, West Headnotes within a West Key Number, to create questions for memos, and the original selection and arrangement of those West Headnotes, their associated cases, and Key Numbers within WKNS. Plaintiffs go above and beyond to provide detail on how the copying took place, citing extensively from the record. Plaintiffs should not have to supplement for a third time when they already adequately responded to the Interrogatory.

*Second*, ROSS newly raises eight document disputes with the Court. These can all be denied based on ROSS's inexcusable delay. Objections and responses to requests ROSS has brought to the Court were served months ago, with most served in 2021. When the February 4,

The Honorable Stephanos Bibas
July 11, 2022

2022 deadline to substantially complete document production arrived, Plaintiffs already had produced everything that they agreed to produce. *See* TR-0000001–TR-0909019. Plaintiffs were clear for months about what they would and would not produce—indeed, a letter Plaintiffs sent in April on many of these document disputes was ignored by ROSS for over a month, which is exemplary of ROSS's strategy of delay. When ROSS did finally respond to Plaintiffs, it sent a flurry of different protracted letters rehashing old arguments and demanding immediate responses, requiring Plaintiffs to expend more resources to address them. Plaintiffs are ready to proceed with expert reports on August 1, 2022, as ROSS has agreed and as the Court has ordered; these eight belated disputes are tantamount to a motion to extend the schedule without good cause. They should be denied.

Not only are they untimely, but these requests are otherwise highly objectionable. For instance, relying on the fact that Judge Stark is no longer on this case, ROSS seeks cease and desist letters and judicial opinion sourcing documents based on arguments that Judge Stark previously ***rejected*** on ROSS's last motion to compel. ROSS also seeks categories of documents Plaintiffs have either already sufficiently produced or do not exist, such as licensing and financial documents, audit trails and usage statistics. And many of these documents are irrelevant, overly broad, and unduly burdensome, including source code and search & functionality value documents. What is particularly troubling is ROSS brings these unreasonable demands right as the Parties are preparing for opening expert reports, betraying its true goal of distracting Plaintiffs from expert discovery and further burdening them with endless discovery.

Discovery has its limits, and Plaintiffs respectfully ask that the Court deny ROSS's requests and allow the Parties to move forward with expert discovery as scheduled.

## I.   PROCEDURAL BACKGROUND

On May 6, 2020, Plaintiffs filed this lawsuit against ROSS asserting claims of copyright infringement and tortious interference with contract. D.I. 1. Unsurprisingly, before discovery commenced, Plaintiffs were unaware of the precise scope of ROSS's copying. The Parties have now engaged in extensive discovery that has clarified the claims and the nature of ROSS's conduct. In particular, Plaintiffs served their responses to ROSS's First Set of Requests for Production (RFP Nos. 1–103) on July 12, 2021. Plaintiffs served their responses to ROSS's Second Set of Requests for Production (RFP Nos. 104–141) on December 13, 2021. Plaintiffs served their responses to ROSS's Fourth Set of Requests for Production (RFP Nos. 143–173) on April 6, 2022. True and correct copies of these sets of objections and responses are attached hereto as **Exhibits 2 and 3**. Plaintiffs' document production was substantially complete on the deadline, February 4, 2022.[1] On April 5, 2022, ROSS requested a briefing schedule regarding only Plaintiffs' second supplemental response to Interrogatory No. 1. D.I. 161. Due to scheduling conflicts and a health emergency, certain depositions were taken out of time,[2] but the

---

[1] ROSS produced around 13 million documents after the documents substantially complete deadline, which made preparation for depositions difficult. In spite of ROSS's significant delay in producing documents, Plaintiffs made a concerted effort to raise and resolve all of its fact discovery disputes during the fact discovery period, in line with the schedule ordered by the Court. D.I. 74.

[2] Due to a health issue, the last fact deposition, that of Plaintiffs' witness Isabelle Moulinier, took place on July 1, 2022.

The Honorable Stephanos Bibas
July 11, 2022

vast majority were completed in March and April. All depositions are now complete, and fact discovery closed on April 21, 2022. D.I. 74.

ROSS never moved to extend the close of fact discovery past April 21, 2022. On May 12, 2022, the Parties submitted a joint status report to the Court, which mentioned only one discovery dispute pending involving Interrogatory No. 1. D.I. 180. The Parties had already exchanged extensive correspondence on all eight of the discovery disputes outlined by ROSS in its recent letters, but ROSS did not seek to extend the deadline to complete fact discovery, nor did the joint status report include any mention of any of the eight document disputes ROSS now raises. *Id.* On June 21, 2022, the Parties submitted a stipulation and order to set the deadline for expert reports. D.I. 184. On July 5, 2022, the Parties submitted an updated stipulation on the expert scheduling, D.I. 190, which the Court entered on July 6, 2022, D.I. 191.

On June 27, 2022 and July 1, 2022, ROSS submitted letters to the Court asking for a briefing schedule on the eight document requests herein identified. D.I. 186, 187, 189. In these letters, ROSS identified the documents it is moving on as: (1) Plaintiffs' source code (RFP Nos. 67-68); (2) cease and desist correspondence/DMCA notices (RFP Nos. 111–115); (3) judicial opinion sourcing documents (RFP Nos. 128, 129, 131); (4) search & functionality value documents (RFP Nos. 132–135); (5) usage statistics (RFP No. 136); (6) audit trails (RFP Nos. 118, 143–149); (7) Plaintiffs' licensing strategy documents (RFP Nos. 87–88); and (8) documents showing the financial value of Westlaw content (RFP Nos. 100–102, 123–126, and 141). *See* D.I. 161, 186, 187, & 189. The Court has ordered that the Parties submit simultaneous briefs on these disputes, which precipitated the filing of this letter. D.I. 188.

## II. INTERROGATORY RESPONSE

Despite the extensive discovery that has occurred to date, ROSS asks that Plaintiffs supplement their 62-page response to Interrogatory No. 1 for a *third* time because Plaintiffs purportedly have not "precisely identif[ied] the allegedly copyright material" that was infringed. Email, J. Steinberg to M. Means, Mar. 26, 2022. This is incorrect.

Plaintiffs have precisely identified what content was infringed. As described in Exhibit 1 [redacted]

3

The Honorable Stephanos Bibas
July 11, 2022

Exhibit 1 also describes how, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇



Thus, Plaintiffs precisely identify the copyrighted material that was infringed. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ROSS's request should be denied. *See In re Convergent Techs. Sec. Litig.,* 108 F.R.D. 328, 337 (N.D.Cal. 1985) (finding that cases where defendants have access to most of the evidence about their behavior, compelling plaintiffs to answer contention interrogatories is not productive in view of the burden that responding can entail); *Cnty. Council of Northhampton County v. SHL Systemhouse Corp.*, No. 98 Civ. 88, 1999 WL 269918 at *2 (E.D. Pa. Apr. 20, 1999) (finding that the plaintiff did not need to separately identify information in an interrogatory response where doing so would impose "an unproductive burden on an opponent").

### III.   DOCUMENT DISPUTES

ROSS's remaining requests for additional documents can be denied for two independent reasons: (1) they are untimely raised and (2) they raise arguments this Court already rejected and/or are overly broad, unduly burdensome, or otherwise objectionable.

#### A.   Legal Standard

Motions to compel discovery must be filed within the time allowed for discovery itself. *See Finizie v. Shineski*, 351 Fed. Appx. 668, 672 (3d Cir. 2009) (affirming district court's denial of motion to compel that was filed at least two weeks "after discovery had closed."). Out of time motions are "prohibited, absent good cause." *Saunders v. Dep't of Correction*, No. 15 Civ. 1184, 2018 WL 4625804, at *2 (D. Del. Sept. 26, 2018); *see also Flynn v. Health Advoc., Inc.*, No. 03 Civ. 3764, 2005 WL 288989, at *2 (E.D. Pa. Feb. 8, 2005) (finding untimely a motion to compel filed less than three months after the expiration of the discovery deadline). Indeed, such motions are viewed as "impliedly seeking an amendment to the scheduling order." *Zimmerman v. Edwin A. Abrahamsen & Assoc., P.C.*, No. 15 Civ. 1174, 2017 WL 3701827, at *4 (M.D. Pa. Aug. 28, 2017) (denying motion to compel, collecting cases). Likewise, motions to compel should also be denied where the discovery demands themselves were untimely. *See Muniz v. Price*, No. 10 Civ. 345, 2010 WL 4537037, at *3 (M.D. Pa. Nov. 3, 2010) (denying motion to compel where request was two weeks late); *see also Maslanka v. Johnson & Johnson,* 305 F.App'x 848 (3d Cir.

---

3 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

The Honorable Stephanos Bibas
July 11, 2022

2008) (affirming denial of *pro se* litigant motion to compel where discovery demands were untimely).

All of ROSS's remaining requests can be denied as untimely. As detailed below, ROSS knew of these disputes well in advance of the close of discovery. Even as the deadline approached, ROSS did not ask Plaintiffs if they would agree to an extension or raise disputes with the Court. *Supra* 4. Though Plaintiffs strived to resolve these disputes where reasonable, they were always clear about what they would not produce. Even in more extreme circumstances, where a party had actually *agreed* to produce documents and the other party relied on that and waited to bring a motion to compel, reliance on an opposing party's statements was found not to be good cause for delay. *Zimmerman*, 2017 WL 3701827, at *6. To allow such discovery now, when the alleged deficiencies were actually *known* to ROSS for months, would only "reward [ROSS's] failure to undertake discovery in this matter," *d.*, and would allow ROSS to continue to use discovery as a tool to burden Plaintiffs and disrupt their business.

The requests, in any case, are improper. When a party objects to a discovery request, "the burden falls on the party seeking the discovery to show the relevance of the information requested." *See Invensas Corp. v. Renesas Elecs. Corp.*, No. 11 Civ. 448, 2013 WL 12146531, at *2 (D. Del. May 8, 2013). "Requested information is not relevant [] if the inquiry is based on mere suspicion or speculation." *Boston Sci. Corp. v. Nevro Corp.*, No. 16 Civ. 1163, 2020 WL 5095447, at *2 (D. Del. Aug. 21, 2020). And the discovery also needs to be "proportional to the needs of the case," *id.*, and designed to protect a party from "undue burden or expense." Fed. R. Civ. P. 26. As a result, courts refuse to compel documents that are unnecessary and duplicative in light of what has already been produced. *See Robinson v. Horizon Blue Cross-Blue Shield of N. J.*, No. Civ. 2981, 2013 WL 6858956, at * (D.N.J. Dec. 23, 2013) (denying motion to compel duplicative and cumulative documents).

### B. Source Code (RFP Nos. 67-68)

ROSS seeks Plaintiffs' source code related to a program called JCaRE and how key numbers and headnotes relate to the Westlaw search engine. *See* Letter, J. Steinberg to M. Means, June 10, 2022. This dispute is untimely. ROSS knew that Plaintiffs would not be producing any source code as early as April 25, 2021, when Plaintiffs informed ROSS that it did not believe the Parties needed to engage in source code review. *See* Email, M. McKeown to K. Ghaffari, Apr. 25, 2021. Not until May 6, 2022, ***after the close of fact discovery***, did ROSS ask Plaintiffs produce their source code. *See* Email, J. Steinberg to E. Loverro, May 25, 2022. This dispute can thus be denied as untimely. *See Gault v. Nabisco Biscuit Co.*, 184 F.R.D. 620, 622 (E.D. Pa. 2004) (denying motion where party knew of deficiencies for nearly two months before the close of discovery).

ROSS does not have good cause for its delay. The only reason ROSS is now asking for Plaintiffs' source code is because Plaintiffs asked for ROSS's source code following the April 12, 2022 deposition of Jimoh Obviagele, ROSS's 30(b)(6) witness and Chief Technology Officer. *See* Dep. Tr. J. Ovbiagele 109:5-13 and 112:25-113:7 ███████████████████████████████████████████████████████ But Plaintiffs asked for ROSS's

5

The Honorable Stephanos Bibas
July 11, 2022

source code *before* the close of fact discovery, and only upon learning it was necessary. This is unrelated to Plaintiffs' source code, and does not justify ROSS's own delay.

Plaintiffs' source code is unnecessary and duplicative. With regard to JCaRE, ROSS does not need source code to confirm whether JCaRE "makes classification selections or whether West employees make classification selections." Letter, J. Steinberg to M. Means, June 10, 2022. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ With regard to the search engine, ROSS asserts that Plaintiffs "placed the search engines at issue," *See* Letter, J. Steinberg to M. Means, June 10, 2022, but Plaintiffs have repeatedly made clear that they are not alleging that ROSS copied the Westlaw search algorithm, let alone its source code. *See* Ex. 1. And ROSS does not need source code to understand how the headnotes and key numbers relate to search, as it has already had the opportunity to depose numerous witnesses, including a 30(b)(6) witness on this very topic.[4] ROSS should not be permitted to prolong discovery with invasive requests that are irrelevant or cumulative of what ROSS already knows. *See Robinson*, 2013 WL 6858956, at *6 (D.N.J. Dec. 23, 2013) (denying motion to compel duplicative and cumulative documents).

### C.   Cease and Desist Correspondence and DMCA Notices (RFP Nos. 111-115

ROSS also dredges up requests using arguments that this Court already *rejected*. In particular, ROSS seeks Plaintiffs' cease and desist correspondence and DMCA notices to third parties. This dispute is untimely, as ROSS has known since at least February 10, 2022 that Plaintiffs would not produce these documents. *See* Letter, M. Means to K. Ghaffari, February 10, 2022.[5] And the Court already refused to compel settlement agreements with third parties, which ROSS sought on similar grounds. As the Court already recognized, injecting into this case disputes with *irrelevant third parties* would convert this case from one about ROSS's infringement to a burdensome series of mini-trials on whether unrelated third parties infringe and the circumstances of the infringement allegations. *See, e.g.*, *ICU Med., Inc. v. RyMed Techs.*,

---

[4] ROSS's other purported justification for seeking source code now is that it is somehow entitled to test the veracity of the testimony of third-party witness, Khalid Al-Kofahi. Mr. Al-Kofahi was deposed on April 8, 2022, so if ROSS wanted source code based on that deposition, it had several weeks to request it before the close of fact discovery. *See* Dep. Tr. K. Al-Kofahi, Apr. 8, 2022. ROSS also has deposed Isabelle Moulinier, who was also able to explain how West Headnotes and West Key Numbers relate to search, and was in fact designated on this topic. *See* Dep. Tr. I. Moulinier, Jul. 1, 2022.

[5] Plaintiffs served their objections and responses to these Requests for Production on December 13, 2021. *See* Ex. 2. ROSS sent Plaintiffs a letter on cease and desist correspondence/DMCA notices, judicial sourcing documents, search and functionality documents, and usage statistics on January 12, 2022. Letter, K. Ghaffari to E. Loverro, Jan. 12, 2022. Plaintiffs responded on February 10, 2022 confirming that they would not produce these documents. Letter, M. Means to K. Ghaffari, February 10, 2022. Plaintiffs repeated again on April 21, 2022 that they would not be producing these documents, as well as the audit trails. Letter, M. Means to J. Steinberg, April 21, 2022. Plaintiffs thought this ended the disputes, as they did not hear back from ROSS on these disputes until *over a month later*, well after the close of fact discovery. *See* Letter, J. Steinberg to M. Means, May 31, 2022.

6

The Honorable Stephanos Bibas
July 11, 2022

*Inc.*, 752 F. Supp. 2d 486, 493–94 (D. Del. 2010) (facts about other copying would cause "substantial delay, wasted time, and confusion" and "require mini-trials"); *Preferred Carolinas Realty, Inc. v. Am. Home Realty Network, Inc.*, No. 1:13 Civ. 181, 2014 WL 1320133, at *6 (M.D.N.C. Mar. 28, 2014) (finding request for production of communications with third parties relating to copyrights overbroad, unduly burdensome, and unlikely to lead to admissible evidence).

ROSS insists that these documents might show (1) "whether or not a third party with a subscription can provide legal analyses to what Plaintiffs consider to be a competitor" and (2) "why LegalEase's subscription was terminated." *See* Letter, J. Steinberg to M. Means, April 11, 2022 at 1. ROSS's speculation that this correspondence *might* bear on such issues is not sufficient to justify this risk that the Court previously warned against. D.I. 97; *see also Brit. Telecomms. PLC v. IAC/Interactivecorp*, No. 18 Civ. 366, 2020 WL 1043974, at *7 (D. Del. Mar. 4, 2020) ("Speculation that there is more will not suffice."). Plaintiffs have already produced documents and witnesses showing and explaining why LegalEase's subscription was terminated. It is unclear why it matters who Plaintiffs assessed was a "competitor," or how cease and desist letter would show this. And, as with settlement agreements, damages in this case do not depend on what Plaintiffs demanded from other parties for unrelated infringements.

### D. Judicial Opinion Sourcing Documents (RFP Nos. 128, 129, 131)

ROSS is also seeking documents concerning how Plaintiffs source judicial opinions, including the "entities from which Plaintiffs obtain these judicial opinions" and "communications with state and federal agencies about the judicial opinions and headnotes at issue." *See* Letter, J. Steinberg to M. Means, May 31, 2022. This dispute is untimely, as ROSS has known since at least February 10, 2022 that Plaintiffs would not produce these documents. Letter, M. Means to K. Ghaffari, February 10, 2022.[6] And again, the Court already refused to compel highly similar documents. ROSS previously sought state and federal contracts through which "Plaintiffs obtain judicial opinions." D.I. 86, at 3. ROSS speculated then, as it does now, that documents related to the sourcing of judicial opinions might be relevant because states sometimes provide their own headnotes to opinions. *Id.* This Court ***rejected*** that argument, finding that Plaintiffs were not asserting copyrights in judicial opinions and that "to the extent ROSS wants to compare headnotes in state judicial opinions with headnotes on Westlaw, ROSS can already do so without the requested production from Plaintiffs." D.I. 97. This is still the case.

To the extent ROSS wants further information about how Plaintiffs' source judicial opinions, it has testimony and documents on this very subject already. *See*, *e.g.*, Dep. Tr. T. Leighton at 13:8–18 (explaining how material is sourced for Westlaw). Ultimately, ROSS's speculation that there might be something else relevant in these documents and communications regarding the sourcing of judicial opinions, in which Plaintiffs are not even claiming copyrights, does not make these documents relevant. Nor does it justify the burden of requiring Plaintiffs to produce far reaching communications with government entities. *See Kellogg Brown*, 284 F.R.D. at 37 (denying motion to compel where "the burden and expense these far-reaching requests" place on the opposing party "substantially outweighs the documents' relevance and value).

---

6   *Supra* 6, n. 5.

7

The Honorable Stephanos Bibas
July 11, 2022

### E. Search & Functionality Value Documents (RFP Nos. 132-135)

In addition to ignoring the Court's prior order, ROSS belatedly seeks documents that have nothing to do with what this case is actually about. In particular, ROSS seeks documents relating to "Westlaw's search functionality and the value of various search functions, including the functionality of Westlaw's Boolean and natural language searching and the value of those search functionalities." Letter, K. Ghaffari to E. Loverro, January 12, 2022. This dispute is untimely, as ROSS has known since at least February 10, 2022 that Plaintiffs would not produce these documents. Letter, M. Means to K. Ghaffari, February 10, 2022.[7] But this request is also irrelevant, as Plaintiffs ***do not assert*** that ROSS copied the Westlaw Boolean and natural language search algorithms. *See* Ex. 1.

Bizarrely, ROSS insists that it is entitled to documents about search to the extent Plaintiffs claim to own copyrights in its search engine and algorithms, even if Plaintiffs are not claiming that this is what was copied. ROSS does not explain why it needs such broad documents if they are not even part of Plaintiffs' copyright infringement claim. ROSS is not entitled to all documents related to every part of the Westlaw platform, let alone as broad a part of Westlaw as its "search functionality," a request ROSS does not even tailor to a reasonable time frame. ROSS's speculation that these documents might be relevant to Plaintiffs' copyright infringement allegations, even though Plaintiffs have made clear that they are not asserting that their search engine was copied, is not sufficient. *See Brit. Telecomms.*, 2020 WL 1043974, at *7.

### F. Usage Statistics (RFP No. 136)

ROSS also seeks documents that simply do not exist. ROSS seeks statistics showing how often West's customers use the West Key Numbers. While Plaintiffs never agreed to produce such statistics during fact discovery, and this dispute is therefore untimely,[8] in an effort to resolve this issue out of Court, they looked into the issue and determined Plaintiffs do not have reports that identify usage statistics of the West Key Numbers on United States Westlaw. *See* Email, M. Means to J. Steinberg, June 30, 2022. ROSS insists they must exist because at least one document refers to "traffic" to a key number—none of the documents refer to specific statistics on the usage of the West Key Number System, and Plaintiffs have investigated that and determined that these documents in fact do not exist. They "cannot produce that which does not exist." *Montgomery v. Onuoha*, No. 19 Civ. 1, 2021 WL 3602870 at *1 (D. Del. Aug. 13, 2021).

Taking a different tack, ROSS recently asked for all of the "underlying data" that Plaintiffs store related to Westlaw. *See* Email, J. Steinberg to M. Means, July 1, 2022. This is patently overbroad and not proportional to the needs of the case. Plaintiffs are a large business that tracks lots of data related to Westlaw that cannot be easily exported, and such a wide-sweeping request for "data" runs up against significant PII and confidentiality issues. This is a prime example of how ROSS views discovery as a tool to disrupt Plaintiffs' business, and the request should be denied.

### G. Audit Trails (RFP Nos. 118, 143-149)

---

[7] *Supra* 6, n. 5.

[8] *Supra* 6, n. 5.

The Honorable Stephanos Bibas
July 11, 2022

ROSS also untimely asks for audit trails for the headnotes at issue.[9] Email, J. Steinberg to M. Means, June 30, 2022. ███████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ Not all headnotes have audit trails, so for some headnotes, this information simply does not exist. *See* Plaintiffs' Responses to ROSS' First Set of Requests for Admission, Request No. 60. Moreover, as Plaintiffs have explained to ROSS since as early as March 11, 2022, the audit trails that do exist are not kept in a way that permits their export. *See* Letter, M. Means to J. Steinberg, Mar. 11, 2022. To produce the audit trails as they look in Plaintiffs' system, Plaintiff would need to have someone go into the system and create screenshots and copy those screenshots into a document to be produced, which Plaintiffs estimate could take 6,250 hours to 8,333 hours. *See* Letter, M. Means to J. Steinberg, Mar. 11, 2022. Plaintiffs are not obligated to undertake this extremely burdensome process. *Int'l Bus. Machs. Corp. v. The Priceline Grp. Inc*, No. 15 Civ. 137, 2016 WL 6305981 at *1 (D. Del. Sept. 29, 2016) (denying motion to compel in part where Defendants stated the requested discovery did not exist and would be "time consuming and burdensome to create."); *Bluewater Music Servs. Corp. v. Spotify USA Inc.*, No. 17 Civ. 01051, 2018 WL 10152456 at *6 (M.D. Tenn. July 10, 2018) ("A party is not required to prepare, or cause to be prepared, new documents solely for their production." (internal quotation omitted)).

In effort to resolve this issue out of court, Plaintiffs agreed to create a custom program to pull this information for ROSS in a raw format, likely XML or something similar. Plaintiffs are in the process of creating that program, and plan to produce the audit trails as quickly as possible once the program is created. Plaintiffs' own employees are taking time away from their jobs and Plaintiffs' business to help create this program. ROSS, however, indicated that it is refusing to accept this compromise and is bringing this dispute to the Court. Plaintiffs expect that ROSS will ask the Court to compel Plaintiffs to produce the audit trails manually, which would create even more work for Plaintiffs' employees, as ROSS knows. This should be sufficient.

### H. Licensing Strategy Documents (RFP Nos. 87-88)

ROSS is also untimely seeking documents concerning Plaintiffs' licensing strategy. Plaintiffs served their objections and responses to these Requests on July 12, 2021. Following negotiations between the Parties, Plaintiffs agreed to produce documents "sufficient to show" their licensing strategy for Westlaw. Plaintiffs produced the documents that they agreed to produce, e.g., documents sufficient to show Plaintiffs' licensing strategy, on or before February 4, 2022. If ROSS believed this production was deficient, it had plenty of time to bring the issue to the Court before now. And Plaintiffs made clear before the close of fact discovery that they believed their production was sufficient. *See* Email, M. Means to J. Steinberg, April 11, 2022. Therefore, this dispute is untimely raised.

Even if this dispute was timely brought, which it is not, sufficient documents have already been produced, including documents that describe ancillary and subscription pricing of licensed content and categories of customer to whom Plaintiffs do not license Westlaw. *See*, *e.g.*, TR-0908413 (description of customers to whom Plaintiffs do not license); TR-0908414

---

[9] ROSS has known that the audit trails were not exportable and burdensome to produce for months. *Supra* n 6, n. 5.

The Honorable Stephanos Bibas
July 11, 2022

(Thomson Reuters' General Policies); TR-0908708 (Sales Policies and Procedures). ROSS has also taken 30(b)(6) depositions of Plaintiffs witnesses and asked them about licensing. It thus knows what Plaintiffs' licensing strategies were. At this point, additional documents related to Plaintiffs' licensing strategies would be cumulative. S*ee Robinson*, 2013 WL 6858956, at *6 (denying motion to compel duplicative and cumulative documents).

And it is unclear why the documents that ROSS claims are "missing" from the production are even relevant.[10] For example, ROSS claims that the production is missing "actual expenditures in 2018 and 2019 for Westlaw US, Westlaw EDGE, WLN General Enhancements, Global Intellectual Property, and JWBJudicial Workbench." There is no relevance to actual expenditures from 2018 and 2019 on these broad products, and any relevance would be speculative. The request should thus be denied. *See Brit. Telecomms.*, 2020 WL 1043974, at *7.

### I. Financial Value Documents (RFP Nos. 100-102, 123-126, & 141)

ROSS also requests additional documents showing the value of West Headnotes and the West Key Number System, as well as documents related to harm Plaintiffs suffered as a result of ROSS's copyright infringement and tortious inference. Plaintiffs served their objections and responses to these Requests on July 12, 2021 and November 12, 2021. Again, Plaintiffs produced the documents that they agreed to produce, e.g., documents sufficient to show Plaintiffs' harm from ROSS's conduct and the value of the West Headnotes and West Key Number System, on or before February 4, 2022. If ROSS believed this production was deficient, it had plenty of time to bring the issue to the Court before now. And Plaintiffs made clear before the close of fact discovery that they believed their production was sufficient. *See* Email, M. Means to J. Steinberg, April 11, 2022. Therefore, this dispute is untimely raised.

Even if this dispute was timely brought, which it is not, the documents that Plaintiffs have produced are sufficient. Plaintiffs have produced price guidelines, discounting documents, investment documents, documents on the customer it lost to ROSS, and a robust spreadsheet detailing the value of the content that ROSS copied. *See*, *e.g.*, TR-0894151; TR-0908447 TR-0836004; TR-0521595. ROSS also had the opportunity to depose Plaintiffs' 30(b)(6) witnesses designated to testify on the value of the West Headnotes and West Key Number System. *See* Isabelle Moulinier Rough Tr. 5:2–5:21.[11] Other documents that ROSS seeks are irrelevant, such as documents showing how often other Westlaw customers pay the pro forma prices for content. *See* Letter, M. Means to J. Steinberg, attached hereto as **Exhibit 4**. ROSS's request for more should therefore be denied. *See Brit. Telecomms.*, 2020 WL 1043974, at *7.

---

[10] ROSS has since attempted to use the term "licensing strategies" to engage in a wide-ranging fishing expedition for anything even remotely related to a license, seeking "documents showing the costs associated with producing each of the Westlaw Content at issue," and "documents showing pricing decisions by Plaintiffs for the Westlaw Content" under the guise that such far afield documents are "licensing strategies" that Plaintiffs agreed to produce.

[11] Indeed, ROSS' own documents and 30(b)(6) witness on its finances, Sean Shafik, show ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

10

The Honorable Stephanos Bibas
July 11, 2022

                                                                Respectfully,

                                                                Michael Flynn (# 5333)
                                                                *Counsel for Plaintiffs and*
                                                                *Counterdefendants Thomson Reuters*
                                                                *Enterprise Center GmbH and West*
                                                                *Publishing Corporation*

Enclosures
cc:     All counsel of record