## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION, | ) ) ) | |
| | ) | C.A. No. 20-613-SB |
| Plaintiffs/Counterdefendants, | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| v. | ) | |
| | ) | **PUBLIC VERSION** |
| ROSS INTELLIGENCE INC., | ) | |
| | ) | |
| Defendants/Counterclaimant. | ) | |

## ROSS INTELLIGENCE INC.'S OPENING BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON ITS AFFIRMATIVE DEFENSE OF FAIR USE

OF COUNSEL:

Gabriel M. Ramsey
Warrington Parker
Joachim B. Steinberg
Jacob Canter
Christopher J. Banks
CROWELL & MORING LLP
3 Embarcadero Center, 26th Floor
San Francisco, CA 94111
Tel:  (415) 986-2800

Mark A. Klapow
Crinesha B. Berry
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC  20004
Tel:  (202) 624-2500

David E. Moore (#3983)
Bindu A. Palapura (#5370)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
Tel:  (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com

*Attorneys for Defendant/Counterclaimant
ROSS Intelligence, Inc.*

Dated:  December 22, 2022
10508136 / 20516.00001

Public Version Dated: January 5, 2023

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................................. 1

NATURE AND STAGE OF PROCEEDING ......................................................... 2

STATEMENT OF FACTS ........................................................................... 2

    A.    ROSS Hires A Third Party To Create The Memos.................................... 3

    B.    The Content And Creation of Memos ................................................... 4

    C.    LegalEase Provided ROSS With A List Of 91 Legal Topics ................................ 9

    D.    Plaintiffs' Asserted Material Are Highly Constrained Expression And Constitute A Functional System ................................................... 10

    E.    Plaintiffs Have No Market For The Asserted Material........................................ 11

ARGUMENT ........................................................................................ 12

    A.    Factor Two—Nature of the copyrighted work........................................ 12

    B.    Factor Three—Amount and substantiality of the portion used........................... 15

    C.    Factor One—Purpose and character of the use....................................... 16

    D.    Factor Four—Effect of the use upon the market for the work........................... 19

CONCLUSION....................................................................................... 19

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Assessment Techs. of WI, LLC v. WIREdata, Inc.*,
  350 F.3d 640 (7th Cir. 2003) ...................................................................18

*Baker v. Selden*,
  101 U.S. 99 (1879)...................................................................................17

*Bikram's Yoga Coll. of India, Ltd. P'ship v. Evolation Yoga, Ltd. Liab. Co.*,
  803 F.3d 1032 (9th Cir. 2015) .................................................................14

*Campbell v. Acuff-Rose Music, Inc.*,
  510 U.S. 569 (1994)..................................................................................16

*Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*,
  307 F.3d 197 (3d Cir. 2002)......................................................................13

*Educ. Testing Servs. v. Katzma*n,
  793 F.2d 533 (3d Cir. 1986)......................................................................13

*Experian Info. Sols., Inc. v. Nationwide Mktg. Servs., Inc.*,
  893 F.3d 1176 (9th Cir. 2018) ..................................................................16

*Georgia v. Public.Resource.Org Inc.*,
  140 S. Ct. 1498 (2020)........................................................................13, 19

*Google LLC v. Oracle Am., Inc.*,
  141 S. Ct. 1183 (2021)..................................................................12, 13, 16

*Greenbie v. Hollister Noble*,
  151 F. Supp. 45 (S.D.N.Y. 1957) .............................................................17

*Harper & Row Publishers, Inc. v. Nation Enterprises*,
  471 U.S. 539 (1985)..................................................................................12

*L. Batlin & Son, Inc. v. Snyder*,
  536 F.2d 486 (2d Cir. 1976)......................................................................13

*Magic Mktg. v. Mailing Servs.*,
  634 F. Supp. 769 (W.D. Pa. 1986)............................................................14

*Matthew Bender & Co. v. W. Publ'g Co.*,
  158 F.3d 693 (2d Cir. 1998)........................................................2, 12, 14, 16

*Matthew Bender & Co. v. W. Publ'g Co.*,
   1997 WL 266972 (S.D.N.Y. May 19, 1997), *aff'd*, 158 F.3d 674 (2d Cir.1998)....................13

*Mitel, Inc. v. Iqtel, Inc.*,
   124 F.3d 1366 (10th Cir. 1997) .........................................................................................14

*New Era Publications Int'l, ApS v. Carol Publ'g Group*,
   904 F.2d 152 (2d Cir. 1990)..............................................................................................16

*RJ Control Consultants, Inc. v. Multiject, LLC*,
   981 F.3d 446 (6th Cir. 2020) ............................................................................................17

*Sega Enters. v. Accolade, Inc.*,
   977 F.2d 1510 (9th Cir. 1992) ...............................................................................15, 18, 19

*Solid Oak Sketches, LLC v. 2K Games, Inc.*,
   449 F. Supp. 3d 333 (S.D.N.Y. 2020)...............................................................................19

*Sony Comput. Entm't, Inc. v. Connectix Corp.*,
   203 F.3d 596 (9th Cir. 2000) .................................................................................15, 16, 18

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
   464 U.S. 417 (1984)..........................................................................................................15

*Taylor v. Commissioner*,
   51 F.2d 915 (3d Cir. 1931)................................................................................................17

*Video Pipeline, Inc. v. Buena Vista Home Ent., Inc.*,
   342 F.3d 191 (3d Cir. 2003)..............................................................................................19

*W. Pub. Co. v. Edward Thompson Co.*,
   169 F. 833 (E.D.N.Y. 1909)..............................................................................................17

*W. Pub. Co. v. Edward Thompson Co.*,
   176 F. 833 (2d Cir. 1910).................................................................................................17

*Warren Publ'g, Inc. v. Microdos Data Corp.*,
   115 F.3d 1509 (11th Cir. 1997) ........................................................................................14

*Warren Publ'g, Inc. v. Spurlock*,
   645 F. Supp. 2d 402 (E.D. Pa. 2009) ...............................................................................12

*Wheaton v. Peters*,
   33 U.S. 591 (1834)............................................................................................................13

*White v. W. Publ'g Corp.*,
   29 F. Supp. 3d 396 (S.D.N.Y. 2014).................................................................................18

**Statutes**

17 U.S.C. § 102(b) ...................................................................................................................14

17 U.S.C. § 107 ..............................................................................................................1, 12, 18

**INTRODUCTION AND SUMMARY OF ARGUMENT**

Defendant ROSS Intelligence developed a natural language legal search engine.  It relied on machine learning and artificial intelligence.  To train its AI, ROSS required legal questions— the type a lawyer would ask.  It required answers to those questions in the form of quotes from judicial opinions.  The answers could only be quotes.  They could not contain third party commentary, synopses, or anything of the like.  ROSS obtained those questions and answers from a third party third-party legal research company, called LegalEase Solutions, LLC, who made the decision to use Westlaw to locate and find the quotes to the questions.

Plaintiffs have sued ROSS claiming that the use of Westlaw infringed on Plaintiffs' copyrights and constituted tortious interference with contract.  Plaintiffs claim infringement because LegalEase used headnotes to assist in formulating questions, used key numbers and headnotes to locate judicial opinions, and at one point assisted ROSS in classifying cases under legal topics arrived at by ROSS.

However, ROSS's use of the materials in which Plaintiffs claim a copyright is allowed under the Copyright Act's fair use provision.  17 U.S.C. § 107.  ROSS's use meets all four factors of the fair use analysis.

Factor One: the purpose and character of the use of Plaintiffs' claimed copyrighted material was functional and its use was what was intended—as a means to locate judicial opinions.  To the extent copyrighted materials were ephemerally reproduced in a browser, it was to locate uncopyrightable judicial opinions, which is also fair use.  Finally, ROSS's use was transformative. ███████████████████████████████████

███████████████████████████████████████████████████████

███████

Factor Two: the nature of the copyright work at issue lends itself to a finding of fair use. Plaintiffs registered the copyrighted materials at issue as a compilation.  As one court noted, "West has a thin copyright in its compilations."  *Matthew Bender & Co. v. W. Publ'g Co.*, 158 F.3d 693, 707 (2d Cir. 1998).  Naturally.  The materials at issue are highly constrained in what they can express.  They must be because they are intended for the function of allowing lawyers to find cases.

Factor Three: The amount of the copyrighted materials used.  This factor is entitled to little weight because any copying was intermediate and the final ROSS product does not contain any copyrighted materials. ███████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████.

Factor Four: ROSS could not and did not replace the market (or even compete) in the market for the copyrighted materials.  Someone wishing to employ headnotes and key numbers and the other copyrighted materials has only one source—Westlaw.  ROSS simply did not provide any such product.  Indeed, ROSS's purpose was to avoid such human intermediated materials.

In sum, ROSS is entitled to summary judgment on its fair use defense.

## NATURE AND STAGE OF PROCEEDING

Plaintiffs sued ROSS Intelligence on May 6, 2020. (D.I. 1.)  Under the operative scheduling order, dispositive motions must be filed on or before December 22, 2022. (*See* D.I. 233.)

## STATEMENT OF FACTS

ROSS Intelligence ("ROSS") was founded in 2014 to develop a natural language search engine that relied on machine learning and artificial intelligence. ████████████████████



**A.** **ROSS Hires A Third Party To Create The Memos**

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████

**B.     The Content And Creation of Memos**

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████

*LegalEase Drafted Legal Questions To Be As Close As Possible To The Language In Judicial Opinions* In drafting questions, LegalEase started with headnotes. ████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████████



***Subtopics, Key Numbers And Headnotes Were Used In A Disordered, Random And* Ad Hoc *Manner.*** ██████████████████████████████████████

████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

██████████████████████

████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████

There was a wide variance in the dispersal of topics, subtopics and key numbers traversed. █████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████

████████████████████████████████████

███████████████████████████████████████████

███████████████████████████

***The Topics, Subtopics, Key Numbers And Headnotes Were Only Used Temporarily, Ephemerally, and Intermediately.*** ███████████████████████████████

───────────────────────────

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████

    ████████████████████████████████████

█████████████████████████████████████

██████████████████████████████████████

█████████████

*Memos Were Transferred to ROSS In A Disordered Manner.* ████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████

    █████████████████████████████████████████████

█████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████

████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████ The

features that were used to train the ROSS ranking model were based only on the text of the legal

questions, the text of the judicial quotes, and the relationship between these pairs of texts. ████

█████████████████████████████████████████████████████

██████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████████

**C.** **LegalEase Provided ROSS With A List Of 91 Legal Topics**

### D.    Plaintiffs' Asserted Material Are Highly Constrained Expression And Constitute A Functional System

There are four basic bodies of material within Westlaw that Plaintiffs put at issue:

***Headnotes:*** ███████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████

***List of 91 Legal Topics:*** Plaintiffs assert that LegalEase copied and provided to ROSS a

list of 91 legal topics from Westlaw. ████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████████████████

***Topic, Subtopic, Key Number System:*** █████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

█████████████████████████████████████████████████ For

about a century, Plaintiff West has put its classification system forward as a standard, and has

accepted its use by competitors. (Leiter Decl. ¶ 22.)  Also, the top-level topics in the system are

overwhelmingly the same as they were between 1897 and 1904, reflecting common doctrinal

topics taught as law school courses.  (Leiter Decl. ¶ 24.)  Changes are made when the increase in

cases on a topic start making the system unwieldy.  (Leiter Decl. ¶ 26; ██████████████

████████████ )

██ ***Judicial Opinions:*** ████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████



**E.**     **Plaintiffs Have No Market For The Asserted Material**

Ambrogi, Robert, "Westlaw's Days Are Numbered,"

https://www.lawnext.com/2015/05/westlaws-days-are-numbered.html (accessed July 1, 2022).)

███████████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

█████████████████████████████████

## ARGUMENT

"[F]air use of a copyrighted work . . . for purposes such as … research, is not an infringement of copyright." 17 U.S.C. § 107. Fair use is an equitable doctrine to be decided by the Court. *Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183, 1199-200 (2021). While "[f]air use is a mixed question of law and fact," "the ultimate 'fair use' question primarily involves legal work." *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 560 (1985). It can be decided on summary judgment. *Warren Publ'g, Inc. v. Spurlock*, 645 F. Supp. 2d 402, 414-15 (E.D. Pa. 2009) (citing cases). In determining fair use, courts consider: (1) the purpose and character of the use; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work. *Harper & Row*, 471 U.S. at 560-61. Each factor supports fair use.

### A.    Factor Two—Nature of the copyrighted work

The copyrights at issue are registered as compilations. (D.I. 1-1 (Exhibit A to the Complaint); *see e.g. id.* at 2, 4, 6, 8 (noting that this is a certificate of copyright registration for "Compilations, revisions, additions, etc.").) "West has a thin copyright in its compilations." *Matthew Bender & Co. v. W. Publ'g Co.*, 158 F.3d 693, 707 (2d Cir. 1998). The materials are also highly functional, utilitarian, and "dictated by external constraints" inherent in the subject matter of the work. *Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d

197, 214-15 (3d Cir. 2002); *Educ. Testing Servs. v. Katzma*n, 793 F.2d 533, 539 (3d Cir. 1986)

The asserted system has been put forward by Plaintiffs as a *de facto* standard for over a century.

(Leiter Decl. ¶ 6, 13, 20.)  "Copyright on largely functional elements . . . that [have] become an

industry standard gives a copyright holder anti-competitive power" and allowing use of such

functional material furthers the policies of fair use.  *Google LLC*, 141 S. Ct. at 1204.  Finally, to

the extent there was copying, it was intermediate copying of copyrightable elements to obtain

access to non-copyrightable elements, which weighs in favor of fair use.

   ***The Expression Is Highly Constrained And Has Limited Protection, If Any***.  Plaintiffs

recognize that the language of headnotes are highly constrained by the underlying cases that they

quote or describe.  ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

Their content does not involve creative effort" as "there are only a limited number of choices to

be made." *Matthew Bender & Co. v. W. Publ'g Co.*, 1997 WL 266972, at *3 (S.D.N.Y. May 19,

1997), *aff'd*, 158 F.3d 674 (2d Cir. 1998).  In fact, where the headnotes are identical or nearly

identical to the words of the underlying judicial ███████████,[4] they cannot receive

copyright protection.  Judicial opinions and annotations thereto are not subject to copyright

protection.  They are in the public domain.  *Wheaton v. Peters*, 33 U.S. 591, 668 (1834); *Georgia

v. Public.Resource.Org Inc.*, 140 S. Ct. 1498 (2020).  And, copyright does not extend to "trivial

variations" of an expression in the public domain.  *See L. Batlin & Son, Inc. v. Snyder*, 536 F.2d

486, 490 (2d Cir. 1976) (trivial changes to statute in public domain not copyrightable).

   The list of 91 high level topics and the overall organization of topics, subtopics, key

---

[4] ██████████████████████████████

numbers and headnotes are, at the highest level, primarily constituted of material that is well over a century old.  (Leiter Decl. ¶¶ 23-24.)  And, the overarching organization of these elements was and is dictated by how lawyers have long thought about the law. Changes are driven not by creativity, but by changes in the language of the law or the law itself.  (Leiter Decl. ¶ 26); *Mitel, Inc. v. Iqtel, Inc.*, 124 F.3d 1366, 1375 (10th Cir. 1997) (plaintiffs' values unprotectable as scenes a faire because they were based on industry requirements).

    ***Functional And Not Creative.***  The Copyright Act expressly provides that "[i]n no case does copyright protection for an original work of authorship extend to any … system [or] method of operation . . . ." 17 U.S.C. § 102(b).  And so the relationship between headnotes and the cases are not copyrightable. ██████████████████████████████

██████████████████████████████████████████████ Where the goal is to cover every issue and there is "no evaluative judgment" then Plaintiffs "make[] no 'selection' at all."  *Matthew Bender*, 158 F.3d at 687; *Warren Publ'g, Inc. v. Microdos Data Corp.*, 115 F.3d 1509, 1518 (11th Cir. 1997).  Further, the relationship between the headnotes and the corresponding portion of a judicial opinion is functional—to locate a place in a judicial opinion. External functional considerations dictate the relationship, not creativity.  *See Bikram's Yoga Coll. of India, Ltd. P'ship v. Evolation Yoga, Ltd. Liab. Co.*, 803 F.3d 1032, 1042 (9th Cir. 2015); *Magic Mktg. v. Mailing Servs.*, 634 F. Supp. 769, 771-72 (W.D. Pa. 1986).  Finally, ROSS used only the unprotected elements of the materials at issue and not any protected the expression.

    ***The*** ██ ***Cases.*** To the extent that LegalEase inadvertently sent ROSS ██ cases that included headnotes and key numbers, ██████████████████████████████

██████████████████████████████████████

*Intermediate Copying/Expression Not Copied.* Finally, ROSS only used the unprotected elements and any intermediate copying was to obtain those unprotected elements, which is permissible. *Sony Comput. Entm't, Inc. v. Connectix Corp.*, 203 F.3d 596, 602-08 (9th Cir. 2000). The Westlaw materials "lie[] at a distance from the core [of copyright] because [it] contains unprotected aspects that cannot be examined without copying." *Sony*, 203 F.3d at 603; *see also Sega Enters. v. Accolade, Inc.*, 977 F.2d 1510, 1514-15 (9th Cir. 1992).

**B.      Factor Three—Amount and substantiality of the portion used**

The third statutory factor considers amount and substantiality of the portion used in relation to the copyrighted work as a whole.[5] Courts have recognized that "in a case of intermediate infringement when the final product does not itself contain infringing material," as is the posture of this case, the third factor is of "very little weight." *Sony*, 203 F.3d at 606; *Sega*, 977 F.2d at 1526-27; *see also Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 449-50 (1984).



---

[5] Westlaw is registered as a "Group registration for automated database" with periodic updates. (D.I. 1-1 Ex. A; *see e.g. id.* at 327-328.)

[6]

███████████████████████████████████████████████

However, because the "work as a whole" is the entirety of the Westlaw database compilation and updates, it is a *much* smaller percentage. ███████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███ This is fair use. *Matthew Bender*, 158 F.3d at 678 ("West conceded (immediately prior to trial) [what] would be permissible under the fair use doctrine, *i.e.*, one to two percent of its published reports of Supreme Court and court of appeals cases."); *see also Google LLC*, 141 S. Ct. at 1204-06 (copying 0.4 percent of work fair use); *New Era Publications Int'l, ApS v. Carol Publ'g Group*, 904 F.2d 152, 158 (2d Cir. 1990).

Finally, even were more "copied," the fact is that ROSS copied little, if any, of the materials' creative expression.  That still constitutes fair use. *Google LLC*, 141 S. Ct. at 1204-06; *Matthew Bender & Co.*, WL 2669725, at *1 (permissible to scan "up to 75% of West cases"); *Experian Info. Sols., Inc. v. Nationwide Mktg. Servs.*, *Inc.*, 893 F.3d 1176, 1186-88 (9th Cir. 2018) (copying of 80% of database).

### C.    Factor One—Purpose and character of the use

For this factor, the relevant inquiry is whether the copied material "supersedes the objects of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message.  It asks, in other words, whether and to what extent the new work is 'transformative.'"  *Sony,* 203 F.3d at 606 (quoting *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994)).  There is no presumption against fair use merely because the use is commercial.  *Campbell*, 510 U.S. at 584.  "[T]he more transformative the [secondary] work, the less will be the significance of other factors, like

commercialism, that may weigh against a finding of fair use." *Id.* at 579.

### *LegalEase Made Only Functional & Ephemeral Use Of The Key Number System.*

LegalEase did not copy headnotes, topics, subtopics or key numbers or any overall organization

for sale or license to others. Rather, they *used* the key number system to reach underlying

judicial opinions. Even where a system may include copyrightable expression, copyrights do not

extend to *use* of the system itself. "Copyright laws afford protection for a limited time against the

publication only and not against the use of a system or plan or idea of which the work is an

exposition." *Taylor v. Commissioner*, 51 F.2d 915, 917 (3d Cir. 1931) (citing *Stone & McCarick*

*v. Dugan Piano Company (C.C.)*, 210 F. 399, 400 (E.D. La. 1914)); *see also Baker v. Selden*,

101 U.S. 99, 104 (1879); *RJ Control Consultants, Inc. v. Multiject, LLC*, 981 F.3d 446, 454-57

(6th Cir. 2020).

To the extent that any portion of the structural elements of the system were ephemerally

reproduced in a browser, it was for the purpose of reaching uncopyrightable judicial opinions

and extracting unprotectable ideas.  Ephemeral copies of copyrighted content in memory "in the

browser," have been held to be transformative fair use if the purpose was to extract unprotectable

ideas and facts.  *See Ticketmaster Corp. v. Tickets.com*, WL 21406289, at *3-*6 (C.D. Cal. Mar.

7, 2003).  The same is true of intermediate copying of portions of the topics, subtopics, key

numbers and headnotes into working spreadsheets. Courts have found fair use where competitors

of West have copied West's digests (*i.e.*, headnotes), topics, and case citations temporarily in the

process of creating competing legal publications.  *W. Pub. Co. v. Edward Thompson Co.*, 176 F.

833, 838 (2d Cir. 1910); *W. Pub. Co. v. Edward Thompson Co.*, 169 F. 833, 865-871 (E.D.N.Y.

1909), decree modified, 176 F. 833 (2d Cir. 1910); *Greenbie v. Hollister Noble*, 151 F. Supp. 45,

67 (S.D.N.Y. 1957).  Because ROSS only sought the "raw data" in the Plaintiffs' judicial

database, extraction of that unprotectable material cannot constituted an infringement even if the defendant had to copy the entire database in order to extract the data.  That is intermediate copying that constitutes a fair use.  *Assessment Techs. of WI, LLC v. WIREdata, Inc.*, 350 F.3d 640, 646 (7th Cir. 2003).

███████████████████████████████

████████████████████████████████████

█████████████████████████████████

████████████████████████████████████

██████████████████████████████████████

The ultimate purpose was to write a new search engine application utilizing artificial intelligence and sophisticated natural language search algorithms.  (*See* Statement of Facts, Introduction.) This all constitutes a transformative use, weighing in favor of fair use.

It is similar to the transformative use of copied code in *Sony* and *Sega*.  In both, defendants' code was different "despite the similarities in function and screen output," *Sony Comput. Entm't, Inc.*, 203 F.3d at 607, and despite the goal of offering a competitive product. *Id.* at 607-608; *Sega*, 977 F.2d at 1522-23; *see also White v. W. Publ'g Corp.*, 29 F. Supp. 3d 396, 399 (S.D.N.Y. 2014); William M. Landes & Richard A. Posner, *The Economic Structure of Intellectual Property Law*, 100 (2003).

### *ROSS Transformed The List Of 91 Topics Into A More Abstract List Of 38 Topics.*

ROSS's use of the list of 91 topics was also transformative.  It received a list of 91 topics and created an independently selected and developed list of 38 topics.  This entire exercise was wholly within the laboratory, in the context of experimental "research," in the terms of 17 U.S.C. § 107, and thus constitutes a transformative use.  *See Sega*, 977 F.2d at 1514-15.

*ROSS's Use Created New Expressive Works And Furthered The Public Interest.* The ultimate purpose of training the ranking algorithm, and working on the classifier functionality in the lab, was to facilitate ROSS's creation of entirely new creative expression in its own source code and software, written from the ground up, that does not contain any of Plaintiffs' asserted content. Uses that spur creation of entirely new creative works support a finding of fair use. *See Video Pipeline, Inc. v. Buena Vista Home Ent., Inc.*, 342 F.3d 191, 198 (3d Cir. 2003). Finally, ROSS's software achieved the public benefit of broadening and deepening public access to the public law, and at a lower cost. Cox Decl. ¶¶ 20, 22; *Public.Resource.Org, Inc.*, 140 S. Ct. at 1507. Public benefit is relevant to fair use. *Sega*, 977 F.2d at 1523.

### D.  Factor Four—Effect of the use upon the market for the work

The fourth factor also weighs in favor of ROSS. Plaintiffs' market for the copyrighted materials at issue remains available for users who want to locate cases using those items. Neither ROSS nor LegalEase have offered or distributed any such elements. Plaintiffs cannot change the Factor Four analysis by claiming there is some imaginary market for their materials. *Solid Oak Sketches, LLC v. 2K Games, Inc.*, 449 F. Supp. 3d 333, 353 (S.D.N.Y. 2020). There is no such market. *See* Statement of Facts, Section E.

Finally, the fact that Plaintiffs made some internal use of the asserted material in connection with developing their own search engine is not the appropriate lens through which to view the market for the alleged "expression." That a party uses materials internally is not the measure of fair use. Were it, it would result in a monopoly. *See Sega*, 977 F.2d at 1523-24; *Video Pipeline.*, 342 F.3d at 206.

### CONCLUSION

ROSS respectfully requests that the Court grant summary judgment in its favor.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

By:  */s/ David E. Moore*

David E. Moore (#3983)

Gabriel M. Ramsey

Bindu A. Palapura (#5370)

Warrington Parker

Hercules Plaza, 6th Floor

Joachim B. Steinberg

1313 N. Market Street

Jacob Canter

Wilmington, DE  19801

Christopher J. Banks

Tel:  (302) 984-6000

CROWELL & MORING LLP

dmoore@potteranderson.com

3 Embarcadero Center, 26th Floor

bpalapura@potteranderson.com

San Francisco, CA 94111

Tel:  (415) 986-2800

*Attorneys for Defendant/Counterclaimant*
*ROSS Intelligence, Inc.*

Mark A. Klapow

Crinesha B. Berry

CROWELL & MORING LLP

1001 Pennsylvania Avenue, NW

Washington, DC  20004

Tel:  (202) 624-2500

Dated:  December 22, 2022

10508136 / 20516.00001

 Public Version Dated: January 5, 2023