# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION, | ) ) ) ) ) | |
| Plaintiffs and Counterdefendants, | ) ) ) | C.A. No. 20-613 (LPS) |
| v. | ) ) ) | **HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY** |
| ROSS INTELLIGENCE INC., | ) ) ) | |
| Defendant and Counterclaimant. | ) ) | |

**PLAINTIFFS AND COUNTERDEFENDANTS THOMSON REUTERS ENTERPRISE CENTRE GMBH AND WEST PUBLISHING CORPORATION'S RESPONSES AND OBJECTIONS TO DEFENDANT AND COUNTERCLAIMANT ROSS INTELLIGENCE INC.'S SECOND SET OF INTERROGATORIES (NO. 13)**

Pursuant to Federal Rules of Civil Procedure 26 and 33 and the Local Rules of the United States District Court for the District of Delaware (the "Local Rules" and each a "Local Rule"), Plaintiffs and Counterdefendants Thomson Reuters Enterprise Centre GmbH ("Thomson Reuters") and West Publishing Corporation ("West") (collectively "Plaintiffs"), hereby respond to Defendant and Counterclaimant ROSS Intelligence Inc.'s ("Defendant") Second Set of Interrogatories, served on January 7, 2022 (the "Second Set of Interrogatories" and each individually, an "Interrogatory") in the above-captioned action ("Action") as follows:

**GENERAL OBJECTIONS**

1.      Plaintiffs object to the Second Set of Interrogatories to the extent that it purports to impose obligations beyond those set forth in the Federal Rules of Civil Procedure, the Local Rules, or other applicable law.

2.      Plaintiffs object to the Second Set of Interrogatories to the extent that it seeks proprietary or confidential business information, trade secrets or other sensitive information.  To the extent that the response to any Interrogatory requires the disclosure of any non-privileged proprietary or confidential information, trade secrets or other sensitive information, Plaintiffs will provide such information subject to the Protective Order so ordered by the Court in this case.  D.I. 48.

3.      Plaintiffs object to the Second Set of Interrogatories to the extent that it seeks information that is subject to the attorney-client privilege, the work product privilege, or any other applicable privilege or protection under federal or state law.  Plaintiffs do not waive, intend to preserve, and are preserving any such privilege with respect to any information protected by such privilege.

4.      The responses provided to the Second Set of Interrogatories are based on Plaintiffs' interpretation of the language used in the Second Set of Interrogatories.  Plaintiffs reserve their right to amend or to supplement their responses and objections in the event that Defendant asserts an interpretation that differs from Plaintiffs' interpretation.

5.      Plaintiffs object to the Second Set of Interrogatories to the extent that it seeks information that is outside of Plaintiffs' possession, custody, or control, including in Instruction No. 7.  For the purpose of responding to the Second Set of Interrogatories, Plaintiffs will provide

responses based on the information that is reasonably within their possession, custody, or control.

6.      The responses below shall not be interpreted to concede the truth of any factual assertion or implication contained in the Second Set of Interrogatories.  Plaintiffs' responses to the Second Set of Interrogatories in no way constitute admissions or acknowledgements by Plaintiffs as to the relevance, materiality, or admissibility of any of the information contained therein, and Plaintiffs expressly reserve their rights to object as such.

7.      Plaintiffs reserve the right to modify or supplement their objections and responses to the Second Set of Interrogatories to conform to the results of continuing discovery.  These responses also are subject to correction for omissions or errors.

8.      In providing responses to the Second Set of Interrogatories, Plaintiffs do not in any way waive or intend to waive, but rather are preserving and intend to preserve:

    (i)      All objections as to competency, authenticity, relevancy, materiality and admissibility;

    (ii)     All rights to object on any grounds to the use in any subsequent proceedings of any of the responses or information contained herein, including but not limited to the right to object at the trial of this or any other action;

    (iii)    All objections as to vagueness and ambiguity; and

    (iv)     All rights to object on any grounds to any further interrogatories.

9.      Plaintiffs object to the Second Set of Interrogatories to the extent that any Interrogatory's subparts, including those arising from Defendant's "Definitions" and

"Instructions," actually constitute separate interrogatories, thereby exceeding the number of interrogatories permitted under Federal Rule of Civil Procedure 33(a)(1).

10.     Plaintiffs object to the Second Set of Interrogatories as premature to the extent that it asks or requires Plaintiffs to provide information that is the subject of expert disclosures under Federal Rule of Civil Procedure 26(a)(2).

11.     Plaintiffs object to the Second Set of Interrogatories to the extent that it is premature in that it asks or requires Plaintiffs to analyze or formulate contentions on matters for which Plaintiffs' investigation and discovery have not yet been completed.  The responses provided below are based on the investigation conducted to date and are without prejudice to any later supplementation, amendment, or modification.

12.     Plaintiffs objects to the Second Set of Interrogatories as overly broad to the extent that it defines the term "THOMSON REUTERS" to include "its present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on its behalf."  For the purpose of responding to the Second Set of Interrogatories, Plaintiffs will construe this term to mean solely Thomson Reuters Enterprise Centre GmbH, and not any other person or entity.

13.     Plaintiffs object to the Second Set of Interrogatories as overly broad to the extent that it defines the term "WEST" to include "its present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on its behalf."  For the purpose of responding to the Second Set of Interrogatories, Plaintiffs will construe this term to mean solely West Publishing Corporation, and not any other person or entity.

14.     Plaintiffs object to the Second Set of Interrogatories as overly broad to the extent that it defines the terms "YOU," "YOUR," and "PLAINTIFFS" to incorporate the definitions of the terms "THOMSON REUTERS" and "WEST" and thus are defined to include Thomson Reuters Enterprise Centre GmbH's and West Publishing Corporation's "present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on [their] behalf." For the purpose of responding to the Second Set of Interrogatories, Plaintiffs will construe the terms "YOU," "YOUR," and "PLAINTIFFS" to mean solely Thomson Reuters Enterprise Centre GmbH and West Publishing Corporation, and not any other person or entity.

15.     Plaintiffs object to the Second Set of Interrogatories as overly broad to the extent that it defines the terms "ROSS," "DEFENDANT," and "COUNTERCLAIMANT" to include "its present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on its behalf." For the purpose of responding to the Second Set of Interrogatories, Plaintiffs will construe these terms to mean solely ROSS Intelligence, Inc., and not any other person or entity.

16.     Plaintiffs object to the Second Set of Interrogatories as vague and ambiguous to the extent that it defines the term "DESCRIBE" using the capitalized term "Identifying." It is unclear whether Defendant intended to incorporate the definition of the defined term "IDENTIFY," in which case the definition of the term "DESCRIBE" is nonsensical, or to give that word a separate definition. For the purpose of responding to the Second Set of

Interrogatories, Plaintiffs will construe the term "Identifying" as used in the definition of the term "DESCRIBE" with its ordinary meaning.

17.     Plaintiffs object to Instruction No. 6 to the extent it purports to impose obligations with regard to the production of privilege logs that differ from those required by the Federal Rules and Local Rules.  Plaintiffs will log information pursuant to the Protective Order.

18.     Plaintiffs object to Instruction Nos. 7 and 9 as vague and ambiguous to the extent that they use the undefined term "FOUNDATION."  For the purpose of responding to the Second Set of Interrogatories, Plaintiffs will construe that term to mean Thomson Reuters Enterprise Centre GmbH and West Publishing Corporation, and not any other person, entity, or foundation.

19.     Plaintiffs object to the Second Set of Interrogatories as overly broad and unduly burdensome to the extent that its Interrogatories do not specify timeframes and are thus unlimited as to time.

20.     Plaintiffs incorporate the foregoing General Objections into each and every one of its responses to the Second Set of Interrogatories as set forth below.

## RESPONSES AND OBJECTIONS TO INTERROGATORIES

**INTERROGATORY NO. 13:**

State all facts RELATING TO YOUR contention that ROSS tortuously interfered with the contractual relationship between WEST and LEGALEASE as alleged in Paragraphs 49-53 of the COMPLAINT.

**RESPONSE TO INTERROGATORY NO. 13:**

Plaintiffs incorporate by reference the above-stated General Objections as if fully set forth herein.  Plaintiffs specifically object to this request as vague and ambiguous to the extent that the term "tortuously" is unclear and undefined; for purposes of responding to this request, Plaintiffs understand this term to mean "tortiously."  Plaintiffs object to this Interrogatory as overly broad, unduly burdensome, and premature to the extent that it asks Plaintiffs to "[s]tate all facts RELATING TO [Plaintiffs'] contention that ROSS tortuously [*sic*] interfered with the contractual relationship between WEST and LEGALEASE," without limitation and note that discovery is still ongoing.  Plaintiffs object to this Interrogatory as overly broad and unduly burdensome to the extent that the First Set of Interrogatories define the term "ROSS" overly broadly as indicated in General Objection No. 15.  Plaintiffs object to this Interrogatory to the extent that it seeks information that is or will be in the possession of ROSS by referring to documents, taking depositions, or any other means of obtaining discovery in this Litigation that is more convenient, efficient, practical, and less burdensome.  Plaintiffs object to this Interrogatory to the extent that it seeks information that Defendant equally may otherwise obtain from public sources.  Plaintiffs object to this Interrogatory to the extent that it calls for confidential information, trade secrets, or proprietary business information.  Plaintiffs will provide such information subject to the Protective Order so ordered by the Court in this case. D.I. 48.

Subject to, as limited by, and without waiver of the foregoing objections, Plaintiffs respond as follows:  Plaintiffs incorporate by reference their response to Interrogatory No. 1 as if fully set forth herein.

**<u>* BEGIN HIGHLY CONFIDENTIAL — ATTORNEYS' EYES ONLY DESIGNATION *</u>**









**<u>\* END HIGHLY CONFIDENTIAL — ATTORNEYS' EYES ONLY DESIGNATION \*</u>**

Plaintiffs' discovery efforts in this case are ongoing, and they reserve the right to further supplement this response in light of facts learned during discovery.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

_____

Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com

*Attorneys for Plaintiffs and*
*Counterdefendants Thomson Reuters*
*Enterprise Center GmbH and West Publishing*
*Corporation*

OF COUNSEL:

Dale M. Cendali
Joshua L. Simmons
Eric A. Loverro
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
(212) 446-4800

Daniel E. Laytin
Christa C. Cottrell
Cameron Ginder
Alyssa C. Kalisky
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL  60654
(312) 862-2000

Miranda D. Means
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
(617) 385-7500

February 7, 2022

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 7, 2022, copies of the foregoing were caused to be

served upon the following in the manner indicated:

David E. Moore, Esquire                                         *VIA ELECTRONIC MAIL*
Stephanie E. O'Byrne, Esquire
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE  19801
*Attorneys for Defendant and Counterclaimant*

Joshua M. Rychlinski, Esquire                              *VIA ELECTRONIC MAIL*
Mark A. Klapow, Esquire
Lisa Kimmel, Esquire
Crinesha B. Berry, Esquire
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, DC  20004
*Attorneys for Defendant and Counterclaimant*

Gabriel M. Ramsey, Esquire                                   *VIA ELECTRONIC MAIL*
Kayvan M. Ghaffari, Esquire
Jacob Canter, Esquire
Warrington Parker, Esquire
CROWELL & MORING LLP
3 Embarcadero Center, 26th Floor
San Francisco, CA  94111
*Attorneys for Defendant and Counterclaimant*


                                             */s/ Michael J. Flynn*
                                             _____
                                             Michael J. Flynn (#5333)

# EXHIBIT 2

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

# EXHIBIT 3

MEMORANDUM # 5

**1. Question**

Is leaving the total cost open an essential element to determine whether a contract falls under the open account statute in Louisiana?

**2. Reference List**
**Issue: Is leaving the total cost open an essential element to determine whether a contract falls under the open account statute in Louisiana?**

Great Case 1: *Wolverine Industries, LLC v. Monforte Exploration, LLC*, 2017 WL 2599211.
Quote 1: First, Plaintiff seeks judgment on its suit on open account. An open account "includes any account for which a part or all of the balance is past due, whether or not the account reflects one or more transactions and whether or not at the time of contracting the parties expected future transactions." **[["In determining whether a contract falls under the open account statute, courts in Louisiana consider whether the "total cost or price [is] ... left open or undetermined."]]** Louisiana courts also analyze certain factors when determining whether a course of dealings constitutes an open account: "(1) whether there were other business transactions between the parties; (2) whether a line of credit was extended by one party to the other; (3) whether there are running or current dealings; and (4) whether there are expectations of other dealings." A hallmark of an open account is that "[t]he total cost, unlike a contract, is generally left open or undetermined, although the rate for specific services may be fixed, such as an hourly rate."

Great Case 2: *Ormet Primary Aluminum Corp. v. Ballast Techs., Inc.*, 436 F. App'x 297.
Quote 1: The Louisiana Supreme Court has cautioned that the Open Account Statute must be construed "strictly [ ] because the award of attorney fees is exceptional and penal in nature." The relevant Louisiana statute defines an open account to "include any account for which a part or all of the balance is past due, whether or not the account reflects one or more transactions and whether or not at the time of contracting the parties excepted future transactions." **[[Louisiana courts have defined an open account alternatively as "an account in which a line of credit is running and is open to future modification because of expectations of prospective business dealings."]]** And, the Louisiana Supreme Court has noted that, "[u]nder a plain reading of that statute, there is no requirement that there must be one or more transactions between the parties, nor is there any requirement that the parties must anticipate future transactions."

Good Case 3: *Blanchard v. Cors & Bassett, Sacks, Weston, Smolinsky, Albert & Luber*, 2010 WL 3496263.
Quote 1: **[[Although an open account need not involve more than one transaction between the parties nor contemplate future transactions, open accounts ordinarily contemplate a series of transactions between the parties over an indefinite future period.]]** *See Frey Plumbing Co., Inc.*, 996 So.2d at 972; *Mid-South Analytical Labs, Inc.*, 912 So.2d at 107. The total cost, unlike a contract, is generally left open or undetermined, although the rate for specific services may be fixed, such as an hourly rate. Finally, the service provider generally

EXHIBIT 44
Van der Heijden
March 17, 2022

LEGALEASE-00069484

requests that the vendee or client keep current on payment of charges through regular billing, and usually sends monthly invoices. *Id.*

Good Case 4: *Cambridge Toxicology Grp., Inc. v. Exnicios*, 495 F.3d 169.
      Quote 1: A claim for breach of contract and a claim under the open account statute are considered distinct causes of action. *See Operational Tech. Corp. v. Envtl. Contractors, Inc.*, 665 So.2d 14, 15 (La.Ct.App.1995). [[An open account is "similar to a line of credit," *Hayes v. Taylor*, 812 So.2d 874, 878 (La.Ct.App.2002), and requires "an ongoing relationship with an extension of credit to the debtor,"]] *Salley v. Colonial Marine Indus., Inc.*, 680 So.2d 1242, 1252 (La.Ct.App.1996). Louisiana courts use four factors to determine whether a course of dealing qualifies as an open account: (1) whether there were other business transactions between the parties; (2) whether a line of credit was extended by one party to the other; (3) whether there are running or current dealings; and (4) whether there are expectations of other dealings. *Paz v. BG Real Estate Servs., Inc.*, 921 So.2d 186, 188 (La.Ct.App.2005).

Good Case 5: *Greenfield Commercial Credit, L.L.C. v. Catlettsburg Ref., L.L.C.*, 2007 WL 97068.
      Quote 1: [[The party seeking a judgment under the open account statute has the burden of proving the open account contract.]] *Dixie Machine Welding & Metal Workers, Inc. v. Gulf States Marine Technical Bureau*, 692 So.2d 1167, 1169 (La.App. 4th Cir.1997). It is well established that an open account is analogous to a credit account. *Id.; Tyler v. Haynes*, 760 So.2d 559, 562 (La.App. 3rd Cir.2000). In determining whether a course of dealings constitutes an open account, courts have consistently examined the following factors:
        • whether there were other business transactions between the parties;
        • whether a line of credit was extended by one party to the other;
        • whether there are running or current dealings; and
        • whether there are expectations of other dealings.
*Salley & Salley v. Stoll*, 864 So.2d 698, 704 (La.App. 5th Cir.2003); *Dixie Machine v. Gulf States Marine Technical Bureau*, 692 So.2d at 1169.

Topical Case 5: *Barco Projection Systems, Inc. v. Alliance Business Products, Inc.*, 2003 WL 21355467.
      Quote 1: Even after the effective date of this amendment, however, Louisiana courts continue to consider the following four factors when determining whether a course of dealings is an open account: (1) whether there were other business transactions between the parties; (2) whether a line of credit was extended by one party to the other; (3) whether there are running or current dealings; and (4) whether there are expectations of other dealings. *Tyler v. Haynes*, 760 So.2d 559, 563 (La.Ct.App.3d Cir.2000); *Dixie Machine Welding & Metal Works, Inc. v. Gulf States Marine Technical Bureau, Inc.*, 692 So.2d 1167, 1170 (La.Ct.App. 5th Cir.1997); *Acme Window Cleaners, Inc. v. Natal Construction Co.*, 660 So.2d 926, 928 (La.Ct.App. 4th Cir.1995). [[Historically, a construction contract has not been treated as an open account.]] *Hill v. Leach*, 734 So.2d 116 (La.Ct.App.3d Cir.1999); *Petron, Inc. v. Magic-Mart, Inc.*, 643 So.2d 441 (La.Ct.App.3d Cir.1994); *Bossier Marble v. Kelly's Truck Terminal*, 530 So.2d 1198 (La.Ct.App.2d Cir.1988); *A.A. Specialty & Simply, Inc. v. Quinn*, 411 So.2d 1165 (La.Ct.App. 1st Cir.1982).

Case 6: *Gilson v. TD Bank, N.A.*, 2011 WL 294447.

Quote 1: Viewing the record in the light most favorable to TD Bank, [[**the Court concludes that the evidence is subject to more than one interpretation regarding the alleged actual agency relationship between Plaintiffs and Stein with respect to the opening of the TD Bank accounts, Stein's status as signatory on these accounts and the transfer of funds into those accounts]].** Therefore, the Court denies Plaintiffs summary judgment on these aspects of the alleged actual agency relationship. However, the Court finds as a matter of law that Plaintiffs' alleged grant of actual authority to Stein did not encompass the implied authority to transfer money out of the TD Bank accounts not for Gilson's benefit and grants Plaintiffs summary judgment on TD Bank's agency-based affirmative defenses with respect to this limited issue.

LEGALEASE-00069486

LEGALEASE-00069487

# EXHIBIT 4



**Ovbiagele**

April 12 2022

**2**

EXHIBIT

2

STATEMENT OF WORK II
FOR ROSS BULK MEMOS

This Statement of Work II incorporates and is made pursuant to the October 15, 2015 Master Services Agreement ("MSA") by and between ROSS Intelligence, Inc. ("ROSS"), a Delaware corporation and LegalEase Solutions, LLC ("Contractor") a Michigan limited liability company.

1. Definitions:  Terms and expressions not expressly defined in this Statement of Work, shall have the following meanings:

   1.1. "Case Law" means judicial decisions originating from a judicial or administrative body in the United States of America, or as otherwise prescribed in writing by ROSS and sent to Contractor.
   1.2. "Legal Research Question" means a question grounded in legal principles.
   1.3. "Memorandum or Memo" means a memorandum of law that answers a Legal Research Question.
   1.4. "Quote" means an independent paragraph excerpt from Case Law.
   1.5. "Reference List" means the list of Case Law included in the Memo.
   1.6. "Deficiency" means a reference quote that does not directly answer the ROSS question.

2. Additional Terms and Expressions: Additional capitalized terms and expressions have the meanings ascribed to them in the MSA.

3. Currency: Unless stated otherwise, all dollar figures in this Statement of Work are in United States dollars.

4. Term: Subject to the termination provisions of this Agreement, the term of this Statement of Work shall be for a period of three months commencing on September 19, 2017 and expiring on December 19, 2017 ("Initial Term"). Upon the expiration of the Initial Term, this Statement of Work shall renew with the prior written mutual consent of ROSS for successive three month periods ("Renewal Terms"), unless terminated pursuant to the terms of the Agreement. The terms Initial and Renewal Terms shall be collectively referred to as the "Term".

5. Description of Service:

5.1. Contractor agrees to provide ROSS with bulk Memos. Contractor agrees to meet the expectations for performance as set forth in this Statement of Work. Contractor's attorneys will research topics and Legal Research Questions from any Federal or State jurisdiction in the United States, without regard to any legal decisions, draft Memos, and compile the Memos in the format approved by ROSS.

5.2. Each Memo shall include a Legal Research Question and a Reference list with a target of at least four (4) and no more than six (6) Quotes.

5.3. Two (2) to four (4) Quotes in each Memo shall contain either a "great" or "good" independent answer to the Legal Research Question. A "great" Quote is one that contains an answer to all essential elements of the Legal Research Question while a "good" Quote is one that contains an answer to most essential elements of the Legal Research Question. The Contractor shall strive for four (4) "good" or "great" Quotes per question. However, if

Contractor is only able to find 2 or 3 "good" or "great" Quotes, they shall only provide 2 or 3 "good" or "great" Quotes. Contractor shall strive to have more "great" than "good" Quotes.

5.4. One (1) Quote in each Memo shall contain a "topical" independent response to the Legal Research Question. A "topical" response is a response that answers and/or references limited components of a Legal Research Question but does not answer the essential elements of such Legal Research Question.

5.5. One (1) Quote in each Memo shall contain an "irrelevant" independent response to the Legal Research Question. An "irrelevant" response is a response that contains one or more keywords from the Legal Research Question but does answer and/or reference any elements of the Legal Research Question, either limited or essential.

5.6. Contractor shall label whether a Quote contains a response that is "great", "good", "topical" or "irrelevant" and double bracket and bold the specific component(s) of each such Quote that is "great", "good", "topical" or "irrelevant." Contractor shall also label which legal practice area each Quote falls under.

6. Changes: ROSS reserves the right to request changes, deletions, or additions as deemed necessary by ROSS and Contractor.  ROSS' proposed changes shall become effective only by written agreement of Contractor.

7. Production/Delivery Schedule: Contractor agrees to draft ROSS questions and Memos pursuant to the Production Run schedule below. In the First Production Run of Memos, Contractor shall commence providing deliverables on October 19, 2017 and conclude on December 19, 2017, as outlined below. For the Subsequent Production Runs of Memos, Contractor shall provide 20,000 Memos in subsequent months to ROSS.

First Production Run

| Delivery Date | Amount of Memos |
|---|---|
| October 19, 2017 | 5,000 |
| November 19, 2017 | 10,000 |
| December 19, 2017 | 10,000 |

Subsequent Production Run

| Delivery Date | Amount of Memos |
|---|---|
| Month 1 | 20,000 |
| Month 2 | 20,000 |
| Month 3 | 20,000 |
| Month 4 | 15,000 |

8. Fee: ROSS shall pay Contractor pursuant to the schedule below:

| Reference Quotes | Price per Memo |
|---|---|

| | |
|---|---|
| 4 Quotes + 1 topical and 1 irrelevant Quote | $26.17 |
| 3 Quotes + 1 topical and 1 irrelevant Quote | $24.55 |
| 2 Quotes + 1 topical and 1 irrelevant Quote | $21.00 |

Contractor shall provide a 5% volume discount to ROSS for any Memo purchase over 25,000 and a 15% volume discount for a total order of 100,000 Memos.

9. Payment: ROSS shall pay Contractor in advance at the beginning of each month for the following 30 days of expected output at a minimum $21.00 price per Memo (each, an "Advance Payment"). For clarity, the Advance Payment for the (i) first 5,000 Memos of the First Production Run due October 19, 2017 shall be $105,000 and shall be made on September 19, 2017; (ii) subsequent 10,000 Memos of the First Production Run due November 19, 2017 shall be $210,000 and shall be made on October 19, 2017 and (iii) final 10,000 Memos of the First Production Run due December 19, 2017 shall be $210,000 and shall be made on November 20, 2017. For any Subsequent Production Run, the Advance Payment shall be $420,000. If there is a difference between an Advance Payment amount and aggregate Memo cost during a Production Run pursuant to the Section 8 Fee schedule (the "Cost Difference"), Contractor shall provide ROSS a detailed accounting of such Cost Difference in a timely manner and ROSS shall pay such Cost Difference within seven (7) days receipt of such detailed accounting.

10. Delivery: Contractor shall deliver batched Memos via e-mail or FTP to ross@rossintelligence.com and via the ROSS Memo upload portal (the "Portal"). The Portal shall meet necessary specifications of speed and capacity to process daily batched Memo uploads.

11. Quality Assurance: Contractor shall ensure the Memos submitted follow the (i) quality control processes detailed in the LegalEase Solutions Quality Control Guide ("QCG") provided in Schedule A to this Statement of Work and the (ii) Quality Control Checklist provided in Schedule B to this Statement of Work. Contractor shall follow a staged quality control process. There will be 100% quality control for the first 2000 Memos, 75% for the next 10,000 Memos and 25% for the remaining Memos. If any of the Memos submitted do not meet the parameters prescribed in the QCG, ROSS shall inform Contractor of such Deficiencies within 14 days of receipt of the applicable Memos. If no such notice is received within the prescribed 14 days, the applicable Memos shall be deemed fully accepted by ROSS. A 15% penalty shall be charged to any Memo and/or batch of Memos that fail to meet the QCG requirements.

12. Reporting: Contractor shall email daily reports to ROSS which include the production totals, QCG results, and other requested information from ROSS.

13. Destruction of Memos: Contractor acknowledges that the Memos constitute Confidential Information and shall remove and destroy all Memos and copies of Memos in its

possession within sixty (60) days of each Production Run and shall concurrently confirm to ROSS that such removal and destruction has occurred.

14. <u>Existing Agreements</u>: This Statement of Work is ancillary to existing agreements, including, but not limited to the MSA and prior Statements of Work.

Date: September  15 , 2017

ROSS INTELLIGENCE, INC.

By: _____

Name: Andrew Arruda
Title: Chief Executive Officer

LEGALEASE LLC

By: _____

Name: Tariq Hafeez
Title: President

TR-0000571

Schedule A

# Quality Control Guide for ROSS Intelligence

Drafting Questions, Preparing Responsive
Memorandum, and Quality Control
Procedures

LegalEase Solutions LLC

TR-0000572



## TABLE OF CONTENTS

**Overview** .................................................................................................................... 2
    **Introduction** ............................................................................................................ 2
    **Audience** ................................................................................................................ 2
    **Objectives** .............................................................................................................. 2
**Legal Disclaimer** ............................................................................................................ 3
**The LegalEase Ross Team and Process** ............................................................................ 4
    **Attorneys** ............................................................................................................... 4
    **Quality Control Attorneys** ........................................................................................ 4
    **Staged Quality Control Process** ................................................................................ 4
    **Production Expeditors** ............................................................................................. 5
    **India and US Project Managers** ................................................................................ 5
    **ROSS Operations** ................................................................................................... 5
**The LegalEase ROSS Process Flowchart** ........................................................................ 6

TR-0000573



**Overview**

**Introduction**

The LegalEase Solutions Quality Control Guide ("QCG") is the primary quality assurance resource and playbook for our attorneys.  This QCG provides all the tools and resources needed for the drafting and delivery of ROSS Intelligence memos.

**Audience**

The intended audience for this guide is our attorneys who prepare Ross memos. Additionally, this guide may be utilized by ROSS to review our internal process.

**Objectives**

This guide:

- Identifies clear guidelines for attorneys to follow when designing, developing, and researching, drafting, and delivering ROSS memos.
- Describes quality control standards for ROSS memos.
- Describes quality control procedures and processes set in place for ROSS memo production.

TR-0000574



**Legal Disclaimer**

This Quality Control Guide includes proprietary, confidential, and/or trade secret information. LegalEase considers this information to be a trade secret not subject to disclosure.

TR-0000575



**The LegalEase ROSS Team and Process**

We have organized a comprehensive team for this project.  Leading the team for ROSS operations are Teri Whitehead, VP of Global Strategy and Gayathri Rajeev, Director of Operations in India.  Teri and Gayathri will oversee operations and are available anytime to address and resolve any potential concerns.

**Attorneys.** Our team of attorneys will research topics and questions, draft the memos, and compile the memos in the ROSS approved format.   We will ensure that our attorneys follow this QCG for drafting memos and utilize our internal associate work product checklists. The steps include:

 i.  Using our LegalEase's creative process, to produce ROSS questions.
 ii.  Research answers to questions.
 iii.  Draft ROSS memorandum.

**Quality Control Attorneys.** We have allocated a minimum of 5 separate QC attorneys to independently review memos, ensuring that ROSS standards are met.  These attorneys have a minimum of 3 years' experience in these positions.  The QC team will be expanded as needed per the scope and requirements of this project. The QC team will follow the QC checklist setting out the steps to be followed in completing the process. These steps include:

 i.  Review and confirm the grammar, question format, and citations.
 ii.  Confirm and review short answer and legal analysis.
 iii.  Review reference quotes for relevancy.
 iv.  Confirm case law.
 v.  Advise associates of errors and design action plan to avoid future errors.

**Staged Quality Control Process.**  Our QC attorneys will follow LegalEase's staged quality control process.  We have used this process with success on other large accounts with over 50,000 documents.

 First Stage:
  100% QC of 2000 Memos.  Our QC attorneys will QC 100% of the first 2000 memos.
 Second Stage:
  75% for the next 10,000 memos. Our QC attorneys will QC 75% of the next 10,000 memos.
 Third Stage:
  25% for the remaining memos. Our QC attorneys will QC 25% or more of the remaining memos.

TR-0000576



**Production Expeditors.** Our dedicated ROSS production expeditors will comply and follow ROSS' process on delivery, including the portal upload, data tracking, and logistics. These steps include:

i. Validate question originality.
ii. Upload memorandum to ROSS dedicated portal.
iii. Update internal LE production tracking sheet.
iv. Email production totals of attorneys and QC attorneys to Project Managers.
v. Update internal exception error tracking sheet.
vi. Update ROSS' completion tracking sheet.

**India and US Project Managers.** We have assigned to ROSS, three project managers. Our project managers will guarantee and ensure ROSS quality and processes. Having project managers in different time zones will provide round the clock attention and access.

The role of the PM's include:

i. Review production of attorneys, QC attorneys, production expeditors.
ii. Daily review protocol and process for efficiencies following LE model theory of constraints.
iii. Address any concerns.
iv. Email daily reports to LegalEase Operations detailing production, legal topics addressed, upload process production, improved efficiencies, and QC results.

**Ross Operations.** Teri Whitehead and Gayathri Rajeev will oversee all aspects of this project. Teri and Gayathri's role includes the following:

i. Address any concerns.
ii. Email daily reports to the ROSS team providing production totals, QC results, and other requested information.
iii. Host daily conference status calls with the ROSS Production team.

TR-0000577



**The LegalEase ROSS Process Flowchart**



TR-0000578

| | | Schedule B |
|---|---|---|
| Document ID | : ROSS Bulk QCC | |
| Date of Issue | : 07.08.2017 | |
| Periodic Review | : 09.15.2017 | |
| Revision No | : | |

# Quality Control Checklist for ROSS Intelligence

**LegalEase Solutions LLC**

1

TR-0000579

| | |
|---|---|
| Document ID | : ROSS Bulk QCC |
| Date of Issue | : 07.08.2017 |
| Periodic Review | : 09.15.2017 |
| Revision No | : |

Schedule B

## QUALITY CONTROL CHECKLIST FOR ROSS BULK MEMOS

### Attorney - ROSS Intelligence Checklist

| Description | Completed |
|---|---|
| 1. Draft ROSS questions following LegalEase Creative Process. | |
| 2. Research questions using online resources and accounts. | |
| 3. Label cases as great, good, topical, and irrelevant. | |
| 4. Confirm that great, and good quotes answer the question directly. | |
| 5. Add topical and irrelevant cases. | |
| 6. Confirm that the topical and irrelevant cases meet the criteria. | |
| 7. Confirm grammar correct throughout memo. | |
| 8. Confirm the font and space of the memo. | |
| 9. Follow file name convention. | |

### Review Attorney - ROSS Intelligence Checklist

| Description | QC 1 | QC 2 |
|---|---|---|
| Question should not be state specific. | | |
| Grammar check of question. | | |
| Quotes to be labeled correctly. GREAT – must contain **all** essential elements of the question. GOOD – contains **most** of the essential elements of the question. | | |

2

TR-0000580

Schedule B

Document ID      : ROSS Bulk QCC
Date of Issue    : 07.08.2017
Periodic Review  : 09.15.2017
Revision No      :

| | | | |
|---|---|---|---|
| | TOPICAL – foundation quote, background information. IRRELEVANT– has no reference or relevance. | | |
| | Should label as Great Case 1, Great Case 2, and not Great Quote. | | |
| | Bracketed language **must** answer question. Bracketed language may be up to a paragraph. If necessary, you can double bracket separate sentences. Bracketed language must be a sentence. Not just two words. | | |
| | Double Brackets, and Content in Bold. | | |
| | No red squiggly line. | | |
| | Confirm reference quote.  Ensure Topical quote and Irrelevant quotes are added. | | |
| | Smartsheet updates. | | |
| | Double check the Form - Double Brackets for Quotes.  No highlights. | | |
| | Memo number. | | |
| | Memo saved in correct format – naming convention. | | |

3

TR-0000581

# EXHIBIT 5

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

# EXHIBIT 6

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

# EXHIBIT 7

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

EXHIBIT 8

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

EXHIBIT 9

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

# EXHIBIT 10

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT 11

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

# EXHIBIT 12

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

# EXHIBIT 13

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT 14

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

EXHIBIT 15

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION, | ) ) ) ) | |
| Plaintiffs and Counterdefendants, | ) ) ) | C.A. No. 20-613 (LPS) |
| v. | ) ) ) | **CONTAINS INFORMATION DESIGNATED "HIGHLY CONFIDENTIAL — ATTORNEYS' EYES ONLY"** |
| ROSS INTELLIGENCE INC., | ) ) ) | |
| Defendant and Counterclaimant. | ) ) | |

**PLAINTIFFS AND COUNTERDEFENDANTS THOMSON REUTERS ENTERPRISE CENTRE GMBH AND WEST PUBLISHING CORPORATION'S RESPONSES AND OBJECTIONS TO DEFENDANT AND COUNTERCLAIMANT ROSS INTELLIGENCE INC.'S THIRD SET OF INTERROGATORIES (NOS. 14–21)**

Pursuant to Federal Rules of Civil Procedure 26 and 33 and the Local Rules of the United States District Court for the District of Delaware (the "Local Rules" and each a "Local Rule"), Plaintiffs and Counterdefendants Thomson Reuters Enterprise Centre GmbH ("Thomson Reuters") and West Publishing Corporation ("West") (collectively "Plaintiffs"), hereby respond to Defendant and Counterclaimant ROSS Intelligence Inc.'s ("Defendant") Third Set of Interrogatories, served on January 25, 2022 (the "Third Set of Interrogatories" and each individually, an "Interrogatory") in the above-captioned action ("Action") as follows:

## **GENERAL OBJECTIONS**

1.      Plaintiffs object to the Third Set of Interrogatories to the extent that it purports to impose obligations beyond those set forth in the Federal Rules of Civil Procedure, the Local Rules, or other applicable law.

2.      Plaintiffs object to the Third Set of Interrogatories to the extent that it seeks proprietary or confidential business information, trade secrets or other sensitive information.  To the extent that the response to any Interrogatory requires the disclosure of any non-privileged proprietary or confidential information, trade secrets or other sensitive information, Plaintiffs will provide such information subject to the Protective Order so ordered by the Court in this case.  D.I. 48.

3.      Plaintiffs object to the Third Set of Interrogatories to the extent that it seeks information that is subject to the attorney-client privilege, the work product privilege, or any other applicable privilege or protection under federal or state law.  Plaintiffs do not waive, intend to preserve, and are preserving any such privilege with respect to any information protected by such privilege.

4.      The responses provided to the Third Set of Interrogatories are based on Plaintiffs' interpretation of the language used in the Third Set of Interrogatories.  Plaintiffs reserve their right to amend or to supplement their responses and objections in the event that Defendant asserts an interpretation that differs from Plaintiffs' interpretation.

5.      Plaintiffs object to the Third Set of Interrogatories to the extent that it seeks information that is outside of Plaintiffs' possession, custody, or control, including in Instruction No. 7.  For the purpose of responding to the Third Set of Interrogatories, Plaintiffs will provide

responses based on the information that is reasonably within their possession, custody, or control.

6.      The responses below shall not be interpreted to concede the truth of any factual assertion or implication contained in the Third Set of Interrogatories.  Plaintiffs' responses to the Third Set of Interrogatories in no way constitute admissions or acknowledgements by Plaintiffs as to the relevance, materiality, or admissibility of any of the information contained therein, and Plaintiffs expressly reserve their rights to object as such.

7.      Plaintiffs reserve the right to modify or supplement their objections and responses to the Third Set of Interrogatories to conform to the results of continuing discovery.  These responses also are subject to correction for omissions or errors.

8.      In providing responses to the Third Set of Interrogatories, Plaintiffs do not in any way waive or intend to waive, but rather are preserving and intend to preserve:

    (i)      All objections as to competency, authenticity, relevancy, materiality and admissibility;

    (ii)      All rights to object on any grounds to the use in any subsequent proceedings of any of the responses or information contained herein, including but not limited to the right to object at the trial of this or any other action;

    (iii)      All objections as to vagueness and ambiguity; and

    (iv)      All rights to object on any grounds to any further interrogatories.

9.      Plaintiffs object to the Third Set of Interrogatories to the extent that any Interrogatory's subparts, including those arising from Defendant's "Definitions" and

"Instructions," actually constitute separate interrogatories, thereby exceeding the number of interrogatories permitted under Federal Rule of Civil Procedure 33(a)(1).

10.     Plaintiffs object to the Third Set of Interrogatories as premature to the extent that it asks or requires Plaintiffs to provide information that is the subject of expert disclosures under Federal Rule of Civil Procedure 26(a)(2).

11.     Plaintiffs object to the Third Set of Interrogatories to the extent that it is premature in that it asks or requires Plaintiffs to analyze or formulate contentions on matters for which Plaintiffs' investigation and discovery have not yet been completed.  The responses provided below are based on the investigation conducted to date and are without prejudice to any later supplementation, amendment, or modification.

12.     Plaintiffs objects to the Third Set of Interrogatories as overly broad to the extent that it defines the term "THOMSON REUTERS" to include "its present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on its behalf."  For the purpose of responding to the Third Set of Interrogatories, Plaintiffs will construe this term to mean solely Thomson Reuters Enterprise Centre GmbH, and not any other person or entity.

13.     Plaintiffs objects to the Third Set of Interrogatories as overly broad to the extent that it defines the term "WEST" to include "its present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on its behalf."  For the purpose of responding to the Third Set of Interrogatories, Plaintiffs will construe this term to mean solely West Publishing Corporation, and not any other person or entity.

14.     Plaintiffs objects to the Third Set of Interrogatories as overly broad to the extent that it defines the terms "YOU," "YOUR," and "PLAINTIFFS" to incorporate the definitions of the terms "THOMSON REUTERS" and "WEST" and thus are defined to include Thomson Reuters Enterprise Centre GmbH's and West Publishing Corporation's "present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on [their] behalf."  For the purpose of responding to the Third Set of Interrogatories, Plaintiffs will construe the terms "YOU," "YOUR," and "PLAINTIFFS" to mean solely Thomson Reuters Enterprise Centre GmbH and West Publishing Corporation, and not any other person or entity.

15.     Plaintiffs objects to the Third Set of Interrogatories as overly broad to the extent that it defines the terms "ROSS," "DEFENDANT," and "COUNTERCLAIMANT" to include "its present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on its behalf."  For the purpose of responding to the Third Set of Interrogatories, Plaintiffs will construe these terms to mean solely ROSS Intelligence, Inc., and not any other person or entity.

16.     Plaintiffs object to the Third Set of Interrogatories as vague and ambiguous to the extent that it defines the term "DESCRIBE" using the capitalized term "Identifying."  It is unclear whether Defendant intended to incorporate the definition of the defined term "IDENTIFY," in which case the definition of the term "DESCRIBE" is nonsensical, or to give that word a separate definition.  For the purpose of responding to the Third Set of Interrogatories,

Plaintiffs will construe the term "Identifying" as used in the definition of the term "DESCRIBE" with its ordinary meaning.

17.      Plaintiffs object to Instruction No. 6 to the extent it purports to impose obligations with regard to the production of privilege logs that differ from those required by the Federal Rules and Local Rules.  Plaintiffs will log information pursuant to the Protective Order.

18.      Plaintiffs object to Instruction Nos. 7 and 9 as vague and ambiguous to the extent that they use the undefined term "FOUNDATION."  For the purpose of responding to the Third Set of Interrogatories, Plaintiffs will construe that term to mean Thomson Reuters Enterprise Centre GmbH and West Publishing Corporation, and not any other person, entity, or foundation.

19.      Plaintiffs object to the Third Set of Interrogatories as overly broad and unduly burdensome to the extent that its Interrogatories do not specify timeframes and are thus unlimited as to time.

20.      Plaintiffs incorporate the foregoing General Objections into each and every one of its responses to the Third Set of Interrogatories as set forth below.

## RESPONSES AND OBJECTIONS TO INTERROGATORIES

**INTERROGATORY NO. 14:**

State the number of HEADNOTES contained in WESTLAW.

**RESPONSE TO INTERROGATORY NO. 14:**

Plaintiffs incorporate by reference the above-stated General Objections as if fully set forth herein.  Plaintiffs specifically object to this Interrogatory as vague and ambiguous to the extent the term "contained in" is unclear and undefined.  Plaintiffs object to this Interrogatory to the extent that it seeks information that is neither relevant to any claim or defense of any party in this Litigation nor is it proportional to the needs of the case, including because it seeks information about headnotes and portions of Westlaw that are not at issue.  Plaintiffs object to this Interrogatory to the extent that it seeks information that is or will be in the possession of ROSS by referring to documents, taking depositions, or any other means of obtaining discovery in this Litigation that is more convenient, efficient, practical, and less burdensome.  Plaintiffs object to this Interrogatory to the extent that it is duplicative of other Interrogatories, including Nos. 1, 2, 9, 15, 16, and 17.  Plaintiffs object to this Interrogatory to the extent that it calls for confidential information, trade secrets, or proprietary business information.  Plaintiffs will provide such information subject to the Protective Order so ordered by the Court in this case. D.I. 48.

**\* BEGIN HIGHLY CONFIDENTIAL — ATTORNEYS' EYES ONLY DESIGNATION \***

██████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████

**INTERROGATORY NO. 15:**

State the number of HEADNOTES contained in WESTLAW that YOU created, when each HEADNOTES was created.

**RESPONSE TO INTERROGATORY NO. 15:**

██████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████████████



**<u>INTERROGATORY NO. 16</u>:**

      For each HEADNOTES [sic] identified in Interrogatory No. 15, state when each
HEADNOTE was created and by whom.

**RESPONSE TO INTERROGATORY NO. 16:**



███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

████████████████████████████

██████████████████████████████████

███████████████████████

**INTERROGATORY NO. 17:**

State the number of HEADNOTES contained in WESTLAW that YOU registered for copyright protection.

**RESPONSE TO INTERROGATORY NO. 17:**

██████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

████████████████████████████████████

█████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

████████████████████████████████████

█████████████████████████████████████

████████████████████████████████████

█████████████████████████████████████

11

████████████████████████████████████████████

███████████████████████████████████████

████████████████████████████

██████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████

█████████████████████████████████████

██████████████████████████████

**INTERROGATORY NO. 18:**

Identify the specific U.S. Copyright Registration Numbers for each HEADNOTE identified in Interrogatory No. 17.

**RESPONSE TO INTERROGATORY NO. 18:**

█████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████

████████████████████████████████████████

████████████████████████████████████

█████████████████████████████████████████

████████████████████████████████████

██████████████████████████████

███████████████████████████████

█████████████████████████████████████

████████████████

███████████████████████████████████

█████████████████████████

**INTERROGATORY NO. 19:**

Identify each and every KEY NUMBER in the WKNS, including when each and every
KEY NUMBER was created and by whom.

**RESPONSE TO INTERROGATORY NO. 19:**

███████████████████████████

███████████████████████████████

█████████████████████████████████████

██████████████████████████████████

████████████████████████████████████

████████████████████████████████

██████████████████████████████████

███████████████████████████████

███████████████████████████████████

███████████████████████████████████████

████████████████████████████████

████████████████████████████████

███████████████████████████████████████████████

███████████████████████████

████████████████████████████████████████

███████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████

**INTERROGATORY NO. 20:**

For each customer who paid any amount to YOU for access to WESTLAW CONTENT at any time, IDENTIFY the total amount that customer paid YOU over all time, the amount that customer paid you on an annual basis, and the products and/or services for which that customer paid those amounts, and state whether YOU contend that customer also became a customer of ROSS at any time.

**RESPONSE TO INTERROGATORY NO. 20:**

████████████████████████████████████████████

██████████████████████████████████████████████████



██████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████

**INTERROGATORY NO. 21:**

Describe in detail the complete legal and factual bases for all damages to which PLAINTIFFS contend they are entitled. To be complete, your answer must describe each category of damages to which PLAINTIFFS contends they are entitled (including, for example, reasonable royalty, lost profits, price erosion, convoyed or collateral sales, or any other form of damages); all theories of recovery under each category and all factual support for each such theory; and your computation of damages under each category.

**RESPONSE TO INTERROGATORY NO. 21:**

██████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████







**\*END OF HIGHLY CONFIDENTIAL — ATTORNEYS' EYES ONLY DESIGNATION\***

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

_____

Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com

*Attorneys for Plaintiffs and*
*Counterdefendants Thomson Reuters*
*Enterprise Center GmbH and West Publishing*
*Corporation*

OF COUNSEL:

Dale M. Cendali
Joshua L. Simmons
Eric A. Loverro
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
(212) 446-4800

Daniel E. Laytin
Christa C. Cottrell
Cameron Ginder
Alyssa C. Kalisky
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL  60654
(312) 862-2000

Miranda D. Means
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
(617) 385-7500

February 24, 2022

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 24, 2022, copies of the foregoing were caused to be

served upon the following in the manner indicated:

David E. Moore, Esquire                                      *VIA ELECTRONIC MAIL*
Stephanie E. O'Byrne, Esquire
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE  19801
*Attorneys for Defendant and Counterclaimant*

Mark A. Klapow, Esquire                                      *VIA ELECTRONIC MAIL*
Lisa Kimmel, Esquire
Crinesha B. Berry, Esquire
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, DC  20004
*Attorneys for Defendant and Counterclaimant*

Gabriel M. Ramsey, Esquire                                   *VIA ELECTRONIC MAIL*
Kayvan M. Ghaffari, Esquire
Jacob Canter, Esquire
Warrington Parker, Esquire
CROWELL & MORING LLP
3 Embarcadero Center, 26th Floor
San Francisco, CA  94111
*Attorneys for Defendant and Counterclaimant*


/s/ Michael J. Flynn
_____
Michael J. Flynn (#5333)

# EXHIBIT 16

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

EXHIBIT 17

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT 18

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT 19

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

# EXHIBIT 20

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

# EXHIBIT 21

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

# EXHIBIT 22

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT 23

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

# EXHIBIT 24

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

# EXHIBIT 25

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY