EXHIBIT 27

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION, | ) ) ) | |
| | ) | C.A. No. 20-613-LPS |
| Plaintiffs/Counterdefendants, | ) ) | **JURY TRIAL DEMANDED** |
| v. | ) ) | |
| ROSS INTELLIGENCE INC., | ) ) | |
| Defendants/Counterclaimant. | ) ) | |

**DEFENDANT/COUNTERCLAIMANT ROSS INTELLIGENCE, INC.'S
FIRST SET OF INTERROGATORIES (NOS. 1-8)**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the Local Rules of this Court, Defendant / Counterclaimant ROSS Intelligence, Inc. ("ROSS"), by and through its undersigned counsel, hereby requests that Plaintiff/Counterdefendants Thomson Reuters Enterprise Centre GmbH ("Thomson Reuters") and West Publishing Corporation ("West"), answer the following Interrogatories, including the copyright infringement contentions (Interrogatory Nos. 1-5) made pursuant to the Scheduling Order (D.I. 51 at 5), fully and separately, in writing and under oath, and deliver such responses within thirty (30) days after service of these Interrogatories to the offices of Potter Anderson Corroon, LLP, Hercules Plaza 1313 North Market Street, 6th Floor. P.O. Box 951, Wilmington, Delaware 19801.

**DEFINITIONS**

Insofar as any of the terms below are used herein, the following definitions shall apply:

1.      The term "THOMSON REUTERS" as used herein means Plaintiff / Counterdefendant Thomson Reuters Enterprise Centre GMBH, and its present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors,

owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on its behalf.

2.       The term "WEST" as used herein means Plaintiff / Counterdefendant West Publishing Corporation and its present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on its behalf.

3.       The terms "YOU," "YOUR," and "PLAINTIFFS" are used herein to mean THOMSON REUTERS and WEST.

4.       "WESTLAW" means the product that YOU license as discussed in YOUR COMPLAINT.

5.       "WESTLAW CONTENT" has the same meaning as the term "Westlaw content" as used in the COMPLAINT ¶ 1.

6.       "WKNS" or "KEY NUMBER SYSTEM" means the Westlaw Key Number System as discussed in YOUR COMPLAINT.

7.       "HEADNOTES" means the West Headnotes as discussed in YOUR COMPLAINT.

8.       The terms "ROSS," "DEFENDANT," and "COUNTERCLAIMANT," as used herein means ROSS Intelligence, Inc., and its present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on its behalf.

9.       "COMPLAINT" means the Complaint filed by PLAINTIFFS in this litigation in the United Stated District Court for the District of Delaware on May 6, 2020 (D.I. 1).

10.     "ROSS INFRINGES" means the alleged claims of direct, indirect, and secondary infringement against ROSS discussed in YOUR COMPLAINT.

11.     The terms "DOCUMENT" or "DOCUMENTS" is used in the broadest sense permissible under the Federal Rules of Civil Procedure and shall include, without limitation, any any written, printed, typed, recorded, or graphic matter, however produced, reproduced, or stored, including the originals and all nonidentical copies, whether different from the originals by reason of any notations made on such copies or otherwise, in the actual or constructive possession, custody, or control of PLAINTIFFS, including without limitation contracts, letter agreements, records, correspondence, COMMUNICATIONS, electronically stored information, emails, tweets, blog or Internet forum posts or comments, text messages on portable devices, Blackberry Messenger messages, SMS messages, instant messenger messages (e.g. Skype, Slack, etc.), memoranda, handwritten notes, source code, object code, binaries and associated files and/or structures, source code comments, source repository logs, server logs, records or summaries of negotiations, records or summaries of interviews or conversations, audio or video recordings, copies of video games, all Internet-based media, photographs, corporate minutes, diaries, telephone logs, instant messaging logs, chat room logs, schedules, drawings, product storyboards, product mockups, statistical statements, work papers, disks, data cards, films, data processing files, charts, graphs, microfiche, microfilm, contracts, notices, reports, recitals, statements, worksheets, abstracts, resumes, summaries, jottings, market data, books, journals, ledgers, audits, maps, diagrams, research documents, newspapers, appointment books, desk calendars, project management charts (e.g., Gantt charts), task management records (e.g., to-do lists), expense reports, computer printout and other computer readable or electronic records, and all drafts or modifications thereof, and all non-identical copies of any such items. Any such

3

DOCUMENT with any sheet or part thereof bearing any marks, such as initials, stamped indices, comments or notations, or any character or characters, that are not part of the signed text or photographic reproduction thereof is to be considered as a separate DOCUMENT. Where there is any question about whether a tangible item otherwise described in these requests falls within the definition of "DOCUMENT(S)," such tangible item shall be produced.

12.     The terms "COMMUNICATION" or "COMMUNICATIONS" mean any manner or method in which information is communicated from one human being to another, including, but not limited to, any means of transmission, sending, and/or receipt of information of any kind, such as speech, writing, language, nonverbal signals, computer electronics of any kind, magnetic tape, video tape, photographs, graphs, symbols, magnetic disks, sound, radio and/or video signal, telephone, teletype, telecommunication, telegram, microfilm, microfiche, photographic film of any type, and/or media of any kind.

13.     "DESCRIBE" means giving a detailed written description of the subject matter at issue in the Interrogatory, Identifying all witnesses with knowledge of that subject matter, and Identifying all Documents that are pertinent to that subject matter.

14.     "AND" and "OR" and "BETWEEN" and "AMONG" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of a request all information that otherwise might be construed to be outside of its scope.

15.     "ANY" shall mean any or all and the term "ALL" shall mean any or all.

16.     "IDENTIFY" or "STATE ALL FACTS" means to state the date and place of the communication, occurrence, event, fact, or thing; the Person(s) participating in the communication, occurrence, event, fact, or thing; and the substance of the communication, occurrence, event, fact or thing.

17.     "INCLUDING" means not limited to.

18.     The terms "PERSON" and "PERSONS" means any individual, corporation, partnership, association, organization, or other entity of any type or nature.

19.     The terms "RELATE TO," "RELATED TO," AND "RELATING TO" mean constituting, pertaining to, in connection with, reflecting, respecting, regarding, concerning, referring to, based upon, stating, showing, evidencing, establishing, supporting, negating, contradicting, describing, recording, noting, embodying, memorializing, containing, mentioning, studying, analyzing, discussing, specifying, identifying or in any manner logically, factually, indirectly or directly, or in any other way connecting to the matter addressed, in whole or in part.

20.     The singular form of a noun or pronoun shall be considered to include within its meaning the plural form of the noun or pronoun, and vice versa; and the past tense shall include the present tense where the clear meaning is not distorted. The term "or" shall mean "and" and vice-versa, as necessary to bring within the scope of the following requests all information or DOCUMENTS that would be excluded absent this definition.

## **INSTRUCTIONS**

1.     Responses to these Interrogatories shall comply with all procedures, definitions and provisions provided by the United States District Court for the District of Delaware (including the Local Rules), the Federal Rules of Civil Procedure, and any other applicable standards, orders, or instructions as issued by the Court.

2.     All spelling, syntax, grammar, abbreviations, idioms and proper nouns shall be construed and interpreted to give proper meaning and consistency to their context.  Wherever appropriate, verb tenses shall be interpreted to include past, present and future tenses. References to a gender shall be interpreted to include the masculine, feminine and neuter.  The

use of defined terms in these Interrogatories apply whether or not they are capitalized.  The singular includes the plural and vice versa.  The words "and" and "or" shall be construed as either disjunctively or conjunctively as necessary to bring within the scope of the Interrogatory all responses that might otherwise be construed to be outside of its scope.  The words "all," "any," and "each" shall be construed as encompassing any and all.

3.      Each Interrogatory shall be answered fully, in writing, and under oath, unless it is objected to in good faith, in which event the reasons for any objection shall be stated in detail.  If an objection pertains to only a portion of an Interrogatory, or a word, phrase, or clause contained within it, state the objection in detail to that portion only and respond to the remainder of the Interrogatory, using your best effort to do so.

4.      All grounds for an objection to an Interrogatory shall be stated with specificity as to each individual Interrogatory or portion thereof, as applicable.

5.      The answers to the Interrogatories are to be signed and verified by the person making them, and the objections are to be signed by the attorney making them.

6.      If PLAINTIFFS claim that any information or document requested is withheld on the basis of any claim of privilege or protection that YOU are not prepared to waive, identify all such and provide the following information in a privilege log that conforms with the requirements of the Federal Rules of Civil Procedure and any and all applicable Local Rules, including:

a.      the basis on which the privilege is claimed;

b.      information sufficient to identify the privilege or protection YOU claim permits YOU to withhold the information or document;

c.      the date of the information or document;

        d.       the name and position of each person possessing the information or document; communicating the information or document; receiving such information or document or intended to receive such information or document; and

        e.       any other facts on which YOU base YOUR claim of privilege or protection.

       7.       In answering the Interrogatories, furnish all available information, including information in the possession, custody or control of any of the PLAINTIFFS' attorneys, directors, officers, agents, employees, representatives, associates, investigators, divisions, affiliates, partnerships, parents or subsidiaries, and Persons who have the best knowledge, not merely information known to the FOUNDATION based on the PLAINTIFFS' own knowledge. If PLAINTIFFS cannot fully respond to the entirety of each of the following Interrogatories after exercising due diligence to secure the information requested thereby, so state, and specify the portion of each Interrogatory that cannot be responded to fully and completely.  In the latter event, state what efforts were made to obtain the requested information and the facts relied upon that support the contention that the Interrogatory cannot be answered fully and completely, and state what knowledge, information or belief PLAINTIFFS has concerning the unanswered portion of any such Interrogatory.

       8.       Where the PLAINTIFFS cannot answer an Interrogatory that seeks identification of persons knowledgeable about a particular topic because the PLAINTIFFS is unaware of the relative knowledge of persons with knowledge, the PLAINTIFFS should identify those it believes have substantive knowledge of the topic and the knowledge the PLAINTIFFS believe each has.

9.      If the PLAINTIFFS' response to a particular Interrogatory is a statement that the FOUNDATION lacks the ability to comply with that Interrogatory, the FOUNDATION must specify whether the inability to comply is because the particular item or category of information never existed, has been destroyed, has been lost, misplaced, or stolen, or has never been, or is no longer in the PLAINTIFFS' possession, custody or control, in which case the name and address of any person or entity known or believed by the PLAINTIFFS to have possession, custody or control of that information or category of information must be identified.

10.     These Interrogatories are continuing.  Therefore, if any information sought herein is not learned of or obtained until after YOU responded, or if YOUR answers for any reason should later become incorrect, pursuant to Fed. R. Civ. P. 26(e), YOU have a continuing duty to supplement or change answers and responses previously submitted.

11.     ROSS hereby designates Interrogatory Nos. 1-5 below as the five copyright infringement contentions pursuant to the Scheduling Order.  (D.I. 51 at 5).

## INTERROGATORIES

## INTERROGATORY NO. 1.:

IDENTIFY the specific portions of the WESTLAW CONTENT that you claim is subject to copyright that ROSS INFRINGES.

## INTERROGATORY NO. 2.:

IDENTIFY the specific HEADNOTES that you claim is subject to copyright that ROSS INFRINGES.

## INTERROGATORY NO. 3.:

IDENTIFY the specific portions of the KEY NUMBER SYSTEM that you claim is subject to copyright that ROSS INFRINGES.

**INTERROGATORY NO. 4.:**

State all facts describing how ROSS infringes Plaintiffs' asserted copyrights in WESTLAW CONTENT.

**INTERROGATORY NO. 5.:**

State all facts describing how ROSS infringes Plaintiffs' asserted copyrights in the specific structure, sequence and organization of specific elements of the KEY NUMBER SYSTEM.

**INTERROGATORY NO. 6.:**

DESCRIBE how the ROSS product allegedly infringes the WESTLAW CONTENT that you claim is subject to copyright.

**INTERROGATORY NO. 7.:**

For each WESTLAW CONTENT identified in Interrogatory No. 1, STATE ALL FACTS describing how ROSS allegedly infringes the WESTLAW CONTENT that you claim is subject to copyright.

**INTERROGATORY NO. 8.:**

For each WESTLAW CONTENT identified in Interrogatory No. 1, STATE ALL FACTS that support YOUR contention that the WESTLAW CONTENT that you claim is subject to copyright is original and creative.

**INTERROGATORY NO. 9.:**

For each HEADNOTE identified in Interrogatory No. 2, STATE ALL FACTS that support YOUR contention that the HEADNOTE that you claim is subject to copyright is original and creative.

**INTERROGATORY NO. 10.:**

For each specific element of the KEY NUMBER SYSTEM identified in Interrogatory No. 3, STATE ALL FACTS that support YOUR contention that the specific element of the KEY NUMBER SYSTEM that you claim is subject to copyright is original and creative.

**INTERROGATORY NO. 11.:**

For the specific structure, sequence and organization of the specific elements of the KEY NUMBER SYSTEM identified in Interrogatory No. 3, STATE ALL FACTS that support YOUR contention that such structure, sequence and organization of the KEY NUMBER SYSTEM that you claim is subject to copyright is original and creative.

**INTERROGATORY NO. 12.:**

DESCRIBE how YOUR algorithmically generated key number categorization system, known as the Classification and Recommendation Engine (CaRE) system, classifies "millions of headnotes to a Key Number taxonomy with more than 90,000 categories," stated on the website https://web.archive.org/web/20210507051753/https://www.thomsonreuters.com/en/artificial-intelligence/ai-timeline.html, attached hereto as **Exhibit A**.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

By:  */s/ Stephanie E. O'Byrne*
    David E. Moore (#3983)

Gabriel M. Ramsey
    Stephanie E. O'Byrne (#4446)
Warrington Parker
    Hercules Plaza, 6th Floor
Kayvan M. Ghaffari
    1313 N. Market Street
Jacob Canter
    Wilmington, DE  19801
CROWELL & MORING LLP
    Tel:  (302) 984-6000
3 Embarcadero Center, 26th Floor
    dmoore@potteranderson.com
San Francisco, CA 94111
    sobyrne@potteranderson.com
Tel:  (415) 986-2800

*Attorneys for Defendant/Counterclaimant*
Mark A. Klapow
*ROSS Intelligence, Inc.*
Lisa Kimmel
Joshua M. Rychlinski
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC  20004
Tel:  (202) 624-2500

Dated:  May 12, 2021
7196563 / 50241

# EXHIBIT A

Directory

Logins  Support  Contact



# Our AI timeline

2000s

**More on AI @ TR**

Thomson Reuters has been innovating for its customers from day one - which for some customer segments goes as far back as the 1800's. Initially, technology was used to collect, organize, and enhance information for its customers. Later, it would employ artificial intelligence (AI) to improve the customer's ability to find the information they needed. Today, we use AI to better understand our customers and surface information and insights they need when they need it. Thomson Reuters, through its different businesses, has had a formal applied research and development group since 1992.

Follow our AI @ TR timeline to discover our innovation journey.

# 1970s

## 1975

## Westlaw



In 1986, the Harris County Law Library began offering Westlaw as part of its collection through a terminal named WALT - a.k.a. West Automated Legal Terminal - similar to the one pictured here.

Westlaw was one of the first online legal research services. Attorneys used dumb terminals to dial up to a mainframe. The content was limited (disk space was expensive) and the search language simplistic.

Westlaw marked the beginnings of technology-driven innovation in many ways for legal sector.

# 1990s

# 1991

## Scientist Spotlight: Howard Turtle



Howard Turtle

As chief scientist, Howard Turtle helped found one of the first R&D groups at Thomson Reuters. He is a nationally known scholar in search engine technologies, having developed a formal retrieval model based on Bayesian Inference Networks that formed the basis of the University of Massachusetts' INQUERY Retrieval System and of West Publishing's natural language search product, called WIN. Howard led the legal R&D group until 1996. Howard Turtle retired from Syracuse University in 2016.

# 1992

## WIN (Westlaw is Natural)



Researching on a Westlaw terminal, with a sign for "WIN: Westlaw Is Natural" that says "Try the only legal research service that lets you search in plain English!" Irvine, 1993.

Westlaw Is Natural (WIN) was the first commercially available search engine with probabilistic rank retrieval. Howard Turtle led the effort after completing his PhD at UMass. This was an innovation milestone for legal research because prior to that most search engines only supported Boolean term & connectors.

# 1995

Scientist Spotlight: Peter Jackson



Peter Jackson

Peter Jackson was one of the founders of research and development (R&D) at Thomson Reuters. Peter joined Lawyers Cooperative Publishing (LCP) and formed the natural language processing (NLP) group in 1995. In 1998, Peter assumed leadership of the legal R&D group. Peter became Chief Research Scientist & Vice-President, Technology in 2005 at Thomson.

# 1996

## History Assistant



History Assistant

History Assistant was a large scale natural language processing (NLP) system that analyzed case law documents, extracted parties, judges and built the appellate chain for a particular case. The system found history relationships between court decisions by using a combination of information retrieval and machine learning techniques to link each new case to related documents that it may impact.

# 2000s

# 2000

## PeopleCite & Profiler



Jury Verdict and Settlement Document with Hyper Links to Attorneys, Judges, and Expert Witnesses including Arthur Ablin

PeopleCite and Profiler extracted entities from American case law documents to create a knowledge base of judges, attorneys, and expert witnesses with links to all their cases and biographies. Machine learning enabled those systems to analyze millions of documents, a scale far beyond what could be done manually. [Info Today]

# 2001

## CaRE - Classification and Recommendation Engine



Headnotes are summaries of the issues in a case. Headnotes in West reporters are written by the editors.

Using an ensemble of machine learning algorithms, CaRE has been used widely across the company to classify legal, tax and finance documents to large taxonomies, e.g., CaRE is used to classify millions of headnotes to a KeyNumber taxonomy with more than 90,000 categories. CaRE later formed the basis of ResultsPlus (2003) - a very successful document recommendation system. It is still in use today (2019).

# 2003

## ResultsPlus



ResultsPlus

ResultsPlus was a very popular document recommendation solution in Westlaw. Based in part on CaRE, the system made contextually relevant recommendations of secondary law documents, Key Numbers, briefs and more alongside search results. The system incorporated: natural language generation of summaries for briefs; user behavior analysis to enable personalized recommendations; and dynamic ranking of selections based on data from real-time A/B testing.

# 2005

## Firm360



Firm360

Built on the work done for the Profiler project to link attorney and judge names, this system identified law firms and companies, and used semantic parsing and discourse analysis techniques to infer the relationships among judges, attorneys, law firms, their roles, and the companies they represent. The metadata was stored in a data warehouse which in turn fed the Firm360 reports.

# 2006

## Dexter

Destacados representantes del **Parlamento** [ORG] y la prensa rusos criticaron hoy el "belicism
ha definido como posible blanco de su lucha antiterrorista.

El presidente de la **Duma** [ORG] (cámara baja), **Guennadi Selezniov** [PER], calificó de "claramente ap

del Kremlin [ORG] para **Chechenia** [LOC], **Serguéi Yastrzhembski** [PER].

El asesor presidencial dijo que **Rusia** [LOC] puede lanzar un ataque preventivocontra los camp

Dexter

Dexter is a machine learning (ML)-based named entity extraction and resolution
(NER)system focusing on news and legal content. It is used in many products including
Reuters Insider (2011).

# 2007

## Medical Litigator



## Medical Litigator

[Westlaw Medical Litigator](#) provided legal researchers with immediate, "one-stop" access to information about medical terms, procedures and devices related to medical malpractice, personal injury, and device liability.  In addition, it provided an understanding of related medical issues, health care professionals and expert witnesses. It included natural language support and disambiguation tagging.

# 2008

## Concord



In the market intelligence domain, Concord and Dexter were used to extract entities and resolve such mentions to authorities to create the litigation history database behind West's Litigation Monitor.

Thomson Reuters provides one of the largest and most diverse set of Public Records in the United States. Concord enables searches where there could be thousands of "John Smith"s, connecting the correct records among hundreds of millions of records, and many more possible connections. It was, perhaps, the first statistics-based record linking and resolution solution of this scope in the public records domain.

# 2010s

# 2010

WestlawNext



WestlawNext

Building on all our previous experience, a wide array of AI technologies were leveraged to solve a wide set of challenges. It used machine learning (ML), clustering, classification, usage log analysis, citation network analysis, topic modeling, and natural language generation – the veritable "kitchen sink" of AI. The result was WestSearch. WestlawNext set a new standard for legal research solutions. AI enabled the system to go beyond traditional search.

# 2011

## Reuters Insider



Reuters Insider

Reuters Insider used CaRE classification and Dexter entity extraction to connect transcripts of live news shows to video; this enabled searching video-based news.

# 2011

## NewsPlus







Screenshot showing how NewsPlus can drive an entire news portal - leveraging recommendation, deduplication, clustering, trending entities, summarization, etc.

NewsPlus is a content recommendation platform used in Westlaw and Eikon. The recommendation algorithms incorporated information from multiple sources to retrieve, filter, and prioritize news given the context of a specific user and application. It analyzes, de-duplicates, and groups/clusters the content. Like its predecessor, ResultsPlus, it used a hybrid approach of content and collaborative filtering.

# 2013

Checkpoint - Broadside



02:36

Intuitive Search on Thomson Reuters Checkpoint

Checkpoint Broadside applied many of the technologies and approaches used in WestlawNext to power the new "Intuitive Search" capability in Checkpoint, our market-leading research solution for tax and accounting professionals.

# 2013

## Magnet



Magnet provided an indicator for boilerplate, normal, or abnormal language along 3 dimensions in two key parts of SEC filing documents

Magnet analyzed SEC filing for deviation in language that may merit further review. An analysts could then review and provide deeper insights into related plans, initiatives, prospects and challenges; in effect, expanding the news coverage of that company.

## 2015

### Reuters Tracer and Social Data Platform (SDP)



Separating Real News from Fake in 40 Milliseconds

A platform and tool created for Reuters journalists to monitor Twitter for breaking events. Tracer filters out social media noise and identifies potential breaking news events. It utilized natural language processing (NLP), content classification, clustering and machine learning. A special Tracer feed is provided to Eikon as a completely automated real-time news feed.

## 2018

### DPA - Data Privacy Advisor



How Thomson Reuters and Watson help answer data privacy questions

Data Privacy Advisor incorporates a next-generation question-answering feature built in partnership with the Thomson Reuters and IBM Watson.

# 2018

Adverse Media



Adverse Media

Adverse media capabilities enable our analysts to perform adverse media screening from tens of thousands of news sources. In addition to extracting risk signals, these capabilities also perform concordance from unstructured sources. This capability helps analysts in performing ongoing background checks that support Anti-Money Laundering regulations. In particular, this new capability will perform interactive person name disambiguation and identify text/documents that potentially contain evidence of financial crimes. This service was being done manually by analysts. The solution searches news articles and leverages NewsPlus tagging capabilities. This capability is used in World-Check One: Media Check.

# 2018

## AutoMuni - Automated Municipal Bond Pricing



AutoMuni

The accurate evaluation of approximately a million bonds daily is a big challenge. The muni valuation method is quite manual. Such an approach is not only time consuming and costly, but also only a small portion of bonds can be accurately evaluated due to the restriction of resources. The AutoMuni system helps scale the valuation process by using intelligent, machine learning, algorithms that can price the entire fixed income universe automatically and efficiently.

# 2018

## Inferno

  

Inferno

Inferno is a data ingestion and workflow tool to help analysts refresh content within the World-Check database. This helps to improve the accuracy and reliability of World-Check which is crucial in keeping the competitive advantage. It mines news feeds and then uses various techniques, including machine learning and natural language processing (NLP), to enhance the data ingestion workflow, increasing the speed and accuracy of identifying required updates to World-Check data.

# 2018

## Westlaw Edge: WestSearch Plus



00:42

WestSearch Plus on Westlaw Edge

WestSearch Plus answers customers' questions posed in natural language. Behind the
scenes, it mines the rich analytical material in our headnotes as the source for answers.
It uses editorial guidelines to divide Headnotes into frames/intents. Then it classifies
both answers and questions (mined from the query logs) to those intents. WestSearch
Plus uses search strategies based on questions and intents to assemble a headnote
candidate pool and uses natural language processing (NLP) & discourse features in
XGBoost model to classify/score answers.

## 2018

### Westlaw Edge: Litigation Analytics



01:18

Litigation Analytics on Westlaw Edge

Lawyers now have all the analytics from past cases at their fingertips and can shape their litigation strategy with Westlaw Edge's Litigation Analytics.

Many AI methods were used including deep learning. It extracts information from federal dockets, identifying names and relationships of all parties. It identifies case topics and adds all this information to a knowledge graph. The knowledge graph is continually updated. Customers use natural language to explore this knowledge graph. When returning results, the AI generates text narratives explaining the generated visualizations.

# 2018

Westlaw Edge: KeyCite Overruling Risk



KeyCite Overruling Risk on Westlaw Edge

KeyCite is our market leading case citator system. It is important to identify cases that are negatively impacted by an overruling decision, and to flag them as possibly impliedly overruled cases that need further careful examination. The AI-powered solution identifies those cases using machine learning algorithms.

The problem is formulated as a binary classification of candidate cases into those that are negatively impacted (and possibly impliedly overruled) and those that are not (and hence are still safe to be relied on in a legal investigation). Our classifier uses a variety of features, including metadata information about the cases, citation paragraphs in the overruling and affected cases, as well as headnotes in the overruled case.

# 2019

Deep Learning Center Launched in Boston



Deep Learning at Thomson Reuters

Thomson Reuters launched a deep learning center in the heart of Boston, Massachusetts, very appropriately addressed at 1 Thomson Place. This marked a growing commitment within the organization to expand capabilities across core technology domains. Deep learning methodologies can greatly add to the proficiency of related fields like natural language processing or image processing and analysis. The implications of this field are substantial across operational efficiencies as well as discovering new insights across key industry segments.

# 2019

## Checkpoint Edge

Checkpoint Edge introduced an entirely new feature called Concept Markers and made further enhancements to the Intuitive Search algorithms that assist and guide the research process. It helps users refine and/or elaborate on their queries to find answers. Natural language processing (NLP) and machine learning (ML) technologies were used to enable these features.

# 2019

## Westlaw Edge : Quick Check





02:01

Westlaw Edge Quick Check™ In the Making

Attorneys perform hours of legal research so that they can provide their clients with the best possible representation. They are under constant pressure to do their best work as efficiently as possible.

Quick Check is a Westlaw Edge feature that, given a legal document, finds additional supporting authority to research. This helps our customers complete their legal

research faster and have a higher degree of confidence in their work. It also enables them to do a thorough analysis on their opponent's work and in turn help them be more prepared for their clients.

# Today

## Today

### AI @ TR - We're Just Getting Started!

Today, Thomson Reuters is scaling innovation for its customers to new heights. How will AI transform our industries tomorrow? AI @ TR is working on that answer today!

Search

ABOUT THOMSON REUTERS

PRODUCTS & SERVICES

LEARN MORE

CONTACTS

**CONNECT WITH US**

## CERTIFICATE OF SERVICE

I, Stephanie E. O'Byrne, hereby certify that on May 12, 2021, true and correct copies of the within document were served on the following counsel of record at the addresses and in the manner indicated:

## VIA ELECTRONIC MAIL

Jack B. Blumenfeld
Michael J. Flynn
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@mnat.com
mflynn@mnat.com

Dale Cendali, P.C.
Joshua L. Simmons
Eric Loverro
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
dale.cendali@kirkland.com
joshua.simmons@kirkland.com
eric.loverro@kirkland.com

Daniel E. Laytin
Christa C. Cottrell
Cameron Ginder
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
daniel.laytin@kirkland.com
christa.cottrell@kirkland.com
cameron.ginder@kirkland.com

Megan L. McKeown
KIRKLAND & ELLIS LLP
609 Main Street
Houston, TX 77002
megan.mckeown@kirkland.com

_/s/ Stephanie E. O'Byrne_
Stephanie E. O'Byrne

7193230 / 50241

EXHIBIT 28

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION, | ) ) ) | |
| | ) | C.A. No. 20-613-LPS |
| Plaintiffs/Counterdefendants, | ) ) | **JURY TRIAL DEMANDED** |
| v. | ) ) | |
| ROSS INTELLIGENCE INC., | ) ) | |
| Defendants/Counterclaimant. | ) ) | |

**DEFENDANT / COUNTERCLAIMANT ROSS INTELLIGENCE, INC.'S
SECOND SET OF INTERROGATORIES (NO. 13)**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the Local Rules of this Court, Defendant / Counterclaimant ROSS Intelligence, Inc. ("ROSS"), by and through its undersigned counsel, hereby requests that Plaintiff/Counterdefendants Thomson Reuters Enterprise Centre GmbH ("Thomson Reuters") and West Publishing Corporation ("West"), answer the following Interrogatories, fully and separately, in writing and under oath, and deliver such responses within thirty (30) days after service of these Interrogatories to the offices of Potter Anderson Corroon, LLP, Hercules Plaza 1313 North Market Street, 6th Floor. P.O. Box 951, Wilmington, Delaware 19801.

**DEFINITIONS**

Insofar as any of the terms below are used herein, the following definitions shall apply:

1.      The term "THOMSON REUTERS" as used herein means Plaintiff / Counterdefendant Thomson Reuters Enterprise Centre GMBH, and its present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on its behalf.

2.      The term "WEST" as used herein means Plaintiff / Counterdefendant West Publishing Corporation and its present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on its behalf.

3.      The terms "YOU," "YOUR," and "PLAINTIFFS" are used herein to mean THOMSON REUTERS and WEST.

4.      "WESTLAW" means the product that YOU license as discussed in YOUR COMPLAINT.

5.      "WESTLAW CONTENT" has the same meaning as the term "Westlaw content" as used in the COMPLAINT ¶ 1.

6.      "WKNS" or "KEY NUMBER SYSTEM" means the Westlaw Key Number System as discussed in YOUR COMPLAINT.

7.      "HEADNOTES" means the West Headnotes as discussed in YOUR COMPLAINT.

8.      The terms "ROSS," "DEFENDANT," and "COUNTERCLAIMANT," as used herein means ROSS Intelligence, Inc., and its present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on its behalf.

9.      "COMPLAINT" means the Complaint filed by PLAINTIFFS in this litigation in the United Stated District Court for the District of Delaware on May 6, 2020 (D.I. 1).

10.     "ROSS INFRINGES" means the alleged claims of direct, indirect, and secondary infringement against ROSS discussed in YOUR COMPLAINT.

11.     The terms "DOCUMENT" or "DOCUMENTS" is used in the broadest sense permissible under the Federal Rules of Civil Procedure and shall include, without limitation, any any written, printed, typed, recorded, or graphic matter, however produced, reproduced, or stored, including the originals and all nonidentical copies, whether different from the originals by reason of any notations made on such copies or otherwise, in the actual or constructive possession, custody, or control of PLAINTIFFS, including without limitation contracts, letter agreements, records, correspondence, COMMUNICATIONS, electronically stored information, emails, tweets, blog or Internet forum posts or comments, text messages on portable devices, Blackberry Messenger messages, SMS messages, instant messenger messages (e.g. Skype, Slack, etc.), memoranda, handwritten notes, source code, object code, binaries and associated files and/or structures, source code comments, source repository logs, server logs, records or summaries of negotiations, records or summaries of interviews or conversations, audio or video recordings, copies of video games, all Internet-based media, photographs, corporate minutes, diaries, telephone logs, instant messaging logs, chat room logs, schedules, drawings, product storyboards, product mockups, statistical statements, work papers, disks, data cards, films, data processing files, charts, graphs, microfiche, microfilm, contracts, notices, reports, recitals, statements, worksheets, abstracts, resumes, summaries, jottings, market data, books, journals, ledgers, audits, maps, diagrams, research documents, newspapers, appointment books, desk calendars, project management charts (e.g., Gantt charts), task management records (e.g., to-do lists), expense reports, computer printout and other computer readable or electronic records, and all drafts or modifications thereof, and all non-identical copies of any such items. Any such DOCUMENT with any sheet or part thereof bearing any marks, such as initials, stamped indices, comments or notations, or any character or characters, that are not part of the signed text or

photographic reproduction thereof is to be considered as a separate DOCUMENT. Where there is any question about whether a tangible item otherwise described in these requests falls within the definition of "DOCUMENT(S)," such tangible item shall be produced.

12.     The terms "COMMUNICATION" or "COMMUNICATIONS" mean any manner or method in which information is communicated from one human being to another, including, but not limited to, any means of transmission, sending, and/or receipt of information of any kind, such as speech, writing, language, nonverbal signals, computer electronics of any kind, magnetic tape, video tape, photographs, graphs, symbols, magnetic disks, sound, radio and/or video signal, telephone, teletype, telecommunication, telegram, microfilm, microfiche, photographic film of any type, and/or media of any kind.

13.     "DESCRIBE" means giving a detailed written description of the subject matter at issue in the Interrogatory, Identifying all witnesses with knowledge of that subject matter, and Identifying all Documents that are pertinent to that subject matter.

14.     "AND" and "OR" and "BETWEEN" and "AMONG" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of a request all information that otherwise might be construed to be outside of its scope.

15.     "ANY" shall mean any or all and the term "ALL" shall mean any or all.

16.     "IDENTIFY" or "STATE ALL FACTS" means to state the date and place of the communication, occurrence, event, fact, or thing; the Person(s) participating in the communication, occurrence, event, fact, or thing; and the substance of the communication, occurrence, event, fact or thing.

17.     "INCLUDING" means not limited to.

18.     The terms "PERSON" and "PERSONS" means any individual, corporation, partnership, association, organization, or other entity of any type or nature.

19.     The terms "RELATE TO," "RELATED TO," AND "RELATING TO" mean constituting, pertaining to, in connection with, reflecting, respecting, regarding, concerning, referring to, based upon, stating, showing, evidencing, establishing, supporting, negating, contradicting, describing, recording, noting, embodying, memorializing, containing, mentioning, studying, analyzing, discussing, specifying, identifying or in any manner logically, factually, indirectly or directly, or in any other way connecting to the matter addressed, in whole or in part.

20.     The singular form of a noun or pronoun shall be considered to include within its meaning the plural form of the noun or pronoun, and vice versa; and the past tense shall include the present tense where the clear meaning is not distorted. The term "or" shall mean "and" and vice-versa, as necessary to bring within the scope of the following requests all information or DOCUMENTS that would be excluded absent this definition.

21.     The term "LEGALEASE" as used herein means third-party LegalEase Solutions, LLC, and its present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on its behalf.

## INSTRUCTIONS

1.     Responses to these Interrogatories shall comply with all procedures, definitions and provisions provided by the United States District Court for the District of Delaware (including the Local Rules), the Federal Rules of Civil Procedure, and any other applicable standards, orders, or instructions as issued by the Court.

2.      All spelling, syntax, grammar, abbreviations, idioms and proper nouns shall be construed and interpreted to give proper meaning and consistency to their context.  Wherever appropriate, verb tenses shall be interpreted to include past, present and future tenses.  References to a gender shall be interpreted to include the masculine, feminine and neuter.  The use of defined terms in these Interrogatories apply whether or not they are capitalized.  The singular includes the plural and vice versa.  The words "and" and "or" shall be construed as either disjunctively or conjunctively as necessary to bring within the scope of the Interrogatory all responses that might otherwise be construed to be outside of its scope.  The words "all," "any," and "each" shall be construed as encompassing any and all.

3.      Each Interrogatory shall be answered fully, in writing, and under oath, unless it is objected to in good faith, in which event the reasons for any objection shall be stated in detail.  If an objection pertains to only a portion of an Interrogatory, or a word, phrase, or clause contained within it, state the objection in detail to that portion only and respond to the remainder of the Interrogatory, using your best effort to do so.

4.      All grounds for an objection to an Interrogatory shall be stated with specificity as to each individual Interrogatory or portion thereof, as applicable.

5.      The answers to the Interrogatories are to be signed and verified by the person making them, and the objections are to be signed by the attorney making them.

6.      If PLAINTIFFS claim that any information or document requested is withheld on the basis of any claim of privilege or protection that YOU are not prepared to waive, identify all such and provide the following information in a privilege log that conforms with the requirements of the Federal Rules of Civil Procedure and any and all applicable Local Rules, including:

a.      the basis on which the privilege is claimed;

b.      information sufficient to identify the privilege or protection YOU claim permits YOU to withhold the information or document;

c.      the date of the information or document;

d.      the name and position of each person possessing the information or document; communicating the information or document; receiving such information or document or intended to receive such information or document; and

e.      any other facts on which YOU base YOUR claim of privilege or protection.

7.      In answering the Interrogatories, furnish all available information, including information in the possession, custody or control of any of the PLAINTIFFS' attorneys, directors, officers, agents, employees, representatives, associates, investigators, divisions, affiliates, partnerships, parents or subsidiaries, and Persons who have the best knowledge, not merely information known to the FOUNDATION based on the PLAINTIFFS' own knowledge. If PLAINTIFFS cannot fully respond to the entirety of each of the following Interrogatories after exercising due diligence to secure the information requested thereby, so state, and specify the portion of each Interrogatory that cannot be responded to fully and completely.  In the latter event, state what efforts were made to obtain the requested information and the facts relied upon that support the contention that the Interrogatory cannot be answered fully and completely, and state what knowledge, information or belief PLAINTIFFS has concerning the unanswered portion of any such Interrogatory.

8.      Where the PLAINTIFFS cannot answer an Interrogatory that seeks identification of persons knowledgeable about a particular topic because the PLAINTIFFS is unaware of the

relative knowledge of persons with knowledge, the PLAINTIFFS should identify those it believes have substantive knowledge of the topic and the knowledge the PLAINTIFFS believe each has.

9.      If the PLAINTIFFS' response to a particular Interrogatory is a statement that the FOUNDATION lacks the ability to comply with that Interrogatory, the FOUNDATION must specify whether the inability to comply is because the particular item or category of information never existed, has been destroyed, has been lost, misplaced, or stolen, or has never been, or is no longer in the PLAINTIFFS' possession, custody or control, in which case the name and address of any person or entity known or believed by the PLAINTIFFS to have possession, custody or control of that information or category of information must be identified.

10.     These Interrogatories are continuing.  Therefore, if any information sought herein is not learned of or obtained until after YOU responded, or if YOUR answers for any reason should later become incorrect, pursuant to Fed. R. Civ. P. 26(e), YOU have a continuing duty to supplement or change answers and responses previously submitted.

## **INTERROGATORIES**

## **INTERROGATORY NO. 13.:**

State all facts RELATING TO YOUR contention that ROSS tortuously interfered with the contractual relationship between WEST and LEGALEASE as alleged in Paragraphs 49-53 of the COMPLAINT.

OF COUNSEL:

Gabriel M. Ramsey
Warrington Parker
Kayvan M. Ghaffari
Jacob Canter
CROWELL & MORING LLP
3 Embarcadero Center, 26th Floor
San Francisco, CA 94111
Tel:  (415) 986-2800

Crinesha B. Berry
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC  20004
Tel:  (202) 624-2500

Dated:  January 7, 2022
7547963 / 50241

POTTER ANDERSON & CORROON LLP

By:  */s/ David E. Moore*
    David E. Moore (#3983)
    Bindu A. Palapura (#5370)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, DE  19801
    Tel:  (302) 984-6000
    dmoore@potteranderson.com
    bpalapura@potteranderson.com

*Attorneys for Defendant/Counterclaimant
ROSS Intelligence, Inc.*

9

## CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on January 7, 2022, true and correct copies of the within document were served on the following counsel of record at the addresses and in the manner indicated:

## VIA ELECTRONIC MAIL

Jack B. Blumenfeld
Michael J. Flynn
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@mnat.com
mflynn@mnat.com

Dale Cendali, P.C.
Joshua L. Simmons
Eric Loverro
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
dale.cendali@kirkland.com
joshua.simmons@kirkland.com
eric.loverro@kirkland.com

Daniel E. Laytin
Christa C. Cottrell
Cameron Ginder
Alyssa C. Kalisky
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL  60654
daniel.laytin@kirkland.com
christa.cottrell@kirkland.com
cameron.ginder@kirkland.com
alyssa.kalisky@kirkland.com

Megan L. McKeown
KIRKLAND & ELLIS LLP
609 Main Street
Houston, TX 77002
megan.mckeown@kirkland.com

/s/ David E. Moore
David E. Moore

7193230 / 50241

# EXHIBIT 29

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

# EXHIBIT 30

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION, | ) ) ) ) ) |
| Plaintiffs and Counterdefendants, | ) ) ) |
| v. | ) ) |
| ROSS INTELLIGENCE INC., | ) ) |
| Defendant and Counterclaimant. | ) ) ) |

C.A. No. 20-613 (LPS)

**PLAINTIFFS AND COUNTERDEFENDANTS THOMSON REUTERS
ENTERPRISE CENTRE GMBH AND WEST PUBLISHING CORPORATION'S
SECOND SUPPLEMENTAL RESPONSES AND OBJECTIONS TO DEFENDANT AND
COUNTERCLAIMANT ROSS INTELLIGENCE INC.'S INTERROGATORY NO. 21**

Pursuant to Federal Rules of Civil Procedure 26 and 33 and the Local Rules of the United

States District Court for the District of Delaware (the "Local Rules" and each a "Local Rule"),

Plaintiffs and Counterdefendants Thomson Reuters Enterprise Centre GmbH ("Thomson

Reuters") and West Publishing Corporation ("West") (collectively "Plaintiffs"), hereby

supplement their responses to Defendant and Counterclaimant ROSS Intelligence Inc.'s

("Defendant") Third Set of Interrogatories, served on January 25, 2022 (the "Third Set of

Interrogatories" and each individually, an "Interrogatory") in the above-captioned action

("Action") as follows:

## GENERAL OBJECTIONS

1.      Plaintiffs object to the Third Set of Interrogatories to the extent that it purports to impose obligations beyond those set forth in the Federal Rules of Civil Procedure, the Local Rules, or other applicable law.

2.      Plaintiffs object to the Third Set of Interrogatories to the extent that it seeks proprietary or confidential business information, trade secrets or other sensitive information.  To the extent that the response to any Interrogatory requires the disclosure of any non-privileged proprietary or confidential information, trade secrets or other sensitive information, Plaintiffs will provide such information subject to the Protective Order so ordered by the Court in this case.  D.I. 48.

3.      Plaintiffs object to the Third Set of Interrogatories to the extent that it seeks information that is subject to the attorney-client privilege, the work product privilege, or any other applicable privilege or protection under federal or state law.  Plaintiffs do not waive, intend to preserve, and are preserving any such privilege with respect to any information protected by such privilege.

4.      The responses provided to the Third Set of Interrogatories are based on Plaintiffs' interpretation of the language used in the Third Set of Interrogatories.  Plaintiffs reserve their right to amend or to supplement their responses and objections in the event that Defendant asserts an interpretation that differs from Plaintiffs' interpretation.

5.      Plaintiffs object to the Third Set of Interrogatories to the extent that it seeks information that is outside of Plaintiffs' possession, custody, or control, including in Instruction No. 7.  For the purpose of responding to the Third Set of Interrogatories, Plaintiffs will provide responses based on the information that is reasonably within their possession, custody, or control.

6.      The responses below shall not be interpreted to concede the truth of any factual assertion or implication contained in the Third Set of Interrogatories.  Plaintiffs' responses to the Third Set of Interrogatories in no way constitute admissions or acknowledgements by Plaintiffs as to the relevance, materiality, or admissibility of any of the information contained therein, and Plaintiffs expressly reserve their rights to object as such.

7.      Plaintiffs reserve the right to modify or supplement their objections and responses to the Third Set of Interrogatories to conform to the results of continuing discovery.  These responses also are subject to correction for omissions or errors.

8.      In providing responses to the Third Set of Interrogatories, Plaintiffs do not in any way waive or intend to waive, but rather are preserving and intend to preserve:

(i)      All objections as to competency, authenticity, relevancy, materiality and admissibility;

(ii)      All rights to object on any grounds to the use in any subsequent proceedings of any of the responses or information contained herein, including but not limited to the right to object at the trial of this or any other action;

(iii)      All objections as to vagueness and ambiguity; and

(iv)      All rights to object on any grounds to any further interrogatories.

9.      Plaintiffs object to the Third Set of Interrogatories to the extent that any Interrogatory's subparts, including those arising from Defendant's "Definitions" and "Instructions," actually constitute separate interrogatories, thereby exceeding the number of interrogatories permitted under Federal Rule of Civil Procedure 33(a)(1).

10.     Plaintiffs object to the Third Set of Interrogatories as premature to the extent that it asks or requires Plaintiffs to provide information that is the subject of expert disclosures under Federal Rule of Civil Procedure 26(a)(2).

11.     Plaintiffs object to the Third Set of Interrogatories to the extent that it is premature in that it asks or requires Plaintiffs to analyze or formulate contentions on matters for which Plaintiffs' investigation and discovery have not yet been completed.  The responses provided below are based on the investigation conducted to date and are without prejudice to any later supplementation, amendment, or modification.

12.     Plaintiffs objects to the Third Set of Interrogatories as overly broad to the extent that it defines the term "THOMSON REUTERS" to include "its present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on its behalf."  For the purpose of responding to the Third Set of Interrogatories, Plaintiffs will construe this term to mean solely Thomson Reuters Enterprise Centre GmbH, and not any other person or entity.

13.     Plaintiffs objects to the Third Set of Interrogatories as overly broad to the extent that it defines the term "WEST" to include "its present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on its behalf."  For the purpose of responding to the Third Set of Interrogatories, Plaintiffs will construe this term to mean solely West Publishing Corporation, and not any other person or entity.

14.     Plaintiffs objects to the Third Set of Interrogatories as overly broad to the extent that it defines the terms "YOU," "YOUR," and "PLAINTIFFS" to incorporate the definitions of

the terms "THOMSON REUTERS" and "WEST" and thus are defined to include Thomson Reuters Enterprise Centre GmbH's and West Publishing Corporation's "present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on [their] behalf."  For the purpose of responding to the Third Set of Interrogatories, Plaintiffs will construe the terms "YOU," "YOUR," and "PLAINTIFFS" to mean solely Thomson Reuters Enterprise Centre GmbH and West Publishing Corporation, and not any other person or entity.

15.    Plaintiffs objects to the Third Set of Interrogatories as overly broad to the extent that it defines the terms "ROSS," "DEFENDANT," and "COUNTERCLAIMANT" to include "its present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on its behalf."  For the purpose of responding to the Third Set of Interrogatories, Plaintiffs will construe these terms to mean solely ROSS Intelligence, Inc., and not any other person or entity.

16.    Plaintiffs object to the Third Set of Interrogatories as vague and ambiguous to the extent that it defines the term "DESCRIBE" using the capitalized term "Identifying."  It is unclear whether Defendant intended to incorporate the definition of the defined term "IDENTIFY," in which case the definition of the term "DESCRIBE" is nonsensical, or to give that word a separate definition.  For the purpose of responding to the Third Set of Interrogatories, Plaintiffs will construe the term "Identifying" as used in the definition of the term "DESCRIBE" with its ordinary meaning.

5

17.     Plaintiffs object to Instruction No. 6 to the extent it purports to impose obligations with regard to the production of privilege logs that differ from those required by the Federal Rules and Local Rules.  Plaintiffs will log information pursuant to the Protective Order.

18.     Plaintiffs object to Instruction Nos. 7 and 9 as vague and ambiguous to the extent that they use the undefined term "FOUNDATION."  For the purpose of responding to the Third Set of Interrogatories, Plaintiffs will construe that term to mean Thomson Reuters Enterprise Centre GmbH and West Publishing Corporation, and not any other person, entity, or foundation.

19.     Plaintiffs object to the Third Set of Interrogatories as overly broad and unduly burdensome to the extent that its Interrogatories do not specify timeframes and are thus unlimited as to time.

20.     Plaintiffs incorporate the foregoing General Objections into each and every one of its responses to the Third Set of Interrogatories as set forth below.

## RESPONSES AND OBJECTIONS TO INTERROGATORIES

**INTERROGATORY NO. 14:**

State the number of HEADNOTES contained in WESTLAW.

**RESPONSE TO INTERROGATORY NO. 14:**

Plaintiffs incorporate by reference the above-stated General Objections as if fully set forth herein.  Plaintiffs specifically object to this Interrogatory as vague and ambiguous to the extent the term "contained in" is unclear and undefined.  Plaintiffs object to this Interrogatory to the extent that it seeks information that is neither relevant to any claim or defense of any party in this Litigation nor is it proportional to the needs of the case, including because it seeks information about headnotes and portions of Westlaw that are not at issue.  Plaintiffs object to this Interrogatory to the extent that it seeks information that is or will be in the possession of ROSS by referring to documents, taking depositions, or any other means of obtaining discovery in this Litigation that is more convenient, efficient, practical, and less burdensome.  Plaintiffs object to this Interrogatory to the extent that it is duplicative of other Interrogatories, including Nos. 1, 2, 9, 15, 16, and 17.  Plaintiffs object to this Interrogatory to the extent that it calls for confidential information, trade secrets, or proprietary business information.  Plaintiffs will provide such information subject to the Protective Order so ordered by the Court in this case.  D.I. 48.

**\* BEGIN HIGHLY CONFIDENTIAL — ATTORNEYS' EYES ONLY DESIGNATION \***

7

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████

██████████████████████████████████████████

█████████████████████████████████

**INTERROGATORY NO. 15:**

     State the number of HEADNOTES contained in WESTLAW that YOU created, when each HEADNOTES was created.

**RESPONSE TO INTERROGATORY NO. 15:**

████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

**INTERROGATORY NO. 16:**

For each HEADNOTES [sic] identified in Interrogatory No. 15, state when each HEADNOTE was created and by whom.

**RESPONSE TO INTERROGATORY NO. 16:**

████████████████████████████████████████████████████

██████████████████████████████████████

**INTERROGATORY NO. 17:**

State the number of HEADNOTES contained in WESTLAW that YOU registered for copyright protection.

**RESPONSE TO INTERROGATORY NO. 17:**

████████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████

██████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████

██████████████████████████████████████

██████████████████████████████████

**INTERROGATORY NO. 18:**

Identify the specific U.S. Copyright Registration Numbers for each HEADNOTE identified in Interrogatory No. 17.

**RESPONSE TO INTERROGATORY NO. 18:**

██████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████

**INTERROGATORY NO. 19:**

Identify each and every KEY NUMBER in the WKNS, including when each and every KEY NUMBER was created and by whom.

**RESPONSE TO INTERROGATORY NO. 19:**

████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████

████████████████████████████████████████████

████████████████████████████████████

**INTERROGATORY NO. 20:**

For each customer who paid any amount to YOU for access to WESTLAW CONTENT at any time, IDENTIFY the total amount that customer paid YOU over all time, the amount that customer paid you on an annual basis, and the products and/or services for which that customer paid those amounts, and state whether YOU contend that customer also became a customer of ROSS at any time.

**RESPONSE TO INTERROGATORY NO. 20:**

████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

14

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████

**INTERROGATORY NO. 21:**

Describe in detail the complete legal and factual bases for all damages to which PLAINTIFFS contend they are entitled. To be complete, your answer must describe each category of damages to which PLAINTIFFS contends they are entitled (including, for example, reasonable royalty, lost profits, price erosion, convoyed or collateral sales, or any other form of damages); all theories of recovery under each category and all factual support for each such theory; and your computation of damages under each category.

**RESPONSE TO INTERROGATORY NO. 21:**

█████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

16



**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 21 (APRIL 21, 2022)**

*See* ROSS-009494331, ROSS-010300426, ROSS-009668639, ROSS-010318459, ROSS-009721064, ROSS-010364506; ROSS-003278267, ROSS-003278045, ROSS-010221960, ROSS-010221959, ROSS-010323324, ROSS-010323272, ROSS-009725908, ROSS-009725864, ROSS-010323194, ROSS-010323018, ROSS-009725677, ROSS-009725675, ROSS-009725612, ROSS-009725605, ROSS-010322928, ROSS-010322920, ROSS-010322919, ROSS-009725538, ROSS-009725534, ROSS-009725472, ROSS-010322787, ROSS-009725466, ROSS-009725036, ROSS-010322631, ROSS-010322551, ROSS-009724983, ROSS-010322513, ROSS-

010322423, ROSS-010322390, ROSS-010322226, ROSS-009724653, ROSS-009724635, ROSS-010321970, ROSS-010321701, ROSS-009724328, ROSS-010321557, ROSS-010321554, ROSS-010321552, ROSS-010321551, ROSS-009724273, ROSS-009724002, ROSS-009724001, ROSS-010321322, ROSS-010321321, ROSS-010321010, ROSS-009723513, ROSS-010320799, ROSS-010320798, ROSS-010320776, ROSS-010320775, ROSS-010320773, ROSS-009723321, ROSS-010320665, ROSS-009723190, ROSS-009723181, ROSS-010320544, ROSS-009723167, ROSS-010320363, ROSS-009722867, ROSS-010320219, ROSS-010320092, ROSS-009722810, ROSS-010320024, ROSS-009722781, ROSS-009722699, ROSS-010320005, ROSS-010319997, ROSS-009722606, ROSS-010319914, ROSS-009722349, ROSS-010319771, ROSS-010319595, ROSS-009722081, ROSS-010319520, ROSS-010319517, ROSS-009722034, ROSS-009722028, ROSS-009721539, ROSS-009721525, ROSS-009721522, ROSS-009721521, ROSS-010318686, ROSS-010318684, ROSS-009721139, ROSS-009721138, ROSS-009721062, ROSS-010318448, ROSS-009720977, ROSS-010318437, ROSS-010318435, ROSS-010318431, ROSS-009720945, ROSS-010316866, ROSS-010316865, ROSS-010306690, ROSS-010306683, ROSS-009705710, ROSS-009705518, ROSS-010300433, ROSS-009698876, ROSS-010300416, ROSS-010300415, ROSS-010300414, ROSS-010292067, ROSS-010292064, ROSS-010291962, ROSS-010291961, ROSS-009690394, ROSS-009690393, ROSS-010291541, ROSS-009688583, ROSS-010290089, ROSS-009688516, ROSS-010279751, ROSS-009677267, ROSS-010279547, ROSS-009676660, ROSS-009676260, ROSS-009676258, ROSS-010278634, ROSS-009676233, ROSS-009676232, ROSS-009675875, ROSS-009668796, ROSS-009668688, ROSS-010271702, ROSS-010271701, ROSS-009668640, ROSS-010271696, ROSS-009668638, ROSS-010271649, ROSS-010270844, ROSS-010270585, ROSS-009667620, ROSS-009667571, ROSS-009666105, ROSS-010268840, ROSS-009664862, ROSS-010268031, ROSS-010265185, ROSS-009661179, ROSS-010264450, ROSS-

009660815, ROSS-010264083, ROSS-009660296, ROSS-009659609, ROSS-009659437, ROSS-009659301, ROSS-009659108, ROSS-010262295, ROSS-010262269, and ROSS-009503144.



███████████████████████████████████████████████

██████████████████████████

█████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████

**SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 21 (JUNE 9, 2022)**

█████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████   ██████████████████████

████████████████████████████████████   ████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████

**<u>*END OF HIGHLY CONFIDENTIAL — ATTORNEYS' EYES ONLY DESIGNATION*</u>**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

_____

OF COUNSEL:

Dale M. Cendali
Joshua L. Simmons
Eric A. Loverro
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
(212) 446-4800

Miranda D. Means
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
(617) 385-7500

Daniel E. Laytin
Christa C. Cottrell
Cameron Ginder
Alyssa C. Kalisky
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL  60654
(312) 862-2000

June 9, 2022

Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com

*Attorneys for Plaintiffs and Counterdefendants*
*Thomson Reuters Enterprise Centre GmbH and*
*West Publishing Corporation*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 9, 2022, copies of the foregoing were caused to be served upon

the following in the manner indicated:

David E. Moore, Esquire                                          *VIA ELECTRONIC MAIL*
Bindu Palapura, Esquire
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE  19801
*Attorneys for Defendant and Counterclaimant*

Mark A. Klapow, Esquire                                         *VIA ELECTRONIC MAIL*
Lisa Kimmel, Esquire
Crinesha B. Berry, Esquire
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, DC  20004
*Attorneys for Defendant and Counterclaimant*

Gabriel M. Ramsey, Esquire                                     *VIA ELECTRONIC MAIL*
Jacob Canter, Esquire
Warrington Parker, Esquire
CROWELL & MORING LLP
3 Embarcadero Center, 26th Floor
San Francisco, CA  94111
*Attorneys for Defendant and Counterclaimant*


                                        */s/ Michael J. Flynn*
                                        _____
                                        Michael J. Flynn (#5333)