IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

THOMSON REUTERS ENTERPRISE )
CENTRE GMBH and WEST PUBLISHING )
CORPORATION, )
)
)
Plaintiffs and ) C.A. No. 20-613 (SB)
Counterdefendants, )
) REDACTED - PUBLIC VERSION
v. )
)
ROSS INTELLIGENCE INC., )
)
Defendant and )
Counterclaimant. )

**PLAINTIFFS' OPENING BRIEF IN SUPPORT OF THEIR
MOTION FOR PARTIAL SUMMARY JUDGMENT (NO. 1)
<u>ON COPYRIGHT INFRINGEMENT</u>**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
OF COUNSEL:                              Wilmington, DE  19899
(302) 658-9200
Dale M. Cendali                          jblumenfeld@morrisnichols.com
Joshua L. Simmons                        mflynn@morrisnichols.com
Eric A. Loverro
KIRKLAND & ELLIS LLP
601 Lexington Avenue                     *Attorneys for Plaintiffs Thomson Reuters*
New York, NY  10022                      *Enterprise Center GmbH and West Publishing*
(212) 446-4800                           *Corporation*

Miranda D. Means
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
(617) 385-7500

December 22, 2022

## **TABLE OF CONTENTS**

SUMMARY OF THE ARGUMENT ....................................................................... 1

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS........................... 2

STATEMENT OF FACTS .................................................................................. 3

     A.    Plaintiffs and the Westlaw Content.................................................... 3

     B.    ROSS and Its Attempts to Access Westlaw........................................ 4

     C.    ROSS Hires LegalEase to Use Westlaw to Create ROSS Training Data ................. 6

     D.    LegalEase's and Morae Global's Copying of the Westlaw Content ........................ 7

     E.    ROSS's Copying of the Westlaw Content .............................................. 9

ARGUMENT .............................................................................................. 10

I.    ROSS IS DIRECTLY LIABLE FOR COPYRIGHT INFRINGEMENT ........................... 10

     A.    Plaintiff Owns a Valid Copyright Covering the Westlaw Content........................ 10

     B.    ROSS Copied the Undisputed Headnotes in the Bulk Memos. ............................ 11

II.    ROSS IS INDIRECTLY LIABLE FOR LEGALEASE'S INFRINGEMENT ................... 15

     A.    LegalEase Committed Direct Infringement. ........................................... 15

     B.    ROSS is Contributorily Liable for LegalEase's Direct Infringement..................... 16

     C.    ROSS is Vicariously Liable for LegalEase's Direct Infringement ........................ 18

III.    CONCLUSION....................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

**Page(s)**

*Arista Recs., Inc. v. Flea World, Inc.*,
    No. 03 Civ. 2670, 2006 WL 842883 (D.N.J. 2006)................................................17

*Assn. of Am. Med. Colls. v. Mikaelian*,
    No. 83 Civ. 2745, 1986 WL 332 (E.D. Pa. Mar. 18, 1986)..............................14, 15

*Bitmanagement Software GmBH v. United States*,
    989 F.3d 938 (Fed. Cir. 2021)................................................................................16

*Broad. Music, Inc. v. Moor-Law, Inc.*,
    484 F. Supp. 357 (D. Del. 1980).............................................................................11

*CCC Info. Servs., Inc. v. Maclean Hunter Mkt. Reps., Inc.*,
    44 F.3d 61 (2d Cir. 1994)......................................................................................14

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)...............................................................................................10

*ConsultNet Comput., Inc. v. Moore*,
    No. 04 Civ. 3485, 2007 WL 2702446 (E.D. Pa. Sept. 12, 2007) ...........................13

*Dam Things from Den. v. Russ Berrie & Co.*,
    290 F.3d 548 (3d Cir. 2002)..................................................................11, 13, 16

*Eckes v. Card Prices Update*,
    736 F.2d 859 (2d Cir. 1984)..................................................................................14

*Educ. Testing Servs. v. Katzman*,
    793 F.2d 533 (3d Cir. 1986)..................................................................................15

*Ellison v. Robertson*,
    357 F.3d 1072 (9th Cir. 2004) ...............................................................................20

*Feist Publ'ns v. Rural Tel. Serv. Co.*,
    499 U.S. 340 (1991)........................................................................................10, 14

*FMC Corp. v. Control Sol., Inc.*,
    369 F. Supp. 2d 539 (E.D. Pa. 2005) .....................................................................14

*Fonovisa, Inc. v. Cherry Auction, Inc.*,
    76 F.3d 259 (9th Cir. 1996) ..................................................................................18

*Ford Motor Co. v. Summit Motor Prods., Inc.*,
    930 F.2d 277 (3d Cir. 1991) ................................................................... 11

*Gershwin Publ'g Corp. v. Colom. Artists Mgmt., Inc.*,
    443 F.2d 1159 (2d Cir. 1971) ................................................... 16, 17, 18

*Jacobsen v. Katzer*,
    535 F.3d 1373 (Fed. Cir. 2008) ............................................................ 15

*Leonard v. Stemtech Int'l Inc*,
    834 F.3d 376 (3d Cir. 2016) ......................................................... *passim*

*MAI Sys. Corp. v. Peak Comput., Inc.*,
    991 F.2d 511 (9th Cir. 1993) ................................................................ 12

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) .............................................................................. 10

*Metro–Goldwyn–Mayer Studios Inc. v. Grokster, Ltd.*,
    545 U.S. 913 (2005) .............................................................................. 15

*Perfect 10, Inc. v. Amazon.com, Inc.*,
    508 F.3d 1146 (9th Cir. 2007) ........................................................ 16, 18

*Range Road Music, Inc. v. East Coast Foods, Inc.*,
    668 F. 3d 1148 (9th Cir. 2012) ............................................................. 10

*Religious Tech. Ctr. v. Netcom On–Line Comm. Servs., Inc.*,
    907 F. Supp. 1361 (N.D. Cal. 1995) ..................................................... 18

*Tanksley v. Daniels*,
    259 F. Supp. 3d 271 (E.D. Pa. 2017) ................................................... 17

*TD Bank N.A. v. Hill*,
    928 F.3d 259 (3d Cir. 2019) ................................................................. 10

*TD Bank, N.A. v. Hill*,
    No. 12 Civ. 7188, 2015 WL 4523570 (D.N.J. Jul. 27, 2015) .......... 15, 16

*Ticketmaster L.L.C. v. RMG Techs., Inc.*,
    507 F. Supp. 2d 1096 (C.D. Cal. 2007) ................................................ 16

*UMG Recordings, Inc. v. RCN Telecom Servs., LLC*,
    No. 19 Civ. 17272, 2020 WL 5204067 (D.N.J. Aug. 31, 2020) ............ 17

*Unicolors, Inc. v. Urb. Outfitters, Inc.*,
    853 F.3d 980 (9th Cir. 2017) ................................................................ 10

*West Publ'g Co. v. Mead Data Ctr., Inc.*,
  799 F.2d 1219 (8th Cir. 1986) ..............................................................................10, 14

**Statutes**

17 U.S.C. § 410(c) ..............................................................................................................11

**Rules**

Fed. R. Civ. P. 56(a) ..........................................................................................................10

Plaintiffs Thomson Reuters Enterprise Centre GmbH ("Thomson Reuters") and West Publishing Corp. ("West") (collectively "Plaintiffs") move for partial summary judgment on their copyright infringement claim against Defendant ROSS Intelligence Inc. ("ROSS").

## SUMMARY OF THE ARGUMENT

ROSS's conduct constitutes quintessential copyright infringement. To develop its artificial intelligence ("AI") driven legal research platform, the ROSS Platform, ROSS initially purchased a large collection of judicial opinions. But having those judicial opinions was not enough. To actually train the AI that would be the cornerstone of the ROSS Platform, ROSS needed *selected*, lucid syntheses of legal points, topically arranged and *connected* to relevant portions of judicial opinions. Creating such data from scratch was expensive, so ROSS decided to copy it from Plaintiffs' Westlaw legal research platform ("Westlaw"). After Plaintiffs expressly refused to license Westlaw to ROSS, it hired a third party, LegalEase, to copy the Westlaw content ROSS wanted. Under ROSS's supervision and control, LegalEase copied troves of Plaintiffs' original content, including the proprietary West Key Number System (the "WKNS"), case headnotes (the "West Headnotes"), original synopses, and other editorial enhancements (together, the "Westlaw Content") to create 25,000 training memoranda (the "Bulk Memos"). ROSS then copied the Westlaw Content multiple times to train its AI. ROSS has conceded some of this copying, making summary judgment appropriate to streamline this case for the jury.

*First*, ROSS is *directly liable* for copyright infringement as a matter of law, as Plaintiff has established the key elements of a copyright claim: (1) ownership of a valid copyright and (2) actual copying and substantial similarity. To begin, Thomson Reuters owns registrations covering the Westlaw Content that are entitled to a presumption of validity. Next, it is admitted that Westlaw Content was copied to create the Bulk Memos, which ROSS further copied to train its AI. Indeed,

1

.[1]

*Second*, ROSS is ***indirectly liable*** for LegalEase's direct infringement of the Westlaw Content.  LegalEase breached conditions to its Westlaw license and, thus, when it used Westlaw for ROSS, it did so without a license.  As a result, each time LegalEase displayed and downloaded Plaintiffs' copyrighted Westlaw Content, such as editorial enhancements, it directly infringed Plaintiffs' copyrights.  LegalEase created hundreds of unauthorized copies of the Westlaw Content, displaying and downloading hundreds of editorially enhanced judicial opinions.  ROSS is contributorily liable for LegalEase's infringement because it knew or should have known that LegalEase was copying the Westlaw Content and materially contributed to it.  And ROSS is vicariously liable for LegalEase's infringement because it financially benefited from the copying, and it had the right and ability to supervise and control its agent, LegalEase.

<u>**STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS**</u>

Plaintiffs commenced this lawsuit on May 6, 2020, asserting copyright infringement and tortious interference with contract.  D.I. 1 (Compl.).  Expert discovery closed on November 11, 2022 and discovery is now complete.

---

[1] Plaintiffs contend that all 25,000 of the Bulk Memos are infringing, including because the selection and arrangement of the content in them, including the selection of the West Headnotes, is original to Plaintiffs.  This motion, however, is focused on a subset for which there are no material facts in dispute.  For the sake of simplicity, Plaintiffs' Motion is limited to West Headnotes in cases created after 1927, as those headnotes were obviously written within the term. Plaintiffs do not concede that any headnotes are in the public domain.

## STATEMENT OF FACTS

### A.     Plaintiffs and the Westlaw Content

Plaintiffs are well-known industry leaders in online legal research.  Declaration of Laurie Oliver, dated December 21, 2022 ("Oliver Decl.") ¶ 3.  As explained by Laurie Oliver, Thomson Reuters' U.S. Cases Editorial Manager, Plaintiffs' online legal research platform, Westlaw, offers subscribers access to a large collection of annotated judicial opinions searchable through keywords, natural language, and/or Boolean queries.  *Id.* ¶ 3.  Westlaw's attorney-editors create helpful "editorial enhancements," including synopses at the beginning of judicial opinions and West Headnotes, which identify and synthesize facts of the case, key issues, and holdings.  *Id.* ¶ 4.  West's attorney-editors draft the specific wording of the West Headnotes, and decide which concepts and key points of law should be included therein.  *Id.* ¶¶ 5–6.

As discussed by Eric Lindberg, Thomson Reuters' Senior Director, Westlaw Product Management, West's attorney-editors also decide which "Key Numbers"—*i.e.*, more granular legal topics—are assigned to West Headnotes for purposes of integrating the West Headnotes and related judicial opinions into Plaintiffs' classification system, the WKNS.  Ex. 9[2] (Lindberg Tr.) 74:9–22, 75:21–76:9, 116:14–119:6.  After West's attorney-editors make initial recommendations of where a headnote might be placed in the WKNS, it is assigned to one or more "classifiers," attorney-editors who officially assign Key Numbers to the West Headnote.  Oliver Decl. ¶ 10.  ██

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████.  *Id.* ¶ 11.  Once a Key Number is assigned, the West Headnote judicial opinion are added to the WKNS under that Key Number.  *Id.* ¶ 8.

---

[2]      All exhibits are attached to the Declaration of Miranda Means, submitted concurrently.

████████████████████████████████████████████████████████████████████████████.

Ex. 8 (Leiter Tr.) 38:20–39:17, 97:6–14.

Because new judicial opinions are issued every day, and the law is constantly evolving, West's attorney-editors regularly create, revise, and update West Headnotes and the WKNS. Oliver Decl. ¶ 7. ██████████████████████████████████████████████████

████████████. Ex. 11 (Martens Tr.) 274:4–13; Ex. 82 (TR-0033982) (Westlaw Copyright Registrations); Ex. 81 (TR-0003138) (Westlaw Copyright Deposit Copies). ██████████████

████████████████████████████████████████████████████████████████████████████

████████████," ████████████████████████ ████████████████████████████████████

████████████████████████████████████████████████. Ex. 83 (TR-0034557); Ex. 97 (TR-0359959) (Business Transfer Agreement); Ex. 11 (Martens Tr.) 162:4–17; 202:22–203:4. Plaintiffs expressly do not claim copyrights in material prepared by a United States Government officer or employee as a part of that person's official duties, including government edicts, legislative enactments, judicial opinions, or similar types of official legal materials. Ex. 82 (TR-0033982).

**B.** **ROSS and Its Attempts to Access Westlaw**

████████████████████████████████████████. Ex. 2 (Arruda Tr.) 11:18–12:4.  It marketed the platform as using AI to allow users to search for legal content by posing questions in natural language.  Ex. 27 (https://blog.rossintelligence.com/post/how-natural-language-search-changing-face-of-legal-research).  As admitted by ROSS's VP Product/Legal and 30(b)(6) witness, Thomas van der Heijden, ██████████████████████████████████████████████████████████████

████████████████████████████. Ex. 15 (van der Heijden 30(b)(6) Tr.) 55:21–56:20 (Q: "████████████████████

████████████████████████████████████████████ A: ████████████████████████████");

4

Ex. 62 (ROSS-009501052); Ex. 2 (Arruda Tr.) 114:10–20, 114:25–115:11.

Plaintiff's artificial intelligence expert, Dr. Jonathan Krein, analyzed the ROSS Platform, and concluded that ███████████████████████████████████████████████

███████. Ex. 22 (Krein Op. Rpt.) ¶ 81. ████████████████████████████████████

████████████, ROSS's Chief Technology Officer and 30(b)(6) witness, Jimoh Ovbiagele, ████████████████████████████████████████████████████. Ex. 13 (Ovbiagele Tr.) 48:23–50:9; 69 (ROSS-010271831). ██████████████████████████████████████

██████████████████████████. Ex. 15 (van der Heijden 30(b)(6) Tr.) 239:17–19; Ex. 22 (Krein Op. Rpt.) ¶ 149. ████████████████████████████████████████████████████

██████████████████████████████████████████████████████████. Ex. 2 (Arruda Tr.) 275:23–276:12.

As early as ████████████████████████████████████████████████████

██████. Ex. 54 (ROSS-003391075); 13 (Ovbiagele Tr.) 204:3–7 (Q. "████████████████

████████████████████████████" A. "████████████████████████████████████████

████████████████████████████████████████████████████"); Ex. 55 (ROSS-003391076).   Initially, ████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████. Ex. 72 (ROSS-023032254) (████████████████████

████████████████); Ex. 53 (ROSS-003390881) (██████████████████████████████████);

Ex. 15 (van der Heijden 30(b)(6) Tr.) 101:19–103:5 (admitting ██████████████████████

████████████████████████████████). ██████████████████, Thomas Hamilton, the Head of Legal Research at ROSS, █████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████" Ex. 50

(ROSS-003390563); Ex. 26 (ROSS's Supp. Resps. Pls.' 1st Interrogs.) No. 11.

Still, ███████████████████████. Ex. 15 (van der Heijden 30(b)(6) Tr.) 142:9–143:11 (███████████████████████). ███████████████████

███████████████████████. Ex. 71 (ROSS-010373855).  Mr. von Simson, ████████

███████████████████████. *See, e.g.*, Ex. 71 (ROSS-010373855) ("███████████

███████████████████"); Ex. 65 (ROSS-009727514) ("███████████████████████

███████████."). Indeed, ROSS's 30(b)(6) witness testified that ████

███████████████████████

███████" Ex. 15 (van der Heijden 30(b)(6) Tr.) 148:10–149:10.

### C.   ROSS Hires LegalEase to Use Westlaw to Create ROSS Training Data

ROSS ultimately decided to ████████████████████████

███████████████████████. Ex. 68 (ROSS-010164290); Ex. 60 (ROSS-003610162). ███████████████████████

███████████████████████.  Ex. 60 (ROSS-003610162). ████

███████████████████████

███████████████████████. Ex. 68 (ROSS-010164290). ███████████████████████. Ex. 87 (TR-0038909) (Master Services Agreement); Ex. 28 (LEGALEASE-00056843) (SOW). ████

███████████████████████. Ex. 16 (Whitehead Tr.) 183:14–19 (███████████████████████); Ex. 7 (Hafeez Tr.) 41:3–17, 188:8–12.



██████████████████. Ex. 59 (ROSS-003487472);

Ex. 13 (Ovbiagele Tr.) 236:9–237:2; 59 (ROSS-003487472).  ROSS ████████

██████████████████. Ex. 46

(ROSS-000304771).  ROSS ████████████████████

██████████████████████████

██████████████████. Ex. 15 (van der Heijden 30(b)(6) Tr.)

324:15–23; Ex. 7 (Hafeez Tr.) 88:13–90:7; Ex. 35 (R-LEGALEASE-00050718). ████

██████████████████████████

██████████████████. Ex. 45

(ROSS-000304769) (Email with statement of work); Ex. 39 (ROSS-000175054); Ex. 33

(LEGALEASE-00171828) (stating LegalEase "████████████████

██████████████████" (emphasis added));

Ex. 45 (ROSS-000304769). Ex. 13 (Ovbiagele Tr.) 75:12–77:23 (████████████

██████████████████).

**D.    LegalEase's and Morae Global's Copying of the Westlaw Content**

██████████████████████████

██████████████████. Ex. 90 (TR-0048632) (Email discussing "████████

████████"); Ex. 7 (Hafeez Tr.) 34:1–3 ("Q. ████████████

████████  A. ████████.").  To do that, ████████████

████████. Ex. 34 (R-LEGALEASE-00048772); Ex. 4 (Cahn Tr. 72:25–73:7).

The multi-step process by which LegalEase and its subcontractor created the Bulk Memos

is not in dispute. *See, e.g.* Ex. 30 (LEGALEASE-00078065) (Best Practices Guide for ROSS

7

Intelligence); Ex. 31 (LEGALEASE-00093066) (Project Proposal); Ex. 22 (Krein Op. Rpt.) ¶¶

103–114; Ex. 91 (TR-0055362) (Bulk Memos Process for Morae Global). ***First***, ███████████

█████████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████. *Id.*; Ex. 91 (TR-

0055362) (Bulk Memos Process for Morae Global); Ex. 7 (Hafeez Tr.) 66:4–17. ***Second***, ████

███████████████████████████████████████████████████████████. Ex.

31 (LEGALEASE-00093066) (Project Proposal); Ex. 30 (LEGALEASE-00078065) (Best

Practices Guide for ROSS Intelligence); Ex. 38 (R-LEGALEASE-00189134); Ex. 102 (TR-

0076478).

***Third***, █████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████

████████. Ex. 31 (LEGALEASE-00093066) (Project Proposal); Ex. 30 (LEGALEASE-

00078065) (Best Practices Guide for ROSS Intelligence); Ex. 38 (R-LEGALEASE-00189134).

***Finally***, █████████████████████████████████████████████████████████████

█████████████████. Ex. 95 (TR-0178588); Ex. 92 (TR-0073545); Ex. 4 (Cahn Tr.) 159:25–

160:7; Ex. 95 (TR-0178588); Ex. 92 (TR-0073545).

Corporate representatives for both LegalEase and Morae Global ████████████████

███████████████████████████████████████. Ex. 4 (Cahn Tr.) 195:14–19 ("Q. ████

█████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████ A.

████."); Ex. 7 (Hafeez Tr.) 125:24–126:2 ("Q. █████████████████████████

███████████████████████ A. ████████."). Indeed, spreadsheets produced by

Morae Global show ████████████████████████████████████████████████████████████

██████████████████████. *See, e.g.*, Ex. 102 (TR-0076478).

ROSS's own software expert, Barbara Frederiksen-Cross, ████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████. Ex. 19 (Frederiksen-Cross Op. Rpt.) pp. 42–46; Ex.

20 (Exhibit 21 to Frederiksen-Cross Deposition). ██████████████████

██████████████████████. Ex. 21 (Revised Frederiksen-Cross Exhibit P) (████████████

██████████████████████████). ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████. Ex. 23 (Krein Op. Rpt.) at Appendix C; Ex. 24 (Malackowski Op.

Rpt.) at 53; Ex. 103 (TR-0836004) (LegalEase Use Spreadsheet); Ex. 5 (Cox Tr.) 246:8–10.

### E.  ROSS's Copying of the Westlaw Content

ROSS ████████████████████████████████████████████████

████. Ex. 19 (Frederiksen-Cross Op. Rpt.) ¶¶ 25–27; Ex. 17 (Branting Op. Rpt.) ¶¶ 31–36,

38; Ex. 61 (ROSS-003658597); Ex. 57 (ROSS-003419784).  Moreover, the record shows ████

████████████████████████████████████████. Ex. 7 (Hafeez Tr.)

139:24–140:10, 175:24–176:14; Ex. 15 (van der Heijden 30(b)(6) Tr.) 138:24–139:18; Ex. 2

(Arruda Tr.) 272:14–23.  LegalEase ████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████. Ex. 44 (ROSS-

000204366); Ex. 15 (van der Heijden 30(b)(6) Tr.) 342:4–7; *id.* 335:15–19; Ex. 64 (ROSS-

009637509). ROSS . Ex. 42 (ROSS-000177723) (Email from LegalEase to ROSS ████████████████████████); Ex. 43 (ROSS-000179468) (example of ██████████); Ex. 15 (van der Heijden 30(b)(6) Tr.) 347:13–22; Ex. 40 (ROSS-000176438).

## ARGUMENT

Summary judgment is proper where there is "no genuine dispute as to any material fact" and the movant "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant informs the court "of the basis for its motion" and the matter "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Then, the non-moving party must present evidence establishing disputed issues as to material facts. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).[3]

## I.   ROSS IS DIRECTLY LIABLE FOR COPYRIGHT INFRINGEMENT

"To establish [copyright] infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Courts regularly grant summary judgment on copyright infringement where the material facts are undisputed. *See, e.g.*, *TD Bank N.A. v. Hill*, 928 F.3d 259, 278 (3d Cir. 2019) (affirming finding of infringement on summary judgment); *Range Road Music, Inc. v. East Coast Foods, Inc.*, 668 F. 3d 1148, 1155 (9th Cir. 2012) (same); *Unicolors, Inc. v. Urb. Outfitters, Inc.*, 853 F.3d 980, 992 (9th Cir. 2017) (same).

### A.   Plaintiffs Own a Valid Copyright Covering the Westlaw Content

---

[3] Plaintiffs allege extensive copying beyond what is moved on herein, but with regard to the other copying there are factual disputes that Plaintiffs believe require resolution by a jury.

A valid copyright subsists in a work of authorship that is original, i.e., "independently created by the author (as opposed to copied from other works), and [] possess[ing] at least some minimal degree of creativity." *Feist*, 499 U.S. at 345; *West Publ'g Co. v. Mead Data Ctr., Inc.*, 799 F.2d 1219, 1223 (8th Cir. 1986). Copyright registrations "constitute *prima facie* evidence of the validity of the copyright," 17 U.S.C. § 410(c), including "ownership" as well as "originality, authorship, and compliance with statutory formalities." *Broad. Music, Inc. v. Moor-Law, Inc.*, 484 F. Supp. 357, 362–63 (D. Del. 1980); *see also Ford Motor Co. v. Summit Motor Prods., Inc.,* 930 F.2d 277, 291 (3d Cir. 1991). Thomson Reuters owns copyright registrations that cover the Westlaw Content. D.I. 1-1 (Copyright Registrations). Further, there is no dispute that ████████ ████████████████████████████████████████████████████. *See*, *e.g.*, Ex. 80 (TR-0002864) (Editorial Manual); Ex. 99 (TR-0532236) (Headnote Creation Manual); Ex. 8 (Leiter Tr.) 41:1–22 (admitting ██████████ "████████████████").

## B.    ROSS Copied the Undisputed Headnotes in the Bulk Memos

The second element of copyright infringement, copying, can be broken down into two sub-elements: (1) actual copying and (2) substantial similarity. *See Dam Things from Den.*, 290 F.3d 548, 561–62 (3d Cir. 2002). Both sub-elements are established here as a matter of law.

As to the ***first sub-element***, "actual copying can be established by 'direct evidence' or inferred by evidence of access and 'similarities that are probative of copying between the works, and expert testimony.'" *Id.* at 561–62; *see also Ford Motor,* 930 F.2d at 291. This is a rare case where copying has been admitted. ROSS's own expert ████████████████████████ ██████████████████████████████████. She identified ███████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████████████. Ex. 20 (Frederiksen-Cross

Op. Rpt.) at 42, Ex. P; Ex. 6 (Frederiksen-Cross Tr.) 313:17–320:3, Ex. 21.  Examples of ██

████████████████████████████████████████████████████████████.



Moreover, ROSS ████████████████████████████████████████

████████████████████████████████████████████

██████████████████    *See supra* 9–10; Ex. 19 (Frederiksen-Cross Op. Rpt.) ¶¶ 25–27; Ex. 17

(Branting Op. Rpt.) ¶¶ 31–36, 38.  This includes █████████████████████████

████████████████████.  *See MAI Sys. Corp. v. Peak Comput., Inc.*, 991 F.2d 511, 519

(9th Cir. 1993).  In particular, ROSS copied Westlaw Content in the following ways:

- ROSS ███████████████████████████████████████
  ██████. *See* Ex. 6 (Frederiksen-Cross Tr.) 111:23–112:9.

- From the Bulk Memos "████████████████████████████████████
  █████████████████████████████████████████████." Ex.
  17 (Branting Op. Rpt.) ¶ 31; Ex. 3 (Branting. Tr.) 155:9–158:19.

- ████████████████████████████████████████████████
  ███████████████████████████████████████████
  ███████████████████████████ Ex. 22 (Krein Op. Rpt.)
  ¶ 131; Ex. 19 (Frederiksen-Cross Op. Rpt.) ¶ 27 (describing how the memos were
  "██████████████████████").

- Bulk Memo information █████████████████████████████
  ████████████████████████████████. Ex. 22 (Krein Op. Rpt.)
  ¶ 132; Ex. 17 (Branting Op. Rpt.) ¶ 32 (discussing how the Bulk Memo information
  ██████████████████████████); Ex. 19 (Frederiksen-Cross Op.
  Rpt.) ¶ 27 (describing ███████████████).

- ████████████████████████████████████████████████
  ███████████████████. Ex. 22 (Krein Op. Rpt.) ¶ 133.

- The content in the Bulk Memo ████████████████████████
  █████████████████. Ex. 22 (Krein Op. Rpt.) ¶¶ 134–135.

- ████████████████████████████████████████████████
  ████████████████████ Ex. 17 (Branting Op. Rpt.) ¶ 38; Ex. 3 (Branting Tr.)
  188:16–190:1; 22 (Krein Op. Rpt.) ¶ 137.

Thus, even according to ROSS's own experts, ████████████████████████
█████████████████████████████████████.

As to the **second sub-element**, the Third Circuit considers whether there is "substantial similarity" between the copied work and "protectible elements" of the original work. *Dam Things*, 290 F.3d at 562; *ConsultNet Comput., Inc. v. Moore*, No. 04 Civ. 3485, 2007 WL 2702446, at * 6 (E.D. Pa. Sept. 12, 2007) (focusing on whether later work was similar because it appropriated "unique expressions of the original author"). In assessing similarity of the protectible elements of two works, the Third Circuit takes the position of a "lay observer," considering whether the observer "unless he set out to detect the disparities, would be disposed to overlook them, and

13

regard their aesthetic appeal as the same." *Id.* at 562; *see also Assn. of Am. Med. Colls. v. Mikaelian*, No. 83 Civ. 2745, 1986 WL 332, at *10 (E.D. Pa. Mar. 18, 1986).[4]



, Ex. 26 (ROSS's Supp. Resps. Pls.' 1st Interrogs.) No. 11, ▮▮▮. The bar for creativity is not high, requiring only "some creative spark, 'no matter "how crude, humble or obvious." *Feist*, 499 U.S. at 345; *CCC Info. Servs., Inc. v. Maclean Hunter Mkt. Reps., Inc.*, 44 F.3d 61, 65–66 (2d Cir. 1994) (compendium of car valuation information was protectible); *Eckes v. Card Prices Update*, 736 F.2d 859, 863 (2d Cir. 1984) (decision as to which baseball cards to call "premium" was protectible); *FMC Corp. v. Control Sol., Inc.*, 369 F. Supp. 2d 539 (E.D. Pa. 2005) (commercial product labels were protectible); *West Publ'g,* 799 F.2d at 1224 (arrangement of opinions in a case reporter was protectible). The West Headnotes easily clear this low bar. *Supra* 3–4.  The way the West Headnotes are worded ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Ex. 8 (Leiter Tr.) 38:20–39:16.[5]

---

[4] Although Plaintiffs contend that all of the questions in the 25,000 of the Bulk Memos that ROSS copied meet this sub-element, with regard to the questions in the Undisputed Memos, this sub-element is not disputed.

[5] ROSS ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Ex. 26 (ROSS's Supp. Resps. Pls.' 1st Interrogs.) No. 11. But Ms. Frederiksen-Cross, ROSS's expert, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Ex. 19 (Frederiksen-Cross Op. Rpt.) at 50–51.  Further, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. In the Third Circuit, if there are other methods for expressing the same idea, even if there is a "limited number of ways" to do it, the work is copyrighted. *Educ. Testing Servs. v. Katzman*, 793 F.2d 533, 539 (3d Cir. 1986).  Finally, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* Ex. 8 (Leiter Tr.) 234:2–235:23, 239:12–240:7; 257:23–261:7.

As is clear from a side-by-side comparison at Exhibit 21, ███████████████████

████████████████████████████████████████████████████████████████████████

████████████████, readily satisfying the lay-observer test for substantial similarity.  *See Ass'n of*

*Am. Medical Colleges*, 1986 WL 332, at *10 (examining the two works at issue and finding that

an ordinary observer viewing them would detect a substantial similarity between the two); *TD*

*Bank, N.A. v. Hill*, No. 12 Civ. 7188, 2015 WL 4523570, at *13–14, 17 (D.N.J. Jul. 27, 2015) ("A

verbatim reproduction of another work, of course, even in the realm of nonfiction, is actionable as

copyright infringement.").  The Undisputed Memos are thus infringing as a matter of law, and

Plaintiffs are entitled to summary judgment.

## II.      ROSS IS INDIRECTLY LIABLE FOR LEGALEASE'S INFRINGEMENT

Separately, ROSS is indirectly liable for LegalEase's direct infringement.

### A.      LegalEase Committed Direct Infringement

To prove contributory and vicarious infringement, a plaintiff must first show direct

infringement by a third party.  *Leonard v. Stemtech Int'l Inc*, 834 F.3d 376, 386 (3d Cir. 2016); *see*

*also Metro–Goldwyn–Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005).  Where a

licensee's use of a work is "limited in scope and the licensee acts outside the scope, the licensor

can bring an action for copyright infringement."  *Jacobsen v. Katzer*, 535 F.3d 1373 (Fed. Cir.

2008).  Here, the undisputed facts show that LegalEase (and its contractor) ███████████████

████████████████████████████████████████████████████████████████████████

██████████.

██████████████████████████████████████████████████████████████

██████. ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████. *Ticketmaster L.L.C. v. RMG Techs., Inc.*, 507 F. Supp. 2d 1096, 1105 (C.D. Cal. 2007) ("The copies of webpages stored automatically in a computer's cache or random access memory ('RAM') upon a viewing of the webpage fall within the Copyright Act's definition of 'copy.'").  LegalEase ███████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████.

*Supra* 7–9.  █████████████████████████████████████████████

████████████████████████████████████████████████████████.

Ex. 78 (TR-0002842); Ex. 84 (TR-0035897) (Settlement Agreement); *see Bitmanagement Software GmBH v. U.S.*, 989 F.3d 938 (Fed. Cir. 2021) (infringement where Navy acted outside license scope by violating license condition).  Such copying is infringement.  *TD Bank*, 2015 WL 4523570, at *13–14; *Dam Things,* 290 F.3d at 561-62.

## B.     ROSS is Contributorily Liable for LegalEase's Direct Infringement.

To establish contributory infringement, a plaintiff must show: (1) a third party directly infringed the plaintiff's copyright; (2) the defendant knew that the third party was directly infringing; and (3) the defendant materially contributed to or induced the infringement.  *See Leonard*, 834 F.3d at 387; *see also Gershwin Publ'g Corp. v. Colom. Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971); *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1171 (9th Cir. 2007). "The knowledge requirement" includes "both those with actual knowledge and those who have reason to know of direct infringement." *See UMG Recordings, Inc. v. RCN Telecom Servs., LLC*, No. 19 Civ. 17272, 2020 WL 5204067, at *7 (D.N.J. Aug. 31, 2020) (internal quotations omitted; citing *Tanksley v. Daniels*, 259 F. Supp. 3d 271, 295 (E.D. Pa. 2017)); *see also Gershwin*, 443 F.2d at 1162.  "[T]urning a 'blind eye' to infringement is the equivalent of knowledge." *Arista*

*Recs., Inc. v. Flea World, Inc.*, No. 03 Civ. 2670, 2006 WL 842883, at *14 (D.N.J. 2006).

**First**, as described above, LegalEase ███████████████████████. *Supra* 7–9, 15–16.

**Second**, ROSS ██████████████████████████. ROSS ████ ████████████████████████. *Supra* 6. ███████████████ ███████████████████████████████████████ ████████████████████████. *Supra* 9–10; Ex. 44 (ROSS-000204366) (Email from LegalEase to ROSS; "███████████████████████████ ███████████████████████████████████████." (emphasis added)); Ex. 42 (ROSS-000177723) (ROSS ████████████████); Ex. 15 (van der Heijden 30(b)(6) Tr.) 335:15–19, 342:4–7; 347:13–22. Likewise, ROSS's executives and 30(b)(6) witnesses testified ████████████████████████ ████. Ex. 7 (Hafeez Tr.) 139:24–140:10, 175:24–176:14; Ex. 2 (Arruda Tr.) 272:14–23 (testifying ███████████████████████████████████ ████████████████████); Ex. 15 (van der Heijden 30(b)(6) Tr.) 138:24– 139:18 (testifying ███████████████████████████ ████████████████████). This direct evidence shows that ROSS had the requisite knowledge. *See Leonard*, 834 F.3d at 387–88.

**Third**, ROSS ██████████████████████. ROSS ████████████ ████████████████████████. *Supra* 6–7. ████████████ ███████████████████████. *Supra* 6. ██████████████ ██████████████████████████████████████████████████████.

Ex. 68 (ROSS-010164290). Moreover, failure to stop the infringement is sufficient to meet this

standard.  *See Perfect 10*, 508 F.3d at 1172 (failure to stop an infringing copy from being distributed constituted "substantial participation" in infringement); *Religious Tech. Ctr. v. Netcom On–Line Comm. Servs., Inc.*, 907 F. Supp. 1361, 1365–66 (N.D. Cal. 1995).  And ███████ 

██████████████.  Ex. 15 (van der Heijden 30(b)(6) Tr.) 344:11–25 ("Q. ██████

████████████████  A. ███████████████");  Ex. 2 (Arruda Tr.) 287:1–3 ("Q.

██████████████████████  A. ██");  Ex. 13 (Ovbiagele Tr.) 81:25–

82:4. ████████████████████████████████████.  Ex.

13 (Ovbiagele Tr.) 78:6–11 ("Q. ███████████████████

█████████████████  A. █████████████").

### C.   ROSS is Vicariously Liable for LegalEase's Direct Infringement

To establish vicarious infringement, a plaintiff must prove direct infringement by a third party and that the defendant had (1) the right and ability to supervise or control the infringing activity; and (2) a direct financial interest in such activities.  *See Leonard*, 834 F.3d at 388.  Third Circuit law is clear that the control element is satisfied where a "defendant's 'pervasive participation in the formation and direction' of the direct infringer['s]" activity supports a finding that "defendants were in a position to police the direct infringers."  *Id.* at 388 (citing *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 262–63 (9th Cir. 1996) (defendant flea market operator had right to exclude vendors and "controlled and patrolled" the premises)); *see also Gershwin*, 443 F.2d at 1163 (vicarious liability even where defendant lacked contractual ability to control).

***First***, as described above, ██████████████████████. *Supra* 7–9, 15–16.

***Second***, ROSS ██████████████████. In *Leonard,* the Third Circuit found the defendant vicariously liable where it had contractual rights to (1) direct its distributors

to use certain marketing materials, templates, and websites that defendant controlled; and (2) impose a range of disciplinary sanctions on distributors who violated its policies or engaged in illegal behavior.  834 F.3d at 389.  It also found that, even if the infringement occurred on "unauthorized, independent websites," the defendant "still had the ability to induce compliance by distributors operating these websites by withholding compensation and access to back office support" and "thus had the 'practical ability to police the third-party [distributors'] infringing conduct.'"  *Id*.  Finally, the Third Circuit noted that "[the defendant's] ability to control its distributors is further reflected by the fact that when it asked a distributor to stop using the images, the distributor complied." *Id*. at 389 n.11.



Likewise, here, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. LegalEase admits that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮ and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 33 (LEGALEASE-00171828) (emphasis added); Ex. 15 (van der Heijden 30(b)(6) Tr.) 291:3-15, 301:10-17, 322:13-16 (30(b)(6) witness testifying that ROSS "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"). ROSS also testified ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Ex. 13 (Ovbiagele Tr.) 74:3-10 ("Q. ▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮ *A.* ▮▮▮▮▮▮▮▮▮▮▮▮▮▮" (emphasis added)), 76:5-22 (Q. "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" A. "▮▮▮▮▮▮▮▮▮▮▮▮▮"). Moreover, ▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



████████████. Ex. 39 (ROSS-000175054). Finally, like the defendant in *Leonard*,

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████. Ex. 41 (ROSS-000176441); Ex. 13 (Ovbiagele Tr.)

78:6–11. The extent of ROSS's control over LegalEase easily satisfies this element.

  ***Third***, ███████████████████████████████████. As the

court in *Leonard* explained, "'[f]inancial benefit exists where the availability of infringing

material acts as a draw for customers.'" 834 F.3d at 389 (quoting *Ellison v. Robertson*, 357 F.3d

1072, 1078, 1079 (9th Cir. 2004)).  Here, the infringing content drew customers, because █

███████████████████████████████████████████. Ex. 3

(Branting Tr.) 141:25–142:4 ("Q. ████████████████████████

████████ A. ███████████████████████████"); Ex. 15 (van der

Heijden 30(b)(6) Tr.) 286:6–13; *see also* Ex. 63 (ROSS-009603348) (stating to one of ROSS's

investors that ████████████████████████████).  ROSS does not deny

███████████████████████████████████████████████████

████████████. Ex. 13 (Ovbiagele Tr.) 170:11–171:11.  In other words, ████████████

███████████████████████████████████████████████████

██████████████████████████████. *See Leonard,* 834 F.3d at 389.

## III. CONCLUSION

  For the foregoing reasons, Plaintiffs respectfully request that their motion for summary

judgment on copyright infringement be granted in its entirety.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

_____

OF COUNSEL:

Dale M. Cendali
Joshua L. Simmons
Eric A. Loverro
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Miranda D. Means
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
(617) 385-7500

December 22, 2022

Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com

*Attorneys for Plaintiffs and Counterdefendants*
*Thomson Reuters Enterprise Centre GmbH and*
*West Publishing Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on December 22, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on December 22, 2022, upon the following in the manner indicated:

David E. Moore, Esquire                                   *VIA ELECTRONIC MAIL*
Bindu Palapura, Esquire
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE  19801
*Attorneys for Defendant and Counterclaimant*

Mark A. Klapow, Esquire                                   *VIA ELECTRONIC MAIL*
Lisa Kimmel, Esquire
Crinesha B. Berry, Esquire
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, DC  20004
*Attorneys for Defendant and Counterclaimant*

Gabriel M. Ramsey, Esquire                               *VIA ELECTRONIC MAIL*
Jacob Canter, Esquire
Warrington Parker, Esquire
CROWELL & MORING LLP
3 Embarcadero Center, 26th Floor
San Francisco, CA  94111
*Attorneys for Defendant and Counterclaimant*


*/s/ Michael J. Flynn*
_____
Michael J. Flynn (#5333)

22