IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

THOMSON REUTERS ENTERPRISE )
CENTRE GMBH and WEST PUBLISHING )
CORPORATION, )
  )
  )
          Plaintiffs and )   C.A. No. 20-613 (SB)
          Counterdefendants, )
  )   REDACTED - PUBLIC VERSION
   v. )
  )
ROSS INTELLIGENCE INC., )
  )
          Defendant and )
          Counterclaimant. )

## PLAINTIFFS' OPENING BRIEF IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT (NO. 2) ON TORTIOUS INTERFERENCE WITH CONTRACT AND COPYRIGHT PREEMPTION

                                        MORRIS, NICHOLS, ARSHT & TUNNELL LLP
                                        Jack B. Blumenfeld (#1014)
                                        Michael J. Flynn (#5333)
                                        1201 North Market Street
                                        P.O. Box 1347

OF COUNSEL:                           Wilmington, DE 19899
                                        (302) 658-9200
Dale M. Cendali                      jblumenfeld@morrisnichols.com
Joshua L. Simmons                  mflynn@morrisnichols.com
Eric A. Loverro
KIRKLAND & ELLIS LLP
601 Lexington Avenue               *Attorneys for Plaintiffs Thomson Reuters*
New York, NY 10022                *Enterprise Center GmbH and West Publishing*
(212) 446-4800                     *Corporation*

Miranda D. Means
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
(617) 385-7500

December 22, 2022

**TABLE OF CONTENTS**

SUMMARY OF THE ARGUMENT ........................................................................... 1

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS ............................. 3

STATEMENT OF FACTS ................................................................................. 3

    A.   ROSS and Its Attempts to Access Westlaw ........................................................ 3

    B.   ROSS Contracts With LegalEase To Gain Access To Westlaw ...................................... 5

    C.   LegalEase Uses Westlaw On ROSS's Behalf .................................................. 6

    D.   LegalEase's Breach of the Westlaw Terms of Service. ...................................... 9

ARGUMENT ................................................................................................. 11

I.    LEGAL STANDARD ................................................................................. 11

II.    ROSS TORTIOUSLY INTERFERED WITH WEST'S CONTRACT ............................... 11

    A.   A Valid Contract Existed Between LegalEase and West. ................................ 12

    B.   ROSS Knew About LegalEase's Contract With West and Its Terms. ........................... 12

    C.   ROSS Intentionally Caused LegalEase To Breach Its Contract With West. ................... 14

    D.   ROSS Had No Justification. ........................................................... 17

    E.   ROSS's Inducement Harmed Plaintiffs. ................................................. 18

III.    PLAINTIFFS' TORTIOUS INTERFERENCE CLAIM IS NOT PREEMPTED ........... 19

IV.    CONCLUSION ................................................................................. 20

## TABLE OF AUTHORITIES

**Cases**

**Page(s)**

*Altera Corp. v. Clear Logic, Inc.*,
    424 F.3d 1079 (9th Cir. 2005) ........................................................................20

*ASDI, Inc. v. Beard Rsch., Inc.*,
    11 A.3d 749 (Del. 2010) ................................................................................14

*Avaya Inc., v. Telecom*,
    838 F.3d 354 (3d Cir. 2016)............................................................................17

*Bowers v. Baystate Techs., Inc.*,
    320 F.3d 1317 (Fed. Cir. 2003)..................................................................19, 20

*Cargill Glob. Trading v. Applied Dev.*,
    706 F. Supp. 2d 563 (D.N.J. 2010) ................................................................17

*Cassway v. Chelsea Historic Props. I*,
    No. 92 Civ. 4124, 1993 WL 64633 (E.D. Pa. Mar. 4, 1993) ................................20

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)......................................................................................11

*Chase Bank USA, N.A. v. Hess*,
    C.A. No. 08-121, 2013 WL 867542 (D. Del. 2013) ...................................... *passim*

*Expediters Int'l of Wash., Inc. v. Direct Line Cargo Mgmt. Servs., Inc.*,
    995 F. Supp. 468 (D.N.J. 1998) ....................................................................20

*Irwin & Leighton, Inc. v. W.M. Anderson Co.*,
    532 A.2d 983 (Del. Ch. 1987)........................................................................11

*Kallok v. Medtronic, Inc.*,
    573 N.W.2d 356 (Minn. 1998).................................................................11, 12, 17

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)......................................................................................11

*Mercom Grp., LLC v. Diati Staffing, LLC*,
    No. 16 Civ. 3475, 2016 WL 4054921 (D.N.J. July 26, 2016) ................................19

*Nat'l Car Rental Sys., Inc. v. Comput. Assocs. Int'l, Inc.*,
    991 F.2d 426 (8th Cir. 1993) ........................................................................20

*Nelson v. Fleet Nat'l Bank*,
    949 F. Supp. 254 (D. Del. 1996) ............................................................................... 17

*WaveDiv. Holdings, LLC v. Highland Cap. Mgmt., L.P.*,
    49 A.3d 1168 (Del. 2012) ......................................................................................... 12

*Wellness Publ'g. v. Barefoot*,
    No. 2 Civ. 3773, 2008 WL 108889 (D.N.J. Jan. 9, 2008) ........................................ 19

*Zippertubing Co. v. Teleflex Inc.*,
    757 F.2d 1401 (3d Cir. 1985) .................................................................................... 18

**Statutes**

17 U.S.C. § 101 et seq. ........................................................................................... 2, 19, 20

**Rules**

Fed. R. Civ. P. 56(a) ..................................................................................................... 11

**Other Authorities**

Restatement (Second) of Torts § 766 ................................................................... 14, 15, 17

Restatement (Second) of Torts § 767 .......................................................................... 17

Plaintiffs Thomson Reuters Enterprise Centre GmbH ("Thomson Reuters") and West Publishing Corporation ("West") (collectively, "Plaintiffs") respectfully move for partial summary judgment on their tortious interference with contract claim against Defendant ROSS Intelligence Inc. ("ROSS").

### SUMMARY OF THE ARGUMENT

ROSS's own witnesses and documents demonstrate that ROSS knowingly and intentionally induced LegalEase Solutions LLC ("LegalEase") to breach its contract with West. As a matter of law, ROSS's flagrant disregard for Plaintiffs' contractual and intellectual property rights cannot be excused or justified.

*First*, ROSS ████████████████████████████████████ ████████. ██████████████████████████████████████ ("Westlaw Terms of Service") ████████████████ ("Westlaw") ████████████████, ███████████████████████████████████████████████ ███████████████████████████. Moreover, ████████████ ███████████████████████.

*Second*, ROSS ████████████████████████████████ ████████. The record shows that ████████████████████ ██████████████████████████████████████████████ ████████. ROSS ████████████████████████████████ ████████████. In addition, the record is replete with documents wherein ████ ███████████████████████████████████████████████.

*Third*, ROSS ████████████████████████████████████ ████████████████████████████. Indeed, ████████████████



███████████████████████████████████████████. Moreover, the record is full of documents and testimony from ROSS's executives and 30(b)(6) witnesses regarding ████████████ ███████████████████████████████████████.

**_Fourth_**, in light of ROSS's ███████████████████████████████████ ███████████████████████████████████████. ROSS's own experts ████████ ███████████████████████████████████████ ███████████████████████████. Rather, ███████████████████████████ ███████████████████████████████████████ ██████████████████████████.

**_Fifth,_** ████████████████████████████████████████████████. In light of the undisputed facts in the record, a reasonable jury could only find that ROSS tortiously interfered with LegalEase's contract with West.

Critically, ROSS cannot escape liability for tortious interference with contract by asserting preemption. The Copyright Act does not preempt tortious interference claims based in contract, particularly where the contractual breach constitutes more than the **_mere_** act of reproduction, performance, distribution, or display, as has been established here. As detailed below, ████████ ███████████████████████████████████████ ███████████████████████████████████████ ███████████████████████████████████████ ████████. Thus, ROSS's preemption defense fails as a matter of law.

Accordingly, Plaintiffs are entitled to summary judgment on their tortious interference with

---

[1] "Westlaw Content" refers to Plaintiffs' original content, including their proprietary West Key Number System (the "WKNS") and case headnotes (the "West Headnotes"), and other editorial enhancements.

contract claim and on ROSS's preemption defense.

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS

Plaintiffs commenced this lawsuit on May 6, 2020, asserting copyright infringement and tortious interference with contract. D.I. 1 (Compl.). Expert discovery closed on November 11, 2022, and discovery is now complete.

## STATEMENT OF FACTS

### A. ROSS and Its Attempts to Access Westlaw



. Ex. 2[2] (Arruda Tr.) 11:18–12:4. Originally, the ROSS Platform was

. Ex. 22 (Krein Op. Rpt.) ¶¶ 81–83, 89–90.

. Ex. 13 (Ovbiagele Tr.) 48:23–50:9; 69 (ROSS-010271831). In particular,

. Ex. 2 (Arruda Tr.) 275:23– 276:12.

. Ex. 54 (ROSS-003391075); Ex. 13 (Ovbiagele Tr.) 204:3–7 (Q. "

" A. "

."

(emphasis added)); Ex. 55 (ROSS-003391076). Initially, ROSS's co-founders, Andrew Arruda and Jimoh Ovbiagele,

. Ex. 55

---

[2] All exhibits are attached to the Declaration of Miranda D. Means, submitted concurrently.

(ROSS-003391076). ██████████████████████████████████████████

████████████████. Ex. 13 (Ovbiagele Tr.) 204:3–15.  Next, ROSS ████████

████████████████████████████████████████████████████████████

█████████████████████████████████████████████████. Ex. 72

(ROSS-023032254) (███████████████████████████); 53 (ROSS-003390881)

(███████████████████████████); Ex. 15 (van der Heijden 30(b)(6) Tr.) 87:14–

89:4, 101:19–103:5 (admitting ████████████████████████████████████

██████). Specifically, ROSS asked ███████████████████████████████████

█████████████ Ex. 52 (ROSS-003390773). ███████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████. Ex. 49

(ROSS-003390233). ████████████████████████████████████████████

████████████████████████. Ex. 51 (ROSS-003390772) (Email from ████████

███████████████, writing "████████████████████████████████████████

███████████████████████████████████" (emphasis added)).

██████████████████████████, Thomas Hamilton, the Head of Legal Research at

ROSS, █████████████████████████████████████████████████████████

██████████████████████████████████████████████████ Ex. 50

(ROSS-003390563); Ex. 26 (ROSS's Supp. Resps. Pls.' 1st Interrogs.) No. 11.  As ROSS's

30(b)(6) witness admitted, ██████████████████████████████████████. Ex. 15 (van

der Heijden 30(b)(6) Tr.) 142:9–143:11 (describing ROSS's ████████████████████

██████). Specifically, ██████████████████████████████████████████████

████████████████████████████████████████████████████████████



. Ex. 71 (ROSS-010373855) (Mr. von Simson ███ (emphasis added)). Mr. von Simson, along with ROSS's executives, ███ . *See, e.g.*, Ex. 71 (ROSS-010373855) ("███" (emphasis added)); Ex. 65 (ROSS-009727514) ("███" (emphasis added)). ROSS's 30(b)(6) witness testified that ███ Ex. 15 (van der Heijden 30(b)(6) Tr.) 148:10–149:10. Eventually, however, ROSS ███ . Ex. 66 (ROSS-009770437).

## B. ROSS Contracts With LegalEase To Gain Access To Westlaw

███ . Ex. 68 (ROSS-010164290); Ex. 60 (ROSS-003610162). In at least one instance, ███ . Ex. 60 (ROSS-003610162).

███ . Ex. 68 (ROSS-010164290).

████████████ Ex. 87 (TR-0038909) (Master Services Agreement); Ex. 28 (LEGALEASE-00056843) (Statement of Work); Ex. 7 (Hafeez Tr.) 188:4–7. The ROSS Original Project was focused on ██████████████████████████████████████████████. Ex. 7 (Hafeez Tr.) 188:25–189:3. Under the terms of the ROSS Original Project, LegalEase ████ ████████████████████████████████████████████████████. Ex. 28 (LEGALEASE-00056843) (Statement of Work). In doing so, it was critical that LegalEase ████████████████████████████████████████████████████ ████████████████. Ex. 13 (Ovbiagele Tr.) 84:22–86:12. LegalEase performed the project in ████████████. Ex. 28 (LEGALEASE-00056843) (Statement of Work).

## C. LegalEase Uses Westlaw On ROSS's Behalf

From ████████, ████████████████████████████████████ ████████████. Ex. 16 (Whitehead Tr.) 189:13–190:9. During that time, ROSS ████████ ████████████████████████████████. Ex. 26 (ROSS's Supp. Resps. Pls.' 1st Interrogs.) No. 2. Despite ████████████████████████████████████████, ROSS struggled because it "████████████████████████████████████████" and "████████████████████████████████████████████ ████████████████████." Ex. 26 (ROSS's Supp. Resps. Pls.' 1st Interrogs.) No. 2. Thus, in ████████, ROSS ████████████████████████████████████████ ████████████. Ex. 59 (ROSS-003487472). To create ████████████████████ ████████████████████████████████████████████████████. Ex. 13 (Ovbiagele Tr.) 236:9–237:2; Ex. 59 (ROSS-003487472) ("████████████████████ ████████████████████████████████████████████████████ ████████████████████████████" (emphasis added)).

On ████████████████████████████████████████████████

██████████████████████████████████████ (the "Bulk Memos"). Ex. 45 (ROSS-000304769). This new project, ████████████████████████

████████████████████. ***First,*** per the statement of work, LegalEase ██████████████

████████████████████████████████████████████████████

████████████████████████████. Ex. 15 (van der Heijden 30(b)(6) Tr.) 324:15–23; Ex. 45 (ROSS-000304769) (Email with Statement of Work II Attachment). This, as the name would suggest, meant LegalEase ██████████████████████████████████

██████████████████████ (as discussed below).

 ***Second,*** during the Bulk Memo Project, ROSS ██████████████████████

██████████████████████. Ex. 13 (Ovbiagele Tr.) 75:12–77:5. LegalEase ██████████████

████████████████████████████████████████████

████. Ex. 39 (ROSS-000175054); Ex. 33 (LEGALEASE-00171828) (stating LegalEase "█

████████████████████████████████████████████

██████████████████████" (emphasis added)); Ex. 45 (ROSS-000304769) (LegalEase was

████████████████████████████████████████████

████████████████████████████████████████████). This format reflected the fact that the purpose of the Bulk Memo Project was to ██████████████████

████████████████████. Ex. 93 (TR-0104712) (Morae Global's "Project Protocol") ("█

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████" (emphasis added)).

 In order to ██████████████████████████████████████

████████████████████████████████████████████



7

███████████████████████████████████████. Ex. 35 (R-LEGALEASE-00050718); 7 (Hafeez Tr.) 34:1–3 ("Q. ████████████████████████████████████ A. ████████.").  ██

██████████████████████████████████████████████████████████████████████

████████████████████████████████████████. Ex. 34 (R-LEGALEASE-00048772).  At the same time,

██████████████████████████████████████████████████████████████████████

████████████████████████████████████. Ex. 34 (R-LEGALEASE-00048772); Ex. 4 (Cahn Tr.) 72:25–73:7.  By the end of ██████████████████████████████████

█████████████████████████████████. Ex. 19 (Frederiksen-Cross Op. Rpt.) ¶¶ 23, 26.  ROSS

██████████████████████████████████████████████████████████████████████

████████████████████████████████████. Ex. 19 (Frederiksen-Cross Op. Rpt.) ¶¶ 25– 27; 17 (Branting Op. Rpt.) ¶¶ 31–36, 38; Ex. 61 (ROSS-003658597); Ex. 57 (ROSS-003419784).

Westlaw was ████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

██████████████████████████████. Ex. 7 (Hafeez Tr.) 34:1–3; Ex. 4 (Cahn Tr.) 68:3–9, 194:19–195:5.[3]  And consistent with █████████████████████████████████,

---

[3] The record shows that ███████████████████████████████████████████████████ █████████████████████████████████████████████████████████. Ex. 29 (LEGALEASE-00059362) (email discussing ████████████████████████████████████████████████████████████████████ ████████). Consistent with this, ████████████████████████████, *see infra*, █████████████████████████████████████████████████████. Ex. 36 (R-LEGALEASE-00101583) ███████████████████████████████████████████████ (emphasis added)). LegalEase's 30(b)(6) witness also admitted █████████████████████████████ ███████████████████████████████████████████████. Ex. 7 (Hafeez Tr.) 152:7–21. In any event,

the record is teeming with documents showing ███████████████████████████

████████████████████████.  Ex. 7 (Hafeez Tr.) 139:24–140:10, 175:24–176:14; Ex. 15 (van

der Heijden 30(b)(6) Tr.) 138:24–139:18; Ex. 2 (Arruda Tr.) 272:14–23.

### D. LegalEase's Breach of the Westlaw Terms of Service.

During the course of the Bulk Memo Project, LegalEase's use of Westlaw spiked

dramatically, eventually reaching a usage rate of nearly five times greater than the average monthly

usage of the "AmLaw 100" law firms, as shown below:[4]



D.I. 1 (Compl.).  Usage spiked for two reasons: *First*, █████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████.



████.

---

[4] The red line in this graph shows LegalEase's monthly Westlaw "transactions," which refers to
any executed search, as well as any viewing, printing, downloading, or emailing of a specific
document, on Westlaw.  The dotted blue line shows the average monthly transactions of the
AmLaw 100 law firms which, at the time, was approximately 52,000 transactions per month.  Prior
to the Bulk Memo Project, LegalEase averaged only approximately 6,000 transactions per month.

*See* Ex. 94 (TR-0151763); Ex. 103 (TR-0836004).  *Second*, . *See, e.g.,* Ex. 86 (TR-0038826). . Ex. 85 (TR-0038034).

After investigating LegalEase's Westlaw activity further, West determined that LegalEase had violated several provisions of its license for Westlaw, including the provisions that state:



Ex. 77 (TR-0002827); Ex. 76 (TR-0002812); Ex. 37 (R-LEGALEASE-00101636).  In . Ex. 37 (R-LEGALEASE-00101636).

In May 2018, West sued LegalEase for breach of contract in the United States District Court of Minnesota, *West Publ'g Corp. v. LegalEase Sols., LLC*, No. 18 Civ. 01445.  During the litigation, . Ex. 9 (Lindberg Tr.) 78:11–24.  The parties settled in May 2020, . Ex. 84 (TR-0035897) ("

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████." (emphasis added)); Ex. 7 (Hafeez Tr.) 104:11–23 (admitting LegalEase █████████████████████████). Shortly thereafter, Plaintiffs filed this lawsuit against ROSS.

## ARGUMENT

### I. LEGAL STANDARD

Summary judgment is proper where there is "no genuine dispute as to any material fact" and the movant "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant informs the court "of the basis for its motion" and the matter "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Then, the non-moving party must present evidence establishing disputed issues as to material facts. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

### II. ROSS TORTIOUSLY INTERFERED WITH WEST'S CONTRACT

To establish tortious interference with contractual relations under Delaware law, a plaintiff must show there is "1) a contract, 2) about which the defendant knew, 3) an intentional act that is a significant factor in causing the breach of the contract, 4) without justification, and 5) which causes injury." *Chase Bank USA, N.A. v. Hess*, C.A. No. 08-121, 2013 WL 867542, at *3 (D. Del. Mar. 7, 2013); *see also Irwin & Leighton, Inc. v. W.M. Anderson Co.*, 532 A.2d 983, 992 (Del. Ch. 1987).[5] Based on the undisputed facts in the record, a reasonable trier of fact could only conclude

---

[5] Minnesota law requires similar elements, namely: "'(1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) intentional procurement of its breach; (4) without justification; and (5) damages.'" *Kallok v. Medtronic, Inc.*, 573 N.W.2d 356, 362 (Minn. 1998).

that ROSS knowingly and intentionally caused LegalEase to breach its's contract with West resulting in harm to West.

**A. A Valid Contract Existed Between LegalEase and West.**

A valid contract existed between West and LegalEase at all times relevant to Plaintiffs' claim, including ██████████████████████████████████████

██████████████████████████████████████████████

██████████████. *See, e.g.,* Ex. 75 (TR-0002741) (LegalEase's Westlaw contracts from 2014); Ex. 7 (Hafeez Tr.) 39:19–25 ("Q. ████████████████████████████████████ A. ███ Q. ████████████████████████████████ A. ███."); Ex. 37 (R-LEGALEASE-00101636) (Emails regarding ████████████████ ███████); Ex. 32 (LEGALEASE-00109845) (████████████). It is well-settled that introducing a signed copy of the contract in question—which Plaintiffs have done—is sufficient to satisfy this element. *See Chase Bank*, 2013 WL 867542, at *3 (element satisfied where signed contract was submitted as exhibit); *see also Kallok*, 573 N.W.2d at 362 (same).

**B. ROSS Knew About LegalEase's Contract With West and Its Terms.**

As to knowledge, Plaintiffs may establish that ROSS "had actual *or* imputed knowledge" of LegalEase's contract with West. *See WaveDiv. Holdings, LLC v. Highland Cap. Mgmt., L.P.*, 49 A.3d 1168, 1176 (Del. 2012) (emphasis added). ████████████████████████████

█████████████████████████████████████████████████.[6] Indeed,



---

[6] ROSS also had imputed knowledge of LegalEase's contract with West given (1) ████████████ ████████████████████████, and (2) ████████████████████████████████████ ████████████████████████████ Ex. 50 (ROSS-003390563). Likewise, ROSS ████████████████████████████████████████████████ given (1) ████████████████████████████████████████████████████, and (2) ██████████████████████████████████. Exs. 15 (van der Heijden Tr.) 172:14–174:13; 70 (ROSS-010361787).

██████████████████████████████████████████████████████

████████████████████████████. Ex. 54 (ROSS-003391075); Ex. 13 (Ovbiagele Tr.)

204:3–7; Ex. 72 (ROSS-023032254); Ex. 15 (van der Heijden 30(b)(6) Tr.) 101:19–103:5; Ex. 50

(ROSS-003390563).  Moreover, LegalEase ████████████████████████

████████████████████████████████████████████████. Ex. 68 (ROSS-

010164290); Ex. 7 (Hafeez Tr.) 139:24–140:10.

ROSS ████████████████████████████████████████

███████████████████. As an initial matter, ROSS █████████████████

███████████████████. Ex. 72 (ROSS-023032254). Furthermore, ROSS's 30(b)(6)

witness, who was also ROSS's Head of Legal Research, testified █████████████

████████████████████████████████████████████████████████.

Ex. 15 (van der Heijden 30(b)(6) Tr.) 174:10-13 ("Q. ███████████████████

████████████████████████ A. █████████████"); Ex. 70 (ROSS-

010361787). In fact, as of █████████, just days before the filing of the Complaint in this

litigation on May 6, 2020, ████████████████████████████████

████. Ex. 73 (TR-0001142); Ex. 15 (van der Heijden 30(b)(6) Tr.) 88:19-95:11.[7] █████

████████████████████████████████████████████████

████████████████████████████████████████. *Id.*

Mr. von Simson, ROSS's "Legal Subject Matter Expert," ███████████████

████████████████████████████████████████████████████

████. Ex. 71 (ROSS-010373855) (████████████████████████ and

---

[7] ████████████████████████████████████████████. Ex. 74
(TR-0001154).

saying  ). He

. *See, e.g.*, Ex. 71 (ROSS-010373855) ("

" (emphasis added)); Ex. 65

(ROSS-009727514) ("

." (emphasis added)). ROSS admits

"[8] Ex. 15 (van der Heijden 30(b)(6) Tr.) 148:10–

149:10. Accordingly, ROSS (a)

, and (b)

. *See Chase Bank*, 2013 WL 867542, at *3 (element satisfied where defendant reviewed

the contract and understood what violated the terms).

### C. ROSS Intentionally Caused LegalEase To Breach Its Contract With West.

The third element of tortious interference is satisfied if, as is the case here, ROSS caused

LegalEase to breach its contract with West. *See ASDI, Inc. v. Beard Rsch., Inc.*, 11 A.3d 749, 751

(Del. 2010) ("In this context, Delaware courts have consistently followed the Restatement

(Second) of Torts, which recognizes a claim for tortious interference with contractual relations

where the defendant utilizes 'wrongful means' to induce a third party to terminate a contract.");

*see also* Restatement (Second) of Torts § 766 (liability exists for "inducing or otherwise causing"

another to breach a contract with a third party). A party causes contractual interference where its

actions require another to "choose one course of conduct rather than another." *Id.*, cmt.

---

[8] As noted above, ROSS did, in fact,

. Ex. 66 (ROSS-009770437).

h. Moreover, that interference is intentional where the party knows "the interference is certain or substantially certain to occur as a result." *Id.*, cmt. e. Critically, the interferer does not need to know every term of the contract, only of the contract's existence and the likelihood that the party's conduct will result in its breach. *See id.*, cmt. i. Finally, although some courts have held that issues of intent are better resolved at trial, "[n]othing in the relevant case law in this circuit mandates summary judgment as inherently inappropriate to resolve claims of intentional torts." *Chase Bank*, 2013 WL 867542, at *3 n.35. Rather, summary judgment is appropriate "where the applicable facts of an intentional tort claim are sufficient to support judgment in favor of the moving party— that is, when there is absence of any *genuine* issue of *material* fact." *Id.* (granting summary judgment for plaintiff on tortious interference claim).

Here, the record shows that ROSS knew that (1) ████████████████████████ ███████████████████████████████████████████, and (2) ███████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████. Ex. 71 (ROSS-010373855); Ex. 65 (ROSS-009727514); Ex. 50 (ROSS-003390563). Such knowledge is evident from the testimony of ROSS's 30(b)(6) witness in regard to how ROSS ██████████████████████████████████████████. Ex. 15 (van der Heijden 30(b)(6) Tr.) 148:10–149:10.

Likewise, ROSS unquestionably caused LegalEase's breach of contract. LegalEase ██████ ██████████████████████████████████████████████████████████:

- ██████████████████████████████████████████
- ████████████████████████████████████████████████
- ████████████████████████████████



- ██████████████████████████████████

Ex. 84 (TR-0035897) (███████████████). Moreover, ██████████████

███████████. Ex. 7 (Hafeez Tr.) 104:22–23; Ex. 33 (LEGALEASE-00171828) (stating

LegalEase "██████████████████████████████████

██████████████████████████████." (emphasis added)).

The record also shows that ROSS ████████████████████████████

████. Ex. 7 (Hafeez Tr.) 139:24–140:10, 175:24–176:14; Ex. 15 (van der Heijden 30(b)(6) Tr.)

138:24–139:18; Ex. 2 (Arruda Tr.) 272:14–23. ████████████████████████

██████████████████████████. Ex. 68 (ROSS-010164290). ██████████████

██████████████████████████████████████████

████████████████████████████████. Ex. 44 (ROSS-000204366);

Ex. 15 (van der Heijden 30(b)(6) Tr.) 342:4–7 ("Q.

A. ████"). ████████████████████████████████████████.

Ex. 15 (van der Heijden 30(b)(6) Tr.) 335:15–19; Ex. 64 (ROSS-009637509). ██████████

██████████████████████████████████████████

██████████████████████████████████████████

█████████████████████████. Ex. 42 (ROSS-000177723) (email ██████████

████████████████████); Ex. 43 (ROSS-000179468) (██████████████████); Ex.

15 (van der Heijden 30(b)(6) Tr.) 347:13–22. In fact, in response to LegalEase, ROSS █████████

██████████████████████████████████████████

████████████████████ Ex. 40 (ROSS-000176438).

Accordingly, it is clear that ROSS's directions and demands under the Bulk Memo Project

"induc[ed] or otherwise caus[ed]" LegalEase to breach its contract with West, and that ROSS was

fully aware of that breach. *See* Restatement (Second) of Torts § 766; *see also Chase Bank*, 2013 WL 867542, at *3 (element satisfied where directions from defendant to third parties was "a significant factor in causing breach of the contracts").

### D. ROSS Had No Justification.

The fourth element of a tortious interference claim requires a showing that defendant's action not justified, which involves consideration of whether the defendant's conduct was improper or wrongful. *Nelson v. Fleet Nat'l Bank*, 949 F. Supp. 254, 260 (D. Del. 1996); *see also* Restatement (Second) of Torts § 767. Improper or wrongful conduct is conduct that "would not be sanctioned by the 'rules of the game,'" *see Avaya Inc., RP v. Telecom labs, Inc.*, 838 F.3d 354, 383 (3d Cir. 2016), or is "fraudulent, dishonest, or illegal." *See Cargill Glob. Trading v. Applied Dev.*, 706 F. Supp. 2d 563, 576 (D.N.J. 2010). A defendant's interference is not justified when a plaintiff demonstrates that the "'defendant had knowledge of facts which, if followed by reasonable inquiry, would have led to a complete disclosure of the contractual relations and rights of the parties.'" *Kallok*, 573 N.W.2d at 362.

Here, the record shows that ROSS's conduct was improper, wrongful, and unjustified. From the outset, ███████████████████████████████████████████████ ███████. Ex. 50 (ROSS-003390563). Thus, ███████████████████████████████ ███████████████████████████ clearly was improper and unjustified. Indeed, ███████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ███████" Ex. 73 (TR-0001142); Ex. 15 (van der Heijden 30(b)(6) Tr.) 94:19–95:11.[9]

---

[9] ROSS's terms of service include ███████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████

Moreover, ███████████████████████████████████████████

███████████████████. Ex. 3 (Branting Tr.) 275:15–20 ("Q. ████████████

████████████████████████████████. A. ████████████████████

████████████████████"), 278:18–279:1 ("Q. ████████████████

████████████████████████████████████████████████

A. ███████████████████████████████████████████████

██████████").  There simply is no justification for ROSS's inducement of LegalEase ████

███████████████████████████ and breach its contract with West.  In addition to ROSS's

dishonest actions regarding LegalEase, it also ██████████████████████████████

████████████████████████████████████████████████

██████████████████████████. *See supra* 4–5.  Such actions were

improper and unjustified.  *See Zippertubing Co. v. Teleflex Inc.*, 757 F.2d 1401 (3d Cir. 1985)

(finding tortious interference where defendants misappropriated information of a nearly completed

transaction for their own benefit and to the exclusion of plaintiff).

### E.     ROSS's Inducement Harmed Plaintiffs.

ROSS's inducement of LegalEase to breach its contract harmed Plaintiffs.  ████████

████████████████████████████████████████████████

██████████████████████████. Oliver Decl. ¶¶ 2, 9, 12.  ████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████. Ex. 24 (Malackowski Op. Rpt.) at 21.  As discussed above, LegalEase's use of

_____

████████████████████████████████████████████████

████████████████████████████████████████ Ex. 73 (TR-0001142).

Westlaw spiked dramatically during the Bulk Memo Project, eventually reaching a usage rate of nearly five times greater than the average monthly usage of the "AmLaw 100" law firms. *See supra* 9–10; Ex. 24 (Malackowski Op. Rpt.) at 53; Ex. 103 (TR-0836004) (LegalEase Use Spreadsheet); Ex. 5 (Cox Tr.) 246:8–10. ███████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████.

█████████████████████████████████████████████████████████████

███████████. Ex. 24 (Malackowski Op. Rpt.) at 5–6. Accordingly, it is clear this element of Plaintiffs tortious interference claim is satisfied. *See Chase Bank*, 2013 WL 867542, at *3 (element satisfied where plaintiff was "improperly denied compensation").

## III. PLAINTIFFS' TORTIOUS INTERFERENCE CLAIM IS NOT PREEMPTED

In trying to evade liability for its tortious interference, ROSS argues that Plaintiffs' tortious interference claim is preempted by the Copyright Act. Yet the Copyright Act does ***not*** preempt tortious interference claims based on contractual relationships. *See*, *e.g.*, *Bowers v. Baystate Techs., Inc.*, 320 F.3d 1317 (Fed. Cir. 2003) (finding most courts "have found that the Copyright Act does not preempt contractual constraints on copyrighted articles"); *Mercom Grp., LLC v. Diati Staffing, LLC*, No. 16 Civ. 3475, 2016 WL 4054921, at *5 (D.N.J. July 26, 2016) ("[Tortious interference is] so different from 'mere copying' that [p]laintiff is not seeking to vindicate a right equivalent" thereto); *Wellness Publ'g. v. Barefoot*, No. 2 Civ. 3773, 2008 WL 108889, at *18 (D.N.J. Jan. 9, 2008) (finding tortious interference claim not preempted by Copyright Act where it was based on breach of an agreement not to compete with plaintiffs' product); *Expediters Int'l of Wash., Inc. v. Direct Line Cargo Mgmt. Servs., Inc.*, 995 F. Supp. 468, 480 (D.N.J. 1998) (claim that competitor breached contract was not preempted by Copyright Act); *Cassway v. Chelsea*

*Historic Props. I*, 92 Civ. 4124, 1993 WL 64633, at *5 (E.D. Pa. Mar. 4, 1993) (finding claim for tortious with contractual relationships not equivalent to copyright claim).

In determining whether a rare instance of preemption applies, courts consider whether the plaintiff is claiming that the contract was breached by the ***mere*** act of reproduction, performance, distribution or display, or whether there are contractual restrictions on how the copyrighted work is used that constitute additional element not equivalent to a copyright action. *See Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079 (9th Cir. 2005) (prohibition on specific use of software, to create a bitstream, was an extra element); *Nat'l Car Rental Sys., Inc. v. Comput. Assocs. Int'l, Inc.*, 991 F.2d 426 (8th Cir. 1993) (restriction on use of licensed program for processing of data for third parties was an extra element); *Bowers*, 320 F.3d at 1324 (restriction on reverse engineering was an extra element). Here, the conduct and contractual provisions go well beyond the rights in the Copyright Act, and provide the necessary extra element. *See supra* 9–11, 15–16. In particular, the conduct that violated Plaintiffs' terms of service consisted of (1) ███████████████████████; (2) ███████████████████████████████████████████████; and (3) ████████████. *Id.*; *see* Ex. 79 (TR-0002844) (Westlaw Terms and Conditions). Given this additional illicit conduct, the claim is not preempted as a matter of law.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that their motion for summary judgment on tortious interference with contract and copyright preemption be granted in its entirety.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*
_____

OF COUNSEL:

Dale M. Cendali
Joshua L. Simmons
Eric A. Loverro
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Miranda D. Means
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
(617) 385-7500

December 22, 2022

Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com

*Attorneys for Plaintiffs and Counter-Defendants
Thomson Reuters Enterprise Centre GmbH and
West Publishing Corporation*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on December 22, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on December 22, 2022, upon the following in the manner indicated:

David E. Moore, Esquire                                    *VIA ELECTRONIC MAIL*
Bindu Palapura, Esquire
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE  19801
*Attorneys for Defendant and Counterclaimant*

Mark A. Klapow, Esquire                                   *VIA ELECTRONIC MAIL*
Lisa Kimmel, Esquire
Crinesha B. Berry, Esquire
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, DC  20004
*Attorneys for Defendant and Counterclaimant*

Gabriel M. Ramsey, Esquire                               *VIA ELECTRONIC MAIL*
Jacob Canter, Esquire
Warrington Parker, Esquire
CROWELL & MORING LLP
3 Embarcadero Center, 26th Floor
San Francisco, CA  94111
*Attorneys for Defendant and Counterclaimant*


                                        */s/ Michael J. Flynn*
                                        _____
                                        Michael J. Flynn (#5333)