IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION, | ) ) ) ) ) | |
| Plaintiffs and Counterdefendants, | ) ) ) | C.A. No. 20-613 (SB) |
| | ) | REDACTED - PUBLIC VERSION |
| v. | ) ) | |
| ROSS INTELLIGENCE INC., | ) ) | |
| Defendant and Counterclaimant. | ) ) | |

**PLAINTIFFS' OPENING BRIEF IN SUPPORT OF THEIR
MOTION FOR PARTIAL SUMMARY JUDGMENT (NO. 3)
<u>ON FAIR USE AND OTHER DEFENSES</u>**

<div style="float:right">

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com

*Attorneys for Plaintiffs Thomson Reuters
Enterprise Center GmbH and West Publishing
Corporation*

</div>

OF COUNSEL:

Dale M. Cendali
Joshua L. Simmons
Eric A. Loverro
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Miranda D. Means
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
(617) 385-7500

December 22, 2022

i

## <u>TABLE OF CONTENTS</u>

SUMMARY OF THE ARGUMENT ............................................................................... 1

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS............................ 2

STATEMENT OF FACTS ....................................................................................... 3

ARGUMENT ................................................................................................... 5

I.     ROSS'S USE OF THE WESTLAW CONTENT WAS NOT FAIR................................ 5

       A.     Factor One: ROSS's Commercial Purpose of Creating a Replacement for
              the Westlaw Platform ..................................................................... 5

              1.     ROSS's Use was Highly Commercial ........................................ 6

              2.     ROSS's Purpose was not Transformative ................................... 7

              3.     ROSS Acted in Bad Faith ...................................................... 10

       B.     Factor Two: The Westlaw Content is Creative...................................... 11

       C.     Factor Three: ROSS Copied Substantial Portions of the Westlaw Content ......... 12

       D.     Factor Four: ROSS Harmed the Market for the Westlaw Content .................... 13

II.    ROSS'S OTHER DEFENSES ARE MERITLESS ....................................... 19

       A.     ROSS Cannot Prove Consent, Waiver, Laches, or Estoppel ..................... 19

       B.     ROSS's Cannot Prove Tort of Another .............................................. 19

       C.     ROSS Cannot Prove Lack of Ownership............................................ 20

       D.     ROSS Cannot Prove Authorized Use, License, Consent, or Acquiescence ......... 20

       E.     The First Sale Doctrine is Inapplicable Here ..................................... 20

       F.     The First Amendment is Not a Separate Defense Here ........................... 20

III.   CONCLUSION................................................................................ 20

# <u>TABLE OF AUTHORITIES</u>

**Cases**

**Page(s)**

*A&M Recs., Inc. v. Napster, Inc.*,
   239 F.3d 1004 (9th Cir. 2001) ................................................................6

*Am. Geophysical Union v. Texaco Inc.*,
   60 F.3d 913 (2d Cir. 1994)........................................................6, 7, 8, 9

*In re Bocchino*,
   794 F.3d 376 (3d Cir. 2015)..................................................................19

*Campbell v. Acuff-Rose Music, Inc.*,
   510 U.S. 569 (1994).........................................................................7, 13

*Capitol Recs., LLC v. ReDigi Inc.*,
   910 F.3d 649 (2d Cir. 2018)............................................................14, 20

*Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.*,
   150 F.3d 132 (2d Cir. 1998).................................................... *passim*

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986).................................................................................4

*Dr. Seuss Enters., L.P. v. ComicMix LLC*,
   983 F.3d 443 (9th Cir. 2020) ................................................................14

*Eldred v. Ashcroft*,
   537 U.S. 186 (2003).................................................................................18

*FameFlynet, Inc. v. Jasmine Enters., Inc.*,
   344 F. Supp. 3d 906 (N.D. Ill. 2018) ...................................................15

*FMC Corp. v. Control Sols., Inc.*,
   369 F. Supp. 2d 539 (E.D. Pa. 2005) ...................................................11

*Fox News Network, LLC v. TVEyes, Inc.*,
   883 F.3d 169 (2d Cir. 2018)............................................11, 12, 16, 17

*Harper & Row, Publ'rs, Inc. v. Nation Enters.*,
   471 U.S. 539 (1985)............................................................. *passim*

*L.A. News Serv. v. KCAL-TV Channel 9*,
   108 F.3d 1119 (9th Cir. 1997) .............................................................10

*Love v. Kwitny*,
  706 F. Supp. 1123 (S.D.N.Y. 1989) ..................................................................................11

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) ..........................................................................................................5

*McGucken v. Pub Ocean Ltd.*,
  42 F. 4th 1149 (9th Cir. 2022) ...........................................................................................9

*Monge v. Maya Mags., Inc.*,
  698 F.3d 1164 (9th Cir. 2012) ..............................................................................5, 15, 17

*Murphy v. Millennium Radio Grp. LLC*,
  650 F.3d 295 (3d Cir. 2011)........................................................................................ *passim*

*Novartis Pharms. Corp. v. EON Labs Mfg., Inc.*,
  206 F.R.D 396 (D. Del. 2002) .........................................................................................19

*Novus Franchising, Inc. v. Taylor*,
  795 F. Supp. 122 (M.D. Pa. 1992) ...................................................................................19

*NXIVM Corp. v. Ross Institute*,
  364 F.3d 471 (2d Cir. 2004)............................................................................................10

*Oasis Publ'g. Co. v. West Publ'g. Co.*,
  924 F. Supp. 918 (D. Minn. 1996) ....................................................................................7

*Davis v. Gap, Inc*,
  246 F.3d 152 (2d Cir. 2001)............................................................................................17

*Pac. & S. Co. Inc. v. Duncan*,
  744 F.2d 1490 (11th Cir. 1984) .........................................................................................7

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
  572 U.S. 663 (2014)........................................................................................................19

*Princeton Univ. Press v. Mich. Document Servs., Inc.*,
  99 F.3d 1381 (6th Cir. 1996) ..........................................................................................18

*Rogers v. Koons*,
  960 F.2d 301 (2d Cir. 1992).........................................................................................6, 10

*Soc'y of Holy Transfig. Monastery, Inc. v. Gregory*,
  689 F.3d 29 (1st Cir. 2012).........................................................................................8, 13

*TD Bank N.A. v. Hill*,
  928 F.3d 259 (3d Cir. 2019).............................................................................................5

*TD Bank N.A. v. Hill*,
   No. 12 Civ. 7188, 2015 WL 4523570 (D.N.J. Jul. 27, 2014) ..................................................11

*Twin Peaks Prods., Inc. v. Publ' Int'l, Ltd.*,
   996 F.2d 1366 (2d Cir. 2018) ..................................................................................................20

*Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*,
   342 F.3d 191 (3d Cir. 2003) ..........................................................................................5, 7, 8, 9

*Wall Data Inc. v. L.A. Cnty. Sheriff's Dep't*,
   447 F.3d 769 (9th Cir. 2006) ...........................................................................................5, 11

*Warner Bros. Ent. Inc. v. RDR Books*,
   575 F. Supp. 2d 513 (S.D.N.Y. 2008) .....................................................................................13

*Weissmann v. Freeman*,
   868 F.2d 1313 (2d Cir. 1989) ...........................................................................................8, 12

*Worldwide Church of God v. Phila. Church of God, Inc.*,
   227 F.3d 1110 (9th Cir. 2000) .....................................................................................5, 8, 18

## Statutes

17 U.S.C. § 107(1) ...........................................................................................................5

17 U.S.C. § 107(2) .........................................................................................................11

17 U.S.C. § 107(3) .........................................................................................................12

17 U.S.C. § 107(4) .........................................................................................................13

17 U.S.C. § 109(a) .........................................................................................................20

## Rules

Fed. R. Civ. P. 56(a) ........................................................................................................4

## Other Authorities

Restatement (Second) of Torts § 443..............................................................................19

v

Thomson Reuters Enterprise Centre GmbH and West Publishing Corp. (together, "Plaintiffs") respectfully move for summary judgment on ROSS's fair use defense and other affirmative defenses.[1]

## SUMMARY OF THE ARGUMENT

This is a case in which ROSS, a for-profit company, after being expressly denied a license, copied copyrighted expression for the same purpose as its author, and used it to build a product that directly competed with and substituted for the author's product.  ROSS copied Plaintiffs' original content, including their proprietary West Key Number System (the "WKNS"), case headnotes (the "West Headnotes"), and other editorial enhancements (together, the "Westlaw Content"), without adding new expression, because it served as an excellent synthesis and organization of the law that ROSS needed to train its artificial intelligence ("AI").  Copying from Plaintiffs was cheaper than creating the content from scratch.  And ROSS aimed to better compete with and ultimately *replace* Plaintiffs' Westlaw legal research platform ("Westlaw") with the ROSS Platform.  After being expressly denied a license to Westlaw because ROSS was Plaintiffs' competitor, ROSS contracted with a third party, LegalEase, to obtain the content surreptitiously, knowing it violated the conditions of LegalEase's license to use such content. ROSS's flagrant disregard for Plaintiffs' rights cannot be excused by its various defenses.

Under binding precedent, ROSS's copying of the Westlaw Content is not fair use, as each of the four fair use factors weighs definitively against it as a matter of law.  *First*, on purpose and character of ROSS's use (Factor 1), ROSS copied the Westlaw Content for the same purpose as Plaintiffs and without transforming the Westlaw Content.  ROSS copied for commercial gain, to

---

[1]     Plaintiffs move for summary judgment on copyright preemption in their Partial Motion for Summary Judgment on Tortious Interference with Contract, as those issues and facts are related. D.I. 252 (Pls.' Mot. for S.J. No. 2).

create a competing substitute for Westlaw.  And ROSS acted in bad faith by illicitly obtaining the content through LegalEase, knowing it was a violation of Plaintiffs' policy and terms of service. **Second**, on the nature of the work (Factor 2), creation of the Westlaw Content required substantial creativity, as demonstrated by the fact that another competitor, LexisNexis, organizes and synthesizes the law differently.  **Third**, on the substantiality of the copying (Factor 3), ROSS's copying was both qualitatively and quantitatively excessive.  **Fourth**, on harm to the actual and potential market for and value of the original (Factor 4), ROSS harmed the market and value for the Westlaw Content, including by: (a) competing in the market for the original work by actively replacing customers' Westlaw subscriptions; (b) ███████████████████████████ ███████████████████████████████████; and (c) impeding Plaintiffs' ability to license the Westlaw Content and derivatives thereof as training data.  This harm would be even greater if ROSS's conduct were to become widespread.  To allow such copying by a commercial competitor would seriously disincentivize the creation and distribution of similar works in the future, undermining the Constitutional purpose of copyright law and hurting the public's interest in the creation of legal research platforms.  Taken together, no reasonable jury could find fair use, and Plaintiffs are thus, entitled to summary judgment as a matter of law.

Equally deficient as a matter of law are ROSS's other miscellaneous defenses, specifically First Amendment, First Sale Doctrine, Consent/Waiver/Laches/Estoppel, Lack of Ownership, Tort of Another, and Authorized Use/License/Consent/Acquiescence.  ROSS has not pursued these defenses and does not have evidence that they apply.  ROSS refused to drop these defenses when asked.  Thus, Plaintiffs had no choice but to move for summary judgment on them as well.

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS

Plaintiffs commenced this lawsuit on May 6, 2020, asserting copyright infringement and tortious interference with contract.  D.I. 1 (Compl.).  ROSS filed its Second Amended Answer to

Plaintiffs' Complaint asserting twenty-three defenses.  D.I. 225 ("SAA") 7–11.  Expert discovery closed on November 11, 2022, and discovery is now complete.

## STATEMENT OF FACTS

Plaintiffs' legal research platform, Westlaw, offers subscribers access to a large collection of editorially enhanced judicial opinions arranged within an original classification system, the West Key Number System (the "WKNS").  Declaration of Laurie Oliver, dated December 21, 2022 ("Oliver Decl.") ¶¶ 8–11.  West's attorney-editors create editorial enhancements, including synopses of cases and West Headnotes, which identify and synthesize key issues and holdings.  *Id.* ¶ 4.  West's classifiers assign those West Headnotes and cases to a West Key Number, integrating both into the WKNS.  *Id.* ¶ 9.  West Headnotes and the WKNS both reflect decades of creative choices about how to organize, classify, structure, and synthesize the law.  *Id.* ¶¶ 9, 12.  The Westlaw Content, ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████.  Ex. 1[2] (Al-Kofahi Tr.) 11:13–17:5, 37:20–41:15, 44:3–45:15; Ex. 12 (Moulinier Tr.) 72:13-74:10, 74:11-13, 104:18–20, 108:19–24, 143:6–11; Ex. 22 (Krein Op. Rpt.) at 34–37; Ex. 100 (TR-0884952) ("Dynamic System Overview") (███████████████████████).  █████████████████████████████████████████.  Ex. 2 (Arruda Tr.) 39:1–3.  (Q: "███████████████████████████" A: "█████").  ███████████████████████ ███████████████████████████████████████████████.  Ex. 62 (ROSS-009501052); Ex. 2 (Arruda Tr.) 11:18–12:4, 115:9–11; 114:25–115:2; Ex. 15 (van der Heijden 30(b)(6) Tr.) 55:21–56:20 (Q: "██████████████████████████████ ████████" A: ███████████████████████").  ███████████████████████████

---

[2]   All exhibits are attached to the Declaration of Miranda D. Means, submitted concurrently.

[redacted]. Ex. 13 (Ovbiagele Tr.) 48:23–50:9; Ex. 69 (ROSS-010271831). Specifically, [redacted]. Ex. 2 (Arruda Tr.) 275:23–276:12. [redacted]. Ex. 50 (ROSS-003390563) (Emails between T. Hamilton and M. Pritchard); Ex. 26 (ROSS's Supp. Resps. Pls.' 1st Interrogs.) No. 11.; Ex. 101 (TR-0908413) (Vetting Customers).

ROSS [redacted]. Ex. 45 (ROSS-000304769). ROSS [redacted]. Ex. 45 (ROSS-000304769); Ex. 30 (LEGALEASE-00078065) (Best Practices Guide for ROSS Intelligence).[3] [redacted]. Ex. 19 (Frederickson-Cross Op. Rpt.) at 42; D.I. 250. [redacted]. Ex. 24 (Malackowski Op. Rpt.) at 53; Ex. 103 (TR-0836004); Ex. 5 (Cox Tr.) 246:8–10. [redacted]. Ex. 19 (Frederiksen-Cross Op. Rpt.) ¶¶ 25–27; Ex. 17 (Branting Op. Rpt.) ¶¶ 31–36, 38; Ex. 61 (ROSS-003658597); Ex. 57 (ROSS-003419784).

---

[3] The scope and details of the copying are explained further in Plaintiffs' Partial Motion for Summary Judgment on Copyright Infringement D.I. 250 (Pls.' Mot. for S.J. No. 1).

## ARGUMENT

Summary judgment is proper where there is "no genuine dispute as to any material fact" and the movant "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant informs the court "of the basis for its motion" and the matter "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Then, the non-moving party must present evidence establishing disputed issues as to material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

## I.    ROSS'S USE OF THE WESTLAW CONTENT WAS NOT FAIR

Courts routinely decide summary judgment in favor of the copyright holder where a defendant's use is not fair as a matter of law. *See, e.g.*, *TD Bank N.A. v. Hill*, 928 F.3d 259, 278 (3d Cir. 2019) (commercial use of work that hurt market for the original was not fair use as a matter of law); *Worldwide Church of God v. Phila. Church of God, Inc.*, 227 F.3d 1110, 1120 (9th Cir. 2000) (finding no fair use as a matter of law); *Wall Data Inc. v. L.A. Cnty. Sheriff's Dep't*, 447 F.3d 769, 782 (9th Cir. 2006) (same); *Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.*, 150 F.3d 132, 146 (2d Cir. 1998) (same); *cf. Murphy v. Millennium Radio Grp. LLC*, 650 F.3d 295, 308 (3d Cir. 2011) (finding all four fair use factors favored plaintiff); *Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*, 342 F.3d 191, 198 (3d Cir. 2003) (granting preliminary injunction where three factors favored fair use). Based on the undisputed facts, no reasonable trier of fact could conclude that ROSS's use was fair, as each of the four statutory factors weighs against fair use.

### A.    Factor One: ROSS's Commercial Purpose of Creating a Replacement for the Westlaw Platform

The first statutory factor, "purpose and character of the use," 17 U.S.C. §107(1), requires consideration of three main subfactors: (1) commercial use; (2) transformativeness; and (3) bad faith. *See Monge v. Maya Mags., Inc.*, 698 F.3d 1164, 1173–77 (9th Cir. 2012). All three

subfactors weigh against fair use here.

                1.      <u>ROSS's Use was Highly Commercial</u>

Commercial use weighs strongly against a finding of fair use. *Harper & Row, Publ'rs, Inc. v. Nation Enters.*, 471 U.S. 539, 562 (1985) (considering whether the user stands to profit from the exploitation of copyrighted material "without paying the customary price"); *see also Video Pipeline*, 342 F.3d at 198 ("If a new work is used commercially rather than for a nonprofit purpose, its use will less likely qualify as fair." (abrogated on other grounds)); *Rogers v. Koons*, 960 F.2d 301, 309 (2d Cir. 1992) (defendant's "substantial profit" and "intentionally exploitive" use weighed against fair use). "[C]ourts will not sustain a claimed defense of fair use . . . when the copier directly and exclusively acquires conspicuous financial rewards from its use of the copyrighted material." *Am. Geophysical Union v. Texaco Inc.*, 60 F.3d 913, 922 (2d Cir. 1994).



. Ex. 5 (Cox Tr.) 115:15–21; Ex. 3 (Branting Tr.) 61:5–9, 79:21–80:1 (                     ); Ex. 15 (van der Heijden 30(b)(6) Tr.) 90:4–6 (admitting ROSS                      ); Ex. 18 (Cox 2d. Rbt. Rpt.) ¶ 58 (                     ).

. *Supra* 3–4; Ex. 22 (Krein Op. Rpt.) ¶¶ 82, 100.[4] Moreover,

Ex. 62 (ROSS-009501052).

---

[4]      Specifically, the

. Ex. 15 (van der Heijden 30(b)(6) Tr.) 286:6–18.

In addition, a commercial use can be demonstrated where the party copies to save "the expense of purchasing authorized copies." *A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1015 (9th Cir. 2001) (music file sharing was commercial).  Here, ROSS ██████████ ████████████████████████████████████████████████████████ ████████████ Ex. 13 (Ovbiagele Tr.) 227:2–22.  The economic advantage ROSS gained by avoiding the more costly process of creating its own original data demonstrates the commerciality of its purpose.  *See Harper*, 471 U.S. at 562; *see also Am. Geophysical Union,* 60 F.3d at 922 (finding that researchers at for-profit laboratory gained indirect economic advantage by photocopying copyrighted scholarly articles).  ROSS's commercial use of the Westlaw Content militates "strongly against a finding of fair use."  *See Pac. & S. Co. Inc. v. Duncan*, 744 F.2d 1490, 1496 (11th Cir. 1984) ("unabashedly commercial" use was not fair use, noting that the defendant could not "hide the fact that profit is its primary motive."); *see also Murphy,* 650 F.3d at 308 (finding commerciality weighed against a finding of fair use).

### 2.    ROSS's Purpose was not Transformative

A work is transformative when it "adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message," rather than merely "supersed[ing] the objects of the original creation."  *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569 (1994) (internal quotations omitted); *accord Harper*, 471 U.S. at 562 ("supplanting" the original was not fair use).  ROSS's use was not transformative as a matter of law for three reasons.

***First***, ROSS's purpose was to create an avowed substitute for Westlaw.  Copying for purposes of creating a product that competes with the original is not transformative.  *See Video Pipeline*, 342 F.3d at 199 (finding clips likely to serve as substitutes for original were not transformative); *Oasis Publ'g. Co. v. West Publ'g. Co.,* 924 F. Supp. 918, 927 (D. Minn. 1996) (finding no fair use where business plans showed "directly competitive" nature of infringing

products with West products). ████████████████████████████████████

███████████████████████████████████████████████████. Ex. 2

(Arruda Tr.) 115:9–11; 114:25–115:2; Ex. 15 (van der Heijden 30(b)(6) Tr.) 55:21–56:20, 56:3–

20 (Q: "███████████████████████████████████" A: "█████"), 74:9–

75:11; Ex. 62 (ROSS-009501052).  Accordingly, ROSS's purpose was not transformative.

**Second**, ROSS used the Westlaw Content for the same purpose as Plaintiffs.  Where the

use in question "is for the same intrinsic purpose as" the copyright holder's purpose, that fact

"seriously weakens a claimed fair use" and undermines any claim to transformativeness.

*Worldwide Church*, 227 F.3d at 1117 (*quoting Weissmann v. Freeman*, 868 F.2d 1313, 1324 (2d

Cir. 1989)); *see Am. Geophysical Union.,* 60 F.3d at 922 (contrasting "untransformed duplication,"

which is "likely to be used simply for the same intrinsic purpose as the original," with

transformative use).  Here, for both ROSS and Plaintiffs, ████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████. *Supra* 3–4.  Indeed, as

Thomson Reuters' VP of Applied Search for AI, Isabelle Moulinier, explained, Plaintiffs (like

ROSS) ████████████████████████████████████████████████████████

████████████████████████. *Supra* 3; Ex. 3 (Branting Tr.) 108:5–109:21.  ROSS's use of

Plaintiff's original content for the "same purpose and benefit" as Plaintiffs is not transformative.

*See Soc'y of Holy Transfig. Monastery, Inc. v. Gregory*, 689 F.3d 29, 60 (1st Cir. 2012) (finding

use of translations for religious practice and education, the same purpose as the monastery holding

the copyrights, was not fair).

**Third**, ROSS did not add new expression, meaning, or message to the Westlaw Content.

In *Castle Rock*, the Second Circuit found that a Seinfeld quizbook, even though it contained

"incorrect multiple-choice answers," was not transformative where "every question and correct answer had its source in the plaintiff's original work," concluding it did not create "new information, new aesthetics, new insights and understandings." *Castle Rock*, 150 F.3d at 136 (finding quizbook not transformative). Similarly, in *Video Pipeline*, the Third Circuit rejected the argument that incorporating the plaintiffs' works into a database for their supposed informational value was transformative where the use "involved no new creative ingenuity." *Id.* at 200; *Murphy*, 650 F.3d at 307 (the "absence of any broader commentary—whether explicit or implicit— significantly undercuts [a defendant's] argument that [its] use gave any new meaning to the" original work."); *McGucken v. Pub Ocean Ltd.*, 42 F. 4th 1149, 1158–60 (9th Cir. 2022) ("To be transformative, the infringing use must bring about a much starker change in expression," beyond merely "recontextualizing" or "repackaging").

As in *Castle Rock* and *Video Pipeline*, ROSS's use added nothing new or creative here. ROSS has touted it created a new research platform, but that is irrelevant, because for ROSS, the "value generated by the secondary use" of the Westlaw Content was "little or nothing more than the value that inheres in the original." *See Am. Geophysical Union.*, 60 F.3d at 922. ████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████.[5]   *See* Ex. 13 (Ovbiagele Tr.) 49:7–16, 60:15–24; 83:1–18; 86:14–88:2 ((30(b)(6) witness testifying that ████████████████████████████); Ex. 15 (van der Heijden 30(b)(6) Tr.) 424:4–6.   That is precisely what makes the Westlaw Content

---

[5] ████████████████████████████████████████

██████████████████████. Ex. 15 (van der Heijden 30(b)(6) Tr.) 239:17–19. ██████████

████████████████████████████████████████. Ex. 22 (Krein Op. Rpt.) ¶ 149.



expressive— ██████████████████████████████████████████

██████████████████████████████████████████.

*See* Ex. 22 (Krein Op. Rpt.) ¶¶ 103–114; Ex. 15 (van der Heijden 30(b)(6) Tr.) 387:14–23 (ROSS's

30(b)(6) witness testifying that ████████████████████████████████████

██████████████████████████).  ROSS copied Plaintiffs' expression, what made Westlaw

different from other competitors like Lexis: ████████████████████████████

██████████████████████████. *Supra* 3–4; Ex. 8 (Leiter

Tr.) 38:20–39:16 (testifying about ██████████████████).

Transformativeness and commerciality go hand-in-hand.  *See Murphy*, 650 F.3d at 307

(where use was "far from transformative" commerciality was even "more important"). The fact

that ROSS's use was not transformative makes the commerciality of its use all the more

determinative, and weighs heavily against fair use.

### 3.   ROSS Acted in Bad Faith

Also relevant to the first fair use factor is "the propriety of the defendant's conduct."

*Harper*, 471 U.S. at 539 ("Fair use presupposes 'good faith' and 'fair dealing.'") (internal citations

omitted); *Rogers v. Koons*, 960 F.2d 301, 309 (2d Cir. 1992) (finding "action of taring the

copyright mark off" the plaintiffs' work was bad faith). Obtaining a copyrighted work illicitly, as

ROSS did here, constitutes bad faith and weighs against a finding of fair use.  *See Harper*, 471

U.S. at 563; *NXIVM Corp. v. Ross Institute*, 364 F.3d 471, 475, 478 (2d Cir. 2004) (holding that it

is bad faith to use a work knowing access was unauthorized or was "derived from a violation of

law or breach of duty" and only finding fair use due to defendant's critical analysis of quoted

material).  In *L.A. News Serv. v. KCAL-TV Channel 9*, for example, the Ninth Circuit found bad

faith where the defendant requested a license, was refused one, and then obtained a copy from a

third party rather than paying the requisite fee.  108 F.3d 1119, 1122 (9th Cir. 1997).

Likewise, here, ROSS tried to license Westlaw, but it was told in no uncertain terms that Westlaw subscriptions are not granted to Plaintiffs' competitors like ROSS.  *Supra* 4.  Knowing this, ROSS illicitly copied the Westlaw Content by hiring a third party, LegalEase, to use its Westlaw subscription in a manner specifically prohibited by Plaintiffs.  *Supra* 4; *see* D.I. 252 (Pls.' Mot. for S.J. No. 2).

As ROSS's use was commercial, for the same purpose as Plaintiffs, and in bad faith, factor one weighs against fair use as a matter of law.

### B.    Factor Two: The Westlaw Content is Creative

The second fair use factor is the nature of the copyrighted work, including whether the work is expressive or creative.  17 U.S.C. § 107(2)*.*  This factor may weigh against fair use even for factual works, where such works are creative.  *See TD Bank N.A. v. Hill*, No. 12 Civ. 7188, 2015 WL 4523570, at \*18 (D.N.J. Jul. 27, 2014) (second factor cut for plaintiff even where work was factual in nature); *FMC Corp. v. Control Sols., Inc.*, 369 F. Supp. 2d 539, 579 (E.D. Pa. 2005) ("[C]ourts do not hesitate to deny the fair use defense even when the work is nonfiction.") (internal quotations and citations omitted); *see also Fox News Network, LLC v. TVEyes, Inc.*, 883 F.3d 169, 178 (2d Cir. 2018) (rejecting argument that, since facts are not copyrightable, the factual nature of a creative compilations favors a finding of fair use); *Love v. Kwitny*, 706 F. Supp. 1123, 1134 (S.D.N.Y. 1989) (finding fair use defense inappropriate in a fact-based work where author extensively quoted the copyrighted work).  Moreover, in assessing this factor, courts consider whether plaintiff made a "substantial investment of time and labor" in creating the work "in anticipation of a financial return."  *Wall Data,* 447 F.3d at 769.

The Westlaw Content includes many creative elements, such as the selection and summarization of key points of law and the organization of cases and West Headnotes within the West Key Number System.  *Supra* 3; Oliver Decl. ¶ 6; Ex. 9 (Lindberg Tr.) 74:9–22, 75:21–76:9,

116:14–119:6 ("█████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████████████████████████"). Plaintiffs ████████████

████████████████████████████████████████████████████████████

███████████████████████. Oliver Decl. ¶¶ 9–12. Thus, although this factor "has rarely played a

significant role in the determination of a fair use dispute," *Fox News*, 883 F.3d at 178, it

nonetheless weighs against fair use here. *See Harper*, 471 U.S. at 556–57 (finding second factor

weighed against fair use where work was creative); *Weissmann*, 868 F.2d at 1325 (holding that

scientific nature of original work did not weigh this factor in favor of fair use).

### C.  Factor Three: ROSS Copied Substantial Portions of the Westlaw Content

The third statutory fair use factor considers "the amount and substantiality of the portion

used in relation to the copyrighted work as a whole." 17 U.S.C. § 107(3). This inquiry "must

focus upon whether '[t]he extent of [the] copying' is consistent with or more than necessary to

further 'the purpose and character of the use.'" *Castle Rock*, 150 F.3d at 144. For example, in

*Castle Rock*, the secondary use involved the creation of 643 trivia questions based on different

episodes of the television program *Seinfeld*—although the entirety of the television series was not

copied, the court found that the third factor weighed against fair use because the defendant used

more than necessary to serve its claimed transformative purpose of "commentary," indicating its

true purpose was not in fact transformative. *Id.* Courts also make a qualitative analysis,

considering whether the copier took "the heart" of the work. *Harper*, 471 U.S. at 544.

*First*, the undisputed facts show that ████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████



████████. ROSS ████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████. *Supra* 4. ████████████████████████████████████

████████████████████████████████. Ex. 9 (Lindberg Tr.) 70:19-71:2. LegalEase ████████

████████████████████████████████████████████████████. Ex. 103 (TR-0836004); Ex. 88 (TR-0039808); Ex. 7 (Hafeez Tr.) 88:13–89:20 93:9–94:3.

**Second**, this excessive copying weighs against fair use because it was not reasonably necessary to serve a transformative purpose. *See Warner Bros. Ent. Inc. v. RDR Books*, 575 F. Supp. 2d 513, 548 (S.D.N.Y. 2008). ROSS's purpose was not transformative, and in any event, ROSS took more than it needed to serve its purpose; the testimony of ROSS executive, Jimoh Ovbiagele, shows that ███████████████████████████████████████████████████ ████████████████████████████████████████████████████████████" Ex. 26 (Supp. Resps. to Interrog. No. 11) at p. 63; Ex. 13 (Ovbiagele Tr.) 186–188. Indeed, Mr. Ovbiagele testified that, ████████████████████████████████████████████ ██████████████████████████████████ Ex. 13 (Ovbiagele Tr.) 186–188.

**Third**, ROSS took the "heart" of the Westlaw Content—Plaintiffs' unique synthetization and organization of the law in the WKNS and the West Headnotes—which further weighs this factors against fair use. *See Soc'y of Holy Transfig.*, 689 F.3d at 63 (copying of part of greater works, but "which alone may be qualitatively significant" was not fair use). Taken together, this factor weighs against fair use.

### D.    Factor Four: ROSS Harmed the Market for the Westlaw Content

The fourth factor considers "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4); *Harper*, 471 U.S. at 566. Relevant to this analysis is not only the harm to actual or potential markets for the original, but also harm to the market for

13

potential derivatives, including "those that creators of original works" would "license others to develop." *Campbell*, 510 U.S. at 592.  Courts also assess "whether unrestricted and widespread conduct of the sort engaged in by the defendant" would harm the potential market for the original. *Murphy*, 650 F.3d at 308; *see also Harper*, 571 U.S. at 568.

The undisputed evidence shows that ROSS's use of the Westlaw Content harmed the market for and value of the Westlaw Content in at least three different ways.  ***First***, ROSS used the Westlaw Content to create a substitute for Westlaw.  "When a secondary use competes in the rightsholder's market as an effective substitute for the original, it impedes the purpose of copyright to incentivize new creative works by enabling their creators to profit from them." *Capitol Recs., LLC v. ReDigi Inc.*, 910 F.3d 649, 662 (2d Cir. 2018) (focusing on whether the copy "brings into the marketplace a competing substitute for the original"); *see also Harper*, 471 U.S. at 550.  In *Dr. Seuss Enters., L.P. v. ComicMix LLC*, for example, the court found that the fact that defendants "intentionally targeted and aimed to capitalize on the same" market as the plaintiff was evidence of market harm.  983 F.3d 443, 460 (9th Cir. 2020) (considering evidence of intent to market derivative to similar audiences as original in weighing the fourth factor against fair use).

That is precisely what ROSS did here. It is undisputed that 

. *Supra* 3–4, 5. ROSS's CEO, Andrew Arruda, admitted

. Ex. 2 (Arruda Tr.) 114:21–24 (Q:

" A: " "). And ROSS

. Ex. 2 (Arruda

Tr.) 115:9-11; 114:25-115:2; Ex. 15 (van der Heijden 30(b)(6) Tr.) 55:21-56:20 (Q: "

" A: "),

56:3–20 (Q: "███████████████████████████████" A: "███"); Ex. 56 (ROSS-003395895) (███████████████████████████████); Ex. 67 (ROSS-010099622) ("███████████████████████████████████ ██████████████"); Ex. 58 (ROSS-003428727).  Internal documents show that ROSS ██████████████████████████████████.  Ex. 47 (ROSS-003227570) (buyout plan). Moreover, ███████████████████████████.  ROSS's executive and 30(b)(6) witness, Tomas van der Heijden confirmed that various ROSS's customers █████████████████████████████████.  Ex. 15 (van der Heijden 30(b)(6) Tr.) 364:16–19; Ex. 98 (TR-0521595) (lost opportunity to ROSS).

*Second*, ████████████████████████████████████ ███████.  Copyright law recognizes that exclusivity and, analogously, confidentiality can contribute to the value of a copyrighted work, and that depriving an author of that exclusivity can decrease the value thereof.  *See Harper*, 471 U.S. at 543 (exclusivity factored into the licensing fee for the work); *FameFlynet, Inc. v. Jasmine Enters., Inc.*, 344 F. Supp. 3d 906, 913 (N.D. Ill. 2018) (loss of ability to control a photographs exclusivity diminished its value); *Monge*, 688 F.3d at 1182 (confidentiality contributed to the value of the work).

Part of what makes the Westlaw Content valuable is ████████████████████ ██████████████████████████████████████████████████████ ███████████████████████.  *See* Oliver Decl. ¶ 13; Ex. 10 (Malackowski Tr.) 42:3–24 ██████████████████████████████████████████████████████ ████████████████████████████████████████  ROSS itself recognized ███ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████



█████. Ex. 13 (Ovbiagele Tr.) at 169:4–170:19. ROSS ████████████████████████████

████████████████████████████████████████████████████

████████████████████ *Id.* Thus, ███████████████████████████████

████████████████████████████████████████████████████

████████████████████████ Ex. 10 (Malackowski Tr.) 76:5-77:22. This weighs factor four against fair use.

 ***Third***, ROSS's copying impedes Plaintiffs' ability to license the Westlaw Content and derivative works like the Bulk Memos to third parties in both the traditional and derivative markets therefor. As an initial matter, █████████████████████████████████

██████████████████████████████████████. Ex. 5 (Cox Tr.) 55:14–56:11 (admitting that "████████████████████████████" and that a licensor "████

███████████████████" for a competitor). ██████████████████████████████

████████████████████████████████████████████████████

██████████. *Supra* 3–4. ███████████████████████████████████

████████████████████████████████████. *Supra* 3, 8; Ex. 25 (Malackowski Rbt. Rpt.) at 24 (█████████████████████████████████). In *Fox News*, the court found that the fact that the defendant's customers were willing to pay for the infringing use showed there was a "plausibly exploitable market" therefor. 883 F.3d at 180 (since the ability to use the content was "clearly of value" to the defendant it "should be willing to pay"). ███████████████████████████████████████

████████████████████████████████████████████████████

█████████. Ex. 25 (Malackowski Rbt. Rpt.) at 21; Ex. 14 (Shafik Tr.) 122; Ex. 48 (ROSS-003382388) (data spend). ██████████████████████████████████████████



████████████████████████████████████████████████

███████████████████████. Ex. 25 (Malackowski Rbt. Rpt.) at 25; Ex. 22 (Krein Op. Rpt.) 78–

89 (████████████████████████████████████████████). ROSS's

own expert, Dr. Alan Cox, admitted █████████████████████████████

████████████████████ Ex. 5 (Cox Tr.) 172:5–12, 175:8–19 (testifying █████████████

██████████████████████████████████████████████).

In light of the overwhelming evidence of an existing and potential licensing market for the

Westlaw Content, ROSS's infringing use thereof deprived Plaintiffs of licensing revenues from

ROSS. *See Fox News*, 883 F.3d at 180 (by using content without payment, TVEyes was depriving

of "licensing revenues from TVEyes"). ████████████████████████████████

████████████████████████████████████████████████

███████████████████. Ex. 10 (Malackowski Tr.) 76:5–77:22 (describing ████████████

████████████████████████████████████████████████

██████████████████████████); *see Davis v. Gap, Inc*, 246 F.3d 152,

175–76 (2d Cir. 2001) (freely taking a copyrighted work allowed defendant to avoid "paying the

customary price," that plaintiff "was entitled to charge" for use of work, and that, as a result,

plaintiff "suffered market harm through his loss of the royalty revenue to which he was reasonably

entitled in the circumstances, as well as through the diminution of his opportunity to license to

others").[6]   And given the existence of a potential market, if ROSS's free use of the Westlaw

---

[6]      Plaintiffs' choice not to sell to ***competitors*** does not mean that there is no market therefor.
*See Castle Rock*, 150 F.3d at 145–46 (finding that plaintiff's decision not to enter derivative
market occupied by defendant did not change fair use analysis); *Monge*, 688 F.3d at 1181 ("The
potential market . . . exists independent of the [copyright owner]'s present intent.").  "The
copyright owner has the right not to enter a market and the "right to change [its] mind."
*Worldwide Church*, 227 F.3d at 1119.  ROSS's own putative expert, Alan Cox, agreed that a

Content as training data was widespread, it would destroy a potentially lucrative licensing market for the Westlaw Content that Plaintiffs could reasonably choose to enter. *See Harper*, 471 U.S. at 569 (finding fair use where "isolated instances of minor infringements, when multiplied many times, become in the aggregate a major inroad on copyright that must be prevented").

In assessing factor four, courts also must look at the impact on the public. The Supreme Court admonished courts that "gave insufficient deference to the scheme established by the Copyright Act for fostering the original works," *Harper*, 471 U.S. at 545–46, 560, as the Framers intended copyright to promote "free expression" by "establishing a marketable right." *Eldred v. Ashcroft*, 537 U.S. 186, 219 (2003). By doing so, copyright protection "supplies the economic incentive to create and disseminate ideas." *Harper*, 471 U.S. at 558. Where "there is a fully functioning market that encourages the creation and dissemination" of a work, "permitting 'fair use' to displace normal copyright channels disrupts the copyright market without a commensurate public benefit." *Harper*, 471 U.S. at 568 n.9; *see also Princeton Univ. Press v. Mich. Document Servs., Inc.*, 99 F.3d 1381, 1391 (6th Cir. 1996) (finding no fair use where copying would "have a deleterious effect upon the incentive" to publish the copyrighted work).

The public benefits from the creativity of Plaintiffs' attorney-editors, who provide insightful editorial content and advanced search algorithms powered by that content. *Supra* 3. Allowing a competitor to copy a copyrighted work to create a directly competing product without authorization, and derive competitive value from the copyrighted work that had heretofore been exclusive to the copyright holder, would disincentivize the creation and distribution of similar content in the future.

---

█████████████████████████████████████████████████████
████████████████████████. Ex. 5 (Cox Tr.) 47:22–48:5.

Because each of the fair use factors weighs against fair use, summary judgment is proper as a matter of law.

## II.     ROSS'S OTHER DEFENSES ARE MERITLESS

ROSS asserts six additional defenses that are deficient as a matter of law. Despite being asked in an interrogatory for the basis for its defenses, ROSS provided none for any of these defenses and has refused to drop any of them. *Id.* Ex 26 (ROSS's Supp. Resps. Pls.' 1st Interrogs.) at No. 11.

### A.     ROSS Cannot Prove Consent, Waiver, Laches, or Estoppel

Laches does not apply because the Supreme Court held that laches is not an available defense to copyright infringement. *See Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663 (2014). For tortious interference, laches is not applicable because there was no "undue delay" in bringing the action. *See*, *e.g.*, *Novus Franchising, Inc. v. Taylor*, 795 F. Supp. 122, 126 (M.D. Pa. 1992) (laches did not apply where there was no undue delay). Plaintiffs brought suit after learning of ROSS during the LegalEase litigation, which was commenced in May 2018. Ex. 9 (Lindberg Tr.) 78:15–24. Nor can ROSS show that Plaintiffs consented to their copying, or any other "voluntary, intentional relinquishment of a known right" as is required to prove a consent/waiver. *Novartis Pharms. Corp. v. EON Labs Mfg., Inc.*, 206 F.R.D 396, 398 (D. Del. 2002) (defining waiver). Plaintiffs explicitly did ***not*** consent to ROSS's copying Westlaw Content, denying it a license, *supra* 4, and brought this lawsuit once it learned of ROSS's copying.

### B.     ROSS's Cannot Prove Tort of Another

ROSS cannot escape liability by pointing to the intervening tort of another. Where a tortfeasor's conduct is a "substantial factor" in bringing about the harm, the tort of another is not sufficient to "break legal cause." *See In re Bocchino*, 794 F.3d 376, 383 (3d Cir. 2015) (citing Restatement (Second) of Torts § 443). ROSS's conduct was a substantial factor in causing the

harm to Plaintiffs and cannot be excused by pointing to another tortfeasor, like LegalEase.  *See* D.I. 252 (Pls.' Mot. for S.J. No. 2).

### C.    ROSS Cannot Prove Lack of Ownership

ROSS cannot prove lack of ownership.  It is not clear this is a separate affirmative defense in the Third Circuit.  And Thomson Reuters owns the copyright registrations at issue in this case. Ex. 97 (TR-0359959); Ex. 96 (TR-0359564); Ex. 11 (Martens Tr.) 204:4–13 (indicating that ██████████████████████████████████████████).

### D.    ROSS Cannot Prove Authorized Use, License, Consent, or Acquiescence

ROSS cannot prove that Plaintiffs authorized, licensed, consented, or acquiesced to ROSS's use of the Westlaw Content.  ROSS asked to license Westlaw, and Plaintiffs explicitly refused.  *Supra* 4.

### E.    The First Sale Doctrine is Inapplicable Here

The first sale doctrine, codified in 17 U.S.C. § 109(a), applies to "***the distribution*** of any particular copy or phonorecord that was ***lawfully*** made."  *Capitol Recs.,* 910 F.3d at 655 (first sale does not apply to reproduction claims).  Westlaw is not an object that was resold, it was a service that was unlawfully copied.  Because this case is not about distribution of a work lawfully made, or about distribution at all, the first sale doctrine is inapplicable.

### F.    The First Amendment is Not a Separate Defense Here

The First Amendment is not an independent defense here, because "[t]he fair use doctrine encompasses all claims of first amendment in the copyright field."  *Twin Peaks Prods., Inc. v. Publ' Int'l, Ltd.*, 996 F.2d 1366, 1378 (2d Cir. 2018) (internal citations and quotations omitted).

## III.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that their partial motion for summary judgment on certain of ROSS's affirmative defenses be granted in its entirety.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

OF COUNSEL:

Dale M. Cendali
Joshua L. Simmons
Eric A. Loverro
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Miranda D. Means
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
(617) 385-7500

December 22, 2022

Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com

*Attorneys for Plaintiffs and Counter-Defendants*
*Thomson Reuters Enterprise Centre GmbH and*
*West Publishing Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on December 22, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on December 22, 2022, upon the following in the manner indicated:

David E. Moore, Esquire                               *VIA ELECTRONIC MAIL*
Bindu Palapura, Esquire
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE  19801
*Attorneys for Defendant and Counterclaimant*

Mark A. Klapow, Esquire                               *VIA ELECTRONIC MAIL*
Lisa Kimmel, Esquire
Crinesha B. Berry, Esquire
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, DC  20004
*Attorneys for Defendant and Counterclaimant*

Gabriel M. Ramsey, Esquire                            *VIA ELECTRONIC MAIL*
Jacob Canter, Esquire
Warrington Parker, Esquire
CROWELL & MORING LLP
3 Embarcadero Center, 26th Floor
San Francisco, CA  94111
*Attorneys for Defendant and Counterclaimant*

/s/ Michael J. Flynn
_____
Michael J. Flynn (#5333)