IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

THOMSON REUTERS ENTERPRISE )
CENTRE GMBH and WEST PUBLISHING )
CORPORATION, )
)
)
               Plaintiffs and ) C.A. No. 20-613 (SB)
               Counterdefendants, )
) REDACTED - PUBLIC VERSION
   v. )
)
ROSS INTELLIGENCE INC., )
)
               Defendant and )
               Counterclaimant. )

## PLAINTIFFS' OPENING BRIEF IN SUPPORT OF THEIR MOTION TO EXCLUDE CERTAIN TESTIMONY, ARGUMENT ORD EVIDENCE REGARDING THE OPINIONS OF ALAN COX

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com

*Attorneys for Plaintiffs Thomson Reuters Enterprise Center GmbH and West Publishing Corporation*

OF COUNSEL:

Dale M. Cendali
Joshua L. Simmons
Eric A. Loverro
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
(212) 446-4800

Miranda D. Means
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
(617) 385-7500

December 22, 2022

## <u>TABLE OF CONTENTS</u>

SUMMARY OF THE ARGUMENT ........................................................................ 1

FACTUAL BACKGROUND ................................................................................... 3

ARGUMENT ........................................................................................................... 4

I.     DR. COX'S DISGORGEMENT OF PROFITS OPINIONS ARE
       INCONSISTENT WITH COPYRIGHT LAW AND ARE UNRELIABLE ..................... 5

II.    DR. COX'S LOST PROFITS OPINIONS ARE UNRELIABLE AND
       SPECULATIVE ....................................................................................... 8

       A.     The ██████████████████████████
              ███████ ................................................................. 10

       B.     Dr. Cox's Sample Size is Not Based in a Reliable Methodology ......................... 12

III.   DR. COX'S OPINIONS ON FAIR USE FACTOR FOUR ARE UNRELIABLE. ......... 13

       A.     Dr. Cox's Opinions on the ████████████████████
              ██████████████ are Flawed ............................................ 14

       B.     Dr. Cox's Understanding of Market Benefit is Flawed and Unreliable .............. 17

       C.     Dr. Cox Failed to Review One of the Key Products ............................................ 18

IV.    CONCLUSION ............................................................................................ 20

## **TABLE OF AUTHORITIES**

**Cases**

**Page(s)**

*Am. Geophysical Union v. Texaco Inc.*,
   60 F.3d 913 (2d Cir. 1994).............................................................................13, 14

*Baker v. Urban Outfitters, Inc.*,
   254 F. Supp. 2d 346 (S.D.N.Y. 2003).....................................................................11

*Bishop v. Wick*,
   No. 88 Civ. 6369, 1988 WL 166652 (N.D. Ill. Dec. 29, 1988) .................................8

*Calhoun v. Yamaha Motor Corp., U.S.A.*,
   350 F.3d 316 (3d Cir. 2003)...................................................................................14

*Castle Rock Ent., Inc. v. Carol Publ'g Grp., Inc.*,
   150 F.3d 132 (2d Cir. 1998).............................................................................13, 16

*Coates v. Metro. Prop. & Cas. Ins. Co.*,
   No. 19 Civ. 5143, 2022 WL 3928387 (E.D. Pa. Aug. 30, 2022)...........................18

*Comput. Assocs. Int'l, Inc. v. Altai, Inc.*,
   775 F. Supp. 544 (E.D.N.Y. 1991) ..........................................................................6

*Country Rd. Music, Inc. v. MP3.com, Inc.*,
   279 F. Supp. 2d 325 (S.D.N.Y. 2003).................................................................10, 12

*Crawford v. George & Lynch, Inc.*,
   No. 10-949, 2013 WL 6504361 (D. Del. Dec. 9, 2013) ...........................................4

*Curtis v. Gen. Dynamics Corp.*,
   No. 89 Civ. 566, 1990 WL 302725 (W.D. Wash. Sept. 26, 1990) ...........................8

*Dash v. Mayweather*,
   731 F.3d 303 (4th Cir. 2013) .................................................................................10

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993).......................................................................................... *passim*

*Elcock v. Kmart Corp.*,
   233 F.3d 734 (3d Cir. 2000)........................................................................4, 13, 15

*Furlan v. Schindler Elevator Corp.*,
   864 F. Supp. 2d 291 (E.D. Pa. Mar. 30, 2012) .....................................................15

*Harper & Row, Publ's, Inc. v. Nation Enters.*,
    471 U.S. 539 (1985)................................................................................13

*Intell. Ventures I LLC v. Xilinx, Inc.*,
    No. 10-1065, 2014 WL 1814384 (D. Del. Apr. 14, 2014).........................4

*M2M Sols. LLC v. Enfora, Inc.*,
    167 F. Supp. 3d 665 (D. Del. 2016)........................................................10

*McAndrew v. Garlock Equip. Co.*,
    537 F. Supp. 2d 731 (M.D. Pa. 2008).....................................................18

*Monge v. Maya Mags., Inc.*,
    688 F.3d 1164 (9th Cir. 2012) ................................................................16

*MOSAID Techs. Inc. v. LSI Corp*,
    No. 10-192, 2014 WL 807877 (D. Del. Feb. 28, 2014)............................6

*Oddi v. Ford Motor Co.*,
    234 F.3d 136 (3d Cir. 2000).................................................14, 15, 16, 17

*Oracle Am., Inc. v. Google, Inc.*,
    No. 10 Civ. 35651, 2016 WL 1743154 (N.D. Cal. May 2, 2016) .........5, 6

*Polar Bear Prods., Inc. v. Timex Corp.*,
    384 F.3d 700 (9th Cir. 2004) ....................................................................9

*Pure Earth, Inc. v. Call*,
    No. 9 Civ. 4174, 2011 WL 13380381 (E.D. Pa. Nov. 14, 2011).............7

*Rhoads Indus., Inc. v. Shoreline Found., Inc.*,
    2022 WL 4021766 (E.D. Pa. Sept. 2, 2022) ..........................................19

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
    464 U.S. 417 (1984)................................................................................13

*In re TMI Litig.*,
    193 F.3d 613 (3d Cir. 1999)....................................................................17

*Trell v. Marlee Elecs. Corp.*,
    912 F.2d 1443 (Fed. Cir. 1990)...............................................................10

*UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*,
    949 F.3d 825 (3d Cir. 2020).....................................................................4

*Worldwide Church of God v. Phila. Church of God, Inc.*,
    227 F.3d 1110 (9th Cir. 2000) ..........................................................13, 16

*ZF Meritor, LLC v. Eaton Corp.*,
    696 F.3d 254 (3d Cir. 2012)...................................................................................6

**Statutes**

17 U.S.C. § 504(b) ....................................................................................................5, 9

**Rules**

Fed. R. Evid. 702 ......................................................................................................4, 7

**Other Authorities**

H.R. Rep. 94-1476, § 504 (1976)..............................................................................5

Plaintiffs Thomson Reuters Enterprise Centre GmbH ("Thomson Reuters" and West Publishing Corporation ("West") (collectively, "Plaintiffs") respectfully move to exclude certain testimony, argument, or evidence regarding the opinions of Defendant ROSS Intelligence Inc.'s ("ROSS") purported expert, Dr. Alan Cox ("Dr. Cox") because three of his opinions fail to meet the requirements for reliability under the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

## <u>SUMMARY OF THE ARGUMENT</u>

Plaintiffs are asserting that ROSS is liable for direct and indirect copyright infringement, as well as tortious interference with contract, f



As described in detail below, three of Dr. Cox's opinions fail to meet the *Daubert* standard.

***First,*** Dr. Cox's disgorgement analysis is inconsistent with fundamental copyright principles.  In particular, Dr. Cox "apportions" profits by

Copyright disgorgement, however, is not about hypotheticals.  Courts have consistently held that disgorgement is about the profits that the defendant actually made from the infringement.  Dr. Cox's disgorgement analysis should be excluded for that reason alone.  In addition, Dr. Cox's disgorgement analysis is not based on sufficient facts and data

because it assumes ███████████████████████████████████████████████████

███████████████████████████████████. Courts in the Third Circuit regularly

exclude damages analyses based on unsupported profits projections, and the Court should do so

here.

    **Second**, Dr. Cox's lost profits analysis is excessively speculative and not based on

sufficient facts and data, which courts in the Third Circuit have also routinely found is grounds

for exclusion under *Daubert*.  In particular, Dr. Cox calculates a hypothetical license fee based

solely on ██████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████ This non-comparable dataset is not sufficient to support

Dr. Cox's lost profits calculation, and reliance on non-comparable licenses in forming a

hypothetical license opinion is grounds for exclusion under *Daubert*.

    **Third**, Dr. Cox offers unreliable opinions about the fourth fair use factor on several

counts. ████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████. His lack of a reliable

methodology warrants exclusion of his factor four opinions under *Daubert*.  Moreover, Dr. Cox's

factor four opinion that ████████████████████████████████████████████

████████████████████████████████████████████████ Dr. Cox also

ignores and misstates critical facts and evidence supporting his factor four analysis, including by

████████████████████████████████████████████████████████

████████████████████. Courts in the Third Circuit have found that failure to consider key

facts and data, such as the product at issue, renders an expert's opinion inadmissible, and such

failures make Dr. Cox's factor four analysis unreliable here.

As detailed below, each of these opinions does not stand muster under *Daubert*.

**<u>FACTUAL BACKGROUND</u>**

On August 1, 2022, Dr. Cox issued an opening report, in which he opines on ██████

████████████████████████████████████████ Ex. AK[1] ("Cox Op.

Rpt.").  On September 6, 2022, Dr. Cox's report was rebutted by Plaintiffs' artificial intelligence

expert, Dr. Jonathan Krein, and economics and damages expert, James Malackowski, who each

███████████████████████████████████████████████ (artificial

intelligence and damages respectively).  Ex. AY ("Malackowski Rbt. Rpt."); Ex. AS ("Krein

Rbt. Rpt.").

On September 6, 2022, Dr. Cox issued a first rebuttal report (the "1st Rbt. Rpt."), in

which he responded to the explanation in Dr. Krein's Opening Report████████████████

████  Ex. AL ("Cox 1st Rbt. Rpt.").  On October 10, 2022, Dr. Krein submitted a reply report

responding to Dr. Cox's criticisms of his opinions and explaining ██████████████████

███████████████████████████ Ex. AT ("Krein Rpl. Rpt.").

---

[1]   All exhibits are attached to the Declaration of Eric Loverro, submitted concurrently.

On September 20, 2022, Dr. Cox issued a second rebuttal report (the "2d Rbt. Rpt."), in which he responded to Mr. Malackowski's Opening Report and ████████████████ ████████ Ex. AM ("Cox 2d Rbt. Rpt."); Ex. AX ("Malackowski Op. Rpt.").  On October 18, 2022, Mr. Malackowski submitted a reply report responding to Dr. Cox's criticisms ████ ████████████████████████████████████████████████ ████████████████████████████████.  Ex. AZ ("Malackowski Rpl. Rpt.").

## ARGUMENT

Because expert testimony has the potential to be both powerful and misleading, courts must exercise a greater control over experts than lay witnesses.  *See Daubert*, 509 U.S. at 595. Fed. R. Evid. 702 permits a qualified expert to testify only if: (1) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue," (2) those opinions are based on "sufficient facts or data," and (3) those opinions are derived from "reliable principles and methods" that the expert "reliably applied . . . to the facts of the case."  Fed. R. Evid. 702; *Daubert*, 509 U.S. at 588–90.  An expert's opinion cannot be based on "subjective belief or unsupported speculation;" rather the expert must "have good grounds for his or her belief."  *Elcock v. Kmart Corp.*, 233 F.3d 734, 745 (3d Cir. 2000).

In assessing the admissibility of expert testimony, the court performs a critical function by acting "as a gatekeeper to ensure that any and all expert testimony or evidence is not only relevant, but also reliable."  *UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*, 949 F.3d 825, 832 (3d Cir. 2020); *see also Intell. Ventures I LLC v. Xilinx, Inc.*, No. 10-1065, 2014 WL 1814384, at *2 (D. Del. Apr. 14, 2014).  The party seeking to admit expert testimony, thus, bears the burden of demonstrating its admissibility by establishing that the expert's testimony both rests on a reliable foundation and is relevant to the task at hand.  *See Crawford v. George &*

*Lynch, Inc.*, No. 10-949, 2013 WL 6504361, at *1 (D. Del. Dec. 9, 2013) (stating that the party offering the expert "bears the burden of establishing that [the expert's] testimony is admissible by a preponderance of the evidence").

## I.   DR. COX'S DISGORGEMENT OF PROFITS OPINIONS ARE INCONSISTENT WITH COPYRIGHT LAW AND ARE UNRELIABLE

Dr. Cox's disgorgement of profits opinions should be excluded for three reasons.  ***First***, they are inconsistent with the fundamental principle of copyright law that disgorgement of profits focuses on the profits that the defendant ***actually made***, not a hypothetical, speculative scenario.  Specifically, the Copyright Act States that in "establishing the infringer's profits, the copyright owner . . . present[s] proof only of the infringer's gross revenue, and the infringer . . . prove[s] his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work."  17 U.S.C. § 504(b).  This is intended "to prevent the infringer from unfairly benefiting from a wrongful act." H.R. Rep. 94-1476, § 504 at 161 (1976).  As the district court in *Oracle Am., Inc. v. Google, Inc.* held in rejecting a similar analysis, it is "[n]ot acceptable" to allow "the existence of non-infringing alternatives to reduce recovery of wrongful profits.  This is a distinct remedy for the purpose of *disgorgement*. Non-infringing alternatives have nothing to do with this."  No. 10 Civ. 35651, 2016 WL 1743154 (N.D. Cal. May 2, 2016).  Thus, in applying this remedy, the methodology must be "tied to the goal of estimating the profits [the defendant] ***actually earned*** due to" to the alleged infringement because the "idea behind Section 504(b) is to hand over to the copyright owner the ***actual profits*** made by the infringer." *Id.* at *3–4 (emphasis added).  Thus, in *Oracle*, the court rejected and excluded an expert's disgorgement analysis that attempted to reduce profits actually earned by showing that the use of non-infringing alternatives could have led to the same or similar profits.  *Id.*

5

Despite these clear principles,  ” Ex. AM (Cox 2d Rbt. Rpt.) at 20– 21; Ex. AC (Cox Tr.) 346:11–18 (          ).                                                                                           *Id.* at 21.                                                 *Id.* In doing so, Dr. Cox's estimate is inconsistent with the statutory framework of awarding the ***actual*** profits earned by the infringer.  As *Oracle* recognized, this is not an acceptable methodology for determining copyright disgorgement.  *See Comput. Assocs. Int'l, Inc. v. Altai, Inc.*, 775 F. Supp. 544, 571 (E.D.N.Y. 1991) (finding a "basic flaw" in profits opinion was premised on "hypothetical, infringement-free world") *vacated in part on other grounds*, 982 F.2d 693 (2d Cir. 1992).

***Second***, Dr. Cox's estimate that ROSS could have                                        is not based on sufficient facts and data, which is grounds for exclusion.  This case is similar to *MOSAID Techs. Inc. v. LSI Corp.*, where the Court excluded a damages opinion based on business plan estimates to construct a "hypothetical reality," without sufficient support that those estimates were reliable.  No. 10-192, 2014 WL 807877, at *3 (D. Del. Feb. 28, 2014).  Likewise, in *ZF Meritor, LLC v. Eaton Corp.*, the Third Circuit excluded expert damages testimony where the expert estimated damages based

on future projections, rather than actual financial data, without demonstrating why such estimates were reliable. 696 F.3d 254, 291 (3d Cir. 2012).

Dr. Cox has even *less* support here than in those cases because he does not even rely on a business plan estimate in ██████████████████████. Rather, Dr. Cox simply assumes,



██████████ Ex. AM (Cox 2d Rbt. Rpt.) at 21. █████████████████

██████ *Id.* Ex. BF (ROSS- 003487472) (█████████████████████). ROSS specifically planned to "█████████████████████████████

█████████████████" *Id.* Indeed, as Dr. Malackowski explains, ██████████████████

████████████████████████████ Ex. BB (ROSS's Rsps. to Pls.' First Set of Interrogatories) at Interrog. No. 2; Ex. AZ (Malackowski Rpl. Rpt.) at 18. ████████████████

██████████████████.

Dr. Cox also assumes, again without basis, that ROSS ████████████████

████████████████████████████████████████

████████████████ ████████████████████

████████████████████████████████████████. Ex. AZ (Malackowski Rpl. Rpt.) at 15 (████████████████████████████

██████. The lack of a factual basis for these conclusions is grounds for exclusion under Rule 702. *See*, *e.g.*, *Pure Earth, Inc. v. Call*, No. 9 Civ. 4174, 2011 WL 13380381, at *3 (E.D. Pa. Nov. 14, 2011) (excluding expert opinion based on insufficient facts and data for conclusion about cause of stock price dip).

*Third*, Dr. Cox's methodology of ████████████████████  rests on a false equivalency. As Mr. Malackowski explains, ████████████████ . Ex. AZ (Malackowski Rpl. Rpt.) at 18. ████████████████ Ex. BG (ROSS-009722263) (███████ ) at ROSS-009722264. ████████████████ To compare the profits from these two different products would be highly confusing and unhelpful to a jury.

Thus, Dr. Cox's calculation of unjust enrichment damages should be excluded.

## II.   DR. COX'S LOST PROFITS OPINIONS ARE UNRELIABLE AND SPECULATIVE

Actual damages in a copyright infringement case may be calculated based on a "lost license fee," or the amount that the copyright holder would have been paid, but for the infringement. *Curtis v. Gen. Dynamics Corp.*, No. 89 Civ. 566, 1990 WL 302725, at *11 (W.D.

Wash. Sept. 26, 1990) (awarding plaintiff photographer the fee he would have been paid had defendant hired him instead of infringing his copyright); *Bishop v. Wick,* No. 88 Civ. 6369, 1988 WL 166652, at *5 (N.D. Ill. Dec. 29, 1988) ("Plaintiffs shall recover the fair market value of the [infringed computer program] in an amount equal to the ordinary licensing fees charged to licensees of plaintiffs, multiplied by each time that defendants illegally copied or utilized the [program]." (emphasis omitted)).  Alternatively, hypothetical license damages are an acceptable measure of actual damages, which is reflected by the amount a willing buyer would have paid a willing seller for the copyrighted content.  17 U.S.C. § 504(b).  In calculating a hypothetical license fee, courts look at licenses previously negotiated for comparable use of comparable works.  *See*, *e.g.*, *Polar Bear Prods., Inc. v. Timex Corp.,* 384 F.3d 700, 709 (9th Cir. 2004) (considering evidence of similar licensing arrangement).

Unlike Mr. Malackowski, Dr. Cox does not provide any calculation of what Plaintiffs actually lost in licensing fees from LegalEase's copying of Westlaw Content outside the scope of its subscription while only paying the lower subscription prices.  *See* Ex. AX (Malackowski Op. Rpt.).  Rather, Dr. Cox calculates



*Id.* Ex. AM (Cox 2d Rbt. Rpt.) at 13.  Dr. Cox calculates ████████████████████████████ *Id.* He then ████████████████████████████████████████ . *Id.* at 13–14.  He opines ████████████████████████████ *Id.* at 14.

Dr. Cox's opinion is unduly speculative and not grounded in sufficient facts and data.

**A.** ███████████████████████████████████
███████████████

Dr. Cox's calculation of a hypothetical license fee is unduly speculative because ██

███████████████████████████████████████████████████████

████████████████. Courts regularly exclude expert testimony on hypothetical licenses where they are based on licenses that are not comparable benchmarks. *See, e.g.*, *M2M Sols. LLC v. Enfora, Inc.*, 167 F. Supp. 3d 665, 675 (D. Del. 2016) (excluding expert testimony as to royalty rate where licenses were non-comparable); *Country Rd. Music, Inc. v. MP3.com, Inc.*, 279 F. Supp. 2d 325, 331 (S.D.N.Y. 2003) (collecting cases on the error of relying on non-comparable licenses).   A lost profits calculation based entirely on non-comparable licenses (licenses that do not contemplate "comparable ***uses*** of comparable ***works***") is unduly speculative. *See Dash v. Mayweather*, 731 F.3d 303, 319 (4th Cir. 2013) ("if the benchmarks relied on are inapposite, they may, without more, be too speculative to support a copyright holder's claim for actual damages").

As an initial matter, ████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████ Ex. AR (Krein Op. Rpt.) at 2.  According to ROSS's executive, Jimoh Ovbiagele, the 25,000 Bulk Memos were █████████████████████████████████████

███████████████████████████████████████████████████████ Ex. AG (Ovbiagele Tr.) 170–171.  ██████████████████████████

████████████████████████████████████████████████████████

██████ Ex. AC (Cox Tr.) 274:24–275:2.  In other words, ████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████ using the price of these unrelated works to calculate damages for ROSS's appropriation is improper.  *See Trell v. Marlee Elecs. Corp.,* 912 F.2d 1443, 1446–47 (Fed. Cir. 1990) (" '[A] particular fee is not the correct measure of damages unless that which is provided ... to [the] licensees for that fee is commensurate with that which the defendant has appropriated.'").

The costs associated with the creation of a work can impact the price, and the appropriateness of relying on a given benchmark.  In *Baker v. Urban Outfitters, Inc.*, for example, the court rejected expert testimony based on commissioned photography where defendant infringed a stock photograph, reasoning that different costs and other factors went into pricing the commissioned work as opposed to the stock image.  254 F. Supp. 2d 346, 354 (S.D.N.Y. 2003).  ███████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████ Ex. AZ (Malackowski Rpl. Rpt.) at 7–9.

████████████████████████████████████████████████████████.

Ex. AC (Cox Tr.) 274:24–275:2.  ██████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████ *Id.* at 280:8–282:4.  Likewise, without analyzing the cost of developing this

data, Dr. Cox had no basis for assuming that the price for it represents a proper benchmark price for determining what ROSS would have paid Plaintiffs for the data in the Bulk Memos.



Ex. AR (Krein Op. Rpt.) at 38–50.

. Ex. AC (Cox Tr.) 273:18–274:13.

. *Id*

Ex. AR (Krein Op. Rpt.) at 39–50.

*Id.* at 275:3–14.  And as Mr. Malakowski explains,

. Ex. AZ (Malakowski Rpl. Rpt.) at 10–11.  In *Country Rd.*, the court found that differences in the licenses, including the "nature of the business" made them non-comparable.  279 F. Supp. 2d at 331.  Because the uses are not comparable, relying on the English speech datasets as a benchmark for the price of the Westlaw Content in the Bulk Memos is excessively speculative.  *See id.* (striking expert report and finding that reliance on license for a use different from defendant was unreliable).

### B.  Dr. Cox's Sample Size is Not Based in a Reliable Methodology

Dr. Cox's calculation of lost profits assumes an

███████████████████████   *Id.*  Ex. AC (Cox Tr.) 267:18–268:6.  Although he testified during his

deposition that ████████████████████████ *id.*, ███████████████████████████

████████████████████████   An expert must explain the methodologies and principles

that support his conclusions; he cannot simply assert an *ipse dixit* conclusion based on his

feeling.  *Elcock,* 233 F.3d at 734.  Because the average word count is unreliable, the lost profits

calculation relying upon it can be excluded for this separate reason.

## III.   DR. COX'S OPINIONS ON FAIR USE FACTOR FOUR ARE UNRELIABLE.

The fourth statutory fair use factor, on which ROSS bears the burden of proof, considers

the effect of the use on the potential market for or value of the copyrighted work.  *See, e.g.,*

*Harper & Row, Publ's, Inc. v. Nation Enters.*, 471 U.S. 539, 562 (1985); *Am. Geophysical Union*

*v. Texaco Inc.*, 60 F.3d 913, 926 (2d Cir. 1994).  Actual present harm need not be shown in the

fair use analysis, as long as there is an effect on the potential market for the work.  *See, e.g., Sony*

*Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 450-51 (1984); *Worldwide Church of*

*God v. Phila. Church of God, Inc.*, 227 F.3d 1110, 1119 (9th Cir. 2000); *Castle Rock Ent., Inc. v.*

*Carol Publ'g Grp., Inc.*, 150 F.3d 132, 136, 145-46 (2d Cir. 1998).

Dr. Cox opines that ROSS's copying of the Westlaw Content ████████████████

█████████████████████████ because he claims: ███████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████   Ex. AK

(Cox Op. Rpt.) at 35–37.  Ultimately, Dr. Cox speculates that perhaps the misappropriation of

the Westlaw Content ████████████████████████████████████████

█████████████████████████████████   *Id.*  Dr. Cox's opinions on factor four do not

meet the *Daubert* standard and should be excluded for three independent reasons.

### A.   Dr. Cox's Opinions on the Existence of a Potential Market for the Westlaw Content are Flawed

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

Ex. AK (Cox Op. Rpt.) at 35–37; Ex. AN (Cox Rpl. Rpt.) at 4–7.  But, this conclusion is doubly flawed.  *First*, Dr. Cox did not use a reliable methodology to assess █████████████████████████

██████████████   To be reliable, testimony must be based on "the methods and procedures of science" rather than a "subjective belief or unsupported speculation."  *Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 321 (3d Cir. 2003).   The Third Circuit considers a number of factors, including whether the method is "testable," has a "known error rate," and "standards controlling the technique's operation."  *Id.*  The Third Circuit also notes that "conclusions and methodology are not entirely distinct from one another," such that the Court must determine whether the expert's opinions could "reliably flow" from the "methodology used."  *Oddi v. Ford Motor Co.*, 234 F.3d 136 (3d Cir. 2000).

Although Dr. Cox claims ████████████████████████████████████████ ████████████████████████████ he failed to sufficiently analyze whether a market for the Westlaw Content as AI training data is "traditional, reasonable, or likely to be developed" and what the impact on that market would be, as factor four explicitly contemplates. *Am. Geophysical Union*, 60 F.3d at 930.  Dr. Cox's normal methodology for assessing the existence of a market is to first ████████████████████████████████ ████████ ████████████████████████████████████████████████████████ ██████████████ Ex. AC (Cox Tr.) 10:11–12:2.  Dr. Cox further explained that ████████ ██████████████████████████████████████████████████████████ *Id.* 26:20– 27.  But when asked ██████████████████████████████████████████████.



██████████████████████ *Id.* at 13:2–12.

Nor did Dr. Cox sufficiently consider other factors.████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████ *Id.* at 183:21–184:12; 184:22–185:4; 185:6–

186:19; 191:6–14.  The only independent investigation Dr. Cox undertook was to look on ████

████████████████████████████████████████

████████████████  ████████████████████████

████████████████████████████████████████ *Id.* at 179:5–

180:17.  ████████████████████████████████

████████████████████████████████████████ *Id.* at 189:19–

185:4.185:4.  Dr. Cox ████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████ *Id.* 351:15–18; Ex.

AK (Cox Op. Rpt.) at Appx. B.

Thus, Dr. Cox's methodology is not testable or replicable.  In *Elcock*, the Third Circuit

excluded an expert where it "would have been nearly impossible" to repeat his "apparently

subjective methods."  233 F.3d at 747.  As in *Elcock*, an expert attempting to reproduce Dr.

Cox's methods "would be lost."  *Id.*; *see also Furlan v. Schindler Elevator Corp.*, 864 F. Supp.

2d 291, at *298 (E.D. Pa. Mar. 30, 2012) (excluding opinion where expert "conducted no tests"). Likewise, in *Oddi*, the Third Circuit excluded an engineer's opinion where he engaged in a "haphazard, intuitive inquiry," using "little, if any, methodology beyond his own intuition." *Odd*, 234 F.3d at 146, 156.   The same is true here, where ███████████████████████ ████████████████████████████████████████████████████████████████████████████ ██████████████████████████

**Second**, Dr. Cox does not have sufficient facts or data to conclude ████████████████ ███████████████████████████████████████████████████ Other than broadly claiming ████████ █████████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ Ex. AN (Cox Rpl. Rpt.) at 5.   But the copyright law is clear that the mere fact that an author has chosen not to enter a market does not mean there is no potential market therefor.   *See Castle Rock*, 150 F.3d at 145–46 (finding that plaintiff's decision not to enter derivative market occupied by defendant did not change fair use analysis); *Monge v. Maya Mags., Inc.*, 688 F.3d 1164, 1181 (9th Cir. 2012) ("The potential market ... exists independent of the [copyright owner]'s present intent.").   "The copyright owner has the right not to enter a market and the "right to change [its] mind."   *Worldwide Church*, 227 F.3d at 1119. ███████████████ █████████████████████████████████████████████████████████████████████████████ ███████████████████████████████████ Ex. AC (Cox Tr.) 47:22-48:5.

This analysis makes a second mistake—it assumes that the ██████████████████████ █████████████████████████████████████████████████ Ex. AN (Cox Rpl. Rpt.) at 6.   But Dr. Cox has no grounds to assert that either. ████████████████████████████████████████ █████████████████████████████████████████████████████████████████████████████

██████████████████████████████████ *Id.* at 185:18–186:19.  Without investigating the

issue, Dr. Cox's conclusion ████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████—is not based on sufficient facts and data.

###### B.   Dr. Cox's Understanding of Market Benefit is Flawed and Unreliable

An expert's opinion needs to be based on more than "subjective belief or unsupported

speculation."  *Oddi*, 234 F.3d at 155; *In re TMI Litig.*, 193 F.3d 613 (3d Cir. 1999) (excluding

speculative expert opinions and finding that opinions based in speculation are not reliable).

Dr. Cox opines that ROSS's copying of the Westlaw Content may have ████████████

██████████████████████████████████████████████████████████████

█████████████████████████████ Ex. AK (Cox Op. Rpt.) at 37.  This is

pure speculation.  When asked how he reached this conclusion, Dr. Cox's only support was the

█████████████ Ex. AC (Cox Tr. 161:6–14).  When asked point blank what research he did to

determine ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████ *Id.* at 164:21–165:14.  Such *ipse dixit* is not sufficient to

withstand *Daubert* scrutiny.

Dr. Cox also opines that even if ████████████████████████████████

████████████████████████████████████████████████████████████

█████████████████ Ex. AK (Cox Op. Rpt.) at 37.  Dr. Cox rankly speculates about what is

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████ *Id.*  Dr. Cox does not cite to any documents in the

record, surveys, consumer studies, or other research on consumer preferences supporting this

view.  And, record documents show



Ex. BI (ROSS-010099622).  During his deposition, Dr. Cox

Ex. AC (Cox Tr.) 160:24–161:5

.  When asked for his basis for concluding

Dr. Cox admitted

*Id.* at

160:8–23.  This lackadaisical "anything's possible" approach to the effect on the market is not

helpful to the fact-finder, and is precisely the kind of opinion that *Daubert* is designed to filter

out.  It should be excluded.

### C.    Dr. Cox Failed to Review One of the Key Products

Despite  explaining  that



Ex. AC (Cox Tr.) 11:13-20–21,

Tellingly,

.  *See*, *e.g.*, *McAndrew v. Garlock*

*Equip. Co.*, 537 F. Supp. 2d 731, 735 (M.D. Pa. 2008) (failure to look at competitor's products in

making a product identification was grounds for exclusion); *Coates v. Metro. Prop. & Cas. Ins.*

*Co.*, No. 19 Civ. 5143, 2022 WL 3928387, at *8 (E.D. Pa. Aug. 30, 2022) (excluding expert

opinion where expert failed to consider certain measurements or actually inspect structure at

issue).

18

This was not a minor oversight.  Dr. Cox's opinions are premised on ███████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████ Ex. AK (Cox Op. Rpt.) at

5–6.  Dr. Cox argues ███████████████████████████████████████████

███████████████████████████████.  *Id.* at 6; Ex. AN (Cox Rpl. Rpt. ) at 9 (███████████

███████████████████████████████████████████████████████).

From there, Dr. Cox contends that █████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████ Ex. AK (Cox Op. Rpt.) at

31–33.  Dr. Cox's basis for his understanding ███████████████████████████████

███████████████████████████████████████████ *See* Ex. AC (Cox

Tr.) 101:11–19.

Plaintiffs contest the relevance of this assertion, which has no bearing on market harm.  It

is also factually incorrect.  █████████████████████████████████████████

█████████████ *Id.* at 66:10–68:11; 69:11–14.  ███████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████ *See* Ex. AC at 102:1–6, 153:16–21.  █████

███████████████████████████████████████████████████████

█████████████ *See* Ex. AR Krein Op. Rpt. at 36.  Dr. Cox cannot premise his opinions about

ROSS's and West's supposedly different purposes on this fundamental inaccuracy.  *See Rhoads*

*Indus., Inc. v. Shoreline Found., Inc.*, 2022 WL 4021766, at *22 (E.D. Pa. Sept. 2, 2022) (expert opinion based on inaccurate assertion that was "central" to expert's conclusions "cannot be said [to have] a sufficient factual basis to be reliable.").

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that their motion to exclude certain testimony, argument, or evidence regarding the opinions of Dr. Cox be granted.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

OF COUNSEL:

Dale M. Cendali
Joshua L. Simmons
Eric A. Loverro
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Miranda D. Means
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
(617) 385-7500

December 22, 2022

Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com

*Attorneys for Plaintiffs and Counter-Defendants Thomson Reuters Enterprise Centre GmbH and West Publishing Corporation*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 22, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on December 22, 2022, upon the following in the manner indicated:

David E. Moore, Esquire                                     *VIA ELECTRONIC MAIL*
Bindu Palapura, Esquire
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE  19801
*Attorneys for Defendant and Counterclaimant*

Mark A. Klapow, Esquire                                    *VIA ELECTRONIC MAIL*
Lisa Kimmel, Esquire
Crinesha B. Berry, Esquire
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, DC  20004
*Attorneys for Defendant and Counterclaimant*

Gabriel M. Ramsey, Esquire                               *VIA ELECTRONIC MAIL*
Jacob Canter, Esquire
Warrington Parker, Esquire
CROWELL & MORING LLP
3 Embarcadero Center, 26th Floor
San Francisco, CA  94111
*Attorneys for Defendant and Counterclaimant*

*/s/ Michael J. Flynn*
_____
Michael J. Flynn (#5333)