IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION, | ) ) ) ) ) |
| Plaintiffs and Counterdefendants, | ) ) ) |
| v. | ) ) |
| ROSS INTELLIGENCE INC., | ) ) |
| Defendant and Counterclaimant. | ) ) ) |

C.A. No. 20-613 (SB)

REDACTED - PUBLIC VERSION

**PLAINTIFFS' MOTION TO EXCLUDE CERTAIN
TESTIMONY, ARGUMENT OR EVIDENCE REGARDING
<u>THE OPINIONS OF RICHARD LEITER</u>**

OF COUNSEL:

Dale M. Cendali
Joshua L. Simmons
Eric A. Loverro
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Miranda D. Means
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
(617) 385-7500

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com

*Attorneys for Plaintiffs Thomson Reuters
Enterprise Center GmbH and West Publishing
Corporation*

December 22, 2022

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND ...................................................................................................... 3

ARGUMENT ................................................................................................................................ 4

I.    DR. LEITER'S OPINIONS ON THE GENERAL HISTORY OF THE WKNS DO NOT FIT THE FACTS ............................................................................................... 5

II.    DR LEITER'S OPINIONS ARE BASED ON UNSUPPORTED SPECULATION ......... 8

III.    CONCLUSION ................................................................................................................ 11

# **TABLE OF AUTHORITIES**

**Cases**

Page(s)

*Calhoun v. Yamaha Motor Corp., U.S.A.*,
    350 F.3d 316 (3d Cir. 2003)......................................................................................................8

*Crawford v. George & Lynch, Inc.*,
    No. 10-949, 2013 WL 6504361 (D. Del. Dec. 9, 2013) ............................................................4

*Dam Things from Den. v. Russ Berrie & Co.*,
    290 F.3d 548 (3d Cir. 2002)......................................................................................................7

*Daubert. Sprint Comms. Co. L.P. v. Cox Comms. Inc.*,
    302 F. Supp. 3d 597 (D. Del. 2019).........................................................................................8

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993) .......................................................................................................... passim

*Educ. Testing Services v. Katzman*,
    793 F.2d 533 (3d Cir. 1986)......................................................................................................8

*Elcock v. Kmart Corp.*,
    233 F.3d 734 (3d Cir. 2000).................................................................................................4, 9

*Furlan v. Schindler Elevator Corp.*,
    864 F. Supp. 2d 291 (E.D. Pa. 2012) .....................................................................................10

*Knowles v. Spin Master, Inc.*,
    No. 18 Civ. 5827, 2019 WL 4565102 (C.D. Cal. Sept. 17, 2019)...........................................8

*Oddi v. Ford Motor Co.*,
    234 F.3d 136 (3d Cir. 2000)..........................................................................................8, 10, 11

*Orbital Eng'g, Inc. v. Buchko*,
    578 F. Supp. 3d 727 (W.D. Pa. 2022)......................................................................................5

*Pure Earth, Inc. v. Call*,
    No. 09 Civ. 4174, 2011 WL 13380381 (E.D. Pa. Nov. 14, 2011)..........................................11

*In re TMI Consol. II*,
    911 F. Supp. 775 (M.D. Pa. 1996) ...........................................................................................7

*In re TMI Litig.*,
    193 F.3d 613 (3d Cir. 1999)..................................................................................................5, 8

*Trout v. Milton S. Hershey Medical Center*,
    576 F. Supp. 2d 673 (M.D. Pa. 2008) ..................................................................................... 5

*West Publ'g Co. v. Mead Data Central, Inc.*,
    799 F.2d 1219 (8th Cir. 1986) ....................................................................................... 3, 10

**Rules**

Fed. R. Evid. § 702 ............................................................................................................. 4, 5

Plaintiffs Thomson Reuters Enterprise Centre GmbH ("Thomson Reuters") and West Publishing Corporation ("West") (collectively, "Plaintiffs") move to exclude certain testimony, argument, and evidence regarding the opinions of Defendant ROSS Intelligence Inc.'s ("ROSS") purported expert, Dr. Richard Leiter.

## PRELIMINARY STATEMENT

Dr. Leiter—ROSS's putative expert on the historical development of Plaintiffs' digesting system—offers speculative opinions that are far afield from any of the facts and evidence in this case. The work at issue is original content on Plaintiffs' Westlaw legal research platform ("Westlaw"). Plaintiffs assert that ROSS copied Plaintiffs' original copyrighted content from Westlaw, including portions of the West Key Number System (the "WKNS"), and in particular, the arrangement of West Headnotes, case passages, and West Key Numbers within that organizational structure. Plaintiffs have undoubtedly been organizing and classifying cases for years, since the time when they published law only in physical digests. *See, e.g.*, Ex. BA[1] (https://legal.thomsonreuters.com/en/insights/articles/using-the-west-key-numbers-system). But, unlike West's digesting structure of the early 20th Century, the current WKNS, which is what this lawsuit is about, is comprised of a far larger, complex organization of sub-topics and key numbers, and organizes modern law and legal concepts that have emerged in the last century. This case centers on whether ROSS's copying of the modern WKNS constitutes actionable copyright infringement.

Dr. Leiter's opinions should be excluded on two grounds. ***First***, certain of Dr. Leiter's opinions should be excluded because they do not fit the facts of the case, as required for admissibility under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). In particular,

---

[1]   All exhibits are attached to the Declaration of Eric Loverro, submitted concurrently.

1

Dr. Leiter vaguely asserts that the WKNS has "roots" in an organizational structure developed by Benjamin Vaughan Abbott and Austin Abbott (the "Abbotts") at the turn of the 19th Century. This is highly confusing because it wrongly implies that part of the WKNS might be owned by the Abbotts, when in fact, Dr. Leiter admitted during his deposition that West *purchased* the rights to this organizational structure from the Abbotts.  The opinion is also irrelevant, as Dr. Leiter does not perform any comparative analysis of the Abbotts' organizational structure to Plaintiffs' current structure, opine on which portions of the WKNS that ROSS copied have their origins, if any, in that historical organizational structure, or otherwise provide any way for the jury to assess how this history is relevant to the modern WKNS.  Similarly confusing and unhelpful is Dr. Leiter's discussion of "theorems"—sets of legal concepts used to digest law in the 19th Century in which the WKNS purportedly has roots—but that have no apparent corollary in the WKNS of today.  Thus, these opinions are both irrelevant and apt to confuse the jury about what is at issue, which is grounds for exclusion under *Daubert*.

*Second*, Dr. Leiter's opinions should be excluded because they are speculative and not based on sufficient facts and data, or any discernable methodology.  In particular, Dr. Leiter's conclusions about the reasons the WKNS topics and sub-topics were designed the way they were, including his assessment that they were designed to be entirely "utilitarian," is pure speculation and is not based on any facts, data, or evidence whatsoever.  This technical term, which Dr. Leiter does not explain, is not only confusing, it is also undermined by the opinions Dr. Leiter expressed during his deposition.  In particular, Dr. Leiter admitted that there are multiple ways to organize the law and that other competitors do it differently, indicating that the process of creating the WKNS was creative, not purely "utilitarian."  Moreover, Dr. Leiter has no basis for concluding that the WKNS is purely utilitarian, as he did nothing to investigate the

reasons behind the organizational structure of the WKNS. Focusing his efforts on the history of early digesting, Dr. Leiter simply did not investigate the impetus behind the current design of the WKNS. Without a methodology or sufficient facts and data to support them, these opinions are unreliable and should be excluded under *Daubert*.

Similarly, Dr. Leiter opines that Plaintiffs freely allowed competitors to use the WKNS and that other publishers have "generally adopted" Plaintiffs' indexing structure. Ex. AU (Leiter Op. Rpt.) ¶¶ 28–33. But, his purported evidence for this claim comes from a single historical source, the *First Decennial Digest* from 1908. And this historical source does not support the claim because it merely references requests to use the structure, not instances in which Plaintiffs freely gave it away to competitors. Dr. Leiter only identifies one other competitor who purportedly used a similar structure to the WKNS, and only analyzes a *single* topic in his assessment that the two structures were similar. This one other competitor certainly does not show that Plaintiffs' indexing structure was given away to competitors, or that it was "generally adopted" by competitors. And in fact, this claim is contradicted by the fact that Plaintiffs have enforced their rights in their organizational structure against competitors previously. *See*, *e.g.*, *West Publ'g Co. v. Mead Data Central, Inc.*, 799 F.2d 1219, 1224 (8th Cir. 1986) ("An arrangement of opinions in a case reporter, no less than a compilation and arrangement of Shakespeare's sonnets, can qualify for copyright protection."). Under *Daubert*, Dr. Leiter should not be permitted to opine to the jury about Plaintiffs' freely allowing competitors to use the WKNS with no evidence to back up such a claim.

## FACTUAL BACKGROUND

On August 1, 2022, Dr. Leiter issued an opening expert report (the "Opening Report"). Ex. AU(Leiter Op. Rpt.). In his report, Dr. Leiter describes how the West Digest and the WKNS were developed by Benjamin Vaughan Abbott and Austin Abbott in the early Nineteenth

3

Century to index the law. *Id.* at 4–5. Dr. Leiter also describes how that digest structure developed and explains that it was purchased by West in the late nineteenth century. *Id.* at 5. Finally, Dr. Leiter opines that West encouraged the free use of its digest structure by competitors in 1908. *Id.*

On September 6, 2022, Dr. Leiter issued a rebuttal report (the "Rebuttal Report"). Ex. AV (Leiter Rbt. Rpt.). In that report, ██████████████████████████████████████ ██████████████████████████████████████████████████████████ ████████████████ *Id.* at 5. ████████████████████████████████████ ████████████████████████████████████████████████ *Id.* at 14–15.

## ARGUMENT

Federal Rule of Evidence 702 only permits a qualified expert to testify if (1) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue," (2) those opinions are based on "sufficient facts or data," and (3) those opinions are derived from "reliable principles and methods" that the expert "reliably applied . . . to the facts of the case." Fed. R. Evid. 702; *Daubert*, 509 U.S. at 588–90. An expert's opinion cannot be based on "subjective belief or unsupported speculation;" rather the expert must "have good grounds for his or her belief." *Elcock v. Kmart Corp.*, 233 F.3d 734, 745 (3d Cir. 2000). The party seeking to admit expert testimony thus bears the burden of demonstrating its admissibility by establishing that the expert's testimony both rests on a reliable foundation and is relevant to the task at hand. *See Crawford v. George & Lynch, Inc.*, No. 10 Civ. 949, 2013 WL 6504361, at *1 (D. Del. Dec. 9, 2013) (stating that the party offering the expert "bears the burden of establishing that [the expert's] testimony is admissible by a preponderance of the evidence").

4

I.  **DR. LEITER'S OPINIONS ON THE GENERAL HISTORY OF THE WKNS DO NOT FIT THE FACTS**

Expert testimony must apply "scientific, technical, or specialized knowledge" to "assist the trier of fact to understand the evidence or to determine *a fact in issue.*" Fed. R. Evid. 702 (emphasis added). In other words, the testimony must "fit the facts" of the case to be admissible. *See*, *e.g.*, *Orbital Eng'g, Inc. v. Buchko*, 578 F. Supp. 3d 727, 733 (W.D. Pa. 2022) (excluding expert where his opinion was irrelevant because it was "not tied to the facts of the case nor will it aid the jury in resolving any factual dispute"). This consideration has also been described by the Third Circuit as the "helpfulness" or "relevance" standard—there must be a "valid scientific connection to the *pertinent inquiry* as a precondition to admissibility." *In re TMI Litig.*, 193 F.3d 613, 672 (3d Cir. 1999) (emphasis added) (internal quotations omitted). For example, in *Trout v. Milton S. Hershey Medical Center*, the court found that expert testimony was inadmissible where the expert testified about general medical principles without actual analysis of the plaintiff's specific medical issues. 576 F. Supp. 2d 673, 677 (M.D. Pa. 2008) ("Generalized expert testimony that is factually disconnected from the case is inadmissible because it does not assist the jury in rendering a verdict based on the material facts in issue.").

Dr. Leiter's opinions on the purported historical roots of the WKNS are irrelevant and unhelpful, and therefore, do not "fit" the facts of this case.

*First*, Dr. Leiter opines that the WKNS has vague "roots" in the structure that the Abbotts developed in the early 19th Century for the *New York Digest* and the *American Digest*. Ex. AU (Leiter Op. Rpt.) at 4–12. As a threshold matter, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. AF (Leiter Tr.) 129:24–130:13 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮).

Thus, Dr. Leiter's opinions are highly misleading and likely to confuse a jury to the extent they

5

suggest that a portion of the WKNS is owned by the Abbotts, when in fact, that structure is owned by West. ▌

▌ Ex. AF (Leiter Tr.) 133:12–17 (▌

▌). ▌

▌ *Id.* at 132:3–7, 130:15–131:6 (▌

▌). Dr. Leiter admitted that West had embarked on a process of reclassifying cases in the WKNS in the early 20th Century. Ex. AU (Leiter Op. Rpt.) ¶ 19.

Moreover, the only analysis Dr. Leiter performs is a highly confusing and unhelpful comparison of the Abbotts' structure to the current WKNS for certain *contracts* topics. Ex. AU (Leiter Op. Rpt.) at 12, Exhibit 3; Ex. AF (Leiter Tr.) 161:11–162:12. Between these digests, Dr. Leiter looks at two categories of topics: "*Contracts* subtopics (1st order, including *Performance or breach*)" and "*Contracts, Performance or Breach,* subtopics (2nd order)." Ex. AU (Leiter Op. Rpt.) at 12, Exhibit 3. ▌

▌ Ex. AF (Leiter Tr.) 166:2–14. ▌

▌ *Id.* at 168:9–13. ▌

▌ *Id.* at 169:1–7, 167:13–168:2 (▌

▌).

6

Not only is this analysis confusing and impossible to follow, it is limited to *contracts*, and

███████████████████████████████████████████████████

███████  *Id.* at 161:17–162:8.  Given that Dr. Leiter does not provide any expert analysis on the Abbotts' structure that would be helpful for the actual issues to be decided, the originality of the current WKNS, these opinions are inadmissible.  *See In re TMI Consol. II*, 911 F. Supp. 775, 796 (M.D. Pa. 1996) (excluding opinions where analysis did not have a meaningful relationship to topography at issue).

***Second***, Dr. Leiter opines that West historically used a "theorem" of legal organization comprised of 7 to 10 broad legal concepts, which was supposedly used to classify cases in the *Century Digest* (1897) and *First Decennial Digest* (1908).  Ex. AU (Leiter Op. Rpt.) 10–12.  During his deposition, when confronted with the fact that most of these legal concepts are nowhere to be found in the ***current*** WKNS, Dr. Leiter admitted that that they are merely a ██████

██████████████████████████ "  Ex. AF (Leiter Tr.) 139:10–23.  ███████████████████

███████████████████████████████████████████████████

██████████████████████████████  *Id.* at 139:10–142:2.  Dr. Leiter's opinions do not provide any clarity on how this theorem is used in Plaintiffs' process for creating and organizing West Headnotes and cases within the WKNS, if it is used at all.  And regardless, these opinions have no bearing on the pertinent issue for the jury to decide, which is whether ROSS copied protectible expression from the WKNS.  *See Dam Things from Den. v. Russ Berrie & Co.*, 290 F.3d 548, 561–62 (3d Cir. 2002).

These opinions would serve only to complicate and prolong the trial, and confuse the jury rather than assist it in assessing the facts at issue, including the originality of the current WKNS.  This renders such opinions inadmissible under *Daubert*.  *Sprint Comms. Co. L.P. v. Cox Comms.*

*Inc.*, 302 F. Supp. 3d 597, 619 (D. Del. 2019) (excluding testimony where it was unhelpful and "likely to confuse the jury"); *see also Knowles v. Spin Master, Inc.*, No. 18 Civ. 5827, 2019 WL 4565102, at *4 (C.D. Cal. Sept. 17, 2019) (finding copyright opinions unhelpful due to their "abstract nature").

## II.     DR LEITER'S OPINIONS ARE BASED ON UNSUPPORTED SPECULATION

To be reliable, testimony must be based on "the methods and procedures of science," and sufficient facts and data, rather than "subjective belief or unsupported speculation." *Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 321 (3d Cir. 2003); *Oddi v. Ford Motor Co.*, 234 F.3d 136, 155 (3d Cir. 2000); *In re TMI Litig.*, 193 F.3d at 669–670 (excluding speculative expert opinions and finding that opinions based in speculation are not reliable).

Yet, a number of Dr. Leiter's opinions consist of pure speculation with no discernable methodology. ***First***, Dr. Leiter's conclusion that the evolution of the digest topics and sub-topics in the WKNS are "driven by utilitarian functionality," or that any attempt to expand the number of sub-topics in the WKNS in a "creative" way would "negate the purpose of the indexing system," Ex. AU (Leiter Op. Rpt.) ¶ 46, is baseless and inconsistent with the copyright law. As an initial matter, a work is "utilitarian" in the copyright sense when the idea and the expression "merge," *i.e.*, when there is only one way to express the idea; "merger" does not apply in the Third Circuit if there are other methods for expressing the same idea, even if there is a "limited number of ways" to do it. *Educ. Testing Services v. Katzman*, 793 F.2d 533, 539 (3d Cir. 1986). ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Ex. AF (Leiter Tr.) 234:2–235:23, 239:12–240:7. Other research platforms reflect different editorial choices from the WKNS. For example, during his deposition, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

8

███████████████████████████████████████████

*Id.* at 257:23–261:7. Dr. Krein's own admissions demonstrate that the WKNS is not utilitarian, and his opinions to the contrary would be highly misleading to the jury and inconsistent with how the law on utilitarian works is actually applied.

In addition, Dr. Leiter's opinions on the utilitarian functionality of the WKNS are not based on a reliable methodology. With regard to sub-topics in the WKNS, Dr. Leiter only discusses a *single* West sub-topic, "99 Copyright and Intellectual Property." Ex. AU (Leiter Op. Rpt.) ¶ 41. He fails to describe any methodology, whatsoever, that he used to determine that this sub-topic could not have been developed in a creative way. Dr. Leiter did no investigation, whatsoever, into why even this particular sub-topic is designed the way it is, let alone why all 100,000 sub-topics in the WKNS are so designed. With regard to both digest topics and sub-topics, ███████████████████████████████████████

███████. Ex. AF (Leiter Tr.) 40:15–18. ███████████████████

███████████████████████████ *Id.* at 40:11–14. ███████

███████████████████████████████ *Id.* at 40:7–10. ███

███████████████████████████████████████

███████████████████████████

███████ *Id.* at 283:22–284:15. Dr. Leiter's pure *ipse dixit* is insufficient under *Daubert*. *See Elcock,* 233 F.3d at 745 (3d Cir. 2000) (expert must have "good grounds for his or her belief").

*Second*, Dr. Leiter's opinion that Plaintiffs "freely allowed competitors to use the indexing system" for Westlaw or that the WKNS was "generally adopted" by other publishers, *see* Ex. AU (Leiter Op. Rpt.) ¶ 33, does not have a sufficient factual basis and is, again, purely speculative, which warrants exclusion under *Daubert*. *See Furlan v. Schindler Elevator Corp.*,

9

864 F. Supp. 2d 291, 296 (E.D. Pa. 2012) (excluding opinion where expert based his opinion on a photograph, rather than conducting any tests). Dr. Leiter's supposed basis for his opinion is a quote from the *First Decennial Digest* of 1908. ███████████████████████████ ████████████████████████████████████████████ Ex. AF (Leiter Tr.) 180:4–182:11. ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████ *Id.* at 181:22–182:11. Although this source indicates that West had received requests to use the WKNS in the early 20th Century, it certainly does not support Dr. Leiter's conclusions that Plaintiffs were just giving it away *for free*. Indeed, the fact that Plaintiffs have enforced their rights in the WKNS in the past directly undermines this claim. *See*, *e.g.*, *West Publishing Corp.*, 799 F.2d at 1224 (enforcing against Lexis). This is pure "*ipse dixit*" and thus does "not withstand *Daubert's* scrutiny." *See Oddi*, 234 F.3d at 158.

Moreover, in concluding that the WKNS was "generally adopted' by other publishers, Dr. Leiter points to only one other company, Bancroft-Whitney, that purportedly used West's digest classification structure in its 1920-1923 California Digest Supplement. Ex. AU (Leiter Op. Rpt.) ¶¶ 30–32. In concluding they are the same structure, Dr. Leiter notes that a single topic, *contracts*, is organized similarly. *Id.* at ¶ 31, Fig. 1. Even in Dr. Leiter's own comparison, the sub-topics used in each structure are plainly different, as shown in the image below, which includes grey boxes for where the organization structures diverge.



Putting aside the fact that Bancroft-Whitney was ultimately purchased by West, *id.* at ¶ 32, Dr. Leiter's sweeping conclusions that the WKNS is "generally adopted" by other publishers do not reliably flow from this single company's adoption of a potentially similar structure, and he should not be able to present this unsupported opinion to the jury. *See Oddi*, 234 F.3d at 146 (examining whether expert's opinions "reliably flow from the facts known to the expert" in determining admissibility under *Daubert*). Such opinions, without a sufficient factual basis, are inadmissible. *See Pure Earth, Inc. v. Call*, No. 09 Civ. 4174, 2011 WL 13380381, at *3 (E.D. Pa. Nov. 14, 2011) (excluding expert opinion based on insufficient facts and data).

### III.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that their motion to exclude certain testimony, argument or evidence regarding the opinions of Dr. Richard Leiter be granted.

11

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

OF COUNSEL:

Dale M. Cendali
Joshua L. Simmons
Eric A. Loverro
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Miranda D. Means
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
(617) 385-7500

December 22, 2022

Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com

*Attorneys for Plaintiffs and Counter-Defendants Thomson Reuters Enterprise Centre GmbH and West Publishing Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on December 22, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on December 22, 2022, upon the following in the manner indicated:

| | |
|---|---|
| David E. Moore, Esquire<br>Bindu Palapura, Esquire<br>POTTER ANDERSON & CORROON LLP<br>Hercules Plaza, 6th Floor<br>1313 North Market Street<br>Wilmington, DE 19801<br>*Attorneys for Defendant and Counterclaimant* | *VIA ELECTRONIC MAIL* |
| Mark A. Klapow, Esquire<br>Lisa Kimmel, Esquire<br>Crinesha B. Berry, Esquire<br>CROWELL & MORING LLP<br>1001 Pennsylvania Avenue NW<br>Washington, DC 20004<br>*Attorneys for Defendant and Counterclaimant* | *VIA ELECTRONIC MAIL* |
| Gabriel M. Ramsey, Esquire<br>Jacob Canter, Esquire<br>Warrington Parker, Esquire<br>CROWELL & MORING LLP<br>3 Embarcadero Center, 26th Floor<br>San Francisco, CA 94111<br>*Attorneys for Defendant and Counterclaimant* | *VIA ELECTRONIC MAIL* |

*/s/ Michael J. Flynn*
_____
Michael J. Flynn (#5333)