THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION, | )<br>)<br>)<br>)<br>) |
| Plaintiffs and Counterdefendants, | )<br>)<br>) |
| v. | )<br>) |
| ROSS INTELLIGENCE INC., | )<br>) |
| Defendant and Counterclaimant. | )<br>)<br>) |

C.A. No. 20-613 (SB)

REDACTED - PUBLIC VERSION

**DECLARATION OF LAURIE OLIVER IN SUPPORT OF PLAINTIFFS'
MOTIONS FOR PARTIAL SUMMARY JUDGMENT (NOS. 1–3)**

I, Laurie Oliver, declare as follows:

1. I am a U.S. Cases Editorial Manager for Thomson Reuters where I have worked for the past twenty-nine years. I submit this declaration in support of Plaintiffs' Motions for Summary Judgment. The statements set forth in this declaration are based on my personal knowledge and my review of the contemporaneous documents referenced and attached hereto.

2. Thomson Reuters and West Publishing Corporation ("West") (collectively, "Plaintiffs") offer a variety of products in the field of online legal research, including Westlaw, Plaintiffs' legal research platform. West launched Westlaw in 1975 as a dial-up service requiring dedicated terminals. In 1996, Thomson Reuters (then, the Thomson Corporation) acquired West, and has since invested significant effort, resources, and money into innovating the Westlaw platform.

3. Westlaw is now an online legal research platform used by lawyers and other legal professionals across the world, and includes thousands of databases of case law, state and federal statutes, administrative codes, synopses, treatises, secondary sources, public records, and other documents. The current version of Westlaw's legal research platform, Westlaw Edge, provides innovative, AI-powered search tools that allow users to search for relevant law using keywords, headnotes, natural language, and/or Boolean queries.

4. West has a large team of attorney-editors responsible for creating original content for the Westlaw Platform. Among other responsibilities, attorney-editors are tasked with writing "editorial enhancements" for Westlaw, which include synopses at the beginning of judicial opinions, as well as headnotes. I am personally familiar with West's attorney-editors' original contributions to Westlaw. I joined West in 1993 as an attorney-editor, and my current role

involves supervising a team of attorney-editors who write and select the headnotes (the "West Headnotes").

### A. The West Headnotes

5. West Headnotes appear with one or more corresponding key numbers at the top of judicial opinions accessed in Westlaw. West's attorney-editors are responsible for writing the West Headnotes. These headnotes identify, summarize, and synthesize key take-aways from a judicial opinion. They include summaries of what the attorney-editor views as the most important facts of the case, key issues that the attorney-editor wants to highlight, and original descriptions of the holdings from the underlying opinion.

6. The attorney-editors exercise creative discretion in determining both *what* to include in any given West Headnote and *how* to phrase that headnote. Because West Headnotes are written to be understood standing alone, West's attorney-editors write them to summarize only certain, selected facts, and explain the court's holding and parties' contentions in clear language.

7. West constantly drafts new West Headnotes to keep up with the release of new judicial opinions, writing over 9,000 West Headnotes per week. Existing West Headnotes are also periodically revised and updated. To remain up-to-date, the Cases Editorial department alone has around 70 attorney-editors who draft the West Headnotes and other editorial enhancements.

### B. The WKNS

8. When they draft the West Headnotes, West's attorney-editors also make an initial recommendation about which West Key Number topics should be assigned to a particular West Headnote for purposes of integrating the West Headnotes and related judicial opinions into Plaintiffs' original classification system, the West Key Number System (the "WKNS"). I have

personal experience overseeing West's attorney-editors who classify West Headnotes and judicial opinions and have also personally classified West Headnotes and judicial opinions within this system.

9. The WKNS is the result of Plaintiffs' original editorial choices about how to organize, classify, and structure the voluminous body of American law. There is no single way to organize the law. Accordingly, West's attorney-editors need to exercise creativity in selecting and arranging judicial opinions and West Headnotes within the WKNS. The WKNS is constantly changing as new West Headnotes and judicial opinions are integrated into the system, and it takes a substantial investment of time, innovation, resources, and creativity to update the WKNS.

10. After West's attorney-editors have created the West Headnotes and made initial recommendations of where they might be placed in the WKNS, the judicial opinion is assigned to one or more "classifiers"—attorney-editors who are responsible for classifying West Headnotes in the WKNS. "Classifiers" also further evaluate Key Number topics suggested by the initial West Headnote attorney-editor and may send the case back to the original attorney-editor for further review if necessary. Once the Classifier assigns one or more West Key Numbers to a West Headnote, the West Headnote and its associated case are officially added to the WKNS under the corresponding Key Number(s).

11. To assist the Classifiers in this process, Plaintiffs developed a tool called the Classification and Recommendation Engine (CaRE). This tool suggests five or more possible key numbers to the Classifier, who then decides whether to adopt any of the suggestions. The decision on how to classify a West Headnote is always up to the Classifier. CaRE does not assign Key Numbers to West Headnotes.

### C. Competitive Advantage of Editorial Enhancements

12. Creating these editorial enhancements requires the thought and creativity of many people at West, along with extensive time and resources that Plaintiffs have invested in creating this innovative content.

13. Plaintiffs have a policy against selling this content to competitors for any purpose, including training artificial intelligence algorithms. Plaintiffs view their proprietary editorial enhancements, including the West Headnotes and the WKNS, as giving Plaintiffs a competitive advantage over other legal research platforms.

I declare under penalty of perjury that the foregoing testimony is true and correct.

Dated: December 21, 2022

_____
Laurie Oliver

## CERTIFICATE OF SERVICE

I hereby certify that on December 22, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on December 22, 2022, upon the following in the manner indicated:

David E. Moore, Esquire  *VIA ELECTRONIC MAIL*
Bindu Palapura, Esquire
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE  19801
*Attorneys for Defendant and Counterclaimant*

Mark A. Klapow, Esquire  *VIA ELECTRONIC MAIL*
Lisa Kimmel, Esquire
Crinesha B. Berry, Esquire
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, DC  20004
*Attorneys for Defendant and Counterclaimant*

Gabriel M. Ramsey, Esquire  *VIA ELECTRONIC MAIL*
Jacob Canter, Esquire
Warrington Parker, Esquire
CROWELL & MORING LLP
3 Embarcadero Center, 26th Floor
San Francisco, CA  94111
*Attorneys for Defendant and Counterclaimant*

*/s/ Michael J. Flynn*
_____
Michael J. Flynn (#5333)