IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION, | ) ) ) ) ) | |
| Plaintiffs and Counterdefendants, | ) ) ) | C.A. No. 20-613 (SB) |
| | ) | REDACTED - PUBLIC VERSION |
| v. | ) ) | |
| ROSS INTELLIGENCE INC., | ) ) | |
| Defendant and Counterclaimant. | ) ) | |

## PLAINTIFFS' OPPOSITION TO ROSS INTELLIGENCE INC.'S MOTION TO EXCLUDE THE OPINIONS AND TESTIMONY OF PLAINTIFFS' EXPERT JONATHAN L. KREIN

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com

OF COUNSEL:

Dale M. Cendali
Joshua L. Simmons
Eric A. Loverro
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Miranda D. Means
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
(617) 385-7500

*Attorneys for Plaintiffs and Counterdefendants*
*Thomson Reuters Enterprise Center GmbH*
*and West Publishing Corporation*

Original filing date: January 30, 2023
Redacted filing date: February 6, 2023

**TABLE OF CONTENTS**

SUMMARY OF ARGUMENT ................................................................................... 1

BACKGROUND ................................................................................................... 3

    A.    Dr. Krein's Qualifications and Opinions ................................................ 3

    B.    Dr. Krein's ███████████████████████████████
        ██████████ ................................................................................ 5

    C.    Dr. Krein's Opinions Concerning the Market for Plaintiffs' Westlaw
        Content As AI Training Data ................................................................. 8

ARGUMENT ........................................................................................................ 8

    A.    Dr. Krein Explained His Methodology for ██████████████████
        ██████████████████████████████and It Is Repeatable ........... 9

        1.    ROSS Mischaracterizes Dr. Krein's Methodology and Explanation
            Thereof ................................................................................ 9

        2.    ROSS's Own Evidence Shows Dr. Krein's Methodology is
            Repeatable ........................................................................... 12

    B.    Dr. Krein's Opinions Concerning ROSS's Copying and Knowledge of
        LegalEase's Copying Are Not Inadmissible ....................................... 14

    C.    Dr. Krein Is Qualified to Opine about the Market for AI Training Data and
        Plaintiffs' Westlaw Content .................................................................. 18

CONCLUSION .................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**

**Page(s)**

*51 Webster St., Inc. v. Atl. Richfield Co.*,
2019 WL 76573 (W.D.N.Y. Jan. 2, 2019) ...........................................................................12

*Acosta v. Wilmington Tr., N.A.*,
2019 WL 257697 (N.D. Ohio Jan. 18, 2019) ................................................................11, 20

*Bombardier Recreational Prod. Inc. v. Arctic Cat, Inc.*,
2017 WL 758335 (D. Minn. Feb. 24, 2017) ..................................................................17, 18

*Bridgmon v. Array Sys. Corp.*,
325 F.3d 572 (5th Cir. 2003) ...........................................................................................17

*Cook v. Rockwell Int'l Corp.*,
580 F. Supp. 2d 1071 (D. Colo. 2006) ...........................................................................12, 14

*Daubert v. Merrell Dow Pharms. Inc.*,
509 U.S. 579 (1993) ...........................................................................................................8

*Dunn v. HOVIC*,
1 F.3d 1362 (3d Cir. 1993), *modified*, 13 F.3d 58 (3d Cir. 1993) .......................................15

*Evolved Wireless, LLC v. Apple Inc.*,
C.A. No. 15-542, 2019 WL 1178517 (D. Del. Mar. 13, 2019) .........................................20

*Holbrook v. Lykes Bros. S.S. Co.*,
80 F.3d 777 (3d Cir. 1996) ...............................................................................................19

*i4i Ltd. P'Ship v. Microsoft Corp.*,
598 F.3d 831 (Fed. Cir. 2010) ............................................................................................9

*INVISTA N.Am. S.A.R.L. v. M & G USA Corp.*,
C.A. No. 11-1007, 2013 WL 3216109 (D. Del. June 25, 2013) ........................................8

*In re Japanese Elec. Prod. Antitrust Litig.*,
723 F.2d 238 (3d Cir. 1983), *rev'd on other grounds*, 475 U.S. 574 (1986) ....................15, 19

*Karns v. Emerson Elec. Co.*,
817 F.2d 1452 (10th Cir. 1987) ....................................................................................15, 19

*McCullock v. H.B. Fuller Co.*,
61 F.3d 1038 (2d Cir. 2002) ...........................................................................................8, 11

*Microchip Tech. Inc. v. Aptiv Servs. US LLC*,
　　C.A. No. 17-1194, 2020 WL 10503006 (D. Del. Aug. 24, 2020) ...........................................9

*New Old Music Grp., Inc. v. Gottwald*,
　　122 F. Supp. 3d 78 (S.D.N.Y. 2015) ......................................................................16

*Oxford Gene Tech. Ltd. v. Mergen Ltd.*,
　　345 F. Supp. 2d 431 (D. Del. 2004) ...................................................................17, 18

*In re Paoli R.R. Yard PCB Litig.*,
　　35 F.3d 717 (3d Cir. 1994) ...............................................................................18

*Pineda v. Ford Motor Company*,
　　520 F.3d 237 (3d Cir. 2008) .........................................................................18, 19

*Reach Music Pub., Inc. v. Warner Chappell Music, Inc.*,
　　988 F. Supp. 2d 395 (S.D.N.Y. 2013) .....................................................................17

*Sahuc v. Tucker*,
　　300 F. Supp. 2d 461 (E.D. La. 2004) .................................................................16, 17

*Sound View Innovations, LLC v. Hulu, LLC*,
　　2019 WL 4640393 (C.D. Cal. Aug. 5, 2019) ...........................................................17, 18

*Tarkus Imaging, Inc. v. Adobe Sys., Inc.*,
　　C.A. No. 10-63, 2012 WL 12904235 (D. Del. June 14, 2012) ..............................................20

*Troll Co. ApS, v. Russ Berrie & Co., Inc.*,
　　290 F.3d 548 (3d Cir. 2002) .........................................................................15, 16

*United States v. Bonds*,
　　922 F.3d 343 (7th Cir. 2019) .............................................................................11

*Whelan Assocs., Inc. v. Jaslow Dental Lab'y, Inc.*,
　　797 F.2d 1222 (3d Cir. 1986) ........................................................................15, 16

*Zimmer Surgical, Inc. v. Stryker Corp.*,
　　365 F. Supp. 3d 466 (D. Del. 2019) ..................................................................17, 18

**Rules**

Fed. R. Evid. § 702 .................................................................................8, 12, 18

Fed. R. Evid. § 704(a) ...................................................................................15

Plaintiffs respectfully submit this opposition to ROSS's Motion to Exclude the Opinions and Testimony of Plaintiffs' Expert Jonathan L. Krein (D.I. 268) ("Def.'s Br.")

## SUMMARY OF ARGUMENT

Dr. Jonathan L. Krein ("Dr. Krein") is a highly qualified expert with nearly twenty years of experience in the fields of artificial intelligence ("AI"), machine learning, and source code review, among others. Dr. Krein offers several opinions in this case regarding the development of ROSS's legal research platform based on (1) his extensive review of the factual record; (2) a forensic assessment he conducted of ROSS's source code; and (3) ███████████

███████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████

ROSS's Motion seeks to exclude three of Dr. Krein's opinions, but none of its arguments are grounds for exclusion. *First*, ROSS seeks to exclude Dr. Krein's opinions regarding ███

███████████████████████████████████████ on the grounds that Dr. Krein failed to disclose the methodology he used to conduct his analysis and, to the extent he did disclose his methodology, his conclusions are incorrect. ROSS is wrong on both scores. Dr. Krein submitted three expert reports totaling 230 pages, wherein he extensively explained his methodology and the facts and data upon which he relied in analyzing ███████████

███████████████████ Then, during his deposition, Dr. Krein answered ROSS's questions concerning his methodology ███████ including what each step in his analysis was and why it was taken. There can be no question that Dr. Krein's methodology is reliable given that he was able to verify the results of his analysis by applying the same methodology used by Ms. Barbara Frederiksen-Cross, one of ROSS's experts, in her expert reports and reaching

similar results.  To the extent ROSS nonetheless challenges Dr. Krein's methodology, the proper

recourse is rigorous cross examination, not exclusion.



 ***Second***, ROSS seeks to exclude Dr. Krein's opinion ██████████████

████████████████████[1] as well as exclude certain of Dr. Krein's opinions concerning

ROSS's conduct and knowledge, on the basis that they are improper legal conclusions.  Yet, it is

well-settled in the Third Circuit that an expert's opinion may embrace ultimate issues.  There is

no question that an expert in a copyright case may opine as to whether copying actually

occurred; such expert testimony is regularly accepted, and ROSS offers its own expert on the

subject.  Dr. Krein's opinion is based on ████████████████████████████████

████████████████████████████████████.  Likewise, it is proper

for Dr. Krein to opine that, ████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████

 ***Third***, ROSS seeks to exclude Dr. Krein's opinion concerning the existence of actual and

potential markets for Plaintiffs' Westlaw Content as AI training data on the basis that Dr. Krein

is not an economist.  This makes no sense.  Dr. Krein has extensive and specialized knowledge

and experience with respect to AI training data and the robust market that exists for such data.

He has worked with AI training data sets at length and has experience with, and knowledge of,

the companies that generate, sell, and purchase AI training data sets in the current market given

his experience as the Chief Technology Officer and Chief Executive Officer of various

---

[1] "Westlaw Content" includes West editorial enhancements, including West Key Numbers, West
Headnotes, synopses, and other proprietary content on Westlaw, as defined in Plaintiffs' Partial
Motion for Summary Judgment on Copyright Infringement.  D.I. 250 ("Pl.'s Mot. for S. J. No.
1").

technology companies.  ███████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████  Accordingly, ROSS's Motion should be denied

in its entirety.

## BACKGROUND

### A.    Dr. Krein's Qualifications and Opinions

Dr. Krein is an expert with nearly twenty years of experience in the software field,

including software development, software management, academic and industrial empirical

research, computer science and software engineering education, and executive-level business

leadership and management.  D.I. 266 (Loverro Decl.) Ex. AR (Krein Op. Rpt.) ¶ 1.  In addition,

Dr. Krein has (a) formally studied AI and machine learning, and (b) developed and participated

in the development of numerous AI and machine learning models.  *Id.* ¶ 10.  In particular, Dr.

Krein's projects have involved the same technologies at issue in this litigation, including

machine learning projects involving natural language processing ("NLP") and the use of large

training data sets.  *Id.*  Further, Dr. Krein has extensive experience performing source code and

software process reviews in a variety of settings, including industry, academia, and litigation,

and co-founded and co-own a company, Source Code Discovery, that is dedicated to source code

review in both litigation and industrial contexts.  *Id.* ¶ 15.  Additionally, Dr. Krein has worked

with AI training data sets at length and has experience with, and knowledge of, the companies

that generate, sell, and purchase AI training data sets in the current market given his experience

as the Chief Technology Officer and Chief Executive Officer of various technology companies.

Given his robust and relevant experience, Dr. Krein was retained to provide his expert

opinion regarding the development of ROSS's legal research platform.  In his opening report, Dr.

Krein offers four main opinions:

- ███████████████████████████████████████████████████
  ███████████████████████████████████████████████████
  ███████████████████████████████████████████████████
  ███████████████████████████████████████████████████████
  █████████████████████████████████████████
  ██████████████████████████████████████████████████
  █████████████████████████████████████████████████
  ██████████████████████████████████ *Id.* ¶ 5.

- ██████████████████████████████████████████████████
  ███████████████████████████████████████████████
  ██████████████████████████████████████████████████
  ████████████████████████████████████████████████
  ███████████████████████████████████████████████████████
  ███████████████████████████████████████████████████████
  ███████████████████████████████████████████████████
  ██████████████████████████████████████████████ *Id.* ¶ 6.
  ███████████████████████████ *Id.* ¶ 6.

- ██████████████████████████████████████████████████
  ██████████████████████████████████████████████████
  ████████████████████████████████████████████████████
  ████████████████████████████████████████████████████
  ███████████████████████████████████████████████████████
  ███████████████████ *Id.* ¶ 7.

4

- ███████████████████████████████████████████
███████████████████████████████████
███████████████████████████████████
█████████████████████████████████
███████████████████████████████████████████
████████████████ *Id.* ¶ 8.

As Dr. Krein explains, his opinions are based on a number of considerations, including, among other things, (1) his review of documents and testimony produced in this case; (2) his forensic analysis of ROSS's source code; (3) ██████████████████████████████████ ████████████████████████████████████████████ and (4) his own experience and knowledge as an expert in AI and machine learning. *Id.* ¶¶ 4–8, 30.

**B.** **Dr. Krein's** ████████████████████████████████ █████████████████

In his report, Dr. Krein explained that his review of the documents and testimony produced in this case showed that, █████████████████████████████████ ██████████████████████████████████████ ███████████████████████████████████ ███████████████████████████████████████████ ███████████████████ *Id.* ¶ 103. In particular, Dr. Krein opines that ████████████ ████████████████████████████████ ***First*,** ██████████████████████ ███████████████████████████████████ ██████████████████████████████████████ ██████████████████████████ . *Id.* ¶ 106. ***Second*,** █████████████████████ ███████████████████████████████████████████



███████████████████████████████████████████████████

██████████████████████████ . *Id.* **Third**, ███████████████

███████████████████████████████████████████████████

█████████████████████████████████ . *Id.* ¶ 107. **Fourth**, ████

███████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████ . *Id.* ¶ 111.

In order to determine whether this process was followed, Dr. Krein ████████████

███████████████████████████████████████████████████

████████████████████████████████████ *Id.* ¶ 112 & n.162,

Appendix C; *see also* Loverro Decl. Ex. AT (Krein Rpl. Rpt.) ¶¶ 88–96.  With respect to the

██████████████████████ Dr. Krein explained that ████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████ . Loverro Decl. Ex.

AR (Krein Op. Rpt.). ¶ 112 n.162.  Dr. Krein also ████████████████████

█████████████████████ *Id*.  Next, █████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████████████████

██████████████████ . *Id.* █████████████████  ████████████████

███████████████████████████████████████████████

[2] In addition to the explanation offered in his opening report, Dr. Krein provided a further explanation of his methodology—one that spans nearly four and a half pages—in his reply report.  Loverro Decl. Ex. AT (Krein Rpl. Rpt.) ¶¶ 88–96.



*Id.* Dr. Krein then ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████████████████. *Id.* █████████████████████████████

███████████████████████.[3]

The results of ████████████████████████████████████████████████████

████████████████ Loverro Decl. Ex. AR (Krein Op. Rpt.) ¶ 112.  Using these results, Dr. Krein

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████. *Id.* ¶ 112 n.162.  Dr. Krein's

analysis showed that ██████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████ *Id.* ¶

112.  To consider a ███████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████ *Id.*  Similarly, at his deposition, Dr. Krein explained

███████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

---

[3] Dr. Krein explained that ███████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████. *Id.* ¶ 112 n.162; *see also* Loverro Decl. Ex. AT
(Krein Rpl. Rpt.) ¶ 93.

███████████████████████. Declaration of Miranda D. Means, filed concurrently

("Means 2d Decl.") Ex. 108 (Krein Tr.) 28:11–23.

### C. Dr. Krein's Opinions Concerning the Market for Plaintiffs' Westlaw Content As AI Training Data

Dr. Krein also opines ████████████████████████████████████

████████████████████████████████████████████████████████

Loverro Decl. Ex. AR (Krein Op. Rpt.) ¶¶ 8, 154; *see also* Means 2d Decl. Ex. 108 (Krein Tr.)

273:15–274:13. As noted above, Dr. Krein has extensive experience with machine learning

models and AI training data sets. *See supra* 3. Dr. Krein has worked with AI training data sets

at length and has experience with, and knowledge of, the companies that generate, sell, and

purchase AI training data sets in the current market given his experience as the Chief

Technology Officer and Chief Executive Officer of various technology companies. *See id.*; *see*

*also* Means 2d Decl. Ex. 108 (Krein Tr.) 273:15–274:13.

## ARGUMENT

Courts allow expert testimony under Rule 702 when (1) the expert is qualified, (2) the

data and methodology on which the expert relied is reliable, and (3) the testimony would be

helpful to the trier of fact. *See Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579, 597 (1993).

Here, as detailed below, all three elements are met with respect to the testimony that ROSS seeks

to exclude. Moreover, it is well-settled that courts have "broad discretion" to determine the

admissibility of expert testimony, and "[v]igorous cross examination, presentation of contrary

evidence, and careful instruction on the burden of proof are the traditional and appropriate

means" of attacking supposed methodological faults. *McCullock v. H.B. Fuller Co.*, 61 F.3d

1038, 1043–44 (2d Cir. 2002); *see also INVISTA N.Am. S.A.R.L. v. M & G USA Corp.*, C.A. No.

11-1007, 2013 WL 3216109, at *4 (D. Del. June 25, 2013) (noting that to the extent a party

"disputes the assumptions underlying [an expert's] testimony [ ], such disagreements are more properly reserved for cross-examination"); *Microchip Tech. Inc. v. Aptiv Servs. US LLC*, C.A. No. 17-1194, 2020 WL 10503006, at *1 (D. Del. Aug. 24, 2020) (stating that it is "not the district court's role ... to evaluate the correctness of facts underlying an expert's testimony") (quoting *i4i Ltd. P'Ship v. Microsoft Corp.*, 598 F.3d 831, 856 (Fed. Cir. 2010)).

**A.** **Dr. Krein Explained His Methodology for** ██████████████████
██████████████████████████████ **and It Is Repeatable**

ROSS raises two arguments with regard to Dr. Krein's opinion that ████████████
████████████████████████████ *First*, ROSS grossly mischaracterizes Dr. Krein's detailed reports and deposition testimony to argue that Dr. Krein did not disclose his methodology when he in fact did disclose it. *Second*, ROSS argues that Dr. Krein's methodology was not repeatable, but this is false, as demonstrated by the fact that ROSS's own expert was able to replicate Dr. Krein's results. As detailed further below, neither of ROSS's arguments have merit.

**1.** **ROSS Mischaracterizes Dr. Krein's Methodology and Explanation Thereof**

ROSS first argues that the Court should exclude Dr. Krein's opinions on the basis that he "does not disclose the methods or technical principles that aided his opinions and conclusions ██ ████████ making his methodology unreliable." Def.'s Br. 9. This is incorrect. Dr. Krein explained *why* he was conducting his analysis and *how* he analyzed particular data—specifically,
████████████████████████████████████████████████████
████████████████████████████████████████
████████. *See* Loverro Decl. Ex. AR (Krein Op. Rpt.) ¶ 112 & n.162. He also provided detailed explanations of each step in his analysis, including why he took each step and how each

step supported the validity of his final results and conclusions.  *Id.*; *see also supra* 5–8; Loverro

Decl. Ex. AT (Krein Rpl. Rpt.) ¶¶ 88–96.

Faced with this, ROSS's Motion contains a number of misstatements and

mischaracterizations of Dr. Krein's █████████████ and explanation thereof.  For example,

ROSS asserts that Dr. Krein's methodology is described only once in his reports.  Def.'s Br. 4.

This is incorrect.  As noted above, in addition to the explanation offered in his opening report,

Dr. Krein provided a further detailed explanation of his methodology—one that spans nearly four

and a half pages—in his reply report.  Loverro Decl. Ex. AT (Krein Rpl. Rpt.) ¶¶ 88–96.  Dr.

Krein did so in response to one of ROSS's experts, Ms. Frederiksen-Cross, whose rebuttal to Dr.

Krein's opening report evinced a fundamental misunderstanding of his methodology.[4]  *Id.*

Indeed, as Dr. Krein explained during his deposition (Means 2d Decl. Ex. 108 (Krein Tr.) 47:1–

10),



Likewise, ROSS asserts that Dr. Krein disregarded ██████████████████████

████████████████████████████████████████████████████

---

[4] The alleged flaws in Dr. Krein's methodology that ROSS identifies are the same alleged flaws
that Ms. Frederiksen-Cross opined about in her rebuttal report.  In particular,███████████
████████████████████████████████████████████████████
██████████████████████████████████████████.  Loverro
Decl. Ex. AP (Frederiksen-Cross Rbt. Rpt.) ¶¶ 25–39.  Dr. Krein then explained,███████
████████████████████████████████████████████
████████████████████████████████████.  *See, e.g.,*
*id.* Ex. AT (Krein Rpl. Rpt.) ¶¶ 88–96.

Def.'s Br. 4.  That is both incorrect and Dr. Krein specifically addressed ROSS's

misunderstanding in his reply report:



Loverro Decl. Ex. AT (Krein Rpl. Rpt.) ¶ 94.  ROSS also asserts that ████████████

████████████████████████████████████████ Def.'s Br.

4.  Yet, Dr. Krein ██████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████ Loverro Decl. Ex. AT (Krein Rpl. Rpt.) ¶ 93.

ROSS further argues that Dr. Krein could not explain his methodology or metric ███

████████████████ at his deposition.  Def.'s Br. 5.  ROSS is mistaken.  Notwithstanding the

fact that Dr. Krein explained his methodologies and metrics at length in his reports, he explained

throughout his deposition that ████████████████████████████████

███████████████████████████. *See, e.g.,* Means 2d Decl.

Ex. 108 (Krein Tr.) 15:10–30:6.  ROSS's disagreement with the adequacy of Dr. Krein's

explanations has no bearing on the admissibility of his testimony or opinions.  *See United States*

*v. Bonds*, 922 F.3d 343, 346 (7th Cir. 2019) (finding that cross-examination, not exclusion, is the

appropriate remedy for critiques of professional analysis); *McCullock,* 61 F.3d at 1043–44

(noting "[v]igorous cross examination, presentation of contrary evidence, and careful instruction

on the burden of proof are the traditional and appropriate means" of attacking supposed

methodological faults); *Acosta v. Wilmington Tr., N.A.*, 2019 WL 257697, at *2 (N.D. Ohio Jan.

18, 2019) ("Cross-examination at trial will afford Defendant ample opportunity to pick out purported methodological errors and to present any evidence contrary to [expert's] admissible opinions."); *51 Webster St., Inc. v. Atl. Richfield Co.*, 2019 WL 76573, at *6 (W.D.N.Y. Jan. 2, 2019) (denying motion to strike and noting "defendant may explore problems in [plaintiff's expert's] scientific methods, the lack of factual basis for his conclusions or other faults in his analysis during cross-examination").

### 2. ROSS's Own Evidence Shows Dr. Krein's Methodology is Repeatable

ROSS next claims that Dr. Krein's opinions are inadmissible because his results are "unverifiable" and that ROSS has been unable to test or challenge his conclusions. Def.'s Br. 9. As an initial matter, "any suggestion that an opposing expert must be able to 'verify' the correctness of an expert's work before it can be admitted [] misstates the standard for admission of expert evidence under Rule 702." *Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1122–23 (D. Colo. 2006). Likewise, when an opposing expert disagrees with an expert's methodology and reached different conclusions, it does not render the expert's analysis "unverifiable" or "require exclusion of his testimony." *Id.* at 1151 ("While Defendants and their experts apparently believe [plaintiff's expert] should have employed different standards and reached different conclusions, this does not render his methods and conclusions 'unverifiable' as Defendants suggest or require exclusion of his testimony."). Yet, all of ROSS's bluster amounts to such critiques which are unavailing as a legal matter.

ROSS's arguments also are factually incorrect. Ms. Barbara Frederiksen-Cross, one of ROSS's experts, was specifically retained for that purpose and provided two rebuttal reports challenging Dr. Krein's conclusions.[5] Nevertheless, Dr. Krein showed that his results are

---

[5] Ms. Frederiksen-Cross submitted three reports in this case. In her opening report, Ms. Frederiksen-Cross ███████████████████████████████████████████████████

verifiable. In his rebuttal report, Dr. Krein explains that ███████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████ *See* Loverro Decl. Ex. AS (Krein Rbt. Rpt.) ¶¶ 100–110. ██

███████████████████████████████████████████████████

██████████████████████████████████████████ *Compare id*. Ex. AR

(Krein Op. Rpt.) ¶ 112 ████████████████████████████████████████████████)

*with* Ex. AS (Krein Rbt. Rpt.) ¶¶ 108–10 █████████████████████████████

█████████████████████████████████).

     Moreover, contrary to ROSS's assertion, Ms. Frederiksen-Cross's reports show that

Dr. Krein's ██████████████████ is repeatable and his findings regarding ███

████████████████████████████████████████████████ are verifiable.

Indeed, Ms. Frederiksen-Cross explains in her rebuttal report that she ███████████████

███████████████████████████████████████████ *Id*.

Ex. AP (Frederiksen-Cross Rbt. Rpt.) ¶¶ 41–54. Tellingly, however, Ms. Frederiksen-Cross did

not report what her analysis revealed with respect to ████████████████████████

████████████████████████████████████████████████████████████████

_____

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████. Loverro
Decl. Ex. AN (Frederiksen-Cross Op. Rpt.) at Exhibit P. In her rebuttal report, she critiqued Dr.
Krein's methodology and explained ████████████████████████████████████████
██████████ *Id*. Ex. AP (Frederiksen-Cross Rbt. Rpt.). In her surrebuttal report, she
improperly offered further critiques of Dr. Krein's methodology, results, and conclusions; and
explained the additional analyses she performed challenging the same. *Id*. Ex. AQ (Frederiksen-
Cross Surrebuttal Rpt.). As explained in Plaintiffs' Motion to Exclude Certain Testimony of Ms.
Frederiksen-Cross (D.I. 261), it was improper for Ms. Frederiksen-Cross to submit a surrebuttal
report in this case and her opinions and testimony therein concerning Dr. Krein's opening report
should be excluded.

██████████████████████    *See id.* Exs. AP (Frederiksen-Cross Rbt. Rpt.) ¶¶ 41–54, AT (Krein Rpl. Rpt.) ¶¶ 125–136.

Finally, footnote 2 to ROSS's own Motion shows why the Motion should be denied. In that footnote, ROSS asserts that "[t]o the extent that Dr. Krein did disclose enough of any portion of his methodology to allow ROSS to test his conclusions, his conclusions are incorrect." Def.'s Br. 10 n.2. In support of this assertion, ROSS cites to the declaration of Ms. Frederiksen-Cross, which was submitted concurrently with ROSS's Motion, who testifies about the results of her analyses of Dr. Krein's methodology, results, and conclusions. *Id.* (citing D.I. 280 (Frederiksen-Cross Decl.) ¶¶ 39–43). ROSS, however, cannot have it both ways: if ROSS was able to test and challenge Dr. Krein's conclusions sufficiently to argue that it was flawed, his methodology was not insufficiently disclosed. In light of Ms. Frederiksen-Cross's reports and accompanying declaration to ROSS's Motion, it is clear that this is a matter to be resolved on cross-examination, not exclusion of Dr. Krein's opinion. *See Cook*, 580 F. Supp. 2d at 1122 ("The dispute between the two experts about whether [plaintiff's expert's] methods and results could be fully replicated, at all or from the information he provided, presents a jury question that requires consideration of both experts' qualifications and methodology . . . [a]s a result of these considerations and the fact that [defendant's expert] admittedly was able to test and evaluate most of [plaintiff's expert's] work, I find that his remaining complaints go to the weight and credibility of [plaintiff's experts] proffered testimony, and not to whether it is admissible.").

## B. Dr. Krein's Opinions Concerning ROSS's Copying and Knowledge of LegalEase's Copying Are Not Inadmissible

ROSS next claims that Dr. Krein is precluded from offering opinions and testimony concerning (1) whether ROSS and LegalEase copied Plaintiffs' Westlaw Content; and (2) the credibility of ROSS's witnesses, ROSS's state of mind, its motivations, and whether ROSS's

conduct constituted tortious interference.  Def.'s Br. 12–14.  ROSS is incorrect.  While it is the

jury's job to decide factual issues, experts regularly give opinions on those issues, and an expert

opinion simply is "not objectionable just because it embraces an ultimate issue."  *See* Fed. R.

Evid. 704(a); *Dunn v. HOVIC*, 1 F.3d 1362, 1368 (3d Cir. 1993), *modified*, 13 F.3d 58 (3d Cir.

1993) ("expressions of opinion on the ultimate fact in issue" do not "impermissibly invade the

province of the jury").  Accordingly, the inquiry is not whether an expert's opinion embraces an

ultimate issue to be decided by the trier of fact, but rather, whether the expert's opinion will

assist the trier of fact.  If it will, it is admissible.  *See In re Japanese Elec. Prod. Antitrust Litig*.,

723 F.2d 238, 278 (3d Cir. 1983), *rev'd on other grounds*, 475 U.S. 574 (1986) (holding

"expressions of expert opinion on the ultimate facts" are admissible "if they will assist the trier

of fact"); *see also Karns v. Emerson Elec. Co*., 817 F.2d 1452, 1459 (10th Cir. 1987) (district

court's admission of expert testimony of "what result to reach on two of the elements of

plaintiff's case" was within its discretion given "the facts were of a sufficiently technical nature

that expert testimony could be expected to assist the jury in deciding the case").

Courts routinely have held that opinions concerning copying and knowledge, including

the facts underlying those issues, would assist the jury and are admissible.  ***First***, with respect to

copying, the Third Circuit repeatedly has held that in a copyright case, an expert may opine on

whether actual copying occurred.  *See, e.g., Dam Things from Denmark, a/k/a Troll Co. ApS, v.

Russ Berrie & Co., Inc.*, 290 F.3d 548, 562 (3d Cir. 2002) ("opinions of experts may be called

upon in determining whether there is sufficient similarity between the works so as to conclude

that the alleged infringer 'copied' the work"); *Whelan Assocs., Inc. v. Jaslow Dental Lab'y, Inc*.,

797 F.2d 1222, 1232 (3d Cir. 1986) ("expert testimony may be received to aid the trier of fact,"

in the substantial similarity inquiry, to "decide whether there is sufficient similarity between the

two works in question to conclude that the alleged infringer used the copyrighted work in making his own"); *New Old Music Grp., Inc. v. Gottwald*, 122 F. Supp. 3d 78, 85 (S.D.N.Y. 2015) (expert evidence "admissible on the issue of 'probative similarity'" where it discusses "the works' relationship to other earlier works, for the purpose of illuminating whether similarities between the two works are more likely due to copying or independent creation").[6]

Here, Dr. Krein provided just such opinions concerning ROSS's and LegalEase's copying. As he explains,  Ex. AR (Krein Op. Rpt.) ¶ 104. There is no question that Dr. Krein can opine about the facts relevant to ROSS's copying, including facts surrounding

. *See Dam Things,* 290 F.3d at 562; *Whelan*, 797 F.2d at 1232; *New Old Music*, 122 F. Supp. 3d at 85. Moreover, given the complex nature of this case and the facts surrounding ROSS's copying, Dr. Krein's

will undoubtedly assist the jury in making its determination. *See Whelan*, 797 F.2d at 1232.

To argue Dr. Krein's opinion is inadmissible, ROSS cites to a portion of the court's decision in *Sahuc v. Tucker*, which states that "copying is an issue to be determined by the

<hr />

[6] The Third Circuit also has held that in copyright cases involving more difficult materials, like computer programs, it is proper for the court to adopt "a single substantial similarity inquiry according to which both lay and expert testimony would be admissible." *See Whelan*, 797 F.2d at 1233 (collecting cases adopting this standard in copyright cases involving difficult materials). In such cases, an expert may opine not just on actual copying, which is permissible in all cases, but on whether there was "unlawful appropriation." *Id.* at 1232.

comparison of works, not credibility." Def.'s Br. 14 (citing 300 F. Supp. 2d 461, 467 (E.D. La. 2004) (quoting *Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 577 (5th Cir. 2003))). Yet, that decision is inapposite. There, the court was not considering testimony of actual copying as is the case here, but rather whether the defendant "was an unethical artist out to make a quick dollar by defrauding the public and pirating Sahuc's life work." *Id.*

     **Second**, courts routinely permit an expert to testify to underlying facts that show evidence of knowledge. *See, e.g., Sound View Innovations, LLC v. Hulu, LLC*, 2019 WL 4640393, at *6 (C.D. Cal. Aug. 5, 2019) (allowing expert testimony on "the technical information available to Defendant and why a person with such information would or should have known of the facts that a jury is to consider in assessing whether the alleged infringer knew or should have known of the potential infringement") (citation omitted); *Bombardier Recreational Prod. Inc. v. Arctic Cat, Inc.*, 2017 WL 758335, at *4 (D. Minn. Feb. 24, 2017) (allowing expert testimony on the facts underlying a willfulness claim because it "would help the jury understand the technical evidence and provide relevant context regarding the [] industry"). Likewise, expert testimony is admissible when it provides the finder-of-fact "a frame of reference upon which to base its conclusions about [the defendant's] behavior." *See Oxford Gene Tech. Ltd. v. Mergen Ltd.*, 345 F. Supp. 2d 431, 443 (D. Del. 2004) (expert testimony admissible where she had specialized knowledge that would help the trier of fact on the issue of willfulness and, in particular, reasonable corporate behavior); *see also Zimmer Surgical, Inc. v. Stryker Corp.*, 365 F. Supp. 3d 466, 501 (D. Del. 2019) ("To the extent [plaintiff's expert's] opinions may give the jury a frame of reference upon which to base its conclusion about [defendant's] behavior, his opinions are relevant."). The same is true for expert testimony explaining why a defendant's conduct is inconsistent with industry customs and practices. *See Reach Music Pub.,*

*Inc. v. Warner Chappell Music, Inc.*, 988 F. Supp. 2d 395, 405 (S.D.N.Y. 2013); *see also Bombardier*, 2017 WL 758335, at *4.

ROSS attempts to recast Dr. Krein's opinions on the facts underlying knowledge as improper opinions concerning ROSS's subjective state of mind. But ROSS is mistaken. The only thing Dr. Krein will opine on beyond explaining the facts surrounding ROSS's copying is what, based on the customs and practices in the AI and machine learning industry, a reasonable company in ROSS's position would know or what to know when purchasing a large training data set for use in a machine learning model. His opinions are relevant and admissible as they will assist the trier of fact by providing a frame of reference upon which to base its conclusion about ROSS's conduct and purported knowledge. *See Oxford*, 345 F. Supp. 2d at 443; *Zimmer*, 365 F. Supp. 3d at 501; *see also Sound View*, 2019 WL 4640393, at *6; *Bombardier*, 2017 WL 758335, at *4. Dr. Krein will not be opining about the subjective state of mind of ROSS or its employees. Accordingly, ROSS's motion should be denied.

### C. Dr. Krein Is Qualified to Opine about the Market for AI Training Data and Plaintiffs' Westlaw Content

ROSS's final argument is that Dr. Krein is unqualified to testify about the market for AI training data solely because he is not an economist. Def.'s Br. 14–16. Not so. Rule 702 has three major requirements: "(1) the proffered witness must be an expert, *i.e.*, must be qualified; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge; and (3) the expert's testimony must assist the trier of fact." *See Pineda v. Ford Motor Company*, 520 F.3d 237, 244 (3d Cir. 2008). With respect to first prong, the Third Circuit "interpret[s] Rule 702's qualification requirement liberally" and has held that a "broad range of knowledge, skills, and training qualify an expert." *Id*. (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741 (3d Cir. 1994)). This liberal policy of admissibility extends to the substantive as well as the

formal qualifications of experts. *Id*. Indeed, the Third Circuit has specifically held that "it is an abuse of discretion to exclude testimony simply because the trial court does not deem the proposed expert to be the best qualified or because the proposed expert does not have the specialization that the court considers most appropriate." *Id*. (citing *Holbrook v. Lykes Bros. S.S. Co.*, 80 F.3d 777, 782 (3d Cir. 1996)).

Here, there can be no question that Dr. Krein has the requisite experience, knowledge, skills, and training to qualify as an expert in AI and machine learning. *See supra* 3, 8. As noted above, Dr. Krein has experience with, and specialized knowledge of, the market for AI training data, including with respect to the kinds of training data that is sold and purchased in that market and by whom, as well as hands on experience as a CEO and CTO. *See* Loverro Decl. Ex. AR (Krein Op. Rpt.) ¶¶ 8, 154; *see also* Means 2d Decl. Ex. 108 (Krein Tr.) 273:15–274:13. As Dr. Krein's testimony will assist the trier of fact in making its determination about the actual and potential markets for using the Westlaw Content as training data, they are admissible.[7] *See In re Karns*, 817 F.2d at 1459; *Japanese Elec.*, 723 F.2d at 27; *see also Pineda,* 520 F.3d at 244.

ROSS offers no justification for why Dr. Krein needs to be qualified as an economics expert to be able to opine about the market for AI training data. Nor does ROSS explain how Dr. Krein's specialized experience and knowledge is insufficient to qualify him as an expert on this issue. Instead, it cherry-picks portions of Dr. Krein's deposition transcript in which he explained precisely why he is qualified to offer the opinions that he does. Indeed, although

---

[7] Were the Court to exclude Dr. Krein on this basis, it also would have to exclude the testimony of ROSS's expert, Dr. Alan Cox, who opines extensively about ███████████ ████████████████████████████████ *See* Loverro Decl. Exs. AK, AL, AM, and AN (Cox Rpts.).

ROSS cites Dr. Krein's testimony several times in its Motion, each time it does it omits the portion emphasized in bold below:



.

Means 2d Decl. Ex. 108 (Krein Tr.) 273:15–274:13; *see also* Def.'s Br. 14–16.  In any case, ROSS's challenges to Dr. Krein's testimony, at best, go to the weight to be accorded to the testimony, not admissibility.  *See Tarkus Imaging, Inc. v. Adobe Sys., Inc.*, C.A. No. 10-63, 2012 WL 12904235, at *2 (D. Del. June 14, 2012) (defendant can challenge expert's opinion "through cross-examination and presentation of contrary expert testimony"); *see also Evolved Wireless, LLC v. Apple Inc.*, C.A. No. 15-542, 2019 WL 1178517, at *3 (D. Del. Mar. 13, 2019) ("Any alleged flaws in the expert's damages theory concern the weight to be afforded the testimony, not its admissibility. Effective cross-examination and the presentation of contrary evidence should be adequate to prevent the jury from being misled."); *Acosta*, 2019 WL 257697, at *2 ("Cross-examination at trial will afford Defendant ample opportunity to pick out purported methodological errors and to present any evidence contrary to [expert's] admissible opinions.").

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that ROSS's Motion be denied.

Morris, Nichols, Arsht & Tunnell LLP

*/s/ Michael J. Flynn*

_____

Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com

*Attorneys for Plaintiffs and Counterdefendants*
*Thomson Reuters Enterprise Center GmbH*
*and West Publishing Corporation*

OF COUNSEL:

Dale M. Cendali
Joshua L. Simmons
Eric A. Loverro
Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY  10022
(212) 446-4800

Miranda D. Means
Kirkland & Ellis LLP
200 Clarendon Street
Boston, MA 02116
(617) 385-7500

January 30, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on January 30, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on January 30, 2023, upon the following in the manner indicated:

David E. Moore, Esquire                                         *VIA ELECTRONIC MAIL*
Bindu Palapura, Esquire
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE  19801
*Attorneys for Defendant and Counterclaimant*

Mark A. Klapow, Esquire                                         *VIA ELECTRONIC MAIL*
Lisa Kimmel, Esquire
Crinesha B. Berry, Esquire
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, DC  20004
*Attorneys for Defendant and Counterclaimant*

Gabriel M. Ramsey, Esquire                                     *VIA ELECTRONIC MAIL*
Jacob Canter, Esquire
Warrington Parker, Esquire
CROWELL & MORING LLP
3 Embarcadero Center, 26th Floor
San Francisco, CA  94111
*Attorneys for Defendant and Counterclaimant*


*/s/ Michael J. Flynn*
_____
Michael J. Flynn (#5333)