IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

THOMSON REUTERS ENTERPRISE ........)
CENTRE GMBH and WEST PUBLISHING ...)
CORPORATION, ...........................................)
..................................................................)
..................................................................)
..............................Plaintiffs and ................) C.A. No. 20-613 (SB)
..............................Counterdefendants, .......)
..................................................................) REDACTED - PUBLIC VERSION
...........v. ................................................)
..................................................................)
ROSS INTELLIGENCE INC., ......................)
..................................................................)
..............................Defendant and .............)
..............................Counterclaimant. ..........)

**PLAINTIFFS' OPPOSITION TO ROSS INTELLIGENCE INC.'S
MOTION FOR SUMMARY JUDGMENT AS TO
ROSS'S AFFIRMATIVE DEFENSE OF FAIR USE**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com

OF COUNSEL:

*Attorneys for Plaintiffs and Counterdefendants*
*Thomson Reuters Enterprise Center GmbH*
*and West Publishing Corporation*

Dale M. Cendali
Joshua L. Simmons
Eric A. Loverro
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
(212) 446-4800

Miranda D. Means
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
(617) 385-7500

Original filing date: January 30, 2023
Redacted filing date: February 6, 2023

## <u>TABLE OF CONTENTS</u>

SUMMARY OF THE ARGUMENT ........................................................................................ 1

RESPONSE TO ROSS'S STATEMENT OF THE FACTS ........................................................ 3

    A.    The Westlaw Content.................................................................................... 3

    B.    The ROSS Platform ..................................................................................... 3

    C.    The Creation of the Bulk Memos and ROSS's Purpose ........................................ 4

ARGUMENT ...................................................................................................................... 6

I.    ROSS CANNOT MEET ITS BURDEN OF ESTABLISHING FAIR USE .................... 6

    A.    Factor One: ROSS's Commercial Purpose to Replace Westlaw ........................... 6

    B.    Factor Two: The Westlaw Content is Creative ................................................... 12

    C.    Factor Three: ROSS's Copying Was Substantial ............................................... 15

    D.    Factor Four: ROSS Harmed the Market for Westlaw Content ............................ 17

CONCLUSION.................................................................................................................... 20

## **TABLE OF AUTHORITIES**

**Cases**

**Page(s)**

*Am. Geophysical Union v. Texaco Inc.*,
  60 F.3d 913 (2d Cir. 1994)...................................................................................7, 9, 12

*Assessment Techs. of WI, LLC v. WIREdata, Inc.*,
  350 F.3d 640 (7th Cir. 2003) ..............................................................................9

*Baker v. Selden*,
  101 U.S. 99 (1879)...............................................................................................10

*Bikram's Yoga Coll. of India, L.P. P'ship v. Evolation Yoga, LLC*,
  803 F.3d 1032 (9th Cir. 2015) ............................................................................15

*Campbell v. Acuff-Rose Music, Inc.*,
  510 U.S. 569 (1994).............................................................................................8, 17

*Capitol Recs., LLC v. ReDigi Inc.*,
  910 F.3d 649 (2d Cir. 2018).................................................................................18

*Castle Rock En., Inc. v. Carol Pub. Grp., Inc.*,
  150 F.3d 132 (2d Cir. 1998).................................................................................16, 19

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986).............................................................................................6

*Dr. Seuss Enters., LP v. ComicMix LLC*,
  983 F.3d 443 (9th Cir. 2020) ..............................................................................6

*Dun & Bradstreet Software Servs. v. Grace Consulting, Inc.*,
  307 F.3d 197 (3d Cir. 2002).................................................................................14

*Educ. Testing Servs. v. Katzman*,
  793 F.2d 533 (3d Cir. 1986).................................................................................14

*Experian Info. Solutions, Inc. v. Nationwide Marketing Servs.*,
  893 F.3d 1176 (9th Cir. 2018) ............................................................................17

*FameFlynet, Inc. v. Jasmine Enters., Inc.*,
  344 F. Supp. 3d 906 (N.D. Ill. 2018) ..................................................................19

*Feist Publ'ns v. Rural Tel. Serv. Co., Inc.*,
  499 U.S. 340 (1991).............................................................................................10, 15

*FMC Corp. v. Control Sols., Inc.*,
  369 F. Supp. 2d 539 (E.D. Pa. 2005) ....................................................................12

*Fox News Network, LLC v. TVEyes, Inc.*,
  883 F.3d 169 (2d Cir. 2018)..................................................................................12

*Georgia v. Public.Resource.org, Inc.*,
  140 S. Ct. 1498 (2020)..........................................................................................12

*Google LLC v. Oracle*,
  141 S. Ct. 1183 (2021)..........................................................................................16

*Greenbie v. Hollister Noble*,
  151 F. Supp. 45 (S.D.N.Y. 1957) ...........................................................................9

*Harper & Row, Publ'rs, Inc. v. Nation Enters.*,
  471 U.S. 539 (1985).......................................................................................*passim*

*Jedson Eng'g, Inc. v. Spirit Const. Servs., Inc.*,
  720 F. Supp. 2d 904 (S.D. Ohio 2010) .................................................................14

*L.A. News Serv. v. Tullo*,
  973 F.2d 791 (9th Cir. 1992) ................................................................................12

*Magic Mktg., Inc. v. Mailing Servs. of Pittsburgh, Inc.*,
  634 F. Supp. 769 (W.D. Pa. 1986)........................................................................15

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986)................................................................................................6

*Matthew Bender & Co. v. West Publ'g Co.*,
  158 F.3d 693 (2d Cir. 1998)......................................................................13, 14, 17

*Matthew Bender & Co. v. West Publ'g Co.*,
  No. 94 Civ. 589, 1997 WL 266972 (S.D.N.Y. May 19, 1997)....................13, 14, 17

*McGucken v. Pub Ocean Ltd.*,
  42 F. 4th 1149 (9th Cir. 2022) ................................................................................9

*Mitel, Inc. v. Iqtel, Inc.*,
  124 F.3d 1366 (10th Cir. 1997) ............................................................................14

*Monge v. Maya Mags., Inc.*,
  688 F.3d 1164 (9th Cir. 2012) ..........................................................................7, 19

*Murphy v. Millennium Radio Grp. LLC*,
  650 F.3d 295 (3d Cir. 2011).........................................................................8, 9, 17

*New Era Publications Int'l, ApS v. Carol Publ'g Group*,
    904 F.2d 152 (2d Cir. 1990)......................................................................16

*On Davis v. The Gap, Inc*,
    246 F.3d 152 (2d Cir. 2001)......................................................................18

*Pac. & S. Co., Inc. v. Duncan*,
    744 F.2d 1490 (11th Cir. 1984) ..................................................................8

*RJ Control Consultants, Inc. v. Multiject, LLC*,
    981 F.3d 446 (6th Cir. 2020) ....................................................................10

*Rogers v. Koons*,
    960 F.2d 301 (2d Cir. 1992).........................................................................8

*Schroeder v. William Morrow & Co.*,
    566 F.2d 3 (7th Cir. 1977) ........................................................................13

*Sega Enterprises Ltd. v. Accolade, Inc.*,
    977 F.2d 1510 (9th Cir. 1992) .......................................................11, 12, 20

*Soc'y of Holy Transfig. Monastery, Inc. v. Gregory*,
    689 F.3d 29 (1st Cir. 2012).............................................................8, 10, 16

*Solid Oak Sketches, LLC v. 2K Games, Inc.*,
    449 F. Supp. 3d 333 (S.D.N.Y. 2020)......................................................19

*Sony Computer Entertainment, Inc. v. Connectix Corp.*,
    203 F.3d 596 (9th Cir. 2000) ....................................................................11

*TD Bank N.A. v. Hill*,
    928 F.3d 259 (3d Cir. 2019).........................................................................6

*TD Bank, N.A. v. Hill*,
    No. 12 Civ. 7188, 2015 WL 4523570 (D.N.J. Jul. 27, 2015)....................12

*Ticketmaster Corp. v. Tickets.com*,
    No. 99 Civ. 7654, 2003 WL 21406289 (C.D. Cal. Mar. 7, 2003) ..............9

*Video Pipeline, Inc. v. Buena Vista Home Ent.*,
    342 F.3d 191 (3d Cir. 2003).........................................................6, 7, 8, 20

*Warren Publishing, Inc. v. Microdos Data Corp.*,
    115 F.3d 1509 (11th Cir. 1997) ................................................................15

*West Pub. Co. v. Mead Data Cent., Inc.*,
    616 F. Supp. 1571 (D. Minn. 1985)........................................................7, 13

*West Pub. Co. v. Mead Data Cent., Inc.*,
   799 F.2d 1219 (8th Cir. 1986) ..........................................................................13

*West Publishing Co. v. Edward Thompson Co.*,
   169 F. 833 (E.D.N.Y. 1909)..............................................................................9

*Worldwide Church of God v. Phila. Church of God*,
   227 F.3d 1110 (9th Cir. 2000) ....................................................................8, 19

*Wright v. Warner Books, Inc.*,
   953 F. 2d 731 (2d Cir. 1991)............................................................................15

**Statutes**

17 U.S.C 106(2) .............................................................................................10

17 U.S.C. §107(1) ............................................................................................6

17 U.S.C. § 107(2) ..........................................................................................12

17 U.S.C. § 107(3) ..........................................................................................15

17 U.S.C. § 107(4) ..........................................................................................17

**Rules**

Fed. R. Civ. P. 56(a) .........................................................................................6

Plaintiffs respectfully submit this opposition to ROSS's Motion for Summary Judgment as to ROSS's Affirmative Defense of Fair Use (D.I. 272) ("Def.'s Br.").[1]

## SUMMARY OF THE ARGUMENT

ROSS has not met its burden of showing fair use as a matter of law.  This is *not* a situation where ROSS copied to create an interoperable product, to study functionality, or to access something in the public domain.  As Plaintiffs explained in their opening brief on ROSS's defenses, ROSS copied substantial, creative expression of Plaintiffs' attorney-editors, and infringed Plaintiffs' copyrights, because it wanted a cohesive, organized synthesis of key legal issues connected to selected case passages to improve its competing commercial product.  D.I. 254 ("Pls.' Br.").  All four factors thus weigh definitively against fair use.

As to the purpose and character of the use (factor one), ROSS used the Westlaw Content to create a legal research product that would compete with and replace Westlaw.  Such commercial, substitutive use alone is enough to deny ROSS's Motion.  And ROSS copied in bad faith, accessing the Westlaw Content illicitly after it was refused a license.  ROSS tries to characterize its use as transformative, arguing that it copied the Westlaw Content as an "intermediate" step to gain access to underlying judicial opinions, but this makes no sense. ████████████████████████████ and could have readily obtained others from public sources. And LegalEase provided ROSS with more than judicial opinions, namely, 25,000 Bulk Memos consisting of questions copied from West Headnotes and corresponding case passages organized within West topics. ██████████████████████████████████

██████████████████████████████████

██████████████████████████████████

---

[1]   Capitalized terms not defined herein were previously defined in Plaintiffs' opening brief in support of their motion for summary judgment No. 3.  D.I. 254 ("Pls.' Br.").

As to the nature of the work (factor two), the Westlaw Content is creative, which weighs against fair use and undermines ROSS's claim it did not copy protectable content.  ROSS's claim that the Westlaw Content is highly constrained by the judicial opinions is undermined by its own experts. ███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████

As to the amount and substantiality of the copying (factor three), ROSS's copying was both qualitatively and quantitatively substantial. ███████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████████ These editorial enhancements are the "heart" of Westlaw and what makes it unique, and obtaining them was not merely incidental to ROSS's project, it was the entire goal.  ROSS's assertions that its copying was not substantial and that ROSS copied "little" creative expression thus fall flat.

As to the effect upon the potential market for or value of the copyrighted work (factor four), the undisputed facts show market harm, including because ROSS: ████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████. The harm would be greater if copying like ROSS's were widespread.  ROSS dismisses a market for training data as "imaginary," but this ignores both the evidence of a *potential* market, and the harm to Plaintiff's existing market and use of the Westlaw Content as its own training data. Taken together, ROSS has not shown it is entitled to summary judgment; indeed, no reasonable jury could find fair use.

<u>**RESPONSE TO ROSS'S STATEMENT OF THE FACTS**</u>

Plaintiffs incorporate by reference the statement of facts from the opening brief in support of their summary judgment motion No. 3.  Pls.' Br. 3–5.  Plaintiffs agree that the facts material to fair use are undisputed but clarify the following that ROSS omits or mischaracterizes.

### A.  The Westlaw Content

West's attorney-editors create editorial enhancements, including synopses of judicial opinions and West Headnotes.  D.I. 256 ("Oliver Decl.") ¶ 4.  Attorney-editors select which issues to include in a given headnote, how many headnotes should be drafted for any given case, how to word the headnote itself, and to which case passage that headnote should correspond.  *Id.* ¶¶ 5–6.  West's classifiers then assign those West Headnotes and corresponding judicial opinions to a West Key Number, integrating both into the organization of the WKNS.  *Id.* ¶ 9.  ████

████████████████████████████████████████████████

████████  D.I. 255 (Means Decl.), Exs. 1 (Al-Kofahi Tr.) 11:13–17:5, 37:20–41:15, 44:3–45:15; 12 (Moulinier Tr.) 72:13–74:10, 74:11–13, 104:18–20, 108:19–24, 143:6–11; 22 (Krein Op. Rpt.) at 34–37; 100 ██████████████████████).  Plaintiffs have a policy against licensing Westlaw to competitors.  Oliver Decl. ¶ 13; Means Decl. Exs. 50.[2]

### B.  The ROSS Platform



████████████████████████ Means Decl. Ex. 2 (Arruda Tr.) 39:1–3.  ████████████████████████████████████████ *Id.* Exs. 15 (van der Heijden 30(b)(6) Tr.) 55:21–56:20 ████████████████  ████████████████ 62 (ROSS-009501052); 2 (Arruda

---

[2]   ROSS's "Statement of Facts" mischaracterizes Plaintiffs' allegations.  Def.'s Br. 10–12.  As discussed in the argument section below, Plaintiffs do not allege topics, subtopics, and key numbers are a functional system; and ROSS omits the full scope of its copying and mischaracterizes the harm to the market for Plaintiff's Westlaw Content.  *See infra* 12–15, 17–20.

Tr.) 114:10–20, 114:25–115:11. ██████████████████████████

██████ *Id.* Ex. 13 (Ovbiagele Tr.) 48:23–50:9; 69 (ROSS-010271831). ████████

███████████████████████████████████████████████████████

██. *Id.* Ex. 15 (van der Heijden 30(b)(6) Tr.) 239:17–19; Ex. 22 (Krein Op. Rpt.) ¶ 149.  Rather,

███████████████████████████████████████████████████

██████████████████████. *Id.* Ex. 2 (Arruda Tr.) 275:23–276:12. ██████████████

████████████████████████████████████████

█████████████████████████████. *Id.* Exs. 50 (ROSS-003390563) (emails

between T. Hamilton and M. Pritchard); 26 (ROSS's Supp. Resps. Pls.' 1st Interrogs.) No. 11;

101 (TR-0908413) ███████████ Ultimately, ██████████████████████████

██████████████████████. *Id.* Exs. 68; 60.[3]

### C.     The Creation of the Bulk Memos and ROSS's Purpose

████████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████. Means Decl.

Exs. 30; 31; 22; 91.[4] ████████████████████████████████████

██████████████████████. *Id.* Exs. 31; 30; 38; 102. ██████████████████

████████████████████████████████████████████

████████. *Id.* Exs. 31; 30; 38. █████████████████████████████

███████████████████████████. *Id.* Exs. 4; 92; 95. ████████████████

---

[3] ██████████████████████████████████████████████████

Means Ex. 68 (ROSS-010164290). ████████████████████████████████

███████████████. *See generally* Pls.' Br.

[4] ██████████. Def.'s Br. 3. ████████████████████████████████████

██████████████████████████████████████████████████.



. Def.'s Br. 5.  Plaintiffs clarify that

D.I. 281-01 (Hafeez Tr.) at 78:1–17.

Means Decl. Exs. 4 (Cahn Tr.) 195:14–19

; 7 (Hafeez Tr.) 125:24–126:2

102 (TR-0076478).[5]  At ROSS's direction, to

. *Id.* Exs. 24 (Malackowski Op. Rpt.) at 53; 103 (TR-0836004); 5 (Cox Tr.) 246:8–10.

. *Id.* Exs. 19 (Frederiksen-Cross Op. Rpt.) ¶¶ 25–27.

Declaration of Miranda D. Means, filed concurrently ("Means 2d Decl.") Ex. 105 (Krein Rpl. Rpt.) at 9; D.I. 255 (Means

---

[5]   ROSS asserts that the questions in the Bulk Memos were more similar to judicial opinions than West Headnotes.  Def.'s Br. 6–7.  That issue is disputed and irrelevant to fair use.  *See* Means Decl. Exs. 20 (Frederiksen-Cross Op. Rpt.) at 42, Ex. P; 6 (Frederiksen-Cross Tr.) 313:17–320:3; 21.

.  Means Decl. Exs. 19; 21.

Decl.) 17 (Branting Op. Rpt.) ¶¶ 46–47.  During featurization, 

*Id.* Ex. 105 (Krein Rpl. Rpt.) at

9.  ROSS also used

*Compare id.* Ex. 110 (TR-0179847) *with id.* Ex. 111 (ROSS-010128683); Ex.

109 (van der Heijden Tr.) at 415:14–21.

## ARGUMENT

To be entitled to summary judgment, the movant must show that there is "no genuine

dispute as to any material fact" and the movant "is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a).  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Matsushita Elec. Indus.*

*Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

## I.      ROSS CANNOT MEET ITS BURDEN OF ESTABLISHING FAIR USE

As fair use is "an affirmative defense," ROSS "bears the burden of proof."  *See Video*

*Pipeline, Inc. v. Buena Vista Home Ent.*, 342 F.3d 191, 197 (3d Cir. 2003); *see also Dr. Seuss*

*Enters., LP v. ComicMix LLC*, 983 F.3d 443, 459 (9th Cir. 2020) (same).  As detailed below and

in Plaintiffs' opening brief on fair use, ROSS cannot meet its burden or establish that any fair use

factors weigh in its favor.  Pls.' Br. 3–5; *see, e.g.*, *TD Bank N.A. v. Hill*, 928 F.3d 259, 278 (3d

Cir. 2019) (finding no fair use where commercial use of work hurt market for the original).

### A.      Factor One: ROSS's Commercial Purpose to Replace Westlaw

The first statutory factor, "the purpose and character of the use," 17 U.S.C. §107(1),

requires consideration of three sub-factors: (1) commercial use; (2) bad faith; and

(3) transformativeness.  *See Monge v. Maya Mags., Inc.*, 688 F.3d 1164, 1173–77 (9th Cir.

2012).  All three of these sub-factors weigh against fair use.

As to **commercial use**, other than fleetingly commenting that there is no "presumption" that a commercial use is unfair, Def.'s Br. 18, ROSS does not address commerciality. Yet, commercial use weighs strongly against a finding of fair use. *Harper & Row, Publ'rs, Inc. v. Nation Enters.*, 471 U.S. 539, 562 (1985) ("'[E]very commercial use of copyrighted material is presumptively an unfair exploitation of the monopoly privilege that belongs to the owner of the copyright.'"); *Video Pipeline*, 342 F.3d at 198 ("If a new work is used commercially rather than for a nonprofit purpose, its use will less likely qualify as fair." (abrogated on other grounds)). "[C]ourts will not sustain a claimed defense of fair use . . . when the copier directly and exclusively acquires conspicuous financial rewards from its use of the copyrighted material." *Am. Geophysical Union v. Texaco Inc.*, 60 F.3d 913, 922 (2d Cir. 1994); *see also West Pub. Co. v. Mead Data Cent., Inc.*, 616 F. Supp. 1571, 1580 (D. Minn. 1985) (finding use of proprietary West content to "enhance [the defendant's] position in the marketplace" was not fair use).

ROSS was admittedly a for-profit, commercial enterprise that charged customers for access to the ROSS Platform. Means Decl. Exs. 5 (Cox Tr.) 115:15–21; 3 (Branting Tr.) 61:5–9, 79:21–80:1; 15 (van der Heijden 30(b)(6) Tr.) 90:4–6; 18 (Cox 2d. Rbt. Rpt.) ¶ 58. ████



. *Id.* Ex. 22 (Krein Op. Rpt.) ¶¶ 82, 100; Ex. 13 (Ovbiagele Tr.) 227:2–22. Moreover, ████



*Id.* Ex. 62 (ROSS-009501052). ████

████████ *See Pac. & S. Co., Inc.  v. Duncan*, 744 F.2d 1490, 1496 (11th Cir. 1984) ("unabashedly commercial" use was not fair use, noting

that the defendant could not "hide the fact that profit is its primary motive."); *see also Murphy v. Millennium Radio Grp. LLC*, 650 F.3d 295, 308 (3d Cir. 2011) (finding commerciality weighed against a finding of fair use).

As to **bad faith**, tellingly ROSS does not address it.  Yet, the Supreme Court held that "the propriety of the defendant's conduct" is part of factor one.  *See Harper*, 471 U.S. at 539 ("Fair use presupposes 'good faith' and 'fair dealing'" (internal citations omitted)); *Rogers v. Koons*, 960 F.2d 301, 309 (2d Cir. 1992) ("tearing the copyright mark off" plaintiff's work bad faith and "militates against . . . fair use").  Obtaining a copyrighted work illicitly, as ROSS did by hiring LegalEase to obtain the Westlaw Content against Plaintiffs' policies and after ROSS was expressly denied such a license, *see supra* 4, constitutes bad faith and weighs against fair use.  *See Harper*, 471 U.S. at 563.

As to **transformativeness**, it exists when a defendant "adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message," rather than merely "supersed[ing] the objects of the original creation."  *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994) (internal quotations omitted).  ROSS's copying is untransformed, as ROSS used the Westlaw Content to create a commercial replacement.  *See Video Pipeline*, 342 F.3d at 199 (substitutes for original were not transformative).  ROSS used the Westlaw Content for the "same intrinsic purpose" as Plaintiffs—as a cogent synthesis of curated points of law, which both Parties used to train their respective AI—which is simply not transformative.  *See Worldwide Church of God v. Phila. Church of God*, 227 F.3d 1110, 1117 (9th Cir. 2000) (copying for same purpose as original was not fair use); *Soc'y of Holy Transfig. Monastery, Inc. v. Gregory*, 689 F.3d 29, 60 (1st Cir. 2012) (translation of religious text was not transformative); *Texaco*, 60 F.3d at 922 (copies of articles for internal research was not

transformative).  And ROSS does not identify any new expression, meaning, or message to the

Westlaw Content, which further shows that its use was not transformative.  *See McGucken v.*

*Pub Ocean Ltd.*, 42 F. 4th 1149, 1158–60 (9th Cir. 2022) (finding use of photograph with no

further purpose or different character was not transformative); *Murphy*, 650 F.3d at 307 (the

"absence of any broader commentary—whether explicit or implicit—significantly undercuts [a

defendant's] argument that [its] use gave any new meaning to the" original work).

     Nonetheless, ROSS asserts its use is transformative for three reasons, none of which have

merit.  ***First***, ROSS contends that LegalEase did not copy headnotes, topics, subtopics, or key

numbers "for sale or license to others," because it merely "used" the West Key Number System

("WKNS") to "reach underlying judicial opinions."  Def.'s Br. 17.  This makes no sense.  ███████

████████████████████████████████████████████████  Means Decl. Ex. 15 (van der Heijden

30(b)(6) Tr.) 239:17–19.[6]  Moreover, ████████████████████████████████████████████████

████  *Id.* Exs. 15 (van der Heijden 30(b)(6) Tr.) 286:6–18; 22 (Krein Op. Rpt.) ¶ 149.  What

ROSS admittedly ████████████████████████████████████████████████████████████████████

████████████████████████████████████.  *Id* Ex. 2 (Arruda Tr.) 275:23–276:12.[7]

     ROSS's assertion that the WKNS is a system and that use of it is transformative, Def.'s

Br. 17, is wrong.  The WKNS is not a system or method of operation in the copyright sense, it is

---

[6]    ROSS's cases are inapposite.  *See Ticketmaster Corp. v. Tickets.com*, No. 99 Civ. 7654, 2003 WL 21406289, at *3–6 (C.D. Cal. Mar. 7, 2003) ("temporary" use of content for the "*limited purpose* of extracting unprotected public facts" (emphasis added)); *Assessment Techs. of WI, LLC v. WIREdata, Inc.*, 350 F.3d 640, 646 (7th Cir. 2003) (*only* way to obtain the public-domain data was copying).  Here, ROSS already had the public domain data in its possession and could have obtained it, as Plaintiffs do, from public sources like PACER and court websites.  *See* Means 2d Decl. Ex. 107 (T. Leighton Tr.) 14:5–15.

[7]    Unlike *West Publishing Co. v. Edward Thompson Co.*, where the court found the works were "entirely rewritten" from the original, 169 F. 833, 865 (E.D.N.Y. 1909), the Westlaw Content was copied verbatim.  And *Greenbie v. Hollister Noble* is not a fair use case, but instead involved two works based on the same event.  151 F. Supp. 45, 67 (S.D.N.Y. 1957).

a selection and arrangement of cases and headnotes, organized within a topical hierarchy that West created, which is protectable under copyright law.  *See Feist Publ'ns v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 350 (1991) (recognizing original selection and arrangement is entitled to copyright protection).  ██████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████ *See supra* 4–5.  ████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████ *See supra* 4–5.[8]

**Second**, ROSS claims that its use is transformative because the Westlaw Content was used to train its ██████████████████████████████████████████████████████

██████████████████████████████.  Def.'s Br. 18.  This is wrong for two reasons.  It is not factually true: ROSS's AI expert, Dr. Karl Branting, admitted that ████████████████████

██████████████████████████  Means Decl. Ex. 3 (Branting Tr.) 188:16–202:3.

And it is legally nonsensical as that would allow wholesale copying of *any* work translated to train an AI, despite the fact that reformatting and translating have never been transformative.

*Gregory*, 685 F. Supp. 2d. at 60–61 (repackaging work to new format was not transformative).

Indeed, translations are paradigmatic derivative works.  17 U.S.C 106(2).  ROSS attempts to distinguish features "about" the Westlaw Content and its expression, but this is a distinction

---

[8]   ROSS cites *Baker v. Selden*—a 19th century case that did not involve fair use—for the proposition that the WKNS is not protectable, but even there the way the plaintiff's described his method in his book was protectable.  101 U.S. 99, 104 (1879).  ROSS also cites *Taylor v. Commissioner*, a tax case from the 1930s concerning whether a copyright gives the owner property rights in the material object in which the work is fixed.  Plaintiffs are not asserting rights in an object.  *See also RJ Control Consultants, Inc. v. Multiject, LLC,* 981 F.3d 446, 454-57 (6th Cir. 2020) (system derived from drawings not protectable, but drawings were).

without a difference.  So-called features "about" the content, including the number of words in

each sentence, the distance between words, and so on, are all components of expression that

make it comprehensible.  ████████████████████████████████████

████████████████████████████████████████████  Means 2d

Decl. 105 (Krein Rpl. Rpt.) ¶¶ 26–30.  Rather, Dr. Branting admitted that ROSS's AI ██████

████████████████████████████████████████████████

████████████████████████████████  Means 2d Decl. Exs.

104 (Branting Rbl. Rpt.) ¶¶ 11, 14; 109 (van der Heijden 30(b)(6) Tr.) 322:11–11, 284:6–285:5;

105 (Krein Rpl. Rpt.) ¶¶ 26–30; Means Decl. Ex. 13 (Ovbiagele 30(b)(6) Tr.) 49:7–16, 60:15–

24, 83:1–18 (testifying ████████████████████████████████████

████████.

     ROSS's copying is thus fundamentally different from the two cases on which it heavily

relies.  In *Sega Enterprises Ltd. v. Accolade, Inc.*, the defendant copied the plaintiff's program

only as necessary to study its functionality to create games that worked therewith and did not

infringe.  977 F.2d 1510, 1514–15 (9th Cir. 1992).  In *Sony Computer Entertainment, Inc. v.

Connectix Corp.*, the defendant copied the software as necessary to observe how it worked so it

could create a game emulator that, again, did not infringe.  203 F.3d 596, 602–08 (9th Cir. 2000).

Here, ROSS copied the Westlaw Content as part of training its AI, and not to study functionality

or create compatibility.  After being denied a license, it copied the creative decisions of West's

attorney-editors precisely because it wanted to replicate them.  Plaintiffs' editorial choices,

including the headnotes and the selection and arrangement of those headnotes and corresponding

case passages within the original WKNS, are the very content from which ROSS's AI learned.[9]

---

[9]  ROSS claims that copying of 91 topics from Westlaw is transformative because it occurred in

*Third*, ROSS touts as transformative its creation of a new legal research platform, arguing that the new platform was creative and benefits the public by broadening public access to public law. ROSS cites *Georgia v. Public.Resource.org, Inc.* in arguing that bringing public access to the law is a public benefit weighing in favor of fair use, but that case involved a non-profit organization copying the state of Georgia's official code for free public use. 140 S. Ct. 1498 (2020). ROSS is a for-profit company, which sold its platform for a fee and aimed to replace Westlaw; and ROSS copied original editorial enhancements, not government works. *See supra* 7–8. Thus, contrary to ROSS's Motion, factor one weighs against fair use.

### B.    Factor Two: The Westlaw Content is Creative

The second fair use factor is "the nature of the copyrighted work," including whether the work is expressive or creative. 17 U.S.C. § 107(2). Although this factor "'has rarely played a significant role in the determination of a fair use dispute,'" *Fox News Network, LLC v. TVEyes, Inc.*, 883 F.3d 169, 178 (2d Cir. 2018), it weighs against fair use here.

The mere fact that the Westlaw Content concerns legal subject matter does not mean it can be copied with impunity. *Id.* (rejecting argument that factual nature of work necessarily favors a finding of fair use). Courts regularly find no fair use for factual works where such works are creative. *See TD Bank, N.A. v. Hill*, No. 12 Civ. 7188, 2015 WL 4523570, at *18 (D.N.J. Jul. 27, 2015) (second factor weighed in favor of plaintiff even where work was factual in nature); *FMC Corp. v. Control Sols., Inc.*, 369 F. Supp. 2d 539, 579 (E.D. Pa. 2005) ("[C]ourts do not hesitate to deny the fair use defense even when the work is 'nonfiction'." (internal quotations and citations omitted)). Here, the Westlaw Content is highly creative,

---

the context of a "laboratory" as experimental "research." But it copied them to build a case classifier for its product—the same purpose as Plaintiffs. *See supra* 3, 6. This is not fair use. *See Texaco*, 60 F.3d at 918 (use within a company for research not fair use); *L.A. News Serv. v. Tullo*, 973 F.2d 791, 792 (9th Cir. 1992) (use for "private study" not fair use).

implicating creative choices, including how to summarize cases in synopses, which and how many case passages and points of law to highlight in headnotes, how to synthesize those points of law and word them in the headnotes, and how to arrange the headnotes and case passages to which they correspond within the WKNS.  Oliver Decl. ¶ 6; Means Decl. Ex. 9 (Lindberg Tr.) 74:9–22, 75:21–76:9, 116:14–119:6.[10]  This weighs factor two against fair use as a matter of law.

ROSS's contrary arguments are inapposite.  ***First***, *Matthew Bender & Co. v. West Publ'g Co.*, on which ROSS heavily relies for its assertion that the Westlaw Content is subject to "thin" copyright protection, involved only the pagination for West's "arrangement of cases."  158 F.3d 693, 707 (2d Cir. 1998).  The district court explicitly did not reach the creativity of headnotes. No. 94 Civ. 589, 1997 WL 266972, *2, n. 1 (S.D.N.Y. May 19, 1997).  A different court that did consider editorial enhancements found that, not only is the "original arrangement of opinions" copyrightable "whenever it is the product of labor, talent, or judgment," but also that "headnotes" and "statements of facts," were entitled to protection.  *West Pub. Co. v. Mead Data Cent., Inc.*, 799 F.2d 1219 (8th Cir. 1986).  The district court in *Mead* found that the copying was not a fair use, noting in its analysis of factor two that "fair use claims involving compilations have been rejected," particularly where the use is "commercial," as is the case here.  *See* 616 F. Supp. at 1580 (citing *Schroeder v. William Morrow & Co.*, 566 F.2d 3 (7th Cir. 1977)).

***Second***, ROSS argues protection is thin because the Westlaw Content was ██████████████

---

[10]  ROSS's claim that certain headnotes are identical or nearly identical to underlying judicial opinions does not mean that the selection and arrangement thereof is not creative.  It is creative to decide what headnotes to write for a given case and how many headnotes to write. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ **!** ██████████████████████. Means 2d Decl. 106 (Leiter Tr.) 257:23–261:7, 38:20–22.  And ROSS's expert acknowledges ██████████████████████████████████████████████. Means Decl. Exs. 20 (Frederiksen-Cross Op. Rpt.) at 42, Ex. P; 6 (Frederiksen-Cross Tr.) 313:17–320:3, Ex. 21.

████████████████████████████   Def.'s Br. 12–13.  Yet for this proposition ROSS relies entirely on the opinions of Dr. Leiter, who himself only speculates without proper support that the WKNS was "generally adopted" in the early 1900s.  *See* D.I. 266 Ex. AU (Leiter Op. Rpt.) at 10–11.  And what matters for copyright protection are the choices available to the *author* when the work was created, not whether the work ultimately became a standard, as shown by the cases ROSS cites.  *See Dun & Bradstreet Software Servs. v. Grace Consulting, Inc.*, 307 F.3d 197, 215 (3d Cir. 2002) ("we examine the [copyrighted work] from the viewpoint of *the creator*"); *see also Mitel, Inc. v. Iqtel, Inc.*, 124 F.3d 1366, 1375 (10th Cir. 1997); *Educ. Testing Servs. v. Katzma*n, 793 F.2d 533, 539 (3d Cir. 1986).[11]  ROSS also argues that the Westlaw Content was dictated by "external constraints," citing to Plaintiffs' *internal* protocols for drafting headnotes, Def.'s Br. 13, but internal protocols are decisions that Plaintiffs made themselves (and could choose to do differently), not constraints on creativity.  *See Jedson Eng'g, Inc. v. Spirit Const. Servs., Inc.*, 720 F. Supp. 2d 904, 916 (S.D. Ohio 2010) (despite external requirements, plaintiff used creativity to satisfy them).  And ROSS's argument is undermined by Dr. Leiter, who testified that LexisNexis and Westlaw organize the law differently and even include different headnotes for the same underlying judicial opinion.[12]  *Supra* 13, n.10.

*Third*, ROSS contends that the ████████████████████████ ████████████████████████████████████   Def.'s Br. 14.  This is not true; ███

---

[11]   ROSS relies on *Dun & Bradstreet*, but that court *rejected* claims that code was dictated by industry practice and custom because there was not the proper consideration of how external factors influenced the creator's choices when the work was being created.  307 F.3d 197, 214–15 (3d Cir. 2002).  ROSS contends that the Westlaw Content is comprised of century old material, but ROSS merely cites to Dr. Leiter for that contention, and his analysis is limited and did not include West Headnotes or the WKNS as a whole.  D.I. 265 at 6–7.

[12]   ROSS cites to cases that involved far fewer creative choices than here, such as *Matthew Bender*, which involved "the names of the attorneys" 1997 WL 266972, at *3, and *Mitel*, which involved industrywide code requirements, 124 F.3d at 1375.

███████████████████████████████████████████████ *See*, *e.g.*, Means 2d
Decl. Exs. 112–114.  This also makes no sense.  Plaintiffs are not asserting that ROSS copied
their editorial *process or system* of creating the Westlaw Content; they are asserting that ROSS
copied the content itself, making this case different from *Warren Publishing, Inc. v. Microdos
Data Corp.*, on which ROSS relies.  115 F.3d 1509, 1518 (11th Cir. 1997) (finding that specific
selection of content was protectable, but *system* for selecting content was not).[13]

> **Finally**, ROSS broadly claims that this factor favors fair use because ROSS did not copy
any protectable Westlaw Content.  Def.'s Br. 14–15.[14]  Factor two focuses on the nature of the
plaintiffs' work as a whole, not the portion that defendant copied.  *Wright v. Warner Books, Inc.*,
953 F. 2d 731 (2d Cir. 1991) ("Factor two focuses solely on the nature of the copyrighted work,"
not whether the defendant copied "fact or expression").  The Westlaw Content is highly creative,
implicating creative choices involving how to arrange and synthesize the law.  Pls.' Br. 3.  Even
considering only what ROSS copied—Plaintiffs' editorial enhancements, including the West
Headnotes, corresponding case passages, and their arrangement within the WKNS—this content
implicates well more than the "minimal degree of creativity" required for protectability.  *See
Feist,* 499 U.S. at 362; D.I. 250 at 11.  Thus, factor two weighs against fair use.

### C.    Factor Three: ROSS's Copying Was Substantial

Factor three considers "the amount and substantiality of the portion used in relation to the
copyrighted work as a whole."  17 U.S.C. § 107(3).  ROSS's copying was both qualitatively and

---

[13]   ROSS argues the West Headnotes are functional ███████████████████████████
████████████ Def.'s Br. 14. ███████████████████████████████████  The cases on which ROSS
relies involve purely functional objects or ideas that are not at issue in this case.  *Bikram's Yoga
Coll. of India, L.P. P'ship v. Evolation Yoga, LLC*, 803 F.3d 1032, 1042 (9th Cir. 2015) (yoga
postures); *Magic Mktg., Inc. v. Mailing Servs. of Pittsburgh, Inc.*, 634 F. Supp. 769, 771–72
(W.D. Pa. 1986) (envelope with phrase "telegram" or "gift check").
[14]   ROSS also repeats its claim that its copying was "intermediate" to obtain uncopyrightable
content; this is false.  *See supra* 9.

quantitatively substantial.  ***First***, in determining whether the copying was qualitatively substantial, which ROSS tellingly ignores, courts consider whether the copier took "the heart" of the work.  *Harper*, 471 U.S. at 544.  Although ROSS did not copy ***all*** of the content available on Westlaw, ROSS took the "heart" of Westlaw— ███████████████████████████████

███████████████████████████████████████████████[15]  *See supra* 3–4.  ROSS also ignores that this inquiry focuses on "whether '[t]he extent of [the] copying' is consistent with or more than necessary to further 'the purpose and character of the use.'"  *See Castle Rock En., Inc. v. Carol Pub. Grp., Inc.*, 150 F.3d 132, 144 (2d Cir. 1998) (no fair use where 643 trivia questions were based on *Seinfeld*, even where whole show was not copied).  ROSS's purpose was not transformative, and in any event, ROSS ███████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████  Means Decl. Ex. 26 (Def.'s Supp. Resps. to Interrog.) No. 11; 13 (Ovbiagele 30(b)(6) Tr.) 186:10–188:17.  Indeed, ROSS executive Jimoh Ovbiagele testified that, ████████████████████████████████████

█████████████████████████████████████████  *Id.* Ex. 13 at 187:23– 188:17.[16]  This weighs factor three against fair use.  *See Gregory*, 689 F.3d at 63 (copying part of works "alone may be qualitatively significant").

    ***Second***, ROSS's copying was quantitaively substantial.  ROSS focuses solely on the 24,933 West Headnotes (and corresponding West Key Numbers) copied in the Bulk Memos, which alone is substantial, but ROSS ignores the indirect copying (through LegalEase's copying

---

[15]  *New Era Publications Int'l, ApS v. Carol Publ'g Group*, is inapplicable as the court found defendant did not copy the "heart" of the work and only as necessary for a transformative purpose.  904 F.2d 152, 158 (2d Cir. 1990).  That is not the case here.
[16]  *Google LLC v. Oracle* is distinguishable because the copying was necessary to achieve the transformative purpose.  141 S. Ct. 1183, 1204–06 (2021).  That was not the case here.

of the Westlaw Content outside the scope of its license), which was even more substantial and involved **hundreds of thousands** of editorially-enhanced cases.  LegalEase's copying was so extensive that it triggered ████████████████████████████████████

████████████████████████████████████████████████.

Means Decl. Exs. 9 (Lindberg Tr.) 70:19–71:2; 103 (TR-0836004); 88 (TR-0039808); 7 (Hafeez Tr.) 88:13–89:20, 93:9–94:3.[17]  ROSS relies on *Matthew Bender* for its claim that copying 75% of West cases would have been permissible, but that was not a fair use case and did not involve copying of similar editorial content.  1997 WL 266972, at *2 ("West's compilation copyright protects its arrangement of cases, its indices, its headnotes and its selection of cases for publication, but these are not what Hyperlaw is copying.").  The court there thus did not reach the question of whether copying thousands of editorial enhancements would have been a fair use. Thus, factor three weighs against fair use as a matter of law.

### D.  Factor Four: ROSS Harmed the Market for Westlaw Content

Factor four considers "the effect of the use upon the potential market for or value of the copyrighted work."  17 U.S.C. § 107(4); *Harper*, 471 U.S. at 566.  Relevant to this analysis is not only the harm to actual or potential markets for the original, but also harm to the market for **potential** derivatives, including "those that creators of original works" would "license others to develop."  *Campbell*, 510 U.S. at 592.  Courts also assess "'whether unrestricted and widespread conduct of the sort engaged in by the defendant'" would harm the potential market for the original.  *Murphy*, 650 F.3d at 308; *see also Harper*, 471 U.S. at 568.

The undisputed facts in the record show multiple types of market harm here.  **First**, "[w]hen a secondary use competes in the rightsholder's market as an effective substitute for the

---

[17]   ROSS relies on *Experian Info. Solutions, Inc. v. Nationwide Marketing Servs.*, for the conclusion that copying of 80% of a database is permissible, but that decision was not about fair use and did not analyze factor three.  893 F.3d 1176, 1186–88 (9th Cir. 2018).

original, it impedes the purpose of copyright to incentivize new creative works by enabling their creators to profit from them."  *Capitol Recs., LLC v. ReDigi Inc.*, 910 F.3d 649, 662 (2d Cir. 2018); *see also Harper*, 471 U.S. at 550.  ███████████████████████████████

█████████████████████████  Means Decl. Ex. 2 (Arruda Tr.) 114:21–24.  ROSS

████████████████████████████████████████████.  *Id.* Exs. 2 (Arruda Tr.)

115:9–11; 114:25–115:2; 15 (van der Heijden 30(b)(6) Tr.) 55:21–56:20, 56:3–20; *Id.* 56

(ROSS-003395895) ████████████████████████████████; 67

(ROSS-010099622) ████████████████████████████████

████████████████████ 58 (ROSS-003428727).  And ROSS's competition resulted in

██████████████████████████████████████████████████████

████████.  *Id.* Exs. 15 (van der Heijden 30(b)(6) Tr.) 364:16–19; 98 (TR-0521595).

     *Second*, ROSS's copying impedes Plaintiffs' ability to license the Westlaw Content and derivative works like the Bulk Memos to third parties in both the traditional and derivative markets therefor.  Not only is there a current market for Westlaw Content, there is also a potential market for Westlaw Content specifically as training data, which is amply demonstrated by Plaintiffs' and ROSS's use of the Westlaw Content as training data.  *See supra* 3–6.  ROSS's copying impairs Plaintiffs' ability to charge others for the same content in these markets.  Means Decl. Ex. 10 (Malackowski Tr.) 76:5–77:22; *see On Davis v. The Gap, Inc*, 246 F.3d 152, 175–76 (2d Cir. 2001) (defendant avoided "paying the customary price," resulting in plaintiff's market harm "through his loss of the royalty revenue to which he was reasonably entitled in the circumstances, as well as through the diminution of his opportunity to license to others").

     ROSS argues that ███████████████████████████████████

██████████████████████████████████.  Def.'s Br. 11.  Not so.  *See Castle Rock*, 150

F.3d at 145–46 (finding that plaintiff's decision not to enter derivative market occupied by defendant did not change fair use analysis); *Monge*, 688 F.3d at 1181 ("The potential market . . . exists independent of the [copyright owner]'s present intent.").  The copyright owner has the right not to enter a market and the "right to change [its] mind." *Worldwide Church*, 227 F.3d at 1119.  Given the existence of a *potential* market, if ROSS's free use of the Westlaw Content as training data was widespread, it would destroy a potentially lucrative licensing market for the Westlaw Content that Plaintiffs could reasonably choose to enter.  *See Harper*, 471 U.S. at 569 (finding fair use where "[i]solated instances of minor infringements, when multiplied many times, become in the aggregate a major inroad on copyright that must be prevented").[18]

> **Third**, copyright law recognizes that exclusivity and, analogously, confidentiality can contribute to the value of a work, such that depriving an author of that exclusivity can decrease the value.  *See Harper*, 471 U.S. at 543 (exclusivity factored into the licensing fee for the work); *FameFlynet, Inc. v. Jasmine Enters., Inc.*, 344 F. Supp. 3d 906, 913 (N.D. Ill. 2018) (loss of ability to control a photographs exclusivity diminished its value); *Monge*, 688 F.3d at 1182. Part of the value of the Westlaw Content inheres in the fact that competitors cannot use it to create comparable works.  *See* Oliver Decl. ¶ 13; Means Decl. Ex. 10 (Malackowski Tr.) 42:3–24.

ROSS itself █████████████████████████████████████████
████████████████████████████████████████████████████
███████████████████████████████████████. Means Decl. Ex. 13

---

[18]   ROSS also contends that Plaintiffs cannot assert market harm by pointing to a so-called "imaginary" market for the Westlaw Content, citing only to *Solid Oak Sketches, LLC v. 2K Games, Inc.*, 449 F. Supp. 3d 333, 353 (S.D.N.Y. 2020).  *Solid Oak* did not require evidence of an *actual* as opposed to a *potential* market.  *Id.*  And that case is entirely different: factor four favored fair use because tattoos in video games could not substitute for actual tattoos, there was no evidence of demand for tattoos in video games, and there was no evidence of a market for licensing tattoos developing.  *Id.*

(Ovbiagele Tr.) at 168:22–170:19.  ROSS thus deprived Plaintiffs of █████████████

███████████████████████████████ *Id.* Ex. 10 (Malackowski Tr.) 76:5–77:22.

ROSS protests that Plaintiffs' current exclusive use of its own proprietary expression for purposes of training its AI is monopolistic.  Def.'s Br. 19.  Not so.  ROSS already had entered the market and was selling the ROSS Platform when it copied the Westlaw Content.  And, as ROSS's own expert acknowledges, ██████████████████████████████████████ Means 2d Decl. Ex. 106 (Leiter Tr.) 26:12–27:6, 38:8–22, 255:3–257:4.  Plaintiffs are not preventing ROSS, or any other competitors, from entering a market simply by choosing not to presently license their proprietary content to competitors to train their AI.[19]

In assessing factor four, courts also consider whether the use harms the public to the extent it "supplies the economic incentive to create and disseminate ideas."  *Harper*, 471 U.S. at 558.  The public benefits from the creativity of Plaintiffs' attorney-editors, who provide insightful editorial content and advanced search algorithms powered by that content.  *See supra* 3.  To allow a competitor to take a copyrighted work and use it for the same purposes to which the author put it to compete with that author would seriously disincentivize the creation and distribution of similar works in the future, and thereby harms the public.[20]

## CONCLUSION

ROSS failed to meet its burden of showing fair use as all of the fair use factors weigh against it.  Plaintiffs request that the Court deny ROSS's motion, and grant them summary judgment on fair use.

---

[19]   *Sega*, which ROSS cites, is distinguishable as it involved intermediate copying to study functionality.  977 F.2d at 1514.  The Westlaw Content was not copied to study functionality. *See supra* 9–10.  ROSS also cites *Video Pipeline* for this point, but it is unclear how this case relates, and the court in *Video Pipeline* found ***no*** fair use, concluding that the fourth factor was neutral.  342 F.3d 191, 199 (3d Cir. 2003) (substitutes for original not transformative).
[20]   ROSS addresses public benefit in factor one, arguing it benefited the public by creating a new research platform.  But ROSS's copying actually disincentivizes the creation of them.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

_____

Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com

*Attorneys for Plaintiffs and Counterdefendants*
*Thomson Reuters Enterprise Center GmbH*
*and West Publishing Corporation*

OF COUNSEL:

Dale M. Cendali
Joshua L. Simmons
Eric A. Loverro
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
(212) 446-4800

Miranda D. Means
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
(617) 385-7500

January 30, 2023

21

## CERTIFICATE OF SERVICE

I hereby certify that on January 30, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on January 30, 2023, upon the following in the manner indicated:

David E. Moore, Esquire                                    *VIA ELECTRONIC MAIL*
Bindu Palapura, Esquire
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE  19801
*Attorneys for Defendant and Counterclaimant*

Mark A. Klapow, Esquire                                    *VIA ELECTRONIC MAIL*
Lisa Kimmel, Esquire
Crinesha B. Berry, Esquire
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, DC  20004
*Attorneys for Defendant and Counterclaimant*

Gabriel M. Ramsey, Esquire                                *VIA ELECTRONIC MAIL*
Jacob Canter, Esquire
Warrington Parker, Esquire
CROWELL & MORING LLP
3 Embarcadero Center, 26th Floor
San Francisco, CA  94111
*Attorneys for Defendant and Counterclaimant*


                                        */s/ Michael J. Flynn*
                                        _____
                                        Michael J. Flynn (#5333)