**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

THOMSON REUTERS ENTERPRISE )
CENTRE GMBH and WEST PUBLISHING )
CORPORATION, )
       ) C.A. No. 20-613-SB
      Plaintiffs/Counterdefendants, )
       ) **JURY TRIAL DEMANDED**
    v. )
       )
ROSS INTELLIGENCE INC., ) **PUBLIC VERSION**
       )
      Defendants/Counterclaimant. )

**DEFENDANT/COUNTERCLAIMANT ROSS INTELLIGENCE INC.'S BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE CERTAIN TESTIMONY, ARGUMENT, OR EVIDENCE REGARDING THE OPINIONS OF PROFESSOR RICHARD A. LEITER**

OF COUNSEL:

Gabriel M. Ramsey
Warrington Parker
Joachim B. Steinberg
Jacob Canter
Christopher J. Banks
CROWELL & MORING LLP
3 Embarcadero Center, 26th Floor
San Francisco, CA 94111
Tel: (415) 986-2800

Mark A. Klapow
Crinesha B. Berry
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004
Tel: (202) 624-2500

Dated: January 30, 2023
10569662 / 20516.00001
Public Version Dated: February 6, 2023

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Andrew L. Brown (#6766)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
abrown@potteranderson.com

*Attorneys for Defendant/Counterclaimant*
*ROSS Intelligence, Inc.*

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................ 1

STATEMENT OF FACTS ................................................................................................... 2

I.      PROFESSOR LEITER'S EXPERT REPORTS .................................................... 2

II.     THE HISTORICAL ORIGINS OF WEST ............................................................ 3

        A.      The Development of the West System................................................................ 3

        B.      West Developed its System So It Could Be Used to Locate Judicial Opinions. .... 5

        C.      West Encouraged Universal Adoption of Its System. ........................................... 6

        D.      The 91 Topics Provided to ROSS Are Legal Terms Many of Which Have Been
                Used For Over One Hundred Years To Organize Judicial Opinions...................... 7

ARGUMENT ....................................................................................................................... 8

I.      PROFESSOR LEITER'S TESTIMONY SATISFIES THE "FIT" TEST—FACTUALLY
        AND LEGALLY ......................................................................................................... 9

        A.      The Opinions Meet the Legal Standard For "Fit"................................................. 9

        B.      The Opinions Are Relevant to Infringement and Fair Use. .................................. 9

II.     PROFESSOR LEITER'S OPINIONS ARE BASED ON A RELIABLE
        METHODOLOGY AND IS NOT SPECULATIVE ...................................................... 13

        A.      Professor Leiter's Methodology Is Reliable. ....................................................... 13

        B.      Professor Leiter's Opinions Are Not Based On Speculation............................... 16

CONCLUSION................................................................................................................... 18

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Cordon Holding B.V. v. Nw. Publ'g Corp.*,
　2002 WL 530991 (S.D.N.Y. Apr. 8, 2002)................................................................8

*Langbord v. United States Dep't of Treasury*,
　832 F.3d 170 (3d Cir. 2016) ..................................................................8, 9, 14, 16

*New York v. Shinnecock*,
　523 F. Supp. 2d 185 (E.D.N.Y.2007) ....................................................................14

*Orbital Eng'g, Inc. v. Buchko*,
　578 F. Supp. 3d 727, 733 (W.D. Pa. 2022)..............................................................9

*Siegel v. Warner Bros. Ent. Inc.*,
　2009 WL 2014164 (C.D. Cal. July 8, 2009) ............................................................8

*In re TMI Litig.*,
　193 F.3d 613 (3d Cir. 1999)......................................................................................9

*Trout v. Milton S. Hersey Medical Center*,
　576 F. Supp. 2d 673 (M.D. Pa. 2022) ......................................................................9

*In re: Tylenol (Acetaminophen) Mktg., Sales Pracs., & Prod. Liab. Litig.*,
　No. 2:12-CV-07263, 2016 WL 4039324 (E.D. Pa. July 27, 2016) ........................14

*United States v. Ford*,
　481 F.3d 215 (3d Cir. 2007)......................................................................................9

*United States v. Kantengwa*,
　781 F.3d 545 (1st Cir. 2015).....................................................................................14

*vonRosenberg v. Lawrence*,
　413 F. Supp. 3d 437 (D.S.C. 2019)...........................................................................9

**Rules**

Fed. R. Evid. 401 ..........................................................................................................9

Fed. R. Evid. 702 ..........................................................................................................9

## INTRODUCTION

Plaintiffs claim that the Westlaw Content is creative and protected by copyright law. Whether that is so in the legal sense, that still leaves questions as to the scope of the protection afforded—thin copyrights are analyzed differently. It leaves additional questions such as whether the expression is constrained, serves a utilitarian purpose, and/or has become an industry standard. This is relevant to fair use. It is also relevant to infringement in terms of what is protectible and the scope of the protections afforded. (*See* ROSS's SJM re Fair Use (D.I. 272.); ROSS's Opp. to Plaintiffs' SJM re Infringement (filed January 30, 2023, concurrently with this opposition))

Contrary to Plaintiffs' arguments, therefore, Professor Leiter's opinions "fit" the case. Professor Leiter's reports and opinions explore the historical efforts to organize the law, which efforts West Publishing joined. His reports and opinions, citing to historical text, reflects that, there are different ways one may organize the law. However, those methods are necessarily constrained when one wants to organize judicial opinions so that they can be located by lawyers.

Indeed, while Plaintiffs now crow that Professor Leiter's statement that West Publishing intended the Westlaw Content to be utilitarian is specious and unsupported, Professor Leiter quotes verbatim the person at West Publishing who implemented the West system.

Plaintiffs level other criticisms, mostly in an attempt to claim that this is all antiquated history. For example, Professor Leiter notes that West Publishing allowed competitors to use their system until 1996. Plaintiffs claim that his only support for this is something published in 1908. Not so. Professor Leiter cites to a 1997 digest, a 2002 judicial opinion, and a 2018 article.

Nor is there anything confusing. Professor Leiter acknowledges that West purchased the Westlaw Content, which Plaintiffs claim is confusing. He does so in order to explain the history

of attempts to organize the law.  He does so in an attempt to contextualized what is at issue and why the Westlaw Content is organized as it is.  That is not confusing.  It is necessary.

In short, as is set forth more fully below, Professor Leiter's reports and opinions are grounded in historical materials, in materials that West published, and in contemporary materials when required.  More, his opinions are necessary to this case given the subject matter of what is claimed to be copyrighted and infringed.

## STATEMENT OF FACTS

### I.  PROFESSOR LEITER'S EXPERT REPORTS

Professor Leiter provided an opening expert report on August 1, 2022 (the "Leiter Opening Report").  (D.I. 266-1, Ex. AU.)  The Leiter Opening Report included Professor Leiter's expert opinion on historical origins of the West system, chronicling its history from origin to modern day.  (*Id.* at ¶¶ 14, 20-23.)

On September 6, 2022, Professor Leiter issued a rebuttal report (the "Leiter Rebuttal Report").  (D.I. 266-1, Ex. AW.)  As reflected in ROSS's Motion for Summary Judgment on Fair Use,



. Although Dr. Krein's concluded that it was

. (*Id.* ¶¶ 6, 7, 13.)  None of Plaintiffs' experts rebutted the Leiter Opening Report.

On October 10, 2022 Dr. Krein submitted a reply report (the "Krein Reply Report").  (D.I. 266-1, Ex. AT.)  The Krein Reply Report responds, in part, to the Leiter Rebuttal Report and                                        .  None of Plaintiffs' experts ever provided a

report—whether styled as a rebuttal or reply—responding to the Leiter Opening Report or any of the opinions regarding the historical development of the West system.[1]

## II.    THE HISTORICAL ORIGINS OF WEST

### A.    The Development of the West System.

In 1864, Benjamin and Austin Abbott (the "Abbotts") published the *New York Digest*, a digesting system that was premised on then contemporary case reporters, treatises, and digests. (D.I. 266-1 AU, ¶¶ 15-17.) The Abbotts' digesting system indexed cases by legal topic based on the text of the judicial opinions. (*Id.*) As Professor Leiter notes, the Abbotts were not the first to come up with the system they adopted. However, "[t]he Abbots [concluded] that the organizing principle for the cases had to be the text of the cases" and that treatises that indexed cases by legal topic and principle provided lawyers the best means of locating judicial opinions. (*Id.* ¶ 16.) The Abbotts published subsequent iterations of their digesting system as the *United States Digest.* (*Id.* ¶ 17.)

The premise that the law could be organized by legal topics was exemplified by the Abbots with the following theorem, where the capitalized terms served as topics around which to organize judicial opinions.

> Law is the effort of society to protect PERSONS, including CORPORATIONS, in their rights and relations, to guard them in their PROPERTY, enforce their CONVEYANCES and CONTRACTS, and redress or punish their WRONGS and CRIMES, by means of judicial REMEDIES, administered by the civil arm of GOVERNMENT."

(*Id.* ¶¶ 20-22 & n. 25.)

---

[1] Because Plaintiffs did not file a rebuttal report on September 6, 2022 and instead relied on Dr. Krein's reply report to rebut Professor Leiter, Professor Leiter never had the opportunity to respond to Dr. Krein's criticisms.

In 1889, West Publishing Company acquired the *United States Digest* "including the Abbotts' scheme of classification and arrangement." (*Id.* ¶ 18.) One of the individuals who worked together with the Abbotts to develop their indexing system was John Mallory, who ultimately spearheaded West's own indexing efforts. (*Id.*)

Mallory expressly stated that he took Abbott's categories—the same categories articulated in the theorem as a basis "formulating the American Digest Classification Scheme." (*Id.* ¶ 21 & n. 25.) In fact, the Abbott theorem appeared word for word in multiple West publications, including, West Publishing Co., *American Digest Classification Scheme: A Logical Analysis of the Law for the Use of Indexers and Digest Makers* at 1 (2nd ed. 1898)). (*Id.* ¶¶ 20-21 & n. 24-25.) Incorporating the Abbotts' system across a greater corpus of cases, Mallory drove West's indexing efforts, which resulted in the publication of *The Century Digest* and *The Decennial Digest*. (*Id.* ¶ 19.)

The modern-day key number system contains the same top-level topic organization structure as West's 1897 publications of digest topics. Specifically, seventy-six percent of the 412 top-level topics that existed in the first publication of the *Century Digest* (1897) are the same or only slightly renamed (renamed because of changes in the way the law refers to the concept— *e.g.*, "Master and Servant" being renamed as "Principle and Agent") compared to the 363 top-level topics that are in use today. (*Id.* at ¶¶ 34, 36.)

The sub-topics, each of which are organized logically under a particular area of law, incorporate the same schema as the top-level topics. (*Id.* at ¶¶ 39-46 (citing Daniel Dabney, West's chief taxonomist).)

### B.   West Developed its System So It Could Be Used to Locate Judicial Opinions.

Relying on West publications and statements from Mallory, Professor Leiter opines that the governing purpose underlying the indexing system was to facilitate locating the judicial opinions.  He finds support for this in Mallory's own words.  Mallory noted that he did not want "a classification satisfactory to an analytical jurist, but one ***useful*** to a practicing lawyer." (D.I. 266-1, Ex. AU ¶ 23 (quoting John A. Mallory, *The Theory of the American Digest Classification Scheme*, 1 AM. L. SCH. REV. 184, 186 (1904) (emphasis added).)

Mallory also noted the following: "[t]he digester attempts to select for the alphabetically arranged titles such brief and appropriate designations, descriptive of the contents, *as will naturally occur to the lawyer* in search of the matters inserted thereunder; and the attempt to accomplish this difficult task is supplemented by the insertion of many titles containing simply cross-references to the titles preferred by the digester."  (*Id.* ¶ 22 (quoting Mallory, *The Theory of the American Digest Classification Scheme*, 1 AM. L. SCH. REV. at 186 (emphasis added).)

Professor Leiter further relied on the following Mallory statement to justify his opinion that West's goal was to create a system that has utility.

> The selection of titles for heads, and the distribution among them of the contents of the digest, *are controlled chiefly by considerations of practical convenience and usage*, arising from the nature and use of digests as books of reference, *in which lawyers look for precedents relating to specific subjects under heads to which they have become accustomed. Scientific or technical accuracy in the use of terms as such titles, and logical division and arrangement of the matter, are subordinated to these practical considerations*; and any philosophical analysis of the law would be inapplicable to a digest; the contents of which are mere fragments of the subject matter, arranged under heads in alphabetical order.

(*Id.* ¶ 23 (quoting West Publishing Co, *American Digest Main Heads and Subdivisions of Classification Scheme; A Logical Analysis of the Law for the Use of Indexers and Digest Makers* (4th ed. 1904) (emphasis added).)

5

### C. West Encouraged Universal Adoption of Its System.

West encouraged the adoption of its system.  (D.I. 266-1, Ex. AU ¶¶ 28-33; *see also* D.I. 266-1, Ex. AW ¶¶ 18-20.)  West marketed its index to lawyers, digest and index makers, and the ABA, with the goal of universal adoption.  (D.I. 266-1, Ex. AU ¶ 29.)  West's marketing efforts were successful: in 1898 the American Bar Association endorsed West's system and encouraged all other indexers and digesters to adopt the system.  (*Id.*)

In fact, West freely gave away its classification scheme to "any editor who might desire to make use of it."  (D.I. 266-1, Ex. AW ¶ 19 (Prospectus of West's *American Digest Main Heads and Subdivisions of Classification Scheme; A Logical Analysis of the Law for the Use of Indexers and Digest Makers* (4th ed. 1904) at 21).)  West made clear "that the importance to the bar of establishing a standard and uniform classification was so great that [West] should not be justified in withholding our assistance from any consideration merely of our proprietary rights." (*Id.*)

Lawyers, jurist, and West competitors adopted the West system.  In the preface to *American Digest Main Heads and Subdivisions of Classification Scheme*, West proudly boasted that its system has been "formally adopted" by (1) the Lawyers' Co-operative Publishing Co. (which published their own digest), (2) Bancroft-Whitney (one of the major publishers of digests at the time), and (3) many states in connection with the states' reporters and digests.  (D.I. 266-1, Ex. AU ¶ 30 (citing West Publishing Co., *American Digest Classification Scheme: A Logical Analysis of the Law for the Use of Indexers and Digest Makers* (2nd ed. 1898) at iii).; *Id.* ¶¶ 32-33.)  Professor Leiter notes that Bancroft-Whitney used West's structure from at least 1906 to 1996, citing to a Bancroft-Whitney California digest revised in 1997 and citing to a 2002 Ninth Circuit case.  (*Id.*  ¶¶ 31-32 & nn. 38-41.)  Professor Leiter also notes that other competitors used

the West system as well citing to Michael O. Eshleman, A History of the Digests, 110 LAW

LIBR. J. 235, 245, published in 2018.  (D.I. 266-1, Ex. AU ¶ 33 & n. 42.)

     **D.**       ████████████████████ **Are Legal Terms Many of Which Have Been Used For Over One Hundred Years To Organize Judicial Opinions.**



Although Dr. Krein concluded that it was ████████████████

████████████████████████████████████

████████████████ (D.I. 266-1, Ex. AW ¶ 6.) ████████████

████████████████████████████ (*Id.*; *see also*

D.I. 266-1, Ex. AU ¶¶ 34-35; D.I. 277-1, Exs. 4 and 5 to Leiter Opening Report (chart

demonstrating evolution of top-level topics).)

████████████████████████████████

████████████ with two contemporary digesting systems: Sir John Comyns' *Digest*

*of the Laws of England* (5th ed. 1822) ("Comyns' *Digest*") and John Mews' *Digest of English*

*Case Law Contain the Reported Decision of the Superior Courts, and a Selection from Those if*

*the Irish Courts* (1898) ("Mews' *Digest*").  (D.I. 266-1, Ex. AW ¶ 13.) ████████████

████████████████████████████████

████████████████████████ meaning that these topic names

have been used by digesters for at least 125 years (and, to the extent ████████ are identical to

a Comyns' *Digest* topic, digesters have been using those topics for over 200 years).  (*Id.*)  In

other instances, ████████ matched law schools' curricula from the mid-Nineteenth Century.

(*Id.* ¶ 17 & n. 14 (Harvard offering the following courses in 1842: "Admiralty," "Maritime,"

"Agency," "Partnership," and "Sales").)  Where ████████████████, did not have a

historical counterpart, the topics names and structure reflect the language of the relevant time.

(*Id.* ¶ 14 (opining, for example, that the topic "Commodity Future Trading Regulations" could

7

not have been a topic prior to the enactment of the Commodity Exchange Act in 1936).)  The law changes and Plaintiffs revised the key numbers in response. (*Id.* ¶ 14 & n. 10 (crediting Professor Goodrow with inventing the term "administrative law," which later became a top-level topic).)

## ARGUMENT

Plaintiffs claim that there is no "fit" between the facts of the case and Professor Leiter's opinion.  (D.I. 265 at 5-8.)  They claim that the organizational principles that animate West's structure have "no apparent corollary" to the key number system today.  (*Id.* at 2.)  They claim that Professor Leiter's conclusions that the West structure was designed to be utilitarian is without reliable methodology and is "pure speculation and is not based on any facts, data, or evidence whatsoever."  (D.I. 265 at 2, 8-9.)  Finally, they claim that Professor Leiter cannot opine that competitors used the West system because he relies on only a single source from 1908.  (D.I. 265 at 3, 10.)

Notably, Plaintiffs make no argument that historians cannot testify as experts generally or in copyright cases.  Of course, that argument would be meritless.  *See, e.g.*, *Langbord v. United States Dep't of Treasury*, 832 F.3d 170, 195 (3d Cir. 2016) ("*Langbord* (Appellate Opinion)") (no error in allowing historian to testify as an expert to help the jury to understand the historical background of the origins of the 1933 Double Eagle coins); *Siegel v. Warner Bros. Ent. Inc.*, 2009 WL 2014164, at *5 (C.D. Cal. July 8, 2009) (allowing and finding testimony of plaintiffs' comic book historian expert credible in case involving dispute regarding copyright ownership); *Cordon Holding B.V. v. Nw. Publ'g Corp.*, 2002 WL 530991, at *1 n.2, *6 (S.D.N.Y. Apr. 8, 2002) (permitting and relying on art historian expert testimony regarding Escher's creative process to determine that the Escher works constituted derivative works).

Even as to the arguments made, Plaintiffs arguments fail.

## I.   PROFESSOR LEITER'S TESTIMONY SATISFIES THE "FIT" TEST—FACTUALLY AND LEGALLY

### A.   The Opinions Meet the Legal Standard For "Fit".

The threshold to meet the fit requirement "is not that high."  *United States v. Ford,* 481 F.3d 215, 219 (3d Cir. 2007).  To meet the "fit" requirement, an expert's opinion and testimony must help the trier of fact "understand the evidence or to determine a fact in issue."  *Langbord* (District Court Opinion), 2009 WL 1312576, at *4 (quoting *In re TMI Litig.*, 193 F.3d 613, 663 (3d Cir. 1999)), *amended*, 199 F.3d 158 (3d Cir. 2000).  The Third Circuit has held that the "fit requirement" considers whether the testimony is relevant under Federal Rule of Evidence 401. *In re TMI Litig.*, 193 F.3d at 670. If there is a "connection between the expert opinion offered and the particular disputed factual issues in the case" the opinion meets the fit requirement.  (*Id.*) "Finally, a historian's synthesis of various source materials that enables the jury to perceive patterns and trends is considered 'helpful' within the meaning of Rule 702."  *vonRosenberg v. Lawrence*, 413 F. Supp. 3d 437, 450 (D.S.C. 2019) (internal citations omitted).

As reflected below, Professor Leiter's opinions meet these standards.[2]

### B.   The Opinions Are Relevant to Infringement and Fair Use.

Plaintiffs assert that every aspect of the West system is creative, ██████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████.  (D.I. 250 at 3-4; *see also* D.I. 281-3, Ex. 26 at 8, 17-18, 30-31.)  For the purposes of

---

[2] The cases Plaintiffs cite do not support a different conclusion.  For example, in *Trout v. Milton S. Hersey Medical Center*, the expert witness only testified about general medical principles without ever opining on plaintiff's specific medical issues. 576 F. Supp. 2d 673, 677 (M.D. Pa. 2008). In *Orbital Eng'g, Inc. v. Buchko*, the expert was offering an opinion that contravened a stipulation of the parties.  578 F. Supp. 3d 727, 733 (W.D. Pa. 2022).

this opposition, we assume that Plaintiffs may be correct that their systems are sufficiently creative to obtain some copyright protection.

But that leaves to be answered the nature of the protection, they type of copyright (thin or not), what constraints exist, whether there is utilitarian aspect to the system, and whether that system has become an industry standard.  (*See* ROSS's SJM re Fair Use (D.I. 272); ROSS's Opp. to Plaintiffs' SJM re Infringement (filed January 30, 2023, concurrently with this opposition).)

This is what makes Professor Leiter's opinions "fit" this case.  Plaintiffs do have criticisms, but those criticisms are either entirely inaccurate or they simply miss the point of Professor Leiter's opinion.  They are addressed in turn.

### Prof. Leiter's Statement That One Can Organize The Law In Different Ways.

Plaintiffs quibble that Professor Leiter recognizes that there might be different ways to organize judicial opinions.  (D.I. 265 at 9.)  The fact is that his report reflects as much when he surveys the different digesting methods that preceded the Abbott's creation of the system that West purchased.[3]  (D.I. 266-1, Ex. AU ¶¶ 14-16.)  However, what Professor Leiter makes equally clear is that there are constraints.  Any organization needs to "be consistent and reflect the statement of the court."  (Declaration of Crinesha B. Berry ("Berry Decl.") Ex. 9 at 240:2-241:10; *see also* D.I. 266-1, Ex. AU ¶¶ 9, 16; D.I. 266-1, Ex. AW ¶¶ 7-10.)  While Lexis and Plaintiffs may have some differences, Lexis and Plaintiffs both organize their top-level topics alphabetically by *area of law*, with each having subtopics that relate to the top-level.  (Berry Decl. Ex. 9 at 138:20-139:8, Ex. 10; Ex. 9 at 142:13-20; 155:23-156:22 (███████████████████████ █████), Ex. 11; Ex. 9 at 262:7-22.)  For example, the West has "arson" as a top-level topic, while

---

[3] Leiter makes clear that West purchased the Abbotts' digesting system.  (D.I. 266-1, Ex. AU, ¶ 18.)  At no point does he say that the Abbotts own WKNS; rather he opines that the modern key number system has roots in the Abbotts' system.  (*Id.*, ¶¶ 19-23.)

Lexis classifies arson under the top-level "criminal law" topic.  Each structure fulfils the purpose of being able to locate the law, using the language of the law.  (Berry Decl. Ex. 9 at 286:1-23

(█████████████████████████████████████████████████████████████████

████████████████████████████████.").)

*Opinions Regarding the Key Number System and Topics Are Relevant.*  Professor Leiter's opinions regarding the key number system and the topics contained therein are relevant.  First, one claim for infringement is that ROSS received ████████████████ (*See* D.I. 250 at 8; D.I. 272 at 9-10, 16, 18-19.)

Professor Leiter opines that these top-level topics in the system are overwhelmingly the same as they were between 1897 and 1904 and that they, reflect common doctrinal topics taught as law school courses.  (D.I. 266-1,  Ex. AU ¶ 34 (seventy-six percent of top-level topics in 1897 are the same as the top-level topics of today); *see infra* at 7; Ex. AW ¶ 14 (█████████████████

████████████████ are identical to digest topics from 125 years (Mews') and 201 years (Comyns') respectively.).)  Profess Leiter's expert opinion allows the jury to hear evidence that many of these topics that Plaintiffs claim are unique to their system have been around for over 125 years; reflect legal terms of art, law school classes, language of judicial opinions, or statutes; and that they have been adopted by West's competitors (at West's request, encouragement, and permission).

*Functionality of the West System Is Relevant.*  Professor Leiter opines that the purpose of the key number system was functional—to locate judicial opinions.  (D.I. 266-1, Ex. AU ¶¶ 9, 16.)  To be sure, there may be more complexity to the key number system now, but that certainly does not change why it exists and what it is intended to do.  All of which are relevant to the issues of copyright here. (*See* D.I. 272 at 10-11, 13-14.)

***The Comparison of Contract Topics Is Relevant***. Plaintiffs claim that Processor Leiter's comparisons of contract topics found in Abbott's system and West's system is confusing, outdated, and ill-fit this case.  (D.I. 265 at 6-7.)

Professor Leiter compared the topics and subtopics of contract and performance between Abbott's system and West's system to illustrate the similarities.  (D.I. 266-1, Ex. AU, ¶¶ 24-25; Berry Decl. Ex. 9 at 162:20-163:20 (█████████████████████████████████████ █████████████████████████████████████████████████), 164:6-10 (███████ █████████████████████████████████████████████████████).)

Plaintiffs erroneously claim that Professor Leiter relies solely on the contract comparison to extrapolate to the 100,000 West subtopics that exist today.  (D.I. 265 at 6-7.)  He does not. Professor Leiter uses the contract topic comparison to demonstrate similar organization structures and the constraints that any digesting system must operate within.  He does *not* extrapolate a percentage of similarity between the entire modern-day key number system and all preceding systems.

Plaintiffs also dismiss Professor Leiter's expert opinions because of the changes that West has made to the key number system.  (D.I. 265 at 6.)  While it is true that the topics and subtopics have expanded and even changed in certain respects, Professor Leiter explained that the changes occur on a ██████████   such that ███████████████████████████████ ████████████████████████.  (D.I. 266-1, Ex. AF at 130:15-131:6, 132:14-18 (testifying that ███████████████████████████████████████); D.I. 266-1, Ex. AU, ¶ 34 (seventy-six percent of the top-level topics remain the same today as in 1897.).).

***The Theorem Around Which the Abbotts Formulated Their Digest Is Located In Books Published By West.***  As to the theorem of legal organization, it serves as the premise of the entire

West structure.  It is simply false that Professor Leiter provides "[no] clarity on how this theorem is used in Plaintiffs' process for creating and organizing West Headnotes and cases within the WKNS, if it used at all."  (D.I. 265 at 7.)  As reflected in the Statement of Facts, Professor Leiter explained what the theorem meant, how West adopted it, and how West explained that in its own publications.  (*See infra* at 3-4.)

Nor is it true that Professor Leiter admitted that none of the key numbers on Westlaw Edge "correspond" to the theorem's categories.  In fact, Professor Leiter testified that *West Analysis of American Law* (the Plaintiffs' publication that identifies the current list of tops in the WKNS) *includes the* ▮▮▮▮▮▮▮▮▮▮  (Berry Decl. 9 at 137:24-138:15, 139:10-23 ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮), *id.* at 140:14-22 (testifying that ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮).)

## II.  PROFESSOR LEITER'S OPINIONS ARE BASED ON A RELIABLE METHODOLOGY AND IS NOT SPECULATIVE

### A.  Professor Leiter's Methodology Is Reliable.

Professor Leiter's methodology is based on that used by any historian.  He reviewed "a daunting amount of historical sources, evaluat[ed] their reliability and provid[ed] a basis for a reliable narrative about that past."  *United States v. Kantengwa*, 781 F.3d 545, 562 (1st Cir. 2015).  As a matter of law this is sufficient.  *Langbord* (District Court Opinion), 2009 WL 1312576, at *3; *see also New York v. Shinnecock*, 523 F. Supp. 2d 185, 262 (E.D.N.Y.2007) (finding reliable the testimony of expert ethnohistorians where "the experts analyzed and considered the pertinent historical documents (including deeds, patents, confirmations, and other

colonial era documents) in the context of the contemporary historical understanding"); *In re: Tylenol (Acetaminophen) Mktg., Sales Pracs., & Prod. Liab. Litig.*, 2016 WL 4039324, at *5 (E.D. Pa. July 27, 2016) (reviewing applicable regulations and their historical context considered to be a reliable method for expert opining on the historical context of such regulations).

Professor Leiter reviewed and synthesized historical publications from the Nineteenth and Twentieth Century regarding the West system.  These included publications authored by West Publishing Co. that describe the purpose and intent behind West's case digesting strategy (*e.g.*, D.I. 266-1, Ex. AU ¶¶ 12, 19, 20, 23, 24), publications written by legal scholars describing case indexing during the Nineteenth and Twentieth Century (*e.g.*, D.I. 266-1, Ex. AU ¶¶ 11-16 and accompanying notes),  case reporters pre-dating West (*e.g.*, D.I. 266-1,  Ex. AU ¶ 13), case digests pre-dating West's *Centennial Digests* (*e.g.* D.I. 266-1, Ex. AW ¶ 13 (citing Comyns' *Digest* and Mews' *Digest*)).  Additionally, Professor Leiter reviewed each publication of West's *Digest* so that he could competently opine on the evolution of the West topics:

- West Publishing Co., *Century Edition of the American Digest: A Complete Digest of All Reported American Cases from the Earliest Times to 1896* (1897);

- West Publishing Co., *Decennial Edition of the American Digest: A Complete Digest of All Reported Cases from 1897 to 1906* (1908);

- West Publishing Co., *Descriptive-Word Index to Decennial and All Key-Number Digests: A Means of Finding the Authorities in Point Through the Words Descriptive of the legal Principles or of the Facts in the Case* (1912);

- West Publishing Co., *Second Decennial Edition of the American Digest* (1917);

- West Publishing Co., *Descriptive-Word Index to the First and Second Decennial Digests: A Means of Finding the Authorities in Point Through the Words Descriptive of the Legal Principles or of the Facts in the Case* (1924);

- West Publishing Co., *Third Decennial Edition of the American Digest* (1928);

- West Publishing Co., *Fourth Decennial Digest* (1937);

- West Publishing Co., *Descriptive-Word Index Covering Third and Fourth Decennial Digests L-Z* (1940);

- West Publishing Co., *Fifth Decennial Digest* (1947);

- West Publishing Co., *Sixth Decennial Digest* (1957);

- West Publishing Co., *Seventh Decennial Digest* (1967);

- West Publishing Co., *Eighth Decennial Digest* (1977);

- West Publishing Co., *Ninth Decennial Digest, Part 1* (1982);

- West Publishing Co., *Ninth Decennial Digest, Part 2* (1987);

- West Publishing Co., *Tenth Decennial Digest, Part 1* (1992);

- West Publishing Co., *Tenth Decennial Digest, Part 2* (1997);

- West Publishing Co., *Eleventh Decennial Digest, Part 1* (2001).

(*See* D.I. 277-1, Ex. 4 to Leiter Opening Report); *see also* Berry Decl. Ex. 9 at 211:4-8.)

Plaintiffs other complaints about Professor Leiter's methodology lack merit. Not a single case suggests that Professor Leiter is disqualified because he failed to interview someone who worked at a legal research company. It cannot matter that he personally did not create or design a classification structure for a legal search platform. (D.I. 265 at 9.)

In any case, Professor Leiter testified that he has ███████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████ (Berry Decl. Ex. 9 at 231:14-232:13.) Certainly, that is something on which Professor Leiter can rely. *Langbord* (District Court Opinion), 2009 WL 1312576, at *3 ("It is also well-established that an expert's reliable methodology may consist primarily of applying his personal knowledge and experience to the facts of a case. *See Kumho*, 525 U.S. at 156 ('[N]o one denies that an expert

might draw a conclusion from a set of observations based on extensive and specialized experience.')").

**B.      Professor Leiter's Opinions Are Not Based On Speculation.**

Plaintiffs claim that Professor Leiter speculates that the West system is utilitarian.  (D.I. 265 at 8.)[4]  They also claim that his opinion regarding competitors use of West's system is based on a 1908 document and nothing more.  (*Id.* at 9-10.)  Neither argument is correct.

***The Utilitarian Nature of West's System Is Acknowledged In Materials West Published.***  When Professor Leiter opines that the West system organizes cases in a utilitarian way, he is relying on and quoting the statements of John Mallory who was responsible for spearheading West's indexing efforts in the Nineteenth and Twentieth Centuries.  (*E.g.*, D.I. 266-1, Ex. AU ¶ 23 (quoting West Publishing Co., *American Digest Main Heads and Subdivisions of Classification Scheme: A Logical Analysis of the Law for the Use of Indexers and Digest Makers* at iii (4th ed. 1904).)  It was Mallory who described the principles of indexing as:

> "[s]cientific or technical accuracy in the use of terms as such titles, and logical division and arrangement of the matter, are subordinated to these practical considerations; and any philosophical analysis of the law would be inapplicable to a digest; the contents of which are mere fragments of the subject matter, arranged under heads in alphabetical order."

(*Id.*)

That Professor Leiter acknowledges that other research platforms may organize the law differently does not negate how West itself described its system and does not reduce Professor Leiter's opinion to speculation.  Moreover, as noted, Professor Leiter also acknowledged at the

---

[4] Professor Leiter does not opine on the creativity of individual headnotes.  Curiously, Plaintiffs rely on deposition testimony where Plaintiffs asked Professor Leiter ██████████████████ ████████████████████████████████.  (D.I. 265 at 8-9.)

same time the constraints placed on any system.  (D.I. 266-1, Ex. AU ¶ 9 (any system is constrained by the courts' expression of the law), *id.* ¶ 16 (organizing principles had to be the text of cases); *id.* ¶ 22 & n. 27).)

     ***That Competitors Used West System Is Based on Many Different Facts.***  Plaintiffs also claim that Professor Leiter's opinion that Plaintiffs "freely allowed competitors to use the indexing system" and the such system was "generally adopted" (D.I. 266-1, Ex. AU ¶ 33), lacks factual basis and is speculative.  They claim that the only basis for this conclusion is the *First Decennial Digest* published in 1908.[5] (D.I. 265 at 9-10.)

     It is entirely false that the only basis for Professor's Leiter opinion is the 1908 *First Decennial Digest*.  Professor Leiter also cites to West's *American Digest Main Heads and Subdivisions of Classification Scheme* publication where West makes clear, "[w]e have had over a hundred requests for it and it has been formally adopted by the Lawyers' Co-operative Publishing Co. and by the Bancroft-Whitney Co."  (D.I. 266-1, Ex. AU ¶ 30.)  To prove ABA's endorsement of the West system and "encourage[ing] all indexers and digesters to use this same system," Professor Leiter relies on William W. Marvin, *West Publishing Company: Origins, Growth, Leadership* at 69 (1969).  Professor Leiter notes that Bancroft-Whitney used West's structure from at least 1906 to 1996, citing to a Bancroft-Whitney California digest revised in 1997 and citing to a 2002 Ninth Circuit case.  (D.I. 266-1, Ex. AU ¶¶ 30-33 & nn. 38-41.)  Professor Leiter also notes that other competitors used the West system as well citing to Michael O. Eshleman, A History of the Digests, 110 LAW LIBR. J. 235, 245, published in 2018.  (D.I. 266-1, Ex. AU ¶ 33 & n. 42.)

---

[5] Notably, Plaintiffs do not dispute the accuracy of the 1908 statements by West through its own publications. Rather, Plaintiffs claim that because Professor Leiter considered older source material that his opinion as to *that historical time period* should be discounted.

In short, Professor Leiter is not simply surmising as to what happened a century ago—he is relying on documents that bear on these historical events.

Nor is Professor Leiter disqualified from this opinion because he does not know the actual terms of the agreements between West and these competitors.  (D.I. 265. at 10.)  If there are some confining agreements, then Plaintiffs have them.  But whatever agreements there are does not change the fact that West affirmatively sought the adoption of these systems such that they became an industry standard.  Finally, it is immaterial that Plaintiffs enforced certain intellectual property rights in *1986*.[6]  There is certainly no argument made those rights wee enforced against those that used the system until at least 1996.

## CONCLUSION

For the reasons outlined in this opposition memorandum, ROSS respectfully requests the Court deny Plaintiffs' Motion to Exclude Opinions of Professor Leiter in its entirety.

---

[6] The Prospectus of West's *American Digest Main Heads and Subdivisions of Classification Scheme; A Logical Analysis of the Law for the Use of Indexers and Digest Makers* (4th ed. 1904) expressly states, "we felt that the importance to the bar of establishing a standard and uniform classification was so great that we should not be justified in withholding our assistance from any consideration merely of our proprietary rights."  (D.I. 266-1, Ex. AW ¶ 19 (Prospectus at 21).) West goes on to proclaim that it is adopting the suggesting of the American Bar Association "by placing the scope-note pamphlet giving the outlines of our classification scheme ***in the hands of any editor who might desire to make use of it***."  (*Id.*)

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Gabriel M. Ramsey
Warrington Parker
Joachim B. Steinberg
Jacob Canter
Christopher J. Banks
CROWELL & MORING LLP
3 Embarcadero Center, 26th Floor
San Francisco, CA 94111
Tel:  (415) 986-2800

Mark A. Klapow
Crinesha B. Berry
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC  20004
Tel:  (202) 624-2500

Dated:  January 30, 2023
10569479 / 20516.00001

Public Version Dated: February 6, 2023

By:  */s/ David E. Moore*
    David E. Moore (#3983)
    Bindu A. Palapura (#5370)
    Andrew L. Brown (#6766)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, DE  19801
    Tel:  (302) 984-6000
    dmoore@potteranderson.com
    bpalapura@potteranderson.com
    abrown@potteranderson.com

*Attorneys for Defendant/Counterclaimant
ROSS Intelligence, Inc.*