**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

THOMSON REUTERS ENTERPRISE )
CENTRE GMBH and WEST PUBLISHING )
CORPORATION, )
                              ) C.A. No. 20-613-SB
        Plaintiffs/Counterdefendants, )
                              ) **JURY TRIAL DEMANDED**
    v. )
                              ) **PUBLIC VERSION**
ROSS INTELLIGENCE INC., )
        Defendants/Counterclaimant. )

**DEFENDANT/COUNTERCLAIMANT ROSS INTELLIGENCE INC.'S OPPOSITION**
**TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT (NO. 1)**
<u>**ON COPYRIGHT INFRINGEMENT**</u>

OF COUNSEL:

Gabriel M. Ramsey
Warrington Parker
Joachim B. Steinberg
Jacob Canter
Christopher J. Banks
CROWELL & MORING LLP
3 Embarcadero Center, 26th Floor
San Francisco, CA 94111
Tel:  (415) 986-2800

Mark A. Klapow
Crinesha B. Berry
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC  20004
Tel:  (202) 624-2500

Dated:  January 30, 2023
10570361 / 20516.00001
 Public Version Dated: February 6, 2023

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Andrew L. Brown (#6766)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
Tel:  (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
abrown@potteranderson.com

*Attorneys for Defendant/Counterclaimant*
*ROSS Intelligence, Inc.*

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................................ 1

NATURE AND STAGE OF PROCEEDING ................................................................................ 2

STATEMENT OF FACTS .............................................................................................................. 2

     A.    Plaintiffs' Headnotes, Key Number System, and the Westlaw Content ................ 2

     B.    Plaintiffs' Copyright Registration .......................................................................... 3

     C.    ROSS Develops A Natural Language Legal Search Engine ................................. 4

     D.    ROSS Hires A LegalEase To Create The Memos ................................................. 4

     E.    What ROSS Knew About LegalEase's Contract With West ................................. 5

     F.    The Content And Creation of Memos .................................................................... 7

     G.    LegalEase Provided ROSS With A List Of 91 Legal Topics As Part of the Classifier Project ................................................................................................... 10

     H.    The ███ Judicial Opinions ................................................................................... 10

     I.    The Numbers ......................................................................................................... 11

ARGUMENT ................................................................................................................................. 12

I.     THE DIRECT INFRINGEMENT ARGUMENT FAILS AS A LEGAL AND FACTUAL MATTER ........................................................................................................... 12

     A.    Plaintiffs Cannot Establish Copyright Infringement By Pointing to The Alleged Copying Of Far Less Than One Percent Of A Compilation ................................. 13

     B.    The Factual Basis For This Argument Is Missing ............................................... 14

II.    PLAINTIFFS' INDIRECT INFRINGEMENT HAS NO MERIT ................................... 15

     A.    Plaintiffs Cannot Show That LegalEase Directly Infringed. ............................... 15

     B.    ROSS Did Not Know Of LegalEase's Infringement And Did Not Contribute Or Induce The Infringement ....................................................................................... 17

     C.    ROSS Is Not Vicariously Liable .......................................................................... 19

CONCLUSION .............................................................................................................................. 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adobe Sys. v. Canus Prods.*,
   173 F. Supp. 2d 1044 (C.D. Cal. 2001) ..............................................................19

*Arista 17 Recs., Inc. v. Flea World, Inc.*,
   2006 WL 842883 (D.N.J. Mar. 31, 2006)..........................................................18

*Assessment Techs. of WI, LLC v. WIREdata, Inc.*,
   350 F.3d 640 (7th Cir. 2003) .............................................................................16

*Bridgeport Music, Inc. v. WB Music Corp.*,
   508 F.3d 394 (6th Cir. 2007) .............................................................................19

*Columbia Pictures Indus., Inc. v. Redd Horne, Inc.*,
   749 F2d 154 (3d Cir. 1984).................................................................................15

*Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*,
   307 F.3d 197 (3d Cir. 2002)...............................................................................13

*Educ. Testing Servs. v. Katzma*n,
   793 F.2d 533 (3d Cir. 1986)...............................................................................13

*Experian Info. Sols., Inc. v. Nationwide Mktg. Servs., Inc.*,
   893 F.3d 1176 (9th Cir. 2018) .....................................................................14, 15

*Feist Publ'ns v. Rural Tel. Serv. Co.*,
   499 U.S. 340 (1991)...........................................................................................13

*Georgia v. Public.Resource.Org Inc.*,
   140 S. Ct. 1498 (2020).......................................................................................16

*Gershwin Publ'g Corp. v. Colom. Artists Mgmt., Inc.*,
   443 F.2d 1159 (2d Cir. 1971).............................................................................18

*Leonard v. Stemtech Int'l Inc*,
   834 F.3d 376 (3d Cir. 2016)...............................................................................18

*Live Face on Web, LLC v. Control Grp. Media Co.*,
   150 F. Supp. 3d 489 (E.D. Pa. 2015) ................................................................19

*Matthew Bender & Co. v. W. Publ'g Co.*,
   158 F.3d 693 (2d Cir. 1998)...................................................................13, 18, 19

*Matthew Bender & Co. v. W. Publ'g Co.*,
  1997 WL 266972 (S.D.N.Y. May 19, 1997), *aff'd*, 158 F.3d 674 (2d Cir. 1998)............13, 14

*Muench Photography, Inc. v. Pearson Education, Inc.*,
  2013 WL 6172953 (N.D. Cal. Nov. 25, 2013) ........................................................................19

*Parker v. Google*,
  422 F. Supp. 2d 492 (E.D. Pa. 2006) ..............................................................................15, 17

*Perfect 10, Inc. v. Amazon.com, Inc.*,
  508 F.3d 1146 (9th Cir. 2007) ..............................................................................................18

*Ranieri v. Adirondack Dev. Grp.*,
  164 F. Supp. 3d 305 (N.D.N.Y. 2016)..................................................................................18

*Ross, Brovins & Oehmke, P.C. v. Lexis Nexis Grp., a Div. of Reed Elsevier Grp., PLC*,
  463 F.3d 478 (6th Cir. 2006) ..........................................................................................14, 15

*Schoolhouse, Inc. v. Anderson*,
  275 F.3d 726 (8th Cir. 2002) ..........................................................................................14, 15

*Tanksley v. Daniels*,
  259 F. Supp. 3d 271 (E.D. Pa. 2017) ..............................................................................17, 19

*TransWestern Pub. Co. LP v. Multimedia*,
  133 F.3d 773 (10th Cir. 1998) ........................................................................................13, 15

*UMG Recordings, Inc. v. RCN Telecom Servs., LLC*,
  2020 WL 5204067 (D.N.J. Aug. 31, 2020) ...........................................................................18

*Wheaton v. Peters*,
  33 U.S. 591 (1834)................................................................................................................16

**Statutes**

17 U.S.C.A. 107 ...............................................................................................................5, 17

**Other Authorities**

West Publishing Co., *American Digest Main Heads and Subdivisions of
  Classification Scheme: A Logical Analysis of the Law for the Use of Indexers
  and Digest Makers* at iii (4th ed. 1904)) ................................................................................2

West Publishing Co., *American Digest Main Heads of Classification Scheme: A
  Logical System of the Law for the Use of Indexers and Digest Makers* (5th ed.
  1916) ........................................................................................................................................2

## INTRODUCTION AND SUMMARY OF ARGUMENT

The Westlaw Content at issue in this case is registered as a single compilation. That compilation includes over 11.2 billion data records, comprised of, among other things, over 28.7 million headnotes, and over 100,000 topics and subtopics.

Plaintiffs' arguments on direct infringement rest on the claimed copying of less than .0098% of all the headnotes and only .0000253% of the entire compilation. Plaintiffs' arguments on indirect infringement does not even quantify a percentage of the compilation allegedly copied, but it is necessarily an extremely small percentage of the copyrighted compilation. As a matter of law, Plaintiffs cannot establish copyright infringement. Courts have found that copying even up to 75% of a compilation is insufficient to find copyright infringement.

Plaintiffs' motion suffers from other infirmities. Plaintiffs' direct infringement argument rests on ██████████████, ██████████████████████████████████████████ ██████ which was prepared prior to the time that Plaintiffs identified the specific items of Westlaw Content Plaintiffs claimed were at issue.

What Plaintiffs do not tell this Court is that ████████████████ referenced in Plaintiffs' motion, ████████████████████████████████████. Plaintiffs only identified ██████████████████ as being copied by ROSS and at issue in this case. Of those ██████████████ might bear the argument that they are copies of headnotes. This is less than ████████████ of all the headnotes.

Plaintiffs indirect copyright arguments fail because, as noted, they cannot establish direct infringement by LegalEase. Nor can Plaintiffs establish that ROSS contributed to infringement or induced it. In fact, ROSS received contractual assurances that LegalEase would not violate the intellectual property rights of third parties.

Plaintiffs' motion for summary judgment should be denied.

## NATURE AND STAGE OF PROCEEDING

Plaintiffs sued ROSS Intelligence on May 6, 2020. (D.I. 1.)  The parties filed dispositive motions on December 22, 2022. (D.I. 250.)  This opposition is due on January 30, 2023.

## STATEMENT OF FACTS

### A.    Plaintiffs' Headnotes, Key Number System, and the Westlaw Content

The purpose of Westlaw Content, such as headnotes and the key number system is to locate cases, to understand what a case stands for, and to understand what a judge has decided. (D.I. 255-1, Ex. 9 at 116:14-119:6.) ███████████████████████████ ████████████████████████████ (Declaration of Crinesha B. Berry ("Berry Decl.") Ex. 9 at 240:2-241:10.)

The headnote and key number system originated with Benjamin and Austin Abbott.  (D.I. 277 ¶ 5.)  They wished to arrive at a means to locate judicial opinions.  (*Id.*)  They found, as did West Publishing, a short time later, that there were only a limited number of ways to organize the law if the purpose was to ensure the location of judicial opinions.  (D.I. 277, Ex. B at ¶¶ 15-16.)

In 1889, West Publishing purchased the Abbot's digest system.  (D.I. 277 ¶ 13.)  West too organized its headnotes and key numbers as dictated by the law and the language of judicial opinions.  As West acknowledged "any philosophical analysis of the law would be inapplicable to a digest . . . ."  (D.I. 277 ¶ 18 (citing West Publishing Co., *American Digest Main Heads and Subdivisions of Classification Scheme: A Logical Analysis of the Law for the Use of Indexers and Digest Makers* at iii (4th ed. 1904)); and West Publishing Co., *American Digest Main Heads of Classification Scheme: A Logical System of the Law for the Use of Indexers and Digest Makers* at iii (5th ed. 1916).)  Rather, the purpose was to allow lawyers to "look for precedents relating to specific subjects under heads to which they have become accustomed."  (*Id.*)

Over the more than one hundred years since West began publishing headnotes and key numbers, little has changed.  Plaintiffs' protocols dictate that they follow or closely mirror the language of judicial opinions. ████████████████████████████████████ ████████████████████████ (D.I. 281-29, Ex. 53 at 72:10-74:25, 75:2-14, 76:11-77:21, 79:12-82:11; 84:6-85:2; D.I. 281-40, Ex. 64, at 8, 15, 22; D.I. 281-42, Ex. 65, at 8; D.I. 280 ¶ 45.)

Key numbers are little different.  The goal is to find a case within the language of the law. For about a century, Plaintiff West has put its classification system forward as a standard, and has accepted its use by competitors.  (D.I. 277 ¶ 22.)  Also, the top-level topics in the system are overwhelmingly the same since 1897 and 1904, reflecting common doctrinal topics taught as law school courses.  (D.I. 277 ¶ 24.)  Changes are made when the increase in cases on a topic start making the system unwieldy.  (D.I. 277 ¶ 26; D.I. 281-29, Ex. 53, at 205:23-208:8.)

████████████████████████████████████████████ ████████████████████████████████████ (D.I. 250 at 3.) ████████████████████████████. (Declaration of Jacob Canter ("Canter Decl."), Ex. 69 at 237:5-14; *id.*, Ex. 70.)

### B.  Plaintiffs' Copyright Registration

The entirety of what Plaintiffs call "Westlaw Content" is registered as a single compilation. (D.I. 1-1 (Exhibit A to the Complaint); *see e.g. id.* at 2, 4, 6, 8 (noting that this is a certificate of copyright registration for "Compilations, revisions, additions, etc.").)  The registered work contains 11,205,374,706 data records.  (D.I. 281-36 Ex. 60, at TR-0026190; D.I. 1-1, Ex. A.)  It contains ████████████████ ████████████████ key number subtopics.  (D.I. 281-2, Ex. 15 at 8; D.I. 281-29. Ex., 53, at 188:17-189:4; D.I. 280 ¶ 25 (citing TR-0179847, D.I.

281-33).)  As of 1998, there were 1,583,000 data records corresponding to judicial opinions. (D.I. 255-6, Ex. 81.)

### C.    ROSS Develops A Natural Language Legal Search Engine

ROSS Intelligence Inc. ("ROSS") was founded in 2014 to develop a natural language search engine that relied on machine learning and artificial intelligence. ████████████████ ████████████████████████ (D.I. 281-9, Ex. 31 at 11:21-12:4, 50:21-24; *id.*, D.I. 281-1, Ex. 5 at 39:19-23; 41:5-41:13; D.I. 278 ¶ 5.) ██████████████████████████████ ██████████████████████████████████████████████████████████████ ██████████████████ (D.I. 281-1, Ex. 4; *id.*, Ex. 5, at 115:18-22; *id.*, Ex. 9, at 163:1-18, 164:6-165:4; *id.*, D.I. 281-9, Ex. 34; D.I. 278 ¶ 20.) ████████████████████████████████████████████████████ ████████████████████ The answers were quotes ██████████████████ (*Id.*) ████████████████████████████████████████ (*Id.*, Ex. 4, at TR-0000569; *id.,* Ex. 5, at 50:1-51:12, 115:18-22, 123:17-24:13.)  A ████████████████████ ██████████████████████████████████████████ (*Id.*, Ex. 4, at TR-0000568; *id.*, Ex. 7, at 168:7-19; *id.*, D.I. 281-39, Ex. 63, at LEGALEASE-00093078.)

### D.    ROSS Hires A LegalEase To Create The Memos

ROSS hired a third-party legal research company, LegalEase Solutions, LLC, that worked with a subcontractor Morae Global (collectively "LegalEase"), to prepare the memos (*Id.*, Ex. 5, at 115:18-22, 116:12-16; *id.*, Ex. 4; *id.*, Ex. 6, at 88:13-18; *id.*, Ex. 7, at 25:18-21.) The Master Service Agreement ("MSA") that defined the relationship between ROSS and LegalEase states that LegalEase represents and warrants that "[a]ll Deliverables and any Developments are original works of authorship of the authors, and do not infringe the Intellectual Property Rights of any third party."  ("Canter Decl." Ex. 81.)

ROSS did not direct LegalEase to use Westlaw.  (Canter Decl., Ex. 71 at 53:24-54:4 ████



); *id.* at 135:5-15; *id.* Ex. 72 at 43:2-5; *id.* Ex. 73 at 271:18-272:5;

286:8-13; D.I. 255-4, Ex. 68, ROSS-010164290 (███████████████████████

██████████████████████████ (emphasis added).)

ROSS did provide feedback on the quality of memos.  (Canter Decl., Ex. 71 at 135:16-

21.)  It was not the case, though, that ROSS dictated LegalEase's action.  (Canter Decl. Ex. 72 at

193:20-194:20; 197:15-198:5 (███████████████████████████████

████████████████████[1]█████████████████████ (Canter Decl. Ex.

72 at 198:13-20.)

### E.    What ROSS Knew About LegalEase's Contract With West

LegalEase paid to use Westlaw pursuant to a license agreement.  (D.I. 281-1, Ex. 6 at

321:3-19.)  That agreement has a fair use provision.  (*See* D.I. 255-5, Ex. 76, Section 1(d); *id.*,

Ex. 77, Section 1(a)(iii); *id.*, Ex. 78, Section 1(c), *id.*, Ex. 79, Section 1(c).)  The fair use

provision states, "Subscriber may use the Product(s), including Data (as defined below) in the

regular course of Subscriber's business . . . to the extent not expressly prohibited by the terms of

the Agreement, use Data as permitted under the fair use provision of the Copyright Act (17

U.S.C.A. § 107)."  D.I. 281-1, Ex. 14 at Section 1(a).)

---

[1] █████████████████████████████████████████
███████████████ (Canter Decl., Ex. 71, Hafeez Tr. 135:5-15).

Plaintiffs claim that ███████████████████████████████████████████

██████████████████████████████████. (D.I. 250 at 5.)  However, Plaintiffs do

not claim that ROSS ever had access to the LegalEase agreements. Plaintiffs have admitted,

████████████████████████████████████████████████████████████

(Canter Decl., Ex. 82 at RFA No. 73.) ███████████████████████████████

██████     (D.I. 281-1, Ex. 6 at 39:10-22; *id.*, Ex. 11; *id.*, Ex. 12 at 207:1-208:22; D.I. 255-5, Ex.

75; D.I. 281-14, Ex. 40 ¶¶ 28-30.)

███████████████████████████████████████████████████████████████

████████████████████ (D.I. 255-4, Ex. 72.) ████████████████████████

███████████████████████████████████████████████████████████████

██████ (Canter Decl. Ex. 74.)[2]  Plaintiffs do not claim that the United States Terms and

Conditions (governing the relationship with LegalEase) are the same as the Canada Terms and

Conditions (which ROSS received from Dentons).

███████████████████████████████████████████████████████████████

██████████████████████████████. (Canter Decl., Ex. 75 at 80.19-81:19 (██████

███████████████████████████████████████████████████████████████

██

████████████████████████); *id.*, Ex. 76, at 32:22-33:15; 34:12-23; *id.*, Ex. 77; *id.*, Ex.

78; *id.*, Ex. 79 at 31:11-20, *id.*, Ex. 80 at 232:23-233:7 ██████████████████

███████████████████████████████████████████████████████████████

████████

---

[2] Plaintiffs' Exhibit 72 is a cover email that omits the attachments.  (D.I. 255-4.) ROSS's Exhibit
74 provides both the email and attachments.

███████████████████████████████████████████████████, (D.I. 255-4 Ex. 50), the document on which Plaintiffs rely does not say that ROSS is prohibited from obtaining research from third parties.  And it certainly does not say that there is any prohibition that would preclude a third party from providing research.

### F.     The Content And Creation of Memos

LegalEase created approximately 25,000 memos between September 2017 to December 2017.  (D.I. 281-1, Ex. 5 at 116:12-16; Ex. 4; Ex. 6 at 88:13-18; Ex. 7 at 25:18-21; Ex. 2 at 321:7-322:7.)  It was known as the "Bulk Memo Project."  (D.I. 281-1, Ex. 2 at 321:7-322:7; D.I. 281-1, Ex. 4.) ████████████████████████████████████████

████████████████ (*Id.*, Ex. 3; *id.*, Ex. 4; *id.*, Ex. 5, at 123:17-124:13; *id.*, Ex. 2, at 321:7-322:25.)

████████████████████████████████████████████████

█████████████████ (*Id.* Ex. 7, at 125:7-12; D.I. 281-9, Ex. 33 at 343:6-21, 354:5-18; D.I. 279 ¶¶ 26-30; D.I. 280 ¶ 26.)

████████████████████████████████████████████████

███████████████████████████████ (D.I. 281-1, Ex. 6 at 99:9-102:1, 266:6-13; D.I. 281-14, Ex. 37 at 129:4-136:15.)  The research itself was done manually.  As explained by LegalEase's CEO, the contract attorneys ██████████████████

████████████████████████████████████████████████████

████████████████████ (*Id.*, Ex. 37, at 139:16-13.)

*LegalEase Drafted Legal Questions To Be As Close As Possible To The Language In Judicial Opinions.* ██████████████████████████████████████

████████████████████████████████████████████████

████████████████ D.I. 281-9, Ex. 35 at 4; D.I. 281-1, D.I. 281-1, Ex. 6, at 63:6-25; 78:1-17, 84:9-85:9, 225:20-226:11, 228:8-24; D.I. 281-14, Ex. 38; D.I. 281-1 Ex. 9 at 127:5-18;

*id.*, Ex. 7, at 60:8-14; 62:21-63:21; 64:22-65:13; D.I. 281-14 Ex. 39.)  And LegalEase's CEO explained ███████████████████████████████████████████████████████████████████████████

██████████████████████████. (D.I. 281-1 Ex. 6, at 78:1-17.)

████████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████ (*Id.* Ex. 7, at 62:10-63:21.)  The

Morae Global representative testified that ████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████ (D.I. 281-14, Ex. 41, at 54:2-7; D.I. 281-1, Ex. 7, at

69:8-71:14, *id.* at 123:21; D.I. 281-15, Ex. 42.)  The Morae Global team "████████████████████

████████████████████████████████████████████████████████████████████████████████

██████████ (D.I. 281-1, Ex. 7 at 64:22-65:10.)

█████████████████████████████████████████████████████████████████████

██████████████████████████. (D.I. 280 ¶¶ 42, 43, 46, 48.)  Using the methodologies suggested

by Plaintiffs' expert, Dr. Krein, ROSS's expert ████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████ (D.I. 280 ¶¶ 33-48.) ████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████ (D.I. 280 ¶ 42.)[3]

---

[3] ████████████████████████████████████████████████████████████████████████████

(D.I. 280 ¶ 32.) ██████████████████████████████████████████████████████████████████

████████████████████████ (D.I. 281-15, Ex. 43, at 139:21-159:21.)  Although ROSS served the relevant
expert report on October 10, 2022, and Dr. Krein's deposition occurred on October 22, 2022, ████
████████████████████████████████████████████████████████████████████████████(D.I. 281-
15, Ex. 43 at 139:21-140:15;151:4-20; 159:23-164:22.)

- 8 -

***The Topics, Subtopics, Key Numbers And Headnotes Were Only Used Temporarily,***

***Ephemerally, and Intermediately.*** ████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████. (D.I. 281-

3, Ex. 26, at 70-71, Ex B.) ██████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████ (D.I. 281-14, Ex. 41, at

52:17-19; 109:12-24; 114:2-9; D.I. 281-1, Ex. 6, at 116:14-117:5, 225:20-226:11; 228:8-24.)

***Subtopics, Key Numbers And Headnotes Were Used In A Disordered, Random And* Ad**

**Hoc** *Manner.* ████████████████████████████████████████████

████████████████████████. (D.I. 281-1, Ex. 7 at 79:22-80:4; 125:7-12; *id.*, D.I.

281-9, Ex. 33 at 343:6-21; 345:5-18; D.I. 279 ¶¶ 26, 28, 30; D.I. 280 ¶ 26.) ██████████

████████████████████████████████████████████████. (D.I.

281-1, Ex. 6, at 116:14-117:5.)

████████████████████████████████████████████████████

████████████████████████ (D.I. 280 ¶¶ 22, 25.) ████████████████████

██████ (D.I. 281-29, Ex., 53 at 188:17-189:4; D.I. 280 ¶ 25 (citing TR-0179847, D.I. 281-

33).)

There was a wide variance in the dispersal of topics, subtopics and key numbers

traversed. ████████████████████████████████████████████████

████████████████████████ (D.I. 281-9, Ex. 32; D.I. 281-1, Ex. 7 at 168:7-10; D.I.

280 ¶¶ 22-25.) ████████████████████████████████████████████████

████████████████████████ (D.I. 281-1, Ex. 7 at 108:14-109:11; D.I. 281-44

Ex. 66; D.I. 279 ¶ 31.)

**G.     LegalEase Provided ROSS With A List Of 91 Legal Topics As Part of the Classifier Project**

Plaintiffs point to Exhibits 61 and 57, as proof that ██████████████████████

████  (D.I. 250 at 9.)  What they point to are two documents reflecting a classifier project

██████████████████████████████████████.  (D.I. 278 ¶ 25;

Supplemental Declaration of Jimoh Oviagele ("Ovbiagele Supp. Decl.") ¶¶ 8-13.)

████████████████████████████████████████████████

████████████████████████████████████

████████████████  (D.I. 278 ¶¶ 24, 26; D.I. 281-1, Ex. 2, at 415:14-416:10.)

As of the time of ROSS's work with LegalEase, ████████████████████

████████████.  (D.I. 281-2, Ex. 24 at 46:9-48:1.)  ████████████████

████████████████████████████████  (D.I. 281-

38, Ex. 62, at 76:14-19; D.I. 278 ¶ 24, Exs. 54 and 55.)

As part of ROSS's experimentation with its classifier technology, ████████

████████████████████████████████████████████  (D.I. 281-38, Ex. 62

at 76:2-19; D.I. 281-1 Ex. 6 at 303:6-16; 303:24-304:19; D.I. 281-32, Ex. 56; D.I. 278 ¶ 24.)

████████████████████████████████████████████████

████████████████████████  (D.I. 281-32 Ex. 56; D.I.

278 ¶ 25.)  ████████████████████████████.  (D.I. 281-1, Ex. 2, at

416:13-417:18; *id.*, Ex. 5, at 129:22-130:3, 131:5-133:5-6, 146:5-11; D.I. 278 ¶ 26.)

**H.     The ███ Judicial Opinions**

████████████████████████████████████████████████

██████████████████████. (D.I. 250 at 10.) ████████████████████████ (D.I. 281-34, Ex. 58; D.I. 281-1, Ex. 6, 174:5-19; 174:23-175:11; D.I. 281-1, Ex. 2 at 135:23-136:23.)

████████████████████████████████████████████████████████

███████████████████████ (D.I. 281-1, Ex. 2, at 135:23-136:23.)

## I.    The Numbers

████████████████ at issue in this motion are ██████████ of the total number of headnotes.  Plaintiffs do not actually state in their brief the number of cases that LegalEase displayed and downloaded as the alleged basis for their indirect infringement claim. ██████

███████████████ (D.I. 255-3, Ex. 24 at 53.)  This comprises not even ████ of the total of the data records that comprise the compilation ██████████.  Plaintiffs do not detail how many key numbers might be at issue, or how many headnotes were at issue in the ████████████[4]

█████████████████████████████████████████████████████████

██████████████ (Canter Decl. ¶¶ 25- 33, Ex. 89.)  Plaintiffs were directed to identify all of the allegedly infringed copyrights in their Third Supplemental Response to ROSS's First Interrogatory.  (D.I. 201.) ████████████████████████████████████████████

███████████████ (See D.I. 281-3- D.I. 281-8, Ex. 26.)  Also, Plaintiffs' expert Dr. Krein analyzed headnotes that Plaintiffs contend are at issue in his Appendix C to his rebuttal report, which are also in Appendix D to his reply report.  (D.I. 266-1, Ex. AR; D.I. 266-1, Ex. AT.)[5] Those ██████ headnotes were not analyzed by Dr. Krein either.

---

[4] There is no evidence in the record of the number of headnotes or key numbers that are part of these ██████ cases because Plaintiffs have not produced these ██████ cases.  These ██████ cases were also not included in Plaintiffs' Third Supplemental Interrogatory Response identifying all of the allegedly infringed copyrights.  (D.I. 281-10- D.I. 281-13, Ex. 36.)
[5] Dr. Krein stated that Appendix D is ████████████████████████████████████████████ ████████████████████ (D.I. 266-1, Ex. AS at iii.)



(Canter Decl. ¶ 31, Ex. 89.)  This leaves ■ headnotes. ████████████████████████

████████████████████████████████████████████ (Canter Decl. ¶ 32, Ex. 89.) ████████████████████████████████

████████████████████████████████ (Canter Decl. ¶ 33, Ex. 89.)  This leaves only ■ headnotes.  (*Id.*)

## ARGUMENT

### I.   THE DIRECT INFRINGEMENT ARGUMENT FAILS AS A LEGAL AND FACTUAL MATTER

There are two distinct issues that preclude the award of summary judgment.  First, as a legal matter, the copying of ■ headnotes, even were it true, cannot establish a copyright violation.  Headnotes do not have their own copyright registrations—separately or jointly.  They are registered as part and parcel of a compilation—as part of a database.  The copying of such a miniscule portion of a compilation is not a copyright violation as a matter of law.  Section I, A.

In addition, the argument depends on Plaintiffs' soundbite approach to the facts— statements made for impact.  First, Plaintiffs assert and imply that there was some systematic, regularized copying such that some thought-out portion of West headnotes and content were copied.  This is not true.  Second, Plaintiffs' isolation of ■ headnotes at issue ROSS's ignores two things.  ROSS's expert Dr. Frederiksen-Cross ████████████████████████████

████████████████████████████████████████████████████████

Section I, B.  Also, not even Plaintiffs identified all of the ■ headnotes as being at issue. Third, while Plaintiffs intently wish to compare questions only to headnotes, the fact is the ■

██████████████████████████████████████████████████

███ (Section I, B; *see also* Canter Decl., Ex. 89.).

### A.   Plaintiffs Cannot Establish Copyright Infringement By Pointing to The Alleged Copying Of Far Less Than One Percent Of A Compilation

Plaintiffs implicitly acknowledge that the copyright standards that govern compilations apply.  This explains why Plaintiffs rely on *Feist Publ'ns v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991), and other compilation cases to urge that headnotes are creative.  (D.I. 250 at 14; *see also Matthew Bender & Co. v. W. Publ'g Co.*, 1997 WL 266972, at *2 (S.D.N.Y. May 19, 1997) (noting that "West's compilation copyright protects its arrangement of cases, its indices, its headnotes and its selection of cases for publication"), *aff'd*, 158 F.3d 674 (2d Cir. 1998).

As noted in ROSS's Motion for Summary Judgment on Fair Use, "West has a thin copyright in its compilations."  *Matthew Bender & Co. v. W. Publ'g Co.*, 158 F.3d 693, 707 (2d Cir. 1998); D.I. 272 at 12.  The materials are also highly functional, utilitarian, and "dictated by external constraints" inherent in the subject matter of the work. *Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 214 (3d Cir. 2002); *Educ. Testing Servs. v. Katzma*n, 793 F.2d 533, 539 (3d Cir. 1986); *see also* Statement of Facts, Section A.

As compilations, the standard for infringement is not, as Plaintiffs suggest, "substantial similarity."  (D.I. 250 at 13.)  The standard that courts uniformly have arrived at is "supersubstantiality."  "'[I]f substantial similarity is the normal measure required to demonstrate infringement 'supersubstantial' similarity must pertain when dealing with 'thin' works,'" i.e., compilations.  *TransWestern Pub. Co. LP v. Multimedia*, 133 F.3d 773, 776-77 (10th Cir. 1998) (quoting 4 Nimmer & Nimmer, Nimmer on Copyright § 13.03[A] at 13-28 (1977)).

In accordance with this view, courts do not find infringement when some small portion of a compilation has been copied.  Here, the ████ headnotes at issue comprise ██████████

████████████████████████████████████████

████████████████████████████████████████████

████████████ Those numbers simply cannot establish infringement. *Ross, Brovins &*

*Oehmke, P.C. v. Lexis Nexis Grp., a Div. of Reed Elsevier Grp., PLC*, 463 F.3d 478,483 (6th Cir.

2006) (copying of 61% of a compilation not sufficient for infringement); *Matthew Bender & Co.*,

1997 WL 266972, at *1 (permissible to scan "up to 75% of West cases"); *Experian Info. Sols.,*

*Inc. v. Nationwide Mktg. Servs.*, *Inc.*, 893 F.3d 1176, 1186-88 (9th Cir. 2018) (copying of 80% of

database not sufficient); *Schoolhouse, Inc. v. Anderson*, 275 F.3d 726, 729-30 (8th Cir. 2002)

(74% copied not sufficient).

## B.     The Factual Basis For This Argument Is Missing

In broad strokes, Plaintiffs try to create an impression that ROSS engaged in some

wholesale copying of Westlaw Content. ████████████████████████████

████████████████████████████████

███████████████████████████ (*See,*

*e.g.*, D.I. 250, at 8-9.)  In fact, there was no systemic copying of headnotes or any aspect of what

Plaintiffs call Westlaw Content.  *See* Statement of Facts Section D-F.

With regard to headnotes, ████████████ at issue come from the Opening Expert

Report of Ms. Barbara Frederiksen-Cross. ████████████████████████

███████████████████████ (*See* D.I. 280 ¶ 7.). ██████████

████████████████████████████████

████████ Statement of Facts, I.

A comparison of headnotes to judicial opinions, using the ordinary observer approach

urged by Plaintiffs (D.I. 250 at 15), reflects the following: ████████████ at issue which

remain, ████████████ are either identical to judicial text or less similar to the questions

than judicial text.  Statement of Facts, I ███████████████████████████████████████████

████████████████████████  (Canter Decl.¶ 33, Ex. 89.)  The tiniest sliver of Plaintiffs'

compilation.

For these reasons, Plaintiffs' motion as to direct infringement should be denied.

## II.   PLAINTIFFS' INDIRECT INFRINGEMENT HAS NO MERIT

Summary judgment as to Plaintiffs' claim of indirect infringement should be denied

because Plaintiffs cannot show LegalEase's direct infringement, ROSS's contribution to that

infringement, or ROSS's vicarious control over and benefit from that infringement.

### A.   Plaintiffs Cannot Show That LegalEase Directly Infringed.

For both contributory and vicarious infringement, Plaintiffs must show that LegalEase

directly infringed Plaintiffs' copyrights.  *See Columbia Pictures Indus., Inc. v. Redd Horne, Inc.*,

749 F2d 154, 160 (3d Cir. 1984); *Parker v. Google*, 422 F. Supp. 2d 492, 498-99 (E.D. Pa.

2006).  Plaintiffs cannot establish direct infringement.

Plaintiffs point to Exhibits 23, 24, 103 and 5, as proof of copying.  (D.I. 250 at 9.)

However, Plaintiffs cannot show that the amount of what is claimed to have been copied is

sufficient to establish infringement.  *See Schoolhouse, Inc.*, 275 F.3d at 729-30; *Ross, Brovins &*

*Oehmke, P.C.*, 463 F.3d at 483; *see also Experian Information Solutions, Inc.*, 893 F.3d at 1176;

*TransWestern Pub. Co. LP*, 133 F.3d at 776-777.

Plaintiffs' Exhibit 23 cites to Appendix C to Dr. Krein's rebuttal report, ███████████



████████████ (D.I. 250 at 9.) ██████████████████████████████████. (281-10 –

281-13, Ex. 36, at ¶ 112 n. 162.) ███████████████████████████████████████████

██████████████████████████████████████████. (D.I. 280 ¶¶ 22, 25.)  This

is a fraction of the registered compilation.  (*See* D.I. 272 at 15-16.)

Plaintiffs' Exhibit 24 is Mr. James Malackowski's Opening Report. ███████████

███████████████████████████████████████████████████████████████████

████████  (D.I. 255-3.)  Judicial opinions are not copyrightable.  *Wheaton v. Peters*, 33 U.S. 591,

668 (1834); *Georgia v. Public Resource.Org Inc.*, 140 S. Ct. 1498 (2020) (annotations of state

laws ).  Accessing them is not a copyright violation.  *Assessment Techs. of WI, LLC v.*

*WIREdata, Inc.*, 350 F.3d 640, 646 (7th Cir. 2003).  And the number of judicial opinions tells us

nothing of the extent of copyrighted material at issue.[6]  Even then, ████████ is a small fraction of

over 1.5 million data records for judicial opinions.  (D.I. 266, Ex. 81.)

Plaintiffs' Exhibit 103 is ██████████████████████ that the Declaration of

Miranda Means gives no title.  (D.I. 255-11.)  ███████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████.

Second, even had LegalEase copied enough material to constitute infringement,

LegalEase cannot be held liable because it has not, on Plaintiffs' own theory, committed an

infringement.  █████████████████████████████████████████████████████

███████████████████████████████████████████████████  (D.I.

250 at 15-16.)

Plaintiffs cite two documents that purportedly ████████████████████████

████████████ the Thomson Reuters' Terms and Conditions and ████████████████

---

[6] Plaintiffs' Exhibit 5, 246:8-10 is a citation to the transcript of the deposition of ROSS's Expert
Dr. Alan Cox.  ███████████████████████████████████████████████████
████████████████ (and which are referred to at Plaintiffs' Exhibit 24.)  This does not
provide any basis for understanding the scope of the copyrighted material claimed to have been
copied.

████████████████████████████.  (*See* D.I. 250 at 15 (citing 255-5, Ex. 78; D.I. 255-7, Ex. 84).  Neither document reflect that ███████████████████████ and Plaintiffs do not identify any language in either document that supports ███████████ ██████████████████████████

The Westlaw Terms and Condition includes a fair use provision under § 1(c) of the License Terms that states "The Copyright Act (17 U.S.C.A. 107) fair use provision may allow additional uses."  (*See* D.I. 255-5, Ex. 78) The Terms and Conditions also permit LegalEase to "display [Thomson Reuters'] information product data internally."  (*See* D.I. 255-5, Ex. 78.)  No determination at this stage has been made as to whether ROSS's use of the Westlaw Content constitutes infringement.  Thus, there is no decision at this stage as to whether LegalEase's access to, display of, and downloading of the Westlaw Content constitutes infringement.

B.   **ROSS Did Not Know Of LegalEase's Infringement And Did Not Contribute Or Induce The Infringement**

In addition to showing LegalEase directly infringed on Plaintiffs' copyrights, which it has not, Plaintiffs must also show that ROSS had knowledge of LegalEase's infringement *and* either materially contributed to or induced the infringement.  *See Parker*, 422 F. Supp. 2d at 498-99; *see also Tanksley v. Daniels*, 259 F. Supp. 3d 271, 295 (E.D. Pa. 2017) (plaintiff required to allege the defendant's knowledge of the purported direct infringement at issue).

Plaintiffs claim that ROSS had actual knowledge of LegalEase's conduct, but none of Plaintiffs' examples of ROSS's knowledge support actual knowledge of any infringing conduct.  (*See* D.I. 250 at 17.)  There is no evidence that ROSS knew the terms of LegalEase agreement.  ███████████████████████████████████ (D.I. 281-1, Ex. 6 at 39:10-22; *id.*, D.I. 281-2, Ex. 11; *id.*, Ex. 12 at 207:1-208:22; D.I. 255-5, Ex. 75; D.I. 281-14, Ex. 40 ¶¶ 28-30.)  And Plaintiffs have admitted.███████████████████████████████████

███████████████████ (Canter Decl., Ex. 82, RFA No. 73.)  Moreover, LegalEase

warranted that it was not violating the IP rights of any third party. ("Canter Decl." Ex. 81.)  Even

were ROSS to have had knowledge of the terms, the agreement contains a fair use provision.[7]

ROSS also did not contribute to any infringement.  *See Matthew Bender & Co. v. W.*

*Publ'g Co.*, 158 F.3d 693, 707 (2d Cir. 1998) (summary judgement claim defeated when there

was no evidence the party had encouraged the direct infringers to infringe); *Ranieri v.*

*Adirondack Dev. Grp.*, 164 F. Supp. 3d 305, 347 (N.D.N.Y. 2016) ("[P]articipation in

the infringement must be 'substantial' and the … contributory infringer must have acted in

concert with the direct infringer.")

████████████████████████████████████████████████████████

█████████. (D.I. 281-1, Ex. 9 at 43:2-5, 60:10-19; *see also* Canter Decl. Ex. 72 at 62:3-24

(███████████████████████████████████████████); *id.* at 91:22-92:10

(█████████████████████████████████████████ns); *id.* at

92:16-93:25 ██████████████████████████████████████

██████████████t.).

---

[7] The cases cited by Plaintiffs are factually distinguishable or favorable to ROSS. *UMG Recordings, Inc. v. RCN Telecom Servs.*, LLC, 2020 WL 5204067 /, at *2, 7-10 (D.N.J. Aug. 31, 2020), involved a defendant that provided the platform by which infringement occurred and was provided warnings of copyright infringement.  In *Arista 17 Recs., Inc. v. Flea World, Inc.*, 2006 WL 842883 (D.N.J. Mar. 31, 2006), the record established defendant was aware of multiple users infringing copyrights and had a product that did not have "non-infringing uses." In *Leonard v. Stemtech Int'l Inc*, 834 F.3d 376 (3d Cir. 2016), the defendant created the infringing product to distributor to commit direct infringement, resulting in knowledge of the infringement. And in *Gershwin Publ'g Corp. v. Colom. Artists Mgmt., Inc.*, 443 F.2d 1159 (2d Cir. 1971), the infringing activity initiated after confirmation and knowledge of others' direct infringement. Finally, in *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007), defendant hosted the infringing materials.

The fact that a direct infringer is asked to do work is not sufficient to find either inducement or contribution. *See, e.g.*, *Bridgeport Music, Inc. v. WB Music Corp.*, 508 F.3d 394, 400-01 (6th Cir. 2007) (plaintiff required to introduce evidence that alleged contributory infringer encouraged direct infringer to violate copyrights); *Tanksley*, 259 F. Supp. 3d at 295; *Live Face on Web, LLC v. Control Grp. Media Co.*, 150 F. Supp. 3d 489, 499-500 (E.D. Pa. 2015) (contributory infringement claim defeated when plaintiff did not allege defendant was acting in concert with infringer and defendant had to take "affirmative steps" to encourage the direct infringement); *Muench Photography, Inc. v. Pearson Education, Inc.*, 2013 WL 6172953, at *5-6 (N.D. Cal. Nov. 25, 2013) (not enough for plaintiff to allege contributory infringement without describing instances of defendant encouraging or promoting third parties to infringe). Moreover, as specifically applies to Plaintiffs' compilation, there is no evidence that ROSS "encouraged [LegalEase] . . . to reproduce West's arrangement." *Matthew Bender*, 158 F.3d at 706.

### C.    ROSS Is Not Vicariously Liable

As with contributory infringement, Plaintiffs must show, which they cannot, that LegalEase directly infringed on Plaintiffs' copyright.  Plaintiffs also must prove, as a matter of law, that ROSS had the "right and ability to supervise the infringing conduct" and ROSS had a "direct financial interest in the infringement." *Adobe Sys. v. Canus Prods.*, 173 F. Supp. 2d 1044, 1049 (C.D. Cal. 2001).  The only evidence Plaintiffs cite to support the control element are documents and testimony relating ████████████████████████.  (D.I. 250 at 19.)

Teri Whitehead, who led the ROSS Bulk Memo Project for LegalEase, testified that ███████████████████████████████████████████████████████████████ (Canter Decl. Ex. 72 at 193:20-194:20; 197:15-198:5 (████████████████████████ ██████████████████████████████████████ None of the evidence

Plaintiffs offer suggest that ROSS controlled or supervised what research tool LegalEase used and how it used that tool.  The evidence does show that LegalEase independently chose which legal research tool to use for the Bulk Memo Project, and how it used that tool.  In fact, Whitehead testified that had ███████████████████████████████ ███████████████████████████. (Canter Decl. Ex. 72 at 198:13-20.)

## CONCLUSION

ROSS respectfully requests that the Court denies Plaintiffs' motion for partial summary judgment on copyright infringement.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

By: */s/ David E. Moore*
  David E. Moore (#3983)
  Bindu A. Palapura (#5370)
  Andrew L. Brown (#6766)
  Hercules Plaza, 6th Floor
  1313 N. Market Street
  Wilmington, DE  19801
  Tel:  (302) 984-6000
  dmoore@potteranderson.com
  bpalapura@potteranderson.com
  abrown@potteranderson.com

Gabriel M. Ramsey
Warrington Parker
Joachim B. Steinberg
Jacob Canter
Christopher J. Banks
CROWELL & MORING LLP
3 Embarcadero Center, 26th Floor
San Francisco, CA 94111
Tel:  (415) 986-2800

*Attorneys for Defendant/Counterclaimant*
*ROSS Intelligence, Inc.*

Mark A. Klapow
Crinesha B. Berry
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC  20004
Tel:  (202) 624-2500

Dated:  January 30, 2023
10570361 / 20516.00001

Public Version Dated: February 6, 2023

- 20 -