**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION, | ) ) ) | |
| | ) | C.A. No. 20-613-SB |
| Plaintiffs/Counterdefendants, | ) ) | |
| | ) | **JURY TRIAL DEMANDED** |
| v. | ) ) | |
| | ) | **PUBLIC VERSION** |
| ROSS INTELLIGENCE INC., | ) ) | |
| Defendants/Counterclaimant. | ) ) | |

**DEFENDANT/COUNTERCLAIMANT ROSS INTELLIGENCE INC'S BRIEF IN
OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
JUDGMENT (NO. 2) ON TORTIOUS INTERFERENCE WITH
<u>CONTRACT AND COPYRIGHT PREEMPTION</u>**

OF COUNSEL:

Gabriel M. Ramsey
Warrington Parker
Joachim B. Steinberg
Jacob Canter
Christopher J. Banks
CROWELL & MORING LLP
3 Embarcadero Center, 26th Floor
San Francisco, CA 94111
Tel: (415) 986-2800

Mark A. Klapow
Crinesha B. Berry
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004
Tel: (202) 624-2500

Dated: January 30, 2023
10570557 / 20516.00001

Public Version Dated: February 6, 2023

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Andrew L. Brown (#6766)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
abrown@potteranderson.com

*Attorneys for Defendant/Counterclaimant
ROSS Intelligence, Inc.*

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION AND SUMMARY OF ARGUMENTS ....................................................1

STATEMENT OF FACTS ............................................................................................... 1

      A.     Ross Hires LegalEase To Draft The Bulk Memos................................................. 1

      B.     Charles von Simson Is Not Relevant To The Intentional Interference Claim ........ 4

      C.     LegalEase's Contract With West ......................................................................... 5

      D.     West Terminates LegalEase's License ................................................................. 7

ARGUMENT ................................................................................................................ 8

I.      PLAINTIFFS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON THEIR INTENTIONAL INTERFERENCE CLAIM ................................................................... 8

      A.     ROSS Did Not Know The Terms of West's Contract With LegalEase. ................ 8

      B.     Plaintiffs Cannot Show that ROSS Intended For LegalEase to Breach Its Contract With West. ....................................................................................................... 10

      C.     Plaintiffs Cannot Show That ROSS's Actions Were Not Justified. .................... 13

II.     Plaintiffs' Claims are Preempted By the Copyright Act.................................... 14

CONCLUSION.......................................................................................................... 20

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Altera Corp. v. Clear Logic, Inc.*,
    424 F.3d 1079 (9th Cir. 2005) ...................................................................................18

*Anesthesia Servs., P.A. v. Anesthesia Advantage, P.C. v. Winters*,
    2013 WL 3352672 (Del. Super. Ct. June 27, 2013) .................................................9

*Arcelik, A.S. v. E.I. Du Pont de Nemours & Co.*,
    2022 WL 3139086 (D. Del. Aug. 5, 2022) .......................................................8, 11

*Asset Vision, LLC v. Fielding*,
    2013 WL 6633743 (D. Idaho Dec. 17, 2013) .......................................................18

*Avaya Inc., RP v. Telecom Labs, Inc.*,
    838 F.3d 354 (3d Cir. 2016).................................................................................13

*Belair Motors, Inc. v. Universal Ufnderwriters Ins. Co.*,
    2005 WL 8176439 (W.D. Pa. July 26, 2005) .......................................................11

*Bucklew v. Hawkins, Ash, Baptie & Co.*,
    329 F.3d 923 (7th Cir. 2003) ...............................................................................20

*Cassway v. Chelsea Historic Properties I*,
    1993 WL 64633 (E.D. Pa. Mar. 4, 1993)............................................................16

*Chase Bank USA, N.A. v. Hess*,
    2013 WL 867542 (D. Del. Mar. 7, 2013), *report and recommendation*
    *adopted*, 2013 WL 5314706 (D. Del. Sept. 20, 2013) ..........................................12

*Cryovac Inc. v. Pechiney Plastic Packaging, Inc.*,
    430 F. Supp. 2d 346 (D. Del. 2006).....................................................................11

*Cvent, Inc. v. Eventbrite, Inc.*,
    739 F. Supp. 2d 927 (E.D. Va. 2010) ..................................................................18

*DocMagic, Inc. v. Ellie Mae, Inc.*,
    745 F. Supp. 2d 1119 (N.D. Cal. 2010) ...............................................................18

*Energy Intel. Grp., Inc. v. Jefferies, LLC*,
    101 F. Supp. 3d 332 (S.D.N.Y. 2015)............................................................17, 18

*Forest Park Pictures v. Universal Television Network, Inc.*,
    683 F.3d 424 (2d Cir. 2012)................................................................................15

*Genius Media Grp. Inc. v. Google LLC*,
    2020 WL 5553639 (E.D.N.Y. Aug. 10, 2020), *aff'd sub nom.*, *ML Genius*
    *Holdings*, 2022 WL 710744, *petition for cert. docketed* .................................................18, 19

*Gilliam v. Am. Broad. Companies, Inc.*,
    538 F.2d 14 (2d Cir. 1976)......................................................................................17

*Jacobsen v. Katzer*,
    535 F.3d 1373 (Fed. Cir. 2008)...............................................................................17

*Johnson v. Arista Holding, Inc.*,
    2006 WL 3511894 (S.D.N.Y. Dec. 5, 2006) ..........................................................20

*In re Joy Glob., Inc.*,
    739 F. Supp. 2d 711 (D. Del. 2010) (Stark, J.) ......................................................13

*Laws v. Sony Music Ent., Inc.*,
    448 F.3d 1134 (9th Cir. 2006) .................................................................................19

*Lipscher v. LRP Publ's, Inc.*,
    266 F.3d 1305 (11th Cir. 2001) ..............................................................................19

*Martin v. Finley*,
    349 F. Supp. 3d 391 (M.D. Pa. 2018) ................................................................10, 11

*Matthew Bender & Co. v. W. Pub. Co.*,
    158 F.3d 693 (2d Cir. 1998).....................................................................................17

*MCS Servs., Inc. v. Johnsen*,
    2002 WL 32348500 (E.D. Pa. Aug. 13, 2002) .......................................................15

*Media.net Advertising FZ-LLC v. NetSeer, Inc.*,
    156 F. Supp. 3d 1052 (N.D. Cal. 2016) ..............................................................18, 19

*Mercom Grp., LLC v. Diati Staffing, LLC*,
    2016 WL 4054921 (D.N.J. July 26, 2016)..............................................................16

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
    545 U.S. 913 (2005).................................................................................................17

*ML Genius Holdings LLC v. Google LLC*,
    2022 WL 710744 (2d Cir. Mar. 10, 2022), *petition for cert. docketed*, *ML*
    *Genius Holdings LLC v. Google LLC* ....................................................................15

*Prairie Cap. III, L.P. v. Double E Holding Corp.*,
    132 A.3d 35 (Del. Ch. 2015)....................................................................................12

*PSC Info Grp. v. Lason, Inc.*,
  681 F. Supp. 2d 577 (E.D. Pa. 2010) ...........................................................13, 14

*S.O.S., Inc. v. Payday, Inc.*,
  886 F.2d 1081 (9th Cir. 1989) .......................................................................17

*Stromback v. New Line Cinema*,
  384 F.3d 283 (6th Cir. 2004) .........................................................................15

*Superior Models, Inc. v. Tolkien Enterprises*,
  1981 WL 40556 (D. Del. Aug. 14, 1981) .......................................................13

*Tegg Corp. v. Beckstrom Elec. Co.*,
  650 F. Supp. 2d 413 (W.D. Pa. 2008)............................................................15

*Tingley Sys., Inc. v. CSC Consulting, Inc.*,
  152 F. Supp. 2d 95 (D. Mass. 2001) .............................................................18

*Trivedi v. Slawecki*,
  2014 WL 6851429 (M.D. Pa. Dec. 3, 2014), *aff'd*, 642 F. App'x 163 (3d Cir.
  2016) .............................................................................................................13

*WaveDivision Holdings, LLC v. Highland Cap. Mgmt., L.P.*,
  49 A.3d 1168 (Del. 2012) ................................................................................8

*Wellness Pub. v. Barefoot*,
  2008 WL 108889 (D.N.J. Jan. 9, 2008) .........................................................16

*Wilder v. CBS Corp.*,
  2016 WL 693070 (C.D. Cal. Feb. 13, 2016)...................................................18

**Statutes**

17 U.S.C. § 301(a) .................................................................................................20

17 U.S.C.A. § 107.......................................................................................... *passim*

**Other Authorities**

H.R. Rep. No. 94-1476 (1976)................................................................................15

S. Rep. No. 94-473 (1975) .....................................................................................15

Restatement (Second) of Torts § 766 (1979) cmt. ...........................................9, 10, 11

iv

## INTRODUCTION AND SUMMARY OF ARGUMENTS

Plaintiffs cannot establish that ROSS Intelligence, Inc. ("ROSS") interfered with Plaintiffs' contract with LegalEase Solutions, LLC ("LegalEase") to breach its agreement with West. Plaintiffs cannot show that ROSS knew the terms of LegalEase's agreement with West. They cannot show that ROSS intended or caused LegalEase to breach its agreement with West. Nor can they show the absence of justification as a matter of law.

This Court should deny Plaintiffs' motion, and in the alternative, as argued in Defendant's Motion for Summary Judgment, grant summary judgment to Defendant on this claim.

## NATURE AND STAGE OF PROCEEDING

Plaintiffs sued ROSS on May 6, 2020. (D.I. 1.)  The parties filed dispositive motions on December 22, 2022. (D.I. 250.)  This opposition is due on January 30, 2023. (*Id.*)

## STATEMENT OF FACTS

To develop its natural language search engine, ROSS needed data to train its software. That data was a set of memoranda, which each included a legal question paired with answers. The answers had to be verbatim quotes from judicial opinions. (*See* D.I. 272 at 3-8.)

### A.    Ross Hires LegalEase To Draft The Bulk Memos

ROSS hired a third-party legal research company, LegalEase Solutions, LLC, that worked with a subcontractor Morae Global (collectively "LegalEase"), to prepare Bulk Memos. (D.I. 281-1, Ex. 5, at 115:18-22, 116:12-16; *id.*, Ex. 4; *id.*, Ex. 6, at 88:13-18; *id.*, Ex. 7, at 25:18-21.)  The Bulk Memo project involved LegalEase creating memos that ROSS used as training data for its legal search platform.  (D.I. 281-1, Ex. 2 at 321:23-322:3.)

ROSS memorialized its agreement with LegalEase in a Master Services Agreement ("MSA") and later in statements of work for different projects.  (*See* D.I. 281-1, Ex. 4; D.I. 281-

32.) In the MSA, LegalEase warranted that its work would not infringe on the intellectual property rights of others.  (Declaration of Jacob Canter ("Canter Decl.") Ex. 81 (ROSS-LegalEase MSA, Oct. 15, 2015) ("10(b)(iii).  All Deliverables and Developments are original works of authorship of the authors, and do not infringe the Intellectual Property Rights of any third party.").)  LegalEase also represented and warranted that it "ha[d] the authority to enter into this Agreement and has obtained all rights and waivers necessary to grant the rights, titles and interests granted to Company hereunder."  (*Id.* at 10(b)(v).)

The Statement of Work for the Bulk Memo project incorporated these representations and warranties.  (D.I. 255-8, Ex. 87 at TR-0038923 ("This Statement of Work is ancillary to existing agreements, including, but not limited to the MSA and prior Statements of Work.").)  Neither the MSA nor the Statement of Work specified which legal search platform LegalEase would use for its research to create memoranda.

ROSS did not direct LegalEase to use Westlaw.  (Canter Decl., Ex. 71 at 53:24-54:4 ("██████████████████████████████████████████████ ██████████████████████████████████████████████ █████████████████████""); *id.* at 135:5-15; *id.*, Ex. 72 at 43:2-5; *id.,* Ex. 73 at 271:18-272:5; 286:8-13; *see also* D.I. 255-4, Ex. 68 (ROSS contacting LegalEase in September 2015 ████ ██████████████████████████████████████████████ █████████████████") (emphasis added).) [1]

---

[1] ROSS also did not require LegalEase to cite certain cases, and ROSS had no preference whether LegalEase used cases that were old or overruled.  (*See, e.g.*, D.I. 255-10, Ex. 93 at TR-0104714 ██████████████████████████████████████████████████).)

█████████████████████████████████ (*See* Canter Decl., Ex. 71 at 135:16-21.) █████████████████████████████████ (Canter Decl. Ex. 72 at 193:20-194:20; 197:15-198:5 (██████████████████████ ██████████████████████[2]██████████████████████████ ██████████████████████████████████ (Canter Decl., Ex. 72 at 198:13-20.)

██████████████████████████████████ ██████████████. (Canter Decl., Ex. 72 at 104:16-23 (████████████ ████████████████████████████), 143:7-18 (█████████ ███████████████████████████████), 189:2-6 (Q: ███ ████████████████████████████████████████████ ███████████████████), 198:13-199:5 (Q: "██████ ████████████████████████████████████████████ ███████████); *id.*, Ex. 71 at 167:23-168:13 (████ █████████████████████████), 214:24-215:7 (███████ ████████████████), 230:3-9 (███████████████████); 238:1- 239:5 (Hafeez stating that he ████████████████████ ██████████████████████████████████████ ██████████████████).)[3]

─────────────────

[2] LegalEase's CEO also testified that █████████████████ ██████████████████ (Canter Decl., Ex. 71 at 135:5-15.)
[3] ██████████████████████████████████████████ ██████████████████ (Canter Decl., Ex. 84 at 349:2-17.)  As LegalEase's CEO testified, ███████████████████████ (Canter Decl., Ex. 71 at 106:2-11.)

ROSS also engaged with LegalEase to do a classifier project.  The classifier project was



████████████████████████████████████████████████████████████

███████████████████████████████. (Canter Decl., Ex. 84 at 415:14-21.) ███████████████

████████████████████████████. (*Id.* at 415:22-416:10, 416:11-417:7.)  The classifier project

was ███████████████ from the anything related to the training of the AI search engine, *e.g.*,

the Bulk Memo project. (*Id.* at 417:19-418:10.)  The Bulk Memo project and classifier project

were governed by different Statement of Works and covered different time.  (*Compare* D.I. 255-

8 at TR-0038923 (ROSS-LegalEase SOW II for ROSS Bulk Memos) *with* D.I. 281-32 at

LEGALEASE-00108391 (ROSS-LegalEase SOW re ROSS Classifier).)

It was in connection with the Bulk Memo project that LegalEase allegedly breached the

terms of the LegalEase-Westlaw agreement related to excessive usage, using a script, or

password sharing.  (Canter Decl., Ex. 71 at 113:2-18 (LegalEase representative stating that

████████████████████████████████████████████████████████

████████████████████████"), 354:7-18 (████████████████████████████████

████████████████████████"); *id.*, Ex. 79 at 40:5-20 (Q: ████████████████████

████████████████████████████████████████████████████████

████████████████████████████████

## B.     Charles von Simson Is Not Relevant To The Intentional Interference Claim

Plaintiffs discuss the actions of Charles von Simson in their Statement of Facts.  (D.I. 252

at 4-5.)  Charlie van Simson joined ROSS in May 2018.  (Canter Decl., Ex. 85 at 86:12-15.)  The

acts by von Simson that Plaintiffs complain of occurred in and after May 2018.  (*See* D.I. 255-4,

Ex. 66 (von Simson slack messages dated June, 4, 2018), Ex. 71 (von Simson slack messages

dated May 17, 2019), Ex. 65 (von Simson slack messages dated May 31, 2019).)[4]  As is noted

immediately below, Plaintiffs terminated their contract with LegalEase in January 2018.

### C.     LegalEase's Contract With West

Plaintiffs and LegalEase first entered into a licensing agreement in 2008.  (Canter Decl.,

Ex. 71 at 39:10-22; *id.*, Ex. 80 at 207:2-208:24; D.I. 281-1, Ex. 11.) ████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████.  (D.I. 255-5, Ex. 77 (Terms and Conditions dated

December 1, 2014); *id.*, Ex. 79 (Terms and Conditions dated July 1, 2015); *id.*, Ex. 78 (Terms

and Conditions dated September 1, 2015); *id.*, Ex. 75 (Terms and Conditions dated July 1,

2017);[5] *see also* Canter Decl., Ex. 82, Plaintiffs Response to RFA No. 32 (████████████

████████████████████████████████████████████████████████████).)

---

[4] ████████████████████████████████████████████████████
███████████████████████████████████████████.''  (Canter Decl., Ex. 85 at
97:6-18, 134:11-21 (
.'').)
████████████████████████████████████.  (*Id.* at 95:13-22.)  As an LLM student,
he had access to Westlaw.  (*Id.* at 96:2-4.)  While at ROSS, von Simson
███████████████████████'' (*Id.* at 96:14-97:5.)
████████.  (*Id.* at 97:24-98:3.)
████████████████████████████(*Id.* at 120:8-20.)

[5] ████████████████████████(*See* D.I. 255-5, Ex. 76, Section 1(c); *id.*, Ex. 77, Section 1(a)(iii); *id.*, Ex. 78,
Section 1(c), *id.*, Ex. 79, Section 1(c).)
██████████████████████████(D.I. 281-1, Ex. 14, Section
1(a).)

Plaintiffs do not claim that ROSS ever had access to the LegalEase agreements.

Plaintiffs have admitted, ███████████████████████████████████████

████████████ (Canter Decl., Ex. 82, Plaintiffs' Response to RFA No. 73.) ███████████

████████████████████████████████. (D.I. 281-1, Ex. 6 at 39:10-22; *id.*, Ex. 11;

*id.*, Ex. 12 at 207:1-208:22; D.I. 255-5, Ex. 75; D.I. 281-14, Ex. 40 ¶¶ 28-31.)

████████████████████████████████████████████████████████

████████████████████. (D.I. 255-4, Ex. 72.) ████████████████████

████████████████████████████████████████████

████████████. (Canter Decl., Ex. 74.)[6]  Plaintiffs do not claim that the terms of the

United States Terms and Conditions (████████████████████████) are the same as

the Canada Terms and Conditions (████████████████████████).

████████████████████████████████████████████████████

████████████████████ (Canter Decl., Ex. 75 at 80:19-81:19 (testifying

that LegalEase's business ████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████); *id.*, Ex. 76, at 32:22-33:15; 34:12-23; *id.*, Ex. 77, TR-

0908413; *id.*, Ex. 78, TR-0037754 ; *id.*, Ex. 79 at 31:11-20, *id.*, Ex. 80 at 232:23-233:7 ("████

████████████████████████████████████████████████████

████████████████████).)

And while Plaintiffs claim ████████████████████████████████

(D.I. 255-4, Ex. 50), the document on which Plaintiffs rely does not say that ROSS is prohibited

---

[6] Plaintiffs' Exhibit 72 from D.I. 255-4 is a cover email that omits the attachments.  ROSS's
Exhibit 74 provides both the email and attachments.

████████████████████████████. And it certainly does not say that there is any prohibition that would preclude a third party from providing research.

### D.    West Terminates LegalEase's License

In January 2018, according to a complaint filed by West against LegalEase, West terminated LegalEase's access to Westlaw for sharing of passwords with a third party, Morae Global, and for using bots.  (D.I. 281-14, Ex. 40 ¶¶ 30-39.)  West claimed that LegalEase breached the terms of its Subscriber Agreement.  (*Id.*)  West claimed that LegalEase's breach was based on ███████████████████████████████ ████████████████).  (D.I. 255-3, Ex. 37.)

Plaintiffs did not tell LegalEase ██████████████████████████████ █████████████ (Canter Decl., Ex. 79 at 65:25-66:22; *id.*, Ex. 86 (█ █████████████████████).)  Plaintiffs now claim that "excessive use" was a valid basis to cancel the LegalEase's license.  But according to their 30(b)(6) witness, "█ ██████████████████" (*Id.*, Ex. 79 at 65:13-14, 67:11-68:1, 63:15-64:15 ("█ ████████████████); *id.*, Ex. 87; *id.*, Ex. 88, TR-0037703 ("█ ███████████████████████████████████████ █████); *see also id.*, Ex. 80 at 193:21-194:19; *id.*, Ex. 79 at 175:2-177:9; *id.*, Ex. 78 (TR-0037754.)  Even now, Plaintiffs' 30(b)(6) witness could not say █████████ ███████████████ (*Id.*, Ex. 79 at 175:10-178:19.)

## ARGUMENT

I. **PLAINTIFFS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON THEIR INTENTIONAL INTERFERENCE CLAIM**

Plaintiffs argue that ROSS tortiously interfered with West's contract with LegalEase by inducing LegalEase to breach its agreement with West in three ways:  using a bot to "scrape" Westlaw, selling data to a competitor, and sharing passwords.  (D.I. 252 at 20.)

Under Delaware law, to win on a claim for tortious interference with contract, a plaintiff "must show that: '(1) there was a contract, (2) about which the particular defendant knew, (3) an intentional act that was a significant factor in causing the breach of contract, (4) the act was without justification, and (5) it caused injury.'"  *WaveDivision Holdings, LLC v. Highland Cap. Mgmt., L.P.*, 49 A.3d 1168, 1174 (Del. 2012) (cleaned up).  Plaintiffs cannot show that there is a lack of genuine issues of material fact as to each of these elements, and their motion should be denied.

Specifically, Plaintiffs cannot establish as a matter of undisputed fact that ROSS knew the terms of the LegalEase contract; that ROSS intended or caused LegalEase to breach its contract with West; or that ROSS acted without justification.

A. **ROSS Did Not Know The Terms of West's Contract With LegalEase.**

To win on their claim of tortious interference with contract, Plaintiffs must show that ROSS knew the terms with which it allegedly interfered.  "Although there is limited case law on this issue in Delaware, courts in other jurisdictions require the alleged tortfeasor to have knowledge of the specific terms of a contract with which it is accused of interfering."  *Arcelik, A.S. v. E.I. Du Pont de Nemours & Co.*, 2022 WL 3139086, at *12 (D. Del. Aug. 5, 2022) (collecting cases).  Plaintiffs cannot do so.

Plaintiffs argue that ROSS knew of the terms that are issue because ████████████ ████████████. (D.I. 252 at 4.)  But that is not proof that ROSS knew the terms of the agreement with LegalEase.  Among other reasons, ████████████████████████████ ████████ (*See* Statement of Facts, Section C.)  And it is not enough to show that a defendant knew of the contract. *Anesthesia Servs., P.A. v. Anesthesia Advantage, P.C. v. Winters*, 2013 WL 3352672, at *4-5 (Del. Super. Ct. June 27, 2013) ("The language of Comment (i) [to Restatement (Second) § 766] demonstrates that knowledge of the contract itself is insufficient to establish a tortious interference claim.  The comment explicitly requires both 'knowledge of the contract' and knowledge '*of the fact that he is interfering with the performance of the contract.*'") (emphasis in original) (citation omitted)).

Next, ROSS could not have been aware of the terms that Plaintiffs now claim LegalEase breached ████████████████████████████. When West noticed that LegalEase's usage was higher than expected, it reviewed LegalEase's usage.[7]  It ultimately canceled LegalEase's Westlaw account ████████████████████████ ████████████████████████. (Canter Decl., Ex. 86, TR-0002723; *id.*, Ex. 75 at 109:5-13 (████████████████████████████ ████████████████).)

If West was not sure that what LegalEase was accused of was a breach, it would be impossible for ROSS to know that.  (Canter Decl., Ex. 88 (████████████████ ████████████████████); *id.*, Ex. 79 at 175:21-176-2 (████████

---

[7] ████████████████████████ (Canter Decl., Ex. 89, TR-0038692 ("████████████████████████████ ████████████), but that was not why they canceled LegalEase's accounts. (*Id.*, Ex. 86, TR-0002723 (████████████████



"), 180:20-181:8 ( ), 188:23-190:22 ( ).)  If West was not sure that what LegalEase was accused of was a breach, it would be impossible for ROSS to know that.

Plaintiffs also try to ascribe knowledge to ROSS because ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ (D.I. 252 at 14.) This all happened after May 2018.  Plaintiffs terminated their contract with LegalEase in January 2018.  (*See* Statement of Facts, Section B.) ▉▉▉▉▉▉▉ knowledge and acts are therefore irrelevant.

### B.    Plaintiffs Cannot Show that ROSS Intended For LegalEase to Breach Its Contract With West.

Beyond ROSS's lack of knowledge of the terms of West's agreement with LegalEase, Plaintiffs cannot show that ROSS intended for LegalEase to breach its agreement with West. Plaintiffs argue that this element is met by pointing to ROSS's supposed knowledge of the terms of the LegalEase/West agreement.  (D.I. 252 at 14-16.)  That is not true as shown above.

Nor is it enough that LegalEase allegedly breached its agreement with West in order to meet its obligations to ROSS.  Plaintiffs must instead show that ROSS's conduct intentionally caused LegalEase to breach its agreement with West, and it cannot do so.  *See* Restatement (Second) of Torts § 766 (1979) cmt. o ("The question whether the actor's conduct caused the third person to break his contract with the other raises an issue of fact."); *see Martin v. Finley,*

349 F. Supp. 3d 391, 406 (M.D. Pa. 2018) (noting that Pennsylvania tortious interference claims relies on Restatement (Second) of Torts § 766).[8]

Under the Restatement (Second), a party is only liable for tortious interference with contract when they intended to interfere with a contract or where "interference is certain or substantially certain to occur."  Restatement (Second) of Torts § 766 cmt. j (incorporating "intent" as defined in *id.* § 8A).  And "'[s]ummary judgment is notoriously inappropriate for determination of claims in which issues of intent, good faith, and other subjective feelings play dominant roles.'"  *Cryovac Inc. v. Pechiney Plastic Packaging, Inc.*, 430 F. Supp. 2d 346, 361 (D. Del. 2006) (quoting *Haft v. Dart Grp. Corp.*, 841 F. Supp. 549, 577 (D. Del. 1993)).

To show intent, a plaintiff must show "purposeful action . . . *specifically intended* to harm the existing relation, or to prevent a prospective relation from occurring." *Belair Motors, Inc. v. Universal Ufnderwriters Ins. Co.*, 2005 WL 8176439, at *9 (W.D. Pa. July 26, 2005) (emphasis added), *report and recommendation adopted*, 2005 WL 8176434 (W.D. Pa. Aug. 15, 2005) (internal citations and quotation marks omitted).

ROSS did not require LegalEase to commit any of the acts that Plaintiffs allege were breaches.  ROSS asked LegalEase to create memoranda.  It negotiated a price with LegalEase, and directed the format of the memos, but had no control over how LegalEase performed the work.  It did not tell or even suggest that LegalEase share passwords, or scrape content.  (*See* Statement of Facts, Section A.)

---

[8] Pennsylvania, like Delaware, has adopted the Second Restatement definition of tortious interference with contract.  *Martin*, 349 F. Supp. 3d at 406. "Delaware courts routinely follow common law in other jurisdictions . . . ." *Arcelik, A.S.*, 2022 WL 3139086, at *12 (D. Del. Aug. 5, 2022).

When Plaintiffs sued LegalEase, they alleged that LegalEase breached its contract by sharing passwords (*see* D.I. 281-14, Ex. 40 ¶ 45) and scraping content from Westlaw.  (*Id.* ¶ 49.) They also accused LegalEase of transferring Westlaw content to ROSS. (*Id.* ¶ 56.)  Not one of those acts was caused by ROSS, required by the terms of ROSS's agreement with LegalEase, the necessary result of ROSS's agreement with LegalEase, or even a predictable result of ROSS's contract with LegalEase.  Unlike the case cited by Plaintiffs, *Chase Bank USA, N.A. v. Hess*, 2013 WL 867542, at *3 (D. Del. Mar. 7, 2013), *report and recommendation adopted*, 2013 WL 5314706 (D. Del. Sept. 20, 2013), where the defendant "directed" the breaching party to breach its agreement, here ROSS directed LegalEase *not* to breach its agreements.  Without any causal link between ROSS's contract with LegalEase and the alleged breaches, Plaintiffs cannot win on their claim of tortious interference.

What Plaintiffs point to is not evidence that ROSS took some affirmative purposeful step intending to harm Plaintiffs' relationship with LegalEase.  Indeed, the evidence points to the opposite, ROSS insisted that LegalEase warrant and represent that it would only provide information that it had the right to use.  *See Prairie* Cap. *III, L.P. v. Double E Holding Corp.*, 132 A.3d 35, 61-62 (Del. Ch. 2015) ("It is reasonably inferable that the defendants intended to induce reliance on the representations because they appeared in a written agreement.  For the same reason, it is reasonably inferable that the plaintiff relied on the representations when entering into the agreement."). ████████████████████████████████ ██████████████████████████████████. (*See* Statement of Facts, Section A.)

In other words, ROSS's intent was that LegalEase *not* breach any other agreements; it even insisted that LegalEase promise that would be the case.

**C.      Plaintiffs Cannot Show That ROSS's Actions Were Not Justified.**

Plaintiffs also have the burden of showing that ROSS's actions were not justified.  "The presence of a privilege is not an affirmative defense, rather, the absence of such a privilege is an element of the cause of action which must be pleaded and proven by the plaintiff." *Trivedi v. Slawecki*, 2014 WL 6851429, at *16 (M.D. Pa. Dec. 3, 2014), *aff'd,* 642 F. App'x 163 (3d Cir. 2016) (*quoting Synthes, Inc. v. Emerge Med, Inc.,* 2014 WL 2616824, at *19 (E.D. Pa. June 11, 2014)).

This requires showing wrongful acts that go beyond the breach itself, otherwise this element would be superfluous.  *See, e.g.*, *In re Joy Glob., Inc*., 739 F. Supp. 2d 711, 744 (D. Del. 2010) (Stark, J.) (interpreting Wisconsin law under the Second Restatement).  Thus, to win at summary judgment, Plaintiffs must show that no reasonable jury could conclude that ROSS's actions were not privileged.  They cannot do so, because whether the interference is proper or improper is based on the "precise facts of the case before the court."  *PSC Info Grp. v. Lason, Inc*., 681 F. Supp. 2d 577, 594 (E.D. Pa. 2010); *Avaya Inc., RP v. Telecom Labs, Inc.*, 838 F.3d 354, 384 (3d Cir. 2016) ("The factors in that test are laden with subjective value judgments that will rarely be answerable as a matter of law."); *Superior Models, Inc. v. Tolkien Enterprises*, 1981 WL 40556, at *6-7 (D. Del. Aug. 14, 1981) (questions of whether defendant acted "wrongful[ly]" involve a factual determination, and here, "these issues present material issues of fact making summary judgment inappropriate for [tortious interference]").

For intentional interference claims, there are no "crystallized set of definite rules as to the existence or nonexistence of a privilege."  *PSC Info Grp.*, 681 F. Supp. 2d at 593.  Instead, under the Restatement, courts analyze privilege and justification by asking whether the defendant's acts were "improper."  *Id.*  Put another way, "the 'central inquiry' is whether the defendant's

13

"interference is sanctioned by the 'rules of the game.'" *Id.* at 594 (quoting *Advent Sys. Ltd. v. Unisys Corp.*, 925 F.2d 670, 673 (3d Cir. 1991)).

Plaintiffs have pointed to no evidence showing that ROSS's acts were not justified.  They point to emails between ████████████████████████████████████████████ ████████████████. (D.I. 252 at 17 (*citing* D.I. 255-4, Ex. 50).)  But those emails do not say that ROSS could not engage someone else to do legal research on its behalf.  (*See* D.I. 255-4, Ex. 50.)[9]

Plaintiffs' only other evidence of a lack of justification is that one of ROSS's experts testified that ████████████████████████████████. (*See* D.I. 252 at 18.)  But they cite incomplete portions of that expert's testimony.  Where Plaintiffs claim that Dr. Branting said they "████████████████████████████████" (D.I. 252 at 18), Dr. Branting actually testified that LegalEase "████████████████████████████████████████ ████" (Declaration of Crinesha B. Berry In Supp. of Opp. to Plaintiffs' Daubert Mots. ("Berry Decl."), Ex. 13 at 276:15-20.)  Nor does *LegalEase's* decision to use Westlaw bear on ROSS's justification for its decision to engage LegalEase.

## II.   PLAINTIFFS' CLAIMS ARE PREEMPTED BY THE COPYRIGHT ACT

Plaintiffs argue that the Copyright Act does not preempt their claims for tortious interference because claims based on contractual relationships are not preempted.  That argument is incorrect as a matter of law, contradicted by the explicit statement of Congress, and inconsistent with both binding and persuasive authority.  Although ROSS has moved this Court

---

[9] Plaintiffs also point to acts ████████████████████ (D.I. 252 at 18.)  As mentioned, those acts, which took place months after the alleged tortious interference and were unrelated to the LegalEase agreement with West, cannot support Plaintiffs' claims.  (*See* Statement of Facts Section B.)

for summary judgment on this issue and incorporates by reference the arguments made in that

motion ROSS responds here to the arguments raised in Plaintiffs' motion.

First, Plaintiffs argue that tortious interference with contract claims are not preempted by

the Copyright Act. (D.I. 252 at 19.)  This is false. *See, e.g.*, *Stromback v. New Line Cinema*, 384

F.3d 283, 306 (6th Cir. 2004); *MCS Servs., Inc. v. Johnsen*, 2002 WL 32348500, at *7 (E.D. Pa.

Aug. 13, 2002) ("Indeed, numerous courts have found that tortious interference is generally

preempted by the Copyright Act.").  The leading treatises also say that tortious interference with

contract claims are preempted.  *See, e.g.*, 6 Patry on Copyright § 18:30; 1 Nimmer on Copyright,

§ 1.01[B][1][a] (as quoted in *Tegg Corp. v. Beckstrom Elec. Co*., 650 F. Supp. 2d 413, 429

(W.D. Pa. 2008)).  And Congress, in passing the Copyright Act, said explicitly that tortious

interference with contract claims were generally preempted. H.R. Rep. No. 94-1476, at 132

(1976); *see also* S. Rep. No. 94-473, at 115 (1975).

In support of their argument, Plaintiffs cite inapposite cases—cases that are *breach of

contract* cases, not tortious interference with contract.  (D.I. 252 at 19 (citing *Bowers v. Baystate

Techs., Inc.*, 320 F.3d 1317, 1327-28 (Fed. Cir. 2003); *Expediters Int'l of Washington, Inc. v.

Direct Line Cargo Mgmt. Servs., Inc*., 995 F. Supp. 468, 480 (D.N.J. 1998)).  Generally, while

some breach of contract cases are not preempted, like *Forest Park Pictures v. Universal

Television Network, Inc*., 683 F.3d 424, 431–32 (2d Cir. 2012) (collecting cases), most are.  *See,

e.g.*, *ML Genius Holdings LLC v. Google LLC*, 2022 WL 710744, at *4 (2d Cir. Mar. 10, 2022),

*petition for cert. docketed*, *ML Genius Holdings LLC v. Google LLC*, U.S. (August 9, 2022)

("Genius argues, in effect, for a per se rule that all breach of contract claims are exempt from

preemption. But such a rule would be in tension with our precedent holding that the general

15

scope inquiry is holistic.") (internal citation and quotation marks omitted).  Simply put, the law is different for tortious interference claims.

The few tortious interference with contract cases on which Plaintiffs do rely find that the claim was not preempted because the claim did not turn on the reproduction, display, and distribution of copyrighted materials.  *See Wellness Pub. v. Barefoot*, 2008 WL 108889, at *18 (D.N.J. Jan. 9, 2008); *Mercom Grp., LLC v. Diati Staffing, LLC*, 2016 WL 4054921, at *4 (D.N.J. July 26, 2016); *Cassway v. Chelsea Historic Properties I*, 1993 WL 64633, at *5 (E.D. Pa. Mar. 4, 1993).

In *Barefoot*, at issue was a non-compete provision.  The tortious interference claim— which was dismissed on other grounds—was directed only to a limited portion of the contract, an agreement "not to compete in selling Plaintiffs' book and not to compete on the subject of coral calcium."  2008 WL 108889, at *18.  In *Mercom*, at issue was use of confidential and proprietary information.  The "gravamen" of the tortious interference claims was the use of "confidential and proprietary information" in a way that caused the plaintiff to breach *its* confidentiality agreements to clients.  2016 WL 4054921, at *4. And in *Cassway*, "it [was] not the act of copying that has created the tortious interference claim; rather, it is the alleged act of [defendant] seeking to retain [plaintiff]'s consultants without paying [plaintiff] its fees due under the contract."  1993 WL 64633, at *5.[10]  Thus, these cases have no application.

In contrast, Plaintiffs' tortious interference claims are expressly premised on the reproduction, display, and distribution of allegedly copyrighted materials.  (D.I. 1 ¶¶ 1, 20, 21,

---

[10] In *Cassaway*, the plaintiff provided architectural drawings to the defendant, who never paid for them.  Then, the defendant allegedly hired a third party, and that third party interfered with contracts between plaintiff and other consultants.  Thus, the copyright claim, based on the transmission of the drawings, was separate from the tortious interference claim.  1993 WL 64633, at *1-5.

32, 33-35, 37, 41-44, 51-52; D.I. 281-1, Ex. 1 at 11 (stating as the basis for the tortious

interference claim that ███████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████.” (*Id.* (emphasis added).)

Second, Plaintiffs claim that "contractual restrictions on how the copyrighted work is

used" provide an extra element. They ignore the many cases finding precisely the opposite: that

when a party grants a license to its copyrighted material, breaches of that license sound in

copyright, not contract. *See, e.g.*, *Jacobsen v. Katzer*, 535 F.3d 1373, 1380 (Fed. Cir. 2008) ("If .

. . a license is limited in scope and the licensee acts outside the scope, the licensor can bring an

action for copyright infringement."); *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1087–88 (9th

Cir. 1989) ("A licensee infringes the owner's copyright if its use exceeds the scope of its

license.); *Gilliam v. Am. Broad. Companies, Inc.*, 538 F.2d 14, 20 (2d Cir. 1976). And this

further elides the distinction between contract and tortious interference with contract. The

contractual terms bound LegalEase. They did not bind ROSS.

A comparison to the law of secondary liability for copyright infringement confirms that

there is no extra element here: Plaintiffs claim that ███████████████████████████

███████████████████████████████████████████████(D.I. 252 at 5-6.)

That is exactly what they would need to prove to win on a claim for secondary copyright

infringement: "One infringes contributorily by intentionally inducing or encouraging direct

infringement, and infringes vicariously by profiting from direct infringement while declining to

exercise a right to stop or limit it." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545

U.S. 913, 930 (2005) (citations omitted); *see also Matthew Bender & Co. v. W. Pub. Co.*, 158

F.3d 693, 706 (2d Cir. 1998); *Energy Intel. Grp., Inc. v. Jefferies, LLC*, 101 F. Supp. 3d 332, 341

(S.D.N.Y. 2015) ("A defendant may be held liable for contributory copyright infringement if, with knowledge of the infringing activity, the defendant materially contributes to the infringing conduct of another.") (internal citations and quotation marks omitted). Courts have dismissed tortious interference claims as preempted by theories of secondary liability. *See, e.g.*, *Tingley Sys., Inc. v. CSC Consulting, Inc.*, 152 F. Supp. 2d 95, 111 (D. Mass. 2001); *Asset Vision, LLC v. Fielding*, 2013 WL 6633743, at *5 (D. Idaho Dec. 17, 2013).

Third, Plaintiff's lead case, *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1089 (9th Cir. 2005), involved the unauthorized downstream illicit use of a party's products. "In *Altera*, the court found that a state law tort claim was not preempted by federal copyright law, because the unauthorized use of the software's end-product is not within the rights protected by the federal Copyright Act." *DocMagic, Inc. v. Ellie Mae, Inc.*, 745 F. Supp. 2d 1119, 1148 (N.D. Cal. 2010) (internal citations and quotation marks omitted). In *Altera*, the right at issue only existed in the software agreement. *See Media.net Advertising FZ-LLC v. NetSeer, Inc.*, 156 F. Supp. 3d 1052, 1071-73 (N.D. Cal. 2016); *Wilder v. CBS Corp.*, 2016 WL 693070, at *7 (C.D. Cal. Feb. 13, 2016) (distinguishing *Altera*). But here, the rights that Plaintiffs assert are all rights that exist under the Copyright Act, no matter how cleverly Plaintiffs try to disguise them.

Plaintiffs argue that LegalEase's breaches of contract were "████████████ ████████████████████████████," and "████████████." (D.I. 252 at 20.) Each of the alleged breaches—████████████████████████████████—are all cognizable as violations of the Copyright Act. *See, e.g.*, *Cvent, Inc. v. Eventbrite, Inc.*, 739 F. Supp. 2d 927, 935 (E.D. Va. 2010) (claims based on "scraping" preempted by the Copyright Act); *Energy Intel. Grp.*, 101 F. Supp. 3d at 341 (password sharing can be a form of contributory infringement); *Genius Media Grp. Inc. v. Google LLC*, 2020 WL 5553639, at *9 (E.D.N.Y. Aug.

10, 2020), *aff'd sub nom.*, *ML Genius Holdings*, 2022 WL 710744, *petition for cert. docketed*, August 9, 2022 ("Plaintiff has not cited any authority to support its argument that the 'commercial use' language in the Terms of Service is sufficient to render the breach of contract claims qualitatively different from claims arising under the Copyright Act."). Nor does the fact that ROSS is a competitor add the qualitatively different element required to defeat preemption. *See, e.g.*, *Lipscher v. LRP Publ's, Inc.*, 266 F.3d 1305, 1312 (11th Cir. 2001); *Media.net Advert. FZ-LLC*, 156 F. Supp. 3d at 1073-74. That a party also includes those restrictions in its terms of service does not transform its rights into those not preempted by the Copyright Act. *See, e.g.*, *Genius Media Grp.*, 2020 WL 5553639 at *9 ("Plaintiff's allegations that Defendants 'scraped' and used their lyrics for profit amount to allegations that Defendants made unauthorized reproductions of Plaintiff's lyric transcriptions and profited off of those unauthorized reproductions, which is behavior that falls under federal copyright law."). In short, "[t]he copyright is the right to control the work, including the decision to make the work available to or withhold it from the public." *Laws v. Sony Music Ent., Inc.*, 448 F.3d 1134, 1137 (9th Cir. 2006).

Finally, Plaintiffs' tortious interference claim damages are entirely duplicative of its copyright claim. Plaintiff's expert, James E. Malackowski,



. (D.I. 281-9, Ex. 29 at 81:5-15 (" 82:16-19 ("

), 101:20-102:2 ("Q:

).)

Where, as here, the damages sought are identical, a claim for tortious interference with contract is preempted.  "Common law causes of action are generally preempted when they seek damages that are identical to those sought for copyright infringement."  *Johnson v. Arista Holding, Inc.*, 2006 WL 3511894, at *7 (S.D.N.Y. Dec. 5, 2006); *see also* 17 U.S.C. § 301(a); *Bucklew v. Hawkins, Ash, Baptie & Co.*, 329 F.3d 923, 933-34 (7th Cir. 2003).

## CONCLUSION

This Court should deny Plaintiffs' motion for summary judgment on its claim of tortious interference.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | POTTER ANDERSON & CORROON LLP |
| OF COUNSEL: |  |
|  | By:  */s/ David E. Moore*_____ |
| Gabriel M. Ramsey | David E. Moore (#3983) |
| Warrington Parker | Bindu A. Palapura (#5370) |
| Joachim B. Steinberg | Andrew L. Brown (#6766) |
| Jacob Canter | Hercules Plaza, 6th Floor |
| Christopher J. Banks | 1313 N. Market Street |
| CROWELL & MORING LLP | Wilmington, DE  19801 |
| 3 Embarcadero Center, 26th Floor | Tel:  (302) 984-6000 |
| San Francisco, CA 94111 | dmoore@potteranderson.com |
| Tel:  (415) 986-2800 | bpalapura@potteranderson.com |
|  | abrown@potteranderson.com |
| Mark A. Klapow |  |
| Crinesha B. Berry | *Attorneys for Defendant/Counterclaimant* |
| CROWELL & MORING LLP | *ROSS Intelligence, Inc.* |
| 1001 Pennsylvania Avenue, NW |  |
| Washington, DC  20004 |  |
| Tel:  (202) 624-2500 |  |

Dated:  January 30, 2023
10570557 / 20516.00001
 Public Version Dated: February 6, 2023