## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

THOMSON REUTERS ENTERPRISE )
CENTRE GMBH and WEST PUBLISHING )
CORPORATION, )
            ) C.A. No. 20-613-SB
         Plaintiffs/Counterdefendants, )
            ) **JURY TRIAL DEMANDED**
      v. )
            )
ROSS INTELLIGENCE INC., ) **PUBLIC VERSION**
            )
         Defendants/Counterclaimant. )

## ROSS INTELLIGENCE INC.'S BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON FAIR USE AND OTHER DEFENSES

OF COUNSEL:

Gabriel M. Ramsey
Warrington Parker
Joachim B. Steinberg
Jacob Canter
Christopher J. Banks
CROWELL & MORING LLP
3 Embarcadero Center, 26th Floor
San Francisco, CA 94111
Tel: (415) 986-2800

Mark A. Klapow
Crinesha B. Berry
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004
Tel: (202) 624-2500

Dated: January 30, 2023
10570929 / 20516.00001
Public Version Dated: February 6, 2023

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Andrew L. Brown (#6766)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
abrown@potteranderson.com

*Attorneys for Defendant/Counterclaimant
ROSS Intelligence, Inc.*

# TABLE OF CONTENTS

INTRODUCTION AND SUMMARY OF ARGUMENTS ........................................................ 1

NATURE AND STAGE OF PROCEEDING ........................................................................ 1

STATEMENT OF FACTS ................................................................................................ 1

ARGUMENT ................................................................................................................. 6

I.   ROSS'S USE OF THE ASSERTED MATERIAL WAS FAIR .......................................... 6

    A.   Factor One:  ROSS's Use Was Highly Transformative, Spurred New Creation And Served Important Public Interests ................................................................. 6

        1.   ROSS's Use Was Highly Transformative ................................................... 6

            a.   *ROSS Transformed Questions And Answers Into Statistical Measurements Representing Unprotectable Ideas About The Text And Used The Measurements To Create New Software* ................ 6

            b.   *LegalEase Made Only Functional, Ephemeral And Intermediate Use Of The Key Number System In Furtherance Of ROSS's Transformative Use* ................................................................ 10

        2.   ROSS's Transformative Use Afforded Substantial Public Benefits And Commercial Purpose Does Not Weigh Against Fair Use ........................ 12

        3.   ROSS Acted In Good Faith .................................................................... 14

    B.   Factor Two:  The Asserted Content Is Highly Constrained And Has Limited Protection, If Any .................................................................................... 15

    C.   Factor Three: The Amount And Substantiality Of The Alleged Use Is Minimal, And Only That Needed To Undertake The Transformative Use ......................... 16

    D.   Factor Four: Plaintiffs Admit There Is No Market Supplanted By ROSS's Use And ROSS Has Not Impacted Any Such Market ............................................... 18

II.  ROSS'S OTHER DEFENSES ARE MERITORIOUS .................................................... 20

    A.   Plaintiffs' Claims Are Barred By Consent, Waiver, Estoppel, License, Acquiescence And Laches ...................................................................... 20

    B.   Plaintiffs' Tortious Interference Claim Is Barred By Tort Of Another ............... 20

    C.   Plaintiffs Do Not Own The Asserted Material ............................................. 20

CONCLUSION ............................................................................................................. 20

-i-

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Assessment Techs. of WI, LLC v. WIREdata, Inc.*,
350 F.3d 640 (7th Cir. 2003) ................................................................................. 12

*Authors Guild v. Google, Inc.*,
804 F.3d 202 (2d Cir. 2015) ..................................................................................... 7

*Baker v. Selden*,
101 U.S. 99 (1879) .................................................................................................. 10

*Bikram's Yoga Coll. of India v. Evolation Yoga, Ltd. Liab. Co.*,
803 F.3d 1032 (9th Cir. 2015) ......................................................................... 11, 16

*Campbell v. Acuff-Rose Music, Inc.*,
510 U.S. 569 (1994) ........................................................................................ *passim*

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) .................................................................................................. 1

*Divine Dharma Med. v. Inst. of Lat. Ener. Stud.*,
2021 WL 3721438 (9th Cir. 2021) ........................................................................ 14

*Dun & Bradstr. Softw. Servs., Inc. v. Grace Consult., Inc.*,
307 F.3d 197 (3d Cir. 2002) .................................................................................. 15

*Educ. Test. Servs. v. Katzman*,
793 F.2d 533 (3d Cir. 1986) .................................................................................. 15

*Eldred v. Ashcroft*,
537 U.S. 186 (2003) ................................................................................................ 13

*Experian Info. Sols., Inc. v. Nationwide Mktg. Servs., Inc.*,
893 F.3d 1176 (9th Cir. 2018) ............................................................................... 18

*Feist Publ'ns, Inc. v. Rural Tel. Serv.*,
499 U.S. 340 (1991) ................................................................................................ 15

*Georgia v. Pub.Resource.Org, Inc.*,
140 S. Ct. 1498 (2020) ..................................................................................... 13, 16

*Google LLC v. Oracle Am., Inc.*,
141 S. Ct. 1183 (2021) .................................................................................... *passim*

*Greenbie v. Hollister Noble*,
    151 F. Supp. 45 (S.D.N.Y. 1957) .........................................................12

*Harper & Row, Publrs. v. Nation Enters.*,
    471 U.S. 539 (1985).....................................................................9, 19

*L. Batlin & Son, Inc. v. Snyder*,
    536 F.2d 486 (2d Cir. 1976)...............................................................16

*Magic Mktg. v. Mailing Servs.*,
    634 F. Supp. 769 (W.D. Pa. 1986).........................................................16

*Matthew Bender & Co.*,
    1997 WL 266972 (S.D.N.Y. May 19, 1997), *aff'd* 158 F.3d 674 (2d Cir. 1998)..............15, 18

*Matthew Bender & Co. v. W. Publ'g Co.*,
    158 F.3d 693 (2d Cir. 1998)........................................................15, 16, 17

*Mitel, Inc. v. Iqtel, Inc.*,
    124 F.3d 1366 (10th Cir. 1997) ...........................................................16

*New Era Publications Int'l, ApS v. Carol Publ'g Group*,
    904 F.2d 152 (2d Cir. 1990)...............................................................17

*Novartis Pharm. Corp. v. Eon Labs Mfg.*,
    206 F.R.D. 396 (D. Del. 2002) ............................................................20

*NXIVM Corp. v. Ross Inst.*,
    364 F.3d 471 (2d Cir. 2004)...............................................................14

*Phantomalert, Inc. v. Google Inc.*,
    2015 WL 8648669 (N.D. Cal. Dec. 14, 2015) ................................................12

*RJ Control Consult., Inc. v. Multiject*,
    LLC, 981 F.3d 446 (6th Cir. 2020).........................................................11

*Sega Enters. v. Accolade, Inc.*,
    977 F.2d 1510 (9th Cir. 1992) ....................................................8, 9, 10, 14

*Solid Oak Sketches, LLC v. 2K Games, Inc.*,
    449 F. Supp. 3d 333 (S.D.N.Y. 2020)......................................................18

*Sony Comput. Entm't, Inc. v. Connectix Corp.*,
    203 F.3d 596 (9th Cir. 2000) .....................................................*passim*

*Taylor v. Commissioner*,
    51 F.2d 915 (3d Cir. 1931)................................................................11

iii

*Ticketmaster Corp. v. Tickets.Com, Inc.*,
  2003 WL 21406289 (C.D. Cal. Mar. 7, 2003) ........................................................11

*Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*,
  342 F.3d 191 (3d Cir. 2003) .................................................................................9, 13

*W. Pub. Co. v. Edw. Thompson Co.*,
  176 F. 833 (2d Cir. 1910) ..........................................................................................12

*W. Publ. Co. v. Edw. Thompson Co.*,
  169 F. 833 (1909) .......................................................................................................12

*Waldman v. Thomson Reuters Corp.*,
  2012 ONSC 1138, 2012 Carswell Ont 2225 (2012) ..................................................7

*Warren Publ'g Co. v. Spurlock*,
  645 F. Supp. 2d 402 (E.D. Pa. 2009) .......................................................................14

*Warren Publ'g, Inc. v. Microdos Data Corp.*,
  115 F.3d 1509 (11th Cir. 1997) ...............................................................................16

*Wheaton v. Peters*,
  33 U.S. 591 (1834) ....................................................................................................16

*White v. W. Publ'g Corp.*,
  29 F. Supp. 3d 396 (S.D.N.Y. 2014) ...................................................................7, 15

**Statutes**

17 U.S.C. § 102(b) .....................................................................................................9, 16

17 U.S.C. § 107 ...................................................................................................... *passim*

**Other Authorities**

*The Economic Structure of Intellectual Property Law*, Harvard Univ. Press (2003)
  at p. 100) ......................................................................................................................9

## INTRODUCTION AND SUMMARY OF ARGUMENTS

ROSS's alleged use of the asserted material constitutes fair use under 17 U.S.C. § 107.

ROSS is entitled to entry of final judgment finding that its use was fair as a matter of law.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## NATURE AND STAGE OF PROCEEDING

Plaintiffs sued on May 6, 2020. (D.I. 1) They filed summary judgment on December 22, 2022. (D.I. 254.)

## STATEMENT OF FACTS

Westlaw contains a diverse collection of judicial opinions. ██████████████████████

████████████████████████████████████████████ (D.I. 281 Ex. 65 at 8) Headnotes

state issues and holdings in cases. ████████████████████████████████████

████████████████████████████████ (*Id.* Ex. 53 72:10-77:21, 79:12-82:11,

84:6-85:7; Ex. 64 at 8; Ex. 65 at 8; D.I. 280 ¶¶ 45-46) Plaintiffs place headnotes in opinions and

place opinions within its classification system of headnotes, topics, subtopics and key numbers.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████ (D.I. 281 Ex. 26 at 13-15)

For about a century, West has put its classification system forward as a standard and accepted

use by competitors. (D.I. 277 ¶ 22) [1] The top-level topics have not significantly changed since

1897 and 1904, reflecting common doctrinal topics taught as law school courses. (*Id.* ¶ 24)

Changes are made when the increase in cases on a topic start making the system unwieldy. (*Id.* ¶

26; D.I. 281, Ex. 53 205:23-208:8)

---

[1] Indeed, 21 U.S. District Courts' rules require Westlaw use. (Canter Decl. Ex. 68)

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████ (D.I. 279 ¶¶ 10, 26; D.I. 278 ¶ 2; Berry Decl. Ex. 13 202:14-203:3) ███████████

███████████████████████████████████████████████████

███████████████████████ (D.I. 278 ¶ 5; D.I. 281 Ex. 31 11:21-12:4, 50:21-24; Ex. 5

39:19-41:13) ████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████ (D.I. 281 Ex. 3; Ex. 2 333:22-334:19, Ex. 4; Ex. 5 115:18-22; Ex. 9 163:1-

165:4; Ex. 34; D.I. 278 ¶ 20) ███████████████████████████████

███████ (D.I. 281, Ex. 4; Ex. 5 50:1-51:12, 115:18-22, 123:17-124:13)

ROSS hired a legal research company "LegalEase" to prepare approximately 25,000

memos with questions and quotes. (*Id.*, Ex. 5 115:18-22, 116:12-16; Ex. 4; Ex. 6 88:13-18; Ex. 7

25:18-21; Ex. 2 321:7-322:7)[2] ███████████████████████████████████████

████████████████████████. (*Id.* Ex. 3; Ex. 4; Ex. 5 123:17-124:13; Ex. 2 321:7-322:25)

███████████████████████████████████████████████████

██████████████ (D.I. 280 ¶ 26; D.I. 279 ¶¶ 26-30; D.I. 281 Ex. 7 125:7-12; Ex. 33 343:6-21,

354:5-18)

███████████████████████████████████████████████████

████████████ (*Id.* Ex. 36 ¶ 112 n. 162) ████████████████████████████

███████████████████████████████████████████████████ (D.I. 255 Ex.

24 at 59)

---

[2] ███████████████████████████████████████████ (D.I. 281 Ex. 9 43:2-5,
60:10-19) LegalEase paid to use Westlaw pursuant to a license agreement which has a fair use
provision. (*Id.* Ex. 6 321:3-19; Ex. 14; D.I. 16-1)

███████████████████████████████████. (*Id.* at 53) ████████████████████████████

██████████████████████████████████████████████. (D.I. 281 Ex. 6 99:9-102:1, 266:6-13; Ex. 37 129:4-136:15) LegalEase attorneys "███████████████████████

████████████████████████████████████████████████ (*Id.* Ex. 37, 139:3-140:13)

In drafting questions, LegalEase started with headnotes. ██████████████████████

████████████████████████████████████████████████████████████████████████████

(D.I. 281 Ex. 6 50:6-23; Ex. 35 4-12; Ex. 7 168:7-19; Ex. 32 3-5)[3] ███████████████

████████████████████ *Id.* Ex. 35 at 5-7) ████████████████████████████████

████████████████████████████ (*Id.* at 5-8) ████████████████████████████

██████████████████ (*Id.*) █████████████████████████████████████████████

███████████████████ (*Id.* Ex. 35 at 4; Ex. 6 63:6-25, 78:1-17, 84:20-85:9, 225:20-226:11, 228:8-24; Ex. 38; Ex. 9 127:5-18; Ex. 7 60:8-14, 62:21-63:21, 64:22-65:13; Ex. 39)

████████████████████████████████████████████████████████████████████████████

████████ (*Id.* Ex. 6 78:1-17)

████████████████████████████████████████████████████████████████████

██████████████████ (*Id.* Ex. 7 62:10-63:21) ████████████████████████

███████████████████████████████████████████████████████████████

██████████████████ (*Id.* Ex. 41 54:2-7; Ex. 7 69:8-71:14, 123:21; Ex. 42) ████████

█████████████████████████████████████████████████████████████████

██████████████████ (*Id.* Ex. 7 64:22-65:6) █████████████████████

---

[3] Elements were only reproduced ephemerally in the browser and computer's memory as a technical and functional mechanism to reach text of opinions. (D.I. 281 Ex. 26 at 70-71, Ex. B) Plaintiffs' expert admitted that these materials ████████████████████████████████████ ████████████████████████████. (*Id.* Ex. 43 245:3-250:11, 172:18-176:1)

███████████████████████████████████████. (D.I. 280 ¶¶ 42, 43, 46, 48) Using

Plaintiffs' expert's methodologies, ROSS's expert compared ███████████████████

████████████████████████████████████████████████████████████████████████████

███████ (*Id.* ¶¶ 33-48) ████████████████████████████████████████████████████

████████████████████████████. (*Id.* ¶ 42)[4]

████████████████████████████████████████████████████████

████████████████████. (D.I. 281 Ex. 7 79:22-80:4, 125:7-12; Ex. 33 343:6-21, 345:5-18;

D.I. 279 ¶¶ 26, 28, 30; D.I. 280 ¶ 26) ████████████████████████████████████████

█████████████████████████████████ (D.I. 281 Ex. 6 116:14-117:5; D.I. 280 ¶¶ 22, 25) ███

██████████████████████████████. (D.I. 280 ¶ 25; D.I. 281, Ex., 53 188:17-189:4) ████████

███████████████████████████████████████████████████████████████████. (*Id.* Ex.

32; Ex. 7 168:7-10; D.I. 280 ¶¶ 22-25) ██████████████████████████████████████████

████████████████████████████████████████. (D.I. 281 Ex. 7 108:14-109:11;

D.I. 279 ¶ 31) When memos were uploaded internally and then sent or uploaded to ROSS,

substantial further disorder was introduced—no organization of the key number system remained

or was reflected.[5]

████████████████████████████████████████████████████████████████

██████████████ (D.I. 278 ¶¶ 7-8; D.I. 281, Ex. 5 76:24-77; Ex. 2 325:22-332:2) ███████████

███████████████████████████████████████████████████████

---

[4] ████████████████████████████████████████████████████████████████████████████ (D.I.
280 ¶ 32) ████████████████████████████████████████████████████████████████
████████████████████████████. (D.I. 281 Ex. 43 139:21-159:21) Although ROSS served
the relevant expert report on October 10, 2022 and Plaintiffs' expert's deposition occurred on
October 22, 2022, ████████████████████████████████████████████████████████████
█████████████ (*Id.*, 139:21-140:15, 151:4-20, 159:23-164:32)
[5] D.I. 281 Ex. 7 113:3-11, 93:12-94:7, 97:14-101:23, 119:9-17, 211:23-213:17, 61:10-20, 165:9-
166:2; Ex. 47; Ex. 48; Ex. 49; Ex. 9 34:19-35:14; Ex. 51; Ex. 6 240:20-242:3; Ex. 2 332:19-
333:6; Ex. 52; Ex. 53 303:3-12; D.I. 278 ¶ 21; D.I. 279 ¶ 10).



(*Id.* Ex. 36 ¶ 134)

(D.I. 279 ¶ 11; D.I. 278 ¶¶ 12-20)

. (D.I. 278 ¶¶ 12-20; D.I. 281, Ex. 36 ¶ 143; Ex. 5 82:6-83:18, 87:1-89:23, 131:8-133:6; D.I. 279 ¶¶ 9-19) ROSS calculated its own mix of features from lawyer-drafted questions (not headnotes) and judicial quotes.

D.I. 255, Ex. 1 11:13-17:5, 37:20-45:15; Ex. 12 72:13-74:13, 104:18-108:24, 143:6-11; Ex. 22 at 34-37; Ex. 100) (D.I. 279 ¶¶ 21-24)

Plaintiffs acknowledge that

. (D.I. 276 ¶ 16; D.I. 281, Ex. 61 at 43)

.[6]

. (D.I. 276 ¶¶ 13, 17; D.I. 281, Ex. 59 103:25-105:9)

. (*Id.*, Ex. 43 272:1-273:13; D.I. 234 ¶¶ 102-105)

(D.I. 276 ¶ 14)

e. (*Id.* ¶ 21)

---

[6] Plaintiffs' technical expert noted

(D.I. 281 Ex. 43 256:25-257:23; 274:15-22)

███████████████████████████████████████████. (*Id.* ¶¶ 10-13)[7]

## ARGUMENT

## I.   ROSS'S USE OF THE ASSERTED MATERIAL WAS FAIR

### A.   Factor One:  ROSS's Use Was Highly Transformative, Spurred New Creation And Served Important Public Interests

Under the first factor, purpose and character of the use, the relevant inquiry is whether the copied material "supersedes the objects of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message; it asks, in other words, whether and to what extent the new work is 'transformative.'" *Sony Comput. Entm't, Inc. v. Connectix Corp.*, 203 F.3d 596, 602-08 (9th Cir. 2000) (quoting *Campbell v. Acuff-Rose Music, Inc*., 510 U.S. 569, 579 (1994)). "[T]he more transformative the [secondary] work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use." *Campbell*, 510 U.S. at 569. Here, the purpose and character of ROSS's use supports a finding of fair use.

### 1.   ROSS's Use Was Highly Transformative

#### a.   ROSS Transformed Questions And Answers Into Statistical Measurements Representing Unprotectable Ideas About The Text And Used The Measurements To Create New Software

Plaintiffs' technical expert admitted that ███████████████████████████



██████████████████████████████████████. (D.I. 281 Ex. 36 ¶ 134)████████████████████████████████████████████████████ ████████████████████. (D.I. 279 ¶ 27; D.I. 278 ¶ 6) ROSS processed the text and measured statistical features concerning the relationship or proximity between words, identification of parts of speech, length of phrases, fraction of synonyms, number of words, average number of words,

---

[7] Further scope and detail regarding the works at issue and the nature of ROSS's use are explained in ROSS's Motion for Summary Judgment on Fair Use. (D.I. 272)

██████████████████████████████████████ . ████████████████

████████████████████████████████" (D.I. 279 ¶¶ 11-20, 25-26; D.I. 278 ¶¶ 12-20)

These are unprotected ideas and facts *about* the text. ROSS generated them to study

unprotectable properties of language and to train ROSS's ranking algorithm. This is

paradigmatic "research" that the Copyright Act lists as an exemplary fair use. 17 U.S.C. § 107.

The ultimate purpose was to write entirely original and new code in a search engine application.

This all constitutes a clearly transformative use, weighing in favor of fair use.

Use of copyrighted text to generate precisely these types of features enabling search tools

has repeatedly been found to be transformative. West itself has successfully advanced that position.

First, in a very similar case, Google's copying of large quantities of books "to provide otherwise

unavailable information about the originals" in a search engine was found to be transformative:

> the purpose of Google's copying of the original copyrighted books is to make available
> significant information about those books, permitting a searcher to identify those that
> contain a word or term of interest, as well as those that do not include reference to it. In
> addition, through the ngrams tool, Google allows readers to learn the frequency of usage
> of selected words in the aggregate corpus of published books in different historical
> periods. We have no doubt that the purpose of this copying is the sort of transformative
> purpose described in *Campbell* as strongly favoring satisfaction of the first factor.

*Authors Guild v. Google, Inc.*, 804 F.3d 202, 215-19 (2d Cir. 2015). The statistical measurements

here were even more transformative, as they did not even reproduce the words of the text.

More acutely, West itself successfully argued that its copying of copyrighted legal briefs

into Westlaw, in competition with original authors, was "transformative" because West directly

used that prose "toward the end of creating an interactive legal research tool." *White v. W. Publ'g*

*Corp.*, 29 F. Supp. 3d 396, 399 (S.D.N.Y. 2014).[8] If generation of straightforward word indices

and West's verbatim copying and distribution of creative legal briefs to facilitate a legal research

---

[8] West also argued that this is "fair dealing" under the Canadian law analogue to fair use.
*Waldman v. Thomson Reuters Corp.*, 2012 ONSC 1138, 2012 CarswellOnt 2225 (2012).

tool in Westlaw were transformative, then ROSS's measurement of unprotected statistical "features" for the purpose of writing an entirely new search engine from scratch must be as well.

The transformative use here is very similar to *Sony*, 203 F.3d 596 and *Sega Enters. v. Accolade, Inc.*, 977 F.2d 1510 (9th Cir. 1992). In *Sony* the defendant copied Sony's PlayStation game console code to learn unprotectable higher-order ideas about how the console functioned. This "use of the copyrighted material was an intermediate one, and thus was only 'indirect or derivative.'" *Sony*, 203 F.3d at 607 (quoting *Sega*, 977 F.2d at 1522). Defendant used the ideas it learned to write new code for a "wholly new product."—a competing PlayStation "emulator" called Virtual Game Station—that allowed users to play PlayStation games on their PCs. *Id.* at 602-08. In finding the use transformative, the court emphasized "the expressive nature of the Virtual Game Station software itself." *Id.* at 606. "[N]otwithstanding the similarity of uses and functions between the Sony PlayStation and the Virtual Game Station" and "despite the similarities in function and screen output," it was important that the Virtual Game Station itself did not "contain[] object code that infringes Sony's copyright." *Id.* The court concluded "[w]e are therefore at a loss to see how [plaintiff's] drafting of entirely new object code for its VGS program could not be transformative ...." *Id.*

Similarly, in *Sega*, defendant copied the source code of plaintiff's videogame console and games to understand unprotectable "ideas and functional concepts" used to create competing games. 977 F.2d at 1522-23. Defendant's games did not contain plaintiff's code and defendant "wrote its own procedures based on what it had learned" from plaintiff's code. *Id.* The court found fair use, rejecting as "far too simple" plaintiff's argument that defendant "copied its object code in order to produce a competing product" and emphasizing that defendant's use was only "intermediate." *Id.* The court found "that although [defendant's] ultimate purpose was the release of ... games for sale" that would compete with plaintiff, "its direct purpose in copying

[plaintiff's] code, and thus its use of the copyrighted material, was simply to study the functional requirements ...." *Id.* This was a "legitimate, essentially non-exploitative purpose, and ... the commercial aspect of its use can best be described as of minimal significance." *Id.*[9]

ROSS's situation is precisely the same. Like *Sony* and *Sega*, it is not enough to defeat fair use to say that ROSS created a competing, functionally similar product, given that ROSS only used unprotectable ideas and facts that it needed, as Plaintiffs admit, to create an entirely new work that did not contain any of Plaintiffs' material.[10] Likewise, it is not enough that Plaintiffs and ROSS both internally analyzed the asserted material, derived unprotectable ideas and used those to "train" algorithms. Plaintiffs' attempt to challenge ROSS's transformative use on this basis (D.I. 254 6-8) is unavailing under *Sony* and *Sega*.

*First*, this is because Plaintiffs' copyright does not extend to the statistics—*ideas and facts*—about the asserted content. Any attempt to cover such material would provide patent-like protection and constitute copyright misuse. *Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*, 342 F.3d 191, 206 (3d Cir. 2003) (recognizing misuse where copyright is extended beyond the government-granted right); *Harper & Row, Publrs. v. Nation Enters.*, 471 U.S. 539, 559 (1985) (the law does not "sanction abuse of the copyright owner's monopoly as an instrument to suppress facts."). None of the cases cited by Plaintiffs addressing use of a work "for the same purpose" as a copyright owner go so far as to say that a copyright owner can prevent discourse in facts and ideas in copyrighted material. (*See* D.I. 254 8) Thus, they are inapposite to the facts at

---

[9] William Landes and Judge Posner observed of this: "[t]he only use ... made of the copies was to generate noninfringing works, and the only effect of liability would thus have been to impede [defendant] competing with [plaintiff] in the market for video games, an anticompetitive result not sanctioned by any policy of the copyright statute." (Canter Decl. Ex. 67 (*The Economic Structure of Intellectual Property Law*, Harvard Univ. Press (2003) at p. 100))

[10] D.I. 254 at 9. Plaintiffs' focus on ROSS's competing "product" functionality is a legally irrelevant sleight-of-hand. The work at issue is not the Westlaw functionality, but only a database compilation of "Legal and Practitioner materials." (D.I. 281 Ex. 60 at TR-0026190; D.I. 1-1) Further, copyright cannot protect Westlaw's "system" functionality. 17 U.S.C. § 102(b).

hand. More broadly, no case cited by Plaintiffs involves intermediate copying and use of non-copyrightable elements. Plaintiffs attempt to evade the core issue in this matter.

*Second*, it is undisputed that ROSS ████████████████████████████████████

████████████████ (D.I. 279 ¶¶ 26-31) Plaintiffs incorrectly assert that this is purportedly "irrelevant." (D.I. 254 9) But *Sony* and *Sega* clearly establish that such new creation based on intermediate use of unprotectable features is transformative. For the same reason, the cases cited by Plaintiffs regarding alleged "competitive" uses are inapposite, as they all involve defendants distributing plaintiff's content in the market. (*See* D.I. 254 7) That is not the case here.

*Third*, it is undisputed that ROSS ████████████████████████████████████

████████████████████████████████████████████████████

████████████████ (D.I. 279 ¶¶ 21-24) Plaintiffs argue incorrectly that the ████████████

████████████████████████████████████ (D.I. 254 9) This is obviously incorrect. Like in *Sony* and *Sega*, creating new feature vectors added new dimensions of meaning and significance, *i.e.*, "something new, with a further purpose or different character, altering the first with new expression, meaning, or message." *Campbell*, 510 U.S. at 579. Thus, the cases cited by Plaintiffs regarding alleged lack of "new expression" are inapposite as they do not involve the situation here where new material was generated. (*See* D.I. 254 8-9)

> **b.    LegalEase Made Only Functional, Ephemeral And Intermediate Use Of The Key Number System In Furtherance Of ROSS's Transformative Use**

LegalEase did not copy headnotes, topics, subtopics, key numbers or any overall organization for distribution or license to others. Rather, they simply *used* some of these structural elements of the system by clicking through to reach judicial opinions. It is long-settled that even where a system may include copyrightable expression, copyrights do not extend to *use* of the system. *Baker v. Selden*, 101 U.S. 99 (1879) (while book explaining a bookkeeping system

was entitled to copyright, the system itself was not protectable). "Copyright laws afford protection for a limited time against the publication only and not against the use of a system or plan or idea of which the work is an exposition." *Taylor v. Commissioner*, 51 F.2d 915, 917 (3d Cir. 1931); *see also Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183, 1207-08 (2021) ("We have no reason to believe that the Copyright Act seeks to protect third parties' investment in learning how to operate a created work."); *Bikram's Yoga Coll. of India v. Evolation Yoga, Ltd. Liab. Co.*, 803 F.3d 1032, 1040 (9th Cir. 2015) (carrying out sequence of poses not protected); *RJ Control Consult., Inc. v. Multiject*, LLC, 981 F.3d 446, 454-57 (6th Cir. 2020) (carrying out steps in a drawing to use control system "sounds in patent law rather than copyright").

Further, intermediate, ephemeral reproduction of asserted content in the browser to ultimately generate statistical measurements is transformative. For example, transformative fair use was found where automated crawling of plaintiff's copyrighted website and resultant "temporary" copies was to collect uncopyrightable facts. *Ticketmaster Corp. v. Tickets.Com, Inc.*, 2003 WL 21406289 at *4-5 (C.D. Cal. Mar. 7, 2003). The same is true of LegalEase's intermediate copying of portions of the asserted content into working spreadsheets, used only to keep track of coverage of legal issues. There is a long history of fair use findings where competitors temporarily copied West's digests (*i.e.*, headnotes), topics and citations in the process of creating competing legal publications, to ensure coverage, verify the law, and access raw judicial content. As the Second Circuit put it:

> A poem or a novel or a history or a directory or a dictionary or a scientific treatise is intended to please, interest, instruct, or satisfy the reader, so to speak, in itself; but a digest considered by itself is nothing. Its purpose is as a tool to enable judges to write their opinions, lawyers to write their briefs, and authors to write their text-books. Such persons may cut out parts of the digests to assist them in running down the cases and copy lists of cases from the digests, as many of the defendant's writers have done. Such a use of the digests seems to us, differing in this respect from the court below, to fall directly within the purpose for which they are sold, and to be fair.

*W. Pub. Co. v. Edw. Thompson Co.*, 176 F. 833, 838 (2d Cir. 1910); *W. Publ. Co. v. Edw. Thompson Co.*, 169 F. 833, 865-71 (1909) (Defendant legal publisher's use of West's reporters and digests as means to reference original sources and write legal encyclopedias was not an unfair use because publisher could have obtained identical ideas from original sources with extra effort); *Greenbie v. Hollister Noble*, 151 F. Supp. 45, 67 (S.D.N.Y. 1957) (discussing same).

Similarly, where a defendant seeks only "raw data" in an automated database compilation, such as that asserted here,[11] extraction of unprotectable material cannot constitute infringement even if the defendant had to copy the entire database and associated software, including original, creative categories and fields in order to do so. This is fair use. *Assessment Techs. of WI, LLC v. WIREdata, Inc.*, 350 F.3d 640, 646 (7th Cir. 2003) ("[plaintiff] would lose this copyright case even if the raw data were so entangled with [plaintiff's software] that they could not be extracted without making a copy of the program."). Judge Posner noted this rationale would apply to unprotectable elements of the Westlaw database, such as opinions, "the opinions themselves are in the public domain and so Westlaw cannot prevent its licensees from copying the opinions themselves as distinct from the aspects of the database that are copyrighted." *Id.*; *Phantomalert, Inc. v. Google Inc.*, 2015 WL 8648669 at *9 (N.D. Cal. Dec. 14, 2015) (even if compilation is protectable, copying unprotectable data elements permitted).

## 2. ROSS's Transformative Use Afforded Substantial Public Benefits And Commercial Purpose Does Not Weigh Against Fair Use

Plaintiffs overstate the law regarding commercial use. Relying on authority preceding *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569 (1994), Plaintiffs incorrectly cast commercial use as determinative. It is not. As *Campbell* explained, "giving virtually dispositive weight to the commercial nature" constitutes error. *Id.* at 583-84. "If, indeed, commerciality carried

---

[11] Plaintiffs assert a "Group registration for automated database" with updates. (D.I. 1-1)

presumptive force against a finding of fairness, the presumption would swallow nearly all of the illustrative uses listed in the preamble paragraph of § 107, including … research … since these activities 'are generally conducted for profit in this country.'" *Id.* at 584. "[M]any common fair uses are indisputably commercial." *Google LLC*, 141 S. Ct. at 1204.

Rather, the appropriate inquiry is the *nature* of the commercial use—*i.e.*, the overriding purpose and character. *See Campbell*, 510 U.S. at 584. The "long common-law tradition of fair use adjudication" requires a "sensitive balancing of interests" as Congress has "eschewed a rigid, bright-line approach to fair use." *Id.* at 584-85 (quoting *Sony*, 464 U.S. at 455, n.40; 449, n.31). Accordingly, where, as here, the use is highly transformative "other factors, like commercialism" are of less significance. *Campbell*, 510 U.S. at 579; *Google LLC*, 141 S. Ct. at 1204 (same).

ROSS's ultimate purpose was to facilitate entirely new creative expression in its own code, which contained none of Plaintiffs' content. "[A]s we apply copyright law, and the fair use doctrine in particular, we bear in mind its purpose is to encourage 'creative activity' for the public good." *Video Pipeline, Inc.*, 342 F.3d at 198. ROSS achieved this benefit by broadening and deepening access to the law at lower cost, which is in the public interest. As the Supreme Court recently stated "'Every citizen is presumed to know the law,' and 'it needs no argument to show … that all should have free access' to its contents." *Georgia v. Pub.Resource.Org, Inc.*, 140 S. Ct. 1498, 1507 (2020). There are also very important First Amendment interests furthered by promoting access to the contents of the law, *id.* at 1513, and in "allow[ing] the public to use not only facts and ideas contained in a copyrighted work, but also expression itself in certain circumstances." *Eldred v. Ashcroft*, 537 U.S. 186, 219-20 (2003).

Courts are "free to consider the public benefit resulting from a particular use notwithstanding the fact that the alleged infringer may gain commercially" and such "[p]ublic benefit need not be direct or tangible, but may arise because the challenged use serves a public

interest." *Sega*, 977 F.2d at 1523. Where copying "produces external benefits from which everyone profits … the fair use doctrine acts as a form of subsidy -- albeit at the first author's expense -- to permit the second author to make limited use of the first author's work for the public good." *Sony*, 464 U.S. at 477-78 (Blackmun, J., dissent). ROSS's use results in many public benefits. The first factor weighs in favor of fair use.

### 3. ROSS Acted In Good Faith

███████████████████████████████████████████████████

███████████████████████████████████ (D.I. 281, Ex. 8) Plaintiffs assert "bad faith" solely because ROSS requested and was refused Westlaw access, hired LegalEase to create legal questions and answers, and LegalEase ultimately used Westlaw. The Supreme Court has ruled that such does not weigh against fair use. *Campbell*, 510 U.S. at 585 n.18 ("[i]f the use is otherwise fair, then no permission need be sought or granted. Thus, being denied permission to use a work does not weigh against a finding of fair use."); *Warren Publ'g Co. v. Spurlock*, 645 F. Supp. 2d 402, 422 (E.D. Pa. 2009) ("failed attempt at negotiating a licensing fee" cannot amount to bad faith). This is particularly appropriate here, given that Plaintiffs' asserted Westlaw agreement explicitly *encourages* fair use by acknowledging that notwithstanding West's limited permitted uses "[t]he Copyright Act (17 U.S.C.A. 107) fair use provision may allow *additional* uses." (D.I. 255 Ex. 76 § 1(c) (emphasis added)).

Plaintiffs' own authority recognizes that alleged bad faith "is not dispositive of a fair use defense." *NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 479 (2d Cir. 2004). And the Supreme Court recently questioned whether bad faith is relevant at all. *Google*, 141 S. Ct. at 1204 ("[a]s for bad faith, our decision in *Campbell* expressed some skepticism about whether bad faith has any role in a fair use analysis …. We find this skepticism justifiable, as '[c]opyright is not a privilege reserved for the well-behaved.'"); *Divine Dharma Med. v. Inst. of Lat. Ener. Stud.*, 2021 WL

3721438 at *1 (9th Cir. 2021) ("the Supreme Court has minimized the relevance of bad faith").

**B.  Factor Two:  The Asserted Content Is Highly Constrained And Has Limited Protection, If Any**

Plaintiffs' copyrights are registered as compilations. (D.I. 1-1 *e.g.* at 2 ("Compilations, revisions, additions, etc.")) "West has a thin copyright in its compilations." *Matthew Bender & Co. v. W. Publ'g Co.*, 158 F.3d 693, 707 (2d Cir. 1998). The materials are highly functional, utilitarian and "dictated by external factors" inherent in the subject matter. *Dun & Bradstr. Softw. Servs., Inc. v. Grace Consult., Inc.*, 307 F.3d 197, 214-15 (3d Cir. 2002); *Educ. Test. Servs. v. Katzman*, 793 F.2d 533, 539 (3d Cir. 1986). Plaintiffs have put forward the system as a *de facto* standard for over a century. (D.I. 277 ¶¶ 6, 13, 20) "Copyright on largely functional elements … that [have] become an industry standard gives a copyright holder anti-competitive power" and allowing use furthers fair use policies. *Google*, 141 S. Ct. at 1204.

████████████████████████████████████

████████ D.I. 254 11-12) This conclusion is supported by West's own recent position where it was sued for copyright infringement by lawyers with copyrights in their legal briefs, which West incorporated wholesale into its competing database. West argued and the court found that "the briefs at issue are functional presentations of fact and law, and this cuts toward a finding of fair use." *White*, 29 F. Supp. 3d at 399. Plaintiffs attempt to suggest that only "time and labor" is required to support factor two. (D.I. 254 11) But, mere "sweat of the brow" does not make a creative work. *Feist Publ'ns, Inc. v. Rural Tel. Serv.*, 499 U.S. 340, 351-61 (1991).

Plaintiffs recognize that headnotes are highly constrained by the underlying cases they quote or describe. Their content does not involve creative effort as "there are only a limited number of choices to be made." *Matthew Bender & Co.*, 1997 WL 266972 at *3 (S.D.N.Y. May 19, 1997), *aff'd* 158 F.3d 674 (2d Cir. 1998). In fact, where headnotes are identical or nearly

identical to underlying judicial opinions, as many are, they cannot receive copyright protection. *Wheaton v. Peters*, 33 U.S. 591, 668 (1834); *Georgia*, 140 S. Ct. 1498.[12] And copyright does not extend to "trivial variations" of public domain expression. *See L. Batlin & Son, Inc. v. Snyder*, 536 F.2d 486, 490 (2d Cir. 1976) (trivial changes to statue in public domain not copyrightable).

The organization of topics, subtopics, key numbers and headnotes is, at the highest level, primarily constituted of material well over a century old. (D.I. 277 ¶¶ 23-24) The overarching organization was and is dictated by how lawyers have long thought about the law. Changes are driven not by creativity, but by changes in the language of the law or the law itself. (*Id.* ¶ 26); *Mitel, Inc. v. Iqtel, Inc.*, 124 F.3d 1366, 1375 (10th Cir. 1997) (plaintiffs' values unprotectable as *scenes a faire* because they were based on industry requirements). Further, copyright does not extend to any "system" or "method of operation." 17 U.S.C. § 102(b). And so the relationship between headnotes and cases are not copyrightable. Headnotes are prepared for *all* cases that include a point of law and cover all legal issues in a given case. Where the goal is to cover every issue and there is "no evaluative judgment" Plaintiffs "make[] no 'selection' at all." *Matthew Bender*, 158 F.3d at 687; *Warren Publ'g, Inc. v. Microdos Data Corp.*, 115 F.3d 1509, 1518 (11th Cir. 1997). The relationship between headnotes and corresponding portions of opinions is functional—to locate a place in an opinion. External functional considerations dictate the relationship, not creativity. *See Bikram's Yoga*, 803 F.3d at 1042; *Magic Mktg. v. Mailing Servs.*, 634 F. Supp. 769, 771-72 (W.D. Pa. 1986).

### C. Factor Three: The Amount And Substantiality Of The Alleged Use Is Minimal, And Only That Needed To Undertake The Transformative Use

Factor three considers "the amount and substantiality of the portion used in relation to the

---

[12] To the extent that LegalEase inadvertently sent ROSS ██████████████████████████ ████████████████ (D.I. 281 Ex. 26 at 44; Ex. 58; Ex. 6 174:5-175:11; Ex. 2 135:23-136:23)

copyrighted work as a whole." Where copying is "infringement" and "the final product does not itself contain infringing material," the factor has "very little weight." *Sony*, 203 F.3d at 606.

Plaintiffs identify ████████████ as the starting point for the questions contained in the LegalEase bulk memos. There were ████████0 unique headnotes in Westlaw. (D.I. 281 Ex. 15 at 8) Only considering the headnote content of the Westlaw compilation, the "portion of the work used" ████████████████████████.[13] ████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████

However, because the "work as a whole" is the entirety of the Westlaw database compilation and updates, it is a *much* smaller percentage. *See Google*, 141 S. Ct. at 1205 (comparing copied material to overall lines of code in the registered software platform). The registered work contains 11,205,374,706 data records. (D.I. 281, Ex. 60 at TR-0026190; D.I. 1-1). ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████. *Matthew Bender*, 158 F.3d at 678 ("West conceded (immediately prior to trial) [what] would be permissible under the fair use doctrine, *i.e.*, one to two percent of its published reports of Supreme Court and court of appeals cases."); *see also Google*, 141 S. Ct. at 1204-06 (copying 0.4 percent of work fair use); *New Era Publications Int'l, ApS v. Carol Publ'g Group*, 904 F.2d 152, 158 (2d Cir. 1990).

---

[13] This percentage is much smaller, though, because using Plaintiffs' expert's methodology ████
████████████████████████████████████. (D.I. 280 ¶ 42)

Finally, ROSS copied little, if any, of the materials' creative expression. It is undisputed that questions and answers were randomized. ███████████████████████████████████████ ███████████████████████████████ (D.I. 254 13) ROSS copied only that necessary to cover language of a "diversity of legal topics" to generate unprotectable features, and no more. ████████████████████████████████████████████████████ ████████████████████████████ D.I. 254 13) Rather, it is undisputed that ROSS's use was only that which ROSS "needed" to train its AI, as Plaintiffs concede in their brief. This is fair use. *Google*, 141 S. Ct. at 1204-06; *Matthew Bender & Co.*, 1997 WL 266972 at *1 (permissible to scan "up to 75% of West cases"); *Experian Info. Sols., Inc. v. Nationwide Mktg. Servs., Inc.*, 893 F.3d 1176, 1186-88 (9th Cir. 2018) (copying of 80% of database).

### D. Factor Four: Plaintiffs Admit There Is No Market Supplanted By ROSS's Use And ROSS Has Not Impacted Any Such Market

The fourth factor weighs in favor of ROSS. Plaintiffs' market for the asserted materials remains available for users who want to locate cases using those items. Neither ROSS nor LegalEase offered or distributed any such elements. Plaintiffs cannot change the factor four analysis by claiming there is some imaginary market for their materials. *Solid Oak Sketches, LLC v. 2K Games, Inc.*, 449 F. Supp. 3d 333, 353 (S.D.N.Y. 2020). There is no such market. Indeed, Westlaw's search platform launched in 1975[14] and Plaintiffs had 47 years to try to enter a market to license headnotes for development of AI or other computerized systems. They have failed to do so. *See e.g. Google*, 141 S. Ct. at 1206 (where plaintiff "poorly positioned to succeed" in posited market, factor four weighed in favor of fair use). Thus, ROSS's use does not supplant any actual or potential use by Plaintiffs. ████████████████████████████████████ ██████████████████████████████████████████████ (D.I. 276 ¶ 14)

---

[14] D.I. 255 Ex. 22 ¶ 85.

Where use is "transformative," such use does not supplant or supersede an original work. *Sony*, 203 F.3d at 602-08. For example, in *Sony* the court found that even though Virtual Game Station software would compete with Sony PlayStation consoles and Sony would "lose console sales and profits," this did not weigh against fair use. Because Virtual Game Station involved new creative code and expanded user capabilities, it was "transformative" and thus:

> a legitimate competitor in the market for platforms on which Sony and Sony-licensed games can be played … For this reason, some economic loss by Sony as a result of this competition does not compel a finding of no fair use. Sony understandably seeks control over the market for devices that play games Sony produces or licenses. The copyright law, however, does not confer such a monopoly.

*Id.* Similarly, ROSS's transformative use created an entirely new and innovative platform, which did not supplant the market for the original material that was marketed for a different purpose.

Finally, that Plaintiffs made internal use of *ideas* in the asserted material during development of their own search engine is an inappropriate lens through which to view the market for the alleged "expression." Were it, it would result in a monopoly that extends beyond the copyright and impedes creation of new works. The Supreme Court recently emphasized that using copyrighted material as "a lock limiting the future creativity of new programs … would interfere with, not further, copyright's basic creativity objectives." *Google*, 141 S. Ct. at 1207-08 (citing *Sega*, 977 F. 2d at 1523-1524 ("An attempt to monopolize the market by making it impossible for others to compete runs counter to the statutory purpose of promoting creative expression") and *Lexmark Int'l*, 387 F. 3d at 544 (user that copied computer program to foster functionality was not exploiting the program's "commercial value *as a copyrighted work*" (emphasis in original)). Copyright "supplies the economic incentive to [both] create and disseminate ideas." *Harper & Row*, 471 U. S. at 558. Thus, "reimplementation" of copyrighted material "allows creative new computer code to more easily enter the market." *Google*, 141 S. Ct. at 1207-08. The same is true of ROSS's use here. The fourth factor weighs in favor of ROSS.

19

## II.      ROSS'S OTHER DEFENSES ARE MERITORIOUS

### A.      Plaintiffs' Claims Are Barred By Consent, Waiver, Estoppel, License, Acquiescence And Laches

The Westlaw agreement contains a provision *encouraging* "fair use" activities beyond what is expressly permitted in the agreement, and Plaintiffs were well aware of ROSS's activities years before this case began. Given Plaintiffs' awareness, affirmatively telling ROSS to engage in fair uses of Westlaw content and that this does not violate the agreement is paradigmatic "voluntary, intentional relinquishment of a known right" and such "[a]n express waiver is absolute." *Novartis Pharm. Corp. v. Eon Labs Mfg.*, 206 F.R.D. 396, 398 (D. Del. 2002). Plaintiffs consented to, waived, licensed, acquiesced to and are estopped from asserting copyright or tortious interference with contract. This knowledge and affirmative assertion to ROSS also explains why Plaintiffs engaged in "undue delay" in suing for tortious interference years after awareness of ROSS's activities. It is inequitable to allow Plaintiffs to sit on their rights for years, while representing that fair use was encouraged under its contract.

### B.      Plaintiffs' Tortious Interference Claim Is Barred By Tort Of Another



█████ *See supra* n.2) ████████████████████ ROSS was not a "substantial factor" in causing any alleged harm. The tort of another doctrine provides a defense.

### C.      Plaintiffs Do Not Own The Asserted Material

All of the headnote material asserted in this case constitutes identical or nearly identical language to the public law. Plaintiffs cannot own this as a matter of law. And having put forward its key number system as a public standard for a century, it has relinquished any ownership interest in it. Thus, lack of ownership to the asserted material provides ROSS a defense.

### CONCLUSION

This Court should deny Plaintiffs' motion for partial summary judgment.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

By:  */s/ David E. Moore*

Gabriel M. Ramsey
Warrington Parker
Joachim B. Steinberg
Jacob Canter
Christopher J. Banks
CROWELL & MORING LLP
3 Embarcadero Center, 26th Floor
San Francisco, CA 94111
Tel:  (415) 986-2800

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Andrew L. Brown (#6766)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
Tel:  (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
abrown@potteranderson.com

Mark A. Klapow
Crinesha B. Berry
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC  20004
Tel:  (202) 624-2500

*Attorneys for Defendant/Counterclaimant
ROSS Intelligence, Inc.*

Dated:  January 30, 2023
10570929 / 20516.00001

Public Version Dated: February 6, 2023