# The Economic Structure of Intellectual Property Law

William M. Landes

Richard A. Posner

The Belknap Press of
Harvard University Press

Cambridge, Massachusetts, and London, England | 2003

(though competition to be the owner of the standard is likely to reduce the expected return to the normal, competitive level); and the narrowly expressive aspects of the display are protected, which limits the amount of free riding.

A variant of the standards issue is presented by intermediate copying, illustrated by *Sega Enterprises Ltd. v. Accolade, Inc.*[18] Sega manufactured both copyrighted video games and a console or monitor on which the games could be played. Accolade wanted to manufacture games that would also run on Sega's consoles. To do this it needed access to Sega's copyrighted computer source code to discover the interfaces by which to "hook" a program to the operating code in a Sega console. It gained that access by reverse engineering Sega's video games. The information it obtained in this fashion enabled it to manufacture video games compatible with Sega's consoles. Its games did not infringe any copyright owned by Sega, and the information that Accolade obtained about the interfaces was not information that Sega could have copyrighted, because it was an idea.[19] But to obtain this information Accolade had copied the entire source code, which was copyrighted. The only use it made of the copies was to generate noninfringing works, and the only effect of liability would thus have been to impede Accolade's competing with Sega in the market for video games, an anticompetitive result not sanctioned by any policy of the copyright statute. The court sensibly held that the copying was a fair use and therefore noninfringing.

Another application of *Baker v. Selden* concerns the copying of architectural works. Architects' plans, blueprints, etc., can be copyrighted, and if they are then copied without authorization the copier is an infringer, though entitled by the "intermediate copying" exception just discussed to use the noncopyrightable ideas contained in the plans.[20] But what if someone copies not the plans or some ornamental sculptural work attached to the building's façade but the building itself (its shape, proportions, cladding, and so on), which contains expressive as well as design elements, constructed from the plans? Is he an infringer? In cases preceding the statute discussed next, the law's answer sensibly was "no."[21] A building is functional as well as formal or decorative. If the architect could prevent the copying of the design elements visible in the building, he would have greater property-right protection than

---

18. 977 F.2d 1510 (9th Cir. 1992).
19. A "method of operation" within the meaning of section 102(b). See note 10 above.
20. Unless they are covered by a design patent or the copier cannot get hold of them—but in the *Demetriades* case, cited in the next note, the plans had been filed with a municipal agency and were open to public inspection.
21. See, for example, Imperial Homes Corp. v. Lamont, 458 F.2d 895, 898 (5th Cir. 1972); Demetriades v. Kaufmann, 680 F. Supp. 658, 666; 698 F. Supp. 521, 527 n. 6 (S.D.N.Y. 1988).