# EXHIBIT 81

## MASTER SERVICES AGREEMENT

This Master Services Agreement (the "<u>Agreement</u>") is effective this 15 day of October, 2015 (the "<u>Effective Date</u>") between ROSS Intelligence, Inc., a Delaware corporation (hereinafter referred to as the "<u>Company</u>") and LegalEase Solutions LLC (hereinafter referred to as the "<u>Contractor</u>").

**IN CONSIDERATION** of the mutual covenants contained herein, the parties agree as follows:

1. <u>Definitions</u>

    In this Agreement, the following words and expressions shall have the following meanings:



DEPOSITION EXHIBIT
12-18-18 SVM

EXHIBIT
17

LegalEase-0008711

TR-0038909

- 2 -

(a) "Business Day" shall mean any day excluding Saturdays, Sundays, statutory holidays and civic holidays in Palo Alto, California.

(b) "Deliverables" has the meaning given thereto in Section 2(b) hereof and includes all Developments.

(c) "Developments" shall have the meaning set out in Section 9(b) hereof.

(d) "Intellectual Property Rights" shall mean all intellectual property rights of whatever nature including inventions, patents (and applications for the same), copyright, the benefit of any waiver of Moral Rights, design rights, registered designs (and applications for the same), trade and service marks (registered and unregistered and applications for the same), know-how, trade secrets and duties or obligations of confidence, mask work rights, topography rights and other rights in semiconductor chips, rights in or relating to databases, trade names, domain names and business names and all other similar or analogous rights, whether registered or unregistered, anywhere in the world.

(e) "Moral Rights" means any and all moral rights arising under legislation or at common or civil law that such individual, as author, has with respect to any copyrighted works prepared by such individual hereunder including, without limitation, the right to attribution of authorship, and the right to restrain any distortion, mutilation or other modification of such work and the right to prohibit any use of any such work in association with a product, service, cause or institution that might be prejudiced to such individual's honour or reputation.

(f) "Services" means the services to be provided to Company by Contractor hereunder and which are described in one or more Statements of Work.

(g) "Statement of Work" means a statement of work in the form attached hereto as Schedule A. Each Statement of Work shall set out the Services, including if applicable, the deliverables, delivery schedule, the fee to be paid to Contractor, the payment terms for such fee and any other terms, conditions or information relating to the Services.

2. **Engagement and Services**

(a) Company hereby engages Contractor to provide the Services as described in one or more Statement(s) of Work and Contractor hereby accepts such engagement.

(b) Company and Contractor shall execute a Statement of Work for each project or distinct provision of services (each a "Project"). Each Statement of Work shall be subject to the terms and conditions of this Agreement and shall become an integral part hereof upon its execution by Company and Contractor. Each Statement of Work shall describe the Services required, the specifications for the Services, any deliverables to be developed ("Deliverables"), and such additional terms and conditions and other information as shall be required in order to specifically define the Services to be performed. In the event of a conflict between this Agreement and the special terms and conditions contained in a Statement of Work, the special terms and conditions in such Statement of Work shall govern. Each Statement of Work shall be prepared by Company and shall reference this Agreement.

LegalEase-0008712

TR-0038910

(c) Changes to a Statement of Work resulting in additional Services shall not be initiated, and neither party shall incur any obligations with respect thereto, until an amendment to a Statement of Work is signed by both the Company and the Contractor authorizing a change.

(d) Contractor shall only assign personnel to perform Services and/or create Deliverables for Company who are competent and qualified to do so and who have signed written agreements with Contractor that contain terms sufficient for Contractor to comply with all provisions of this Agreement. Following Company's reasonable written request, Contractor will replace any of its personnel providing such Services and/or creating Deliverables with a substitute acceptable to Company.

3. Term

(a) This Agreement shall commence on the Effective Date and, subject to the termination hereof in accordance with Section 14 hereof, shall continue in full force and effect for a term of one (1) year. This Agreement shall renew automatically for up to two (2) successive twelve (12) month periods (each a "Renewal Term") unless terminated by notice from either party at least thirty (30) days prior to the next renewal date or unless terminated in accordance with the terms hereof. If at the time of expiration or termination of this Agreement there exists a Statement of Work that is not simultaneously being terminated and under which one or both of the parties have unfulfilled obligations, this Agreement shall continue to govern such Statement of Work until such Statement of Work is terminated or until full performance of the parties' respective obligations under such Statement of Work.

(b) The term of each Statement of Work shall commence on the date of the Statement of Work and shall end at such time as is stated in the Statement of Work. If no expiration date is stated in a Statement of Work, such Statement of Work shall continue in effect until terminated or until all of the parties' respective obligations thereunder have been fulfilled.

4. Payment of Fees and Expenses

(a) In consideration of the Services to be provided under this Agreement, Company agrees to pay Contractor a fee (the "Fee") as provided in the Statement of Work.

(b) The parties further acknowledge that from time to time some overtime may be required in order to meet specific project milestones in a timely manner. No overtime shall be incurred, accounted for, or invoiced by Contractor, without the prior written approval of Company. Overtime will be charged at the rates shown in the Statement of Work.

(c) Except as set forth above, Contractor has no right to any royalty or other compensation related to this Agreement, Contractor's performance hereunder, or the delivery of any Developments or Deliverables to Company hereunder, unless specifically agreed in writing by the parties.

5. Taxes

LegalEase-0008713

TR-0038911

- 4 -

(a) The Fees shall be inclusive of any and all taxes in any jurisdiction, including sales, use, value added, goods and services, withholding and income taxes ("Taxes"), and Contractor shall be responsible for remitting all Taxes to the applicable authorities. Contractor shall provide Company with notice in writing of all relevant tax numbers that Company may need for filing purposes.

(b) Contractor hereby covenants and agrees to indemnify Company and save it harmless from and against all liabilities and claims whatsoever against Company, including fines, penalties and interest thereon, for or by reason of or in any way arising out of Contractor's failure to deduct, withhold, remit or contribute any amount in respect of any Taxes pursuant to this Agreement.

6. Records

Contractor agrees to keep such records in respect of the provision of the Services under this Agreement as are customary in relation to the type of services provided hereunder and any other such records as the Company may request from time to time. Contractor agrees to make such records available at any time for inspection by Company or its representatives. Contractor agrees not to disclose such records to any third parties without the prior written consent of Company.

7. Relationship of the Parties

(a) This Agreement does not constitute and shall not be construed as constituting a partnership, joint venture or principal/agency relationship between the parties. Contractor is and will at all times remain an independent contractor and is not and shall not represent itself to be an agent of Company. Neither party by virtue of this Agreement shall have the right, power or authority to act or to create any obligations, express or implied, on behalf of the other party.

(b) Contractor shall in no sense be considered an employee of Company nor shall Contractor be entitled or eligible to participate in any benefits or privileges made available by Company to its employees nor deemed to be an employee of Company for purposes of any contribution due on behalf of itself or its employees or representatives.

(c) Contractor shall supply, at Contractor's own expense, any equipment not provided by Company that is necessary to perform the Services.

8. Confidential Information

(a) "Confidential Information" means all information and data, including, without limitation, all business, planning, performance, financial, product, trade secret, technical, sales, marketing, contractual, employee, supplier and customer information and data, disclosed orally, in writing or electronically to Contractor by Company hereunder. Confidential Information shall not include information which (i) is generally known or in the public domain at the time of disclosure; (ii) was in the Contractor's possession before receipt from the Company; (iii) though originally Confidential Information, subsequently becomes a matter of public knowledge through no fault of the Contractor, as of the date of its becoming part of the public knowledge; or (iv) is rightfully received by the Contractor without obligations of confidence from a third party who is free to disclose the information.

LegalEase-0008714

TR-0038912

(b)     Contractor shall maintain the confidentiality of all Confidential Information disclosed to it and shall take all necessary precautions against unauthorized disclosure of the Confidential Information. Contractor shall not directly or indirectly disclose, allow access to, transmit or transfer any Confidential Information to any third party without the prior written consent of Company except that Contractor may disclose Confidential Information to those employees and contractors who (i) have a need to know the information for the purposes of this Agreement; (ii) have been informed of Contractor's obligations hereunder; and, (iii) have entered into a confidentiality agreement with Contractor that contains confidentiality and restricted use obligations that are consistent with the terms and conditions of this Agreement and which are reasonably calculated to protect the confidential or proprietary nature of the Confidential Information and prohibit its unauthorized use and disclosure. Contractor shall not use or copy any Confidential Information except as may be reasonably required to perform the Services. All copies, records, notes or reproductions, in whole or in part, shall contain notices identifying them as containing the Confidential Information of the Company and shall be protected from unauthorized disclosure and access. Contractor agrees to segregate all Confidential Information of the Company from the confidential materials of others in order to prevent commingling.

(c)     Contractor acknowledges that Company has received and in the future will receive from third parties their confidential or proprietary information subject to a duty on the part of Company to maintain the confidentiality of such information and to use it only for certain limited purposes. Contractor shall hold all such confidential or proprietary information in the strictest confidence and shall not disclose it to any person, firm or corporation or use it except as necessary in providing the Services hereunder in a manner consistent with the Company's agreement with such third party.

(d)     Upon the request of Company, and in any event upon the termination or expiration of this Agreement, Contractor shall immediately return to Company all materials, including all copies in whatever form, containing any Confidential Information which are in Contractor's possession or under its control.

(e)     Contractor acknowledges and agrees that monetary damages may not be an adequate remedy to compensate Company for any breach of Contractor's obligations hereunder in respect of Confidential Information. Accordingly Contractor agrees that, in addition to any and all other remedies available to Company under this Agreement or at law or in equity, Company shall be entitled to seek injunctive relief against the breach, or threatened breach of this Agreement, and specific performance of its obligations hereunder, without being required to post a bond. The injunctive relief contemplated hereunder is in addition to any other legal or equitable remedies available.

(f)     Contractor represents and warrants to Company that (i) its performance during the period of engagement hereunder shall not breach any agreement or other obligation to keep confidential the proprietary information of any other third party, and (ii) it will not disclose to Company, and shall not use in the performance of the Services, any trade secrets, confidential information and other proprietary information of any prior client of Contractor or any other third party.

9.     **Proprietary Rights**

(a)   Contractor agrees that all right, title and interest, including, without limitation, all Intellectual Property Rights, in and to any content, materials, data, or information, including all computer programs (in source code or object code) and documentation related thereto, which have been provided by Company to Contractor in connection with the performance of the Services are owned and shall continue to be owned by Company and/or its licensors. Notwithstanding the foregoing, for the term of the applicable Project, Company grants Contractor a royalty-free, personal, non-transferable, non-exclusive license to use and reproduce such materials for the sole purpose of performing the Services. Should Company permit the removal of such materials from its premises, Company shall have unrestricted access to all such materials, data and information. Contractor shall return any or all such materials, data and information to Company immediately upon the request of Company.

(b)   Contractor agrees further that all right, title and interest, including all Intellectual Property Rights, in and to any methods, processes, procedures, systems, inventions, devices, discoveries, concepts, know-how, data, databases, technology, products, software (in executable and source code), templates, documentation, specifications, compilations, designs, reports, trade-marks, and any enhancements, modifications, or additions to the foregoing or to any products owned, marketed or used by Company, which have been created or developed by or for Contractor in connection with the performance of any of the Services hereunder (the "Developments") shall be considered "works made for hire", and shall be owned exclusively by Company. To the extent that Contractor has any right, title or interest, including Intellectual Property Rights, in the Developments, Contractor hereby transfers, conveys and irrevocably assigns in perpetuity all such right, title and interest worldwide to Company. Contractor shall promptly make full written disclosure to Company of any and all Developments.

(c)   Contractor shall ensure that any employee or any other person who is to contribute to the production of the Developments, shall in such form as is satisfactory to the Company, expressly and irrevocably, in writing, (i) assign all right, title and interest, including Intellectual Property Rights in the Developments to Contractor and waive in favour of Contractor such person's Moral Rights. Contractor further agrees to do and execute or cause to be made, done or executed all such further and other things, acts, deeds, documents, applications, specifications, oaths, assignments and assurances as may be necessary or reasonably required to give full effect to the transfer and assignment set out in Section 9(b) and to evidence Company's right, title and interest in the Developments.

(d)   Contractor hereby agrees to be responsible for, and indemnifies and holds Company (including its directors, officers, employees and agents) harmless from and against, any and all claims, demands, actions, judgments and costs, including reasonable arbitral or other legal fees and costs, arising from any claim for compensation or any other obligation or liability of any nature, including pursuant to any law, made by or on behalf of any person having any right or interest as author, inventor or other creator of or contributor to the Developments.

10.   **Warranties**

(a)   Contractor represents and warrants that (i) all Services provided hereunder will be performed in a diligent and workmanlike manner consistent with standards generally observed in the industry for the same or similar services; and (ii) all Deliverables and Developments (if any) will be free of defects in materials and workmanship.

- 7 -

(b) Contractor represents and warrants that:

(i) All Deliverables and any Developments are free and clear of any liens, security interests or other encumbrances;

(ii) All Deliverables and any Developments are free and clear of any plagiarism or appropriation;

(iii) All Deliverables and any Developments are original works of authorship of the authors, and do not infringe the Intellectual Property Rights of any third party;

(iv) Contractor has obtained and possesses the written waiver of any and all Moral Rights which may be held by all creators of the Developments;

(v) Contractor has the authority to enter into this Agreement and has obtained all rights and waivers necessary to grant the rights, titles and interests granted to Company hereunder; and

(vi) any Developments delivered to Company will not contain any routines or devices that could interfere with their use, including without limitation, time locks, keys or time bombs, or interfere with, delete or corrupt data (commonly known as "viruses").

11. Indemnities

(a) Contractor shall indemnify and hold Company and its partners, directors, officers, employees, agents and contractors harmless from and against all claims, actions, liabilities, damages, losses, awards, judgments, settlements, proceedings, demands and expenses (including reasonable legal fees) in respect of personal injury, including death, or loss of, damage to, tangible property or loss of data related to, arising out of or in connection with Contractor's and its contractors performance or non-performance under this Agreement, and will pay all resulting settlements and/or costs, claims, damages or charges whatsoever.

(b) Contractor shall indemnify and hold Company and its partners, directors, officers, employees, agents and contractors harmless from and against all liabilities, damages, losses, awards, judgments, settlements, proceedings, demands and expenses (including reasonable legal fees) related to, arising out of or in connection with any claim or action that Company's use of any Development infringes any Intellectual Property Right of any third party and will pay all resulting settlements and/or costs, claims, damages or charges whatsoever. In the event that the Developments, or any portion thereof, is held to infringe upon another's rights, and the use thereof is enjoined, Contractor shall, at its election and expense, either:

(i) procure for Company the right to use the infringing element of the Development;

(ii) procure the right to an element which performs the same function without any material loss of functionality; or

    (iii)    replace or modify the element of the Development so that the infringing portion is no longer infringing and still performs the same function without any material loss of functionality.

Notwithstanding the foregoing, Contractor shall have no liability for any claim of infringement to the extent that it is based on Materials provided by Company and that are incorporated into the Developments at the request of Company.

### 12. Limitation of Liability

EXCEPT FOR A BREACH OF SECTIONS 8, 9, or 10 HEREOF BY CONTRACTOR, IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER PARTY FOR SPECIAL, INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES, INCLUDING LOSS OF PROFITS OR REVENUE, HOWSOEVER CAUSED, EVEN IF SUCH DAMAGES ARE FORESEEABLE OR THE PARTY IN DEFAULT HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

### 13. Insurance

During the term of this Agreement, Contractor will carry and maintain adequate comprehensive general liability insurance, worker's compensation and employer's liability insurance covering Contractor's employees and sub-contractors. All such insurance policies will stipulate that they will operate as primary insurance and that no other insurance obtained by Company will be called upon to contribute to cover a loss. Contractor will immediately notify Company of any change or termination of insurance coverage.

### 14. Termination

(a)    This Agreement and/or any Project may be terminated by Company, without further liability, in each of the following circumstances:

    (i)    for any reason and at any time, upon ten (10) Business Days prior written notice to Contractor;

    (ii)    immediately, if Contractor ceases to conduct business in the normal course, becomes insolvent or bankrupt or makes an assignment for the benefit of Contractor's creditors, or if a receiver is appointed in respect of Contractor's property, or if Contractor is otherwise unable to carry on business or provide the Services; and

    (iii)    immediately if Contractor is in breach of the confidentiality obligations hereunder.

(b)    This Agreement may be terminated by Contractor in the event that Company is in breach of its obligation to pay the Fee to Contractor and has not cured such breach within ten (10) Business Days of receipt of written notice of such breach from Contractor.

(c) Upon the effective date of termination or expiration of this Agreement, or a particular Project, Contractor shall discontinue provision of the Services and shall invoice Company for all amounts due. Contractor shall promptly return all Confidential Information and other materials provided to Contractor by Company and shall ensure that all copies of all Developments have been delivered to Company.

15. **No Recruitment or Solicitation**

During the Term of this Agreement, and for a period of one (1) year thereafter, Contractor shall not, without the prior written consent of Company, hire, retain or engage, or make an offer in respect of same to, any employee or contractor of Company.

16. **Security**

Contractor agrees that it and any person performing the Services on Contractor's behalf will at all times comply with all security regulations in effect from time to time while on Company's premises.

17. **General**

(a) This Agreement and Contractor' obligations hereunder shall not be assigned by Contractor without the prior written consent of Company, which consent may be withheld for any reason.

(b) No waiver by Company of any rights arising from the breach of this Agreement shall be construed as a continuing waiver, nor shall failure to assert a breach be deemed to waive that breach or any further breach. No waiver of any of the provisions or a breach of this Agreement shall constitute a waiver of any other provision or other breach of this Agreement. No waiver shall be binding unless executed in writing.

(c) The provisions of Sections 5, 6, 8, 9, 10, 11, 12, 15, and 17 hereof shall survive the termination or expiration of this Agreement.

(d) All notices required hereunder will be made in writing to the addresses set out below:

To the Company, addressed to it at:

    ROSS Intelligence, Inc.
    c/o NextLaw Labs, 1530 Page Mill Road #200
    Palo Alto, CA 94304
    Attention: CEO
    Fax:
    Email: team@rossintelligence.com

To the Contractor, address to it at:

    Attention:
    Fax:
    Email:

Any notice or communication under the terms of this Agreement must be: (a) sent by registered mail, return receipt requested, postage prepaid, (b) given in person, (c) sent by fax, with fax confirmation received, or (d) sent by email, with email delivery confirmation requested. Any notice or other communication shall be deemed to have been received: (a) on the date it was remitted if delivered in person, (b) five (5) Business Days after being sent if sent by registered mail, (c) at 9:00 a.m. at the offices of the addressee on the next Business Day if sent by fax, or (d) upon receipt of delivery confirmation if sent by email. Either party may change its contact information for notice by giving notice to the other party as provided in this section.

LegalEase-0008720

TR-0038918

- 11 -

(e)   Contractor and all persons furnished by Contractor shall comply at their own expense with all applicable federal, provincial, local and foreign laws, ordinances, regulations and codes, including the identification and procurement of required permits, certificates, licenses, insurance, approvals and inspections in performance under this Agreement.

(f)   Each of the parties hereto agrees to do and execute or cause to be made, done or executed all such further and other things, acts, deeds, documents, assignments and assurances as may be necessary or reasonably required to carry out the intent and purpose of this Agreement fully and effectually.

(g)   This Agreement shall be construed and interpreted in accordance with the laws of the State of California, excluding its conflicts of laws principles.

(h)   The parties hereby agree that the United Nations Convention on Contracts for the International Sale of Goods and any local implementing legislation shall not apply to this Agreement.

(i)   EACH OF THE PARTIES HERETO IRREVOCABLY WAIVES ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

(j)   In any adversarial proceedings between the parties arising out of this agreement, the prevailing party will be entitled to recover from the other party, in addition to any other relief awarded, all expenses that the prevailing party incurs in those proceedings, including attorneys' fees and expenses.

(k)   This Agreement together with each Statement of Work entered into between Company and Contractor represent the full and complete understanding between the parties hereto with respect to the subject matter hereof and supersedes all prior or contemporaneous representations and understandings, whether oral or written. Contractor acknowledges that the Contractor has had the opportunity to obtain independent legal advice with respect to the terms and conditions hereof.

(l)   In the event that any provision or part thereof is determined by a court of competent jurisdiction to be unenforceable, such provision, or part thereof, shall be deemed to be severed from this Agreement and the remaining provisions of this Agreement shall continue in full force and effect and shall be binding upon the parties hereto as though such severed provision had not formed part of this agreement.

(m)   The obligations of Contractor under this Agreement shall be binding upon and shall enure to the benefit of the parties hereto and their respective successors and permitted assigns.

(n)   This Agreement may be executed by facsimile and in counterparts, which taken together shall form one legal instrument.

IN WITNESS WHEREOF the parties hereto have executed this Agreement on the date first written above.

ROSS INTELLIGENCE, INC.

By:   **ON NEXT PAGE**

LegalEase-0008721

TR-0038919

- 12 -

Name: Andrew Arruda
Title: Chief Executive Officer

By:

Name: Tariq Hafeez
Title: President

LegalEase-0008722

TR-0038920