IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION, | )<br>)<br>) |
| Plaintiffs and Counterdefendants, | )<br>)<br>) C.A. No. 20-613 (SB) |
| v. | )<br>) REDACTED - PUBLIC VERSION<br>) |
| ROSS INTELLIGENCE INC., | )<br>) |
| Defendant and Counterclaimant. | )<br>)<br>) |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT (NO. 3) ON FAIR USE AND OTHER DEFENSES**

OF COUNSEL:

Dale M. Cendali
Joshua L. Simmons
Eric A. Loverro
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Miranda D. Means
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
(617) 385-7500

Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com

*Attorneys for Plaintiffs and Counterdefendants Thomson Reuters Enterprise Center GmbH and West Publishing Corporation*

Original filing date: February 13, 2023
Redacted filing date: February 23, 2023

## TABLE OF CONTENTS

I. ROSS HAS FAILED TO MAKE A SUFFICIENT SHOWING OF FAIR USE ................1

    A. Factor One: ROSS's Commercial Purpose to Replace Westlaw .............................2

    B. Factor Two: Westlaw is Creative..............................................................................7

    C. Factor Three: ROSS's Copying Was Substantial .....................................................8

    D. Factor Four: ROSS Harmed the Market for Westlaw Content ................................8

II. ROSS'S OTHER DEFENSES FAIL ..................................................................................10

III. CONCLUSION....................................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

Page(s)

*Am. Geophysical Union v. Texaco, Inc.*,
  60 F.3d 913 (2d. Cir. 1994)...................................................................................................6, 8

*Assessment Techs. of WI, LLC v. WIREdata, Inc.*,
  350 F.3d 640 (7th Cir. 2003) ......................................................................................................6

*Author's Guild v. Google, Inc.*
  804 F.3d 202 (2d Cir. 2015).......................................................................................................6

*Campbell v. Acuff-Rose Music, Inc.*,
  510 U.S. 569 (1994)................................................................................................................2, 3

*Castle Rock Ent., Inc. v. Carol Pub. Grp., Inc.*,
  150 F.3d 132 (2d Cir. 1998).......................................................................................................9

*Divine Dharma Med.Int'l Inc. v. Inst. of Latent Energy Stud.*,
  No. 19 Civ. 55264, 2021 WL 3721438 (9th Cir. 2021)..............................................................2

*Dr. Seuss Enters., L.P. v. ComicMix LLC*,
  983 F.3d 443 (9th Cir. 2020) .....................................................................................................3

*Eldred v. Ashcroft*,
  537 U.S. 186 (2003)....................................................................................................................4

*Fox News Network, LLC v. TVEyes, Inc.*,
  883 F.3d 169 (9th Cir. 2018) .....................................................................................................3

*Georgia v. Public.Resource.org, Inc.*,
  140 S. Ct. 1498 (2020)............................................................................................................3, 8

*Google v. Oracle*,
  141 S.Ct. 1183 (2021).................................................................................................................2

*Greenbie v. Hollister Noble*,
  151 F. Supp. 45 (S.D.N.Y. 1957) ...............................................................................................6

*Harper & Row, Publ'rs, Inc. v. Nation Enters.*,
  471 U.S. 539 (1985)..........................................................................................................2, 8, 9

*Kaucher v. Cnty. of Bucks*,
  455 F.3d 418 (3d Cir. 2006)....................................................................................................1, 2

*L.A. News Serv. v. KCAL-TV Channel 9*,
  108 F.3d 1119 (9th Cir. 1997) ...................................................................................................3

*MAI Sys. Corp. v. Peak Comput., Inc.*,
  991 F.2d 511 (9th Cir. 1993) ......................................................................................................7

*Matthew Bender & Co. v. West Publ'g Co.*,
  158 F.3d 693 (2d Cir. 1998)........................................................................................................7

*Monge v. Maya Mags., Inc.*,
  688 F.3d 1164 (9th Cir. 2012) ....................................................................................................9

*Murphy v. Millennium Radio Grp. LLC*,
  650 F.3d 295 (3d Cir. 2011)................................................................................................3, 5, 6

*NXIVM Corp. v. Ross Inst.*,
  364 F.3d 471 (2d Cir. 2004)........................................................................................................2

*Phantomalert, Inc. v. Google Inc.*,
  No. 15-3986, 2015 WL 8648669 (N.D. Cal. Dec. 14, 2015)......................................................6

*Sega Enters. Ltd. v. Accolade, Inc.*,
  977 F.2d 1510 (9th Cir. 1992) .............................................................................................1, 4, 6

*Sony Comput. Ent., Inc. v. Connectix Corp.*,
  203 F.3d 596 (9th Cir. 2000) ..............................................................................................1, 4, 6, 9

*Ticketmaster L.L.C. v. RMG Techs., Inc.*,
  507 F. Supp. 2d 1096 (C.D. Cal. 2007) ......................................................................................7

*Video Pipeline, Inc. v. Buena Vista Home Ent., Inc.*,
  342 F.3d 191 (3d Cir. 2003).....................................................................................................1, 5

*Warren Publ'g Co. v. Spurlock*,
  645 F. Supp. 2d 402 (E.D. Pa. 2009) ......................................................................................2, 3

*West Publ'g Co. v. Edward Thompson Co.*,
  169 F. 833 (E.D.N.Y. 1909)........................................................................................................6

*West Publ'g Co. v. Edward Thomson Co.*,
  176 F. 833 (2d Cir. 1910)............................................................................................................6

*West Publ'g Co. v. Mead Data Cent., Inc.*,
  799 F.2d 1219 (8th Cir. 1986) ....................................................................................................8

*Wheaton v. Peters*,
  33 U.S. 591 (1834)......................................................................................................................8

*White v. West Publ'g Corp.*,
    29 F. Supp. 3d 396 (S.D.N.Y. 2014)..................................................................................5, 6

**Statutes**

17 U.S.C. § 107(4) ............................................................................................................8

A finding that ROSS's copying of the Westlaw Content is fair use would allow free exploitation of the expression of others to train AI even in the most egregious of circumstances—where the copying was substantial, illicit, highly commercial, directly competitive, and harmful to the market and public. That is not the law of the Third Circuit. Tellingly, ROSS struggles to make this case seem like *Sony* and *Sega* when they are not remotely analogous. There, the defendants copied only as necessary to learn about admittedly functional interface requirements in the software. Here, ROSS copied the creative decisions of West's attorney-editors to teach its algorithm how to make similar decisions and replace West's own platform trained on the ***same content***. While there are different ways to synthesize the law, ROSS chose to copy ***Plaintiffs'*** creative choices so it could replicate them. That is not fair use, and as ROSS cannot carry its burden on this defense, Plaintiffs are entitled to summary judgment. As to its First Amendment and First Sale Doctrine defenses, summary judgment is proper because ROSS's opposition does not address them, tacitly admitting it cannot prove them. Summary judgment should also be granted on ROSS's other defenses, as ROSS does not point to facts in the record supporting them, and no reasonable jury could find them applicable.

**I.   ROSS HAS FAILED TO MAKE A SUFFICIENT SHOWING OF FAIR USE**

ROSS completely ignores its burden to establish the affirmative defense of fair use. *Video Pipeline, Inc. v. Buena Vista Home Ent., Inc.*, 342 F.3d 191, 197 (3d Cir. 2003). Plaintiffs are entitled to summary judgment because ROSS's "evidence is insufficient to carry that burden." *See Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006).

Before addressing the fair use factors, it bears emphasis that there is no support for ROSS's claim that ███████████████████████████████████████████████ ███████████████████████████████████. All of the well-documented evidence is to the contrary. ***First***, ROSS indisputably ███████████████████

1

████████████████████████████████████████████████████████████████ D.I. 317, ("Pls.'

Opp.") 4.  **Second**, ROSS contracted ██████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

██. *Id.* 4, 9.  **Third**, ROSS's own executive admitted ███████████████████

█████████ D.I. 255, Ex. 15 (van der Heijden 30(b)(6) Tr.) 286:6–18.  It wanted and used ██

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

██████ Pls.' Opp. 4.  ROSS cannot avoid liability by clinging to a post-hoc rationalization that is completely inconsistent with what it actually copied and why.

### A. Factor One: ROSS's Commercial Purpose to Replace Westlaw

The "the purpose and character" of ROSS's use heavily weighs against fair use.

**Bad Faith**.  As discussed in Plaintiffs' prior briefs, ROSS copied the Westlaw Content in bad faith.  D.I. 250 ("Pls.' Br."), 10; Pls.' Opp. 11.[1]  After ignoring bad faith in its opening brief, ROSS misconstrues it in opposition, claiming that being refused a license is not sufficient for a finding of bad faith.  D.I. 318 ("Def.'s Opp."), 14.  But unlike in *Campbell v. Acuff-Rose Music, Inc.*, and *Warren Publ'g Co. v. Spurlock*, on which ROSS relies, ROSS was not merely denied permission to use the Westlaw Content after asking permission in good faith.  *See* 510 U.S. 569,

---

[1] ROSS cites *Google v. Oracle* as expressing skepticism of bad faith in dicta, but the Supreme Court did not hold it was irrelevant.  141 S.Ct. 1183, 1204 (2021).  The Supreme Court's holding that fair use "presupposes 'good faith'" in *Harper & Row, Publishers, Inc. v. Nation Enterprises* thus remains good law.  471 U.S. 539, 562 (1985).  *Divine Dharma Meditation International Inc. v. Institute of Latent Energy Stud*ies did not determine bad faith was irrelevant to the fair use analysis, it merely found that the failure to instruct the jury on bad faith was not grounds for a new trial where bad faith did not play a significant role in the case.  No. 19 Civ. 55264, 2021 WL 3721438 at *1 (9th Cir. 2021).  Here, by contrast, there is significant evidence of bad faith.  ROSS also points to *NXIVM Corp. v. Ross Institute*, for its claim that bad faith is not dispositive, but there the Second Circuit found that "propriety of [a] defendant's conduct . . . is an ***integral part*** of the analysis under the first factor."  364 F.3d 471, 478 (2d Cir. 2004) (emphasis added).

2

585 n.18 (1994) (request for permission may have been a good faith effort to avoid litigation); 645 F. Supp. 2d 402, 422 (E.D. Pa. 2009).  Rather, ███████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████ D.I. 252 at 4.  This is bad faith and weighs against fair use.  *See L.A. News Serv. v. KCAL-TV Channel 9*, 108 F.3d 1119, 1122 (9th Cir. 1997) (illicitly obtaining copy through third party was bad faith).

**Commercial Use**.  ROSS attempts to minimize the importance of this factor in opposition, but its arguments are contrary to both the law and the facts.  ***First***, ROSS misleadingly asserts that Plaintiffs rely only on cases predating *Campbell*, implying that since *Campbell*, commercialism has fallen out of importance.  Def.'s Opp. 13.  Not so.  *See, e.g.*, *Murphy v. Millennium Radio Grp. LLC*, 650 F.3d 295, 308 (3d Cir. 2011) (post-*Campbell* case finding commerciality weighed against fair use); *see also Dr. Seuss Enters., L.P. v. ComicMix LLC*, 983 F.3d 443, 451 (9th Cir. 2020) (same); *Fox News Network, LLC v. TVEyes, Inc.*, 883 F.3d 169, 178 (9th Cir. 2018) (same).

***Second***, unable to dispute that ROSS was a commercial enterprise offering a legal research platform with the stated goal of ████████████████████████████ and ████████ ████████████, Pl.'s Opp. 7, 18, ROSS argues that its copying benefited the public by "broadening and deepening access to the law at a lower cost."  Def.'s Opp. 13.  But ROSS was admittedly a for-profit company selling its product for a price, not a non-profit organization providing free access to the law, as in *Georgia v. Public.Resource.org, Inc.*, on which ROSS relies. 140 S. Ct. 1498, 1505 (2020).  There are many free and low-cost ways to access judicial opinions, and unlike in *Georgia*, Plaintiffs are not claiming copyrights therein or attempting to restrict access

3

thereto. Pls.' Opp. 12.² Nor is this a case in which "everyone profits" from the copying, or the copying opens the door to a wide proliferation of new works, as described in the portions of *Sega* and *Sony* to which ROSS cites. *Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1523 (9th Cir. 1992; *Sony Comput. Ent., Inc. v. Connectix Corp.*, 203 F.3d 596, 477–78 (9th Cir. 2000). ROSS profits, not the public; putting aside rhetoric and looking squarely at the facts in the record, ROSS copied Plaintiffs' proprietary editorial content because it wanted to create a product that it could sell as a substitute for Westlaw, and because it was cheaper for ROSS to free ride on Plaintiffs' creativity than develop its own. Pls.' Opp. 7. This is not fair use.

*Third*, while ROSS insists this Court should "consider the public benefit" and is eager to argue it is a lower cost alternative to Westlaw, Def.'s Opp. 13–14, ROSS discounts the public benefits that result from the creativity of Plaintiffs' attorney-editors, who provide insightful editorial content and advanced search algorithms powered by that content. Pls.' Opp. 3. The legal profession has, for decades, benefited from Plaintiffs' organization and synthesis of the law. To allow a competitor to use it for the same purposes to which the author put it to compete with that author would seriously disincentivize the creation and distribution of similar important works in the future, and harm the public, not benefit it. Pls.' Opp. 20.

**Transformativeness**. As Plaintiffs have detailed in prior briefs, ROSS's use is not transformative under Third Circuit law. ROSS used the Westlaw Content for the same purpose as Plaintiffs (as a synthesis of legal points to train its AI), Pls.' Br. 7–8, a fact that ROSS generally ignores. And it copied to create a substitute for Westlaw without adding any commentary or

---

² ROSS cites *Eldred v. Ashcroft*, which involved the Copyright Term Extension Act, and simply notes that fair use can apply to copying of expressive content, noting latitude for "scholarship and comment." 537 U.S. 186, 220 (2003). *Eldred* did not involve a for-profit company copying a competitor's editorial content to improve its commercial product.

4

creativity of its own. Pls.' Br. 9; Pls.' Opp. 9. This is not a transformative use. *See Murphy*, 650 F.3d at 307 ("absence of any broader commentary" undercut transformativeness); *Video Pipeline*, 342 F.3d at 198–200 (substitute for original was not transformative).

ROSS's contrary arguments are unavailing. **First**, ROSS's claim that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Def.'s Opp. 6–7, is unsupported by the record.³ If that were so, ROSS could have trained its AI on any dataset; instead, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Pls.' Br. 20. ROSS used this dataset to train its AI on the "judgment, creativity, and decision making of West attorney-editors," and guarded the dataset from competitors. D.I. 320, Ex. 105 at 8; Pls.' Br. 16–17. And ROSS copied the Westlaw Content *untransformed* throughout the training process, as ROSS's own expert admits. Pls.' Opp. 10. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ are formal components comprising Plaintiffs' expression, like strokes of paint on a canvas.⁴ If featurization were indeed sufficient to make a use transformative, *any* copying of content to train AI would be transformative; this is a finding that would decimate the thriving market for training data and give software developers free reign to copy with impunity.⁵ *Id.; see infra* 8–9.

---

³ ROSS claims that questions and answers were "randomly" selected, but this makes no sense because as explained in Plaintiffs' opening brief, what made the Bulk Memos "high quality" as training data was that the questions and answers were not random, but specifically corresponded to *ranked* answers comprised of case passages. Pls.' Br. 8.
⁴ ROSS claims that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Def.'s Opp. 10. Not so. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ D.I. 320. Ex. 105 (Krein Rpl. Rpt.) 10–11. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and this claim is undermined by the testimony of its own corporate representatives. *Id.* at 11–12.
⁵ ROSS claims that West previously asserted this type of copying is transformative. That is false. ROSS cites *White v. West Publishing Corp.*, but that case was brought by attorneys who wrote legal briefs, claiming infringement for the inclusion of their briefs on Westlaw. 29 F. Supp. 3d 396, 399 (S.D.N.Y. 2014). The court found the use was transformative because although

5

ROSS ignores Third Circuit precedent like *Murphy* and asks the Court to follow two Ninth Circuit cases, *Sony* and *Sega*, which are readily distinguishable. Pls.' Opp. 11–12. In *Sega*, the defendant copied the plaintiff's code only as necessary to discover interface specifications in the Genesis game console so that it could create new games that would work with the console. 977 F.2d at 1514–15. Similarly, in *Sony*, the defendant observed software to determine undisputed uncopyrightable functionalities that were not otherwise publicly available, and that it needed to know to create an emulator that could play games created for one hardware on other hardware. 203 F.3d at 602–08. Here, ROSS was not studying an interface to create a compatible product or study hardware requirements, and the defendants in *Sega* and *Sony* were not attempting to replicate the plaintiff's creative decisions, as ROSS was here.[6]

***Second***, ROSS claims that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Def.'s Opp. 10, is not supported by the record, as detailed above. *Supra* 1–2.[7] This is completely different from the cases on which ROSS relies where "raw data" is extracted from a compilation and the compilation itself did not matter, as in *Assessment*

---

"White created the briefs solely for the purpose of providing legal services to his clients," West's purpose was to provide the briefs in its legal research platform. *Id.* Here, by contrast, both ROSS's and West's purposes were the same. And in *White*, the court acknowledged that West added new expression by "reviewing, selecting, converting, coding, linking, and identifying the documents." *Id.* West added creativity, which ROSS did not do here. *See Author's Guild v. Google, Inc.* 804 F.3d 202, 215-19 (2d Cir. 2015) (purposes were different).

[6]   Nor did *Sony*/*Sega* stand for the proposition that every purported "intermediate" use is a fair one. *See Am. Geophysical Union v. Texaco, Inc.*, 60 F.3d 913, 918 (2d Cir. 1994) (intermediate use for internal research was ***not*** fair use). Courts nonetheless consider whether the copying was for commercial exploitation, and here it clearly was. *Supra* 3–4.

[7]   In *West Publishing Co. v. Edward Thomson Co.*, which ROSS cites, the court found that using digests to locate judicial opinions was fair use, but "extensive copying or paraphrasing of the language of the syllabi" was ***not*** fair use. 176 F. 833 (2d Cir. 1910). In *West Publishing Co. v. Edward Thompson Co.*, the court found the works were "entirely rewritten" from the original, 169 F. 833, 865 (E.D.N.Y. 1909), whereas the Westlaw Content was copied verbatim. And in *Greenbie v. Hollister Noble* is not a fair use case. 151 F. Supp. 45, 67 (S.D.N.Y. 1957).

*Techs. of WI, LLC v. WIREdata, Inc.*, 350 F.3d 640, 646 (7th Cir. 2003) and *Phantomalert, Inc. v. Google Inc.*, 2015 WL 8648669 at *8 (N.D. Cal. Dec. 14, 2015), because not only was more than mere raw data being copied by ROSS, but the arrangement (the selection of West Headnotes and corresponding case passages), was copied as well, and was in fact the impetus for the copying.[8]

### B.  Factor Two: Westlaw is Creative

With regard to nature of the copyrighted work, Plaintiffs' works incorporate numerous creative and expressive choices. Pls.' Br. 11–12; Pls.' Opp. 12–13. As in ROSS's opening brief, ROSS repeats claims that ███████████████████████████████████████ ███████ Def.'s Opp. Br. 15, but as Plaintiffs' opposition explains, ROSS lacks sufficient support in the record. Pls.' Opp. 14. ███████████████████████████████

███████████████████████████████████████████████████████████████

███████ as ROSS suggests, Def.'s Opp. 15–16—on the contrary, ███████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████ ROSS's argument that ███████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████ Pls.' Opp. 12–15.

Nor does the legal subject matter of the Westlaw Content render it unprotectable, *id.*, and ROSS's attempts to distinguish Plaintiffs' cases on the basis that they do not involve "legal content" thus fall flat. ROSS's cases are distinguishable because they did not involve proprietary editorial content like that at it issue here. *Matthew Bender & Co. v. West Publishing Co.*, 158 F.3d

---

[8]   The fact that part of the infringement claim is that LegalEase displayed some of the material at issue in a *browser* (and RAM) does not make it "ephemeral"—courts have found that displaying and downloading into RAM constitutes copying. *See MAI Sys. Corp. v. Peak Comput., Inc.*, 991 F.2d 511, 519 (9th Cir. 1993); *Ticketmaster L.L.C. v. RMG Techs., Inc.*, 507 F. Supp. 2d 1096, 1105 (C.D. Cal. 2007).

693, 707 (2d Cir. 1998) (copying pagination); *Wheaton v. Peters*, 33 U.S. 591, 668 (1834) (copying of judicial opinions); *Georgia*, 140 S. Ct. 1498, 1505 (copying of Georgia code). Indeed, the "original arrangement of opinions," "headnotes," and "statements of fact," have all been found to be copyrightable. *West Publ'g Co. v. Mead Data Cent., Inc.*, 799 F.2d 1219, 1244 (8th Cir. 1986).

### C. Factor Three: ROSS's Copying Was Substantial

With regard to the amount and substantiality of the portion used, from both a qualitative and quantitative perspective, this weighs against fair use.[9]

ROSS's opposition fails to address Plaintiffs' arguments or cases. In their opening brief, Plaintiffs explained how the Westlaw Content is the "heart" of Westlaw, setting it apart from other competitors. Pls.' Br. 12–13. ROSS does not address this point at all, despite it being a key part of the analysis. *Harper*, 471 U.S. at 544. Nor was the amount of copying—███████ ████████████████████████████████████████████████████████████████████████████████████████—reasonable or consistent with ROSS's claimed purpose of ████████████████████ ██████████████████████. Pls.' Br. 13; Pls.' Opp. 16; *supra* 3–6. ROSS ignores this too. And ROSS's cases are distinguishable, as detailed in Plaintiffs' opposition. Pls.' Opp. 12–15.

### D. Factor Four: ROSS Harmed the Market for Westlaw Content

Plaintiffs' prior briefs explain how ROSS's conduct harms the market for and value of the Westlaw Content. 17 U.S.C. § 107(4). ROSS confusingly claims that ██████████████ ████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████ Def.'s Opp. 18. This is wrong on multiple

---

[9] ROSS claims this factor is given "little weight" where the material is not copied into the final product, Def.'s Opp. 17, but courts have found substantial copying even where the copied material was entirely internal. *See, e.g.*, *Texaco*, 60 F.3d at 926.

scores.  ***First***, Plaintiffs participate in an actual market for Westlaw Content by licensing it directly through Westlaw subscriptions, and the copying diminishes the value therefor, as explained in Plaintiffs' opening brief.  Pls.' Br. 15–16.  ROSS's admitted goal was ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇  *Id.* 4.  ROSS fails to address this point.  ***Second***, it is black letter law that the decision not to enter a derivative market, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, is not sufficient to find that such a market does not exist or is not likely to develop.  *See, e.g., Castle Rock Ent., Inc. v. Carol Pub. Grp., Inc.*, 150 F.3d 132, 145–46 (2d Cir. 1998); *Monge v. Maya Mags., Inc.*, 688 F.3d 1164, 1181 (9th Cir. 2012).  Moreover, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, Def.'s Opp. 18, makes no sense at all.

ROSS relies on *Sony* to argue that its transformative use cannot cause market harm.  Def.'s Opp. 19.  ROSS's use is not transformative, *supra* 3–6, and if transformativeness were sufficient to find no market harm, that would collapse the factors into factor one, which is inconsistent with the Supreme Court's treatment of factor four as the "most important." *Harper*, 471 U.S. at 566.  ROSS asserts ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.  Def.'s Opp. 19.  Not so, given that ROSS entered the legal research market before it started copying Plaintiffs, and there are a number of competitors operating in the same market.  Pls.' Br. 15–16.  ROSS also ignores the widespread effect its copying would have on Plaintiffs: ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇  Pls.' Opp. 17–18.  As all four factors weigh against fair use, ROSS has insufficient evidence to establish this defense, and summary judgment is proper.

9

## II. ROSS'S OTHER DEFENSES FAIL

ROSS does not address or point to any evidence supporting its defenses of First Sale Doctrine or First Amendment. Summary judgment should thus be granted as to these two defenses.

**Consent, Waiver, Estoppel, License, Acquiescence, and Laches**. ROSS claims that a provision in West's TOS permitting fair uses of content amounts to "voluntary, intentional relinquishment of a known right." Def.'s Opp. 20. That makes no sense. Plaintiffs could not relinquish their "right" to prevent fair use because fair use is a complete defense to copyright infringement. Plaintiffs never told ROSS they viewed its conduct as fair; in fact, they explicitly did not consent to ROSS's copying, and brought this lawsuit as soon as they learned of it. Pls.' Br. 19. ROSS only addresses laches in the context of tortious interference, tacitly acknowledging that laches does not apply to copyright infringement, and cites nothing in the record showing undue delay at all, making laches wholly inapplicable even to tortious interference.

**Tort of Another**. ROSS conclusorily claims that its conduct was not a substantial factor in bringing about the harm to Plaintiffs, but the record is clear that the Bulk Memo Project happened at ROSS's direction and control. D.I. 250, 252.

**Ownership**. ROSS does not contest that Thomson Reuters owns the copyright registrations at issue, and these registrations are prima facie evidence of ownership. ROSS claims that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and contradicts ROSS's own expert's conclusions, D.I. 250 at 9, 11–13. ROSS claims that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ which is not only untrue, but also contrary to black letter law. Def.'s Opp. Br. 15.

## III. CONCLUSION

Plaintiffs respectfully request that their partial motion for summary judgment on certain of ROSS's affirmative defenses be granted in its entirety.

10

| | |
|---|---|
| OF COUNSEL:<br><br>Dale M. Cendali<br>Joshua L. Simmons<br>Eric A. Loverro<br>KIRKLAND & ELLIS LLP<br>601 Lexington Avenue<br>New York, NY 10022<br>(212) 446-4800<br><br>Miranda D. Means<br>KIRKLAND & ELLIS LLP<br>200 Clarendon Street<br>Boston, MA 02116<br>(617) 385-7500<br><br>February 13, 2023 | MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br><br>*/s/ Michael J. Flynn*<br>_____<br>Jack B. Blumenfeld (#1014)<br>Michael J. Flynn (#5333)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE 19899<br>(302) 658-9200<br>jblumenfeld@morrisnichols.com<br>mflynn@morrisnichols.com<br><br>*Attorneys for Plaintiffs and Counterdefendants Thomson Reuters Enterprise Center GmbH and West Publishing Corporation* |

## CERTIFICATE OF SERVICE

I hereby certify that on February 13, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on February 13, 2023, upon the following in the manner indicated:

| | |
|---|---|
| David E. Moore, Esquire<br>Bindu Palapura, Esquire<br>POTTER ANDERSON & CORROON LLP<br>Hercules Plaza, 6th Floor<br>1313 North Market Street<br>Wilmington, DE 19801<br>*Attorneys for Defendant and Counterclaimant* | *VIA ELECTRONIC MAIL* |
| Mark A. Klapow, Esquire<br>Lisa Kimmel, Esquire<br>Crinesha B. Berry, Esquire<br>CROWELL & MORING LLP<br>1001 Pennsylvania Avenue NW<br>Washington, DC 20004<br>*Attorneys for Defendant and Counterclaimant* | *VIA ELECTRONIC MAIL* |
| Gabriel M. Ramsey, Esquire<br>Jacob Canter, Esquire<br>Warrington Parker, Esquire<br>CROWELL & MORING LLP<br>3 Embarcadero Center, 26th Floor<br>San Francisco, CA 94111<br>*Attorneys for Defendant and Counterclaimant* | *VIA ELECTRONIC MAIL* |

*/s/ Michael J. Flynn*
_____
Michael J. Flynn (#5333)