## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION, | )<br>)<br>) |
| Plaintiffs/Counterdefendants, | )  C.A. No. 20-613-SB<br>)<br>)  **JURY TRIAL DEMANDED** |
| v. | )<br>) |
| ROSS INTELLIGENCE INC., | )  **PUBLIC VERSION**<br>) |
| Defendants/Counterclaimant. | )<br>) |

## ROSS INTELLIGENCE INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON ITS AFFIRMATIVE DEFENSE OF FAIR USE

OF COUNSEL:

Gabriel M. Ramsey
Warrington S. Parker III
Joachim B. Steinberg
Jacob Canter
Christopher J. Banks
CROWELL & MORING LLP
3 Embarcadero Center, 26th Floor
San Francisco, CA 94111
Tel: (415) 986-2800

Mark A. Klapow
Crinesha B. Berry
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004
Tel: (202) 624-2500

Dated: February 13, 2023
10604523 / 20516.00001

Public Version Dated: February 24, 2023

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Andrew L. Brown (#6766)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
abrown@potteranderson.com

*Attorneys for Defendant/Counterclaimant ROSS Intelligence, Inc.*

**TABLE OF CONTENTS**

INTRODUCTION AND SUMMARY OF ARGUMENTS ............................................................. 1

ARGUMENT .................................................................................................................................. 1

I.      Factor One:  ROSS's Use Was Highly Transformative, Spurred New Creation And Served Important Public Interests ................................................................................... 1

II.     Factor Two:  The Asserted Work Is Highly Constrained And Functional ......................... 7

III.    Factor Three: The Amount And Substantiality Of The Alleged Use Is Minimal, And Only That Needed To Undertake The Transformative Use ......................................................... 8

IV.    Factor Four: Plaintiffs Admit There Is No Market Supplanted By ROSS's Use And ROSS Has Not Impacted Any Such Market ....................................................................... 9

CONCLUSION ............................................................................................................................. 10

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Am. Geophysical Union v. Texaco Inc.*,
    60 F.3d 913  (2d Cir. 1994) ............................................................................................. 10

*Authors Guild v. Google, Inc.*,
    804 F.3d 202 (2d Cir. 2015) .............................................................................................. 5

*Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.*,
    150 F.3d 132 (2d Cir. 1998) ............................................................................................ 10

*Feist Publications, Inc. v. Rural Telephone Service Co.*,
    499 U.S. 340 (1990) .......................................................................................................... 8

*Matthew Bender & Co., Inc. v. West Pub. Co*
    158 F.3d 693 (1998) ...................................................................................................... 8, 9

*Mead Data. U.S. v. Thomson Corp.*,
    949 F. Supp. 907 (1996) ................................................................................................... 8

*Oracle Am. v. Google, Inc.*,
    750 F.3d 1339 (9th Cir. 2014) ................................................................................. *passim*

*Sega Enters. v. Accolade, Inc.*,
    977 F.2d 1510 (9th Cir. 1992) ................................................................................ 5, 6, 7, 9

*Skidmore v. Led Zeppelin*,
    952 F.3d 1051 (9th Cir. 2020) .......................................................................................... 3

*Sony Comput. Entm't, Inc. v. Connectix Corp.*,
    203 F.3d 596 (9th Cir. 2000) .................................................................................. 5, 6, 10

*Southco, Inc. v. Kanebridge Corp.*,
    258 F.3d 148 (3d Cir. 2001) ............................................................................................. 3

*Video Pipe., Inc. v. Buena Vista Home Entm't, Inc.*,
    342 F.3d 191 (3d Cir. 2003) ............................................................................................. 4

*W. Pub. Co. v. Edw. Thompson Co.*,
    176 F. 833 (2d Cir. 1910) ................................................................................................. 2

*W. Pub. Co. v. Mead Data Cent., Inc.*,
    799 F.2d 1219 (8th Cir. 1986) .......................................................................................... 8

*Warren Publ'g Co. v. Spurlock*,
    645 F. Supp. 2d 402 (E.D. Pa. 2009) .......................................................................................7

*White v. West Publ'g Corp.*,
    29 F. Supp. 3d 396 (S.D.N.Y. 2014) ................................................................................4, 5, 7

**Statutes**

17 U.S.C. § 102(b) ........................................................................................................................4

17 U.S.C. § 107 ..............................................................................................................................1

## INTRODUCTION AND SUMMARY OF ARGUMENTS

Plaintiffs mischaracterize the facts and ignore the cases relevant to fair use. ROSS's use meets the four fair use factors. Its use was fair use as a matter of law.

## ARGUMENT

**I.    Factor One:  ROSS's Use Was Highly Transformative, Spurred New Creation And Served Important Public Interests**

ROSS's use was paradigmatic "research" set forth in 17 U.S.C. § 107. The objective was to obtain questions and answers that closely mirrored text of judicial opinions across diverse legal topics. Contrary to Plaintiffs' assertion, the point was to study the "functionality" of the language of the law—i.e. to measure independent facts and compute statistics about that language. (Opp. 1) These were used to create an improved AI-based search system that was "interoperable" with the corpus of U.S. judicial opinions. Plaintiffs unduly narrow the framing of this principle. (Opp. 1) Fair use may be supported by technical interoperability *and* by a "competitive desire to achieve commercial 'interoperability.'" *Oracle Am. v. Google, Inc.*, 750 F.3d 1339, 1376-77 (9th Cir. 2014). Such commercial interoperability between search functionality and the public domain content of the law was precisely ROSS's goal. ▆▆▆▆▆▆▆▆▆▆▆▆ (D.I. 281 Ex. 9 163:1-165:4) and the only way to generate statistics about such language was to access it. Plaintiffs controlled the most comprehensive and diverse body of public domain cases.[1] Plaintiffs' expert admits ▆▆▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆ (D.I. 281 Ex. 61 p. 24, 30) Plaintiffs admit ▆▆▆▆▆▆▆▆▆▆▆▆

---

[1] https://legal.thomsonreuters.com/en/products/westlaw-classic/features ("most current caselaw content" and "additional federal and state court opinions that have not been published in" print)

(D.I. 254 3-4) Plaintiffs' expert admitted ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ (D.I. 281 Ex. 43 256:17-19) ▮▮▮▮▮▮▮▮▮▮. 8) ROSS generated questions and answers generally across a diverse body of legal topics based on the broadest body of public domain cases available. It then randomized the questions and answers as training data. *See infra.*

▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮ (D.I. 281 Ex. 26 at 44) Plaintiffs say this argument "makes no sense." (Opp. 9) That ignores the long history of fair use where competitors temporarily copied West's digests (*i.e.*, headnotes), topics and citations while creating competing legal publications, to ensure coverage, verify the law, and access raw judicial content. *W. Pub. Co. v. Edw. Thompson Co.*, 176 F. 833, 838 (2d Cir. 1910) (fair use where competitor used West digests "to assist them in running down the cases and copy lists of cases from the digests" while creating competing works).

ROSS did not copy the arrangement of elements. ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ (D.I. 281 Ex. 4 TR-0000578) ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ (D.I. 279 ¶ 27; D.I. 279-2 ¶¶ 19 n.21, 22; Exs. 7, 29, 30) ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ (D.I. 279 ¶ 27 n.19, Ex. C, lines 194-229) Plaintiffs offer no contrary facts. Thus, Plaintiffs' assertion that ▮▮▮▮▮▮▮▮▮▮ (Opp. 1) is false.

Random questions and answers are not a ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ Opp. 1) Such cannot implicate copyright as a

2

matter of law. *Southco, Inc. v. Kanebridge Corp.*, 258 F.3d 148, 153 (3d Cir. 2001) ("The random and arbitrary use of numbers in the public domain does not evince enough originality to distinguish authorship."); *Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1075 (9th Cir. 2020) ("selection and arrangement argument fails because a copyright plaintiff 'd[oes] not make an argument based on the overall selection and sequencing of … similarities,' if the theory is based on '*random* similarities scattered throughout the works.'" (emphasis in original)). Whatever small corner of the key number system "organization" ephemerally appeared in browsers of LegalEase attorneys was lost entirely through this process.

ROSS performed statistical and mathematical measurements on question/answer pairs to discover functional aspects of language in the legal domain. Measurements included things such as: 

D.I. 279 ¶ 15)

Plaintiffs' mischaracterize Dr. Branting's testimony about this. (Opp. 10) He did not testify that

(D.I. 321 Ex. 13 190:2-23, 191:24-192:11, 192:19-193:15)

(*Id.* 194:19-196:20)

3

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (*Id.* 192:2-11, 190:11-191:14, 200:7-201:3) In other words, Dr. Branting testified that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ The cited testimony is evidence of the transformation and Plaintiffs' characterization is simply false.

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Opp. 10) This is not taking English language sentences and expressing them in Ukrainian. The statistics are independent objective, noncopyrightable "facts" and "ideas" *about* text. 17 U.S.C. § 102(b). Plaintiffs' argument ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Opp. 11) Take this sentence: "the copyright holder misused its copyright by including in licensing agreements a provision that neither the licensee company nor its officers, employees, et al., could develop competing goods for the term of the agreement." *Video Pipe., Inc. v. Buena Vista Home Entm't, Inc.*, 342 F.3d 191, 204 (3d Cir. 2003). That the word "the" exists four times cannot be controlled by copyright. Plaintiffs' attempt to leverage a copyright monopoly to preclude use of unprotectable facts is the very essence of copyright misuse. *See id.*

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. (D.I. 281 Ex. 36 ¶ 134). Recently West successfully argued that taking the entirety of attorney-authored, copyrighted legal briefs and placing them in a commercial database for competing attorneys to search and use in competition with authors was "transformative." *White v. West Publ'g Corp.*, 29 F. Supp. 3d 396, 398-399 (S.D.N.Y. 2014). There, all West did was have briefs "converted into a text-se[a]rchable electronic file and saved in each database's proprietary format," redact sensitive and private information, extract "key characteristics like jurisdiction and practice area in order to

allow users to find and retrieve documents more easily," and provide full "text-searchable" content of the briefs with "links to authorities cited in the document." *Id.* If those changes were transformative, so were ROSS's.

Similarly, the Second Circuit found fair use, ruling that Google reproducing raw word indices from books and calculating "word frequencies, syntactic patterns, and thematic markers," to facilitate search through a commercial search engine and research about the underlying text was "transformative." *Authors Guild v. Google, Inc.*, 804 F.3d 202, 209, 214-19 (2d Cir. 2015). Such features are identical to ROSS's statistical measurements. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ (D.I. 279 ¶¶ 49-50, 66-91) Contrary to Plaintiffs' assertions (Opp. 11), these statistics are central to understanding the "functionality" of how the language of the law operates in a generalized model, just like the study of functionality in *Sega* and *Sony*.

The headnotes at issue are for humans to read points of law that exist in the underlying opinions—the *only* purpose for which Plaintiffs offer the headnotes in the market. ROSS's statistical features do something entirely different—███████████████████████████████████████████████████████████████████████████████████████████ (*Id.* ¶¶ 52-58)[2] Far from human expression, the features literally represent statistical likelihoods and geometric points in space. This is about as far from the core of copyright as is imaginable and, contrary to Plaintiffs' assertion (Opp. 8) ███████████████████████████████████████████

---

[2] The cases cited by Plaintiffs regarding "copying for the same purpose" are inapposite (Opp. 8-9) ROSS is not using Plaintiffs' works for same purpose Plaintiffs have offered the expressive content into the market.

███████████████████████████████████████████████████████████████████

████████████████████████████████████████████████.[3]

That Plaintiffs made *internal* use of ideas about headnote text in relation to their own product development does not make ROSS's use any less transformative. This was precisely the situation in *Sega* and *Sony*. In both cases, plaintiffs used copyrighted material in "commercially" developing products with functionality similar to defendants' products. As here, it was still "transformative" for defendants to discern unprotectable ideas about the material and use those ideas to write new code for a "wholly new product" that competed with plaintiffs and contained none of their material. *Sony Comput. Entm't, Inc. v. Connectix Corp.*, 203 F.3d 596, 602-08 (9th Cir. 2000). Similarly, ████████████████████████████████████████ (D.I. 279 ¶¶ 26-31), ███████████████████████████████████████████████████████████

███████████████████████████████████████████████. (D.I. 279 ¶¶ 21-24) It did so to provide legal search capability at least as commercially "interoperable" with the content of the public law as Westlaw. *Oracle*, 750 F.3d at 1376-77. Plaintiffs argue that this is all irrelevant. (Opp. 12) *Sega* and *Sony* hold that these facts weigh in favor of fair use.

Plaintiffs argue ████████████████████████████████████████████

████████████ But, in *Sega* the court rejected as "far too simple" precisely the same argument that defendant "copied its object code in order to produce a competing product" emphasizing that defendant's use was only "intermediate" and to understand "ideas and functional concepts" about the material. *Sega Enters. v. Accolade, Inc.*, 977 F.2d 1510, 1522-23 (9th Cir. 1992). This was a "legitimate, essentially non-exploitative purpose, and … the commercial aspect of its use can

---

[3] ████████████████████████████████████████████████████████
████████████████████████████████████████████████ (Ramsey Decl. ¶¶ 4-7)

best be described as of minimal significance." *Id.*[4] As here, plaintiffs could not stop defendants from making such use—even if both plaintiffs and defendants used the same underlying material internally. This court should also reject Plaintiffs' argument that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇[5]

## II. Factor Two: The Asserted Work Is Highly Constrained And Functional

Plaintiffs argue that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (Opp. 9-10) However, there is no creative "relationship" between headnotes and underlying quotes. Plaintiffs' headnote drafting guidelines ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (D.I. 281 Ex. 65 at 2) Further, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (*Id.* at 8) The evidence belies Plaintiffs' argument that there is purported choice (Opp. 12-13, 14-15, n. 13).

Plaintiffs ignore that using their own methodologies, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (D.I. 280 ¶¶ 33-48). Plaintiffs note ▇▇▇▇▇▇ mentioned by ROSS's expert. (Opp. 5 n.5) All but ▇▇ of those involve headnotes identical to opinions or questions that are more similar to opinions than headnotes. (D.I. 343 ¶¶ 25-33 Ex. 89) Regardless, they are all "functional presentations of fact and law, and this cuts toward a finding of fair use," as West successfully argued. *White*, 29 F. Supp. 3d at 399. Thus, Dr. Branting's statement that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

---

[4] William Landes and Judge Posner observed of this that "the only effect of liability would thus have been to impede [defendant] competing with [plaintiff] in the market for video games, an anticompetitive result not sanctioned by any policy of the copyright statute." (D.I. 343, *The Economic Structure of Intellectual Property Law*, Harvard Univ. Press (2003) at p. 100))
[5] Plaintiffs' ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *Campbell*, 510 U.S. at 585 n.18 ("If the use is otherwise fair, then no permission need be sought or granted. Thus, being denied permission to use a work does not weigh against a finding of fair use."); *Warren Publ'g Co. v. Spurlock*, 645 F. Supp. 2d 402, 422 (E.D. Pa. 2009) ("failed attempt at negotiating a licensing fee" not bad faith). The Supreme Court recently questioned whether bad faith is relevant at all. *Google*, 141 S. Ct. at 1204.

█████████████████████████████ (Opp. 11), ████████████████████████████

████████████████████████████ Further, contrary to Plaintiffs' assertion (*id* 14), where a work like Plaintiffs' has become a *de facto* standard, this favors fair use. *Google*, 141 S. Ct. at 1204 ("Copyright on largely functional elements … that [have] become an industry standard gives a copyright holder anti-competitive power" and allowing use furthers fair use policies.)

These aspects reveal the overall nature of Plaintiffs' compilation. It is a "system" of functional elements put forth as a standard for years and with highly constrained legal content—from unprotectable opinions, to headnotes that are verbatim or near verbatim quotes of opinions, to more elaborate content such as briefs which even West concedes are functional recitations of law and fact. West correctly argues that factor two considers the overall nature of the work. That is why Plaintiffs cannot run from *Matthew Bender*, which found that West's *overall* case reporter compilations are highly functional "thin" copyright, weighing in favor of fair use, even assuming some creativity in selection and arrangement. 158 F.3d 693, 698-99, 707.[6]

### III.  Factor Three: The Amount And Substantiality Of The Alleged Use Is Minimal, And Only That Needed To Undertake The Transformative Use

ROSS's use was not qualitatively substantial. Plaintiffs assert ████████████████

███████. (D.I. 256 ¶ 7) The ██████ allegedly infringed headnotes constitute ████████

██████████████████████████ (D.I. 250 at 2, n.1 (█████████████████████████

██████████████) For perspective, since summary judgment briefing began, they have written over ██████ headnotes. Clearly, the alleged copying does not constitute the "heart of the work."

---

[6] Contrary to Plaintiffs' assertion (Opp. 13), the *Mead Data* case found that "headnotes" "are not at issue here." *W. Pub. Co. v. Mead Data Cent., Inc.*, 799 F.2d 1219, 1223 (8th Cir. 1986). The case has been criticized: "this Court has serious doubts about the continuing vitality of the Eighth Circuit's 1986 opinion . . . in view of . . . *Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. 340 (1990)," rejecting the "sweat of the brow" doctrine relied upon in *Mead Data*. *U.S. v. Thomson Corp.*, 949 F. Supp. 907, 926 (1996); *Matthew Bender & Co.*, 158 F.3d at 708.

This is particularly true given that ROSS copied little, if any, of the materials' creative expression. Further, ███████████████████████████████████████████████████████████████████████████████████████████ (Opp. 16) Indeed, Plaintiffs' expert acknowledges ███████████████████████████████████████████████████████████████████████████████████ (D.I. 281 Ex. 61 at 31) ROSS only used the lowest end of this range, preparing no more memos than absolutely needed.

ROSS's use was not quantitatively substantial even under Plaintiffs' most outlandish theory combining ███████████████████████████████████████████████████████████████████████████████████████████████████████████. This cumulatively represents ████████████ of the 11,205,374,706 data records in the work. This is fair use. *Matthew Bender*, 158 F.3d at 678 ("West conceded (immediately prior to trial) [what] would be permissible under the fair use doctrine, *i.e.*, one to two percent of its published reports of Supreme Court and court of appeals cases.")

## IV. Factor Four: Plaintiffs Admit There Is No Market Supplanted By ROSS's Use And ROSS Has Not Impacted Any Such Market

Plaintiffs' internal use of *ideas* in the asserted material during development of their own search engine is an inappropriate lens through which to view the market. Such would result in a monopoly extending beyond copyright and impeding new creation. This is why the *Sega* court rejected as "far too simple" the argument that defendant used ideas from code "to produce a competing product." *Sega*, 977 F. 2d at 1522-23. Indeed, the asserted copyright does not even cover Plaintiffs' technology "platform" (Opp. 18), thus such is a particularly inappropriate framing of the fair use "market." To do so would act as "a lock limiting the future creativity of new programs" and "would interfere with, not further, copyright's basic creativity objectives." *Google*, 141 S. Ct. at 1207-08, citing *Sega*, 977 F. 2d at 1523-24 ("An attempt to monopolize the

9

market by making it impossible for others to compete runs counter to the statutory purpose of promoting creative expression"); *Lexmark Int'l*, 387 F. 3d at 544 (copying to foster functionality was not exploiting program's "commercial value *as a copyrighted work*" (emphasis in original)). "[R]eimplementation" of copyrighted material "allows creative new computer code to more easily enter the market." *Google*, 141 S. Ct. at 1207-08. The same is true of ROSS's use.

Plaintiffs concoct a ███████████████████████████████████ ███████████████████████ (D.I. 255 Ex. 22 ¶ 85). ███████████████████ ████████████████████████████████████████████ (D.I. 276 ¶ 16); *Google*, 141 S. Ct. at 1206 (plaintiff "poorly positioned to succeed" in posited market; factor four supported fair use). This distinguishes *Am. Geophysical Union v. Texaco Inc.* and others where the market was established and use was not transformative. 60 F.3d 913, 918-31 (2d Cir. 1994). But, it is beside the point, as ROSS's transformative use involved generating only unprotectable statistical ideas and facts and such cannot define Plaintiffs' market. Indeed, "copyright owners may not preempt exploitation of transformative markets" by "actually developing or licensing others to develop those markets." *Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.*, 150 F.3d 132, 145 n.11 (2d Cir. 1998) ("Thus, by developing or licensing a market for parody, news reporting, educational or other transformative uses of its own creative work, a copyright owner plainly cannot prevent others from entering those fair use markets."); *Sony*, 203 F.3d at 602-08 (impermissible for copyright to confer a monopoly on transformative use of unprotectable ideas) ROSS's use does not supplant any actual or potential valid *copyright* use by Plaintiffs. ████████████████████████████████████████ ████████████████████████████████ (D.I. 276 ¶ 14)

## CONCLUSION

This Court should grant ROSS's motion for summary judgment on fair use.

10

|  |  |
|---|---|
| OF COUNSEL:<br><br>Gabriel M. Ramsey<br>Warrington S. Parker III<br>Joachim B. Steinberg<br>Jacob Canter<br>Christopher J. Banks<br>CROWELL & MORING LLP<br>3 Embarcadero Center, 26th Floor<br>San Francisco, CA 94111<br>Tel: (415) 986-2800<br><br>Mark A. Klapow<br>Crinesha B. Berry<br>CROWELL & MORING LLP<br>1001 Pennsylvania Avenue, NW<br>Washington, DC 20004<br>Tel: (202) 624-2500 | Respectfully submitted,<br><br>POTTER ANDERSON & CORROON LLP<br><br>By: */s/ David E. Moore*<br>　　David E. Moore (#3983)<br>　　Bindu A. Palapura (#5370)<br>　　Andrew L. Brown (#6766)<br>　　Hercules Plaza, 6th Floor<br>　　1313 N. Market Street<br>　　Wilmington, DE 19801<br>　　Tel: (302) 984-6000<br>　　dmoore@potteranderson.com<br>　　bpalapura@potteranderson.com<br>　　abrown@potteranderson.com<br><br>*Attorneys for Defendant/Counterclaimant ROSS Intelligence, Inc.* |

Dated: February 13, 2023
10604523 / 20516.00001

Public Version Dated: February 24, 2023

11