

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984 6000
**www.potteranderson.com**

Bindu A. Palapura
Partner
Attorney at Law
bpalapura@potteranderson.com
302 984-6092 Direct Phone

March 16, 2023

**VIA ELECTRONIC FILING**
The Honorable Stephanos Bibas
James A. Byrne United States Courthouse
601 Market Street
Philadelphia, PA 19106

   Re: *Thomson Reuters Enterprise Centre GmbH, et al. v. ROSS Intelligence, Inc.*,
     C.A. No. 20-613-SB (D. Del.)

Dear Judge Bibas:

  In support of its antitrust claims, ROSS seeks documents related to marketing and licensing Westlaw, customer reactions to the platform, market definition, and barriers to entry. (*See* Ex. A (First Set of RFPs).) ROSS seeks those documents for different time periods. Plaintiffs do not dispute that the documents are relevant. Improperly, except for a small subset of documents, Plaintiffs refuse to produce documents predating January 1, 2015, because (1) ROSS did not exist prior to 2015, (2) tying claims are claimed to be subject to narrow time limitations, and (3) discovery is burdensome. (Ex. B at 1-2.)

  ROSS also seeks an order requiring the production of [t]he source code for [Plaintiffs'] LEGAL SEARCH TOOLS and PUBLIC LAW DATABASES." (Ex. C (RFP No. 246).) Plaintiffs refuse to produce because "Thomson Reuters sells a single product, Westlaw. It does not—and has never—commercially licensed or sold a public law database separate from search technology, and the only way Thomson Reuters' customers can access its collection of primary law is through a Westlaw license." (Ex. D at 2; *see also* Ex. E at 3-4 (ROSS's initial responses to Plaintiffs' source code review objections).) Production should be ordered for the reasons below.

**I. ROSS's Temporal Limitations Are Narrowly Tailored to the Specific Requests and Plaintiffs' Arguments to the Contrary Are Unsupported By Law.**

  The year 2015 is an arbitrary limit for discovery. Courts have consistently recognized that evidence related to monopoly power, exclusionary practices, and anticompetitive conduct will predate a plaintiff's existence. (*Schenley Industries, Inc. v. New Jersey Wine & Spirit Wholesalers,* 272 F. Supp. 872 (D.N.J. 1967); *Am. Health Sys., Inc. v. Liberty Health Sys.*, 1991 WL 30726, at *2 (E.D. Pa. Mar. 5, 1991).)

  Nor are tying claims subject to limited time restrictions. To the contrary, courts have concluded that broad discovery is "particularly appropriate in antitrust cases" because "broad discovery may be needed to uncover evidence of invidious design, pattern, or intent." (*In re Intel Corp. Microprocessor Antitrust Litig.*, 2007 WL 137152, at *3-5 (D. Del. Jan. 12, 2007); *Kellam Energy, Inc. v. Duncan*, 616 F. Supp. 215, 218 (D. Del. 1985) (allowing discovery dating back 10 years to when monopolization scheme began); *United States v. Grinnell Corp.,* 30 F.R.D. 358, 360 (D.R.I. 1962) (allowing discovery going back 50-plus years to 1907).)

  Also, given discovery's broad scope "the burden or cost of providing the information sought is less weighty a consideration" in antitrust cases. (*New Park Entm't, LLC v. Elec. Factory*

*Concerts, Inc.*, 2000 WL 62315, at *3 (E.D. Pa. Jan. 13, 2000).) Such objections have been rejected. (*See Gumwood HP Shopping Partners L.P. v. Simon Prop. Grp., Inc.*, 2014 WL 12780341, at *3 (N.D. Ind. June 25, 2014) (requiring document production even though cost was $1.5 million); *United States v. AT&T. Co.*, 461 F. Supp. 1314, 1338–39 (D.D.C. 1978) (production of 12 million documents not overly burdensome); *In re Fine Paper Antitrust Litig.*, 685 F.2d 810, 818 (3d Cir. 1982) (production of two million documents not abuse of discretion).)

**1975 to present.** ROSS requests Plaintiffs produce documents from 1975 to the present in response to RFP No. 223, which seeks "ALL DOCUMENTS and COMMUNICATIONS RELATING TO YOUR decision to make judicial opinions available online, including competitive intelligence and research." (Ex. A.) Prior to going digital, as the court found in its order denying Plaintiffs' motion to dismiss, Plaintiffs offered judicial opinions separately from the digests used to search for judicial opinions. (D.I. 170 at 9.) Plaintiffs now claim that they are the same product and inseparable. (*See e.g.*, Ex. D at 2.) ROSS is entitled to challenge this assertion and documents reflecting how Plaintiffs offer judicial opinions and whether Plaintiffs were cognizant or purposely decided to offer judicial opinions as they have.

Also, public documents reflect that in 1975 West developed a software product for the DOJ which "only included West headnotes and summaries and not the full text of opinions." (Ex. F at 3.) This reflects Plaintiffs' awareness that its search tools are separate from its judicial opinion database, and if such documents still exist ROSS is entitled to review them. The same document states that "[i]n 1976, the Air Force signed a contract with West that gave West the exclusive rights to obtain the FLITE database of court opinions." (*Id.*) ROSS is entitled to these materials, too.

**Documents from 1990 to present**. Plaintiffs proposed a period of 1990 to present for "documents sufficient to show any business plans, products, and licenses related to its public law database separate from any search technology." (Ex. B at 2.) ROSS compromised as to this temporal limitation. However, ROSS seeks more than what Plaintiffs have agreed to produce. (Ex. G at 1 (stating counterproposal).) Plaintiffs rejected this proposal without explanation. ROSS is entitled to these documents because they directly relate to its tying claim, including whether Plaintiffs offered their public law database separately from the legal search technology and the strategies behind its decision to sell the products separately.

**Documents from 2000 to present.** ROSS requests documents related to investments in the platform (RFP Nos. 185-86) and business choices based on customer reactions to the platform (RFP Nos. 192-93, 196-97, 220, and 224-226). These documents will show, among other things, whether customers want judicial opinions separate from the legal search engine, thus further establishing separate products. These are relevant to the tying claim. ROSS also seeks documents regarding market definition, barriers to entry, and market share (RFP Nos. 187, 191, 205-06, 211, 214, and 221). (*See Allen-Myland, Inc. v. Int'l Bus. Machines Corp.*, 33 F.3d 194, 209 (3d Cir. 1994) ("the ease or difficulty with which competitors enter the market is an important factor in determining whether the defendant has true market power"); *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 307 (3d Cir. 2007).) Also, these documents will show that Plaintiffs chose to tie their database to their search tools despite customer desire to purchase the database separately. (*See Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 519 (3d Cir. 1998) ("[T]o succeed on a rule of reason claim the plaintiff must prove that the alleged tie unreasonably restrained competition.") (citation omitted).) Though ROSS can justify a broad request, it compromised as to the year 2000 because it represents when online legal search had become common for practitioners and law students such that there was an active market for the use of online legal research products. Plaintiffs' marketing document reflects that an online version of Westlaw was available to users in 2000. (Ex. H TR-0037669 at 2-3 (reflecting an image of the Westlaw platform from 2000); *see Stephens Theatre Corp v. Loew's Inc*, 17 F.R.D. 494, 495

(E.D.N.Y. 1955) (allowing discovery fifteen years beyond statute of limitations because allegations of anticompetitive conduct dated that far back); *Caldwell-Clements, Inc. v. McGraw-Hill Pub. Co.*, 12 F.R.D. 531, 536 (S.D.N.Y. 1952) (allowing over forty years of discovery); *Inline Packaging, LLC v. Graphic Packaging Int'l, Inc.*, 2016 WL 7042117, at *6 (D. Minn. July 25, 2016) (permitting discovery back to 2002 when monopolist entered the market).)

**No temporal scope.** ROSS proposes no limit for RFP Nos. 198, 210, 212-13, 215-19, and 222. These requests relate to Plaintiffs' terms of services (No. 198), competitors (Nos. 210, 212-13, 215), unfair competition actions against Plaintiffs (Nos. 216-219), and agreements with governmental bodies to obtain cases. (No. 222). All of these will reflect on market power. For example, if the contracts to obtain judicial opinions are exclusive or limited it establishes market power. These requests are naturally limited by their own terms such that "limiting the request to a specific time period would be pointless." (*Cromwell v. Sprint Commc'ns Co. L.P.*, 2000 WL 726339, at *8 (D. Kan. May 26, 2000).)

## II.     Plaintiffs' Source Code Is Relevant to ROSS's Tying Claims.

Source code can show that "as a matter of actual practice" there are two separate products. (*Jefferson Par. Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 22 (1984).) In *Caldera, Inc.*, Caldera alleged that Microsoft tied two software applications together in its new Windows 95 product: its Windows 4.0 product and its MS-DOS 7.0 product. (*See Caldera, Inc.*, 72 F. Supp. 2d at 1320.) In denying summary judgment to Microsoft, the court relied on for this Caldera's expert who reviewed the source code and "opined that Windows 95 is in reality nothing more than updated versions of Windows and MS-DOS [and] that these products could be separated." (*Id*.) ROSS requires access to Plaintiffs' source code to complete the same analysis. Also, it is common for courts to permit source code inspection to understand the metes-and-bounds of the software products at issue. (*See MedImpact Healthcare Sys., Inc. v. IQVIA Inc.*, 2021 WL 5605209, at *2 (S.D. Cal. June 29, 2021); *Calendar Research LLC v. StubHub, Inc.*, 2017 WL 10378338, at *10 (C.D. Cal. Nov. 14, 2017).)

Plaintiffs' source code is relevant to determining whether the decision to tie products together causes procompetitive benefits. In *Caldera,* the court stated that a software product that combines separate products benefits consumers if "the integration [is] driven by technology rather than by marketing." (*Caldera, Inc.*, 72 F. Supp. 2d at 1326.) ROSS is entitled to review source code to see if Plaintiffs made a technical benefit when combining the products that would not be present if the products were separate.

The source code is also relevant to determining whether the tying arrangement causes anticompetitive harm. Separate products are made "technologically interdependent" when they are designed to only function together. (*See In re IBM Peripheral EDP Devices Antitrust Litig.*, 481 F. Supp. 965, 1002-03 (N.D. Cal. 1979) (court will condemn a monopolist that "chang[es] [its] product] with such frequency that [rival complementary products] [are] unable to attach and unable to economically adapt their [products] to the ever-changing … designs" and used the resulting product interdependence "as a vehicle for tying").) In *U.S. v. Microsoft*, the D.C. Circuit affirmed the District Court's conclusion that Microsoft had made its Windows operating system software product and Internet Explorer browser software product technologically interdependent because Microsoft had commingled the code for both products such "that the deletion of any file containing browsing-specific routines would also delete vital operating system routines and thus cripple Windows." (*U.S. v. Microsoft Corp.*, 253 F.3d 34, 65-66 (D.C. Cir. 2001).) ROSS is entitled to review source code to make the same inquiry.

## III.    Conclusion

The Court should order Plaintiffs to produce documents in accordance with the above temporal limitations, and as directed by RFP No. 246.

        Respectfully,

        */s/ Bindu A. Palapura*

        Bindu A. Palapura

BAP:nmt/10689980/ 20516.00001

Enclosures

cc:    Clerk of Court (via hand delivery)
        Counsel of Record (via electronic mail)