# Morris, Nichols, Arsht & Tunnell LLP

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
———
(302) 658-9200

Michael J. Flynn
(302) 351-9661
mflynn@morrisnichols.com

Original filing date: March 24, 2023
Redacted filing date: March 31, 2023

The Honorable Stephanos Bibas                                   *VIA ELECTRONIC FILING*
United States District Court
  for the District of Delaware                            **REDACTED - PUBLIC VERSION**
844 North King Street
Wilmington, DE  19801-3570

      Re:   *Thomson Reuters Enterprise Centre GmbH, et al.  v. ROSS Intelligence Inc.*,
            C.A. No. 20-613 (SB) (D. Del.)

Dear Judge Bibas,

      The thrust of ROSS's antitrust claims was that Thomson Reuters does not license its public law database to competitors.  After conceding that it had no viable refusal-to-deal claim—dropping it mid-argument—ROSS's sole remaining theory is that Thomson Reuters "ties" its public law database to its legal search tools.  But legal research platforms, like Westlaw, are a single integrated product.  Indeed, ROSS itself sold only a legal research platform.  Because Thomson Reuters' substantial production predictably does not support ROSS's theory, ROSS now seeks (1) documents dating back decades and (2) highly confidential and legally irrelevant source code.  ROSS's motion should be denied for the reasons set forth below.

## I.    ROSS's Temporal "Limitations" Are Overbroad and Unduly Burdensome.

      ROSS's motion is based on the flawed logic that, because discovery in *some* antitrust cases is broad, it should be here.  That is not the law.  Even in antitrust cases, the scope of discovery "is not unlimited," and Rule 26 applies.  *In re Diisocyanates Antitrust Litig.*, 2020 WL 7427040, at *1 (W.D. Pa. Dec. 18, 2020).  Thomson Reuters' productions satisfies Rule 26, for three reasons.

      *First*, Thomson Reuters has already made an expansive production, comprising over 500,000 documents and 1.9 million pages, from eight custodians with a combined 170 years' experience in key leadership roles at Thomson Reuters.  And, importantly, Thomson Reuters produced documents—based on agreed search terms and custodians—responsive to each of the RFPs at issue in ROSS's motion.

      *Second*, 2015 is not "an arbitrary limit for discovery," D.I. 396 at 1; it is when ROSS was first established.  And "a discovery request which seeks information prior to the time that the only plaintiff was incorporated is not 'facially' relevant."  *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, 2007 WL 950282, at *3 (D. Kan. Mar. 26, 2007).  Nothing in the cases that ROSS cites holds otherwise.  Thomson Reuters has not tried to limit discovery based

on the statute of limitations. *Am. Health Sys., Inc. v. Liberty Health Sys.*, 1991 WL 30726, at *3 (E.D. Pa. Mar. 5, 1991); *Schenley Indus., Inc. v. N.J. Wine & Spirit Wholesalers Ass'n*, 272 F. Supp. 872, 887 (D.N.J. 1967). Nor is this a case where decades of discovery is necessary to "uncover evidence of invidious design, pattern, or intent." D.I. 396 at 1 (citing cases). Though Thomson Reuters disagrees with the fundamental premise that so-called public law databases and legal search tools are separate products, it readily admits that it has "never offered a commercial license to a collection of judicial opinions, statutes, and regulations, separate from any search functionality." Ex. 1, RFA No. 136 at 5. And ROSS has failed to articulate why any of its proposed adjustments to the temporal scope are warranted:

- <u>1975 – present</u>: ROSS seeks 50 years' of documents about Thomson Reuters' decision to make judicial opinions available online, without persuasive justification. *First*, the Court did not find that Thomson Reuters "offered judicial opinions separately from the digests used to search for judicial opinions"; it merely accepted ROSS's allegations at face value. And ROSS itself alleged that that the earliest form of West's case reporters contained the Key Number System, which ROSS defines as a "Legal Search Tool." *Compare* D.I. 225 n.5, *with* D.I. 396 Ex. A at 2. *Second*, Thomson Reuters has never argued that legal search tools and public law databases are "inseparable," which is, in any event, legally irrelevant. What's left, then, is Thomson Reuters' unremarkable transition of offering judicial opinions in print form to print *and* online through Westlaw—along with the rest of the modern economy.

- <u>1990 – present</u>: ROSS says it wants documents since 1990 to show whether "Plaintiffs offered their public law database separately from the legal search technology and the strategies behind its decision to sell the products separately." D.I. 396 at 2. But that is precisely what Thomson Reuters has agreed to produce from 1990 to present: "documents sufficient to show any business plans, products, and licenses related to its public law database separate from any search technology." *See id.* No such documents exist.

- <u>2000 – present</u>: ROSS wants 25 years' of documents about Thomson Reuters' "investments" and "business choices" with the apparent hope that they will show "whether customers want judicial opinions separate from the legal search engine." *Id.* at 2. Thomson Reuters has already produced documents from the last eight years related to Westlaw investments and strategy *and* any customer requests to license a public law database separate from legal search tools, or vice versa. Further, documents about "market definition, barriers to entry, and market share," *id.*, are irrelevant before ROSS was formed.

- <u>No temporal limit</u>: ROSS contends that ten requests should have *no temporal limitation*. Of the 10, it justifies nine disparate requests as relevant to "market power," without more. *Id.* at 3. For the remaining request, ROSS seeks every contract Thomson Reuters has ever had "with judicial bodies to obtain cases." *Id.* Thomson Reuters' alleged market power— decades before ROSS existed—is irrelevant here. And Thomson Reuters has already produced all of its agreements with courts to publish judicial opinions from 2015 to present. ROSS has not identified a single one that gives Thomson Reuters exclusive access to cases.

*Third*, ROSS's near-boundless temporal requests should be rejected because the "burden or expense of the proposed discovery outweighs its likely benefit." *Eisai Inc. v. Sanofi-Aventis U.S., LLC*, 2011 WL 5416334, at *8 (D.N.J. Nov. 7, 2011) (noting that antitrust "discovery is not without bounds"). ROSS has not, and cannot, explain why it needs documents from decades

before it existed. Nor has it explained how the substantial burden—4-6 weeks just to collect the documents and costing over $400,000 to collect, review and produce, Ex. 2, K. Negangard Decl. at ¶¶9-10, 21—are proportional to the needs of the case, Rule 26(b)(1) (discovery must be "proportional to the needs of the case, considering ... the amount in controversy"). ██████████████████████ The delay and expense of ROSS's request alone justify denial.

## II.   Thomson Reuters' "Source Code" Is Irrelevant to ROSS's Claim.

The Court has already rejected ROSS's request to access Thomson Reuters' "source code" once before, *compare* D.I. 192 at 5-6, *with* D.I. 201 at 2, and should do so again. Thomson Reuters uses code, like every internet-based company, to implement Westlaw. But *how* Thomson Reuters's code works is irrelevant. ROSS first contends that "source code can show that 'as a matter of actual practice' there are two separate products." D.I. 396 at 3 (citing *Jefferson Parish*). That is not the question. The question is whether "there is a sufficient demand for the purchase of [tied product] separate from [the tying product] to identify a distinct product market." *Jefferson Par. Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 21-22 (1984). How Thomson Reuters' code works to deliver Westlaw, a legal research platform, says nothing about customer demand for standalone public law databases or legal search tools.

ROSS next argues that "source code" is relevant in tying cases, relying on two cases about Microsoft. They are inapposite. *Caldera* involved an allegation that Windows 95 was a "technological tie" of Microsoft's MS-DOS and Windows 7.0 operating systems—"products formerly sold [separately]." 72 F. Supp. 2d 1295, 1320 (D. Utah 1999). Microsoft responded "that the requirements for an unlawful 'technological tying' arrangement ha[d] not been satisfied" because "Windows 95 is ... a new product with vast technological improvements over the prior products." *Id.* That is far from this case. Westlaw is not a new product that combines two products previously sold separately, and Thomson Reuters is not arguing that they are. Instead, Thomson Reuters contends that public law databases and legal search tools are simply components of a single integrated product. *Microsoft* is no more relevant. 253 F.3d 34 (D.C. Cir. 2001). Thomson Reuters has never argued that its public law database and legal search tools are "technologically interdependent" or cannot be technologically separated. *See* D.I. 396 at 3. And Thomson Reuters' technological implementation of Westlaw is irrelevant to ROSS's tying claim. Customers' use of Westlaw is governed by Thomson Reuters' Westlaw license and licensing practices. The alleged tie is not dictated by Thomson Reuters' source code.

Further, and perhaps most importantly, Thomson Reuters' source code is commercially sensitive and thus ROSS "bears the burden of showing that it is relevant to the issues in the action." *Fanning v. Honeywell Aerospace*, 2016 WL 11652957, at *1 (M.D. Tenn. Aug. 12, 2016). It has not. Instead, ROSS—a competitor Thomson Reuters believes has misappropriated its copyrighted material once—is digging for confidential information simply for the sake of it. Indeed, Thomson Reuters offered to consider a stipulation that it does not separate its collection of law from search functionality. ROSS refused to even consider it.

## III.   Conclusion

Thomson Reuters respectfully requests that the Court deny ROSS's motion.

The Honorable Stephanos Bibas  
March 24, 2023

Page 4

Respectfully,

Michael Flynn (# 5333)

MJF/rah  
Enclosures  
cc:     All Counsel of Record (via electronic mail)