# **EXHIBIT 1**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION,<br><br>      Plaintiffs and Counterdefendants,<br><br>   v.<br><br>ROSS INTELLIGENCE INC.,<br><br>      Defendant and Counterclaimant. | C.A. No. 20-613 (SB) |

**PLAINTIFFS AND COUNTERDEFENDANTS THOMSON REUTERS ENTERPRISE CENTRE GMBH AND WEST PUBLISHING CORPORATION'S RESPONSES AND OBJECTIONS TO DEFENDANT AND COUNTERCLAIMANT ROSS INTELLIGENCE INC.'S FIRST SET OF COUNTERCLAIM REQUESTS FOR ADMISSION (NO. 136)**

Pursuant to Federal Rules of Civil Procedure 26 and 36 and the Local Rules of the United States District Court for the District of Delaware (the "Local Rules" and each a "Local Rule"), Plaintiffs and Counterdefendants Thomson Reuters Enterprise Centre GmbH ("Thomson Reuters") and West Publishing Corporation ("West") (collectively "Plaintiffs"), hereby respond to Defendant and Counterclaimant ROSS Intelligence Inc.'s ("Defendant") First Set of Counterclaim Requests for Admission (No. 136), served on September 20, 2022 (the "Requests" and each individually, a "Request") in the above-captioned action ("Litigation") as follows:

**GENERAL OBJECTIONS**

1.   Plaintiffs' discovery and investigation in connection with this case is ongoing. Plaintiffs' response is based on information gathered as of the time of this response. Plaintiffs reserve the right to amend or supplement their response if and when additional information is obtained.

2. Plaintiffs object to the Request to the extent that it purports to impose obligations beyond those set forth in the Federal Rules of Civil Procedure, the Local Rules, or other applicable law.

3. Plaintiffs object to the Request to the extent that it seeks information that is subject to the attorney-client privilege, the work-product privilege, and/or any other applicable privilege or protection. Plaintiffs do not waive, intend to preserve, and are preserving the attorney-client privilege, the work-product privilege, and every other applicable privilege or protection with respect to any information protected by such a privilege or protection.

4. Plaintiffs object to the Request to the extent that it seeks proprietary or confidential business information, trade secrets, or other sensitive information, or documents that contain information that is non-responsive to the Requests. To the extent that the response requires the disclosure of any non-privileged proprietary or confidential information, trade secrets or other sensitive information, Plaintiffs will provide such information pursuant to the Protective Order governing the parties to this Litigation. D.I. 48. By responding to the Request, Plaintiffs do not waive, intend to preserve, and are preserving all of their rights to assert that any and all such information is confidential. Information furnished by Plaintiffs shall be used only in connection with this Litigation and shall not be disclosed, in whole or in part, to any person or entity apart from the parties and their representatives in this Litigation, and only as permitted by the Protective Order.

5. Plaintiffs object to the Request to the extent that it seeks information that Defendant equally may otherwise obtain from public sources, or with less burden and expense by using other means of discovery.

6. In providing this response, Plaintiffs do not in any way waive or intend to waive, but rather are preserving and intend to preserve:

    (i) All objections as to competency, authenticity, relevancy, materiality, and admissibility;

    (ii) All rights to object on any grounds to the use in any subsequent proceedings of any of the responses or information contained herein, including but not limited to the right to object to the trial of this or any other action;

    (iii) All objections as to vagueness and ambiguity; and

    (iv) All rights to object on any grounds to any further requests.

7. Plaintiffs object to the Request to the extent that it seeks information set forth in documents that are outside Plaintiffs' possession, custody, and control.

8. The response below shall not be interpreted to concede the truth of any factual assertion or implication contained in the Request. Plaintiffs' response to the Request in no way constitutes an admission or acknowledgment by Plaintiffs as to the relevancy, materiality, or admissibility of any of the information contained there, and Plaintiffs expressly reserve their rights to object as such.

9. Plaintiffs object to the Request to the extent that it unfairly seeks to restrict the facts upon which Plaintiffs may rely at trial. Discovery has not been completed and Plaintiffs are not necessarily in possession of all the facts and documents upon which Plaintiffs intend to rely. The response submitted herewith is tendered to Defendant with the reservation that the response is submitted without limiting the evidence on which Plaintiffs may rely to support the contentions they may assert at the trial on this Litigation and to rebut or impeach the contentions, assertions,

and evidence that Defendant may present. Plaintiffs reserve the right to supplement or amend this response at a future date.

10.     Plaintiffs object to the Request as overly broad to the extent that the Request defines the term "THOMSON REUTERS" to include, "its present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on its behalf." For the purposes of responding to the Request, Plaintiffs will construe this term to mean solely Thomson Reuters Enterprise Centre GmbH, and not any other person or entity.

11.     Plaintiffs object to the Request as overly broad to the extent that the Request defines the term "WEST" to include, "its present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on its behalf." For the purposes of responding to the Request, Plaintiffs will construe this term to mean solely West Publishing Corporation, and not any other person or entity.

12.     Plaintiffs object to the Request as overly broad to the extent that the Request defines the terms "YOU," "YOUR," and "PLAINTIFFS" to incorporate the definitions of the terms "THOMSON REUTERS" and "WEST." The terms "WEST" and "THOMSON REUTERS" are improperly defined to include West Publishing Corporation's and Thomson Reuters Enterprise Centre GmbH's, "present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on [their] behalf." For the purposes of responding to the Request, Plaintiffs will construe the terms "YOU," "YOUR," and

4

"PLAINTIFFS" to mean solely Thomson Reuters Enterprise Centre GmbH and West Publishing Corporation, and not any other person or entity.

13.     Plaintiffs object to the Request to the extent it is not limited to the time relevant to this Litigation.

14.     Plaintiffs incorporate the foregoing General Objections into its response to the Request as set forth below.

## RESPONSES AND OBJECTIONS TO REQUESTS FOR ADMISSION

**REQUEST FOR ADMISSION NO. 136:**

Admit that you have never licensed YOUR PUBLIC LAW DATABASE separately from YOUR LEGAL SEARCH TOOLS.

**RESPONSE TO REQUEST FOR ADMISSION NO. 136:**

Plaintiffs incorporate by reference the above-stated General Objections as if fully set forth herein.  Plaintiffs specifically object to ROSS's definitions of Public Law Database and Legal Search Tools because they incorporate disputed questions of fact and law that will be the subject of expert testimony.  Plaintiffs further object to this Request to the extent it implies or assumes that Plaintiffs have separate Public Law Database and Legal Search Tools.  Plaintiffs deny that they have a Public Law Database separate and apart from Westlaw, a legal research platform.  Plaintiffs deny that they have Legal Search Tools separate and apart from Westlaw, a legal research platform.  Plaintiffs deny that there are separate product markets or consumer demand for so-called Public Law Databases and Legal Search Tools.  Subject to, as limited by, and without waiver of the foregoing objections and denials, Plaintiffs admit that they have never offered a commercial license to a collection of judicial opinions, statutes, and regulations, separate from any search functionality.

|  |  |
|---|---|
| OF COUNSEL:<br><br>Dale M. Cendali<br>Joshua L. Simmons<br>Eric A. Loverro<br>KIRKLAND & ELLIS LLP<br>601 Lexington Avenue<br>New York, NY  10022<br>(212) 446-4800<br><br>Miranda D. Means<br>KIRKLAND & ELLIS LLP<br>200 Clarendon Street<br>Boston, MA 02116<br>(617) 385-7500<br><br>Daniel E. Laytin<br>Christa C. Cottrell<br>Alyssa C. Kalisky<br>Cameron Ginder<br>KIRKLAND & ELLIS LLP<br>300 North LaSalle<br>Chicago, IL  60654<br>(312) 862-2000<br><br> October 20, 2022 | MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br><br>*/s/ Michael J. Flynn*<br><br>Jack B. Blumenfeld (#1014)<br>Michael J. Flynn (#5333)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE  19899<br>(302) 658-9200<br>jblumenfeld@morrisnichols.com<br>mflynn@morrisnichols.com<br><br>*Attorneys for Plaintiffs and Counterdefendants*<br>*Thomson Reuters Enterprise Center GmbH*<br>*and West Publishing Corporation* |

6

## CERTIFICATE OF SERVICE

I hereby certify that on October 20, 2022, copies of the foregoing were caused to be served upon the following in the manner indicated:

| | |
|---|---|
| David E. Moore, Esquire<br>Bindu Palapura, Esquire<br>POTTER ANDERSON & CORROON LLP<br>Hercules Plaza, 6th Floor<br>1313 North Market Street<br>Wilmington, DE  19801<br>*Attorneys for Defendant and Counterclaimant* | *VIA ELECTRONIC MAIL* |
| Mark A. Klapow, Esquire<br>Lisa Kimmel, Esquire<br>Crinesha B. Berry, Esquire<br>CROWELL & MORING LLP<br>1001 Pennsylvania Avenue NW<br>Washington, DC  20004<br>*Attorneys for Defendant and Counterclaimant* | *VIA ELECTRONIC MAIL* |
| Gabriel M. Ramsey, Esquire<br>Jacob Canter, Esquire<br>Warrington Parker, Esquire<br>CROWELL & MORING LLP<br>3 Embarcadero Center, 26th Floor<br>San Francisco, CA  94111<br>*Attorneys for Defendant and Counterclaimant* | *VIA ELECTRONIC MAIL* |

*/s/ Michael J. Flynn*
_____
Michael J. Flynn (#5333)

# **EXHIBIT 2**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION,<br><br>   Plaintiffs/ Counterdefendants,<br>  v.<br>ROSS INTELLIGENCE INC.,<br><br>   Defendant/Counterclaimant. | C.A. No. 20-613-SB<br><br>**DECLARATION OF KEVIN NEGANGARD**<br><br>Judge:   Hon. Stephanos Bibas |

I, Kevin Negangard, declare as follows:

1. I am a Managing Director at Alvarez & Marsal Disputes and Investigations, LLC ("A&M"), a global consulting firm. I have over 19 years of experience in e-discovery.

2. A&M works at the direction of counsel for Thomson Reuters Enterprise Centre GMBH and West Publishing Corporation ("Thomson Reuters"), including providing e-discovery services in connection with the above-captioned litigation. I lead the team of A&M professionals assisting Thomson Reuters and its counsel in e-discovery efforts. In particular, A&M has assisted with the collection of millions of records from Thomson Reuters and the efforts to effectively search those documents, resulting in the production of nearly 534,000 documents and over 1.9 million pages.

3. I have reviewed the March 16, 2023 letter from ROSS requesting that Thomson Reuters collect, review, and produce certain documents in accordance with the stated temporal limitations, or in some case lack thereof. I submit this declaration in support of Thomson Reuters's response to that letter, filed contemporaneously herewith.

4. Except as otherwise stated, all facts herein are based on my personal knowledge or information learned during the course of our engagement with Thomson Reuters.

5. If called as a witness, I would testify as follows.

## Extending Collections for Custodian Data Sources

6. As part of custodial collection efforts, Thomson Reuters collected from more than 8 data sources, which, significantly, included all email created between January 1, 2015 through December 31, 2022 currently available within the active corporate email environment for the agreed upon custodians.

7. Thus far, A&M has provided professional services to Thomson Reuters related to the collection, analysis, search term application, review, and production of responsive documents with fees totaling approximately $110,00. In addition, I understand that the first level review costs to date totaled over $150,000.

8. I understand ROSS has requested certain categories of communications with no temporal limit, and other categories dating back to 1975, 1990, and 2000. Given the industry standard way of collecting data, this would require that Thomson Reuters collect *all* available email data for the parties' 8 agreed-to custodians in order to effectively search the available documents for relevant materials in each category. In other words, there is not an accurate way to simply collect limited communications related to the specific categories at issue. Those must be located *after* collection.

9. If Thomson Reuters were ordered to collect and review communications with no temporal scope, Thomson Reuters would need to significantly extend its collection efforts related to custodian email data sources. Based on our specific collections experience in this case and my collections experience more generally, I estimate it would take approximately four to six weeks for this data to be identified, collected, validated, and processed, before being made available for attorney review: *first*, approximately one to two weeks to schedule, coordinate, and complete the data collection workplan with the appropriate IT administration team members; *second*, approximately one to two weeks to access and transfer the data and conduct quality-control validation on the collections; and *third*, approximately two weeks to prepare and process the collected data for search term application and attorney review.

10. While some of the data would be made available to attorneys on a rolling basis, a substantial portion of the data would not be available until the end of that four-to-six week window.

## Searching and Attorney Review

11. Following the collection process, the data must be processed, search terms applied against it, and the documents reviewed by attorneys. The amount of time required to conduct those steps depends on the volume of data collected, the number of documents remaining after deduplication, and the number of search term hits that are generated after search terms limiters are applied.

12. I was asked to estimate the volume of "hits" that would be generated (*i.e.*, the number of documents that attorneys would need to review) if Thomson Reuters were ordered to review and produce documents from Thomson Reuters custodians from an extended data range that hit on the agreed upon search terms.

13. There are 35 agreed-upon search terms. I understand that all 8 of Thomson Reuters' custodians are presently employed by the company. To prepare an estimate, I was asked to assume the relevant time period would encompass the full employment period for each custodian.

14. To prepare that estimate, I calculated the number of hits that were generated by applying the 35 search terms against the custodial data for 8 custodians, from January 1, 2015 to December 31, 2022. The calculated hit rate was then applied to the estimated volume of documents from the 2014 and prior email data set for the 8 custodians.

15. Based on these estimates, I anticipate that extending collections with no temporal scope would require Thomson Reuters to review, at minimum, an additional 64,000 documents.

16. I was also asked to estimate the number of attorney hours it would take to review the approximately 64,000 documents. This calculation is a function of the

3

number of levels of review, the number of attorneys available to conduct that review, the average number of documents reviewed per hour, the number of hours those attorneys review documents per week, and the first level responsiveness rate.

17. As is typical practice, Thomson Reuters would conduct two levels of review of the documents that hit on search terms. I was asked to assume that attorneys would review approximately 25 documents per hour during first level and second level review.

18. Averaging 25 documents per hour, a first level review would require at least approximately 2,560 attorney hours (*i.e.*, 64,000 documents divided by 25 documents per hour = 2,560 attorney hours). Each hour of first level review is billed at $47 per hour. Based on the number of attorney hours associated with the first level review effort, I would estimate the fees associated with the first level review to total at least $120,000.

19. I was asked to assume the first level responsiveness rate would be 35%. Assuming that is the case, the number of documents requiring second level review would be approximately 22,400. I understand that this second level review would be conducted by Thomson Reuters' outside counsel, Kirkland & Ellis ("Kirkland") and based on their past efforts a 30 document per hour rate would be expected. Accordingly, second level review would take another at least 746 attorney hours (*i.e.*, 64,000 documents multiplied by 35% = 22,400 documents; 22,400 documents divided by 30 documents per hour = 746 hours). The estimate does not capture the time needed to process and brand a production.

20. Kirkland's rates are confidential. However, using the U.S. Department of Justice's Attorney Fee Matrix (https://www.justice.gov/file/1461316/download), which I understand Courts accept for purposes of fee recovery motions, we can assume second level review would cost well over $275,000 (*i.e.*, 746 attorney hours multiplied by the 2020-21 DOJ rate for an attorney with 2-3 years of experience).

## **CONCLUSION**

21. Based on the above estimates, and inclusive of the time needed to re-collect and process custodial data, I estimate it would cost another $425,000, at a minimum, to collect, review, and produce the documents ROSS is requesting. This is in addition to the over $225,000 in fees and expenses Thompson Reuters has already spent responding to ROSS's discovery requests to date.

       Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

       Executed this 24th day of March, 2023.

*[signature]*

Kevin Negangard