# EXHIBIT A

**Canter, Jacob**

| | |
|---|---|
| **From:** | Barsanti, Vanessa <vanessa.barsanti@kirkland.com> |
| **Sent:** | Thursday, April 13, 2023 2:37 PM |
| **To:** | Canter, Jacob; Steinberg, Joachim; Poueymirou, Margaux |
| **Cc:** | Ginder, Cameron; Means, Miranda; #Thomson-Ross; mflynn@morrisnichols.com; Liu, Shira; ROSS-AT Team; *dmoore@Potteranderson.com1; Ramsey, Gabriel; Laytin, Daniel E.; *bpalapura@potteranderson.com; Brown, Andrew L. |
| **Subject:** | RE: West v ROSS | List of Custodians |

External Email

Jacob,

Thank you for confirming ROSS's agreement on this compromise. Thomson Reuters is and has been working cooperatively with ROSS to design a reasonable search of documents, subject to Thomson Reuters' responses and objections to written discovery, and further modifications/agreements made through the parties various meet and confers and correspondence. Thomson Reuters does not agree that any further requests for additional terms or custodians is appropriate.

As to a date certain for production, I can't recall - were you not on the parties' meet and confer a couple of days ago? Joachim and I discussed TR's production of pre-2015 documents for the first round of agreed-to custodians and I confirmed we'd be making a production of around 30,000-40,000 documents this week, and we would use best efforts to produce the remaining documents next week, but it might trickle into the following week. ROSS did not express concern with this. What is the impasse?

**Vanessa Barsanti**
She/Her/Hers

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 2205
**F** +1 312 862 2200

vanessa.barsanti@kirkland.com

**From:** Canter, Jacob <JCanter@crowell.com>
**Sent:** Thursday, April 13, 2023 2:12 PM
**To:** Barsanti, Vanessa <vanessa.barsanti@kirkland.com>; Steinberg, Joachim <JSteinberg@crowell.com>; Poueymirou, Margaux <MPoueymirou@crowell.com>
**Cc:** Ginder, Cameron <cameron.ginder@kirkland.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; Liu, Shira <SLiu@crowell.com>; ROSS-AT Team <ROSS-ATTeam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; Ramsey, Gabriel <GRamsey@crowell.com>; Laytin, Daniel E. <dlaytin@kirkland.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>; Brown, Andrew L. <abrown@potteranderson.com>
**Subject:** RE: West v ROSS | List of Custodians

Thank you for the email. We agree to your proposal regarding custodians. However, ROSS needs Plaintiffs to affirm in writing that this counterproposal is the result of their reasonable search for documents responsive to the requests in Counterclaim RFP Sets 1, 2, and 3. In addition, ROSS reserves the right to seek additional documents that are responsive to the requests based either on the use of additional search terms or the identification of additional custodians.

Separately, we have asked that Plaintiffs provide a date certain for production.  We believe we have reached an impasse and will need to raise that issue with the Court.  Finally, in light of what we view to be a vastly larger production of documents, we propose that the current schedule be modified.  We will provide a proposal tomorrow.

Kind regards,

**Jacob Canter**
Pronouns: he/him/his
Crowell & Moring LLP
jcanter@crowell.com
+1.415.365.7210 direct   |   +1.415.385.3716 mobile

---

**From:** Barsanti, Vanessa <vanessa.barsanti@kirkland.com>
**Sent:** Wednesday, April 12, 2023 4:29 PM
**To:** Steinberg, Joachim <JSteinberg@crowell.com>; Poueymirou, Margaux <MPoueymirou@crowell.com>
**Cc:** Canter, Jacob <JCanter@crowell.com>; Ginder, Cameron <cameron.ginder@kirkland.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; Liu, Shira <SLiu@crowell.com>; ROSS-AT Team <ROSS-ATTeam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; Ramsey, Gabriel <GRamsey@crowell.com>; Laytin, Daniel E. <dlaytin@kirkland.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>; Brown, Andrew L. <abrown@potteranderson.com>
**Subject:** RE: West v ROSS | List of Custodians

External Email

All,

As I relayed to Margaux over the phone before hopping on a flight, Thomson Ross is willing to offer what it considers a more than fair and reasonable compromise with respect to this custodian dispute.

TR is willing to collect and produce responsive non-privileged emails utilizing the prior agreed to search terms from all of the requested custodians with only 2 exceptions, detailed below. TR reserves the right to work with ROSS to amend those search terms, or address irrelevant time periods for individual custodians, to the extent they prove burdensome or otherwise fail to be narrowly tailored to responsive information within these custodians' files.

Bob Biancamano
ROSS expressed interest in Mr. Biancamano given his work on Project Indigo. As ROSS itself indicated, Mr. Biancamano's work on Project Indigo overlapped with Kati Katzenmeyer's. I spoke with Ms. Katzenmeyer, and she confirmed that she directed Mr. Biancamano's market research work on the project. As such, we believe his information would be largely duplicative, and therefore collecting and producing his information would be unreasonably burdensome/disproportionate to its value.

Andrea Seitz
ROSS expressed interest in Ms. Seitz due to her role in competitive intelligence research. I spoke with Christine Post, the Senior Director of Market Research & Competitive Intelligence, who confirmed that Ms. Seitz worked at her direction and that Ms. Post would have Ms. Seitz's work product. Accordingly, because Ms. Post is already an agreed to custodian, collecting and producing Ms. Seitz's communications would be largely duplicative, and therefore is unreasonably burdensome/disproportionate to its value.

For the avoidance of doubt, this would mean that subject to the above reservations re terms and time period, TR would collect and produce for the following custodians:

1. David Curle (Mr. Curle left TR prior to ROSS's assertion of claims, and his PST file is no longer available. In lieu of collecting his PST, TR would agree to search all other agreed to custodians' files for communications with Mr. Curle that hit on the agreed to search terms. I understand ROSS also requests his internal blog. I am not currently aware of whether such still exists, but will inquire regarding its availability.)
2. Kati Katzenmeyer
3. Audrey Zhang
4. Lauren Sazenski
5. Mark Hoerr
6. Vinod Kumar
7. Rachel Vesely
8. Aimee Doles
9. Jenny Deutsch
10. Ben Davis
11. Eric Gleason
12. Maria Redmond
13. Joe Dvorkin
14. legalmarketingleadership@thomson.com - as we previously conveyed, this is simply a listserv. We agree to add this email address as a search term.

Please let us know if this resolves the parties' dispute.

**Vanessa Barsanti**
She/Her/Hers

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 2205
**F** +1 312 862 2200

vanessa.barsanti@kirkland.com

---

**From:** Steinberg, Joachim <JSteinberg@crowell.com>
**Sent:** Tuesday, April 11, 2023 8:41 AM
**To:** Laytin, Daniel E. <dlaytin@kirkland.com>; Ramsey, Gabriel <GRamsey@crowell.com>; Barsanti, Vanessa <vanessa.barsanti@kirkland.com>
**Cc:** Poueymirou, Margaux <MPoueymirou@crowell.com>; Canter, Jacob <JCanter@crowell.com>; Ginder, Cameron <cameron.ginder@kirkland.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; Liu, Shira <SLiu@crowell.com>; ROSS-AT Team <ROSS-ATTeam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>; Brown, Andrew L. <abrown@potteranderson.com>
**Subject:** RE: West v ROSS | List of Custodians

Daniel,

We're available at 1 pm PT/4 pm ET.

Best regards,
Joachim

**Joachim B. Steinberg**

Pronouns: he/him/his
Crowell & Moring LLP
jsteinberg@crowell.com
+1.415.365.7461 direct | +1.917.575.6244 mobile

---

**From:** Laytin, Daniel E. <dlaytin@kirkland.com>
**Sent:** Tuesday, April 11, 2023 7:18 AM
**To:** Ramsey, Gabriel <GRamsey@crowell.com>; Barsanti, Vanessa <vanessa.barsanti@kirkland.com>
**Cc:** Steinberg, Joachim <JSteinberg@crowell.com>; Poueymirou, Margaux <MPoueymirou@crowell.com>; Canter, Jacob <JCanter@crowell.com>; Ginder, Cameron <cameron.ginder@kirkland.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; Liu, Shira <SLiu@crowell.com>; ROSS-AT Team <ROSS-ATTeam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>; Brown, Andrew L. <abrown@potteranderson.com>
**Subject:** RE: West v ROSS | List of Custodians

External Email

Gabriel:

Your email contains numerous inflammatory accusations and allegations against our team and our client:

- Our client has not violated the "public interest in a breathtakingly harmful and persistent way."
- Neither our team nor our client "has been suppressing and hiding evidence."
- No one on our team has engaged in any violations of any of our duties as lawyers.
- Neither our team nor our client has engaged in any "obfuscation."
- Neither our team nor our client has failed to conduct any "proper engagement" in this meet and confer.
- None of our team's actions in this meet and confer call into question any of her or his "professional responsibilities."

These accusations are baseless and inappropriate.

In addition, your threat of "sanctions" and vague reference to "decisions" regarding our team's "professional responsibilities" are similarly inappropriate.

Please retract each of your statements by email this morning.

Our clients have a dispute, which we have been and will continue to resolve in a professional way.

Given the current situation, I would like to participate in the meet and confer on the underlying discovery issue. I am unavailable at the scheduled time of noon eastern so we will need to reschedule.

Our whole team is available today between 2:30 and 4 and between 4 and 5, both eastern.

Please advise as to your team's availability during those time periods.

Thanks,

Dan

**Daniel E. Laytin**

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 2198
**F** +1 312 862 2200

daniel.laytin@kirkland.com

---

**From:** Ramsey, Gabriel <GRamsey@crowell.com>
**Sent:** Monday, April 10, 2023 9:21 PM
**To:** Barsanti, Vanessa <vanessa.barsanti@kirkland.com>
**Cc:** Steinberg, Joachim <JSteinberg@crowell.com>; Poueymirou, Margaux <MPoueymirou@crowell.com>; Canter, Jacob <JCanter@crowell.com>; Ginder, Cameron <cameron.ginder@kirkland.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; Liu, Shira <SLiu@crowell.com>; ROSS-AT Team <ROSS-ATTeam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>; Brown, Andrew L. <abrown@potteranderson.com>
**Subject:** Re: West v ROSS | List of Custodians

Vanessa,

Greetings. We haven't had the pleasure of engaging and I am sorry to have to interrupt your evening.  This is a very important matter where your client has injured the public interest in a breathtakingly harmful and persistent way.  I hope your team understands that.  We are aware that your client has been suppressing and hiding evidence.  We understand that you are acting at their direction, so the ultimate sanction will be directed there.  But to avoid any further violation of your duties as a lawyer I would appreciate if you join all our our team's requests and cease obfuscation.  This can begin with with proper engagement of Mr. Steinberg's request below. You are going to have to make some decisions regarding your professional responsibilities but I trust you will make the right decisions. We sincerely look forward to your response.

Sincerely,

GMR

Gabriel M. Ramsey

gramsey@crowell.com<mailto:GRamsey@crowell.com>

+1.415.365.7207 direct

|

+1.415.533.0783 mobile

Crowell & Moring LLP

3 Embarcadero Center

26th Floor

San Francisco

,

CA

94111

Crowell

Collaboration Powers Success

crowell.com<https://urldefense.com/v3/__http://crowell.com/__;!!MPAZj1r9Mghpww!FtFATfgwNmKkX8MhcDG
OV6CMuUpbWGwvzMb3MZ235bLWeU-PJIlyjcoY1t2oMII20xAHw0x18BeiMuUsnRe6LQ$>

On Apr 10, 2023, at 6:59 PM, Barsanti, Vanessa <vanessa.barsanti@kirkland.com> wrote:

  External Email

Joachim,

As to time period, it's not particularly clear to me why my representation as an officer of the court is somehow
unacceptable, but the information I provided you on time period is publicly available and in many cases
substantiated by the hundreds of thousands of documents already produced to ROSS.

As to scheduling, I appreciate the accommodation as you put it, but I would point out that it was in fact a religious holiday weekend that many, including myself, travel for to be with loved ones. I was unavailable for a mere two business days to speak on the phone, but even in that time I worked to get you a proposed compromise by email. I understand you are ultimately going to choose to treat tomorrow as a final meet and confer, but we maintain it is premature.

Ultimately this is quite simple: if ROSS has not changed its position, then what is the compromise it is proposing?

Vanessa Barsanti
-----------------------------------------------------
KIRKLAND & ELLIS LLP
300 North LaSalle, Chicago, IL 60654<x-apple-data-detectors://1/1>
T +1 312 862 2205<tel:+1%20312%20862%202205>
F +1 312 862 2200<tel:+1%20312%20862%202200>
-----------------------------------------------------
vanessa.barsanti@kirkland.com<mailto:garvin.choa@kirkland.com>

On Apr 10, 2023, at 6:36 PM, Steinberg, Joachim <JSteinberg@crowell.com> wrote:


Vanessa, When we spoke last week, we indicated we could consider compromises. The one you have offered is unacceptable. That is not a change in our position. We do not agree to these time limitations because once again you are asking us to
Vanessa,

When we spoke last week, we indicated we could consider compromises. The one you have offered is unacceptable. That is not a change in our position. We do not agree to these time limitations because once again you are asking us to take it on faith that those are the only custodians with relevant information and that those are the only time periods that matter. But Plaintiffs have an obligation to respond to our requests in full, and we are not in a position to continue to guess at what the correct custodian list or years would be, and based on the deficiencies in the last production, cannot accept your representations.

We stated last week that we would consider tomorrow's meeting a final meet and confer. We only offered to push it out to Tuesday to accommodate your travel schedule. We also pointed out that we have, throughout this litigation, agreed to delay final meet and confers only to then face timeliness arguments from your side when we did approach the Court. If we cannot reach an agreement tomorrow, we will raise this issue with the Court.

Best regards,
Joachim

Joachim B. Steinberg



Pronouns: he/him/his



Crowell & Moring LLP


jsteinberg@crowell.com<mailto:JSteinberg@crowell.com>

+1.415.365.7461 direct

  |

+1.917.575.6244 mobile

From: Barsanti, Vanessa <vanessa.barsanti@kirkland.com>
Sent: Monday, April 10, 2023 5:03 PM
To: Steinberg, Joachim <JSteinberg@crowell.com>; Poueymirou, Margaux <MPoueymirou@crowell.com>
Cc: Canter, Jacob <JCanter@crowell.com>; Ginder, Cameron <cameron.ginder@kirkland.com>; Means,
Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>;
mflynn@morrisnichols.com; Liu, Shira <SLiu@crowell.com>; ROSS-AT Team <ROSS-
ATTeam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>;
*bpalapura@potteranderson.com <bpalapura@potteranderson.com>; Brown, Andrew L.
<abrown@potteranderson.com>
Subject: RE: West v ROSS | List of Custodians

 External Email
Joachim,

When we spoke last week you indicated that there would be room for compromise on the requested list of
additional custodians. By way of example only, as we walked through each custodian, you mentioned that
ROSS was interested in both Kati Katzenmeyer and Bob Biancamano for their work in relation to Project
Indigo, and that it was willing to compromise on one or the other. The only thing I can garner from your last
note is that ROSS is demanding its full list of custodians. If that is not the case then I welcome you to clear up
the issue with a counterproposal.

Further, I would like to understand ROSS's objection to the proposed time scope for the individuals included in
my prior email.  For Audrey Zhang, we proposed searching from April 2016 forward because that is the time
frame in which she has been in Legal Customer Sales & Experience Finance. Prior to that she was a lower
level financial analyst and staff accountant. Neither of which are relevant to the reason ROSS indicated it
desired her emails, which as I understood it was in relation to how pricing decisions are implemented based on
different market segmentations. With respect to Mark Hoerr, ROSS alleged his relevancy to be his leadership
in the pricing sector and his ability to give final approval on pricing decisions. Prior to May 2016, our proposed
searching start date, Mr. Hoerr was also in financial analyst positions related to contract value management.
His role in strategic pricing did not begin until May 2016. Lastly, for Ben Davis, he began his tenure at
Thomson Reuters selling ProDoc, which is a document automation system not at issue in this matter. ROSS
indicated it was interested in him due to his role in strategy and pricing, including any work on direct sales of
Westlaw. He was not an account representative until January 2012, the date at which I proposed searching his
emails. These temporal issues are not limited to the three custodians listed above, but rather run deep into
ROSS's proposed custodian additions. Please be prepared to discuss this issue tomorrow.

Again, we do not agree that a final meet and confer is appropriate at this time, especially in light of ROSS's change in position.

Vanessa Barsanti
She/Her/Hers
-------------------------------------------------------
KIRKLAND & ELLIS LLP
300 North LaSalle, Chicago, IL 60654
T +1 312 862 2205
F +1 312 862 2200
-------------------------------------------------------
vanessa.barsanti@kirkland.com<mailto:garvin.choa@kirkland.com>

From: Steinberg, Joachim <JSteinberg@crowell.com<mailto:JSteinberg@crowell.com>>
Sent: Monday, April 10, 2023 4:03 PM
To: Barsanti, Vanessa <vanessa.barsanti@kirkland.com<mailto:vanessa.barsanti@kirkland.com>>;
Poueymirou, Margaux <MPoueymirou@crowell.com<mailto:MPoueymirou@crowell.com>>
Cc: Canter, Jacob <JCanter@crowell.com<mailto:JCanter@crowell.com>>; Ginder, Cameron
<cameron.ginder@kirkland.com<mailto:cameron.ginder@kirkland.com>>; Means, Miranda
<miranda.means@kirkland.com<mailto:miranda.means@kirkland.com>>; #Thomson-Ross <thomson-
ross@kirkland.com<mailto:thomson-ross@kirkland.com>>;
mflynn@morrisnichols.com<mailto:mflynn@morrisnichols.com>>; Liu, Shira
<SLiu@crowell.com<mailto:SLiu@crowell.com>>; ROSS-AT Team <ROSS-
ATTeam@crowell.com<mailto:ROSS-ATTeam@crowell.com>>;
*dmoore@Potteranderson.com1<mailto:*dmoore@Potteranderson.com1
<dmoore@Potteranderson.com<mailto:dmoore@Potteranderson.com>>;
*bpalapura@potteranderson.com<mailto:*bpalapura@potteranderson.com
<bpalapura@potteranderson.com<mailto:bpalapura@potteranderson.com>>; Brown, Andrew L.
<abrown@potteranderson.com<mailto:abrown@potteranderson.com>>
Subject: RE: West v ROSS | List of Custodians

Vanessa, We do not agree to limit the list of custodians, or the temporal limitations. Given the discovery schedule in this case, which was proposed by Plaintiffs, despite ROSS's repeated statements that a longer schedule would be more appropriate,

Vanessa,

We do not agree to limit the list of custodians, or the temporal limitations. Given the discovery schedule in this case, which was proposed by Plaintiffs, despite ROSS's repeated statements that a longer schedule would be more appropriate, we need to have our final meet and confer on this issue as scheduled tomorrow on April 11, 2023.

A search for "legalmarketingleadership@thomson.com<mailto:legalmarketingleadership@thomson.com>" in Christine Post's documents is acceptable to us, provided you can confirm that any emails she might have deleted would also be captured by that search.

Kind regards,
Joachim

Joachim B. Steinberg

Pronouns: he/him/his

Crowell & Moring LLP

jsteinberg@crowell.com<mailto:JSteinberg@crowell.com>

+1.415.365.7461 direct

|

+1.917.575.6244 mobile

From: Barsanti, Vanessa <vanessa.barsanti@kirkland.com<mailto:vanessa.barsanti@kirkland.com>>
Sent: Monday, April 10, 2023 1:29 PM
To: Poueymirou, Margaux <MPoueymirou@crowell.com<mailto:MPoueymirou@crowell.com>>
Cc: Canter, Jacob <JCanter@crowell.com<mailto:JCanter@crowell.com>>; Ginder, Cameron
<cameron.ginder@kirkland.com<mailto:cameron.ginder@kirkland.com>>; Means, Miranda
<miranda.means@kirkland.com<mailto:miranda.means@kirkland.com>>; #Thomson-Ross <thomson-
ross@kirkland.com<mailto:thomson-ross@kirkland.com>>;
mflynn@morrisnichols.com<mailto:mflynn@morrisnichols.com>>; Steinberg, Joachim
<JSteinberg@crowell.com<mailto:JSteinberg@crowell.com>>; Liu, Shira
<SLiu@crowell.com<mailto:SLiu@crowell.com>>; ROSS-AT Team <ROSS-
ATTeam@crowell.com<mailto:ROSS-ATTeam@crowell.com>>;
*dmoore@Potteranderson.com1<mailto:*dmoore@Potteranderson.com1>
<dmoore@Potteranderson.com<mailto:dmoore@Potteranderson.com>>;
*bpalapura@potteranderson.com<mailto:*bpalapura@potteranderson.com>
<bpalapura@potteranderson.com<mailto:bpalapura@potteranderson.com>>; Brown, Andrew L.
<abrown@potteranderson.com<mailto:abrown@potteranderson.com>>
Subject: Re: West v ROSS | List of Custodians

 External Email
Joachim, Margaux, and team,

While Thomson Reuters does not believe that ROSS's request for additional custodians is timely, proportional,
or calls for uniquely relevant information, in the spirit of compromise, it is willing to collect and produce relevant
non-privileged material for the below requested custodians. Per our prior conversation regarding utilizing
targeted search terms, we are working to identify terms within the parties' agreed to set that we believe are
most appropriately tailored to each custodian. I'll follow up with a proposal on that, but if there are particular
terms ROSS would like to have searched then please let us know as soon as possible. Additionally, where
indicated, we have proposed limiting the time period searched to correspond with the period in which the
individual held a role related to the information ROSS indicated it seeks.

1) Kati Katzenmeyer

2) Audrey Zhang (August 2016 to December 2022)
3) Lauren Sazenski
4) Mark Hoerr (May 2016 to December 2022)
5) Ben Davis (January 2012 to December 2022)
6) Joe Dvorkin

In addition, as we discussed, Christine Post (a previously agreed to custodian) has been a recipient of the Legal Marketing Leadership listserv since its inception. As such, TR can agree to utilize the listserv email address (legalmarketingleadership@thomson.com<mailto:legalmarketingleadership@thomson.com>) as a search term across documents already collected.

While we are happy to meet and confer tomorrow if ROSS does not agree to this compromise, I do not think a final meet and confer is actually warranted at this point, especially as I expect that ROSS will have thoughts about search terms for these folks that we have not yet heard.


Vanessa Barsanti

She/Her/Hers

-------------------------------------------------------

KIRKLAND & ELLIS LLP

300 North LaSalle, Chicago, IL 60654

T +1 312 862 2205

F +1 312 862 2200

-------------------------------------------------------

vanessa.barsanti@kirkland.com<mailto:garvin.choa@kirkland.com>


On Apr 5, 2023, at 8:19 PM, Poueymirou, Margaux <MPoueymirou@crowell.com<mailto:MPoueymirou@crowell.com>> wrote:

Hi Vanessa, It was nice speaking today. We are happy to elevate the following five custodians for more immediate rolling productions: 1. Mark Hoerr 2. Eric Gleason 3. Joe Dvorkin 4. David Curle 5. Kati Katzenmeyer However, we are still seeking
Hi Vanessa,
It was nice speaking today.

We are happy to elevate the following five custodians for more immediate rolling productions:

1.        Mark Hoerr
2.        Eric Gleason
3.        Joe Dvorkin
4.        David Curle
5.        Kati Katzenmeyer
However, we are still seeking productions from all custodians discussed on today's call.  In the interest of continued negotiation, and as discussed, we can provide narrower search terms that correlate with some of the additional custodians to streamline the collection of their documents were that to influence your thinking.

Thanks very much,

Margaux Poueymirou

*

Pronouns: she/her/hers

Crowell & Moring LLP

mpoueymirou@crowell.com<mailto:MPoueymirou@crowell.com>

+1.415.365.7243 direct

|

+917-685-9775 mobile

*Licensed to practice in New York Only and under the Supervision of the Partners of Crowell & Moring LLP.  Not admitted in California.

From: Barsanti, Vanessa <vanessa.barsanti@kirkland.com<mailto:vanessa.barsanti@kirkland.com>>
Sent: Wednesday, April 5, 2023 12:33 PM
To: Poueymirou, Margaux <MPoueymirou@crowell.com<mailto:MPoueymirou@crowell.com>>; Canter, Jacob <JCanter@crowell.com<mailto:JCanter@crowell.com>>; Ginder, Cameron <cameron.ginder@kirkland.com<mailto:cameron.ginder@kirkland.com>>; Means, Miranda <miranda.means@kirkland.com<mailto:miranda.means@kirkland.com>>; #Thomson-Ross <thomson-ross@kirkland.com<mailto:thomson-ross@kirkland.com>>; mflynn@morrisnichols.com<mailto:mflynn@morrisnichols.com>>; Steinberg, Joachim <JSteinberg@crowell.com<mailto:JSteinberg@crowell.com>>; Liu, Shira <SLiu@crowell.com<mailto:SLiu@crowell.com>>
Cc: ROSS-AT Team <ROSS-ATTeam@crowell.com<mailto:ROSS-ATTeam@crowell.com>>; *dmoore@Potteranderson.com1<mailto:*dmoore@Potteranderson.com1> <dmoore@Potteranderson.com<mailto:dmoore@Potteranderson.com>>; *bpalapura@potteranderson.com<mailto:*bpalapura@potteranderson.com>

<bpalapura@potteranderson.com<mailto:bpalapura@potteranderson.com>>; Brown, Andrew L.
<abrown@potteranderson.com<mailto:abrown@potteranderson.com>>
Subject: RE: West v ROSS | List of Custodians

 External Email
Joachim, Shira, and Margaux,

Thank you for the discussion today. Per our conversation, if you could please confirm your top five custodian requests this afternoon I would appreciate that in our consideration of your proposal.

Vanessa Barsanti
She/Her/Hers
------------------------------------------------------
KIRKLAND & ELLIS LLP
300 North LaSalle, Chicago, IL 60654
T +1 312 862 2205
F +1 312 862 2200
------------------------------------------------------
vanessa.barsanti@kirkland.com<mailto:garvin.choa@kirkland.com>

From: Poueymirou, Margaux <MPoueymirou@crowell.com<mailto:MPoueymirou@crowell.com>>
Sent: Monday, April 3, 2023 11:54 AM
To: Barsanti, Vanessa <vanessa.barsanti@kirkland.com<mailto:vanessa.barsanti@kirkland.com>>; Canter, Jacob <JCanter@crowell.com<mailto:JCanter@crowell.com>>; Ginder, Cameron <cameron.ginder@kirkland.com<mailto:cameron.ginder@kirkland.com>>; Means, Miranda <miranda.means@kirkland.com<mailto:miranda.means@kirkland.com>>; #Thomson-Ross <thomson-ross@kirkland.com<mailto:thomson-ross@kirkland.com>>;
mflynn@morrisnichols.com<mailto:mflynn@morrisnichols.com>>
Cc: ROSS-AT Team <ROSS-ATTeam@crowell.com<mailto:ROSS-ATTeam@crowell.com>>;
*dmoore@Potteranderson.com1<mailto:*dmoore@Potteranderson.com1>
<dmoore@Potteranderson.com<mailto:dmoore@Potteranderson.com>>;
*bpalapura@potteranderson.com<mailto:*bpalapura@potteranderson.com>
<bpalapura@potteranderson.com<mailto:bpalapura@potteranderson.com>>; Brown, Andrew L.
<abrown@potteranderson.com<mailto:abrown@potteranderson.com>>
Subject: RE: West v ROSS | List of Custodians

Thanks Vanessa, We are free between 11-1 pm PT. Please circulate an invite. We look forward to speaking, Margaux Poueymirou * Pronouns: she/her/hers Crowell & Moring LLP mpoueymirou@crowell.com +1.415.365.7243 direct | +917-685-9775

Thanks Vanessa,

We are free between 11-1 pm PT. Please circulate an invite.

We look forward to speaking,

Margaux Poueymirou


*


Pronouns: she/her/hers

Crowell & Moring LLP

mpoueymirou@crowell.com<mailto:MPoueymirou@crowell.com>

+1.415.365.7243 direct

 |

+917-685-9775 mobile

*Licensed to practice in New York Only and under the Supervision of the Partners of Crowell & Moring LLP.  Not admitted in California.

From: Barsanti, Vanessa <vanessa.barsanti@kirkland.com<mailto:vanessa.barsanti@kirkland.com>>
Sent: Monday, April 3, 2023 11:33 AM
To: Poueymirou, Margaux <MPoueymirou@crowell.com<mailto:MPoueymirou@crowell.com>>; Canter, Jacob <JCanter@crowell.com<mailto:JCanter@crowell.com>>; Ginder, Cameron <cameron.ginder@kirkland.com<mailto:cameron.ginder@kirkland.com>>; Means, Miranda <miranda.means@kirkland.com<mailto:miranda.means@kirkland.com>>; #Thomson-Ross <thomson-ross@kirkland.com<mailto:thomson-ross@kirkland.com>>; mflynn@morrisnichols.com<mailto:mflynn@morrisnichols.com>
Cc: ROSS-AT Team <ROSS-ATTeam@crowell.com<mailto:ROSS-ATTeam@crowell.com>>; *dmoore@Potteranderson.com1<mailto:*dmoore@Potteranderson.com1> <dmoore@Potteranderson.com<mailto:dmoore@Potteranderson.com>>; *bpalapura@potteranderson.com<mailto:*bpalapura@potteranderson.com> <bpalapura@potteranderson.com<mailto:bpalapura@potteranderson.com>>; Brown, Andrew L. <abrown@potteranderson.com<mailto:abrown@potteranderson.com>>
Subject: RE: West v ROSS | List of Custodians

 External Email
Margaux,

While we disagree with the points in your note, it is not productive at this point to continue going back and forth via email. We are not available to meet today or tomorrow, but are happy to discuss on Wednesday. We can be available at 9:30 or between 11 and 1 PT. What time works for you all?

Vanessa Barsanti
She/Her/Hers

---------------------------------------------------
KIRKLAND & ELLIS LLP
300 North LaSalle, Chicago, IL 60654
T +1 312 862 2205
F +1 312 862 2200
---------------------------------------------------
vanessa.barsanti@kirkland.com<mailto:garvin.choa@kirkland.com>

From: Poueymirou, Margaux <MPoueymirou@crowell.com<mailto:MPoueymirou@crowell.com>>
Sent: Friday, March 31, 2023 11:41 PM
To: Barsanti, Vanessa <vanessa.barsanti@kirkland.com<mailto:vanessa.barsanti@kirkland.com>>; Canter, Jacob <JCanter@crowell.com<mailto:JCanter@crowell.com>>; Ginder, Cameron <cameron.ginder@kirkland.com<mailto:cameron.ginder@kirkland.com>>; Means, Miranda <miranda.means@kirkland.com<mailto:miranda.means@kirkland.com>>; #Thomson-Ross <thomson-ross@kirkland.com<mailto:thomson-ross@kirkland.com>>; mflynn@morrisnichols.com<mailto:mflynn@morrisnichols.com>
Cc: ROSS-AT Team <ROSS-ATTeam@crowell.com<mailto:ROSS-ATTeam@crowell.com>>; *dmoore@Potteranderson.com1<mailto:*dmoore@Potteranderson.com1><dmoore@Potteranderson.com<mailto:dmoore@Potteranderson.com>>; *bpalapura@potteranderson.com<mailto:*bpalapura@potteranderson.com><bpalapura@potteranderson.com<mailto:bpalapura@potteranderson.com>>; Brown, Andrew L. <abrown@potteranderson.com<mailto:abrown@potteranderson.com>>
Subject: RE: West v ROSS | List of Custodians

Vanessa: Ross is entitled to additional custodians at this time—and our request should come as no surprise. All eight custodians you identified and produced hold, or held, senior, high-level positions at Westlaw. We have persistently indicated

Vanessa:

Ross is entitled to additional custodians at this time—and our request should come as no surprise.  All eight custodians you identified and produced hold, or held, senior, high-level positions at Westlaw. We have persistently indicated that we would likely need more junior level custodians but were willing to make this determination once we reviewed discovery.  You made your first production approximately 7 weeks ago, after a several month delay.  Unsurprisingly, our review of your productions has revealed the inadequacy of your eight custodians—and our valid need for more junior level custodians, as well as for custodians who worked in different departments.  It is an unremarkable fact of litigation that new custodians are borne from document review.

The additional custodians we have identified held varying roles at Westlaw and worked across departments. Our review of documents on which they appear by happenstance strongly suggests that these employees' emails, internal blog posts, and PowerPoint creations—among other communications—are highly probative of the central issues in this case.

Finally, in light of the Court's rejection of your arguments regarding the relevant temporal scope of discovery, you have an affirmative duty to identify promptly additional relevant custodians who worked at Westlaw consistent with the temporal scope ordered by the Court.

Given the approaching discovery cut off, we would like to schedule a meet and confer on Monday or Tuesday to discuss the foregoing.  Please let us know of your availability.

Thanks very much,

Margaux Poueymirou

*

Pronouns: she/her/hers

Crowell & Moring LLP

[mpoueymirou@crowell.com<mailto:MPoueymirou@crowell.com](mailto:mpoueymirou@crowell.com)>

+1.415.365.7243 direct

|

+917-685-9775 mobile

*Licensed to practice in New York Only and under the Supervision of the Partners of Crowell & Moring LLP.  Not admitted in California.

From: Barsanti, Vanessa <[vanessa.barsanti@kirkland.com<mailto:vanessa.barsanti@kirkland.com](mailto:vanessa.barsanti@kirkland.com)>>
Sent: Friday, March 31, 2023 8:32 AM
To: Canter, Jacob <[JCanter@crowell.com<mailto:JCanter@crowell.com](mailto:JCanter@crowell.com)>>; Ginder, Cameron <[cameron.ginder@kirkland.com<mailto:cameron.ginder@kirkland.com](mailto:cameron.ginder@kirkland.com)>>; Means, Miranda <[miranda.means@kirkland.com<mailto:miranda.means@kirkland.com](mailto:miranda.means@kirkland.com)>>; #Thomson-Ross <[thomson-ross@kirkland.com<mailto:thomson-ross@kirkland.com](mailto:thomson-ross@kirkland.com)>>;
[mflynn@morrisnichols.com<mailto:mflynn@morrisnichols.com](mailto:mflynn@morrisnichols.com)>
Cc: ROSS-AT Team <[ROSS-ATTeam@crowell.com<mailto:ROSS-ATTeam@crowell.com](mailto:ROSS-ATTeam@crowell.com)>>;
[*dmoore@Potteranderson.com1<mailto:*dmoore@Potteranderson.com1](mailto:*dmoore@Potteranderson.com1)>
<[dmoore@Potteranderson.com<mailto:dmoore@Potteranderson.com](mailto:dmoore@Potteranderson.com)>>;
[*bpalapura@potteranderson.com<mailto:*bpalapura@potteranderson.com](mailto:*bpalapura@potteranderson.com)>
<[bpalapura@potteranderson.com<mailto:bpalapura@potteranderson.com](mailto:bpalapura@potteranderson.com)>>; Brown, Andrew L.
<[abrown@potteranderson.com<mailto:abrown@potteranderson.com](mailto:abrown@potteranderson.com)>>
Subject: RE: West v ROSS | List of Custodians

 External Email
Jacob,

I write in response to your March 29 email below.

First, in complying with the Court's March 29 order, Thomson Reuters will use the same custodians the parties previously agreed to.  As an initial matter, Thomson Reuters disclosed its custodian list on January 24, 2023.  The next day, at ROSS's request, we provided information about those custodians' tenure and job titles.  The parties then exchanged several rounds of correspondence and discussed this issue on multiple meet and confers. As a result, Thomson Reuters agreed to search for and export information from its sales platform, Conga, which I've confirmed is in progress. After the parties reached that agreement, ROSS raised no further issues with Thomson Reuters' proposed custodians in any further discovery letter or in any meet and confer.  Thomson Reuters collected, reviewed, and produced documents based on the parties' agreed custodians and search terms.  Further, nothing in the Court's ruling makes "the current custodian list untenable."  The only issue before the Court was the temporal scope of Thomson Reuters' production.  And, as is clear from the employment history that we provided over two months ago, Thomson Reuters' custodians have significant employment histories at Thomson Reuters and West Publishing, dating back to the early 1990s. None of the newly requested custodians have such lengthy employment histories.

Second, your contention that Thomson Reuters' custodian list "did not capture all relevant individuals with discoverable information" is besides the point.  Nothing requires Thomson Reuters to collect, review, and produce documents from every employee with potentially relevant information.  And, as you note, the names on your list "appear on a large number of relevant documents."  If anything, this proves that Thomson Reuters' custodian list is, in fact, targeted to capturing relevant information. ROSS has not shown that any of these individuals would be likely to have unique relevant information to its claims.

Third, the parties reached final impasse on the temporal scope of Thomson Reuters' production on February 17.  ROSS then waited a month to file its motion to compel.  While we are working to meet the current May 11 discovery deadline, Thomson Reuters is not in a position, at this time, to "provide a date certain" for when it will make its supplemental production consistent with the Court's March 29 order.  As you know, and as we explained both in meet and confers and in our briefing on ROSS's motion to compel, it takes time to collect, review, and produce documents.  Thomson Reuters is acting diligently and expeditiously to meet the current discovery deadline.  Indeed, we started the collection process for the prior agreed to custodians immediately after the hearing.  However, we only have so much control over how long it will take to collect these documents and cannot make the process go any quicker than technology and Thomson Reuters' systems allow.  We will work as quickly as possible and keep ROSS apprised of our progress, and will implement rolling productions.

Vanessa Barsanti
She/Her/Hers
-----------------------------------------------------
KIRKLAND & ELLIS LLP
300 North LaSalle, Chicago, IL 60654
T +1 312 862 2205
F +1 312 862 2200
-----------------------------------------------------
vanessa.barsanti@kirkland.com<mailto:garvin.choa@kirkland.com>

From: Canter, Jacob <JCanter@crowell.com<mailto:JCanter@crowell.com>>
Sent: Wednesday, March 29, 2023 4:58 PM
To: Ginder, Cameron <cameron.ginder@kirkland.com<mailto:cameron.ginder@kirkland.com>>; Means, Miranda <miranda.means@kirkland.com<mailto:miranda.means@kirkland.com>>; #Thomson-Ross <thomson-ross@kirkland.com<mailto:thomson-ross@kirkland.com>>;
mflynn@morrisnichols.com<mailto:mflynn@morrisnichols.com>
Cc: ROSS-AT Team <ROSS-ATTeam@crowell.com<mailto:ROSS-ATTeam@crowell.com>>;
*dmoore@Potteranderson.com1<mailto:*dmoore@Potteranderson.com1>
<dmoore@Potteranderson.com<mailto:dmoore@Potteranderson.com>>;
*bpalapura@potteranderson.com<mailto:*bpalapura@potteranderson.com>
<bpalapura@potteranderson.com<mailto:bpalapura@potteranderson.com>>; Brown, Andrew L.
<abrown@potteranderson.com<mailto:abrown@potteranderson.com>>

Subject: RE: West v ROSS | List of Custodians

Cameron, I inadvertently left Heather Miller-Sammons off of my list of below names. My apologies. Please add her name to the below list of custodians. Thank you, Jacob Canter Pronouns: he/him/his Crowell & Moring LLP jcanter@crowell.com

Cameron,

I inadvertently left Heather Miller-Sammons off of my list of below names. My apologies. Please add her name to the below list of custodians. Thank you,

Jacob Canter

Pronouns: he/him/his

Crowell & Moring LLP

jcanter@crowell.com<mailto:JCanter@crowell.com>

+1.415.365.7210 direct

  |

+1.415.385.3716 mobile

From: Canter, Jacob <JCanter@crowell.com<mailto:JCanter@crowell.com>>
Sent: Wednesday, March 29, 2023 11:14 AM
To: Ginder, Cameron <cameron.ginder@kirkland.com<mailto:cameron.ginder@kirkland.com>>; Means, Miranda <miranda.means@kirkland.com<mailto:miranda.means@kirkland.com>>; #Thomson-Ross <thomson-ross@kirkland.com<mailto:thomson-ross@kirkland.com>>; mflynn@morrisnichols.com<mailto:mflynn@morrisnichols.com>>
Cc: ROSS-AT Team <ROSS-ATTeam@crowell.com<mailto:ROSS-ATTeam@crowell.com>>; Moore, David E. <dmoore@potteranderson.com<mailto:dmoore@potteranderson.com>>; Palapura, Bindu A. <bpalapura@potteranderson.com<mailto:bpalapura@potteranderson.com>>; Brown, Andrew L. <abrown@potteranderson.com<mailto:abrown@potteranderson.com>>
Subject: West v ROSS | List of Custodians

Dear Cameron:

We write regarding the production of additional discovery in light of the Tuesday, March 28 ruling by the Court.

First, please let us know the list of custodians you will query as a result of Tuesday's discovery order. The ruling has made the current custodian list untenable. Please also confirm you will expand your current custodian list with these individuals for the documents and searches you have already produced in line with the above.

Second, even prior to Tuesday's discovery order, Plaintiffs' list of custodians was inadequate as it did not capture all relevant individuals with discoverable information. The following custodians were not queried although their names appear on a large number of relevant documents, indicating that those custodians must possess relevant information—or their names appear on important relevant documents, indicating that they must possess important relevant documents. Please produce documents with these individuals under current searches and for all new relevant time periods as outlined above.

1. David Curle
2. Kati Katzenmeyer
3. Bob Biancamano
4. Andrea Seitz
5. Audrey Zhang
6. Lauren Sazenski
7. Mark Hoerr
8. Vinod Kumar
9. Rachel Vesely
10. Aimee Doles
11. Jenny Deutsch
12. Ben Davis
13. Eric Gleason
14. Maria Redmond
15. Joe Dvorkin
16. David Curle
17. legalmarketingleadership@thomson.com<mailto:legalmarketingleadership@thomson.com>

Third, please let us know when Plaintiffs will be producing documents consistent with the Court's Tuesday order and the additional custodians referenced above. Please provide a date certain on when the documents will be produced. If you do not provide us a date certain within the week, we will need to go to the Court to request a date certain due to the impending discovery deadline.

Regards,
Jacob Canter

Pronouns: he/him/his

jcanter@crowell.com<mailto:JCanter@crowell.com>

+1.415.365.7210 direct

|

+1.415.385.3716 mobile

LinkedIn<https://urldefense.com/v3/__https://www.linkedin.com/in/jacob-canter-6a53b0120/__;!!MPAZj1r9Mghpww!BJZRBoMhTDpamwbnp0KoZKG2T84hRNHHdqsQ6aolohxonEtgzJw_k-sqZynNCAqb6meD7ysZ8o-y7lMJpcFlig$>
Crowell& Moring LLP

3 Embarcadero Center

26th Floor

San Francisco

,

CA

94111

Crowell

Collaboration Powers Success

crowell.com<https://urldefense.com/v3/__http:/www.crowell.com/__;!!MPAZj1r9Mghpww!BJZRBoMhTDpamwbnp0KoZKG2T84hRNHHdqsQ6aolohxonEtgzJw_k-sqZynNCAqb6meD7ysZ8o-y7lMyhe0abw$>
Thismessage may contain privileged and confidential information. IF IT WAS SENT TO YOU BY MISTAKE, DO NOT READ IT. Instead, please notify the sender (or postmaster@crowell.com<mailto:postmaster@crowell.com>) by reply e-mail, and delete this e-mail. Unauthorized dissemination, forwarding or copying of this e-mail is strictly prohibited.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com<mailto:postmaster@kirkland.com>, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com<mailto:postmaster@kirkland.com>, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com<mailto:postmaster@kirkland.com>, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com<mailto:postmaster@kirkland.com>, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com<mailto:postmaster@kirkland.com>, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com<mailto:postmaster@kirkland.com>, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

# EXHIBIT B

**Canter, Jacob**

| | |
|---|---|
| **From:** | Barsanti, Vanessa <vanessa.barsanti@kirkland.com> |
| **Sent:** | Wednesday, January 25, 2023 11:18 AM |
| **To:** | Canter, Jacob |
| **Cc:** | Hughes, Dalton; Means, Miranda; #Thomson-Ross; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team; *dmoore@Potteranderson.com1; *bpalapura@potteranderson.com; Ginder, Cameron; Bishop, Erin; Miller, Dana R. Bucy |
| **Subject:** | RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233 |
| **Attachments:** | 2023.01.25 Thomson Reuters Draft Search Terms_(93649738_2).xlsx |

External Email

Jacob and team,

Thank you again for the discussion this morning. Per our conversation, I am attaching here an excel with the original terms from yesterday, the current terms, which have been updated to function in Relativity appropriately (e.g., exclamation points changed to asterisks) and to resolve a couple of issues I mentioned. The substantive changes are reflected in the notes column.  As you requested, we've included a column as a general road map to show which term satisfies which RFP(s). Though given the breadth of some of the terms they may in fact locate documents responsive to additional RFPs. We are still collecting data, so continue to reserve our rights to amend these.

Lastly you asked for some additional information on our proposed custodians. The below list adds their titles and their length of employment. Please let us know if you have any further questions.

Custodians:
- Andrew Martens - Senior Vice President & Global Head Legal Product & Editorial
  - Began at West Publishing in 1993, Thomson West in 1998, Thomson Reuters in 2003
- Erik Lindberg - Senior Director, Westlaw Product Management
  - Began at West Publishing in 1992, Thomson Reuters in 2000
- Mark Hoffman - Finance Manager
  - Began at Thomson Reuters in 2004
- Christine Post - Senior Director, Market Research & Competitive Intelligence
  - Began at Thomson Reuters in 1993
- Dustin Cripe - Corporate Strategy Director
  - Began at Thomson Reuters in 2018
- Thomas Leighton - Vice President, Government Relations & Content Acquisition
  - Began at Thomson Reuters in 2008
- Bridgett You - Vice President Revenue Management, Mid & Global Large Law; Prior to January 2023 - Senior Director of Strategic Pricing & Revenue Management
  - Began at Thomson Reuters in 2006
- Mike Dahn - Senior Vice President & Head of Westlaw Product Management
  - Began at Thomson Reuters in 2000

**Vanessa Barsanti**
She/Her/Hers

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 2205

**F** +1 312 862 2200

vanessa.barsanti@kirkland.com

**From:** Barsanti, Vanessa
**Sent:** Tuesday, January 24, 2023 1:45 PM
**To:** 'Canter, Jacob' <JCanter@crowell.com>
**Cc:** Hughes, Dalton <DHughes@crowell.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>; Ginder, Cameron <cameron.ginder@kirkland.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

Good timing, Jacob. I was just finishing a note to you re search parameters. Since we last spoke, Thomson Reuters has engaged an eDiscovery vendor who has already begun collection efforts. While we have not yet been able to test terms against the data as it is still in the process of being collected/processed, in the spirit of full transparency we are sharing with you the search parameters we intend to employ so long as the testing confirms those parameters are not unreasonably burdensome or overly broad.

Subject to the above caveat, in order to locate documents responsive to ROSS's RFPs, Thomson intends to utilize the following search parameters:

- <u>Time Frame</u>: 1/1/15 to 12/31/22
- <u>Custodians/Data Source</u>: Emails of all of the individuals disclosed in Thomson's initial disclosures (Andrew Martens, Erik Lindberg, Mark Hoffman, Christine Post, Dustin Cripe, Thomas Leighton, and Bridgett You), in addition to Mike Dahn (Senior Vice President and head of Westlaw Product Management)
- <u>Terms</u>:
  - o Market! w/10 (research! OR insight! OR analys! OR plan! OR survey! OR report! OR stud!)
  - o (Westlaw or WL OR legal! OR customer! OR segment! OR licens!) w/10 (strateg! OR plan!)
  - o (Westlaw OR WL OR product!) w/10 (management! OR development!)
  - o (Westlaw OR WL) w/10 (sale! OR market! OR advertis! OR distribut!)
  - o (market! OR competit! OR Lexis! OR Fastcase OR Google OR Casemaker OR Casetext OR "Wolters Kluwer" OR Bloomberg OR Jurisearch OR ROSS) w/15 (survey OR report! OR overview OR intel! OR analys! OR investigat! OR insight! OR research! OR compar! OR info!)
  - o (SWAT OR Indigo)
  - o (licens! OR contract! OR deal OR negotiat!) w/15 (competit! OR  Lexis! OR Fastcase OR Google OR Casemaker OR Casetext OR "Wolters Kluwer" OR Bloomberg OR Jurisearch OR ROSS)
  - o (licens! OR contract! OR deal OR negotiat!) w/15 ROSS)
  - o (Case! OR statut! OR regulat! OR data! OR API OR "public law" OR content!) w/15 (sale! OR sell! OR license OR market! OR advertis! OR distribut!)
  - o excessive w/5 (use OR usage OR download!)
  - o (download! OR stor! OR request!) w/10 (case! OR statut! OR regulat! OR data! OR API OR "public law" OR content OR stor!)
  - o (invest! OR develop! OR improv! OR enhanc! OR upgrad! OR discontinu! OR cancel! OR stop! OR abandon! OR drop!) w/15 (Westlaw! OR WL OR "search tech!" OR "search tool!" OR "artificial intelligence" OR AI OR NLP OR "natural language" OR "Westlaw Edge" or featur!)
  - o ((ceas! OR discontinu! OR cancel! OR stop! OR abandon! OR drop! OR (phas! w/3 out)) w/15 ("Westlaw Next" OR "Westlaw Classic")
  - o ("search tech!" OR "Head Notes" OR "Key Number System" OR WKNS OR "artificial intelligence" OR AI OR "natural language" OR NLP) w/15 (sell! OR license OR market!)

- o (strateg! OR continu! OR discontinu! OR stop! OR cancel! OR abandon! OR drop! OR stop!) AND (updat! OR publish! OR print! OR offer! OR sell!) AND (hardcopy OR "hard copy" OR physical OR book! OR (case OR court) w/5 reporter!))
- o (Westlaw or WL OR subscription) w/15 (pric! OR charg! OR cost! OR discount! OR negotiat! OR offer!)
- o pric! w/3 guideline!
- o (print! OR hardcopy OR "hard copy" OR physical OR book! OR (case OR court) w/5 reporter!)) w/15 (pric! OR cost! OR charg!)
- o (Westlaw OR WL) AND (pric! w/10 (model! OR structur! OR guarante! OR structur!))
- o (publish! OR publication OR submit! OR submission) w/5 (guide! OR opinion! OR decision! OR order! OR publi!)
- o ("law student!" OR "law school!") w/10 (invest! OR access! OR program! OR cost! OR train! OR strateg! OR manual! OR polic!)) AND (Westlaw OR WL)

As we have not been able to test these terms yet, they may prove over-inclusive/too burdensome. If a narrowing of these terms is required we will reach out to you with information about the requisite modification and are happy to meet and confer about it if you have any concerns. As we discussed last week, if there are any terms ROSS is interested in adding, or if you'd like to see modifications of these proposed terms, please let us know as soon as possible so we can immediately test those terms as soon as the data is available.

Given that we are both coming to the table with new information/modifications to requests, and that we of course have to take your proposal to our client, I don't expect that this will in fact be our last meet and confer. But we look forward to speaking tomorrow and working out as much as we possibly can.

Thank you,

**Vanessa Barsanti**
She/Her/Hers

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 2205
**F** +1 312 862 2200

vanessa.barsanti@kirkland.com

**From:** Canter, Jacob <JCanter@crowell.com>
**Sent:** Tuesday, January 24, 2023 1:38 PM
**To:** Ginder, Cameron <cameron.ginder@kirkland.com>; Barsanti, Vanessa <vanessa.barsanti@kirkland.com>
**Cc:** Hughes, Dalton <DHughes@crowell.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>; Barsanti, Vanessa <vanessa.barsanti@kirkland.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

Cameron, Plaintiffs asked for ROSS to make temporal limitation proposals for the document requests in ROSS's first set of requests.  As we have explained, this is not ROSS's burden.  Plaintiffs have made no argument to the contrary.  Nonetheless, Plaintiffs are apparently unable to offer their own temporal limits and instead of offering to do so before the final conferral, requested that ROSS do so after the parties already held the final conferral.  Thus, to move the document production process along, ROSS proposes temporal limits for the first set of document requests as reflected in the attached word document.  ROSS offers this proposal without prejudice to revisit the temporal limitations if ROSS discovers that we need to go further back in time.

You stated that Plaintiffs would have a proposal before tomorrow's conferral at 10:30 AM CT conferral addressing all of the remaining disputes related to the first set of document requests and also addressing the second set of document requests.  You also said that Plaintiffs would have search term proposals before tomorrow's conferral as well. Please also come prepared to address ROSS's temporal limit proposals.  As we have already stated, this will be the final conferral on all of the document requests that we discuss.

**Jacob Canter**
Pronouns: he/him/his
Crowell & Moring LLP
jcanter@crowell.com
+1.415.365.7210 direct   |   +1.415.385.3716 mobile

---

**From:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Sent:** Thursday, January 19, 2023 3:00 PM
**To:** Canter, Jacob <JCanter@crowell.com>; Barsanti, Vanessa <vanessa.barsanti@kirkland.com>
**Cc:** Hughes, Dalton <DHughes@crowell.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>; Barsanti, Vanessa <vanessa.barsanti@kirkland.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

External Email

Jacob -- In response to your questions below.

We intend to produce all documents and communications as requested, subject to our proposal, which, as you note, we are aiming to provide as quickly as possible.

You have accurately stated our discussion on Thomson Reuters' temporal objection.  We are unavailable for a final meet and confer on Monday but can make Tuesday morning work.  If ROSS identifies specific requests for which it believes it needs a broader temporal scope of production, please share in advance so we can evaluate the request beforehand.

Our believe that our proposal will resolve most, if not all, of the remaining disputes about RFP 223, 225-26, 227, and 231.  The proposal will identify which RFPs Thomson Reuters is responding to, and we can address any remaining disputes on Wednesday.

Thanks,
Cameron

**Cameron Ginder**
_____
**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 3757  **M** +1 260 414 9744
**F** +1 312 862 2200
_____

cameron.ginder@kirkland.com

---

**From:** Canter, Jacob <JCanter@crowell.com>
**Sent:** Thursday, January 19, 2023 12:41 PM

**To:** Ginder, Cameron <cameron.ginder@kirkland.com>; Barsanti, Vanessa <vanessa.barsanti@kirkland.com>
**Cc:** Hughes, Dalton <DHughes@crowell.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>; Barsanti, Vanessa <vanessa.barsanti@kirkland.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

I am writing to memorialize our phone conversation and to ask questions regarding the conversation.

During the conversation you stated that Plaintiffs' position with regard to Request Nos. 186, 196,197, 199-202, 203-204, 209, 214-215, 224, 188-189, 191, 195, 205, 208, and 219-220 has changed. You stated that Plaintiffs will no longer only produce documents "sufficient to show" the information requested. However, we are uncertain what that means you will be producing.  Will you be producing all documents in response to the requests as drafted so that, as an example, the documents include both documents and communications related to strategies and/or plans for the sale, distribution, and license, of the Westlaw platform, search tools, public law database, and legal search platforms (*see* Request Nos. 199-202).  Or, is the plan to produce some smaller subset, such as "business plans for the sale, distribution, or license of the Westlaw Platform" (see R&Os to Request Nos. 199-202)?  If it is the latter, then we will proceed to raise the issue with the court.

During the conversation you also stated that Plaintiffs stand on their temporal limitation objections, although you agreed to discuss this as to each request. If we do not have resolution on the above dispute then we will move forward with seeking leave from the court on both the above dispute and the temporal limitations dispute. However, if we have resolution on the above dispute then we request a final conferral to discuss the temporal limits for particular document requests Monday.

We did not discuss the final two disputes related to RFP Nos. 223, 225-226, 227 and RFP No. 231. I assume that your positions on these requests are unchanged.

Finally, you stated that before next Wednesday Plaintiffs would provide ROSS with a list of proposed search terms and custodians, and that we can discuss those on Wednesday at 10:30 AM CT.


**Jacob Canter**
Pronouns: he/him/his
Crowell & Moring LLP
jcanter@crowell.com
+1.415.365.7210 direct  |  +1.415.385.3716 mobile

---

**From:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Sent:** Thursday, January 19, 2023 9:44 AM
**To:** Canter, Jacob <JCanter@crowell.com>
**Cc:** Hughes, Dalton <DHughes@crowell.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>; Barsanti, Vanessa <vanessa.barsanti@kirkland.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

External Email

Jacob - We have the draft joint letter.  Do you have 10 minutes to discuss between 10-11CT?

Thanks,
Cameron

**Cameron Ginder**

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 3757  **M** +1 260 414 9744
**F** +1 312 862 2200

cameron.ginder@kirkland.com

---

**From:** Canter, Jacob <JCanter@crowell.com>
**Sent:** Wednesday, January 18, 2023 3:00 PM
**To:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Cc:** Hughes, Dalton <DHughes@crowell.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

Cameron, I am writing because we inadvertently omitted RFP Nos. 196 and 197 from the list of requests where a dispute remains about the metes and bounds of Plaintiffs' offer (#2). We are writing to confirm that our dispute regarding these requests is also final.

Also, attached is the joint letter raising these disputes with the Court. Once you approve we will file. Kind regards,

**Jacob Canter**
Pronouns: he/him/his
Crowell & Moring LLP
jcanter@crowell.com
+1.415.365.7210 direct  |  +1.415.385.3716 mobile

---

**From:** Canter, Jacob <JCanter@crowell.com>
**Sent:** Friday, January 13, 2023 8:52 PM
**To:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Cc:** Hughes, Dalton <DHughes@crowell.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

Cameron,

 We write to memorialize the material we agreed on and to also memorialize the disputes that remain.  As we discussed on the call, for those disputes that remain, there is an impasse and our conferral constituted a final conferral, making these disputes appropriate for court intervention.

**<u>Topics on which we agree</u>**

1. **RFP No. 187.**  There is no dispute because Plaintiffs also agree to produce documents sufficient to show the costs of offering Westlaw to law students as they are kept in the ordinary course of business. Thank you.

2. **RFP No. 222.**  There is no dispute because Plaintiffs also agree to produce the terms of service for documents from the governmental entities that are published on the platform.  Thank you.

3. **RFP No. 210.**  There is no dispute because Plaintiffs clarified that they have accepted ROSS' definition of competitors and also agree to produce agreements with competitors related to both licenses and potential licenses for the platform, database, and search tools, and also for material that is within the databases and search tools. Thank you.

**Topics where disputes remain**

1. **Temporal limitation on all requests.**  It is Plaintiffs' position that the temporal limitation for all documents and communications should be January 1, 2015, except to the extent for "documents [and communications] sufficient to show any business plans, products, and licenses related to its public law database separate from any search technology."  For this latter category, the temporal limitation will be January 1, 1990.  It is Plaintiffs' position that a different temporal limit is overly burdensome and would lead to the production of irrelevant documents.  Also, it is Plaintiffs' position that the January 2015 limitation is appropriate because ROSS started in January 2015. ROSS disagrees that when ROSS started is an appropriate reason to limit discovery on Westlaw's conduct.  ROSS has stated that it is Plaintiffs' burden to demonstrate in specific terms for each request why no temporal limitation is improper.  For example, business plans and communications related to the decision to develop a single platform that includes both a public law database and tools which allows users to search through the database would be relevant to the tying claim but would not be produced if they are from before 2015. We offered you the opportunity to provide a specific reason why a specific temporal limit should be in place for each of the document requests, which you declined to do.  ROSS has also stated, citing supporting law, that the temporal limitations Plaintiffs proposal would cause documents relevant to the tying and UCL claims to not be produced.  And ROSS has identified documents already produced by Plaintiffs which reflect that documents from before January 1, 1990, would be responsive and relevant. This dispute requires court intervention to resolve.

2. **RFP Nos. 186, 199-202, 203-204, 209, 214-215, 224, 188-189, 191, 195, 205, 208, and 219-220.**  It is Plaintiffs' position that the metes and bounds of Plaintiffs' offers in response to these requests are clear and that they do not exclude any relevant materials.  ROSS disagrees.  ROSS has identified with specificity why, with each request, it is unclear what material is excluded and for what reason it would be excluded.  *See* Dec 29 Letter, at 2-9; Jan 12 Letter, at 3-5.  For example, at the conferral today we again brought up your offer to produce a "request sufficient to show business plans" in response to RFPs 199-202.  We stated that it is unclear whether this request includes or excludes drafts, communications about the plan, memorandum and analyses of the plan, and other materials which reflect reactions to the plan and you were unable to articulate a clear answer.  ROSS has also stated, citing case law, that the language Plaintiffs' use provide an opportunity for cherry-picking. Dec 29 Letter, at 2-4. This dispute requires court intervention to resolve.

3. **RFP Nos. 223, 225-226, 227.**  In response to these requests, Plaintiffs agree to "produce documents sufficient to show its process for deciding what opinions to (1) publish in official print reporters and (2) include online."  Plaintiffs state that the request requires Plaintiffs to produce no additional material. ROSS contends that these requests also require Plaintiffs to produce materials related to deciding whether or not to publish collections of judicial opinions in paper-format, such as in a hard copy book. Dec 29 Letter, at 12-13, 14.  This dispute requires court intervention to resolve.

4. **RFP No. 231.**  This request seeks documents related to "each instance in which any entity requests a change to" Plaintiffs terms of service for access to the Westlaw Platform, including all instances in which any entity did not agree to the terms of service and were not granted access to the Westlaw Platform. At the Dec 1 and 2 conferral, Plaintiffs asked ROSS to identify specific provisions from its terms of service, which ROSS did. Dec 29 Letter, at 14-15. Plaintiffs then instead said that they would produce documents "sufficient to show any request to change the Westlaw terms and conditions in a way that would allow the requesting party to use Thomson Reuters' public law database separate from search technology."  Plaintiffs contend that this offer is adequate.  ROSS disagrees because materials that are relevant and would be produced in response to a request for instances in which an entity did not agree to how West defines "Data" in Section 1.a of its terms of service

would be excluded based on Plaintiffs' counteroffer.  There is thus a dispute which requires court intervention to resolve.

We intend to notify the Court on Tuesday, January 17, 2023, of the disputes that require intervention to resolve.  We will provide you with a draft letter to the Court on Monday.  Kind regards,

**Jacob Canter**
Pronouns: he/him/his
Crowell & Moring LLP
jcanter@crowell.com
+1.415.365.7210 direct  |  +1.415.385.3716 mobile

---

**From:** Canter, Jacob <JCanter@crowell.com>
**Sent:** Thursday, January 12, 2023 1:08 PM
**To:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Cc:** Hughes, Dalton <DHughes@crowell.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

Cameron,

Please see attached. We look forward to tomorrow's call. Kind regards,

**Jacob Canter**
Pronouns: he/him/his
Crowell & Moring LLP
jcanter@crowell.com
+1.415.365.7210 direct  |  +1.415.385.3716 mobile

---

**From:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Sent:** Tuesday, January 10, 2023 5:49 PM
**To:** Canter, Jacob <JCanter@crowell.com>
**Cc:** Hughes, Dalton <DHughes@crowell.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

External Email

Jacob -- Attached are our proposed revisions to the joint stipulation.  If this is acceptable, you have our permission to file with the court.  We do not agree to file the stipulation as originally drafted.

Cameron

**Cameron Ginder**

**KIRKLAND & ELLIS LLP**

300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 3757  **M** +1 260 414 9744
**F** +1 312 862 2200

cameron.ginder@kirkland.com

---

**From:** Canter, Jacob <JCanter@crowell.com>
**Sent:** Tuesday, January 10, 2023 5:26 PM
**To:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Cc:** Hughes, Dalton <DHughes@crowell.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

Hi Cameron, please see attached a draft stipulation.  Please let us know if we have your approval to file with the Court.

Kind regards,


**Jacob Canter**
Pronouns: he/him/his
Crowell & Moring LLP
jcanter@crowell.com
+1.415.365.7210 direct   |   +1.415.385.3716 mobile

---

**From:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Sent:** Tuesday, January 10, 2023 1:04 PM
**To:** Canter, Jacob <JCanter@crowell.com>
**Cc:** Hughes, Dalton <DHughes@crowell.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

External Email

Thanks, Jacob.  We'll take a look at the stip when you send it across.

We can meet and confer on Friday 9:30-10:30PT on Friday but have a hard stop at 10:30PT that cannot be moved.  If ROSS still believes a 90-minute meet and confer is necessary, we can look at next week.


**Cameron Ginder**

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 3757  **M** +1 260 414 9744
**F** +1 312 862 2200

cameron.ginder@kirkland.com

**From:** Canter, Jacob <JCanter@crowell.com>
**Sent:** Tuesday, January 10, 2023 12:51 PM
**To:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Cc:** Hughes, Dalton <DHughes@crowell.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

Cameron,

Thank you for the email.  We agree with your counterproposal and will prepare a joint stipulation, which we will send to you later today.

Also, we are available for a conferral regarding the discovery requests on this Friday, January 13.  We are available at any time between 9:30 AM PT and 11:00 AM PT.  Please let us know a time that works for you within that window.

**Jacob Canter**
Pronouns: he/him/his
Crowell & Moring LLP
jcanter@crowell.com
+1.415.365.7210 direct  |  +1.415.385.3716 mobile

**From:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Sent:** Tuesday, January 10, 2023 8:02 AM
**To:** Canter, Jacob <JCanter@crowell.com>
**Cc:** Hughes, Dalton <DHughes@crowell.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

External Email

Jacob -- See below for Thomson Reuters' counterproposal on a schedule extension.  Also, attached is Thomson Reuters' response to ROSS's December 29 letter.

| Task | Current Deadline | ROSS Proposal | TR Counter |
|------|------------------|---------------|------------|
| Substantial Completion | January 12, 2023 | April 6, 2023 | February 23, 2023 |
| End of Fact Discovery | March 30, 2023 | June 22, 2023 | May 11, 2023 |
| Expert Reports | April 27, 2023 | July 20, 2023 | May 25, 2023 |
| Rebuttal Reports | May 25, 2023 | August 17, 2023 | June 22, 2023 |
| Reply Reports | June 22, 2023 | September 14, 2023 | July 20, 2023 |
| End of Expert Discovery | July 13, 2023 | October 5, 2023 | August 3, 2023 |
| Opening SJ Briefs | August 17, 2023 | November 9, 2023 | August 31, 2023 |
| SJ Opposition Briefs | September 14, 2023 | December 7, 2023 | September 28, 2023 |

| SJ Reply Briefs | October 12, 2023 | January 4, 2024 | October 26, 2023 |

Cameron

**Cameron Ginder**

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 3757  **M** +1 260 414 9744
**F** +1 312 862 2200

cameron.ginder@kirkland.com

---

**From:** Canter, Jacob <JCanter@crowell.com>
**Sent:** Monday, January 9, 2023 6:47 PM
**To:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Cc:** Hughes, Dalton <DHughes@crowell.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

Thank you, Cameron.  3:30 PT / 5:30 CT works on our end.  I will send an invite to you and Miranda and to your local counsel.  Can you please confirm that your local counsel will attend in case this is an opposed request?

**Jacob Canter**
Pronouns: he/him/his
Crowell & Moring LLP
jcanter@crowell.com
+1.415.365.7210 direct  |  +1.415.385.3716 mobile

---

**From:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Sent:** Monday, January 9, 2023 3:24 PM
**To:** Canter, Jacob <JCanter@crowell.com>
**Cc:** Hughes, Dalton <DHughes@crowell.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** Re: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

External Email

I can be free before 2, from 3-4, and after 5ct.

**Cameron Ginder**

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 3757  **M** +1 260 414 9744
**F** +1 312 862 2200

cameron.ginder@kirkland.com

On Jan 9, 2023, at 5:15 PM, Canter, Jacob <JCanter@crowell.com> wrote:

Thank you for the response, Cameron.  Given that the substantial completion deadline is Thurs., Jan 12, please let us know your availability to participate in a conferral (if necessary) on Tues., Jan 10, so we have adequate time to contact the court with the joint or opposed request.

**Jacob Canter**
Pronouns: he/him/his
Crowell & Moring LLP
jcanter@crowell.com
+1.415.365.7210 direct  |  +1.415.385.3716 mobile

---

**From:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Sent:** Monday, January 9, 2023 2:34 PM
**To:** Canter, Jacob <JCanter@crowell.com>; Hughes, Dalton <DHughes@crowell.com>
**Cc:** Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

[External Email]

Jacob - We will have a response on the schedule by mid-day tomorrow.  We are also preparing a response to ROSS's most recent letter and can schedule a meet and confer then.

Cameron

**Cameron Ginder**
_____
**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 3757  **M** +1 260 414 9744
**F** +1 312 862 2200
_____
cameron.ginder@kirkland.com

---

**From:** Canter, Jacob <JCanter@crowell.com>
**Sent:** Friday, January 6, 2023 2:42 PM
**To:** Ginder, Cameron <cameron.ginder@kirkland.com>; Hughes, Dalton <DHughes@crowell.com>
**Cc:** Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

Cameron,

Thank you for the response.  Please respond to the scheduling proposal by no later than **Monday January 9 at 11 PT** so that we can have enough time to confer and contact the court with either a joint or opposed request.

Also, we have not received a response to the letter regarding Plaintiffs' responses to RFPs 182-233, which I sent on December 29, 2022.  Please also let us know when you are available for a 90-minute final conferral in regards to the letter.  We have availability at the following times:

1. Monday Jan 9, 1:30-3 PT
2. Tuesday Jan 10, 2-4 PT
3. Wednesday Jan 11, 1-3 PT

Kind regards,

**Jacob Canter**
Pronouns: he/him/his
Crowell & Moring LLP
jcanter@crowell.com
+1.415.365.7210 direct  |  +1.415.385.3716 mobile

---

**From:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Sent:** Thursday, January 5, 2023 12:36 PM
**To:** Canter, Jacob <JCanter@crowell.com>; Hughes, Dalton <DHughes@crowell.com>
**Cc:** Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

External Email

Jacob - We are considering your proposal and will get you an answer early next week.  We can confer, if needed, at that time.

Cameron

**Cameron Ginder**

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 3757  **M** +1 260 414 9744
**F** +1 312 862 2200

cameron.ginder@kirkland.com

---

**From:** Canter, Jacob <JCanter@crowell.com>
**Sent:** Thursday, January 5, 2023 12:02 PM
**To:** Ginder, Cameron <cameron.ginder@kirkland.com>; Hughes, Dalton <DHughes@crowell.com>
**Cc:** Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>;

*bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

Hello Cameron and Miranda,

Please let us know if you agree to the proposed schedule or would like to discuss tomorrow. Because both sides still have significant outstanding discovery issues to resolve, we think this extension makes sense.   The letter is reattached.

Kind regards,

**Jacob Canter**
Pronouns: he/him/his
Crowell & Moring LLP
jcanter@crowell.com
+1.415.365.7210 direct  |  +1.415.385.3716 mobile

---

**From:** Canter, Jacob <JCanter@crowell.com>
**Sent:** Friday, December 30, 2022 12:23 PM
**To:** Ginder, Cameron <cameron.ginder@kirkland.com>; Hughes, Dalton <DHughes@crowell.com>
**Cc:** Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

Hello Cameron and Miranda,

Please see the attached letter.  Kind regards,


**Jacob Canter**
Pronouns: he/him/his
Crowell & Moring LLP
jcanter@crowell.com
+1.415.365.7210 direct  |  +1.415.385.3716 mobile

---

**From:** Canter, Jacob <JCanter@crowell.com>
**Sent:** Thursday, December 29, 2022 6:26 PM
**To:** Ginder, Cameron <cameron.ginder@kirkland.com>; Hughes, Dalton <DHughes@crowell.com>
**Cc:** Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

Hello Cameron and Miranda,

Please see the attached letter.  Kind regards,

**Jacob Canter**
Pronouns: he/him/his
Crowell & Moring LLP
jcanter@crowell.com
+1.415.365.7210 direct | +1.415.385.3716 mobile

---

**From:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Sent:** Wednesday, November 23, 2022 3:36 PM
**To:** Hughes, Dalton <DHughes@crowell.com>
**Cc:** Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>;
mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team
<Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>;
*bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** Re: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

External Email

Thanks, Dalton. Thursday works.

Have a nice Thanksgiving.

**Cameron Ginder**

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
T +1 312 862 3757  M +1 260 414 9744
F +1 312 862 2200

cameron.ginder@kirkland.com

> On Nov 23, 2022, at 3:05 PM, Hughes, Dalton <DHughes@crowell.com> wrote:
>
> Cameron,
>
> We are available from 11:30-2:30 PT Thursday Dec. 1st, and 10:30-12 PT Friday Dec.
> 2nd.
>
> Thank you,
> Dalton
>
>
>
> **Dalton Kyle Hughes**
> Pronouns: he/him/his
> Crowell & Moring LLP
> dhughes@crowell.com
> +1.312.840.3253 direct | +1.615.426.7320 mobile

---

**From:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Sent:** Tuesday, November 22, 2022 8:22 PM
**To:** Hughes, Dalton <DHughes@crowell.com>; Means, Miranda

<miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>;
mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com
**Cc:** ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1
<dmoore@Potteranderson.com>; *bpalapura@potteranderson.com
<bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses
to RFPs 182-233

External Email

Dalton/Joachim - Please see attached.

We are not available to meet and confer at the times you mentioned below.  Please let
us know your availability on Thursday and Friday of next week.

Thanks,
Cameron

**Cameron Ginder**

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 3757  **M** +1 260 414 9744
**F** +1 312 862 2200

cameron.ginder@kirkland.com

---

**From:** Hughes, Dalton <DHughes@crowell.com>
**Sent:** Monday, November 21, 2022 2:06 PM
**To:** Ginder, Cameron <cameron.ginder@kirkland.com>; Means, Miranda
<miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>;
mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com
**Cc:** ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1
<dmoore@Potteranderson.com>; *bpalapura@potteranderson.com
<bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses
to RFPs 182-233

Cameron,

We have still not received a response to our November 7, 2022 letter regarding
Plaintiffs' responses to our RFPs. Please provide your availability to meet and confer on
Monday or Tuesday of next week. We are available at 10:30 AM PT, 2:00 PM PT, and
4:00 PM PT on Monday, November 28; and 9:30 AM PT, 12:00 PM PT, and 3:00 PM PT
on Tuesday, November 29.

Best regards,
Dalton

**Dalton Kyle Hughes**
Pronouns: he/him/his

16

Crowell & Moring LLP
dhughes@crowell.com
+1.312.840.3253 direct  |  +1.615.426.7320 mobile

---

**From:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Sent:** Tuesday, November 15, 2022 8:22 AM
**To:** Hughes, Dalton <DHughes@crowell.com>; Means, Miranda
<miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>;
mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com
**Cc:** ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1
<dmoore@Potteranderson.com>; *bpalapura@potteranderson.com
<bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses
to RFPs 182-233

External Email

Dalton - We are preparing a written response to your letter.

Thanks,
Cameron

**Cameron Ginder**

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 3757  **M** +1 260 414 9744
**F** +1 312 862 2200

cameron.ginder@kirkland.com

---

**From:** Hughes, Dalton <DHughes@crowell.com>
**Sent:** Monday, November 14, 2022 3:05 PM
**To:** Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com
**Cc:** ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1
<dmoore@Potteranderson.com>; *bpalapura@potteranderson.com
<bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses
to RFPs 182-233

Counsel,

Please let us know Plaintiffs' positions on the RFPs in the letter sent below. If Plaintiffs
will not produce the documents as requested, then let us know your availability to meet
and confer as to these requests.

Best regards,
Dalton

**Dalton Kyle Hughes**
Pronouns: he/him/his
Crowell & Moring LLP
dhughes@crowell.com
+1.312.840.3253 direct  |  +1.615.426.7320 mobile

---

**From:** Hughes, Dalton <DHughes@crowell.com>
**Sent:** Monday, November 7, 2022 2:58 PM
**To:** Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com
**Cc:** ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

Counsel,

Please see the attached letter.

Best regards,
Dalton

**Dalton Kyle Hughes**
Pronouns: he/him/his
dhughes@crowell.com
+1.312.840.3253 direct  |  +1.615.426.7320 mobile

Crowell & Moring LLP
455 North Cityfront Plaza Drive
Suite 3600
Chicago, IL 60611

## Crowell

**Collaboration Powers Success**

crowell.com
Trade Secrets Trends Blog

This message may contain privileged and confidential information. IF IT WAS SENT TO YOU BY MISTAKE, DO NOT READ IT. Instead, please notify the sender (or postmaster@crowell.com) by reply e-mail, and delete this e-mail. Unauthorized dissemination, forwarding or copying of this e-mail is strictly prohibited.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

# EXHIBIT C

## Canter, Jacob

| | |
|---|---|
| **From:** | Barsanti, Vanessa <vanessa.barsanti@kirkland.com> |
| **Sent:** | Wednesday, April 12, 2023 2:29 PM |
| **To:** | Steinberg, Joachim; Poueymirou, Margaux |
| **Cc:** | Canter, Jacob; Ginder, Cameron; Means, Miranda; #Thomson-Ross; mflynn@morrisnichols.com; Liu, Shira; ROSS-AT Team; *dmoore@Potteranderson.com1; Ramsey, Gabriel; Laytin, Daniel E.; *bpalapura@potteranderson.com; Brown, Andrew L. |
| **Subject:** | RE: West v ROSS | List of Custodians |

External Email

All,

As I relayed to Margaux over the phone before hopping on a flight, Thomson Ross is willing to offer what it considers a more than fair and reasonable compromise with respect to this custodian dispute.

TR is willing to collect and produce responsive non-privileged emails utilizing the prior agreed to search terms from all of the requested custodians with only 2 exceptions, detailed below. TR reserves the right to work with ROSS to amend those search terms, or address irrelevant time periods for individual custodians, to the extent they prove burdensome or otherwise fail to be narrowly tailored to responsive information within these custodians' files.

Bob Biancamano
ROSS expressed interest in Mr. Biancamano given his work on Project Indigo. As ROSS itself indicated, Mr. Biancamano's work on Project Indigo overlapped with Kati Katzenmeyer's. I spoke with Ms. Katzenmeyer, and she confirmed that she directed Mr. Biancamano's market research work on the project. As such, we believe his information would be largely duplicative, and therefore collecting and producing his information would be unreasonably burdensome/disproportionate to its value.

Andrea Seitz
ROSS expressed interest in Ms. Seitz due to her role in competitive intelligence research. I spoke with Christine Post, the Senior Director of Market Research & Competitive Intelligence, who confirmed that Ms. Seitz worked at her direction and that Ms. Post would have Ms. Seitz's work product. Accordingly, because Ms. Post is already an agreed to custodian, collecting and producing Ms. Seitz's communications would be largely duplicative, and therefore is unreasonably burdensome/disproportionate to its value.

For the avoidance of doubt, this would mean that subject to the above reservations re terms and time period, TR would collect and produce for the following custodians:

1. David Curle (Mr. Curle left TR prior to ROSS's assertion of claims, and his PST file is no longer available. In lieu of collecting his PST, TR would agree to search all other agreed to custodians' files for communications with Mr. Curle that hit on the agreed to search terms. I understand ROSS also requests his internal blog. I am not currently aware of whether such still exists, but will inquire regarding its availability.)
2. Kati Katzenmeyer
3. Audrey Zhang
4. Lauren Sazenski
5. Mark Hoerr
6. Vinod Kumar
7. Rachel Vesely
8. Aimee Doles
9. Jenny Deutsch

10. Ben Davis
11. Eric Gleason
12. Maria Redmond
13. Joe Dvorkin
14. legalmarketingleadership@thomson.com - as we previously conveyed, this is simply a listserv. We agree to add this email address as a search term.

Please let us know if this resolves the parties' dispute.

**Vanessa Barsanti**
She/Her/Hers
_____

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 2205
**F** +1 312 862 2200
_____

vanessa.barsanti@kirkland.com

---

**From:** Steinberg, Joachim <JSteinberg@crowell.com>
**Sent:** Tuesday, April 11, 2023 8:41 AM
**To:** Laytin, Daniel E. <dlaytin@kirkland.com>; Ramsey, Gabriel <GRamsey@crowell.com>; Barsanti, Vanessa <vanessa.barsanti@kirkland.com>
**Cc:** Poueymirou, Margaux <MPoueymirou@crowell.com>; Canter, Jacob <JCanter@crowell.com>; Ginder, Cameron <cameron.ginder@kirkland.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; Liu, Shira <SLiu@crowell.com>; ROSS-AT Team <ROSS-ATTeam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>; Brown, Andrew L. <abrown@potteranderson.com>
**Subject:** RE: West v ROSS | List of Custodians

Daniel,

We're available at 1 pm PT/4 pm ET.

Best regards,
Joachim

**Joachim B. Steinberg**
Pronouns: he/him/his
Crowell & Moring LLP
jsteinberg@crowell.com
+1.415.365.7461 direct  |  +1.917.575.6244 mobile

---

**From:** Laytin, Daniel E. <dlaytin@kirkland.com>
**Sent:** Tuesday, April 11, 2023 7:18 AM
**To:** Ramsey, Gabriel <GRamsey@crowell.com>; Barsanti, Vanessa <vanessa.barsanti@kirkland.com>
**Cc:** Steinberg, Joachim <JSteinberg@crowell.com>; Poueymirou, Margaux <MPoueymirou@crowell.com>; Canter, Jacob <JCanter@crowell.com>; Ginder, Cameron <cameron.ginder@kirkland.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; Liu, Shira <SLiu@crowell.com>; ROSS-AT Team <ROSS-ATTeam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>; Brown,

Andrew L. <abrown@potteranderson.com>
**Subject:** RE: West v ROSS | List of Custodians

External Email

Gabriel:

Your email contains numerous inflammatory accusations and allegations against our team and our client:

- Our client has not violated the "public interest in a breathtakingly harmful and persistent way."
- Neither our team nor our client "has been suppressing and hiding evidence."
- No one on our team has engaged in any violations of any of our duties as lawyers.
- Neither our team nor our client has engaged in any "obfuscation."
- Neither our team nor our client has failed to conduct any "proper engagement" in this meet and confer.
- None of our team's actions in this meet and confer call into question any of her or his "professional responsibilities."

These accusations are baseless and inappropriate.

In addition, your threat of "sanctions" and vague reference to "decisions" regarding our team's "professional responsibilities" are similarly inappropriate.

Please retract each of your statements by email this morning.

Our clients have a dispute, which we have been and will continue to resolve in a professional way.

Given the current situation, I would like to participate in the meet and confer on the underlying discovery issue. I am unavailable at the scheduled time of noon eastern so we will need to reschedule.

Our whole team is available today between 2:30 and 4 and between 4 and 5, both eastern.

Please advise as to your team's availability during those time periods.

Thanks,

Dan

**Daniel E. Laytin**

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 2198
**F** +1 312 862 2200

daniel.laytin@kirkland.com

**From:** Ramsey, Gabriel <GRamsey@crowell.com>
**Sent:** Monday, April 10, 2023 9:21 PM
**To:** Barsanti, Vanessa <vanessa.barsanti@kirkland.com>
**Cc:** Steinberg, Joachim <JSteinberg@crowell.com>; Poueymirou, Margaux <MPoueymirou@crowell.com>; Canter, Jacob <JCanter@crowell.com>; Ginder, Cameron <cameron.ginder@kirkland.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; Liu, Shira <SLiu@crowell.com>; ROSS-AT Team <ROSS-ATTeam@crowell.com>; *dmoore@Potteranderson.com1

<dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>; Brown, Andrew L. <abrown@potteranderson.com>

**Subject:** Re: West v ROSS | List of Custodians

Vanessa,

Greetings. We haven't had the pleasure of engaging and I am sorry to have to interrupt your evening.  This is a very important matter where your client has injured the public interest in a breathtakingly harmful and persistent way.  I hope your team understands that.  We are aware that your client has been suppressing and hiding evidence.  We understand that you are acting at their direction, so the ultimate sanction will be directed there.  But to avoid any further violation of your duties as a lawyer I would appreciate if you join all our our team's requests and cease obfuscation.  This can begin with with proper engagement of Mr. Steinberg's request below. You are going to have to make some decisions regarding your professional responsibilities but I trust you will make the right decisions. We sincerely look forward to your response.

Sincerely,

GMR

Gabriel M. Ramsey

gramsey@crowell.com<mailto:GRamsey@crowell.com>

+1.415.365.7207 direct

 |

+1.415.533.0783 mobile

Crowell & Moring LLP

3 Embarcadero Center

26th Floor

San Francisco

,

CA

94111

Crowell

Collaboration Powers Success

crowell.com<https://urldefense.com/v3/__http://crowell.com/__;!!MPAZj1r9Mghpww!FtFATfgwNmKkX8MhcDG
OV6CMuUpbWGwvzMb3MZ235bLWeU-PJIlyjcoY1t2oMII20xAHw0x18BeiMuUsnRe6LQ$>

On Apr 10, 2023, at 6:59 PM, Barsanti, Vanessa <vanessa.barsanti@kirkland.com> wrote:

  External Email

Joachim,

As to time period, it's not particularly clear to me why my representation as an officer of the court is somehow
unacceptable, but the information I provided you on time period is publicly available and in many cases
substantiated by the hundreds of thousands of documents already produced to ROSS.

As to scheduling, I appreciate the accommodation as you put it, but I would point out that it was in fact a
religious holiday weekend that many, including myself, travel for to be with loved ones. I was unavailable for a
mere two business days to speak on the phone, but even in that time I worked to get you a proposed
compromise by email. I understand you are ultimately going to choose to treat tomorrow as a final meet and
confer, but we maintain it is premature.

Ultimately this is quite simple: if ROSS has not changed its position, then what is the compromise it is
proposing?

Vanessa Barsanti
-------------------------------------------------
KIRKLAND & ELLIS LLP
300 North LaSalle, Chicago, IL 60654<x-apple-data-detectors://1/1>
T +1 312 862 2205<tel:+1%20312%20862%202205>
F +1 312 862 2200<tel:+1%20312%20862%202200>

-------------------------------------------------------
vanessa.barsanti@kirkland.com<mailto:garvin.choa@kirkland.com>

On Apr 10, 2023, at 6:36 PM, Steinberg, Joachim <JSteinberg@crowell.com> wrote:


Vanessa, When we spoke last week, we indicated we could consider compromises. The one you have offered is unacceptable. That is not a change in our position. We do not agree to these time limitations because once again you are asking us to
Vanessa,

When we spoke last week, we indicated we could consider compromises. The one you have offered is unacceptable. That is not a change in our position. We do not agree to these time limitations because once again you are asking us to take it on faith that those are the only custodians with relevant information and that those are the only time periods that matter. But Plaintiffs have an obligation to respond to our requests in full, and we are not in a position to continue to guess at what the correct custodian list or years would be, and based on the deficiencies in the last production, cannot accept your representations.

We stated last week that we would consider tomorrow's meeting a final meet and confer. We only offered to push it out to Tuesday to accommodate your travel schedule. We also pointed out that we have, throughout this litigation, agreed to delay final meet and confers only to then face timeliness arguments from your side when we did approach the Court. If we cannot reach an agreement tomorrow, we will raise this issue with the Court.

Best regards,
Joachim

Joachim B. Steinberg


Pronouns: he/him/his



Crowell & Moring LLP

jsteinberg@crowell.com<mailto:JSteinberg@crowell.com>


+1.415.365.7461 direct

 |


+1.917.575.6244 mobile

From: Barsanti, Vanessa <vanessa.barsanti@kirkland.com>
Sent: Monday, April 10, 2023 5:03 PM
To: Steinberg, Joachim <JSteinberg@crowell.com>; Poueymirou, Margaux <MPoueymirou@crowell.com>
Cc: Canter, Jacob <JCanter@crowell.com>; Ginder, Cameron <cameron.ginder@kirkland.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; Liu, Shira <SLiu@crowell.com>; ROSS-AT Team <ROSS-ATTeam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>; Brown, Andrew L. <abrown@potteranderson.com>
Subject: RE: West v ROSS | List of Custodians

 External Email
Joachim,

When we spoke last week you indicated that there would be room for compromise on the requested list of additional custodians. By way of example only, as we walked through each custodian, you mentioned that ROSS was interested in both Kati Katzenmeyer and Bob Biancamano for their work in relation to Project Indigo, and that it was willing to compromise on one or the other. The only thing I can garner from your last note is that ROSS is demanding its full list of custodians. If that is not the case then I welcome you to clear up the issue with a counterproposal.

Further, I would like to understand ROSS's objection to the proposed time scope for the individuals included in my prior email.  For Audrey Zhang, we proposed searching from April 2016 forward because that is the time frame in which she has been in Legal Customer Sales & Experience Finance. Prior to that she was a lower level financial analyst and staff accountant. Neither of which are relevant to the reason ROSS indicated it desired her emails, which as I understood it was in relation to how pricing decisions are implemented based on different market segmentations. With respect to Mark Hoerr, ROSS alleged his relevancy to be his leadership in the pricing sector and his ability to give final approval on pricing decisions. Prior to May 2016, our proposed searching start date, Mr. Hoerr was also in financial analyst positions related to contract value management. His role in strategic pricing did not begin until May 2016. Lastly, for Ben Davis, he began his tenure at Thomson Reuters selling ProDoc, which is a document automation system not at issue in this matter. ROSS indicated it was interested in him due to his role in strategy and pricing, including any work on direct sales of Westlaw. He was not an account representative until January 2012, the date at which I proposed searching his emails. These temporal issues are not limited to the three custodians listed above, but rather run deep into ROSS's proposed custodian additions. Please be prepared to discuss this issue tomorrow.

Again, we do not agree that a final meet and confer is appropriate at this time, especially in light of ROSS's change in position.

Vanessa Barsanti
She/Her/Hers
-----------------------------------------------------
KIRKLAND & ELLIS LLP
300 North LaSalle, Chicago, IL 60654
T +1 312 862 2205
F +1 312 862 2200
-----------------------------------------------------
vanessa.barsanti@kirkland.com<mailto:garvin.choa@kirkland.com>

From: Steinberg, Joachim <JSteinberg@crowell.com<mailto:JSteinberg@crowell.com>>
Sent: Monday, April 10, 2023 4:03 PM
To: Barsanti, Vanessa <vanessa.barsanti@kirkland.com<mailto:vanessa.barsanti@kirkland.com>>; Poueymirou, Margaux <MPoueymirou@crowell.com<mailto:MPoueymirou@crowell.com>>

Cc: Canter, Jacob <JCanter@crowell.com<mailto:JCanter@crowell.com>>; Ginder, Cameron <cameron.ginder@kirkland.com<mailto:cameron.ginder@kirkland.com>>; Means, Miranda <miranda.means@kirkland.com<mailto:miranda.means@kirkland.com>>; #Thomson-Ross <thomson-ross@kirkland.com<mailto:thomson-ross@kirkland.com>>; mflynn@morrisnichols.com<mailto:mflynn@morrisnichols.com>>; Liu, Shira <SLiu@crowell.com<mailto:SLiu@crowell.com>>; ROSS-AT Team <ROSS-ATTeam@crowell.com<mailto:ROSS-ATTeam@crowell.com>>; *dmoore@Potteranderson.com1<mailto:*dmoore@Potteranderson.com1> <dmoore@Potteranderson.com<mailto:dmoore@Potteranderson.com>>; *bpalapura@potteranderson.com<mailto:*bpalapura@potteranderson.com> <bpalapura@potteranderson.com<mailto:bpalapura@potteranderson.com>>; Brown, Andrew L. <abrown@potteranderson.com<mailto:abrown@potteranderson.com>>
Subject: RE: West v ROSS | List of Custodians

Vanessa, We do not agree to limit the list of custodians, or the temporal limitations. Given the discovery schedule in this case, which was proposed by Plaintiffs, despite ROSS's repeated statements that a longer schedule would be more appropriate,

Vanessa,

We do not agree to limit the list of custodians, or the temporal limitations. Given the discovery schedule in this case, which was proposed by Plaintiffs, despite ROSS's repeated statements that a longer schedule would be more appropriate, we need to have our final meet and confer on this issue as scheduled tomorrow on April 11, 2023.

A search for "legalmarketingleadership@thomson.com<mailto:legalmarketingleadership@thomson.com>" in Christine Post's documents is acceptable to us, provided you can confirm that any emails she might have deleted would also be captured by that search.

Kind regards,
Joachim

Joachim B. Steinberg


Pronouns: he/him/his



Crowell & Moring LLP


jsteinberg@crowell.com<mailto:JSteinberg@crowell.com>


+1.415.365.7461 direct


|


+1.917.575.6244 mobile

From: Barsanti, Vanessa <vanessa.barsanti@kirkland.com<mailto:vanessa.barsanti@kirkland.com>>
Sent: Monday, April 10, 2023 1:29 PM
To: Poueymirou, Margaux <MPoueymirou@crowell.com<mailto:MPoueymirou@crowell.com>>
Cc: Canter, Jacob <JCanter@crowell.com<mailto:JCanter@crowell.com>>; Ginder, Cameron
<cameron.ginder@kirkland.com<mailto:cameron.ginder@kirkland.com>>; Means, Miranda
<miranda.means@kirkland.com<mailto:miranda.means@kirkland.com>>; #Thomson-Ross <thomson-ross@kirkland.com<mailto:thomson-ross@kirkland.com>>;
mflynn@morrisnichols.com<mailto:mflynn@morrisnichols.com>>; Steinberg, Joachim
<JSteinberg@crowell.com<mailto:JSteinberg@crowell.com>>; Liu, Shira
<SLiu@crowell.com<mailto:SLiu@crowell.com>>; ROSS-AT Team <ROSS-ATTeam@crowell.com<mailto:ROSS-ATTeam@crowell.com>>;
*dmoore@Potteranderson.com1<mailto:*dmoore@Potteranderson.com1>
<dmoore@Potteranderson.com<mailto:dmoore@Potteranderson.com>>;
*bpalapura@potteranderson.com<mailto:*bpalapura@potteranderson.com>
<bpalapura@potteranderson.com<mailto:bpalapura@potteranderson.com>>; Brown, Andrew L.
<abrown@potteranderson.com<mailto:abrown@potteranderson.com>>
Subject: Re: West v ROSS | List of Custodians

 External Email
Joachim, Margaux, and team,

While Thomson Reuters does not believe that ROSS's request for additional custodians is timely, proportional, or calls for uniquely relevant information, in the spirit of compromise, it is willing to collect and produce relevant non-privileged material for the below requested custodians. Per our prior conversation regarding utilizing targeted search terms, we are working to identify terms within the parties' agreed to set that we believe are most appropriately tailored to each custodian. I'll follow up with a proposal on that, but if there are particular terms ROSS would like to have searched then please let us know as soon as possible. Additionally, where indicated, we have proposed limiting the time period searched to correspond with the period in which the individual held a role related to the information ROSS indicated it seeks.

1) Kati Katzenmeyer
2) Audrey Zhang (August 2016 to December 2022)
3) Lauren Sazenski
4) Mark Hoerr (May 2016 to December 2022)
5) Ben Davis (January 2012 to December 2022)
6) Joe Dvorkin

In addition, as we discussed, Christine Post (a previously agreed to custodian) has been a recipient of the Legal Marketing Leadership listserv since its inception. As such, TR can agree to utilize the listserv email address (legalmarketingleadership@thomson.com<mailto:legalmarketingleadership@thomson.com>) as a search term across documents already collected.

While we are happy to meet and confer tomorrow if ROSS does not agree to this compromise, I do not think a final meet and confer is actually warranted at this point, especially as I expect that ROSS will have thoughts about search terms for these folks that we have not yet heard.

Vanessa Barsanti

She/Her/Hers

-------------------------------------------------------

KIRKLAND & ELLIS LLP

300 North LaSalle, Chicago, IL 60654

T +1 312 862 2205

F +1 312 862 2200

-------------------------------------------------------

vanessa.barsanti@kirkland.com<mailto:garvin.choa@kirkland.com>

On Apr 5, 2023, at 8:19 PM, Poueymirou, Margaux
<MPoueymirou@crowell.com<mailto:MPoueymirou@crowell.com>> wrote:

Hi Vanessa, It was nice speaking today. We are happy to elevate the following five custodians for more immediate rolling productions: 1. Mark Hoerr 2. Eric Gleason 3. Joe Dvorkin 4. David Curle 5. Kati Katzenmeyer However, we are still seeking
Hi Vanessa,
It was nice speaking today.

We are happy to elevate the following five custodians for more immediate rolling productions:

1.      Mark Hoerr
2.      Eric Gleason
3.      Joe Dvorkin
4.      David Curle
5.      Kati Katzenmeyer
However, we are still seeking productions from all custodians discussed on today's call.  In the interest of continued negotiation, and as discussed, we can provide narrower search terms that correlate with some of the additional custodians to streamline the collection of their documents were that to influence your thinking.

Thanks very much,

Margaux Poueymirou


*


Pronouns: she/her/hers


Crowell & Moring LLP

mpoueymirou@crowell.com<mailto:MPoueymirou@crowell.com>

+1.415.365.7243 direct

|

+917-685-9775 mobile

*Licensed to practice in New York Only and under the Supervision of the Partners of Crowell & Moring LLP.  Not admitted in California.

From: Barsanti, Vanessa <vanessa.barsanti@kirkland.com<mailto:vanessa.barsanti@kirkland.com>>
Sent: Wednesday, April 5, 2023 12:33 PM
To: Poueymirou, Margaux <MPoueymirou@crowell.com<mailto:MPoueymirou@crowell.com>>; Canter, Jacob <JCanter@crowell.com<mailto:JCanter@crowell.com>>; Ginder, Cameron <cameron.ginder@kirkland.com<mailto:cameron.ginder@kirkland.com>>; Means, Miranda <miranda.means@kirkland.com<mailto:miranda.means@kirkland.com>>; #Thomson-Ross <thomson-ross@kirkland.com<mailto:thomson-ross@kirkland.com>>; mflynn@morrisnichols.com<mailto:mflynn@morrisnichols.com>>; Steinberg, Joachim <JSteinberg@crowell.com<mailto:JSteinberg@crowell.com>>; Liu, Shira <SLiu@crowell.com<mailto:SLiu@crowell.com>>
Cc: ROSS-AT Team <ROSS-ATTeam@crowell.com<mailto:ROSS-ATTeam@crowell.com>>; *dmoore@Potteranderson.com1<mailto:*dmoore@Potteranderson.com1> <dmoore@Potteranderson.com<mailto:*dmoore@Potteranderson.com>>; *bpalapura@potteranderson.com<mailto:*bpalapura@potteranderson.com> <bpalapura@potteranderson.com<mailto:bpalapura@potteranderson.com>>; Brown, Andrew L. <abrown@potteranderson.com<mailto:abrown@potteranderson.com>>
Subject: RE: West v ROSS | List of Custodians

 External Email
Joachim, Shira, and Margaux,

Thank you for the discussion today. Per our conversation, if you could please confirm your top five custodian requests this afternoon I would appreciate that in our consideration of your proposal.

Vanessa Barsanti
She/Her/Hers
-------------------------------------------------------
KIRKLAND & ELLIS LLP
300 North LaSalle, Chicago, IL 60654
T +1 312 862 2205
F +1 312 862 2200

------------------------------------------------------
vanessa.barsanti@kirkland.com<mailto:garvin.choa@kirkland.com>

From: Poueymirou, Margaux <MPoueymirou@crowell.com<mailto:MPoueymirou@crowell.com>>
Sent: Monday, April 3, 2023 11:54 AM
To: Barsanti, Vanessa <vanessa.barsanti@kirkland.com<mailto:vanessa.barsanti@kirkland.com>>; Canter, Jacob <JCanter@crowell.com<mailto:JCanter@crowell.com>>; Ginder, Cameron <cameron.ginder@kirkland.com<mailto:cameron.ginder@kirkland.com>>; Means, Miranda <miranda.means@kirkland.com<mailto:miranda.means@kirkland.com>>; #Thomson-Ross <thomson-ross@kirkland.com<mailto:thomson-ross@kirkland.com>>; mflynn@morrisnichols.com<mailto:mflynn@morrisnichols.com>
Cc: ROSS-AT Team <ROSS-ATTeam@crowell.com<mailto:ROSS-ATTeam@crowell.com>>; *dmoore@Potteranderson.com1<mailto:*dmoore@Potteranderson.com1> <dmoore@Potteranderson.com<mailto:dmoore@Potteranderson.com>>; *bpalapura@potteranderson.com<mailto:*bpalapura@potteranderson.com> <bpalapura@potteranderson.com<mailto:bpalapura@potteranderson.com>>; Brown, Andrew L. <abrown@potteranderson.com<mailto:abrown@potteranderson.com>>
Subject: RE: West v ROSS | List of Custodians

Thanks Vanessa, We are free between 11-1 pm PT. Please circulate an invite. We look forward to speaking, Margaux Poueymirou * Pronouns: she/her/hers Crowell & Moring LLP mpoueymirou@crowell.com +1.415.365.7243 direct | +917-685-9775

Thanks Vanessa,

We are free between 11-1 pm PT. Please circulate an invite.

We look forward to speaking,

Margaux Poueymirou

*


Pronouns: she/her/hers



Crowell & Moring LLP


mpoueymirou@crowell.com<mailto:MPoueymirou@crowell.com>


+1.415.365.7243 direct


 |


+917-685-9775 mobile

\*Licensed to practice in New York Only and under the Supervision of the Partners of Crowell & Moring LLP.  Not admitted in California.

From: Barsanti, Vanessa <vanessa.barsanti@kirkland.com<mailto:vanessa.barsanti@kirkland.com>>
Sent: Monday, April 3, 2023 11:33 AM
To: Poueymirou, Margaux <MPoueymirou@crowell.com<mailto:MPoueymirou@crowell.com>>; Canter, Jacob <JCanter@crowell.com<mailto:JCanter@crowell.com>>; Ginder, Cameron <cameron.ginder@kirkland.com<mailto:cameron.ginder@kirkland.com>>; Means, Miranda <miranda.means@kirkland.com<mailto:miranda.means@kirkland.com>>; #Thomson-Ross <thomson-ross@kirkland.com<mailto:thomson-ross@kirkland.com>>; mflynn@morrisnichols.com<mailto:mflynn@morrisnichols.com>
Cc: ROSS-AT Team <ROSS-ATTeam@crowell.com<mailto:ROSS-ATTeam@crowell.com>>; *dmoore@Potteranderson.com1<mailto:*dmoore@Potteranderson.com1> <dmoore@Potteranderson.com<mailto:dmoore@Potteranderson.com>>; *bpalapura@potteranderson.com<mailto:*bpalapura@potteranderson.com> <bpalapura@potteranderson.com<mailto:bpalapura@potteranderson.com>>; Brown, Andrew L. <abrown@potteranderson.com<mailto:abrown@potteranderson.com>>
Subject: RE: West v ROSS | List of Custodians

 External Email
Margaux,

While we disagree with the points in your note, it is not productive at this point to continue going back and forth via email. We are not available to meet today or tomorrow, but are happy to discuss on Wednesday. We can be available at 9:30 or between 11 and 1 PT. What time works for you all?

Vanessa Barsanti
She/Her/Hers
-----------------------------------------------------
KIRKLAND & ELLIS LLP
300 North LaSalle, Chicago, IL 60654
T +1 312 862 2205
F +1 312 862 2200
-----------------------------------------------------
vanessa.barsanti@kirkland.com<mailto:garvin.choa@kirkland.com>

From: Poueymirou, Margaux <MPoueymirou@crowell.com<mailto:MPoueymirou@crowell.com>>
Sent: Friday, March 31, 2023 11:41 PM
To: Barsanti, Vanessa <vanessa.barsanti@kirkland.com<mailto:vanessa.barsanti@kirkland.com>>; Canter, Jacob <JCanter@crowell.com<mailto:JCanter@crowell.com>>; Ginder, Cameron <cameron.ginder@kirkland.com<mailto:cameron.ginder@kirkland.com>>; Means, Miranda <miranda.means@kirkland.com<mailto:miranda.means@kirkland.com>>; #Thomson-Ross <thomson-ross@kirkland.com<mailto:thomson-ross@kirkland.com>>; mflynn@morrisnichols.com<mailto:mflynn@morrisnichols.com>

Cc: ROSS-AT Team <ROSS-ATTeam@crowell.com<mailto:ROSS-ATTeam@crowell.com>>;
*dmoore@Potteranderson.com1<mailto:*dmoore@Potteranderson.com1>
<dmoore@Potteranderson.com<mailto:dmoore@Potteranderson.com>>;
*bpalapura@potteranderson.com<mailto:*bpalapura@potteranderson.com>
<bpalapura@potteranderson.com<mailto:bpalapura@potteranderson.com>>; Brown, Andrew L.
<abrown@potteranderson.com<mailto:abrown@potteranderson.com>>
Subject: RE: West v ROSS | List of Custodians

Vanessa: Ross is entitled to additional custodians at this time—and our request should come as no surprise. All eight custodians you identified and produced hold, or held, senior, high-level positions at Westlaw. We have persistently indicated

Vanessa:

Ross is entitled to additional custodians at this time—and our request should come as no surprise.  All eight custodians you identified and produced hold, or held, senior, high-level positions at Westlaw. We have persistently indicated that we would likely need more junior level custodians but were willing to make this determination once we reviewed discovery.  You made your first production approximately 7 weeks ago, after a several month delay.  Unsurprisingly, our review of your productions has revealed the inadequacy of your eight custodians—and our valid need for more junior level custodians, as well as for custodians who worked in different departments.  It is an unremarkable fact of litigation that new custodians are borne from document review.

The additional custodians we have identified held varying roles at Westlaw and worked across departments. Our review of documents on which they appear by happenstance strongly suggests that these employees' emails, internal blog posts, and PowerPoint creations—among other communications—are highly probative of the central issues in this case.

Finally, in light of the Court's rejection of your arguments regarding the relevant temporal scope of discovery, you have an affirmative duty to identify promptly additional relevant custodians who worked at Westlaw consistent with the temporal scope ordered by the Court.

Given the approaching discovery cut off, we would like to schedule a meet and confer on Monday or Tuesday to discuss the foregoing.  Please let us know of your availability.

Thanks very much,

Margaux Poueymirou


*


Pronouns: she/her/hers



Crowell & Moring LLP


mpoueymirou@crowell.com<mailto:MPoueymirou@crowell.com>

+1.415.365.7243 direct

|

+917-685-9775 mobile

*Licensed to practice in New York Only and under the Supervision of the Partners of Crowell & Moring LLP.  Not admitted in California.

From: Barsanti, Vanessa <vanessa.barsanti@kirkland.com<mailto:vanessa.barsanti@kirkland.com>>
Sent: Friday, March 31, 2023 8:32 AM
To: Canter, Jacob <JCanter@crowell.com<mailto:JCanter@crowell.com>>; Ginder, Cameron <cameron.ginder@kirkland.com<mailto:cameron.ginder@kirkland.com>>; Means, Miranda <miranda.means@kirkland.com<mailto:miranda.means@kirkland.com>>; #Thomson-Ross <thomson-ross@kirkland.com<mailto:thomson-ross@kirkland.com>>; mflynn@morrisnichols.com<mailto:mflynn@morrisnichols.com>
Cc: ROSS-AT Team <ROSS-ATTeam@crowell.com<mailto:ROSS-ATTeam@crowell.com>>; *dmoore@Potteranderson.com1<mailto:*dmoore@Potteranderson.com1> <dmoore@Potteranderson.com<mailto:dmoore@Potteranderson.com>>; *bpalapura@potteranderson.com<mailto:*bpalapura@potteranderson.com> <bpalapura@potteranderson.com<mailto:bpalapura@potteranderson.com>>; Brown, Andrew L. <abrown@potteranderson.com<mailto:abrown@potteranderson.com>>
Subject: RE: West v ROSS | List of Custodians

 External Email
Jacob,

I write in response to your March 29 email below.

First, in complying with the Court's March 29 order, Thomson Reuters will use the same custodians the parties previously agreed to.  As an initial matter, Thomson Reuters disclosed its custodian list on January 24, 2023.  The next day, at ROSS's request, we provided information about those custodians' tenure and job titles.  The parties then exchanged several rounds of correspondence and discussed this issue on multiple meet and confers. As a result, Thomson Reuters agreed to search for and export information from its sales platform, Conga, which I've confirmed is in progress. After the parties reached that agreement, ROSS raised no further issues with Thomson Reuters' proposed custodians in any further discovery letter or in any meet and confer.  Thomson Reuters collected, reviewed, and produced documents based on the parties' agreed custodians and search terms.  Further, nothing in the Court's ruling makes "the current custodian list untenable."  The only issue before the Court was the temporal scope of Thomson Reuters' production.  And, as is clear from the employment history that we provided over two months ago, Thomson Reuters' custodians have significant employment histories at Thomson Reuters and West Publishing, dating back to the early 1990s. None of the newly requested custodians have such lengthy employment histories.

Second, your contention that Thomson Reuters' custodian list "did not capture all relevant individuals with discoverable information" is besides the point. Nothing requires Thomson Reuters to collect, review, and produce documents from every employee with potentially relevant information. And, as you note, the names on your list "appear on a large number of relevant documents." If anything, this proves that Thomson Reuters' custodian list is, in fact, targeted to capturing relevant information. ROSS has not shown that any of these individuals would be likely to have unique relevant information to its claims.

Third, the parties reached final impasse on the temporal scope of Thomson Reuters' production on February 17. ROSS then waited a month to file its motion to compel. While we are working to meet the current May 11 discovery deadline, Thomson Reuters is not in a position, at this time, to "provide a date certain" for when it will make its supplemental production consistent with the Court's March 29 order. As you know, and as we explained both in meet and confers and in our briefing on ROSS's motion to compel, it takes time to collect, review, and produce documents. Thomson Reuters is acting diligently and expeditiously to meet the current discovery deadline. Indeed, we started the collection process for the prior agreed to custodians immediately after the hearing. However, we only have so much control over how long it will take to collect these documents and cannot make the process go any quicker than technology and Thomson Reuters' systems allow. We will work as quickly as possible and keep ROSS apprised of our progress, and will implement rolling productions.

Vanessa Barsanti
She/Her/Hers
-----------------------------------------------------
KIRKLAND & ELLIS LLP
300 North LaSalle, Chicago, IL 60654
T +1 312 862 2205
F +1 312 862 2200
-----------------------------------------------------
vanessa.barsanti@kirkland.com<mailto:garvin.choa@kirkland.com>

From: Canter, Jacob <JCanter@crowell.com<mailto:JCanter@crowell.com>>
Sent: Wednesday, March 29, 2023 4:58 PM
To: Ginder, Cameron <cameron.ginder@kirkland.com<mailto:cameron.ginder@kirkland.com>>; Means, Miranda <miranda.means@kirkland.com<mailto:miranda.means@kirkland.com>>; #Thomson-Ross <thomson-ross@kirkland.com<mailto:thomson-ross@kirkland.com>>; mflynn@morrisnichols.com<mailto:mflynn@morrisnichols.com>
Cc: ROSS-AT Team <ROSS-ATTeam@crowell.com<mailto:ROSS-ATTeam@crowell.com>>; *dmoore@Potteranderson.com1<mailto:*dmoore@Potteranderson.com1> <dmoore@Potteranderson.com<mailto:dmoore@Potteranderson.com>>; *bpalapura@potteranderson.com<mailto:*bpalapura@potteranderson.com> <bpalapura@potteranderson.com<mailto:bpalapura@potteranderson.com>>; Brown, Andrew L. <abrown@potteranderson.com<mailto:abrown@potteranderson.com>>
Subject: RE: West v ROSS | List of Custodians

Cameron, I inadvertently left Heather Miller-Sammons off of my list of below names. My apologies. Please add her name to the below list of custodians. Thank you, Jacob Canter Pronouns: he/him/his Crowell & Moring LLP jcanter@crowell.com

Cameron,

I inadvertently left Heather Miller-Sammons off of my list of below names. My apologies. Please add her name to the below list of custodians. Thank you,

Jacob Canter

Pronouns: he/him/his

Crowell & Moring LLP

jcanter@crowell.com<mailto:JCanter@crowell.com>

+1.415.365.7210 direct

  |

+1.415.385.3716 mobile

From: Canter, Jacob <JCanter@crowell.com<mailto:JCanter@crowell.com>>
Sent: Wednesday, March 29, 2023 11:14 AM
To: Ginder, Cameron <cameron.ginder@kirkland.com<mailto:cameron.ginder@kirkland.com>>; Means, Miranda <miranda.means@kirkland.com<mailto:miranda.means@kirkland.com>>; #Thomson-Ross <thomson-ross@kirkland.com<mailto:thomson-ross@kirkland.com>>; mflynn@morrisnichols.com<mailto:mflynn@morrisnichols.com>
Cc: ROSS-AT Team <ROSS-ATTeam@crowell.com<mailto:ROSS-ATTeam@crowell.com>>; Moore, David E. <dmoore@potteranderson.com<mailto:dmoore@potteranderson.com>>; Palapura, Bindu A. <bpalapura@potteranderson.com<mailto:bpalapura@potteranderson.com>>; Brown, Andrew L. <abrown@potteranderson.com<mailto:abrown@potteranderson.com>>
Subject: West v ROSS | List of Custodians

Dear Cameron:

We write regarding the production of additional discovery in light of the Tuesday, March 28 ruling by the Court.

First, please let us know the list of custodians you will query as a result of Tuesday's discovery order. The ruling has made the current custodian list untenable. Please also confirm you will expand your current custodian list with these individuals for the documents and searches you have already produced in line with the above.

Second, even prior to Tuesday's discovery order, Plaintiffs' list of custodians was inadequate as it did not capture all relevant individuals with discoverable information. The following custodians were not queried although their names appear on a large number of relevant documents, indicating that those custodians must possess relevant information—or their names appear on important relevant documents, indicating that they must possess important relevant documents. Please produce documents with these individuals under current searches and for all new relevant time periods as outlined above.

1. David Curle
2. Kati Katzenmeyer
3. Bob Biancamano
4. Andrea Seitz
5. Audrey Zhang
6. Lauren Sazenski
7. Mark Hoerr
8. Vinod Kumar
9. Rachel Vesely
10. Aimee Doles
11. Jenny Deutsch
12. Ben Davis
13. Eric Gleason
14. Maria Redmond
15. Joe Dvorkin
16. David Curle
17. legalmarketingleadership@thomson.com<mailto:legalmarketingleadership@thomson.com>

Third, please let us know when Plaintiffs will be producing documents consistent with the Court's Tuesday order and the additional custodians referenced above. Please provide a date certain on when the documents will be produced. If you do not provide us a date certain within the week, we will need to go to the Court to request a date certain due to the impending discovery deadline.

Regards,
Jacob Canter

Pronouns: he/him/his

jcanter@crowell.com<mailto:JCanter@crowell.com>

+1.415.365.7210 direct

|

+1.415.385.3716 mobile

LinkedIn<https://urldefense.com/v3/__https://www.linkedin.com/in/jacob-canter-6a53b0120/__;!!MPAZj1r9Mghpww!BJZRBoMhTDpamwbnp0KoZKG2T84hRNHHdqsQ6aolohxonEtgzJw_k-sqZynNCAqb6meD7ysZ8o-y7lMJpcFlig$>
Crowell& Moring LLP

3 Embarcadero Center

26th Floor

San Francisco

,

CA

94111

Crowell

Collaboration Powers Success

crowell.com<https://urldefense.com/v3/__http:/www.crowell.com/__;!!MPAZj1r9Mghpww!BJZRBoMhTDpamwbnp0KoZKG2T84hRNHHdqsQ6aolohxonEtgzJw_k-sqZynNCAqb6meD7ysZ8o-y7lMyhe0abw$>
Thismessage may contain privileged and confidential information. IF IT WAS SENT TO YOU BY MISTAKE, DO NOT READ IT. Instead, please notify the sender (or postmaster@crowell.com<mailto:postmaster@crowell.com>) by reply e-mail, and delete this e-mail. Unauthorized dissemination, forwarding or copying of this e-mail is strictly prohibited.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com<mailto:postmaster@kirkland.com>, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com<mailto:postmaster@kirkland.com>, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com<mailto:postmaster@kirkland.com>, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com<mailto:postmaster@kirkland.com>, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com<mailto:postmaster@kirkland.com>, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error,

please notify us immediately by return email or by email to
[postmaster@kirkland.com<mailto:postmaster@kirkland.com](mailto:postmaster@kirkland.com)>, and destroy this communication and all copies
thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

# EXHIBIT D

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION, | ) ) ) ) | |
| Plaintiffs/Counterdefendants, | ) ) | C.A. No. 20-613-SB |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| ROSS INTELLIGENCE INC., | ) ) ) | |
| Defendants/Counterclaimant. | ) | |

**DEFENDANT/COUNTERCLAIMANT ROSS INTELLIGENCE INC.'S FIRST SET OF COUNTERCLAIM REQUESTS FOR PRODUCTION TO PLAINTIFF/COUNTERDEFENDANTS THOMSON REUTERS ENTERPRISE CENTRE GMBH AND WEST PUBLISHING CORPORATION (NOS. 182-233)**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the Local Rules of this Court, Defendant / Counterclaimant ROSS Intelligence Inc. serves the following requests for production on Plaintiffs / Counterdefendants Thomson Reuters Enterprise Centre GmbH and West Publishing Corporation.

**DEFINITIONS**

Insofar as any of the terms below are used herein, the following definitions shall apply:

1.      The term "THOMSON REUTERS" as used herein means Plaintiff / Counterdefendant Thomson Reuters Enterprise Centre GmbH, and its present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on its behalf.

2.      The term "WEST" as used herein means Plaintiff / Counterdefendant West Publishing Corporation, and its present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on its behalf.

3.      The terms "YOU," "YOUR," and "PLAINTIFFS" as used herein means THOMSON REUTERS and WEST.

4.      The terms "ROSS," "DEFENDANT," and "COUNTERCLAIMANT," as used herein mean ROSS Intelligence, Inc., and its present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on its behalf.

5.      The terms "PUBLIC LAW DATABASE" and "PUBLIC LAW DATABASES" as used herein mean a digital collection, or separate digital collections, in any digital form, format, arrangement, or organization whatsoever, that INCLUDES public text documents such as judicial opinions, administrative rulings, or legislative enactments such as statutes, public ordinances, rules, regulations.

6.      The terms "LEGAL SEARCH TOOL" and "LEGAL SEARCH TOOLS" as used herein mean any application, program, method, system, tool, or technology that facilitates, supports, augments, or otherwise contributes to ANY search, exploration, or analysis of a PUBLIC LAW DATABASE. Examples, without limitation, of LEGAL SEARCH TOOLS INCLUDE: West Headnotes, the West Key Number System ("WKNS"), key numbers, WKNS topics, WKNS subtopics WestSearch Plus, Boolean search functionality, any other search functionality on WestlawNext, Westlaw Edge, Westlaw Classic, Westlaw Precision, or any other version of the WESTLAW PLATFORM, and any similar applications, programs, methods, systems, tools, or technologies that other PERSONS have developed or license.

7.      The terms "LEGAL SEARCH PLATFORM" and "LEGAL SEARCH PLATFORMS" as used herein mean any websites or applications where legal research can be performed, whether or not it costs a fee to use the website or application. Examples, without limitation, of LEGAL SEARCH PLATFORMS INCLUDE: the WEST PLATFORM, the ROSS PLATFORM, and the platforms and/or services created and/or licensed by COMPETITORS.

8.      The term "WESTLAW PLATFORM" as used herein means WestlawNext, Westlaw Edge, Westlaw Classic, Westlaw Precision, and any other version of the Westlaw

2

LEGAL SEARCH TOOL that was, is, or will be accessible to users.  The term "WESTLAW PLATFORM" does not include PeopleMap or Company Investigator.

9.      The term "ROSS PLATFORM" as used herein means all versions of the online legal research platform previously offered on the website https://www.rossintelligence.com/.

10.      The term "LEXISNEXIS" as used herein means the corporation LexisNexis which makes available the website https://www.lexisnexis.com, and its present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on its behalf.

11.      The term "GOOGLE" as used herein means the company Google LLC which makes available the website https://www.google.com, and its present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on its behalf.

12.      The term "FASTCASE" as used herein means the company Fastcase.com, Inc., which makes available the website https://fastcase.com, and its present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on its behalf.

13.      The term "BLOOMBERG" as used herein means the company Bloomberg L.P., which makes available the website https://bloomberglaw.com, and its present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on its behalf.

14.      The term "CASEMAKER" as used herein means the company that was formerly separate from FASTCASE and formerly offered the separate available website https://casemakerx.com, and its former officers, directors, employees, attorneys, agents,

3

representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on its behalf.

15. The term "CASETEXT" as used herein means the company Casetext which makes available the website https://casetext.com, and its present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on its behalf.

16. The term "WOLTERS KLUWER" as used herein means the company Wolters Kluwer N.V., which makes available the website https://my.vitallaw.com/, and its present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on its behalf.

17. The term "JURISEARCH" as used herein means the company Jurisearch, which makes available the website https://www.jurisearch.com, and its present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on its behalf.

18. The term "COMPETITORS" includes past and present providers of LEGAL SEARCH PLATFORMS, LEGAL SEARCH TOOLS, or PUBLIC LAW DATABASES, including LEXISNEXIS, GOOGLE, FASTCASE, CASEMAKER, CASETEXT, WOLTERS KLUWER, JURISEARCH, ROSS, and any other entity or person that PLAINTIFFS have or do consider competitors in LEGAL SEARCH PLATFORMS, LEGAL SEARCH TOOLS, or PUBLIC LAW DATABASES.

19. The terms "DISCOUNT" and "DISCOUNTS" as used herein mean ANY decrease in the amount that a PERSON is required to pay for a license of a product for ANY purpose, including bundled-product agreements or direct deductions from a standard or listed price.

20.     The term "ARTIFICIAL INTELLIGENCE" as used herein means analysis and development in the fields known as artificial intelligence, machine learning, or natural language processing, including processes, designs, products, and systems.

21.     The terms "AGREEMENT" and "AGREEMENTS" as used herein means all formal and informal licenses, contracts, settlements, stipulations, agreements, arrangements, memoranda of understandings, and other types of written or oral communications between at least two PERSONS.

22.     The term "TERMS OF SERVICES" as used herein means a type of AGREEMENT whereby there are terms accepted by a PERSON to license or otherwise use a LEGAL SEARCH PLATFORM, product, or service.

23.     The terms "DOCUMENT" and "DOCUMENTS" as used herein shall be construed in the broadest sense permissible under the Federal Rules of Civil Procedure and shall include, without limitation any written, printed, typed, recorded, or graphic matter, however produced, reproduced, or stored, including the originals and all nonidentical copies, whether different from the originals by reason of any notations made on such copies or otherwise, in the actual or constructive possession, custody, or control of PLAINTIFFS, including without limitation contracts, letter agreements, records, correspondence, COMMUNICATIONS, electronically stored information, emails, tweets, blog or Internet forum posts or comments, text messages on portable devices, Blackberry Messenger messages, SMS messages, instant messenger messages (e.g. Skype, Slack, etc.), memoranda, handwritten notes, source code, object code, binaries and associated files and/or structures, source code comments, source repository logs, server logs, records or summaries of negotiations, records or summaries of interviews or  conversations, audio or video recordings, copies of video games, all Internet-based media, photographs, corporate minutes, diaries, telephone logs, instant messaging logs, chat room logs, schedules, drawings, product storyboards, product mockups, statistical statements, work papers, disks, data cards, films, data processing files, charts, graphs, microfiche, microfilm, contracts, notices, reports, recitals, statements, worksheets, abstracts, resumes, summaries, jottings, market data, books, journals,

ledgers, audits, maps, diagrams, research documents, newspapers, appointment books, desk calendars, project management charts (e.g., Gantt charts), task management records (e.g., to-do lists), expense reports, computer printout and other computer readable or electronic records, and all drafts or modifications thereof, and all non-identical copies of any such items.

24.     The terms "COMMUNICATION" and "COMMUNICATIONS" mean any manner or method in which information is communicated from one human being to another, including, but not limited to, any means of transmission, sending, and/or receipt of information of any kind, such as speech, writing, language, nonverbal signals, computer electronics of any kind, video tape, photographs, graphs, symbols, sound, radio and/or video signal, telephone, teletype, telecommunication, microfilm, microfiche, and/or media of any kind.

25.     The term "ANY" as used herein shall mean any or all and the term "ALL" as used herein shall mean any or all.

26.     The term "IDENTIFY" as used herein means to provide a description sufficient in specificity such that the document or thing can be unambiguously obtained by means of such description in a request for production pursuant to Rule 34 of the Federal Rules of Civil Procedure, which will include, whether applicable, the document's or thing's title, date, author(s) or creator(s), recipient(s), Bates number, and present location.

27.     The terms "INCLUDE," "INCLUDES," and "INCLUDING" as used herein mean not limited to.

28.     The terms "PERSON" and "PERSONS" as used herein mean any individual, corporation, partnership, association, organization, or other entity of any type or nature.

29.     The terms "RELATE TO," "RELATED TO," and "RELATING TO" as used herein mean constituting, pertaining to, in connection with, reflecting, respecting, regarding, concerning, referring to, based upon, stating, showing, evidencing, establishing, supporting, negating, contradicting, describing, recording, noting, embodying, memorializing, containing, mentioning, studying, analyzing, discussing, specifying, identifying or in any manner logically, factually, indirectly or directly, or in any other way connecting to the matter addressed, in whole or in part.

6

30.     The term "CUSTOMER SEGMENT" as used herein means divisions or tiers of customers, users or subscribers and potential customers, users or subscribers that affects pricing, services, or TERMS OF SERVICES offered to customers, users, or subscribers, which may include government, law firms of various sizes, pro bono access for law firms, in-house legal departments, non-profit legal departments, universities, law schools, university law libraries, law firm law libraries, and students.

## INSTRUCTIONS

1.     PLAINTIFFS shall IDENTIFY, produce, and permit the visual inspection and reproduction of the following DOCUMENTS, electronically stored information, and things which are in its possession, custody, or control, INCLUDING DOCUMENTS, electronically stored information, and things in the actual or constructive possession of PLAINTIFFS, its attorneys, experts, and anyone else acting on its behalf. The production and visual inspection shall take place at Crowell & Moring LLP, 3 Embarcadero Center, 26th Fl., San Francisco CA 94111 (or such other place as may be stipulated by the parties).

2.     These requests are not limited by time unless stated within the request itself.

3.     Unless otherwise stated, the geographic scope covered by these requests is the United States.

4.     If PLAINTIFFS claim that ANY DOCUMENT, tangible object, or other thing responsive to ANY request was once in its possession, custody or control and has since been lost, discarded, destroyed, deleted, relinquished, OR disposed in some other manner, PLAINTIFFS shall IDENTIFY with particularity each such DOCUMENT and set forth: (a) the date the DOCUMENT was lost, discarded, destroyed, deleted, relinquished, or disposed; (b) the circumstances under which the DOCUMENT was lost, discarded, destroyed, deleted, relinquished, or disposed; and (c) the identity of ALL PERSONS who had knowledge of, or were present when,

the DOCUMENT was lost, discarded, destroyed, deleted, relinquished, or disposed, as well as ALL PERSONS who authorized such actions.

5.      In the event that PLAINTIFFS contend that ANY DOCUMENT responsive to ANY discovery request below is privileged or otherwise excludable from discovery, PLAINTIFF shall: (a) IDENTIFY each such DOCUMENT by date, author(s), signer(s), intended recipient(s), and addressee(s); (b) IDENTIFY each PERSON to whom a copy was furnished OR to whom the information OR advice was conveyed; (c) state the general subject matter of the DOCUMENT; and (d) state the ground on which the claim of privilege or immunity from disclosure is based. Failure to do so will constitute a waiver of such a claim.

6.      If PLAINTIFFS claim a privilege or immunity with regard to ANY DOCUMENT responsive to ANY discovery request below, PLAINTIFFS should nevertheless produce ALL portions of such DOCUMENT that contains information not appropriately subject to a claim of privilege or immunity.

7.      The terms "and" and "or" and "between" and "among" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of a request all information that otherwise might be construed to be outside of its scope.

8.      The singular form of a noun or pronoun shall be considered to include within its meaning the plural form of the noun or pronoun, and vice versa; and the past tense shall include the present tense where the clear meaning is not distorted.

9.      These requests are continuing in nature under Rule 26(e) of the Federal Rules of Civil Procedure. If, at ANY time prior to the completion of the above-captioned matter, PLAINTIFFS obtain or become aware of additional DOCUMENTS, tangible objects, and things responsive to these requests, PLAINTIFFS shall promptly supplement its response to provide such

DOCUMENTS, tangible objects, and things to ROSS.

10.     Any DOCUMENT with any sheet or part thereof bearing any marks, such as initials, stamped indices, comments or notations, or any character or characters, that are not part of the signed text or photographic reproduction thereof is to be considered as a separate DOCUMENT. Where there is any question about whether a tangible item otherwise described in these requests falls within the definition of "DOCUMENT(S)," such tangible item shall be produced.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 182:**

DOCUMENTS sufficient to show revenue from the sale, distribution, or license of the WESTLAW PLATFORM, separately broken out for revenue attributed to PUBLIC LAW DATABASES and LEGAL SEARCH TOOLS, and by CUSTOMER SEGMENT.

**REQUEST FOR PRODUCTION NO. 183:**

DOCUMENTS sufficient to show financial profits or losses from the sale, distribution, or license of the WESTLAW PLATFORM, separately broken out for profits or losses attributed to PUBLIC LAW DATABASES and LEGAL SEARCH TOOLS, and by CUSTOMER SEGMENT.

**REQUEST FOR PRODUCTION NO. 184:**

DOCUMENTS sufficient to show the costs associated with the WESTLAW PLATFORM, separately broken out for costs attributed to PUBLIC LAW DATABASES and LEGAL SEARCH TOOLS, and by CUSTOMER SEGMENT.

**REQUEST FOR PRODUCTION NO. 185:**

DOCUMENTS sufficient to show YOUR investments in the WESTLAW PLATFORM, separately broken out for each of YOUR LEGAL SEARCH TOOLS and for each ARTIFICIAL INTELLIGENCE tool.

**REQUEST FOR PRODUCTION NO. 186:**

ALL DOCUMENTS and COMMUNICATIONS RELATED TO the reasons for making investments in the WESTLAW PLATFORM, separately broken out for each of YOUR LEGAL SEARCH TOOLS and for each ARTIFICIAL INTELLIGENCE tool.

**REQUEST FOR PRODUCTION NO. 187:**

DOCUMENTS sufficient to show the costs associated with offering the WESTLAW PLATFORM to law students and for training lawyers, including the costs of training, representatives, and incentive programs.

**REQUEST FOR PRODUCTION NO. 188:**

ALL DOCUMENTS and COMMUNICATIONS RELATED TO pricing the WESTLAW PLATFORM for PERSONS to license, INCLUDING plans, strategies, manuals, policies, analyses, memoranda, price lists, and guides for pricing the WESTLAW PLATFORM, including documents related to pricing by CUSTOMER SEGMENT and documents related to pricing decision-making.

**REQUEST FOR PRODUCTION NO. 189:**

ALL DOCUMENTS and COMMUNICATIONS RELATED TO pricing the WESTLAW PLATFORM for PERSONS to license, INCLUDING documents related to pricing by CUSTOMER SEGMENT.

**REQUEST FOR PRODUCTION NO. 190:**

DOCUMENTS RELATED TO how you define or use CUSTOMER SEGMENTS and the number of users and/or seats per CUSTOMER SEGMENT.

**REQUEST FOR PRODUCTION NO. 191:**

ALL DOCUMENTS and COMMUNICATIONS RELATED TO the DISCOUNTS that PERSONS can or do receive when licensing the WESTLAW PLATFORM, including broken out by CUSTOMER SEGMENT.

**REQUEST FOR PRODUCTION NO. 192:**

ALL DOCUMENTS and COMMUNICATIONS RELATING TO requests to purchase, license, or access the PUBLIC LAW DATABASES that are available on the WESTLAW PLATFORM.

**REQUEST FOR PRODUCTION NO. 193:**

ALL DOCUMENTS and COMMUNICATIONS RELATING TO requests to purchase, license, or access the LEGAL SEARCH TOOLS that are available on the WESTLAW PLATFORM.

**REQUEST FOR PRODUCTION NO. 194:**

ALL DOCUMENTS and COMMUNICATIONS RELATED TO YOUR renewal and churn rate for WESTLAW PLATFORM subscriptions, including broken out by CUSTOMER SEGMENT.

**REQUEST FOR PRODUCTION NO. 195:**

ALL COMMUNICATIONS with customers or potential customers RELATED TO the terms of YOUR AGREEMENTS, including pricing.

**REQUEST FOR PRODUCTION NO. 196:**

DOCUMENTS RELATED TO demand or preferences for LEGAL SEARCH TOOLS, PUBLIC LAW DATABASES, or LEGAL SEARCH PLATFORMS, including surveys, market studies or research reports conducted or commissioned or obtained by YOU.

**REQUEST FOR PRODUCTION NO. 197:**

DOCUMENTS RELATED TO demand or preferences for each of YOUR LEGAL SEARCH TOOLS, PUBLIC LAW DATABASES, or LEGAL SEARCH PLATFORMS, including surveys, market studies or research reports conducted or commissioned or obtained by YOU.

**REQUEST FOR PRODUCTION NO. 198:**

DOCUMENTS sufficient to show the complete history of the TERMS OF SERVICES RELATING TO the WESTLAW PLATFORM, including how TERMS OF SERVICES have varied by CUSTOMER SEGMENT.

**REQUEST FOR PRODUCTION NO. 199:**

ALL DOCUMENTS and COMMUNICATIONS RELATED TO strategies and/or plans for the sale, distribution, or license of the WESTLAW PLATFORM.

**REQUEST FOR PRODUCTION NO. 200:**

ALL DOCUMENTS and COMMUNICATIONS RELATED TO strategies and/or plans for the sale, distribution, or license of the LEGAL SEARCH TOOLS.

**REQUEST FOR PRODUCTION NO. 201:**

ALL DOCUMENTS and COMMUNICATIONS RELATED TO strategies and/or plans for the sale, distribution, or license of the PUBLIC LAW DATABASES.

**REQUEST FOR PRODUCTION NO. 202:**

ALL DOCUMENTS and COMMUNICATIONS RELATED TO strategies and/or plans for the sale, distribution, or license of the LEGAL SEARCH PLATFORMS.

**REQUEST FOR PRODUCTION NO. 203:**

DOCUMENTS RELATED TO YOUR decision how to and whether to develop, offer or discontinue each of YOUR LEGAL SEARCH TOOLS, PUBLIC LAW DATABASES, or LEGAL SEARCH PLATFORMS, including internal DOCUMENTS and COMMUNICATIONS and surveys, market studies or research reports conducted or commissioned by YOU or third parties.

**REQUEST FOR PRODUCTION NO. 204:**

DOCUMENTS RELATED TO YOUR decision how to and whether to develop, offer or discontinue LEGAL SEARCH TOOLS, PUBLIC LAW DATABASES, or LEGAL SEARCH PLATFORMS not ultimately offered to the public, including YOUR internal DOCUMENTS and COMMUNICATIONS and surveys, market studies or research reports conducted or commissioned by YOU or third parties.

**REQUEST FOR PRODUCTION NO. 205:**

DOCUMENTS RELATED TO YOUR offering the WESTLAW PLATFORM to law students or for training lawyers, including strategies, manuals, policies, cost-benefit analyses, and memoranda, and COMMUNICATIONS.

**REQUEST FOR PRODUCTION NO. 206:**

ALL DOCUMENTS RELATED TO YOUR share in any market in which any element of the WESTLAW PLATFORM competes, including LEGAL SEARCH TOOLS, PUBLIC LAW DATABASES, and LEGAL SEARCH PLATFORMS, including by CUSTOMER SEGMENT.

**REQUEST FOR PRODUCTION NO. 207:**

DOCUMENTS and COMMUNICATIONS sufficient to show the markets in which any elements of the WESTLAW PLATFORM competes.

13

**REQUEST FOR PRODUCTION NO. 208:**

ALL DOCUMENTS analyzing responses by YOUR customers, including by CUSTOMER SEGMENT, to actual or potential changes in pricing to any element of the WESTLAW PLATFORM.

**REQUEST FOR PRODUCTION NO. 209:**

ALL DOCUMENTS and COMMUNICATIONS RELATED TO competitive intelligence or research that YOU have performed, commissioned, obtained, or otherwise gathered, including RELATED TO LEGAL SEARCH TOOLS, PUBLIC LAW DATABASES, or LEGAL SEARCH PLATFORMS, and LEGAL SEARCH TOOLS, PUBLIC LAW DATABASES, or LEGAL SEARCH PLATFORMS that are currently or have been operated by COMPETITORS.

**REQUEST FOR PRODUCTION NO. 210:**

ALL AGREEMENTS with COMPETITORS.

**REQUEST FOR PRODUCTION NO. 211:**

DOCUMENTS and COMMUNICATIONS sufficient to IDENTIFY YOUR COMPETITORS, including IDENTIFYING each product offered by that COMPETITOR that competes with the WESTLAW PLATFORM or any element or segment of the WESTLAW PLATFORM, and IDENTIFYING YOUR product that competes with the COMPETITOR'S product.

**REQUEST FOR PRODUCTION NO. 212:**

DOCUMENTS sufficient to identify any COMPETITORS that have licensed the WESTLAW PLATFORM as well as which products the COMPETITORs has licensed.

**REQUEST FOR PRODUCTION NO. 213:**

DOCUMENTS sufficient to identify any COMPETITORS that have used the WESTLAW PLATFORM without a license as well as which products each of these COMPETITOR has used.

**REQUEST FOR PRODUCTION NO. 214:**

ALL DOCUMENTS and COMMUNICATIONS RELATED TO YOUR decision to not license access to the WESTLAW PLATFORM to a COMPETITOR or potential COMPETITOR.

**REQUEST FOR PRODUCTION NO. 215:**

ALL DOCUMENTS and COMMUNICATIONS RELATED TO YOUR decision to not license access to the WESTLAW PLATFORM, including to ROSS.

**REQUEST FOR PRODUCTION NO. 216:**

ALL COMMUNICATIONS with the U.S. Federal Trade Commission or the U.S. Department of Justice about the WESTLAW PLATFORM, including COMMUNICATIONS about investigations, complaints, and requests for information.

**REQUEST FOR PRODUCTION NO. 217:**

ALL DOCUMENTS RELATED TO COMMUNICATIONS with the U.S. Federal Trade Commission or the U.S. Department of Justice about the WESTLAW PLATFORM.

**REQUEST FOR PRODUCTION NO. 218:**

ALL DOCUMENTS RELATED TO litigation involving antitrust or unfair competition claims or counterclaims brought against YOU.

**REQUEST FOR PRODUCTION NO. 219:**

ALL DOCUMENTS and COMMUNICATIONS RELATING TO acquiring, licensing, or obtaining PUBLIC LAW DATABASES or the content therein, such as judicial opinions, INCLUDING AGREEMENTS and COMMUNICATIONS with the licensors or providers of such content.

**REQUEST FOR PRODUCTION NO. 220:**

ALL DOCUMENTS and COMMUNICATIONS RELATING TO acquiring, licensing, or obtaining LEGAL SEARCH TOOLS or LEGAL SEARCH PLATFORMS, including AGREEMENTS.

**REQUEST FOR PRODUCTION NO. 221:**

ALL Library Maintenance Agreements to which YOU are a party.

**REQUEST FOR PRODUCTION NO. 222:**

ALL AGREEMENTS and TERMS OF SERVICES with any judicial, executive, or legislative governmental entities within the United States of America, including federal courts, state, municipal, county, and territorial courts RELATING TO LEGAL SEARCH TOOLS, PUBLIC LAW DATABASES, or LEGAL SEARCH PLATFORMS.

**REQUEST FOR PRODUCTION NO. 223:**

ALL DOCUMENTS and COMMUNICATIONS RELATING TO YOUR decision to make judicial opinions available online, including competitive intelligence and research.

**REQUEST FOR PRODUCTION NO. 224:**

ALL DOCUMENTS and COMMUNICATIONS RELATED TO any decision whether or not to license, sell, or distribute judicial opinions online independent of the WESTLAW PLATFORM.

**REQUEST FOR PRODUCTION NO. 225:**

ALL DOCUMENTS and COMMUNICATIONS RELATED TO YOUR decision to continue to license, sell, or distribute judicial opinions in paper-format, including competitive intelligence and research.

**REQUEST FOR PRODUCTION NO. 226:**

ALL DOCUMENTS and COMMUNICATIONS RELATED TO YOUR decisions about what judicial opinions to publish or not publish in paper-format.

**REQUEST FOR PRODUCTION NO. 227:**

ALL DOCUMENTS and COMMUNICATIONS RELATED TO YOUR "Opinion Submission Guidelines" that are available to be accessed at the following website address: https://legal.thomsonreuters.com/en/solutions/government/court-opinion-submission-guidelines.

**REQUEST FOR PRODUCTION NO. 228:**

A copy of YOUR current organizational charts.

**REQUEST FOR PRODUCTION NO. 229:**

ALL insurance agreements referred to in Plaintiffs and Counterdefendants Thomson Reuters Enterprise Centre GmbH and West Publishing Corporation's Supplemental Initial Disclosures.

**REQUEST FOR PRODUCTION NO. 230:**

ALL non-privileged DOCUMENTS and COMMUNICATIONS RELATED TO preparing YOUR responses to this set of document requests.

**REQUEST FOR PRODUCTION NO. 231:**

DOCUMENTS RELATED TO each instance in which any entity requested a change to the TERMS OF SERVICES YOU require for access to the WESTLAW PLATFORM, including

all instances in which any entity did not agree to the TERMS OF SERVICES and were not granted access to the WESTLAW PLATFORM.

**REQUEST FOR PRODUCTION NO. 232:**

All documents that support any admission or denial by Plaintiffs and Counterdefendants to any of Defendants' and Counterplaintiffs requests for admission.

**REQUEST FOR PRODUCTION NO. 233:**

All documents used (including referenced or relied upon) by Plaintiffs and Counterdefendants in responding to any of Defendants' and Counterplaintiffs interrogatories.

OF COUNSEL:

Gabriel M. Ramsey
Warrington Parker
Joachim B. Steinberg
Jacob Canter
CROWELL & MORING LLP
3 Embarcadero Center, 26th Floor
San Francisco, CA 94111
Tel:  (415) 986-2800

Mark A. Klapow
Crinesha B. Berry
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC  20004
Tel:  (202) 624-2500

Dated:  September 20, 2022
10346083 / 20516.00001

POTTER ANDERSON & CORROON LLP

By:  */s/ Carson R. Bartlett*
David E. Moore (#3983)
Bindu A. Palapura (#5370)
Carson R. Bartlett (#6750)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
Tel:  (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
cbartlett@potteranderson.com

*Attorneys for Defendant/Counterclaimant
ROSS Intelligence, Inc.*

## CERTIFICATE OF SERVICE

I, Carson R. Bartlett, hereby certify that on September 20, 2022, true and correct copies of the within document were served on the following counsel of record at the addresses and in the manner indicated:

## VIA ELECTRONIC MAIL

Jack B. Blumenfeld
Michael J. Flynn
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@mnat.com
mflynn@mnat.com

Dale Cendali, P.C.
Joshua L. Simmons
Eric Loverro
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
thomson-ross@kirkland.com

Daniel E. Laytin
Christa C. Cottrell
Cameron Ginder
Alyssa C. Kalisky
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL  60654
thomson-ross@kirkland.com

Miranda D. Means
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
thomson-ross@kirkland.com

    /s/ Carson R. Bartlett
         Carson R. Bartlett

7193230 / 50241

# EXHIBIT E

**Canter, Jacob**

| | |
|---|---|
| **From:** | Dillon, Erika <erika.dillon@kirkland.com> |
| **Sent:** | Wednesday, February 8, 2023 2:38 PM |
| **To:** | Canter, Jacob; *sobyrne@potteranderson.com; *dmoore@Potteranderson.com1; ROSS Lit Team |
| **Cc:** | #Thomson-Ross |
| **Subject:** | D.Del. 1:20-cv-00613-LPS Thomson Reuters Enterprise Centre GmbH et al v. ROSS - Service - TRCC Vol001 |

External Email

Counsel,

Thomson Reuters Enterprise GmbH and West Publishing Corporation ( "Thomson Reuters"), in connection with 1:20-cv-00613-LPS, *Thomson Reuters Enterprise Centre GmbH and West Publishing Corporation v. ROSS Intelligence Inc.*, is producing its first production volume in connection with ROSS's antitrust related discovery requests, containing documents bearing bates numbers TRCC-00000001 - TRCC-00017818.  The documents in this production contain confidentiality designations pursuant to the parties' Stipulated Protective Order (ECF No. 48) dated May 13, 2021, and should be treated accordingly.  Production of these documents is subject to, and not a waiver of, Thomson Reuters' objections to ROSS's document requests.  Thomson Reuters reserves the right to amend or supplement its production as necessary.

The production is located at the below link and will be available for seven days:

https://alvarezandmarsal.sharefile.com/d-se584091ca57c4656b86d4ac3770a4af3

A password for the production will follow under separate cover.  If you have any issues accessing the production, please let us know.

Thank you,

**Erika Dillon**
Senior Paralegal
She/Her/Hers

**KIRKLAND & ELLIS LLP**
601 Lexington Avenue, New York, NY 10022
**T** +1 212 909 3495
**F** +1 212 446 4900

erika.dillon@kirkland.com

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

# EXHIBIT F



**Joachim B. Steinberg**
jsteinberg@crowell.com
(415) 365-7461 direct

Crowell & Moring LLP
3 Embarcadero Center
26th Floor
San Francisco, CA 94111
+1.415.986.2800  main
+1.415.986.2827  fax

November 7, 2022

**VIA E-MAIL**

Miranda D. Means
Kirkland & Ellis LLP
200 Clarendon Street
Boston, Massachusetts 02116
617-385-7500
miranda.means@kirkland.com

Re:   Responses to RFP Nos. 182-233 in *Thomson Reuters Enterprise Centre GmbH v. ROSS Intelligence, Inc.*, Case No. 20 Civ. 613 (LPS)

Dear Miranda:

        We write on behalf of ROSS Intelligence, Inc. ("ROSS") about Thompson Reuters Enterprise Center GmbH and West Publishing Corporation's (collectively "Plaintiffs") responses to ROSS's Requests for Production ("RFPs") Nos. 182-233.  ROSS requests that Plaintiffs amend their deficient responses as soon as possible and confirm that Plaintiffs will produce all requested documents.

        As an initial matter, we remind Plaintiffs that the scope of antitrust discovery is broad, and our tailored RFPs are relevant to proving ROSS's case and disproving Plaintiffs'. (*See In re Intel Corp. Microprocessor Antitrust Litig.*, 2007 WL 137152, at *3-5 (D. Del. Jan. 12, 2007) ("The broad scope of discovery permitted by Rule 26 has been held to be particularly appropriate in antitrust cases."); *United States v. Dentsply Int'l, Inc.*, 2000 WL 654286, at *5 (D.Del. May 10, 2000) ("A 'general policy of allowing liberal discovery in antitrust cases' has been observed by this Court because 'broad discovery may be needed to uncover evidence of invidious design, pattern, or intent.'") (cleaned up); *In re MiMedx Grp. Sec. Litig.*, 2015 WL 5445140, at *4 (D. Del. July 17, 2015) ("Relevancy is to be broadly construed for discovery purposes and is not limited to the precise issues set out in the pleadings or to the merits of the case. Rather, discovery requests may be deemed relevant if there is any possibility that the information may be relevant to the general subject matter of the action.")).  The Supreme Court has mandated that ample discovery is needed in cases when proof is largely in the hands of the antitrust defendant.  (*See Hosp. Bldg. Co. v. Trustees of Rex Hosp.*, 425 U.S. 738, 746 (1976)).  Particularly for tying and monopolization claims, that broad scope includes relevant documents and things that may reveal supra-competitive pricing, a dominant share of the relevant market, significant costs to primary market customers, high costs of switching to lock in customers, among other information. (*See Harrison Aire, Inc. v. Aerostar Int'l, Inc.*, 423 F.3d 374, 383 (3d Cir. 2005) (citing *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451 (1992)). ROSS is entitled to information

regarding all aspects of the relevant markets to obtain evidence of Plaintiffs' power within the markets. (*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3d Cir. 1997); *see also Little Rock Cardiology Clinic PA v. Baptist Health*, 591 F.3d 591, 596 (8th Cir. 2009) ("Without a well-defined relevant market, a court cannot determine the effect that an allegedly illegal act has on competition.")).

To begin, we are confused by the time limit listed in your objections.  Plaintiffs' limit their responses temporally to "January 1, 2015 to the present" under General Objection 8. Instruction No. 2 by ROSS is proper when noting that RFPs "are not limited by time unless stated within the request itself."  ROSS did not limit any individual Requests in these RFPs to Plaintiffs from January 1, 2015, and its Counterclaims allege anticompetitive conduct by Plaintiffs going back decades.  Antitrust discovery is not confined to the claims' limitations period, and market power can build over a long time span.  (*See, e.g.*, ROSS's Amended Answer and Counterclaims, Dkt. 24 at ¶¶ 42-46; *see also Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 73 (3d Cir. 2010) (considering market power and anticompetitive rule determinations dating back decades); *Kellam Energy, Inc. v. Duncan*, 616 F. Supp. 215, 218 (D. Del. 1985) ("[T]he temporal scope of discovery in antitrust suits should not be confined to the limitations period of the antitrust statutes.")).  Please confirm that you will not self-impose this date cut-off in your responses or explain this limitation.

Plaintiffs have also made a boilerplate objection because of "confidentiality."  But we have had a protective order in place since May 13, 2021 and both parties have regularly designated material confidential or attorneys' eyes only, so we are confused as to what this objection means or why it is a basis for you to withhold documents. Confidential documents still must be produced under the terms of the agreed-upon protective order. (*See New Berry Inc. v. Smith,* 2020 WL 2839904, at *2-3 (W.D. Pa. June 1, 2020) (objecting "to the extent" that requested documents are Confidential, Highly Confidential, or Attorney Eyes Only is contrary to purpose of protective orders). Please withdraw this objection in its entirety, and confirm that you are not withholding documents based on this objection.

## I.  **Financial Documents**

### a.  **RFP Nos. 183-85**

RFPs Nos. 183-85 request documents sufficient to show profits, losses, investments, and costs associated with the WESTLAW PLATFORM, "separately broken out" by "CUSTOMER SEGMENT," including "DOCUMENTS sufficient to show financial profits or losses from the sale, distribution, or license of the WESTLAW PLATFORM, separately broken out for profits or losses attributed to PUBLIC LAW DATABASES and LEGAL SEARCH TOOLS, and by CUSTOMER SEGMENT," and, for 185, by each ARTIFICIAL INTELLIGENCE tool.  Your responses did not specify that you will produce documents broken out by CUSTOMER SEGMENT, only that you will produce documents as kept in the "ordinary course of business". They must be broken out by CUSTOMER SEGMENT even if that is not how they are kept in the ordinary course of business (*See Int'l Constr. Prod. LLC v. Caterpillar Inc.*, 2016 WL 4445232, at *8 (D. Del. Aug. 22, 2016) (segments of product use in antitrust case vital for determining economic significance and market power of product); *IQVIA, Inc. v. Veeva Sys., Inc.*, 2018 WL 4952595, at *14 (D.N.J. Oct. 12, 2018) (compelling all documents related to customer

2



characteristics)). Please confirm that these documents will be broken out by CUSTOMER SEGMENT as requested.

**b. RFP Nos. 187 and 205**

Plaintiffs refused to produce documents responsive to RFPs Nos. 187 and 205. Those RFPs requested "DOCUMENTS sufficient to show the costs associated with offering the WESTLAW PLATFORM to law students and for training lawyers, including the costs of training, representatives, and incentive programs" and "DOCUMENTS RELATED TO YOUR offering the WESTLAW PLATFORM to law students or for training lawyers, including strategies, manuals, policies, cost-benefit analyses, and memoranda, and COMMUNICATIONS." Plaintiffs refuse to produce responsive documents because they claim they are "neither relevant to any claim or defense of any party in this Litigation nor proportional to the needs of the case" and that these requests "call[] for confidential information, trade secrets, or proprietary business information." These documents are relevant to ROSS's antitrust claims about the costs, losses, profits, and investments into the WESTLAW PLATFORM for obtaining and convincing potential customers to use Westlaw over the use of another research platform by Plaintiffs' design, pattern, or intent. (*See Barr Lab'ys, Inc. v. Abbott Lab'ys*, 978 F.2d 98, 112 (3d Cir. 1992) ("factors to be considered include the strength of competition, probable development of the industry, the barriers to entry, the nature of the anti-competitive conduct, and the elasticity of consumer demand"); *Eisai Inc. v. Sanofi-Aventis U.S., LLC,* 2011 WL 5416330, at *17 (D.N.J. Nov. 7, 2011) (court compelled discovery responses regarding reasons for choices of customers and potential customers to purchase product at issue in antitrust suit, and further noted that a party may not avoid or limit its responses to a discovery request by excluding specific information that it possesses based on its contention that discovery produced may yield additional information). Costs and planning associated with offering the WESTLAW PLATFORM to law students and training lawyers is relevant to ROSS's Sherman Act claims about market power and barriers to entry. (*See Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 307 (3d Cir. 2007) ("To support an inference of monopoly power, a plaintiff typically must plead and prove that a firm has a dominant share in a relevant market, and that significant "entry barriers" protect that market…. Barriers to entry are factors, such as regulatory requirements, high capital costs, or technological obstacles, that prevent new competition from entering a market in response to a monopolist's supracompetitive prices) (cleaned up); *IQVIA, Inc.*, 2018 WL 4952595, at *14 (compelling RFP seeking product costs along with product price changes)). In any event, as noted above, discovery relevance in antitrust cases is broadly construed, and is not limited to the precise issues set out in the pleadings. (*See, e.g.*, ROSS's Amended Answer and Counterclaims, Dkt. 24 at ¶¶ 82-100). Please confirm that you will produce ALL documents as requested, or confirm what you are withholding and your justifications for doing so.

## II. Internal Business Communications

**a. RFP No. 186**

RFP No. 186 asks for "ALL DOCUMENTS and COMMUNICATIONS RELATED TO the reasons for making investments in the WESTLAW PLATFORM, separately broken out for each of YOUR LEGAL SEARCH TOOLS and for each ARTIFICIAL INTELLIGENCE tool." Plaintiffs have limited the production of documents in their response to those "sufficient to show



the reasons for making investments in the WESTLAW PLATFORM." This response is vague and confusing, and improperly limits the request to documents "sufficient to show [the] reasons" when ROSS is requesting "ALL DOCUMENTS and COMMUNICATIONS RELATED TO the reasons." (*See vMedex, Inc. v. TDS Operating, Inc.*, 2021 WL 5332315, at *2 (D. Del. Nov. 16, 2021) (limiting an "all documents" request of relevant underlying business decision information to only "documents sufficient to show" the result of the decision is improper)). The information sought is relevant, in part to reveal evidence of intent for making these investment decisions and barriers to entry. (*See Allen-Myland, Inc. v. Int'l Bus. Machines Corp.*, 33 F.3d 194, 209 (3d Cir. 1994) ("Notwithstanding the extent of an antitrust defendant's market share, the ease or difficulty with which competitors enter the market is an important factor in determining whether the defendant has true market power—the power to raise prices."); *see also In re Intel Corp. Microprocessor Antitrust Litig.*, 2007 WL 137152, at *3-5 (concluding that broad scope of discovery is particularly appropriate in antitrust action and granting motion to compel discovery related to establishing market power, acquisition, and maintenance of monopoly power, and engaging in exclusionary conduct); *Acme Markets, Inc. v. Wharton Hardware & Supply Corp.*, 890 F. Supp. 1230, 1240 (D.N.J. 1995) (noting that "the ease of entry into the relevant market" may be important to "demonstrate market power")). Please confirm that you will produce ALL documents as requested, or confirm what you are withholding and your justifications for doing so.

**b.  RFP Nos. 199-204 and 209**

RFP Nos. 199-294 and 209 request all documents about certain business strategies, including "ALL documents and communications related to strategies and/or plans for the sale, distribution, or license of" the WESTLAW PLATFORM, LEGAL SEARCH TOOLS, PUBLIC LAW DATABASES, and LEGAL SEARCH PLATFORMS. Plaintiffs have stated that they will produce documents "sufficient to show" a subset of the information requested. For example, RFP 204 asks Plaintiffs to produce commissioned surveys, market studies, or research reports related to your decisions how to and whether to develop offer LEGAL SEARCH TOOLS, PUBLIC LAW DATABASES, or LEGAL SEARCH PLATFORMS, and you state that you will produce documents "sufficient to show business plans." (*See, e.g.*, *In re Baby Food Antitrust Litig.*, 166 F.3d 112, 136-37 (3d Cir. 1999) (business plans and internal documents relevant to determining market share); *IQVIA, Inc.*, 2018 WL 4952595, at *21 (compelling all documents and things relating to considered, potential, or actual strategies, tactics, plans, policies, practices, procedures, actions, or non-actions for retaining customers)). ALL documents requested are needed, as all the strategies and plans requested are relevant to market for the products at issue. (*See Braintree Lab'ys, Inc.*, 2011 WL 13098292, at *4 (compelling production of pricing strategies related to the parties' decisions and admissions relative to the relevant market)). ALL documents and communications are also necessary here to reveal evidence of the development of the plans, including surveys and market studies. Please confirm that you will produce ALL documents as requested, or confirm what you are withholding and your justifications for doing so.

**c.  RFP No. 223**

Plaintiffs have refused to produce documents responsive to RFP No. 223, requesting "ALL DOCUMENTS and COMMUNICATIONS RELATING TO YOUR decision to make

4



judicial opinions available online, including competitive intelligence and research" because they are "neither relevant to any claim or defense of any party in this Litigation nor proportional to the needs of the case." This is incorrect. Plaintiffs' "decision to make judicial opinions available online" is directly relevant to the core of ROSS's antitrust claims of exclusionary conduct. (ROSS's Counter Complaint, Dkt. 225 at ¶¶ 42-43; *see also United States v. Dentsply Int'l, Inc.*, 399 F.3d 181, 190 (3d Cir. 2005) (limiting available opportunities for product distribution evidences anticompetitive conduct)). These documents will also show Plaintiffs' intent, design, or pattern executed by Plaintiffs' for the availability of products directly offered to consumers. (*See, e.g.*, ROSS's Amended Answer and Counterclaims, Dkt. 24 at ¶¶ 77-81; *see also In re Intel Corp. Microprocessor Antitrust Litig.*, 2007 WL 137152, at *3-5). Please confirm that you will produce ALL documents as requested.

### d. RFP Nos. 225-27 and 231

Plaintiffs have refused to produce documents responsive to RFP Nos. 225-27 and 231, which request documents and communications relating to Plaintiffs' decisions on what to sell, publish, revise, and submit for online access on Westlaw, including "ALL DOCUMENTS and COMMUNICATIONS RELATED TO YOUR decision to continue to license, sell, or distribute judicial opinions in paper-format, including competitive intelligence and research" and "DOCUMENTS RELATED TO each instance in which any entity requested a change to the TERMS OF SERVICES YOU require for access to the WESTLAW PLATFORM, including all instances in which any entity did not agree to the TERMS OF SERVICES and were not granted access to the WESTLAW PLATFORM." Requests related to the TERMS OF SERVICES are relevant to market power and exclusionary practices. (*See Epic Games, Inc. v. Apple Inc.*, 559 F. Supp. 3d 898, 990 (N.D. Cal. 2021) (terms of services prohibitions relevant to market share determination); *Sea-Land Serv., Inc. v. Atl. Pac. Int'l, Inc.*, 61 F. Supp. 2d 1092, 1098 (D. Haw. 1999) (evidence that consumers demanded to use their own shipping containers was relevant for claim of tie between shipping containers and shipping service, even if defendant "refused to sever the cost of the services")). Additionally, Plaintiffs' decision to publish judicial opinions in online format and the terms it requires the public to agree to before it can access the judicial opinions is relevant, inter alia, to coercion. Plaintiffs are using their monopoly power to control access to United States public law. (*See* ROSS's Counter Complaint, Dkt. 225, at ¶¶ 26, 42-4, 64, 76, 87-88; *Ungar v. Dunkin' Donuts of Am., Inc.*, 531 F.2d 1211, 1218 (3d Cir. 1976) (evidence of coercion relevant to proof of tying claims)). Plaintiffs claim that these requests are not relevant and unduly burdensome and that they "call[] for confidential information, trade secrets, or proprietary business information." As noted, both parties have regularly designated material confidential or attorneys' eyes only, so we are confused as to what this objection means or why it is a basis for you to withhold documents. Please withdraw this objection in its entirety and produce the documents.

## III. Customer and Market Use

### a. RFP Nos. 188-89, 191

RFP Nos. 188-89 and 191 request "ALL DOCUMENTS and COMMUNICATIONS RELATED TO pricing the WESTLAW PLATFORM for PERSONS to license, INCLUDING plans, strategies, manuals, policies, analyses, memoranda, price lists, and guides for pricing the



WESTLAW PLATFORM, including documents related to pricing by CUSTOMER SEGMENT and documents related to pricing decision-making."  Plaintiffs have improperly limited the production of documents in their response to those documents "sufficient to show" pricing by "CUSTOMER SEGMENT." (*See vMedex, Inc.*, 2021 WL 5332315, at *2).  RFP 191 asks for "ALL DOCUMENTS and COMMUNICATIONS RELATED TO the DISCOUNTS that PERSONS can or do receive when licensing the WESTLAW PLATFORM, including broken out by CUSTOMER SEGMENT."  In response, Plaintiffs have offered a subset of documents "sufficient to show the price they charge for the WESTLAW PLATFORM by CUSTOMER SEGMENT as they are kept in the ordinary course of business."  The documents offered are small subsets of the documents requested by these RFPs.  For example, documents that evidence why the CUSTOMER SEGMENTS are defined as such, promotional and pricing strategies, and why pricing was charged for certain CUSTOMER SEGMENTS, or changes to this pricing over time, are relevant to ROSS's antitrust claims to evidence market definition, market power, and Plaintiffs' conduct.  And ROSS is requesting documents on DISCOUNTS offered, not only prices charged by CUSTOMER SEGMENT, which may evidence demand elasticity by CUSTOMER SEGMENT as well as Plaintiffs' marketing strategy. (*See FTC v. Hackensack Meridian Health, Inc*., 30 F.4th 160, 174 (3d Cir. 2022) (changes in customer preferences and changes in price of product can evidence a statistically significant change in demand); *IQVIA, Inc.*, 2018 WL 4952595, at *14; *In re Intel Corp. Microprocessor Antitrust Litig.*, 2007 WL 137152, at *9 (parties may discover information relevant to entities ability to control prices or exclude competition in antitrust actions); *Braintree Lab'ys, Inc.*, 2011 WL 13098292, at *4 (compelling production of pricing strategies related to the parties' decisions and admissions relative to the relevant market)).  Please confirm that you will produce ALL documents as requested.

### b.  RFP No. 194

RFP 194 asks for "ALL DOCUMENTS and COMMUNICATIONS RELATED TO YOUR renewal and churn rate for WESTLAW PLATFORM subscriptions, including broken out by CUSTOMER SEGMENT."  Plaintiffs have offered a subset of documents in their response to those "sufficient to show the rate at which existing customers renew their WESTLAW PLATFORM subscriptions."  Please produce ALL documents as requested, not only documents "sufficient" to show the rate.  ROSS also reiterates that this request includes documents that evidence the renewal and churn rates by specific CUSTOMER SEGMENT.  (*See In re Wireless Tel. Servs. Antitrust Litig.,* 385 F. Supp. 2d 403, 430 (S.D.N.Y. 2005) (churn rate is "striking evidence" of market and price control); *Suture Express, Inc. v. Owens & Minor Distribution*, 2016 U.S. Dist. LEXIS 47421, at *82 (D. Kan. Apr. 7, 2016) (customer renewal rates used to evidence market power or lack thereof); *IQVIA, Inc.*, 2018 WL 4952595, at *14 (compelling all documents related to renewal terms)).  Please produce ALL documents responsive to the request divided by CUSTOMER SEGMENT or confirm what you are withholding and your justifications for doing so.

### c.  RFP No. 195

Plaintiffs have refused to produce documents responsive to RFP 195, requesting "ALL COMMUNICATIONS with customers or potential customers RELATED TO the terms of YOUR AGREEMENTS, including pricing" on the grounds of relevance, burden, and



confidentiality.  ROSS is requesting communications such as email correspondence with customers or potential customers regarding the pricing, terms, and specific services offered to current or potential Westlaw agreement, relevant to evaluate market power and Plaintiffs' conduct. (*See Roxul USA, Inc* 2019 WL 1109868 at *8) (customer choice in terminating agreements evidence considered relevant); *Hackensack Meridian Health, Inc*., 30 F.4th at 170 (change in customer preferences can depend on many factors, including services offered); *see also Hosp. Bldg. Co.* 425 U.S. at 746; *Eisai Inc.,* 2011 WL 5416330 at *17) (court compelled discovery responses regarding reasons for customer choice of product); *Fed. Trade Comm'n v. Wilh. Wilhelmsen Holding ASA*, 341 F. Supp. 3d 27, 46 (D.D.C. 2018) ("[A]ntitrust markets can be based on targeted customers …. "[t]he clearest articulation of [a targeted customer] approach to product market definition"—states that "[i]f a hypothetical monopolist could profitably target a subset of customers for price increases, [one] may identify relevant markets defined around those targeted customers, to whom a hypothetical monopolist would profitably and separately impose at least a [small but significant and non-transitory increase in price].") (cleaned up)). These communications are also relevant to ROSS's antitrust claims to evidence pricing, intentional business tactics, invidious designs or patterns, and terms of use offered to specific customers.  (*See, e.g.*, ROSS's Amended Answer and Counterclaims, Dkt. 24 at ¶¶ 82-100; *In re MiMedx*, 2015 WL 5445140 at *4; *In re Intel Corp. Microprocessor Antitrust Litig.*, 2007 WL 137152 at *3-5). Please produce ALL documents relevant to these requests.

### d.  RFP Nos. 196-97

RFP Nos. 196-97 ask for "DOCUMENTS RELATED TO demand or preferences for [YOUR] LEGAL SEARCH TOOLS, PUBLIC LAW DATABASES, or LEGAL SEARCH PLATFORMS, including surveys, market studies or research reports conducted or commissioned or obtained by YOU."  Plaintiffs have offered a subset of documents—only those "sufficient to show customer demand for LEGAL SEARCH TOOLS, PUBLIC LAW DATABASES, or LEGAL SEARCH PLATFORMS."  (*See vMedex, Inc.*, 2021 WL 5332315, at *2).  The documents sought are relevant to market definition and market power. (*See In re Intel Corp. Microprocessor Antitrust Litig.*, 2007 WL 137152 at *9 (parties are entitled to discover information relevant to entities' ability to control prices or exclude competition in antitrust actions)).   You limit the production improperly to "customer demand, where customer preferences also must be produced. (*See IQVIA, Inc.*, 2018 WL 4952595 at *14 (compelling "all surveys conducted by or on behalf of IQVIA of IQVIA customers in the United States, including "customer experience surveys""); *FTC v. Hackensack Meridian Health, Inc*., 30 F.4th 160, 174 (3d Cir. 2022) (changes in customer preferences and changes in price of product can evidence a statistically significant change in demand); *Fed. Trade Comm'n v. Wilh. Wilhelmsen Holding ASA*, 341 F. Supp. 3d 27, 46 (D.D.C. 2018) ("[A]ntitrust markets can be based on targeted customers …. "[t]he clearest articulation of [a targeted customer] approach to product market definition"—states that "[i]f a hypothetical monopolist could profitably target a subset of customers for price increases, [one] may identify relevant markets defined around those targeted customers, to whom a hypothetical monopolist would profitably and separately impose at least a [small but significant and non-transitory increase in price].") (cleaned up)).  In addition, Plaintiffs limitation to documents "sufficient to show" the request is improper, as every demand or preference received is relevant to the specific consumer surveyed and to the time that demand or preference was documented.  And as noted, Plaintiffs must specify the LEGAL SEARCH TOOL, PUBLIC LAW DATABASE, or LEGAL SEARCH PLATFORM that each demand or



preference applies to. Please confirm that you will produce ALL documents as requested, or confirm what you are withholding and your justifications for doing so.

**e. RFP No. 206**

RFP No. 206 asks for "ALL DOCUMENTS RELATED TO YOUR share in any market in which any element of the WESTLAW PLATFORM competes, including LEGAL SEARCH TOOLS, PUBLIC LAW DATABASES, and LEGAL SEARCH PLATFORMS, including by CUSTOMER SEGMENT." Plaintiffs have offered a subset of documents, limited to "documents sufficient to show the WESTLAW PLATFORM'S share of legal research services, PUBLIC LAW DATABASES, and LEGAL SEARCH TOOLS, if any." This is improper. Plaintiffs' estimates of its market shares are probative to market definition and market power. (*See, e.g.*, *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 2006 WL 1530166, at *8 (N.D. Cal. June 5, 2006) (market share estimates probative to determine if party has sufficient market power to make an impact on plaintiff's business)). Narrowing the production to documents selected as "sufficient to show" Plaintiffs self-imposed market definition, without CUSTOMER SEGMENT specifications, is inappropriate. (*See vMedex, Inc.*, 2021 WL 5332315 at *2; *Kellam Energy, Inc.*, 616 F. Supp. at 219 ("inappropriate to preclude discovery by imposing a narrow market definition at [early] stage of the proceedings"); *Int'l Constr. Prod.*, 2016 WL 4445232 at *8-9)). Please confirm that you will produce ALL documents as requested, including documents related to share, including but not limited to share calculations, share tracking, and communications regarding the market share, or confirm what you are withholding and your justifications for doing so.

**f. RFP No. 207**

RFP No. 207 asks for "DOCUMENTS and COMMUNICATIONS sufficient to show the markets in which any elements of the WESTLAW PLATFORM competes." Plaintiffs responded that "they will produce documents sufficient to show the Legal Research Platforms against which the WESTLAW PLATFORM competes to provide legal research services." This is only a subset of ROSS's request and Plaintiffs improperly limits the scope of the request. (*See vMedex, Inc.*, 2021 WL 5332315 at *2). Plaintiffs' analyses of markets in which its products compete are probative to market definition and market power. (*See, e.g.*, *In re Dynamic Random Access Memory*, 2006 WL 1530166 at *8). Please confirm that you will produce ALL documents as requested—not only documents sufficient to show the Legal Research Platform market competition, but ALL markets that the platform competes in (*see* ROSS's Counter Complaint, Dkt. 225, at ¶¶ 63, 77-81, 96, 155), including those outside of legal research services, or confirm what you are withholding and your justifications for doing so.

**g. RFP No. 208**

Plaintiffs have refused to produce documents responsive to RFP 208, requesting "ALL DOCUMENTS analyzing responses by YOUR customers, including by CUSTOMER SEGMENT, to actual or potential changes in pricing to any element of the WESTLAW PLATFORM" because they are "neither relevant to any claim or defense of any party in this Litigation nor proportional to the needs of the case." This is incorrect. Customer responses to changes in pricing is directly relevant to antitrust actions, including, inter alia, market definition.



(*See LePage's Inc.*, 324 F.3d at 168; *Wilh. Wilhelmsen Holding ASA*, 341 F. Supp. 3d at 46 ("[A]ntitrust markets can be based on targeted customers …. "[t]he clearest articulation of [a targeted customer] approach to product market definition"—states that "[i]f a hypothetical monopolist could profitably target a subset of customers for price increases, [one] may identify relevant markets defined around those targeted customers, to whom a hypothetical monopolist would profitably and separately impose at least a [small but significant and non-transitory increase in price].") (cleaned up)). Please confirm that you will produce ALL documents as requested, or confirm what you are withholding and your justifications for doing so.

## IV.   Competitors

### a.   RFP No. 210

RFP No. 210 asks for "ALL AGREEMENTS with COMPETITORS." Plaintiffs offered a subset of documents in their response to those by stating they will "produce Agreements with Competitors to license the WESTLAW PLATFORM, if any." ROSS is seeking all agreements with competitors, not limited to *licensing* the WESTLAW PLATFORM, to determine, inter alia, the relevant market power of Plaintiffs products as well as Plaintiffs' conduct. (*See Yeager's Fuel, Inc. v. Pennsylvania Power & Light Co.*, 953 F. Supp. 617, 658 (E.D. Pa. 1997) ("When considered in conjunction with other factors like barriers to entry, control over a superior resource, relative size, strength of the competition, and other market specific characteristics, market share may indicate market power.")). ROSS has requested all agreements with competitors, which could include agreements other than licenses, for example, covenants to not sue, partnership agreements, limited time use agreements, and the like. Please confirm that you will produce ALL documents as requested, or confirm what you are withholding and your justifications for doing so.

### b.   RFP No. 211

RFP No. 211 asks for "DOCUMENTS and COMMUNICATIONS sufficient to IDENTIFY YOUR COMPETITORS, including IDENTIFYING each product offered by that COMPETITOR that competes with the WESTLAW PLATFORM or any element or segment of the WESTLAW PLATFORM, and IDENTIFYING YOUR product that competes with the COMPETITOR'S product." Plaintiffs have offered only a subset of documents in their response to those "documents sufficient to show Competitors who offer LEGAL SEARCH PLATFORMS, LEGAL SEARCH TOOLS, and PUBLIC LAW DATABASES, if any." Again, Plaintiffs are offering only a subset of documents requested from competitors—market definition can go beyond the products listed by Plaintiffs, and narrowing the market definition to only identify certain competitors. (*See Kellam Energy, Inc.*, 616 F. Supp. at 219) ("inappropriate to preclude discovery by imposing a narrow market definition at [early] stage of the proceedings)). Please produce documents as requested, not only documents "sufficient" to show competitor identity, but also to identify the competitor products and identify which Westlaw products compete with the competitor products. Please confirm that you will produce ALL documents responsive to this request.

### c.   RFP Nos. 214-15 and 224



RFP Nos. 214-15 and 224 ask for documents and communications related to decisions not to license access to Westlaw or content on the WESTLAW PLATFORM, including "ALL DOCUMENTS and COMMUNICATIONS RELATED TO YOUR decision to not license access to the WESTLAW PLATFORM to a COMPETITOR or potential COMPETITOR." Plaintiffs have offered only a subset of documents in their response to those documents "sufficient to show" the outcome of these decisions, if any. Please produce documents as requested: not only documents selected as "sufficient" to show the decisions (*see vMedex, Inc.*, 2021 WL 5332315 at *2), but ALL related documents and communications related to the decision, including but not limited to, why, when, how, and by whom these decisions were made, not only the outcome. (*See Lorain J. Co. v. United States*, 342 U.S. 143, 153 (1951) (intent behind anticompetitive decision required to determine if there was a plan to monopolize when withholding sales of product). Please confirm that you will produce ALL documents as requested.

### d.  RFP Nos. 219-20 and 222

RFP Nos. 219, 220, and 222 ask for "ALL DOCUMENTS and COMMUNICATIONS RELATING TO acquiring, licensing, or obtaining PUBLIC LAW DATABASES or the content therein, such as judicial opinions, INCLUDING AGREEMENTS and COMMUNICATIONS with the licensors or providers of such content."; "ALL DOCUMENTS and COMMUNICATIONS RELATING TO acquiring, licensing, or obtaining LEGAL SEARCH TOOLS or LEGAL SEARCH PLATFORMS, including AGREEMENTS."; and "ALL AGREEMENTS and TERMS OF SERVICES with any judicial, executive, or legislative governmental entities within the United States of America, including federal courts, state, municipal, county, and territorial courts RELATING TO LEGAL SEARCH TOOLS, PUBLIC LAW DATABASES, or LEGAL SEARCH PLATFORMS." Plaintiffs have offered only a subset of documents in their response to those "sufficient to show their process for acquiring judicial opinions, statutes, and regulations." Please produce documents as requested, including ALL agreements and communications with licensors and providers, as the agreements with providers themselves and the related communications, are relevant to ROSS's claims. (*See Yeager's Fuel, Inc.*, 953 F. Supp. at 658 ("When considered in conjunction with other factors like barriers to entry, control over a superior resource, relative size, strength of the competition, and other market specific characteristics, market share may indicate market power.")). Please produce documents as requested, including ALL relevant agreements *themselves.* (*See LePage's Inc.*, 324 F.3d at 154; *Micron Tech., Inc. v. Rambus Inc.*, 917 F. Supp. 2d 300, 321 (D. Del. 2013) (correspondence, presentations, meeting minutes, or notes can evidence knowledge of market power)). Plaintiffs have improperly limited the documents by responding they will "produce documents sufficient to show Agreements"—but not TERMS OF SERVICES—"with governmental entities related to the publication of judicial opinions." This would only be a subset of the request. (*See vMedex, Inc.*, 2021 WL 5332315, at *2; *Roxul USA, Inc* 2019 WL 1109868 at *8) (customer choice in terminating agreements evidence considered)). Please produce ALL documents as requested, not only documents "sufficient" to show the agreements and terms of services. Please confirm that you will produce ALL documents as requested, or confirm what you are withholding and your justifications for doing so.



e.   **RFP No. 213**

Plaintiffs have refused to produce documents responsive to RFP 213, which requests "DOCUMENTS sufficient to identify any COMPETITORS that have used the WESTLAW PLATFORM without a license as well as which products each of these COMPETITOR has used" because "it calls for information that is not in Plaintiffs' possession, custody, or control." This is confusing to ROSS, as Plaintiffs started this Litigation originally based on information and data Plaintiffs allegedly had on ROSS's use of the WESTLAW PLATFORM without a license or in violation of a Westlaw license.  (Complaint, Dkt. 1 at ¶1; *see also, e.g.*, ROSS's Amended Answer and Counterclaims, Dkt. 24 at ¶¶ 101-15).  ROSS is also entitled to these documents in discovery, as it may evidence Plaintiffs' market power, conduct towards rivals, as well as the relevant market. (*See In re Intel Corp. Microprocessor Antitrust Litig.*, 2007 WL 137152, at *9 (parties are entitled to discover information relevant to entities' ability to control prices or exclude competition in antitrust actions)).  Please confirm that you will produce ALL documents as requested, or state why you are withholding this information when it was readily available to you with ROSS.

**V.     Government and Educational Institutions**

a.   **RFP Nos. 216-18**

RFP Nos. 216-18 ask for ALL documents and communications related to the WESTLAW PLATFORM and the U.S.  Federal Trade Commission, Department of Justice, or other antitrust proceedings, including "ALL COMMUNICATIONS with the U.S.  Federal Trade Commission or the U.S.  Department of Justice about the WESTLAW PLATFORM, including COMMUNICATIONS about investigations, complaints, and requests for information." Plaintiffs have stated that they will "produce any FTC or DOJ civil investigation demands or complaints related to the WESTLAW PLATFORM, Plaintiffs' written response, and the FTC's or DOJ's final written conclusions, if any" and "any complaints filed against Plaintiffs asserting any antitrust or unfair competition claim related to the WESTLAW PLATFORM." This is only a subset of the requests, and ROSS is requesting all communications, even those beyond "demands or complaints". (*See Luria Steel & Trading Corp. v. Ogden Corp.*, 484 F.2d 1016, 1021 (3d Cir. 1973) (analyzing all aspects of FTC proceedings in private antitrust action)).  For example, this would include communications relating to any third-party submissions raising competition or other legal concerns the WESTLAW PLATFORM, and discovery in any related investigations or antitrust claims.  Please confirm that you will produce ALL documents as requested, or confirm what you are withholding and your justifications for doing so.

b.   **RFP No. 221**

Plaintiffs have refused to produce documents responsive to RFP 221, requesting "ALL Library Maintenance Agreements to which YOU are a party" because "it is neither relevant to any claim or defense of any party in this Litigation nor proportional to the needs of the case because any "Library Maintenance Agreements" are not relevant to ROSS's counterclaims and any relevance is significantly outweighed by the burden of production."  These documents are highly relevant to ROSS's claims, as the terms of agreements with customers is relevant to determine market power and Plaintiffs' conduct. (*See In re Intel Corp. Microprocessor Antitrust*

**C Crowell**

*Litig.*, 2007 WL 137152 at \*9 (parties are entitled to discover information relevant to entities' ability to control prices or exclude competition in antitrust actions)).  This request is relevant for the same reasons ROSS is seeking judicial agreements, which Plaintiffs' have already agreed to produce in part, since agreements with both public and private entities that involve the WESTLAW PLATFORM impact the customer use and value of the platform.  (*See, e.g.*, ROSS's Amended Answer and Counterclaims, Dkt. 24 at ¶¶ 38-56; *In re MiMedx*, 2015 WL 5445140, at \*4).  Please confirm that you will produce ALL documents as requested, or confirm what you are withholding and your justifications for doing so.

\* \* \*

ROSS is severely prejudiced by Plaintiffs' refusal to meet its discovery obligations. Plaintiffs' refusal to produce documents that show particularized customer decision and financial information and documents that show the financial value of Westlaw make it impossible for ROSS to prepare its claims and defenses.  ROSS demands that Plaintiffs produce documents as requested in this letter, or otherwise stipulate that: (1) no such other documents exist, (2) no such other documents will be produced as part of this Litigation, and (3) Plaintiffs will not rely on any other documents.  ROSS reserves all rights and waives none.

Very truly yours,

Joachim B. Steinberg

# EXHIBIT G

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

Cameron Ginder
To Call Writer Directly:
+1 312 862 3757
cameron.ginder@kirkland.com

300 North LaSalle
Chicago, IL 60654
United States

+1 312 862 2000

www.kirkland.com

Facsimile:
+1 312 862 2200

November 22, 2022

**By Email**

Joachim Steinberg
Crowell & Moring LLP
jsteinberg@crowell.com

Re: *Thomson Reuters Enterprise Centre GmbH et al. v. ROSS Intelligence, Inc.*, Case No. 20-613-LPS

Dear Joachim:

We write on behalf of Thomson Reuters Enterprise Centre GmbH and West Publishing Corp. (collectively "Thomson Reuters") in response to ROSS Intelligence, Inc.'s November 7, 2022 letter concerning Thomson Reuters' responses to ROSS's Request for Production Nos. 182-233. We also write separately with respect to ROSS's own responses to Thomson Reuters' Fourth Set of Requests for Production.

## I.      THOMSON REUTERS' WRITTEN RFP RESPONSES

We start with ROSS's general assertions about the scope of discovery in this case. ROSS first objects to Thomson Reuters' agreement to produce documents "sufficient to show" in response to ROSS's RFPs. For many of Thomson Reuters' written responses, this is ROSS's sole complaint. Candidly, we are surprised. ROSS took precisely the same approach in its RFP responses, agreeing to produce only documents "sufficient to show," "showing," or "related to" in response to Thomson Reuters' requests for "all documents." Indeed, ROSS objected to Thomson Reuters' RFPs because "the request for 'all documents' ... is not proportional to the needs of the case." ROSS RFP Resp. Nos. 110-28. ROSS cannot legitimately claim that Thomson Reuters must produce "all documents" in response to each of ROSS's RFPs when ROSS has elected to produce documents "sufficient to show" itself.

Even setting aside ROSS's own responses, it is no argument, as ROSS suggests, that Thomson Reuters must produce "all documents" because antitrust discovery is broad in some cases. Antitrust cases, like all cases, are governed by Rule 26, which limits the scope of discovery to what is relevant and proportional to the needs of the case. Even in antitrust cases, the scope of discovery "is not unlimited." *In re Diisocyanates Antitrust Litig.*, 2020 WL

## KIRKLAND & ELLIS LLP

7427040, at *1 (W.D. Pa. Dec. 18, 2020). And ROSS has the burden of explaining why its requests are appropriate, as even ROSS's cited cases recognize. *In re Intel Corp. Microprocessor Antitrust Litig.*, 2007 WL 137152, at *5 (D. Del. Jan. 12, 2007) ("The party seeking discovery has the burden of demonstrating its merits."). Merely saying, repeatedly and without substantive explanation, that ROSS requested "all documents" and thus Thomson Reuters should have to produce them is not enough.

ROSS next demands that Thomson Reuters produce "all documents" in response to ROSS's RFPs without *any* temporal limitation. ROSS seems to justify its limitless requests because "its Counterclaims allege anticompetitive conduct by Plaintiffs going back decades." Ltr. at 2. ROSS's sole remaining antitrust theory is its tying claim. Thus, the only allegedly "anticompetitive conduct" at issue is ROSS's allegation that Thomson Reuters does not license its so-called "Public Law Database" separate from "Legal Search Tools." D.I. 170. That limited conduct cannot justify the limitless discovery that ROSS seeks. And none of the remaining elements of ROSS's tying claims—nor the proportionality doctrine—justifies the production of documents dating back to the 19th Century, as is, apparently, ROSS's position. D.I. 225 at ¶ 42.

ROSS's requests for "all documents"—over two centuries—are facially overbroad. And nothing in ROSS's letter explains why those requests are relevant or proportional to the needs of the case. Thomson Reuters responds to ROSS's specific objections below.

### A.     RFP Nos. 183-185

ROSS suggests that Thomson Reuters must produce financial documents "broken out by Customer Segment even if that is not how they are kept in the ordinary course of business." That is plainly not required. *See Palmer v. York Cnty., Penn.*, 2022 WL 4473595, at *2 (M.D. Pa. Sept. 26, 2022) ("It is clear, therefore, that the court cannot compel the production of things that do not exist. Nor can the court compel the creation of evidence by parties who attest that they do not possess the materials sought by an adversary in litigation."); *Am. Banana Co. v. Republic Nat'l Bank of New York, N.A.*, 2000 WL 521341, at *3 (S.D.N.Y. May 1, 2000) ("[The] Court cannot compel production of what does not exist."); *Deng v. N.Y. Office of Mental Health*, 2016 WL 11699675, at *3 (S.D.N.Y. Feb. 23, 2016) (denying plaintiff's motion to compel in part because "Rule 34 cannot be used to compel a party to create a 'document' solely for its production") (citation omitted). Thomson Reuters will produce documents as they are kept in the ordinary course of business in accordance with the federal rules.

### B.     RFP Nos. 187 and 205

RFP Nos. 187 and 205 request documents related to Thomson Reuters' practice of providing Westlaw to law students. ROSS contends that these documents "are relevant to ROSS's antitrust claims about the costs, losses, profits, and investments into the Westlaw Platform for obtaining and convincing potential customers to use Westlaw over another research platform" and are "relevant to ROSS's Sherman Act claims about market power and barriers to entry." Ltr. at 3. Thomson Reuters' business practices with respect to Westlaw and law students are not at issue. And ROSS's claim that antitrust discovery is broad and "not limited to the precise issues set out in the pleadings" is wrong. *See Invensas Corp. v. Renesas Elecs. Corp.*,

## KIRKLAND & ELLIS LLP

287 F.R.D. 273, 279 (D. Del. 2012) (stating that, "for [ ] discovery requests to be proper, they must seek information that can be said to be 'relevant to any party's claim or defense.'") (citation omitted).

### C.     RFP Nos. 199-204, 209

Thomson Reuters refers above to its response to ROSS's demand that it produce "all documents" merely because a subset of the requested documents is plausibly relevant. Thomson Reuters adds that documents related to "certain business strategies" are relevant insofar as they bear on the alleged market for so-called "Public Law Databases" separate and apart from "Legal Search Tools," and vice versa. Thomson Reuters is producing documents related to those alleged markets consistent with its responses to these RFPs.

### D.     RFP No. 223

ROSS contends that "all documents" related to Thomson Reuters' "decision to make judicial opinions available online" are "directly relevant to the core of ROSS's antitrust claims of exclusionary conduct." Ltr. at 5. Not so. The simple fact that ROSS's counterclaims document Thomson Reuters' unsurprising transition from offering Westlaw in print form to online does not make it relevant to the underlying antitrust issues, nor justify broad discovery. *Barn Light Elec. Co., LLC v. Barnlight Originals, Inc.*, 2015 WL 12819862, at *1 (M.D. Fla. Nov. 24, 2015) (denying "[p]laintiff's request for production of essentially all of [defendant's business] records" because it was "overbroad and [sought] irrelevant information" and plaintiff "failed to demonstrate that such information was relevant to any claims or defenses").

### E.     RFP Nos. 225-27, 231

ROSS raises two objections to Thomson Reuters' responses to these RFPs. First, it contends that requests "related to the Terms of Service are relevant to market power and exclusionary practices." Neither of the cases ROSS cites in support of that argument supports that claim. *Epic Games* merely recognizes that video-game providers had "created impediments to switching geographic registration" by "prohibiting it as part of the terms of service." *Epic Games, Inc. v. Apple Inc.*, 559 F. Supp. 3d 898, 990 (N.D. Cal. 2021). And *Sea-Land* emphasizes that customer demand and practices can be evidence of separate product markets in a tying case. *Sea-Land Serv., Inc. v. Atl. Pac. Int'l, Inc.*, 61 F. Supp. 2d 1092, 1098 (D. Haw. 1999). Neither supports ROSS's demand that Thomson Reuters produce "all documents and communications" related to its Terms of Service. Thomson Reuters has agreed to produce documents sufficient to show the Terms of Service related to Westlaw. Thomson Reuters' Response to RFP No. 198. And Thomson Reuters has agreed to produce documents sufficient to show customer demand for Legal Search Tools, Public Law Databases, and Legal Search Platforms. Thomson Reuters' Response to RFP Nos. 196-97. Nothing more is required.

Second, ROSS contends that Thomson Reuters' "decision to publish judicial opinions in online format and the terms it requires the public to agree to before it can access the judicial opinions is relevant ... to coercion." Ltr. at 5. This is illogical. Thomson Reuters sells hardcopy caselaw reporters *and* licenses Westlaw. Its decision to offer Westlaw through an online legal

## KIRKLAND & ELLIS LLP

research platform in the 21st Century is hardly evidence of coercion and is not relevant to any issue in the case. And, as just noted, Thomson Reuters is producing documents sufficient to show its Terms of Service related to Westlaw.

**F.     RFP Nos. 188-89, 191, 195, 208**

ROSS's sole argument here is that the requested pricing documents—above and beyond documents sufficient to show the prices Thomson Reuters charges customers for Westlaw—"are relevant to ROSS's antitrust claims to evidence market definition, market power, and Plaintiffs' conduct." Ltr. at 6-7, 8-9. Again, ROSS's only antitrust theory is that Thomson Reuters ties its so-called "Public Law Database" and "Legal Search Tools." ROSS has not articulated why the prices Thomson Reuters charges its customers for Westlaw, a legal research platform, are relevant to ROSS's tying claim. Nevertheless, Thomson Reuters will produce documents sufficient to show the prices it charges customers for Westlaw as stated in its response to these RFPs.

**G.     RFP No. 194**

Thomson Reuters will produce documents sufficient to show customer churn rate as they are kept in the ordinary course of business. *See supra* Part I.A.

**H.     RFP Nos. 196-97**

Thomson Reuters refers above to its response to ROSS's demand that it produce "all documents" merely because a subset of the requested documents is plausibly relevant. Thomson Reuters adds that it agreed to produce documents sufficient to show "customer demand" and "customer preferences." Thomson Reuters is not withholding documents based only on the distinction, if any, between "customer demand" and "customer preferences."

**I.     RFP Nos. 210-11, 213, 219-220, 222**

RFP No. 210 seeks "all Agreements with Competitors." Thomson Reuters agreed to produce agreements with competitors to use Westlaw or Thomson Reuters' alleged Public Law Database or Legal Search Tools, if any. Other agreements, about unspecified and unknown topics, are simply not relevant to "market power of Plaintiffs" in any alleged market at issue in this case, as ROSS suggests. Ltr. at 9.

ROSS also asks for documents sufficient to show which competitors have unlawfully accessed Westlaw without a license. RFP No. 213. As an initial matter, the suggestion that Thomson Reuters *must* know about these companies, if any, merely because it caught ROSS's copyright infringement strains credulity. And, even if Thomson Reuters had such evidence, whether other competitors have similarly committed copyright infringement or used Westlaw without a license has no bearing on any claim or defense in this case.

ROSS next contends that Thomson Reuters' agreement to produce "documents sufficient to show Competitors who offer Legal Search Platforms, Legal Search Tools, and Public Law Databases" is insufficient in response to ROSS's request for documents "sufficient to identify

## KIRKLAND & ELLIS LLP

Your Competitors, including Identifying each product offered by that Competitor." Ltr. at 9. Thomson Reuters agreed to produce documents "sufficient to show Competitors who offer Legal Search Platforms, Legal Search Tools, and Public Law Databases, if any." Thomson Reuters RFP Resp. No. 211. We fail to see how agreeing to produce documents sufficient to show Thomson Reuters' competitors by claimed product type is not enough. Thomson Reuters will produce documents as agreed in its written response to RFP No. 211.

Finally, as to RFP Nos. 219-220 and 222, ROSS lumps numerous RFPs into a single sub-heading and represents that Thomson Reuters has offered to produce only documents "sufficient to show their process for acquiring judicial opinions, statutes, and regulations." Ltr. at 10. That is misleading. Thomson Reuters also agreed to produce "documents sufficient to show Plaintiffs' acquisition or licensing of Legal Search Tools or Legal Search Platforms from third parties." Thomson Reuters' Response to RFP No. 220. And, despite ROSS's best efforts to quibble with each of Thomson Reuters' RFP responses, Thomson Reuters will produce full agreements as stated in its responses, including terms of service, if any.

### J.    RFP Nos. 216-18

Thomson Reuters has already agreed to produce any "FTC or DOJ civil investigation demands or complaints related to the Westlaw Platform, Plaintiffs' written response, and the FTC's or DOJ's final written conclusions." Thomson Reuters' Response to RFP Nos. 216-17. ROSS's contention that Thomson Reuters must produce "third-party submissions" expressly seeks documents outside of Thomson Reuters' possession, custody, or control. Further, any third-party complaints that the DOJ or FTC determined warranted an investigation would have led to a complaint or CID, which Thomson Reuters has agreed to produce. ROSS's suggestion that Thomson Reuters produce "discovery in any related investigations or antitrust claims" is premature. Thomson Reuters' investigation remains ongoing, and it has already agreed to produce written responses to DOJ or FTC investigations, if any. If Thomson Reuters identifies any relevant investigations or complaints, it will conduct a reasonable search for any production made in relation to such investigation to determine whether the production includes documents both responsive to ROSS's RFPs and relevant to any claim or defense in this case.

### K.    RFP No. 221

ROSS finally claims that Thomson Reuters' Library Maintenance Agreements are relevant because "the terms of agreements with customers is relevant to determine market power and Plaintiffs' conduct." Ltr. at 11. ROSS then analogizes Library Maintenance Agreements to agreements Thomson Reuters has with state or federal courts about publishing caselaw. Ltr. at 12. We do not understand the argument. A Library Maintenance Agreement is a single-subscription contract that covers Westlaw print publications to help customers manage the cost and process of maintaining hardcopy Westlaw subscriptions, as public records make readily

apparent.[1]  These agreements are immaterial to any of the antitrust issues in this case and have no bearing on market power in any relevant market plausibly at issue in the case.

## II.    ROSS'S WRITTEN RFP RESPONSES

We write separately to seek clarification about ROSS's responses to Thomson Reuters' Fourth Set of Requests for Production, served on October 24, 2022.  In particular, ROSS's responses and objections are such that Plaintiffs cannot reasonably tell what ROSS is agreeing to produce.

### A.    The Scope of ROSS's Production

ROSS's responses vary between agreeing to produce documents "sufficient to show," "showing," "supporting ROSS's allegation[s]," and "relating to" or "related to" an RFP, seemingly without any apparent distinction between the phrases.  We ask that ROSS promptly clarify what—if any—difference it intends by these phrases and clarify the scope of what it is actually agreeing to produce in response to Thomson Reuters' RFPs.  Thomson Reuters reserves all rights and will further evaluate ROSS's responses once it has received this additional clarification.

### B.    Deficiencies to Specific RFPs

RFP Nos. 110-11.  Request No. 110 asks for documents "related to ROSS's allegation that there is Customer demand for a Public Law Database separate from any Legal Search Tools." ROSS responded by saying it will produce documents "supporting ROSS's allegation that there is Customer demand for a Public Law Database separate from any Legal Search Tools."  Request No. 111 similarly asks for documents "related to ROSS's allegation that there is Customer demand for Legal Search Tools separate from any Public Law Database."  In response to both requests, ROSS states that it will produce documents "supporting" its allegations.  These requests seek documents *related to* ROSS's allegations, not merely documents *supporting* ROSS's allegations.  Please confirm that ROSS is not limiting its production solely to documents "supporting" its allegations and will also produce documents sufficient to show all facts related to these allegations, including documents inconsistent with ROSS's allegations.

RFP No. 113.  Request No. 113 asks for documents "related to the scope of ROSS's Public Law Database, including (i) marketing materials about the scope of ROSS's Public Law Database; (ii) analyses of the scope of ROSS's Public Law Database, including but not limited to as compared to other Legal Search Platforms; (iii) analyses of the sufficiency of ROSS's Public Law Database; (iv) Communications with Customers and investors about the scope of ROSS's Public Law Database; and (v) feedback, complaints, praises, criticisms or Communications of any kind that ROSS received from any third party, including Customers and actual or potential investors, about the scope of ROSS's Public Law Database." ROSS responded by saying it will

---

[1]   See https://store.legal.thomsonreuters.com/law-products/support/book-pricing-options/library-maintenance-agreement; https://legal.thomsonreuters.com/content/dam/ewp-m/documents/legal/en/pdf/fact-sheets/lma_customer_handbook_2013.pdf.

## KIRKLAND & ELLIS LLP

produce only "documents sufficient to show the scope of ROSS's Public Law Database."  This response appears to exclude documents responsive to parts (i)-(v) of Request No. 113 without basis or justification.  Please confirm that ROSS intends to produce documents responsive to Request No. 113 and not merely documents sufficient to show the scope of ROSS's Public Law Database.

RFP No. 114.  Request No. 114 asks for documents "related to ROSS's efforts to build a Public Law Database, including (i) analyses about potential sources of legal information, (ii) Communications with third parties about purchasing or licensing access to a collection of legal information (iii) ROSS's decision to acquire legal information from Casemaker and Fastcase, (iv) ROSS's decision not to purchase, acquire, or collect caselaw, statutes, regulations, or other legal information from alternative sources, and (v) ROSS's decision not to build its own Public Law Database from any other publicly available sources."  ROSS responded that it will produce documents "sufficient to show ROSS's efforts to build a Public Law Database."  This response appears to exclude documents responsive to parts (i)-(iv) of Request No. 114 without basis or justification.  Please confirm that ROSS intends to produce documents responsive to Request No. 114 and not merely documents sufficient to show ROSS's efforts to build a Public Law Database.

RFP No. 115. Request No. 115 asks for documents "related to ROSS's efforts to market its Legal Search Tools separate from any Public Law Database to Customers, including (i) marketing plans and analyses, (ii) marketing materials, (iii) presentations and pitch materials, (iv) internal ROSS communications, and (v) Communications with Customers about licensing the right to use ROSS's Legal Search Tools separate from any Public Law Database."  ROSS responded that it will produce "documents showing ROSS's efforts to market its Legal Search Tools separate from any Public Law Database to Customers."  This response appears to exclude documents responsive to parts (i)-(v) of Request No. 115 without basis or justification.  Please confirm that ROSS intends to produce documents responsive to Request No. 115 and not merely documents showing ROSS's efforts to market its Legal Search Tools separate from any Public Law Database.

RFP No. 116.  Request No. 116 asks for documents "related to ROSS's efforts to market its Legal Search Platform to Customers, including (i) marketing plans and analyses, (ii) marketing materials, (iii) presentations and pitch materials, and (iv) Communications with Customers about licensing the right to use ROSS's Legal Search Platform."  ROSS responded that it will produce "documents showing ROSS's efforts to market its Legal Search Platform to Customers."  This response appears to exclude documents responsive to parts (i)-(iv) of Request No. 116 without basis or justification.  Please confirm that ROSS intends to produce documents responsive to Request No. 116 and not merely documents showing ROSS's efforts to market its Legal Search Platform.

RFP No. 118.  Request No. 118 asks for "All Documents and Communications related to any feedback ROSS received from Customers and actual or potential investors about ROSS's Legal Search Platform, including Documents and Communications related to the quality of ROSS's Legal Search Tools and the scope of ROSS's Public Law Database."  ROSS responded that it will produce documents "relating to any feedback ROSS received from Customers and

## KIRKLAND & ELLIS LLP

actual or potential investors about ROSS's Legal Search Platform." First, we ask ROSS to confirm that it also intends to produce documents relating to feedback it received about its Public Law Database and Legal Search Tools, as requested. Second, ROSS has the burden of establishing antitrust injury. *See, e.g., In re Wellbutrin XL Antitrust Litig. Indirect Purchaser Class*, 868 F.3d 132, 166 (3d Cir. 2017) ("[P]laintiffs … have the burden of proving that they have been injured"); *see also W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 101 (3d Cir. 2010) ("[T]he plaintiff must establish that it suffered an antitrust injury."). Feedback ROSS received about its Legal Search Platform go directly to ROSS's claim that Thomson Reuters has allegedly caused it anticompetitive harm and antitrust injury. We ask that ROSS confirm it will produce all documents related to feedback about its Legal Search Platform, as requested in RFP No. 118.

RFP No. 119. Request No. 119 asks for documents "related to any analysis about the market for Legal Search Platforms, including Documents related to analyses about (i) the Legal Search Platform market, (ii) Customer demand for new Legal Search Platforms, (iii) Customer demand for new Legal Search Tools, (iv) barriers to entry into the Legal Search Platform market, and (v) the likelihood of success for a new Legal Search Platform." ROSS responded that it will produce "documents related to any analysis about the market for Legal Search Platforms." This response appears to exclude documents responsive to parts (i)-(v) of Request No. 119 without basis or justification. Please confirm that ROSS intends to produce documents responsive to Request No. 119 and not only documents relate to any analysis about the market for Legal Search Platforms.

RFP No. 120. Request No. 120 asks for documents "related to Y Combinator's investment in ROSS, including documents Related to Y Combinator's concern that 'Westlaw would move to protect its strangle grip on the market,' as alleged in Paragraph 66 of the Amended Complaint." ROSS responded that it will produce "documents and communications related to Y Combinator's investment in ROSS." Please confirm that ROSS also intends to produce documents related specifically to its allegation that Y Combinator was concerned that "Westlaw would move to protect its strangle grip on the market."

RFP No. 127. Request No. 127 asks for "All Documents and Communications related to Customer 'concerns' about the breadth of ROSS's Public Law Database, as alleged in Paragraph 73 of the Amended Complaint." ROSS responded that it will produce documents "related to Customer 'concerns' about the breadth of ROSS's Public Law Database." ROSS's entire antitrust theory hinges on its alleged inability to compete without access to Thomson Reuters' Public Law Database. Thomson Reuters is entitled to these documents—solely within ROSS's possession, custody, and control—to test the veracity of ROSS's allegations. Please confirm that ROSS intends to produce all documents related to customer concerns about the breadth of ROSS's Public Law Database, as requested.

\*        \*        \*

Thomson Reuters reserves all rights and waives none with respect to any of the foregoing.

KIRKLAND & ELLIS LLP

Sincerely,

/s/ Cameron Ginder
Cameron Ginder

# EXHIBIT H



Shira Liu
sliu@crowell.com
(949) 798-1325 direct

Crowell & Moring LLP
3 Park Plaza
20th Floor
Irvine, CA 92614
+1.949.263.8400  main

December 29, 2022

**VIA E-MAIL**

Cameron Ginder
Kirkland & Ellis LLP
300 North LaSalle
Chicago, IL 60654
312-862-3757
cameron.ginder@kirkland.com

Re:   *Thomson Reuters Enterprise Centre GmbH v. ROSS Intelligence, Inc.*, Case No. 20 Civ.
      613 (SB)

Dear Cameron:

      We write on behalf of ROSS Intelligence, Inc. ("ROSS") to follow up from our meet and
confer videoconference calls on December 1 and 2, 2022 (M&C), which followed written
communications from our September 20, 2022, First Set of Counterclaim Requests for Production
("Counterclaim RFPs"), your October 20, 2022, responses to the Counterclaim RFPs
("Counterclaim RFPs Response"), our November 7, 2022, letter ("Nov. 7 Letter"), and your
November 22, 2022, response letter ("Nov. 22 Letter").

**I.   Plaintiffs Temporal Objection**

      Plaintiffs object that ROSS requests relevant documents from before January 1, 2015. *See*
Nov. 22 Letter, at 2. Plaintiffs have the burden to "demonstrate in specific terms" why the
requested time period is improper, but have not done so. *See Clemens v. New York Cent. Mut.
Fire Ins. Co.*, 300 F.R.D. 225, 227 (M.D. Pa. 2014) ("The party objecting to discovery must show
that the requested materials do not fall within the broad scope of relevance or else are of such
marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary
presumption in favor of broad disclosure") (citations omitted).[1]

---

[1] Plaintiffs misread the case which they contend states that it is the requesting party's initial burden. The case they
cite, *In re Intel Corp. Microprocessor Antitrust Litig.*, *see* Nov. 22, Letter, at 2, relies on a case where the party seeking
discovery had no claim upon which relief could be granted. *See In re Intel Corp. Microprocessor Antitrust Litig.*, 2007
WL 137152, at *5 (D. Del. Jan. 12, 2007) (citing *McLaughlin v. Copeland*, 455 F. Supp. 749, 753 (D. Del.
1978), *aff'd*, 595 F.2d 1213 (3d Cir. 1979), where the request for discovery was denied because the plaintiff "failed to
state a claim upon which relief can be granted"). In this case, however, the antitrust and UCL claims survived
dismissal. *See* Dkt. Nos. 170, 171.

**Crowell**

ROSS alleges anticompetitive conduct going back decades.  For example, Plaintiffs argue that an essential element of tying is that there are separate products, and thus documents reflecting Plaintiffs' historical practices with regard to its public law database and search products are relevant to the tying claim.  *See e.g.*, Dkt. No. 170 at 7-8 (the Court recognizing that Plaintiffs cited *Eastman Kodak Co. v. Image Tech. Serv., Inc.*, 504 U.S. 451, 462 (1992), for the proposition that if products have been previously sold separately, then that is evidence that separate products exist, and stating that ROSS sufficiently alleges that "Plaintiffs' public law database was effectively sold as a stand-alone product . . . before modern technology allowed Plaintiffs to develop an online legal search tool").  The Counterclaim alleges that West previously sold its public law database separately from its search tools, but that Plaintiffs now tie these two products together.  *See* Dkt. No. 225, ¶¶ 38-42, 102.  At the M&C, you stated that West's transition to the internet occurred in the 1980's and 1990's.  Whenever the transition occurred, documents and communications from the time that the transition occurred are relevant to why Plaintiffs chose to tie these products together, the competitive effect of the tie, and to consumer demand for separate products.  Moreover, documents that Plaintiffs have produced in this litigation show that the proposed January 2015 limitation would exclude highly relevant material related to Plaintiffs' decisions to tie their database and legal search tools together on the online legal research platform.  *See e.g.*, TR-0037669 at 1 (stating that in 1975 "Westlaw was one of the first online legal research services").

Another element of tying is that Plaintiffs have power in the tying product market, which in this case is the database market.  *See, e.g.*, *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 511 (3d Cir. 1998) ("*Per se* liability [for a tying arrangement] exists where the defendant is found to have appreciable market power in the tying market.  In such cases, the ability to leverage this power to restrain trade in the tied market is presumed and no inquiry need be made into the actual prevailing market conditions in that market.").  Documents related to Plaintiffs' accumulation of market power over time are thus relevant to the tying claim.  *Id.*  Finally, if the UCL claim is based on copyright misuse, then any business or technological decisions by Plaintiffs to intermingle its copyrights with government edicts—even if these decisions occurred before January 2015—are relevant.  *See U.S. v. Microsoft*, 253 F.3d 34, 65-66 (D.C. Cir. 1998).  Plaintiffs already attacked the merits of the tying and UCL claims in their motion to dismiss.  But that failed, so Plaintiffs must produce discovery that is relevant to the antitrust and UCL claims.

Accordingly, ROSS restates its requests for documents without a temporal limitation.  Unless Plaintiffs agree with this position, a final meet and confer is necessary.

## II.  Fundamental Inadequacies Common to Plaintiffs' Production Offers

Before discussing the specific RFPs below, I write to reiterate two fundamental inadequacies that are common to Plaintiffs' offers of production.  (For others Requests, of course, Plaintiffs have refused to offer any documents.)  We discussed both of these inadequacies during the M&C.

First, many of Plaintiffs' offers propose to produce documents sufficient to show a selected subset of the documents sought.  These subsets are typically too vague for ROSS to understand precisely what is being offered – e.g. what documents are

2

- "sufficient to show reasons for making investments" (Request No. 186), or

- "sufficient to show business plans for the sale, distribution, or licenses" of the Westlaw Platform, Legal Search Tools, Public Law database (Request Nos. 199-202), or

- "sufficient to show the Westlaw Platform's share of legal research services, Public Law Databases, and Legal Search Tools" (Request No. 206)?

These vague offers are also deficient because they allow Plaintiffs to cherry-pick the documents they prefer to produce. For example:

- If the same reasons for an investment decision are written in an email to managers versus lower-level employees, Plaintiffs' offer for Request No. 186 would allow them to withhold the document which shows that management was made aware of the decision-making information.

- Consider Plaintiffs' offer to produce "documents sufficient to show business plans" (Request Nos. 199-202). If a team is working through developing a plan and has various iterations of the plan, is one of these documents "sufficient to show" the plan, and if so which one? If a plan is formulated by (and circulated among) business analysts and approved (via email) by senior executives, which document would be produced?

A production offer which allows an opportunity for cherry-picking is not proper. *See Bryant v. Mattel, Inc.*, 2007 WL 5430893, at \*5 (C.D. Cal. May 18, 2007) ("As a threshold matter, MGA's responses are inadequate to the extent MGA has restricted its production to 'relevant and responsive non-objectionable documents' or documents 'sufficient' to show when events relating to Bratz occurred. These restrictions suggest that MGA might be excluding documents that are responsive to the request based upon its unilateral determination of what is 'relevant' or 'sufficient.' Mattel [sic] shall provide the responses to document requests ordered herein without these restrictions.").

Second, many of Plaintiffs' offers propose to produce a limited subset of material do not include responsive and relevant materials. For example, all of Plaintiffs' offers wholly exclude communications, but internal communications are often key evidence in antitrust cases. *See, e.g.*, *Microsoft*, 253 F.3d at 76 (relying on internal Microsoft communications, including internal Microsoft emails stating that "[w]e need to push" Apple and "we can use Office as a club" to achieve preferred outcomes, to conclude that Microsoft engaged in anticompetitive practices); *In re Domestic Air Transp. Antitrust Litig.*, 141 F.R.D. 556, 563 (N.D. Ga. 1992) (directing party to produce documents from three corporate executives because they "may have been involved in decision-making or discussions" regarding the subject matter of the litigation). All of Plaintiffs' offers also exclude documents related to how decisions are made, market studies, surveys, and the like that, again, are often key evidence in antitrust cases. *See, e.g.*, *Decurtis LLC v. Carnival Corp.*, 2022 WL 17583609, at \*5 (S.D. Fl. Nov. 14, 2022) (accepting the expert's methodology for defining an antitrust market where his method was to "review [ ] the record, which includes comprehensive market studies"). Plaintiffs have not articulated any burden objection, or indicated



any willingness to meet and confer on strategies to reduce the burden of production for the documents sought. This unwillingness to engage follows our November 7 letter that explained why the documents Plaintiffs' response excludes are relevant. It also follows our invitation during the meeting and confer to discuss burden. Plaintiffs have refused to budge and reiterated that they are unwilling to discuss production of any documents beyond the inadequate subsets offered in response to certain requests (or the complete refusals to produce in response to others).

### III. Plaintiffs' Specific Objections to ROSS' RFP Requests

#### a.    Request No. 186

Request No. 186 seeks "all documents and communications related to the reasons for making investments in the Westlaw Platform, separately broken out for each of [Plaintiffs'] legal search tools and for each artificial intelligence tool." In response, Plaintiffs offered to produce documents "*sufficient to show the reasons for making investments* in the Westlaw Platform." Counterclaim RFPs Response, at 11 (emphasis added). ROSS's Nov. 7 letter explained that this offer is not only vague and confusing, but inadequate because it excludes documents related to these decisions, including communications about these decisions, which are relevant in part to reveal evidence of intent for making these investment decisions and barriers to entry. Nov. 7 Letter, 3-4. Plaintiffs did not respond in their Nov. 22 Letter.

During the M&C, I asked how the offer of documents "sufficient to show the reasons for making investments" could be evaluated – i.e. which documents would be included and which would be excluded. You explained that Plaintiffs will produce a subset of the documents they contend sufficiently show their reasoning, but not all of the documents. I explained at the M&C that this approach is deficient because it allows Plaintiffs to cherry-pick preferential documents to produce. *See* Section II, *supra*.

During the M&C, I also explained that there is no basis to exclude documents *relevant to* the sought material, including communications. *See* Section II, *supra*. Documents related to investment decision-making, including communications, are relevant to this case because they relate to market power and competitive effects in the database and search tool markets. *See, e.g.*, *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 313 (3d Cir. 2007) ("To support an inference of monopoly power, a plaintiff typically must plead and prove that a firm has a dominant share in a relevant market, and that significant 'entry barriers' protect that market."); *In re IBM Peripheral EDP Devices Antitrust Litig.*, 481 F. Supp. 965, 976 (N.D. Cal. 1979), *aff'd sub nom. Transamerica Computer Co. v. Int'l Bus. Machines Corp.*, 698 F.2d 1377 (9th Cir. 1983) ("Anything that tends to inhibit firms from readily and easily entering the marketplace can be analyzed as an entry barrier. Thus, the capital an entrant would have to invest is a factor, as are the employee skill levels required for a firm to be successful"); *Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 202-203 (3d Cir. 1993) (dismissing claim on other grounds, but noting that there was "evidence of significant barriers to entry" where jury found that "quick penetration of the market [was] impossible without purchasing an existing distribution network"); *Yeager's Fuel v. Pennsylvania Power & Light Co.*, 953 F. Supp. 617, 648 (E.D. Pa. 1997) (analyzing barriers to entry and noting that "Plaintiffs must do more than offer efficient systems that cost less; they need to overcome the additional barrier of high installation and conversion costs"); Section II, *supra*; *see also* Hovenkamp & Phillip E. Areeda, *Antitrust Law: An Analysis of Antitrust Principles and*



*Their Application* ¶ 420b. (Fourth & Fifth Editions 2018-2022) (hereinafter "Areeda") ("Entry conditions are therefore relevant to assessing the market power required by most antitrust rules.").

Accordingly, ROSS restates its requests for documents responsive to Request No. 186. Unless Plaintiffs agree with this position, a final meet and confer is necessary.

**b.    Request Nos. 187 and 205**

These requests seek documents related to the costs of offering Westlaw to law students and to lawyers that are in training, and also related to Plaintiffs' strategies and policies associated with offering Westlaw to customer segments.  Plaintiffs refuse to produce any responsive documents. Counterclaim RFPs Response, at 11, 24.  In the Nov. 7 Letter, ROSS explained that "[t]hese documents are relevant to ROSS's antitrust claims about the costs, losses, profits, and investments into the Westlaw Platform."  Nov. 7 Letter, at 3.  That letter also explained that ROSS alleges that "Westlaw offers its platform and training support to those entering the legal market like law students for free to 'get them hooked'" because "[o]nce users have expended the energy and resources to build the skills to use a specific platform, it is highly unlikely that those users will make the choice to switch to another." Dkt. No. 225, ¶ 91.  In Plaintiffs' Nov. 22 Letter, Plaintiffs asserted that these requests address topics that are "not at issue" without substantively responding to the Nov. 7 Letter.  Nov. 22 Letter, at 2-3.  Plaintiffs took the same position at the M&C.

I write to reiterate that these requests seek relevant documents.  *See* Dkt. No. 225, ¶ 91.  At the M&C, Plaintiffs did not dispute that conduct that increases barriers to entry is relevant to showing market power.  *See Section* III.a (citing cases).  Instead, Plaintiffs disputed that *market power for search tools* is at issue in this case.  We disagree.  One example of how Plaintiffs' market power for search tools is relevant is that an element of rule of reason tying is an "unreasonabl[e] restrain[t on] competition in the tied product market."  *Brokerage Concepts, Inc.*, 140 F.3d at 511. If the tied product market has high barriers to entry, anticompetitive conduct affecting the tied product market will have a larger restraint on competition.  Therefore, barriers to entry in that market are relevant to assessing the competitive effect of Plaintiffs' conduct in that market.  *See Ohio v. American Express Co.*, 138 S. Ct. 2274, 2287 (2018) (commenting that the "competitive effects of restraints on transactions" can be "[e]vidence of" the "anticompetitive exercise of market power"); *Flaa v. Hollywood Foreign Press Ass'n*, -- F.4th --, 2022 WL 17492256, at *8 (9th Cir. Dec. 8, 2022) (stating that "[w]e rely on market power to help distinguish between restraints that are likely to substantially impair competition and those that are not" and holding that defendant lacked market power due to the presence of other active competitors in the marke); *FTC v. Hackensack Meridian Health, Inc.*, No. CV 20-18140, 2021 WL 4145062, at *20 (D.N.J. Aug. 4, 2021) (when a "market is considered highly concentrated" a merger is "presumed to be likely to enhance market power"), *aff'd*, 30 F.4th 160 (3d Cir. 2022) ("[o]ne useful indicator of the competitive effects of a merger is market concentration").

Accordingly, ROSS restates its requests for documents responsive to Request Nos. 187 and 205.  Unless Plaintiffs agree with this position, a final meet and confer is necessary.



### c.    Request Nos. 199-202

These requests seek "all documents and communications related to" Plaintiffs' business plans and/or strategies for the sale, distribution, or license of the Westlaw Platform, legal search tools, public law databases, and legal search platforms. In response, Plaintiffs offered to produce only documents "*sufficient to show business plans* for the sale, distribution, or licenses" of the Westlaw Platform, Legal Search Tools, and Public Law database. Counterclaim RFPs Response, at 19-21 (emphasis added). In the Nov. 7 Letter, ROSS explained that this offer was inadequate because it would exclude strategies and plans" which are "relevant to market for the products at issue" and that it would also exclude documents and communications relevant to" the development of the plans, including surveys and market studies." Nov. 7 Letter, at 4. Plaintiffs' Nov. 22 Letter argued that the documents excluded from its offer are not "plausibly relevant."

At the M&C, I explained that the gap between the documents Plaintiffs offered and the documents we seek includes relevant documents that cannot be excluded. For example, during our M&C we discussed that we do not understand what "documents sufficient to show business plans" means – are these final plans only? If a team is working through developing a plan and has various iterations of the plan, is one of these documents "sufficient to show" the plan, and if so which one? If a plan is formulated by (and circulated among) business analysts and approved (via email) by senior executives, which document would be produced? Again, we are concerned not only that relevant documents will not be produced but also that the items that are produced could be cherry-picked under your "sufficient to show" offer. *See* Section II, *supra*. Despite this explanation, you stated that Plaintiffs position is unchanged.

During our M&C we also discussed that communications related to business plans are relevant to our claims and must be produced. For example, consider an email in which a senior executive received a business plan and wrote: "The problem with this plan is that it would open up the legal search market to rivals." This email would be responsive to our request but not produced under your offer. *See* Section II, *supra*.

Accordingly, ROSS restates its request for all documents responsive to Request Nos. 199-202. Unless Plaintiffs agree with this position, a final meet and confer is necessary.

### d.    Request Nos. 203-204

Request Nos. 203 and 204 seek documents related to Plaintiffs' decision as to how to and whether to develop, offer, or discontinue legal search tools, public law databases, or legal search platforms, including internal documents and communications and surveys, market studies, or research reports. Plaintiffs only agreed to produce documents sufficient to show "*their decision* to develop, offer, or discontinue the Westlaw Platform, its Legal Search Tools, and its Public Law Database" and "*business plans* about how and whether to develop or offer Public Law Databases or Legal Search Tools not ultimately offered to the public." Counterclaim RFPs Response, at 22-23 (emphases added). ROSS's Nov. 7 Letter explained that the materials sought are relevant to market definition for the products at issue. Nov. 7 Letter at 4. Plaintiffs' Nov. 22 Letter asserted that the documents sought are not "plausibly relevant." Nov. 22 Letter, at 3.

At the M&C, I explained that these offers of "business plans" and "decision[s]" are vague, offer the opportunity to cherry pick and improperly exclude relevant documents such as



communications, surveys, market studies, and research documents.  *See* Section II, *supra*. Plaintiffs stated that surveys, market studies, and research reports will only be produced if they represent "changes" in Plaintiffs' decisions related to their products, but could not explain how you propose to define "changes" and whether the changes would need to be "material" in your view to merit production.  You explained that otherwise these documents would not be produced because "we believe that" the offer "is all that ROSS needs for its claim."

Respectfully, it is not your role to determine what ROSS "needs," and that is not the standard for production.  The documents sought must be produced because they are relevant to the claims in this case.  For example, both (1) a research report including factual information about competitors in the search tools market, and (2) an email from a manager saying that "these numbers show that we need to do more to keep competitors out of the market" would be relevant to this case but not produced under Plaintiffs' current offer.  *See* Section II, *supra*.

Accordingly, ROSS restates its requests for documents responsive to Request Nos. 203-204.  Unless Plaintiffs agree with this position, a final meet and confer is necessary.

**e.  Request No. 209**

This request seeks all documents and communications related to competitive intelligence or research that Plaintiffs have performed, commissioned, obtained, or otherwise gathered.  In response, Plaintiffs offered to produce "documents *sufficient to show their analysis* of ROSS's or a third-party Competitors' Legal Search Platforms, Legal Search Tools, or Public Law Databases. Counterclaim RFPs Response, at 27 (emphasis added).  ROSS's Nov. 7 Letter explained that the documents sought "are relevant to [the] relevant market for the products at issue," which includes the companies that attempt to compete with Plaintiffs and Plaintiffs information about them. Nov. 7 Letter at 4. Plaintiffs' Nov. 22 Letter asserted that the documents sought are not "plausibly relevant."  Nov. 22 Letter, at 3.

Thank you for confirming at the M&C that you intend to produce documents sufficient to show Plaintiffs' competitive intelligence of ROSS or a third-party competitors' relevant technology, and that you do not intend to distinguish in your response between "analysis of" and "competitive intelligence."

However, this offer suffers from the same fundamental inadequacies discussed in Section II.  Once again, Plaintiffs refuse to produce documents, including communications, related to the topic sought, here competitive intelligence.  This offer is inadequate because it excludes relevant documents and communications and allows cherry-picking.  *See* Section II, *supra*.  For example, if a third party completed an objective analysis of ROSS, and in an email discussing that analysis, a manager at Thomson Reuters stated that "this company is too good; we need to get them out of the market," that would be relevant to determining whether Plaintiffs engaged in anticompetitive acts, and would be responsive to this RFP but would be excluded by your offer.  Or, if a third party completed an objective analysis of a third-party competitor's public law database, and in an email discussing that analysis, a manager at Thomson Reuters stated that "too many customers like their technology, and if we allow them to connect that technology to our case law database our model would be threatened," that would be relevant to determining whether there are separate products, and would be responsive to this RFP but would be excluded by your offer. *See id.* at 86 (defining



the consumer demand test); Dkt. 170, at 7-8 (the Court noting that Plaintiffs argue that ROSS must show separate products). Communications about competitors are relevant to market definition. *See, e.g.*, *Todd v. Exxon Corp.*, 275 F.3d 191, 205-06 (2d Cir. 2001) (defendants' internal discussions about industry salary information are relevant to determining market definition) (internal citations omitted).

Accordingly, ROSS restates its requests for documents responsive to Request No. 209. Unless Plaintiffs agree with this position, a final meet and confer is necessary.

**f.    Request Nos. 214-215, 224**

Requests No. 214-215 seek all documents and communications related to Plaintiffs' decision to not license access to the Westlaw Platform to a competitor or potential competitor, and all documents and communications related to Plaintiffs decision to not license access to the Westlaw Platform, including to ROSS. Request No. 224 seeks all documents and communications related to any decision whether or not to license, sell, or distribute judicial opinions independent of the Westlaw Platform. In response, Plaintiffs agreed only to produce "*documents sufficient to show Plaintiffs' decision*" "not to license the Westlaw Platform to a Competitor or potential Competitor," and "whether or not to license, sell, or distribute judicial opinions online independent of the Westlaw Platform." Counterclaim RFP Responses, at 30, 36 (emphasis added). In our Nov. 7 Letter, ROSS explained that these responses are inadequate. *See* Nov. 7 Letter, at 9-10. Plaintiffs' Nov. 22 Letter did not address these requests.

I explained at the M&C that these offers are inadequate and allow improper opportunities to cherry-pick. *See* Section II, *supra*. Documents "sufficient to show decisions" is too vague of an offer to evaluate. Do Plaintiffs propose to simply produce a document stating their policy to not license access to the Westlaw platform or not to license judicial opinions independent of the Westlaw platform?

I reiterate that these offers would leave almost the entire landscape of responsive and relevant material unproduced. For example, the documents offered by Plaintiffs would exclude internal communications in which executives discussed that allowing licenses to competitors could bring in extra revenue but would harm the business ultimately as more consumers became of aware of the fact that Westlaw's search and database offerings could be used separately. These requests go to the heart of the separate products inquiry, as they seek documents that may show whether industry participants, including consumers, have sought to obtain judicial opinions separate from the platform, and Plaintiffs' reasoning for insisting on its tie. Plaintiffs argue that ROSS must show separate products as an element of a per se tying claim. *See* Dkt. 170, at 7-8.

Accordingly, ROSS restates its requests for documents responsive to Request No. 214-215, 224. Unless Plaintiffs agree with this position, a final meet and confer is necessary.

**g.    Request Nos. 188-189, 191, 195, 208**

Request Nos. 188 and 189 seek all documents and communications related to pricing the Westlaw Platform for persons to license." Request No. 191 seeks all documents and communications related to Westlaw Platform discounts broken down by customer segment. In

8

Crowell

response to all three, Plaintiffs agreed to produce only "*documents sufficient to show the price they charge* for the Westlaw Platform by customer segment as they are kept in the ordinary course of business." Counterclaim RFP Responses, at 12-14 (emphasis added). In the Nov. 7 Letter, ROSS explained that these requests relate to market definition," – including demand elasticity – "market power, and Plaintiffs' conduct." Nov. 7 Letter, at 6. Plaintiffs' Nov. 22 Letter did not adjust the offered documents. Nov. 22 Letter, at 4.

Request No. 195 seeks all communications with customers and potential customers related to Plaintiffs' agreements, including pricing, and Request No. 208 seeks all documents analyzing responses by Plaintiffs' customers, including by customer segment, to actual or potential changes in pricing to any element of the Westlaw Platform. Plaintiffs refused to produce any documents in response to these requests. *See* Counterclaim RFP Responses, at 16, 26. ROSS's Nov. 7 Letter explained that these requests are relevant to, inter alia, market definition, market power, and Plaintiffs' conduct. Nov. 7 Letter at 7, 9. In response, Plaintiffs' Nov. 22 Letter offered to produce the same documents it offered in its inadequate response to Requests 188-89 and 191. Nov. 22 Letter, at 4.

At the M&C I explained that Plaintiffs' offer of documents sufficient to show the price charged is inadequate. *See* Section II, *supra*. Documents *related to* pricing, including to changes in pricing and decision-making regarding pricing, are relevant to market definition and market power, both of which are elements of ROSS's per se tying claim. *See Deborah Heart & Lung Center v. Virtua Health, Inc.*, 833 F.3d 399, 403 (3d Cir. 2016) ("market power" is "the ability to raise prices above those that would prevail in a competitive market") (citation omitted); *United States v. Eastman Kodak Co.*, 63 F.3d 95, 108 (2d Cir. 1995) (accepting experts' factual findings that film purchasers are "price sensitive . . . on the basis of changes in price" to conclude that the district court did not abuse its discretion in defining the relevant market); *In re Online DVD Rental Antitrust Litig.*, 2011 WL 1629663, at *6 (Apr. 29, 2011) (describing detailed information regarding Blockbuster "making pricing decisions" to conclude that the plaintiffs had failed to allege anticompetitive conduct); Areeda ¶ 539 (relevant market can be defined using the "'hypothetical price increase' methodology . . . : pretend that all output of product A is controlled by a single firm (or cartel) and ask whether this hypothetical monopolist could maximize profits by increasing prices significantly without losing too much patronage to the B firms"). Also, whether Plaintiffs provide discounts to customers, and the terms of those discounts, is relevant to the relative value of the database and search tools to consumers, which is relevant to customer demand. *See* Dkt. 170, at 7-8 (the Court noting that Plaintiffs argue that ROSS must show separate products).

Accordingly, ROSS restates that it is entitled to all documents in response to Request Nos. 188-189, 191, 195, and 208. Unless Plaintiffs agree with this position, a final meet and confer is necessary.

### h.    Request Nos. 196-197

Request Nos. 196 and 197 seek documents related to demand or preferences for legal search tools, public law databases, or legal search platforms, including surveys, market studies, or research reports. For both, Plaintiffs agreed to produce documents "*sufficient to show customer demand* for Legal Search Tools, Public Law Databases, or Legal Search Platforms." Counterclaim



RFP Responses, at 17-18 (emphasis added).  ROSS's Nov. 7 Letter explains that these requests are "relevant to market definition and market power."  Nov. 7 Letter, at 7.  In the Nov. 22 Letter, Plaintiffs clarified that they are not withholding documents based on the distinction between customer demand and customer preferences.  Nov. 22 Letter, at 4.

Thank you for confirming at the M&C that Plaintiffs will produce documents with information broken down by customer segment to the extent such documents exist.

However, this offer suffers from the same fundamental inadequacies described above.  Documents "sufficient to show customer demand" is impossibly vague – we struggle to think of examples of how one document related to customer demand would be sufficient to show another unless they are duplicates.  Once again, even with duplicates, a document sent by a business analyst means something different than the same document sent by an executive.  Choosing among these documents will provide Plaintiffs with an improper opportunity to cherry-pick their production.  Moreover, ROSS cannot discern whether this offer includes communications, surveys, market studies, and research reports, all of which are relevant to market definition, market power, and separate products.  *See* Section II, *supra*.

Accordingly, ROSS restates its requests for documents responsive to Request No. 196-197.  Unless Plaintiffs agree with this position, a final meet and confer is necessary.

### i.    Request No. 206

Request No. 206 seeks "all documents related to" Plaintiffs' "share in any market in which any element of the Westlaw Platform competes, including legal search tools, public law databases, and legal search platforms, including by customer segment."  In response, Plaintiffs offered to produce only documents "*sufficient to show the Westlaw Platform's share* of legal research services, Public Law Databases, and Legal Search Tools."  Counterclaim RFPs Response, at 24 (emphasis added).  In its Nov. 7 Letter, ROSS explained that this limitation "is improper" because "Plaintiffs' estimates of its market shares are probative to market definition and market power."  Nov. 7 Letter, at 8.  Plaintiffs' Nov. 22 Letter did not respond.

Thank you for clarifying during our M&C that Plaintiffs will produce this information by customer segment if that is how it is kept in the ordinary course.  During our M&C I also stated that we want to make sure that all measures of share are captured, including in each market in which part of the Westlaw platform (e.g. the database) competes, and over time.  Thank you for clarifying that you do not intend to exclude any measures.  As noted above, an approach which allows an opportunity for cherry-picking is not proper.  *See* Section II, *supra*.

### j.    Request Nos. 219-220

Request Nos. 219 and 220 seek all documents and communications related to acquiring, licensing, or obtaining: public law databases or the contents therein (RFP No. 219) and legal search tools or legal search platforms (RFP No. 220).  In response, Plaintiffs offered to produce only documents sufficient to show "*their process* for acquiring judicial opinions, statutes, and regulations," and "*Plaintiffs' acquisition or licensing* of Legal Search Tools or Legal Search Platforms from third parties."  Counterclaim RFP Responses, at 33-34 (emphasis added).  ROSS's



Nov. 7 Letter explained that these offers exclude relevant documents. Nov. 7 Letter, at 10. Plaintiffs' Nov. 22 Letter reiterated their initial offers.

At the M&C I explained that these offers suffer from the same fundamental inadequacies of many of Plaintiffs' offers. It is impossible for ROSS to discern the bounds of what Plaintiffs are offering in response to these requests. For example, for Request No. 219, I asked what documents are sufficient to show a process, and you explained that what you are willing to produce an email or memo that simply describes a process for obtaining judicial opinions, i.e. someone is going to visit PACER to look for new opinions. This is plainly inadequate. We still do not understand what Plaintiffs intend to be documents sufficient to show Plaintiffs' acquisition or licensing of public law databases (RFP No. 219) or Plaintiffs' acquisition or licensing of Legal Search Tools or Legal Search Platforms (RFP No. 220), and note that these offers allow an improper opportunity to cherry-pick. *See* Section II, *supra*.

Moreover, as I explained during the M&C, these offers exclude relevant documents that are responsive to both requests. For Request No. 219, I discussed the example of an email saying we have to update the process for case acquisition because a competitor is obtaining the same access. Documents and communications related to acquiring, licensing, or obtaining public law databases or the contents therein are relevant to whether Plaintiffs are aware that consumers consider these to be separate products, *see Exxon Corp.*, 275 F.3d at 205, and whether Plaintiffs have erected any barriers to entry for would-be competitors, *see In re eBay Seller Antitrust Litig.*, 545 F. Supp. 2d at 1032, 1034, both of which Plaintiffs argue are part of a per se tying claim. *See* Dkt. 170, at 7-8. For Request No. 220, consider an email which states that Plaintiffs want to acquire new search technology to "beef up" their current search tools would also reflect their awareness that consumers consider these products separate.

Accordingly, ROSS restates its requests for documents responsive to Request No. 219-220. Unless Plaintiffs agree with this position, a final meet and confer is necessary.

**k.     Request No. 222**

Request No. 222 seeks all agreements and terms of service with any judicial, executive, or legislative governmental entity in the United States, including federal courts, state, municipal, county, and territorial courts, related to legal search tools, public law databases, or legal search platforms. Plaintiffs respond that they will only produce documents "*sufficient to show* Agreements with governmental entities *related to the publication of judicial opinions*." Counterclaim RFP Responses, at 35 (emphasis added). ROSS's Nov. 7 Letter explains that this response excludes the terms of service with governmental entities. *See* Nov. 7 Letter, at 10. Plaintiffs' Nov. 22 Letter states that Plaintiffs will produce "terms of service" in response to this request if any exist. Nov. 22 Letter, at 5.

Please confirm that Plaintiffs' response will include every agreement with all federal and state governmental agencies, whether part of the judicial, executive, or legislative branch, related to judicial opinions. Plaintiffs' offer is ambiguous as to whether the agreements with all of these governmental entities would be included. Please also clarify if limiting your response to documents related to "the publication of judicial opinions" excludes agreements related to



Westlaw's access to judicial opinions that are placed onto its website. Unless Plaintiffs agree with this position, a final meet and confer is necessary.

**l.    Request Nos. 210**

Request No. 210 seeks all agreements with competitors. Plaintiffs offered to produce only "Agreements with Competitors *to license the Westlaw Platform*, if any." Counterclaim RFP Responses, at 27-28. ROSS's Nov. 7 Letter explained that Request No. 210 "include[s] agreements other than licenses, for example, covenants to not sue, partnership agreements, limited time use agreements, and the like," and that these agreements are needed to "determine, inter alia, the relevant market power of Plaintiffs products as well as Plaintiffs' conduct." Nov. 7 Letter, at 9. Plaintiffs' Nov. 22 Letter asserted that these agreements are "not relevant to market power of Plaintiffs in any alleged market at issue in this case." Nov. 22 Letter, at 4.

At the M&C, Plaintiffs were unable to explain what types of agreements its offer excludes. Plaintiffs explained that Thomson Reuters is a "huge company that does more than Westlaw" and many of its agreements (such as related to a news product) would not be relevant to this case. I explained that ROSS is only seeking agreements with COMPETITORS, which is defined as "past and present providers of LEGAL SEARCH PLATFORMS, LEGAL SEARCH TOOLS, or PUBLIC LAW DATABASES, including LEXISNEXIS, GOOGLE, FASTCASE, CASEMAKER, CASETEXT, WOLTERS KLUWER, JURISEARCH, ROSS, and any other entity or person that PLAINTIFFS have or do consider competitors in LEGAL SEARCH PLATFORMS, LEGAL SEARCH TOOLS, or PUBLIC LAW DATABASES." Counterclaim RFPs, at 4. Therefore, agreements with a news provider would not be responsive to this request. Plaintiffs said that there may still be certain agreements that would be responsive but not relevant, such as an agreement with Google related to advertising, and that Plaintiffs have agreed to produce agreements related to legal search tools, databases, and other terms. I noted that this is different from the written offer of only "Agreements with Competitors to license the Westlaw Platform."

Please confirm whether Plaintiffs agree to produce all agreements with COMPETITORS, as defined in ROSS's RFP related to legal search platforms, legal search tools, and public law databases, and the material which makes up legal search platforms, legal search tools, and public law databases, such as technology to allow the platform to function and judicial opinions that are part of the databases.

Unless Plaintiffs agree with this position, a final meet and confer is necessary.

**m.    Request No. 223, 225-226**

Request No. 223 seeks all documents and communications related to Plaintiffs' decision to make judicial decisions available online, including competitive intelligence and research. Request Nos. 225 and 226 seek all documents and communications related to Plaintiffs decision to "continue to license, sell or distribute judicial opinions in paper-format, including competitive intelligence research" (RFP No. 225); and "about what judicial opinions to publish or not publish in paper-format" (RFP No. 226). Plaintiffs refused to produce any documents in response to any of these requests. *See* Counterclaim RFP Responses, at 36-38. ROSS explained in its Nov. 7 Letter that Plaintiffs' responses were inadequate because these requests are directly relevant to the



core of ROSS's antitrust claims of exclusionary conduct." Nov. 7 Letter, at 5.  Plaintiffs' Nov. 22 Letter asserted in response that "[t]he simple fact that ROSS's counterclaims document Thomson Reuters' unsurprising transition from offering Westlaw in print form to online does not make it relevant to the underlying antitrust issues, nor justify broad discovery."  Nov. 22 Letter, at 3.

At the M&C, you stated that these requests are not relevant to proving exclusionary conduct because "books are still available."  I explained that documents related to publishing in paper format and making judicial opinions available online may disclose a gap between what is available online versus in print, as well as the reasons for that gap.  This gap could be relevant to Plaintiffs' market power in the database market as well as the coerciveness of the tie, both of which are relevant to ROSS's per se tying claim.   *See, e.g.*, *Amazon.com, Inc.*, 650 F. Supp. 2d at 103; *see also, e.g.*, *Eastman Kodak Co.*, 504 U.S. at 464 ("Market power is the power to force a purchaser to do something he would not do in a competitive market" and has been defined as the ability to of a single seller to raise price and restrict output.") (citations omitted).  Plaintiffs' reasons for pushing consumers away from paper-format purchases to online licenses are also relevant to ROSS' UCL claim.  *See Arizona Pub. Serv. Co.*, 2012 WL 3069948, at \*5.

Moreover, Plaintiffs' documents and communications related to placing its public law database online would also reveal whether (and if so, how) Plaintiffs intermingle their public law with copyrightable content.  This would reflect evidence of Plaintiffs executing a tying arrangement that has minimal pro-competitive benefits.  *See Microsoft*, 253 F.3d at 65-66.  It would also reflect evidence of Plaintiffs' misusing the copyright granted by the U.S. Government, because it would show that Plaintiffs preclude access to public law through its copyright.  *See Video Pipeline, Inc. v. Buena Vista Home Ent., Inc.*, 342 F.3d 191, 203 (3d Cir. 2003) (recognizing the claim for copyright misuse in the Third Circuit).

Accordingly, ROSS restates its requests for documents responsive to Request No. 223, 225-226.  Unless Plaintiffs agree with this position, a final meet and confer is necessary.

**n.     Request No. 221**

This request seeks all Library Maintenance Agreements ("LMA") to which Plaintiffs are a party.  Plaintiffs refuse to produce any documents in response to this request.  Counterclaim RFP Responses, at 34.  ROSS's Nov. 7 Letter explains that these documents are relevant to "market power and Plaintiffs' conduct."  Nov. 7 Letter, at 11.  Plaintiffs' Nov. 22 Letter asserts that LMAs relate to "print publications" and are therefore "immaterial to any of the antitrust issues in this case."  Nov. 22, Letter, at 5-6.

However, at the M&C, you could not confirm whether LMAs contain provisions that address online material.  You "commit[ted]" to checking whether LMAs "are about print only" but we have not heard anything further.  Moreover, an LMA that ROSS found in an online Google search does not cover print publications – it covers "West CD-ROM products."[2]  To the extent any LMAs relate to accessing Plaintiffs' digital database or search tools, they are responsive and relevant to this request within your own definition.

---

[2] *See* Exhibit A, "Library Maintenance Agreement," at http://www.epcounty.com/meetings/commcourt/2011-08-01/18.pdf.



Moreover, even if LMAs only cover print publications, documents responsive to this request are relevant to this case. The LMAs cover terms such as the books available in libraries, the refresh frequency, and the disposal of those print documents. These issues are relevant because, as explained in the previous subsection in regards to Request Nos. 225 and 226, documents related to the materials made available to the public in paper format may disclose a gap between what is available online versus in print, as well as the reasons for that gap, which is relevant to ROSS's per se tying claim and ROSS's UCL claim.

Accordingly, ROSS restates its requests for documents responsive to Request No. 221. Unless Plaintiffs agree with this position, a final meet and confer is necessary.

### o. Request No. 227

Request No. 227 seeks "all documents and communications related to" Plaintiffs' "Opinion Submission Guidelines" that are available on Plaintiffs' website. Plaintiffs refused to produce any documents in response to this request. *See* Counterclaim RFP Responses, at 38. At the M&C I explained that this request, like Request Nos. 223 and 225-226, seeks documents and communications relevant to Plaintiffs' market power in the database market and the coercive effects of the tying arrangement. For example, responsive communications may include discussions of Westlaw's exclusive access to the submitted cases as well as the temporal gap between submission and access by users. This request also seeks information about how Plaintiffs build their public law database, which is relevant to the power that they possess in this market and to any characteristics or features that are bespoke to Plaintiffs' database that others may not possess. *See Town Sound & Custom Tops, Inc.*, 959 F.2d at 479 ("sufficient tying market power" can be proven based on evidence that "the defendant offers a unique product or possesses a market advantage not shared by its competitors"). Indeed, Plaintiffs' own marketing material states that Westlaw contains "[t]he most comprehensive collection of legal information." *See* Westlaw – Legal Research Platforms, available at https://legal.thomsonreuters.com/en/westlaw.

ROSS is entitled to investigate whether unique access to judicial opinions is part of what makes Plaintiffs database valuable.

Accordingly, ROSS restates its requests for documents responsive to Request No. 227. Unless Plaintiffs agree with this position, a final meet and confer is necessary.

### p. Request No. 231

Request No. 231 seeks documents related to "each instance in which any entity requests a change to" Plaintiffs terms of service for access to the Westlaw Platform, including all instances in which any entity did not agree to the terms of service and were not granted access to the Westlaw Platform. Plaintiffs refuse to produce responsive documents, other than documents sufficient to show Westlaw's Terms of Service. *See* Counterclaim RFP Responses, at 40. ROSS's Nov. 7 Letter explained that this request is "relevant to market power and exclusionary practices." Nov. 7 Letter, at 5. Plaintiffs' Nov. 22 Letter rejected this argument and asserted that nothing is required beyond its initial offer. Nov. 22 Letter, at 3.

At the M&C you stated that this request is overbroad because certain terms of service are not relevant to this litigation. You then asked ROSS to propose a specific subset of terms for



which it is seeking documents related to this request, and that Plaintiffs would "get the documents and see what we have."

I provide the following list from the May 1, 2014 Westlaw Research Subscriber Agreement that were produced as part of this litigation. *See* TR-0002808.[3]

| **Section 1 (partial):** West grants Subscriber a non-exclusive, nontransferable, worldwide, limited license to access and use, in accordance with the provisions expressly set forth herein, the Data (as defined below), features, services, remotely-accessed gateways, and other components of the products named and described in the Agreement (as defined below) (collectively, the "Product") which may change from time to time. |
|---|
| **Section 1.a (partial):** "Data" means all information and representations of information, including, but not limited to, graphical representations, and other content made available to Subscriber through the Product. |
| **Section 1.b-d (full):** [Not reproduced here due to length, see TR-0002808] |
| **Section 2.a (partial):** Subscriber may not copy, download, scrape, store, publish, post, transmit, retransmit, transfer, distribute, disseminate, broadcast, circulate, sell, resell, or otherwise use the Data, or any portion of the Data, in any form or by any means except as expressly permitted by paragraph 1 (License Grant) above, or as otherwise expressly permitted in writing by West. |

Please confirm that Plaintiffs will produce all documents responsive to Request No. 231, limited as above.  Unless Plaintiffs agree with this position, a final meet and confer is necessary.

### q.   Request No. 213

Request No. 213 seeks documents sufficient to identify the competitors that have used the Westlaw Platform without a license, as well as which products each of these competitors has used. Plaintiffs refused to produce documents in response to this request. *See* Counterclaim RFP Responses, at 29.  ROSS's Nov. 7 Letter explains that this request is relevant to Plaintiffs' market power [and] conduct towards rivals."  Nov. 7 Letter, at 11.  Plaintiffs' Nov. 22 Letter responds that "whether other competitors have similarly committed copyright infringement or used Westlaw without a license has no bearing on any claim or defense in this case."  Nov. 22 Letter, at 4.

At the M&C we confirmed that ROSS is not seeking documents outside of Plaintiffs' control.

At the M&C you stated that Plaintiffs would consider the request if it were amended to seek documents sufficient to identify competitors that have accessed Plaintiffs' public law database or its legal search tools, as well as which products each of these competitors has used. ROSS is amenable to this modification as long as it does not exclude documents sufficient to identify competitors that have accessed the database or search tools when they are not offered together on the platform, to the extent any such documents exist.

Please let us know if Plaintiffs agree to this modification.  If not, then a final meet and confer is necessary.

---

[3] ROSS reserves the right to identify additional terms of services as discovery continues.

15



**r.      Request Nos. 216-17**

Request Nos. 216 and 217 seek all communications with the FTC and DOJ about the Westlaw Platform, including communications about investigations, complaints, and requests for information, and all documents related to communications with the FTC and DOJ about the WESTLAW PLATFORM.  In response, Plaintiffs offered to produce only "FTC or DOJ civil investigation demands or complaints related to the Westlaw Platform, Plaintiffs' written response, and the FTC's or DOJ's final written conclusions, if any."  Counterclaim RFP Responses, 31-32.

At the M&C you confirmed that Plaintiffs do not intend to exclude from production communications between Plaintiffs and the FTC or DOJ, which we understand to be in the form of email, memoranda or legal briefs, to the extent they exist.  You also confirmed that, to the extent a third-party produced any materials to the FTC or DOJ related to these investigations, and Plaintiffs came into possession of these materials, Plaintiffs would also produce these materials in response to Request Nos. 216 and 217.  Thank you for confirming that as well.

**s.      Request No. 218**

Request No. 218 seeks all documents related to litigation involving antitrust or unfair competition claims or counterclaims brought against Plaintiffs.  Plaintiffs offered to produce "any complaints filed against Plaintiffs asserting any antitrust or unfair competition claim related to the Westlaw Platform."  Counterclaim RFP Responses, at 32.  At the M&C I explained that this would be sufficient for now, but ROSS may need more material depending on the availability (including cost) of other material from these litigations.  You confirmed that Plaintiffs would agree to produce more materials from these litigations if ROSS shows that they are not available, including if they are not available due to cost.

**t.      Request Nos. 183-185**

Request Nos. 183-185 request documents sufficient to show profits, losses, investments, and costs associated with the Westlaw Platform, "separately broken out" by "customer segment," including "documents sufficient to show financial profits or losses from the sale, distribution, or license of the Westlaw Platform, separately broken out for profits or losses attributed to public law databases and legal search tools, and by customer segment," and, for Request No. 185, by each ARTIFICIAL INTELLIGENCE tool.  Thank you for confirming at the M&C that these will be produced by CUSTOMER SEGMENT if they are kept that way in the ordinary course of business.

**u.      Request No. 194**

Request No. 194 seeks all documents and communications related to Plaintiffs' renewal and churn rate for WESTLAW PLATFORM subscriptions, including broken down by customer segment.  Plaintiffs stated that they will produce "documents sufficient to show the rate at which existing customers renew their Westlaw Platform subscriptions."  Counterclaim RFP Responses, at 16.  Thank you for confirming at the M&C that the use of "churn rate" in the offer does not exclude any documents compared to "renewal and churn rate" in the request.  Thank you also for confirming that this offer includes the production of documents that reflect renewal and churn rate by customer segment, to the extent that is how the documents are kept in the ordinary course.



### v.     Request No. 207

Request No. 207 seeks "documents and communications sufficient to show the markets in which any element of the Westlaw Platform competes." In response, Plaintiffs agreed to produce only "documents sufficient to show the Legal Research Platforms against which the Westlaw Platform competes to provide legal research services." Counterclaim RFP Responses, at 25. In the Nov. 7 Letter, ROSS explained that this offer is inadequate and excludes documents relevant to market definition and market power. Nov. 7 Letter, at 8. Plaintiffs' Nov. 22, Letter did not respond.

At the M&C you stated that Plaintiffs' response will include documents sufficient to show any elements against which the Westlaw Platform or any elements of the platform competes. For example, you agreed that documents which reflect that Plaintiffs' legal database competes against another company would also be produced in response to this request. Thank you for confirming that.

### w.     Request No. 211

Request No. 211 seeks documents and communications sufficient to identify Plaintiffs' competitors as well as each product offered by those competitors that compete with Plaintiffs' Westlaw Platform or any element or segment of the platform, and identifying Plaintiffs' product that competes with the competitors' product. In response, Plaintiffs agreed to produce "documents sufficient to show Competitors who offer Legal Search Platforms, Legal Search Tools, and Public Law Databases, if any." Counterclaim RFP Responses, at 28. Thank you for confirming at the M&C that Plaintiffs are not excluding from this response documents sufficient to show competitors as well as their products, including small competitors.

* * *

Please let me know if Plaintiffs are available for a final meet and confer on January 3, 4 or 5. ROSS preserves all rights and waives none.

Very truly yours,

/s/ *Shira Liu*

Shira Liu

# Exhibit A

**WEST**®

A Thomson Reuters business

## LIBRARY MAINTENANCE AGREEMENT

Library Maintenance Agreement between **El Paso County Detention Facility** ("Subscriber") and **West, a Thomson Reuters business** ("West")

WHEREAS, West markets its CD-ROM products to the legal profession;

WHEREAS, Subscriber currently subscribes to certain West CD-ROM products;

WHEREAS, Subscriber desires to maintain its subscription to those titles to which it currently subscribes;

WHEREAS, Subscriber desires predictable monthly pricing for its West CD-ROM product library;

WHEREAS, Subscriber further desires to better maintain and manage the costs of its West CD-ROM products and West desires to assist and support Subscriber in managing its costs and subscriptions through this Library Maintenance Agreement ("Agreement");

NOW, THEREFORE, the parties agree as follows:

1. **Term and Termination.** This Agreement, which is subject to approval and execution by West in St. Paul, Minnesota, shall become effective on September 1, 2011 and shall continue in effect until August 30, 2014 (the "Term"). At the end of the Term West and Subscriber shall use their best efforts to enter into a superseding Library Maintenance Agreement through good faith negotiations. In the event the parties are not able to enter into a superseding Library Maintenance Agreement, Subscriber shall thereafter be billed at then-current rates for its CD-ROM Libraries subscriptions.

2. **Monthly Fixed Charges.**

   2.1. For each month during the Term, Subscriber shall pay monthly fixed charges ("Monthly Fixed Charges"), as set forth below, for the charges associated with the West CD-ROM Libraries to which Subscriber currently subscribes ("Existing West CD-ROM Libraries") as of the effective date of this Agreement. The Existing West CD-ROM Libraries are set forth in Exhibit 1.

      a)   From September 1, 2011 through August 30, 2012 ("Period 1"), the Period 1 Monthly Fixed Charges shall be $12,870.
      b)   From September 1, 2012 through August 30, 2013 ("Period 2"), the Period 2 Monthly Fixed Charges shall be $13,770.
      c)   From September 1, 2013 through August 30, 2014 ("Period 3"), the Period 3 Monthly Fixed Charges shall be $14,734.

   2.2. Exhibit 1 shall set forth existing West CD-ROM Libraries that shall be included under this Agreement and shall also set forth any applicable new West CD-ROM Libraries to be shipped to Subscriber and included under this Agreement. The Monthly Fixed Charges include all subscription service charges associated with the Existing West CD-ROM Libraries in Exhibit 1 as well as all standard transportation and handling charges. The Monthly Fixed Charges shall not be reduced in the event Subscriber terminates any of its West CD-ROM product subscriptions that are set forth in Exhibit 1 herein. Subscription services may consist of updates and supplements to the service, including but not limited to: pocket parts, pamphlets, replacement or ancillary volumes; loose-leaf pages and other related supplemental materials. Special transportation and handling charges and any applicable sales, use, personal property, value added tax (VAT) or equivalent, ad valorem and other taxes will be the responsibility of the Subscriber and are not included in the Monthly Fixed Charges.

   2.3. Subscriber may, at its option and upon 30 days prior written notice to West prior to the end of Period 1 or Period 2 and upon written agreement of the parties, delete and add West CD-ROM titles from the Existing West CD-ROM Libraries from Exhibit 1 effective on the first day of Period 2 or Period 3. In no event shall the value of the deleted and added West CD-ROM products exceed 5% of the Monthly Fixed Charge for the following Period; provided, however, in no event shall the Monthly Fixed Charges be less than the amounts set forth in paragraphs 2.1 (b) and 2.1 (c) herein except in instances in which West CD-ROM Libraries list on Exhibit 1 have ceased to be published by West as of the last day of Period 1 or Period 2. In addition, the value of the added West CD-ROM Libraries shall not exceed the value of the deleted West CD-ROM Libraries.

   2.4. In addition to paragraph 2.3, Subscriber may, at its option and upon 30 days prior written notice to West prior to the end of Period 1 or Period 2 and upon written agreement of the parties, add additional West CD-ROM Libraries to the Monthly Fixed Charges effective on the first day of Period 2 or Period 3. The Monthly Fixed Charges for the next Period and each remaining Period shall be increased to reflect the addition of the additional West CD-ROM Libraries.

3.  **Non-Availability of Funds.**  If Subscriber's funding entity fails to appropriate or authorize the expenditure of sufficient funds to provide for the continuation of this Agreement or if a lawful order issued in or for any fiscal year during the Term of this Agreement reduces the funds appropriated or authorized in such amounts as to preclude making the payments set out herein, this Agreement shall terminate on the date said funds are no longer available without any termination charges or other liability incurring to the Subscriber. Once terminated, Subscriber shall be thereafter billed at then-current rates for its West CD-ROM Libraries.  The Subscriber shall provide West with notice not less than thirty (30) days prior to the date of cancellation, if such time is available.  Otherwise, prompt notice will suffice.

4.  **General Provisions.**  This Agreement will be governed by and construed under the law of the state of Minnesota, U.S.A. without regard to conflicts of law provisions.  The parties agree that the state and federal courts sitting in Minnesota will have exclusive jurisdiction over any claim arising out of this Agreement and each party consents to the exclusive jurisdiction of such courts.  This Agreement embodies the entire understanding between the parties with respect to the subject matter of this Agreement and supersedes any and all prior understandings and agreements, oral or written, relating to the subject matter.  Any amendment to this Agreement must be in writing and signed by both parties.  Subscriber will pay all invoices in full within 30 days from date of invoice.  If full payment is not made, Subscriber may be charged up to the maximum legal interest on any unpaid balance.  Neither this Agreement nor any part or portion may be assigned or otherwise transferred by Subscriber without West's prior written consent.  Should any provision of this Agreement be held to be void, invalid, unenforceable or illegal by a court, the validity and enforceability of the other provisions will not be affected thereby.  Failure of any party to enforce any provision of this Agreement will not constitute or be construed as a waiver of such provision or of the right to enforce such provision.  The headings and captions contained in this Agreement are inserted for convenience only and do not constitute a part of this Agreement.  West, as used herein, applies to West Publishing Corporation, West Services, Inc., West Applications, Inc. and their affiliates.

5.  **Confidentiality**.  During the Term and thereafter, except as specifically provided herein and/or to the extent reasonably necessary to perform its obligations or exercise its rights hereunder, neither party shall provide nor disclose to any third party, unless properly directed or ordered to do so by public authority or otherwise required to do so by law, any information or matter that (i) constitutes or concerns the terms and conditions of this Agreement, or (ii) regards any dealings or negotiations between the parties relating to this Agreement.  If either party is directed or ordered to provide or disclose any information or matter by public authority or otherwise required to do so by law, such party shall promptly notify the party whose information is being provided or disclosed.  A party responding to such a request shall disclose that which is required by law and shall redact any information not required, specifically that information which is related to pricing and related West CD-ROM Libraries or West's proprietary information.

6.  **Notices.**  All notices must be in writing to West at 610 Opperman Drive, P.O. Box 64833, St. Paul, Minnesota 55164-1803, Attention: Customer Service, and to Subscriber at the address set forth below.

**West, a Thomson Reuters business**

By _____

Title _____

Date _____

_____

Business Analyst Verification

Date and Time Received by West in St. Paul, Minnesota:

_____

**El Paso County Detention Facility**

By (signature) _____

Name (please CD-ROM) _____

Title _____

Date _____

Firm Name _____

Subscriber's Address _____

_____

Contact Name _____

Telephone Number _____

This offer expires July 27, 2011 at 7:00 p.m. CDT

7/15/2011

**EXHIBIT 1**

| SP Customer # | SH Customer # | SH City | Sub Material # | Sub Material Desc | Qty of Subs |
|---|---|---|---|---|---|
| 1000032044 | 1000032044 | EL PASO | 14416421 | CD ROM FEDERAL REPORTER ALL DISC COMPLETE SUB | 11 |
| 1000032044 | 1000032044 | EL PASO | 14416456 | CD ROM FEDERAL SUPP COMPLETE SUB | 11 |
| 1000032044 | 1000032044 | EL PASO | 21129755 | CD ROM SUPREME COURT REPORTER SERVICE SUB | 11 |
| 1000032044 | 1000032044 | EL PASO | 21129771 | CD ROM TX CASES SERVICE SUB | 11 |
| 1000032044 | 1000032044 | EL PASO | 21085103 | CD ROM TX VERNONS STAT AND CODE SUB | 11 |
| 1000032044 | 1000032044 | EL PASO | 21100919 | CD ROM USCA SUB | 11 |
| 1000053716 | 1000053716 | EL PASO | 14416421 | CD ROM FEDERAL REPORTER ALL DISC COMPLETE SUB | 7 |
| 1000053716 | 1000053716 | EL PASO | 14416421 | CD ROM FEDERAL REPORTER ALL DISC COMPLETE SUB | 1 |
| 1000053716 | 1000053716 | EL PASO | 14416456 | CD ROM FEDERAL SUPP COMPLETE SUB | 7 |
| 1000053716 | 1000053716 | EL PASO | 14416456 | CD ROM FEDERAL SUPP COMPLETE SUB | 1 |
| 1000053716 | 1000053716 | EL PASO | 21129755 | CD ROM SUPREME COURT REPORTER SERVICE SUB | 8 |
| 1000053716 | 1000053716 | EL PASO | 21129771 | CD ROM TX CASES SERVICE SUB | 8 |
| 1000053716 | 1000053716 | EL PASO | 21085103 | CD ROM TX VERNONS STAT AND CODE SUB | 8 |
| 1000053716 | 1000053716 | EL PASO | 21100919 | CD ROM USCA SUB | 8 |

**West Library Maintenance Agreement**
**Billing Options**

*The following outlines three billing options available to Library Maintenance Agreement ("LMA") subscribers.  Please select one.*

_____    **Option A: <u>Single Invoice</u>**

- One invoice is sent to the contracting main account representing all libraries/locations covered under the LMA.
- The master invoice shows shipping detail for each location during a given month.

**Features:**
- Allows for centralized management and control of CD-ROM title costs within a large organization.
- Provides accurate valuation of the total CD-ROM library on a monthly basis.
- Best implemented within organizations that do not require office-level budgeting.

_____    **Option B: <u>Location-Level Invoice</u>**

- LMA Values are invoiced to each office location separately based upon a snapshot of CD-ROM title inventory on a monthly basis and matched to the LMA Monthly Fixed Charges at the total subscriber level.
- The location-level invoice automatically adjusts to provide the most accurate valuation of CD-ROM titles by location in a given month.

**Features:**
- Provides most accurate valuation of total library by location.
- Automatically adjusts for changes in library subscriptions and CD-ROM title allocation.
- Location changes in LMA CD-ROM title subscriptions can cause variance to location-level budgets.

_____    **Option C: <u>Fixed Value by Location</u>**

- LMA values are established at the inception of the LMA at the location-level based upon the total library valuation at the beginning of the LMA.
- These amounts are fixed during the term of the LMA.  If changes to the underlying library CD-ROM titles subscriptions occur, Monthly Fixed Charges are NOT adjusted at the location level.

**Features:**
- Fixed LMA amounts allow for simpler budgeting.
- Because values are fixed, any changes within total CD-ROM subscriptions may distort the LMA value for some locations.

*If 'Option C' is chosen, please indicate where the invoice(s) should be sent:*

_____    **One bill to the main location**

_____    **Individual bill to each location**

**Library Administration Contact (please CD-ROM name):** _____

**Title:** _____

**Telephone:** _____

**E-mail Address:** _____

00026402.0

STATE OF TEXAS          )
COUNTY OF EL PASO       )

### ADDENDUM TO WEST, a Thomson Reuters Business,
### LIBRARY M AINTENANCE AGREEMENT

This agreement is between the County of El Paso, a political subdivision of the State of Texas, hereinafter called "Customer", and, **WEST, a Thomson Reuters Business** a corporation authorized to do business in Texas, hereinafter called "WEST".  The following provisions are added by agreement of the parties.  To the extent that any provisions in the main body of the agreement conflict with the provisions of this addendum, this addendum shall control.

Paragraph 4 is deleted and substituted with:

4.       " This Agreement constitutes the entire agreement as to its subject matter, supersedes all prior and contemporaneous oral and written agreements, and shall be construed under the laws of the State of Texas (without regard to conflict-of-law principles).   YOU CONSENT TO THE JURISDICTION AND VENUE OF THE FEDERAL AND STATE COURTS IN EL PASO COUNTY, TEXAS.  If a court finds any term of this Agreement to be unenforceable, the remaining terms of this Agreement shall remain in effect.  WEST may retain a reproduction (e.g., electronic images, photocopy, facsimile) of this Agreement which shall be considered an original and shall be admissible in any action to enforce this Agreement.  WEST may accept this Agreement either by its authorized signature or by commencing performance (e.g., Product delivery).

All changes to this Agreement must be made in a writing signed by both parties; accordingly, any terms on your ordering documents shall be of no force or effect. Neither this Agreement nor any part or portion may be assigned, sublicensed or otherwise transferred by El Paso County without WEST' prior consent. Should any provision of this Agreement, including Addendum, be held to be void, invalid, unenforceable or illegal by a court, the validity and enforceability of the other provisions will not be affected. Failure of any provision of this Agreement will not constitute or be construed as a waiver of such provision or the right to enforce that provision. The following four sentences control over every other part of this Agreement and over all other documents now or later pertaining to this Agreement. We both intend to comply with applicable laws.  In no event will WEST charge or collect any amounts in excess of those allowed by applicable law.  Any part of this Agreement that would, but for this Section, be read under any circumstances to allow for a charge higher than that allowed under any applicable legal limit, is limited and modified by this Section to limit the amounts chargeable under this Agreement to the maximum amount allowed under the legal limit.   If, in any circumstances, any amount in excess of that allowed by law is charged or received,

any such charge will be deemed limited by the amount legally allowed and any amount received by WEST in excess of that legally allowed will be applied by us to the payment of amounts legally owed under this Agreement, or refunded to you."

Paragraph 5 is amended to add:

WEST acknowledges that Subscriber is a political subdivision of the State of Texas. As such, Subscriber is subject to the Texas Public Information Act. Thus, Subscriber agrees to comply with this paragraph only to the extent authorized under the Texas Public Information Act.

Paragraph 6 is amended to add:

Subscriber Notice:

El Paso County Judge Veronica Escobar
500 E. San Antonio, Rm 301
El Paso, Texas  79901

[Rest of this page is blank]

IN WITNESS WHEREOF, the parties execute this agreement, ADDENDUM TO WEST, a Reuters Business LIBRARY MAINTENANCE AGREEMENT, on the _____ day of _____, 2011.

**ATTEST:**                                   **THE COUNTY OF EL PASO**

_____    By_____
County Clerk                                  County Judge Veronica Escobar


Approved as to form:                          **WEST, a Thomson Reuters Business**

_____    By_____
Assistant County Attorney

(NAME)_____

(TITLE)_____
*(Signor must be legally authorized to bind corporation)*

# EXHIBIT I

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

Cameron Ginder
To Call Writer Directly:
+1 312 862 3757
cameron.ginder@kirkland.com

300 North LaSalle
Chicago, IL 60654
United States

+1 312 862 2000

www.kirkland.com

Facsimile:
+1 312 862 2200

January 10, 2023

**By Email**

Shira Liu
Crowell & Moring LLP
sliu@crowell.com

Re:     *Thomson Reuters Enterprise Centre GmbH v. ROSS Intelligence, Inc.*,
        Case No. 20-613-SB

Dear Shira:

I write on behalf of Thomson Reuters Enterprise Centre GmbH and West Publishing Corp. (collectively "Thomson Reuters") in response to ROSS's December 29, 2022 letter, which followed ROSS's November 7, 2022 letter; Thomson Reuters' November 22, 2022 letter; the parties' December 1 and 2 meet and confer; and ROSS's December 13, 2022 letter.

## I.      Temporal Scope of Production

ROSS continues to insist, without plausible justification, that Thomson Reuters produce "all documents and communications" in response to over 50 requests—"without a temporal limitation."  12/29 ROSS Ltr. at 2.  Thomson Reuters has agreed to produce documents from January 1, 2015.  As Thomson Reuters explained in its November 22 letter, ROSS's single tying claim "cannot justify the limitless discovery that ROSS seeks" or "justif[y] the production of documents dating back to the 19th Century, as is, apparently, ROSS's position."  11/22 TR Ltr. at 2.  The parties then met and conferred on December 1 and 2.  During our two-hour meet and confer, ROSS did not raise the temporal scope of Thomson Reuters' production.

Nevertheless, ROSS's December 29 letter starts by objecting to the temporal scope of Thomson Reuters' production.  The letter does not explain why ROSS needs all documents dating back over 100 years for each one of its 52 requests or attempt to limit ROSS's requests in any way.  Instead, ROSS doubles down on its demand that Thomson Reuters produce "documents without a temporal limitation" because "ROSS alleges anticompetitive conduct going back decades," citing just two examples.  12/29 ROSS Ltr. at 2.  Neither, however, justifies such an expansive production.

KIRKLAND & ELLIS LLP

First, you state that Thomson Reuters' "historical practices with regard to its public law database and search products are relevant to the tying claim" because ROSS alleged that Thomson Reuters' "public law database was effectively sold as a standalone product before modern technology allowed [Thomson Reuters] to develop an online legal search tool." *Id.* This focus on the time before the internet existed is misplaced. Thomson Reuters has "never offered a commercial license to a collection of judicial opinions, statutes, and regulations separate from any search functionality." RFA No. 136 Resp. Indeed, ROSS itself alleges that the earliest form of West's case reporters contained the Key Number System. D.I. 225 n.5 ("In 1882, John B. West and his brother established the West Publishing Corporation ... . For almost twenty years, West built his company into the nation's leader in legal publishing, in large part because of the method for classifying cases, called the key number system ... ."). And the Key Number System is, as ROSS has defined it, a "Legal Search Tool." ROSS First Counterclaim RFPs, Definition 6. Notwithstanding our disagreement, Thomson Reuters is willing to produce documents sufficient to show any business plans, products, and licenses related to its public law database separate from any search technology from 1990 to present, to the extent any such documents exist and are reasonably accessible.

Second, you contend that Thomson Reuters' alleged "accumulation of market power over time" is relevant to ROSS's tying claim. Market power in the alleged tying product market is a necessary element of a per se tying claim. But nothing in *Brokerage Concepts*, or any other case you cite, holds that Thomson Reuters' alleged market power "over time" is relevant. Nor could it be relevant here. ROSS, a failed competitor, must prove that the alleged tie caused it anticompetitive harm and resulting antitrust injury. ROSS did not exist until 2015. Whether Thomson Reuters had market power before ROSS existed is thus irrelevant to ROSS's counterclaims: "a discovery request which seeks information prior to the time that the only plaintiff was incorporated is not 'facially relevant.'" *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, 2007 WL 950282 at *3 (D. Kan. Mar. 26, 2007).

Subject to this letter, Thomson Reuters intends to produce documents as described in its written RFP responses, from January 1, 2015. Thomson Reuters remains willing to have the parties' first meet and confer on this issue.

## II.    General RFP Responses

ROSS's December 29 letter next raises two alleged "fundamental inadequacies that are common to" Thomson Reuters' RFP responses. While under a separate heading, many of ROSS's objections to specific RFP responses are based solely on these same alleged inadequacies. *See* RFP Nos. 186; 199-202; 203-204; 209; 214-215, 224; 188-189, 191, 195, 208; 196-197; 219-220. Thomson Reuters responds to these objections here.

First, you state that Thomson Reuters' responses "are typically too vague for ROSS to understand precisely what is being offered" and allow Thomson Reuters "to cherry-pick the documents they prefer to produce." 12/29 ROSS Ltr. at 2-3. Not so. The phrase "sufficient to show" "means that [Thomson Reuters] will produce documents that sufficiently reflect that

2

## KIRKLAND & ELLIS LLP

topic"—just as ROSS explained when defending its use of the exact same phrase in its RFP responses.  12/13 ROSS Ltr. at 1.

Second, you state that Thomson Reuters' "offers wholly exclude communications" and "exclude documents related to how decisions are made, market studies, surveys, and the like."  12/29 ROSS Ltr. at 3.  This is unfounded.  Thomson Reuters stated it would "produce **documents** sufficient to show."  ROSS defined the word "document" to include "communications."  ROSS's First Counterclaim RFPs, Definition 23.  As I explained during our meet and confer, Thomson Reuters will produce communications if necessary to produce documents sufficient to show a particular topic.  Further, Thomson Reuters will produce "market studies, surveys, and the like" if responsive and within Thomson Reuters' RFP responses.

Neither of ROSS's stated concerns demonstrates any "fundamental inadequacy" with Thomson Reuters' RFP responses.  Thomson Reuters has agreed to produce arguably relevant, responsive documents proportionate to the needs of the case.  Nothing more is required.

### III.   Specific RFP Responses

Several of the specific responses that you identified in your letter are addressed below.

- RFP Nos. 187 and 205.  Thomson Reuters disagrees with ROSS's assertion that its practice of providing Westlaw access to law students—a practice ROSS itself adopted and implemented—is a barrier to entry.   However, to avoid further dispute, Thomson Reuters is willing to produce documents sufficient to show its practice and the cost of providing Westlaw access to law students.

- RFP No. 222.  Thomson Reuters will produce agreements with "all federal and state governmental agencies, whether part of the judicial, executive, or legislative branch, related to judicial opinions."  12/29 ROSS Ltr. at 11.  It is unclear what you mean by your request to clarify whether Thomson Reuters' offer "excludes agreements related to Westlaw's access to judicial opinions that are placed onto its website."  Id. at 11-12.  Thomson Reuters will produce agreements with the above identified federal and state governmental agencies to publish judicial opinions.  If you mean something different, please clarify ROSS's question so Thomson Reuters can adequately respond.

- RFP No. 210.  Thank you for clarifying and narrowing the scope of this request.  Thomson Reuters will produce agreements with competitors related to legal search platforms, legal search tools, and public law databases.

- RFP Nos. 223, 225-226, 227.  Thomson Reuters disagrees with ROSS's suggestion that Thomson Reuters decides what judicial opinions to publish in official case reporters.  Thomson Reuters further disagrees with ROSS's suggestion that Thomson Reuters' decision about what judicial opinions to make available online is relevant to this case.  Nevertheless, to avoid further dispute, Thomson Reuters is willing to produce documents sufficient to show its process for deciding what opinions to (1) publish in official print

## KIRKLAND & ELLIS LLP

reporters and (2) include online.  As a reminder, Thomson Reuters has agreed to produce agreements with federal and state agencies related to the publication of judicial opinions. If Thomson Reuters has "exclusive" or "unique access" to cases, 12/29 ROSS Ltr. at 14, which it does not, it would be reflected in those agreements.

- <u>RFP No. 221</u>.  We have confirmed that Library Maintenance Agreements relate to print publications.  With the exception of academic customers and a few government customers, Westlaw is included on a separate contract from print publications.  The single Library Maintenance Agreement that ROSS found online confirms as much. Exhibit 1 to that agreement demonstrates that the CD-ROMs in question related to specific case reporters, not Westlaw.  Nevertheless, to avoid further dispute, Thomson Reuters will produce documents sufficient to show its licensing policy with respect to print publications through Library Maintenance Agreements.

- <u>RFP No. 231</u>.  Thank you for narrowing RFP No. 231.  Thomson Reuters agrees to produce documents sufficient to show any request to change the Westlaw terms and conditions in a way that would allow the requesting party to use Thomson Reuters' public law database separate from search technology.

- <u>RFP No. 213</u>.  Thomson Reuters agrees to produce "documents sufficient to identify competitors that have accessed [Thomson Reuters'] public law database or its legal search tools," as requested in your letter.  12/29 ROSS Ltr. at 15.

*     *     *

Thomson Reuters does not adopt or agree with any of ROSS's characterizations or arguments in its 17-page, single-spaced letter.  Thomson Reuters reserves all rights and waives none.  We can be available for a meet and confer Friday, January 13 or the week of January 16. Please let us know your availability.

Sincerely,

*/s/ Cameron Ginder*
Cameron Ginder

4

# EXHIBIT J



Shira Liu
sliu@crowell.com
(949) 798-1325 direct

Crowell & Moring LLP
3 Park Plaza
20th Floor
Irvine, CA 92614
+1.949.263.8400  main

January 12, 2023

**VIA E-MAIL**

Cameron Ginder
Kirkland & Ellis LLP
300 North LaSalle
Chicago, IL 60654
312-862-3757
cameron.ginder@kirkland.com

Re:     *Thomson Reuters Enterprise Centre GmbH v. ROSS Intelligence, Inc.*, Case No. 20 Civ.
        613 (SB)

Dear Cameron:

We write on behalf of ROSS Intelligence, Inc. ("ROSS") to respond to your January 10, 2023, letter ("Jan. 10 Letter"), which followed our December 29, 2022, letter ("Dec. 29 Letter"), the meet and confer videoconference calls on December 1 and 2, 2022 (M&C), our September 20, 2022, First Set of Counterclaim Requests for Production ("Counterclaim RFPs"), your October 20, 2022, responses to the Counterclaim RFPs ("Counterclaim RFPs Response"), our November 7, 2022, letter ("Nov. 7 Letter"), and your November 22, 2022, response letter ("Nov. 22 Letter").

We write this letter in anticipation for the final conferral that is set for Friday, January 13, 2023, at 9:30 AM PT.

**I.   Plaintiffs Temporal Objection**

The Jan. 10 Letter states that ROSS has no "plausible justification" to seek documents outside of Plaintiffs' January 1, 2015 temporal limitation. Jan. 10 Letter, at 1. Plaintiffs also state that its historical practices with regard to its public law database and search products are not relevant because "Thomson Reuters has 'never offered a commercial license to a collection of judicial opinions, statutes, and regulations separate from any search functionality.'" Jan. 10 Letter, at 2 (quoting Plaintiffs' Response to RFA No. 136). And Plaintiffs state that market power "over time" is not relevant to understanding whether a party possesses market power for purposes of a tying claim.  Jan. 10 Letter, at 2.

None of these arguments is persuasive.  First, it is Plaintiffs' "burden to 'demonstrate in specific terms' why the requested time period is improper."  Dec. 29 Letter, at 1 (citing *Clemens v. New York Cent. Mut. Fire Ins. Co.*, 300 F.R.D. 225, 227 (M.D. Pa. 2014)). Plaintiffs have not done so and instead only object to ROSS's explanation for why documents from prior to January

**Crowell**

1, 2015, are proper. If Plaintiffs contend that temporal limitations on ROSS's discovery requests are necessary, then Plaintiffs must explain in "specific terms" why that is so. Indeed, Plaintiffs continue to raise the red herring that ROSS seeks documents from 100 years ago. *See* Jan. 10 Letter, at 1. ROSS only seeks documents responsive to the request that can be identified after a reasonable search and investigation. If Plaintiffs were to "demonstrate in specific terms," *see Clemens*, 300 F.R.D. at 227, why this means the temporal limit should be at another time, ROSS is available to consider the proposal.

Second, ROSS also has a California Unfair Competition Law counterclaim, which justifies the request for the production of documents from prior to January 1, 2015. For example, as stated in the Dec. 29 Letter—and not acknowledged in Plaintiffs' Jan. 10 Letter—"if the UCL claim is based on copyright misuse, then any business or technological decisions by Plaintiffs to intermingle its copyrights with government edicts—even if these decisions occurred before January 2015—are relevant. *See U.S. v. Microsoft*, 253 F.3d 34, 65-66 (D.C. Cir. 1998)." Dec. 29 Letter, at 3.

Third, Plaintiffs' argument for why historical practices are not relevant actually shows the opposite. To make the argument, Plaintiffs cite to an RFA response where they state that Thomson Reuters "'never offered a commercial license to a collection of judicial opinions, statutes, and regulations separate from any search functionality.'" Jan. 10 Letter, at 2 (quoting Plaintiffs' Response to RFA No. 136). Plaintiffs could use this admission as evidence to show that their historical practices do not reflect the products being separate. *See* Dkt. No. 170 at 7-8 (the Court recognizing that Plaintiffs cited *Eastman Kodak Co. v. Image Tech. Serv., Inc.*, 504 U.S. 451, 462 (1992), for the proposition that if products have been previously sold separately, then that is evidence that separate products exist, and stating that ROSS sufficiently alleges that "Plaintiffs' public law database was effectively sold as a stand-alone product . . . before modern technology allowed Plaintiffs to develop an online legal search tool"). ROSS is entitled to evidence that it can use to challenge this admission.

Fourth, Plaintiffs are incorrect that a company's power, control, and influence in a tying product market over time is not relevant to determining power in the tying product market. *See* Jan. 10 Letter, at 2. In fact, contrary to what is stated in the Jan. 10 Letter, *Brokerage Concepts* expressly states that power in a tying product market can be "demonstrate[ed ] through evidence of the widespread acceptance of [the] tie." *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 517 (3d Cir. 1998). "[W]idespread evidence of [Plaintiffs'] tie" can be proven by showing that participants in the market where Plaintiffs operate over a long period of time have accepted their tying arrangement.  Another Third Circuit case cited in ROSS's Dec. 29 Letter (which Plaintiffs ignore) offers a second reason why information about a company's power, control, and influence in a tying product market over time is relevant to determining tying product market power.  In *Town Sound & Custom Tops, Inc.*, the Third Circuit stated that tying product market power can be shown if "the defendant offers a unique product or possesses a market advantage not shared by its competitors." *Town Sound & Custom Tops, Inc. v. Chrysler Motors Corp.*, 959 F.2d 468, 479 (3d Cir. 1992). Thus, documents reflecting that Plaintiffs public law database has unique characteristics that over a long period of time have not been shared by competitors can support ROSS's tying claim as well.

2



Fifth, there are many arguments that ROSS makes in the Jan. 10 Letter that Plaintiffs completely ignore. Plaintiffs do not address the fact that "[a]t the M&C, you stated that West's transition to the internet occurred in the 1980's and 1990's" and "documents and communications from the time that the transition occurred are relevant to why Plaintiffs chose to tie these products together, the competitive effect of the tie, and to consumer demand for separate products." Dec. 29 Letter, at 2. Plaintiffs do not address the fact that "documents that Plaintiffs have produced in this litigation show that the proposed January 2015 limitation would exclude highly relevant material related to Plaintiffs' decisions to tie their database and legal search tools together on the online legal research platform. *See e.g.*, TR-0037669 at 1 (stating that in 1975 "Westlaw was one of the first online legal research services")." *Id.* And, as noted above, Plaintiffs do not address that documents relevant to proving the UCL claim may come from before 2015. *Id.*

To be sure, ROSS notes that "Thomson Reuters is willing to produce documents sufficient to show any business plans, products, and licenses related to its public law database separate from any search technology from 1990 to present, to the extent any such documents exist and are reasonably accessible." Jan. 10 Letter, at 2. It is unclear whether this offer is contingent on ROSS refusing to seek additional documents from prior to 2015. If it is, then ROSS cannot accept the offer.

Accordingly, ROSS restates its requests for documents without a temporal limitation. We hope to resolve the dispute at the January 13 conferral.

## II.  RFP Nos. 186, 199-202, 203-204, 209, 214-215, 224, 188-189, 191, 195, 208, and 219-220

The Jan. 10 Letter states that ROSS's objections to RFP Nos. 186, 199-202, 203-204, 209, 214-215, 224, 188-189, 191, 195, 208, 196-197, and 219-220 are "based solely" on the fundamental inadequacy that these responses are too vague for ROSS to understand what has been offered and wholly exclude responsive communications. *See* Jan. 10 Letter, at 2-3. Plaintiffs state that the phrase "sufficient to show" is not too vague because it means that Plaintiffs will "produce documents that sufficiently reflect that topic." Jan. 10 Letter, at 2-3. And Plaintiffs state that producing documents "sufficient to show" a response is adequate because "as [Plaintiffs] explained during our meet and confer, Thomson Reuters will produce communications if necessary to produce documents sufficient to show a particular topic." Jan. 10 Letter, at 3.

First, Plaintiffs do not accurately articulate or address ROSS's concerns with Plaintiffs' responses to RFP Nos. 186, 199-202, 203-204, 209, 214-215, 224, 188-189, 191, 195, 208, and 219-220.[1]  ROSS did not "solely" rely on the fact that there is a fundamental inadequacy with the responses (though this remains true). For example:

- **RFP 186** – explains that "[d]ocuments related to investment decision-making, including communications, are relevant to this case because they relate to market power and competitive effects in the database and search tool markets."  The Dec. 29 Letter also cites

---

[1] ROSS agrees that its objections to the responses to RFPs 196-197 are based solely on the fundamental inadequacies identified in its letter, but incorporates its response below that Plaintiffs' January 10 response does not resolve these deficiencies.

**Crowell**

four cases and an antitrust treatise showing that the request seeks relevant materials.  Dec. 29 Letter, at 4-5.

- **RFPs 199-202** – explains that "communications related to business plans are relevant to our claims," based on the example of "an email in which a senior executive received a business plan and wrote: 'The problem with this plan is that it would open up the legal search market to rivals.'"  Dec. 29 Letter, at 6.

- **RFPs 203-204** – explains that agreeing to only produce "business plans" and "decisions" is vague and provides an opportunity for cherry-picking by noting that "both (1) a research report including factual information about competitors in the search tools market, and (2) an email from a manager saying that 'these numbers show that we need to do more to keep competitors out of the market' would be relevant to this case but not produced under Plaintiffs' current offer." Dec. 29 Letter, at 6-7.

- **RFP 209** – explains that agreeing to produce documents sufficient to show Plaintiffs' competitive intelligence of ROSS or a third-party competitors' relevant technology is not adequate because "if a third party completed an objective analysis of ROSS, and in an email discussing that analysis, a manager at Thomson Reuters stated that 'this company is too good; we need to get them out of the market,' that would be relevant to determining whether Plaintiffs engaged in anticompetitive acts, and would be responsive to this RFP but would be excluded by your offer" and also that "if a third party completed an objective analysis of a third-party competitor's public law database, and in an email discussing that analysis, a manager at Thomson Reuters stated that 'too many customers like their technology, and if we allow them to connect that technology to our case law database our model would be threatened,' that would be relevant to determining whether there are separate products, and would be responsive to this RFP but would be excluded by your offer." Also cites three court opinions showing that the request seeks relevant materials. Dec. 29 Letter, at 7-8.

- **RFPs 214-215, 224** – explains that these requests for all documents and communications related to Plaintiffs' decision to not license access to the Westlaw Platform to a competitor or potential competitor, and all documents and communications related to Plaintiffs decision to not license access to the Westlaw Platform, including to ROSS "go to the heart of the separate products inquiry, as they seek documents that may show whether industry participants, including consumers, have sought to obtain judicial opinions separate from the platform, and Plaintiffs' reasoning for insisting on its tie." Also notes that Plaintiffs' counterproposal "would exclude internal communications in which executives discussed that allowing licenses to competitors could bring in extra revenue but would harm the business ultimately as more consumers became of aware of the fact that Westlaw's search and database offerings could be used separately."  Dec. 29 Letter, at 8.

- **RFP 188-189, 191, 195, 208** – explains that "[d]ocuments *related to* pricing, including to changes in pricing and decision-making regarding pricing, are relevant to market definition and market power, both of which are elements of ROSS's per se tying claim." Also cites four court opinion and an antitrust treatise showing that the request seeks relevant materials. Dec. 29 Letter, at 8-9.

Crowell

- **RFPs 219-220** – explains that Plaintiffs' response to RFP No. 219 would exclude "an email saying we have to update the process for case acquisition because a competitor is obtaining the same access" even though that is responsive to the request for all documents and communications related to acquiring, licensing, or obtaining: public law databases or the contents therein. Also cites two cases showing that this request seeks relevant materials. And explains that Plaintiffs' response to RFP No. 220 would exclude "an email which states that Plaintiffs want to acquire new search technology to 'beef up' their current search tools," which is responsive to this request because it "would also reflect their awareness that consumers consider these products separate."

In each of these cases, Plaintiffs have failed to respond to ROSS's arguments that the request seeks relevant information, and that Plaintiffs' offer of a subset of materials is inadequate. If Plaintiffs are unable to respond to ROSS's objections then Plaintiffs must produce documents consistent with ROSS's requests.

Second, Plaintiffs' response does not resolve the fundamental inadequacies identified in ROSS's Dec. 29 letter and during our December 1 and 2 meet and confer. To reiterate, your offers are too vague for ROSS to understand what is being produced and what is being withheld and each offers an inadequate subset of the material sought that excludes responsive and relevant material. Nothing in your Jan. 10 letter resolves any of these issues.

Third, ROSS disagrees that it is adequate for Plaintiffs to simply state that they "will produce communications if necessary to produce documents sufficient to show a particular topic." Jan. 10 Letter, at 3. As explained in the Dec. 29 Letter, this is one example of how Plaintiffs' offers would provide them with an improper opportunity for cherry-picking. *See* Dec. 29 Letter, at 3 (citing *Bryant v. Mattel, Inc.*, 2007 WL 5430893, at \*5 (C.D. Cal. May 18, 2007) ("As a threshold matter, MGA's responses are inadequate to the extent MGA has restricted its production to 'relevant and responsive non-objectionable documents' or documents 'sufficient' to show when events relating to Bratz occurred. These restrictions suggest that MGA might be excluding documents that are responsive to the request based upon its unilateral determination of what is 'relevant' or 'sufficient.' Mattel [sic] shall provide the responses to document requests ordered herein without these restrictions.").). Plaintiffs have provided no response to this case.

Accordingly, ROSS restates that each of the responses that contain the fundamental inadequacies identified in its December 29 letter and during our December 1 and 2 meet and confer are improper and that Plaintiffs must produce documents consistent with the original request. We hope to resolve the dispute at the January 13 final conferral. If we cannot, then court intervention is necessary.

## III.  Other RFP Requests

### a.    Request Nos. 187 and 205

These requests seek documents related to the costs of offering Westlaw to law students and to lawyers that are in training, and also related to Plaintiffs' strategies and policies associated with offering Westlaw to customer segments. Plaintiffs agree to "produce documents sufficient to show its practices and the costs of providing Westlaw access to law students." Jan. 10 Letter, at 3.

5



Thank you for agreeing to produce documents sufficient to show its practices and the costs of providing Westlaw access to law students. We have no objection to Plaintiffs agreement to produce documents sufficient to show the costs of providing Westlaw access to law students as long as Plaintiffs agree to produce the documents associated with these costs as they are kept in the ordinary course of business. Please confirm at the January 13 conferral whether this is so.

However, Plaintiffs' offer to produce "documents sufficient to show its practices of providing Westlaw access to law students" is inadequate for the same fundamental reasons described in ROSS's December 29 letter. Once again, this offer is too vague to understand and creates the opportunity for cherry-picking. *See Bryant*, 2007 WL 5430893, at *5. Accordingly, ROSS restates its requests for documents related to Plaintiffs' strategies and policies associated with offering Westlaw to customer segments. We hope to resolve the dispute at the January 13 final conferral. If we cannot, then court intervention is necessary.

### b.  Request No. 222

This request seeks all agreements and terms of service with any judicial, executive, or legislative governmental entity in the United States, including federal courts, state, municipal, county, and territorial courts, related to legal search tools, public law databases, or legal search platforms. Plaintiffs agree to "produce agreements with [all federal and state government agencies, whether part of the judicial, executive, or legislative branch] to public judicial opinions." Jan. 10 Letter, at 3. Plaintiffs ask whether this is responsive to ROSS's question, from the Dec. 29 Letter, of whether this offer "excludes agreements related to Westlaw's access to judicial opinions that are placed onto its website." Jan. 10 Letter, at 3 (citing Dec. 29 Letter, at 11-12).

Given that RFP No. 222 explicitly seeks "terms of service" with these governmental bodies, ROSS seeks to confirm whether Plaintiffs intend to produce the agreements which reflect the fact that Plaintiffs are permitted to hold the judicial opinions in a database and then display those opinions via its software platform. We hope to confirm the answer at the January 13 final conferral. If we cannot, then court intervention is necessary.

### c.  Request No. 210

In the Dec. 29 Letter, ROSS asked whether "Plaintiffs agree to produce all agreements with COMPETITORS, as defined in ROSS's RFP related to legal search platforms, legal search tools, and public law databases, and the material which makes up legal search platforms, legal search tools, and public law databases, such as technology to allow the platform to function and judicial opinions that are part of the databases." Dec. 29 Letter, at 12. The Jan 10 Letter states that Plaintiffs "will produce agreements with competitors related to legal search platforms, legal search tools, and public law databases." Jan. 10 Letter, at 3.

At the January 13 final conferral, please confirm that Plaintiffs are collecting documents for production consistent with the definition of competitors in ROSS's RFP. Also, please confirm at the final conferral that Plaintiffs are not excluding any agreements with competitors regarding the content that is within the legal search platforms, legal search tools, and public law databases. This material could include, for example, particular collections of judicial opinions or particular technology used to support the search functionality. We hope to resolve the dispute at the January 13 final conferral. If we cannot, then court intervention is necessary.

6



### d.     Request No. 223, 225-226, 227

Request No. 223 seeks all documents and communications related to Plaintiffs' decision to make judicial decisions available online, including competitive intelligence and research. Request Nos. 225 and 226 seek all documents and communications related to Plaintiffs decision to "continue to license, sell or distribute judicial opinions in paper-format, including competitive intelligence research" (RFP No. 225); and "about what judicial opinions to publish or not publish in paper-format" (RFP No. 226). Request No. 227 seeks "all documents and communications related to" Plaintiffs' "Opinion Submission Guidelines" that are available on Plaintiffs' website.

The Jan. 10 Letter states that "Thomson Reuters is willing to produce documents sufficient to show its process for deciding what opinions to (1) publish in official print reporters and (2) include online." Jan. 10 Letter, at 3-4. Plaintiffs also state in the Jan. 10 Letter that "Thomson Reuters has agreed to produce agreements with federal and state agencies related to the publication of judicial opinions. If Thomson Reuters has "exclusive" or "unique access" to cases, 12/29 ROSS Ltr. at 14, which it does not, it would be reflected in those agreements."  Jan. 10 Letter, at 4. And Plaintiffs state that "Thomson Reuters disagrees with ROSS's suggestion that Thomson Reuters decides what judicial opinions to publish in official case reporters. Thomson Reuters further disagrees with ROSS's suggestion that Thomson Reuters' decision about what judicial opinions to make available online is relevant to this case."  Jan. 10 Letter, at 3.

Plaintiffs offer is inadequate.  First, it excludes all communications related to deciding what opinions to publish in print and include online. Second, it excludes all documents and communications related to RFP No. 225, which asks about Plaintiffs decision to "continue to license, sell or distribute judicial opinions in paper-format, including competitive intelligence research." As explained at the M&C and in the Dec. 29 Letter, documents related to paper-format and online distribution practices "may disclose a gap between what is available online versus in print, as well as the reasons for that gap," and that "[t]his gap could be relevant to Plaintiffs' market power in the database market as well as the coerciveness of the tie, both of which are relevant to ROSS's per se tying claim."  Dec. 29 Letter, at 13. The letter cited a case supporting this proposition as well. Dec. 29 Letter, at 13. The Dec. 29 Letter also explains that "Plaintiffs' reasons for pushing consumers away from paper-format purchases to online licenses are also relevant to ROSS's UCL claim," and again cites a supporting case. Dec. 29 Letter, at 13. Finally, the Dec. 29 Letter explains that "Plaintiffs' documents and communications related to placing its public law database online would also reveal whether (and if so, how) Plaintiffs intermingle their public law with copyrightable content" and that "[t]his would reflect evidence of Plaintiffs executing a tying arrangement that has minimal pro-competitive benefits" and also evidence of Plaintiffs' misusing the copyright granted by the U.S. Government."  Dec. 29 Letter, at 13.  To support both points, cases were again cited. Dec. 29 Letter, at 13.  Plaintiffs have responded to none of these arguments.

Third, the offer to produce documents "*sufficient to show [a] process* for deciding what opinions" to public in print or include online is too vague for ROSS to understand what is being produced and what is being excluded, and leaves open the opportunity for cherry-picking. *See supra* § II.



Accordingly, ROSS restates its requests for documents responsive to Request Nos. 223, 225-226, and 227. We hope to resolve the dispute at the January 13 final conferral. If we cannot, then court intervention is necessary.

### e.      Request No. 221

This request seeks all Library Maintenance Agreements ("LMA") to which Plaintiffs are a party. In the Jan. 10 Letter, Plaintiffs agree to produce "documents sufficient to show its licensing policy with respect to print publications through Library Maintenance Agreements." Jan. 10 Letter, at 4.

ROSS agrees to this proposal. Thus, no dispute is necessary to discuss at the final conferral as none exists.

### f.      Request No. 231

This request seeks documents related to "each instance in which any entity requests a change to" Plaintiffs terms of service for access to the Westlaw Platform, including all instances in which any entity did not agree to the terms of service and were not granted access to the Westlaw Platform. Based on an objection from Plaintiffs that some terms are not relevant to the litigation, in the Dec. 29 Letter ROSS identified provisions from the May 1, 2014 Westlaw Research Subscriber Agreement (reflected in TR-0002808) which are relevant to this litigation. *See* Dec. 29 Letter, at 14-15 (noting that "[a]t the M&C you stated that this request is overbroad because certain terms of service are not relevant to this litigation"). ROSS specifically provided the following table in the Dec. 29 Letter, at page 15:

| |
|---|
| **Section 1 (partial):** West grants Subscriber a non-exclusive, nontransferable, worldwide, limited license to access and use, in accordance with the provisions expressly set forth herein, the Data (as defined below), features, services, remotely-accessed gateways, and other components of the products named and described in the Agreement (as defined below) (collectively, the "Product") which may change from time to time. |
| **Section 1.a (partial):** "Data" means all information and representations of information, including, but not limited to, graphical representations, and other content made available to Subscriber through the Product. |
| **Section 1.b-d (full):** [Not reproduced here due to length, see TR-0002808] |
| **Section 2.a (partial):** Subscriber may not copy, download, scrape, store, publish, post, transmit, retransmit, transfer, distribute, disseminate, broadcast, circulate, sell, resell, or otherwise use the Data, or any portion of the Data, in any form or by any means except as expressly permitted by paragraph 1 (License Grant) above, or as otherwise expressly permitted in writing by West. |

In the Jan. 10 Letter, Plaintiffs state that "Thomson Reuters agrees to produce documents sufficient to show any request to change the Westlaw terms and conditions in a way that would allow the requesting party to use Thomson Reuters' public law database separate from search technology." Jan. 10 Letter, at 4.

This offer is not adequate. First, it ignores the actual terms of ROSS's proposal, which is for instances where there is a request to change any of those specific terms of the agreement. Indeed, it is not proper for Plaintiffs to first complain that ROSS did not identify specific provisions of an agreement, and then to ignore ROSS's offer that does identify specific provisions.



Second, offering to produce documents "*sufficient to show any request to change*" is not clear. If the offer is to produce documents "sufficient to show" the existence of "any request," then are Plaintiffs agreeing to produce all documents showing such a request?

Accordingly, ROSS restates its requests for documents responsive to Request Nos. 221, 225-226, and 227. We hope to resolve the dispute at the January 13 final conferral. If we cannot, then court intervention is necessary.

g.    **Request No. 213**

This request seeks documents sufficient to identify the competitors that have used the Westlaw Platform without a license, as well as which products each of these competitors has used.

The Dec. 29 Letter states: "At the M&C you stated that Plaintiffs would consider the request if it were amended to seek documents sufficient to identify competitors that have accessed Plaintiffs' public law database or its legal search tools, as well as which products each of these competitors has used. ROSS is amenable to this modification as long as it does not exclude documents sufficient to identify competitors that have accessed the database or search tools when they are not offered together on the platform, to the extent any such documents exist." Dec. 29 Letter, at 15. The Jan. 10 Letter responds that "Thomson Reuters agrees to produce "documents sufficient to identify competitors that have accessed [Thomson Reuters'] public law database or its legal search tools," as requested in your letter. 12/29 ROSS Ltr. at 15."

Thus, no dispute is necessary to discuss at the final conferral as none exists.

* * *

I look forward to the conferral on January 13 at 9:30 AM PT. ROSS preserves all rights and waives none.

Very truly yours,

*/s/ Shira Liu*

Shira Liu

9

# EXHIBIT K

## Canter, Jacob

| | |
|---|---|
| **From:** | Canter, Jacob |
| **Sent:** | Friday, January 13, 2023 5:52 PM |
| **To:** | Ginder, Cameron |
| **Cc:** | Hughes, Dalton; Means, Miranda; #Thomson-Ross; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team; *dmoore@Potteranderson.com1; *bpalapura@potteranderson.com |
| **Subject:** | RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233 |

Cameron,

 We write to memorialize the material we agreed on and to also memorialize the disputes that remain.  As we discussed on the call, for those disputes that remain, there is an impasse and our conferral constituted a final conferral, making these disputes appropriate for court intervention.

**Topics on which we agree**
1. **RFP No. 187.**  There is no dispute because Plaintiffs also agree to produce documents sufficient to show the costs of offering Westlaw to law students as they are kept in the ordinary course of business. Thank you.
2. **RFP No. 222.**  There is no dispute because Plaintiffs also agree to produce the terms of service for documents from the governmental entities that are published on the platform.  Thank you.
3. **RFP No. 210.**  There is no dispute because Plaintiffs clarified that they have accepted ROSS' definition of competitors and also agree to produce agreements with competitors related to both licenses and potential licenses for the platform, database, and search tools, and also for material that is within the databases and search tools. Thank you.

**Topics where disputes remain**
1. **Temporal limitation on all requests.**  It is Plaintiffs' position that the temporal limitation for all documents and communications should be January 1, 2015, except to the extent for "documents [and communications] sufficient to show any business plans, products, and licenses related to its public law database separate from any search technology."  For this latter category, the temporal limitation will be January 1, 1990.  It is Plaintiffs' position that a different temporal limit is overly burdensome and would lead to the production of irrelevant documents.  Also, it is Plaintiffs' position that the January 2015 limitation is appropriate because ROSS started in January 2015.  ROSS disagrees that when ROSS started is an appropriate reason to limit discovery on Westlaw's conduct.  ROSS has stated that it is Plaintiffs' burden to demonstrate in specific terms for each request why no temporal limitation is improper.  For example, business plans and communications related to the decision to develop a single platform that includes both a public law database and tools which allows users to search through the database would be relevant to the tying claim but would not be produced if they are from before 2015. We offered you the opportunity to provide a specific reason why a specific temporal limit should be in place for each of the document requests, which you declined to do.  ROSS has also stated, citing supporting law, that the temporal limitations Plaintiffs proposal would cause documents relevant to the tying and UCL claims to not be produced.  And ROSS has identified documents already produced by Plaintiffs which reflect that documents from before January 1, 1990, would be responsive and relevant. This dispute requires court intervention to resolve.
2. **RFP Nos. 186, 199-202, 203-204, 209, 214-215, 224, 188-189, 191, 195, 205, 208, and 219-220.**  It is Plaintiffs' position that the metes and bounds of Plaintiffs' offers in response to these requests are clear and that they do not exclude any relevant materials.  ROSS disagrees.  ROSS has identified with specificity why, with each request, it is unclear what material is excluded and for what reason it would be excluded.  *See* Dec 29 Letter, at 2-9; Jan 12 Letter, at 3-5.  For example, at the conferral today we again brought up your offer to produce a "request sufficient to show business plans" in response to RFPs 199-202.  We stated that it is unclear whether this

request includes or excludes drafts, communications about the plan, memorandum and analyses of the plan, and other materials which reflect reactions to the plan and you were unable to articulate a clear answer.  ROSS has also stated, citing case law, that the language Plaintiffs' use provide an opportunity for cherry-picking. Dec 29 Letter, at 2-4. This dispute requires court intervention to resolve.

3. **RFP Nos. 223, 225-226, 227.**  In response to these requests, Plaintiffs agree to "produce documents sufficient to show its process for deciding what opinions to (1) publish in official print reporters and (2) include online."  Plaintiffs state that the request requires Plaintiffs to produce no additional material. ROSS contends that these requests also require Plaintiffs to produce materials related to deciding whether or not to publish collections of judicial opinions in paper-format, such as in a hard copy book. Dec 29 Letter, at 12-13, 14.  This dispute requires court intervention to resolve.

4. **RFP No. 231.**  This request seeks documents related to "each instance in which any entity requests a change to" Plaintiffs terms of service for access to the Westlaw Platform, including all instances in which any entity did not agree to the terms of service and were not granted access to the Westlaw Platform. At the Dec 1 and 2 conferral, Plaintiffs asked ROSS to identify specific provisions from its terms of service, which ROSS did. Dec 29 Letter, at 14-15. Plaintiffs then instead said that they would produce documents "sufficient to show any request to change the Westlaw terms and conditions in a way that would allow the requesting party to use Thomson Reuters' public law database separate from search technology."  Plaintiffs contend that this offer is adequate.  ROSS disagrees because materials that are relevant and would be produced in response to a request for instances in which an entity did not agree to how West defines "Data" in Section 1.a of its terms of service would be excluded based on Plaintiffs' counteroffer.  There is thus a dispute which requires court intervention to resolve.

We intend to notify the Court on Tuesday, January 17, 2023, of the disputes that require intervention to resolve.  We will provide you with a draft letter to the Court on Monday.  Kind regards,


**Jacob Canter**
Pronouns: he/him/his
Crowell & Moring LLP
jcanter@crowell.com
+1.415.365.7210 direct  |  +1.415.385.3716 mobile

---

**From:** Canter, Jacob <JCanter@crowell.com>
**Sent:** Thursday, January 12, 2023 1:08 PM
**To:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Cc:** Hughes, Dalton <DHughes@crowell.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

Cameron,

Please see attached. We look forward to tomorrow's call. Kind regards,


**Jacob Canter**
Pronouns: he/him/his
Crowell & Moring LLP
jcanter@crowell.com
+1.415.365.7210 direct  |  +1.415.385.3716 mobile

**From:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Sent:** Tuesday, January 10, 2023 5:49 PM
**To:** Canter, Jacob <JCanter@crowell.com>
**Cc:** Hughes, Dalton <DHughes@crowell.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

External Email

Jacob -- Attached are our proposed revisions to the joint stipulation.  If this is acceptable, you have our permission to file with the court.  We do not agree to file the stipulation as originally drafted.

Cameron

**Cameron Ginder**

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 3757  **M** +1 260 414 9744
**F** +1 312 862 2200

cameron.ginder@kirkland.com

---

**From:** Canter, Jacob <JCanter@crowell.com>
**Sent:** Tuesday, January 10, 2023 5:26 PM
**To:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Cc:** Hughes, Dalton <DHughes@crowell.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

Hi Cameron, please see attached a draft stipulation.  Please let us know if we have your approval to file with the Court.

Kind regards,

**Jacob Canter**
Pronouns: he/him/his
Crowell & Moring LLP
jcanter@crowell.com
+1.415.365.7210 direct  |  +1.415.385.3716 mobile

---

**From:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Sent:** Tuesday, January 10, 2023 1:04 PM
**To:** Canter, Jacob <JCanter@crowell.com>
**Cc:** Hughes, Dalton <DHughes@crowell.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>;

*bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

External Email

Thanks, Jacob.  We'll take a look at the stip when you send it across.

We can meet and confer on Friday 9:30-10:30PT on Friday but have a hard stop at 10:30PT that cannot be moved.  If ROSS still believes a 90-minute meet and confer is necessary, we can look at next week.

**Cameron Ginder**

KIRKLAND & ELLIS LLP
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 3757  **M** +1 260 414 9744
**F** +1 312 862 2200

cameron.ginder@kirkland.com

**From:** Canter, Jacob <JCanter@crowell.com>
**Sent:** Tuesday, January 10, 2023 12:51 PM
**To:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Cc:** Hughes, Dalton <DHughes@crowell.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

Cameron,

Thank you for the email.  We agree with your counterproposal and will prepare a joint stipulation, which we will send to you later today.

Also, we are available for a conferral regarding the discovery requests on this Friday, January 13.  We are available at any time between 9:30 AM PT and 11:00 AM PT.  Please let us know a time that works for you within that window.

**Jacob Canter**
Pronouns: he/him/his
Crowell & Moring LLP
jcanter@crowell.com
+1.415.365.7210 direct  |  +1.415.385.3716 mobile

**From:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Sent:** Tuesday, January 10, 2023 8:02 AM
**To:** Canter, Jacob <JCanter@crowell.com>
**Cc:** Hughes, Dalton <DHughes@crowell.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

External Email

Jacob -- See below for Thomson Reuters' counterproposal on a schedule extension.  Also, attached is Thomson Reuters' response to ROSS's December 29 letter.

| Task | Current Deadline | ROSS Proposal | TR Counter |
|------|------------------|---------------|------------|
| Substantial Completion | January 12, 2023 | April 6, 2023 | February 23, 2023 |
| End of Fact Discovery | March 30, 2023 | June 22, 2023 | May 11, 2023 |
| Expert Reports | April 27, 2023 | July 20, 2023 | May 25, 2023 |
| Rebuttal Reports | May 25, 2023 | August 17, 2023 | June 22, 2023 |
| Reply Reports | June 22, 2023 | September 14, 2023 | July 20, 2023 |
| End of Expert Discovery | July 13, 2023 | October 5, 2023 | August 3, 2023 |
| Opening SJ Briefs | August 17, 2023 | November 9, 2023 | August 31, 2023 |
| SJ Opposition Briefs | September 14, 2023 | December 7, 2023 | September 28, 2023 |
| SJ Reply Briefs | October 12, 2023 | January 4, 2024 | October 26, 2023 |

Cameron

**Cameron Ginder**

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 3757  **M** +1 260 414 9744
**F** +1 312 862 2200

cameron.ginder@kirkland.com

**From:** Canter, Jacob <JCanter@crowell.com>
**Sent:** Monday, January 9, 2023 6:47 PM
**To:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Cc:** Hughes, Dalton <DHughes@crowell.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

Thank you, Cameron.  3:30 PT / 5:30 CT works on our end.  I will send an invite to you and Miranda and to your local counsel.  Can you please confirm that your local counsel will attend in case this is an opposed request?

**Jacob Canter**
Pronouns: he/him/his
Crowell & Moring LLP
jcanter@crowell.com
+1.415.365.7210 direct  |  +1.415.385.3716 mobile

**From:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Sent:** Monday, January 9, 2023 3:24 PM
**To:** Canter, Jacob <JCanter@crowell.com>
**Cc:** Hughes, Dalton <DHughes@crowell.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** Re: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

External Email

I can be free before 2, from 3-4, and after 5ct.

**Cameron Ginder**

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
T +1 312 862 3757   M +1 260 414 9744
F +1 312 862 2200

cameron.ginder@kirkland.com

> On Jan 9, 2023, at 5:15 PM, Canter, Jacob <JCanter@crowell.com> wrote:
>
> Thank you for the response, Cameron.  Given that the substantial completion deadline is Thurs., Jan 12, please let us know your availability to participate in a conferral (if necessary) on Tues., Jan 10, so we have adequate time to contact the court with the joint or opposed request.
>
>
> **Jacob Canter**
> Pronouns: he/him/his
> Crowell & Moring LLP
> jcanter@crowell.com
> +1.415.365.7210 direct   |   +1.415.385.3716 mobile

> **From:** Ginder, Cameron <cameron.ginder@kirkland.com>
> **Sent:** Monday, January 9, 2023 2:34 PM
> **To:** Canter, Jacob <JCanter@crowell.com>; Hughes, Dalton <DHughes@crowell.com>
> **Cc:** Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
> **Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

External Email

Jacob - We will have a response on the schedule by mid-day tomorrow.  We are also preparing a response to ROSS's most recent letter and can schedule a meet and confer then.

Cameron

**Cameron Ginder**

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 3757  **M** +1 260 414 9744
**F** +1 312 862 2200

cameron.ginder@kirkland.com

---

**From:** Canter, Jacob <JCanter@crowell.com>
**Sent:** Friday, January 6, 2023 2:42 PM
**To:** Ginder, Cameron <cameron.ginder@kirkland.com>; Hughes, Dalton <DHughes@crowell.com>
**Cc:** Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>;
mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team
<Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>;
*bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

Cameron,

Thank you for the response.  Please respond to the scheduling proposal by no later than **Monday January 9 at 11 PT** so that we can have enough time to confer and contact the court with either a joint or opposed request.

Also, we have not received a response to the letter regarding Plaintiffs' responses to RFPs 182-233, which I sent on December 29, 2022.  Please also let us know when you are available for a 90-minute final conferral in regards to the letter.  We have availability at the following times:

1. Monday Jan 9, 1:30-3 PT
2. Tuesday Jan 10, 2-4 PT
3. Wednesday Jan 11, 1-3 PT

Kind regards,


**Jacob Canter**
Pronouns: he/him/his
Crowell & Moring LLP
jcanter@crowell.com
+1.415.365.7210 direct  |  +1.415.385.3716 mobile

---

**From:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Sent:** Thursday, January 5, 2023 12:36 PM
**To:** Canter, Jacob <JCanter@crowell.com>; Hughes, Dalton <DHughes@crowell.com>
**Cc:** Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>;
mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team
<Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>;
*bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

External Email

Jacob - We are considering your proposal and will get you an answer early next week.  We can confer, if needed, at that time.

Cameron

**Cameron Ginder**

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 3757  **M** +1 260 414 9744
**F** +1 312 862 2200

cameron.ginder@kirkland.com

---

**From:** Canter, Jacob <JCanter@crowell.com>
**Sent:** Thursday, January 5, 2023 12:02 PM
**To:** Ginder, Cameron <cameron.ginder@kirkland.com>; Hughes, Dalton <DHughes@crowell.com>
**Cc:** Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

Hello Cameron and Miranda,

Please let us know if you agree to the proposed schedule or would like to discuss tomorrow. Because both sides still have significant outstanding discovery issues to resolve, we think this extension makes sense.   The letter is reattached.

Kind regards,

**Jacob Canter**
Pronouns: he/him/his
Crowell & Moring LLP
jcanter@crowell.com
+1.415.365.7210 direct   |   +1.415.385.3716 mobile

---

**From:** Canter, Jacob <JCanter@crowell.com>
**Sent:** Friday, December 30, 2022 12:23 PM
**To:** Ginder, Cameron <cameron.ginder@kirkland.com>; Hughes, Dalton <DHughes@crowell.com>
**Cc:** Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

Hello Cameron and Miranda,

Please see the attached letter.  Kind regards,

**Jacob Canter**
Pronouns: he/him/his
Crowell & Moring LLP
jcanter@crowell.com
+1.415.365.7210 direct  |  +1.415.385.3716 mobile

---

**From:** Canter, Jacob <JCanter@crowell.com>
**Sent:** Thursday, December 29, 2022 6:26 PM
**To:** Ginder, Cameron <cameron.ginder@kirkland.com>; Hughes, Dalton <DHughes@crowell.com>
**Cc:** Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>;
mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team
<Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>;
*bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

Hello Cameron and Miranda,

Please see the attached letter.  Kind regards,


**Jacob Canter**
Pronouns: he/him/his
Crowell & Moring LLP
jcanter@crowell.com
+1.415.365.7210 direct  |  +1.415.385.3716 mobile

---

**From:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Sent:** Wednesday, November 23, 2022 3:36 PM
**To:** Hughes, Dalton <DHughes@crowell.com>
**Cc:** Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>;
mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team
<Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>;
*bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** Re: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

External Email

Thanks, Dalton. Thursday works.

Have a nice Thanksgiving.

**Cameron Ginder**

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 3757  **M** +1 260 414 9744
**F** +1 312 862 2200

cameron.ginder@kirkland.com


On Nov 23, 2022, at 3:05 PM, Hughes, Dalton <DHughes@crowell.com> wrote:

Cameron,

We are available from 11:30-2:30 PT Thursday Dec. 1st, and 10:30-12 PT Friday Dec. 2nd.

Thank you,
Dalton


**Dalton Kyle Hughes**
Pronouns: he/him/his
Crowell & Moring LLP
dhughes@crowell.com
+1.312.840.3253 direct  |  +1.615.426.7320 mobile

---

**From:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Sent:** Tuesday, November 22, 2022 8:22 PM
**To:** Hughes, Dalton <DHughes@crowell.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com
**Cc:** ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

External Email

Dalton/Joachim - Please see attached.

We are not available to meet and confer at the times you mentioned below.  Please let us know your availability on Thursday and Friday of next week.

Thanks,
Cameron

**Cameron Ginder**

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 3757  **M** +1 260 414 9744
**F** +1 312 862 2200

cameron.ginder@kirkland.com

---

**From:** Hughes, Dalton <DHughes@crowell.com>
**Sent:** Monday, November 21, 2022 2:06 PM
**To:** Ginder, Cameron <cameron.ginder@kirkland.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com

**Cc:** ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

Cameron,

We have still not received a response to our November 7, 2022 letter regarding Plaintiffs' responses to our RFPs. Please provide your availability to meet and confer on Monday or Tuesday of next week. We are available at 10:30 AM PT, 2:00 PM PT, and 4:00 PM PT on Monday, November 28; and 9:30 AM PT, 12:00 PM PT, and 3:00 PM PT on Tuesday, November 29.

Best regards,
Dalton


**Dalton Kyle Hughes**
Pronouns: he/him/his
Crowell & Moring LLP
dhughes@crowell.com
+1.312.840.3253 direct   |   +1.615.426.7320 mobile

---

**From:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Sent:** Tuesday, November 15, 2022 8:22 AM
**To:** Hughes, Dalton <DHughes@crowell.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com
**Cc:** ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

External Email

Dalton - We are preparing a written response to your letter.

Thanks,
Cameron

**Cameron Ginder**

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 3757  **M** +1 260 414 9744
**F** +1 312 862 2200

cameron.ginder@kirkland.com

**From:** Hughes, Dalton <DHughes@crowell.com>
**Sent:** Monday, November 14, 2022 3:05 PM
**To:** Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com
**Cc:** ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

Counsel,

Please let us know Plaintiffs' positions on the RFPs in the letter sent below. If Plaintiffs will not produce the documents as requested, then let us know your availability to meet and confer as to these requests.

Best regards,
Dalton


**Dalton Kyle Hughes**
Pronouns: he/him/his
Crowell & Moring LLP
dhughes@crowell.com
+1.312.840.3253 direct | +1.615.426.7320 mobile

---

**From:** Hughes, Dalton <DHughes@crowell.com>
**Sent:** Monday, November 7, 2022 2:58 PM
**To:** Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com
**Cc:** ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

Counsel,

Please see the attached letter.

Best regards,
Dalton


**Dalton Kyle Hughes**
Pronouns: he/him/his
dhughes@crowell.com
+1.312.840.3253 direct | +1.615.426.7320 mobile

Crowell & Moring LLP

455 North Cityfront Plaza Drive
Suite 3600
Chicago, IL 60611

# Crowell

**Collaboration Powers Success**

crowell.com
Trade Secrets Trends Blog

This message may contain privileged and confidential information. IF IT WAS SENT TO YOU BY MISTAKE, DO NOT READ IT. Instead, please notify the sender (or postmaster@crowell.com) by reply e-mail, and delete this e-mail. Unauthorized dissemination, forwarding or copying of this e-mail is strictly prohibited.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

# EXHIBIT L

## Canter, Jacob

| | |
|---|---|
| **From:** | Canter, Jacob |
| **Sent:** | Thursday, January 19, 2023 10:41 AM |
| **To:** | Ginder, Cameron; Barsanti, Vanessa |
| **Cc:** | Hughes, Dalton; Means, Miranda; #Thomson-Ross; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team; *dmoore@Potteranderson.com1; *bpalapura@potteranderson.com; Barsanti, Vanessa |
| **Subject:** | RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233 |

I am writing to memorialize our phone conversation and to ask questions regarding the conversation.

During the conversation you stated that Plaintiffs' position with regard to Request Nos. 186, 196,197, 199-202, 203-204, 209, 214-215, 224, 188-189, 191, 195, 205, 208, and 219-220 has changed. You stated that Plaintiffs will no longer only produce documents "sufficient to show" the information requested. However, we are uncertain what that means you will be producing.  Will you be producing all documents in response to the requests as drafted so that, as an example, the documents include both documents and communications related to strategies and/or plans for the sale, distribution, and license, of the Westlaw platform, search tools, public law database, and legal search platforms (*see* Request Nos. 199-202).  Or, is the plan to produce some smaller subset, such as "business plans for the sale, distribution, or license of the Westlaw Platform" (see R&Os to Request Nos. 199-202)?  If it is the latter, then we will proceed to raise the issue with the court.

During the conversation you also stated that Plaintiffs stand on their temporal limitation objections, although you agreed to discuss this as to each request. If we do not have resolution on the above dispute then we will move forward with seeking leave from the court on both the above dispute and the temporal limitations dispute. However, if we have resolution on the above dispute then we request a final conferral to discuss the temporal limits for particular document requests Monday.

We did not discuss the final two disputes related to RFP Nos. 223, 225-226, 227 and RFP No. 231. I assume that your positions on these requests are unchanged.

Finally, you stated that before next Wednesday Plaintiffs would provide ROSS with a list of proposed search terms and custodians, and that we can discuss those on Wednesday at 10:30 AM CT.

**Jacob Canter**
Pronouns: he/him/his
Crowell & Moring LLP
jcanter@crowell.com
+1.415.365.7210 direct  |  +1.415.385.3716 mobile

---

**From:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Sent:** Thursday, January 19, 2023 9:44 AM
**To:** Canter, Jacob <JCanter@crowell.com>
**Cc:** Hughes, Dalton <DHughes@crowell.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>; Barsanti, Vanessa <vanessa.barsanti@kirkland.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

External Email

Jacob - We have the draft joint letter.  Do you have 10 minutes to discuss between 10-11CT?

Thanks,
Cameron

**Cameron Ginder**

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 3757  **M** +1 260 414 9744
**F** +1 312 862 2200

cameron.ginder@kirkland.com

---

**From:** Canter, Jacob <JCanter@crowell.com>
**Sent:** Wednesday, January 18, 2023 3:00 PM
**To:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Cc:** Hughes, Dalton <DHughes@crowell.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

Cameron, I am writing because we inadvertently omitted RFP Nos. 196 and 197 from the list of requests where a dispute remains about the metes and bounds of Plaintiffs' offer (#2). We are writing to confirm that our dispute regarding these requests is also final.

Also, attached is the joint letter raising these disputes with the Court. Once you approve we will file. Kind regards,

**Jacob Canter**
Pronouns: he/him/his
Crowell & Moring LLP
jcanter@crowell.com
+1.415.365.7210 direct  |  +1.415.385.3716 mobile

---

**From:** Canter, Jacob <JCanter@crowell.com>
**Sent:** Friday, January 13, 2023 8:52 PM
**To:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Cc:** Hughes, Dalton <DHughes@crowell.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

Cameron,

We write to memorialize the material we agreed on and to also memorialize the disputes that remain.  As we discussed on the call, for those disputes that remain, there is an impasse and our conferral constituted a final conferral, making these disputes appropriate for court intervention.

**Topics on which we agree**
1. **RFP No. 187.**  There is no dispute because Plaintiffs also agree to produce documents sufficient to show the costs of offering Westlaw to law students as they are kept in the ordinary course of business. Thank you.
2. **RFP No. 222.**  There is no dispute because Plaintiffs also agree to produce the terms of service for documents from the governmental entities that are published on the platform.  Thank you.
3. **RFP No. 210.**  There is no dispute because Plaintiffs clarified that they have accepted ROSS' definition of competitors and also agree to produce agreements with competitors related to both licenses and potential licenses for the platform, database, and search tools, and also for material that is within the databases and search tools. Thank you.

**Topics where disputes remain**
1. **Temporal limitation on all requests.**  It is Plaintiffs' position that the temporal limitation for all documents and communications should be January 1, 2015, except to the extent for "documents [and communications] sufficient to show any business plans, products, and licenses related to its public law database separate from any search technology."  For this latter category, the temporal limitation will be January 1, 1990.  It is Plaintiffs' position that a different temporal limit is overly burdensome and would lead to the production of irrelevant documents.  Also, it is Plaintiffs' position that the January 2015 limitation is appropriate because ROSS started in January 2015.  ROSS disagrees that when ROSS started is an appropriate reason to limit discovery on Westlaw's conduct.  ROSS has stated that it is Plaintiffs' burden to demonstrate in specific terms for each request why no temporal limitation is improper.  For example, business plans and communications related to the decision to develop a single platform that includes both a public law database and tools which allows users to search through the database would be relevant to the tying claim but would not be produced if they are from before 2015. We offered you the opportunity to provide a specific reason why a specific temporal limit should be in place for each of the document requests, which you declined to do.  ROSS has also stated, citing supporting law, that the temporal limitations Plaintiffs proposal would cause documents relevant to the tying and UCL claims to not be produced.  And ROSS has identified documents already produced by Plaintiffs which reflect that documents from before January 1, 1990, would be responsive and relevant. This dispute requires court intervention to resolve.
2. **RFP Nos. 186, 199-202, 203-204, 209, 214-215, 224, 188-189, 191, 195, 205, 208, and 219-220.**  It is Plaintiffs' position that the metes and bounds of Plaintiffs' offers in response to these requests are clear and that they do not exclude any relevant materials.  ROSS disagrees.  ROSS has identified with specificity why, with each request, it is unclear what material is excluded and for what reason it would be excluded.  *See* Dec 29 Letter, at 2-9; Jan 12 Letter, at 3-5.  For example, at the conferral today we again brought up your offer to produce a "request sufficient to show business plans" in response to RFPs 199-202.  We stated that it is unclear whether this request includes or excludes drafts, communications about the plan, memorandum and analyses of the plan, and other materials which reflect reactions to the plan and you were unable to articulate a clear answer.  ROSS has also stated, citing case law, that the language Plaintiffs' use provide an opportunity for cherry-picking. Dec 29 Letter, at 2-4. This dispute requires court intervention to resolve.
3. **RFP Nos. 223, 225-226, 227.**  In response to these requests, Plaintiffs agree to "produce documents sufficient to show its process for deciding what opinions to (1) publish in official print reporters and (2) include online."  Plaintiffs state that the request requires Plaintiffs to produce no additional material. ROSS contends that these requests also require Plaintiffs to produce materials related to deciding whether or not to publish collections of judicial opinions in paper-format, such as in a hard copy book. Dec 29 Letter, at 12-13, 14.  This dispute requires court intervention to resolve.
4. **RFP No. 231.**  This request seeks documents related to "each instance in which any entity requests a change to" Plaintiffs terms of service for access to the Westlaw Platform, including all instances in which any entity did not agree to the terms of service and were not granted access to the Westlaw Platform. At the Dec 1 and 2 conferral, Plaintiffs asked ROSS to identify specific provisions from its terms of service, which ROSS did. Dec 29

Letter, at 14-15. Plaintiffs then instead said that they would produce documents "sufficient to show any request to change the Westlaw terms and conditions in a way that would allow the requesting party to use Thomson Reuters' public law database separate from search technology." Plaintiffs contend that this offer is adequate. ROSS disagrees because materials that are relevant and would be produced in response to a request for instances in which an entity did not agree to how West defines "Data" in Section 1.a of its terms of service would be excluded based on Plaintiffs' counteroffer. There is thus a dispute which requires court intervention to resolve.

We intend to notify the Court on Tuesday, January 17, 2023, of the disputes that require intervention to resolve. We will provide you with a draft letter to the Court on Monday. Kind regards,

**Jacob Canter**
Pronouns: he/him/his
Crowell & Moring LLP
jcanter@crowell.com
+1.415.365.7210 direct   |   +1.415.385.3716 mobile

---

**From:** Canter, Jacob <JCanter@crowell.com>
**Sent:** Thursday, January 12, 2023 1:08 PM
**To:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Cc:** Hughes, Dalton <DHughes@crowell.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

Cameron,

Please see attached. We look forward to tomorrow's call. Kind regards,

**Jacob Canter**
Pronouns: he/him/his
Crowell & Moring LLP
jcanter@crowell.com
+1.415.365.7210 direct   |   +1.415.385.3716 mobile

---

**From:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Sent:** Tuesday, January 10, 2023 5:49 PM
**To:** Canter, Jacob <JCanter@crowell.com>
**Cc:** Hughes, Dalton <DHughes@crowell.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

External Email

Jacob -- Attached are our proposed revisions to the joint stipulation. If this is acceptable, you have our permission to file with the court. We do not agree to file the stipulation as originally drafted.

Cameron

**Cameron Ginder**

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 3757  **M** +1 260 414 9744
**F** +1 312 862 2200

cameron.ginder@kirkland.com

---

**From:** Canter, Jacob <JCanter@crowell.com>
**Sent:** Tuesday, January 10, 2023 5:26 PM
**To:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Cc:** Hughes, Dalton <DHughes@crowell.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

Hi Cameron, please see attached a draft stipulation.  Please let us know if we have your approval to file with the Court.

Kind regards,

**Jacob Canter**
Pronouns: he/him/his
Crowell & Moring LLP
jcanter@crowell.com
+1.415.365.7210 direct  |  +1.415.385.3716 mobile

---

**From:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Sent:** Tuesday, January 10, 2023 1:04 PM
**To:** Canter, Jacob <JCanter@crowell.com>
**Cc:** Hughes, Dalton <DHughes@crowell.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

External Email

Thanks, Jacob.  We'll take a look at the stip when you send it across.

We can meet and confer on Friday 9:30-10:30PT on Friday but have a hard stop at 10:30PT that cannot be moved.  If ROSS still believes a 90-minute meet and confer is necessary, we can look at next week.

**Cameron Ginder**

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 3757  **M** +1 260 414 9744
**F** +1 312 862 2200

---

cameron.ginder@kirkland.com

---

**From:** Canter, Jacob <JCanter@crowell.com>
**Sent:** Tuesday, January 10, 2023 12:51 PM
**To:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Cc:** Hughes, Dalton <DHughes@crowell.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

Cameron,

Thank you for the email.  We agree with your counterproposal and will prepare a joint stipulation, which we will send to you later today.

Also, we are available for a conferral regarding the discovery requests on this Friday, January 13.  We are available at any time between 9:30 AM PT and 11:00 AM PT.  Please let us know a time that works for you within that window.


**Jacob Canter**
Pronouns: he/him/his
Crowell & Moring LLP
jcanter@crowell.com
+1.415.365.7210 direct   |   +1.415.385.3716 mobile

---

**From:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Sent:** Tuesday, January 10, 2023 8:02 AM
**To:** Canter, Jacob <JCanter@crowell.com>
**Cc:** Hughes, Dalton <DHughes@crowell.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

External Email

Jacob -- See below for Thomson Reuters' counterproposal on a schedule extension.  Also, attached is Thomson Reuters' response to ROSS's December 29 letter.

| Task | Current Deadline | ROSS Proposal | TR Counter |
|---|---|---|---|
| Substantial Completion | January 12, 2023 | April 6, 2023 | February 23, 2023 |
| End of Fact Discovery | March 30, 2023 | June 22, 2023 | May 11, 2023 |
| Expert Reports | April 27, 2023 | July 20, 2023 | May 25, 2023 |
| Rebuttal Reports | May 25, 2023 | August 17, 2023 | June 22, 2023 |
| Reply Reports | June 22, 2023 | September 14, 2023 | July 20, 2023 |

| End of Expert Discovery | July 13, 2023 | October 5, 2023 | August 3, 2023 |
|---|---|---|---|
| Opening SJ Briefs | August 17, 2023 | November 9, 2023 | August 31, 2023 |
| SJ Opposition Briefs | September 14, 2023 | December 7, 2023 | September 28, 2023 |
| SJ Reply Briefs | October 12, 2023 | January 4, 2024 | October 26, 2023 |

Cameron

**Cameron Ginder**

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 3757  **M** +1 260 414 9744
**F** +1 312 862 2200

cameron.ginder@kirkland.com

---

**From:** Canter, Jacob <JCanter@crowell.com>
**Sent:** Monday, January 9, 2023 6:47 PM
**To:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Cc:** Hughes, Dalton <DHughes@crowell.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

Thank you, Cameron.  3:30 PT / 5:30 CT works on our end.  I will send an invite to you and Miranda and to your local counsel.  Can you please confirm that your local counsel will attend in case this is an opposed request?

**Jacob Canter**
Pronouns: he/him/his
Crowell & Moring LLP
jcanter@crowell.com
+1.415.365.7210 direct  |  +1.415.385.3716 mobile

---

**From:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Sent:** Monday, January 9, 2023 3:24 PM
**To:** Canter, Jacob <JCanter@crowell.com>
**Cc:** Hughes, Dalton <DHughes@crowell.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** Re: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

External Email

I can be free before 2, from 3-4, and after 5ct.

**Cameron Ginder**

**KIRKLAND & ELLIS LLP**

300 North LaSalle, Chicago, IL 60654
T +1 312 862 3757  M +1 260 414 9744
F +1 312 862 2200

cameron.ginder@kirkland.com

On Jan 9, 2023, at 5:15 PM, Canter, Jacob <JCanter@crowell.com> wrote:

Thank you for the response, Cameron.  Given that the substantial completion deadline is Thurs., Jan 12, please let us know your availability to participate in a conferral (if necessary) on Tues., Jan 10, so we have adequate time to contact the court with the joint or opposed request.

**Jacob Canter**
Pronouns: he/him/his
Crowell & Moring LLP
jcanter@crowell.com
+1.415.365.7210 direct  |  +1.415.385.3716 mobile

---

**From:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Sent:** Monday, January 9, 2023 2:34 PM
**To:** Canter, Jacob <JCanter@crowell.com>; Hughes, Dalton <DHughes@crowell.com>
**Cc:** Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

[External Email]

Jacob - We will have a response on the schedule by mid-day tomorrow.  We are also preparing a response to ROSS's most recent letter and can schedule a meet and confer then.

Cameron

**Cameron Ginder**

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
T +1 312 862 3757  M +1 260 414 9744
F +1 312 862 2200

cameron.ginder@kirkland.com

---

**From:** Canter, Jacob <JCanter@crowell.com>
**Sent:** Friday, January 6, 2023 2:42 PM
**To:** Ginder, Cameron <cameron.ginder@kirkland.com>; Hughes, Dalton <DHughes@crowell.com>
**Cc:** Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

Cameron,

Thank you for the response.  Please respond to the scheduling proposal by no later than **Monday January 9 at 11 PT** so that we can have enough time to confer and contact the court with either a joint or opposed request.

Also, we have not received a response to the letter regarding Plaintiffs' responses to RFPs 182-233, which I sent on December 29, 2022.  Please also let us know when you are available for a 90-minute final conferral in regards to the letter.  We have availability at the following times:

1. Monday Jan 9, 1:30-3 PT
2. Tuesday Jan 10, 2-4 PT
3. Wednesday Jan 11, 1-3 PT

Kind regards,


**Jacob Canter**
Pronouns: he/him/his
Crowell & Moring LLP
jcanter@crowell.com
+1.415.365.7210 direct  |  +1.415.385.3716 mobile

---

**From:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Sent:** Thursday, January 5, 2023 12:36 PM
**To:** Canter, Jacob <JCanter@crowell.com>; Hughes, Dalton <DHughes@crowell.com>
**Cc:** Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

External Email

Jacob - We are considering your proposal and will get you an answer early next week.  We can confer, if needed, at that time.

Cameron

**Cameron Ginder**

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 3757  **M** +1 260 414 9744
**F** +1 312 862 2200

cameron.ginder@kirkland.com

---

**From:** Canter, Jacob <JCanter@crowell.com>
**Sent:** Thursday, January 5, 2023 12:02 PM
**To:** Ginder, Cameron <cameron.ginder@kirkland.com>; Hughes, Dalton <DHughes@crowell.com>

**Cc:** Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

Hello Cameron and Miranda,

Please let us know if you agree to the proposed schedule or would like to discuss tomorrow. Because both sides still have significant outstanding discovery issues to resolve, we think this extension makes sense.   The letter is reattached.

Kind regards,


**Jacob Canter**
Pronouns: he/him/his
Crowell & Moring LLP
jcanter@crowell.com
+1.415.365.7210 direct   |   +1.415.385.3716 mobile

---

**From:** Canter, Jacob <JCanter@crowell.com>
**Sent:** Friday, December 30, 2022 12:23 PM
**To:** Ginder, Cameron <cameron.ginder@kirkland.com>; Hughes, Dalton <DHughes@crowell.com>
**Cc:** Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

Hello Cameron and Miranda,

Please see the attached letter.  Kind regards,


**Jacob Canter**
Pronouns: he/him/his
Crowell & Moring LLP
jcanter@crowell.com
+1.415.365.7210 direct   |   +1.415.385.3716 mobile

---

**From:** Canter, Jacob <JCanter@crowell.com>
**Sent:** Thursday, December 29, 2022 6:26 PM
**To:** Ginder, Cameron <cameron.ginder@kirkland.com>; Hughes, Dalton <DHughes@crowell.com>
**Cc:** Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

Hello Cameron and Miranda,

Please see the attached letter.  Kind regards,

**Jacob Canter**
Pronouns: he/him/his
Crowell & Moring LLP
jcanter@crowell.com
+1.415.365.7210 direct  |  +1.415.385.3716 mobile

---

**From:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Sent:** Wednesday, November 23, 2022 3:36 PM
**To:** Hughes, Dalton <DHughes@crowell.com>
**Cc:** Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** Re: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

External Email

Thanks, Dalton. Thursday works.

Have a nice Thanksgiving.

**Cameron Ginder**

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 3757  **M** +1 260 414 9744
**F** +1 312 862 2200

cameron.ginder@kirkland.com

On Nov 23, 2022, at 3:05 PM, Hughes, Dalton <DHughes@crowell.com> wrote:

Cameron,

We are available from 11:30-2:30 PT Thursday Dec. 1st, and 10:30-12 PT Friday Dec. 2nd.

Thank you,
Dalton

**Dalton Kyle Hughes**
Pronouns: he/him/his
Crowell & Moring LLP
dhughes@crowell.com
+1.312.840.3253 direct  |  +1.615.426.7320 mobile

**From:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Sent:** Tuesday, November 22, 2022 8:22 PM
**To:** Hughes, Dalton <DHughes@crowell.com>; Means, Miranda
<miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>;
mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com
**Cc:** ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1
<dmoore@Potteranderson.com>; *bpalapura@potteranderson.com
<bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses
to RFPs 182-233

External Email

Dalton/Joachim - Please see attached.

We are not available to meet and confer at the times you mentioned below.  Please let
us know your availability on Thursday and Friday of next week.

Thanks,
Cameron

**Cameron Ginder**

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 3757  **M** +1 260 414 9744
**F** +1 312 862 2200

cameron.ginder@kirkland.com

**From:** Hughes, Dalton <DHughes@crowell.com>
**Sent:** Monday, November 21, 2022 2:06 PM
**To:** Ginder, Cameron <cameron.ginder@kirkland.com>; Means, Miranda
<miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>;
mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com
**Cc:** ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1
<dmoore@Potteranderson.com>; *bpalapura@potteranderson.com
<bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses
to RFPs 182-233

Cameron,

We have still not received a response to our November 7, 2022 letter regarding
Plaintiffs' responses to our RFPs. Please provide your availability to meet and confer on
Monday or Tuesday of next week. We are available at 10:30 AM PT, 2:00 PM PT, and
4:00 PM PT on Monday, November 28; and 9:30 AM PT, 12:00 PM PT, and 3:00 PM PT
on Tuesday, November 29.

Best regards,
Dalton

**Dalton Kyle Hughes**
Pronouns: he/him/his
Crowell & Moring LLP
dhughes@crowell.com
+1.312.840.3253 direct  |  +1.615.426.7320 mobile

---

**From:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Sent:** Tuesday, November 15, 2022 8:22 AM
**To:** Hughes, Dalton <DHughes@crowell.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com
**Cc:** ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

External Email

Dalton - We are preparing a written response to your letter.

Thanks,
Cameron

**Cameron Ginder**

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 3757  **M** +1 260 414 9744
**F** +1 312 862 2200

cameron.ginder@kirkland.com

---

**From:** Hughes, Dalton <DHughes@crowell.com>
**Sent:** Monday, November 14, 2022 3:05 PM
**To:** Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com
**Cc:** ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

Counsel,

Please let us know Plaintiffs' positions on the RFPs in the letter sent below. If Plaintiffs will not produce the documents as requested, then let us know your availability to meet and confer as to these requests.

Best regards,
Dalton

**Dalton Kyle Hughes**
Pronouns: he/him/his
Crowell & Moring LLP
dhughes@crowell.com
+1.312.840.3253 direct  |  +1.615.426.7320 mobile

---

**From:** Hughes, Dalton <DHughes@crowell.com>
**Sent:** Monday, November 7, 2022 2:58 PM
**To:** Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com
**Cc:** ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

Counsel,

Please see the attached letter.

Best regards,
Dalton

**Dalton Kyle Hughes**
Pronouns: he/him/his
dhughes@crowell.com
+1.312.840.3253 direct  |  +1.615.426.7320 mobile

Crowell & Moring LLP
455 North Cityfront Plaza Drive
Suite 3600
Chicago, IL 60611

## Crowell

**Collaboration Powers Success**

crowell.com
Trade Secrets Trends Blog

This message may contain privileged and confidential information. IF IT WAS SENT TO YOU BY MISTAKE, DO NOT READ IT. Instead, please notify the sender (or postmaster@crowell.com) by reply e-mail, and delete this e-mail. Unauthorized dissemination, forwarding or copying of this e-mail is strictly prohibited.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

14

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

# EXHIBIT M

## Canter, Jacob

| | |
|---|---|
| **From:** | Canter, Jacob |
| **Sent:** | Tuesday, January 24, 2023 1:38 PM |
| **To:** | Ginder, Cameron; Barsanti, Vanessa |
| **Cc:** | Hughes, Dalton; Means, Miranda; #Thomson-Ross; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team; *dmoore@Potteranderson.com1; *bpalapura@potteranderson.com; Barsanti, Vanessa |
| **Subject:** | RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233 |
| **Attachments:** | ROSS - Temporal Limits Proposal re CC Set One (1.24.2023).pdf |

Cameron, Plaintiffs asked for ROSS to make temporal limitation proposals for the document requests in ROSS's first set of requests.  As we have explained, this is not ROSS's burden.  Plaintiffs have made no argument to the contrary.  Nonetheless, Plaintiffs are apparently unable to offer their own temporal limits and instead of offering to do so before the final conferral, requested that ROSS do so after the parties already held the final conferral.  Thus, to move the document production process along, ROSS proposes temporal limits for the first set of document requests as reflected in the attached word document.  ROSS offers this proposal without prejudice to revisit the temporal limitations if ROSS discovers that we need to go further back in time.

You stated that Plaintiffs would have a proposal before tomorrow's conferral at 10:30 AM CT conferral addressing all of the remaining disputes related to the first set of document requests and also addressing the second set of document requests.  You also said that Plaintiffs would have search term proposals before tomorrow's conferral as well. Please also come prepared to address ROSS's temporal limit proposals.  As we have already stated, this will be the final conferral on all of the document requests that we discuss.

**Jacob Canter**
Pronouns: he/him/his
Crowell & Moring LLP
jcanter@crowell.com
+1.415.365.7210 direct   |   +1.415.385.3716 mobile

---

**From:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Sent:** Thursday, January 19, 2023 3:00 PM
**To:** Canter, Jacob <JCanter@crowell.com>; Barsanti, Vanessa <vanessa.barsanti@kirkland.com>
**Cc:** Hughes, Dalton <DHughes@crowell.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>; Barsanti, Vanessa <vanessa.barsanti@kirkland.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

External Email

Jacob -- In response to your questions below.

We intend to produce all documents and communications as requested, subject to our proposal, which, as you note, we are aiming to provide as quickly as possible.

1

You have accurately stated our discussion on Thomson Reuters' temporal objection.  We are unavailable for a final meet and confer on Monday but can make Tuesday morning work.  If ROSS identifies specific requests for which it believes it needs a broader temporal scope of production, please share in advance so we can evaluate the request beforehand.

Our believe that our proposal will resolve most, if not all, of the remaining disputes about RFP 223, 225-26, 227, and 231.  The proposal will identify which RFPs Thomson Reuters is responding to, and we can address any remaining disputes on Wednesday.

Thanks,
Cameron

**Cameron Ginder**
_____

KIRKLAND & ELLIS LLP
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 3757  **M** +1 260 414 9744
**F** +1 312 862 2200

cameron.ginder@kirkland.com

_____

**From:** Canter, Jacob <JCanter@crowell.com>
**Sent:** Thursday, January 19, 2023 12:41 PM
**To:** Ginder, Cameron <cameron.ginder@kirkland.com>; Barsanti, Vanessa <vanessa.barsanti@kirkland.com>
**Cc:** Hughes, Dalton <DHughes@crowell.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>; Barsanti, Vanessa <vanessa.barsanti@kirkland.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

I am writing to memorialize our phone conversation and to ask questions regarding the conversation.

During the conversation you stated that Plaintiffs' position with regard to Request Nos. 186, 196,197, 199-202, 203-204, 209, 214-215, 224, 188-189, 191, 195, 205, 208, and 219-220 has changed. You stated that Plaintiffs will no longer only produce documents "sufficient to show" the information requested. However, we are uncertain what that means you will be producing.  Will you be producing all documents in response to the requests as drafted so that, as an example, the documents include both documents and communications related to strategies and/or plans for the sale, distribution, and license, of the Westlaw platform, search tools, public law database, and legal search platforms (*see* Request Nos. 199-202).  Or, is the plan to produce some smaller subset, such as "business plans for the sale, distribution, or license of the Westlaw Platform" (see R&Os to Request Nos. 199-202)?  If it is the latter, then we will proceed to raise the issue with the court.

During the conversation you also stated that Plaintiffs stand on their temporal limitation objections, although you agreed to discuss this as to each request. If we do not have resolution on the above dispute then we will move forward with seeking leave from the court on both the above dispute and the temporal limitations dispute. However, if we have resolution on the above dispute then we request a final conferral to discuss the temporal limits for particular document requests Monday.

We did not discuss the final two disputes related to RFP Nos. 223, 225-226, 227 and RFP No. 231. I assume that your positions on these requests are unchanged.

Finally, you stated that before next Wednesday Plaintiffs would provide ROSS with a list of proposed search terms and custodians, and that we can discuss those on Wednesday at 10:30 AM CT.

**Jacob Canter**
Pronouns: he/him/his
Crowell & Moring LLP
jcanter@crowell.com
+1.415.365.7210 direct | +1.415.385.3716 mobile

---

**From:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Sent:** Thursday, January 19, 2023 9:44 AM
**To:** Canter, Jacob <JCanter@crowell.com>
**Cc:** Hughes, Dalton <DHughes@crowell.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>; Barsanti, Vanessa <vanessa.barsanti@kirkland.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

External Email

Jacob - We have the draft joint letter. Do you have 10 minutes to discuss between 10-11CT?

Thanks,
Cameron

**Cameron Ginder**

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 3757  **M** +1 260 414 9744
**F** +1 312 862 2200

cameron.ginder@kirkland.com

---

**From:** Canter, Jacob <JCanter@crowell.com>
**Sent:** Wednesday, January 18, 2023 3:00 PM
**To:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Cc:** Hughes, Dalton <DHughes@crowell.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

Cameron, I am writing because we inadvertently omitted RFP Nos. 196 and 197 from the list of requests where a dispute remains about the metes and bounds of Plaintiffs' offer (#2). We are writing to confirm that our dispute regarding these requests is also final.

Also, attached is the joint letter raising these disputes with the Court. Once you approve we will file. Kind regards,

**Jacob Canter**
Pronouns: he/him/his

Crowell & Moring LLP
jcanter@crowell.com
+1.415.365.7210 direct  |  +1.415.385.3716 mobile

---

**From:** Canter, Jacob <JCanter@crowell.com>
**Sent:** Friday, January 13, 2023 8:52 PM
**To:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Cc:** Hughes, Dalton <DHughes@crowell.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

Cameron,

 We write to memorialize the material we agreed on and to also memorialize the disputes that remain.  As we discussed on the call, for those disputes that remain, there is an impasse and our conferral constituted a final conferral, making these disputes appropriate for court intervention.

**Topics on which we agree**
1. **RFP No. 187.**  There is no dispute because Plaintiffs also agree to produce documents sufficient to show the costs of offering Westlaw to law students as they are kept in the ordinary course of business. Thank you.
2. **RFP No. 222.**  There is no dispute because Plaintiffs also agree to produce the terms of service for documents from the governmental entities that are published on the platform.  Thank you.
3. **RFP No. 210.**  There is no dispute because Plaintiffs clarified that they have accepted ROSS' definition of competitors and also agree to produce agreements with competitors related to both licenses and potential licenses for the platform, database, and search tools, and also for material that is within the databases and search tools. Thank you.

**Topics where disputes remain**
1. **Temporal limitation on all requests.**  It is Plaintiffs' position that the temporal limitation for all documents and communications should be January 1, 2015, except to the extent for "documents [and communications] sufficient to show any business plans, products, and licenses related to its public law database separate from any search technology."  For this latter category, the temporal limitation will be January 1, 1990.  It is Plaintiffs' position that a different temporal limit is overly burdensome and would lead to the production of irrelevant documents.  Also, it is Plaintiffs' position that the January 2015 limitation is appropriate because ROSS started in January 2015.  ROSS disagrees that when ROSS started is an appropriate reason to limit discovery on Westlaw's conduct.  ROSS has stated that it is Plaintiffs' burden to demonstrate in specific terms for each request why no temporal limitation is improper.  For example, business plans and communications related to the decision to develop a single platform that includes both a public law database and tools which allows users to search through the database would be relevant to the tying claim but would not be produced if they are from before 2015. We offered you the opportunity to provide a specific reason why a specific temporal limit should be in place for each of the document requests, which you declined to do.  ROSS has also stated, citing supporting law, that the temporal limitations Plaintiffs proposal would cause documents relevant to the tying and UCL claims to not be produced.  And ROSS has identified documents already produced by Plaintiffs which reflect that documents from before January 1, 1990, would be responsive and relevant. This dispute requires court intervention to resolve.
2. **RFP Nos. 186, 199-202, 203-204, 209, 214-215, 224, 188-189, 191, 195, 205, 208, and 219-220.**  It is Plaintiffs' position that the metes and bounds of Plaintiffs' offers in response to these requests are clear and that they do not exclude any relevant materials.  ROSS disagrees.  ROSS has identified with specificity why, with each request, it is unclear what material is excluded and for what reason it would be excluded.  *See* Dec 29 Letter, at 2-9; Jan

4

12 Letter, at 3-5.  For example, at the conferral today we again brought up your offer to produce a "request sufficient to show business plans" in response to RFPs 199-202.  We stated that it is unclear whether this request includes or excludes drafts, communications about the plan, memorandum and analyses of the plan, and other materials which reflect reactions to the plan and you were unable to articulate a clear answer.  ROSS has also stated, citing case law, that the language Plaintiffs' use provide an opportunity for cherry-picking. Dec 29 Letter, at 2-4. This dispute requires court intervention to resolve.

3. **RFP Nos. 223, 225-226, 227.**  In response to these requests, Plaintiffs agree to "produce documents sufficient to show its process for deciding what opinions to (1) publish in official print reporters and (2) include online."  Plaintiffs state that the request requires Plaintiffs to produce no additional material. ROSS contends that these requests also require Plaintiffs to produce materials related to deciding whether or not to publish collections of judicial opinions in paper-format, such as in a hard copy book. Dec 29 Letter, at 12-13, 14.  This dispute requires court intervention to resolve.

4. **RFP No. 231.**  This request seeks documents related to "each instance in which any entity requests a change to" Plaintiffs terms of service for access to the Westlaw Platform, including all instances in which any entity did not agree to the terms of service and were not granted access to the Westlaw Platform. At the Dec 1 and 2 conferral, Plaintiffs asked ROSS to identify specific provisions from its terms of service, which ROSS did. Dec 29 Letter, at 14-15. Plaintiffs then instead said that they would produce documents "sufficient to show any request to change the Westlaw terms and conditions in a way that would allow the requesting party to use Thomson Reuters' public law database separate from search technology."  Plaintiffs contend that this offer is adequate.  ROSS disagrees because materials that are relevant and would be produced in response to a request for instances in which an entity did not agree to how West defines "Data" in Section 1.a of its terms of service would be excluded based on Plaintiffs' counteroffer.  There is thus a dispute which requires court intervention to resolve.

We intend to notify the Court on Tuesday, January 17, 2023, of the disputes that require intervention to resolve.  We will provide you with a draft letter to the Court on Monday.  Kind regards,

**Jacob Canter**
Pronouns: he/him/his
Crowell & Moring LLP
jcanter@crowell.com
+1.415.365.7210 direct  |  +1.415.385.3716 mobile

---

**From:** Canter, Jacob <JCanter@crowell.com>
**Sent:** Thursday, January 12, 2023 1:08 PM
**To:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Cc:** Hughes, Dalton <DHughes@crowell.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

Cameron,

Please see attached. We look forward to tomorrow's call. Kind regards,

**Jacob Canter**
Pronouns: he/him/his
Crowell & Moring LLP

jcanter@crowell.com
+1.415.365.7210 direct | +1.415.385.3716 mobile

---

**From:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Sent:** Tuesday, January 10, 2023 5:49 PM
**To:** Canter, Jacob <JCanter@crowell.com>
**Cc:** Hughes, Dalton <DHughes@crowell.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross
<thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team
<Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>;
*bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

External Email

Jacob -- Attached are our proposed revisions to the joint stipulation.  If this is acceptable, you have our permission to file
with the court.  We do not agree to file the stipulation as originally drafted.

Cameron

**Cameron Ginder**

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 3757  **M** +1 260 414 9744
**F** +1 312 862 2200

cameron.ginder@kirkland.com

---

**From:** Canter, Jacob <JCanter@crowell.com>
**Sent:** Tuesday, January 10, 2023 5:26 PM
**To:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Cc:** Hughes, Dalton <DHughes@crowell.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross
<thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team
<Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>;
*bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

Hi Cameron, please see attached a draft stipulation.  Please let us know if we have your approval to file with the Court.

Kind regards,

**Jacob Canter**
Pronouns: he/him/his
Crowell & Moring LLP
jcanter@crowell.com
+1.415.365.7210 direct | +1.415.385.3716 mobile

---

**From:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Sent:** Tuesday, January 10, 2023 1:04 PM

**To:** Canter, Jacob <JCanter@crowell.com>
**Cc:** Hughes, Dalton <DHughes@crowell.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

External Email

Thanks, Jacob.  We'll take a look at the stip when you send it across.

We can meet and confer on Friday 9:30-10:30PT on Friday but have a hard stop at 10:30PT that cannot be moved.  If ROSS still believes a 90-minute meet and confer is necessary, we can look at next week.

**Cameron Ginder**

KIRKLAND & ELLIS LLP
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 3757  **M** +1 260 414 9744
**F** +1 312 862 2200

cameron.ginder@kirkland.com

---

**From:** Canter, Jacob <JCanter@crowell.com>
**Sent:** Tuesday, January 10, 2023 12:51 PM
**To:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Cc:** Hughes, Dalton <DHughes@crowell.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

Cameron,

Thank you for the email.  We agree with your counterproposal and will prepare a joint stipulation, which we will send to you later today.

Also, we are available for a conferral regarding the discovery requests on this Friday, January 13.  We are available at any time between 9:30 AM PT and 11:00 AM PT.  Please let us know a time that works for you within that window.

**Jacob Canter**
Pronouns: he/him/his
Crowell & Moring LLP
jcanter@crowell.com
+1.415.365.7210 direct  |  +1.415.385.3716 mobile

---

**From:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Sent:** Tuesday, January 10, 2023 8:02 AM
**To:** Canter, Jacob <JCanter@crowell.com>
**Cc:** Hughes, Dalton <DHughes@crowell.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team

<Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>;
*bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

External Email

Jacob -- See below for Thomson Reuters' counterproposal on a schedule extension.  Also, attached is Thomson Reuters' response to ROSS's December 29 letter.

| Task | Current Deadline | ROSS Proposal | TR Counter |
|------|------------------|---------------|------------|
| Substantial Completion | January 12, 2023 | April 6, 2023 | February 23, 2023 |
| End of Fact Discovery | March 30, 2023 | June 22, 2023 | May 11, 2023 |
| Expert Reports | April 27, 2023 | July 20, 2023 | May 25, 2023 |
| Rebuttal Reports | May 25, 2023 | August 17, 2023 | June 22, 2023 |
| Reply Reports | June 22, 2023 | September 14, 2023 | July 20, 2023 |
| End of Expert Discovery | July 13, 2023 | October 5, 2023 | August 3, 2023 |
| Opening SJ Briefs | August 17, 2023 | November 9, 2023 | August 31, 2023 |
| SJ Opposition Briefs | September 14, 2023 | December 7, 2023 | September 28, 2023 |
| SJ Reply Briefs | October 12, 2023 | January 4, 2024 | October 26, 2023 |

Cameron

**Cameron Ginder**

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 3757  **M** +1 260 414 9744
**F** +1 312 862 2200

cameron.ginder@kirkland.com

**From:** Canter, Jacob <JCanter@crowell.com>
**Sent:** Monday, January 9, 2023 6:47 PM
**To:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Cc:** Hughes, Dalton <DHughes@crowell.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>;
*bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

Thank you, Cameron.  3:30 PT / 5:30 CT works on our end.  I will send an invite to you and Miranda and to your local counsel.  Can you please confirm that your local counsel will attend in case this is an opposed request?

**Jacob Canter**
Pronouns: he/him/his
Crowell & Moring LLP

jcanter@crowell.com
+1.415.365.7210 direct  |  +1.415.385.3716 mobile

---

**From:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Sent:** Monday, January 9, 2023 3:24 PM
**To:** Canter, Jacob <JCanter@crowell.com>
**Cc:** Hughes, Dalton <DHughes@crowell.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** Re: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

External Email

I can be free before 2, from 3-4, and after 5ct.

**Cameron Ginder**

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 3757  **M** +1 260 414 9744
**F** +1 312 862 2200

cameron.ginder@kirkland.com

> On Jan 9, 2023, at 5:15 PM, Canter, Jacob <JCanter@crowell.com> wrote:
>
> Thank you for the response, Cameron.  Given that the substantial completion deadline is Thurs., Jan 12, please let us know your availability to participate in a conferral (if necessary) on Tues., Jan 10, so we have adequate time to contact the court with the joint or opposed request.

**Jacob Canter**
Pronouns: he/him/his
Crowell & Moring LLP
jcanter@crowell.com
+1.415.365.7210 direct  |  +1.415.385.3716 mobile

---

**From:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Sent:** Monday, January 9, 2023 2:34 PM
**To:** Canter, Jacob <JCanter@crowell.com>; Hughes, Dalton <DHughes@crowell.com>
**Cc:** Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

External Email

Jacob - We will have a response on the schedule by mid-day tomorrow. We are also preparing a response to ROSS's most recent letter and can schedule a meet and confer then.

Cameron

**Cameron Ginder**

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 3757  **M** +1 260 414 9744
**F** +1 312 862 2200

cameron.ginder@kirkland.com

---

**From:** Canter, Jacob <JCanter@crowell.com>
**Sent:** Friday, January 6, 2023 2:42 PM
**To:** Ginder, Cameron <cameron.ginder@kirkland.com>; Hughes, Dalton <DHughes@crowell.com>
**Cc:** Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

Cameron,

Thank you for the response. Please respond to the scheduling proposal by no later than **Monday January 9 at 11 PT** so that we can have enough time to confer and contact the court with either a joint or opposed request.

Also, we have not received a response to the letter regarding Plaintiffs' responses to RFPs 182-233, which I sent on December 29, 2022. Please also let us know when you are available for a 90-minute final conferral in regards to the letter. We have availability at the following times:

1. Monday Jan 9, 1:30-3 PT
2. Tuesday Jan 10, 2-4 PT
3. Wednesday Jan 11, 1-3 PT

Kind regards,

**Jacob Canter**
Pronouns: he/him/his
Crowell & Moring LLP
jcanter@crowell.com
+1.415.365.7210 direct  |  +1.415.385.3716 mobile

---

**From:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Sent:** Thursday, January 5, 2023 12:36 PM
**To:** Canter, Jacob <JCanter@crowell.com>; Hughes, Dalton <DHughes@crowell.com>
**Cc:** Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>;

*bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

External Email

Jacob - We are considering your proposal and will get you an answer early next week.  We can confer, if needed, at that time.

Cameron

**Cameron Ginder**

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 3757   **M** +1 260 414 9744
**F** +1 312 862 2200

cameron.ginder@kirkland.com

---

**From:** Canter, Jacob <JCanter@crowell.com>
**Sent:** Thursday, January 5, 2023 12:02 PM
**To:** Ginder, Cameron <cameron.ginder@kirkland.com>; Hughes, Dalton <DHughes@crowell.com>
**Cc:** Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

Hello Cameron and Miranda,

Please let us know if you agree to the proposed schedule or would like to discuss tomorrow. Because both sides still have significant outstanding discovery issues to resolve, we think this extension makes sense.   The letter is reattached.

Kind regards,

**Jacob Canter**
Pronouns: he/him/his
Crowell & Moring LLP
jcanter@crowell.com
+1.415.365.7210 direct   |   +1.415.385.3716 mobile

---

**From:** Canter, Jacob <JCanter@crowell.com>
**Sent:** Friday, December 30, 2022 12:23 PM
**To:** Ginder, Cameron <cameron.ginder@kirkland.com>; Hughes, Dalton <DHughes@crowell.com>
**Cc:** Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

Hello Cameron and Miranda,

Please see the attached letter.  Kind regards,


**Jacob Canter**
Pronouns: he/him/his
Crowell & Moring LLP
jcanter@crowell.com
+1.415.365.7210 direct  |  +1.415.385.3716 mobile

---

**From:** Canter, Jacob <JCanter@crowell.com>
**Sent:** Thursday, December 29, 2022 6:26 PM
**To:** Ginder, Cameron <cameron.ginder@kirkland.com>; Hughes, Dalton <DHughes@crowell.com>
**Cc:** Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

Hello Cameron and Miranda,

Please see the attached letter.  Kind regards,


**Jacob Canter**
Pronouns: he/him/his
Crowell & Moring LLP
jcanter@crowell.com
+1.415.365.7210 direct  |  +1.415.385.3716 mobile

---

**From:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Sent:** Wednesday, November 23, 2022 3:36 PM
**To:** Hughes, Dalton <DHughes@crowell.com>
**Cc:** Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** Re: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

External Email

Thanks, Dalton. Thursday works.

Have a nice Thanksgiving.

**Cameron Ginder**

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 3757  **M** +1 260 414 9744
**F** +1 312 862 2200

cameron.ginder@kirkland.com

On Nov 23, 2022, at 3:05 PM, Hughes, Dalton <DHughes@crowell.com> wrote:

Cameron,

We are available from 11:30-2:30 PT Thursday Dec. 1st, and 10:30-12 PT Friday Dec. 2nd.

Thank you,
Dalton

**Dalton Kyle Hughes**
Pronouns: he/him/his
Crowell & Moring LLP
dhughes@crowell.com
+1.312.840.3253 direct   |   +1.615.426.7320 mobile

---

**From:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Sent:** Tuesday, November 22, 2022 8:22 PM
**To:** Hughes, Dalton <DHughes@crowell.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com
**Cc:** ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

External Email

Dalton/Joachim - Please see attached.

We are not available to meet and confer at the times you mentioned below.  Please let us know your availability on Thursday and Friday of next week.

Thanks,
Cameron

**Cameron Ginder**

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 3757  **M** +1 260 414 9744
**F** +1 312 862 2200

cameron.ginder@kirkland.com

**From:** Hughes, Dalton <DHughes@crowell.com>
**Sent:** Monday, November 21, 2022 2:06 PM
**To:** Ginder, Cameron <cameron.ginder@kirkland.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com
**Cc:** ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

Cameron,

We have still not received a response to our November 7, 2022 letter regarding Plaintiffs' responses to our RFPs. Please provide your availability to meet and confer on Monday or Tuesday of next week. We are available at 10:30 AM PT, 2:00 PM PT, and 4:00 PM PT on Monday, November 28; and 9:30 AM PT, 12:00 PM PT, and 3:00 PM PT on Tuesday, November 29.

Best regards,
Dalton


**Dalton Kyle Hughes**
Pronouns: he/him/his
Crowell & Moring LLP
dhughes@crowell.com
+1.312.840.3253 direct  |  +1.615.426.7320 mobile

**From:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Sent:** Tuesday, November 15, 2022 8:22 AM
**To:** Hughes, Dalton <DHughes@crowell.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com
**Cc:** ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

External Email

Dalton - We are preparing a written response to your letter.

Thanks,
Cameron

**Cameron Ginder**

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 3757  **M** +1 260 414 9744
**F** +1 312 862 2200

cameron.ginder@kirkland.com

---

**From:** Hughes, Dalton <DHughes@crowell.com>
**Sent:** Monday, November 14, 2022 3:05 PM
**To:** Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com
**Cc:** ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

Counsel,

Please let us know Plaintiffs' positions on the RFPs in the letter sent below. If Plaintiffs will not produce the documents as requested, then let us know your availability to meet and confer as to these requests.

Best regards,
Dalton

**Dalton Kyle Hughes**
Pronouns: he/him/his
Crowell & Moring LLP
dhughes@crowell.com
+1.312.840.3253 direct  |  +1.615.426.7320 mobile

---

**From:** Hughes, Dalton <DHughes@crowell.com>
**Sent:** Monday, November 7, 2022 2:58 PM
**To:** Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com
**Cc:** ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

Counsel,

Please see the attached letter.

Best regards,
Dalton

**Dalton Kyle Hughes**
Pronouns: he/him/his
dhughes@crowell.com

+1.312.840.3253 direct   |   +1.615.426.7320 mobile

Crowell & Moring LLP
455 North Cityfront Plaza Drive
Suite 3600
Chicago, IL 60611

# Crowell

**Collaboration Powers Success**

crowell.com
Trade Secrets Trends Blog

This message may contain privileged and confidential information. IF IT WAS SENT TO YOU BY MISTAKE, DO NOT READ IT. Instead, please notify the sender (or postmaster@crowell.com) by reply e-mail, and delete this e-mail. Unauthorized dissemination, forwarding or copying of this e-mail is strictly prohibited.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of

this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

# EXHIBIT N



| | Crowell & Moring LLP |
|---|---|
| **Shira Liu** | 3 Park Plaza |
| SLiu@crowell.com | 20th Floor |
| (949) 798-1325  direct | Irvine, CA 92614 |
| | +1.949.263.8400  main |
| | +1.949.263.8414  fax |

February 7, 2023

*VIA EMAIL*

Vanessa Barsanti
KIRLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
vanessa.barsanti@kirkland.com

Re:    *Thomson Reuters Enterprise Centre GMBH et al. v. ROSS Intelligence Inc.*
        Case No. 20-613-LPS (D. Del.)

Dear Ms. Barsanti:

I write regarding Plaintiffs' search term and custodian proposal.  As you know, discovery in this case is ongoing and ROSS has not yet received any documents in response to its counterclaim RFPs.  For example, ROSS has not received any organizational charts despite Plaintiffs' agreement on October 20, 2022 to "produce a current organizational chart for Thomson Reuters and West."  Plaintiffs' R&OS to ROSS's First Set of Counterclaim RFPs at No. 228. Therefore, ROSS reserves the right to adjust the positions communicated in this letter as discovery continues and ROSS learns additional facts.

1. **Search Terms**

In the attached excel document and corresponding PDF, I include ROSS's counterproposals for the search strings you proposed on February 1.  These are listed in Column K, which we labeled "Counterproposal."  The blank entries in Column K for strings 2, 3, 8, 10, and 17 indicate that those are acceptable to us.  In cells K32 and K33 we have also proposed additional search terms for RFP 231.

Our responses in Column K assume that the hits for each string will be reviewed for all RFPs (other than the two we propose for RFP 231).  If that assumption is not accurate, we request to meet and confer on which RFPs will be reviewed for which string and reserve the right to further edit these proposals.

2. **Unaddressed RFPs**

It appears to ROSS that the February 1 search string proposal does not address the following RFPs: Nos. 182-85, 187, 190, 192, 193-94, 198, 206-07, 210-13, 216-18, 221-22, 229-30, 232-

 Crowell

Vanessa Barsanti
*Thomson Reuters v. ROSS*
February 7, 2023

33.  Please confirm how Plaintiffs intend to identify documents responsive to each of these RFPs.

### 3.  Custodians

On January 25, 2023 you provided information regarding the eight custodians you propose to include.[1]  These eight are insufficient for Plaintiffs to respond to the RFPs addressed by your proposed search terms.[2]

*First*, RFP Nos. 188[3], 189[4], 191[5],  195[6], and 208[7] seek documents and communications related to how pricing decisions regarding the Westlaw platform and products within the platform are made, including communications directly with customers and potential customers. However, based on the titles of the custodians proposed it does not appear that the eight current custodians are primarily responsible for communications directly with customers or potential customers.  We know from documents which have been produced in this litigation that "Account Managers," (see e.g., TR-0001764) "Inside Account Managers," (see e.g., TR-0002010) and "Senior Account Executives" (see e.g., TR-0001933) typically communicate directly with customers, and none of the proposed custodians hold these titles.  If Plaintiffs store communications with customers in a database, running the searches in this database may also contain responsive documents, although we suspect that this database would not be comprehensive enough to capture internal communications related to those external communications.  Moreover, documents produced in this litigation indicate that "Account Executives" have authority over pricing offers that can be made to customers.  *See* TR-0001788. Other documents produced in this litigation reflect the same—for example, the Sales Policies and Procedures document which Plaintiffs produced indicates that "Sales Professionals" may make decisions about pricing based on the "promotion document," and should consider factors such as

---

[1] The eight proposed are: Andrew Martens, Erik Lindberg, Mark Hoffman, Christine Post, Dustin Cripe, Thomas Leighton, and Mike Dahn.

[2] As noted above, Plaintiffs have not proposed terms for many of the RFPs for which it has agreed to produce documents.  This Section responds only to Plaintiffs' February 1, 2023 proposal regarding RFP Nos. 186, 188-89, 191, 195-97, 199-205, 208-09, 214-15, 219-20, 223-27, and 231.

[3] ALL DOCUMENTS and COMMUNICATIONS RELATED TO pricing the WESTLAW PLATFORM for PERSONS to license, INCLUDING plans, strategies, manuals, policies, analyses, memoranda, price lists, and guides for pricing the WESTLAW PLATFORM, including documents related to pricing by CUSTOMER SEGMENT and documents related to pricing decision-making.

[4] ALL DOCUMENTS and COMMUNICATIONS RELATED TO pricing the WESTLAW PLATFORM for PERSONS to license, INCLUDING documents related to pricing by CUSTOMER SEGMENT.

[5] ALL DOCUMENTS and COMMUNICATIONS RELATED TO the DISCOUNTS that PERSONS can or do receive when licensing the WESTLAW PLATFORM, including broken out by CUSTOMER SEGMENT.

[6] "ALL COMMUNICATIONS with customers or potential customers RELATED TO the terms of YOUR AGREEMENTS, including pricing."

[7] ALL DOCUMENTS analyzing responses by YOUR customers, including by CUSTOMER SEGMENT, to actual or potential changes in pricing to any element of the WESTLAW PLATFORM.



Vanessa Barsanti
*Thomson Reuters v. ROSS*
February 7, 2023

"discount maximums" when making offers.  *See* TR-0908708 at 5.  None of the custodians that Plaintiffs have chosen hold Account Executive positions or otherwise appear to be "Sales Professionals" and thus it appears that none would be a primary source of documents or communications related to the "on the ground" decision-making about subscription offers.  Therefore, we request that Plaintiffs add new custodians and a comprehensive customer communications database, if applicable, for the following search strings: 001, 016, 017, 018, 019.

**Second**, communications directly with customers or potential customers are responsive to RFP No. 231.[8]  However, again, it does not appear that the proposed custodians are primarily responsible for communications directly with customers or potential customers – we expect that this would be within the roles of "Account Managers," "Inside Account Managers, and "Senior Account Executives," and that a customer communications database may also contain responsive documents.  Therefore, we request that Plaintiffs add new custodians and a comprehensive customer communications database, if applicable, for the following search strings: 010, 011, 022, as well as the two additional search strings proposed by ROSS for RFP 231.

**Third**, RFP Nos. 196 and 197 seek documents and communications related to customers' opinions or preferences regarding the Westlaw platform and the products which make up the platform.  Based on documents which have been produced in this litigation, we know that there are "team" and "support" email lists that contain information about the preferences, opinions, or requests of customers.  *See e.g.*, TR-0001887 (reflecting the "Corporate Support Team" email list); TR-0001901 (same); TR-0002573 (same); TR-0002406 (reflecting the "Customer Service" email list); TR-0002626 (reflecting the "Legal Customer Support" email list).  From the documents that we have reviewed, we understand that personnel who directly communicate with customers or potential customers will sometimes send questions to these general email lists to have questions answered.  None of the custodians that Plaintiffs have chosen include the team or support email lists.  There may also be a central file for surveys, market studies or research reports.  Therefore, we request that Plaintiffs add new custodians to cover the team and/or support email lists for Westlaw customers as well as any relevant central files for the following strings: 001.

---

[8] DOCUMENTS RELATED TO each instance in which any entity requested a change to the TERMS OF SERVICES YOU require for access to the WESTLAW PLATFORM, including all instances in which any entity did not agree to the TERMS OF SERVICES and were not granted access to the WESTLAW PLATFORM.



Vanessa Barsanti
*Thomson Reuters v. ROSS*
February 7, 2023

**Fourth**, RFP Nos. 219[9] and 227[10] seek documents related to obtaining judicial opinions. Based on the titles of the custodians proposed it does not appear that the eight current custodians are primarily responsible for responsive documents.  If Plaintiffs store transmissions from the "Data Capture Site" pictured below in a database we believe that database would also contain responsive information.



Therefore, we request that Plaintiffs add new custodians which would possess documents and communications related to making decisions about subscription offers available for customers and potential customers as well as the database referenced above for the following strings: 009, 020.

**Time Period**

On January 24, 2023, my colleague Jacob Canter provided you with a document entitled "ROSS's Temporal Limit Counterproposals for the First Set of Counterclaim Requests" that included the RFPs for which we propose a search of documents from before 2015 within Plaintiffs' custody and control as well as edits to Plaintiffs' proposal for pre-2015 documents. During our January 25 meet and confer, you indicated that you would respond but that your client was out of the country that week.  We have not heard any response since.  Please be prepared for a final position at our next meet and confer, including substantiating any assertions of burden.

*   *   *

---

[9] ALL DOCUMENTS and COMMUNICATIONS RELATING TO acquiring, licensing, or obtaining PUBLIC LAW DATABASES or the content therein, such as judicial opinions, INCLUDING AGREEMENTS and COMMUNICATIONS with the licensors or providers of such content
[10] ALL DOCUMENTS and COMMUNICATIONS RELATED TO YOUR "Opinion Submission Guidelines" that are available to be accessed at the following website address: https://legal.thomsonreuters.com/en/solutions/government/court-opinion-submission-guidelines.

4

**Crowell**

Vanessa Barsanti
*Thomson Reuters v. ROSS*
February 7, 2023

ROSS looks forward to continuing the meet and confer process with Plaintiffs.  Please let us know if you are available tomorrow at 11:30-1:30 PT or Thursday 12-3 PT to discuss these issues.

Sincerely,

/s/ *Shira Liu*
Shira Liu

Enclosure

5

# EXHIBIT O

2.7.23 ROSS Counterproposal to 2.1.23 Plaintiff Proposal

| Custodial Scope (ESI) | Search Scope | Counterproposal |
|---|---|---|
| | **Date Range:** 01/01/2015 to 12/31/2022<br>**Custodians:** Crips, Dustin; Dahn, Mike; Hoffman, Mark; Leighton, Thomas; Lindberg, Erik; Martens, Andrew; Post, Christine; You, Bridgett | See accompanying letter. |

| Search Results - 1/25 vs. 1/31 | 25-Jan | 21-Jan |
|---|---|---|
| Total Documents with Hits | 690,317 | 277,689 |
| Total Documents with Hits + Family | 1,055,490 | 615,000 |

| ID | Search Terms | 01/25/23 Proposed Terms | | | 01/31/23 Revised Terms | | | Search Terms | ID | Counterproposal |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Docs with Hits | Docs with Hits + Family | Unique Hits | Docs with Hits | Docs with Hits + Family | Unique Hits | | | |
| 1/25 - 001 | Market* w10 (research* OR insight* OR study* OR plan* OR survey* OR report* OR stud*) | 107,076 | 301,917 | 3,247 | 17,675 | 129,205 | 3,743 | (Market* w7 (research* OR analys* OR plan* OR survey* OR report* OR stud*)) AND ((Lexis* OR Fastcase OR Google OR Casemaker OR Caselext OR "Wolters Kluwer" OR Bloomberg OR Jurisearch OR ROSS) or ((customer or consumer) w7 (demand or preference))) | 1/31 - 001 | (Market* OR consumer* OR research* w3 (research* OR insight* OR analys* OR plan* OR survey* OR report* OR intel* OR overview OR investigat* OR compar* OR info*)) OR [name of any companies used for such reports] |
| 1/25 - 002 | (Westlaw or WL OR legal* OR customer* OR segment* OR licens*) w10 (strateg* OR plan*) | 132,019 | 362,970 | 37,423 | 59,726 | 187,646 | 25,943 | ((Westlaw or WL OR customer* OR segment* OR licens*) w5 (strateg* OR plan*)) | 1/31 - 002 | |
| 1/25 - 003 | (Westlaw OR WL OR product*) w10 (management* OR development*) | 71,521 | 231,510 | 19,619 | | Removed | | | 1/31 - 003 | |
| 1/25 - 004 | (Westlaw OR WL) w10 (sale* OR market* OR advertis* OR distribut*) | 67,638 | 177,615 | 4,598 | 47,731 | 130,366 | 18,126 | (Westlaw OR WL) w3 (sale* OR market* OR advertis* OR distribut* OR sell* OR Licens* OR acqui*) | 1/31 - 004 | (Westlaw OR WL) w3 (sale* OR market* OR advertis* OR distribut* OR sell* OR Licens* OR acqui*) |
| 1/25 - 005 | (market* OR compet* OR Lexis* OR Fastcase OR Google OR Casemaker OR Caselext OR "Wolters Kluwer" OR Bloomberg OR Jurisearch OR ROSS) w15 (survey OR report* OR stud* OR analy* OR investigat* OR insight* OR research* OR compar* OR info*) | 204,620 | 431,090 | 22,599 | 31,804 | 166,455 | 14,355 | (compet* OR Lexis* OR Fastcase OR Google OR Casemaker OR "Wolters Kluwer" OR Bloomberg OR Jurisearch OR ROSS) w10 (survey* OR report* OR overview OR analy* OR investigat* OR insight* OR research* OR compar* OR info*) | 1/31 - 005 | (compet* OR Lexis* OR Fastcase OR Google OR Casemaker OR Caselext OR "Wolters Kluwer" OR Bloomberg OR Jurisearch OR ROSS) w10 (survey* OR report* OR overview OR analy* OR investigat* OR insight* OR research* OR compar* OR info*) |
| 1/25 - 006 | SWAT OR Indigo | 21,098 | 73,842 | 8,964 | 3,299 | 7,472 | 1,788 | ("Westlaw Indigo" OR "WL Indigo" OR "Project Indigo" OR "Westlaw AI" OR "WL AI" | 1/31 - 006 | (We would like to meet and confer re the terms Indigo and SWAT before we respond to this proposal.) |
| 1/25 - 007 | (licens* OR contract* OR deal OR negotiat*) w15 (compet* OR Lexis* OR Fastcase OR Google OR Casemaker OR Caselext OR "Wolters Kluwer" OR Bloomberg OR Jurisearch OR ROSS) | 16,778 | 87,376 | 1,412 | 8,624 | 55,942 | 2,256 | (licens* OR contract* OR deal OR negotiat*) w7 (compet* OR Lexis* OR Fastcase OR Google OR Casemaker OR Caselext OR "Wolters Kluwer" OR Bloomberg OR Jurisearch OR ROSS) | 1/31 - 007 | (licens* OR contract* OR deal OR negotiat*) w7 (compet* OR Lexis* OR Fastcase OR Google OR Casemaker OR Caselext OR "Wolters Kluwer" OR Bloomberg OR Jurisearch OR ROSS) |
| 1/25 - 008 | (licens* OR contract* OR deal OR negotiat*) w15 ROSS | 1,079 | 4,362 | 0 | 1,079 | 4,362 | 140 | (licens* OR contract* OR deal OR negotiat*) w7 ROSS | 1/31 - 008 | |
| 1/25 - 009 | (Case* OR statut* OR regulat* OR data* OR API OR "public law" OR content*) w15 (sale* OR sell* OR license OR market* OR acquir* OR distribut*) | 144,999 | 357,468 | 37,375 | 25,249 | 85,596 | 7,996 | (Case* OR statut* OR regulat* OR data* OR API OR "public law" OR content*) w7 (sale* OR sell* OR license OR market* OR acquir* OR distribut*) | 1/31 - 009 | (Case* OR statut* OR regulat* OR data* OR API OR "public law" OR content* OR caselaw OR (case w2 law) OR opinion*) w5 (sale* OR sell* OR license OR market* OR acquir* OR distribut* OR online OR web* OR [internal names for online as opposed to print product, if applicable]) |
| 1/25 - 010 | excessive w/3 (use OR usage OR download*) | 1,280 | 5,922 | 192 | 1,280 | 5,922 | 382 | excessive w/3 (use OR usage OR download*) | 1/31 - 010 | |
| 1/25 - 011 | (download* OR use* OR reques*) w10 (case* OR statut* OR regular* OR data* OR API OR "public law" OR content OR size*) | 316,828 | 536,985 | 100,518 | 35,677 | 100,757 | 16,565 | (download* OR use* OR reques*) w7 (case* OR statut* OR regular* OR data* OR (API NOT w2 myworkday) OR "public law" OR content) | 1/31 - 011 | (download* OR use* OR reques*) w7 (case* OR statut* OR regular* OR data* OR API OR "public law" OR content) |
| 1/25 - 012 | (restrict* OR discontinu* OR impos* OR prohibit* OR negotiat* OR discontinu* OR cancel* OR terminat* OR abandon* OR drop*) w/3 (Westlaw* OR WL OR search tech* OR search tool* OR "artificial intelligence" OR AI OR NLP OR "natural language" OR "Westlaw Edge" or featur*) | 124,744 | 299,602 | 13,210 | 85,441 | 213,845 | 40,600 | (restrict* OR discontinu* OR impos* OR prohibit* OR negotiat* OR discontinu* OR cancel* OR stop* OR abandon* OR drop*) w/3 (Westlaw* OR WL OR search tech* OR search tool* OR "artificial intelligence" OR AI OR NLP OR "natural language" OR "Westlaw Edge" or featur*) | 1/31 - 012 | (restrict* OR discontinu* OR cancel* OR stop* OR abandon* OR drop* OR (phas* w/3 out)) w/3 ( Westlaw or WL or (Content or Edge OR Precision)) [Additional terms for additional features [please consider], including internal codenames or shortened phrases such as Classic or Next if that is how they are internally referenced.] |
| 1/25 - 013 | (cease* OR discontinue* OR cancel* OR stop* OR abandon* OR drop* OR (phas* w/3 out)) w/15 ("Westlaw Next" OR "Westlaw Classic") | 938 | 2,217 | 1 | 938 | 2,217 | 56 | (cease* OR discontinue* OR cancel* OR stop* OR abandon* OR drop* OR (phas* w/3 out)) w/15 ("Westlaw Next" OR "Westlaw Classic") | 1/31 - 013 | (cease* OR discontinue* OR cancel* OR stop* OR abandon* OR drop* OR (phas* w/3 out)) w/15 ( Westlaw or WL or (Content or Edge OR Precision)) |
| 1/25 - 014 | (search tech* OR Headnotes OR "Key Number System" OR KNS OR "artificial intelligence" OR AI OR "natural language" OR NLP) w/15 (sell* OR license OR market* OR acquir*) | 8,418 | 106,663 | 918 | 4,377 | 89,893 | 1,924 | (search tech* OR Headnotes OR "Key Number System" OR KNS OR "artificial intelligence" OR AI OR "natural language" OR NLP) w/5 (sell* OR license OR market* OR acquir*) | 1/31 - 014 | (search w/3 (tech* OR tool*)) OR Headnotes OR "Key Number System" OR KNS OR "artificial intelligence" OR AI OR (natural language* OR NLP) w/5 (sell* OR license* OR market* OR acqui* OR sold OR distrib* OR buy OR purchas* OR supers* OR supersed* OR superior* OR invent*)) |
| 1/25 - 015 | (strateg* OR contin* OR discontinu* OR stop* OR cancel* OR discontin* OR drop*) AND (update* OR publish* OR print* OR offer* OR sell*) AND (hardcopy OR "hard copy" OR physical OR book* OR (case OR court) w/5 reporter*)) | 55,708 | 184,446 | 10,901 | 14,351 | 69,372 | 5,299 | ((strateg* OR contin* OR discontinu* OR stop* OR cancel* OR abandon* OR drop*) AND (update* OR publish* OR print* OR offer* OR sell*) AND (hardcopy OR "hard copy" OR physical OR book* OR (case OR court) w/5 reporter*)) | 1/31 - 015 | ((strateg* OR contin* OR discontinu* OR stop* OR cancel* OR abandon* OR drop*) AND (update* OR publish* OR print* OR offer* OR sell*) AND (hardcopy OR "hard copy" OR physical OR book* OR ((case OR court) w/5 reporter*))) |
| 1/25 - 016 | (Westlaw or WL OR subscription) w/15 (pric* OR charg* OR cost* OR discount* OR negotiat* OR offer*) | 166,412 | 317,953 | 21,843 | 72,538 | 174,983 | 26,126 | (Westlaw or WL OR subscription) w5 (pric* OR charg* OR cost* OR discount* OR negotiat* OR offer*) | 1/31 - 016 | (Westlaw or WL OR subscription OR sale* OR user* OR "Research Service Agreement") w5 (pric* OR charg* OR cost* OR discount* OR negotiat* OR offer* OR promo OR promos OR promotion* OR promot*) |
| 1/25 - 017 | reta* w/3 (publisher or)? | 2,542 | 6,498 | 148 | 2,542 | 6,498 | 804 | reta* w/3 publisher* | 1/31 - 017 | |
| 1/25 - 018 | (print* OR hardcopy OR "hard copy" OR physical OR book* OR (case OR court) w/5 reporter*)) w/15 (stop* OR cease* OR chang*) | 32,226 | 96,126 | 4,368 | 18,638 | 58,348 | 4,025 | (print* OR hardcopy OR "hard copy" OR physical OR book* OR (case OR court) w/5 reporter*)) w/5 (pric* OR cost* OR chang*) | 1/31 - 018 | (print* OR hardcopy OR (hard w/2 copy*) OR physical OR book* OR ((case OR court) w/5 reporter*)) w/5 (pric* OR cost* OR chang*) |
| 1/25 - 019 | (Westlaw OR WL) AND (pric* w/10 (model* OR structure* OR guarant* OR structur*)) | 7,808 | 43,320 | 401 | 6,518 | 36,726 | 1,035 | (Westlaw OR WL) AND (pric* w/5 (model* OR structure* OR guarant* OR structur*)) | 1/31 - 019 | (Westlaw OR WL OR subscription OR user* OR (hard w/2 copy*) OR price* OR cost* w/5 (model* OR structur* OR guarant* OR structur*)) |
| 1/25 - 020 | (publish* OR publication OR submit* OR submission) w/5 (guide* OR opinion* OR decision* OR order* OR public*) | 34,634 | 100,670 | 7,168 | 12,690 | 37,760 | 5,655 | (publish* OR publication OR submit* OR submission) w/5 (guide* OR opinion* OR decision* OR order* OR public*) | 1/31 - 020 | (publish* OR publication OR submit* OR submission) w/5 (guide* OR opinion* OR decision* OR order* OR public*) |
| 1/25 - 021 | ((law student* OR law school*) w/10 (invest* OR program* OR cost* OR train* OR strateg* OR manual* OR polic*)) AND (Westlaw OR WL) | 2,326 | 19,927 | 98 | 1,609 | 15,211 | 210 | ((law student* OR law school*) w/5 (invest* OR acces* OR program* OR cost* OR train* OR strateg* OR manual* OR polic*)) AND (Westlaw OR WL) | 1/31 - 021 | ((law student* OR law school*) w/10 (invest* OR acces* OR program* OR cost* OR train* OR strateg* OR manual* OR polic*)) AND (Westlaw OR WL) [internal names for programs] |
| 1/25 - 022 | | Not Included | | | 9,239 | 33,904 | 740 | (compli* OR delimit* w/8 scrap* OR edit* OR regurgit*) W/10 (invst* OR condition* OR agreement* OR license* AND (loc*) OR me* 2) OR data w/3 (license OR copy OR downloaded OR scrape OR store OR publish OR post OR transmit OR automat* OR re-use OR distribute OR disseminate OR broadcast OR circulate OR sell OR resell)))) | 1/31 - 022 | (compli* OR delimit* w/8 scrap* OR edit* OR regurgit*) W/10 (invest* OR condition* OR agreement* OR license*) AND (loc*) OR me* 2 OR data w/3 (license OR copy OR downloaded OR scrape OR store OR publish OR post OR transmit OR automat* OR re-use OR distribute OR disseminate OR broadcast OR circulate OR sell OR resell)))) |
| | | | | | | | | | | (Copy* OR download OR scrape OR store OR publish OR post OR "transmit OR transfer OR distribute OR disseminate OR broadcast OR circulate OR "sell OR resell) w/5 data |
| | | | | | | | | | | data w/10 ((information w/3 representation*)) OR (other w/2 content w/2 avail*)) |

# EXHIBIT P

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

Vanessa Barsanti
To Call Writer Directly:
+1 312 862 2205
vanessa.barsanti@kirkland.com

300 North LaSalle
Chicago, IL 60654
United States

+1 312 862 2000

www.kirkland.com

Facsimile:
+1 312 862 2200

February 10, 2023

Shira Liu
Crowell & Moring LLP
3 Park Plaza
20th Floor
Irvine, CA 92614

Re:     *Thomson Reuters Enterprise Centre GMBH and West Publishing
Corporation v. ROSS Intelligence Inc.*, Case No. 1:20-cv-00613-LPS

Dear Ms. Liu:

I write on behalf of my clients, Thomson Reuters Enterprise GmbH and West Publishing
Corporation ("Thomson Reuters"), in response to your February 7, 2023 letter (the "Letter").  I
address each of your positions in turn below.

## Search Terms

As an initial matter, we are disappointed that it took ROSS over two and a half weeks to
propose search terms.  When I spoke to Mr. Canter on January 19, I requested that ROSS provide
proposed search parameters as soon as possible.  I followed up again on January 24 and, at that
time, provided Thomson Reuters' proposed custodians and initial set of terms, subject to the
ability to test those terms on the data once fully collected and processed.  Having heard nothing
from ROSS, I followed up yet again with proposed revisions to our terms on February 1.[1]  We
did not receive ROSS's terms until February 7, and even then, there were several syntax errors
that needed to be resolved.

We have tested ROSS's counterproposal terms and it is clear that they are not
appropriately tailored to locate responsive information and result in an unduly burdensome

---

[1] As I noted in our transmission, these revisions were necessary as the initial terms were not appropriately tailored to
gather responsive information and proved unduly burdensome to review (hitting on over 1 million documents).
Through sampling of the documents and other methods, we were able to revise the terms and narrow the document
corpus to those more likely to be responsive (dropping the number to 615,000 hits).

# KIRKLAND & ELLIS LLP

Shira Liu
February 10, 2023
Page 2

document corpus to review.  In total, ROSS's terms hit on over 984,000 documents and brought in an additional 380,817 documents on top of the 615,000 Thomson Reuters has already agreed to review.

Nonetheless, in the spirit of compromise, Thomson Reuters is willing to accept ten of the eighteen additional terms proposed by ROSS.  Appendix A, attached, is an annotated version of ROSS's counterproposal reflecting the ten terms Thomson Reuters will agree to, and also corrects certain typographical syntax errors that the parties' discussed during our February 8 meet and confer.[2]

## Requests for Production

The Letter also expressed concerns regarding requests for production (the "Requests") allegedly left unaddressed by Thomson Reuters' proposal.   ROSS ignores the parties' months-long negotiations about the scope of discovery and the parties' agreements regarding: (1) the Requests ROSS would continue to pursue; and (2) the Requests to which Thomson Reuters would agree to produce responsive documents.  Indeed, ROSS's draft discovery dispute letter did not identify any issue (other than the temporal scope of production) with the Requests.  *See, e.g.*, 1/18/2023 Draft Discovery Dispute Joint Letter.

Further, ROSS's reliance on Thomson Reuters' rough map outlining which proposed search terms related to which Requests, provided solely as a courtesy, is misplaced.  That mapping related only to the disputed Requests.  And, as we noted in the transmission of that map, the search terms are broad and meant to capture responsive information beyond just those Requests listed in the chart.

## Thomson Reuters' Custodians

ROSS's concerns regarding Thomson Reuters' custodians are unfounded. Each of Thomson Reuters' eight custodians is a high-ranking employee who has had a lengthy tenure at West Publishing and Thomson Reuters and is responsible for the very types of issues on which ROSS seeks discovery.  The relevance of these individuals is apparent from their titles, which we previously provided to you:

---

[2] We discovered another syntax issue for term 13 late in the evening after the parties' meet and confer.  Relativity does not allow for multiple proximity searches on both sides of a proximity. Additional adjustments were made, as reflected in Appendix A, that we believed were in the spirit of ROSS's intentions behind the term.  If ROSS prefers a different modification, please let us know.

# KIRKLAND & ELLIS LLP

Shira Liu
February 10, 2023
Page 3

- **Andrew Martens**: Senior Vice President & Global Head Legal Product & Editorial (2003)

- **Erik Lindberg**: Senior Director, Westlaw Product Management (1992)

- **Mark Hoffman**: Finance Manager (2004)

- **Christine Post**: Senior Director, Market Research & Competitive Intelligence (1993)

- **Dustin Cripe**: Corporate Strategy Director (2018)

- **Thomas Leighton**: Vice President, Government Relations & Content Acquisition (2008)

- **Bridgett You**: Vice President Revenue Management, Mid & Global Large Law; Senior Director of Strategic Pricing & Revenue Management (2006)

- **Mike Dahn**: Senior Vice President & Head of Westlaw Product Management (2000)

Nevertheless, as a good faith gesture, we are providing the additional below information, along with sample responsive documents already located in these custodians' files that will be produced to ROSS in the coming days.

***First***, you suggest that these custodians may not capture certain documents related to pricing decisions, "including communications directly with customers and potential customers." Exhibit 1 is an approval request for Westlaw contract with the University of Tennessee sent from Erin Dallas to Mark Hoffman on January 22, 2020. In the approval request, Ms. Dallas writes: "Customer has typed requested contract revisions on the last page of the attached document." The document attached to Ms. Dallas's email reflects customer contract revisions. Exhibit 2 is a similar approval request for a discounted contract with NPR sent from Nicholas Degidio to Mark Hoffman on November 18, 2020. The "Approval Request Comments" state that NPR would be receiving 40% off and 2% YoY Trying to customize to $12K" and the email outlines the communications with NPR relevant to the deal. Finally, Exhibit 3 is an approval request for Westlaw contract with Platzer Swergold Karlin et. al sent from Matthew Hayes to Bridgett You on September 24, 2019. The email states, in part, "I already went through negotiations with contract and we settled on 1%." The email shows an increase of 1 for "OY Increases."

***Second***, you suggest that "communications directly with customers or potential customers" about the negotiation of terms and conditions may not be captured with these custodians. As is clear from Exhibits 1-3, several custodians are responsible for approving final

## KIRKLAND & ELLIS LLP

Shira Liu
February 10, 2023
Page 4

customer agreements, including reviewing and approving modifications to both price and terms
and conditions.   Other documents reflect direct negotiations between Thomson Reuters and
customers.   Exhibit 4 reflects contract renewal and term negotiations between the law firm
Kronick Moskovitz Tiedemann & Girard and Thomson Reuters from 2019. Exhibit 5 reflects
contract renewal and term negotiations with Kirkland & Ellis sent from Jenny Deutsch to
Bridgett You on November 24, 2021.   Ms. Deutsch summarizes the requested contract
modifications and attaches the redlined contract.

 *Third*, you suggest that documents reflecting customer opinions or preferences, including
"surveys, market studies or research reports" may not be captured by these custodians.  Exhibit 6
is a February 2018 presentation titled "Thomson Reuters Customer Experience Monitor Legal
Segment and Country Analysis FY 17," and includes data on customer opinions.  Exhibit 7 is a
January 2016 presentation titled "Westlaw Value Drivers Qualitative Research Report," which
summarizes detailed findings of top-of-mind value drivers, unmet needs, and customer
preferences.   And Exhibit 8 is an Excel file documenting thousands of rows of customer
feedback from 2019.

 *Fourth*, and finally, you suggest that, "[b]ased on the titles of the custodians proposed[,]
it does not appear that the eight current custodians are primarily responsible" for "obtaining
judicial opinions."  We assume this is an oversight.  Thomas Leighton's title is Vice President,
Government Relations & *Content Acquisition*.  And, as ROSS is aware from his deposition in
connection with the parties' copyright dispute, Mr. Leighton "lead[s] a team of people wo
acquire content from mostly government sources from the US, Canada, and the United Kingdom,
primarily from courts, legislatures and agencies."  Indeed, his "job responsibilities" include
supervising the content acquisition group to "find the most appropriate way to acquire content
from various sources."  Further, Thomson Reuters has committed to produce all agreements with
state or federal governments related to the publication of caselaw and documents sufficient to
show how Thomson Reuters acquires caselaw.

### Relevant Time Period

 Finally, as to the relevant time period, we have considered ROSS's January 24, 2023
proposal.  Thomson Reuters stands by its agreement to produce documents sufficient to show
any business plans, products, and licenses related to its public law database separate from any
search technology from 1990 to present, to the extent any such documents exist and are
reasonably accessible.  As to searching these custodians' files, Thomson Reuters will produce
documents as originally stated, from January 1, 2015 to present.  Documents before that date are
irrelevant, and we reiterate that ROSS did not even exist until 2015.  Further, there is significant
burden associated with additional collections, processing, hosting, and review.  The seven years
of data Thomson Reuters has already collected for these eight custodians amounts to over a

# KIRKLAND & ELLIS LLP

Shira Liu
February 10, 2023
Page 5

terabyte of data and millions of records.  Stretching back an additional *fifteen* years or *more* for certain requests is likely to add at the bare minimum another **two terabytes** of data, and amount to more than 10 million records collected.  As you well know, there are separate costs associated with collection, processing, and hosting that data, not to mention the cost of reviewing and producing documents from such a large population. These are the kinds of document populations more commonly associated with mass tort actions, not antitrust disputes with a single claim.  To the extent you are aware of caselaw stating otherwise, please bring it to our attention immediately.

\*     \*     \*     \*     \*

Please let us know your availability to meet and confer if ROSS further disputes the adequacy of Thomson Reuters' custodians and terms.

Sincerely,

/s/ *Vanessa Barsanti*

Vanessa Barsanti

Exhibit 1

**To:** Hoffman, Mark (Commercial Excellence)[mark.hoffman@thomsonreuters.com]
**From:** Erin Dallas[erin.dallas@thomsonreuters.com]
**Sent:** Wed 1/22/2020 12:36:04 PM (UTC-06:00)
**Subject:** Approval Request for Quote/Proposal 'Patron Access Renewal 2020' has been submitted for your approval
Proposed Contract Revisions.pdf

Dear Mark Hoffman:

Approval Request for Quote/Proposal 'Patron Access Renewal 2020' has been submitted for your approval.

**Customer Number:** 1003293378
**Customer Name:** UNIV OF TENNESSEE
**Frozen Market Segment:** Law School Library
**Submitting Rep:** Erin Dallas
**Approval Request Comments:** Customer has typed requested contract revisions on the last page of the attached document.
**Approval Request Approver Comments:**

| Line Status from Cart | Material # | Mat. Desc. | Term | YOY 1 Renewal % | OY Increases | Band | Pricing UOM | Retail Price | Adjustment Type | Adjustment Amount | Net Price |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Renewed | 40988760 | Government Select Level 2 States (WestlawNext ™) | 3 Years | 1 | 1 | 1.00000 | Each | USD 4,789.13 | | | USD 4,789.13 |

To approve or reject this request, reply to this email with the word APPROVE, APPROVED, YES, REJECT, REJECTED, or NO in the first line of the email message.

Reassign
Approve/Reject
Add Comment

If replying via email you can also add comments on the second line followed by a BLANK line. The comments will be stored with the approval request.

Note: For Apttus to process your response the word APPROVE, APPROVED, YES, REJECT, REJECTED, or NO must be in the very first line of the reply email. Also, any comment must be in the second line followed by a BLANK line.

Summary: Patron Access Renewal 2020
Comments From Sales:
Close Date:
Related Proposal

**Approvals Information**

| | |
|---|---|
| Step Name: | SCS - Line - Min YOY Increase - Government - Non-PRINT, Non-CLEAR |
| Step Label: | Minimum YOY Increase violated |
| Approval Request Date: | |
| Approval Request Assigned To: | Government Approval Queue |

Other Approval Requests:

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

| Step Name | Approval Status | Date | Assigned To | Depends On | Actual Approver | Approval Comments |
|---|---|---|---|---|---|---|
| Additional Approval | On Hold | | Government Approval Queue | | | On-Hold for consolidation - System Info - Waiting for approval step: Minimum YOY Increase violated 2020-01-22 12:35:59-0600 |

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

| THOMSON REUTERS™ | **Order Form** | **Order ID: Q-00641350** |
|---|---|---|
| | Contact your representative ben.verrall@thomsonreuters.com  with any questions. Thank you. | |

| **Account Address** | **Shipping Address** | **Billing Address** |
|---|---|---|
| Account #: 1003293378 | Account #: 1003293378 | Account #: 1003293378 |
| UNIV OF TENNESSEE | UNIV OF TENNESSEE | UNIV OF TENNESSEE |
| LAW LIBRARY/ACQUISITIONS DEPT | LAW LIBRARY/ACQUISITIONS DEPT | LAW LIBRARY/ACQUISITIONS DEPT |
| 1505 CUMBERLAND AVE | 1505 CUMBERLAND AVE | 1505 CUMBERLAND AVE |
| KNOXVILLE  TN 37916-3199  US | KNOXVILLE TN 37916-3199 US | KNOXVILLE, TN  37916-3199  US |

This Order Form is a legal document between West Publishing Corporation and Subscriber. West Publishing Corporation also means "West", "we" or "our" and Subscriber means "you", or "I".  Subscription terms, if any, follow the ordering grids below.

| | | **Online / Practice Solutions / Solutions / ProFlex Renewals** | | | | | |
|---|---|---|---|---|---|---|---|
| **Svc Mat#** | **Renewed Product** | **Agreement #** | **Deal ID** | ***Current Monthly Rate** | **Renewal Term (Months)** | **First Year Renewal Term Increase** | **Year Over Year Renewal Term Increase** |
| 40988760 | Government Select Level 2 States (WestlawNext™) | | 589989 | $4,789.13 | 36 | 1% | 1% |

| **Renewal Terms** |
|---|

*I am aware that the Renewal Term Monthly Charges will be based on the Monthly Charges in effect the month before the Renewal Term starts. This amount may be different from the Current Monthly Rate shown above

**For Online/Practice Solutions/Software/Proflex Products** Renewal Term Monthly Charges will be based on the Monthly Charges in effect at the end of the month before the Renewal Term starts. Renewal Term Monthly Charges begin at the end of your Minimum Term or current Renewal Term. The Renewal Term will continue for the number of complete calendar months identified in the Renewal Term column above. The annual percent increases will be as stated in the grid above.

You are also responsible for all Excluded Charges. Excluded Charges are charges for accessing data or services that are not included in your subscription. Excluded Charges may change after 30 days written or online notice.

**For Window Products** Renewal Term Monthly Charges are due regardless of the level of your usage. The Monthly Window will remain unchanged. Transactional usage charges that exceed the Monthly Charges are waived up to the Monthly Window. You are responsible for transactional usage charges in excess of the Monthly Window. Transactional charges are calculated based upon our then-current Schedule A rate. You are also responsible for all Excluded Charges. Schedule A rates may change upon at least 30 days written or online notice.

To apply Window charges to a specific month, the request must be submitted at least five (5) business days prior to the end of the month.

| **Post Renewal Terms** |
|---|

**For Online/Practice Solutions/Software/ProFlex Products:** At the end of the Renewal Term, your Monthly Charges will increase by 7%. Thereafter, the Monthly Charges will increase 7% every 12 months unless we notify you of a different rate at least 90 days before the annual increase. You are also responsible for all Excluded Charges. Excluded Charges may change after at least 30 days written or online notice. Either of us may cancel the Post-Renewal Term subscription by sending at least 60 days written notice. Send your notice of cancellation to Customer Service, 610 Opperman Drive, P.O. Box 64833, Eagan, MN 55123-1803.

**For Window Products** At the end of the Minimum Term or Renewal Term as applicable your subscription will automatically renew and your Monthly Charges will be billed at up to our then current rate. Thereafter, we may modify the Monthly Charges after at least 90 days notice. The Monthly Window will remain unchanged. Schedule A rates may change after at least 30 days written or online notice. You are also responsible for all Excluded Charges. Excluded Charges may change after at least 30 days written or online notice. Either of us may the Post-Minimum or Post Renewal subscription by sending at least 60 days written notice. Send your notice of cancellation to Customer Service, 610 Opperman Drive, P.O. Box 64833, Eagan MN 55123-1803.

To apply Window charges to a specific month, the request must be submitted at least five (5) business days prior to the end of the month.

**Federal Government Subscribers Optional Renewal Term** Federal government subscribers that chose a multi-year Renewal Term, those additional months will be implemented at your option pursuant to federal law.

| **Miscellaneous** |
|---|

**Charges, Payments & Taxes.** You agree to pay all charges in full within 30 days of the date of invoice. You are responsible for any applicable sales, use, value added tax (VAT), etc. unless you are tax exempt. If you are a non -government subscriber and fail to pay your invoiced char ges, you are responsible for collection costs including attorneys' fees.

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

**Settling a Disputed Balance**. Payments marked 'paid in full', or with any other restrictive language will not operate as an accord and satisfaction without our prior written approval. We reserve our right to collect any remaining amount due to us on your account. Partial payments intended to settle an outstanding balance in full must be sent to: Customer Service, 610 Opperman Drive, P.O. Box 64833, Eagan, MN 55123-1803, along with a written explanation of the disagreement or dispute. This address is different from the address you use to make account payments.

**Credit Verification**. If you are applying for credit as an individual, we may request a consumer credit report to determine your creditworthiness. If we obtain a consumer credit report, you may request the name, address and telephone number of the agency that supplied the credit report. If you are applying for credit on behalf of a business, we may request a current business financial statement from you to consider your request.

**Auto Charge Credit Card/Electronic Funds Transfer Election Payment Terms**. You may authorize us to automatically charge a credit card, debit card or electronic fund transfer to pay charges due. Contact Customer Service at 1-800-328-4880 for authorization procedures. If you have previously authorized us to bill a credit card, debit card or make electronic fund transfers for West subscriptions on an ongoing basis, or authorizing the same as part of this order, no further action is needed.

**Returns and Refunds.** You may return a print product to us within 45 days of the original shipment date if you are not completely satisfied. Assured Print Pricing, Library Savings Plan, West Complete, Library Maintenance Agreements, ePack, WestPack, Westlaw, CLEAR, Monitor Suite, ProView eBook, Software, West LegalEdcenter, Practice Solutions, TREWS, Peer Monitor, and Data Privacy Advisor charges are not refundable. Please see http://static.legalsolutions.thomsonreuters.com/static/returns-refunds.pdf or contact Customer Service at 1-800-328-4880 for additional details regarding our policies on returns and refunds.

**Applicable Law.** If you are a state or local governmental entity, your state's law will apply and any claim may be brought in the state or federal courts located in your state. If you are a non-government entity, this Order Form will be interpreted under Minnesota state law. Any claim by one of us may be brought in the state or federal courts in Minnesota. If you are a United States Federal Government subscriber, United States federal law will apply and any claim may be brought in any federal court.

**Excluded Charges.** If you access services that are not included in your subscription you will be charged our then-current rate ("Excluded Charges"). Excluded Charges will be invoiced and due with your next payment. For your reference, the current Excluded Charges schedules are located at the links below. Excluded Charges may change after at least 30 days written or online notice.
   http://static.legalsolutions.thomsonreuters.com/static/agreement/schedule-a-concourse-case-notebook-hosted.pdf

**Thomson Reuters General Terms and Conditions,** apply to all products ordered, except print and is located at https://static.legalsolutions.thomsonreuters.com/static/ThomsonReuters-General-Terms-Conditions.pdf

The Thomson Reuters General Terms and Conditions for Federal Subscribers is located at https://static.legalsolutions.thomsonreuters.com/static/Federal-ThomsonReuters-General-Terms-Conditions.pdf In the event that there is a conflict of terms between the General Terms and Conditions and this Order Form, the terms of this Order Form control. This Order Form is subject to our approval.

**Banded Product Subscriptions** You certify the total number of attorneys (partners, shareholders, associates, contract or staff attorneys, of counsel, and the like), corporate users, personnel or full-time-equivalent students is indicated in the applicable Quantity column. Our pricing for banded products is made in reliance upon your certification. If we learn that the actual number is greater, we reserve the right to increase your charges as applicable

**Product Specific Terms.** The following products have specific terms which are incorporated by reference and made part of this Order Form if they apply to your order. They can be found at https://static.legalsolutions.thomsonreuters.com/static/ThomsonReuters-General-Terms-Conditions-PST.pdf If the product is not part of your order, the product specific terms do not apply. If there is a conflict between product specific terms and the Order Form, the product specific terms control.
- Campus Research
- Contract Express
- Hosted Practice Solutions
- ProView eBooks
- Time and Billing
- West km Software
- West LegalEdcenter
- Westlaw
- Westlaw Doc & Form Builder
- Westlaw Paralegal
- Westlaw Patron Access
- Westlaw Public Records

**Acknowledgement: Order ID: Q-00641350**

_____
**Signature of Authorized Representative for order**

_____
**Title**

_____
**Printed Name**

_____
**Date**

© 2019 West, a Thomson Reuters business. All rights reserved.

This Order Form will expire and will not be accepted after 1/20/2020.

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

 **THOMSON REUTERS**

# Attachment          Order ID: Q-00641350

Contact your representative ben.verrall@thomsonreuters.com with any questions. Thank you.

## Payment, Shipping, and Contact Information

**Payment Method:**
Payment Method: Bill to Account
Account Number: 1003293378

**Shipping Information:**
Shipping Method: Ground Shipping - U.S. Only

**Order Confirmation Contact (#28)**
Contact Name: Suzanne Smalley
Email: ssmalley@utk.edu

## Account Contacts

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY



These terms govern your use of the Thomson Reuters products and services in your order form (in any format). "We", "our" and "Thomson Reuters" means the Thomson Reuters entity identified in the order form and, where applicable, its affiliates; "you" and "your" means the client, customer or subscriber identified in the order form. Your order form identifies the products and services, the quantities, charges and other details of your order. The order form also refers to and incorporates documents which may apply to the products or services you selected. The order form, applicable incorporated documents and these terms constitute the complete agreement (the "Agreement") and supersede any prior and contemporaneous discussions, agreements or representations and warranties regarding your order. Other terms and conditions you incorporate in any purchase order or otherwise are not part of the Agreement and do not apply.   If you are permitted to provide an affiliate with access to any part of the products, you will ensure that such affiliate complies with all provisions of the Agreement applicable to you as if they were its own.

## 1. OUR PRODUCTS & SERVICES

**(a) Limited License.** Together with our licensors, we own and retain ownership of all rights of whatever nature in and to our products, services, and data (whether tangible or intangible). You may access, view, install, use, copy, modify and distribute our property only as expressly specified in the Agreement and each of us shall at all times act in accordance with applicable laws, including export controls and economic sanctions that apply to us in connection with the Agreement.

**(b) Changes to Service.** Our products and services change from time to time, but we will not change the fundamental nature of our products.

**(c) Passwords.** Your access to certain products and services is password protected. You are responsible for assigning the passwords and for ensuring that passwords are kept confidential. Sharing passwords is strictly prohibited. Each of us shall maintain industry standard computing environments to ensure that both your and our property is secure and inaccessible to unauthorized persons.

**(d) Unauthorized Technology.** Unless previously authorized by Thomson Reuters, you must not (i) run or install any computer software or hardware on our products, services or network; use any technology to automatically download, mine, scrape or index our data; or (ii) automatically connect (whether through APIs or otherwise) our data to other data, software, services or networks. Neither of us will knowingly introduce any malicious software or technologies into any products, services or networks.

**(e) Usage Information.** We may collect information related to your use of our products, services and data. We may use this information to test, develop and improve our products and services and to protect and enforce our rights under the Agreement, and we may pass this information to our third party providers for the same purposes.

**(f) Third Party Providers.** Our products and services may include data and software from third parties. Some third party providers require Thomson Reuters to pass additional terms through to you. The third party providers change their terms occasionally and new third party providers are added from time to time. To see the current third party additional terms for our products and services click the following URL: www.thomsonreuters.com/thirdpartyterms. You agree to comply with all applicable third party terms.

**(g) Third Party Supplemental Software.** You may be required to license third party software to operate some of our products and services. Additional terms may apply to the third party software.

**(h) Limitations.** Unless otherwise expressly permitted in the Agreement, you may not: (i) sell, sublicense, distribute, display, store, copy, modify, decompile or disassemble, reverse engineer, translate or transfer our property in whole or in part, or as a component of any other product, service or material; (ii) use our property or our third party providers' property to create any derivative works or competitive products; or (iii) allow any third parties to access, use or benefit from our property in any way. Exercising legal rights that cannot be limited by agreement is not precluded. If you are in the business of providing audit, tax, accounting, or legal services to your clients, this Section 1(h) does not preclude you from using our products to benefit your clients in the ordinary course of your business.

**(i) Services.** We will provide the services using reasonable skill and care. The professional services applicable to your order, if any, are described in the ordering document or a statement of work.

**(j) Security.** Each of us will use and will require any third party data processors to use industry standard organizational, administrative, physical and technical safeguards to protect the other's information. Each party will inform the other in accordance with applicable law if such party becomes aware of any unauthorized third-party access to the other party's content and will use reasonable efforts to remedy identified security vulnerabilities.

## 2. INFORMATION SERVICES

**(a) License.** In the ordinary course of your business and for your internal business purposes only you may view, use, download and print data from our information services for individual use and may on an infrequent, irregular and ad hoc basis, distribute limited extracts of our data. Neither such extracts nor downloaded, printed or stored data may reach such quantity as to have independent commercial value and using such data as a substitute for any service (or a substantial part of it)

provided by Thomson Reuters, our affiliates or our third party providers is prohibited. Thomson Reuters and the third party content provider, if applicable, must be cited and credited as the source where data is permitted to be used or distributed. Copyright notices must be retained on transmitted or printed items. Access to certain data may be restricted depending on the scope of your license.

**(b) Further Distribution.** You may also distribute our data: (i) to authorized users; (ii) to government and regulatory authorities, if specifically requested; and (iii) to third party advisors, limited to the extent required to advise you and provided they are not competitors of Thomson Reuters. Laws applicable in your jurisdiction may allow additional uses.

## 3. INSTALLED SOFTWARE

**(a) License.** You may install and use our software and documentation only for your own internal business purposes. Software licenses include updates (bug fixes, patches, maintenance releases), and do not include upgrades (releases or versions that include new features or additional functionality) or APIs unless expressly stated in the order form. Your order form details your permitted installations, users, locations, the specified operating environment and other permissions. You may use our software in object code only. You may make necessary copies of our software only for backup and archival purposes.

**(b) Delivery.** We deliver our software by making it available for download. When you download our software and documentation, if any, you are accepting it for use in accordance with the Agreement.

## 4. THOMSON REUTERS HOSTED SOFTWARE

**(a) License.** You may use our hosted software only for your own internal business purposes.

**(b) Delivery.** We deliver our hosted software by providing you with online access to it. When you access our hosted software, you are accepting it for use in accordance with the Agreement.

**(c) Content.** Our hosted software is designed to protect the content you upload. You grant Thomson Reuters permission to use, store and process your content in accordance with applicable law. Access and use of your content by Thomson Reuters, our employees and contractors will be directed by you and limited to the extent necessary to deliver the hosted software, including training, research assistance, technical support and other services. We may delete or disable your content if required under applicable laws and in such instances, we will use our reasonable efforts to provide notice to you. If your content is lost or damaged, we will assist you in restoring the content to the hosted software from any available backup copy.

## 5. CHARGES

**(a) Payment and Taxes.** You must pay our charges within 30 days of the date of invoice in the currency stated on your order form. If you are a non-government subscriber and you fail to pay your invoiced charges, you are responsible for collection costs including legal fees. You must also pay applicable taxes and duties, other than taxes on our income, in addition to the price quoted unless you provide valid proof that you are exempt. Invoice disputes must be notified within 15 days of the date of the invoice.

**(b) Changes.** Except as otherwise specifically stated in the order form, we may change the charges for our products and services with effect from the start of each renewal term by giving you at least 90 days written notice.

**(c) Excess Use.** You must pay additional charges if you exceed the scope of use specified in your order form, based on the rates specified on the order form or our current standard pricing, whichever is greater. We may change the charges if you merge with, acquire or are acquired by another entity which results in additional access to our products, services or data.

## 6. PRIVACY

Each of us will at all times process, protect and disclose personally identifiable information received as a result of this Agreement ("PII") in accordance with applicable law.  Each of us will use reasonable efforts to assist one another in relation to the investigation and remedy of any claim, allegation, action, suit, proceeding or litigation with respect to the unauthorized or unlawful destruction,

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

loss, alteration, disclosure or access to PII. You acknowledge and agree to the transfer and processing of PII in the geographical regions necessary for Thomson Reuters to fulfill our obligations. When applicable to your location, additional terms will apply to the Agreement, including the General Data Protection Regulation (2016/679) (GDPR) terms located at www.tr.com/privacy-information.

## 7.   CONFIDENTIALITY

Confidential information received from each other will not be disclosed to anyone else except to the extent required by law or as permitted under the Agreement If a court or government agency orders either of us to disclose the confidential information of the other, the other will be promptly notified so that an appropriate protective order or other remedy can be obtained unless the court or government agency prohibits prior notification. This section shall survive three (3) years after the termination of the Agreement or until the information is no longer deemed confidential under applicable law, whichever occurs first.

## 8.   WARRANTIES AND DISCLAIMERS

THE WARRANTIES IN THIS SECTION ARE THE EXCLUSIVE WARRANTIES FROM US AND EXCLUDE ALL OTHER WARRANTIES, CONDITIONS OR OTHER TERMS (EXPRESS OR IMPLIED), INCLUDING WARRANTIES OF PERFORMANCE, MERCHANTABILITY, NON-INFRINGEMENT, SUITABILITY, FITNESS FOR A PARTICULAR PURPOSE, ACCURACY, COMPLETENESS AND CURRENTNESS. IN ENTERING THIS AGREEMENT, NEITHER PARTY HAS RELIED UPON ANY STATEMENT, REPRESENTATION, WARRANTY OR AGREEMENT OF THE OTHER PARTY EXCEPT FOR THOSE EXPRESSLY CONTAINED IN THIS AGREEMENT.

(a) EXCLUSION OF WARRANTIES. TO THE FULLEST EXTENT PERMISSIBLE UNDER APPLICABLE LAWS, WE DO NOT WARRANT OR REPRESENT OR INCLUDE ANY OTHER TERM THAT THE PRODUCTS OR SERVICES WILL BE DELIVERED FREE OF ANY INACCURACIES, INTERRUPTIONS, DELAYS, OMISSIONS OR ERRORS, OR THAT ANY OF THESE WILL BE CORRECTED WE WILL NOT BE LIABLE FOR ANY DAMAGES RESULTING FROM SUCH FAULTS. WE DO NOT WARRANT THE LIFE OF ANY URL OR THIRD PARTY WEB SERVICE.

(b) INFORMATION. OUR INFORMATION PRODUCTS ARE PROVIDED "AS IS" WITHOUT ANY WARRANTY, CONDITION OR ANY OTHER TERM OF ANY KIND.

(c) SOFTWARE. WE WARRANT OUR SOFTWARE PRODUCTS WILL CONFORM TO OUR DOCUMENTATION FOR 90 DAYS AFTER DELIVERY. IF WE ARE UNABLE TO CORRECT A SOFTWARE ERROR YOU REPORT IN A REASONABLE PERIOD AND MANNER, YOU MAY TERMINATE THE ORDER FORM FOR THE AFFECTED SOFTWARE BY PROMPT WRITTEN NOTICE TO US FOLLOWING THE REASONABLE PERIOD.  YOUR ONLY REMEDY AND OUR ENTIRE LIABILITY FOR BREACH OF THIS WARRANTY WILL BE A REFUND OF THE APPLICABLE CHARGES.  THE LICENSES WILL IMMEDIATELY TERMINATE.

(d) DISCLAIMER. YOU ARE SOLELY RESPONSIBLE FOR THE PREPARATION, CONTENT, ACCURACY AND REVIEW OF ANY DOCUMENTS, DATA, OR OUTPUT PREPARED OR RESULTING FROM THE USE OF ANY PRODUCTS OR SERVICES AND FOR ANY DECISIONS MADE OR ACTIONS TAKEN BASED ON THE DATA CONTAINED IN OR GENERATED BY THE PRODUCTS OR SERVICES. IN NO EVENT SHALL WE OR OUR THIRD PARTY PROVIDERS BE LIABLE FOR ANY PENALTIES, INTEREST, TAXES OR OTHER AMOUNTS IMPOSED BY ANY GOVERNMENTAL OR REGULATORY AUTHORITY.

(e)   NO ADVICE. WE ARE NOT PROVIDING FINANCIAL, TAX AND ACCOUNTING, LEGAL AND ANY OTHER PROFESSIONAL ADVICE BY ALLOWING YOU TO ACCESS AND USE OUR PRODUCTS, SERVICES OR DATA. YOUR DECISION MADE IN RELIANCE ON THE PRODUCTS OR SERVICES OR YOUR INTERPRETATIONS OF OUR DATA ARE YOUR OWN FOR WHICH YOU HAVE FULL RESPONSIBILITY. WE ARE NOT RESPONSIBLE FOR ANY DAMAGES RESULTING FROM ANY DECISIONS BY YOU OR ANYONE ACCESSING THE SERVICES THROUGH YOU MADE IN RELIANCE ON THE SERVICES, INCLUDING LEGAL, TAX AND ACCOUNTING, COMPLIANCE, FINANCIAL AND/OR RISK MANAGEMENT DECISIONS. YOU AGREE THAT YOU USE THE SERVICES AT YOUR OWN RISK IN THESE RESPECTS.

## 9.   LIABILITY

(a) LIMITATION. EACH PARTY'S OR ANY OF ITS THIRD PARTY PROVIDERS' ENTIRE LIABILITY IN ANY CALENDAR YEAR FOR DAMAGES ARISING OUT OF OR IN CONNECTION WITH THE AGREEMENT, INCLUDING FOR NEGLIGENCE, WILL NOT EXCEED THE AMOUNT YOU PAID IN THE PRIOR 12 MONTHS FOR THE PRODUCT OR SERVICE THAT IS THE SUBJECT OF THE CLAIM FOR DAMAGES. NEITHER PARTY IS LIABLE TO THE OTHER FOR INDIRECT, INCIDENTAL, PUNITIVE, SPECIAL OR CONSEQUENTIAL DAMAGES, FOR LOSS OF DATA, OR LOSS OF PROFITS (IN EITHER CASE, WHETHER DIRECT OR INDIRECT) OR BUSINESS INTERRUPTION EVEN IF SUCH DAMAGES OR LOSSES COULD HAVE BEEN FORESEEN OR PREVENTED.

(b) Unlimited Liability. Section 9(a) does not limit either party's liability for (i) fraud, fraudulent misrepresentation, willful misconduct, or conduct that demonstrates reckless disregard for the rights of others; (ii) negligence causing death or personal injury; or (iii) infringement of intellectual property rights. Section 9(a) does not limit your liability in relation to Section 9(d) or for claims for reimbursement arising in that section; or to pay the charges on the order form and all amounts for use of the products and services that exceed the usage permissions and restrictions granted to you.

(c) Third Party Intellectual Property. If a third party sues you claiming that our products, services or data, excluding any portions of the same provided by our third party providers infringes their intellectual property rights and your use of such products, services or data has been in accordance with the terms of the Agreement, we will defend you against the claim and pay damages that a court finally awards against you or that are included in a settlement approved by Thomson Reuters, provided the claim does not result from: (i) a combination of all or part of our products, services or data with technology, products, services or data not supplied by Thomson Reuters; (ii) modification of all or part of our products, services or data other than by Thomson Reuters or our subcontractors; (iii) use of a version of our products, services or data after we have notified you of a requirement to use a subsequent version; or (iv) your breach of this Agreement. Our obligation in this Section 9(c) is conditioned on you (A) promptly notifying Thomson Reuters in writing of the claim; (B) supplying information we reasonably request; and (C) allowing Thomson Reuters to control the defense and settlement.

(d) Your Responsibilities. You are responsible for (i) complying with this Agreement; (ii) proper use of our products and services in accordance with all usage instructions and operating specifications; (iii) adhering to the minimum recommended technical requirements; (iv) changes you make to our product, services or data; (v) your combination of our products, services or other property with any other materials; (vi) implementing and maintaining proper and adequate virus or malware protection and proper and adequate backup and recovery systems; (vii) installing updates; (viii) claims brought by third parties using or receiving the benefit of our products, services or data through you, except claims covered by Section 9(c); and (ix) claims resulting from your violation of law, or violation of our or any third party rights. You must reimburse us for any losses we incur with respect to your failure to comply with or otherwise in relation to these responsibilities. We will not be responsible if our product fails to perform because of your third party software, your hardware malfunction, or your actions or inaction. If we learn that our product failed because of one of these, we reserve the right to charge you for our work in investigating the failure. At your request we will assist you in resolving the failure at a fee to be agreed upon.

## 10.   TERM, TERMINATION

(a) Term. The term and any renewal terms for the products and services are described in your order form. If not otherwise stated in the order form, the Agreement will automatically renew annually unless either of us gives the other at least 60 days written notice before the end of the then current term.

(b) Suspension. We may on notice terminate, suspend or limit your use of any portion or all of our products, services or other property if (i) requested to do so by a third party provider, court or regulator; (ii) you become or are reasonably likely to become insolvent or affiliated with one of our competitors; or (iii) there has been or it is reasonably likely that there will be: a breach of security; a breach of your obligations under the Agreement or another agreement between us; a breach of our agreement with a third party provider; or a violation of third party rights or applicable laws. Our notice will specify the cause of the termination, suspension or limitation and, if the cause of the termination suspension or limitation is reasonably capable of being remedied, we will inform you of the actions you must take to reinstate the product or service. If you do not take the actions or the cause cannot be remedied within 30 days, we may suspend, limit or terminate the Agreement in whole or in part. Charges remain payable in full during periods of suspension or limitation arising from your action or inaction.

(c) Termination. We may, upon reasonable notice, terminate all or part of the Agreement in relation to a product or service which is being discontinued. Either of us may terminate the Agreement immediately upon written notice if the other commits a material breach and fails to cure the material breach within 30 days of being notified to do so. Any failure to fully pay any amount when due under this Agreement is a material breach for this purpose.

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

(d)  **Effect of Termination**. Except to the extent we have agreed otherwise, upon termination, all your usage rights end immediately and each of us must uninstall or destroy all property of the other and, if requested, confirm this in writing. Termination of the Agreement will not (i) relieve you of your obligation to pay Thomson Reuters any amounts you owe up to and including the date of termination; (ii) affect other accrued rights and obligations; or (iii) terminate those parts of the Agreement that by their nature should continue.

(e)  **Amendments.** We may amend these General Terms and Conditions from time to time by giving you at least 30 days prior written notice.  You may request good faith negotiations regarding the amended terms and conditions.  If the parties cannot reach mutual agreement on the amended terms and conditions within 30 days, you may terminate the agreement immediately upon written notice.

## 11.   FORCE MAJEURE

We are not liable for any damages or failure to perform our obligations under the Agreement because of circumstances beyond our reasonable control. If those circumstances cause material deficiencies in the products or services and continue for more than 30 days, either of us may terminate any affected product or service on notice to the other.

## 12.   THIRD PARTY RIGHTS

Our affiliates and third-party providers benefit from our rights and remedies under the Agreement. No other third parties have any rights or remedies under the Agreement.

## 13.   GENERAL

(a)  **Assignment**. You may not assign, delegate or otherwise transfer the Agreement (including any of your rights or remedies) to anyone else without our prior written consent. We may assign or otherwise transfer the Agreement (including any of our rights or remedies) in whole or in part to an affiliate or any entity that succeeds to all or substantially all of the assets or business associated with one or more products or services, and will notify you of any such assignment or transfer. We may subcontract any of the services in our sole discretion. Any assignment, delegation or other transfer in contravention of this Section 13(a) is void.

(b)  **Feedback**. You grant Thomson Reuters a perpetual, irrevocable, transferable, non-exclusive right to use any comments, suggestions, ideas or recommendations you provide related to any of our products or services in any manner and for any purpose.

(c)  **Agreement Compliance**. We or our professional representatives may review your compliance with the Agreement throughout the term of the Agreement. If the review reveals that you have exceeded the authorized use permitted by the Agreement, you will pay all unpaid or underpaid charges.

(d)  **Governing Law**. If not otherwise stated in the order form, the Agreement will be governed by the laws of the State of New York and each of us hereby irrevocably submits to the exclusive jurisdiction of the federal and state courts of the State of New York located in New York County to settle all disputes or claims arising out of or in connection with the Agreement.

(e)  **Precedence**. The descending order of precedence is: third party license terms contained in Section 1(f) of these terms; the applicable order form; and the remaining provisions of the Agreement.

(f)  **Trials.** All trials of our products and services are subject to the terms of these General Terms & Conditions, unless we notify you otherwise. Access to our products and services for trials may only be used for your evaluation purposes.

(g)  **Support Provided.**  To assist in resolving technical problems with the Services, Thomson Reuters may provide telephone and/or online access to its helpdesk, or may provide self-help tools.  Additional information related to the support provided by Thomson Reuters may be described on http://thomsonreuters.com/support-and-training  or as otherwise provided by Thomson Reuters.

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

Addendum to West Order Form
Subscriber: The University of Tennessee
Account # 1003293378

1. Effect of Addendum. The West Order Form, and underlying General Terms and Conditions (together the "Agreement"), between Subscriber and West is amended as specifically set forth herein to incorporate the terms of this Addendum. As amended, the Agreement shall remain in full force and effect according to its terms and conditions. All terms used in this Addendum shall have the meanings attributed to them in the Agreement. This Addendum supersedes any and all prior understandings and agreements, oral or written, relating to the subject matter. In the event there is a conflict between the terms and conditions of the Agreement and the terms and conditions of this Addendum, the terms and conditions of this Addendum shall control

2. Applicable Law (Order Form, page 2)
    a. The following shall be deleted: "and any claim may be brought in the state or federal courts located in your state."
    b. The following shall be added: "Any liability of the Subscriber to West and third parties for any claims, damages, losses, or costs arising out of or related to acts performed by the Subscriber under this agreement will be governed by the Tennessee Claims Commission Act, Tenn. Code Ann. §§ 9-8-301, et. seq."

3. Confidentiality (General Terms, Paragraph 7)
    a. The following shall be deleted: "If a court or government agency orders either of us to disclose the confidential information of the other, the other will be promptly notified so that an appropriate protective order or other remedy can be obtained unless the court or government agency prohibits prior notification."
    b. The following sentence is added: "The University of Tennessee's obligation to keep information confidential will not apply if disclosure is required by state or federal law or regulations, including without limitation, the Tennessee Public Records Act, Tenn. Code Ann. § 10-7-503."

3. Liability (General Terms, Paragraph 9(c)):
    a. The following sentence shall be added: "No settlement will be binding against the university without the consent of the university's Office of General Counsel and the Tennessee Attorney General."

4. Term (General Terms, Paragraph 10(a):
    a. The following sentence shall be deleted: "If not otherwise stated in the order form, the Agreement will automatically renew annually unless either of us gives the other at least 60 days written notice before the end of the then current term."
    b. The following sentence is added: "West acknowledges that the Subscriber does not agree to a term that automatically renews."

5.  The following clauses are added:

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

13(h) Audit: West hereby states that it will retain all books, records, and other documents ("materials") relating to this agreement for 5 years after final payment, or until audited by the state of Tennessee or the University, whichever is sooner.  The University of Tennessee, its authorized agents, or state auditors, may have access to, and the right to examine, any of West's materials during the 5-year period.

13(i) Illegal Immigrants: In compliance with the requirements of Tenn. Code Ann. § 12-3-309, West hereby attests that it shall not knowingly utilize the services of an illegal immigrant in the United States in the performance of this agreement and shall not knowingly utilize the services of any subcontractor who will utilize the services of an illegal immigrant in the United States in the performance of this agreement.

13(j) Iran Divestment Act: West certifies, under penalty of perjury, that to the best of its knowledge and belief West is not on the list created pursuant to Tenn. Code Ann. § 12-12-106.  West further certifies that it shall not utilize any subcontractor that is on the list created pursuant to Tenn. Code Ann. § 12-12-106.

13(k) Tax Registration:  West must register with, or receive an exemption from, the Tennessee Department of Revenue for the collection of Tennessee sales and use tax.  This registration requirement is a material requirement of this agreement.  West shall comply, and shall require any subcontractor to comply, with all laws and regulations governing the remittance of sales and use taxes on the sale of goods and services made by West, or West's subcontractor.

13(l) Debarment: West hereby states that the following are true statements:
a.  West is not currently debarred by the U.S. federal government.
b.  West is not currently suspended by the U.S. federal government.
c.  West is not currently named as an "excluded" supplier by the U.S. federal government.

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

# Exhibit 2

| To: | Hoffman, Mark (TR Commercial Excellence)[mark.hoffman@thomsonreuters.com] |
|---|---|
| From: | Nicholas Degidio[nick.degidio@thomsonreuters.com] |
| Sent: | Wed 11/18/2020 4:56:57 PM (UTC-06:00) |
| Subject: | Approval Request for Quote/Proposal 'NPR - Westlaw (4) Discounted' has been submitted for your approval |

Dear Mark Hoffman:

Approval Request for Quote/Proposal 'NPR - Westlaw (4) Discounted' has been submitted for your approval.

**Customer Number:** 1000431145
**Customer Name:** NATL PUBLIC RADIO
**Frozen Market Segment:** Corp Emerging New
**Submitting Rep:** Nicholas Degidio
**Approval Request Comments:** 40% off and 2% YoY Trying to customize to $12K.
**Approval Request Approver Comments:**

| Line Status from Cart | Material # | Mat. Desc. | Term | YOY 1 Renewal % | OY Increases | Band | Pricing UOM | Retail Price | Adjustment Type | Adjustment Amount | Net Price |
|---|---|---|---|---|---|---|---|---|---|---|---|
| New | | Westlaw Edge Corporate Select | 5 Years | | 2 | 4.00000 | Users | USD 1,671.00 | % Discount | 40.00000 | USD 1,002.60 |
| New | | Westlaw Edge Corporate Select | | | | 4.00000 | Users | USD 0.00 | | | USD 0.00 |
| New | | Westlaw Edge Corporate Select | | | | 4.00000 | Users | USD 0.00 | | | USD 0.00 |
| New | | Westlaw Edge Corporate Select | | | | 4.00000 | Users | USD 0.00 | | | USD 0.00 |
| New | | Westlaw Edge Corporate Select | | | | 4.00000 | Users | USD 0.00 | | | USD 0.00 |

To approve or reject this request, reply to this email with the word APPROVE, APPROVED, YES, REJECT, REJECTED, or NO in the first line of the email message.

Reassign
Approve/Reject
Add Comment

If replying via email you can also add comments on the second line followed by a BLANK line. The comments will be stored with the approval request.

Note: For Apttus to process your response the word APPROVE, APPROVED, YES, REJECT, REJECTED, or NO must be in the very first line of the reply email. Also, any comment must be in the second line followed by a BLANK line.

Summary: NPR - Westlaw (4) Discounted

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

Comments From Sales: 10/20 - if we can show that our Public records can replace Lexis, they will switch for the $120,000 quote.

9/28 - They are signed up for a 28 day trial. Pricing was presented at $120K or 140K options. They may still try to negotiate or cut out more content. This deal should be $80K-$100K and will be signed in october. If Trial goes Well, They said theyd switch

Trying to get 20 seat, 28 day trial signed in Sept. They said it will take time to get signed. Want Westlaw for 95 plus PL for 15

7/7 - Laura is going to take over the discussion from Jon Hart. She said they have been with Lexis for about 20-25 years and there is a chance they are overpriced due to the renewal minimums. She said there is potential for 300 seats. no Follow Up Schd!

Fiscal year ends Sept 30.

6/26 - They loved Westlaw, but we did not talk about price

NPR – Westlaw
They liked TCO and PMM
Asked about a name search – Liked Public Records
Close Date:
[Related Proposal](#)

**Approvals Information**

| | |
|---|---|
| Step Name: | Additional Approval |
| Step Label: | Additional Approval |
| Approval Request Date: | |
| Approval Request Assigned To: | Corp Emerging Approval Queue |

Other Approval Requests:

| Step Name | Approval Status | Date | Assigned To | Depends On | Actual Approver | Approver Comments |
|---|---|---|---|---|---|---|

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

Exhibit 3

**To:** You, Bridgett (Legal)[bridgett.you@thomsonreuters.com]
**From:** Matthew Hayes[matthew.hayes@thomsonreuters.com]
**Sent:** Tue 9/24/2019 11:16:41 AM (UTC-05:00)
**Subject:** Approval Request for Quote/Proposal 'PlatzerSwergold.2019.WL.Edge' has been submitted for your approval

Dear Bridgett You:

Approval Request for Quote/Proposal 'PlatzerSwergold.2019.WL.Edge' has been submitted for your approval.

**Customer Number:** 1000361117
**Customer Name:** PLATZER SWERGOLD KARLIN ET AL
**Frozen Market Segment:** SLF 21-29
**Submitting Rep:** Matthew Hayes
**Approval Request Comments:** I already went through negotiation with contract and we settled on 1%.
**Approval Request Approver Comments:**

| Line Status from Cart | Material # | Mat. Desc. | Term | YOY 1 Renewal % | OY Increases | Band | Pricing UOM | Retail Price | Adjustment Type | Adjustment Amount | Net Price |
|---|---|---|---|---|---|---|---|---|---|---|---|
| New | 42521805 | SL Edge Primary - All States and Federal (Westlaw Edge™) | 3 Years | 1 | | 20.00000 | Attorneys | USD 2,294.00 | % Discount | 62.00000 | USD 871.72 |
| New | 42009550 | SL New York Analytical (Westlaw PRO™) | 3 Years | 1 | | 20.00000 | Attorneys | USD 419.00 | % Discount | 62.00000 | USD 159.22 |
| New | 42004907 | SL Bankruptcy Analytical (Westlaw PRO™) | 3 Years | 1 | | 20.00000 | Attorneys | USD 327.00 | % Discount | 62.00000 | USD 124.26 |
| New | 42014902 | SL Litigation - New York (Westlaw PRO™) | 3 Years | 1 | | 20.00000 | Attorneys | USD 1,527.00 | % Discount | 62.00000 | USD 580.26 |
| New | 41615717 | PeopleMap Report (Westlaw PRO™) | 3 Years | 1 | | 20.00000 | Attorneys | USD 1,021.00 | % Discount | 62.00000 | USD 387.98 |
| New | 41527080 | Company Investigator | 3 Years | 1 | | 3.00000 | Seats | USD 282.00 | % Discount | 62.00000 | USD 107.16 |

To approve or reject this request, reply to this email with the word APPROVE, APPROVED, YES, REJECT, REJECTED, or NO in the first line of the email message.

Reassign
Approve/Reject
Add Comment                                    HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

If replying via email you can also add comments on the second line followed by a BLANK line. The comments will be stored with the approval request.

Note: For Apttus to process your response the word APPROVE, APPROVED, YES, REJECT, REJECTED, or NO must be in the very first line of the reply email. Also, any comment must be in the second line followed by a BLANK line.

Summary: PlatzerSwergold.2019.WL.Edge
Comments From Sales:
Close Date:
Related Proposal

**Approvals Information**

| | |
|---|---|
| Step Name: | SCS - Line - Non-standard Discount - Medium Law |
| Step Label: | Non-Standard Discount % |
| Approval Request Date: | |
| Approval Request Assigned To: | Medium Law Approval Queue |

Other Approval Requests:

| Step Name | Approval Status | Date | Assigned To | Depends On | Actual Approver | Approver Comments |
|---|---|---|---|---|---|---|
| SCS - Line - Non-standard Discount - Medium Law | On Hold | | Medium Law Approval Queue | | | On-Hold for consolidation - System<br>Info - Waiting for approval step: Non-Standard Discount %<br>2019-09-24 12:16:37-0400 |
| SCS - Line - Non-standard Discount - Medium Law | On Hold | | Medium Law Approval Queue | | | On-Hold for consolidation - System<br>Info - Waiting for approval step: Non-Standard Discount %<br>2019-09-24 12:16:37-0400 |
| SCS - Line - Non-standard Discount - Medium Law | On Hold | | Medium Law Approval Queue | | | On-Hold for consolidation - System<br>Info - Waiting for approval step: Non-Standard Discount %<br>2019-09-24 12:16:37-0400 |
| SCS - Line - Non-standard Discount - Medium Law | On Hold | | Medium Law Approval Queue | | | On-Hold for consolidation - System<br>Info - Waiting for approval step: Non-Standard Discount %<br>2019-09-24 12:16:37-0400 |
| SCS - Line - Non-standard Discount - Medium Law | On Hold | | Medium Law Approval Queue | | | On-Hold for consolidation - System<br>Info - Waiting for approval step: Non-Standard Discount %<br>2019-09-24 12:16:37-0400 |
| Additional Approval | On Hold | | Medium Law Approval Queue | | | On-Hold for consolidation - System<br>Info - Waiting for approval step: Non-Standard Discount %<br>2019-09-24 12:16:37-0400 |

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

Exhibit 4

**To:** Deppert, Peter (TR Finance)[Peter.Deppert@thomsonreuters.com]
**From:** Kuther, Ryan (Legal)[/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=A1774997439A47F9A513A207EBAE47AE-0041953]
**Sent:** Tue 7/30/2019 1:59:12 PM (UTC-05:00)
**Subject:** FW: Westlaw/Kronick

Peter,
Can we do this on the contract for them?  Please see his comments below.

Thanks Peter!

Ryan

---

**From:** Anderson, Glen C. [mailto:ganderson@kmtg.com]
**Sent:** Tuesday, July 30, 2019 9:49 AM
**To:** Kuther, Ryan (Legal) <ryan.kuther@thomsonreuters.com>
**Subject:** RE: Westlaw/Kronick

Hi Ryan,

Our Board will be wary of changing to Westlaw if after year 3 we find the pricing for the next couple of years increases dramatically (as it had with Janet Lucas's proposal to us in 2017) and we end up needing to change yet again back to Lexis.  We want to know if West will consider a write-in to the contract allowing Kronick can opt for years 4 and 5 with a no higher than 3% increase for those years from year 3 in your proposal below.  For example year 3 (Period 4) below is $9,879/month.  If we opt for Year 4 (10/01/2022 to 09/30/2023 - Period 5) it would be $10,175.00 and Year 5 (10/01/2023 to 09/30/2024 - Period 6) would be $10,481.  We would give at least 90 days' notice prior to the expiration of the term for Period 4 on whether we intend to opt Period 5 and the same for Period 6.

No hurry on this – I'm still awaiting Lexis' proposal.

Thanks!

**Glen C. Anderson**
*Billing & Risk Manager*

**Kronick Moskovitz Tiedemann & Girard**
400 Capitol Mall | 27th Floor
Sacramento, CA 95814

916.321.4500 | T
916.321.4505 | D

**kmtg.com** | **vCard** | **map** | **ganderson@kmtg.com**

  

CONFIDENTIALITY: This communication may contain confidential information. If you are not the intended recipient, or believe that you have received this communication in error, please do not print, copy, retransmit, disseminate, or otherwise use the information. Also, please indicate to the sender that you have received this email in error, and delete the copy you received.

IRS CIRCULAR 230 DISCLOSURE: Pursuant to Treasury Regulations, any tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used or relied upon by you or any other person, for the purpose of (i) avoiding penalties under the Internal Revenue Code, or (ii) promoting, marketing or recommending to another party any tax advice addressed herein. Thank you.

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

**From:** Kuther, Ryan (Legal) [mailto:ryan.kuther@thomsonreuters.com]
**Sent:** Monday, July 29, 2019 11:54 AM
**To:** Anderson, Glen C. <ganderson@kmtg.com>
**Subject:** Re: Westlaw/Kronick

Sounds good. Thanks Glen!

Ryan Kuther
Senior Account Executive
Thomson Reuters
Medium Law Firms
303-594-6296

---

**From:** Anderson, Glen C. <ganderson@kmtg.com>
**Sent:** Monday, July 29, 2019 11:53:14 AM
**To:** Kuther, Ryan (Legal) <ryan.kuther@thomsonreuters.com>
**Subject:** RE: Westlaw/Kronick

Thanks Ryan – We are waiting for Lexis' proposal and will let you know once a decision has been made – hopefully before the end of August.   Thanks!

**Glen C. Anderson**

*Billing & Risk Manager*

**Kronick Moskovitz Tiedemann & Girard**

400 Capitol Mall | 27th Floor

Sacramento, CA 95814

916.321.4500 | T

916.321.4505 | D

**kmtg.com** | **vCard** | **map** | **ganderson@kmtg.com**



CONFIDENTIALITY: This communication may contain confidential information. If you are not the intended recipient, or believe that you have received this communication in error, please do not print, copy, retransmit, disseminate, or otherwise use the information. Also, please indicate to the sender that you have received this email in error, and delete the copy you received.

IRS CIRCULAR 230 DISCLOSURE: Pursuant to Treasury Regulations, any tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used or relied upon by you or any other person, for the purpose of (i) avoiding penalties under the Internal Revenue Code, or (ii) promoting, marketing or recommending to another party any tax advice addressed herein. Thank you.

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

**From:** Kuther, Ryan (Legal) [mailto:ryan.kuther@thomsonreuters.com]

**Sent:** Monday, July 29, 2019 11:32 AM
**To:** Anderson, Glen C. <ganderson@kmtg.com>
**Subject:** Re: Westlaw/Kronick

Glen,

That is correct.  I am at the best I can do in terms of pricing, but fought to change the structure for you to address your point of carrying both costs.

Let me know if there are questions on this.

Best,

Ryan Kuther
Senior Account Executive
Thomson Reuters
Medium Law Firms
303-594-6296

---

**From:** Anderson, Glen C. <ganderson@kmtg.com>
**Sent:** Monday, July 29, 2019 11:15:51 AM
**To:** Kuther, Ryan (Legal) <ryan.kuther@thomsonreuters.com>
**Subject:** RE: Westlaw/Kronick

Hi Ryan – I'm just back in the office today.  Just to verify – so it appears the 1st year pricing structure below doesn't change the amortized price for the first year (when compared to the 07/15/2019 proposal you sent).  So the pricing below is not really a better price overall – just a restructure of the first year.  Do I have that right?

Thanks.. Glen

**Glen C. Anderson**

*Billing & Risk Manager*

Kronick Moskovitz Tiedemann & Girard

400 Capitol Mall | 27th Floor

Sacramento, CA 95814

916.321.4500 | T

916.321.4505 | D

**kmtg.com** | **vCard** | **map** | **ganderson@kmtg.com**



CONFIDENTIALITY: This communication may contain confidential information. If you are not the intended recipient, or believe that you have received this communication in error, please do not print, copy, retransmit, disseminate, or otherwise use the information. Also, please indicate to the sender that you have received this email in error, and delete the copy you received.

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

IRS CIRCULAR 230 NOTICE: To the extent that this message or any attachment concerns tax matters, it is not intended to be used and cannot be used by a taxpayer for the purpose of avoiding penalties that may be imposed by law. In such cases, this message is not intended to be used, and cannot be used or relied upon by you or any other person, for the purpose of (i) avoiding penalties under the Internal Revenue Code, or (ii) promoting, marketing or recommending to another party any tax advice addressed herein. Thank you.

---

**From:** Kuther, Ryan (Legal) [mailto:ryan.kuther@thomsonreuters.com]
**Sent:** Wednesday, July 24, 2019 2:41 PM
**To:** Anderson, Glen C. <ganderson@kmtg.com>
**Subject:** RE: Westlaw/Kronick

Glen,
Thanks for your patience on this!  Here is the best I am able to do taking into consideration terms and price.

Let me know if this helps…

| | | |
|---|---|---|
| Period 1: | 10/1 to 12/31 | $0 |
| Period 2: | 1/1/20 to 9/30/20 | $1,459/month |
| Period 3: | 10/1 to 9/30/21 | $8,955/month |
| Period 4: | 10/1 to 9/30/22 | $9,879 |

I look forward to hearing from you soon!

Best,

**Ryan Kuther**
Senior Account Executive
Large Law Firms, Thomson Reuters
303.594.6296 (cell)

---

**From:** Anderson, Glen C. [mailto:ganderson@kmtg.com]
**Sent:** Thursday, July 18, 2019 5:43 PM
**To:** Kuther, Ryan (Legal) <ryan.kuther@thomsonreuters.com>
**Subject:** RE: Westlaw/Kronick

I appreciate your quick response.  I know the question will be asked on why we are adding $6500 to our cost for legal research because of the overlap and I think I understand from your response that is our only option if moving to Westlaw?  Your last proposal was inline (through the entire contract period) with what we currently have without the overlap.  With the overlap, it simply adds to our existing cost.

I understand if this is the best that can be offered to us and will put it forward if it is, but any change decision will be driven somewhat by the economics of doing so.  Thanks.

**Glen C. Anderson**

*Billing & Risk Manager*

**Kronick Moskovitz Tiedemann & Girard**

400 Capitol Mall | 27th Floor

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

Sacramento Sacramento...

916.321.4500 | T
916.321.4505 | D

**kmtg.com** | **vCard** | **map** | **ganderson@kmtg.com**



CONFIDENTIALITY: This communication may contain confidential information. If you are not the intended recipient, or believe that you have received this communication in error, please do not print, copy, retransmit, disseminate, or otherwise use the information. Also, please indicate to the sender that you have received this email in error, and delete the copy you received.

IRS CIRCULAR 230 DISCLOSURE: Pursuant to Treasury Regulations, any tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used or relied upon by you or any other person, for the purpose of (i) avoiding penalties under the Internal Revenue Code, or (ii) promoting, marketing or recommending to another party any tax advice addressed herein. Thank you.

**From:** Kuther, Ryan (Legal) [mailto:ryan.kuther@thomsonreuters.com]
**Sent:** Thursday, July 18, 2019 5:23 PM
**To:** Anderson, Glen C. <ganderson@kmtg.com>
**Subject:** Re: Westlaw/Kronick

Glen,
Thanks for the email!  I do understand that, however the only reason I can offer that rate for the first year is because you still have Lexis and it is 18 months (10/1) since you cancelled.  Otherwise if we wait until next year, we will not be able to offer that rate. The firm will be saving quite a bit of money from 4/1/2019 to 9/30/2019.

Let me know what other questions that you have.

Best,


Ryan Kuther
Senior Account Executive
Thomson Reuters
Medium Law Firms
303-594-6296

**From:** Anderson, Glen C. <ganderson@kmtg.com>
**Sent:** Thursday, July 18, 2019 5:11:56 PM
**To:** Kuther, Ryan (Legal)
**Subject:** RE: Westlaw/Kronick

Hi Ryan – We are concerned about the overlap of the first year beginning on 10/01/2019 in that while it is a favorable pricing model, we would be incurring those additional costs on top of our existing Lexis sub.  Can you re-work something for us, giving us a beginning date closer the the Lexis term date of 03/31/2019 (perhaps 03/01/2019)?  Thanks.. Glen Anderson

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

**Glen C. Anderson**

*Billing & Risk Manager*

**Kronick Moskovitz Tiedemann & Girard**

400 Capitol Mall | 27th Floor

Sacramento, CA 95814

916.321.4500 | T

916.321.4505 | D

**kmtg.com** | **vCard** | **map** | **ganderson@kmtg.com**

  

CONFIDENTIALITY: This communication may contain confidential information. If you are not the intended recipient, or believe that you have received this communication in error, please do not print, copy, retransmit, disseminate, or otherwise use the information. Also, please indicate to the sender that you have received this email in error, and delete the copy you received.

IRS CIRCULAR 230 DISCLOSURE: Pursuant to Treasury Regulations, any tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used or relied upon by you or any other person, for the purpose of (i) avoiding penalties under the Internal Revenue Code, or (ii) promoting, marketing or recommending to another party any tax advice addressed herein. Thank you.

**From:** Kuther, Ryan (Legal) [mailto:ryan.kuther@thomsonreuters.com]
**Sent:** Tuesday, July 16, 2019 12:02 PM
**To:** Anderson, Glen C. <ganderson@kmtg.com>
**Subject:** Re: Westlaw/Kronick

If you can that would be great. I'll call you now.

Ryan Kuther
Senior Account Executive
Thomson Reuters
Medium Law Firms
303-594-6296

**From:** Anderson, Glen C. <ganderson@kmtg.com>
**Sent:** Tuesday, July 16, 2019 11:59:52 AM
**To:** Kuther, Ryan (Legal)
**Subject:** RE: Westlaw/Kronick

Yes – do you want to move the 1:30 to now?

**Glen C. Anderson**

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

**Kronick Moskovitz Tiedemann & Girard**

400 Capitol Mall | 27th Floor

Sacramento, CA 95814

916.321.4500 | T

916.321.4505 | D

**kmtg.com** | **vCard** | **map** | **ganderson@kmtg.com**



CONFIDENTIALITY: This communication may contain confidential information. If you are not the intended recipient, or believe that you have received this communication in error, please do not print, copy, retransmit, disseminate, or otherwise use the information. Also, please indicate to the sender that you have received this email in error, and delete the copy you received.

IRS CIRCULAR 230 DISCLOSURE: Pursuant to Treasury Regulations, any tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used or relied upon by you or any other person, for the purpose of (i) avoiding penalties under the Internal Revenue Code, or (ii) promoting, marketing or recommending to another party any tax advice addressed herein. Thank you.

---

**From:** Kuther, Ryan (Legal) [mailto:ryan.kuther@thomsonreuters.com]
**Sent:** Tuesday, July 16, 2019 11:54 AM
**To:** Anderson, Glen C. <ganderson@kmtg.com>
**Subject:** Re: Westlaw/Kronick

You available now?

Ryan Kuther
Senior Account Executive
Thomson Reuters
Medium Law Firms
303-594-6296

---

**From:** Kuther, Ryan (Legal)
**Sent:** Monday, July 15, 2019 4:58:54 PM
**To:** Anderson, Glen C.
**Cc:** Kuther, Ryan (Legal)
**Subject:** RE: Westlaw/Kronick

To review on our call tomorrow, here is something I worked on for the firm over the weekend.  I have received approval to offer these options to the firm.  We can review tomorrow on our call.

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

Thanks Glen, and I look forward to speaking with you then.

Best,

**Ryan Kuther**
Senior Account Executive
Large Law Firms, Thomson Reuters
303.594.6296 (cell)

---

**From:** Anderson, Glen C. [mailto:ganderson@kmtg.com]
**Sent:** Friday, July 12, 2019 2:47 PM
**To:** Kuther, Ryan (Legal) <ryan.kuther@thomsonreuters.com>
**Subject:** RE: Westlaw/Kronick

Hi Ryan –

I will be honest upfront with you  - in terms of pricing - your proposal exceeds our current Lexis contract over the term and the term expected (4 years) exceeds our general comfort level.  If there is no room for negotiation on those numbers, or term - then I understand and it is what it is.

Let's set up a call for next week – preferably Tuesday.  I will then gather all of the information and I will prepare a report/recommendation to our Firm Board to discuss at their next Board meeting and hopefully can let you know our decision by mid-August.

Thanks.. Glen

**Glen C. Anderson**

*Billing & Risk Manager*

**Kronick Moskovitz Tiedemann & Girard**

400 Capitol Mall | 27th Floor

Sacramento, CA 95814

916.321.4500 | T

916.321.4505 | D

**kmtg.com** | **vCard** | **map** | **ganderson@kmtg.com**



CONFIDENTIALITY: This communication may contain confidential information. If you are not the intended recipient, or believe that you have received this communication in error, please do not print, copy, retransmit, disseminate, or otherwise use the information. Also, please indicate to the sender that you have received this email in error, and delete the copy you received.

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

IRS CIRCULAR 230 DISCLOSURE: Pursuant to Treasury Regulations, any tax advice contained in this communication (including any attachments) is not intended or written to be used,

and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any tax advice addressed herein. Thank you.

**From:** Kuther, Ryan (Legal) [mailto:ryan.kuther@thomsonreuters.com]
**Sent:** Friday, July 12, 2019 2:30 PM
**To:** Anderson, Glen C. <ganderson@kmtg.com>
**Subject:** Re: Westlaw/Kronick

Glen,
Thanks for the email!  I would love to meet in person however I am covering another territory right now and will be traveling for the next few weeks.  With my crazy schedule and vacation I would have to have a call with you on this.  Sooner than later as the numbers are time sensitive.  I can be flexible with a call so let me know what works for you.

Thanks Glen and have a great weekend!

Best,

Ryan Kuther
Senior Account Executive
Thomson Reuters
Medium Law Firms
303-594-6296

**From:** Anderson, Glen C. <ganderson@kmtg.com>
**Sent:** Friday, July 12, 2019 1:02:08 PM
**To:** Kuther, Ryan (Legal)
**Subject:** RE: Westlaw/Kronick

Hi Ryan – Thanks for providing this so quickly.  I would like to discuss particulars with you, but think a person-to-person meeting might be better (if possible).  Will you be in our area to meet with me sometime in the next few weeks?  If not, we can arrange for a call.  Let me know.  Thanks!

**Glen C. Anderson**

*Billing & Risk Manager*

**Kronick Moskovitz Tiedemann & Girard**

400 Capitol Mall | 27th Floor

Sacramento, CA 95814

916.321.4500 | T

916.321.4505 | D

**kmtg.com | vCard | map | ganderson@kmtg.com**



HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

CONFIDENTIALITY: This communication may contain confidential information. If you are not the intended recipient, or believe that you have received this communication in error, please do not print, copy, retransmit, disseminate, or otherwise use the information. Also, please indicate to the sender that you have received this email in error, and delete the copy you received.

IRS CIRCULAR 230 DISCLOSURE: Pursuant to Treasury Regulations, any tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used or relied upon by you or any other person, for the purpose of (i) avoiding penalties under the Internal Revenue Code, or (ii) promoting, marketing or recommending to another party any tax advice addressed herein. Thank you.

---

**From:** Kuther, Ryan (Legal) [mailto:ryan.kuther@thomsonreuters.com]
**Sent:** Friday, July 12, 2019 11:42 AM
**To:** Anderson, Glen C. <ganderson@kmtg.com>
**Subject:** RE: Westlaw/Kronick

Glen,
I worked something out for us to review.  Please see attached.  Let me know when we can discuss this next week.  I will be traveling to Portland, but we can set up a call that is convenient for you.

I look forward to hearing from you soon!

Best,

**Ryan Kuther**
Senior Account Executive
Large Law Firms, Thomson Reuters
303.594.6296 (cell)

---

**From:** Anderson, Glen C. [mailto:ganderson@kmtg.com]
**Sent:** Wednesday, July 10, 2019 11:30 AM
**To:** Kuther, Ryan (Legal) <ryan.kuther@thomsonreuters.com>; Wallace, Carol (Legal) <carol.wallace@thomsonreuters.com>
**Cc:** Tomkins, Molly (Legal) <molly.tomkins@thomsonreuters.com>
**Subject:** RE: Westlaw/Kronick

Hi Ryan –

I don't think we are interested in moving away from Lexis before our contract expires, which is 03/31/2020, however as we perform yearly budgeting early (usually October) and any change might affect our 2020 budget projections and any changes to this may affect our Print subs – I am starting this process as early as possible.

I'd like to meet with you to discuss our Firm research needs and work on obtaining a proposal together for our consideration.  If you could do some research beforehand to see what our site subscriptions included previously when we had Westlaw Next that would be helpful.  For comparison, our Lexis content subscription list is attached (and it is robust).  We also have Courtlink and Lexis for Microsoft Office included in our sub.

Thanks!  -Glen Anderson

**Glen C. Anderson**

*Billing & Risk Manager*

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

**Kronick Moskovitz Tiedemann & Girard**

400 Capitol Mall | 27th Floor

Sacramento, CA 95814

916.321.4500 | T

916.321.4505 | D

**kmtg.com** | **vCard** | **map** | **ganderson@kmtg.com**

  

CONFIDENTIALITY: This communication may contain confidential information. If you are not the intended recipient, or believe that you have received this communication in error, please do not print, copy, retransmit, disseminate, or otherwise use the information. Also, please indicate to the sender that you have received this email in error, and delete the copy you received.

IRS CIRCULAR 230 DISCLOSURE: Pursuant to Treasury Regulations, any tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used or relied upon by you or any other person, for the purpose of (i) avoiding penalties under the Internal Revenue Code, or (ii) promoting, marketing or recommending to another party any tax advice addressed herein. Thank you.

**From:** Kuther, Ryan (Legal) [mailto:ryan.kuther@thomsonreuters.com]
**Sent:** Wednesday, July 10, 2019 11:18 AM
**To:** Wallace, Carol (Legal) <carol.wallace@thomsonreuters.com>; Anderson, Glen C. <ganderson@kmtg.com>
**Cc:** Tomkins, Molly (Legal) <molly.tomkins@thomsonreuters.com>
**Subject:** Re: Westlaw/Kronick

Glen,
I hope you had a great holiday break!  Please feel free to reach out to me regarding Westlaw. We do have some great options for firms right now that are looking to come back to Westlaw even though they are still under contract with Lexis.

Happy to set up a call as well!  I look forward to hearing from you!

Best,

Ryan Kuther
Senior Account Executive
Thomson Reuters
Medium Law Firms
303-594-6296

**From:** Wallace, Carol (Legal)
**Sent:** Monday, July 8, 2019 9:18:02 AM
**To:** Anderson, Glen C.
**Cc:** Kuther, Ryan (Legal); Tomkins, Molly (Legal)
**Subject:** RE: Westlaw/Kronick

Hi Glen,

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

I hope you had an enjoyable 4th of July!

Thank you for reaching out.  Doug accepted another position outside of Thomson Reuters.  I have cc'd Ryan Kuther the account executive and Molly Tomkins the client manager on the email.  Ryan will reach out to early this week.

Let me know if you need anything else or have any questions.

Warm regards,

Carol

**Carol Wallace, J.D.**
Regional Manager, Sales and Client Management

**Thomson Reuters**
the answer company

Phone: 702 450-6474
Mobile: 702 241-8792
carol.wallace@thomsonreuters.com
thomsonreuters.com

---

**From:** Anderson, Glen C. <ganderson@kmtg.com>
**Sent:** Friday, July 05, 2019 2:15 PM
**To:** Wallace, Carol (Legal) <carol.wallace@thomsonreuters.com>
**Subject:** FW: Westlaw/Kronick

Hi Carol,

I hope this email finds you well.  I sent the email below to Doug Penson on 07/01/2019 and did not get a reply (perhaps he is on vacation?).  I wanted to make sure Doug would still be the person I speak to about our next renewal proposal.  Please let me know.

Thanks.. Glen Anderson

**Glen C. Anderson**

*Billing & Risk Manager*

**Kronick Moskovitz Tiedemann & Girard**

400 Capitol Mall | 27th Floor

Sacramento, CA 95814

916.321.4500 | T

916.321.4505 | D

**kmtg.com | vCard | map | ganderson@kmtg.com**



HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

CONFIDENTIALITY: This communication may contain confidential information. If you are not the intended recipient, or believe that you have received this communication in error,

please do not print, copy, retransmit, disseminate, or otherwise use the information. Also, please indicate to the sender that you have received this email in error, and delete the copy you received.

IRS CIRCULAR 230 DISCLOSURE: Pursuant to Treasury Regulations, any tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used or relied upon by you or any other person, for the purpose of (i) avoiding penalties under the Internal Revenue Code, or (ii) promoting, marketing or recommending to another party any tax advice addressed herein. Thank you.


-----Original Message-----
From: Anderson, Glen C.
Sent: Monday, July 1, 2019 7:30 AM
To: Penson, Douglas (Legal) <doug.penson@thomsonreuters.com>
Subject: Westlaw/Kronick

Good Morning Doug,

Some time soon, I'd like to arrange a call or meet with you and get a proposal for Westlaw online research (not sure if you still refer to it as Westlaw Next?) sub for our firm.  You may recall our current Lexis Advance sub can term 03/31/2020 with the option for us to pick it up for 2 additional years and I want to give my Board all options available before year end for our 2020 budgeting.

Let me know your availability and thanks.

Glen Anderson
Sent from my iPad

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

# Exhibit 4
## Associated Document

**To:**      EPRT[Thomson-CVMRevOptTeam@Thomsonreuters.com]
**From:**    Deppert, Peter (TR Finance)[/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=C0C4536FF8794119A1ADE84C6A88A9E5-U6069384]
**Cc:**      Casey, Kathleen[Kathleen.Casey@tr.com]
**Sent:**    Tue 7/30/2019 2:38:10 PM (UTC-05:00)
**Subject:** EPRT :KRONICK MOSKOVITZ TIEDEMANN ZW# 1000802146 REQUEST #1 Exception Request for: Out Clause
FW: Westlaw/Kronick

Hi All,

Please review the below exception request at your earliest convenience and let me know if you need additional information. Thanks!

| | Type | EPRT |
|---|---|---|
| | **Purpose** | Request |

| | | |
|---|---|---|
| | Segment: | **Mid-Size** |
| | ZW #: | 1000802146 |
| | Account Name : | **KRONICK MOSKOVITZ TIEDEMANN** |
| | Exception Type | **Out Clause** |
| | Exception Specific Product: | **Multiple Products** |

**Situation :**
- This comeback firm is requesting Opt-In for years 4 and 5 of a 5-year agreement.
- The agreement would not start until 10/1/2019 (when they are no longer tagged as a comeback firm.)

**Calculator pricing at 35 attorneys:**

| Product | Minimum | Recommended | Maximum |
|---|---|---|---|
| Premier with PMAP | $9,761 | $12,201 | $14,642 |

| Product | Minimum | Recommended | Maximum |
|---|---|---|---|
| Drafting Assistant | $473 | $592 | $710 |

**Rep Request for agreement effective 10/1/2019:**

**WL:**

| Periods | MG |
|---|---|
| Period 1 | $0 |
| Period 2 | $976 |

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

Period 3       $2,928

Period 4       $9,761

Period 5       $10,054

Period 6       $10,355

- Two-month bridge 10/1 – 12/31/2019
- Periods 4 & 5 would be opt-in.

**DA with promo:** $118 per month with 3% YOY

| SEGMENT/CVM RECOMMENDATION: | • I recommend to deny this request.<br>• They only reason they want opt years is because they might switch back to Lexis in the future and this above deal is already really solid for the customer.<br>• This customer left us last year for Lexis and approving this opt-in request would only perpetuate this behavior.<br><br>• With that said, it might be worth it to commit them for a potential 5 years by approving this exception. |
|---|---|
| **PRIOR EPRT APPROVALS** | • No prior approvals |

| CURRENT DEAL METRICS & SITUATION | | |
|---|---|---|
| | Submitting Rep Name: | **Ryan Kuther** |
| | Time Rep Requested | **1:59:00 PM** |
| | Quote ID | LLF329924 |
| | Submitting Rep's RFM: | **Carol Wallace** |
| | DFM | **TOM MCDONALD** |
| | Echelon Tag | **N/A** |
| | Echelon Attorney Count | **38** |
| | International Attorney Count | |
| | Domestic Attorney Count | **38** |
| | Current Market Variance: | **N/A** |
| | Monthly Guarantee: | **$-** |
| | Current ACV (WL only) | **$-** |

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

| Expiration Date: | |
|---|---|
| E3 Content Fit: | **No WL** |
| E3 Rate Fit: | |
| City | **SACRAMENTO** |
| Consultant Involved | **No** |
| Name of Consultant | |
| NDA Signed | **No** |

-Peter

**Peter Deppert**

Financial Analyst I
Contract Value Management
**THOMSON REUTERS**
the answer company
Tel: 651-848-9670

Sensitivity: Confidential

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

# Exhibit 5

**To:** You, Bridgett (Legal)[bridgett.you@thomsonreuters.com]
**Cc:** Hamm, Margaret (TR General Counsel)[margaret.hamm@thomsonreuters.com]
**From:** Deutsch, Jenny (TR Commercial Excellence)[/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=1ADFF4722B0C40F48BB5B8DE47949B95-C210683]
**Sent:** Wed 11/24/2021 11:40:47 AM (UTC-06:00)
**Subject:** FW: *High Priority* Kirkland: Westlaw Edge and PL Preferred w/DTS, Effective 12/1/2021
Kirkland_Ellis - WL_PL Contract (KE Edits)_(11564305_2).DOCX
Kirkland & Ellis SO Contract 12.23.14.PDF

Hey Bridgett

Kirkland has made several redlines to their order form. See attached.

Kirkland's redlines to the order form:
- Material Change
- Attorney Count language – we can update the count, but they also want the consecutive years removed
- Contingency – PL and WL are on the same contract so with your approval we can remove price contingency, however we still need to have language that if they cancel WL we need to move to PL. Do you think we should remove price contingency?
- RIA
- Rebate match Kirkland's current agreement

Also attached previous contract so you can see previous language.

Let us know your thoughts.

**Jenny Deutsch**
Manager Commercial Strategy, Policy & Enablement
**Thomson Reuters**

**Office** | 763-326-3886
jenny.deutsch@thomsonreuters.com

 **THOMSON REUTERS**®

---

**From:** O'Malley, Kathleen A. (Legal) <kathleen.omalley@thomsonreuters.com>
**Sent:** Wednesday, November 24, 2021 11:24 AM
**To:** Hamm, Margaret (TR General Counsel) <margaret.hamm@thomsonreuters.com>; Deutsch, Jenny (TR Commercial Excellence) <Jenny.Deutsch@thomsonreuters.com>
**Cc:** Gangl, Christopher (Legal) <christopher.gangl@thomsonreuters.com>; Morgan, Sean P. (Legal) <sean.morgan@thomsonreuters.com>; DeBasio, Cortney (Legal) <Cortney.DeBasio@thomsonreuters.com>; Stroup, Eric (Legal) <eric.stroup@thomsonreuters.com>; Sopher, Andrew M. (Legal) <andrew.sopher@thomsonreuters.com>; Williams, Tommy (Legal) <tommy.williams@thomsonreuters.com>
**Subject:** RE: *High Priority* Kirkland: Westlaw Edge and PL Preferred w/DTS, Effective 12/1/2021

Jenny,

Kirkland's redlines to the order form, such as Material Change, Attorney Count, Contingency, RIA, & Rebate match Kirkland's current agreement. Does business approve?

Looped in Margaret for the legal language edits.

Thanks,
Kathleen

---

**From:** Hamm, Margaret (TR General Counsel) <margaret.hamm@thomsonreuters.com>
**Sent:** Wednesday, November 24, 2021 11:15 AM

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

**To:** Deutsch, Jenny (TR Commercial Excellence) <Jenny.Deutsch@thomsonreuters.com>; O'Malley, Kathleen A. (Legal) <kathleen.omalley@thomsonreuters.com>

**Cc:** Gangl, Christopher (Legal) <christopher.gangl@thomsonreuters.com>; Morgan, Sean P. (Legal) <sean.morgan@thomsonreuters.com>; DeBasio, Cortney (Legal) <Cortney.DeBasio@thomsonreuters.com>; Stroup, Eric (Legal) <eric.stroup@thomsonreuters.com>; Sopher, Andrew M. (Legal) <andrew.sopher@thomsonreuters.com>; Williams, Tommy (Legal) <tommy.williams@thomsonreuters.com>

**Subject:** RE: *High Priority* Kirkland: Westlaw Edge and PL Preferred w/DTS, Effective 12/1/2021

I need to know what is accepted in the Order Form

**Margaret Hamm, MBA,  JD**
*she/her*
Manager of Commercial Contracts
Office of General Counsel

Phone: (763) 326-5450
Mobile: (612)749-5828
Fax: (651) 348-9322

margaret.hamm@thomsonreuters.com


. . . . . . . . . . . . . . . . . . . . . . . . . . .

This e-mail and anything transmitted with it are for the sole use of the intended recipient and contains information that may be attorney-client privileged and/or confidential. If you are not an intended recipient, please notify the sender by return e-mail and delete this e-mail and any attachments.

. . . . . . . . . . . . . . . . . . . . . . . . . . .

*Creating Innovative Solutions Together*




facebook.com/thomsonreuters
twitter.com/thomsonreuters
linkd.in/thomson_reuters

---

**From:** Deutsch, Jenny (TR Commercial Excellence) <Jenny.Deutsch@thomsonreuters.com>
**Sent:** Wednesday, November 24, 2021 11:14 AM
**To:** O'Malley, Kathleen A. (Legal) <kathleen.omalley@thomsonreuters.com>; Hamm, Margaret (TR General Counsel) <margaret.hamm@thomsonreuters.com>
**Cc:** Gangl, Christopher (Legal) <christopher.gangl@thomsonreuters.com>; Morgan, Sean P. (Legal) <sean.morgan@thomsonreuters.com>; DeBasio, Cortney (Legal) <Cortney.DeBasio@thomsonreuters.com>; Stroup, Eric (Legal) <eric.stroup@thomsonreuters.com>; Sopher, Andrew M. (Legal) <andrew.sopher@thomsonreuters.com>; Williams, Tommy (Legal) <tommy.williams@thomsonreuters.com>
**Subject:** RE: *High Priority* Kirkland: Westlaw Edge and PL Preferred w/DTS, Effective 12/1/2021

@Hamm, Margaret (TR General Counsel) – pushed to you in Apttus.

TR Signor will be Alex Medrano alex.medrano@thomsonreuters.com


**Jenny Deutsch**
Manager Commercial Strategy, Policy & Enablement
**Thomson Reuters**

**Office** | 763-326-3886
jenny.deutsch@thomsonreuters.com

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY



**From:** O'Malley, Kathleen A. (Legal) <kathleen.omalley@thomsonreuters.com>
**Sent:** Wednesday, November 24, 2021 11:05 AM
**To:** Hamm, Margaret (TR General Counsel) <margaret.hamm@thomsonreuters.com>; Deutsch, Jenny (TR Commercial Excellence) <Jenny.Deutsch@thomsonreuters.com>
**Cc:** Gangl, Christopher (Legal) <christopher.gangl@thomsonreuters.com>; Morgan, Sean P. (Legal) <sean.morgan@thomsonreuters.com>; DeBasio, Cortney (Legal) <Cortney.DeBasio@thomsonreuters.com>; Stroup, Eric (Legal) <eric.stroup@thomsonreuters.com>; Sopher, Andrew M. (Legal) <andrew.sopher@thomsonreuters.com>; Williams, Tommy (Legal) <tommy.williams@thomsonreuters.com>
**Subject:** *High Priority* Kirkland: Westlaw Edge and PL Preferred w/DTS, Effective 12/1/2021
**Importance:** High

Hello,

Please see attached language edits from Kirkland & Ellis on their WL Edge and PL Preferred w/DTA agreement, **effective 12/1/2021**.

1. Can you please confirm Kirkland's edits?
2. Per Firm's request, can you please share name and contact info of TR person signing off on the agreement?
3. Once the contract has been finalized, Kirkland will route it to the Thomson Reuters' signatory via their e-Signature tool.

The contract deadline states November 24th so we're pushing to get this wrapped up today for a December 1st start date.

Thank you for your prompt attention.

Kathleen

**From:** Habich, Ryan <ryan.habich@kirkland.com>
**Sent:** Wednesday, November 24, 2021 9:33 AM
**To:** O'Malley, Kathleen A. (Legal) <kathleen.omalley@thomsonreuters.com>
**Cc:** Morgan, Sean P. (Legal) <sean.morgan@thomsonreuters.com>; Black, Krista <krista.black@kirkland.com>; Batchen, Joan T. <jbatchen@kirkland.com>
**Subject:** [EXT] RE: LMA, Westlaw Edge and PL Preferred w/DTS

**External Email:** Use caution with links and attachments.

Good morning, Kathleen.

We reviewed the draft you sent over and made some revisions based on language found in our current and prior agreements. Also, pricing is pending internal approval. In the meantime, can you kindly get your legal team to sign off on these edits this morning, and provide us with the **name**, **title**, and **email address** of the person who will be signing on behalf of Thomson Reuters? Once the contract has been finalized we will route it to the Thomson Reuters' signatory via our e-Signature tool.

Thank you and have a terrific Thanksgiving holiday,

**Ryan Habich**
Sourcing Manager
------------------------------------------------
**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 3446
**F** +1 312 862 2200
------------------------------------------------
Ryan.Habich@kirkland.com

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

# Exhibit 5
## Associated Document
### (1 of 2)

**ORDER FORM –** SPECIAL OFFER



| CUSTOMER INFORMATION | | | |
|---|---|---|---|
| Account | 1000583766 | Contact Name | Joan Batchen |
| Name | Kirkland & Ellis LLP | Title | Senior Director Research & Knowledge Services |
| Address Line 1 | 300 N LA SALLE DR | Email | Joan.Batchen@kirkland.com |
| Address Line 2 | Chicago, IL  60654 | Phone | (312) 862-2399 |
| OFFER INFORMATION | | | |
| Agreement Number | 00097734.0 | Effective Date | 12/01/2021 |

| Material ID | Subscribed Products & Services | Authorized Users | Subscription Periods | Monthly Charges |
|---|---|---|---|---|
| 42523359 | Westlaw Edge Premier Plus | Enterprise | 12/01/2021 - 12/31/2021 | $ 607,594 |
| 41713640 | Dockets All-In | Enterprise | 1/01/2022 - 3/31/2022 | $ 619,749 |
| 40986784 | All RIA & WG&L | Enterprise | 4/01/2022 - 3/31/2023 | $ 666,227 |
| | | | 4/01/2023 - 3/31/2024 | $ 679,551 |
| | | | 4/01/2024 - 3/31/2025 | $ 693,143 |

| Material ID | Subscribed Products & Services | Authorized Users | Subscription Periods | Monthly Charges |
|---|---|---|---|---|
| 42924547 | Practical Law Connect Preferred Dynamic 2019 (incl. Corporate & Securities, EBEC, Finance, IP&T, Labor & Empl., Real Estate, Antitrust, Arbitration, Healthcare, Bankruptcy, Trust & Estates, Commercial, Procedural Civil Pract & Proc Lit, Specialist Litigation: Antitrust, Employment, IP, Securities & Enforcement, White Collar Crime & Investigations, Gov. Practice, Cross-Practice Collection: Financial Services, Life Sciences, Startups & Small Businesses, Commercial Lit, Knowledge Map, Quick Compare, What's Market Analytics, Interactive Matter Maps, Dynamic Answers) (U.S. Based Users Only) | Enterprise | 12/01/2021 - 3/31/2022 | $ 99,130 |
| | | | 4/01/2022 - 3/31/2023 | $ 108,052 |
| | | | 4/01/2023 - 3/31/2024 | $ 113,454 |
| | | | 4/01/2024 - 3/31/2025 | $ 117,992 |

This Order Form is a legal document between Customer and West Publishing Corporation. West Publishing Corporation is referred to as "Thomson Reuters", "we" or "our" and Customer will be referred to as "you", "Subscriber", "I" or "Client".

Effective January 1, 2022, West Publishing Corporation will be assigning this agreement to its affiliate, Thomson Reuters Enterprise Centre GmbH as it relates to certain products and services. More information concerning the assignment can be found at https://www.thomsonreuters.com/assignmentinfo.

Upon such assignment, the following will apply:

This Order Form is a legal document between Customer and
A. Thomson Reuters Enterprise Centre GmbH, to the extent that products or services will be provided by Thomson Reuters Enterprise Centre GmbH, and/or
B. West Publishing Corporation, to the extent that products or services will be provided by West Publishing Corporation.

A detailed list of products and services that will be provided by each entity and the current applicable IRS certification forms are available at: https://www.thomsonreuters.com/assignmentinfo

West Publishing Corporation may act as an agent on behalf of Thomson Reuters Enterprise GmbH with respect to billing and collecting payment from Customer. Thomson Reuters Enterprise Centre GmbH and West Publishing Corporation will be referred to as "Thomson Reuters", "we" or "our," in each case with respect to the products and services it is providing, and Customer will be referred to as "you", "Subscriber", "I" or "Client".

1.  **The General Terms and Conditions**, The Thomson Reuters General Terms and Conditions located at https://static.legalsolutions.thomsonreuters.com/static/ThomsonReuters-General-Terms-Conditions.pdf, which are also attached hereto as Exhibit A and incorporated herein, apply to all products licensed on this order form, as modified herein.  Paragraph 10 (a) of the Thomson Reuters General Terms and Conditions does not apply and this order form will not automatically renew, unless otherwise stated below.  In the event that there is a conflict of terms between the Thomson Reuters General Terms and Conditions and this order form, the terms of this order form control.  The parties acknowledge their mutual intention that the Thomson Reuters General Terms and Conditions, as modified herein, will apply to any products not included herein, but subscribed to in the future, subject to any additional terms agreed between the parties in writing at such time.

2.  **Charges, Payments & Taxes.** You agree to pay all charges in full within 30 days of the date of invoice. You are responsible for any applicable sales, use, value added tax (VAT), etc. unless you are tax exempt.

3.  **Excluded Charges.** If you access products or services that are not included in your subscription you will be charged our then-current rate ("Excluded Charges").  Excluded Charges will be invoiced and due with your next payment. For your reference, the current Excluded Charges schedules are located at http://legalsolutions.com/schedule-a-library-law-firm, and Excluded Charges change from time-to-time upon 30 days written or online notice. We may, at our option, make certain products and services Excluded Charges if we are contractually bound or otherwise required to do so by

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

a third party provider or if products or services are enhanced or if new products or services are released after the effective date of this ordering document. Modification of Excluded Charges or Schedule A rates is not a basis for termination under paragraph 10 of the General Terms and Conditions.

4. **Returns and Refunds.** Charges for Westlaw (including Westlaw China, Campus Research, Paralegal, Patron Access and Correctional Facilities), CLEAR (including CLEAR Cap), Monitor Suite, ProView eBooks, West LegalEdcenter, Software, TREWS, Serengeti, Practice Solutions, Library Maintenance Agreement and Special Offer/print agreements are not refundable. Please see static.legalsolutions.thomsonreuters.com/static/returns-refunds.pdf or contact Customer Service at 1-800-328-4880 for additional details regarding our policies on returns and refunds.

5. **Transportation Charges for Print Products.** Print products are shipped F.O.B. origin. Transportation charges will be added for expedited shipments made at your request and for international product delivery. Expedited shipments and international product shipments will be charged at then-current carrier rates.

6. **Applicable Law.** If you are a state or local governmental entity, your state's law will apply, and any claim may be brought in the state or federal courts located in your state.  If you are a non-governmental entity, this ordering document will be interpreted under New York state law. Any claim by one of us may be brought in the state or federal courts in New York. If you are a United States Federal Government customer, United States federal law will apply, and any claim may be brought in any federal court.

7. **Confidentiality.** You understand that disclosure of the terms contained in this ordering document would cause competitive harm to us, and you agree not to disclose these terms to any third person.

8. **Termination.** This ordering document shall terminate simultaneously with termination of the General Terms and Conditions.

9. **Settling a Disputed Balance.** Payments marked "paid in full", or with any other restrictive language, will not operate as an accord and satisfaction without our prior written approval.  We reserve our right to collect any remaining amount due to us on your account.  Partial payments intended to settle an outstanding balance in full must be sent to our collection agent at: Customer Service, 610 Opperman Drive, P.O. Box 64833, Eagan, MN 55123-1803, along with a written explanation of the disagreement or dispute.  This address is different from the address you use to make account payments.

10. **Passwords.** For our products accessed by individually issued passwords, each user, including each user that receives training, must purchase and be assigned his/her own password. Passwords may only be used by the person to whom the password is issued. Sharing of passwords between or among your personnel is STRICTLY PROHIBITED. We reserve the right to issue additional passwords to you and charge you for such additional password if we learn that a password has been used by a person other than the person to whom the password has been issued.

11. **Material Change.**  If, at any time during the term of this ordering document, there is a material change in your organizational structure including, but not limited to merger, acquisitions, divestitures, downsizing or dissolution, the parties agree to immediate good faith renegotiation of the terms and conditions of this ordering document, during which we may modify your rates.  If you acquire the assets of another entity that is a current subscriber, you will pay an amount equal to the acquired entity's average monthly invoices during the 12 months preceding the merger or acquisition (less any "Excluded Charges", as defined herein), until a superseding agreement is negotiated in good faith.

12. **Westlaw and CLEAR Products Only.**  Due to the regulated or private nature of some data in our information products such as credit header data, motor vehicle data, driver license data and voter registration data, you may need to complete a credentialing process which will include certifying what your legally permissible use of the data will be.  You agree to immediately notify us if any of the information you provided in your ordering document or during the credentialing process changes.  You agree and warrant that you will strictly limit the access, use and distribution of this data to uses permitted under applicable laws, rules and regulations and as permitted by the third-party additional terms.  You will keep the data confidential.  You will use industry standard administrative, physical and technical safeguards to protect the data.  You will not disclose it to anyone except as necessary to carry out your permissible use.  You will immediately report any misuse, abuse or compromise of the data.  You agree to cooperate with any resulting inquiry.  If we reasonably believe that the data has been misused, abused or compromised, we may block access without additional notice.  You are responsible for all damages caused by misuse, abuse or compromise of the data by you, your employees and any person or entity with whom you shared the data.  We will be responsible for damages caused by us.  We are not a consumer reporting agency.  You may use information product data to support your own processes and decisions, but you may not deny any service or access to a service to a consumer based solely upon the information product data.  Examples of types of service include eligibility for credit or insurance, employment decision and any other purpose described in the Fair Credit Reporting Act (15 U.S.C.A. 1681b).  If the Financial Industry Regulatory Authority regulations apply to you, you may use our information products to verify the accuracy and completeness of information submitted to you by each applicant for registration on Form U4 or Form U5 in compliance with the requirements of FINRA Rule 3110.  You may use the information products in this manner only in furtherance of written policies and procedures that are designed to achieve your compliance with FINRA Rule 3110 or as otherwise allowed by the General Terms and Conditions.  You may transmit Westlaw data electronically using a feature in the information product or print and share that information product data as necessary in the regular course of your business.

13. **Attorney Count.** You currently have 3,304 attorneys (e.g., full-time and part-time partners, associates, contract attorneys, staff attorneys, of counsel and the like).  For purposes of determining yearly attorney growth or decline, you will confirm your then-current attorney count within 30 days before each December 1  For each 15% increase or decrease in your attorney count over one Subscription Period, or should that not occur, then for each 15% increase or decrease in your attorney count across the preceding Subscription Period, your Monthly Charges will increase or decrease by 3%, respectively, for the following Subscription Period.  West will provide written confirmation of any increase or decrease in the Monthly Charges.

14. **RIA & Warren Gorham & Lamont**.  During the term of this order form, you will have access to and use of the products as set forth herein at no additional charge. You acknowledge that you currently have an agreement in effect with Thomson Reuters Tax and accounting ("TRTA") for certain TRTA online research products ("TRTA Agreement"). In the event of a termination of the TRTA Agreement for those specific libraries on Checkpoint or if TRTA and you fail to execute a superseding TRTA Agreement, your access to an use of the products set forth herein will be billed as Excluded Charges effective on the first day of the month following such termination or expiration..

15.   **Rebate.**

The Monthly Rebate will be extended through March 31, 2025. During the Term, West shall issue to Subscriber a Monthly Rebate which can be applied to new purchases and/or the incremental increase associated with an upgrade of products set forth herein with such rebate not to exceed the

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

Monthly Rebate amounts set forth below for any month. Any unused Monthly Rebate amount shall not be carried forward into future Periods. The Monthly Rebate may NOT be applied toward the purchase or upgrade of Non-US Products.

- December 1, 2021 to March 31, 2022, the Monthly Rebate shall be $5,000.
- April 1, 2022 to March 31, 2023, the Monthly Rebate shall be $5,000.
- April 1, 2023 to March 31, 2024, the Monthly Rebate shall be $5,000.
- April 1, 2024 to March 31, 2025, the Monthly Rebate shall be $5,000.

Subscriber's Monthly Rebate may be applied toward the purchase or upgrade of any of the following products:

- Legal Managed Services
- Peer Monitor
- eBillingHub
- Elite Maintenance

16. **Excluded Charges Credit**.  During the term, you will receive a credit of $5,000 per month ("Excluded Charges Credit") to be applied to Excluded Charges incurred.  Any unused portion of the Excluded Charges Credit will expire monthly and will not be carried forward to future months.

17. **Prior Agreement**.  The parties agree that the Westlaw Special Offer Amendment to Subscriber Agreement, as well as the Special Offer Agreement for Practical Law currently in effect between the parties will terminate as of the effective date of this ordering document.

18. **Modifications to the Thomson Reuters General Terms and Conditions.**  The following modifications are made to the Thomson Reuters General Terms and Conditions:

(a)     The first sentence of Section 1(i) Services is amended and restated as follows: "We will provide the services using reasonable skill and care, consistent with industry standards."

(b)     The following is added to Section 1(j) Security:  Notwithstanding anything to the contrary herein, the parties agree to abide by the terms of the Data Security Addendum, attached hereto as Exhibit B and incorporated herein."

(c)     The following is added to Section 6 Privacy: "Notwithstanding anything to the contrary herein, the parties agree to abide by the terms of the GDPR Annex and CCPA Data Processing Addendum, attached hereto as Exhibit C and Exhibit D, respectively, and incorporated herein."

(d)     The following is added to Section 7, Confidentiality: "Each party shall exercise no less than a reasonable standard of care in safeguarding the confidential information."

(e)     The first sentence of Section 9(b) Liability, Unlimited Liability, is amended and re-stated as follows:  Section 9(a) does not limit either party's liability for (i) fraud, fraudulent misrepresentation, willful misconduct, gross negligence, or conduct that demonstrates reckless disregard for the rights of others; (ii) negligence causing death or personal injury; or (iii) breach of confidentiality obligations as set forth in Section 7,  breach the data security obligations as set forth in Section 1(j); or breach of the data processing obligations as set forth in Section 6."

(f)     Section 9(c), Third Party Intellectual Property is removed in its entirety.

(g)     Section 9(d) Your Obligations is removed in its entirety.

(h)     The following is added to Section 10(d), Effect of Termination: "In the event Thomson Reuters terminates the Agreement due to a product or service discontinuation, Thomson Reuters will refund, on a pro rata basis, fees that you have paid for the affected product or service for the unused period following the effective date of termination."

(i)     Section 10(e) Amendments is amended and restated as follows:  "These General Terms and Conditions may only be amended by the parties by a subsequent written agreement, executed by each party's duly authorized representatives."

(j)     The second and third sentences of Section 13(a) Assignment are amended and restated as follows: "We may assign or otherwise transfer the Agreement (including any of our rights or remedies) in whole or in part to an affiliate or any entity that succeeds to all or substantially all of the assets or business associated with one or more products or services, provided such assignment or transfer does not constitute a material conflict of interest to you, and will notify you of any such assignment or transfer. Should such conflict of interest exist, you may terminate the Agreement immediately upon written notice. We may subcontract any of the services in our sole discretion, provided such subcontractor are subject to the same obligations as Thomson Reuters herein."

(k)     The following sentence is added to Section 13(b) Feedback: "Notwithstanding the foregoing, Thomson Reuters will not use any of your trademarks, trade names, or other proprietary marks in any manner, including for a reference account or advertisement."

**ACKNOWLEDGMENT**

This agreement is a binding agreement between Customer and the Thomson Reuters entities executing this letter of understanding, to the extent each Thomson Reuters entity is providing the products and/or services.

**Kirkland & Ellis LLP**                                                          **WEST PUBLISHING CORPORATION**

_____                         _____
Signature                                    Date                    Signature                                    Date

_____                         _____

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| Name (please print) | | Name (please print) |
| Title | | Title |

For internal use only: Legal Contact for non-standard arrangements:

### SUBSCRIBER INFORMATION EXHIBIT

| SUBSCRIBER OFFICE & ADMINISTRATOR INFORMATION | | | | | | | |
|---|---|---|---|---|---|---|---|
| Subscriber's Offices (City, State) | Password/License Administrator Name[1] | Code | Email Address | Department/Practice Group | Product | % of Total Users by Location[2] | Server Location (Y/N) |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

[1] Administrators are counted as a user on per user subscriptions
[2] Taxes for software products will be based on % of Total Users by Location

### SPECIAL OFFER BILLING OPTIONS (FOR MULTIPLE LOCATIONS ONLY)

___**DEFAULT.** UNLESS OTHERWISE SPECIFIED, YOU WILL RECEIVE ONE COMBINED MONTHLY INVOICE AND A COPY OF EACH PARTICIPATING ACCOUNT'S LOCATION USAGE REPORTS - ALL MAILED TO THE PAYER ACCOUNT OFFICE.

___**AS IS.** Your current billing arrangement should remain unchanged.

___**ALTERNATIVE #2.** Each account will be billed separately, each receiving an invoice and a location usage report.  Special offer adjustments will be allocated to the individual accounts based on their actual usage charges.

___**ALTERNATIVE #3. (Not available for orders with concurrent users)** An invoice and location usage report will be created for each office, allocating special offer adjustments to individual accounts based on their actual usage charges, however each account invoice and associated location usage reports will be independently mailed to the account noted below rather than to the invoiced account location.
Mail to Account:_____

**Please note:  These billing arrangements do not affect Quickview+.**

### EXHIBIT A - THOMPSON REUTERS GENERAL TERMS AND CONDITIONS VERSION 2.1

These terms govern your use of the Thomson Reuters products and services in your order form (in any format). "We", "our" and "Thomson Reuters" means the Thomson Reuters entity identified in the order form and, where applicable, its affiliates; "you" and "your" means the client, customer or subscriber identified in the order form.

Your order form identifies the products and services, the quantities, charges and other details of your order. The order form also refers to and incorporates documents which may apply to the products or services you selected. The order form, applicable incorporated documents and these terms constitute the complete agreement (the "Agreement") and supersede any prior and contemporaneous discussions, agreements or representations and warranties regarding your order. Other terms and conditions you incorporate in any purchase order or otherwise are not part of the Agreement and do not apply. If you are permitted to provide an affiliate with access to any part of the products or services, you will ensure that such affiliate complies with all provisions of the Agreement applicable to you.

#### 1. OUR PRODUCTS & SERVICES

(a)   **Limited License.** Together with our licensors, we own and retain ownership of all rights of whatever nature in and to our products, services, and data (whether tangible or intangible). You may access, view, install, use, copy, modify and distribute our property only as expressly specified in the Agreement and each of us shall at all times act in accordance with applicable laws, including export controls and economic sanctions that apply to us in connection with the Agreement.

(b)   **Changes to Service.** Our products and services change from time to time, but we will not change the fundamental nature of our products or services.

(c)   **Passwords.** Your access to certain products and services is password protected. You are responsible for assigning the passwords and for ensuring that passwords are kept confidential. Sharing passwords is strictly prohibited

Each of us shall maintain industry standard computing environments to ensure that both your and our property is secure and inaccessible to unauthorized persons.

(d)   **Unauthorized Technology.** Unless previously authorized by Thomson Reuters, you must not (i) run or install any computer software or hardware on our products, services or network; use any technology to automatically download, mine, scrape or index our data; or (ii) automatically connect (whether through APIs or otherwise) our data to other data, software, services or networks. Neither of us will knowingly introduce any malicious software or technologies into any products, services or networks.

(e)   **Usage Information.** We may collect information related to you or your use of our products, services and data. We may use this information to (i) test, develop and improve our products and services and create and own derivative

3/1/2020 U.S.

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

1074.dot

works based on such information, provided such information is not identifiable to you or any other person and (ii) to protect and enforce our rights under the Agreement, and we may pass this information to our third party providers for the same purposes.

(f)    **Third Party Providers.** Our products and services may include data and software from third parties. Some third party providers require Thomson Reuters to pass additional terms through to you. The third party providers change their terms occasionally and new third party providers are added from time to time. To see the current third party additional terms for our products and services click the following URL: www.thomsonreuters.com/thirdpartyterms. You agree to comply with all applicable third party terms.

(g)    **Third Party Supplemental Software.** You may be required to license third party software to operate some of our products and services. Additional terms may apply to the third party software.

(h)    **Limitations.** Unless otherwise expressly permitted in the Agreement, you may not: (i) sell, sublicense, distribute, display, store, copy, modify, decompile or disassemble, reverse engineer, translate or transfer our property in whole or in part, or as a component of any other product, service or material; (ii) use our property or our third party providers' property to create any derivative works or competitive products; or (iii) allow any third parties to access, use or benefit from our property in any way. Exercising legal rights that cannot be limited by agreement is not precluded. If you are in the business of providing audit, tax, accounting, or legal services to your clients, this Section 1(h) does not preclude you from using our products and services to benefit your clients in the ordinary course of your business. Except as expressly set forth in this Agreement we retain all rights and you are granted no rights in or to our products, services and data.

(i)    **Services.** We will provide the services using reasonable skill and care. The professional services applicable to your order, if any, are described in the ordering document or a statement of work.

(j)    **Security.** Each of us will use and will require any third party data processors to use industry standard organizational, administrative, physical and technical safeguards to protect the other's data. Each party will inform the other in accordance with applicable law if such party becomes aware of any unauthorized third-party access to the other party's data and will use reasonable efforts to remedy identified security vulnerabilities.

(k)    **Your Responsibilities.** You are responsible for and/or will take all necessary steps to ensure or regarding (i) proper use of our products and services in accordance with all usage instructions and operating specifications; (ii) adherence to the minimum recommended technical requirements; (iii) changes you make to our product, services or data; (iv) your combination of our products, services, data or other property with any other products, services, data or other property; (v) implementing and maintaining proper and adequate virus or malware protection and proper and adequate backup and recovery systems; and (vi) installing updates.

## 2.    INFORMATION SERVICES

(a)    **License.** In the ordinary course of your business and for your internal business purposes only you may view, use, download and print data from our information services for individual use and may on an infrequent, irregular and ad hoc basis, distribute limited extracts of our data. Neither such extracts nor downloaded, printed or stored data may reach such quantity as to have independent commercial value and using such data as a substitute for any service (or a substantial part of it) provided by Thomson Reuters, our affiliates or our third party providers is prohibited. Where data is permitted to be used or distributed, Thomson Reuters and the third party content provider, if applicable, must be cited and credited as the source. Copyright notices must be retained on transmitted or printed items. Access to certain data may be restricted depending on the scope of your license.

(b)    **Further Distribution.** You may also distribute our data: (i)to authorized users; (ii) to government and regulatory authorities, if specifically requested; and (iii) to third party advisors, limited to the extent required to advise you and provided they are not competitors of Thomson Reuters. Laws applicable in your jurisdiction may allow additional uses.

## 3.    INSTALLED SOFTWARE

(a)    **License.** You may install and use our software and documentation only for your own internal business purposes. Software licenses include updates (bug fixes, patches, maintenance releases), and do not include upgrades (releases or versions that include new features or additional functionality) or APIs unless expressly stated in the order form. Your order form details your permitted installations, users, locations, the specified operating environment and other permissions. You may use our software in object code only. You may make necessary copies of our software only for backup and archival purposes.

(b)    **Delivery.** We deliver our software by making it available for download. When you download our software and documentation, if any, you are accepting it for use in accordance with the Agreement.

## 4.    SOFTWARE AS A SERVICE (SaaS)

(a)    **License.** You may use our SaaS only for your own internal business purposes.

(b)    **Delivery.** We deliver our SaaS by providing you with online access to it. When you access our SaaS, you are accepting it for use in accordance with the Agreement.

(c)    **Content.** Our SaaS is designed to protect the content you upload. You grant Thomson Reuters permission to use, store and process your content in accordance with applicable law. Access and use of your content by Thomson Reuters, our employees and contractors will be directed by you and limited to the extent necessary to deliver the SaaS, including training, research assistance, technical support and other services. We may delete or disable your content if required under applicable laws and in such instances, we will use our reasonable efforts to provide notice to you. If your content is lost or damaged, we will assist you in restoring the content to the SaaS from any available backup copy.

## 5.    CHARGES

(a)    **Payment and Taxes.** You must pay our charges within 30 days of the date of invoice in the currency stated on your order form. If you are a non-government subscriber and you fail to pay your invoiced charges, you are responsible for collection costs including legal fees. You must also pay applicable taxes and duties, other than taxes on our income, in addition to the price quoted unless you provide valid proof that you are exempt. Invoice disputes must be notified within 15 days of the date of the invoice.

(b)    **Changes.** During the term, we can increase, or adjust the basis for calculating, the charges on a periodic basis as set out in your order form. Except as otherwise specifically stated in the order form, we may increase, or adjust the basis for calculating, the charges for our products and services with effect from the start of each renewal term by giving you at least 90 days written notice.

(c)    **Excess Use.** You must pay additional charges if you exceed the scope of use specified in your order form, based on the rates specified on the order form or our current standard pricing, whichever is greater. We may change the charges if you merge with, acquire or are acquired by another entity which results in additional access to our products, services or data.

## 6.    PRIVACY

Each of us will at all times process, protect and disclose personally identifiable information received as a result of this Agreement ("PII") in accordance with applicable law. Each of us will use reasonable efforts to assist one another in relation to the investigation and remedy of any claim, allegation, action, suit, proceeding or litigation with respect to the unauthorized or unlawful destruction, loss, alteration, disclosure or access to PII. You acknowledge and agree to the transfer and processing of PII in the geographical regions necessary for Thomson Reuters to fulfill our obligations. When applicable to your location, additional terms will apply to the Agreement, including our General Data Protection Regulation (2016/679) (GDPR) terms located at www.tr. com/privacy-information.

## 7.    CONFIDENTIALITY

Confidential information received from each other will not be disclosed to anyone else except to the extent required by law or as permitted under the Agreement. If a court or government agency orders either of us to disclose the confidential information of the other, the other will be promptly notified so that an appropriate protective order or other remedy can be obtained unless the court or government agency prohibits prior notification. This section shall survive three (3) years after the termination of the Agreement or until the confidential information is no longer deemed confidential under applicable law, whichever occurs first.

## 8.    WARRANTIES AND DISCLAIMERS

**ALL WARRANTIES, CONDITIONS AND OTHER TERMS IMPLIED BY STATUTE OR COMMON LAW INCLUDING, WITHOUT LIMITATION, WARRANTIES OR OTHER TERMS AS TO SUITABILITY, MERCHANTABILITY, SATISFACTORY QUALITY AND FITNESS FOR A PARTICULAR PURPOSE, ARE EXCLUDED TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAWS. IN ENTERING THIS AGREEMENT, NEITHER PARTY HAS RELIED UPON ANY STATEMENT, REPRESENTATION, WARRANTY OR AGREEMENT OF THE OTHER PARTY EXCEPT FOR THOSE EXPRESSLY CONTAINED IN THIS AGREEMENT.**

(a)    EXCLUSION OF WARRANTIES. UNLESS OTHERWISE EXPRESSLY STATED IN THE AGREEMENT, AND TO THE FULLEST EXTENT PERMISSIBLE UNDER APPLICABLE LAWS, WE DO NOT WARRANT OR REPRESENT OR INCLUDE ANY OTHER TERM THAT THE PRODUCTS OR SERVICES WILL BE DELIVERED FREE OF ANY INACCURACIES, INTERRUPTIONS, DELAYS, OMISSIONS OR

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

ERRORS, OR THAT ANY OF THESE WILL BE CORRECTED AND WE WILL NOT BE LIABLE FOR ANY DAMAGES RESULTING FROM SUCH FAULTS. WE DO NOT WARRANT THE LIFE OF ANY URL OR THIRD PARTY WEB SERVICE.

(b)   INFORMATION. OUR INFORMATION PRODUCTS ARE PROVIDED "AS IS" WITHOUT ANY WARRANTY, CONDITION OR ANY OTHER TERM OF ANY KIND.

(c)   SOFTWARE. WE WARRANT THAT OUR SOFTWARE PRODUCTS WILL SUBSTANTIALLY CONFORM TO OUR DOCUMENTATION FOR 90 DAYS AFTER DELIVERY. IF DURING THIS WARRANTY PERIOD WE ARE UNABLE TO CORRECT, WITHIN A REASONABLE TIME PERIOD AND MANNER, A SOFTWARE ERROR YOU REPORT TO US, YOU MAY TERMINATE THE ORDER FORM FOR THE AFFECTED SOFTWARE BY PROMPT WRITTEN NOTICE TO US FOLLOWING THE REASONABLE PERIOD AND THE LICENSES WILL IMMEDIATELY TERMINATE. YOUR ONLY REMEDY AND OUR ENTIRE LIABILITY FOR BREACH OF THIS WARRANTY WILL BE A REFUND OF THE APPLICABLE CHARGES.

(d)   DISCLAIMER. YOU ARE SOLELY RESPONSIBLE FOR THE PREPARATION, CONTENT, ACCURACY AND REVIEW OF ANY DOCUMENTS, DATA, OR OUTPUT PREPARED OR RESULTING FROM THE USE OF ANY PRODUCTS OR SERVICES AND FOR ANY DECISIONS MADE OR ACTIONS TAKEN BASED ON THE DATA CONTAINED IN OR GENERATED BY THE PRODUCTS OR SERVICES.

(e)   NO ADVICE. WE ARE NOT PROVIDING FINANCIAL, TAX AND ACCOUNTING, LEGAL, COMPLIANCE OR ANY OTHER PROFESSIONAL ADVICE BY ALLOWING YOU TO ACCESS AND USE OUR PRODUCTS, SERVICES OR DATA. YOUR DECISIONS MADE IN RELIANCE ON THE PRODUCTS OR SERVICES OR YOUR INTERPRETATIONS OF OUR DATA ARE YOUR OWN FOR WHICH YOU HAVE FULL RESPONSIBILITY. WE ARE NOT RESPONSIBLE FOR ANY DAMAGES RESULTING FROM ANY DECISIONS BY YOU OR ANYONE ACCESSING THE SERVICES THROUGH YOU MADE IN RELIANCE ON THE SERVICES, INCLUDING FINANCIAL, TAX AND ACCOUNTING, LEGAL COMPLIANCE, OR ANY OTHER PROFESSIONAL ADVICE. YOU AGREE THAT YOU USE THE SERVICES AT YOUR OWN RISK IN THESE RESPECTS.

## 9.   LIABILITY

(a)   LIMITATION. EACH PARTY'S OR ANY OF ITS THIRD PARTY PROVIDERS' ENTIRE LIABILITY IN ANY CALENDAR YEAR FOR DAMAGES ARISING OUT OF OR IN CONNECTION WITH THE AGREEMENT, INCLUDING FOR NEGLIGENCE, WILL NOT EXCEED THE AMOUNT PAYABLE IN THE PRIOR 12 MONTHS FOR THE PRODUCT OR SERVICE THAT IS THE SUBJECT OF THE CLAIM FOR DAMAGES (OR, IF THE CLAIM IS MADE WITHIN THE FIRST 12 MONTHS, 12 TIMES THE AVERAGE OF THE MONTHLY CHARGES PAID). IN NO EVENT SHALL WE OR OUR THIRD PARTY PROVIDERS BE LIABLE FOR ANY PENALTIES, INTEREST, TAXES OR OTHER AMOUNTS IMPOSED BY ANY GOVERNMENTAL OR REGULATORY AUTHORITY. NEITHER PARTY IS LIABLE TO THE OTHER FOR INDIRECT, INCIDENTAL, PUNITIVE, SPECIAL OR CONSEQUENTIAL DAMAGES, FOR LOSS OF DATA, OR LOSS OF PROFITS (IN EITHER CASE, WHETHER DIRECT OR INDIRECT) EVEN IF SUCH DAMAGES OR LOSSES COULD HAVE BEEN FORESEEN OR PREVENTED.

(b)   Unlimited Liability. Section 9(a) does not limit either party's liability for (i) fraud, fraudulent misrepresentation, willful misconduct, or conduct that demonstrates reckless disregard for the rights of others; (ii) negligence causing death or personal injury; or (iii) infringement of intellectual property rights. Section 9(a) does not limit your indemnification obligations in Section 9(d) or your obligation to pay the charges on the order form and all amounts for use of the products and services that exceed the usage permissions and restrictions granted to you. Nothing in this Agreement limits liability that cannot be limited under law.

(c)   Third Party Intellectual Property. If a third party sues you claiming that our products, services or data, excluding any portions of the same provided by our third party providers infringes their intellectual property rights and your use of such products, services or data has been in accordance with the terms of the Agreement, we will defend you against the claim and pay damages that a court finally awards against you or that are included in a settlement approved by Thomson Reuters, provided the claim does not result from: (i) a combination of all or part of our products, services or data with technology, products, services or data not supplied by Thomson Reuters; (ii) modification of all or part of our products, services or data other than by Thomson Reuters or our subcontractors;

(iii)   use of a version of our products, services or data after we have notified you of a requirement to use a subsequent version; or (iv) your breach of this Agreement. Our obligation in this Section 9(c) is conditioned on you (A) promptly notifying Thomson Reuters in writing of the claim; (B) supplying

information we reasonably request; and (C) allowing Thomson Reuters to control the defense and settlement.

(d)   Your Obligations. You are responsible for any loss, damage or cost we and our affiliates incur arising out of or in connection with a third party claim, or a regulatory fine or penalty, connected to: (i) an allegation that our or our affiliates' use of the information data, software, or other materials provided to us by you or on your behalf, which we are required to host, use or modify in the provision of our products, services or data infringes the intellectual property rights of a third party (except to the extent of any indemnity we provide you under clause 9(c) (Third Party Intellectual Property); (ii) your or your sub-contractors' use of our products, services or data, including communications and networks, in breach of the Agreement; (iii) our or our affiliates' compliance with any instruction given by you to us in the course of the provision of our products, services or data ; or

(iv)   an assertion by any person accessing or receiving the benefit of any part of our products, services or data through you.

(e)   We will not be responsible if our product or service fails to perform because of your third party software, your hardware malfunction, or your actions or inaction. If we learn that our product or service failed because of one of these, we also reserve the right to charge you for our work in investigating the failure. At your request we will assist you in resolving the failure at a fee to be agreed upon.

## 10.   TERM, TERMINATION

(a)   Term. The term and any renewal terms for the products and services are described in your order form. If not otherwise stated in the order form, the Agreement will automatically renew annually unless either of us gives the other at least 60 days written notice before the end of the then current term.

(b)   Suspension. We may on notice terminate, suspend or limit your use of any portion or all of our products, services or other property if (i) requested to do so by a third party provider, court or regulator; (ii) you become or are reasonably likely to become insolvent or affiliated with one of our competitors; or (iii) there has been or it is reasonably likely that there will be: a breach of security; a breach of your obligations under the Agreement or another agreement between us; a breach of our agreement with a third party provider; or a violation of third party rights or applicable laws. Our notice will specify the cause of the termination, suspension or limitation and, if the cause of the termination suspension or limitation is reasonably capable of being remedied, we will inform you of the actions you must take to reinstate the product or service. If you do not take the actions or the cause cannot be remedied within 30 days, we may suspend, limit or terminate the Agreement in whole or in part. Charges remain payable in full during periods of suspension or limitation arising from your action or inaction.

(c)   Termination. We may, upon reasonable notice, terminate all or part of the Agreement in relation to a product or sendee which is being discontinued. Either of us may terminate the Agreement immediately upon written notice if the other commits a material breach and fails to cure the material breach within 30 days of being notified to do so. Any failure to fully pay any amount when due under this Agreement is a material breach for this purpose.

(d)   Effect of Termination. Except to the extent we have agreed otherwise, upon termination, all your usage rights end immediately and each of us must uninstall or destroy all property of the other and, if requested, confirm this in writing. Termination of the Agreement will not (i) relieve you of your obligation to pay Thomson Reuters any amounts you owe up to and including the date of termination; (ii) affect other accrued rights and obligations; or (iii) terminate those parts of the Agreement that by their nature should continue.

(e)   Amendments. We may amend these General Terms and Conditions from time to time by giving you at least 30 days prior written notice. You may request good faith negotiations regarding the amended terms and conditions. If the parties cannot reach mutual agreement on the amended terms and conditions within 30 days, you may terminate the agreement immediately upon written notice.

## 11.   FORCE MAJEURE

We are not liable for any damages or failure to perform our obligations under the Agreement because of circumstances beyond our reasonable control. If those circumstances cause material deficiencies in the products or services and continue for more than 30 days, either of us may terminate any affected product or sendee on notice to the other.

## 12.   THIRD PARTY RIGHTS

Our affiliates and third-party providers benefit from our rights and remedies under the Agreement. No other third parties have any rights or remedies under the Agreement.

## 13.   GENERAL

(a)   Assignment. You may not assign, delegate or otherwise transfer the

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

Agreement (including any of your rights or remedies) to anyone else without our prior written consent. We may assign or otherwise transfer the Agreement (including any of our rights or remedies) in whole or in part to an affiliate or any entity that succeeds to all or substantially all of the assets or business associated with one or more products or services, and will notify you of any such assignment or transfer. We may subcontract any of the services in our sole discretion. Any assignment, delegation or other transfer in contravention of this Section 13(a) is void.

(b)  **Feedback.** You grant Thomson Reuters a perpetual, irrevocable, transferable, non-exclusive right to use any comments, suggestions, ideas or recommendations you provide related to any of our products or services in any manner and for any purpose.

(c)  **Agreement Compliance.** We or our professional representatives may review your compliance with the Agreement throughout the term of the Agreement. If the review reveals that you have exceeded the authorized use permitted by the Agreement, you will pay all unpaid or underpaid charges.

(d)  **Governing Law.** If not otherwise stated in the order form, the Agreement will be governed by the laws of the State of New York and each of us hereby irrevocably submits to the exclusive jurisdiction of the federal and state courts of the State of New York located in New York County to settle all disputes or claims arising out of or in connection with the Agreement.

(e)  **Precedence.** The descending order of precedence is: third party license terms contained in Section 1(f) of these terms; the applicable order form; and the remaining provisions of the Agreement.

(f)  **Trials.** All trials of our products and services are subject to the terms of these General Terms & Conditions, unless we notify you otherwise. Access to our products and services for trials may only be used for your evaluation purposes.

(g)  **Support Provided.** To assist in resolving technical problems with the Services, Thomson Reuters may provide telephone and/or online access to its helpdesk, or may provide self-help tools. Additional information related to the support provided by Thomson Reuters may be described on http://thomsonreuters.com/support-and-training or as otherwise provided by Thomson Reuters.

(h)  **No Waiver.** If either party delays or fails to exercise any right or remedy under the Agreement, it will not have waived that right or remedy.

(i)  **Entire Agreement and Non-Reliance.** The Agreement contains the entire understanding between us regarding its subject matter and supersedes all prior agreements, understandings, negotiations, proposals and other representations, verbal or written, in each case relating to such subject matter, including without limitation any terms and conditions appearing on a purchase order or other form(s) used by you. Each of us acknowledges that in entering into the Agreement neither of us have relied on any representations made by the other that are not expressed in the Agreement.

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

**Thomson Reuters Data Security Addendum (October 2020)**

This Data Security Addendum (the "*Addendum*") shall apply to the products and services set forth in the agreement to which it is attached and is fully incorporated therein. In the event of a conflict between the terms and conditions of this Addendum and the agreement, the terms and conditions of this Addendum shall take precedence. Customer shall be the same as Customer, Client, or you; and Thomson Reuters shall mean the same as us, we, TR or Thomson Reuters, as the terms may be used in the applicable agreement. As used herein, any references to "Customer Materials" means information provided to Thomson Reuters by Customer which Thomson Reuters is required to host, use or modify for the provision of a Thomson Reuters' service or product.

1. **INFORMATION SECURITY PROGRAM**

1.1 Thomson Reuters will maintain an information security program designed to protect the confidentiality, integrity and availability of Customer Materials. The program will include, but is not limited to, the following components:
   (i) Information security policy framework
   (ii) Program documentation
   (iii) Auditable controls
   (iv) Compliance records
   (v) Appointed security officer and information security personnel

1.2 Thomson Reuters will establish and maintain information security policies, standards and guidelines designed to protect the confidentiality, integrity and availability of Customer Materials hosted in services which shall include the following:
   (i) Policies to restrict access to Customer Materials only to authorized Thomson Reuters personnel and subcontractors.
   (ii) Policies requiring the use of unique user ID's and passwords.
   (iii) Policies requiring secure connections to the internet to have commercially reasonable controls to help detect and terminate unauthorized activity prior to the firewall maintained by Thomson Reuters.
   (iv) Policies requiring performance of regular vulnerability assessments of Thomson Reuters LAN, WAN and critical application and network components.
   (v) Policies for the use of anti-malware and patch management controls to protect against virus or malware infection and exploitation of security vulnerabilities.
   (vi) Policies and standards for the use of auditable controls that record and monitor activity.
   (vii) Without limiting Thomson Reuters' obligation of confidentiality as further described in the agreement or herein, in no case shall the safeguards of Thomson Reuters' information security program be less stringent than the then-current industry standard good practices as defined in the ISO 27001, NIST 800-53 "Moderate", or Cobit 5 control frameworks or other commercially reasonable standards. within thirty (30) days of Customer's request, Thomson Reuters shall provide Customer with any applicable information security reports.

1.3 Thomson Reuters will train and communicate to personnel defined information security principles and information security policies and standards.
   (i) Thomson Reuters personnel shall be trained in information security practices and the correct use of information processing facilities to minimize possible security threats.
   (ii) Security awareness training attendance reports shall be maintained in the constituent's personnel file or other compliance tracking tool.
   (iii) Thomson Reuters personnel shall be required to report any observed or suspected threats, vulnerabilities, or incidents to the designated point of contact within 48 hours.
   (iv) Information security personnel shall be made aware of information security threats and concerns and shall be equipped to support the Thomson Reuters information security policy in the course of their normal work.

1.4 Thomson Reuters will manage personnel access to systems supporting the services to be granted on a need-to-know basis consistent with assigned job responsibilities.

1.5 Thomson Reuters shall have comprehensive business continuity plans. These plans shall be tested and approved by Thomson Reuters management on a periodic basis.

1.6 Thomson Reuters shall maintain a program for vendor risk assessment and will maintain contractual provisions with the vendor requiring vendor to maintain adequate security policies and procedures.

1.7 Thomson Reuters shall maintain a formal plan for incident response to promptly address suspected or confirmed breaches of Customer Materials or systems supporting the services.

2. **DATA SECURITY CONTROLS**

2.1 Application Strategy, Design, and Acquisition. Thomson Reuters shall:
   (i) Inventory applications and network components that support provision of hosted services and assess their business criticality.
   (ii) Perform Thomson Reuters standard security compliance review for acquired or developed applications.
   (iii) Review critical applications at least annually to ensure compliance with industry and commercially reasonable security standards.

2.2 Anti-Virus and Anti-Malware. Thomson Reuters shall:
   (i) Implement and configure anti-virus and anti-malware software for regular signature updates.
   (ii) Implement threat management capabilities to protect systems holding or processing Customer Materials.

2.3 Network Security. Thomson Reuters shall:
   (i) Configure network devices (including routers and switches) according to approved lockdown standards.
   (ii) Govern and monitor changes to network security controls (including firewalls) using change management standards.
   (iii) Segregate data center networks into separate logical domains with the network security controls approved by security personnel.

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

2.4 Web and Application Security. Thomson Reuters shall:
  (i) Maintain commercially reasonable security measures for internet-accessible applications.
  (ii) Implement a change management process for documenting and executing operational changes in services and applications.
  (iii) Implement a documented process for the management of encryption keys including rotation of encryption keys.

2.5 Audit & Compliance
  (i) Thomson Reuters will establish and adhere to policies that comply with applicable laws and standards, including, but not limited to, laws with regard to its storage, use, transmission of, or any interaction with Customer Materials. However, Thomson Reuters is not responsible for compliance with any laws or regulations applicable to Customer or Customer's industry that are not generally applicable to software and content providers in the legal and tax and accounting market segments. Thomson Reuters does not determine whether Customer Materials include information subject to any specific law or regulation and compliance with any such law or regulation and compliance with any such law or regulation is the sole responsibility of the Customer.
  (ii) No more than once per calendar year, upon request by Customer, Thomson Reuters will provide Customer with then-current ISO certifications.

2.6 Physical and Environmental Security
  (i) Thomson Reuters services systems will be housed in secure facilities protected by a secure perimeter, with industry standard security barriers and entry controls.
  (ii) Thomson Reuters facilities will be physically protected from unauthorized access, damage and interference.
  (iii) Access to the facilities will be logged and logs will be securely maintained.
  (iv) Procedures will be maintained for visitors and guests accessing Thomson Reuters facilities.
  (v) Thomson Reuters equipment will be physically protected from security threats and environmental hazards.

## 3. SECURITY QUESTIONNAIRES AND ASSESSMENTS

3.1. Once per 12 sequential calendar months, and subject to Thomson Reuters Information Security Policy, Customer may request Thomson Reuters in writing to complete an information security and physical security assessment questionnaire. Thomson Reuters agrees to respond to such questionnaire as soon as commercially reasonable. Upon request by Customer, Thomson Reuters shall complete, within forty-five (45) days of receipt of such request an audit questionnaire provided by Customer regarding Thomson Reuters' information security program.

3.2. Thomson Reuters performs and makes available to Customers an independent third-party assessment or certificationwith respect to that service, upon Customer's request, Customer may review an available summary of the results of such security assessment for the services containing Customer Materials.

## 4. NOTIFICATION OF SECURITY BREACH

4.1 Thomson Reuters will, without undue delay, but in no event later than 3 days after discovery of the breach, notify Customer of an actual breach or an unauthorized use or disclosure that directly and adversely impacts the security and confidentiality of Customer Materials ("Security Breach"). In the event of any such Security Breach, Thomson Reuters shall perform a root cause analysis to identify the cause of such Security Breach and shall, upon request, provide to Customer a report detailing the cause of such Security Breach.

4.2 The notice of the breach or suspected breach will state, at a minimum, the nature of the breach, and what, if any, Customer data were compromised. Thomson Reuters shall promptly provide any additional information to Customer as Thomson Reuters gains additional information regarding the breach or suspected breach. Unless otherwise required by law, Thomson Reuters shall not notify any Customer client or otherwise publicly disclose the breach of Customer data unless such client notice or public disclosure is approved by Customer.

## 5. ADDITIONAL TERMS

5.1 Location of Customer Data. Unless otherwise agreed to by Customer in writing, all Customer data must be stored only on computer systems located in the United States or at datacenters and locations informed to Customer by Thomson Reuters for the applicable service.

5.2 Limitation of Access. Thomson Reuters will not permit any supplier or subcontractor personnel to have access to any Customer facility or any records or data of Customer if it has knowledge that the person has been found unsuitable to perform services under the Agreement. Thomson Reuters has practices and policies in place designed to ensure its employees' and subcontractors' suitability to perform services under the Agreement.

5.3 Thomson Reuters acknowledges and agrees Thomson Reuters is responsible for confirming its employees' and subcontractors' suitability to perform services under this Agreement.

5.4 (ii) To Thomson Reuters's knowledge, no Thomson Reuters's employee or subcontractor performing services under the Agreement (i) has a criminal conviction or civil judgment that would materially impact the employee or subcontractor's suitability to perform services under the Agreement; or (ii) made a material misstatement of fact on an employment application, resume or background check form submitted to Thomson Reuters or the applicable subcontractor.

5.5 Data Re-Use. Thomson Reuters shall use any and all data exchanged expressly and solely for the purposes enumerated in the agreement and permitted herein. Thomson Reuters shall not distribute, repurpose, or share data across other applications, environments, or business units of Thomson Reuters. As required by law, Thomson Reuters shall not reveal, transmit, exchange, or otherwise pass Customer data to subcontractors or any other parties except on a case-by-case basis as specifically agreed to in writing by a representative of Contractor with designated data, security, or signature authority.

5.6 Safekeeping and Security. Thomson Reuters shall be responsible for safekeeping all keys, access codes, passwords, combinations, access cards, personal identification numbers, and similar security codes and identifiers issued to Thomson Reuters and its subcontractors' personnel. Thomson Reuters shall require its and its subcontractors' personnel to promptly report a lost or stolen access device or access information to their primary business contact and to the Customer IT Security team.

**EXHIBIT C – GDPR ANNEX**

## 1. DATA PRIVACY

1.1. <u>Data Protection Legislation.</u>  Each party will at all times comply with the Data Protection Legislation in respect of its processing of Personally Identifiable Information.

1.2. <u>Role of Thomson Reuters.</u> The parties acknowledge that, in relation to any Service, Thomson Reuters may process Personally Identifiable Information as Processor and/or Controller or (where Thomson Reuters does not process Personally Identifiable Information in the context of that Service) as neither Controller nor Processor. Further information on Thomson Reuters' role in relation to a specific Service may be set out in product information made available by Thomson Reuters from time to time  at www.tr.com/privacy-information.

1.3. <u>Use of PII.</u> Thomson Reuters may process Personally Identifiable Information for the purpose of or in connection with: (i) carrying out relevant diligence and administrative tasks prior to the provision of the Services; (ii) providing the Services; (iii) as permitted or in accordance with law (the "**Purposes**").

1.4. <u>Thomson Reuters as Processor.</u> To the extent that Thomson Reuters processes Client Personal Data as Processor of Client pursuant to this Agreement, the following provisions of this paragraph 1.4 shall apply:

1.4.1. *Scope of processing.* The subject matter, nature, purpose and duration of Thomson Reuters' processing of Client Personal Data as Processor of Client is set out, in respect of a product or Service (where applicable) in product information made available by Thomson Reuters from time to time at www.tr.com/privacy-information.   Information on the types of Client Personal Data processed and the categories of data subjects is also available at such web address.  If Customer reasonably objects to a material change to www.tr.com/privacy-information, the parties shall negotiate in good faith to resolve the objection or terminate the provision of the affected part of the product or service to Customer immediately upon notice.

1.4.2. *Documented instructions for processing.* Thomson Reuters, as Processor, will only process Client Personal Data on the documented instructions of Client unless required to process that Client Personal Data for other purposes by EU Law. Where such a requirement is placed on Thomson Reuters, it shall provide prior notice to Client unless the relevant law prohibits the giving of notice.

1.4.3. *Processor obligations.* Notwithstanding anything to the contrary in this Agreement, with effect from 25 May 2018, Thomson Reuters shall comply with the express obligations of a Processor as  set out in Articles 28(3)(b) to 28(3)(h) inclusive of the GDPR, provided that: (a) Client may not instruct Thomson Reuters to delete copies

of data that it holds on its own behalf as Controller; and (b) the requirements of Article 28(3)(b) of the GDPR shall not apply to persons that Thomson Reuters is required by applicable laws or regulatory requirements to grant access to Client Personal Data.

1.4.4. *General Authorization for Sub-processing.* Client provides a general authorization to Thomson Reuters to engage further Processors to process Client Personal Data. A list of those further Processors is available via publication on www.tr.com/privacy-information and Thomson Reuters shall give Client notice of any intended addition to or replacement of those further Processors by updating that list from time to time. If Client reasonably objects to a change to the list, at Thomson Reuters' option Thomson Reuters will either: (i) give Client an opportunity to pay for a version of the relevant part of the Service without use of the Processor to which Client objects; or (ii) terminate the provision of the affected part of the Service to Client immediately upon notice.

1.4.5. *Client's Responsibilities.* Client acknowledges that it has the primary responsibility for the processing of Client Personal Data and shall notify Thomson Reuters of any assistance it requires pursuant to Articles 28(3)(a) to 28(3)(h) of the GDPR inclusive. The parties acknowledge that such assistance will be provided following agreement between the parties on the scope and timing of such assistance, and the fees chargeable by Thomson Reuters for such assistance.

1.4.6. *Verification.* From 25 May 2018, and following a written request from Client, Thomson Reuters shall, in fulfilment of its obligation to demonstrate compliance with this paragraph 1.4 (and any other relevant parts of paragraph 1), make available to Client information on its processing of Client Personal Data.  At Thomson Reuter's discretion, such information may take the form of certificates, third party audit reports or other relevant information.

1.5. <u>Thomson Reuters as Controller.</u> The parties acknowledge that Thomson Reuters may process Personally Identifiable Information as Controller, and that in such circumstances the provisions of this paragraph 1.5 shall apply:

1.5.1. *Thomson Reuters Privacy Notice.* The Client acknowledges that Thomson Reuters has made a privacy notice for each Service available to the Client (each a "**Privacy Notice**"). The Client shall take reasonable steps to bring this Privacy Notice to the attention of any individuals that Client makes the Service available to (or requests Thomson Reuters to deal with or carry out research on in the context of the product or Services).

1.5.2. *Client as Separate Controller.* The parties acknowledge that where Thomson Reuters acts as Controller in the provision of the Services, Client acts as a Controller in respect of any Personally Identifiable Information it

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

**EXHIBIT C – GDPR ANNEX**

chooses to record as a result of its receipt and use of the product or Services provided by Thomson Reuters in accordance with Data Protection Legislation.

1.6. <u>Joint Responsibility.</u> The parties acknowledge and agree that they may be jointly responsible for the processing of Personally Identifiable Information to the extent specified in any applicable Schedule or product information and that in such circumstances their respective responsibilities in relation to that processing are as stated in the Schedule or product information.

1.7. <u>Transfers outside of the EEA.</u> The parties acknowledge and agree that Thomson Reuters may transfer Client Personal Data outside of the EEA where permitted for that transfer under Articles 44 to 49 of the GDPR.

1.8. <u>Client-Provided Data.</u> Client shall ensure that any Client Personal Data has been collected and disclosed in accordance with Data Protection Legislation. When using the Services or accessing Thomson Reuters' systems or any other information held by Thomson Reuters, Client shall ensure that it does not input, upload or disclose to Thomson Reuters, or allow any other third party to disclose on its behalf, any irrelevant or excessive information about individuals.

1.9. <u>Cooperation.</u> The parties shall use reasonable efforts to assist one another in relation to the investigation and remedy of any claim, allegation, action, suit, proceeding or litigation with respect to alleged unauthorized access, use, processing or disclosure of Personally Identifiable Information.

1.10. <u>Protective Measures.</u> Each party will maintain, and will require all Processors each such party engages to maintain, appropriate physical, technical and organizational measures to protect Personally Identifiable Information against accidental, unauthorised or unlawful destruction, loss, alteration, disclosure or access ("**Security Breach**"). Client shall, without undue delay, notify Thomson Reuters within a reasonable time period of any actual or suspected non-trivial Security Breach relating to Personally Identifiable Information and shall take adequate remedial measures as soon as possible. Where Thomson Reuters acts as Processor of Client, Thomson Reuters will notify Client without undue delay of any non-trivial Security Breach that may adversely affect Client Personal Data.

**2. DEFINITIONS**

Capitalised terms which are used but not defined in this Schedule shall have the meaning given to them in the Master Terms.

**Client Personal Data** – means PII made available or uploaded into the Services by, or on behalf of, Client, and processed by Thomson Reuters in connection with this Exhibit.

**Controller -** means a data controller or controller (as such term is defined in Data Protection Legislation).

**Data Protection Legislation** – the following legislation to the extent applicable from time to time: (a) national laws implementing the Data Protection Directive (95/46/EC) (b) the GDPR; and (c) any other similar national privacy law.

**EEA -** European Economic Area.

**EU Law -** European Union Law and the law of any current Member State of the European Union from time to time.

**GDPR** - the General Data Protection Regulation (2016/679).

**Personally Identifiable Information** or **PII** - personal data (as such term is defined in Data Protection Legislation) processed as part of the Services or in connection with this Exhibit.

**Processor -** means a data processor or processor (as such term is defined in Data Protection Legislation) that processes Client Personal Data.

**Sensitive Personal Data** – sensitive personal data (as such term is defined in Data Protection Legislation).

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

**EXHIBIT D**
**CCPA DATA PROCESSING ADDENDUM**

This CCPA Data Processing Addendum ("**Addendum**") is appended to and made a part of the Special Offer Agreement, effective December 1, 2021, by and between West Publishing Corporation, a division of Thomson Reuters Corporation ("**Thomson Reuters**") and Kirkland & Ellis LLP ("**Customer**" and, together with Thomson Reuters, the "**Parties**"), as may be now or hereafter amended (the "**Agreement**"). This Addendum is entered into by and between the Parties solely to establish the data protection duties and obligations *to the extent that* any Personal Information processed in the provision of the Services is subject to the California Consumer Privacy Act of 2018, Cal. Civil Code § 1798.100 *et seq* ("**CCPA**"), including any amendments thereto and rules promulgated thereunder. For clarity, the Parties acknowledge and agree that any exemptions set forth in CCPA, including without limitation those set forth in §§1798.145(c)-(h) or (n) of CCPA, shall exempt each Party from its respective obligations hereunder for as long as such exemptions are in effect.

The Parties hereby agree to the following:

1.   **Processing of Personal Information**.
   a.      The Parties acknowledge that Customer is deemed a Business under CCPA and is acting under this Agreement in its capacity as such; and Thomson Reuters is acting as a Service Provider under CCPA.

   b.      Customer shall be solely responsible for complying with the obligations of a Business set forth in the CCPA.

   c.      During the performance of the Agreement, Customer hereby instructs Thomson Reuters to Process Consumer Personal Information in connection with the Services and consistent with this Addendum and the Agreement. Thomson Reuters is prohibited from Selling, retaining, using, or disclosing the Personal Information for any purpose (including commercial purpose) other than performing the Services specified herein or as otherwise permitted by the CCPA.

   d.      Customer represents and warrants, on an ongoing basis, that: (i) it is a Business subject to the CCPA; (ii) the Personal Information that Customer discloses to Thomson Reuters is provided for a Business Purpose; (iii) the provision of Personal Information to Thomson Reuters hereunder does not constitute a Sale; (iv) it has provided Consumers with a CCPA-compliant privacy notice about its information collection, processing, and sharing practices; and (v) Customer has obtained, as required by applicable laws, all appropriate permissions or consents in and to such Personal Information to provide Thomson Reuters with such Personal Information for processing in accordance with this Addendum and the Agreement.

2.   **Consumer Rights, Assistance, and Cooperation.**
   a.      As the Business (and without limiting Section 1(b) above), Customer shall timely and appropriately respond to all Consumer complaints, inquiries, and requests, including Consumer access and Deletion requests.

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

**EXHIBIT D**
**CCPA DATA PROCESSING ADDENDUM**

b.      To assist Customer with its compliance obligations under CCPA, Thomson Reuters will provide reasonable cooperation to Customer, at Customer's sole expense, to Delete a Consumer's Personal Information from Thomson Reuters's systems.

c.      Customer acknowledges and agrees that: (i) Customer shall verify the identity of the Consumer making such request (or on whose behalf such request is made) in advance of passing such request to Thomson Reuters; (ii) Customer shall ensure that no statutory exceptions apply to such request in advance of passing such request to Thomson Reuters; (iii) to the extent the Customer can Delete or otherwise fulfill any other request itself, then Thomson Reuters will be deemed to have fulfilled its obligations hereunder by informing the Customer how to fulfill such request itself; (iv) once implemented, a Deletion request may not be reversed; and (v) Customer shall pass such request to Thomson Reuters as soon as practicable (and no later than as required by CCPA).

d.      To the extent that (i) Thomson Reuters receives a request from a Consumer to exercise any rights afforded to him/her under CCPA and (ii) that Consumer has identified its affiliation with the Customer or that Thomson Reuters can readily recognize that it received the Personal Information of such Consumer from Customer under this Agreement, then it shall promptly refer such request to Customer and shall not directly respond to such request. Notwithstanding the foregoing, nothing herein shall restrict the ability Thomson Reuters to directly interact with any Consumer or to fulfill a Consumer request if Thomson Reuters acts as a "Business" under CCPA with respect to that Consumer, such as when Thomson Reuters establishes a direct relationship with that Consumer independently of this Agreement.

3.      **Miscellaneous**.

a.      Certification. Each Party hereby certifies that it understands its obligations and restrictions with respect to Personal Information and agrees that it will comply with same on an ongoing basis so long as this Addendum is in effect. To the extent this Addendum cannot serve as an annual certification of Thomson Reuters compliance with its obligations and restrictions with respect to Personal Information hereunder, Thomson Reuters will provide Customer, upon request, with an annual certification of the same. Such annual certification shall be in the form determined by Thomson Reuters.

b.      Cost of Compliance. Each Party shall bear its costs of compliance with the provisions of CCPA, except as noted otherwise herein.

c.      Changes in the CCPA. If any variation is required to this Addendum as a result of the changes in the CCPA, either Party may provide written notice to the other Party of the change in the CCPA and the Parties agree to negotiate, in good faith, to amend the Addendum within ninety (90) days of such notice.

d.      Order of Precedence. Except as modified by this Addendum, the terms of the Agreement shall remain in full force and effect. Capitalized terms used, but not defined in this Addendum shall have the meaning given to such terms as set forth in the Agreement. In the event of inconsistencies between this Addendum and the remainder of the Agreement, this Addendum shall control with respect to CCPA matters.

e.      Definitions. The following terms (and their derivatives) will have the meanings set forth below:

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

**EXHIBIT D**
**CCPA DATA PROCESSING ADDENDUM**

i. The terms "**Aggregate Consumer Information**", "**Business**", "**Consumer**", "**Deidentified**", "**Processing**", "**Publicly Available**", "**Sell**", "**Service Provider**", "**Third-Party**", and "**Verifiable Consumer Request**" shall all have the meanings given to them in the CCPA.

ii. "**Delete**" means the removal, secure removal, destruction, or Deidentification or anonymization of a Consumer's Personal Information such that it cannot be reasonable recovered, reconstructed, or re-identified to the Consumer.

iii. "**Personal Information**" shall mean any Consumer information that identifies, relates to, describes, is capable of being associated with, or could reasonably be linked, directly or indirectly, with a particular individual or household that may be Processed at any time by Thomson Reuters in anticipation of, in connection with, or incidental to the performance of the Agreement. Personal Information does <u>not</u> include: (1) Consumer information that is Deidentified or Aggregate Consumer Information; (2) Publicly Available information; and (3) the types of personal information as set forth in §§1798.140(h) and (o)(2)- (3) of CCPA.

iv. "**Services**" shall have the meaning set in the Agreement and shall, in addition, include technical support and account management activities related thereto, marketing communications related to the Services and Thomson Reuters, and as otherwise permitted under CCPA, including for any Business Purpose. "**Business Purpose**" shall have the meanings given to it in the CCPA which includes (1) auditing related to a current interaction with the Consumer and concurrent transactions, including, but not limited to, counting ad impressions to unique visitors, verifying positioning and quality of ad impressions, and auditing compliance with this specification and other standards; (2) detecting security incidents, protecting against malicious, deceptive, fraudulent, or illegal activity, and prosecuting those responsible for that activity; (3) debugging to identify and repair errors that impair existing intended functionality; (4) short- term, transient use, provided that the Personal Information is not disclosed to another Third-Party and is not used to build a profile about a Consumer or otherwise alter an individual Consumer's experience outside the current interaction, including, but not limited to, the contextual customization of ads shown as part of the same interaction; (5) performing services on behalf of the Business or Service Provider, including maintaining or servicing accounts, providing customer service, processing or fulfilling orders and transactions, verifying customer information, processing payments, providing financing, providing advertising or marketing services, providing analytic services, or providing similar services on behalf of the Business or Service Provider; (6) undertaking internal research for technological development and demonstration; (7) undertaking activities to verify or maintain the quality or safety of a service or device that is owned, manufactured, manufactured for, or controlled by the Business, and to improve, upgrade, or enhance the service or device that is owned, manufactured, manufactured for, or controlled by the Business.

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

# Exhibit 5
## Associated Document
## (2 of 2)



**THOMSON REUTERS`**

### WESTLAW PREFERRED SPECIAL OFFER AMENDMENT
### TO SUBSCRIBER AGREEMENT

Special Offer Amendment ("Amendment") to Subscriber Agreement between **Kirkland & Ellis LLP** ("Subscriber") and **West, a Thomson Reuters business** ("West") as follows:

1. **Effect of Amendment**. The underlying Subscriber Agreement, including all schedules thereto ("Subscriber Agreement"), between Subscriber and West is amended as specifically set forth herein to incorporate the terms of this Amendment. As amended, the Subscriber Agreement shall remain in full force and effect according to its terms and conditions. All terms used in this Amendment shall have the meanings attributed to them in the Subscriber Agreement. This Amendment embodies the entire understanding between the parties with respect to the subject matter of this Amendment and supersedes any and all prior understandings and agreements, oral or written, relating to the subject matter. In the event there is a conflict between the terms and conditions of the Subscriber Agreement and the terms and conditions of this Amendment, the terms and conditions of this Amendment shall control. Any modification to the terms and conditions of this Amendment must be in writing and signed by both parties.

2. **Term and Termination.**

   2.1. This Amendment, which is subject to approval and execution by West in St. Paul, Minnesota, shall become effective March 1, 2015 and shall continue in effect until February 28, 2018 (the "Term"). Notwithstanding the foregoing, this Amendment shall terminate simultaneously with termination of the Subscriber Agreement. During the Term, Subscriber agrees not to exercise its right to terminate the Subscriber Agreement for any reason other than a material breach by West.

   2.2. This Amendment binds Subscriber and West and inures to the benefit of each party's respective successors and permitted assigns. Whether or not a party may assign its right or delegate its performance under this Amendment is separately addressed in the General Provisions paragraph of the Subscriber Agreement. As of the effective date of this Amendment, Subscriber's "Attorney Count" (e.g., full-time and part-time partners, associates, contract attorneys, staff attorneys, of counsel and the like) is 1650. Subscriber shall provide to West its then-current Attorney Count within five (5) business days from the start of the last month of each Period to report any organic growth or decline in Subscriber's Attorney Count. The Monthly Guarantees for the following Period(s) shall increase by 3% for each 5% increase over the prior Attorney Count. The Monthly Guarantees for the following Period(s) shall decrease by 3% for each 5% decrease over the prior Attorney Count. West shall provide Subscriber with written confirmation of any such increase or decrease in the Monthly Guarantee(s).

   2.3. In the event Subscriber merges with or acquires another entity that is, as of the effective date of the merger or acquisition, a current Westlaw subscriber under its own Special Offer Amendment, Schedule A, or WestlawPRO agreement, the "Monthly Guarantees" as defined herein, shall be increased by amounts equal to the acquired entity's average monthly Westlaw invoices during the 12 months preceding the merger or acquisition (less any "Excluded Charges", as defined herein). Such increased Monthly Guarantees shall be in effect for six (6) months thereafter during which time the parties shall negotiate in good faith regarding the terms and conditions of this Amendment. In the event the parties do not reach agreement at the end of six (6) months, the new Monthly Guarantees shall continue in effect for the remainder of the Term of the Amendment or until the parties execute a superseding amendment, whichever first occurs. Notwithstanding the foregoing, in the event Subscriber merges with or acquires an entity that is a non-Westlaw Subscriber, all new attorneys related to such merger/acquisition shall be added to Subscriber's Attorney Count as set forth in paragraph 2.2 herein and the Monthly Guarantee(s) shall be increased on the first day of the month following the merger or acquisition or the first day of the following Period, whichever occurs first.

3. **Special Offer.**

   3.1. For each month during the Term, Subscriber shall guarantee minimum monthly Westlaw Charges, regardless of actual Westlaw usage, for Subscriber's Westlaw access ("Monthly Guarantee") as set forth below:

   a) From March 1, 2015 through February 29, 2016 ("Period 1"), the Period 1 Monthly Guarantee shall be $495,000.

   b) From March 1, 2016 through February 28, 2017 ("Period 2"), the Period 2 Monthly Guarantee shall be $525,000.

   c) From March 1, 2017 through February 28, 2018 ("Period 3"), the Period 3 Monthly Guarantee shall be $551,250.

   3.2. Except as provided in paragraph 3.3 herein, all charges associated with the use of the Westlaw Preferred Product(s) shall be included in the Monthly Guarantee. A list of the current Westlaw Preferred Product(s) as of the effective date of this Amendment is attached as Exhibit 1 hereto.

**HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY**

3.3. All charges associated with the use of the following Product(s) (as part of all product classifications) shall NOT be included in the Monthly Guarantee and shall be billed in addition to the Monthly Guarantee at then-current Schedule A rates, located at http://legalsolutions.com/schedule-a-plan-1-lmlf-plan-1-l ("Excluded Charges").

- Business Law Center
- CCH
- Deed Images
- Delaware Corporate Records
- Dockets with Tracks
- Dockets PDF Charges
- Dun & Bradstreet products
- Experian Smart Business Reports
- Investext PDF Charges
- LRP Secondary (non-JV)
- NewsRoom
- People Map Premier on WestlawNext
- Practical Law
- Public Records Services (including EDGAR, Disclosure Company Index, Criminal Records/ARREST-ALL)
- RIA/Warren Gorham & Lamont
- Sheshunoff/Pratt
- Watchlist
- Westlaw CourtExpress Document Research & Retrieval
- Westlaw Ancillary Only
- Third party Product(s) released during the Term with transactional royalty restrictions
- West Software
- West Batch Processing
- Other websites, platforms or URLs

3.4. West may, at its option, make certain Product(s) Excluded Charges if West is contractually bound or otherwise required to do so by a Contributor of Data or if the Product(s) are enhanced or released after the effective date of this Amendment.

4. **Pro-Bono.** West has issued to Subscriber 30 Westlaw passwords firmwide. Such passwords are used exclusively for the pro bono work of Subscriber by Subscriber's personnel ("Pro Bono Passwords"). West shall waive all Included Charges incurred by the Pro Bono Passwords. Subscriber shall pay all Excluded Charges

5. **Subscriber's Offices.** This Amendment shall be effective for Subscriber's offices as outlined on Exhibit 2.

6. **Support and Training.** Subscriber agrees to actively promote the effective use of Westlaw during the Term. To this end, Subscriber (with the support of West) will work toward establishing programs encouraging effective use of Westlaw, including, at a minimum:

a) training in the use of Westlaw, at no charge, by West for all new attorneys, librarians, paralegals and other appropriate personnel;

b) additional ongoing programs presented by West and supported by Subscriber to update and train all appropriate personnel to enhance their understanding and use of Westlaw; and

c) the periodic distribution of memos or other communications by Subscriber to all personnel encouraging effective use of Westlaw.

7. **Confidential Information of West.** Subscriber understands that disclosure of the terms and conditions contained herein would cause competitive harm to West, and agrees to receive and maintain this Amendment in trust and confidence and shall use its best efforts to prevent such disclosure to any third person.

**West, a Thomson Reuters business**

By _Joshua M. Becher_

Title _VP. Finance_

Date _12/23/14_

Date and Time Received by West

_12/23/14    1:49 pm_

**Subscriber**

By (signature) _MES_

Name (please print) _Matthew E. Steinmetz_

Title _Partner_

Date _12/23/2014_

Firm Name _Kirkland & Ellis LLP_

Subscriber's Address _300 N. LaSalle_

_Chicago, IL 60654_

Contact Name _Joan Batchen_

Telephone Number _312-862-2399_

This offer expires December 29, 2014 at 2:00 p.m. CT.

LS
12/22/2014

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

## EXHIBIT 1

Westlaw Preferred Product(s) in effect as of March 1, 2015 and subject to change

- WestlawNext platform (not all content and Features are accessible via WestlawNext)
- All Texts and Periodicals (TP-ALL)
- Credit Header
- Docket Alerts
- Federal Case Law & Judicial Materials, Statutes & Legislative Materials, Administrative Law & Regulations
- State Case Law & Judicial Materials, Statutes & Legislative Materials, Administrative Law & Regulations
- Selected Practice-Area Materials
- Legal Texts, Periodicals and Miscellaneous Materials
- Law Reviews & Journals
- Alert Services (WestClip and KeyCite Alert continuous frequency of up to 2,000 clips)
- Company Profiles
- All Dockets without Tracks
- Enflex
- Matter Benchmarking Reports
- PDF Charges (including, but not limited to Attorney Medical Advantage, Briefs and Patent Image)
- *Profiler*
- Premier
- Specialty
- West Reporter Images
- Westlaw Case Calendaring
- Westlaw Legal Calendaring
- Witkin
- Online Citation Checking (including KeyCite)
- Offline Transmission
- Offline Automated Citation Checking
- Compliance Advisor
- KeyRules
- Expert Investigation Reports
- Expert Witness Testimony
- Westlaw Patent
- Graphical Bills
- News Select
- Parcel Maps
- Transactional Practitioner Insights
- Litigation Practitioner Insights

 HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

**EXHIBIT 2**
(Required completion for new and multiple location SO)

| Location | | | User Names by location | |
|---|---|---|---|---|
| **Full Address including City & State** | Account Number | Dept/Group | Last name | First name |
| Chicago, IL | | | | |
| London, England | | | | |
| Los Angeles, CA | | | | |
| Hong Kong, China | | | | |
| Houston, TX | | | | |
| Munich, Germany | | | | |
| New York, NY | | | | |
| Palo Alto, CA | | | | |
| San Francisco, CA | | | | |
| Shanghai, China | | | | |
| Washington, DC | | | | |
| Beijing, China | | | | |

Note: This Amendment covers the locations and passwords indicated above. Additional locations and passwords may be added to this Amendment for an additional charge by contacting your West representative.

**Westlaw Locations and Westlaw Password Contacts**

**Only the office location(s) below will be included under the Amendment.**

☐ **Check here if there is one password contact across all office locations and complete password Contact information below. List additional Westlaw password contacts (if applicable) for other office locations.**

| **Westlaw Locations (City/State)** | **Westlaw Password Contact Name (one per location)** | **E-Mail Address** |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

**Special Offer Billing Options**

Only applicable to Subscribers with multiple locations and must
be completed and returned with the Special Offer Amendment

_____   **Default**
**UNLESS OTHERWISE SPECIFIED, THE SUBSCRIBER FIRM/ORGANIZATION
WILL RECEIVE ONE COMBINED MONTHLY INVOICE AND A COPY OF
EACH PARTICIPATING ACCOUNT'S LOCATION USAGE REPORTS - ALL
MAILED TO THE PAYER ACCOUNT OFFICE.**

_____   **As Is**
Subscriber's current billing arrangement should remain unchanged.

_____   **Alternative #1**
Firm/Organization will receive one combined monthly invoice and a copy of each
participating account's location usage reports mailed to the Payer account office.   In
addition, each participating account will receive a copy of its own location usage reports.

_____   **Alternative #2**
Each account will be billed separately, each receiving an invoice and a location usage
report.  Special offer adjustments will be allocated to the individual accounts based on their
actual usage charges.

_____   **Alternative #3**
An invoice and location usage report will be created for each office, allocating special offer
adjustments to individual accounts based on their actual usage charges, however each
account invoice and associated location usage reports will be independently mailed to the
account noted below rather than to the invoiced account location.

Mail to Account: _____

_____   **Fixed Rate Allocation Billing**
Each account will be billed separately, each receiving an invoice and a location usage
report.  Special offer adjustment will be allocated to the individual accounts as follows.

_____   All offices to receive their own invoice.

_____   All invoices to be sent to main account.

Account Number: _____

**PLEASE NOTE:  THESE BILLING ARRANGEMENTS DO NOT AFFECT QUICKVIEW+.**

 HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

# Exhibit 6



# Thomson Reuters Customer Experience Monitor Legal Segment and Country Analysis FY17

U.S. LMLF Presentation

February 6, 2018



HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

# Background

## WHAT IS THE CUSTOMER EXPERIENCE MONITOR?

### AIM

The CEM is designed to **provide an overview of our customers' recent product and service experience** with Thomson Reuters across the entire journey and how this influences the relative **'health' of their relationship** with our organization. As such, it aims to provide **direction across the enterprise to prioritize investment and focus.**

### COVERAGE

The program includes all main business units: **F&R, Legal and TRTA.**

### APPROACH

Customer sample was sourced from the CRM databases representing customer and account types.

| TOTAL FY17 | 21928 |
|---|---|
| Financial & Risk | 5238 |
| TRTA | 12440 |
| **Legal** | **4250** |
| LMLF | 521 |
| SSLF | 1249 |
| Corporate | 380 |
| Government | 259 |
| Canada | 441 |
| United Kingdom | 127 |
| Australia/New Zealand | 144 |
| Spain | 256* |
| Argentina | 128* |
| Brazil | 745* |

## LEGAL COUNTRY COVERAGE

- The survey is available in 5 languages – US English, UK English, French Canadian, Spanish and Portuguese.

- Customers in US, UK, Canada, Australia, New Zealand and Spain were included in the 2016 study with Argentina and Brazil added in 2017.

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

2

* GGO country results are not included in the Total Legal results.

THOMSON REUTERS®

# CEM Key KPIs – Legal YOY Comparison

- ○ Overall, 49% of our customers across Legal are supporters, with just 8% detractors.
- ○ 9 -10 scores improve across the KPIs versus FY16, significantly so for Likelihood to Recommend and Future Usage.
- ○ Despite this, a directional decline is seen at the 7-10 level for Overall Satisfaction.



*The ease of doing business measure changed in 2017 – the question was brought to the front of the survey to be part of our 4 KPIs. Consequently, scores for this question shifted and are not directly comparable with 2016 results.

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

**Customer Experience Monitor**
Confidential Information – Internal Use Only

| | Supporters / Delighted (9-10 scores) | | Negative Ambivalent (4-6 scores) | | Significant positive change from 2016 |
| Positive Ambivalent (7-8 scores) | | Detractors / Dissatisfied (1-3 scores) | | Significant negative change from 2016 |

THOMSON REUTERS®
the answer company™

# CEM Key KPIs – Legal compared to Enterprise

- 9-10 scores remain very positive for the Legal business unit in 2017, with Likely to Recommend, Overall Satisfaction and Future Usage significantly ahead of Thomson Reuters Overall.

  - Strong performance for Product, the Ordering Process and keeping customers informed help to drive robust performance in 2017.

- Legal also sees strong performance at the 7-10 level, but Overall Satisfaction, Future Usage and Ease of Doing Business performance is not as strong as for Thomson Reuters overall.

- With the exception of Likely to Recommend, levels of dissatisfaction are also higher for Legal.

  - This reflects the higher levels of dissatisfaction seen in certain Purchase & Renew and Support areas.



**CORE KPI SATISFACTION**

**7-10 scores**

| | 1-3 | 4-6 | 7-8 | 9-10 | 7-10 scores |
|---|---|---|---|---|---|
| Likelihood to Recommend | 6% | 14% | 31% | 49% | 80% |
| Overall Satisfaction | 7% | 16% | 34% | 42% | 76% |
| Likelihood to Continue Using | 7% | 12% | 23% | 59% | 82% |
| Ease of Doing Business | 12% | 21% | 33% | 35% | 67% |

- Supporters / Delighted (9-10 scores)
- Positive Ambivalent (7-8 scores)
- Negative Ambivalent (4-6 scores)
- Detractors / Dissatisfied (1-3 scores)
- Significant positive difference from Enterprise
- Significant negative difference from Enterprise

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

**Customer Experience Monitor**
Confidential Information – Internal Use Only

THOMSON REUTERS®
the answer company™

# CEM Key KPIs – LMLF

- LMLF saw significant increases in top scores on all four of the overall metrics compared to 2016 results.
  - LMLF has significantly higher scores (Top 4 and Top 2) as well as significantly lower bottom scores (1-3), compared to Total Legal on all four overall measures.

"The tech support. The product is evolving and some of my wishes may take time, but the tech support currently is excellent. I've never called in and come away, unhappy."

"Thomson Reuters is a leader in the industry. It offers a wide variety of products and packages that could satisfy the needs of a large cross-section of practice sizes."





HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

**Customer Experience Monitor**
Confidential Information – Internal Use Only

THOMSON REUTERS®
the answer company™

# CEM Key KPIs – LMLF Sub-Segment Breaks

- ⊙ Medium law firms score higher than the larger firms on three of the four overall measures when looking at top scores (9-10), however LLF Enterprise 7-10 scores are higher than the other LMLF segments.

  - For Ease of Doing Business MLF does have more respondents scoring in the bottom 3 as compared to LLF Strategic and LLF Enterprise.



**Customer Experience Monitor**
Confidential Information – Internal Use Only

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

Supporters / Delighted (9-10 scores)
Positive Ambivalent (7-8 scores)
Negative Ambivalent (4-6 scores)
Detractors / Dissatisfied (1-3 scores)



# Key KPIs – Thomson Reuters Legal LMLF vs Key Competitors

⊙ Thomson Reuters LMLF top scores are significantly higher than scores for LexisNexis and Bloomberg on three of the four overall measures.

– Although not significant, the EODB scores for Lexis are directionally higher as compared to the TR scores.

– Lexis top scores (9-10) for Likelihood to Recommend and Likelihood to Continue using have increased significantly compared to 2016 results.

"Cost caused the firm to use other products except for case law research, and I have friends running their own firms that use Lexis as a complete alternative."



HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

7    **Customer Experience Monitor**
Confidential Information – Internal Use Only

# LMLF saw significant increases in keeping customers informed vs sales and self directed training.



Case 1:20-cv-00613-SB Document 462-1 Filed 04/20/23 Page 287 of 510 Page ID #: 9831

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY



8

**Customer Experience Monitor**
Confidential Information – Internal Use Only

Supporters / Delighted (9-10 scores)   Negative Ambivalent (4-6 scores)   Significant positive change from 2016
Positive Ambivalent (7-8 scores)   Detractors / Dissatisfied (1-3 scores)   Significant negative change from 2016

\* Small base size

**THOMSON REUTERS®**
the answer company™

# Legal LMLF Key Strengths and Areas for Improvement – FY17

**Top 5 strengths**



Main Products
Self Directed Training
Order Process
My Account
F2F Training

**5 Areas for improvement**



Contract Process
Billing
Sales (Renew)
Helpdesk (Admin)
Helpdesk (Tech)

## Most Satisfying Experiences

○ Our Products and Training are key areas of delight – and have relatively low levels of dissatisfaction.

"The availability of publications, online databases to conduct research and training is particularly good."

"Thomson Reuters products are user friendly."

## Areas for Improvement - Least Satisfying Experiences

○ There is high dissatisfaction with the contracting and billing processes as well as Helpdesk (Tech) and Helpdesk (Admin) within the LMLF segment.

"Am currently negotiating new legal research contract and have the distinct feeling TR is taking positions that appear to guarantee we will need to shift to the competition.  Even without the positions being taken, we may shift, but why make it a foregone conclusion?"

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

**Customer Experience Monitor**
Confidential Information – Internal Use Only



# Drivers of Likelihood to Recommend - LMLF performance (including Product) – FY16/FY17

○ Improvements in scores for these areas will have the most positive impact on the Likelihood to Recommend attribute.





HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

**Customer Experience Monitor**
Confidential Information – Internal Use Only

the answer company™
THOMSON REUTERS®

# CEM Legal Memorability Analysis – FY16/FY17: LMLF

**Experience Impact Profile**



| Touch-point | % negative and memorable | % positive and memorable |
|---|---|---|
| Training: F2F | 9 | 61 |
| Product Demonstration | 10 | 49 |
| Training: Online Live | 14 | 47 |
| Account Management | 17 | 42 |
| Training: Online Self-Direct | 15 | 37 |
| Thomson Reuters My Account | 15 | 37 |
| Helpdesk: Product & Tech Support | 13 | 36 |
| Order Process | 18 | 39 |
| Product Trial | 7 | 31 |
| Helpdesk: Account Support | 16 | 35 |
| Automatic Renewal Process | 10 | 24 |
| Purchased new product: Sales XP | 8 | 19 |
| Contract Negotiations | 20 | 23 |
| Renewed product: Sales XP | 30 | 32 |
| Billing | 18 | 20 |
| New Installation or Product Use | 18 | 15 |
| Upgrade or Replacement | | |

**Most Positive Impactful Experiences**

**Least Positive Impactful Experiences**

% negative and memorable  % positive and memorable

- Billing is the only touch-point with the LMLF segment that has more negative and memorable ratings as compared to positive and memorable ratings.

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

** Insufficient base size

Customer Experience Monitor
Confidential Information – Internal Use Only

the answer company™
**THOMSON REUTERS**®

# Customer Engagement: LMLF customers are one of the least likely segments to identify a main point of contact at Thomson Reuters



HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

# LMLF Customer Engagement by Role

- Librarians are far more likely to say they have a main point of contact as compared to the attorneys and paralegals within the LMLF segment.



*Who would you say is your main point of contact at Thomson Reuters?*

| Role | Account Executive / Client Manager | Customer Service Rep | Technical Support Rep | Reference Attorney | Other | Multiple Contacts | Don't Know Job Title | I have not needed to contact TR | No clear point of contact |
|---|---|---|---|---|---|---|---|---|---|
| Associate (n=81) | 16% | 3% 2% | 10% | 0.08 | 2.03% | | 23% | | 33% |
| Attorney/Staff Attorney/Lawyer (n=16*) | 25% | 6% | 8% | 6% | 0.08 | 8% | 8% | | 31% |
| Counsel/Of Counsel (n=39) | 12% | 4% 5% | 17% | 0.0 | 6% | 20% | | | 35% |
| Partner/Managing Partner (n=128) | 18% | 7% 1% | 7% | 0.08 | 0.02 | 7% | 20% | | 30% |
| Other Lawyer (n=28) | 22% | | 12% | 9% | 0.165 | 0.07 | 2% | 11% | 20% |
| Librarian/Reference Librarian/Director of Library Services (n=29*) | 43% | 13% | 6% | 0.096 | | 0.202 | | | 9% |
| Paralegal (n=43) | 20% | 15% | 9% | 2% | 8% | 19% | | | 28% |
| Other Non-Lawyer (n=45) | 28% | 12% | 7% | 0.124 | 0.083 | 5% | 12% | | 17% |

- Account Executive / Client Manager
- Customer Service Rep
- Technical Support Rep
- Reference Attorney
- Other
- Multiple Contacts
- Don't Know Job Title
- I have not needed to contact TR
- No clear point of contact

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

**Customer Experience Monitor**
Confidential Information – Internal Use Only

the answer company™
THOMSON REUTERS®

# Knowing Where to Find Help

**Knowing where to find help when require support**



○ Slightly over one-third of LMLF customers say they always know who to contact when they need help.  However a higher percentage (42%) state they are not sure who to contact.

"The account executives are helpful and responsive."

"The local account managers do a very good job of meeting firm needs."





**Customer Experience Monitor**
Confidential Information – Internal Use Only

Always know who to contact
Know who to contact for some things
Not sure who to contact

Indicates positive significant difference
Indicates negative significant difference

** Insufficient base size

the answer company™
THOMSON REUTERS®

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

# Interest & Exposure – Incidence of Communication Methods

- Word of mouth, emails and Thomson Reuters sales reps are the most common communication methods for LMLF customers.

**Segment comparison – how customers learn / hear about new products and services**



HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

**Customer Experience Monitor**
Confidential Information – Internal Use Only





Interest & Exposure – Influence of Communication Methods: Within the LMLF segment word of mouth has the highest influence followed by TR Sales Reps and through trade shows and events.

| Segment comparison | Total (n=208-1276) | | | SSLF (n=82-532) | | | LMLF (n=24-247) | | | Corporate (n=26-147) | | | Government (n=13-93) | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Word of mouth (colleagues) | 15% | 40% | 43% | 14% | 41% | 44% | 12% | 39% | 47% | 23% | 39% | 37% | 7% | 22% | 27% | 0.447 |
| Providers emails (general) | 20% | 46% | 26% | 8% | 22% | 46% | 24% | 9% | 20% | 50% | 23% | 7% | 16% | 50% | 24% | 10% | | | |
| Thomson Reuters Sales Reps | 9% | 34% | 32% | 25% | 12% | 34% | 32% | 23% | 7% | 28% | 37% | 28% | 11% | 40% | 22% | 28% | 32% | 40% | 28% |
| By visiting providers websites | 7% | 35% | 40% | 18% | 7% | 36% | 41% | 16% | 7% | 37% | 37% | 19% | 34% | 50% | 14% | 43% | 24% | 0.276 |
| Trade/industry publications | 0% | 34% | 39% | 17% | 0% | 33% | 44% | 13% | 13% | 33% | 37% | 17% | 13% | 32% | 37% | 17% | | |
| Through advertising | 23% | 50% | 23% | 18% | 58% | 20% | 25% | 47% | 24% | 5% | 24% | 42% | 28% | 6% | | |
| Via online forums / communities | 7% | 36% | 42% | 15% | 7% | 32% | 47% | 15% | 0% | 39% | 42% | 9% | 39% | 38% | 20% | ** |
| Competitor Sales Reps | 0% | 37% | 36% | 17% | 11% | 41% | 35% | 13% | 14% | 36% | 26% | 25% | 35% | 45% | 16% |
| Through trade shows & events | 32% | 40% | 24% | 34% | 37% | 24% | 38% | 32% | 22% | 30% | 41% | 26% | | |
| Through social media | 17% | 44% | 31% | 8% | 15% | 52% | 27% | 7% | 26% | 44% | 27% | ** | ** |
| Via online blogs | 0% | 37% | 40% | 13% | 39% | 42% | 12% | 17% | 45% | 26% | 12% | ** | 32% | 44% | 0.154 |
| Through postal mail | 18% | 44% | 29% | 9% | 17% | 49% | 28% | 6% | 15% | 45% | 37% | 15% | 42% | | 9% |

HIGHLY CONFIDENTIAL ATTORNEYS EYES ONLY

Green = Very influential (9-10 scores)
Dark grey = Positive Influence (7-8 scores)
Light grey = Negative Influence (4-6 scores)
Red = Not at all influential (1-3 scores)
Green box = Indicates positive significant difference
Red box = Indicates negative significant difference
** Insufficient base size

16
**Customer Experience Monitor**
Confidential Information – Internal Use Only

THOMSON REUTERS®
the answer company™

# Brand Image Perceptions – LMLF customers continue to have stronger brand perceptions as compared to total Legal

**Thomson Reuters Brand Image (Mean Score)**



**HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY**

**Customer Experience Monitor**
Confidential Information – Internal Use Only



# LMLF Product Performance

- Ratings of Westlaw, Print and Practical Law are high for the LMLF segment with over half of customers willing to recommend these products.

- Westlaw saw a significant increase in top 2 scores (9-10) on all three attributes as compared to 2016 results for the LMLF segment.

"Westlaw Next is one of the better legal databases out there. I also use Practical Law on a daily basis."

"I like the copy with citation feature on Westlaw and find Westlaw to be intuitive."



**Customer Experience Monitor**
Confidential Information – Internal Use Only

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

* Small base size

THOMSON REUTERS

# 2017 Legal Focus Areas: Customers have disjointed on-boarding experiences which impacts Future Use and retention, further, billing dissatisfaction due to low responsiveness drives Ease of Doing Business dissatisfaction

**1**

**ADDRESS ONBOARDING AND USAGE:**
- Segment action plans to address gaps and areas of opportunity, with emphasis on Indigo launch
- Focus on enhanced customer engagement immediately after a sale; monitoring facilitated via new onboarding survey
- Better communicate value of investment to customer with enhanced content and training

**2**

**ADDRESS RESPONSIVENESS:**
- Increase contact center efficiencies by launching Salesforce.com Service Cloud for UKI & US – will also improve ability to track and monitor inquiries
- Deliver on My TR / My Account to reduce billing inquiries and improve Customer Experience
- Fix billing processes to reduce customer effort and inquiries: Review print returns processes, improve refund descriptions, and further refine product descriptions

**A focus on these will:**
- Reduce customer effort
- Improve satisfaction
- Make it easier for customers to do business with us

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

**Customer Experience Monitor**
Confidential Information – Internal Use Only

THE ANSWER COMPANY™
THOMSON REUTERS®

# How can we make it easier to do business with us?  LMLF Customer Quotes

"Terrible customer policies. Unfair renewal and billing practices. Almost constant billing and invoicing issues. Bad habits in beta testing half baked new products on customers without telling those customers they are in a beta test."

"Trouble with invoices and account consolidation when TR acquires another publisher."

"Totally overpriced."

"you need to get to better know your customers and treat them with respect. As busy professionals who are used to providing clients with professional service, it is disappointing to see the level of knowledge and treatment of a longtime customer such as myself."

"The support for Time and Billing is TERRIBLE. I have an outstanding ticket from a year and a half ago. No one responds promptly and, when they do, they are unhelpful. We continue to use Time and Billing because of its price."

"You have attempted to raise our price by 40%.  We are likely moving to Lexis."

"The product is too expensive and there seems to be little give in pricing, despite the fact clients push back on our rates and there are adequate alternative products."

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

**Customer Experience Monitor**
Confidential Information – Internal Use Only

the answer company™
THOMSON REUTERS®

# Decision Making Involvement – FY17

| Percent Responding | Legal (n=4206) | US (n=2400) | Canada (n=437) | UK (n=126) | ANZ (n=143) | Spain (n=255) | Brazil (n=719) | Arg (n=126) | SSLF (n=1244) | LMLF (n=519) | Corporate (n=378) | GVMT (n=259) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| I have no part in the decision making process | 17 | 18 | 13 | 25 | 14 | 7 | 20 | 12 | 9 | 31 | 14 | 40 |
| I provide input, but am not directly involved | 30 | 32 | 31 | 47 | 30 | 10 | 29 | 11 | 22 | 52 | 38 | 28 |
| I am one of the few people who decide | 22 | 22 | 24 | 18 | 23 | 24 | 18 | 21 | 25 | 13 | 25 | 18 |
| I am the primary decision maker | 32 | 28 | 32 | 10 | 33 | 60 | 32 | 56 | 43 | 3 | 22 | 14 |

| Job Title | Legal (n=3061) | US (n=1847) | Canada (n=310) | UK (n=113) | ANZ (n=114) | Spain (n=180) | Brazil (n=422) | Arg (n=75) | SSLF (n=939) | LMLF (n=423) | Corporate (n=293) | GVMT (n=192) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Lawyer | 62 | 68 | 20 | 71 | 63 | 56 | 68 | 57 | 77 | 71 | 47 | 51 |
| Non-Lawyer | 38 | 32 | 80 | 29 | 37 | 44 | 32 | 43 | 23 | 29 | 53 | 49 |

**HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY**

**Customer Experience Monitor**
Confidential Information – Internal Use Only

the answer company™
THOMSON REUTERS®

# Definitions of Touch-points

- **Kept informed**:  How well does Thomson Reuters do at informing you about relevant products and services?
- **Demo**:  Seen a product demonstration
- **Trial**:  Set-up / taken a trial of a product
- **Sales (New)**:  Had direct contact with a sales representative regarding the possible purchase of a new product / service
- **Sales (Renew)**:  Had direct contact with a sales representative regarding the renewal of an existing product / service
- **Automatic Renewal**:  Had an existing product / service automatically renewed
- **Ordering**: Placed an order for a new product / service
- **Contracts**:  Dealt with contracts (including negotiation of terms and contract agreements/forms)
- **Billing**:  Dealt with billing / invoicing
- **New Installation**:  Had a new product installed or started using a new product
- **Upgrade Existing**:  Received an upgrade to an existing product or moved from an existing product to a replacement product
- **Main Product**:  How SATISFIED are you with <insert main product used> overall?
- **F2F Training**:  Participated in training:  Face to face, instructor led training
- **Online SD Training**: Participated in training:  Online self directed (video/e-learning training)
- **Online Live**: Participated in training:   Online / Telephone Live training
- **Helpdesk (Admin)**:  Contacted the helpdesk / account support for administrative related queries (e.g. adding new users, billing, etc)
- **Helpdesk (Tech)**:  Contacted the helpdesk for product, content or technical support
- **Account Management**:  Had contact with an individual who manages your account / you as a client i.e. Account Manager / Account Executive / Client Manager
- **My Account**:  Used Thomson Reuters My Account

# HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

**Customer Experience Monitor**
Confidential Information – Internal Use Only



# Closed Loop Process and Attribution

◉ Within the CEM survey respondents were asked if they would like to have someone from Thomson Reuters contact them with regards to any issues or concerns.    In FY17 there were 208* customers who requested contact via this method.  The 208 alerts (5 of which were from the LMLF segment) were sent to Customer Support to triage.

   – 167/208 were followed up with directly and their issues were resolved.

   – 27/208  did not require follow-up.  Their issues were logged as customer feedback.

   – 14/208 did not require follow-up as no actionable information was provided.

◉ For FY17 46% of customers were willing to allow their answers to be attributes to their names and customer accounts.

*60 of the requests for contact came from Brazil

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

**Customer Experience Monitor**
Confidential Information – Internal Use Only

the answer company™
THOMSON REUTERS®

# Exhibit 6
## Associated Document

**To:** Perron, Melanie (TR Tech, Content & Ops)[melanie.ryan@thomsonreuters.com]; Rushton, Charlotte (Tax)[charlotte.rushton@thomsonreuters.com]; Williams, Tommy (Legal)[tommy.williams@thomsonreuters.com]; Smith, Sharon (Legal)[Sharon.S.Smith@thomsonreuters.com]; Assie, Steven (Legal)[steven.assie@thomsonreuters.com]; Chhun, Emily M. (TR Marketing)[emily.chhun@thomsonreuters.com]; Johnson, Denise (Legal)[denise.cp.johnson@thomsonreuters.com]; Gordon, Kalen (TR Marketing)[kalen.gordon@thomsonreuters.com]; Taylor, Ben (TR Marketing)[ben.taylor@thomsonreuters.com]; Lane, Jenny (Legal)[jenny.lane@thomsonreuters.com]; Elton, Kristen (TR Marketing)[Kristen.Elton@thomsonreuters.com]; Jackson, Colleen (Legal)[c.jackson@thomsonreuters.com]; McGivern, Barb (Legal)[barbara.mcgivern@thomsonreuters.com]; Gilbertson, Leslie S. (Commercial Excellence)[leslie.gilbertson@thomsonreuters.com]; Gunderson, Kristine O. (Legal)[kris.gunderson@thomsonreuters.com]; Platt, Jessica (Legal)[jessica.platt@thomsonreuters.com]; Gleason, Eric (Legal)[eric.gleason@thomsonreuters.com]; Heitzmann, David (Legal)[david.heitzmann@thomsonreuters.com]; Gamez, Carlos (Legal)[carlos.gamez@thomsonreuters.com]; McNally, Hillary H. (Legal)[hillary.mcnally@thomsonreuters.com]; Biancamano, Robert (TR Marketing)[robert.biancamano@thomsonreuters.com]; Harpster, Lea A. (Legal)[lea.harpster@thomsonreuters.com]; Struble, Dawn D. (Legal)[dawn.struble@thomsonreuters.com]; Fisher, Bradford (Legal)[brad.j.fisher@thomsonreuters.com]; Meyer, Jon (Legal)[jonathan.meyer@thomsonreuters.com]; Alathur, Sri (Legal)[Sri.Alathur@thomsonreuters.com]; Post, Christine (TR Marketing)[christine.post@thomsonreuters.com]
**From:** Mansur, Joanne (Legal)[/O=THOMSON/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=0160331905]
**Sent:** Tue 2/6/2018 3:04:54 PM (UTC-06:00)
**Subject:** FW: Scheduling Presentations of 2017 CEM Full-Year Results by Country and U.S. Segment
CEM_FY17-Legal_LMLF.PPTX
CEM 2017 YE_Touchpoint Comments_LMLF.xlsx

Thank you to all of you who were able to attend the presentation and discussion about the FY17 Customer Experience Monitor Survey results for Large Law.
Here is a recap of the discussion:

- **DISCUSSION ABOUT FOLLOW-UP FOR CONTRACT PROCESS:** Market Research will review data to see if we have enough responses for the pre-coded responses for the contract process follow-up question for LMLF and if so will provide the FY16 and FY17 results.

- **DISCUSSION ABOUT A PARTICULAR COMMENT REGARDING MOVING TO LEXIS:** In reviewing the line by line file Market Research has identified that the customer did provide their contact information but did NOT want any follow-up based on their survey responses.

- Attached is a spreadsheet with all the LMLF survey responses for FY17. The first tab in the spreadsheet is the total data file filtered to show responses for all LMLF respondents to all the survey questions, along with contact information if the customer agreed to have their responses associated with their firm. Because some of these customers have already been contacted by Customer Support as a result of their survey responses, please do not reach out directly to any of them without checking with Market Research first. LMLF responses to each open-ended question are shown separately on the subsequent tabs. If the answer was a follow-up to a prior question, the answer to the prior question is also provided.

**Please let me know if you have any questions regarding this data once you have had a chance to digest the information more fully. We would be happy to run any additional data that you might be interested in.**

_____

**From:** Smith, Sharon (Legal)
**Sent:** Tuesday, February 06, 2018 2:45 PM
**Subject:** RE: Scheduling Presentations of 2017 CEM Full-Year Results by Country and U.S. Segment

Thanks Joann, for the presentation. Here's the recording of our call for those who missed it.

Your recording is now available on your WebEx site.

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

Sharon Smith's Personal Room-20180206 2004-1

3:04 pm  |  Eastern Standard Time (New York, GMT-05:00)

**Play recording** (33 min 51 sec)

Recording password: (This recording does not require a password.)

You can forward this message to others to allow them to play back the recording.

**Additional options**

Edit recording

Download recording

Manage recordings

View FAQ

**Sharon Steinhoff Smith**
Marketing Director, Large/Midsize Law Firms

-----Original Appointment-----
**From:** Perron, Melanie (Legal)
**Sent:** Monday, January 08, 2018 3:32 PM
**To:** Perron, Melanie (Legal); Rushton, Charlotte (Legal); Williams, Tommy (Legal); Smith, Sharon (Legal); Assie, Steven (Legal); Chhun, Emily M. (Legal); Johnson, Denise (Legal); Gordon, Kalen (Legal); Taylor, Ben (Legal); Lane, Jenny (Legal); Elton, Kristen (Legal); Jackson, Colleen (Legal); McGivern, Barb (Legal); Gilbertson, Leslie S. (Legal); Gunderson, Kristine O. (Legal); Platt, Jessica (Legal); Gleason, Eric (Legal); Heitzmann, David (Legal); Gamez, Carlos (Legal); McNally, Hillary H. (Legal); Biancamano, Robert (Legal); Harpster, Lea A. (Legal); Struble, Dawn D. (Legal); Fisher, Bradford (Legal); Meyer, Jon (Legal); Alathur, Sri (Legal); Post, Christine (Legal); Mansur, Joanne (Legal)
**Cc:** Lee, Tobias M. (Legal); Miner, Kathleen (Legal)
**Subject:** Scheduling Presentations of 2017 CEM Full-Year Results by Country and U.S. Segment
**When:** Tuesday, February 06, 2018 2:00 PM-3:00 PM (UTC-06:00) Central Time (US & Canada).
**Where:** Please see webex information below & D5-N729 in Eagan

https://thomsonreuters.webex.com/join/Sharon.S.Smiththomsonreuters.com

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

# Exhibit 7



REUTERS/Denis Balibouse

# WESTLAW VALUE DRIVERS
## Qualitative research report

SPONSORS:  Brian Restuccia & Joe Dvorkin, Westlaw Strategy

Chris Post, Director
Market Research & Competitive Intelligence

January 2016



HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

# Overview

---

**Overview**

**Executive Summary and Recommendations**

**Detailed findings**

    **-Top-of-mind value drivers**

    **-Unmet needs**

    **-Preference, decision-making, and verbatims**



HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

# Background

> **Westlaw Strategy is sponsoring cross-segment research for WestlawNext to help inform (1) investment decisions, and (2) value-marketing messages**

- Investment decisions for WestlawNext
  - What is needed to take it to a higher level and maintain the lead over the competition?
- Value-marketing messages for WestlawNext as it is today
  - What resonates with users and decision-makers?
- Phase one of a two-phase research project
  - This report concludes the qualitative phase
  - To be followed by a quantitative phase that builds on the findings.
- Phase 5 has been commissioned to conduct this study



HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

# Objectives

---

**The study should (1) come to a deeper understanding of the current value of WestlawNext, (2) identify unmet needs, and (3) identify decision-making criteria**

- Deeper understanding of the current value of WestlawNext.
  - Understand the specific functionality or other aspects of WestlawNext that drive value for users.

- Unmet needs.
  - Uncover and quantify the pain-points and opportunities, whether those are explicitly identified or latent.

- Decision-making criteria.
  - Understand the thinking of decision-makers given the empirical observation that WestlawNext is indeed able to achieve a price premium in the marketplace.

 **THOMSON REUTERS**

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

# Methodology – Qualitative Phase

**Responses were gathered via an online journaling study and in-depth in-person & telephone interviews**

- Online journaling study
  - Conducted across 5 days, Nov 12-16
  - 24 heavy users of Westlaw, > 2 hours / week of WestlawNext usage
  - Primary task was logging research tasks in-depth, including sources used, pathways taken, and larger context
- In-depth in-person and telephone interviews
  - 27 in-person and 71 phone interviews, broken down as

|  | Users | Influencers |
|---|---|---|
| SSLF | 22 | 9 |
| LMLF | 21 | 12 |
| Corporate | 9 | 13 |
| Government | 8 | 4 |



HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

5

# Executive Summary

Overview

**Executive Summary and Recommendations**

**Detailed findings**

**-Top-of-mind value drivers**

**-Unmet needs**

**-Preference, decision-making, and verbatims**



HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

# Key Insights (1)

1. **Confident comparisons between Westlaw and other services are hard to come by.** Many Westlaw users are satisfied and loyal, and have a sense that they prefer Westlaw, but have difficulty articulating advantages that Westlaw has over Lexis.

   - Many have not had the opportunity to use Lexis extensively or recently, so do not think that they can make valid comparisons

   - Claims of superiority of one service over the other in terms of primary legal content, functionality, features, etc. are generally met with skepticism, or there is a feeling that the other service would "match" or "catch up" – even among the majority of those who clearly prefer one service over another

2. **Westlaw users are still able to articulate where they derive value.** Users are able to identify features and attributes of Westlaw that help them be more effective, efficient and productive in their work, and to feel confident in doing so – this despite the inability to make a comparison with Lexis.

**THOMSON REUTERS**

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

# Key Insights (2)

--------------------------------------------------------------------------------

3. **Some of the most discernable distinctions relate to analytical content.** Exclusive analytical content can be readily distinguished for those who access it.  For example, attorneys who use Rutter Group materials tend to know that these are not available on Lexis. There is a general sense of equivalency in terms of published case law and statutes.

4. **Much of what we consider user preference is really user comfort.** WestlawNext users may prefer it over other services in large part because they are comfortable with it and used to it and it works for them.  Typically, WestlawNext users readily admit that they would likely be able to adapt to Lexis (and vice versa) after a period of adjustment.

5. **Consistent price differences are not widely perceived.** On balance, there is <u>not</u> a strong sense among users and even decision-makers that Westlaw is more costly than Lexis for comparable plans.  Some users feel that WestlawNext is a little more expensive, others think Lexis is the costlier service.  Some satisfied users who prefer Westlaw would consider using Lexis if costs were substantially lower (20% or more). Even the most partisan Westlaw users say they would consider switching if Lexis were 50% cheaper.



HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

# The value of WestlawNext: top of mind value drivers

### Frequent Mentions

- Ease of navigation & use
- Natural language search
- Availability of relevant filings
- Headnotes & Key Numbers allow for effective assessment of cases
- Citing references feature
- Email documents feature
- Familiarity with UI
- Trust in accuracy and completeness of content
- Clear organization of search results

### Moderate Mentions

- Completeness of results
- Content suggestions on RH sidebar
- Relevancy ranking of search results
- Formatting of cases and statutes consistent with courts and legislatures
- Widely used by legal community
- KeyCite flags more reliable than Shepards
- Ability to easily filter/refine results
- Currency of cases and statutes

### Infrequent Mentions

- Reference attorneys
- Statutes are easy to navigate
- Foldering
- Highlighting
- Ability to refer back to search history
- Legislative history is easy to navigate
- Cut/paste citation feature
- Integration with other Thomson Reuters products
- Visual appeal
- More flexibility with search terms



HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

# Unmet needs in Westlaw

1. **Suggesting legal terminology.** Google has developed in users a "did you mean" habit – a sense that any rough semblance of the 'proper' search terms should result in the system automatically suggesting better search terms to the user. Many mentioned this Google feature when expressing a wish for similar but more sophisticated functionality on Westlaw. The system would assist with terminology changes across jurisdictions as well as providing terminology assistance when the researcher is working in an unfamiliar area. (~15 users mentioned)

2. **Search 'navigation' feature.** The Rabbit Hole – that was the exact term used by a number of attorneys to describe how research would take them afield and eventually far from the answers they were looking for. What is needed, some think, is a visualization or schematic that can help take them back to a critical juncture. Then if it turns out they'd taken the wrong fork they could return to try another route. (~6 users mentioned)

3. **Select 3 < x < 50 jurisdictions**. Two users said they often found themselves in the situations where they needed to do a targeted search with some intermediate number of jurisdictions – but Westlaw didn't have that capability.

4. **Other unmet needs mentioned only once:** More info with KeyCite flags; Pinpoint search terms in document; Access judge info within workflow; More trial court orders and appellate briefs; More jury instructions

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

# Decision-making: non-price factors and process

**How different organizations select legal information systems**

| Culture | Quantitative | Qualitative |
|---|---|---|
| **Formal** | Factors<br>• Numeric analysis of content usage<br>• Bundle pricing of other products<br>• Presumption of Lexis / Westlaw equivalence<br>Process<br>• Committees including finance & IT | Factors<br>• User opinion polls<br>• Content preferences of different practice groups<br>Process<br>• Committees of users (+ librarian)<br>• Sr associate-led committee |
| **Informal** | Factors<br>• Simple price comparisons<br>• Most price sensitive<br>Process<br>• Analysis from a single partner then vote (SSLF)<br>• Committee vote (LMLF) | Factors<br>• Preference from a few heavy users<br>• Opinion of senior partners<br>Process<br>• None – don't consider change<br>• Partner + associate dialog |

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

# Decision-making: price

Price is a factor for every type of organization, but matters less to some, and the analysis of price differs as well



| Culture | Quantitative | Qualitative |
|---------|-------------|-------------|
| **Formal** | Factors<br>• Nu... ...sage<br>• <br>• <br>Pro...<br>• Com... ...e & IT<br><br>**Lowest total cost of ownership** | Factors<br>• User opini...<br>• Co...<br><br>Proc...<br>• Con...<br>• Sr associate ...<br><br>**Greatest benefit to greatest number if price within 10-20%** |
| **Informal** | Factors<br>• Si...<br>P...<br>• ...<br>vote (...)<br>• Committee vote (LMLF)<br><br>**Lowest sticker price, with a +/- 5% hassle factor** | Factors<br>• Pr...<br>• <br>Proc...<br>• Non...<br>• Partner + associate dialog<br><br>**Tend to keep renewing, but huge (>30%) price difference matters** |

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

# Decision-making: culture and org type

Traditional TR Legal segments have some correspondence to purchase quadrants – size of organization also appears to correspond

| Culture | Quantitative | Qualitative |
|---|---|---|
| **Formal** | • Larger firms usually, but not always<br>• Some government (limited data) | • Larger firms almost always<br>• Some corporate |
| **Informal** | • A limited number of larger firms<br>• Price-sensitive smaller firms<br>• Some smaller corporate<br>• Some smaller government subscribers (limited data) | • "Loyal" firms and corporations of any size– unwilling to switch<br>• Some smaller government subscribers (limited data) |

\* For firms that subscribe to both Westlaw and Lexis, this schematic may not apply, since it is more about criteria and methods of choosing one or the other, rather than about price negotiation per se.

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

# Recommendations: Quantitative study

**Quantitative research needs to validate and build on some of the key insights**

- Quantify the proportion of users who can tie their preference to Westlaw features or functions or attributes.

- Assess the extent to which key value drivers are perceived to be "true" by legal professionals.

- Measure the relative importance of value drivers to prioritize product development investment.

- Measure relative price perceptions and price sensitivity (as a switching trigger).

- Assess the importance of and measure interest in meeting the unmet needs identified.

Easy wins:

- Consider feasibility of better promotion of Westcheck.com and improving usability around removing search term highlighting from documents (see slide 45)



HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

# Detailed Findings –
# Top-of-mind value drivers

**Overview**

**Executive Summary and Recommendations**

**Detailed findings**

**-Top-of-mind value drivers**

**-Unmet needs**

**-Preference, decision-making, and verbatims**



HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

15

# Top-of-mind Findings: How to interpret

**A top-of-mind value is far more important than a respondent's positive reaction when presented with a feature**

- The "High" "Mid" or "Low" classifications for the following pages refer to how often features or other attributes were mentioned top of mind as a driver of value. Roughly this corresponds to:

  - Low: 2-3 times

  - Mid: 4-6 times

  - High: 7+ times

- Keeping in mind that this is qualitative data, and a sample of convenience, it's still worth noting that even a small number of top-of-mind mentions hint at a widespread perception of value.

 **THOMSON REUTERS**

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

16

# Navigation and ease-of-use (1)

**Widespread commendation for a variety of features, sometimes in direct contrast to Lexis**

- Boolean terminology is simple and memorable

- A number used "Google-like" to describe the interface

- For some it was a more general sense of how things linked together to relieve the burdens of research

"Sometimes it's just little things. Like let's say you want to search for 'hostile' and 'work'. In Westlaw you put 'hostile' ampersand 'work' but in Lexis you'd have to put 'hostile' AND ... spell the word 'and' out ... 'work' – so it's just more keystrokes." – LMLF senior associate who uses both Lexis and Westlaw

"I appreciate the internal links. As I'm sitting there reading a case and it cites a statute. It's really easy to click on the statute and be able to read it. Then, of course, I can go to the notes of decision on the statute. It's just a very easy way to go down the rabbit hole of research." – Government attorney

"I think the interface is very easy, pretty much like Google. Very simple to use, I value that." – SSLF partner



HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

17

# Navigation and ease-of-use (2)

**Widespread commendation for a variety of features, sometimes in direct contrast to Lexis**

- No need to select the appropriate database

- The layout is conducive to research

- Features and tools are highly discoverable

"I appreciate the ease of use. With the whole WestlawNext it's become much more like a Google search." – Government attorney

"I like the broad catch-all search bar on Westlaw, where you just enter what you're looking for and it pulls up cases, statutes and maybe treatises and various other sources. I find that to be pretty helpful. With Lexis and with the old Westlaw you had to dig around to find the exact database you wanted to search." – LMLF partner

"The organization helps me see what options are available. I like the way that the left side of the screen is organized." – LMLF senior associate



HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

# Natural language search is effective

**Its efficacy has converted a number of former Boolean searchers**

- Constructing a search is simple

- Search engine often seems to "get" what users are after at a conceptual level rather than just returning documents that have selected terms in them

- Some compared this favorably to Lexis

- Seems more widely used among newer attorneys

- Still, those heavily involved in research tend to use T&C searching predominantly

- Some have quit doing Boolean searches because it takes extra time

"The other day I remembered this quote I wanted to put in a brief. I remembered it contained the term 'country boy' and some other details about it – but not much. I put the term in quotes and added some other information, and in about two minutes I had my case – beautiful!" – Corporate attorney

"I normally search natural language, I'm very proficient in Boolean as well, but I normally do natural language, saves a lot of time, and it opens up the universe. You can always close it with terms and connectors." – Corporate attorney

"The natural language is significantly better than it was [when] I was in law school. I still mostly do Boolean but I use natural language once in a while. I usually find what I'm looking for pretty quickly that way." – SSLF partner



HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

19

# Lots of relevant filings, such as pleadings and motions

---

**Helps litigators access precedent, analyze materials that may be relevant to their matter**

- Not having to sign on to PACER a time saver
- Volume of materials seems to have increased

"I like that Westlaw now will give me briefs that have been filed citing certain points of law or cases. I find those pretty helpful, but it's only been within the past few years that I've noticed those and started to use them." – LMLF senior associate

"I love having the access to motion papers, summary judgment motions or other appellate briefs. I think it's very helpful." – LMLF senior associate

"Having access to the underlying filings right there without going off and signing on to PACER, that's great. Sometimes you can get the pleadings, complaint or answer, and you can get a lot of the underlying papers. …Also, another helpful thing is, let's say I come across an argument or a proposition that's useful. Then I go back and look at the brief of the party that put forward the winning argument, and they will often cite cases that go even beyond, with the court side, so then I have, right away I have a connection to other helpful cases." – LMLF associate



# Headnotes + Key Numbers

**These are valued for scanning and assessing cases and finding other relevant materials**

- While Key Numbers help locate relevant materials, some feel they can be too broad at times

- Used more by those who do lots of research

- Key Numbers may be used less by newer attorneys who prefer searching

- NB: Some use the term "Headnote" or "Key Note" when referring to the Key Numbers

"I felt with Westlaw I could find results pretty consistently – using secondary sources, key words and the key system was really productive for me. That's something Lexis doesn't have." – LMLF senior associate who preferred Westlaw but firm switched to Lexis two years ago

"I typically try to drill down into the headnotes to get to more specific ones." – LMLF senior associate

"I always preferred Westlaw… because they had key note headings they called them. You could look under the key numbers and it felt like you could do broader searches that way." – LMLF partner

"I like the way headnotes link to the specific portion of the case. We don't always have time to go through 26 pages. I may want to read the relevant portion, and then if it sounds good, email myself the case so I can read the whole thing." – LMLF senior associate

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY



# Citing References feature

**Effective and efficient for finding on-point materials**

• KeyCite Citing References helps users quickly identify other relevant cases and other documents.

"I'll often use the citing references so that I don't have to bother with Key Numbers." – SSLF associate

"The citing references tool is amazing, you find one case that's good for you and then, right there, you can just pull up everything else that's ever cited it, and usually you can even limit your search to the particular proposition that you're interested in." – LMLF associate

"I like how you can look at the citing references from the oldest to the newest or how often it's cited and so forth." – Corporate attorney



# Email documents

---

**Simple, time-saving feature that helps organize and share research findings**

- Many simply mentioned that it was easy and convenient and a function they often used

- A few mentioned specifically that the improvement in subject lines had made their lives easier

"In Classic Westlaw, the subject line would just have a number. Now in WestlawNext you have the case name right there, or the statute. And a lot of times I will take the relevant portion of the case, the reason I'm pulling it up, and I'll put that on my notes here. It's funny how those little touches just really save time." – LMLF senior associate

"They make it easy to email yourself a case; that's a very quick process. I feel like even a minute here or there makes a difference, at least in terms of the people who are waiting for my research, so the fact that things are organized in a way that I can operate with a maximum of efficiency is very valuable to me." – LMLF associate



# "I'm just used to the way Westlaw works"

**Familiarity with the WestlawNext UI and task flows instills a feeling of competency and comfort**

- This familiarity made users not want to switch

- But many offered at the same time that the same thing would happen with Lexis (and for some *had* happened with Lexis before)

"All I can say is that when I research, my own way of researching, whatever that is, and that's something that I really wouldn't be able to put into words, but just the habits that I have, the strategies I employ, it seems like Westlaw just sort of fits that better, for whatever that's worth." – LMLF associate

"My belief is the longer you work with either Westlaw or Lexis, the better that you get at it, and the easier the research becomes. You know exactly how to research a particular event." – Corporate attorney

"I would likely not be persuaded to change no matter what pitch Lexis made. I've figured out Westlaw. I'm used to it. If I have questions, I know who to call, that sort of thing." – Corporate GC



HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

# Overall I trust Westlaw

**Trust in accuracy and completeness, although never blind, is a strong default assumption for many**

- Trust in Westlaw comes from a combination of years of experience, and the secondary trust of senior colleagues and judiciary members

- But the issue of trust is delicate – with attorneys often emphasizing that the buck stops with them

"I trust Westlaw – trust but verify, like Ronald Reagan. I will sometimes spot check, like I thought I heard something about this statute or something…I have yet to find something in Westlaw, at least in the last two or three years, that was wrong or not up-to-date." – SSLF partner

"There's a point, and I can't say that I've ever personally reached it, but there would be a point where I could lose that trust. Too many times of someone saying, 'Oh, but I found this one in Lexis' would lead me to say, 'Okay, I can't rely on this completely.' … In my experience, it's never led to, 'Oh my God, the smoking gun case was in Lexis and it wasn't in Westlaw.'" – LMLF senior associate

"I don't view it really so much as an authority, but as an advisor. Look: my reputation is my ability to research, and I'm not going to trust my reputation with Westlaw. I'm just going to use it as a tool, but I have to satisfy myself." – LMLF associate



HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

# Organization of the search results

**Many singled out the usability and clarity of the search results**

- Showing multiple types of content improves relevance

- Jumping among content types is easy and common

"I like the manner in which the search function organizes things. Say if I'm researching an issue in Colorado, I'll typically start with the Colorado practice series. That's always very helpful, but I can easily jump between the cases, the statutes, the secondary materials, the jury instructions, the resources to supplement that research that's available." – LMLF senior associate

"The display of results is really convenient. Here I'll pull up a case. Without even scrolling, I can see that it was reversed and remanded at the Eighth Circuit. I can look at the filings, the negative treatment, the graphical history. I can do that without even scrolling. Secondary sources are right there. There's 38 law reviews in journals that have cited it. It also gives me the breakdown of what kinds of journals they are. I just like how everything's there at my fingertips." – Corporate attorney

 **THOMSON REUTERS**

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

# Completeness of results

**Westlaw will not miss something important, provided you search adequately**

- This value does not at all strip the user of responsibility for good searching

- It is simply the sense, closely tied to trust, that good searching on Westlaw will not end up with your research missing key information

"If I just use Westlaw for a search, I'm looking at the risk to me of only having used Westlaw, right? For really critical things I'll then also go to Lexis, but most of the time I have no fear of missing something with just Westlaw." – LMLF senior associate

"I'm convinced that if I'm not getting the case that I want to get, it's because it's not out there, it's not that I think, 'Oh, maybe Westlaw hasn't given me a good enough system to find it.'" – LMLF partner



HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

*Number of Mentions: Mid*

# Content suggestions on Westlaw's RH sidebar

**The right-hand sidebar suggestions often lead to new relevant materials**

- A few users favorably compared this against Lexis

"You may do a case law search and it'll then reference you to, say, a district court order or some sort of secondary source or something that deals with that issue that isn't just an appellate case. So in the sidebar it's leading you to content that may be helpful even though it's not what you are exactly searching in." – SSLF partner

"In Westlaw I appreciate how secondary materials pull up on the right side. I feel like Lexis tried to do that, but it just was never as effective." – LMLF senior associate, recent Lexis user, Westlaw preferred

"I like the way Westlaw also looks at what I'm researching and gives me suggestions of other things." – Corporate attorney

 **THOMSON REUTERS**

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

28

# Relevancy ranking

**Search results are ordered in a way that is consistent with expectations**

- Some will "trust" that the top results are the best

- Others say they don't trust the relevancy ranking, but likely exhibit some of the same behavior under time pressure

"With Lexis it would bring back results in chronological order, even if the recent ones weren't necessarily the more relevant ones. On Westlaw it tries to predict relevance and in general it seems to bring up the more relevant cases to the top of the search." – LMLF partner who recently switched to Westlaw

"The search ordering definitely isn't perfect, but it's pretty good. When I'm in a rush, I'll go through a long list of search results until I start hitting irrelevant ones, then I'll conclude the rest are probably similarly useless." – LMLF associate

"If I get 25 results I usually go through all 25, because I'm testing the search. Maybe the best results are further down. I don't trust the ordering of the results to be the be-all-end-all. I want to confirm that." – Corporate attorney



HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

29

# Formatting of cases and statutes

**Westlaw formatting thought to be closer to the look and feel of courts and legislatures**

- Invariably respondents would say this was "minor" – even expressing embarrassment that this could influence their decision

- Others mentioned that consistency just meant one less thing to worry about

"We often debate when you're drafting statutes what's the format? Is it tabbed in, or is it blocked? Usually Westlaw is very good at following the format that the state uses, and that's valuable because you don't want to submit something to the state legislature that's in a different format than what they use."

"Here's a nit: I don't know if it would be cited by anybody else for why they choose Westlaw or Lexis. I just don't like the format of Lexis cases, like the way they print out. I hate that. PDFs or paper. Doesn't matter. For Lexis, even [printing] it's just a little bit more confusing. Their head note system is not as intuitive. It's a little bit jumbled in that regard to me, so that's another reason why on case law searches, I prefer Westlaw." – LMLF senior associate



**THOMSON REUTERS**

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

30

Case 1:20-cv-00613-SB   Document 462-1   Filed 04/20/23   Page 337 of 510 PageID #: 98369

# Westlaw is widely used by members of the legal community

**More often this refers to "used by the courts" – but also by partners.**

- One recalled a judge that he clerked for specifically not allowing Lexis cites unless Westlaw was not available

- Several had a more general sense that courts frowned on Lexis cites

- Several said partners at their firms preferred Westlaw cites.

- Several senior associates said they felt frustrated when junior associates gave them cites in Lexis

"If I do find a Lexis citation, I'm going to try to find that same citation in Westlaw so that I have all Westlaw cites in my briefs. Because it also caters to the particular preferences of partners I work with, and even probably of clerks and judges." – LMLF senior associate

"If an associate working with me turned in a draft where all the citations were Lexis, I'd be fine, but before we file, at some point I'd probably ask that they be switched. That's probably a nit of mine, but I don't think I'm unique in that regard." – LMLF senior associate

"If I'm working with a partner who loves Lexis and only wants to see Lexis stuff, than I will change my preference to match that." – LMLF senior associate

 THOMSON REUTERS

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

# KeyCite flags – some say more reliable than Shepards

**Flags are a top-of-mind value generally; some specifically mention superiority over Lexis**

- One pulled up a specific example of a case that was poorly flagged in Lexis but clear in Westlaw

- Several others said they had second-hand stories of Lexis flags being problematic

- A few more had a vague sense, but no specific experience, with Lexis flags being problematic

- Most who mentioned flags had no sense of comparison, but generally felt them to be quite valuable

"When you pull up a statute, and there's a red flag or a yellow flag saying treat with caution, or it's been treated unfavorably by a court, that gives me an indication of how I need to proceed." – Corporate attorney

"When we were still transitioning to Lexis, I found a case on Westlaw (Novell, Inc. v. Microsoft Corp.) I had established that it was okay to use, but on Lexis it said that it wasn't okay to use. It turned out Westlaw was right." – LMLF senior associate

"Another complaint that people have since the switch to Lexis – it hasn't happened to me, but it's happened to a couple people that I know – is that it's not reliable. They don't always tell you if the case has been limited or overturned." – LMLF senior associate whose firm switched to Lexis two years ago

 **THOMSON REUTERS**

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

# Easy to filter and refine search results

**A core value is using the search and filter features to quickly find content.**

- Limiting by judge got special mention from a few as a valuable filter.

- There are different styles of searching, beyond natural language vs Boolean, but Westlaw accommodates many styles well

- "Mid" rating reflects how many thought of this as a top-of-mind value. True value likely higher. During conversation, it seems that "filter and refine" is so inherent in the product that some just take it for granted

"It's extremely valuable to be able to filter results along a number of different axes: jurisdiction, time, a headnote when that's applicable, type of authority, searching with AND, all that stuff." – LMLF associate

"It lets me slice and dice my search results the way that I want to." – LMLF associate

"I can narrow it down if there are too many documents and not have to re-run the search… in Lexis I recall that I would have to re-do the search." – MLF partner



HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

Number of Mentions: Mid

# Up-to-date with cases and statutes

**Currency is cited by some as a top-of-mind value, but far more, when asked, say it's a value they take for granted**

- A few have first-hand experience with seeing cases get posted quickly to Westlaw, either cases they were tracking, or things they saw when clerking

- One or two mentioned Westlaw being more up-to-date than Lexis

- Currency is especially important to heavy litigators on high profile cases

- For the few who knew of cases before they appeared on Westlaw, they felt inconvenienced rather than upset with Westlaw for being slow

- When pushed, almost all said faster is better, but almost no one felt the current systems, either Lexis or Westlaw, were too slow

- Currency of statutes is more important to transactional lawyers

"When we were shopping this past contract period between Lexis and Westlaw, there were examples of where Lexis was not as up-to-date as Westlaw. That is just beyond question, the single most important thing that you can have in research: to be accurate and up-to-date." – SSLF partner

"Let's say opposing counsel got a bad decision that's very helpful to us. If it wasn't there we might call Westlaw and say, 'Can you get this into your database because we need to cite it?' "Otherwise, per court rules, we need a long citation and attached opinion. There's just more steps to take." – LMLF senior associate

"My number one value is that I feel very confident Westlaw has the most current statute. That's of huge importance to me to know." – LMLF partner


**THOMSON REUTERS**

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

34

# Reference attorneys, statute navigation

- Reference attorneys
  - Mentioned by few
  - Important to those who mention them
  - Usually mentioned by very new associates, or by older attorneys who research infrequently
- Statute navigation
  - For the few who mentioned it, substantially better than going directly to state websites
  - Specifically like the perspective it provides, and the paging buttons
  - Most who mentioned statutes said they access them through government websites directly

> "The reference attorneys are extremely helpful in guiding you right to where you want to be." – SSLF associate

> "If I think it's a subject that I'm just doing a poor job researching, and the likelihood that something's on case law is high, I'll call one of the reference attorneys." – SSLF associate

> "Often I Google first – I find myself looking at a relevant statute, but I don't know where that statute fits in for context. This is where Westlaw does a good job. The graphic interface helps you conceptualize how the individual clause you're looking at relates to all the statutes in general." – LMLF partner

> "In the older version you had to search, which was difficult because different states describe statutes in different ways. I used to have to call Westlaw every time I was searching for a statute to say, 'How do I plug it in?' And it would take them like a half hour. Now I don't have to call anymore." – LMLF partner



HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

# Foldering and highlighting

- Foldering
  - Most who used did not use the folder sharing functionality
  - Some expressed that they felt they "should" be using folders more often, because it would help them get more organized
- Highlighting
  - Many talked about highlighting, but in the real world – printouts and highlight pens
  - Online highlighting appreciated in the context of
    - Emailing documents to yourself – later reference can quickly take you to what's important
    - Sending documents to partners – they appreciate the highlighting

"I value the folder option with WestlawNext because I can do work then share that with my other colleagues. I find that to be an excellent tool." – Corporate attorney

"I haven't ever used the foldering function. I should but I forget about it." – Government attorney

"I like that I can highlight sections within a statute and make notes. Then I can email it to myself and when I go back to that statute at any other point it's still highlighted and annotated." – Corporate attorney



HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

# Search history, legislative history, paste with citation

- Search history
  - Helps bring back documents recently accessed
  - Helps re-establish a train of thought
  - Some looking for a more elaborate way of navigating search – see product development ideas
- Legislative history
  - A few felt legislative history functionality worked well for them
  - One or two, however, expressed equal dissatisfaction with its usability
- Paste with citation
  - A timesaver and (for those with some experience) remembered as a headache

"I like that they keep track of the history of your searches and the history of your documents. I'll often go back, and that will let me pick up where I left off; it's very important for me." – LMLF associate

"I use my history to pull up the last case that I was looking at before it logged me off because I went to lunch or something like that. I use the history a lot." – Government attorney

"Westlaw does a far better job than Lexis on having the really easy to navigate congressional records and other legislative history." – LMLF senior associate

"Cut and paste from a case will usually give a nearly correct citation to put into Word. That saves a lot of time if it's already almost perfectly conformant to the Bluebook." – LMLF associate


**THOMSON REUTERS**

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

# Integration with other products, visual appeal, search term 'forgiveness'

- Integration with other TR products
  - West KM seems to give Westlaw 'stickiness' – a few users said they'd be loath to give it up
  - A few others systems were mentioned: CLEs, Drafting Assistant, Case Notebook, and Case Logistix
- Visual appeal of the Westlaw interface
  - Some literally just liked the colors
  - Some had a more general sense that it was cohesive and well-arranged
- Search term 'forgiveness'
  - A few felt that Westlaw was more forgiving about finding content when the search terms, especially for statutes, were not entered correctly

"I could switch to Lexis if we had to, but I don't want to lose the CLE part of Westlaw. It's free of charge to the company, it's free of charge to me." – Corporate attorney

"I like having the fully integrated suite. We've got Drafting Assistant, Case Notebook, Case Logistix, and an in-house KM drive." – Government attorney

"As a law student I preferred the Westlaw interface. It was more comfortable to look at, arranged in a way that was pleasing to my eye." – LMLF associate

"One problem with Lexis was that it was too demanding. If you didn't enter in the statute exactly right it would bring up zero results, instead of suggesting hey, did you mean this? It wouldn't suggest anything but I'm pretty sure WestlawNext will do that." – LMLF partner



**THOMSON REUTERS**

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

# Detailed Findings –
# Unmet needs

**Overview**

**Executive Summary and Recommendations**

**Detailed findings**

    **-Top-of-mind value drivers**

    **-Unmet needs**

    **-Preference, decision-making, and verbatims**



HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

39

# Unmet needs: Suggesting legal terminology

**Many expressed interest in Westlaw expanding on the "did you mean" habit developed in Google**

How it might work:

- Provide guidance in an unfamiliar area of law

    - Intuit what legal terminology is needed

    - To some extent, substitute for Google searches that are used to pick up terminology

    - Some also tied this into more general guidance for an unfamiliar area, which would include identifying key cases / statutes or even which treatises are most respected for the unfamiliar area

- Suggest equivalent terms across jurisdictions in a sort of legal dictionary / thesaurus fashion

"Here's a real legal terminology example: when I'm looking at a power of attorney document in most states it's called Power of Attorney or something similar. But in Louisiana it's something like General Mandate and Procuration. I happen to know that now because I just worked on it. But if Westlaw would automatically translate power of attorney that way it would be great." – Corporate attorney


**THOMSON REUTERS**

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

40

# Unmet needs: Search "navigation" feature

**Attorneys need more structured ways of following research paths**

How it might work:

- Research is much more than entering a term and getting results, it's the sum total of activity across the search bar, links, and navigation

- By this definition, research entails a maze-like series of paths, where many or most paths are leading to dead ends, but it is necessary to get back to the last fork in order to explore other possibilities

- When linking leads to a dead-end, the "navigation" feature would provide a way to get back to the last juncture

"I'll be researching, get 100 cases back, and start going through them. Eventually I'll get to one case, and that case cites another case that seems to have something interesting. Then I'll click on that case… That sequence takes me out of my search queue, right? I get pretty far afield, and in my mind an incredible feature would be some sort of a visual map, like they have in the case history, a representation of my path so that I could see where I've been. Then I could choose to go back to any one of the several junctures I've been through. What I'll do now is, sometimes, I'll keep, like, basically, I'll do that on paper. I'll make my own flowcharts, but that's not so convenient, and I would love it if it would track the path that I took, somehow, and then I could then bring up a page that sort of shows where I just went, and I could choose to go back 1 step, or 3 steps, or 7 steps, or whatever." — LMLE associate



HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

41

# Unmet needs: Select 3 < x < 50 jurisdictions

**Select an arbitrary number of jurisdictions to search within**

- Mentioned only twice in the qualitative phase, but top-of-mind in a small sample, which indicates the issue may be quite common

"Let's say you have a thirty state survey you want to do. You're not able to do that. When you select the jurisdiction, you can select one, two, three, or all fifty, and I hate that you can't select ten or fifteen or whatever. We're licensed in forty-four states and often I'm doing some targeted search, say, for ten states that we write the most premiums in. I need more than three, but I need less than fifty, and it doesn't give me that option." – Corporate attorney


**THOMSON REUTERS**

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

# Unmet needs: Single mentions (1)

- More info with KeyCite flags
  - Red text for the portion that was overruled
- Pinpoint search terms in document
  - Highlight the section(s) where search terms appear most densely
- Access judge info within workflow
  - A complaint that Westlaw's wealth of judge information is not obvious while in typical case research workflow
- More trial court orders and appellate briefs
  - Those who use these a lot, always want more
- More jury instructions

"I forget if it was Westlaw or Lexis – the natural language search would highlight this paragraph or multi-paragraph section where the words you were searching appeared most densely." – Government attorney

"If judge information were suggested to me the way that they do with case briefs, I bet I'd find myself using it more." – LMLF partner

"Sometimes I'll find reference to something I'd like to use and I'll look on Westlaw and Lexis and Pacer before I get what I need."



HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

# Unmet needs: Single mentions (2)

- Trial presentation software

  - "Right now I use a free app on my iPad called TrialDirector, which has corresponding PC software, but it costs $600 a license. It would be nice if I could take my Case Notebook, put it into my trial presentation software that has iPad capabilities that I can use to throw stuff up on my projector and stuff like that. I would love to have a trial presentation software that's fully integrated with the platform." – Government attorney

- Deeper Federal Register and legislative history

  - "The Federal register on Westlaw only goes back to maybe the '90s. But for Clean Water Act stuff sometimes I want to go back into the '80s. Also, legislative history needs to go back further for some of these pretty important laws." – Corporate attorney

- Maps on dockets

  - "Having a district map on Westlaw's dockets like you have on Pacer would be nice." – Corporate attorney

- Westlaw-like searching for Checkpoint

  - "In my perfect world I'd have Westlaw combine their Checkpoint for tax law into the Westlaw searching capability." – LMLF partner



HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

# Easy wins

- WestCheck.com – it appears that a significant number of attorneys do not have access or are unaware they have access to the functionality of WestCheck. Consider a program of promoting it.

"I seem to recall there being something called RefCheck maybe, where you could upload documents and it would run a check to make sure everything in it was still good law. I'm not sure if that still exists, but I wish we had it." – SSLF partner

- Clear highlighting in emailed documents: two attorneys pointed out a nit that they didn't want terms highlighted in an emailed document. In both cases we told them how to do this, but it indicates an opportunity to better expose the functionality through improved usability.

"Is it Westlaw that has the product where you can run a brief cite? It would go check your cases? It's been a while since I used that. That would be helpful to have." – LMLF senior associate

"So if I email this to myself, it'll come back with all this highlighting still in there, but I don't want highlighting. I am using those terms to get to the case, but once I get to the case, I don't need to be reminded that that was my search term." – senior LMLF associate


**THOMSON REUTERS**

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

# Detailed Findings –
# Preference, decision-making, and verbatims

**Overview**

**Executive Summary and Recommendations**

**Detailed findings**

    **-Top-of-mind value drivers**

    **-Unmet needs**

    **-Preference, decision-making, and verbatims**



HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

# Preference for Westlaw vs Lexis

- Most recalled developing a preference in law school. That preference would stick unless (as was often the case) they ended up in an organization that used / preferred the other.

- Qualitatively, those who switch from Westlaw to Lexis seem more disgruntled than the reverse.

"I do have access to Lexis. When I started out as an attorney we had Lexis and Westlaw, and then the firm eventually made an exclusive deal with Westlaw. I was disappointed because I liked Lexis. Within the last couple years, they have opened up the option again, to use Lexis, but I'm not willing to go back and invest the time to figure out how to use Lexis because I have so many years with just using Westlaw." – LMLF partner

"Yeah, I'd say a strong preference for Westlaw – I developed that back in law school ... I just liked the product more. I mean, I liked the search function. I liked the way they present everything." – LMLF senior associate

"Actually in the beginning of law school I preferred Lexis, but it wasn't Lexis Advance. And then I interned for a judge and only used Westlaw and after that I started to use Westlaw pretty much exclusively." – LMLF senior associate

"When I went to law school we had both Lexis and Westlaw, and I used Westlaw almost exclusively, because I never really liked the Lexis platform." – LMLF senior associate



HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

# Additional Westlaw vs Lexis verbatims

- "My preference for Westlaw started in law school, even though initially I was agnostic. I mean, it's not like anyone had primed me for one or the other. It's hard for me to explain what it was that pushed me from one to the other, but it didn't take very long. I remember, even, by the end of my first year, then I had sort of just even unconsciously made the decision that I was more comfortable with the way Westlaw was presenting things." – LMLF associate

- "I've been away from Lexis for many years now, apart from Accurint, which we use. I've been away from Lexis for so many years. I don't know that I would go back, but if I had to go back, it would be a relatively smooth transition. Research is research." – former Lexis reference attorney, now Westlaw preferred

- "When we first switched to Westlaw it was annoying. I mean, you get used to something, and you know how to do things, and you know where things are. The initial switch is always annoying, but it's not the first time it's happened in my career and I'm going to guess it won't be the last time it's going to happen in my career. You just re-learn Westlaw and it's fine." – Government attorney

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

# Decision-making verbatims

- "I'm the main person in the office who makes the decision. I've put a lot time with both. There's one attorney in my office who really pushes for Lexis, but I just really prefer Westlaw. Most of what he talks about with Lexis is about their adjacent programs. Not just the legal research, but with public records searching, and with things that will help you organize your cases, your documents, things like that. I'm not as worried about those as I am about legal research." – SSLF partner

- "It's cost. We have our IT people go and price, content wise, then compare Westlaw and Lexis on that content and contract terms, and make a decision. It may not be purely sticker cost if we're more familiar with one system, but ultimately that's part of a larger cost analysis too." – LMLF partner

- "It's actually an associate-led process at my firm and we selected Westlaw this last round. We knew there was some dissatisfaction with the pricing for Lexis, and that a lot of people had prior use of Westlaw and liked that platform, so we reached out to Westlaw to get a trial period. Our group of associates spearheaded the content discussions, so we were really able to tailor the product and get Westlaw for about half the cost of the Lexis product." – LMLF senior associate

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

# Use of Google

- Most attorneys use Google frequently

- For a minority, it is still anathema to use Google in the course of "core" legal research

- Key reasons for using Google

  - In a new area of law and don't know where to start

  - In a rapidly-evolving area of law

  - To find statutes – but then go to Westlaw for the annotations

  - Need to get a handle on legal terminology

  - Want to see what other attorneys are saying about a particular topic, using those writings as "tertiary" materials

  - Want to get names of cases to help kickstart a research project

  - For international legal issues

"When I get a research project and I don't even know where to start, I'll Google, take a couple of shots in the dark, and see if I can hit on an article some lawyer's published somewhere that deals with the issue, and then embedded in there will be case citations, and then as soon as I got those, then I go into Westlaw, and start doing my own research." – LMLF associate

"I can Google something and see if it's a law blog or whatever and then skim through the Google excerpts to get terminology." – LMLF partner

"Through Google I'll find what attorneys have said about these subjects. These really are kind of secondary sources. I don't really think of it as legal research, and I'm not gathering anything that I'm ever going to cite in my brief, I'm just trying to get a sense for the lay of the land." – LMLF partner



HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

# Content advantage verbatims – Westlaw and Lexis

- "I'm of the belief that when it comes to research involving traditional labor matters that Lexis has the edge." – LMLF senior associate

- "There's one particular series, the Rutter guides, that are only on Westlaw not on Lexis, so when I was a Lexis user I'd go to Westlaw when I needed those." – LMLF partner

- "Lexis has Mealey's reports, which in insurance we use a lot. And Appleman's – which has some differences with Couch in Westlaw." – LMLF senior associate

- "Some trial court opinions are on Lexis and others seem to be on Westlaw, but I don't know what accounts for the differences." – LMLF senior associate

- "I think that Lexis, where it beats out Westlaw, is its public records – judgments or liens or motor vehicle records, things like that – those are phenomenal on Lexis: ease of use, the timeliness." – LMLF senior associate

- "To the extent that administrative decisions are actually available, they're easier to find on Lexis. If you go into your Lexis Advance, the specific drop-down and you can navigate in that a little more easily than with Westlaw in that." – LMLF senior associate

- "Westlaw had databases related to medical malpractice litigation that our personal injury and med mal defense team preferred over Lexis." – LMLF senior associate

- "You guys have a Missouri practice series that I use a lot just for very basic things I haven't handled before. It's low-level but gives me starting points to craft the argument start conducting my research." – Government attorney

- "I'm a big fan of Bruner & O'Connor on Westlaw. I use it a lot with my construction attorneys." – LMLF senior associate

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

# Verbatims from hypotheticals (1)

**If you went to a new firm would you make the case for Westlaw?**

- "It really depends. If I went to a large firm and there was no Westlaw, I probably wouldn't say anything just because I don't think my efforts would really matter. If I went to a small firm and they already had Lexis and Lexis was working fine, I probably would just fall into line and just not really bother it." – LMLF senior associate with a strong Westlaw preference

**… if you were asked your opinion?**

- "Yeah. I would advocate for it. What I would say is, 'It's an industry standard. It's easy to use. You can be guaranteed that any new lawyers walking through the door have been exposed to it.'" – LMLF senior associate with a strong Westlaw preference

- "If I were asked I'd make the case for Westlaw, but I don't think I would want to start my first day walking in saying, you guys need this. I prefer Westlaw. I would use Lexis if that's what's available, and feel fairly comfortable doing it, but I prefer Westlaw just for the accuracy and the ease of use, etc." – SSLF partner

**What would it take to get you to use Lexis? (to very loyal Westlaw users)**

- "I would certainly need to hear a lot of very comforting things about being accurate and up to date. About the searches not coming back with thousands instead of hundreds, when you only need hundreds to come back. Those are probably the big things." – SSLF partner

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

# Verbatims from hypotheticals (2)

**How would you feel if you had to switch from your preferred service?**

- "Uncomfortable. I just think you get comfortable with a product, with a system, and there's some level of efficiency that comes as a result of your being familiar with it, and I'm to the point in my career where I want to be fairly efficient, because if I'm not, they're wondering, 'What's his problem? He's been doing this for 10 years.'" – LMLF senior associate

- "Look, I would obviously adjust, it would probably be an uncomfortable couple of months. I'm sure I would manage it, but it would be annoying, that's for sure. I'm not going to quit my job over it. I mean, I don't have the impression that it's inferior, really." – LMLF associate with very strong preference for Westlaw

**What if all the associates preferred the other service and it was more expensive?**

- "It'd probably like be, if it's a 5% cost difference, that's fine. If it's a 50% cost, the associates can go do exactly what I told them to do and deal with it. Most of our clients are insurance companies so the profit margins are lower so I'm much more cost conscientious about all of the vendor services that I use." – LMLF partner

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

# Segment & geographic breakdowns

- Online journaling study
  - 24 heavy users of Westlaw, > 2 hours / week of WestlawNext usage
- In-depth in-person and telephone interviews
  - 27 in-person and 71 phone interviews, broken down as

| | Telephone | Online |
|---|---|---|
| SSLF | 22 | 12 |
| LMLF | 21 | 6 |
| Corporate | 9 | 6 |
| Government | 8 | 2 |

| State | Telephone | Online |
|---|---|---|
| AZ | 2 | 1 |
| CA | 5 | 4 |
| CO | 4 | |
| CT | 1 | |
| DC | 4 | 1 |
| FL | 1 | |
| GA | 1 | |
| IA | 3 | |
| ID | 1 | 1 |
| IL | 15* | 12* |
| IN | 1 | 1 |
| KY | 2 | 1 |
| MA | 1 | 1 |
| MN | 3 | |
| MO | 1 | |
| NJ | 2 | 1 |
| NY | 15* | |
| OH | 3 | |
| OK | 2 | |
| PA | 1 | |
| TX | 2 | 1 |
| WA | | |

* Large numbers from Chicago and New York City because in the course of in-person interview recruiting, many who could not accept an in-person interview still did a phone interview and/or online journaling.

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

# Exhibit 7
## Associated Document
## (1 of 4)

**To:**     Dvorkin, Joe (Legal)[Joe.Dvorkin@thomsonreuters.com]; Restrepo, Brian (Legal)[Brian.Restrepo@thomsonreuters.com]; Post, Christine (IR Marketing)[christine.post@thomsonreuters.com]; Dahn, Mike (Legal)[mike.dahn@thomsonreuters.com]

**Cc:**     Michael Dolenko[michaeld@phase-5.com]

**From:**   Steve Hansen[SteveH@phase-5.com]

**Sent:**    Sat 1/23/2016 10:08:13 AM (UTC-06:00)

**Subject:** value drivers qualitative followups

private_message_transcript_thomson-reuters-forum_2015-11-19_15-39-0500.xlsx
activity_transcript_thomson-reuters-forum_2015-11-19_15-38-0500.xlsx
discussion_transcript_thomson-reuters-forum_2015-11-19_15-38-0500.xlsx
Value_drivers_qual_report_v11.pptx

Hi all,

Followups we had from the meeting yesterday:

1. Breakout of heavy user segments and geographies is inserted on Slide 54 – also corrected number of participants was 24 not 26 (2 who registered did not participate)

2. Geographies for the phone interviews also on Slide 54

3. Slide 10 includes # of users who mentioned each item

4. Online journal materials are attached. They are not friendly for perusing, apologies for that. This is a download from the online system as we used it, which is no longer available – so just the raw data.

**Steve Hansen 司圆直**
**Senior Advisor**
**Phase 5 -- phase-5.com**
T: (612) 222-1613
Skype: srhansen
linkedin.com/in/hansenchina

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

# Exhibit 7
## Associated Document
## (2 of 4)

# Thomson Reuters - Nov 2015

http://thomsonreuters.recollective.com

**Study:** Online Journaling

**Study URL:** http://thomsonreuters.recollective.com/thomson-reuters-forum

**Report:** Private Messages Transcript

**Report Date:** 11/19/15 :11 PM

**Report Range:** All Time

**Participants:** All Participants (24)

**Inclusions:** Broadcasts

Excerpts

**Topics:** Dale Shrallow

Stephen Vedova

Bryan Luce

Richard Kienzler

Jason Kim

Eric Nelson

Julie Harris

Cynthia Lasher

Scott Carr

Dvosha Roscoe

Cheryl Sabnis

Tanya Chalker

Ian Fraser-Thomson

Jonathan Shaw

Susan McGahan

Rebecca Weir

Michael Jacobson

Billy Young

Alison Smith

Sarah Ashby

Thomas Cregger

Matthew George

Sheri Forbes

Malcolm Wilson

Thomas Doggett

David Letvin

Daniel Berkowitz

Marnie Holz

Booker Coleman

Matthew Ignoffo

Meghan Welch

Breanne Vaclavik

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

| User ID | External ID | First Name | Last Name | Email | Picture | Username | Registered | Last Login | Last Study | Country | TZ | DST | State |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 59931 | | Steve | Hansen | SteveH@phase-5.com | | Steve | 11/10/15 :11 PM | 11/19/15 :11 PM | 11/10/15 :11 PM | | 0 | 0 | Normal |
| 60185 | | Dale | Shrallow | dale.shrallow@abbvie.com | | dale_s | 11/11/15 :11 AM | 11/16/15 :11 AM | 11/11/15 :11 PM US | | -6 | 1 | Normal |
| 60187 | | Stephen | Vedova | svedova@foleymansfield.com | | stephen_c | 11/11/15 :11 AM | 11/16/15 :11 AM | 11/11/15 :11 PM US | | -6 | 1 | Normal |
| 60189 | | Bryan | Luce | bluce@daleymohan.com | | bryan_c | 11/11/15 :11 PM | 11/17/15 :11 AM | 11/11/15 :11 PM US | | -6 | 1 | Normal |
| 60191 | | Richard | Kienzler | rkienzler@freeborn.com | | richard_c | 11/11/15 :11 AM | 11/15/15 :11 PM | 11/11/15 :11 PM US | | -6 | 1 | Normal |
| 60193 | | Jason | Kim | jkim@schneiderwallace.com | | jason_c | 11/11/15 :11 AM | 11/18/15 :11 AM | 11/11/15 :11 PM US | | -5 | 1 | Normal |
| 60195 | | Eric | Nelson | EPN@Naylorhales.com | | eric_c | 11/11/15 :11 PM | 11/17/15 :11 PM | 11/11/15 :11 PM US | | -7 | 1 | Normal |
| 60197 | | Julie | Harris | Julie.Harris@lubrizol.com | | julie_H | 11/11/15 :11 PM | | 11/11/15 :11 PM US | | -5 | 1 | Normal |
| 60199 | | Cynthia | Lasher | Clasher@NCS-Law.com | Image Link | cynthia_c | 11/11/15 :11 PM | 11/17/15 :11 PM | 11/11/15 :11 PM US | | -5 | 1 | Normal |
| 60201 | | Scott | Carr | scarr@CBMLaw.com | | scott_c | 11/11/15 :11 PM | 11/16/15 :11 PM | 11/11/15 :11 PM US | | -8 | 1 | Normal |
| 60203 | | Dvosha | Roscoe | Dvosha.Roscoe@carriageservices.com | | dvosha_R | 11/11/15 :11 PM | 11/18/15 :11 PM | 11/11/15 :11 PM US | | -6 | 1 | Normal |
| 60205 | | Cheryl | Sabnis | csabnis@kslaw.com | | cheryl_c | 11/11/15 :11 PM | 11/16/15 :11 PM | 11/11/15 :11 PM US | | -8 | 1 | Normal |
| 60207 | | Tanya | Chalker | tchalker@GIE.com | | tanya_c | 11/11/15 :11 PM | | 11/11/15 :11 PM US | | -5 | 1 | Normal |
| 60209 | | Ian | Fraser-Thomson | ift@cwmlaw.com | | ian_c | 11/11/15 :11 PM | | 11/11/15 :11 PM US | | -5 | 1 | Normal |
| 60211 | | Jonathan | Shaw | jshaw@wpsj.com | | jonathan_c | 11/11/15 :11 PM | 11/16/15 :11 PM | 11/11/15 :11 PM US | | -5 | 1 | Normal |
| 60213 | | Susan | McGahan | sm1561@att.com | | susan_c | 11/11/15 :11 PM | 11/13/15 :11 PM | 11/11/15 :11 PM US | | -5 | 1 | Normal |
| 60215 | | Rebecca | Weir | rweir@lsc.gov | Image Link | rebecca_g | 11/11/15 :11 PM | 11/16/15 :11 PM | 11/11/15 :11 PM US | | -5 | 1 | Normal |
| 60217 | | Michael | Jacobson | majacobson@arnstein.com | | michael_c | 11/11/15 :11 PM | 11/16/15 :11 PM | 11/11/15 :11 PM US | | -6 | 1 | Normal |
| 60219 | | Billy | Young | warrenbillyyoung95@gmail.com | | billy_c | 11/11/15 :11 PM | | 11/11/15 :11 PM US | | -5 | 1 | Normal |
| 60221 | | Alison | Smith | AMSmith@CRS.loc.gov | | alison_l | 11/11/15 :11 PM | | 11/11/15 :11 PM US | | -5 | 1 | Normal |
| 60223 | | Sarah | Ashby | saraha@psychemedics.com | | sarah_c | 11/11/15 :11 PM | 11/17/15 :11 PM | 11/11/15 :11 PM US | | -5 | 1 | Normal |
| 60225 | | Thomas | Cregger | TAC@creggerlaw.com | | thomas_c | 11/11/15 :11 PM | 11/18/15 :11 PM | 11/11/15 :11 PM US | | -8 | 1 | Normal |
| 60227 | | Matthew | George | Matthew.george@dot.ca.gov | | matthew_g | 11/11/15 :11 PM | | 11/11/15 :11 PM US | | -5 | 1 | Normal |
| 60229 | | Sheri | Forbes | sforbes@ag.nv.gov | | sheri_n | 11/11/15 :11 PM | | 11/11/15 :11 PM US | | -5 | 1 | Normal |
| 60231 | | Malcolm | Wilson | malcolmwilson@oxfordlife.com | | malcolm_c | 11/11/15 :11 PM | 11/19/15 :11 AM | 11/11/15 :11 PM US | | -7 | 0 | Normal |
| 60357 | | Thomas | Doggett | Doggett@mschicagolaw.com | | Thomas_D | 11/12/15 :11 AM | 11/17/15 :11 PM | 11/12/15 :11 AM US | | -5 | 1 | Normal |
| 60359 | | David | Letvin | DavidLetvin@aol.com | | David_L | 11/12/15 :11 PM | 11/16/15 :11 PM | 11/12/15 :11 PM US | | -6 | 1 | Normal |
| 60361 | | Daniel | Berkowitz | dberkowitz@koponairdo.com | | Daniel_B | 11/12/15 :11 AM | | 11/12/15 :11 AM US | | -5 | 1 | Normal |
| 60363 | | Marnie | Holz | mholz@hkmalawfirm.com | | Marnie_H | 11/12/15 :11 PM | 11/17/15 :11 PM | 11/12/15 :11 AM US | | -6 | 1 | Normal |
| 60365 | | Booker | Coleman | Bcoleman@Ulmer.com | | Booker_C | 11/12/15 :11 PM | 11/17/15 :11 PM | 11/12/15 :11 PM US | | -6 | 1 | Normal |
| 60367 | | Matthew | Ignoffo | mignoffo@keefe-law.com | | Matthew_I | 11/12/15 :11 AM | 11/12/15 :11 AM | 11/12/15 :11 AM US | | -6 | 1 | Normal |
| 60369 | | Meghan | Welch | meghanwelch@gmail.com | | Meghan_W | 11/12/15 :11 AM | 11/16/15 :11 PM | 11/12/15 :11 AM US | | -6 | 1 | Normal |
| 60371 | | Breanne | Vaclavik | bvaclavik@komdr.com | | Breanne_V | 11/12/15 :11 AM | 11/15/15 :11 PM | 11/12/15 :11 AM US | | -6 | 1 | Normal |

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

| Reply ID | Owner | Excerpted By | Excerpt | Codes | Excerpt Date | Post Date |
|----------|-------|--------------|---------|-------|--------------|-----------|

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

| Username | User ID | Date Posted | Post Text | Parent Reply ID | Reply ID | Response Type | Date Completed | Completed By | Excerpt Count |
|---|---|---|---|---|---|---|---|---|---|
| Steve Hansen (Steve) | #P59931 | 11/12/15 :11 AM | Hi Dale,<br><br>Thank you again for agreeing to participate in the 'Online Journaling Exercise' of Thomson Reuters!<br><br><br><br>As mentioned in my previous email, please find below your login information to access the online research community starting today, Nov 12.<br><br> Link : http://thomsonreuters.recollective.com/thomson-reuters-forum<br> Username : dale_s<br> Password : ******** (will need to be changed)<br><br>The online journaling will take place over 4 days, Nov 12-13 and Nov 16-17, 2015. It is being facilitated by Phase 5, an independent market research firm, on behalf | | #DR7 | Broadcast | | | 0 |

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

| Username | User ID | Date Posted | Post Text | Parent Reply ID | Reply ID | Response Type | Date Completed | Completed By | Excerpt Count |
|---|---|---|---|---|---|---|---|---|---|
| Steve Hansen (Steve) | #PS9931 | 11/12/15 :11 AM | Hi Stephen,<br><br>Thank you again for agreeing to participate in the 'Online Journaling Exercise' of Thomson Reuters!<br><br><br>As mentioned in my previous email, please find below your login information to access the online research community starting today, Nov 12.<br><br> Link : http://thomsonreuters.recollective.com/thomson-reuters-forum<br> Username : stephen_c<br> Password : ******** (will need to be changed)<br><br>The online journaling will take place over 4 days, Nov 12-13 and Nov 16-17, 2015.<br>It is being facilitated by Phase 5, an independent market research firm, on behalf | | #DR9 | Broadcast | | | 0 |

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

| Username | User ID | Date Posted | Post Text | Parent Reply ID | Reply ID | Response Type | Date Completed | Completed By | Excerpt Count |
|---|---|---|---|---|---|---|---|---|---|
| Steve Hansen (Steve) | #P59931 | 11/12/15 :11 AM | Hi Bryan,<br><br>Thank you<br>again for agreeing to participate in the 'Online Journaling Exercise' of<br>Thomson Reuters!<br><br><br>As<br>mentioned in my previous email, please find below your login information to<br>access the online research community starting today, Nov 12.<br><br>Link : http://thomsonreuters.recollective.com/thomson-reuters-forum<br>Username : bryan_c<br>Password : ******** (will need to be changed)<br><br>The online journaling will take place over 4 days, Nov 12-13 and Nov 16-17, 2015.<br>It is being facilitated by Phase 5, an independent market research firm, on behalf. | | #DR11 | Broadcast | | | 0 |

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

| Username | User ID | Date Posted | Post Text | Parent Reply ID | Reply ID | Response Type | Date Completed | Completed By | Excerpt Count |
|---|---|---|---|---|---|---|---|---|---|
| Steve Hansen (Steve) | #P59931 | 11/12/15 :11 AM | Hi Richard, | | #DR13 | Broadcast | | | 0 |

Thank you
again for agreeing to participate in the 'Online Journaling Exercise' of
Thomson Reuters!


As
mentioned in my previous email, please find below your login information to
access the online research community starting today, Nov 12.

Link : http://thomsonreuters.recollective.com/thomson-reuters-forum
Username : richard_c
Password : ******** (will need to be changed)

The online journaling will take place over 4 days, Nov 12-13 and Nov 16-17, 2015.
It is being facilitated by Phase 5, an independent market research firm, on behalf

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

| Username | User ID | Date Posted | Post Text | Parent Reply ID | Reply ID | Response Type | Date Completed | Completed By | Excerpt Count |
|---|---|---|---|---|---|---|---|---|---|
| Steve Hansen (Steve) | #P59931 | 11/12/15 :11 AM | Hi Jason,<br><br>Thank you<br>again for agreeing to participate in the 'Online Journaling Exercise' of<br>Thomson Reuters!<br><br><br>As<br>mentioned in my previous email, please find below your login information to<br>access the online research community starting today, Nov 12.<br><br>Link : http://thomsonreuters.recollective.com/thomson-reuters-forum<br>Username : jason_c<br>Password : ******** (will need to be changed)<br><br>The online journaling will take place over 4 days, Nov 12-13 and Nov 16-17, 2015.<br>It is being facilitated by Phase 5, an independent market research firm, on behalf | | #DR1S | Broadcast | | | 0 |

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

| Username | User ID | Date Posted | Post Text | Parent Reply ID | Reply ID | Response Type | Date Completed | Completed By | Excerpt Count |
|---|---|---|---|---|---|---|---|---|---|
| Steve Hansen (Steve) | #PS9931 | 11/12/15 :11 AM | Hi Eric,<br><br>Thank you again for agreeing to participate in the 'Online Journaling Exercise' of Thomson Reuters!<br><br><br>As mentioned in my previous email, please find below your login information to access the online research community starting today, Nov 12.<br><br>Link : http://thomsonreuters.recollective.com/thomson-reuters-forum<br>Username : eric_c<br>Password : ******** (will need to be changed)<br><br>The online journaling will take place over 4 days, Nov 12-13 and Nov 16-17, 2015. It is being facilitated by Phase 5, an independent market research firm, on behalf | | #DR17 | Broadcast | | | 0 |

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

| Username | User ID | Date Posted | Post Text | Parent Reply ID | Reply ID | Response Type | Date Completed | Completed By | Excerpt Count |
|---|---|---|---|---|---|---|---|---|---|
| Steve Hansen (Steve) | #P59931 | 11/12/15 :11 AM | Hi Julie,<br><br>Thank you<br>again for agreeing to participate in the 'Online Journaling Exercise' of Thomson Reuters!<br><br><br><br>As<br>mentioned in my previous email, please find below your login information to access the online research community starting today, Nov 12.<br><br>Link : http://thomsonreuters.recollective.com/thomson-reuters-forum<br>Username : julie_H<br>Password : ******** (will need to be changed)<br><br>The online journaling will take place over 4 days, Nov 12-13 and Nov 16-17, 2015.<br>It is being facilitated by Phase 5, an independent market research firm, on behalf | | #DR19 | Broadcast | | | 0 |

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

| Username | User ID | Date Posted | Post Text | Parent Reply ID | Reply ID | Response Type | Date Completed | Completed By | Excerpt Count |
|---|---|---|---|---|---|---|---|---|---|
| Steve Hansen (Steve) | #P59931 | 11/12/15 :11 AM | Hi Cynthia,<br><br>Thank you again for agreeing to participate in the 'Online Journaling Exercise' of Thomson Reuters!<br><br><br>As mentioned in my previous email, please find below your login information to access the online research community starting today, Nov 12.<br><br>Link : http://thomsonreuters.recollective.com/thomson-reuters-forum<br>Username : cynthia_c<br>Password : ******** (will need to be changed)<br><br>The online journaling will take place over 4 days, Nov 12-13 and Nov 16-17, 2015.<br>It is being facilitated by Phase 5, an independent market research firm, on behalf | | #DR21 | Broadcast | | | 0 |

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

| Username | User ID | Date Posted | Post Text | Parent Reply ID | Reply ID | Response Type | Date Completed | Completed By | Excerpt Count |
|---|---|---|---|---|---|---|---|---|---|
| Steve Hansen (Steve) | #P59931 | 11/12/15 :11 AM | Hi Scott,<br><br>Thank you<br>again for agreeing to participate in the 'Online Journaling Exercise' of<br>Thomson Reuters!<br><br><br>As<br>mentioned in my previous email, please find below your login information to<br>access the online research community starting today, Nov 12.<br><br>Link : http://thomsonreuters.recollective.com/thomson-reuters-forum<br>Username : scott_c<br>Password : ******** (will need to be changed)<br><br>The online journaling will take place over 4 days, Nov 12-13 and Nov 16-17, 2015.<br>It is being facilitated by Phase 5, an independent market research firm, on behalf | | #DR23 | Broadcast | | | 0 |

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

| Username | User ID | Date Posted | Post Text | Parent Reply ID | Reply ID | Response Type | Date Completed | Completed By | Excerpt Count |
|---|---|---|---|---|---|---|---|---|---|
| Steve Hansen (Steve) | #P59931 | 11/12/15 :11 AM | Hi Dvosha,<br><br>Thank you<br>again for agreeing to participate in the 'Online Journaling Exercise' of<br>Thomson Reuters!<br><br><br>As<br>mentioned in my previous email, please find below your login information to<br>access the online research community starting today, Nov 12.<br><br>Link : http://thomsonreuters.recollective.com/thomson-reuters-forum<br>Username : dvosha_R<br>Password : ******** (will need to be changed)<br><br>The online journaling will take place over 4 days, Nov 12-13 and Nov 16-17, 2015.<br>It is being facilitated by Phase 5, an independent market research firm, on behalf | | #DR25 | Broadcast | | | 0 |

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

| Username | User ID | Date Posted | Post Text | Parent Reply ID | Reply ID | Response Type | Date Completed | Completed By | Excerpt Count |
|----------|---------|-------------|-----------|-----------------|----------|---------------|----------------|--------------|---------------|
| Steve Hansen (Steve) | #P59931 | 11/12/15 :11 AM | Hi Cheryl, | | #DR27 | Broadcast | | | 0 |

Thank you
again for agreeing to participate in the 'Online Journaling Exercise' of
Thomson Reuters!


As
mentioned in my previous email, please find below your login information to
access the online research community starting today, Nov 12.

Link : http://thomsonreuters.recollective.com/thomson-reuters-forum
Username : cheryl_c
Password : ******** (will need to be changed)

The online journaling will take place over 4 days, Nov 12-13 and Nov 16-17, 2015.
It is being facilitated by Phase 5, an independent market research firm, on behalf

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

| Username | User ID | Date Posted | Post Text | Parent Reply ID | Reply ID | Response Type | Date Completed | Completed By | Excerpt Count |
|---|---|---|---|---|---|---|---|---|---|
| Steve Hansen (Steve) | #P59931 | 11/12/15 :11 AM | Hi Tanya, | | #DR29 | Broadcast | | | 0 |

Thank you
again for agreeing to participate in the 'Online Journaling Exercise' of
Thomson Reuters!

As
mentioned in my previous email, please find below your login information to
access the online research community starting today, Nov 12.

Link : http://thomsonreuters.recollective.com/thomson-reuters-forum
Username : tanya_c
Password : ******** (will need to be changed)

The online journaling will take place over 4 days, Nov 12-13 and Nov 16-17, 2015.
It is being facilitated by Phase 5, an independent market research firm, on behalf

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

| Username | User ID | Date Posted | Post Text | Parent Reply ID | Reply ID | Response Type | Date Completed | Completed By | Excerpt Count |
|---|---|---|---|---|---|---|---|---|---|
| Steve Hansen (Steve) | #PS9931 | 11/12/15 :11 AM | Hi Ian, | | #DR31 | Broadcast | | | 0 |

Thank you
again for agreeing to participate in the 'Online Journaling Exercise' of
Thomson Reuters!


As
mentioned in my previous email, please find below your login information to
access the online research community starting today, Nov 12.

Link : http://thomsonreuters.recollective.com/thomson-reuters-forum
Username : ian_c
Password : ******** (will need to be changed)

The online journaling will take place over 4 days, Nov 12-13 and Nov 16-17, 2015.
It is being facilitated by Phase 5, an independent market research firm, on behalf

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

| Username | User ID | Date Posted | Post Text | Parent Reply ID | Reply ID | Response Type | Date Completed | Completed By | Excerpt Count |
|---|---|---|---|---|---|---|---|---|---|
| Steve Hansen (Steve) | #PS9931 | 11/12/15 :11 AM | Hi Jonathan,<br><br>Thank you again for agreeing to participate in the 'Online Journaling Exercise' of Thomson Reuters!<br><br><br>As mentioned in my previous email, please find below your login information to access the online research community starting today, Nov 12.<br><br>Link : http://thomsonreuters.recollective.com/thomson-reuters-forum<br>Username : jonathan_c<br>Password : ******** (will need to be changed)<br><br>The online journaling will take place over 4 days, Nov 12-13 and Nov 16-17, 2015.<br>It is being facilitated by Phase 5, an independent market research firm, on behalf | | #DR33 | Broadcast | | | 0 |
| Steve Hansen (Steve) | #PS9931 | 11/13/15 :11 PM | You've been invited to join our online research study: "Online Journaling"<br><br>This research study can involve interactive questions, activities and online discussions. Your answers will provide valuable insights to make better decisions. Your participation would be greatly appreciated.<br><br>Thank you!<br><br>Accept Invitation | | #DR72 | Broadcast | | | 0 |

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

| Username | User ID | Date Posted | Post Text | Parent Reply ID | Reply ID | Response Type | Date Completed | Completed By | Excerpt Count |
|---|---|---|---|---|---|---|---|---|---|
| Steve Hansen (Steve) | #PS9931 | 11/12/15 :11 AM | Hi Susan, | | #DR3S | Broadcast | | | 0 |

Thank you
again for agreeing to participate in the 'Online Journaling Exercise' of
Thomson Reuters!


As
mentioned in my previous email, please find below your login information to
access the online research community starting today, Nov 12.

Link : http://thomsonreuters.recollective.com/thomson-reuters-forum
Username : susan_c
Password : ******** (will need to be changed)

The online journaling will take place over 4 days, Nov 12-13 and Nov 16-17, 2015.
It is being facilitated by Phase 5, an independent market research firm, on behalf

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

| Username | User ID | Date Posted | Post Text | Parent Reply ID | Reply ID | Response Type | Date Completed | Completed By | Excerpt Count |
|---|---|---|---|---|---|---|---|---|---|
| Steve Hansen (Steve) | #P59931 | 11/12/15 :11 AM | Hi Rebecca,<br><br>Thank you<br>again for agreeing to participate in the 'Online Journaling Exercise' of<br>Thomson Reuters!<br><br><br>As<br>mentioned in my previous email, please find below your login information to<br>access the online research community starting today, Nov 12.<br><br>Link : http://thomsonreuters.recollective.com/thomson-reuters-forum<br>Username : rebecca_g<br>Password : ******** (will need to be changed)<br><br>The online journaling will take place over 4 days, Nov 12-13 and Nov 16-17, 2015.<br>It is being facilitated by Phase 5, an independent market research firm, on behalf | | #DR37 | Broadcast | | | 0 |
| Steve Hansen (Steve) | #P59931 | 11/17/15 :11 AM | Hi Rebecca,<br><br>Thank you for your insightful comments so far. Please note that we are seeking<br>your feedback on 2 different projects that you are currently working on. We<br>would appreciate if you could take a little time today to provide your feedback on<br>a second project (this is the last day of the online forum).<br><br>We have also posted some group discussion questions for today and would like to<br>get your input to those as well.<br><br>Thank you again for your time and valuable input!<br><br>Best Regards,<br>Steve<br><br>Enter Study | | #DR75 | Broadcast | | | 0 |

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

| Username | User ID | Date Posted | Post Text | Parent Reply ID | Reply ID | Response Type | Date Completed | Completed By | Excerpt Count |
|---|---|---|---|---|---|---|---|---|---|
| Steve Hansen (Steve) | #P59931 | 11/12/15 :11 AM | Hi Michael,<br>Thank you<br>again for agreeing to participate in the 'Online Journaling Exercise' of<br>Thomson Reuters!<br><br><br>As<br>mentioned in my previous email, please find below your login information to<br>access the online research community starting today, Nov 12.<br><br>Link : http://thomsonreuters.recollective.com/thomson-reuters-forum<br>Username : michael_c<br>Password : ******** (will need to be changed)<br><br>The online journaling will take place over 4 days, Nov 12-13 and Nov 16-17, 2015.<br>It is being facilitated by Phase 5, an independent market research firm, on behalf | | #DR39 | Broadcast | | | 0 |

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

| Username | User ID | Date Posted | Post Text | Parent Reply ID | Reply ID | Response Type | Date Completed | Completed By | Excerpt Count |
|---|---|---|---|---|---|---|---|---|---|
| Steve Hansen (Steve) | #PS9931 | 11/12/15 :11 AM | Hi Billy,<br><br>Thank you<br>again for agreeing to participate in the 'Online Journaling Exercise' of<br>Thomson Reuters!<br><br><br>As<br>mentioned in my previous email, please find below your login information to<br>access the online research community starting today, Nov 12.<br><br> Link : http://thomsonreuters.recollective.com/thomson-reuters-forum<br> Username : billy_c<br> Password : ******** (will need to be changed)<br><br>The online journaling will take place over 4 days, Nov 12-13 and Nov 16-17, 2015.<br>It is being facilitated by Phase 5, an independent market research firm, on behalf | | #DR41 | Broadcast | | | 0 |

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

| Username | User ID | Date Posted | Post Text | Parent Reply ID | Reply ID | Response Type | Date Completed | Completed By | Excerpt Count |
|----------|---------|-------------|-----------|-----------------|----------|---------------|----------------|--------------|---------------|
| Steve Hansen (Steve) | #PS9931 | 11/12/15 :11 AM | Hi Alison,<br><br>Thank you<br>again for agreeing to participate in the 'Online Journaling Exercise' of<br>Thomson Reuters!<br><br><br><br>As<br>mentioned in my previous email, please find below your login information to<br>access the online research community starting today, Nov 12.<br><br>Link : http://thomsonreuters.recollective.com/thomson-reuters-forum<br>Username : alison_l<br>Password : ******** (will need to be changed)<br><br>The online journaling will take place over 4 days, Nov 12-13 and Nov 16-17, 2015.<br>It is being facilitated by Phase 5, an independent market research firm, on behalf | | #DR43 | Broadcast | | | 0 |

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

| Username | User ID | Date Posted | Post Text | Parent Reply ID | Reply ID | Response Type | Date Completed | Completed By | Excerpt Count |
|---|---|---|---|---|---|---|---|---|---|
| Steve Hansen (Steve) | #P59931 | 11/12/15 :11 AM | Hi Sarah,<br><br>Thank you<br>again for agreeing to participate in the 'Online Journaling Exercise' of Thomson Reuters!<br><br><br>As<br>mentioned in my previous email, please find below your login information to access the online research community starting today, Nov 12.<br><br>Link : http://thomsonreuters.recollective.com/thomson-reuters-forum<br>Username : sarah_c<br>Password : ******** (will need to be changed)<br><br>The online journaling will take place over 4 days, Nov 12-13 and Nov 16-17, 2015.<br>It is being facilitated by Phase 5, an independent market research firm, on behalf. | | #DR4S | Broadcast | | | 0 |

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

| Username | User ID | Date Posted | Post Text | Parent Reply ID | Reply ID | Response Type | Date Completed | Completed By | Excerpt Count |
|---|---|---|---|---|---|---|---|---|---|
| Steve Hansen (Steve) | #P59931 | 11/12/15 :11 AM | Hi Thomas,<br><br>Thank you<br>again for agreeing to participate in the 'Online Journaling Exercise' of<br>Thomson Reuters!<br><br><br><br>As<br>mentioned in my previous email, please find below your login information to<br>access the online research community starting today, Nov 12.<br><br>Link : http://thomsonreuters.recollective.com/thomson-reuters-forum<br>Username : thomas_c<br>Password : ******** (will need to be changed)<br><br>The online journaling will take place over 4 days, Nov 12-13 and Nov 16-17, 2015.<br>It is being facilitated by Phase 5, an independent market research firm, on behalf | | #DR47 | Broadcast | | | 0 |

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

| Username | User ID | Date Posted | Post Text | Parent Reply ID | Reply ID | Response Type | Date Completed | Completed By | Excerpt Count |
|---|---|---|---|---|---|---|---|---|---|
| Steve Hansen (Steve) | #P59931 | 11/12/15 :11 AM | Hi Matthew, | | #DR49 | Broadcast | | | 0 |
| | | | Thank you | | | | | | |
| | | | again for agreeing to participate in the 'Online Journaling Exercise' of | | | | | | |
| | | | Thomson Reuters! | | | | | | |
| | | | | | | | | | |
| | | | As | | | | | | |
| | | | mentioned in my previous email, please find below your login information to | | | | | | |
| | | | access the online research community starting today, Nov 12. | | | | | | |
| | | | | | | | | | |
| | | | Link : http://thomsonreuters.recollective.com/thomson-reuters-forum | | | | | | |
| | | | Username : matthew_g | | | | | | |
| | | | Password : ******** (will need to be changed) | | | | | | |
| | | | | | | | | | |
| | | | The online journaling will take place over 4 days, Nov 12-13 and Nov 16-17, 2015. | | | | | | |
| | | | It is being facilitated by Phase 5, an independent market research firm, on behalf | | | | | | |

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

| Username | User ID | Date Posted | Post Text | Parent Reply ID | Reply ID | Response Type | Date Completed | Completed By | Excerpt Count |
|---|---|---|---|---|---|---|---|---|---|
| Steve Hansen (Steve) | #P59931 | 11/12/15 :11 AM | Hi Sheri,<br><br>Thank you<br>again for agreeing to participate in the 'Online Journaling Exercise' of Thomson Reuters!<br><br><br><br>As mentioned in my previous email, please find below your login information to access the online research community starting today, Nov 12.<br><br>Link : http://thomsonreuters.recollective.com/thomson-reuters-forum<br>Username : sheri_n<br>Password : ******** (will need to be changed)<br><br>The online journaling will take place over 4 days, Nov 12-13 and Nov 16-17, 2015.<br>It is being facilitated by Phase 5, an independent market research firm, on behalf | | #DR51 | Broadcast | | | 0 |

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

| Username | User ID | Date Posted | Post Text | Parent Reply ID | Reply ID | Response Type | Date Completed | Completed By | Excerpt Count |
|----------|---------|-------------|-----------|-----------------|----------|---------------|----------------|--------------|---------------|
| Steve Hansen (Steve) | #P59931 | 11/12/15 :11 AM | Hi Malcolm, | | #DR53 | Broadcast | | | 0 |
| | | | Thank you | | | | | | |
| | | | again for agreeing to participate in the 'Online Journaling Exercise' of | | | | | | |
| | | | Thomson Reuters! | | | | | | |
| | | | | | | | | | |
| | | | As | | | | | | |
| | | | mentioned in my previous email, please find below your login information to | | | | | | |
| | | | access the online research community starting today, Nov 12. | | | | | | |
| | | | | | | | | | |
| | | | Link : http://thomsonreuters.recollective.com/thomson-reuters-forum | | | | | | |
| | | | Username : malcolm_c | | | | | | |
| | | | Password : ******** (will need to be changed) | | | | | | |
| | | | | | | | | | |
| | | | The online journaling will take place over 4 days, Nov 12-13 and Nov 16-17, 2015. | | | | | | |
| | | | It is being facilitated by Phase 5, an independent market research firm, on behalf | | | | | | |
| Steve Hansen (Steve) | #P59931 | 11/13/15 :11 PM | You've been invited to join our online research study: "Online Journaling" | | #DR71 | Broadcast | | | 0 |
| | | | | | | | | | |
| | | | This research study can involve interactive questions, activities and online | | | | | | |
| | | | discussions. Your answers will provide valuable insights to make better decisions. | | | | | | |
| | | | Your participation would be greatly appreciated. | | | | | | |
| | | | | | | | | | |
| | | | Thank you! | | | | | | |
| | | | | | | | | | |
| | | | Accept Invitation | | | | | | |

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

| Username | User ID | Date Posted | Post Text | Parent Reply ID | Reply ID | Response Type | Date Completed | Completed By | Excerpt Count |
|---|---|---|---|---|---|---|---|---|---|
| Steve Hansen (Steve) | #P59931 | 11/12/15 :11 AM | Hi Thomas,<br><br>Thank you<br>again for agreeing to participate in the 'Online Journaling Exercise' of<br>Thomson Reuters!<br><br><br>As<br>mentioned in my previous email, please find below your login information to<br>access the online research community starting today, Nov 12.<br><br>Link : http://thomsonreuters.recollective.com/thomson-reuters-forum<br>Username : Thomas_D<br>Password : ******** (will need to be changed)<br><br>The online journaling will take place over 4 days, Nov 12-13 and Nov 16-17, 2015.<br>It is being facilitated by Phase 5, an independent market research firm, on behalf | | #DR55 | Broadcast | | | 0 |
| Steve Hansen (Steve) | #P59931 | 11/12/15 :11 AM | Hi<br>Thomas,<br><br>Thank you<br>again for agreeing to participate in the 'Online Journaling Exercise' of<br>Thomson Reuters!<br><br><br>As<br>mentioned in my previous email, please find below your login information to<br>access the online research community starting<br>today, Nov 12.<br><br><br>Link : http://thomsonreuters.recollective.com/thomson-reuters-forum | | #DR70 | Broadcast | | | 0 |

| Username | User ID | Date Posted | Post Text | Parent Reply ID | Reply ID | Response Type | Date Completed | Completed By | Excerpt Count |
|---|---|---|---|---|---|---|---|---|---|
| Steve Hansen (Steve) | #PS9931 | 11/12/15 :11 AM | Hi David,<br><br>Thank you<br>again for agreeing to participate in the 'Online Journaling Exercise' of<br>Thomson Reuters!<br><br><br>As<br>mentioned in my previous email, please find below your login information to<br>access the online research community starting today, Nov 12.<br><br>Link : http://thomsonreuters.recollective.com/thomson-reuters-forum<br>Username : David_L<br>Password : ******** (will need to be changed)<br><br>The online journaling will take place over 4 days, Nov 12-13 and Nov 16-17, 2015.<br>It is being facilitated by Phase 5, an independent market research firm, on behalf | | #DR57 | Broadcast | | | 0 |

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

| Username | User ID | Date Posted | Post Text | Parent Reply ID | Reply ID | Response Type | Date Completed | Completed By | Excerpt Count |
|---|---|---|---|---|---|---|---|---|---|
| Steve Hansen (Steve) | #P59931 | 11/12/15 :11 AM | Hi Daniel,<br><br>Thank you<br>again for agreeing to participate in the 'Online Journaling Exercise' of<br>Thomson Reuters!<br><br><br>As<br>mentioned in my previous email, please find below your login information to<br>access the online research community starting today, Nov 12.<br><br>Link : http://thomsonreuters.recollective.com/thomson-reuters-forum<br>Username : Daniel_B<br>Password : ******** (will need to be changed)<br><br>The online journaling will take place over 4 days, Nov 12-13 and Nov 16-17, 2015.<br>It is being facilitated by Phase 5, an independent market research firm, on behalf | | #DR59 | Broadcast | | | 0 |

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

| Username | User ID | Date Posted | Post Text | Parent Reply ID | Reply ID | Response Type | Date Completed | Completed By | Excerpt Count |
|---|---|---|---|---|---|---|---|---|---|
| Steve Hansen (Steve) | #P59931 | 11/12/15 :11 AM | Hi Marnie,<br><br>Thank you<br>again for agreeing to participate in the 'Online Journaling Exercise' of<br>Thomson Reuters!<br><br><br><br>As<br>mentioned in my previous email, please find below your login information to<br>access the online research community starting today, Nov 12.<br><br>Link : http://thomsonreuters.recollective.com/thomson-reuters-forum<br>Username : Marnie_H<br>Password : ******** (will need to be changed)<br><br>The online journaling will take place over 4 days, Nov 12-13 and Nov 16-17, 2015.<br>It is being facilitated by Phase 5, an independent market research firm, on behalf | | #DR61 | Broadcast | | | 0 |

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

| Username | User ID | Date Posted | Post Text | Parent Reply ID | Reply ID | Response Type | Date Completed | Completed By | Excerpt Count |
|---|---|---|---|---|---|---|---|---|---|
| Steve Hansen (Steve) | #P59931 | 11/12/15 :11 AM | Hi Booker,<br><br>Thank you<br>again for agreeing to participate in the 'Online Journaling Exercise' of<br>Thomson Reuters!<br><br><br>As<br>mentioned in my previous email, please find below your login information to<br>access the online research community starting today, Nov 12.<br><br>Link : http://thomsonreuters.recollective.com/thomson-reuters-forum<br>Username : Booker_C<br>Password : ******** (will need to be changed)<br><br>The online journaling will take place over 4 days, Nov 12-13 and Nov 16-17, 2015.<br>It is being facilitated by Phase 5, an independent market research firm, on behalf | | #DR63 | Broadcast | | | 0 |

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

| Username | User ID | Date Posted | Post Text | Parent Reply ID | Reply ID | Response Type | Date Completed | Completed By | Excerpt Count |
|---|---|---|---|---|---|---|---|---|---|
| Steve Hansen (Steve) | #P59931 | 11/12/15 :11 AM | Hi Matthew,<br><br>Thank you<br>again for agreeing to participate in the 'Online Journaling Exercise' of Thomson Reuters!<br><br><br>As<br>mentioned in my previous email, please find below your login information to access the online research community starting today, Nov 12.<br><br>Link : http://thomsonreuters.recollective.com/thomson-reuters-forum<br>Username : Matthew_I<br>Password : ******** (will need to be changed)<br><br>The online journaling will take place over 4 days, Nov 12-13 and Nov 16-17, 2015.<br>It is being facilitated by Phase 5, an independent market research firm, on behalf | | #DR6S | Broadcast | | | 0 |

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

| Username | User ID | Date Posted | Post Text | Parent Reply ID | Reply ID | Response Type | Date Completed | Completed By | Excerpt Count |
|---|---|---|---|---|---|---|---|---|---|
| Steve Hansen (Steve) | #PS9931 | 11/12/15 :11 AM | Hi Meghan,<br><br>Thank you again for agreeing to participate in the 'Online Journaling Exercise' of Thomson Reuters!<br><br><br><br>As mentioned in my previous email, please find below your login information to access the online research community starting today, Nov 12.<br><br>Link : http://thomsonreuters.recollective.com/thomson-reuters-forum<br>Username : Meghan_W<br>Password : ******** (will need to be changed)<br><br>The online journaling will take place over 4 days, Nov 12-13 and Nov 16-17, 2015.<br>It is being facilitated by Phase 5, an independent market research firm, on behalf | | #DR67 | Broadcast | | | 0 |

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

| Username | User ID | Date Posted | Post Text | Parent Reply ID | Reply ID | Response Type | Date Completed | Completed By | Excerpt Count |
|---|---|---|---|---|---|---|---|---|---|
| Steve Hansen (Steve) | #P59931 | 11/12/15 :11 AM | Hi Breanne, | | #DR69 | Broadcast | | | 0 |

Thank you
again for agreeing to participate in the 'Online Journaling Exercise' of
Thomson Reuters!


As
mentioned in my previous email, please find below your login information to
access the online research community starting today, Nov 12.

Link : http://thomsonreuters.recollective.com/thomson-reuters-forum
Username : Breanne_V
Password : ******** (will need to be changed)

The online journaling will take place over 4 days, Nov 12-13 and Nov 16-17, 2015.
It is being facilitated by Phase 5, an independent market research firm, on behalf

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

# Exhibit 7
## Associated Document
## (4 of 4)

# Thomson Reuters - Nov 2015

http://thomsonreuters.recollective.com

|  |  |
|---|---|
| **Study:** | Online Journaling |
| **Study URL:** | http://thomsonreuters.recollective.com/thomson-reuters-forum |
| | |
| **Report:** | Discussions Transcript |
| **Report Date:** | 11/19/15 3:38 PM |
| **Report Range:** | All Time |
| | |
| **Topics:** | All Topics (2) |
| **Participants:** | All Participants (24) |
| | |
| **Inclusions:** | Ratings |
| | Excerpts |
| | Backroom Comments |
| | |
| **Topics:** | Question 1. Valuable Features of WestlawNext |
| | Question 2. Issues experienced with WestlawNext |
| | Question 3. Competitive Comparison of WestlawNext |
| | Question 4. Additional Suggestions |

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

| User ID | External ID | First Name | Last Name | Email | Picture | Username | Registered | Last Login | Last Study | Country | TZ | DST | State |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 59931 | | Steve | Hansen | SteveH@phase-5.com | | Steve | 11/10/15 01:42 PM | 11/19/15 03:38 PM | 11/10/15 01:42 PM | | 0 | 0 | Normal |
| 60189 | | Bryan | Luce | bluce@daleymohan.com | | bryan_c | 11/11/15 02:54 PM | 11/17/15 10:47 AM | 11/11/15 02:54 PM | US | -6 | 1 | Normal |
| 60193 | | Jason | Kim | jkim@schneiderwallace.com | | jason_c | 11/11/15 02:54 PM | 11/18/15 02:27 AM | 11/11/15 02:54 PM | US | -5 | 1 | Normal |
| 60199 | | Cynthia | Lasher | Clasher@NCS-Law.com | | cynthia_c | 11/11/15 02:54 PM | 11/17/15 03:17 PM | 11/11/15 02:54 PM | US | -5 | 1 | Normal |
| | | | | | Image Link | | | | | | | | |
| 60203 | | Dvosha | Roscoe | Dvosha.Roscoe@carriageservices.com | | dvosha_R | 11/11/15 02:54 PM | 11/18/15 03:48 PM | 11/11/15 02:54 PM | | -6 | 1 | Normal |
| 60223 | | Sarah | Ashby | saraha@psychemedics.com | | sarah_c | 11/11/15 02:55 PM | 11/17/15 02:48 PM | 11/11/15 02:55 PM | US | -5 | 1 | Normal |
| 60225 | | Thomas | Cregger | TAC@creggerlaw.com | | thomas_c | 11/11/15 02:55 PM | 11/18/15 07:55 PM | 11/11/15 02:55 PM | US | -8 | 1 | Normal |
| 60231 | | Malcolm | Wilson | malcolmwilson@oxfordlife.com | | malcolm_c | 11/11/15 02:55 PM | 11/19/15 11:09 AM | 11/11/15 02:55 PM | US | -7 | 0 | Normal |
| 60357 | | Thomas | Doggett | Doggett@mschicagolaw.com | | Thomas_D | 11/12/15 09:05 AM | 11/17/15 03:19 PM | 11/12/15 09:05 AM | US | -5 | 1 | Normal |

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

| Reply ID | Owner | Excerpted By | Excerpt | Codes | Excerpt Date | Post Date | Comment Count |
|----------|-------|--------------|---------|-------|--------------|-----------|---------------|

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

| Username | User ID | Date Posted | Post Text | Parent Reply ID | Reply ID | Response Type | Date Completed | Completed By | Review Status | Likes | Dislikes | Excerpt Count |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cynthia Lasher (cynthia_c) | #P60199 | 11/17/15 08:37 AM | The interface is user friendly and intuitive.  Being able to since the connections between cases in a single click is very helpful.  I also use people map regularly and like it quite a lot. | | #DR74 | Open | | | 1 | 0 | 0 | 0 |
| Steve Hansen (Steve) | #P59931 | 11/17/15 01:59 PM | Hi Cynthia. Can you elaborate a bit on what specifically you like about 'people map'. | #DR74 | #DR87 | Open | | | 1 | 0 | 0 | 0 |
| Cynthia Lasher (cynthia_c) | #P60199 | 11/17/15 02:53 PM | I use it mostly for locating people--addresses and phone numbers.  Most of the time I either find the person at one of the numbers of find someone who knows how to get in touch with that person.  The search parameters are easy to use and can be as inclusive or exclusive as you choose.  It is very rare that I don't find information for the person at issue. | #DR74 | #DR92 | Open | | | 0 | 0 | 0 | 0 |
| Thomas Doggett (Thomas_D) | #P60357 | 11/17/15 12:27 PM | I have seen people map demonstrated and it is a very good program. Once you find a relevant case it is easy to link to other cases on that subject. | | #DR79 | Open | | | 1 | 0 | 0 | 0 |
| Jason Kim (jason_c) | #P60193 | 11/17/15 12:40 PM | The natural language search function is pretty good and saves the time of formulating search queries. I used to use exclusively Boolean searches but lately I tend to use natural language searches and have had good results. I need to go to a Boolean search about one-third of the time if I am not getting good results from the Boolean search. | | #DR81 | Open | | | 1 | 0 | 0 | 0 |
| Sarah Ashby (sarah_c) | #P60223 | 11/17/15 01:23 PM | The most valuable function is access to Practical Law because it synthesizes the information and also provides templates.  I also like the highlighting function because I can basically annotate the research before I email it to myself--much easier and more efficient than printing and handwriting notes on the key language. | | #DR85 | Open | | | 1 | 0 | 0 | 0 |
| Dvosha Roscoe (dvosha_R) | #P60203 | 11/17/15 03:49 PM | I prefer the Boolean searches as they seem to get to the issues in a more streamlined fashion.  Natural Language searches seem to result in too many results that are not related to the issues.  My favorite feature is that I can search the statutes and the regulations at the same time.  I also like the fact that Practical Law is now available for assistance with Corporate Governance issues. | | #DR96 | Open | | | 0 | 0 | 0 | 0 |

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

| Username | User ID | Date Posted | Post Text | Parent Reply ID | Reply ID | Response Type | Date Completed | Completed By | Review Status | Likes | Dislikes | Excerpt Count |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Bryan Luce (bryan_c) | #P60189 | 11/17/15 11:08 AM I occasionally encounter filtering issues which I attribute completely to my own ineptitude using search terms, including Boolean. About the only thing I could recommend is keep giving occasional reminders to your users how happy you are to give more training. | | #DR76 | Open | | | 1 | 0 | 0 | 0 |
| Thomas Doggett (Thomas_D) | #P60357 | 11/17/15 12:37 PM It comes up way too often that I'll click a case to find out it's outside of my subscription, then I have to click another button to go back. 99% of the time, I know logging in that I will never go outside the subscription, a small error message in response to me clicking such a case would be much faster and less intrusive than bringing me to a new screen, requiring i click no, and returning me where I was. | | #DR80 | Open | | | 1 | 0 | 0 | 0 |
| Sarah Ashby (sarah_c) | #P60223 | 11/17/15 02:54 PM I don't believe docket alerts capture all state cases. My alerts are set up to inform me of cases filed involving specific party names, and on a couple of occasions I've become aware of complaints being filed that I was not notified about via my alerts. | | #DR93 | Open | | | 1 | 0 | 0 | 0 |
| Dvosha Roscoe (dvosha_R) | #P60203 | 11/17/15 03:52 PM I believe that it would be better for the lastest version of a statute or regulation to be included in the results with a note that their inclusion was not yet approved, rather than to get old statutory or regulatory law that has a flag by it with the actual newly passed or adopted law. | | #DR97 | Open | | | 0 | 0 | 0 | 0 |

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

| Username | User ID | Date Posted | Post Text | Parent Reply ID | Reply ID | Response Type | Date Completed | Completed By | Review Status | Likes | Dislikes | Excerpt Count |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cynthia Lasher (cynthia_c) | #P60199 | 11/17/15 08:36 AM | I did extensive research, discussion, and negotiation with Westlaw and LexisNexis a couple of years ago.  Westlaw simply has a better interface and better accuracy.  Although Lexis was cheaper, I was pretty horrified by how far out of date Lexis tends to be, so it was worth the extra money. | | #DR73 | Open | | | 1 | 0 | 0 | 0 |
| Steve Hansen (Steve) | #P59931 | 11/17/15 02:11 PM | You mention that Westlaw has a better interface compared to LexisNexis - can you elaborate on why you feel this way? | | #DR88 | Open | | | 1 | 0 | 0 | 0 |
| Cynthia Lasher (cynthia_c) | #P60199 | 11/17/15 02:52 PM | It might be a function of familiarity, but the search box and browse tabs all being right up front and my favorites being immediately to the side of them makes the bulk of my research very quick and easy from the opening page.  It also just looks more modern than does LexisNexis. | #DR73 | #DR91 | Open | | | 1 | 0 | 0 | 0 |
| Jason Kim (jason_c) | #P60193 | 11/17/15 12:43 PM | I have not used a competing research service for several years so it is difficult to compare. Generally my recollection was that Lexis was not as user-friendly but had a wider range of sources. | | #DR83 | Open | | | 1 | 0 | 0 | 0 |
| Sarah Ashby (sarah_c) | #P60223 | 11/17/15 01:28 PM | The last time I used a competing site was many years ago--LexisNexis.  I recall it was not as user-friendly, and ever since, when I've had the choice between LexisNexis and Westlaw, I chose Westlaw. | | #DR86 | Open | | | 1 | 0 | 0 | 0 |
| Steve Hansen (Steve) | #P59931 | 11/17/15 02:13 PM | Hi Sarah. Why do feel that LexisNexis is not that user-friendly? Can you give me an example. | #DR86 | #DR89 | Open | | | 1 | 0 | 0 | 0 |
| Sarah Ashby (sarah_c) | #P60223 | 11/17/15 02:49 PM | I recall the search functions were less intuitive--it required more trial-and-error to find what you were looking for. | #DR86 | #DR90 | Open | | | 1 | 0 | 0 | 0 |
| Dyosha Roscoe (dyosha_R) | #P60203 | 11/17/15 03:55 PM | Looked at LexisNexis and Bloomberg felt that I did not have the confidence that I could get the streamlined result with the lastest versions of statutes and regulations.  Also could not get what I wanted without paying for more than I needed. | | #DR98 | Open | | | 0 | 0 | 0 | 0 |

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

| Username | User ID | Date Posted | Post Text | Parent Reply ID | Reply ID | Response Type | Date Completed | Completed By | Review Status | Likes | Dislikes | Excerpt Count |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Bryan Luce (bryan_c) | #P6189 | 11/17/15 11:08 AM | See answer to No. 2. | | #DR77 | Open | | 1 | | 0 | 0 | 0 |
| Malcolm Wilson (malcolm_c) | #P60231 | 11/17/15 12:24 PM | I am always miffed that I can only search up to three states at one time and if I want to search for more than three then I have to conduct a fifty state search. The end user should be allowed to search for whatever number of states they need at one time, with no arbitrary restrictions. | | #DR78 | Open | | 1 | | 0 | 0 | 0 |
| Thomas Doggett (Thomas_D) | #P60357 | 11/17/15 12:42 PM | See answer to number 2.

Also, I can generally get hornbook articles free on Google with very little effort, or find such things in the usual books attorneys always own e.g. Cleary&Graham.  I guess I don't see much value in Westlaw not offering these things as part of their base service since the nearest competitors are free. | | #DR82 | Open | | 1 | | 0 | 0 | 0 |
| Jason Kim (jason_c) | #P60193 | 11/17/15 12:47 PM | Often When I find a case that is particularly useful. A "more cases like this" feature like Lexis used to have would be very valuable. The database should be able, without much difficulty, to compare the key words from a case or other source I have identified and point me to other materials that contain the same key words.
As I mentioned in connection with one of my specific research projects, WestlawNext does not appear to go a great job of identifying the best secondary sources that relate to my search queries. There should be some way to rank secondary sources in terms of how often they are accessed and prioritize results from the most-used secondary sources as opposed to ranking results purely on the basis of relevance based on search terms (I assume this is how it works but I could be wrong). | | #DR84 | Open | | 1 | | 0 | 0 | 0 |
| Sarah Ashby (sarah_c) | #P60223 | 11/17/15 02:56 PM | I'm generally happy with Westlaw.  My suggestion relates to my response to Question No. 2. | | #DR94 | Open | | 1 | | 0 | 0 | 0 |
| Dvosha Roscoe (dvosha_R) | #P60203 | 11/17/15 03:45 PM | I am generally happy with Weslaw also although I do expect to have the very latest law.  I found that in one instance the lastest law was the attachment and not the statute that came up during the research and this caused some issues. Also I would like an easier way to get to the very specific grouping of federal statutes and regulations, listing company manuals and SEC guidance relating to public company corporate goverance. | | #DR95 | Open | | 0 | | 0 | 0 | 0 |
| Thomas Cregger (thomas_c) | #P60225 | 11/17/15 06:59 PM | When checking on citations to a statute or reg, it would be nice to be able to search a specific sub division. | | #DR99 | Open | | 0 | | 0 | 0 | 0 |
| Dvosha Roscoe (dvosha_R) | #P60203 | 11/18/15 03:51 PM | Yes, this seems like something that would be helpful to me also | #DR99 | #DR100 | Open | | 0 | | 0 | 0 | 0 |

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

# Exhibit 8

| Case Number | Date | Department | Agent | Contact Name | Account Name | Account Number | Market Segment | Jurisdiction | Topical Area | Type of Feedback | Category | Sub-Category | Sub-Type | Subject | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4179230 | 9/2/2019 | Technical Support | Martha Dyer | Matthew Hobbs | University of Southern California | | UKI - Overseas Academic | | | General Feedback | Westlaw | Westlaw Edge User Interface | | Edge | "I am a big fan of Westlaw." |
| 4181979 | 9/3/2019 | Reference Attorne | Adam Engelhart | Nicola Pasquarelli | Social Security Admin | | | | | Complaint | Westlaw | Custom Pages/Favorites | | Edge | Request for an advanced search template link in the Favorites b |
| 4182325 | 9/3/2019 | Reference Attorne | Bridget Garske | Emily F Melson | Jones Day | | | | | Enhancement Request | Westlaw | Litigation Analytics | Additional Content | Edge | The customer wanted; as part of litigation analytics; for a statis |
| 4182870 | 9/3/2019 | Reference Attorne | Adam Engelhart | Alice Loan | Jones Day | | | | | Enhancement Request | Westlaw | Litigation Analytics | | Edge | Ability to filter motions by whether the judge adopted the repo |
| 4184995 | 9/3/2019 | Reference Attorne | Joel McFarlane | Carol O'Connor | Quinn Emanuel Urquhart & Sullivan L | | UKI - Global Law Firm | | | Enhancement Request | Westlaw | Litigation Analytics | | Edge | There should be a way to enter a statute and see the percentag |
| 4183661 | 9/3/2019 | Reference Attorne | Chris Buhr | Kaitlin Salisbury | Loyola University of Chicago | | UKI - Overseas Academic | | | Complaint | Westlaw | Litigation Analytics | | Edge | Kaitlin was quite angry that Litigation Analytics doesn't show an |
| 4191081 | 9/4/2019 | Reference Attorne | Claire Rauls | Laura Gasparrelli | Drummond Consulting | | | | | Enhancement Request | Westlaw | Litigation Analytics | Additional Content | Edge | Add Administrative Law Judges to Litigation Analytics |
| 4191194 | 9/4/2019 | Reference Attorne | David Rollwagen | Lindsey Beckelmar | Kaplan & Co LLP | | | | | Enhancement Request | Westlaw | Litigation Analytics | | Edge | Provide percentage calculation for each type of case including W |
| 4189797 | 9/4/2019 | Reference Attorne | Richard Sienkewicz | Teresa Ingram | Reed Smith LLP | | UKI - Law Firm | California | | Enhancement Request | Westlaw | Litigation Analytics | Additional Content | Edge | Add Motion analytics to CA Court of Appeals analytics looking a |
| 4188197 | 9/4/2019 | Reference Attorne | Claire Rauls | Rebecca Domm | Bass Berry & Sims PLC | | UKI - Solicitor | International | | Enhancement Request | Westlaw | Litigation Analytics | Additional Content | Edge | Add a way to locate the top criminal law firms in the Dominican |
| 4192301 | 9/5/2019 | Reference Attorne | Leina Holte | Stuart Starry | Starry & Assoc PC | | | | | Complaint | Westlaw | Westlaw User Interface | | Edge | "Need to be clairvoyant to find the home screen and is not intu |
| 4193552 | 9/5/2019 | Reference Attorne | Jonathan Kreuze | Lei Zhang | Univ of Texas School of Law | | | | | Enhancement Request | Westlaw | Westlaw Edge User Interface | | Edge | Allow user to "turn off" WestSearch feature that "includes con |
| 4195862 | 9/5/2019 | Reference Attorne | Jonathan Kreuze | Donna Kretz | Pillsbury Winthrop Shaw Pittman LLP | | UKI - Law Firm | California | | Enhancement Request | Westlaw | Litigation Analytics | Additional Content | Edge | Add Motions and Outcomes analytics to Litigation Analytics for |
| 4195203 | 9/5/2019 | Reference Attorne | Kyle Kurbondski | Andrea Caswell | Ahmad & Zavitsanos PC | | | | | Enhancement Request | Westlaw | Litigation Analytics | | Edge | Would like us to have outcomes and other analysis to the Circu |
| 4201832 | 9/6/2019 | Reference Attorne | Melissa Dalum | Kristina Tierney | Tr Internal - Govt Legal Edge | | | | | Enhancement Request | Westlaw | Westlaw Edge User Interface | | Improve WL / Edge | "Ability to hyperlink to a specific paragraph number within a ca |
| 4201683 | 9/6/2019 | Reference Attorne | Melissa Dalum | Michele E Flurer | Los Angeles County Clerk | | | | | Enhancement Request | Westlaw | Westlaw Edge User Interface | Document/Results Display | Improve WL / Edge | "Stop using GREY as a font color. Add color and make boxes an |
| 4201684 | 9/6/2019 | Reference Attorne | Melissa Dalum | Michele E Flurer | Los Angeles County Clerk | | | | | Complaint | Westlaw | Westlaw Edge User Interface | | Improve WL / Edge | "Try using it --- give me back WestlawNext!" |
| 4201883 | 9/6/2019 | Reference Attorne | Melissa Dalum | Andrea Rubin | Coblentz Patch Duffy Bass LLP | | | | Litigation | Enhancement Request | Westlaw | Dockets | | Improve WL / Edge | "The dockets should automatically update when you click on th |
| 4201404 | 9/6/2019 | Reference Attorne | Melissa Dalum | Suzanne Wilkes | Cost Center 100110594 | | | | | Enhancement Request | Westlaw | Searching/WestSearch | Document/Results Display | Improve WL / Edge | "When you run a search; can you remove the Public Records lin |
| 4201855 | 9/6/2019 | Reference Attorne | Melissa Dalum | Caleb Logan | Duke Univ School of Law | | | | | Complaint | Westlaw | WestSearch Plus | | Improve WL / Edge | "Every single time I search for something; part of what I type g |
| 4201880 | 9/6/2019 | Reference Attorne | Melissa Dalum | Andrea Rubin | Coblentz Patch Duffy Bass LLP | | | | | Enhancement Request | Westlaw | Westlaw Edge User Interface | | Improve WL / Edge | "The Favorites need to be moved to the top of Westlaw Edge. T |
| 4201814 | 9/6/2019 | Reference Attorne | Melissa Dalum | David M Madden | Sugar Felsenthal Grais & Hammer LLI | | UKI - Law Firm | | | Enhancement Request | Westlaw | User-Added Annotations | | Improve WL / Edge | "I would like to be able to add notes to a case as I am saving it t |
| 4201690 | 9/6/2019 | Reference Attorne | Melissa Dalum | Michele E Flurer | Los Angeles County Clerk | | | | | Complaint | Westlaw | Westlaw Edge User Interface | Document/Results Display | Improve WL / Edge | "'Most detail' only includes 3 lines of actual case text -- because |
| 4201531 | 9/6/2019 | Reference Attorne | Melissa Dalum | Jonathan Kolodziej | Bradley Arant Boult Cummings LLP | | ELITE - Legal | | | Enhancement Request | Westlaw | Statutes | | Improve WL / Edge / Jurisdicti | "It would be helpful if; when accessing Jurisdictional Surveys fr |
| 4201440 | 9/6/2019 | Reference Attorne | Melissa Dalum | Emily Ruzic | Bradley Arant Boult Cummings LLP | | ELITE - Legal | Alabama | | Enhancement Request | Westlaw | WestSearch Plus | | Improve WL / Edge | "Recommends that with WL answers; that WL only present AL S |
| 4201693 | 9/6/2019 | Reference Attorne | Melissa Dalum | Michele E Flurer | Los Angeles County Clerk | | | | | Complaint | Westlaw | Westlaw Edge User Interface | Filters | Improve WL / Edge | "Bring back navigation and don't move the box when I am appl |
| 4201878 | 9/6/2019 | Reference Attorne | Melissa Dalum | Andrea Rubin | Coblentz Patch Duffy Bass LLP | | | | | Complaint | Westlaw | Company Information | | Public Records / Improve WL / | "There is a formatting error in the Company Investigator Search |
| 4201451 | 9/6/2019 | Reference Attorne | Melissa Dalum | Emily Ruzic | Bradley Arant Boult Cummings LLP | | ELITE - Legal | | | Enhancement Request | Westlaw | Litigation Analytics | Delivery Options | Improve WL / Edge | Ability in Litigation Analytics to download results in an Excel ch |
| 4202563 | 9/8/2019 | Reference Attorne | David Rollwagen | Laura Baldwin | Skadden | | CORP-TAX | | | Enhancement Request | Westlaw | Litigation Analytics | Additional Content | Edge | Provide data of bench trial results for state judges. |
| 4206102 | 9/9/2019 | Reference Attorne | Corey Greuel | Shelby Shanks | Porter Hedges LLP | | UKI - Law Firm | | | Enhancement Request | Westlaw | Searching/WestSearch | | Improve WL / Edge | "Westlaw Edge should recognize Cong. Rec. cites.157 Cong. Re |
| 4205793 | 9/9/2019 | Reference Attorne | Corey Greuel | Nicholaus A Podsia | Maricopa County Public Defenders | | | | | Complaint | Westlaw | WestSearch Plus | | Improve WL / Edge | "When I type in the search box; the typed input lags and doesn |
| 4206533 | 9/9/2019 | Reference Attorne | Corey Greuel | Josh Mitchell | King & Spalding LLP | | | | | Complaint | Westlaw | Westlaw Edge User Interface | Document/Results Display | Improve WL / Edge | "Don't put 'documents related to your search' between the bo |
| 4205987 | 9/9/2019 | Reference Attorne | Corey Greuel | Kent C Olson | Univ of Virginia School of Law | | UKI - Law School | | | Complaint | Westlaw | Westlaw Edge User Interface | Document/Results Display | Improve WL / Edge | "Could you please get rid or fix 'Documents related to your sea |
| 4206135 | 9/9/2019 | Reference Attorne | Corey Greuel | Shelby Shanks | Porter Hedges LLP | | UKI - Law Firm | | | Enhancement Request | Westlaw | WestSearch Plus | | Improve WL / Edge | "The AI should recognize the popular names of statutes -- for e |
| 4207973 | 9/9/2019 | Reference Attorne | Corey Greuel | Aaron Marcus | Widener Univ Wilmington | | | | | Enhancement Request | Westlaw | Westlaw Edge User Interface | Document/Results Display | Improve WL / Edge | "Make the headings and caption bars; etc. smaller so more of t |
| 4205766 | 9/9/2019 | Reference Attorne | Corey Greuel | Nicholaus A Podsia | Maricopa County Public Defenders | | | | | Enhancement Request | Westlaw | Westlaw Edge User Interface | Document/Results Display | Improve WL / Edge | "It should be possible to increase the size of text without going |
| 4206815 | 9/9/2019 | Reference Attorne | Corey Greuel | Keith Rock | Tr Internal - Slf | | | Indiana | | Enhancement Request | Westlaw | Analytical | Additional Content | Improve WL / Edge | "Please add Indiana Practice Sheets to WL Edge" |
| 4208018 | 9/9/2019 | Reference Attorne | Corey Greuel | Pam Munter | Tr Internal - Slf | | | | | Enhancement Request | Westlaw | History | | Improve WL / Edge / Quick Ch | "The History trail showed a Quick Check report as 'check your w |
| 4209852 | 9/9/2019 | Reference Attorne | Maggie Keefe | Beth Laurence | Nolo | | | | | Enhancement Request | Westlaw | Statutes | Filters | Edge / Jurisdictional Surveys | Option to exclude a word or phrase using BUT NOT when initia |
| 4207921 | 9/9/2019 | Reference Attorne | Corey Greuel | Suzanne Wilkes | Cost Center 100110594 | | | | | Enhancement Request | Westlaw | Westlaw Edge User Interface | | Improve WL / Edge / Quick Ch | Ability to change the jurisdiction in a report. For example; you m |
| 4207921 | 9/9/2019 | Reference Attorne | Corey Greuel | Suzanne Wilkes | Cost Center 100110594 | | | | | Enhancement Request | Westlaw | Westlaw Edge User Interface | | Improve WL / Edge / Quick Ch | Ability to limit recommendations from a report to specific cont |
| 4207921 | 9/9/2019 | Reference Attorne | Corey Greuel | Suzanne Wilkes | Cost Center 100110594 | | | | | Enhancement Request | Westlaw | Westlaw Edge User Interface | | Improve WL / Edge / Quick Ch | Provide a Quick Check link in a brief or motion from a Westlaw |
| 4214208 | 9/10/2019 | Reference Attorne | Joel Haerter | Mini Leano | Marron & Associates | | ELITE - Legal | | | Enhancement Request | Westlaw | Litigation Analytics | Additional Content | Edge | "How about a narrative that provide insights to the judge's 'hu |
| 4212690 | 9/10/2019 | Reference Attorne | Janet Marvin | Timothy Boulette | Nys Society of Cpas | | | | | Complaint | Westlaw | Westlaw Edge User Interface | | Edge | "I don't know how to even look for the answer to my question. |
| 4213657 | 9/10/2019 | Technical Support | Matt Zempel | Travis Story | Story Law Firm PLLC | | | | | Enhancement Request | Westlaw | Westlaw Edge User Interface | | Edge | The password administrator should have a link within Westlaw |
| 4215721 | 9/11/2019 | Reference Attorne | Justin Johnson | Judi Maier | Univ Washington Ed Outreach | | | | | Complaint | Westlaw | Westlaw Edge User Interface | | Edge | Teacher of legal research states the new training videos confus |
| 4219335 | 9/11/2019 | Reference Attorne | Tom McGregor | Tunisia Johnson | Mayer Brown LLP | 1234556 | | | | Enhancement Request | Westlaw | Litigation Analytics | Additional Content | Edge | Provide statistics about interlocutory appeals in Litigation Anal |
| 4219685 | 9/11/2019 | Technical Support | Ferdinand Ronquil | Ferdz Soriano | West Cost Center 45000 | | | | | Complaint | Westlaw | Folders | | Edge | Ability to resolve the issue regarding missing delete button by r |
| 4218456 | 9/11/2019 | Reference Attorne | Anthony Hoang | John Villamil | Bank of Nova Scotia | | | | | Enhancement Request | Westlaw | Versions Compare | | Edge | Ability to compare statutes from different jurisdictions; e.g. NY |
| 4220184 | 9/11/2019 | Reference Attorne | Valeska Koch | Carrie E Port | Skadden | | | Illinois | | Enhancement Request | Westlaw | Versions Compare | Additional Content | Edge | Versions Compare for Illinois regulations |
| 4220434 | 9/11/2019 | Technical Support | Stephanie Johnson | Christopher Potter | Social Security Admin | | | | | Complaint | Westlaw | Westlaw Edge User Interface | | Edge | "I want to get this fixed; as I don't want to use Lexis; I like West |
| 4229267 | 9/13/2019 | Reference Attorne | Rachel Beithon | Eric Hatchett | Honigman Miller Schwartz & Cohn LLP | | | | | Enhancement Request | Westlaw | Westlaw Edge User Interface | Document/Results Display | Edge | Option in Preferences to include all content results of a global s |
| 4230875 | 9/13/2019 | Reference Attorne | Neven Selimovic | Jordan Schuetzle | Jordan Schuetzle | | | | | Enhancement Request | Westlaw | Litigation Analytics | Scope | Edge | Clarify in the Dockets Analytics scope screen that explain what K |
| 4231486 | 9/14/2019 | Reference Attorne | Shannon Doty | Margaret Baer | Cooley LLP | | CORP-TAX | | | Enhancement Request | Westlaw | Litigation Analytics | Additional Content | Edge | Provide circuit court/appellate level motion analysis in Litigatio |
| 4235460 | 9/16/2019 | Reference Attorne | Michael Paulos | Jaime Rodriguez | Akin Gump Strauss Hauer & Feld LLP | | UKI - Global Law Firm | | Criminal | Enhancement Request | Westlaw | Litigation Analytics | Additional Content | Edge | Sentencing analytics to Litigation Analytics |
| 4238814 | 9/16/2019 | Reference Attorne | Adam Engelhart | Sarah K Oskay | Barnes & Thornburg LLP | | | Federal | Criminal | Enhancement Request | Westlaw | Analytical | Additional Content | Edge | Ability to analyze sentences passed by federal judges and what |
| 4238765 | 9/16/2019 | Reference Attorne | Corey Greuel | Margaret Butler | Georgia State Univ | | | | | Enhancement Request | Westlaw | Westlaw Edge User Interface | | Improve WL / Edge | "I miss the yellow key symbol at the front of Key Numbers link o |
| 4241177 | 9/17/2019 | Reference Attorne | Corey Greuel | Denice Fogle | Tr Internal - Govt Legal Edge | | | | | Enhancement Request | Westlaw | Westlaw User Interface | | Improve WL / Edge | "I heard Lexis has a feature that people using Edge miss; and th |
| 4243498 | 9/17/2019 | Reference Attorne | Melissa Dalum | Unknown Forgot | Cost Center 100110747 | | | | | Enhancement Request | Westlaw | Westlaw Edge User Interface | Document/Results Display | Edge | Make 'Return to Result List' link more obvious; long-time user w |
| 4242267 | 9/17/2019 | Reference Attorne | Chris Buhr | Edward Orourke | Baker Botts LLP | | | | | Enhancement Request | Westlaw | Litigation Analytics | | Edge | "I wish Westlaw Analytics had company information; such as co |
| 4243686 | 9/17/2019 | Reference Attorne | Jody Abraham | Jody Abraham | Cost Center 26778 | | | | | Enhancement Request | Westlaw | Litigation Analytics | | Edge | Motion for New Trial and Motion for Remititur analytics. |
| 4244967 | 9/18/2019 | Reference Attorne | Sara Haselbauer | Barney Butler | Al Sup Ct & State Law Lib | | | | | Enhancement Request | Westlaw | Westlaw Edge User Interface | | Edge | Request for a complete list of fields and restrictors "like there w |
| 4247069 | 9/18/2019 | Reference Attorne | Jonathan Kreuze | Robin Polk | Tr Internal - Mid Sales | | | Utah | | Enhancement Request | Westlaw | Litigation Analytics | | Edge | Improve coverage of motions and outcomes functionality for st |
| 4247100 | 9/18/2019 | Reference Attorne | Claire Rauls | Ellen Ryan | Skadden | | | | | Enhancement Request | Westlaw | Versions Compare | | Edge | When a statute is repealed and renamed/renumbered; please h |
| 4248363 | 9/18/2019 | Reference Attorne | Dan Nagan | Collin N Mccarthy | Univ of Oklahoma | | | | | Enhancement Request | Westlaw | Litigation Analytics | Filters | Edge | The ability to filter based on the industry type. For example; wh |
| 4254614 | 9/19/2019 | Reference Attorne | Greg Van Gompel | Joshua Harris | Levin Papantonio Thomas et al | | | | | General Feedback | Westlaw | Westlaw Edge User Interface | | Edge | "Appreciate your help. Loving Westlaw Edge too!" |
| 4253616 | 9/19/2019 | Reference Attorne | Scott Heard | Nicholas Mosser | Mosser Law PLLC | | | | | Enhancement Request | Westlaw | Litigation Analytics | | Edge | Ability to link right from Litigation Analytics to each case discus |
| 4254814 | 9/19/2019 | Reference Attorne | Jody Abraham | James Wagler | Nixon Peabody LLP | | ELITE - Legal | | | Enhancement Request | Westlaw | Westlaw Edge User Interface | | Edge | On Westlaw Edge provide a hyperlink under 'tools' to Drafting A |
| 4255968 | 9/19/2019 | Reference Attorne | Joel Haerter | Paul Greengross | Manatt Phelps & Phillips LLP | | | Federal | | Enhancement Request | Westlaw | Litigation Analytics | | Edge | Ability to use analytics to see generally how long it takes a writ |
| 4260873 | 9/20/2019 | Reference Attorne | Melissa Dalum | Kyle Roberson | University of the Pacific | | | | | Complaint | Westlaw | Westlaw Edge User Interface | | Improve WL / Edge | "Signing out due to inactivity happens too quickly. This wouldn |
| 4260437 | 9/20/2019 | Reference Attorne | Melissa Dalum | Daniel Hutman | Social Security Admin | | UKI - Public Sector | | | Complaint | Westlaw | Searching/WestSearch | | Improve WL / Edge | "Update to Westlaw Edge has made your system so slow it's us |
| 4260710 | 9/20/2019 | Reference Attorne | Melissa Dalum | Francesca Phan | Tr Internal - Academic | | | | | Enhancement Request | Westlaw | Folders | Filters | Improve WL / Edge | Ability to search user-added notes found in folders - currently y |
| 4260884 | 9/20/2019 | Reference Attorne | Melissa Dalum | Gregg Morton | Fl Public Employees Law Library | | | Florida | Government | Enhancement Request | Westlaw | Administrative Materials | Additional Content | Improve WL / Edge | "Provide access to career service decisions from the Florida Pu |
| 4260855 | 9/20/2019 | Reference Attorne | Melissa Dalum | Kyle Krohn | Or Public Defense Services | | | | | Complaint | Westlaw | Westlaw Edge User Interface | | Improve WL / Edge | "Font sizes are too big and there is too much white space. Not n |
| 4260856 | 9/20/2019 | Reference Attorne | Melissa Dalum | Kyle Krohn | Or Public Defense Services | | | | | Complaint | Westlaw | Westlaw Edge User Interface | | Improve WL / Edge | "It's ugly and slow compared to the old version." |
| 4259141 | 9/20/2019 | Reference Attorne | Melissa Dalum | Hannah Hamley | Seattle Univ School of Law | | UKI - Overseas Academic | | Environmental | Complaint | Westlaw | WestSearch Plus | | Improve WL Summaries / Edge | Question: What is a substantial burden for purposes of the RFR |
| 4260837 | 9/20/2019 | Reference Attorne | Melissa Dalum | Lee Killian | Ut Legislative Research & Gen Couns | | | | | Enhancement Request | Westlaw | Folders | | Improve WL / Edge | "On the drop down Folders Tab at the top it would be nice to h |
| 4260823 | 9/20/2019 | Reference Attorne | Melissa Dalum | Jennifer Canfield-C | Tr Internal - Large Cm Edge | | | | | Enhancement Request | Westlaw | Westlaw Edge User Interface | Document/Results Display | Improve WL / Edge | "It would be helpful if in preferences; a user could choose to de |
| 4260451 | 9/20/2019 | Reference Attorne | Melissa Dalum | Beth Laurence | Nolo | | | | | Enhancement Request | Westlaw | Statutes | Filters | Improve WL / Edge / Jurisdicti | Ability to eliminate terms in doing a Jurisdictional Survey. For in |
| 4259615 | 9/20/2019 | Technical Support | Greg Swanson | Peter Vay | George Mason Univ | | UKI - Public Sector | | | Complaint | Westlaw | Westlaw Edge User Interface | Document/Results Display | Edge | Westlaw Edge in Chrome; v 76 or lower; will not display section |
| 4260344 | 9/20/2019 | Reference Attorne | Melissa Dalum | Amy Dhall | Tr Internal - Corp Counsel Edge | | | | | Enhancement Request | Westlaw | Statutes | Filters | Improve WL / Edge / Jurisdicti | Easier way to remove specific terms from report "Allow us to e |
| 4249053 | 9/23/2019 | Reference Attorne | Stephanie Rust-Sm | Celeste Wilson | Cost Center 100110512 | | | | | Enhancement Request | Westlaw | User-Added Annotations | | Edge | "The feedback is a request to have an option to change font an |
| 4266417 | 9/23/2019 | Reference Attorne | Richard Sienkewicz | Robert Spitz | Suzie Spitz | | | | | Enhancement Request | Westlaw | Westlaw Edge User Interface | | Edge | Provide Preference to individual user to choose whether they c |
| 4267862 | 9/24/2019 | Reference Attorne | Amber Jannusch | Lee Curry | Gibson & Keith PLLC | | | | Criminal | Enhancement Request | Westlaw | Litigation Analytics | Additional Content | Edge | Greater coverage for criminal dockets in Litigation Analytics |
| 4267535 | 9/24/2019 | Reference Attorne | Cheryl (RSA) Johns | Sonal Desai | Bracewell & Giuliani LLP | | | | | Enhancement Request | Westlaw | Westlaw Edge User Interface | Delivery Options | Edge | Provide Content to Append options when selecting more than 2 |
| 4268210 | 9/24/2019 | Reference Attorne | Justin Johnson | Sanje Lara | St Thomas Univ School of Law | | UKI - Law School | | | Enhancement Request | Westlaw | WestSearch Plus | | Edge | Expected that putting in the parties names with the numerical c |
| 4272474 | 9/24/2019 | Reference Attorne | Janet Marvin | Richard Westin | University of Kentucky | | | | | Enhancement Request | Westlaw | Westlaw Edge User Interface | | Edge | Create a small link with; for example; a question mark in a circl |
| 4270433 | 9/24/2019 | Reference Attorne | Mark Matthias | Unknown Forgot | Cost Center 100110747 | | | | | Enhancement Request | Westlaw | Litigation Analytics | Filters | Edge | In Precedent Analytics there is an Insurance topic listed indepe |
| 4272753 | 9/24/2019 | Reference Attorne | Josh Gergen | Adam Bereston | Akin Gump Strauss Hauer & Feld LLP | | UKI - Global Law Firm | Federal | | Enhancement Request | Westlaw | Litigation Analytics | Additional Content | Edge | Expand coverage generally for criminal motion type and analyt |
| 4273284 | 9/24/2019 | Reference Attorne | Jennifer Ibanez | Bruce Liebman | Sheppard Mullin Richter & Hampton LLP | | | | | Complaint | Westlaw | Westlaw Edge User Interface | | Edge | Commented that the entries on the Subscriber Pricing Guide fo |
| 4271355 | 9/24/2019 | Reference Attorne | Janet Marvin | Richard Westin | University of Kentucky | | | | | Enhancement Request | Westlaw | User-Added Annotations | | Edge | Option to turn off user-added annotations pop-up when you hi |
| 4274940 | 9/25/2019 | Reference Attorne | Jody Abraham | Avery Katz | Columbia Law School | | ELITE - Legal | | | Enhancement Request | Westlaw | Westlaw Edge User Interface | Document/Results Display | Edge | Ability to format their Westlaw screens to make the product m |
| 4276091 | 9/25/2019 | Reference Attorne | Rachel Beithon | Kelly Vinopal | Crowell & Moring LLP | | ELITE - Legal | Federal | | Enhancement Request | Westlaw | Versions Compare | | Edge | Ability to compare proposed rules and final rules found in Fede |
| 4277685 | 9/25/2019 | Reference Attorne | Lori Romeyn Sitow | Joanna Hudson-Th | Blank Rome LLP | | CANADA | | Intellectual Property | Enhancement Request | Westlaw | Litigation Analytics | Additional Content | Edge | Include Patent Trial and Appeals Board decisions and appellate |
| 4284526 | 9/27/2019 | Technical Support | Amelita Mechilina | Michael Ribons | Michael P Ribons Law Offices | | | | | Complaint | Westlaw | Westlaw Edge User Interface | | Edge | "Westlaw is running slow and I am not thrilled;" specifically try |
| 4297244 | 9/27/2019 | Reference Attorne | Stephanie Rust-Sm | Tracy T Helser | Pillsbury Winthrop Shaw Pittman LLP | | | | | Complaint | Westlaw | WestSearch Plus | | Edge | Frustrated that type-ahead did not suggest Ericsson v. D-Link (7 |
| 4298345 | 9/27/2019 | Reference Attorne | Graham Berg | Unknown Forgot | Cost Center 100110747 | | | | | Enhancement Request | Westlaw | Versions Compare | | Edge | Ability to compare similar statutes from different jurisdictions w |
| 4298750 | 9/28/2019 | Reference Attorne | Anthony Hoang | John Fitzgibbons | Robie & Matthai | | | | | Enhancement Request | Westlaw | Litigation Analytics | | Edge | Have Appeals Analytics better recognize judge's decisions that h |
| 4305590 | 9/30/2019 | Reference Attorne | Amber Jannusch | Paul Hesse | Farmers Insurance Group FCU | | | | | Enhancement Request | Westlaw | WestSearch Plus | Document/Results Display | Edge | When searching for an exact phrase; only wants the exact phra |
| 4303280 | 9/30/2019 | Reference Attorne | Bevan Phillips | Edward Orourke | Baker Botts LLP | | | Federal | Criminal | Enhancement Request | Westlaw | Litigation Analytics | Additional Content | Edge | Criminal dockets from federal District Courts to Litigation Analy |
| 4304743 | 9/30/2019 | Reference Attorne | Amber Jannusch | Elton Muci | Holwell Shuster & Goldberg LLP | | UKI - Law Firm | Federal | Civil/Human Rights | Enhancement Request | Westlaw | Litigation Analytics | Additional Content | Edge | Would like to be able to get voting record of a (appellate court |

ox on Westlaw Edge.
tical analysis how how often a judge approves or disapproves or follows or does not follow magistrate recommendations
rt and recommendations of the magistrate judge.
e of successful actions in a certain district that had claims where the statute was asserted.
attorney's Win/Loss record like the comparable tool on Lexis. Her goal was to look up how successful this attorney was at trial; but there's no way to do so. Kaitlin expressed her opinion that the Analytics tool on Lexis is better than the one on Edge when viewing an individual attorney.

rits.
t how frequently summary judgment decisions are overturned by the court
Republic.
itive at all. The carrot next to Westlaw Edge baits user to click there instead of the Westlaw logo. Every website has a home button; you have History; Favorites; Notifications; why isn't there a Home?"
cepts related to [user's] search terms for more thorough research" when running plain-language search query.
California Court of Appeal
it Courts in Litigation Analytics
se using the 'copy page url' button. They know Drafting Assistant can hyperlink to a pincite. Specifically in AZ though; their citations include paragraph references rather than page and DA will not hyperlink to that pincite. Being able to do it in WL would help."
d site more readable!"

em. Otherwise; you should be able to select dockets and do a batch update."
k from the Content Types and replace it with Trial Court Orders or Jury Verdicts. This content is much more relevant to a legal search than Public Records. Often times; people do not see the 'Show More' link and therefore miss this content in a search result."
ets cut out. I think this is because the search engine begins to load results before I press enter. This seems to interrupt its receipt of information from my keyboard."
he home page has too much marketing. Customers should be able to move the things around their Westlaw page. We have opted out of marketing emails from Thomson Reuters and we should be able to opt out of a marketing-filled Westlaw home page."
o a folder. Right now; I have to save a case to a folder; then separately go to the folder and add a note there. The process is so cumbersome I never actually do it."
you have so much other crap -- that no one wants to see -- give us more detail of where the case at issue is discussed so we can decide if we want to review further. Why did this change from Westlawnext."
om a statute citation; that you could also add search terms to the search; instead of being limited to the index terms at the bottom. He knows one can also search by index terms but would like to see this enhancement"
upreme Court cases when one runs a search in Alabama cases. She says that the ONLY time that an Alabama Ct of Civil Appeals would be relevant is if the AL Supreme Court has not ruled on that issue. If there is not a default; can this be made a user preference?"
ying a filter search - get rid of unnecessary confirmations - why do I have to click 'continue' then 'apply' on a filter text search??????"
bar so that it won't let you see your entire search string - you have to scroll down within the search bar. It makes it very difficult to edit and manipulate a longer search string."
art the way she can with Lex Machina and Bloomberg. She wants to be able to download an Excel file listing by judge; by court; by docket; by party name

c. 1370" [citation requires H; S; D designation prior to page number]
't appear if I type 'too fast' (not very fast) as the natural-language search or whatever tries to catch up. This was a problem in Next as well. Taking input and producing the smart results should be uncoupled. I almost never use the smart results and just want to quickly enter a fi[citation] lookup."
ttom of my search results and the page-navigation buttons."
rch'? I keep clicking on that instead of my search results on the left; because my search terms are highlighted. But then when I get to the document I cannot navigate to my search terms because there's no 'Original terms' tool. It might be less annoying if the 'Documents related' weren't the same as my search results."
xample; AMERICA INVENTS ACT - if you type this in you get a procedural guide and some other secondary source but 'statutes' is grayed out."
he search text appears on screen."
into full-screen mode."

ork' or 'check opponent's work.' Now every report is listed as 'check your work.' Will the designation for 'check opponent's work' be available again? It was very helpful to be able to distinguish the reports."
lly running the report. Essentially; to add to the "Customize your survey" portion a spot where you can exclude a term or topic prior to running a report. For example; user wanted to look for corporate directors but wanted to exclude non-profit corporations
ay have a great brief for the State of WA but now you want to find relevant cases for Oregon based on your WA brief.
ent; e.g. remove the secondary and brief recommendations and only include the cases
search result; so you can quickly analyze and update a litigation document you retrieved from your Westlaw search."
man' side; shows his interests; lawyers talking about his demeanor; etc.? I was hoping to see something similar to Daily Journal judge profiles."
Every time I come back to Westlaw; there is a new platform. The problem with that is; the older I get; the steeper the learning curve I am presented with."
to My Account with full access set up at the time the account is established; so they can create access for other users.
e students because they have too much information. It is also really frustrating that links from Westlaw training and support pull up user guides for Westlaw Edge. The customer wants the videos that we used to have. 1. How to search cases. 2. How to search statutes.
ytics
eporting error directly to developers without having to trouble-shoot with Technical Support
UCC art. 5 to TX UCC art. 5

law much better" regarding reoccurring slowness issue
earch. Finds it frustrating to have to click 'show more' each time they run a search
NOS are and how they related to analytics
n Analytics; similar to what is provided for individual judges at the District Court level. Types of motions heard; average length of time used to make decisions; rates of overturning/upholding lower court decisions; etc.

relationship they bear to the guidelines.
n the home page--it's much harder to find without it. Please put the icon back."
at is being able to click on a button to pull up the citing reference to the case in the state's uniform citation style. PLEASE !!!!!!!!!!!!!!!!"
as having trouble determining how to return to result list from document
mpany convictions for crimes -- I was hoping to see which companies had pleaded guilty or been convicted of certain criminal acts -- thank you!!"

as on Westlaw Classic."
ate court judge (Utah) litigation analytics
ave Statutes Compare capture the former statute with the former number.
en looking at Labor and Employment cases; the ability to focus to instances involving the Energy Industry would be beneficial; rather than only being able to focus by specific parties.

sed under his search. Westlaw does have PDF's; but those are outside of his plan.
ssistant.
of mandamus to go to ruling in the federal courts
't be a problem if; when signing back in; all of the westlaw tabs you had open just picked up right where you left off instead of redirecting to a new session screen."
eless. Even a simple inquiry like finding a Supreme Court case using its citation took minutes to run. If it doesn't improve quickly I'm going to switch to LexisNexis."
ou can search the cases in folders but not the language in the user-added note
blic Employees Relations Commission."
early as much information is displayed at once compared with the old version. It is very inefficient."

A?; Comments: "The list of cases does not include west coast circuit interpretations of 'substantial burden' in the RFRA context."
ave the most recent 5 or so folders be available so that I do not have go to my entire list to find the one I was just in. Also; it would be nice for all of those tabs at the top to remain at the top even as I scroll down through a document. I could be wrong; but it seems like these are both changes made to Edge; and I prefer the way they were in Next."
fault to Fullscreen mode view without having to click it each time."
stance; looking at statutes with number of directors; eliminate 'Nonprofit' to narrow the search to corporations.
(e) for Restatement 2d Torts 339; starting with text; 'A possessor of land is subject to...' Updating to version 77 resolves the issue.
liminate results from jurisdictional surveys with certain terms."
d font size in Westlaw; specifically as a part of copy with reference. Theyâ€™d like to be able to copy with reference in the same font/font size that they are using in their brief or memo so that itâ€™s just that much faster; rather than copying; pasting; and having to then adjust the font and font size in Word. They think it would be more efficient to incorporate this change as a part of our copy with reference."
an incur or block ancillary charges

0 documents from a Table of Contents in statutes
itation would pull up the case when using Find by Citation
e; to each feature (Copy with Reference) with an explanation as to what it is and what it does.
ndent of other topics. Under the Dockets and Outcomes tabs it is a sub-category of Contracts. Please make Insurance an independent topic under all tabs to make topics more uniform and consistent.
ics on appeal; specifically looking for greater analysis for Judge Anthony Trenga from E.D. of Va.
r Dun & Bradstreet reports are confusing. In particular; there are two items that are similarly titled "Comprehensive Business Information Report" and "Business Information Report (Domestic)."
ghlight text in Westlaw
ore usable in class. One enhancement would be to compress everything on the page so more information would fit on the screen. Compressing the horizontal blue bar at the top that includes the logo; search box; favorites; history; etc would move everything up the page at least an inch.
ral Register
information to Litigation Analytics so it mirrors content on Docket Navigator.
ing to access Rutter Guide using Chrome
73 F.3d 1201) until you include citation
ith Versions Compare; i.e. side-by-side comparison of WI and MN controlled substance law
ave been appealed especially when the decision is not reported and judge is only mentioned in the decision; e.g. if you search for 'Karnow' there are 60+ decisions; but on the Appeals Analytics; there are only 25 decisions listed; while not all 60 decisions are appeals of Judge Karnow's decisions the discrepancy makes the user doubt the tool
se to be highlighted in case and results list; not other occasions where the words in the phrase are also used. [In this issue does not accurately reflect Boolean search]
tics.
in this case) judge by type (i.e. Title IX)

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY



HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

# EXHIBIT Q



**Shira Rebecca Liu**
SLiu@crowell.com
(949) 798-1325  direct

Crowell & Moring LLP
3 Park Plaza
20th Floor
Irvine, CA 92614
+1.949.263.8400  main
+1.949.263.8414  fax

February 14, 2023

***VIA EMAIL***

Vanessa Barsanti
KIRLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
vanessa.barsanti@kirkland.com

Re:  *Thomson Reuters Enterprise Centre GMBH et al. v. ROSS Intelligence Inc.*
Case No. 20-613-LPS (D. Del.)

Dear Ms. Barsanti:

I write in response to the letter you sent this past Friday, February 10th.

1. **Search Terms**

First, I write to correct your assertion that "it took ROSS over two and a half weeks to propose search terms." On January 24, Plaintiffs provided ROSS with proposed search strings, and then provided updated strings on January 25. The January 25 proposal included 22 search strings with a "general road map to show which term satisfies which RFP(s)." Reviewing all of these search strings in conjunction with the RFPs took many attorney hours. As ROSS was finalizing a response to this proposal, Plaintiffs followed up with a new set of search terms on February 1 in which Plaintiffs narrowed many of the strings they had already proposed. This new proposal rendered useless many of the hours of work invested by ROSS in Plaintiffs' January 25 proposal. ROSS then reinvested in the new search terms and provided a comprehensive response in less than a week.

Please see the Appendix to this letter for ROSS's responses regarding search strings. As you can see, of the eight strings that Plaintiffs did not agree to run, ROSS agrees to drop four, and has proposed modifications to its counterproposal for the remaining four. ROSS is available to meet and confer on these strings if needed.

2. **Unaddressed RFPs**

My February 7 letter noted that your search string proposal does not address the following RFPs: Nos. 182-85, 187, 190, 192, 193-94, 198, 206-07, 210-13, 216-18, 221-22, 229-30, 232-33, and asked you to confirm how Plaintiffs intend to identify documents responsive to



Vanessa Barsanti
*Thomson Reuters v. ROSS*
February 14, 2023

each of these RFPs.  Your February 10 letter did not explain how any of these RFPs are addressed by the search strings you propose or any RFPs to which Plaintiffs plan to respond with documents identified outside of the search string process under negotiation.

For example, RFP 182 requests "DOCUMENTS sufficient to show revenue from the sale, distribution, or license of the WESTLAW PLATFORM, separately broken out for revenue attributed to PUBLIC LAW DATABASES and LEGAL SEARCH TOOLS, and by CUSTOMER SEGMENT."  Plaintiffs' October 20, 2022 Responses and Objections to ROSS's First Set of Counterclaim Requests for Production state: "Plaintiffs state that they will produce documents sufficient to show gross revenue from the sale, distribution, or license of the Westlaw Platform as they are kept in the ordinary course of business."  ROSS considered this offer sufficient, and therefore has not engaged in any negotiation regarding this RFP.  However, RFP 182 was not listed in Plaintiffs' January 25 "general road map to show which term satisfies which RFP(s)," and ROSS does not expect any of the search strings proposed by Plaintiffs to capture this information (nor have Plaintiffs have not provided information indicating that the proposed custodians are likely to have the offered information within their files).  Plaintiffs have not communicated a plan to identify these documents through another process, such as pulling from accounting records.

If Plaintiffs believe that any of their proposed search strings will capture any of the RFPs listed in my February 7 letter, or have a plan to identify documents for any of these RFPs outside of the search string process, please provide that information before our next meet and confer.  If not, ROSS will bring to the Court's attention that the proposed process is inadequate.

3.  **Custodians**

Your February 10 letter also responded to ROSS's request that Plaintiffs include additional custodians in order to respond to the existing discovery requests.  *See* Feb. 10 Ltr, at 2-4.  As part of the response, the letter appended eight exhibits.  ROSS responds as follows:



Vanessa Barsanti
*Thomson Reuters v. ROSS*
February 14, 2023

   ***First***, RFPs 188[1], 189[2], 191[3], 195[4], 208[5], and 231[6] request communications with customers.  In my February 7 letter, I explained that the proposed custodians were inadequate because none of them appear "primarily responsible for communications directly with customers or potential customers."  *See* Feb. 7 Ltr, at 2, 3.  Your February 10 letter and the attached exhibits do not abate this concern.  The exhibits do not demonstrate that the eight custodians you propose regularly engage in direct communications with customers or are primarily responsible for these communications.  The exhibits instead appear to reflect that the custodians only possess direct communications with customers sporadically, which is not adequate for ROSS's purposes.  For example, the only exhibits which contain direct communications with or statements from customers are Exhibits 4, 5, 6, and 8.  But none of the custodians actually participate in the communications directly with the customer in these Exhibits.  None of the custodians appear on Exhibits 4, 6, or 8 at all so it is unclear to us why these documents would be produced under Plaintiffs' current proposal, why any of the custodians were aware of these documents, or why the custodians (if they were aware of these documents) would have access to them through the normal course of business.  On exhibit 5, the custodian Bridgett You is only forwarded the correspondence at the end and does not have any direct customer communications.  Moreover, the document does not reflect that Ms. You normally is sent emails like this which relate to customer requests.  Instead, the email subject line states "*High Priority*" which suggests that this is not a type of email that Ms. You typically receives.

   At our next meet and confer, please be ready to confirm whether Plaintiffs maintain a database with customer communications.  Please also be ready to confirm whether Plaintiffs will add this database, if applicable, and/or additional custodians that will cover the direct communications with customers sought by RFPs 188, 189, 191, 195, 208, and 231.  Otherwise, court intervention will be necessary.

---

[1] ALL DOCUMENTS and COMMUNICATIONS RELATED TO pricing the WESTLAW PLATFORM for PERSONS to license, INCLUDING plans, strategies, manuals, policies, analyses, memoranda, price lists, and guides for pricing the WESTLAW PLATFORM, including documents related to pricing by CUSTOMER SEGMENT and documents related to pricing decision-making.
[2] ALL DOCUMENTS and COMMUNICATIONS RELATED TO pricing the WESTLAW PLATFORM for PERSONS to license, INCLUDING documents related to pricing by CUSTOMER SEGMENT.
[3] ALL DOCUMENTS and COMMUNICATIONS RELATED TO the DISCOUNTS that PERSONS can or do receive when licensing the WESTLAW PLATFORM, including broken out by CUSTOMER SEGMENT.
[4] ALL COMMUNICATIONS with customers or potential customers RELATED TO the terms of YOUR AGREEMENTS, including pricing.
[5] ALL DOCUMENTS analyzing responses by YOUR customers, including by CUSTOMER SEGMENT, to actual or potential changes in pricing to any element of the WESTLAW PLATFORM.
[6] DOCUMENTS RELATED TO each instance in which any entity requested a change to the TERMS OF SERVICES YOU require for access to the WESTLAW PLATFORM, including all instances in which any entity did not agree to the TERMS OF SERVICES and were not granted access to the WESTLAW PLATFORM.

 **Crowell**

Vanessa Barsanti
*Thomson Reuters v. ROSS*
February 14, 2023

**Second**, Plaintiffs have agreed to produce documents reflecting communications with potential customers.  *See e.g.*, RFP Nos. 188, 189, 191, 195, 208, 231.  The February 7 letter raised this as a potential concern.  *See* Feb. 7 Ltr, at 2 (stating that the RFPs seek "communications with customers and potential customers" and that "it does not appear that the eight current custodians are primarily responsible for communications directly with customers or potential customers"); *id.* at 2 ("communications directly with . . . potential customers are responsive to RFP No. 231" but "it does not appear that the proposed custodians are primarily responsible for communications directly with . . . potential customers").  But none of the exhibits reflect communications directly or indirectly with potential customers that did not actually enter into a contract with Plaintiffs.

At our next meet and confer, please be ready to confirm whether Plaintiffs will add a communications database, if applicable, and/or additional custodians that will cover the information sought.  Otherwise, court intervention will be necessary.

**Third**, Exhibits 1 through 3 appear to be automated emails that reflect a form called Apptus that lower-ranking employees filled out in order to obtain approval from higher-ranking employees.  The Apptus form appears to include text-boxes that can be filled out and, when filled out, contain information responsive to ROSS's requests.  *Compare e.g.*, Exhibits 1-3 (reflecting the following text-boxes that can be filled out: "Approver Comments"; "Comments from Sales"; "Approval Request Comments") *with* Request Nos. 188, 189, 190[7], 191, 192[8], 193[9], 195, 199[10], 200[11], 201[12], 202[13], 208, 214[14], 224[15], 231.

Therefore, in response to Request Nos. 188, 189, 191, 192, 193, 195, 199, 200, 201, 202, 208, 224, 231, ROSS requests that all Apptus forms that have been generated in relation to a

---

[7] DOCUMENTS RELATED TO how you define or use CUSTOMER SEGMENTS and the number of users and/or seats per CUSTOMER SEGMENT.

[8] ALL DOCUMENTS and COMMUNICATIONS RELATING TO requests to purchase, license, or access the PUBLIC LAW DATABASES that are available on the WESTLAW PLATFORM.

[9] ALL DOCUMENTS and COMMUNICATIONS RELATING TO requests to purchase, license, or access the LEGAL SEARCH TOOLS that are available on the WESTLAW PLATFORM.

[10] ALL DOCUMENTS and COMMUNICATIONS RELATED TO strategies and/or plans for the sale, distribution, or license of the WESTLAW PLATFORM.

[11] ALL DOCUMENTS and COMMUNICATIONS RELATED TO strategies and/or plans for the sale, distribution, or license of the LEGAL SEARCH TOOLS.

[12] ALL DOCUMENTS and COMMUNICATIONS RELATED TO strategies and/or plans for the sale, distribution, or license of the PUBLIC LAW DATABASES.

[13] ALL DOCUMENTS and COMMUNICATIONS RELATED TO strategies and/or plans for the sale, distribution, or license of the LEGAL SEARCH PLATFORMS.

[14] ALL DOCUMENTS and COMMUNICATIONS RELATED TO YOUR decision to not license access to the WESTLAW PLATFORM to a COMPETITOR or potential COMPETITOR.

[15] ALL DOCUMENTS and COMMUNICATIONS RELATED TO any decision whether or not to license, sell, or distribute judicial opinions online independent of the WESTLAW PLATFORM.



Vanessa Barsanti
*Thomson Reuters v. ROSS*
February 14, 2023

sales request regarding the Westlaw platform be produced.[16]  At our next meet and confer, please also be prepared to explain the Apptus system, including its ordinary course usages, search capabilities, and temporal coverage.

***Finally***, none of the exhibits reflect, as communicated in your February 10 letter, that Mr. Leighton has direct communications with personnel that work for government entities and make judicial opinions available to Plaintiffs.  Thus, while I understand that Mr. Leighton holds a Vice President role in regards to content acquisition, that does not explain whether he is "primarily responsible" for obtaining judicial opinions.  Rather, based on the fact that Mr. Leighton stated in his deposition that he "supervis[es] the content acquisition group," it appears that he in fact is not primarily responsible for obtaining judicial opinions.

Nonetheless, ROSS would agree to withdraw its request for Plaintiffs to include additional custodians that are primarily responsible for obtaining judicial opinions if Plaintiffs confirm that Mr. Leighton has regular and direct communications with personnel that work for government entities and make judicial opinions available to Plaintiffs.

### 4. <u>Relevant Time Period</u>

After ROSS provided Plaintiffs on January 24 with a detailed proposal on time periods at Plaintiffs' invitation, we did not hear any substantive response.  In my February 7 letter, I asked that Plaintiffs be prepared for a final position at the Parties' next meet and confer, including substantiating any assertions of burden.  In your February 10 letter, you requested caselaw substantiating ROSS's position.  However, during our phone call yesterday you let me know that Plaintiffs do not intend to engage any further on this issue and that ROSS should seek relief from the Court.  Accordingly, ROSS intends to seek Court intervention on this issue.  In the meantime, I write to correct your characterization of this case as an "antitrust dispute[] with a single claim." ROSS is seeking discovery under, inter alia, its claims under Sections One and Two of the Sherman Act as well as California's Unfair Competition Law.

Sincerely,

/s/ *Shira Liu*

Shira Liu

---

[16] If the Apptus forms contain information about potential customers that did not enter into contract with Plaintiffs, then the production of these forms would also address ROSS's concern that none of the custodians appear to possess such documents.  The production of Apptus forms with filled-in information from pre-2015 could also potentially address the ongoing dispute regarding temporal limitations, though we do not know for how long these forms have been used by Plaintiffs for sales purposes.

# EXHIBIT R

## Canter, Jacob

| | |
|---|---|
| **From:** | Berry, Crinesha |
| **Sent:** | Friday, February 17, 2023 4:41 PM |
| **To:** | Barsanti, Vanessa; Liu, Shira |
| **Cc:** | Means, Miranda; #Thomson-Ross; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team; *dmoore@Potteranderson.com1; *bpalapura@potteranderson.com; Ginder, Cameron; Bishop, Erin; Miller, Dana R. Bucy |
| **Subject:** | RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233 |
| **Attachments:** | Cases re Temporal Scope of AT Discovery.zip |

Vanessa,

Following up on today's call, all parties agree that today was the final meet and confer for the temporal issue.  However, as discussed, ROSS considers the following cases to support its position with respect to the temporal scope of the requests.

- *United States v. Grinnell Corp.,* 30 F.R.D. 358, 360 (D.R.I. 1962) (allowing discovery of agreements between defendant and competitors going back to 50+ years to 1907).
- *Caldwell-Clements, Inc. v. McGraw-Hill Pub. Co.*, 12 F.R.D. 531, 535-36 (S.D.N.Y. 1952) (allowing discovery period of 1910 to present for discovery related to acquisition of other publishing companies as relevant to evidence of monopolization).
- *Pappas v. Loew's, Inc.,* 13 F.R.D. 471, 472 (M.D. Pa. 1953) (allowing discovery for eighteen-year period preceding the filing of antitrust monopoly claim based on defendant's admission that it had contracts with others that were the basis of the anticompetitive conspiracy charge during that time period).
- *Gumwood HP Shopping Partners L.P. v. Simon Prop. Grp., Inc.*, 2014 WL 12780341, at *3 (N.D. Ind. June 25, 2014) (where estimated cost of production of $1.5 million, "Court is unwilling at this time, to prevent Gumwood from seeking discovery the Court has not determined to be appropriate simply because the discovery may be expensive").

We have attached the cases for your review.  Please let us know by Monday, February 20, if Plaintiffs have reconsidered their position.

Best,
Crinesha

**Crinesha B. Berry**
Crowell & Moring LLP
cberry@crowell.com
+1.202.688.3435 direct   |   +1.757.593.4107 mobile

---

**From:** Barsanti, Vanessa <vanessa.barsanti@kirkland.com>
**Sent:** Wednesday, February 15, 2023 9:04 PM
**To:** Liu, Shira <SLiu@crowell.com>
**Cc:** Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>; Ginder, Cameron <cameron.ginder@kirkland.com>; Bishop, Erin

<erin.bishop@kirkland.com>; Miller, Dana R. Bucy <dana.miller@kirkland.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

External Email

Shira,

I confirmed our local counsel can also be on Friday morning. Hope you have a good night and talk soon.

**Vanessa Barsanti**
She/Her/Hers

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 2205
**F** +1 312 862 2200

vanessa.barsanti@kirkland.com

---

**From:** Barsanti, Vanessa <vanessa.barsanti@kirkland.com>
**Sent:** Wednesday, February 15, 2023 3:49 PM
**To:** Liu, Shira <SLiu@crowell.com>
**Cc:** Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>;
mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>;
*dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com
<bpalapura@potteranderson.com>; Ginder, Cameron <cameron.ginder@kirkland.com>; Bishop, Erin
<erin.bishop@kirkland.com>; Miller, Dana R. Bucy <dana.miller@kirkland.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

I just need to check on local counsel's availability, so let me see what I can do. I should say that if you did find some case law supporting the position I still remain open to seeing it. I did not mean to close off that avenue on our call the other day.

**Vanessa Barsanti**
She/Her/Hers

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 2205
**F** +1 312 862 2200

vanessa.barsanti@kirkland.com

---

**From:** Liu, Shira <SLiu@crowell.com>
**Sent:** Wednesday, February 15, 2023 3:48 PM
**To:** Barsanti, Vanessa <vanessa.barsanti@kirkland.com>
**Cc:** Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>;
mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>;
*dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com
<bpalapura@potteranderson.com>; Ginder, Cameron <cameron.ginder@kirkland.com>; Bishop, Erin
<erin.bishop@kirkland.com>; Miller, Dana R. Bucy <dana.miller@kirkland.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

Hi Vanessa,

We received your invitation for a meet and confer on the issues below and plan to join you on Friday at 10AM PT.

As I mentioned in yesterday's letter, I understand from our call on Monday that, in Plaintiffs' view, no further meet and confer would be productive on the temporal scope of the productions.  However, my understanding is that to comply with local rules, we need to have a meet and confer that includes local counsel on the issue in order to consider it "final."  Are you opposed to handling that on Friday's call as well?  It shouldn't take much time since we understand your position.

Thank you.

**Shira Liu**
Pronouns: she/her/hers
Crowell & Moring LLP
sliu@crowell.com
+1.949.798.1325 direct   |   +650.269.8066 mobile

---

**From:** Barsanti, Vanessa <vanessa.barsanti@kirkland.com>
**Sent:** Wednesday, February 15, 2023 8:53 AM
**To:** Liu, Shira <SLiu@crowell.com>
**Cc:** Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>; Ginder, Cameron <cameron.ginder@kirkland.com>; Bishop, Erin <erin.bishop@kirkland.com>; Miller, Dana R. Bucy <dana.miller@kirkland.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

External Email

Shira,

We're working on testing ROSS's revised terms and gathering some of the requested information. How about we set a time on Friday to discuss? I'm out of the office in the afternoon, but I can do anything between 9 and 12:30 PT.

**Vanessa Barsanti**
She/Her/Hers

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 2205
**F** +1 312 862 2200

vanessa.barsanti@kirkland.com

---

**From:** Liu, Shira <SLiu@crowell.com>
**Sent:** Tuesday, February 14, 2023 6:12 PM
**To:** Barsanti, Vanessa <vanessa.barsanti@kirkland.com>
**Cc:** Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>; Ginder, Cameron <cameron.ginder@kirkland.com>; Bishop, Erin <erin.bishop@kirkland.com>; Miller, Dana R. Bucy <dana.miller@kirkland.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

Vanessa,

Please see the attached correspondence and counterproposal, and confirm your availability for a meet and confer.

Thank you.

**Shira Liu**
Pronouns: she/her/hers
Crowell & Moring LLP
sliu@crowell.com
+1.949.798.1325 direct  |  +650.269.8066 mobile

---

**From:** Barsanti, Vanessa <vanessa.barsanti@kirkland.com>
**Sent:** Friday, February 10, 2023 10:26 AM
**To:** Liu, Shira <SLiu@crowell.com>
**Cc:** Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>;
mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>;
*dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com
<bpalapura@potteranderson.com>; Ginder, Cameron <cameron.ginder@kirkland.com>; Bishop, Erin
<erin.bishop@kirkland.com>; Miller, Dana R. Bucy <dana.miller@kirkland.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

External Email

Shira,

Please see the attached correspondence.

**Vanessa Barsanti**
She/Her/Hers

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 2205
**F** +1 312 862 2200

vanessa.barsanti@kirkland.com

---

**From:** Liu, Shira <SLiu@crowell.com>
**Sent:** Wednesday, February 8, 2023 2:38 PM
**To:** Barsanti, Vanessa <vanessa.barsanti@kirkland.com>
**Cc:** Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>;
mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>;
*dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com
<bpalapura@potteranderson.com>; Ginder, Cameron <cameron.ginder@kirkland.com>; Bishop, Erin
<erin.bishop@kirkland.com>; Miller, Dana R. Bucy <dana.miller@kirkland.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

Hi Vanessa,

Following up on our Zoom, the parentheses placement for the last string you proposed makes sense to us.

Thanks.

**Shira Liu**
Pronouns: she/her/hers
Crowell & Moring LLP
sliu@crowell.com
+1.949.798.1325 direct  |  +650.269.8066 mobile

---

**From:** Barsanti, Vanessa <vanessa.barsanti@kirkland.com>
**Sent:** Wednesday, February 8, 2023 1:20 PM
**To:** Liu, Shira <SLiu@crowell.com>
**Cc:** Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>;
mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>;
*dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com
<bpalapura@potteranderson.com>; Ginder, Cameron <cameron.ginder@kirkland.com>; Bishop, Erin
<erin.bishop@kirkland.com>; Miller, Dana R. Bucy <dana.miller@kirkland.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

External Email

Perfect. I will send an invite.

**Vanessa Barsanti**
She/Her/Hers

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 2205
**F** +1 312 862 2200

vanessa.barsanti@kirkland.com

---

**From:** Liu, Shira <SLiu@crowell.com>
**Sent:** Wednesday, February 8, 2023 1:20 PM
**To:** Barsanti, Vanessa <vanessa.barsanti@kirkland.com>
**Cc:** Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>;
mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>;
*dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com
<bpalapura@potteranderson.com>; Ginder, Cameron <cameron.ginder@kirkland.com>; Bishop, Erin
<erin.bishop@kirkland.com>; Miller, Dana R. Bucy <dana.miller@kirkland.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

Sure.  I will be available after 2PM PT.

**Shira Liu**
Pronouns: she/her/hers
Crowell & Moring LLP
sliu@crowell.com
+1.949.798.1325 direct  |  +650.269.8066 mobile

---

**From:** Barsanti, Vanessa <vanessa.barsanti@kirkland.com>
**Sent:** Wednesday, February 8, 2023 1:19 PM

**To:** Liu, Shira <SLiu@crowell.com>
**Cc:** Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>; Ginder, Cameron <cameron.ginder@kirkland.com>; Bishop, Erin <erin.bishop@kirkland.com>; Miller, Dana R. Bucy <dana.miller@kirkland.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

External Email

Shira,

I will respond more formally to your counterproposal, but as you can imagine we are working on testing the terms ROSS has proposed. There are several syntax issues that we think are errors, but rather than guessing it would be great if we could hop on a zoom quickly to screenshare and talk through them. Any chance you can do so this afternoon?

**Vanessa Barsanti**
She/Her/Hers
_____

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 2205
**F** +1 312 862 2200
_____

vanessa.barsanti@kirkland.com

**From:** Liu, Shira <SLiu@crowell.com>
**Sent:** Tuesday, February 7, 2023 1:04 PM
**To:** Barsanti, Vanessa <vanessa.barsanti@kirkland.com>
**Cc:** Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>; Ginder, Cameron <cameron.ginder@kirkland.com>; Bishop, Erin <erin.bishop@kirkland.com>; Miller, Dana R. Bucy <dana.miller@kirkland.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

Vanessa,

Please see the attached correspondence and counterproposal, and confirm your availability for a meet and confer.

Thank you.

**Shira Liu**
Pronouns: she/her/hers
Crowell & Moring LLP
sliu@crowell.com
+1.949.798.1325 direct  |  +650.269.8066 mobile

**From:** Barsanti, Vanessa <vanessa.barsanti@kirkland.com>
**Sent:** Wednesday, February 1, 2023 5:58 AM
**To:** Canter, Jacob <JCanter@crowell.com>
**Cc:** Hughes, Dalton <DHughes@crowell.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team

<Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>;
*bpalapura@potteranderson.com <bpalapura@potteranderson.com>; Ginder, Cameron
<cameron.ginder@kirkland.com>; Bishop, Erin <erin.bishop@kirkland.com>; Miller, Dana R. Bucy
<dana.miller@kirkland.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

External Email

Jacob and team,

Unfortunately after testing the original terms we proposed it became clear that they were, in fact, overly broad and
proved too burdensome to use. They pulled in over a million email threads and their attachments. Through further
testing and refinement we have made proposed revisions to those terms, which are detailed in the attached and still hit
on 615,000 email threads and their attachments. In the spirit of transparency we've given you information regarding hits
on a term by term basis for both our original and revised terms.

We've already begun reviewing the documents hitting on the revised terms and will begin producing documents on a
rolling basis. Please let us know as soon as possible if ROSS is requesting any additional search terms be included so that
we can test them immediately.  Can you please confirm that ROSS also intends to produce documents responsive to
Thomson Reuters' antitrust RFPs?

**Vanessa Barsanti**
She/Her/Hers
_____

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 2205
**F** +1 312 862 2200
_____

vanessa.barsanti@kirkland.com

---

**From:** Barsanti, Vanessa
**Sent:** Wednesday, January 25, 2023 11:18 AM
**To:** 'Canter, Jacob' <JCanter@crowell.com>
**Cc:** 'Hughes, Dalton' <DHughes@crowell.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross
<thomson-ross@kirkland.com>; 'mflynn@morrisnichols.com' <mflynn@morrisnichols.com>;
'jblumenfeld@morrisnichols.com' <jblumenfeld@morrisnichols.com>; 'ROSS Lit Team' <Rosslitteam@crowell.com>;
*dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com
<bpalapura@potteranderson.com>; Ginder, Cameron <cameron.ginder@kirkland.com>; Bishop, Erin
<erin.bishop@kirkland.com>; Miller, Dana R. Bucy <dana.miller@kirkland.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

Jacob and team,

Thank you again for the discussion this morning. Per our conversation, I am attaching here an excel with the original
terms from yesterday, the current terms, which have been updated to function in Relativity appropriately (e.g.,
exclamation points changed to asterisks) and to resolve a couple of issues I mentioned. The substantive changes are
reflected in the notes column.  As you requested, we've included a column as a general road map to show which term
satisfies which RFP(s). Though given the breadth of some of the terms they may in fact locate documents responsive to
additional RFPs. We are still collecting data, so continue to reserve our rights to amend these.

Lastly you asked for some additional information on our proposed custodians. The below list adds their titles and their
length of employment. Please let us know if you have any further questions.

Custodians:

- Andrew Martens - Senior Vice President & Global Head Legal Product & Editorial
  - Began at West Publishing in 1993, Thomson West in 1998, Thomson Reuters in 2003
- Erik Lindberg - Senior Director, Westlaw Product Management
  - Began at West Publishing in 1992, Thomson Reuters in 2000
- Mark Hoffman - Finance Manager
  - Began at Thomson Reuters in 2004
- Christine Post - Senior Director, Market Research & Competitive Intelligence
  - Began at Thomson Reuters in 1993
- Dustin Cripe - Corporate Strategy Director
  - Began at Thomson Reuters in 2018
- Thomas Leighton - Vice President, Government Relations & Content Acquisition
  - Began at Thomson Reuters in 2008
- Bridgett You - Vice President Revenue Management, Mid & Global Large Law; Prior to January 2023 - Senior Director of Strategic Pricing & Revenue Management
  - Began at Thomson Reuters in 2006
- Mike Dahn - Senior Vice President & Head of Westlaw Product Management
  - Began at Thomson Reuters in 2000

**Vanessa Barsanti**
She/Her/Hers

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 2205
**F** +1 312 862 2200

vanessa.barsanti@kirkland.com

---

**From:** Barsanti, Vanessa
**Sent:** Tuesday, January 24, 2023 1:45 PM
**To:** 'Canter, Jacob' <JCanter@crowell.com>
**Cc:** Hughes, Dalton <DHughes@crowell.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>; Ginder, Cameron <cameron.ginder@kirkland.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

Good timing, Jacob. I was just finishing a note to you re search parameters. Since we last spoke, Thomson Reuters has engaged an eDiscovery vendor who has already begun collection efforts. While we have not yet been able to test terms against the data as it is still in the process of being collected/processed, in the spirit of full transparency we are sharing with you the search parameters we intend to employ so long as the testing confirms those parameters are not unreasonably burdensome or overly broad.

Subject to the above caveat, in order to locate documents responsive to ROSS's RFPs, Thomson intends to utilize the following search parameters:

- <u>Time Frame</u>: 1/1/15 to 12/31/22
- <u>Custodians/Data Source</u>: Emails of all of the individuals disclosed in Thomson's initial disclosures (Andrew Martens, Erik Lindberg, Mark Hoffman, Christine Post, Dustin Cripe, Thomas Leighton, and Bridgett You), in addition to Mike Dahn (Senior Vice President and head of Westlaw Product Management)

- Terms:
  - Market! w/10 (research! OR insight! OR analys! OR plan! OR survey! OR report! OR stud!)
  - (Westlaw or WL OR legal! OR customer! OR segment! OR licens!) w/10 (strateg! OR plan!)
  - (Westlaw OR WL OR product!) w/10 (management! OR development!)
  - (Westlaw OR WL) w/10 (sale! OR market! OR advertis! OR distribut!)
  - (market! OR competit! OR Lexis! OR Fastcase OR Google OR Casemaker OR Casetext OR "Wolters Kluwer" OR Bloomberg OR Jurisearch OR ROSS) w/15 (survey OR report! OR overview OR intel! OR analys! OR investigat! OR insight! OR research! OR compar! OR info!)
  - (SWAT OR Indigo)
  - (licens! OR contract! OR deal OR negotiat!) w/15 (competit! OR Lexis! OR Fastcase OR Google OR Casemaker OR Casetext OR "Wolters Kluwer" OR Bloomberg OR Jurisearch OR ROSS)
  - (licens! OR contract! OR deal OR negotiat!) w/15 ROSS)
  - (Case! OR statut! OR regulat! OR data! OR API OR "public law" OR content!) w/15 (sale! OR sell! OR license OR market! OR advertis! OR distribut!)
  - excessive w/5 (use OR usage OR download!)
  - (download! OR stor! OR request!) w/10 (case! OR statut! OR regulat! OR data! OR API OR "public law" OR content OR stor!)
  - (invest! OR develop! OR improv! OR enhanc! OR upgrad! OR discontinu! OR cancel! OR stop! OR abandon! OR drop!) w/15 (Westlaw! OR WL OR "search tech!" OR "search tool!" OR "artificial intelligence" OR AI OR NLP OR "natural language" OR "Westlaw Edge" or featur!)
  - ((ceas! OR discontinu! OR cancel! OR stop! OR abandon! OR drop! OR (phas! w/3 out)) w/15 ("Westlaw Next" OR "Westlaw Classic")
  - ("search tech!" OR "Head Notes" OR "Key Number System" OR WKNS OR "artificial intelligence" OR AI OR "natural language" OR NLP) w/15 (sell! OR license OR market!)
  - (strateg! OR continu! OR discontinu! OR stop! OR cancel! OR abandon! OR drop! OR stop!) AND (updat! OR publish! OR print! OR offer! OR sell!) AND (hardcopy OR "hard copy" OR physical OR book! OR (case OR court) w/5 reporter!))
  - (Westlaw or WL OR subscription) w/15 (pric! OR charg! OR cost! OR discount! OR negotiat! OR offer!)
  - pric! w/3 guideline!
  - (print! OR hardcopy OR "hard copy" OR physical OR book! OR (case OR court) w/5 reporter!)) w/15 (pric! OR cost! OR charg!)
  - (Westlaw OR WL) AND (pric! w/10 (model! OR structur! OR guarante! OR structur!))
  - (publish! OR publication OR submit! OR submission) w/5 (guide! OR opinion! OR decision! OR order! OR publi!)
  - ("law student!" OR "law school!") w/10 (invest! OR access! OR program! OR cost! OR train! OR strateg! OR manual! OR polic!)) AND (Westlaw OR WL)

As we have not been able to test these terms yet, they may prove over-inclusive/too burdensome. If a narrowing of these terms is required we will reach out to you with information about the requisite modification and are happy to meet and confer about it if you have any concerns. As we discussed last week, if there are any terms ROSS is interested in adding, or if you'd like to see modifications of these proposed terms, please let us know as soon as possible so we can immediately test those terms as soon as the data is available.

Given that we are both coming to the table with new information/modifications to requests, and that we of course have to take your proposal to our client, I don't expect that this will in fact be our last meet and confer. But we look forward to speaking tomorrow and working out as much as we possibly can.

Thank you,

**Vanessa Barsanti**
She/Her/Hers
_____
**KIRKLAND & ELLIS LLP**

300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 2205
**F** +1 312 862 2200
_____
vanessa.barsanti@kirkland.com

---

**From:** Canter, Jacob <JCanter@crowell.com>
**Sent:** Tuesday, January 24, 2023 1:38 PM
**To:** Ginder, Cameron <cameron.ginder@kirkland.com>; Barsanti, Vanessa <vanessa.barsanti@kirkland.com>
**Cc:** Hughes, Dalton <DHughes@crowell.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>; Barsanti, Vanessa <vanessa.barsanti@kirkland.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

Cameron, Plaintiffs asked for ROSS to make temporal limitation proposals for the document requests in ROSS's first set of requests.  As we have explained, this is not ROSS's burden.  Plaintiffs have made no argument to the contrary.  Nonetheless, Plaintiffs are apparently unable to offer their own temporal limits and instead of offering to do so before the final conferral, requested that ROSS do so after the parties already held the final conferral.  Thus, to move the document production process along, ROSS proposes temporal limits for the first set of document requests as reflected in the attached word document.  ROSS offers this proposal without prejudice to revisit the temporal limitations if ROSS discovers that we need to go further back in time.

You stated that Plaintiffs would have a proposal before tomorrow's conferral at 10:30 AM CT conferral addressing all of the remaining disputes related to the first set of document requests and also addressing the second set of document requests.  You also said that Plaintiffs would have search term proposals before tomorrow's conferral as well. Please also come prepared to address ROSS's temporal limit proposals.  As we have already stated, this will be the final conferral on all of the document requests that we discuss.

**Jacob Canter**
Pronouns: he/him/his
Crowell & Moring LLP
jcanter@crowell.com
+1.415.365.7210 direct   |   +1.415.385.3716 mobile

---

**From:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Sent:** Thursday, January 19, 2023 3:00 PM
**To:** Canter, Jacob <JCanter@crowell.com>; Barsanti, Vanessa <vanessa.barsanti@kirkland.com>
**Cc:** Hughes, Dalton <DHughes@crowell.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>; Barsanti, Vanessa <vanessa.barsanti@kirkland.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

External Email

Jacob -- In response to your questions below.

10

We intend to produce all documents and communications as requested, subject to our proposal, which, as you note, we are aiming to provide as quickly as possible.

You have accurately stated our discussion on Thomson Reuters' temporal objection.  We are unavailable for a final meet and confer on Monday but can make Tuesday morning work.  If ROSS identifies specific requests for which it believes it needs a broader temporal scope of production, please share in advance so we can evaluate the request beforehand.

Our believe that our proposal will resolve most, if not all, of the remaining disputes about RFP 223, 225-26, 227, and 231.  The proposal will identify which RFPs Thomson Reuters is responding to, and we can address any remaining disputes on Wednesday.


Thanks,
Cameron

**Cameron Ginder**

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 3757  **M** +1 260 414 9744
**F** +1 312 862 2200

cameron.ginder@kirkland.com

---

**From:** Canter, Jacob <JCanter@crowell.com>
**Sent:** Thursday, January 19, 2023 12:41 PM
**To:** Ginder, Cameron <cameron.ginder@kirkland.com>; Barsanti, Vanessa <vanessa.barsanti@kirkland.com>
**Cc:** Hughes, Dalton <DHughes@crowell.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>; Barsanti, Vanessa <vanessa.barsanti@kirkland.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

I am writing to memorialize our phone conversation and to ask questions regarding the conversation.

During the conversation you stated that Plaintiffs' position with regard to Request Nos. 186, 196,197, 199-202, 203-204, 209, 214-215, 224, 188-189, 191, 195, 205, 208, and 219-220 has changed. You stated that Plaintiffs will no longer only produce documents "sufficient to show" the information requested. However, we are uncertain what that means you will be producing.  Will you be producing all documents in response to the requests as drafted so that, as an example, the documents include both documents and communications related to strategies and/or plans for the sale, distribution, and license, of the Westlaw platform, search tools, public law database, and legal search platforms (*see* Request Nos. 199-202).  Or, is the plan to produce some smaller subset, such as "business plans for the sale, distribution, or license of the Westlaw Platform" (see R&Os to Request Nos. 199-202)?  If it is the latter, then we will proceed to raise the issue with the court.

During the conversation you also stated that Plaintiffs stand on their temporal limitation objections, although you agreed to discuss this as to each request. If we do not have resolution on the above dispute then we will move forward with seeking leave from the court on both the above dispute and the temporal limitations dispute. However, if we have resolution on the above dispute then we request a final conferral to discuss the temporal limits for particular document requests Monday.

We did not discuss the final two disputes related to RFP Nos. 223, 225-226, 227 and RFP No. 231. I assume that your positions on these requests are unchanged.

Finally, you stated that before next Wednesday Plaintiffs would provide ROSS with a list of proposed search terms and custodians, and that we can discuss those on Wednesday at 10:30 AM CT.

**Jacob Canter**
Pronouns: he/him/his
Crowell & Moring LLP
jcanter@crowell.com
+1.415.365.7210 direct  |  +1.415.385.3716 mobile

**From:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Sent:** Thursday, January 19, 2023 9:44 AM
**To:** Canter, Jacob <JCanter@crowell.com>
**Cc:** Hughes, Dalton <DHughes@crowell.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>; Barsanti, Vanessa <vanessa.barsanti@kirkland.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

External Email

Jacob - We have the draft joint letter.  Do you have 10 minutes to discuss between 10-11CT?

Thanks,
Cameron

**Cameron Ginder**

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 3757  **M** +1 260 414 9744
**F** +1 312 862 2200

cameron.ginder@kirkland.com

**From:** Canter, Jacob <JCanter@crowell.com>
**Sent:** Wednesday, January 18, 2023 3:00 PM
**To:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Cc:** Hughes, Dalton <DHughes@crowell.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

Cameron, I am writing because we inadvertently omitted RFP Nos. 196 and 197 from the list of requests where a dispute remains about the metes and bounds of Plaintiffs' offer (#2). We are writing to confirm that our dispute regarding these requests is also final.

Also, attached is the joint letter raising these disputes with the Court. Once you approve we will file. Kind regards,

**Jacob Canter**
Pronouns: he/him/his
Crowell & Moring LLP
jcanter@crowell.com
+1.415.365.7210 direct  |  +1.415.385.3716 mobile

---

**From:** Canter, Jacob <JCanter@crowell.com>
**Sent:** Friday, January 13, 2023 8:52 PM
**To:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Cc:** Hughes, Dalton <DHughes@crowell.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

Cameron,

 We write to memorialize the material we agreed on and to also memorialize the disputes that remain.  As we discussed on the call, for those disputes that remain, there is an impasse and our conferral constituted a final conferral, making these disputes appropriate for court intervention.

**Topics on which we agree**
1. **RFP No. 187.**  There is no dispute because Plaintiffs also agree to produce documents sufficient to show the costs of offering Westlaw to law students as they are kept in the ordinary course of business. Thank you.
2. **RFP No. 222.**  There is no dispute because Plaintiffs also agree to produce the terms of service for documents from the governmental entities that are published on the platform.  Thank you.
3. **RFP No. 210.**  There is no dispute because Plaintiffs clarified that they have accepted ROSS' definition of competitors and also agree to produce agreements with competitors related to both licenses and potential licenses for the platform, database, and search tools, and also for material that is within the databases and search tools. Thank you.

**Topics where disputes remain**
1. **Temporal limitation on all requests.**  It is Plaintiffs' position that the temporal limitation for all documents and communications should be January 1, 2015, except to the extent for "documents [and communications] sufficient to show any business plans, products, and licenses related to its public law database separate from any search technology."  For this latter category, the temporal limitation will be January 1, 1990.  It is Plaintiffs' position that a different temporal limit is overly burdensome and would lead to the production of irrelevant documents.  Also, it is Plaintiffs' position that the January 2015 limitation is appropriate because ROSS started in January 2015.  ROSS disagrees that when ROSS started is an appropriate reason to limit discovery on Westlaw's conduct.  ROSS has stated that it is Plaintiffs' burden to demonstrate in specific terms for each request why no temporal limitation is improper.  For example, business plans and communications related to the decision to develop a single platform that includes both a public law database and tools which allows users to search through the database would be relevant to the tying claim but would not be produced if they are from before 2015. We offered you the opportunity to provide a specific reason why a specific temporal limit should be in place for each of the document requests, which you declined to do.  ROSS has also stated, citing supporting law, that the temporal limitations Plaintiffs proposal would cause documents relevant to the tying and UCL claims to not be produced.  And ROSS has identified documents already produced by Plaintiffs which reflect that documents from before January 1, 1990, would be responsive and relevant. This dispute requires court intervention to resolve.
2. **RFP Nos. 186, 199-202, 203-204, 209, 214-215, 224, 188-189, 191, 195, 205, 208, and 219-220.**  It is Plaintiffs' position that the metes and bounds of Plaintiffs' offers in response to these requests are clear and that they do

not exclude any relevant materials.  ROSS disagrees.  ROSS has identified with specificity why, with each request, it is unclear what material is excluded and for what reason it would be excluded.  *See* Dec 29 Letter, at 2-9; Jan 12 Letter, at 3-5.  For example, at the conferral today we again brought up your offer to produce a "request sufficient to show business plans" in response to RFPs 199-202.  We stated that it is unclear whether this request includes or excludes drafts, communications about the plan, memorandum and analyses of the plan, and other materials which reflect reactions to the plan and you were unable to articulate a clear answer.  ROSS has also stated, citing case law, that the language Plaintiffs' use provide an opportunity for cherry-picking. Dec 29 Letter, at 2-4. This dispute requires court intervention to resolve.

3. **RFP Nos. 223, 225-226, 227.**  In response to these requests, Plaintiffs agree to "produce documents sufficient to show its process for deciding what opinions to (1) publish in official print reporters and (2) include online."  Plaintiffs state that the request requires Plaintiffs to produce no additional material. ROSS contends that these requests also require Plaintiffs to produce materials related to deciding whether or not to publish collections of judicial opinions in paper-format, such as in a hard copy book. Dec 29 Letter, at 12-13, 14.  This dispute requires court intervention to resolve.

4. **RFP No. 231.**  This request seeks documents related to "each instance in which any entity requests a change to" Plaintiffs terms of service for access to the Westlaw Platform, including all instances in which any entity did not agree to the terms of service and were not granted access to the Westlaw Platform. At the Dec 1 and 2 conferral, Plaintiffs asked ROSS to identify specific provisions from its terms of service, which ROSS did. Dec 29 Letter, at 14-15. Plaintiffs then instead said that they would produce documents "sufficient to show any request to change the Westlaw terms and conditions in a way that would allow the requesting party to use Thomson Reuters' public law database separate from search technology."  Plaintiffs contend that this offer is adequate.  ROSS disagrees because materials that are relevant and would be produced in response to a request for instances in which an entity did not agree to how West defines "Data" in Section 1.a of its terms of service would be excluded based on Plaintiffs' counteroffer.  There is thus a dispute which requires court intervention to resolve.

We intend to notify the Court on Tuesday, January 17, 2023, of the disputes that require intervention to resolve.  We will provide you with a draft letter to the Court on Monday.  Kind regards,

**Jacob Canter**
Pronouns: he/him/his
Crowell & Moring LLP
jcanter@crowell.com
+1.415.365.7210 direct  |  +1.415.385.3716 mobile

---

**From:** Canter, Jacob <JCanter@crowell.com>
**Sent:** Thursday, January 12, 2023 1:08 PM
**To:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Cc:** Hughes, Dalton <DHughes@crowell.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

Cameron,

Please see attached. We look forward to tomorrow's call. Kind regards,

**Jacob Canter**

Pronouns: he/him/his
Crowell & Moring LLP
jcanter@crowell.com
+1.415.365.7210 direct | +1.415.385.3716 mobile

---

**From:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Sent:** Tuesday, January 10, 2023 5:49 PM
**To:** Canter, Jacob <JCanter@crowell.com>
**Cc:** Hughes, Dalton <DHughes@crowell.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

External Email

Jacob -- Attached are our proposed revisions to the joint stipulation.  If this is acceptable, you have our permission to file with the court.  We do not agree to file the stipulation as originally drafted.

Cameron

**Cameron Ginder**

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 3757  **M** +1 260 414 9744
**F** +1 312 862 2200

cameron.ginder@kirkland.com

---

**From:** Canter, Jacob <JCanter@crowell.com>
**Sent:** Tuesday, January 10, 2023 5:26 PM
**To:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Cc:** Hughes, Dalton <DHughes@crowell.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

Hi Cameron, please see attached a draft stipulation.  Please let us know if we have your approval to file with the Court.

Kind regards,

**Jacob Canter**
Pronouns: he/him/his
Crowell & Moring LLP
jcanter@crowell.com
+1.415.365.7210 direct | +1.415.385.3716 mobile

**From:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Sent:** Tuesday, January 10, 2023 1:04 PM
**To:** Canter, Jacob <JCanter@crowell.com>
**Cc:** Hughes, Dalton <DHughes@crowell.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

External Email

Thanks, Jacob.  We'll take a look at the stip when you send it across.

We can meet and confer on Friday 9:30-10:30PT on Friday but have a hard stop at 10:30PT that cannot be moved.  If ROSS still believes a 90-minute meet and confer is necessary, we can look at next week.

**Cameron Ginder**

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 3757  **M** +1 260 414 9744
**F** +1 312 862 2200

cameron.ginder@kirkland.com

---

**From:** Canter, Jacob <JCanter@crowell.com>
**Sent:** Tuesday, January 10, 2023 12:51 PM
**To:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Cc:** Hughes, Dalton <DHughes@crowell.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

Cameron,

Thank you for the email.  We agree with your counterproposal and will prepare a joint stipulation, which we will send to you later today.

Also, we are available for a conferral regarding the discovery requests on this Friday, January 13.  We are available at any time between 9:30 AM PT and 11:00 AM PT.  Please let us know a time that works for you within that window.

**Jacob Canter**
Pronouns: he/him/his
Crowell & Moring LLP
jcanter@crowell.com
+1.415.365.7210 direct  |  +1.415.385.3716 mobile

---

**From:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Sent:** Tuesday, January 10, 2023 8:02 AM
**To:** Canter, Jacob <JCanter@crowell.com>

**Cc:** Hughes, Dalton <DHughes@crowell.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

External Email

Jacob -- See below for Thomson Reuters' counterproposal on a schedule extension.  Also, attached is Thomson Reuters' response to ROSS's December 29 letter.

| Task | Current Deadline | ROSS Proposal | TR Counter |
|---|---|---|---|
| Substantial Completion | January 12, 2023 | April 6, 2023 | February 23, 2023 |
| End of Fact Discovery | March 30, 2023 | June 22, 2023 | May 11, 2023 |
| Expert Reports | April 27, 2023 | July 20, 2023 | May 25, 2023 |
| Rebuttal Reports | May 25, 2023 | August 17, 2023 | June 22, 2023 |
| Reply Reports | June 22, 2023 | September 14, 2023 | July 20, 2023 |
| End of Expert Discovery | July 13, 2023 | October 5, 2023 | August 3, 2023 |
| Opening SJ Briefs | August 17, 2023 | November 9, 2023 | August 31, 2023 |
| SJ Opposition Briefs | September 14, 2023 | December 7, 2023 | September 28, 2023 |
| SJ Reply Briefs | October 12, 2023 | January 4, 2024 | October 26, 2023 |

Cameron

**Cameron Ginder**

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 3757  **M** +1 260 414 9744
**F** +1 312 862 2200

cameron.ginder@kirkland.com

**From:** Canter, Jacob <JCanter@crowell.com>
**Sent:** Monday, January 9, 2023 6:47 PM
**To:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Cc:** Hughes, Dalton <DHughes@crowell.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

Thank you, Cameron.  3:30 PT / 5:30 CT works on our end.  I will send an invite to you and Miranda and to your local counsel.  Can you please confirm that your local counsel will attend in case this is an opposed request?

**Jacob Canter**

Pronouns: he/him/his
Crowell & Moring LLP
jcanter@crowell.com
+1.415.365.7210 direct  |  +1.415.385.3716 mobile

---

**From:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Sent:** Monday, January 9, 2023 3:24 PM
**To:** Canter, Jacob <JCanter@crowell.com>
**Cc:** Hughes, Dalton <DHughes@crowell.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1; *dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** Re: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

External Email

I can be free before 2, from 3-4, and after 5ct.

**Cameron Ginder**

KIRKLAND & ELLIS LLP
300 North LaSalle, Chicago, IL 60654
T +1 312 862 3757  M +1 260 414 9744
F +1 312 862 2200

cameron.ginder@kirkland.com

> On Jan 9, 2023, at 5:15 PM, Canter, Jacob <JCanter@crowell.com> wrote:
>
> Thank you for the response, Cameron.  Given that the substantial completion deadline is Thurs., Jan 12, please let us know your availability to participate in a conferral (if necessary) on Tues., Jan 10, so we have adequate time to contact the court with the joint or opposed request.
>
> **Jacob Canter**
> Pronouns: he/him/his
> Crowell & Moring LLP
> jcanter@crowell.com
> +1.415.365.7210 direct  |  +1.415.385.3716 mobile

---

**From:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Sent:** Monday, January 9, 2023 2:34 PM
**To:** Canter, Jacob <JCanter@crowell.com>; Hughes, Dalton <DHughes@crowell.com>
**Cc:** Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

External Email

Jacob - We will have a response on the schedule by mid-day tomorrow.  We are also preparing a response to ROSS's most recent letter and can schedule a meet and confer then.

Cameron

**Cameron Ginder**

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 3757  **M** +1 260 414 9744
**F** +1 312 862 2200

cameron.ginder@kirkland.com

---

**From:** Canter, Jacob <JCanter@crowell.com>
**Sent:** Friday, January 6, 2023 2:42 PM
**To:** Ginder, Cameron <cameron.ginder@kirkland.com>; Hughes, Dalton <DHughes@crowell.com>
**Cc:** Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

Cameron,

Thank you for the response.  Please respond to the scheduling proposal by no later than **Monday January 9 at 11 PT** so that we can have enough time to confer and contact the court with either a joint or opposed request.

Also, we have not received a response to the letter regarding Plaintiffs' responses to RFPs 182-233, which I sent on December 29, 2022.  Please also let us know when you are available for a 90-minute final conferral in regards to the letter.  We have availability at the following times:

1. Monday Jan 9, 1:30-3 PT
2. Tuesday Jan 10, 2-4 PT
3. Wednesday Jan 11, 1-3 PT

Kind regards,

**Jacob Canter**
Pronouns: he/him/his
Crowell & Moring LLP
jcanter@crowell.com
+1.415.365.7210 direct  |  +1.415.385.3716 mobile

---

**From:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Sent:** Thursday, January 5, 2023 12:36 PM
**To:** Canter, Jacob <JCanter@crowell.com>; Hughes, Dalton <DHughes@crowell.com>
**Cc:** Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>;

19

[*bpalapura@potteranderson.com](mailto:bpalapura@potteranderson.com) <[bpalapura@potteranderson.com](mailto:bpalapura@potteranderson.com)>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

External Email

Jacob - We are considering your proposal and will get you an answer early next week.  We can confer, if needed, at that time.

Cameron

**Cameron Ginder**

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 3757  **M** +1 260 414 9744
**F** +1 312 862 2200

[cameron.ginder@kirkland.com](mailto:cameron.ginder@kirkland.com)

---

**From:** Canter, Jacob <[JCanter@crowell.com](mailto:JCanter@crowell.com)>
**Sent:** Thursday, January 5, 2023 12:02 PM
**To:** Ginder, Cameron <[cameron.ginder@kirkland.com](mailto:cameron.ginder@kirkland.com)>; Hughes, Dalton <[DHughes@crowell.com](mailto:DHughes@crowell.com)>
**Cc:** Means, Miranda <[miranda.means@kirkland.com](mailto:miranda.means@kirkland.com)>; #Thomson-Ross <[thomson-ross@kirkland.com](mailto:thomson-ross@kirkland.com)>; [mflynn@morrisnichols.com](mailto:mflynn@morrisnichols.com); [jblumenfeld@morrisnichols.com](mailto:jblumenfeld@morrisnichols.com); ROSS Lit Team <[Rosslitteam@crowell.com](mailto:Rosslitteam@crowell.com)>; [*dmoore@Potteranderson.com1](mailto:dmoore@Potteranderson.com) <[dmoore@Potteranderson.com](mailto:dmoore@Potteranderson.com)>; [*bpalapura@potteranderson.com](mailto:bpalapura@potteranderson.com) <[bpalapura@potteranderson.com](mailto:bpalapura@potteranderson.com)>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

Hello Cameron and Miranda,

Please let us know if you agree to the proposed schedule or would like to discuss tomorrow. Because both sides still have significant outstanding discovery issues to resolve, we think this extension makes sense.   The letter is reattached.

Kind regards,

**Jacob Canter**
Pronouns: he/him/his
Crowell & Moring LLP
[jcanter@crowell.com](mailto:jcanter@crowell.com)
+1.415.365.7210 direct  |  +1.415.385.3716 mobile

---

**From:** Canter, Jacob <[JCanter@crowell.com](mailto:JCanter@crowell.com)>
**Sent:** Friday, December 30, 2022 12:23 PM
**To:** Ginder, Cameron <[cameron.ginder@kirkland.com](mailto:cameron.ginder@kirkland.com)>; Hughes, Dalton <[DHughes@crowell.com](mailto:DHughes@crowell.com)>
**Cc:** Means, Miranda <[miranda.means@kirkland.com](mailto:miranda.means@kirkland.com)>; #Thomson-Ross <[thomson-ross@kirkland.com](mailto:thomson-ross@kirkland.com)>; [mflynn@morrisnichols.com](mailto:mflynn@morrisnichols.com); [jblumenfeld@morrisnichols.com](mailto:jblumenfeld@morrisnichols.com); ROSS Lit Team <[Rosslitteam@crowell.com](mailto:Rosslitteam@crowell.com)>; [*dmoore@Potteranderson.com1](mailto:dmoore@Potteranderson.com) <[dmoore@Potteranderson.com](mailto:dmoore@Potteranderson.com)>; [*bpalapura@potteranderson.com](mailto:bpalapura@potteranderson.com) <[bpalapura@potteranderson.com](mailto:bpalapura@potteranderson.com)>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

Hello Cameron and Miranda,

Please see the attached letter.  Kind regards,


**Jacob Canter**
Pronouns: he/him/his
Crowell & Moring LLP
jcanter@crowell.com
+1.415.365.7210 direct  |  +1.415.385.3716 mobile

---

**From:** Canter, Jacob <JCanter@crowell.com>
**Sent:** Thursday, December 29, 2022 6:26 PM
**To:** Ginder, Cameron <cameron.ginder@kirkland.com>; Hughes, Dalton <DHughes@crowell.com>
**Cc:** Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

Hello Cameron and Miranda,

Please see the attached letter.  Kind regards,


**Jacob Canter**
Pronouns: he/him/his
Crowell & Moring LLP
jcanter@crowell.com
+1.415.365.7210 direct  |  +1.415.385.3716 mobile

---

**From:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Sent:** Wednesday, November 23, 2022 3:36 PM
**To:** Hughes, Dalton <DHughes@crowell.com>
**Cc:** Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** Re: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

External Email

Thanks, Dalton. Thursday works.

Have a nice Thanksgiving.

**Cameron Ginder**

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 3757  **M** +1 260 414 9744
**F** +1 312 862 2200

cameron.ginder@kirkland.com

On Nov 23, 2022, at 3:05 PM, Hughes, Dalton <DHughes@crowell.com> wrote:

Cameron,

We are available from 11:30-2:30 PT Thursday Dec. 1st, and 10:30-12 PT Friday Dec. 2nd.

Thank you,
Dalton

**Dalton Kyle Hughes**
Pronouns: he/him/his
Crowell & Moring LLP
dhughes@crowell.com
+1.312.840.3253 direct  |  +1.615.426.7320 mobile

---

**From:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Sent:** Tuesday, November 22, 2022 8:22 PM
**To:** Hughes, Dalton <DHughes@crowell.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com
**Cc:** ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

External Email

Dalton/Joachim - Please see attached.

We are not available to meet and confer at the times you mentioned below.  Please let us know your availability on Thursday and Friday of next week.

Thanks,
Cameron

**Cameron Ginder**

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 3757  **M** +1 260 414 9744
**F** +1 312 862 2200

cameron.ginder@kirkland.com

**From:** Hughes, Dalton <DHughes@crowell.com>
**Sent:** Monday, November 21, 2022 2:06 PM
**To:** Ginder, Cameron <cameron.ginder@kirkland.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com
**Cc:** ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

Cameron,

We have still not received a response to our November 7, 2022 letter regarding Plaintiffs' responses to our RFPs. Please provide your availability to meet and confer on Monday or Tuesday of next week. We are available at 10:30 AM PT, 2:00 PM PT, and 4:00 PM PT on Monday, November 28; and 9:30 AM PT, 12:00 PM PT, and 3:00 PM PT on Tuesday, November 29.

Best regards,
Dalton


**Dalton Kyle Hughes**
Pronouns: he/him/his
Crowell & Moring LLP
dhughes@crowell.com
+1.312.840.3253 direct  |  +1.615.426.7320 mobile

**From:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Sent:** Tuesday, November 15, 2022 8:22 AM
**To:** Hughes, Dalton <DHughes@crowell.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com
**Cc:** ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

External Email

Dalton - We are preparing a written response to your letter.

Thanks,
Cameron

**Cameron Ginder**
KIRKLAND & ELLIS LLP
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 3757  **M** +1 260 414 9744
**F** +1 312 862 2200

cameron.ginder@kirkland.com

---

**From:** Hughes, Dalton <DHughes@crowell.com>
**Sent:** Monday, November 14, 2022 3:05 PM
**To:** Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com
**Cc:** ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

Counsel,

Please let us know Plaintiffs' positions on the RFPs in the letter sent below. If Plaintiffs will not produce the documents as requested, then let us know your availability to meet and confer as to these requests.

Best regards,
Dalton

**Dalton Kyle Hughes**
Pronouns: he/him/his
Crowell & Moring LLP
dhughes@crowell.com
+1.312.840.3253 direct  |  +1.615.426.7320 mobile

---

**From:** Hughes, Dalton <DHughes@crowell.com>
**Sent:** Monday, November 7, 2022 2:58 PM
**To:** Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com
**Cc:** ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

Counsel,

Please see the attached letter.

Best regards,
Dalton

**Dalton Kyle Hughes**
Pronouns: he/him/his
dhughes@crowell.com

+1.312.840.3253 direct   |   +1.615.426.7320 mobile

Crowell & Moring LLP
455 North Cityfront Plaza Drive
Suite 3600
Chicago, IL 60611

# Crowell

**Collaboration Powers Success**

crowell.com
Trade Secrets Trends Blog

This message may contain privileged and confidential information. IF IT WAS SENT TO YOU BY MISTAKE, DO NOT READ IT. Instead, please notify the sender (or postmaster@crowell.com) by reply e-mail, and delete this e-mail. Unauthorized dissemination, forwarding or copying of this e-mail is strictly prohibited.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of

this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

# EXHIBIT S

**Canter, Jacob**

| | |
|---|---|
| **From:** | Canter, Jacob |
| **Sent:** | Wednesday, March 29, 2023 4:58 PM |
| **To:** | Ginder, Cameron; Means, Miranda; #Thomson-Ross; mflynn@morrisnichols.com |
| **Cc:** | ROSS-AT Team; Moore, David E.; Palapura, Bindu A.; Brown, Andrew L. |
| **Subject:** | RE: West v ROSS | List of Custodians |

Cameron,

I inadvertently left **Heather Miller-Sammons** off of my list of below names. My apologies. Please add her name to the below list of custodians. Thank you,

**Jacob Canter**
Pronouns: he/him/his
Crowell & Moring LLP
jcanter@crowell.com
+1.415.365.7210 direct  |  +1.415.385.3716 mobile

---

**From:** Canter, Jacob <JCanter@crowell.com>
**Sent:** Wednesday, March 29, 2023 11:14 AM
**To:** Ginder, Cameron <cameron.ginder@kirkland.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com
**Cc:** ROSS-AT Team <ROSS-ATTeam@crowell.com>; Moore, David E. <dmoore@potteranderson.com>; Palapura, Bindu A. <bpalapura@potteranderson.com>; Brown, Andrew L. <abrown@potteranderson.com>
**Subject:** West v ROSS | List of Custodians

Dear Cameron:

We write regarding the production of additional discovery in light of the Tuesday, March 28 ruling by the Court.

First, please let us know the list of custodians you will query as a result of Tuesday's discovery order. The ruling has made the current custodian list untenable. Please also confirm you will expand your current custodian list with these individuals for the documents and searches you have already produced in line with the above.

Second, even prior to Tuesday's discovery order, Plaintiffs' list of custodians was inadequate as it did not capture all relevant individuals with discoverable information. The following custodians were not queried although their names appear on a large number of relevant documents, indicating that those custodians must possess relevant information—or their names appear on important relevant documents, indicating that they must possess important relevant documents. Please produce documents with these individuals under current searches and for all new relevant time periods as outlined above.

1. David Curle
2. Kati Katzenmeyer
3. Bob Biancamano
4. Andrea Seitz
5. Audrey Zhang
6. Lauren Sazenski
7. Mark Hoerr

1

8.  Vinod Kumar
9.  Rachel Vesely
10. Aimee Doles
11. Jenny Deutsch
12. Ben Davis
13. Eric Gleason
14. Maria Redmond
15. Joe Dvorkin
16. David Curle
17. legalmarketingleadership@thomson.com

Third, please let us know when Plaintiffs will be producing documents consistent with the Court's Tuesday order and the additional custodians referenced above. Please provide a date certain on when the documents will be produced. If you do not provide us a date certain within the week, we will need to go to the Court to request a date certain due to the impending discovery deadline.

Regards,

**Jacob Canter**
Pronouns: he/him/his
jcanter@crowell.com
+1.415.365.7210 direct   |   +1.415.385.3716 mobile
LinkedIn

Crowell & Moring LLP
3 Embarcadero Center
26th Floor
San Francisco, CA 94111

# Crowell

**Collaboration Powers Success**

crowell.com

This message may contain privileged and confidential information. IF IT WAS SENT TO YOU BY MISTAKE, DO NOT READ IT. Instead, please notify the sender (or postmaster@crowell.com) by reply e-mail, and delete this e-mail. Unauthorized dissemination, forwarding or copying of this e-mail is strictly prohibited.

# EXHIBIT T

## Canter, Jacob

| | |
|---|---|
| **From:** | Poueymirou, Margaux |
| **Sent:** | Friday, March 31, 2023 11:41 PM |
| **To:** | Barsanti, Vanessa; Canter, Jacob; Ginder, Cameron; Means, Miranda; #Thomson-Ross; mflynn@morrisnichols.com |
| **Cc:** | ROSS-AT Team; *dmoore@Potteranderson.com1; *bpalapura@potteranderson.com; Brown, Andrew L. |
| **Subject:** | RE: West v ROSS | List of Custodians |

Vanessa:

Ross is entitled to additional custodians at this time—and our request should come as no surprise. All eight custodians you identified and produced hold, or held, senior, high-level positions at Westlaw. We have persistently indicated that we would likely need more junior level custodians but were willing to make this determination once we reviewed discovery. You made your first production approximately 7 weeks ago, after a several month delay. Unsurprisingly, our review of your productions has revealed the inadequacy of your eight custodians—and our valid need for more junior level custodians, as well as for custodians who worked in different departments. It is an unremarkable fact of litigation that new custodians are borne from document review.

The additional custodians we have identified held varying roles at Westlaw and worked across departments. Our review of documents on which they appear by happenstance strongly suggests that these employees' emails, internal blog posts, and PowerPoint creations—among other communications—are highly probative of the central issues in this case.

Finally, in light of the Court's rejection of your arguments regarding the relevant temporal scope of discovery, you have an affirmative duty to identify promptly additional relevant custodians who worked at Westlaw consistent with the temporal scope ordered by the Court.

Given the approaching discovery cut off, we would like to schedule a meet and confer on Monday or Tuesday to discuss the foregoing. Please let us know of your availability.

Thanks very much,

**Margaux Poueymirou\***
Pronouns: she/her/hers
Crowell & Moring LLP
mpoueymirou@crowell.com
+1.415.365.7243 direct   |   +917-685-9775 mobile

\*Licensed to practice in New York Only and under the Supervision of the Partners of Crowell & Moring LLP. Not admitted in California.

**From:** Barsanti, Vanessa <vanessa.barsanti@kirkland.com>
**Sent:** Friday, March 31, 2023 8:32 AM
**To:** Canter, Jacob <JCanter@crowell.com>; Ginder, Cameron <cameron.ginder@kirkland.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com
**Cc:** ROSS-AT Team <ROSS-ATTeam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>; Brown, Andrew L.

<abrown@potteranderson.com>
**Subject:** RE: West v ROSS | List of Custodians

External Email

Jacob,

I write in response to your March 29 email below.

First, in complying with the Court's March 29 order, Thomson Reuters will use the same custodians the parties previously agreed to.  As an initial matter, Thomson Reuters disclosed its custodian list on January 24, 2023.  The next day, at ROSS's request, we provided information about those custodians' tenure and job titles.  The parties then exchanged several rounds of correspondence and discussed this issue on multiple meet and confers.  As a result, Thomson Reuters agreed to search for and export information from its sales platform, Conga, which I've confirmed is in progress. After the parties reached that agreement, ROSS raised no further issues with Thomson Reuters' proposed custodians in any further discovery letter or in any meet and confer.  Thomson Reuters collected, reviewed, and produced documents based on the parties' agreed custodians and search terms.  Further, nothing in the Court's ruling makes "the current custodian list untenable."  The *only* issue before the Court was the temporal scope of Thomson Reuters' production.  And, as is clear from the employment history that we provided over two months ago, Thomson Reuters' custodians have *significant* employment histories at Thomson Reuters and West Publishing, dating back to the early 1990s. **None** of the newly requested custodians have such lengthy employment histories.

Second, your contention that Thomson Reuters' custodian list "did not capture all relevant individuals with discoverable information" is besides the point.  Nothing requires Thomson Reuters to collect, review, and produce documents from <u>every</u> employee with potentially relevant information.  And, as you note, the names on your list "appear on a large number of relevant documents."  If anything, this proves that Thomson Reuters' custodian list is, in fact, targeted to capturing relevant information. ROSS has not shown that any of these individuals would be likely to have unique relevant information to its claims.

Third, the parties reached final impasse on the temporal scope of Thomson Reuters' production on February 17.  ROSS then waited a month to file its motion to compel.  While we are working to meet the current May 11 discovery deadline, Thomson Reuters is not in a position, at this time, to "provide a date certain" for when it will make its supplemental production consistent with the Court's March 29 order.  As you know, and as we explained in meet and confers and in our briefing on ROSS's motion to compel, it takes time to collect, review, and produce documents.  Thomson Reuters is acting diligently and expeditiously to meet the current discovery deadline.  Indeed, we started the collection process for the prior agreed to custodians immediately after the hearing.  However, we only have so much control over how long it will take to collect these documents and cannot make the process go any quicker than technology and Thomson Reuters' systems allow.  We will work as quickly as possible and keep ROSS apprised of our progress, and will implement rolling productions.

**Vanessa Barsanti**
She/Her/Hers
––––––––––––––––––––––
**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 2205
**F** +1 312 862 2200
––––––––––––––––––––––
vanessa.barsanti@kirkland.com

**From:** Canter, Jacob <JCanter@crowell.com>
**Sent:** Wednesday, March 29, 2023 4:58 PM
**To:** Ginder, Cameron <cameron.ginder@kirkland.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com

2

**Cc:** ROSS-AT Team <ROSS-ATTeam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>; Brown, Andrew L. <abrown@potteranderson.com>
**Subject:** RE: West v ROSS | List of Custodians

Cameron,

I inadvertently left **Heather Miller-Sammons** off of my list of below names. My apologies. Please add her name to the below list of custodians. Thank you,


**Jacob Canter**
Pronouns: he/him/his
Crowell & Moring LLP
jcanter@crowell.com
+1.415.365.7210 direct   |   +1.415.385.3716 mobile

---

**From:** Canter, Jacob <JCanter@crowell.com>
**Sent:** Wednesday, March 29, 2023 11:14 AM
**To:** Ginder, Cameron <cameron.ginder@kirkland.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com
**Cc:** ROSS-AT Team <ROSS-ATTeam@crowell.com>; Moore, David E. <dmoore@potteranderson.com>; Palapura, Bindu A. <bpalapura@potteranderson.com>; Brown, Andrew L. <abrown@potteranderson.com>
**Subject:** West v ROSS | List of Custodians

Dear Cameron:

We write regarding the production of additional discovery in light of the Tuesday, March 28 ruling by the Court.

First, please let us know the list of custodians you will query as a result of Tuesday's discovery order. The ruling has made the current custodian list untenable. Please also confirm you will expand your current custodian list with these individuals for the documents and searches you have already produced in line with the above.

Second, even prior to Tuesday's discovery order, Plaintiffs' list of custodians was inadequate as it did not capture all relevant individuals with discoverable information. The following custodians were not queried although their names appear on a large number of relevant documents, indicating that those custodians must possess relevant information—or their names appear on important relevant documents, indicating that they must possess important relevant documents. Please produce documents with these individuals under current searches and for all new relevant time periods as outlined above.

1. David Curle
2. Kati Katzenmeyer
3. Bob Biancamano
4. Andrea Seitz
5. Audrey Zhang
6. Lauren Sazenski
7. Mark Hoerr
8. Vinod Kumar
9. Rachel Vesely
10. Aimee Doles
11. Jenny Deutsch
12. Ben Davis

13. Eric Gleason
14. Maria Redmond
15. Joe Dvorkin
16. David Curle
17. legalmarketingleadership@thomson.com

Third, please let us know when Plaintiffs will be producing documents consistent with the Court's Tuesday order and the additional custodians referenced above. Please provide a date certain on when the documents will be produced. If you do not provide us a date certain within the week, we will need to go to the Court to request a date certain due to the impending discovery deadline.

Regards,

**Jacob Canter**
Pronouns: he/him/his
jcanter@crowell.com
+1.415.365.7210 direct   |   +1.415.385.3716 mobile
LinkedIn

Crowell & Moring LLP
3 Embarcadero Center
26th Floor
San Francisco, CA 94111

# Crowell

**Collaboration Powers Success**

crowell.com

This message may contain privileged and confidential information. IF IT WAS SENT TO YOU BY MISTAKE, DO NOT READ IT. Instead, please notify the sender (or postmaster@crowell.com) by reply e-mail, and delete this e-mail. Unauthorized dissemination, forwarding or copying of this e-mail is strictly prohibited.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

# EXHIBIT U

**Canter, Jacob**

| | |
|---|---|
| **From:** | Means, Miranda <miranda.means@kirkland.com> |
| **Sent:** | Thursday, June 2, 2022 12:20 PM |
| **To:** | Steinberg, Joachim |
| **Cc:** | ROSS Lit Team; #Thomson-Ross; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; *dmoore@Potteranderson.com1; *bpalapura@potteranderson.com |
| **Subject:** | RE: Thomson Reuters v. ROSS - Expert Schedule |

External Email

Dear Joachim,

We are preparing a stipulation and will circulate that shortly.   In terms of the antitrust and unfair competition deadlines, we do not think that such a long time is necessary for the substantial completion of document productions.   Indeed, when ROSS said it would consider nine months, we took it to mean nine months from the original deadlines, not nine months going forward.  That said, our counter-proposal is below, which we think strikes a middle-ground between the parties' respective positions.

| Event | ROSS's Proposed Deadlines | Plaintiffs' Proposed Deadlines |
|---|---|---|
| Substantial Completion of Document Productions | February 3, 2023 | October 4, 2022 |
| End of Fact Discovery | April 20, 2023 | February 3, 2023 |
| Expert Reports | May 18, 2023 | March 7, 2023 |
| Rebuttal Expert Reports | June 15, 2023 | April 7, 2023 |
| Reply Expert Reports | July 13, 2023 | May 9, 2023 |
| Close of Expert Discovery | August 10, 2023 | June 6, 2023 |
| Summary Judgment Briefs | September 7, 2023 | July 11, 2023 |
| Summary Judgment Opposition Briefs | October 5, 2023 | August 11, 2023 |
| Summary Judgment Reply Briefs | November 2, 2023 | September 12, 2023 |

In terms of our statement on how much there is left to discuss, our point was simply that there are certain discrete issues that the parties have been negotiating, and that we're not expecting new, additional issues to arise at this stage.  We do not think it makes sense to build discrete final meet-and-confer deadlines into the schedule, and doing so does not appear to be this court's normal practice.  If there are issues where the parties are at an impasse and a final meet and confer is appropriate, then we can schedule a final meet and confer, as we have done on numerous issues.

Best regards,
Miranda

**Miranda Means**
She/Her/Hers
─────────────────────────
**KIRKLAND & ELLIS LLP**
200 Clarendon Street, Boston, MA 02116
**T**  +1 617 385 7419
**M** +1 617 320 9248

1

miranda.means@kirkland.com

**From:** Steinberg, Joachim <JSteinberg@crowell.com>
**Sent:** Friday, May 27, 2022 7:06 PM
**To:** Means, Miranda <miranda.means@kirkland.com>
**Cc:** ROSS Lit Team <Rosslitteam@crowell.com>; #Thomson-Ross <thomson-ross@kirkland.com>;
mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; *dmoore@Potteranderson.com1
<dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters v. ROSS - Expert Schedule

Miranda,

We can agree to that schedule. Can you prepare a stipulation? We can also agree that we do not need a formal
stipulation as to good cause to re-open copyright discovery.

For the other issues, we have been preparing letters, but your prior email indicated that you did not think there was
much left to discuss. Given your statement, we think it makes sense to proceed to final meet and confers on all of the
outstanding issues immediately. If, on the other hand, you still think the meet and confer process would be fruitful, then
we will continue to provide our positions in letters, but think that with the schedule that both sides are agreeing to, it
makes sense for us to build in a date for final meet and confers on these issues.

For antitrust and unfair competition discovery, we have discussed it internally, and still believe that a year from the
original deadlines, which would be 9 months going forward, would be the most workable schedule. Our proposal, given
that antitrust discovery and unfair competition has not yet begun, would be:

| Event | Proposed Deadline |
| --- | --- |
| Substantial Completion of Document Productions | February 3, 2023 |
| End of Fact Discovery | April 20, 2023 |
| Expert Reports | May 18, 2023 |
| Rebuttal Expert Reports | June 15, 2023 |
| Reply Expert Reports | July 13, 2023 |
| Close of Expert Discovery | August 10, 2023 |
| Summary Judgment Briefs | September 7, 2023 |
| Summary Judgment Opposition Briefs | October 5, 2023 |
| Summary Judgment Reply Briefs | November 2, 2023 |

Best regards,
Joachim

**Joachim B. Steinberg**
Pronouns: he/him/his
Crowell & Moring LLP
jsteinberg@crowell.com
+1.415.365.7461 direct  |  +1.917.575.6244 mobile

2

**From:** Means, Miranda <miranda.means@kirkland.com>
**Sent:** Friday, May 27, 2022 9:59 AM
**To:** Steinberg, Joachim <JSteinberg@crowell.com>
**Cc:** ROSS Lit Team <Rosslitteam@crowell.com>; #Thomson-Ross <thomson-ross@kirkland.com>;
mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; *dmoore@Potteranderson.com1
<dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters v. ROSS - Expert Schedule

External Email

Dear Joachim,

We can move the rebuttal report deadline, but the November close of expert discovery would not work for us.  So we think it makes sense to make the reply report deadline a week shorter and keep the close of expert discovery November 4.  Does that work for your team?  In terms of the anti-trust schedule, we had proposed pushing things out by six months, rather than the year that ROSS initially proposed.  During the meet and confer, you told us that ROSS would consider nine months, as six months seemed too short, but said ROSS would get back to us on that part of the schedule.  We have been waiting to hear from you on that -- please let us know ROSS's position.

| Event | Plaintiffs' Proposed Deadline | ROSS's Counter Proposal | Plaintiff's New Proposal |
|---|---|---|---|
| Expert Reports | July 18, 2022 | July 18, 2022 | July 18, 2022 |
| Rebuttal Expert Reports | August 30, 2022 | September 6, 2022 | September 6, 2022 |
| Reply Expert Reports | October 10, 2022 | October 17, 2022 | October 10, 2022 |
| Close of Expert Discovery | November 4, 2022 | November 11, 2022 | November 4, 2022 |
| Summary Judgment Briefs | December 22, 2022 | December 22, 2022 | December 22, 2022 |
| Summary Judgment Opposition Briefs | January 30, 2023 | January 30, 2023 | January 30, 2023 |
| Summary Judgment Reply Briefs | March 1, 2023 | March 1, 2023 | March 1, 2023 |

In terms of the stipulation, we still do not think it makes sense and it's not clear what such a stipulation would accomplish.  If either party wants to re-open copyright discovery for good cause, the parties can meet and confer on the specific issue and file a stipulation or motion.  Given that copyright fact discovery is now closed and to re-open it would require permission of the court regardless, dealing with this issue if it arises, rather than in an abstract stipulation, seems like the better approach.  If, however, you think a stipulation achieves a different purpose, can you propose language and let us know how it would vary from the ordinary rules?

With regard to the Westlaw financial data and RFP responses, based on the parties' meet and confers to date, Plaintiffs had understood that ROSS would be sending a letter on that last week, so we were looking out for that.  With respect to the licensing agreement documents, we understood there was some overlap with the forthcoming letter.  We have not received such a letter.  Is ROSS still planning on sending such correspondence?  We are in the process of looking into Mr. Cavalieri's documents, and plan to respond shortly on that issue.  As you saw, Eric has separately scheduled a meet and confer on the source code.

Best regards,
Miranda

**Miranda Means**
She/Her/Hers
_____

**KIRKLAND & ELLIS LLP**
200 Clarendon Street, Boston, MA 02116
**T** +1 617 385 7419
**M** +1 617 320 9248

miranda.means@kirkland.com

**From:** Steinberg, Joachim <JSteinberg@crowell.com>
**Sent:** Tuesday, May 24, 2022 5:53 PM
**To:** Means, Miranda <miranda.means@kirkland.com>
**Cc:** ROSS Lit Team <Rosslitteam@crowell.com>; #Thomson-Ross <thomson-ross@kirkland.com>;
mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; *dmoore@Potteranderson.com1
<dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters v. ROSS - Expert Schedule

Miranda,

We can generally agree with that schedule, but with one modification: could we move the rebuttal deadline and discovery deadlines back one week, and otherwise keep the schedule intact? In the alternative, we would be open to a schedule with one less week for reply reports, in order to move the rebuttal report deadline by one week (i.e., Rebuttal reports would be due September 6, reply reports due October 10). Please let us know if either of those options works for you.

| Event | Plaintiffs' Proposed Deadline | ROSS's Counter Proposal |
|---|---|---|
| Expert Reports | July 18, 2022 | July 18, 2022 |
| Rebuttal Expert Reports | August 30, 2022 | September 6, 2022 |
| Reply Expert Reports | October 10, 2022 | October 17, 2022 |
| Close of Expert Discovery | November 4, 2022 | November 11, 2022 |
| Summary Judgment Briefs | December 22, 2022 | December 22, 2022 |
| Summary Judgment Opposition Briefs | January 30, 2023 | January 30, 2023 |
| Summary Judgment Reply Briefs | March 1, 2023 | March 1, 2023 |

For the stipulation we requested, I think we may actually be closer to an agreement than your email suggests. We are not asking for either party to have the unilateral right to re-open copyright discovery, but instead, a stipulation that we could re-open portions of copyright discovery for good cause. We think that standard would address the concerns you list below and we are happy to spend some time developing language that encompasses those concerns.

As for a final deadline for meet and confers, if, per your email, there is not "much more left to discuss" on existing disputes, then please provide some times later this week or early next for final meet and confers on Plaintiffs' licensing documents; Westlaw Financial Data; Plaintiffs' responses to RFPs Nos. 96-99, 111-115, 128-29, and 131; the Andrew Cavalieri documents; and Plaintiffs' production of source code.

Please also let us know your proposal for antitrust discovery.

Kind regards,
Joachim

**Joachim B. Steinberg**

4

Pronouns: he/him/his
Crowell & Moring LLP
jsteinberg@crowell.com
+1.415.365.7461 direct  |  +1.917.575.6244 mobile

**From:** Means, Miranda <miranda.means@kirkland.com>
**Sent:** Monday, May 23, 2022 9:32 AM
**To:** Steinberg, Joachim <JSteinberg@crowell.com>
**Cc:** ROSS Lit Team <Rosslitteam@crowell.com>; #Thomson-Ross <thomson-ross@kirkland.com>;
mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; *dmoore@Potteranderson.com1
<dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** Thomson Reuters v. ROSS - Expert Schedule

External Email

Dear Joachim,

Plaintiffs have considered ROSS's proposal to set the expert report deadlines starting either in September or the week of July 18.  September does not work for our team and pushes the schedule out too far, but the week of July 18 should work, as outlined below.  In light of James Malackowski's limited availability, for the below schedule to work, we would need to schedule his deposition on November 3 or November 4.  Would that work for your team?

| Event | Plaintiffs' Proposed Deadline |
|---|---|
| Expert Reports | July 18, 2022 |
| Rebuttal Expert Reports | August 30, 2022 |
| Reply Expert Reports | October 10, 2022 |
| Close of Expert Discovery | November 4, 2022 |
| Summary Judgment Briefs | December 22, 2022 |
| Summary Judgment Opposition Briefs | January 30, 2023 |
| Summary Judgment Reply Briefs | March 1, 2023 |

During the meet and confer, ROSS made two other proposals.  *First*, ROSS asked for a stipulation permitting copyright discovery to be reopened.   Plaintiffs cannot agree to such a broad stipulation.  Giving both parties unilateral authority to reopen discovery at any time could cause further delays in this case, and it's unclear what it would mean to "re-open discovery" at a later point (i.e. would it mean unlimited new requests and depositions or more limited, tailored discovery).   Rather, we think it makes more sense to approach this issue on a case-by-case basis.  If either party thinks something it discovers in anti-trust discovery makes it necessary to re-open discovery in the copyright side of the case, then the parties can discuss what specific additional copyright discovery might make sense (e.g. an additional RFP, an additional hour with a witness, etc.).  But we think it makes more sense to cross that bridge if it comes up, rather than agree to such a broad stipulation.

*Second*, ROSS proposed building final meet and confer deadlines into the schedule.  This does not seem necessary.  To the extent ROSS has new issues it wishes to raise related to copyright fact discovery, at this stage we think it would be too late to do so.   With regard to the issues ROSS has already raised, on which the parties have been conferring, we don't envision there being much more left to discuss.

Best regards,

Miranda

**Miranda Means**
She/Her/Hers

**KIRKLAND & ELLIS LLP**
200 Clarendon Street, Boston, MA 02116
**T**  +1 617 385 7419
**M** +1 617 320 9248

miranda.means@kirkland.com

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

# EXHIBIT V

**Canter, Jacob**

| | |
|---|---|
| **From:** | Ginder, Cameron <cameron.ginder@kirkland.com> |
| **Sent:** | Tuesday, January 10, 2023 8:02 AM |
| **To:** | Canter, Jacob |
| **Cc:** | Hughes, Dalton; Means, Miranda; #Thomson-Ross; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team; *dmoore@Potteranderson.com1; *bpalapura@potteranderson.com |
| **Subject:** | RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233 |
| **Attachments:** | 2023-01-10 TR Resp. Letter re RFPs.pdf |

External Email

Jacob -- See below for Thomson Reuters' counterproposal on a schedule extension.  Also, attached is Thomson Reuters' response to ROSS's December 29 letter.

| Task | Current Deadline | ROSS Proposal | TR Counter |
|---|---|---|---|
| Substantial Completion | January 12, 2023 | April 6, 2023 | February 23, 2023 |
| End of Fact Discovery | March 30, 2023 | June 22, 2023 | May 11, 2023 |
| Expert Reports | April 27, 2023 | July 20, 2023 | May 25, 2023 |
| Rebuttal Reports | May 25, 2023 | August 17, 2023 | June 22, 2023 |
| Reply Reports | June 22, 2023 | September 14, 2023 | July 20, 2023 |
| End of Expert Discovery | July 13, 2023 | October 5, 2023 | August 3, 2023 |
| Opening SJ Briefs | August 17, 2023 | November 9, 2023 | August 31, 2023 |
| SJ Opposition Briefs | September 14, 2023 | December 7, 2023 | September 28, 2023 |
| SJ Reply Briefs | October 12, 2023 | January 4, 2024 | October 26, 2023 |

Cameron

**Cameron Ginder**

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 3757  **M** +1 260 414 9744
**F** +1 312 862 2200

cameron.ginder@kirkland.com

---

**From:** Canter, Jacob <JCanter@crowell.com>
**Sent:** Monday, January 9, 2023 6:47 PM
**To:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Cc:** Hughes, Dalton <DHughes@crowell.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

1

Thank you, Cameron.  3:30 PT / 5:30 CT works on our end.  I will send an invite to you and Miranda and to your local counsel.  Can you please confirm that your local counsel will attend in case this is an opposed request?

**Jacob Canter**
Pronouns: he/him/his
Crowell & Moring LLP
jcanter@crowell.com
+1.415.365.7210 direct  |  +1.415.385.3716 mobile

---

**From:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Sent:** Monday, January 9, 2023 3:24 PM
**To:** Canter, Jacob <JCanter@crowell.com>
**Cc:** Hughes, Dalton <DHughes@crowell.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** Re: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

> External Email

I can be free before 2, from 3-4, and after 5ct.

**Cameron Ginder**

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 3757  **M** +1 260 414 9744
**F** +1 312 862 2200

cameron.ginder@kirkland.com

On Jan 9, 2023, at 5:15 PM, Canter, Jacob <JCanter@crowell.com> wrote:

Thank you for the response, Cameron.  Given that the substantial completion deadline is Thurs., Jan 12, please let us know your availability to participate in a conferral (if necessary) on Tues., Jan 10, so we have adequate time to contact the court with the joint or opposed request.

**Jacob Canter**
Pronouns: he/him/his
Crowell & Moring LLP
jcanter@crowell.com
+1.415.365.7210 direct  |  +1.415.385.3716 mobile

---

**From:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Sent:** Monday, January 9, 2023 2:34 PM
**To:** Canter, Jacob <JCanter@crowell.com>; Hughes, Dalton <DHughes@crowell.com>
**Cc:** Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team

<Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>;
*bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

External Email

Jacob - We will have a response on the schedule by mid-day tomorrow.  We are also preparing a
response to ROSS's most recent letter and can schedule a meet and confer then.

Cameron

**Cameron Ginder**

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 3757  **M** +1 260 414 9744
**F** +1 312 862 2200

cameron.ginder@kirkland.com

---

**From:** Canter, Jacob <JCanter@crowell.com>
**Sent:** Friday, January 6, 2023 2:42 PM
**To:** Ginder, Cameron <cameron.ginder@kirkland.com>; Hughes, Dalton <DHughes@crowell.com>
**Cc:** Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>;
mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team
<Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>;
*bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

Cameron,

Thank you for the response.  Please respond to the scheduling proposal by no later than **Monday
January 9 at 11 PT** so that we can have enough time to confer and contact the court with either a joint
or opposed request.

Also, we have not received a response to the letter regarding Plaintiffs' responses to RFPs 182-233,
which I sent on December 29, 2022.  Please also let us know when you are available for a 90-minute final
conferral in regards to the letter.  We have availability at the following times:

1. Monday Jan 9, 1:30-3 PT
2. Tuesday Jan 10, 2-4 PT
3. Wednesday Jan 11, 1-3 PT

Kind regards,

**Jacob Canter**
Pronouns: he/him/his
Crowell & Moring LLP
jcanter@crowell.com
+1.415.365.7210 direct  |  +1.415.385.3716 mobile

**From:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Sent:** Thursday, January 5, 2023 12:36 PM
**To:** Canter, Jacob <JCanter@crowell.com>; Hughes, Dalton <DHughes@crowell.com>
**Cc:** Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

External Email

Jacob - We are considering your proposal and will get you an answer early next week.  We can confer, if needed, at that time.

Cameron

**Cameron Ginder**

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 3757  **M** +1 260 414 9744
**F** +1 312 862 2200

cameron.ginder@kirkland.com

---

**From:** Canter, Jacob <JCanter@crowell.com>
**Sent:** Thursday, January 5, 2023 12:02 PM
**To:** Ginder, Cameron <cameron.ginder@kirkland.com>; Hughes, Dalton <DHughes@crowell.com>
**Cc:** Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

Hello Cameron and Miranda,

Please let us know if you agree to the proposed schedule or would like to discuss tomorrow. Because both sides still have significant outstanding discovery issues to resolve, we think this extension makes sense.   The letter is reattached.

Kind regards,

**Jacob Canter**
Pronouns: he/him/his
Crowell & Moring LLP
jcanter@crowell.com
+1.415.365.7210 direct  |  +1.415.385.3716 mobile

---

**From:** Canter, Jacob <JCanter@crowell.com>
**Sent:** Friday, December 30, 2022 12:23 PM
**To:** Ginder, Cameron <cameron.ginder@kirkland.com>; Hughes, Dalton <DHughes@crowell.com>
**Cc:** Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>;

mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team
<Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>;
*bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

Hello Cameron and Miranda,

Please see the attached letter.  Kind regards,


**Jacob Canter**
Pronouns: he/him/his
Crowell & Moring LLP
jcanter@crowell.com
+1.415.365.7210 direct  |  +1.415.385.3716 mobile

---

**From:** Canter, Jacob <JCanter@crowell.com>
**Sent:** Thursday, December 29, 2022 6:26 PM
**To:** Ginder, Cameron <cameron.ginder@kirkland.com>; Hughes, Dalton <DHughes@crowell.com>
**Cc:** Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>;
mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team
<Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>;
*bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

Hello Cameron and Miranda,

Please see the attached letter.  Kind regards,


**Jacob Canter**
Pronouns: he/him/his
Crowell & Moring LLP
jcanter@crowell.com
+1.415.365.7210 direct  |  +1.415.385.3716 mobile

---

**From:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Sent:** Wednesday, November 23, 2022 3:36 PM
**To:** Hughes, Dalton <DHughes@crowell.com>
**Cc:** Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>;
mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com; ROSS Lit Team
<Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>;
*bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** Re: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

External Email

Thanks, Dalton. Thursday works.

Have a nice Thanksgiving.

**Cameron Ginder**

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 3757  **M** +1 260 414 9744
**F** +1 312 862 2200

cameron.ginder@kirkland.com

On Nov 23, 2022, at 3:05 PM, Hughes, Dalton <DHughes@crowell.com> wrote:

Cameron,

We are available from 11:30-2:30 PT Thursday Dec. 1st, and 10:30-12 PT Friday Dec. 2nd.

Thank you,
Dalton

**Dalton Kyle Hughes**
Pronouns: he/him/his
Crowell & Moring LLP
dhughes@crowell.com
+1.312.840.3253 direct  |  +1.615.426.7320 mobile

**From:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Sent:** Tuesday, November 22, 2022 8:22 PM
**To:** Hughes, Dalton <DHughes@crowell.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com
**Cc:** ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

External Email

Dalton/Joachim - Please see attached.

We are not available to meet and confer at the times you mentioned below.  Please let us know your availability on Thursday and Friday of next week.

Thanks,
Cameron

**Cameron Ginder**

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 3757  **M** +1 260 414 9744

6

F +1 312 862 2200

cameron.ginder@kirkland.com

---

**From:** Hughes, Dalton <DHughes@crowell.com>
**Sent:** Monday, November 21, 2022 2:06 PM
**To:** Ginder, Cameron <cameron.ginder@kirkland.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com
**Cc:** ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

Cameron,

We have still not received a response to our November 7, 2022 letter regarding Plaintiffs' responses to our RFPs. Please provide your availability to meet and confer on Monday or Tuesday of next week. We are available at 10:30 AM PT, 2:00 PM PT, and 4:00 PM PT on Monday, November 28; and 9:30 AM PT, 12:00 PM, and 3:00 PM PT on Tuesday, November 29.

Best regards,
Dalton

**Dalton Kyle Hughes**
Pronouns: he/him/his
Crowell & Moring LLP
dhughes@crowell.com
+1.312.840.3253 direct  |  +1.615.426.7320 mobile

---

**From:** Ginder, Cameron <cameron.ginder@kirkland.com>
**Sent:** Tuesday, November 15, 2022 8:22 AM
**To:** Hughes, Dalton <DHughes@crowell.com>; Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com
**Cc:** ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

External Email

Dalton - We are preparing a written response to your letter.

Thanks,
Cameron

**Cameron Ginder**

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 3757  **M** +1 260 414 9744
**F** +1 312 862 2200

cameron.ginder@kirkland.com

---

**From:** Hughes, Dalton <DHughes@crowell.com>
**Sent:** Monday, November 14, 2022 3:05 PM
**To:** Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com
**Cc:** ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** RE: Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

Counsel,

Please let us know Plaintiffs' positions on the RFPs in the letter sent below. If Plaintiffs will not produce the documents as requested, then let us know your availability to meet and confer as to these requests.

Best regards,
Dalton


**Dalton Kyle Hughes**
Pronouns: he/him/his
Crowell & Moring LLP
dhughes@crowell.com
+1.312.840.3253 direct  |  +1.615.426.7320 mobile

---

**From:** Hughes, Dalton <DHughes@crowell.com>
**Sent:** Monday, November 7, 2022 2:58 PM
**To:** Means, Miranda <miranda.means@kirkland.com>; #Thomson-Ross <thomson-ross@kirkland.com>; mflynn@morrisnichols.com; jblumenfeld@morrisnichols.com
**Cc:** ROSS Lit Team <Rosslitteam@crowell.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Subject:** Thomson Reuters et al v ROSS Intelligence Inc | Ltr re Plaintiffs' Responses to RFPs 182-233

Counsel,

Please see the attached letter.

Best regards,
Dalton

**Dalton Kyle Hughes**
Pronouns: he/him/his
dhughes@crowell.com
+1.312.840.3253 direct  |  +1.615.426.7320 mobile

Crowell & Moring LLP
455 North Cityfront Plaza Drive
Suite 3600
Chicago, IL 60611

# Crowell

**Collaboration Powers Success**

crowell.com
Trade Secrets Trends Blog

This message may contain privileged and confidential information. IF IT WAS SENT TO YOU BY MISTAKE, DO NOT READ IT. Instead, please notify the sender (or postmaster@crowell.com) by reply e-mail, and delete this e-mail. Unauthorized dissemination, forwarding or copying of this e-mail is strictly prohibited.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

# EXHIBIT W

**Canter, Jacob**

| | |
|---|---|
| **From:** | Canter, Jacob |
| **Sent:** | Friday, April 14, 2023 9:07 AM |
| **To:** | Barsanti, Vanessa; Ginder, Cameron; #Thomson-Ross; mflynn@morrisnichols.com |
| **Cc:** | ROSS-AT Team |
| **Subject:** | West v ROSS | Proposal to Modify Schedule |

Hello Vanessa, please see below our proposal for a modification to the current schedule. Please let us know your thoughts on Monday. Kind regards,

| | Current Date | Proposed Date |
|---|---|---|
| Close of Fact Discovery | May 11, 2023 | September 8, 2023 |
| Deadline to Serve Expert Reports | May 25, 2023 | October 6, 2023 |
| Deadline to Serve Rebuttal Expert Reports | June 22, 2023 | November 3, 2023 |
| Deadline to Serve Reply Expert Reports | July 20, 2023 | November 22, 2023 |
| Close of Expert Discovery | August 3, 2023 | December 8, 2023 |
| Opening Summary Judgment Briefs Due | August 31, 2023 | January 5, 2024 |
| Opposition to Summary Judgment Briefs Due | September 28, 2023 | February 2, 2024 |
| Replies to Summary Judgment Briefs Due | October 26, 2023 | February 23, 2024 |

**Jacob Canter**
Pronouns: he/him/his
jcanter@crowell.com
+1.415.365.7210 direct  |  +1.415.385.3716 mobile
LinkedIn

Crowell & Moring LLP
3 Embarcadero Center
26th Floor
San Francisco, CA 94111

# Crowell

**Collaboration Powers Success**

crowell.com

This message may contain privileged and confidential information. IF IT WAS SENT TO YOU BY MISTAKE, DO NOT READ IT. Instead, please notify the sender (or postmaster@crowell.com) by reply e-mail, and delete this e-mail. Unauthorized dissemination, forwarding or copying of this e-mail is strictly prohibited.

# EXHIBIT X

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION, | ) ) ) |
| | ) C.A. No. 20-613-SB |
| Plaintiffs/Counterdefendants, | ) |
| | ) **JURY TRIAL DEMANDED** |
| v. | ) |
| | ) |
| ROSS INTELLIGENCE INC., | ) |
| | ) |
| Defendant/Counterclaimant. | ) |

**DEFENDANT ROSS INTELLIGENCE, INC.'S AMENDED NOTICE OF 30(B)(6)
DEPOSITION TO PLAINTIFF WEST PUBLISHING CORPORATION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT, pursuant to Federal Rule of Civil Procedure 30(b)(6), Defendants ROSS Intelligence, Inc. ("ROSS"), through their attorneys, will take the deposition upon oral examination of one or more representatives of West Publishing Corporation ("Plaintiff") on the topics specified in the attached Schedule A.  The deposition will begin on **April 19, 2023**, at the offices of Crowell & Moring LLP, 590 Madison Ave #20th, New York, NY 10022 at 9:00 a.m. ET, and continue from day to day thereafter, Saturdays, Sundays and holidays excepted, until completed. The deposition will be taken before an officer duly authorized to administer oaths under the laws of the United States and/or the State of New York, and will be recorded by audio, audio-visual, and stenographic means.

Pursuant to Federal Rule 30(b)(6), Plaintiff shall designate and produce at the deposition one or more officers, directors, managing agents, or other persons who consent to testify on its behalf with respect to the matters specified in Schedule A.

PLEASE TAKE FURTHER NOTICE THAT in light of the uncertainty surrounding the COVID-19 pandemic, ROSS reserves the right, in consultation with counsel for the deponent, to hold this deposition remotely.

NOTICE IS FURTHER GIVEN THAT ROSS reserves the right to record the deposition either by stenographic means by a court reporter certified to record depositions or a digital reporter utilizing state-of-the-art digital recording equipment.  Both the court reporter and digital reporter are authorized to administer the oath and serve as the deposition officer in the State of New York. ROSS further reserves the right to record the deposition utilizing audio or video technology and the right to utilize Exhibit Share (picture-in-picture) technology in which any exhibit reviewed by the deponent during the deposition can be captured visually.

Should the deposition be recorded in either video format, ROSS reserves the right to utilize any portion of the audio or video recording of the proceeding in Court. In the event the ROSS utilizes the stenographic reporting method, it reserves the right to utilize instant visual display such that the reporter's writing of the proceeding will be available to all who are a party to this proceeding to request and receive it in real time.

NOTICE IS FURTHER GIVEN THAT ROSS reserves the right to conduct this deposition utilizing a paperless exhibit display process called Exhibit Share provided and supported by Veritext Legal Solutions. The parties are advised that one paper set of exhibits will be utilized at the deposition for the court reporter's purposes of compiling, exhibit stamping, and ultimate production of the final certified transcript. However, no other paper copies will be provided as the exhibits will be available for visual display using Exhibit Share. Please contact the noticing attorney at least two (2) business days prior to the deposition to advise that it is your desire to be set up for Exhibit Share access so that the necessary credentials, testing and

2

information, if necessary, can be provided to you prior to the proceedings. For information and available tutorial videos demonstrating Exhibit Share, please utilize this link to access additional information: https://www.veritext.com/services/exhibitshare/.

NOTICE IS FURTHER GIVEN THAT ROSS reserves the right to conduct this deposition utilizing the secure web-based deposition option afforded by Veritext or in the alternative video teleconferencing (VTC) services or telephonically only to provide remote/virtual access for those parties wishing to participate in the deposition via the internet and/or telephone. Also take notice that, the court reporter may also be remote via one of the options above for the purposes of reporting the proceeding and may or may not be in the presence of the deponent. Please contact the noticing attorney at least two (2) business days prior to the deposition to advise that it is your desire to appear via this remote participating means so that the necessary credentials, call-in numbers, testing and information, if necessary, can be provided to you prior to the proceedings. In addition, ROSS also reserves the right to utilize instant visual display technology such that the court reporter's writing of the proceeding will be displayed simultaneously on one's laptop, iPad, tablet or other type of display device connected to the court reporter.

OF COUNSEL:

Gabriel M. Ramsey
Warrington S. Parker III
Joachim B. Steinberg
Jacob Canter
Christopher J. Banks
CROWELL & MORING LLP
3 Embarcadero Center, 26th Floor
San Francisco, CA 94111
Tel:  (415) 986-2800

Mark A. Klapow
Crinesha B. Berry
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC  20004
Tel:  (202) 624-2500

Dated:  March 29, 2023
10709592 / 20516.00001

POTTER ANDERSON & CORROON LLP

By:  */s/ Andrew L. Brown*
    David E. Moore (#3983)
    Bindu A. Palapura (#5370)
    Andrew L. Brown (#6766)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, DE  19801
    Tel:  (302) 984-6000
    dmoore@potteranderson.com
    bpalapura@potteranderson.com
    abrown@potteranderson.com

*Attorneys for Defendant/Counterclaimant
ROSS Intelligence, Inc.*

## SCHEDULE A
## Definitions

Insofar as any of the terms below are used herein, the following definitions shall apply:

1.      The term "THOMSON REUTERS" as used herein means Plaintiff /
Counterdefendant Thomson Reuters Enterprise Centre GmbH, and its present and former
officers, directors, employees, attorneys, agents, representatives, successors, predecessors,
owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or
purporting to act on its behalf.

2.      The term "WEST" as used herein means Plaintiff / Counterdefendant West
Publishing Corporation, and its present and former officers, directors, employees, attorneys,
agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated
companies, or any other person or entity acting or purporting to act on its behalf.

3.      The terms "YOU," "YOUR," and "PLAINTIFFS" as used herein means
THOMSON REUTERS and WEST.

4.      The terms "ROSS," "DEFENDANT," and "COUNTERCLAIMANT," as used
herein mean ROSS Intelligence, Inc., and its present and former officers, directors, employees,
attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries,
affiliated companies, or any other person or entity acting or purporting to act on its behalf.

5.      The terms "PUBLIC LAW DATABASE" and "PUBLIC LAW DATABASES" as
used herein mean a digital collection, or separate digital collections, in any digital form, format,
arrangement, or organization whatsoever, that INCLUDES public text documents such as
judicial opinions, administrative rulings, or legislative enactments such as statutes, public
ordinances, rules, regulations.

6.      The terms "LEGAL SEARCH TOOL" and "LEGAL SEARCH TOOLS" as used herein mean any application, program, method, system, tool, or technology that facilitates, supports, augments, or otherwise contributes to ANY search, exploration, or analysis of a PUBLIC LAW DATABASE. Examples, without limitation, of LEGAL SEARCH TOOLS INCLUDE: West Headnotes, the West Key Number System ("WKNS"), key numbers, WKNS topics, WKNS subtopics WestSearch Plus, Boolean search functionality, any other search functionality on WestlawNext, Westlaw Edge, Westlaw Classic, Westlaw Precision, or any other version of the WESTLAW PLATFORM, and any similar applications, programs, methods, systems, tools, or technologies that other PERSONS have developed or license.

7.      The term "ARTIFICIAL INTELLIGENCE TOOLS" as used herein means analysis and development in the fields known as artificial intelligence, machine learning, or natural language processing, including processes, designs, products, and systems.

8.      The terms "LEGAL SEARCH PLATFORM" and "LEGAL SEARCH PLATFORMS" as used herein mean any websites or applications where legal research can be performed, whether or not it costs a fee to use the website or application. Examples, without limitation, of LEGAL SEARCH PLATFORMS INCLUDE: the WEST PLATFORM, the ROSS PLATFORM, and the platforms and/or services created and/or licensed by COMPETITORS.

9.      The term "WESTLAW PLATFORM" as used herein means WestlawNext, Westlaw Edge, Westlaw Classic, Westlaw Precision, and any other version of the Westlaw LEGAL SEARCH TOOL that was, is, or will be accessible to users.  The term "WESTLAW PLATFORM" does not include PeopleMap or Company Investigator.

10.     The term "COMPETITORS" includes past and present providers of LEGAL SEARCH PLATFORMS, LEGAL SEARCH TOOLS, or PUBLIC LAW DATABASES,

including LEXISNEXIS, GOOGLE, FASTCASE, CASEMAKER, CASETEXT, WOLTERS KLUWER, JURISEARCH, ROSS, and any other entity or person that PLAINTIFFS have or do consider competitors in LEGAL SEARCH PLATFORMS, LEGAL SEARCH TOOLS, or PUBLIC LAW DATABASES.

11.     The term "LEXISNEXIS" as used herein means the corporation LexisNexis which makes available the website https://www.lexisnexis.com, and its present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on its behalf.

12.     The term "GOOGLE" as used herein means the company Google LLC which makes available the website https://www.google.com, and its present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on its behalf.

13.     The term "FASTCASE" as used herein means the company Fastcase.com, Inc., which makes available the website https://fastcase.com, and its present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on its behalf.

14.     The term "BLOOMBERG" as used herein means the company Bloomberg L.P., which makes available the website https://bloomberglaw.com, and its present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors,

owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on its behalf.

15.     The term "CASEMAKER" as used herein means the company that was formerly separate from FASTCASE and formerly offered the separate available website https://casemakerx.com, and its former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on its behalf.

16.     The term "CASETEXT" as used herein means the company Casetext which makes available the website https://casetext.com, and its present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on its behalf.

17.     The term "WOLTERS KLUWER" as used herein means the company Wolters Kluwer N.V., which makes available the website https://my.vitallaw.com/, and its present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on its behalf.

18.     The term "JURISEARCH" as used herein means the company Jurisearch, which makes available the website https://www.jurisearch.com, and its present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on its behalf.

19.     The term "PRICING STRUCTURE" as used herein means the formula by which a customer's total price is calculated, including PER SEAT, PER SEARCH, or MONTHLY GUARANTEE pricing.

20.     The term "PER SEAT" as used herein means pricing at a rate per user that does not vary with the number of searches performed by that user.

21.     The term "PER SEARCH" as used herein means pricing at a rate that varies with the number of searches performed.

22.     The term "MONTHLY GUARANTEE" as used herein means pricing at a set monthly rate, which may be adjusted based on a customer's user count.

23.     The term "CUSTOMER SEGMENT" as used herein means divisions or tiers of customers, users or subscribers and potential customers, users or subscribers that affects pricing, services, or TERMS OF SERVICES offered to customers, users, or subscribers, which may include government, law firms of various sizes, pro bono access for law firms, in-house legal departments, non-profit legal departments, universities, law schools, university law libraries, law firm law libraries, and students.

24.     The terms "AGREEMENT" and "AGREEMENTS" as used herein means all formal and informal licenses, contracts, settlements, stipulations, agreements, arrangements, memoranda of understandings, and other types of written or oral communications between at least two PERSONS.

25.     The terms "INCLUDE," "INCLUDES," and "INCLUDING" as used herein mean not limited to.

26.     The terms "PERSON" and "PERSONS" as used herein mean any individual, corporation, partnership, association, organization, or other entity of any type or nature.

27.     The terms "RELATE TO," "RELATED TO," and "RELATING TO" as used herein mean constituting, pertaining to, in connection with, reflecting, respecting, regarding, concerning, referring to, based upon, stating, showing, evidencing, establishing, supporting, negating, contradicting, describing, recording, noting, embodying, memorializing, containing, mentioning, studying, analyzing, discussing, specifying, identifying or in any manner logically, factually, indirectly or directly, or in any other way connecting to the matter addressed, in whole or in part.

### Deposition Topics

1.      YOUR decisions whether or not to invest, including reasoning RELATED TO those decisions and amounts and targets of those investments, in the WESTLAW PLATFORM, YOUR PUBLIC LAW DATABASES, YOUR LEGAL SEARCH TOOLS, and any of YOUR ARTIFICIAL INTELLIGENCE TOOLS.

2.      YOUR decisions whether or not to offer any element of the WESTLAW PLATFORM, YOUR PUBLIC LAW DATABASES, YOUR LEGAL SEARCH TOOLS, and any of YOUR ARTIFICIAL INTELLIGENCE TOOLS, including elements that were considered for investment or to be offered but were not ultimately offered to the public.

3.      YOUR analysis of YOUR share in any market in which any element of the WESTLAW PLATFORM competes, including the reasons for such research, the results of any research, and how those results informed YOUR strategies.

4.      YOUR analysis of any barriers to entry in any market in which any element of the WESTLAW PLATFORM competes, including the reasons for such research, the results of any research, and how those results informed YOUR strategies.

5.      YOUR market research regarding demand for LEGAL SEARCH TOOLS, PUBLIC LAW DATABASES, and LEGAL SEARCH PLATFORMS, including the reasons for such research, the results of any research, and how those results informed YOUR strategies.

6.      Requests by PERSONS to separately purchase, license, or access the PUBLIC LAW DATABASES or LEGAL SEARCH TOOLS that are available on the WESTLAW PLATFORM.

7.      Requests by customers or COMPETITORS for changes RELATED TO the terms of YOUR AGREEMENTS.

8.      The technological link or connection between YOUR LEGAL SEARCH TOOLS and PUBLIC LAW DATABASES.

9.      YOUR PRICING STRUCTURE, including changes over time and reasons for those changes, and by CUSTOMER SEGMENT.

10.     YOUR policies relating to access to YOUR paper-format publications, including incentivizing or requiring return or destruction of YOUR paper-format publications.

11.     YOUR decision to make judicial opinions available online, including whether or not to license, sell, or distribute judicial opinions online independent of the WESTLAW PLATFORM.

12.     YOUR agreements with COMPETITORS, including the reasons for and effects of those agreements.

13.     YOUR decision not to license the WESTLAW PLATFORM to any COMPETITORS or potential COMPETITORS.

14.     Investigations, INCLUDING by the Federal Trade Commission, the Department of Justice, state agencies, or litigation involving antitrust or unfair competition claims or counterclaims brought against YOU.

15.     YOUR decision to license treatises or secondary sources on the WESTLAW PLATFORM.

16.     YOUR relationship with members of the Federal Judiciary and the staff and employees of the Federal Judiciary.

17.     YOUR decision on whether to license access to the WESTLAW PLATFORM to any PERSONS, INCLUDING COMPETITORS.

18.     YOUR decision to develop Westlaw Classic, Westlaw Next, Westlaw Edge, and Westlaw Precision, including the substantive differences between Westlaw Classic, Westlaw Next, Westlaw Edge, and Westlaw Precision, your marketing of Westlaw Classic, Westlaw Next, Westlaw Edge, and Westlaw Precision, and your subscriptions for Westlaw Classic, Westlaw Next, Westlaw Edge, and Westlaw Precision.

19.     YOUR marketing of Standard Plus, Professional, Professional Plus, Premier, and Premier Plus content, including the substantive differences between Standard Plus, Professional, Professional Plus, Premier, and Premier Plus content, and your subscription for Standard Plus, Professional, Professional Plus, Premier, and Premier Plus content.

20.     YOUR development of the WESTLAW PLATFORM's Application Programming Interface(s) ("API"), including but not limited to YOUR policies about API development.

# EXHIBIT Y

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

THOMSON REUTERS ENTERPRISE          )
CENTRE GMBH and WEST PUBLISHING     )
CORPORATION,                         )
                                     )
                Plaintiffs and       )
                Counterdefendants,   )
                                     )  C.A. No. 20-613 (SB)
        v.                           )
                                     )
ROSS INTELLIGENCE INC.,              )
                                     )
                Defendant and        )
                Counterclaimant.     )

**PLAINTIFF AND COUNTER-DEFENDANT WEST PUBLISHING
CORPORATION'S OBJECTIONS AND RESPONSES TO DEFENDANT
AND COUNTERCLAIMANT ROSS INTELLIGENCE INC.'S
AMENDED NOTICE OF 30(b)(6) DEPOSITION**

Pursuant to Federal Rule of Civil Procedure 26 and 30, Plaintiff and Counter-Defendant

West Publishing Corporation ("West") by and through its undersigned counsel, hereby responds

to Defendant and Counterclaimant ROSS Intelligence Inc.'s Notice of Rule 30(b)(6) Deposition,

which was served on West on March 29, 2023 (the "Notice") in connection with the above

captioned action (the "Litigation"), including each of the topics for examination included in the

Notice (all such together, "Topics," and each individually a "Topic").

## GENERAL OBJECTIONS

1.      West objects to each Topic to the extent that it is not limited to West and seeks information that is in the possession of entities other than West.  West will designate a witness to answer these Topics on behalf of West, the named entity to whom the Notice was directed, based on information reasonably available to it.

2.      West objects to the Notice, including the Definitions and the Topics incorporated therein, as overly broad, unduly burdensome, and purporting to impose discovery obligations on West beyond those imposed by the Federal Rules of Civil Procedure, the Local Rules, or other applicable laws and rules, particularly to the extent the Notice purports to require the identification of information about any and all facts within broad categories.

3.      West objects to each Topic to the extent it calls for testimony about information not known or reasonably available to West.  West will present a witness to testify generally about information known or reasonably available to it.  If ROSS has questions about specific documents, please provide those documents five days before the deposition.

4.      West objects to each Topic to the extent that it seeks information that is subject to the attorney-client privilege, the attorney work product privilege, the common interest rule, and/or any other applicable privilege or protection.  Inadvertent disclosure of any such information shall not be deemed a waiver, in whole or in part, of such privilege or protection. West does not waive, intends to preserve, and is preserving the attorney-client privilege, the work-product privilege, the joint defense privilege, and every other applicable privilege or protection with respect to any information protected by such a privilege or protection.

5.      West objects to each Topic to the extent that it is vague, ambiguous, indefinite, subject to different interpretations, requires subjective knowledge by any party other than West,

or otherwise fails to designate with reasonable particularity the matter on which examination is requested or required by Federal Rule of Civil Procedure 30(b)(6).

6.      West objects to each Topic to the extent that it calls for information that is neither relevant to any issue in this action nor reasonably calculated to lead to the discovery of admissible evidence.

7.      West objects to each Topic to the extent that it seeks information that is duplicative of other discovery taken in this case or that is more easily available through other less burdensome means, such as by review of the documents already produced through discovery in this Litigation or that West equally may otherwise obtain from public sources.

8.      West objects to each Topic to the extent that it seeks legal contentions, conclusions, theories, or expert discovery.

9.      West objects to each Topic to the extent that it is not limited to the time relevant to this Litigation. West will construe all Topics to solely request information within the relevant timeframe of this Litigation and will not provide information as it relates to any future Westlaw content that contains propriety or highly confidential information.

10.     West objects to each Topic to the extent that it seeks proprietary or confidential business information, trade secrets, or other sensitive information.  West reserves the right to exclude information from responses to the extent necessary to protect unnecessary disclosure of proprietary or confidential information, trade secrets, or other sensitive information.  By responding to the Notice, West does not waive, intends to preserve, and is preserving all of its rights to assert that any and all such information is confidential.  Information furnished by West shall be used in connection with this Litigation only, and shall not be disclosed, in whole or in part, to any person or entity that is not a party or a representative of a party to this

Litigation.  Further, West reserves the right to withhold information for which it needs third-party consent to disclose, but West represents that it will use its best reasonable efforts to obtain any such consents.

11.     West objects to each Topic to the extent that it is overly broad as the the term "THOMSON REUTERS" is defined to include "present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on its behalf."  For the purposes of responding to the Topics, West will construe this term to mean solely Thomson Reuters Enterprise Centre GmbH, and not any other person or entity.

12.     West objects to each Topic to the extent that it is overly broad as the term "WEST" is defined to include "present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on its behalf."  For the purposes of responding to the Topics, West will construe this term to mean solely to mean West Publishing Corporation, and not any other person or entity.

13.     West objects to each Topic to the extent that it is overly broad as the terms "YOU," "YOUR," and "PLAINTIFF" are defined to incorporate the definitions of both the terms "THOMSON REUTERS" and "WEST," and thus are defined to include Thomson Reuters Enterprise Centre GmbH's and West Publishing Corporation's "present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on [their] behalf."  For the purposes of responding to the Topics, West will construe the

terms "YOU," "YOUR," and "PLAINTIFF" to mean solely Thomson Reuters Enterprise Centre GmbH's and West Publishing Corporation and not any other person or entity.

14.    West objects to each Topic to the extent that it is overly broad as the terms "ROSS," "DEFENDANT," and "COUNTERCLAIMANT" are defined to include ROSS Intelligence Inc.'s "present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on its behalf."  For the purposes of responding to the Topics, West will construe these terms to mean solely ROSS Intelligence Inc., and not any other person or entity.

15.    West objects to each Topic to the extent that the Topics define "PUBLIC LAW DATABASE" and "PUBLIC LAW DATABASES" to incorporate disputed factual and legal conclusions.  West does not adopt, concede, or confirm the accuracy of any purported or disputed factual or legal conclusions incorporated into ROSS' definitions of "PUBLIC LAW DATABASE" and "PUBLIC LAW DATABASES."

16.    West objects to each Topic to the extent that the Topics define "LEGAL SEARCH TOOL" and "LEGAL SEARCH TOOLS" to incorporate disputed factual and legal conclusions.  West does not adopt, concede, or confirm the accuracy of any purported or disputed factual or legal conclusions incorporated into ROSS' definitions of "LEGAL SEARCH TOOL" and "LEGAL SEARCH TOOLS."

17.    West objects to each Topic to the extent that the Topics define "ARTIFICIAL INTELLIGENCE TOOLS" to incorporate disputed factual and legal conclusions. West does not adopt, concede, or confirm the accuracy of any purported or disputed factual or legal conclusions incorporated into ROSS' definition of "ARTIFICIAL INTELLIGENCE TOOLS."

West will construe this term solely to mean Westlaw's "ARTIFICIAL INTELLIGENCE TOOLS" currently available on the market and no future "ARTIFICIAL INTELLIGENCE TOOLS" currently in development or content that will be released in the market at a later date.

18.     West objects to each Topic to the extent that the Topics define "LEGAL SEARCH PLATFORM" and "LEGAL SEARCH PLATFORMS" to incorporate disputed factual and legal conclusions.  West does not adopt, concede, or confirm the accuracy of any purported or disputed factual or legal conclusions incorporated into ROSS' definitions of "LEGAL SEARCH PLATFORM" and "LEGAL SEARCH PLATFORMS."

19.     West objects to each Topic to the extent that the Topics define "COMPETITORS" to incorporate disputed factual and legal conclusions. West does not adopt, concede, or confirm the accuracy of any purported or disputed factual or legal conclusions incorporated into ROSS' definitions of "COMPETITORS." West will construe this term to mean solely the entities relevant in this case: LexisNexis Group, Inc.; Google LLC; Fastcase.com; Bloomberg L.P.; Casemaker; Casetext; Wolters Kluwer N.V.; and Jurisearch and not any other person or entity.

20.     West objects to each Topic to the extent that the Topics define "LEXISNEXIS" to include LexisNexis Group, Inc.'s; "GOOGLE" to include Google LLC's; "FASTCASE" to include Fastcase.com, Inc.'s; "BLOOMBERG" to include Bloomberg L.P.'s; "CASEMAKER" to include Casemaker's; "CASETEXT" to include Casetext's; "WOLTERS KLUWER" to include Wolters Kluwer N.V.'s; and "JURISEARCH" to include Jurisearch's "present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on its behalf."  For the purposes of responding to

the Topics, West will construe these terms to mean solely LexisNexis Group, Inc.; Google LLC; Fastcase.com; Bloomberg L.P.; Casemaker; Casetext; Wolters Kluwer N.V.; and Jurisearch and not any other person or entity.

21.     West objects to the Topics to the extent they imply or assume that West has separate Public Law Database and Legal Search Tools.  West further objects to the Requests to the extent they imply or assume that there are separate product markets or consumer demand for so-called Public Law Databases and Legal Search Tools.  West has a single legal research platform, Westlaw.

22.     Neither these responses to the Topics nor the identification of a witness by West with respect thereto shall be interpreted to concede the truth of any factual assertion or implication contained in the Topics.

23.     West reserves the right to modify or supplement its responses and objections to the Topics to conform to the results of continuing discovery, including with regard to the identified witnesses and topics on which they are designated.  West's responses to the Topics in no way constitute an admission or acknowledgement by West as to the relevance, materiality or admissibility of any of these issues or the information contained therein, and West expressly reserves its rights to object as such.

24.     West's responses and objections to the Topics shall not be construed in any way as a waiver of any of West's objections, but rather, West is preserving and intends to preserve:  (a) all rights to object to the use of any testimony, response, document or thing for any purpose in this action or any other actions on the grounds of privilege, authenticity, relevance, materiality, admissibility, or any other appropriate basis; (b) all rights to object on any grounds to the use in any subsequent proceedings of any of the responses or information

contained herein, including but not limited to the right to object at the trial of this or any other action; (c) all objections as to vagueness and ambiguity; and (d) all rights to object on any ground at any time to other discovery procedures involving or relating to the subject matter of these Topics.

## SPECIFIC OBJECTIONS

### TOPIC NO. 1:

YOUR decisions whether or not to invest, including reasoning RELATED TO those decisions and amounts and targets of those investments, in the WESTLAW PLATFORM, YOUR PUBLIC LAW DATABASES, YOUR LEGAL SEARCH TOOLS, and any of YOUR ARTIFICIAL INTELLIGENCE TOOLS.

### RESPONSE TO TOPIC NO. 1:

West incorporates by reference the above-stated General Objections as if fully set forth herein.  West specifically objects to this Topic as vague and ambiguous to the extent that the term "amounts and targets" is unclear and undefined.  West objects to this Topic to the extent that it seeks information that is duplicative of other discovery taken in this case or that is more easily available through some less burdensome means.  West objects to this Topic as overly broad and unduly burdensome to the extent it calls for information that is neither relevant to the parties' claims or defenses nor proportional to the needs of this case, including because West's decision whether or not to invest in Westlaw is not at issue in this Litigation. West objects to this Topic to the extent that it seeks details regarding highly confidential information that is proprietary and irrelevant to the issues in this Litigation. West objects to this Topic to the extent that it is not limited to the time relevant to this Litigation.

Subject to, as limited by, and without waiving the foregoing objections, West responds as follows:  West will identify one or more witnesses to testify regarding non-privileged information concerning West's knowledge of its decision to invest in Westlaw, Public Law Database, Legal Search Tools, and Artificial Intelligence Tools.

### TOPIC NO. 2:

YOUR decisions whether or not to offer any element of the WESTLAW PLATFORM, YOUR PUBLIC LAW DATABASES, YOUR LEGAL SEARCH TOOLS, and any of YOUR

ARTIFICIAL INTELLIGENCE TOOLS, including elements that were considered for investment or to be offered but were not ultimately offered to the public.

**RESPONSE TO TOPIC NO. 2:**

West incorporates by reference the above-stated General Objections as if fully set forth herein.  West specifically objects to this Topic as vague and ambiguous to the extent that the terms "whether or not to offer any element" and "the public" are unclear and undefined. West will construe the term "the public" to mean actual or potential customers and Competitors. West objects to this Topic as overly broad and unduly burdensome to the extent it calls for information that is neither relevant to the parties' claims or defenses nor proportional to the needs of this case.  West objects to this Topic to the extent that it seeks information that is duplicative of other discovery taken in this case or that is more easily available through some less burdensome means.

Subject to, as limited by, and without waiving the foregoing objections, West responds as follows:  West will identify one or more witnesses to testify generally regarding non-privileged information concerning West's decision whether or not to offer any element of Westlaw, including its Public Law Database, Legal Search Tools, and Artificial Tools.

**TOPIC NO. 3:**

YOUR analysis of YOUR share in any market in which any element of the WESTLAW PLATFORM competes, including the reasons for such research, the results of any research, and how those results informed YOUR strategies.

**RESPONSE TO TOPIC NO. 3:**

West incorporates by reference the above-stated General Objections as if fully set forth herein.  West specifically objects to this Topic as vague and ambiguous to the extent that the term "market" is unclear and undefined and incorporates questions of law.  West objects to this Topic as overly broad and unduly burdensome to the extent it calls for information that is

10

neither relevant to the parties' claims or defenses nor proportional to the needs of this case. West objects to this Topic to the extent that it seeks information that is duplicative of other discovery taken in this case or that is more easily available through some less burdensome means.

Subject to, as limited by, and without waiving the foregoing objections, West responds as follows:  West will identify one or more witnesses to testify generally regarding non-privileged information concerning any analysis of Westlaw's share of any market in which Westlaw competes.

## TOPIC NO. 4:

YOUR analysis of any barriers to entry in any market in which any element of the WESTLAW PLATFORM competes, including the reasons for such research, the results of any research, and how those results informed YOUR strategies.

## RESPONSE TO TOPIC NO. 4:

West incorporates by reference the above-stated General Objections as if fully set forth herein.  West specifically objects to this Topic as vague and ambiguous to the extent that the terms "market" and "barriers to entry" are unclear and undefined and incorporate questions of law.  West objects to this Topic as overly broad and unduly burdensome to the extent it calls for information that is neither relevant to the parties' claims or defenses nor proportional to the needs of this case.  West objects to this Topic to the extent that it seeks information that is duplicative of other discovery taken in this case or that is more easily available through some less burdensome means.

Subject to, as limited by, and without waiving the foregoing objections, West responds as follows:  West will identify one or more witnesses to testify generally regarding non-

privileged information concerning any analysis regarding barriers to entry to actual or potential competitors to Westlaw.

**TOPIC NO. 5**:

YOUR market research regarding demand for LEGAL SEARCH TOOLS, PUBLIC LAW DATABASES, and LEGAL SEARCH PLATFORMS, including the reasons for such research, the results of any research, and how those results informed YOUR strategies.

**RESPONSE TO TOPIC NO. 5**:

West incorporates by reference the above-stated General Objections as if fully set forth herein. West specifically objects to this Topic as vague and ambiguous to the extent that the term "demand" is unclear and undefined and incorporates questions of law. West objects to this Topic as overly broad and unduly burdensome to the extent it calls for information that is neither relevant to the parties' claims or defenses nor proportional to the needs of this case. West objects to this Topic to the extent that it seeks information that is duplicative of other discovery taken in this case or that it is more easily available through some less burdensome means.

Subject to, as limited by, and without waiving the foregoing objections, West responds as follows: West will identify one or more witnesses to testify generally regarding non-privileged information concerning any market research West conducted regarding customer demand for Legal Search Tools, Public Law Databases, and Legal Search Platforms.

**TOPIC NO. 6**:

Requests by PERSONS to separately purchase, license, or access the PUBLIC LAW DATABASES or LEGAL SEARCH TOOLS that are available on the WESTLAW PLATFORM.

**RESPONSE TO TOPIC NO. 6**:

West incorporates by reference the above-stated General Objections as if fully set forth herein. West objects to this Topic to the extent that it seeks information that is duplicative of

other discovery taken in this case or that is more easily available through some less burdensome means.

Subject to, as limited by, and without waiving the foregoing objections, West responds as follows:  West will identify one or more witnesses to testify generally regarding non-privileged information concerning customer requests to purchase, license, or access a Public Law Database or Legal Search Tools separately from Westlaw.

**TOPIC NO. 7:**

Requests by customers or COMPETITORS for changes RELATED TO the terms of YOUR AGREEMENTS.

**RESPONSE TO TOPIC NO. 7:**

West incorporates by reference the above-stated General Objections as if fully set forth herein.  West specifically objects to this Topic as overly broad and unduly burdensome to the extent it calls for information that is neither relevant to the parties' claims or defenses nor proportional to the needs of this case, including information related to competitors not at issue in this Litigation and requests related to terms or conditions not relevant to any claim or defense in the case.  West objects to this Topic to the extent that it seeks information that is duplicative of other discovery taken in this case or that is more easily available through some less burdensome means.

Subject to, as limited by, and without waiving the foregoing objections, West responds as follows:  West will identify one or more witnesses to testify generally regarding non-privileged information concerning customer or Competitor requests for changes to West's Agreements.

13

**TOPIC NO. 8**:

The technological link or connection between YOUR LEGAL SEARCH TOOLS and PUBLIC LAW DATABASES.

**RESPONSE TO TOPIC NO. 8**:

West incorporates by reference the above-stated General Objections as if fully set forth herein.  West specifically objects to this Topic as vague and ambiguous to the extent that the term "technological link or connection between" is unclear and undefined.  West will construe this term to solely mean the technological relationship between Westlaw's Legal Search Tools and its Public Law Databases.  West objects to this Topic as overly broad and unduly burdensome to the extent it calls for information that is neither relevant to the parties' claims or defenses nor proportional to the needs of this case.

Subject to, as limited by, and without waiving the foregoing objections, West responds as follows:  West will identify one or more witnesses to testify generally regarding non-privileged information concerning the technological relationship between Westlaw's Legal Search Tools and its Public Law Databases.

**TOPIC NO. 9**:

YOUR PRICING STRUCTURE, including changes over time and reasons for those changes, and by CUSTOMER SEGMENT.

**RESPONSE TO TOPIC NO. 9**:

West incorporates by reference the above-stated General Objections as if fully set forth herein.  West specifically objects to this Topic as vague and ambiguous to the extent that the term "changes over time" is unclear and undefined.  West objects to this Topic as overly broad and unduly burdensome to the extent it calls for information that is neither relevant to the parties' claims or defenses nor proportional to the needs of this case.  West objects to this Topic to the

extent that it seeks information that is duplicative of other discovery taken in this case or that is more easily available through some less burdensome means. West also objects to this Topic because it is redundant of Topics 46 and 47 from the copyright case and a 30(b)(6) witness has already been offered and deposed.

Subject to, as limited by, and without waiving the foregoing objections, West responds as follows:  West will not provide a witness to testify on this Topic.

**TOPIC NO. 10:**

YOUR policies relating to access to YOUR paper-format publications, including incentivizing or requiring return or destruction of YOUR paper-format publications.

**RESPONSE TO TOPIC NO. 10:**

West incorporates by reference the above-stated General Objections as if fully set forth herein.  West specifically objects to this Topic as vague and ambiguous to the extent that the term "paper-format publications" is unclear and undefined.  West will interpret this term to mean paper-format publications of judicial opinions, statutes, and regulations.  West objects to this Topic as overly broad and unduly burdensome to the extent it calls for information that is neither relevant to the parties' claims or defenses nor proportional to the needs of this case. West objects to this Topic to the extent that it seeks information that is duplicative of other discovery taken in this case or that is more easily available through some less burdensome means.

Subject to, as limited by, and without waiving the foregoing objections, West responds as follows:  West will identify one or more witnesses to testify generally regarding non-privileged information concerning its policies related to paper-format publications of judicial opinions, statutes, and regulations.

**TOPIC NO. 11:**

YOUR decision to make judicial opinions available online, including whether or not to license, sell, or distribute judicial opinions online independent of the WESTLAW PLATFORM.

**RESPONSE TO TOPIC NO. 11:**

West incorporates by reference the above-stated General Objections as if fully set forth herein. West objects to this Topic as overly broad and unduly burdensome to the extent it calls for information that is neither relevant to the parties' claims or defenses nor proportional to the needs of this case, including the decision to make Westlaw available online. West objects to this Topic to the extent that it seeks information that is duplicative of other discovery taken in this case or that is more easily available through some less burdensome means.

Subject to, as limited by, and without waiving the foregoing objections, West responds as follows: West will identify one or more witnesses to testify generally regarding non-privileged information concerning its decision whether or not to license, sell, or distribute judicial opinions online independent of Westlaw.

**TOPIC NO. 12:**

YOUR agreements with COMPETITORS, including the reasons for and effects of those agreements.

**RESPONSE TO TOPIC NO. 12:**

West incorporates by reference the above-stated General Objections as if fully set forth herein. West objects to this Topic as overly broad and unduly burdensome to the extent it calls for information that is neither relevant to the parties' claims or defenses nor proportional to the needs of this case. West objects to this Topic to the extent that it seeks information that is duplicative of other discovery taken in this case or that is more easily available through some

less burdensome means. West also objects to this Topic because it is redundant of Topics 15 and 19 from the copyright case and a 30(b)(6) witness has already been offered and deposed.

Subject to, as limited by, and without waiving the foregoing objections, West responds as follows:  West will not provide a witness to testify on this Topic.

**TOPIC NO. 13:**

YOUR decision not to license the WESTLAW PLATFORM to any COMPETITORS or potential COMPETITORS.

**RESPONSE TO TOPIC NO. 13:**

West incorporates by reference the above-stated General Objections as if fully set forth herein.  West objects to this Topic to the extent that it seeks information that is duplicative of other discovery taken in this case or that is more easily available through some less burdensome means.  West objects to this Topic to the extent it is duplicative of Topic No. 17. West also objects to this Topic because it is redundant of Topics 15 and 19 from the copyright case and a 30(b)(6) witness has already been offered and deposed.

Subject to, as limited by, and without waiving the foregoing objections, West responds as follows:  West will not provide a witness to testify on this Topic.

**TOPIC NO. 14:**

Investigations, INCLUDING by the Federal Trade Commission, the Department of Justice, state agencies, or litigation involving antitrust or unfair competition claims or counterclaims brought against YOU.

**RESPONSE TO TOPIC NO. 14:**

West incorporates by reference the above-stated General Objections as if fully set forth herein.  West objects to this Topic as overly broad and unduly burdensome to the extent it calls for information that is neither relevant to the parties' claims or defenses nor proportional to the needs

of this case, including because it does not identify any specific investigation that is related to any claim or defense in this case.

Subject to, as limited by, and without waiving the foregoing objections, West responds as follows:  West will not provide a witness to testify on this Topic.

**TOPIC NO. 15:**

YOUR decision to license treatises or secondary sources on the WESTLAW PLATFORM.

**RESPONSE TO TOPIC NO. 15:**

West incorporates by reference the above-stated General Objections as if fully set forth herein.  West specifically objects to this Topic as overly broad and unduly burdensome to the extent it calls for information that is neither relevant to the parties' claims or defenses nor proportional to the needs of this case. ROSS defines Public Law Database to include public text documents such as judicial opinions, administrative rulings, or legislative enactments such as statutes, public ordinances, rules, regulations and not any secondary sources. West objects to this Topic to the extent that treatises and secondary sources are not "public law" as ROSS has defined that phrase and are thus irrelevant to any claim or defense in this case.

Subject to, as limited by, and without waiving the foregoing objections, West responds as follows:  West will not provide a witness to testify on this Topic.

**TOPIC NO. 16:**

YOUR relationship with members of the Federal Judiciary and the staff and employees of the Federal Judiciary.

**RESPONSE TO TOPIC NO. 16:**

West incorporates by reference the above-stated General Objections as if fully set forth herein.  West specifically objects to this Topic as vague and ambiguous to the extent that the

term "relationship" is unclear and undefined.  West objects to this Topic as overly broad and unduly burdensome to the extent it calls for information that is neither relevant to the parties' claims or defenses nor proportional to the needs of this case.  West objects to this Topic to the extent that it seeks information that is duplicative of other discovery taken in this case or that is more easily available through some less burdensome means.

Subject to, as limited by, and without waiving the foregoing objections, West responds as follows:  West will identify one or more witnesses to testify generally regarding non-privileged information concerning West's contractual agreements with the Federal Judiciary.

**TOPIC NO. 17:**

YOUR decision on whether to license access to the WESTLAW PLATFORM to any PERSONS, INCLUDING COMPETITORS.

**RESPONSE TO TOPIC NO. 17:**

West incorporates by reference the above-stated General Objections as if fully set forth herein.  West objects to this Topic to the extent that it seeks information that is duplicative of other discovery taken in this case or that is more easily available through some less burdensome means.  West objects to this Topic to the extent it is duplicative of Topic No. 13. West also objects to this Topic because it is redundant of Topics 15 and 19 from the copyright case and a 30(b)(6) witness has already been offered and deposed.

Subject to, as limited by, and without waiving the foregoing objections, West responds as follows:  West will not provide a witness to testify on this Topic.

**TOPIC NO. 18:**

YOUR decision to develop Westlaw Classic, Westlaw Next, Westlaw Edge, and Westlaw Precision, including the substantive differences between Westlaw Classic, Westlaw Next, Westlaw Edge, and Westlaw Precision, your marketing of Westlaw Classic, Westlaw Next, Westlaw Edge, and Westlaw Precision, and your subscriptions for Westlaw Classic, Westlaw Next, Westlaw Edge, and Westlaw Precision.

**RESPONSE TO TOPIC NO. 18:**

West incorporates by reference the above-stated General Objections as if fully set forth herein. West specifically objects to this Topic as vague and ambiguous to the extent that the term "decision to develop" is unclear and undefined. West objects to this Topic as overly broad and unduly burdensome to the extent it calls for information that is neither relevant to the parties' claims or defenses nor proportional to the needs of this case. West objects to this Topic to the extent that it seeks information that is duplicative of other discovery taken in this case or that is more easily available through some less burdensome means.

Subject to, as limited by, and without waiving the foregoing objections, West responds as follows: West will identify one or more witnesses to testify generally regarding non-privileged information concerning market and subscription information regarding Westlaw Classic, Westlaw Next, Westlaw Edge, and Westlaw Precision.

**TOPIC NO. 19:**

YOUR marketing of Standard Plus, Professional, Professional Plus, Premier, and Premier Plus content, including the substantive differences between Standard Plus, Professional, Professional Plus, Premier, and Premier Plus content, and your subscription for Standard Plus, Professional, Professional Plus, Premier, and Premier Plus content.

**RESPONSE TO TOPIC NO. 19:**

West incorporates by reference the above-stated General Objections as if fully set forth herein. West specifically objects to this Topic as vague and ambiguous to the extent that the term "substantive differences" is unclear and undefined. West objects to this Topic as overly broad and unduly burdensome to the extent it calls for information that is neither relevant to the parties' claims or defenses nor proportional to the needs of this case. West objects to this Topic to the extent that it seeks information that is duplicative of other discovery taken in this case or

that is more easily available through some less burdensome means. West objects to this Topic to the extent it contains multiple subparts which individually should constitute separate Topics.

Subject to, as limited by, and without waiving the foregoing objections, West responds as follows:  West will identify one or more witnesses to testify generally regarding non-privileged information concerning marketing and subscription information for Standard Plus, Professional, Professional Plus, Premier, and Premier Plus content.

**TOPIC NO. 20:**

YOUR development of the WESTLAW PLATFORM's Application Programming Interface(s) ("API"), including but not limited to YOUR policies about API development.

**RESPONSE TO TOPIC NO. 20:**

West incorporates by reference the above-stated General Objections as if fully set forth herein.  West specifically objects to this Topic as vague and ambiguous to the extent that the terms "Application Programming Interface(s) ('API')" and "policies about API development" are unclear and undefined.  West objects to this Topic as overly broad and unduly burdensome to the extent it calls for information that is neither relevant to the parties' claims or defenses nor proportional to the needs of this case, including because West's policies about API development are not relevant to any claim or defense in the case.  West objects to this Topic to the extent that it seeks information that is duplicative of other discovery taken in this case or that is more easily available through some less burdensome means.

Subject to, as limited by, and without waiving the foregoing objections, West responds as follows:  West will identify one or more witnesses to testify generally regarding non-privileged information concerning West's development of Application Programming Interface(s).

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

_____

OF COUNSEL:

Dale M. Cendali
Joshua L. Simmons
Eric A. Loverro
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
(212) 446-4800

Miranda D. Means
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
(617) 385-7500

Daniel E. Laytin
Christa C. Cottrell
Alyssa C. Kalisky
Cameron Ginder
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL  60654
(312) 862-2000

April 17, 2023

Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com

*Attorneys for Plaintiffs and Counterdefendants*
*Thomson Reuters Enterprise Center GmbH*
*and West Publishing Corporation*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 17, 2023, copies of the foregoing were caused to be served

upon the following in the manner indicated:

David E. Moore, Esquire                                    *VIA ELECTRONIC MAIL*
Bindu Palapura, Esquire
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE  19801
*Attorneys for Defendant and Counterclaimant*

Mark A. Klapow, Esquire                                   *VIA ELECTRONIC MAIL*
Lisa Kimmel, Esquire
Crinesha B. Berry, Esquire
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, DC  20004
*Attorneys for Defendant and Counterclaimant*

Gabriel M. Ramsey, Esquire                               *VIA ELECTRONIC MAIL*
Jacob Canter, Esquire
Warrington Parker, Esquire
CROWELL & MORING LLP
3 Embarcadero Center, 26th Floor
San Francisco, CA  94111
*Attorneys for Defendant and Counterclaimant*

*/s/ Michael J. Flynn*
_____
Michael J. Flynn (#5333)