**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

1201 NORTH MARKET STREET
P.O. BOX 1347
WILMINGTON, DELAWARE 19899-1347
———
(302) 658-9200

**MICHAEL J. FLYNN**
(302) 351-9661
mflynn@morrisnichols.com

April 28, 2023

The Honorable Stephanos Bibas                             *VIA ELECTRONIC FILING*
James A. Byrne United States Courthouse
601 Market Street
Philadelphia, PA 19106

      Re:    *Thomson Reuters Enterprise Centre GmbH, et al. v. ROSS Intelligence Inc.*,
            C.A. No. 20-613 (SB) (D. Del.)

Dear Judge Bibas,

      Thomson Reuters took this Court's Scheduling Order and direction that it would "not look kindly on further requests for extensions" seriously. (D.I. 306, Jan. 12, 2023 Oral Order). On February 17, after vigorous negotiations, the parties agreed to 35 search terms and 8 custodians. While these negotiations were ongoing, Thomson Reuters diligently reviewed and produced over 530,000 documents by February 22 to comply with the Court's February 23 substantial completion deadline. However, on March 29—40 days after the parties reached agreement and 34 days after the substantial completion deadline—ROSS suddenly demanded that Thomson Reuters produce documents from ***17 new custodians***. Still, as a compromise Thomson Reuters agreed to 13 new custodians and has committed to producing responsive documents by May 11, the current close of discovery. The current status of the case is the result of ROSS's own lack of diligence, and it should not be rewarded for such.

**I.     ROSS Has Failed to Show Good Cause to Modify the Schedule.**

      Federal Rule of Civil Procedure 16 authorizes courts to enter scheduling orders to "provide for the judicial control over a case, streamline proceedings, maximize the efficiency of the court system, and actively manage the timetable of case preparation to expedite the speedy and efficient disposition of cases." *MacQueen v. Union Carbide Corp.*, 2015 WL 167674, at *3 (D. Del. Jan. 8, 2015) (denying request for extension given moving party's failure to identify discovery deficiencies with specificity and their lack of diligence by "back-loading the discovery process"). Under Rule 16(b)(4), a schedule "may be modified only for good cause," which puts the burden on the moving party to "demonstrate that, ***despite its own diligent efforts***, scheduling deadlines cannot be met." *Id*. at *3 (emphasis added). Simply put, "[i]f [the moving] party was not diligent, the inquiry should end." *Alexiou v. Moshos*, 2009 WL 2913960, at *3 (E.D. Pa. Sept. 9, 2009) (denying request for extension because, as is the case here, the moving party failed to request documents until months after the scheduling order was issued).

      Conspicuously, ROSS omits the good-cause standard from its motion entirely. The reason is simple—ROSS cannot meet it. The sole justification for ROSS's motion is that Thomson

The Honorable Stephanos Bibas                                                                                    Page 2
April 28, 2023

Reuters is still producing documents and that ROSS may want to use those documents for further discovery. But any delay is of ROSS's own doing. It first insisted Thomson Reuters produce documents for these 17 new custodians nearly six weeks after the parties originally agreed to search terms and custodians and over a month after the substantial completion deadline. Ex. 1 (Timeline of Search Parameter Negotiations).[1]

ROSS's lack of diligence is readily apparent. Thomson Reuters first proposed custodians on January 24. Ex. 1 (A at 1-2). Though the parties discussed myriad issues regarding document discovery over the course of the next several weeks (*e.g.*, Ex. 1 (B)), ROSS only expressed concern regarding two custodian-related issue: an alleged lack of (i) direct communications with Westlaw customers and potential customers; and (ii) communications with governmental entities regarding obtaining judicial opinions, Ex. 1 (C at 2-4, 8-10 ) (highlighted portions). However, neither issue justified ROSS's untimely demand to add custodians. In lieu of additional custodial collections, the parties agreed on February 24 that Thomson Reuters would produce information relating to Westlaw sales from its contract management software, Conga. Ex. 1. Accordingly, Thomson Reuters produced information regarding over 350,000 Conga entries. ROSS also dropped its request for an additional custodian related to Thomson Reuters' process of obtaining judicial opinions and has not raised the issue since around February 21. *See, id*. These were the only two specific custodial issues discussed by the parties for months, and Thomson Reuters took steps to ensure that additional documents and data were produced to satisfy these supposed deficiencies.

For weeks, ROSS did not raise a single issue regarding custodians. That changed on March 29—the day after the Court granted ROSS's motion to expand the temporal scope of production. Ex. 1 (D at 1-2). According to ROSS, the "ruling [] made the current custodian list untenable" and it demanded 17 new custodians. *Id*. at 1  But ROSS offered no explanation for why the Court's ruling on the temporal scope of production related in any way to Thomson Reuters' custodian list. Nor could it. Thomson Reuters' original eight custodians had a combined 170 years of experience at the company. Several of those individuals have been employed at West Publishing or Thomson Reuters since the early 1990s. In contrast, ROSS's newly demanded custodians average just 10 years at the company, while the prior agreed-upon custodians averaged 21. (Ex. 2, Custodian Employment Timeframes).

There was no reason for ROSS's delay. ROSS had been aware of these newly proposed custodians for weeks. In fact, as part of the original agreement regarding the 8 custodians, Thomson Reuters had already produced almost 100,000 emails that included these newly requested custodians over a month before ROSS's request. Ex. 1. Meaning ROSS was absolutely aware of these individuals weeks before requesting additional discovery related to them. When Thomson Reuters attempted to reach a reasonable resolution, instead of engaging in a productive counterproposal, Thomson Reuters' efforts were met with unfounded allegations. *Id*. (E at 6) (04/10/23 Email from G. Ramsey). Despite that, as a compromise and to avoid burdening the Court with another dispute, Thomson Reuters agreed to search and produce emails for 13 new custodians and add a new search term. *Id*. (E at 3-4). Then, and only then, did ROSS raise that they would be seeking to modify the schedule. *Id*. (E at 2-3).

---

[1] Exhibit 1 contains Exhibits A-F, which are referred to herein as, e.g., "Ex. 1 (A)."

The Honorable Stephanos Bibas											Page 3
April 28, 2023

      ROSS waited until the close of discovery to issue new document requests and demand new custodians. ROSS cannot now use its own delay to drag out this case for the express purpose of taking more discovery that its delay would otherwise prohibit. D.I. 462, at 2 ("nor will it be possible to notice depositions based on newly-produced documents"). ROSS's last-minute efforts should be regarded as "too little too late." *See Rivera-Almodovar v. Instituto Socioeconomico Comunitario, Inc.*, 730 F.3d 23, 27 (1st Cir. 2013) (affirming denial of discovery extension and finding plaintiff's three-month delay in seeking documents was an inexcusable "lackadaisical approach to discovery"). Scheduling orders are the heart of every case and are the key in resolving matters efficiently. Amending the schedule here would increase litigation costs and further delay the resolution of this case, despite ROSS already being afforded every opportunity to fully explore discovery in the time permitted, including the recent extension of discovery deadlines (D.I. 306). *See Trebor Sportswear Co. v. The Ltd. Stores, Inc.*, 865 F.2d 506, 511 (2d Cir. 1989) (denying additional discovery given the ample time permitted to conduct discovery).

**II.     Thomson Reuters Agrees to Produce Responsive Documents by May 11.**

      Thomson Reuters regrets that the Court is now burdened with a dispute about production timing. On April 18, a mere three business days after the parties reached agreement on the 13 additional custodians and additional search term, ROSS demanded Thomson Reuters provide a date certain by which it would produce documents. Ex. 1 (F at 1-2). At the time of ROSS's demand, Thomson Reuters informed ROSS that collections were ongoing and information was not yet available regarding the number of documents subject to review. Rather than allowing Thomson Reuters a few days to gather information on the production timing, ROSS rushed to file this dispute with the Court.

      Thomson Reuters is pleased to report that its collections are now largely complete. To ensure compliance with the Court's schedule, it has hired **75** additional reviewers to assist in ensuring that productions are completed by the May 11 close of fact discovery.[2]

                \*          \*          \*

      Thomson Reuters respectfully requests that this Court require ROSS to treat the scheduling order as seriously as it has and deny ROSS's request to further delay the resolution of this matter.

                                                    Respectfully,

                                                    Michael J. Flynn (#5333)
                                                    *Counsel for Plaintiffs*

cc:     Counsel of record

---

[2] The parties have scheduled a number of depositions in these last weeks of discovery in order to meet the May 11 discovery deadline and have agreed that a limited number may occur after the close of discovery due to scheduling conflicts. However, ROSS's counsel has confirmed that it will not use this limited agreement to support its motion to extend the schedule.