

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984 6000
www.potteranderson.com

**David E. Moore**
Partner
Attorney at Law
dmoore@potteranderson.com
302 984-6147 Direct Phone

May 17, 2023

**VIA ELECTRONIC FILING**

The Honorable Stephanos Bibas
United States Court of Appeals For the Third Circuit
James A. Byrne United States Courthouse
601 Market Street
Philadelphia, PA 19106

Re: *Thomson Reuters Enterprise Centre GmbH et al. v. ROSS Intelligence Inc.*,
C.A. No. 20-613-SB (D. Del.)

Dear Judge Bibas:

On May 1, 2023, the Court denied ROSS Intelligence, Inc.'s request for an extension to the discovery schedule, but gave ROSS the right to refile if Plaintiffs failed to meet their discovery obligations. (D.I. 476.) Fact discovery has now closed, and Plaintiffs have not met their obligations. For the reasons set forth below, ROSS thus asks the Court to extend the deadline for it to submit expert reports, which are currently due on May 25, 2023, to June 26, 2023, and to extend all other deadlines by 30 days. The parties conferred and are at an impasse. Additionally, ROSS requests the ability to notice the deposition of fact witnesses as necessary based on the late produced documents, within the hour limits already established. (D.I. 41.)

Under Federal Rule of Civil Procedure 16(b)(4), a scheduling order may be modified for "good cause and with the judge's consent." Good cause is based on the moving parties' diligence. *Bigband Networks, Inc. v. Imagine Commc'ns, Inc.*, 2010 WL 2898286, at *2 (D. Del. July 20, 2010) "Good cause exists when the Schedule cannot reasonably be met despite the diligence of the party seeking the extension." *ICU Med., Inc. v. RyMed Techs., Inc.*, 674 F. Supp. 2d 574, 577 (D. Del. 2009) (quotation marks omitted). Courts in the Third Circuit have similarly recognized the "necessity" of modifying schedules due to "'acts of the opposing party or by the opponent's failure to act.'" *Black Bear Energy Servs., Inc. v. Youngstown Pipe & Steel*, LLC, 551 F. Supp. 3d 555, 560 (W.D. Pa. 2021) (quoting 6A Wright & Miller, Federal Practice and Procedure, § 1522.1 (3d ed. 2010)). Here good cause exists because Ross has diligently met its obligations and Plaintiffs have not.

**A. Good Cause Supports Modifying the Expert Report Schedule**

On May 8, several days before the close of discovery, Plaintiffs produced 70,625 documents. (Declaration of Anna Z. Saber ¶ 8.) On May 10, *one day* before the close of fact discovery, Plaintiffs produced 141,898 documents. (*Id.* ¶ 9.) ROSS is prejudiced by this in the following ways: First, this production coupled with the 550,722 documents produced by Plaintiffs on May 2 and 3, (*Id.* ¶¶ 6-7,) are the majority of the documents that Plaintiffs were ordered to produce by this Court. (Oral Order, Mar. 28, 2023.) Plaintiffs delayed their production of those documents until *after ROSS deposed all but two of Plaintiffs' witnesses*. (Saber Decl. ¶¶ 4-5 (127,950 documents produced pursuant to Court order between April 17 and April 25; *Id.* ¶¶ 6-10 (763,277 Court ordered documents produced between May 2 and May 11).) In total, Plaintiffs' produced over 3.4 million pages of documents between May 2 and May

The Honorable Stephanos Bibas
May 17, 2023, Page 2

11. (*Id.* ¶ 10.) This late production prevented ROSS from using a majority of these documents in depositions. Second, Plaintiffs' late production prevented ROSS from deposing anyone whose importance became apparent based on the documents. Finally, Expert reports are due on May 25. Plaintiffs' late and voluminous document dump prevents ROSS from having the ability to meaningfully assess the documents in advance of expert reports. ROSS must now review almost a million documents in order to determine their relevance to expert reports. This prejudice supports a finding of good cause to extend the case schedule. Courts have granted similarly modest requests for extensions under similar circumstances. *See, e.g.*, *Team Express Distrib., LLC v. Junction Sols., Inc.*, 2017 WL 10820159, at *7 (W.D. Tex. Aug. 30, 2017) (granting a thirty-day extension to evaluate large production made at end of fact discovery).

### A. Ross Has Diligently Met its Obligations and Plaintiffs Have Not

Plaintiffs failed to substantially complete document production by February 23, 2023 as required by the Scheduling Order. (D.I. 506.) Since April 17, Plaintiffs have produced 149,284 documents held by Ben Davis, who was not on Plaintiffs initial disclosures or one of their original custodians. The same goes for Maria Redmond, who held 82,787 responsive documents; Jenny Deutsch, with 76,818 responsive documents; and Eric Gleason, who had 70,742 responsive documents. (Saber Decl. ¶ 12, Ex. 2, D.I. 222; *id.* ¶ 13.)[1] Other custodians Plaintiffs failed to voluntarily disclose and from whom Plaintiffs did not collect documents originally are Aimee Doles, who was charged with monitoring ROSS and other start-ups, and Bob Biancamano, who monitored competitive market intelligence for search analytics at least as far back as 2013. (Ex. 1.) Plaintiffs only produced documents from these additional custodians after ROSS identified gaps in Plaintiffs' productions and after the production was ordered by the Court. (Saber Decl. Ex. 1; Oral Order, Mar. 28, 2023.) The custodial documents have now been produced but not in time for use in depositions.

Even for the eight original custodians,[2] Plaintiffs' productions have been lacking and included late-produced documents. ROSS deposed Brigitte You on April 26 and Christine Post on April 27. Plaintiffs produced 17,144 of Ms. You's and 22,371 of Ms. Post's documents since April 23, but not in time to review and use those documents at their depositions. *See Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 2006 WL 8411647, at *1 (D. Del. Feb. 7, 2006).

ROSS was diligent in identifying issues with Plaintiffs' production. ROSS pursued the production from additional custodians, which required ROSS to review the February 23 production and meet and confer. Within a little over a month of receiving more than 500,000 documents, ROSS identified the gaps in Plaintiffs' productions. Plaintiffs agreed—eventually—to produce documents from 13 other custodians alongside documents whose production was compelled by this Court's March 28 order (Saber Decl. Ex. 1; Oral Order, dated Mar. 28, 2023.)

### B. Plaintiffs' Dilatory Discovery Practices Have Prejudiced ROSS

Plaintiffs produced 533,856 documents from eight custodians before the substantial completion deadline. (Saber Decl. ¶ 2.) Plaintiffs did not produce another document until April 17, 2023. (*Id.* ¶¶ 3-4.) Since April 17, 2023, Plaintiffs have produced 891,227 documents. (*Id.* ¶¶ 4-10.) Of the 891,227 documents, Plaintiffs produced 763,277 documents after ROSS

---

[1] Ben Davis is West's Manager of Revenue Management & Strategy. Maria Redmond is West's Sales and Client Management Director. Eric Gleason is the Vice President of Sales Findlaw
[2] From the start, ROSS informed Plaintiffs that eight custodians was insufficient. (Saber Decl. ¶ 14, Ex. 3.)

The Honorable Stephanos Bibas
May 17, 2023, Page 3

deposed all but two of Plaintiffs' witnesses. (*Id.* ¶¶ 6-10.) In short, Plaintiffs produced less than 25% of their documents before the substantial completion deadline, and provided no opportunity for ROSS to meaningfully use most of Plaintiffs' documents during fact discovery.

Plaintiffs' production delays began in November 2022 when ROSS engaged in 13 meet and confers to obtain these additional documents. The number of meet and confers were largely driven by Plaintiffs' penchant for negotiating to an impasse and then changing their position so that the meet and confer had to re-start anew. (*See* D.I. 396.) It was only after ROSS sought relief from this Court (Oral Order, Mar. 28, 2023) and then engaged in another two weeks of meet and confers to expand the custodian list, which was inadequate to begin with, (Saber Decl. ¶ 11, Ex. 1,) did Plaintiffs finally agree to produce the documents ROSS had been seeking for months. And, as described above, Plaintiffs waited until May 2 to produce a majority of these documents.

Plaintiffs have an obligation to produce all responsive, non-privileged documents located after a reasonable search of documents within their possession, custody, or control. *See Graco, Inc. v. PMC Glob., Inc.*, 2011 WL 1114233, at *42 (D.N.J. Mar. 24, 2011) "The 'basic philosophy' driving discovery today is 'that prior to trial every party to a civil action is entitled to the disclosure of all relevant information in the possession of any person, unless the information is privileged.'" *Sines v. Kessler*, 2020 WL 3428988, at *1 (W.D. Va. June 23, 2020) (quoting 8 Wright & Miller, Federal Practice & Procedure § 2001 (3d ed. 2002)); *see also Fahs ex rel. Fahs v. Red Lion Area Sch. Dist.*, 2017 WL 4618274, at *2 (M.D. Pa. Oct. 16, 2017). Their production has been inadequate. For example, RFP 219 required Plaintiffs to produce all agreements related to Plaintiffs' acquisition of public law, without time limitation. Plaintiffs produced an interrogatory response from another case, the *West Publishing Company v. Mead Data Central, Inc.* litigation. That response identified agreements with courts to acquire and print opinions. (Saber Decl. ¶ 15, Ex. 4.) Two other documents also reference agreements with specific courts to acquire and publish case law. (*Id.* ¶¶ 16-17, Exs. 5 & 6.) Although these agreements are responsive to at least RFP 219, yet it does not appear that Plaintiffs produced them (*Id.* ¶¶ 15, 18.) At minimum, ROSS needs time to investigate these deficiencies.

Plaintiffs further delayed when they failed to identify the appropriate custodians. The information needed to identify custodians is uniquely in the producing party's possession, and therefore the producing party is expected to investigate and identify the proper custodians. *See Orchestrate HR, Inc. v. Blue Cross & Blue Shield of Kansas, Inc.*, 2022 WL 834066, at *2 (D. Kan. Mar. 21, 2022). And the use of custodians is a device to manage the discovery process and moderate burden—it is not meant to thwart the production of discoverable information. *See, e.g.*, *Enslin v. Coca-Cola Co.*, 2016 WL 7042206, at *6 n.3 (E.D. Pa. June 8, 2016) ("[T]he selection of custodians is more than a mathematical count. The selection of custodians must be designed to respond fully to document requests and to produce responsive, nonduplicative documents during the relevant period.") (internal citation and quotation marks omitted); *see also SPS Techs., LLC v. Briles Aerospace, Inc.*, 2019 WL 13108021, at *1 (C.D. Cal. June 25, 2019).

When, as here, a party has delayed its productions, forced the other to engage in lengthy conferrals, refused to produce until losing a motion, and then produced voluminous discovery, courts have found good cause to modify scheduling orders. *See Felman Prod., Inc. v. Indus. Risk Insurers*, 2010 WL 3119338, at *3 (S.D.W. Va. July 28, 2010); *see also Ormeno v. 3624 Georgia Ave., Inc.*, 309 F.R.D. 29, 34 (D.D.C. 2015). ROSS thus asks this Court to grant ROSS's request for an extension and to further depose fact witnesses as necessary.

The Honorable Stephanos Bibas
May 17, 2023, Page 4

                                                                                                      Respectfully,

                                                                                                      */s/ David E. Moore*

                                                                                                      David E. Moore

DEM:nmt/20516.00001/10811602

cc: Counsel of Record (via electronic mail)