MORRIS, NICHOLS, ARSHT & TUNNELL LLP

1201 NORTH MARKET STREET
P.O. BOX 1347
WILMINGTON, DELAWARE 19899-1347

(302) 658-9200

MICHAEL J. FLYNN
(302) 351-9661
mflynn@morrisnichols.com

May 22, 2023

The Honorable Stephanos Bibas                                                    *VIA ELECTRONIC FILING*
James A. Byrne United States Courthouse
601 Market Street
Philadelphia, PA 19106

    Re:   *Thomson Reuters Enterprise Centre GmbH et al. v. ROSS Intelligence Inc.,*
           C.A. No. 20-613 (SB)

Dear Judge Bibas:

      Just three weeks ago, ROSS sought to move the case schedule, claiming it needed more time with Thomson Reuters' documents. The Court denied that motion, finding ROSS did not meet the good cause standard. Undeterred, ROSS is now trying again to move the schedule, making many of the exact same arguments that were already rejected by this Court. And its new argument, that Thomson Reuters failed to produce decades-old agreements, gets them nowhere: Thomson Reuters has already confirmed the sought-after agreements no longer exist. In short, ROSS's motion is a re-packaged version of what it filed three weeks ago. Just as then, ROSS did not meet the exacting good cause standard—and it still does not now either.

**I.    Thomson Reuters Has Fulfilled Its Discovery Obligations.**

      On May 1, 2023, the Court rejected ROSS's first attempt to extend the schedule, holding that "requests for extension were disfavored" and that ROSS made "no effort to meet the demanding good cause standard such requests require." D.I. 476. The Court stated ROSS could renew its request—"[i]f Plaintiffs fail[ed] to meet their discovery obligations." *Id.* Thomson Reuters *has* met its discovery obligations and produced all documents by the close fact of discovery. Indeed, Thomson Reuters completed its production by May 11, and ROSS does not suggest or argue otherwise.

      That should end the inquiry. Nevertheless, on May 12, ROSS asked Thomson Reuters to stipulate to an extension because it supposedly "failed to produce documents in time." Ex. A (5/12/23 Emails from Steinberg). Thomson Reuters responded within minutes, asking ROSS to explain how Thomson Reuters had not met its discovery obligations. *Id*. (5/12/23 Email from Barsanti). It then took ROSS nearly three days to come up with a basis for its response. *Id*. (5/15/23 Email from Steinberg). ROSS explained the ***sole new basis*** for an extension was that certain documents (D.I. 489, Exhibits 4-6), out of the over 1.4 million produced, referenced a handful of decades-old agreements Thomson Corporation had with courts to publish judicial opinions. Specifically, Exhibits 4 and 5 refer to agreements from nearly 40 years ago while the underlying agreement to publish Fifth Circuit opinions in Exhibit 6 is 20 years old.

The Honorable Stephanos Bibas  Page 2
May 22, 2023

ROSS claims that it has been "diligent" but needs "time to investigate these deficiencies." D.I. 488, at 3. Neither is true: there was no diligence, nor are there *any* production deficiencies. Thomson Reuters produced Exhibits 4-6 on or before April 21—before ROSS's *first* request for an extension and almost a ***month*** before ROSS raised this with Thomson Reuters. Ex. B at 1 (rows 8 and 9 reflect the Bates range in which these documents fall). Even more importantly, ROSS's motion is based on a non-issue. During the meet and confer, ROSS's counsel admitted that there "very well may not be a gap here for all we know." And there is not. The specific contracts ROSS claims are missing no longer exist—an unsurprising fact given the agreements are decades old. What's more, Thomson Reuters has produced over 600 government contracts in response to ROSS's discovery requests.

## II. ROSS Has Yet Again Failed to Show Good Cause to Modify the Schedule.

This time around, ROSS at least acknowledges that "good cause" for modifying a scheduling order is based on the moving parties' diligence. *MacQueen v. Union Carbide Corp.*, 2015 WL 167674, at *3 (D. Del. Jan. 8, 2015) (the moving party has the burden to show that "*despite its own diligent efforts*, scheduling deadlines cannot be met") (emphasis added); *Alexiou v. Moshos*, 2009 WL 2913960, at *3 (E.D. Pa. Sept. 9, 2009) ("If [the moving] party was not diligent, the inquiry should end."). As this Court has noted, this standard is "demanding" (D.I. 476) and ROSS cannot meet it.

*First*, ROSS contends that an extension is appropriate because Thomson Reuters produced documents toward the end of discovery and that this purportedly "late production" "prevented ROSS from using a majority of these documents in depositions" and "meaningfully assess[ing] the documents in advance of expert reports." D.I. 488 at 1-2. These are ***precisely*** the arguments ROSS made in its first request, when it claimed—almost verbatim—that a production by May 11 "does ROSS little good" because it "cannot use documents in depositions" and "[i]ts experts cannot use documents to prepare expert reports." D.I. 462 at 1. The Court rejected this argument then, and it should now.

Nor did Thomson Reuters "delay" or "wait" to produce documents at the end of discovery. Thomson Reuters has already set forth in detail ROSS's delayed requests for new custodians and additional search terms in its opposition to ROSS's first motion to extend. *See* D.I. 474. Certain points bear repeating. ROSS waited ***five months*** after the Court denied Thomson Reuters' motion to dismiss to serve RFPs. Then, ROSS waited until March 29—nearly ***six weeks after*** the parties originally agreed to search terms and custodians and ***over a month after*** the substantial completion deadline—to request ***17 new custodians***. *Id.* at Ex. 1 (D). The parties ultimately agreed to an additional 13 custodians. From there, Thomson Reuters moved quickly, hiring over ***75 additional attorney reviewers*** to meet the fact discovery deadline and providing rolling productions as soon as those documents underwent review. *See* Ex. B (Production Volumes).[1] ROSS was fully aware of both the fact discovery cutoff and the expert discovery deadlines when it demanded this additional discovery. It is disingenuous for ROSS to now argue that it has been prejudiced by the very productions it demanded so late into the discovery schedule.

---

[1] Notably, ROSS also produced documents after the substantial completion deadline, including the last day of fact discovery. *See* Exs. C (5/11/23 2:20 PM ET Email from Canter) and B at 2.

The Honorable Stephanos Bibas | Page 3
May 22, 2023

*Second*, recognizing its own delay precludes it from meeting the demanding good-cause standard, ROSS pivots to arguing that Thomson Reuters' initial custodian list was inadequate. This again rehashes an argument the Court already rejected. In its first motion, as here, ROSS complained that Thomson Reuters initially "only produced documents from 8 custodians" before "extend[ing] that number to 22 custodians." D.I. 462 at 1. ROSS's own lack of diligence again dooms its request for an extension. Thomson Reuters proposed its initial custodian list on January 24. *Id.* Other than a single request for custodians with customer contacts, which the parties' mutually resolved by agreeing to a production from Thomson Reuters' sales database, ROSS sat silent for two full months until March 29. Only then—over ***a month after*** the substantial completion deadline—did ROSS insist on adding custodians.

Regardless, ROSS's complaint about Thomson Reuters' custodian list is meritless. Thomson Reuters carefully selected high-ranking individuals with long tenures because of their vast knowledge and involvement in potentially relevant issues. As ROSS concedes, the responding party is best situated to identify individuals within its organization that have the information relevant to the case. *Orchestrate HR, Inc. v. Blue Cross & Blue Shield of Kansas, Inc.*, 2022 WL 834066, at *2 (D. Kan. Mar. 21, 2022); *see also Enslin v. Coca-Cola Co.*, 2016 WL 7042206, at *6 n.3 (E.D. Pa. June 8, 2016) (denying motion to compel additional custodians and finding in "an era where vast amounts of electronic information is available for review ... courts cannot and do not expect that any party can meet a standard of perfection."). Throughout negotiations, Thomson Reuters explained to ROSS *why* certain individuals were designated as custodians and *why* the list was sufficient. Nevertheless, ROSS belatedly insisted on adding custodians that were largely duplicative—1.5 months before the close of fact discovery. *See*, D.I. 474, Ex. 2. Thomson Reuters ultimately agreed, in the spirit of compromise, to produce documents from 13 additional custodians just like ROSS wanted, within days after ROSS's first request to add them. But that Thomson Reuters agreed to the additional custodians ROSS demanded—after the substantial completion deadline—is not good cause to extend the strictly-enforced case schedule.

*Finally*, ROSS makes a last-ditch argument that it would have taken *more* depositions if it had received their documents earlier. This, too, repeats an argument that ROSS made in its first motion: "nor will it be possible to notice depositions based on newly-produced documents." D.I. 462 at 2. This is no more persuasive now than it was the first time around. ROSS had Thomson Reuters' production of documents from the parties' initial agreed custodian list by February 23. ROSS then insisted on adding custodians on March 29. Had ROSS noticed additional depositions, then the parties could have discussed prioritizing document production by custodian.

\*     \*     \*

At bottom, ROSS rehashes many of the same arguments it made three weeks ago; those were not sufficient then, nor are they now. Its new arguments, such as alleged "deficiencies," were rushed and made without waiting for Thomson Reuters to confirm there is no deficiency at all. Thomson Reuters has fully met its discovery obligations and did so expeditiously after ROSS made its requests. That ROSS made many of those late in the process is not a reason to push the schedule, nor does it meet the exacting good cause standard. For these reasons, Thomson Reuters respectfully requests that this Court deny ROSS's renewed request.

The Honorable Stephanos Bibas Page 4
May 22, 2023

>Respectfully,
>
>Michael J. Flynn (#5333)
>*Counsel for Plaintiffs*

cc: Counsel of Record