## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION,<br><br>Plaintiffs/Counterdefendants,<br><br>v.<br><br>ROSS INTELLIGENCE INC.,<br><br>Defendant/Counterclaimant. | )<br>)<br>)<br>)<br>)  C.A. No. 20-613-SB<br>)<br>)  **JURY TRIAL DEMANDED**<br>)<br>)   **PUBLIC VERSION**<br>)<br>)<br>)<br>) |

## DEFENDANT AND COUNTERCLAIMANT ROSS INTELLIGENCE, INC.'S BRIEF IN SUPPORT OF MOTION TO EXCLUDE CERTAIN OPINIONS PLAINTIFFS AND COUNTERDEFENDANTS' <u>EXPERT CHAD SYVERSON</u>

OF COUNSEL:

Gabriel M. Ramsey
Warrington S. Parker III
Joachim B. Steinberg
Jacob Canter
Christopher J. Banks
Margaux Poueymirou
Anna Z. Saber
Beatrice B. Nguyen
CROWELL & MORING LLP
3 Embarcadero Center, 26th Floor
San Francisco, CA 94111
Tel:  (415) 986-2800

Mark A. Klapow
Crinesha B. Berry
Matthew J. McBurney
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC  20004
Tel:  (202) 624-2500

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Andrew L. Brown (#6766)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
Tel:  (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
abrown@potteranderson.com

*Attorneys for Defendant/Counterclaimant*
*ROSS Intelligence, Inc.*

Shira Liu
CROWELL & MORING LLP
3 Park Plaza, 20th Floor
Irvine, CA 92614
Tel: (949) 263-8400

Dated:  August 31, 2023
11006854 / 20516.00001

Public Version Dated: September 7, 2023

## TABLE OF CONTENTS

Page

INTRODUCTION AND SUMMARY OF ARGUMENTS ................................................................ 1

NATURE AND STAGE OF PROCEEDING ........................................................................ 2

BACKGROUND ............................................................................................................... 2

    A.     ROSS's Antitrust Counterclaims ................................................................ 2

    B.     Dr. Syverson's Opinions and Testimony ................................................... 4

LEGAL STANDARD ......................................................................................................... 5

ARGUMENT .................................................................................................................... 6

    A.     Dr. Syverson's claims about legal researchers' "tastes" are unreliable and irrelevant because they are based only on his subjective belief, unsupported speculation, and "say-so." .............................................. 6

    B.     Dr. Syverson's claims about ██████████████████████ ████████████ are unreliable and irrelevant because ████████ ████████████████████████ .............................. 9

CONCLUSION .................................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*B. Braun Melsungen AG v. Terumo Med. Corp.*,
749 F. Supp. 2d 210 (D. Del. 2010)......................................................................................6

*Clark v. Takata Corp.*,
192 F.3d 750 (7th Cir.1999) ...............................................................................................10

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993)......................................................................................................5, 6, 7

*Elcock v. Kmart Corp.*,
233 F.3d 734 (3d Cir. 2000)..................................................................................................5

*ePlus, Inc. v. Lawson Software, Inc.*,
764 F. Supp. 2d 807 (E.D. Va. 2011) ...................................................................................7

*Fail-Safe, L.L.C. v. A.O. Smith Corp.*,
744 F. Supp. 2d 870 (E.D. Wis. 2010).................................................................................10

*General Elec. Co. v. Joiner*,
522 U.S. 136 (1997)..........................................................................................................6, 7

*Greatbatch Ltd. v. AVX Corp.*,
C.A. No. 13-723-LPS, 2015 WL 9171042 (D. Del. Dec. 8, 2015)..........................................5

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999)..........................................................................................................5, 7

*In re Live Concert Antitrust Litig.*,
863 F. Supp. 2d 966 (C.D. Cal. 2012) ..................................................................................7

*Meadows v. Anchor Longwall & Rebuild, Inc.*,
306 F. App'x 781 (3d Cir. 2009) ...........................................................................................6

*SEC v. Tourre*,
950 F. Supp. 2d 666 (S.D.N.Y. 2013)....................................................................................7

*Tridon Indus., Inc. v. Willis Chevrolet, Inc.*,
C.A. No. 12-1070-LPS, 2014 WL 1338678 (D. Del. Apr. 1, 2014)........................................6

*United States v. Ford*,
481 F.3d 215 (3d Cir. 2007).................................................................................................5

*Withrow v. Spears*,
   967 F. Supp. 2d 982 (D. Del. 2013).........................................................................5, 6

**Other Authorities**

Fed. R. Evid. 702 ....................................................................................................5, 6

Fed. R. Evid. 702(a)...................................................................................................5

Fed. R. Evid. 702(b)-(d).............................................................................................5

## INTRODUCTION AND SUMMARY OF ARGUMENTS

Counterdefendants operate and market Westlaw—the dominant legal research platform in this country.  Counterdefendants achieved Westlaw's dominance not through competitive means, but rather by unlawfully tying access to Westlaw's comprehensive and "must-have" database of U.S. public law to the licensing of a Westlaw legal search tool.  In this manner, Counterdefendants prevent consumers (*i.e.*, legal researchers) from being able to choose other legal search technologies (such as that offered by ROSS) to search across their comprehensive database of U.S. public law.  The consequence of Counterdefendants' anticompetitive conduct is diminished consumer choice and a curb on innovation.

In an effort to justify their anticompetitive conduct, Counterdefendants rely on the testimony of Dr. Chad Syverson, an economist, who offers the following two claims about consumer choice and demand:

First, without citing any support and ignoring the evidence, Dr. Syverson purports to convey expertise on the "tastes" of all legal researchers, opining that ████████████ ████████████████████████████████ (Declaration of Beatrice B. Nguyen ("Nguyen Decl."), Ex. A ¶ 13.)

Second, similarly without any support, Dr. Syverson predicts the demand among all legal researchers for using non-Westlaw search tools to search Westlaw's comprehensive database of U.S. public law, claiming that ███████████████████████████ ████████████████████████████████ (Nguyen Decl., Ex. A ¶ 96.)

ROSS respectfully requests that the Court exclude both of these opinions because they are nothing more than pronouncements made by Dr. Syverson based solely on his subjective beliefs without any support in—and in fact contradicted by—the evidence.

## NATURE AND STAGE OF PROCEEDING

Counterdefendants commenced this action in May 2020, asserting claims for copyright infringement and tortious interference with contract.  ROSS counterclaimed for violations of the Sherman Act and California's Unfair Competition Law.  Discovery with respect to both the copyright and antitrust claims is now complete.  The parties are awaiting a trial date.

## BACKGROUND

### A.     ROSS's Antitrust Counterclaims

Counterdefendants market and sell Westlaw, a legal research platform.  (D.I. 185 ¶ 5.) The Westlaw product includes a comprehensive database of U.S. "public law," which is comprised of federal and state court decisions, federal and state statutes, as well as administrative rules and guidance.  (Nguyen Decl., Ex. B at 28:19–29:1, Ex. C at 39:16–24.)  Westlaw also includes a variety of legal search technologies that permit legal researchers to search across Westlaw's public law database.  (Nguyen Decl., Ex. B at 24:16–25:7.)  The public law database has unique characteristics that make it a "must-have" for many legal researchers.  (Nguyen Decl., Ex. D ¶¶ 17, 75.)



(*Id.* ¶¶ 17, 75, 76.)

(*Id.* ¶¶ 81, 87–91.)

Even though public law databases and legal search technologies can be used interchangeably, Counterdefendants prohibit legal researchers from using any other legal search technologies to search across Westlaw's comprehensive public law database.  (Nguyen Decl., Ex. E, at 5 (Counterdefendants' Resp. to RFA No. 136).)  Instead, Counterdefendants require legal researchers to license a Westlaw legal search tool if they want access to Westlaw's public law database.  (Nguyen Decl., Ex. F at 21:8–14.)  ROSS's antitrust counterclaims arise from the

harm caused by Counterdefendants' anticompetitive conduct: Consumers are foreclosed from licensing Westlaw's public law database as a standalone product and pairing it with the non-Westlaw search technologies of their choice.  (D.I. 36 ¶¶ 101, 102, 107.)

In particular, Counterdefendants impose two vertical restraints that restrict their subscribers to use only a Westlaw legal search tool when searching Westlaw's public law database.  (Nguyen Decl., Ex. D ¶ 16.)  Counterdefendants offer access to Westlaw's collection of public law only as a tied bundle in the form of a subscription that includes both (a) access to the Westlaw collection of public law and (b) access to one of Westlaw's search tool products. (Nguyen Decl., Ex. D ¶¶ 16, 74, Ex. F at 15:4–15.)  Counterdefendants also prevent and forbid Westlaw subscribers from using competing legal search tools to access Westlaw's collection of public law.  (Nguyen Decl., Ex. D ¶ 74; *see also* Nguyen Decl., Ex. G (Westlaw Terms and Conditions) § 3.c, https://legal.thomsonreuters.com/content/dam/ewp-m/documents/legal/en/pdf/terms-and-agreements/commercial-agreements/general-terms-and-conditions-final.pdf.)

By "tying" Westlaw's public law database to its legal search technologies in this manner, Counterdefendants restrict consumer choice for alternative search technologies and, as a consequence, stifle innovation in the provision of legal search.  (Nguyen Decl., Ex. D ¶¶ 259, 261.)  If not for Counterdefendants' vertical restraints, legal researchers would have the option of searching Westlaw's "must-have" public law database by either using one of Westlaw's own search technologies (*i.e.*, Westlaw Classic, Westlaw Edge, or Westlaw Precision) **or** by using a search technology offered by a different provider, such as the AI-based search tool that ROSS developed.  (Nguyen Decl., Ex. D ¶ 261.)  Put another way, Counterdefendants' anticompetitive

conduct curbs consumer choice and consumer demand for alternative search technologies which, in turn, harms innovation.

## B.    Dr. Syverson's Opinions and Testimony

Much of Dr. Syverson's expert report focuses on consumer preferences and choice.  To reach his ultimate conclusion that Counterdefendants' conduct is "procompetitive" (Nguyen Decl., Ex. A ¶ 10), Dr. Syverson offers two "expert" opinions on legal researchers' "tastes" and the demand among legal researchers for using non-Westlaw search technologies to search Westlaw's comprehensive public law database.  These opinions are the focus of the present motion.

Specifically, Dr. Syverson starts by claiming 

(Nguyen Decl., Ex. A ¶ 59.)  He then broadly asserts that all legal researchers want to

(*Id.*)  Dr. Syverson then concludes that,

(*Id.* (emphasis added).)  Why the latter conclusion is           of the former statement about legal researchers' overall preferences is neither explained nor supported with citations.  Indeed, even if all legal researchers want their answers                          they may still disagree on the *manner* in which they search for and receive them.

Dr. Syverson then turns to his second opinion on this topic:

(*Id.*)  From there, he opines that

(*Id.*)  Dr. Syverson then jumps to the

conclusion that, ███████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████ (Nguyen Decl., Ex. A ¶ 96.)

## LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence governs the standard for admissibility of expert testimony and aids the courts in exercising their gatekeeping function to exclude unreliable and irrelevant evidence.  *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993); *see also Greatbatch Ltd. v. AVX Corp.*, 2015 WL 9171042, at *1 (D. Del. 2015).

The *Daubert* analysis focuses on three features of expert testimony: qualifications, reliability, and fit.  *See Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000).  Courts must confirm that a witness is qualified to testify as an expert by "knowledge, skill, experience, training, or education," and should only permit an expert to provide opinion testimony if his or her "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702(a).

Further, the expert's testimony must be both relevant and reliable.  *See id.*; *United States v. Ford*, 481 F.3d 215, 218 (3d Cir. 2007) ("The two fundamental requirements of *Daubert* are (1) reliability and (2) relevance."); *see also Daubert*, 509 U.S. at 589.  To meet this standard, the testimony must be (1) based on sufficient facts or data, (2) the product of reliable principles and methods, and (3) the result of principles and methods that are reliably applied to the facts of the case.  *See* Fed. R. Evid. 702(b)–(d); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 151 (1999).

An expert's testimony is reliable only when based on "methods and procedures of science" and not premised on "subjective belief or unsupported speculation"; the expert must have "good grounds" for his or her belief.  *Withrow v. Spears*, 967 F. Supp. 2d 982, 992 (D. Del. 2013).  "*[A]ny* step [in the methodology] that renders the analysis unreliable renders the expert's

-5-

testimony inadmissible." Fed. R. Evid. 702 advisory committee's note to 2000 amendments (ellipsis omitted) (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 745 (3d Cir. 1994)).

Expert testimony is relevant if it aids the trier of fact in understanding the evidence and "resolving a factual dispute." *Meadows v. Anchor Longwall & Rebuild, Inc.*, 306 F. App'x 781, 790 (3d Cir. 2009) ("In other words, expert testimony based on assumptions lacking factual foundation in the record is properly excluded."). Neither *Daubert* nor the Federal Rules of Evidence allow a court to admit expert opinions that are connected to existing data only by the *ipse dixit*—the "say so"—of the expert. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Under such circumstances, the Court "may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Id.*

The party seeking to introduce expert testimony (here, Counterdefendants) has the burden of proving that the admissibility requirements set forth above are met. *See Withrow*, 967 F. Supp. 2d at 992; *B. Braun Melsungen AG v. Terumo Med. Corp.*, 749 F. Supp. 2d 210, 222 (D. Del. 2010); *see also Daubert*, 509 U.S. at 592 n.10.

## ARGUMENT

**A.    Dr. Syverson's claims about legal researchers' "tastes" are unreliable and irrelevant because they are based only on his subjective belief, unsupported speculation, and "say-so."**

Dr. Syverson's claims about legal researchers' "tastes" are ripe for this Court's exercise of its gatekeeping function under *Daubert*. In evaluating Rule 702 admissibility, the "ultimate touchtone is helpfulness to the trier of fact, and with regard to reliability, helpfulness turns on whether the expert's technique or principle is sufficiently reliable so that it will aid the jury in reaching accurate results." *Tridon Indus., Inc. v. Willis Chevrolet, Inc.*, 2014 WL 1338678, at *3 (D. Del. Apr. 1, 2014).

Dr. Syverson cannot help the jury to reach accurate results because his opinions have no basis in fact or logic.  They do not even follow from Dr. Syverson's own statements.  When Dr. Syverson ███████████████████████████████ (Nguyen Decl., Ex. A ¶ 13), he relies on nothing more than his own say-so.  And, even if one were to accept that ███████████ ██████████████████████████████████████████████████ ███████ (Nguyen Decl., Ex. A ¶ 59), it does not necessarily follow that ███████████ ████████████████████████████████████ (*id.*).  That is quintessential *ipse dixit*: "It is so because I, the expert, say it is so.  I need not offer an explanation for why it is so.  It is precisely that kind of opinion that *Daubert*, *Kumho*, and *Joiner* require the district courts to exclude."  *ePlus, Inc. v. Lawson Software, Inc.*, 764 F. Supp. 2d 807, 814–15 (E.D. Va. 2011) (excluding economist's opinions where he simply stated that "he had considered each of the [relevant] factors . . . and then stated [his conclusion] without explaining at all how it was that the application of any one or all of those factors would permit [such conclusion]"); *see also SEC v. Tourre*, 950 F. Supp. 2d 666, 678 (S.D.N.Y. 2013) (excluding economist's opinions where he claimed that "his opinion as to 'economically material' information is based on 'economic logic'" as such claim "is simply a form of inadmissible ipse dixit").

Courts do not allow an economist, such as Dr. Syverson, to make pronouncements under the guise of "expert" opinions and then ask the jury to "just trust him."  *See In re Live Concert Antitrust Litig.*, 863 F. Supp. 2d 966, 996 (C.D. Cal. 2012) (excluding expert's testimony that essentially opined "I am an economist, I reviewed a large amount of 'industry information' . . . and this industry information supports my conclusion"); *see also Joiner*, 522 U.S. at 146 ("Nothing in *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion

evidence that is connected to existing data only by the *ipse dixit* of the expert."). An economist's "expert" opinions are even more concerning when he ignores *contradictory* evidence and, instead, subjects the jury to his unsupported claims. Had Dr. Syverson reviewed the available record, he would have seen that: ███████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████,[1] and (2) Counterdefendants themselves have invested hundreds of millions of dollars to try to address this varied demand, including recently acquiring Casetext, a legal AI search tool, for $650 million in order to appeal to legal researchers interested in incorporating AI into their searches.[2]

Equally troubling is Dr. Syverson's pronouncement that ████████████████

███████████████████████████████████████████

████████████████████████ (Nguyen Decl., Ex. A ¶ 59.) Here too, nothing supports Dr. Syverson's claim apart from the fact that he baldly says it. It is again not explained, and it is certainly not an obvious conclusion. █████████████████████████

---

[1] *See* Nguyen Decl., Ex. D (Ratliff Opening Report) § V.A.2 ████████████████
████████████████████████████████████████; Nguyen Decl., Ex. H, TRCC-
00194341-351, at 343 █████████████████████████████
████████████; Nguyen Decl. Ex. C at 24:11-21; 56:12-23
(████████████████████████████████████████). In fact,
Westlaw users have a preference for Westlaw Edge over Westlaw Classic or Westlaw Precision,
demonstrating that consumers have different "tastes." *See* Nguyen Decl. Ex. B at 188:21-189:1.
Thus, even based on Westlaw's own customers, it is readily apparent that legal researchers want
and expect varied options when it comes to legal search tools.

[2] *See* Nguyen Decl., Ex. I (Thomas Reuters Profit Tops Estimates as It Plans AI Push),
https://www.reuters.com/world/americas/thomson-reuters-reports-higher-first-quarter-sales-
profit-2023-05-02/; *see also* Nguyen Decl., Ex. J (Thomas Reuters to Acquire Legal AI Firm
Casetext for $650 Million), https://www.reuters.com/markets/deals/thomson-reuters-acquire-
legal-tech-provider-casetext-650-mln-2023-06-27/.

█████████████████████████████████████████████████████████████

████████████████████████████████████████ (Nguyen Decl., Ex. A ¶ 59.) Besides

running contrary to basic economic principles, this is something that should be left to consumers

to decide, not for Dr. Syverson—or Counterdefendants through their anticompetitive conduct—

to pronounce. (Nguyen Decl., Ex. K ¶¶ 124, 144.).

For these reasons, the Court should exclude Dr. Syverson's claims that ████████

███████████████████████████████████████████████████████ (Nguyen

Decl., Ex. A ¶ 13) and that ██████████████████████████████████████████

████████████████████ (Nguyen Decl., Ex. A ¶ 59).

**B.    Dr. Syverson's claims about** ████████████████████████████
          **are unreliable and irrelevant because** ██████████████
████████████

The Court similarly should exclude Dr. Syverson's claims ███████████

█████████████████████████████████████████████████████████

██████████████████████████████████. Dr. Syverson asserts that,

because, in his view, █████████████████████████████████████████████

████████████████████████████████████████████████████████

(Nguyen Decl., Ex. A ¶ 59.) Without any expected gain, Dr. Syverson concludes that it

necessarily follows that "█████████████████████████████████████████

████████████████████████████████████ (Nguyen Decl., Ex. A

¶¶ 96, 100.) However, this assertion is again premised on Dr. Syverson's speculation that ████

█████████████████████████████████████████████████████████

As such, the Court should exclude this opinion.

Even the most "supremely qualified expert cannot waltz into the courtroom and render opinions unless their opinions are based on some recognized . . . method and are reliable . . . under the test set forth by the Supreme Court in *Daubert*."  *Clark v. Takata Corp.*, 192 F.3d 750, 759 n.5 (7th Cir. 1999).  Without some recognized method, cross-examination is futile.  ROSS cannot cross-examine Dr. Syverson on the challenged opinions because they all fundamentally reduce to nothing more than his belief and speculation (i.e., his say-so).  [T]he court cannot simply take an expert's word for a specific proposition."  *Fail-Safe, L.L.C. v. A.O. Smith Corp.*, 744 F. Supp. 2d 870, 888 (E.D. Wis. 2010).

## CONCLUSION

For the foregoing reasons, ROSS respectfully requests that the Court exclude Dr. Chad Syverson's opinions . (*See, e.g.*, Nguyen Decl. Ex. A, ¶¶ 13, 21, 59, 96, and 100.)

OF COUNSEL:

Gabriel M. Ramsey
Warrington S. Parker III
Joachim B. Steinberg
Jacob Canter
Christopher J. Banks
Margaux Poueymirou
Anna Z. Saber
Beatrice B. Nguyen
CROWELL & MORING LLP
3 Embarcadero Center, 26th Floor
San Francisco, CA 94111
Tel:  (415) 986-2800

Mark A. Klapow
Crinesha B. Berry
Matthew J. McBurney
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC  20004
Tel:  (202) 624-2500

Shira Liu
CROWELL & MORING LLP
3 Park Plaza, 20th Floor
Irvine, CA 92614
Tel: (949) 263-8400

Dated:  August 31, 2023
11006960 / 20516.00001
 Public Version Dated: September 7, 2023

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

By:  */s/ David E. Moore*
David E. Moore (#3983)
Bindu A. Palapura (#5370)
Andrew L. Brown (#6766)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
Tel:  (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
abrown@potteranderson.com

*Attorneys for Defendant/Counterclaimant
ROSS Intelligence, Inc.*

-11-