# EXHIBIT A

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT B

HIGHLY CONFIDENTIAL

```
 1              IN THE UNITED STATES DISTRICT COURT

 2                 FOR THE DISTRICT OF DELAWARE

 3    _____

 4    THOMSON REUTERS ENTERPRISE

 5    CENTRE GMBH and WEST PUBLISHING

 6    CORPORATION,

 7             Plaintiffs/Counterdefendants,

 8    v.                              C.A. No. 20-613-SB

 9    ROSS INTELLIGENCE INC.,

10             Defendant/Counterclaimant.

11    _____

12                 VIDEOTAPED DEPOSITION OF

13                      ERIK LINDBERG

14       INDIVIDUALLY AND AS A 30(B)(6) REPRESENTATIVE

15        FOR THOMSON REUTERS ENTERPRISE CENTRE GMBH

16                   HIGHLY CONFIDENTIAL

17

18    DATE:      April 24, 2023

19    TIME:      8:56 a.m.

20    PLACE:     Veritext

                 150 South Fifth Street, Suite 1775

21               Minneapolis, MN 55402

22    JOB NO.:   SF 5874479

23

24

25    REPORTED BY: Dawn Workman Bounds, CSR
```

Page 1

HIGHLY CONFIDENTIAL

```
 1              A P P E A R A N C E S
 2   ON BEHALF OF PLAINTIFFS/COUNTERDEFENDANTS:
 3        CAMERON GINDER, ESQ.
          Kirkland & Ellis LLP
 4        300 North LaSalle
          Chicago IL 60654
 5        cameron.ginder@kirkland.com
          312-862-7075
 6
 7
     ON BEHALF OF DEFENDANT/COUNTERCLAIMANT:
 8
          CRINESHA BERRY, ESQ.
 9        Crowell & Moring LLP
          3 Embarcadero Center 26th Floor
10        San Francisco CA 94111
          cberry@crowell.com
11        202-624-2500
12   and
13        ANNA SABER, ESQ.
          Crowell & Moring LLP
14        1001 Pennsylvania Ave NW
          Washington DC 20004
15        asaber@crowell.com
          202-624-2500
16
     ALSO PRESENT:
17
          Kyle Peterson, Videographer
18
19
20
21
22
23
24
25
                                    Page  2
```

HIGHLY CONFIDENTIAL

```
 1                    I N D E X
 2   WITNESS:  ERIK LINDBERG                      PAGE
 3   EXAMINATION BY MS. BERRY.........................   7
 4   EXHIBITS MARKED/REFERRED TO
 5   Exhibit No. 1:  Notice, Erik Lindberg...............   9
 6   Exhibit No. 2:  Notice, 30(b)(6)Thomson Reuters......  11
 7   Exhibit No. 3:  Notice, 30(b)(6)West Publishing......  13
 8   Exhibit No. 4:  9/28/17 Lindberg email to Boley
 9                   CONFIDENTIAL, TRCC-01803615-18......  41
     Exhibit No. 5:  Project Indigo PowerPoint
10                   HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY
11                   TRCC-01803619-45......................... 43
     Exhibit No. 6:  1/3/19 Berman email to Cripe
12                   HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY
13                   TRCC-01628327............................ 75
     Exhibit No. 7:  Westlaw AI PowerPoint
14                   HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY
15                   TRCC-01628386-455........................ 77
     Exhibit No. 8:  1/3/19 Crowley email to Berman
16                   HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY
17                   TRCC-01626791............................100
     Exhibit No. 9:  2016 Growth Business Case, Cognitive Compu
18                   Westlaw PowerPoint
                     HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY
19                   TRCC-01626792-839.......................101
20   Exhibit No. 10: 2/6/19 Johnson email to Cripe
                     CONFIDENTIAL, TRCC-01624351..............133
21
     Exhibit No. 11: Bello Update Powerpoint
22                   HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY
                     TRCC-01624352-68........................134
23
24
25
                                               Page  3
```

Veritext Legal Solutions
866 299-5127

```
 1    (EXHIBITS CONTINUED)
 2    Exhibit No. 12: 4/21/20 McCoy email to Lechtenberg
                      CONFIDENTIAL, TRCC-01805666............. 136
 3
      Exhibit No. 13: Westlaw Edge Media/External FAQs, July 12, 2018
 4                    CONFIDENTIAL, TRCC-01805667-70.......... 137
 5    Exhibit No. 14: 4/9/21 Nielson email to Schriber
                      HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY
 6                    TRCC-00683232-36..................... 143
 7    Exhibit No. 15: 4/27/21 Lindberg email to Dahn
                      HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY
 8                    TRCC-00682819.........................147
 9    Exhibit No. 16: Product Family, Product Line or Product
                      US Westlaw Edge April 2021
10                    HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY
                      TRCC-00682820-25..................... 147
11
      Exhibit No. 17: 10/7/22 Lindberg email to Van Otterloo
12                    HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY
                      TRCC-00195790........................ 156
13
      Exhibit No. 18: Artificial Intelligence & Westlaw PowerPoint
14                    HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY
                      TRCC-00195791-812.....................158
15
      Exhibit No. 19: 5/14/21 Dahn email to Lindberg
16                    HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY
                      TRCC-01477739-46.....................163
17
      Exhibit No. 20: 8/5/15 Dahn email to Lindberg
18                    CONFIDENTIAL, TRCC-01798195-6...........169
19    Exhibit No. 21: 5/26/16 Dvorkin email to Dvorkin
                      HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY
20                    TRCC-01797301-02.....................171
21    Exhibit No. 22: 8/13/20 Boley email to Mismash
                      HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY
22                    TRCC-01801607-08.....................178
23    Exhibit No. 23: 10/7/22 Leyva email to Moulinier
                      HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY
24                    TRCC-00196108-22.....................211
25
```

HIGHLY CONFIDENTIAL

```
 1    (EXHIBITS CONTINUED)
 2    Exhibit No. 24: 11/10/22 Lindberg email to Dahn
                        HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY
 3                      TRCC-00195917-18.......................219
 4    Exhibit No. 25: 2023 Priorities for US Westlaw Core Produ
                        Team, Native Document
 5                      HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY
                        TRCC-00195919..........................221
 6
      Exhibit No. 26: 12/9/22 Dahn email to Lechtenberg
 7                      HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY
                        TRCC-00196341-50.......................223
 8
      Exhibit No. 27: Legal API Research PowerPoint
 9                      HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY
                        TRCC-00012622-55.......................228
10
11
12
13
14
15
16
17
      (Original exhibits attached to original transcript;
18    copies to counsel as requested.  Previously marked
      exhibits referenced not attached.)
19
20    REPORTER'S NOTE:  All quotations from exhibits are
      reflected in the manner in which they were read into the
21    record and do not necessarily indicate an exact quote
      from the document.
22
23
24
25
                                                        Page 5
```

HIGHLY CONFIDENTIAL

```
 1                P R O C E E D I N G S
 2              THE VIDEOGRAPHER:  Good morning.  We are
 3     going on the record.  The time is 8:56 a.m.  Today's date
 4     is April 24, 2023.  Please note that the microphones are
 5     sensitive, may pick up whispering and private
 6     conversations.  Please mute your phones at this time.
 7              Audio and video recording will continue to take
 8     place unless all parties agree to go off the record.
 9              This is media unit 1 of the video-recorded
10     deposition of Erik Lindberg taken by counsel for the
11     defense in the matter of Thompson Reuters Enterprise
12     Centre GMBH and West Publishing Corporation versus ROSS
13     Intelligence, Inc., filed in the United States District
14     Court for the District of Delaware, Case Number
15     20-613-SB.  The location of this deposition is 150 South
16     5th Street, Suite 1775, Minneapolis, Minnesota 55402.
17              My name is Kyle Peterson representing
18     Veritext Legal Solutions.  I'm the videographer.  The
19     court reporter is Dawn Bounds from the firm Veritext
20     Legal Solutions.
21              I am not authorized to administer an oath.
22     I'm not related to any party in this action, nor am I
23     financially interested in the outcome.
24              If there are any objections to proceeding,
25     please state them at the time of your appearance.
```

Page 6

HIGHLY CONFIDENTIAL

```
 1              Will counsel please state your appearances
 2   and affiliations for the record beginning with the
 3   noticing attorney.
 4              MS. BERRY:  Crinesha Berry with Crowell &
 5   Moring on behalf of ROSS Intelligence.
 6              MS. SABER:  Anna Saber, also from Crowell
 7   & Moring on behalf of ROSS Intelligence.
 8              MR. GINDER:  Cameron Ginder on behalf of
 9   Kirkland & Ellis representing Thomson Reuters and West
10   Publishing.
11              THE VIDEOGRAPHER:  Will the reporter
12   please swear in the witness.  Then we can proceed.
13
14                   ERIK LINDBERG,
15   having been first duly sworn, testified as follows:
16                   EXAMINATION
17   BY MS. BERRY:
18        Q.   Good morning.  How are you?
19        A.   Good morning.  I'm well.  Thank you.
20        Q.   Could you please state and spell your name for
21   the record.
22        A.   Erik, E-R-I-K; Lindberg, L-I-N-D-B-E-R-G.
23   ██    ███████████████████████
██   ██    █████████████████████████████
██   █████████████████
```

Page 7

HIGHLY CONFIDENTIAL



Page  24

HIGHLY CONFIDENTIAL



Page 25

HIGHLY CONFIDENTIAL



Page 28

HIGHLY CONFIDENTIAL



Page  29

HIGHLY CONFIDENTIAL



Page 188

HIGHLY CONFIDENTIAL



Page 189

HIGHLY CONFIDENTIAL

```
 1              REPORTER'S CERTIFICATE
 2   STATE  OF  MINNESOTA    )
                             ) ss.
 3   COUNTY OF  HENNEPIN     )
 4           I hereby certify that I reported the deposition
     of ERIK LINDBERG on the 24th day of April, 2023, in
 5   Minneapolis, Minnesota, and that the witness was by me
     first duly sworn to tell the whole truth;
 6           That the testimony was transcribed by me and is
 7   a true record of the testimony of the witness;
 8           That the cost of the original has been charged
     to the party who noticed the deposition, and that all
 9   parties who ordered copies have been charged at the same
     rate for such copies;
10           That I am not a relative or employee or
     attorney or counsel of any of the parties, or a relative
11   or employee of such attorney or counsel;
12           That I am not financially interested in the
13   action and have no contract with the parties, attorneys,
     or persons with an interest in the action that affects or
14   has a substantial tendency to affect my impartiality;
15           That the right to read and sign the deposition
16   by the witness was not waived.
17           WITNESS MY HAND AND SEAL THIS 5th day of May, 2023.
18
19
20
21
22           Dawn Workman Bounds, CSR 6129
             Notary Public, Hennepin County, Minnesota
23           My commission expires January 31, 2024
24
25
```

Page 248

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION, | C.A. No. 20-613-LPS |
| Plaintiffs, Counterdefendants, | |
| v. | |
| ROSS INTELLIGENCE INC., | |
| Defendant, Counterclaimant. | |

**PLAINTIFFS THOMSON REUTERS ENTERPRISE CENTER GMBH
AND WEST PUBLISHING CORPORATION'S NOTICE OF ERRATA
FOR THE DEPOSITION OF ERIK LINDBERG**

I, the undersigned, do hereby declare that I read the deposition transcript of Erik Lindberg

dated April 24, 2023 and that to the best of my knowledge, said testimony is true and accurate,

with the exception of the following changes listed below:

| Page | Line | Original Text | Replacement Text | Reason |
|---|---|---|---|---|
| 15 | 23 | Dan Leighton | Dan Laytin | Transcription error |
| 16 | 6 | Dan Leighton | Dan Laytin | Transcription error |
| 21 | 10 | Nikita Noreberg | Neceda Nohrenberg | Transcription error |
| 21 | 18 | Travis Dennis | Travis Denneson | Transcription error |
| 35 | 7 | marketing app | marketing ask | Transcription error |
| 36 | 18 | artificially empowers | artificial intelligence powers | Transcription error |
| 37 | 16 | string site | string cite | Transcription error |
| 37 | 20 | cases were started together | cases were cited together | Transcription error |
| 37 | 22 | string site | string cite | Transcription error |
| 41 | 5 | Westlaw Natural | Westlaw Is Natural | Transcription error |
| 44 | 5 | AR processes | AI processes | Transcription error |
| 48 | 22 | dealing the same | dealing with the same | Transcription error |
| 48 | 24 | he said | I said | Transcription error |
| 49 | 4 | although, I had notes | altogether with headnotes | Transcription error |
| 49 | 5 | keynotes | key numbers | Transcription error |

| Page | Line | Original Text | Replacement Text | Reason |
|------|------|---------------|------------------|--------|
| 86 | 21 | goal data | gold data | Transcription error |
| 87 | 1 | GBT | GPT | Transcription error |
| 96 | 5 | type | types | Transcription error |
| 122 | 8 | Classics | Classic | Transcription error |
| 170 | 2 | phase | space | Transcription error |
| 178 | 1 | configured | reconfigured | Transcription error |
| 187 | 9 | keeplist | Keep List | Transcription error |
| 187 | 12 | keeplist | Keep List | Transcription error |
| 197 | 12 | well, parts XML | well-parsed XML | Transcription error |
| 199 | 23 | Boolean in terms of connectors | Boolean terms and connectors | Transcription error |
| 200 | 2 | Casetext | case text | Transcription error |
| 200 | 4 | two hits | term hits | Transcription error |
| 205 | 15 | service | server | Transcription error |
| 211 | 10 | sexual | factual | Transcription error |
| 213 | 2 | traditional | judicial | Transcription error |
| 216 | 14 | won the case. Statutes won. I mean, the cases won | one, the Cases. Statutes one. I mean, the cases one | Transcription error |
| 216 | 15 | won | one | Transcription error |
| 229 | 16 | on Litex | Analytics | Transcription error |

Dated:  May __26_, 2023

*Erik Lindberg*

_____

Erik Lindberg

# EXHIBIT C

HIGHLY CONFIDENTIAL

```
 1              IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF DELAWARE
 2
 3    THOMSON REUTERS ENTERPRISE CENTRE
      GMBH and WEST PUBLISHING
 4    CORPORATION,
 5        Plaintiff/Counterdefendants,
 6    v.                              Case No. 20-613-SB
 7    ROSS INTELLIGENCE INC.,
 8        Defendant/Counterclaimant.
      _____/
 9
10
                      HIGHLY CONFIDENTIAL
11
            VIDEO-RECORDED DEPOSITION OF MICHAEL L. DAHN
12                (Conducted Via Videoconference)
13
      DATE:                  May 23, 2023
14
15    TIME:                  9:00 a.m. to 3:14 p.m.
16
      PURSUANT TO:           Notice by counsel for
17                           Defendant/Counter-Claimant for
                             purposes of discovery, use at
18                           trial or such other purposes as
                             are permitted under the Florida
19                           Rules of Civil Procedure
20
      BEFORE:                Valerie A. Hance, RPR
21                           Notary Public, State of
                             Florida at Large
22
23                           Pages 1 to 163
24
25                      HIGHLY CONFIDENTIAL


                                             Page 1
```

HIGHLY CONFIDENTIAL

```
 1    APPEARANCES:
 2       DANIEL E. LAYTIN, ESQUIRE
         CAMERON GINDER, ESQUIRE
 3       Kirkland & Ellis
         300 North LaSalle
 4       Chicago, Illinois  60654
         dlaytin@kirkland.com
 5       cameron.ginder@kirkland.com
 6             -and-
 7       JEANPIERRE J. GIULIANO, ESQUIRE
         Thomson Reuters
 8             Attorneys for Plaintiffs/Counter-Defendants
 9
         WARRINGTON S. PARKER III, ESQUIRE
10       ANNA Z. SABER, ESQUIRE
         JACOB CANTER, ESQUIRE
11       Crowell & Moring LLP
         3 Embarcadero Center
12       26th Floor
         San Francisco, California  94111
13       wparker@crowell.com
         asaber@crowell.com
14       jcanter@crowell.com
               Attorneys for Defendant/Counter-Claimant
15
16    ALSO PRESENT:
17       Jeremy Taylor, Videographer
18
19
                          I N D E X
20
      DIRECT EXAMINATION BY MR. PARKER          Page 9
21
      CERTIFICATE OF OATH                       Page 160
22
      REPORTER'S CERTIFICATE                    Page 161
23
24
25
```

Page 2

HIGHLY CONFIDENTIAL

```
 1                    E X H I B I T S
 2    Exhibit      Description                 Marked
 3    Exhibit 1    Plaintiff and              Page 12
                   Counter-Defendant Thomson
 4                 Reuters Enterprise Centre
                   GmbH's Objections and
 5                 Responses to Defendant and
                   Counterclaimant Ross
 6                 Intelligence Inc.'s
                   amended Notice of 30(b)(6)
 7                 Deposition
 8    Exhibit 2    Plaintiff and              Page 13
                   Counterdefendant West
 9                 Publishing Corporation's
                   Objections and Responses to
10                 Defendant and Counterclaimant
                   ROSS Intelligence, Inc.'s,
11                 Amended Notice of 30(b)(6)
                   Deposition
12
      Exhibit 3    e-mail thread, Subject:    Page 17
13                 Latham Wisconsin Firm Reach
                   ROSS Intelligence
14                 Partnerships (TRCC-01797301
                   through 01797302)
15
      Exhibit 4    Cognitive Computing in Legal Page 19
16                 Research (TRCC-01797303
                   through 0179304)
17
      Exhibit 5    Westlaw Precision          Page 26
18                 (TRCC-00194341 through
                   00194351)
19
      Exhibit 6    e-mail thread, Subject:  Team Page 29
20                 meeting this Thursday
                   (TRCC-01803615 through
21                 01803618)
22    Exhibit 7    Project Indigo (TRCC-01803619 Page 29
                   through 01803645)
23
      Exhibit 8    e-mail thread, Subject:  AI Page 32
24                 Resources - Initial Business
                   Case (TRCC-01626791)
25

                                             Page  3
```

HIGHLY CONFIDENTIAL

```
 1               E X H I B I T S (CONTINUED)
 2    Exhibit      Description              Marked
 3    Exhibit 9    2016 Growth Business Case,    Page 32
                   Cognitive Computing for
 4                 Westlaw (TRCC-01626792
                   through 01626839)
 5
      Exhibit 10   e-mail thread, Subject:      Page 51
 6                 2 requests (TRCC-00195917
                   through 00195918)
 7
      Exhibit 11   Excel Spreadsheet, 2023      Page 59
 8                 Priorities for US Westlaw
                   Core Product Team
 9                 (TRCC-00195919)
10    Exhibit 12   e-mail thread, Subject:      Page 59
                   Search Platform Modernization
11                 EPC Estimate (TRCC-01020237
                   through 01020238)
12
      Exhibit 13   Search Modernization         Page 60
13                 (TRCC-01020239 through
                   01020254)
14
      Exhibit 14   e-mail, Subject:  Stand-Alone   Page 68
15                 version (TRCC-01319338)
16    Exhibit 15   Modernize Tech & Operations  Page 69
                   (TRCC-01319339 through
17                 01319356)
18    Exhibit 16   e-mail thread, Subject:      Page 74
                   Lawriter [creator of
19                 Casemaker] has been sold
                   (TRCC-01990459 through
20                 01990461)
21    Exhibit 17   Strategy for Dealing with    Page 75
                   Free/Low Cost Internet Sites
22                 (TRCC-01990462 through
                   0199489)
23
24
25

                                           Page  4
```

HIGHLY CONFIDENTIAL

```
 1                    E X H I B I T S (CONTINUED)
 2     Exhibit        Description                      Marked
 3     Exhibit 18     e-mail thread, Subject:          Page 80
                      Perkins Coie - API Contract
 4                    Language (TRCC-01816718
                      through 01816724)
 5
                      e-mail thread, Subject:          Page 85
 6     Exhibit 19     Baker Donelson Westlaw Search
                      Integration (TRCC-01887390
 7                    through 01887393)
 8     Exhibit 20     e-mail, Subject:  API related    Page 94
                      work (TRCC-01645531)
 9
                      Data Product Strategy, August    Page 95
10     Exhibit 21     2021 (TRCC-01645565 through
                      01645604)
11
                      Confidential Settlement and      Page 98
12     Exhibit 22     Caselaw License Agreement
                      Between Mead Data Central,
13                    Inc., and West Publishing
                      Company (TRCC-02151854
14                    through 02151932)
15     Exhibit 23     Mead Data Order                  Page 107
                      (TRCC-02151985 through
16                    02151993)
17     Exhibit 24     Letter from LexisNexis to The    Page 109
                      Thomson Corporation dated
18                    April 18, 1996 (TRCC-02151849
                      through 02151853)
19
                      Letter from The Thomson          Page 113
20     Exhibit 25     Corporation to LexisNexis
                      dated February 5, 2001
21                    (TRCC-02151969 through
                      02151984)
22
                      e-mail thread, Subject:          Page 114
23     Exhibit 26     Stopping Lexis (TRCC-01877480
                      through 01877481)
24
25
```

Page 5

HIGHLY CONFIDENTIAL

```
 1                    E X H I B I T S (CONTINUED)
 2     Exhibit       Description                    Marked
 3     Exhibit 27    "What if we could no longer    Page 115
                     access Lexis at all?"
 4                   (TRCC-01877482 through
                     01877485)
 5
       Exhibit 28    e-mail thread, Subject:        Page 120
 6                   Recent WL Next Price Increase
                     - Lexis Request for Pricing
 7                   Information (TRCC-01743030
                     through 01743033)
 8
       Exhibit 29    Competitive Overview           Page 122
 9                   (TRCC-00000328 through
                     00000352)
10
       Exhibit 30    e-mail, Subject:  WLN vs. LA   Page 128
11                   (TRCC-00518717)
12     Exhibit 31    Westlaw Next v. Lexis Advance  Page 129
                     Comparator (TRCC-00518718
13                   through 00518725)
14     Exhibit 32    e-mail thread, Subject:        Page 133
                     Gibson Dunn (TRCC-02789026
15                   through 02789028)
16     Exhibit 33    e-mail thread, Subject:  Free  Page 136
                     Law Project to Download All
17                   Opinions from PACER and Make
                     Them Available to Public
18                   (TRCC-05442856)
19     Exhibit 34    "It is becoming easier for     Page 137
                     start-ups to compete
20                   (TRCC-05442857)
21     Exhibit 35    "West's General Publication    Page 139
                     Guide for Judges 2020"
22                   (TRCC-0595772 through
                     0595776)
23
24
25

                                                    Page  6
```

HIGHLY CONFIDENTIAL

```
 1                  E X H I B I T S (CONTINUED)

 2     Exhibit       Description                Marked

 3     Exhibit 36    e-mail thread, Subject:    Page 141
                     Legal professionals MSS
 4                   commentary (TRCC-01624406
                     through 01624409)
 5
       Exhibit 37    "Artificial Intelligence"  Page 142
 6                   (TRCC-01624410 through
                     0162446)
 7
       Exhibit 38    e-mail, Subject:  Bloomberg Page 143
 8                   (TRCC-01086311)

 9     Exhibit 39    Westlaw Next v.  Bloomberg  Page 144
                     Law Comparator (TRCC-01086312
10                   through 01086317)

11     Exhibit 40    e-mail thread, Subject:     Page 146
                     Fastcase (TRCC-03568130
12                   through 03568131)

13     Exhibit 41    "Westlaw vs. Fastcase"      Page 146
                     (TRCC-03568132 through
14                   03568162)

15     Exhibit 42    e-mail, Subject:  New Westlaw Page 147
                     Value Story - June 30 AO
16                   (TRCC-0761694)

17     Exhibit 43    "New Westlaw" (TRCC-0761695  Page 148
                     through 0761766)
18
       Exhibit 44    e-mail thread, Subject:      Page 150
19                   Westlaw and lexis Daily News
                     Highlights - June 26, 2018
20                   (TRCC-01477261 through
                     01477273)
21
       Exhibit 45    e-mail, Subject:  Fact book  Page 152
22                   (TRCC-00542857)

23     Exhibit 46    "Legal Market Fact Base"     Page 153
                     (TRCC-00542858 through
24                   00542875)

25


                                                Page  7
```

HIGHLY CONFIDENTIAL

```
1              THE VIDEOGRAPHER:  Good morning.  We're going
2         on the record at 9:00 a.m. on the 23rd of May, 2023.
3         Please note that this deposition is being conducted
4         virtually.  Quality of recording depends on the
5         quality of camera and internet connection of
6         participants.  What is seen from the witness and
7         heard on screen is what will be recorded.  Audio and
8         video recording will continue to take place unless
9         all parties agree to go off the record.
10             This is Media Unit 1 of the video-recorded
11        deposition of Mike Dahn taken by counsel for the
12        defendant and Counter-Claimant in the matter of
13        Thomson Reuters Enterprise Centre GmbH, et al., vs.
14        ROSS Intelligence Incorporated filed in the
15        United States District Court for the District of
16        Delaware, Case No. 20-613-SB.
17             This deposition is being conducted remotely
18        using virtual technology.  My name is Jeremy Taylor.
19        And the court reporter is Valerie Hance.  And we
20        represent Veritext Legal Solutions.  I am not
21        authorized to administer an oath.  I am not related
22        to any party in this action, nor am I financially
23        interested in the outcome.  If there are any
24        objections to the proceeding, please state them at
25        the time of your appearance.
```

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

HIGHLY CONFIDENTIAL

```
1              Counsel will now state their appearances and
2       affiliations for the record beginning with the
3       noticing attorney.
4              MR. PARKER:  This is Warrington Parker
5       representing ROSS Intelligence.
6              MR. LAYTIN:  Dan Laytin.  I'm here with
7       Cam Ginder representing TR and West.
8              THE VIDEOGRAPHER:  We have Ms. Saber that just
9       reconnected.
10             Okay.  Will the court reporter please swear in
11      the witness, and then counsel may proceed.
12                        MICHAEL L. DAHN,
13      the witness herein, being first duly sworn on oath, was
14      examined and deposed as follows:
15             THE WITNESS:  I do.
16
```

Page  9

HIGHLY CONFIDENTIAL



Page  24

HIGHLY CONFIDENTIAL



Page  39

HIGHLY CONFIDENTIAL



Page 56

HIGHLY CONFIDENTIAL

```
 1                    CERTIFICATE OF OATH

 2

 3    STATE OF FLORIDA

 4    COUNTY OF HILLSBOROUGH

 5

 6         I, the undersigned authority, certify that

 7    MICHAEL L. DAHN, appeared remotely before me via

 8    videoconference and was duly sworn.

 9

10         WITNESS my hand and official seal this 24th day

11    of May, 2023.

12

13

14

15

16                   Valerie A. Hance, RPR

17                   Notary Public - State of Florida

18                   My Commission Expires: 09/17/24

19                   Commission No. HH010389

20

21

22    Type of Identification Produced:  Driver's License

23

24

25

                                          Page 160
```

HIGHLY CONFIDENTIAL

```
 1                    REPORTER'S CERTIFICATE
 2
 3     STATE OF FLORIDA
 4     COUNTY OF HILLSBOROUGH
 5          I, Valerie A. Hance, Registered Professional
       Reporter, certify that I was authorized to and did
 6     stenographically report the deposition of MICHAEL L.
       DAHN; and that a review of the transcript was requested;
 7     and that the transcript is a true and complete record of
       my stenographic notes.
 8
            I further certify that I am not a relative,
 9     employee, attorney, or counsel of any of the parties,
       nor am I a relative or employee of any of the parties'
10     attorney or counsel connected with the action, nor am I
       financially interested in the action.
11
12
            Dated this 24th day of May, 2023.
13
14
15
                    Valerie A. Hance, RPR
16
17
18
19
20
21
22
23
24
25
```

Page 161

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION, | C.A. No. 20-613-LPS |
| Plaintiffs, Counterdefendants, | |
| v. | |
| ROSS INTELLIGENCE INC., | |
| Defendant, Counterclaimant. | |

**PLAINTIFFS THOMSON REUTERS ENTERPRISE CENTER GMBH**
**AND WEST PUBLISHING CORPORATION'S NOTICE OF ERRATA**
**FOR THE DEPOSITION OF MICHAEL L. DAHN**

I, the undersigned, do hereby declare that I read the deposition transcript of Michael L.

Dahn dated May 23, 2023 and that to the best of my knowledge, said testimony is true and

accurate, with the exception of the following changes listed below:

| Page | Line | Original Text | Replacement Text | Reason |
|---|---|---|---|---|
| 15 | 10 | West | Westlaw | Assume transcriber misheard |
| 17 | 10 | Internet | Intranet | Assume transcriber misheard |
| 36 | 18 | have | had | Assume transcriber misheard |
| 39 | 14 | Sanitations | annotations | Assume transcriber misheard |
| 40 | 20 | Case | cases | Assume transcriber misheard |
| 41 | 16 | Sanitations | annotations | Assume transcriber misheard |
| 68 | 3 | approved | Improved | Assume transcriber misheard |
| 84 | 2 | Use | Do | Assume transcriber misheard |
| 90 | 6 | form of | user | Assume transcriber misheard |

| Page | Line | Original Text | Replacement Text | Reason |
|------|------|---------------|------------------|--------|
| 90 | 24/25 | Key site | KeyCite | Assume transcriber misheard |
| 111 | 22 | dodging | dodgy | Assume transcriber misheard |
| 125 | 10 | Loss | law | Assume transcriber misheard |
| 128 | 11 | Lexus Advanced | Lexis Advance | Assume transcriber misheard |
| 151 | 24 | next | percentage | Assume transcriber misheard |

Dated:  June 30, 2023

_____

Michael L. Dahn

# EXHIBIT D

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT E

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

THOMSON REUTERS ENTERPRISE )
CENTRE GMBH and WEST PUBLISHING )
CORPORATION, )
)
      Plaintiffs and )
      Counterdefendants, )
)
  v. )    C.A. No. 20-613 (SB)
)
ROSS INTELLIGENCE INC., )
)
      Defendant and )
      Counterclaimant. )

**PLAINTIFFS AND COUNTERDEFENDANTS THOMSON REUTERS ENTERPRISE
CENTRE GMBH AND WEST PUBLISHING CORPORATION'S RESPONSES AND
OBJECTIONS TO DEFENDANT AND COUNTERCLAIMANT ROSS INTELLIGENCE
INC.'S FIRST SET OF COUNTERCLAIM REQUESTS FOR ADMISSION (NO. 136)**

Pursuant to Federal Rules of Civil Procedure 26 and 36 and the Local Rules of the United

States District Court for the District of Delaware (the "Local Rules" and each a "Local Rule"),

Plaintiffs and Counterdefendants Thomson Reuters Enterprise Centre GmbH ("Thomson

Reuters") and West Publishing Corporation ("West") (collectively "Plaintiffs"), hereby respond to

Defendant and Counterclaimant ROSS Intelligence Inc.'s ("Defendant") First Set of Counterclaim

Requests for Admission (No. 136), served on September 20, 2022 (the "Requests" and each

individually, a "Request") in the above-captioned action ("Litigation") as follows:

## GENERAL OBJECTIONS

1.    Plaintiffs' discovery and investigation in connection with this case is ongoing.

Plaintiffs' response is based on information gathered as of the time of this response. Plaintiffs

reserve the right to amend or supplement their response if and when additional information is

obtained.

2.      Plaintiffs object to the Request to the extent that it purports to impose obligations beyond those set forth in the Federal Rules of Civil Procedure, the Local Rules, or other applicable law.

3.      Plaintiffs object to the Request to the extent that it seeks information that is subject to the attorney-client privilege, the work-product privilege, and/or any other applicable privilege or protection.  Plaintiffs do not waive, intend to preserve, and are preserving the attorney-client privilege, the work-product privilege, and every other applicable privilege or protection with respect to any information protected by such a privilege or protection.

4.      Plaintiffs object to the Request to the extent that it seeks proprietary or confidential business information, trade secrets, or other sensitive information, or documents that contain information that is non-responsive to the Requests.  To the extent that the response requires the disclosure of any non-privileged proprietary or confidential information, trade secrets or other sensitive information, Plaintiffs will provide such information pursuant to the Protective Order governing the parties to this Litigation.  D.I. 48.  By responding to the Request, Plaintiffs do not waive, intend to preserve, and are preserving all of their rights to assert that any and all such information is confidential.  Information furnished by Plaintiffs shall be used only in connection with this Litigation and shall not be disclosed, in whole or in part, to any person or entity apart from the parties and their representatives in this Litigation, and only as permitted by the Protective Order.

5.      Plaintiffs object to the Request to the extent that it seeks information that Defendant equally may otherwise obtain from public sources, or with less burden and expense by using other means of discovery.

6.      In providing this response, Plaintiffs do not in any way waive or intend to waive, but rather are preserving and intend to preserve:

(i)     All objections as to competency, authenticity, relevancy, materiality, and admissibility;

(ii)    All rights to object on any grounds to the use in any subsequent proceedings of any of the responses or information contained herein, including but not limited to the right to object to the trial of this or any other action;

(iii)   All objections as to vagueness and ambiguity; and

(iv)    All rights to object on any grounds to any further requests.

7.      Plaintiffs object to the Request to the extent that it seeks information set forth in documents that are outside Plaintiffs' possession, custody, and control.

8.      The response below shall not be interpreted to concede the truth of any factual assertion or implication contained in the Request.  Plaintiffs' response to the Request in no way constitutes an admission or acknowledgment by Plaintiffs as to the relevancy, materiality, or admissibility of any of the information contained there, and Plaintiffs expressly reserve their rights to object as such.

9.      Plaintiffs object to the Request to the extent that it unfairly seeks to restrict the facts upon which Plaintiffs may rely at trial.  Discovery has not been completed and Plaintiffs are not necessarily in possession of all the facts and documents upon which Plaintiffs intend to rely.  The response submitted herewith is tendered to Defendant with the reservation that the response is submitted without limiting the evidence on which Plaintiffs may rely to support the contentions they may assert at the trial on this Litigation and to rebut or impeach the contentions, assertions,

and evidence that Defendant may present.  Plaintiffs reserve the right to supplement or amend this response at a future date.

10.     Plaintiffs object to the Request as overly broad to the extent that the Request defines the term "THOMSON REUTERS" to include, "its present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on its behalf."  For the purposes of responding to the Request, Plaintiffs will construe this term to mean solely Thomson Reuters Enterprise Centre GmbH, and not any other person or entity.

11.     Plaintiffs object to the Request as overly broad to the extent that the Request defines the term "WEST" to include, "its present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on its behalf."  For the purposes of responding to the Request, Plaintiffs will construe this term to mean solely West Publishing Corporation, and not any other person or entity.

12.     Plaintiffs object to the Request as overly broad to the extent that the Request defines the terms "YOU," "YOUR," and "PLAINTIFFS" to incorporate the definitions of the terms "THOMSON REUTERS" and "WEST."  The terms "WEST" and "THOMSON REUTERS" are improperly defined to include West Publishing Corporation's and Thomson Reuters Enterprise Centre GmbH's, "present and former officers, directors, employees, attorneys, agents, representatives, successors, predecessors, owners, parents, subsidiaries, affiliated companies, or any other person or entity acting or purporting to act on [their] behalf."  For the purposes of responding to the Request, Plaintiffs will construe the terms "YOU," "YOUR," and

4

"PLAINTIFFS" to mean solely Thomson Reuters Enterprise Centre GmbH and West Publishing Corporation, and not any other person or entity.

13.     Plaintiffs object to the Request to the extent it is not limited to the time relevant to this Litigation.

14.     Plaintiffs incorporate the foregoing General Objections into its response to the Request as set forth below.

## RESPONSES AND OBJECTIONS TO REQUESTS FOR ADMISSION

**REQUEST FOR ADMISSION NO. 136:**

Admit that you have never licensed YOUR PUBLIC LAW DATABASE separately from YOUR LEGAL SEARCH TOOLS.

**RESPONSE TO REQUEST FOR ADMISSION NO. 136:**

Plaintiffs incorporate by reference the above-stated General Objections as if fully set forth herein.  Plaintiffs specifically object to ROSS's definitions of Public Law Database and Legal Search Tools because they incorporate disputed questions of fact and law that will be the subject of expert testimony.  Plaintiffs further object to this Request to the extent it implies or assumes that Plaintiffs have separate Public Law Database and Legal Search Tools.  Plaintiffs deny that they have a Public Law Database separate and apart from Westlaw, a legal research platform.  Plaintiffs deny that they have Legal Search Tools separate and apart from Westlaw, a legal research platform.  Plaintiffs deny that there are separate product markets or consumer demand for so-called Public Law Databases and Legal Search Tools.  Subject to, as limited by, and without waiver of the foregoing objections and denials, Plaintiffs admit that they have never offered a commercial license to a collection of judicial opinions, statutes, and regulations, separate from any search functionality.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

_____
Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com

*Attorneys for Plaintiffs and Counterdefendants*
*Thomson Reuters Enterprise Center GmbH*
*and West Publishing Corporation*

OF COUNSEL:

Dale M. Cendali
Joshua L. Simmons
Eric A. Loverro
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
(212) 446-4800

Miranda D. Means
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
(617) 385-7500

Daniel E. Laytin
Christa C. Cottrell
Alyssa C. Kalisky
Cameron Ginder
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL  60654
(312) 862-2000

 October 20, 2022

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 20, 2022, copies of the foregoing were caused to be served

upon the following in the manner indicated:

David E. Moore, Esquire                                    *VIA ELECTRONIC MAIL*
Bindu Palapura, Esquire
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE  19801
*Attorneys for Defendant and Counterclaimant*

Mark A. Klapow, Esquire                                    *VIA ELECTRONIC MAIL*
Lisa Kimmel, Esquire
Crinesha B. Berry, Esquire
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, DC  20004
*Attorneys for Defendant and Counterclaimant*

Gabriel M. Ramsey, Esquire                                *VIA ELECTRONIC MAIL*
Jacob Canter, Esquire
Warrington Parker, Esquire
CROWELL & MORING LLP
3 Embarcadero Center, 26th Floor
San Francisco, CA  94111
*Attorneys for Defendant and Counterclaimant*


*/s/ Michael J. Flynn*
_____
Michael J. Flynn (#5333)

# EXHIBIT F

```
 1              IN THE UNITED STATES DISTRICT COURT

 2                 FOR THE DISTRICT OF DELAWARE

 3
    _____

 4   THOMSON REUTERS ENTERPRISE

 5   CENTRE GMBH and WEST PUBLISHING

 6   CORPORATION,

 7              Plaintiffs/Counterdefendants,

 8   v.                          C.A. No. 20-613-SB

 9   ROSS INTELLIGENCE INC.,

10              Defendant/Counterclaimant.
    _____

11                  HIGHLY CONFIDENTIAL

12

13         VIDEOTAPED DEPOSITION OF MARK HOFFMAN

14

15   DATE:      April 25, 2023

16   TIME:      9:02 a.m.

17   PLACE:     Veritext

18              150 South Fifth Street, Suite 1775

19              Minneapolis, MN 55402

20

21   REPORTED BY:

22   Dawn Workman Bounds, CSR

23   JOB NO.:   SF 5871236

24

25   PAGES 1 - 167

                                              Page 1
```

HIGHLY CONFIDENTIAL

```
 1                    A P P E A R A N C E S

 2

 3    ON  BEHALF  OF  PLAINTIFFS/COUNTERDEFENDANTS:

 4         CHRISTA  C.  COTTRELL,  ESQ.

 5         Kirkland  &  Ellis  LLP

 6         300  North  LaSalle

 7         Chicago,  IL  60654

 8         christa.cottrell@kirkland.com

 9         312-862-7075

10

11    ON  BEHALF  OF  DEFENDANT/COUNTERCLAIMANT:

12         WARRINGTON  S.  PARKER,  ESQ.

13         CRINESHA  BERRY,  ESQ.

14         Crowell  &  Moring  LLP

15         3  Embarcadero  Center,  26th  Floor

16         San  Francisco,  CA  94111

17         wparker@crowell.com

18         cberry@crowell.com

19         202-624-2500

20

21    ALSO  PRESENT:

22         Kyle  Peterson,  Videographer

23

24

25

                                              Page  2
```

HIGHLY CONFIDENTIAL

```
 1                    I N D E X
 2   WITNESS:  MARK HOFFMAN                           PAGE
 3   EXAMINATION BY MR. PARKER.........................    9
 4   CONFIDENTIAL DESIGNATION:  By Ms. Cottrell........  143
 5
 6   EXHIBITS MARKED/REFERRED TO
     Exhibit 1  10/20/16 Peterson email to Kimble, et al.
 7              HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY
 8              TRCC-00821379-80...........................   12
     Exhibit 2  2016 Commercial Simplification PowerPoint
 9              HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY
10              TRCC-00821381-404.........................   12
     Exhibit 3  2/15/16 Holum email to Martin
11              HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY
12              TRCC-00811415.............................   57
     Exhibit 4  Project Management Office, Legal Commercial
13              Simplification - Segment Adoption
                HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY
14              TRCC-00811416-22..........................   59
15   Exhibit 5  Commercial Simplification Overview PowerPoint
                HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY
16              TRCC-00811423-50..........................   59
17   Exhibit 6  Excel spreadsheet (electronic form only)...   84
18   Exhibit 7  6/2/16 Chambers email to Hoffman
                HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY
19              TRCC-00940132.............................   85
     Exhibit 8  Order Capture Bundling Overview
20              CONFIDENTIAL, TRCC-01747834-47............   86
21   Exhibit 9  Large Law Firm Pricing Strategy
                HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY
22              TRCC-00940133-56..........................   86
23   Exhibit 10 11/22/16 Kosen-Judnick email to Hoffman
                HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY
24              TRCC-00817059-65..........................   93
25
```

Veritext Legal Solutions
866 299-5127

```
 1   (EXHIBITS CONTINUED)
 2
     Exhibit 11 Law Firm Banded and Per-Seat Pricing
 3              HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY
 4              TRCC-00817066-67......................... 94
     Exhibit 12 Government Banded and Per-Seat Pricing
 5              HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY
 6              TRCC-00817071-72......................... 94
     Exhibit 13 5/7/18 Hoffman email to Lloyd, et al.
 7              HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY
 8              TRCC-00834954-55......................... 103
     Exhibit 14 Pricing Model Overview, September 2017
 9              HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY
10              TRCC-00834956-67......................... 103
     Exhibit 15 11/21/19 Hoffman email to Bretoi
11              HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY
12              TRCC-00828568............................ 115
     Exhibit 16 Product Model Overview
13              HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY
14              TRCC-00828569-72......................... 115
     Exhibit 17 10/7/20 Hoffman email to Firlit
15              HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY
16              TRCC-00912271............................ 120
     Exhibit 18 Small Law Digital Channel & Commercial
17              Strategy, October 15, 2019, PowerPoint
                HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY
18              TRCC-00912272-89......................... 121
19   Exhibit 19 3/2/21 Hoffman email to Nobello, et al.
20              HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY
21              TRCC-01748175-76......................... 128
     Exhibit 20 Westlaw Pricing Guide for Large and Medium
22              Law Firms
                HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY
23              TRCC-01748177-82......................... 128
     Exhibit 21 7/28/21 Moberg email to Hoffman
24              HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY
                TRCC-00884843............................ 131
25
```

Page 4

```
1    (EXHIBITS CONTINUED)
2
```

```
     Exhibit 22 Westlaw and Practical Law Digital Pricing
3              HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY
4              TRCC-00884844-89.......................... 132
     Exhibit 23 Westlaw and Practical Law Digital Pricing
5              and Capability Building, Project Update
               July 2021
6              HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY
7              TRCC-00884896-905......................... 133
     Exhibit 24 9/1/21 Thomas email to Hoffman
8              HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY
9              TRCC-00884272............................. 133
     Exhibit 25 Setting or Modifying List Prices
10             HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY
11             TRCC-00884273-74.......................... 133
     Exhibit 26 9/20/21 Hoffman email to Hoffman
12             HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY
13             TRCC-00865028............................. 138
     Exhibit 27 Policy Pricing
14             HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY
15             TRCC-00865029-32.......................... 139
     Exhibit 28 Policy Discounting
16             HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY
17             TRCC-00865034-41.......................... 139
     Exhibit 29 9/23/21 Morgan email to Miner, et al.
18             HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY
19             TRCC-00883754-56.......................... 141
     Exhibit 30 Small Law MVP 1.1 Sept 2021 PowerPoint
20             HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY
21             TRCC-00883757-821......................... 141
     Exhibit 31 10/6/21 Elan email to Hoffman
22             HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY
23             TRCC-00019838-47.......................... 142
     Exhibit 32 Addendum to Order Form - Q-01253083
24             HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY
25             TRCC-00019848-59.......................... 142
```

```
                                        Page 5
```

HIGHLY CONFIDENTIAL

```
 1   (EXHIBITS CONTINUED)
 2
     Exhibit 33 Order Form
 3              HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY
 4              TRCC-00019860-64.......................... 142
     Exhibit 34 10/13/21 Goodman email to Hoffman
 5              HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY
 6              TRCC-00019139-41.......................... 145
     Exhibit 35 10/13/21 Lindamood email to Goodman
 7              HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY
 8              TRCC-00019142-47.......................... 145
     Exhibit 36 1/19/22 Parker email to Parker, et al.
 9              HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY
10              TRCC-00861426-27.......................... 147
     Exhibit 37 New Commercial Excellence Pricing Org
11              December 2021 PowerPoint
                HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY
12              TRCC-00861428-42.......................... 147
13   Exhibit 38 1/25/22 Kouptsov email to Lichttenegger, et al.
                HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY
14              TRCC-00881140-48.......................... 149
15   Exhibit 39 10/7/22 Riley email to Nobello
                HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY
16              TRCC-00201040-41.......................... 154
17   Exhibit 40 Spreadsheet (electronic form only)........ 155
18   Exhibit 41 Spreadsheet (electronic form only)........ 162
19   Exhibit 42 1/12/22 Peterson email to You
                HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY
20              TRCC-01139227-31.......................... 163
21   Exhibit 43 2022 Legal Professionals Price Strategy
                PowerPoint
22              HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY
23              TRCC-01139232-49.......................... 163
24
25
```

Veritext Legal Solutions
866 299-5127

HIGHLY CONFIDENTIAL

1    (Original exhibits attached to original transcript;

2    copies to counsel as requested.  Previously marked

3    exhibits referenced not attached.)

4

5    REPORTER'S NOTE:  All quotations from exhibits are

6    reflected in the manner in which they were read into the

7    record and do not necessarily indicate an exact quote

8    from the document.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Veritext Legal Solutions
866 299-5127

HIGHLY CONFIDENTIAL

```
 1                      P R O C E E D I N G S
 2                 THE VIDEOGRAPHER:  Good morning.  We are
 3      going on the record.  The time is 9:02 a.m.  Today's date
 4      is April 25, 2023.  Please note that the microphones are
 5      sensitive and may pick up whispering and private
 6      conversations.  Please mute your phones at this time.
 7      Audio and video recording will continue to take place
 8      unless all parties agree to go off the record.
 9                 This is media unit 1 of the video-recorded
10      deposition of Mark Hoffman taken by counsel for the
11      defendant in the matter of Thomson Reuters Enterprise
12      Centre GMBH and Westlaw Publishing Corporation versus
13      ROSS Intelligence, Inc., filed in the United States
14      District Court for the District of Delaware, Case Number
15      20-613-SB.
16                 The location of the deposition is 150
17      South Fifth Street, Suite 1775, Minneapolis, Minnesota
18      55402.  My name is Kyle Peterson representing Veritext
19      Legal Solutions.  I'm the videographer.  The court
20      reporter is Dawn Bounds from the firm Veritext Legal
21      Solutions.  I am not authorized to administer an oath.  I
22      am not related to any party in this action, nor am I
23      financially interested in the outcome.
24                 If there are any objections to proceeding,
25      please state them at the time of your appearance.
```

Page 8

HIGHLY CONFIDENTIAL

```
 1    Counsel please state your appearances and affiliations
 2    for the record beginning with the noticing attorney.
 3                   MR. PARKER:  Warrington Parker appearing
 4    on behalf of ROSS Intelligence.
 5                   MS. BERRY:  Crinesha Berry appearing for
 6    ROSS Intelligence.
 7                   MS. COTTRELL:  Christa Cottrell, Kirkland
 8    & Ellis appearing on behalf of Thomson Reuters.
 9                   THE VIDEOGRAPHER:  Will the reporter
10    please swear in the witness and we can proceed.
11                   MARK HOFFMAN,
12    having been first duly sworn, testified as follows:
13
```

Page 9

HIGHLY CONFIDENTIAL



Page 15

HIGHLY CONFIDENTIAL



Page 21

HIGHLY CONFIDENTIAL

```
1                    REPORTER'S CERTIFICATE

2

3            I hereby certify that I reported the deposition

4    of MARK HOFFMAN on the 25th day of April, 2023, in

     Minneapolis, Minnesota, and that the witness was by me

5    first duly sworn to tell the whole truth;

6            That the testimony was transcribed by me and is

7    a true record of the testimony of the witness;

8            That the cost of the original has been charged

     to the party who noticed the deposition, and that all

9    parties who ordered copies have been charged at the same

10   rate for such copies;

             That I am not a relative or employee or

11   attorney or counsel of any of the parties, or a relative

12   or employee of such attorney or counsel;

13           That I am not financially interested in the

14   action and have no contract with the parties, attorneys,

15   or persons with an interest in the action that affects or

16   has a substantial tendency to affect my impartiality;

             That the right to read and sign the deposition

17   by the witness was not waived.

18           WITNESS MY HAND AND SEAL THIS 8th day of May,

19   2023.

20

21

22

23   Dawn Workman Bounds, CSR 6129

24   Notary Public, Hennepin County, Minnesota

25   My commission expires January 31, 2024
```

Page 167

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

THOMSON REUTERS ENTERPRISE CENTRE
GMBH and WEST PUBLISHING
CORPORATION,

               Plaintiffs, Counterdefendants,

      v.

ROSS INTELLIGENCE INC.,

              Defendant, Counterclaimant.

C.A. No. 20-613-LPS

**PLAINTIFFS THOMSON REUTERS ENTERPRISE CENTER GMBH
AND WEST PUBLISHING CORPORATION'S NOTICE OF ERRATA
FOR THE DEPOSITION OF MARK HOFFMAN**

I, the undersigned, do hereby declare that I read the deposition transcript of Mark

Hoffman dated April 25, 2023 and that to the best of my knowledge, said testimony is true and

accurate, with the exception of the following changes listed below:

| Page | Line | Original Text | Replacement Text | Reason |
|------|------|---------------|------------------|--------|
| 11 | 6 | content features | Content, features | Punctuation correction Features is separate from Content |
| 11 | 15 | content features | Content, features | Punctuation correction Features is separate from Content |
| 13 | 18 | are we offering | Or offering | Clarifying that it can be national or primary |
| 14 | 25 | some words, | Some, where | correction |
| 15 | 13 | all pack | All packages | clarification |
| 16 | 1 | larger corporations within law | larger corporations. Within law | Punctuation Correction |
| 24 | 12 | to pair down | To pare down | Correction |
| 38 | 10-11 | retiring lookbacks at that practice | retiring lookbacks as a practice | clarification |
| 44 | 23 | law review | Law Review | Capitalization of Title of Publication |

| Page | Line | Original Text | Replacement Text | Reason |
|---|---|---|---|---|
| 45 | 3 | law review, Harvard law | Law Review, Harvard Law | Capitalization of Title of Publication |
| 45 | 4 | review | Review | Capitalization of Title of Publication |
| 45 | 6 | law review | Law Review | Capitalization of Title of Publication |
| 45 | 7 | law review | Law Review | Capitalization of Title of Publication |
| 109 | 4 | 1, 2, 3, 4, | 1234 | Clarification that 1234 is one number |
| 109 | 5 | 1, 2, 3, 4, | 1234 | Clarification that 1234 is one number |
| 111 | 3 | year-on-year dates | year-on-year rates | Correction |
| 116 | 11-12 | What is the compass | What does it encompass | Correction |
| 139 | 20 | policies | Policy | Correction |
| 140 | 25 | And Corporations. That | And Corporations; That | Punctuation Correction |
| 141 | 2-3 | In direct, tax determination | Indirect tax determination | Punctuation Correction |
| 153 | 3 | pure | peer | Correction |
| 158 | 25 | specifically or for | specifically are for | Correction |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

Dated:  June 2, 2023

Mark Hoffman

# EXHIBIT G

**THOMSON REUTERS®**

**Thomson Reuters General Terms and Conditions**
**Version 4.1**

**Last Modified: August, 2023**

These General Terms and Conditions ("Terms") govern your access and use of Thomson Reuters Services, as such term is defined below. "We", "our" and "Thomson Reuters" means the Thomson Reuters entity or entities providing Services (and thus the entity or entities with all rights and obligations with respect to those Services) under the applicable Ordering Document. "You" and "your" means the client, customer or subscriber agreeing to or accepting these terms.

## 1. DEFINITIONS

a. "**Affiliate**" means in the case of us, Thomson Reuters Corporation and any entity that, from time to time, is directly or indirectly controlled by Thomson Reuters Corporation. In the case of you, Affiliate means any entity that, from time to time, is directly or indirectly controlling, controlled by, or under common control of you. "Control" means the power to direct or cause the direction of the management or policies of such entity, whether through the ownership of voting securities, by contract, or otherwise.

b. "**Agreement**" means each Ordering Document, any applicable incorporated documents, and these Terms.

c. "**Confidential Information**" means information in any form, whether oral or written, of a business, financial or technical nature which the recipient reasonably should know is confidential and which is disclosed by a party in the course of the Agreement.

d. "**Documentation**" means manuals, handbooks, guides and other user instructions, documentation and materials available through the product or provided by us regarding the capabilities, operation, and use of our Services.

e. "**Ordering Document**" means an order form, order confirmation, statement of work, invoice, e-commerce confirmation or similar agreement issued by such Thomson Reuters entity or entities that lists or describes the Services to be supplied by us.

f. "**Professional Services**" means the implementation, customization, training, consulting or other professional services we provide, as may be described in the applicable Ordering Document.

g. "**Property**" means our property, which includes but is not limited to our products, Services, information, Documentation, data (whether tangible or intangible) and Usage Information.

h. "**Services**" means the cloud computing services, software-as-a-service, online research services, Professional Services, as well as any products, including installed software, supplied by Thomson Reuters under the Agreement that are detailed in the applicable Ordering Document.

i. "**Usage Information**" means any information, data, or other content (including statistical compilations and performance information) related to or derived from your access to and use of our Property.

j. "**Your Data**" means, other than Usage Information, information, data, and other content, in any form or medium, that is submitted, posted, or otherwise transmitted by you or on your behalf through the Services.

## 2. IP OWNERSHIP; LICENSES & DELIVERY

a. **Reservation of Rights.** Together with our licensors, we reserve all rights not expressly granted under the Agreement. Except for the limited rights and licenses expressly granted herein, nothing in the Agreement grants, by implication, waiver, estoppel, or otherwise, to you or any third party any intellectual property rights or other right, title, or interest in or to our Property. You acknowledge that, as between the parties, all intellectual property rights in our Property are owned by us, our Affiliates, or third-party providers. You will not remove or conceal any property rights notices in the Services and will include such notices on any copy you are permitted to make.

b. **Services License**. Except with respect to any installed software, which is licensed under Section 2(d) below, or Professional Services, subject to the terms and conditions of the Agreement, we hereby grant you a non-exclusive, non-sublicensable, non-transferable right to access, view, and use our Services solely for your own internal business purposes.

c. **Documentation License**. Subject to the terms and conditions contained in the Agreement, where Documentation is available, we hereby grant you a non-exclusive, non-sublicensable, non-transferable license to use such Documentation solely for your internal business purposes and in connection with your use of our Services.

d. **Installed Software License**. Subject to the terms and conditions of the Agreement, to the extent you purchase a license or subscription to any of our installed software, we grant you a non-exclusive, non-sublicensable, non-transferable right to install and use such installed software only for your own internal business purposes. You may make necessary copies of such installed software solely for backup and archival purposes. Any such copy of such installed software: (i) remains our exclusive Property; (ii) is subject to the terms and conditions of the Agreement; and (iii) must include all copyright or other proprietary rights notices contained in the original. You may only use such installed software in object code format.

e. **Limited License to Your Data**. You hereby grant us a non-exclusive license and right to use, copy, store, host, display, transmit and process Your Data solely as necessary for Thomson Reuters, our employees and contractors to provide our Services under the Agreement and in accordance with applicable law. We may delete or disable Your Data if required under applicable law, in which case we will use our reasonable efforts to provide notice to you. We acknowledge that, as between the parties, all intellectual property rights in Your Data are owned by you or your licensors.

f. **Delivery**. We will deliver our Services and any Documentation electronically, on tangible media, or by other means, in our sole discretion. When you download or access our Services or Documentation, you are accepting it for use in accordance with the Agreement.

g. **Ordering Document**. Your Ordering Document identifies the Services, quantities, charges and other details of your order. The applicable Ordering Document may also refer to and incorporate documents which may apply to the Services you selected. Each Ordering Document, any applicable incorporated documents and these Terms constitute the complete agreement and supersede any prior or contemporaneous discussions, agreements, representations or warranties regarding your order. If you are permitted to provide an Affiliate with access to any part of the Services, you will ensure that such Affiliate complies with all provisions of the Agreement applicable to you.

h. **Use of Name**. Other than as necessarily required for (i) the provision of the Services, (ii) internal account management purposes, or (iii) compliance with applicable law or regulation, neither party may use the other party's name, trademarks or any derivatives of them, without the other's prior written consent.

### 3. OUR SERVICES

a. **Changes to Service**. Our Services may change from time to time, but we will not change their fundamental nature unless otherwise expressly permitted herein. Certain Services include updates (bug fixes, patches, maintenance releases). We reserve the right to charge for upgrades (releases or versions that include new features or additional functionality) or any application programming interfaces ("APIs") for applicable Services. Any additional charges for selected upgrades or APIs will be set forth in a separate Ordering Document. We may subject certain features or functionality to metering or other usage restrictions to maintain responsive performance.

b. **Passwords**. Your access to certain Services is password protected. You are responsible for ensuring that passwords are kept confidential. Sharing passwords is strictly prohibited. Each user must immediately change their username/password combinations that have been acquired by or disclosed to an unauthorized third party. Each of us shall maintain industry standard computing environments to ensure that both your and our property is secure and inaccessible to unauthorized persons.

c. **Unauthorized Technology**. Unless prior written authorization is given by Thomson Reuters, you must not (i) run or install any computer software or hardware on our Services or network; (ii) mine, scrape, index, or automatically download our data; or (iii) automatically connect (whether through APIs or otherwise) our data to other data, software, services or networks. Neither of us will knowingly introduce any malicious software or technologies into any products, services or networks.

d. **Third Party Providers**. Our Services may include data and software from third parties. Some third-party providers require Thomson Reuters to pass additional terms through to you. The third-party providers change their terms occasionally and new third-party providers are added from time to time. To see the current third-party additional terms for our Services please click on the following URL: www.thomsonreuters.com/thirdpartyterms. You agree to comply with all applicable third-party terms therein.

e. **Third Party Supplemental Software**. You may be required to license third-party software to operate some of our Services. Additional terms may apply to such third-party software.

f. **Use Restrictions**. You shall not use our Property or permit a third party to use our Property for any purposes beyond the scope of the access granted herein. Unless otherwise expressly permitted in the Agreement, you may not and you may not permit a third party to: (i)

sell, license, sublicense, distribute, publish, display, store, copy, modify, merge, decompile, decode or disassemble, reverse engineer, remove any proprietary notices, translate or transfer our Property in whole or in part, or as a component of any other product, service or material; (ii) use or provide our Property on a white-labeled/re-branded basis, or otherwise, for the benefit of any third party (other than to the extent third parties are expressly permitted to receive our Property under the Agreement) (iii) use our Property or our third-party providers' property to train any artificial intelligence (AI) or machine learning algorithms or software or create any derivative works, compilations or collective works or in any manner or for any purpose that infringes, misappropriates, or otherwise violates any intellectual property right or other right of any person, or that violates any applicable law; or (iv) allow any third parties to access, use or benefit from our Property in any way. Notwithstanding the foregoing, you may (a) download and print limited extracts of content from our Services solely for your own internal business purposes and (b) on an infrequent, irregular and ad hoc basis, distribute limited extracts of content from our Services; provided that, in either case, (1) such extracts do not reach such quantity as to have commercial value and you do not use such extracts as a substitute for any Services and (2) Thomson Reuters and any third- party content provider, if applicable, is cited and credited as the source. Exercising legal rights that cannot be limited by agreement is not precluded. Only if you are in the business of providing audit, tax, or accounting services, or legal advice to your clients, this Section 3(f) does not preclude you from using our Services to benefit your clients in the ordinary course of your business in accordance with the Agreement. Except as expressly set forth in the Agreement we retain all rights and you are granted no rights in or to our Property.

g. **Security**. Each of us will use and will require any subcontractors to use industry standard organizational, administrative, physical and technical safeguards to protect the other's data. The parties agree that the specific technical and organizational measures located here tr.com/trdsa ("Data Security Addendum") apply and are hereby incorporated into the Agreement by reference. Additionally, you will notify us if you become aware of any unauthorized third-party access to our data or systems and will use reasonable efforts to remedy identified security threats and vulnerabilities to your systems.

h. **Compliance**. Each of us shall at all times comply with applicable law, including export controls and economic sanctions that apply to us in connection with the Agreement. You will not obtain, retain, use, or provide access to the Services to an Affiliate or any third party in a manner that may breach any applicable export control or economic sanctions laws and regulations for any jurisdiction, including the United States of America, the United Kingdom and the European Union and its Member States. You warrant that neither you, nor any Affiliate to which you provide access to the Services, is or is affiliated with a specially designated or sanctioned entity under any of those laws and that, in any transaction relating to us, you will not involve sanctioned parties, including without limitation through the use of bank accounts at banks that are sanctioned parties.

i. **Your Responsibilities**. You are responsible for (i) proper use of our Property in accordance with all Documentation, usage instructions and operating specifications; (ii) adherence to the minimum recommended technical requirements; (iii) changes you make to our Services or data; (iv) your combination of our Property with any other products, services, data or other property; (v) implementing and maintaining proper and adequate virus or malware protection and proper and adequate backup and recovery systems; and (vi) installing updates.

## 4.   CHARGES

a.   **Payment and Taxes**. You must pay our charges that are not the subject of a good faith dispute within 30 days of the date of invoice in the currency stated on the applicable Ordering Document without set-off, counterclaim or deduction. A Thomson Reuters Affiliate may act as a billing and collection agent for the Thomson Reuters entity listed on the applicable Ordering Document. For online purchases, you authorize us to charge you for charges stated in the applicable Ordering Document via credit card, debit card, or Automated Clearing House ("ACH") or any other method you have agreed to in advance. If you are a non-government subscriber and you fail to pay your invoiced charges, you are responsible for collection costs including legal fees. You must also pay applicable taxes and duties, other than taxes on our income, in addition to the price quoted, unless you provide valid proof that you are exempt. Invoice disputes must be notified within 15 days of the date of the invoice.

b.   **Changes**. We may increase, or adjust the basis for calculating, the charges for our Services with effect from the start of each renewal term by giving you at least 60 days written notice; any other price changes or adjustments will be as set out in your Ordering Document.

c.   **Excess Use**. You must pay additional charges if you exceed the scope of use specified in the applicable Ordering Document, based on the rates specified on the applicable Ordering Document or our current standard pricing, whichever is greater. We may change the charges if you merge with, acquire or are acquired by another entity which results in additional access to our Services or data.

## 5.   PRIVACY

The parties agree that the terms of the Data Processing Addendum ("DPA") available at: http://tr.com/data-processing-addendum shall apply to the extent Thomson Reuters Processes Customer Personal Data (as those terms are defined in the DPA), in which case the DPA is hereby incorporated into the Agreement by this reference. For clarity, where each of us Process any Personal Data as separate and independent Controllers (as those terms are defined in the DPA), each party will comply with, and be independently liable under, all applicable laws that apply to it.

## 6.   CONFIDENTIALITY

Each party agrees to (i) protect any Confidential Information received from the other party using the same standard of care it uses to protect its own Confidential Information (which shall be no less than a reasonable degree of care) and (ii) not disclose any part of it to any third party except to its Affiliates, contractors, financial advisors, accountants and attorneys who are subject to legal privilege or confidentiality duties or obligations to the recipient that are no less restrictive than the terms and conditions of the Agreement. If a court or government agency orders either of us to disclose the Confidential Information of the other, the other will be promptly notified so that an appropriate protective order or other remedy can be obtained unless the court or government agency prohibits prior notification. These obligations of confidentiality do not apply to information which: (a) is or becomes generally available to the public (through no act or omission of the receiving party); (b) becomes known to the receiving party on a non- confidential basis through a third party who is not subject to an obligation of confidentiality with respect to that information; (c) was lawfully in the possession of the receiving party prior to such disclosure as established by documentary evidence; or (d) is

independently developed by the receiving party, as established by documentary evidence, without reference to or use of, in whole or in part, any of the disclosing party's Confidential Information. This section shall survive three (3) years after the termination of the Agreement or until the Confidential Information is no longer deemed confidential under applicable law, whichever occurs first. In the event of any breach of the confidentiality provisions of this Section 6, the non-breaching party may be irreparably and immediately harmed and might not be made whole by monetary damages. The non-breaching party may be entitled to seek equitable relief by way of injunction, specific performance or similar remedy in addition to any other remedies that may be available to it from a court of competent jurisdiction to prevent or restrain breaches of this Section.

## 7.   WARRANTIES AND DISCLAIMERS

a.   **LIMITED WARRANTY. EXCEPT WITH RESPECT TO INSTALLED SOFTWARE OR PROFESSIONAL SERVICES, WE WARRANT THAT PROPERLY LICENSED SERVICES WILL MATERIALLY CONFORM TO ANY DOCUMENTATION THAT ACCOMPANIES THE SERVICES. THIS LIMITED WARRANTY APPLIES FOR THE DURATION OF THE TERM. YOUR ONLY REMEDY IN THE EVENT WE BREACH THIS LIMITED WARRANTY SHALL BE THE REPAIR OR REPLACEMENT OF THE SERVICES AT NO CHARGE. THIS LIMITED WARRANTY DOES NOT COVER PROBLEMS CAUSED BY YOUR FAILURE TO ADHERE TO INSTRUCTIONS OR CAUSED BY EVENTS BEYOND OUR REASONABLE CONTROL.**

b.   **INSTALLED SOFTWARE. WE WARRANT THAT OUR INSTALLED SOFTWARE WILL MATERIALLY CONFORM TO OUR DOCUMENTATION FOR 90 DAYS AFTER DELIVERY. IF DURING THIS WARRANTY PERIOD WE ARE UNABLE TO CORRECT, WITHIN A REASONABLE TIME PERIOD AND MANNER, AN INSTALLED SOFTWARE ERROR YOU REPORT TO US, YOU MAY TERMINATE THE APPLICABLE ORDERING DOCUMENT FOR THE AFFECTED INSTALLED SOFTWARE BY PROMPT WRITTEN NOTICE TO US FOLLOWING THE REASONABLE TIME PERIOD AND THE LICENSES WILL IMMEDIATELY TERMINATE. YOUR ONLY REMEDY AND OUR ENTIRE LIABILITY FOR BREACH OF THIS WARRANTY WILL BE A REFUND OF THE APPLICABLE CHARGES.**

c.   **PROFESSIONAL SERVICES. WE WARRANT THAT WE WILL PROVIDE ANY PROFESSIONAL SERVICES USING REASONABLE SKILL AND CARE.**

d.   **DISCLAIMER OF WARRANTIES. THE FOREGOING WARRANTIES DO NOT APPLY, AND WE STRICTLY DISCLAIM ALL WARRANTIES, WITH RESPECT TO ANY THIRD-PARTY DATA OR THIRD-PARTY SOFTWARE. EXCEPT FOR THE LIMITED WARRANTIES PROVIDED IN SECTIONS 7(A), (B), and (C) HEREIN, OUR SERVICES ARE PROVIDED "AS IS", AND ALL WARRANTIES, CONDITIONS AND OTHER TERMS IMPLIED BY STATUTE OR COMMON LAW INCLUDING, WITHOUT LIMITATION, WARRANTIES OR OTHER TERMS AS TO SUITABILITY, MERCHANTABILITY, SATISFACTORY QUALITY AND FITNESS FOR A PARTICULAR PURPOSE, ARE EXCLUDED TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW. IN ENTERING THE AGREEMENT, NEITHER PARTY HAS RELIED UPON ANY STATEMENT, REPRESENTATION, WARRANTY OR AGREEMENT OF THE OTHER PARTY EXCEPT FOR THOSE EXPRESSLY CONTAINED IN THE AGREEMENT. UNLESS OTHERWISE EXPRESSLY STATED IN THE AGREEMENT, AND TO THE FULLEST EXTENT PERMISSIBLE UNDER APPLICABLE LAW, WE DO NOT WARRANT OR REPRESENT OR INCLUDE ANY OTHER TERM THAT THE SERVICES WILL BE DELIVERED FREE OF ANY INACCURACIES, INTERRUPTIONS, DELAYS, OMISSIONS OR ERRORS, OR THAT ANY OF THESE WILL BE CORRECTED, AND WE WILL NOT BE LIABLE FOR ANY DAMAGES RESULTING FROM SUCH FAULTS. WE DO NOT WARRANT THE LIFE OF ANY URL OR THIRD-PARTY WEB SERVICE.**

**e.   NO ADVICE. WE ARE NOT PROVIDING FINANCIAL, TAX AND ACCOUNTING, LEGAL, COMPLIANCE OR ANY OTHER PROFESSIONAL ADVICE BY ALLOWING YOU TO ACCESS AND USE OUR SERVICES, DOCUMENTATION OR DATA. SOME INFORMATION MAY CONTAIN THE OPINIONS OF THIRD PARTIES, AND THOMSON REUTERS IS NOT RESPONSIBLE FOR THESE OPINIONS. YOUR DECISIONS MADE IN RELIANCE ON THE SERVICES, DOCUMENTATION OR YOUR INTERPRETATIONS OF OUR DATA ARE YOUR OWN FOR WHICH YOU HAVE FULL RESPONSIBILITY. WE ARE NOT RESPONSIBLE FOR ANY DAMAGES RESULTING FROM ANY DECISIONS BY YOU OR ANYONE ACCESSING THE SERVICES THROUGH YOU MADE IN RELIANCE ON THE SERVICES, INCLUDING FINANCIAL, TAX AND ACCOUNTING, LEGAL, COMPLIANCE, OR ANY OTHER PROFESSIONAL ADVICE. YOU AGREE THAT YOU USE THE SERVICES AT YOUR OWN RISK IN THESE RESPECTS. YOU ARE SOLELY RESPONSIBLE FOR THE PREPARATION, CONTENT, ACCURACY AND REVIEW OF ANY DOCUMENTS, DATA, OR OUTPUT PREPARED OR RESULTING FROM THE USE OF ANY SERVICES AND FOR ANY DECISIONS MADE OR ACTIONS TAKEN BASED ON THE DATA CONTAINED IN OR GENERATED BY THE SERVICES.**

## 8.   LIABILITY

**a.   LIMITATION. EACH PARTY'S OR ANY OF ITS THIRD PARTY PROVIDERS' ENTIRE LIABILITY IN ANY CALENDAR YEAR FOR DAMAGES ARISING OUT OF OR IN CONNECTION WITH THE AGREEMENT, INCLUDING FOR NEGLIGENCE, WILL NOT EXCEED THE AMOUNT PAYABLE IN THE PRIOR 12 MONTHS FOR THE SERVICE THAT IS THE SUBJECT OF THE CLAIM FOR DAMAGES (OR, IF THE CLAIM IS MADE WITHIN THE FIRST 12 MONTHS, 12 TIMES THE AVERAGE OF THE MONTHLY CHARGES PAID).**

**b.   EXCLUSIONS. IN NO EVENT SHALL WE OR OUR THIRD-PARTY PROVIDERS BE LIABLE FOR ANY PENALTIES, INTEREST, TAXES OR OTHER AMOUNTS IMPOSED BY ANY GOVERNMENTAL OR REGULATORY AUTHORITY. NEITHER PARTY IS LIABLE TO THE OTHER FOR INDIRECT, INCIDENTAL, PUNITIVE, SPECIAL OR CONSEQUENTIAL DAMAGES, FOR LOSS OF DATA, OR LOSS OF PROFITS (IN EITHER CASE, WHETHER DIRECT OR INDIRECT) EVEN IF SUCH DAMAGES OR LOSSES COULD HAVE BEEN FORESEEN OR PREVENTED.**

c.   **Unlimited Liability**. Section 8(a) does not limit either party's liability for (i) fraud, fraudulent misrepresentation, willful misconduct, or conduct that demonstrates reckless disregard for the rights of others; (ii) negligence causing death or personal injury; (iii) its infringement of the other party's intellectual property rights; (iv) our indemnification obligations in Section 8(d); (v) your indemnification obligations in Section 8(e); or (vi) your obligation to pay the charges on the applicable Ordering Document and all amounts for use of the Services that exceed the usage permissions and restrictions granted to you. Nothing in the Agreement limits liability that cannot be limited under law.

d.   **Third Party Intellectual Property**. If a third party sues you claiming that our Services, excluding any portions of the same provided by our third-party providers, infringes their intellectual property rights, and your use of such Services has been in accordance with the terms of the Agreement, we will defend you against the claim

and pay damages that a court finally awards against you or that are

included in a settlement approved by Thomson Reuters, provided the claim does not result from: (i) a combination of all or part of our Services with technology, products, services or data not supplied by Thomson Reuters; (ii) modification of all or part of our Services other than by Thomson Reuters or our subcontractors; (iii) use of a version of our Services after we have notified you of a requirement to use a subsequent version; or (iv) your breach of the Agreement. Our obligation in this Section 8(d) is conditioned on you (1) promptly notifying Thomson Reuters in writing of the claim; (2) supplying information we reasonably request; and (3) allowing Thomson Reuters to control the defense and settlement. We may remedy any alleged or anticipated infringement of a third-party intellectual property right by (a) procuring the right for you to continuing using the Service in accordance with this Agreement; (b) replacing the affected Property with replacements that do not alter the fundamental nature of the relevant Service; or (c) taking any of the actions in 9(b).

e.   **Your Obligations.** You are responsible for any loss, damage or cost we and our Affiliates incur arising out of or in connection with a third-party claim, or a regulatory fine or penalty, connected to: (i) an allegation that our or our Affiliates' use of the information, data, software, or other materials provided to us by you or on your behalf, which we are required to host, use or modify in the provision of our Services infringes the intellectual property rights of a third party (except to the extent of any indemnity we provide you under Section 8(d) (Third Party Intellectual Property); (ii) your or your subcontractors' use of our Property in breach of the Agreement or in violation of applicable law; (iii) our or our Affiliates' compliance with any instruction given by you to us in the course of the provision of our Services; or (iv) an assertion by any person accessing or receiving the benefit of any part of our Services through you.

f.   **Customer Assistance.** We will not be responsible if our Service fails to perform because of your third-party software, your hardware malfunction, or your actions or inaction. If we learn that our Service failed because of one of these, we also reserve the right to charge you for our work in investigating the failure. At your request we will assist you in resolving the failure at a fee to be agreed upon by us.

## 9.   TERM, TERMINATION

a.   **Term**. The term and any renewal terms for the Services are described in the applicable Ordering Document. If not otherwise stated in the applicable Ordering Document, the Agreement will automatically renew annually unless either of us gives the other at least 30 days written notice before the end of the then current term.

b.   **Suspension and Termination**. We may on notice terminate, suspend or limit your use of any portion or all of our Services, or modify the terms on which it is provided, if (i) requested to do so by a third-party provider, court or regulator; (ii) you become or are reasonably likely to become insolvent; (iii) there has been or it is reasonably likely that there will be: (1) a breach of security; a breach of your obligations under the Agreement or another agreement between us; (2) a breach of our agreement with a third-party provider; (3) a violation of third party rights or (4) applicable law. Our notice will specify the cause of the termination, suspension or limitation and, if the cause of the termination, suspension or limitation is reasonably capable of being remedied, we will inform you of the actions you must take to reinstate the Service. If you do not take the actions or the cause cannot be remedied within 30 days, we may suspend, limit or terminate the Agreement in whole or in part. Charges remain payable in full during periods of suspension or limitation arising from your action or inaction. We may, upon reasonable notice, terminate all or part of the Agreement in relation to a Service which is being discontinued.

c.   **Material Breach**. Either of us may terminate the Agreement immediately upon written notice if the other commits a material breach and fails to cure the material breach within 30 days of written notice. Any misrepresentation by you or failure to fully pay any amount when due under the Agreement is a material breach for this purpose. Where (i) we terminate a Service, other than for a termination for your breach pursuant to this Section 9(c) or a termination for your insolvency pursuant to Section 9(b), or (ii) you terminate a Service for our breach pursuant to this Section 9(c), you will be entitled to a pro rata refund of any recurring charges paid in advance for the terminated Service that has not been rendered.

d.   **Effect of Termination**. Except to the extent we have agreed otherwise, upon expiration or termination of the Agreement, all licenses and rights granted herein shall end immediately and you must uninstall or destroy all of our Property. Additionally, upon expiration or termination, at your request, we will, at our discretion, either return or destroy your Confidential Information, except as may be required for archival or compliance purposes. Termination of the Agreement will not (i) relieve you of your obligation to pay Thomson Reuters or its agent any amounts you owe up to and including the date of termination; (ii) affect other accrued rights and obligations; or (iii) terminate those parts of the Agreement that by their nature should continue or those that expressly state shall survive termination.

e.   **Amendments.** We may modify these Terms at any time by providing notice to you by posting the updated Terms at http://tr.com/TermsandConditions, providing notice to you through your TR account (i.e., My Account), sending you a renewal notice communication, or using other similar means. Modified terms become effective 30 days after such notice. By using the Services after the effective date, you agree to be bound by the most recent version of the Terms. You are responsible for reviewing and becoming familiar with any such modifications.

f.   **Force Majeure**. We are not liable for any damages or failure to perform our obligations under the Agreement because of circumstances beyond our reasonable control. If those circumstances cause material deficiencies in the Services and continue for more than 30 days, either of us may terminate any affected Service on written notice to the other.

## 10.   THIRD PARTY RIGHTS

Our third-party providers benefit from our rights and remedies under the Agreement. Except for our third-party providers, no other third parties have any rights or remedies under the Agreement.

## 11.   GENERAL

a.   **Assignment**. Unless otherwise provided in this Section, neither party may assign or transfer (by operation of law or otherwise) any right or obligation under the Agreement to anyone else without the other party's prior written consent, which may not be unreasonably withheld or delayed. We may delegate or transfer any obligation set forth in the Agreement, assign the Agreement, or assign any rights or remedies granted in the Agreement in whole or in part (i) to an Affiliate; (ii) in connection with our or our Affiliate's sale of a division, product or service; or (iii) in connection with a reorganization, merger, acquisition, divestiture or similar business transaction. We may subcontract any of the Services in our sole discretion. Any assignment, delegation or other transfer in contravention of this Section 11(a) is void.

b.   **Feedback**. You may voluntarily provide any comments, suggestions, ideas or recommendations (collectively, "Feedback") to

Thomson Reuters, and if so, you grant Thomson Reuters a perpetual, irrevocable, transferable, non-exclusive right, without charge, to use any Feedback you provide related to any of our Property in any manner and for any purpose.

c.   **Agreement Compliance**. We or our professional representatives may review your compliance with the Agreement throughout the term of the Agreement. If the review reveals that you have exceeded the authorized use permitted by the Agreement, you will pay all unpaid or underpaid charges.

d.   **Governing Law**. Unless otherwise stated in the applicable Ordering Document, the Agreement will be governed by the laws of the State of New York and each of us hereby irrevocably submits to the exclusive jurisdiction of the federal and state courts of the State of New York located in New York County to settle all disputes or claims arising out of or in connection with the Agreement.

e.   **Precedence**. If there is any conflict among any elements of the Agreement, the descending order of precedence is: third party license terms contained in Section 3(e) of these Terms; the applicable Ordering Document; and the remaining provisions of the Agreement.

f.   **Trials.** All trials or testing of our Services are subject to these Terms unless we notify you otherwise. Access to our Services for trials may only be used for your evaluation purposes. Unless we agree otherwise in writing, any data you enter into the Services, and any customizations made to the Services by or for you, during any free trial may be permanently destroyed at the end of the trial.

g.   **Support Provided.** To assist in resolving technical problems with the Services, Thomson Reuters, or its agents on behalf of Thomson Reuters, may provide telephone and/or online access to its helpdesk or may provide self-help tools. Additional information related to the support provided by Thomson Reuters may be described on http://thomsonreuters.com/support-and-training or as otherwise provided by Thomson Reuters. You may request usto assist with any of the following: (a) issues caused by you or third party information or materials; (b) any Services, or any versions of Services, that we has advised you are unsupported; (c) issues caused by your failure to follow our instructions or specifications; (d) Services not located in or conforming to the operating environment specified in the Agreement; (e) issues caused by accidents, modifications, support, relocation or misuse of the Service not attributable to us; or (f) your networking or operating environment. Additional Charges in respect of such assistance may apply.

h.   **No Waiver.** If either party delays or fails to exercise any right or remedy under the Agreement, it will not have waived that right or remedy.

i.   **Severability.** If any part of the Agreement that is not fundamental is illegal or unenforceable, it will be deemed modified to the minimum extent necessary to make it legal and enforceable. If such modification is not possible, the part will be deemed deleted. Any such modification or deletion will not affect the validity and enforceability of the remainder of the Agreement.

j.   **Consent to Electronic Communications**. You hereby consent to receiving electronic communications from us. These electronic communications may include notices about applicable fees and charges, transactional information, and other information concerning or related to the Services.

k.   **Notices**. All notices under the Agreement must be in writing and sent by email (except for notices of breach of the Agreement which may not be sent by email) or mail, courier, fax or delivered in person

at the address set out on the relevant Ordering Document between the parties (or such other more recent address notified to the other). However, we may give technical or operational notices or notices of third-party provider terms via publication on the URL in Section 3(e) or within the Services themselves.

l.    **Entire Agreement and Non-Reliance.** The Agreement contains the entire understanding between us regarding its subject matter and supersedes all prior agreements, understandings, negotiations, proposals and other representations, verbal or written, in each case relating to such subject matter, including without limitation any terms and conditions appearing on a purchase order or other form(s) used by you. Each of us acknowledges that in entering into the Agreement neither of us have relied on any representations made by the other that are not expressed in the Agreement.

# EXHIBIT H

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT I

Learn more about  **LSEG**

 REUTERS®

⊞ My View    ○ Following    🔖 Saved

Americas

# Thomson Reuters profit tops estimates as it plans AI push

By **Helen Coster** and **Kenneth Li**

May 2, 2023 1:39 PM PDT · Updated 4 months ago

  



[1/2] The Thomson Reuters logo is seen on the company building in Times Square, New York, U.S., January 30, 2018. REUTERS/Andrew Kelly/File Photo *Acquire Licensing Rights* 

‹  ›

May 2 (Reuters) - Thomson Reuters Corp (TRI.TO) on Tuesday reported higher-than-expected sales and operating profit in the first quarter, helped by divestitures and high customer retention rates, as it plans a deeper investment in artificial intelligence.

The news and information company reported adjusted earnings of 82 cents per share, beating analyst forecasts for 80 cents.

Total revenue rose 4% in the quarter to $1.738 billion, beating expectations, according to estimates from Refinitiv.

Thomson Reuters, which owns the Westlaw legal database, Reuters news agency and the Checkpoint tax and accounting service, said organic revenue was up 7% for its "Big 3" segments: Legal Professionals, Corporates and Tax & Accounting Professionals.

"While we acknowledge elevated macroeconomic uncertainty, our underlying business is resilient," Chief Executive Steve Hasker said in a statement.

Thomson Reuters reaffirmed most 2023 financial estimates, but trimmed its full-year total revenue growth forecast to 3% to 3.5%, from 4.5% to 5%, reflecting the sale of a majority stake in legal business management software company Elite to TPG.

In an interview with Reuters, Hasker said the company does not expect layoffs this year.

Shares, which reached a record high last month, fell about 1% in both New York and Toronto trading.

The company "delivered a good quarter" but its positives are already reflected in its shares, analyst Matt Arnold of Edward Jones said in a note, adding he saw no catalyst for Tuesday's stock decline.

Thomson Reuters plans to spend some $100 million a year to invest in artificial intelligence, Hasker said. It will start seeing generative AI incorporated into flagship products in the second half of this year. Generative AI is a type of artificial intelligence that generates new content or data in response to a prompt, or question, by a user.

The $100 million is separate from the company's M&A budget, which will be about $10 billion from now to 2025, Michael Eastwood, Thomson Reuters' Chief Financial Officer, said in an interview.

Over the last three years, almost all of the company's M&A budget has been allocated to artificial intelligence, and executives see that trend continuing. AI features will be incorporated in most major business divisions -- legal, tax and accounting, and in the news business.

AI is already embedded in Thomson Reuters products such as Westlaw Edge and Practical Law. In 2022, the company acquired PLX AI, a real-time financial news service powered by the technology.

The company said it sold 24.5 million shares of London Stock Exchange Group (LSEG) (LSEG.L) in the first quarter for gross proceeds of $2.3 billion. As of April 30, it owned 47.4 million shares of LSEG, worth $5 billion.

Thomson Reuters said it had "increasing confidence" about its outlook but noted there were "many signs that point to a weakening global economic environment" from high interest rates and geopolitical risk.

In April, the company said it would return $2.2 billion to shareholders through a cash distribution and a reverse stock split after selling some of its LSEG shares.

Reporting by Helen Coster and Kenneth Li in New York, Editing by Nick Zieminski

Our Standards: **The Thomson Reuters Trust Principles.**

**Acquire Licensing Rights** ↗

---



**Helen Coster**
Thomson Reuters

Helen Coster is a Media Correspondent at Reuters, where she writes a mix of spot news, enterprise and analysis stories. She was previously a Senior Editor on Reuters' Commentary team, where she assigned, edited and wrote analysis pieces. Prior to joining Reuters, Coster worked as a senior writer at Forbes, where she wrote magazine and web stories and a blog about the intersection of business and social issues. A graduate of Princeton University, she has reported from six countries, including Pakistan, India, and Greece.

  

---

## Read Next

Business

**Hurricane Idalia strengthens en route to Florida, expected to land as Category 4 storm**

11:11 AM UTC

Europe

**Exclusive: Russia will not probe Prigozhin plane crash under international rules**

10:03 AM UTC

---

Americas

**Canada, citing potential dangers, warns LGBTQ travelers of US risks**

8:09 AM UTC

---

United States

**Florida's Gulf Coast braces for major hurricane as Idalia nears landfall**

11:23 AM UTC

---

**More from Reuters**

UK air traffic 'technical issue' causes delays
(1:10) - August 28, 2023
[Watch more videos](#)

**UK air traffic
'technical issue'
causes delays**
01:10

**How worried should
we be about the
new COVID wave?**
02:57

**UNC-Chapel Hill
faculty member
killed in shooting**
00:58

**Wrestlers grapple in
gravy to raise funds
in England**

**World** ›

# Trump co-defendant Powell pleads not guilty in Georgia election subversion case

United States · August 29, 2023 · 10:54 AM PDT

Attorney Sidney Powell has waived a formal arraignment and pleaded not guilty, a court filing shows.

---

Explainer
**Explainer: What is Australia's Indigenous 'Voice to Parliament' referendum?**
7:13 PM PDT

---

United States
**At what age should kids become financially independent?**
12:34 PM PDT

---

United States
**Tennessee governor's push for gun laws fails as lawmakers scuffle**
5:42 PM PDT

---

United States
**Ex-CIA employee's conviction in big secrets leak is largely upheld**
10:51 AM PDT

---

Latest

**Home**

Browse

**World**
**Business**

Media

Videos ⧉
Pictures
Graphics ⧉

Markets
Sustainability
Legal
Breakingviews
Technology
Investigations ⧉
Sports
Science
Lifestyle

About Reuters

**About Reuters** ⧉
**Careers** ⧉
**Reuters News Agency** ⧉
**Brand Attribution Guidelines** ⧉
**Reuters Leadership** ⧉
**Reuters Fact Check** ⧉
**Reuters Diversity Report** ⧉

Stay Informed

**Download the App** ⧉
**Newsletters** ⧉

---

Information you can trust

Reuters, the news and media division of Thomson Reuters, is the world's largest multimedia news provider, reaching billions of people worldwide every day. Reuters provides business, financial, national and international news to professionals via desktop terminals, the world's media organizations, industry events and directly to consumers.

Follow Us



---

Thomson Reuters Products

**Westlaw** ⧉

Build the strongest argument relying on authoritative content, attorney-editor expertise, and industry defining technology.

**Onesource** ⧉

The most comprehensive solution to manage all your complex and ever-expanding tax and compliance needs.

**Checkpoint** ⧉

The industry leader for online information for tax, accounting and finance professionals.

---

LSEG Products

**Workspace** ⧉

Access unmatched financial data, news and content in a highly-customised workflow experience on desktop, web and mobile.

**Data Catalogue** ⧉

Browse an unrivalled portfolio of real-time and historical market data and insights from worldwide sources and experts.

**World-Check** ⧉

Screen for heightened risk individual and entities globally to help uncover hidden risks in business relationships and human networks.

---

**Advertise With Us** ⧉    **Advertising Guidelines** ⧉    **Coupons** ⧉    **Acquire Licensing Rights** ⧉

All quotes delayed a minimum of 15 minutes. See here for a complete list of exchanges and delays.

**Cookies** ⬈    **Terms of Use** ⬈    **Privacy** ⬈    **Digital Accessibility** ⬈    **Corrections** ⬈    **Site Feedback** ⬈

© 2023 Reuters. All rights reserved

# EXHIBIT J

Learn more about  **LSEG**

 REUTERS®

🔍  ☰

⊞ My View      👤 Following      🔖 Saved

Deals

## Thomson Reuters to acquire legal AI firm Casetext for $650 million

**Reuters**

June 27, 2023 10:59 AM PDT · Updated 2 months ago

 



A logo of Thomson Reuters is pictured on a truck during preparations for the annual meeting of the World Economic Forum (WEF), in Davos, Switzerland January 19, 2020. REUTERS/Denis *Acquire Lice*...

Read more

June 27 (Reuters) - Thomson Reuters (TRI.TO) said on Monday it had agreed to acquire Casetext, a legal startup with an artificial intelligence-powered assistant for law professionals, in a $650 million all-cash deal.

Thomson Reuters' chief financial officer, Michael Eastwood, had said last month that the company planned to spend about $100 million a year to invest in artificial intelligence (AI), which would be separate from the news and information company's merger and acquisition budget of about $10 billion from now till 2025.

One of Casetext's key products is CoCounsel, an AI legal assistant launched in 2023 and powered by GPT-4 that delivers document review, legal research memos, deposition preparation, and contract analysis in minutes, Thomson Reuters said in a statement.

Casetext was granted early access to OpenAI's GPT-4 large language model, allowing it to develop solutions with the new technology and refine use cases for legal professional, it added.

California-based Casetext employs 104 employees, and its customers include more than 10,000 law firms and corporate legal departments.

The acquisition of Casetext is another step towards bringing generative AI solutions to customers, said Steve Hasker, president and CEO of Thomson Reuters.

Generative AI is a type of artificial intelligence that generates new content or data in response to a prompt, or question, by a user.

The deal is expected to close in the second half of 2023, subject to specified regulatory approvals and customary closing conditions.

Reporting by Bharat Govind Gautam in Bengaluru; Editing by Rashmi Aich

Our Standards: **The Thomson Reuters Trust Principles.**

Acquire Licensing Rights ⧉

## Read Next

World
**Adani family's partners used 'opaque' funds to invest in its stocks - media group**
7:40 AM UTC

Deals
**Sula Vineyards shareholder Verlinvest looks to sell up to 12.5% stake- CNBC-TV18**
5:10 AM UTC

Business
**Brazil's Petrobras taps Chinese companies for energy collaboration**
4:56 AM UTC

Sustainability
**Japan's Seven & i aims to keep Sogo & Seibu workers after buyout - Nikkei**
4:39 AM UTC

## More from Reuters

America now in prolonged state of political violence
(3:55) - August 9, 2023
[Watch more videos](#)




**America now in prolonged state of political violence**
03:55


**How gold mining contaminates Amazon wildlife**
04:14

**Images of July**

01:37



**Images of June**



## Markets ›

# Home hopes Tiafoe, Paul and Gauff advance at US Open

Sports · August 30, 2023 · 6:41 PM PDT · 10 min ago

Frances Tiafoe, Tommy Paul and Coco Gauff all advanced to the third round of the U.S. Open on Wednesday to keep home hopes alive that an American player will be crowned champion at Flushing Meadows.

World

**Taiwan parties battle for younger voters as high-stakes elections loom**

18 min ago

Business

**Oil prices up on tighter supply, China PMI in focus**

36 min ago

World

**Adani family's partners used 'opaque' funds to invest in its stocks - media group**

5:40 PM PDT

Technology

**Google introduces generative AI to Search in India, Japan**

5:46 PM PDT

Latest

**Home**

Media

🎥 Videos ⧉
📷 Pictures
🖼 Graphics ⧉

Browse

World
Business
Markets
Sustainability
Legal
Breakingviews
Technology
Investigations ⧉
Sports
Science
Lifestyle

About Reuters

**About Reuters** ⧉
**Careers** ⧉
**Reuters News Agency** ⧉
**Brand Attribution Guidelines** ⧉
**Reuters Leadership** ⧉
**Reuters Fact Check** ⧉
**Reuters Diversity Report** ⧉

Stay Informed

**Download the App** ⧉
**Newsletters** ⧉

Information you can trust

Reuters, the news and media division of Thomson Reuters, is the world's largest multimedia news provider, reaching billions of people worldwide every day. Reuters provides business, financial, national and international news to professionals via desktop terminals, the world's media organizations, industry events and directly to consumers.

Follow Us

[Twitter] [Facebook] [Instagram] [YouTube] [LinkedIn]

Thomson Reuters Products

**Westlaw** ⧉

Build the strongest argument relying on authoritative content, attorney-editor expertise, and industry defining technology.

**Onesource** ⧉

The most comprehensive solution to manage all your complex and ever-expanding tax and compliance needs.

**Checkpoint** ⧉

The industry leader for online information for tax, accounting and finance professionals.

LSEG Products

**Workspace** ⧉

**Data Catalogue** ⧉

**World-Check** ⧉

Access unmatched financial data, news and content in a highly-customised workflow experience on desktop, web and mobile.

Browse an unrivalled portfolio of real-time and historical market data and insights from worldwide sources and experts.

Screen for heightened risk individual and entities globally to help uncover hidden risks in business relationships and human networks.

**Advertise With Us** ⧉    **Advertising Guidelines** ⧉    **Coupons** ⧉    **Acquire Licensing Rights** ⧉

All quotes delayed a minimum of 15 minutes. See here for a complete list of exchanges and delays.

**Cookies** ⧉    **Terms of Use** ⧉    **Privacy** ⧉    **Digital Accessibility** ⧉    **Corrections** ⧉    **Site Feedback** ⧉
**Do Not Sell or Share My Personal Information and Limit the Use of My Sensitive Personal Information**

© 2023 Reuters. All rights reserved

# EXHIBIT K

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY