IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

THOMSON REUTERS ENTERPRISE )
CENTRE GMBH and WEST PUBLISHING )
CORPORATION, )
)
       Plaintiffs and )
       Counterdefendants, )
)
  v. )   C.A. No. 20-613 (SB)
)
ROSS INTELLIGENCE INC., )   REDACTED – PUBLIC VERSION
)
       Defendant and )
       Counterclaimant. )

**THOMSON REUTERS' OPENING BRIEF IN SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT ON ROSS'S ANTITRUST COUNTERCLAIMS
(NO. 2) – MARKET DEFINITION AND MARKET POWER**

                             MORRIS, NICHOLS, ARSHT & TUNNELL LLP
                             Jack B. Blumenfeld (#1014)
                             Michael J. Flynn (#5333)
                             1201 North Market Street
                             P.O. Box 1347
                             Wilmington, DE  19899
OF COUNSEL:                  (302) 658-9200
                             jblumenfeld@morrisnichols.com
Daniel E. Laytin, P.C.         mflynn@morrisnichols.com
Christa C. Cottrell, P.C.
Cameron Ginder                 *Attorneys for Plaintiffs and Counterdefendants*
Max A. Samels               *Thomson Reuters Enterprise Center GmbH and West*
KIRKLAND & ELLIS LLP      *Publishing Corporation*
300 North LaSalle
Chicago, IL  60654
(312) 862-2000

Original filing date: August 31, 2023
Redacted filing date: September 14, 2023

<u>TABLE OF CONTENTS</u>

<u>Page</u>

SUMMARY OF ARGUMENT ............................................................................... 1

STATEMENT OF FACTS ................................................................................... 3

     A.     Westlaw's Collection of Primary Law ................................................. 3

     B.     Thomson Reuters' Legal Search Technology ...................................... 5

     C.     Westlaw's Integration of Legal Search and Primary Law ................... 6

     D.     Competition in the Market for Legal Research Platforms ................... 7

     E.     The Copyright Litigation and ROSS's Tying Claims ........................... 9

LEGAL STANDARD ......................................................................................... 10

ARGUMENT ..................................................................................................... 11

I.     Thomson Reuters Is Entitled to Judgment on ROSS's Per Se Tying Claim. ................... 11

     A.     ROSS Has Failed to Define a Relevant Tying Product Market. ........................... 11

     B.     ROSS Has Failed to Prove That Thomson Reuters Has Market Power in the Market for Public Law Databases. ................... 15

II.     ROSS Has No Alternative Theory of Anticompetitive Harm and Thus Its Rule of Reason Claim Fails. ................... 19

CONCLUSION .................................................................................................. 20

<u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Alvord-Polk, Inc. v. F. Schumacher & Co.*,
   37 F.3d 996 (3d Cir. 1994) ................................................................. 11

*In re Am. Express Anti-Steering Rules Antitrust Litig.*,
   361 F. Supp. 3d 324 (E.D.N.Y. 2019) ...................................... 14

*Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*,
   140 F.3d 494 (3d Cir. 1998) ...................................... 2, 11, 19

*Glob. Disc. Travel Servs., LLC v. Trans World Airlines, Inc.*,
   960 F. Supp. 701 (S.D.N.Y. 1997) .......................... 14

*It's My Party, Inc. v. Live Nation, Inc.*,
   811 F.3d 676 (4th Cir. 2016) ........................... 15

*Jefferson Par. Hosp. Dist. No. 2 v. Hyde*,
   466 U.S. 2 (1984) ........................... 1, 19, 20

*Maris Distrib. Co. v. Anheuser-Busch, Inc.*,
   302 F.3d 1207 (11th Cir. 2002) ................ 16

*Matsushita Elec. Indust. Co., Ltd. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ........................ 10

*New Mexico Oncology v. Presbyterian Healthcare Servs.*,
   418 F. Supp. 3d 826 (D.N.M. 2019) ........ 16

*Premier Comp Sols. LLC v. UPMC*,
   377 F. Supp. 3d 506 (W.D. Pa. 2019) ...... 13, 14

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*,
   124 F.3d 430 (3d Cir. 1997) ............... *passim*

*SodexoMAGIC, LLC v. Drexel Univ.*,
   24 F.4th 183 (3d Cir. 2022) .............. 10

*Somers v. QVC, Inc.*,
   2021 WL 4318045 (E.D. Pa. Sept. 23, 2021) ....... 14

*Town Sound & Custom Tops, Inc. v. Chrysler Motors Corp.*,
   959 F.2d 468 (3d Cir. 1992) ............ *passim*

*U.S. Horticultural Supply v. Scotts Co.*,
   367 F. App'x 305 (3d Cir. 2010) ......................................................................12, 14

*United States v. Dentsply Int'l, Inc.*,
   399 F.3d 181 (3d Cir. 2005)....................................................................................17

*Winn-Dixie Stores, Inc. v. E. Mushroom Mktg. Coop., Inc.*,
   2023 WL 5521221 (3d Cir. Aug. 28, 2023)............................................................16

## SUMMARY OF ARGUMENT

ROSS's sole surviving antitrust theory is based on Thomson Reuters' alleged "tie" of its legal search tools and collection of primary law into an integrated legal research platform, Westlaw. As explained in Summary Judgment Motion Number 1, ROSS's tying claims fail for the fundamental reason that ROSS has not, and cannot, establish consumer demand for separate search tools and collections of law. Without separate products, there can be no tie, and no such product markets exist. *See* D.I. 520.

ROSS's tying claims also fail because it cannot establish relevant markets and market power. To prove a per se tying claim ROSS has to both (1) establish the relevant tying product market, and (2) prove that Thomson Reuters has market power in that market. It has done neither. The law on defining product markets has been settled for decades: a product market must be defined with respect to reasonably interchangeable products and the cross-elasticity of demand. *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436–37 (3d Cir. 1997). Here, ROSS relies on the opinion of its market expert Dr. James Ratliff, who asserts that for the tying, public-law-database market, ████████████████████████████████████ ████████ Ex. 33, Ratliff Rpt. ¶ 24. But Dr. Ratliff's market definition opinion ██████ ████████████████████████████████ Dr. Ratliff ignored ███████████████████████████████████████████ ███████████████████████████████████ ██████████████████████████

Nor does ROSS have any evidence of Thomson Reuters' market power in any alleged public-law-database market. Dr. Ratliff points to Westlaw's alleged share of the market for *integrated legal research platforms*, but that has no legal or factual relevance to its share of a supposed market for *public law databases*. In any event, there is no evidence that Thomson

Reuters has market power in any such relevant market.  Lexis advertises having ***more caselaw*** than Westlaw—a proposition ROSS's experts did not analyze and could not dispute.  Casetext, an artificial intelligence startup, has contracted with over 10,000 law firms without Westlaw's database.  And even by Dr. Ratliff's assessment, ██████████████████████████████ ████████████████████████████████████████████████████████  For these reasons, ROSS cannot establish that Thomson Reuters has market power in "an economically and legally relevant [tying] product market," and ROSS's per se claim fails.  *Town Sound & Custom Tops, Inc. v. Chrysler Motors Corp.*, 959 F.2d 468, 479 n.12 (3d Cir. 1992).

ROSS cannot save its counterclaims under a rule-of-reason analysis.  A rule-of-reason claim requires evidence that Thomson Reuters has "unreasonably restrained competition in the tied product market," *i.e.*, the market for legal search tools.  *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 511 (3d Cir. 1998).  As with his "analysis" of the public-law-database market, Dr. Ratliff made no effort to define the legal-search-tool market.  This alone is fatal to a rule-of-reason claim:  before a party can prove "there was harm to competition in the tied market, that market must be defined." *Id.* at 519.  In addition, ROSS cannot establish that Thomson Reuters "unreasonably restrained competition" in any such market.  ROSS's sole antitrust theory is that Thomson Reuters leveraged market power in the market for public law databases to restrain trade in the market for legal search tools.  But, having failed to prove market power in the tying product market, ROSS must present a "plausible theory of antitrust harm that does not depend implicitly on power leveraging." *Town Sound*, 959 F.2d at 486.  It has not even tried to do that

here, and nor can it.  Thomson Reuters is thus entitled to summary judgment on ROSS's tying claims in their entirety.[1]

## STATEMENT OF FACTS

### A.     Westlaw's Collection of Primary Law

Thomson Reuters licenses Westlaw, an industry leading legal research platform.  Westlaw combines countless features, including access to primary law, like judicial opinions, statutes, and regulations; editorial content, like Headnotes and West's Key Number System; secondary sources, like law review articles and treatises; and Litigation Analytics and docket data.  D.I. 520 at 2–3 (describing features).  One important component of Westlaw is its collection of primary law, what ROSS has called in this litigation a "public law database."  ROSS and Thomson Reuters agree that Westlaw's public law database is "comprehensive," and that customers trust that Westlaw's "collection of public law is complete and reliable."  D.I. 225 ¶¶ 39, 44; *see also* Ex. 6, Dahn (TR SVP and Head of Westlaw Product Management) Dep. 38:15–39:15.  Thomson Reuters built its public law database from scratch.  *See* Ex. 90, TRCC-00195791 at 800; Ex. 32, Martin (ROSS Expert) Rpt. ¶ 20 (identifying West Publishing Company reporters launched in the late 1880s).

Thomson Reuters continues to invest significant resources in developing its collection of primary law, including both published and unpublished opinions.  Tom Leighton, Thomson Reuters' Vice President of Government Relations & Content Acquisition, ███████████████████ ████████████████████████████████████████████ Ex. 14, Leighton Dep. I 12:7–25; Ex. 15, Leighton Dep. II 86:14–87:12.  ████████████████████████████ ████████████████████████████████████████████ Ex. 14, Leighton Dep. I

---

[1]     Thomson Reuters is entitled to judgment on each of ROSS's antitrust counterclaims: Count VI—Sherman Act § 2, Count VII—Sherman Act § 1, and Count VIII—California Unfair Competition Law.  *See* D.I. 520 at 10 n.5.

13:8–18, 14:5–15, 16:14–17:2, 31:12–33:6. ███████████████████████████

█████████████████████████████████████ Ex. 15, Leighton Dep. II

21:9–18, 44:9–20. ██████████████████████████████████ Ex. 14, Leighton

Dep. I Tr. 32:24–33:22. ██████████████████████████████████████

█████████████████████████████████ Ex. 15, Leighton Dep. II

177:15–22.

████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████████████ *Id.* at

57:16–59:2.  Thomson Reuters ████████████████████████████████

██████████████████████ *Id.* ██████████████████████████████

███████████████████████████████████████████████████

*Id.* ██████████████████████████████████████████████

████████████████████████████████████████ *Id.*

Obtaining decisions and deciding which to include on Westlaw are only the first steps of

many that Thomson Reuters undertakes in building its public law database. ██████████

██████████████████████████ Ex. 16, Lindberg (TR Sr. Director,

Westlaw Product Management) Dep. II 189:21–191:1. ██████████████████████

█████████ *Id.* ███████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████ *Id.*; *see also id.* at 191:14–17, 192:16–193:9. █████████

█████████████████████████████████████████████████

4

██████████████████████████████ *Id.* at 191:6–191:25. ███████████████████

████████████████████████████████████████████████████ *Id.* at

189:21–191:1.

By the end, there is no ████████████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████████ Ex. 6, Dahn Dep. 39:10–15 ████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████. ███████████████████████

██████████████████████████████ Ex. 90, TRCC-00195791 at 800 ███████

████████████████████████; Ex. 32, Martin Rpt. ¶ 20.

**B.     Thomson Reuters' Legal Search Technology**

Westlaw has always combined primary law (and other content) with search functionality.

██████████████████████████████████████████████████████████

███████████████████████████ Ex. 16, Lindberg Dep. II 31:21–32:3. ███

██████████████████████████████████████████████████████████

████████████████████ Ex. 6, Dahn Dep. 55:23–56:2.  In 1992, Thomson Reuters

introduced natural language searching to Westlaw, ██████████████████████

████████████ Ex. 16, Lindberg Dep. II 38:7–19. ████████████████████

██████████████████████████████████████████████████████████

███████████████████ Ex. 6, Dahn Dep. 22:1–9; Ex. 90, TRCC-00195791 at 809.

██████████████████████████████████████████████████████████

██████████████████████████████. Ex. 16, Lindberg Dep. II 41:14–19.

Then, in 2018, Thomson Reuters launched Westlaw Edge. ██████████████████

██████████████████████████████████████████████████████████

5

██████████████████████████████ Ex. 99, TRCC-01803619. ████████████

██████████████████████████████████████████████████████ Ex. 16,

Lindberg Dep. II 93:7–16, █████████████████████████████ *id.* at

25:21–26:11, and ████████████████████████████████████ *id.*

at 57:18–58:3; *see also id.* 62:8–13. █████████████████████████

████████████████████████████████████████████████

███████████████ *Id.* at 25:8–14. ██████████████████████████

████ Ex. 94, TRCC-00737044 at 072.

There can be no debate about Westlaw Edge's innovative use of artificial intelligence.

████████████████████████████████████████████████████████

██████████████████████████ Ex. 98, TRCC-01740102 at 104.   Mr. Ramsey

praised Quick Check, stating that Westlaw Edge's "artificial intelligence was able to understand

that that case had the concepts that we were looking for but not the language that you necessarily

would expect."  Ex. 37, Gabe Ramsey Quick Check Testimonial.  He added that "Westlaw Edge

and Quick Check are going to make [firms] more efficient in running their business" and are "going

to enable [firms] to do a better job."  *Id.*; *see also* Ex. 97, TRCC-01739548 at 549.

**C.      Westlaw's Integration of Legal Search and Primary Law**

Thomson Reuters has integrated its legal search tools and public law database to make a

more efficient legal research platform.  Erik Lindberg, Thomson Reuters' Senior Director of

Westlaw Product Management, explained that █████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████ Ex. 16, Lindberg Dep. II 196:15–197:21. ████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████   *Id.* at 204:5–205:2.   ███████████████████

████████████████████████████████████████████████████████████████████

███████████████   *Id.* at 208:23–209:24.  Westlaw thus integrates primary law and search technology into its platform for efficient legal research.

### D.   Competition in the Market for Legal Research Platforms

Though Westlaw has long been regarded as an industry-leading legal research platform, it faces significant competition.  ████████████████████████████████████████

██████████████████████████████████████████   Ex. 69, ROSS-009768253 at 271; Ex. 55, ROSS-003401777.  Free options exist, too.  A 2022 ABA study reported that 56 percent of respondents "regularly" use free legal research products, including government websites, Google Scholar, Cornell's Legal Information Institute, and FindLaw, as well as free services that Casetext and Fastcase provide.  Ex. 89, TRCC-00014349 at 368, 380.

The foundation of ROSS's tying claims is that Thomson Reuters has "significant and durable market and monopoly power in the market for public law database products."  D.I. 225 ¶ 96.  But actual and potential competitors can, and do, create their own public law databases for use in their legal research platforms—just like Thomson Reuters.  Ex. 69, ROSS-009768253 at 271.  ██████████████████████████████████████████████

████████████████████████████   Ex. 49, ROSS-003332311.  Lexis, Casetext, Bloomberg, Wolters Kluwer, and Fastcase all offer legal research platforms and thus have collections of primary law.

███████████████████████████████████████████████████████████████████████

██████████████████████   Ex. 35, Syverson (TR Expert) Rpt. at 55 n.180; *see also* Ex. 95, TRCC-01727279 █████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

████████████████████ Ex. 65, ROSS-009677601.

████████████████████████████████████████████████████

████████████████████████████ *Id.*  Indeed, ROSS itself pled that Fastcase and

another company called Casemaker had their own public law databases.  D.I. 225 ¶ 28.

Not even those in the industry agree with ROSS's theory that Westlaw somehow controls

the public law.  ROSS asked Fastcase CEO Ed Walters what he thought of ROSS's antitrust

counterclaims.  Ex. 27, Walters Dep. 83:1–84:23.  ████████████████████

████████████████████████████████ *Id.* ████████████████████

████████████████████████████████ *Id.* ████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████ *Id.* ████████████████████████████████████

████████████████████████████ *Id.* ████████████████████

████████████████████████████████████████████████████

████████████████████████████ Ex. 9, Hadfield Dep. 248:5–17.

ROSS illustrates the ability of startups to obtain public law databases to create legal

research platforms.  ████████████████████████████████████

████████ Ex. 59, ROSS-003504697, ████████████████████

████████████████████████████ Ex. 81, ROSS-023101050.  ████████

████████████████████████████████ Ex. 26, van der Heijden (ROSS

VP of Product and Legal) Dep. II 115:20–23.  ████████████████████

██████████████████████████████████████ ROSS-023111280 at 282.  But customers were not satisfied.  ████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████ Ex. 67, ROSS-009720947 at 955 (emphasis added). ██████████

█████████████████████████████████████████████████████████

███████ Ex. 56, ROSS-003426765.

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

██████████████████████████████████████ Ex. 64, ROSS-009584733 (emphasis added).  ROSS similarly told customers that its platform included "***comprehensive coverage of United States law***," including state and federal published and unpublished caselaw, as well as statutes and regulations from all 50 states and the federal government.  Ex. 43, van der Heijden Dep. Ex. 12 (emphasis added); *see also* Ex. 26, van der Heijden Dep. II 141:5–8 ██████

█████████████████████████████████████████████████████████

Ex. 8, D'Angelo (ROSS Head of Growth) Dep. 20:20–24, 21:13–16 ███████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

███████████████████████████████.

### E.     The Copyright Litigation and ROSS's Tying Claims

In May 2020, Thomson Reuters sued ROSS for copyright infringement and tortious interference with contract.  D.I. 1.  Eight months later, ROSS filed antitrust counterclaims.  D.I. 24.  Though ROSS initially alleged three theories of antitrust liability, only ROSS's tying claims survived Thomson Reuters' motion to dismiss.  D.I. 170.

ROSS's tying claims deconstruct Westlaw's product into two products, a public law database and legal search tools.  ROSS alleges that Thomson Reuters has "significant and durable market and monopoly power in the market for public law databases."  D.I. 225 ¶ 96.  Thomson Reuters has supposedly harmed consumers by forcing them to license Westlaw's legal search tools to access its collection of primary law.  *Id.* at ¶¶ 104–05.  ROSS posits that legal researchers would prefer to license a legal search tool separately from a public law database and thus that Westlaw selling its product as an integrated product is anti-competitive.  *Id.* at ¶¶ 105, 108.

In support of its tying claims, ROSS retained Dr. James Ratliff  Ex. 33, Ratliff Rpt. ¶ 10.  In three conclusory paragraphs, Dr. Ratliff states that *Id.* at ¶¶ 24–26.  Elsewhere, Dr. Ratliff concludes *Id.* at ¶¶ 148–67.  *Id.* at ¶¶ 27–32.

### LEGAL STANDARD

On a motion for summary judgment, if "the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case, and on which it will bear the burden of proof at trial, then summary judgment is appropriate."  *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 204 (3d Cir. 2022) (citation and alterations omitted).  When "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."  *Matsushita Elec. Indust. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  This standard "applies with equal force in antitrust cases," and the nonmovant "must

do more than simply show that there is some metaphysical doubt as to the material facts." *Alvord-Polk, Inc. v. F. Schumacher & Co.*, 37 F.3d 996, 1001 (3d Cir. 1994) (citations omitted).

## ARGUMENT

### I.     Thomson Reuters Is Entitled to Judgment on ROSS's Per Se Tying Claim.

The antitrust concern with tying arrangements is the defendant's leverage of market power in one market (the tying product market) in another (the tied product market). *Town Sound & Custom Tops, Inc. v. Chrysler Motors Corp.*, 959 F.2d 468, 476 (3d Cir. 1992). Courts have thus limited any per se tying claim to where the defendant "possesses market power in the tying product market." *Id.* at 477. Otherwise, there can be no risk of leveraging. This test "is not ... like other, truly per se rules in antitrust law" but rather requires an "inquiry into tying product market structure," "which is frequently costly and time-consuming." *Id.* To "win summary judgment" on a per se tying claim, then, "a defendant need only show that the *plaintiff* has *failed* to make any showing that the defendant has power in an economically and legally relevant [tying] product market." *Id.* at 479 n.12. ROSS cannot define a relevant tying product market, much less establish that Thomson Reuters has market power in an "economically and legally relevant" market. *Id.*

### A.     ROSS Has Failed to Define a Relevant Tying Product Market.

Before a plaintiff can prove a defendant "exercises power in the tying market, that market must be properly defined." *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 513 (3d Cir. 1998). The relevant product market is "determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it," including consideration of "price, use, and qualities." *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436–37 (3d Cir. 1997) (citations omitted). If a plaintiff either fails to define the tying product market "with reference to the rule of reasonable interchangeability and cross-elasticity of demand" or defines a tying product market that "clearly does not encompass all interchangeable

11

substitute products," the plaintiff's per se tying claim fails.  *Id.* at 436; *see also U.S. Horticultural Supply v. Scotts Co.*, 367 F. App'x 305, 310–11 (3d Cir. 2010) (affirming summary judgment where plaintiff's market-definition "evidence does not make 'reference to the rule of reasonable interchangeability and cross-elasticity of demand' and is, therefore, legally insufficient").



ROSS relies exclusively on Dr. James Ratliff ███████████████████████████████████ ████████ Ex. 33, Ratliff Rpt. ¶ 10.[2]  He states that there is a ████████████████████ ████████████████████████████ *Id.* at ¶ 24.  But labeling a ████████████ does not make it so. ████████████████████████████████████████████ *Id.* at ¶¶ 24– 26. ███████████████████████████████████████████

███████████████████████████████████████████████████████ That's not analysis, much less an analysis of reasonably interchangeable products, actual or potential competitors, or the cross-elasticity of demand, as the law requires.  Dr. Ratliff does not define or analyze:

- **Participants.**  It is undisputed that the legal-research industry has many competitors, including Lexis, Casetext, Bloomberg, Wolters Kluwer, Fastcase, Google, and Harvard.[3]  But Dr. Ratliff ██████████████████████████████████████████████  *See* Ex. 33, Ratliff Rpt. ¶¶ 24–26.

- **Interchangeability.**   Dr. Ratliff also did not analyze whether Westlaw's database is interchangeable with other databases.  He did not ████████████████████████████████████ ██████████████████████[4]  Nor did he ████████████████████████████████████████

---

[2]   ROSS's other experts offer no opinion on market definition.  Ex. 9, Hadfield Dep. 28:18–20 ██████████████████████████████████████████████████████████████ Ex. 5, Cox ███████████████████████; Ex. 32, Martin Rpt. ¶¶ 15–17 (summary of opinions).

[3]   Ex. 69, ROSS-009768253 at 271; Ex. 55, ROSS-003401777; Ex. 31, Hadfield Rpt. ¶ 62 & nn.73–76 (Google and Harvard).

[4]   Ex. 23, Ratliff Dep. 52:13–20 ████████████████████████████████████████████████ ██████████████████████████████████████ *id.* at 55:13–19 ████████████ █████████████████████████████████████████████████████████████████

████████████████████████████████████████████ [5] If anything, Dr. Ratliff's limited analysis shows that ████████████████████████████████████████████████ Ex. 33, Ratliff Rpt. ¶ 150.[6]

- **Cross-Elasticity of Demand.** Dr. Ratliff did not analyze other public law database's prices or evaluate cross-elasticity of demand.[7]

Dr. Ratliff's failure to do any of these analyses leaves ROSS bereft of facts to meet its summary judgment burden. *Premier Comp Sols. LLC v. UPMC*, 377 F. Supp. 3d 506, 527 (W.D. Pa. 2019) (stating that "[c]onstruction of the relevant market ... must be based on expert testimony" and rejecting an expert's conclusory three-paragraph market-definition analysis).

Moreover, ROSS's apparent position that Westlaw's public law database is a market of one fails on the undisputed record here.  In support of its gerrymandered Westlaw-only product market theory, ROSS contends ██████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████  Ex. 31, Hadfield Rpt. ¶¶ 21–29.  But *none* of these features, even if true, mean that the Westlaw public law database has *no* reasonable substitutes whatsoever.  And neither Dr. Ratliff nor any other ROSS expert did any analysis to find out.[8]

---

[5]   Ex. 23, Ratliff Dep. 18:8–13 ████████████████████████████████████████████

[6]   As discussed *infra* at 7, even this ████████████████████████████████████ ████████  Ex. 35, Syverson Rpt. ¶ 97 n.162; Ex. 33, Ratliff Rpt. ¶ 170.

[7]   *See* Ex. 23, Ratliff Dep. 94:23–95:2 ████████████████████████████████████

[8]   *See supra* note 4 (no analysis of Westlaw's relative comprehensiveness); Ex. 9, Hadfield Dep. 122:6–20 ████████████████████████████████████████████████████ ████████  *id.* at 258:14–20 ██████████████████████████████████████ ████████████████████████████████████████████████████

At most, ROSS has identified some *features* that it says, without analysis or support, make Westlaw unique in the eyes of consumers.  But a single product does not constitute a market just because "plaintiffs have articulated certain factors that distinguish a certain product from similar products."  *In re Am. Express Anti-Steering Rules Antitrust Litig.*, 361 F. Supp. 3d 324, 344 (E.D.N.Y. 2019) (citing *Queen City Pizza*, 124 F.3d 430).  As then-Judge Sotomayor explained, a "consumer might choose to purchase a certain product because the manufacturer has spent time and energy differentiating his or her creation from the panoply of products in the market, but at base, Pepsi is one of many sodas, and NBC is just another television network."  *Glob. Disc. Travel Servs., LLC v. Trans World Airlines, Inc.*, 960 F. Supp. 701, 705 (S.D.N.Y. 1997).  This is thus not the "rare circumstance" in which a "market of one" can apply.  *Town Sound*, 959 F.2d at 480; *contrast Queen City Pizza*, 124 F.3d at 439 (market of one where interchangeability and elasticity analyses confirmed product at issue "not interchangeable with other products").

At bottom, Dr. Ratliff has simply not done the work required to define the relevant tying product market.  And without a properly defined tying product market, ROSS cannot establish that Thomson Reuters has market power in the tying product market.  For this reason alone, Thomson Reuters is entitled to judgment as a matter of law on ROSS's per se tying claim.  *Town Sound*, 959 F.2d at 481; *U.S. Horticultural*, 367 F. App'x at 310–11; *Somers v. QVC, Inc.*, 2021 WL 4318045, at *4 (E.D. Pa. Sept. 23, 2021) (granting summary judgment on antitrust claims because "nowhere in the record have Plaintiffs clearly proposed a product market that contains all products that consumers consider reasonably interchangeable, nor have they presented any evidence or analysis on cross-elasticity of demand"); *Premier Comp*, 377 F. Supp. at 506 (granting summary judgment where plaintiff provided no "quantitative analysis" to support market definition and

failed to identify any evidence that constitutes "'practical indicia' that defines the boundaries of the relevant market, or the 'business realities' of the market").[9]

### B.   ROSS Has Failed to Prove That Thomson Reuters Has Market Power in the Market for Public Law Databases.

In addition to failing to proffer evidence of a public-law-database market, ROSS has no evidence that Thomson Reuters has **market power** in that market.  Dr. Ratliff's analysis, and thus ROSS's evidence, cannot create a genuine issue of material fact, for three reasons.

***First***, ROSS has adduced no evidence—expert or otherwise—that Thomson Reuters has market power in the relevant *public-law-database* market.  Dr. Ratliff did not ▮▮▮▮▮▮▮▮▮▮



▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See supra* note 5.  He did not ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.*  He did not ▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See supra* note 4;

Ex. 23, Ratliff Dep. 55:2–19.  Nor did he ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Put simply, Dr. Ratliff did no work to assess whether Thomson Reuters has market power in the only truly relevant market—the market for public law databases.

***Second***, what meager analysis Dr. Ratliff did "perform"—reciting record documents— relates to Westlaw's *market share* of the *legal-research-platform market*.  But that is irrelevant. To start, "market share alone is insufficient to establish market power."  *Winn-Dixie Stores, Inc. v. E. Mushroom Mktg. Coop., Inc.*, 2023 WL 5521221, at *9 (3d Cir. Aug. 28, 2023) (citation

---

[9]    *See also It's My Party, Inc. v. Live Nation, Inc.*, 811 F.3d 676, 680 (4th Cir. 2016) (affirming summary judgment on tying claims because the plaintiff had "simply not carried its burden of showing" why it excluded other concert venues from its proposed market definition); *Queen City Pizza*, 124 F.3d at 436–37 (affirming motion to dismiss per se tying claim where plaintiff failed to properly define the relevant tying product market).

omitted).  Even a 90 percent market share is not, by itself, enough to prove market power.  *Id.*  Dr. Ratliff did not ███████████████████████████████████ bearing on the market-power analysis and thus ROSS has no evidence that Thomson Reuters has market power in any market, let alone the tied-product market.  *Id.*

Further, the entire premise of ROSS's claim is that the integrated product market is different from that of the alleged public-law-database market.  Courts reject attempts like ROSS's to use market share in one market to prove market power in another.  *Maris Distrib. Co. v. Anheuser-Busch, Inc.*, 302 F.3d 1207, 1217 (11th Cir. 2002) (holding that plaintiff had "not identified a valid economic reason" to use Anheuser-Busch's beer-market share to infer market power in the beer-distribution market); *New Mexico Oncology v. Presbyterian Healthcare Servs.*, 418 F. Supp. 3d 826, 856 (D.N.M. 2019) ("declin[ing] [the] invitation" to evaluate market power based on "shares of an entirely different market").  For good reason.  As Dr. Chad Syverson, Thomson Reuters' expert economist from the University of Chicago, explained, ██████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ██████ Ex. 35, Syverson Rpt. ¶ 108.  This is ████████████████████████████ ███████████████████████████████████████████████████████████ █████████████████████████████████ *Id.*

Westlaw exemplifies this point.  Westlaw includes far more than primary law.  It includes Editorial Content; it includes secondary sources; it includes search technology; it includes artificial intelligence.  Customers may choose to license Westlaw because of any one of these features, or all in combination.  Dr. Ratliff recognizes that the integrated Westlaw product has attributes unrelated to the public law data.  He agreed ████████████████████████████████████

16

██████████████████████████████ Ex. 23, Ratliff Dep. 41:20–42:2.  But Dr. Ratliff did not ████

█████████████████████████████████████████████████████████████████ and

conceded that he ████████████████████████████████████████████████████

████ *Id.* at 120:7–25.  The same is true of Thomson Reuters' Editorial Content.  ROSS's expert

Dr. Hadfield testified that ████████████████████████████████████████████

██████████████████████████████████████████ Ex. 9, Hadfield Dep.

146:17–147:4.  And ROSS's own attorneys recognize that Westlaw's "artificial intelligence"

enables firms to be "more efficient" and "do a better job."  Ex. 37, Gabe Ramsey Quick Check

Testimonial.  These are all factors that contribute to its market share of the integrated product but

say nothing about demand or share in the purported market for public law databases.

In any event, Dr. Ratliff's estimation of Westlaw's share of the legal-research-platform

market concedes that Westlaw lacks market power even in that market.  According to Dr. Ratliff,

██████████████████████████████████████████ Ex. 33, Ratliff Rpt.

¶ 150; *see also id.* at ¶¶ 162–67 █████████████████████████.  But the Third

Circuit has stated that a "***share significantly larger than 55%*** has been required to establish prima

facie market power."  *United States v. Dentsply Int'l, Inc.*, 399 F.3d 181, 187 (3d Cir. 2005).

(emphasis added) That ends the debate.

Additionally,  Dr.  Ratliff's ████████████████████████████████████████

████████████████████ Westlaw's revenue share ██████████████████████████

████████████████████████████ Ex. 35, Syverson Rpt. ¶ 97 n.162.  They also do not

████████████████████████████████████████████████████████████████████

████████ Ex. 33, Ratliff Rpt. ¶ 170 (showing ██████████████████████████

██████████████████).  Nor do they measure Westlaw's share of actual users, ████████████

██████████████████████████████████████████████████████████████████

████████████████████████ *Id*. at 40 (Part V.D.2 ████████████████████████

██████████████████████); *see also* Ex. 35, Syverson Rpt. ¶ 97 n.162 (explaining that ████████████

███████████████████████.

 ***Finally***, the actual undisputed record evidence reveals that Thomson Reuters lacks market power in the public-law-database market.  Lexis, Casetext, Bloomberg, Wolters Kluwer, and Fastcase all have significant public law databases and offer competing legal research platforms, to say nothing of free services like Google and Harvard. █████████████████████████████ ███████████████████████████████████████████████████████████████████

Ex. 95, TRCC-01727279; Ex. 35, Syverson Rpt. at 55 n.180.  (emphasis added) ROSS's experts did not ███████████████████████████████████████████████████████████████████████ ███████████████████████████ Ex. 23, Ratliff Dep. 84:13–23; Ex. 9, Hadfield Dep. 56:5–9. █████████ ████████████████████████████████████████████████████ Ex. 43, van der Heijden Dep. Ex. 12, and Dr. Ratliff would not say that ROSS ████████████████████████████████ ████████████████████████████████████ Ex. 23, Ratliff Dep. 57:7–17.  Casetext, a startup AI-based legal research platform, attracted over 10,000 law firms with ████████████ ████████████████████████████████████████████████████████████ Ex. 40, Ratliff Dep. Ex. 10; Ex. 9, Hadfield Dep. 173:2–6, ████████████████████████████████████████████████ ███████████ Ex. 23, Ratliff Dep. 132:25–133:18; Ex. 9, Hadfield Dep. 180:19–181:12.

 In short, ROSS has failed to prove market power in the public-law-database market, and Thomson Reuters is entitled to judgment on ROSS's per se tying claim.  *Town Sound*, 959 F.2d at 479 n.12, 481 (granting summary judgment because "the plaintiffs' submissions do not establish any genuine issue of material fact as to Chrysler's economic power in the automobile market").

## II. ROSS Has No Alternative Theory of Anticompetitive Harm and Thus Its Rule of Reason Claim Fails.

ROSS cannot survive summary judgment on any rule-of-reason tying claim, either.  Under the rule of reason, a plaintiff "has the more difficult burden of showing that the arrangement ... unreasonably restrained competition in the tied product market"—*i.e.*, the market for legal search tools.  *Brokerage Concepts*, 140 F.3d at 511.  ROSS lacks any such evidence here.

***First***, before a plaintiff can prove that "there was harm to competition in the tied market, that market must be defined."  *Id.* at 519.  Dr. Ratliff's "analysis" of the relevant legal-search-tool market falls well short of what the law requires.  Dr. Ratliff first asserts that ███████████ █████████████████████████████████████ Ex. 33, Ratliff Rpt. ¶ 27.  The rest of that report section is no more rigorous.  As with his "analysis" of the public-law-database market, ███████ ████████████████████████████████████████████████████████████████████ ███████████████████████████ *See id.* at ¶¶ 27–32.  Without a properly defined tied product market, ROSS cannot prove anticompetitive effects in that market, and Thomson Reuters is entitled to judgment as a matter of law on ROSS's rule-of-reason claim.  *Jefferson Par. Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 29 (1984) (rejecting rule-of-reason tying claim because plaintiff had not proven anticompetitive effects "in a market that has not been defined").

***Second***, ROSS cannot show antitrust harm resulting from something other than alleged power leveraging.  "Without power in the market for the tying product, a tie-in cannot be a vehicle for distorting competition in a second market."  Areeda & Hovenkamp, Antitrust Law ¶ 1728d ("Areeda & Hovenkamp").  Thus, ROSS "must state *some* plausible theory of antitrust harm that does not depend implicitly on power leveraging."  *Town Sound*, 959 F.2d at 485.  But because the whole theory of a tying case (and certainly this tying case) *is* leveraging market power, Areeda

and Hovenkamp explain that "proving an unreasonable tie" *without* evidence of market power in the tying product market is "very difficult if not impossible."  Areeda & Hovenkamp ¶ 1728d.

Here, ROSS does not even try.  Its sole theory is that Thomson Reuters has leveraged its power in the public-law-database market to restrain trade in legal search tools market by forcing customers to license its legal search tools to access its public law database.  D.I. 225 ¶¶ 105, 108; *see also* Ex. 33, Ratliff Rpt. ¶¶ 258–60.  This is nothing more than a paradigmatic tying claim— the supposed use of market power in the market for Product A (the tying product) to force the purchase of Product B (the tied product).  *See Jefferson Parish*, 466 U.S. at 12 (stating that a tie "force[s] the buyer into the purchase of a tied product that the buyer either did not want at all, or might have preferred to purchase elsewhere on different terms.").  ROSS has no alternative, non-leveraging theory of antitrust harm.  But without market power, any "purchaser buying the second product from the defendant does so voluntarily, or at least for reasons other than an unrequited desire for the tying product."  *Town Sound*, 959 F.2d at 485 (quoting Areeda & Hovenkamp ¶ 1728d).  If "forced sales and other anticompetitive effects are occurring," "they cannot be due to [Thomson Reuters'] dominance in the [public-law-database market], but instead to something else."  *Town Sound*, 959 F.2d at 485.  Because ROSS cannot meet its burden of establishing "what else" caused any alleged anticompetitive effects, its rule of reason tying claim fails.

## CONCLUSION

ROSS's per se tying claim depends on defining the relevant tying product market and proving that Thomson Reuters has market power in that market.  ROSS has done neither.  And ROSS cannot turn to the rule of reason to survive summary judgment.  ROSS has failed to define the relevant tied product market or articulate any non-leverage theory of harm in that market.  Thus, Thomson Reuters is entitled to summary judgment on all of ROSS's antitrust counterclaims.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

_____
Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com

*Attorneys for Plaintiffs and Counterdefendants*
*Thomson Reuters Enterprise Center GmbH and West*
*Publishing Corporation*

OF COUNSEL:

Daniel E. Laytin, P.C.
Christa C. Cottrell, P.C.
Cameron Ginder
Max A. Samels
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL  60654
(312) 862-2000

August 31, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on August 31, 2023, upon the following in the manner indicated:

David E. Moore, Esquire                *VIA ELECTRONIC MAIL*
Bindu Palapura, Esquire
Andrew L. Brown, Esquire
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE  19801
*Attorneys for Defendant and Counterclaimant*

Mark A. Klapow, Esquire             *VIA ELECTRONIC MAIL*
Lisa Kimmel, Esquire
Crinesha B. Berry, Esquire
Matthew J. McBurney, Esquire
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, DC  20004
*Attorneys for Defendant and Counterclaimant*

Gabriel M. Ramsey, Esquire           *VIA ELECTRONIC MAIL*
Jacob Canter, Esquire
Warrington Parker, Esquire
Margaux Poueymirou, Esquire
Anna Z. Saber, Esquire
Beatrice B. Nguyen, Esquire
CROWELL & MORING LLP
3 Embarcadero Center, 26th Floor
San Francisco, CA  94111
*Attorneys for Defendant and Counterclaimant*

Shira Liu, Esquire
CROWELL & MORING LLP
3 Park Plaza, 20th Floor
Irvine, CA  92614
*Attorneys for Defendant and Counterclaimant*

*VIA ELECTRONIC MAIL*

*/s/ Michael J. Flynn*

_____

Michael J. Flynn (#5333)

2