IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION, | ) ) ) ) | |
| Plaintiffs and Counterdefendants, | ) ) ) | |
| v. | ) ) | C.A. No. 20-613 (SB) |
| ROSS INTELLIGENCE INC., | ) ) ) | REDACTED – PUBLIC VERSION |
| Defendant and Counterclaimant. | ) ) ) | |

**THOMSON REUTERS' OPENING BRIEF IN SUPPORT OF ITS MOTION
FOR SUMMARY JUDGMENT ON ROSS'S ANTITRUST COUNTERCLAIMS
(NO. 3) – STATUTE OF LIMITATIONS**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com

OF COUNSEL:

Daniel E. Laytin, P.C.
Christa C. Cottrell, P.C.
Cameron Ginder
Max A. Samels
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL  60654
(312) 862-2000

*Attorneys for Plaintiffs and Counterdefendants
Thomson Reuters Enterprise Center GmbH and West
Publishing Corporation*

Original filing date: August 31, 2023
Redacted filing date: September 14, 2023

<u>TABLE OF CONTENTS</u>

<u>Page</u>

SUMMARY OF ARGUMENT ................................................................................................ 1

STATEMENT OF FACTS .................................................................................................... 2

      A.    Thomson Reuters Has Openly Sold Westlaw Only as an Integrated Legal
           Research Product for Decades ................................................................................ 2

      B.    ROSS Has Known That Thomson Reuters Sold Westlaw Only as an
           Integrated Product Since ROSS's Inception ........................................................ 4

LEGAL STANDARD .......................................................................................................... 6

ARGUMENT ...................................................................................................................... 6

I.     ROSS's Claims Accrued More Than Four Years Before it Filed Its Tying Claims
       and Are Therefore Time Barred .................................................................................. 6

II.    ROSS Cannot Toll the Applicable Statute of Limitations. ........................................ 10

      A.    ROSS Cannot Invoke Fraudulent Concealment Because Westlaw's
           Structure Was Common Knowledge Prior to 2017, Including to ROSS. ............. 10

      B.    ROSS Cannot Invoke the Continuing Violation Doctrine to Save Its
           Claims. ................................................................................................................ 12

CONCLUSION ................................................................................................................... 14

<u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*In re Aspartame Antitrust Litig.*,
    416 F. App'x 208 (3d Cir. 2011) ................................................................... *passim*

*Berkey Photo, Inc. v. Eastman Kodak Co.*,
    603 F.2d 263 (2d Cir. 1979).................................................................12, 13

*Brunswick Corp. v. Riegel Textile Corp.*,
    752 F.2d 261 (7th Cir. 1984) .................................................................13

*Contrast W. Penn Allegheny Health Sys., Inc. v. UPMC*,
    627 F.3d 85 (3d Cir. 2010)....................................................................13

*Cranmer v. Harleysville Ins. Co.*,
    719 F. App'x 95 (3d Cir. 2017) .............................................................6

*In re Fasteners Antitrust Litig.*,
    2011 WL 3563989 (E.D. Pa. Aug. 12, 2011) .........................................10

*Giordano v. Saks Inc.*,
    2023 WL 1451534 (E.D.N.Y. Feb. 1, 2023).................................1, 12, 13

*Humana Inc. v. Celgene Corp.*,
    2022 WL 1237883 (D.N.J. Apr. 27, 2022) ..............................................12

*Juday v. Merck & Co Inc.*,
    730 F. App'x 107 (3d Cir. 2018)............................................................11

*Klehr v. A.O. Smith Corp.*,
    521 U.S. 179 (1997)..............................................................................12

*Lifewatch Servs. Inc. v. Highmark Inc.*,
    902 F.3d 323 (3d Cir. 2018)....................................................................7

*In re Linerboard Antitrust Litig.*,
    305 F.3d 145 (3d Cir. 2002)...................................................................10

*In re Lower Lake Erie Iron Ore Antitrust Litig.*,
    998 F.2d 1144 (3d Cir. 1993).................................................................11

*Molecular Diagnostics Lab'ys v. Hoffmann-La Roche Inc.*,
    402 F. Supp. 2d 276 (D.D.C. 2005) .......................................................12

*N. Carolina Elec. Membership Corp. v. Carolina Power & Light Co.*,
    780 F. Supp. 322 (M.D.N.C. 1991) .............................................................1, 12, 13

*Oliver v. SD-3C LLC*,
    751 F.3d 1081 (9th Cir. 2014) ...................................................................................7

*PBTM LLC v. Football Nw., LLC*,
    511 F. Supp. 3d 1158 (W.D. Wash. 2021).................................................................8

*Penn. Dental Ass'n v. Med. Serv. Ass'n of Penn.*,
    815 F.2d 270 (3d Cir. 1987)......................................................................................7

*Perrigo Co. v. AbbVie Inc.*,
    2022 WL 2870152 (3d Cir. July 21, 2022)........................................................1, 7, 8

*Rice v. Electrolux Home Prod., Inc.*,
    2020 WL 247284 (M.D. Pa. Jan. 15, 2020).............................................................7

*Vasquez v. Ind. Univ. Health, Inc.*,
    40 F.4th 582 (7th Cir. 2022) ....................................................................................7

*Video Pipeline, Inc. v. Buena Vista Home Ent., Inc.*,
    342 F.3d 191 (3d Cir. 2003).....................................................................................5

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
    401 U.S. 321 (1971).............................................................................................7, 12

**Statutes**

15 U.S.C. § 15...............................................................................................1, 6, 7, 9

15 U.S.C. § 26 ...........................................................................................................7

Cal. Bus. & Prof. Code § 17208 .........................................................................1, 5

## SUMMARY OF ARGUMENT

The basis of ROSS's surviving claims against Thomson Reuters are that it sells Westlaw exclusively as an integrated product, combining Westlaw's public law database and its search tools. ROSS brought these claims in January 2021 and each is subject to a strict four-year statute of limitations. 15 U.S.C. § 15b; Cal. Bus. & Prof. Code § 17208. Those statutes of limitations have long run. It was widely known, including by ROSS, before January 2017 that Thomson Reuters sold Westlaw only as an integrated legal research platform. Indeed, in 2016, ROSS had hundreds of thousands of dollars of sales to customers who, under ROSS's theory of harm, were being denied the opportunity to mix-and-match ROSS's search tools with Westlaw's public law database. The undisputed evidence thus establishes that ROSS "fe[lt] the adverse impact" of the supposed anticompetitive conduct more than four years before it brought its antitrust claims. *Perrigo Co. v. AbbVie Inc.*, 2022 WL 2870152, at *4 (3d Cir. July 21, 2022) (citation omitted).

Moreover, ROSS has no factual basis to toll the statute of limitations. ROSS cannot argue that Thomson Reuters "fraudulently concealed" the integrated nature of its highly popular and widely advertised legal research platform. Nor can ROSS invoke the "continuing violation" doctrine. A "competitor plaintiff" like ROSS "has four years from the moment of the defendant's initial anticompetitive conduct to bring a claim"; ROSS cannot indefinitely toll the statute of limitations by pointing to Thomson Reuters' individual sales to customers later in time. *Giordano v. Saks Inc.*, 2023 WL 1451534, at *8 (E.D.N.Y. Feb. 1, 2023).

Accordingly, ROSS's counterclaims in Counts VI, VII, and VIII are untimely and the Court should grant summary judgment in Thomson Reuters' favor. *See In re Aspartame Antitrust Litig.*, 416 F. App'x 208, 211 (3d Cir. 2011); *N. Carolina Elec. Membership Corp. v. Carolina Power & Light Co.*, 780 F. Supp. 322, 331, 334 (M.D.N.C. 1991) (granting summary judgment to defendant

on basis that competitor's cause of action accrued "as soon as the [supposed] exclusion occur[ed]").

## STATEMENT OF FACTS

### A.     Thomson Reuters Has Openly Sold Westlaw Only as an Integrated Legal Research Product for Decades

Thomson Reuters licenses the Westlaw legal research platform to legal research customers. Ex. 16, Lindberg (Sr. Director Westlaw Product Management Team) Dep. II 24:21–24. Since the early 1990s, Westlaw users have been able to use the Westlaw platform to search caselaw using artificial intelligence technology, such as natural language searching. Ex. 19, Olivier (TR U.S. Cases Editorial Manager) Dep. II 45:14–18 (testifying that Westlaw.com was first available "for users to conduct legal research" in the "90s"); Ex. 16, Lindberg Dep. II 38:10–19, 41:3–6 (discussing early natural language features). Today, Thomson Reuters offers three versions of its legal research platform, Westlaw Precision, Westlaw Edge, and Westlaw Classic. Ex. 17, Martens (TR Global Head of Product and Editorial) Dep. II 178:15–179:13. Thomson Reuters has licensed the most basic of these three options, Westlaw Classic, since 2010, when it was known as Westlaw Next. *Id.*

It is undisputed that Thomson Reuters has only ever offered Westlaw as an integrated product including both search capabilities and access to public law and editorial enhancements, as explained at length in Thomson Reuters' summary judgment brief No. 1.[1] *See* D.I. 520. As

---

[1]   Ex. 45, Thomson Reuters' Response to Request for Admission 136 ███████████
████████████████████████████████████████████████████████████████████████████
██████████████████████████████████████; Ex. 6, Dahn (TR SVP and Head of Westlaw
Product Management) Dep. 81:20–82:2 ████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
Dkt. 225 ¶ 26 (ROSS's counterclaim complaint conceding that ████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████. As explained at
length in Thomson Reuters' accompanying Motion for Summary Judgment No. 2 – Separate

ROSS's own expert admitted, legal researchers have ███████████████████████

████████████████████████████████████████████████████████████████████████████

███████████████ Ex. 18, Martin Dep. 111:17–25.[2]  In fact, Thomson Reuters has long restricted

Westlaw users from "display[ing], stor[ing], or transfer[ing] ... any data in our products in bulk or

in any that could be used to replace or substitute for our products or services in whole or in part."

Ex. 87, TR-0002844 (Westlaw "Terms & Conditions" dated "7/1/15").  In the words of another

ROSS expert, Thomson Reuters ████████████████████████████████████████████

██████████████████████████████████████████████████████████ Ex. 29, Cox Rpt.

¶ 56 (emphasis added).

Thomson Reuters proudly advertised the integrated nature of its legal research platform.  It

has sent Westlaw marketing materials to law firms advertising both the depth of its collection of

legal materials and its "tools to help researchers understand the law and find on-point materials

quickly." Ex. 101, TRCC-05496656 (2016 proposal to Dentons); Ex. 104, TRCC-05813211 (2016

proposal to Kelley Drye & Warren LLP).  A 2015 internal Thomson Reuters marketing survey

stated that "Westlaw has incredibly high unaided awareness."  Ex. 91, TRCC-00266212.  In 2011,

after Westlaw Next debuted (the future Westlaw Classic), Thomson Reuters launched a

multimedia marketing campaign featuring print advertising, digital advertising, and promotional

events.  Ex. 103, TRCC-05663507.

---

Products, D.I. 520, no legal researcher has ever requested that Thomson Reuters license the search
and public components of its public law database separately.

[2]  *Id.* ███████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
███████████████████████ emphasis added)).

**B.      ROSS Has Known That Thomson Reuters Sold Westlaw Only as an Integrated Product Since ROSS's Inception**

ROSS was founded in 2014.  Ex. 21, Ovbiagele (ROSS CTO and Co-Founder) Dep. II 17:15–18.  Since its early days, ROSS viewed itself as a ████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████ Ex. 62, ROSS-009500822 at 823 (2015 ROSS Business Plan).  ROSS stated that it ████████████████████████████████████████████████████████████████████ ████████████████████████████████ *Id.* at 824.

ROSS sought to obtain a Westlaw license for itself in September 2015, but Thomson Reuters refused on grounds that ███████████████████████████████████████ Ex. 53, ROSS-003389728.  Instead, ████████████████████████████████████████ ████████████████████████ Ex. 59, ROSS-003504697 ████████████████  That December, ROSS told investors that it was ████████████████████████████████ ████████████████████████████████ Ex. 60, ROSS-003505433.  ROSS had over ████████████████████████████████████████ Ex. 86, ROSS-023170423.  It eventually ████████████████████████████████████████████████████████ ████████████████ *See* D.I. 520 at 5–6 (describing customer complaints).

Like anyone else with even passing knowledge of how legal research has been conducted for several decades, ROSS knew from the get-go that Westlaw was an integrated product combining legal sources and search technology.  ROSS's ██████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████ Ex. 50, ROSS-003334226; Ex. 62, ROSS-009500822 at 823, 834 ████████████████████████████████████ ████████████████████████████████████████████████████████████████



██████████   When ROSS ████████████████████████████

████████████   *See, e.g.*, Ex. 51, ROSS-003343202 ████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████   ROSS has not suggested (and cannot with a straight face suggest) that it learned how Westlaw operated or how Thomson Reuters sold the Westlaw legal research platform to customers in 2017 or later.

ROSS raised its antitrust claims for the first time more than six months into this litigation on January 25, 2021.  D.I. 24 at 42–43.  ROSS abandoned its refusal-to-deal claim, and the Court dismissed ROSS's sham litigation and Delaware law claims, leaving ROSS with only its tying claims under Federal and California law in Counts VI, VII and VIII.[3]  D.I. 170 at 15; *see also* D.I. 225 at 42–44.  ROSS's theory of harm for its tying claims is that ████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████   Ex. 29, Cox Rpt. ¶ 63.  As a result, according to ROSS, ████████████████████████████████

████████████████████████████████████████████████████

---

[3]   In its motion to dismiss order, the Court declined to reach the question of whether ROSS could state a California Unfair Competition Law claim on the basis of "copyright misuse."  D.I. 170 a 15 n.5.  ROSS has made no attempt to prove up a separate "copyright misuse" theory of antitrust liability, making this question irrelevant.  Ex. 29, Cox Rpt. ¶¶ 8–13 ████████

████████.  Furthermore, copyright misuse is a "defense" that a copyright defendant can use to try to "preclude [a copyright's] enforcement during [a] period of misuses," not a basis for liability.  *Video Pipeline, Inc. v. Buena Vista Home Ent., Inc.*, 342 F.3d 191, 204 (3d Cir. 2003) (citation omitted).  And the same four-year statute of limitations would apply to any legal theory.  Cal. Bus. & Prof. Code § 17208.

 *Id.* at ¶ 69. ROSS claims that, throughout the life of the company, ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Ex. 12, Hamilton (ROSS VP of Strategy and Operations) Dep. II 79:6–15 (ROSS executive claiming that ROSS's customers ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (emphasis added)).

## LEGAL STANDARD

A defendant is entitled to summary judgment on an affirmative defense, including a statute of limitations defense, when there is "an absence of a genuinely disputed material fact on each element of its affirmative defense." *Cranmer v. Harleysville Ins. Co.*, 719 F. App'x 95, 98 (3d Cir. 2017); *accord In re Aspartame Antitrust Litig.*, 416 F. App'x 208, 211 (3d Cir. 2011) (affirming grant of summary judgment on antitrust claims on statute of limitations grounds). Courts may apply a statute of limitations to antitrust claims without deciding whether the plaintiff has proven an antitrust injury, but rather by "assuming they suffered one." *In re Aspartame*, 416 F. App'x at 211; Areeda & Hovenkamp, Antitrust Law ¶ 320a ("[T]he best way to analyze the limitation issue is to assume that the antitrust laws have been violated and then consider when the antitrust cause of action has accrued and whether other factors may serve to delay the running of the statute.").

## ARGUMENT

### I.  ROSS's Claims Accrued More Than Four Years Before it Filed Its Tying Claims and Are Therefore Time Barred.

Under 15 U.S.C. § 15b, an antitrust claim "must be 'commenced within four years after the cause of action accrued.'" *In re Aspartame*, 416 F. App'x at 211 (quoting 15 U.S.C. § 15b) (affirming grant of summary judgment on statute of limitations grounds). ROSS filed its antitrust counterclaim on January 25, 2021 and thus its tying claims are barred unless ROSS can establish

that its cause of action accrued *after* January 25, 2017.  *Id.*; D.I. 24 at 42–43.  While § 15b explicitly bars untimely damages actions, courts apply the same four-year limitations period to claims for injunctive relief under the equitable doctrine of laches.[4]  *Oliver v. SD-3C LLC*, 751 F.3d 1081, 1086 (9th Cir. 2014) ("[I]n computing the laches period, [§ 15b's] four-year statute of limitation is used as a guideline." (citation omitted)); *Vasquez v. Ind. Univ. Health, Inc.*, 40 F.4th 582, 588 (7th Cir. 2022) (explaining in antitrust case that "we treat the laches defense at issue here as rising or falling with the statute of limitations defense"); *Penn. Dental Ass'n v. Med. Serv. Ass'n of Penn.*, 815 F.2d 270, 277–78 (3d Cir. 1987) (assuming that § 15b's four-year limitations period "would also apply to Blue Shield's claim for injunctive relief").  ROSS's derivative Count VIII claim under California law has an analogous four-year statute of limitations.  *See Rice v. Electrolux Home Prod., Inc.*, 2020 WL 247284, at *11 (M.D. Pa. Jan. 15, 2020) (explaining that California's "Unfair Competition Law has a four-year statute of limitations that accrues when each of the elements of the plaintiff's cause of action have been satisfied."  (citing Cal. Bus. & Prof. Code § 17208)).

As the Third Circuit has explained, "in antitrust cases, a cause of action generally 'accrues and the statute [of limitations] begins to run when a defendant commits an act that injures a plaintiff's business.'"  *Perrigo Co. v. AbbVie Inc.*, 2022 WL 2870152, at *4 (3d Cir. July 21, 2022) (quoting *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338 (1971)).  In *Perrigo*, the Third Circuit held that the plaintiff accrued a cause of action when supposedly sham litigation was filed because that lawsuit "necessarily delayed FDA approval" of the defendant's drug and

---

[4]  While ROSS styles its lawsuit as being brought under the "Sherman Act," D.I. 225 ¶ 162, in fact it is "Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, which authorize private plaintiffs" like ROSS "to sue for Sherman Act violations."  *Lifewatch Servs. Inc. v. Highmark Inc.*, 902 F.3d 323, 331 (3d Cir. 2018).

therefore the defendant "fe[lt] the adverse impact" of the litigation when it was filed. *Id.*; *accord PBTM LLC v. Football Nw., LLC*, 511 F. Supp. 3d 1158, 1182 (W.D. Wash. 2021) (holding that tying lawsuit "challeng[ing] the act of forcing [the plaintiff] to accept a condition in a contract" accrued "when [the] parties executed the" contract).

ROSS cannot possibly dispute that it would have "felt the [supposed] impact" of Thomson Reuters' policies before 2017 because, by then, Thomson Reuters was selling its integrated Westlaw product and ROSS was selling its legal research platform to customers. *Perrigo*, 2022 WL 2870152, at *4. In fact, the record is clear that *every part* of ROSS's theory of harm was in place prior to 2017. Namely, the undisputed evidence shows that:

- *Westlaw operated solely as an integrated legal research platform prior to 2017*: Thomson Reuters only ever offered a legal research platform. *See supra* at 2–3. The Westlaw Classic platform that is still licensed today hit the market in 2010. Ex. 17, Martens Dep. II 178:15–179:13. ROSS has never claimed (let alone proven) that Thomson Reuters' supposedly unlawful policy of offering an integrated product originated or even changed in 2017 or later.

- *ROSS sold its legal research platform to customers prior to 2017*: In 2016 ▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Ex. 86, ROSS-023170423.

- *ROSS was supposedly denied the opportunity to sell a non-integrated legal search tool prior to 2017*: Because Thomson Reuters offered its integrated product and ROSS was selling to customers, ROSS supposedly lost the opportunity to sell a legal search tool that could be used on Westlaw's collection of law. In fact, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓ Ex. 12, Hamilton Dep. II 79:6–15 (emphasis added).

Notably, ROSS's favorite example of a customer supposedly impacted by Westlaw's conduct ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Ex. 77, ROSS-023018627. ROSS's witnesses and its experts have repeatedly pointed to a ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Ex. 44, ROSS Interrogatory Resp. at 8 (citing Ex. 77, ROSS-023018627); Ex. 26, van der Heijden (ROSS Head of Product and Legal) Dep II 16:8–16 (testifying that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓



; Ex. 29, Cox Rpt. ¶ 63 (citing

To be sure, this email does not demonstrate any type of separate demand.  It was merely

Ex. 77, ROSS-023018627;

D.I. 520 at 14–15.  But it is the example ROSS has chosen to show how it was harmed

15 U.S.C. § 15b.

Ex. 78, ROSS-023018665.

Thus, "[t]here is no question [ ] that [ROSS's] injury—assuming [it] suffered one—occurred well outside the four years allotted by statute," *i.e.*, prior to 2017.  *In re Aspartame*, 416 F. App'x at 211 (affirming grant of summary judgment on statute of limitations grounds).  ROSS was well aware of how Thomson Reuters offered its product and that it did not sell a standalone public law database; indeed, no legal research provider sold a standalone database to consumers.  Ex. 50, ROSS-003334226 at 232 (ROSS competitive analysis describing Westlaw's integrated platform); *see* D.I. 520 at 13–14.  That Westlaw had a comprehensive database that was highly sought by ROSS's current customers (and the customers it could not land) was also known.  Ex. 77, ROSS-023018627          .  Simply put, there are no hidden or secret or unknown facts at play here:  the supposed Thomson Reuters' conduct supporting ROSS's tying claims was well-known prior to when ROSS started its business and when it started selling to customers.  But ROSS did

9

not file antitrust claims in 2016, 2017, or even in 2020.  It waited 6 months into this litigation in 2021, indisputably more than four years after ROSS's supposed cause of action accrued and therefore ROSS's claims are untimely and barred.  *In re Aspartame*, 416 F. App'x at 211.

## II.   ROSS Cannot Toll the Applicable Statute of Limitations.

### A.   ROSS Cannot Invoke Fraudulent Concealment Because Westlaw's Structure Was Common Knowledge Prior to 2017, Including to ROSS.

Under the doctrine of fraudulent concealment, a plaintiff may "toll the limitations period" when its "cause of actions has been obscured by the defendant's conduct."  *In re Aspartame*, 416 F. App'x at 211 (quoting *In re Linerboard Antitrust Litig.*, 305 F.3d 145, 160 (3d Cir. 2002)).  The Third Circuit has articulated the elements of this doctrine as:  "(1) fraudulent concealment [by the defendant]; (2) failure on the part of the plaintiff to discover his cause of action notwithstanding such concealment; and (3) that such failure to discover occurred [notwithstanding] the exercise of due care on the part of the plaintiff."  *Id.*  Here, the undisputed evidence shows that ROSS cannot meet any part of this test because the fact that Westlaw was offering an integrated legal research platform was widely known, including by ROSS, prior to the four-year limitations period.

As to the first element, ROSS cannot show that Westlaw undertook "affirmative acts to conceal [its supposed] wrongful conduct" of offering its product as an integrated legal research platform.  *In re Fasteners Antitrust Litig.*, 2011 WL 3563989, at *3 (E.D. Pa. Aug. 12, 2011) (explaining that the "first element of fraudulent concealment" requires "affirmative acts").  Quite the opposite.  Thomson Reuters widely advertised and promoted its Westlaw legal research platform—advertisements for Westlaw have been just a click away on Thomson Reuters' public website since long before 2017.[5]  Westlaw touted its integrated platform in customer pitches and

---

[5]   *See*  https://legal.thomsonreuters.com/en/westlaw  (last accessed August 31, 2023); https://www.thomsonreuters.com/en/press-releases/2016/march/thomson-reuters-westlaw-creates-iphone-app.html (2016 press release promoting Westlaw app that would allow users to

marketing campaigns across magazines, websites, and conferences.  Ex. 101, TRCC-05496656; Ex. 104, TRCC-05813211; Ex. 91, TRCC-00266212; Ex. 103, TRCC-05663507.  Westlaw's terms of service have included the explicit restriction on users taking the platform's contents and using it "to replace or substitute for" Westlaw.  Ex. 87, TR-0002844.  As ROSS's own expert agreed, legal researchers have long been ███████████████████████████████████████████ ███████████████████████████████████████████ Ex. 18, Martin Dep. 111:17–25.  Such "publicly available information" is "inconsistent with any claim of 'fraudulent concealment.'" *Juday v. Merck & Co Inc*., 730 F. App'x 107, 112 n.5 (3d Cir. 2018) (affirming grant of summary judgment to defendant when information on supposed unlawful conduct was in publicly available documents).

ROSS likewise cannot satisfy the second and third elements because—like anyone else involved in legal research—ROSS indisputably knew how Westlaw's product operated before 2017.  ROSS had ████████████████████████████████ Ex. 53, ROSS-003389728, ROSS described ██████████████████ Ex. 62, ROSS-009500822, and ROSS was developing its product by comparing ROSS's features to Westlaw's features, Ex. 51, ROSS-003343202.  If that were not enough, ROSS was receiving █████████████████████████ ███████████████████████████████████ Ex. 77, ROSS-023018627.  What ROSS knew "about [Westlaw's product] should reasonably have made [it] aware of a basis for asserting the very claims now being raised" and thus it cannot invoke fraudulent concealment.  *In re Lower Lake Erie Iron Ore Antitrust Litig.*, 998 F.2d 1144, 1179 (3d Cir. 1993) (affirming

"search    Westlaw    content")    (last    accessed    August    31,    2023); https://www.thomsonreuters.com/en/press-releases/2015/april/thomson-reuters-earns-top-honors-in-national-law-journal-rankings.html (2015 press release touting Westlaw's award for being the "top Online Legal Research Provider") (last accessed August 31, 2023).

summary judgment to defendant because plaintiffs' reasonable diligence would have uncovered conduct at issue before limitations period).

**B.      ROSS Cannot Invoke the Continuing Violation Doctrine to Save Its Claims.**

ROSS also cannot toll the statute of limitations by alleging a "continuing conspiracy to violate the antitrust laws." *Zenith*, 401 U.S. at 338 (1971).  Under the "continuing violation" doctrine, "each overt act that is part of the violation and that injures the plaintiff ... starts the statutory period running again." *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 189 (1997) (citation omitted).

The scope of the "continuing violation" doctrine in antitrust cases depends on whether the plaintiff is a "purchaser" of the defendant's products or a "competitor" claiming that it was driven from the market. *Humana Inc. v. Celgene Corp.*, 2022 WL 1237883, at *7 (D.N.J. Apr. 27, 2022) (summarizing *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979)).  As the Second Circuit explained in its widely cited *Berkey* decision, "the business of a ***monopolist's rival*** may be injured ***at the time the anticompetitive conduct occurs***, a ***purchaser***, by contrast, is not harmed ***until the monopolist actually exercises its illicit power to extract an excessive price***." *Berkey*, 603 F.2d at 295 (emphasis added).  Thus, under *Berkey*, "the competitor plaintiff has four years from the moment of the defendant's initial anticompetitive conduct to bring a claim." *Giordano v. Saks Inc.*, 2023 WL 1451534, at *8 (E.D.N.Y. Feb. 1, 2023).

Courts regularly apply *Berkey*'s "critical distinction" between purchasers and competitors to assess whether an antitrust plaintiff can prove a continuing violation. *Molecular Diagnostics Lab'ys v. Hoffmann-La Roche Inc.*, 402 F. Supp. 2d 276, 286 (D.D.C. 2005).  For example, in *Humana*, the court held that, for the "direct purchaser" plaintiffs, "a continuing violation with respect to supracompetitive prices may occur for each sale of the unlawfully high-priced item." 2022 WL 1237883, at *7.  In contrast, in *N. Carolina Elec. Membership Corp. v. Carolina Power*

& *Light Co.*, 780 F. Supp. 322 (M.D.N.C. 1991), the court granted summary judgment against a "potential competitor" that claimed the defendant engaged in exclusionary conduct outside the limitations period, even though the potential competitors supposedly suffered financial harm years later. *Id.* at 331. As that court explained, in these competitor cases, "[e]xclusion from a market is a conventional form of antitrust injury that gives rise to a claim for damages ***as soon as the exclusion occurs*** ... even though, in the nature of things, the [rival's] losses lie mostly in the future." *Id.* (emphasis added) (quoting *Brunswick Corp. v. Riegel Textile Corp.*, 752 F.2d 261, 271 (7th Cir. 1984) (Posner, J.)).

Applying *Berkey*'s rule here, ROSS is squarely a "competitor" of Westlaw's. ROSS is suing over its supposed "exclusion from [the] market" for legal search tools because of the supposed tie, and as discussed at length above, the supposed "harm" from that exclusion occurred prior to 2017. *Id.*; *see also Berkey*, 603 F.2d at 295. Therefore the "initial anticompetitive conduct" fell outside of the limitations period. *Giordano*, 2023 WL 1451534, at *8.

A contrary rule would make little sense. If a competitor, like ROSS, can sue over a rival's policy that supposedly harmed it at a specific point in time because of future sales to anyone else under that policy, the statute of limitations would be "tolled indefinitely in a very large class of lawsuits." *Brunswick.*, 752 F.2d at 271 (rejecting tolling theory that would let the plaintiff "wait and see just how well [the plaintiff or] the defendant does in the market from which he excluded the plaintiff"). Such a rule would encourage competitors like ROSS to sit on any antitrust theories until an opportunistic moment far past when the supposed harm to that competitor took place. *Contrast W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 106–07 (3d Cir. 2010) (tolling statute of limitations where defendant insurer actually "refused to increase [plaintiff hospital's] reimbursement rates" within limitations period). No case law supports such an

13

expansive application of the continuing violation doctrine as would be required to permit ROSS's time-barred claims.

## <u>CONCLUSION</u>

For these reasons, the Court should grant summary judgment to Thomson Reuters on all of ROSS's claims.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

_____
Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com

*Attorneys for Plaintiffs and Counterdefendants*
*Thomson Reuters Enterprise Center GmbH and West*
*Publishing Corporation*

OF COUNSEL:

Daniel E. Laytin, P.C.
Christa C. Cottrell, P.C.
Cameron Ginder
Max A. Samels
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL  60654
(312) 862-2000

August 31, 2023

14

## CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on August 31, 2023, upon the following in the manner indicated:

David E. Moore, Esquire                           *VIA ELECTRONIC MAIL*
Bindu Palapura, Esquire
Andrew L. Brown, Esquire
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE  19801
*Attorneys for Defendant and Counterclaimant*

Mark A. Klapow, Esquire                           *VIA ELECTRONIC MAIL*
Lisa Kimmel, Esquire
Crinesha B. Berry, Esquire
Matthew J. McBurney, Esquire
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, DC  20004
*Attorneys for Defendant and Counterclaimant*

Gabriel M. Ramsey, Esquire                        *VIA ELECTRONIC MAIL*
Jacob Canter, Esquire
Warrington Parker, Esquire
Margaux Poueymirou, Esquire
Anna Z. Saber, Esquire
Beatrice B. Nguyen, Esquire
CROWELL & MORING LLP
3 Embarcadero Center, 26th Floor
San Francisco, CA  94111
*Attorneys for Defendant and Counterclaimant*

Shira Liu, Esquire                                      *VIA ELECTRONIC MAIL*
CROWELL & MORING LLP
3 Park Plaza, 20th Floor
Irvine, CA  92614
*Attorneys for Defendant and Counterclaimant*

/s/ *Michael J. Flynn*
_____
Michael J. Flynn (#5333)