IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION, | ) ) ) ) |
| Plaintiffs and Counterdefendants, | ) ) ) ) |
| v. | ) )   C.A. No. 20-613 (SB) |
| ROSS INTELLIGENCE INC., | ) )   REDACTED – PUBLIC VERSION ) |
| Defendant and Counterclaimant. | ) ) ) |

**THOMSON REUTERS' OPENING BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON ROSS'S ANTITRUST COUNTERCLAIMS (NO. 4) – INJUNCTIVE RELIEF**

OF COUNSEL:

Daniel E. Laytin, P.C.
Christa C. Cottrell, P.C.
Cameron Ginder
Max A. Samels
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL  60654
(312) 862-2000

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com

*Attorneys for Plaintiffs and Counterdefendants Thomson Reuters Enterprise Center GmbH and West Publishing Corporation*

Original filing date: August 31, 2023
Redacted filing date: September 14, 2023

TABLE OF CONTENTS

Page

SUMMARY OF ARGUMENT ................................................................................................... 1

STATEMENT OF FACTS .......................................................................................................... 2

      A.     ROSS's Legal Research Platform .......................................................................... 2

      B.     ROSS Struggles Financially .................................................................................. 4

      C.     Thomson Reuters' Copyright Litigation ............................................................... 5

      D.     ROSS Ceases Operations ....................................................................................... 6

LEGAL STANDARD .................................................................................................................. 7

ARGUMENT ................................................................................................................................ 8

CONCLUSION .......................................................................................................................... 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alvord-Polk, Inc. v. F. Schumacher & Co.*,
    37 F.3d 996 (3d Cir. 1994)........................................................................................8

*Howard Hess Dental Lab'ys Inc. v. Dentsply Int'l, Inc.*,
    602 F.3d 237 (3d Cir. 2010)......................................................................................8

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986).................................................................................................7

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,
    522 F.3d 6 (1st Cir. 2008)........................................................................................8

*SodexoMAGIC, LLC v. Drexel Univ.*,
    24 F.4th 183 (3d Cir. 2022) .....................................................................................7

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
    395 U.S. 100 (1969).................................................................................................8

*ZF Meritor, LLC v. Eaton Corp.*,
    696 F.3d 254 (3d Cir. 2012)...................................................................1, 8, 9, 10

**Statutes**

15 U.S.C. § 26................................................................................................................8

## SUMMARY OF ARGUMENT

ROSS is a failed legal research platform. ROSS earned more than a million dollars in annual revenue once, never earned a profit, and was not a self-sustaining business. By 2019, ROSS needed either a cash infusion or an acquisition to survive. It got neither. In May 2020, Thomson Reuters sued ROSS for copyright infringement, and ROSS shut down its legal research platform on January 31, 2021. Since then, ROSS has existed for purposes of this litigation alone. ROSS has not marketed or licensed its platform to a single customer. Yet ROSS seeks an injunction barring Thomson Reuters from "tying" its public law database to its legal search tools in the form of an integrated legal research platform.

ROSS does not have standing to sue for an injunction. Standing "is a constitutional mandate" that requires proving a "concrete and particularized" threat of "actual and imminent harm." *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 301, 303 (3d Cir. 2012). ROSS has to prove the threat of imminent *future harm*; past harm is not enough. Indeed, even assuming that Thomson Reuters violated the antitrust laws, caused ROSS antitrust injury, and forced ROSS out of the market, ROSS would still have to prove that it is "***likely to reenter the market***" to establish standing. *Id.* at 302. ROSS has no evidence that it is likely to reenter the market: it is a defunct legal research platform with no employees, no customers, no resources, and no future business plans. ROSS's former CEO's testimony about the "possibility" that it "might one day reenter the market" cannot, as a matter of law, establish standing. *See id.* ROSS thus has no standing to seek injunctive relief, and Thomson Reuters is entitled to judgment on ROSS's claims for injunctive relief.

## STATEMENT OF FACTS

### A.  ROSS's Legal Research Platform

Founded in 2014, ROSS was an eponymous ▮▮▮▮ ▮▮▮▮ Ex. 8, D'Angelo (ROSS Head of Growth) Dep 13:12–22. ROSS entered the market with a splash in 2015, touting its ability to provide ▮▮▮▮ ▮▮▮▮ Ex. 62, ROSS-009500822 at 823. ▮▮▮▮ ▮▮▮▮ Ex. 71, ROSS-010150145. Thomas Hamilton, ROSS's Vice President of Strategy and Operations, explained that ▮▮▮▮ ▮▮▮▮ *Id.*

But what ROSS ▮▮▮▮ its product lacked in quality. *Id.* Throughout ROSS's existence, customers identified countless issues with its platform, including:

- **Search Functionality.** Customers reported that ROSS's ▮▮▮▮ ▮▮▮▮ *E.g.*, Ex. 61, ROSS-003598768; Ex. 80, ROSS-023091588.

- **Case Treatment.** ▮▮▮▮ ▮▮▮▮ *E.g.*, Ex. 73, ROSS-010176471; Ex. 26, van der Heijden (ROSS VP of Product and Legal) Dep. II 195:24–196:17.

- **Secondary Sources.** ▮▮▮▮ Ex. 43, van der Heijden Dep. II Exhibit 12. ▮▮▮▮ *E.g.*, Ex. 74, ROSS-010204342; Ex. 85, ROSS-023122715.



2

- **Platform Features.** Customers were equally frustrated about ROSS's lack of features. ███ *E.g.*, Ex. 85, ROSS-023122715.

Despite these shortcomings, Hamilton and Arruda convinced firms to renew their licenses by ███ Ex. 71, ROSS-010150145 (emphasis added). To mask its shortcomings, ROSS misled customers about the capabilities of its artificial intelligence. For example, ROSS ███ Ex. 25, van der Heijden Dep. I 315:7–316:21; *see also* Ex. 51, ROSS-003343202. In reality, ROSS ███ As Tomas van der Heijden, ROSS's Vice President of Product and Legal, testified, ROSS ███ Ex. 25, van der Heijden Dep. I 315:7–316:21.

Eventually, Arruda and Hamilton's ███ ran out, and ROSS struggled. Ex. 71, ROSS-010150145. ROSS's ███ Ex. 63, ROSS-009547377; Ex. 54, ROSS-003390286 at 288 ███ When ███ Ex. 63, ROSS-009547377. ROSS simply did ███ *Id.* But ROSS did not just lose to incumbent platforms like Westlaw, Lexis, and Bloomberg. It struggled to compete against other startups, too. ███ *Id.* ███

3

███████████████████████████████████

████████████████████████ *Id.* ██████████████████████████ *id.*

███████████████████████████████████

██████████ Ex. 68, ROSS-009722263 (June 2018 ROSS board deck ████████

███████████████████████████████████

████████████████████ Ex. 82, ROSS-023109068 (July 2018 email from Andrew

Arruda ████████████████████████████████

████████████████████████

### B.  ROSS Struggles Financially

Predictably, ROSS struggled financially.  ROSS repeatedly, and optimistically ████████

████████ Ex. 75, ROSS-010262981 █████████████████████████

████████ Ex. 76, ROSS-010316940 ████████████████████ █

███████████████████████████████████

Ex. 42, Shafik (ROSS VP of Finance) Dep. I Ex. 9 at 21, ████████████ Ex. 1, Arruda

(ROSS CEO & Co-Founder) Dep. I 16:6–13 ████████████████████

███████████████████████████████████

██████████████████ Ex. 24, Shafik Dep. II 227:16–228:14; *see also* Ex. 64,

ROSS-009584733 at 734 ██████████████████████

████████████████████ Put simply, ███████████████████

Ex. 26, van der Heijden Dep. II 128:15–21.

So by January 2020, ROSS had two options, ████████████████████

██████████████████████ *Id.* at 128:22–129:6; *see also* Ex. 84,

ROSS-023115847 at 3 █████████████████████ ROSS knew that █████

4

Ex. 84, ROSS-023115847 at 5.

*E.g.*, Ex. 58, ROSS-003489446

Ex. 26, van der Heijden Dep. II 154:6–9,

Ex. 47, FASTCASE_098482 at 483

### C. Thomson Reuters' Copyright Litigation

ROSS built the first version of its platform using IBM's Watson technology. Ex. 26, van der Heijden Dep. II 64:14–18; Ex. 62, ROSS-009500822. But ROSS Ex. 57, ROSS-003487472. In mid-2017, ROSS Ex. 26, van der Heijden Dep. II 64:19–65:6. ROSS contracted with

Ex. 48, ROSS-000304771.

D.I. 250 at 7–9.

Ex. 25, van der Heijden Dep. I 115:4–8.

After Thomson Reuters discovered LegalEase's use of Westlaw, it terminated LegalEase's license for material breach. Thomson Reuters then sued ROSS for copyright infringement in May 2020. D.I. 1. Several months later, ROSS filed antitrust counterclaims, alleging that Westlaw is an unlawful monopoly. D.I. 24. ROSS pressed three different antitrust theories: that Thomson

5

Reuters unlawfully refused to deal with ROSS by refusing to license its platform, that Thomson Reuters filed a sham copyright lawsuit, and that the Westlaw legal research platform constitutes unlawful "tying."  D.I. 38 at 1–4.  ROSS abandoned its refusal-to-deal theory at the motion-to-dismiss hearing, and the Court subsequently dismissed it and ROSS's sham-litigation theory.  D.I. 170 at 6 n.4, 11–12.  ROSS was permitted to proceed to discovery on its tying theory alone (Counts VI, VII, and VIII of its operative complaint).  *Id.* at 9, 15.  In each of its remaining counts brought under the federal antitrust laws, ROSS seeks an injunction to enjoin the alleged tie.  D.I. 225 ¶¶ 161 (Count VI) and 169 (Count VII).[1]

### D.  ROSS Ceases Operations

Between the filing of Thomson Reuters' copyright complaint and ROSS's antitrust counterclaims, ROSS announced its plan to shut down, blaming the copyright litigation for its failure.  Ex. 36, 12/11/2020 ROSS Blog Post, available at https://blog.rossintelligence.com/post/announcement (last accessed August 31, 2023).  ROSS claimed that Thomson Reuters' copyright litigation was "spurious" and had "been heavy for ROSS to bear"—"just as Westlaw devised it to be."  *Id.*  For its existing customers, ROSS "continue[d] to be available ... until January 31, 2021," at which point ROSS worked with "customers to transition them to other services," "including platforms by our friends at Fastcase, vLex, and Casetext."  *Id.*

Since then, ROSS ███████████████████████████████████████████ Ex. 2, Arruda Dep. II 9:9–11:10.  ROSS has not █████████████████████████████ ████████████████████████████ or █████████████████████████████████

---

[1]  ROSS does not expressly seek an injunction under Count VII (California Unfair Competition Law).  Yet even if it did, the claim for injunctive relief would fail for the same reasons outlined in this brief.  *See also* D.I. 520 at 10 & n.5 (explaining why ROSS's California Unfair Competition Law claim fails).

6

*Id.* at 11:11–18.  And its executives have long-since dispersed, working at a range of companies in a range of industries:

- **CEO and Co-Founder Andrew Arruda** is the "founder and chief executive officer of Flexpa," "a company that makes developer tools for digital health."  Ex. 2, Arruda Dep. II 6:24–7:3; Ex. 1, Arruda Dep. I 10:14–17.

- **Chief Technical Officer and Co-Founder Jimoh Ovbiagele** worked at Coinbase, a cryptocurrency company, until early 2023.  Ex. 20, Ovbiagele Dep. I 9:13–14; Ex. 21, Ovbiagele Dep. II 8:11–21.  His LinkedIn states that he is currently CEO and co-founder of a company called Stealth.[2]

- **Chief Quality Officer and Co-Founder Pargles Dall'Oglio** works at ZoomInfo.  Ex. 7, Dall'Oglio Dep. I 5:14–25.

- **Vice President of Strategy and Operations Thomas Hamilton** co-founded Flexpa with Arruda and is the company's COO.  Ex. 11, Hamilton Dep. I 8:15–9:7.

- **Vice President of Product and Legal Tomas van der Heijden** is co-founder and CEO of a company called Briink, "a sustainable finance tech company" that uses "large language models to help sustainable finance analysts conduct sustainable finance work."  Ex. 26, van der Heijden Dep. II 76:16–24.

- **Vice President of Finance Sean Shafik** works at a company called Spotter, a media tech company that "fund[s] creators who produce content on YouTube," as the Senior Director of Finance.  Ex. 24, Shafik Dep. II 14:4–8, 87:5–13.

## LEGAL STANDARD

On a motion for summary judgment, if "the nonmoving party 'fails to make a showing sufficient to establish the existence of an element essential to its case, and on which it will bear the burden of proof at trial,' then summary judgment is appropriate for the moving party." *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 204 (3d Cir. 2022) (citation and alterations omitted).  When "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  This summary judgment standard "applies with equal

---

[2]   *See* https://www.linkedin.com/in/jimohovb/ (last visited August 28, 2023).

force in antitrust cases," and the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Alvord-Polk, Inc. v. F. Schumacher & Co.*, 37 F.3d 996, 1001 (3d Cir. 1994) (citations omitted).

## ARGUMENT

A private plaintiff can seek injunctive relief under the antitrust laws for "threatened loss or damage[s]." 15 U.S.C. § 26. Threatened *future*—as opposed to past—harm is fundamental to a claim for injunctive relief. Whether a "plaintiff has suffered a previous injury due to the defendant's conduct" is irrelevant. *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 301 (3d Cir. 2012). Rather, to survive summary judgment on its claim for injunctive relief, ROSS must present evidence creating a "genuine issue of material fact sufficient ... to 'demonstrate a significant threat of injury from an impending violation of the antitrust laws.'" *Howard Hess Dental Lab'ys Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 247 (3d Cir. 2010) (quoting *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 130 (1969)). This requirement "dovetails with Article III's requirement that in order to obtain forward-looking relief, a plaintiff must face a threat of injury that is both real and immediate, not conjectural or hypothetical." *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6, 14 (1st Cir. 2008) (citation omitted).

The Third Circuit's analysis in *ZF Meritor* is conclusive on the issue. There, ZF Meritor and Meritor sued Eaton for alleged anti-competitive practices "in the heavy-duty truck transmissions market." *ZF Meritor*, 696 F.3d at 263. ZF Meritor, Meritor, and Eaton had all been competitors in that market, with Eaton a long-time monopolist. *Id.* at 264. But over time, both ZF Meritor and Meritor—unable to compete with Eaton—exited. *Id.* at 266–67. A jury held that Eaton's long-term exclusive-dealing contracts violated the antitrust laws. After the liability trial, the district court "awarded no damages" for evidentiary reasons but "did enter injunctive relief against Eaton." *Id.* at 263. On appeal, Eaton argued that ZF Meritor's and Meritor's "withdrawal

from the HD transmissions market ... and their failure to present evidence showing anything more than a mere possibility that they will reenter the market precludes a finding of Article III standing as to injunctive relief." *Id.* at 300. The Third Circuit agreed and reversed the grant of injunctive relief.

The Third Circuit started its opinion by affirming the jury's liability finding, concluding that there was "sufficient evidence from which a jury could determine that" Eaton's long-term contracts "functioned as unlawful exclusive dealing arrangements" and that "Plaintiffs' inability to grow was a direct result of Eaton's exclusionary conduct." *Id.* at 289. Nevertheless, as to injunctive relief, the court explained that "a plaintiff may have standing to pursue damages, but lack standing to seek injunctive relief." *Id.* at 301. While past harm may suffice for a damages claim, to "have standing to seek injunctive relief," a plaintiff must prove a "concrete and particularized" threat of "actual and imminent harm." *Id.* at 301. The evidence, as the district court acknowledged, "establishe[d] no more than a 'possibility' that Meritor might one day reenter the market." *Id.* at 302. The district court erred, however, "in concluding that such a possibility is sufficient to confer Article III standing for injunctive relief." *Id.* As the Third Circuit held, "[a]bsent a showing that" ZF Meritor or Meritor "are **likely to reenter the market** and again be confronted with Eaton's exclusionary practices," they had no standing to pursue injunctive relief. *Id.* (emphasis added). Thus, despite the "strong public policy reasons for issuing an injunction," the court reversed. *Id.* at 303.

ROSS, like ZF Meritor and Meritor, exited the legal research market years ago and has no evidence that it is "likely to reenter the market." ROSS shut down its platform in January 2021, Ex. 36, 12/11/2020 ROSS Blog Post, and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 2, Arruda Dep. II 9:9–11:10. In the two-plus years since it shut down ▮▮▮▮▮▮▮▮

9

███ *Id.* at 11:11–18.  ROSS has no employees, and its senior-most executives have all moved on.  *See supra* at 6–7.  ███

███  ███

███ *See supra* at 4–5.  ███

███ Ex. 26, van der Heijden Dep. II at 128:22–129:6; Ex. 84, ROSS-023115847 at 3.  Neither materialized after Thomson Reuters' filed its copyright claim.  At bottom, ROSS had—and has—no future as a legal research platform.

That ROSS may have ███

███ Ex. 1, Arruda Dep. I 16:21–17:3.  ROSS's CEO conceded that it ███

███

Ex. 2, Arruda Dep. II 14:21–16:22.  These "[v]ague assertions of desire, without any description of concrete plans, are insufficient to support a finding of actual or imminent injury" as a matter of law.  *ZF Meritor*, 696 F.3d at 302 (citation omitted).  ROSS thus has not created, and cannot create, a genuine issue of material fact about its standing to pursue injunctive relief.

## CONCLUSION

ROSS has no evidence that it is "likely" to reenter the market and thus has no standing to seek injunctive relief.  The Court should dismiss ROSS's claim for injunctive relief.

|  |  |
|---|---|
|  | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
|  | */s/ Michael J. Flynn* |
| OF COUNSEL:<br><br>Daniel E. Laytin, P.C.<br>Christa C. Cottrell, P.C.<br>Cameron Ginder<br>Max A. Samels<br>KIRKLAND & ELLIS LLP<br>300 North LaSalle<br>Chicago, IL 60654<br>(312) 862-2000<br><br>August 31, 2023 | Jack B. Blumenfeld (#1014)<br>Michael J. Flynn (#5333)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE 19899<br>(302) 658-9200<br>jblumenfeld@morrisnichols.com<br>mflynn@morrisnichols.com<br><br>*Attorneys for Plaintiffs and Counterdefendants Thomson Reuters Enterprise Center GmbH and West Publishing Corporation* |

11

## CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on August 31, 2023, upon the following in the manner indicated:

| | |
|---|---|
| David E. Moore, Esquire<br>Bindu Palapura, Esquire<br>Andrew L. Brown, Esquire<br>POTTER ANDERSON & CORROON LLP<br>Hercules Plaza, 6th Floor<br>1313 North Market Street<br>Wilmington, DE  19801<br>*Attorneys for Defendant and Counterclaimant* | *VIA ELECTRONIC MAIL* |
| Mark A. Klapow, Esquire<br>Lisa Kimmel, Esquire<br>Crinesha B. Berry, Esquire<br>Matthew J. McBurney, Esquire<br>CROWELL & MORING LLP<br>1001 Pennsylvania Avenue NW<br>Washington, DC  20004<br>*Attorneys for Defendant and Counterclaimant* | *VIA ELECTRONIC MAIL* |
| Gabriel M. Ramsey, Esquire<br>Jacob Canter, Esquire<br>Warrington Parker, Esquire<br>Margaux Poueymirou, Esquire<br>Anna Z. Saber, Esquire<br>Beatrice B. Nguyen, Esquire<br>CROWELL & MORING LLP<br>3 Embarcadero Center, 26th Floor<br>San Francisco, CA  94111<br>*Attorneys for Defendant and Counterclaimant* | *VIA ELECTRONIC MAIL* |

Shira Liu, Esquire  VIA ELECTRONIC MAIL
CROWELL & MORING LLP
3 Park Plaza, 20th Floor
Irvine, CA  92614
*Attorneys for Defendant and Counterclaimant*

        */s/ Michael J. Flynn*
        _____
        Michael J. Flynn (#5333)