IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

THOMSON REUTERS ENTERPRISE )
CENTRE GMBH and WEST PUBLISHING )
CORPORATION, )
                     )
        Plaintiffs and )
        Counterdefendants, )
                     )
     v.                  )    C.A. No. 20-613 (SB)
                     )
ROSS INTELLIGENCE INC.,     )    REDACTED – PUBLIC VERSION
                     )
        Defendant and )
        Counterclaimant. )

**THOMSON REUTERS' OPENING BRIEF IN SUPPORT OF ITS MOTION TO
EXCLUDE DR. ALAN COX AND MOTION FOR SUMMARY JUDGMENT ON ROSS'S
ANTITRUST COUNTERCLAIMS (NO. 5) – *COMCAST***

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com

OF COUNSEL:

Daniel E. Laytin, P.C.
Christa C. Cottrell, P.C.
Cameron Ginder
Max A. Samels
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

*Attorneys for Plaintiffs and Counterdefendants
Thomson Reuters Enterprise Center GmbH and West
Publishing Corporation*

Original filing date: August 31, 2023
Redacted filing date: September 14, 2023

## TABLE OF CONTENTS

Page

SUMMARY OF ARGUMENT ................................................................................ 1

STATEMENT OF FACTS .................................................................................... 3

    A.    ROSS's Legal Research Platform ........................................................... 3

    B.    Thomson Reuters' Copyright Lawsuit .................................................. 4

    C.    ROSS's Antitrust Counterclaims ......................................................... 5

    D.    Dr. Cox's Damages Report ................................................................... 7

ARGUMENT ..................................................................................................... 9

I.    Dr. Cox's Damages Analysis Cannot Establish Antitrust Injury Caused by the
Alleged Tie ..................................................................................................... 9

    A.    An Antitrust Plaintiff Must Prove Antitrust Injury Caused by the
Allegedly Anticompetitive Conduct. .................................................. 9

    B.    Dr. Cox Failed to Disaggregate the Effect of Lawful and Allegedly
Unlawful Conduct and Must Be Excluded. ....................................... 12

II.    Dr. Cox's Analysis Cannot Prove Antitrust Injury and Thus Thomson Reuters Is
Entitled to Judgment as a Matter of Law. ...................................................... 15

CONCLUSION .................................................................................................. 18

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alberta Gas Chemicals Ltd. v. E.I. Du Pont de Nemours & Co.*,
   826 F.2d 1235 (3d Cir. 1987)......................................................................................18

*Atl. Richfield Co. v. USA Petroleum Co.*,
   495 U.S. 328 (1990)..................................................................................................9

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
   429 U.S. 477 (1977)..............................................................................................9, 15

*Calhoun v. Yamaha Motor Corp., U.S.A.*,
   350 F.3d 316 (3d Cir. 2003)....................................................................................12

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)..............................................................................................15

*City of Pittsburgh v. W. Penn Power Co.*,
   147 F.3d 256 (3d Cir. 1998).....................................................................................9

*Coleman Motor Co. v. Chrysler Corp.*,
   525 F.2d 1338 (3d Cir. 1975)..............................................................................11, 16

*Comcast v. Behrend*,
   569 U.S. 27 (2013)........................................................................................... *passim*

*Concord Boat Corp. v. Brunswick Corp.*,
   207 F.3d 1039 (8th Cir. 2000) ...........................................................................15, 16

*Crawford v. George & Lynch, Inc.*,
   2013 WL 6504361 (D. Del. Dec. 9, 2013)...............................................................12

*Ctr. City Periodontists, P.C. v. Dentsply Int'l, Inc.*,
   321 F.R.D. 193 (E.D. Pa. 2017)..............................................................................15

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993)............................................................................................12, 17

*In re Hydrogen Peroxide Antitrust Litig.*,
   552 F.3d 305 (3d Cir. 2008)...................................................................................15

*In re IKO Roofing Shingle Prod. Liab. Litig.*,
   757 F.3d 599 (7th Cir. 2014) ..................................................................................11

*Kentucky v. Marathon Petroleum Co. LP*,
    464 F. Supp. 3d 880 (W.D. Ky. 2020)................................................................15, 16

*MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*,
    708 F.2d 1081 (7th Cir. 1983) .........................................................................11, 16

*Mercedes-Benz USA, Inc. v. Coast Auto. Grp., Ltd.*,
    362 F. App'x 332 (3d Cir. 2010) ............................................................................18

*In re Pharmacy Benefit Managers Antitrust Litig.*,
    2017 WL 275398 (E.D. Pa. Jan. 18, 2017)..................................................2, 12, 15

*Professional Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*,
    508 U.S. 49 (1993).....................................................................................................6

*ZF Meritor, LLC v. Eaton Corp.*,
    696 F.3d 254 (3d Cir. 2012)....................................................................................17

**Rules**

Fed. R. Civ. P. 26...........................................................................................................17

Fed. R. Civ. P. 56...........................................................................................................15

Fed. R. Evid. 702 ...........................................................................................................12

## SUMMARY OF ARGUMENT

The law is clear:  an expert's analysis "purporting to serve as evidence of damages ... must measure only those damages attributable to" the anticompetitive conduct.  *Comcast v. Behrend*, 569 U.S. 27, 35 (2013).  Dr. Alan Cox, ROSS's damages expert, recognized as much, conceding that antitrust damages require "an economic explanation of the mechanism by which the anticompetitive act caused harm to the plaintiff," Ex. 29, Cox Rpt. ¶ 7, and that the but-for world used to calculate antitrust damages "is just the actual world as adjusted for the elimination of the allegedly anticompetitive conduct," Ex. 5, Cox Dep. II 86:19–24.  Despite this well-established and undisputed terrain, Dr. Cox failed to apply it.

Thomson Reuters sued ROSS for copyright infringement in May 2020.  Since then, ROSS and its executives have repeatedly blamed ROSS's failure on that copyright litigation.  When ROSS shut down in January 2021, it claimed that Thomson Reuters had brought a "spurious lawsuit" that had been too "heavy for ROSS to bear."  Then, in this litigation, ROSS's CEO and co-founder Andrew Arruda testified that ███████████████████████████████████████ ███████████████  And, sure enough, ROSS alleged that the copyright lawsuit constituted "sham litigation" in violation of the antitrust laws.  But the Court dismissed that claim, meaning whatever effect the copyright lawsuit had on ROSS's business, it was neither unlawful nor anticompetitive.  Only one of ROSS's antitrust theories survived dismissal—the alleged tie whereby Westlaw is only sold as an integrated product to consumers.

Yet Dr. Cox failed to account for the effect of the copyright case on ROSS's business in his damages analysis.  He concluded that ████████████████████████████████████ in the but-for world based on the assumption that the initial copyright infringement related to how legal researchers *used* ROSS's product.  But he admitted at deposition that was wrong.  Dr. Cox admitted ████████████████████████████████████████████████████████████████████

████████████████████████████████████ To actually develop its AI-driven platform, ROSS had to teach its AI how to answer legal questions; having raw judicial opinions alone was not enough to develop ROSS's search technology.  So regardless of how legal researchers used ROSS's product, or accessed Westlaw's public law database, ROSS still had to train its AI before selling its product to customers.  There is no reason to think that ████████ ███████████████████████████████████ so the infringement still would have occurred.  And Dr. Cox admitted that Thomson Reuters would hav ████████████████ ████████████████████████████████ It is thus undisputed that Thomson Reuters still would have brought the copyright case against ROSS in the but-for world.  Accordingly, there was no excuse for Dr. Cox to fail to disaggregate the effect of Thomson Reuters' copyright suit on ROSS.

Dr. Cox's failure to disaggregate harm allegedly caused by the lawful copyright lawsuit from the alleged tie is fatal to both his analysis and ROSS's counterclaims.  Here, as in *Comcast*, ROSS asserted multiple antitrust theories.  Here, as in *Comcast*, all but one theory was dismissed.  And here, as in *Comcast*, Dr. Cox failed to disaggregate the effect of Thomson Reuters' copyright litigation (the dismissed antitrust theory) from the effect of the alleged tie (the surviving antitrust theory).  Dr. Cox's analysis thus "identifies damages that are not the result of the wrong." *Comcast*, 569 U.S. at 37.  And because Dr. Cox's analysis does not disaggregate damages—it does not even attempt to address the impact of the "only reason ROSS shut down"—it "cannot assist the Court ... or assist the trier of fact later on to determine damages attributable to the purported antitrust violation" and should be excluded.  *In re Pharmacy Benefit Managers Antitrust Litig.*, 2017 WL 275398, at *19–20 (E.D. Pa. Jan. 18, 2017).

Further, because Dr. Cox's analysis is incapable of proving that the alleged tied caused either antitrust injury or damages, ROSS cannot meet its burden on essential elements to its counterclaims.  Thomson Reuters is thus entitled to judgment as a matter of law on each of ROSS's counterclaims.[1]

## STATEMENT OF FACTS

### A.    ROSS's Legal Research Platform

Thomson Reuters owns Westlaw, an industry leading legal research platform.  ROSS was founded in 2014 and sought to create a legal research platform that would compete with, and ultimately replace, Westlaw.  Ex. 25, van der Heijden (ROSS VP of Product and Legal) Dep. I 55:13–56:7.  ROSS ███████████████████████████████  Ex. 26, van der Heijden Dep. II 64:14–18; Ex. 62, ROSS-009500822, but by mid-2017 ███████████████████ ███████████████████  Ex. 26, van der Heijden Dep. II 64:19–65:6.  Though ROSS had ████████████████████████████████████████████████████████████ ████████████████████████████████████████████  *Id.* at 90:9–15, 142:11–23.  ROSS also ██████████████████████████████████████████████ ████████████████████████████████████████████████████████████ Ex.1, Arruda (ROSS CEO and Co-Founder) Dep. I 275:12–276:12; Ex. 20, Ovbiagele (ROSS CTO and Co-Founder) Dep. I 48:23–50:9, 236:9–237:2.  Only with this ████████████████ █████████████████████████████████  D.I. 250 at 5–7.  So ROSS contracted ██████████████████████████████████████  Ex. 48, ROSS-000304771.

---

[1]    Thomson Reuters is entitled to judgment on each of ROSS's antitrust counterclaims: Count VI—Sherman Act § 2, Count VII—Sherman Act § 1, and Count VIII—California Unfair Competition Law.  *See* D.I. 520 at 10 n.5.



D.I. 250 at 7–9.

*Id.* How LegalEase

Ex. 4, Cahn Dep. 195:14–19; Ex. 10, Hafeez Dep. 125:24–126:2 (

). And spreadsheets produced by

*E.g.*, D.I. 255-11 (Ex. 102). It is equally undisputed that ROSS then used LegalEase's memos to train its artificial intelligence. As Tomas van der Heijden, ROSS's Vice President of Product, testified in his role as corporate representative, the

Ex. 25, van der Heijden Dep. I 115:4–8 (emphasis added); *see also* Ex. 26, van der Heijden Dep. II 65:11–21

emphasis added)).

**B.     Thomson Reuters' Copyright Lawsuit**

When Thomson Reuters discovered LegalEase's use of Westlaw, it terminated LegalEase's license for material breach. After further investigation revealed that LegalEase had been working at ROSS's direction, Thomson Reuters sued ROSS for copyright infringement in May 2020. D.I. 1. Thomson Reuters alleged that ROSS had, through LegalEase, misappropriated Thomson Reuters' proprietary Editorial Content to develop ROSS's own competing legal research platform. *Id.* at ¶ 1.

Shortly after Thomson Reuters filed its copyright lawsuit, ROSS shut down. Ex. 36, 12/11/2020 ROSS Blog Post, available at https://blog.rossintelligence.com/post/announcement (last accessed August 31, 2023). ROSS blamed Thomson Reuters for ROSS's failure, announcing that Thomson Reuters "brought a spurious lawsuit against ROSS," which had "been heavy for ROSS to bear." *Id.* The copyright lawsuit, according to ROSS, caused it to "cease operations" in January 2021—"just as Westlaw devised it to be." *Id.* Throughout this litigation ROSS's executives have blamed the copyright litigation for its failure. ROSS CEO and co-founder Andrew Arruda testified that the copyright



Ex. 1, Arruda Dep. I 102:2–8 (objection omitted).



Ex. 24, Shafik Dep. II 28:11–13.

### C. ROSS's Antitrust Counterclaims

Caught misappropriating Thomson Reuters' Editorial Content, ROSS began plotting ways to turn the tables. Several months after Thomson Reuters' infringement suit, ROSS filed antitrust counterclaims, alleging—for the first time—that Westlaw is an unlawful monopoly. D.I. 24. Not once, between 2015 and 2020, did ROSS contend that Westlaw was a monopoly. Not once did ROSS argue that it could not compete without access to Westlaw's collection of primary law. Not once did ROSS argue that legal research platforms, like Westlaw or even ROSS's own product,

should be broken down and sold as separate public law database and legal search tool "products." The opposite is true.  ROSS believed that it developed a legal research platform that could compete with Westlaw, Lexis, and others in the market.  Ex. 26, van der Heijden Dep. II 155:16–22; Ex. 24, Shafik Dep. II 85:10–13.  And ROSS boasted that its platform included "***comprehensive coverage*** of United States law."  Ex. 43, van der Heijden Dep. Ex. 12 (emphasis added).

That did not stop ROSS here.  In a far-ranging complaint, ROSS argued that Thomson Reuters violated the antitrust laws based on three entirely distinct theories of liability:

- **Sham Litigation.**  ROSS accused Thomson Reuters of filing "sham" copyright lawsuits that did "not advanc[e] a legitimate interest in intellectual property rights" but were instead designed "to force rivals into unnecessary, expensive legal fights solely to raise entry barriers, particularly destroying nascent rivals before they can gain a toehold in the relevant markets." D.I. 225 ¶ 111; *see also* D.I. 38 at 1 (ROSS arguing in its Motion to Dismiss opposition that "Westlaw engages in objectively and subjectively baseless sham litigation") According to ROSS, "[t]his is exactly what happened to ROSS."  D.I. 225 ¶ 112.

- **Refusal to Deal.**  ROSS alleged that Thomson Reuters violated the antitrust laws by refusing to license its collection of judicial opinions, statutes, and regulations (a public law database) to ROSS.  *Id.* at ¶¶107–08.  As ROSS told it, Thomson Reuters "uses restrictive licensing conditions to exclude rivals from valuable research and development opportunities," which is "exclusionary conduct" that ROSS alleged "reduces entry from high-quality products, deters legitimate business activities, and depresses the competitive pressure to innovate."  *Id.*

- **Tying.**  ROSS contended that Thomson Reuters refused to "provide[] consumers with an option to only license the public law database, or to only license the legal search tools," a "business model" that ROSS described as being "akin to a tying scheme that raises entry barriers in the relevant markets and allows Westlaw to monopolize the distribution of public law."  *Id.* at ¶¶ 102, 104.

Thomson Reuters moved to dismiss ROSS's counterclaims.  D.I. 28.  After briefing and oral argument, the Court granted Thomson Reuters' motion in part.  D.I. 170.  The Court dismissed ROSS's sham-litigation claim, holding that ROSS had not identified any litigation that "was 'objectively baseless' or that West had an improper intent in pursuing."  *Id.* at 11 (quoting *Professional Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60–61 (1993)). As to the current litigation in particular, ROSS failed to make "any specific allegations about how

the instant case is a sham." *Id.* The Court also dismissed ROSS's refusal-to-deal claim after ROSS

voluntarily dropped it mid-oral argument. *Id.* at 6 n.4. Only ROSS's tying claim survived. *Id.* at

6–9, 12.

### D. Dr. Cox's Damages Report

The parties then proceeded to discovery on ROSS's tying claim. To support its claim that

it suffered antitrust injury, ROSS submitted the expert report of Dr. Alan Cox. ROSS asked Dr.

Cox to ████████████████████████████████████████████

████████████████████████████████████

Ex. 29, Cox Rpt. ¶ 14 (emphasis added). Dr. Cox explained that ███████████████████

████████████████████████████████████████████

██████████████████████████ *Id.* at ¶ 7. The second factor,

Dr. Cox acknowledged, requires ██████████████████████████████

█████████████████████████ *Id.* (emphasis added). Consistent with that

framework, Dr. Cox explained ██████████████████████████████

████████████████ *Id.* at ¶ 80. In an antitrust case, the ███████████████

████████████████████████████████████████████

████████████████████ *Id.* An antitrust plaintiff's lost profits are, as Dr. Cox

concluded, the difference between the profits the plaintiff actually earned in the real world and

what it would have earned in a but-for world without the alleged anticompetitive conduct. *Id.*

Dr. Cox then purported to calculate ROSS's lost profits. Dr. Cox started by outlining ████

██████████████████████████ *Id.* at 3. There, Dr. Cox identified the alleged

anticompetitive conduct he understood to be at issue in the case, including the three antitrust

theories ROSS outlined in its complaint: ████████████████████████████

████████████████████████████████████████████

7

[REDACTED] *Id.* at ¶¶ 10–12.

From there, Dr. Cox [REDACTED]

[REDACTED] *Id.* at ¶¶ 81–82.  Despite ROSS's repeated statements

blaming the copyright litigation for its failure, [REDACTED]

[REDACTED] To defend his analysis, Dr. Cox argued in his

reply report that [REDACTED]

[REDACTED] Ex. 30, Cox Reply Rpt. ¶ 42 (emphasis added).

He based that assumption on two sentences, the first of which simply sets out the assumption:

*Id.*

Dr. Cox believed that [REDACTED]

[REDACTED] Therefore, [REDACTED]

[REDACTED] *Id.*  But, as discussed below, Dr. Cox's

analysis rests on a fundamental misunderstanding of the copyright lawsuit, which Dr. Cox admits

[REDACTED]

███████████████████████████████████████████████████████

████████ 2

## **ARGUMENT**

Dr. Cox failed to disaggregate the effect of Thomson Reuters' copyright litigation from the effect of the alleged tie.  Dr. Cox's analysis thus does not fit the facts of the case and cannot establish antitrust injury.  And because ROSS has no other competent evidence to prove antitrust injury or damages, Thomson Reuters is entitled to judgment as a matter of law.

**I.     Dr. Cox's Damages Analysis Cannot Establish Antitrust Injury Caused by the Alleged Tie.**

**A.     An Antitrust Plaintiff Must Prove Antitrust Injury Caused by the Allegedly Anticompetitive Conduct.**

An antitrust plaintiff can recover only damages caused by the defendant's allegedly anticompetitive conduct.  *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 339 (1990).  So an antitrust plaintiff "must prove antitrust injury ... that flows from that which makes defendants' acts unlawful."  *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977).  Whether a plaintiff has proved antitrust injury thus requires an "examin[ation] [of] the causal connection between the purportedly unlawful conduct and the injury."  *City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 265 (3d Cir. 1998).  This principle of antitrust injury and causation is beyond dispute:  Dr. Cox ██████████████████████████ Ex. 29, Cox Rpt. ¶¶ 7, 14, and testified that the █████

███████████████████████████████████████████████████████

███████████████████ Ex. 5, Cox Dep. II 86:15–24.

---

2    ROSS expressly defines a public law database to *exclude* editorial content, like Headnotes. *See* Ex. 33, Ratliff Rpt. ¶ 25 ███████████████████████████████████

███████████████████████████████████████████████

A decade ago, the Supreme Court explained how this principle applies in cases where a plaintiff pleads multiple antitrust theories but several are dismissed. *Comcast v. Behrend*, 569 U.S. 27 (2013). In *Comcast*, the plaintiffs accused Comcast of monopolizing the cable-television market in the Philadelphia Designated Market Area. *Id.* at 29. Plaintiffs "proposed four theories of antitrust impact," each of which allegedly "increased cable subscription rates throughout the Philadelphia DMA." *Id.* at 31. At class certification, however, the district court accepted only one of plaintiffs' antitrust theories, concluding that the other three theories were incapable of proof on a classwide basis. *Id.* Nevertheless, plaintiffs' damages expert "designed a regression model comparing actual cable prices in the Philadelphia DMA with hypothetical prices that would have prevailed but for [defendants'] allegedly anticompetitive activities"—without "isolat[ing] damages resulting from any one theory of antitrust impact." *Id.* at 32. The district court certified the class anyway, and a divided panel of the Third Circuit affirmed. On certiorari, the Supreme Court reversed.

The Court started "with an unremarkable premise": if plaintiffs "prevail on their claims, they would be entitled only to damages resulting from ... the only theory of antitrust impact accepted for class-action treatment." *Id.* at 35. It followed "that a model purporting to serve as evidence of damages ... must measure only those damages attributable to that theory." *Id.* Plaintiffs' damages expert's analysis failed to meet that standard. The expert "assumed the validity of all four theories of antitrust impact initially advanced by [plaintiffs] ... and did not attribute damages to any one particular theory of anticompetitive impact." *Id.* at 36–37. Though the expert's analysis "might have been sound ... if all four of those alleged distortions remained in the case," it could not establish damages attributable solely to the only remaining antitrust theory. *Id.* at 37. Because "[t]he first step in a damages study is the translation of the legal theory of the

harmful event into an analysis of the economic impact of that event," and because the expert's model was incapable of "bridg[ing] the difference between supra-competitive prices in general and supra-competitive prices attributable" to the sole antitrust theory of impact remaining, the Court reversed class certification. *Id.* at 38.

The "disaggregation requirement is not unique to class actions." Areeda & Hovenkamp, Antitrust Law ¶ 331d2 ("Areeda & Hovenkamp"); *see also In re IKO Roofing Shingle Prod. Liab. Litig.*, 757 F.3d 599, 602 (7th Cir. 2014) (stating that *Comcast*'s analysis "would be equally true in a suit with just one plaintiff"). Rather, the "disaggregation requirement flow[s] from the fact that the defendant engaged in multidimensional conduct that adversely affected the plaintiff's fortunes, but some of that conduct was lawful." Areeda & Hovenkamp ¶ 392g; *see also Coleman Motor Co. v. Chrysler Corp.*, 525 F.2d 1338, 1352–53 (3d Cir. 1975) (reversing jury verdict where "Plaintiff's own experts conceded that the damage figures they tendered were attributable at least in part to the lawful competition of Chrysler's factory dealerships"); *MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*, 708 F.2d 1081, 1162 (7th Cir. 1983) (stating that a plaintiff may not "improperly attribute[] all losses to a defendant's illegal acts, despite the presence of significant other factors"). If, as in *Comcast*, a "competitor plaintiff alleged three unlawful exclusionary practices and only one was subsequently found unlawful, damages could be awarded only for the latter." Areeda & Hovenkamp ¶ 657b1. *Comcast*'s disaggregation requirement thus "applies in any situation where the expert's opinion fails to assign causation and measure damages for a specific element of conduct when many different types of conduct were claimed but only one survives dismissal." *Id.* at ¶ 331d2.

**B.     Dr. Cox Failed to Disaggregate the Effect of Lawful and Allegedly Unlawful Conduct and Must Be Excluded.**

Dr. Cox's analysis should be excluded because his analysis is incapable of establishing antitrust injury causally connected to ROSS's sole surviving antitrust theory—the tying claim. Among other requirements, Rule 702 provides that an expert's testimony must apply "scientific, technical, or specialized knowledge" to assist "the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). This "standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591–92 (1993). In other words, the expert's analysis must "fit" the case, "meaning the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact." *Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 321 (3d Cir. 2003) (citation omitted). The party seeking to admit expert testimony bears the burden of establishing that the expert's testimony "fits" the case and is relevant by a preponderance of the evidence. *See Crawford v. George & Lynch, Inc.*, 2013 WL 6504361, at *1 (D. Del. Dec. 9, 2013).

To be relevant and fit the facts of the case, an antitrust damages expert's opinions must correspond to the plaintiff's theory of antitrust liability. *Comcast*, 569 U.S. at 35 ("[A]ny model supporting a plaintiff's damages case must be consistent with its liability case, particularly with respect to the alleged anticompetitive effect of the violation." (citation omitted)). Thus, an expert's analysis that fails to comport with *Comcast* is inadmissible because it does not "fit" the facts of the case and "cannot assist the Court ... or assist the trier of fact later on to determine damages attributable to the purported antitrust violation." *In re Pharmacy Benefit Managers Antitrust Litig.*, 2017 WL 275398, at *19–20 (E.D. Pa. Jan. 18, 2017) (granting *Daubert* motion because the plaintiffs' experts "submissions here are similarly defective" to those in *Comcast*).

Dr. Cox's analysis fails this fundamental step.  From the moment ROSS shut down, it blamed its failure on the copyright litigation.  Ex. 36, 12/11/2020 ROSS Blog Post.  ROSS's executives have ███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████ Ex. 1, Arruda Dep. I 102:2–8; Ex. 21, Ovbiagele Dep. II 212:17–22; Ex. 24, Shafik Dep. II 28:11–13; Ex. 8, D'Angelo (ROSS Head of Growth) Dep. 57:7–10.  And ROSS claimed that Thomson Reuters violated the antitrust laws by bringing "sham" copyright lawsuits, like the one against ROSS.

Yet Dr. Cox chose not to account for the copyright lawsuit in either of his analyses.  To be sure ████████████████████████████████████████████ Ex. 29, Cox Rpt. at 3. But ███████████████████████████████████████████████████████████ ████████████████████████████████████████████ Ex. 30, Cox Reply Rpt. at 20. As Dr. Cox explained it, ███████████████████████████████████████████

█████████████████████████████████████████████████████████████

███████ *Id.* (emphasis added).  To Dr. Cox, then, ██████████████████████████████

█████████████████████████████████████████████████████████████

███████ *Id.*

But Thomson Reuters' copyright litigation has nothing to do with how customers (or even ROSS) used public law, like judicial opinions, statutes, and regulations, from Thomson Reuters' public law database.  The copyright lawsuit, as Dr. Cox admitted, ████████████████████████

██████████████████████████████████ Ex. 5, Cox Dep. II 112:3–6 (emphasis added).  The

███████████████████████████████████████████████████████████████████

███████████████████████████ *Id.* at 115:14–19.  These are not just allegations—

13



Ex. 25, van der Heijden Dep. I 115:4–8 (emphasis added). Accordingly, Dr. Cox has no basis to simply assume the copyright lawsuit ▮▮▮▮▮ ▮▮▮▮▮ Dr. Cox acknowledged that, ▮▮▮▮▮

▮▮▮▮▮ Ex. 5, Cox Dep. II 107:24–108:22, 111:23–112:2. Dr. Cox's analysis thus assumes away the effect on ROSS of lawful conduct—Thomson Reuters' copyright litigation—in the but-for world without justification. And, as a result, his analysis necessarily incorporates competitive harm caused by the lawful copyright litigation.

Dr. Cox compounded his error by failing to disaggregate the competitive impact of Thomson Reuters' lawful refusal to deal. Just like the copyright litigation, Dr. Cox opined that Thomson Reuters' ▮▮▮▮▮

▮▮▮▮▮ Ex. 29, Cox Rpt. ¶ 11. Moreover, Dr. Cox's report concedes he believes that ▮▮▮▮▮

▮▮▮▮▮ *Id.* at 31. Yet in the 22 cursory paragraphs explaining and applying his methodologies, Dr. Cox does not ▮▮▮▮▮

▮▮▮▮▮ *See id.* at ¶¶ 80–102.

At bottom, ROSS asserted three antitrust theories. Two were dismissed. Yet Dr. Cox did nothing to disaggregate the effect of ROSS's tying claim from the effect of the dismissed sham-litigation and refusal-to-deal claims and cannot prove antitrust injury causally connected to the tie. That flaw is fatal under *Comcast*. As Areeda and Hovenkamp explain, if "the plaintiff's expert's

14

damages study cannot segregate lawful from unlawful practices, then no damages may be awarded on the basis of that study." ¶ 657b1. Dr. Cox's damages opinions must be excluded as a result. *In re Pharmacy Benefit Managers Antitrust Litig.*, 2017 WL 275398, at \*19–20; *see also Ctr. City Periodontists, P.C. v. Dentsply Int'l, Inc.*, 321 F.R.D. 193, 204 (E.D. Pa. 2017) ("Because this Court dismissed the consumer fraud claims, Hazel's undifferentiated methodology is now irrelevant for purposes of determining damages that are solely 'the result of the wrong.'" (citation omitted)).[3]

## II. Dr. Cox's Analysis Cannot Prove Antitrust Injury and Thus Thomson Reuters Is Entitled to Judgment as a Matter of Law.

Summary judgment is proper where there is "no genuine dispute as to any material fact" and the movant "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 "mandates the entry of summary judgment," if, "after adequate time for discovery and upon motion," a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Here, ROSS has not, and cannot, meet its burden on two related elements to its antitrust counterclaims.

To prevail on an antitrust claim, a plaintiff must prove antitrust injury, that is, injury caused by the defendant's allegedly unlawful conduct, *Brunswick*, 429 U.S. at 489, and measurable damages, *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311 (3d Cir. 2008). Though a plaintiff can make a "reasonable estimate" of the *amount* of damages, a jury may not award damages that are "the product of speculation or guesswork." *MCI*, 708 F.2d at 1161. So when a

---

[3]   *See also Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1057 (8th Cir. 2000) ("Dr. Hall's expert opinion should not have been admitted because it did not incorporate all aspects of the economic reality of the stern drive engine market and because it did not separate lawful from unlawful conduct."); *Kentucky v. Marathon Petroleum Co. LP*, 464 F. Supp. 3d 880, 894–95 (W.D. Ky. 2020) (excluding antitrust damages expert who "failed to disaggregate the portion of his ultimate damages figure that could be attributable to any of the Defendants' procompetitive conduct").

plaintiff's "injuries were caused partly by unlawful conduct and partly by lawful conduct," the plaintiff "must provide the jury with a reasonable basis for identifying and measuring those damages attributable to the former."  Areeda & Hovenkamp ¶ 340b.

The Third Circuit's analysis in *Coleman Motor* is instructive.  There, the plaintiff, a former independent Dodge dealership, accused Chrysler of violating the antitrust laws through the way in which it operated its factory dealerships.  *Coleman Motor*, 525 F.2d at 1340.  The plaintiff presented testimony from two experts in support of its claimed damages, and the jury awarded damages based on their analysis.  *Id.* at 1351.  The Third Circuit reversed the jury verdict.  The court explained that the projections that served as the "foundation upon which all of plaintiff's general damage evidence" represented not "only the sales which plaintiff would have made but for the allegedly unlawful manner in which Chrysler operated its factory dealerships," but also "sales which plaintiff would have made but for the mere existence of the factory dealerships."  *Id.* at 1352.  Because the experts' "damages figures ... may be substantially attributable to lawful competition," the court could not "permit a jury to speculate concerning the amount of losses resulting from unlawful, as opposed to lawful, competition."  *Id.* at 1353.  The court thus concluded that the jury could not have "determined plaintiff's damages by just and reasonable inference from the evidence presented" and vacated the verdict.  *Id.*[4]

---

[4]    *Concord Boat*, 207 F.3d at 1057–58, 1063 (reversing jury verdict and granting defendant judgment as a matter of law "because of the improper expert testimony and because the other evidence presented by the boat builders was insufficient to demonstrate antitrust injury, causation, and damage"); *MCI*, 708 F.2d at 1163 (reversing jury verdict where plaintiff's expert gave the jury "no way to adjust the amount of damages to reflect lawful from unlawful competition"); *Marathon Petroleum Co.*, 464 F. Supp. 3d at 897 (granting summary judgment after excluding plaintiff's sole expert because, "without [the expert's] analysis, no evidence remains to raise a material issue of fact as to causation" and antitrust injury).

Dr. Cox's analysis is ROSS's *sole* evidence on antitrust injury and damages. But, as discussed above, Dr. Cox's failed to disaggregate the effect of lawful conduct (the dismissed antitrust theories) from the effect of allegedly unlawful conduct (the tying claim). Thus, whether or not Dr. Cox is formally excluded under *Daubert*, his analysis is incapable of proving antitrust injury (whether ROSS was harmed *at all* by the alleged tie) or damages—and ROSS cannot meet essential elements of its claim. And without Dr. Cox, ROSS has no evidence with which it can prove that the alleged tie—as opposed to the copyright litigation, refusal to deal, or any other lawful conduct—caused it damages. ROSS's witnesses identified countless reasons ROSS failed, including the copyright litigation. *See supra* at 5 (citing testimony about the reasons for ROSS's failure).[5] As for its damages, ROSS stated in its Rule 26 disclosures that a "computation of damages will be provided when available." Ex. 46 at 8–9. That was Dr. Cox. ROSS presented no other "computation of damages" and has no other evidence that it can use to provide a reasonable estimate of its alleged lost profits: "Expert testimony is necessary to establish damages in an antitrust case." *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 299 (3d Cir. 2012).

---

[5]   *See also* Ex. 8, D'Angelo Dep. 57:11–22



Ex. 26, van der Heijden
Dep. II 254:16–255:9 (testifying that
); Ex. 3, Bond (Comcast
Ventures, ROSS Investor) Dep. 50:10–51:9

Without evidence of antitrust injury or damages, ROSS cannot meet its burden of proof—at summary judgment or trial—and Thomson Reuters is entitled to judgment as a matter of law. *Mercedes-Benz USA, Inc. v. Coast Auto. Grp., Ltd.*, 362 F. App'x 332, 335 (3d Cir. 2010) (affirming exclusion of damages experts and grant of summary judgment on antitrust counterclaims because "Coast had no evidence of damages and, therefore, the counterclaims should not proceed to trial"); *Alberta Gas Chemicals Ltd. v. E.I. Du Pont de Nemours & Co.*, 826 F.2d 1235, 1247 (3d Cir. 1987) (affirming grant of summary judgment "because plaintiff has not presented evidence of antitrust injury").

## **CONCLUSION**

Because Dr. Cox failed to disaggregate harm caused by Thomson Reuters' copyright lawsuit and refusal to deal from harm caused by the alleged tie, his analysis does not fit the case and should be excluded. And because Dr. Cox's analysis cannot prove antitrust injury or damages caused by the alleged tie, ROSS cannot meet an essential element of its tying claim. The Court should thus grant judgment in Thomson Reuters' favor.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

_____

Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com

*Attorneys for Plaintiffs and Counterdefendants Thomson Reuters Enterprise Center GmbH and West Publishing Corporation*

OF COUNSEL:

Daniel E. Laytin, P.C.
Christa C. Cottrell, P.C.
Cameron Ginder
Max A. Samels
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL  60654
(312) 862-2000

August 31, 2023

18

## CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on August 31, 2023, upon the following in the manner indicated:

| | |
|---|---|
| David E. Moore, Esquire<br>Bindu Palapura, Esquire<br>Andrew L. Brown, Esquire<br>POTTER ANDERSON & CORROON LLP<br>Hercules Plaza, 6th Floor<br>1313 North Market Street<br>Wilmington, DE  19801<br>*Attorneys for Defendant and Counterclaimant* | *VIA ELECTRONIC MAIL* |
| Mark A. Klapow, Esquire<br>Lisa Kimmel, Esquire<br>Crinesha B. Berry, Esquire<br>Matthew J. McBurney, Esquire<br>CROWELL & MORING LLP<br>1001 Pennsylvania Avenue NW<br>Washington, DC  20004<br>*Attorneys for Defendant and Counterclaimant* | *VIA ELECTRONIC MAIL* |
| Gabriel M. Ramsey, Esquire<br>Jacob Canter, Esquire<br>Warrington Parker, Esquire<br>Margaux Poueymirou, Esquire<br>Anna Z. Saber, Esquire<br>Beatrice B. Nguyen, Esquire<br>CROWELL & MORING LLP<br>3 Embarcadero Center, 26th Floor<br>San Francisco, CA  94111<br>*Attorneys for Defendant and Counterclaimant* | *VIA ELECTRONIC MAIL* |

Shira Liu, Esquire  
CROWELL & MORING LLP  
3 Park Plaza, 20th Floor  
Irvine, CA  92614  
*Attorneys for Defendant and Counterclaimant*

*VIA ELECTRONIC MAIL*

*/s/ Michael J. Flynn*

_____

Michael J. Flynn (#5333)