IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

THOMSON REUTERS ENTERPRISE ) 
CENTRE GMBH and WEST PUBLISHING )
CORPORATION, )
 )
       Plaintiffs and )
       Counterdefendants, )
 )
  v. )   C.A. No. 20-613 (SB)
 )
ROSS INTELLIGENCE INC., )   REDACTED – PUBLIC VERSION
 )
       Defendant and )
       Counterclaimant. )

**THOMSON REUTERS' OPENING BRIEF IN SUPPORT OF ITS
MOTION (NO. 6) TO EXCLUDE DR. JAMES RATLIFF AND
<u>DR. GILLIAN HADFIELD</u>**

                           MORRIS, NICHOLS, ARSHT & TUNNELL LLP
                           Jack B. Blumenfeld (#1014)
                           Michael J. Flynn (#5333)
                           1201 North Market Street
                           P.O. Box 1347
                           Wilmington, DE  19899
OF COUNSEL:                (302) 658-9200
                           jblumenfeld@morrisnichols.com
Daniel E. Laytin, P.C.        mflynn@morrisnichols.com
Christa C. Cottrell, P.C.
Cameron Ginder             *Attorneys for Plaintiffs and Counterdefendants*
Max A. Samels              *Thomson Reuters Enterprise Center GmbH and West*
KIRKLAND & ELLIS LLP     *Publishing Corporation*
300 North LaSalle
Chicago, IL  60654
(312) 862-2000

Original filing date: August 31, 2023
Redacted filing date: September 14, 2023

## TABLE OF CONTENTS

Page

SUMMARY OF ARGUMENT ................................................................................... 1

STATEMENT OF FACTS ........................................................................................ 3

ARGUMENT ........................................................................................................... 5

I.     Dr. Ratliff's and Dr. Hadfield's Opinions are not Based on a Reliable Methodology. ........................................................................................................ 5

     A.     Dr. Hadfield and Dr. Ratliff Have No Methodology to Assess the Comprehensiveness of Westlaw's Public Law Database. ...................................... 5

     B.     Dr. Ratliff's Market-Power Opinions Are Not Grounded in Economics or Any Discernible Methodology. ............................................................................. 8

     C.     Dr. Ratliff Lacks Any Methodology Whatsoever to Assess Consumer Demand. ................................................................................................................ 10

     D.     Dr. Ratliff and Dr. Hadfield Rely on No Methodology Whatsoever to Opine That Westlaw's Search Technology "Fell Behind." ................................. 13

CONCLUSION ...................................................................................................... 14

<u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*AFMS LLC v. UPS Co.*,
  2014 WL 12515335 (C.D. Cal. Feb. 5, 2014) ........................................................................9

*AngioDynamics, Inc. v. C.R. Bard, Inc.*,
  537 F. Supp. 3d 273 (N.D.N.Y. 2021) ........................................................................... *passim*

*Childers v. Trustees of the Univ. of Penn.*,
  2016 WL 1086669 (E.D. Pa. Mar. 21, 2016) ......................................................................8, 14

*Eastman Kodak Co. v. Image Tech. Servs., Inc.*,
  504 U.S. 451 (1992) ..............................................................................................................13

*Elcock v. Kmart Corp.*,
  233 F.3d 734 (3d Cir. 2000) ..................................................................................................12

*Schneider ex rel. Est. of Schneider v. Fried*,
  320 F.3d 396 (3d Cir. 2003) ..................................................................................................13

*Kuhar v. Petzl Co.*,
  2022 WL 1101580 (3d Cir. Apr. 13, 2022) ................................................................... *passim*

*Ky. Speedway, LLC v. Nat'l Ass'n of Stock Car Auto Racing, Inc.*,
  2008 WL 113987 (E.D. Ky. Jan. 7, 2008) .........................................................................9, 10

*Oddi v. Ford Motor Co.*,
  234 F.3d 136 (3d Cir. 2000) ...........................................................................................5, 12, 14

*Repa v. Napierkowski*,
  2022 WL 1522360 (W.D. Pa. May 13, 2022) .................................................................5, 7, 10

*UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*,
  949 F.3d 825 (3d Cir. 2020) ...............................................................................................5, 13

*United States v. Fleet Mgmt. Ltd.*,
  2008 WL 1924250 (E.D. Pa. Apr. 29, 2008) .........................................................................12

*United States v. Schiff*,
  602 F.3d 152 (3d Cir. 2010) ..................................................................................................13

*Winn-Dixie Stores, Inc. v. E. Mushroom Mktg. Coop., Inc.*,
  2023 WL 5521221 (3d Cir. Aug. 28, 2023) .............................................................................9

**Rules**

Fed. R. of Evid. 702 ................................................................................................................ *passim*

## SUMMARY OF ARGUMENT

ROSS's claims cannot survive summary judgment.  As explained in each of Thomson Reuters' accompanying motions, that is true regardless of the admissibility of its experts' opinions.

Separately, the expert opinions of two of ROSS's hired economists—Dr. James Ratliff and Dr. Gillian Hadfield—are inadmissible because both jump to sweeping conclusions without the supporting analysis required by Federal Rule of Evidence 702.  Despite being Ph.D. economists, Dr. Ratliff and Dr. Hadfield do no quantitative work.  Nor have they conducted even the most basic study of the subjects that they wish to opine on.  Instead, Dr. Ratliff and Dr. Hadfield do "little more than summarize record evidence," which is not a permissible basis for an expert opinion under Rule 702.  *AngioDynamics, Inc. v. C.R. Bard, Inc.*, 537 F. Supp. 3d 273, 333 (N.D.N.Y. 2021) (excluding expert testimony in antitrust tying case).  Thomson Reuters thus moves to exclude Dr. Ratliff's and Dr. Hadfield's opinions on four topics where they have failed to employ a reliable methodology.

*First*, Dr. Ratliff and Dr. Hadfield both opine that ███████████████████ ████████████████████  But they have failed to do *any actual comparison* of Westlaw's legal database against its competitors'.  Neither could *name a single case* uniquely available on Westlaw.  In fact, neither could dispute Lexis's statements that it has 14% *more* federal cases than Westlaw.  Rather, both experts merely parroted marketing statements about Westlaw's broad database of material.  Those statements do not require expert interpretation, nor are they sufficient to establish that Westlaw is "unsurpassedly comprehensive" compared to, say, Lexis.  Put simply, neither expert has put in the work to offer the expert opinion that Westlaw's database is the "most comprehensive"—and thus *Daubert* mandates exclusion of those opinions.

*Second*, Dr. Ratliff opines that ████████████████████████████ ███████████████████████████  But, again, Dr. Ratliff

1

fails to do even the most basic analysis necessary to define these markets.  He does not mention, let alone analyze, what products are substitutes or compete in this space.  Even worse, he conflates markets, claiming that Thomson Reuters has market power because of its success in selling its **integrated** legal research platform.  But that says nothing, of course, about whether Thomson Reuters has market power in supposedly distinct relevant markets for a standalone search tool or public law database.

  **Third**, Dr. Ratliff opines that ███████████████████████████████████████████ ████████████████████████████████████████████████████████████ He explicitly admitted that he did no **consumer surveys**, no **interview of consumers**, or any other demand assessment.  In fact, Dr. Ratliff admitted he could not identify a single consumer who ever **asked to purchase** a public law database separately.  There is no statistical analysis, no regression model, no data assessment whatsoever, either.  Rather, Dr. Ratliff's separate-demand opinion boils down to his own *ipse dixit* assertion that there is "inherently" separate demand—and that is not sufficient as a matter of law.

  **Fourth**, Dr. Ratliff and Dr. Hadfield seek to opine that ██████████████████████ ███████████████████████████████████ Remarkably, both admitted to never having used Westlaw or its competitors' AI technology to prepare that opinion.  Rather, they summarize a series of cherry-picked documents to offer a narrative of Westlaw's search technology that matches ROSS's theory of the case.  This is not a permissible use of expert testimony, and these opinions too fail to satisfy Rule 702.

  The errors are many, but the bottom line is the same:  Dr. Ratliff and Dr. Hadfield offer sweeping opinions without any methodology to support their assertions.  Accordingly, Dr. Ratliff's and Dr. Hadfield's above-listed opinions should be excluded as unreliable under Rule 702.

## STATEMENT OF FACTS

### A.     Dr. James Ratliff

Dr. Ratliff is an "antitrust economist" and Executive Vice President at the "consulting firm" Compass Lexecon. Ex. 33, Ratliff Rpt. ¶¶ 1, 6; Ex. A, Ratliff Dep. Ex. 16 (Ratliff's personal website). Dr. Ratliff has worked as a professional litigation consultant since 1998, primarily in a support role. Ex. 23, Ratliff Dep. 9:5–15. Dr. Ratliff is not a lawyer and is ██████████ ████████████████████████████████████ *Id.* at 11:4–10. In fact, Dr. Ratliff testified that ████████████████████████████████████ ████████████████████ *Id.* at 33:12–24, 35:22–25.

ROSS hired Dr. Ratliff to testify on ████████████████████████ ██████████████████████████ Ex. 33, Ratliff Rpt. ¶ 10. As relevant to this motion, Dr. Ratliff offered opinions that ████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████ *Id.* at ¶¶ 18, 21–75.

Dr. Ratliff admitted at his deposition that he performed no ██████████████████████ Ex. 23, Ratliff Dep. 94:23–95:2, ████████████████████████████ *id.* at 228:5–9, and otherwise ████████████████████████████████ ████████████████████████████████████████ ██████████████ *id.* at 91:22–92:6, 144:5–17. Instead, when asked about his methods in this case, ████████████████████████████ *See, e.g., id.* at 54:7–15 (emphasis added).[1]

---

[1]     *Id.* ████████████████████████████████████████ ████████████████████████████████████████

**B.     Dr. Gillian Hadfield**

Dr. Hadfield is an economist and law professor at the University of Toronto.  Ex. 31, Hadfield Rpt. ¶ 1.  Dr. Hadfield is a longtime friend and professional associate of ROSS's Co-Founder and CEO Andrew Arruda.  For example, ████████████████████████████████████

████████████████████████████     Ex. 9, Hadfield Dep. 353:21–355:15.  ████████████

████████████████████████████████████████████████████████████     *Id.*

at 320:12–321:11.  And Dr. Hadfield and Mr. Arruda lavish praise on each other on Twitter, as shown in Exhibit B.  Ex. B, Hadfield Dep. Ex. 21 at 5, 14.

In the instant case, ROSS hired Dr. Hadfield to opine on ███████████████████

████████████████████████████████████████████████████████████████

████████████████████     Ex. 31, Hadfield Rpt. ¶ 18.  As relevant to this motion, Dr. Hadfield

opined that ████████████████████████████████████████████████████████████

*id.* at ¶ 23, and (2) ████████████████████████████████████████████     *id.* at

¶ 28.

Like Dr. Ratliff, Dr. Hadfield made no attempt to apply her economic expertise to quantify the comprehensiveness of Westlaw's public law database, the quality of Westlaw's search technology, or any other aspect of her report.  Dr. Hadfield did not even log in to Westlaw to prepare her opinions in this case.  Ex. 9, Hadfield Dep. 49:6–22 ████████████████████

████████████████.  Rather, Dr. Hadfield testified that her entire ████████████████

---

████████████████████████     ; *id.* at 118:3–13

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████      *Id.* at 132:17–133:4.[2]

## **ARGUMENT**

**I.     Dr. Ratliff's and Dr. Hadfield's Opinions are not Based on a Reliable Methodology.**

Under Federal Rule of Evidence 702, an expert's opinions must be "reliable," meaning that they are "based on the methods and procedures of science rather than on subjective belief or unsupported speculation." *Kuhar v. Petzl Co.*, 2022 WL 1101580, at *7 (3d Cir. Apr. 13, 2022) (citation omitted); Fed. R. of Evid. 702(c). An expert "may not testify" if "he has engaged in no expert analysis or methodology." *Repa v. Napierkowski*, 2022 WL 1522360, at *4 (W.D. Pa. May 13, 2022). An expert's pronouncements based on their own "*ipse dixit* [do] not withstand *Daubert*'s scrutiny," and an expert may not offer an opinion based on no "methodology beyond his own intuition." *Oddi v. Ford Motor Co.*, 234 F.3d 136, 158 (3d Cir. 2000). Rather, the party offering an expert must show that its expert's methodology rests on "good grounds" meaning that it "consists of a testable hypothesis," "has been subject to peer review," has a "known or potential error rate," or has other indicia of scientific reliability. *Kuhar*, 2022 WL 1101580, at *7 (listing relevant factors). Beyond reliability, an expert's opinion must also "fit the facts" of the case at hand so that it "will help" the jury "to determine a fact in issue." *UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*, 949 F.3d 825, 835 (3d Cir. 2020); Fed. R. Evid. 702(a).

**A.     Dr. Hadfield and Dr. Ratliff Have No Methodology to Assess the Comprehensiveness of Westlaw's Public Law Database.**

Dr. Hadfield and Dr. Ratliff both seek to opine that ████████████████████████████

████████████████████████████      Ex. 31, Hadfield Rpt. § IV.D; Ex. 33, Ratliff Rpt. ¶ 75

---

[2]      *Id* ████████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████████████████████████

█████████████████████████ But neither expert has done ***any work whatsoever*** to study whether

Westlaw's public law database is more, less, or just as comprehensive as any of its competitors.

When asked to justify their comprehensiveness opinions, both experts testified that:

- ***They had done zero "systematic" comparisons of Westlaw's public law database to its competitors.*** ████████████████████ Ex. 9, Hadfield Dep. 59:23–60:4; *see also id.* at 35:20–36:6
  ████████████████████████████████████ Dr. Ratliff's report does not disclose
  any systematic assessment either.  He admitted █████████████████████████████
  ████████ Ex. 23, Ratliff Dep. 53:8–19, 54:7–15.

- ***They could not name*** █████████████████████████████████████████████
  ████████ Ex. 23, Ratliff Dep. 58:8–13. ████████████████████████████████
  ██████████████████████████████████████ Ex. 9, Hadfield Dep.
  49:2–10. ███████ Ex. 23, Ratliff Dep. 52:12–20.

- ***They could not dispute that Lexis had <u>more</u> case law than Westlaw.***  Both Dr. Ratliff and
  Dr. Hadfield, when faced with a record document showing that ████████████████
  ██████████████████████████ Ex. 95, TRCC-01727279; Ex. 9, Hadfield
  Dep at 56:5–14; Ex. 23, Ratliff Dep. 84:13–23.  Likewise, when taken to a Lexis website that
  included a map advertising how many more cases it has as compared to Westlaw by state,
  ██████████████████████████████████████████████████████████████
  ████████████████ Ex. 9, Hadfield Dep. 70:7–72:23.

ROSS's experts certainly could have conducted some kind of analysis—even a sampling—

to determine Westlaw's breadth as compared to competitors.  Dr. Hadfield admitted as much,

██████████████████████████████████████████████████████████████

██████████████████████ *Id.* at 60:5–61:1.  Dr. Hadfield and Dr. Ratliff could have

analyzed the total number of cases in Westlaw's databases and its competitors.  They could have

analyzed whether one platform or another had more of a specific subset of cases, like unpublished

federal decisions.  They could even have used a random sample of cases to assess relative coverage,

as at least that would have involved a "testable hypothesis."  *Kuhar*, 2022 WL 1101580, at *7.

But Dr. Hadfield and Dr. Ratliff did none of these things.  Simply put, Dr. Hadfield and Dr. Ratliff have engaged in "no expert analysis" whatsoever to determine that Westlaw had the "most comprehensive" public law database.  *Repa*, 2022 WL 1522360, at *4.

Instead of a scientific methodology, Dr. Hadfield's and Dr. Ratliff's only support for their opinion that Westlaw's database is the "most comprehensive" amounts to "little more than summariz[ing] [their favorite] record evidence."  *AngioDynamics*, 537 F. Supp. 3d at 330.  Dr. Ratliff's basis for his comprehensiveness opinion consists *solely* of summarizing documents in the record.   Ex. 33, Ratliff Rpt. ¶¶ 76–147.   When asked about this methodology at his deposition, Dr. Ratliff testified ▇▇▇▇▇▇▇▇▇▇▇▇ Ex. 23, Ratliff Dep. 54:7–15 (emphasis added).[3]  He selectively relies on Westlaw marketing materials by giving full credit to statements about  Westlaw's ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ while  completely  disregarding ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇ Ex. 100, TRCC-03922680 ▇▇▇▇▇▇▇ cited at Ex. 33, Ratliff Rpt. ¶ 78 nn. 57–59).

Dr. Hadfield's "most comprehensive" opinions are likewise a series of strung-together summaries of record documents without any analytic framework or systematic analysis.  Indeed, she testified that her methodology ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Ex. 31, Hadfield Rpt. ¶¶ 60–68; Ex. 9, Hadfield Dep. 127:7–128:11.[4]  When, as here, an expert's

---

[3]  *Id.* ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

[4]  When asked how she ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Ex. 9, Hadfield Dep. 133:14–134:18 (emphasis added).

"methodology" reduces to "shifting through evidence to find passages that support the Plaintiff's theory of the case," those opinions do "not meet Rule 702's requirement of reliability." *Childers v. Trustees of the Univ. of Penn.*, 2016 WL 1086669, at \*6 (E.D. Pa. Mar. 21, 2016) (excluding testimony).

### B. Dr. Ratliff's Market-Power Opinions Are Not Grounded in Economics or Any Discernible Methodology.

Dr. Ratliff spends more than half of his report arguing that Thomson Reuters has "market power" in the "relevant markets" for "collections of public law" and "legal-search tools." Ex. 33, Ratliff Rpt ¶¶ 59–175. But he neither offers nor applies any methodology to support his opinions on either topic.

*No methodology for defining relevant markets.* Dr. Ratliff's entire opinion that a

█████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████

████████████████████████ *Id.* at ¶¶ 24–26. Dr. Ratliff has equally little support for ████

████████████████████████████████████████ *Id.* at ¶¶ 27–32. He does not identify who besides Thomson Reuters participates in each market. He does not analyze whether any products are interchangeable for Thomson Reuters' offerings. And he does not assess the "cross-elasticity of demand" between Thomson Reuters' products and anyone else's. *See Ky. Speedway, LLC v. Nat'l Ass'n of Stock Car Auto Racing, Inc.*, 2008 WL 113987, at \*3–4 (E.D. Ky. Jan. 7, 2008) (excluding expert's "definition of the relevant market(s)" because he did not analyze the "critical factor[s]" of cross-price elasticity, but rather "used his own" made-up test that did "not meet the *Daubert* criteria"); *AFMS LLC v. UPS Co.*, 2014 WL 12515335, at \*7 (C.D. Cal.

---

████████████████████████████████████████████████████████████████████

████████████████████████████████ *Id.* at 134:19–135:6 (emphasis added).

Feb. 5, 2014) ("The vagueness of [an expert's] methodology is particularly troublesome in the antitrust arena where economic models and analysis are required."). Dr. Ratliff applied no economic or other methodology to define his "relevant markets," and these options are not the sort of "reliable" analysis required by Rule 702.

***No methodology for assessing whether Thomson Reuters has market power.*** Dr. Ratliff's analysis of supposed "market power" is equally unmoored. Dr. Ratliff opined that Thomson Reuters, through its Westlaw platform, i ████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████ *Kuhar*, 2022 WL 1101580, at *7. The only assessment of "market share" in Dr. Ratliff's reports are ████████████████████████████████████████

████████████████████ Ex. 33, Ratliff Rpt. ¶¶ 164–65. Market share in the ***legal-research-platform*** market does not equate with market share in a standalone ***public-law-database*** market—nor does Dr. Ratliff provide any methodology to make that leap.

On top of all of these errors, Dr. Ratliff makes no effort to address the "host of other factors" beyond market share that go into determining if a company has "market power," like the "level of competition among the" competitors in the market. *Winn-Dixie Stores, Inc. v. E. Mushroom Mktg. Coop., Inc.*, 2023 WL 5521221, at *9 (3d Cir. Aug. 28, 2023). He does not even define the full list of competitors in his report—from Casetext to Bloomberg—let alone analyze competition and interchangeability. Instead, the bulk of Dr. Ratliff's "market power" opinions again consist of ████████████████████████████████████████████████████

████████████████████████████████████████████████████████ Ex. 23, Ratliff Dep. 11:4–10.

In sum, Dr. Ratliff's training as an economist does not give him carte blanche to offer any opinion under the heading of "market power."  When his opinions rely on "no specialized economic analysis that would assist a fact-finder in interpreting the record evidence he relies on," they are not "expert opinions" and must be excluded.  *AngioDynamics*, 537 F. Supp. 3d at 334 (excluding opinion of economist in complex medical industry antitrust tying case); *Ky. Speedway*, 2008 WL 113987, at *3.

**C.      Dr. Ratliff Lacks Any Methodology Whatsoever to Assess Consumer Demand.**

Dr. Ratliff offers "no expert analysis" to back up his sweeping opinion that "separate demand" exists for a public law database and legal research tool.  *Repa*, 2022 WL 1522360, at *4. Dr. Ratliff admits that he ***never*** ████████████████████████████████ to determine the nature of their demand, he ***did not*** ████████ any lawyers or law firm IT personnel, and he ***identified zero*** ████████████████ that any legal researcher has ever even asked to purchase a public law database and legal search tool separately.  Indeed, at his deposition, Dr. Ratliff admitted he did not do any of the following in forming his "separate demand" opinion:

### James Ratliff:  Methodology

| | Yes | No |
|---|---|---|
| Conduct a **comprehensive survey** of consumers to assess demand for a public law API and separate search tool | | X |
| Interview any **lawyers** to determine interest in public law database | | X |
| Interview a **non-defendant legal research provider** to assess whether they believe there is demand for a public law database | | X |
| Interview any **law firm IT department** to determine interest in public law database | | X |
| Conduct an **overcharge analysis** to determine "but for" pricing | | X |
| Run a **regression** to analyze pricing in the but for world | | X |
| Identify any **record evidence** of a consumer asking to purchase a public law database | | X |
| Identify any **record evidence** of a consumer asking to purchase a free standing search tool | | X |
| Identify any **record evidence** that ROSS tried to sell a free-standing search tool | | X |

Ex. 39, Ratliff Dep. Ex. 3A; Ex. 23, Ratliff Dep. 16:9–21:34 (Dr. Ratliff admitting that he did not do any of the analysis listed in Dep. Exhibit 3A).[5]  Dr. Ratliff did none of these possible analyses, nor any other kind of systematic analysis of consumer demand that is "testable," "peer

---

[5]   *E.g.*, *id.* at 20:14–23 (Q. ██████████████████████

██████████████████████████████████████████

██████████████████████████████████

review[ed]," or has a "known or potential error rate." *Kuhar*, 2022 WL 1101580, at *7. He did

no empirical analysis of consumer demand at all; nor did he analyze or attempt to gauge demand

via surveys or interviews. When pushed at his deposition, Dr. Ratliff conceded that he was ███

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

██████████ Ex. 23, Ratliff Dep. 143:15–23; *contrast* Areeda & Hovenkamp, Antitrust Law ¶ 1744d

(explaining that "if less than 20 percent of the tying item is sold unbundled in the competitive

market analogue, then the items are a single product"). Dr. Ratliff's testimony makes clear that he

has no methodology, "much less any intellectually rigorous analysis," to back up his separate-

products opinion—at most, it is a hunch. *United States v. Fleet Mgmt. Ltd.*, 2008 WL 1924250, at

*6 (E.D. Pa. Apr. 29, 2008).

Instead of any actual analysis of consumer demand, Dr. Ratliff impermissibly relies on his

own "*ipse dixit*" and a scattering of irrelevant documents. *Oddi*, 234 F.3d at 158. Dr. Ratliff

asserts that there is ███████████████████████████████████████████████████████

████████████████████████████████████ Ex. 33, Ratliff Rpt. ¶¶ 34, 40 (emphasis added).

Hypothetical technological separability does not equate with ***separate demand*** for the products,

but that is exactly the logical leap that Dr. Ratliff makes. *Id.* With no assessment of demand and

only a speculative, uncertain "theory" that reduces to his own say-so, Dr. Ratliff's opinion "does

not withstand *Daubert*'s scrutiny" and must be excluded. *Oddi*, 234 F.3d at 158; *see also Elcock*

*v. Kmart Corp.*, 233 F.3d 734, 747 (3d Cir. 2000) (explaining that testimony is unreliable when

the court is left "without an inkling as to the standards controlling [the expert's] method").

Furthermore, Dr. Ratliff's opinion does not "fit" the legal test for separate products as

required under *Daubert* because it does not address the relevant issue of whether there is "sufficient

*consumer* demand" for separate products. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 462–63 (1992) (emphasis added); *UGI Sunbury*, 949 F.3d at 835. Rule 702's "fit" requirement means that "the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact" with the "pertinent inquiry" before them. *Schneider ex rel. Est. of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003). Opinions on "separate demand" based on demand from *competitors* like ROSS do not satisfy this requirement. *See* Ex. 33, Ratliff Rpt. ¶¶ 46–51. Dr. Ratliff's failure to conduct any analysis of consumer demand dooms his opinion under *Daubert* for this reason as well. *United States v. Schiff*, 602 F.3d 152, 173 (3d Cir. 2010) (affirming expert exclusion where there was no fit between expert's analysis and question for jury to decide).

In sum, Dr. Ratliff's separate-demand opinions rely on *ipse dixit* unsupported by any methodology or analysis of consumer demand. This approach is neither "reliable" nor "fits" the case and fails under Rule 702. *Kuhar*, 2022 WL 1101580, at *7.

> **D. Dr. Ratliff and Dr. Hadfield Rely on No Methodology Whatsoever to Opine That Westlaw's Search Technology "Fell Behind."**

Finally, Dr. Ratliff and Dr. Hadfield each seek to offer the opinion that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 33, Ratliff Rpt. ¶¶ 209–30; Ex. 31, Hadfield Rpt. ¶¶ 125–42. But neither provide any methodological approach to reach this conclusion. Their reports contain *zero* systematic comparison of Westlaw's search technology to any other company's; *zero* use of any accepted industry or academic benchmark to measure Westlaw's search technology; and *zero* other analysis to back up these audacious claims. *Id.*

Once again, in lieu of actual expert analysis, Dr. Ratliff and Dr. Hadfield offer their own unprincipled "interpretation of the record evidence" and raise "arguments [ROSS's] lawyers can readily make without the aid of expert analysis." *AngioDynamics*, 537 F. Supp. 3d at 334. The

documents they choose to focus on are not even facially related to the quality of Westlaw's search technology that they wish to opine on.  For example, Dr. Ratliff devotes a whole subsection to summarizing a study that compared ██████████████████████ to ████████████ ██████████ Ex. 33, Ratliff Rpt. ¶ 228 (citing Ex. 93, TRCC-00699600) (emphasis added).  This study did not analyze Westlaw whatsoever, nor did it analyze ROSS's search technology, but Dr. Ratliff nevertheless relied on it at length.  *See* Ex. 5, Cox Dep. II 25:9–13 (admitting ████ ██████████████████████████████████████  What's more, a jury does not need Dr. Ratliff to interpret marketing studies or other record documents; that is precisely the unnecessary expert gloss that *Daubert* bars.  *See Childers*, 2016 WL 1086669, at *6.

In sum, Dr. Ratliff's and Dr. Hadfield's opinions on the innovation behind Westlaw's search technology—like the other opinions identified in their reports—are based on no analysis, no comparisons to a meaningful benchmark, and, at bottom, no "testable" "methods and procedures of science" "beyond [their] own intuition."  *Kuhar*, 2022 WL 1101580, at *7; *Oddi*, 234 F.3d at 158.  They thus fail to meet Rule 702's "reliability" standard and should be excluded.

## **CONCLUSION**

For these reasons, the Court should exclude the above-listed expert opinions of Dr. James Ratliff and Dr. Gillian Hadfield.  *AngioDynamics*, 537 F. Supp. 3d at 334.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

_____

Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com

*Attorneys for Plaintiffs and Counterdefendants*
*Thomson Reuters Enterprise Center GmbH and West*
*Publishing Corporation*

OF COUNSEL:

Daniel E. Laytin, P.C.
Christa C. Cottrell, P.C.
Cameron Ginder
Max A. Samels
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL  60654
(312) 862-2000

August 31, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on August 31, 2023, upon the following in the manner indicated:

| | |
|---|---|
| David E. Moore, Esquire<br>Bindu Palapura, Esquire<br>Andrew L. Brown, Esquire<br>POTTER ANDERSON & CORROON LLP<br>Hercules Plaza, 6th Floor<br>1313 North Market Street<br>Wilmington, DE  19801<br>*Attorneys for Defendant and Counterclaimant* | *VIA ELECTRONIC MAIL* |
| Mark A. Klapow, Esquire<br>Lisa Kimmel, Esquire<br>Crinesha B. Berry, Esquire<br>Matthew J. McBurney, Esquire<br>CROWELL & MORING LLP<br>1001 Pennsylvania Avenue NW<br>Washington, DC  20004<br>*Attorneys for Defendant and Counterclaimant* | *VIA ELECTRONIC MAIL* |
| Gabriel M. Ramsey, Esquire<br>Jacob Canter, Esquire<br>Warrington Parker, Esquire<br>Margaux Poueymirou, Esquire<br>Anna Z. Saber, Esquire<br>Beatrice B. Nguyen, Esquire<br>CROWELL & MORING LLP<br>3 Embarcadero Center, 26th Floor<br>San Francisco, CA  94111<br>*Attorneys for Defendant and Counterclaimant* | *VIA ELECTRONIC MAIL* |

Shira Liu, Esquire
CROWELL & MORING LLP
3 Park Plaza, 20th Floor
Irvine, CA  92614
*Attorneys for Defendant and Counterclaimant*

*VIA ELECTRONIC MAIL*

*/s/ Michael J. Flynn*

_____

Michael J. Flynn (#5333)

# EXHIBIT A

# *exciting* The World of Jim Ratliff



RS 07-28-2023
**J. Ratliff**
**16**

---

## Tour Jim's world

Home
Community
Academic/professional

[Search field]

[ Search Jim's world! ]

Powered by Google™



⊕ Click to enlarge

The Cleveland Cascade, circa 1923, on the shores of Lake Merritt

---

*On this page...*
Fool on a hill
Somewhat geeky/wonky
Singin' the Blue State Blues
Miscellany

### Fool on a hill

Hi! I'm Jim Ratliff. Welcome to my cyberhome.

Nonvirtually, I live on Haddon Hill, above Lake Merritt, in the wonderful city of Oakland, California — accompanied by my sweetie and wife, Eren, and our ~~two~~ *three!* wonderful kitties, Eco and Bentley — and, now, Wild Kitty!

My community, the Greater Grand Lake district, is vibrant and inspiring and filled with progressive, concerned, and active folk who individually and collectively have become very dear to me.

Oakland has much that's great, has the potential to become even greater, but is also faced by major challenges and threats. Protecting and encouraging the good, while staving off the bad, is my highest priority these days.

And my highest such highest priority is restoring the Cleveland Cascade!

More on me and the community...

### Somewhat geeky/wonky

A life-long academic slant steered my professional and career course.

After a physics and math double major at Oberlin, I was a physicist at the University of Texas: Austin, then an economics graduate student at UC Berkeley, followed by a professor at the University of Arizona in Tucson. Now I'm an antitrust economist in a consulting firm in San Francisco.

More on my academic/professional background & history...

### Singin' the Blue State Blues

In the 80s, I took to the streets to protest Ronald Reagan's immoral assault on the poor and his illegal war against the Sandinistas.

In the early 90s, I returned to protest Daddy George Bush's testosterone-fueled diversionary slaughter of Iraqi civilians and conscripts in Gulf War I.

Now in the 21st Century, it has once again been sadly necessary to return to the streets, this time to express outrage against and shame at the younger-and-dimmer Bush's outrageous, illegal, and unprovoked war against Iraq.

The 2004 election was blow-from-a-hammer disheartening. (How much of a fuck-up does a guy need to be before he gets fired?) Gone was the rationalization that W's first term arose only because he had hid his true colors. Now anyone who cared to know did know what they'd be getting, and the voters chose Bush. It's clear that there's a lot about America and Americans that I don't (or fear to) understand. My response has been to shift my focus more towards Oakland, where I know I can make a difference.

### Miscellany

What else?

I've been a principled, steadfast, and devoted Mac owner continuously since I bought my the first 128K Mac in 1984.

Eren and I have both become big fans of Art Deco architecture, furniture, art, and clothing. Oakland has terrific architectural examples. The Bay Area has a very active community of Art Deco devotees.

---



Me



Jon Stewart, protector of my sanity. He tells it like it is like no other, on the Daily Show



When I'm brave enough to stick a toe of awareness even more deeply into the national-nightmare pool, Paul Krugman (L) and Frank Rich provide great analyses that are simultaneously refreshing and depressing.

Not bad for the New York Times, the paper that did *not* bring us the WMD story when it really could have counted.



*Palm Vx* vs. *Ratliff*, Oakland 2005. 19. … Na3+, the first of two piece sacrifices

---

Jim Ratliff
virtualperfection.com/jim/
jim@virtualperfection.com

# EXHIBIT B

# __Deposition Exhibit__

# Hadfield Twitter Exchanges

EXHIBIT 21



TAB 41_Hadfield & Arruda Tweets.docx



14

TAB 41_Hadfield & Arruda Tweets.docx