IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION, | ) ) ) ) ) |
| Plaintiffs and Counterdefendants, | ) ) ) |
| v. | ) ) ) |
| ROSS INTELLIGENCE INC., | ) ) ) |
| Defendant and Counterclaimant. | ) ) |

C.A. No. 20-613 (SB)

REDACTED - PUBLIC VERSION

**THOMSON REUTERS' RESPONSE BRIEF IN OPPOSITION TO ROSS'S MOTION TO EXCLUDE CERTAIN OPINIONS OF DR. CHAD SYVERSON**

OF COUNSEL:

Daniel E. Laytin, P.C.
Christa C. Cottrell, P.C.
Cameron Ginder
Max A. Samels
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200

*Attorneys for Plaintiffs Thomson Reuters Enterprise Center GmbH and West Publishing Corporation*

Originally Filed:  September 28, 2023
Redacted Version Filed:  October 12, 2023

# TABLE OF CONTENTS

**Page**

SUMMARY OF ARGUMENT ................................................................................................. 3

STATEMENT OF FACTS ........................................................................................................ 5

      A.      Professor Syverson's Opinions ............................................................................. 5

      B.      ROSS's *Daubert* Motion ........................................................................................ 9

ARGUMENT ............................................................................................................................. 10

I.      Professor Syverson's Analysis of Legal Researcher Preferences Reliably Applies Well-Established Economic Principles. ............................................................................. 10

II.     ROSS Cannot Exclude Professor Syverson's Opinions by Quibbling With One of the Many Independent Bases Supporting Them. ............................................................... 14

CONCLUSION ........................................................................................................................... 16

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Kuhar v. Petzl Co.*,
  2022 WL 1101580 (3d Cir. Apr. 13, 2022) ................................................................9, 10, 12

*In re Live Concert Antitrust Litig.*,
  863 F. Supp. 2d 966 (C.D. Cal. 2012) ......................................................................................9

*Oddi v. Ford Motor Co.*,
  234 F.3d 136 (3d Cir. 2000)................................................................................................8, 10

*Pers. Audio, LLC v. Google LLC*,
  2021 WL 5038740 (D. Del. Oct. 25, 2021) .........................................................................2, 13

*S.E.C. v. Tourre*,
  950 F. Supp. 2d 666 (S.D.N.Y. 2013)......................................................................................9

*Scott v. Chipotle Mexican Grill, Inc.*,
  315 F.R.D. 33 (S.D.N.Y. 2016) ...............................................................................................9

*TQ Delta, LLC v. 2Wire, Inc.*,
  2021 WL 2685654 (D. Del. 2021) .........................................................................................14

*UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*,
  949 F.3d 825 (3d Cir. 2020)......................................................................................................9

*In re Zyprexa Prods. Liab. Litig.*,
  489 F.Supp.2d 230 (E.D.N.Y.2007) .......................................................................................12

## SUMMARY OF ARGUMENT

ROSS's *Daubert* motion does not challenge Professor Syverson's underlying opinions that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Rather, ROSS's motion targets just two paragraphs of Professor Syverson's report where he concludes that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ROSS asserts that this analysis should be excluded because it is "based solely on his subjective beliefs." D.I. 517 at 1. But this ignores that Professor Syverson's conclusion is grounded in accepted principles of economics and an uncontroversial understanding of the record endorsed by ROSS's own expert. ROSS's argument is meritless and the Court should deny its *Daubert* motion for at least three reasons.

***First***, Professor Syverson's analysis is reliable because it applies the established economics of consumer behavior. Professor Syverson starts from the economic principle that consumer preferences for product features can differ in two ways: (1) "vertically," meaning consumers "differ in their willingness to pay for" quality (all consumers want safe cars, but some are willing to pay more for safety); and (2) "horizontally," meaning consumers want distinct attributes from their products (some consumers may prefer a silver car, others a white car). He explains that, according to this literature, the "benefits of a mix-and-match-and-integrate solution" like what ROSS proposes "are larger when customers have meaningfully different [horizontal] tastes"—*i.e.* they want such different things from their legal research platforms such that a mix-and-match solution is likely to yield significant benefits. D.I. 518, Ex. A, Syverson Rpt. ¶ 58 & n.122 (quoting David Besanko, David Dranove, Mark Shanley, and Scott Schaefer, Economics of Strategy, 7th

Ed., Wiley, 2016, at p. 169). Professor Syverson's analysis of consumer behavior *applies these accepted economic principles* to his conclusion that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. He therefore concludes that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. This is a textbook example of a reliable methodology and stands in stark contrast to ROSS's experts, who base their opinions solely on their own cherry-picked document review.

*Second*, Professor Syverson's conclusion that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ based on his review of the record evidence and on *ROSS's own expert's* description of consumer behavior. Indeed, Professor Syverson concludes, unremarkably, that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ In support, Professor Syverson cites ROSS's own expert's assessment that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ROSS thus has no basis to claim that Professor Syverson's opinion is not "fit" to the facts of this case.

*Third*, ROSS's *Daubert* motion fails for the independent reason that it merely "quibbles" with just one of many analytic points that supports Professor Syverson's opinions. *Pers. Audio, LLC v. Google LLC*, 2021 WL 5038740, at *5 (D. Del. Oct. 25, 2021). Professor Syverson opines that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Similarly, Professor Syverson opines that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.

These are not the key gatekeeping issues that a *Daubert* motion is meant to address.

4

Simply put, ROSS's *Daubert* arguments are meritless and only highlight the reasons why its own experts' opinions should be excluded. ROSS claims that Professor Syverson's opinions are "based solely on his subjective beliefs without any support in … the evidence." D.I. 517 at 1. But in fact that description actually applies to ***ROSS's experts,*** who claim that ███████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████. D.I. 530. It is irrelevant Professor Syverson's straightforward application of accepted economic theory to its own expert's reading of the evidence. The Court should thus deny ROSS's motion in its entirety.

## STATEMENT OF FACTS

### A.  Professor Syverson's Opinions

Chad Syverson is the George C. Tiao Distinguished Service Professor of Economics at the University of Chicago Booth School of Business. D.I. 518, Ex. A, Syverson Rpt. ¶ 1. He has published over 40 academic articles—many of which study the economics of consumer demand across different industries—and he has co-authored a textbook on microeconomics. *Id.* ¶ 2.[1] Professor Syverson offers opinions in this case on ███████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████. While ROSS's free-ranging background section covers many topics with little relevance to its limited

---

[1] *See, e.g.*, "Acquisitions, Productivity, and Profitability: Evidence from the Japanese Cotton Spinning Industry" (with Serguey Braguinsky, Atsushi Ohyama, and Tetsuji Okazaki), American Economic Review, 105(7), (July 2015), 2086–2119; "Market Structure and Productivity: A Concrete Example." *Journal of Political Economy* 112(6), (Dec. 2004), 1181-1222; "The Slow Growth of New Plants: Learning about Demand." (with Lucia Foster and John Haltiwanger.) *Economica*, 83(329), (January 2016), 91–129.

*Daubert* arguments, just two of Professor Syverson's opinions are relevant to this motion:

**First**, Professor Syverson opines that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Professor Syverson relies on six distinct conclusions to support this opinion, including that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓:

- **Coordination efficiencies**: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *See id.*

- **Pricing efficiencies**: When different firms sell parts of a final product, each imposes its own "profit margin," even if that increased margin is not the most efficient for sales of the combined product (known in economics as the "double marginalization problem"). ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id.* ¶¶ 52–54.

- **Transaction cost efficiencies**: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *Id.*; D.I. 533, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

- **Reputational efficiencies**: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ D.I. 518, Ex. A, Syverson Rpt. ¶ 56.

- **Misappropriation risk**: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id.* ¶ 57.

In addition to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Professor Syverson explains that as a matter of economic theory, consumer preferences and product differentiation ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

6

*Id.* ¶ 59. The "color of a car" is an example of where consumers have ***horizontally*** differentiated preferences: "[s]ome people prefer silver to white." Ex. 1, Syverson Dep. 89:21–90:4;[2] D.I. 518, Ex. A, Syverson Rpt. ¶ 58. In contrast, "safety" is an example of ***vertically*** differentiated preferences. All consumers want their cars to be safer, but they vary in their willingness to pay for safety features. D.I. 518, Ex. A, Syverson Rpt. ¶ 59.

Professor Syverson explained that ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ *Id.* ¶ 58. In other words, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ *Id.* ¶ 58 n.122 (quoting David Besanko, David Dranove, Mark Shanley, and Scott Schaefer, Economics of Strategy, 7th Ed., Wiley, 2016, at p. 169). ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ *Id.* ¶ 59, n.123 (citing Jean Tirole, The Theory of Industrial Organization, 10th Ed., Massachusetts Institute of Technology, 1998, at p. 286).

Professor Syverson applies this economic principle to the legal-research-platform market. Citing ROSS's expert Dr. Gillian Hadfield, Professor Syverson accepts the premise that ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ D.I. 518, Ex. A, Syverson Rpt. ¶ 59 & n.126 (citing Hatfield Rpt. ¶ 32). As Professor Syverson explained at length at his deposition, he has seen no evidence that ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

---

[2] Exhibit 1, containing excerpts from the deposition of Professor Syverson, is attached to the Declaration of Max Samels, submitted concurrently.

7

█████████████████████████████████████████████████████████████████. Ex. 1, Syverson Dep. 91:15–19.  Lawyers may differ in *vertical* preferences, with some willing to pay for higher end platforms.  For example, some researchers ████████████████████████████ ████████████████████████████████████████████████████████████████████████████████ *Id.* 93:15–18.  But Professor Syverson saw no evidence of ███████████████████████ █████████████████████████████████████████████████████████████ *Id.*; D.I. 518, Ex. A, Syverson Rpt. ¶ 59.  Because there is no evidence that ██████████████████████ ████████████████████████████████████████████████████████████████████████████████ Professor Syverson concludes that ██████████████████████████████████████████████ ██████████████████████ *Id.* And, according to Professor Syverson, this is yet another reason why ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████ *Id.* ¶ 47.

***Second***, Professor Syverson also opines that ████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████ ████████████████████████████ *Id.* ¶¶ 94.  Professor Syverson devotes more than 40 paragraphs to explain why █████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████ *Id.* ¶¶ 102–44.  He explains that ██████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ *Id.* ¶¶ 107–12.  He also explains that ██████████████████████████████████████████████████████████████████████████ █████████████████████████████████████

███████████████████████████████████████████████████ *Id.*

¶¶ 118, 122.  And he describes how ███████████████████████████████████

████████████████████████████████████████████████████████████████████

███████ *id.* ¶ 97, and thus ████████████████████████████████ *Id.* ¶ 99.

None of this analysis has anything to do Professor Syverson's assessment of legal researcher preferences.  Rather, Professor Syverson discusses ███████████████

████████████████████████████████████████████████████████████████████

████████████████████ *Id.* ¶ 100.  He explains that his economic analysis about █████

████████████████████████████████████████████████ further supports his conclusion that ██████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

█████████████████████████.  *Id.*

B.   **ROSS's *Daubert* Motion**

ROSS has filed a motion to exclude certain of Professor Syverson's opinions related to ████████████████████.  D.I. 517.  ROSS's motion does not challenge Professor Syverson's actual opinions or the vast majority of his report.  Specifically, ROSS:

- **Does not challenge Professor Syverson's qualifications**:  ROSS never claims (nor could it) that Professor Syverson is not an expert in the economics of consumer demand, nor does ROSS attempt to argue that Professor Syverson cannot apply those economic concepts to the ████ ███████████ at issue in this case.  *See* D.I. 517.

- **Does not challenge Professor Syverson's opinions on** ████████████:  ROSS never mentions Professor Syverson's opinions that ████████████████████████████████ ████████████████████████ D.I. 518, Ex. A, Syverson Rpt. ¶¶ 67–93.  ROSS cites zero paragraphs from this section of the report and presents zero argument on the validity of these opinions.  *See* D.I. 517.

- **Does not challenge Professor Syverson's opinions on** ████████████████████:  ROSS never discusses coordination efficiencies, transaction costs, or any of the other bases for

9

Professor Syverson's opinion that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* D.I. 518, Ex. A, Syverson Rpt. ¶¶ 49–57.

- **Does not challenge Professor Syverson's opinions on supposed** ▮▮▮▮▮▮▮▮ Similarly, ROSS never mentions, let alone critiques, Professor Syverson's discussion of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See id.* ¶¶ 96–99, 102–42.

Instead, ROSS's *Daubert* motion is limited to arguing that Professor Syverson cannot testify that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ because "he relies on nothing more" to reach this opinion "than his own say-so." D.I. 517 at 7. ROSS never claims that this supposed flaw makes Professor Syverson's entire opinion about ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ unreliable, but rather asks the Court to exclude just Professor Syverson's discussion of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See id.* at 9. ROSS ends its brief with a two-paragraph request that the Court exclude all of Professor Syverson's "claims about ▮▮▮▮▮▮▮▮▮▮▮ because they are predicated on his bald claims that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* ROSS does not clarify which specific ▮▮▮▮▮ opinions it thinks should be excluded, but it cites to the single-paragraph cross-reference discussing legal researcher preferences that Professor Syverson includes in his foreclosure discussion. *Id.* (citing Syverson Rpt. ¶ 100).

## ARGUMENT

### I. Professor Syverson's Analysis of Legal Researcher Preferences Reliably Applies Well-Established Economic Principles.

An expert may not rely on his own "ipse dixit" as the sole basis of his opinions, but that is not what Professor Syverson has done when analyzing legal researcher preferences. *Oddi v. Ford Motor Co.*, 234 F.3d 136, 158 (3d Cir. 2000). Professor Syverson applied established economics to the facts of this case. In particular, a rebuttal expert like Professor Syverson "has 'no burden to produce models or methods of their own; they need only attack those of the plaintiffs' experts.'"

*Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 44 (S.D.N.Y. 2016) (quoting *In re Zyprexa Prods. Liab. Litig.*, 489 F.Supp.2d 230, 285 (E.D.N.Y.2007)).  Professor Syverson's application of the economics of consumer preferences easily clears this bar.

***First***, Professor Syverson clearly applied the "methods and procedures" of economics to reach his opinions about legal researcher preferences.  *Kuhar v. Petzl Co.*, 2022 WL 1101580, at *7 (3d Cir. Apr. 13, 2022).  As Professor Syverson explained in his report, he relied on economic literature studying how "horizontal differentiation" of product attributes is efficient when "consumers have idiosyncratic preferences" across the features that they want from the product.  D.I. 518, Ex. A, Syverson Rpt. ¶ 58 n.122 (quoting Economics of Strategy, 7th Ed., at p. 169); *id.* ¶ 58 n.123 (citing The Theory of Industrial Organization, 10th Ed. at p. 286).  In fact, as Professor Syverson explained at his deposition, he has applied these same principles "extensively" in his own academic work analyzing the Japanese cotton-spinning industry.  Ex. 1, Syverson Dep. 90:10–14.

Professor Syverson's analysis of legal researcher preferences was a straightforward application of these principles.  Professor Syverson saw no evidence that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*i.e.*, had "idiosyncratic preferences").  Thus, as a matter of economics, Professor Syverson concluded that it would be inefficient for firms to offer a "mix-and-match" approach to serve non-existent different tastes.  Economics of Strategy, 7th Ed., at p. 169; D.I. 518, Ex. A, Syverson Rpt. ¶ 59.  This principled and academically grounded analysis is a far cry from the cases ROSS cites where an expert said that a jury should "just trust him" because of his assertion that "I am an economist."  *In re Live Concert Antitrust Litig.*, 863 F. Supp. 2d 966, 996 (C.D. Cal. 2012); *contrast S.E.C. v. Tourre*, 950 F. Supp. 2d 666, 678 (S.D.N.Y. 2013) (excluding expert who claimed that his method was "economic logic" without further

11

specification of which principles or sources he was applying). Professor Syverson thus applied testable and repeatable methods grounded in the literature of his field, which readily satisfies Rule 702's reliability requirement. *Kuhar*, 2022 WL 1101580, at *7.

***Second***, Professor Syverson's analysis of legal researcher preferences is grounded in the facts of this case, not his own "ipse dixit." *Oddi*, 234 F.3d at 158. As discussed, Professor Syverson's analysis is premised on the observation that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ D.I. 518, Ex. A, Syverson Rpt. ¶ 59. This is beyond dispute. Professor Syverson's assessment is supported by **ROSS's own expert's** statement that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *Id.* ¶ 59 n.126 (quoting Hadfield Rpt. ¶ 23). Dr. Hadfield even goes on to explain that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ D.I. 532, Ex. 31, Hadfield Rpt. ¶ 23. Dr. Hadfield's explanation is exactly Professor Syverson's point ▇▇▇▇▇▇▇▇ Beyond Dr. Hadfield's report, Professor Syverson also testified at his deposition that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Ex. 1, Syverson Dep. 92:6–9. This is not "speculation," as ROSS claims, but rather an uncontroversial reading of the evidence supported by ROSS's own expert. D.I. 517 at 9.

To escape their own experts' agreement, ROSS accuses Professor Syverson of offering the unsupported opinion that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *Id.* at 8. This is a strawman argument. Professor Syverson explicitly states that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

12

███████████████████████████████████████████. D.I. 518, Ex. A, Syverson Rpt. ¶ 59. As Professor Syverson recognizes elsewhere in his report, third-party witnesses testified that there is a ████████████████████████████████████████ *Id.* ¶ 114 (quoting Fastcase CEO Edward Walters Tr. 84:4–15).

ROSS next accuses Professor Syverson of "ignor[ing]" that Westlaw offers three integrated versions of its product. D.I. 517 at 8. But Professor Syverson ***explicitly addresses*** this evidence. D.I. 518, Ex. A, Syverson Rpt. ¶ 59. The different versions of Westlaw are all integrated versions of the same platform—and all serve the common purpose of allowing researchers to conduct fast and accurate legal research—but include different access to features. *Id.* Far from ignoring this evidence, Professor Syverson explains that ████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████ *Id.* ¶ 59 (emphasis added).

ROSS also cites Thomson Reuters' acquisition of "Casetext, a legal AI search tool," and claims that it was Thomson Reuters' reaction to "varied demand" from legal researchers. D.I. 517 at 8. But the very sources that ROSS cites in its motion state that Thomson Reuters intended to "invest in artificial intelligence" to "***incorporate[ ] into [its] flagship products***."[3] In other words, Thomson Reuters is building the best version of Westlaw to serve the common goals of legal researchers, not distinct legal research platforms to serve horizontally differentiated preferences. ROSS has not presented a scrap of evidence to suggest otherwise, let alone enough evidence to elevate this factual argument to a *Daubert* issue.

---

[3] https://www.reuters.com/world/americas/thomson-reuters-reports-higher-first-quarter-sales-profit-2023-05-02/, cited at D.I. 517 at 8 n.2 (emphasis added).

13

ROSS's claim that Professor Syverson's analysis of legal researcher "preferences is neither explained nor supported with citations" is facially wrong. D.I. 517 at 4. But Professor Syverson provides ample "explanation" of his scientific method, his view of the evidence, and his reasoning to connect that theory and evidence to his expert opinions. Simply put, Professor Syverson applies a scientific methodology to an uncontroversial reading of the record evidence adopted by ROSS's own expert, and thus his method is both "reliable" and "fit[s] the facts" as required by Rule 702. *Kuhar*, 2022 WL 1101580, at *7; *UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*, 949 F.3d 825, 835 (3d Cir. 2020).

ROSS's arguments only illustrate why their own experts' opinions should be excluded, as explained at length in Thomson Reuter's *Daubert* motion. D.I. 530. When asked how they reached their opinions on a range of issues, ROSS's experts confirmed they merely ▮▮▮▮ and articulated no economic or other scientific principle as the basis of their opinions. D.I. 531, Ex. 23, Ratliff Dep. 54:7–15 (emphasis added); *accord id.* Ex. 9, Hadfield Dep. 127:7–128:11 (similar description of methodology); D.I. 530 at 7. This stands in sharp contrast to how Professor Syverson's discussion of legal researcher preferences was grounded in well-established, published economic literature that he had previously applied in his own academic work. The parties largely agree on the law: an opinion without a reliable methodology and that lacks a reasoned basis in the facts of this case should not be admitted. But it is ROSS's experts, not Professor Syverson's, whose opinions fail this test.

## II. ROSS Cannot Exclude Professor Syverson's Opinions by Quibbling With One of the Many Independent Bases Supporting Them.

Professor Syverson's discussion of ▮▮▮▮ is but one of several grounds that he uses to support opinions on (1) ▮▮▮▮ and (2) ▮▮▮▮. ROSS does not

14

meaningfully argue that those opinions as a whole should be excluded and does not address the other independent grounds that Professor Syverson uses to reach his conclusions on those topics. ROSS's critiques are thus not only wrong, they also amount to nothing more than "quibbl[ing]" with Professor Syverson's "support for his conclusions," which "is the kind of thing that can be addressed at trial via cross-examination," not a *Daubert* motion. *Pers. Audio*, 2021 WL 5038740, at *5.

As explained above, Professor Syverson's analysis of ███████████ and their economic implications is just one of ***six*** distinct observations he relies on to opine that ███████████. *See supra* at 4. Likewise, Professor Syverson's opinion on ███████████ is based on extensive discussion of ROSS's monopoly-power theory, with just a single paragraph related to his economic analysis of legal researcher preferences. *See supra* at 6. ROSS claims that Professor Syverson "jumps to the conclusion" that ███████████ and thus his entire foreclosure opinion must be excluded. D.I. 517 at 4–5. But this argument is facially meritless and mischaracterizes Professor Syverson's rigorous methodology and the many other paragraphs of independent conclusions that support his opinions. *See supra* at 9–12.

Finally, ROSS's motion ends with an unsupported request that the Court exclude all of Professor Syverson's analysis ███████████ D.I. 517 at 9. But as explained above, ROSS's incorrect arguments about Professor Syverson's analysis of legal researcher preferences do not justify excluding any opinions, let alone all opinions about "demand." *See TQ Delta, LLC v. 2Wire, Inc.*, 2021 WL 2685654, at *3 (D. Del. 2021) (potential issues with a small subset of expert's analysis "d[id] not support striking the entirety of [the expert's] reports and

15

testimony"). ROSS's overbroad request is factually and legally meritless, and like the rest of its motion, it must be rejected.

## CONCLUSION

For these reasons, the Court should deny ROSS's Motion to Exclude Certain Opinions of Professor Chad Syverson in its entirety.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

OF COUNSEL:

Daniel E. Laytin, P.C.
Christa C. Cottrell, P.C.
Cameron Ginder
Max A. Samels
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL  60654
(312) 862-2000

September 28, 2023

Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com

*Attorneys for Plaintiffs and Counterdefendants Thomson Reuters Enterprise Center GmbH and West Publishing Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on September 28, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on September 28, 2023, upon the following in the manner indicated:

| | |
|---|---|
| David E. Moore, Esquire<br>Bindu Palapura, Esquire<br>POTTER ANDERSON & CORROON LLP<br>Hercules Plaza, 6th Floor<br>1313 North Market Street<br>Wilmington, DE  19801<br>*Attorneys for Defendant and Counterclaimant* | *VIA ELECTRONIC MAIL* |
| Mark A. Klapow, Esquire<br>Lisa Kimmel, Esquire<br>Crinesha B. Berry, Esquire<br>CROWELL & MORING LLP<br>1001 Pennsylvania Avenue NW<br>Washington, DC  20004<br>*Attorneys for Defendant and Counterclaimant* | *VIA ELECTRONIC MAIL* |
| Gabriel M. Ramsey, Esquire<br>Jacob Canter, Esquire<br>Warrington Parker, Esquire<br>CROWELL & MORING LLP<br>3 Embarcadero Center, 26th Floor<br>San Francisco, CA  94111<br>*Attorneys for Defendant and Counterclaimant* | *VIA ELECTRONIC MAIL* |

/s/ *Michael J. Flynn*
_____
Michael J. Flynn (#5333)