# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION, ) ) ) | |
| ) | C.A. No. 20-613-SB |
| Plaintiffs/Counterdefendants, ) | |
| ) | **JURY TRIAL DEMANDED** |
| v. ) | |
| ) | **PUBLIC VERSION** |
| ROSS INTELLIGENCE INC., ) | |
| ) | |
| Defendant/Counterclaimant. ) | |

## ROSS INTELLIGENCE, INC.'S OPPOSITION TO COUNTERDEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON ROSS'S ANTITRUST COUNTERCLAIMS (NO. 3) – STATUTE OF LIMITATIONS

OF COUNSEL:

Gabriel M. Ramsey
Warrington S. Parker III
Beatrice B. Nguyen
Joachim B. Steinberg
Jacob Canter
CROWELL & MORING LLP
3 Embarcadero Ctr., 26th Floor
San Francisco, CA 94111
Tel: (415) 986-2800

Matthew J. McBurney
Crinesha B. Berry
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, DC 20004
Tel: (202) 624-2500

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Andrew L. Brown (#6766)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
abrown@potteranderson.com

*Attorneys for Defendant/Counterclaimant
ROSS Intelligence, Inc.*

Dated: September 28, 2023
Public Version Dated: October 12, 2023

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION AND SUMMARY OF ARGUMENTS ........................................................ 1

STATEMENT OF FACTS ...................................................................................................... 3

     I.     Counterdefendants Impose Vertical Restraints that Restrict Their
          Subscribers to Using Only Westlaw's Legal Search Tool When Searching
          Westlaw's Public Law Collection ........................................................................... 3

     II.    ROSS Was Founded in 2014 and Attempted to Compete by Inventing
          Technologies to Make Legal Services More Accessible, But Was Forced
          to Pivot in 2018 or 2019 ........................................................................................ 4

ARGUMENT .......................................................................................................................... 6

     I.     Under the Continuing Violations Doctrine, the Statute of Limitations
          Continues to Accrue, and ROSS's Antitrust Claims Are Not Time Barred. ......... 6

          A.     Under Third Circuit Precedent, the Statute of Limitations Accrues
               Each Time Counterdefendants Enter into a New Agreement that
               Constitutes an Antitrust Violation or Reaffirm Their Decision to
               Engage in Anticompetitive Conduct. ....................................................... 6

          B.     Contrary to Counterdefendants' Arguments, the Continuing
               Violations Doctrine Applies to Suits Brought by Competitors. ............... 8

          C.     As a Practical Matter, Counterdefendants' Theory Would Permit
               Immunity from Suit from Any New Competitor with a Desire to
               Innovate to Enhance Consumer Choice. ................................................. 10

          D.     Counterdefendants Improperly Conflate the Continuing Violations
               Doctrine and the Ascertainability Doctrine. ........................................... 11

     II.    This Court Also Should Deny This Motion Because a Triable Issue of Fact
          Exists as to When Damages Became Certain Enough for the Statute of
          Limitations on ROSS's Antitrust Causes of Action to Accrue........................... 12

          A.     When Future Damages Are So Speculative that a Court Would
               Refuse to Award Damages, the Statute of Limitations for Antitrust
               Cases Does Not Yet Accrue.................................................................... 12

          B.     Triable Issues of Fact as to the Ascertainability of ROSS's
               Damages Preclude Summary Judgment.................................................. 13

III.    The Statute of Limitations Does Not Apply to ROSS's Equitable Claims
        for Injunctive Relief, and Counterdefendants Have Waived Any Argument
        that These Claims Are Time-Barred Under the Doctrine of Laches. .................. 15

CONCLUSION ..................................................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aryeh v. Canon Bus. Sols., Inc.*,
  292 P.3d 871 (Cal. 2013) ..................................................................................2

*Berkey Photo, Inc. v. Eastman Kodak Co.*,
  603 F.2d 263 (2d Cir. 1979)...............................................................................9

*Brunswick Corp. v. Riegel Textile Corp.*,
  752 F.2d 261 (7th Cir. 1984) .......................................................................11, 15

*Cont'l-Wirt Elecs. Corp. v. Corning Glass Works, Inc.*,
  370 F. Supp. 1019 (E.D. Penn. 1973) ...............................................................13

*Cont'l-Wirt Elecs. Corp. v. Lancaster Glass Corp.*,
  459 F.2d 768 (3d Cir. 1972).........................................................................12, 13

*Country Floors, Inc. v. P'ship of Gepner & Ford*,
  930 F.2d 1056 (3d Cir. 1991).......................................................................15, 16

*Giordano v. Saks Inc.*,
  - F. Supp. 3d -, 2023 WL 1451534 (E.D.N.Y. 2023) .....................................9, 10

*Gruca v. U.S. Steel Corp.*,
  495 F.2d 1252 (3d Cir. 1974)............................................................................15

*Hanover Shoe, Inc. v. United Shoe Mach. Corp.*,
  392 U.S. 481 (1968)............................................................................................7

*Harold Friedman Inc. v. Thorofare Mkts. Inc.*,
  587 F.2d 127 (3d Cir. 1978)..............................................................................11

*Humana Inc. v. Celgene Corp.*,
  2022 WL 1237883 (D.N.J. Apr. 27, 2022) .....................................................6, 10

*In re Lower Lake Erie Iron Ore Antitrust Litig.*,
  998 F.2d 1144 (3d Cir. 1993)........................................................................6, 8, 9

*McDermott v. Party City Corp.*,
  11 F. Supp. 2d 612 (E.D. Pa. 1998) ..................................................................14

*Merisant Co. v. McNeil Nutritionals, LLC*,
  515 F. Supp. 2d 509 (E.D. Pa. 2007) ................................................................16

*Molecular Diagnostics Lab'ys v. Hoffman-La Roche Inc.*,
   402 F. Supp. 2d 276 (D.D.C. 2005) ...................................................................10

*N. Carolina Elec. Membership Corp. v. Carolina Power & Light Co.*,
   780 F. Supp. 322 (M.D. N.C. 1991) ............................................................11, 14

*Oliver v. SD-3C LLC*,
   751 F.3d 1081 (9th Cir. 2014) ..........................................................................16

*PBTM LLC v. Football Northwest, LLC*,
   511 F. Supp. 3d 1158 (W.D. Wash. 2021)..........................................................10

*Penn. Dental Ass'n v. Med. Serv. Ass'n of Penn.*,
   815 F.2d 270 (3d Cir. 1987).........................................................................16, 17

*Red Lion Med. Safety, Inc. v. Ohmeda, Inc.*,
   63 F. Supp. 2d 1218 (E.D. Cal. 1999).............................................................7, 8

*Samsung Elecs. Co. v. Panasonic Corp.*,
   747 F.3d 1199 (9th Cir. 2014) ..............................................................7, 11, 15

*Valerino v. Hoover*,
   643 F. App'x 139 (3d Cir. 2016) .......................................................................15

*Vasquez v. Indiana Univ. Health, Inc.*
   40 F.4th 582 (7th Cir. 2022) ............................................................................16

*W. Penn Allegheny Health Sys., Inc. v. UPMC*,
   627 F.3d 85 (3d Cir. 2010)........................................................................6, 8, 10

*Zenith Radio Corp. v. Hazeltine Rsch.*,
   401 U.S. 321 (1971).........................................................................2, 12, 13, 14

**Statutes**

15 U.S.C § 15b..............................................................................................................15

## INTRODUCTION AND SUMMARY OF ARGUMENTS

Counterdefendants Thomson Reuters Enterprise Centre GmbH and West Publishing Corporation (collectively, "Counterdefendants") apparently believe that, because they have violated the law for such a long time and continue to do so today, the statute of limitations bars all claims against them.  To support their position, Counterdefendants (a) confuse and conflate two independent doctrines—the continuing violation doctrine and the ascertainability doctrine, (b) erroneously claim that competitors are barred from using the continuing violations doctrine, and (c) fail to credit the actual holdings of Third Circuit precedent that they cite.

This Court should deny the Motion for Summary Motion on ROSS's Antitrust Claims (No. 5) – Statute of Limitations (the "Motion") on the following grounds:

First, under the continuing violations doctrine, this suit is timely.  The statute of limitations accrues anew for each antitrust violation.  The claims brought by Counterclaimant ROSS Intelligence, Inc. ("ROSS") are based on Counterdefendants' imposition of vertical restraints that require their subscribers to use a Westlaw search tool when searching Westlaw's public law database.  One of these restraints is imposed when Counterdefendants provide access to Westlaw's public law database only as a tied bundle that also includes a legal search tool.  The other occurs when subscribers are specifically forbidden from using competing legal search tools to access Westlaw's public law database.  Both of these restraints are reflected in the contracts that customers must sign.  Thus, each time Counterdefendants enter into a new agreement with a subscriber, the statute of limitations starts anew.  Because Counterdefendants admit that they provide only bundled (i.e., tied) products to this day, the statute of limitations has not run.  And, contrary to Counterdefendants' arguments, the continuing violations doctrine applies to suits

brought by competitors.[1]  Thus, this suit is not time-barred.

Second, under the separate and independent doctrine of ascertainability, at the least, a triable issue of fact exists as to when ROSS's claims accrued.  Under *Zenith Radio Corp. v. Hazeltine Research*, 401 U.S. 321 (1971), during the time that future profits are too speculative to award as damages, "no cause of action has yet accrued."  *Id.* at 339.  ROSS's damages could not have accrued in 2014 when the company was first founded because, as a new company, ROSS's damages would have been too speculative.  ROSS has put forward evidence through its damages expert that Counterdefendants' anticompetitive behavior began to have a measurable impact on ROSS's ability to grow starting in late 2018 or early 2019—after January 25, 2017, the date on which Counterclaimants allege the limitations period began to run.

Counterdefendants do not grapple with these facts.  Instead, they argue that, because they have always engaged in tying arrangements and because ROSS had some success in selling its product, ROSS's lawsuit is time-barred.  These arguments fail to address the question posed by *Zenith,* which is when ROSS's damages ceased to be speculative.  At a minimum, triable issues of fact exist as to that timing and, therefore, as to when ROSS's causes of action accrued.  Consequently, this Court should deny summary judgment.

Third, ROSS's request for injunctive relief is equitable in nature.  Counterdefendants would have to establish their affirmative defense of laches to bar that claim.  Counterdefendants

---

[1] For the same reasons that ROSS's antitrust claims survive summary judgment on the basis of the statute of limitations, ROSS's California Unfair Competition Law ("UCL") claim also survives.  The statute of limitations for UCL claims, like that for antitrust claims, is four years.  *See, e.g.*, *Aryeh v. Canon Bus. Sols., Inc.*, 292 P.3d 871, 875–76 (Cal. 2013).  California UCL claims are "governed by common law accrual rules to the same extent as any other statute."  *Id.* at 878.  Under the two accrual doctrines of continuing violation and the theory of continuous accrual, which are similar to the continuing violations doctrine in antitrust law, a triable issue of fact exists as to whether the statute of limitations has passed.  *See id.*at 875–76 (comparing these two accrual doctrines, among others, to the statute of limitations under California law).

make no effort to establish laches and have waived any such argument.[2]

Accordingly, ROSS respectfully requests that this Court deny the Motion and allow

ROSS to present its antitrust claims to the jury.

### STATEMENT OF FACTS

I. **Counterdefendants Impose Vertical Restraints that Restrict Their Subscribers to Using Only Westlaw's Legal Search Tool When Searching Westlaw's Public Law Collection.**

Counterdefendants market and sell Westlaw, an integrated legal research platform. ██

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

(*See* Nguyen Decl., Ex. Y (TRCC-00194341 at -347); *id.*, Ex. Z (Lindberg Dep. Tr.) (Apr. 24,

2023) at 28:19–29:1; *id.,* Ex. BBB (Dahn Dep. Tr.) at 39:16–24; *id.*, Ex. Z (Lindberg Dep. Tr.)

(Apr. 24, 2023) at 24:16–25:7; *id.*, Ex. F (Ratcliff Opening Report) at ¶¶ 24–35.)  ROSS's

antitrust counterclaims arise from the harm caused by Counterdefendants' anticompetitive

conduct.  Consumers are foreclosed from licensing Westlaw's public law database as a

standalone product, thereby preventing consumers from using the legal search technology of

their choosing.  (D.I. 36 (Am. Counterclaims) ¶¶ 101, 102, 107.)

Counterdefendants impose ████████████████████████████████████████████

████████████████████████████████████████████████████.  (Nguyen Decl.,

Ex. F (Ratcliff Opening Report) ¶¶ 16, 74.)  Counterdefendants offer access to Westlaw's

collection of public law ████████████████████████████████████████████

████████████████████████████████████████████████████████████

---

[2] ROSS is not invoking fraudulent concealment to toll the statute of limitations, and thus it does not address that argument here.  Therefore, the Court can disregard the arguments on pages 10 through 12 of the Motion.

██████████.  (*Id.*; Nguyen Decl., Ex. PP (Hoffman Dep. Tr.) (Apr. 25, 2023) at 15:4–15.)

Counterdefendants also specifically prevent and forbid Westlaw subscribers from using

competing legal search tools to access Westlaw's collection of public law.  (Nguyen Decl.,

Ex. QQ (Westlaw Terms and Conditions from 2023, available at

https://legal.thomsonreuters.com/content/dam/ewp-m/documents/legal/en/pdf/terms-and-

agreements/commercial-agreements/general-terms-and-conditions-final.pdf) § 3.c); *see also id.*,

Ex. RR (Westlaw Terms and Conditions from 2017, TR-0002812) § 1(b)-(d), (f); *see also id.*,

Ex. SS (Research Subscriber Agreement, D.I. 16-1) §§ 1(a)-(d), 2(a).)  By ████████████

████████████████████████████████████████████████

██████████████████████████████ (*Id.*, Ex. F (Ratliff Opening Report) at

¶¶ 259, 261.)

Counterdefendants continue to sign up and renew licensing contracts with Westlaw

subscribers that tie the use of Westlaw's public law database to Westlaw's legal search

technologies.  Indeed, Counterdefendants freely admit that they do not offer access to the public

law database separate from the search technologies, Mot. at 2 & n.2, and ████████████

████████████████████████████████████████████████.

(*See* Nguyen Decl., Ex. Y (TRCC-00194341 at -347) (██████████████████████).)

## II.     ROSS Was Founded in 2014 and Attempted to Compete by Inventing Technologies to Make Legal Services More Accessible, But Was Forced to Pivot in 2018 or 2019.

ROSS was founded in 2014 with the goal to "invent technologies to make legal services

more accessible."  (*See id.*, Ex. TT at 3 (Our Story, ROSS Intelligence,

https://www.rossintelligence.com/about-us (last visited Sept. 26, 2023).)  In ████████████

████████████████████████████████████████████████.  (*Id.*,

Ex. UU (Arruda Dep. Tr.) (Mar. 30, 2023) at 28:7–17.)  In ████████████████████

. (*Id.*, Ex. VV (ROSS-000201881) at -881.)  On . (*Id.*, Ex. WW (ROSS-009673447) at -447.)  It was not until . (*Id.*, Ex. XX (Ovbiagele Dep. Tr.) (May 2, 2023) at 85:6–86:5.)  In (*Id.* at 89:7–91:15.)

In . (Nguyen Decl., Ex. V (Arruda Dep. Tr.) (May 19, 2023) at 218:12–219:11.)  Around that time, s.  (*Id.*)  As opined by Dr. Alan Cox, ROSS's damages expert, (Nguyen Decl., Ex. YY (Cox Opening Report) ¶ 15b.) . (*Id.* ¶ 73; Nguyen Decl., Ex. ZZ (Ross Pricing Screenshot) at TR-0000030); *id.*, Ex. AAA (Inovia Investment Fund Memo Proposal, INOVIA-00000680–88) at -680, -681, -683).)

. (*Id.*, Ex. V (Arruda Dep.) (May 19, 2023) at 102:13–103:24.)  That effort included (*See id.*; *see also* Nguyen Decl., Ex. W (Hamilton Dep. Tr.) (May 4, 2023)



at 272:19–273:10.)

## ARGUMENT

**I.**     **Under the Continuing Violations Doctrine, the Statute of Limitations Continues to Accrue, and ROSS's Antitrust Claims Are Not Time Barred.**

      **A.**     **Under Third Circuit Precedent, the Statute of Limitations Accrues Each Time Counterdefendants Enter into a New Agreement that Constitutes an Antitrust Violation or Reaffirm Their Decision to Engage in Anticompetitive Conduct.**

Counterdefendants correctly recite the continuing violations doctrine.  But they fail to recognize binding precedent that requires the Court to deny this Motion, and they further fail to correctly apply the doctrine to the facts.

As articulated by the Supreme Court, "each time a plaintiff is injured by an act of the defendants a cause of action accrues to it to recover the damages caused by that act and as to those damages, the statute of limitations runs from the commission of the act.'"  *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 107 (3d Cir. 2010) (cleaned up) (quoting *Zenith*, 401 U.S. at 338).  Under binding Third Circuit precedent, if Counterdefendants performed injurious acts during the statute of limitations period, ROSS's countersuit is timely.  *See id.*; *In re Lower Lake Erie Iron Ore Antitrust Litig.*, 998 F.2d 1144, 1171–73 (3d Cir. 1993).  In the Third Circuit, this is so, "even though the acts that occurred within the limitations period were reaffirmations of decisions originally made outside the limitations period."  *W. Penn*, 627 F.3d at 107.

Each time Counterdefendants enter into contracts to restrain consumers from using Westlaw's public law database with non-Westlaw search tools (*e.g.*, the AI-based technology

offered by ROSS), it is an injurious act from which the statute of limitations runs anew.  *See id*.[3]
As admitted by Counterdefendants, "[i]t is undisputed that Thomas Reuters has only ever offered
Westlaw as an integrated product including both search capabilities and access to public
law . . . ."  Mot. at 2.

Counterdefendants attempt to turn this fact on its head—essentially arguing that, because
it has always been so, ROSS can no longer challenge Counterdefendants' conduct.  But, the law
differentiates between "a violation which, if it occurs at all, must occur within some specific and
limited time span" and "conduct which constituted a continuing violation of the Sherman Act
and which inflicted continuing and accumulating harm" on ROSS.  *See Hanover Shoe, Inc. v.
United Shoe Mach. Corp.*, 392 U.S. 481, 502 n.15 (1968).  And here, Counterdefendants
maintain their monopoly and stifle competition from competitors such as ROSS through each
and every contract with a subscriber who cannot use ROSS's search technologies to search
across Westlaw's public law database.  (*See, e.g.*, Nguyen Decl., Ex. QQ (Terms and Conditions
from 2023) § 3.c.)

Indeed, the continuing nature of this violation is proven by the fact that
Counterdefendants could change their policy with each contract.  *See Red Lion Med. Safety, Inc.
v. Ohmeda, Inc.*, 63 F. Supp. 2d 1218, 1224 (E.D. Cal. 1999) (holding the enforcement of a

---

[3] The Third Circuit recognizes a continuing violation where the acts are "reaffirmations
of decisions" made outside the limitations period.  *W. Penn*, 627 F.3d at 107.  Some Circuits do
not.  *Humana Inc. v. Celgene Corp.*, 2022 WL 1237883, at *6 (D.N.J. Apr. 27, 2022)
(recognizing circuit split).  Here, Counterdefendants enter into new contracts with consumers,
each of which prevents competition and causes injury anew to ROSS.  Thus, even under other
circuits' laws, which do not recognize a "reaffirmation of decision" as an act that will restart the
statute of limitations, the continuing violation doctrine would apply.  *See, e.g.*, *Samsung Elecs.
Co. v. Panasonic Corp.*, 747 F.3d 1199, 1202–03 (9th Cir. 2014) (collecting cases and holding
that the entry into a new license agreement was a new and independent act causing new injury,
which was an overt act that restarted the statute of limitations).

policy that could be changed incrementally limited plaintiffs' ability to expand their business and was a new injury within the statute of limitations period). Counterdefendants' policy to offer an integrated product is "not a 'permanent and final' decision that forever more compels" Counterdefendants to permanently prohibit consumers from being able to freely choose alternative legal search technologies. *See id.* at 1224. In other words, the antitrust violation alleged here is not a one-time violation with a definitive accrual date. *See id.* Rather, it is a decision that Counterdefendants reaffirm with each and every contract.

### B.   Contrary to Counterdefendants' Arguments, the Continuing Violations Doctrine Applies to Suits Brought by Competitors.

Counterdefendants argue that ROSS's position as a competitor precludes resort to the continuing violation doctrine. Not so. Two Third Circuit cases that apply the continuing violations doctrine do so in cases where the parties were competitors. In *West Penn*, the plaintiff, a hospital system, was a competitor of one of the defendants, also a hospital system. 627 F.3d at 91–92 (describing cast of characters). The co-defendant, which was alleged to be in a conspiracy with the hospital system defendant against the plaintiff, refused to increase the plaintiff's insurance reimbursement rates within the statute of limitations period. *Id.* at 106. The Third Circuit applied the continuing violations doctrine, without regard to the parties' status as competitors. Specifically, the court held that reaffirmations of a decision made outside the statute of limitations period restarted the statute of limitations. *Id.*

*Lower Lake* also involved competitors suing competitors. 998 F.2d at 1150–51 (describing parties and theories).[4] More, *Lower Lake Erie* guides the proper application of the continuing violations doctrine in a situation where a competitor is impacted by a series of actions

---

[4] While Counterdefendants cite both *West Penn* and *Lower Lake Erie* in their opening brief, (Mot. at 11 and 13), they omit the holdings that are contrary to their arguments and further omit the Third Circuit's test for continuing violations articulated in *West Penn.*

by another competitor over the course of years.  In that case, plaintiffs were competitors of railroad company defendants in the market of lake transport, dock handling, storage, and land transport of iron ore.  Plaintiffs filed lawsuits alleging that the railroad company defendants entered into agreements and conspired in violation of antitrust law to preclude competition in the transportation of iron ore.  998 F.3d at 1151–53.

The Third Circuit rejected the statute of limitations argument of the sole remaining defendant at trial, Bessemer and Lake Erie Railroad Company ("B & LE").  *Id.* at 1151.  B & LE argued that the conspiracy began in the 1950s and that plaintiffs had knowledge of the conspiracy as early as 1972, thus barring the lawsuits brought between 1982 and 1984.  *Id.* at 1171.  Focusing on the railroad company defendants' continued actions to preclude competition into the limitations period, the Court held that the damages within the limitations period were not caused solely from acts committed before the statutory four-year limitations period.  *Id.* at 1154, 1172.  The Court further recognized that the "purposeful nature of the inaction—here an ongoing refusal to sell or lease" constituted an injurious act, even if "not an overt one in the commonly[ ]understood sense."  *Id.* at 1172.

Applying *Lower Lake Erie* here, each new contract or renewal of a contract to subscribe to Westlaw's services, which contains illegal tying arrangements, is a new injurious act that continues Counterdefendants' anticompetitive monopoly.  As this conduct continues today, ROSS's claims are not barred by the statute of limitations.

Counterdefendants' reliance on out-of-Circuit precedent is unavailing.  *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979), only cites the general rule that the "business of a monopolist's rival *may* be injured at the time the anticompetitive conduct occurs," *id.* at 295 (emphasis added), and goes on to explain that a purchaser's injury occurs only when

-9-

the monopolist exercises power to extract an excessive price.  *Id.*  It does not purport to apply the continuing violations doctrine to facts similar to those in this case.

Counterdefendants' reliance on *Giordano v. Saks Inc.*, - F. Supp. 3d -, 2023 WL 1451534 (E.D.N.Y. 2023), fares little better.  First, the case involves anti-hire agreements between competitors that remained in place and were not renewed, re-entered into, or changed.  *Id.* at *6– 8.  Here, Counterdefendants enter into anticompetitive agreements over and again and until this day.

Next, the Second Circuit does not recognize that reaffirmations of a decision to enter into an illegal contract are sufficient to satisfy the continuing violations doctrine and extend the statute of limitations.  This conflicts with the law in the Third Circuit, which holds otherwise.  *See id.* at *7; *Humana*, 2022 WL 1237883, at *6.[5]

For these reasons, ROSS's claims are not time-barred.

**C.     As a Practical Matter, Counterdefendants' Theory Would Permit Immunity from Suit from Any New Competitor with a Desire to Innovate to Enhance Consumer Choice.**

Counterdefendants essentially argue that their anticompetitive conduct can no longer be stopped because four years have passed since the day they made their initial business decision to

---

[5] Counterdefendants cite some cases that bear little discussion.  Counterdefendants claim that *PBTM LLC v. Football Northwest, LLC*, 511 F. Supp. 3d 1158, 1182 (W.D. Wash. 2021), stands for the proposition that the statute of limitations accrues when a tying agreement was executed or became effective.  That case involved one contract in which the defendant forced the plaintiff to accept a contract with a family of trademarks.  This case does not involve one contract or a contract between Counterdefendants and ROSS.  *Molecular Diagnostics Laboratories v. Hoffman-La Roche Inc.*, 402 F. Supp. 2d 276, 286 (D.D.C. 2005), involved a patent allegedly obtained by fraud and the application of the statute of limitations to an antitrust claim based on those allegations.  Whatever conclusions it reached in that context have no application here.  *Humana* concerned generic drugs, sham litigation, and issues arising from supracometive pricing in that context, and the court noted that "[i]t is not exactly clear how far the continuing violations doctrine extends with respect to supracompetitive prices."  2022 WL 1237883, at *7.  That is not a question presented in this case.

prohibit access to Westlaw's public law database unless accompanied by used of Westlaw's legal search tools. Were Counterdefendants' position adopted, it would "improperly transform the limitations statute from one of repose to one of continued immunity." *W. Penn*, 627 F.3d at 107 (quoting *Poster Exch., Inc. v. Nat'l Screen Serv. Corp.*, 517 F.2d 117, 127–28 (5th Cir. 1975)).

Under Counterdefendants' theory, any new competitor with an innovative idea would have only four years from the inception of its idea to fully develop a product, attempt to compete, fail, and then bring suit. In other words, as a practical matter, Counterdefendants would be immune from suit from any new competitor seeking to put forward an innovative new product that could materially increase choice for consumers. The continuing violations doctrine prevents such a result.

### D. Counterdefendants Improperly Conflate the Continuing Violations Doctrine and the Ascertainability Doctrine.

Counterdefendants compound their errors of analysis by conflating the continuing violations doctrine with the independent and separate doctrine of ascertainability. For example, Counterdefendants' cite to *North Carolina Elec. Membership Corp. v. Carolina Power & Light Co.*, 780 F. Supp. 322 (M.D. N.C. 1991), and *Brunswick Corp. v. Riegel Textile Corp.*, 752 F.2d 261 (7th Cir. 1984), in support of their continuing violations doctrine argument. Mot. at 12–13. Neither case is a continuing violations doctrine case. Both apply the doctrine of ascertainability. They are discussed below.

The doctrines are unique and are applied separately and independently of the other. *See Harold Friedman Inc. v. Thorofare Mkts. Inc.*, 587 F.2d 127, 138–39 (3d Cir. 1978) (applying the continuing violations doctrine and separately the ascertainability doctrine to reverse grant of summary judgment on statute of limitations); *see also Samsung*, 747 F.3d at 1204–05 (applying doctrines separately).

-11-

For the reasons above, ROSS's claims are timely under the continuing violations doctrine, and this Court, therefore, should deny Counterdefendants' motion for summary judgment.

**II.    This Court Also Should Deny This Motion Because a Triable Issue of Fact Exists as to When Damages Became Certain Enough for the Statute of Limitations on ROSS's Antitrust Causes of Action to Accrue.**

   **A.    When Future Damages Are So Speculative that a Court Would Refuse to Award Damages, the Statute of Limitations for Antitrust Cases Does Not Yet Accrue.**

The doctrine of ascertainability provides an independent ground on which this Court should deny Counterdefendants' Motion.  Under this doctrine, "a cause of action accrues and the statute begins to run when a defendant commits an act that injures a plaintiff's business." *Zenith*, 401 U.S. at 338.  The Supreme Court recognized in *Zenith*, however, that, in antitrust cases, future profits can be too speculative to award within four years of conduct from which injury results.  *Id.* at 339–40.  In such a circumstance, the cause of action does not immediately accrue. A cause of action accrues when damages have been suffered, and are not merely speculative.  In the Court's words:

> [R]efusal to award future profits as too speculative is equivalent to holding that no cause of action has yet accrued for any but those damages already suffered. In these instances, the cause of action for future damages, if they ever occur, will accrue only on the date they are suffered; thereafter the plaintiff may sue to recover them at any time within four years from the date they were inflicted.

*Id.* at 339; *accord Cont'l-Wirt Elecs. Corp. v. Lancaster Glass Corp.*, 459 F.2d 768, 770 (3d Cir. 1972).

In *Continental-Wirt*, for example, a cathode bulb supplier cut off its supply to the plaintiff, which manufactured the cathode ray tubes.  459 F.2d at 769.  The district court held that this refusal to supply bulbs in February 1966 was the last overt act of anticompetitive conduct by the defendant, and thus a suit brought over four years later in May 18, 1970, was

untimely.  *Id.* at 770.

The Third Circuit reversed.  It held that, if the plaintiff could not have calculated its

damages on the date the defendant cut off the supply of bulbs, the statute of limitations could not

have begun to run.  *Id.*  The plaintiff's sale of its business, which was shut down as a result of the

defendant's conduct, occurred less than four years from the time of the filing of the suit.  *Id.*  In

light of that fact and the Supreme Court's decision in *Zenith*, the Third Circuit remanded the case

to the district court for reconsideration.  *Id.*  On remand, the district court denied the motion for

summary judgment because the defendants failed to point to any factual basis to support their

argument that damages were ascertainable prior to the four-year limitations period.  *Cont'l-Wirt*

*Elecs. Corp. v. Corning Glass Works, Inc.*, 370 F. Supp. 1019, 1020–21 (E.D. Penn. 1973).  The

same should be the result here.

## B. Triable Issues of Fact as to the Ascertainability of ROSS's Damages Preclude Summary Judgment.

As in *Continental-Wirt*, a triable issue of fact exists as to the ascertainability of damages,

which precludes summary judgment.  Counterdefendants rely on three sets of facts to argue that

the statute of limitations ran before January 25, 2017: (a) Westlaw has always operated as an

integrated legal research platform; (b) ROSS had sales prior to January 25, 2017; and (c) ROSS

could not sell its legal search tool prior to January 25, 2017, because Westlaw already operated

as an integrated legal research platform.  Mot. at 8.  None of these assertions counsel the grant of

Crossdefendants' motion.

First, the fact that Westlaw has always been offered as an integrated legal research

platform has no bearing on ROSS's damages and fails to address the ascertainability doctrine.

Under Counterdefendants' logic, they would forever be immune from suit, unless a potential

competitor sued within four years of its founding, regardless of the circumstances.  That position

-13-

is directly contrary to the Supreme Court's holding in *Zenith*, which noted that, without this exception, "future damages that could not be proved within four years of the conduct from which they flowed would be forever incapable of recovery, contrary to the congressional purpose that private actions serve 'as a bulwark of antitrust enforcement.'" *Zenith*, 401 U.S. at 340.

Second, the existence of ROSS sales in 2016 proves only that ROSS experienced some success in the market with its limited early offering. It does not establish when ROSS's damages from Counterdefendants' anticompetitive conduct ceased to be speculative. In 2014, at ROSS's founding, ROSS's damages would have been unquestionably speculative. A new business that suffers competitive injury is the quintessential case for speculative damages for which a court would not award damages. *See McDermott v. Party City Corp.*, 11 F. Supp. 2d 612, 629 (E.D. Pa. 1998) (holding that lost profits for a new business are generally not recoverable). Accordingly, under *Zenith*, in 2014, ROSS *could not have* and *must have waited* to sue Counterdefendants. *See* 401 U.S. at 339–40.

In addition, ROSS has offered evidence through its damages expert, Dr. Alan Cox, that damages became ascertainable in 2019: ██████████████████

████████████████████████████████████████████

████████████████████████████████████

██████████████████████████████████

(Nguyen Decl., Ex. YY (Cox Opening Report) at ¶ 15b.) Counterdefendants and their damages expert Mihran Yenikomshian provide no competing date for the start of ROSS's *damages*.

The cases that Counterdefendants' cite are factually distinguishable. In *North Carolina Electric*, the plaintiff's expert opined as to a date for damages that caused the suit to fall outside the statute of limitations. 780 F. Supp. at 330 n.23. In addition, the case involved a loan

application that the defendant rejected. *Id.* at 331. The court concluded that the statute of limitations ran from this date as well, which date too fell outside of the statute of limitations. *Id.* at 332.

In *Brunswick*, the defendant allegedly procured a patent by fraud that the plaintiff claimed was its invention. 752 F.2d at 264. As the case was a dispute over patent rights, the plaintiff could seek defendants' profits from the sale of the invention through trial and for an assignment of the patent rights. *Id.* at 271. In short, *Brunswick* was the unusual case where damages could be determined "with much less uncertainty than is usual in antitrust damage actions." *Id.* at 271.

Summary judgment cannot be granted on this basis.

### III. The Statute of Limitations Does Not Apply to ROSS's Equitable Claims for Injunctive Relief, and Counterdefendants Have Waived Any Argument that These Claims Are Time-Barred Under the Doctrine of Laches.

The deadline for bringing suit for claims for injunctive relief is governed by the doctrine of laches, not the statute of limitations. *See Samsung*, 747 F.3d at 1205 (applying laches, not the statute of limitations for equitable claims brought under 15 U.S.C § 15b); *see also Gruca v. U.S. Steel Corp.*, 495 F.2d 1252, 1275–58 (3d Cir. 1974) (holding that where requested relief cannot be achieved by a remedy at law but required a decree in equity, statute of limitations did not apply). The four-year statute of limitations in 15 U.S.C. § 15b "furnishes a guideline for computation of the laches period." *Samsung*, 747 F.3d at 1205. As Counterdefendants make no reference to the elements of laches and make no attempt to argue the application of those elements, they have waived the argument as to the application of laches to ROSS's claims for equitable relief. *See, e.g.*, *Valerino v. Hoover*, 643 F. App'x 139, 142 (3d Cir. 2016) (holding that issue waived at the district court when not raised in the opening brief, only the reply brief, for a motion).

The "correct disposition" of this affirmative defense "can only be made 'by a close scrutiny of the particular facts and a balancing of the respective interests and equities of the parties, as well as of the general public.'" *Country Floors, Inc. v. P'ship of Gepner & Ford*, 930 F.2d 1056, 1066 (3d Cir. 1991). As such, "it usually requires the kind of record only created by a full trial on the merits." *Id.* Counterdefendants, however, make only a cursory nod to laches in their Motion and fail to even identify its elements. Mot. at 7. The elements of laches are "(1) inexcusable delay in bringing suit, and (2) prejudice to the defendant as a result of the delay." *Merisant Co. v. McNeil Nutritionals, LLC*, 515 F. Supp. 2d 509, 516 (E.D. Pa. 2007).

Instead of addressing the elements of laches or engaging in any analysis of those elements, Counterdefendants argue that the same statute of limitations period applies to injunctive relief under laches. Mot. at 7. In support, they cite to three inapposite cases. In *Oliver v. SD-3C LLC*, 751 F.3d 1081 (9th Cir. 2014), the Ninth Circuit recognized that "there is no statute of limitations for injunctive relief claims under section 16" and that the four-year statute of limitations is just a guideline to analyzing laches. *Id.* at 1085–86. In *Vasquez v. Indiana University Health, Inc.* 40 F.4th 582 (7th Cir. 2022), the Seventh Circuit treated the laches defense as "rising or falling with the statute of limitations," but noted that "it need not in every case." *Id.* at 588. The court then proceeded to apply the discovery rule and reversed the grant of the motion to dismiss because the complaint contained allegations of a timely suit brought within the limitations period, making it unnecessary to reach the question of laches. *Id.* Finally, in *Pennsylvania Dental Association v. Medical Service Association of Pennsylvania*, 815 F.2d 270 (3d Cir. 1987), the Third Circuit "assume[d], without deciding" that the four-year limitation period applied to the claim for injunctive relief before reversing the grant of summary judgment because, even if the four-year statute of limitations applied, the claim was not time-

barred under the continuing violation doctrine.  *Id.* at 277–78.

As explained above, ROSS's claims for damages were brought within the statute of limitations.  *See supra* Parts Argument, I & II.  Thus, the burden of proof on the application of laches falls on Counterdefendants.  Counterdefendants, however, provide no facts whatsoever in support.

In sum, this Court should deny Counterdefendants' motion to the extent it purports to reach the injunctive relief in ROSS's counterclaims in Counts VI, VII, and VIII.

## CONCLUSION

For the foregoing reasons, ROSS respectfully requests that the Court deny the Motion in its entirety because ROSS's claims are not time barred.

<div style="float:right; width:50%;">

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

By:  */s/ David E. Moore*
    David E. Moore (#3983)
    Bindu A. Palapura (#5370)
    Andrew L. Brown (#6766)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, DE  19801
    Tel:  (302) 984-6000
    dmoore@potteranderson.com
    bpalapura@potteranderson.com
    abrown@potteranderson.com

*Attorneys for Defendant/Counterclaimant ROSS Intelligence, Inc.*

</div>

OF COUNSEL:

Gabriel M. Ramsey
Warrington S. Parker III
Beatrice B. Nguyen
Joachim B. Steinberg
Jacob Canter
CROWELL & MORING LLP
3 Embarcadero Ctr., 26th Floor
San Francisco, CA 94111
Tel: (415) 986-2800

Matthew J. McBurney
Crinesha B. Berry
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, DC 20004
Tel: (202) 624-2500

Dated:  September 28, 2023
11079091
Public Version Dated: October 12, 2023