# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION, | )<br>)<br>)<br>) |
| Plaintiffs/Counterdefendants, | ) C.A. No. 20-613-SB<br>)<br>) **JURY TRIAL DEMANDED** |
| v. | )<br>) |
| ROSS INTELLIGENCE INC., | ) **PUBLIC VERSION**<br>) |
| Defendant/Counterclaimant. | )<br>) |

### ROSS INTELLIGENCE, INC.'S OPPOSITION TO COUNTERDEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON ROSS'S ANTITRUST COUNTERCLAIMS (NO. 4) – INJUNCTIVE RELIEF

OF COUNSEL:

Gabriel M. Ramsey
Warrington S. Parker III
Beatrice B. Nguyen
Joachim B. Steinberg
Jacob Canter
CROWELL & MORING LLP
3 Embarcadero Ctr., 26th Floor
San Francisco, CA 94111
Tel: (415) 986-2800

Matthew J. McBurney
Crinesha B. Berry
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, DC 20004
Tel: (202) 624-2500

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Andrew L. Brown (#6766)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
abrown@potteranderson.com

*Attorneys for Defendant/Counterclaimant ROSS Intelligence, Inc.*

Dated: September 28, 2023
Public Version Dated: October 12, 2023

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION AND SUMMARY OF ARGUMENTS ............................................................ 1

STATEMENT OF FACTS ............................................................................................................ 2

        A.      ROSS Was As Successful As It Could be Given Counterdefendants' Unlawful Tie. .................................................................................................. 2

        B.      ROSS Remains a Viable Business. ........................................................................ 3

ARGUMENT .................................................................................................................................. 4

I.      ROSS HAS CONSTITUTIONAL STANDING FOR AN INJUNCTION. ....................... 5

        A.      ROSS Has Suffered a Redressable Injury in Fact That Is Traceable to Counterdefendants. .............................................................................................. 5

        B.      ROSS's Claim for Injunctive Relief Is Not Moot. ................................................ 8

II.     ROSS HAS ANTITRUST STANDING FOR AN INJUNCTION .................................... 9

        A.      ROSS Suffered an Antitrust Injury. .................................................................... 10

        B.      Counterdefendants Present No Authority to Show a Lack of Antitrust Standing. ............................................................................................................. 13

CONCLUSION ............................................................................................................................. 14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Assoc'd. Gen. Contractors of California, Inc. v. California State Council of Carpenters*,
  459 U.S. 519 (1983)..................................................................................................10

*Blue Shield of Virginia v. McCready*,
  457 U.S. 465 (1982)..................................................................................................12

*Chafin v. Chafin*,
  568 U.S. 165 (2013)....................................................................................................8

*City of Erie v. Pap's A.M.*,
  529 U.S. 277 (2000)....................................................................................................9

*City of Philadelphia v. EMI Earthmate, Inc.*,
  2004 WL 2250981 (E.D Pa. 2004) .............................................................................6

*Clark v. City of Lakewood*,
  259 F.3d 996 (9th Cir. 2001) ...........................................................................5, 6, 8, 9

*Dirauf v. Berger*,
  57 F.4th 101 (3d Cir. 2022) ........................................................................................8

*In re Fleet*,
  95 B.R. 319 (E.D. Pa. 1989) .......................................................................................9

*Freedom Holdings, Inc. v. Cuomo*,
  592 F. Supp. 2d 684 (S.D.N.Y. 2009), *aff'd,* 624 F.3d 38 (2d Cir. 2010) ................11

*In re Gabapentin Pat. Litig.*,
  649 F. Supp. 2d 340 (D.N.J. 2009) ...........................................................................13

*In re Generic Pharms. Pricing Antitrust Litig.*,
  338 F. Supp. 3d 404 (E.D. Pa. 2018) ........................................................................12

*Gulf States Reorg. Grp., Inc. v. Nucor Corp.*,
  466 F.3d 961 (11th Cir. 2006) ..................................................................................12

*Gumwood HP Shopping Partners L.P. v. Simon Prop. Grp., Inc.*,
  221 F. Supp. 3d 1033 (N.D. Ind. 2016) ....................................................................12

*Hammes v. AAMCO Transmissions, Inc.*,
  33 F.3d 774 (7th Cir. 1994) ........................................................................................9

*Hartig Drug Co. Inc. v. Senju Pharm. Co.*,
   836 F.3d 261 (3d Cir. 2016)..................................................................................4, 10

*Holland v. Rosen*,
   895 F.3d 272 (3d Cir. 2018).............................................................................................5

*Host Int'l, Inc. v. MarketPlace, PHL, LLC*,
   32 F.4th 242 (3d Cir. 2022) ..........................................................................................12

*Howard Hess Dental Lab'ys Inc. v. Dentsply Int'l, Inc.*,
   602 F.3d 237 (3d Cir. 2010)..........................................................................................13

*Inform Inc. v. Google LLC*,
   2022 WL 3703958 (11th Cir. Aug. 26, 2022).................................................................11

*KPH Healthcare Servs., Inc. v. Mylan N.V.*,
   2021 WL 3144711 (D. Kan. July 26, 2021) ................................................................10

*Lifewatch Servs. Inc. v. Highmark Inc.*,
   902 F.3d 323 (3d Cir. 2018)..................................................................................11, 12

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)........................................................................................................5

*Merican, Inc. v. Caterpillar Tractor Co.*,
   713 F.2d 958 (3d Cir. 1983).........................................................................................10

*Monsanto Co. v. Geertson Seed Farms*,
   561 U.S. 139 (2010)........................................................................................................6

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,
   522 F.3d 6 (1st Cir. 2008)............................................................................................13

*Perrong v. Liberty Power Corp.*,
   411 F. Supp. 3d 258 (D. Del. 2019)................................................................................5

*Philadelphia Taxi Ass'n, Inc v. Uber Techs., Inc.*,
   886 F.3d 332 (3d Cir. 2018).........................................................................................12

*In re Pre-Filled Propane Tank Antitrust Litig.*,
   2016 WL 6963059 (W.D. Mo. Jan. 13, 2016) .............................................................14

*In re Processed Egg Prod. Antitrust Litig.*,
   881 F.3d 262 (3d Cir. 2018).........................................................................................10

*Schoenkopf v. Brown & Williamson Tobacco Corp.*,
   637 F.2d 205 (3d Cir. 1980).........................................................................................11

*Smith v. U.S. Immigr. & Customs Enf't*,
  429 F. Supp. 3d 742 (D. Colo. 2019) ................................................................................. 8

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) ....................................................................................................... 5

*Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris*,
  717 F.3d 912 (3d Cir. 1999) ............................................................................................. 10

*Sullivan v. DB Invs., Inc.*,
  667 F.3d 273 (3d Cir. 2011) ............................................................................................... 4

*Toll Bros. v. Twp. of Readington*,
  555 F.3d 131 (3d Cir. 2009) ............................................................................................... 6

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
  429 U.S. 252 (1977) ........................................................................................................... 6

*ZF Meritor, LLC v. Eaton Corp.*,
  696 F.3d 254 (3d Cir. 2012) ..................................................................................... 4, 7, 13

**Other Authorities**

Phillip E. Areeda & Herbert J. Hovenkamp, Antitrust Law ........................................................ 13

## INTRODUCTION AND SUMMARY OF ARGUMENTS

Counterdefendants Thomson Reuters Enterprise Centre GmbH and West Publishing Corporation (collectively, "Counterdefendants") argue that they should be granted summary judgment on ROSS Intelligence, Inc.'s ("ROSS") request for injunctive relief, but they fail to explain the grounds on which they are seeking that relief. Counterdefendants cite cases invoking two very different standing standards—Article III standing under the U.S. Constitution and antitrust standing—in their brief.[1]

To the extent that Counterdefendants challenge ROSS's standing under Article III, their argument fails. At the time that ROSS filed its counterclaims, it was ready and able to re-enter the market. Even now, ROSS stands ready either as a direct supplier of artificial intelligence ("AI") based legal search technology or a licensor of that technology. It has maintained its website. It has maintained its rights to its domain name. And it has stored its technology so that it has ready access to it. That is sufficient for Article III standing.

To the extent that Counterdefendants challenge ROSS's antitrust standing, they have waived this argument, because they have failed to address the relevant factors that courts consider. Even if that were not the case, ROSS has antitrust standing, because ROSS suffered antitrust injury. Counterdefendants' anticompetitive conduct harmed the legal search marketplace—a marketplace in which ROSS competed.

Finally, Counterdefendants have not even raised the issue of mootness, which is the appropriate legal argument here, and one on which they have the burden of proof. As Counterdefendants have failed to establish a right to summary judgment on their standing

---

[1] *See* Mot. at 8-10 (alternating between cases reference Article III standing and antitrust standing).

arguments, they certainly have failed to carry the burden of establishing mootness.

For these reasons, the Court should deny Counterdefendants' Motion for Summary Judgment on ROSS's Antitrust Counterclaims (No. 4) – Injunctive Relief (the "Motion").

## STATEMENT OF FACTS

### A. ROSS Was As Successful As It Could be Given Counterdefendants' Unlawful Tie.

Counterdefendants sued ROSS in May 2020, alleging, among other things, that ROSS infringed on Counterdefendants' copyrights. At the time, ROSS, like almost all start-ups, had its challenges, but it also had achieved significant successes.

ROSS's technology was widely praised. (*See, e.g.*, Nguyen Decl., Ex. QQQ, TR-0000031 at -32 ▓▓▓▓); Ex. RRR, ROSS-009749504 at -504 ▓▓▓▓) (cleaned up); Ex. SSS, ROSS-023164403 (cells A2, A3) (stating ▓▓▓▓); Ex. TTT, ROSS-010264561 ▓▓▓▓ In ▓▓▓▓, stated that ▓▓▓▓ (Nguyen Decl., Ex. UUU, INOVIA-00004549.) ROSS also had ▓▓▓▓ (*See, e.g.*, Nguyen Decl., Ex. VVV, ROSS-023167158 (email to ROSS ▓▓▓▓ Ex. WWW, ROSS-009584733 (email to ROSS

)[2]

While ▮▮▮▮▮▮▮▮▮▮▮▮ (Nguyen Decl., Ex. W, Hamilton Dep. (May 4, 2023), 106:25-107:11.)

**B.   ROSS Remains a Viable Business.**

Realizing that ▮▮▮▮▮▮▮▮▮▮▮▮ (*See, e.g.*, Nguyen Decl., Ex. AAAA, ROSS-023089340 at -340 (▮▮▮▮▮▮▮▮▮▮▮▮).)

However, ▮▮▮▮▮▮▮▮▮▮▮▮ (Ovbiagele Decl. ¶ 8.)  It can do that either as ▮▮▮▮▮▮▮▮▮▮▮▮ (Ovbiagele Decl. ¶ 4.)  The company is ▮▮▮▮▮▮▮▮ (Request for Judicial Notice, Ex. 1, Certificate of Good Standing.)  Its website is operational. (*See* Nguyen Decl., Ex. BBBB, ROSS Intelligence Website, available at

---

[2] *See e.g.*, Nguyen Decl., Ex. XXX, Y Combinator Depo. Tr. at 69:25-70:6 ▮▮▮▮▮▮). *Id.* at 70:7-8; *see also* Nguyen Decl., Ex. YYY, Shafik Dep. Tr. (Apr. 28, 2023) at 110:16-24 (testifying that ▮▮▮▮▮▮▮▮▮▮▮▮). One study reported that the average NPS for the "B2B Software and Services" segment in 2023 was 41. *See id.*, Ex. ZZZ ("What is a Good Net Promoter Score? (2023 NPS Benchmark)," *Rentently*. Available at https://www.retently.com/blog/good-net-promoter-score/ (cited by Alan Cox, June 1, 2023 Report ¶ 44 n. 101.).)

https://www.rossintelligence.com/pricing; Ovbiagele Decl. ¶ 5.) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ovbiagele Decl. ¶ 5.) And ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (*Id.*) ROSS just ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (*Id.* ¶ 7.) Apart from ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.* ¶¶ 6-8.)

## ARGUMENT

While Counterdefendants oscillate between citing cases discussing Article III standing and cases discussing antitrust standing, they only reference Article III standing in their Motion and fail even to mention antitrust standing. In so doing, Counterdefendants improperly conflate statutory standing with constitutional standing. "Although the doctrines [of constitutional standing and antitrust standing] often overlap in practice, they are, in fact, distinct." *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 303 (3d Cir. 2012); *see also Hartig Drug Co. Inc. v. Senju Pharm. Co*., 836 F.3d 261, 269 (3d Cir. 2016). "Statutory standing is distinct from jurisdictional standing in that 'Article III standing is required to establish a justiciable case or controversy within the jurisdiction of the federal courts,' whereas 'lack of antitrust standing affects a plaintiff's ability to recover, but does not implicate the subject matter jurisdiction of the court.'" *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 307 (3d Cir. 2011) (quoting *Gerlinger v. Amazon.com Inc*., 526 F.3d 1253, 1256 (9th Cir. 2008)).

In this confusion, Counterdefendants' Article III standing argument fails, and any antitrust standing argument is waived (but also fails on the merits). Moreover, Counterdefendants fail to address the more appropriate doctrine of mootness, for which they bear the burden of proof but are unable to carry as a result of their failure to address it in their Motion.

## I. ROSS Has Constitutional Standing for an Injunction.

Counterdefendants claim that ROSS lacks Article III standing because it cannot re-enter the market. *See* Mot. at 9-10. That argument is incorrect. Moreover, the ongoing harm that entitles ROSS to an injunction is the continuation of Counterdefendants' unlawful tie that prevents consumers from being able to freely choose to use ROSS's technology to search Westlaw's comprehensive public law database.

### A. ROSS Has Suffered a Redressable Injury in Fact That Is Traceable to Counterdefendants.

ROSS has Article III standing to pursue an injunction. For a party to have standing, it "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016); *see also Holland v. Rosen*, 895 F.3d 272, 286 (3d Cir. 2018); *Perrong v. Liberty Power Corp.*, 411 F. Supp. 3d 258, 263 (D. Del. 2019). Whether these elements are satisfied is determined at the time a lawsuit is filed, not at some later stage. *Clark v. City of Lakewood*, 259 F.3d 996, 1006 (9th Cir. 2001) (citation omitted); *see also Lujan v. Defenders of Wildlife,* 504 U.S. 555, 569 n.4 (1992).

ROSS has standing to pursue an injunction, because Counterdefendants' unlawful tie impaired—and continues to impair—ROSS's ability to offer its AI-based search technology to consumers who wish to use it to search Counterdefendants' must-have public law database. (Nguyen Decl., Ex. F, Report of James D. Ratliff ("Ratliff Report") ¶¶ 234-261.) ROSS filed its antitrust claims within one month of ceasing operations. ROSS's situation is similar to that of the plaintiff in *Clark*, 259 F.3d 996. In that case, the plaintiff owned a business that could no longer be operated profitably on account of new city ordinances. *Id.* at 1003. As a result, he closed his business and then sued for injunctive relief. *See id*. The Ninth Circuit ruled that the

plaintiff had standing because his claimed injury was neither conjectural nor hypothetical and his prospect of reopening was realistic and credible. As here, when he filed the lawsuit, the plaintiff's business had been closed only about a month, he continued to hold all the licenses he needed, and he stated that he would go back into business if the ordinances were enjoined. That was enough to establish standing. *Id.* at 1008.

Counterdefendants' unlawful tie ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮ (Nguyen Decl., Ex. F (Ratliff Report) ¶ 235.) This confers Article III standing. *See, e.g.*, *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149–50 (2010) (finding Article III standing because "Petitioners are injured by their inability to sell or license RRA to prospective customers until such time as APHIS completes the required EIS. Because that injury is caused by the very remedial order that petitioners challenge on appeal, it would be redressed by a favorable ruling from this Court [reversing the challenged injunction]"); *see also City of Philadelphia v. EMI Earthmate, Inc.*, 2004 WL 2250981, at *3 (E.D Pa. 2004). And ROSS need not show that it would be guaranteed to achieve its desired outcome, just that it has "the requisite personal stake in the controversy." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 261-62 (1977); *see also Toll Bros. v. Twp. of Readington*, 555 F.3d 131, 141-42 (3d Cir. 2009) (holding that interference with a property right is enough for Article III standing).

Specifically, Counterdefendants' unlawful tie ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮. (Nguyen Decl., Ex. F (Ratliff Report) ¶ 239-40.) By ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (*Id.* ¶¶ 258-60; Nguyen Decl., Ex. CCCC, Deposition of James D.

-6-

Ratliff ("Ratliff Depo.") at 189:20-191:8.)  If not for Counterdefendants' unlawful tie, ██

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████. (*Id*., Ex. F (Ratliff Report) ¶ 260; *id*. Ex. CCCC

Ratliff Depo. at 176:9-178:24.)

The fact that ROSS wound down its business does not deprive the company of standing.  ROSS stands ████████████████████████████████████████

████████████████████████. (Ovbiagele Decl. ¶¶ 4-8.)  There are no barriers to ROSS's re-entry except the unlawful tie that is the subject of this lawsuit.  And, standing does not depend on ROSS's re-entering the market in the same way that it operated before.  ROSS could ██ ████████████████████████████████████████████████ That is sufficient to confer standing.

Contrary to Counterdefendants' claim, *ZF Meritor*, 696 F.3d 254, is not "conclusive" on this issue.  Mot. at 8.  The plaintiff in that case left the market *three years* before it filed its complaint and had never expressed a desire to re-enter the market.  Furthermore, there were barriers to re-entry.  *Id.* at 302.  By contrast, even after ROSS ceased active sales operations, it had (and still has) intellectual property that it can license.  Additionally, it would be comparatively easily to restart a small software company, such as ROSS (Ovbiagele Decl. ¶ 8.), compared to a large manufacturing plant, such as the plaintiff in *ZF Meritor*.

At a minimum, there is a genuine dispute of material fact as to whether Counterdefendants' anticompetitive conduct harmed ROSS and, if so, that harm would undoubtedly be redressed by an injunction.  For all of these reasons, the Court should reject

Counterdefendants' request for summary judgment as to ROSS's standing to pursue injunctive relief under Article III.

### B. ROSS's Claim for Injunctive Relief Is Not Moot.

Although Counterdefendants never specifically say it, their argument really is one of mootness. *See* Mot. at 6-7. While Article III "[s]tanding is determined by the facts that exist at the time the complaint is filed," mootness inquiries "require courts to look to changing circumstances that arise after the complaint is filed." *Clark*, 259 F.3d at 1006 (citation omitted). That is precisely what Counterdefendants want this Court to do here.

However, the party asserting mootness bears a heavy burden. "If the defendant (or any party) claims that some development has mooted the case, it bears [t]he heavy burden of persua[ding] the court that there is no longer a live controversy." *Dirauf v. Berger*, 57 F.4th 101, 107 (3d Cir. 2022) (cleaned up); *see also Smith v. U.S. Immigr. & Customs Enf't*, 429 F. Supp. 3d 742, 755 (D. Colo. 2019) ("If standing for prospective relief exists when the complaint is filed, later events that appear to moot such relief (such as repeal of a challenged policy) do not automatically defeat standing. The effect of those later events is analyzed under separate principles and burdens that apply specifically to mootness.").

Counterdefendants have not met that heavy burden here. They have not shown that there is no longer a live issue or that ROSS lacks a "legally cognizable interest in the outcome." *See Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (noting that "a suit becomes moot, when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome"). Nor have they shown that "it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Id.* "As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *See id.* (cleaned up). As noted above, ROSS wishes to re-enter the legal search market, either as a direct player in that market or as a licensor

of its AI-based technology. The issue is a live one, and ROSS has a legally cognizable interest in the outcome.

The fact that ROSS's operations are currently inactive is not sufficient to establish mootness. *See City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) ("Simply closing [the company] is not sufficient to render this case moot, however. [The plaintiff] is still incorporated under Pennsylvania law, and it could again decide to operate . . . in Erie."); *see also Clark*, 259 F.3d at 1011–12 ("Although the expiration of [the plaintiff's] license may make it more difficult for [him] to return to business . . . [he] still has a legally cognizable interest in the outcome of this lawsuit sufficient to allow him to seek injunctive relief."); *In re Fleet*, 95 B.R. 319, 339 (E.D. Pa. 1989) (ruling that the fact that a party had been out of business for five years did not render the case moot).

## II.   ROSS Has Antitrust Standing for an Injunction.

Counterdefendants never address the factors that a court must consider in determining whether antitrust standing exists. *See* Mot. at 8-10. As a result, they have waived that argument.[3] *See Hammes v. AAMCO Transmissions, Inc.*, 33 F.3d 774, 778 (7th Cir. 1994) ("[D]espite the suggestive terminology, 'antitrust standing' is not a jurisdictional requirement and is therefore waivable."). Nonetheless, ROSS explains below why it has antitrust standing

---

[3] Counterdefendants also have waived the antitrust standing argument for an independent reason. During discovery, Counterdefendants were asked to ███████████████████████████ ███████████████████████████████████████████████████████████████████████████████ (Nguyen Decl., Ex. DDDD, Counterdefendants' Response and Objection to Interrogatory No. 22.) They responded on May 11, 2023, stating ██████████████████████████████ ███████████████ (*See id.* at 15-17.) Of all the evidence cited in Counterdefendants' Motion, ██████████████████████████████████ so lack of knowledge is not an excuse for Counterdefendants' omission. *See* Mot. at 6 and 10.

under the flexible standards for making such a determination.

### A.    ROSS Suffered an Antitrust Injury.

Antitrust standing "focus[es] on the nature of the plaintiff's alleged injury and asks whether it is of the type that the antitrust statute was intended to forestall." *Hartig Drug Co. v. Senju Pharm. Co.*, 836 F.3d 261, 269 (3d Cir. 2016) (cleaned up). "Because of the infinite variety of claims that arise under the antitrust statutes . . . [the Supreme Court] has refused to fashion a black-letter rule for determining standing in every case." *Merican, Inc. v. Caterpillar Tractor Co.*, 713 F.2d 958, 964 (3d Cir. 1983); *see also Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris*, 717 F.3d 912, 922 (3d Cir. 1999) (holding that "lower courts should avoid applying bright-line rules and instead should analyze the circumstances of each case, focusing on certain key factors").

Antitrust standing, like Article III standing, is analyzed at the time a complaint is filed. *See KPH Healthcare Servs., Inc. v. Mylan N.V.*, 2021 WL 3144711, at *10 (D. Kan. July 26, 2021). Courts in the Third Circuit use a "five-factor inquiry" based on the Supreme Court's decision in *Assoc'd. Gen. Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 536 (1983). The factors are:

(1) the causal connection between the antitrust violation and the harm to the plaintiff and the intent by the defendant to cause that harm, with neither factor alone conferring standing;

(2) whether the plaintiff's alleged injury is of the type for which the antitrust laws were intended to provide redress;

(3) the directness of the injury, which addresses the concerns that liberal application of standing principles might produce speculative claims;

(4) the existence of more direct victims of the alleged antitrust violations; and

(5) the potential for duplicative recovery or complex apportionment of damages.

*In re Processed Egg Prod. Antitrust Litig.*, 881 F.3d 262, 269 (3d Cir. 2018).

Courts have held that there is "a lower threshold standing requirement" for injunctive relief than for damages. *See Schoenkopf v. Brown & Williamson Tobacco Corp.*, 637 F.2d 205, 210 (3d Cir. 1980) (collecting cases); *see also Freedom Holdings, Inc. v. Cuomo*, 592 F. Supp. 2d 684, 694 (S.D.N.Y. 2009), *aff'd,* 624 F.3d 38 (2d Cir. 2010) (holding that for injunctive relief, "the standing inquiry is more flexible, reflecting greater concern for the public interest and reduced risk of duplicative recovery").

Counterdefendants do not argue or present any evidence that ROSS has failed to meet these factors for an injunction, with one oblique exception: in confusing the standard for antitrust standing with the standard for Article III standing, Counterdefendants appear to argue that ROSS has failed to show a causal connection between the harm alleged and the antitrust violation. *See* Mot. at 10.[4]

However, ROSS has shown evidence that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (*See, e.g.*, Nguyen Decl., Ex. F (Ratliff Report) ¶¶ 243-48, and Ex. YY (Cox Report) ¶¶ 69-78.) That is more than enough to meet factor 1 of the antitrust standing analysis. *See, e.g.*, *Lifewatch Servs. Inc. v. Highmark Inc.*, 902 F.3d 323, 342–43 (3d Cir. 2018) (depressed sales due to anticompetitive rule met factor 1); *see also Inform Inc. v. Google LLC*, 2022 WL 3703958, at *5 (11th Cir. Aug. 26, 2022) ("[The plaintiff] alleges that [] defendants' anticompetitive conduct decimated [its] business. And that allegation easily satisfies the injury-in-fact requirement.").

ROSS easily meets the other factors relevant to establishing antitrust standing. Under factor 2, the injury here is precisely the kind that the antitrust laws are meant to protect, because

---

[4] Having failed to raise these issues in their opening brief, Counterdefendants are also precluded from raising them in reply. *See supra* at 9.

Counterdefendants' unlawful tie impacted competition in the industry at large and resulted in ROSS, a competitor, being forced out of business. *See e.g.*, *Lifewatch Servs. Inc. v. Highmark Inc.*, 902 F.3d 323, 342–43 (3d Cir. 2018) (suppressing demand for a product was antitrust injury); *Gulf States Reorg. Grp., Inc. v. Nucor Corp.*, 466 F.3d 961, 967–68 (11th Cir. 2006) (holding that exclusion of a competitor from the market is an antitrust injury). This is unlike the cases where the Third Circuit has found no antitrust injury because the only harm was to the party itself. *See, e.g.*, *Host Int'l, Inc. v. MarketPlace, PHL, LLC*, 32 F.4th 242, 251 (3d Cir. 2022); *Philadelphia Taxi Ass'n, Inc v. Uber Techs., Inc.*, 886 F.3d 332, 338 (3d Cir. 2018). Additionally, the antitrust injury here is "direct" under factor 3, because consumers were deprived of free choice and innovation resulting from Counterdefendants' unlawful tie, which resulted in ROSS being forced out of business. *See, e.g.*, *Blue Shield of Virginia v. McCready*, 457 U.S. 465, 483–84 (1982).

Under factor 4, there is no one better situated than ROSS to bring these claims. *See, e.g.*, *Gumwood HP Shopping Partners L.P. v. Simon Prop. Grp., Inc.*, 221 F. Supp. 3d 1033, 1047 (N.D. Ind. 2016) ("[A]s a matter of antitrust standing, [the plaintiff]—the sole owner of the affected property at the time the claims accrued—is the only party that could assert an antitrust claim arising out of the alleged misconduct"). And because ROSS seeks an injunction, there is little risk of duplicative recovery under factor 5. *See, e.g.*, *In re Generic Pharms. Pricing Antitrust Litig.*, 338 F. Supp. 3d 404, 457 (E.D. Pa. 2018).

Counterdefendants argue that ROSS has "no future as a legal research platform" and, therefore, no antitrust standing because it shut down as a result of their filing the copyright lawsuit. Mot. at 10. But, even if one were to accept that the copyright lawsuit contributed to ROSS's going out of business, the existence of other potential factors causing harm beyond the

anticompetitive conduct at issue does not negate antitrust standing. *See, e.g.*, *In re Gabapentin Pat. Litig.*, 649 F. Supp. 2d 340, 356 (D.N.J. 2009) ("[A]n antitrust plaintiff may establish antitrust injury with "proof of some damage flowing from the unlawful conspiracy . . . It is enough that the illegality is shown to be a material cause of the injury; a plaintiff need not exhaust all possible alternative sources of injury.") (quoting *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 114 n. 9 (1969)); *see also* Nguyen Decl., Ex. EEEE, Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law: An Analysis of Antitrust Principles and Their Application ¶ 335c2 (5th ed. 2020) ("Given multiple causes for virtually every phenomenon, the courts do not insist that the violation be the only possible cause of the plaintiff's injury.").

### B. Counterdefendants Present No Authority to Show a Lack of Antitrust Standing.

None of Counterdefendants' cited cases control here. For example, Counterdefendants cite to *Howard Hess Dental Lab'ys Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 246–47 (3d Cir. 2010), but the plaintiffs in that case failed to show why they were entitled to an injunction when the government had already obtained one. *Id.* at 249.[5]

Counterdefendants also cite *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6, 14 (1st Cir. 2008), for the proposition that parts of the antitrust standing inquiry "dovetail" with the Article III standing inquiry. But the fact that some of the requirements happen to resemble the Article III requirements does not transform antitrust standing into a jurisdictional issue. *See ZF Meritor*, 696 F.3d at 302–03 (distinguishing between antitrust and constitutional standing); *see also supra*, n.4. In any event, that case involved damages that were

---

[5] The appellate decision in *Hess* also turned on a narrow and technical issue related to collateral estoppel. The plaintiffs claimed that an earlier decision by the court, where there had been an antitrust violation, necessarily meant that the court had held there was antitrust injury. *Id.* at 248-49.

too speculative.  The injury and further harm depended on favorable exchange rates that "no longer existed," and it was "purely speculation to determine that [the plaintiff] would one day return."  *In re Pre-Filled Propane Tank Antitrust Litig.*, 2016 WL 6963059, at *3 (W.D. Mo. Jan. 13, 2016) (quoting *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 552 F.3d at 14-15), *aff'd in part*, 893 F.3d 1047 (8th Cir. 2018).

Here, ROSS has shown that—at the very least—there is a material question of fact as to whether its product is still being injured by Counterdefendants' ongoing anticompetitive conduct.  The market for AI-based legal search tools is booming.  Indeed, Counterdefendants just recently acquired one of ROSS's competitors for its advanced technology.  (*See* Nguyen Decl. Ex. FFFF, "Thomson Reuters Completes Acquisition of Casetext, Inc.".)  As Counterdefendants' own expert acknowledged, ███████████████████████████████████████████████ ███████████████████████████████████████████ (*Id.*, Ex. GGGG, Yenikomshian Dep. at 66:2-9.)

Finally, Counterdefendants' claim that, even if ROSS were entitled to an injunction when it brought its claims, it cannot now show that it is entitled to an injunction.  But endorsing such a claim would lead to perverse results: companies would be incentivized to drag out litigation in an effort to avoid injunctions.  Moreover, ROSS could re-enter this market and, even if it did not do so, its intellectual property has value that is adversely impacted by Counterdefendants' unlawful tie.  ROSS, therefore, not only had, but continues to have, antitrust standing.

## CONCLUSION

For the reasons set forth above, this Court should deny Counterdefendants' Motion in its entirety.

OF COUNSEL:

Gabriel M. Ramsey
Warrington S. Parker III
Beatrice B. Nguyen
Joachim B. Steinberg
Jacob Canter
CROWELL & MORING LLP
3 Embarcadero Ctr., 26th Floor
San Francisco, CA 94111
Tel: (415) 986-2800

Matthew J. McBurney
Crinesha B. Berry
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, DC 20004
Tel: (202) 624-2500

Dated:  September 28, 2023
11079080
Public Version Dated: October 12, 2023

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

By:  */s/ David E. Moore*
    David E. Moore (#3983)
    Bindu A. Palapura (#5370)
    Andrew L. Brown (#6766)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, DE  19801
    Tel:  (302) 984-6000
    dmoore@potteranderson.com
    bpalapura@potteranderson.com
    abrown@potteranderson.com

*Attorneys for Defendant/Counterclaimant ROSS Intelligence, Inc.*