# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION,<br><br>   Plaintiffs/Counterdefendants,<br><br> v.<br><br>ROSS INTELLIGENCE INC.,<br><br>   Defendant/Counterclaimant. | C.A. No. 20-613-SB<br><br>**JURY TRIAL DEMANDED**<br><br>**PUBLIC VERSION** |

### DEFENDANT AND COUNTERCLAIMANT ROSS INTELLIGENCE, INC.'S REPLY IN SUPPORT OF MOTION TO EXCLUDE CERTAIN OPINIONS AND TESTIMONY OF EXPERT CHAD SYVERSON

OF COUNSEL:
Gabriel M. Ramsey
Warrington S. Parker III
Beatrice B. Nguyen
Joachim B. Steinberg
Jacob Canter
CROWELL & MORING LLP
3 Embarcadero Ctr., 26th Floor
San Francisco, CA 94111
Tel: (415) 986-2800

Matthew J. McBurney
Crinesha B. Berry
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, DC 20004
Tel: (202) 624-2500

Dated: October 26, 2023
11133317 / 20516.00001
Public Version Dated: November 1, 2023

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Andrew L. Brown (#6766)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
abrown@potteranderson.com

*Attorneys for Defendant/Counterclaimant ROSS Intelligence, Inc.*

# TABLE OF CONTENTS

|  | Page |
|---|---|
| INTRODUCTION AND SUMMARY OF ARGUMENT | 1 |
| ARGUMENT | 2 |
|     A. Dr. Syverson's opinions on legal researcher preferences are not based on relevant facts or data and are not the product of applicable economic principles and methods. | 2 |
|         1. Statements by ROSS's expert about legal *content* do not support Dr. Syverson's position ▮ | 3 |
|         2. Dr. Syverson offers no support for his opinions ▮ | 4 |
|         3. Dr. Syverson uses the concepts of vertical and horizontal differentiation as window dressing for his unsupported ▮ | 6 |
|     B. ROSS's Daubert challenge focuses on Dr. Syverson's opinions on the character of legal researcher demand for separately provided public law databases and legal search tools. | 7 |
| CONCLUSION | 8 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Chambers v. Sec'y Pa. Dep't. of Corr.*,
   442 F. App'x 650 (3d Cir. 2011) ...................................................................................4

*Elcock v. Kmart Corp.*,
   233 F.3d 734 (3d Cir. 2000)..........................................................................................4

*Ellis v. Albonico*,
   2007 WL 809804 (E.D. Cal. Mar. 15, 2007) ...............................................................4

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999)..................................................................................................1, 5

*In re Live Concert Antitrust Litig.*,
   863 F. Supp. 2d 966 (C.D. Cal. 2012) ..........................................................................5

*McCracken v. Kijakazi*,
   2021 WL 7209531 (D. Del. Dec. 27, 2021)..................................................................4

*Tyger Constr. Co. v. Pensacola Constr. Co.*,
   29 F.3d 137 (4th Cir. 1994) ..........................................................................................4

**Rules**

Fed. R. Evid. 702 .................................................................................................................1, 4

## INTRODUCTION AND SUMMARY OF ARGUMENT

Rather than try to salvage Dr. Chad Syverson's *ipse dixit* pronouncements, Counterdefendants simply assert that Dr. Syverson's opinions about legal researcher preferences are ▮▮▮▮ and should be credited by this Court as is. (Opp'n Br. at 12 (▮▮▮▮

▮▮▮▮

▮▮▮▮) (Emphasis added; cleaned up.).)  Whatever ▮▮▮▮ Dr. Syverson may have, they are not premised on actual facts.  Nor can they support his conclusion that ▮▮▮▮

▮▮▮▮ Counterdefendants can claim that these observations are ▮▮▮▮ but saying that does not make it so.

Dr. Syverson's challenged opinions fail both aspects of the Rule 702 analysis: (1) they are not based on any facts or data, and (2) they are not the product of applicable economic principles and methods.  *See* Fed. R. Evid. 702(b)–(d); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 151 (1999).

Unable to counter ROSS's arguments, Counterdefendants' opposition resorts to pointing out the aspects of Dr. Syverson's opinion that ROSS *did not* challenge in its *Daubert* motion. This does nothing to save Dr. Syverson's challenged opinions.  It merely highlights that ROSS has judiciously focused on those portions of Dr. Syverson's opinion that are so unreliable that they should not be presented to the jury—namely, (1) his opinions about legal researcher preferences and (2) his overall claim that ▮▮▮▮

▮▮▮▮.  That does not mean that ROSS *agrees* with Dr. Syverson's remaining opinions and accepts them as true.  ROSS does not.  ROSS merely is not challenging them under *Daubert*.

## ARGUMENT

**A. Dr. Syverson's opinions on legal researcher preferences are not based on relevant facts or data and are not the product of applicable economic principles and methods.**



Dr. Syverson's overall claim is that [REDACTED] (Nguyen Decl., Ex. A, Syverson Report ¶ 59[1]). According to Dr. Syverson, economists [REDACTED] (*Id.*)[2] It is Dr. Syverson's claim that [REDACTED] (*Id.*)

Counterdefendants' defense of Dr. Syverson's opinions on legal research preferences can be summarized as follows: *First*, Dr. Syverson [REDACTED] (Opp'n Br. at 12.) *Second*, [REDACTED] (*Id.*) And *third*, [REDACTED]

---

[1] Unless otherwise indicated, citations to the Nguyen Declaration refer to the Declaration of Beatrice Nguyen (D.I. 518) submitted concurrently with ROSS's opening brief.

[2] Dr. Syverson states that:



(Nguyen Decl., Ex. A, Syverson Report ¶ 59.)

██████████████████████████ (*Id.* at 13.) Each of these purported defenses fall short. We address them in turn.

      **1.    Statements by ROSS's expert about legal *content* do not support Dr. Syverson's position that** ████████████████████████████████████

Counterdefendants argue that Dr. Syverson's ████████████████████████ ████████████████████████████████████ is supported by ROSS's own expert, Dr. Gillian Hadfield. Specifically, Counterdefendants point to Dr. Hadfield's opinion that ███ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████ (Opp'n Br. at 12 (citing Hadfield Rep. ¶¶ 32, 33).)[3]

Counterdefendants are silent, however, as to how (or why) Dr. Hadfield's statements on ████████████████████████████████████████ is somehow indicative of the different "features" that legal researchers look for in their *search* tools. And Counterdefendants point to nothing to support the notion that Dr. Hadfield opined as to whether the preferences for those search features are vertical or horizontal in nature. Indeed, Dr. Hadfield does not speak on this issue, which means that Dr. Syverson's reliance on her statements is misplaced at best (or misleading at worst).

Even if Dr. Hadfield's statements ████████████████████████████████ ███████ could be construed as suggesting that researchers' demand for caselaw *databases* is vertically differentiated, it does not follow, as Dr. Syverson declares, that demand for legal

---

    [3] Counterdefendants cite to paragraph 23 in Dr. Hadfield's report in what is likely an inadvertent mistake; the correct language is found in paragraphs 32 and 33. (*See also* Nguyen Decl., Ex. A, Syverson Report ¶ 59, n.126 (citing to paragraph 32 of Dr. Hadfield's report).)

search *tools*—the *manner* in which researchers find the law—is *also* vertically differentiated (as opposed to horizontally differentiated).

    2.    **Dr. Syverson offers no support for his opinions** ▮▮▮

Aside from this misguided reliance on Dr. Hadfield's opinions, Counterdefendants do not offer evidence that *supports* Dr. Syverson's opinion ▮▮▮ Counterdefendants insist that Dr. Syverson is correct ▮▮▮ (Opp'n Br. at 12.) Counterdefendants then argue that Dr. Syverson (an economist) ▮▮▮ (*Id.*)

This is far from the factual basis that Rule 702 requires. *See Tyger Constr. Co. v. Pensacola Constr. Co.*, 29 F.3d 137, 142 (4th Cir. 1994) ("An expert's opinion should be excluded when it is based on assumptions which are speculative and not supported by the record."); *Elcock v. Kmart Corp.*, 233 F.3d 734, 754 (3d Cir. 2000) (explaining that an expert's testimony must be based on a sufficient factual foundation).

To begin with, "absence of evidence is not evidence of absence." *Chambers v. Sec'y Pa. Dep't. of Corr.*, 442 F. App'x 650, 656 (3d Cir. 2011); *accord McCracken v. Kijakazi*, 2021 WL 7209531, at *3 (D. Del. Dec. 27, 2021); *Ellis v. Albonico*, 2007 WL 809804, at *5 (E.D. Cal. Mar. 15, 2007), *R&R adopted*, 2007 WL 954727 (E.D. Cal. Mar. 29, 2007). Even taking on faith Dr. Syverson's ▮▮▮ is not a basis to assert affirmatively that there is no heterogeneity in legal researcher preferences. Indeed, even Counterdefendants acknowledge that Westlaw caters to these varied preferences by creating (and marketing)

different versions of Westlaw (Opp'n Br. at 13)—meeting researchers where demand is. Westlaw's menu of search tools *all* connect to the same legal content, but offer researchers *different* ways to find the law. (Nguyen Decl., Ex. D, Ratliff Opening Report § V.A.2 (explaining that ███); *see also id.*, Ex. K, Ratliff Reply Report ¶ 138 (citing TRCC-00684592–605, at 602 ███).) Indeed, by the same token, Dr. Syverson offers ███ Yet he still claims as much.

One piece of "evidence" that Counterdefendants do offer is Dr. Syverson's ███ (Opp'n Br. at 12.) Putting aside the obvious logical fallacy of this position (*how can* ███ *mimic the preferences of hundreds of thousands of legal researchers?*) and the fact that ███, this is precisely the core problem with Dr. Syverson's opinions on legal researcher preferences: they rely on nothing more than his own say-so. *See Kumho Tire,* 526 U.S. at 157 ("Of course, [the expert] himself claimed that his method was accurate, but . . . 'nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.'"); *see also In re Live Concert Antitrust Litig.*, 863 F. Supp. 2d 966, 996 (C.D. Cal. 2012) (excluding expert's testimony that essentially opined "I am an economist, I reviewed a large amount of 'industry information' . . . and this industry information supports my conclusion").

This is equally the case with Dr. Syverson's point that ███████████████████████████████ ███████████████████████████████████ (Nguyen Decl., Ex. A, Syverson Report ¶ 59.) Counterdefendants do not even attempt to defend this particular aspect of Dr. Syverson's opinion—for good reason. Not only is Dr. Syverson's opinion completely devoid of factual support, it goes against basic economic principles because it implies that competition, choice, and innovation have no independent value for these legal researchers; Westlaw already knows what they want and need. (Nguyen Decl., Ex. K, Ratliff Reply Report ¶¶ 124, 144.) And yet, this opinion allows Dr. Syverson to go on and declare that, ███████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ (Nguyen Decl., Ex. A, Syverson Report ¶¶ 96, 100.) These naked pronouncements should not make their way to the jury.

  **3.** **Dr. Syverson uses the concepts of vertical and horizontal differentiation as window dressing for his unsupported pronouncements about researcher preferences and fails to offer any testable and repeatable methods of analysis.**

Even if Dr. Syverson's opinions were somehow based on sufficient facts or data (they are not) to meet the *Daubert* standard, his opinion must also be the *product* of reliable principles and methods that are reliably applied. While Counterdefendants identify a piece of economic theory that they claim is established and relevant, they do not actually explain how Dr. Syverson used that theory to reach his conclusions.

Counterdefendants' core error here is that they describe the literature on which Dr. Syverson purports to rely as "economics of consumer behavior." (Opp'n Br. at 3.) In reality, the key text cited by Dr. Syverson for this point—Economics of Strategy—does not deal with consumer behavior, but rather with corporate strategic decisions. (*See* Nguyen Decl., Ex. A, Syverson Report nn.108, 113, 118.) Consumer preferences (and to what degree they differ) are

discussed, but only in the context of business strategies to meet those preferences where they are. (*Id.* ¶¶ 58, 59, nn.122, 123.) The proposed economic theory, therefore, does not assist Dr. Syverson to do what he purports to do:   What we are left with is Dr. Syverson's musings and not much more.

Even within the confines of this theory, when commenting on product differentiation (rather than consumer "tastes"), Dr. Syverson never actually explains what supports his view . Here, again, there is only Dr. Syverson's say-so to show for.

**B.    ROSS's Daubert challenge focuses on Dr. Syverson's opinions on the character of legal researcher demand for separately provided public law databases and legal search tools.**

Counterdefendants also argue that the Court should deny ROSS's *Daubert* motion because  (Opp'n Br. at 14–15.) In route, Counterdefendants also incorrectly claim that ROSS did not challenge Dr. Syverson's opinions on "separate demand." (*Id.* at 9.)

As noted above, ROSS has carefully crafted its *Daubert* challenge. While it disagrees with *all* of Dr. Syverson's opinions (as demonstrated by the reply report of its expert, Dr. James D. Ratliff), ROSS's position is that only certain of those opinions should not make it to the jury, because they fail to meet the *Daubert* standard.

Having said that, the Court should give special attention to Counterdefendants' attempt to mischaracterize ROSS's *Daubert* challenge. ROSS's motion is clear that its *Daubert* challenge against Dr. Syverson goes beyond his opinions on the "tastes" of legal researchers and whether

those tastes are already satisfied by existing legal search products. Indeed, part "B" of ROSS's Argument section is dedicated to Dr. Syverson's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (Mot. at 9–10.[4])

ROSS's challenges to these opinions are not "quibbles"; they address a core element of Dr. Syverson's position, claiming that "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." (Nguyen Decl., Ex. A, Syverson Report ¶¶ 96, 100.) These are the opinions ROSS asks this Court to focus on—and exclude—under *Daubert*.[5]

## CONCLUSION

For the foregoing reasons, ROSS respectfully requests that the Court exclude Dr. Chad Syverson's opinions and testimony on ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

---

[4] The title of the relevant section reads: Dr. Syverson's Claims ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Are Unreliable and Irrelevant Because They Are Based on Nothing More Than His Speculation that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮."

[5] Counterdefendants claim that ROSS never mentions Dr. Syverson's opinions that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Opp'n Br. at 9.) But the key points in this section, contained in paragraphs 72 through 74, merely repeat Dr. Syverson's earlier statements about ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

OF COUNSEL:

Gabriel M. Ramsey
Warrington S. Parker III
Beatrice B. Nguyen
Joachim B. Steinberg
Jacob Canter
CROWELL & MORING LLP
3 Embarcadero Ctr., 26th Floor
San Francisco, CA 94111
Tel: (415) 986-2800

Matthew J. McBurney
Crinesha B. Berry
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, DC 20004
Tel: (202) 624-2500

Dated: October 26, 2023
11133317 / 20516.00001
Public Version Dated: November 1, 2023

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

By: */s/ David E. Moore*
    David E. Moore (#3983)
    Bindu A. Palapura (#5370)
    Andrew L. Brown (#6766)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, DE  19801
    Tel:  (302) 984-6000
    dmoore@potteranderson.com
    bpalapura@potteranderson.com
    abrown@potteranderson.com

*Attorneys for Defendant/Counterclaimant ROSS Intelligence, Inc.*

-9-