IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION, | ) ) ) ) ) |
| Plaintiffs and Counterdefendants, | ) ) ) |
| v. | ) ) ) |
| ROSS INTELLIGENCE INC., | ) ) |
| Defendant and Counterclaimant. | ) ) ) |

C.A. No. 20-613 (SB)

REDACTED – PUBLIC VERSION

**THOMSON REUTERS' REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON ROSS'S ANTITRUST COUNTERCLAIMS (NO. 1) – SEPARATE PRODUCTS**

OF COUNSEL:

Daniel E. Laytin, P.C.
Christa C. Cottrell, P.C.
Cameron D. Ginder
Max A. Samels
KIRKLAND & ELLIS LLP
300 North La Salle
Chicago, IL 60654
(312) 862-2000

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200

*Attorneys for Plaintiffs Thomson Reuters Enterprise Center GmbH and West Publishing Corporation*

Original filing date: October 26, 2023
Redacted filing date: November 2, 2023

# TABLE OF CONTENTS

Page

ARGUMENT ................................................................................................................................. 2

I.  ROSS Cannot Dispute That the Consumer-Demand Test Requires Evidence That Legal Researchers Have Licensed or Requested to License Separate Products. ................ 2

II. ROSS Has Failed to Present Sufficient Evidence of Legal Researcher Demand for Standalone Public Law Databases and Legal Search Tools. .............................................. 5

III. ROSS's Remaining Evidence Is Irrelevant and Cannot Overcome Its Failure to Show Consumer Demand. ................................................................................................... 7

CONCLUSION .............................................................................................................................. 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*AngioDynamics, Inc. v. C.R. Bard, Inc.*,
   537 F. Supp. 3d 273 (N.D.N.Y. 2021) ................................................................................3

*In re Data Gen. Corp. Antitrust Litigation*,
   490 F. Supp. 1089 (N.D. Cal. 1980) .................................................................................10

*Debjo Sales, LLC v. Houghton Mifflin Harcourt Publ'g Co.*,
   2015 WL 1969380 (D.N.J. Apr. 29, 2015) ......................................................................6, 7

*Downs v. Insight Commc'ns Co.*,
   2010 WL 2228295 (W.D. Ky. June 3, 2010) ......................................................................3

*Downs v. Insight Commc'ns Co.*,
   2011 WL 1100456 (W.D. Ky. Mar. 22, 2011) ....................................................................3

*Eastman Kodak Co. v. Image Tech. Servs., Inc.*,
   504 U.S. 451 (1992) .............................................................................................2, 3, 5, 8

*Jefferson Par. Hosp. Dist. No. 2 v. Hyde*,
   466 U.S. 2 (1984) ..............................................................................................................3, 6

*Kenney v. Am. Bd. of Internal Med.*,
   412 F. Supp. 3d 530 (E.D. Pa. 2019) .................................................................................2

*Siva v. Am. Bd. of Radiology*,
   38 F.4th 569 (7th Cir. 2022) ...............................................................................................3

*SMS Sys. Maint. Servs., Inc. v. Digital Equip. Corp.*,
   188 F.3d 11 (1st Cir. 1999) .................................................................................................3

*United States v. Microsoft Corp.*,
   253 F.3d 34 (D.C. Cir. 2001) .....................................................................................4, 6, 8

ROSS does not dispute that its per se, rule of reason, and California-law tying claims rise and fall on whether it can prove public law databases and legal search tools are separate products. Indeed, ROSS admits that the question "at the heart" of its antitrust case is whether it is appropriate to use antitrust law to deconstruct Westlaw's legal research platform into a "mix-and-match" approach to legal research. Yet ROSS lacks evidence that any legal researchers—let alone the "significant set" that the law requires—requested or wanted to combine different public law databases and legal search tools.

No surprise there; ROSS invented its "mix and match" theory for purposes of this litigation. When it was in business, ROSS marketed a legal research platform, just like Westlaw, Lexis, and other competitors. It is uncontested that ROSS never even approached its customers to sell them a standalone legal search tool and that no customer ever demanded a standalone "public law database" from Westlaw, Lexis, Fastcase, Casemaker, or any other entity that has done the work to assemble caselaw. Indeed, ROSS's own legal research history expert testified that ███████████████████████████████████ Ex. 108, Martin Dep. 32:24–33:4.[1]

Lacking evidence of customer demand, ROSS instead emphasizes the supposed quality of its own product, the technical separability of public law databases and legal search tools, and that lawyers bought books before the Internet. None of these even address, much less answer, the relevant question of whether sufficient consumers requested to buy the components of an integrated legal research platform as separate products. ROSS has not identified a *single case* permitting a tying plaintiff to proceed to trial without evidence that consumers have requested to

---

[1] Throughout Thomson Reuters' counterclaim summary judgment reply briefs, exhibits numbered 1–104 refer to exhibits attached to the Declaration of Max Samels, D.I. 531, 532, 533, exhibits numbered 105–120 refer to exhibits attached to the accompanying Supplemental Declaration of Max Samels, and lettered exhibits refer to exhibits attached to the Declaration of Beatrice B. Nguyen, D.I. 558.

buy the supposedly tied products separately. The Court should decline ROSS's invitation to be the first to so hold. The time to resolve this issue is now: "whether two products are present … should be regarded as a question of law to be resolved by the judge," and the undisputed evidence here makes this an easy case. Areeda & Hovenkamp ¶ 1743c. Thomson Reuters is thus entitled to summary judgment on Counts VI, VII, and VIII.

## ARGUMENT

I.  **ROSS Cannot Dispute That the Consumer-Demand Test Requires Evidence That Legal Researchers Have Licensed or Requested to License Separate Products.**

ROSS does not contest that the only relevant inquiry is whether there is demand from "***consumers***" of legal research services—not competitors like ROSS. *See* D.I. 520 at 9; *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 463 (1992). As Thomson Reuters explained, that requires ROSS to come forward with "evidence that consumers 'bought the items separately' or even 'requested or wanted the items separated.'" D.I. 520 at 11 (quoting Areeda & Hovenkamp ¶ 1743b). ROSS's attempt to water down the consumer-demand test fails as a matter of law.

*First*, ROSS argues that it need not introduce real-world evidence that legal researchers have expressed interest in "actual separate purchases" because that is not "the only way of showing separate demand." D.I. 555 at 2, 6. But that is not the law. Despite citing Areeda & Hovenkamp extensively, ROSS ignores their clear explanation that "many lower court cases have held that plaintiffs must make a threshold showing that some significant set of buyers have requested or wanted the items separated."[2] *Id.* ¶ 1743a; *Kenney v. Am. Bd. of Internal Med.*, 412 F. Supp. 3d 530, 544 (E.D. Pa. 2019) (explaining that courts look to "the history of the products being, or not

---

[2] ROSS suggests that *Kenney* supports its position because it uses the phrase "*inter alia*." D.I. 555 at 7. But that argument is meritless because the only type of "relevant" evidence that *Kenney* discusses or analyzes is the "history of the products being" sold separately. 412 F. Supp. 3d at 544.

2

being, sold separately"). Indeed, ROSS does not dispute that the Supreme Court's application of the separate-product test in *Eastman Kodak* turned on evidence that the relevant products had "been sold separately in the past and still are sold separately." 504 U.S. at 462. Thus, the caselaw is consistent that plaintiffs survive summary judgment in a tying case only where they have evidence of actual separate purchases or customer requests. *See, e.g.*, *AngioDynamics, Inc. v. C.R. Bard, Inc.*, 537 F. Supp. 3d 273, 307 (N.D.N.Y. 2021) (emphasizing evidence that one customer purchased defendant's product separately, others requested to do so, and defendant's competitors sold products separately).[3]

Tellingly, ROSS ***does not cite a single*** case where a court permitted a plaintiff to proceed to trial without showing that a consumer purchased the products separately or sought to do so. The only new cases that ROSS relies on are two dismissal decisions. In one, the Seventh Circuit affirmed dismissal on separate product grounds, holding that the plaintiff had failed to allege a "distinct product market in which it is efficient to offer [the tied product] separately from [the tying product]." *Siva v. Am. Bd. of Radiology*, 38 F.4th 569, 575 (7th Cir. 2022). In the other, a district court denied a motion to dismiss by relying on allegations that members of the "putative class would like to buy [the tied product] on the open market, but are foreclosed from doing so." *Downs v. Insight Commc'ns Co.*, 2010 WL 2228295, at *3 (W.D. Ky. June 3, 2010).[4] Both decisions are

---

[3]   *Accord Eastman Kodak Co.*, 504 U.S. at 462 (holding that plaintiff could survive summary judgment because of evidence "that service and parts have been sold separately in the past and still are sold separately to self-service equipment owners"); *Jefferson Par. Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 22 (1984) (permitting claim that hospital services were tied to anesthesiological services because "patients or surgeons often request specific anesthesiologists to come to a hospital and provide anesthesia"); *SMS Sys. Maint. Servs., Inc. v. Digital Equip. Corp.*, 188 F.3d 11, 15 (1st Cir. 1999) (holding computers and warranties could be separate products because manufacturers offer "warranties of differing lengths, or nothing at all").

[4]   The 2011 decision ROSS cites explicitly incorporates the 2010 decision, which relied on this allegation of separate consumer demand. 2011 WL 1100456 (W.D. Ky. Mar. 22, 2011).

3

only relevant here to demonstrate that while ROSS's complaint may have alleged just enough to state a claim, it must back up those allegations with facts. The problem is ROSS has not done so.

***Second***, ROSS argues that it need not make the required showing of consumer demand because legal researchers never had "an opportunity to buy the two products separately" and thus it would be "an exercise in futility" to ask ROSS to come forward with evidence of legal researcher demand. D.I. 555 at 2, 5 (citation omitted). But ROSS's "mix and match" thesis was market tested in the real world, for years. According to ROSS's own allegations, Thomson Reuters competitors Fastcase and Casemaker ***openly licensed public law databases*** to legal research platforms like ROSS. D.I. 225 ¶ 71. Yet no legal researcher ever licensed or expressed interest in licensing either company's public law database to conduct legal research. ROSS ignores its own experts' admissions that ███████████████████████████████████████████████████████████████ Ex. 5, Cox. Dep. II 124:12–125:19. When, as here, the evidence from the "competitive fringe" of "smaller competitors" is that they only ever sold their product to the relevant consumers as a bundle, then "the bundle should be treated as one product." Areeda & Hovenkamp ¶ 1744c4.

***Finally***, ROSS mischaracterizes authorities to justify a lower burden of proof. For example, ROSS points to *Microsoft*'s observation that "many consumers, if given the option, would choose their [Internet] browser separately from the [operating system]." D.I. 555 at 5 (citing *United States v. Microsoft Corp.*, 253 F.3d 34, 88 (D.C. Cir. 2001)). But in making this statement, *Microsoft* explicitly relied on a finding of fact that customers actually bought the products separately. 253 F.3d at 88 (relying on finding that "corporate customers … prefer to standardize on the same browser across different [operating systems]" and did so). That's not hypothetical demand; it's actual demand. Similarly, ROSS misinterprets Areeda & Hovenkamp's statement

4

that a plaintiff need not show the "current existence of independent markets" because such a test could "immunize the worst-case scenario of a successful tie." Areeda & Hovenkamp ¶ 1745d1. This passage avers that a plaintiff must show actual separate sales *or* evidence that consumers "***requested or wanted the items separated***." *Id.* ¶ 1743b (emphasis added). It does not provide support for any "hypothetical demand" test. For good reason: as *Eastman Kodak* and its progeny make clear, a plaintiff must demonstrate "sufficient consumer demand" for the "two distinct products." 504 U.S. at 462. Try as it might, ROSS cannot avoid that standard here.

## II. ROSS Has Failed to Present Sufficient Evidence of Legal Researcher Demand for Standalone Public Law Databases and Legal Search Tools.

The resolution of the appropriate legal standard for separate products dictates summary judgment here. ROSS identifies no legal researcher *ever* mixing-and-matching separate public law databases and legal research tools from Westlaw, ROSS, Lexis, Fastcase, Casemaker, or anyone else. ROSS ignores that four of its experts ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *E.g.*, Ex. 18, Martin Dep. 60:5–23; Ex. 23, Ratliff Dep. 20:14–18 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ In fact, ROSS has completely abandoned much of the other evidence it had previously claimed showed separate demand. *Contrast, e.g.*, Ex. 44, ROSS Interrogatory Resp. at 6–7 (citing sources like ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *and* Ex. 33, Ratliff Rpt. ¶¶ 46–51 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮, *with* D.I. 555 (not arguing that any of this evidence shows ▮▮▮▮ ROSS's "evidence" of separate legal researcher demand is ▮▮▮▮▮▮▮ ▮▮ D.I. 555 at 11–12. But as a matter of law, a handful of idiosyncratic requests cannot prove that "there is a sufficient demand" to make it "efficient to offer" these products separately.

5

*Jefferson Parish*, 466 U.S. at 21. Thus, evidence from "a few rare customers" cannot suffice to meet ROSS's burden. Areeda & Hovenkamp ¶ 1744d. As *Microsoft* explained, the point of the separate products inquiry is to determine if the "benefits to choice for ***enough*** customers" outweigh the "efficiencies from bundling." 253 F.3d at 87 (emphasis added). Indeed, *Debjo Sales, LLC v. Houghton Mifflin Harcourt Publ'g Co.*, a case Thomson Reuters cited but ROSS chose to ignore, held that a plaintiff had failed to plead that textbooks and textbook delivery were separate products even though it had alleged that "at least one" school district had purchased the two components separately. 2015 WL 1969380, at *4 (D.N.J. Apr. 29, 2015) (explaining that "these allegations do not show sufficient consumer demand for delivery of the textbooks"). Areeda & Hovenkamp even suggests that a bundle is a "single product" if "less than 20 percent of the tying item is sold unbundled." ¶ 1744d.[5] ROSS does not come close to that standard here.

In any event, ROSS's "evidence" of separate demand evaporates upon inspection. First, ROSS cites ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████ Ex. 116, TRCC-01875817. ███████████████████████████████████████████████████████ ███████████████████ Ex. 117, TRCC-01894165; Ex. 118, TRCC-01894166. ████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████ *Id.* Second, ROSS cites ███████████████████████████████████████████████████

---

[5] ROSS claims this passage is inapplicable, D.I. 555 at 6 n.2 but the examples that the treatise uses to illustrate this principle are on point, and ROSS does not try to distinguish them. Areeda & Hovenkamp ¶ 1744d (example of automobile manufacturers that "routinely sell drivetrains only as part of automobiles, but only occasionally sell them" separately).

███████████████████████████████████████████████████████ Ex. 119, TRCC-00735652.  Neither shows demand for mixing and matching public law and legal search.

Finally, ROSS asserts that its own executives testified that ███████████████ ████████████████████████████ D.I. 555 at 12.  ROSS's decision not to quote the underlying testimony obscures that █████████████████████████████ █████████████████████████████████████████  Bare assertions about ████ ████████████████ cannot constitute sufficient evidence of consumer demand.  *Debjo*, 2015 WL 1969380, at *4 (assertion that separate demand existed not sufficient because the "content and number [of consumer requests] … is left to the imagination").  Accordingly, ROSS has failed to come forward with sufficient evidence of separate demand, compelling summary judgment here.

### III. ROSS's Remaining Evidence Is Irrelevant and Cannot Overcome Its Failure to Show Consumer Demand.

Rather than address the separate-demand issue that "is at the heart" of its case, ROSS's opposition marshals evidence on an array of different topics, from physical books to the supposed quality of ROSS's search technology.  D.I. 555 at 10.  This scattershot evidence is irrelevant but more importantly, as a matter of law, it cannot remedy ROSS's failure to show that "some significant set of buyers have requested or wanted the items separated."  Areeda & Hovenkamp ¶ 1743a.  It would make little sense to allow ROSS to prove separate consumer demand using this

---

6   *See, e.g*, Ex. T, Phan Dep. 101:9–13 ███████████████████████████████████
████████████████ ; Ex. 26, Van De Heijden Dep. II 16:3–9 (Q. ██████████████████
████████████████████████████████████ Ex. 115, Arruda Dep. II 155:13–22 ████
███████████████ Ex. 107, Hamilton Dep. 270:9–271 █████████████████████████
████████████████████████████████████████████████████████████████████████
██████ Ex. 23, Ratliff Dep. 166:14–24).

peripheral evidence when the direct evidence is clear: legal researchers had the opportunity to license a public law database from companies like Fastcase, but ROSS has no evidence of legal researchers making any such request to Fastcase, Thomson Reuters, or anyone else. Regardless, ROSS's "additional evidence," D.I. 555 at 11, is not relevant at all.

*Technological feasibility*: ROSS argues that it is technologically possible to separate a public law database and legal search tool. *Id.* at 8. But it explicitly acknowledges that the consumer-demand test does not turn on the "functional relation[ship]" between the components. *Id.* at 4. This "evidence" has no bearing on the consumer-demand test. *See* D.I. 520 at 18.

*Supposed "value" of ROSS's product*: ROSS argues that legal researchers "find value" in its search technology and asks the Court to infer that legal researchers should have wanted to combine ROSS's search technology with Thomson Reuters' public law database. D.I. 555 at 9–11, 12–13. But this wishful speculation is exactly the "inquiry into possible welfare consequences" of an integrated product that *Jefferson Parish* sought to avoid. *Microsoft*, 253 F.3d at 88; Areeda & Hovenkamp ¶ 1745c ("[N]either *Jefferson Parish* nor *Kodak* inquired directly into the actual costs or quality of offering the items bundled.").

*Printed books*: ROSS has defined the tying product market as ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 33, Ratliff Rpt. ¶ 24. It nevertheless invokes the sale of "printed volumes" of law as evidence of separate demand for electronic databases. D.I. 555 at 8–9. But ROSS never tries to explain why demand for books says anything about whether there is "sufficient demand" from law firms to license a freestanding electronic database of public law and combine it with separately licensed search technology. As ROSS's own expert explained, ▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 18, Martin Dep. 67:14–

17.[7]

This admission also reveals that ROSS fundamentally misunderstands the role of "analogous markets" in the separate demand inquiry. Areeda & Hovenkamp, ROSS's only authority on "analogous markets," explains that courts consider sales of the same product in a different geographic or historical market because the court can presume that "consumer preferences, production costs, and quality concerns" are similar to consumer demand in the market at issue. *Id*. at ¶ 1744c2 (using example of monopolist proving it has not tied left and right shoes because "competitive shoe markets in the past always sold left and right shoes together"). That there are "important" differences between books and electronically searchable collections of law precludes that comparison here. Ex. 18, Martin Dep. 67:14–17. Certainly ROSS cannot rely on books as an "analogous market" when it does not point to any evidence or expert opinion suggesting it is probative of the economics of demand for electronic databases of public law.

***Westlaw APIs***: ROSS's reliance on Westlaw's API program as sufficient evidence of consumer demand, D.I. 555 at 14, fails given its admission that APIs do ***not*** grant "independent access to [Thomson Reuters'] full U.S. public law database." *Id.* ROSS also ignores that APIs ***do not separate search from the underlying database***, as "[o]nly the search results are returned and not the actual documents." Ex. 96, TRCC-01734423; D.I. 555 at 18–19. Thomson Reuters raised this point in its opening brief using Practical Law as an example, and ROSS has no response on this or any other API. *See* D.I. 520 at 19. The very documents ROSS relies on confirm that ROSS's favorite APIs provide remote access to ***integrated search and databases***, not the database alone. *E.g.*, Ex. 120, TRCC-01779416 at 433 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

---

[7] He went on to explain that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ *Id.* 68:22-69:4 (emphasis added).

███████████████████████████████████████████████; *id.* at 432 ████████████████████████████████████████████

████████████████████████████ In any event, it is undisputed that even as to APIs, there was no separate demand for public law: Thomson Reuters' own documents discussing APIs reject the possibility of making all primary and secondary sources available because █████████ ██████████████████████████████████ Ex. 96, TRCC-01734423.

**West KM**: Finally, ROSS invokes "West KM," which in ROSS's own words is a "search technology to retrieve [an organization's] ***own documents***," like "briefs, memoranda, and other work product." D.I. 555 at 17 (emphasis added). By ROSS's own admission, this product has nothing to do with searching the public law. That West KM is a search product demonstrates nothing given the lack of any connection to the public law at issue here. The case ROSS cites to support its argument, *In re Data Gen. Corp.*, illustrates the point. There, the court held that memory boards (the tying product) and CPUs (the tied product) were separate because consumers bought other companies' memory boards to add to the defendant's CPUs and thus create ***the same integrated product that the defendant sells***. 490 F. Supp. 1089, 1108 (N.D. Cal. 1980). ROSS cannot prove that consumers want to mix-and-match public law with legal search by emphasizing that search technology is used for many other purposes, such as "knowledge management."

ROSS's singular focus on the record unrelated to legal researcher's actual demand for separate public law databases and legal search tools is both legally irrelevant and factually unhelpful. Having failed to come forward with evidence sufficient to establish separate demand, ROSS's tying claim fails as a matter of law.

## CONCLUSION

For these reasons and those articulated in ROSS's Motion, the Court should grant summary judgment on Counts VI, VII, and VIII.

|  |  |
|---|---|
| | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
| | */s/ Michael J. Flynn* |
| OF COUNSEL: | Jack B. Blumenfeld (#1014) |
| | Michael J. Flynn (#5333) |
| Daniel E. Laytin, P.C. | 1201 North Market Street |
| Christa C. Cottrell, P.C. | P.O. Box 1347 |
| Cameron Ginder | Wilmington, DE  19899 |
| Max Samels | (302) 658-9200 |
| KIRKLAND & ELLIS LLP | jblumenfeld@morrisnichols.com |
| 300 North La Salle | mflynn@morrisnichols.com |
| Chicago, IL 60654 | |
| (312) 862-2000 | *Attorneys for Plaintiffs and Counterdefendants Thomson Reuters Enterprise Center GmbH and West Publishing Corporation* |
| October 26, 2023 | |

11

## CERTIFICATE OF SERVICE

I hereby certify that on October 26, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on October 26, 2023, upon the following in the manner indicated:

| | |
|---|---|
| David E. Moore, Esquire<br>Bindu Palapura, Esquire<br>Andrew L. Brown, Esquire<br>POTTER ANDERSON & CORROON LLP<br>Hercules Plaza, 6th Floor<br>1313 North Market Street<br>Wilmington, DE  19801<br>*Attorneys for Defendant and Counterclaimant* | *VIA ELECTRONIC MAIL* |
| Mark A. Klapow, Esquire<br>Lisa Kimmel, Esquire<br>Crinesha B. Berry, Esquire<br>Matthew J. McBurney, Esquire<br>CROWELL & MORING LLP<br>1001 Pennsylvania Avenue NW<br>Washington, DC  20004<br>*Attorneys for Defendant and Counterclaimant* | *VIA ELECTRONIC MAIL* |
| Gabriel M. Ramsey, Esquire<br>Jacob Canter, Esquire<br>Warrington Parker, Esquire<br>Margaux Poueymirou, Esquire<br>Anna Z. Saber, Esquire<br>Beatrice B. Nguyen, Esquire<br>CROWELL & MORING LLP<br>3 Embarcadero Center, 26th Floor<br>San Francisco, CA  94111<br>*Attorneys for Defendant and Counterclaimant* | *VIA ELECTRONIC MAIL* |

Shira Liu, Esquire                                                               *VIA ELECTRONIC MAIL*
CROWELL & MORING LLP
3 Park Plaza, 20th Floor
Irvine, CA  92614
*Attorneys for Defendant and Counterclaimant*

                                                            */s/ Michael J. Flynn*
                                                      _____
                                                      Michael J. Flynn (#5333)