IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION, <br><br> Plaintiffs and Counterdefendants, <br><br> v. <br><br> ROSS INTELLIGENCE INC., <br><br> Defendant and Counterclaimant. | C.A. No. 20-613 (SB) <br><br> REDACTED – PUBLIC VERSION |

**THOMSON REUTERS' REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON ROSS'S ANTITRUST COUNTERCLAIMS (NO. 2) – MARKET DEFINITION AND MARKET POWER**

OF COUNSEL:

Daniel E. Laytin, P.C.
Christa C. Cottrell, P.C.
Cameron D. Ginder
Max A. Samels
KIRKLAND & ELLIS LLP
300 North La Salle
Chicago, IL 60654
(312) 862-2000

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200

*Attorneys for Plaintiffs Thomson Reuters Enterprise Center GmbH and West Publishing Corporation*

Original filing date: October 26, 2023
Redacted filing date: November 2, 2023

## **TABLE OF CONTENTS**

**Page**

ARGUMENT ................................................................................................................................. 1

I.     ROSS's Opposition Confirms That It Failed to Define a Relevant Product Market. .......... 1

II.    ROSS Has No Evidence of Market Power in the Relevant Tying Product Market............ 4

        A.     ROSS Cannot Prove That Thomson Reuters Has Market Power in the Tying Product Market Because It Has Failed to Define That Market. ................... 4

        B.     ROSS's "Direct" Evidence of Market Power Is Legally Insufficient..................... 5

        C.     ROSS's Indirect Evidence Cannot Create an Issue of Material Fact About Thomson Reuters' Alleged Market Power. ............................................................ 8

III.   ROSS Cannot Prove a Rule-of-Reason Claim. .................................................................. 9

CONCLUSION ............................................................................................................................ 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allen-Myland, Inc. v. Int'l Bus. Machines Corp.*,
    33 F.3d 194 (3d Cir. 1994)..................................................................................................4

*BanxCorp v. Bankrate, Inc.*,
    2019 WL 2098842 (D.N.J. Mar. 21, 2019)........................................................................6, 7

*Blue Cross & Blue Shield United of Wisconsin v. Marshfield Clinic*,
    65 F.3d 1406 (7th Cir. 1995) .............................................................................................5

*Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*,
    140 F.3d 494 (3d Cir. 1998)............................................................................................2, 4

*Harrison Aire, Inc. v. Aerostar Int'l, Inc.*,
    423 F.3d 374 (3d Cir. 2005)............................................................................................5, 7

*InterVest, Inc. v. Bloomberg, L.P.*,
    340 F.3d 144 (3d Cir. 2003)..............................................................................................5

*Jefferson Parish v. Hyde*,
    466 U.S. 2 (1984)................................................................................................................5

*Mylan Pharm. Inc. v. Warner Chilcott Pub. Ltd.*,
    838 F.3d 421 (3d Cir. 2016)............................................................................................4, 7

*N. Pac. Ry. Co. v. United States*,
    356 U.S. 1 (1958)..............................................................................................................10

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*,
    124 F.3d 430 (3d Cir. 1997)..............................................................................................2

*SmithKline Corp. v. Eli Lilly & Co.*,
    575 F.2d 1056 (3d Cir. 1978)............................................................................................2

*Town Sound & Custom Tops, Inc. v. Chrysler Motors Corp.*,
    959 F.2d 468 (3d Cir. 1992)....................................................................................1, 2, 10

*U.S. Horticultural Supply v. Scotts Co.*,
    367 F. App'x 305 (3d Cir. 2010) ....................................................................................3, 4

*United States. v. Dentsply Intern., Inc.*,
    399 F.3d 181 (3d Cir. 2005)......................................................................................6, 7, 8

Case 1:20-cv-00613-SB   Document 593   Filed 11/02/23   Page 4 of 17 PageID #: 107101

*United States v. Microsoft*,
   253 F.3d 34 (D.C. Cir. 2001) ............................................................................................. 6, 7

*Winn-Dixie Stores, Inc. v. E. Mushroom Mktg. Coop., Inc.*,
   81 F. 4th 323 (3d Cir. 2023) ................................................................................................ 8

iii

ROSS does not contest that to survive summary judgment on a per se tying claim, it must present sufficient evidence to (1) support its proposed relevant tying product market, and (2) demonstrate that Thomson Reuters has market power in that market. ROSS has done neither.

*First*, Dr. Ratliff, ROSS's market expert, made no effort to define any public-law-database market. Throughout this case, ROSS has argued that Westlaw's public law database is "unique," hinting it is a market of one. *See, e.g.*, D.I. 225 ¶ 99. ROSS now disclaims that argument, conceding it is not "advancing a single-brand market." D.I. 554 at 7. Yet ROSS cannot identify *anywhere*, *any proof* that defines any multi-brand tying product market.

*Second*, ROSS cannot establish that Thomson Reuters has market power. To start, its threshold failure to define a relevant tying product market means it cannot demonstrate market power as a matter of law. In any event, the only "evidence" ROSS cites is irrelevant. ROSS points to Westlaw prices, claiming that Thomson Reuters charges more than competitors. But higher prices alone are not enough to infer market power. ROSS also conflates markets, relying on Westlaw's purported share of the legal-research-platform market to imply market power in the public-law-database market. But Westlaw's share of the legal-research market says nothing about its share of, or market power in, the market for public law databases.

In short, ROSS's failure to define the relevant market and prove market power means that it has failed to carry its burden on its per se tying claim. And because it has not identified any non-leveraging theory of harm, ROSS's rule-of-reason claim fails, too.

## ARGUMENT

### I. ROSS's Opposition Confirms That It Failed to Define a Relevant Product Market.

ROSS does not dispute the law. *See* D.I. 554 at 3. ROSS agrees that an antitrust plaintiff asserting a per se tying claim must prove that the defendant "possesses market power in the tying product market." *Town Sound & Custom Tops, Inc. v. Chrysler Motors Corp.*, 959 F.2d 468, 477

(3d Cir. 1992). ROSS agrees that to prove Thomson Reuters "exercises power in the tying market, that market must be properly defined." *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 513 (3d Cir. 1998). And ROSS agrees that it must define the relevant product market "with reference to the rule of reasonable interchangeability and cross-elasticity of demand." *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3d Cir. 1997).

ROSS cannot meet this burden. The thrust of ROSS's argument is that it "will prove a tying market consisting of electronically searchable collections of U.S. public law" because "anything other than public law is not a reasonable substitute" for legal researchers. D.I. 554 at 4–5. But whether secondary sources, or any other legal sources, are a substitute for public law is irrelevant. "Cars" may, in some instances, be a product without reasonable substitutes for transportation. That does not make "cars" a properly defined market. Rather, the "relevant product market includes Chrysler cars *and* cars that are reasonably interchangeable with Chrysler cars." *Town Sound*, 959 F.2d at 480. "[D]efining a relevant product market is a process of describing those *groups of producers* which, because of the similarity of their products, have the ability … to take significant amounts of business away from each other" and a legally adequate market definition "must look at *all relevant sources of supply*." *SmithKline Corp. v. Eli Lilly & Co.*, 575 F.2d 1056, 1063 (3d Cir. 1978) (emphasis added); *see also Town Sound*, 959 F.2d at 480 ("[A] market also includes actual or potential competitors who may take business away from each other.").[1]

Dr. Ratliff ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[1] Though ROSS argues that markets are defined "by reference to the *products* at issue—not the producers," D.I. 554 at 7, it cites the DOJ and FTC's merger guidelines, which explicitly state that "market definition allows [litigants] to identify **market participants**," Ex. GGG, DOJ & FTC, Horizontal Merger Guidelines (Aug. 19, 2010) at 7 (emphasis added).

███████████████████████████ In his three paragraphs analyzing the ███████████████ ███████████████████████████████ Ex. 33 Ratliff Rpt. ¶¶ 24–26, Dr. Ratliff ████████████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████. And though ROSS goes to great lengths to argue that a product market can be defined *either* through "reasonable interchangeability of use *or* the cross-elasticity of demand between the product itself and substitutes for it," D.I. 554 at 4—Dr. Ratliff ████████ Dr. Ratliff █████████████████████████████████████████████ ████████████████████████████████████████████████ █████████████████████.[2] Dr. Ratliff's failure to perform this analysis means ROSS has not met its legal burden as an antitrust plaintiff to prove a relevant market. *See U.S. Horticultural Supply v. Scotts Co.*, 367 F. App'x 305, 310–11 (3d Cir. 2010).

ROSS now insists that Dr. Ratliff considered "all of these companies" and concluded that ███████████████████████████████████████ D.I. 554 at 7. But tellingly, ROSS does not identify anywhere in Dr. Ratliff's report where he lists actual or potential competitors in the market for public law databases. None exists. The most ROSS can muster is a single cite to a single table from a single paragraph in Dr. Ratliff's report. *Id.* (citing Ratliff Rpt. ¶ 164, Table 1). This cite alone demonstrates that Dr. Ratliff did not conduct the legally necessary analysis: Table 1 is a ██████████████████

---

[2]  ROSS argues that Dr. Ratliff could not conduct an elasticity analysis because "an actual price for access to Westlaw's standalone public law collection does not exist." D.I. 554 at 8. But this ignores that Dr. Ratliff ████████████████████████████████ which ROSS concedes includes Fastcase and Casemaker, and ROSS affirmatively alleges that those entities *do* sell their public law collections. D.I. 225 ¶ 28 (alleging that ROSS licensed public law from these companies). ROSS's failure to adduce evidence of cross-elasticity in the public-law-database market cannot be blamed on Thomson Reuters.

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

██████████  It is no expert analysis at all.

ROSS's plea that "market definition is a 'highly factual' question" may be true when there is a dispute about *how* the plaintiff properly defined a relevant product market. D.I. 554 at 1. It is not true, however, where the plaintiff presents *no evidence* of the relevant product market. *U.S. Horticultural*, 367 F. App'x at 310–11. And here, ROSS has not defined the tying product market. This alone compels summary judgment. D.I. 522 at 14–15 & n.9 (collecting cases).

**II.     ROSS Has No Evidence of Market Power in the Relevant Tying Product Market.**

Just like its concession that ROSS "must first define the relevant tying product market," ROSS admits it must "prove that the defendant has market power in the tying product" market. D.I. 554 at 3. ROSS failed to meet its market power burden, which ROSS concedes is fatal for both its Section 1 and Section 2 tying claims, for three reasons. D.I. 554 at 9 n.4.

**A.     ROSS Cannot Prove That Thomson Reuters Has Market Power in the Tying Product Market Because It Has Failed to Define That Market.**

Without a properly defined market, ROSS cannot prove that Thomson Reuters has market power in that market. *Brokerage Concepts*, 140 F.3d at 513; *Allen-Myland, Inc. v. Int'l Bus. Machines Corp.*, 33 F.3d 194, 200–01 (3d Cir. 1994). As the Third Circuit explained in *Allen-Myland*, the "first inquiry in any § 1 tying case is whether the defendant has sufficient market power over the tying product, which requires a finding that two separate product markets exist and a determination of precisely what the tying and tied product markets are." *Id.* Because ROSS has failed in that threshold burden, it cannot demonstrate market power. *See id.*

### B.     ROSS's "Direct" Evidence of Market Power Is Legally Insufficient.

A plaintiff can prove market power through "direct evidence of supracompetitive prices and restricted output." *Mylan Pharm. Inc. v. Warner Chilcott Pub. Ltd.*, 838 F.3d 421, 434 (3d Cir. 2016) (citation omitted). "Direct evidence," however, requires a "proverbial smoking gun." *See InterVest, Inc. v. Bloomberg, L.P.*, 340 F.3d 144, 159 (3d Cir. 2003) (citation omitted). And none of ROSS's evidence comes close.

#### 1.     ROSS Has No Evidence of Supracompetitive Prices.

ROSS contends that it has direct evidence of market power because Thomson Reuters "charge[s] a substantial price premium over [its] competitors." D.I. 554 at 10. But even "the uncontested fact" that an antitrust defendant's product "is more expensive than that of its [ ] competitors ... does not support a reasonable inference of monopoly power." *Harrison Aire, Inc. v. Aerostar Int'l, Inc.*, 423 F.3d 374, 381 (3d Cir. 2005). Competition is "characterized by both price and quality competition, and a firm's comparatively high price may simply reflect a superior product." *Id.* Thus, for a "heterogeneous product," "a reasonable finder of fact ***cannot infer monopoly power just from higher prices***." *Id.* (emphasis added) (quoting *Blue Cross & Blue Shield United of Wisconsin v. Marshfield Clinic*, 65 F.3d 1406, 1411–12 (7th Cir. 1995)). Even ROSS concedes high prices constitute evidence of market power only when they "can be raised above the levels that would be charged in a competitive market." D.I. 554 at 3 (quoting *Jefferson Parish v. Hyde*, 466 U.S. 2, 27 n.46 (1984)).

ROSS's briefing is riddled with concessions that legal research platforms are heterogenous. ROSS contends that Westlaw has a "'must have' public law database," D.I. 555 at 10, and that the record "is replete with examples of customer praise for ROSS's search offering" and customer complaints about Westlaw's, *id.* at 9; D.I. 554 at 12. ROSS's experts similarly devote paragraphs

to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Thus, even if Thomson Reuters charges higher prices than its competitors, no jury could "infer monopoly power" from those prices alone.

ROSS recognizes the law but has no answer to it. So it instead tries to flip the burden, arguing that Thomson Reuters can attempt to "justif[y]" its "ability to price at supracompetitive levels" based on "Westlaw's higher quality" at trial. D.I. 554 at 12–13. That is not the law. ROSS, as plaintiff, bears the burden of presenting direct evidence of Thomson Reuters' market power. It must come forward with "some quantitative measure of competitive market prices." *BanxCorp v. Bankrate, Inc.*, 2019 WL 2098842, at *4 (D.N.J. Mar. 21, 2019). Yet ROSS has no evidence that Thomson Reuters charges *supracompetitive* prices. Dr. Ratliff did not determine a baseline competitive price. Dr. Ratliff did not ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 23, Ratliff Dep. 94:23–95:2. Dr. Ratliff did not ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* Dr. Ratliff ▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at 92:23–93:6. Dr. Ratliff did not ▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at 95:10–15. In fact, Dr. Ratliff remarkably conceded ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮ Ex. 111, Ratliff Dep. 97:16–23.

Nothing in *Dentsply* or *Microsoft* suggests ROSS can proceed without any pricing analysis. D.I. 554 at 10 (citing *United States. v. Dentsply Intern., Inc.*, 399 F.3d 181 (3d Cir. 2005) and *United States v. Microsoft*, 253 F.3d 34 (D.C. Cir. 2001)). ROSS cites those cases for the

---

[3] Ex. 31, Hadfield Rpt. ¶ 21.

[4] Ex. 31, Hadfield Rpt. ¶ 117; *id.* at 39; Ex. 9, Hadfield Dep. 173:2–6.

6

proposition that a defendant has market power if it sets "prices with little concern for [its] competitors." *Id.* (quoting *Dentsply*, 399 F. 3d at 191). Neither court discussed whether the products at issue were heterogenous. Regardless, differential pricing is relevant only insofar as the plaintiff proved the defendant charged anticompetitive prices; different prices alone cannot be evidence of market power. *Harrison Aire*, 423 F.3d at 381. Sure enough, in both cases, the plaintiff provided evidence that the defendant charged anticompetitive prices, the exact evidence ROSS is missing here. In *Dentsply*, the court stated that Dentsply arguably charged supracompetitive prices because "**experts for both parties** testified that **prices would fall**" if the challenged conduct were eliminated. 399 F.3d at 190–91 (emphasis added). And in *Microsoft*, the district court found, and the D.C. Circuit accepted, that Microsoft charged "a price **lower** than the short-term profit-maximizing price," a finding "not inconsistent with possession or improper use of market power." 253 F.3d at 57 (emphasis added). No such evidence exists here.[5]

       2.  <u>ROSS Has No Evidence of Reduced Output.</u>

ROSS also cannot use direct evidence to prove market power because it has no evidence that Thomson Reuters has restricted output. ROSS does not acknowledge, much less address, output in its opposition or Dr. Ratliff's report. ROSS thus cannot prove that Thomson Reuters has market power through direct evidence. *Mylan Pharms.*, 838 F.3d at 434–35 (affirming conclusion that plaintiff "failed to provide direct evidence of monopoly power" in part because it "fail[ed] to show that defendants restricted [ ] output"); *BanxCorp*, 2019 WL 2098842, at *4 (granting summary judgment because, "even if Plaintiff were able to show supracompetitive pricing, its claim would still fail because there is no evidence of decreased output").

---

[5] The evidence on which ROSS relies demonstrates this important distinction. Thomson Reuters' "pricing is based on ... [t]he value [its] product offers" because "there are many features, functionalities and content that differentiate us from [the competition]." D.I. 554 at 11.

7

### C. ROSS's Indirect Evidence Cannot Create an Issue of Material Fact About Thomson Reuters' Alleged Market Power.

Unable to prove market power through direct evidence. ROSS resorts to indirect, "circumstantial evidence." D.I. 554 at 13. But ROSS has no indirect evidence, either.

***First***, ROSS has no evidence of Thomson Reuters' market share in the tying product market. All of ROSS's evidence relates to the legal-research-platform market—a market ROSS concedes is "broader than the relevant markets in this case." D.I. 554 at 14. Legal research platforms include search technology, secondary sources, editorial content, and countless other features. So Thomson Reuters' revenue share in the legal-research-platform market says nothing about market share or market power in the public-law-database market. *See* D.I. 522 at 15–18.

Nor is ROSS right that it had no other way to evaluate market share. *See* D.I. 554 at 17. That there are no sales in any purported public-law-database market only proves that there is no tie in the first place. *See* D.I. 520. Nevertheless, ROSS could have compared Westlaw's public law database against other databases. It chose not to, and the flaw in ROSS's approach is obvious.



Ex. 95, TRCC-01727279. Casetext ▮▮▮ Ex. 40, Ratliff Dep. Ex. 10. ▮▮▮ Ex. 69, ROSS-009768253 at 271; Ex. 55, ROSS-003401777.

***Second***, ROSS does not dispute that "market share alone is insufficient to establish market power." *Winn-Dixie Stores, Inc. v. E. Mushroom Mktg. Coop., Inc.*, 81 F. 4th 323, 337 (3d Cir. 2023) (citation omitted). Nor does ROSS dispute that the Third Circuit has stated repeatedly that a "***share significantly larger than 55%*** has been required to establish prima facie market power." *Dentsply*, 399 F.3d at 187 (emphasis added). Indeed, ROSS admits that legal-research-platform

8

revenue share "alone *cannot prove monopoly power*." D.I. 554 at 14 (emphasis added).

***Third***, knowing market share alone is not enough, ROSS argues that "barriers to entry" demonstrate Thomson Reuters' market power. D.I. 554 at 15. ROSS cites just two such barriers: Thomson Reuters' "role as the owner and publisher of the National Reporter System" (NRS) and the "capital costs required ... to compile centuries' worth of primary law." *Id.* at 15–16. ROSS has presented no evidence that either is a barrier to entry.

Dr. Ratliff conceded at his deposition that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Ex. 23, Ratliff Dep. 52:13–20, 55:13–19. He made clear that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *Id.* Dr. Hadfield, another of ROSS's experts, testified that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Ex. 9, Hadfield Dep. 258:14–20. ROSS has thus presented no evidence in support of the claim that Thomson Reuters' role as NRS publisher creates any barrier to entry.

Further, ROSS's opposition and experts' reports are devoid of any analysis about the cost to acquire or develop a public law database. ROSS bears the burden of proving barriers to entry. But the existing evidence shows the exact opposite: ROSS ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Ex. 43, van der Heijden Dep. Ex. 12, and ▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Ex. 27, Walters Dep. 83:1–84:23.

At bottom, ROSS's circumstantial evidence, like its direct evidence, fails to establish Thomson Reuters' market power. Accordingly, ROSS's per se claims fail for this reason as well.

**III.    ROSS Cannot Prove a Rule-of-Reason Claim.**

To prove a rule-of-reason tying claim, ROSS must (1) define the tied product market, and

9

(2) "state some plausible theory of antitrust harm that does not depend implicitly on power leveraging." *Town Sound*, 959 F.2d at 486. ROSS has done neither.

*First*, ROSS argues—in a single footnote—that Dr. Ratliff defined the *tied* product market "[f]or the reasons discussed at length above." D.I. 554 at 19. But the "above" analysis related to Dr. Ratliff's (fundamentally flawed) analysis of the *tying* product market. Not a single sentence in ROSS's brief addresses Dr. Ratliff's "analysis" of the tied legal-search-technology market. ROSS does not defend Dr. Ratliff's analysis, because it cannot. *See* D.I. 522 at 19.

*Second*, ROSS argues that it offered evidence of "reduced innovation." D.I. 554 at 20. Whether reduced innovation is a cognizable harm is irrelevant. ROSS's entire theory is that Thomson Reuters leverages market power in the market for public law databases to force customers to take its legal search tools, supposedly reducing competition and innovation. This is a classic leverage-based theory of harm: "the use of economic power in one market to restrict competition on the merits in another." *N. Pac. Ry. Co. v. United States*, 356 U.S. 1, 11 (1958).

*Third*, ROSS argues that it can prove market foreclosure in the tied product market even if Thomson Reuters lacks market power in the tying product market. D.I. 554 at 12. *Town Sound* theorizes that a defendant may foreclose competition in the tied product market even without market power in the tying product market. 959 F.2d at 493. But this limited exception—applicable in "exclusive dealing cases"—does not swallow the rule. *Id.* To survive under a market-foreclosure theory, that foreclosure "cannot be due to [Thomson Reuters'] dominance in the [public-law-database] market, but instead to something else." *Id.* at 486. As *Town Sound* explained while rejecting a similar argument, ROSS must "tell us what else." *Id.* It has not.

## CONCLUSION

For these reasons, Thomson Reuters is entitled to summary judgment on ROSS's per se and rule of reason tying claims.

|  | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
|---|---|
|  | /s/ *Michael J. Flynn* |
|  | _____ |
| OF COUNSEL: | Jack B. Blumenfeld (#1014) |
|  | Michael J. Flynn (#5333) |
| Daniel E. Laytin, P.C. | 1201 North Market Street |
| Christa C. Cottrell, P.C. | P.O. Box 1347 |
| Cameron Ginder | Wilmington, DE  19899 |
| Max Samels | (302) 658-9200 |
| KIRKLAND & ELLIS LLP | jblumenfeld@morrisnichols.com |
| 300 North La Salle | mflynn@morrisnichols.com |
| Chicago, IL 60654 |  |
| (312) 862-2000 | *Attorneys for Plaintiffs and Counterdefendants Thomson Reuters Enterprise Center GmbH and West Publishing Corporation* |
| October 26, 2023 |  |

11

## CERTIFICATE OF SERVICE

I hereby certify that on October 26, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on October 26, 2023, upon the following in the manner indicated:

| | |
|---|---|
| David E. Moore, Esquire<br>Bindu Palapura, Esquire<br>Andrew L. Brown, Esquire<br>POTTER ANDERSON & CORROON LLP<br>Hercules Plaza, 6th Floor<br>1313 North Market Street<br>Wilmington, DE  19801<br>*Attorneys for Defendant and Counterclaimant* | *VIA ELECTRONIC MAIL* |
| Mark A. Klapow, Esquire<br>Lisa Kimmel, Esquire<br>Crinesha B. Berry, Esquire<br>Matthew J. McBurney, Esquire<br>CROWELL & MORING LLP<br>1001 Pennsylvania Avenue NW<br>Washington, DC  20004<br>*Attorneys for Defendant and Counterclaimant* | *VIA ELECTRONIC MAIL* |
| Gabriel M. Ramsey, Esquire<br>Jacob Canter, Esquire<br>Warrington Parker, Esquire<br>Margaux Poueymirou, Esquire<br>Anna Z. Saber, Esquire<br>Beatrice B. Nguyen, Esquire<br>CROWELL & MORING LLP<br>3 Embarcadero Center, 26th Floor<br>San Francisco, CA  94111<br>*Attorneys for Defendant and Counterclaimant* | *VIA ELECTRONIC MAIL* |

2

Shira Liu, Esquire  *VIA ELECTRONIC MAIL*
CROWELL & MORING LLP
3 Park Plaza, 20th Floor
Irvine, CA  92614
*Attorneys for Defendant and Counterclaimant*

          */s/ Michael J. Flynn*
          _____
          Michael J. Flynn (#5333)