IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION, | ) ) ) ) ) | |
| Plaintiffs and Counterdefendants, | ) ) ) | C.A. No. 20-613 (SB) |
| v. | ) ) | REDACTED – PUBLIC VERSION |
| ROSS INTELLIGENCE INC., | ) ) | |
| Defendant and Counterclaimant. | ) ) ) | |

**THOMSON REUTERS' REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON ROSS'S ANTITRUST COUNTERCLAIMS (NO. 3) – STATUTE OF LIMITATIONS**

OF COUNSEL:

Daniel E. Laytin, P.C.
Christa C. Cottrell, P.C.
Cameron D. Ginder
Max A. Samels
KIRKLAND & ELLIS LLP
300 North La Salle
Chicago, IL 60654
(312) 862-2000

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200

*Attorneys for Plaintiffs Thomson Reuters Enterprise Center GmbH and West Publishing Corporation*

Original filing date: October 26, 2023
Redacted filing date: November 2, 2023

## **TABLE OF CONTENTS**

                                                                            **Page**

ARGUMENT ................................................................................................................................. 2

I.      ROSS Cannot Indefinitely Toll the Statute of Limitations Because Thomson Reuters Continues to Sell Westlaw as an Integrated Product. ............................................ 2

II.     ROSS Cannot Invoke the *Zenith* Exception Because Its Damages Theory Was Just as Speculative in ████████. ................................................................................ 8

III.    ROSS's Injunctive and Damages Claims are Equally Untimely. ..................................... 10

CONCLUSION .............................................................................................................................. 10

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Barnes v. Am. Tobacco Co.*,
 161 F.3d 127 (3d Cir. 1998)......................................................................................................10

*Berkey Photo, Inc. v. Eastman Kodak Co.*,
 603 F.2d 263 (2d Cir. 1979)............................................................................................. *passim*

*Continental-Wirt Electronics Corp. v. Lancaster Glass Corp.*,
 459 F.2d 768 (3d Cir. 1972).........................................................................................................9

*Giordano v. Sacks Inc.*,
 2023 WL 1451534 (E.D.N.Y. Feb. 1, 2023)............................................................................4, 7

*Humana Inc. v. Celgene Corp.*,
 2022 WL 1237883 (D.N.J. Apr. 27, 2022) ........................................................................3, 5, 6

*In re Lower Lake Erie Iron Ore Antitrust Litig.*,
 998 F.2d 1144 (3d Cir. 1993).................................................................................................5, 6, 7

*McDermott v. Party City Corp.*,
 11 F. Supp. 2d 612 (E.D. Pa. 1998) ............................................................................................9

*Molecular Diagnostics Laboratories v. Hoffman-La Roche Inc.*,
 402 F. Supp. 2d 276 (D.D.C. 2005) ............................................................................................3

*North Carolina Electric Membership Corp. v. Carolina Power & Light Co.*,
 780 F. Supp. 322 (M.D.N.C. 1991) ...................................................................................3, 4, 5

*Oliver v. SD-3C LLC*,
 751 F.3d 1081 (9th Cir. 2014) .................................................................................................10

*Pennsylvania Dental Ass'n v. Med. Serv. Ass'n of Pennsylvania*,
 815 F.2d 270 (3d Cir. 1987).....................................................................................................10

*Perrigo Co. v. AbbVie Inc.*,
 2022 WL 2870152 (3d Cir. July 21, 2022)........................................................................1, 8, 9

*SL-x IP S.a.r.l. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
 2023 WL 2620041 (2d Cir. Mar. 24, 2023)................................................................................8

*US Airways, Inc. v. Sabre Holdings Corp.*,
 938 F.3d 43 (2d Cir. 2019)..........................................................................................................6

*Vasquez v. Indiana Univ. Health, Inc.*,
    40 F.4th 582 (7th Cir. 2022) ...............................................................................................10

*West Penn Allegheny Health System, Inc. v. UPMC*,
    627 F.3d 85 (3d Cir. 2010)............................................................................................2, 5, 6

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
    401 U.S. 321 (1971).................................................................................................1, 2, 8, 9

ROSS does not dispute the basic facts that reveal its antitrust claims are barred by the applicable 4-year statute of limitations: Thomson Reuters sold Westlaw as an integrated product long before ROSS entered the market, ROSS entered the market in 2016 to compete with Thomson Reuters, and ROSS allegedly suffered injury then because its customers could not mix-and-match its search technology with Thomson Reuters' public law database. Instead of contesting these facts, ROSS asks this Court to adopt novel tolling theories that would give plaintiffs an indefinite window to bring antitrust claims against competitors.

***First***, ROSS invokes the continuing violations doctrine. But that does not apply here. When a plaintiff sues a competitor over their sales policies, courts have uniformly reasoned that the plaintiff's cause of action accrues as soon as the policy supposedly injures the plaintiff, not every time the defendant applies that policy to a sale. ROSS argues that "each time [Thomson Reuters] enter[s] into a new agreement with a subscriber the statute of limitations starts anew," but this argument runs headlong into the consensus rule that every plaintiff gets four years from their supposed injury to sue. D.I. 556 at 1. Under ROSS's theory, each time Thomson Reuters licenses Westlaw as an integrated product in 2023, 2024, or beyond, ROSS gets an additional four years to bring its claim. But ROSS **cannot cite a single case** from any court endorsing its expansive theory of indefinite tolling.

***Second***, ROSS invokes *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321 (1971), and argues that the statute of limitations should be tolled because its damages were too speculative to accrue a cause of action until 2019. But as the Third Circuit recently explained, "to invoke *Zenith*'s speculative damages exception," ROSS must show that "it was uncertain ***whether [it] would*** suffer damages, not simply that it was uncertain ***how much [it] would*** suffer." *Perrigo Co. v. AbbVie Inc.*, 2022 WL 2870152, at *5 (3d Cir. July 21, 2022) (emphasis added). ROSS's

only basis for asserting that its cause of action accrued later was that its damages expert calculated damages starting ▮▮▮▮▮▮.  To be sure, ROSS's damages theory is speculative (among other failings)—whether applied to ▮▮▮▮ or any other year.  But ROSS has no basis but its expert's *ipse dixit* to claim that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  Thus *Zenith* has no application here.

## ARGUMENT

ROSS has not contested much of Thomson Reuters' argument.  It does not dispute that, save for damages, ROSS accrued its cause of action more than four years before it brought its antitrust claims.  *See* D.I. 524 at 6–9.  ROSS admits it cannot invoke fraudulent concealment because, like everyone else, ROSS has long known that Westlaw is an integrated product.  D.I. 556 at 3 n.2; *see* D.I. 523 at 10–11.  And ROSS does not dispute any of the key facts underlying Thomson Reuters' argument.  *See* D.I. 524 at 8.  ROSS instead resorts to novel arguments about the continuing-violation doctrine and *Zenith* that would let it toll the statute of limitations indefinitely, but it has no legal support for either.  Finally, ROSS argues that it can pursue injunctive relief even if its damages claims are untimely, but ROSS cites no cases departing from the default rule that the timeliness of equitable and damages actions rise or fall together.

**I.     ROSS Cannot Indefinitely Toll the Statute of Limitations Because Thomson Reuters Continues to Sell Westlaw as an Integrated Product.**

ROSS's continuing violations theory is legally meritless.  As Thomson Reuters' opening brief explained, courts across the country uniformly embrace the commonsense rule that a competitor accrues a cause of action when the defendant's policy supposedly injures it, not on each sale made under that policy.  ROSS's Opposition argues that (1) the rule established in Thomson Reuters' cases does not apply here, and (2) the Third Circuit endorsed its indefinite tolling theory in *W. Penn. Allegheny* and *Lower Lake Erie*.  Both arguments are meritless.

***First***, ROSS asks the Court to disregard Thomson Reuters' cases because the rule they endorse does not address "facts similar to those in this case." D.I. 556 at 10. But ROSS cannot escape *Berkey*'s commonsense rule that as "soon as the dominant firm commences such a policy, other producers [*i.e.*, **competitors**], who may be driven out of the market, are injured." *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 295 (2d Cir. 1979). Tellingly, ROSS ***does not cite a single case*** that rejects *Berkey*'s reasoning. As the cases following *Berkey* illustrate, the purpose of this competitor/customer distinction is precisely to prevent competitors like ROSS from indefinitely renewing its statute of limitations.

For example, both *Molecular Diagnostics Laboratories v. Hoffman-La Roche Inc.*, 402 F. Supp. 2d 276 (D.D.C. 2005) and *Humana Inc. v. Celgene Corp.*, 2022 WL 1237883 (D.N.J. Apr. 27, 2022) quoted *Berkey*'s "critical distinction" between competitors and customers and held that the customer plaintiffs' claims were timely because they purchased product inside the limitations period. 402 F. Supp. 2d at 286; 2022 WL 1237883, at *7. ROSS asks the Court to ignore these cases because they "involved a patent," but that is a distinction without a difference. D.I. 556 at 10 & n.5. The dispositive fact in both cases was that the plaintiffs were customers who had purchased products at higher prices because of the policy in the limitations period. The "critical distinction" here is that ROSS as a competitor seeks to toll the statute of limitations because third parties continue to make purchases.

ROSS's attempts to distinguish *North Carolina Electric Membership Corp. v. Carolina Power & Light Co.* likewise fall flat. 780 F. Supp. 322 (M.D.N.C. 1991). *First*, ROSS argues that the Court should ignore this case because it may have labeled its *Berkey* analysis as an issue of "ascertainability" rather than the continuing violations doctrine. D.I. 556 at 11. But that semantic distinction does not change that the court applied *Berkey* to reject the same "indefinite liability"

3

theory that ROSS now advances.  *Second*, ROSS argues that *North Carolina Electric* is distinguishable because one of the alleged anticompetitive acts was "that the defendant rejected" the plaintiffs' "loan application." *Id.* at 14–15.  But that was not the conduct the court considered in its application of *Berkey*.  Rather, the court focused on the supposedly anticompetitive "low rates that [the defendant] charged for wholesale power" and held that each sale could not toll the statute of limitations for the plaintiffs as competitors.  *North Carolina Elec.,* 780 F. Supp. at 331.[1]  That reasoning is entirely on point to this case.

If anything, *North Carolina Electric* illustrates why ROSS's proposed rule is unworkable.  The court rejected the plaintiff's tolling theory (which is the same as ROSS's) because it would have allowed them to sit on their claims through the "1940's or '50's or '60's" and "reap[] the benefit of a lower rate," only to then sue "in 1977" when the time was ripe.  780 F. Supp. 322 at 331.  ROSS never contests that its proposed rule invites just this type of gamesmanship.

Finally, ROSS cannot dispute that *Giordano v. Sacks Inc.* **extends** *Berkey*'s logic.  2023 WL 1451534, at *8 (E.D.N.Y. Feb. 1, 2023).  ROSS asks the Court to disregard *Giordano* because it applied *Berkey* in a different factual context.  D.I. 556 at 10.  That misses the point entirely.  The court went further than *Berkey* and held that the plaintiff workers' claims were untimely even though they worked directly for the defendants during the limitations period.  2023 WL 1451534 at *2, 8.  In contrast, ROSS has no dealings with Thomson Reuters in 2023 (indeed, ROSS shut down its business in late 2020) but nevertheless asks the Court to toll the statute of limitations based on Thomson Reuters' 2023 sales to customers.  D.I. 556 at 7 (citing 2023 terms and conditions).  *Giordano* recognized the sound logic underlying *Berkey* that "both classes of

---

[1]  The court explicitly stated that it was treating the plaintiffs as "potential, but so far excluded, competitor[s]" of the defendant, not its customers.  *Id.* at 325 n.7, 330 n.25.

4

plaintiff—consumers and competitors—… [have] a four-year period during which they may bring their claims." 2023 WL 1451534 at *8. It is even easier to apply that logic here.

The cases are many, but the point is simple: the competitor/customer distinction articulated in *Berkey* is directly applicable to the undisputed facts of this case and rejects ROSS's indefinite tolling theory. ROSS was Thompson Reuters' failed competitor, its purported antitrust injury took place ▓▓▓▓▓▓▓▓▓▓ but it brought these claims in 2021. D.I. 523 at 8. ROSS's argument is that the statute of limitations **can never apply** because Thomson Reuters licenses Westlaw to third-party customers, but that rule invites precisely the wait-and-see gamesmanship the *Berkey* rule is meant to prevent. *See North Carolina Elec.*, 780 F. Supp. 322 at 331.

**Second**, ROSS claims that *W. Penn. Allegheny Health Systems v. UPMC* and *In re Lower Lake Erie Iron Ore Antitrust Litig.* require this Court to hold that "each new contract or renewal of a contract to subscribe to Westlaw's services … is a new injurious act" that tolls the statute of limitations. D.I. 556 at 9. Not so. Both cases address the uncontroversial scenario where a defendant is alleged to have taken an anticompetitive act against the plaintiff during the limitations period. They are consistent with *Berkey*, distinguishable from the facts of this case, and offer no support for ROSS's novel continuing violation theory. *See Humana*, 2022 WL 1237883, at *11 (applying both *W. Penn Allegheny*'s continuing violation reasoning and *Berkey*'s competitor/customer distinction).

In *W. Penn. Allegheny*, the plaintiff hospital sued an insurer and competing hospital in 2009. 627 F.3d 85, 94 (3d Cir. 2010). The plaintiff alleged, among other things, that in 2006 it asked the insurer to increase its rates, and the insurer refused, supposedly pursuant to an anticompetitive agreement with the defendant hospital. *Id.* The Third Circuit reached the "straightforward" conclusion that the statute of limitations had not run on the plaintiff's claims

5

because the defendant had inflicted "injurious acts in furtherance of the conspiracy" on the plaintiff "within the limitations period." *Id.* at 106. Unlike here, the tolling was not based on a separate transaction with the defendant's customers. Rather, the plaintiff claimed that the defendant had depressed the rates it paid to the plaintiff during the limitations period. *Id.*

ROSS tries to make much of the fact that one of the *W. Penn. Allegheny* defendants was a "competitor" of the plaintiff. D.I. 556 at 8. But that has nothing to do with the tolling analysis in that case. The question addressed in *Berkey*—and not addressed in *W. Penn Allegheny*—is whether a competitor who claims it was harmed by a defendant's sales policy may indefinitely toll the statute of limitations each time the defendant sells a product. *W. Penn Allegheny* says nothing on this issue, and certainly does not support ROSS's unprecedented approach.[2]

*Lower Lake Erie* is even less relevant because the plaintiffs sued in their capacity as purchasers, not competitors. 998 F.2d 1144 (3d Cir. 1993). There, truckers, shippers, and other handlers of iron ore sued the railroad defendant for, among other things, "refusing to lease them dock property suitable for the shipment of iron ore, and by overcharging the companies to use the railroads to ship ore." *W. Penn. Allegheny*, 627 F.3d at 107 (summarizing the facts of *Lower Lake Erie*). While the plaintiffs may have competed with the railroads, they were also purchasers of defendants' products and supposedly paid "artificially inflated" prices within the limitations

---

[2] ROSS also tries to argue that there is a circuit split between the Second and Third Circuits, but there is no split on the issues relevant to this case. D.I. 556 at 10. *Humana* directly rejected this exact argument. It explained that the Second Circuit in *US Airways* adopted a rule that "an overt act cannot be a reaffirmation of a previous act." 2022 WL 1237883, at *11 (explaining *US Airways, Inc. v. Sabre Holdings Corp.*, 938 F.3d 43 (2d Cir. 2019)). That is arguably inconsistent with *W. Penn. Alleghany*'s decision that the 2006 reimbursement decision could restart the statute of limitations even though it was a reaffirmation of existing policies. That argument—about when a subsequent decision may qualify as a new overt act—has no application here. As *Humana* explained, "*US Airways* did not purport to overrule or abrogate *Berkey*," and thus *Berkey* is fully consistent with Third Circuit law. *Id.*

period. *Lower Lake Erie*, 998 F.2d at 1172. When a plaintiff makes purchases during the limitations period, that is an easy case for tolling the statute of limitations under *Berkey*.

\*   \*   \*

At bottom, ROSS has no legal support for its argument that it can indefinitely toll the statute of limitations every time Thomson Reuters licenses Westlaw to a customer. That theory also has no limiting principle. ROSS does not contest that it was supposedly injured ▓▓▓▓ But under its logic, if Thomson Reuters continues to sell Westlaw as an integrated product in 2050, then ROSS would have until 2054 to bring its lawsuit. It makes sound sense for a customer to have four years to sue after it makes its purchase from the defendant. This ensures the customer will have its rightful four years to sue over the alleged injury the purchase caused. There is no risk that the customer will be able to sue decades after any injury occurred. It must have continued to purchase from the defendant and suffer injury with each purchase. But that is not ROSS's situation, and ROSS seeks an indefinite cause of action for it and any other competitor plaintiff suing over a policy that a defendant applies to ongoing sales. That is not the law for good reason.

ROSS tries to turn these concerns on their head and argue that Thomson Reuters' theory is impracticable because ROSS "would have only four years" from when it is injured to bring a lawsuit. D.I. 516 at 11. But that is the point. Every antitrust plaintiff is entitled to "a four-year period during which they may bring their claims," no more. *Giordano*, 2023 WL 1451534, at \*8. ROSS could have sued ▓▓▓▓ it could even have sued ▓▓▓▓ ▓▓▓▓ D.I. 556 at 4–5. But it did not. It waited until it needed leverage against Thomson Reuters' meritorious copyright lawsuit, filing these claims in 2021—more than four years after its cause of action indisputably accrued. These are straightforward untimely claims under the antitrust statutes of limitations, and ROSS offers no reason why the Court need adopt its novel alternative rule.

7

**II.     ROSS Cannot Invoke the *Zenith* Exception Because Its Damages Theory Was Just as Speculative in ▮▮▮▮▮▮▮▮**

As the Third Circuit recently explained, for a plaintiff "to invoke *Zenith*'s speculative damages exception," it must show that "it was uncertain ***whether*** they would suffer damages" before the limitations period, "not simply that it was uncertain ***how much*** they would suffer." *Perrigo*, 2022 WL 2870152, at *5–6 (emphases added) (holding that "speculative damages exception does not apply" because cause of action accrued as soon as sham litigation was filed, even though resulting damages depended on timing of FDA approval and other yet-to-be-determined factors). Notably, ROSS neither cited nor addressed *Perrigo*, which is the Third Circuit's most recent explanation of the doctrine it invokes. ROSS has failed to show that this is the "rare case" where it accrued a cause of action but not measurable damages. *SL-x IP S.a.r.l. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 2023 WL 2620041, at *3 (2d Cir. Mar. 24, 2023).

ROSS argues that *Zenith* applied because it did not suffer measurable damages until ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ when ROSS started selling to smaller law firms. D.I. 556 at 2, 5. This newfound theory contradicts ROSS's complaint, its executives' testimony, and its theory of the case. ROSS's complaint explicitly alleged that "ROSS faced this problem [of Westlaw's supposed tie] everywhere—from solo practitioners to full-service big law firms." D.I. 225 ¶ 75. Similarly, ROSS executives testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 12, Hamilton Dep. II 79:6–15. ROSS does not cite a single witness or document suggesting that ▮▮▮ it became clear "whether" ROSS would suffer damages but not before. *Perrigo*, 2022 WL 2870152, at *5–6. That is a factually unsupported theory ROSS has invented solely for the purpose of escaping the statute of limitations.

8

ROSS rests its entire *Zenith* argument on its damages expert's decision to ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ because he claims that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Ex. 29, Cox Rpt. ¶ 15b; D.I. 556 at 14. ROSS has no authority suggesting that an arbitrary damages start-date imposed by an expert witness is sufficient to toll the statute of the limitations under *Zenith*. And Dr. Cox's cutoff is certainly arbitrary. He has not cited any record evidence or applied any expert methodology to support his assertion that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Ex. 29, Cox Rpt. ¶ 15b. Thomson Reuters wholeheartedly agrees that Dr. Cox's damages estimates are speculative because they seek to "project[] future profits" even though ROSS has "no[] track record of [success]." *McDermott v. Party City Corp.*, 11 F. Supp. 2d 612, 629 (E.D. Pa. 1998). But that is true regardless of the timeframe Dr. Cox chooses.

ROSS relies heavily on *Continental-Wirt Electronics Corp. v. Lancaster Glass Corp.*, decided a year after *Zenith*, where the plaintiff alleged that the defendant's antitrust violations had forced it to sell its business. 459 F.2d 768, 770 (3d Cir. 1972). The damages-dispositive question was whether the plaintiff would have to sell its business, and thus no non-speculative assessment of damages could take place until the sale occurred. *Id.* Here, in contrast, there is no such sale or singular event that would allow an expert to assess damages after ▇▇▇ but not before. Tellingly, the methods ROSS's damages expert employed do not depend whatsoever on the supposed ▇▇▇ "pivot." ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Ex. 29, Cox Rpt. ¶¶ 87–94; Ex. 57, ROSS-003487472–474. This is a far cry from the unique circumstances presented in *Continental-Wirt*.

9

**III.     ROSS's Injunctive and Damages Claims are Equally Untimely.**

Finally, ROSS argues that it can seek injunctive relief even if its damages claims are time barred. D.I. 556 at 16. But in antitrust, as in other areas of law, "equity will frequently follow the statute of limitations which controls analogous proceedings at law." *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 151 (3d Cir. 1998). ROSS does not cite a ***single case*** allowing an antitrust plaintiff with a time-barred damages claim to nevertheless proceed with its injunctive relief claim. ROSS wants to be the first to do so, but curiously, it never explains why the considerations for laches in this case depart from those relevant to the statute of limitations. *See* D.I. 556 at 16.

ROSS also fails to distinguish the trio of antitrust cases that Thomson Reuters cites. ROSS does not dispute (nor could it) that *Oliver* applied laches on the same terms as the statute of limitations, and both *Vasquez* and *Pennsylvania Dental Association* assumed they would do the same. *Oliver v. SD-3C LLC*, 751 F.3d 1081, 1086 (9th Cir. 2014); *Vasquez v. Indiana Univ. Health, Inc.*, 40 F.4th 582, 588 (7th Cir. 2022); *Pennsylvania Dental Ass'n v. Med. Serv. Ass'n of Pennsylvania*, 815 F.2d 270, 277–78 (3d Cir. 1987).[3] ROSS's only legal argument is that this "need not" be the rule in every case, D.I. 556 at 16, but it certainly is the accepted default, and ROSS does not explain why this Court should take a different approach. The same policy reasons underlying the statute of limitations compel that it shouldn't.

## CONCLUSION

For these reasons and those articulated in ROSS's Motion, the Court should grant summary judgment on Counts VI, VII, and VIII.

---

[3]  ROSS also argues that Thomson Reuters waived its laches defense. D.I. 556 at 15. But Thomson Reuters raised laches its opening brief, cited caselaw, and is addressing this argument in further detail on reply. D.I. 524 at 7. That is not waiver.

|  | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
|---|---|
|  | */s/ Michael J. Flynn* |
| OF COUNSEL: | Jack B. Blumenfeld (#1014) |
|  | Michael J. Flynn (#5333) |
| Daniel E. Laytin | 1201 North Market Street |
| Christa C. Cottrell | P.O. Box 1347 |
| Cameron Ginder | Wilmington, DE  19899 |
| Max Samels | (302) 658-9200 |
| KIRKLAND & ELLIS LLP | jblumenfeld@morrisnichols.com |
| 300 North La Salle | mflynn@morrisnichols.com |
| Chicago, IL 60654 |  |
| (312) 862-2000 | *Attorneys for Plaintiffs and Counterdefendants Thomson Reuters Enterprise Center GmbH and West Publishing Corporation* |
| October 26, 2023 |  |

11

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 26, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on October 26, 2023, upon the following in the manner indicated:

| | |
|---|---|
| David E. Moore, Esquire<br>Bindu Palapura, Esquire<br>Andrew L. Brown, Esquire<br>POTTER ANDERSON & CORROON LLP<br>Hercules Plaza, 6th Floor<br>1313 North Market Street<br>Wilmington, DE  19801<br>*Attorneys for Defendant and Counterclaimant* | *VIA ELECTRONIC MAIL* |
| Mark A. Klapow, Esquire<br>Lisa Kimmel, Esquire<br>Crinesha B. Berry, Esquire<br>Matthew J. McBurney, Esquire<br>CROWELL & MORING LLP<br>1001 Pennsylvania Avenue NW<br>Washington, DC  20004<br>*Attorneys for Defendant and Counterclaimant* | *VIA ELECTRONIC MAIL* |
| Gabriel M. Ramsey, Esquire<br>Jacob Canter, Esquire<br>Warrington Parker, Esquire<br>Margaux Poueymirou, Esquire<br>Anna Z. Saber, Esquire<br>Beatrice B. Nguyen, Esquire<br>CROWELL & MORING LLP<br>3 Embarcadero Center, 26th Floor<br>San Francisco, CA  94111<br>*Attorneys for Defendant and Counterclaimant* | *VIA ELECTRONIC MAIL* |

2

Shira Liu, Esquire  *VIA ELECTRONIC MAIL*
CROWELL & MORING LLP
3 Park Plaza, 20th Floor
Irvine, CA  92614
*Attorneys for Defendant and Counterclaimant*

                                                */s/ Michael J. Flynn*
                                                _____
                                                Michael J. Flynn (#5333)