IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION, | ) ) ) ) ) | |
| Plaintiffs and Counterdefendants, | ) ) ) | C.A. No. 20-613 (SB) |
| v. | ) ) ) | REDACTED – PUBLIC VERSION |
| ROSS INTELLIGENCE INC., | ) ) | |
| Defendant and Counterclaimant. | ) ) ) | |

**THOMSON REUTERS' REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON ROSS'S ANTITRUST COUNTERCLAIMS
<u>(NO. 4) – INJUNCTIVE RELIEF</u>**

OF COUNSEL:

Daniel E. Laytin, P.C.
Christa C. Cottrell, P.C.
Cameron D. Ginder
Max A. Samels
KIRKLAND & ELLIS LLP
300 North La Salle
Chicago, IL 60654
(312) 862-2000

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200

*Attorneys for Plaintiffs Thomson Reuters Enterprise Center GmbH and West Publishing Corporation.*

Original filing date: October 26, 2023
Redacted filing date: November 2, 2023

**TABLE OF CONTENTS**

**Page**

ARGUMENT ................................................................................................................................. 1

I.    ROSS Shut Down Before Filing Its Antitrust Counterclaims With No Plan to
      Reenter the Market and Thus Lacks Standing to Sue for Injunctive Relief. ...................... 1

CONCLUSION .............................................................................................................................. 7

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
    459 U.S. 519 (1983)......................................................................................................2

*Baer v. Chase*,
    392 F.3d 609 (3d Cir. 2004).......................................................................................4, 5

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983)........................................................................................................1

*City of Philadelphia v. EMI Earthmate, Inc.*,
    2004 WL 2250981 (E.D. Pa. Oct. 5, 2004).................................................................7

*Clark v. City of Lakewood*,
    259 F.3d 996 (9th Cir. 2001) ....................................................................................6, 7

*Howard Hess Dental Lab'ys Inc. v. Dentsply Int'l, Inc.*,
    602 F.3d 237 (3d Cir. 2010).........................................................................................4

*Monsanto Co. v. Geertson Seed Farms*,
    561 U.S. 139 (2010)......................................................................................................7

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,
    522 F.3d 6 (1st Cir. 2008)........................................................................................1, 2

*O'Shea v. Littleton*,
    414 U.S. 488 (1974)......................................................................................................1

*ZF Meritor, LLC v. Eaton Corp.*,
    696 F.3d 254 (3d Cir. 2012)............................................................................. *passim*

**Statutes**

15 U.S.C. § 26................................................................................................................1

As Thomson Reuters explained in its opening brief, ROSS lacks Article III standing. ROSS does not dispute that blackletter Article III standing law requires it to prove an actual and imminent threat of future harm. For defunct competitors like ROSS, this means showing that it is "likely to reenter the market and again be confronted with" the challenged conduct. *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 302 (3d Cir. 2012). ROSS cannot meet that standard. ROSS stopped operating before filing its antitrust counterclaims. ROSS had no customers. ROSS had no money. ROSS had no employees. And ROSS had no future business plans. Nor does it now.

Left with nothing else, ROSS relies on a conclusory affidavit from former ROSS co-founder Jimoh Ovbiagele, who claims that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓ That testimony is inconsistent with all of the record evidence—including Ovbiagele's own prior testimony. And, in any event, the Third Circuit has expressly held that such vague "assertions of desire" to reenter "without any descriptions of concrete plans" are not enough. *Id.* ROSS has no evidence sufficient to meet that standard, and Thomson Reuters is thus entitled to summary judgment on ROSS's claims for injunctive relief.

## ARGUMENT

**I.  ROSS Shut Down Before Filing Its Antitrust Counterclaims With No Plan to Reenter the Market and Thus Lacks Standing to Sue for Injunctive Relief.**

To establish Article III standing to pursue injunctive relief, ROSS must show "a likelihood of substantial and immediate irreparable injury." *O'Shea v. Littleton*, 414 U.S. 488, 502 (1974). This is "a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).[1]

---

[1]  This analysis overlaps with the Clayton Act's requirement that a plaintiff prove "threatened loss or damage[s]" to sue for injunctive relief. 15 U.S.C. § 26; *see also In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6, 14 (1st Cir. 2008) (explaining that the Clayton Act "dovetails with Article III's requirement that in order to obtain forward-looking relief, a plaintiff must face a threat of injury that is both real and immediate, not conjectural or hypothetical").

ROSS concedes that it shut down *before* filing its antitrust counterclaims. D.I. 557 at 5 ("ROSS filed its antitrust claims within one month of ceasing operations."). The question, then, is whether ROSS can prove—with "concrete plans" and "concrete information"—that it is "**likely to reenter the market**." *ZF Meritor*, 696 F.3d at 302 (emphasis added). It cannot.[2]

ROSS announced that it was closing in December 2020. Ex. 36, 12/11/2020 ROSS Blog Post. ROSS did not just temporarily shut down operations pending litigation; ROSS gutted its business. ROSS told customers that its "bank account [wa]s running out" and that it "must cease operations in the New Year." *Id.* ROSS allowed customers "to export their personal data" and worked with "customers to **transition them to other services**—including platforms by our friends at Fastcase, vLex and Casetext." *Id.* (emphasis added). ROSS explained that it would "continue as a going concern," not so ROSS could continue business, but "so that the facts at the heart of [Thomson Reuters' copyright] lawsuit are brought to light." *Id.* And ROSS concluded that, because it was "out of funds for our operations," it "must go." *Id.*

None of this is in dispute. ROSS does not dispute that it shut down before filing its antitrust counterclaims. D.I. 557 at 3, 5 (citing  ROSS does not dispute that it had no money. *Id.* at 3 ROSS does not dispute that it had

---

ROSS concedes as much. D.I. 557 at 13 (recognizing that "some of the requirements" of antitrust standing "resemble the Article III requirements"). For purposes of this motion only, Thomson Reuters does not challenge ROSS's antitrust standing to pursue damages for past harm, a test that, as ROSS acknowledges, turns on whether ROSS's claimed injury is the type of harm the antitrust laws were designed to prevent and whether ROSS is the type of plaintiff the antitrust laws were designed to protect. *See id.* at 10 (citing *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519 (1983)).

[2]   ROSS suggests that Thomson Reuters' motion "really is one of mootness." D.I. 557 at 8. It is not. ROSS shut down before filing its antitrust counterclaims. Yet "even if [the Court] treated this as a mootness question," the "conclusion would remain the same." *See ZF Meritor*, 696 F.3d at 300 n.29.

no customers. *See* D.I. 526 at 6. ROSS does not dispute that it had no employees. *Id.* at 7. Ovbiagele (co-founder and Chief Technical Officer), Arruda (co-founder and CEO), and Dall'Oglio (co-founder and Chief Quality Officer) left when ROSS shut down.³ Hamilton (VP of Strategy and Operations), van der Heijden (VP of Product and Legal), and Shafik (VP of Finance) left even earlier.⁴ ROSS does not dispute that each of these core employees now works elsewhere. *See* D.I. 526 at 6–7. And ROSS does not dispute that it had no future business plans: as its CEO Andrew Arruda testified, ▇▇▇ Ex. 2, Arruda Dep. II 11:3–10 (emphasis added).

Indeed, ROSS had (and has) no concrete plan to reenter the market. Testimony from its senior-most executives makes this point clear. Arruda testified that ▇▇▇

Ex. 1, Arruda Dep. I 16:21–17:3. But Arruda ▇▇▇

▇▇▇ . 2, Arruda Dep. II 14:21–16:22. ▇▇▇

▇▇▇ Ex. 1, Arruda Dep. I 16:21–17:3. ▇▇▇

▇▇▇ Even in its opposition, ROSS has not identified a single go-forward product-development plan, sales plan, marketing plan, financial plan, or business plan of any type. This undisputed record evidence shows that ROSS has "establishe[d] no more than a 'possibility'" that it would

---

³   Ex. 109, Ovbiagele Dep. I 11:4–8 ▇▇▇ ; Ex. 105, Arruda Dep. I 11:21–12:4 (▇▇▇ ; Ex. 106, Dall'Oglio Dep. I 7:18–23 ▇▇▇ .

⁴   Ex. 107, Hamilton Dep. II 117:14–24 ▇▇▇ Ex. 114, van der Heijden Dep. I 17:5–11 ▇▇▇ Ex. 112, Shafik Dep. I 9:7–8 ▇▇▇

ever "reenter the market," *ZF Meritor*, 696 F.3d at 302–03, and thus it has failed to "meet [its] burden" to "pursue injunctive relief," *Howard Hess Dental Lab'ys Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 246 (3d Cir. 2010).

Still, ROSS argues that "[t]he fact that ROSS wound down its business does not deprive the company of standing" because it "stands ready to re-enter the market." D.I. 557 at 7. ROSS's *only* support for that claim is a newly signed declaration from Jimoh Ovbiagele. *Id.* (citing D.I. 559, Ovbiagele Dec.). ███████████████████████████████████████

███████████████████████████████████████████████████████████

███████████ D.I. 559 ¶ 4. That is it. Ovbiagele does not present any concrete business plan, detail how ROSS would acquire customers, or identify who would work at ROSS. The most Ovbiagele can muster in support of his bald assertion is ███████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████ *Id.* ¶¶ 5–6.

Ovbiagele's affidavit cannot create an issue of material fact for two reasons. *First*, the Court should ignore the affidavit as a transparent attempt to rewrite Ovbiagele's testimony. Though Ovbiagele now contends that ████████████████████ D.I. 559 ¶ 5–6, he testified just months ago that ██████████████████████████

███████████████████████████████████████████████████████████

████████████████ Ex. 110, Ovbiagele Dep. II 218:18–21. It is well-settled that "a party may not create a material issue of fact to defeat summary judgment by filing an affidavit disputing his or her own sworn testimony without demonstrating a plausible explanation for the conflict." *Baer v. Chase*, 392 F.3d 609, 624 (3d Cir. 2004). When the party submitting the affidavit "does not explain the

4

contradiction between the subsequent affidavit and the prior deposition," the affidavit is treated as a "sham" and does "not creat[e] an impediment to a grant of summary judgment." *Id.* Neither ROSS nor Ovbiagele acknowledges ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬

*Second*, and even more fundamentally, Ovbiagele's declaration confirms that ROSS can show no more than the "possibility" of reentry that *ZF Meritor* found insufficient. 696 F.3d at 302. There, the plaintiff argued that it had standing to pursue injunctive relief because it had "continued to monitor ... the marketplace," "had a very thorough understanding of how the products were working," and "was actively considering what its alternatives might be." *Id.* (cleaned up). That was not enough. The Third Circuit reversed, emphasizing that the plaintiff "ha[d] expressed **no concrete desire** to revive the joint venture or otherwise reenter the market" and had no "**concrete information** about [its] plans." *Id.* at 302 and n.30 (emphasis added). The evidence "establishe[d] **no more than a 'possibility'** that Meritor might one day reenter the market." *Id.* at 302 (emphasis added). And the plaintiff's "[v]ague assertions of desire"—"without any descriptions or concrete plans"—were "insufficient to support a finding of actual or imminent injury." *Id.* (citation omitted).

ROSS asserts, citing Ovbiagele's declaration, that "ROSS can return to operations." D.I. 557 at 3. But that is exactly the "possibility" of reentry that the Third Circuit held was legally insufficient. *ZF Meritor*, 696 F.3d at 302. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ D.I. 559 ¶¶ 5–7. By submitting this declaration as its best evidence, ROSS confirms that it can offer no more than a bare claim that it "might one day reenter the market." *ZF Meritor*, 696 F.3d at 302. That is not

5

sufficient to make ROSS's reentry more than a "matter of pure speculation." *Id.* In short, even accepting ROSS's assertion that "ROSS possesses everything that it would need to restart its business," D.I. 557 at 4, that is not the "concrete desire" that binding Third Circuit precedent require. *ZF Meritor*, 696 F.3d at 302.

ROSS's attempt to distinguish *ZF Meritor* is unpersuasive. To ROSS, *ZF Meritor* does not apply because there the plaintiff left the market three years before suing and "had never expressed a desire to re-enter the market." D.I. 557 at 7. How long ROSS shut down before filing suit is immaterial; what matters is whether ROSS had "concrete plans" to reenter the market at the time it filed suit. And the only statement in Ovbiagele's declaration about future plans is ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ D.I. 559 ¶ 4. Regardless of how much time has passed, this statement is no more "concrete" than the *ZF Meritor* plaintiff's assertion that they were "actively considering" reentry. *Compare id.*, *with* 696 F.3d at 302. The *ZF Meritor* plaintiff, like Ovbiagele, expressed a "desire," but it was "vague," not "concrete," and "establishe[d] no more than a possibility" that they may reenter the market. 696 F.3d at 302. ROSS had no customers, no employees, and no business plan—and it still does not. Thus, any argument that ROSS will reenter the market is based on "pure speculation" and cannot create standing as a matter of law.

Nothing in *Clark v. City of Lakewood* suggests otherwise. *See* D.I. 557 at 5 (citing 259 F.3d 996 (9th Cir. 2001)). Clark challenged the legality of a zoning ordinance that he alleged "forced him to close his [adult cabaret] business because it imposed upon him unsustainable losses." *Clark*, 259 F.3d at 1003, 1008. Clark, like ROSS, shut down his business about a month before bringing suit. *Id.* at 1003. But the similarities between Clark and ROSS end there. Clark's threat of future injury was "neither conjectural nor hypothetical" because "he ***unequivocally stated***

6

he would go back into business if the Ordinance were enjoined" and was well-positioned to do so. *Id.* at 1008 (emphasis added). Here, by contrast, ROSS has *never* "unequivocally stated" that it would go back into business. ROSS may own its domain. ROSS may have access to its source code. And ROSS may be able to renew expired software licenses. But that ROSS could, in theory, do these things is only part of the equation—as Arruda testified, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 2, Arruda Dep. II 14:21–15:22. ROSS's other caselaw does not address the issue of Article III standing for businesses that have ceased operation and does not change that, under Third Circuit law, ROSS needs evidence of concrete plans to reenter the market. *See, e.g.*, *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 150 (2010) (addressing argument that plaintiff lacked Article III standing because it failed to challenge prior court order); *City of Philadelphia v. EMI Earthmate, Inc.*, 2004 WL 2250981, at *3 (E.D. Pa. Oct. 5, 2004) (holding that operational business had standing to sue over trademark infringement).

## **CONCLUSION**

ROSS asserts that: "The fact that ROSS wound down its business does not deprive the Company of standing." D.I. 557 at 7. That is wrong under binding Third Circuit law. *ZF Meritor* is dispositive and clear: for a former competitor to have standing to pursue injunctive relief, it must prove that it is "likely to reenter the market" with "concrete plans" backed up by "concrete descriptions." 696 F.3d at 302. Here, ROSS has nothing more than "vague assertions of desire" and thus cannot survive summary judgment. *Id.*

|  |  |
|---|---|
|  | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
|  | */s/ Michael J. Flynn* |
| OF COUNSEL: | Jack B. Blumenfeld (#1014) |
|  | Michael J. Flynn (#5333) |
| Daniel E. Laytin, P.C. | 1201 North Market Street |
| Christa C. Cottrell, P.C. | P.O. Box 1347 |
| Cameron Ginder | Wilmington, DE 19899 |
| Max Samels | (302) 658-9200 |
| KIRKLAND & ELLIS LLP | jblumenfeld@morrisnichols.com |
| 300 North La Salle | mflynn@morrisnichols.com |
| Chicago, IL 60654 |  |
| (312) 862-2000 | *Attorneys for Plaintiffs and Counterdefendants Thomson Reuters Enterprise Center GmbH and West Publishing Corporation* |
| October 26, 2023 |  |

**CERTIFICATE OF SERVICE**

I hereby certify that on October 26, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on October 26, 2023, upon the following in the manner indicated:

| | |
|---|---|
| David E. Moore, Esquire<br>Bindu Palapura, Esquire<br>Andrew L. Brown, Esquire<br>POTTER ANDERSON & CORROON LLP<br>Hercules Plaza, 6th Floor<br>1313 North Market Street<br>Wilmington, DE  19801<br>*Attorneys for Defendant and Counterclaimant* | *VIA ELECTRONIC MAIL* |
| Mark A. Klapow, Esquire<br>Lisa Kimmel, Esquire<br>Crinesha B. Berry, Esquire<br>Matthew J. McBurney, Esquire<br>CROWELL & MORING LLP<br>1001 Pennsylvania Avenue NW<br>Washington, DC  20004<br>*Attorneys for Defendant and Counterclaimant* | *VIA ELECTRONIC MAIL* |
| Gabriel M. Ramsey, Esquire<br>Jacob Canter, Esquire<br>Warrington Parker, Esquire<br>Margaux Poueymirou, Esquire<br>Anna Z. Saber, Esquire<br>Beatrice B. Nguyen, Esquire<br>CROWELL & MORING LLP<br>3 Embarcadero Center, 26th Floor<br>San Francisco, CA  94111<br>*Attorneys for Defendant and Counterclaimant* | *VIA ELECTRONIC MAIL* |

Shira Liu, Esquire  
CROWELL & MORING LLP  
3 Park Plaza, 20th Floor  
Irvine, CA  92614  
*Attorneys for Defendant and Counterclaimant*

*VIA ELECTRONIC MAIL*

           */s/ Michael J. Flynn*
_____
Michael J. Flynn (#5333)