IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION, <br><br> Plaintiffs and Counterdefendants, <br><br> v. <br><br> ROSS INTELLIGENCE INC., <br><br> Defendant and Counterclaimant. | C.A. No. 20-613 (SB) <br><br><br> REDACTED – PUBLIC VERSION |

**THOMSON REUTERS' REPLY BRIEF IN SUPPORT OF ITS MOTION TO EXCLUDE DR. ALAN COX AND MOTION FOR SUMMARY JUDGMENT ON ROSS'S ANTITRUST COUNTERCLAIMS (NO. 5) –** *COMCAST*

OF COUNSEL:

Daniel E. Laytin, P.C.
Christa C. Cottrell, P.C.
Cameron D. Ginder
Max A. Samels
KIRKLAND & ELLIS LLP
300 North La Salle
Chicago, IL 60654
(312) 862-2000

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200

*Attorneys for Plaintiffs Thomson Reuters Enterprise Center GmbH and West Publishing Corporation*

Original filing date: October 26, 2023
Redacted filing date: November 2, 2023

**TABLE OF CONTENTS**

**Page**

ARGUMENT ........................................................................................................................... 1

I. *Comcast* Applies to Dr. Cox's Damages Analysis. .............................................. 1

II. Dr. Cox Failed to Disaggregate Damages............................................................. 3

    A. Dr. Cox Defined the Relevant "Anticompetitive Conduct" to Include ■ Dismissed Sham-Litigation and Refusal-to-Deal Claims. ....................... 3

    B. Dr. Cox Failed to Disaggregate the Effect of Thomson Reuters' Lawful Copyright Litigation and Refusal to Deal. .............................................. 5

III. Thomson Reuters Is Entitled to Summary Judgment. ......................................... 9

CONCLUSION........................................................................................................................ 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
　477 U.S. 242 (1986) .................................................................................................. 10

*Atl. Richfield Co. v. USA Petroleum Co.*,
　495 U.S. 328 (1990) .................................................................................................... 2

*Celotex Corp. v. Catrett*,
　477 U.S. 317 (1986) .................................................................................................. 10

*Coleman Motor Co. v. Chrysler Corp.*,
　525 F.2d 1338 (3d Cir. 1975) ...................................................................................... 9

*Comcast Corp. v. Behrend*,
　569 U.S. 27 (2013) .............................................................................................. passim

*Concord Boat Corp. v. Brunswick Corp.*,
　207 F.3d 1039 (8th Cir. 2000) ................................................................................... 10

*Ctr. City Periodontists, P.C. v. Dentsply Int'l, Inc.*,
　321 F.R.D. 193 (E.D. Pa. 2017) ................................................................................... 8

*Klein v. Hollings*,
　992 F.2d 1285 (3d Cir. 1993) .................................................................................... 10

*MCI Communications Corp. v. AT&T Co.*,
　708 F.2d 1081 (7th Cir. 1983) ................................................................................... 10

*In re Pharmacy Benefit Managers Antitrust Litig.*,
　2017 WL 275398 (E.D. Pa. Jan. 18, 2017) .................................................................. 8

*ZF Meritor, LLC v. Eaton Corp.*,
　696 F.3d 254 (3d Cir. 2012) ........................................................................................ 2

**Rules**

Fed. R. Civ. P. 50 ............................................................................................................ 10

Fed. R. Civ. P. 56 ............................................................................................................ 10

ROSS has one, and only one, remaining antitrust theory: that Thomson Reuters ties Westlaw's public law database to its legal search tools. But that is not how the case started. ROSS also claimed that Thomson Reuters violated the antitrust laws through sham copyright litigation and by refusing to deal with competitors. Those claims are gone, though, and have been since the Court dismissed them. So ROSS is required to prove that it suffered antitrust injury and damages caused by the alleged tie, and the tie alone.

Dr. Cox did not. Despite  The opposite is true: Dr. Cox constructed a but-for world that assumed Dr. Cox's but-for world thus necessarily accounts for the effects of lawful competitive conduct and cannot be used to prove damages caused by the tie.

ROSS resorts to arguing that *Comcast* does not apply here for two reasons. One because *Comcast* occurred at class certification, and two because the Court dismissed ROSS's sham-litigation and refusal-to-deal claims before Dr. Cox submitted his expert damages report. But ROSS concedes that *Comcast* applies the "the core notion that an antitrust plaintiff's damages analysis must match its theory of liability" and does not argue that "core notion" is inapplicable here. And the fact that Dr. Cox had a years' notice that ROSS's sham-litigation and refusal-to-deal claims were dismissed makes his failure to disaggregate more inexcusable, not less.

## ARGUMENT

I. *Comcast* **Applies to Dr. Cox's Damages Analysis.**

Rather than confront Thomson Reuters' argument that Dr. Cox failed to disaggregate damages, ROSS's lead argument is "that *Comcast* has no place here." D.I. 551 at 11. Neither of

its two arguments is persuasive.  *First*, ROSS argues that *Comcast* does not apply because it "involved a different procedural posture with a different procedural question that had to be addressed." *Id.*  True, *Comcast* analyzed the predominance requirement of class certification.  But *Comcast* merely applied the "unremarkable premise" that an antitrust plaintiff is "entitled only to damages resulting" from the alleged anticompetitive conduct and that an expert's damages model "must measure only those damages attributable to that theory" of harm.  *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013).  This "disaggregation requirement is not unique to class actions" and "applies in any situation where an expert's opinion fails to assign causation and measure damages for a specific element of conduct when many different types of conduct were claimed but only one survives dismissal." Areeda & Hovenkamp ¶ 331d2.  Indeed, *Comcast* did nothing more than apply the longstanding—"unremarkable"—rule that an antitrust plaintiff must prove damages caused by the alleged anticompetitive conduct.  *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 269 n.9 (3d Cir. 2012) ("[A] plaintiff must show both that the defendant engaged in anticompetitive conduct and that the plaintiff suffered antitrust injury as a result."  (citing *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 339–40 (1990))).

ROSS does not seriously dispute this point.  ROSS does not argue that the settled principle underlying *Comcast* is inapplicable; it readily acknowledges that "*Comcast* reiterates the core notion that an antitrust plaintiff's damages analysis must match its theory of liability." D.I. 551 at 2.  Even Dr. Cox recognized this blackletter law, opining that ███████████ ███████████████████████████████████████████████████████████████████████ ███████  Ex. 29, Cox Rpt. ¶ 7.

*Second*, ROSS contends that *Comcast* does not apply because there the expert addressed four theories of liability, "three of which were subsequently rejected." D.I. 551 at 12–13.  Here,

2

by contrast, Dr. Cox's report "was submitted well after the Court" dismissed ROSS's sham-litigation and refusal-to-deal claims. *Id.* at 12. This explains why the expert in *Comcast* failed to disaggregate and only makes Dr. Cox's failure worse. The Court dismissed ROSS's sham-litigation and refusal-to-deal claims over a year before Dr. Cox submitted his report. Yet he identified those theories as anticompetitive conduct and did not disaggregate their competitive effect. Dr. Cox had no excuse not to calculate damages caused only by the alleged tie.

II. **Dr. Cox Failed to Disaggregate Damages.**

    A. **Dr. Cox Defined the Relevant "Anticompetitive Conduct" to Include the Dismissed Sham-Litigation and Refusal-to-Deal Claims.**

ROSS next argues that Dr. Cox satisfied *Comcast* and "specifically tailored [his analysis] to ROSS's remaining theory of liability," the alleged tie. D.I. 551 at 12. Dr. Cox, according to ROSS, determined that ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. at 4 (emphasis added) (citation omitted). ROSS then doubles down, stating that Dr. Cox █████████████████████████████████████████████████████████████████████████████████████████████████████████████████████" *Id.* at 6.

ROSS is right on one point: Dr. Cox opined that ████████████████████████████ Ex. 29, Cox Rpt. Part VIII; that, ████████████████████████████████████████ ¶ 15(a); that ████████████████████████████████████████████████████. ¶ 15(b) (emphasis added), and that █████████████████████████████████████████████████████ *id.* Part VIII.E. Yet ROSS is wrong on the point that matters: Dr. Cox did not "specifically tailor" his analysis of the "anticompetitive conduct" to ROSS's tying claim. Far from it. Dr. Cox

3

expressly defined the "anticompetitive conduct" to include the sham-litigation and refusal-to-deal claims. In arguing that Dr. Cox focused his analysis on the claimed tie, ROSS's first cite is to paragraph 10 of Dr. Cox's report. D.I. 551 at 6, bullet 1. But it conspicuously ignores the next two paragraphs. In a section titled, ▮



Ex. 29, Cox Rpt. ¶¶ 11–12. It was this "anticompetitive conduct" that Dr. Cox cited, and it was this "anticompetitive conduct" that Dr. Cox claims ▮ This makes sense given the record. ROSS does not dispute, or even acknowledge, that its own CEO testified that ▮ D.I. 528 at 5 (citing Ex. 1, Arruda Dep. I 102:2–8). Others at ROSS agreed. Ex. 24, Shafik Dep. II 28:11–13 ▮ Accordingly, there can be no dispute that the "anticompetitive conduct" on which Dr. Cox based his damages analysis included the claimed tie as well as Thomson Reuters' refusal to license its public law database to competitors and its pursuit of copyright claims.

### B. Dr. Cox Failed to Disaggregate the Effect of Thomson Reuters' Lawful Copyright Litigation and Refusal to Deal.

To calculate antitrust damages, an expert must construct a "but-for world." The but-for world is characterized as the actual world absent the alleged anticompetitive conduct and allows an expert to compare the plaintiff's performance with and without the challenged conduct, the delta being antitrust damages. There is no dispute about how antitrust damages should be calculated: Dr. Cox admitted that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Ex. 5, Cox Dep. II 86:19–24. But Dr. Cox did not construct a proper but-for world. He did not eliminate *only* the allegedly anticompetitive conduct—he also eliminated the effects of Thomson Reuters' alleged refusal to deal and its enforcement of its copyrights.

#### 1. Dr. Cox Assumed There Would Have Been No Copyright Litigation.

Dr. Cox defined the alleged "anticompetitive conduct" to include Thomson Reuters' ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Ex. 29, Cox. Rpt. ¶ 12. These claims, according to Dr. Cox, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id.* That may have been ROSS's theory, but the Court dismissed ROSS's sham-litigation claim. Yet Dr. Cox indisputably constructed a but-for world that assumed the copyright litigation would have never occurred. Dr. Cox opined that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓ Ex. 30, Cox Reply Rpt. ¶ 42, and ROSS concedes in opposition that "Dr. Cox has made it explicitly clear" that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ D.I. 551 at 15.

Dr. Cox and ROSS defend that assumption because, as they tell it, ▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. (quoting Ex. 30, Cox Reply Rpt. ¶ 42). But whether customers would

5

mix-and-match Thomson Reuters' public law database with ROSS's legal search tools in the but-for world is not the issue. The issue is whether the copyright case would have occurred in the but-for world. And on this record, it is undisputed that Thomson Reuters would have brought the copyright case in the but-for world, even if it were forced to license its public law database to customers.

Thomson Reuters' lawsuit relates to ROSS's use of Headnotes and the Key Number System to train ROSS's artificial intelligence. Dr. Cox has acknowledged it. Ex. 5, Cox Dep. II 112:3–6 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ROSS has acknowledged it. D.I. 551 at 14 (recognizing the "allegations in the copyright case about how ROSS initially trained its AI technology"). And the Court has acknowledged it. D.I. 547 at 3 ("To leverage machine learning, Ross needed legal material to train the machine."). Nowhere does ROSS or Dr. Cox dispute that ROSS would have needed to train its AI in the but-for world. And ROSS concedes that Headnotes and the Key Number System are not "public law" and that Thomson Reuters would not be required to license them to anyone—customer or competitor—in the but-for world. D.I. 551 at 15. Put simply, ROSS used Headnotes to train its AI, Headnotes are not public law, and thus there is no basis to assume that the copyright lawsuit would not have occurred in the but-for world.

Nevertheless, ROSS still argues that the copyright case would not have arisen in the but-for world because, according to ROSS, it "did not train its AI on Westlaw's headnotes or organize its search by anything akin to Westlaw's key numbers." *Id.* This argument fails, for two reasons. *First*, the *merits* of Thomson Reuters' copyright allegations are not relevant; the *substance* of those allegations is. ROSS unsurprisingly disagrees with Thomson Reuters' allegations in the copyright case. But there is no dispute that Thomson Reuters *alleges* that ROSS trained its AI using

6

Headnotes and the Key Number System. And whether Thomson Reuters would be required to license a public law database to customers in the but-for world has no bearing on the allegations about how ROSS trained its AI.

*Second*, while ROSS wants to litigate the merits of the copyright case here, arguing that ROSS in fact "could not use anything other than judicial opinions ... to train its technology," *id.*, that is not what the Court held just weeks ago: "LegalEase admitted to copying at least portions of the headnotes directly" to create training memos, and ROSS "converted the LegalEase memos into usable machine-learning training data." D.I. 547 at 3, 9; *see also* Ex. 26, van der Heijden Dep. II 65:11–21 ████████████████████████████████████████████████████████████████

████████ So despite what ROSS now argues, it did use Headnotes to train its AI. Whether Headnotes are copyrightable, or whether ROSS's use was a fair use is, are beside the point for purposes of this motion. ROSS used Headnotes to train its AI. And ROSS cannot plausibly explain why the copyright litigation would not have occurred in a but-for world where Thomson Reuters sells its public law database (and public law alone) to customers. Nor does it even try.

This is not just an academic criticism of Dr. Cox's analysis. Since the day ROSS announced its closure, ROSS has blamed its failure on the copyright litigation. *See* D.I. 528 at 5. And that undisputed evidence is precisely why the law requires ROSS to disaggregate its damages—to ensure it recovers for harm caused only by the alleged anticompetitive conduct.

    2.    <u>Dr. Cox Assumed ROSS Could License Westlaw's Public Law Database.</u>

Dr. Cox also defined the alleged "anticompetitive conduct" to include ████████ ████████████████████████████████████████████████████████████████ ████████████████████████████ Ex. 29, Cox Rpt. ¶ 11. This refusal to deal, according to Dr. Cox, ████████████████████████████████████████████████ *Id.* And, according to Dr. Cox, ████████████████████████████████████████████████████████

7

*Id.* Part VIII.D.  Dr. Cox doubled down at his deposition, testifying that, ▮

▮

▮ Ex. 5, Cox Dep. II 92:7–15 (emphasis added).  Later, he tried to suggest that ▮

▮

▮ *Id.* at 100:6–18.

Either way, Dr. Cox's testimony makes clear that he did not disaggregate damages:  he either assumed ▮ or he assumed ▮

▮  Neither, however, disaggregates the competitive effect of the lawful refusal to deal from the alleged anticompetitive harm ROSS suffered from the claimed tie.  The undisputed record precludes Dr. Cox's assumption that ▮

▮

▮

▮ Ex. 29, Cox Rpt. ¶ 11.  And ROSS itself pled that Thomson Reuters' refusal to license to rivals "reduces entry from high-quality products, deters legitimate business activities, and depresses the competitive pressure to innovate."  D.I. 225 ¶¶ 107–08.  Yet Dr. Cox failed to account for those impacts in his damages analysis.  It should thus be excluded under *Daubert*. *Comcast*, 569 U.S. at 35; *see also In re Pharmacy Benefit Managers Antitrust Litig.*, 2017 WL 275398, at *19–20 (E.D. Pa. Jan. 18, 2017) (applying *Comcast* to exclude expert); *Ctr. City Periodontists, P.C. v. Dentsply Int'l, Inc.*, 321 F.R.D. 193, 204 (E.D. Pa. 2017) (determining expert's methodology that did not differentiate "the result of the wrong" was irrelevant).[1]

---

[1]   ROSS attempts to distinguish *Pharmacy Benefits Managers*, but there (as here) the flaw in the expert's analysis was that he did not "attribute what portion of damages he measured" to the

8

### III. Thomson Reuters Is Entitled to Summary Judgment.

Thomson Reuters moved simultaneously to exclude Dr. Cox and for summary judgment on ROSS's tying claims. ROSS does not dispute the law. ROSS must prove both injury caused by the alleged tie and measurable damages. D.I. 528 at 15. Nor does ROSS dispute that Dr. Cox provides ROSS's *only* damages analysis. For all of the reasons discussed above, and in Thomson Reuters' opening brief, Dr. Ratliff's analysis is incapable of creating an issue of material fact: if "the plaintiff's expert's damages study cannot segregate lawful from unlawful practices, then no damages may be awarded on the basis of that study." Areeda & Hovenkamp ¶ 657b1. Neither of ROSS's arguments warrant allowing the case to survive.

*First*, ROSS tries to reframe the issues with Dr. Cox's analysis as "center[ing] on what inputs he did and did not incorporate into his damages analysis," which ROSS argues "inherently implicates questions of fact that should be put to the jury." D.I. 551 at 17. The issue is not, as ROSS's cases suggest, related to a "battle of the experts," "the weight" or "sufficiency of[] the evidence [Dr. Cox] relied upon," or "conflicting opinions" in Dr. Cox's report. *See id.* (citations omitted). The issue, as explained at length above, is Dr. Cox's failure to disaggregate damages. And on that point, the law is clear: a jury *cannot* award damages based on a model that fails to disaggregate the effects of lawful competition from the effects of the allegedly anticompetitive conduct. *Coleman Motor Co. v. Chrysler Corp.*, 525 F.2d 1338, 1353 (3d Cir. 1975) (holding that a court may not "permit a jury to speculate concerning the amount of losses resulting from unlawful, as opposed to lawful, competition").

*Second*, ROSS tries to distinguish *Coleman Motor*, *MCI Communications*, and *Concord*

---

various theories of liability. 2017 WL 275398, at *20. The fact that that expert expressly admitted his failure is immaterial where Dr. Cox's analysis suffers from the same defect. *See id.*

9

*Boat* because, in those cases, the district courts allowed the plaintiffs' claims to proceed to trial. *See* D.I. 551 at 17–18 and n.9. Indeed they did. And as each appellate court explained, that was legal error. The Third Circuit in *Coleman Motor* granted the defendant's motion to vacate the judgment. 525 F.2d at 1353–54. The Seventh Circuit in *MCI Communications* also granted the defendant's motion to vacate. 708 F.2d 1081, 1174 (7th Cir. 1983). And the Eighth Circuit in *Concord Boat* both held that the district court erred by failing to exclude the expert's damages analysis and granted the defendant's motion for judgment as a matter of law. 207 F.3d 1039, 1057–58 (8th Cir. 2000).

Of course, the standard for a new trial or judgment notwithstanding the verdict under Rule 50 is the same standard that applies at summary judgment under Rule 56. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *see also Klein v. Hollings*, 992 F.2d 1285, 1287 (3d Cir. 1993) (stating a district court has "limited discretion ... to grant a new trial because a jury's verdict is against the weight of the evidence"). And Rule 56 "mandates the entry of summary judgment," if, "after adequate time for discovery" a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). ROSS thus cannot survive summary judgment simply because other cases—either because of the district court's error or because the defendant chose not to move—made it to trial. Without competent evidence of antitrust injury or damages, Thomson Reuters is entitled to judgment as a matter of law. *See* D.I. 528 (citing cases).

## **CONCLUSION**

Dr. Cox's analysis is unreliable, does not fit the case, and must be excluded. And because Dr. Cox's analysis is incapable of proving antitrust injury or damages caused by the alleged tie, Thomson Reuters is entitled to summary judgment.

10

|  |  |
|---|---|
| | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
| | */s/ Michael J. Flynn* |
| OF COUNSEL: | Jack B. Blumenfeld (#1014) |
| | Michael J. Flynn (#5333) |
| Daniel E. Laytin, P.C. | 1201 North Market Street |
| Christa C. Cottrell, P.C. | P.O. Box 1347 |
| Cameron Ginder | Wilmington, DE  19899 |
| Max Samels | (302) 658-9200 |
| KIRKLAND & ELLIS LLP | jblumenfeld@morrisnichols.com |
| 300 North La Salle | mflynn@morrisnichols.com |
| Chicago, IL 60654 | |
| (312) 862-2000 | *Attorneys for Plaintiffs and Counterdefendants Thomson Reuters Enterprise Center GmbH and West Publishing Corporation* |
| October 26, 2023 | |

11

## CERTIFICATE OF SERVICE

I hereby certify that on October 26, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on October 26, 2023, upon the following in the manner indicated:

| | |
|---|---|
| David E. Moore, Esquire<br>Bindu Palapura, Esquire<br>Andrew L. Brown, Esquire<br>POTTER ANDERSON & CORROON LLP<br>Hercules Plaza, 6th Floor<br>1313 North Market Street<br>Wilmington, DE  19801<br>*Attorneys for Defendant and Counterclaimant* | *VIA ELECTRONIC MAIL* |
| Mark A. Klapow, Esquire<br>Lisa Kimmel, Esquire<br>Crinesha B. Berry, Esquire<br>Matthew J. McBurney, Esquire<br>CROWELL & MORING LLP<br>1001 Pennsylvania Avenue NW<br>Washington, DC  20004<br>*Attorneys for Defendant and Counterclaimant* | *VIA ELECTRONIC MAIL* |
| Gabriel M. Ramsey, Esquire<br>Jacob Canter, Esquire<br>Warrington Parker, Esquire<br>Margaux Poueymirou, Esquire<br>Anna Z. Saber, Esquire<br>Beatrice B. Nguyen, Esquire<br>CROWELL & MORING LLP<br>3 Embarcadero Center, 26th Floor<br>San Francisco, CA  94111<br>*Attorneys for Defendant and Counterclaimant* | *VIA ELECTRONIC MAIL* |

2

Shira Liu, Esquire  *VIA ELECTRONIC MAIL*
CROWELL & MORING LLP
3 Park Plaza, 20th Floor
Irvine, CA  92614
*Attorneys for Defendant and Counterclaimant*

                              */s/ Michael J. Flynn*
                              _____
                              Michael J. Flynn (#5333)