IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION,<br><br>    Plaintiffs and Counterdefendants,<br><br>v.<br><br>ROSS INTELLIGENCE INC.,<br><br>    Defendant and Counterclaimant. | C.A. No. 20-613 (SB)<br><br>REDACTED – PUBLIC VERSION |

**THOMSON REUTERS' REPLY BRIEF IN SUPPORT OF ITS MOTION (NO. 6) – TO EXCLUDE DR. JAMES RATLIFF AND DR. GILLIAN HADFIELD**

OF COUNSEL:

Daniel E. Laytin, P.C.
Christa C. Cottrell, P.C.
Cameron D. Ginder
Max A. Samels
KIRKLAND & ELLIS LLP
300 North La Salle
Chicago, IL 60654
(312) 862-2000

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200

*Attorneys for Plaintiffs Thomson Reuters Enterprise Center GmbH and West Publishing Corporation*

Original filing date: October 26, 2023
Redacted filing date: November 2, 2023

# TABLE OF CONTENTS

**Page**

ARGUMENT ................................................................................................................................. 2

I.  ROSS Fails To Explain How Its Experts Opine on Relative "Comprehensiveness" Without Comparing Thomson Reuters' Public Law Database To Anyone Else's. ............ 3

II. Dr. Ratliff Has No Reliable Methodology to Define a Relevant Public-Law-Database Market or Opine On Market Power. ...................................................................... 5

III. ROSS Fails to Identify a Reliable Methodology Underlying Dr. Ratliff's Separate Products Opinion. ................................................................................................................ 7

IV. ROSS Fails To Rebut That Dr. Ratliff's And Dr. Hadfield's Opinions on Thomson Reuters' AI Are Based on Nothing More Than Ad Hoc Document Review. ................................................................................................................................ 9

CONCLUSION ............................................................................................................................ 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*BanxCorp v. Bankrate, Inc.*,
  2019 WL 2098842 (D.N.J. Mar. 21, 2019) ................................................................. 7

*Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*,
  140 F.3d 494 (3d Cir. 1998) ....................................................................................... 7

*Childers v. Trustees of the Univ. of Penn.*,
  2016 WL 1086669 (E.D. Pa. Mar. 21, 2016) ............................................................ 10

*FTC v. AbbVie Inc.*,
  976 F.3d 327 (3d Cir. 2020) ....................................................................................... 6

*Great Lakes Ins. S.E. v. Sunshine Shopping Ctr., Inc.*,
  2022 WL 4598829 (D.V.I. Sept. 30, 2022) ................................................................ 4

*Harrison Aire, Inc. v. Aerostar Int'l, Inc.*,
  423 F.3d 374 (3d Cir. 2005) ....................................................................................... 7

*Jefferson Par. Hosp. Dist. No. 2 v. Hyde*,
  466 U.S. 2 (1984) ....................................................................................................... 8

*Kuhar v. Petzl Co.*,
  2022 WL 1101580 (3d Cir. Apr. 13, 2022) ............................................................ 2, 3

*Ky. Speedway, LLC v. Nat'l Ass'n of Stock Car Auto Racing, Inc.*,
  2008 WL 113987 (E.D. Ky. Jan. 7, 2008) .............................................................. 6, 7

*Oddi v. Ford Motor Co.*,
  234 F.3d 136 (3d Cir. 2000) ....................................................................................... 9

*In re Paoli R.R. Yard PCB Litig.*,
  35 F.3d 717 (3d Cir. 1994) ..................................................................................... 4, 5

*Pappas v. Sony Elecs., Inc.*,
  136 F. Supp. 2d 413 (W.D. Pa. 2000) ................................................................... 2, 10

*Prescient Med. Holdings, LLC v. Lab'y Corp. of Am. Holdings*,
  2019 WL 635405 (D. Del. Feb. 14, 2019) ................................................................. 6

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*,
  124 F.3d 430 (3d Cir. 1997) ....................................................................................... 6

*Scott v. Chipotle Mexican Grill, Inc.*,
   315 F.R.D. 33 (S.D.N.Y. 2016) ...............................................................................9

*Town Sound & Custom Tops, Inc. v. Chrysler Motors Corp.*,
   959 F.2d 468 (3d Cir. 1992)....................................................................................6

*United States v. Crews*,
   494 F. App'x 240 (3d Cir. 2012) ........................................................................2, 10

*In re Zoloft Prod. Liab. Litig.*,
   858 F.3d 787 (3d Cir. 2017)....................................................................................4

**Rules**

Fed. R. Civ. P. 702..........................................................................................................10

As ROSS recognized in its *Daubert* motion against Professor Syverson, an expert opinion is inadmissible if it is "connected to existing data only by the *ipse dixit*—the 'say so'—of the expert." D.I. 517 at 6. Professor Syverson applied well-established economic principles to the facts of this case to reach his opinions. ROSS, however, identifies no such methodology for the opinions its experts offer. Instead, ROSS spends its Opposition reciting its favored facts, arguing the merits of summary judgment issues that the parties have addressed in other briefing, and claiming that its experts can rely on nothing more than their "experience." That is insufficient under *Daubert*, and ROSS has failed to defend each of the four opinions challenged below.

***First***, ROSS admits its experts did no work to compare Westlaw's collection of cases to anyone else's before opining that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ROSS points to a list of other "factors" that its experts considered, but it does not explain how these "factors" are the result of any reliable methodology. In fact, one of these "factors" requires the same comparison of caselaw that ROSS admits its experts did not do.

***Second***, ROSS argues that Dr. Ratliff can define a relevant market for public law without identifying which companies, if any, compete with Thomson Reuters in that so-called market. That makes no sense. An expert cannot offer a reliable opinion on a relevant market or market power without addressing who is part of the market at issue.

***Third***, ROSS admits that Dr. Ratliff did no work to assess whether legal researchers have ever expressed interest in public law databases and legal search tools as separate products. Instead, Dr. Ratliff based his separate products opinion on ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ That logical leap makes no sense and, unsurprisingly, ROSS has identified no reliable methodology to support it.

***Fourth***, ROSS admits that Dr. Ratliff ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ to form his

opinion that ███████████████████████████████████████████████ is not a valid basis for an expert opinion. ROSS tries to defend Dr. Hadfield's opinion on this issue by pointing to her work on AI, but general expertise without a methodology connected to the facts of the case is not a sufficient basis for an expert opinion.

For these reasons, the Court should exclude each of Dr. Ratliff's and Dr. Hadfield's opinions identified in Thomson Reuters' *Daubert* opening brief.

## ARGUMENT

ROSS spends much of its Opposition trying to water down the *Daubert* standard. It repeatedly cites *United States v. Crews*, 494 F. App'x 240 (3d Cir. 2012), for the proposition that an expert "can testify based on background and experience" and their opinion "need not be based on objective or scientific data." *Id.* at 247 (cited at D.I. 552 at 4, 15). But that court approved of testimony "about the role of cell phones in the drug trade" from an experienced law-enforcement official who had "participated in over 200 drug investigations." *Id.* at 246.

Dr. Ratliff and Dr. Hadfield are two economists who may offer expert opinions only insofar as their economic expertise provides a reliable methodology "based on the methods and procedures of science." *Kuhar v. Petzl Co.*, 2022 WL 1101580, at *7 (3d Cir. Apr. 13, 2022). Mere "experience" does not suffice when it reduces to no "method other than the *ipse dixit* of [the expert] himself." *Pappas v. Sony Elecs., Inc.*, 136 F. Supp. 2d 413, 422 (W.D. Pa. 2000) (excluding opinion that "was based solely on [the expert's] training and years of experience"). ROSS has no authority suggesting otherwise. Despite ROSS's protests to the contrary, it ROSS must show that Drs. Ratliff and Hadfield relied on more than just experience to justify each of the opinions challenged here. ROSS has fallen short here.

2

I. **ROSS Fails To Explain How Its Experts Opine on ▓▓▓▓▓▓▓▓▓▓ Without Comparing Thomson Reuters' Public Law Database To Anyone Else's.**

ROSS freely admits that "neither Dr. Hadfield nor Dr. Ratliff" analyzed "the number of cases in the Westlaw database." D.I. 552 at 5. ROSS does not, and cannot, offer a coherent explanation about why its experts can opine that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ without even studying whether Westlaw has access to caselaw that its competitors lack. ROSS nevertheless raises three arguments to defend these opinions, each meritless.

***First***, ROSS argues that its experts did not need to compare Westlaw's public law database to its competitors because they ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id.* This argument fails at the threshold because the first "factor" that Dr. Hadfield considered was ▓▓▓▓▓▓▓▓▓ which requires the same comparison of caselaw that neither expert conducted. *Id.* Dr. Hadfield explains that she ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id.*; Ex. 31, Hadfield Rpt. ¶ 34. But the relative "availability" of opinions—published or unpublished—is exactly what Dr. Hadfield and Dr. Ratliff failed to analyze.[1] D.I. 552 at 5.

Just as fatally, ROSS does not explain how these factors are "based on the 'methods and procedures of science.'" *Kuhar*, 2022 WL 1101580, at *7. Neither ROSS nor its experts ever explain what makes ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ the correct criteria for determining whether Westlaw's public law database is ▓▓▓▓▓▓▓▓▓▓ *See* D.I. 552 at 5–7. While an expert may weigh different factors in reaching their opinions, the "weighing of [the] evidence must

---

[1] In fact, ROSS's legal research expert, Dr. Peter Martin, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Ex. 108, Martin Dep. 41:14–22.

3

not be arbitrary, but must itself be based on methods of science." *In re Zoloft Prod. Liab. Litig.*, 858 F.3d 787, 796 (3d Cir. 2017) (citation omitted) (affirming exclusion of expert). ROSS has no explanation why the so-called "factors" its experts relied on were "truly a methodology, rather than a mere conclusion-oriented selection process." *Id.* This failure is particularly striking when there is one obvious "factor" staring the experts in the face—whether there is any caselaw that Thomson Reuters has but its competitors do not—that they choose not to study. *See also* Ex. 23, Ratliff Dep. 53:8–19, 54:7–15 ███████████████████████

███████

**Second**, ROSS argues that Dr. Hadfield relied on her unscientific ██████████ opinion in subsequent economic analysis. D.I. 552 at 6–7. But that only makes the subsequent analysis invalid and does not save her ████████████ opinion. Dr. Hadfield applied the concepts of ███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████ Ex. 31, Hadfield Rpt. ¶ 69 (emphasis added). In other words, Dr. Hadfield had settled on her opinion that ███████████████████

████████ before reaching the actual economic analysis. *Id.* Taking an unscientific opinion and incorporating it into later economic analysis does not make the first opinion scientific. Quite the opposite. It only shows that the subsequent economic analysis is also invalid. *See In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 745 (3d Cir. 1994) (explaining that "any step that renders [an expert's] analysis unreliable … renders the expert's testimony inadmissible" (emphasis omitted)); *Great Lakes Ins. S.E. v. Sunshine Shopping Ctr., Inc.*, 2022 WL 4598829, at *12 (D.V.I. Sept. 30, 2022) (excluding experts' testimony because it was "based upon her" other unreliable analysis).

**Third**, ROSS makes the semantic point that Dr. Ratliff used the phrase ███████



4

▇▇▇▇▇▇▇▇▇▇▇▇▇ instead of ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ See D.I. 552 at 7. It is unclear what, if any, distinction ROSS thinks exists between these two phrases, or what difference it should make to the Court's *Daubert* analysis. ROSS also highlights that Dr. Ratliff incorporated his ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ opinion into his conclusion that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ but as explained above, incorporating an invalid opinion into further analysis "renders [all of] the expert's testimony inadmissible." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d at 745.

## II. Dr. Ratliff Has No Reliable Methodology to Define a Relevant Public-Law-Database Market or Opine On Market Power.

ROSS does not dispute that Dr. Ratliff has failed to identify which, if any, other products or companies are part of his purported public-law-database market. Dr. Ratliff cannot offer a valid opinion on either issue without answering this baseline question.

***Relevant markets***: ROSS argues that, despite Dr. Ratliff's failure to analyze cross-elasticity of demand, he has sufficiently defined a relevant market of public law databases because he has analyzed "reasonable interchangeability of use."[2] D.I. 552 at 9. But Dr. Ratliff has not performed a legally sufficient "interchangeability" analysis because he does not identify which, if any, other companies' products are interchangeable with Westlaw's public law database. ROSS admits that Dr. Ratliff's only interchangeability opinions are ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ D.I. 552 at 8–9. In other words, the only

---

[2] ROSS argues that a "cross-elasticity" analysis was "not possible" because there was no applicable price data. D.I. 552 at 9–10. This does not change that Dr. Ratliff's interchangeability analysis is legally inadequate. Moreover, it is not true. Westlaw may not have licensed a public law database, but ROSS has affirmatively alleged that Fastcase and Casemaker did, at least to other legal-research-platform companies like ROSS. D.I. 225 ¶ 28 (alleging that ROSS licensed public law from these companies). Dr. Ratliff may have declined to identify these companies as potential public law database competitors but that does not make their pricing data any less available.

5

work Dr. Ratliff has done is ████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████

Without such an analysis, Dr. Ratliff's opinions do not adequately identify the products that are "reasonably interchangeable by consumers for the same purposes" as Thomson Reuters' public law database, and therefore fail to define a relevant market as a matter of law. *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 438 (3d Cir. 1997) (citation omitted); *Prescient Med. Holdings, LLC v. Lab'y Corp. of Am. Holdings*, 2019 WL 635405, at *6 (D. Del. Feb. 14, 2019) (explaining that a plaintiff fails to identify the relevant market when it cannot identify the "specific products ... that compete with each other" (citation omitted)). ROSS's own authority illustrates why Dr. Ratliff's relevant markets analysis is not sufficient. In *FTC v. AbbVie Inc.*, the plaintiff identified the non-defendant participants in the relevant market and put forward evidence that none of their "product[s] ever held 10 percent or more of the market." 976 F.3d 327, 373 (3d Cir. 2020). That plaintiff's relevant markets evidence adequately identified the "actual or potential competitors who may take business away from each other," which Dr. Ratliff has not done here. *Id.*; *Town Sound & Custom Tops, Inc. v. Chrysler Motors Corp.*, 959 F.2d 468, 480 (3d Cir. 1992).

ROSS does not cite a single case permitting an expert to define a relevant market with no indication which, if any, other companies or products compete with the defendant in that market. Dr. Ratliff's relevant market opinions are thus insufficient as a matter of law and must be excluded. *See Ky. Speedway, LLC v. Nat'l Ass'n of Stock Car Auto Racing, Inc.*, 2008 WL 113987, at *3–4 (E.D. Ky. Jan. 7, 2008) (excluding expert for failing to define relevant market).

***Market power***: Dr. Ratliff's failure to define a relevant market is also fatal to his market power opinion, and ROSS offers no caselaw to suggest otherwise. *Brokerage Concepts, Inc. v.*

*U.S. Healthcare, Inc.*, 140 F.3d 494, 513 (3d Cir. 1998) (explaining that to "exercise[] power in the tying market, that market must be properly defined"). ROSS nevertheless raises two additional defenses of Dr. Ratliff's market power opinions, both meritless.

*First*, ROSS argues that Dr. Ratliff properly analyzed the legal-research-platform market instead of the public law database market because it is the "closest" comparable market. D.I. 552 at 10 & n.7. But ROSS cites no methodology that Dr. Ratliff used to make this logical leap, such as a method that would account for the fact that legal-research-platform market share reflects search technology, secondary sources, editorial content, and countless other features not relevant to public law databases. Instead of identifying any work to adjust for differences between these markets, ROSS admits that all Dr. Ratliff did was ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *Id.* at 11 n.7.

*Second*, ROSS argues that Dr. Ratliff has proven market power by opining that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. I. 552 at 10. But ROSS does not contest that the relevant legal question is "whether [Thomson Reuters'] prices exceed[] competitive levels." *BanxCorp v. Bankrate, Inc.*, 2019 WL 2098842, at *4 (D.N.J. Mar. 21, 2019). Dr. Ratliff ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Dr. Ratliff also ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *See Harrison Aire, Inc. v. Aerostar Int'l, Inc.*, 423 F.3d 374, 381 (3d Cir. 2005) (explaining that because there is "both price and quality competition … a firm's comparatively high price may simply reflect a superior product"). Thus, Dr. Ratliff's so-called "pricing" analysis is not a reliable methodology to prove market power.

**III.     ROSS Fails to Identify a Reliable Methodology Underlying Dr. Ratliff's Separate Products Opinion.**

ROSS does not contest that Dr. Ratliff has zero evidence of legal researchers ever "asking for a public law database separate and apart from a legal search tool." D.I. 552 at 13. Instead,

7

ROSS explains that Dr. Ratliff's ▮▮▮▮▮▮▮ opinion is based on (1) the "real-world demand for Westlaw's *integrated* research platform" and (2) that Dr. Ratliff believes that a ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ D.I. 552 at 14 (emphasis added).  That does not even make sense.  The test for separate products is whether there is "sufficient consumer demand" for separate public law databases and legal research platforms such that it would be "efficient for a firm to provide service separately from parts." *Jefferson Par. Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2 (1984); *see* D.I. 519 at 10.  Demand for Westlaw's *integrated* platform as a matter of law, logic, and economics does not address this question.  Nevertheless, ROSS raises two arguments in defense of this approach.  Both fail.

***First***, ROSS argues that the testimony of Thomson Reuters' expert Professor Chad Syverson agrees with Dr. Ratliff's approach.  D.I. 552 at 12.  But in the testimony that ROSS cites, Professor Syverson makes the unremarkable point that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 113, Syverson Dep. 68:9–70:7.  ROSS ignores Professor Syverson's other testimony which explains that, unlike Dr. Ratliff, he ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*Id.* at 67:16–68:1.  In all events, ROSS makes an apples-to-oranges comparison.  As a rebuttal expert, Professor Syverson "has 'no burden to produce models or methods of their own; they need only attack those of the plaintiffs' experts.'" *Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 44 (S.D.N.Y. 2016) (citation omitted).  Professor Syverson can critique Dr. Ratliff's approach

8

based on the evidence Dr. Ratliff considered, but that does not mean that Dr. Syverson agrees that Dr. Ratliff had a sufficient basis for the opinions he offered.

*Second*, ROSS argues that it would be "impossible" for Dr. Ratliff to identify real-world evidence of separate demand because Thomson Reuters only licenses an integrated product. D.I. 552 at 13. This argument is factually meritless because it ignores that Fastcase and Casemaker were actively licensing public law databases to real-world legal research platforms and there is no evidence that legal researchers ever expressed interest to these companies in licensing their databases to conduct legal research. Ex. 5, Cox. Dep. II 124:12–125:19. In other words, Dr. Ratliff's separate-product thesis had a real-world market test, but it failed, and Dr. Ratliff simply ignored this evidence. Moreover, ROSS's argument is an excuse, not a reliable methodology. The law is clear that Dr. Ratliff cannot offer an opinion based on "no … methodology beyond his own intuition." *Oddi v. Ford Motor Co.*, 234 F.3d 136, 158 (3d Cir. 2000). Claiming that it is difficult to come up with a methodology is no substitute for identifying one. ROSS's argument is thus legally irrelevant to the *Daubert* issue at hand.

**IV.     ROSS Fails To Rebut That Dr. Ratliff's And Dr. Hadfield's Opinions on Thomson Reuters' AI Are Based on Nothing More Than Ad Hoc Document Review.**

Finally, ROSS admits that Dr. Ratliff's opinion that ▮▮▮▮▮ is based entirely on reviewing ▮▮▮▮▮ D.I. 552 at 16. ROSS does not argue that Dr. Ratliff conducted any economic analysis to reach this opinion or that his economic training had any relevance to analyzing this issue. *Id.* at 16–17. ROSS has therefore conceded that Dr. Ratliff's opinion on ▮▮▮▮▮ reduces to "sifting through evidence to find passages that support the Plaintiff's theory of the case." *Childers v. Trustees of the Univ. of Penn.*, 2016 WL 1086669, at *6 (E.D. Pa. Mar. 21, 2016). Such a method-less reading of documents does "not meet Rule 702's requirement of reliability."

9

*Id.*

ROSS likewise concedes that Dr. Hadfield reached her opinion that [REDACTED] based on reviewing a "collection of documents and testimony." D.I. 552 at 15. The only additional argument that ROSS offers is that Dr. Hadfield is an "expert in AI" and discusses the "development of many [AI] technologies" in her report. *Id.* But mere general expertise in a field is not sufficient when an expert has failed to apply that expertise to the facts of the case. *See, e.g.*, *Pappas*, 136 F. Supp. 2d at 422 (excluding opinion that "was based solely on [the expert's] training and years of experience" with no "method other than the *ipse dixit* of [the expert] himself"). She seeks to opine not just on [REDACTED] but rather on [REDACTED] without any suggestion of a reliable methodology to address that question. Ex. 31, Hadfield Rpt. ¶¶ 126, 137; *Pappas*, 136 F. Supp. 2d at 422; *contrast Crews*, 494 F. App'x at 247. Thus, Dr. Hadfield's opinions on [REDACTED] are not the product of a reliable methodology.

## CONCLUSION

For these reasons, the Court should exclude the above-discussed expert opinions of Dr. James Ratliff and Dr. Gillian Hadfield.



|  |  |
|---|---|
| | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
| | */s/ Michael J. Flynn* |
| OF COUNSEL: | Jack B. Blumenfeld (#1014) |
| | Michael J. Flynn (#5333) |
| Daniel E. Laytin, P.C. | 1201 North Market Street |
| Christa C. Cottrell, P.C. | P.O. Box 1347 |
| Cameron Ginder | Wilmington, DE  19899 |
| Max Samels | (302) 658-9200 |
| KIRKLAND & ELLIS LLP | jblumenfeld@morrisnichols.com |
| 300 North La Salle | mflynn@morrisnichols.com |
| Chicago, IL 60654 | |
| (312) 862-2000 | *Attorneys for Plaintiffs and Counterdefendants Thomson Reuters Enterprise Center GmbH and West Publishing Corporation* |
| October 26, 2023 | |

11

# **CERTIFICATE OF SERVICE**

I hereby certify that on October 26, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on October 26, 2023, upon the following in the manner indicated:

| | |
|---|---|
| David E. Moore, Esquire<br>Bindu Palapura, Esquire<br>Andrew L. Brown, Esquire<br>POTTER ANDERSON & CORROON LLP<br>Hercules Plaza, 6th Floor<br>1313 North Market Street<br>Wilmington, DE  19801<br>*Attorneys for Defendant and Counterclaimant* | *VIA ELECTRONIC MAIL* |
| Mark A. Klapow, Esquire<br>Lisa Kimmel, Esquire<br>Crinesha B. Berry, Esquire<br>Matthew J. McBurney, Esquire<br>CROWELL & MORING LLP<br>1001 Pennsylvania Avenue NW<br>Washington, DC  20004<br>*Attorneys for Defendant and Counterclaimant* | *VIA ELECTRONIC MAIL* |
| Gabriel M. Ramsey, Esquire<br>Jacob Canter, Esquire<br>Warrington Parker, Esquire<br>Margaux Poueymirou, Esquire<br>Anna Z. Saber, Esquire<br>Beatrice B. Nguyen, Esquire<br>CROWELL & MORING LLP<br>3 Embarcadero Center, 26th Floor<br>San Francisco, CA  94111<br>*Attorneys for Defendant and Counterclaimant* | *VIA ELECTRONIC MAIL* |

2

Shira Liu, Esquire  
CROWELL & MORING LLP  
3 Park Plaza, 20th Floor  
Irvine, CA  92614  
*Attorneys for Defendant and Counterclaimant*

*VIA ELECTRONIC MAIL*

/s/ *Michael J. Flynn*
_____
Michael J. Flynn (#5333)