# EXHIBIT A

## TABLE OF CONTENTS

I.     **PRELIMINARY INSTRUCTIONS** ...................................................................... **5**

    1.     INTRODUCTION; ROLE OF JURY [AGREED] .................................................. 5

    2.     THE PARTIES AND THEIR CONTENTIONS [PLAINTIFFS' PROPOSAL] ................................................................................................ 6

    3.     EVIDENCE [PLAINTIFFS' PROPOSAL] ............................................................ 9

    4.     DIRECT AND CIRCUMSTANTIAL EVIDENCE [AGREED] ........................ 11

    5.     CREDIBILITY OF WITNESSES [AGREED] ................................................... 12

    6.     BURDEN OF PROOF [PLAINTIFFS' PROPOSAL] ........................................ 13

    7.     CONDUCT OF THE JURY [AGREED] ............................................................. 15

    8.     COURSE OF THE TRIAL [PLAINTIFFS' PROPOSAL] .................................. 17

II.     **GENERAL INSTRUCTIONS FOR USE DURING TRIAL** ...................................... **18**

    9.     STIPULATION OF FACT [AGREED] ............................................................... 18

    10.     USE OF DEPOSITION [PLAINTIFFS' PROPOSAL] ...................................... 19

    11.     CHARTS AND SUMMARIES IN EVIDENCE AND THOSE NOT ADMITTED IN EVIDENCE [PLAINTIFFS' PROPOSAL] .............................. 20

    12.     STRIKING EVIDENCE [PLAINTIFFS' PROPOSAL] ..................................... 21

    13.     EVIDENCE ADMITTED FOR A LIMITED PURPOSE [AGREED] ............... 22

    14.     OPINION TESTIMONY [PLAINTIFFS' PROPOSAL] .................................... 23

    15.     RECESS ADMONITION [PLAINTIFFS' PROPOSAL] ................................... 24

III.     **FINAL JURY INSTRUCTIONS** ....................................................................... **25**

    16.     GENERAL INSTRUCTIONS [PLAINTIFFS' PROPOSAL] ............................ 25

    17.     COPYRIGHT—INTRODUCTION [PLAINTIFFS' PROPOSAL] .................... 28

    18.     COPYRIGHT—DIRECT INFRINGEMENT [PLAINTIFFS' PROPOSAL] ................................................................................................ 29

    19.     COPYRIGHT—DIRECT INFRINGEMENT—OWNERSHIP [PLAINTIFFS' PROPOSAL] .............................................................. 30

20.   COPYRIGHT—DIRECT INFRINGEMENT—COPYING [PLAINTIFFS' PROPOSAL] ............................................................ 32

21.   COPYRIGHT—DIRECT INFRINGEMENT—FAIR USE DEFENSE [PLAINTIFFS' PROPOSAL] ............................................................ 34

22.   [PLAINTIFFS' CONDITIONAL INSTRUCTION] COPYRIGHT MISUSE ............................................................................................ 38

23.   COPYRIGHT—INDIRECT INFRINGEMENT [PLAINTIFFS' PROPOSAL] ............................................................................................ 39

24.   COPYRIGHT—INDIRECT INFRINGEMENT—THIRD PARTY COPYING [PLAINTIFFS' PROPOSAL] ............................................ 40

25.   COPYRIGHT—INDIRECT INFRINGEMENT—VICARIOUS COPYRIGHT INFRINGEMENT  [PLAINTIFFS' PROPOSAL] ...................... 41

26.   COPYRIGHT—INDIRECT INFRINGEMENT—CONTRIBUTORY COPYRIGHT INFRINGEMENT  [PLAINTIFFS' PROPOSAL] ...................... 42

27.   TORTIOUS INTERFERENCE WITH CONTRACT [PLAINTIFFS' PROPOSAL] ............................................................................................ 43

28.   MONETARY RELIEF—GENERALLY [PLAINTIFFS' PROPOSAL] ............ 45

29.   MONETARY RELIEF—TYPES OF COMPENSATORY DAMAGES [PLAINTIFFS' PROPOSAL] ............................................................ 46

30.   MONETARY RELIEF—ACTUAL DAMAGES [PLAINTIFFS' PROPOSAL] ............................................................................................ 47

31.   MONETARY RELIEF—ROSS'S PROFITS [PLAINTIFFS' PROPOSAL] ............................................................................................ 48

32.   MONETARY RELIEF—STATUTORY DAMAGES [PLAINTIFFS' PROPOSAL] ............................................................................................ 50

33.   MONETARY RELIEF—PUNITIVE DAMAGES [PLAINTIFFS' PROPOSAL] ............................................................................................ 52

34.   FINAL INSTRUCTIONS AND DEADLOCK [AGREED] ................................ 55

## Introduction

ROSS has included an introduction in its jury instructions, to which Thomson Reuters hereby responds.

Thomson Reuters has patterned its general instructions off of the Third Circuit Model, and has indicated the instructions for which the parties are in agreement.  Thomson Reuters patterned its copyright-specific jury instructions off of Third Circuit Court of Appeals case law.  Where appropriate, Thomson Reuters has incorporated previous D. Del. instructions or the Ninth Circuit Model Jury Instructions.  However, because of significant differences between the Third and Ninth Circuits' application of copyright law, particularly in the test for substantial similarity, Thomson Reuters' instructions follow Third Circuit case law instead of the Ninth Circuit Model.  Thomson Reuters notes that many of ROSS's instructions rely heavily on Ninth Circuit case law for interpretations that have not been adopted by the Third Circuit.

ROSS also submits a verdict form that is overly long, internally inconsistent, confusing, argumentative, and does not include every form of relief that Thomson Reuters seeks.  For example, ROSS's instructions do not mention copyright in Westlaw as whole.  Rather, it confuses the issue by improperly only referring to Thomson Reuters' "key number system compilation," when in fact the compilation is all of Westlaw, including all of the editorial enhancements, such as the headnotes, synopses, key numbers, and their relationship to one another.  By contrast, Thomson Reuters has submitted a straightforward verdict form patterned off of others used for copyright trials within this Circuit, which disfavor instructions with complex sub-parts.  The verdict form separately asks about the headnotes, but completely avoids mention of the originality of the *selection* of the headnotes and their *arrangement* within the West Key Number System.  This is similarly ignored in the jury instructions themselves on

3

originality, which only mentions selection and arrangement of the West Key Number System and ignores the selection and arrangement of the headnotes.

I.      **PRELIMINARY INSTRUCTIONS**

1.      **INTRODUCTION; ROLE OF JURY [AGREED]**

Now that you have been sworn, I have the following preliminary instructions for your guidance as jurors in this case.

You will hear the evidence, decide what the facts are, and then apply those facts to the law that I will give to you.

You and only you will be the judges of the facts. You will have to decide what happened. I play no part in judging the facts. You should not take anything I may say or do during the trial as indicating what I think of the evidence or what your verdict should be. My role is to be the judge of the law. I make whatever legal decisions have to be made during the course of the trial, and I will explain to you the legal principles that must guide you in your decisions. You must follow that law whether you agree with it or not.

**Authority:** Third Circuit Model Jury Instructions § 1.1

2.      **THE PARTIES AND THEIR CONTENTIONS [PLAINTIFFS' PROPOSAL]**

In this case, Thomson Reuters and West Publishing, which I will refer to collectively as Thomson Reuters, claim that ROSS engaged in copyright infringement by copying from its Westlaw legal research platform to develop ROSS's legal research platform.  Specifically, Thomson Reuters claims that ROSS copied its editorial enhancements and organizational system, which I will refer to as "Westlaw Content."  ROSS denies Thomson Reuters' allegations and contends that ROSS copied only unoriginal elements and its copying is excused by the doctrine of fair use.

Thomson Reuters also contends that ROSS tortiously interfered with Thomson Reuters' contract with a third party, LegalEase, which violated two of the contract's provisions by using a bot to scrape Westlaw and sharing passwords.  ROSS denies Thomson Reuters' allegations and asserts it had no knowledge of LegalEase's activities.

I will give you detailed instructions on the law at the end of the case, and those instructions will control your deliberations and decision.  But to help you follow the evidence, I will now give you a brief summary of the elements that Thomson Reuters must prove to make its case.

To prove direct copyright infringement, Thomson Reuters must prove that (1) it owns a valid copyright in Westlaw, and (2) ROSS copied original elements of the Westlaw Content.  I already have determined as a matter of law that ROSS copied Westlaw Content.

To prove vicarious copyright infringement, Thomson Reuters must prove (1) direct copyright infringement by a third party, (2) ROSS had the right and ability to stop or limit the infringing activity but failed to do so, and (3) ROSS directly profited from or had a direct financial interest in the infringing activities.

To prove contributory copyright infringement, Thomson Reuters must prove (1) direct copyright infringement by a third party; (2) ROSS knew, was willfully blind to, or should have known that the third party was directly infringing; and (3) ROSS intentionally induced the third party to infringe Thomson Reuters' copyrights or materially contributed to the infringement.

To prove tortious interference with contract, Thomson Reuters has the burden of proving:

1. There was a contract between LegalEase and Thomson Reuters;

2. ROSS knew about the contract and its terms;

3. ROSS committed an intentional act that was a significant factor in causing the breach of that contract;

4. ROSS had no justification; and

5. The breach harmed Thomson Reuters.

I already have determined that there was a contract between Thomson Reuters and LegalEase and that Thomson Reuters suffered harm.


**Authority** (generally): Third Circuit Model Jury Instructions § 1.2 (modified); *Leonard v. Stemtech Health Scis., Inc.*, C.A. No. 1:08-cv-00067-LPS-CJB (D. Del. filed 2/1/2008) (D.I. 218 Preliminary Jury Instructions, filed 10/04/2013).

**Authority** (direct infringement): D.I. 547 (Summ. J. Op.) at 5, 9; *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *Leonard v. Stemtech Health Scis., Inc.*, C.A. No. 08-067-LPS-CJB (D. Del. filed 2/1/2008) (D.I. 218 Preliminary Jury Instructions, filed 10/04/2013). 17 USC § 410(c)

**Authority** (vicarious infringement): *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005); *Leonard v. Stemtech Health Scis., Inc.*, C.A. No. 08-067-LPS-CJB (D. Del. filed 2/1/2008) (D.I. 218 Preliminary Jury Instructions, filed 10/04/2013).

**Authority** (contributory infringement): *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005); *Leonard v. Stemtech Health Scis., Inc.*, C.A. No. 08-067-LPS-CJB (D. Del. filed 2/1/2008) (D.I. 218 Preliminary Jury Instructions, filed 10/04/2013).

**Authority** (tortious interference):  D.I. 547 (Summ. J. Op.) at 30; *Avaya Inc., RP v. Telecom Labs, Inc.*, 838 F.3d 354, 383 (3d Cir. 2016); *WaveDivision Holdings, LLC v. Highland Cap. Mgmt., L.P.*, 49 A.3d 1168, 1174 (Del. 2012); *ASDI, Inc. v. Beard Rsch., Inc.*, 11 A.3d 749 (Del.

2010); Restatement (Second) of Torts, § 766 (1979); *see also Alder, Barish, Daniels, Levin & Creskoff v. Epstein*, 393 A.2d 1175, 1184 (Pa. 1978).

### 3.    EVIDENCE [PLAINTIFFS' PROPOSAL]

The evidence from which you will find the facts will consist of the following:

1.   Testimony of the witnesses;

2.   Documents and other things received as exhibits;

3.   Any facts that are stipulated—that is, formally agreed to by the parties; and

4.   Party admissions.

The following things are not evidence:

1. Statements, arguments, and questions by lawyers for the parties in this case;

2. Objections by lawyers;

3. Any testimony I tell you to disregard; and

4. Anything you may have seen or heard outside the courtroom.

You must make your decision based only on the evidence that you see and hear in court. Do not let rumors, suspicions, or anything else that you may see or hear outside of court influence your decision in any way.

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

There are rules that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence, and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. This simply means that the lawyer is requesting that I make a decision on a particular rule of evidence. You should not be influenced by the fact that an objection is made. Objections to questions are not evidence. Lawyers have an obligation to their clients to make objections when they believe that evidence being offered is

improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it. If the objection is sustained, ignore the question. If it is overruled, treat the answer like any other. If you are instructed that some item of evidence is received for a limited purpose only, you must follow that instruction.

Also, certain testimony or other evidence may be ordered struck from the record and you will be instructed to disregard this evidence. Do not consider any testimony or other evidence that gets struck or excluded. Do not speculate about what a witness might have said or what an exhibit might have shown.

**Authority:** Third Circuit Model Jury Instructions § 1.5. (modified)

### 4.      DIRECT AND CIRCUMSTANTIAL EVIDENCE [AGREED]

There are two types of evidence that you may use in reaching your verdict. One type of evidence is called "direct evidence." An example of "direct evidence" is when a witness testifies about something that the witness knows through his own senses — something the witness has seen, felt, touched or heard or did. If a witness testified that he saw it raining outside, and you believed him, that would be direct evidence that it was raining. Another form of direct evidence is an exhibit where the fact to be proved is its existence or current condition.

The other type of evidence is circumstantial evidence. "Circumstantial evidence" is proof of one or more facts from which you could find another fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

You should consider both kinds of evidence that are presented to you. The law makes no distinction in the weight to be given to either direct or circumstantial evidence. You are to decide how much weight to give any evidence.


**Authority:**  Third Circuit Model Jury Instructions § 1.6.

### 5.    CREDIBILITY OF WITNESSES [AGREED]

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe. You are the sole judges of the credibility of the witnesses. "Credibility" means whether a witness is worthy of belief. You may believe everything a witness says or only part of it or none of it. In deciding what to believe, you may consider a number of factors, including the following:

1.  the opportunity and ability of the witness to see or hear or know the things the witness testifies to;

2.  the quality of the witness' understanding and memory;

3.  the witness' manner while testifying;

4.  whether the witness has an interest in the outcome of the case or any motive, bias, or prejudice;

5.  whether the witness is contradicted by anything the witness said or wrote before trial or by other evidence;

6.  how reasonable the witness' testimony is when considered in the light of other evidence that you believe; and

7.  any other factors that bear on believability.

The weight of the evidence to prove a fact does not necessarily depend on the number of witnesses who testify. What is more important is how believable the witnesses were, and how much weight you think their testimony deserves.

**Authority:** Third Circuit Model Jury Instructions § 1.7.

### 6.    BURDEN OF PROOF [PLAINTIFFS' PROPOSAL]

This is a civil case. Thomson Reuters brought this lawsuit.  ROSS is the party against which the lawsuit was filed.  Thomson Reuters has the burden of proving its case by what is called the preponderance of the evidence. That means Thomson Reuters has to prove to you, in light of all the evidence, that what it claims is more likely so than not so.  To say it differently: if you were to put the evidence favorable to Thomson Reuters and the evidence favorable to ROSS on opposite sides of the scales, Thomson Reuters would have to make the scales tip somewhat on its side.  If Thomson Reuters fails to meet this burden on one of its claims, the verdict on that claim must be for ROSS.  If you find after considering all the evidence that a claim is more likely so than not so, then the claim has been proved by a preponderance of the evidence.  In determining whether any fact has been proved by a preponderance of evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

On ROSS's affirmative defense of fair use, ROSS has the burden of proving the elements of the defense by a preponderance of the evidence.  I will instruct you on the facts that will be necessary for you to find on this affirmative defense.  An affirmative defense is proven if you find, after considering all evidence in the case, that ROSS has succeeded in proving that the required facts are more likely so than not so.

You may have heard of the term "proof beyond a reasonable doubt." That is a stricter standard of proof and it applies only to criminal cases. It does not apply in civil cases such as this.  So you should put it out of your mind.

**<u>Authority:</u>** Third Circuit Model Jury Instructions § 1.10 (modified); *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994) ("fair use is an affirmative defense"); *Video Pipeline, Inc. v. Buena Vista Home Ent., Inc.*, 342 F.3d 191, 197 (3d Cir. 2003), *as amended* (Sept. 19, 2003) ("[Fair use] is an affirmative defense for which the alleged infringer bears the burden of proof.").

7.      **CONDUCT OF THE JURY [AGREED]**

Now, a few words about your conduct as jurors.

First, I instruct you that during the trial and until you have heard all of the evidence and retired to the jury room to deliberate, you are not to discuss the case with anyone, not even among yourselves.  If anyone should try to talk to you about the case, including a fellow juror, bring it to my attention promptly.  There are good reasons for this ban on discussions, the most important being the need for you to keep an open mind throughout the presentation of evidence. I know that many of you use cell phones, smart phones, and other portable electronic devices; laptops and other computers both portable and fixed; and other tools of technology, to access the internet and to communicate with others. You also must not talk to anyone about this case or use these tools to communicate electronically with anyone about the case.  This includes your family and friends. You may not communicate orally with anyone about the case on your cell phone, smart phone, or portable or fixed computer or device of any kind; or use these devices to communicate electronically by messages or postings of any kind including e-mail, instant messages, text messages, text or instant messaging services such as Whatsapp, Signal, or Telegram, or through any blog, website, internet chat room, or by way of any other social networking websites or services, including X, Facebook, Instagram, Threads, LinkedIn, TikTok, Twitch, Discord, and YouTube.

If any lawyer, party, or witness does not speak to you when you pass in the hall, ride the elevator, or the like, remember it is because they are not supposed to talk or visit with you, either.  That is why you are asked to wear your juror tags.  It shows that you are someone who is not to be approached in any way.

Second, do not read or listen to anything related to this case that is not admitted into evidence. By that I mean, if there is a newspaper article or radio or television report relating to

this case, do not read the article or watch or listen to the report. In addition, do not try to do any independent research or investigation on your own on matters relating to the case or this type of case. Do not do any research on the internet, for example. You are to decide the case upon the evidence presented at trial. In other words, you should not consult dictionaries or reference materials, search the internet, websites, blogs, or use any other electronic tools to obtain information about this case or to help you decide the case. Please do not try to find out information from any source outside the confines of this courtroom.  Again, do not reach any conclusion on the claims or defenses until all of the evidence is in. Keep an open mind until you start your deliberations at the end of the case.

**Authority:** Third Circuit Model Jury Instructions § 1.3.

### 8.    COURSE OF THE TRIAL [PLAINTIFFS' PROPOSAL]

The trial will proceed in the following manner:

First, attorneys for Thomson Reuters will make an opening statement to you. Next, attorneys for ROSS will make an opening statement. What is said in the opening statements is not evidence, but is simply an outline to help you understand what each party expects the evidence to show.

After the attorneys have made their opening statements, then each party is given an opportunity to present its evidence. Thomson Reuters goes first because Thomson Reuters has the burden of proof on its claims. Thomson Reuters will present witnesses whom counsel for ROSS may cross-examine, and Thomson Reuters may also present evidence.  Following Thomson Reuters' case, ROSS may present evidence. Counsel for Thomson Reuters may cross-examine ROSS's witnesses.  After the parties' main cases are presented, Thomson Reuters may present what is called rebuttal evidence.

After all the evidence has been presented, the attorneys will present to you closing arguments to summarize and interpret the evidence in a way that is helpful to their clients' positions. As with opening statements, closing arguments are not evidence.  Once the closing arguments are completed, I will then instruct you on the law. After that you will retire to the jury room to deliberate on your verdict in this case.

[At this point the Court may wish to inform the jury of the scheduling and length of the trial, and other logistical information.]


**Authority:** Third Circuit Model Jury Instructions § 1.12.

17

II.       **GENERAL INSTRUCTIONS FOR USE DURING TRIAL**

9.       **STIPULATION OF FACT [AGREED]**

The parties have stipulated that certain facts are true, and those stipulations have been read to you during this trial.  You must therefore treat these facts as having been proved for the purposes of this case.

**Authority:** Third Circuit Model Jury Instructions § 2.4 (modified).

**10.     USE OF DEPOSITION [PLAINTIFFS' PROPOSAL]**

A deposition is the sworn testimony of a witness taken before trial.  The witness is placed under oath and swears to tell the truth, and lawyers for each party may ask questions.  A court reporter is present and records the questions and answers.

The deposition of [name of witness], which was taken on [date], is about to be [has been] presented to you [by a video] [by reading the transcript].  Deposition testimony is entitled to the same consideration and is to be judged, insofar as possible, in the same way as if the witness had been present to testify.

**Authority:** Third Circuit Model Jury Instructions § 2.5.

11.   **CHARTS AND SUMMARIES IN EVIDENCE AND THOSE NOT ADMITTED IN EVIDENCE [PLAINTIFFS' PROPOSAL]**

The parties have presented exhibits in the form of charts and summaries. I decided to admit these charts and summaries in place of the underlying documents that they represent in order to save time and avoid unnecessary inconvenience. You should consider these charts and summaries as you would any other evidence.

Other charts and summaries that have not been received in evidence have been shown to you in order to help explain or illustrate the contents of books, records, documents, testimony, or other evidence in the case. [Describe the charts and summaries that have not been admitted.] These charts and summaries are not themselves proof of any facts. They are not binding on you in any way.  If they do not correctly reflect the facts shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the evidence.

**Authority:** Third Circuit Model Jury Instructions §§ 2.7; 2.8.

20

## 12.    STRIKING EVIDENCE [PLAINTIFFS' PROPOSAL]

I have ordered that [describe the evidence] be struck from the record and I am instructing you that you must disregard that information [testimony].  That means that when you are deciding the case, you must not consider that information [testimony] in any way.

**Authority:** Third Circuit Model Jury Instructions § 2.9.

### 13.    EVIDENCE ADMITTED FOR A LIMITED PURPOSE [AGREED]

You will now hear evidence that was received for a particular limited purpose.  [This evidence can be considered by you as evidence that (describe limited purpose)].  It may not be used for any other purpose.  [For example, you cannot use it as proof that (discuss specific prohibited purpose)].

**Authority:** Third Circuit Model Jury Instructions § 2.10.

### 14.    OPINION TESTIMONY [PLAINTIFFS' PROPOSAL]

You have heard [will hear] testimony containing opinions from [name of witness].  In weighing this opinion testimony, you may consider [his/her] qualifications, the reasons for [his/her] opinions, and the reliability of the information supporting those opinions, as well as the factors I have previously mentioned for weighing the testimony of any other witness.  The opinion of [name of witness] should receive whatever weight and credit, if any, you think appropriate, given all the other evidence in the case.

In deciding whether to accept or rely upon the opinion of [name of witness], you may consider any bias that [name of witness] may have, including any bias that may arise from evidence that [name of witness] has been or will be paid for reviewing the case and testifying [or from evidence that [name of witness] testifies regularly and makes a large portion of [his/her] income from testifying in court].

**Authority:** Third Circuit Model Jury Instructions § 2.11.

23

### 15.     RECESS ADMONITION [PLAINTIFFS' PROPOSAL]

We are about to take [our first] [a] recess [and I remind you of the instruction I gave you earlier].  During this recess and any other recess, you must not discuss this case with anyone, including your fellow jurors, members of your family, people involved in the trial, or anyone else.  If anyone tries to talk to you about the case, do not tell your fellow jurors but tell me about it immediately.  Do not read, watch or listen to any news reports of the trial, or conduct any research or investigation, including on the Internet.  Remember that I told you not to use any electronic tools to communicate with anyone about the case or to do research relating to the case. Finally, remember to keep an open mind until all the evidence has been received and you have heard the views of your fellow jurors.

If you need to speak with me about anything, simply give a signed note to [identify court personnel] to give to me.

I will not repeat these admonitions each time we recess or adjourn, but you will be reminded of them on occasion.

**Authority:** Third Circuit Model Jury Instructions § 2.14.

## III.    FINAL JURY INSTRUCTIONS

### 16.    GENERAL INSTRUCTIONS [PLAINTIFFS' PROPOSAL]

MEMBERS OF THE JURY:

When you retire to the jury room to deliberate, you may take with you these instructions, your notes, and the exhibits that the Court has admitted into evidence.  You should select one member of the jury as your foreperson.  That person will preside over the deliberations and speak for you here in open court.

You have two main duties as jurors.  The first one is to decide what the facts are from the evidence that you saw and heard here in court.  Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide if, under the appropriate burden of proof, the parties have established their claims.  It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them.  This includes the instructions that I gave you before and during the trial, and these instructions.  All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly.  Do not let any bias, sympathy, or prejudice that you may feel toward one side or the other influence your decision in any way.

As jurors, you have a duty to consult with each other and to deliberate with the intention of reaching a verdict.  Each of you must decide the case for yourself, but only after a full and impartial consideration of all of the evidence with your fellow jurors.  Listen to each other carefully.  In the course of your deliberations, you should feel free to re-examine your own views and to change your opinion based upon the evidence.  But you should not give up your honest

convictions about the evidence just because of the opinions of your fellow jurors.  Nor should you change your mind just for the purpose of obtaining enough votes for a verdict.

When you start deliberating, do not talk to the jury officer, to me or to anyone but each other about the case.  During your deliberations, you must not communicate with or provide any information to anyone by any means about this case.  You may not use any electronic device or media, such as a cell phone or computer of any kind; the internet, any internet service, or any text or instant messaging service; or any internet chat room, blog, website, or social networking service, to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict.

You may not use these electronic means to investigate or communicate about the case because it is important that you decide this case based solely on the evidence presented in this courtroom.  Information on the internet or available through social media might be wrong, incomplete, or inaccurate.  Information that you might see on the internet or on social media has not been admitted into evidence and the parties have not had a chance to discuss it with you.  You should not seek or obtain such information and it must not influence your decision in this case.

If you have any questions or messages for me, you must write them down on a piece of paper, have the foreperson sign them, and give them to the jury officer.  The officer will give them to me, and I will respond as soon as I can.  I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you.

One more thing about messages.  Never write down or tell anyone how you stand on your votes.  For example, do not write down or tell anyone that a certain number is voting one way or another.  Your votes should stay secret until you are finished.

Your verdict must represent the considered judgment of each juror.  In order for you as a jury to return a verdict, each juror must agree to the verdict.  Your verdict must be unanimous.

A form of verdict has been prepared for you.  It has a series of questions for you to answer.  You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will fill it in, and have your foreperson date and sign the form.  You will then return to the courtroom and your foreperson will give your verdict.  Unless I direct you otherwise, do not reveal your answers until you are discharged.  After you have reached a verdict, you are not required to talk with anyone about the case unless I order you to do so.

Once again, I want to remind you that nothing about my instructions and nothing about the form of verdict is intended to suggest or convey in any way or manner what I think your verdict should be.  It is your sole and exclusive duty and responsibility to determine the verdict.

**Authority:**  Third Circuit Model Jury Instructions § 3.1.

### 17.    COPYRIGHT—INTRODUCTION [PLAINTIFFS' PROPOSAL]

Thomson Reuters claims ownership of a copyright and seeks damages from ROSS for copyright infringement.  ROSS denies infringing the copyright.

The owner of a copyright has the right to exclude any other person from reproducing, preparing derivative works, distributing, performing, displaying, or using the work covered by copyright for a specific period of time.

Copyright law defines when unauthorized copying of works covered by copyright is permitted and not permitted.  When copying is not permitted, it is called infringement.  I will explain to you what it means for a work to be protected or not protected by copyright, and what kinds of copying are permitted and not permitted under the law.

**Authority:**  *Leonard v. Stemtech Health Scis., Inc.*, C.A. No. 1:08-cv-00067-LPS-CJB (D. Del. filed 2/1/2008) (D.I. 227 Final Jury Instructions, filed 10/11/2013) ("The owner of a copyright has the right to exclude any other person from reproducing, preparing derivative works, distributing, performing, displaying, or using the work covered by copyright for a specific period of time."); Ninth Cir. Model Jury Instruction Nos. 17.1 (modified) *available at* https://www.ce9.uscourts.gov/jury-instructions/node/326 ("The owner of a copyright has the right to exclude any other person from reproducing, distributing, performing, displaying, or preparing derivative works from the work covered by copyright for a specific period of time. "); *Maclean Assocs. v. Wm. M. Mercer-Meidinger-Hansen, Inc.*, 952 F.2d 769, 778 (3d Cir. 1991) ("Under the Copyright Act, the owner of a copyright has the exclusive right to copy, distribute or display his work.").

### 18.     COPYRIGHT—DIRECT INFRINGEMENT [PLAINTIFFS' PROPOSAL]

Anyone who copies original elements of a copyrighted work during the term of the copyright without the owner's permission infringes the copyright.

To prove direct infringement, Thomson Reuters has the burden of proving the following by a preponderance of the evidence:

1.  Thomson Reuters owns a valid copyright in Westlaw; and

2.  ROSS copied original elements of the Westlaw Content.

If you find that Thomson Reuters has proved both of these elements, your verdict should be for Thomson Reuters on its direct infringement claim.

**Authority:**  D.I. 547 (Summ. J. Op.) at 9; *Leonard v. Stemtech Health Scis., Inc.*, C.A. No. 1:08-cv-00067-LPS-CJB (D. Del. filed 2/1/2008) (D.I. 227 Final Jury Instructions, filed 10/11/2013) ("On [plaintiff]'s direct copyright infringement claim, he has the burden of proving both of the following by a preponderance of the evidence: 1. He is the owner of a valid copyright; and 2. [Defendant] copied original elements from the copyrighted work."); Ninth Cir. Model Jury Instruction No. 17.5 (modified), *available at* https://www.ce9.uscourts.gov/jury-instructions/node/326; 17 U.S.C. § 106; *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *Dun & Bradstreet Software Servs. v. Grace Consulting, Inc.*, 307 F.3d 197, 206 (3d Cir. 2002) ("To establish a claim of copyright infringement, a plaintiff must establish: (1) ownership of a valid copyright; and (2) unauthorized copying of original elements of the plaintiff's work.").

### 19.   COPYRIGHT—DIRECT INFRINGEMENT—OWNERSHIP [PLAINTIFFS' PROPOSAL]

Thomson Reuters owns a valid copyright in Westlaw if it proves by a preponderance of the evidence that:

(i)  Westlaw is original; and

(ii) it owns Westlaw.

The threshold for originality is low.  A work is original if it was created independently, as opposed to being copied from another work.  It must contain at least some minimal degree of creativity, but the requisite level of creativity is extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily, as they possess some creative spark, no matter how crude, humble or obvious it might be.

The creator of an original work is called the author of that work, and owns the copyright in it.  An employer is considered to be the author of a work created by its employees and owns the copyrights in it if the work was prepared by the employees within the scope of their employment.

An owner of a copyright may transfer—or "assign"—the work to another person or entity.  An assignment of a copyright is a manifestation of the assignor's intention to transfer the copyright by virtue of which the assignor's copyright is extinguished in whole or in part and the assignee acquires the copyright.

A copyright automatically exists in a work the moment it is fixed in any tangible medium of expression.  The owner of the copyright may register the copyright by delivering to the Copyright Office a copy of the copyrighted work.  After examination and a determination that the material deposited constitutes copyrightable subject matter and that legal and formal

requirements are satisfied, the Register of Copyrights registers the work and issues a certificate of registration to the copyright owner.

A copyright registration, when made before or within five years of the first publication of the work, constitutes evidence of the validity of a copyright and of the facts stated in the certificate.  Possession of a copyright registration creates a rebuttable presumption that the work is copyrightable and that the plaintiff has a valid copyright therein.  The burden then shifts to the defendant to rebut that presumption.  A copyright registration in a compilation extends to the copyrightable pieces of that compilation, not just the compilation as a whole.

**Authority:** D.I. 547 (Summ. J. Op.) at 5 ("A copyright in a compilation extends to the copyrightable pieces of that compilation."); *Leonard v. Stemtech Health Scis., Inc.*, C.A. No. 1:08-cv-00067-LPS-CJB (D. Del. filed 2/1/2008) (D.I. 227 Final Jury Instructions, filed 10/11/2013) ("[Plaintiff] is the owner of a valid copyright…if he proves by a preponderance of the evidence that: 1. [Plaintiff]'s work is original; and 2. [Plaintiff] is the author or creator of the work."); Ninth Cir. Model Jury Instruction No. 17.6 (modified), available at https://www.ce9.uscourts.gov/jury-instructions/node/326; Ninth Cir. Model Jury Instruction No. 17.8 (modified), *available at* https://www.ce9.uscourts.gov/jury-instructions/node/264; Ninth Cir. Model Jury Instruction No. 17.11 (modified), *available at* https://www.ce9.uscourts.gov/jury-instructions/node/267; 17 U.S.C. § 101 ("A 'work made for hire' is [] a work prepared by an employee within the scope of his or her employment[.]"); 17 U.S.C. § 201 ("(a) Copyright in a work protected under this title vests initially in the author or authors of the work. (b) In the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author for purposes of this title, and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright."); 17 U.S.C. § 410(c) ("The certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate.") *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989); *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 831 (3d Cir. 2011) ("[A]ssignment of a copyright is a manifestation of the assignor's intention to transfer [the copyright] by virtue of which the assignor's [copy]right ... is extinguished in whole or in part and the assignee acquires [the copyright].") (bracketed text original); *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 291 (3d Cir. 1991); *AFG Media Ltd. V. Poptend-Official, et. al.*, No. 2:23 Civ. 1840, 2023 WL 9023415, at *3 (W.D. Pa. Dec. 29, 2023) ("A plaintiff's possession of a valid copyright registration certificate 'creates a rebuttal presumption that the work is copyrightable and that [the plaintiff] has a valid interest.'").

### 20.    COPYRIGHT—DIRECT INFRINGEMENT—COPYING [PLAINTIFFS' PROPOSAL]

There are two components of copying: (1) actual copying, and (2) substantial similarity.

Actual copying focuses on whether ROSS did, in fact, use a copyrighted work in creating its own work.  I have determined that ROSS engaged in actual copying as a matter of law.  Therefore, you need only consider substantial similarity.

To determine substantial similarity, you should consider whether a lay observer, unless he or she set out to detect disparities between the two works, would be disposed to overlook them and regard their aesthetic appeal as the same.  You must consider only original elements.

Where there is only one way, or only a few ways of expressing the idea underlying a copyrightable work, the idea and expression are said to have "merged," allowing others to copy the author's expression in the work to the extent necessary to express the unprotected matter.  But a copyright holder whose ideas and expression thereof have merged is still protected from slavish, identical copying.  Similarly, where plot devices, incidents, characters, or settings are, as a practical matter, indispensable in the treatment of the subject matter, those elements are given only limited copyright protection.

Judicial opinions are not copyrightable, but private parties are free to obtain a copyright for materials such as headnotes, syllabi, tables of contents, and the like relating to judicial opinions.  If a headnote merely copies a judicial opinion, it is uncopyrightable.  But if it varies more than trivially, then Westlaw owns a valid copyright.

Moreover, the selection and arrangement of unprotectable elements can be copyrightable.  A compilation may be original in one of two ways (and often both): the author may contribute original written expression to the compiled material, or the author may exercise creativity and originality in the selection and arrangement of the compiled material.  For example, while

individual words and short phrases may not be copyrighted, original selections and arrangements of such uncopyrightable material are entitled to protection.

A compiler may settle upon a selection or arrangement that others have used; novelty is not required. Originality requires only that the author make the selection or arrangement independently (*i.e.,* without copying that selection or arrangement from another work), and that it display some minimal level of creativity.

**Authority:** D.I. 547 (Summ. J. Op.) at 5 ("A copyright-infringement claim has three elements: ownership of a valid copyright, actual copying, and substantial similarity."), 7 ("If a headnote merely copies a judicial opinion, it is uncopyrightable. But if it varies more than 'trivial[ly],' then Westlaw owns a valid copyright."), 9 ("Thomson Reuters has satisfied the actual-copying element as a matter of law."); *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991) ("[T]he requisite level of creativity is extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily, as they possess some creative spark, no matter how crude, humble or obvious it might be.") (citations omitted); *id.* at 358 ("A compiler may settle upon a selection or arrangement that others have used; novelty is not required. Originality requires only that the author make the selection or arrangement independently (*i.e.,* without copying that selection or arrangement from another work), and that it display some minimal level of creativity."); *Southco, Inc. v. Kanebridge Corp.*, 390 F.3d 276, 297 (3d Cir. 2004) ("A compilation may be original in one of two ways (and often both): the author may contribute original written expression to the compiled facts, or the author may exercise creativity and originality in the selection and arrangement of the compiled facts. While facts may not be copyrighted, original selections and arrangements of facts are entitled to protection.") (citing *Feist*, 499 U.S. at 348-49); *Dam Things from Den. v. Russ Berrie & Co.*, 290 F.3d 548, 562 (3d Cir. 2002) ("this test [is] whether the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same.") (citations omitted); *Southco, Inc. v. Kanebridge Corp.*, 258 F.3d 148, 150 (3d Cir. 2001) ("[I]t is well-established that compilations can be copyrighted, assuming that the compiler make[s] the selection or arrangement independently (i.e. without copying that selection or arrangement from another work), and that it display some minimal level of creativity.") (citing *Feist*, 499 U.S. at 358); *Highland Tank & Mfg. Co. v. PS Int'l, Inc.*, 393 F. Supp. 2d 348, 361 (W.D. Pa. 2005) ("A copyright holder whose ideas and expression thereof have merged is still protected from slavish, identical copying.").

### 21.     COPYRIGHT—DIRECT INFRINGEMENT—FAIR USE DEFENSE [PLAINTIFFS' PROPOSAL]

ROSS asserts the affirmative defense that, even if it copied the Westlaw Content, that copying is not copyright infringement because the use qualifies as "fair use."  ROSS has the burden of proving fair use by a preponderance of the evidence.

In determining fair use, the factors you must consider include:

1. The purpose and character of ROSS's use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

2. The nature of Westlaw;

3. The amount and substantiality of the portion used in relation to Thomson Reuters' work as a whole; and

4. The effect of ROSS's use upon the potential market for or value of Westlaw.

All of the factors should be weighed together.  It is up to you to decide how much weight to give each factor, but you must consider all of them.

The first fair use factor has two subparts: commerciality and transformativeness.  Commerciality asks whether the use was for profit.  I have already found that the use is commercial and that this weighs against a finding of fair use.  You should consider if the use is also transformative and how transformative the use is, comparing how transformative the use is to the commerciality of the use.  Transformative use weighs in favor of fair use.  But if a new work is used commercially rather than for a nonprofit purpose, its use will less likely qualify as fair.

A use is transformative when it adds something new, with a further purpose or different character, altering the original with new expression, meaning, or message.  When considering this factor, you must examine whether ROSS's use was to achieve a purpose that is the same as, or highly similar to, that of the original work, and whether it is a potential substitute for Westlaw.

The more similar the purposes, the less transformative the works. In the absence of transformativity, other considerations, like the extent of the use's commerciality, become more important in determining which party the first factor favors.

The second fair use factor asks you to consider the nature of the copyrighted work. A use is less likely to be deemed fair when the copyrighted work is a creative product, with more creative expression entitled to more protection than factual works. However, even within the field of factual works, the extent to which one must permit expressive language to be copied, in order to assure dissemination of the underlying facts, varies from case to case.

The third fair use factor, the amount and substantiality of the portion used, refers to both the total amount of material copied and its importance within the copyrighted work. This factor asks you to consider the importance of the Westlaw Content within Westlaw. Even where, in absolute terms, the amount copied comprises an insubstantial portion of the copyrighted work, the copied material may comprise essentially the heart of the work. Where a qualitatively important part of the copyrighted work is copied, it is evidence of substantiality.

The fourth fair use factor asks you to evaluate the effect of ROSS's use on the actual or potential market for or value of Westlaw. This factor considers not only the extent of any market harm caused by the accused infringer's actions but also whether unrestricted and widespread use of the copyrighted materials of the sort engaged in by the accused infringer would result in a substantially adverse impact on the potential market for the copyrighted work. This inquiry must take account not only of harm to the original, but also of harm to the market for derivative works in traditional, reasonable, or likely to be developed markets. This factor also considers the effect of the use upon the *value* of the copyrighted work, not only the effect upon the market. And the value need not be limited to monetary rewards; compensation may take a variety of forms. Fair

use, when properly applied, is limited to copying by others which does not materially impair the marketability of the work which is copied.

**Authority (**Generally**)**:  17 U.S.C. § 107.

**Authority** (Factor 1):  D.I. 547 (Summ. J. Op.) at 16 ("ROSS's uses were undoubtedly commercial."); *Andy Warhol Found. For the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 528 (2023) ("[T]he first factor relates to the problem of substitution—copyright's bête noire. The use of an original work to achieve a purpose that is the same as, or highly similar to, that of the original work is more likely to substitute for, or supplan[t], the work[.]"); *Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569, 583–84 (1994); *Murphy v. Millennium Radio Grp. LLC*, 650 F.3d 295, 307–08 (3d Cir. 2011) ("[I]n the absence of transformativity, other considerations, like the extent of the use's commerciality, become more important in determining which party the first factor favors."); *Video Pipeline, Inc. v. Buena Vista Home Ent., Inc.*, 342 F.3d 191, 198 (3d Cir. 2003), *as amended* (Sept. 19, 2003) ("If a new work is used commercially rather than for a nonprofit purpose, its use will less likely qualify as fair.").

**Authority** (Factor 2):  *Stewart v. Abend*, 495 U.S. 207, 237 (1990) ("A use is less likely to be deemed fair when the copyrighted work is a creative product."); *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 563 (1985) ("[E]ven within the field of fact works . . . the extent to which one must permit expressive language to be copied, in order to assure dissemination of the underlying facts, will [] vary from case to case."); *Murphy v. Millennium Radio Grp. LLC*, 650 F.3d 295, 309 (3d Cir. 2011) ("The second factor is the nature of the work, with more creative expression entitled to more protection than factual works.") (cleaned up).

**Authority** (Factor 3):  *Google LLC v. Oracle Am., Inc.*, 593 U.S. 1, 33 (2021) ("[C]opying a larger amount of material can fall within the scope of fair use where the material copied captures little of the material's creative expression or is central to a copier's valid purpose."); *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 564–65 (1985) ("In absolute terms, the words actually quoted were an insubstantial portion of 'A Time to Heal.' The District Court, however, found that '[T]he Nation took what was essentially the heart of the book.'"); *id* at 565 ("[T]he fact that a substantial portion of the infringing work was copied verbatim is evidence of the qualitative value of the copied material, both to the originator and to the plagiarist who seeks to profit from marketing someone else's copyrighted expression.").

**Authority** (Factor 4):  D.I. 547 (Summ. J. Op.) at 23 ("This inquiry must take account not only of harm to the original but also of harm to the market for derivative works."); *Harper & Row* 470 U.S. at 566-67 ("Fair use, when properly applied, is limited to copying by others which does not materially impair the marketability of the work which is copied."); *id.* at 568 ("More important, to negate fair use one need only show that if the challenged use 'should become widespread, it would adversely affect the *potential* market for the copyrighted work.'"); *Murphy v. Millennium Radio Grp. LLC*, 650 F.3d 295, 308 (3d Cir. 2011) ("In determining whether such a licensing market exists, we look to the impact on potential licensing revenues for traditional, reasonable,

or likely to be developed markets.") (citations omitted); *Video Pipeline, Inc. v. Buena Vista Home Ent., Inc.*, 342 F.3d 191, 202 (3d Cir. 2003), *as amended* (Sept. 19, 2003) ("The statute directs us to consider the effect of the use upon the *value* of the copyrighted work, not only the effect upon the market, however narrowly that term is defined.  And the value need not be limited to monetary rewards; compensation may take a variety of forms.") (cleaned up).

### 22.   [PLAINTIFFS' CONDITIONAL INSTRUCTION] COPYRIGHT MISUSE[1]

The misuse doctrine forbids the use of a copyright to secure an exclusive right not granted by the Copyright Office.  Copyright misuse is an equitable defense to copyright infringement which precludes the copyright holder's enforcement of its copyright during the misuse period.  Although copyright misuse precludes enforcement of a copyright during the period of misuse, it does not invalidate the copyright.

The misuse doctrine does not require copyright holders to allow unrestricted access to their copyrighted works.  Rather, it is applied only where the plaintiff is wielding their copyrights in a manner contrary to the public interest.

Authority: Ninth Cir. Model Jury Instruction No. 17.24 (modified) *available at* https://www.ce9.uscourts.gov/jury-instructions/node/282; *Video Pipeline, Inc. v. Buena Vista Home Ent., Inc.*, 342 F.3d 191, 204 (3d Cir. 2003), *as amended* (Sept. 19, 2003)  (abrogated on other grounds) ("Misuse often exists where the patent or copyright holder has engaged in some form of anti-competitive behavior."); *id* ("The misuse doctrine extends from the equitable principle that courts may appropriately withhold their aid where the plaintiff is using the right asserted contrary to the public interest."); *id* at 206 ("copyright law, and the misuse doctrine in particular, should not be interpreted to require Disney, if it licenses its trailers for display on any web sites but its own, to do so willy-nilly regardless of the content displayed with its copyrighted works. Indeed such an application of the misuse doctrine would likely decrease the public's access to Disney's works because it might as a result refuse to license at all online display of its works."); *Malibu Media, LLC v. Doe*, 381 F. Supp. 3d 343, 358–59 (M.D. Pa. 2018) ("The defense does not invalidate the copyright but rather prohibits its enforcement for the duration of the misuse.").

---

[1]   Plaintiffs' position: Plaintiffs agree with ROSS that, as an equitable defense, copyright misuse should be decided by the Court, not the jury.  This instruction is included to be used only in the event the Court decides the issue should be submitted to the jury.

### 23.     COPYRIGHT—INDIRECT INFRINGEMENT [PLAINTIFFS' PROPOSAL]

In addition to directly infringing Thomson Reuters' copyrights, Thomson Reuters asserts

that ROSS indirectly infringed its copyrights.  There are two different types of indirect

infringement: (1) vicarious copyright infringement, and (2) contributory copyright infringement.

**Authority:** *Leonard v. Stemtech Health Scis., Inc.*, C.A. No. 1:08-cv-00067-LPS-CJB
(D. Del. filed 2/1/2008) (D.I. 227 Final Jury Instructions, filed 10/11/2013); *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005) ("One infringes contributorily by
intentionally inducing or encouraging direct infringement, and infringes vicariously by profiting
from direct infringement while declining to exercise a right to stop or limit it."); *Leonard v.
Stemtech Int'l Inc*, 834 F.3d 376, 386 (3d Cir. 2016) ("[T]o prove a claim of contributory or
vicarious infringement, a plaintiff must first show direct infringement by a third party.").

## 24. COPYRIGHT—INDIRECT INFRINGEMENT—THIRD PARTY COPYING [PLAINTIFFS' PROPOSAL]

To prove either type of indirect infringement, Thomson Reuters must prove that a third party directly infringed its copyrights.  In deciding that, you must apply the same law on direct copyright infringement that I gave you in the prior instructions.  The copies of webpages stored automatically in a computer's cache or random access memory upon a viewing of the webpage fall within the Copyright Act's definition of "copy."

**Authority:** *Metro–Goldwyn–Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005); *Leonard v. Stemtech Int'l Inc*, 834 F.3d 376, 386 (3d Cir. 2016) ("[T]o prove a claim of contributory or vicarious infringement, a plaintiff must first show direct infringement by a third party."); *Ticketmaster L.L.C. v. RMG Techs., Inc.,* 507 F. Supp. 2d 1096, 1105 (C.D. Cal. 2007) ("The copies of webpages stored automatically in a computer's cache or random access memory ('RAM') upon a viewing of the webpage fall within the Copyright Act's definition of 'copy.'").

### 25.   COPYRIGHT—INDIRECT INFRINGEMENT—VICARIOUS COPYRIGHT INFRINGEMENT  [PLAINTIFFS' PROPOSAL]

To prove vicarious copyright infringement, in addition to proving that a third party directly infringed its copyrights, Thomson Reuters also bears the burden of proving by a preponderance of the evidence that (1) ROSS had a direct financial interest in the third party's activity; and (2) ROSS had the right and ability to supervise or control the infringing activity.

The second element is satisfied if ROSS's participation in the formation and direction of the third party's activity supports a finding that ROSS was in a position to supervise the third party.

**Authority:** *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005) ("[One] infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it."); *Leonard v. Stemtech Int'l Inc*, 834 F.3d 376, 389 (3d Cir. 2016) ("Vicarious infringement occurs when one profit[s] from direct infringement while declining to exercise a right to stop or limit it. To establish vicarious infringement, a plaintiff must prove that the defendant had (1) the right and ability to supervise or control the infringing activity; and (2) a direct financial interest in such activities."); *Gershwin Publ'g Corp. v. Colom. Artists Mgmt., Inc.*, 443 F.2d 1159, 1163 (2d Cir. 1971) ("[Defendant's] pervasive participation in the formation and direction of this association and its programming of compositions presented amply support the district court's finding that it caused this copyright infringement.") (citations omitted); *Fonovisa, Inc. v. Cherry Auction, Inc*., 76 F.3d 259, 262–63 (9th Cir. 1996) (citing *Gershwin*, 443 F.2d 1159 at 1163).

### 26.    COPYRIGHT—INDIRECT INFRINGEMENT—CONTRIBUTORY COPYRIGHT INFRINGEMENT  [PLAINTIFFS' PROPOSAL]

To prove contributory copyright infringement, in addition to proving that a third party directly infringed Thomson Reuters' copyright, Thomson Reuters has the burden of proving by a preponderance of the evidence that (1) ROSS knew, was willfully blind to, or should have known that a third party was directly infringing; and (2) ROSS materially contributed to or induced the infringing activity.

Willful blindness is where one who, knowing or strongly suspecting that he is involved in shady dealings, takes steps to make sure that he does not acquire full or exact knowledge of the nature and extent of those dealings.  It is sufficient for ROSS to have been willfully blind to specific facts by taking active steps to avoid acquiring knowledge.  Material contributions include knowingly taking steps that are substantially certain to result in a third party's direct infringement of a third party, and failing to stop infringement.


**Authority:** *Leonard v. Stemtech Int'l Inc.*, 834 F.3d 376, 387 (3d Cir. 2016) ("To establish a claim of contributory infringement, a plaintiff must show: (1) a third party directly infringed the plaintiff's copyright; (2) the defendant knew that the third party was directly infringing; and (3) the defendant materially contributed to or induced the infringement….[A]n actor may be contributorily liable for intentionally encouraging direct infringement if the actor knowingly takes steps that are substantially certain to result in such direct infringement[.]"); *Luvdarts, LLC v. AT & T Mobility, LLC*, 710 F.3d 1068, 1073 (9th Cir. 2013) ("Willful blindness of specific facts would establish knowledge for contributory liability."); *Id.* ("In order to allege willful blindness, [plaintiff] must allege that the [defendant] (1) subjectively believed that infringement was likely occurring on their networks and that they (2) took deliberate actions to avoid learning about the infringement."); *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1171 (9th Cir. 2007); *In re Aimster Copyright Litig.*, 334 F.3d 643, 650 (7th Cir. 2003) ("One who, knowing or strongly suspecting that he is involved in shady dealings, takes steps to make sure that he does not acquire full or exact knowledge of the nature and extent of those dealings is held to have a criminal intent, because a deliberate effort to avoid guilty knowledge is all that the law requires to establish a guilty state of mind."); *Gershwin Publ'g Corp. v. Colom. Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971); *UMG Recordings, Inc. v. RCN Telecom Servs., LLC*, No. 19 Civ. 17272, 2020 WL 5204067, at *7 (D.N.J. Aug. 31, 2020) ("[T]urning a 'blind eye' to infringement is the equivalent of knowledge."); *Arista Recs., Inc. v. Flea World, Inc.*, No. 03 Civ. 2670, 2006 WL 842883, at *14 (D.N.J. 2006).

### 27.    TORTIOUS INTERFERENCE WITH CONTRACT [PLAINTIFFS' PROPOSAL]

To prove tortious interference with contract, Thomson Reuters has the burden of proving by a preponderance of the evidence:

1. There was a contract between LegalEase and Thomson Reuters;

2. ROSS knew about the contract;

3. ROSS committed an intentional act that was a significant factor in causing the breach of that contract;

4. ROSS's act had no justification; and

5. The breach harmed Thomson Reuters.

I already had determined that there was a contract between Thomson Reuters and LegalEase, and that Thomson Reuters suffered harm.

To qualify as knowing about the contract and its terms, ROSS must have either known— or known of—the substance of the contract rights, but it did not need to know the exact terms.

To commit an intentional act causing the breach, ROSS must have either intended to interfere with the contract or intended to reach a result with knowledge that it would interfere with the contract, even if interference was not the main purpose.

ROSS bears the burden of proving its actions were justified.  Whether ROSS's act was without justification is characterized as doing something not sanctioned by the rules of the game—in other words, the conduct amounted to more than mere competition. In evaluating this element, you are to consider and balance the following seven factors: (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the

proximity or remoteness of the actor's conduct to the interference, and (g) the relations between the parties.

**Authority:**  D.I. 547 (Summ. J. Op.) at 30 ("Thomson Reuters must prove five elements: (1) there was a contract between LegalEase and Westlaw, (2) Ross knew about the contract and its terms, (3) Ross's intentional act was a significant factor causing the breach, (4) Ross had no justification, and (5) the breach harmed Thomson Reuters."); *id*. at 33 ("Thomson Reuters is entitled to partial summary judgment on the first and fifth elements of tortious interference by using a bot and sharing passwords"); *id*. at 30-33 ("ROSS must have had actual or imputed knowledge of the substance of the contract rights, even if it did not know about the exact terms."); *id.* at 31 ("Ross met the third element if it (1) intended to interfere or (2) intended to reach a result with knowledge that it would interfere with the contract, even if interference was not the main purpose."); *id.* at 32 ("Courts commonly refer to the fourth element as doing something 'not … sanctioned by the rules of the game.'"); Restatement (Second) of Torts § 767 (1979) ("In determining whether an actor's conduct in intentionally interfering with a contract or a prospective contractual relation of another is improper or not, consideration is given to the following factors: (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference and (g) the relations between the parties.").

.

**28.     MONETARY RELIEF—GENERALLY [PLAINTIFFS' PROPOSAL]**

I will now instruct you on the law of monetary relief.  The fact that I am instructing you on monetary relief should not suggest which party I believe will prevail in this case.  I am giving these instructions to you in the event you reach this issue.

If you find for Thomson Reuters on any of its claims, then you must consider the amount of monetary relief, if any, Thomson Reuters is entitled to recover.

### 29.    MONETARY RELIEF—TYPES OF COMPENSATORY DAMAGES [PLAINTIFFS' PROPOSAL]

There are two types of compensatory damages that Thomson Reuters can recover:

Thomson Reuters may recover (1) the actual damages suffered by it as a result of the copyright

infringement and/or tortious interference with contract, and (2) any profits of ROSS that are

attributable to the copyright infringement and/or tortious interference that are not taken into

account in computing the actual damages.  Double counting is not permitted.  For example, to

the extent the same profits are attributable to both copyright infringement and the tortious

interference with contract, you should only count those profits once in determining a damages

award.

**Authority:**  17 U.S.C. § 504 (b) ("The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages."); *Leonard v. Stemtech Int'l Inc*, 834 F.3d 376, 390-96 (3d Cir. 2016); *Great Am. Opportunities, Inc. v. Cherrydale Fundraising, LLC*, No. CIV.A. 3718-VCP, 2010 WL 338219, at *27 (Del. Ch. Jan. 29, 2010) ("[D]amages for tortious interference with contract may be measured in terms of the tortfeasor's unjust enrichment, *i.e.,* as the value of the profits earned by the tortfeasor arising from its tortious interference."); *eCommerce Indus., Inc. v. MWA Intel., Inc.*, No. CV 7471-VCP, 2013 WL 5621678 at *50 (Del. Ch. Sept. 30, 2013) ("In a tortious interference with contract case, [breach of contract and tort] damages might coincide, as the harm suffered by the tort victim due to the tortfeasor's wrongful act is often the loss of the benefits of its bargain").

### 30.   MONETARY RELIEF—ACTUAL DAMAGES [PLAINTIFFS' PROPOSAL]

I will first discuss actual damages.  A copyright owner is entitled to recover the actual damages suffered as a result of the infringement.  Actual damages are the amount of money adequate to compensate the copyright owner for the reduction of the fair market value of the copyrighted work caused by the infringement.  The reduction of the fair market value of the copyrighted work is the amount a willing buyer would have been reasonably required to pay a willing seller at the time of the infringement for the actual use made by the defendant of the plaintiff's work.  That amount also could be represented by the lost license fees the plaintiff would have received for the defendant's unauthorized use of the plaintiff's work.

**Authority:**  *Leonard v. Stemtech Health Scis., Inc.*, C.A. No. 1:08-cv-00067-LPS-CJB (D. Del. filed 2/1/2008) (D.I. 227 Final Jury Instructions, filed 10/11/2013) ("The copyright owner is entitled to recover the actual damages suffered as a result of the infringement. Actual damages means the amount of money adequate to compensate the copyright owner for the reduction of the fair market value of the copyrighted work caused by the infringement. The reduction of the fair market value of the copyrighted work is the amount a willing buyer would have been reasonably required to pay a willing seller at the time of the infringement for the actual use made by the defendant of the plaintiff's work. That amount also could be represented by the lost license fees the plaintiff would have received for the defendant's unauthorized use of the plaintiffs work.");17 U.S.C. § 504 (b); *Leonard v. Stemtech Int'l Inc*, 834 F.3d 376, 390-96 (3d Cir. 2016) ("[A]n actual damages award looks at the facts from the point of view of the [ ] copyright owners; it undertakes to compensate the owner for any harm he suffered by reason of the infringer's illegal act.") (citation omitted); *eCommerce Indus., Inc. v. MWA Intel., Inc.*, No. CV 7471-VCP, 2013 WL 5621678 at *50 (Del. Ch. Sept. 30, 2013).

### 31.    MONETARY RELIEF—ROSS'S PROFITS [PLAINTIFFS' PROPOSAL]

I will now discuss the second type of monetary relief: ROSS's profits.  To recover ROSS's profits, Thomson Reuters must prove by a preponderance of the evidence only ROSS's gross revenue and that the infringement contributed to it.  If you find that Thomson Reuters met its burden, the burden shifts to ROSS to prove by a preponderance of the evidence any deductions, such as its expenses in making and selling the accused works, and any portion of its profits that are attributable to factors other than ROSS's use of Westlaw or tortious interference with contract.

Unless you find that a portion of the profit from the sale of a product containing or using the copyrighted work is attributable to factors other than use of the copyrighted work, all of the profit is to be attributed to the infringement.  The defendant has the burden of proving the percentage of the profit, if any, attributable to factors other than infringing the copyrighted work.

You may not include in an award of ROSS's profits any amount that you awarded as part of Thomson Reuters' actual damages.


**Authority:**  Ninth Cir. Model Jury Instruction No. 17.34 (modified) *available at* https://www.ce9.uscourts.gov/jury-instructions/node/705 ("Unless you find that a portion of the profit from the [use] [sale] of a [product] [work] containing or using the copyrighted work is attributable to factors other than use of the copyrighted work, all of the profit is to be attributed to the infringement.  The defendant has the burden of proving the [portion] [percentage] of the profit, if any, attributable to factors other than [copying] [infringing] the copyrighted work."); 17 U.S.C. § 504 (b); *Leonard v. Stemtech Int'l Inc*, 834 F.3d 376, 395 (3d Cir. 2016) ("[T]o establish[ ] the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.") (citation omitted);  *Id*. ("[T]the plaintiff must demonstrate a causal nexus between the infringement and the [infringer's] gross revenue, or put differently, show that the infringement contributed to the infringer's profits") (citation omitted); *Great Am. Opportunities, Inc. v. Cherrydale Fundraising, LLC*, No. CIV.A. 3718-VCP, 2010 WL 338219, at *27 (Del. Ch. Jan. 29, 2010) ("[D]amages for tortious interference with contract may be measured in terms of the tortfeasor's unjust enrichment, *i.e.,* as the value of the profits earned by the tortfeasor arising from its tortious

interference[.]").

## 32.     MONETARY RELIEF—STATUTORY DAMAGES [PLAINTIFFS' PROPOSAL]

In the alternative to actual damages and/or profits resulting from copyright infringement, Thomson Reuters may elect an award of statutory damages.  Although you may make a determination as to both types of relief, Thomson Reuters will have to choose one.

In determining the appropriate amount of statutory damages to award, you may consider the following factors: (1) the expenses that ROSS saved and the profits that it earned because of the infringement; (2) the revenues that Thomson Reuters lost because of the infringement; (3) the difficulty of proving Thomson Reuters' actual damages; (4) the circumstances of the infringement; (5) whether ROSS intentionally infringed Thomson Reuters' copyright; and (6) deterrence of future infringement.

The amount of statutory damages generally is between $750 and $30,000 for each copyrighted work that you find to be infringed.  If Thomson Reuters proves that ROSS willfully infringed its copyrights, then you may, but are not required to, increase the statutory damages award to a sum as high as $150,000 per copyrighted work.  Infringement is considered willful if ROSS knew that ROSS' actions constituted infringement of Thomson Reuters' copyright or acted with reckless disregard of, or willful blindness to, Thomson Reuters' copyright.  Willfulness may be shown by the defendant's attempts to hide the infringement from the plaintiff or the Court.

[Plaintiffs' Conditional Proposal: An infringement is considered innocent when the defendant has proved both of the following elements by a preponderance of the evidence:

First, the defendant was not aware that its acts constituted infringement of the copyright; and

50

Second, the defendant had no reason to believe that its acts constituted an infringement of the copyright.][2]

**Authority:**  9th Circuit Model Instruction §§17.36-37, *available at* https://www.ce9.uscourts.gov/jury-instructions/node/708 ("An infringement is considered innocent when the defendant has proved both of the following elements by a preponderance of the evidence: First, the defendant was not aware that its acts constituted infringement of the copyright; and Second, the defendant had no reason to believe that its acts constituted an infringement of the copyright."); 17 U.S.C. § 504 (c) ("[T]he copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action… in a sum of not less than $750 or more than $30,000[.]"); *Webloyalty.com, Inc. v. Consumer Innovations, LLC*, 388 F. Supp. 2d 435, 442 (D. Del. 2005) ("The factors used to determine the level of statutory damages include: the expenses saved and the profits earned by the defendant, the revenues lost by the plaintiff, and the defendant's state of mind.") (citation omitted); *Id* at 441 ("[W]illfulness may be shown by the defendant's attempts to hide the infringement from the plaintiff or the court.").

---

[2]  Plaintiffs' Position: 17 U.S.C. 401(d) precludes an innocent infringer defense where the copyrighted work bears a copyright notice.  ("If a notice of copyright in the form and position specified by this section appears on the published copy or copies to which a defendant in a copyright infringement suit had access, then no weight shall be given to such a defendant's interposition of a defense based on innocent infringement in mitigation of actual or statutory damages, except as provided in the last sentence of section 504(c)(2).")  The final sentence of 17 U.S.C. 504(c)(2) concerns specifically libraries and public broadcasting entities.  ("The court shall remit statutory damages in any case where an infringer believed and had reasonable grounds for believing that his or her use of the copyrighted work was a fair use under section 107, if the infringer was: (i) an employee or agent of a nonprofit educational institution, library, or archives acting within the scope of his or her employment who, or such institution, library, or archives itself, which infringed by reproducing the work in copies or phonorecords; or (ii) a public broadcasting entity which or a person who, as a regular part of the nonprofit activities of a public broadcasting entity (as defined in section 118(f)) infringed by performing a published nondramatic literary work or by reproducing a transmission program embodying a performance of such a work.")  Plaintiffs have included this instruction in the event this Court determines an instruction on innocent infringement is necessary.

### 33.    MONETARY RELIEF—PUNITIVE DAMAGES [PLAINTIFFS' PROPOSAL]

If you decide to award compensatory damages to Thomson Reuters for its tortious interference with contract claim, you must determine whether ROSS is also liable to Thomson Reuters for punitive damages.

Punitive damages are different from compensatory damages. Compensatory damages are awarded to compensate the plaintiff for the injury suffered. Punitive damages, on the other hand, are awarded in addition to compensatory damages.  It is not necessary that you award compensatory damages to Thomson Reuters to assess punitive damages against ROSS for tortious interference with contract, as long as you find in favor of Thomson Reuters and against ROSS on the question of liability.

You may award punitive damages to punish a party for outrageous conduct and to deter a party, and others like it, from engaging in similar conduct in the future. To award punitive damages, you must find by a preponderance of the evidence that ROSS acted recklessly. Punitive damages cannot be awarded for mere inadvertence, mistake, errors of judgment and the like, which constitute ordinary negligence.

Reckless conduct is a conscious indifference that amounts to an "I don't care" attitude. Reckless conduct occurs when a person, with no intent to cause harm, performs an act so unreasonable and dangerous that it knows or should know that there is an eminent likelihood of harm that can result. It requires that the defendant foresee that its conduct threatens a particular harm to another.

The law provides no fixed standards for the amount of punitive damages.

In determining any award of punitive damages, you may consider the nature of ROSS's conduct and the degree to which the conduct was reprehensible, the nature and extent of the

harm to Thomson Reuters that ROSS caused or intended to cause.  In this regard you may include Thomson Reuters' trouble and expense in seeking to protect its interests in legal proceedings and in this suit.  Finally, you may assess an amount of damages that will deter ROSS and others like it from similar conduct in the future. You may consider ROSS's financial condition when evaluating deterrence. You may not consider it in assessing compensatory damages.  Any award of punitive damages must bear a reasonable relationship to Thomson Reuters compensatory damages.[3]

**Authority:**  Delaware Pattern Jury Instructions – Civil § 22.27 (modified); *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003) ("[T]he most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct."); *Jester v. Hutt*, 937 F.3d 233 (3d Cir. 2019) (upholding jury award "approximately 90,000 times" the $1 nominal damages award); *In re Lemington Home for the Aged*, 777 F.3d 620, 631 (3d Cir. 2015) ("The wealth of a defendant is indeed one of the three factors that can properly [be] consider[ed] by the trier of fact in assessing an award of punitive damages under § 908(2). Nonetheless, that section's use of the permissive 'can,' rather than the compulsory 'must,' suggests that evidence of a defendant's wealth is not a necessary prerequisite to an award of punitive damages.") (citations omitted); *Cortez v. Trans Union, LLC*, 617 F.3d 688, 718, nn 37 (3d Cir. 2010)  ("A jury can consider the relative wealth of a defendant in deciding what amount is sufficient to inflict the intended punishment."); *Dunn v. HOVIC*, 1 F.3d 1371, 1377 (3d Cir.), *modified,* 13 F.3d 58 (3d Cir. 1993) ("Included in the harm to the plaintiff may be considered the fact that the plaintiff has been put to trouble and expense in the protection of his interests, as by legal proceedings in this or in other suits.") (quoting Restatement (Second) of Torts § 908 (1979) cmt. e); *Jardel Co. v. Hughes*, 523 A.2d 518, 529 (Del. 1987) (adopting Restatement (Second) of Torts § 908 (1979), clause 1); *Chamberlain v. Pyle*, No. N18C-07-035 SKR, 2023 WL 1771013, at *4 (Del. Super. Ct. Feb. 6, 2023) ("The United States Court of Appeals for the Third Circuit has endorsed the approach of comparing 'punitive awards in similar cases' to 'help [federal] district courts assess the reasonableness of a punitive award

---

[3]  <mark>Plaintiffs' Position:</mark> ROSS argues in a footnote that punitive damages cannot be assessed, incorrectly asserting that Plaintiffs seek only disgorgement of ROSS's profits for their tortious interference claim, not compensatory damages.  This is incorrect.  *See, e.g.*, D.E. 1 ¶¶ 2, 5, 48, 53, Prayer for Relief ("Entering judgment for Plaintiffs against ROSS for all damages suffered by Plaintiffs"). ROSS has known since the filing of the complaint of these claims, and there has been substantial fact discovery and expert analysis of the same.  D.I. 207-02 (Expert Report of James E. Malackowski, August 1, 2022) at 5 ("the available economic remedies for tortious interference with contract include Plaintiffs' actual damages, including in the form of lost profits"), *see also* at 44-45, 57; *see also* Jury Instruction No. 28, Monetary Relief—Types of Compensatory Damages.

when only nominal damages are given.'") (quoting *Jester v. Hutt*, 937 F.3d 233, 243 (3d Cir. 2019)); *Solway v. Kent Diagnostic Radiology Assocs., P.A.*, No. CV S11C-01-022 RFS, 2014 WL 703761, at *3 (Del. Super. Ct. Feb. 18, 2014) (quoting *Cloroben Chem. Corp. v. Comegys*, 464 A.2d 887, 891 (Del. 1983) ("For defendant's conduct to be found willful or wanton the conduct must reflect a 'conscious indifference' or 'I don't care' attitude.")); Restatement (Second) of Torts § 908 (1979) ("(1) Punitive damages are damages, other than compensatory or nominal damages, awarded against a person to punish him for his outrageous conduct and to deter him and others like him from similar conduct in the future.  (2) Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others. In assessing punitive damages, the trier of fact can properly consider the character of the defendant's act, the nature and extent of the harm to the plaintiff that the defendant caused or intended to cause and the wealth of the defendant."); *id*. §909 ("Punitive damages can properly be awarded against a master or other principal because of an act by an agent if, but only if, (a) the principal or a managerial agent authorized the doing and the manner of the act, or (b) the agent was unfit and the principal or a managerial agent was reckless in employing or retaining him, or (c) the agent was employed in a managerial capacity and was acting in the scope of employment, or(d) the principal or a managerial agent of the principal ratified or approved the act."); *id*. § 914 ("(1) The damages in a tort action do not ordinarily include compensation for attorney fees or other expenses of the litigation. (2) One who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover reasonable compensation for loss of time, attorney fees and other expenditures thereby suffered or incurred in the earlier action.").

## 34.    FINAL INSTRUCTIONS AND DEADLOCK [AGREED]

It is your duty as jurors to consult with one another and to deliberate with a view toward reaching an agreement, if you can do so consistent with your individual judgments.  Each of you must decide the case for yourself, but you should do so only after a consideration of the case with your fellow jurors, and you must be open to their opinions.  You should not be influenced to vote a certain way, however, by the single fact that a majority of the jurors, or any of them, will vote in a certain way.  In other words, you should not surrender your honest convictions concerning the effect or weight of the evidence for the mere purpose of returning a verdict, or solely because of the opinions of the other jurors.

In the course of your deliberations you should not hesitate to reexamine your own views, and to change your opinion if you are convinced that those views are wrong.  To reach a unanimous result you must examine the questions submitted to you openly and frankly, with proper regard for the opinions of others and with a willingness to reexamine your own views.

Remember that you are not partisans; you are judges — judges of the facts. Your only interest is to seek the truth from the evidence. You are the judges of the credibility of the witnesses and the weight of the evidence.

If you should fail to agree on a verdict, the case is left open and must be resolved at a later time. There is no reason to think that another trial would be conducted in a better way or that a different jury would decide it any better.  Any future jury must be selected in the same manner and from the same source as you.

We try cases to dispose of them and to reach a common conclusion if it is consistent with the conscience of each member of the jury.  I suggest that, in deliberating, you each recognize that you are not infallible, that you listen to the opinions of the other jurors and that you do so

carefully with a view to reaching a common conclusion, if you can. You may take all the time that you feel is necessary.

I remind you that in your deliberations you are to consider the instructions I have given you as a whole.  You should not single out any part of any instruction, including this one, and ignore others.  They are all equally important.

You may now retire and continue your deliberations.


**Authority:**  Third Circuit Model Jury Instructions §3.4.