## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION, | ) ) ) | |
| | ) | C.A. No. 20-613-SB |
| Plaintiffs/Counterdefendants, | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| v. | ) | |
| | ) | |
| ROSS INTELLIGENCE INC., | ) | |
| | ) | |
| Defendant/Counterclaimant. | ) | |

### ROSS INTELLIGENCE INC.'S [PROPOSED] JURY INSTRUCTIONS

#### Introduction

Defendant and counterclaim plaintiff ROSS Intelligence Inc. ("ROSS"), by and through its undersigned attorneys, respectfully submit its proposed jury instructions.  ROSS submits several general jury instructions as well as special jury instructions specific to the copyright and tortious interference claims. With respect to the forgoing:

1. Unless otherwise noted, the general jury instructions are identical to or modified from the Model Civil Jury Instructions for the Third Circuit, Chapters 1-3 (Last Updated August 2020).

2. Unless otherwise noted, the special instructions related to copyright are derived from the Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit, Chapter 17 Copyrights (2017 Edition) (Last Updated March 2024). Per the Model Civil Jury Instructions for the Third Circuit, Appendix Two – "Instructions Covered in Other Sets" ("Appendix II"), in the Third Circuit, copyright jury instructions should be patterned off of the ABA Model Jury Instructions: Copyright, Trademark and Trade Dress Litigation (2008) (Appendix Two at 3) or one of the following: 7th Cir. – (Civil)

Chapter 12; 9th Cir. – (Civil) Chapter 17; 11th Cir. – (Civil) Chapter 9; O'Malley et al. – Chapter 160; and/or Sand et al. – Chapter 86B. Appendix Two at 12. Because the parties and the Court have relied heavily on 2d and 9th Circuit case law in their briefing and opinions, and because the 3d Circuit has approved jury instructions by the 9th Circuit, the 9th Circuit's model jury instructions were used unless: (a) the 9th Circuit did not have a jury instruction covering a particular topic; (b) the jury instruction conflicted with 3d Circuit case law; or (3) additional instruction was needed based on the facts of this case.

3. The jury instructions related to tortious interference with contract were derived from Delaware case law and Delaware Pattern Jury Instructions - Civil.

ROSS submits a jury verdict form with these instructions. The jury instructions reference Appendix A containing the asserted headnotes by Thomson Reuters and the verdict form references Exhibits A-C, also containing the asserted headnotes by Thomson Reuters. The parties will meet and confer about the form of the appendix and exhibits.

ROSS reserves the right to revise, withdraw, and/or supplement these proposed jury instructions based upon the Court's rulings on any motions *in limine*, other motions that may be made prior to or at trial, and the evidence submitted at trial.  The parties continue to meet and confer over agreement for these Proposed Jury Instructions.

**1. Preliminary Instructions—Introduction; Role of Jury (Parties Agreed to Language)**

Now that you have been sworn, I have the following preliminary instructions for your guidance as jurors in this case.

You will hear the evidence, decide what the facts are, and then apply those facts to the law that I will give to you.

You and only you will be the judges of the facts. You will have to decide what happened. I play no part in judging the facts. You should not take anything I may say or do during the trial as indicating what I think of the evidence or what your verdict should be. My role is to be the judge of the law. I make whatever legal decisions have to be made during the course of the trial, and I will explain to you the legal principles that must guide you in your decisions. You must follow that law whether you agree with it or not.

***Sources and Authorities*:**

Third Circuit Model Civil Jury Instructions, General Instructions for Civil Cases No. 1.1 (August 2020).

## 2. Preliminary Instructions—Description of Case; Summary of Applicable Law

In this case, Thomson Reuters and WestLaw, which I will refer to as plaintiff Thomson Reuters, claims that defendant ROSS engaged in copyright infringement by copying from its Westlaw legal research platform to develop ROSS's artificial intelligence ("AI") based legal research search tool.  Specifically, Thomson Reuters compiles judicial opinions in an online database. It claims that ROSS copied certain editorial enhancements to these cases which it calls "headnotes." Thomson Reuters also claims that ROSS copied certain judicial words and phrases and the organizational system for the cases which it calls the "key number system." It is Thomson Reuters's burden to identify each headnote that ROSS allegedly infringed and prove each element of infringement for that headnote. Similarly, it is Thomson Reuters' burden to identify the components of the key number system that ROSS allegedly infringed and prove each element of infringement for the key number system.

ROSS denies these claims and contends that Thomson Reuters does not have a valid copyright in these materials because they are factual, identical to a prior source, short words or phrases, and/or copies of noncopyrightable judicial opinions. Specifically, it contends that the headnotes are simply identical or highly similar copies of the judicial text not entitled to copyright protection and the key numbers system uses common words and phrases that are likewise not entitled to protection. Additionally, to the extent that there is any copyright, ROSS contends that it is weak and not infringed because ROSS's use was not virtually identical to Thomson Reuters's use and ROSS did not use substantially all of the alleged copyrighted material. Finally, ROSS contends that even if there is a valid copyright, ROSS's use was fair use and there can be no copyright infringement.

Thomson Reuters also contends that ROSS tortiously interfered with Thomson Reuters's contract with a third party, LegalEase. Specifically, Thomson Reuters alleges that ROSS induced

LegalEase to breach two contract provisions by (1) using a bot to scrape Westlaw content, and (2) sharing passwords. ROSS denies these claims and asserts it had no knowledge of LegalEase's activities.

I will give you detailed instructions on the law at the end of the case, and those instructions will control your deliberations and decision. But in order to help you follow the evidence, I will now give you a brief summary of the elements that the plaintiff must prove to make its case, as well as a brief summary of the elements of a defense the defendant asserts:

To prove direct copyright infringement, Thomson Reuters must prove that (1) it owns a valid copyright to each of the headnotes Thomson Reuters asserts ROSS infringes as well as a valid copyright to the key number system and (2) ROSS copied original expression from these headnotes and the key number system, which requires Thomson Reuters to show both copying and material appropriation. For both of these elements, Thomson Reuters must specifically identify each copyright it asserts ROSS infringes, demonstrate that the copyright is valid and that Thomson Reuters owns it, and demonstrate that ROSS copied the original expression embodied in that specific copyright.

To prove vicarious copyright infringement, Thomson Reuters must prove that (1) it owns a valid copyright to each of the headnotes Thomson Reuters asserts LegalEase infringes well as a valid copyright to the key number system; (2) LegalEase copied original expression from these headnotes and the key number system, which requires Thomson Reuters show both copying and material appropriation; (3) ROSS directly benefitted financially from the infringing activity of LegalEase; (4) ROSS had the practical right and ability to supervise and control the infringing activity of LegalEase; and (5) ROSS failed to exercise that right and ability. As with its direct infringement claim against ROSS, Thomson Reuters must specifically identify each copyright it

asserts LegalEase infringes, demonstrate that the copyright is valid and that Thomson Reuters owns it, and demonstrate that LegalEase copied the original expression embodied in that specific copyright.

To prove contributory copyright infringement, Thomson Reuters must prove that (1) it owns a valid copyright to each of the headnotes Thomson Reuters its asserts LegalEase infringes as well as a valid copyright to the key number system; (2) LegalEase copied original expression from these headnotes and the key number system, which requires Thomson Reuters show both copying and material appropriation; (3) ROSS knew or had reason to know of the infringing activity of LegalEase; and (4) ROSS intentionally induced and materially contributed to LegalEase's infringing activity. As with its direct and vicarious infringement claims, Thomson Reuters must specifically identify each copyright it asserts LegalEase infringes, demonstrate that the copyright is valid and that Thomson Reuters owns it, and demonstrate that LegalEase copied the original expression embodied in that specific copyright.

In addition to asserting that Thomson Reuters does not own valid copyrights, ROSS asserts an affirmative defense called fair use. A finding of fair use means that as a matter of law, ROSS cannot infringe Thomson Reuters's copyrights. Fair use requires me to balance a number of factors, including (1) the purpose and character of the use, including whether the use is of a commercial nature or is for nonprofit educational purposes and whether the use was transformative; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work. In order for me to balance these factors, at the close of the case, I will ask you to make specific factual findings regarding each of these factors.

To prove tortious interference with contract, Thomson Reuters must prove: (1) there was a contract between LegalEase and Thomson Reuters; (2) ROSS knew about the contract; (3) an intentional act by ROSS was a significant factor in causing LegalEase to breach the contract; (4) ROSS's act was without justification; and (5) it caused injury to Thomson Reuters.

**Authority**

Third Circuit Model Jury Instructions § 1.2 (modified); 9th Circuit Model Instructions 17.5, 17.20, 17.21, 17.22; 17 U.S.C. § 107 (providing the fair use factors); *Leonard v. Stemtech Int'l Inc*, 834 F.3d 376, 386-88 (3d Cir. 2016) (stating the elements of vicarious and contributory infringement); *WaveDivision Holdings, LLC v. Highland Cap. Mgmt., L.P.*, 49 A.3d 1168, 1174 (Del. 2012).

### 3. Preliminary Instruction—Copyright

The plaintiff, Thomson Reuters, claims ownership of a copyright and seeks damages against the defendant, ROSS, for copyright infringement. The defendant denies infringing the copyright, contends that any alleged copyright is invalid, and asserts affirmative defenses, including fair use. To help you understand the evidence in this case, I will explain some of the legal terms you will hear during this trial.

### DEFINITION OF COPYRIGHT

The owner of a copyright has the right to exclude any other person from reproducing, distributing, performing, displaying, or preparing derivative works from the work covered by copyright for a specific period of time, which, at most, is 95 years.

A copyrighted work can be a literary work, musical work, dramatic work, pantomime, choreographic work, pictorial work, graphic work, sculptural work, motion picture, audiovisual work, sound recording, architectural work, or computer program.

Facts, ideas, procedures, processes, systems, methods of operation, concepts, principles, discoveries, and judicial opinions cannot themselves be copyrighted.

The copyrighted work must be original. An original work that closely resembles other works can be copyrighted so long as the similarity between the two works is not the result of copying.

### PLAINTIFF'S BURDEN OF PROOF

In this case, the plaintiff, Thomson Reuters, contend that the defendant, ROSS, has infringed the plaintiff's copyright. The plaintiff has the burden of proving by a preponderance of the evidence that the plaintiff is the owner of the copyright, that the defendant copied original expression from the copyrighted work, and that the defendant caused the infringement.

Preponderance of the evidence means that you must be persuaded by the evidence that it is more probably true than not true that the copyrighted work was infringed.

## PROOF OF COPYING

To prove that the defendant copied the plaintiff's work, the plaintiff may use direct or indirect evidence. Direct evidence includes an admission that the defendant copied the plaintiff's work. Indirect evidence is evidence showing that the defendant had access to the plaintiff's copyrighted work and that the defendant's work and the plaintiff's copyrighted work are virtually identical.

To the extent it owns a valid copyright in the headnotes, Thomson Reuter's copyrights are thin, and it must show that defendant's copying of the copyrighted work was virtually identical. Similarly, because Thomson Reuters's key number system are what the law calls a compilation to the extent is owns a valid copyright, it is also thin. Thomson Reuter must prove that the defendant's copying of the alleged copyrighted work was both virtually identical and copied substantially all of the compilation. For use of a copyrighted work to be actionable, the use must be significant enough to constitute infringement. This means that even where the fact of copying is established, no legal consequences will follow from that fact unless the copying is virtually identical and, for the alleged copying of a compilation, substantially all of the compilation. In determining whether the defendant's copying of the copyrighted work was virtually identical, you may consider how important the copied portion was to the copyrighted work as a whole. A use is considered de minimis, and therefore not virtually identical, if it is so meager and fragmentary that the average audience would not recognize the appropriation.

## LIABILITY FOR INFRINGEMENT

One who causes a copyrighted work to be reproduced without authority from the copyright owner during the term of the copyright infringes the copyright.

As explained in more detail in later instructions, a person may be liable for another person's infringement by vicariously infringing or contributorily infringing.

## VICARIOUS INFRINGEMENT

A person is liable for copyright infringement by another if the person has profited directly from the infringing activity and had the practical right and ability to supervise or control the infringing activity.

## CONTRIBUTORY INFRINGEMENT

A person is liable for copyright infringement by another if the person knows or should have known of the infringing activity and induces the activity.

## DEFENSES TO INFRINGEMENT

The defendant contends that there is no copyright infringement. There is no copyright infringement when (1) the defendant copied material that is not entitled to copyright protection; (2)the defendant's work is the result of independent creation, coincidence, or prior common source; or (3) the defendant made fair use of the copyrighted work. The fair use defense permits the use of copyrighted works without the copyright owner's consent. The defense encourages and allows the development of new ideas that build on earlier ones, thus providing a necessary counterbalance to the copyright law's goal of protecting creators' work product.

### Authority

9th Circuit Model Rules 17.1; 17 U.S.C. §§ 101-1511; *Newton v. Diamond*, 388 F.3d 1189, 1192-93 (9th Cir. 2004) ("For an unauthorized use of a copyrighted work to be actionable, the use must be significant enough to constitute infringement. This means that even where the fact of copying is conceded, no legal consequences will follow from that fact unless the copying is substantial."); *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 914 (9th Cir. 2010) ("If there's only a narrow range of expression (for example, there are only so many ways to paint a red bouncy ball on blank canvas), then copyright protection is 'thin' and a work must be 'virtually identical' to infringe."); *Satava v. Lowry*, 323 F.3d 805, 812 (9th Cir. 2003) (glass-in-glass jellyfish sculpture only entitled to thin protection against virtually identical copying due to the narrow range of expression); *Advanta-STAR Auto. Research Corp. of Am. v. Search Optics*, LLC, 672 F. Supp. 3d 1035, 1049 (S.D. Cal. 2023) ("[W]hen a work is entitled to 'thin' protection,

courts typically require 'virtual identity' rather than 'substantial similarity' to find copyright infringement.); *Newton, 388 F.3d* at 1193 (quoting *Fisher v. Dees*, 794 F.2d 432, 434 n.2 (9th Cir. 1986)) (a use is considered de minimis, and therefore not substantial, "if it is so meager and fragmentary that the average audience would not recognize the appropriation."); *Perfect 10, Inc. v. Amazon.com, Inc*., 508 F.3d 1146, 1163 (9th Cir. 2007) ("The fair use defense permits the use of copyrighted works without the copyright owner's consent under certain situations. The defense encourages and allows the development of new ideas that build on earlier ones, thus providing a necessary counterbalance to the copyright law's goal of protecting creators' work product.").

### 4. Preliminary Instructions—Conduct of the Jury (Parties Agreed to Language)

Now, a few words about your conduct as jurors.

First, I instruct you that during the trial and until you have heard all of the evidence and retired to the jury room to deliberate, you are not to discuss the case with anyone, not even among yourselves. If anyone should try to talk to you about the case, including a fellow juror, bring it to my attention promptly. There are good reasons for this ban on discussions, the most important being the need for you to keep an open mind throughout the presentation of evidence. I know that many of you use cell phones, smart phones, and other portable electronic devices; laptops, and other computers both portable and fixed; and other tools of technology, to access the internet and to communicate with others. You also must not talk to anyone about this case or use these tools to communicate electronically with anyone about the case. This includes your family and friends. You may not communicate orally with anyone about the case on your cell phone, smart phone, or portable or fixed computer or device of any kind; or use these devices to communicate electronically by messages or postings of any kind including e-mail, instant messages, text messages, text or instant messaging services such as Whatsapp, Signal, or Telegram, or through any blog, website, internet chat room, or by way of any other social networking websites or services including X, Facebook, MySpace, Instagram, Threads, LinkedIn, TikTok, Twitch, Discord, and YouTube.

If any lawyer, party, or witness does not speak to you when you pass in the hall, ride the elevator, or the like, remember it is because they are not supposed to talk or visit with you, either. That is why you are asked to wear your juror tags. It shows that you are someone who is not to be approached in any way.

Second, do not read or listen to anything related to this case that is not admitted into evidence. By that I mean, if there is a newspaper article or radio or television report relating to

12

this case, do not read the article or watch or listen to the report.  In addition, do not try to do any independent research or investigation on your own on matters relating to the case or this type of case.  Do not do any research on the internet, for example.  You are to decide the case upon the evidence presented at trial.  In other words, you should not consult dictionaries or reference materials, search the internet, websites, blogs, or use any other electronic tools to obtain information about this case or to help you decide the case.  Please do not try to find out information from any source outside the confines of this courtroom.

Again, do not reach any conclusion on the claims or defenses until all of the evidence is in.  Keep an open mind until you start your deliberations at the end of the case.

***Sources and Authorities*:**

Third Circuit Model Civil Jury Instructions, General Instructions for Civil Cases No. 1.3 (August 2020) (Modified).

### 5. Preliminary Instructions—Bench Conferences (Parties Agreed to Language)

During the trial it may be necessary for me to talk with the lawyers out of your hearing by having a bench conference.  If that happens, please be patient.

We are not trying to keep important information from you. These conferences are necessary for me to fulfill my responsibility, which is to be sure that evidence is presented to you correctly under the law.

We will, of course, do what we can to keep the number and length of these conferences to a minimum.

I may not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

***Sources and Authorities*:**

Third Circuit Model Civil Jury Instructions, General Instructions for Civil Cases No. 1.4 (August 2020) (Modified).

## 6. Preliminary Instructions—Evidence

The evidence from which you are to find the facts consists of the following:

    1. The testimony of the witnesses;

    2. Documents and other things received as exhibits; and

    3. Any facts that are stipulated--that is, formally agreed to by the parties.

The following things are not evidence:

    1. Statements, arguments, and questions of the lawyers for the parties in this case;

    2. Objections by lawyers.

    3. Any testimony I tell you to disregard; and

    4. Anything you may see or hear about this case outside the courtroom.

You must make your decision based only on the evidence that you see and hear in court. Do not let rumors, suspicions, or anything else that you may see or hear outside of court influence your decision in any way.

You should use your common sense in weighing the evidence.  Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

There are rules that control what can be received into evidence.  When a lawyer asks a question or offers an exhibit into evidence, and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. This simply means that the lawyer is requesting that I make a decision on a particular rule of evidence. You should not be influenced by the fact that an objection is made. Objections to questions are not evidence. Lawyers have an obligation to their clients to make objections when they believe that evidence being offered is improper under the rules of evidence.  You should not be influenced by the objection or by the

court's ruling on it. If the objection is sustained, ignore the question. If it is overruled, treat the answer like any other. If you are instructed that some item of evidence is received for a limited purpose only, you must follow that instruction.

Also, certain testimony or other evidence may be ordered struck from the record and you will be instructed to disregard this evidence. Do not consider any testimony or other evidence that gets struck or excluded.   Do not speculate about what a witness might have said or what an exhibit might have shown.

***Sources and Authorities*:**

Third Circuit Model Civil Jury Instructions, General Instructions for Civil Cases No. 1.5 (August 2020) (Modified).

### 7. Preliminary Instructions—Direct and Circumstantial Evidence (Parties Agreed to Language)

There are two types of evidence that you may use in reaching your verdict. One type of evidence is called "direct evidence."  An example of "direct evidence" is when a witness testifies about something that the witness knows through his own senses — something the witness has seen, felt, touched or heard or did. If a witness testified that he saw it raining outside, and you believed him, that would be direct evidence that it was raining. Another form of direct evidence is an exhibit where the fact to be proved is its existence or current condition.

The other type of evidence is circumstantial evidence. "Circumstantial evidence" is proof of one or more facts from which you could find another fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

You should consider both kinds of evidence that are presented to you. The law makes no distinction in the weight to be given to either direct or circumstantial evidence. You are to decide how much weight to give any evidence.

***Sources and Authorities*:**

Third Circuit Model Civil Jury Instructions, General Instructions for Civil Cases No. 1.6 (August 2020).

17

### 8. General Instructions for Use During Trial—Stipulation of Fact (Parties Agreed to Language)

Thomson Reuters and ROSS have agreed that certain facts are true, and those stipulations have been read to you during this trial. You must therefore treat these facts as having been proved for the purposes of this case.

***Sources and Authorities*:**

Third Circuit Model Civil Jury Instructions, General Instructions for Civil Cases No. 2.4 (August 2020) (Modified).

**9. General Instructions for Use During Trial—Use of Deposition**

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath and swears to tell the truth, and lawyers for each party may ask questions. A court reporter is present and records the questions and answers.

The deposition of one or more witnesses may be presented to you by a video or by reading the transcript. If played by video, the deposition testimony may be edited or cut to exclude irrelevant testimony. You should not attribute any significance to the fact that deposition videos may appear to have been edited.

Deposition testimony is entitled to the same consideration and is to be judged, insofar as possible, in the same way as if the witness had been present to testify.

***Sources and Authorities*:**

Third Circuit Model Civil Jury Instructions, General Instructions for Civil Cases No. 2.5 (August 2020) (Modified).

### 10. General Instructions for Use During Trial—Charts and Summaries in Evidence and those Not Admitted in Evidence

The parties have presented exhibits in the form of charts and summaries. I decided to admit these charts and summaries in place of the underlying documents that they represent in order to save time and avoid unnecessary inconvenience. You should consider these charts and summaries as you would any other evidence.

Certain charts and summaries that have not been received in evidence have been shown to you in order to help explain or illustrate the contents of books, records, documents, testimony, or other evidence in the case. These charts and summaries are not themselves proof of any facts. They are not binding on you in any way.  If they do not correctly reflect the facts shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the evidence.

***Sources and Authorities*:**

Third Circuit Model Civil Jury Instructions, General Instructions for Civil Cases Nos. 2.7 and 2.8 (August 2020) (Modified).

**11. General Instructions for Use During Trial—Evidence Admitted for a Limited Purpose**

You will now hear evidence that was received for a particular limited purpose. [This evidence can be considered by you as evidence that (describe limited purpose)]. It may not be used for any other purpose. [For example, you cannot use it as proof that (discuss specific prohibited purpose)].

***Sources and Authorities*:**

Third Circuit Model Civil Jury Instructions, General Instructions for Civil Cases No. 2.10 (August 2020) (Modified).

### 12. General Instructions for Use At End of Trial—Deliberations

When you retire to the jury room to deliberate, you may take with you these instructions, your notes, and the exhibits that the Court has admitted into evidence. You should select one member of the jury as your foreperson. That person will preside over the deliberations and speak for you here in open court.

You have two main duties as jurors. The first one is to decide what the facts are from the evidence that you saw and heard here in court. Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide if, under the appropriate burden of proof, the parties have established their claims. It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions that I gave you before and during the trial, and these instructions. All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

As jurors, you have a duty to consult with each other and to deliberate with the intention of reaching a verdict. Each of you must decide the case for yourself, but only after a full and impartial consideration of all of the evidence with your fellow jurors. Listen to each other carefully. In the course of your deliberations, you should feel free to re-examine your own views and to change your opinion based upon the evidence. But you should not give up your honest convictions about the evidence just because of the opinions of your fellow jurors. Nor should you change your mind just for the purpose of obtaining enough votes for a verdict.

When you start deliberating, do not talk to the jury officer, to me or to anyone but each other about the case.  During your deliberations, you must not communicate with or provide any information to anyone by any means about this case.  You may not use any electronic device or media, such as a cell phone, smart phone, or computer of any kind; the internet, any internet service, or any text or instant messaging service like Twitter; or any internet chat room, blog, website, or social networking service such as Facebook, LinkedIn, or YouTube, to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict.

You may not use these electronic means to investigate or communicate about the case because it is important that you decide this case based solely on the evidence presented in this courtroom. Information on the internet or available through social media might be wrong, incomplete, or inaccurate. Information that you might see on the internet or on social media has not been admitted into evidence and the parties have not had a chance to discuss it with you. You should not seek or obtain such information and it must not influence your decision in this case.

If you have any questions or messages for me, you must write them down on a piece of paper, have the foreperson sign them, and give them to the jury officer.  The officer will give them to me, and I will respond as soon as I can.  I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you.

One more thing about messages.  Never write down or tell anyone how you stand on your votes.  For example, do not write down or tell anyone that a certain number is voting one way or another.   Your votes should stay secret until you are finished.

Your verdict must represent the considered judgment of each juror.  In order for you as a jury to return a verdict, each juror must agree to the verdict.  Your verdict must be unanimous.

A form of verdict has been prepared for you.  It has a series of questions for you to answer.  You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will fill it in, and have your foreperson date and sign the form. You will then return to the courtroom and your foreperson will give your verdict. Unless I direct you otherwise, do not reveal your answers until you are discharged. After you have reached a verdict, you are not required to talk with anyone about the case unless I order you to do so.

Once again, I want to remind you that nothing about my instructions and nothing about the form of verdict is intended to suggest or convey in any way or manner what I think your verdict should be.  It is your sole and exclusive duty and responsibility to determine the verdict.

***Sources and Authorities*:**

Third Circuit Model Civil Jury Instructions, General Instructions for Civil Cases No. 3.1 (August 2020) (Modified).

### 13. Copyright—Defined (17 U.S.C. § 106)

Copyright is the exclusive right to copy.  This right to copy includes the exclusive rights to, or authorize others to:

1.      reproduce the copyrighted work in copies;

2.      prepare derivative works based upon the copyrighted work; or

3.      distribute copies of the copyrighted work to the public by sale or other

transfer of ownership.

It is the owner of a copyright who may exercise these exclusive rights.  The term "owner" includes the author of the work or an assignee.  In general, copyright law protects against reproduction of identical or substantially similar copies of the owner's copyrighted work without the owner's permission.  An owner may enforce these rights to exclude others in an action for copyright infringement.

There are a number of exceptions to these exclusive rights, such as the fair use exception, which I will explain in a later instruction.

***Sources and Authorities*:**

9th Circuit Model Rules 17.2; 17 U.S.C. §§ 106–122; *Maclean Assocs. v. Wm. M. Mercer-Meidinger-Hansen, Inc.*, 952 F.2d 769, 778 (3d Cir. 1991) ("Under the Copyright Act, the owner of a copyright has the exclusive right to copy, distribute or display his work.").

### 14. Copyright—Subject Matter—Generally (17 U.S.C. § 102)

Plaintiff contends that the headnotes I will provide to you in Appendix A and the key number system complication, which I will refer to as the asserted headnotes and key number system, involved in this trial are literary works in which words, numbers, or other verbal or numerical symbols are expressed. A copyright may be obtained in certain literary works.

However, copyright protection for an original work of authorship does not extend to any idea, concept, principle, or materials authored by a judge or a legislative body acting in an official capacity, such as the text of judicial opinions or the text of state-created headnotes, regardless of the form in which it is described, explained, illustrated, or embodied.

Additionally, individual words and short phrases such as names, titles, and slogans; familiar symbols or designs; mere variations of typographic ornamentation, lettering or coloring; and mere listing of ingredients or contents lack originality and cannot be copyrighted. Thomson Reuters's key number system includes key numbers and judicial topics comprised of either individual words or short phrases. These words and phrases are not, as a matter of law, copyrightable. However, as explained in a further instruction, they may be subject to copyright protection as a compilation.

In this case, Plaintiff Thomson Reuters must also show that each asserted headnote it claims was infringed is original. That means that they must show that the headnote has at least some minimal creativity and author contributed something more than a merely trivial variation from the judicial language on which it is based, something recognizably his own.

*Sources and Authorities*:

9th Circuit Model Instruction 17.3; 17 U.S.C. § 102(a) ("Copyright protection subsists, in accordance with this title, in original works of authorship fixed in any tangible medium of expression . . ."); *Star Athletica, L.L.C. v. Varsity Brands, Inc.,* 580 U.S. 405, 411 (2017) ("A valid copyright extends only to copyrightable subject matter."); *Pyrotechnics Mgmt. v. XFX Pyrotechnics LLC*, 38 F.4th 331, 336-37 (3d Cir. 2022) ("Congress expressly excluded certain

subjects from copyright protection, no matter how original they might be. Those exclusions include 'any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described.'" (quoting 17 U.S.C. § 102(b)) (internal citations and quotations omitted)); *Georgia v. Public Resources*, 590 U.S. 255, 273 (2020) (materials authored by a judge or a legislative body acting in an official capacity are not copyrightable); *Magic Mktg. v. Mailing Servs.*, 634 F. Supp. 769, 771-72 (W.D. Pa. 1986) ("Indeed, regulations promulgated pursuant to the Copyright Act list the following works as not subject to copyright: 'Words and short phrases such as names, titles, and slogans; familiar symbols or designs; mere variations of typographic ornamentation, lettering or coloring; mere listing of ingredients or contents.'" (quoting 37 C.F.R. § 202.1(a) (1985)); *Hutchins v. Zoll Med. Corp.*, 492 F.3d 1377, 1384–1385 (Fed. Cir. 2007) (denying copyright protection for the phrase "if no pulse, start CPR"); D.I. 547 at 7 ("If a headnote merely copies a judicial opinion, it is uncopyrightable. But if it varies more than 'trivial[ly],' then Westlaw owns a valid copyright." (quoting *L. Batlin & Son, Inc. v. Snyder*, 536 F.2d 486, 490 (2d Cir. 1976)); *N. Coast Indus. v. Jason Maxwell, Inc.*, 972 F.2d 1031, 1033 (9th Cir. 1992) (A work is original if "the author contributed something more than a merely trivial variation, something recognizably his own.").

15. Copyright—Subject Matter—Ideas and Expression

(17 U.S.C. § 102(b))

Only the expression of an idea or fact can be copyrighted.  The underlying ideas contained in the work, such as procedures, processes, systems, methods of operation, concepts, principles, or discoveries, or the underlying facts contained in the work, such as names and addresses in a telephone directory, cannot be copyrighted. Likewise, materials authored by a judge or a legislative body acting in an official capacity, such as the text of judicial opinions or the text of state-created headnotes, are not copyrightable.

***Sources and Authorities*:**

9th Circuit Model Instruction 17.4; 17 U.S.C. § 102(b); *Georgia v. Public Resources*, 590 U.S. 255, 273 (2020); *Star Athletica, L.L.C. v. Varsity Brands, Inc.,* 580 U.S. 405, 411 (2017) ("A valid copyright extends only to copyrightable subject matter."); *Pyrotechnics Mgmt. v. XFX Pyrotechnics LLC*, 38 F.4th 331, 336-37 (3d Cir. 2022) ("Congress expressly excluded certain subjects from copyright protection, no matter how original they might be. Those exclusions include 'any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described.'") (internal citations and quotations omitted)); *Georgia v. Public Resources*, 590 U.S. 255, 273 (2020) (materials authored by a judge or a legislative body acting in an official capacity are not copyrightable).

### 16. Copyright Infringement—Elements—Ownership and Copying
### (17 U.S.C. § 501(a)-(b))

If you're persuaded that Thomson Reuters owns a valid copyright, you can consider whether ROSS improperly copied Thomson Reuters's copyrighted material. It is the burden of Thomson Reuters to show that ROSS infringed on its valid copyright. Anyone who copies original expression from a copyrighted work during the term of the copyright without the owner's permission infringes the copyright.

On the plaintiff's copyright infringement claim, the plaintiff has the burden of proving by a preponderance of the evidence that:

First, the plaintiff is the owner of a valid copyright; and

Second, the defendant copied original expression from the copyrighted work, which requires the plaintiff show both copying and material appropriation of the copyrighted work. I will explain later what is meant by material appropriation.

If you find that the plaintiff has proved both of these elements, your verdict on this issue should be for the plaintiff. If, on the other hand, you find that the plaintiff has failed to prove either of these elements, your verdict on this issue should be for the defendant.

***Sources and Authorities*:**

9th Circuit Model Instruction 17.5; 11th Circuit Model Instruction 9.17; 17 U.S. Code § 501; *Feist Publications v. Rural Telephone Service Co.*, 499 U.S. 340, 361 (1991); *Dun & Bradstreet Software* Servs*., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 206 (3d Cir. 2002) (To prevail on a copyright infringement action, plaintiffs must establish: "(1) ownership of a valid copyright; and (2) unauthorized copying of original elements of the plaintiff's work."); *Tanksley v. Daniels*, 902 F.3d 165, 173 (3d Cir. 2018) (stating that a plaintiff must prove by the preponderance of the evidence that defendant (1) actually copied copyrighted work; and (2) materially misappropriated the copyrighted work.); *Skidmore v. Led Zeppelin*, 952 F.3d 1064 (9th Cir. 2020) (en banc) ("[P]roof of copyright infringement requires [the plaintiff] to show: (1) that he owns a valid copyright in [the work]; and (2) that [the defendant] copied protected aspect of the work . . . The second prong of the infringement analysis contains two separate components: 'copying' and 'unlawful appropriation.'"); *Krist v. Pearson Educ.*, Inc., 419 F. Supp. 3d 904, 907 (E.D. Pa. 2019) (copyright infringement must be proven by the preponderance of the evidence).

### 17. Copyright Infringement—Ownership of Valid Copyright—Definition
### (17 U.S.C. §§ 201–205)

The plaintiff is the owner of a valid copyright in the asserted headnotes and key number system if the plaintiff proves by a preponderance of the evidence that:

1.      the plaintiff's work is original; and

2.      the plaintiff is the author or creator of the work or received a transfer of

the copyright.

If you find that the plaintiff does not own a valid copyright, there can be no infringement and you should not evaluate whether there was direct infringement, contributory infringement, or vicarious infringement by ROSS.

***Sources and Authorities*:**

9th Circuit Model Instruction 17.6; 17 U.S. Code §§ 102(a)-(b), 302(c); *Star Athletica, L.L.C. v. Varsity Brands, Inc.,* 580 U.S. 405, 410-11 (2017) ("The first element of a copyright-infringement claim is ownership of a valid copyright . . . [that reflects] original works of authorship fixed in any tangible medium of expression." (quotations and citations omitted)).

### 18. Copyright Interests—Authorship
### (17 U.S.C. § 201(a))

The creator of an original work is called the author of that work.  An author originates or "masterminds" the original work, controlling the whole work's creation and causing it to come into being.

One must translate an idea into a fixed, tangible expression in order to be the author of the work.  Merely giving an idea to another does not make the giver an author of a work embodying that idea.

***Sources and Authorities*:**

9th Circuit Model Instruction 17.8; 17 U.S.C. § 201(a); *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989) ("As a general rule, the author is the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection." ); *Burrow-Giles Lithographic Co. v. Sarony*, 111 U.S. 53, 58, 61 (1884) (the "'author' involves originating, making, producing, as the inventive or master mind, the thing which is to be protected, whether it be a drawing, or a painting, or a photograph."); *Aalmuhammed v. Lee*, 202 F.3d 1227, 1232 (9th Cir. 2000) (the "author" is the person "to whom the work owes its origin and who superintended the whole work, the 'master mind.'"); *L. Batlin & Son, Inc. v. Snyder*, 536 F.2d 486, 490 (2d Cir. 1976) (en banc) ("Originality means that the work owes its creation to the author.").

### 19.  Copyright Infringement—Originality

You may find that each asserted headnote is original if they were created:

> First, independently by the work's author, that is, the author did not copy them from another work; and
>
> Second, by use of at least some minimal creativity and author contributed something more than a merely trivial variation, something recognizably his own.

Thomson Reuters headnotes have "thin" copyright protection, which protects against only virtually identical copying.

In determining whether the work's author copied from another work, the defendant can establish that the plaintiff copied the work as opposed to independently creating it in the same manner that the plaintiff proves infringement. In the case of a derivative work based on an underlying work that is in the public domain, only the material added to the underlying work is protected by copyright.

In determining whether an author contributed "something recognizably his own," the amount of effort or "sweat of the brow" placed into the work is irrelevant. Similarly, the demonstration of physical skill or special training in creating the work is irrelevant. Instead, you must look at the overall efforts of the author and determine if he or she added something with minimal creativity. For instance, mere reproduction of a work in another medium—such as changing a two-dimensional rendering into three dimensions—is not sufficiently creative.

Here, because Thomson Reuters's headnotes are based on judicial opinions, to be original, that the headnotes cannot be a copy from another work (i.e., the judicial texts) and Thomson Reuters must have used at least some minimal creativity and contributed something more than a merely trivial variation, something recognizably its own. Likewise, because

Thomson Reuters's judicial topics are based on common legal words and phrases, to be original, that the headnotes cannot be a copy from another work (i.e., the judicial texts) and Thomson Reuters must have used at least some minimal creativity and contributed something more than a merely trivial variation, something recognizably its own. If you find that Thomson Reuters's headnotes do not satisfy that burden, you must find it does not have a valid copyright in the works.

***Sources and Authorities*:**

9th Circuit Model Instruction 17.14; *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 113 L. Ed. 2d 358, 111 S. Ct. 1282 (1991) (Mere "sweat of the brow" is insufficient to render a copy eligible for copyright protection.); *id.* at 345 ("Original, as the term is used in copyright, means only that the work was independently created by the author [or authors], . . . and that it possesses at least some minimal degree of creativity."); *L. Batlin & Son, Inc. v. Snyder*, 536 F.2d 486, 491 (2d Cir.), *cert. denied*, 429 U.S. 857 (1976) ("[T]he requirement of originality [cannot] be satisfied simply by the demonstration of 'physical skill' or 'special training'.... A considerably higher degree of skill is required, true artistic skill, to make the reproduction copyrightable."); *N. Coast Indus. v. Jason Maxwell, Inc.*, 972 F.2d 1031, 1033 (9th Cir. 1992) (A work is original if "the author contributed something more than a merely trivial variation, something recognizably his own."); *Satava v. Lowry*, 323 F.3d 805, 812 (9th Cir. 2003) (When a work embodies only the minimum level of creativity necessary for copyright, it is said to have "thin" copyright protection, which "protects against only virtually identical copying."); Nimmer, § 2.08[C] at 2-111 (stating that the "mere act of converting two dimensions to three dimensions, although it creates a distinguishable variation, may not represent a contribution of independent effort because no one can claim to have independently evolved the idea and technique of working in three dimensions"); Nimmer on Copyright § 3.07[C] ("In the case of a derivative work based on an underlying work that is in the public domain, only the material added to the underlying work is protected by copyright."); *Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 911 (2d Cir. 1980) (holding that, "The mere reproduction of the underlying characters in plastic, even though . . . it undoubtedly involved some degree of manufacturing skill, does not constitute originality"); *Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1222 (9th Cir. 1997); *Worth v. Selchow & Richter Co.*, 827 F.2d 569, 572 (9th Cir. 1987) ("Because authors who wish to express ideas in factual works are usually confined to a narrow range of expression . . ., similarity of expression may have to amount to verbatim reproduction or very close paraphrasing before a factual work will be deemed infringed." (internal citation and quotations omitted)).

### 20. Copying—Access and Virtual Identity of Headnotes

Thomson Reuters claims that memos prepared for ROSS contained questions that were derived from the asserted headnotes. Instruction 17 states that the plaintiff has the burden of proving that the defendant copied original elements from the plaintiff's copyrighted work.  The plaintiff can prove that the defendant copied from the work by proving by a preponderance of the evidence that the defendant had access to the plaintiff's copyrighted work and that the defendant's work and original elements of the plaintiff's work are virtually identical. If the plaintiff fails to prove that the defendant copied the plaintiff's work, your verdict should be for the defendant. However, you will only address copying if you first find that Thomson Reuters owns a valid copyright to the asserted headnotes.

With respect to access, the plaintiff must prove by a preponderance of the evidence that LegalEase and ROSS had access to the plaintiff's work.  You may find that the defendant had access to the plaintiff's work if LegalEase and ROSS had a reasonable opportunity to view, read, or copy the plaintiff's work before the defendant's work was created.

With respect to virtual identity, for each memo question accused of infringement, Thomson Reuters must prove virtually identity between its asserted headnote and the accused memo question. Because the headnotes are based on judicial opinions and are factual, there is a narrow range of expression that an author can use to express the contents of the judicial opinions. This means that the copyright protection is thin.

In this case, to find infringement of the headnotes, there must be a verbatim reproduction or the headnotes and the accused memo questions must be virtually identical. You must only consider the protectable elements—elements that Thomson Reuters added that are above and the text of the judicial opinions—and determine if the ordinary reasonable viewer would believe that the defendant's work is a verbatim reproduction or virtually identical to the plaintiff's work as a

whole.  If Thomson Reuters has not proven that a memo question is virtually identical to a copyrightable headnote, you must find for the defendant.

 The defendant may also rebut the presumption of copying. If you find that the defendant has proved by a preponderance of evidence that the similarities between the defendant's work and the copyrighted work are due to similarities between the defendant's text and the original judicial text, your verdict should be for the defendant.

***Sources and Authorities*:**

9th Circuit Model Instruction 17.17-17.19; *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 914 (9th Cir. 2010) ("If there's only a narrow range of expression (for example, there are only so many ways to paint a red bouncy ball on blank canvas), then copyright protection is 'thin' and a work must be 'virtually identical' to infringe."); *Satava v. Lowry*, 323 F.3d 805, 812 (9th Cir. 2003) (glass-in-glass jellyfish sculpture only entitled to thin protection against virtually identical copying due to the narrow range of expression); *Advanta-STAR Auto. Research Corp. of Am. v. Search Optics*, LLC, 672 F. Supp. 3d 1035, 1049 (S.D. Cal. 2023) ("[W]hen a work is entitled to 'thin' protection, courts typically require 'virtual identity' rather than 'substantial similarity' to find copyright infringement.); *Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1172 (9th Cir. 1977) (Proof of access requires "an opportunity to view or to copy plaintiff's work."); *Art Attacks Ink, LLC v. MGA Ent. Inc.*, 581 F.3d 1138, 1143 (9th Cir. 2009) (requiring "a reasonable possibility, not merely a bare possibility"). *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 914 (9th Cir. 2010) ("If there's only a narrow range of expression (for example, there are only so many ways to paint a red bouncy ball on blank canvas), then copyright protection is 'thin' and a work must be 'virtually identical' to infringe."); *Satava v. Lowry*, 323 F.3d 805, 812 (9th Cir. 2003) (glass-in-glass jellyfish sculpture only entitled to thin protection against virtually identical copying due to the narrow range of expression); *Advanta-STAR Auto. Research Corp. of Am. v. Search Optics*, LLC, 672 F. Supp. 3d 1035, 1049 (S.D. Cal. 2023) ("[W]hen a work is entitled to 'thin' protection, courts typically require 'virtual identity' rather than 'substantial similarity' to find copyright infringement."); *Newton v. Diamond*, 388 F.3d 1189, 1193 (9th Cir. 2004); *Apple Comput.*, 35 F.3d at 1442; *Fisher v. Dees*, 794 F.2d 432, 434 n.2 (9th Cir. 1986); *Apple Comput., Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1443 (9th Cir. 1994) (The court must instruct the jury as to: (1) the non-protectable elements of the plaintiff's work, (2) the appropriate standard (virtually identical or substantially similar), and (3) that the jury may consider the work as a whole.); *Worth v. Selchow & Richter Co.*, 827 F.2d 569, 573 (9th Cir. 1987) ("The verbatim repetition of certain words in order to use the nonprotectible facts is also noninfringing; the game cards' repetition of words used by Worth to describe places, persons, and events constitutes 'mere *indispensable* expression' of particular facts or ideas. (emphasis in original)).

## 21. Copying—Key Number System Compilation

An owner can be entitled to copyright protection of a compilation.  A compilation is a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship. It may include uncopyrightable materials—such as facts, judicial opinions, or works whose copyrights have expired and entered the public domain—but the copyright only protects the compilation as a whole, not the uncopyrightable works that are part compilation. Moreover, the combination of unprotectable elements is eligible for copyright protection only if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship. If the unprotected elements of the copyright are so commonplace or so typical, they are not eligible for copyright protection. Moreover, where the plaintiff can demonstrate it owns a copyright in a compilation of factual materials, the copyright is highly functional, utilitarian, and dictated by external constraints inherent in the subject matter of the work. Thus, the copyright is said to be a "thin" copyright, only protecting against copying substantially all of the compilation.

The owner of a compilation may enforce the right to exclude others in an action for copyright infringement. However, because its alleged copyrights are thin, to prove infringement, it is not sufficient that the Thomson Reuters show that only part of the work was copied. Instead, you must find supersubstantial similarity or virtual identity between the key number system and the works accused on infringement. This requires you find that there was bodily appropriation of expression, or unauthorized use of substantially the entire work. By way of example, copying 80% of an entire compilation is insufficient for infringement of a thin copyright to a compilation. It must be substantially the entire work.

Thomson Reuters's key number system is a compilation of unprotectable elements, namely, words or short phrases covering judicial topics which have been known in the legal community for over 150 years. Within each of these judicial topics in the key number system, Thomson Reuters lists headnotes associated with cases. The key number system compilation. It is a thin copyright. To find a valid copyright in the key number system compilation, you must find that those unprotectable elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship and that they are not commonplace or typical in the field of law. To find infringement of Thomson Reuters's key number system, you must find that LegalEase or ROSS had access to the key number system and copied substantially all of the elements of the key number system.

***Sources and Authorities*:**

9th Circuit Model Instruction 17.16; 17 U.S.C. § 101 ("A 'compilation' is a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship."); 17 U.S.C.A. § 304(b) ("Any copyright still in its renewal term at the time that the Sonny Bono Copyright Term Extension Act becomes effective [1998] shall have a copyright term of 95 years from the date copyright was originally secured."); *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co*., 499 U.S. 340, 344, 349 (1991) (holding that factual compilations are sufficiently original to be copyrightable if choices as to selection and arrangement of facts are independently made by compiler but that the copyrights are "thin"); *Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir. 2003) ("[A] combination of unprotectable elements is eligible for copyright protection only if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship."); *Lamps Plus, Inc. v. Seattle Lighting Fixture Co.,* 345 F.3d 1140, 1146 (9th Cir. 2003) ("[The] mechanical combination of four preexisting ceiling-lamp elements with a preexisting table-lamp base did not result in the expression of an original work of authorship . . . ."); *Satava*, 323 F.3d at 811 (holding that combination of six unprotectable elements that were "so commonplace in glass-in-glass sculpture and so typical of jellyfish physiology" were not eligible for copyright protection); *Experian Info. Sols., Inc. v. Nationwide Mktg. Servs. Inc*., 893 F.3d 1176, 1186 (9th Cir. 2018) (affirming grant of summary judgment when defendant's database comprised at most 80 percent of plaintiff's copyrighted compilation); *id.* ("[W]e have repeatedly recognized in this circuit that when dealing with factual compilations, infringement cannot be based on a showing that only a part of the work has been copied. In the context of factual compilations, we have held that infringement should not be found in the absence of "bodily appropriation of expression," or "unauthorized use of substantially the entire item.") (quoting *Harper House, Inc. v. Thomas*

*Nelson, Inc.*, 889 F.2d 197, 205 (9th Cir. 1989)); *Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 214 (3d Cir. 2002) (The materials are also highly functional, utilitarian, and "dictated by external constraints" inherent in the subject matter of the work); *TransWestern Pub. Co. LP v. Multimedia*, 133 F.3d 773, 776-77 (10th Cir. 1998) ("'[I]f substantial similarity is the normal measure required to demonstrate infringement 'supersubstantial' similarity must pertain when dealing with 'thin' works.'" (quoting 4 Nimmer & Nimmer, Nimmer on Copyright § 13.03[A] at 13-28 (1977)); 4 Nimmer & Nimmer, Nimmer on Copyright § 13.03[A][4] (noting that supersubstantial similarity can be expressed as virtual identity);  *Matthew Bender & Co. v. W. Publ'g Co.*, 158 F.3d 693, 707 (2d Cir. 1998) ("West has a thin copyright in its compilations."); *Key Publ'ns, Inc. v. Chinatown Today Publ'g Enters., Inc.*, 945 F.2d 509, 514 (2d Cir. 1991) (in evaluating a compilation, the court must determine "whether the arrangement. . . viewed in the aggregate, is original."); *Ross, Brovins & Oehmke, P.C. v. Lexis Nexis Grp.*, 463 F.3d 478, 483 (6th Cir. 2006) (noting that "[s]ubsequent cases have interpreted Feist to mean that compilation copyright protection is very limited and usually requires substantial verbatim copying" and finding 61% copying insufficient); *Schoolhouse, Inc. v. Anderson*, 275 F.3d 726, 729-30 (8th Cir. 2002) (74% copied of a compilation not sufficient); *Golan v. Gonzales*, 501 F.3d 1179, 1189 (10th Cir. 2007) ("When the copyright expires at the end of the statutory period, the work becomes part of the public domain. . . . no individual may copyright a work in the public domain").

### 22. Secondary Liability—Vicarious Infringement
### —Elements and Burden of Proof

If you find that LegalEase infringed the plaintiff's copyright in the asserted headnotes or key number system, you must determine whether ROSS vicariously infringed that copyright. The plaintiff has the burden of proving each of the following elements by a preponderance of the evidence:

1.  Thomson Reuters owns a valid copyright to each of the headnotes it asserts LegalEase infringes well as a valid copyright to the key number system;

2.  LegalEase copied original expression from these headnotes and the key number system, which requires the showing in Instructions 20-22;

3.  ROSS directly benefitted financially from the infringing activity of LegalEase;

4.  ROSS had the right and ability to supervise and control the infringing activity of LegalEase; and

5.  ROSS exercised practical control over LegalEase's copying of the headnotes.

To show an ability to supervise infringing conduct, a plaintiff must show that the defendant had the technical ability to identify and remove infringements.

If you find that the plaintiff has proved each of these elements, your verdict should be for the plaintiff if you also find that LegalEase infringed plaintiff's copyright. If, on the other hand, the plaintiff has failed to prove any of these elements, your verdict should be for the defendant, ROSS.

***Sources and Authorities*:**

9th Circuit Model Instruction 17.20; *Leonard v. Stemtech Int'l Inc*, 834 F.3d 376, 386 (3d Cir. 2016) ("To prove contributory and vicarious infringement, a plaintiff must first show direct infringement by a third party."); *id.* at 388 ("To establish vicarious infringement, a plaintiff must prove that the defendant had (1) the right and ability to supervise or control the infringing activity; and (2) a direct financial interest in such activities."); *id.* at 389 (the defendant must have the "practical ability" to control the third party); *VHT, Inc. v. Zillow Grp., Inc*., 918 F.3d

723, 746 (9th Cir. 2019) (noting defendant's "failure to change its operations to avoid assisting [users] to distribute . . . infringing content . . . is not the same as declining to exercise a right and ability to make [third parties] stop their direct infringement." (quoting *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1175 (9th Cir. 2007))).

### 23. Secondary Liability—Contributory Infringement
### —Elements and Burden of Proof

A defendant may be liable for copyright infringement engaged in by another if it knew or had reason to know of the infringing activity and intentionally induced and materially contributed to that infringing activity.

If you find that LegalEase infringed the plaintiff's copyright in the asserted headnotes or key number system, you must determine whether ROSS contributorily infringed that copyright. The plaintiff has the burden of proving both of the following elements by a preponderance of the evidence:

1.   Thomson Reuters owns a valid copyright to each of the headnotes it asserts LegalEase infringes well as a valid copyright to the key number system;

2.   LegalEase copied original expression from these headnotes and the key number system, which requires the showing in Instructions 20-22;

3.   the defendant knew or had reason to know of the infringing activity of LegalEase; and

4.   the defendant intentionally induced and materially contributed to LegalEase's infringing activity.

To show the defendant knew or had reason to know of the infringing activity, plaintiff must show that ROSS had actual knowledge of specific acts of infringement or willful blindness of specific facts, which requires showing that ROSS took specific steps to avoid acquiring knowledge.

The defendant's intent to induce the infringing activity must be shown by clear expression of that intent or other affirmative steps taken by the defendant to encourage the activity.

If you find that LegalEase infringed the plaintiff's copyright and you also find that the plaintiff has proved both of these elements, your verdict should be for the plaintiff. If, on the other hand, the plaintiff has failed to prove either or both of these elements, your verdict should be for the defendant.

***Sources and Authorities*:**

9th Circuit Model Instruction 17.21; *Leonard v. Stemtech Int'l Inc*, 834 F.3d 376, 386 (3d Cir. 2016) ("To prove contributory and vicarious infringement, a plaintiff must first show direct infringement by a third party."); *id.* at 387 ("To establish a claim of contributory infringement, a plaintiff must show: (1) a third party directly infringed the plaintiff's copyright; (2) the defendant knew that the third party was directly infringing; and (3) the defendant materially contributed to or induced the infringement."); *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 940, n. 12 (2005) ("[I]n the absence of evidence of intent, a court would be unable to find contributory infringement liability merely based on a failure to take affirmative steps to prevent infringement, if the device were otherwise capable of substantial noninfringing uses."); *id.* at 936-37 ("[O]ne who distributes a device with the object of promoting its use to infringe a copyright, as shown by clear expression or other affirmative steps to foster infringement, is liable for the resulting acts of infringement by third parties."); *Columbia Pictures Industries, Inc. v. Fung,* 710 F.3d 1035-36 (9th Cir. 2013) ("As for the necessary 'clear expression or other affirmative steps' evidence indicative of unlawful intent, the most important is Fung's active encouragement of the uploading of torrent files concerning copyrighted content."); *Luvdarts, LLC v. AT & T Mobility, LLC*, 710 F.3d 1068, 1072-73 (9th Cir. 2013) (contributory infringement requires "actual knowledge of specific acts of infringement" or "[w]illful blindness of specific facts . . . [such that the defendant] took active steps to avoid acquiring knowledge.");.

### 24. Copyright—Affirmative Defense—Fair Use (17 U.S.C. § 107)

Now, I will explain what fair use means under the law.

One who is not the owner of the copyright may use the copyrighted work in a reasonable way under the circumstances without the consent of the copyright owner. Such use of a copyrighted work is called a fair use. The owner of a copyright cannot prevent others from making a fair use of the owner's copyrighted work.

In determining whether the use made of the work was fair, you should consider the following factors:

(1)     the purpose and character of the use, including whether the use is of a commercial nature or is for nonprofit educational purposes and whether the use was transformative;

(2)     the nature of the copyrighted work;

(3)     the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4)     the effect of the use upon the potential market for or value of the copyrighted work.

Permission to use the copyrighted work is irrelevant to fair use and being denied permission to use a work does not weigh against a finding of fair use.

You will evaluate each of the following factors and provide a verdict related to each factor.

***Sources and Authorities*:**

9th Circuit Model Instruction 17.22; 17 U.S.C. § 107; *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 560 (1985); *Campbell*, 510 U.S. at 585 n.18 ("If the use is otherwise fair, then no permission need be sought or granted. Thus, being denied permission to use a work does not weigh against a finding of fair use."); *Video Pipeline, Inc. v. Buena Vista Home Ent., Inc.*, 342 F.3d 191, 197 (3d Cir. 2003).

## 25. Copyright—Affirmative Defense—Fair Use
### Factor 1 – Purpose and Character of the Use

The first statutory factor concerns the purpose and character of the accused use.

This factor includes these issues: (1) whether and to what extent the accused use serves a commercial purpose, which weighs against fair use, versus a nonprofit educational purpose, which weighs in favor of fair use, and (2) whether and to what extent the accused work is "transformative," which supports fair use.

A use is transformative if it adds something new, with a further purpose or different character, altering the first use with new expression, meaning, or message rather than merely superseding the objects of the original creation. New works have been found transformative when they use copyrighted material for purposes distinct from the purpose of the original material. A use is considered transformative only where a defendant changes a plaintiff's copyrighted work or uses copyrighted elements for a different purpose such that the original work is transformed into a new creation.

By way of example, copying and reverse engineering software for a video game console in order to create a new gaming platform on a computer has been found to be fair use in part because the software was transformed into an entirely new and different product.

Intermediate use is the production of an intermediate copy of a copyrighted work undertaken to help produce a transformative work.

In evaluating the first statutory factor with respect to ROSS, you must evaluate whether ROSS used the memos from LegalEase to translate human language into something understandable by a computer as a step in the process of trying to develop ROSS's new, distinct system. You must also evaluate whether LegalEase's production of the memo questions was an

intermediate use, used by ROSS to analyze language patterns its AI and create its software product.

***Sources and Authorities*:**

17 U.S.C. § 107(1); *Cisco Systems, Inc., v. Arista Networks, Inc.*, Final Jury Instructions, 5: 14-cv-5344, at 26 (Instruction No. 49); *Campbell*, 510 U.S. at 579 (transformative looks at "whether the new work merely supersedes the objects of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message."); *Google LLC*, 141 S. Ct. at 1203 (explaining that "'transformative' . . . .describe[s] a copying use that adds something new and important"); *Dr. Seuss, Enters., L.P. v. Comicmix LLC*, 983 F.3d 443, 445 (9th Cir. 2020) (discussing the benchmarks of transformative use); *Andy Warhol Found. for Visual Arts, Inc. v. Goldsmith,* 143 S. Ct. 1272, 1282 (2023); *A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1015 (9th Cir. 2001); *Elvis Presley Enters.*, 349 F.3d at 629 ("Courts have described new works as 'transformative' when works use copyrighted material for purposes distinct from the purpose of original material."); *L.A. News Serv. v. CBS Broad., Inc*., 305 F.3d 924, 939 (9th Cir. Cal. 2002) ("[T]he most important component of the inquiry into the 'purpose and character of the use' is the question whether the allegedly fair use was 'transformative,' i.e., whether the second use 'adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message.' 'The more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use.'") (internal citations omitted); *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1175-76 (9th Cir. Cal. 2013) ("The Supreme Court has stated that the central purpose of [the first fair use] factor is to see whether and to what extent the new work is transformative.") (internal citations and quotations omitted); *Perfect 10, Inc. v. Amazon.com, Inc*., 508 F.3d 1146, 1165 (9th Cir. 2007) ("The fact that Google incorporates the entire Perfect 10 image into the search engine results does not diminish the transformative nature of Google's use. As the district court correctly noted, we determined in Kelly that even making an exact copy of a work may be transformative so long as the copy serves a different function than the original work."); *Seltzer v. Green Day, Inc*., 725 F.3d 1170, 1176 (9th Cir. 2013) (use is transformative if it "adds value to the original—if the quoted matter is used as raw material, transformed in the creation of new information, new aesthetics, new insights and understandings" and that the addition of such value "is the very type of activity that the fair use doctrine intends to protect for the enrichment of society.") (quoting P. Leval, Toward a Fair Use Standard, 103 HARV. L. REV. 1105 (1990)); *Campbell v. Acuff-Rose Music, Inc*., 510 U.S. 569, 579 (1994) ("Although such transformative use is not absolutely necessary for a finding of fair use, the goal of copyright, to promote science and the arts, is generally furthered by the creation of transformative works. Such works thus lie at the heart of the fair use doctrine's guarantee of breathing space within the confines of copyright, and the more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use.") (internal quotations and citations omitted); *Sony Computer Ent., Inc. v. Connectix Corp.*, 203 F.3d 596, 600 n1., 602-10 (9th Cir. 2000) (applying the § 107 fair use factors and holding that "Connectix's reverse engineering of Sony's BIOS extracted from a Sony PlayStation console purchased by Connectix engineers is protected as a fair use"); 4 Nimmer on Copyright § 13F.05[D][1](

The foregoing reference to "intermediate use" raises to the fore another aspect of commercial utilization. Technically, an act of reproduction impinges on the copyright owner's rights even if not the subject of public distribution. Nonetheless, that conduct frequently unfolds for a legitimate purpose, such as reverse engineering, education, or time-shifting. When the technical act of reproduction is defended as fair use, it is appropriate to evaluate its commercial status on its own terms. Thus, for example, an intermediate copy undertaken to study software techniques should be judged non-commercial, notwithstanding that it serves as one link in a chain to produce a later product to compete commercially with plaintiff's.)

## 26. Copyright—Affirmative Defense—Fair Use
## Factor 2 – Nature of Copyrighted Work

The second statutory factor is the nature of the copyrighted work. This factor considers the extent to which the work is informational or creative. This factor weighs against fair use if a work is purely creative, and it weighs in favor of fair use if a work is purely informational or functional. The copyrights at issue here are information and functional.

***Sources and Authorities*:**

17 U.S.C. § 107(2); *Cisco Systems, Inc., v. Arista Networks, Inc.*, Final Jury Instructions, 5: 14-cv-5344, at 27 (Instruction No. 54); *Campbell v. Acuff-Rose Music, Inc*., 510 U.S. 569, 586 (1994) ("This factor calls for recognition that some works are closer to the core of intended copyright protection than others, with the consequence that fair use is more difficult to establish when the former works are copied.") (internal citations omitted); *Sega Enters., Ltd. v. Accolade, Inc*., 977 F.2d 1510, 1527 (9th Cir. 1992) ("[I]f a work is largely functional, it receives only weak protection."); *Dr. Seuss, Enters., L.P. v. Comicmix* LLC, 983 F.3d 443, 456 (9th Cir. 2020) (This factor "typically has not been terribly significant in the overall fair use balancing."); D.I. 547, at 21-22.

### 27. Copyright—Affirmative Defense—Fair Use
### Factor 3 – Amount and Substantiality of the
### Portion Used

The third statutory factor is the amount and substantiality of the portion used in relationship to the copyrighted work as a whole, which concerns how much of the overall copyrighted work was used by the accused infringer. Analysis of this factor is viewed in the context of Thomson Reuter's asserted headnotes and key number system. Wholesale copying does not preclude fair use per se but it militates against a finding of fair use. Even a small part may be qualitatively the most important part of a work. If, however, the secondary user only copies as much as is necessary for a transformative use, then this factor will not weigh against him or her. This factor analyzes the amount of copying and whether the copying took the original work's "heart."

The extent of permissible copying varies with the purpose and character of the use, which relates back to the first factor. In assessing this third factor, both the quantity of the material used and the quality or importance of the material used should be considered.

For the headnotes, must determine whether LegalEase and ROSS copied the original expression of original headnotes. You must also determine if LegalEase and ROSS copied more than they needed to train ROSS's AI. ROSS need not prove that each headnote was strictly necessary, it must show that the scale of copying (if any) was practically necessary and furthered its transformative goals.

***Sources and Authorities*:**

17 U.S.C. § 107(3); *Cisco Systems, Inc., v. Arista Networks, Inc.*, Final Jury Instructions, 5: 14-cv-5344, at 28 (Instruction No. 55); *Dr. Seuss, Enters., L.P. v. Comicmix* LLC, 983 F.3d 443, 456 (9th Cir. 2020) (This factor considers "the quantitative amount and the qualitative value of the original work used in relation to the justification for that use."); *Harper House, Inc. v. Thomas Nelson, Inc.*, 5 F.3d 536, 1993 WL 346546 at 25 *2 (9th Cir. 1993) (comparisons of individual portions (pages) of parties' works rather than the entire works is "inappropriate and misleadingly prejudicial"; works must be compared as a whole); *NXIVM Corp. v. The Ross*

*Institute*, 364 F.3d 471, 481 (2d Cir. 2004) (fair use analysis under third factor must be based on entire work and not individual "modules"); *Tresóna Multimedia, LLC v. Burbank High Sch. Music Ass'n*, 953 F.3d 638, 651 (9th Cir. 2020) (noting that although "qualitatively significant" portion of original work was used, because of transformative nature of new material, this factor "did not weigh against fair use"); ECF No. 547, at 22-23 ("I consider the amount of copying as well as whether the copying took the original work's 'heart.'" (quoting *Campbell*, 510 U.S. at 589).

## 28. Copyright—Affirmative Defense—Fair Use
### Factor 4 – Effect on Potential Market

The fourth statutory factor is the effect of the accused infringer's use on the potential market for or value of the copyrighted work. This factor militates against fair use if the accused use materially impairs the marketability or value of the copyrighted work. This factor considers whether the accused work is offered or used as a substitute for the original copyrighted work. This factor considers not only the extent of any market harm caused by the accused infringer's actions but also whether unrestricted and widespread use of the copyrighted materials of the sort engaged in by the accused infringer would result in a substantially adverse impact on the potential market for the copyrighted work. If the use of the copyrighted materials is transformative, market substitution is at least less certain, and market harm may not be presumed.

You must determine whether ROSS's AI product is a research platform that serves a different purpose than Westlaw. You must also there is a market for each of Thomson Reuter's asserted headnotes as well as the key number system to use for training AI for legal research and whether Thomson Reuters ever participated or would participate in that market and whether ROSS intended to enter the training AI market Finally, you must determine whether there is a public benefit to ROSS's AI-based product.

***Sources and Authorities*:**

17 U.S.C. § 107(4); *Cisco Systems, Inc., v. Arista Networks, Inc.*, Final Jury Instructions, 5: 14-cv-5344, at 29 (Instruction No. 56); *Sony Computer Ent. Am. Inc. v. Bleem*, 214 F.3d 1022, 1026-27 (9th Cir. 2000) (noting that the market effect "factor may be the most important, [but] all factors must be considered, and the commercial nature of the copies is just one element"; use for comparative advertising can support first fair use factor but negate fourth fair use factor); *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.,* 109 F.3d 1394, 1403 (9th Cir. 1997) (balancing public benefit that will result from the defendant's use against personal gain the copyright owner will receive if use is denied); *Solid Oak Sketches, LLC v. 2K Games, Inc.,* 449 F. Supp. 3d 333, 349 (S.D.N.Y. 2020) (This inquiry focuses on "whether the copy brings to the marketplace a competing substitute for the original, or its derivative, so as to deprive the rights holder of

significant revenues because of the likelihood that potential purchasers may opt to acquire the copy in preference to the original."); D.I. 547, at 24-26.

### 29. Copyright—Affirmative Defense —Merger

Copyright law provides that an author can usually copy unprotected matter but not copy the manner another author selected for expressing a particular matter. But there's an exception to this prohibition if there's only one way, or only a few ways, of expressing the ideas or other unprotected matter in a work. In such cases, an author may copy the expression in the work to the extent necessary to express the unprotected matter. ROSS claims that this exception applies in this case.

This exception is called the "merger doctrine" because when there is only one way of expressing unprotected matter, the expression is said to have "merged" with the unprotected matter.

To show that Thomson Reuter's copyrighted works are subject to merger, ROSS must show that, at the time Thomson Reuter created the works, Thomson Reuter had only one way, or very few ways, to express the ideas underlying the elements the specific words used in the asserted headnotes and key number system. Material in an original work—even material that serves a function—is not subject to merger as long as the author had more than a few ways to express the underlying idea.

ROSS has the burden of proving this defense by a preponderance of the evidence.

***Sources and Authorities*:**

9th Circuit Model Instruction 17.19; 11th Circuit Model Instruction 9.11; *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1361 (Fed. Cir. 2014) (1361 ("First, we agree that merger cannot bar copyright protection for any lines of declaring source code unless [the author] had only one way, or a limited number of ways, to write them. The evidence showed that [the author] had 'unlimited options as to the selection and arrangement of the 7000 lines Google copied.' This was not a situation where [the author] was selecting among preordained names and phrases to create its packages… Because 'alternative expressions [we]re available,' there is no merger.").

## 30. Copyright—Affirmative Defense— Scènes À Faire

Scènes à faire is an affirmative defense to copyright infringement.

Under the doctrine of scènes à faire, which means "scene setting," a standard or typical theme, setting, or background that is common to a large number of works, such as a common plot device, is unprotected matter that may be copied. For example, the doctrine applies to plot devices, incidents, characters, or settings that are, as a practical matter, indispensable, or at least standard, in the treatment of certain subjects. These elements of a work are given only limited copyright protection, because they are not likely to be original and because, as a type of idea, they are necessary for the creation of other works.

To show that portions of Thomson Reuters's content are scènes à faire material, ROSS must show that, at the time Thomson Reuters created it headnotes and organizational system— not at the time of any copying—external factors other than Thomson Reuters's creativity dictated that Thomson Reuters select, arrange, organize and design its original features in the manner it did based on the judicial opinions. The scènes à faire doctrine depends on the circumstances presented to the creator at the time of creation, not the circumstances presented to the copier at the time it copied.

ROSS has the burden of proving this defense by a preponderance of the evidence.

***Sources and Authorities*:**

*Cisco Systems, Inc., v. Arista Networks, Inc.*, Final Jury Instructions, 5: 14-cv-5344, at 32 (Instruction No. 61); ABA Model Jury Instructions, Copyright, Trademark, and Trade Dress Litigation, Instruction 1.4.8; 4-13 Nimmer on Copyright § 13.03[B][4].

### 31. Copyright—Affirmative Defense— Copyright Misuse[1]

Copyrights are a limited monopoly granted by the government. Copyright misuse is an affirmative defense to copyright infringement that prevents holders of copyrights from leveraging or extending that limited monopoly to allow them control of areas outside the monopoly.

A defendant can prove copyright misuse by demonstrating one of the following: (1) a violation of the antitrust laws; (2) that the copyright owner otherwise illegally extended its monopoly; or (3) that the copyright owner violated the public policies underlying the copyright laws. A demonstration of any one of these three can be sufficient for you to find copyright misuse. Copyright misuse can be applied where a copyright owner seeks to prevent others from competing by asserting its copyright to encompass works or things that are neither copyrightable nor copyrighted.

If you find by the preponderance of the evidence that plaintiffs misused their copyright to improperly extend their limited monopoly, you must find for defendant ROSS.

***Sources and Authorities*:**

*Video Pipeline, Inc. v. Buena Vista Home Ent., Inc.*, 342 F.3d 191, 204 (3d Cir. 2003), as amended (Sept. 19, 2003) (Copyright misuse is an affirmative defense which "extends from the equitable principle that courts may appropriately withhold their aid where the plaintiff is using the right asserted contrary to the public interest. Misuse is not cause to invalidate the copyright or patent, but instead precludes its enforcement during the period of misuse."); *FMC Corp. v. Control Sols., Inc.*, 369 F. Supp.2d 539, 580 (E.D. Pa. 2005) (noting the "Third Circuit has affirmatively recognized the copyright misuse doctrine" as an affirmative defense); *Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1157 (9th Cir. 2011) (the purpose of copyright misuse defense is to prevent "holders of copyrights from leveraging their limited monopoly to allow them control

---

[1] Because copyright misuse is an equitable defense, ROSS believes it should be decided by the Court rather than the jury. *See Video Pipeline, Inc. v. Buena Vista Home Ent., Inc.*, 342 F.3d 191, 204, as amended (Sept. 19, 2003) (3d Cir. 2003) ("The misuse doctrine extends from the equitable principle that courts 'may appropriately withhold their aid where the plaintiff is using the right asserted contrary to the public interest.'" (quoting *Morton Salt Co. v. G.S. Suppiger Co.*, 314 U.S. 488, 492 (1942)). However, because the parties have not briefed this specific issue, an instruction is included out of an abundance of caution.

of areas outside the monopoly."); *Vernor v. Autodesk, Inc.*, 621 F.3d 1102, 1115 (9th Cir. 2010) ("Copyright misuse is an equitable defense to copyright infringement which precludes the copyright holder's enforcement of its copyright during the misuse period."); *Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1157 (9th Cir. 2011) (noting that the purpose of the defense is to prevent copyright holders "from leveraging their limited monopoly to allow them control of areas outside the monopoly."); *Lasercomb Am., Inc. v. Reynolds*, 911 F.2d 970, 978 (4th Cir. 1990) ("The question is not whether the copyright is being used in a manner violative of antitrust law, . . . but whether the copyright is being used in a manner violative of the public policy embodied in the grant of a copyright."); *Soc'y of Holy Transfiguration Monastery, Inc. v. Gregory*, 689 F.3d 29, 65 (1st Cir. 2012), cert. denied, 133 S. Ct. 1315, 185 L. Ed. 2d 195 (2013). (noting the defense is often applied when a defendant can prove either: (1) a violation of the antitrust laws; (2) that the copyright owner otherwise illegally extended its monopoly; or (3) that the copyright owner violated the public policies underlying the copyright laws; *Omega S.A. v. Costco Wholesale Corp.*, 776 F.3d 692, 700 (9th Cir. 2015) (affirming the district court's finding of copyright misuse where the plaintiff attempted to assert copyright over items that "are 'neither copyrightable nor copyrighted.'") (quoting *Assessment Techs. of WI, LLC v. WIREdata, Inc.*, 350 F.3d 640, 641 (7th Cir. 2003)); 4 Nimmer on Copyright § 13.09 (2022).

### 32. Tortious Interference with Contract

Thomson Reuters also contends that ROSS tortiously interfered with Thomson Reuters's contract with a third party, LegalEase. Specifically, Thomson Reuters alleges that ROSS induced LegalEase to breach two contract provisions by (1) using a bot to scrape Westlaw content, and (2) sharing passwords.

To prove tortious interference with contract, Thomson Reuters must prove by the preponderance of the evidence:

1.   there was a contract between LegalEase and Thomson Reuters;

2.   ROSS knew about the contract;

3.   an intentional act by ROSS was a significant factor in causing LegalEase to breach the contract;

4.   ROSS's act was without justification; and

5.   it caused injury to Thomson Reuters.

I have found there was a contract between LegalEase and Thomson Reuters and that if the allegations are true, Thomson Reuters was harmed. Therefore, you only need to evaluate elements 2, 3, and 4.

In determining whether ROSS knew about the contract, Ross must have had actual or imputed knowledge of the substance of the contract rights at the time of its work with LegalEase, even if it did not know about the exact terms.

An intentional act by ROSS was a significant factor in causing LegalEase to breach the contract if Thomson Reuters has shown ROSS (1) intended to interfere or (2) intended to reach a result with knowledge that it would interfere with the contract, even if interference was not the main purpose. In evaluating this element, you must determine whether Ross knew LegalEase was breaching or going to breach by using a bot or sharing passwords.

Whether ROSS's act was without justification is characterized by as doing something not sanctioned by the rules of the game. In evaluating this element, end-running or exploiting a loophole is not necessarily the same as violating the rules of the game. In evaluating this element, you are to consider and balance the following seven factors: (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference and (g) the relations between the parties.

If you find that Thomson Reuters has failed to show any of these elements by the preponderance of the evidence, you must find for ROSS.

***Sources and Authorities*:**

D.I. 547, at 30-33; *WaveDivision Holdings, LLC v. Highland Cap. Mgmt., L.P.*, 49 A.3d 1168, 1174-76 (Del. 2012); Restatement (Second) of Torts §§ 766 cmt. J, 767 (Am. L. Inst. 1965); *Avaya Inc., RP v. Telecom Labs, Inc.*, 838 F.3d 354, 383 (3d Cir 2016).

### 33. Copyright—Damages (17 U.S.C. § 504)

If you find for the plaintiff on the plaintiff's copyright infringement claim, you must determine the plaintiff's damages.  The plaintiff is entitled to recover the actual damages suffered as a result of the infringement to the extent the plaintiff can demonstrate the infringement caused those damages.  In addition, the plaintiff is also entitled to recover any profits of the defendant that the plaintiff can demonstrate are attributable to the infringement. The plaintiff must prove damages by a preponderance of the evidence.

***Sources and Authorities*:**

9th Circuit Model Instruction 17.32; 17 U.S.C. § 504(b); *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 708 (9th Cir. 2004) (noting additionally that "actual damages must be suffered 'as a result of the infringement,' and recoverable profits must be 'attributable to the infringement'"); *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 512 n.5 (9th Cir. 1985)**.**

## 34. Copyright—Damages—Actual Damages
## (17 U.S.C. § 504(b))

The plaintiff is entitled to recover the actual damages suffered as a result of the infringement, but only to the extent the damages can be shown to be tied to each specific headnote infringed or the key number system.  Actual damages mean the amount of money adequate to compensate the copyright owner for the reduction of the fair market value of the copyrighted work caused by the infringement. In determining actual damages, you should consider the  following:

1. The amount a willing buyer would have been reasonably required to pay a willing seller at the time of the infringement for the actual use made by the defendant of the plaintiff's work; and

2. The profits the plaintiff should have received for any sales lost because of the infringement. Profits are the gross revenue the plaintiff would have made on sales that did not occur because of the infringement minus additional expenses the plaintiff would have incurred in making those sales.

***Sources and Authorities*:**

9th Circuit Model Instruction 17.33; 17 U.S.C. § 504(b); *Wall Data Inc. v. L.A. Cnty. Sheriff's Dep't*, 447 F.3d 769, 787 (9th Cir. 2006) (noting this instruction "properly states the law of damages in a copyright infringement suit" and is "in line with our circuit's caselaw."); *Leonard v. Stemtech Health Scis., Inc.*, No. 08-67-LPS, 2015 U.S. Dist. LEXIS 106512, at *20-21 (D. Del. Aug. 13, 2015) (Actual damages are assessed "from the point of view of the copyright owner and 'compensate the [copyright] owner for any harm he suffered by reason of the infringer's illegal act.").

## 35. Copyright—Damages—Defendant's Profits[2]
## (17 U.S.C. § 504(b))

In addition to actual damages, the plaintiff is entitled to any profits of the defendant attributable to the infringement. You may not include in an award of profits any amount that you took into account in determining actual damages.

You may make an award of the defendant's profits only if you find that the plaintiff showed a causal nexus between the infringement and the profits generated indirectly from the infringement. That requires the plaintiff to demonstrate that but for the infringement, ROSS would not have made the profits. To disgorge profits, each profit earned must be causally connected to the infringement.

The defendant's profit is determined by subtracting all expenses from the defendant's gross revenue.

The defendant's gross revenue is all of the defendant's receipts from the sale of a product containing or using the copyrighted work. The plaintiff has the burden of proving the defendant's gross revenue by a preponderance of the evidence.

Expenses are all operating costs, overhead costs, and production costs incurred in

---

[2] Although asserte by Plaintiffs, isgorgement of profits is not an appropriate remedy for tortious interference with contract claims. As stated in the Delaware Pattern Jury Instructions, § 22.18, only actual damages suffered by the plaintiff are recoverable. *Id.* (citing *De Bonaventura v. Nationwide Mut. Ins.*, Del. Ch., 419 A.2d 942 (1980),aff'd, Del. Supr., 428 A.2d 1151 (1981); *Bowl-Mor Company Inc. v. Brunswick Corp.*, Del. Ch., 297 A.2d 61, appeal dismissed, 297 A.2d 67 (1972); M*urphy v. Godwin*, Del. Super., 303 A.2d 668 (1973); RESTATEMENT (SECOND) OF TORTS ' 774A (1965)). Thomson Reuters's expert cites a single Delaware case from 2010 for the proposition that disgorgement of profits is an available remedy under Delaware law, but that case notes that Delaware courts have not adopted it as a remedy, and instead cites to a number of out of jurisdiction cases for the proposition. *See Great Am. Opportunities, Inc. v. Cherrydale Fundraising, LLC*, Civil Action No. 3718-VCP, 2010 Del. Ch. LEXIS 15, at *104, n.303 (Del. Ch. Jan. 29, 2010). Since Thomson Reuters has not offered a theory of recovery based on actual damages for its intentional interference with contract claim, Thomson Reuters should not be entitled to damages. Portions of the instruction related to intentional interference with contract are only provided out of an abundance of caution.

producing the defendant's gross revenue.  The defendant has the burden of proving the defendant's expenses by a preponderance of the evidence.

Unless you find that a portion of the profit from the sale of a product containing or using the copyrighted work is attributable to factors other than use of the copyrighted work, all of the profit is to be attributed to the infringement.  The defendant has the burden of proving the percentage of the profit, if any, attributable to factors other than infringing the copyrighted work.

***Sources and Authorities*:**

9th Circuit Model Instruction 17.34; 17 U.S.C. § 504(b) ("In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work."); *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 711 (9th Cir. 2004) (The statute "creates a two-step framework for recovery of indirect profits: (1) the copyright claimant must first show a causal nexus between the infringement and the [infringer's] gross revenue; and (2) once the causal nexus is shown, the infringer bears the burden of apportioning the profits that were not the result of infringement."); *id.* at 714 n.10 (approving jury instruction stating: "Indirect profits have a less direct connection or link to the infringement. Plaintiff seeks indirect profits in this case. To recover indirect profits, Plaintiff must establish a causal relationship between the infringement and the profits generated indirectly from such infringement."); *Frank Music Corp.*, 886 F.2d at 1548 (deducting direct costs of production from the defendant's gross profit); *Kamar Int'l, Inc. v. Russ Berrie & Co.*, 752 F.2d 1326, 1332 (9th Cir. 1984) (allowing deduction of overhead when the infringer demonstrated that it actually assisted production, distribution, or sale of the infringing product).

### 36. Copyright—Damages—Innocent Infringement
### (17 U.S.C. § 504(c)(2))

An infringement is considered innocent when the defendant has proved both of the

following elements by a preponderance of the evidence:

First, the defendant was not aware that its acts constituted infringement of the

copyright; and

Second, the defendant had no reason to believe that its acts constituted an infringement

of the copyright.

**Authority**

9th Circuit Model Instruction 17.36**;** 17 U.S.C. § 504(c)(2); *L.A. News Serv. v. Reuters*
Television *Int'l.*, *Ltd.*, 149 F.3d 987, 995 (9th Cir. 1998) ("Whether the defendants'
infringement was innocent is a factual determination.").

### 37. Copyright—Damages—Willful Infringement (17 U.S.C. § 504(c)(2))

An infringement is considered willful when the plaintiff has proved both of the following elements by a preponderance of the evidence:

First, the defendant engaged in acts that infringed the copyright; and

Second, the defendant knew that those acts infringed the copyright, or the defendant acted with reckless disregard for, or willful blindness to, the copyright holder's rights.

**Authority**

9th Circuit Model Instruction 17.37; 17 U.S.C. § 504(c)(2); *Unicolors, Inc. v. Urban Outfitters, Inc.,* 853 F.3d 980, 991 (9th Cir. 2017)("[T]o prove 'willfulness' under the Copyright Act, the plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of 'reckless disregard' for, or 'willful blindness' to, the copyright holder's rights." (quoting Wash. Shoe Co. v. A-Z Sporting Goods Inc., 704 F.3d 668, 674 (9th Cir. 2012) (brackets in original)).

### 38. Tortious Interference with Contract—Damages—Punitive Damages[3]

If you decide to award compensatory damages to Thomson Reuters for its tortious interference with contract claim, you must determine whether ROSS is also liable to Thomson Reuters for punitive damages. In assessing whether punitive damages are appropriate, you may only consider ROSS's conduct related to the tortious interference with contract claim—that is, ROSS's alleged conduct related to using a bot to scrape Westlaw content and sharing passwords. You may not consider conduct related to the copyrights or provisions in the contract with LegalEase related to copyrights.

Punitive damages are different from compensatory damages. Compensatory damages are awarded to compensate the plaintiff for the injury suffered. Punitive damages, on the other hand, are awarded in addition to compensatory damages.

You may award punitive damages to punish a party for outrageous conduct and to deter a party, and others like it, from engaging in similar conduct in the future. To award punitive damages, you must find by a preponderance of the evidence that ROSS acted intentionally. Punitive damages cannot be awarded for mere inadvertence, mistake, errors of judgment and the like, which constitute ordinary negligence.

---

[3] This instruction is provided by plaintiffs out of an abundance of caution, as punitive damages are not available in this case. Thomson Reuters only seeks punitive damages related to its common law tortious interference with contract claim, and with respect to the claim, is only seeking disgorgement of profits, not actual or compensatory damages. As stated in the pattern Delaware jury instruction, punitive damages are only available for compensatory awards. *See also Stephenson v. Capano Dev.*, Inc., 462 A.2d 1069, 1077 (Del. 1983) ("The award of punitive damages can not be made unless the plaintiff also receives compensatory damages."). Moreover, "[t]he amount of punitive damages should be reasonably proportionate to the actual damages," *Id.* Thus, punitive damages would not be available Plaintiffs are only seeking disgorgement of profits, which sounds in equity and is not compensatory.  Because Thomson Reuters is not seeking compensatory damages, but instead disgorgement of profits, which is an equitable remedy, it is not entitled to punitive damages. *See RCS Creditor Tr. v. Schorsch*, No. 2017-0178-SG, 2017 Del. Ch. LEXIS 820, at *48 (Del. Ch. Nov. 30, 2017) ("equitable remedy of disgorgement").

Intentional conduct means it is the person's conscious object to engage in conduct of that nature. Reckless conduct is a conscious indifference that amounts to an "I don't care" attitude. Reckless conduct occurs when a person, with no intent to cause harm, performs an act so unreasonable and dangerous that it knows or should know that there is an eminent likelihood of harm that can result. Each requires that the defendant foresee that its conduct threatens a particular harm to another.

The law provides no fixed standards for the amount of punitive damages.

In determining any award of punitive damages, you may consider the nature of ROSS's conduct and the degree to which the conduct was reprehensible. Finally, you may assess an amount of damages that will deter ROSS and others like it from similar conduct in the future. You may consider ROSS's financial condition when evaluating deterrence. Any award of punitive damages must bear a reasonable relationship to Thomson Reuters compensatory damages for its tortious interference with contract claim and ROSS's alleged conduct related to using a bot to scrape Westlaw content and sharing passwords. If you find that Thomson Reuters is entitled to an award of punitive damages, state the amount of punitive damages separately on the verdict form.

ROSS's financial condition must not be considered in assessing compensatory damages.

**Authority**

Delaware Pattern Jury Instructions – Civil § 22.27.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

By:  */s/ David E. Moore*

Warrington S. Parker III
Joachim B. Steinberg
Jacob Canter
CROWELL & MORING LLP
3 Embarcadero Ctr., 26th Floor
San Francisco, CA 94111
Tel: (415) 986-2800

Crinesha B. Berry
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, DC 20004
Tel: (202) 624-2500

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Andrew L. Brown (#6766)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
Tel:  (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
abrown@potteranderson.com

*Attorneys for Defendant/Counterclaimant*
*ROSS Intelligence, Inc.*

Dated:  July 31, 2024
11680867 / 20516.00001

66