# EXHIBIT C



93 A.D.3d 929, 940 N.Y.S.2d
679, 2012 N.Y. Slip Op. 01540

**\*\*1** ARB Upstate Communications
LLC et al., Respondents

v

R.J. Reuter, L.L.C., Doing Business as Reuter
Business Consulting, et al., Appellants.

Supreme Court, Appellate Division,
Third Department, New York
March 1, 2012

CITE TITLE AS: ARB Upstate
Communications LLC v R.J. Reuter, L.L.C.

**HEADNOTES**

Corporations
Disregarding Corporate Entity
Individual Liability for Corporate Wrongdoing

Torts
Conversion
Use of Business Relationship to Convert Client List

Fraud
Factual Misrepresentation
Obtaining Financing for Business Deal

Torts
Interference with Business Relations
Submission of Competing Application with Federal Communications Commission

Equity
Unjust Enrichment
Existence of Valid Contract

Contracts
Implied Covenants

Good Faith and Fair Dealing—Business Consultant Relationship

Bond, Schoeneck & King, P.L.L.C., Albany (Stuart F. Klein of counsel), for appellants.
The Law Office of Bruce James Donadio, Scotia (Bruce Donadio of counsel), for respondents.

McCarthy, J. Appeal from an order of the Supreme Court (Reilly, Jr., J.), entered December 1, 2010 in Schenectady County, which partially denied defendants' motion to, among other things, dismiss the complaint.

In 1999, Wendy Helm purchased Leonard Communications, LLC, a radio tower business, and entered into a lease agreement for two sites where the radio towers and equipment were located. The lease included an option to purchase the parcels at the end of the lease. As alleged by plaintiffs, in 2006 Leonard Communications entered into a business consultant agreement with defendant R.J. Reuter, L.L.C. (hereinafter RJR) and defendant Ronald J. Reuter (hereinafter collectively referred to as the Reuter defendants). In 2007, the Reuter defendants advised Helm to form plaintiffs and transfer all of Leonard Communications's interests—including the option to purchase the sites—to plaintiffs so that financing could be secured for the purchase. **\*930**

The Reuter defendants advised plaintiffs to transfer their purchase options to Bastarache Properties, LLC under an agreement where Bastarache would lease the parcels to plaintiffs with **\*\*2** an option to purchase the sites for $150,000. In 2008, plaintiffs entered into a new business consultant agreement with the Reuter defendants, with a main goal of obtaining financing to purchase the sites from Bastarache. Plaintiffs allege that the Reuter defendants advised them to cancel their purchase options and allow Bastarache to sell the parcels to the Reuter defendants, then lease the parcels from the Reuter defendants until plaintiffs were able to secure financing.

In 2009, RJR formed defendant Hightower Capital, LLC, with Reuter as managing director. Plaintiffs entered into a six-month lease with Hightower Capital, but this lease did not contain a purchase option. When the lease expired, plaintiffs continued to rent

the sites on a month-to-month basis, then refused to continue to pay the rent, which they contended was artificially high. Defendants responded that plaintiffs could purchase the sites for $350,000, and demanded immediate payment.

Plaintiffs commenced this action, with most of the causes of action directed at the Reuter defendants. Prior to joinder of issue, defendants moved to dismiss the complaint for failure to state a cause of action. Supreme Court granted the motion as to plaintiffs' cause of action for specific performance, but denied the motion with respect to the remaining causes of action. Defendants appeal.

Courts considering a motion to dismiss a complaint for failure to state a cause of action must liberally construe the pleadings (*see* CPLR 3026), accept the facts alleged in the complaint as true, give plaintiffs the benefit of every possible favorable inference, and determine whether the alleged facts fit within any cognizable legal theory (*see* *ABN AMRO Bank, N.V. v MBIA Inc.*, 17 NY3d 208, 227 [2011]; *Leon v Martinez*, 84 NY2d 83, 87-88 [1994]). A motion pursuant to CPLR 3211 (a) (7) must be decided without regard to evidence submitted by defendants, unless that evidence "conclusively establishes the falsity of an alleged fact" (*Gray v Schenectady City School Dist.*, 86 AD3d 771, 772 [2011]). Applying these standards, Supreme Court correctly decided defendants' motion.

Supreme Court did not err in refusing to dismiss the causes of action for breach of fiduciary duty, breach of loyalty and breach of contract against Reuter. A fiduciary has both a duty of loyalty and an obligation to act in the best interests of the principal (*see* *Land Man Realty, Inc. v Faraone*, 70 AD3d 1246, 1247 [2010]). Plaintiffs allege that they entered into a contract, **\*931** pursuant to which the Reuter defendants would act as business consultants. This arrangement allowed the Reuter defendants access to plaintiffs' vital business information, including client lists, radio frequencies and license renewal information. Although plaintiffs have sufficiently alleged a fiduciary relationship and a duty of loyalty, the question is whether that relationship and duty extend to Reuter individually.

Despite the complaint's allegations that plaintiffs entered into a contract with the Reuter defendants, RJR is the only defendant that is a party to the 2008 contract; Reuter signed that contract only in his capacity as managing director of RJR.[1] To pierce the corporate veil and hold a corporation owner such as Reuter individually liable, plaintiffs must show that he exercised complete domination of the corporation concerning the transaction at issue and that this **\*\*3** domination was used to commit a fraud or wrong against plaintiffs, causing injury (*see* *Matter of Morris v New York State Dept. of Taxation & Fin.*, 82 NY2d 135, 141 [1993]; *Heim v Tri-Lakes Ford Mercury, Inc.*, 25 AD3d 901, 902 [2006], *lv dismissed and denied* 6 NY3d 886 [2006]). Piercing the corporate veil is not a separate cause of action, but is a way to hold an individual liable for a corporation's tort. Thus, the complaint need only contain some allegations reflecting on the individual's liability for the corporation's wrongdoing.

Plaintiffs alleged that Reuter managed or owned the three corporate defendants, he provided business advice to plaintiffs to cancel their purchase options and allow Bastarache to sell the sites to the Reuter defendants, he purchased the sites, and he formed Hightower Capital and defendant Hightower Upstate Communications, LLC to directly compete against plaintiffs. Liberally construing the complaint in plaintiffs' favor, we find these allegations sufficient to state a cause of action against Reuter individually for the obligations of his corporations. Plaintiffs alleged that the contract required the Reuter defendants to secure financing for the purchase of the sites, and that, despite plaintiffs' payment of consulting fees, the Reuter defendants never sought to secure the financing or perform certain other contractual obligations, thereby breaching the 2008 contract and causing plaintiffs damage (*see* *Clearmont Prop., LLC v Eisner*, 58 AD3d 1052, 1055 [2009]). Hence, the complaint states causes of action for breach of fiduciary duty, breach of the duty of loyalty and breach of contract.

Plaintiffs have stated a limited cause of action for conversion. "[T]he subject matter of a conversion action must constitute **\*932** identifiable tangible personal property"; real property and interests in business opportunities will not suffice (*Roemer &*

*Featherstonhaugh v Featherstonhaugh*, 267 AD2d 697, 697 [1999], *lv denied* 95 NY2d 758 [2000]; *see Thyroff v Nationwide Mut. Ins. Co.*, 8 NY3d 283, 289 [2007]). The complaint states, in its fourth cause of action, that the Reuter defendants used their business relationship to convert plaintiffs' "business, license and contract rights, opportunities, funds and business opportunities." While several of the listed categories cannot be the basis of a conversion cause of action, elsewhere in the complaint [2] plaintiffs allege that the Reuter defendants demanded and received from plaintiffs an updated client list, which defendants' representative then used to contact plaintiffs' clients on behalf of defendants. Construing the allegations liberally, plaintiffs have alleged conversion of funds and their client list.

The complaint sufficiently alleges fraud. That cause of action requires allegations that defendants made a knowingly false misrepresentation or material omission of fact for the purpose of inducing plaintiffs to rely on it, plaintiffs justifiably relied on the misrepresentation or material omission, and plaintiffs suffered related injuries (*see* **\*\*4** *Mandarin Trading Ltd. v Wildenstein*, 16 NY3d 173, 178 [2011]; *Lama Holding Co. v Smith Barney*, 88 NY2d 413, 421 [1996]). For a fraud cause of action, "the circumstances constituting the wrong shall be stated in detail" (CPLR 3016 [b]). The fifth cause of action alleges that the Reuter defendants "intentionally made false and misleading statements" to plaintiffs concerning performance of duties under the contract, that plaintiffs "reasonably relied upon such false and misleading statements" to their detriment, and that this reliance led to damages. Elsewhere in the complaint, plaintiffs alleged that the Reuter defendants represented that they were working on obtaining financing, but that they never actually made any such attempts. Plaintiffs also alleged that defendants advised them that the sale of the sites from Bastarache to defendants would preserve plaintiffs' purchase option, but the lease with Hightower Capital did not contain a purchase option and the later sale price offered by defendants was $200,000 more than the price under the Bastarache purchase option. **\*933** These allegations contain enough detail of the circumstances to support a cause of action for fraud

(*see Kosowsky v Willard Mtn., Inc.*, 90 AD3d 1127, 1129 [2011]).

Plaintiffs sufficiently alleged tortious interference with contract. That cause of action is established where a valid contract exists between a plaintiff and a third party, a defendant knows about the contract, the defendant intentionally and improperly procures a breach of the contract by one party, and damages to the plaintiff result (*see Kronos, Inc. v AVX Corp.*, 81 NY2d 90, 94 [1993]; *Ullmannglass v Oneida, Ltd.*, 86 AD3d 827, 829 [2011]). The complaint alleges that defendants advised plaintiffs to terminate their agreement with Bastarache, allowing defendants to purchase the sites and causing plaintiffs to lose their purchase options (*see Ullmannglass v Oneida, Ltd.*, 86 AD3d at 829). This was sufficient to state that cause of action.

Similarly, plaintiffs stated a cause of action for tortious interference with business opportunities and advantages. This cause of action is established where a defendant uses wrongful means to engage in conduct directed at a third party with whom a plaintiff has or seeks to have a business relationship, causing damage to the plaintiff (*see Carvel Corp. v Noonan*, 3 NY3d 182, 192 [2004]; *see also White v Ivy*, 63 AD3d 1236, 1238 [2009]). Plaintiffs alleged that defendants submitted competing applications with the Federal Communications Commission for licenses to radio frequencies used by plaintiffs. This could interfere with plaintiffs' contracts with their customers. Plaintiffs also alleged that defendants knew of the frequency renewal dates through confidential information supplied as part of the business consultant relationship, such that defendants wrongfully used that information to interfere with plaintiffs' business relationships. These allegations stated the cause of action.

To state a cause of action for unjust enrichment, plaintiffs needed to allege that defendants were enriched, the enrichment came at plaintiffs' expense, and permitting defendants to retain what plaintiffs seek to recover would be "" ' "against equity and good conscience" ' " (*Mandarin Trading Ltd. v Wildenstein*, 16 NY3d at 182, quoting *Citibank, N.A. v Walker*, 12 AD3d 480, 481 [2004]; *Baron v*

*Pfizer, Inc.*, 42 AD3d 627, 629-630 [2007]). Plaintiffs alleged that defendants induced them to relinquish the option to purchase the sites from Bastarache for $150,000 and allow defendants to purchase them, and that defendants later demanded that plaintiffs pay $350,000 for the sites. These statements are sufficient to allege that defendants were enriched at plaintiffs' expense and that, because defendants were able to ***934** obtain possession of the sites due to the business consultant relationship, it would be inequitable to permit defendants to retain the parcels. While a quasi contract recovery, such as through an unjust enrichment cause of action, is precluded where a valid and enforceable contract applies to the dispute, a party need not elect its remedies and may proceed on alternative theories if a disagreement exists concerning whether the contract covers the situation at issue (*see*

**\*\*5** *Kosowsky v Willard Mtn., Inc.*, 90 AD3d at 1131). At this pre-answer stage of the action, plaintiffs may proceed on both theories.

The complaint also states a cause of action for breach of the implied covenant of good faith and fair dealing. That "implied obligation encompasses any promises which a reasonable person in [plaintiffs' position] would be justified in understanding was included" in the parties' agreement (*Just-Irv Sales v Air-Tite Bus. Ctr.*, 237 AD2d 793, 794 [1997]). "[T]he covenant of good faith and fair dealing 'is breached when a party to a contract acts in a manner that, although not expressly forbidden by any contractual provision, would deprive the other party of the right to receive the benefits under their agreement' " (*id.* at 794, quoting *Jaffe v Paramount Communications*, 222 AD2d 17, 22-23 [1996]; *see Kosowsky v Willard Mtn., Inc.*, 90 AD3d at 1131-1132). Plaintiffs alleged that they supplied confidential information to defendants and relied on defendants' advice as part of the business consultant relationship. Plaintiffs further allege that defendants used this information and position of trust to usurp plaintiffs' right to acquire the sites, interfere with plaintiffs' renewal of their radio frequency licenses, contact plaintiffs' customers and compete with their business. Thus, they sufficiently stated this cause of action (*see Just-Irv Sales v Air-Tite Bus. Ctr.*, 237 AD2d at 794-795). While this cause of action may eventually be determined to be duplicative of another cause of action—such as breach of fiduciary duty or breach of loyalty—plaintiffs may proceed on alternative theories at this early stage of the litigation (*compare Logan Advisors, LLC v Patriarch Partners, LLC*, 63 AD3d 440, 443 [2009]).

Mercure, A.P.J., Peters, Malone Jr. and Kavanagh, JJ., concur. Ordered that the order is affirmed, with costs.

### FOOTNOTES

Copr. (C) 2024, Secretary of State, State of New York

### Footnotes

1    The 2006 contract was between RJR and Helm. Plaintiffs have no cause of action for any breach of that contract, as they were not parties to it.

2    After general statements of the nature of the action and identification of the parties, the complaint contains a section entitled "Allegations Common to All Causes of Action." While the sections of the complaint outlining each cause of action are sparse, this common section contains most of the complaint's factual allegations. The sections outlining each cause of action ""repeat and reallege" all of the prior allegations, thereby incorporating by reference the common section's allegations.

     In any event, courts must read the complaint as a whole when deciding a CPLR 3211 (a) (7) motion.

Case 1:20-cv-00613-SB   Document 637-3   Filed 08/05/24   Page 6 of 6 PageID #: 115782

**ARB Upstate Communications LLC v R.J. Reuter, L.L.C., 93 A.D.3d 929 (2012)**
940 N.Y.S.2d 679, 2012 N.Y. Slip Op. 01540

---

**End of Document**  © 2024 Thomson Reuters. No claim to original U.S. Government Works.