# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION, | )<br>)<br>) |
| | ) C.A. No. 20-613-SB |
| Plaintiffs/Counterdefendants, | )<br>) |
| | ) **JURY TRIAL DEMANDED** |
| v. | )<br>) |
| ROSS INTELLIGENCE INC., | )<br>) |
| Defendant/Counterclaimant. | ) |

## Verdict Form

**Instructions:** Please read and answer the questions below, beginning with Question 1. After you have answered a question, follow the instructions that correspond to your answer. The instructions will either direct you to answer another question or direct you to stop.

**I.     Copyright Claims**

**A. Headnotes**

1. *Validity* – Has Thomson Reuters demonstrated that it owns a valid copyright to any of the asserted headnotes such that any headnote is original and is not expired?

    _____ Yes (for Thomson Reuters) (continue to Question 2)

    _____ No (for ROSS) (continue to Question 12)

2. *Validity* – If you answered Yes to Question 1, go to Exhibit A and for each headnote, state whether (1) it is original and (2) it is not expired. Once complete, continue to Question 3.

    Please note that any headnotes that you determined are not original in response to Question No. 2 may not be considered in responding to this or any of the questions set forth below.

3. *Direct Infringement – ROSS* – Has Thomson Reuters proven by the preponderance of the evidence that ROSS directly infringed any of the headnotes by proving access to the headnote and that ROSS made a virtually identical copy of that headnote as opposed to the text of a judicial opinion?

    _____ Yes (for Thomson Reuters) (continue to Question 4)

    _____ No (for ROSS) (continue to Question 5)

4. *Direct Infringement – ROSS* – If you answered Yes to Question 3, go to Exhibit B and for each headnote, state whether (a) ROSS had access to the headnote and (b) ROSS's copying of that headnote was virtually identical. Once complete, continue to Question 5.

5. *Direct Infringement – LegalEase* – Has Thomson Reuters proven by the preponderance of the evidence that LegalEase directly infringed any of the headnotes by proving access to the headnote and that LegalEase made a virtually identical copy of that headnote as opposed to the text of a judicial opinion?

    _____ Yes (for Thomson Reuters) (continue to Question 6)

    _____ No (for ROSS) (continue to Question 12)

6. *Direct Infringement – LegalEase* – If you answered Yes to Question 5, go to Exhibit C and for each headnote, state whether (a) LegalEase had access to the headnote and (b) LegalEase's copying of that headnote was virtually identical. Once complete, continue to Question 7.

7. *Vicarious Infringement* – Has Thomson Reuters proven by the preponderance of the evidence that ROSS directly benefitted financially from LegalEase copying the headnotes?

   _____ Yes (for Thomson Reuters) (continue to Question 8)

   _____ No (for ROSS) (continue to Question 10)

8. *Vicarious Infringement* – Has Thomson Reuters proven by the preponderance of the evidence that ROSS had the right and ability to supervise and control LegalEase's copying of the headnotes?

   _____ Yes (for Thomson Reuters) (continue to Question 9)

   _____ No (for ROSS) (continue to Question 10)

9. *Vicarious Infringement* – Has Thomson Reuters proven by the preponderance of the evidence that ROSS exercised practical control over LegalEase's copying of the headnotes?

   _____ Yes (for Thomson Reuters) (continue to Question 10)

   _____ No (for ROSS) (continue to Question 10)

10. *Contributory Infringement* – Has Thomson Reuters proven by the preponderance of the evidence that ROSS knew or had reason to know LegalEase copied the headnotes?

    _____ Yes (for Thomson Reuters) (continue to Question 11)

    _____ No (for ROSS) (continue to Question 12)

11. *Contributory Infringement* – Has Thomson Reuters proven by the preponderance of the evidence that ROSS intentionally induced and materially contributed to LegalEase's copying of the headnotes?

 _____ Yes (for Thomson Reuters) (continue to Question 12)

 _____ No (for ROSS) (continue to Question 12)

**B. Key Number System**

12. For Thomson Reuters's key number system compilation, do you find it is original?

 _____ Yes (for Thomson Reuters) (continue to Question 13)

 _____ No (for ROSS) (continue to Question 20)

13. *Direct Infringement – ROSS* – Has Thomson Reuters proven by the preponderance of the evidence that ROSS directly infringed the key number system by proving:

 a. access to the key number system?

 _____ Yes (for Thomson Reuters) (continue to Question 13.b.)

 _____ No (for ROSS) (continue to Question 14)

 b. that ROSS created a copy that is virtually identical to the key number system because ROSS copied substantially all of the key number system?

 _____ Yes (for Thomson Reuters) (continue to Question 14)

 _____ No (for ROSS) (continue to Question 14)

14. *Direct Infringement – LegalEase* – Has Thomson Reuters proven by the preponderance of the evidence that LegalEase directly infringed the key number system by proving:

 a. access to the key number system?

 _____ Yes (for Thomson Reuters) (continue to Question 14.b.)

 _____ No (for ROSS) (continue to Question 20)

4

      b.      that LegalEase created a copy that is virtually identical to the key number system because LegalEase copied substantially all of the key number system?

        _____ Yes (for Thomson Reuters) (continue to Question 15)?

        _____ No (for ROSS) (continue to Question 20)

15. *Vicarious Infringement* – Has Thomson Reuters proven by the preponderance of the evidence that ROSS directly benefitted financially from LegalEase copying the key number system?

    _____ Yes (for Thomson Reuters) (continue to Question 16)

    _____ No (for ROSS) (continue to Question 18)

16. *Vicarious Infringement* – Has Thomson Reuters proven by the preponderance of the evidence that ROSS had the right and ability to supervise and control LegalEase's copying of the key number system?

    _____ Yes (for Thomson Reuters) (continue to Question 17)

    _____ No (for ROSS) (continue to Question 18)

17. *Vicarious Infringement* – Has Thomson Reuters proven by the preponderance of the evidence that ROSS exercised practical control over LegalEase's copying of the headnotes?

    _____ Yes (for Thomson Reuters) (continue to Question 18)

    _____ No (for ROSS) (continue to Question 18)

18. *Contributory Infringement* – Has Thomson Reuters proven by the preponderance of the evidence that ROSS knew or had reason to know LegalEase copied the key number system?

    _____ Yes (for Thomson Reuters) (continue to Question 19)

    _____ No (for ROSS) (continue to Question 20)

19. *Contributory Infringement* – Has Thomson Reuters proven by the preponderance of the evidence that ROSS intentionally induced and materially contributed to LegalEase's copying of the key number system?

    _____ Yes (for Thomson Reuters) (continue to Question 20)

    _____ No (for ROSS) (continue to Question 20)

**C. Copyright Defenses**

If you answered **YES to any of Questions 4(b), 9, 11, 13(b), 17, or 19**, answer the following Questions 20-31. If you have not answered yes to any of the above, proceed to Question 32.

20. *Fair Use* - Under Factor 1 of the fair use analysis, was the purpose and character of ROSS's use transformative?

    _____ Yes (for ROSS) (continue to Question 21)

    _____ No (for Thomson Reuters) (continue to Question 21)

21. *Fair Use* - Under Factor 1 of the fair use analysis, was the purpose and character of LegalEase's use an intermediate use for the benefit of ROSS and ROSS's use was transformative?

    _____ Yes (for ROSS) (continue to Question 22)

    _____ No (for Thomson Reuters) (continue to Question 22)

22. *Fair Use* - Under Factor 2 of the fair use analysis, were the headnotes informational?

    _____ Yes (for ROSS) (continue to Question 23)

    _____ No (for Thomson Reuters) (continue to Question 23)

23. *Fair Use* - Under Factor 3 of the fair use analysis, did ROSS use a substantial amount or portion of Thomsen Reuters copyrighted materials?

    _____ Yes (for Thomson Reuters) (continue to Question 24)

    _____ No (for ROSS) (continue to Question 24)

24. *Fair Use* - Under Factor 3 of the fair use analysis, did LegalEase use a substantial amount or portion of Thomsen Reuters copyrighted materials?

 _____ Yes (for Thomson Reuters) (continue to Question 25)

 _____ No (for ROSS) (continue to Question 25)

25. *Fair Use* - Under Factor 4 of the fair use analysis, at the time of ROSS's use, did it affect the potential market or value for the headnotes and key number system for use as AI training data?

 _____ Yes (for Thomson Reuters) (continue to Question 26)

 _____ No (for ROSS) (continue to Question 26)

26. *Fair Use* - Under Factor 4 of the fair use analysis, at the time of LegalEase's use, did ROSS intend to market a product that competed against Thomson Reuters headnotes and key number system?

 _____ Yes (for Thomson Reuters) (continue to Question 27)

 _____ No (for ROSS) (continue to Question 27)

27. *Copyright Misuse* - Has Thomson Reuters engaged in copyright misuse?

 _____ Yes (for Thomson Reuters) (continue to Question 28)

 _____ No (for ROSS) (continue to Question 28)

28. *Scènes à Faire* - Were Thomson Reuter's headnotes scènes à faire because certain elements of a creative work are held to be not protected when they are mandated by or customary to legal research of judicial decisions?

 _____ Yes (for Thomson Reuters) (continue to Question 29)

 _____ No (for ROSS) (continue to Question 29)

29. *Scènes à Faire* - Was Thomson Reuter's key number system scènes à faire?

    _____ Yes (for Thomson Reuters) (continue to Question 30)

    _____ No (for ROSS) (continue to Question 30)

30. *Merger* - Were Thomson Reuter's headnotes subject to merger because there are limited ways to express judicial holdings and decisions and thus the idea "merges" with the expression?

    _____ Yes (for Thomson Reuters) (continue to Question 31)

    _____ No (for ROSS) (continue to Question 31)

31. *Merger* - Was Thomson Reuter's key number system subject to merger?

    _____ Yes (for Thomson Reuters) (continue to Question 32)

    _____ No (for ROSS) (continue to Question 32)

**II.     Tortious Interference with Contract**

32. Has Thomson Reuters shown, by a preponderance of the evidence, that ROSS knew the substance of the contract between Thomson Reuters and LegalEase at the time of its work with LegalEase?

    _____ Yes (for Thomson Reuters) (continue to Question 33)

    _____ No (for ROSS) (continue to Damages Section)

33. Has Thomson Reuters shown, by a preponderance of the evidence, that ROSS intended to interfere with the contract between Thomson Reuters and LegalEase?

    _____ Yes (for Thomson Reuters) (continue to Question 34)

    _____ No (for ROSS) (continue to Damages Section)

8

34. Has Thomson Reuters shown, by a preponderance of the evidence, that ROSS acted without justification?

    _____ Yes (for Thomson Reuters) (continue to Question 35)

    _____ No (for ROSS) (continue to Damages Section)

35. Has Thomson Reuters shown, by a preponderance of the evidence, that LegalEase was sharing passwords?

    _____ Yes (for Thomson Reuters) (continue to Question 36)

    _____ No (for ROSS) (continue to Question 37)

36. Has Thomson Reuters shown, by a preponderance of the evidence, that ROSS knew that LegalEase was sharing passwords?

    _____ Yes (for Thomson Reuters) (continue to Question 37)

    _____ No (for ROSS) (continue to Question 37)

37. Has Thomson Reuters shown, by a preponderance of the evidence, that LegalEase was using a scraping tool?

    _____ Yes (for Thomson Reuters) (continue to Question 38)

    _____ No (for ROSS) (continue to Damages Section)

38. Has Thomson Reuters shown, by a preponderance of the evidence, that ROSS knew that LegalEase was using a scraping tool?

    _____ Yes (for Thomson Reuters) (continue to Damages Section)

    _____ No (for ROSS) (continue to Damages Section)

**III.   Damages**

If you answered **YES to any of Questions 4(b), 9, 11, 13(b), 17, or 19**, review and answer the following Questions 39-44, where applicable. If you have not answered yes to any of the above, turn in your Verdict Form.

39.   If answered yes to Questions 4(b), 9, 11, 13(b), 17, or 19 related to copyright infringement, is Thomson Reuters entitled to actual damages in the form of lost profits?

   _____ Yes (for Thomson Reuters) (continue to Question 40)

   _____ No (for ROSS) (continue to Question 41)

40.   What is the dollar amount of lost profits, if any, that you find Thomson Reuters should receive from ROSS for copyright infringement? _____

41.   If answered yes to Questions 4(b), 9, 11, 13(b), 17, or 19 related to copyright infringement, is Thomson Reuters entitled to disgorge any of ROSS's profits?

   _____ Yes (for Thomson Reuters) (continue to Question 42)

   _____ No (for ROSS) (continue to Question 43)

42.   What is the dollar amount of ROSS's profits, if any, that you find Thomson Reuters should receive from ROSS for copyright infringement? _____

43.   If answered yes to Questions 4(b), 9, 11, 13(b), 17, or 19 related to copyright infringement, has Thomson Reuters shown, by a preponderance of the evidence, that ROSS's infringement was willful?

   _____ Yes (for Thomson Reuters) (continue to Question 44)

   _____ No (for ROSS) (continue to Question 44)

44. If answered yes to Questions 4(b), 9, 11, 13(b), 17, or 19 related to copyright infringement, was ROSS's infringement innocent?

   _____ Yes (for ROSS) (turn in Verdict Form)

   _____ No (for Thomson Reuters) (turn in Verdict Form)

You have reached the end of the verdict form and should review it to ensure it accurately reflect your unanimous determinations.  Notify the Marshal that you have reached a verdict.

Dated: _____                    _____
                                                                          Jury Foreperson

11

| | |
|---|---|
| OF COUNSEL:<br><br>Warrington S. Parker III<br>Joachim B. Steinberg<br>Jacob Canter<br>CROWELL & MORING LLP<br>3 Embarcadero Ctr., 26th Floor<br>San Francisco, CA 94111<br>Tel: (415) 986-2800<br><br>Crinesha B. Berry<br>CROWELL & MORING LLP<br>1001 Pennsylvania Avenue NW<br>Washington, DC 20004<br>Tel: (202) 624-2500<br><br>Dated:  August 5, 2024<br>11686562 / 20516.00001 | Respectfully submitted,<br><br>POTTER ANDERSON & CORROON LLP<br><br>By:  */s/ David E. Moore*<br>    David E. Moore (#3983)<br>    Bindu A. Palapura (#5370)<br>    Andrew L. Brown (#6766)<br>    Hercules Plaza, 6th Floor<br>    1313 N. Market Street<br>    Wilmington, DE  19801<br>    Tel:  (302) 984-6000<br>    dmoore@potteranderson.com<br>    bpalapura@potteranderson.com<br>    abrown@potteranderson.com<br><br>*Attorneys for Defendant/Counterclaimant ROSS Intelligence, Inc.* |