# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION, | ) ) ) ) | |
| Plaintiffs/Counterdefendants, | ) ) | C.A. No. 20-613-SB |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| ROSS INTELLIGENCE INC., | ) ) | |
| Defendant/Counterclaimant. | ) ) ) | |

## ROSS INTELLIGENCE INC.'S REVISED VERDICT FORM[1]

**Instructions:** Please read and answer the questions below, beginning with Question 1.  After you have answered a question, follow the instructions that correspond to your answer. The instructions will either direct you to answer another question or direct you to stop.

---

[1] A redline comparison document showing the changes to Defendant's Verdict Form is attached as Exhibit A.

**I.      Copyright Claims**

**A. Headnotes**

1. *Validity* – Has Thomson Reuters demonstrated that it owns a valid copyright to any of the asserted headnotes such that any headnote is original or is not expired?

    _____ Yes (for Thomson Reuters) (continue to Question 2)

    _____ No (for ROSS) (continue to Question 12)

2. *Validity* – If you answered Yes to Question 1, go to Exhibit A and for each headnote, state whether (1) it is original or (2) it is not expired. Once complete, continue to Question 3.

    Please note that any headnotes that you determined are not original in response to Question No. 2 may not be considered in responding to this or any of the questions set forth below.

3. *Direct Infringement – ROSS* – Has Thomson Reuters proven by the preponderance of the evidence that ROSS directly infringed any of the headnotes by proving access to the headnote and that ROSS made a virtually identical copy of that headnote which itself is not virtually identical to the text of a judicial opinion?

    _____ Yes (for Thomson Reuters) (continue to Question 4)

    _____ No (for ROSS) (continue to Question 5)

4. *Direct Infringement – ROSS* – If you answered Yes to Question 3, go to Exhibit B and for each headnote, state whether (a) ROSS had access to the headnote and (b) ROSS's copying of that headnote was virtually identical. Once complete, continue to Question 5.

5. *Direct Infringement – LegalEase* – Has Thomson Reuters proven by the preponderance of the evidence that LegalEase directly infringed any of the headnotes by proving access to the headnote and that LegalEase made a virtually identical copy of that headnote which itself is not virtually identical   to the text of a judicial opinion?

    _____ Yes (for Thomson Reuters) (continue to Question 6)

    _____ No (for ROSS) (continue to Question 12)

6.  *Direct Infringement – LegalEase* – If you answered Yes to Question 5, go to Exhibit C and for each headnote, state whether (a) LegalEase had access to the headnote and (b) LegalEase's copying of that headnote was virtually identical. Once complete, continue to Question 7.

7.  *Vicarious Infringement* – Has Thomson Reuters proven by the preponderance of the evidence that ROSS directly benefitted financially from LegalEase copying the headnotes?

    _____ Yes (for Thomson Reuters) (continue to Question 8)

    _____ No (for ROSS) (continue to Question 10)

8.  *Vicarious Infringement* – Has Thomson Reuters proven by the preponderance of the evidence that ROSS had the right and ability to supervise and control LegalEase's copying of the headnotes?

    _____ Yes (for Thomson Reuters) (continue to Question 9)

    _____ No (for ROSS) (continue to Question 10)

9.  *Vicarious Infringement* – Has Thomson Reuters proven by the preponderance of the evidence that ROSS exercised practical control over LegalEase's copying of the headnotes?

    _____ Yes (for Thomson Reuters) (continue to Question 10)

    _____ No (for ROSS) (continue to Question 10)

10. *Contributory Infringement* – Has Thomson Reuters proven by the preponderance of the evidence that ROSS knew or had reason to know LegalEase copied the headnotes?

    _____ Yes (for Thomson Reuters) (continue to Question 11)

    _____ No (for ROSS) (continue to Question 12)

11.   *Contributory Infringement* – Has Thomson Reuters proven by the preponderance of the evidence that ROSS intentionally induced and materially contributed to LegalEase's copying of the headnotes?

    _____ Yes (for Thomson Reuters) (continue to Question 12)

    _____ No (for ROSS) (continue to Question 12)


**B. Key Number System**

12.   For Thomson Reuters's key number system compilation, do you find it is original?

    _____ Yes (for Thomson Reuters) (continue to Question 13)

    _____ No (for ROSS) (continue to Question 20)


13.   *Direct Infringement – ROSS* – Has Thomson Reuters proven by the preponderance of the evidence that ROSS directly infringed the key number system by proving:

    a.   access to the key number system?

        _____ Yes (for Thomson Reuters) (continue to Question 13.b.)

        _____ No (for ROSS) (continue to Question 14)

    b.   that ROSS created a copy that is virtually identical to the key number system because ROSS copied substantially all of the key number system?

        _____ Yes (for Thomson Reuters) (continue to Question 14)

        _____ No (for ROSS) (continue to Question 14)


14.   *Direct Infringement – LegalEase* – Has Thomson Reuters proven by the preponderance of the evidence that LegalEase directly infringed the key number system by proving:

    a.   access to the key number system?

        _____ Yes (for Thomson Reuters) (continue to Question 14.b.)

        _____ No (for ROSS) (continue to Question 20)

b.      that LegalEase created a copy that is virtually identical to the key number system because LegalEase copied substantially all of the key number system?

_____ Yes (for Thomson Reuters) (continue to Question 15)?

_____ No (for ROSS) (continue to Question 20)

15.     *Vicarious Infringement* – Has Thomson Reuters proven by the preponderance of the evidence that ROSS directly benefitted financially from LegalEase copying the key number system?

_____ Yes (for Thomson Reuters) (continue to Question 16)

_____ No (for ROSS) (continue to Question 18)

16.     *Vicarious Infringement* – Has Thomson Reuters proven by the preponderance of the evidence that ROSS had the right and ability to supervise and control LegalEase's copying of the key number system?

_____ Yes (for Thomson Reuters) (continue to Question 17)

_____ No (for ROSS) (continue to Question 18)

17.     *Vicarious Infringement* – Has Thomson Reuters proven by the preponderance of the evidence that ROSS exercised practical control over LegalEase's copying of the key number system?

_____ Yes (for Thomson Reuters) (continue to Question 18)

_____ No (for ROSS) (continue to Question 18)

18.     *Contributory Infringement* – Has Thomson Reuters proven by the preponderance of the evidence that ROSS knew or had reason to know LegalEase copied the key number system?

_____ Yes (for Thomson Reuters) (continue to Question 19)

_____ No (for ROSS) (continue to Question 20)

19.     *Contributory Infringement* – Has Thomson Reuters proven by the preponderance of the evidence that ROSS intentionally induced and materially contributed to LegalEase's copying of the key number system?

        _____ Yes (for Thomson Reuters) (continue to Question 20)

        _____ No (for ROSS) (continue to Question 20)


**C. Copyright Defenses**

If you answered **YES to any of Questions 4(b), 9, 11, 13(b), 17, or 19**, answer the following Questions 20-38. If you have not answered yes to any of the above, proceed to Question 39.

20.     *Fair Use* - Under Factor 1 of the fair use analysis, did ROSS's technology study the headnotes and opinion quotes only to analyze language patterns, not to replicate WestLaw's original expression?

        _____ Yes (for ROSS) (continue to Question 21)

        _____ No (for Thomson Reuters) (continue to Question 21)


21.     *Fair Use* - Under Factor 1 of the fair use analysis, did ROSS translate human language into something understandable by a computer as a step in a process of trying to develop a new search tool that would produce quotations from judicial opinions in response to natural language questions and was therefore transformative?

        _____ Yes (for ROSS) (continue to Question 22)

        _____ No (for Thomson Reuters) (continue to Question 22)


22.     *Fair Use* - Under Factor 1 of the fair use analysis, did ROSS use the text of headnotes to get its technology to replicate and reproduce the creative drafting done by WestLaw's attorney-editors.

        _____ Yes (for Thomson Reuters) (continue to Question 23)

        _____ No (for ROSS) (continue to Question 23)


23.     *Fair Use* - Under Factor 1 of the fair use analysis, did ROSS use the keynotes and headnotes to get its technology to replicate and reproduce the creative system created by WestLaw?

_____ Yes (for Thomson Reuters) (continue to Question 24)

_____ No (for ROSS) (continue to Question 24)


24.    *Fair Use* - Under Factor 1 of the fair use analysis, was the work  LegalEase performed
       for ROSS a step in the process of developing a new transformative product?

       _____ Yes (for ROSS) (continue to Question 25)

       _____ No (for Thomson Reuters) (continue to Question 25)


25.    *Fair Use* - Under Factor 2 of the fair use analysis, was the key number system a way to
       arrange factual material from judicial opinions?

       _____ Yes (for ROSS) (continue to Question 26)

       _____ No (for Thomson Reuters) (continue to Question 26)


26.    *Fair Use* - Under Factor 2 of the fair use analysis, do the headnotes reflect the language
       of judicial opinions?

       _____ Yes (for ROSS) (continue to Question 27)

       _____ No (for Thomson Reuters) (continue to Question 27)


27.    *Fair Use* - Under Factor 3 of the fair use analysis, did ROSS use a substantial percentage
       of WestLaw's key number system.

       _____ Yes (for Thomson Reuters) (continue to Question 28)

       _____ No (for ROSS) (continue to Question 28)


28.    *Fair Use* - Under Factor 3 of the fair use analysis, did ROSS use a substantial percentage
       of WestLaw's headnotes?

       _____ Yes (for Thomson Reuters) (continue to Question 29)

       _____ No (for ROSS) (continue to Question 29)

29. *Fair Use* - Under Factor 4 of the fair use analysis, at the time of ROSS's use, did ROSS attempt or intend to sell a headnotes and key number system for use as AI training data?

_____ Yes (for Thomson Reuters) (continue to Question 30)

_____ No (for ROSS) (continue to Question 30)

30. *Fair Use* - Under Factor 4 of the fair use analysis, at the time of did ROSS attempt or intend to use headnotes or the key number system to locate the words of judicial opinions in order to compete against Thomson Reuters ?

_____ Yes (for Thomson Reuters) (continue to Question 31)

_____ No (for ROSS) (continue to Question 31)

31. *Fair Use* - Under Factor 4 of the fair use analysis, was ROSS's product a different way of doing legal research?

_____ Yes (for Thomson Reuters) (continue to Question 32)

_____ No (for ROSS) (continue to Question 32)

32. *Fair Use* - Under Factor 4 of the fair use analysis, at the time of ROSS's use, was there a market for the use of WestLaw's copyrighted materials for training AI for legal research?

_____ Yes (for Thomson Reuters) (continue to Question 33)

_____ No (for ROSS) (continue to Question 33)

33. *Fair Use* - Under Factor 4 of the fair use analysis, at the time of ROSS's use, would Thompson Reuters have participated or did it ever participate in the market to use its copyrighted materials for training AI for legal research?

_____ Yes (for Thomson Reuters) (continue to Question 34)

_____ No (for ROSS) (continue to Question 34)

34.   *Fair Use* - Under Factor 4 of the fair use analysis, at the time of ROSS's use, would ROSS have participated or did it ever participate in the market to use its copyrighted materials for training AI for legal research?

    _____ Yes (for Thomson Reuters) (continue to Question 35)

    _____ No (for ROSS) (continue to Question 35)

35.   *Fair Use* - Under Factor 4 of the fair use analysis, at the time of ROSS's use, was it in the public benefit to allow AI to be trained with copyrighted material about judicial decisions?

    _____ Yes (for ROSS) (continue to Question 36)

    _____ No (for Thomson Reuters) (continue to Question 36)

36.   *Copyright Misuse* - Has Thomson Reuters engaged in copyright misuse?

    _____ Yes (for Thomson Reuters) (continue to Question 37)

    _____ No (for ROSS) (continue to Question 37)

37.   *Scènes à Faire* - Were Thomson Reuter's headnotes scènes à faire because certain elements of a creative work are held to be not protected when they are mandated by or customary to legal research of judicial decisions?

    _____ Yes (for ROSS) (continue to Question 38)

    _____ No (for Thomson Reuters) (continue to Question 38)

38.   *Merger* - Were Thomson Reuter's headnotes subject to merger because there are limited ways to express judicial opinions and thus the idea "merges" with the expression in the keynote system?

    _____ Yes (for ROSS) (continue to Question 39)

    _____ No (for Thomson Reuters) (continue to Question 39)

**II.      Tortious Interference with Contract**

39.    Has Thomson Reuters shown, by a preponderance of the evidence, that ROSS knew the substance of the contract between Thomson Reuters and LegalEase at the time of its work with LegalEase?

_____ Yes (for Thomson Reuters) (continue to Question 40)

_____ No (for ROSS) (continue to Copyright Damages Section)

40.    Has Thomson Reuters shown, by a preponderance of the evidence, that ROSS intended to interfere with the contract between Thomson Reuters and LegalEase?

_____ Yes (for Thomson Reuters) (continue to Question 41)

_____ No (for ROSS) (continue to Copyright Damages Section)

41.    Has Thomson Reuters shown, by a preponderance of the evidence, that ROSS acted without justification?

_____ Yes (for Thomson Reuters) (continue to Question 42)

_____ No (for ROSS) (continue to Copyright Damages Section)

42.    Has Thomson Reuters shown, by a preponderance of the evidence, that LegalEase was sharing passwords?

_____ Yes (for Thomson Reuters) (continue to Question 43)

_____ No (for ROSS) (continue to Question 43)

43.    Has Thomson Reuters shown, by a preponderance of the evidence, that ROSS knew that LegalEase was sharing passwords?

_____ Yes (for Thomson Reuters) (continue to Question 44)

_____ No (for ROSS) (continue to Question 44)

44.     Has Thomson Reuters shown, by a preponderance of the evidence, that LegalEase was using a scraping tool?

_____ Yes (for Thomson Reuters) (continue to Question 45)

_____ No (for ROSS) (continue to Question 45)

45.     Has Thomson Reuters shown, by a preponderance of the evidence, that ROSS knew that LegalEase was using a scraping tool?

_____ Yes (for Thomson Reuters) (continue to Question 46)

_____ No (for ROSS) (continue to Question 46)

46.     If answered yes to Questions 39 through 45 above related to tortious interference, is Thomson Reuters entitled to nominal damages in a sum such as one dollar?

_____ Yes (for ROSS)

_____ No (for Thomson Reuters) (continue to Question 47)

If the answer is yes, the amount of nominal damages is _____(continue to Copyright Damages Section).

47.     If answered yes to Questions 39 through 45 and no to Question 46 above related to tortious interference, is Thomson Reuters entitled to general damages?

If the answer is yes, the amount of general damages is _____ (continue to Copyright Damages Section).

### III.    Copyright Damages

If you answered **YES to any of Questions 4(b), 9, 11, 13(b), 17, or 19**, review and answer the following Questions 48-53, where applicable. If you have not answered yes to any of the above, turn in your Verdict Form.

48.    If answered yes to Questions 4(b), 9, 11, 13(b), 17, or 19 related to copyright infringement, is Thomson Reuters entitled to actual damages in the form of lost profits?

_____ Yes (for Thomson Reuters) (continue to Question 49)

_____ No (for ROSS) (continue to Question 50)

49.    What is the dollar amount of lost profits, if any, that you find Thomson Reuters should receive from ROSS for copyright infringement? _____ (continue to Question 52)

50.    If answered yes to Questions 4(b), 9, 11, 13(b), 17, or 19 related to copyright infringement, is Thomson Reuters entitled to disgorge any of ROSS's profits?

_____ Yes (for Thomson Reuters) (continue to Question 51)

_____ No (for ROSS) (continue to Question 52)

51.    What is the dollar amount of ROSS's profits, if any, that you find Thomson Reuters should receive from ROSS for copyright infringement? _____

52.    If answered yes to Questions 4(b), 9, 11, 13(b), 17, or 19 related to copyright infringement, has Thomson Reuters shown, by a preponderance of the evidence, that ROSS's infringement was willful?

_____ Yes (for Thomson Reuters) (turn in Verdict Form)

_____ No (for ROSS) (continue to Question 53)

53.     If answered yes to Questions 4(b), 9, 11, 13(b), 17, or 19 related to copyright
        infringement, was ROSS's infringement innocent?

        _____ Yes (for ROSS)

        _____ No (for Thomson Reuters)

You have reached the end of the verdict form and should review it to ensure it accurately reflect
your unanimous determinations.  Notify the Marshal that you have reached a verdict.

Dated: _____                    _____
                                             Jury Foreperson

OF COUNSEL:

Warrington S. Parker III
Joachim B. Steinberg
Jacob Canter
CROWELL & MORING LLP
3 Embarcadero Ctr., 26th Floor
San Francisco, CA 94111
Tel: (415) 986-2800

Crinesha B. Berry
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, DC 20004
Tel: (202) 624-2500

Dated:  August 12, 2024
11694907 / 20516.00001

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

By:  */s/ David E. Moore*
     David E. Moore (#3983)
     Bindu A. Palapura (#5370)
     Andrew L. Brown (#6766)
     Hercules Plaza, 6th Floor
     1313 N. Market Street
     Wilmington, DE  19801
     Tel:  (302) 984-6000
     dmoore@potteranderson.com
     bpalapura@potteranderson.com
     abrown@potteranderson.com

*Attorneys for Defendant/Counterclaimant
ROSS Intelligence, Inc.*

14