# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION, <br><br> Plaintiffs/Counterdefendants, <br><br> v. <br><br> ROSS INTELLIGENCE INC., <br><br> Defendant/Counterclaimant. | C.A. No. 20-613-SB <br><br> **JURY TRIAL DEMANDED** |

## ~~Verdict Form~~

## ROSS INTELLIGENCE INC.'S REVISED VERDICT FORM[1]

**Instructions:** Please read and answer the questions below, beginning with Question 1. After you have answered a question, follow the instructions that correspond to your answer. The instructions will either direct you to answer another question or direct you to stop.

---

[1] A redline comparison document showing the changes to Defendant's Verdict Form is attached as Exhibit A.

**I.     Copyright Claims**

**A. Headnotes**

1. *Validity* – Has Thomson Reuters demonstrated that it owns a valid copyright to any of the asserted headnotes such that any headnote is original ~~and~~or is not expired?

    _____ Yes (for Thomson Reuters) (continue to Question 2)

    _____ No (for ROSS) (continue to Question 12)

2. *Validity* – If you answered Yes to Question 1, go to Exhibit A and for each headnote, state whether (1) it is original ~~and~~or (2) it is not expired. Once complete, continue to Question 3.

    Please note that any headnotes that you determined are not original in response to Question No. 2 may not be considered in responding to this or any of the questions set forth below.

3. *Direct Infringement – ROSS* – Has Thomson Reuters proven by the preponderance of the evidence that ROSS directly infringed any of the headnotes by proving access to the headnote and that ROSS made a virtually identical copy of that headnote ~~as opposed~~which itself is not virtually identical to the text of a judicial opinion?

    _____ Yes (for Thomson Reuters) (continue to Question 4)

    _____ No (for ROSS) (continue to Question 5)

4. *Direct Infringement – ROSS* – If you answered Yes to Question 3, go to Exhibit B and for each headnote, state whether (a) ROSS had access to the headnote and (b) ROSS's copying of that headnote was virtually identical. Once complete, continue to Question 5.

5. *Direct Infringement – LegalEase* – Has Thomson Reuters proven by the preponderance of the evidence that LegalEase directly infringed any of the headnotes by proving access to the headnote and that LegalEase made a virtually identical copy of that headnote ~~as opposed~~which itself is not virtually identical  to the text of a judicial opinion?

    _____ Yes (for Thomson Reuters) (continue to Question 6)

    _____ No (for ROSS) (continue to Question 12)

6. *Direct Infringement – LegalEase* – If you answered Yes to Question 5, go to Exhibit C and for each headnote, state whether (a) LegalEase had access to the headnote and (b) LegalEase's copying of that headnote was virtually identical. Once complete, continue to Question 7.

7. *Vicarious Infringement* – Has Thomson Reuters proven by the preponderance of the evidence that ROSS directly benefitted financially from LegalEase copying the headnotes?

    _____ Yes (for Thomson Reuters) (continue to Question 8)

    _____ No (for ROSS) (continue to Question 10)

8. *Vicarious Infringement* – Has Thomson Reuters proven by the preponderance of the evidence that ROSS had the right and ability to supervise and control LegalEase's copying of the headnotes?

    _____ Yes (for Thomson Reuters) (continue to Question 9)

    _____ No (for ROSS) (continue to Question 10)

9. *Vicarious Infringement* – Has Thomson Reuters proven by the preponderance of the evidence that ROSS exercised practical control over LegalEase's copying of the headnotes?

    _____ Yes (for Thomson Reuters) (continue to Question 10)

    _____ No (for ROSS) (continue to Question 10)

10. *Contributory Infringement* – Has Thomson Reuters proven by the preponderance of the evidence that ROSS knew or had reason to know LegalEase copied the headnotes?

    _____ Yes (for Thomson Reuters) (continue to Question 11)

    _____ No (for ROSS) (continue to Question 12)

11.    *Contributory Infringement* – Has Thomson Reuters proven by the preponderance of the evidence that ROSS intentionally induced and materially contributed to LegalEase's copying of the headnotes?

      _____ Yes (for Thomson Reuters) (continue to Question 12)

      _____ No (for ROSS) (continue to Question 12)

**B. Key Number System**

12.    For Thomson Reuters's key number system compilation, do you find it is original?

      _____ Yes (for Thomson Reuters) (continue to Question 13)

      _____ No (for ROSS) (continue to Question 20)

13.    *Direct Infringement – ROSS* – Has Thomson Reuters proven by the preponderance of the evidence that ROSS directly infringed the key number system by proving:

    a.    access to the key number system?

        _____ Yes (for Thomson Reuters) (continue to Question 13.b.)

        _____ No (for ROSS) (continue to Question 14)

    b.    that ROSS created a copy that is virtually identical to the key number system because ROSS copied substantially all of the key number system?

        _____ Yes (for Thomson Reuters) (continue to Question 14)

        _____ No (for ROSS) (continue to Question 14)

14.    *Direct Infringement – LegalEase* – Has Thomson Reuters proven by the preponderance of the evidence that LegalEase directly infringed the key number system by proving:

    a.    access to the key number system?

        _____ Yes (for Thomson Reuters) (continue to Question 14.b.)

        _____ No (for ROSS) (continue to Question 20)

      b.      that LegalEase created a copy that is virtually identical to the key number system because LegalEase copied substantially all of the key number system?

      _____ Yes (for Thomson Reuters) (continue to Question 15)?

      _____ No (for ROSS) (continue to Question 20)

15.   *Vicarious Infringement* – Has Thomson Reuters proven by the preponderance of the evidence that ROSS directly benefitted financially from LegalEase copying the key number system?

      _____ Yes (for Thomson Reuters) (continue to Question 16)

      _____ No (for ROSS) (continue to Question 18)

16.   *Vicarious Infringement* – Has Thomson Reuters proven by the preponderance of the evidence that ROSS had the right and ability to supervise and control LegalEase's copying of the key number system?

      _____ Yes (for Thomson Reuters) (continue to Question 17)

      _____ No (for ROSS) (continue to Question 18)

17.   *Vicarious Infringement* – Has Thomson Reuters proven by the preponderance of the evidence that ROSS exercised practical control over LegalEase's copying of the ~~headnotes~~key number system?

      _____ Yes (for Thomson Reuters) (continue to Question 18)

      _____ No (for ROSS) (continue to Question 18)

18.   *Contributory Infringement* – Has Thomson Reuters proven by the preponderance of the evidence that ROSS knew or had reason to know LegalEase copied the key number system?

      _____ Yes (for Thomson Reuters) (continue to Question 19)

      _____ No (for ROSS) (continue to Question 20)

19. *Contributory Infringement* – Has Thomson Reuters proven by the preponderance of the evidence that ROSS intentionally induced and materially contributed to LegalEase's copying of the key number system?

    _____ Yes (for Thomson Reuters) (continue to Question 20)

    _____ No (for ROSS) (continue to Question 20)

## C. Copyright Defenses

If you answered **YES to any of Questions 4(b), 9, 11, 13(b), 17, or 19**, answer the following Questions ~~20-31~~20-38. If you have not answered yes to any of the above, proceed to Question ~~32~~39.

20. *Fair Use* - Under Factor 1 of the fair use analysis, ~~was the purpose and character of ROSS's use transformative~~did ROSS's technology study the headnotes and opinion quotes only to analyze language patterns, not to replicate WestLaw's original expression?

    _____ Yes (for ROSS) (continue to Question 21)

    _____ No (for Thomson Reuters) (continue to Question 21)

21. *Fair Use* - Under Factor 1 of the fair use analysis, did ROSS translate human language into something understandable by a computer as a step in a process of trying to develop a new search tool that would produce quotations from judicial opinions in response to natural language questions and was therefore transformative?

    _____ Yes (for ROSS) (continue to Question 22)

    _____ No (for Thomson Reuters) (continue to Question 22)

22. *Fair Use* - Under Factor 1 of the fair use analysis, did ROSS use the text of headnotes to get its technology to replicate and reproduce the creative drafting done by WestLaw's attorney-editors.

    _____ Yes (for Thomson Reuters) (continue to Question 23)

    _____ No (for ROSS) (continue to Question 23)

23. *Fair Use* - Under Factor 1 of the fair use analysis, did ROSS use the keynotes and headnotes to get its technology to replicate and reproduce the creative system created by WestLaw?

   _____ Yes (for Thomson Reuters) (continue to Question 24)

   _____ No (for ROSS) (continue to Question 24)

~~21~~24. *Fair Use* - Under Factor 1 of the fair use analysis, was the ~~purpose and character of LegalEase's use an intermediate use for the benefit of ROSS and ROSS's use was~~ work LegalEase performed for ROSS a step in the process of developing a new transformative product?

   _____ Yes (for ROSS) (continue to Question 25)

   _____ No (for Thomson Reuters) (continue to Question 25)

25. *Fair Use* - Under Factor 2 of the fair use analysis, was the key number system a way to arrange factual material from judicial opinions?

   _____ Yes (for ROSS) (continue to Question ~~22~~26)

   _____ No (for Thomson Reuters) (continue to Question ~~22~~26)

~~22~~26. *Fair Use* - Under Factor 2 of the fair use analysis, ~~were~~do the headnotes ~~informational~~reflect the language of judicial opinions?

   _____ Yes (for ROSS) (continue to Question ~~23~~27)

   _____ No (for Thomson Reuters) (continue to Question ~~23~~27)

~~23~~27. *Fair Use* - Under Factor 3 of the fair use analysis, did ROSS use a substantial ~~amount or portion of Thomsen Reuters copyrighted materials?~~percentage of WestLaw's key number system.

   _____ Yes (for Thomson Reuters) (continue to Question ~~24~~28)

   _____ No (for ROSS) (continue to Question ~~24~~28)

7

<del>24</del><ins>28</ins>.   *Fair Use* - Under Factor 3 of the fair use analysis, did <del>LegalEase</del><ins>ROSS</ins> use a substantial <del>amount or portion of Thomsen Reuters copyrighted materials</del><ins>percentage of WestLaw's headnotes</ins>?

_____ Yes (for Thomson Reuters) (continue to Question <del>25</del><ins>29</ins>)

_____ No (for ROSS) (continue to Question <del>25</del><ins>29</ins>)

<del>25</del><ins>29</ins>.   *Fair Use* - Under Factor 4 of the fair use analysis, at the time of ROSS's use, did <del>it affect the potential market or value for the</del><ins>ROSS attempt or intend to sell a</ins> headnotes and key number system for use as AI training data?

_____ Yes (for Thomson Reuters) (continue to Question <del>26</del><ins>30</ins>)

_____ No (for ROSS) (continue to Question <del>26</del><ins>30</ins>)

<del>26</del><ins>30</ins>.   *Fair Use* - Under Factor 4 of the fair use analysis, at the time of <del>LegalEase's use,</del> did ROSS <ins>attempt or</ins> intend to <del>market a product that competed against Thomson Reuters</del><ins>use</ins> headnotes <del>and</del><ins>or the</ins> key number system <ins>to locate the words of judicial opinions in order to compete against Thomson Reuters</ins> ?

_____ Yes (for Thomson Reuters) (continue to Question <del>27</del><ins>31</ins>)

_____ No (for ROSS) (continue to Question <del>27</del><ins>31</ins>)

<ins>31.   *Fair Use* - Under Factor 4 of the fair use analysis, was ROSS's product a different way of doing legal research?

_____ Yes (for Thomson Reuters) (continue to Question 32)

_____ No (for ROSS) (continue to Question 32)

32.   *Fair Use* - Under Factor 4 of the fair use analysis, at the time of ROSS's use, was there a market for the use of WestLaw's copyrighted materials for training AI for legal research?

_____ Yes (for Thomson Reuters) (continue to Question 33)

_____ No (for ROSS) (continue to Question 33)</ins>

8

33.   *Fair Use* - Under Factor 4 of the fair use analysis, at the time of ROSS's use, would Thompson Reuters have participated or did it ever participate in the market to use its copyrighted materials for training AI for legal research?

	_____ Yes (for Thomson Reuters) (continue to Question 34)

	_____ No (for ROSS) (continue to Question 34)

34.   *Fair Use* - Under Factor 4 of the fair use analysis, at the time of ROSS's use, would ROSS have participated or did it ever participate in the market to use its copyrighted materials for training AI for legal research?

	_____ Yes (for Thomson Reuters) (continue to Question 35)

	_____ No (for ROSS) (continue to Question 35)

35.   *Fair Use* - Under Factor 4 of the fair use analysis, at the time of ROSS's use, was it in the public benefit to allow AI to be trained with copyrighted material about judicial decisions?

	_____ Yes (for ROSS) (continue to Question 36)

	_____ No (for Thomson Reuters) (continue to Question 36)

~~27~~36.   *Copyright Misuse* - Has Thomson Reuters engaged in copyright misuse?

	_____ Yes (for Thomson Reuters) (continue to Question ~~28~~37)

	_____ No (for ROSS) (continue to Question ~~28~~37)

~~28~~37.   *Scènes à Faire* - Were Thomson Reuter's headnotes scènes à faire because certain elements of a creative work are held to be not protected when they are mandated by or customary to legal research of judicial decisions?

	_____ Yes (for ~~Thomson Reuters~~ROSS) (continue to Question ~~29~~38)

	~~_____ No (for ROSS) (continue to Question 29)~~

~~29.   *Scènes à Faire* - Was Thomson Reuter's key number system scènes à faire?~~

	_____ ~~Yes~~No (for Thomson Reuters) (continue to Question ~~30~~38)

9

~~_____ No (for ROSS) (continue to Question 30)~~

~~30~~38. *Merger* - Were Thomson Reuter's headnotes subject to merger because there are limited ways to express judicial ~~holdings and decisions~~opinions and thus the idea "merges" with the expression in the keynote system?

       _____ Yes (for ~~Thomson Reuters~~ROSS) (continue to Question ~~31~~39)

       ~~_____ No (for ROSS) (continue to Question 31)~~

~~31.~~ ~~*Merger* - Was Thomson Reuter's key number system subject to merger?~~

       _____ ~~Yes~~No (for Thomson Reuters) (continue to Question ~~32~~39)

       ~~_____ No (for ROSS) (continue to Question 32)~~

## II.    Tortious Interference with Contract

~~32~~39. Has Thomson Reuters shown, by a preponderance of the evidence, that ROSS knew the substance of the contract between Thomson Reuters and LegalEase at the time of its work with LegalEase?

       _____ Yes (for Thomson Reuters) (continue to Question ~~33~~40)

       _____ No (for ROSS) (continue to Copyright Damages Section)

~~33~~40. Has Thomson Reuters shown, by a preponderance of the evidence, that ROSS intended to interfere with the contract between Thomson Reuters and LegalEase?

       _____ Yes (for Thomson Reuters) (continue to Question ~~34~~41)

       _____ No (for ROSS) (continue to Copyright Damages Section)

~~34~~41. Has Thomson Reuters shown, by a preponderance of the evidence, that ROSS acted without justification?

       _____ Yes (for Thomson Reuters) (continue to Question ~~35~~42)

       _____ No (for ROSS) (continue to Copyright Damages Section)

~~35~~42.  Has Thomson Reuters shown, by a preponderance of the evidence, that LegalEase was sharing passwords?

    _____ Yes (for Thomson Reuters) (continue to Question ~~36~~43)

    _____ No (for ROSS) (continue to Question ~~37~~43)

~~36~~43.  Has Thomson Reuters shown, by a preponderance of the evidence, that ROSS knew that LegalEase was sharing passwords?

    _____ Yes (for Thomson Reuters) (continue to Question ~~37~~44)

    _____ No (for ROSS) (continue to Question ~~37~~44)

~~37~~44.  Has Thomson Reuters shown, by a preponderance of the evidence, that LegalEase was using a scraping tool?

    _____ Yes (for Thomson Reuters) (continue to Question ~~38~~45)

    _____ No (for ROSS) (continue to ~~Damages Section~~Question 45)

~~38~~45.  Has Thomson Reuters shown, by a preponderance of the evidence, that ROSS knew that LegalEase was using a scraping tool?

    _____ Yes (for Thomson Reuters) (continue to ~~Damages Section~~Question 46)

    _____ No (for ROSS) (continue to ~~Damages Section~~Question 46)

46.  If answered yes to Questions 39 through 45 above related to tortious interference, is Thomson Reuters entitled to nominal damages in a sum such as one dollar?

    _____ Yes (for ROSS)

    _____ No (for Thomson Reuters) (continue to Question 47)

    If the answer is yes, the amount of nominal damages is _____ (continue to Copyright Damages Section).

11

47. If answered yes to Questions 39 through 45 and no to Question 46 above related to tortious interference, is Thomson Reuters entitled to general damages?

    If the answer is yes, the amount of general damages is _____ (continue to Copyright Damages Section).

**III.     Copyright Damages**

If you answered **YES to any of Questions 4(b), 9, 11, 13(b), 17, or 19**, review and answer the following Questions ~~39-44~~48-53, where applicable. If you have not answered yes to any of the above, turn in your Verdict Form.

~~39~~48.   If answered yes to Questions 4(b), 9, 11, 13(b), 17, or 19 related to copyright infringement, is Thomson Reuters entitled to actual damages in the form of lost profits?

   _____ Yes (for Thomson Reuters) (continue to Question ~~40~~49)

   _____ No (for ROSS) (continue to Question ~~41~~50)

~~40~~49.   What is the dollar amount of lost profits, if any, that you find Thomson Reuters should receive from ROSS for copyright infringement? _____ (continue to Question 52)

~~41~~50.   If answered yes to Questions 4(b), 9, 11, 13(b), 17, or 19 related to copyright infringement, is Thomson Reuters entitled to disgorge any of ROSS's profits?

   _____ Yes (for Thomson Reuters) (continue to Question ~~42~~51)

   _____ No (for ROSS) (continue to Question ~~43~~52)

~~42~~51.   What is the dollar amount of ROSS's profits, if any, that you find Thomson Reuters should receive from ROSS for copyright infringement? _____

~~43~~52.   If answered yes to Questions 4(b), 9, 11, 13(b), 17, or 19 related to copyright infringement, has Thomson Reuters shown, by a preponderance of the evidence, that ROSS's infringement was willful?

   _____ Yes (for Thomson Reuters) (~~continue to Question 44~~turn in Verdict Form)

   _____ No (for ROSS) (continue to Question ~~44~~53)

13

44<u>53</u>. If answered yes to Questions 4(b), 9, 11, 13(b), 17, or 19 related to copyright infringement, was ROSS's infringement innocent?

       _____ Yes (for ROSS) ~~(turn in Verdict Form)~~

       _____ No (for Thomson Reuters) ~~(turn in Verdict Form)~~

You have reached the end of the verdict form and should review it to ensure it accurately reflect your unanimous determinations. Notify the Marshal that you have reached a verdict.

Dated: _____           _____
                                                    Jury Foreperson

|  |  |
|---|---|
| OF COUNSEL:<br><br>Warrington S. Parker III<br>Joachim B. Steinberg<br>Jacob Canter<br>CROWELL & MORING LLP<br>3 Embarcadero Ctr., 26th Floor<br>San Francisco, CA 94111<br>Tel: (415) 986-2800<br><br>Crinesha B. Berry<br>CROWELL & MORING LLP<br>1001 Pennsylvania Avenue NW<br>Washington, DC 20004<br>Tel: (202) 624-2500<br><br>Dated: August ~~5~~12, 2024<br>~~11686562 /~~11694907 / 20516.00001 | Respectfully submitted,<br><br>POTTER ANDERSON & CORROON LLP<br><br>By: */s/ David E. Moore*<br>    David E. Moore (#3983)<br>    Bindu A. Palapura (#5370)<br>    Andrew L. Brown (#6766)<br>    Hercules Plaza, 6th Floor<br>    1313 N. Market Street<br>    Wilmington, DE  19801<br>    Tel:  (302) 984-6000<br>    dmoore@potteranderson.com<br>    bpalapura@potteranderson.com<br>    abrown@potteranderson.com<br><br>*Attorneys for Defendant/Counterclaimant ROSS Intelligence, Inc.* |

15