IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION, | )<br>)<br>)<br>) |
| Plaintiffs and Counterdefendants, | )<br>) C.A. No. 20-613 (SB) |
| v. | )<br>) REDACTED - PUBLIC VERSION |
| ROSS INTELLIGENCE INC., | )<br>)<br>) |
| Defendant and Counterclaimant. | )<br>)<br>) |

**PLAINTIFFS' RESPONSE TO DEFENDANT ROSS'S LIST OF HEADNOTES IN RESPONSE TO THE JULY 22, 2024, ORDER AT DOCKET NO. 612**

OF COUNSEL:

Dale M. Cendali
Joshua L. Simmons
Eric A. Loverro
Jeremy King
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Miranda D. Means
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
(617) 385-7500

Yungmoon Chang
Allyn Belusko
KIRKLAND & ELLIS LLP
555 South Flower Street
Los Angeles, CA 90071
(213) 680-8400

Original filing date: August 5, 2024
Redacted filing date: August 14, 2024

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com

*Attorneys for Plaintiffs and Counterdefendants Thomson Reuters Enterprise Center GmbH and West Publishing Corporation*

As a threshold matter, ROSS's submission suffers from fatal and misleading errors about the nature of Plaintiffs' copyrights. The expression at issue in this case is **not** confined to the wording of the West Headnotes, as ROSS's submission suggests. Rather, an integral part of Plaintiffs' copyright is their original selection and arrangement (17 U.S.C. § 101) of West Headnotes with corresponding case passages—which is precisely the set of creative choices that made the West Headnotes so valuable to ROSS in the first place. Plaintiffs make choices about a) which judicial opinions to annotate with West Headnotes and other editorial enahncements; b) how many West Headnotes to create for a given judicial opinion; c) what concepts should be included in the West Headnotes out of many possible options; d) which case passages should be linked to which West Headnotes; e) how the West Headnotes should be written; and f) how the West Headnote should be classified in the West Key Number System.

Take, for example, the West Headnote from *Seymour v. Richardson*, 194 Va. 709, which reads:

> "A 'cause of action' accrues to a person when that person first comes to a right to bring action and consists of act or omission constituting violation of duty but differs from a 'right of action' which is the right to bring suit."

Not only did Plaintiffs choose to annotate this case in the first place, they also decided what West Headnotes to write out of many possible options. Here, they specifically chose to write the above West Headnote to correspond to a long, dense paragraph of legal text, a portion of which is shown below. Plaintiffs chose the key concepts from that long paragraph to include in this particular West Headnote, combining multiple legal concepts across the paragraph to form a coherent whole.

> The Anderson case, however, was dealing with the effect of the statutes of limitation on the right of action. 'It is frequently the case that more or less confusion arises from a failure to distinguish between the cause and the right of action. 'A cause of action is said to accrue to any person when that person first comes to a right to

1

> bring an action. There is, however, an obvious distinction between a cause of action and a right, though a cause of action generally confers a right. * * *.'' Lewis' Adm'r v. Glenn, Trustee, 84 Va. 947, 979, 6 S.E. 866, 882. *Mercer v. Richmond,* **80 152 Va. 736, 744, 148 S.E. 803, 805. In the latter case the question was whether the sixty-day notice of injury required by city ordinance to be given before a suit could be maintained related to the date of the injury or to the qualification of the personal representative of the injured person whose death resulted from the injury. The court said that it agreed with the principle stated in the Anderson case, and other cases cited, that the right of action which accrued to the administrator upon the death of his intestate was entirely different from the right of action which accrued to the injured party, but that the right of action referred to in those cases 'is entirely different from the cause of action.'

There is a reason Plaintiffs hire attorneys to do this work; the selection of which concepts to headnote, how many headnotes to create, and which case passages to link those concepts to requires judgment and choice.  It also requires judgment and choice to decide how to classify that West Headnote within the West Key Number System.  This selection and arrangement is precisely the type of creative work that copyright law protects, and it would be legal error to view the wording of West Headnotes in a vacuum and ignore these critical aspects of Plaintiffs' creativity.  *See Tufenkian Imp./Exp. Ventures, Inc. v. Einstein Moonjy, Inc.* 338 F.3d 127 (2d Cir. 2003) (plaintiff's selection and arrangement of public domain elements, including where the plaintiff "combined," "added," and "selectively removed" elements was protectible expression under *Feist*); *Kay Berry, Inc. v. Taylor Gifts, Inc.*, 421 F. 3d 199 (3d. Cir. 2005) ("When an author combines these [public domain] elements and adds his or her own imaginative spark, creation occurs, and the author is entitled to protection for the result. This is true even when the author contributes only a minimal amount of creativity.").

Thus, a determination of whether or not the West Headnotes are identical to any case passages does not answer the question of whether or not they are protectable.  But an additional problem with ROSS's submission is that ROSS did not do what the Court asked, in that its

submission does not actually enable this Court to identify which West Headnotes are verbatim quotations from the underlying judicial opinion. Rather than following this Court's clear instructions to "submit a list of all headnotes it believes are verbatim quotations, or vary only trivially from verbatim quotations, of judicial opinions" (D.I. 612), ROSS submitted a misleading, kitchen-sink list of headnotes, the overwhelming majority of which vary far more than trivially from the text of judicial opinions. Indeed, a closer inspection of ROSS's submission reveals that ROSS simply painted text with a broad red brush, treating as "copied" from judicial opinions text that is in fact reworded, clarified, combined, excised and recontextualized, added to, adapted, or synthesized in the resulting West Headnote to create new expression. In the attached **Exhibit 1**, Plaintiffs have coded objections to each entry in ROSS's Exhibit A that explain the flaws in ROSS's approach. At a high level, in addition to failing to consider Plaintiffs' original selection and arrangement, ROSS's approach in its submission is flawed for at least the following reasons:

*First*, ROSS's methodology cannot be trusted. ROSS colors the text of headnotes in red in an attempt to indicate to this Court that they are identical to the text of the judicial opinions regardless of whether the relevant language appears in the same order in the headnote and judicial opinion. For example, in the below West Headnote, ROSS colors in red "prima facie" and "trial court's role," as though these were copied from the same sentence when instead they come from different parts of the paragraph and in a different order. In the below example, ROSS also colors in red "on a motion to dismiss," which does not appear in the corresponding judicial text at all and appears to be context added by Plaintiffs. This "Frankenstein" approach—pulling words, phrases, even *letters*, that appear in a different order in the judicial text to create the impression that the passages are more similar than they in fact are—pervades the entire submission and casts significant doubt on its accuracy.

3

| Row # | Citation | Headnote # and Text | Judicial Text | Memo Question |
|---|---|---|---|---|
| 1845 | State v. N. Atl. Ref. Ltd., 160 N.H. 275, 281, 999 A.2d 396, 403 (2010) | 4 — The trial court's role when ruling, under the prima facie standard, on a motion to dismiss for lack of personal jurisdiction, and the appellate court's role in its de novo review, is not as a factfinder, but as a data collector; thus, the court must accept the plaintiff's properly documented proffers as true for the purpose of determining the adequacy of the prima facie jurisdictional showing. | To make a prima facie showing, the plaintiff "ordinarily cannot rest upon the pleadings, but is obliged to adduce evidence of specific facts." Foster–Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir.1995); see Thomas v. Telegraph Publ'g Co., 151 N.H. 435, 437, 859 A.2d 1166 (2004). The trial court's role, and our role in our de novo review, is "not as a factfinder, but as a data collector. That is to say, the court ... must accept the plaintiff's (properly documented) proffers as true for the purpose of determining the adequacy of the prima facie jurisdictional showing." | ▉ |

Exhibit 1 attached contains objections for "Order" (where the order of the words differs between the headnote and judicial text) and/or "IC" (where the words in red do not appear in the headnote) next to entries where ROSS makes this error, as in the example above.

***Second***, ROSS identifies headnote and judicial opinion pairs where the West Headnote contains language from the opinion, *but* the headnote leaves out a good deal of material, skipping entire sentences and synthesizing multiple points into a condensed, clarified whole. ROSS also includes headnotes where the whole judicial quote portion presented appears in the West Headnote, but the West Headnote *also* includes a significant amount of ***added*** language not in the passage from the judicial opinion. These West Headnotes are distillations, summaries, and/or otherwise reinterpretations of the judicial opinions that involve creative decision-making to create, which ROSS's approach overlooks in painting them as "verbatim" copies. Such changes undoubtedly meet the low threshold for minimal creativity. *See, e.g.*, *CCC Info. Servs., Inc. v. Maclean Hunter Mkt. Reps., Inc.*, 44 F.3d 61, 65–66 (2d Cir. 1994) (compendium of car valuation information was protectible); *Eckes v. Card Prices Update*, 736 F.2d 859, 863 (2d Cir. 1984) (decision as to which baseball cards to call "premium" was protectible); *FMC Corp. v. Control Sol., Inc.*, 369 F. Supp. 2d 539 (E.D. Pa. 2005) (commercial product labels were protectible); *West Publ'g Co. v. Mead Data Ctr., Inc.*, 799 F.2d 1219 (8th Cir. 1986) (arrangement of opinions in a case reporter was protectible).

For example, ROSS contends that the West Headnote shown below is a verbatim copy from a judicial opinion that the jury should not be able to consider. But in fact, the West Headnote is not a verbatim copy of the judicial opinion. This West Headnote contains language that was added by Plaintiffs' attorney-editors to provide helpful context, namely: "In determining whether to dismiss as sanction for failure to prosecute or comply with the court order, inquiry should include…" This language is not in the judicial opinion and is original to Plaintiffs. It is also notable that the Bulk Memo Question copies *precisely* Plaintiffs' added contextual language, with only slight alteration to transform it into a question ("█████████████████████████████████████████████████████████,"). The jury should undoubtedly be able to consider these types of West Headnotes, which contain more than the "minimal" creative spark required. *See Feist Publ'ns, Inc. v. Rural Tel Serv. Co.*, 499 U.S. 340, 345 (1991) (threshold for creativity is "minimal" and easily met). This example shows how ROSS went well beyond the Court's request that it submit a list of West Headnotes that are verbatim copies of the judicial opinions.

| Row # | Citation | Headnote # | Headnote Text | Judicial Text | Memo Question |
|---|---|---|---|---|---|
| 3551 | Techniarts Video, Inc. v. 1631 Kalorama Assocs., 572 A.2d 1051, 1054 (D.C. 1990) | 3 | In determining whether to dismiss as sanction for failure to prosecute or to comply with superior court order, inquiry should include whether conduct calling for sanctions was willful and whether other party was prejudiced by it and sanction imposed should, wherever possible, be tailored to offense. Civil Rule 41(b). | 12 The inquiry should include whether the conduct calling for sanctions was willful and whether the other party was prejudiced by it, Vernell, supra; Brown v. Cohen, supra, 505 A.2d at 78–79; Garces, supra, 299 A.2d at 144–45; and the sanction imposed should, wherever possible, be tailored to the offense.) | ███████████ |

Exhibit 1 attached contains objections for "Condensed" (where the headnote condenses or summarizes the judicial opinion) and/or "Sub" (where there is additional language, creative paraphrase, change in focus, or anything else that constitutes a change in the substance of the text) next to entries where ROSS makes this error.

**Third**, ROSS completely ignores the context and meaning of the West Headnotes and instead focuses only on whether certain words appear in both the headnote and the judicial opinion (regardless of whether the wording is identical). For example, in the below headnote,

5

"required" refers to a legal requirement under certain bribery statutes, but in the judicial opinion, "required" refers to jury instructions and what the jury was required to do. In other words, the term means something different in the context of the headnote than it does in the context of the judicial text, and yet ROSS identifies the headnote as a verbatim copy. This type of error, again, pervades ROSS's submission.

| Row # | Citation | Headnote # and Text | Judicial Text | Memo Question |
|---|---|---|---|---|
| 3241 | United States v. Tomblin, 46 F.3d 1369, 1380 (5th Cir. 1995) | 13  By requiring jury to find that official accepted item of value in return for official's acts and that defendant promised something of value to official "with intent to influence an official act," pattern instructions adequately explained reciprocity element of quid pro quo required under bribery statutes. 18 U.S.C.A. S 201; 5th Cir. Crim. PJI 2.12, 2.13. | By requiring the jury to find that Glen Mauldin accepted an item of value in return for official acts in counts five and nine, and that Tomblin promised something of value to Mauldin "with intent to influence an official act", the instructions explain the reciprocity element of the quid pro quo. These instructions also distinguish between the levels of intent about which Tomblin is concerned, because they required the jury to find that, in promising something of value to Mauldin and in aiding and abetting Mauldin's acceptance of an item of value, Tomblin had acted corruptly, that is, with unlawful purpose. | ■ |

Exhibit 1 attached contains objections for "IC" (where the words in red are taken out of context) next to entries where ROSS makes this error.

* * *

Plaintiffs also note that ROSS's submission focuses exclusively on the West Headnotes copied in the Bulk Memos. This ignores Plaintiffs' secondary liability claim—Plaintiffs contend that ROSS is liable for LegalEase's copying of Westlaw Content outside the scope of its license to use the Westlaw platform. For each case listed in Exhibit A, LegalEase accessed the case on the Westlaw platform in order to copy the West Headnote into the Bulk Memo. In the process, it copied the *entire* annotated case, which includes *all* of the West Headnotes therein and other editorial content, such as case synopses, which are attorney-editor written summaries of the entire case. ROSS has not presented any evidence or argument to suggest that this content, including the synopses, is not original or should be filtered out of the case. Even if the Court parses through ROSS's overbroad submission, the cases listed in Exhibit A will still contain extensive editorial content at issue in this case. The submission, in other words, does not actually streamline any issues for trial.

Ultimately, as this Court correctly noted, "[t]he juries must consider all headnotes that it could reasonably find are original and thus eligible for copyright protection." *Id*. Indeed, courts usually reserve originality and copyrightability for the jury. D.E. 610 (collecting cases). Given that ROSS failed to follow this Court's instructions and instead placed the burden on the Court to discern which headnotes, if any, are verbatim quotations, or vary trivially from verbatim quotations, of judicial opinions, and given that filtering out individual headnotes would not actually streamline any issues for the jury, the Court should not spend any time or resources considering ROSS's submission further. Instead, the Court should simply allow Plaintiffs to present all headnotes to the jury and provide a limiting instruction to the jury. This will allow the jury to make its own determinations, without ROSS's clearly erroneous characterizations, and without this Court having to do ROSS's job for it.

OF COUNSEL:

Dale M. Cendali
Joshua L. Simmons
Eric A. Loverro
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Miranda D. Means
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
(617) 385-7500

Yungmoon Chang
Allyn Belusko
KIRKLAND & ELLIS LLP
555 South Flower Street
Los Angeles, CA 90071
(213) 680-8400

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com

*Attorneys for Plaintiffs and Counter-Defendants Thomson Reuters Enterprise Centre GmbH and West Publishing Corporation*

# EXHIBIT 1
# REDACTED
# IN ITS
# ENTIRETY