IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION, | ) ) ) |
| | ) C.A. No. 20-613-SB |
| Plaintiffs/Counterdefendants, | ) ) ) |
| v. | ) ) |
| ROSS INTELLIGENCE INC., | ) ) |
| Defendant/Counterclaimant. | ) ) |

**DECLARATION OF JACOB CANTER IN SUPPORT OF DEFENDANT/COUNTERCLAIMANT ROSS INTELLIGENCE INC.'S MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFFS' COPYRIGHT CLAIMS**

I, Jacob Canter, declare as follows:

1. I am Counsel at Crowell & Moring, LLP, and on the legal team for ROSS Intelligence, Inc. I am an attorney, admitted to the bar of the states of California and District of Columbia and have been admitted *pro hac vice* to appear before this Court. I submit this Declaration in support of Defendant/Counterclaimant ROSS Intelligence Inc.'s ("ROSS") Motion for Summary Judgement as to Plaintiffs' Copyright Claims. I have personal knowledge of the facts set forth below and, if called to testify, I could and would testify competently to the below.

**I.   Analysis Completed in Support of Copyright Infringement Summary Judgment Brief – The Non-Copyrightable Materials**

2. In support of this brief, I and a team of lawyers at my direction completed an analysis of the 21,878 headnotes that Dr. Jonathan Krein identified in his Appendix D to his Reply Expert Report, served on October 10, 2022. As part of this analysis, we relied in part on technology to assist in the review.

3. As part of this analysis, I and the team of lawyers identified 90 headnotes listed in the appendix that do not exist in the judicial opinion where Dr. Krein indicated they are

located. For each of these headnotes, I and the team used the case citation provided by Dr. Krein and confirmed there was no headnote in the judicial opinion cited. A spreadsheet that identifies those 90 headnotes is attached herein as **Exhibit A**.

4. As part of this analysis, I and the team of lawyers identified 1,636 headnotes that were published as part of judicial opinions that pre-date 1927. As part of this review, I and the team of lawyers identified the judicial text most closely corresponding to the text of the headnotes in the cases cited by Dr. Krein for each headnote. A spreadsheet that identifies those 1,636 headnotes is attached herein as **Exhibit B**.

5. As part of this analysis, I and the team of lawyers identified 1,025 headnotes that are verbatim copies of the judicial text. I and the team of lawyers identified the judicial text most closely corresponding to the text of the headnotes in the cases cited by Dr. Krein for each headnote. The standard for 'verbatim' copies was that nothing new was added, removed, or rearranged in the headnote compared to the judicial text. Overlapping text between the headnote text and the judicial text are highlighted with red lettering. A spreadsheet that identifies those 1,025 headnotes is attached herein as **Exhibit C**.

6. As part of this analysis, I and the team of lawyers identified 8,974 headnotes what we termed 'near verbatim' copies of the judicial text. I and the team of lawyers identified the judicial text most closely corresponding to the text of the headnotes in the cases cited by Dr. Krein for each headnote. The standard for 'near verbatim' copies was that there were modifications in the headnote compared to the judicial text that were very trivial. For example, merely changing punctuation from the judicial text to the headnote is a near verbatim copy. Simply removing articles such as "the" and "and" from the judicial text to the headnote is a near verbatim copy. Only removing the citation or prepositional phrases (such as "We hold that . . .") are near verbatim

copies. Overlapping text between the headnote text and the judicial text are highlighted with red lettering. A spreadsheet that identifies those 8974 headnotes is attached herein as **Exhibit D**.

### II. Analysis Completed in Support of Copyright Infringement Summary Judgment Brief – No Material Appropriation Demonstrated

7.      In support of this brief, I and a team of lawyers at my direction completed an analysis of certain of the 21,878 headnotes that Dr. Jonathan Krein identified in his Appendix D to his Reply Expert Report, served on October 10, 2022. As part of this analysis, we relied in part on technology to assist in the review.

8.      As part of this analysis, I and the team of lawyers identified 20 headnotes listed in the appendix that were not previously identified as (i) expired, (ii) not corresponding to the identified judicial opinion, or (iii) verbatim or near verbatim copies of the text of the judicial opinions. I and the team of lawyers identified, where possible, the judicial text most closely corresponding to the text of the headnotes in the cases cited by Dr. Krein for each headnote. For these 20 headnotes, the text of the judicial opinion and the text of the memo question overlapped, as indicated by the blue lettering in the memo question, except in some instances in which changes were made to formulate the judicial text as a memo question. These 20 headnotes are representative sample demonstrating that neither ROSS nor LegalEase materially appropriated any alleged Thomson Reuters' copyright in the headnote. A spreadsheet that identifies those 20 headnotes is attached herein as **Exhibit E**.

9.      As part of this analysis, I and the team of lawyers identified an additional 20 headnotes listed in the appendix that were not previously identified as (i) expired, (ii) not corresponding to the identified judicial opinion, or (iii) verbatim or near verbatim copies of the text of the judicial opinions. I and the team of lawyers identified, where possible, the judicial text most closely corresponding to the text of the headnotes in the cases cited by Dr. Krein for each

headnote. For these 20 headnotes, the text of the judicial opinion and the text of the memo question overlapped, as indicated by the blue lettering in the memo question, except in some instances in which changes were made to formulate the judicial text as a memo question and the memo question includes a necessary changes to provide context, such as (i) changing a party's name to "plaintiff" or "defendant"; (ii) specifying a type of motion brought or area of law being discussed (such as specifying a "motion" is a "motion to dismiss"); or (iii) stating the full name of an entity or acronym (such as "Federal Arbitration Act" instead of "FAA"). These changes derived from the context of the opinions or their citations. These 20 headnotes are representative sample demonstrating that neither ROSS nor LegalEase materially appropriated any alleged Thomson Reuters' copyright in the headnote. A spreadsheet that identifies those 20 headnotes is attached herein as **Exhibit F**.

### III.    Analysis Completed in Support of Copyright Infringement Summary Judgment Brief – The 300 Entries

10.     In support of this brief, I and a team of lawyers at my direction completed an analysis of the 300 headnotes that Dr. Krein stated he manually reviewed to purportedly determine actual copying. Of the 300 headnotes, 100 are provided in Exhibit C to Dr. Krein's Reply Report and 200 are provided in Exhibit E to Dr. Krein's Reply Report. These 300 entries were compiled into **Exhibit G** along with the corresponding memo question. I and the team of lawyers identified, where possible, the judicial text most closely corresponding to the text of the headnotes in the cases cited by Dr. Krein for each headnote and included it in Exhibit G.

11.     Four of these headnotes are not part of the 21,878 which Dr. Krein includes in Appendix D to his Reply Report. Of the 300 headnotes, Dr. Krein determined ROSS did not copy an additional 25 headnotes, as indicated by the "low similarity" designation.

12.     For the remaining 271 headnotes, I and the team of lawyers first identified all

headnotes that are not present in the judicial opinions identified by Dr. Krein as well all expired headnotes pre-dating 1927, as these headnotes were not copyrightable. I and a team of lawyers then compared the text of the headnotes to the text of the judicial opinions, highlighting overlapping words with red lettering in both. This analysis was performed to demonstrate lack of copyrightability of the headnotes. I and the team of lawyers compared the text of the memo questions to the text of the judicial opinions, highlighting overlapping words in blue lettering in the text of the memo questions. This analysis was performed to demonstrate lack of material appropriation of the headnotes, because the memo questions reflect the language of the judicial opinions or words necessary to provide the underlying context and legal principles.

13. In each such case, the lawyer did not rely on any technology to assist in this analysis. The review was a manual comparison of the memo question, judicial text, and the headnote based on the words and common variations thereof (e.g., tense changes to words).

## IV. Analysis Completed in Support of Copyright Infringement Summary Judgment Brief – The 188 Entries

14. In support of this brief, I and a team of lawyers at my direction completed an analysis of the 188 entries from Dr. Frederiksen-Cross's analysis of headnotes, judicial text, and memo questions that the Court stated in the September 25, 2023, opinion it would not review. *See Thomson Reuters Enter. Ctr. GmbH v. Ross Intel. Inc.*, 694 F. Supp. 3d 467, 480 (D. Del. 2023).

15. For each one of these 188 entries, I and the team of lawyers provided a specific written explanation for why a juror could reasonably conclude that the memo question was based on judicial text instead of being based on the headnote, and therefore there was no material misappropriation.

16. The 188 entries that the team reviewed were obtained from exhibit 89 to the Declaration of Jacob Canter filed in support of ROSS's opposition to the motion for summary

judgment as to copyright infringement from 2022. *See* D.I. 324-23.

17. In each such case, the lawyer did not rely on any technology to assist in this analysis. The review was just a commonsense comparison of the memo question, judicial text, and the headnote. On some occasions, the lawyer looked at judicial text from the opinion that is identified by Bates No. in the spreadsheet instead of the judicial text listed in the spreadsheet.

18. A spreadsheet that includes the 188 entries and also the explanation for why a juror could reasonably conclude that the memo question was pulled from the case instead of the headnote is attached herein as **Exhibit H**.

19. Some of the example explanations are: there are phrases only in the memo question and judicial opinion, but not in the headnote; there is language in the headnote that is not also in the memo question; all of the text that is in both the headnote and memo question is also in the judicial opinion text; the text of the memo question and judicial text have significant overlap; and the question reflects the holding and rule of law applied in the case.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed in San Francisco, California, on this 1st day of October, 2024.

*/s/ Jacob Canter*
Jacob Canter

11797559/20516.00001