# EXHIBIT A

| Row # | Citation | Headnote # | Headnote Text | Judicial Text | Memo Question |
|---|---|---|---|---|---|
| 1133 | Jordan v. State, No. CACR04-170, 2004 WL 2538719 (Ark. Ct. App. Nov. 10, 2004) | n/a | When a reviewing court determines that the State's evidence fails to show that an enhancement allegation is true, the Double Jeopardy Clause does not bar the use of the enhancement conviction during a retrial on punishment. U.S.C.A. Const.Amend. 5; V.T.C.A., Penal Code S 12.42(d). | Krein's headnote not found using judicial opinion. | Does the Double Jeopardy Clause bar the use of the enhancement conviction during a retrial on punishment when a reviewing court determines that the State's evidence fails to show that an enhancement allegation is true? |
| 1217 | People v. Mitchell, 132 Cal. App. 3d 389, 183 Cal. Rptr. 166 (Ct. App. 1982) | n/a | Crime of bribery would be complete even if it were found that benefit was conferred or offered solely in exchange for use of a public official's efforts to influence the judgment or action of other public officers. Penal Law 1965, S 200.00. | Krein's headnote not found using judicial opinion. | Is bribery complete even if that benefit was conferred or offered solely in exchange for use of a public official's efforts to influence the judgment or action of other public officers? |
| 4332 | U.S. v. Jackson, 904 F. Supp. 118 | n/a | Jury instruction explaining that defendant does not commit bribery unless gift or favor is made with intent to influence official action in exchange for it adequately covered issues raised at trial and accurately stated law, despite claim that instruction should have specified particular quid pro quo element alleged in indictment, which asserted that administrator and marketing representative of psychiatric hospital had paid employee assistance counselor with Postal Service $3,000 per month for referral of three patients per month to psychiatric hospital. | Krein's headnote not found using judicial opinion. | Is bribery jury instruction misleading by explaining that a defendant does not commit bribery unless a gift or favor is made with intent to influence official action? |
| 5218 | In re Bennett, 960 S.W.2d 35, 38 (Tex. 1997). | n/a | Trial court is free to impose sanctions while it retains plenary jurisdiction even when motion for sanctions is filed after notice of nonsuit is filed. Vernon's Ann.Texas Rules Civ.Proc., Rule 162. | Krein's headnote not found using judicial opinion. | Is a trial court free to impose sanctions while it retains plenary jurisdiction even when motion for sanctions is filed after notice of nonsuit is filed? |
| 5956 | Crockett v. Cassels, 95 Fla. 851, 116 So. 865 (1928) | n/a | Statutes respecting taking of depositions must be substantially complied with; no material deviation from statutes respecting taking of depositions will be allowed, except by parties' agreement or waiver. Statutes respecting the taking of depositions must be substantially complied with and no material deviation therefrom will be allowed, except by the agreement or waiver of the parties. | Krein's headnote not found using judicial opinion. | "Will no material deviation from statutes respecting taking of depositions be allowed, except by the parties' agreement or waiver?" |
| 8569 | Manion v. Nagin, No. CIV. 00-238 ADM/RLE, 2003 WL 21459680 (D. Minn. June 20, 2003) | n/a | In a case involving the Federal Arbitration Act (FAA), courts should not grant injunctive relief unless there is qualifying contractual language which permits it, that is, language which provides the court with clear grounds to grant relief without addressing the merits of the underlying arbitrable dispute. 9 U.S.C.A. S 1 et seq. | Krein's headnote not found using judicial opinion. | Can courts grant injunctive relief for an agreement that does not contain a qualifying contractual language? |
| 9203 | State v. Evans, 196 Wash. App. 1075 (2016) | n/a | Fact that trial court sustained pretrial motion in limine does not automatically result in permanent exclusion of the references sought to be prohibited, as pretrial ruling is interlocutory only and additional information produced at trial may prompt the trial court to alter the ruling and admit the evidence, and thus objection must be made at trial when the evidence is offered or reference made, preferably outside the hearing of the jury, in order to preserve for appellate review the ruling made thereon. | Krein's headnote not found using judicial opinion. | Does granting motion in limine automatically result in permanent exclusion of disputed evidence? |

| | | | | | |
|---|---|---|---|---|---|
| 9255 | People v. Henderson, 138 Cal. App. 2d 505 (1956) | n/a | Under common law, a structure maintained on public roadway is unlawful and a nuisance per se subject to abatement at instance of proper authority. | Krein's headnote not found using judicial opinion. | Is structure maintained upon a public roadway a nuisance subject to abatement? |
| 10366 | Crockett v. Cassels, 95 Fla. 851, 116 So. 865 (1928) | n/a | Statutes respecting taking of depositions must be substantially complied with; no material deviation from statutes respecting taking of depositions will be allowed, except by parties' agreement or waiver. Statutes respecting the taking of depositions must be substantially complied with and no material deviation therefrom will be allowed, except by the agreement or waiver of the parties. | Krein's headnote not found using judicial opinion. | Should statutes respecting the taking of depositions be substantially complied with? |
| 11557 | Manion v. Nagin, No. CIV. 00-238 ADM/RLE, 2003 WL 21459680 (D. Minn. June 20, 2003) | n/a | In a case involving the Federal Arbitration Act (FAA), courts should not grant injunctive relief unless there is qualifying contractual language which permits it, that is, language which provides the court with clear grounds to grant relief without addressing the merits of the underlying arbitrable dispute. 9 U.S.C.A. S 1 et seq. | Krein's headnote not found using judicial opinion. | How is the term qualifying contractual language used in arbitration? |
| 11912 | Com. v. Sholley, 432 Mass. 721, 739 N.E.2d 236 (2000) | n/a | "Threat," as element of offense of threatening to commit a crime, must be made in circumstances that would reasonably justify apprehension on the part of an ordinary person. M.G.L.A. c. 275, S 2. | Krein's headnote not found using judicial opinion. | "Under what circumstances must a ""threat,"" as an element of the offense of threatening to commit a crime, be made?" |
| 12400 | United States v. Ring, 706 F.3d 460, 468 (D.C. Cir. 2013) | n/a | The official is not required to agree to or actually complete a corrupt exchange for an offer of something of value with the intent to influence an official act to amount to honest-services fraud by bribery. 18 U.S.C.A. S 1346. | Krein's headnote not found using judicial opinion. | Does a charge of bribery require an official to complete a corrupt exchange for an offer of something of value with the intent to influence an official act? |
| 13092 | State v. Flores, No. A-3360-13T3, 2015 WL 5038535, at *1 (N.J. Super. Ct. App. Div. Aug. 25, 2015) | n/a | Aggravated incest statute was not unconstitutionally vague on ground that it punished acts made criminal elsewhere in Criminal Code and granted prosecutorial discretion in choosing among various offenses in charging defendant; aggravated incest statute most closely described defendant's conduct, and public policy of protecting juvenile family members from adult relatives outweighed any unfairness caused by increased penalty. LSA-R.S. 14:4, 14:78.1; LSA-Const. Art. 5, S 26; LSA-C.Cr.P. art. 61. | Krein's headnote not found using judicial opinion. | Are aggravated incest statutes unconstitutionally vague? |
| 14525 | People v. Allen, 20 Cal. App. 4th 846 | n/a | To constitute an auto burglary, neither forced entry in the usual sense of the word nor use of burglar tools is required. West's Ann.Cal.Penal Code S 459. | Krein's headnote not found using judicial opinion. | Does burglary involve entry by use of force? |
| 14534 | In re Butler, 101 N.Y. 307 | n/a | It is not an abuse of discretion to deny an oral motion for continuance that is not reduced to writing. | Krein's headnote not found using judicial opinion. | Is it is an abuse of discretion to deny an oral motion for continuance that is not reduced to writing? |

| | | | | | |
|---|---|---|---|---|---|
| 14762 | U.S. v. Jackson, 904 F. Supp. 1185 | n/a | Defendants indicted on charges relating to alleged plot to ship weapons to Laos in order to facilitate overthrow of government were entitled to discovery of evidence relating to United States' overt or covert military planning or operations with respect to Laos from 2005 through 2007; "at peace" requirement under Neutrality Act constituted element of offense upon which government bore burden of proof at trial, and thus sought information would be both material to preparation of defense and potentially exculpatory. 18 U.S.C.A. S 960; Fed.Rules Cr.Proc.Rule 16, 18 U.S.C.A. | Krein's headnote not found using judicial opinion. | Is at peace an element of offence under Neutrality Act? |
| 14763 | U.S. v. Jackson, 904 F. Supp. 1185 | n/a | Defendants indicted on charges relating to alleged plot to ship weapons to Laos in order to facilitate overthrow of government were entitled to discovery of evidence relating to United States' overt or covert military planning or operations with respect to Laos from 2005 through 2007; "at peace" requirement under Neutrality Act constituted element of offense upon which government bore burden of proof at trial, and thus sought information would be both material to preparation of defense and potentially exculpatory. 18 U.S.C.A. S 960; Fed.Rules Cr.Proc.Rule 16, 18 U.S.C.A. | Krein's headnote not found using judicial opinion. | Who has to prove the at peace element of an offence under Neutrality Act? |
| 14784 | U.S. v. Jackson, 904 F. Supp. 118 | n/a | Defendants indicted on charges relating to alleged plot to ship weapons to Laos in order to facilitate overthrow of government were entitled to discovery of evidence relating to United States' overt or covert military planning or operations with respect to Laos from 2005 through 2007; "at peace" requirement under Neutrality Act constituted element of offense upon which government bore burden of proof at trial, and thus sought information would be both material to preparation of defense and potentially exculpatory. 18 U.S.C.A. S 960; Fed.Rules Cr.Proc.Rule 16, 18 U.S.C.A. | Krein's headnote not found using judicial opinion. | Who decides whether the prosecution has carried its burden of proving that the United States is at peace? |
| 14897 | People v. Smith, 128 Misc. 2d 733 | n/a | One commits second-degree burglary if he knowingly and unlawfully enters or remains in occupied structure with intent to commit crime against person or property. West's C.R.S.A. S 18-4-203. | Krein's headnote not found using judicial opinion. | Are unlawful entry or remaining in a building elements of second degree burglary? |
| 15057 | Smith v. State Indus. Comm'n, 1938 OK 167 | n/a | Prohibition against double jeopardy precludes dual convictions for the same criminal act. U.S.C.A. Const.Amend. 5. | Krein's headnote not found using judicial opinion. | Is prohibition against double jeopardy preclude dual convictions for the same criminal act? |
| 15144 | Wasko v. Manella, 269 Conn. 527 | n/a | Equitable subrogation arises strictly as a matter of equity, regardless of whether there is an explicit agreement; it is designed to promote and to accomplish justice and is the mode which equity adopts to compel the ultimate payment of a debt by one who, in justice, equity, and good conscience, should pay it. | Krein's headnote not found using judicial opinion. | Is equitable subrogation a remedy that arises strictly as a matter of equity? |
| 15236 | People v. Sanchez, 24 Cal. 4th 983 | n/a | There may be multiple proximate causes of a homicide, even where there is only one known actual or direct cause of death. West's Ann.Cal.Penal Code S 187. | Krein's headnote not found using judicial opinion. | Can there be multiple proximate causes for a homicide? |

| | | | | | |
|---|---|---|---|---|---|
| 15449 | Atkins v. Atkins, 177 Cal. App. 2d 207 | n/a | Purpose of pretrial order is to make specific legal theories on which each party is proceeding and to crystallize and formulate issues to be litigated at trial; however, this does not mean that there must be unswerving and rigid adherence to every provision. Rules of Civil Procedure, rule 16(c). | Krein's headnote not found using judicial opinion. | What purpose do pre-trial orders serve? |
| 15539 | People v. Smith, 128 Misc. 2d 733 | n/a | In a crime such as burglary that requires a specific intent, it is essential that court give an instruction defining required concomitant intent. West's Ann.Pen.Code, S 459. | Krein's headnote not found using judicial opinion. | Does burglary require specific intent? |
| 15774 | Pope & Ballance v. Righter-Parry Lumber Co., 162 N.C. 206 | n/a | Under Revisal 1905, S 2151, providing that a negotiable instrument must contain an unconditional promise to pay a sum certain in money, a note which recited that it was subject to the provisions of a deed is conditional and not negotiable; sections 2153, 2154, defining an unconditional promise and specifying what facts do not affect negotiability, not curing the defect. | Krein's headnote not found using judicial opinion. | What are the requirements of a negotiable instrument? |
| 15844 | State v. Reynolds, 1998-Ohio-171 | n/a | "Personal contact," as used within harassment statute, merely requires visual or physical proximity; it does not require that the victim recognize the offender or know the identity of the person harassing her, nor does it require that the victim actually feel threatened, intimidated, or alarmed, only that the defendant act with the intent to cause such a reaction. I.C.A. S 708.7, subd. 1, par. b. | Krein's headnote not found using judicial opinion. | "Does personal contact as used in the harassment statute, require a physical touching or oral communication?" |
| 15947 | Smith v. State Indus. Comm'n, 1938 OK 167 | n/a | The offense of corruption by threat against a public servant involves a threat made with an intent to influence a public servant to do, or not do, some discretionary act. | Krein's headnote not found using judicial opinion. | "What does the offense of ""corruption by threat"" involve?" |
| 16079 | Smith v. State Indus. Comm'n, 1938 OK 167 | n/a | Defendant's asserted "right" to participate in adult consensual incest was not a fundamental liberty interest protected by State Constitution. Const. Art. 1, S 8; Art. 11, S 8; T.C.A. S 39-15-302. | Krein's headnote not found using judicial opinion. | Does a person have a fundamental liberty to engage in incest? |
| 16086 | State v. Martin, 102 N.J.L. 388, 400, 132 A. 93, 98 (1926) | n/a | Statute providing that any person who for hire drills a well shall keep a log, a copy of which shall be furnished to the division of water upon forms prescribed by the chief of division of water, constituted a reasonable exercise of the power of the General Assembly to pass laws for the conservation of the natural resources of the state, and was not violative of either the state or the federal constitution. R.C. S 1521.05. | Krein's headnote not found using judicial opinion. | Does conservation of natural resources come under the state constitution? |
| 16262 | State v. Campbell Cty. Sch. Dist., 2001 WY 19 | n/a | Consent or reasonable mistake as to age of victim is no defense to charge of first-degree sexual assault on child. Neb.Rev.St. S 28-319(1)(c). | Krein's headnote not found using judicial opinion. | Is consent a defense to first degree sexual assault on a child? |
| 16597 | People v. Ramirez, 112 Cal. App. 507 | n/a | When burglary is predicated on an unlawful entry, a defendant must have had the intent to commit a crime other than criminal trespass at the time of entry; intent may be inferred from the circumstances of the entry. McKinney's Penal Law S 140.25(2). | Krein's headnote not found using judicial opinion. | Does burglary require proof of a crime other than trespass? |

| | | | | | |
|---|---|---|---|---|---|
| 16634 | Morton v. Solambo Copper Mining Co., 26 Cal. 527 | n/a | If a discoverer of a mineral lode locates the same in accordance with the mining customs of the district, by placing upon the lode a notice that he and certain others (giving their names) claim the same for themselves, and enters upon and works the same thereunder, such location and entry give such other parties a vested right as tenants in common in said lode, although they do not know that the location has been made in their names; and the discoverer cannot devest such rights of the others without their consent, by taking away the notice and putting another in its place, with other names in it. | Krein's headnote not found using judicial opinion. | Can a person locate a mining claim for others? |
| 16844 | In re Mario S., 38 Misc. 3d 444 | n/a | Alien child, who was brought from Mexico to the United States by his mother to live with his father when he was about six months old, was eligible for special immigrant juvenile (SIJ) status; child was an unmarried person under 21 years of age, at the time child's motion was filed and granted he was a dependent child under New York law as he was a juvenile delinquent placed in the legal custody of a state agency and was under the continuing jurisdiction of the Family Court, child's father had abandoned him under New York law, child's reunification with his father, who had been deported to Mexico, was not possible, child's reunification with his mother was tenuous given her apparent immigration status, and it was not in child's best interests to be returned to Mexico, as he would be a stranger in a foreign land were he to be forced to return there. Immigration and Nationality Act, S 101(a)(27)(J), 8 U.S.C.A. S 1101(a)(27)(J); 8 C.F.R. S 204.11(c). | Krein's headnote not found using judicial opinion. | Do eligibility requirements for juvenile immigrants hinge primarily on a reunification determination? |
| 16865 | Richard v. Connecticut Elec. Mfg. Co., 200 A.D. 681 | n/a | Time drafts, payable four months after date, and drawn in New York for acceptance and payment in Japan, held "foreign bills of exchange," under Negotiable Instruments Law, SS 210, 213, the drawer of which was discharged by failure to present them for acceptance and to protest them for nonacceptance, under sections 111, 260, and not "inland bills of exchange," which, under section 189, it was not necessary to protest for nonacceptance; section 130, as to presentment for payment not being necessary to charge a person primarily liable, being inapplicable. | Krein's headnote not found using judicial opinion. | What is an inland bill of exchange? |
| 16893 | Hall v. Parks, No. 07-08-0321-CV, 2009 WL 1393280 | n/a | Evidence was sufficient that a seller waived his contractual right to require his written consent prior to an assignment of an executory contract for the conveyance of real property. The assignee delivered the assignment to the seller and the seller acquiesced to her taking over the contract. The assignee paid the seller for three years and her payments were accepted. During this period, the seller never exercised his rights under the executory contract. Thus, the seller's silence and inaction for such an unreasonable time, coupled with his knowledge of the assignee's interest in the contract, indicated his intention to waive his contractual right to written consent. | Krein's headnote not found using judicial opinion. | "Once a right is waived, is it lost forever?" |

| 16913 | U.S. v. Jackson, 904 F. Supp. 118 | n/a | There was no circularity in bribery instructions which defined "unlawfully" as "corruptly" and defined "corruptly" as "wrongful design." | Krein's headnote not found using judicial opinion. | Was there circularity in bribery instructions which defined unlawfully as corruptly and defined corruptly as wrongful design? |
|---|---|---|---|---|---|
| 16929 | In re Citigroup Inc. Sec. Litig., SHS, 2014 WL 3610988 | n/a | If arbitration is invoked in response to lawsuit, it must be done early in the case. | Krein's headnote not found using judicial opinion. | "If arbitration is invoked in response to a lawsuit, should it be done as early as possible?" |
| 17037 | Minor v. Minor, No. A-06-1006, 2008 WL 582503, at *1 (Neb. Ct. App. Mar. 4, 2008) | n/a | Evidence on counterclaim to quiet title by way of adverse possession, in action for summary ejectment, was insufficient to warrant giving counterclaimant's requested jury instruction on adverse possession of an identified portion of property; counterclaimant did not plead adverse possession of specified portion of tract in her counterclaim and presented no evidence at trial that she adversely possessed only identified portion thereof, only known and visible line or boundary mentioned in claimant's evidence did not correspond to portion of property claimed, and counterclaimant claimed adverse possession of entire parcel at every opportunity during trial. West's N.C.G.S.A. S 1-40. | Krein's headnote not found using judicial opinion. | Do the Courts recognize claims for adverse possession of an identified portion of property owned by another? |
| 17243 | State v. White, 115 Wis. 2d 696 | n/a | Essential elements of felonious breaking or entering are breaking or entering, that such breaking or entering was of any building, and that such breaking or entering was with intent to commit any felony or larceny therein. | Krein's headnote not found using judicial opinion. | What are the elements of breaking and entering? |
| 17286 | Smith v. State Indus. Comm'n, 1938 OK 167 | n/a | Where defendant was either not guilty of committing any crime or was guilty of breaking and entering with intent to steal key to automobile which he was later found driving, court was not required to charge jury that it could find defendant not guilty of burglary in fourth degree but guilty of breaking and entering alone. 11 Del.C. SS 395, 3706. | Krein's headnote not found using judicial opinion. | What is burglary in the fourth degree? |
| 17313 | People v. Herskowitz, 41 N.Y.2d 1094, 1095, 364 N.E.2d 1127, 1127 (1977) | n/a | Scope of crime of bribery encompasses all public servants. Penal Law 1965, S 200.00. | Krein's headnote not found using judicial opinion. | Does the scope of the crime of bribery encompass all public servants? |
| 17905 | People v. Jones, 2017 WL 3262112 | n/a | The mental state for murder is knowledge, while the mental state for involuntary manslaughter is recklessness. S.H.A. 720 ILCS 5/9-1(a)(1, 2), 5/9-3. | Krein's headnote not found using judicial opinion. | Is mental state of involuntary manslaughter considered as recklessness? |
| 18690 | Clifford v. U.S. Fid. & Guar. Co., 1926 OK 564 | n/a | Officers and crew of liquor-laden vessel held subject to prosecution for conspiracy to violate laws of United States, though corporeally at all times outside jurisdiction of United States. 18 U.S.C.A. S 88. | Krein's headnote not found using judicial opinion. | "Does international law permit the exercise of jurisdiction over conspirators who have never entered the United States, where the conspiracy was directed to violation of the United States law within the United States?" |
| 18867 | Williams v. United States, 47 Ct. Cl. 316 | n/a | Where a statute enacts that there shall be 26 additional passed assistant and assistant paymasters on the active list of the navy, the President in his discretion may direct that the whole number so added to the active list shall be of the higher grade. Act March 3, 1903, 32 Stat. 1197, 34 U.S.C.A. S 334. | Krein's headnote not found using judicial opinion. | Is the President empowered to appoint either assistant or passed assistant paymasters? |

| 19070 | Underwood v. Harkins, 2011 WL 2457680 | n/a | Deputy superior court clerk for Georgia county was confidential subordinate of elected superior court clerk, so that clerk could demand deputy's loyalty, and thus, First Amendment did not prohibit clerk from dismissing deputy for running against clerk in political party's primary election for clerk's office; under Georgia law, deputy had powers and duties which were identical to those of clerk, even if deputy's everyday duties under clerk's predecessor had not extended to outer limits authorized by Georgia law. U.S.C.A. Const.Amend. 1; West's Ga.Code Ann. SS 15-6-59(b), 15-6-61(a). | Krein's headnote not found using judicial opinion. | Are the powers and duties of a deputy clerk the same as that of a superior court clerk? |
| 19571 | Bank of Am., N.A. v. Rice, 2017 WL 4931814 | n/a | Documents attached to and incorporated within a complaint may be considered in connection with a motion for judgment on the pleadings or a motion to dismiss for failure to state a claim without converting it into a motion for summary judgment, because the obvious purpose of rule requiring conversion of motion to dismiss for failure to state a claim to motion for summary judgment if matters outside the pleadings are presented is to preclude any unfairness resulting from surprise when an adversaryintroduces extraneous material on a motion to dismiss for failure to state a claim, and to allow a party a reasonable time in which to produce materials to rebut an opponent's evidence once the motion is expanded to include matters beyond those cont ained in the pleadings. Rules Civ.Proc., Rule 12(b), (b)(6), (c), West's N.C.G.S.A. S 1A-1. | Krein's headnote not in judicial opnion | "If documents are attached to and incorporated within a complaint, do they become part of the complaint?" |
| 19651 | In re J.M., 2012-Ohio-5283 | n/a | Motion to dismiss because claim asserted against defendant is barred by affirmative matter avoiding legal effect of claim is analogous to motion for summary judgment. Ill.Rev.Stat.1991, ch. 110, P 2-619(a)(9). | Krein's headnote not in judicial opnion | Is motion to dismiss analogous to motion for summary judgment? |
| 19663 | Wright v. State of Ga., 373 U.S. 284, 291–92, 83 S. Ct. 1240, 1245, 10 L. Ed. 2d 349 (1963) | n/a | Negro defendants could not constitutionally be convicted of violation of breach of the peace statute for refusal to leave municipally owned park where police officers' order to leave was violative of defendants' rights under the Equal Protection Clause. Code Ga., S 26-5301; U.S.C.A.Const. Amend. 14. | Krein's headnote not found using judicial opinion. | Can a person be constitutionally convicted merely for not complying with an order to leave a premise? |
| 19665 | People v. Henderson, 138 Cal. App. 2d 505 | n/a | Words "uttering" or "to utter" as used in definition of forgery to effect that forgery is intent to defraud involved in making of a forged instrument or knowingly "uttering" the same mean substantially to offer. S.H.A. ch. 38, S 17-3. | Krein's headnote not found using judicial opinion. | What is the gist of an offence of forgery? |
| 19673 | Wiese v. Wiese, 107 So. 2d 208, 210 (Fla. Dist. Ct. App. 1958) | n/a | Where plaintiff simply walked out on partnership and defendants did not appropriate the business, including assets consisting of personalty and accounts collectible, such assets, on dissolution of partnership, should have been divided by ordering a sale of those assets and distributing balance after deduction of costs of sale, and it was improper to determine value of personalty and to require defendants to pay plaintiff one half of such value which in effect required defendants to buy plaintiff's half interest in such inventory. | Krein's headnote not found using judicial opinion. | Does the sale of all the assets of a firm carry with it the partnership good will? |

| | | | | | |
|---|---|---|---|---|---|
| 19756 | Gould v. McCarty, 11 N.Y. 57 (1854) | n/a | Code, S 388, which provides that, where a discovery is refused by a party against whom an order for that purpose has been granted, the court may exclude the document from being given in evidence at all, or punish the party refusing, or both, is not a substitute for, but is auxiliary to, 2 Rev.St. p. 199, SS 21, 26, empowering the court in such cases as shall be deemed proper to compel any party "to produce and discover books, papers, and documents in his possession or power relating to the merits of any such suit, or of any defense therein," and, in case of a refusal to obey an order for discovery, to strike out any plea or notice that may be given. | Krein's headnote not found using judicial opinion | "Is the code providing for the discovery of books or papers, a substitute for the provisions of the Revised Statutes, but auxiliary thereto?" |
| 19974 | Hays v. Clark, 175 Cal. App. 2d 565 | n/a | Parol evidence is not admissible to vary the terms of a deed of conveyance but is admissible to show the terms of a collateral agreement in connection with the conveyance. West's Ann.Code Civ.Proc. S 1962, subd. 2. | Krein's headnote not found using judicial opinion | Can a collateral agreement made as a consideration for the transfer of property be proven by parol testimony? |
| 20313 | State Farm Mut. Auto. Ins. Co. v. State of Connecticut Dep't of Transp., 2015 WL 9242168 | n/a | Constitutional requirement under takings clause that business regulated by government rate or price controls be permitted return sufficient to assure its financial health does not necessarily require any particular level of profit above that adequate to attract and retain invested capital. U.S.C.A. Const.Amend. 5. | Krein's headnote not found using judicial opinion | "Can a regulation limit stringently the return recovered on investment, for investors' interests provide only one of the variables in the constitutional calculus of reasonableness?" |
| 20372 | People v. Grayson, 83 Cal. App. 2d 516 | n/a | Since the act of placing a bet on a horse race is punishable as an offense separate from offense of receiving, holding, or forwarding the bet under subdivision 6 and not specifically punishable as a separate offense under subdivision 3, making the receiving, holding, or forwarding the bet an offense, the placing of the bet is not punishable under section 31, defining principals, and hence one who placed a bet with defendant charged with receiving and holding a bet on a horse race was not an "accomplice" whose testimony required corroboration. West's Ann.Pen.Code, SS 31, 337a, subd. 3, 6, S 1111. | Krein's headnote not found using judicial opinion | Can the giver and the receiver be accomplices in a bribery case? |
| 20418 | United States v. O'Brien, 994 F. Supp. 2d 167 | n/a | Indictment charging former officials at Massachusetts Office of Probation with offenses arising out of alleged scheme to defraud involving process of hiring probation officers, in alleging that defendants gave state legislators the opportunity to fill probation positions to which those legislators were not legitimately entitled, alleged payment of a bribe, as required for bribery concerning programs receiving federal funds. 18 U.S.C.A. S 666(a)(2). | Krein's headnote not found using judicial opinion | Does the bona fide exception apply to intentional misapplication of payments for legitimate purposes? |
| 20640 | State v. White, 115 Wis. 2d 696 | n/a | In absence of legislative definition of term or particular meaning in law, court gives words their ordinary meaning. | Krein's headnote not found using judicial opinion | How is the term alter commonly understood by the courts? |
| 20881 | People v. Smith, 128 Misc. 2d 733, 491 N.Y.S.2d 236 (Crim. Ct. 1985) | n/a | Convictions for rape of an intoxicated woman and rape of an unconscious woman, arising from one act of sexual intercourse, could not both stand, and judgment would be modified to strike conviction for rape of an unconscious woman. West's Ann.Cal.Penal Code S 261(a)(3, 4). | Krein's headnote not found using judicial opinion | Does sexual intercourse with a sleeping victim amount to the crime of rape? |

| | | | | | |
|---|---|---|---|---|---|
| 20968 | Drexel Burnham Lambert Grp. Inc. v. Galadari, 610 F. Supp. 114, 777 F.2d 877 | n/a | District court should have afforded New York corporation reasonable discovery and evidentiary hearing before dismissing corporation's action for default on promissory note executed by foreign citizen and partnership on grounds of international comity where decree establishing committee of receivers to liquidate assets of citizen and partnership was foreign government's first attempt to frame insolvency law, so that American courts had no experience with that government's bankruptcy practices and procedures. | Krein's headnote not found using judicial opinion | Is there a presumption that courts should defer to bankruptcy proceedings in other countries which are essentially fair? |
| 21084 | People v. Moore, 285 A.D.2d 827 | n/a | Where defendant did not snatch pocketbook of complaining witness nor accost her nor attempt to rob her, but rather seized her by the throat and dragged her to a place of concealment and tried to overcome her resistance by force and where he did not desist when she fought him off and kept mauling her when she hit him with the few things she had at hand, intent to commit rape was inferred from defendant's conduct, even though initial assault took place in daylight and on public street. S.H.A. ch. 38, SS 4-4, 8-4(a). | Krein's headnote not found using judicial opinion | Does an intent to commit rape need to be expressed? |
| 21189 | In re Stevenson, 2008 WL 748927 | n/a | Under District of Columbia law as predicted by the Court of Appeals for the District of Columbia, deed of trust lender's knowledge, at time it agreed to refinance an earlier mortgage signed by debtor and her son, that son would not agree to sign deed of trust because he felt that interest rate was too high did not prevent lender, after advancing funds on deed of trust signed only by debtor in order to pay off earlier mortgage, from asserting claim to be equitably subrogated to rights of prior mortgagee, where deed of trust lender, by advancing funds other than as volunteer to completely pay off prior mortgage on which it was not primarily liable, satisfied all of requirements for equitable subrogation, given that subrogation would not work any injustice on son, but simply require him to honor indebtedness that he voluntarily assumed by signing prior mortgage, while preventing him from obtaining windfall of an unencumbered interest in mortgage/deed of trust property without having advanced even a penny for that benefit. | Krein's headnote not found using judicial opinion | Is the purpose of equitable subrogation to prevent forfeiture and unjust enrichment? |
| 21263 | State v. Baca, 1997-NMSC-018 | n/a | Defendant's entry into members-only retail store, as non-member, was not unauthorized entry, and he thus did not commit crime of burglary, even if he was aware that his companion who presented a membership card was also non-member, since there was no particular security or privacy interest at stake inside store that justified departure from presumption that retail store was open to public; defendant's entry into shopping area of store did not implicate feeling of violation and vulnerability associated with burglary, there was no unique security interest served by store's membership policies, and defendant's entry into store, albeit deceptive, granted him access to otherwise open shopping area. West's NMSA S 30-16-3. | Krein's headnote not found using judicial opinion | What is the interest that the burglary statute protects? |

| | | | | | |
|---|---|---|---|---|---|
| 21503 | Rivera v. City of New York, 306 A.D.2d 456 | n/a | Defendant waived any objection to plaintiff's 60 day delay in providing errata sheet outlining purported corrections to her deposition testimony by waiting three years to bring motion to strike; plaintiff was significantly prejudiced by three year delay and defendant offered no reason for three year delay. McKinney's CPLR 3013, 3116(a). | Krein's headnote not found using juidical opinion | "If the witness fails to sign the deposition within 60 days after it has been submitted for signing, may it be used at trial as if it had been signed?" |
| 21520 | Cty. of San Diego v. State of California, 15 Cal. 4th 68 | n/a | Constitutional prohibition on state creation of unfunded mandates for local governments prohibits state from shifting to counties the costs of state programs for which the state assumed complete financial responsibility before adoption of the amendment. West's Ann.Cal. Const. Art. 13B, S 6. | Krein's headnote not found using judicial opinion | What are the goals of constitutional provisions pertaining to tax and government spending limitations? |
| 21523 | Jones v. LeFrance Leasing Ltd. P'ship, 110 A.D.3d 1032 | n/a | Trial court was within its discretion in precluding elevator repair company from claiming that it did not have prior notice of elevator's allegedly defective conditions, at trial in action to recover damages for wrongful death, where company failed to produce evidence in response to court's directive and plaintiffs' repeated discovery demands, it failed to provide a consistent and credible explanation as to why it failed to do so, and its failure to produce its records as directed was willful. McKinney's CPLR 3126(3). | Krein's headnote not found using judicial opinion | "If the credibility of court orders and the integrity of the judicial system are to be maintained, can a litigant ignore court orders with impunity?" |
| 21537 | Helvering v. Wheeling Mold & Foundry Co., 71 F.2d 749 (4th Cir. 1934) | n/a | Transferee of all assets and business of corporation engaged in manufacturing steel and iron products, under clause in contract requiring transferee to pay and discharge all "debts" of transferor corporation, held liable for unpaid excess profits tax assessed against transferor for year in which transfer was made. Revenue Act 1926, S 280(a)(1), 26 U.S.C.A.Int.Rev.Acts, page 212. | Krein's headnote not found using judicial opinion | Are taxes imposed for public purposes? |
| 21550 | JPMorgan Chase Bank, Nat. Ass'n v. Weinberger, 142 A.D.3d 643 | n/a | In order to establish standing to bring foreclosure action, it is unnecessary to give factual details of delivery of the note in order to establish that possession was obtained prior to a particular date. | Krein's headnote not found using judicial opinion | "When a note is endorsed in blank, can it be negotiated by delivery alone?" |
| 21558 | Estate of Linnick, 171 Cal. App. 3d 752 | n/a | Attorney representing vendor of property under contingent fee arrangement did not, at time he died, have a sufficient claim to attorney fees to entitle his estate to bring, under West's Ann.Cal.Prob.Code S 851.5, which provides for hearing of petition by decedent's estate concerning any claim involving property allegedly wrongfully possessed by another, an action against law firm which succeeded decedent/attorney for fees paid firm on completion of sale of property. | Krein's headnote not found using judicial opinion | Does the appellation given to a pleading determine the nature of an action and the issues involved? |

| | | | | | |
|---|---|---|---|---|---|
| 21562 | Noble v. Nugent, 89 Ill. 522 | n/a | A., through the agency of C., obtained a loan of money from B., who lived some distance away in the country, said loan being secured by a deed of trust from A. to C., and one of the notes given therefor being made payable to C. It appeared that C. had been for a number of years B.'s agent in loaning and collecting his money, and that C. was in the habit of making statements to him of the funds which had passed through his hands. B. admitted that he had received from C. the money due on some of the notes which had been paid by A. to C., and also certain installments of interest on another of the notes, after the same had matured. Held, that A., having received no notice from B. not to pay over the money to C., was protected in making subsequent payments to C. | Krein's headnote not found using judicial opinion | Does the authority of an agent being limited to a particular business make it special? |
| 21566 | Nordin v. First Tr. & Sav. Bank of Pasadena, 118 Cal. App. 697 | n/a | Payee's indorsement of mortgage notes in blank and deposit of them with bank as collateral made them negotiable and transferable by delivery. Civ.Code S 3115. | Krein's headnote not found using judicial opinion | Is indorsement without additional words a sufficient indorsement? |
| 21592 | Mayes v. Chrysler Credit Corp., 37 F.3d 9 (1st Cir. 1994) | n/a | Although lender's insistence that corporate president's spouse also sign guaranty of corporate indebtedness, as prerequisite to lender's approval of corporate loan, may have violated the Equal Credit Opportunity Act (ECOA) and permitted president to bring suit under the ECOA if his spouse had not signed guaranty and if loan was not approved, lender's conduct did not permit president's spouse, having executed guaranty, to raise lender's alleged violation of policies embodied in the ECOA as defense to suit on guaranty; as to president's spouse, lender's conduct did not violate any policy embodied in the ECOA at time guaranty was signed and loan proceeds were advanced. Consumer Credit Protection Act, S 701(a)(1), as amended, 15 U.S.C.A. S 1691(a)(1). | Krein's headnote not found using judicial opinion | Is a guarantor also an applicant? |
| 21603 | Nat. Gas Pipeline Co. of Am., LLC v. 3.39 Acres of Land, More or Less, in Cameron Par., Louisiana, No. 09-724, 2009 WL 2135151, at *2 (W.D. La. July 10, 2009) | n/a | Natural gas company was entitled to compel arbitration against a second gas company seeking a right of way through a leasehold estate held by the original gas company. The two companies were parties to an interconnect agreement that required the companies to design and construct an interconnection in a location the was mutually agreeable to both and to resolve any disputes through arbitration. The contract, which involved interstate commerce, was within the ambit of the FAA and thus the court was able to compel arbitration. Natural Gas Act, S 1, 15 U.S.C.A. S 717; 9 U.S.C.A. S 2. | Krein's headnote not found using judicial opinion | Can the right to arbitrate be waived? |
| 21633 | In re Lewis' Est., 37 Pa. D. & C. 463 (Orph. 1940) | n/a | Arizona law imposes upon business partners a fiduciary duty within meaning of the discharge exception for debt for fraud or defalcation while acting in fiduciary capacity. Bankr.Code, 11 U.S.C.A. S 523(a)(4). | Krein's headnote not found using judicial opinion | Is surety subrogated to the rights and remedies of the creditor against the principal? |
| 21640 | People v. Vertrees, 169 Cal. 404 | n/a | In a prosecution against V. for burglary with intent to steal papers used in proceedings before the grand jury, leading up to an indictment against K., evidence that defendant showed witnesses a check drawn by K. in favor of V. is not admissible. | Krein's headnote not found using judicial opinion | Is time a material ingredient of burglary? |

| | | | | | |
|---|---|---|---|---|---|
| 21642 | State v. Leshore, 358 P.3d 878 | n/a | Prosecutor's statement during closing argument, stating that it was defendant's intention all along to get the $480 that she was not legally entitled to get without her husband's permission, or without her husband's signature on the check, did not constitute prosecutorial misconduct in forgery case; prosecutor was discussing the claims the State had to prove, including intent to defraud, and prosecutor was not asserting a personal opinion about defendant's guilt. | Krein's headnote not found using judicial opinion | What is the culpable mental state for aggravated burglary? |
| 21663 | Morehouse v. Allen, 213 Cal. 1 | n/a | "Maturity date" of substituted note, which fixed date note sued on was payable, was date on which it became payable. | Krein's headnote not found using judicial opinion | "Is the provision for renewal contained within a contract, note or instrument valid and enforceable?" |
| 21673 | Wells Fargo Bank, NA v. Ostiguy, 127 A.D.3d 1375 | n/a | Genuine issue of material fact as to whether servicer of mortgage loan actually possessed underlying note at time foreclosure action against mortgagor was commenced, so as to have standing to bring suit as holder, precluded summary judgment in action to foreclose mortgage on real property. McKinney's Uniform Commercial Code S 3-301. | Krein's headnote not found using judicial opinion | Can a holder of an instrument enforce payment even though he is not an owner? |
| 21688 | Stroock Plush Co. v. Talcott, 129 A.D. 14 | n/a | Hypothetical pleadings are bad. | Krein's headnote not found using judicial opinion | Is contingent pleading allowed? |
| 21692 | Baker v. State, 17 S.W. 144 | n/a | Under Rev.St. art. 1641, now Rules of Civil Procedure, rule 574, which provides that, on appeal from justice court, the transcript must be filed in the county court on or before the first day of the second term after such appeal is taken, an appeal is irregular where the transcript is not filed until several terms after the appeal bond was given, and a failure to move for the dismissal thereof at the second term after the filing of the bond does not waive the irregularity. | Krein's headnote not found using judicial opinion | What does the term willful mean in public road statutes? |
| 21696 | Heffelfinger v. Dep't of Pub. Welfare, 789 A.2d 349 | n/a | Three consecutive monthly transfers of $9,000.00 each to irrevocable trust rendered applicant ineligible for Medicaid funding for nursing home care for a five-month period; the Department of Public Welfare (DPW) properly divided $27,000 by the average monthly cost to a private patient, even though its policy clarifications required a penalty for full months only and treatment of each transfer is treated as a separate event with its own penalty period. Social Security Act, S 1917(c)(1)(E)(i), as amended, 42 U.S.C.A. S 1396p(c)(1)(E)(i); 55 Pa. Code SS 178.104(d), 275.4(h)(2)(i). | Krein's headnote not found using judicial opinion | Can an estoppel be claimed by one who has acted in ignorance of the true state of facts and who was without means of informing himself of their existence? |
| 21726 | Dahl v. City of Shawnee, 130 P.3d 1247 | n/a | Defendant's objection to introduction of preliminary hearing testimony of murder victim's girlfriend was sufficiently specific to preserve issue for appeal; defendant objected to girlfriend's failure to appear and to introduction of her preliminary hearing transcript. | Krein's headnote not found using judicial opinion | When is a decision of a legislative body quasi-judicial in nature? |

| | | | | | |
|---|---|---|---|---|---|
| 21741 | U.S. Bank Nat. Ass'n v. State Bank & Tr. Co., 45 F. Supp. 3d 582 | n/a | Under Mississippi law, new home-equity line of credit (HELOC) issued to husband and new deed of trust executed by him, upon maturity of original HELOC issued to husband and then-living wife, were renewals, rather than novations, of original HELOC and original deed of trust, for purposes of determining whether new deed of trust had priority over intervening deed of trust, which secured a refinancing loan which had paid the then-outstanding balance of original HELOC, which was not closed when it was paid off, and for which cancellation of original deed of trust had not been requested; promissory note for new HELOC was for amount owing on original HELOC when it matured, credit application for note indicated a purpose to "Renew" the original HELOC, disbursement request signed by husband expressly described the loan as "a secured renewal" of HELOC, deed of trust beneficiary stamped HELOC as "RENEWED NOT PAID," and new deed of trust recited that it was "an extension and renewal of" original deed of trust. West's A.M.C. S 89-5-21(5). | Krein's headnote not found using judicial opinion | Does novation extinguish the old contract? |
| 21742 | Peat, Marwick, Mitchell & Co. v. Superior Court, 200 Cal. App. 3d 272 | n/a | Appellate court would review substantive contentions of petition for review by extraordinary writ challenging preclusion order under the second of two orders, although the petitioner did not properly challenge that order, where the Supreme Court had directed the appellate court to afford writ review and the review of the prior order would be futile, as it would involve review of a moot order. | Krein's headnote not found using judicial opinion | "Is the purpose of a motion in limine to avoid the obviously futile attempt to ""unring the bell""?" |
| 21772 | Baker v. State, 17 S.W. 144 | n/a | Under Rev.St. art. 1641, now Rules of Civil Procedure, rule 574, which provides that, on appeal from justice court, the transcript must be filed in the county court on or before the first day of the second term after such appeal is taken, an appeal is irregular where the transcript is not filed until several terms after the appeal bond was given, and a failure to move for the dismissal thereof at the second term after the filing of the bond does not waive the irregularity. | Krein's headnote not found using judicial opinion | Does the criminality of the offense of obstructing a public road depend on whether it was done willfully? |
| 21774 | Helvering v. Wheeling Mold & Foundry Co., 71 F.2d 749 (4th Cir. 1934) | n/a | Transferee of all assets and business of corporation engaged in manufacturing steel and iron products, under clause in contract requiring transferee to pay and discharge all "debts" of transferor corporation, held liable for unpaid excess profits tax assessed against transferor for year in which transfer was made. Revenue Act 1926, S 280(a)(1), 26 U.S.C.A.Int.Rev.Acts, page 212. | Krein's headnote not found using judicial opinion | Does debt and tax have the same meaning? |
| 21794 | Janssen v. State, 842 N.W.2d 680 | n/a | Under the doctrine of implied preemption, mortgagee's state law counterclaims against mortgagors for unjust enrichment, abuse of process, civil conspiracy, and tortious interference with prospective business relationships, which were premised on mortgagors aggregate actions in federal bankruptcy court, were preempted by the federal bankruptcy code; federal jurisdiction over bankruptcy proceedings was exclusive, there was a need for uniformity in the bankruptcy arena, and there were federal sanctions available to mortgagee for the filing of frivolous and malicious pleadings in bankruptcy court. U.S. Const. art I, S 8, cl. 4; 28 U.S.C.A. S 1334(a). | Krein's headnote not found using judicial opinion | Is harassment a specific intent crime? |

| | | | | | |
|---|---|---|---|---|---|
| 21799 | Baker v. State, 17 S.W. 144 | n/a | Under Rev.St. art. 1641, now Rules of Civil Procedure, rule 574, which provides that, on appeal from justice court, the transcript must be filed in the county court on or before the first day of the second term after such appeal is taken, an appeal is irregular where the transcript is not filed until several terms after the appeal bond was given, and a failure to move for the dismissal thereof at the second term after the filing of the bond does not waive the irregularity. | Krein's headnote not found using judicial opinion | Does liability for obstructing a public road depend on the fact that it was done willfully? |
| 21800 | Baker v. State, 17 S.W. 144 | n/a | Under Rev.St. art. 1641, now Rules of Civil Procedure, rule 574, which provides that, on appeal from justice court, the transcript must be filed in the county court on or before the first day of the second term after such appeal is taken, an appeal is irregular where the transcript is not filed until several terms after the appeal bond was given, and a failure to move for the dismissal thereof at the second term after the filing of the bond does not waive the irregularity. | Krein's headnote not found using judicial opinion | Does a person have to act willfully in order to be held liable or obstruction of a public road? |
| 21846 | Embee Advice Establishment v. Holtzmann, Wise & Shepard, 191 A.D.2d 194 | n/a | Wife's express representations in settlement agreement precluded her claims that husband fraudulently misrepresented his finances to her. | Krein's headnote not found using judicial opinion | What is the focus of modern pleading rules? |
| 21852 | Anderson v. State, 21 Okla. Crim. 135 | n/a | A county court is without jurisdiction to try municipal offenses. | Krein's headnote not found using judicial opinion | "Will an application for a continuance on the ground of the absence of leading counsel be denied, where the defendant is duly represented by his other counsel?" |
| 21854 | Roseman v. Mahony, 86 A.D. 377 | n/a | Although an instruction has been erroneously refused, if its rejection has produced no injury to the party asking it, the judgment will not be reversed therefor. | Krein's headnote not found using judicial opinion | When does a pre-existing debt constitute a consideration? |

# EXHIBIT B

| Row # | Citation | Headnote # | Headnote Text | Judicial Text | Memo Question |
|---|---|---|---|---|---|
| 41 | Hornor v. Hanks, 22 Ark. 572, 572–73 (1861) | 11 | The right of a plaintiff must be adjudicated upon as it existed at the time of the filing of his bill; and if he has a good cause of action, which had not then accrued, the bill cannot be maintained: And it would seem that a court of chancery would not allow a defendant to modify the relief to which the plaintiff was entitled when the suit was begun, by setting up as a defense a change of circumstances produced by the use of legal process or remedies after he is brought into court: So, if the defendant has a judgment against the plaintiff when the bill is filed, his case is not strengthened by a subsequent sale and purchase of the property in dispute under such judgment. | The right of a plaintiff must be adjudicated upon as it existed at the time of the filing of his bill; and if he has a good cause of action, which had not then accrued, the bill cannot be maintained: And it would seem that a court of chancery would *573 not allow a defendant to modify the relief to which the plaintiff was entitled when the suit was begun, by setting up as a defense a change of circumstances produced by the use of legal process or remedies after he is brought into court: So, if the defendant has a judgment against the plaintiff when the bill is filed, his case is not strengthened by a subsequent sale and purchase of the property in dispute under such judgment. | Must the right of a plaintiff be adjudicated upon as it existed at the time of filing of his bill? |
| 90 | Ward v. Nat'l Lumber & Box Co., 54 Wash. 304, 306–07, 103 P. 1, 2 (1909) | 1 | The factory act, Laws 1905, p. 164, c. 84, entitled "An act providing for the protection and health of employees in factories, mills and workshops where machinery is used," apparent purpose of which is to protect operatives in factories in every particular consistent with reasonable operation, though in terms providing only for safeguards for all "vats, pans, trimmers, cut-off, gang edger, and other saws, planers, cogs, gearings, belting, shafting, coupling, set screws, live rollers, conveyors, mangles in laundries, and machinery of other similar description," required friction wheels to be guarded. | The enacting clause is: 'An act providing for the protection and health of employés in factories, mills and workshops where machinery is used.' The act further provides for ventilation and sanitary conditions, guarding of trapdoors and hatchways, etc.; so that it will be seen from a reading of the act that the evident intention of the Legislature was to protect operatives in factories in every manner and in every particular in which they could be protected, consistent with the reasonable operation of the particular factory which was engaged in business. The appellant invokes the rule of ejusdem generis, and insists that the friction wheel, not being specified in the factory act and not being of the same kind or genus as any of the machinery specially mentioned, does not fall under the head of machinery of other or similar description, and that therefore the assumption of risk attaches in this kind of a case. | Does the Factory Act provide safeguard to the machinery and appliances and protect employees in manufacturing establishments? |
| 121 | Lowry Nat. Bank v. Fickett, 122 Ga. 489, 50 S.E. 396, 397–98 (1905) | 7 | Where petitioner alleged that information and facts sought were necessary, beneficial and material to his suit for damages to be brought against defendants, and were peculiarly within knowledge of defendants and unknown to petitioner, and that petitioner was unable to ascertain or prove such facts and information without resort to defendants' conscience, and that petitioner had no adequate and complete remedy at law, and that discovery was necessary in order for petitioner to bring his suit against proper parties, such suit to be brought upon securing information requested, petition stated cause of action for writ of discovery. | Code, 38-1102-yet where, as in this case, the plaintiff alleges that 'the information and facts sought are necessary, beneficial, and material to the petitioner's suit for damages to be brought against defendants, and are peculiarly within the knowledge of the defendants, and unknown to petitioner,' and further that 'the petitioner is unable to ascertain or prove such facts and information without resort to the conscience of the defendants, and that the petitioner has no adequate and complete remedy at law', and that the discovery sought is 'necessary to plaintiff in order for him to bring his suit against the proper parties' or party to recover damages for the injury to his automobile, said suit to be brought upon securing the information herein requested,' the petition stated a cause of action and it was not error to overrule the general demurrer. | Is the discovery granted upon the principle that the party cannot prove the thing sought to be discovered without resort to the conscience of the other party? |
| 131 | Orem v. Wrightson, 51 Md. 34, 43 (1879) | 4 | The doctrine of subrogation, or substitution, is a peculiar feature of equity. It is not founded in contract, but has its origin in a sense of natural justice. So soon as a surety pays the debt of the principal debtor, equity subrogates him to the place of the creditor, and gives him every right, lien and security to which the creditor could have resorted for the payment of his debt. | The doctrine of subrogation, or substitution as it is also termed, is a peculiar feature of equity. It is not founded in contract, but has its origin in a sense of natural justice. So soon as a surety pays the debt of the principal debtor, equity subrogates him to the place of the creditor, and gives him every right, lien, and security, to which the creditor could have resorted for the payment of his debt. | "As soon as surety pays the debt of principal debtor, does equity subrogate him to place of creditor that is paid and give him every right, lien and, security to which creditor could have resorted for payment of debt?" |

| | | | | | |
|---|---|---|---|---|---|
| 174 | Short v. Frink, 151 Cal. 83, 89, 90 P. 200, 202 (1907) | 7 | Where a general objection to a question in a deposition susceptible of an answer that may be properly given in evidence has been overruled, the objector's only remedy, after the answer is read, is a motion to strike out, and, in the absence of such motion, the question will not be considered on appeal, since, in the absence of actual knowledge, specific objection, or intimation to the contrary, a trial court has the right to assume that a question in a deposition susceptible of an answer properly admissible in evidence has been so answered. | If objection to a question susceptible of a proper answer contained in the deposition is based on the nature of the answer given and recorded, it is the duty of the objector to so frame his objection as to specifically bring the matter to the attention of the court. The court is no more called upon to heed a mere general objection of incompetency, irrelevancy, and immateriality, where the testimony is being read from the deposition, than it is where the witness is testifying viva voce, as to which the wellsettled rule has already been stated. In the absence of actual knowledge, specific objection, or intimation to the contrary, the trial court has the right to assume that a question in a deposition susceptible of an answer that may properly be given in evidence has been so answered, and the objector's utmost remedy, in the event that the answer is read, is, as stated in People v. Lawrence, supra, a motion to strike out objectionable evidence given in response to the question. Defendant should have moved to strike out this evidence, if he had desired to subsequently urge error in regard thereto, and, in the absence of such motion, we would not consider the matter on appeal. | "Where a general objection to a question in a deposition susceptible of an answer that may be properly given in evidence has been overruled, is the objector's only remedy a motion to strike out?" |
| 317 | Fuller v. Alex. Hollander & Co., 61 N.J. Eq. 648, 649 (1900) | 1 | The jurisdiction of the court of chancery to compel production, for inspection, of books and papers, whether of an individual or corporation, is confined to cases where the same are evidential in a cause pending in the court, and cases arising under a bill filed for relief as well as discovery, or under a bill filed for discovery only, in aid of a prosecution or defense in litigation pending or contemplated. | The jurisdiction of the court of chancery to compel production, for inspection, of books and papers, whether of an individual or corporation, is confined to cases where the same are evidential in a cause pending in the court, and cases arising under a bill filed for relief as well as discovery, or under a bill filed for discovery only, in aid of a prosecution or defense in litigation pending or contemplated. | "Is the jurisdiction of the court of chancery to compel production, for inspection, of books and papers confined to cases of an individual or corporation where the same are evidential in a cause pending in the court?" |
| 329 | Farm Inv. Co. v. Wyoming Coll. & Normal Sch., 10 Wyo. 240, 68 P. 561, 561 (1902) | 37 | In the absence of contract prescribing the rights and duties of the parties, or furnishing a basis for their determination, a creditor to whom are transferred and delivered, by his debtor, negotiable promissory notes of third persons, as collateral security, is required to exercise ordinary diligence to preserve the pecuniary value of the pledge. | In the absence of contract prescribing the rights and duties of the parties, or furnishing a basis for their determination, it will be settled that a creditor to whom are transferred and delivered, by his debtor, negotiable promissory notes of third persons, as collateral security, is required to exercise ordinary diligence to preserve the pecuniary value of the pledge. | "When the debtor transfers a negotiable promissory note of the third person to the creditor, is the creditor required to exercise any ordinary diligence to preserve the pledge?" |
| 335 | Am. Mfg. Co. v. City of St. Louis, 270 Mo. 40, 192 S.W. 402, 403 (1917) | 5 | State may exercise sovereign right of taxation with respect to all persons, things, and business activities which exist under protection of its laws, its power being unlimited as to mode, form, and extent of taxation, unless restrained by federal Constitution, where subjects to which it applies are within jurisdiction. | On the other hand, the state may exercise this sovereign right with respect to all persons, things, and business activities which exist under the protection of its laws, and, as is said by the same distinguished author (Id.): "Unless restrained by provisions of the federal Constitution, the power of the state as to the mode, form, and extent of taxation is unlimited, where the subjects to which it applies are within her jurisdiction." | "Can a state exercise sovereign right of taxation with respect to all persons, things, and business activities which exist under protection of its laws in any mode and form?" |
| 398 | Lance v. Calvert, 21 Pa. Super. 102, 105 (1902) | 3 | Where one who has signed a note, leaving the date blank, delivers it in that condition to a joint maker for the purpose of raising money upon it, he thereby impliedly authorizes that joint maker to fill in the date as of the time when the note is actually negotiated. | When one who has signed a note, leaving the date blank, delivers it in that condition to a joint maker for the purpose of raising money upon it, he thereby impliedly authorizes that joint maker to fill in the date as of the time when the note is actually negotiated. | "When one who has signed a note, leaving the date blank, delivers it in that condition to a joint maker for the purpose of raising money upon it, does he impliedly authorize the joint maker to fill in the date as of the time when the note is actually negotiated?" |
| 406 | Bryan v. Jeffreys, 104 N.C. 242, 10 S.E. 167, 168 (1889) | 6 | Under Code, § 1357, providing that depositions shall be returned to the court, and opened and passed on by the clerk, after having first given the parties or their attorneys at least one day's notice, and that all depositions when allowed by the clerk, or by the judge upon appeal from the clerk's order, are legal evidence, if the witness be competent, a deposition without such notice, and which was not passed on by the clerk, is properly excluded. | In the course of the trial, the defendant offered in evidence the deposition of R. M. Jeffreys. It appeared that no notice was ever given to the plaintiff, and that the deposition had not been passed upon by the clerk, as provided in Code, § 1357. His honor very properly refused to admit it, and the defendant's exception in this respect must be overruled. | "Shall depositions be returned to the court, and opened and passed on by the clerk, after having first given the parties or their attorneys at least one day's notice?" |

| # | Case | # | Holding | Source Text | Question |
|---|------|---|---------|-------------|----------|
| 481 | Barnum v. Barnum, 42 Md. 251, 324 (1875) | 15 | Where a witness who has been examined before the auditor, applies to be allowed to correct his testimony then given, the court, if entirely satisfied, upon a preliminary examination of the witness, that there is a real mistake, and that there is no collusion, may permit him to appear in open court and there to correct his previous testimony, by answering over a particular interrogatory, propounded by the direction of the court. | Gilmour, one of the witnesses examined before the auditor, to appear in open Court, and there to correct his previous testimony, by answering over a particular interrogatory, propounded by the direction of the Court. This is a practice not very often resorted to, and is one of great delicacy, because of its being liable to abuse. If, however, the Court is entirely satisfied, upon a preliminary examination of the witness, that there is a real mistake, and that there is no collusion, it will permit, what was done in this case, the witness to correct his testimony. | "Where a witness who has been examined before the auditor, applies to be allowed to correct his testimony then given, may the court permit him to appear in open court and there to correct his previous testimony?" |
| 528 | Prestridge v. Lazar, 132 Miss. 168, 95 So. 837, 838 (1923) | 1 | The doctrine of subrogation applies wherever any person other than a mere volunteer pays a debt or demand which in equity or good conscience should have been satisfied by another, or where one person finds it necessary for his own protection to pay the debt for which another is primarily liable, or where one has such an interest in property as makes it necessary for him to get in an outstanding claim or equity for its protection. | The courts should rather incline to extend than restrict the operation of the doctrine. It applies wherever any person other than a mere volunteer pays a debt or demand which in equity and good conscience should have been satisfied by another, or where one person finds it necessary for his own protection to pay the debt for which another is primarily liable, or where a party has such an interest in property as makes it incumbent on him to get in an outstanding claim or equity for its protection. | Does the doctrine of equitable subrogation apply wherever any person other than a mere volunteer pays a debt or demand which in equity and good conscience should have been satisfied by another? |
| 542 | Bacon v. Towne, 58 Mass. 217, 218 (1849) | 8 | Since the abolition of special pleading, the defendant, in an action for malicious prosecution, may give evidence of facts tending to prove the plaintiff guilty of the criminal charge imputed to him, both in proof of probable cause and in mitigation of damages, although he is not prepared with evidence to show that these facts were known to him at the time of the complaint against the plaintiff. | Since the abolition of special pleading, the defendant in an action for malicious prosecution may give evidence of facts tending to prove the plaintiff guilty of the criminal charge imputed to him, both in proof of probable cause, and in mitigation of damages; although he is not prepared with evidence to show, that these facts were known to him at the time of the complaint against the plaintiff. | Can a defendant prove facts tending to mitigate damages in an action for malicious prosecution? |
| 590 | Conahan v. Fisher, 233 Mass. 234, 242 (1919) | 7 | General commercial customs or particular usages of trade, not contrary to express terms or necessary implications of contract, or special meaning attached under dialect of particular business, occupation, or profession to use of word or phrase, and not invoking application of law contrary to established principles of common or statutory law, are valid. | General commercial customs or particular usages of trade, when not contrary to the express terms or necessary implications of the contract, or a special meaning attaching under the dialect of a particular business, occupation or profession to the use of a word or phrase, and not invoking the application of law contrary to the established principles of the common or statutory law, are valid. | Are general commercial customs or particular usages of trade valid when used in a contract? |
| 606 | Atkins v. Guice, 21 Ark. 164, 165 (1860) | 2 | The provisions of the statute (Dig., chap. 55, sec. 18), requiring exhibits to be attached to the depositions of witnesses proving them, do not apply to a case where the exhibits are made a part of the bill or answer, and filed with it. It is sufficient if the witness refer to the exhibits by their marks and numbers as designated and identified by the answer, etc. | The provisions of the statute (Dig., chap. 55, sec. 18), requiring exhibits to be attached to the depositions of witnesses proving them, do not apply to a case where the exhibits are made a part of the bill or answer, and filed with it. It is sufficient if the witness refer to the exhibits by their marks and numbers as designated and identified by the answer, etc. | "Do the provisions of the statute requiring exhibits to be attached to the depositions of witnesses proving them, apply to a case where the exhibits are made a part of the bill or answer?" |
| 643 | Gerseta Corp. v. Equitable Tr. Co. of New York, 241 N.Y. 418, 425–26, 150 N.E. 501, 504 (1926) | 1 | "Subrogation" includes every instance in which one pays a debt for which another is primarily answerable, and which in equity and good conscience should have been discharged by the latter, so long as payment was made either under compulsion or protection of some interest of payer, and in discharge of existing liability. | Subrogation, an equitable doctrine taken from the civil law, is broad enough to include every instance in which one party pays a debt for which another is primarily answerable, and which in equity and good conscience should have been discharged by the latter, so long as the payment was made either under compulsion or for *426 the protection of some interest of the party making the payment, and in discharge of an existing liability. | "Is subrogation broad enough to include every instance in which one party pays a debt for which another is primarily answerable, and which, in equity and good conscience, should have been discharged by the latter?" |
| 699 | Farmers' Oil & Guano Co. v. S. Ref. Co., 10 Ga. App. 415, 73 S.E. 350, 351 (1911) | 2 | Where a motion is made to continue the trial of a case because of the absence of a witness, the judge may consider the evidence expected to be given by the absent witness, in connection with the pleadings, for the purpose of determining the materiality of the evidence, and if he finds that the evidence of the absent witness would be either immaterial or inadmissible he should refuse the motion. | Where a motion is made to continue the trial of a case because of the absence of a witness, the judge may consider the evidence expected to be given by the absent witness, in connection with the pleadings, for the purpose of determining the materiality of the evidence, and if he finds that the evidence of the absent witness would be either immaterial or inadmissible, he should refuse the motion. | "Should the judge consider the evidence expected to be given by the absent witness, where a motion is made to continue the trial of a case because of the absence?" |

| | | | | | |
|---|---|---|---|---|---|
| 734 | Beadall v. Moore, 199 A.D. 531, 533–34, 191 N.Y.S. 826, 828 (App. Div. 1922) | 6 | Place of performance of a bill of exchange or a promissory note is the place of payment, and when a bill or note is executed in one state or country and payable in another, the general rule is that it is governed as to the nature, validity, interpretation, and effect by the laws of the state where made payable, without regard to the place where it is written, signed, or dated; it being presumed that the parties contracted with reference to the laws of that place, especially where the note would be void in the place where made and valid where payable. | The place of performance of a bill of exchange or a promissory note is the place of payment. When a bill or note is executed in one state or country and payable in another, the general *534 rule is that it is governed, as to its nature, validity, interpretation, and effect, by the laws of the state where made payable, without regard to the place where it is written, signed, or dated; it being presumed that the parties contracted with reference to the laws of that place (8 C. J. 92), especially where the note would be void in the place where made and valid where it was payable. | Which law governs a note when it is executed in one state and payable in another? |
| 738 | Beadall v. Moore, 199 A.D. 531, 533–34, 191 N.Y.S. 826, 828 (App. Div. 1922) | 6 | Place of performance of a bill of exchange or a promissory note is the place of payment, and when a bill or note is executed in one state or country and payable in another, the general rule is that it is governed as to the nature, validity, interpretation, and effect by the laws of the state where made payable, without regard to the place where it is written, signed, or dated; it being presumed that the parties contracted with reference to the laws of that place, especially where the note would be void in the place where made and valid where payable. | The place of performance of a bill of exchange or a promissory note is the place of payment. When a bill or note is executed in one state or country and payable in another, the general *534 rule is that it is governed, as to its nature, validity, interpretation, and effect, by the laws of the state where made payable, without regard to the place where it is written, signed, or dated; it being presumed that the parties contracted with reference to the laws of that place (8 C. J. 92), especially where the note would be void in the place where made and valid where it was payable. | What law governs the validity of a note when it is executed in one state and payable in another? |
| 811 | Guy v. Du Uprey, 16 Cal. 195, 199 (1860) | 2 | A mere stranger, who voluntarily pays off a mortgage, but who fails to take an assignment and allows the mortgage to be canceled and discharged, cannot afterward come into equity, and in the absence of fraud, accident, or mistake, have the mortgage reinstated and himself substituted in the place of the mortgagee. | No authority has been cited, and we think none can be found, to sustain the proposition that a mere stranger, who steps forward and voluntarily pays money due upon a mortgage, and fails to take an assignment, but allows the mortgage to be canceled and discharged, can afterwards come into equity, and in the absence of fraud, accident and mistake, have the mortgage reinstated and himself substituted in the place of the mortgagee. | "Can a mere stranger, who voluntarily pays off a mortgage, but who fails to take an assignment and allows the mortgage to be canceled and discharged, have the mortgage reinstated and himself substituted in the place of the mortgagee?" |
| 816 | Gadd v. McGuire, 69 Cal. App. 347, 364–65, 231 P. 754, 762 (Cal. Ct. App. 1924) | 11 | Determination of elements entering into imposition of tax, including selection of property to be taxed, determination of basis for measurement of tax, and definition of purpose for which levied, is legislative function, while steps taken for assessment and collection, such as valuation of property pursuant to fixed rules, extension, assessment, and collection of taxes, and details of computation, appraisement, and adjustment, are mere machinery, delegable to other than governmental agencies. | Every system of taxation consists of two parts: (1) The elements which enter into the imposition of the tax, and (2) *365 the steps taken for its assessment and collection. The former is a legislative function; the latter is mere machinery, and is delegable to other than governmental agencies. Cooley on Taxation (4th Ed.) vol. 1, § 78. The legislative powers include the selection of the property to be taxed, the determination of the basis for the measurement of the tax, and the definition of the purpose for which the tax shall be levied. Id. On the other hand, powers which are not legislative include the power to value property for taxation pursuant to fixed rules, the power to extend, assess, and collect the taxes, and the power to perform any of the innumerable details of computation, appraisement, and adjustment. | Does every system of taxation consist of a legislative function and machinery delegable to other than governmental agencies? |
| 888 | Beadall v. Moore, 199 A.D. 531, 533–34, 191 N.Y.S. 826, 828 (App. Div. 1922) | 6 | Place of performance of a bill of exchange or a promissory note is the place of payment, and when a bill or note is executed in one state or country and payable in another, the general rule is that it is governed as to the nature, validity, interpretation, and effect by the laws of the state where made payable, without regard to the place where it is written, signed, or dated; it being presumed that the parties contracted with reference to the laws of that place, especially where the note would be void in the place where made and valid where payable. | The place of performance of a bill of exchange or a promissory note is the place of payment. When a bill or note is executed in one state or country and payable in another, the general *534 rule is that it is governed, as to its nature, validity, interpretation, and effect, by the laws of the state where made payable, without regard to the place where it is written, signed, or dated; it being presumed that the parties contracted with reference to the laws of that place (8 C. J. 92), especially where the note would be void in the place where made and valid where it was payable. | Is a note governed according to its nature when it is executed in one state and payable in another? |

| | | | | | |
|---|---|---|---|---|---|
| 938 | Stirling v. Garritee, 18 Md. 468, 474–75 (1862) | 4 | The act of 1856, for simplifying pleadings and practice, abolishes old forms and provides and classifies new ones, but does not destroy the distinctive nature of actions. Substantial principles, underlying the system of jurisprudence, must be regarded, and must, to some extent, govern the forms of action. | The purpose of the Legislature in passing the Act of 1856, was, "to simplify the rules and forms of pleadings and practice in courts of law;" and while the Act classifies and provides the forms of action for those on contract, and for actions for wrongs independent of contract, yet it must be apparent that the distinctive nature of actions remains, although the old forms have been abolished and new ones adopted. It is impossible to disregard the substantial principles which *475 underlie our system of jurisprudence, and to some extent govern the forms of action. | "Despite the simplification brought in by the Act of 1856, is it necessary that a pleading must still regard substantial principles underlying the system of jurisprudence and govern the forms of action?" |
| 1020 | Wisegarver v. Yinger, 122 S.W. 925, 928 (Tex.Civ.App. 1909) | 2 | The certificate of the officer taking depositions on written interrogatories propounded under the general statute need not show that the witnesses were first cautioned and sworn to testify to the truth; the statute relating thereto applying only to depositions taken under oral examination. | We overrule the forty–third assignment of error, which also complains of the action of the court in refusing to quash the depositions of these witnesses. It is insisted that the certificate must show that the witnesses were first cautioned and sworn to testify to the truth, etc. That provision of the statute relates to depositions when taken under oral examination, and it was not intended to apply where their answers are taken by written interrogatories propounded under the general statute. | Does the certificate of the officer taking depositions on written interrogatories propounded under the general statute need not show that the witnesses were first cautioned and sworn to testify to the truth? |
| 1029 | In re Turner, 119 F. 231, 235 (S.D. Iowa 1902) | 3 | An officer of the United States army acting in the discharge of his duty, in obedience to orders of the secretary of war, who in turn is executing an act of congress, is not subject to arrest on a warrant or order of a state court. | So that, both by reason and the highest authority of the land, I hold that an officer of the United States army, in the discharge of his duty, acting in obedience to commands by the secretary of war, who in turn is executing an act of congress, is not subject to arrest on a warrant or order of a state court, and that such arrest is wholly illegal; and it follows that Major Turner is discharged from custody and detention. | "Is an officer of the United States army who is acting in the discharge of his duty, in obedience to orders of the secretary of war, who in turn is executing an act of congress, subject to arrest on a warrant or order of a state court?" |
| 1135 | Bolmer v. Edsall, 90 N.J. Eq. 299, 299 (1919) | 7 | The high seas being common to all mankind, vessels afloat upon it are regarded as parts of the territory of the nations whose flag they fly and to which they belong, and the ships of a nation, wherever they may be, are regarded as part of its territory. | The high seas, being common to all mankind, vessels afloat upon it are regarded as parts of the territory of the nations whose flag they fly and to which they belong, and the ships of a nation, wherever they may be, are regarded as part of its territory. | "The high seas being common to all mankind, are vessels afloat upon it regarded as parts of the territory of the nations whose flag they fly and to which they belong, and the ships of a nation, wherever they may be, regarded as part of its territory?" |
| 1148 | Jet, Inc. v. Sewage Aeration Sys., 223 F.3d 1360, 1366 (Fed. Cir. 2000) | 8 | The doctrine of "issue preclusion," also sometimes known as collateral estoppel, which serves to bar the revisiting of issues that have been already fully litigated, requires four factors: (1) identity of the issues in a prior proceeding; (2) the issues were actually litigated; (3) the determination of the issues was necessary to the resulting judgment; and, (4) the party defending against preclusion had a full and fair opportunity to litigate the issues. Restatement (Second) of Judgments SS 27, 39. | The doctrine of issue preclusion (also sometimes known as "collateral estoppel"), which serves to bar the revisiting of "issues" that have been already fully litigated, requires four factors: (1) identity of the issues in a prior proceeding; (2) the issues were actually litigated; (3) the determination of the issues was necessary to the resulting judgment; and, (4) the party defending against preclusion had a full and fair opportunity to litigate the issues. | How is doctrine of collateral estoppel or issue preclusion identified under the law? |
| 1201 | Negaubauer v. Great Northern Ry. Co., 92 Minn. 184, 185 (Minn. 1904) | 1 | Where by statute a right of action is given which did not exist at common law, and the statute giving the right also fixes the time within which the right may be enforced, the time so fixed becomes a limitation or condition upon the right, and will control, no matter in what forum the action is brought. | Now, it is well settled that where by statute a right of action is given which did not exist at common law, and the statute giving the right also fixes the time within which the right may be enforced, the time so fixed becomes a limitation or condition upon the right, and will control, no matter in what forum the action is brought. | "Where a statute a right of action is given which did not exist at common law, does the time so fixed become a limitation or condition upon the right?" |

| | | | | | |
|---|---|---|---|---|---|
| 1241 | Georgia Cas. Co. v. Campbell, 266 S.W. 854, 855-56 (Tex. Civ. App. 1924) | 3 | When party has notice that amended pleading is to be filed injecting a new issue, he must exercise some degree of diligence to secure testimony he hopes to secure, and not wait until case is called and then ask trial court to grant him until another term to take such steps. | We do not understand that a party to a suit, when he has notice that a pleading is to be filed injecting a new issue in a case, can pass his judgment upon the necessity of his taking steps to such investigation as is necessary to meet the new issue thus presented, and that by deciding in his own mind that he has not sufficient time to make such defense, obviate the necessity of taking some step to indicate his good faith and belief in the probable existence of such defensive testimony. This is a question for the trial court *856 to pass on. It certainly devolves on such party to exercise some degree of diligence in making some effort to secure the testimony he hopes to secure, and not to wait until the case is called, and then ask the trial court to grant him until another term to take such steps. | "Should a party exercise some degree of diligence in making some effort to secure the testimony, and not to wait until the case is called and ask the trial court to grant another term to take such steps?" |
| 1253 | Wallace v. Morgan, 23 Ind. 399, 403, 1864 WL 2105, at *2 (Ind. 1864) | 2 | To render a local custom valid to control a general principle, it should be well defined, in general use at the place by those engaged in the business to which it is applicable, and of such standing as to raise a reasonable presumption that it was known to those making shipments to such place. It should be uniform, and so well settled that persons in the trade must be considered as contracting with reference to it. | To render such a custom valid to control a general principle, it should be well defined, be in general use at the place by those engaged in the business to which it is applicable, and of such standing as to raise a reasonable presumption that it is known to those engaged in making shipments to such place. It should be uniform, and so well settled that persons in the trade must be considered as contracting with reference to it. | When is a custom rendered valid to control a general contract principle? |
| 1262 | Pac. Exp. Co. v. Needham, 37 Tex. Civ. App. 129, 132–33, 83 S.W. 22, 23 (1904) | 6 | Under Rev.St.1895, art. 1277, providing that, on the first application for a continuance on the ground of want of testimony, the applicant shall make affidavit that such testimony is material and that he has used due diligence, an application for continuance is properly refused where it fails to state the use of due diligence to procure the required testimony. | Appellant's third assignment of error complains of the action of the *133 court below in overruling its first application for a continuance. In this there was no error, because the application did not comply with the statutory requirements, in that it failed to state that appellant had used due diligence to procure the testimony of the absent witnesses. Rev.St.1895, art. 1277; Crawford v. Saunders (Tex.Civ.App.) 29 S.W. 102; Railway Co. v. Aiken, 71 Tex. 377, 9 S.W. 437; Railway Co. v. Woolum, 84 Tex. 570, 19 S.W. 782; Brown v. Bank, 70 Tex. 750, 8 S.W. 599. | Is an application for continuance properly refused where it fails to state the use of due diligence to procure the required testimony? |
| 1291 | Capitol Hill State Bank v. Rawlins Nat. Bank of Rawlins, 24 Wyo. 423, 160 P. 1171, 1180 (1916) | 9 | A negotiable instrument payable to order may be transferred by the payee or holder without indorsement, though in such case the transferee takes only the title and right of his transferor, and does not become a holder in due course, but has only the equitable instead of the legal title, which principle is recognized by the Negotiable Instruments Law. (Compiled Statutes, 1910, Section 3207.) | However, it is well settled that a negotiable instrument payable to order may be transferred by the payee or holder without indorsement, though in such case the transferee takes only the title and right of the one so transferring it, and does not become the holder in due course, but has only the equitable instead of the legal title. | Does the transferee becomes holder in due course when a negotiable instrument payable to order is transferred by the payee or holder without indorsement? |
| 1322 | Irvine v. Irvine, 76 U.S. 617, 625 (1869) | 2 | Generally, when one makes a deed of land, covenanting therein that he is the owner, and he subsequently acquires an outstanding and adverse title, his new acquisition inures to the benefit of his grantee, on the principle of estoppel. | It is a general rule, that when one makes a deed of land, covenanting therein that he is the owner, and subsequently acquires an outstanding and adverse title, his new acquisition enures to the benefit of his grantee, on the principle of estoppel. | "When one makes a deed of land and subsequently acquires an outstanding and adverse title, does his new acquisition inure to the benefit of his grantee on the principle of estoppel?" |

| | | | | | |
|---|---|---|---|---|---|
| 1344 | Potter v. Harvey, 30 Iowa 502, 503 (1871) | 1 | While the general rule is recognized that, if the purchaser of property, who, it is claimed, relied upon the representations of the seller, shall receive and pay for it after he has learned that such representations were false, he will be estopped from afterward claiming damages on account of such false representations; it is, nevertheless, held, that this rule has no just application, if the contract was made by an agent of the purchaser, and the principal was ignorant of the false representations having been made, although he knew the facts showing their falsity. | We may say, in answer to the objections made in argument, that it may be true, as a general proposition of law, that, if the purchaser of property, who relied upon the representations of the seller, shall receive and pay for it without objection, after he knows that the representations were false, he would be estopped from afterward claiming damage for such false representations. But, if his contract was made through an agent, and the principal was ignorant of the false representations having been made, although he knew the facts showing them false, the rule would have no just application. *504 Whether the means of knowledge within the reach of plaintiff's agent were such as to defeat the remedy for the false representations of the defendant, was a question of fact for the jury, under the law which was fairly for defendant, at least, given them by the court, to wit: That, if he knew, or had an opportunity to judge as to the truth or falsity of the representations, the defendant would not be liable. | Is a person whoknows that the representations of an agent were false estopped from afterward claiming damage for such false representations when the principal of the agent is ignorant of the false representations? |
| 1368 | Thomson v. State, 21 Wyo. 196, 130 P. 850, 851 (1913) | 2 | The statute, Comp.Stat. 1910, S 6252, which provides that when an indictment charges an offense against the property of another by larceny, embezzlement or obtaining under false pretenses, the jury, on conviction, shall ascertain and declare in their verdict the value of the property stolen, embezzled or falsely obtained, is mandatory, and applies where the accused is charged with stealing a horse, although horse stealing is declared by statute to be a felony regardless of the value of the animal stolen. | The statute provides: "When the indictment charges an offense against the property of another by larceny, embezzlement or obtaining under false pretenses, the jury, on conviction, shall ascertain and declare in their verdict the value of the property stolen, embezzled or falsely obtained." Section 6252, Comp. Stat. 1910. The Attorney General argues that this section of the statute does not apply to the case at bar for the reason that horse stealing is declared to be a felony regardless of the value of the animal stolen, and for the further reason that at the time section 6252, supra, | "Upon conviction of larceny, embezzlement or obtaining under false pretense, should a jury ascertain and declare in their verdict the value of the property stolen, embezzled or falsely obtained? " |
| 1370 | In re Delaware R.R. Tax, 85 U.S. 206, 214 (1873) | 4 | The exercise of state's authority to tax its corporations and all their property and franchises and to graduate the tax on corporations according to their business or income or the value of their property when this is not done by discriminating against rights held in other states and the tax is not on imports, exports or tonnage or transportation to other states, does not conflict with any constitutional power of congress. | The exercise of the authority which every State possesses to tax its corporations and all their property, real and personal, and their franchises, and to graduate the tax upon the corporations according to their business or income, or the value of their property, when this is not done by discriminating against rights held in other States, and the tax is not on imports, exports, or tonnage, or transportation to other States, cannot be regarded as conflicting with any constitutional power of Congress. | Does the exercise of state's authority to tax its corporations and all their property and franchises conflict with any constitutional power of congress? |
| 1380 | Sykes v. First Nat. Bank, 2 S.D. 242, 49 N.W. 1058, 1062–63 (1891) | 4 | The distinction between legal assignments that may be enforced in an action at law, and an equitable assignment that can only be enforced in an equitable action, seems to be this: That an assignment, to be valid as a legal assignment that can be enforced in an action at law, must be of a debt or fund in existence at the time, and of the whole thereof, or of a part of a debt or fund then in existence, and the assignment or order transferring the fund must be accepted by the debtor or person holding the fund. But in an equitable assignment of a specific debt or fund, or a part of a specific debt or fund, it is not an essential element that the debt should have been earned or the fund be in esse at the time of the assignment or order transferring the debt or fund, or that the assignment or order transferring the specific debt or fund, or a part thereof, should be accepted by the debtor or holder of the specific fund. | The distinction between legal assignments that may be enforced in an action at law, and an equitable assignment that can only be enforced in an equitable action, seems to be this: That an assignment, to be valid as a legal assignment that can be enforced in an action at law, must be of a debt or fund in existence at the time, and of the whole thereof, or of a part of a debt or fund then in existence, and the assignment or order transferring the fund accepted by the debtor or person holding the fund. But in an equitable assignment of a specific *1063 debt or fund, or part of a specific debt or fund, it is not an essential element that the debt should have been earned or the fund be in esse at the time of the assignment or order transferring the debt or fund, or that the assignment or order transferring the specific debt or fund, or a part thereof, should be accepted by the debtor or holder of the specific fund. | What is the distinction between a legal assignment and an equitable assignment? |
| 1560 | Farmers' & Mechanics' Nat. Bank v. Dearing, 91 U.S. 29, 34 (1875) | 2 | States have no power, against the national will, by taxation or otherwise, to retard, impede, burthen, or in any manner control, the operation of the constitutional laws enacted by Congress to carry into execution the powers vested in the General Government. | Any thing beyond this is 'an abuse, because it is the usurpation of power which a single State connot give.' Against the national will 'the States have no power, by taxation or otherwise, to retard, impede, burthen, or in any manner control, the operation of the constitutional laws enacted by Congress to carry into execution the powers vested in the General Government.' | "Do States have power by taxation to control, the operation of the constitutional laws enacted by Congress to carry into execution the powers vested in the General Government?" |

| | | | | | |
|---|---|---|---|---|---|
| 1562 | Galt v. Woliver, 103 Ill. App. 71, 74 (1902) | 3 | It was unlawful to leave standing on public highway from one to four months machine whose appearance was calculated to frighten ordinarily gentle horses passing by, and person doing so was liable to person who in exercise of due care was injured by actions of ordinarily gentle horse caused by his fright at obstruction. | We hold that it was unlawful to leave standing upon a public highway from one to four months a machine whose appearance is calculated to frighten ordinarily gentle horses passing by, and that he who does so is liable to a person who in the exercise of due care is injured by the actions of an ordinarily gentle horse caused by his fright at the obstruction. | Is a person liable for leaving an obstruction or a machine in a public highway for an unreasonable time? |
| 1598 | Galt v. Woliver, 103 Ill. App. 71, 74 (1902) | 3 | It was unlawful to leave standing on public highway from one to four months machine whose appearance was calculated to frighten ordinarily gentle horses passing by, and person doing so was liable to person who in exercise of due care was injured by actions of ordinarily gentle horse caused by his fright at obstruction. | We hold that it was unlawful to leave standing upon a public highway from one to four months a machine whose appearance is calculated to frighten ordinarily gentle horses passing by, and that he who does so is liable to a person who in the exercise of due care is injured by the actions of an ordinarily gentle horse caused by his fright at the obstruction. | "Is a person liable for leaving an obstruction, or a machine in a public highway?" |
| 1603 | In re Broad St. in Sewickley Borough, 165 Pa. 475, 478 (1895) | 6 | Taxes proper or general taxes proceed upon the theory that the existence of government is a necessity; that it cannot continue without means to pay its expenses; that for those means it has the right to compel all citizens and property within its limits to contribute, and that for such contribution it renders no return of special benefit to any property, but only secures to the citizen that general benefit which results from protection to his person and property. * * * On the other hand, special assessments or special taxes proceed upon the theory that when a local improvement enhances the value of neighboring property that property should pay for the improvements. | Justice Brewer, 'proceed upon the theory that the existence of government is a necessity; that it cannot continue without means to pay its expenses; that for those means it has the right to compel all citizens and property within its limits to contribute; and that for such contribution it renders no return of special benefit to any property, but only secures to the citizen that general benefit which results from protection to his person and property, and the promotion of those various schemes which have for their object the welfare of all. * * * On the other hand, special assessments or special taxes proceed upon the theory that when a local improvement enhances the value of neighboring property, that property should pay for the improvement.' | What theory does general tax proceed upon? |
| 1681 | Heist v. Jacoby, 71 Neb. 395, 98 N.W. 1058, 1058 (1904) | 2 | One who permits young hogs of about 100 pounds weight to go at large on his own premises, so that they wander across the highway to a neighbor's cornfield, and in running back frighten a passer's horses, is not liable for injuries to the wagon and the person, produced by such fright. | One whose sole fault is the permitting of young hogs of 60 to 100 pounds weight to go at large upon his own premises, so that they wander across the highway to a neighbor's cornfield, and in running back frighten a passer's horse, held not liable for injuries to the passer's equipage and person produced by such fright. | "Can one permit hogs to wander across the highway which frightens a horse, be made liable for injuries? " |
| 1739 | State of New Hampshire v. State of Louisiana, 108 U.S. 76, 90 (1883) | 5 | One nation may, if it sees fit, demand of another nation the payment of a debt owing by the latter to a citizen of the demanding nation, such power being recognized as an incident of national sovereignty and involving also the national powers of levying war and making treaties. | There is no doubt but one nation may, if it sees fit, demand of another nation the payment of a debt owing by the latter to a citizen of the former. Such power is well recognized as an incident of national sovereignty, but it involves also the national powers of levying war and making treaties. | "Can one nation, if it sees fit, demand of another nation the payment of a debt owing by the latter to a citizen of the demanding nation?" |
| 1758 | City of Owatonna v. Chicago, R. I. & P. Ry. Co., 156 Minn. 475, 477 (1923) | 1 | When a court is asked to exercise the extraordinary power of mandamus, it is not limited to a consideration of facts and conditions as they existed at the time the proceeding was initiated, but should take into consideration the facts and conditions existing at the time it determines whether a peremptory writ should issue. | When a court is asked to exercise the extraordinary power of mandamus, it is not limited to a consideration of the facts and conditions as they existed at the time the proceeding was initiated, but should take into consideration the facts and conditions existing at the time it determines whether a peremptory writ should issue. | "In exercising the extraordinary power of mandamus, is the court limited to a consideration of the facts and conditions as they existed at time the proceeding was initiated?" |

| | | | | | |
|---|---|---|---|---|---|
| 1823 | Travers v. Jennings, 39 S.C. 410, 17 S.E. 849, 850 (1893) | 1 | 18 St. at Large, p. 373, S 3, Act 1883, relating to depositions on commission, provides that every deposition so taken shall be retained by the officer taking it until he delivers it, with his own hand, into the court for which it is taken, or it shall "be by such officer sealed up" and directed and forwarded to such court, either by mail or express, and "remain under his seal" until opened in court, etc. Held, that a deposition transmitted to the court by mail in a sealed envelope is not admissible in evidence unless the notary by some act, such as the use of sealing wax with his notarial seal stamped thereon, or his name written across it, or the writing of his name across the flap of the envelope after sealing it, evinces that the package sent to the court is his work. | The text of the third section of the Act of 1883 (18 St. at Large, 373) is as follows: "Every deposition taken under the provisions of the two preceding sections shall be retained by the officer taking it until he delivers it, with his own hand, into the court for which it is taken, or it shall, together with a certificate of the reasons, as aforesaid, of taking it, and of the notice, if any, to the adverse party, be by such officer sealed up and directed to such court, and forwarded to such court, either by mail or express, and remain under his seal until opened in court. [Italics ours.] ***"<br><br>[....]<br><br>Does not this statute require some act on the part of the notary by which he shall evince that the package sent to the court is his work? If he had used sealing wax, and had stamped thereon his notarial seal, or had used sealing wax, and had written his name across the same, or if he had written his name across the flap of the envelope after he had caused it to adhere to the body of the envelope, it seems to us that any one of these methods would have answered the demands of the statute in this respect. | "Shall every deposition so taken be retained by the officer taking it until he delivers it, with his own hand, into the court?" |
| 1857 | In re Davis' Est., 1840 WL 3922, at *1 (Pa. 1840) | 7 | After the dissolution of a partnership by agreement, the partner who is authorized to settle the estate may borrow money on the credit of the firm for the purpose of paying the debts of the firm; and if the credit is given in good faith, though with a knowledge of the dissolution, and the money is faithfully applied to the liquidation of the joint debts, the creditor has a claim against the firm, and is not to be considered as a creditor merely of the partner borrowing. | After the dissolution of a partnership by agreement, the partner who is authorised to settle the estate, may borrow money on the credit of the firm, for the purpose of paying the debts of the firm; and if the credit is given in good faith, though with a knowledge of the dissolution, and the money is faithfully applied to the liquidation of the joint debts, the creditor has a claim against the firm, and is not to be considered as a creditor merely of the partner borrowing. | Can the liquidating partner borrow money to pay a firm debt? |
| 1875 | Fong Yue Ting v. United States, 149 U.S. 698, 724 (1893) | 3 | Chinese laborers residing in the United States are entitled, like all other aliens, who are permitted by the government to remain in the country, to all the safeguards of the Constitution, and to the protection of the laws in regard to their rights of person and of property, and to their civil and criminal responsibility; but, as they have taken no steps to become citizens, and are incapable of becoming such under the naturalization laws, they remain subject to the power of congress to order their expulsion or deportation whenever, in its judgment, such a measure is necessary or expedient for the public interest. | Chinese laborers, therefore, like all other aliens residing in the United States for a shorter or longer time, are entitled, so long as they are permitted by the government of the United States to remain in the country, to the safeguards of the constitution, and to the protection of the laws, in regard to their rights of person and of property, and to their civil and criminal responsibility. But they continue to be aliens, having taken no steps towards becoming citizens, and incapable of becoming such under the naturalization laws; and therefore remain subject to the power of congress to expel them, or to order them to be removed and deported from the country, whenever, in its judgment, their removal is necessary or expedient for the public interest. | Are aliens in United States entitled to the protection of its Constitution with respect to their rights of person and property? |
| 1882 | Beadall v. Moore, 199 A.D. 531, 533–34, 191 N.Y.S. 826, 828 (App. Div. 1922) | 6 | Place of performance of a bill of exchange or a promissory note is the place of payment, and when a bill or note is executed in one state or country and payable in another, the general rule is that it is governed as to the nature, validity, interpretation, and effect by the laws of the state where made payable, without regard to the place where it is written, signed, or dated; it being presumed that the parties contracted with reference to the laws of that place, especially where the note would be void in the place where made and valid where payable. | The place of performance of a bill of exchange or a promissory note is the place of payment. When a bill or note is executed in one state or country and payable in another, the general rule is that it is governed, as to its nature, validity, interpretation, and effect, by the laws of the state where made payable, without regard to the place where it is written, signed, or dated; it being presumed that the parties contracted with reference to the laws of that place (8 C. J. 92), especially where the note would be void in the place where made and valid where it was payable. | What govern the interpretation of a note? |
| 2004 | People v. Chicago, M. & St. P. Ry. Co., 306 Ill. 486, 494 (1923) | 14 | No exercise of the police power can disregard the constitutional guaranties in respect to the taking of private property, due process, and equal protection of the laws, or override the demands of natural justice. | Besides, 'no exercise of the police power can disregard the constitutional guaranties in respect to the taking of private property, due process and equal protection' of the laws, and it should not 'override the demands of natural justice.' | "Can an exercise of the police power disregard the constitutional guaranties in respect to the taking of private property, due process and equal protection?" |

| | | | | | |
|---|---|---|---|---|---|
| 2075 | Mt. Carmel Pub. Util. & Serv. Co. v. Pub. Utilities Comm'n, 297 Ill. 303, 309–10, 130 N.E. 693, 695–96 (1921) | 2 | Where public utility corporation is furnishing through various departments of its business different kinds of service, it cannot be compelled to carry on a branch of its business which furnishes one kind of such service at a loss, though its whole business may be conducted at a profit. A corporation may be required to fulfill an obligation imposed by its charter, even though it may be done at a loss. | Where a public utility corporation is engaged in furnishing to the public through various departments of its business, different kinds of service, it cannot **696 be compelled to carry on a branch of its business which furnishes one kind of such service at a loss, even though at the same time its whole business may be conducted at a profit. Brooks-Scanlon Co. v. Railroad Com., 251 U. S. 396, 40 Sup. Ct. 183, 64 L. Ed. 323; Northern Pacific Railroad Co. v. North Dakota, 236 U. S. 585, 35 Sup. Ct. 429, 59 L. Ed. 735, L. R. A. 1917F, 1148, Ann. Cas. 1916A, 1; *310 Norfolk & Western Railroad Co. v. West Virginia, 236 U. S. 605, 35 Sup. Ct. 437, 59 L. Ed. 745.  3 A corporation may be required to fulfill an obligation imposed by its charter even though it may be done at a loss, but the appellant, though authorized by its charter to do so, was not bound to furnish heat to the public. | Can a public utility be compelled to carry on a branch of business furnishing one kind of service at a loss? |
| 2103 | Singer v. Nat'l Gum & Mica Co., 211 A.D. 758, 759 (N.Y.A.D. 1 Dept., 1925) | 4 | Civil Practice Act, SS 288-309, 324-328, and Rules of Civil Practice, Rules 122, 140 et seq. maintain fundamental distinction between production of books and records in connection with examination of witness before trial and a discovery and inspection of such books and records. | It must be borne in mind that both the Civil Practice Act and the Rules of Civil Practice still maintain the fundamental distinction between the production of books and records used in connection with the examination of a witness before trial, and a discovery and inspection of such books and records. | Do the Civil Practice Act and Rules of Civil Practice maintain a fundamental distinction between production of books and records in connection with examination of witness before trial and a discovery and inspection of such books and records? |
| 2157 | Squires v. Lafferty, 95 W. Va. 307, 121 S.E. 90, 90–91 (1924) | 1 | The owner of the mineral underlying land possesses as incident to this ownership the right to use the surface in such manner and with such means as would be fairly necessary for the enjoyment of the mineral estate. | There being no question or contention as to ownership by the plaintiff, Milam's Fork *91  Smokeless Coal Land Company, of the coal underlying the entire 137 acres, it has also as incident to this ownership the right to use the "surface" of the land in such manner and with such means as would be fairly necessary for the enjoyment of .the mineral estate. | "Does the owner of the mineral underlying land possess, as incident to this ownership, the right to use the surface in such manner and with such means as would be fairly necessary for the enjoyment of the mineral estate?" |
| 2162 | Osgood v. Sutherland, 36 Minn. 243, 244, 31 N.W. 211, 211 (1886) | 3 | Under Gen.St.1878, c. 73, § 39 (M.S.A. S 597.13), concerning objections to depositions, the effect of a failure to give notice of the return of a deposition is, not to render it inadmissible, but simply to leave the adverse party at liberty to make at the trial all objections to its introduction which he could have made upon a motion to suppress. | The effect of a failure to give notice of the return of the depositions was not to render them inadmissible, but simply to leave the adverse party in position to make at the trial all objections to their introduction which he could have made upon a motion to suppress. Gen. St. 1878, c. 73; Tancre v. Pullman, 29 N. W. Rep. 171. | "Concerning objections to depositions, is the effect of a failure to give notice of the return of a deposition not to render it inadmissible?" |
| 2167 | Hale v. Matthews, 118 Ind. 527, 21 N.E. 43, 45 (1889) | 5 | Where it is discovered after the publication of a deposition that the seal of the officer before whom the same was taken is not attached to his certificate, the court may, although a motion to quash is made, order the deposition to be returned to the officer in order that the omission may be supplied. | After publication of the deposition it was discovered that the notary public before whom it was taken had failed to affix the impress of his seal to the certificate. Pending a motion to quash this deposition, on motion of the appellee, it was returned by the clerk, by order of the court, to the notary for the impress of his official seal. The deposition was returned while the cause was on trial. The motion to quash it was overruled by the court, and over the objection of the appellant it was read in evidence. It is now claimed that this proceeding constituted an error for which the judgment below should be reversed. The argument is that the deposition had not been on file the length of time required by section 436, Rev. St. 1881, and that the appellant was not, therefore, presumed to be prepared to meet it, and had no opportunity to move for a continuance. We do not think that the contention of the appellant can be sustained. The deposition had been filed in time, was regular in form, and the certificate was sufficient, but the evidence that the person before whom it was taken was a notary public was absent. We think it was in the discretion of the court to order the deposition returned by the clerk of the court to the notary, in order that this omission might be supplied. | "Where it is discovered after the publication of a deposition that the seal of the officer before whom the same was taken is not attached to his certificate, may the court order the deposition to be returned to the officer in order that the omission may be supplied?" |

| | | | | | |
|---|---|---|---|---|---|
| 2208 | Larus v. Bank of Com. & Tr. Co., 149 Tenn. 126, 257 S.W. 94, 100 (1923) | 4 | Where the court properly refused to grant a second continuance on count of absence of a witness, neither, the party applying therefor, nor his counsel, could prevent a trial of the case by withdrawing from the courtroom and refusing to introduce any testimony. | The court was therefore within its rights when it refused to grant contestant a second continuance on account of the absence of the witness Gavin; and, when the court declined to grant contestant another continuance or postponement on account of the absence of this witness, he nor his counsel could not prevent a trial of the case by withdrawing from the courtroom and refusing to introduce any testimony. | "Will the court refuse to grant a second continuance on count of absence of a witness, and prevent a trial of the case by withdrawing from the courtroom and refusing to introduce any testimony?" |
| 2279 | Gill v. Eagleton, 108 Neb. 179, 187 N.W. 871, 872 (1922) | 8 | At common law an "exchange of land" was a mutual grant of equal interest not necessarily in value but in dignity, as a fee for a fee the one in consideration of the other and different from the sale in that no fixed money, price or value was placed on either of the properties exchanged. | At common law an exchange of land was a mutual grant of equal interests, not necessarily in value, but in dignity, as a fee for a fee, the one in consideration of the other, and differed from a sale in that no fixed money price or value was placed on either of the properties exchanged. | "At common law, is an exchange of land a mutual grant of equal interests that is different from a sale?" |
| 2342 | Cnty. of Erie v. City of Erie, 113 Pa. 360, 367, 6 A. 136, 137 (1886) | 6 | Article IX, § 1, of the constitution, provides that "all taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax and shall be levied and collected under general laws; but the general assembly may, by general laws, exempt from taxation public property used for public purposes, actual places of religious worship," etc. This section does not declare that all property whether public or private shall be subject to taxation nor does it contain any equivalent provision. The provision therefore can not operate to repeal any pre-existing law exempting public property from taxation because there was no such law. Such property was not taxable because there was no law that made it so. The new constitution might have made it taxable, but did not; the provision that the legislation might exempt did not result in making it taxable, without such exemption. | Unless, therefore, article 9, par. 1, Const., changes the law, and makes such property taxable, it is not taxable at all, simply because there is no law making it so. The language of the section is as follows: 'All taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws; but the general assembly may, by general laws, exempt from taxation public property used for public purposes, actual places of religious worship, places of burial not used or held for private or corporate profit, and institutions of purely public charity.' This section does not declare that all property, whether public or private, shall be subject to taxation, nor does it contain any equivalent provision. It does, however, direct that 'all taxes * * * shall be levied and collected under general laws.' This certainly means that the legislative power of the commonwealth shall provide the necessary legislation for levying and collecting all taxes. In Lehigh Iron Co. v. Lower Macungie Tp., 81 Pa. St. 482, and Coatesville Gas Co. v. County of Chester, 97 Pa. St. 476, we held that these provisions of the constitution do not execute themselves, but were simply mandatory to the legislature to enact laws to carry them into effect.

The provision of section 1, therefore, cannot operate to repeal any preexisting law exempting public property from taxation, because there was no such law. Such property was not taxable, because there was no law which made it so. It was the absence, not the presence, of law which made it non-taxable. The new constitution might have made it taxable, but did not; and, as the legislature has failed to make it taxable, there is no law for its taxation, and it is not taxable at all. It is true, the legislature of 1874 did exercise its power, and exempt certain property, which does not include this; but the fact still | When is a public property exempt from tax? |
| 2389 | Sullivan v. Iron Silver Mining Co., 109 U.S. 550, 554–55, 3 S. Ct. 339, 342, 27 L. Ed. 1028 (1883), aff'd sub nom. Sullivan v. Iron Silver Min. Co., 143 U.S. 431, 12 S. Ct. 555, 36 L. Ed. 214 (1892) | 2 | Under Code Civ.Proc.Colo.1877, §§ 48, 49, 52, 61, as at common law, facts may be pleaded according to their legal effect, without setting out the particulars that lead to it, and necessary circumstances implied by law need not be expressed in the plea; and therefore, in an action by the patentee of a placer claim to recover possession of a vein or lode within its boundaries, an answer alleging that the vein or lode was known to the patentee to exist at the time of applying for the patent, and was not included in his application, well pleads the fact which, under Rev.St. S 2333, 30 U.S.C.A. S 37, precludes him from having any right of possession of the vein or lode. | But the further *555 allegation in the answer, that the vein was known by the patentees to exist at the times mentioned, is an allegation, in the very words of the statute itself, of the fact which the statute declares shall be conclusive against any right of possession of the vein or lode claim in a claimant of the placer claim only.

Whether the words 'known to exist,' as used in the statute, are **343 satisfied by actual knowledge of the applicant, or imply also a located claim for the vein or lode, the same meaning must be attributed to them in the amended answer; and as the fact signified by the statute is well pleaded; for, by the elementary rules of pleading, facts may be pleaded according to their legal effect, without setting forth the particulars that lead to it; and necessary circumstances implied by law need not be expressed in the plea. | Should necessary circumstances implied by law be expressed in the plea? |

| | | | | | |
|---|---|---|---|---|---|
| 2434 | State of New Hampshire v. State of Louisiana, 108 U.S. 76, 89-90 (1883) | 6 | If a sovereign assumes the responsibility of presenting the claim of one of his subjects against another sovereign, the prosecution will be as one nation proceeds against another, not by suit in courts, as of right, but by diplomatic negotiation, or, if need be, by war. | ... if a sovereign assumes the responsibility of presenting the claim of one of his subjects against another sovereign, the prosecution will be 'as one nation proceeds against another, not by suit in the courts, as of right, but by diplomatic negotiation, or, if need be, by war.' | "If a sovereign assumes the responsibility of presenting the claim of one of his subjects against another sovereign, will the prosecution be as one nation proceeds against another, or by suit in courts?" |
| 2456 | Willetts v. Browning, 198 A.D. 551, 552, 190 N.Y.S. 606, 607 (App. Div. 1921) | 1 | While plaintiff should generally be given leave to discontinue on the payment of costs and disbursements to the time of making the application, that rule is subject to limitations, and discontinuance should not be permitted where special circumstances render the granting of the relief unjust. | While as a general proposition it is quite true that a plaintiff should be given leave to discontinue an action brought by him on payment of taxable costs and disbursements to the time of making the application, still that rule is subject to certain limitations, one of which is that such discontinuance should not be permitted where special circumstances exist which render the granting of the relief unjust or inequitable. | Should a plaintiff be given permission to discontinue an action brought by him on payment of taxable costs and disbursements to the time of making the application without any limitations? |
| 2524 | Worley v. Johnson, 60 Fla. 294, 297, 53 So. 543, 544 (1910) | 3 | An indorser without qualification of a note engages that on due presentment it shall be paid according to its tenor, and that if it be dishonored, and the necessary proceedings on dishonor be duly taken, he will pay the amount thereof to the holder, under the express provisions of F.S.A. S 674.68. | An indorser without qualification of a note engages that on due presentment it shall be paid according to its tenor, and that if it be dishonored, the necessary proceedings on dishonor being duly taken, he will pay the amount thereof to the holder. | Does an indorser without qualification engage that on due presentment the note shall be paid according to its tenor. |
| 2526 | Short v. Frink, 151 Cal. 83, 89–90, 90 P. 200, 202–03 (1907) | 6 | Under Code Civ.Proc. § 2032, providing that a deposition when completed must be read to the witness and corrected by him in any particular, if desired, and then signed by the witness and certified by the officer, a certificate of a notary to depositions, stating that the testimony was read over to the witness, "and being by him corrected, and was by him subscribed in my presence," is sufficient, if not otherwise objectionable. | The only objection specified thereto was that the certificate of the notary did not in terms state that the deposition, when completed and read to the witness, was corrected by the witness in every **203 particicular desired; the statement in the certificate being as follows: 'That said deposition, and the testimony given by said witness, was reduced to writing by me, and, when completed, was by me carefully read to said witness, and, being by him corrected, was by him subscribed in my presence.' The statute (Code Civ. Proc. § 2032) provides that the deposition, when completed, 'must be carefully read to the witness and *90 corrected by him in any particular, if desired,' and then subscribed by the witness and certified by the officer. The precise form of the certificate to be made by the officer is nowhere prescribed by our law, and doubtless any certificate showing substantial compliance with the statutory provisions as to the mode of taking and certifying depositions is sufficient. | "Can a deposition when completed be read to the witness and corrected by him in any particular, if desired?" |
| 2527 | Garner v. Cleveland, 35 Tex. 74, 76 (1872) | 1 | The provisions of Pasch.Dig. art. 3729, prescribing the mode in which depositions may be transmitted by mail to the clerk of the court in which they are to be used, are directory, and a substantial compliance is all that is required, where there is nothing to raise a presumption of fraud. | Article 3729, Paschal's Digest, which points out the mode in which depositions may be transmitted by mail to the clerk of the court in which they are to be used, is a directory statute, and, as this court has repeatedly decided, a substantial compliance with the directions of the statute is all that is required where there is nothing to raise a presumption of fraud. | "Can the provisions prescribing the mode in which depositions may be transmitted by mail to the clerk of the court in which they are to be used, a substantial compliance is all that is required, where there is nothing to raise a presumption of fraud?" |

| | | | | | |
|---|---|---|---|---|---|
| 2559 | Wallingford v. W. Union Tel. Co., 60 S.C. 201, 38 S.E. 443, 446 (1901) | 9 | Under 23 St. at Large, p. 48, providing that, whenever it shall appear from the attestation clause or other part of an instrument that the parties intended it to be a sealed instrument, it shall be construed to be and shall have the effect of a sealed instrument, though no seal be actually attached, a deposition was not objectionable as lacking a notarial seal where the word "Seal" was attached to every jurat, and the attestation clause read, "Witness my hand and official seal." | The certificate concludes as follows. "Witness my hand and official seal at Sheridan, Hamilton county, and state of Indiana, this 18th day of November, A. D. 1899. Newton W. Cowgill, Notary Public." The notary public attached the word "Seal" to the jurat of each deposition. The statute does not require the certificate to be under the seal of the officer taking the testimony, but if there was such requirement it would have to be considered in connection with the act of 1899 entitled "An act to amend the law with regard to instruments in writing purporting to have been sealed," which provides "that whenever it shall appear from the attestation clause or from the other parts of the instrument in writing that it was the intention of the party or parties thereto that said instrument should be a sealed instrument, then said instrument shall be construed to be and shall have the effect of a sealed instrument, although no seal be actually attached thereto." 23 St. at Large, p. 48. It appears from the attestation clause that the notary public intended to attach his official seal, and this was sufficient. | "Whenever it shall appear from the attestation clause or other part of an instrument that the parties intended it to be a sealed instrument, shall it be construed to be and shall have the effect of a sealed instrument?" |
| 2576 | Farmers' & Mechanics' Nat. Bank v. Dearing, 91 U.S. 29, 34 (1875) | 2 | States have no power, against the national will, by taxation or otherwise, to retard, impede, burthen, or in any manner control, the operation of the constitutional laws enacted by Congress to carry into execution the powers vested in the General Government. | Any thing beyond this is 'an abuse, because it is the usurpation of power which a single State connot give.' Against the national will 'the States have no power, by taxation or otherwise, to retard, impede, burthen, or in any manner control, the operation of the constitutional laws enacted by Congress to carry into execution the powers vested in the General Government.' | "Do the states have any power by taxation to impede, burden, or in any manner control the operation of the Constitution and laws enacted by Congress?" |
| 2590 | State v. Cumberland & P.R. Co., 40 Md. 22, 44 (1874) | 5 | The power of taxation resides in the State as an attribute of its sovereignty, and the right of the Legislature, as the representatives of the people, to exercise it, should never be questioned, except in plain cases, where the power is relinquished for valid consideration, or where, to prevent its abuse, it has been placed under restriction, either as to the subjects liable to it, or the mode and manner of its exercise. | The power resides in the State as an attribute of its sovereignty, and the right of the Legislature, as the representatives of the people, to exercise it, should never be questioned, except in plain cases, where, the power is relinquished for valid consideration, or where to prevent its abuse, it has been placed under restriction, either as to the subjects liable to it, or the mode and manner of its exercise. | Can the power of taxation residing in the State be questioned? |
| 2605 | Lopez v. Howe, 259 F. 401, 403 (2d Cir. 1919) | 1 | The right of Congress to exclude or expel aliens, or any class of aliens, absolutely or upon conditions, in war or in peace, is an inherent and inalienable right of every sovereign and independent nation, which may be exercised entirely through executive officers. | The right of Congress to exclude or to expel aliens, or any class of aliens, absolutely or upon conditions, in war or in peace has been declared by the Supreme Court an inherent and an inalienable right of every sovereign and independent nation. | Is the right to exclude or to expel aliens an inherent and inalienable right of every sovereign and independent nation? |
| 2663 | McAlpin v. Cassidy, 17 Tex. 449, 463 (1856) | 4 | Every agency includes in it, or carries with it as an incident, all the powers which are necessary, or proper, or usual, as means to effectuate the purposes for which it was created and none other; and in this respect there is no distinction whether the authority given to an agent is general or special, express or implied. In each case, it embraces the appropriate means to accomplish the desired end, and is limited to the use of those means. | Every agency carries with it, or includes in it as an incident, all the powers which are necessary, or proper, or usual, as means to effectuate the purposes for which it was created, and none other. In this respect there is no distinction, whether the authority given to an agent is general or special, expressed or implied. In each case it embraces the appropriate means to accomplish the desired end, and is limited to the use of those means. | Is there any distinction to the powers of an agent if the authority given is general or special? |

| | | | | | |
|---|---|---|---|---|---|
| 2665 | United States v. Murphy, 84 F. 609, 614 (D. Del. 1898) | 1 | A combination of a number of men in the United States, with a common intent to proceed in a body to a foreign territory, and engage in hostilities, either by themselves or in co-operation with others, against a power with whom the United States are at peace, constitutes a military expedition, when they actually proceed from the United States, whether they are then provided with arms, or intend to secure them in transit. It is not necessary that all the persons shall be brought in personal contact with each other in the United States, or that they shall be drilled, uniformed, or prepared for efficient service. | Where a number of men, whether few or many, combine and band themselves together, and thereby organize themselves into a body, within the limits of the United States, with a common intent or purpose on their part at the time to proceed in a body to foreign territory, there to engage in carrying on armed hostilities, either by themselves or in co-operation with other forces, against the territory or dominions of any foreign power with which the United States is at peace, and with such intent or purpose proceed from the limits of the United States on their way to such territory, either provided with arms or implements of war, or intending and expecting and with preparation to secure them during transit, or before reaching the scene of hostilities, in such case all the essential elements of a military enterprise exist. It is not necessary that the men shall be drilled or uniformed or prepared for efficient service, nor that they shall have been organized, according to the tactics, as infantry, artillery or cavalry. It is sufficient that the military enterprise shall be begun or set on foot within the United States; and it is not necessary that the organization of the body as a military enterprise shall be completed or perfected within the United States. Nor is it necessary that all of the persons composing the military enterprise should be brought in personal contact with each other within the limits of the United States; nor that they should all leave those limits at the same point. | What constitutes a military expedition or enterprise? |
| 2759 | United States v. Murphy, 84 F. 609, 614 (D. Del. 1898) | 1 | A combination of a number of men in the United States, with a common intent to proceed in a body to a foreign territory, and engage in hostilities, either by themselves or in co-operation with others, against a power with whom the United States are at peace, constitutes a military expedition, when they actually proceed from the United States, whether they are then provided with arms, or intend to secure them in transit. It is not necessary that all persons shall be brought in personal contact with each other in the United States, or that they shall be drilled, uniformed, or prepared for efficient service. | The words 'military enterprise' are somewhat broader in meaning than the words 'military expedition.' Where a number of men, whether few or many, combine and band themselves together, and thereby organize themselves into a body, within the limits of the United States, with a common intent or purpose on their part at the time to proceed in a body to foreign territory, there to engage in carrying on armed hostilities, either by themselves or in co-operation with other forces, against the territory or dominions of any foreign power with which the United States is at peace, and with such intent or purpose proceed from the limits of the United States on their way to such territory, either provided with arms or implements of war, or intending and expecting and with preparation to secure them during transit, or before reaching the scene of hostilities, in such case all the essential elements of a military enterprise exist. It is not necessary that the men shall be drilled or uniformed or prepared for efficient service, nor that they shall have been organized, according to the tactics, as infantry, artillery or cavalry. | What constitutes a military expedition? |
| 2778 | Sch. Bd. of City of Harrisonburg v. Alexander, 126 Va. 407, 413 (1919) | 8 | It is said that, in the construction of statutes conferring the power of eminent domain, every reasonable doubt is to be solved adversely to the right; that the affirmative must be shown, as silence is negation; and that unless both the spirit and letter of the statute clearly confer the power it cannot be exercised. | It is said that, in the construction of statutes conferring the power of eminent domain, every reasonable doubt is to be solved adversely to the right; that the affirmative must be shown, as silence is negation; and that unless both the spirit and letter of the statute clearly confer the power it cannot be exercised. | Can the power of eminent domain be exercised if a statute doesnt clearly confer the power? |
| 2884 | Willetts v. Browning, 198 A.D. 551, 552, 190 N.Y.S. 606, 607 (App. Div. 1921) | 1 | While plaintiff should generally be given leave to discontinue on the payment of costs and disbursements to the time of making the application, that rule is subject to limitations, and discontinuance should not be permitted where special circumstances render the granting of the relief unjust. | While as a general proposition it is quite true that a plaintiff should be given leave to discontinue an action brought by him on payment of taxable costs and disbursements to the time of making the application, still that rule is subject to certain limitations, one of which is that such discontinuance should not be permitted where special circumstances exist which render the granting of the relief unjust or inequitable. | Should a plaintiff be given permission to discontinue an action brought by him on payment of taxable costs and disbursements to the time of making the application? |

| | | | | | |
|---|---|---|---|---|---|
| 2952 | Adamek v. Plano Mfg. Co., 64 Minn. 304, 304, 66 N.W. 981, 981 (1896) | 1 | Held, that, where there are no unusual or extraordinary features in the case, the fact that an attorney is professionally engaged elsewhere, in the trial of another action, cannot be regarded as an absolute right to a postponement or continuance of the cause. Generally, the continuance of an action is discretionary with the trial court, which discretion this court will not undertake to control. | Held that, where there are no unusual or extraordinary features in the case, the fact that an attorney is professionally engaged elsewhere, in the trial of another action, cannot be regarded as an absolute right to a postponement or continuance of the cause. Generally, the continuance of an action is discretionary with the trial court, which discretion this court will not undertake to control. | Does the fact that an attorney is professionally engaged elsewhere in the trial of an action not give an absolute right to the continuance of the cause? |
| 2971 | Weitz v. Wolfe, 28 Neb. 500, 44 N.W. 485, 486 (1890) | 3 | The payee of a negotiable note sold the same with the following writing on the back of the note: "I guaranty the payment of the within note, waiving demand and notice of protest." Held an indorsement, and the maker and indorser might be joined in an action on said note. | In the case at bar the payee sold and indorsed the note to Wolfe, using the words: "I guaranty the payment of the within, waiving demand and notice of protest." The indorsement in this case, being signed by the payee, operated as a transfer of the note. At the present term of this court, in the case of Helmer v. Bank, ante, 482, a writing like the one quoted above was held to be an indorsement. The liability of Weitz was not lessened because the indorsement contained the word "guaranty." He is an indorser, and was properly sued with the maker, in the same action. | "Whether a writing on the back of a negotiable promissory note, Demand, notice, and protest waived, and payment guarantied, signed by the payee of the note, is an indorsement?" |
| 2974 | Hobbs v. Virginia Nat. Bank of Petersburg, 147 Va. 802 (1925) | 12 | It is settled that the common report, or general reputation, is not admissible upon an issue of general partnership, and cannot be used to prove an actual partnership. It seems, however, to be also well settled that when it is sought to hold a person as a partner by estoppel, general reputation is admissible if known to him, or brought about with his consent, or by his acts. | It is settled that the common report, or general reputation, is not admissible upon an issue of general partnership, and cannot be used to prove an actual partnership. It seems, however, to be also well settled that when it is sought to hold a person as a partner by estoppel, general reputation is admissible if known to him, or brought about with his consent, or by his acts. | Is general reputation admissible as evidence to prove partnership? |
| 2989 | Howard v. Hubertson, 1 Haw. 45, 47 (1851) | 4 | At least two days' notice of an intended application to put off a trial should be given to plaintiff's attorney with a copy of the affidavit to be produced as a foundation for the motion if the necessity for the motion was known to defendant. | At least two days' notice of an intended application to put off a trial should be given to the plaintiff's attorney, with a copy of the affidavit to be produced as a foundation for the motion, if the necessity for it was at the time known to the defendant. | Should at least two days' notice of an intended application to put off a trial be given to a plaintiff's attorney? |
| 3000 | Indiana & I.S. Ry. Co. v. G.S. Wilson & Son, 77 Ill. App. 603, 606 (Ill. App. Ct. 1898) | 7 | The statute requiring the indorsement of the names of parties litigant on the depositions when sealed up, is merely directory and when no injury or surprise results, depositions will not be suppressed because of the failure of the officer taking the depositions so to indorse the names. | … it is held that the statute requiring the indorsement of the names of parties litigant on the depositions when sealed up, is merely directory, and when no injury or surprise results, depositions will not be suppressed, because of a failure of the officer taking the depositions to so indorse the names. | Is the statute requiring the indorsement of the names of parties litigant on the depositions when sealed up merely directory when no injury or surprise results? |
| 3004 | N. State Bank of Grand Forks v. Bellamy, 19 N.D. 509, 125 N.W. 888 (1910) | 4 | The terms "primarily liable" and "secondarily liable," as used in section 6494, Rev. Codes 1905, have reference to the remedy provided by law for enforcing the obligation of one signing a negotiable instrument, rather than to the character and limits of the obligation itself. The remedy against a guarantor, depending as it does upon his separate contract of guaranty, and not upon the terms of the instrument, is not primary and direct, but collateral and secondary. | The terms "primarily liable" and "secondarily liable," as used in section 6494, Rev. Codes 1905, have reference to the remedy provided by law for enforcing the obligation of one signing a negotiable instrument, rather than to the character and limits of the obligation itself. The remedy against a guarantor, depending as it does upon his separate contract of guaranty, and not upon the terms of the instrument, is not primary and direct, but collateral and secondary. | What does the terms primarily liable and secondarily liable refer in relation to a negotiable instrument? |
| 3005 | Boire v. McGinn, 8 Or. 466, 470 (1880) | 1 | In stating accounts of partners, as between themselves, entries on partnership books to which both partners had access at time when entries were made, or immediately thereafter, were to be taken as prima facie evidence of correctness of those entries, subject to right of either party to show a mistake or error in the charge or credit. | "In stating the accounts of partners, as between themselves, the rule is that the entries on the partnership books, to which both partners had access at the time when those entries were made, or immediately afterwards, are to be taken as prima facie evidence of the correctness of those entries, subject, however, to the right of either party to show a mistake or error in the charge or credit." | Are books of a partnership prima facie evidence in matters between partners? |
| 3006 | Dawson v. Dawson, 26 Neb. 716, 42 N.W. 744 (1889) | 1 | To entitle a deposition to be read in evidence the certificate must show that the deposition was taken at the place, room, or office named in the notice, and the certificate or deposition on its face must show that the taking of the deposition was commenced on the day named in the notice. | To entitle a deposition to be read in evidence the certificate must show that the deposition was taken at the place, room, or office named in the notice, and the certificate or deposition on its face must show that the taking of the deposition was commenced on the day named in the notice. | "To entitle a deposition to be read in evidence, must the certificate show that the deposition was taken at the place, room, or office named in the notice?" |

| | | | | | |
|---|---|---|---|---|---|
| 3012 | Stone v. Crow, 2 S.D. 525, 51 N.W. 335, 335 (1892) | 6 | Under Comp. Laws, § 5292, providing that depositions shall be sealed up and indorsed with the title of the cause and the name of the officer taking the same, and by him addressed and transmitted to the clerk of the court, there to remain until opened by the clerk by order of court, or at the request of a party to the action, a deposition so sealed and indorsed, when it is received by the clerk of the court in which it is to be used, and the date of its reception is indorsed on the envelope inclosing the same, is filed within the meaning of Comp. Laws, § 5297, declaring that every deposition intended to be read in evidence on the trial must be filed at least one day before the trial. | Section 5292, Comp. Laws, provides that depositions shall be sealed up and indorsed with the title of the cause and the name of the officer taking the same, and by him addressed and transmitted to the clerk of the court. Held, that when this is done, and it is received by the clerk of the court in which it is to be used, and the date of its reception has been placed upon it by him, it makes a proper filing of such deposition.<br><br>[...]<br><br>Was this a filing, within the meaning of section 5297, Comp. Laws, which says: "Every deposition intended to be read in evidence on the trial must be filed at least one day before the trial?" The statute (section 5292) provides that depositions shall be sealed up and indorsed with the title of the cause and the name of the officer taking the same, and by him addressed and transmitted to the clerk of the court, there to remain until opened by the clerk by order of court or at the request of a party (or his attorney) to the action. | "Shall depositions be sealed up and indorsed with the title of the cause and the name of the officer taking the same, and by him addressed and transmitted to the clerk of the court?" |
| 3033 | Cascaden v. Dunbar, 2 Alaska 408, 412–13 (D.D.Alaska.3.Div. 1905) | 2 | A grub-stake contract is an agreement between two or more persons to thereafter locate mines upon the public domain by their joint aid, effort, labor, or expense, whereby each is to acquire, by virtue of the act of location, such an interest in the mine as is agreed on in the contract. The title accrues to each as an original locator, though the location be made in the name of one or more of the parties only. Each party to the grub-stake contract not named in the location notice becomes, nevertheless, an equitable owner and tenant in common with those named. A grub-stake contract, though oral, is not within the statute of frauds. | A grubstake contract is an agreement between two or more persons to locate mines upon the public domain by their joint aid, effort, labor, or expense, whereby each is to acquire, by virtue of the act of location, such an interest in the mine as is agreed on in the contract. The title accrues to each as an original locator, though the location be made in the name of one or more of the parties only. Each party named in the grubstake contract not named in the location notice becomes, nevertheless, an equitable owner and tenant in common with those named. Such a contract, whether oral or written, when clearly established, will be enforced in equity. | What is a grubstake contract? |
| 3057 | Bromley Carpet Co. v. Field, 88 Ill.App. 219, 225, 1800 WL 2670, at *4 (Ill.App. 1 Dist. 1899) | 2 | While a collusive or fraudulent suit is still pending, court will, at suggestion of either party to record, or a person in interest, or person who may be prejudiced by judgment, or even at the instance of a stranger who appears as amicus curiae, or on its own motion dismiss such suit out of court. | It is settled law that while a collusive or fraudulent suit is still pending the court will, at the suggestion of either a party to the record, or a person in interest, or who may be prejudiced by the judgment, or even at the instance of a stranger who appears as amicus curi , upon its own motion, dismiss such suit out of court. | Will a court on its own motion dismiss a suit out of court while a collusive or fraudulent suit is still pending? |
| 3070 | Thomas v. S. Butte Mining Co., 211 F. 105, 107-08 (9th Cir. 1914) | 3 | Where mining claims have passed out of the hands of original owners and stood unchallenged for many years, the certificate of location if in due form is presumptive evidence of discovery, but, in the absence of grounds for indulging such presumption, the location notice, when recorded, is only prima facie evidence of the facts which the statute requires to be contained therein. | [3] Where mining claims which have passed out of the hands of the original owners have stood unchallenged for years, and have been *108 developed to a considerable extent, the certificate of location, if in due form, may be deemed presumptive evidence of discovery and of a valid location. Vogel v. Warsing, 146 Fed. 949, 77 C.C.A. 199; Cheesman v. Hart (C.C.) 42 Fed. 98. But in the absence of such grounds for indulging a presumption in favor of the integrity of the location, it is held that the location notice is, when recorded, prima facie evidence only of what the statute requires it to contain, and which is therein sufficiently set forth. | "Where mining claims have passed out of the hands of the original owners and have stood unchallenged for years, can the certificate of location be deemed presumptive evidence of discovery of a valid location?" |
| 3075 | Lee Cnty. v. City of Smithville, 154 Ga. 550, 115 S.E. 107, 110 (1922) | 1 | The power to have public highways, streets, and roads opened, worked, repaired, improved, or closed may be exercised by the Legislature in such a manner and under such circumstances as it may deem best, subject to no constitutional or other limitation, and it may delegate the power to local inferior bodies, or exercise it through its own agencies. | The state, through its Legislature, has as much power and control over the laying out, construction, maintenance, and closing of the highways, streets, lanes, and alleys of municipal corporations as it has over other public highways. It may change, alter, or abolish either class of these highways at will. The power to have opened, worked, repaired, improved, or closed the public highways, streets, and roads may be exercised by the Legislature in such manner and way, and under such circumstances, as it may deem best. There is no constitutional or other limitation on this power in this particular matter. | "Can the legislature exercise the power to construct, maintain and close roads?" |

| 3093 | In re Cliquot's Champagne, 70 U.S. 114, 115 (1865) | 6 | Whatever is done by an agent in reference to the business in which he is at the time employed and within scope of his authority is said or done by the principal and may be proved in criminal and civil cases in all respects as if the principal were the actor or speaker. | Whatever is done by an agent, in reference to the business in which he is at the time employed, and within the scope of his authority, is said or done by the principal, and may be proved as well in a criminal as in a civil case, in all respects, as if the principal were the actor or the speaker. | Can any act done by an agent within the scope of his authority be considered as done or said by the principal and be proved in a criminal case? |
| 3139 | Williams v. Getty, 31 Pa. 461, 463 (1858) | 3 | If the principal holds out the agent to the world as a general agent in the transaction of his business, any contract made by him within the scope of that business will bind the principal, although there may be, as between the principal and agent, a restriction upon the general authority of the latter, if the person with whom the contract is made has no notice of such restriction. | The learned judge of the court below charged, that "if the principal holds out the agent to the world as a general agent, in the transaction of his business, any contract he would make within the scope of that business would be binding on the principal, although there might be, as between the principal and agent, a restriction upon the general authority of the latter, if the person with whom the contract was made had no notice of such restriction." | "If the principal holds the agent out to the world as a general agent, would any contract made within the scope of the business bind the principal?" |
| 3160 | W.T. Raleigh Co. v. Barnes, 143 Miss. 597, 109 So. 8, 9 (1926) | 1 | Only effect of words "without prejudice" in order dismissing suit is to prevent dismissal in operating in any suit which plaintiff might desire to bring on same cause of action. | The only effect of the words "without prejudice" in the order by which the first suit was dismissed is to prevent the dismissal of that suit in operating as a bar to any new suit which plaintiff might therefore desire to bring on the same cause of action. 34 Cyc. 894, Cole v. Fagan, 108 Miss. 100, 66 So. 400. | "Is the only effect of words ""without prejudice"" in an order dismissing suit to prevent dismissal in operating in any suit which plaintiff might desire to bring on the same cause of action?" |
| 3174 | Chase v. Dow, 47 N.H. 405, 406 (N.H. 1867) | 1 | Where no place of payment is stipulated on a note running with interest, the law of the place where the contract was made will govern as to the rate of interest, though the note is secured by a mortgage on lands in another state, unless the circumstances show that the parties had in view the laws of the latter state in respect to the interest. | The law is well settled that when interest is expressly stipulated for in the contract, such interest is to be paid according to the law of the place where the contract was made, unless some other place of payment was stipulated, in which case interest is to be paid according to the law of the place where the contract was to be performed. And where no place of payment is stipulated the law of the place where the contract is made will govern as to the rate of interest, though the loan be secured by a mortgage on lands in another State, unless the circumstances show that the parties had in view the laws of the latter State, in respect to the interest. | What law governs a contract where the loan was secured by a mortgage on lands in another state? |
| 3229 | Herring v. Poritz, 6 Ill.App. 208, 211 (1880) | 3 | A "retraxit" differs from a "nonsuit" in that one is negative and the other positive; the "nonsuit" is a mere default and neglect of the plaintiff, and therefore he is allowed to begin his suit again upon payment of the costs, but a "retraxit" is an open and voluntary renunciation of his suit in court, and by this he forever loses his action. | A retraxit differs from a nonsuit, in that one is negative and the other positive; the nonsuit is a mere default and neglect of the plaintiff, and therefore he is allowed to begin his suit again upon payment of costs; but a retraxit is an open and voluntary renunciation of his suit in court, and by this he forever loses his action." | " Does a ""retraxit"" differ from a ""nonsuit"" in that one is negative and the other positive?" |
| 3371 | Thomas v. Holmes, 120 N.W. 636, 636 (Iowa 1909) | 2 | Mere delay in bringing an action at law is not a bar, unless it covers the statutory period, and unless the doctrine of estoppel may be successfully invoked. | The general rule as to laches is that, where the action is at law, mere delay will not bar the action, unless it covers the statutory period, and unless the doctrine of estoppel may be successfully invoked. | "Is a mere delay in bringing an action at law a bar, unless it covers the statutory period, and unless the doctrine of estoppel may be successfully invoked?" |
| 3376 | Willetts v. Browning, 198 A.D. 551, 552, 190 N.Y.S. 606, 607 (App. Div. 1921) | 1 | While plaintiff should generally be given leave to discontinue on the payment of costs and disbursements to the time of making the application, that rule is subject to limitations, and discontinuance should not be permitted where special circumstances render the granting of the relief unjust. | While as a general proposition it is quite true that a plaintiff should be given leave to discontinue an action brought by him on payment of taxable costs and disbursements to the time of making the application, still that rule is subject to certain limitations, one of which is that such discontinuance should not be permitted where special circumstances exist which render the granting of the relief unjust or inequitable. | Should the discontinuance of an action be permitted where special circumstances exist which render the granting of the relief unjust or inequitable? |
| 3434 | Blackburn v. Morton, 18 Ark. 384, 384 (1857) | 2 | It is purely a matter of practice, whether depositions can be taken, in a case at law, before the issues are made up; and in the absence of any rule upon the subject, depositions are not rendered irregular by being taken before issue is joined in the cause to which they apply. | It is purely a matter of practice, whether depositions can be taken, in a case at law, before the issues are made up: and in the absence of any rule upon the subject, depositions are not rendered irregular by being taken before issue is joined in the cause to which they apply. | "Is it purely a matter of practice, whether depositions can be taken, in a case at law, before the issues are made up?" |

| | | | | | |
|---|---|---|---|---|---|
| 3460 | Bamberger v. Cooke, 181 A.D. 805, 806, 169 N.Y.S. 227, 228 (App. Div. 1918) | 2 | Examination of parties before trial should be liberally allowed in furtherance of justice, but care must be taken to see that it is not made unnecessarily vexatious and oppressive. | Allegations of this vague and general nature do not constitute a sufficient statement of facts showing the relevancy and necessity of the examination. While examination of parties before trial is, as it should be, liberally allowed in furtherance of justice, care must be taken to see that it is not made unnecessarily vexatious and oppressive. | Should the examination of parties before trial be liberally allowed in furtherance of justice as long as care is taken to see that it is not made unnecessarily vexatious and oppressive? |
| 3470 | Boza v. Nat'l Sur. Co., 192 N.Y.S. 648, 649–50 (App. Term 1922) | 1 | The provisions of Code Civ.Proc. §§ 888, 889, as to examination on interrogatories of party absent from state, where material to issue of fact joined, are mandatory, and it was error to refuse request and grant adversary's motion for oral examination, with expenses to movant in being present. | This order was unauthorized, and a clear abuse of discretion. It *650 is the right of a party who is absent from the state to have his examination taken upon interrogatories. Ordway v. Radigan, 114 App. Div. 538, 100 N. Y. Supp. 121. It has been held that, in the absence of bad faith, the provision of section 889 of the Code of Civil Procedure is mandatory. All that it was necessary to show was that the action is one within the purview of section 888 of the Code, and that the testimony of the party or witness is material to the applicant. | Will a general commission to examine witnesses on interrogatories authorize the examination of a party at the instance of his adversary? |
| 3480 | Mechanics' & Farmers' Sav. Bank v. Katterjohn, 137 Ky. 427, 125 S.W. 1071, 1073 (1910) | 3 | Negotiable Instrument Act (Laws 1904, c. 102) S 63, provides that "A person placing his signature on an instrument otherwise than as maker, drawer or acceptor, is deemed to be an "indorser,' unless he clearly indicates by appropriate words his intention to be bound in some other capacity." Held, that one who became the payee of a note, and indorsed the same, to enable the maker to negotiate and discount it for his own benefit, is liable merely as an accommodation indorser. | Section 63 is as follows: "A person placing his signature upon an instrument otherwise than as, maker, drawer or acceptor, is deemed to be an indorser, unless he clearly indicates by appropriate words his intention to be bound in some other capacity." Section 89 is as follows: "Except as herein otherwise provided, when a negotiable instrument has been dishonored by nonacceptance or nonpayment, notice of dishonor must be given to the drawer and to each indorser, and any drawer or indorser to whom such notice is not given is discharged." Appellee, Katterjohn, did not place his name on the instrument in question otherwise than as maker, drawer, or acceptor; nor did he clearly indicate by appropriate words his intention to be bound in some other capacity. Therefore, by the express provisions of section 63, he became bound as indorser to the holder of the note. As said before, Rinkliffe, the maker of the note, discounted it and received the proceeds. Appellee, Katterjohn, had nothing to do with the negotiation of the note. No portion of the proceeds was paid by the bank to him. It was not executed for his accommodation. Under such circumstances, he was not primarily liable on the note, but was liable merely as an accommodation indorser. | "Can a person placing his signature upon an instrument otherwise than as maker, drawer or acceptor be deemed as indorser?" |
| 3492 | Bachelder v. Merriman, 34 Me. 69, 71 (1852) | 1 | The statute requiring that a magistrate taking a deposition must certify that the deponent was sworn "according to law" is complied with by a certificate in the words of the statute, or by a statement of the language used in the administration of the oath by which it appears that the law has in fact been complied with. | 19, requires, that the magistrate shall certify, that the deponent was sworn "according to law." This provision may be complied with by the certificate in the words of the statute; or by a specification therein of the language used in the attempt to administer the oath, and if the latter shows that the oath has in fact been administered according to the proper form, it is sufficient. | "Is the statute requiring that a magistrate taking a deposition must certify that the deponent was sworn ""according to law"" complied with by a certificate in the words of the statute?" |
| 3586 | In re Cliquot's Champagne, 70 U.S. 114, 115 (1865) | 6 | Whatever is done by an agent in reference to the business in which he is at the time employed and within scope of his authority is said or done by the principal and may be proved in criminal and civil cases in all respects as if the principal were the actor or speaker. | Whatever is done by an agent, in reference to the business in which he is at the time employed, and within the scope of his authority, is said or done by the principal, and may be proved as well in a criminal as in a civil case, in all respects, as if the principal were the actor or the speaker. | Can anything done by an agent in reference to the business and within the scope of his authority be considered as done or said by the principal? |
| 3587 | In re Cliquot's Champagne, 70 U.S. 114, 115 (1865) | 6 | Whatever is done by an agent in reference to the business in which he is at the time employed and within scope of his authority is said or done by the principal and may be proved in criminal and civil cases in all respects as if the principal were the actor or speaker. | Whatever is done by an agent, in reference to the business in which he is at the time employed, and within the scope of his authority, is said or done by the principal, and may be proved as well in a criminal as in a civil case, in all respects, as if the principal were the actor or the speaker. | Can anything done by an agent in reference to the business in which he is employed be considered as done or said by the principal and be proved in a case as if the evidence applied personally to the principal? |

| | | | | | |
|---|---|---|---|---|---|
| 3600 | Cleveland, C., C. & I. Ry. Co. v. Wynant, 17 N.E. 118, 120–21 (Ind. 1888) | 9 | The mere fact that an object is in a highway in violation of the statute does not necessarily make the owner liable for damages resulting from fright which the object may have occasioned to horses, but there must have been some natural causative connection between the violation of the statute and the frightening of the horses. | The mere fact that an object is in the highway, in violation of a statute, does not necessarily make the owner liable for damages resulting from fright which the object may have occasioned to horses. *121 There must have been some natural, causative connection between the violation of the statute and the frightening of the horses. | "Does an object in the highway in violation of statute, make the owner liable for damages resulting from fright which may have occasioned to horses ?" |
| 3611 | Supervisors of Washington Cnty. v. Saltville Land Co., 99 Va. 640, 641-642, 39 S.E. 704, 704 (1901) | 3 | In the absence of constitutional restrictions, the Legislature may impose upon a taxing district, such as a town, the duty of keeping in repair the streets and roads within, and relieve it from taxation for roads without, its limits. The Legislature judges finally and conclusively upon this question. Section 2 of Article VII of the Constitution of this State does not restrain the Legislature in this respect, and it may exempt lands lying within a town from the payment of a county road tax. | It seems to be well settled that the general assembly, in the absence of constitutional restrictions, may impose upon a taxing district, such as a town, the duty of keeping in repair the streets and roads within, and relieve it from taxation for roads without, its limits. [...] The legislature judges finally and conclusively upon all question of policy, as it may also upon all questions of fact which are involved in the determination of a taxing district. [...] There is nothing in the constitution which prohibits or prevents the general assembly from incorporating a town whose territory lies in two counties, or from making the town a separate road district, and declaring that the lands lying within the town shall be exempt from taxes for roads lying without the town upon condition that it keeps up its own streets and alleys and the public roads within its limits. | "Can the Legislature impose upon a taxing district, the duty of keeping in repair the streets and roads?" |
| 3846 | Winfield v. Pub. Serv. Comm'n of Indiana, 187 Ind. 53, 118 N.E. 531 (1911) | 20 | Burns' Ann.St.1914, S 8696 (Burns' Ann.St. S 48-1902), declares that the board of public works of cities shall have power to authorize telephone companies to use any street, alley, or public place in city. Section 8938 (S 48-7301), declares that cities may contract for public service for the convenience and welfare of the people, etc., and may impose reasonable regulations for the placing of telephone poles, etc., and may impose reasonable license fees and other compensation to be paid to such city or town for the franchise and privilege. Held, that in view of the fact that the statute expressly authorized only the imposition of reasonable license fees, it cannot be deemed that the state intended to allow the municipalities to grant franchises to public service corporations which would free them from the police power of the state to regulate. | Burns' Ann.St.1914, § 8696 (Burns' Ann.St. § 48–1902), declares that the board of public works of cities shall have power to authorize telephone companies to use any street, alley, or public place in city. Section 8938 (§ 48–7301), declares that cities may contract for public service for the convenience and welfare of the people, that cities or towns may by ordinance provide all necessary regulations for the placing of telephone poles, etc., and may impose reasonable license fees and other compensation to be paid to such city or town for the franchise and privilege. Held, that in view of the fact that the statute expressly authorized only the imposition of reasonable license fees, it cannot be deemed that the state intended to allow the municipalities to grant franchises to public service corporations which would free them from the police power of the state to regulate. | Does a contract with a public utility company for fixing and regulation of rates include the power to exempt itself from further regulation of its charges? |
| 3910 | Koch v. Sheppard, 124 Ill.App. 266, 268 (Ill.App. 1 Dist. 1906) | 1 | A "voluntary nonsuit" is abandonment of a cause by a plaintiff and an agreement that a judgment for costs be rendered against him, but an "involuntary nonsuit" is where a plaintiff on being called when the case is before the court for trial, neglects to appear or when he has given no evidence upon which a jury could find a verdict. | Snow, 187 Ill., 181, it was held that this provision applied solely to involuntary non-suits; and in distinguishing between voluntary and involuntary non-suits it was said: "A voluntary non-suit is said to be an abandonment of a cause by a plaintiff and an agreement that a judgment for costs be rendered against him, but an involuntary non-suit is where a plaintiff, on being called when the case is before the court for trial, neglects to appear, or when he has given no evidence upon which the jury could find a verdict." | "Is a ""voluntary nonsuit"" an abandonment of a case by a plaintiff with costs to be entered against him?" |
| 3914 | Koch v. Sheppard, 124 Ill.App. 266, 268 (Ill.App. 1 Dist. 1906) | 1 | A "voluntary nonsuit" is abandonment of a cause by a plaintiff and an agreement that a judgment for costs be rendered against him, but an "involuntary nonsuit" is where a plaintiff on being called when the case is before the court for trial, neglects to appear or when he has given no evidence upon which a jury could find a verdict. | "A voluntary non-suit is said to be an abandonment of a cause by a plaintiff and an agreement that a judgment for costs be rendered against him, but an involuntary non-suit is where a plaintiff, on being called when the case is before the court for trial, neglects to appear, or when he has given no evidence upon which the jury could find a verdict." | "Is a ""voluntary nonsuit"" by a plaintiff a withdrawal or abandonment of his case with costs adjudged against him?" |

| | | | | | |
|---|---|---|---|---|---|
| 3915 | Spencer v. Ensign, 196 P. 668, 670 (Idaho 1921) | 1 | The provision of C.S. 6830, subd. 1, defines the right of the plaintiff to a dismissal of the action, and where a motion to dismiss is seasonably made by plaintiff, the court has no other alternative than to direct the clerk to enter an order dismissing it. | The provision of C. S. 6830, subd. 1, defines the right of the plaintiff to a dismissal of the action, and where a motion is seasonably made by plaintiff to dismiss the action the court has no other alternative than to direct the clerk to enter an order dismissing it. | "Where a motion to dismiss is seasonably made by plaintiff, does the court have no other alternative than to direct the clerk to enter an order dismissing it?" |
| 3922 | Cunard S.S. Co. v. Mellon, 43 S.Ct. 504, 509, 262 U.S. 100, 129 (U.S. 1923) | 5 | Congress has power to regulate the conduct of domestic merchant ships when on the high seas, or to exert such control over them when in foreign waters as may be affirmatively or tacitly permitted by the territorial sovereign. | In so saying we do not mean to imply that Congress is without power to regulate the conduct of domestic merchant ships when on the high seas, or to exert such control over them when in foreign waters as may be affirmatively or tacitly permitted by the territorial sovereign; for it long has been settled that Congress does have such power over them. | Does Congress have the power to regulate the conduct of domestic merchant ships when on the high seas? |
| 3956 | Steverson v. W.C. Agee & Co., 14 Ala. App. 448, 450, 70 So. 298, 299 (Ala. Ct. App. 1915) | 1 | At common law, the court was without authority to compel a party to produce documents or writings, and the adverse party's only recourse was a bill in equity for discovery. | But the court was at common law without authority, except in the rare instances referred to, to order or compel either party to the suit to produce for the benefit of the other party, documents or writings belonging to him and in his possession. The only recourse was a bill in equity for discovery. | "Is the court authority to compel a party to produce documents or writings, and the adverse party's only recourse was a bill in equity for discovery at common law?" |
| 3972 | Crenshaw v. Jackson, 6 Ga. 509, 509 (1849) | 6 | Upon the transfer of a note payable to bearer, by delivery, the transferer ceases to be a party to it, and is not, generally, responsible thereon to the transferee, or any subsequent holder; but if he undertake to guarantee the payment of the note, he will be liable to the transferee on that special contract, and it is a proper matter of set-off. | Upon the transfer of a note payable to bearer, by delivery, the transferer ceases to be a party to it, and is not, generally, responsible thereon to the transferee, or any subsequent holder; but if he undertake to guarantee the payment of the note, he will be liable to the transferee on that special contract, and it is a proper matter of set-off. | Is the transferor of a note payable to bearer responsible after the delivery of the note? |
| 3981 | State ex rel. Stroh v. Klene, 276 Mo. 206, 207 S.W. 496, 497 (1918) | 1 | Neither Rev.St.1909, c. 21, art. 12, compelling the production of books, nor chapter 46, art. 4, authorizing depositions, nor section 6390, V.A.M.S. S 492.150, providing the incidental right of taking deposition before a commissioner, authorize a special commissioner appointed by the circuit court or the court itself to compel a witness or the adverse party to produce books and papers before such commissioner. | Neither the statute compelling the production of books and papers (article 12, c. 21, R. S. 1909), nor that authorizing the taking of depositions (article 4, c. 46, R. S. 1909), and the right, incidental thereto, of taking same before a commissioner (section 6390, R. S. Mo.), either by express terms or necessary implication confers power upon a court to make and enforce the order complained of. Guided by the general rules in regard to the construction of statutes applicable under the facts at bar, it is not deemed necessary to discuss the question submitted with greater particularity, in view of the fact that this entire subject was reviewed in State ex rel. v. Taylor, 268 Mo. 312, 187 S. W. 1181, in which we held that neither a special commissioner appointed by the circuit court to take depositions, nor the court itself, had power to compel a witness or the adverse party to produce books and papers before such commissioner. | Do any laws authorize a special commissioner appointed by the circuit court or the court itself to compel a witness or the adverse party to produce books and papers before such commissioner? |
| 3982 | Dancel v. Goodyear Shoe Machinery Co., 128 F. 753, 760 (C.C.Mass. 1904) | 1 | A party has no right, and a court no power, to compel the production either in court or before a magistrate, of the private papers of a witness which are not relevant and material to the case. Any practice which sanctions such a proceeding is an infringement of a fundamental personal right guarantied by the federal Constitution, and which the courts have always recognized in the exercise of power given them to compel the production of papers. | A party undoubtedly has the right to invoke the process of the court to compel the attendance of witnesses and the production of such papers as are material to his case; but neither the right of a party nor the power of the court extends beyond this. A party has no right, and the court has no power, to compel the production, either in court or before a magistrate, of the private papers of a witness which are not relevant and material to the case. Any practice which sanctions such a proceeding is unwarranted, and an infringement upon a fundamental personal right guarantied by the federal Constitution. The courts have always recognized this protection to the individual, secured by our organic law. | "Does a party have no right and a court no power, to compel the production either in court or before a magistrate, of the private papers of a witness which are not relevant and material to the case?" |
| 3997 | Southern Ry. Co. v. Miller, 59 S.E. 1115, 1115–16 (Ga.App. 1908) | 1 | The question whether the court should have continued a case for absence of local counsel, when the general counsel of defendant was present, is in the discretion of the trial judge. | The question whether the court should have continued the case for the absence of local counsel, when the general and leading counsel for the defendant was present, was a matter addressed largely to the discretion of the trial judge, *1116 and in this case we are unwilling to say that he abused it. | "Is the question whether the court should have continued a case for absence of local counsel, when the general counsel of defendant was present, in a matter addressed to the discretion of the trial judge?" |

| | | | | | |
|---|---|---|---|---|---|
| 3999 | Matthews v. Dare, 20 Md. 248, 268 (1863) | 13 | Supplementary interrogatories or questions, not sent with the commission, would not be regular, unless the party against whom the answers are to be used had notice, or unless propounded with his assent, or allowed by the terms of the commission. | *268 It may be added also, that after the return of the commission, the defendants' counsel filed exceptions to the admissibility of the evidence taken in answer to questions not sent with the commission, and the Court in disposing of that exception said: "Exception sustained, no supplementary interrogatories or questions would be regular unless the party against whom the answer is to be used had notice, or by his assent, or by the terms of the commission, it was allowed." | "Will supplementary interrogatories or questions be regular, unless the party against whom the answers are to be used has had notice, or by his assent or by the terms of the commission it has been allowed?" |
| 4014 | Johnson v. Anna Bldg. & Loan Ass'n, 126 Ill. App. 592, 594 (Ill. App. Ct. 1906) | 3 | In action for forcible entry and detainer, refusal of continuance on ground that plaintiff had refused to rent premises to a witness on the ground that plaintiff had no interest in the property and that defendants wished action continued in order to produce such witness held proper since evidence in question was not material. | It is stated by affidavit that defendants expect to prove by the witness Collins that "before these defendants took possession of the property in controversy, the secretary of plaintiff informed witness that plaintiff would not rent the property to him for the reason that plaintiff had nothing to do with the property and had no interest in it." The expected evidence was not material to the issues on trial, and therefore it was not error to deny the motion. | "Where an amendment to a petition is not material, is refusing continuance held proper?" |
| 4026 | Cleveland v. Burnham, 60 Wis. 16, 18 N.W. 190, 191 (1884) | 2 | No action to obtain discovery under oath in aid of the prosecution or defense of another action is allowable; but the examination of a party, otherwise than as a witness on a trial, may be taken by deposition, at any time between the commencement of an action and the judgment therein, under the same rules as other witnesses. | No action to obtain discovery under oath in aid of the prosecution or defense of another action is allowable; but the examination of a party, or, in case a corporation be a party, then of a principal officer or managing agent thereof, otherwise than as a witness on a trial, may be taken by deposition, at the instance of the adverse party, in an action or proceeding, at any time after the commencement thereof, and before judgment. | Can an action be maintained to obtain a discovery under oath in aid of the prosecution or defense of another action? |
| 4037 | Potter v. Coward, 19 Tenn. 22, 27 (1838) | 2 | If an affidavit for a continuance, on the ground of newly discovered evidence, shows, that before the trial, due diligence was used to procure evidence of the fact expected to be proved by the newly discovered evidence, and the fact is material, it is error to refuse a new trial thereupon. | Did the Court err in refusing to grant a new trial upon the newly discovered testimony as set forth in the affidavits of Bryan Holloway and James E. Munford? The testimony was material according to the view taken of the case by the court below; it proved a possession of the negro in dispute by the defendant after the sale: the testimony was discovered after the trial, and the affidavit of Munford, the attorney, shows that exertion had been made before the trial to procure such testimony, but without success. There is no want of requisite diligence on the part of the plaintiff so far as we have been able to see. We think that a new trial ought to be granted also for this cause. | Should an application for continuance for newly discovered evidence show due diligence and that there is a probability of procuring the testimony? |
| 4041 | Dow v. Johnson, 100 U.S. 158, 165, 1879 WL 16545, at *6 (U.S.,1879) | 2 | A foreign army permitted to march through a friendly country or to be stationed in it by authority of its sovereign or government is exempt from its civil and criminal jurisdiction. | Tennessee, it is well settled that a foreign army, permitted to march through a friendly country, or to be stationed in it by authority of its sovereign or government, is exempt from its civil and criminal jurisdiction. | "Is a foreign army permitted to march through a friendly country, or to be stationed in it by authority of its sovereign or government exempt from its civil and criminal jurisdiction?" |
| 4051 | Creager v. Douglas, 14 S.W. 150, 150–51, 77 Tex. 484, 486–87 (Tex. 1890) | 4 | The statute requiring the return of depositions was intended to secure and preserve evidence of their correctness and of their freedom from being tampered with by means of the regulations prescribed and not by means of inspection of the deposition or other ex parte evidence. | The statute intends to secure and preserve evidence of the correctness of depositions, and of their freedom from being tampered with, by the observance of the regulations prescribed, and not by means of an inspection *487 of the deposition, or through ex parte evidence showing the same things. | Is the statute requiring the return of depositions intended to secure and preserve evidence of their correctness and of their freedom from being tampered with by means of the regulations prescribed? |
| 4069 | Carroll v. Welch, 26 Tex. 147, 147 (1861) | 2 | A certificate that the answers of the witnesses "were taken, sworn to, and subscribed before me," is a substantial compliance with the statute, Old. & W. Dig. art. 455, when taken in connection with the caption, which designated the court, cause, and witnesses, and referred to the direct and cross interrogatories, and stated that the witnesses were first duly sworn. | Where the captions of depositions identified the court, the cause and the witnesses, by their proper designations, referring to the interrogatories and crossinterrogatories, and stating that the witnesses were "first duly sworn;" and the certificates at the conclusions of the depositions stated that the answers of the witnesses (naming them) "were taken, sworn to, and subscribed before me:" Held, to be in substantial compliance with the statute. | "Is a certificate that the answers of the witnesses ""were taken, sworn to, and subscribed before me,"" a substantial compliance with the statute?" |

| | | | | | |
|---|---|---|---|---|---|
| 4085 | Robinson v. Kanawha Valley Bank, 44 Ohio St. 441, 448 (Ohio 1886) | 1 | The custom by which a cashier represents his bank, by simply signing his own name, is so general that the practice has reduced the custom to the certainty of a law, as it is everywhere understood that in such cases, whether he describes himself as cashier or not, he is an alter ego of the bank. His signature is a recognized mode in which a bank may become a party to commercial paper; and the obligation so created is that of the bank, and not of the cashier. | But it is rather apparent than real; since the custom by which a cashier represents his bank in such matters, by simply signing his own name, is so general that the practice has reduced the custom to the certainty of a law, as it is everywhere understood that in such cases, whether he describes himself as cashier or not, he is an alter ego of the **586 bank. His signature is a recognized mode in which a bank may become a party to commercial paper; and the obligation so created is that of the bank, and not of the cashier. | Has the custom by which a cashier represents his bank by signing his own name been reduced to the certainty of a law? |
| 4091 | Ballard v. Perry's Adm'r, 28 Tex. 347, 362–63 (1866) | 16 | If the certificate upon a deposition shows that the answers of the witness were made under oath in the presence of the officer taking the deposition, it is sufficient in this particular. No technical form of certificate is prescribed or required. | The law requires the answer of a witness to interrogatories shall be made under oath in presence of the officer who takes the depositions. If the certificate show that this has been done, it is in this particular sufficient. No technical form of certificate is prescribed or required. | Is it sufficient if the certificate upon a deposition shows that the answers of the witness were made under oath in the presence of the officer taking the deposition? |
| 4092 | McCrillis v. McCrillis, 38 Vt. 135, 136 (1865) | 1 | The form given in the statute for the certificate and caption of a deposition need not necessarily be literally and exactly followed, but all it contains and requires should be substantially used and embraced, in order to make a sufficient compliance with the law. | The form given in the statute for the certificate and caption of a deposition is to be regarded as a part of the law of the state governing the taking of depositions. But it has never been regarded as necessary that this form should be literally and exactly followed, but that all it contains and requires should be substantially used and embraced in order to make a sufficient compliance with the law. | Should the form given in the statute for the certificate and caption of a deposition be literally and exactly followed in order to make a sufficient compliance with the law? |
| 4129 | Whiting v. Straup, 17 Wyo. 1, 95 P. 849, 854 (1908) | 12 | A party may act by an agent in locating a claim, and a location may be made by an agent without the knowledge of the principal, if there is a local rule authorizing it, or otherwise there may be antecedent authority or subsequent ratification. | Now, it is not required that a party shall act in person in locating a mining claim, but he may act by an agent; and a location may even be made by an agent without the knowledge of the principal, if there is a local rule authorizing it, or otherwise there may be antecedent authority or subsequent ratification. 1 Lindley on Mines, § 331. | Can a party act by an agent in locating a mining claim and can a location be made by an agent without the knowledge of the principal? |
| 4164 | Hughes v. Black, 39 So. 984, 985 (Ala. 1905) | 2 | While a blank indorsement of a note vests title to the note in the holder thereof, yet if the note, after having been indorsed, gets back into the possession of the payee or the indorser, his possession shows a prima facie legal title to the note upon which suit may be predicated, and the burden is on defendant in such suit to show plaintiff's actual want of title. | A blank indorsement vests the title to the note in the holder, and if a note, after having been indorsed, gets back into the possession of the payee, the law converts his possession into a prima facie legal title, upon which suit may be predicated, and the burden of proof is on the defendant to show want of title in the plaintiff. | Does a blank indorsement vest the title to the note in the holder? |
| 4190 | Warner v. Beardsley, 1831 WL 3162 (N.Y. 1831) | 2 | To discharge an indorser on the ground of the omission of the creditor to proceed against the principal debtor when requested so so do, it must appear that the principal was solvent at the time of the request, within the jurisdiction of the state in which the suit against the surety is instituted, and that the creditor, without any reasonable excuse, neglected or refused to proceed until the principal debtor became insolvent and unable to pay. | To discharge a surety on the ground of the omission of the creditor to proceed against the principal debtor when requested so to do, it must appear that the principal was solvent at the time of the request, within the jurisdiction of the state in which the suit against the surety is instituted, and that the creditor, without any reasonable excuse, neglected or refused to proceed until the principal debtor became insolvent and unable to pay.<br><br>[...]<br><br>To bring a case within that decision, it is necessary for the surety to show that the principal was solvent at the time he requested the creditor to proceed and collect his debt, and was within the jurisdiction of the state, and that the creditor, without any reasonable excuse, neglected or refused to proceed until the principal debtor became insolvent and unable to pay. | Is it necessary for the surety to show that the principal was solvent at the time he requested the creditor to proceed and collect the debt? |
| 4222 | Williams v. Getty, 31 Pa. 461, 461 (1858) | 9 | If the principal holds out the agent to the world as a general agent in the transaction of his business, any contract made by him within the scope of that business will bind the principal, although there may be, as between the principal and agent, a restriction upon the general authority of the latter, if the person with whom the contract is made has no notice of such restriction. | If the principal holds out the agent to the world, as a general agent in the transaction of his business, any contract made by him, within the scope of that business, will bind the principal; although there may be, as between the principal and agent, a restriction upon the general authority of the latter; if the person with whom the contract is made has no notice of such restriction. | Would the principal be bound if there is a restriction in general authority of the agent and the person with whom the contract was made had no notice? |

| | | | | | |
|---|---|---|---|---|---|
| 4283 | Appeal of Callery, 116 A. 222, 222, 272 Pa. 255, 257 (Pa. 1922) | 1 | To justify the imposition of a tax, without a statute plainly warranting it, it is not enough to show that the absence of a tax works an injustice in permitting many persons to escape taxation. | To justify the imposition of a tax without a statute plainly warranting it, it is not enough to show that the absence of a tax works an injustice in permitting many persons to escape. | "To justify the imposition of a tax without a statute plainly warranting it,is it enough to show that the absence of a tax works an injustice?" |
| 4342 | Prestridge v. Lazar, 95 So. 837, 838 (Miss. 1923) | 1 | The doctrine of subrogation applies wherever any person other than a mere volunteer pays a debt or demand which in equity or good conscience should have been satisfied by another, or where one person finds it necessary for his own protection to pay the debt for which another is primarily liable, or where one has such an interest in property as makes it necessary for him to get in an outstanding claim or equity for its protection. | The courts should rather incline to extend than restrict the operation of the doctrine. It applies wherever any person other than a mere volunteer pays a debt or demand which in equity and good conscience should have been satisfied by another, or where one person finds it necessary for his own protection to pay the debt for which another is primarily liable, or where a party has such an interest in property as makes it incumbent on him to get in an outstanding claim or equity for its protection. | When is the doctrine of equitable subrogation applied? |
| 4364 | Southern Cotton Oil Co. v. S. Breen & Co., 87 S.E. 938, 939 (N.C. 1916) | 1 | A voluntary nonsuit is an abandonment of cause by plaintiff who allows judgment for costs against him by absenting himself or failing to answer when called to hear the verdict. | At common law, a voluntary nonsuit was an abandonment of the cause by a plaintiff, who allowed judgment for costs to be entered against him by absenting himself or failing to answer when called upon to hear the verdict. | Is a voluntary nonsuit an abandonment of a cause bya plaintiff who allows a judgment for costs against him by absenting himself or failing to answer when called to hear the verdict |
| 4387 | Ex parte State ex rel. Attorney General, 104 So. 40, 42, 213 Ala. 1, 2 (Ala. 1924) | 2 | It is not necessary, for conviction of forgery, for state to show that defendant himself wrote forged order, since, if with intent to utter it he procured another to write it and afterwards uttered it as genuine, he would be as culpable as though he himself had written it. | This court has held that it is not necessary for a conviction of forgery for the state to show that defendant himself wrote the forged order, since if, with intent to utter it, he procured another to write it, and afterwards uttered it as genuine, he would be as culpable as though he himself had written it. | "Is a person who did not write the instrument, but procures another to write it, publishes and utters it as genuine, guilty of forgery?" |
| 4445 | Kellogg v. Douglas Cnty. Bank, 58 Kan. 43, 48 P. 587 (1897) | 2 | An indorsement on the back of a note in the following language: "For value received we hereby guaranty payment of within note at maturity, waiving demand, protest, and note of protest,"-signed by the payee, is a commercial indorsement, as well as a guaranty, and passes a valid title to the paper. | An indorsement made on the back of a promissory note in the following language; "For value received, we hereby guaranty payment of within note at maturity, waiving demand, protest, and notice of protest,"—signed by the payee of the note, is a commercial indorsement, as well as a guaranty of payment; and the note, being negotiable in form, is sufficient to pass a valid title to the paper, and protect an innocent purchaser thereof. | Does an assignment by a holder written on back of note without limitation a commercial indorsement? |
| 4558 | Wiener v. Benson Bldg. Co., 213 A.D. 347, 351, 210 N.Y.S. 484, 488 (App. Div. 1925) | 1 | Ordinarily plaintiff may discontinue action commenced by him, on proper terms as to costs and allowances, in absence of counterclaim or prejudice to defendant's rights. | While ordinarily, where no counterclaim has been interposed and the rights of the defendant are not prejudiced, a plaintiff may discontinue an action commenced by him upon proper terms as to costs and allowances, there appears to be no warrant for striking out one of the three parties plaintiff and allowing the remaining parties to prosecute an action 'without prejudice,' upon a contract in which defendants agreed to pay over the money to the three parties who originally brought the action. | "Could a plaintiff discontinue action commenced by him, on proper terms as to costs and allowances, in absence of a counterclaim or prejudice to defendant's rights?" |
| 4655 | Missouri, K. & T. Ry. Co. of Texas v. Neaves, 60 Tex.Civ.App. 305, 310 (Tex.Civ.App. 1910) | 4 | Under the statutes it is not now necessary that the envelope in which depositions are returned into court by mail should have indorsed thereon a certificate of the postmaster or his deputy that he received the same from the hands of the officer before whom they were taken. | 90, the Supreme Court held that it is not now necessary that the envelope in which depositions are returned into court by mail should have indorsed thereon a certificate of the postmaster or of his deputy that he received the same from the hands of the officer before whom they were taken. | "Under the statutes, is it now necessary that the envelope in which depositions are returned to court by mail should have indorsed thereon a certificate of the postmaster or his deputy that he received the same?" |

| | | | | | |
|---|---|---|---|---|---|
| 4663 | Stephenson v. Lewis, 152 Ark. 361, 238 S.W. 61, 62 (1922) | 1 | Crawford & Moses' Dig. S 4236, directs that depositions shall be directed and forwarded to the clerk of court, and the action of the attorney in delivering these depositions to the clerk unsealed in violation of this statute renders them prima facie inadmissible, and, where there appears in the record no showing to remove this presumption, it was error to overrule a motion to suppress the deposition. | In the absence of an affirmative showing that the integrity of the depositions had been preserved, the depositions were prima facie inadmissible. Section 4236, C. & M. Digest, directs how depositions shall be directed and forwarded to the clerk of the court in which they are to be read. The action of the attorney in delivering these depositions to the clerk unsealed was in violation of this statute and rendered the depositions prima facie inadmissible; and there appears in the record no showing which removes this presumption. St. L., I. M. & S. | Should depositions be directed and forwarded to the clerk of the court? |
| 4664 | Horne v. City of Haverhill, 113 Mass. 344, 344 (1873) | 1 | The certificate of a magistrate that a deponent was "affirmed by me according to law" necessarily implies that the deponent declared that he had conscientious scruples against taking any oath, and that the magistrate on inquiry was satisfied of the truth of the declaration. | The certificate of a magistrate that a deponent was "affirmed by me according to law" sufficiently shows that the deponent declared that he had conscientious scruples against taking any oath, and that the magistrate on inquiry was satisfied of the truth of the declaration.<br><br>[...]<br><br>The certificate of the magistrate, that the deponent was affirmed by him according to law, necessarily implies that he had first performed the duty, imposed upon him by the statutes of the Commonwealth, of determining on inquiry that the witness had conscientious scruples against taking an oath. | "Does the certificate of a magistrate that a deponent was ""affirmed by me according to law"" necessarily imply that the deponent declared that he had conscientious scruples against taking any oath?" |
| 4668 | Bates v. Maeck, 31 Vt. 456, 458 (1859) | 1 | It seems that the requirements of the statute as to the caption and certificate of a deposition need not be precisely followed in the case of a deposition taken under a commission issuing from court. | It would seem that the requirements of the statute would not need to be precisely followed in case of taking a deposition under a commission issuing from the court. | Does it seem that the requirements of the statute as to the caption and certificate of a deposition need not be precisely followed in the case of a deposition taken under a commission issuing from the court? |
| 4674 | Schurr v. Savigny, 85 Mich. 144, 148–49 (1891) | 2 | To permit a custom to govern and modify the law in relation to the dealings of parties in any case, it must be uniform, certain, and sufficiently notorious to warrant the legal presumption that the parties contracted with reference to it. | To permit the custom to govern and modify the law in relation to the dealings of parties in any case it *149 must be uniform, certain, and sufficiently notorious to warrant the legal presumption that the parties made their contract with reference to such custom. | When can custom govern and modify the law in relation to the dealings of parties in a case? |
| 4677 | Wauhop v. Sauvage's Heirs, 159 S.W. 185, 187 (Tex. Civ. App. 1913), writ refused (Dec. 17, 1913) | 3 | Where an application for a continuance for absence of witnesses did not state that the testimony expected was material or that the applicant used diligence to procure it, it was not a statutory application within Rev.Civ.St.1911, art. 1918, Vernon's Ann.Civ.St. art. 2168, and it was within the discretion of the court to grant it or not. | The action of the court in overruling his application to continue the case until he could procure the testimony of the witness Hooser is made the basis of appellant's fifth assignment. In his application appellant failed to state that the testimony was material, and that he had used due diligence to procure it. As it therefore was not a statutory application (article 1918, R. S. 1911), it was within the discretion of the court to grant it or not. | "Where an application for a continuance for the absence of witnesses did not state that the testimony expected was material, is it within the discretion of the court to grant it or not?" |
| 4689 | Kirchner v. Smith, 58 S.E. 614, 618 (W.Va. 1907) | 2 | If two or more owners of a mine unite in working it without any partnership agreement, the act of working it together creates a mining partnership, and the same is true of two or more holding interests in a lease of mining property. | "If two or more owners of a mine unite in working it, without any partnership agreement, the act of working it together creates a mining partnership; and the same is true of two or more holding interests in a lease of mining property." | "If two or more owners of a mine unite in working it, without any partnership agreement, does the act of working it together create a mining partnership?" |
| 4690 | Bernie v. Vandever, 16 Ark. 616, 621, 1855 WL 631, at *4 (Ark. 1855) | 2 | Upon the death of one of several partners, the partnership is dissolved; and the surviving partner is entitled to the partnership property and effects, for the purpose of settling the accounts, and paying off the debts of the firm. | Upon the death of the intestate, the partnership was dissolved, and Bernie, the surviving partner, was by law entitled to the possession of the partnership property and effects, for the purpose of settling the accounts and paying off the debts of the firm. | "Upon death of a partner, is a surviving partner entitled to the partnership property only for the purpose of settling the accounts?" |
| 4693 | Prewitt v. Everett, 10 Tex. 283, 284 (1853) | 1 | Where the statute prescribes what shall be sufficient grounds for a first and second continuance, but is silent as to a subsequent application to continue, and the terms of the statute are complied with, on the first and second application, the court can exercise no discretionary power; but must grant the continuance. | The statute prescribes what shall be sufficient grounds for a first and second continuance, but is silent as to a subsequent application to continue, and has been decided by this court that, if the terms of the statute are complied with on the first and second application, the court can exercise no discretionary power; that it must be granted. | Can the court exercise any discretionary power on the first and second application for continuance? |

| | | | | | |
|---|---|---|---|---|---|
| 4705 | Bush v. Barron, 78 Tex. 5, 8, 14 S.W. 238, 239 (1890) | 2 | The caption may be resorted to in aid of an officer's certificate to depositions to show that the answers to interrogatories and cross-interrogatories were signed by the witness before him and if from both, it satisfactorily appears, it is sufficient. | The officer's certificate, we think, failed to show, as the statute required it should, that the answers to the interrogatories and cross-interrogatories were signed by the witness before him. It is essential that the certificate should show this. Or, if it does not appear therefrom alone, the caption may be resorted to, to aid, in this respect, the certificate; and, if from both it satisfactorily appears, it will be sufficient. | Can the caption be resorted to in aid of an officer's certificate to depositions to show that the answers to interrogatories and cross-interrogatories were signed by the witness before him? |
| 4747 | Cleveland, C., C. & I. Ry. Co. v. Wynant, 17 N.E. 118, 120–21 (Ind. 1888) | 9 | The mere fact that an object is in a highway in violation of the statute does not necessarily make the owner liable for damages resulting from fright which the object may have occasioned to horses, but there must have been some natural causative connection between the violation of the statute and the frightening of the horses. | The mere fact that an object is in the highway, in violation of a statute, does not necessarily make the owner liable for damages resulting from fright which the object may have occasioned to horses. *121 There must have been some natural, causative connection between the violation of the statute and the frightening of the horses. | What connection must be between the violation of statute and frightening of the horses? |
| 4748 | Cleveland, C., C. & I. Ry. Co. v. Wynant, 17 N.E. 118, 120–21 (Ind. 1888) | 9 | The mere fact that an object is in a highway in violation of the statute does not necessarily make the owner liable for damages resulting from fright which the object may have occasioned to horses, but there must have been some natural causative connection between the violation of the statute and the frightening of the horses. | The mere fact that an object is in the highway, in violation of a statute, does not necessarily make the owner liable for damages resulting from fright which the object may have occasioned to horses. *121 There must have been some natural, causative connection between the violation of the statute and the frightening of the horses. | Will the object in the highway in violation of statute make the owner liable for the damages which the object may have occasioned to the horses? |
| 4764 | Georgia Nat. Bank v. Fry, 32 Ga. App. 695, 124 S.E. 542, 542 (1924) | 13 | Where collecting bank negligently failed to present check, and, on bankruptcy of maker, composition was made with creditors whereby payee received part payment or accepted new note not amounting to novation, or to accord and satisfaction, part payment or new note was not satisfaction of right to recover for bank's failure to collect check. | (Syllabus by the Court) A new note, given in lieu of an existing note between the same parties and for the same indebtedness, even at a higher rate of interest and due at a later date, is not given for a new consideration, and therefore does not constitute a "novation." Civil Code 1910, § 4226. | Will a new note given in lieu of an existing note between the same parties constitute a novation? |
| 4782 | Martin Cnty. v. Wachovia Bank & Trust Co., 100 S.E. 134, 138 (N.C. 1919) | 12 | The construction and maintenance of roads and bridges is a matter of general public concern, of benefit to people of the entire state, and Legislature may cast expense thereof upon state at large, or on territory specially and immediately benefited, even though the work may not be a part of the total area attached. | The rule to be deduced from these authorities may be thus summed up: The construction and maintenance of roads and bridges is a matter of general public concern. The whole body of the people of this state is benefited by them. The Legislature may cast the expense of such public works upon the state at large, or upon territory specially and immediately benefited, even though the work may not be within a part of the total area attached. | Can the legislature cast the expense of public works upon the state at large? |
| 4844 | Columbian Banking Co. v. Bowen, 114 N.W. 451, 452 (Wis. 1908) | 3 | The negotiable instrument law. Stats. (Supp.1906, Laws 1899, ch. 356) SS 1675-1684-6 (W.S.A. 116.01 et seq.), is not merely a legislative codification of judicial rules previously existing, but is, so far as it goes, an incorporation into the written law of the law merchant as recognized in Wisconsin, with such changes or modifications and additions as to make a system harmonizing, so far as practicable, with that prevailing in other states. | The negotiable instrument law is not merely a legislative codification of judicial rules previously existing in this state making that written law, which was before unwritten. It is, so far as it goes, an incorporation into written law of the common-law of the state, so to speak, the law- merchant generally as recognized here, with such changes or modifications and additions as to make a system harmonizing, so far as practicable, with that prevailing in other states. | What is the Negotiable Instrument Law (N.I.L)? |
| 4855 | Mason v. Connell, 1836 WL 3149, at *1 (Pa. 1836) | 5 | One partner cannot, without the consent of the other, introduce a stranger into the firm, nor can he, without such consent, make the other partner a member of another firm; but such consent may be implied from the acquiescence and acts of the parties; and if such other partner is made acquainted with the facts, he ought to dissent from the arrangement; otherwise he will be bound by it. | One partner cannot, without the consent of the other, introduce a stranger into the firm, nor can he, without such consent, make the other partner a member of another firm; but such consent may be implied from the acquiescence and acts of the parties; and if such other partner is made acquainted with the facts, he ought to dissent from the arrangement; otherwise he will be bound by it. | QuestionCan a partner admit a new member to the partnership without the consent of the other partners? |
| 4931 | Mayor & City Council of Baltimore ex rel. Bd. of Police of City of Baltimore, 15 Md. 376, 379 (1860) | 48 | The power to levy taxes may be delegated by the Legislature to commissioners, or any other agents, and when the Legislature provides for a tax by any agency whatever, it is, in contemplation of the Constitution, the act of the people. | The power to levy taxes may be delegated by the Legislature to commissioners, or any other agents, and when the Legislature provides for a tax by any agency whatever, it is, in contemplation of the Constitution, the act of the people. | "Can the power to levy taxes be delegated by the Legislature and when the Legislature provides for a tax by any agency whatever, it is, in contemplation of the Constitution, the act of the people?" |

| | | | | | |
|---|---|---|---|---|---|
| 4944 | Cudd v. Larson, 117 Wis. 103, 93 N.W. 810, 811 (1903) | 1 | Rev.St.1898, S 1347b, as amended by chapter 197, Laws 1899, requires the owner or operator of a steam engine on any public highway in any town to signal, and stop it, when approached within 15 rods in either direction by a team, or person riding or driving any animal, and desiring to pass such engine, and to render all proper assistance to enable such team or persons to pass in safety. Held, the requirements of the statute apply only where the team, or person riding or driving the animal, is approaching the engine with the desire of passing it, and not where such team or person is standing still. | The person in charge of the engine is only required to give the signal when the engine "is approached within fifteen rods * * * by any team or any person riding or driving any animal, and desiring to pass such engine," and the requirement "to render all proper assistance" is "to enable such team or persons to pass in safety." The plain meaning of the statute is that the team or person riding or driving the animal is to be moving toward the engine with the desire of passing it before the person in charge of the engine is required to stop it and give the signal. | What is the owner or person in charge of the engine on any public highway required to do when the engine is approached within fifteen rods? |
| 4949 | Williams v. Getty, 31 Pa. 461, 463 (1858) | 9 | If the principal holds out the agent to the world as a general agent in the transaction of his business, any contract made by him within the scope of that business will bind the principal, although there may be, as between the principal and agent, a restriction upon the general authority of the latter, if the person with whom the contract is made has no notice of such restriction. | The learned judge of the court below charged, that "if the principal holds the agent out to the world as a general agent, in the transaction of his business, any contract he would make within the scope of that business would be binding on the principal, although there might be, as between the principal and agent, a restriction upon the general authority of the latter, if the person with whom the contract was made had no notice of such restriction." | Would the principal be bound if there is a restriction in general authority and the person with whom the contract was made had no notice? |
| 4950 | Mason v. Connell, 1836 WL 3149, at *1 (Pa. 1836) | 5 | One partner cannot, without the consent of the other, introduce a stranger into the firm, nor can he, without such consent, make the other partner a member of another firm; but such consent may be implied from the acquiescence and acts of the parties; and if such other partner is made acquainted with the facts, he ought to dissent from the arrangement; otherwise he will be bound by it. | 3. One partner cannot, without the consent of the other, introduce a stranger into the firm, nor can he, without such consent, make the other partner a member of another firm; but such consent may be implied from the acquiescence and acts of the parties; and if such other partner is made acquainted with the facts, he ought to dissent from the arrangement; otherwise he will be bound by it. | Can a partner admit a new member to the partnership without the consent of the other partners? |
| 5013 | Southern Cotton Oil Co. v. Napoleon Hill Cotton Co., 158 S.W. 1082, 1083–84 (Ark. 1913) | 1 | The doctrine of subrogation is an equitable one, having for its basis the doing of complete and perfect justice between the parties, without regard to form, and its purpose and object is the prevention of injustice. | The doctrine of subrogation is an equitable one, having for its basis the doing *1084 of complete and perfect justice between the parties without regard to form, and its purpose and object is the prevention of injustice. | Does the doctrine of subrogation have its basis in the doing of complete and perfect justice between the parties without regard to form? |
| 5020 | Cincinnati, I. & W. Ry. Co. v. City of Connersville, 83 N.E. 503, 507 (Ind. 1908) | 8 | Neither a natural person nor a corporation can claim damages on account of being compelled to comply with a police regulation designed to secure the public health, safety, or welfare. | The rule is well settled that neither a natural person or corporation can claim damages on account of being compelled to comply with a police regulation, designed to secure the public health, safety, or welfare. | Can a natural person or a corporation claim damages on account of being compelled to render obedience to a police regulation? |
| 5039 | In re Elizalde's Est., 182 Cal. 427, 433, 188 P. 560, 562–63 (1920) | 5 | By the common law the surety upon satisfying his principal's obligation is subrogated, not only to the rights and remedies of the creditor against the principal connected with the debt, but also to the similar rights and remedies of the principal against the creditor. | By the common law a surety, upon satisfying his principal's obligation, is entitled to be subrogated, not only to the rights and remedies of the creditor against the principal connected with the debt, but is also entitled to be subrogated to the similar rights and remedies of the principal against the creditor. | "Upon satisfying the principal's obligation, is a surety subrogated to the rights and remedies of a creditor against the principal connected with debt?" |
| 5055 | Roy v. Illinois Commerce Commission, 322 Ill. 452, 461 (1926) | 3 | Public Utilities Act contemplates actual thorough supervision of every public utility corporation, so that continuous, adequate, uniform, and satisfactory service shall be rendered public at reasonable rates without discrimination. | The law contemplates an actual, thorough supervision, in the manner authorized by the Public Utilities Act, of every corporation engaged in conducting a public utility in this state, to the end that continuous, adequate, uniform, and satisfactory service shall be rendered to the public at reasonable rates and without discrimination by corporations of whose condition, financial and business standing, and relations the Commerce Commission is constantly advised in the manner provided by law. | Why does the Public Utilities Act contemplate supervision of every public utility? |
| 5092 | Pollard v. Hagan, 44 U.S. 212, 225 (1845) | 16 | Every nation acquiring territory by treaty or otherwise must hold it subject to the constitution and laws of its own government and not according to those of the government ceding it. | Every nation acquiring territory, by treaty or otherwise, must hold it subject to the constitution and laws of its own government, and not according to those of the government ceding it. | Must every nation acquiring territory by treaty or otherwise hold it subject to the constitution and laws of its own government? |

| | | | | | |
|---|---|---|---|---|---|
| 5115 | Dingley v. Oler, 117 U.S. 490, 503–04 (U.S. 1886) | 1 | The words or conduct relied on as a breach of the contract by anticipation must amount to a total refusal to perform it, and that does not, by itself, amount to a breach of the contract, unless so acted upon and adopted by the other party. | ...holds that the words or conduct relied on as a breach of the contract by anticipation must amount **855 to a total refusal to perform it, and that that does not, by itself, amount to a breach of the contract unless so acted upon and adopted by the other party. | Should the words or conduct relied on as a breach of the contract by anticipation amount to a total refusal to perform it? |
| 5116 | Culbertson v. Cabeen & Jarman, 29 Tex. 247, 254, 1867 WL 4518, at *5 (Tex. 1867) | 1 | Where notes are not due when an attachment is sued out, the right of a party to sue and of the court to entertain the suit depends upon the attachment, for it is by attachment alone that a debt not due can be sued, and the suit must abide the fate of the attachment. | But, as to the notes not due at that time, the right of the party to sue, and of the court to entertain the suit, depends upon the attachment, for it is by attachment alone that a debt not due can be sued. The suit, therefore, as to these, must abide the fate of the attachment, and, as we have seen, that must fall on account of the defective affidavit. | Does the right of a party to sue and of the court to entertain the suit depend upon the attachment? |
| 5133 | Puckett v. Nat'l Annuity Ass'n, 134 Mo. App. 501, 114 S.W. 1039, 1042 (1908) | 3 | A single default in the payment of an installment, due under a contract calling for periodic payments, does not constitute a repudiation of the contract so as to empower the creditor to sue for payments falling due in the future. | An eminent tribunal has considered this question and held a simple default in meeting an installment of money, when due, does not constitute a repudiation or abandonment of the contract, so as to empower the creditor to sue for and recover payments which would fall due in the future. In Wharton & Co. | "Does a simple default in the payment of an installment, due under a contract calling for periodic payments, constitute a repudiation of the contract so as to empower the creditor to sue for payments falling due in the future?" |
| 5144 | Bank of U.S. v. Tyler, 29 U.S. 366, 389–90, 1830 WL 3906, at *17 (U.S.,1830) | 1 | A plaintiff must pursue with legal diligence all his means and remedies, direct, incidental, or collateral, to recover the amount of his debt from the defendant or any one who has put himself, or has by operation of law been put, in defendant's place. | The general principle of all the cases is, that a plaintiff must pursue, with legal diligence, all his means and *390 remedies, direct, incidental or collateral, to recover the amount of his debt from the defendant, or any one who has put himself, or has by operation of law been put in his place. | Should a plaintiff pursue with legal diligence all his means and remedies to recover the amount of his debt? |
| 5169 | Stone v. Kaufman, 107 S.E. 295, 296 (W.Va. 1921) | 1 | A plaintiff always has the right to discontinue his suit, unless to do so will result in legal prejudice to the defendant, other than the mere prospect of future litigation rendered possible by the discontinuance. | Though defendant had answered before dismissal, he sought no affirmative cross-relief, and the law of this jurisdiction is that a plaintiff has always the right to discontinue his suit, unless to do so would result in legal prejudice to the defendant other than the mere prospect of future litigation rendered possible by the discontinuance. | "Does a plaintiff always have the right to discontinue his suit, unless to do so will result in legal prejudice to the defendant?" |
| 5262 | St. Louis S.W. Ry. Co. of Texas v. McDermitt, 175 S.W. 509, 510 (Tex. Civ. App.-- Austin 1915) | 1 | An application for continuance based on surprise in the filing of an amended petition must show that defendant had a meritorious defense, which by continuance could be made to appear. | Where an application to continue is based on the ground of surprise in the filing of an amended petition, it must appear, in order to justify a reversal, that appellant had a meritorious defense, and that by a postponement or continuance of the cause such defense could be made to appear. | "When an application to continue is based on the ground of surprise in the filing of an amended petition, is it necessary to show that the applicant had a meritorious defense and by a continuance of the case such defense could be made to appear?" |
| 5281 | Livingston v. Stafford, 99 A.D. 108, 109, 91 N.Y.S. 172, 173 (App. Div. 1904), aff'd, 184 N.Y. 536, 76 N.E. 1099 (1906) | 1 | Under Laws 1890, p. 1179, c. 568, S 10, as amended by Laws 1895, p. 408, c. 606, providing that "if any highway or bridge shall at any time be damaged or destroyed by the elements or otherwise, or become unsafe, the commissioner of highways of the town may cause the same to be immediately repaired or rebuilt if consented to by the town board," such commissioner has authority to rebuild a bridge on the consent of the town board only in case it is destroyed or becomes unsafe through some extraordinary means, but does not have that authority where the bridge becomes unsafe from natural wear or decay. | "Sec. 10. Extraordinary Repairs of Highways or Bridges. If any highway or bridge shall at any time be damaged or destroyed by the elements or otherwise, or become unsafe, the commissioner of highways of the town in which such highway or bridge may be, may cause the same to be immediately repaired or rebuilt if consented to by the town board." | What does the commissioner of highway do in case of injury or damage to bridge? |

| | | | | | |
|---|---|---|---|---|---|
| 5285 | Temby v. William Brunt Pottery Co., 229 Ill. 540, 542–43, 82 N.E. 336, 337 (1907) | 1 | Where a commission to take depositions is directed to a competent person, he derives his authority from the commission, and because he is described therein as a notary public does not render necessary the affixing of a certificate of his official character to the depositions. | He derived his authority from the commission, and it is immaterial that he was also described as a notary public. It is not necessary that a commissioner should hold any office, and a commission may be directed to any competent and disinterested person. The person to whom a commission to take depositions is issued need only be designated by his name, or he may be designated by the office which he holds, and in either case he obtains his authority from the commission. Brown v. Luehrs, 79 Ill. 575. The addition of the description to the name of the commissioner did not add to or detract from his authority, and no certificate was necessary. Kendall v. Limberg, 69 Ill. 355. The certificate showed that the witnesses were sworn and examined under oath, and the objections were properly overruled. | "Where a commission to take depositions is directed to a competent person, does he derive his authority from the commission?" |
| 5317 | Patton v. Williams, 35 Tex. Civ. App. 129, 129 (1904) | 1 | An application for a continuance which fails to state that due diligence has been used is bad although the facts stated may seem to show diligence. | The same statute requires the affidavit to state that the party applying for the continuance "has used due diligence to procure such testimony, stating such diligence"; and it has several times been held that an application is bad which fails to state that the party "has used due diligence," although the facts stated may seem to show diligence. | "Is an application for a continuance bad which fails to state that the party has used due diligence, although the facts stated may seem to show diligence?" |
| 5320 | Webster v. Calden, 55 Me. 165, 166 (1867) | 6 | The court will not, at the motion of the plaintiff, order defendants to produce a deposition taken and used by them at a former trial of the case, in the absence of evidence that it had ever been filed. | The Court will not, on motion of the plaintiff, order the defendant to produce a deposition taken by the latter and used in a former trial of the same case, unless upon evidence that the deposition has been filed by the clerk. | "Will the court not, at the motion of the plaintiff, order defendants to produce a deposition taken and used by them at a former trial of the case?" |
| 5321 | Robbins v. Lincoln, 12 Wis. 1, 2 (1860) | 8 | It seems that the deposition of a witness taken in this state is not admissible in evidence, if the certificate of the officer before whom it was taken, states as the only reason for taking it, "that the deponent is going out of the state," although the party offering the deposition testifies on the trial that the witness was still absent from the state. | It seems, that the deposition of a witness taken in this State is not admissible in evidence, if the certificate of the officer, before whom it was taken, states as the only reason for taking it "that the deponent is going out of the State," although the party offering the deposition testifies on the trial that the witness was still absent from the State. | When is the deposition of a witness taken in a state not admissible in evidence? |
| 5338 | Elliot v. Shultz, 29 Tenn. 234, 235–36 (1849) | 3 | Where a deposition is taken by either party to a suit, and it is filed, such party may decline to read it on trial, and may impeach the credit of the witness who gave the testimony contained in it. | We think his honor erred in permitting the deposition of Shepherd to be read. In the case of Richmond v. Richmond, 10 Yerg. 345, the deposition of a witness (Wallace) had been taken by the complainant, but had not been read by her; whereupon the defendant's counsel read the deposition. The complainant then offered to prove, by several witnesses, that Wallace was unworthy of credit. To proof, impeaching this witness, on part of the plaintiff, the defendant objected; alleging that he was the complainant's own witness, and that she could not lawfully impeach him; but the objection was overruled, and the impeaching witnesses were examined. And this was assigned as error, by the appellant, in this court. | "Where a deposition is taken by either party to a suit, and it is filed, may such party decline to read it on trial?" |
| 5380 | Ogden v. Gibbons, 5 N.J.L. 518, 531 (N.J. 1819) | 8 | Whether it be the first or third application, it is always addressed to the sound discretion of the court, and is refused or granted on such terms as justice to the parties requires. | But whether it be the first or third application, it is always addressed to the sound discretion of the court and is refused or granted on such terms as justice to the parties requires. | Will an application addressed to the sound discretion of court be refused or granted on terms as justice to the parties requires? |
| 5398 | Patterson v. Northern Trust Co., 207 Ill.App. 355, 358 (Ill.App. 1 Dist. 1917) | 1 | Every court of justice possesses inherent power to protect itself from abuse of its own process, and may resort to summary remedy of dismissing cause of action that is frivolous or vexatious. | In the cases cited is found ample authority for the doctrine that every court of justice possesses the inherent power to protect itself from the abuse of its own process, and may resort to the summary remedy of dismissing a cause of action that is frivolous or vexatious. | Does a court of justice possess inherent power to protect itself from abuse of its own process? |
| 5435 | Appeal of York Bank, 36 Pa. 458, 460 (1860) | 9 | A judgment confessed by one partner in the name of the firm, though void as to his copartners, is good as between him and the creditor, not only as evidence of the amount of his indebtedness, but as a lien on his real estate within the county. | Judgment confessed by one partner in the name of the firm, though void as to his copartners, is good as between him and the creditor, not only as evidence of the amount of his indebtedness, but as a lien upon his real estate within the county. | Is a judgment confessed by a partner in the name of the firm good as between the partner and the creditor? |

| | | | | | |
|---|---|---|---|---|---|
| 5478 | United States v. First Nat. Bank, 82 F. 410, 411–12 (C.C.D. Kan. 1897) | 1 | A bank which pays out money on a pension check which is void because the payee was dead at the time it was drawn, and which, through intermediate banks, collects the money from the government, which is ignorant of the facts, is liable to reimburse the government the said amount. | The issuance of the check to said Mary L. Beard after she was dead was an act utterly void, and the check itself was absolutely void, and no act of any one could breathe into it the breath of life, or make it of any value whatever. When the defendant bank took the check from the said Beard, the grandson of the pensioner, it devolved upon it to know that he was the legal holder of the said check, and it paid the money out at its own risk and peril. This is true of any transaction of a similar nature, and is so held by all courts that have passed upon kindred questions. No laches of the government can be attributed in this case, and cannot possibly afford any defense to the defendant. The loss sustained is by reason of its own neglect in paying the check. It has received from the government of the United States the amount demanded in this suit, and there is no reason in law or equity why it should not be held responsible and reimburse the government in the amount paid out | "Can a bank which pays out money on a pension check which was void because the payee was dead at the time it was drawn, be liable to reimburse the government the said amount?" |
| 5480 | Poole v. Perkins, 126 Va. 331, 334–35 (1919) | 10 | It is a general rule that every contract, as to its validity, nature, interpretation and effect, or, as they may be called, the right, in contradistinction to the remedy, is governed by the law of the place where it is made, unless it is to be performed in another place; and then it is governed by the law of the place where it is to be performed. | (57 Va.) 126, Judge Moncure announced the following general rule, upon which there is practically no conflict of opinion: "It is a general rule that every contract, as to its validity, nature, interpretation and effect, or, as they may be called, the right, in contradistinction to the remedy, is governed by the law of the place where it is made, unless it is to be performed in another place; and then it is governed by the law of the place where it is to be performed." | What law governs contracts made in one place to be executed at another? |
| 5483 | Cleveland, C., C. & I. Ry. Co. v. Wynant, 17 N.E. 118, 120–21 (Ind. 1888) | 9 | The mere fact that an object is in a highway in violation of the statute does not necessarily make the owner liable for damages resulting from fright which the object may have occasioned to horses, but there must have been some natural causative connection between the violation of the statute and the frightening of the horses. | The mere fact that an object is in the highway, in violation of a statute, does not necessarily make the owner liable for damages resulting from fright which the object may have occasioned to horses. *121 There must have been some natural, causative connection between the violation of the statute and the frightening of the horses. | "Will the object that has occasioned to the horses in the highway, in violation of statute make the owner liable for the damages ?" |
| 5488 | W. Boatmen's Benev. Ass'n v. Wolff, 45 Mo. 104, 105 (1869) | 1 | Prima facie, a party who writes his name on the back of a promissory note of which he is neither payee nor indorsee is to be treated as the maker of the note, and the payee is entitled to recover of him, without proof of demand on the maker and notice of nonpayment. | Prima facie, a party who writes his name on the back of a promissory note, of which he is neither payee nor indorsee, is to be treated as the maker of the note, and the payee is entitled to recover of him without proof of demand on the maker and notice of non-payment. (Powell v. Thomas, 7 Mo. 440; Hooper v. Pritchard, id. 492; Lewis v. Harvey, 18 Mo. ??; Baker v. Block, 30 Mo. 225.) | Can a party who writes his name on the back of note of which he is not a payee or an endorsee be considered as the maker of the note? |
| 5562 | Carrico v. Scott's Ex'r, 11 Ky.L.Rptr. 905, 905 (1890) | 2 | As a general rule, the dissolution of a partnership will not absolve the partners from liability to a third person, who dealt with the firm while in existence, for the future transactions of any of the partners acting on account of the firm, unless such third party has had notice of the dissolution. | As a general rule, the dissolution of a partnership will not absolve the partners from liability to a third person, who dealt with the firm while in existence, for the future transaction of any of the partners acting on account of the firm, unless such third party has had notice of the dissolution. | Does dissolution of a partnership absolve the partners from liability as to third persons? |
| 5578 | Carrico v. Scott's Ex'r, 11 Ky.L.Rptr. 905, 905 (1890) | 2 | As a general rule, the dissolution of a partnership will not absolve the partners from liability to a third person, who dealt with the firm while in existence, for the future transactions of any of the partners acting on account of the firm, unless such third party has had notice of the dissolution. | As a general rule, the dissolution of a partnership will not absolve the partners from liability to a third person, who dealt with the firm while in existence, for the future transaction of any of the partners acting on account of the firm, unless such third party has had notice of the dissolution. | Does the dissolution of a partnership absolve the partners from liability to a third person? |
| 5601 | Lockwood v. Mitchell, 7 Ohio St. 387, 405 (1857) | 1 | Where a loan was made, the money advanced and to be repaid, and a note and a mortgage delivered in New York, of land in Ohio, it will be regarded as a contract made in New York, and governed by the laws of that state; and the usury laws of that state will apply to it. | The contract for the loan was made in the State of New York; the money was advanced there; the note and mortgage delivered there; and the loan was to be repaid there. The fact that one of the incidents of the debt consisted of a lien, by way of mortgage, upon lands in Ohio, to secure payment, does not change the law in this respect. It was a contract not only made, but to be performed in the State of New York, and must be governed by the laws of that state. | "If the contract for loan is made in a particular state, the money was advanced there, and the note and mortgage delivered there will the contract be governed in that state?" |
| 5678 | City of El Dorado v. Union Cty., 122 Ark. 184, 182 S.W. 899, 900 (Ark. 1916) | 1 | Article 7, section 28, of the Constitution vests the county courts with exclusive original jurisdiction in all matters relating to county taxes, roads, bridges, etc. | Article 7, § 28, of the Constitution vests the county courts with exclusive original jurisdiction in all matters relating to county taxes, roads, bridges, etc. | "Does the Constitution vests the county courts with exclusive original jurisdiction in all matters relating to county taxes, roads, bridges? " |

| | | | | | |
|---|---|---|---|---|---|
| 5765 | San Jacinto Life Ins. Co. v. Boyd, 214 S.W. 482, 483 (Tex. Civ. App. 1919) | 2 | A "cause of action," within Rev.St. art. 1830 (Vernon's Ann.Civ.St. art. 1995), providing that suits against private corporations may be commenced in any county in which the cause of action arose, is not confined to the genesis of the right, and does not comprise every piece of evidence which is necessary to prove each fact, but it embraces every fact necessary to be shown in order to recover. | A cause of action upon which recovery is sought does not comprise every piece of evidence which is necessary to prove each fact, but every fact which is necessary to be proved. We believe under our statute on venue it is too narrow to confine it to the genesis of the right, but it embraces every fact necessary to be shown in order to recover. "Arose," we do not think, refers alone to the very beginning of the right, but to every fact which has arisen and inheres in the cause of action. It is the right to bring a suit, or that right which is based upon the ground or grounds on which an action may be maintained. | Does a cause of action need to embrace every fact necessary to be shown in order to recover? |
| 5768 | Young Men's Bldg. Assn. v. Ware, 249 S.W. 545, 546 (Ark. 1923) | 1 | The doctrine of subrogation is equitable, having for its basis the doing of complete and perfect justice between the parties without regard to form, and its purpose and object is the prevention of injustice. | "The doctrine of subrogation is an equitable one, having for its basis the doing of complete and perfect justice between the parties, without regard to form, and its purpose and object is the prevention of injustice." | Does the doctrine of subrogation have its basis in the doing of complete and perfect justice between the parties without regard to form? |
| 5796 | Jones v. Clark, 42 Cal. 180, 193 (1871) | 1 | Where there are no partnership articles, mining partnerships are governed by the law of ordinary partnerships, except so far as the general usage of persons engaged in similar pursuits or the established practice of the particular company has established a different rule; the only differences generally existing being such as flow from the fact that in such partnerships there is no delectus personae. | Mining partnerships, where there are no partnership articles, are governed by the law of ordinary partnerships, except so far as the general usage of persons engaged in similar pursuits, or the established practice of the particular company has established a different rule. The only difference generally existing, as established by the decisions of this Court, are such as legitimately flow from the fact that in such partnerships there is no delectus personæ. | Are mining partnerships governed by the laws of ordinary partnerships? |
| 5843 | Gerseta Corp. v. Eq. Tr. Co. of New York, 150 N.E. 501, 504 (N.Y. 1926) | 5 | "Subrogation" includes every instance in which one pays a debt for which another is primarily answerable, and which in equity and good conscience should have been discharged by the latter, so long as payment was made either under compulsion or protection of some interest of payer, and in discharge of existing liability. | Subrogation, an equitable doctrine taken from the civil law, is broad enough to include every instance in which one party pays a debt for which another is primarily answerable, and which in equity and good conscience should have been discharged by the latter, so long as the payment was made either under compulsion or for the protection of some interest of the party making the payment, and in discharge of an existing liability. | "Is subrogation, an equitable doctrine taken from the civil law, broad enough?" |
| 5848 | Kahn v. Cook, 22 Ill. App. 559, 561 (Ill. App. Ct. 1887) | 1 | A plaintiff's cause of action arises only on failure of his debtor to pay a debt at maturity, and indebtedness not yet due constitutes no cause of action and furnishes no ground for recovery. | A plaintiff's cause of action arises only upon the failure of his debtor to pay a debt at maturity, and an indebtedness not yet due constitutes no cause of action, and furnishes no ground for a recovery. | Does a plaintiff's cause of action arise only on failure of his debtor to pay a debt at maturity? |
| 5857 | House v. Mayes, 227 Mo. 617, 127 S.W. 305, 308 (1910), aff'd, 219 U.S. 270, 31 S. Ct. 234, 55 L. Ed. 213 (1911) | 4 | Inspection and regulation of weights and measures are within the police power of the states, and laws providing for such inspection and regulation, requiring dealers to conform thereto, and for the appointment or election of inspectors thereunder, are in the nature of police regulations, and Act June 8, 1909 (Acts 1909, p. 519), providing that the sale of grain, etc., shall be made on the basis of actual weight, making one guilty of misdemeanor who deducts any amount from the actual weight under claim of custom, rule of board of trade, or other pretense, prohibiting agents or brokers from selling grain, etc., under claim of right, by reason of a custom or rule of the board of trade, otherwise than upon basis of actual weight, and making such contracts void, designed to prevent brokers from deducting any part of grain without authority from the owner, notwithstanding the existence of a contrary rule or custom, and to prevent the purchaser of wheat on exchanges from deducting from the amount so purchased, where the contract does not authorize such deduction, is a valid exercise of the legislative power. | That the inspection and regulation of weights and measures are within the police power of the states, and laws passed by the Legislature for such inspection and regulation, requiring dealers and traders to conform thereto, and for the appointment or election of officers or inspectors thereunder, are in the nature of police regulation, and not repugnant to the Constitution of the United States or of this state, can no longer be doubted. Pittsburg Coal Company v. Louisiana, 156 U. S. 590, 15 Sup. Ct. 459, 39 L. Ed. 544; 30 Am. & Eng. Ency. of Law (2d Ed.) 451, and cases therein cited. | Is the regulation of weights and measures a reasonable exercise of police power? |
| 5861 | Eggleston's Lessee v. Bradford, 10 Ohio 312, 316 (1859) | 1 | Where the description of an estate contains a number of particulars, each of which is necessary to ascertain the estate to be conveyed, the estate must correspond in character with each. But if sufficient be shown to ascertain the estate intended to be conveyed, the land may pass by the deed, although some of the particulars are false. | Where the description of an estate contains a number of particulars, each of which is necessary to ascertain the estate to be conveyed, the estate must correspond in character with each. But if sufficient be shown to ascertain the estate intended to be conveyed, the land may pass by the deed, although some of the particulars are false. | What is necessary to ascertain an estate intended to be conveyed? |

| | | | | | |
|---|---|---|---|---|---|
| 5874 | Hornor v. Hanks, 22 Ark. 572, 580–81 (1861) | 11 | The right of a plaintiff must be adjudicated upon as it existed at the time of the filing of his bill; and if he has a good cause of action, which had not then accrued, the bill cannot be maintained: And it would seem that a court of chancery would not allow a defendant to modify the relief to which the plaintiff was entitled when the suit was begun, by setting up as a defense a change of circumstances produced by the use of legal process or remedies after he is brought into court: So, if the defendant has a judgment against the plaintiff when the bill is filed, his case is not strengthened by a subsequent sale and purchase of the property in dispute under such judgment. | The law is expressly written that the right of a plaintiff must be adjudicated upon as it existed at the time of the filing of his bill. Adams Equity 413; Barfield v. Kelly, 4 Russ. 359. *581 And this court has decided that where a bill disclosed a good cause of action, which had not accrued when the bill was filed, the bill could not be maintained. Phebe v. Quillin, 21 Ark. 499. And it would seem to be against the policy of a court of chancery to allow a defendant to cut off, or to modify the relief to which the whole case may show the plaintiff to have been entitled upon the condition of the case when the suit was begun, by the use of legal process or remedies after the defendant is brought into a court of equity, there to make his defense. | Is it against the policy of a court of chancery to allow a defendant to cut off relief? |
| 5879 | Caywood v. Supreme Lodge of Knights & Ladies of Honor, 171 Ind. 410, 86 N.E. 482, 483 (1908) | 1 | A provision in an insurance policy, limiting the time to bring suit thereon to a period less than that fixed by the statute of limitations, is valid, unless forbidden by statute. | It is settled by the great weight of the authorities that a provision in an insurance policy limiting the time in which suit may be brought thereon to a period less than that fixed by statute of limitations is binding, unless it contravenes a statute. | "Is a provision in an insurance policy, limiting the time to bring suit thereon to a period less than that fixed by the statute of limitations, valid?" |
| 5880 | Drott v. Batement & Harper, 1899 WL 713, at *1 (Ohio Cir. Ct. 1899) | 1 | A firm name showing the surnames only of partners, is not a fictitious name, nor a designation not showing the names of the partners within the Act of Feb. 13, 1896, 92 Ohio Law 25, requiring every firm doing business under such a name or designation to file and publish a certificate showing the full names and residences of its members. | A firm name showing the surnames only of the partners, is not a fictitious name, nor a designation not showing the names of the partners within the meaning of the act of February 13, 1896, 92 O. L., 25, requiring every firm doing business under such a name or designation to file and publish a certificate showing the full names and residences of its members. | Is a firm name showing the surnames of the partners a fictitious name? |
| 5900 | Stevens v. The Railroads, 4 F. 97, 109–10 (C.C.W.D. Tenn. 1880), aff'd sub nom. Stevens v. Memphis & C.R. Co., 114 U.S. 663, 5 S. Ct. 974, 29 L. Ed. 281 (1885) | 2 | The right of a plaintiff to dismiss his bill upon payment of the costs, at any time before a hearing on the merits, is not an absolute and unqualified right. It will not be allowed when by so doing the plaintiff will prejudice the defendant; but this injury must be of a character different from the mere ordinary inconveniences of double litigation, which, in the view of the law, are compensated by costs, and must deprive the defendant of some substantive right not available in a second suit, or that may be endangered by the dismissal. | The injury to the defendant must be of a character that deprives him of some substantive rights concerning his defences not available in a second suit, or that may be endangered by the dismissal, and not the mere ordinary inconveniences of double litigation, which, in the eye of the law, would be compensated by costs. Nor is it necessary to consider the suggestion that the stipulation of counsel, and the order upon it, amounts to an agreement to try or continue and not dismiss. | Is the inconvenience of double litigation usually compensated by the payment of the costs? |
| 5968 | Pratt v. Carns, 80 Fla. 243, 248 (Fla. 1920) | 1 | A party seeking to have a deed declared to be void and delivered up to be canceled, on the ground of undue influence exerted over the mind of the grantor, must plead the facts constituting such influence; the rule of pleading in such cases being the same as in cases of fraud. | Syllabus by the Court A party seeking to have a deed declared to be void and delivered up to be canceled, on the ground of undue influence exerted over the mind of the grantor, must plead the facts constituting such influence; the rule of pleading in such cases being the same as in cases of fraud. | Should facts constituting undue influence be pleaded? |
| 5985 | Morrow v. Lindsey, 262 S.W. 641, 641 (Ark. 1924) | 3 | Mere absence of employed counsel from court on other business will not necessarily work a continuance of a pending cause or entitle defaulting party to set the judgment aside. | The mere absence of employed counsel from court on account of other business engagements is not such an unavoidable casualty as will necessarily work a continuance of a cause pending in said court, or which will entitle the defaulting party to a new trial thereof. These are matters which appeal to the discretion of the court. Brickey v. State, 148 Ark. 595, 231 S. W. 549. It cannot be said that the trial court abused its discretion in the instant case in refusing to set the judgment aside and grant a new trial, for it was not alleged and shown that any arrangement had been made with appellee or the court for a continuance of the cause. | Will the mere absence of an employed counsel from court on account of other business necessarily work a continuance of a pending cause in that court? |

| | | | | | |
|---|---|---|---|---|---|
| 6016 | Columbus Tr. Co. v. Upper Hudson Elec. & R. Co., 190 N.Y.S. 737, 740 (Sup. Ct. 1921) | 5 | Where parties to a pending action instituted proceedings for the examination of witnesses before trial by notice under Civil Practice Act, S 290, the court, on motion to vacate such proceedings, can disregard the mistake, and, since it has the parties before it, can enter an order under section 292 of that act for the examination of the witnesses if justice so requires and if they live more than 100 miles from the place of trial so that they are subject to examination under section 288 of that act. | While, however, the defendants were in error in not applying to the court in the first instance in order that witnesses may be examined before trial under the Civil Practice Act, whose testimony could not thus be taken under the provisions of the Code, sections 105 and 111 of the Civil Practice Act are expressly made applicable to pending actions and proceedings, and permit the court to disregard the mistake in procedure and to order that the relief be granted to the same extent as if the application had been, in the first instance, properly made. | Can a party to a pending action institute proceedings for the examination of witnesses before a trial by notice? |
| 6021 | Rubenstein v. Schmuck, 129 A.D. 326, 328, 113 N.Y.S. 554, 556 (App. Div. 1908) | 2 | One moving to postpone cannot require his motion to be heard and decided on any particular day, and he is not entitled to have an order entered until the court has finally denied his motion and decided to proceed to trial, or allow a dismissal or inquest by default, and the court may withhold its decision on the motion until the cause is ready for trial, unless court rules provide to the contrary. | It is not for the party making the motion to postpone to dictate to the court the precise day and hour when his motion shall be heard and decided. His right to have an order entered does not accrue until the court has finally considered and denied his motion and decided to proceed with the trial or allow a dismissal or an inquest by default. If a motion be made before the cause is in a position to be moved for trial, the court may hold the motion and reserve decision until the cause is reached for trial, unless the rules of the court provide otherwise. | Can a party moving to postpone a trial require his motion to be heard and decided on any particular day? |
| 6029 | Hughes v. Black, 39 So. 984, 985 (Ala. 1905) | 2 | While a blank indorsement of a note vests title to the note in the holder thereof, yet if the note, after having been indorsed, gets back into the possession of the payee or the indorser, his possession shows a prima facie legal title to the note upon which suit may be predicated, and the burden is on defendant in such suit to show plaintiff's actual want of title. | A blank indorsement vests the title to the note in the holder, and if a note, after having been indorsed, gets back into the possession of the payee, the law converts his possession into a prima facie legal title, upon which suit may be predicated, and the burden of proof is on the defendant to show want of title in the plaintiff. | Whether a blank indorsement is sufficient to pass title? |
| 6030 | Seaboard Air Line Ry. v. Rentz, 60 Fla. 429, 435, 54 So. 13, 13 (1910) | 5 | A ruling on a motion for compulsory amendment of a pleading, under Rev.St.1892, S 1043, F.S.A. S 50.21, being within the sound discretion of the trial court, will not be disturbed on appeal, unless the judicial discretion has been plainly abused. | The granting or denial of a motion for the compulsory amendment of a pleading, based on the statute, is a matter resting within the sound judicial discretion of the trial court, and the ruling thereon will not be disturbed by an appellate court, unless it is plainly made to appear that there has been an abuse of such discretion. | Can a motion for compulsory amendment of a plea addressed to the court be disturbed? |
| 6034 | Wait v. Brewster, 31 Vt. 516 (1859) | 1 | A party who has taken a deposition, which the law does not require to be filed in court, is not obliged to produce it at the request of the other party, on trial, notwithstanding the opposite party appeared when it was taken, and cross-examined the deponent, and though it has been filed with the clerk of the court by the party taking it. | A party who has taken a deposition, which the law does not require to be filed in court, is not obliged to produce it, at the request of the other party, on trial, notwithstanding the opposite party appeared when it was taken, and cross-examined the deponent, and though it has been filed with the clerk of the court by the party taking it. | "Is a party who has taken a deposition, not obliged to produce it at the request of the other party?" |
| 6035 | City of Sullivan v. Cent. Illinois Pub. Serv. Co., 215 Ill. App. 606, 608–09 (Ill. App. Ct. 1919), rev'd, 294 Ill. 101, 128 N.E. 326 (1920) | 3 | Evidence purported to be taken before master in chancery to whom suit for injunction was referred, and evidence purported to have been heard by court, would be stricken from record, where portion of record containing evidence taken before master was not signed by master, and there was no certificate by him that such evidence was all the evidence heard by him, and there was no certificate preserving evidence heard by court or stating that such evidence was all the evidence heard by the court. | The pages of the record between 106 and 688, inclusive, contain what purports to be evidence taken before the master. It is not signed by the master nor is there any certificate by him that this evidence was all the evidence heard by him, but on pages 688 1/2 is a certificate that "the above and foregoing is a true and correct copy of all the evidence offered by the respective parties in the case at the hearing held before the master in chancery." This certificate is signed by one Nettie Bristow. Page 689 of the record shows that certain testimony was taken in open court on February 18, 1918. Pages 690 to 695, inclusive, purport to set out the testimony of the witnesses heard by the court at that time. There is no certificate of evidence preserving the evidence so heard before the court. The evidence is simply written into the record and there is no certificate by the court that it was all the evidence heard and there is nothing in the whole record to show that it contains all the evidence heard upon the hearing of the cause. | "Should a deposition taken before a master in chancery, and reported by him, but not signed by the witness, upon motion be stricken from the record?" |
| 6036 | Inhabitants of Brighton v. Walker, 35 Me. 132, 133 (1853) | 2 | A deponent, before giving his deposition, must be sworn "to testify the truth, the whole truth, and nothing but the truth, relating to the cause or matter for which the deposition is to be taken"; and where a caption recites that "the deponent was first sworn, according to law, to the aforesaid deposition by him subscribed," the deposition will be rejected. | The R. S. c. 133, § 15, requires, that a deponent before giving his deposition, shall be sworn to "testify the truth, the whole truth, and nothing but the truth, relating to the cause or matter for which the deposition is to be taken." | "Must a deponent, before giving his deposition, be sworn ""to testify the truth, the whole truth, and nothing but the truth, relating to the cause or matter for which the deposition is to be taken""?" |

| 6049 | Fredericks v. Davis, 3 Mont. 251, 257 (1878) | 2 | The certificate of a deputy county recorder to the official character of an acting justice taking a deposition must be tested by the laws of the state or territory where taken. | The certificate authenticating the official character of the justice of the peace, before whom the deposition was taken, was properly made under the laws of Arizona by a deputy recorder. | Must the certificate of a deputy county recorder to the official character of an acting justice taking a deposition be tested by the laws of the state or territory where taken? |
|---|---|---|---|---|---|
| 6050 | Harris v. Leavitt, 16 Tex. 340, 343 (1856) | 3 | Where one party applies for a commission to take the deposition of a witness by interrogatories and the opposite party fails to file cross interrogatories, the party at whose instance the commission was issued may decline on the trial to read the deposition, and the opposite party will have no right to read it. | "that where one party applies for a commission to take the deposition of a witness, by interrogatories, and the opposite party fails to file cross interrogatories, the party at whose instance the commission was issued may decline, on the trial, to read the deposition, and the opposite party will have no right to read it." | Is it no objection to the reading of a deposition that notice of its being filed in the clerk's office was not given to the opposite party? |
| 6078 | Petrie v. Columbia & G.R. Co., 27 S.C. 63, 2 S.E. 837, 840 (1887) | 2 | Where parties join in a commission to take the examination of a witness, and the commission is returned into court, either party may move for publication, and neither can object to it. It is error, therefore, to refuse the plaintiff publication of testimony taken on behalf of the defendant until the defendant has manifested an intention not to use it, either by moving for a nonsuit, or by declining to introduce it when it came his turn to offer testimony. | The rule in reference to testimony taken by commission was laid down in the case of Walton v. Bostick, 1 Brev. 162, in the following language: "Where parties join in a commission to take the examination of witnesses, and the commissions returned into court, either party may move for publication, and neither can object to it.

Petrie v. Columbia & G.R. Co., 27 S.C. 63, 2 S.E. 837, 840 (1887) | Where parties join in a commission to take the examination of witnesses and the commission is returned into the court can a party object to it? |
| 6087 | Kirtland v. Hotchkiss, 100 U.S. 491, 497–98 (1879) | 5 | Unless restrained by provisions of the federal constitution the power of the state as to the mode, form and extent of taxation is unlimited, where the subjects to which it applies are within her jurisdiction. | In the last-named case we said that, 'unless restrained by provisions of the Federal Constitution, the power of the State as to the mode, form, and extent of taxation is unlimited, where the subjects to which it applies are within her jurisdiction.' | Can the provisions of the federal constitution restrain the form and extent of the taxation power of the state? |
| 6104 | Wells v. Bushe, 118 N.Y.S. 486, 486 (N.Y. Sup. Ct. 1909) | 1 | The court has inherent power, in the absence of statute, to dismiss or perpetually stay a suit the only effect of continuing which would be to subject defendants to the annoyance, danger, and expense of protecting themselves from groundless, vexatious, and harassing litigation. | The only effect of continuing the suit will be to subject the defendants to the annoyance, danger, and expense of protecting themselves from groundless, vexatious, and harassing litigation. That the court possesses the inherent power, in the absence of statute, to dismiss or perpetually stay such suits, has been held in Stewart v. Butler, 27 Misc. Rep. 708, 59 N. Y. Supp. 573. | "Does court have power, in absence of any statute to dismiss or perpetually stay groundless, vexatious, annoying, and harassing litigation?" |
| 6135 | Bank of Conway v. Stary, 51 N.D. 399, 200 N.W. 505 (1924) | 3 | Accommodation indorser, indorsing note before delivery under Comp. Laws 1913, SS 6914, 6948, 6949, is not surety within sections 6675-6689, so as to have right under section 6683 thereof to require creditor, on penalty of exoneration of surety, to proceed against principal or to pursue any other remedy in his power which surety cannot himself pursue. | An accommodation indorser, who indorses a promissory note before delivery, under sections 6914, 6948, 6949, C. L. 1913 (sections 29, 63, and 64 of the Uniform Negotiable Instrument Law), is not a surety within the provisions of chapter 85 of the Civil Code (sections 6675 to 6689, C. L. 1913) so as to have the right, under section 6683 thereof, to require the creditor to proceed against the principal or to pursue any other remedy in his power which the surety cannot himself pursue, and which will lighten his burden, with resulting exoneration from liability if the creditor fails, refuses, or neglects to sue the principal or enforce payment by the principal in appropriate legal proceedings. | Who is an accommodation indorser? |
| 6159 | Grand Lodge, Benevolent Knights of Am., v. Murphy Const. Co., 152 La. 123, 128, 92 So. 757, 759 (1922) | 1 | In general, and except where such imputation would amount to a fraud on the part of both debtor and creditor, the debtor may always impute payments as he pleases, and cannot be controlled therein by a surety. | Hence except where such imputation of payment would amount to a fraud on the part of both debtor and creditor, the debtor may always impute the payment as he pleases. | "In situations where imputation would amount to a fraud on the part of both debtor and creditor, could the debtor impute the payments as he pleases?" |
| 6188 | Rey v. Simpson, 63 U.S. 341, 350 (1859) | 3 | When a note payable to a particular person or order is first endorsed by a third person, such third person is held to be an original promissor, guarantor or endorser according to the nature of the transaction and the understanding of the parties at the time the transaction took place. | When a promissory note, made payable to a particular person or order, as in this case, is first endorsed by a third person, such third person is held to be an original promissor, guarantor, or endorser, according to the nature of the transaction and the understanding of the parties at the time the transaction took place. | When can a third person be held as an original promissor? |

| | | | | | |
|---|---|---|---|---|---|
| 6198 | Supervisors of Washington Cnty. v. Saltville Land Co., 99 Va. 640, 641, 39 S.E. 704, 704 (1901) | 3 | In the absence of constitutional restrictions, the Legislature may impose upon a taxing district, such as a town, the duty of keeping in repair the streets and roads within, and relieve it from taxation for roads without, its limits. The Legislature judges finally and conclusively upon this question. Section 2 of Article VII of the Constitution of this State does not restrain the Legislature in this respect, and it may exempt lands lying within a town from the payment of a county road tax. | It seems to be well settled that the general assembly, in the absence of constitutional restrictions, may impose upon a taxing district, such as a town, the duty of keeping in repair the streets and roads within, and relieve it from taxation for roads without, its limits. | Can the Legislature relieve a taxing district from taxation for roads? |
| 6245 | New York Firemen Ins. Co. v. Bennett, 5 Conn. 574, 574 (Conn. 1825) | 2 | The indorsement of a note, by one of several partners, in the partnership name, as surety for a third person, without the consent or knowledge of the other partners, will not bind the firm. | The indorsement of a note, by one of several partners, in the partnership name, as surety for a third person, without the consent or knowledge of the other partners, will not bind the firm; and the burden of proving the authority of the partner so using the partnership name, lies on the creditor or holder of the note. | "Does an indorsement of a note, by one of several partners, in the partnership name, as surety for a third person, without the consent of other partners, bind the partnership?" |
| 6272 | Kaplan v. Gaskill, 108 Neb. 455, 187 N.W. 943, 945 (1922) | 3 | The provision of the Workmen's Compensation Act that it shall apply to every employer employing one or more employees in a regular trade, business, profession or vocation of such employer does not contemplate that a person can be engaged in only one regular business but he may be engaged in several. Laws 1917, c. 85, S 1. | The statute provides that the act "shall apply * * * to every employer" in this state employing one or more employees, in the regular trade, business, profession or vocation of such employer" (Laws 1917, c. 85, § 1), and further provides that the act "shall not be construed to include any person whose employment * * * is not in the usual course of the trade, business, profession or occupation of his employer" | "Does the Compensation Act apply to employees in the regular trade, business, profession or vocation of an employer?" |
| 6277 | Douthart v. Logan, 86 Ill. App. 294, 309 (Ill. App. Ct. 1899) | 3 | The "good will" of a partnership may be defined as every possible advantage acquired by the firm in carrying on its business, whether connected with premises or name or other matter. | "The good will of a partnership may be defined as every possible advantage acquired by the firm in carrying on its business, whether connected with premises, or name, or other matter." | Is good will of a partnership every possible advantage acquired by the firm in carrying on its business? |
| 6335 | Gue v. Tide Water Canal Co., 65 U.S. 257, 259 (1860) | 1 | A corporate franchise to take tolls on a canal cannot be seized and sold under a fieri facias, unless authorized by a statute of the state which granted the act of incorporation. | A corporate franchise to take tolls on a canal cannot be seized and sold under a fieri facias, unless authorized by a statute of the State which granted the act of incorporation. | Can a corporate franchise to take tolls on a canal be seized and sold under a fieri facias? |
| 6374 | Gilbreath v. State, 15 Ala. App. 588, 590, 74 So. 723, 723 (Ala. Ct. App. 1917) | 2 | A statute, providing that any person who willfully sets fire to or burns any uninhabited dwelling house shall be guilty of arson in the second degree, manifests a legislative intent to protect the property rather than the habitation or person. | The statute provides: "Any person *** who willfully sets fire to, or burns any uninhabited dwelling house" is guilty of arson in the second degree. (Code 1907, § 6296.) The word "uninhabited" employed in the statute excludes the idea that the sole purpose of the statute is to protect the habitation or person, and manifests a legislative intent to protect the property of the owner in the "uninhabited dwelling house." | When is a person considered guilty of arson in the second degree? |
| 6392 | Bank of Tennessee v. Officer, 62 Tenn. 173, 174–75 (1873) | 4 | In the case of bills of exchange, promissory notes, and other commercial contracts, a month is always a calendar month. A note payable six months after the 30th of May is due just six calendar months and three days thereafter, the days of grace being included, bringing it to maturity, consequently, on the 3rd of December succeeding. Until that day the endorsers of such paper have not broken their contract by non-payment. | In the case of bills of exchange, promissory notes, and other commercial contracts, a month is always a calendar month, so, if a bill or note is dated on the 10th of January, and made payable one month after date, it is due, the *175 three days of grace being included, the 13th of February. Edward's Bills, 513; Story on Promissory Notes, sec. 213; Story on Bills, sec. 330; Story on Prom. Notes, sec 213a. The demand must be made on the third day of grace, or the second if the third be a holiday. 2 Kent, 102-3; 11 Wheat., 431; Story on Prom. Notes, secs. 217, 321; 12 Wheat., 213. A note then, payable six months after the 30th May, would be due just six calendar months and three days thereafter, which would bring it to absolute maturity, in cases where grace is allowed, on the 3d of December thereafter. Until that day the endorsers of such papers have not broken their contract in the sense of commercial law. | "In the case of bills of exchange, promissory notes, and other commercial contracts, how many days of grace are available in time of payment?" |
| 6419 | Davis Sewing Machine Co. v. Richards, 115 U.S. 524, 525, 6 S. Ct. 173, 175, 29 L. Ed. 480 (1885) | 1 | When a guaranty is signed by the guarantor without any previous request of the other party, and in his absence, for no consideration moving between them, except future advances to be made to the principal debtor, the guaranty is, in legal effect, an offer or proposal on the part of the guarantor, and, without an acceptance by the creditor, no liability is incurred thereby. | But if the guaranty is signed by the guarantor without any previous request of the other party, and in his absence, for no consideration moving between them except future advances to be made to the principal debtor, the guaranty is in legal effect an offer or proposal on the part of the guarantor, needing an acceptance by the other party to complete the contract. | How can a contract of guaranty be distinguished from an offer to guarantee? |

| 6451 | Owens v. Commonwealth, 187 Ky. 207, 218 S.W. 719, 720 (1920) | 2 | Where the weapon is of such character as to admit of but one conclusion in that respect, the question whether or not it is deadly, within the meaning of the statute, is one of law; but, where the weapon employed is such that its deadly character depends upon the manner and circumstances of its use, the question is one of fact for the jury. | The established rule on the subject is that, where the weapon is of such character as to admit of but one conclusion in that respect, the question whether or not it is deadly, within the meaning of the statute, is one of law; but, where the weapon employed is such that its deadly character depends upon the manner and circumstances of its use, the question is one of fact for the jury. | Is it for a jury to decide if a weapon is deadly if it is not a deadly weapon per se? |
| 6452 | Sturdivant v. Tollette, 84 Ark. 412, 105 S.W. 1037, 1037–38 (1907) | 1 | Hiring a tenant to do two or three days' work is not within the prohibition of the Acts of 1905, p. 726, providing that one who interferes with, entices away or knowingly employs another's renter before the expiration of his contract shall be liable to the other for advances made to the renter and for all damages sustained by reason thereof. | The General Assembly of 1905 (Acts 1905, p. 726) amended section 5030 of Kirby's Digest so as to make it read as follows: "If any person shall interfere with, entice away, knowingly employs or induce a laborer or renter who has contracted with another person for a specified time to leave his employer or the leased premises, before the expiration of his contract without the consent of the employer or landlord, he shall, upon conviction before any justice of the peace or circuit court, be fined not less than twenty-five nor more than one hundred dollars, and in addition shall be liable to such employer or landlord for all advances made by him to such renter or laborer by virtue of his contract, whether verbal or written, with said renter or laborer, and for all damages which he may have sustained by reason thereof." | Can a person be convicted for enticing away a renter? |
| 6454 | Connor v. Elliott, 79 Fla. 513, 85 So. 164 (1920) | 9 | The laws of the state where real estate or immovable property is situated furnish the rules governing its descent, alienation, transfer, and the capacity of the parties to such contracts or conveyances. | So far as real estate or immovable property is concerned, the laws of the state where it is situated furnish the rules which govern its descent, alienation, and transfer, the construction, validity, and effect of conveyances thereof, and the capacity of the parties to such contracts or conveyances, as well as their rights under the same. | Does the law of the state where the real estate is situated govern the rights of the parties? |
| 6459 | Caspar v. Lewin, 82 Kan. 604, 109 P. 657, 657 (1910) | 8 | Factory Act (Laws 1903, c. 356) S 7, provides that an establishment wherein any natural products or other articles, in raw, incomplete, or unfinished condition, are converted into a new improved or different form, is a manufacturing establishment, within the act. Held, that an establishment wherein railroad iron, old stoves, waste and scrap iron of every description, is cut into lengths, known as grade No. 1, grade No. 2 and busheling scrap, by machines known as alligator shears, operated by power, to meet standing specifications of mills which purchase the product, is a manufacturing establishment within the act. | Under section 7 of the factory act (chapter 356, Laws 1903), besides certain named establishments, any other establishment is a "manufacturing establishment," wherein any natural products or other articles or materials of any kind, in a raw or unfinished or incomplete state or condition, are converted into a new or improved or different form. An establishment wherein railroad iron, old stoves, old waste iron, and scrap iron of every description is cut into lengths known as grade No. 1, grade No. 2 and busheling scrap, by means of machines known as alligator shears and operated by power, to meet standing specifications of mills which purchase the product, is a "manufacturing establishment" within the meaning of the factory act. | What is a manufacturing establishment under the Factory Act? |
| 6480 | Morris v. Jefferson Elec. Co., 278 Pa. 361, 365, 123 A. 321, 322 (1924) | 1 | Electric companies must use highest degree of care practicable to avoid injury to those in lawful proximity to their wires. | A company using a dangerous agency, like an electric current of high power, is bound to the highest degree of care practicable to avoid injury to any one lawfully within its proximity, but ordinary persons must all know danger attends contact with electric wires. | What is the degree of care that Electric companies must use to avoid injury to those in lawful proximity to their wires? |
| 6482 | State v. Crawford, 104 Kan. 141, 177 P. 360, 361 (1919) | 3 | The Fire Prevention Act, S 5, requiring that "all electric wiring shall be in accordance with the National Electrical Code," is void for uncertainty. | The clause in section 5 of the Fire Prevention Act (section 4863 of the General Statutes of 1915), requiring that "all electric wiring shall be in accordance with the National Electrical Code," is void for uncertainty, and the informations charging offenses thereunder were properly quashed. | Is the Fire Prevention Act requiring that all electrical wiring shall be in accordance with the National Electrical Code void for uncertainty? |
| 6610 | Territory v. McCandless, 24 Haw. 485, 489 (1918) | 10 | This authority to legislate is conferred upon Congress by those constitutional provisions which grant to it power to declare war, to raise and support armies, etc., and which is known as the war-power of Congress. | This authority to legislate is conferred upon Congress by those constitutional provisions which grant to it power to declare war, to raise and support armies, etc., and which is known as the war-power of Congress. | Is the power of Congress to raise and support armies constitutionally authorized? |
| 6628 | Tremont Lumber Co. v. May, 143 La. 389, 395–96, 78 So. 650, 652 (1918) | 2 | Where cause of action is stated for first time in supplemental petition, filing of supplemental petition must be considered beginning of suit, and must be served on defendant and delays for answering allowed as in case of original petition. | Where a cause of action is stated for the first time in a supplemental or amended petition, the filing of the supplemental petition must be considered to be the beginning of the suit; the suit must be considered as *396 dating only from such filing, and not from the filing of the original petition; and the supplemental petition must be served upon the defendant, and the delays for answering must be allowed as in the case of an original petition. | Can a supplemental petition be considered as the beginning of a suit? |

| 6712 | Wells Fargo & Co. Express v. Allbright, 133 N.E. 753, 753 (Ind. App. 2d Div. 1922) | 2 | A second deposition of the same witness cannot be taken without leave of the court while the first is on file and in full force and effect. | It is the law that a second deposition of the same witness cannot be taken while the first is on file and in full force and effect, without leave of court. | Can a second deposition of the same witness be taken without leave of the court while the first is on file and in full force and effect? |
|---|---|---|---|---|---|
| 6785 | Edgefield Mfg. Co. v. Maryland Cas. Co., 78 S.C. 73, 58 S.E. 969, 971 (1907) | 3 | Testimony de bene esse taken in typewriting is good without a certificate of a notary that it was written by the witness or read over to him. | The court cannot presume the testimony to have been taken by a stenographer and afterwards typewritten, and therefore requiring a certificate that it had been read over to the witness. In taking testimony de bene esse typewriting is as any other writing. | Is testimony de bene esse taken in typewriting good without a certificate of notary that it was written by the witness or read over to him? |
| 6787 | Ex parte Green, 126 Mo. App. 309, 103 S.W. 503, 505 (1907) | 4 | In order to authorize the reading of depositions, it must appear from the return of the officer taking them that they were taken in pursuance of the notice. | Notice to take depositions must state the place, the day, and between what hours of the day depositions will be taken, and that, if not completed on that day, the taking will continue at the same place and between the same hours from day to day until completed; and, to authorize the reading of the depositions, it must appear from the return of the officer taking them that they were taken in pursuance of the notice. | "In order to authorize the reading of depositions, must it appear from the return of the officer taking them that they were taken in pursuance of the notice?" |
| 6799 | In re Briggs' Est., 168 N.Y.S. 382, 383 (N.Y. App. Div. 3d Dept. 1917) | 2 | The Supreme Court has no inherent power to compel a party to submit to examination before trial, and can only do so where statutory authority exists. | The Supreme Court, with general jurisdiction, has no inherent power to compel a party to submit to examination before trial, and can only do so where statutory authority exists. | "Does the Supreme Court have the inherent power to compel a party to submit to examination before trial, and can only do so where statutory authority exists?" |
| 6812 | Kootenai Cnty. v. Hope Lumber Co., 13 Idaho 262, 89 P. 1054 (1907) | 8 | Under Rev.St.1887, S 901, providing that corporations or other employers of residents in any highway district are responsible for the road poll tax assessed against their employ??s, and that a notice to the employer or managing agent requiring the payment of the road poll tax of the employ?? charges the employer or corporation therewith, such corporations or employers may be made responsible for the road poll tax assessed against their employ??s by proper notice given, provided that when the notice is given or thereafter, the employer becomes indebted to the employ??. | Under the provisions of section 901, Rev. St. 1887, corporations or other employers of residents in a highway district may be made responsible for the road poll tax assessed against their employés, by proper notice being given to the employer or managing agent, provided that at the time such notice is given, or thereafter, the employer becomes indebted to the employé. | Are corporations or other employers of residents responsible for the road poll tax assessed against their employees? |
| 6817 | Jackson Hill Coal & Coke Co. v. Bales, 183 Ind. 276, 108 N.E. 962, 963 (1915) | 9 | Each party may amend pleadings before or during trial by leave of court, with right to opposite party to continuance if amendment requires additional proof. | Each party may be permitted to amend his pleadings before or during the trial by permission of the court, with the right to the opposite party to a continuance if the amendment requires additional proof, upon a showing to that effect made under oath. | Should each party amend pleadings before or during trial by leave of court with the right to oppose party to continuance if amendment requires additional proof? |
| 6819 | Turner v. Hardin, 80 Iowa 691, 45 N.W. 758, 759 (1890) | 1 | Under Code 1873, S 3738, which provides that on taking a deposition on interrogatories neither party shall be present at the examination unless both are present, and that the certificate of the officer taking the deposition "shall state such fact if party or agent is present," it will be presumed that neither party was present where the certificate is silent and there is no showing to the contrary; and a motion to suppress a deposition because the certificate does not show that either of the parties was present is properly overruled. | Section 3738 of the Code provides that, "where a deposition is taken upon interrogatories, neither party, nor his agent or attorney, shall be present at the examination of a witness unless both parties are present or represented by an agent or attorney, and the certificate shall state such fact if party or agent is present." The statute does not require the certificate to show the fact when neither party nor agent is present; and where the certificate is silent as to the fact, and there is no showing to the contrary, it will be presumed that the requirements of the law have been observed. | "When depositions are taken on commission, with interrogatories attached, can party attend in person or by attorney, unless the adverse party is present or is represented?" |

| | | | | | |
|---|---|---|---|---|---|
| 6820 | S. Pac. R. Co. v. Royal, 23 S.W. 316, 317 (Tex. Civ. App. 1893) | 2 | Where neither the caption nor certificate of a deposition contains the title of the cause, a reference in the caption to the "annexed commission" is not sufficient to identify the case in which the deposition was taken. | The caption is as follows: "State of Virginia, county of Nottoway. I, Joseph E. Leath, a notary public in and for the county of Nottoway, and state of Virginia, in obedience to the annexed commission, caused the witness Sam'l H. Royal to appear before me, and the said witness being by me first duly sworn," etc. In the certificate of the officer there is no reference whatever to the case in which the depositions were taken. The commission is not in the record, and, even if it were, it has been held that the reference to the "annexed commission" would not be sufficient to identify the case in which the depositions were taken, (Slaughter v. Rivenbark, 35 Tex. 68,) and we do not feel disposed to relax the rule on this subject. | "Where neither the caption nor certificate of a deposition contains the title of the cause, is a reference in the caption to the ""annexed commission"" sufficient to identify the case in which the deposition was taken?" |
| 6826 | Jarecki Mfg. Co. v. Merriam, 104 Kan. 646, 180 P. 224, 225 (1919) | 1 | A good custom, invocable as tacitly affecting a contract, must be definite and certain, well-established, uniformly and universally prevalent and observed, of general notoriety, and acquiesced in without contention so long and so continuously that contracting parties either had it in mind or ought to have had it in mind when contracting. | To constitute a custom which tacitly attends the obligation of a contract, the habit, mode, or course of dealing in the particular trade, business, or locality must be definite and certain; must be well settled and established; must be uniformly and universally prevalent and observed; must be of general notoriety; and must have been acquiesced in without contention or dispute so long and so continuously that contracting parties either had it in mind or ought to have had it in mind, and consequently contracted, or presumptively contracted, with reference to it. | "What constitutes a custom which tacitly attends the obligation of a contract, the habit, mode, or course of dealing in the particular trade?" |
| 6830 | Borders v. Barber, 81 Mo. 636, 641–42 (1884) | 7 | Where a deposition is taken under a commission it is within the power of the court, on discovering merely formal defects therein, to direct the clerk to transmit the deposition back to the officer for correction, although there is no statute authorizing the amendment of a deposition. | At the next term of court the defendant filed a motion to suppress the deposition, based upon the omissions in the original certificate, and alleging the irregularity of the action of the court in permitting the deposition to be withdrawn from the files as aforesaid. This motion the court overruled. Was this action of the court in having the clerk so return the deposition for correction such irregularity as to justify or require the suppression of the deposition? | "Can the court permit withdrawal of depositions to correct irregularities, and then permit their use?" |
| 6832 | Rembert v. Whitworth, 14 La. Ann. 608, 609 (1859) | 1 | Where a commission to take testimony is specially directed by name to a person in another parish, his authority to administer oaths will be presumed. | Under this law, if a commission be specially directed by name to a person in another parish, the authority of such special commissioner to administer oaths, will be presumed. | "Where a commission to take testimony is specially directed by name to a person in another parish, will his authority to administer oaths be presumed?" |
| 6856 | Wilson v. Kochnlein, 1 W. Va. 145, 152 (1865) | 3 | The discretion of the judge in granting or refusing a continuance is to be exercised more rigidly after long delays, or several continuances granted, than upon the first application. | The cases cited in the argument clearly show that the discretion of the judge in granting or refusing a continuance, while it is a legal discretion, is nevertheless to be exercised more rigidly after long delays, or several continuances granted to the party, than upon the first application. | "Is the granting or refusing a continuance to be exercised more rigidly after long delays, or several continuances granted to the party, than upon the first application?" |
| 6858 | Burriss v. Wise, 2 Ark. 33, 33 (1839) | 8 | Where, at December Term, 1838, a cause was continued on account of the absence of A and B, two of defendant's witnesses; and at May Term, 1839, another affidavit for continuance is filed by him on account of the absence of A, one of the same witnesses, a continuance cannot be granted, because no suit can be twice continued for the same cause. | Where, at December Term, 1838, a cause was continued on account of the absence of A and B, two of defendant's witnesses; and at May Term, 1839, another affidavit for continuance is filed by him on account of the absence of A, one of the same witnesses, a continuance cannot be granted, because no suit can be twice continued for the same cause. | Will a second continuance be granted on account of absence of the same witness? |
| 6882 | Brigham v. Abbott, 21 Vt. 455, 455 (1849) | 1 | A deposition, taken without notice, to be used before auditors, may be received in evidence by the auditor, although not having been on file in court 30 days, as required in case of depositions taken to be used in the county court. | This is an action of book account. We think the deposition of Burnham, taken, to be used before the auditors, without notice, and without filing in court thirty days, as required by statute, where depositions are taken to be used in the county court, was properly received. | "Can a deposition to be used before auditors, taken without notice, be received in evidence by the auditor?" |
| 6883 | Hipp v. Huchett, 4 Tex. 20, 22–23 (1849) | 3 | There may be circumstances under which a refusal to grant a continuance on a third application would operate such flagrant injustice as to induce its reversal. | There might, perhaps, be circumstances under which a refusal to grant a continuance would, even on a third application, operate such flagrant injustice as to induce its reversal by a superintending tribunal; but they would rarely arise, and are not to be found in this case. | Would there be circumstances under which a refusal to grant a continuance on a third application would operate as flagrant injustice as to induce its reversal? |

| | | | | | |
|---|---|---|---|---|---|
| 6894 | Hagar v. Reclamation Dist. No. 108, 111 U.S. 701, 708–709 (1884) | 14 | The power of taxation possessed by a state may be exercised upon any subject within its jurisdiction, and to any extent not prohibited by the constitution of the United States. | The power of taxation possessed by a state may be exercised upon any subject within its jurisdiction, and to any extent not prohibited by the constitution of the United States. | Can the power of taxation possessed by a state be exercised upon any subject within its jurisdiction and to any extent? |
| 6915 | Puget Sound Power & Light Co. v. City of Seattle, 271 F. 958, 963 (W.D. Wash. 1921) | 6 | Though there is a question as to the propriety of considering an affidavit on motion to dismiss the bill, a suit should be dismissed in the interests of the public and the court whenever the controversy has become moot, regardless of how that issue is presented or suggested. | There doubtless is a question as to the propriety of considering the showing made by the affidavit on a motion to dismiss the bill; but, if the cause has become entirely moot by the payment of the installment of interest due March 1st, in the interests of the public and the court, it would be the latter's duty to consider such a question at any stage of the proceeding, however presented or suggested, and, if it is certain that only a moot question remains, to dismiss the suit in order to devote the time and effort which would be required for its consideration to other public business. | Should a suit be dismissed in the interests of the public and the court whenever the controversy has become moot? |
| 6957 | Fernald v. French, 121 Me. 4, 115 A. 420, 422 (1921) | 2 | Automobile driver, intending to cross the street in front of another car, should so watch and time the movement of the other car as to reasonably assure himself of the safe passage, either in front or rear of such car, even to the extent of stopping and waiting if necessary. | In fact it should be declared as a rule of law, governing the movement of motor vehicles under the conditions and circumstances of the present case, that a car intending to cross the street in front of another car should so watch and time the movement of the other car as to reasonably insure itself of a safe passage, either in front or rear of such car even to the extent of stopping and waiting, if necessary. | Is a person intending to make a turn required to watch and time the movements of other cars? |
| 6958 | Mitchell v. Bass, 26 Tex. 372, 380 (1862) | 2 | The established doctrine of the common law is that a conveyance of lands bounded on a public highway carries with it the fee to the center of the road, and such is the legal construction of a grant, unless the inference that it was so intended is rebutted by the terms of the grant. | The established doctrine of the common law is, that a conveyance of land bounded on a public highway carries with it the fee to the center of the road as part and parcel of the grant. Such is the legal construction of the grant unless the inference that it was so intended is rebutted by the express terms of the grant. | "Does a conveyance of land bounded on a public highway carry with it, the fee to the center of the road as part and parcel of the grant?" |
| 6990 | United States v. Nashville, C. & St. L. Ry., 249 F. 678, 681 (6th Cir. 1918) | 1 | It is the general rule, applicable, not only to customs duties, but to internal revenue taxes, that a common-law action of debt lies in favor of the government whenever, by accident, mistake, or fraud, the government has not received full payment of duties and excise taxes. | It is the general rule, applicable, not only to customs duties, but to internal revenue taxes, that a common-law action of debt lies in favor of the government whenever, by accident, mistake, or fraud, no duties or short duties have been paid | Does the common-law action of debt lie in favor of the government? |
| 6991 | Knisely v. Evans, 34 Ohio St. 158 (1877) | 3 | Where a negotiable note is transferred by indorsement, after maturity, the legal title is thereby vested in the indorsee; and, after such indorsement, the amount due on the note cannot be garnished in the hands of the maker, whether he has notice of the transfer or not, as a debt due to the original holder. | Where a negotiable promissory note is transferred by indorsement, after maturity, the legal title is thereby vested in the indorsee; and, after such indorsement, the amount due on the note can not be garnished in the hands of the maker, whether he has notice of the transfer or not, as a debt due to the original holder. | Who is vested with the legal title of a negotiable promissory note? |
| 7006 | Spencer Com. Club v. Bartmess, 70 Ind. App. 294, 123 N.E. 435, 438 (1919) | 3 | As the owner of real estate attesting a deed made by a person having no title, if such owner knows the contents of such deed, will, by attesting it, be estopped from setting up his own title against the grantee the equitable interest in land owned by a commercial club will pass by a direct conveyance executed by its officers, notwithstanding the conveyance was ineffectual to carry the legal title. | The owner of real estate attesting a deed made by a person having no title, if such owner knows the contents of such deed, will, by attesting it, be estopped from setting up his own title against the grantee and his privies. | "Will the owner of land, by attesting a deed the contents of which he knows, made by a person who has no title, be estopped from asserting his title against the grantee and his privies?" |
| 7008 | Jewett v. Gage, 55 Me. 538, 538 (1868) | 3 | The plaintiff's minor daughter, with a suitable horse and vehicle, and in the exercise of ordinary care, was traveling along a public highway, when the horse became frightened at the appearance of the defendant's hog, which was permitted to be in the highway without a keeper, and occasioned an injury to the daughter and the vehicle. Held, that the defendant was liable for the injury, whether he knew or not that the hog was there at the time. | Where the plaintiff's minor daughter, with a suitable horse and carriage, and in the exercise of ordinary care, was travelling along a highway, and the horse, by him becoming frightened at the looks of a hog owned by the defendant, and by him permitted to be in the highway without a keeper, occasioned an injury to the daughter and carriage,--Held, that the owner, or he who had control of the hog, was liable for the injury, although he did not know the hog was in the highway at the time of the injury. | Will an owner be liable for injuries caused by a horse/hog? |
| 7140 | Cunningham v. Ferguson, 81 N.H. 380, 127 A. 436, 438 (1924) | 2 | Law of particular place where a note is made governs its construction, but a note made and dated in a particular place will be deemed to be a note of that place and governed by law of that country, whether it is expressly made payable there or is payable generally without naming any particular place. | "If a note is made payable at a particular place, the law of the place where it is thus made payable will govern its construction; but a note made and dated in a particular place will be deemed to be a note of that place and governed by the law of that country, whether it is expressly made payable there or is payable generally without naming any particular place. | Which law will govern the construction of a note made payable at a particular place? |

| 7141 | Cunningham v. Ferguson, 81 N.H. 380, 127 A. 436, 438 (1924) | 2 | Law of particular place where a note is made governs its construction, but a note made and dated in a particular place will be deemed to be a note of that place and governed by law of that country, whether it is expressly made payable there or is payable generally without naming any particular place. | "If a note is made payable at a particular place, the law of the place where it is thus made payable will govern its construction; but a note made and dated in a particular place will be deemed to be a note of that place and governed by the law of that country, whether it is expressly made payable there or is payable generally without naming any particular place. | Which law will govern a note which is payable without naming any particular place? |
|---|---|---|---|---|---|
| 7221 | State v. Houston & T.C. Ry. Co., 209 S.W. 820, 822 (Tex. Civ. App. 1918) | 4 | The grant of taxing power to any county or district by the Legislature should be construed with strictness, the presumption being that the Legislature has granted in clear terms all it intended to grant. | "In the construction of any grant of taxing power to any county or district by the Legislature, the rule is that it should be construed with strictness, the presumption being that the Legislature has granted in clear terms all it intended to grant. | Should the grant of taxing power to any county or district by the Legislature be construed with strictness under the presumption that the Legislature has granted in clear terms all it intended to grant? |
| 7237 | Garvin v. Jennerson, 20 Kan. 371, 372–73 (1878) | 5 | Under Civ.Code, S 361, providing that "every deposition intended to be read in evidence on the trial must be filed at least one day before the day of trial," one entire day must elapse between the day of filing and the day of trial. To properly compute the time within such statute, both the day of filing and the day of trial should be excluded. | It is assigned as error, that the deposition of a material witness on the part of defendant in error was read upon the trial against the objection of plaintiff in error in violation of section 361 of the civil code, which provides, that "every deposition intended to be read in evidence on the trial must be filed at least one day before the day of trial." The trial of the case commenced at 9 o'clock A. M. of November 12th 1875; and the deposition was filed in the court at 11 o'clock A. M. of the 11th *373 of November. This assignment of error must be sustained, because the statute requiring at least one day before the day of trial, means one clear day; and both the day on which the deposition was filed and the day of the trial must be excluded. With this construction the deposition ought not to have been read. | Must every deposition intended to be read in evidence on the trial be filed at least one day before the day of trial? |
| 7246 | Kaplan v. Gaskill, 108 Neb. 455, 187 N.W. 943, 945 (1922) | 3 | The provision of the Workmen's Compensation Act that it shall apply to every employer employing one or more employees in a regular trade, business, profession or vocation of such employer does not contemplate that a person can be engaged in only one regular business but he may be engaged in several. Laws 1917, c. 85, S 1. | The next question presented is whether or not the employment was in the usual course of the regular trade, business, profession, occupation or vocation of such employer. The statute provides that the act "shall apply * * * to every employer in this state employing one or more employees, in the regular trade, business, profession or vocation of such employer" (Laws 1917, c. 85, § 1), and further provides that the act "shall not be construed to include any person whose employment * * * is not in the usual course of the trade, business, profession or occupation of his employer" | "Does the Act apply to employees in the regular trade, business, profession or vocation of an employer?" |
| 7292 | State v. Lotono, 62 W. Va. 310, 58 S.E. 621 (1907) | 4 | An alteration in an instrument, to constitute forgery, must be of a material part thereof; and a material alteration of an instrument is one which makes it speak a language different in legal effect from that which it originally spoke, or which carries with it some change in the rights, interests, or obligations of the parties to the writing. | An alteration in an instrument, to constitute forgery, must be of a material part thereof, and a material alteration of an instrument is one which makes it speak a language different in legal effect from that which it originally spoke, or which carries with it some change in the rights, interests, or obligations of the parties to the writing. | Does an alteration in relation to negotiable instrument affect the rights of the parties involved? |
| 7304 | State v. Matthews, 143 Tenn. 463, 226 S.W. 203, 205 (1920) | 2 | If money or property goes into the possession of an employer before it goes into the possession of his employee, the employee's criminal taking and appropriation of it does not constitute embezzlement, but larceny, "embezzlement" being the fraudulent appropriation of such property as the statute makes the subject of embezzlement under the circumstances in the statute by the person embezzling to the injury of the owner, the money or property coming directly from a third person into the hands of the employee in the course of his employment and being appropriated by him, while trespass, which is impossible where a servant takes his master's property from a third person, is essential to constitute the offense of larceny. | If the money or property goes into the possession of the employer before it goes into the possession of the employee, his taking and appropriating it does not constitute embezzlement, but larceny. Embezzlement is the fraudulent appropriation of such property as the statute makes the subject of embezzlement, under the circumstances in the statute, by the person embezzling, to the injury of the owner. To constitute embezzlement the money or property must come directly from a third person into the hands of the employee, in the course of his employment, and be appropriated by him. A larceny cannot be perpetrated when the servant, in the course of his duty, takes his master's property from a third person, though he means to appropriate it to his own use, and does so, for he commits no trespass. | Does the statute require that the embezzled property be entrusted to the accused directly by the master? |

| | | | | | |
|---|---|---|---|---|---|
| 7410 | Canada S. Ry. Co. v. Gebhard, 109 U.S. 527, 537–38, 3 S. Ct. 363, 370, 27 L. Ed. 1020 (1883) | 7 | A person dealing with a foreign corporation impliedly subjects himself to such laws of the foreign government under which the corporation was organized affecting the powers and obligations of the corporation as the known and established policy of such government authorizes. | Such being the law, it follows that every person who deals with a foreign corporation impliedly subjects himself to such laws of the foreign government, affecting the powers and obligations of the corporation with which he voluntarily contracts, as the known and established policy of that government authorizes. | What laws of a foreign government does a person who deals with a foreign corporation impliedly subject himself to? |
| 7458 | State ex rel. Yancey v. Hyde, 121 Ind. 20, 22 N.E. 644, 650 (1889) | 10 | Rev.St. S 5152, fixed the term of office of the state inspector of oils at two years. Acts 1889 (Elliott's supp.), S 1868, abolishes this office, and creates that of inspector of mineral oils, and refers to the former act for his duties and emoluments. It makes no provisions as to his term of office. Held, that the earlier provision still governs as to his term of office. | Section 5152, Rev. St., fixed the term of office of the state inspector of oils at two years; and as section 1868, Acts 1889, (Elliott's Supp.,) refers to the former act for the duties and emoluments of said officer, we are inclined to the opinion that it still governs as to the term of his office, as no term is fixed by the later act. | What is the term office of an oil inspector? |
| 7467 | Hornor v. Hanks, 22 Ark. 572, 572–73 (1861) | 11 | The right of a plaintiff must be adjudicated upon as it existed at the time of the filing of his bill; and if he has a good cause of action, which had not then accrued, the bill cannot be maintained: And it would seem that a court of chancery would not allow a defendant to modify the relief to which the plaintiff was entitled when the suit was begun, by setting up as a defense a change of circumstances produced by the use of legal process or remedies after he is brought into court: So, if the defendant has a judgment against the plaintiff when the bill is filed, his case is not strengthened by a subsequent sale and purchase of the property in dispute under such judgment. | The right of a plaintiff must be adjudicated upon as it existed at the time of the filing of his bill; and if he has a good cause of action, which had not then accrued, the bill cannot be maintained: And it would seem that a court of chancery would *573 not allow a defendant to modify the relief to which the plaintiff was entitled when the suit was begun, by setting up as a defense a change of circumstances produced by the use of legal process or remedies after he is brought into court: So, if the defendant has a judgment against the plaintiff when the bill is filed, his case is not strengthened by a subsequent sale and purchase of the property in dispute under such judgment. | Must the right of a plaintiff be adjudicated upon as it existed at time of filing his bill? |
| 7502 | MacDermot v. Grant, 181 Cal. 332, 334, 184 P. 396, 397 (1919) | 3 | The written consent to dismissal of the action by plaintiff, referred to in Code Civ.Proc. S 581, subd. 2 (West's Ann.Code Civ.Proc.), is wholly ineffective unless signed by the attorney of record of the consenting party. | But it is well settled that the written consent referred to in the Code provision now under consideration is wholly ineffective unless it is signed by the attorney of record of the consenting party. | Is the written consent to dismissal of the action by a plaintiff wholly ineffective unless signed by the attorney of record of the consenting party? |
| 7508 | Brandenburger v. Puller, 266 Mo. 534, 181 S.W. 1141, 1142 (1916) | 3 | Ordinarily a party has the legal right at any time to dismiss his suit upon such terms and under such conditions as he sees fit. | Ordinarily, a party has the legal right, at any time, to dismiss his suit upon such terms, and under such conditions, as he sees fit, and, under the authorities, it cannot be doubted that the agreement of a person, legally in a position to contest a will, to refrain from opposing its establishment, is a sufficient consideration to support a promise to pay. | "Does a party has the legal right, at any time, to dismiss his suit upon such terms and conditions, as he sees fit?" |
| 7509 | Daube v. Kuppenheimer, 195 Ill. App. 99, 107 (Ill. App. Ct. 1915), aff'd, 272 Ill. 350, 112 N.E. 61 (1916) | 4 | Right to take nonsuit is substantial right and ought not to be taken away without giving plaintiff some opportunity to exercise it. | The right to take a nonsuit is a substantial right, and ought not to be taken away without giving the plaintiff some opportunity to exercise that right. | Does the right to take nonsuit a substantial right and should not to be taken away without giving the plaintiff some opportunity to exercise that right? |
| 7523 | Casey v. Casey, 2 Root 269, 269 (Conn. Super. Ct. 1795) | 2 | A plaintiff may discharge an action in his name, brought upon a note, notwithstanding he is insolvent, and said note is assigned. | A plaintiff may discharge an action in his name, brought upon a note, notwithstanding said note is assigned, and the plaintiff insolvent. | "Can a plaintiff discharge an action in his name, brought upon a note, notwithstanding he is insolvent and said note is assigned?" |
| 7527 | Hensley's Adm'rs v. Lytle, 5 Tex. 497, 499–500 (1851) | 4 | The law has provided parties with process, by subpoena, and, in case of non-observance, attachment, to enforce the attendance of witnesses; and where a party has omitted to employ the means provided by the law, when practicable, the omission will, in general, be fatal to an application for a continuance. | The facts stated, however, in our opinion, do not constitute that diligence which the law requires. It has provided parties with the process of the court by subp na, and in case of its non-observance, attachment to enforce the attendance of witnesses; and where a party has omitted to employ the means provided by the law when practicable, the omission will in general be fatal to his application. | "Where a party elects to employ other means than those provided by law to assure that witness appears to testify at trial, will it be at his peril?" |

| | | | | | |
|---|---|---|---|---|---|
| 7578 | City of San Antonio v. Fetzer, 241 S.W. 1034, 1036 (Tex. Civ. App. 1922), writ refused (Oct. 11, 1922) | 2 | The Legislature may delegate the control of city streets to municipal corporations, the local governing bodies of which may then exercise such power to the same extent and for the same purposes as the Legislature could. | The Legislature may delegate to municipal corporations the control of the streets of such municipalities, and when the power is so delegated the local governing body (the board of city commissioners in the case of the city of San Antonio) may exercise that power to the same extent and for the same purposes as the Legislature could do. | Does the legislature have the power to delegate the control of the streets to the municipal corporation? |
| 7589 | Anderson v. Miller Scrap Iron Co., 169 Wis. 106, 170 N.W. 275, 276 (1919) | 3 | The Workmen's Compensation Act has substituted another liability in the place of the employer's common-law liability in tort; but it does not necessarily follow that the principles applicable to torts should be applied to this new liability. | It is true that the liability of the employer at common law was that of a wrongdoer, and therefore tortious in its nature. It is also true that for that liability the Workmen's Compensation Act has substituted another liability. It does not necessarily follow, however, that the principles applicable to torts should be applied to the liabilities of the employer under the act. The liability of the employer under the act is not based upon any wrongful conduct or negligent act of the employer. However blameless the employer may be, he is nevertheless liable if the employé be injured and he bring himself within the terms of the act. | Has the Workmens Compensation Act substituted another liability in the place of the employers common-law liability in tort? |
| 7618 | Crawford v. State, 44 Ala. 382, 383, 1870 WL 678 (Ala.), 1 | 1 | Code, S 3695, provides that one breaking and entering any shop, store, warehouse, or other building, where goods, merchandise or other valuable thing is kept for use, sale, or deposit, with intent to steal, is guilty of burglary. Held, that an indictment charging accused with breaking and entering a shop, but omitting to state that any goods, merchandise, or other valuable thing was there kept for use, sale, or deposit, was insufficient. | The statute defining burglary in this State is in these words: "Any person who, either in the night or day time, with intent to steal, or to commit a felony, breaks into and enters a dwelling-house, or any building within the curtilage of the dwelling-house, though not forming a part thereof; or into any shop, store, warehouse, or other building, in which any goods, merchandise, or other valuable thing, is kept for use, sale, or deposit, is guilty of burglary."--Rev. Code, § 3695 | Does breaking and entering into a warehouse constitute burglary? |
| 7619 | State v. Flannagan, 67 Ind. 140, 145 (1879) | 1 | The inevitable inference from section 1 of the act of March 5th, 1879, 1 R.S.1876, p. 671, is, that a turnpike company has no right to maintain a toll-gate upon a part of its road which remained out of repair for an unreasonable time; and that if such company persists in maintaining a toll-gate upon any part of its road so remaining out of repair, such toll-gate becomes an obstruction which may be abated as a public nuisance. | The inevitable inference from that provision of the statute is, that a turnpike company has no right to maintain a toll- gate upon a part of its road so remaining out of repair for an unreasonable time, and that if such company shall persist in maintaining a toll-gate upon a part of its road over which its right to collect tolls on such part has ceased, such toll-gate becomes an obstruction upon its road, and liable to be abated as a public nuisance. | Can a toll gate erected on a public highway be abated as nuisance? |
| 7622 | Merrick v. Britton, 26 Ark. 496, 503 (1871) | 2 | Where a party, for any good cause, is unprepared to go to trial, and fails by motion to postpone or continue, to show the fact to the court, at the proper time, he waives his want of preparation, and all right to afterwards object. | It is therefore incumbent on a party, if for any good cause he finds himself unprepared to go on, to state the circumstances to the court and move a postponement of his case. If he fails to do so, he waives his want of preparation, and all right after to object. | Does a party waives all his right to object if he fails to move a postponement of his case for any good cause he finds himself unprepared to go on? |
| 7629 | In re Carter's Will, 193 A.D. 355, 356, 184 N.Y.S. 39, 40 (App. Div. 1920) | 3 | It is the established rule that a party is entitled as a matter of law to an order of examination of adverse party before trial, where the moving papers comply with the statute. | It is now the established doctrine that—— 'Where the moving papers comply with the statute the party is entitled to the order as a matter of law.' | Is it the established rule that a party is entitled as a matter of law to an order of examination of adverse party before trial? |

| | | | | |
|---|---|---|---|---|---|
| 7638 | Garrett v. Kerney, 107 Md. 501, 513–14, 68 A. 1051, 1055–56 (1908) | 1 | Code Pub.Gen.Laws, art. 35, S 17, relating to depositions taken ex parte, provides that they shall be admitted "as if the same had been taken under a commission as prescribed in the preceding section," and "be treated in all respects as if taken under a commission regularly issued," etc. The preceding section requires that "interrogatories be proposed or exhibited." Held, that interrogatories should be returned and filed with ex parte depositions. | Although we do not deem it necessary to pass on the questions raised as to the testimony taken in Ireland, we do not want to be **1056 understood as approving of the form used for such depositions, under section 17 of article 35 of the Code of Public General Laws, when taken ex parte. No interrogatories were returned or filed with the notary so far as his return shows, and the court has no means of knowing whether leading questions were asked, or *514 how the examination was conducted. It is certainly a very dangerous practice when there is no appearance for one side, and does not seem to be contemplated by the statute, which provides that such depositions shall be admissible as evidence "as if the same been taken under a commission as prescribed in the preceding section," and to "be treated in all respects as if taken under a commission regularly issued" by said court and shall be subject to the like exceptions as testimony taken under commission." The "preceding section," which relates to commissions to take testimony out of the state, requires that "interrogatories be proposed or exhibited." | "Shall depositions taken ex parte be admitted ""as if the same had been taken under a commission as prescribed in the preceding section""?" |
| 7655 | Bulwinkle v. Cramer, 30 S.C. 153, 8 S.E. 689, 691 (1889) | 3 | Where a deposition is received by mail or express, under the seal of the officer, it is not necessary to show, before it can be read that the requirement that the officer shall retain it in his hands until delivered to court was complied with. | The same may be said in reference to the second specification, to-wit, the the officer retained the deposition in his own hands until he delivered it to the court, or mailed or expressed it under seal, with a certificate of the reasons for taking it. We cannot suppose that the legislature intended by the provision that the deposition shall be retained in the hands of the officer until, etc., that when it is received by mail or express, under the seal of the officer, before it can be opened it shall be made to appear by outside testimony that it had thus been retained by the officer. If the objecting party could make it appear that it had not thus been retained, it would be fatal; but we think that, in the first instance, the package, coming to the court by regular mail or by express, is prima facie sufficient to warrant the opening and the reading, unless successfully attacked on the ground mentioned, or some other. | "Where a deposition is received by mail or express, is it not necessary to show, before it can be read that the requirement that the officer shall retain it in his hands until delivered to court?" |
| 7656 | Young v. Mackall, 4 Md. 362, 369 (1853) | 7 | Where a commission is silent as to the time and place of its execution, the notice governs in these particulars, and it is just as requisite the return should show a compliance with the terms of the notice as to place and day, as if they had been designated in the commission. | And we hold that where the commission is silent, as to the place and time, and when it is to be executed, in these particulars, the notice is to govern, and that it is just as requisite the return should show a compliance with the terms of the notice, as to place and day, as though they had been designated in the commission. | "Where a commission is silent as to the time and place of its execution, does the notice govern in these particulars?" |
| 7665 | Tate-Jones & Co. v. Union Elec. Steel Co., 281 Pa. 448, 458 (1924) | 1 | For usage to become custom, binding those in trade or business to which it refers, meaning ascribed to word must be shown to be certain, continuous, uniform, and notorious. | Before any usage may be denominated a custom, and bind those in the trade or business to which it refers, the meaning ascribed must be shown to be certain, continuous, uniform and notorious. | "For usage to become custom, must the meaning ascribed to a word be shown to be certain?" |
| 7666 | Heistand v. Bateman, 41 Colo. 20, 22 (1907) | 2 | Custom or usage relating to a particular business, in order to be available for the purpose of determining the rights of parties, must be uniform, notorious, and reasonable. | Custom or usage relating to a particular business, in order to be available for the purpose of determining the rights of parties, must be uniform, notorious, and reasonable. | When can custom or usage relating to a particular business be used to determine the rights of parties? |

| | | | | | |
|---|---|---|---|---|---|
| 7671 | Rachac v. Spencer, 51 N.W. 920, 920 (Minn. 1892) | 1 | Gen.St.1878, c. 73, S 36 (M.S.A. SS 597.01, 597.02), authorizes the deposition of a person in another state to be taken before any officer authorized to administer an oath. Section 37 (M.S.A. SS 597.03, 597.07, 597.08, 597.10) provides that the officer shall annex to the deposition a certificate "under his hand and official seal," if he have one, stating what office he held when the deposition was taken, that he was authorized to administer oaths, and as to the giving of notice, etc. Section 39 (M.S.A. S 597.13) declares that "no informality, error, or defect in any proceeding under this statute shall be sufficient ground for excluding the deposition, unless the party making objection thereto shall make it appear to the satisfaction of the court" that the officer was not authorized to administer an oath, or that such party was by such informality, etc., precluded from appearing, etc. Held, that the omission of the official seal to the certificate of authentication of a deposition taken before a notary public in another state is an informality merely, under section 39 (M.S.A. S 597.13), and not alone sufficient to warrant the rejection of the deposition on the trial. | (Syllabus by the Court.)<br><br>The omission of the official seal to the certificate of authentication of a deposition taken before a notary public in another state in pursuance of sections 36, 37, c. 73, Gen. St., held to be an informality merely, under section 39 of the same chapter, and not alone sufficient to warrant the rejection of the deposition on the trial.<br><br>Opinion<br><br>VANDERBURGH, J.<br><br>It is provided by section 36, c. 73, Gen. St. 1878, that whenever the testimony of any person without this state is wanted in any civil action in any court in this state, the same may be taken by and before any officer authorized to administer an oath in the state or territory in which the testimony of such person may be taken, upon notice to the adverse party of the time and place of taking the same. Section 37 prescribes the manner in which the deposition shall be taken, and the nature of the certificate of authentication. "The officer taking such deposition shall annex thereto a copy of the notice or order, and a certificate under his hand and official seal, (if he have one,) stating what office he held and exercised when taking such deposition, and that by virtue thereof he was then and there authorized to administer oaths, *** and that each of such depositions were taken pursuant to such notice, and who, if any one, examined for the parties respectively. Such certificate shall be prima facie evidence of the matters therein stated." The depositions, when returned, shall | Does the statute authorize the deposition of a person in another state to be taken before any officer authorized to administer an oath? |
| 7673 | Cabanne v. Walker, 31 Mo. 274, 286 (1860) | 1 | The rule requiring depositions taken in another cause to be filed before they are read may be dispensed with when the ends of justice require it. When the evidence would operate as a surprise, the rule should not be suspended, except on terms which would not work injustice; but if the evidence is merely cumulative, and will not surprise, the rule may be dispensed with. | It is obvious that the rule requiring depositions taken in another cause to be filed before they are read, is not an inflexible one, and may be dispensed with when the ends of justice require it. When the evidence can be met and would operate as a surprise on the opposite party, it would not be proper to depart from the rule but on terms which would effect justice between the parties; and if the evidence can not be met, if it is merely cumulative and will not surprise, why reject it? | Can the rule requiring depositions taken in another cause to be filed before they are read be dispensed with when the ends of justice require it? |
| 7682 | Fire Ass'n of Philadelphia v. Masterson, 83 S.W. 49, 50 (Tex. Civ. App. 1904) | 1 | The fact that a deposition was not marked "Filed" by the clerk did not furnish any reason for its exclusion, it having been duly taken and returned and placed among the papers in the case. | The fact that the deposition was not marked "Filed" by the clerk did not furnish any reason for its exclusion. It had been duly taken and returned and placed among the papers of the case. | "Does the fact that the deposition was not marked ""Filed"" by the clerk furnish any reason for its exclusion?" |
| 7695 | Davis v. United States, 47 Ct. Cl. 195, 197–98 (1912) | 1 | In view of the fact that the practice of the Navy Department has been to order a paymaster's clerk, upon the completion of his duty abroad, to proceed to his home in the United States, his appointment should not be considered as revoked until his arrival in the United States. | In view of the fact that the practice of the Navy Department had been to order a paymaster's clerk, upon the completion of his duty abroad, to proceed to his home in the United States, his appointment should not be considered *198 as revoked until his arrival in the United States, and this custom was complied with by the Navy Department in this case. | Is a paymaster's clerk entitled to be returned to his home at the expense of the Government before being discharged? |
| 7702 | Campion v. Angier, Bell, 16 Tex. 93, 93 (1856) | 2 | The application for a second continuance because a material witness was absent should state that no other witness is in attendance by whom the defendant could prove the same facts, or, in the words of the statute, "that the testimony cannot be obtained from any other source." | The affidavit for a continuance was insufficient, in that it did not state that there were other witnesses in attendance by whom the defendant could prove the same facts, or, in the words of the statute, "that the testimony cannot be obtained from any other source." | "To meet the requirements of the statute for a second application for continuance, is it required to allege that the testimony could not be elicited from the witnesses could not be procured from any other source?" |

| | | | | | |
|---|---|---|---|---|---|
| 7706 | Wheeling, P. & C. Transp. Co. v. City of Wheeling, 99 U.S. 273, 281, 25 L. Ed. 412 (1878) | 11 | The state tax laws cannot restrain the action of the national authority nor can they abridge the operation of any law which Congress may constitutionally pass. | State power of taxation is doubtless very comprehensive; but it is not without limits, as appears from what has already been remarked, to which it may be added, that State tax laws cannot restrain the action of the national authority, nor can they abridge the operation of any law which Congress may constitutionally pass. | Can the state laws restrain the action of the national authority which Congress may constitutionally pass? |
| 7707 | Commonwealth v. Union Pac. R. Co., 214 Ky. 339, 283 S.W. 119, 120 (1926) | 4 | Personal tax may be imposed on all domiciled within territories of state, whether he citizen, alien, or corporation. | A personal tax may be imposed upon all domiciled within the territories of state, whether he be a citizen, an alien, or even a corporation. | "Can personal tax be imposed on all domiciled within the territories of state irrespective of whether he is a citizen, alien, or corporation?" |
| 7728 | Stewart v. Butler, 27 Misc. 708, 708, 59 N.Y.S. 573, 573–74 (Sup. Ct. 1899) | 2 | A complaint may be dismissed on motion, where the litigation is vexatious, clearly without merit, and not brought in good faith; plaintiff being an insolvent. | The defendants move--First, that the plaintiff's attorneys be required to produce and file **574 written evidence of their authority to commence this action; and, secondly, that the complaint be dismissed, because the action is vexatious and clearly without merit, and not brought in good faith, but solely as an endeavor to extract money from the defendants as the price of peace, and because of the irresponsibility of the plaintiff. | "Can a complaint of an insolvent plaintiff be dismissed on motion where litigation is vexatious, clearly without merit, and not brought in good faith?" |
| 7734 | State v. Clement Nat. Bank, 84 Vt. 167 (1911) | 1 | The taxing power of the state extends to all persons and property within its jurisdiction, not protected therefrom by federal supremacy. | The taxing power of the state extends to all persons and property within its jurisdiction not protected therefrom by federal supremacy. | Is the taxing power of the state extending to all persons and property within its jurisdiction protected by federal supremacy? |
| 7735 | In re McKennan's Estate, 25 S.D. 369, 126 N.W. 611, 614 (1910) | 3 | There is vested in the state, through the Legislature, absolute power over all matters of taxation, except as the power may be restricted by the state Constitution, or by some power delegated to the federal government. | In fact, it must be conceded as thoroughly established that there is vested in the state, through its Legislature, absolute power over all matters of taxation, save and except as the power of such Legislature may be restricted by the people through the Constitution, or by some power delegated to the federal government. | "Does the state have absolute power over all matters of taxation, except for the powers that may be restricted by the state Constitution?" |
| 7741 | Jewett v. Gage, 55 Me. 538, 538 (1868) | 3 | The plaintiff's minor daughter, with a suitable horse and vehicle, and in the exercise of ordinary care, was traveling along a public highway, when the horse became frightened at the appearance of the defendant's hog, which was permitted to be in the highway without a keeper, and occasioned an injury to the daughter and the vehicle. Held, that the defendant was liable for the injury, whether he knew or not that the hog was there at the time. | Where the plaintiff's minor daughter, with a suitable horse and carriage, and in the exercise of ordinary care, was travelling along a highway, and the horse, by becoming frightened at the looks of a hog owned by the defendant, and by him permitted to be in the highway without a keeper, occasioned an injury to the daughter and carriage,--Held, that the owner, or he who had control of the hog, was liable for the injury, although he did not know the hog was in the highway at the time of the injury. | Would the owner of the hog be liable if the horse is frightened by the hog in the highway and causes injuries? |
| 7757 | People v. O'Brien, 130 Cal. 1, 6, 62 P. 297, 299 (1900) | 8 | Where there was evidence tending to prove the prosecutrix, in a prosecution for rape, had been unchaste, and also tending to prove specific acts of unchastity, an instruction that the law presumes a woman to be chaste until the contrary is shown, and that on this presumption they might find the prosecutrix chaste character, even against the declarations of any number of witnesses which did not produce conviction in their minds, was improper, since, while the jury might infer her chastity as a matter of fact, a presumption of law to that effect conflicts with the controlling presumption of defendant's innocence. | But in this case evidence was subsequently introduced by defendant tending to prove that prosecutrix had been unchaste, and even tending to prove specific acts of unchastity, which she was not called to rebut. 3. On this state of the record, the court instructed the jury that 'the law presumes a woman to be chaste until the contrary is shown'; and further instructed them in effect that they might find on this presumption against the declarations of any number of witnesses that did not produce conviction in their minds. | Is a complaining rape witness presumed to be of chaste character? |
| 7766 | Carlisle v. U.S., 83 U.S. 147, 154, 21 L. Ed. 426 (1872) | 4 | A citizen or subject owes an absolute and permanent allegiance to his government or sovereign, or at least until, by some open and distinct act, he renounces it and becomes a citizen or subject of another government or another sovereign. | The citizen or subject owes an absolute and permanent allegiance to his government or sovereign, or at least until, by some open and distinct act, he renounces it and becomes a citizen or subject of another government or another sovereign. | When does a citizen or subject owe an absolute and permanent allegiance to his government or sovereign? |
| 7767 | Kirschner v. Conklin, 40 Conn. 77, 81 (Conn. 1873) | 2 | A subsequent indorser of a promissory note, who pays it, may recover of a prior indorser the whole amount paid, and not merely a contribution, as in the case of sureties. | Barlow, 9 Pick., 547, the court held that the relative rights and duties of parties who indorsed a promissory note for the accommodation of the maker are the same as in the case of a business note, so that the notice of the dishonor of such accommodation note having been given, a subsequent indorser who takes up the note may recover of a prior indorser the whole amount paid, and not merely a contribution as in the case of sureties. | Can a subsequent endorser or indorser of a promissory note recover the whole amount paid from a prior indorser? |

| | | | | | |
|---|---|---|---|---|---|
| 7772 | Pac. R. Co. v. Maguire, 87 U.S. 36, 37 (1873) | 3 | The right of taxation is a sovereign right and presumptively belongs to the state in regard to every species of property and to an unlimited extent but may be waived in particular instances by a clear expression of the legislative will. | The right of taxation is a sovereign right, and presumptively belongs to the State in regard to every species of property and to an unlimited extent. The right may be waived in particular instances, but this can only be done by a clear expression of the legislative will. | Is the right of taxation a sovereign right of states? |
| 7786 | Wm. B. Thompson & Co. v. Sporl, 160 La. 352, 359, 107 So. 135, 138 (1926) | 3 | Parties who sign negotiable instruments or other solemn obligations must expect to be held according to tenor thereof. | And parties who sign negotiable instruments, or other solemn obligations, must expect to be held liable according to the tenor thereof. | Are signatures to obligations not mere ornaments and those who sign such negotiable instruments or other solemn obligations must be expected to be held liable according to the tenor thereof? |
| 7789 | Keener v. Harrod, 2 Md. 63, 70 (1852) | 7 | To bind the principal, the act of the agent must be in the exercise and within the limits of the power delegated; and whenever a party does an act, as the agent of another, in excess of his powers or authority, he is personally responsible. | To bind the principal, the act must be done in the exercise, and within the limits of, the power delegated; and whenever a party undertakes to do an act, as the agent of another, if he does not possess any authority therefor from the principal, or exceeds his powers, he will be personally responsible to the person with whom he is dealing. | Does the liability of the principal depend on whether the act of the agent was done within the limits of the powers delegated? |
| 7792 | Mills v. Scott, 99 U.S. 25, 29 (1878) | 2 | Actions for debt will always lie where the amount sought to be recovered is certain or can be ascertained from fixed data by computation. | Actions for debt will always lie where the amount sought to be recovered is certain, or can be ascertained from fixed data by computation. | "Will an action for debt lie where the amount sought to be recovered is certain, or can be ascertained from fixed data by computation?" |
| 7794 | Cleveland, C., C. & I. Ry. Co. v. Wynant, 114 Ind. 525, 17 N.E. 118, 120–21 (1888) | 9 | The mere fact that an object is in a highway in violation of the statute does not necessarily make the owner liable for damages resulting from fright which the object may have occasioned to horses, but there must have been some natural causative connection between the violation of the statute and the frightening of the horses. | The mere fact that an object is in the highway, in violation of a statute, does not necessarily make the owner liable for damages resulting from fright which the object may have occasioned to horses. *121 There must have been some natural, causative connection between the violation of the statute and the frightening of the horses. | Will the object of the highway in violation of statute make the owner liable? |
| 7809 | Porter v. Huie, 94 Ark. 333, 126 S.W. 1069, 1070 (1910) | 1 | Where, before delivery of a promissory note, several persons successively indorsed their names on the back of it, in blank, as between the indorsers, in the absence of agreement to the contrary, the first indorser, who pays the note, has no recourse against the other indorsers, as the legal effect of the signing is to subject the indorsers as to each other in the order they indorse. | When several persons indorse a bill or negotiable note in succession, the legal effect is to subject them, as to each other, in the order they indorse. The indorsement imparts a several and successive, and not a joint, obligation, whether the indorsement be made for accommodation or for value received, unless there be an agreement aliunde different from that evidenced by the indorsements. When the successive indorsements are for accommodation of other parties, the indorsers for accommodation may make an agreement to be jointly and equally bound; but whoever asserts such an agreement must prove it." | What is the liability of successive indorsers? |
| 7836 | Temple v. Baker, 125 Pa. 634, 643 (1889) | 4 | The words "Credit the drawer," written on the face of a note by an indorser, imply no promise or undertaking on his part, but are merely a direction to all persons to whom the note may be presented to treat with the maker as the owner, notwithstanding the apparent title of the indorsee. | The words, 'Credit the drawer,' imply no promise or undertaking on the part of him who uses them, but are a direction to all persons to whom the note may be presented to treat the drawer as the owner, notwithstanding the apparent title of the indorsee. | Do the words Credit the drawer imply an undertaking? |
| 7849 | Eakin v. Citizens' State Bank, 67 Kan. 338, 72 P. 874, 875 (1903) | 1 | A bank check is a bill of exchange, within Gen.St.1901, c. 14, S 9, providing that an acceptance of a bill of exchange, written on paper other than the bill, shall not bind the acceptor, except in favor of a person to whom such acceptance shall have been shown, and who, in faith thereof, shall have received the bill for a valuable consideration. | Sec. 8. No person within this state shall be charged as an acceptor of a bill of exchange, unless his acceptance shall be in writing, signed by himself or his lawful agent. Sec. 9. If such acceptance be written on paper other than the bill, it shall not bind the acceptor, except in favor of a person to whom such acceptance shall have been shown, and who, in faith thereof, shall have received the bill for a valuable consideration." It was not claimed in the petition that the plaintiff received the check on the faith of the acceptance. In fact, it is distinctly alleged that he received it before the acceptance was made. | Should an acceptance of a bill of exchange be written on paper other than the bill itself? |

| ID | Case | # | Column A | Column B | Question |
|---|---|---|---|---|---|
| 7864 | Conrad v. Buck, 21 W. Va. 396, 396 (1883) | 3 | The assignment by one partner of all his interest in the partnership and its property to trustees for the payment of debts operates, ipso facto, as a dissolution of partnership. | The assignment by one partner of all his interest in the partnership and its property to trustees for the payment of debts operates, ipso facto, as a dissolution of partnership. | Does the assignment by one partner of all his interest in the partnership and its property to trustees for the payment of debts lead to dissolution of partnership? |
| 7883 | Potter v. Harvey, 30 Iowa 502, 503 (1871) | 1 | While the general rule is recognized that, if the purchaser of property, who, it is claimed, relied upon the representations of the seller, shall receive and pay for it after he has learned that such representations were false, he will be estopped from afterward claiming damages on account of such false representations; it is, nevertheless, held, that this rule has no just application, if the contract was made by an agent of the purchaser, and the principal was ignorant of the false representations having been made, although he knew the facts showing their falsity. | We may say, in answer to the objections made in argument, that it may be true, as a general proposition of law, that, if the purchaser of property, who relied upon the representations of the seller, shall receive and pay for it without objection, after he knows that the representations were false, he would be estopped from afterward claiming damage for such false representations. But, if his contract was made through an agent, and the principal was ignorant of the false representations having been made, although he knew the facts showing them false, the rule would have no just application. | Is a person whoknows that the representations of seller were false estopped from afterward claiming damage for such false representations? |
| 7894 | Conrad v. Buck, 21 W. Va. 396, 396 (1883) | 3 | The assignment by one partner of all his interest in the partnership and its property to trustees for the payment of debts operates, ipso facto, as a dissolution of partnership. | The assignment by one partner of all his interest in the partnership and its property to trustees for the payment of debts operates, ipso facto, as a dissolution of partnership. | Does the assignment by one partner of all his interest in the partnership and its property to the trustees for the payment of debts lead to the dissolution of partnership? |
| 7929 | Briggs v. Latham, 36 Kan. 255, 13 P. 393 (1887) | 1 | The indorsement of a promissory note is a separate and substantive contract, and the general rule is that contracts of this character are to be construed, and their effect determined, according to the laws of the state in which they are to be performed in or according to the laws of another state. | The indorsement is a separate and substantive contract, and is not necessarily controlled either by the place of payment named in the notes, or by the residence of the indorser. The general rule is that contracts of this character are to be construed, and their effect determined, according to the laws of the state in which they are made, unless it appears that they are to be performed in or according to the laws of another state. | "Are contracts to be construed, and their effect determined, according to the laws of the state in which they are made?" |
| 8026 | Cruzan v. Smith, 41 Ind. 288, 297–98 (1872) | 8 | The principal is not bound by the acts of a special agent, if he exceeds the limits of his authority. And it is the duty of every person who deals with a special agent to ascertain the extent of the agent's authority, before dealing with him. If this be neglected, such person will deal at his peril, and the principal will not be bound by an act which exceeds the particular authority given. | The principal is not bound by the acts of a special agent, if he exceeds the limits of his authority. And it is the duty of every person who deals with a special agent to ascertain the extent of the agent's authority before dealing with him. If this is neglected, such person will deal at his peril, and the principal will not be bound by any act which exceeds the particular authority given." | Is it the duty of every person who deals with special agent to ascertain extent of agent's authority before dealing with him? |
| 8030 | Thornton v. Dean, 19 S.C. 583, 589 (1883) | 3 | If a contract is entered into in one place to be performed in another, the parties may stipulate for the rate of interest of either country; if the contract stipulate generally for interest without fixing the rate, it should be the rate of interest at the place of payment; if no interest be stipulated, and payment be not made, interest by way of damages is according to the law of the place of payment. | If a contract is entered into in one place to be performed in another, the parties may stipulate for the rate of interest of either country. (2.) If the contract stipulate generally for interest without fixing the rate, it shall be the rate of interest at the place of payment. (3.) If no interest be stipulated, and payment be not made, interest by way of damages is according to the law of the place of payment, | Can the parties stipulate to the rate of interest when a contract is entered into in one state to be performed in another? |
| 8035 | Peck v. Jenness, 48 U.S. 612, 624–25 (1849) | 5 | Where jurisdiction of court and plaintiff's right to prosecute his suit therein, have once attached, such cannot be arrested or taken away by proceedings in another court. | It is a doctrine of law too long established to require a citation of authorities, that, where a court has jurisdiction, it has a right to decide every question which occurs in the cause, and *625 whether its decision be correct or otherwise, its judgment, till reversed, is regarded as binding in every other court; and that, where the jurisdiction of a court, and the right of a plaintiff to prosecute his suit in it, have once attached, that right cannot be arrested or taken away by proceedings in another court. | "Where a court of the United States has acquired jurisdiction by the commencement of a suit, can the right of the plaintiff to prosecute his suit in that court be taken away by any proceedings in another court?" |
| 8046 | Curtis v. Hollenbeck, 92 Ill. App. 34, 36 (1900) | 3 | An actual and continued change of possession by mutual consent of the parties amounts to a surrender of a life estate. | An actual and continued change of possession by mutual consent of the parties amounts to a surrender of the life estate. | Can an actual and continued change of possession by mutual consent of the parties amount to a surrender of the life estate? |

| 8059 | Metro. Printing Co. v. O'Neill, 148 A.D. 885, 885, 131 N.Y.S. 1009, 1010 (App. Div. 1911) | 1 | The rule that a doubtful pleading should be construed most strongly against the pleader no longer prevails; but pleadings are to be liberally construed, to the end that the court, upon a trial, may get at the merits of a controversy and do justice to the parties. | Pleadings are to be liberally construed, to the end that the court, upon a trial, may get at the merits of a controversy and do justice to the parties. Formerly it was the rule to construe a doubtful pleading most strongly against the pleader; but this rule no longer prevails. | Should pleadings be liberally construed? |
| 8068 | State v. Matthews, 143 Tenn. 463, 226 S.W. 203, 205 (1920) | 2 | If money or property goes into the possession of an employer before it goes into the possession of his employee, the employee's criminal taking and appropriation of it does not constitute embezzlement, but larceny, "embezzlement" being the fraudulent appropriation of such property as the statute makes the subject of embezzlement under the circumstances in the statute by the person embezzling to the injury of the owner, the money or property must come directly from a third person into the hands of the employee in the course of his employment and being appropriated by him, while trespass, which is impossible where a servant takes his master's property from a third person, is essential to constitute the offense of larceny. | If the money or property goes into the possession of the employer before it goes into the possession of the employee, his taking and appropriating it does not constitute embezzlement, but larceny. Embezzlement is the fraudulent appropriation of such property as the statute makes the subject of embezzlement, under the circumstances in the statute, by the person embezzling, to the injury of the owner. To constitute embezzlement the money or property must come directly from a third person into the hands of the employee, in the course of his employment, and be appropriated by him. A larceny cannot be perpetrated when the servant, in the course of his duty, takes his master's property from a third person, though he means to appropriate it to his own use, and does so, for he commits no trespass. | Must embezzled property be entrusted to the accused directly by the master? |
| 8070 | Chorpenning v. United States, 11 Ct. Cl. 625, 628 (Ct. Cl. 1875) | 3 | To clothe a person with the authority of an arbitrator, the parties must mutually agree to be bound by his decision of the matter in controversy. An arbitrament which concludes only one of the parties would be an anomaly in the law. | And in order to clothe a person with the authority of an arbitrator, the parties must mutually agree to be bound by the decision of the person chosen to determine the matter in controversy. An arbitrament and award which concludes one party only is certainly an anomaly in the law. | Does a person get authority of an arbitrator without mutual agreement between the parties? |
| 8123 | Mercer v. State, 92 So. 535, 537, 83 Fla. 555, 561 (Fla. 1922) | 3 | An indictment, charging that the defendant did, on a day certain in a county named the state of Florida, have sexual intercourse with a certain person named, and that such person was then and there the own daughter of the defendant and he was then and there the own father of the person named, sufficiently charges the offense of incest under the statute. | The indictment sufficiently charges the offense of incest under our statute. It charges that on a day certain the defendant in the county of Hardee and state of Florida 'did have sexual intercourse with Fannie Mercer; that the said Fannie Mercer was then and there the own daughter of said Lewis Mercer, and the said Lewis Mercer was then and there the own father of the said Fannie Mercer.' | "Is a person sufficiently charged with incest when the indictment lists the date, county, and time when he carnally knew a family member?" |
| 8137 | Lundell Mfg. Co. v. Am. Broad. Companies, Inc., 98 F.3d 351, 362 (8th Cir. 1996) | 15 | In determining whether individual should be considered limited public figure for purpose of defamation action, Court of Appeals must focus its attention on nature and extent of individual's participation in particular controversy giving rise to defamation, and by so doing, determine whether individual has voluntarily and purposefully injected himself into that controversy in attempt to influence resolution of controversy. | In determining whether an individual should be considered a limited public figure, we must focus our attention on the "nature and extent of an individual's participation in the particular controversy giving rise to the defamation." Gertz, 418 U.S. at 352, 94 S.Ct. at 3013. By so doing, we then can determine whether the individual has voluntarily and purposefully injected himself into that controversy in an attempt to influence the resolution of the controversy. | How can an individual be determined to be a public figure? |
| 8141 | State v. Vickens, 186 Mo. 103, 84 S.W. 908, 909 (1905) | 6 | Laws 1901, pp. 197, 198, directing the Governor to appoint a state factory inspector, who is authorized to appoint assistants, who are required to make two inspections in each year of all factories in the state, and to collect an inspection fee of $1, to be paid into the state treasury, is a valid exercise of the police power. | By said act it is provided that the Governor shall appoint a state factory inspector, who is authorized to appoint from time to time seven assistants, and to divide the state into districts, and assign one inspector to each district; and each inspector is required to make two inspections each year of all factories, and for each inspection such inspector is required to collect $1 as an inspection fee, and all such fees are required to be paid into the state treasury. | Are inspection fees required to be paid into the state treasury? |
| 8152 | Kramer v. Mid-City Tr. & Sav. Bank, 225 Ill. App. 575, 578–79 (Ill. App. Ct. 1922) | 3 | Where the drawer and drawee are the same person, the holder may treat the instrument either as a bill of exchange or as a promissory note, under statute. S.H.A. ch. 98, S 151. | Where the drawer and drawee are the same person, then under section 129 of the Negotiable Instruments Act [Cahill's Ill. St. ch. 98, 151] the holder may treat the instrument either as bill of exchange or a promissory *579 note. | Does the holder have an option to treat the instrument as bill of exchange or promissory note when the drawer and drawee are the same persons? |

| | | | | | |
|---|---|---|---|---|---|
| 8168 | Hocking Valley Ry. Co. v. Cluster Coal & Feed Co., 97 Ohio St. 140, 119 N.E. 207 (1918) | 1 | Gen.Code, S 580, as amended by 101 Ohio Laws, p. 173, authorizing clerk of common pleas to enter findings of public utilities commission as judgment, does not confer judicial power on him in violation of Const. art. 4, S 1. | Syllabus by the Court Section 580, General Code (101 O. L., 173), authorizing the clerk of the court of common pleas to enter up the findings of the Public Utilities Commission as a judgment, does not confer judicial power upon that officer. | Can the Public Utilities Commission authorize the clerk of the court of common pleas to enter such finding of the Commission as a judgment? |
| 8204 | City of Washington v. Pub. Serv. Comm'n, 190 Ind. 105, 129 N.E. 401, 402 (1921) | 2 | Rev.St.1881, § 3106, cl. 26, and sections 3161 (superseded) § 3851 et seq. (repealed 1929), giving city the right to authorize a corporation to construct waterworks and to supply the city with water, did not empower city to make a binding contract with the corporation, fixing the rates to be charged during a term of years. | So that this case is not controlled by those decisions by which it has been held that the state was bound by the contract of a municipal corporation, where it had expressly authorized the municipality to make a contract which fixed rates to be charged for a public service during a term of years; but it is controlled so far as the question of rate-making is concerned, by the many cases which have held that a mere grant of power to consent that a public utility company shall use the city streets does not include power to make a contract that such company shall be exempt from further regulation of its charges, or any of them. | Does a contract with a public utility company for fixing and regulation of rates include the power to exempt itself from further regulation of its charges? |
| 8205 | Sabre v. Rutland R. Co., 85 A. 693, 699 (Vt. 1913) | 1 | Under Laws 1906, No. 126, and Laws 1908, No. 116, the Board of Railroad Commissioners, known as the Public Service Commission, is an administrative body clothed with some quasi judicial functions, and also having auxiliary or subordinate legislative powers. | We consider that under the law of 1906 the Railroad Commission, now legally known as the Public Service Commission, by virtue of the act of 1908 (Laws 1908, No. 116), is an administrative body clothed in some respects with functions of a judicial nature, quasi judicial functions they may be called, authorized in the exercise of the police power to make rules and regulations required by the public safety and convenience, and to determine facts upon which existing laws shall operate. | Is the Public Service Commission (PSC) an administrative body exercising quasi-judicial functions? |
| 8259 | James v. Adams, 16 W.Va. 245, 245-46, 1880 WL 4003, at *1 (W.Va. 1880) | 4 | An action for damages for failure to accept and pay for property agreed to be purchased by a special contract may be brought when defendant refuses to accept the goods and repudiates the contract, before the time has elapsed in which, under the special contract, he was to pay the balance due thereunder. | In an action on a special contract to recover damages for failure to accept and pay for property agreed to be purchased by a special contract, the entire consideration and the entire act to be done in virtue of such consideration must be charged in the declaration substantially; and if the plaintiff's proof is of a contract which materially differs from that stated in the declaration, after the plaintiff's evidence has been all submitted, the court on the defendant's motion should exclude it from the consideration of the jury, if there be a manifest variance substantially between the contract proven and the contract stated in the declaration, when the evidence is viewed in a manner most favorable to the plaintiff, as on a demurrer to evidence by the defendant...Such an action may be brought, when the defendant refuses to accept the goods and repudiates the contract, before the time has elapsed, which under the special contract he was allowed to pay the balance due under said contract. | Can an action for damages for failure to accept and pay for property agreed to be purchased by a special contract be brought when defendant refuses to accept the goods and repudiates the contract? |
| 8273 | Belden v. Sherburne, 27 La. Ann. 305, 306 (1875) | 2 | Where a statute authorizes an action, and prescribes the delay within which it must be instituted, suit must be filed within that delay, or the action, if excepted to, will be dismissed. | Where a statute authorizes an action and prescribes the delay within which it must be instituted, suit must be filed within this delay or the action, if excepted to, will be dismissed. | "Where a statute authorizes an action, and prescribes the delay within which it must be instituted, must the suit be filed within that delay?" |
| 8335 | Butler v. Nat'l Live Stock Ins. Co., 200 Ill. App. 280, 283-84 (Ill.App. 2 Dist. 1916) | 2 | A nominal plaintiff cannot arrest or discontinue a suit except on failure of beneficial plaintiff to secure him against liability for costs. | The nominal plaintiff cannot arrest or discontinue the suit *284 except on a failure of the beneficial plaintiff to secure him against liability for costs. | Can a nominal plaintiff arrest or discontinue a suit except on failure of beneficial plaintiff to secure him against liability for costs? |

| ID | Case | No. | | | |
|---|---|---|---|---|---|
| 8344 | People ex rel. v. W. Mfrs.' Mut. Ins. Co., 40 Ill. App. 428, 429 (Ill. App. Ct. 1891) | 2 | Generally exposition statutes are to be construed in reference to the principles of the common law, since it is not to be presumed that the legislature intended to make any innovation on the common law further than the case absolutely required. | As a rule exposition statutes are to be construed in reference to the principles of the common law, for it is not to be presumed that the Legislature intended to make any innovation upon the common law further than the case absolutely required." | Are exposition statutes to be construed in reference to the principles of the common law? |
| 8410 | Philadelphia Ass'n for relief of Disabled Firemen v. Wood, 39 Pa. 73, 82 (1861) | 2 | Tax legislation means the making of laws that are to furnish the measure of every man's duty in support of the public burdens and the means of enforcing it. | It is the legislative power that is vested in the legislature, and of course this includes tax legislation; and this means the making of laws that are to furnish the measure of every man's duty in support of the public burdens, and the means of enforcing it. | "Does a 'tax law'"" define the measure of every man's duty in support of public burdens?" |
| 8413 | Davis v. Christy, 8 Mo. 569, 571 (Mo. 1844) | 2 | The holder of a note, whether negotiable or not, may strike out blank indorsements, but not indorsements in full, which confer a legal title to the instrument. | Nothing is better settled than that the holder of a promissory note, whether it be negotiable or not, may strike out blank indorsements; such, however, does not seem to be the law with regard to indorsements in full, which confer a legal title to the instrument. | Can a holder of a note strike out indorsements in full which confer a legal title to the instrument? |
| 8443 | Canada Southern R. Co. v. Gebhard, 109 U.S. 527, 536, 3 S. Ct. 363 (1883) | 6 | While the laws of a country have no extra-territorial force, things done in one country under authority of law may be of binding effect in another country. | That the laws of a country have no extraterritorial force is an axiom of international jurisprudence, but things done in one country under the authority of law may be of binding effect in another country. | "While the laws of a country have no extra-territorial force, can things done in one country or acts of a foreign government under the authority of law be of binding effect in another country?" |
| 8446 | First Nat. Bank v. Edwards, 81 S.W. 541, , 542 (Tex.Civ.App. 1904) | 1 | The rule that, when interrogatories are crossed, either party may use the deposition, and defendant cannot object to answers to his questions, does not apply to incompetent evidence. | Besides, it was drawn out by defendant on cross-interrogatory, and the answer was responsive to the question. When interrogatories are crossed, either party may use the depositions on the trial, and the defendant cannot object to answers to his questions, though detrimental to his interest. This rule, we think, does not apply to incompetent evidence, and therefore hold that the action of the court in excluding other testimony complained of was correct. | "When interrogatories are crossed, may either party use the deposition, and defendant cannot object to answers to his questions?" |
| 8448 | Harris v. Powell, 56 Mo. App. 24, 25 (1894) | 5 | An application for a continuance, which failed to show any reason for not taking the deposition of an absent witness, was properly overruled. | On the trial in the circuit court there was an application for continuance on account of an absent witness. It, however, failed to show any reason for not taking the deposition of such witness, and was therefore properly overruled. | "Is an application for a continuance, which failed to show any reason for not taking the deposition of an absent witness, properly overruled?" |
| 8450 | Hamilton v. Dismukes, 115 S.W. 1181, 1182, 53 Tex.Civ.App. 129, 132 (Tex.Civ.App. 1909) | 2 | A motion for a continuance because of an absent witness is fatally defective, where there is no affirmative allegation specially required by Sayles' Ann.Civ.St. 1897, art. 1278, Vernon's Ann.Civ.St. art. 2168, that the testimony sought is in fact material. | Besides, said motion was fatally defective because there was no affirmative allegation therein that the testimony sought was in fact material. | Is a motion for a continuance fatally defective because of no affirmative allegation that the testimony sought was material? |
| 8451 | Whaley v. Cooper, 82 Ga. 72, 8 S.E. 870, 871 (1889) | 1 | A party aggrieved by the denial of a continuance at the term at which verdict is rendered should file a bill of exceptions at that term, instead of moving at the next term to set aside the verdict, and such motion is addressed to the discretion of the court. | There was no error in overruling the motion to set aside the judgment in this case. It was a matter within the discretion of the court, and we do not think the court in this case abused that discretion. If the plaintiff in error had a good ground of continuance at the term at which the verdict was rendered against him on the notes, and the court refused to continue, he should have filed his bill of exceptions at that term, and should not have waited until the next term of court, and then moved to set aside the verdict. | Should a party aggrieved by the denial of a continuance at the term at which verdict is rendered file a bill of exceptions at that term? |

| 8460 | Gardner, Sager & Co. v. O'Connell, 7 La. Ann. 453, 453 (1852) | 1 | The absence of counsel is not a ground of continuance, where a party has been assisted by other counsel, and had no evidence which would have produced a different result if his counsel had been present. | Under the circumstances presented, the absence of defendants' counsel, when the cause was called for trial, was not a sufficient ground for its continuance. The defendant was assisted by counsel, and he had no evidence which should have produced a different result if his counsel had been present. | "Is the absence of counsel not a ground of continuance, where a party has been assisted by other counsel and had no evidence which would have produced a different result if his counsel had been present?" |
| 8464 | Gulf, C. & S.F. Ry. Co. v. Flake, 1882 WL 9032, at *1 (Tex.Ct.App. 1882) | 1 | In an application for continuance on the ground of absent witnesses, the date of the subpoena issued for him should be shown, so as to enable the appellate court to determine the correctness of the ruling, which depends on whether due diligence was shown in attempting to procure his attendance. | In determining the correctness of the ruling of the trial court upon an application for a continuance otherwise apparently good upon its face, the question of diligence, where the subpœna has not been executed, would depend very much upon the time when defendant was cited, with reference to the date of the issuance of his subpœna for the absent witness; and the date of the service of citation should be shown in order to enable this court to determine this question satisfactorily. | "In an application for continuance on the ground of absent witnesses, should the date of the subpoena issued for him be shown?" |
| 8469 | Boeck v. Smith, 85 A.D. 575, 576, 83 N.Y.S. 428, 429 (App. Div. 1903) | 1 | Under Code Civ.Proc. § 805, authorizing discovery of books and papers, and providing that to entitle a party to procure such a discovery or inspection he must present a petition praying therefor, etc., a proceeding for the inspection of books and papers cannot be joined with a motion for an order for the examination of a party before trial. | The proceeding for the inspection of books and papers is required to be commenced by petition (Code Civ. Proc. § 805), and it cannot be joined with an order for the examination of a party before trial. | Can a proceeding for the inspection of books and papers be commenced by petition and joined with an order for the examination of a party before trial? |
| 8471 | Blum v. Rosenbaum, 87 Misc. 292, 293, 149 N.Y.S. 960, 961 (App. Term 1914) | 1 | The right of examination of an adverse party before trial should not be denied, if made in good faith to obtain testimony, and in compliance with the Code requirements. | In my opinion in that case I attempted to review the earlier decisions of the various appellate courts, and there stated: 'A review of these decisions, however, discloses that the courts still regard the right of examination of an adverse party before trial as a substantial right, which should not be denied if it is made in good faith and for the purpose of obtaining testimony, though it should be denied if the order is sought for some ulterior purpose.' It would therefore appear that, where a party has complied with all the requirements of the Code in moving for such an order, the order should not be vacated if the court can reasonably hold that the application was made in good faith. | "Should the right of examination of an adverse party before trial be denied, if made in good faith to obtain testimony?" |
| 8473 | Schaeffer v. Marienthal, 17 Ohio St. 183, 188–89 (1867) | 3 | Where cause is remanded for further proceedings under the code, a proceeding in error may be allowed at any time after rendition of judgment of reversal, and alleged inconvenience arising from that practice can be obviated by a continuance of the case below until the proceeding in error is terminated. | But where a cause is remanded for further proceedings under the code, the practice, so far as we know has always been to allow a proceeding in error at any time after the rendition of the judgment of reversal, and without regard to the further proceedings below. See 4 Ohio St. 483, 586, 354, and 3 ib. 445. *189 The alleged inconvenience arising from this practice can be obviated by a continuance of the case below until the proceeding in error is terminated, and then dismissing it or proceeding in it, according to the final result in the reviewing court. | "Where cause is remanded for further proceedings under the code, may a proceeding in error be allowed at any time after rendition of judgment of reversal?" |
| 8501 | Bishop v. Hilliard, 227 Ill. 382, 387, 81 N.E. 403, 405 (1907) | 5 | It is not necessary that certificates of the official character of the officer before whom depositions are taken accompany the depositions, but they may be produced in court at hearing and the notary's official character there be established. | The defendant offered in evidence before the master certain depositions, to which complainant objected upon the ground that they were not accompanied by commissions to or certificates of the official character of the officer before whom they were taken, as required by statute. We have held that, where the certificate does not accompany the deposition, it may be produced in court at the hearing and the official character of the notary then and there established, and that the true construction of the statute only requires that the official character of the officer taking the deposition should be established before it is read in evidence. | Is it not necessary that certificates of the official character of the officer before whom depositions are taken accompany the depositions? |
| 8504 | People ex rel. Vance v. Ross, 113 N.E. 957, 957 (Ill. 1916) | 1 | The power to levy a hard road tax is not inherent in the voters of a township, but is granted by act of the Legislature, and must be strictly construed. | The right to levy a hard road tax is not inherent in the voters of a township. The power and authority to levy such a tax is granted by act of the Legislature, and this power must be strictly construed. | Is the power to levy a road tax of a township granted by act of the Legislature? |

| | | | | | |
|---|---|---|---|---|---|
| 8510 | Anna McNally, Inc., v. Chapin, 197 A.D. 792, 796, 189 N.Y.S. 441, 443 (App. Div. 1921) | 2 | Under Code Civ.Proc. § 901, subd. 2, failure of witness to read or subscribe his deposition after it has been reduced to writing necessitates its rejection on objection made. | Subdivision 2 of section 901 of the Code of Civil Procedure provides, with reference to depositions taken outside of the state, that a person to whom a commission is directed 'must reduce the examination of each witness to writing, or cause it to be reduced to writing, by a disinterested person. After it has been carefully read, to or by the witness, it must be subscribed by the witness.' Concededly there was no compliance with the statute.<br><br>It has repeatedly been held in this state that the failure of a witness to read or subscribe his deposition after it has been reduced to writing necessitates its rejection upon objection made. | Does the failure of a witness to read or subscribe his deposition after it has been reduced to writing necessitate its rejection on an objection made? |
| 8511 | Bird v. Halsy, 87 F. 671, 674 (C.C.Va. 1898) | 4 | No formal certificate is necessary to be attached to exhibits in order to make them parts of the deposition in which reference is made to them. If the indorsements of the examining commissioner on the exhibits and depositions be made by the same person, and the exhibits are so described and marked by the commissioner that their identity is unmistakably established, this is sufficient. | The court knows of no formal certificate necessary to be attached to an exhibit in order to make it a part of the deposition in which reference is made to it. These exhibits are so described in the depositions, and are so marked by the commissioner as such exhibits that the description and marks unmistakably establish their identity. And this is sufficient. | Is no formal certificate necessary to be attached to exhibits in order to make them parts of the deposition in which reference is made to them? |
| 8521 | Myers v. Lape, 101 Ill.App. 182, 184, 1902 WL 4062, at *1 (Ill.App. 3 Dist. 1901) | 3 | The law does not prescribe the size or color of a horse to entitle the owner to the use of the public roads and the mere fact that a horse is small or of unusual color does not preclude the owner from using it on the highway, even though some other horse may become frightened at it. | The law places no prescription as to the size or color of a man's horse to entitle him to the use of the public roads. Of course, if a horse is vicious or mischievous, so as to make it dangerous to ride or drive him among other horses, the duty of keeping him under control rests upon the owner and he takes him upon the high way at his peril. But the mere fact that the horse is small, or of unusual color, does not preclude him from using it on the highway, even though some other horse may become frightened at it. | Does the horse being small or of unusual color preclude the owner from using it on the highway? |
| 8529 | Blakeslee v. Rossman, 44 Wis. 550, 553, 1878 WL 3257, at *2 (Wis. 1878) | 5 | A certificate to a deposition taken in another state stating that the witness was sworn by the officer to testify to the truth, the whole truth, and nothing but the truth, is sufficient under Act 1872, c. 68. | The notary did annex to the deposition his certificate, stating, among other things, "that, previous to the commencement of the examination of the said George C. Farnham as a witness in the said action, he was duly sworn by me as such notary, to testify the truth, the whole truth, and nothing but the truth, relative to the said cause." We think this certificate contains all that was essential relative to the oath. Besides, it appears from the certificate that both parties appeared before the notary, and took part in the examination of the witness. Under these circumstances, we think there was no error in admitting the deposition in evidence. | "Is a certificate to a deposition taken in another state stating that the witness was sworn by the officer to testify to the truth, the whole truth, and nothing but the truth, admissible?" |
| 8530 | Gay v. Kendig, 2 Rob. (LA) 472, 474, 1842 WL 1744, at *1 (La. 1842) | 3 | To obtain a third continuance on the ground of the absence of the same witness, the materiality of the testimony must be shown, and such extraordinary diligence as to satisfy the court that it was absolutely impossible to procure the evidence. | The case had been continued twice on the same showing, and we think that to be entitled to a third continuance on the same ground, the defendant should have shown, that he had used, every time, such diligence as to satisfy the court that it was absolutely impossible to procure the evidence, and that there was really a prospect of obtaining the testimony. On the third application, he should have shown extraordinary diligence, as well as the real importance and materiality of the testimony. Not having done so, we are satisfied that the continuance was properly refused. | "Will a third continuance be entitled when the defendant shows that he had used, every time, such diligence as to satisfy the court that it was absolutely impossible to procure the evidence?" |
| 8550 | Wolfe v. Underwood, 12 So. 234, 234, 97 Ala. 375, 376 (Ala. 1893) | 7 | Where the certificate of the commissioner is defective in not setting out the particular way in which a deposition was taken, it may, by leave of court, be amended in open court by the commissioner. | The depositions of the petitioners' witnesses, as first taken, were suppressed, and leave granted to retake them. They were retaken, and, at the hearing, it was discovered that the certificate of the depositions was defective, in not setting out the particular way in which the depositions were taken. On motion of the petitioners, the commissioner was allowed, upon showing made by him by affidavit in open court, to amend the certificate so as to make it speak the truth. | "Where the certificate of the commissioner is defective in not setting out the particular way in which a deposition was taken, can it be amended in an open court by the commissioner?" |

| | | | | | |
|---|---|---|---|---|---|
| 8551 | Nussear v. Arnold, 13 Serg. & Rawle 323, 323, 1825 WL 2019, at *1 (Pa. 1825) | 2 | It is a sufficient execution if the commissioners annex their names to the depositions and the envelope be sealed and it is enough that the name of the county where it is executed appears on the margin. | It is a sufficient execution of a commission to take depositions, if the commissioners annex their names to the depositions, and the envelope is sealed. It is sufficient if the name of the county appear in the margin of the deposition, to be one of those to which the commissioner was directed, if it be an ex parte commission. | Is it a sufficient execution if the commissioners annex their names to the depositions and the envelope be sealed and that the name of the county where it is executed appears on the margin? |
| 8578 | Glantz v. Chicago, B. & Q.R. Co., 90 Neb. 606 (Neb. 1912) | 6 | Evidence that a certain course is "generally" and "usually" pursued in a particular manner is sufficient to establish a custom and it is not necessary to show that the particular manner is never deviated from. | Evidence that a certain course is "generally" and "usually" pursued in a particular manner is sufficient to establish a custom. It is not essential to show that the "particular manner" is never deviated from. | May evidence that a certain course is generally and usually pursued in a particular manner be sufficient to establish a custom? |
| 8580 | John Slaughter Co. v. King Lumber Co., 60 S.E. 705, 705 (S.C. 1908) | 1 | Where a notary taking a deposition certified that the witnesses were examined before him at his office, and that the testimony of each witness was read over to him before the deposition was subscribed by the witness, the certificate showed a substantial compliance with 23 St. at Large, p. 1072. | Since the testimony was taken before the officer and read over to the witnesses before they signed it, the provisions of the statute were substantially carried out. If the officer's certificate means that he took the testimony in typewriting himself, the case falls within the ruling above. If the certificate means that a stenographer took down the testimony in shorthand and transcribed into typewriting and the same was read over to the witness before signing, the case falls squarely within the letter of the proviso. If the certificate means that some one took the testimony before the officer upon a typewriter directly from the witness and the testimony was read over to the witness before signing, the case falls, if not within the letter of the statute, certainly within its purpose and meaning and is substantial compliance. | "Does a statement in the commissioner's certificate that the witnesses ""testified as set down"" show a substantial compliance with the statutory requisition?" |
| 8581 | Emmett v. Briggs, 21 N.J.L. 53, 53, 1847 WL 2997, at *1 (N.J. 1847) | 1 | A deposition must be filed with the clerk of the court before it, or a copy, can be read on the trial, except, under Rev.St. p. 962, S 11, it was not taken more than five days before the trial of the cause. | Such deposition must be filed with the Clerk of the Supreme Court before the same, or a copy thereof can be read on the trial (except now by Rev. Stat. 962, § 11, when not taken more than five days before the trial of the cause.) | "Must a deposition be filed with the clerk of the court before it, or a copy, can be read on the trial?" |
| 8603 | Walbridge v. Kibbee, 20 Vt. 543, 545 (1848) | 1 | An initial letter is not to be regarded as any part of a man's name, in the caption of a deposition, if one name be given in full. | The objection, that the deposition, in the caption and certificate, describes the plaintiff as Henry F. Walbridge, has been too often overruled, to be now brought in doubt. An initial letter is not to be regarded as any part of a man's name,--and especially, when one name is given in full. | "Is an initial letter not to be regarded as any part of a man name, in the caption of a deposition, if one name be given in full?" |
| 8628 | Atlas Powder Co. v. Goodloe, 175 S.W. 547, 551 (Tenn. 1915) | 3 | The power of Congress over interstate commerce is supreme, and the levying of taxes by a state which impedes or burdens such commerce is invalid. | The power of Congress over interstate commerce is supreme under the federal Constitution. It is well settled that the levying of taxes by a state which will impede, interfere, or burden such commerce between the states, is invalid. | Is the power of Congress over interstate commerce supreme and the levying of taxes by a state which impedes or burdens such commerce invalid? |
| 8641 | Heard v. McCabe, 196 S.W. 917, 918 (Ark. 1917) | 1 | Although bad motive is not alone sufficient to justify a dismissal, if cause is without merit, and was brought solely to harass and annoy defendant, it may be dismissed. | The fact that an action is brought through bad motive or for vexatious purposes is not sufficient to justify a dismissal, but where, in addition to that, it is shown that the cause is without merit and is brought solely for the purpose of harassing and annoying the person sued, then it may be dismissed by the court, for such conduct constitutes an abuse of the privilege of having adjudication of asserted rights. | "Will a cause be dismissed if it is without merit, and was brought solely to harass and annoy defendant?" |
| 8664 | Carlisle v. United States, 83 U.S. 147, 154 (1872) | 4 | A citizen or subject owes an absolute and permanent allegiance to his government or sovereign, or at least until, by some open and distinct act, he renounces it and becomes a citizen or subject of another government or another sovereign. | The citizen or subject owes an absolute and permanent allegiance to his government or sovereign, or at least until, by some open and distinct act, he renounces it and becomes a citizen or subject of another government or another sovereign. | Does a citizen owe an absolute and permanent allegiance to his government or his sovereign? |

| | | | | | |
|---|---|---|---|---|---|
| 8697 | Mechanics' Bank of Alexandria v. Bank of Columbia, 18 U.S. 326, 337, 1820 WL 2128, at *7 (U.S.,1820) | 1 | The liability of the principal depends on whether the act of his agent was done in the exercise and within the limits of the powers delegated. The profession on their face that an agent's acts were in the exercise of his agency does not give them their validity. | But in the diversified exercise of the duties of a general agent, the liability of the principal depends upon the facts, 1. That the act was done in the exercise, and, 2. Within the limits of the powers delegated. | Does the liability of the principal depend on whether the act of the agent was done within the limits of the powers delegated? |
| 8712 | Davis v. Wayne Cnty. Court, 38 W.Va. 104 (W.Va. 1893) | 1 | A county court cannot bind the levies of future years to pay for improvements on roads and bridges without first submitting all questions in relation thereto to a vote of the people, as required by Const. art. 10, § 8; and a contractor is charged with notice of the limitation of the county court's powers, and, if he works under an unauthorized contract of payment out of levies of future years, he cannot recover in an action of assumpsit, or compel the court by mandamus to lay a levy for payment thereof, even though the court has issued certificates, orders, or evidences of debt. | A county court cannot bind the levies of future years under sections 25, 26, c. 194, Acts 1872–73, to pay for improvements made on roads and bridges, without first submitting all questions in relation thereto to a vote of the people, as required by section 8, art. 10, of the constitution. | Can county authorities bind the levies of future years to pay for improvements? |
| 8713 | Norfolk & W. Ry. Co. v. Gee, 52 S.E. 572, 573, 104 Va. 806, 810 (Va. 1906) | 1 | In an action against a railroad company for negligently frightening plaintiff's horse at a public crossing, it is not sufficient to charge that the defendant negligently placed a hand-car with long projecting arms at or so near the crossing as to render it unsafe for the travelling public in vehicles drawn by horses to cross on the highway, and that, in consequence thereof, the plaintiff's horse took fright and caused the injury declared on in the declaration. Nor is a count good which makes similar charges and adds that defendant's servants, negligently hung wearing apparel and bright tin buckets on the arms of the hand-car, and that these objects caused the plaintiff's horse to take fright. In each instance it was necessary to aver that the hand-car was, under the circumstances stated, an object of such unusual or extraordinary appearance as to have a natural tendency to frighten horses of ordinary gentleness and training, although that was a question to be determined by the jury from all the circumstances of the case, under proper instructions from the court. | While the question of whether or not the object is of that character is largely for the determination of the jury, from its nature, situation, and other like circumstances, under proper instructions of the court (Elliott on Roads, 616; Piollet v. Simmers, supra), a count is demurrable which fails to show that the object which it is averred frightened the horseb was by its nature calculated to frighten horses of ordinary gentleness. North Alabama Ry. Co. v. Sides (Ala.) 26 South. 116; Keeley Brewing Co. v. Parnin (Ind. App.) 41 N. E. 471, 472. The third count is substantially the same as the second, except that it makes the additional averment that the servants and agents of the defendant negligently hung wearing apparel and bright tin buckets on the arms of the hand car, and that these objects caused the horse to take fright. If that count had averred, in addition, that the hand car, with these objects upon it, was so unusual or extraordinary in appearance as to have a natural tendency to frighten horses of ordinary gentleness and training, it would, we think, have stated a good cause of action. The negligence relied on in the fifth count is based on the failure of the defendant to keep its right of way at the crossing "sufficiently smooth and level to admit of safe and speedy travel over such crossing," as required by section 1096, Code 1887 | "Can liability be subjective if one uses apparatus of an unusual, and extraordinary character in a highway, and if it frightens the horse?" |
| 8731 | REY ET AL. v. SIMPSON, 63 U.S. 341, 350 (1859) | 3 | When a note payable to a particular person or order is first endorsed by a third person, such third person is held to be an original promissor, guarantor or endorser according to the nature of the transaction and the understanding of the parties at the time the transaction took place. | When a promissory note, made payable to a particular person or order, as in this case, is first endorsed by a third person, such third person is held to be an original promissor, guarantor, or endorser, according to the nature of the transaction and the understanding of the parties at the time the transaction took place. | Who is an original promissor? |
| 8802 | Osgood's Adm'rs v. Artt, 17 F. 575, 577 (C.C.N.D. Ill. 1883) | 1 | As a general rule the legal title to negotiable paper payable to order passes only by the payee's indorsement on the security itself, or on a piece of paper so attached to the original instrument as, in effect, to become a part of it or incorporated into it. | As a general rule the legal title to negotiable paper, payable to order, passes, according to the law-merchant, only by the payee's indorsement on the security itself. The only established exception to this rule is where the indorsement is made on a piece of paper, so attached to the original instrument as, in effect, to become part thereof, or be incorporated into it. | "Does legal title to negotiable paper, payable to order, passes only by payees indorsement on the security?" |
| 8818 | Livesley v. Lasalette, 28 Wis. 38, 41, 1871 WL 2899, at *2 (Wis. 1871) | 7 | The declarations of an agent, not made at the time of the transaction so as to constitute a part of the res gestae, and not authorized by the principal, are not binding upon the latter; and this rule applies where a husband acts as agent of his wife. | It is well settled that the declarations of the agent, to bind or be admissible against the principal, must be made at the time of the act or transaction by the agent, and constitute a part of the res gestœ; or, if not so made, that they must be authorized by the principal. | Do declarations made by an agent at the time of an act constitute a part of the res gestœ to bind the principal? |

| | | | | | |
|---|---|---|---|---|---|
| 8839 | Barclay v. Howell's Lessee, 31 U.S. 498, 499, 1832 WL 3410, at *3 (U.S.,1832) | 12 | By the common law, the fee in the soil over which a public road passes remains in the original owner. If the road is vacated by the public, he resumes the exclusive possession. While it is used as a highway, the timber and grass upon its surface, and the minerals below it, are his; and he may maintain trespass against any one obstructing such road. | By the common law, the fee in the soil remains in the original owner, where a public road is made upon it, but the use of the road is in the public. The owner parts with this use only; for if the road should be vacated by the public, he resumes the exclusive possession of the ground; and while it is used as a high-way, he is entitled to the timber and grass which may grow upon the surface, and to all minerals which may be found below it. He may bring an action of trespass against any one who obstructs the road. | "Does the fee in the soil where a public road is made upon it, but the use of the road is in the public, remain in the original owner under the common law?" |
| 8861 | Evans v. Anderson, 78 Ill. 558, 559-560 (Ill. 1875) | 1 | The existing laws of the state at the time of making a note therein form a portion of the contract, and the liability of the maker must be determined under them. | The existing laws of a State at the time of making a note, form a portion of the contract, and the liability of the maker must be determined under *560 them. | Do the existing laws of a State at the time of making a note form a portion of the contract? |
| 8875 | Cunningham v. Ferguson, 81 N.H. 380, 127 A. 436, 383 (N.H. 1924) | 2 | Law of particular place where a note is made governs its construction, but a note made and dated in a particular place will be deemed to be a note of that place and governed by law of that country, whether it is expressly made payable there or is payable generally without naming any particular place. | "If a note is made payable at a particular place, the law of the place where it is thus made payable will govern its construction; but a note made and dated in a particular place will be deemed to be a note of that place and governed by the law of that country, whether it is expressly made payable there or is payable generally without naming any particular place. | Which law will govern when a note is payable at a particular place? |
| 8951 | Keesee v. Board of Education, 46 Tenn. 127, 131 (1868) | 4 | The implication is irresistible that the expression of the authority to delegate the power of taxation to the counties and towns, is an absolute exclusion of authority to delegate the power to any agency. | The Convention did not mean to go farther. The implication is irresistible, that the expression of the authority to delegate the power to the counties and towns, is an absolute exclusion of authority to delegate the power to any other agency. | Is expression of the authority to delegate the power of taxation to the counties and towns imply an absolute exclusion of authority to delegate the power to any other agency? |
| 9045 | Heckers v. Fowler, 69 U.S. 123, 128-29 (1864) | 2 | A trial by arbitrators, appointed by the court, with the consent of both parties, is one of the methods of prosecuting a suit to judgment, as well established and as fully warranted by law as a trial by jury. | Swan, 3 that a trial by arbitrators, appointed by the court, with the consent of both parties, was one of the modes of prosecuting a suit to judgment as well established and as fully warranted *129 by law as a trial by jury, and, in the judgment of this court, there can be no doubt of the correctness of that proposition. | Is trial by arbitrators a mode of prosecuting a suit to judgment? |
| 9054 | U.S. v. Bank of Montreal, 21 F. 236, 238 (C.C.Ill. 1884) | 1 | A bank in Canada, which has established a branch in Chicago, must be held to carry on a banking business, within the provisions of Rev.St.U.S. S 3407, 12 U.S.C.A. S 561, defining a bank, and of section 3408, imposing a tax on capital employed; it having a place of business where credits were opened by the deposit of money, subject to be paid or remitted upon draft, check, or order, and where bills of exchange were issued and sold. | Certainly, the business carried on by the defendant here must be held to be a banking business within this definition. It had a 'place of business' where credits were opened by the deposit of money, subject to be paid or remitted upon draft, check, or order, and where bills of exchange were issued and sold. | What are the substantive activities that occur at the place of business of a banker? |
| 9146 | Sailors v. Nixon-Jones Printing Co., 20 Ill. App. 509, 514 (Ill. App. Ct. 1887) | 3 | Mere community of interest in property will not make the owners partners, in the absence of mutual agreement for joint venture and sharing of profits and losses. | A mere community of interest in property will not make the owners partners. There must be an agreement for a joint venture and to share profits and losses; and in the absence of such a mutual agreement they are mere tenants in common of the property and the act of one will not bind the other. | Does a community of interest in property make the owners partners? |
| 9194 | Russian Reinsurance Co. v. Stoddard, 211 A.D. 132, 140, 207 N.Y.S. 574, 582 (App. Div.), rev'd, 240 N.Y. 149, 147 N.E. 703 (1925) | 8 | As a general rule, acts or decrees to be ranked as governmental must proceed from some authority recognized as a government de facto. | Clearly enough, the general rule to be followed is that 'acts or decrees, to be ranked as governmental, must proceed from some authority recognized as a government de facto.' | "Do acts or decrees, to be ranked as governmental, proceed from some authority recognized as a government de facto?" |

| | | | | | |
|---|---|---|---|---|---|
| 9253 | Aram v. Schallenberger, 41 Cal. 449, 450 (1871), overruled by Cushing-Wetmore Co. v. Gray, 152 Cal. 118, 92 P. 70 (1907) | 2 | Private individual cannot sue to prevent or abate nuisance, caused by obstructing public highway, without showing special damage in addition to that received by public. | The road is alleged to be a public highway, and the action is to prevent an obstruction. No doubt a private individual may sue to prevent or abate a public nuisance; but he must always show some special damage to him in addition to that received by the public. | When can a private party maintain an action to abate a public nuisance caused by obstructing a public highway? |
| 9273 | Sanders v. Boykin, 192 N.C. 262, 134 S.E. 643, 645 (1926) | 6 | Cancellation of mortgage after debt had become merged in judgment held not of itself to destroy right of surety paying same to subrogation. | Applying this rule of law to the case under consideration, we hold that the cancellation of the mortgage after the debt had become merged in a judgment did not of itself destroy the right of subrogation. | Does cancellation of mortgage after debt had become merged in judgment held not of itself to destroy right of surety paying same to subrogation? |
| 9295 | Crossan v. May, 68 Ind. 242, 245 (Ind. 1879) | 2 | In order to place a note upon the footing of bills of exchange, it should show on its face that it is payable at or in a bank; and, unless it does so, averment and proof that the place named for payment is a bank, will not place the paper upon the footing of bills of exchange. | It seems to us, therefore, that, in order to place a note upon the footing of bills of exchange, it should show on its face that it is payable at or in a bank, and that, unless it does so, averment and proof that the place named for payment is a bank will not place the paper upon the footing of bills of exchange. | What is required for a note to be on the footing of bills of exchange? |
| 9309 | Redfield v. United States, 27 Ct. Cl. 473, 479 (1892) | 2 | The claimant himself can not dismiss his own suit until he has discharged his attorney with permission of the court; and when he has wrongfully brought several actions for the same cause, he can not elect which one he will prosecute. | But a suit brought with authority of the plaintiff must stand until tried on the issue raised or until dismissed in legal manner. The plaintiff himself can not dismiss his own suit until he has discharged his attorney with permission of the court, and when he has wrongfully brought several actions for the same cause he cannot elect which one he will prosecute. | Can the claimant himself dismiss his own suit until he has discharged his attorney with permission of the court? |
| 9313 | Frear v. Lewis, 201 A.D. 660, 667, 195 N.Y.S. 3, 7 (App. Div. 1922) | 6 | Though as a general rule the party commencing an action may discontinue as of right, regardless of his reasons therefor, the right to discontinue is not absolute; but it is necessary to obtain the consent and order of the court permitting a discontinuance, and the court can prevent the consummation of a scheme to defraud by means of such discontinuance. | 2 It is, of course, well settled, as urged by counsel for defendants, that as a general rule a party who has commenced an action may discontinue as of right, and that his reasons for such discontinuance are not ordinarily of concern to the court. Andrewes v. Haas, 214 N. Y. 255, 258,108 N. E. 423, 3 A. L. R. 458; Matter of Butler, 101 N. Y. 307, 4 N. E. 518; Valentine v. Valentine, 134 App. Div. 664, 119 N. Y. Supp. 426. The right to discontinue is, however, not absolute. It is necessary to obtain the consent and order of the court permitting the discontinuance, and the court has control over litigations on its calendar sufficient to prevent the consummation of any scheme that, under guise of settlement, will operate to cheat one of its officers out of his compensation for faithful service. | Is the right to discontinue absolute or is it necessary to obtain the consent and order of the court permitting a discontinuance? |
| 9316 | White v. Nance, 16 Ala. 345, 347–48, 1849 WL 458, at *2 (Ala. 1849) | 1 | The plaintiff in an action of ejectment or trespass to try the title may dismiss the suit whenever he thinks proper, and the fact that the beneficial interest in such suit is in another cannot affect his right to do so. | . In ejectment or trespass, to try title to land, we can look alone to the legal title, and no person can control the suit, except the plaintiff, even if another has an equitable interest in it. The plaintiff in this case had the right to control the suit as he saw *348 proper. Neither the counsel, nor those at whose instance he brought the suit, could prevent him from exercising this right. He desired to dismiss the suit, but it has been tried, and the trial has produced no other result than would have been produced had the suit been dismissed. | Can the plaintiff in an action of ejectment or trespass to try the title dismiss the suit whenever he thinks proper? |
| 9374 | Clark v. Sipple, 10 Del. Ch. 51, 54 (Del.Ch. 1912) | 4 | The production of a document in the possession of an adverse party cannot be compelled by a subpoena duces tecum, any more in equity than at law. | The production of a document in the possession of the adverse party cannot be compelled under a subp na duces tecum in equity more than it can at law. | "Can the production of a document in the possession of an adverse party be compelled by a subpoena duces tecum, any more in equity than at law?" |
| 9390 | Jackson v. Lancaster, 213 Ala. 97, 104 So. 19 (Ala. 1925) | 1 | Indorsement of note by one other than payee or holder, whether before or after delivery, must be supported by consideration, and, if it is subsequent to delivery, new consideration is necessary, unless made pursuant to prior agreement. | [1] [2] [3] [4] [5] It is generally agreed that the indorsement of a note by one other than the payee or holder, whether before or after delivery, must be supported by a consideration, and that, if the indorsement is made subsequent to delivery, a new consideration is necessary, unless made pursuant to prior agreement. | Should an indorsement be supported by a consideration? |

| | | | | | |
|---|---|---|---|---|---|
| 9428 | Turner v. Loomis, 125 N.W. 662, 664 (Iowa 1910) | 3 | The unexpected illness of counsel, preventing his attending court, furnishes ample ground for postponing the trial, or for a continuance. | That a party or his attorney is unexpectedly prevented from attending court by sickness furnishes ample ground for postponing the trial or for continuance is well settled in Brett v. Farr, 58 Iowa, 442, 10 N. W. 853; Rice v. Melendy, 36 Iowa, 166; Montgomery Co. v. American Emigrant Co., 47 Iowa, 91. | "Does the unexpected illness of counsel, preventing his attending court, furnish ample ground for postponing the trial, or for a continuance?" |
| 9452 | Allen v. Rettig, 177 S.W. 215, 216 (Tex.Civ.App. 1915) | 1 | A motion for a continuance held insufficient where it did not show that either of the absent witnesses would testify to any facts material to the issues. | The motion to continue was not sufficient, in that it did not show the materiality of the testimony of either of the two witnesses. It did not state what Allen wanted to prove by Spender, nor in any way undertake to show that his evidence would be material on any issue. | Is a motion for a continuance held insufficient where it does not show that either of the absent witnesses would testify to any facts material to the issues? |
| 9470 | Wisegarver v. Yinger, 122 S.W. 925, 927–28 (Tex.Civ.App. 1909) | 3 | Under Rev.St.1895, art. 2284, Rules of Civil Procedure, rule 196, requiring the officer before whom depositions are taken to certify on the envelope inclosing the depositions that he in person deposited the same in the mail for transmission, etc., and article 3507, Vernon's Ann.Civ.St. art. 5960, providing that every notary public shall authenticate his official acts with his seal of office, the certificate of a notary on the envelope inclosing depositions must be authenticated by his official seal. | Article 2284 of the statutes as amended (Laws 1907, p. 186, c. 91) states that the officer shall certify on the envelope inclosing depositions that he in person deposited *928 the same in the mail for transmission, stating the date when, and the post office in which, the same is deposited for transmission. It is provided by article 3507 of the Revised Statutes of 1895 that every notary public shall provide a seal of office, and he shall authenticate all his official acts therewith. This last statute should be read in connection with the first. It is true that the first says that the officer shall certify, but it is clear from article 3507 that all of his official acts shall be authenticated by his seal of office. Indorsing the certificate upon the envelope is certainly an official act; it is one required and demanded by the law, and we know of no reason that can be given why the act of making the certificate in a case of this character would not be official. He does not do it as an individual, but it is solely as an official that he performs this service. | Is the officer before whom depositions are taken required to certify on the envelope inclosing the depositions that he in person deposited the same in the mail for transmission? |
| 9472 | Ohio Valley Mills v. Louisville Ry. Co., 168 Ky. 758, 182 S.W. 955, 958 (1916) | 6 | Civ.Code Prac. S 585, does not prevent a party from proving any fact shown in a deposition not filed by any method permitted by law. | But section 585 of the Code only prohibits the reading of a deposition, which was not filed before the commencement of the trial; it does not prevent a party from proving any fact shown in a deposition not filed in time, or not filed at all, by any other method permitted by law. | Does the provision under Civil Code of Practice prevent a party from proving any fact shown in a deposition not filed by any method permitted by law? |
| 9473 | City of Louisville v. Laufer, 131 S.W. 192, 193 (Ky.App. 1910) | 3 | Where a deposition had not been filed before trial, the court properly refused to permit it to be read under Civ.Code Prac. S 585, declaring that no deposition shall be read on the trial unless, before the commencement thereof, it be filed in the case. | It appears that prior to the trial appellant took the deposition of appellee. While appellee was on the stand, appellant offered to introduce the deposition in evidence. The deposition, however, had not been filed with the papers in the case before the trial. In refusing to permit the deposition to be read the trial court simply followed the provisions of section 585 of the Civil Code of Practice, which provides: "No deposition shall be read on a trial, unless, before the commencement thereof, it be filed with the papers of the case." | "Where a deposition has not been filed before trial, can the court properly refuse to permit it to be read?" |
| 9483 | P. Outcalt & Co. v. Burnet & Bros., 12 Ohio Dec.Reprint 207, 208, 1855 WL 3910, at *2 (ZYOH) | 1 | Where general partners of a firm organized under the act permitting limited partnerships abandoned the business and left the state without publishing notice of dissolution, leaving certain memoranda to be delivered to a special partner, showing liabilities of the concern and some assets, and also a date for certain property to be sold by him to liquidate the debts, his acts in selling the same and making the application of the proceeds was not such an interference with the affairs of the firm as to render him individually liable, under Rev.St. S 3154 (See Gen.Code, S 8051), providing that, if a special partner transact any business on account of the partnership, he shall be deemed a general partner. | Section 14 of the act to authorize and regulate limited partnerships, Swan 595, (sec. 3154, Rev. Stat.), provides that "A special partner may, from time to time, examine into the state and progress of the partnership concerns, and may advise as to their management; but he shall not transact any business on account of the partnership, nor be employed for that purpose as agent, or otherwise; if he shall interfere contrary to these provisions, he shall be deemed a general partner." | When is a special partner deemed liable as a general partner? |

| | | | | | |
|---|---|---|---|---|---|
| 9486 | Field v. Tenney, 47 N.H. 513, 522, 1867 WL 2367, at *10 (N.H. 1867) | 8 | A mistake in the initial letter of the middle name of one of the parties to a suit, in the direction of a deposition, is no ground for rejecting the deposition. | The direction of the deposition of Benjamin E. Smith must be regarded as sufficiently certain, notwithstanding the mistake in the initial letter of the defendant's middle name. It is obvious that there could be no uncertainty in respect to the cause intended to be described, and to reject the deposition for this error would be a refinement in technicality that is not countenanced by the course of the court. The notice of the caption was properly annexed, and was referred to in the certificate, although it is not required by the statute that it should be. | "Is a mistake in the initial letter of the middle name of one of the parties to a suit, in the direction of a deposition, no ground for rejecting the deposition?" |
| 9487 | Downs v. Hawley, 112 Mass. 237, 239, 242, 1873 WL 8971, at *2, *5 (Mass. 1873) | 3 | In the absence of any showing of fraud, the fact that the answers were not annexed to the commission nor to the interrogatories is no ground for the rejection of a deposition returned to court in a sealed envelope. | The plaintiff offered in evidence the deposition of one Otto Stamm, which deposition stated that he was a citizen of New York at the time of his conversation with the defendant. The deposition and the commission and interrogatories were returned together in a sealed envelope to the court, but the answers were not annexed to either commission or interrogatories....There was no error in admitting the deposition of Stamm, although it was not annexed to the commission under which it was taken. It was all returned to the clerk's office in the same sealed envelope. It is not suggested that there is any doubt of its identity, or any suspicion of fraud or improper conduct. | "n the absence of any showing of fraud, is the fact that the answers were not annexed to the commission nor to the interrogatories no ground for the rejection of a deposition?" |
| 9490 | Pierce v. Indseth, 1 S.Ct. 418, 422, 106 U.S. 546, 550 (U.S. 1883) | 1 | In general, commercial paper executed in one state, and made payable in another, is governed by the laws of the state in which it is payable. | In giving a bill upon a person in a foreign country, the drawer is deemed to act with reference to the law of that country, and to accept such conditions as it provides with respect to the presentment of the bill for acceptance and payment. | "Is commercial paper executed in one state, and made payable in another, governed by the laws of the state in which it is payable?" |
| 9492 | First Nat. Bank v. Lee Cty. Cotton Oil, 250 S.W. 313, 314-15 (Tex. Civ. App. 1923) | 1 | It was clearly the intention of the Legislature in passing the Uniform Negotiable Instruments Act (Acts 36th Leg. (1919) c. 123 (Vernon's Ann.Civ.St. art. 5932 et seq.)), to cover the whole subject-matter relating to negotiable instruments and to supersede and repeal all laws then existing on the same subject. | It was clearly the intention of the Legislature, in passing the Uniform Negotiable Instruments Act, to cover the whole subject- *315 matter relating to negotiable instruments; and that such act should supersede and repeal all laws then existing on the same subject, for in its caption it provided that the same was "an act to make uniform the law of negotiable instruments *** repealing all laws and parts of laws in conflict herewith." | What was the legislative intent behind the Uniform Negotiable Instruments Act? |
| 9495 | Weil v. Black, 86 S.E. 666, 666–67, 76 W.Va. 685 (W.Va. 1915) | 8 | It is no defense to an indictment for attempted bribery of a public officer that he was not a de jure officer; his official character cannot be thus collaterally assailed; it is sufficient that he was a de facto officer. | It is no defense to an indictment for attempted bribery of a public officer that he was not a de jure officer; his official character cannot be thus collaterally assailed; it is sufficient that he was a de facto officer. | Is it a defense to an indictment for attempted bribery of a public officer that the defendant is not a de jure officer? |
| 9503 | Beckett v. Gridley, 69 N.W. 622, 622–23, 67 Minn. 37, 37 (Minn. 1896) | 2 | Gen.St.1894, S 5689 (M.S.A. SS 597.03, 597.07, 597.08, 597.10), provides that, where the testimony of a witness without the state is taken by deposition, it shall, when completed, be carefully read over to him by the officer taking the same, and thereupon the officer taking such deposition is required to make his return of certain matters regarding such deposition, and attach his certificate thereto, which certificate, it is provided, shall, among other matters, state substantially that such testimony was correctly read over to the witness by the officer before he signed the same. Held, that the certificate of a notary public to a deposition taken and returned by him, that the testimony of the witness was carefully read over to him by the notary public before it was signed by the witness, was in this respect a substantial and sufficient compliance with the law. | Gen. St. 1894, § 5689, provides that, where the testimony of a witness without the state is taken by deposition, it shall, when completed, be carefully read over to him by the officer taking the same, and thereupon the officer taking such deposition is required to make his return of **623 certain matters regarding such deposition, and attach his certificate thereto, which certificate, it is provided, shall, among other matters, state substantially that such testimony was correctly read over to the witness by the officer before he signed the same. Held, that the certificate of a notary public to a deposition taken and returned by him, that the testimony of the witness was carefully read over to him by the notary public before it was signed by the witness, was in this respect a substantial and sufficient compliance with the law. | "Where the testimony of a witness without the state is taken by deposition, shall it be carefully read over to him by the officer taking the same?" |
| 9517 | Nat'l Seed Co. v. Leavell, 202 Ky. 438, 259 S.W. 1035, 1037 (1924) | 6 | A custom, in order to become a part of terms of a contract, must be fixed, definite, and certain and known to the parties, or its existence must have been for such a length of time as to create the presumption that it was known. | Moreover, a custom, in order to become a part of the terms of a contract, must be fixed, definite, and certain, and known to the parties, or its existence must have been for such a length of time as to create the presumption that it was known. | When will a custom have a presumption that it was known by the parties? |

| | | | | | |
|---|---|---|---|---|---|
| 9518 | Strange v. Carrington, Patton & Co., 116 Ill. App. 410, 413 (Ill. App. Ct. 1904) | 3 | To render evidence of a custom admissible it must be shown that it was uniform, long established, generally acquiesced in, and so well known as to induce belief that parties contracted with reference thereto. | To render evidence of a custom admissible, it must be shown that it was uniform, long established, generally acquiesced in, and so well known as to induce the belief that the parties contracted with reference to it. | When is evidence of a custom admissible? |
| 9523 | Read v. Patterson, 79 Tenn. 430, 433, 1883 WL 3732, at *2 (Tenn. 1883) | 7 | Neither the caption nor certificate need set forth the official character of the magistrate who takes a deposition, if his official character appears in his signature. | The form in the Code, section 3848, does not contain any recital in the caption or certificate of the official character of the officer taking the deposition. It is sufficient if that fact fully appears in the signature of the officer as it does in this case at the end of his certificate. | "Need neither the caption nor certificate set forth the official character of the magistrate who takes a deposition, if his official character appears in his signature?" |
| 9524 | Oatman v. Andrew, 43 Vt. 466, 470–71, 1871 WL 3934, at *1 (Vt. 1871) | 1 | Under G.S.1863, c. 36, S 3, subd. 3, P.S. 1608, subd. 3, providing for the taking and use of depositions of a witness who by reason of age, sickness, or other infirmity is incapable of traveling and appearing at court, a certificate of the magistrate that by reason of age and infirmity the witness was unsuitable to attend trial is insufficient. | The statute allows a deposition to be taken and used when the deponent, "by reason of age, sickness or other bodily infirmity, is rendered incapable of traveling and appearing at court." The cause for taking the deposition, as originally certified, we do not regard as substantially the same cause stated in the statute. A magistrate might, frequently, certify that a person, by reason of age and infirmity of health, was unsuitable to attend the trial of the cause, when he would not certify that the deponent was thereby rendered incapable of traveling and appearing at court. The unsuitableness might arise from the condition of the deponent's *471 mind when affected by age and infirmity of health. The statute contemplates only a physical incapacity arising from the same causes. As the caption originally stood, we hold the deposition should not have been admitted. | Is a certificate of the magistrate that by reason of age and infirmity the witness was unsuitable to attend trial insufficient? |
| 9525 | Edgefield Mfg. Co. v. Maryland Cas. Co., 58 S.E. 969, 971 (S.C. 1907) | 3 | Testimony de bene esse taken in typewriting is good without a certificate of a notary that it was written by the witness or read over to him. | We do not think these were sound objections to the admission of the depositions. The court cannot presume the testimony to have been taken by a stenographer and afterwards typewritten, and therefore requiring a certificate that it had been read over to the witness. In taking testimony de bene esse typewriting is as any other writing. | Is testimony de bene esse taken in typewriting good without a certificate of notary? |
| 9544 | Choctaw Lumber Co. v. Gilmore, 68 P. 733, 734–35 (Okla.Terr. 1902) | 2 | St.1893, SS 3539, 3541, 54 Okl.St.Ann. SS 81, 83, providing that a partnership transacting business under a fictitious name shall file a certificate with the clerk of the district court, giving the names of the parties in full, and publish the same, and that persons so doing business contrary to the act shall not maintain any action in their name, is mandatory; and the publication must be of four consecutive weeks before any action can be maintained in the courts. | The declarations of the statute are peremptory that every partnership transacting business in the territory under a fictitious name shall file a certificate with the clerk of the district court showing the names of the persons interested as partners in the business, and that it shall be filed as is fully and particularly stated in the sections of the statute heretofore set forth, and be published once a week for four consecutive weeks, etc., and that persons doing business as partners contrary to the provisions of this article shall not maintain any action on account of any transaction or transactions made in their partnership name in any court of the territory until they have first filed the certificate and *735 made the publication required | Can a partnership maintain an action on any contract made in the partnership name before filing the certificate and making the required publication? |
| 9550 | Louisville, N.A. & C. Ry. Co. v. L. Heilprin & Co., 95 Ill.App. 402, 404, 1900 WL 3840, at *1 (Ill.App. 1 Dist. 1900) | 3 | Where depositions were not returned to justice of peace who issued the dedimus and were not filed in circuit court and were not sealed up, but were open when presented, depositions were improperly admitted. Smith-Hurd Stats. c. 51, SS 30, 31. | The depositions do not appear to have been ever returned to the justice of the peace who issued the dedimus, nor to have been ever used or filed in his court, or filed in the Circuit Court. So far as appears, they may have been delivered by the commissioner who took them, to the attorneys, and by them kept until trial. They were not sealed up, but open, when presented. No motion to suppress was necessary. Such a motion would have been inapt, for there was nothing returned to the court or in the files to be suppressed. The depositions should not have been admitted. | "Where depositions are not returned to justice of peace who issued the dedimus and are not filed in circuit court, are those depositions improperly admitted?" |
| 9566 | Humphries v. McCraw, 5 Ark. 61, 62 (1843) | 1 | Justices of the peace may administer oaths or certify depositions anywhere within their respective counties. | Although a justice of the peace is not authorized to act judicially, in the hearing and determining of causes, in a civil proceeding, beyond their respective townships, yet we apprehend that they may administer oaths, or certify depositions anywhere within the limits of their respective counties. | Can justices of the peace administer oaths or certify depositions anywhere within their respective counties? |

| | | | | | |
|---|---|---|---|---|---|
| 9610 | Lane Bros. Co. v. Barnard's Adm'r, 69 S.E. 969, 972, 111 Va. 680, 687–88 (Va. 1911) | 4 | A defendant engaged in road improvement who has located his machinery in a public road, as he had a lawful right to do, and is operating it according to the methods usually pursued in similar work, is not liable for an injury inflicted on a traveller on the road by reason of his horse taking fright at the machinery, or the noises made by it. Though machinery and the noises made in operating it are of such a character as to frighten horses, this alone does not impose a liability. | We have seen that the defendant had located its machinery, *688 as it had the lawful right to do; that it was operated according to the methods usually pursued in similar work; and that the evidence leaves in doubt whether the horse of the deceased was frightened by the appearance of steam which necessarily escapes from steam engines, or by the noise of the discharge of the pop valve….Though machinery and the noises made in operating it are of such a character as to frighten horses, this alone does not impose a liability; therefore, the defendant in this case being in lawful occupation of the road with its machinery, and using it for a lawful purpose, was not responsible for the appearance of the machinery, or for the noise or other occurrences usual in its operation. | Can a person be held liable for frightening horses as a result of his lawful occupation of the road with machinery? |
| 9637 | In re Y. Akado, 207 P. 245, 245–46, 188 Cal. 739, 740–41 (CA. 1922) | 1 | Under Initiative Alien Land Act 1920, SS 1, 2, declaring that no alien who is not eligible to citizenship may acquire real property except as provided by the treaty between the United States and the country of which such alien is a citizen, and the treaty between the United States and Japan providing that citizens of Japan residing in the United States may lease land for residential and commercial purposes only, but containing no provisions authorizing an alien to lease or acquire land for agricultural purposes, a native-born subject of Japan cannot acquire agricultural land in the state. | This, in effect, declares that no alien who is not eligible to citizenship under the laws of the United States may acquire real property, except as provided by the treaty existing between the United States and the country of which such alien is a citizen or subject. 37 Stat. 1504. Persons of the Japanese race who are native-born subjects of Japan cannot become citizens of the United States. The result is that the acquisition by such an alien of land situated in this state is unlawful, unless the treaty between his government and the United States allows such acquisition. The treaty between the United States and Japan provides that citizens of Japan residing in the United States may lease land for residential and commercial purposes, but it contains no provision authorizing an alien of the Japanese race to lease or acquire land for agricultural purposes. *741 Consequently the Initiative Alien Law aforesaid prohibits the acquisition by such alien of any agricultural land situated in this state. | "Can an alien, ineligible for citizenship, acquire real property?" |
| 9644 | State Bank of Halstad v. Bilstad, 136 N.W. 204, 205 (Iowa 1912) | 1 | Provisions of the negotiable instruments act must be construed with reference to its stated purpose, so that the negotiable character of paper may not be destroyed by local laws and conflicting decisions. | The primary purpose of the several states that have adopted the negotiable instruments act has been to establish a uniform rule of law governing such instruments and to embody in a codified form, as fully as possible, the previous law on the subject, to the end that the negotiable character of commercial paper might not be destroyed by local laws and conflicting decisions, and this object should be kept in mind in construing the various provisions of the act. | Is the purpose of Negotiable instruments law to make sure that the negotiable character of commercial paper is not destroyed? |
| 9645 | Denton v. Erwin, 5 La. Ann. 18, 22 (1850) | 1 | A party cannot deny a judicial admission solemnly made by him, nor shift his position at will to a contradictory one in relation to the subject-matter of litigation, to defeat an action of the law thereon. | We accordingly held, that a man should not be permitted to deny what he had solemnly acknowledged in a judicial proceeding, nor to shift his position at will, to a contradictory one, in relation to the subject matter of litigation, in order to frustrate and defeat the action of the law upon it. | Is a man permitted to deny what he solemnly acknowledged in a judicial proceeding or shift his position to a contradictory one in relation to the subject matter of the litigation? |
| 9658 | Woodruff v. Merchants' Bank, 1841 WL 3884 (N.Y. Sup. Ct. 1841) | 2 | A bill of exchange, drawn upon a cashier of a bank, and accepted by him in his official character, payable to the order of the payee at a future day, is entitled to days of grace. | A bill of exchange drawn upon the cashier of a bank, and accepted by him in his official character, payable to the order of the payee, at a future day, is a bill of exchange, entitled to days of grace and is not a bank check or draft, falling due at the expiration of the time specified in it. | Is bill of exchange entitled to days of grace? |
| 9666 | Monette Road Imp. Dist. v. Dudley, 222 S.W. 59, 63 (Ark. 1920) | 6 | Under Road Laws 1919, vol. 1, p. 105, creating the Monette Road Improvement District, as amended at January, 1920, special session, the functions of the board of assessors in assessing benefits, and of the board of commissioners in adjusting them, on the complaint of the property owners, is not judicial in the ordinary sense, but is in the nature of a legislative power. | The functions of the board of assessors in assessing benefits and the board of commissioners in adjusting them on complaint of the property owners is not judicial in the ordinary sense, but it is in the nature of a legislative power. | Is the power of assessments by the commissioners legislative in nature? |

| | | | | | |
|---|---|---|---|---|---|
| 9680 | Norfolk & W. Ry. Co. v. Gee, 52 S.E. 572, 572, 573, 104 Va. 806, 807–08, 809-10 (Va. 1906) | 1 | In an action against a railroad company for negligently frightening plaintiff's horse at a public crossing, it is not sufficient to charge that the defendant negligently placed a hand-car with long projecting arms at or so near the crossing as to render it unsafe for the travelling public in vehicles drawn by horses to cross on the highway, and that, in consequence thereof, the plaintiff's horse took fright and caused the injury declared on in the declaration. Nor is a count good which makes similar charges and adds that defendant's servants, negligently hung wearing apparel and bright tin buckets on the arms of the hand-car, and that these objects caused the plaintiff's horse to take fright. In each instance it was necessary to aver that the hand-car was, under the circumstances stated, an object of such unusual or extraordinary appearance as to have a natural tendency to frighten horses of ordinary gentleness and training, although that was a question to be determined by the jury from all the circumstances of the case, under proper instructions from the court. | The second count of the declaration avers that on the day of the injury the plaintiff was driving in a one-horse buggy along *808 the public road where it crosses the track of the railway company, as she had the right to do, but that "the defendant company had so carelessly and negligently performed the duties it owed to the traveler on the said highway at the crossing, and that the said defendant company, or its servants and agents, had so needlessly, carelessly, and negligently placed a car, with long arms projecting above the same, commonly known as a 'hand car,' at or so near said crossing as to render the said crossing unsafe for the traveling public along the said highway at said crossing, when in vehicles to which horses were attached, of all of which the defendant company had notice."....If the rule stated in the authorities cited be correct as to objects on the highway, and we think it is, certainly no higher degree of care, if as high, should be required of a person placing or leaving near the highway, on his own premises, appliances in use thereon. The count under consideration does not show *810 clearly whether the hand car was on the highway or on the defendant company's own premises outside of the highway. Neither does it show that the hand car was an object so unusual or extraordinary as to have a natural tendency to frighten horses of ordinary gentleness. While the question of whether or not the object is of that character is largely for the determination of the jury, from its nature, situation, and other like circumstances, under proper instructions of the court (Elliott on Roads, § 616; Piollet v. Simmers, supra), a count is demurrable which fails to show that the object which it is averred frightened the horse was by its nature calculated to frighten horses of ordinary gentleness. North Alabama Ry. Co. v. Sides (Ala.) 26 South. 116; Keeley Brewing Co. v. Parnin (Ind. App.) 41 N. E. 471, 472. | "If one uses apparatus for a reasonable time in a highway, and if it frightens the horse, is it negligence?" |
| 9701 | Conwell v. Pumphrey, 9 Ind. 135, 137, 1857 WL 3756, at *1 (Ind. 1857) | 2 | The contract of assignment of a note is in no way connected with the consideration thereof, and usury in such contract affects only the assignor's promise, and the assignment, so far as it operates as a transfer of the note, is neither void nor voidable. | The contract of assignment is in no way connected with the consideration of the note; and though such contract may be tainted with usury, still, it only affects the promise of the assignor. So far as the assignment operates as a transfer of the note to the assignee, it is neither void nor voidable. | Is the transfer of a note on usurious consideration void? |
| 9704 | Knight v. Thayer, 125 Mass. 25, 27 (1878) | 3 | Under a deed with covenants of warranty, a title afterwards acquired by the grantor inures by way of estoppel to the grantee, as against the grantor and his subsequent grantees. | **3 It has been the settled law of this Commonwealth for nearly forty years, that, under a deed with covenants of warranty from one capable of executing it, a title afterwards acquired by the grantor enures by way of estoppel to the grantee, not only as against the grantor, but also as against one holding by descent or grant from him after acquiring the new title. | "Under a deed with covenants of warranty from one capable of executing it, does a title afterwards acquired by the grantor enure by way of estoppel to the grantee?" |
| 9772 | United States v. Murphy, 84 F. 609 (D. Del. 1898) | 2 | Providing the means of transportation for a known military enterprise to be carried on from the United States against Spanish rule in Cuba is an offense, under Rev.St. S 5286, 18 U.S.C.A. S 25. | Providing the means of transportation for a military enterprise to be carried on from the United States against Spanish rule in Cuba is, within the meaning of section 5286 of the Revised Statutes of the United States, | Is providing the means of transportation for a known military enterprise an offense under Rev.St. 5286? |
| 9783 | Jewett v. Town of Alton, 7 N.H. 253, 256 (1834) | 1 | Where an authority is given by law to three or more persons, it may, in general, be executed by a major part of the persons to whom it is so delegated; but where corporations or individuals give an authority jointly to three or more persons, in order to bind the principals, all the agents must act. | With respect to the note on which this suit is founded, the rule is that when an authority is given by law to three or more persons, it may in general be executed by a major part of the persons to whom it is delegated. But when individuals or corporations give an authority jointly to three or more persons, in order to bind the principal all the agents must act. | |
| 9822 | N. Missouri R. Co. v. Maguire, 87 U.S. 46, 60-61 (1873) | 1 | The power to tax resides in the state government as part of itself for the benefit of the whole people who cannot complain if the power is fairly exercised and the proceeds are properly applied to discharge obligations for which the taxes were imposed and the power need not be reserved when property of any description is granted to individuals or corporation bodies. | Power to tax is granted for the benefit of the whole people, and none have any right to complain if the power is fairly exercised and the proceeds are properly applied to discharge the obligations for which the taxes were imposed. Such a *61 power resides in the State government as a part of itself, and need not be reserved when property of any description is granted to individuals or corporate bodies. | Is the power to tax granted for the benefit of the whole people? |

| | | | | | |
|---|---|---|---|---|---|
| 9905 | Lent v. Padelford, 10 Mass. 230, 238 (1813) | 10 | The general rule with respect to the necessity of alleging notice is that when the matter alleged lies peculiarly in the knowledge of the plaintiff he must aver that defendant had notice, but when it lies equally in the knowledge of defendant such averment is unnecessary. | When the matter alleged lies peculiarly in the knowledge of the plaintiff, he must aver that the defendant had notice; but when it lies equally in the knowledge of the defendant, such averment is unnecessary. | "When the matter alleged lies peculiarly in the knowledge of both plaintiff and defendant, is it necessary to allege or aver that the defendant had notice? " |
| 9919 | Downs v. Hawley, 112 Mass. 237, 237, 1873 WL 8971, at *1 (Mass. 1873) | 3 | In the absence of any showing of fraud, the fact that the answers were not annexed to the commission nor to the interrogatories is no ground for the rejection of a deposition returned to court in a sealed envelope. | A deposition was returned to court in a sealed envelope, but the answers were not annexed either to the commission or to the interrogatories. Held, that the deposition was not to be rejected simply because the answers were not so annexed. | "In the absence of any showing of fraud, is the fact that the answers were not annexed to the commission nor to the interrogatories no ground for the rejection of a deposition?" |
| 9925 | Aldrich v. Collins, 52 N.W. 854, 855-56 (S.D. 1892) | 5 | Under Comp. Laws, S 772, town supervisors have charge of such affairs "as are not by law committed to other town officers." Section 1272 provides for the assessment of a road tax, whose collection and expenditure, under section 1266, are under the control of road supervisors. Const. art. 10, S 2, provides that funds raised by "taxation, loan, or assessment for one purpose shall not be diverted to any other." Held, that the supervisors have no authority to appropriate the ordinary town funds to the improvement of highways. | The general powers and duties of town supervisors are defined by section 772, Comp. Laws, as follows: "The supervisors shall have charge of such affairs of the town as are not by law committed to other town officers, and they shall have power to draw orders on the town treasurer for the disbursement of such sums as may be necessary for the purpose of defraying the incidental expenses of the town, and for all moneys raised by the town to be disbursed for any other purpose."....The highway labor and road tax thus assessed and levied by the supervisors is placed under collection and expenditure under the control of road supervisors, who are required "to repair and keep in order the roads within their respective districts, warn all persons from whom labor is due to work on highways at such times and places within their said districts as they may think proper, collect all fines and commutation money," (that is, money for the real and personal property tax in lieu of labor.)....And it cannot be seriously contended that the supervisors can divert the funds raised and collected for incidental town expenses to the improvement of highways, as funds raised "by taxation, loan, or assessment for one purpose shall *856 not be diverted to any other." Section 2, art. 10, Const.; Dill. Mun. Corp. (3d Ed.) § 603, and cases there cited. The supervisors are not authorized to contract any debt against the town for the purpose of improving the highways, except in the manner pointed out in article 22, Pol. Code, (sections 829-836, Comp. Laws.) | Can the funds raised for improvement of highways by taxation be diverted for another purpose? |
| 9928 | City of El Dorado v. Union Cty., 122 Ark. 184, 182 S.W. 899, 900 (Ark. 1916) | 1 | Article 7, section 28, of the Constitution vests the county courts with exclusive original jurisdiction in all matters relating to county taxes, roads, bridges, etc. | article 7, § 28, of the Constitution vests the county courts with exclusive original jurisdiction in all matters relating to county taxes, roads, bridges, etc. | Can the County Court exercise its original jurisdiction in matters relating to roads? |
| 9996 | Dayton Gold & Silver Min. Co. v. Seawell, 11 Nev. 394, 400, 411, 1876 WL 4573, at *5, *11 (Nev. 1876) | 5 | In construing the meaning of the words "public use," as contained in the constitution of this state, held, that any appropriation of private property, under the right of eminent domain, for any purpose of great public benefit, interest, or advantage to the community, is a taking for a public use. The object must not only be of great public benefit, and for the paramount interests of the community, but the necessity must exist for the exercise of the right of eminent domain. | This brings us to the direct question: What is the meaning of the words ""public use" as contained in the provision of our state constitution?" It is contended by respondent that these words should be construed with the utmost rigor against those who try to seize property, and in favor of those whose property is to be seized. In other words, that in favor of private rights the construction should be strict; that the words mean possession, occupation, or direct enjoyment by the public. On the other hand, it is claimed by petitioner that courts should give to the words a broader and more extended meaning, viz., that of utility, advantage or benefit; that any appropriation of private property under the right of eminent domain for any purpose of great public benefit, interest or advantage to the community is a taking for a public use....The object for which private property is to be taken must not only be of great public benefit and for the paramount interest of the community, but the necessity must exist for the exercise of the right of eminent domain. | What does the term public use encompass in relation to eminent domain? |

| | | | | | |
|---|---|---|---|---|---|
| 10016 | People v. Converse, 42 N.W. 70, 71, 74 Mich. 478, 482 (Mich. 1889) | 2 | An attorney who collects money for a client acts as agent as well as attorney, and may be convicted of embezzlement for appropriating the money to his own use, with intent to deprive the owner thereof. | If an attorney collects money for his client, he in so doing acts as the agent of his client as well as his attorney; and in either case, after making the collection, he appropriates the money to his own use with the intention of depriving the owner of the same,-he is guilty of the crime of embezzlement. If this were not so, no attorney could be convicted of the embezzlement of his client's money, and this was certainly never the intention of the legislature in passing the statute creating the crime. | Can an attorney appropriating money collected for his client be guilty of embezzlement? |
| 10026 | State v. Kittitas Cty., 107 Wash. 326, 328 (1919) | 1 | The power of a quasi public corporation or a public corporation to condemn property owned by a municipality does not exist unless clearly created by statute. | The elementary rule is that the power of a quasi public corporation or a public corporation to condemn property owned by a municipality does not exist unless clearly created by statute. | When may a quasi public corporation or a public corporation condemn property owned by a municipality? |
| 10041 | Carlisle v. United States, 83 U.S. 147, 148 (1872) | 7 | Aliens domiciled in the United States owe a local and temporary allegiance to the government thereof; they are bound to obey all laws not immediately relating to citizenship during their residence in the country, and are equally amenable with citizens for any infraction of those laws. Those aliens who, being domiciled in the country prior to the Rebellion, gave aid and comfort to the Rebellion, were, therefore, subject to be prosecuted for violation of the laws of the United States against treason and for giving aid and comfort to the Rebellion. | Aliens domiciled in the United States owe a local and temporary allegiance to the government of the United States; they are bound to obey all the laws of the country, not immediately relating to citizenship, during their residence in it, and are equally amenable with citizens for any infraction of those laws. Those aliens who, being domiciled in the country prior to the rebellion, gave aid and comfort to the rebellion, were, therefore, subject to be prosecuted for violation of the laws of the United States against treason and for giving aid and comfort to the rebellion. | Can an alien be prosecuted for treason? |
| 10042 | John Hancock Mut. Life Ins. Co. v. Olick, 151 F.3d 132, 136 (3d Cir. 1998) | 5 | The Federal Arbitration Act (FAA) federalizes arbitration law and creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate. 9 U.S.C.A. S 1 et seq. | Because this case raises questions about the scope of the duty to honor an arbitration agreement, our analysis must begin with the Federal Arbitration Act. The FAA federalizes arbitration law and "creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate...." | Does the Federal Arbitration Act (FAA) create a body of federal substantive law? |
| 10068 | Reading v. Gazzam, 200 Pa. 70, 106 (Pa. 1901) | 2 | The gist of the action is not the loss of assistance but the loss of consortium of the spouse. Hence, to entice away or corrupt the mind of one's consort is a civil wrong for which the offender is liable to the injured wife. | To entice away or corrupt the mind of one's consort is a civil wrong, for which the offender is liable to the injured wife. The gist of the action is not the loss of assistance, but the loss of 'consortium' of the husband, under which term are usually included the person's affection, society, and aid. | Can a person be liable for a civil wrong if he entices or corrupts the mind of one's consort? |
| 10074 | Schleicher v. Walker, 28 Fla. 680, 695 (Fla. 1891) | 5 | Where one partner transfers his entire interest in the partnership concerns to his copartner, so as to vest in the latter the partnership assets as his sole property, a dissolution of the partnership results. | Where one partner *36 transfers his entire interest in the partnership concerns to his copartner, so as to vest in the latter the partnership assets as his sole property, a dissolution of the partnership results. | Does a transfer of partnership assets from one partner to another dissolve the partnership? |
| 10136 | Bolmer v. Edsall, 90 N.J. Eq. 299 (1919) | 6 | The rivers, havens, bays, and other arms of the sea extending into a state or country are within the jurisdiction of such state or country. | The rivers, havens, bays, and other arms of the sea extending into a state or country are within the jurisdiction of such state or country. | "Are the rivers, havens, bays, and other arms of the sea extending into a state or country within the jurisdiction of such state or country?" |
| 10137 | Canada S. Ry. Co. v. Gebhard, 109 U.S. 527 (1883) | 1 | As to all matters within its authority, the Parliament of the Dominion of Canada has plenary legislative powers as large and of the same nature as those of the imperial parliament. | As to all matters within its authority, the dominion parliament has 'plenary legislative powers as large and of the same nature as those of the imperial parliament.' | "Does a state, as to all matters within its authority, have plenary legislative powers as large and of the same nature as those of the imperial parliament?" |
| 10166 | The Sapphire, 78 U.S. 164, 168, 20 L. Ed. 127 (1870) | 5 | Each nation is the true and real owner of its public vessels of war and the emperor or party in power in the nation is but the "agent" and "representative" of the national sovereignty. | The foreign state is the true and real owner of its public vessels of war. The reigning Emperor, or National Assembly, or other actual person or party in power, is but the agent and representative of the national sovereignty. | Is each nation the true and real owner of its public vessels of war? |
| 10199 | Bradley v. Fed. Life Ins. Co., 216 Ill. App. 602 (1920) | 12 | A cause of action accrues when facts exist which authorize one party to maintain an action against another. | A cause of action accrues when facts exist which authorize one party to maintain an action against another. | Can a cause of action accrue when facts exist which authorize one party to maintain an action against another? |

| ID | Citation | # | Text A | Text B | Question |
|---|---|---|---|---|---|
| 10202 | Crosby v. Georgia Realty Co., 138 Ga. 746, 76 S.E. 38, 38 (1912) | 4 | A cause of action must exist at the institution of a suit, and the fact that, pending the suit, the time arrives for performance, does not authorize the action to proceed for the relief sought. | A cause of action must have existed at the time of the institution of the suit; and the fact that, pending the suit, the time arrived for the execution of a conveyance by the seller, and that he thereafter continued to repudiate the contract, would not authorize the action to proceed for the relief sought. | Is existence of a cause of action necessary at the time of the institution of the suit? |
| 10204 | Smyth v. Strader, 45 U.S. 404, 413, 1846 WL 5720, at *8 (U.S.,1846) | 6 | Under the statutes of Alabama, the negotiability of bills of exchange, foreign and inland, and promissory notes payable in bank, depends on the general commercial law. | The statutes of Alabama require the negotiability and character of bills of exchange, foreign and inland, and promissory notes, payable in bank, to be governed by the general commercial law. | Should the negotiability and character of bills of exchange be governed by the general commercial law? |
| 10233 | Deas v. Sammons, 126 Ga. 431, 55 S.E. 170, 170 (1906) | 2 | The general rule is that there can be no recovery unless the plaintiff had a complete cause of action at the time the suit was filed. A cause of action accruing pending the suit will not entitle the plaintiff to recover. | The general rule is that there can be no recovery unless the plaintiff had a complete cause of action at the time the suit is filed. A cause of action accruing pending the suit will not entitle the plaintiff to recover. | Can there be a recovery unless the plaintiff has a complete cause of action at time suit is filed? |
| 10263 | Bertschy v. McLeod, 32 Wis. 205, 210 (Wis. 1873) | 1 | The right of discontinuance is not affected by the code, but remains the same as under the former practice, both in legal and equitable actions. | The right of discontinuance is not affected by the code, but remains the same, both in legal and equitable actions, as under the former practice. | "Is the right of discontinuance affected by the code, but remains the same as under the former practice, both in legal and equitable actions?" |
| 10264 | Riley v. Carter, 22 Tenn. 230, 232 (1842) | 2 | By the common law, a party plaintiff has a right to dismiss his suit whenever he may choose. | There is no doubt that at common law a party plaintiff has a right to dismiss his suit whenever he may choose. | "At common law, does a party plaintiff has a right to dismiss his suit whenever he may choose?" |
| 10265 | Herring v. Poritz, 6 Ill.App. 208, 211 (1880) | 2 | A "nonsuit" is the name of a judgment given against the plaintiff when he is unable to prove his case, or when he refuses or neglects to proceed to the trial of a cause after it has been put at issue, without determining such issue. | "Nonsuit--the name of a judgment given against the plaintiff when he is unable to prove his case, or when he refuses or neglects to proceed to the trial of a cause after it has been put at issue, without determining such issue." | Is an instance where the plaintiff does not proceed to trial be a non-suit? |
| 10376 | Bueb v. Dreessen, 104 Ill. App. 409, 412 (Ill.App. 1 Dist. 1902) | 3 | A commissioner appointed to take depositions has, within reasonable limits and for reasonable cause, power to adjourn the taking of depositions. | A commissioner appointed to take depositions has within reasonable limits and for reasonable cause, power to adjourn the taking of depositions, as was done in this case, from ten o'clock in the morning until four o'clock in the afternoon. | "Does a commissioner appointed to take depositions have, within reasonable limits and for reasonable cause, the power to adjourn the taking of depositions?" |
| 10391 | Treadwell v Greene, (N.Y.A.D. 1 Dept., Dec. 18, 1903) | 1 | While ordinarily, the court will reserve questions on the settlement of interrogatories and cross-interrogatories until trial, where the right to cross-examine has been abused the court will on motion restrict the examination to a proper cross-examination. | While, ordinarily, the court will reserve all questions upon the settlement of interrogatories and cross-interrogatories until the trial, yet in this case the right to cross-examine is so grossly abused that the court is compelled in justice to restrict the examination to that which is properly cross-examination. | Will the court reserve questions on the settlement of interrogatories and cross-interrogatories until trial? |
| 10394 | State Bd. of Assessors v. State, 8 A. 724, 725, 48 N.J.L. 146, 326–27 (N.J.Err. & App. 1886) | N/A | All taxes, whether levied for state, county or municipal purposes, are state taxes; they can be imposed by no other authority than that of the state, and the state appropriates the proceeds to whatever purposes it sees fit. | While that phraseology may be, and for ordinary and distinctive purposes is, distinguished from what, for similar convenience, are recognized as local or municipal assessments, still, when considered as a system or science, no tax can be regarded as other than an impost of the state, because no other authority can lay a custom levy. It is in such a *327 character and connection only that a judicial tribunal can contemplate the word "taxes" in a constitutional aspect. | "Are all taxes, whether levied for state, county, or municipal purposes, ""state taxes""?" |
| 10399 | White v. Edwards, 192 N.W. 560, 561, 222 Mich. 321, 323 (Mi. 1923) | 1 | One injured while momentarily standing in the highway and when not in motion is not per se guilty of contributory negligence, and the offending party is not exonerated from all duty and liability by the fact that he is not in motion. | Numerous decisions of courts of last resort hold, and we think they should be followed, that one injured while momentarily standing in the highway and when not in motion is not per se guilty of contributory negligence, and that the offending party is not exonerated from all duty and from liability by the fact that he is not in motion. | Can an offender be exonerated from liability if he was not in motion when the accident occurred? |

| | | | | | |
|---|---|---|---|---|---|
| 10408 | Lucas v. Casady, 12 Iowa 567, 569, 1862 WL 288, at *1 (Iowa 1862) | 2 | Under section 3014, an application for a continuance should be overruled if not made the second day of the term, or does not state facts constituting a sufficient excuse for the delay in making it. | Section 3014 of the Revision provides, "that a motion for a continuance must be filed on the second day of the term, and if made after the second day of the term the affidavit must state facts constituting an excuse for the delay in making it." | Should an application for a continuance be overruled if not made the second day of the term? |
| 10409 | City of Brownsville v. Crixell, 275 S.W. 430, 432 (Tex. Civ. App. 1925) | 1 | Court must permit defendant to withdraw announcement of ready, and grant postponement or continuance, if amendment sets up different cause of action. | If an amendment clearly sets up a new and different cause of action, upon request, it is the duty of the court as a matter of law to permit the defendant to withdraw his announcement of ready for trial on the ground of surprise, and grant a postponement or continuance as the case may be. | Should a court permit a defendant to withdraw an announcement of ready? |
| 10410 | City of Brownsville v. Crixell, 275 S.W. 430, 432 (Tex. Civ. App. 1925) | 3 | Defendant should not be required to proceed to trial, where pleadings are so materially changed as to require new pleadings and different testimony. | A defendant should never be required to proceed to the trial of a case where the pleadings are so materially changed as to require new pleadings and other or different testimony than would be required to meet the issues presented, in the first instance, by the original case. | "Should a defendant be not required to proceed to trial, where pleadings are so materially changed as to require new pleadings and different testimony?" |
| 10419 | Pierce v Morris, (N.Y.A.D. 4 Dept., May 12, 1920) | 3 | Upon compliance with Code Civ.Proc. SS 870, 871, and with General Rules of Practice, rule 82, an order for the examination of a party before trial is usually granted. | Upon compliance with the provisions of sections 870 and 871 of the Code of Civil Procedure and with rule 82 of the General Rules of Practice, an order for the examination of a party before trial is usually granted. | Is an order for the examination of a party before trial usually granted? |
| 10432 | People ex rel. Vance v. Ross, 275 Ill. 70, 72, 113 N.E. 957, 957 (1916) | 1 | The power to levy a hard road tax is not inherent in the voters of a township, but is granted by act of the Legislature, and must be strictly construed. | The right to levy a hard road tax is not inherent in the voters of a township. The power and authority to levy such a tax is granted by act of the Legislature, and this power must be strictly construed. | Do the voters of a road district or township have power to levy tax? |
| 10434 | Brown's Ex'r v. Faulk's Adm'r, 12 La. 598, 600, 1838 WL 900, at *1 (La. 1838) | 1 | The voluntary absence in another court of party's counsel, especially if not in possession of important papers that cannot be obtained from him, and where other counsel is engaged and attending, is no ground for a continuance. A party, by requesting his principal counsel to absent himself, might otherwise always obtain a continuance. | It appears to us the court did not err. Even if the grounds for a continuance had been verified by affidavit, they would not have sufficed; for otherwise a party could always obtain a continuance by requesting his principal counsel to absent himself. | "Is the voluntary absence in another court of party's counsel, especially if not in possession of important papers that cannot be obtained from him, and where other counsel is engaged and attending, ground for a continuance?" |
| 10436 | Judd v. Ladd & Co., 1 Haw. 11, 12 (Oahu 1847) | 1 | Some specific time should be mentioned in a motion to postpone trial because of absence of material witnesses, and affidavit on which motion is founded should state that witnesses can be had at the time to which the trial is to be deferred. | It is necessary that some specific time mentioned in a motion to postpone trial; and one of the three great essentials of an affidavit founding such a motion, is, that it state that the witnesses can be had at the time to which the trial is to be deferred. | Should some specific time be mentioned in a motion to postpone trial because of the absence of material witnesses? |
| 10437 | Columbus Trust Co. v Upper Hudson Electric & R. Co., (Sup Ct, Nov. 23, 1921) | 1 | The provisions of the Civil Practice Act, S 290, for the examination of witnesses before trial on notice by counsel are not unworkable or revolutionary, since similar proceedings have been conducted under United States statutes and have been found satisfactory. | It is further urged that an examination before trial taken by the *739 notice prescribed in section 290 of the Civil Practice Act is unworkable and revolutionary. This objection is not well taken. For many years similar proceedings have been conducted under the Revised Statutes of the United States and have been found to be satisfactory. | "Are the provisions of the Civil Practice Act, for the examination of witnesses before trial on notice by counsel, not unworkable or revolutionary?" |
| 10438 | In re Glasgow's Estate, (N.Y.Sur., Nov. 01, 1923) | 1 | In every discovery proceeding, petitioner opens the door as to any transaction concerning which he examines respondent. | In every discovery proceeding, the petitioner opens the door as to any transaction concerning which he examines the respondent. | "In every discovery proceeding, does the petitioner open the door as to any transaction concerning the examination of the respondent?" |
| 10450 | Loomis v. Marsh, 215 A.D. 691, 212 N.Y.S. 859 (App. Div. 1925) | | A plaintiff is entitled to examine a witness under Civil Practice Act, S 288, where the record shows a refusal by the defendants to furnish the plaintiff with information in their possession to which he is entitled. | Krein's headnote not found using judicial opinion. | Is a plaintiff entitled to examine a witness where the record shows a refusal by the defendants to furnish the plaintiff with information in their possession to which he is entitled? |

| 10456 | Henderson v. Williams, 35 S.E. 261, 262 (S.C. 1900) | 3 | Placing of the names of the witnesses on envelopes containing depositions is a matter of practice and convenience only, and failure to do so did not affect the admissibility of the depositions. | As to the first objection, while there may be some reason, as a matter of practice and convenience, for stating the names of the witnesses on the outside of the envelope containing the depositions, the statute does not expressly so require, and the depositions ought not to be rejected on that ground. | Is placing of the names of the witnesses on envelopes containing depositions a matter of practice and convenience only or does the failure to do so affect the admissibility of the depositions? |
|---|---|---|---|---|---|
| 10460 | Colton v. Rupert, 27 N.W. 520, 524, 60 Mich. 318, 331 (Mich. 1886) | 16 | A certificate purporting to be that of the clerk of the county in which a deposition is taken, and of the courts thereof under the seal of the court, but signed "J. E. W., Deputy Clerk," is in effect the certificate of the clerk by such deputy and is a sufficient authentication under How.Ann.St. S 7475. | The certificate attached to the depositions purported to be the certificate of Robert B. Foote, clerk of Erie county, New York, and of the courts thereof being courts of record. It was in due form and substance, and was signed by J.E. Ewell, deputy-clerk, and was under the seal of the court. In effect, it was the certificate of Robert B. Foote, clerk, by J.E. Ewell, deputy-clerk. We think it was a sufficient authentication under the statute. | Is a certificate purporting to be that of the clerk of the county in which a deposition is taken in effect the certificate of the clerk by such deputy? |
| 10486 | Eisenmeyer v. Sauter, 77 Ill. 515, 515, 1875 WL 8352, at *1 (Ill. 1875) | 3 | A deposition taken before a master in chancery, and reported by him, but not signed by the witness, should, on motion, be stricken from the record. | The opinion of the court states the facts of the case. The deposition of one of the arbitrators, taken before the master and reported by him, was not signed by the witness. The court below reformed the award, and decreed payment of the sum found to be due the complainant on the same as corrected, from which decree the defendant appealed. | "Should a deposition taken before a master in chancery, and reported by him, but not signed by the witness, upon motion be stricken from the record?" |
| 10493 | Crenshaw v. Jackson, 6 Ga. 509, 509, 1849 WL 1609, at *1 (Ga. 1849) | 6 | Upon the transfer of a note payable to bearer, by delivery, the transferor ceases to be a party to it, and is not, generally, responsible thereon to the transferee, or any subsequent holder; but if he undertake to guarantee the payment of the note, he will be liable to the transferee on that special contract, and it is a proper matter of set-off. | Upon the transfer of a note payable to bearer, by delivery, the transferer ceases to be a party to it, and is not, generally, responsible thereon to the transferee, or any subsequent holder; but if he undertake to guarantee the payment of the note, he will be liable to the transferee on that special contract, and it is a proper matter of set-off. | Does the person making the transfer ceases to be a party when a promissory note payable to bearer is transferred by mere delivery? |
| 10507 | Williams v. Richardson, 12 S.C. 584 (S.C. 1880) | 1 | Where commissioners to take testimony certify, in their return, that under the instructions contained in the commission, they have qualified each other and also the witness, whose signature is appended to his deposition, the commission is competent testimony, although the form of the oath taken by the commissioners and witness, and their signatures thereto, and the jurat, are omitted. | Where commissioners to take testimony certify, in their return, that under the instructions contained in the commission, they have qualified each other and also the witness, whose signature is appended to his deposition, the commission is competent testimony, although the form of the oath taken by the commissioners and witness, and their signatures thereto, and the jurat, are omitted. | "Should commissioners to take testimony certify, in their return, that they have qualified each other and also the witness?" |
| 10511 | Tompkins v. Williams, 19 Ga. 569, 569, 1856 WL 1842, at *1 (Ga. 1856) | 1 | A deposition is not excluded by a discrepancy as to the witness' name between the interrogatories and the deposition, if the opposite party knew what person was intended to be examined, and directed his cross-examination accordingly. | A discrepancy between the name of the witness in the interrogatories and to the depositions, will not exclude the testimony, it being conceded that the opposite party knew what person was intended to be examined, and directed his cross-questions accordingly. | Is a deposition not excluded by a discrepancy as to the witness' name between the interrogatories and the deposition? |
| 10530 | McCulloh v. Dashiell's Adm'r, 1 H. & G. 96, 106 (1827) | 1 | Creditors of a partnership can only look to the surplus of the separate estate of the members of the firm after the payment of the separate debts, and separate creditors can only seek indemnity from the surplus of the joint fund after the satisfaction of the joint creditors. | We are, therefore, disposed to adopt the ancient rule as more consonant to equity and justice, that the joint creditors can only look to the surplus, after the payment of the separate debts; and on the other hand, that the separate creditors can only seek indemnity from the surplus of the joint fund after the satisfaction of the joint creditors. | Can the joint creditors of a partnership look to the surplus of the separate estates of the partners after payment of the separate debts? |
| 10531 | Richardson v. Adler, Goldman & Co., 46 Ark. 43, 48 (1885) | 4 | The members of an insolvent firm are not entitled to the exemptions allowed by law, out of the partnership property, after it has been seized to satisfy the demands of the creditors of the firm. | The members of an insolvent firm are not entitled to the exemptions allowed by law, out of the partnership property after it has been seized to satisfy the demands of creditors of the firm. | Is a member of an insolvent firm entitled to exemptions out of the partnership property? |
| 10536 | Fisk v. Tank, 12 Wis. 276, 277, 1860 WL 2543, at *1 (Wis. 1860) | 25 | A deposition should not be suppressed or excluded for want of a venue or statement of the place where it was taken, either in its caption or in the certificate of the commissioner before whom it was taken. | A deposition should not be suppressed or excluded for want of a venue, or statement of the place where it was taken, either in the caption or in the certificate of the commissioner before whom it was taken. | Should a deposition not be suppressed or excluded for want of a venue or statement of the place where it was taken? |

| 10537 | Glidden v. Moore, 15 N.W. 326, 326 (Neb. 1883) | 2 | A certificate of a notary public to a deposition which omits the "venue" at the head thereof is not thereby invalidated when the same (state and county) appears in the body of the certificate. | The objection to this certificate is technical. It is strange that a notary should neglect or fail to place the common and perfunctory words called the venue at the head of the certificate; but it has, we think, always been held sufficient, where the venue appeared in the body of the certificate, as it does here. | "Is a certificate of a notary public to a deposition which omits the ""venue"" at the head thereof not thereby invalidated when the same state and county appears in the body of the certificate?" |
|---|---|---|---|---|---|
| 10545 | Houston Transp. Co. v. Paine, 193 S.W. 188, 190 (Tex.Civ.App. 1917) | 1 | Tender of witness fees is necessary to show diligence in an application for a second continuance to secure attendance of such witness. | A tender of witness fees is necessary in order to show diligence upon a second application for continuance. | Is the tender of witness fees necessary to show diligence in an application for a second continuance to secure attendance of such witness? |
| 10552 | State ex rel. Vill. of Leipsic v. Moenter, 99 Ohio St. 110, 124 (1918) | 4 | In a general sense a tax is an "assessment" and an assessment is a "tax," but there is a well-recognized distinction between them, an assessment being confined to local imposition upon property to pay cost of public improvement in its immediate vicinity, and levied with reference to special benefits to property assessed. | In a general sense a tax is an 'assessment' and an assessment is a 'tax,' but there is a well-recognized distinction between them, an assessment being confined to local imposition upon property to pay cost of public improvement in its immediate vicinity, and levied with reference to special benefits to the property assessed. | "Is there a distinction between a ""tax"" and an ""assessment""?" |
| 10593 | Ex parte Beaver, 271 F. 493, 494 (N.D. Ohio 1921) | 7 | A minor of the authorized enlistment age cannot, after having enlisted, obtain his release from military service by a writ of habeas corpus; but nonconsenting parents may by timely application secure his release. | A minor of the authorized enlistment age cannot, after having enlisted, obtain his release from military service by writ of habeas corpus. If he is within the age requiring the consent of parents or guardian, and enlists without such consent, the parents or guardian may, by a timely application, obtain his release. | Does the ability to obtain release from enlistment for a minor exist only in the absence of the consent of the parents to the enlistment? |
| 10616 | Olcott v. Fond du Lac Cty., 83 U.S. 678, 689 (1872) | 10 | The taxing power of a State extends no farther than to raise money for public use, as distinguished from a private use. | It was asserted (what nobody doubts), that the taxing power of a State extends no farther than to raise money for a public use, as distinguished from private, or to accomplish some end public in its nature, and it was decided that building a railroad, if it be constructed and owned by a corporation, though built by authority of the State, is not a matter in which the public has any interest, of such a nature as to warrant taxation in its aid. | Can the taxing power of a State extend farther than to raise money for public use? |
| 10628 | Loser v. Board of Managers of Soldiers' Home, 52 Wis. 956, 956, 957, 92 Mich. 633, 634, 635, 638 (Mich. 1892) | 2 | Rule 14 adopted by the board of management of the soldiers' home, providing: 1. Every pensioner residing at the home shall turn over to the commander, on receipt of his quarterly pension check, any sum in excess of five dollars per month, the same to be held subject to the disposal of the board. 3. In cases where improper use is made of the allowance of five dollars per month leading to misconduct, the allowance shall be suspended. 5. It shall be competent to admit any ex-soldier, etc., now eligible under the law, who may be willing to pay into the home treasury all pension received by him over five dollars per month,-does not constitute an assignment or transfer of a pension, within the meaning of Act Cong. Feb. 28, 1883, S 2, 22 Stat. 432, which makes void any "pledge, mortgage, sale, assignment, or transfer of any right, claim, or interest in any pension." | (1) Every pensioner residing in this home, and accepting its benefits, must turn over to the commandant, upon receipt of his quarterly pension check, any sum in excess of five dollars per month, the same to be held subject to the disposal of the board of managers. Any infringement of this rule on the part of an inmate will be followed by his discharge from the home....(3) In cases where improper use is made of the allowance of $5 per month herein provided for, leading to misconduct or infractions of the rules of the home, the allowance so granted shall be suspended....(5) It shall be competent for the commandant to admit any ex soldier, sailor, or marine, now eligible under the law, who may be willing to pay into the home treasury all pension received by him over five dollars per month....It is insisted that this rule is in violation of Act No. 152, Laws 1885, of this state, establishing the home, and of an act of the United States congress, approved February 28, 1883, making void any pledge, mortgage, sale, assignment, or transfer of any right, claim, or interest in any pension....The rule does not constitute an assignment or transfer of the pension, within the meaning of the act of congress above mentioned.... | Is the assignment of a pension interest void? |
| 10644 | Crosby v. Roub, 16 Wis. 616, 616–17, 1863 WL 2321, at *1 (Wis. 1863) | 1 | An indorsement of a note may be on another paper attached to and made a part of the note, called an "allonge"; and it is not essential that there should have been a physical impossibility of writing the indorsement on the note, but it may be on another paper attached to the note, whenever necessity or the convenience of the parties requires it. | An indorsement or transfer of a promissory note may be on another paper attached to and made a part of the note, called an allonge; and it is not essential to a *617 transfer of a note by this method that there should have been a physical impossibility of writing the indorsement or transfer on the note itself, but it may be on another paper attached to the note whenever necessity or the convenience of the parties requires it. | Can an indorsement or transfer of a promissory note be on another paper attached to and made a part of the note? |

| | | | | | |
|---|---|---|---|---|---|
| 10645 | Zuendt v. Doerner, 73 S.W. 873, 875 (Mo.App. 1903) | 1 | The surrender and cancellation of an old note is sufficient consideration for the execution of a new one given in lieu thereof. | The surrender and cancellation of the old note was a good and sufficient consideration for the giving of the new one in lieu thereof. | Is the surrender and cancellation of the old note a good and sufficient consideration for the giving of new ones in lieu thereof? |
| 10646 | Dunnington v. Bank of Crewe, 144 Va. 36 (Va. 1926) | 2 | The negotiable instruments law (Code of 1919, secs. 5563-5757) was enacted to secure uniformity and solve doubts, and it will be held to solve all questions with reference to negotiable paper which it undertakes to settle. | The negotiable instruments law (Code of 1919, secs. 5563-5757) was enacted to secure uniformity and solve doubts, and it will be held to solve all questions with reference to negotiable paper which it undertakes to settle. | Was Negotiable Instruments Law enacted to secure uniformity in law? |
| 10647 | Phelps v. Sargent, 69 Minn. 118 (1919) | 3 | A general guaranty by the payee of the payment of a negotiable note, written thereon, passes with the assignment and delivery of the note to the holder thereof. | 860, that a general guaranty of the payment of a negotiable promissory note written thereon passed with the assignment and delivery of the note to the holder. | Can a general guaranty of payment of a negotiable promissory note pass with the assignment and delivery of the note to the holder? |
| 10653 | Ivy v. Walker, 58 Miss. 253, 259, 1880 WL 6900, at *4 (Miss. 1880) | 1 | An action at law cannot be maintained by one partner against his copartner, to recover moneys alleged to be due him on account of partnership transactions, where no settlement of the accounts and business has been had. | It is well settled that no action at law can be maintained by one partner against his associate for money arising out of and connected with partnership business, until there has been a settlement of the partnership accounts….A debt due by the firm to one of the partners is a partnership liability, and must be paid, like other debts, before a division of the surplus among the partners can be forced by judicial proceedings. The remedy of a partner to reach this surplus where no settlement of the accounts has taken place, is by bill in equity. | Can an action at law be maintained by one partner against his associate for money arising out of and connected with partnership business before there had been a settlement of the partnership accounts? |
| 10683 | Monette Road Imp. Dist. v. Dudley, 222 S.W. 59, 63 (Ark. 1920) | 6 | Under Road Laws 1919, vol. 1, p. 105, creating the Monette Road Improvement District, as amended at January, 1920, special session, the functions of the board of assessors in assessing benefits, and of the board of commissioners in adjusting them, on the complaint of the property owners, is not judicial in the ordinary sense, but is in the nature of a legislative power. | The functions of the board of assessors in assessing benefits and the board of commissioners in adjusting them on complaint of the property owners is not judicial in the ordinary sense, but it is in the nature of a legislative power. | Are the assessments by the commissioners judicial in nature? |
| 10684 | Aldrich v. Collins, 52 N.W. 854, 855-56 (S.D. 1892) | 5 | Under Comp. Laws, S 772, town supervisors have charge of such affairs "as are not by law committed to other town officers." Section 1272 provides for the assessment of a road tax, whose collection and expenditure, under section 1266, are under the control of road supervisors. Const. art. 10, S 2, provides that funds raised by "taxation, loan, or assessment for one purpose shall not be diverted to any other." Held, that the supervisors have no authority to appropriate the ordinary town funds to the improvement of highways. | "The supervisors shall have charge of such affairs of the town as are not by law committed to other town officers, and they shall have power to draw orders on the town treasurer for the disbursement of such sums as may be necessary for the purpose of defraying the incidental expenses of the town, and for all moneys raised by the town to be disbursed for any other purpose."…And it cannot be seriously contended that the supervisors can divert the funds raised and collected for incidental town expenses to the improvement of highways, as funds raised "by taxation, loan, or assessment for one purpose shall *856 not be diverted to any other."…No power seems to be conferred upon the electors to appropriate money for highways, except the same is voted to be raised by them by taxation. | Can the funds raised by taxation for one purpose diverted for another purpose? |
| 10690 | Mechanics' Bank of Alexandria v. Bank of Columbia, 18 U.S. 326, 337, 1820 WL 2128, at *7 (U.S.,1820) | 6 | The liability of the principal depends on whether the act of his agent was done in the exercise and within the limits of the powers delegated. The profession on their face that an agent's acts were in the exercise of his agency does not give them their validity. | It is by no means true, as was contended in argument, that the acts of agents derive their validity from professing, on the face of them, to have been done in the exercise of their agency.  But in the diversified exercise of the duties of a general agent, the liability of the principal depends upon the facts, 1. That the act was done in the exercise, and, 2. Within the limits of the powers delegated. | Does the liability of the principal depend on whether the act was done in the exercise of powers delegated? |
| 10691 | Kasson v. Noltner, 43 Wis. 646, 650 (1878) | 6 | A principal is responsible for the act of his agent when he has either given the agent authority to do the act, or justified the party dealing with the agent in believing that the latter had such authority. | The rule of law which controls the decision of this case is, that "a principal is responsible, either when he has given to an agent sufficient authority, or when he justifies a party dealing with his agent in believing that he has given to the agent his authority." | Is a principal responsible for an agents act if he justified the party dealing with the agent in believing that he has given the agent authority? |

| # | Case | No. | Rule | Full Text | Question |
|---|------|-----|------|-----------|----------|
| 10711 | Norfolk & W. Ry. Co. v. Gee, 52 S.E. 572, 572, 573, 104 Va. 806, 807–08, 810 (Va. 1906) | 1 | In an action against a railroad company for negligently frightening plaintiff's horse at a public crossing, it is not sufficient to charge that the defendant negligently placed a hand-car with long projecting arms at or so near the crossing as to render it unsafe for the travelling public in vehicles drawn by horses to cross on the highway, and that, in consequence thereof, the plaintiff's horse took fright and caused the injury declared on in the declaration. Nor is a count good which makes similar charges and adds that defendant's servants, negligently hung wearing apparel and bright tin buckets on the arms of the hand-car, and that these objects caused the plaintiff's horse to take fright. In each instance it was necessary to aver that the hand-car was, under the circumstances stated, an object of such unusual or extraordinary appearance as to have a natural tendency to frighten horses of ordinary gentleness and training, although that was a question to be determined by the jury from all the circumstances of the case, under proper instructions from the court. | This action was instituted by the plaintiff to recover damages for injuries, caused by the alleged negligence of the railway company, received at a public crossing near Burkeville. The second count of the declaration avers that on the day of the injury the plaintiff was driving in a one-horse buggy along *808 the public road where it crosses the track of the railway company, as she had the right to do, but that "the defendant company had so carelessly and negligently performed the duties it owed to the traveler on the said highway at the crossing, and that the said defendant company, or its servants and agents, had so needlessly, carelessly, and negligently placed a car, with long arms projecting above the same, commonly known as a 'hand car,' at or so near said crossing as to render the said crossing unsafe for the traveling public along the said highway at said crossing, when in vehicles to which horses were attached, of all of which the defendant had notice." It further avers that by reason of said negligence her horse took fright at the hand car, and in shying to avoid the same, without fault on her part, the buggy was broken to pieces, and the plaintiff was thrown out with great violence, and the injuries complained of (which are set forth) inflicted. The objection made to the declaration is, that the averments of fact in the count do not show that the hand car was an object so unusual or extraordinary as to have a natural tendency to frighten horses of ordinary gentleness and training...... While the question of whether or not the object is of that character is largely for the determination of the jury, from its nature, situation, and other like circumstances, under proper instructions of the court (Elliott on Roads, § 825; Piollet v. Simmers, supra), a count is demurrable which fails to show that the object which it is averred frightened the horse was by its nature calculated to frighten horses of ordinary gentleness....The | "Can liability be subjective, if one uses apparatus for a reasonable time in a highway and if it frightens the horse?" |
| 10721 | Waldron v. Harring, 28 Mich. 493, 494–95 (1874) | 1 | Under Comp.Laws S 5775, providing that the assignee of any chosen in action not negotiable may sue and recover on it in his own name, subject to any equities arising before notice of the assignment, the holder may sue in his own name, but an allegation of the transfer of the cause of action would be required. | By a statute passed in 1863 (Comp. L., § 5775), it was provided that the assignee of any chose in action not negotiable might sue and recover upon it in his own name, subject to any equities arising before notice of the assignment.

By an act taking effect in July, 1869, subsequent to the date of this guarantee (Comp. L., § 1564), it was provided that all guaranties of payment or collection of negotiable paper should themselves be negotiable and pass with such paper, but subject to any equities between the guarantor and the person to whom the guaranty was made, and that the holder might sue in his own name. The only difference between these statutes seem to be in dispensing with the *495 necessity of allegations concerning the assignment, which are necessary in tracing title to paper not negotiable; whereas, in suits on negotiable paper the title may be averred more briefly, and in such a case as this by a simple averment of such a delivery as would make one the legal bearer. | Can the assignee of a chose in action sue and recover upon it in his own name? |
| 10739 | Anderson v. Stayton State Bank, 82 Or. 357 (1916) | 6 | A joint and several contract is with each promisor, and also with all jointly, with result that they are all liable jointly, and each individual is liable upon his separate obligation, and that they may be sued jointly or severally as promisee elects. | A joint and several contract is with each promisor and also with all jointly, with the result that they are all liable together on the joint obligation, and each individual is liable upon his separate obligation, and they may be sued jointly or severally as the promisee may elect. | Can parties be sued jointly or severally when they are jointly liable? |
| 10740 | Foren v. Dealey, 4 Or. 92, 95, 1870 WL 736, at *3 (Or. 1870) | 2 | To justify striking out an answer as false and, therefore, sham, it must be obviously false, or it must be shown to be false and in bad faith, and court should not proceed on mere probabilities. | When an answer is objected to as false, and therefore sham, the court should not proceed upon probabilities; but to justify striking out an answer on this ground, it must be obviously false, or it must be shown to be false and in bad faith. | "To justify striking out an answer as sham, should it be obviously false?" |
| 10797 | Heffron v. Hanaford, 40 Mich. 305, 307 (1879) | 3 | A partner's declarations will not bind his associates in matters foreign to the partnership, nor will his mere admission or declaration bring a transaction within the scope of the partnership business. | A partner's declarations may bind his associates in partnership matters, but not in concerns foreign to the partnership; and he cannot by his mere admission or declaration bring a transaction within the scope of the business when upon the facts in proof it appears to have no connection. | Does a partners declaration about concerns foreign to the partnership bind his associates? |

| | | | | | |
|---|---|---|---|---|---|
| 10798 | Barnard v. Lapeer & P.H. Plank Road Co., 6 Mich. 274, 278 (1859) | 5 | Knowledge and assent to bind a partner as to contract of a copartner must be established by evidence affirmatively showing it, or from which it may be clearly inferred. | And the knowledge and assent required to bind the copartner must be established by evidence affirmatively showing it, or from which it may be clearly inferred. | Is the knowledge and assent required to bind the copartner needed to be established by evidence affirmatively showing it? |
| 10825 | Illinois Publishing & Printing Co. v. Industrial Commission, 132 N.E. 511, 513–14, 299 Ill. 189, 196 (Ill. 1921) | 2 | Workmen's Compensation Act, S 3, S.H.A. ch. 48, S 139, providing that its terms shall apply to all employers and their employees engaged in any of the enterprises or businesses declared extrahazardous, is not separable, but general, and includes all the employees of an employer engaged in an extrahazardous business. | This Compulsory Compensation Act is general in its application and embraces all employers and their employees engaged in businesses or enterprises declared by the statute to be extrahazardous...The language of the act is clear and is not open to construction. It means just what it says-the provisions of this act shall apply automatically and without election to all employers and their employees engaged in enterprises or businesses declared to be extrahazardous **514 -and the court has no right to read into the statute words that are not found therein, either by express inclusion or by fair implication. | Do the provisions of the Compensation Act apply automatically and without election to all employers and their employees engaged in enterprises or businesses declared to be extrahazardous? |
| 10883 | Haavik v. Alaska Packers' Ass'n, 263 U.S. 510, 514 (1924) | 5 | Unless restrained by constitutional provision, the sovereign has power to tax all persons and property actually within its jurisdiction and enjoying the benefit and the protection of its laws. | Unless restrained by constitutional provision, the sovereign has power to tax all persons and property actually within its jurisdiction and enjoying the benefit and protection of its laws. | What can restrain a sovereigns power to tax? |
| 10924 | Mattingly's Ex'r v. Brents, 155 Ky. 570, 159 S.W. 1157, 1160 (1913) | 1 | A "lease" is a conveyance of an estate in realty and divests the owner for a given time of a certain estate therein leaving in him the reversion. | A lease is but a conveyance of an estate in realty. It divests the owner, for a given time, of a certain estate, in the realty, leaving in him the reversion. | Does a lease divest the owner of a certain estate for a given time leaving him in the reversion? |
| 10989 | S. Ry. Co. v. Kay, 62 S.C. 28, 39 S.E. 785, 788 (1901) | 1 | The board of county commissioners of O. county have the power, under Const. art. 10, and Act 1896, 22 St. at Large, p. 238, authorizing county commissioners to levy annually a sum not exceeding one mill for road purposes, to levy such taxes, which was not taken away by the appropriation act of 1899, authorizing a levy not exceeding one-half of one mill for road purposes for such county. | We will next consider whether the levy was authorized by act of 1896 (22 St. at Large, p. 238, § 26). His honor the circuit judge ruled that section 26 of the act of 1896 authorized the board of county commissioners to levy annually a sum not exceeding one mill in the respective counties, and that the general assembly, by the act of 1899, itself levied a tax of one mill for road purposes; that the act of 1899 necessarily had the effect of repealing and limiting the powers of the board of county commissioners. | Can a board of county commissioners levy taxes ? |
| 10992 | Wildman v. Rider, 23 Conn. 172, 176 (Conn. 1854) | 3 | It is no valid objection to a motion to erase a cause from the docket of a court that such motion is made by the party who brought the cause to such court. | It is finally said, that the motion, to erase the case from the docket of the superior court, was made by the party that carried the case there. But this can make no difference. | Is it a no valid objection to a motion to erase a cause from the docket of a court that such motion is made by the party who brought the cause to such court? |
| 10998 | Belliveau v. Bozoian, 46 R.I. 83, 85 (R.I. 1924) | 3 | A pedestrian using highway, and exercising ordinary care for his own safety, may assume until he has knowledge or notice to contrary, that drivers of automobiles will exercise reasonable care to avoid injuring him, and that they will observe law. | A pedestrian using the public highways, and exercising ordinary care for his own safety, may assume, until he has knowledge or notice to the contrary, that the drivers of automobiles will exercise reasonable care to avoid injuring him, and that they will observe the law. | Can a person walking on a street assume vehicles will be driven safely? |
| 11001 | Gulf, C. & S.F. Ry. Co. v. Brown, 75 S.W. 807, 808 (Tex. App. 1903) | 2 | A second application for a continuance, not made in strict compliance with the statute, is addressed to the sound discretion of the court. | Furthermore, being a second application, and not in strict compliance with the statute, it was addressed to the sound discretion of the court, and we are of opinion that such discretion was not abused. | "Can a second application for a continuance, not made in strict compliance with the statute, be addressed to the sound discretion of the court?" |
| 11002 | Whitbeck v. Minch, 48 Ohio St. 210, 210–11, 31 N.E. 743, 743–44 (1891) | 1 | Since Rev.St. S 5848 (See Gen.Code, S 12075), provides for enjoining the assessment or collection of illegal taxes and for the recovery of such taxes paid, to entitle one to recover such taxes after payment it must appear that the treasurer was about to levy on his property; payment with a simple protest against the validity of the assessment, and notice to the treasurer that action would be brought to recover it back, not being sufficient. | The section provides that 'courts of common pleas and superior courts shall have jurisdiction to enjoin the illegal levy of taxes and assessments, or the collection of either, and of actions to recover back such taxes or assessments as have been collected, without regard to the amount thereof,' etc. | Can an alleged illegal assessment be recovered unless involuntarily paid? |

| | | | | | |
|---|---|---|---|---|---|
| 11004 | Overton v. Hardin, 46 Tenn. 375, 381 (1869) | 2 | An indorser for value, has no remedy against the maker for costs incurred by him in his own defense, but an accommodation indorser may recover from the maker the cost incurred in resisting, in good faith and upon reasonable grounds, a recovery against him upon his indorsement. | An indorser for value, has no remedy against the maker, for costs incurred by him in his own defense. An accommodation indorser, however, may recover from the maker, the costs incurred in resisting, in good faith, and upon reasonable grounds, a recovery against him upon his indorsement: | Can an accommodation indorser recover the cost incurred upon his indorsement? |
| 11005 | Schmuck v. Hartman, 222 Pa. 190, 195 (1908) | 1 | Liability to pay taxes arises from no contractual relation between the taxable and the taxing power, and cannot be enforced by common-law proceedings, unless the statute so provides. | Liability to pay taxes arises from no contractual relation between the taxable and the taxing power, and cannot be enforced by common-law proceedings unless a statute so provides. | Does liability to pay taxes arise from contractual relation? |
| 11027 | United States v. Teller, 107 U.S. 64, 67, 2 S. Ct. 39, 43, 27 L. Ed. 352 (1883) | 1 | Pensioners of the United States have no vested legal rights to their pensions, and it was competent for congress by Act July 25, 1882, c. 349, S 5, 38 U.S.C.A. S 29, to provide that no person receiving a pension under a special act should receive in addition a pension under the general law. | The right of the relator to double pensions, if he ever had such right, has been effectually cut off by section 5 of the act of July 25, 1882, which declares 'that no person who is now receiving **43 or shall hereafter receive a pension under a special act shall be entitled to receive, in addition thereto, a pension under the general law, unless the special act expressly states that the pension granted thereby is in addition to the pension which said person is entitled to receive under the general law.' * | Can a person receiving a pension under a special act receive an additional pension under the general law? |
| 11056 | State v. Wooderd, 20 Iowa 541, 547 (1866) | 6 | The making or alteration of any writing, with a fraudulent intent, whereby another may be prejudiced, is forgery; it is not essential that any person should be actually injured. | The making or alteration of any writing with a fraudulent intent, whereby another may be prejudiced, is forgery. It is not essential that any person should be actually injured. | "In forgery, is it essential that the person must be actually injured?" |
| 11069 | State v. Mitton, 37 Mont. 366, 96 P. 926, 929 (1908) | 5 | Changing a writing from a nonnegotiable instrument into a negotiable note is such a material alteration as constitutes forgery, where done with a criminal intent. | Upon principle we hold that the changing of a writing from a nonnegotiable instrument into a negotiable promissory note is such a material alteration of the original instrument that, if done with the criminal intent, it will constitute forgery. | Is a change of a writing from a non-negotiable instrument into a negotiable instrument a material alteration of the original instrument? |
| 11168 | Dade Coal Co. v. Haslett, 83 Ga. 549, 549 (Ga. 1889) | 5 | At common law, one convicted of treason forfeited all rights of citizenship and was deemed to be civiliter mortuus. | We are aware that at the common law, when one was convicted of felony or treason, he forfeited all his rights of citizenship, and that he was deemed to be civiliter mortuus; but, as these consequences do not follow in this state by conviction of felony, it would seem that he might maintain an action for the injuries he received, even though at the time of receiving the same he was a felon, and in confinement. | Will a person convicted of treason forfeit all his rights of citizenship and be deemed to be civiliter mortuus? |
| 11208 | High v. Batte, 18 Tenn. 335, 337 (1837) | 2 | A plea of purchase for valuable consideration without notice, must aver that the consideration money was bona fide and truly paid; a recital of that fact in the deed is not sufficient. | Among many other requisites, not now necessary to be noticed, in order to constitute a good plea, the averment that the consideration money was bona fide and truly paid is absolutely necessary, and that the recital in the deed cannot be received in lieu thereof is well settled | "Is the averment that the consideration money was bona fide and truly paid, necessary to constitute a good plea?" |
| 11227 | Streine v. Comm'rs of Campbell Courthouse Dist., 149 Ky. 641, 149 S.W. 928, 931 (1912) | 1 | The allegation of the petition that the courthouse district commission was indebted in a certain sum for an indebtedness incurred during a previous year beyond the income of the year, and without the assent of two-thirds of the voters of the district, voting at an election held for that purpose, so that their payment thereof out of the levy for a subsequent year was a diversion, is simply a legal conclusion, instead of the necessary allegation of facts. | We have repeatedly held that it is necessary in such a case to allege facts showing that the municipality had incurred an indebtedness in excess of the revenue and income provided for the year without the assent of two-thirds of the voters thereof voting at an election to be held for that purpose. | Should facts be alleged to show municipality indebtedness? |
| 11235 | Gregg v. Laird, 121 Md. 1, 87 A. 1111, 1113–14 (1913) | 2 | The purpose of Acts 1910, c. 180, creating the Public Service Commission, and giving it the power to regulate the prices of public service corporations, was to place all public service corporations under the control of the commission, but Acts 1892, c. 387, fixing telephone rates, as amended by Acts 1894, c. 207, should remain unimpaired and in force until the commission acted. | Bearing this rule in mind, and looking to the manifest intent of the Legislature, it is perfectly apparent that the purpose was to place all corporations handling public utilities under the supervision and control of the Public Service Commission, and with power in the commission to regulate the rates charged for service, but that until the commission did so regulate the charge, any act or acts in force respecting them should remain unimpaired. | Should all public utilities be placed under the supervision and control of the Public Service Commission? |

| | | | | | |
|---|---|---|---|---|---|
| 11253 | Stoehr v. Natatorium Co., 34 Idaho 217, 200 P. 132, 133 (1921) | 3 | Dedication of the property of a corporation to public use is never presumed without evidence of unequivocal intention. | "To hold that property has been dedicated to a public use is 'not a trivial thing' (San Francisco v. Grote, 120 Cal. 60, 41 L. R. A. 335, 65 Am. St. Rep. 155, 52 Pac. 127), and such dedication is never presumed 'without evidence of unequivocal intention' (Niles v. Los Angeles, 125 Cal. 572, 58 Pac. 190)." | Is the dedication of the property of a corporation to public use presumed without evidence of unequivocal intention? |
| 11264 | Kaley v. Musgrave, 26 Ill. App. 509, 512 (Ill. App. Ct. 1888) | 1 | A plaintiff must have a right of action against defendant at the time he commences suit to entitle him to recover. | It would be superfluous to cite authorities in support of the proposition that a plaintiff must have a right of action against defendants at the time he commences suit, to entitle him to recover. | Should a plaintiff have a right of action against defendant at the time he commences suit to entitle him to recover? |
| 11276 | Kleinwort v. Klingender, 14 La. Ann. 96, 96 (1859) | 1 | Mere insolvency is not sufficient to render a debt due which by its terms is payable at a future day. | Mere insolvency is not sufficient to render a debt due, which, by its terms, is payable at a future day. | Is insolvency sufficient to render a debt due which by its terms is payable at a future day? |
| 11279 | People ex rel. Vanderburg v. Brady, 275 Ill. 261, 262, 114 N.E. 25, 26 (1916) | 2 | "Clerk of court" is officer of court, belonging to judicial department of state, who has charge of clerical part of its business and keeps its records and seal, issues process, etc. | The Constitution provides for the election of a clerk of the Supreme Court. A clerk of a court is an officer of the court who has charge of the clerical part of its business and keeps its records and seal, issues process, enters judgments and orders, makes certified copies from the record, etc. Such officer manifestly belongs to the judicial department of the state. | Is the clerk of a court in charge of the clerical part of the courts business? |
| 11309 | City of Philippi v. Tygarts Valley Water Co., 99 W. Va. 473, 478 (W. Va. 1925) | 5 | Public service corporation must fulfill obligations to public directly or impliedly arising from franchise as long as it maintains such franchise. | As long as a public service corporation maintains its franchise it must fulfill the obligations to the public directly or impliedly arising from the same. | Should a public corporation or utility fulfill the obligation to the public arising from a franchise it maintains? |
| 11331 | Goldberger v. Gallagher, 11 Misc. 448, 448, 32 N.Y.S. 1143, 1143 (City Ct. 1895) | 2 | An action may be abandoned and discontinued by express agreement of the parties, and entry of a formal order of discontinuance is not necessary. | In fact, the testimony of even defendant shows that the action referred to was abandoned and discontinued by express agreement of the parties thereto. A formal order of discontinuance, entered and filed in the court where said action was pending, while advisable, was not necessary. | "When an action is abandoned and discontinued by express agreement of the parties, is it necessary to have an entry of a formal order of discontinuance by court?" |
| 11339 | Meyers v. Ackerlund, 224 Ill. App. 417, 418 (Ill. App. Ct. 1922) | 5 | If a plaintiff is present and does not want to proceed with the prosecution of the case, he must elect either to suffer a nonsuit or the case should go to the jury. | If a plaintiff is present and does not wish to proceed with the prosecution of a case, he must elect either to suffer a nonsuit or the case should go to the jury. | "If a plaintiff does not want to proceed with the prosecution of the case, should he suffer a nonsuit or should the case go to the jury?" |
| 11429 | City of Austin v. Nalle, 102 Tex. 536, 537, 538 (Tex. 1909) | 1 | "Eminent domain" is the sovereign power in the state to take private property for public use, providing first a just compensation therefor. | Eminent domain is defined to be: 'The sovereign power vested in the state to take private property for the public use, providing first a just compensation therefor. | "Does the exercise of the power of ""eminent domain"" take property?" |
| 11441 | Texas Utilities Co. v. Clark, 269 S.W. 903, 905 (Tex. Civ. App. 1925) | 5 | Action of court in granting leave to file trial amendment, or in refusing continuance on account thereof, will be reviewed on appeal only if abuse of discretion is shown. | And the granting of leave to file a trial amendment and the granting or refusing a continuance on account thereof are matters within the discretion of the trial court and will be reviewed by an appellate court only, if it is made to appear by the complaining party that such discretion has been abused. | Is the refusal of continuance on account of trial amendment discretionary with a court? |

| | | | | | |
|---|---|---|---|---|---|
| 11443 | Brown v. Abilene Nat. Bank, 70 Tex. 750, 751, 8 S.W. 599, 600 (1888) | 1 | Under Rev.St. art. 1277, providing that an applicant for continuance for want of testimony shall state "that he has used due diligence to procure the same, stating such diligence," such application, which does not show when the subpoenas for the absent witnesses were placed in the hands of an officer for service, or when they were served, is properly refused. | The application for continuance was based on the absence of witnesses, and it showed that subpoenas for them were obtained by the intervenor on the day that he filed his pleadings in intervention, but it did not show when they were placed in the hands of an officer for service. It showed that the witnesses had been served, but did not state when they were summoned. When a first application for a continuance is sought by one entitled to ask it for the want of testimony, the statute requires that such applicant shall state 'that he has used due diligence to procure the same, stating such diligence.' | "Does a failure by an applicant for continuance for want of testimony to state ""that he has used due diligence to procure the same, stating such diligence,"" leave the matter of continuance to the discretion of the court?" |
| 11447 | Rogowski v. Brill, 131 N.Y.S. 589, 589 (App. Term 1911) | 2 | In order for a pre-existing debt to constitute consideration for an indorsement of a note, the holder must show that he has parted with something, that he has given up the original debt, or the right to sue on it. | It further appears that the original note, of which the note in suit was a renewal, was given for a pre-existing debt. In order to constitute consideration for such a note, the holder must show that he has parted with something; that he has given up the original debt, or the right to sue upon it. " | When does a pre-existing debt constitute a consideration? |
| 11455 | Fulton v. Nat'l Aniline & Chem. Co., 214 A.D. 846, 846, 211 N.Y.S. 769, 770 (App. Div. 1925) | 3 | A liberal construction should be placed on Civil Practice Act, SS 288, 289, permitting examination of adverse party or his assignor. | This court has consistently held that a liberal construction should be placed on the provisions of the Civil Practice Act, permitting the examination of an adverse party or his assignor. | Should a liberal construction be placed permitting examination of an adverse party or his assignor? |
| 11468 | Bragdon v. Kellogg, 118 Me. 42, 105 A. 433, 434 (1919) | 6 | One failing to obey the mandate of Rev.St. c. 26, S 2, that persons with a team approaching to meet on a way shall seasonably turn to the right of the middle of the traveled part, is prima facie guilty of negligence, and has the burden of excusing his presence on the wrong side. | The law of the road was established many years ago, before electric roads or automobiles were heard of yet it provided that even slow–moving vehicles like teams, upon approaching to meet on a way should "seasonably turn to the right of the middle of the traveled part of it, so far that they can pass each other without interference." R. S. c. 26, § 2. As the word "team" now includes an automobile, this statute is applicable now to this class of vehicles. This statute is mandatory when it says travelers must "seasonably turn to the right." It means that they must turn in season to prevent a collision, and the one who fails to obey this mandate is prima facie guilty of negligence, and must sustain the burden of excusing his presence upon the wrong side of the road. | What does the phrase seasonably turn mean under the statute? |
| 11471 | Stone v. Jarbalo State Bank of Jarbalo, 107 Kan. 332, 190 P. 1094, 1094 (1920) | 1 | Depositions, by leave of court, may be withdrawn from the files and be returned to the officer before whom they were taken for proper certification. | Depositions, by leave of court, may be withdrawn from the files and be returned to the officer before whom they were taken for proper certification. | Could depositions be withdrawn from the files and returned to the officer before whom they were taken for proper certification? |
| 11472 | Ft. Worth & D.C. Ry. Co. v. Walker, 48 Tex. Civ. App. 86, 88 (1907) | 8 | The return on a deposition envelope serves the purpose only to preserve the purity of the return of the deposition, and is a matter properly for the court, and not for the jury, as evidence. | It is contended by appellee that the indorsements on the envelope are a part of the deposition, and the entire deposition, including the envelope with its indorsements, constituted a filed paper in the case, and was admissible in evidence. The return on the envelope serves the purpose only to preserve the purity of the return of the deposition. It is a matter properly for the court, and not for the jury, as evidence. | Does the return on a deposition envelope serve the purpose only to preserve the purity of the return of the deposition? |

| | | | | | |
|---|---|---|---|---|---|
| 11473 | McFaddin v. Sims, 43 Tex. Civ. App. 598, 601, 97 S.W. 335, 336 (1906) | 4 | Rev.St.1895, art. 2284, Rules of Civil Procedure, rule 196, requires the officer taking a deposition to certify that the witness signed and swore to the answers "before" him. Held, that a certificate reciting that the witness was sworn by the officer before the interrogatories were propounded to him, and that his answers were reduced to writing and subscribed and sworn to by him, was defective. | Article 2284, Rev. St. 1895, requires the officer taking the deposition to certify that the witness signed and swore to the answers before him. This fact does not appear from the certificate above set out either in express words or by necessary implication from the language use. The certificate recites that the witness was sworn by the officer before the interrogatories were propounded to him, and that his answers were reduced to writing, and subscribed and sworn to by him. This is not a statement, as required by the statute, that the answers of the witness were signed and sworn to by him before the officer. The failure of the certificate to show that the depositions were signed and sworn to by the witness before the officer was a fatal defect, and the motion to suppress on this ground should have been sustained. | Is the officer taking a deposition required to certify that the witness signed and swore to the answers before him? |
| 11475 | Heit & Weisenthal v. Licht, 218 A.D. 753, 753, 218 N.Y.S. 102, 103 (App. Div. 1926) | 1 | That examination before trial may result in compelling witness to give evidence against himself is no ground for denying examination, since right to refuse to incriminate one's self is personal, and must be claimed when questions are asked. | This court has consistently held that the claim that an examination before trial ought not to be had because it may result in compelling the witness to give evidence against himself is not a proper ground for denying the examination. The right to refuse to incriminate oneself is a personal right and must be claimed at the time the questions are asked. | Is that the examination before trial may result in compelling witness to give evidence against himself ground for denying examination? |
| 11508 | Bell v. Toluca Coal Co., 272 Ill. 576, 583, 112 N.E. 311, 314 (1916) | 2 | The discretion of the court as to the granting or refusing of time to prepare an affidavit for continuance on account of amendment of pleading will not be disturbed unless abused. | The allowance of an amendment to the pleadings during the trial is a matter of discretion with the court (Gordon v. Reynolds, 114 Ill. 118, 28 N. E. 455; Booth v. Wiley, 102 Ill. 84), as well as the granting or refusing of time to prepare an affidavit for a continuance on account of such amendment, and the ruling of the court cannot be assigned for error unless the discretion has been abused (Knickerbocker Ins. Co. v. McGinnis, 87 Ill. 70; Fisher v. Greene, 95 Ill. 94). | Is the matter of granting continuance because of amendment to the pleadings within a trial court's discretion? |
| 11509 | Garvin v. Jennerson, 20 Kan. 371, 372–73 (1878) | 5 | Under Civ.Code, S 361, providing that "every deposition intended to be read in evidence on the trial must be filed at least one day before the day of trial," one entire day must elapse between the day of filing and the day of trial. To properly compute the time within such statute, both the day of filing and the day of trial should be excluded. | It is assigned as error, that the deposition of a material witness on the part of defendant in error was read upon the trial against the objection of plaintiff in error in violation of section 361 of the civil code, which provides, that "every deposition intended to be read in evidence on the trial must be filed at least one day before the day of trial." The trial of the case commenced at 9 o'clock A. M. of November 12th 1875; and the deposition was filed in the court at 11 o'clock A. M. of the 11th *373 of November. This assignment of error must be sustained, because the statute requiring at least one day before the day of trial, means one clear day; and both the day on which the deposition was filed and the day of the trial must be excluded | Are depositions inadmissible unless they have been filed one entire day before the commencement of the trial? |
| 11519 | New York, N. H. & H. R. Co. v. First Nat. Bank, 105 Conn. 33, 134 A. 223, 225 (Conn. 1926) | 13 | Local usage or customs of banks in transacting business must not be unlawful, unreasonable, contrary to express agreement of parties, or change intrinsic character of undertaking. | Another consideration is the practical necessity of adhering to the uniform methods of transacting business as established by local usage unless otherwise specifically instructed. As held in Skiff v. Stoddard, supra, the custom must not be "unlawful, unreasonable, contrary to the express agreement of the parties," nor such as to change the intrinsic character of the undertaking," but we do not see that the custom here under consideration manifests either of these faults. | May local usage or custom change the intrinsic character of an undertaking? |

| | | | | | |
|---|---|---|---|---|---|
| 11520 | Smith v. U.S. Shipping Bd. Emergency Fleet Corp., 2 F.2d 390, 391 (S.D.N.Y. 1924) | 1 | Custom or usage, to acquire force of law, must be general and uniform in business affected, and have been peaceably acquiesced in for long time. | 297: 'Before a custom or usage can acquire the force of law, it must appear that it is general and uniform in the business to be affected by it, and that it has been peaceably acquiesced in without dispute for a long period of time.' | Must a custom or usage have been peaceably acquiesced to in order to be effective? |
| 11521 | W. Petroleum Co. v. Tidal Gasoline Co., 284 F. 82, 84 (7th Cir. 1922) | 4 | A usage, in order to change the plain import of language, must be general, certain, uniform, and of sufficient duration to justify an inference that the parties had it in view in making their contract. | A usage, in order to change the plain import of language, must be general, certain, uniform, and of sufficient duration to justify an inference that the parties had it in view in making their contract. | "When a general custom exists in a particular trade, is it presumed that all those engaged in that trade are familiar with its existence and requirements?" |
| 11522 | Jacobs v. Shorey, 48 N.H. 100, 100 (1868) | 4 | A custom of merchants is valid, where it is shown to be reasonable in itself, and is well established, and uniformly acted on, so as to raise a fair presumption that it is generally known. | Proof of a custom of merchants will be received, when shown to be reasonable in itself, and so well established and uniformly acted upon, and so well settled, as to raise a fair presumption that it is generally known by all contracting under its operation. | Is a custom of merchants valid where it is shown to be reasonable in itself and uniformly acted on? |
| 11529 | Ford v. Cheever, 105 Mich. 679, 683, 63 N.W. 975, 976 (1895) | 7 | Where the instructions annexed to a commission to take testimony required an oath to be publicly administered, the commissioner's return showing that the testimony was taken at his office, after the oath "prescribed by the instructions annexed to the commission" had been given, sufficiently shows that the oath was publicly administered, as required by How.Ann.St. S 7439. | Objection was made to the introduction of the testimony of one Orrin T. Lane, taken by deposition, but we think the objection is without force. It is contended that the return of the commissioner does not show that the oath was publicly administered, as required by section 7439, How Ann. St., but the return does make it appear that the testimony was taken at the office of the commissioner, and after having taken the oath prescribed by the instructions annexed to the commission. The instructions annexed to the commission require a oath publicly administered, and we think the return sufficient. | "Where the instructions annexed to a commission to take testimony required an oath to be publicly administered, when is it sufficiently shown that the oath was publicly administered?" |
| 11530 | Pelamourges v. Clark, 9 Iowa 1, 21 (1859) | 3 | When a deposition is taken upon interrogatories propounded by both parties, and is returned and filed in the clerk's office, neither party has a right to withdraw it, and either may use it in evidence. | When a deposition is taken on interrogatories propounded by both parties, and is returned and filed in the court, it may be used by either party. It is required to be filed by the clerk in his office, and neither party has the right to withdraw the same. | "When a deposition is taken upon interrogatories propounded by both parties, does neither party have a right to withdraw it?" |
| 11535 | Walbridge v. Kibbee, 20 Vt. 543, 545 (1848) | 2 | Where a deposition is not attached to its wrapper, and the filing of the clerk was indorsed upon the wrapper, which is lost, the question of the identity of the deposition is one of fact, to be determined by the county court, and their determination is final. | The first objection made to the regularity of the trial in this case is, that the deposition of Jared H. Kibbee was not properly filed,--the wrapper not being attached to the deposition, and the filing of the clerk being upon the wrapper. The question of the identity of the deposition was one of fact, to be determined by the county court; and their determination is final. | "Where a deposition is not attached to its wrapper, is the question of the identity of the deposition one of fact to be determined by the county court?" |
| 11567 | Blair v. Collins, 15 La. Ann. 683, 684 (1860) | 2 | It is sufficient, in the execution of a commission to take testimony, if the caption and proces verbal show that the witnesses were duly sworn and where, when, and by what authority the commission was executed, and it is not necessary that it would appear by whom the depositions was written. | The other exception is to the effect, that it does not appear that the depositions taken under commission were written and signed by the witnesses in the presence of the magistrate, and that it does not appear who wrote the depositions, they not being in the handwriting of the magistrate. The caption and proces-verbal show that the witnesses were duly sworn, and state where, when, and by what authority the commission was executed. This was held to be sufficient in the case of Ferriber v. Latting, 9 An. 169. | "Is it sufficient, in the execution of a commission to take testimony, if the caption shows that the witnesses were duly sworn?" |

| | | | | | |
|---|---|---|---|---|---|
| 11571 | Sullivan-Sanford Lumber Co. v. Cooper, 59 Tex. Civ. App. 536, 540, 126 S.W. 35, 37 (1909), | 2 | A second application for continuance for want of testimony, failing to allege, as required by Rev.St.1895, art. 1278, Vernon's Ann.Civ.St. art. 2168, that the testimony sought to be elicited from the absent witnesses "cannot be obtained from any source," ruling thereon rests in the sound discretion of the trial court. | The application for continuance must be held, we think, in the case as a second, and not a first, application; and, as a second application, it does not meet the requirements of the statute, in that it fails to allege that the testimony to be elicited from the witnesses "could not be procured from any other source." | "To meet the requirements of the statute for a second application for continuance, is it required to allege that the testimony to be elicited from the witnesses could not be procured from any other source?" |
| 11586 | Caldwell v. Fulton, 31 Pa. 475, 475 (1858) | 4 | The minerals beneath the surface of a tract of land may be conveyed by deed, distinct from the right to the surface. | The minerals beneath the surface of a tract of land may be conveyed by deed, distinct from the right to the surface. | "Can minerals beneath the surface of a tract of land be conveyed by deed, distinct from the right to the surface?" |
| 11588 | State, to Use of Mosher v. Bennett, 31 Mo. 462, 462 (1862) | 2 | The affidavit must also show that due diligence has been used to procure the testimony of the witness, or some excuse for the want of it. | The affidavit must also show that due diligence has been used to procure the testimony of the witness, or some excuse therefor. | Should an affidavit show that due diligence has been used to procure the testimony of the witness? |
| 11589 | Larus v. Bank of Com. & Tr. Co., 149 Tenn. 126, 257 S.W. 94, 100 (1923) | 3 | Where a will contest had been once reset for accommodation of contestant, and in order that he might procure the testimony of a witness, which he did not attempt to do, held, that the court properly refused to grant contestant a second continuance on account of the absence of such witness. | The undisputed proof, therefore, shows that contestant was given ample opportunity to prosecute his contest in the circuit court. The case had been reset in that court for his accommodation, and in order that he might procure the testimony of the witness Gavin, which he did not attempt to do, and it was agreed that the case would be tried on the date to which it had been postponed. The court was therefore within its rights when it refused to grant contestant a second continuance on account of the absence of the witness Gavin; and, when the court declined to grant contestant another continuance or postponement on account of the absence of this witness, he nor his counsel could not prevent a trial of the case by withdrawing from the courtroom and refusing to introduce any testimony. | "Will the court grant a second continuance due to absence of witness so that he might procure the testimony of a witness, which he did not attempt to do?" |

| | | | | | |
|---|---|---|---|---|---|
| 11596 | Stewart v. Butler, 27 Misc. 708, 712–14, 59 N.Y.S. 573, 576–78 (Sup. Ct. 1899) | 1 | Plaintiff claims to be the heir of a person alleged to have died intestate in 1876, leaving a widow who died in 1886. In 1891 plaintiff brought ejectment to recover possession of certain premises owned by the deceased at his death, and the complaint was twice dismissed on the ground that plaintiff had not proved that he was an heir of the deceased. An appeal was taken, but not prosecuted, and plaintiff never paid any of the costs awarded against him, and is irresponsible. At the time of beginning the ejectment suit at bar, plaintiff began several other similar actions against persons owning and holding real estate which was owned by the deceased at his death. In his motion to dismiss the action, defendant alleges, and plaintiff does not deny, that the suit is brought in bad faith, without any reasonable expectation of success, with full information of the want of relationship between plaintiff and the deceased, and that the deceased died testate, and his will was probated, and that the action is to compel defendant to buy peace. Counsel for plaintiff do not make affidavit that they believe plaintiff has a cause of action, nor is it shown how the 20-year statute of limitations is to be avoided. It is not alleged that plaintiff has any other or further evidence as to his status as heir than that produced at the trial in 1891. Held, that the action is vexatious and harassing. | The complaint alleges the death of Alexander T. Stewart on April 10, 1876, leaving a widow, who died on October 25, 1886; but no heirs of his body; that, at the time of his death, said Stewart was seised of the property described in the complaint; that he died intestate, leaving certain heirs at law and next of kin, of whom plaintiff is one; that, at the time of the death of said Stewart, plaintiff was of lawful age, of the blood of said Stewart, and one of his heirs at law, and then became and still is seised in fee simple and the owner of the premises described in the complaint, and entitled to the possession thereof; that the defendants, without plaintiff's knowledge or consent, went into possession of the premises, and unlawfully hold and occupy them. It appears: That the plaintiff heretofore commenced an action of ejectment against one Henry Hilton, in the late court of common pleas of this county, to recover possession of certain premises on Thirty-Fourth street, in this city, which were owned by A. T. Stewart at his death, and subsequently became the property of said Hilton. That, in that action as in this, the plaintiff claimed to be an heir at law of said Stewart, and the questions sought to be raised in that action were the same as those sought to be raised in this, to wit, the plaintiff's relation as heir at law to said Stewart, and the intestacy of said Stewart, the only difference between that action and this being that a different piece of property was involved, and a different defendant was named. **577 That said action in the court of common pleas was commenced on July 9, 1891, and upon the trial the complaint was dismissed on the ground that the plaintiff had not proved that he was an heir at law of A. T. Stewart, and a judgment was therefore duly entered dismissing the complaint. That the plaintiff thereafter elected to take a new trial under the statute, and upon such trial his complaint was again dismissed *713 upon the ground that he had failed to show that he | Can a complaint be dismissed on motion where litigation is vexatious and clearly without merit? |
| 11603 | S. Gum Co. v. Laylin, 66 Ohio St. 578, 64 N.E. 564 (1902) | 5 | Franchise tax may be imposed by general assembly on corporations, both foreign and domestic, doing business in state. | A franchise tax may be imposed by the general assembly upon corporations, both domestic and foreign, doing business in this state. | Can franchise tax be imposed by general assembly on both foreign and domestic corporations that are doing business in the state? |
| 11604 | State ex rel. Owen v. Donald, 160 Wis. 21, 151 N.W. 331, 333 (1915) | 14 | In making the fundamental law a government was created with limited functions, specified expressly or by necessary inference, and the power of taxation limited to carry out such functions. | In making the fundamental law a government was created with limited functions, specified expressly or by necessary inference, and the power of taxation limited to carry out such functions | Was the government created with limited functions towards taxation? |
| 11631 | Green v. Burrows, 47 Mich. 70, 71, 10 N.W. 111, 112 (1881) | 3 | Under Comp.Laws, S 1564, so providing, a guaranty of the payment of a note is negotiable, and an assignment of the note operates as an assignment of the guaranty, and allows the holder to sue in his own name on such guaranty, subject only to the equities between the guarantor and the person to whom it was given. | Our statute provides that "the guaranty of the payment or of the collection of any promissory note shall hereafter be negotiable, and shall pass to the holder of the note, whether indorsed thereon, or written or printed upon a separate paper; and the assignment, indorsement or transfer of any promissory note, the payment or collection of which shall have been guarantied, shall operate as and be an assignment of all guaranties of any such note; and the holder of such note may maintain an action upon any and all such guaranties in his own name, subject to all equities existing between the guarantor and the person to whom such guaranty was made." | Can a general guaranty of payment of a negotiable promissory note pass with the assignment and delivery of the note to the holder? |

| | | | | | |
|---|---|---|---|---|---|
| 11635 | Austin, Nichols & Co. v. Gross, 98 Conn. 782, 120 A. 596, 597 (Conn. 1923) | 1 | The Negotiable Instruments Law should be given a liberal construction so as to secure to its sections a reasonable meaning and to effectuate the intention of its framers to codify the law upon the subject and to adopt therein the best rule prevailing in this country, or occasionally a rule adopted from another country contrary to the rule in this country. | The decision must be based upon the terms of G. S. § 4378, which is a part of and identical with section 20 of the Negotiable Instruments Law as drafted by the commissioners. We should give to the sections of this law a liberal construction so as to secure to them a reasonable meaning and to effectuate the intention of its framers and to make it workable and serviceable to the important business to which it relates. It is a codification of the law upon this subject and embraces all of the law upon this subject to which its terms expressly or by necessary implication may be held to relate. | Should Negotiable Instruments Law be given liberal construction? |
| 11636 | Robertson Banking Co. v. Brasfield, 202 Ala. 167, 167, 79 So. 651, 651 (1918) | 1 | Rule that bank paying depositor's check on forged indorsement is liable to him, unless payment was proximate result of his conduct or negligence, applies to check payable to fictitious person, unless it was so payable to drawer's knowledge, making it, under Code 1907, S 4966, subd. 3, payable to bearer. | It is settled law that a bank, which pays out the funds of a depositor on a forged check or indorsement, does so at its peril, and the depositor can recover the amount so paid, unless the bank can show that the payment was made as the proximate result of the conduct or negligence of the depositor; and this rule applies to a forged indorsement of a fictitious payee in the same way as it does to the forged indorsement of a real or existing payee. | When is the payment made upon forged indorsements are at the peril of the bank? |
| 11637 | State v. Adcox, 312 Mo. 55, 60 (1925) | 1 | There can be no bribery of any official to do particular act unless law requires or imposes upon him duty of acting. | "In order to bribe an officer, he must be in the discharge of a legal or official duty; in other words, there can be no bribery of any official to do a particular act, unless the law requires or imposes upon him the duty of acting. | Can there be bribery of a public official to do a particular act if the law does not require or impose upon him a duty of acting? |
| 11645 | Vogel v. Warsing, 146 F. 949, 951 (9th Cir. 1906) | 5 | Where the validity of a location had been unchallenged for more than five years up to the commencement of ejectment, and the original locators were absent from the country, the certificate of location created a presumption of discovery of mineral and of a valid location, especially on an application for a preliminary injunction depending on affidavits in which plaintiff appeared as a subsequent locator and attached the title of the prior locator and that of his successor in interest. | As the original locator and his witness were absent from Alaska, their affidavits could not be obtained. The validity of the location had been unchallenged for more than five years and up to the time of the commencement of the present action. It has been held that under such circumstances the certificate of location creates a presumption of discovery of mineral and of a valid location. **631 Harris v. Equator Mining & Smelting Co. (C.C.) 8 Fed. 863, 5 McCrary, 14; Cheesman v. Shreeve (C.C.) 40 Fed. 791; Cheesman v. Hart (C.C.) 42 Fed. 98. Especially should such a presumption be indulged in a summary proceeding instituted at the beginning of a suit where the granting or withholding of an injunction depends upon facts presented by affidavits and rests largely in the discretion of the trial court, and where a subsequent locator attacks the title of the prior locator or that of his successor in interest. | "Where mining claims have passed out of the hands of the original owners and have stood unchallenged for years, can the certificate of location be deemed presumptive evidence of discovery of a valid location?" |
| 11678 | Case v. Beauregard, 101 U.S. 688 (1879) | 3 | Whenever a creditor has a trust in his favor, or a lien upon property for the debt due him, he may go into equity without exhausting his remedy at law. | Whenever a creditor has a trust in his favor, or a lien upon property for the debt due him, he may go into equity without exhausting his remedy at law. | When can a creditor go into equity without exhausting legal processes or remedies? |
| 11692 | Morton v. J.I. Case Threshing Mach. Co., 99 Mo. App. 630, 74 S.W. 434, 436 (1903) | 2 | Where a sale of property is effected owing to an agent having introduced the purchaser to the owner or disclosed the name of the purchaser to the owner, the agent is entitled to his commissions, though the sale is actually made by the owner. | It is the well–settled rule of law in this state that where an agent introduces the purchaser or discloses his name to the seller, and through such introduction or disclosure negotiations are opened and the sale of the property is effected, the agent is entitled to his commissions, though the sale is made by the owner. | Is an agent entitled to get commission for a sale he initiated or introduced to principal even though he has not completed the sale process? |

| | | | | | |
|---|---|---|---|---|---|
| 11706 | Morton v. J.I. Case Threshing Mach. Co., 99 Mo. App. 630, 74 S.W. 434, 436 (1903) | 2 | Where a sale of property is effected owing to an agent having introduced the purchaser to the owner or disclosed the name of the purchaser to the owner, the agent is entitled to his commissions, though the sale is actually made by the owner. | It is the well–settled rule of law in this state that where an agent introduces the purchaser or discloses his name to the seller, and through such introduction or disclosure negotiations are opened and the sale of the property is effected, the agent is entitled to his commissions, though the sale is made by the owner.<br><br>Morton v. J.I. Case Threshing Mach. Co., 99 Mo. App. 630, 74 S.W. 434, 436 (1903) | "Is an agent entitled to a commission if he introduces the purchaser and through such introduction, a property is sold?" |
| 11707 | Morton v. J.I. Case Threshing Mach. Co., 99 Mo. App. 630, 74 S.W. 434, 436 (1903) | 2 | Where a sale of property is effected owing to an agent having introduced the purchaser to the owner or disclosed the name of the purchaser to the owner, the agent is entitled to his commissions, though the sale is actually made by the owner. | It is the well–settled rule of law in this state that where an agent introduces the purchaser or discloses his name to the seller, and through such introduction or disclosure negotiations are opened and the sale of the property is effected, the agent is entitled to his commissions, though the sale is made by the owner.<br><br>Morton v. J.I. Case Threshing Mach. Co., 99 Mo. App. 630, 74 S.W. 434, 436 (1903) | Can an agent be entitled to a commission even if the sale is made by the owner? |
| 11710 | Thornton v. Crowther, 24 Mo. 164, 166 (1857) | 2 | An assignment of a promissory note, written on a separate paper, although not transferring the legal ownership, transfers the beneficial ownership in the note, so as to enable the assignee to sue on it in his own name. | There is no error in this record. Although the legal ownership of the note was not transferred--the assignment being on a separate paper and not on a note, yet by the statute--yet the beneficial ownership passed, and the assignee became the real party in interest, and entitled as such to sue upon the note in his own name. | Does a note written on a separate instrument enable the assignee to sue upon it in his own name? |
| 11722 | Bank of U.S. v. Daniel, 37 U.S. 32, 54(1838) | 8 | Kentucky and Louisiana, as political communities, being distinct and sovereign, are foreign to each other in regard to the regulation of contracts, so that a bill drawn in one payable in the other is a "foreign bill." | Kentucky and Louisiana, as political communities, being distinct and sovereign, and consequently foreign to each other in regard to the regulation of contracts, it follows, a bill drawn in one, payable in other, is a foreign bill. | "Is a bill of exchange drawn in one of the states of the United States, payable in another, a foreign bill?" |
| 11730 | Bush v. Murray, 209 A.D. 563, 569, 205 N.Y.S. 21, 26 (App. Div. 1924) | 7 | Part of a complaint may not be attacked for insufficiency as a cause of action, unless a separate cause of action is claimed by pleader to be set forth. | Part of a complaint may not be attacked for insufficiency as a cause of action, unless a separate cause of action is claimed by the pleader to be set forth. | Can part of a complaint be attacked for insufficiency as a cause of action? |
| 11746 | Gayoso Sav. Inst. v. Fellows, 46 Tenn. 467, 473 (1869) | 1 | If the instrument transferred was filed in a court, as evidence in a pending suit, so that it could not be withdrawn and actual delivery made, notice to the attorney having the control of the suit, and the responsibility of the collection, and his undertaking, express or implied, to pay over the money to the assignee, or to act as his attorney in the collection, would be sufficient; especially where the instrument or note, at the time of the assignment, had not ripened into a judgment; then the delivery in this case was all that it was possible to make, and was sufficient; and no notice to the debtor was necessary. | If the instrument was filed in the court as evidence in a pending suit, so that it could not be withdrawn and actual delivery made, notice to the attorney having the control of the suit and the responsibility of the collection, and his undertaking, express or implied, to pay over the money to the assignee, or to act as his attorney in the collection, would be sufficient. If the debt in the present case, was represented at the time of the assignment, by the original note, then the delivery actually made was all that the case admitted, or that it was possible to make, and was sufficient, and no notice to the debtor was necessary. | Is it necessary to give notice to a debtor of a debt if it was represented at the time of the assignment by the original note? |
| 11755 | Sterling & Snapp v. Bender, 7 Ark. 201, 202 (1846) | 3 | A bill or note indorsed in blank is transferable by delivery only, and so long as the indorsement continues in blank, it makes the bill or note in effect payable to bearer. | A bill or note indorsed in blank is transferable by delivery only, and so long as the indorsement continues in blank, it makes the bill or note in effect payable to bearer. | Whether indorsement in blank makes the bill or note payable to bearer? |
| 11798 | Pinkerton v. Gilbert, 22 Ill. App. 568, 572 (Ill. App. Ct. 1887) | 6 | The doctrine of respondeat superior applies only to acts performed by an agent within scope of his employment. | The doctrine of respondeat superior applies only to acts performed by an agent within the scope of his employment. | Does the doctrine of respondeat superior apply only when the agent has acted within the scope of his employment? |

| | | | | | |
|---|---|---|---|---|---|
| 11828 | Guernsey v. Imperial Bank of Canada, 188 F. 300, 300-301 (8th Cir. 1911) | 6 | The law of the place where commercial paper is payable governs the time and manner of presentment, demand and the protest, and notice of dishonor. | The laws of the place where the indorsement is signed or is delivered so that it becomes a contract govern the validity and extent of the contract, *301 and therefore the necessity of some presentment, demand, protest, and notice of dishonor. The law of the place where commercial paper is payable governs the days of grace, the time and the manner of making the presentment, the demand, and the protest, and of giving the notice of dishonor. | "When commercial paper is indorsed in one jurisdiction and is payable in another, which law governs the time and mode of presentment for payment?" |
| 11846 | Evans v. Anderson, 78 Ill. 558, 559-560 (Ill. 1875) | 1 | The existing laws of state at the time of making a note therein form a portion of the contract, and the liability of the maker must be determined under them. | The existing laws of a State at the time of making a note, form a portion of the contract, and the liability of the maker must be determined under *560 them. | Does the existing law of a State form a portion of a contract? |
| 11872 | Red Cross Line v. Atl. Fruit Co., 264 U.S. 109, 121 (1924) | 10 | An agreement for arbitration is valid, even if it provides for the determination of liability, and, if executory, a breach will support an action for damages, or, if executed, and the award has been made, effect will be given to the award in an appropriate proceeding at law or in equity. | But an agreement for arbitration is valid, even if it provides for the determination of liability. If executory, a breach will support an action for damages. Hamilton v. Home Insurance Co., 137 U. S. 370, 385-386, 11 Sup. Ct. 133, 34 L. Ed. 708. If executed-that is, if the award has been made-effect will be given to the award in any appropriate proceeding at law, or in equity. | Does a breach of an arbitration agreement support an action for damages if the agreement is executory? |
| 11884 | State v. Martin, 102 N.J.L. 388, 400, 132 A. 93, 98 (1926) | 7 | Causing and intent to cause "bodily harm" are not essential elements of second-degree sexual assault, but rather, they are permissive elements which may, but need not be, proved in order to convict. W.S.A. 940.225(2)(a). | Causing and intent to cause "bodily harm" are not essential elements of second degree sexual assault under sec. 940.225(2)(a). Rather, as noted, they are permissive elements, which may—but need not—be proved in order to convict under sec. 940.225(2)(a). | Is bodily injury an element of sexual assault? |
| 11914 | Erlandson v. Erskine, 76 Mont. 537, 248 P. 209, 211 (1926) | 7 | Assignee of nonnegotiable note takes subject to existing defenses in favor of maker, and to cut off subsequent defenses such as payment or release notice is necessary, in view of Rev.Codes 1921, SS 8772, 9068. | "The assignee of a nonnegotiable contract made for the 'payment' of money * * * takes all the rights of the assignor, subject only to the equities and defenses existing in favor of the maker at the time of the assignment, and that matters arising out of subsequent dealings between the maker and assignor, not relating to the contract, but which would be defenses in an action" between the maker and the "assignor, are not available as against the assignee, * * * but that in order to cut off defenses arising out of dealings with relation to the contract itself between the maker and assignor after assignment—such as payment, release, etc.—notice of the assignment is necessary; so that under section 571, supra [now section 9068, Rev. Code 1921], if the maker, without notice of the assignment, in good faith pays the assignor the amount of the debt or obligation, and takes an acquittance, this constitutes a complete defense to a suit by the assignee." | Does the assignee stand on the same footing with regard to the equities and defenses available to the maker? |
| 11931 | Meyers v. Ackerlund, 224 Ill. App. 417, 418 (Ill. App. Ct. 1922) | 5 | If a plaintiff is present and does not want to proceed with the prosecution of the case, he must elect either to suffer a nonsuit or the case should go to the jury. | If a plaintiff is present and does not wish to proceed with the prosecution of a case, he must elect either to suffer a nonsuit or the case should go to the jury. | "f a plaintiff does not want to proceed with the prosecution of the case, should he suffer a nonsuit or should the case go to the jury?" |
| 11944 | United States v. Turner, 32 U.S. 132, 136 (1833) | 3 | The making of a false instrument which is the subject of forgery with a fraudulent intent, although in the name of a nonexisting person, constitutes "forgery" as much as if it had been made in the name of a person known to exist and to whom credit was due. | It is, for instance, clearly settled, that the making of a false instrument, which is the subject of forgery, with a fraudulent intent, although in the name of a non-existing person, is as much a forgery as if it had been made in the name of a person known to exist, and to whom credit was due. | Will a note be deemed a forgery if it is made with intent to defraud? |
| 11945 | Chicago Title & Tr. Co. v. Tilton, 256 Ill. 97, 101 (Ill. 1912) | 1 | On the dismissal of a suit the parties are out of court, and all further proceedings are unauthorized until the judgment of dismissal is vacated, and the cause reinstated. | On the dismissal of a suit the parties are out of court, and all further proceedings are unauthorized until the judgment of dismissal is vacated and the cause reinstated. | "Upon dismissal of suit, are parties out of court and are no further proceedings authorized until judgment of dismissal is vacated and cause reinstated?" |

| | | | | | |
|---|---|---|---|---|---|
| 11959 | Stiles v. Farrar, 18 Vt. 444, 446 (1846) | 6 | The interest of the payee in a note not negotiable may be assigned; and if assigned, and notice thereof is given to the maker, and an action is commenced upon the note in the name of the payee for the benefit of the assignee, the equitable interest of the assignee will be protected at law. This is not now an open question. | The county court having adjudged the defendant's rejoinder insufficient and rendered judgment for the plaintiff, the case is brought to this court for revision; and the question raised by the bill of exceptions is, whether the rejoinder is sufficient. The note declared upon is not negotiable, yet the payee's interest in it might well be assigned, and, upon notice of the assignment to the maker, the equitable interest of the assignee would be protected at law. This principle is too well settled to admit of controversy. It is no longer an open question | Is the equitable interest of the assignee protected by law upon his giving proper notice? |
| 11984 | Fodor v. Kunie, 92 N.J. Eq. 301, 301 (N.J.Ch. 1920) | 6 | The consent of parent or guardian is not necessary to the validity of a minor's marriage unless a statute expressly declares that a marriage contracted without it shall be void, and there is no such statute in this state. | The consent of parent or guardian is not necessary to the validity of a minor's marriage unless a statute expressly declares that a marriage contracted without it shall be void; and there is no such statute in this state. | Can minors marry without the consent of their parents? |
| 12042 | Caspar v. Lewin, 82 Kan. 604, 109 P. 657, 665 (1910) | 1 | The protection of the Factory Act (Laws 1903, c. 356) extends only to persons acting within the scope of some labor or employment. | The protection of the act extends only to the persons employed or laboring in the factory; that is, acting within the scope of some employment or labor. | Does the protection of the Factory Act extend only to persons acting within the scope of some employment or labor? |
| 12059 | Norton v. City Bank & Tr. Co., 294 F. 839, 844 (4th Cir. 1923) | 2 | A negotiable instrument is drawn to a fictitious payee, whenever the payee named therein, although in existence, has no right to it, and the maker does not intend that such payee shall take anything by it; "fictitiousness" depending on the intention to pay, rather than on the payee's existence. | Nevertheless, the law is now well settled that a negotiable instrument is drawn to a fictitious payee whenever the payee named in it has no right to it, and its maker does not intend that such payee shall take anything by it. | When can it be considered that a negotiable instrument is drawn to a fictitious payee? |
| 12154 | Ricaud v. Am. Metal Co., 246 U.S. 304, 310, 38 S. Ct. 312, 314, 62 L. Ed. 733 (1918) | 7 | Action of Mexican military commander representing the Carranza government in seizing and selling bullion for military purposes held not subject to re-examination and modification in the American courts, though title was in an American citizen, who was not in or a resident of Mexico at the time. | The fact that the title to the property in controversy may have been in an American citizen, who was not in or a resident of Mexico at the time it was seized for military purposes by the legitimate government of Mexico, does not affect the rule of law that the act within its own boundaries of one sovereign state cannot become the subject of re-examination and modification in the courts of another. | Can an act within the boundaries of one sovereign state become the subject of re-examination and modification in the courts of another state? |
| 12162 | Dixon v. Sol Loeb Co., 31 Ga. App. 165, 120 S.E. 31 (1923) | 5 | The word "creditors," as used in Civ.Code 1895, S 2634, declaring that the dissolution of a partnership by the retiring of an ostensible partner must be made known to the creditors and to the world, is not limited to persons who were creditors at the time of the dissolution, but a person who had previously sold goods and given credit to the firm during its continuance was within its meaning. | "The dissolution of a partnership by the retiring of an ostensible partner must be made known to creditors and to the world. The word 'creditors,' as thus employed in the statute (Civil Code [of 1895] § 2634), is not limited to persons who were creditors at the time of the dissolution. A person who had previously sold goods and given credit to the firm during its continuance was within its meaning. Actual notice must be given to creditors." Bush v. McCarty Co., 127 Ga. 308 (1, 2, and 3), 56 S. E. 430, 9 Ann. Cas. 240. "Where there is independent prima facie proof of a partnership, the declarations of either one of the alleged partners, written or spoken, are admissible in corroboration. | Is it necessary to declare the dissolution of a partnership by the retiring of an ostensible partner to the creditor and to the world? |
| 12225 | Giles v. Wilmott, 59 Fla. 271, 274 (1910) | 1 | In ordinary actions commenced by summons, plaintiff, to succeed, must show that his right of action was complete when the action was commenced. | In an ordinary action commenced by summons, the plaintiff, in order to succeed, must show that his right of action was complete at the time the action was commenced. | "Should the plaintiff show that his right of action was complete when the action was commenced, in ordinary actions commenced by summons?" |

| 12229 | Giles v. Wilmott, 59 Fla. 271, 274 (1910) | 1 | In ordinary actions commenced by summons, plaintiff, to succeed, must show that his right of action was complete when the action was commenced. | In an ordinary action commenced by summons, the plaintiff, in order to succeed, must show that his right of action was complete at the time the action was commenced. | "In ordinary actions commenced by summons, should the plaintiff show that his right of action was complete at the time when action was commenced?" |
|---|---|---|---|---|---|
| 12243 | Gavin v. Swain, 113 Cal. 324, 326, 45 P. 677, 677 (1896) | 1 | Ownership or seisin of real property is a fact that may be pleaded, proved, and found as a material, ultimate fact in any case involving title to the property. | That ownership, or (in technical language) seisin, of real property, is a fact that may be pleaded, proved, and found as a material ultimate fact in all cases involving title to real property, is unquestionable in this state. | Can ownership be pleaded as an ultimate fact? |
| 12259 | Lucas v. Belcher, 20 Ala. App. 507, 508, 103 So. 909, 911 (Ala. Ct. App. 1925) | 3 | Deputy clerk, who has not taken oath of office as prescribed by law, is nevertheless a de facto officer, whose acts are valid as to public or third persons. | A deputy clerk, not having taken the oath of office as prescribed by law, nevertheless is a de facto officer, and his acts are valid so far as the public or third persons are concerned. | Is a deputy clerk a de facto officer? |
| 12264 | Hughes v. Hartford Fire Ins. Co., 17 Ill. App. 518, 518 (1885) | 1 | While the right of subrogation does not arise by contract, such a right like all other legal or equitable rights may be qualified or extinguished by contract. | While it is true the right of subrogation does not arise by contract, such a right, like all other legal or equitable rights, may be, qualified, or extinguished by contract. | Can right of subrogation like all other legal or equitable rights be qualified or extinguished by contract? |
| 12267 | S. Mfg. Co. v. R.L. Moss Mfg. Co., 13 Ga. App. 847, 81 S.E. 263, 268 (1914) | 9 | There can be no recovery unless the plaintiff has a complete cause of action at the time the suit is filed. | "There can be no recovery unless the plaintiff has a complete cause of action at the time the suit is filed." | Can there be a recovery unless the plaintiff has a complete cause of action at the time suit is filed? |
| 12276 | Ford v. Jones, 174 Ky. 252, 192 S.W. 28, 30 (1917) | 1 | A surety on sale bonds for price at mortgage foreclosure sale, on being compelled by legal proceedings to pay the bonds, is subrogated to the rights of the mortgagee. | He did not make the payment voluntarily, but was compelled to do so, to save his property from sale under execution then in the hands of the sheriff and levied upon his property. Such a payment of the debt of another by a surety cannot be said to be voluntary, but is such a payment as the principles of equity declare entitle the payor to be subrogated to the rights of the payee. | Is a surety entitled to be subrogated to the position of a mortgagee when he is compelled to pay debt? |
| 12280 | S. Ry. Co. v. Gregg, 101 Va. 308, 317-18 (1903) | 12 | Laches is only permitted to defeat an acknowledged right on the ground that it affords evidence of the abandonment of the right. The doctrine, therefore, can have no application to a case where a demand has been continuously asserted and as continuously acknowledged. | Laches is only permitted to defeat an acknowledged right on the ground of its affording evidence that the right has been abandoned. The doctrine can have no application, therefore, to a case where the demand is continuously asserted and as continuously acknowledged. | Is laches only permitted to defeat an acknowledged right on the ground that it affords evidence of the abandonment of the right? |
| 12307 | Hunt v. Griffin, 49 Miss. 742, 742 (1874) | 1 | A discontinuance is either voluntary or involuntary,-voluntary, where the plaintiff withdraws his suit; involuntary when, in consequence of some technical omission, mispleading, or the like, the suit is regarded as out of court. | A discontinuance is either voluntary or involuntary. Voluntary, where the plaintiff withdraws his suit; involuntary, where in consequence of some technical omission, mispleading, or the like, the suit is regarded as out of court, as where the parties undertake to refer a suit not referrable, or omit to enter proper continuances. | When is a discontinuance either voluntary or involuntary? |
| 12308 | Eddings v. Gillespie, 59 Tenn. 548, 550 (1873) | 2 | An agreement made out of court to arbitrate matters involved in a suit pending, operates as a discontinuance of the suit. | This has all the appearance of an agreement made outside of the court, to arbitrate the matters in litigation; and which, upon the well-settled rule in such cases, operated as a discontinuance of the suit. | Does an agreement made out of court to arbitrate matters involved in a suit pending operate as a discontinuance of the suit? |
| 12323 | Herring v. Poritz, 6 Ill. App. 208, 211 (1880) | 2 | A "nonsuit" is the name of a judgment given against the plaintiff when he is unable to prove his case, or when he refuses or neglects to proceed to the trial of a cause after it has been put at issue, without determining such issue. | A retraxit differs from a nonsuit, in that one is negative and the other positive; the nonsuit is a mere default and neglect of the plaintiff, and therefore he is allowed to begin his suit again upon payment of costs; but a retraxit is an open and voluntary renunciation of his suit in court, and by this he forever loses his action." Bouvier says: "Nonsuit—the name of a judgment given against the plaintiff when he is unable to prove his case, or when he refuses or neglects to proceed to the trial of a cause after it has been put at issue, without determining such issue." | What is a nonsuit judgement? |

| 12387 | Howry v. Eppinger, 34 Mich. 29, 33 (1876) | 2 | The words "secured by mortgage," written in the margin of a promissory note, form no part of the note, and do not operate to limit or impair its value; nor are they sufficient to notify third parties of the contents of the mortgage, or that it contained some clause inconsistent with the note, or to put them on inquiry. If it be the intent to limit the effect of the note by the terms or conditions of the mortgage securing its payment, language appropriate to express it must be employed. | As we have already said, the words "secured by mortgage" formed no part of the notes. The object and intent of the parties in putting these words upon the notes was not to limit or impair their value, but to add to it. It was not to notify third parties that the mortgage contained some clause inconsistent with the notes, and which would destroy or affect their negotiable character. One object undoubtedly was, to show they were the notes referred to in the mortgage and thus connect them. But the principal one was, to show that in addition to the responsibility of the makers they were also secured by mortgage. If the makers intended to limit the effect of the notes by the terms or conditions of the mortgage securing their payment, they should have done so by language which could admit of no doubt as to its intent and meaning. We think these words were neither sufficient to inform third parties of the contents or terms of the mortgage, or to put them upon inquiry. If, however, we should hold that these words were sufficient to put Eppinger, Russell & Co. upon inquiry, or even inform them of the contents of the mortgage, still these defendants would not be benefited thereby, as there was nothing in the mortgage, even had it then been in existence, tending in any way to impair their value or render them non negotiable. | Do words like secured by mortgage form a part of the note? |
| 12396 | Shordan v. Kyler, 87 Ind. 38, 43–44 (1882) | 4 | An agent may bind himself personally, although the consideration move to his principal and the agent's want of interest in the transaction, except as agent known to the other contracting party. | An agent may bind himself personally, although the consideration move to his principal, and the agent's want of interest in the transaction, except as agent, be known to the other contracting party. | Can an agent bind himself personally? |
| 12440 | Indiahoma Refining Co. v. Wood, 255 S.W. 212, 215 (Tex. Civ. App. 1923) | 6 | In mining partnerships, the delectus personae, the right of members to agree upon the persons to be admitted into the relation of mutual trust as in ordinary trading partnerships, does not exist. | In such case the delectus personae-the right of members to agree upon the persons to be admitted into the relation of mutual trust, as in ordinary trading partnerships-does not exist. | Does the term delectus personae mean the right of a partner to exercise his choice in relation to the admission of new members to the firm? |
| 12449 | Mangelsdorf Bros. Co. v. Harnden Seed Co., 132 Mo. App. 507, 112 S.W. 15, 16 (1908) | 3 | The court may, on application of defendant for a continuance after the allowance of an amendment to the petition, call on defendant to show that he is not prepared to meet issues tendered by the amendment, which showing may be made either by affidavit or oral testimony. | Defendant was not entitled to a continuance from the mere fact that, in effect, a pleading of its adversary had been amended. The court had the right to call on defendant to show that it was not fully prepared to meet issues tendered for the first time by the amended pleadings. Such showing may be made either by affidavit or oral testimony, | Can the court call on a defendant to show that he is not prepared to meet issues tendered by the amendment? |
| 12450 | Lucas v. Casady, 12 Iowa 567, 569 (1862) | 2 | Under section 3014, an application for a continuance should be overruled if not made the second day of the term, or does not state facts constituting a sufficient excuse for the delay in making it. | Section 3014 of the Revision provides, "that a motion for a continuance must be filed on the second day of the term, and if made after the second day of the term the affidavit must state facts constituting an excuse for the delay in making it." It appears from the record that the defendant's motion was not filed until the third day of the term, and no facts are stated in the affidavit in excuse for such delay. This provision of the law is direct and positive, and unless such motion is made on the second day of the term, the court can exercise no discretion in the matter unless an excuse is offered for the delay. | Should a motion for continuance be made on the second day of the term? |

| | | | | | |
|---|---|---|---|---|---|
| 12451 | Christian v. Mansfield, 25 Ga. 628, 628 (1858) | 2 | When the party resides out of the county, the attorney may make the showing for a continuance, provided for by the 35th rule of Court. The case is the same, when the privy liable over to the party, resides out of the county, if it is that defends the suit. | When the party resides out of the county, the attorney may make the showing for a continuance, provided for by the 35th rule of Court. The case is the same, when the privy liable over to the party, resides out of the county, if it is he that defends the suit. | "When the party resides out of the county, can the attorney make the showing for a continuance?" |
| 12454 | Halsey v. Whitlock, 3 N.J.L. 869, 869 (1811) | 1 | Before an adjournment can take place in the justice's court, a summons must be returned and the parties in court, or at least the plaintiff must appear. | A cause cannot be continued in this way; before an adjournment can take place, the summons must be returned, and the parties in court, or at least, the plaintiff must appear. | Should the summons be returned and the plaintiff appear before an adjournment can take place? |
| 12467 | Wooldridge v. Rickert, 33 La. Ann. 234, 236 (1881) | 4 | Though, by Act Jan. 29, 1858, the absence of leading counsel is a peremptory cause for continuance, failure to except to the overruling of a motion for continuance on such ground is a waiver of the right. | While the absence of leading counsel is, under the Act of the General Assembly, approved January 29th, 1858, a peremptory cause for continuance where such counsel may be absent in attendance on the session of the Legislature, and although the motion made by defendants for a continuance on these grounds was overruled, and the trial of the case proceeded with, the record contains no bill of exceptions taken to this ruling, and we cannot notice it. The fact appears that other counsel of the defendant being present, the trial by jury, which had been prayed for, was waived, and by consent the trial of the case was proceeded with. While the cause of continuance is peremptory, it may be waived, and in this case the consent to proceed with the trial, without filing a bill of exceptions, was a clear and unambiguous waiver and submission by the defendants. | Is the absence of leading counsel a peremptory cause for continuance? |
| 12474 | Lerner v. Kraus, 147 N.Y.S. 32, 33 (App. Term 1914) | 3 | That plaintiff's cause of action is denied by defendant under oath, while not ground for denial of an application to examine defendant before trial, may be considered on the question of plaintiff's good faith. | In this case the plaintiff's cause of action is denied by the defendant under oath; and, though this fact in itself obviously is no ground for refusing an examination, yet it is a fact to be considered upon the probability of the good faith of the moving party in seeking the examination. | Can the plaintiff's cause of action be considered on the question of plaintiff's good faith? |
| 12476 | Hall v. Fla. State Drainage Land Co., 89 Fla. 312, 103 So. 828 (1925) | 2 | In deciding upon sufficiency of motion and affidavit for continuance, no presumption is indulged in favor of applicant. | In deciding upon sufficiency of motion and affidavit for continuance, no presumption is indulged in favor of applicant. In deciding upon the sufficiency of a motion and affidavit for continuance, no presumption favorable to the applicant is to be indulged. | "Should a presumption favorable to the applicant be indulged, in deciding the sufficiency of an affidavit for continuance?" |
| 12484 | Smith v. Bd. of Comm'rs of Hamilton Cty., 173 Ind. 364, 90 N.E. 881, 885 (1910) | 14 | In matters of taxation for the improvement of public highways, the power of the Legislature is unlimited, except as restricted by the Constitution. | In matters of taxation for the support of public highways the power of the Legislature is unlimited, except as restricted by the Constitution. | Does Legislature has unlimited powers in matters of taxation for the improvement of public highways? |
| 12487 | Brannin v. Voorhees, 14 N.J.L. 590, 592 (N.J. 1835) | 5 | Query, is it a discontinuance of the suit, if the justice, prevented by sickness or urgent business from attending on the return day of the summons, or on the day to which the cause has been adjourned, out of court, and in the absence of the parties, adjourns the cause to another day. | It is not necessary in this case to settle the question whether if the justice is prevented by sickness or urgent business from attending on the return day of the summons, or on the day to which the cause has been adjourned, he may, out of court and in the absence of the parties, adjourn the cause to another day. | "Is it a discontinuance of the suit, if the justice, prevented by sickness or urgent business from attending on the return day of the summons, adjourns the cause to another day?" |
| 12488 | Woodruff v. Garner, 39 Ind. 246, 247 (1872) | 1 | Although a party may not be at liberty to retake the deposition of a witness, except by leave of court, yet the taking of the deposition of a witness by one party to a suit does not prevent the other party from taking his deposition also. | A party may not be entitled to retake the deposition of a witness without leave of the court, but the fact that one party has taken the deposition of a witness does not prevent the other party from taking it. | Does the taking of the deposition of a witness by one party to a suit prevent the other party from taking his deposition also? |

| | | | | | |
|---|---|---|---|---|---|
| 12490 | Atchison, T. & S.F. Ry. Co. v. Jones, 110 Ill. App. 626, 639 (Ill. App. Ct. 1903) | 3 | Terms to be composed upon granting a continuance rest largely in the sound discretion of the court. | The terms to be imposed upon granting the continuance, which was done on motion of defendants, rested largely in the sound discretion of the court. | Do the terms to be composed upon granting a continuance rest largely in the sound discretion of the court? |
| 12493 | Moore v. Willard, 30 S.C. 615, 9 S.E. 273, 274 (1889) | 1 | Under Act 1883, 18 St. at Large, p. 373, relating to the taking of depositions, the admission of depositions in evidence cannot be objected to on the ground that they were taken without interrogatories having been first served, the statute not providing for interrogatories. | The reading of these depositions was objected to by the defendants—First, on the ground "that they were taken without first serving interrogatories;" second, that there was nothing to show that the person before whom they were taken was a notary public; third, error in holding that the testimony of George C. Barnes and Richard Schutte, alleged to have been taken outside of the state, was properly admissible in testimony; fourth, in ruling that there was sufficient to show that the alleged witness Schutte was sworn. | Can the admission of depositions in evidence be objected to on the ground that they were taken without interrogatories having been first served? |
| 12498 | Flournoy v. Marx, 33 Tex. 786, 786 (1871) | 2 | Though on a first application for a continuance for the absence of a witness it is not necessary to disclose the facts to be proved by the absent witness, yet if those facts are disclosed the court should take them into consideration in determining on the application. | Though on a first application for a continuance it is not necessary to disclose the facts to be proved by the absent witness, yet if those facts are disclosed the court should take them into consideration, in determining on the application. Williams v. Talbot, 27 Tex. 159, cited and approved. | "On an application for a first continuance, need a party not state the facts which he expects to prove by an absent witness?" |
| 12509 | Gaines v. Morris, 6 Rob. (LA) 4, 4–5 (1843) | 3 | A note indorsed in blank may be considered as one payable to bearer, and all indorsements posterior to that of the payee may be stricken out on the trial. But in an action against the maker, drawer, or acceptor, all indorsements stated in the petition, though unnecessarily, must be proved. | It is true, that a note endorsed in blank, may be considered as one payable to bearer, and all the endorsements posterior to that of the payee, may be stricken out on the trial; but as they were stated in the plaintiff's petition, and were suffered to remain on the note, the *5 signatures of the endorsers ought to have been proved. | Can a blank indorsement be stricken out at the trial? |
| 12513 | Hurlbut v. Quigley, 180 Cal. 265, 269, 180 P. 613, 615 (1919) | 3 | The words above indorsers' name, "I hereby waive presentment," etc., are governed by Civ.Code, S 1660, declaring that a promise made in the singular number, but executed by several persons, is presumed to be joint and several. | The writing above the indorsers' names, therefore, constituted a part of the written contract of indorsement. The contract of an indorser, except so far as he qualifies it in writing, is that if the instrument is dishonored he will, upon compliance by the holder with certain conditions, pay the amount of the note. Civ. Code, § 3116. It constitutes, therefore, a conditional promise to pay the note. 'A promise, made in the singular number, but executed by several persons, is presumed to be joint and several.' Civ. Code, § 1660. | "Is a promise, made in the singular number, but executed by several persons, presumed to be joint and several?" |
| 12519 | Jackson v. Pleasonton, 95 Va. 654, 658 (1898) | 1 | An agent may deal directly with his principal, and sell to him property he was employed to buy for him, provided he makes fair and full disclosure to his principal of all the facts and circumstances within his knowledge in any way calculated to enable his principal to judge of the propriety of the transaction, and there is no deception or concealment on the part of the agent; and, in a controversy between a principal and his agent over the validity of such an agreement, the burden of proof is on the agent to show such disclosure, and the perfect fairness of the transaction. | An agent may deal directly with his principal, and sell to him property which he is authorized to buy for him, provided the principal, in making the purchase from him, acts with full knowledge, and there is no deception or concealment on the part of the agent; but, in order to render such an agreement valid and binding, the agent must make a full and fair disclosure of all the facts and circumstances within his knowledge in any way calculated to enable the principal to judge of the propriety of the transaction. Mech. Ag. 466; 1 Am. & Eng. Enc. Law (2d Ed.) 1081. And in a controversy over the validity of such an agreement the burden of proof is upon the agent to show that the principal was fully informed of all the facts within his knowledge, and the perfect fairness of the transaction. | On whom does the burden proof lie to prove that the principal was informed of all the facts? |

| | | | | |
|---|---|---|---|---|
| 12535 | Kansas City, M. & O. Ry. Co. of Tex. v. Wells, 142 S.W. 670, 671 (Tex. Civ. App. 1911) | 1 | An application for a continuance on the ground of the absence of material witnesses, which fails to state that the applicant used due diligence to obtain such testimony, or to set out facts showing that the applicant had used such diligence, is defective. | It fails to allege that appellant used "due diligence" to procure the testimony of the witnesses on account of whose absence the continuance was sought. Pacific Express Company v. Needham, 37 Tex. Civ. App. 129, 83 S. W. 22; Railway Co. v. Aiken, 71 Tex. 377, 9 S. W. 437. It does not state when the witnesses quit the employ of defendant company nor when defendant or affiant learned that fact, nor the date when the interrogatories for the purpose of taking their depositions were filed, nor to whom nor when the commissions were sent, and, in the absence of the statement of such facts, it is impossible for the trial court and this court to determine whether or not defendant used due diligence. | "Is an application for a continuance, on the ground of the absence of witnesses, which fails to state in terms that due diligence was used, held properly denied for want of due diligence?" |
| 12539 | Brown v. Ellis, 103 F. 834, 836 (D. Vt. 1900) | 2 | Where depositions are taken for use in a federal court, upon a commission issued to a notary public, under Rev.St. SS 863-865, 28 U.S.C.A. SS 639-641, providing for the taking of the deposition of an absent, sick, or infirm witness, which shall be subscribed by deponent, and sealed up and directed to the court by the notary taking it, and remain under his seal until broken in court, it is not essential that the notary should attach his official seal to his certificate. | The original order of the comptroller, laying the assessment upon the shares, is attached to a deposition of the receiver, taken upon the same occasion and in the same manner as that of the cashier, and admitted subject to the same objections. This original order of that department of the government, under his official signature and seal, proves itself. | "Where depositions are taken for use in a federal court, is it not essential that the notary should attach his official seal to his certificate?" |
| 12540 | McWilliams v. McWilliams, 68 Ga. 459, 460 (1882) | 1 | The interrogatories prepared prior to the issuance of a commission must state the place of residence of the witness if known. Code, S 3879. | In respect to the first question the Code is explicit that the residence must be stated if known, Code, §3879; but it is insisted that objection should be made as in case of leading questions when the party is served with the interrogatories. The rule of court which requires that objection to leading questions must be made before the issue of commission does not embrace the residence of the witness | Must the interrogatories prepared prior to the issuance of a commission state the place of residence of the witness if known? |
| 12541 | Temby v. William Brunt Pottery Co., 229 Ill. 540, 543, 82 N.E. 336, 337 (1907) | 1 | Where a commission to take depositions is directed to a competent person, he derives his authority from the commission, and because he is described therein as a notary public does not render necessary the affixing of a certificate of his official character to the depositions. | It is not necessary that a commissioner should hold any office, and a commission may be directed to any competent and disinterested person. The person to whom a commission to take depositions is issued need only be designated by his name, or he may be designated by the office which he holds, and in either case he obtains his authority from the commission. Brown v. Luehrs, 79 Ill. 575. The addition of the description to the name of the commissioner did not add to or detract from his authority, and no certificate was necessary. | Does a competent person derive his authority from the commission where a commission to take depositions is directed to him? |
| 12542 | Read v. Patterson, 79 Tenn. 430, 433 (1883) | 6 | It is sufficient if the official character of the commissioner appears from his signature at the end, though not stated in the body, of the certificate. | The fifth and sixth are exceptions of the character of last named exception, and are untenable. The seventh and last exception is because the official character of the justice taking the deposition is not shown in the caption or certificate. The form in the Code, section 3848, does not contain any recital in the caption or certificate of the official character of the officer taking the deposition. It is sufficient if that fact fully appears in the signature of the officer as it does in this case at the end of his certificate. | "Is it sufficient if the official character of the commissioner appears from his signature at the end, though not stated in the body, of the certificate?" |

| 12543 | Dunham v. Halloway, 2 Okla. 78, 35 P. 949 (1894) | 1 | Where a certificate fails to show that depositions were taken at the place named in the notice, and where it further appears that the adverse party was not present when such depositions were taken, the depositions should be suppressed. | Where an officer taking depositions fails to show in his certificate that the same were taken at the place named in the notice, and where it further appears that the adverse party was not present when such depositions were taken, held, that the trial court erred in overruling a motion to suppress such depositions. | "Where a certificate fails to show that depositions were taken at the place named in the notice, should the depositions be suppressed?" |
|---|---|---|---|---|---|
| 12545 | Burley v. Kitchell, 20 N.J.L. 305, 306 (N.J. 1844) | 2 | It is not necessary that it should appear upon the face of the deposition that the witness was cautioned "to testify the whole truth." | Secondly, That it does not appear upon the face of the deposition that the witness was cautioned to testify the whole truth. | "Is it necessary that it should appear upon the face of the deposition that the witness was cautioned ""to testify the whole truth""?" |
| 12563 | Wallace v. Steagall, 52 Ill. App. 471, 475–76 (Ill. App. Ct. 1894) | 6 | A partnership, though insolvent, may sell its property to whomsoever it desires, though thereby the individual creditor of one partner is preferred to the exclusion of the partnership creditors. | so may a firm, though insolvent, sell its property to whomsoever it desires, though thereby the individual creditor of one partner is preferred to the exclusion of partnership creditors. | Does a firm have the same rights to sell its property as that of an individual to sell his separate estate? |
| 12566 | Michael v. Matheis, 77 Mo. App. 556, 561 (1898) | 2 | Where a certificate to a deposition taken before a commissioner, under Rev.St.1889, S 4448, V.A.M.S. S 492.220, is authenticated by the private seal or scrawl of the commissioner, it is sufficient; he not being a public official and having no official seal. | The final certificate to the deposition is sufficient under the decisions. (Jolliffe v. Collins, 21 Mo. 338; Moss v. Booth, 34 Mo. 316; Thomas v. Wheeler, 47 Mo. 363.) The certificate was sufficiently authenticated by the private seal or scrawl of Chestnut. We know of no statute requiring additional proof. Chestnut was not a public official, and therefore he had no official seal. The other objections to the deposition are not of sufficient importance to command any notice. | "Where a certificate to a deposition taken before a commissioner is authenticated by the private seal or scrawl of the commissioner, is it sufficient?" |
| 12572 | Rump v. Woods, 50 Ind. App. 347, 98 N.E. 369, 373 (1912) | 1 | Where plaintiff, whose deposition was taken before trial, desired to make corrections, they should be made before the notary and an opportunity given to the other side to cross-examine with reference thereto. | If any answer has been incorrectly taken down, he may have this corrected, or, if by mistake or through a misunderstanding of the question he has made a wrong answer, he has a right to explain this fact. Such corrections or explanations should be made, however, before the notary who is engaged in taking the examination, either upon notice to the opposite party or his attorneys or upon voluntary appearance. Upon such corrections and explanations being made, either party would then have the right to ask further questions, and the rights of both parties would be thus protected; but, if a party whose examination has been taken has a right to make such changes in his answers as he may desire, without giving the opposite party any opportunity to further question him upon the subject, the purpose of the examination may be defeated. | "Where a plaintiff desires to make corrections, should they be made before the notary and an opportunity given to the other side to cross-examine with reference thereto?" |
| 12582 | Etna Forge & Bolt Co v. Youngstown Sheet & Tube Co, 282 F. 786, 789 (C.A.3 1922) | 2 | To give a custom the force of law, it must be notorious and have existed long enough to justify the inference that the parties had it in view in making their contract. | A custom is a usage which has obtained the force of law; but, to give it this force, it must be notorious, and have existed long enough to justify the inference that the parties had it in view in making their contract. | May a custom be loose and variable to have the force of law? |

| | | | | | |
|---|---|---|---|---|---|
| 12585 | E. Tennessee, V. & G. R. Co. v. Arnold, 89 Tenn. 107, 14 S.W. 439, 439 (1890) | 2 | Certificate to deposition is fatally defective which shows that the deposition was reduced to writing, not by the witness or the officer taking it, but by some third person under the officer's direction. | The deposition of C. J. Pierson was objected to, because of a defective certificate. The objection was well taken and the court erred in overruling it. The objectionable part is: "The foregoing deposition was taken before me, as stated, and reduced to writing by A. S. Dickey, by my direction." Our statute (Mill. & V. Code, § 4602) requires the certificate "shall be substantially," etc., "and reduced to writing by me, or by the witness." | Is a certificate to deposition fatally defective which shows that the deposition was reduced to writing by some third person under the officer's direction? |
| 12594 | Commonwealth v. Union Pac. R. Co., 214 Ky. 339, 283 S.W. 119, 120 (1926) | 3 | State may levy personal tax on persons subject to its jurisdiction and property tax on property within territory. | a state may lay a personal tax upon persons subject to the jurisdiction of its sovereignty, a property tax upon all property located within its territories, and a license tax upon all acts done therein. | Can a state levy personal tax on persons subject to its jurisdiction and property tax on property within territory? |
| 12595 | Davidson Cnty. v. Kirkpatrick, 150 Tenn. 546, 266 S.W. 107, 108 (1924) | 7 | Legislature's power to act within its sphere with respect to public revenue is unlimited except by Constitution. | Beyond the restraint imposed by the Constitution the power of the Legislature to act within its own sphere with respect to public revenue is not limited. | Is the legislature's power to act within its sphere with respect to public revenue unlimited? |
| 12602 | Peru Coal Co. v. Merrick, 79 Ill. 112, 115 (1875) | 1 | A second application for a continuance at the same term will not be heard, unless the second application is based upon facts that have arisen after the first motion was overruled; and, where a second application is made upon substantially the same grounds as the first, it should be overruled, although the facts stated are sufficient to authorize a continuance. | Even if the facts stated in the affidavit were sufficient to authorize a continuance, it has never been the practice in this State for the court to entertain a second application for continuance at the same term, unless the second application is based upon facts that have arisen after the first motion was overruled, which it is not claimed or pretended was the case here. | Can a second application for continuance be admitted? |
| 12630 | McCulloch v. Murphy, 125 F. 147, 150 (C.C.D. Nev. 1903) | 2 | The burden of proving an abandonment of a mining claim, or that the required annual assessment work has not been done, so as to render it subject to relocation, rests on the party asserting it, and the proof must be clear and convincing to establish a forfeiture. | The word 'forfeiture' is not used in the statute, although it is a comprehensive word to express results which flow from a failure to comply with the law. The rule is well settled that the forfeiture cannot be established except upon clear and convincing proof of the failure of the original locator to have work performed or improvements made to the amount required by law. The burden of proof to establish a forfeiture rests upon him who asserts it. Hammer v. Garfield M. & M. Co., 130 U.S.291, 301, 9 Sup.Ct. 548, 32 L.Ed. 964; Book v. Justice M. Co., supra; Justice M. Co. v. Barclay (C.C.) 82 Fed. 554, 559; Emerson v. McWhirter, 133 Cal. 510, 65 Pac. 1036; Axion M. Co. v. White, 10 S.D. 198, 201, 72 N.W. 462. The law is well settled that actual possession of a mining claim is not essential to the validity of a title obtained by a valid location; that until such location is terminated by abandonment or forfeiture *151 no right or claim to the property can be acquired by an adverse entry thereon with a view to the relocation thereof. | Can a forfeiture of a mining claim be established upon clear and convincing proof of the failure of the former owner to have work performed? |

| ID | Case | # | Rule | Full Text | Question |
|---|---|---|---|---|---|
| 12632 | Hare v. First Nat. Bank, 272 S.W. 261, 261 (Tex. Civ. App. 1925) | 1 | Mortgages or other contracts limiting pensioners' rights to receive and use proceeds of warrants void. | Because of the conditions under which the laws of this state extend aid to its old and poor veterans, it is our opinion that all contracts of whatever nature and character, having for their purpose the impounding of unmatured pensions or limiting the rights of pensioners to receive their warrants as and when forwarded to them by the proper officers, and to appropriate and use the proceeds thereof, untrammeled by any contractual obligation, should be held void as against the public policy of this state. | Are contracts or arrangements limiting a pensioners or a public officers rights to receive and use proceeds of warrants void? |
| 12643 | State v. Travelers' Ins. Co., 70 Conn. 590, 40 A. 465, 467 (Conn. 1898) | 2 | A state has a right to debar aliens from holding stock in its corporations, or to admit them to that privilege only on such terms as it may prescribe. | A state has a right to debar aliens (and, as has been stated, it does not appear that any Americans are among the nonresident stockholders in the defendant company) from holding shares in her corporations, or to admit them to that privilege only on such terms as she may prescribe. | Does a state have a right to debar or admit aliens from holding shares in her corporations? |
| 12650 | Clark v. Peabody, 22 Me. 500, 500 (1843) | 3 | The ratification by the payee of an indorsement made thereon by one assuming to act as his agent without authority operates as an indorsement only from the time of the ratification. | The ratification by the payee of a note of an indorsement thereof, made by one assuming to act as his agent without authority from him, can operate only as an indorsement made at the time of the ratification. | How does ratification of an indorsement without authority by payee operate? |
| 12662 | State v. Smith, 10 R.I. 258, 260–61 (1872) | 1 | Under Rev.St. c. 829, § 4, providing for punishment of one selling adulterated milk, the seller of milk takes upon himself the risk of knowing that the article which he offers for sale is not adulterated, rendering it unnecessary to show a guilty intent or knowledge. | The counsel for the defendant further asked the court to charge the jury that there must be evidence of a guilty intent on *261 the part of the defendant, and of a guilty knowledge, in order to convict him, which requests the court refused. Our statute, in that provision of it under which this indictment was found, does not essentially differ from the statute of Massachusetts, and in Massachusetts, previous to the enactment of our statute, the Supreme Judicial Court had determined that a person might be convicted although he had no knowledge of the adulteration; the intent of the legislature being, that the seller of milk should take upon himself the risk of knowing that the article he offers for sale is not adulterated. | "In a prosecution for adulteration, is it the responsibility or the risk of the vendor or a seller to know about the articles he sells or deals with? " |
| 12664 | Sterling & Snapp v. Bender, 7 Ark. 201, 202 (1846) | 3 | A bill or note indorsed in blank is transferable by delivery only, and so long as the indorsement continues in blank, it makes the bill or note in effect payable to bearer. | A bill or note indorsed in blank is transferable by delivery only, and so long as the indorsement continues in blank, it makes the bill or note in effect payable to bearer. | Can a bill or note indorsed in blank is payable to bearer? |
| 12665 | Guernsey v. Imperial Bank of Canada, 188 F. 300, 300-301 (8th Cir. 1911) | 5 | The laws of the place where an indorsement is signed or is delivered so that it becomes a contract govern the necessity of some presentment, demand, and notice of dishonor. | The laws of the place where the indorsement is signed or is delivered so that it becomes a contract govern the validity and extent of the contract, *301 and therefore the necessity of some presentment, demand, protest, and notice of dishonor. | Does the law of the place where the indorsement is signed govern the validity? |
| 12676 | United States v. St. Louis Coffee & Spice Mills, 189 F. 191, 193 (E.D. Mo. 1909) | 2 | The word "adulteration," as used in Food and Drugs Act June 30, 1906, c. 3915, § 2, 34 Stat. 768, 21 U.S.C.A. § 2, means to corrupt, debase, or make impure by an admixture of a foreign, or a baser substance. | By the word 'adulteration,' as used in the act, it is understood to mean 'to corrupt, debase, or make impure by an admixture of a foreign or a baser substance.' | What is adulteration as used in the Food and Drugs Act (Act)? |
| 12677 | Overton v. Hardin, 46 Tenn. 375, 381 (1869) | 2 | An indorser for value, has no remedy against the maker for costs incurred by him in his own defense, but an accommodation indorser may recover from the maker the cost incurred in resisting, in good faith and upon reasonable grounds, a recovery against him upon his indorsement. | An indorser for value, has no remedy against the maker, for costs incurred by him in his own defense. An accommodation indorser, however, may recover from the maker, the costs incurred in resisting, in good faith, and upon reasonable grounds, a recovery against him upon his indorsement: | Can an accommodation indorser recover from the maker? |
| 12678 | Hardy v. De Leon, 5 Tex. 211, 244 (1849) | 19 | A recital of one deed in another binds the parties, and those who claim under them by matters subsequent. | Again, it is a general rule of law that "a recital of one deed in another binds the parties and those who claim under them by matters subsequent." | Does a recital of one deed in another binds the parties and those who claim under them by matters subsequent? |

| ID | Citation | # | Column A | Column B | Question |
|---|---|---|---|---|---|
| 12686 | People ex rel. Griffin v. City of Brooklyn, 4 N.Y. 419, 419 (1851) | 9 | Taxation exacts money from individuals as their share of a public burden, and the taxpayer receives, or is supposed to receive, just compensation in the benefits conferred by government and in the proper application of the tax. | Taxation exacts money from individuals as their share of a public burthen, and the tax-payer receives or is supposed to receive just compensation in the benefits conferred by government, and in the proper application of the tax. | What does taxpayers receive in return for paying taxes? |
| 12693 | Sterling & Snapp v. Bender, 7 Ark. 201, 202 (1846) | 3 | A bill or note indorsed in blank is transferable by delivery only, and so long as the indorsement continues in blank, it makes the bill or note in effect payable to bearer. | A bill or note indorsed in blank is transferable by delivery only, and so long as the indorsement continues in blank, it makes the bill or note in effect payable to bearer. | To whom is the note in effect payable when the indorsement continues in blank? |
| 12712 | Rodgers v. Harper & Moore, 170 Ala. 647, 649–50, 54 So. 199, 200 (1910) | 1 | One placing objects within a highway calculated to frighten horses of ordinary gentleness is liable for injuries to a person caused by the frightening of a horse of ordinary gentleness. | It is a general principle that one placing objects within the limits of a public highway, which are calculated to frighten horses of ordinary gentleness, is liable therefor; but, in order to fix liability, it is necessary to allege *650 and prove that the object is calculated to frighten a horse of ordinary gentleness. | Will placing objects in the highway to frighten horses make one liable? |
| 12719 | Swindell v. Latham, 145 N.C. 144, 58 S.E. 1010, 1012 (1907) | 2 | An agent can only contract for his principal within the limits of his authority, and one dealing with an agent with limited powers must generally inquire as to the extent of his authority. | "That an agent can only contract for his principal within the limit of his authority, and persons dealing with an agent having limited powers must generally inquire as to the extent of his authority." | Can an agent only contract for his principal within the limit of his authority? |
| 12720 | Swindell v. Latham, 145 N.C. 144, 58 S.E. 1010, 1012 (1907) | 2 | An agent can only contract for his principal within the limits of his authority, and one dealing with an agent with limited powers must generally inquire as to the extent of his authority. | (1) "That an agent can only contract for his principal within the limit of his authority, and persons dealing with an agent having limited powers must generally inquire as to the extent of his authority." | "While dealing with an agent, is one required to inquire the extent of his authority?" |
| 12722 | Mitchell v. Teague, 233 S.W. 1040, 1102 (Tex. Civ. App. 1921) | 1 | Where an agent on his own account undertakes to delegate to a third party the performance of a duty which he owes his principal, the subagent must look for his compensation to his immediate employer, and not to the principal. | When an agent, upon his own account, undertakes to delegate to a third party the performance of a duty which he owes his principal, the rule is well settled that the subagent must look for his compensation to his immediate employer, and not to the principal. | Who pays commission to sub-agent employed by an agent? |
| 12734 | Mayor of Savanna v. Hartridge, 8 Ga. 23, 23 (1850) | 9 | Taxation, in reference to the subject matter, is divided by writers on political economy, as well as the tax laws of all governments, into three classes-capitation, property and income; and where one or more is treated of or acted upon, the other is never intended. | Taxation, in reference to the subject matter, is divided by writers on political economy, as well as the tax laws of all governments, into three classes—capitation, property and income; and where one or more is treated of or acted upon, the other is never intended. | What are the three classes of taxation? |
| 12736 | White-Wilson-Drew Co. v. Egelhoff, 96 Ark. 105, 131 S.W. 208, 210 (1910) | 10 | Where a creditor received a note payable at a future date in payment of a past-due debt, the extension of the time to pay was a sufficient consideration to make the creditor a holder for value. | Furthermore, the evidence in this case tended to prove that the account was past due, and that the note was received in payment thereof, and that thereby the time of payment of the debt was extended to the time of the maturity of the note. This extension of the time of payment of the debt by virtue of the execution of the note was sufficient consideration to make the appellant a holder for value. Farmer v. First Nat. Bank of Malvern, 89 Ark. 132, 115 S. W. 1141, 131 Am. St. Rep. 79; Bank of Commerce v. Wright, 63 Ark. 604, 40 S. W. 81; Van Wyck v. Norvell, 2 Humph. (Tenn.) 192; People's Nat. Bank v. Clayton, 66 Vt. 541, 29 Atl. 1020. | Will extension of the time of payment amounts be sufficient consideration to make the debtor a holder for value? |
| 12755 | Graham v. Insurance Co., 176 N.C. 313, 316 (1918) | 8 | Where one deals with an agent, it behooves him to ascertain correctly the extent of the agent's authority and power to contract. | "When one deals with an agent it behooves him to ascertain correctly the extent of his authority and power to contract. | Does it behoove one when dealing with an agent to ascertain correctly the extent of his authority? |

| | | | | | |
|---|---|---|---|---|---|
| 12763 | Twp. of Hutchinson v. Filk, 44 Minn. 536, 537, 47 N.W. 255, 255 (1890) | 3 | While indictment is the common-law remedy for the abatement of a public nuisance, a court of equity will take jurisdiction of a civil action to abate and enjoin the maintenance of an obstruction to a highway which is a public nuisance. | The only common-law remedy for the abatement of a public nuisance was by indictment, but it is now well settled that a court of equity may, in a proper case, take jurisdiction of public nuisances in civil actions for their abatement, and to enjoin their maintenance. This jurisdiction is grounded upon the greater efficacy and promptitude of the remedies administered in such actions, enabling the court to restrain nuisances that are threatened or in progress, as well as to abate those already in existence, and effect their final suppression by injunction, which will often also prevent a multiplicity of suits. Angel & D. Highw. § 280, and notes. | Does equity have the jurisdiction to abate public nuisances? |
| 12771 | Kimball v. Whitney, 15 Ind. 280, 281 (1860) | 6 | A promissory note might, under the old system of practice, be equitably assigned, without indorsement, so as to vest the equitable interest in the assignee, and entitle him to proceed upon it in equity; and by our present statute he can sue in his own name. | A promissory note might, under the old system of practice, be equitably assigned, without indorsement, so as to vest the equitable interest in the assignee, and entitle him to proceed upon it in equity; and by our present statute he can, in such case, sue in his own name. | Can an assignee of a note sue in his own name? |
| 12772 | Connor & Walker v. Donnell, Lawson & Co., 55 Tex. 167 (1881) | 1 | An accommodation note, wherever dated, signed or indorsed, takes effect, and in law is regarded as made, when and where it is actually delivered and negotiated. | An accommodation note, wherever dated, signed or indorsed, takes effect, and in law is regarded as made, when and where it is actually delivered and negotiated. | Where is an accommodation note regarded as made? |
| 12805 | Gulf Ref. Co. v. Cleveland Tr. Co., 166 Miss. 759, 760 (1926) | 1 | "Franchise" is special privilege conferred by governmental authority, and which does not belong to citizens of country generally as matter of common right. | "A franchise is a special privilege conferred by governmental authority, and which does not belong to citizens of the country generally as a matter of common right. | Does franchise belong to the citizens by common right? |
| 12869 | Providence Bank v. Billings and Pittman, 29 U.S. 514, 524 (1830) | 15 | The power of legislation and consequently of taxation operates on all the persons and property belonging to the body politic. | The power of legislation, and consequently of taxation, operates on all the persons and property belonging to the body politic. | Does the power of taxation operate on all the persons and property belonging to the body politic? |
| 12883 | Thornton v. Dean, 19 S.C. 583 (1883) | 3 | If a contract be entered into in one place to be performed in another, the parties may stipulate for the rate of interest of either country; if the contract stipulate generally for interest without fixing the rate, it should be the rate of interest at the place of payment; if no interest be stipulated, and payment be not made, interest by way of damages is according to the law of the place of payment. | If a contract be entered into in one place to be performed in another, the parties may stipulate for the rate of interest of either country. (2.) If the contract stipulate generally for interest without fixing the rate, it shall be the rate of interest at the place of payment. (3.) If no interest be stipulated, and payment be not made, interest by way of damages is according to the law of the place of payment," &c. | Can parties stipulate the rate of interest? |
| 12884 | Johnston v. Gawtry, 83 Mo. 339, 342-43 (1884) | 1 | The state in which a note is made payable, and in which it is delivered in consummation of a bargain, is the place of the contract. | 322, and it is there held that the state in which a note is made payable, and in which it is delivered in consummation of a bargain, is the place of the contract, though the note is executed in another state; | Is the state in which a note is made payable and in which it is delivered in consummation of a bargain the place of the contract? |
| 12885 | Evans v. Anderson, 78 Ill. 558, 559-560 (Ill. 1875) | 1 | The existing laws of the state at the time of making a note therein form a portion of the contract, and the liability of the maker must be determined under them. | The existing laws of a State at the time of making a note, form a portion of the contract, and the liability of the maker must be determined under *560 them. | Which law determines the liability of the maker of a note? |

| | | | | | |
|---|---|---|---|---|---|
| 12906 | People ex rel. Spiers v. Lawley, 17 Cal. App. 331, 347, 119 P. 1089, 1095 (Cal. Ct. App. 1911) | 9 | Where a grant of a franchise to construct and maintain a toll road contained in itself no provision requiring that the consent of the state should first be obtained before the right to sell or transfer the franchise could be exercised, or any statute to that effect, it might be transferred without the consent of the state. | This being true, and since there is no provision in the grant itself or of any statute to which my attention has been directed expressly requiring that the consent of the state shall first be obtained before the right to sell or transfer the franchise may be exercised, manifestly said franchise may be transferred without the consent of the granting power. | Can franchises be transferred without consent? |
| 12915 | Buck v. Davenport Sav. Bank, 29 Neb. 407, 45 N.W. 776, 776 (1890) | 1 | A writing on the back of a *note* , "Demand, notice, and protest waived, and payment guarantied," signed by the payee of the note, is an indorsement. | "For value received, I hereby guaranty payment of the within note, and waive presentation, protest, and notice." This was held to be an indorsement with an enlarged liability. Bank v. Haylen, 14 Neb. 480, 16 N. W. Rep. 754. The writing on the back of the note in question, therefore, was a valid indorsement with an enlarged liability. | Does a writing protest waived on the back of a note constitutes an indorsement with enlarged liability? |
| 13002 | Merrick v. Britton, 26 Ark. 496, 503 (1871) | 2 | Where a party, for any good cause, is unprepared to go to trial, and fails by motion to postpone or continue, to show the fact to the court, at the proper time, he waives his want of preparation, and all right to afterwards object. | It is therefore incumbent upon a party, if for any good cause he finds himself unprepared to go on, to state the circumstances to the court and move a postponement of his case. If he fails to do so, he waives his want of preparation, and all right after to object. In the case at bar, no motion for continuance was made, no examination of witness previous to his being put upon the stand-no inquiry made where the instrument, upon which the very substratum of the suit was founded, was, or in whose possession it might be found, or whether he could prove its existence or not, or if found, whether it could be authenticated. | Should a party who is unprepared to go to trial move for a continuance at the proper time? |
| 13028 | McDaniel v. Plumbe, 3 Greene 331, 331 (1851) | 1 | A bill of discovery is subject to equity jurisdiction only, and cannot come up for correction of error at law. | A bill of discovery is subject to equity jurisdiction only, and cannot come up for correction of error at law. | Is a bill of discovery subject to equity jurisdiction only and cannot come up for a correction of error at law? |
| 13035 | Cady v. Bay City Land Co., 102 Or. 5, 12, 201 P. 179, 181 (1921) | 2 | Since one who writes his name on the back of a negotiable instrument may enlarge or restrict his liability without destroying his character as an indorser, a writing by the payee on the back of a promissory note, "Notice of protest waived and payment guaranteed," passed title to his assignee; such guaranty of payment being equivalent to an indorsement, and the rights of the parties, in view of Or.L. S 7910, ORS 71.118, requiring protest only in case of foreign bills of exchange, not being affected by such waiver of notice. | It is stated in Voss v. Chamberlain, 139 Iowa, 569, 117 N. W. 269, 19 L. R. A. (N. S.) 106, 130 Am. St. Rep. 331, that— "The indorsement by the payee of a note, of his name under a guaranty of payment, combined with a waiver of demand, notice, and protest, constitutes a blank indorsement, so as to pass title to one who takes the paper in due course for value." | "Are indorsements with waiver of notice, demand and protest capable of passing title?" |
| 13053 | Montgomery v. Keppel, 75 Cal. 128, 131, 19 P. 178, 179–80 (1888) | 3 | Having readily accessible means of acquiring knowledge of a fact, which he might have ascertained by inquiry, is equivalent to notice and knowledge of it. | Having **180 readily accessible means of acquiring knowledge of a fact, which he might have ascertained by inquiry, is equivalent to notice and knowledge of it. | Is readily accessible means of knowledge the equivalent to notice? |

| | | | | | |
|---|---|---|---|---|---|
| 13093 | Willison v. Watkins, 28 U.S. 43, 47, 7 L. Ed. 596 (1830) | 7 | The principle of estoppel applies to the relation between landlord and tenant and operates in its full force to prevent tenant from violating contract whereby he obtained and holds possession. | It is an undoubted principle of law fully recognised by this court, that a tenant cannot dispute the title of his landlord, either by setting up a title in himself, or a third person, during the existence of the lease or tenancy. The principle of estoppel applies to the relation between them, and operates in its full force to prevent the tenant from violating that contract by which he obtained and holds possession. | Is a tenant estopped from questioning his landlords title? |
| 13106 | Green v. State Civ. Serv. Comm'n, 90 Ohio St. 252, 107 N.E. 531 (1914) | 3 | Civil service law, authorizing civil service commission to provide rules as to civil service, are not a delegation of powers to enact laws in violation of Const. art. 1, S 18. | The provisions of the civil service law (103 O. L. 698), authorizing the civil service commission to prescribe, amend, and enforce rules with reference to the civil service of the state and the several counties and cities, do not constitute a delegation of power to enact laws, nor are the provisions of that statute, which authorize the commission under certain defined circumstances to omit competitive examinations, repugnant to section 18, article I, of the Constitution, which prohibits the exercise of the power of suspending laws except by the General Assembly. | Does authorizing a Civil Service Commission to provide rules to the civil service constitute a delegation of legislative power? |
| 13120 | Forrest v. Durnell, 86 Tex. 647, 649 (1894) | 4 | The relation of landlord and tenant does not exist unless there be a reversionary interest in the former; and out of this arises the distinction between assignments of leases and under-leases. If a lessee parts with his whole term in all the rented premises, no reversionary interest remains in him and a person taking through him is an assignee liable to payment to the landlord as the original lessee contracted to pay. If he rents parts of it to different persons for the entire term, such persons to the extent of their several holdings are also assignees and in so far liable to the lessor, just as was the original lessee. | The relation of landlord and tenant strictly does not exist unless there be a reversionary interest in the former, and out of this arises the distinction between assignments of leases and under-leases. If a lessee parts with his whole term in all the rented premises, no reversionary interest remains in him, and a person taking through him is an assignee, liable to pay rent to the landlord as the original lessee contracted to pay. If he rents parts of it to different persons for the entire term, then such persons, to the extent of their several holdings, are also assignees, and in so far liable to the lessor, just as was the original lessee. | Is the relationship between a landlord and a tenant created by the existence of a reversionary interest in the property? |
| 13171 | Chicago W. Div. Ry. Co. v. Rend, 6 Ill. App. 243, 249 (Ill.App. 1 Dist. 1880) | 1 | Where an injury is inflicted to a plaintiff's right by a willful act of force, it constitutes a trespass. | Where an injury is inflicted to a plaintiff's right by a willful act of force, it constitutes a trespass. | Can an injury inflicted to a plaintiff's right by a willful act constitute a trespass? |
| 13196 | Weaver v. Palmer Bros. Co., 270 U.S. 402, 415, 46 S. Ct. 320, 323, 70 L. Ed. 654 (1926) | 7 | Act prohibiting use of shoddy in manufacture of comfortables held violative of due process clause. Act Pa. June 14, 1923, SS 1, 2, P.L. 802, 35 P.S. S 961 et seq.; U.S.C.A.Const. Amend. 14. | The business here involved is legitimate and useful; and, while it is subject to all reasonable regulation, the absolute prohibition of the use of shoddy in the manufacture of comfortables is purely arbitrary and violates the due process clause of the Fourteenth Amendment. | Whether the absolute prohibition of the use of shoddy in the manufacture of comfortables violates the due process clause? |
| 13212 | Charles v. Eshleman, 5 Colo. 107, 111 (Colo. 1879) | 4 | The reason for the distinction between the ordinary commercial partnership and a mining partnership, and for limiting the powers of the members of the latter class, is that the mining partnership is not founded on the delectus person? , whereas the other class is. | The reason assigned for the distinction between the ordinary commercial partnership and a mining partnership, and for limiting the powers of partners of the latter class, is, that a mining partnership is not founded on the delectus personoe whereas the other class is. | Is a mining partnership founded on the delectus personae? |
| 13219 | Chenoweth v. Maloy, 143 Md. 622, 123 A. 77, 80 (1923) | 2 | Under Acts 1910, c. 180, creating the Public Service Commission and providing for regulation of public service corporations, the Commission may grant the United Railways Company, of Baltimore, the right to collect a greater passenger fare than that prescribed by Acts 1900, c. 313, now Revised Charter of Baltimore City 1915, S 796, Code Pub.Loc.Laws, art. 4, S 768, in view of SS 311/212 and 55, repealing inconsistent acts or parts thereof. | "In order to remove any statutory barrier to its comprehensive effect, as to rate regulation, the Public Service Commission Law repealed all acts or parts of acts, theretofore passed and then existing, which prescribed or limited the price of any product or utility furnished by any corporation to which the new system of regulation was in general terms made applicable. Code, art. 23, § 444." | Did the Public Service Commission repeal all acts that prescribed or limited the price of a product furnished by any corporation applicable to the new system of regulations? |

| | | | | | |
|---|---|---|---|---|---|
| 13266 | Gerber v. Sharp, 72 Ind. 553, 557 (1880) | 1 | A. was surety for B. on a note to C. for part of the purchase money of real estate. B. at the same time made a note for the residue and a mortgage on the real estate to C. to secure the payment of both notes. Afterwards, the first note being due, C. recovered judgment thereon against B. as principal and A. as surety, and, as B. was then insolvent, A. paid the judgment in full, and then brought suit to foreclose the mortgage for the amount paid. Held, that the suit could be maintained, and that A. was entitled to be subrogated to all C.'s rights in the mortgage. | "Moreover, as soon as the surety has paid the debt, an equity arises in his favor to have all the securities, original and collateral, which the creditor holds against the person or property of the principal debtor, transferred to him, and to avail himself of them as fully as the creditor could have done: for the purpose of obtaining indemnity from the principal, he is considered as at once subrogated to all the rights, remedies and securities of the creditor; as substituted in the place of the creditor, and entitled to enforce all his liens, priorities and means of payment, as against the principal, and to have the benefit even of securities that were given without his knowledge. * | Is the rule that a surety who has paid the debt of a principal is entitled to be substituted in place of creditor as to all securities held by him for payment of debt applies whether security is real or personal property? |
| 13271 | Duryee v. Turner, 20 Mo. App. 34, 35 (1885) | 1 | In the absence of any agreement between the landlord and tenant as to when the rent for a farm is to be paid, it is payable at the end of the year, and an action to recover it cannot be maintained before that time. | The rule of law is that in the absence of any agreement between the landlord and tenant as to when the rent is to be paid, it is payable at the end of the year. | "If an agreement between the landlord and tenant as to when the rent is to be paid is absent, is it payable at the end of the year?" |
| 13276 | Spielman v. State, 27 Md. 520, 524 (1867) | 1 | A demurrer opens for review all the previous pleadings, and notwithstanding the defectiveness of the pleading demurred to, the court in criminal as well as in civil proceedings, gives judgment against the party who in pleading committed the first error. | By the demurrer all the pleadings are open for review, and it is an established principle in pleading, both civil and criminal, that on a demurrer the Court gives judgment against the party whose pleading was first defective, notwithstanding the defect of the pleading demurred to. | Does a demurrer open all pleadings? |
| 13283 | State v. Torbert, 200 Ala. 663, 664, 77 So. 37, 38 (1917) | 7 | Under Code 1907, S 6698, probate judge of Hale county is clerk of county court of which he is also judge; provision of Acts 1915, p. 865, S 9, subsec. 3, which makes clerk of circuit court ex officio clerk of county court, being limited to counties having more than 26,000 and less than 26,100 inhabitants. | By virtue of the Code provisions, the probate judge of the county is made ex officio judge and clerk of the county court. In some of the counties having county courts since the Penal Code of 1866, other judges, by virtue of local acts, have been provided for the county courts, and the clerks of the circuit courts made ex officio clerks of the county courts. | Will the clerks of a circuit court be ex-officio clerks of a county court? |
| 13289 | Chicago Ry. Equip. Co. v. Merchants' Nat. Bank, 136 U.S. 268, 284, 10 S. Ct. 999, 1003, 34 L. Ed. 349 (1890) | 1 | An instrument in the usual form of a promissory note, to pay to the order of the payee a certain sum at a certain time, contained the statement that it was one of a series of 25 notes, and should "become due and payable to the holder on the failure of the maker to pay the principal and interest of any one of the notes of said series," and that all of said notes were "given for the purchase price of 250 railway freight cars manufactured by the payee hereof, and sold by said payee to the maker hereof, which cars are numbered from 13,000 to 13,249, inclusive, and marked on the side thereof with the words and letters, 'Blue Line, C. & E.I.R.R. Co.'; and it is agreed by the maker hereof that the title to said cars shall remain in the said payee until all the notes of said series, both principal and interest, are fully paid, all of said notes being equally and ratably secured on said cars." Held, that the note was negotiable. | It is true that, upon the failure of the maker to pay the principal and interest of any note of the whole series of 25, the others would become due and payable: that is, due and payable at the option of the holder. But a contingency under which a note may become due earlier than the date fixed is not one that affects its negotiability. | Does failure to pay series of notes affect the negotiability of the instrument? |
| 13294 | Corwin v. Shoup, 76 Ill. 246, 250 (1875) | 2 | A plea of release of errors must state the facts relied upon, and one which merely averred that the errors were released, without stating in what manner or by what act they were released, was insufficient. | The first plea is too general: it only avers that the errors were released, without stating in what manner. It does not aver that it was by deed, by parol, or by acts in pais. A plea of this kind should state the facts that are relied on as a release of errors. | Should a plea of release of errors state the facts relied upon? |

| ID | Citation | Col3 | Holding | Quote | Question |
|---|---|---|---|---|---|
| 13331 | Jones v. Bruce, 211 S.W. 692, 693 (Mo. App. 1919) | 3 | In a contest between alleged partners, the proof of partnership must be by the clearest and most positive evidence. | And it has been ruled by our Supreme Court (especially applicable to a partnership of this character) that in a contest between alleged partners the proof of a partnership "must be by the clearest and most positive evidence." | Will the proof of partnership have to be by the clearest and most positive evidence when partnership has been contested between alleged partners? |
| 13351 | People v. McCue, 150 Cal. 195, 197–98, 88 P. 899, 900 (1907) | 5 | In an action by the people to abate an obstruction in a highway, the complainant alleged certain probative facts but alleged that the street was a public highway, and the court, in addition to finding the probative facts alleged, found, under the "findings of facts," that the street was a public highway. Held that, though the former facts found did not show that the street was a public highway, such fact was of no avail to defendant on appeal, as the latter finding of the court was a finding of an ultimate fact and could not be treated as a conclusion of law or as a mere general conclusion of fact from the specific facts previously found. | ' The trial court, in addition to finding certain probative facts, found as a fact, in express terms and unconditionally, 'that each and all of said streets are public highways.' This was undoubtedly a finding of the ultimate fact. People v. McCue, 150 Cal. 195, 197, 88 P. 899, 900 (1907) | "Is an allegation that a street is a highway, an allegation of ultimate fact?" |
| 13356 | Jacobs v. Jacobs, 127 Misc. 505, 506–07, 217 N.Y.S. 280, 282 (Sup. Ct.), aff'd, 217 A.D. 753, 217 N.Y.S. 918 (App. Div. 1926) | 5 | Right to discontinue matrimonial action may be denied in its entirety, unconditionally, in proper case. | The right to discontinue may be denied in its entirety unconditionally *507 in a matrimonial action in a proper case. | "Can the right to discontinue a matrimonial action be denied in its entirety, unconditionally?" |
| 13357 | State ex rel. Meramec Iron Co. v. Gaddy, 83 Mo. 138, 142 (1884) | 1 | It is only where the action of the court on the trial is such as to preclude the plaintiff from a recovery that it is proper to suffer a nonsuit. | It was voluntary and unnecessary. "It is only where the action of the court, on the trial, is such as to preclude the plaintiff from a recovery that it is proper to suffer a non- suit. | Is it only where the action of the court on the trial is such as to preclude the plaintiff from a recovery that it is proper to suffer a nonsuit? |
| 13413 | Shanks v. Klein, 104 U.S. 18, 23–24, 26 L. Ed. 635 (1881) | 3 | Real estate purchased with partnership funds for partnership purposes, though the title be taken in the individual name of one or both partners, is first subject to the partnership debts, and is then to be distributed among the copartners according to their respective rights. | In Dupuy v. Leavenworth (17 Cal. 262), Chief Justice Field, in the name of the court, said: 'In the view of equity it is immaterial in whose name the legal title of the property stands,—whether in the individual name of the copartner, or in the joint names of all; it is first subject to the payment of the partnership debts, and is then to be distributed *24 among the copartners according to their respective rights. The possessor of the legal title in such case holds the property in trust for the purposes of the copartnership. Each partner has an equitable interest in the property until such purposes are accomplished. Upon dissolution of the copartnership by the death of one of its members, the surviving partner, who is charged with the duty of paying the debts, can dispose of this equitable interest, and the purchaser can compel the heirs-at-law of the deceased partner to perfect the purchase by conveyance of the legal title.' | Does partnership real estate have to be applied to the satisfaction of the partnership debts? |
| 13457 | People v. Mire, 173 Mich. 357, 359, 138 N.W. 1066, 1066 (1912) | 2 | The punishment, imprisonment for not less than 15 years nor more than 30 years, prescribed by Pub.Acts 1907, No. 64, for one who with intent to commit crime breaks and enters a building, and for purpose of committing any crime uses a high explosive, is not cruel and unusual. | 'Section 1. Any person who, with intent to commit crime, breaks and enters any building and for the purpose of committing any crime, uses or attempts to use nitroglycerine, dynamite, gunpowder, or any other high explosive, shall be deemed guilty of burglary with explosives, and on conviction shall be punished by imprisonment for a term of not less than 15 years nor more than 30 years. | What is the punishment for burglary with use of explosives? |

| | | | | | |
|---|---|---|---|---|---|
| 13473 | Railey v. State, 58 Tex. Crim. 1, 13, 121 S.W. 1120, 1122 (1909) | 1 | Pen.Code 1895, art. 838 (Vernon's Ann.P.C. art. 1389), provides that burglary is constituted by the entrance of a house by force, threats, or fraud, with intent to commit a felony or theft. Article 839 (1390) provides that one is guilty of burglary who, with intent to commit a felony or theft, by breaking enters the house in the daytime. Article 841 (1393) provides that the entry may consist of the entry of any part of the body, or that the offense may be constituted by the discharge of firearms into the house with the intent to injure the person therein. Held, that article 841 (1393) is but an addition to articles 838 and 839 (1389, 1390), and under the three articles, burglary may consist of entering a house by force, etc., or in entering a house and remaining therein with the intent to commit a felony, or by the discharge of firearms into a house with the intent to injure the person therein, and the intention need not be to commit a felony. | As appellant insists, article 838 of the Penal Code of 1895 provides that burglary is constituted by the entrance of a house by force, threats, or fraud, with intent to commit a felony or the crime of theft. Article 840 of the Penal Code of 1895 provides that it is not necessary that there should be an actual breaking to constitute the offense of burglary, except when the entry is made in the daytime. Article 841 provides the entry is not confined to the entrance of the whole body. It may consist of the entry of any part for the purpose of committing a felony, or it may be constituted by the discharge of firearms or other deadly missiles into the house with the intent to injure the person therein. Appellant contends that article 841 does not define a separate and distinct offense, but is explanatory of articles 839 and 840, and that there cannot be burglary unless the intent is to commit a felony or the crime of theft, and therefore, to discharge firearms into the house with intent to injure, an intent to injure not necessarily being a felony, that it would not be burglary, unless there was a felonious purpose. | Does entry in a burglary involve the discharge of firearms? |
| 13477 | Bd. of Comm'rs of Tipton Cnty. v. Brown, 4 Ind. App. 288, 30 N.E. 925, 927 (1892) | 6 | The sickness of counsel is not a sufficient ground for continuance, where it is not shown that such sickness prejudiced the client's case. | Nor do we think the sickness of counsel was a sufficient ground for continuance. It is not stated in the affidavit how long Mr. Gifford had been sick, and, for aught we know, sufficient time may have elapsed for employing additional counsel or for giving Mr. Fippen, the partner of the absent attorney, ample instructions as to the defense, and advising him in the premises. We do not think it is shown that the absence of the attorney Gifford prejudiced the appellant's case. | "Is the sickness of counsel not a sufficient ground for continuance, where it is not shown that such sickness prejudiced the client's case?" |
| 13493 | Twp. of Crane v. Secoy, 103 Ohio St. 258 (1921) | 1 | A public office is a public trust, and public property and public money in the hands of or under the control of a public officer constitute a trust fund for which the official as trustee is responsible to the same degree as the trustee of a private trust fund. | It is pretty well settled under the American system of government that a public office is a public trust, and that public property and public money in the hands of or under the control of such officer or officers constitute a trust fund, for which the official as trustee should be held responsible *260 to the same degree as the trustee of a private trust fund. | Is a public office a public trust? |
| 13520 | Prather v. Pritchard, 26 Ind. 65, 65–66 (1866) | 4 | It is not necessary that the names of the witnesses examined should be stated in the certificate of the officer taking the deposition. It is sufficient if they are referred to as "the above-named deponents.". | The court refused to suppress the depositions of James McCormick and others. The objection urged was that the justice before whom they were taken did not set out *66 the names of the witnesses in his certificate. There is nothing in the objection. Their names were properly stated in the depositions, and they are referred to in the certificate as "the above named deponents." This was sufficient. | Is it not necessary that the names of the witnesses examined should be stated in the certificate of the officer taking the deposition? |
| 13528 | Columbus Tr. Co. v. Upper Hudson Elec. & R. Co., 190 N.Y.S. 737, 739–40 (Sup. Ct. 1921) | 2 | In Civil Practice Act, S 1569, permitting a judge to apply the remedial provisions of that act to suits pending when it took effect, the term "remedial," which means a statute to supply some defect or abridge some superfluity of the common law or to give a new remedy, was evidently used in view of the distinction between remedial statutes which can be made applicable to pending actions and those statutes which create new rights or affect existing rights, and the provisions of article 9 of that act for the examination of witnesses before trial are within the term. | It is my conclusion that 'a remedial provision' as used in section 1569 of the Civil Practice Act is one which supplies a new remedy, *740 or corrects defects, or abridges superfluities in existing remedies, as an aid to the enforcement of rights or the redress of wrongs, and is to be construed liberally and beneficially in the interest of the public good. | "What does the term ""remedial"" mean?" |
| 13530 | White v. Dougherty, 8 Tenn. 309, 308 (1827) | 6 | The joint creditors of a partnership have in equity a general lien on the funds of the partnership, and are entitled to payment out of the partnership effects, in preference to creditors of an individual member of the firm. | For it is well settled that the joint creditors of a partnership have, in equity, a general lien on the funds of the partnership, and that, in case of insolvency, they are to be preferred to the creditors of an individual member of the firm. | "In cases of insolvency, do the partnership creditors have a right to payment from the partnership fund in preference to individual creditors of the partners?" |

| | | | | | |
|---|---|---|---|---|---|
| 13532 | Gulf City Ins. Co. v. Stephens, 51 Ala. 121, 122 (1874) | 4 | When the certificate of the commissioner states that the witnesses were "duly sworn" it will be presumed that they were sworn, as the statute requires (Rev.Code, S 2720), "to speak the truth, the whole truth, and nothing but the truth." | Here, the commissioner certifies that the witnesses were "duly sworn." This could not be true, unless the witnesses were sworn to "speak the truth, the whole truth, and nothing but the truth," as our statute requires. And such is the proper and legal presumption. 9 Port. 157; 2 S. & P. 28. I think the certificate, in this respect, is sufficient. | "When the certificate of the commissioner states that the witnesses were ""duly sworn"", will it be presumed that they were sworn, as the statute requires?" |
| 13540 | Henry v. Huntley, 37 Vt. 316, 319 (1864) | 1 | Where the name of a magistrate is inserted in a citation for taking a deposition, the party taking the deposition is not at liberty to go to another magistrate. | But we all agree, that when it is inserted as it is claimed to be in this case, the party taking the deposition is not at liberty to go to another magistrate to take the deposition. Such a practice would give great opportunity for unfairness and fraud. The adverse party knowing the character and ability of the magistrate might omit to attend and send interrogatories for him to put to the witness; and thus, if the deposition were taken before another, lose the opportunity of cross-examination. | "Where the name of a magistrate is inserted in a citation for taking a deposition, is the party taking the deposition not at liberty to go to another magistrate?" |
| 13541 | Kirby v. Cannon, 9 Ind. 371, 373 (1857) | 4 | A party cannot retake the deposition of a witness, or take his supplementary deposition, without leave of court. | A party cannot retake the deposition of a witness, or take his supplementary deposition, without leave. | "Can a party retake the deposition of a witness, or take his supplementary deposition, without leave of court?" |
| 13542 | Cook v. Shorthill, 82 Iowa 277, 48 N.W. 84, 85 (1891) | 4 | Under Code 1873, S 3738, providing that where depositions are taken on interrogatories neither of the parties, their agents or attorneys, shall be present unless both are present, and that the certificate shall state the fact if the party is present, a deposition will not be suppressed because the notary's certificate recites that it was reduced to writing by another person in his presence, unless it is shown that such person was a party, or the agent or attorney of a party. | But when depositions are taken on commission, with interrogatories attached, neither party can attend in person, nor by attorney, unless the adverse party is present or is represented. Code, § 3738. It is not the intent of the statute to allow the person on whom the notice is served in such cases time in which to reach the place where the depositions are to be taken, before the commission issues, nor is it designed to allow time for him to communicate with the witness before filing his cross–interrogatories. | "When depositions are taken on commission, with interrogatories attached, can party attend in person or by attorney, unless the adverse party is present or is represented?" |
| 13549 | Chicago, M. & St. P. Ry. Co. v. Lindeman, 143 F. 946, 947 (C.A.8 1906) | 1 | A custom must be uniform, certain, and known, or so notorious that a person of ordinary prudence in the exercise of reasonable care, dealing with its subjects, would have been aware of it. | A custom must be uniform, certain, and known, or so notorious that a person of ordinary prudence, in the exercise of reasonable care, dealing with its subject, would have been aware of it. | "Does a custom have to be uniform, definite, and certain to be binding?" |
| 13550 | Rindskoff Bros. v. Barrett, 14 Iowa 101, 105 (1862) | 4 | The requisites of a good custom are, that it must be established, uniform, general and known to the parties: the degree in which all these should attach, must depend upon the peculiar circumstances of each case. | The characteristics of a good custom are said to be that it shall be established-- uniform, general and known to the parties. But, as before suggested, the degree in which all these should attach must depend, in each case, upon its peculiar circumstances. | What are the characteristics of a good custom? |
| 13555 | Strong v. Gunning, 153 Ill. App. 182, 185 (Ill. App. Ct. 1910) | 2 | A defendant is not entitled several terms after filing his plea to a continuance under Practice Act 1907, S 32, Smith-Hurd Stats. c. 110, Appendix S 32. Similar provisions Civil Practice Act 1933, see S.H.A. ch. 110, S 36. | The suit was brought July 3, 1905, defendant's pleas were filed March 9, 1906, and the cause was called for trial July 7, 1908. Defendant then moved for a continuance on the ground that no copy of the instrument sued on was filed with the declaration, and his motion was denied. He was not entitled, several terms after filing his pleas, to a continuance under the provisions of section 32 of the Practice Act. | Is a defendant not entitled to several terms after filing his plea to a continuance? |
| 13559 | Fisk v. Tank, 12 Wis. 276, 299 (1860) | 26 | A deposition is not invalidated for want of a venue or statement of the place of taking, either in its margin or the commissioner's certificate. | The deposition of the defendant Verbeck was properly admitted. The want of a venue or statement of the place where it was taken, either in its margin or the certificate of the commissioner before whom it was taken, does not invalidate it. | Is a deposition not invalidated for want of a venue or statement of the place of taking? |
| 13560 | Hale v. Gibbs, 43 Iowa 380, 381 (1876) | 1 | It is competent for the party who has taken a deposition to refuse to offer it, or any part of it, in evidence, but he cannot withdraw it from the files. | There is nothing gained, therefore, to plaintiffs by this amended abstract. Without passing upon defendant's motion, for we are in doubt whether it be well taken, we will consider the case solely upon his abstract. He cannot, therefore, complain because his motion is not acted upon. | "Is it competent for the party who has taken a deposition to refuse to offer it, or any part of it, in evidence, but he cannot withdraw it from the files?" |
| 13561 | Succession of Grant, 14 La. Ann. 795, 797 (1859) | 3 | The capacity and signature of a justice of the peace who has taken a deposition under commission in another state must be established by the certificate of the governor, under the great seal of the state. | The fifth bill of exceptions is to the refusal of the Judge, to receive in evidence certain depositions taken under a commission in the State of Massachusetts, on the ground, that the official capacity and signature of the Justice of the Peace by whom they purport to have been received, had not been legally proved by the certificate of the Governor, under the seal of the State. | Is a certificate of authentication required from a justice of the peace of a state to take a deposition of another state? |

| | | | | | |
|---|---|---|---|---|---|
| 13562 | Ankrim v. Sturges, 9 Pa. 275, 275 (1848) | 1 | Where a rule of court provides that depositions shall not be read unless filed within a reasonable time, and depositions were taken, and the cause continued because they were not filed, and the depositions were then filed, they may be read on the trial of the cause. | The depositions shortly after were duly filed, and more than a year after, the cause again came on for trial, when the depositions were offered in evidence and rejected by the court, because they were not filed in a reasonable time. We cannot concur in this construction of the rule. We think the depositions ought to have been received. As one of the depositions fully proves the ancient deed, it is not necessary to determine whether it was error to reject it without proof. | Does the rule of court require depositions to be filed within a reasonable time? |
| 13584 | Cheney v. Woodworth, 13 Colo. App. 176, 178 (1899) | 1 | The provision that, before signing a deposition, the interrogatories and the answers thereto shall be carefully read to the witness, will conclusively be presumed to have been complied with, where the witness has signed the deposition, and the officer taking it certifies that, before so doing, it was read to him. | Upon trial, the deposition of plaintiff was read in evidence. Defendant assigns error upon the refusal of the court to suppress this deposition. The ground of his motion therefor was that the certificate of the officer who took the deposition was simply to the effect that it was read to the witness previous to his signature; the complaint of defendant being that the officer should have certified that the deposition was "carefully" read before signing, following the words of the statute. The certificate of the officer was a full compliance with the statute. | "Before signing a deposition, shall the interrogatories and the answers thereto be carefully read to the witness?" |
| 13633 | State ex rel. Owen v. Donald, 160 Wis. 21, 151 N.W. 331, 334 (1915) | 115 | The language of the constitution as to state taxation, though, in form, a grant of power, is, in fact, a limitation thereof. It must be read in the light of the rule peculiarly adaptable to the construction of such constitutional provisions, Expressio unius exclusio alterius. | Syllabus by the Judge: The language of the constitution as to state taxation, though, in form, a grant of power, is, in fact, a limitation thereof. It must be read in the light of the rule peculiarly adaptable to the construction of such constitutional provisions, expressio unius exclusio alterius. | Is the language of the Constitution as to state taxation a limitation of power? |
| 13652 | Seufert v. Gille, 230 Mo. 453, 131 S.W. 102, 109 (1910) | 13 | Where, in an action on a note executed in the name of a firm by a partner V. after dissolution, the issue was whether his copartner G. had by his course of conduct clothed V. with apparent authority to sign the note, and G. admitted that he knew that V. had borrowed money of plaintiff, and that he himself, had agreed with V. that the latter should pay the partnership debts, and V. testified that he had told G. that money had been borrowed from plaintiff, and that G. had said on one occasion that he would like to see plaintiff paid, evidence that G. had borrowed money from plaintiff in the name of the firm after the dissolution of the firm, and that the note sued on was in renewal of notes evidencing such indebtedness, was admissible to establish G.'s implied assent to V.'s attempt to bind the firm on the note sued on. | "The principle is well established that, after the dissolution of a partnership, one partner cannot bind the other by drawing a note in the partnership name, unless he had a particular power for that purpose. A general authority to settle the partnership concerns does not create such a power." In that case the partnership had borrowed money from Story, and, after its dissolution, one of the partners in the name of the firm executed the note sued on, and there was also testimony that the other partner had stated to the payee's agent before the note was signed that the signing partner "had authority to sign for both, and, if he signed, it would be all right." It was also held in that case, in effect, that if the dissolution of the firm was known to the payee of the note when it was given, although it was given in renewal of a note given for money borrowed while the partnership was a going concern, the plaintiff could not recover, unless the defendant partner had expressly authorized the renewal. We think this last holding was the law. | Can a partner execute a note in the name of the firm after its dissolution by renewal of the note of the firm to bind other partners or the firm? |
| 13653 | Farrar v. Gilman, 19 Me. 440, 441 (1841) | 2 | The indorsement of negotiable paper belonging to a bank by a cashier is prima facie evidence of a legal transfer of such paper. | But as he is held out to the public as the confidential officer and actuary of the bank, as he is under bonds for the faithful performance of his duties, and as he acts as their organ in the transfer of negotiable paper, it is not in our opinion too much to hold, that when he indorses such paper, belonging to the bank, in his official capacity, it is prima facie evidence of a legal transfer. | Is an indorsement prima facie evidence of a legal transfer of a negotiable note? |
| 13655 | First Nat. Bank v. Lock-Stitch Fence Co., 24 F. 221, 224 (C.C.N.D. Ill. 1885) | 2 | A third party who places his name upon the back of a negotiable promissory note at the time of its execution by the maker, and before its delivery to the payee, will be liable as a joint maker; and the note itself, with the indorsement thereon, is prima facie evidence of such liability. | What liability is assumed by a third party who places his name upon the back of a negotiable promissory note at the time of its execution by the maker, and before its delivery to the payee; and must liability in such case be determined in this court according to the course of judicial decision in the state where the obligation was incurred? Whether, in the case stated, the liability is that of original promisor, indorser, or guarantor, has been a question upon which great diversity of opinion has existed in many of the courts of the states. | Can third person indorsing be liable as a joint maker? |

| | | | | | |
|---|---|---|---|---|---|
| 13660 | L'Invincible, 14 U.S. 238, 253 (1816) | 6 | Although the hull or the owners of a privateer may under some circumstances be subject to damages in a neutral court after the courts of the captor have decided that the capture was not sanctioned by his sovereign, the seizure by private armed vessel, until such decision, is as much the act of the sovereign and entitled to same exemption from scrutiny as the seizure by a national vessel. | The hull, or the owners of the privateer, may, perhaps, under some circumstances, be subject to damages in a neutral court after the courts of the captor have decided that the capture was not sanctioned by his sovereign. But, until such a decision, the seizure by a private armed vessel is as much the act of the sovereign, and entitled to the same exemption from scrutiny, as the seizure by a national vessel. | Is there any distinction in the scrutiny of a public or national vessel and a private armed vessel? |
| 13665 | Kain v. Walke, 12 Ala. 184, 186 (1847) | 2 | The death and insolvency of the maker of a note is a sufficient excuse for the failure of the assignee to prosecute a suit against him to judgment, execution, and a return of "No property found." | The case of Bates v. Ryland, 6 Ala. 675, is a conclusive authority, that the death and insolvency of the maker of a note, is a sufficient excuse for the failure to prosecute a suit against him, to a return of "no property found" by the sheriff. | Can insolvency of the maker of a note a sufficient excuse? |
| 13677 | People ex rel. Griffin v. City of Brooklyn, 4 N.Y. 419, 420, 4 Comst. 419, 420 (1851) | 11 | The power to tax implies a power to apportion the tax as the legislature shall see fit, and the power of apportionment has no limit where there is no constitutional restraint. | The power to tax, implies a power to apportion the tax as the legislature shall see fit; and the power of apportionment has no limit where there is no constitutional restraint. | Is the power to tax limited by constitutional restraint? |
| 13681 | Hibernia Bank & Tr. Co. v. Dresser, 132 La. 532, 533 (1912) | 2 | Under Negotiable Instrument Law, S 5, an instrument which contains an order or promise to do any act in addition to the payment of money is not negotiable. | But the decision of the Supreme Court of Kansas appears to be in accordance with the law and jurisprudence of this state, and we conclude that the note sued upon here is not governed by the negotiable instrument law. Section 5 of that act declares that 'an instrument which contains an order or promise to do any act in addition to the payment of money is not negotiable,' and that is the exact language contained in section 5258 of the general statutes of 1909 of Kansas. | Is an instrument which contains an order to do any act in addition to the payment of money negotiable? |
| 13682 | Hibernia Bank & Tr. Co. v. Dresser, 132 La. 532, 533 (1912) | 2 | Under Negotiable Instrument Law, S 5, an instrument which contains an order or promise to do any act in addition to the payment of money is not negotiable. | But the decision of the Supreme Court of Kansas appears to be in accordance with the law and jurisprudence of this state, and we conclude that the note sued upon here is not governed by the negotiable instrument law. Section 5 of that act declares that 'an instrument which contains an order or promise to do any act in addition to the payment of money is not negotiable,' and that is the exact language contained in section 5258 of the general statutes of 1909 of Kansas. | Is an instrument which contains promise to do any act in addition to the payment of money is negotiable? |
| 13683 | Sterling & Snapp v. Bender, 7 Ark. 201, 202 (1846) | 3 | A bill or note indorsed in blank is transferable by delivery only, and so long as the indorsement continues in blank, it makes the bill or note in effect payable to bearer. | A bill or note indorsed in blank is transferable by delivery only, and so long as the indorsement continues in blank, it makes the bill or note in effect payable to bearer. | Can a bill indorsed or endorsed in blank be transferred by delivery? |
| 13693 | Thrall v. Newell, 19 Vt. 202, 203–04 (1847) | 1 | The defendant executed to the plaintiff a written assignment in these words: "I hereby assign to R., a note in my favor against W. and H. dated 13th Nov., 1838, for one hundred and fifty dollars, payable in one year from date, with use, for value received." Held, that the words "for value received" were not merely descriptive of the note assigned, but that, prima facie at least, they imported a sufficient legal consideration for the assignment. | The plaintiff also gave in evidence a written instrument, signed by the defendant, dated February 18, 1839, which was in these words,--"I hereby assign to Reuben R. Thrall a note in my favor against Theodore Woodward and John H. Philips, dated 13th Nov. 1838, for one *204 hundred and fifty dollars payable in one year from date with use for value received." The plaintiff also gave in evidence the record of a judgment in favor of Theodore Woodward against himself, in an action commenced by Woodward upon the note, and proved, that Woodward defended that action and recovered the judgment on the ground of his insanity at the time he signed the note, that the plaintiff reviewed, that Woodward died previous to the term of the court at which the action was to have been again tried, and that thereupon the suit was discontinued. | Are the words for value received forming a part of the contract of assignment prima facie evidence of consideration for the assignment? |
| 13694 | Purifoy v. Teasley, 188 Ala. 416, 417, 66 So. 6, 6 (1914) | 1 | A widow who is drawing a pension under Gen.Acts 1911, p. 690, is a pensioner within section 27, authorizing the payment of the warrant to the children of the pensioner, or the collection by the probate judge and use in paying the expenses of the pensioner's burial and last illness. | The only question presented by this appeal is whether or not a widow who is drawing a pension under the act of April 24, 1911 (Gen. Acts 1911, p. 690), is a "pensioner" within the meaning of that word as used in section 27 of that act. Section 27 of that act provides as follows: | Can a widow be a pensioner? |

| | | | | | |
|---|---|---|---|---|---|
| 13698 | Packer v. Roberts, 140 Ill. 9, 11, 29 N.E. 668, 668 (1892) | 6 | Note cannot be assigned by separate instrument, and where payee has by deed of assignment, duly assigned all his property, legal title to note is not thereby transferred to assignee so as to preclude payee from suing thereon in his own name for use of assignee. | Conceding, for the sake of argument, that the question of whether the suit is properly brought in the name of the payee of the note—he having, previously to the bringing of the suit, executed a voluntary deed of assignment to an assignee—is before us, the answer must be in the affirmative, upon the authority of Ryan v. May, 14 Ill. 49; Chickering v. Raymond, 15 Ill. 362; Fortier v. Darst, 31 Ill. 213; Badgley v. Votrain, 68 Ill. 25; and Barrett v. Hinckley, 124 Ill. 32, 14 N. E. Rep. 863,—in which it is held that a promissory note cannot, under our statute, be assigned so as to vest the legal title in the assignee by a separate instrument, but that it can only be done by indorsement on the note itself. The judgment is affirmed. | Can a note be assigned by a separate instrument without indorsement so as to vest a legal title in an assignee? |
| 13700 | Farrar v. Gilman, 19 Me. 440, 441 (1841) | 2 | The indorsement of negotiable paper belonging to a bank by a cashier is prima facie evidence of a legal transfer of such paper. | But as he is held out to the public as the confidential officer and actuary of the bank, as he is under bonds for the faithful performance of his duties, and as he acts as their organ in the transfer of negotiable paper, it is not in our opinion too much to hold, that when he indorses such paper, belonging to the bank, in his official capacity, it is prima facie evidence of a legal transfer. | "When a cashier of the bank or confidential officer endorses a note, is it prima facie evidence of legal transfer?" |
| 13701 | Sterling & Snapp v. Bender, 7 Ark. 201, 202 (1846) | 3 | A bill or note indorsed in blank is transferable by delivery only, and so long as the indorsement continues in blank, it makes the bill or note in effect payable to bearer. | A bill or note indorsed in blank is transferable by delivery only, and so long as the indorsement continues in blank, it makes the bill or note in effect payable to bearer. | Can a note indorsed in blank be transferred by delivery? |
| 13717 | Habersham v. Lehman, 63 Ga. 380, 383 (1879) | 2 | A negotiable note being indorsed in blank (the blank still unfilled), any holder may sue the maker. A full indorsement by a person other than the payee, will not hinder the blank indorsement by the payee from operating as evidence of title in the present holder. | Where a promissory note is payable to a named person or order, or to the order of a named person, and is indorsed in blank, it is then, until the blank is filled, payable to the holder, and any holder may receive payment, or sue and collect. The payee's order to pay to any holder is not revoked or canceled by the order of some other person to pay to a particular individual. | Can any holder sue a maker on a negotiable note indorsed in blank? |
| 13719 | Thorp, Smith & Hanchett v. Craig, 10 Iowa 461, 463 (1860) | 3 | The law of the place where a bill of exchange is payable governs as to the allowance of days of grace. | Without referring to the many cases in which this question has been decided, and to the various treatises upon bills of exchange in which this subject is fully considered, we conclude that "it is well settled that the law of the place where a draft is made payable is to govern in respect to the allowance of days of grace upon a bill of exchange, or check drawn in one state upon another." | Will law of the place where a draft is made payable govern the days of grace upon a bill of exchange? |
| 13720 | Smith v. Anderson, 70 Vt. 424, 41 A. 441, 442 (1898) | 5 | Where parties to a note, who lived in different states, did not contract with reference to the law of either state, the law of the place in which the contract was made would determine the right to recover; and hence a charge that whether or not the note had been paid might depend on whether the contract was made in one state or another is not erroneous. | The court did not say that the right to recover depended upon whether the contract was made in Vermont or Rhode Island, but that it might, and so it would, if there was nothing in the case as to the intention of the parties in reference to which law they contracted. If the jury did not find that the parties contracted with reference to either place, then the right to recover would depend upon the law of the place in which the contract was made. It is unsafe to reverse a judgment for the reason that the jury misunderstood the charge of the court, when the charge was correct both in law and in language. | Does the law of the place in which a contract was made govern the right to recover? |
| 13729 | Faiola v. Calderone, 275 Pa. 303, 306 (Pa. 1923) | 4 | Where an agent of limited powers has been in the habit of managing the business committed to his care in a manner involving an enlargement of his powers with the knowledge and acquiescence of his principal, authority is then implied. | [O]r where an agent of limited powers has been in the habit of managing the business committed to his care in a manner involving an enlargement of this powers with the knowledge and acquiescence of his principal, authority is then implied. | Can a principal be responsible for acts done in excess of his instructions? |
| 13758 | Harris v. McKay, 138 Va. 448, 457 (1924) | 1 | Where an agent's authority is proved, no question of privity can arise. The doctrine of principal and agent, whether disclosed or undisclosed, recognizes that privity of contract exists between the principal and one dealing with the agent. The act of the agent is the act of the principal. | Where, as here, agent's authority is proved, no question of privity can arise. The doctrine of principal and agent--whether disclosed or undisclosed--recognizes that privity of contract exists. The act of the agent is the act of the principal. | Does the doctrine of principal and agent recognize that privity of contract exists? |
| 13759 | Baker v. City of E. Orange, 95 N.J.L. 365, 367 (N.J. 1920) | 3 | "Taxes" are, in legal contemplation, neither debts nor contractual obligations, but are, in the strictest sense of the word, exactions. | Taxes are, in legal contemplation, neither debts nor contractual obligations, but are, in the strictest sense of the word, exactions. | "In legal contemplation, are taxes either debts or contractual obligations?" |

| | | | | | |
|---|---|---|---|---|---|
| 13781 | Allison v. Manzke, 118 Wis. 11, 94 N.W. 659, 662 (1903) | 1 | The assignee of a chose in action stands exactly in the shoes of his assignor. He succeeds to all his rights and privileges, but acquires no greater right than his assignor had in the thing assigned. | It is elementary that "the assignee of a chose in action stands exactly in the shoes of his assignor. He succeeds to all of his rights and privileges, but acquires no greater right than his assignor had in the thing assigned." | Does an assignee have the same rights as the assignor? |
| 13808 | Bank of Augusta v. Earle, 38 U.S. 519, 595 (1839) | 2 | Franchises are special privileges conferred by government upon individuals, and which do not belong to the citizens of the country generally of common right. It is essential to the character of a franchise that it should be a grant from the sovereign authority, and in this country no franchise can be held which is not derived from the law of the state. | For franchises are special privileges conferred by government upon individuals, and which do not belong to the citizens of the country, generally, of common right. It is essential to the character of a franchise that it should be a grant from the sovereign authority, and in this country no franchise can be held which is not derived from a law of the state. | Is franchise a privilege granted by the government? |
| 13809 | In re Kahn's Est., 18 Mo. App. 426, 429 (1885) | 1 | Rev.St.1879, S 207, provides that any administrator may establish a demand against his intestate in the same manner as other persons. Section 68 provides that the administration of partnership effects shall conform to the administration of other estates, except as otherwise provided. Section 65 declares that, when the surviving partner administers on the partnership effects, he shall have power to pay off claims against the firm without requiring them to be exhibited to the probate court for allowance, and the court shall allow such partner in his settlements all demands he may thus discharge. Held, that the administration of partnership effects by a surviving partner is governed solely by section 65, so that it is not necessary for a surviving partner, administering upon the partnership effects, to exhibit a claim of his own against the firm to the probate court. | Section 207 provides that, "Any executor or administrator may establish a demand against his testator or intestate, by proceeding against his co-executor or co-administrator in the manner prescribed for other persons. But if there be no co-executor or co-administrator, he shall file his claim and other papers, and the court shall appoint some suitable person to appear and manage the defence." Section 68 provides that, "The administration upon partnership effects, whether by the surviving partner, or executor or administrator of the deceased partner, shall, in all respects, conform to administrations in ordinary cases, except as otherwise herein provided. | Does the administration upon partnership effects conform to administrations in ordinary cases? |
| 13818 | McClung's Ex'rs v. Spotswood, 19 Ala. 165 (1851) | | When authority is given to an agent to do a particular act, and the manner of executing that authority is not prescribed, the principal is bound by the act of the agent, although it may not be done in the manner in which he desired it to be done, or in which he would himself have done it. | Krein's headnote not found using judicial opinion. | Can a party be affected or when dealing with an agent given authority to do an act when mode or manner of executing the authority is not expressed even to the agent himself? |
| 13819 | Townsend v. Shipley, 29 Ariz. 96, 98–99, 239 P. 787, 787–88 (1925) | 1 | Evidence that plaintiff purchased land of defendant, held under option unknown to plaintiff, with no showing of employment of defendant to make purchase, and only contract proved was one of purchase and sale with parties treating each other as vendor and vendee, held to show that relation of "agency," which imports commercial dealings between two parties, through medium of another, did not exist. | "Agency, in its legal sense, always imports commercial dealings between two parties by and through *99 the medium of another. | Does agency always import commercial dealings between two parties by and through the medium of another? |
| 13825 | Walling v. Cushman, 238 Mass. 62, 65, 130 N.E. 175, 176 (1921) | 1 | The maker of a note is ordinarily deemed to have bound himself in accordance with the laws of the place where it is payable and his contract is to be performed. | The maker of a note is ordinarily deemed to have bound himself in accordance with the laws of the place where it is payable, where his contract is to be performed. | Is the maker of a note bound by the law of the place where the note is payable? |
| 13826 | Johnston v. Gawtry, 83 Mo. 339, 342 (1884) | 1 | The state in which a note is made payable, and in which it is delivered in consummation of a bargain, is the place of the contract. | 322, and it is there held that the state in which a note is made payable, and in which it is delivered in consummation of a bargain, is the place of the contract, though the note is executed in another state; that in an equity proceeding in the courts of this state, where nothing to the contrary appears, it will be presumed that the equity doctrine of a sister state is the same as that of the forum, where the courts of both states have an equity jurisdiction; that a married woman in this state is deemed a feme sole for the purpose of charging her separate estate with the payment of a debt, and in an action to enforce her foreign contract against her separate estate in this state, the law of the forum governs as to her power to make it and its validity. | Is the state where the note is payable and is delivered in consummation of a bargain the place of contract? |

| 13828 | Trustees of Univ. of Alabama v. Winston, 5 Stew. & P. 17, 25 (1833) | 1 | The President and Trustees of the University of Alabama constitute a public corporation, and their charter may be altered, amended, or repealed by the legislature, at pleasure. | While we would unhesitatingly maintain the doctrine that an act establishing a private corporation, forms a contract by which the State is bound, we have no doubt but the President and Trustees of the University of Alabama, constitute a public corporation, and that their charter may be altered, amended, or repealed, by the General Assembly, at pleasure. | Does a university constitute a public corporation? |
|---|---|---|---|---|---|
| 13829 | Fisher v. Bd. of Regents of Univ. of Nebraska, 108 Neb. 666, 189 N.W. 161, 163–64 (1922) | 1 | The Constitution of 1875, by adopting the University of Nebraska as a state institution under a charter declaring a purpose "to afford to the inhabitants of this state the means of acquiring a thorough knowledge of the various branches of literature, science, and the arts", (Laws 1869, p. 172, S 2), and by vesting its general government in a board of regents under the direction of the Legislature, did not prohibit the latter from imposing new and additional duties on the regents or from requiring them to establish and conduct a plant for the manufacture and distribution of hog cholera serum. | It is insisted that the University of Nebraska, the purposes thus defined by its charter and the early laws enacted with a view to carrying out those purposes were adopted by the Constitution of 1875 and became part of the supreme law, binding alike on the Legislature, the board of regents and the courts. The Constitution of 1875 provided: "The general government of the University of Nebraska shall, under direction of the Legislature, *164 be vested in a board of six regents to be styled the Board of Regents of the University of Nebraska, who shall be elected by the electors of the state at large, and their term of office, except those chosen at the first election as hereinafter provided, shall be six years. Their duties and powers shall be prescribed by law; and they shall receive no compensation, but may be reimbursed their actual expenses incurred in the discharge of their duties." Article 8, § 10. | Are there limitations on legislative power over a university? |
| 13830 | Witherell v. Kelly, 195 A.D. 227, 233, 187 N.Y.S. 43, 47 (App. Div. 1921) | 1 | An equitable estoppel need not rest upon a consideration, agreement, or legal obligation. | Equitable estoppel need not rest upon consideration or agreement or legal obligation. | "MEMORANDUM # 1731. QuestionMust an equitable estoppel rest upon a consideration, agreement, or legal obligation?" |
| 13839 | Geiselman v. Anderson, 242 S.W. 798, 800 (Tex. App. 1922) | 2 | Allegations of partnership can be controverted only by a special plea, denying under oath the fact of the partnership, and, unless so denied, such allegations are taken as confessed. | Allegations of partnership can be controverted only by a special plea denying under oath the fact of the partnership. Unless so denied, such allegations are taken as confessed. | Can allegations of a partnership be taken as confessed if not denied under oath? |
| 13848 | Light v. United States, 220 U.S. 523, 526, 31 S. Ct. 485, 486, 55 L. Ed. 570 (1911) | 1 | Legislative power was not unconstitutionally delegated to the Secretary of Agriculture by the provisions of the forest reserve act (Act June 4, 1897, c. 2, 30 Stat. 35 and Act Feb. 1, 1905, c. 288, S 5, 33 Stat. 628), making criminal the violation of the rules and regulations covering forest reservations, made and promulgated by him under authority of those statutes. | The defendant appealed and assigned that the decree against him was erroneous; that the public lands are held in trust for the people of the several states, and the proclamation creating the reserve without the consent of the state of Colorado is contrary to and in violation of said trust; that the decree is void because it, in effect, holds that the United States is exempt from the municipal laws of the state of Colorado, relating to fences; that the statute conferring upon the said Secretary of Agriculture the power to make rules and regulations was an unconstitutional delegation of authority to him, and the rules and regulations therefore void; and that the rules mentioned in the bill are unreasonable, do not tend to insure the object of forest reservation, and constitute an unconstitutional interference by the government of the United States with fence and other statutes of the state of Colorado, enacted through the exercise of the police power of the state. | Is the Secretary of Agriculture authorized to make provisions for the protection against destruction by fire and depredations of the public forest and forest reservations? |
| 13866 | City of Zanesville v. Richards, 5 Ohio St. 589, 592 (Ohio 1855) | 3 | Without express authority of law, no tax for state, county, township, or corporate purposes can be levied. | Without express authority of law no tax, either for state, county, township, or corporation purposes, can be levied; and we see no reason to doubt that this section of the constitution is equally applicable to, and furnishes the governing principle for, all laws authorizing taxes to be levied for either purpose. | Can tax be levied without express authority of law? |

| | | | | | |
|---|---|---|---|---|---|
| 13868 | Walling v. Cushman, 238 Mass. 62, 65, 130 N.E. 175, 176 (1921) | 2 | Contract of indorsement being new and separate, its validity is determined generally by laws of state where made, and presumption of common law formulated in Negotiable Instruments Law is that unless contrary appears, indorsement is prima facie made at place where instrument is dated; and in suit against administrators of married woman who indorsed note dated and payable at Denver, Colo., it appearing that one note was made and indorsed in Illinois, there being no showing where others were made and indorsed, domicile of decedent was immaterial to her liability. | The maker of a note is ordinarily deemed to have bound himself in accordance with the laws of the place where it is payable, where his contract is to be performed. See 5 R. C. L. 964; Cherry v. Sprague, 187 Mass. 113, 72 N. E. 456, 67 L. R. A. 33, 105 Am. St. Rep. 381. As the contract of the indorser is a new and separate one, its validity is determined, as a general rule, by the laws of the state where the contract of indorsement is made; that is, where it takes effect by delivery. Lawrence v. Bassett, 5 Allen, 140; Akers v. Demond, 103 Mass. 318; Milliken v. Pratt, 125 Mass. 374, 28 Am. Rep. 241. This general rule, however, is not applicable when it appears from the special circumstances that the parties intended otherwise. And admittedly the presumption at common law is the same as that now formulated in the Negotiable Instruments Law (G. L. c. 107, § 69): | Does the law of the place determine the validity of a contract of indorsement? |
| 13869 | Guernsey v. Imperial Bank of Canada, 188 F. 300, 300-301 (8th Cir. 1911) | 5 | The laws of the place where an indorsement is signed or is delivered so that it becomes a contract govern the necessity of some presentment, demand, and notice of dishonor. | The laws of the place where the indorsement is signed or is delivered so that it becomes a contract govern the validity and extent of the contract, *301 and therefore the necessity of some presentment, demand, protest, and notice of dishonor. | Which law governs the validity and extent of the contract when the indorsement is delivered? |
| 13881 | In re State Tax on Foreign-Held Bonds, 82 U.S. 300, 319, 21 L. Ed. 179 (1872) | 3 | The power of taxation of a state is limited to persons, property, and business within their jurisdiction. All taxations must relate to one of these subjects. | The power of taxation, however vast in its character and searching in its extent, is necessarily limited to subjects within the jurisdiction of the State. These subjects are persons, property, and business. | "Is the power of taxation of a state limited to persons, property, and business?" |
| 13885 | Guernsey v. Imperial Bank of Canada, 188 F. 300, 302 (8th Cir. 1911) | 4 | The manner of giving and sufficiency of notice of dishonor is governed by the laws of the place where the note is payable. | The established rule in England, the rule in Illinois, and the stronger and better reasons are that, where an indorsement is made in one jurisdiction, and the commercial paper is payable in another, the manner of giving notice of dishonor and the sufficiency thereof are governed by the law of the place where the paper is payable. | Does the law of the place where a note is payable govern the manner of giving notice? |
| 13895 | Osborn v. Bank of U.S., 22 U.S. 738, 739 (1824) | 13 | An injunction will be granted to prevent the franchise of a corporation from being destroyed, as well as to restrain a party from violating it by attempting to participate in its exclusive privileges. | An injunction will be granted to prevent the franchise of a corporation from being destroyed, as well as to restrain a party from violating it, by attempting to participate in its exclusive privileges. | Does injunction prevent infringement of franchise? |
| 13906 | Hervey v. Rhode Island Locomotive Works, 93 U.S. 664, 671 (Ill. 1876) | 5 | The liability of property to be sold under legal process is determined by the law of the state where it is situated, and not that of the jurisdiction where the owner lives. | that the liability of property to be sold under legal process, issuing from the courts of the State where it is situated, must be determined by the law there, rather than that of the jurisdiction where the owner lives. | Under what law is the liability of property to be sold under execution determined by? |
| 13907 | Gue v. Tide Water Canal Co., 65 U.S. 257, 259 (1860) | 3 | The land or works essential to the enjoyment of a corporate franchise cannot be separated from it, and sold under a fi. fa., so as to destroy or impair the value of the franchise. | It was there decided that the execution could not be sustained, and, among the grounds relied on were the facts that the company had no estate in the land, and that it could not be cut up into parts. Neither can the lands or works essential to the enjoyment of the franchise be separated from it and sold under a fi. fa., so as to destroy or impair the value of the franchise. | Can the land or works essential to the enjoyment of a franchise be separated from it? |
| 13940 | Hill v. Roberts, 142 Tenn. 215, 217 S.W. 826, 828 (Tenn. 1920) | 8 | A state, having full control of counties and cities, in the matter of taxation at least, may authorize them to levy a tax, or may direct them to levy a tax, or may itself directly tax for their benefit. | The state, therefore, having full control of these agencies, in the matter of taxation at least, may authorize such agents to levy a tax, or may direct such agents to levy a tax, or may itself directly tax for the benefit of these agencies'. | Can a state directly tax for its benefit? |
| 13942 | Commonwealth v. Butterick, 100 Mass. 12, 16 (Mass. 1868) | 1 | An order for the payment of money drawn by a person on himself, payable to his own order, and by himself accepted and indorsed, may be treated as a bill of exchange. | Upon principle, as well as by the authorities cited by the attorney general, a1 we entertain no doubt that an order for the payment of money, drawn by one in his own favor on himself, and by himself accepted and indorsed, may be treated as a bill of exchange, and so described in an indictment. | "Is a bill drawn by a person, payable to his own order, a bill of exchange?" |

| | | | | | |
|---|---|---|---|---|---|
| 13958 | State ex rel. Little Prairie Special Rd. Dist. of Pemiscot Cty. v. Thompson, 315 Mo. 56, 67 (1926) | 5 | Road district, being municipal corporation, can levy general taxes on property within its boundaries for purposes of district. | A road district, being a municipal corporation, has power to levy general taxes upon property within its boundaries for purposes of the district. | Can a road district levy general taxes on property? |
| 13963 | State v. Bd. of Comm'rs of Marion Cty., 170 Ind. 595, 85 N.E. 513, 518 (1908) | 14 | All roads laid out under legislative enactment are public highways belonging to the state, under full control of the Legislature, which may, in the absence of constitutional limitations, exercise such control directly. | All roads laid out under legislative enactment are public highways belonging to the state under full control of the Legislature. While this control is as a general rule exercised through the instrumentality of local governmental subdivisions of the state, the Legislature may, in the absence of constitutional limitations, directly exercise control of public highways. | Do all roads laid out under legislative enactment belong to the State? |
| 13967 | Erlandson v. Erskine, 76 Mont. 537, 248 P. 209, 212 (1926) | 3 | Renewal note is treated as new transaction on new promise, if parties' intention was to extinguish original note. | Where a renewal note is given, if it is shown that it was the intention of the parties to extinguish the one by the other, the renewal note is treated as a new transaction on a new promise (Walker v. Dunham, 135 Mo. App. 296, 115 S. W. 1086), and when the maker, in good faith and without notice of the assignment, either pays to the payee of a nonnegotiable note the full amount due thereon, or gives a new note in lieu thereof under such circumstances as clearly show that the new note was given and accepted in extinguishment of the old, proof of such facts constitutes a complete defense to a suit by the assignee of the payee. | Can a renewal note be treated as a new transaction or promise if governed by the intention of parties? |
| 13973 | Jones v. Madison Cnty. Comm'rs, 137 N.C. 579, 50 S.E. 291, 293 (1905) | 2 | Const. art. 7, S 7, declares that no county shall contract any debt, pledge its faith, or loan its credit, and that no tax shall be levied, except for the necessary expenses thereof, unless by a vote of a majority of the qualified voters; and section 14 provides that the General Assembly shall have power by statute to modify, change, or abrogate any and all of the provisions of article 7, except sections 7, 9, and 13-section 9 requiring uniform taxation, and section 13 relating to debts of the Confederate government. Held, that Laws 1903, p. 490, c. 289, requiring the funding of the floating indebtedness and the refunding of certain bonds of Madison county, and requiring the laying of a tax for the payment of the bonds, is not in excess of the legislative authority, though the county offices are created by Const. art. 7; the debts in question having been for necessary expenses, and the Legislature, except as limited, having power to supervise and control the action of county officers in governmental matters. Judgment (1904) 47 S.E. 753, 135 N.C. 218, reversed on rehearing. | Sec. 8. That they are hereby authorized, empowered and directed to adjust on such terms as may be equitable and just all of the said floating and unliquidated indebtedness of said county and they shall report to the said board of commissioners all claims audited by them with their finding thereon, recommending the respective amounts to be allowed the divers claimants and sundry creditors of said county whose debts shall be a part of the present floating debt of said county, unliquidated and submitted to them for settlement and provided two of said board concur as to each separate claim and no bonds shall be issued, exchanged or sold in settlement of any part of the unliquidated or floating debts of the said county which has not been by them passed upon and allowed. | Does the legislature have power to compel a county to levy a tax for road purposes? |
| 13974 | Barrett v. Dodge, 16 R.I. 740, 19 A. 530, 531 (1890) | 6 | If no particular place of payment is specified in a note, the law of the place of contract governs as to the obligation and duty imposed on the maker. | The authorities agree that if no particular place of payment is specified in a note, or if, in other words, it is payable generally, the law of the place where it is made determines, not only its construction, but also the obligation and duty it imposes on the maker. | Which law governs a note where no particular place of payment is specified? |
| 13978 | Witherell v. Kelly, 195 A.D. 227, 233, 187 N.Y.S. 43, 47 (App. Div. 1921) | 1 | An equitable estoppel need not rest upon a consideration, agreement, or legal obligation. | Equitable estoppel need not rest upon consideration or agreement or legal obligation. | "Must an equitable estoppel rest upon a consideration, agreement, or legal obligation?" |
| 13993 | Chicago W. Div. Ry. Co. v. Rend, 6 Ill. App. 243, 249 (Ill.App. 1 Dist. 1880) | 1 | Where an injury is inflicted to a plaintiff's right by a willful act of force, it constitutes a trespass. | Where an injury is inflicted to a plaintiff's right by a willful act of force, it constitutes a trespass. | Does an injury inflicted to a plaintiff's right by a willful act constitute a trespass? |

| 14010 | St. Bernard Trappers' Ass'n v. Michel, 162 La. 366, 375, 110 So. 617, 620 (1926) | 4 | Plaintiff may discontinue suit at any time, unless there is reconventional demand or prejudice to defendant's rights. Code Prac. art. 491. | 'It has been held by this court, and the later authorities are conclusive on the subject, that a plaintiff may discontinue his suit at any time previous to judgment being rendered, 'but that he cannot by so doing, put the defendant out of court with respect to his demand in reconvention.' | "Can a plaintiff discontinue a suit at any time, unless there is a re-conventional demand or prejudice to a defendant's rights?" |
| 14025 | City of Atchison v. Bartholow, 4 Kan. 124, 139 (Kan. 1866) | 3 | Code, S 343, defines an "affidavit" to be a declaration under oath made without notice to the adverse party, but the next section declares a deposition to be a declaration under oath made on notice to the adverse party. | Section 343 of the Code defines an affidavit to be a declaration under oath, made without notice to the adverse party. By the next section, a deposition is said to be a declaration under oath, made upon notice to the adverse party. | What distinguishes affidavit from deposition? |
| 14026 | State v. Quartier, 114 Or. 657, 665 (1925) | 3 | Under Or.L. SS 826, 827, ORS 45.020, 45.030, distinction between "affidavit" and "deposition" is that latter is taken with notice to adverse party for purpose of enabling him to attend and cross-examine. | The distinction between an affidavit and a deposition is that the latter is taken with notice to the adverse party for the purpose of enabling him to attend and cross-examine, while the former is taken without such notice, each being a written declaration under oath. | What distinguishes affidavit from deposition? |
| 14029 | In re Hyde's Est., 218 N.Y. 55, 58, 112 N.E. 581, 582 (1916) | 2 | Ex parte affidavits although truth may often be found therein, are weak evidence, to be received with caution in every case. | Ex parte affidavits, although truth may often be found therein, are weak evidence, to be received with caution in any case. | Are affidavits regarded as weak evidence? |
| 14035 | Howard v. Henderson, 142 Ga. 1, 82 S.E. 292, 293 (1914) | 2 | Under Civ.Code 1910, S 3671, a life tenant's conveyance of a greater estate than she possesses will not work a forfeiture as at common law. | If the life tenant conveyed a greater estate than she possessed, it would not work a forfeiture, as at common law. | What happens when a life tenant conveys a greater estate than they possess? |
| 14079 | Sunderland v. United States, 266 U.S. 226, 232–33 (1924) | 6 | Tenure, transfer, control, and disposition of land subject to exclusive jurisdiction of state. | The general rule is not to be doubted, that the tenure, transfer, control and disposition of real property *233 are matters which rest exclusively with the state where the property lies (United States v. Fox, 94 U. S. 315, 320, 321, 24 L. Ed. 192), but it by no means follows that a restriction upon alienation, limited as it is here, may not be imposed by the United States as a condition upon which a purchase of private lands within the state will be made for an Indian ward. | "Are tenure, transfer, control, and disposition of land subject to the exclusive jurisdiction of a state?" |
| 14112 | Levy v. Delaware, L. & W.R. Co., 211 A.D. 503, 506, 207 N.Y.S. 592, 595 (App. Div. 1925) | 1 | Judicial knowledge will not commonly aid pleading, nor be exercised to regulate mode of bringing controversies into court, and of stating and conducting them. | But judicial knowledge will not commonly aid a pleading, nor be exercised to regulate the mode of bringing controversies into court and of stating and conducting them. | Does judicial notice aid pleading? |
| 14126 | Hetherington v. Camp Bird Min., Leasing & Power Co., 70 Colo. 531, 533 (1921) | 2 | Electricity made by artificial means is a product of manufacture, and is personal property. | It is well settled that electricity made by artificial means is a product of manufacture, and is personal property. | Is electricity made by artificial means a product of manufacture and personal property? |
| 14134 | Hardy v. Clendening, 25 Ark. 436, 439–40 (1869) | 3 | Any unlawful exercise of authority over the goods of another will support trespass, even though no force may be exerted. Thus trespass will lie against the purchaser, with notice, of the goods of a third person at a sale under execution. | In this the court erred, as any unlawful exercise of authority over the goods of another will support trespass, although there may not have been any exercise of force. An actual and forcible dispossession of the plaintiff need not be shown. An ignoring and disregard of the plaintiff's rights, to such an extent as compels her to seek *440 redress at a legal forum, where the defendant was advised of the nature of those rights before he purchased, is all that is necessary for her to show. | Can an unlawful exercise of authority over the goods of another support an action for trespass? |
| 14143 | Kirton v. N. Chicago St. R. Co., 91 Ill. App. 554, 556 (Ill. App. Ct. 1900) | 7 | If unlawful act causes immediate injury, whether it be intentional or not, trespass lies. | If an unlawful act cause immediate injury, whether it be intentional or not, trespass lies. | Can trespass occur if an unlawful act causes immediate injury regardless of it being intentional or not? |

| | | | | | |
|---|---|---|---|---|---|
| 14186 | Kelley v. McNamee, 164 F. 369, 374 (9th Cir. 1908) | 1 | A mining partnership, unlike an ordinary one, is not dissolved by the sale of the interest of one of the partners; but whether the retiring partner is liable for indebtedness of the partnership subsequently incurred depends on the facts of the case. As to employes who continue in the employment after the change, without knowledge thereof, his liability continues, but not for subsequent wages, if they know of the transfer. | 'A mining partnership differs in many respects from an ordinary partnership. Where three men go into a mercantile partnership, for instance, and one sells out, it is a dissolution of partnership under the rules of law. If he dies, it is a dissolution of the partnership. If one withdraws through bankruptcy, or for any other reason, from the partnership, it is a dissolution of the partnership; or if one **184 sells out or retires in any way. But that is not true in a mining partnership. Where three men become mining partners, the partnership is not dissolved where one sells out and another man takes his place. | How is a mining partnership different from that of an ordinary partnership? |
| 14187 | Billan v. Hercklebrath, 23 Ind. 71, 73 (Ind. 1864) | 5 | An answer of entire or partial failure of consideration must set out the facts showing the failure. | An answer of entire or partial failure of consideration, must set out the facts showing the failure. | Should an answer of a total or partial failure of consideration set out the facts showing the failure? |
| 14221 | Mayer v. Clark, 40 Ala. 259, 270 (1866) | 6 | A partnership creditor has no lien on partnership property which he can enforce at law, except by obtaining judgment and execution thereon; and it seems that in equity he has no lien. | A partnership creditor has no lien on partnership property, which he can enforce at law, except by obtaining judgment and execution thereon; and it seems that he has no lien in equity. | Do partnership creditors have a lien upon the partnership property? |
| 14228 | Pac. Tel. & Tel. Co. v. Eshleman, 166 Cal. 640, 689, 137 P. 1119, 1138 (1913) | 2 | Under Const. art. 12, SS 22, 23, Legislature held authorized, subject only to the federal Constitution, to confer on the Railroad Commission any power cognate and germane to the subject of public utilities. | 3. The legality of such powers as the Legislature has or may thus confer upon the Commission, if cognate and germane to the subject of public utilities, may not be questioned under the state Constitution. | Are the powers conferred on the Railroad commission cognate and germane to the purposes for which it was created? |
| 14259 | King v. Phillips, 94 N.C. 555, 558 (N.C. 1886) | 1 | An action cannot be maintained on a new promise to pay a debt secured by a bond while the bond is in force. | The debt is not barred, and still subsists to sustain the action for the recovery of what is still due. Indeed, it cannot be maintained upon a parol promise to pay a debt secured by bond, while the bond itself remains in force, and not being barred, can be sued on. | Can an action be maintained on a new promise to pay a debt secured by a bond while the bond is in force? |
| 14268 | Philadelphia, B. & W. R. Co. to Use of Pennsylvania R. Co. v. Quaker City Flour Mills Co., 282 Pa. 362, 367 (1925) | 1 | Cause of action accrues at moment party has legal right to sue. | A cause of action accrues at the moment the party has a legal right to sue. | Can a cause of action accrue at moment party has legal right to sue? |
| 14276 | Dennis' Lessee v. Kelso, 28 Md. 333, 338-38 (Md. 1868) | 1 | Courts will not encourage laches, vigilantibus et non dormientibus leges subveniunt. | Whilst Courts of justice *338 will aid, to every reasonable extent, vigilant suitors, they will not encourage laches--vigilantibus et non dormientibus leges subveniunt. | "Will courts encourage laches, vigilantibus et non dormientibus leges subveniunt?" |
| 14295 | Taggart v. W. Maryland R Co., 24 Md. 563, 597 (1866) | 3 | Lapse of time, not amounting to the bar of limitations, is not a defense to an action at law. | Lapse of time, not amounting to the bar of limitations, is not a defense to an action at law. | "Is a lapse of time, not amounting to the bar of limitations, a defense to an action at law?" |
| 14334 | Webber v. Frye, 199 Iowa 448, 202 N.W. 1, 2 (1925) | 2 | Right of subrogation may be lost by inexcusable negligence on part of person asserting it. | The above cases further hold that the right of subrogation is lost by inexcusable negligence on the part of the person asserting it. | Can the right of subrogation be lost by inexcusable negligence on part of a person asserting it? |
| 14341 | Howell v. Harvey, 5 Ark. 270, 280 (1843) | 3 | To enable one partner to dissolve partnership at will, the renunciation must be made in good faith and not at an unreasonable time. | In cases of equity we think the true rule to be this, that to enable one partner to dissolve at will the partnership two things must occur; first, the renunciation of the partnership must be in good faith, and secondly, it must not be made at an unreasonable time. | Does the power to dissolve a partnership at will have to be exercised in good faith? |
| 14349 | Buckner v. Greenwood, 6 Ark. 200, 206 (1845) | 8 | A bill or note payable to bearer passes by delivery, so as to vest the legal interest in the holder, and authorize him to sue upon it in his own name. | The transferability of promissory notes and bills of exchange, by delivery or assignment, depends alone upon the law merchant for its support, by which a bill or note made payable to bearer may pass by delivery, and vest in the holder the legal interest, and authorize him to maintain an action in his own name upon it. | Is the legal interest in a promissory note transferable? |

| | | | | | |
|---|---|---|---|---|---|
| 14351 | Harris v. Ferris, 18 Fla. 81, 83 (1881) | 1 | The dismissal of an appeal or writ of error for want of prosecution does not bar a second proceeding. | The effect of an appeal or writ of error in cases at law is to bring the matter before the Appellate Court for review, the appeal being a statutory substitute for the writ of error. | Does the dismissal of an appeal or writ of error for want of prosecution bar a second proceeding? |
| 14372 | McGuinness v. Allison Realty Co., 46 Misc. 8, 9, 93 N.Y.S. 267, 268 (Sup. Ct. 1904) | 4 | Where plaintiff sued for injuries caused by the falling of a building while under construction, and joined the superintendent of buildings of the city of New York and the city as defendants, allegations of the complaint setting out the duties of such superintendent and the city-they being created by statute-are not allegations of fact, but conclusions of law. | As the duties of the city and of the superintendent of buildings are created and defined by statute, the allegations of the complaint setting forth those duties must be regarded as conclusions of law, not as allegations of fact. | "Are allegations as to duties created by statute, conclusions of law?" |
| 14373 | Irving v. Rees, 146 A.D. 703, 707, 131 N.Y.S. 523, 526 (App. Div. 1911) | 2 | Allegation that plaintiff was next of kin of decedent, in the face of facts set forth showing the contrary, is a conclusion of law, not admitted by demurrer. | The appellant claims that, having alleged in the complaint that she is the next of kin of the decedent, the defendants by the demurrer have admitted that allegation. But that allegation is a mere conclusion of law, and she has set forth the facts which negative said conclusion. Conclusions of law are not admitted by demurrer. | "Is an allegation that one is the next of kin of the decedent, a mere legal conclusion?" |
| 14439 | Home State Bank v. Vandolah, 188 Ill. App. 123, 128 (Ill. App. Ct. 1914) | 5 | One partner may assign his interest in partnership property to third person but such person does not thereby become partner in firm without consent of other partners. | A partner may assign his interest in a partnership to a third person, but such person does not thereby, without the consent of the other partners, become a partner in the firm. | Can a partner convey his property rights to a third person? |
| 14468 | Niblack v. Adler, 209 Ill. App. 156, 158 (Ill. App. Ct. 1917) | 4 | Whether promissory note would be deemed renewal of former note, depended on intention of the parties. | **2 It is conceded that whether the note in question could be deemed a renewal of a former note depends on the intention of the parties. | Does the question whether the note could be deemed a renewal of a former note depends on the intention of the parties? |
| 14478 | Ex parte Green, 126 Mo. App. 309, 103 S.W. 503, 505 (1907) | 2 | Where depositions are taken under notice providing that the taking will begin on a specified day and continue from day to day until the depositions are completed, and continuances are had, the officer should keep a record showing what was done on each day, and the cause for each continuance or adjournment. | If for any reason the taking is adjourned to the following day, the cause for the adjournment should be noted by the officer talking the deposition. | "If for any reason the taking of deposition is adjourned to the following day, should the officer taking the deposition note the cause for the adjournment?" |
| 14492 | State v. Richards, 29 Utah 310, 81 P. 142, 142 (1905) | 1 | Under Rev. St. 1898, S 4334, defining "burglary" as entering "in the nighttime," etc., and section 4338, defining "nighttime" as the period between sunset and sunrise, a larceny, to constitute burglary, must be committed in the nighttime, and affirmative proof that it was so committed must be adduced; but such proof need not be direct, but may be circumstantial, in character. | Section 4338, Rev. St. 1898, reads: "The phrase 'nighttime', as used in this chapter, means the period between sunset and sunrise." It is true that under these provisions larceny committed, even by forcible breaking and entry, at any other time than in the nighttime, between sunset and sunrise, does not constitute burglary. | What is nighttime in burglary? |
| 14497 | Schiro v. Monteleone, 2 La. App. 280, 282 (1925) | 1 | A firm composed of two lawyers is not entitled to continuance, nor to new trial, on ground that one was engaged in another court, when case presented no difficulty, and party applying suggests no evidence which would have produced judgment. | The absence of counsel is not a ground of continuance, where a party has been assisted by other counsel and had no evidence which would have produced a different result if his counsel had been present. | "Does an absence of counsel a ground of continuance, where a party has been assisted by other counsel and had no evidence which would have produced a different result if his counsel had been present?" |
| 14502 | Schiro v. Monteleone, 2 La. App. 280, 282 (1925) | 1 | A firm composed of two lawyers is not entitled to continuance, nor to new trial, on ground that one was engaged in another court, when case presented no difficulty, and party applying suggests no evidence which would have produced different judgment. | The absence of counsel is not a ground of continuance, where a party has been assisted by other counsel and had no evidence which would have produced a different result if his counsel had been present. | Is the absence of counsel a ground of continuance where a party has been assisted by other counsel and had no evidence which would have produced a different result if his counsel were present? |
| 14503 | Barton v. Lary, 283 S.W. 920, 922 (Tex. Civ. App. 1926) | 1 | First application for continuance because of absence of material witness, to procure whom due diligence was shown, held erroneously overruled. | The court erred in overruling appellant's application for a continuance. It was the first application, was in compliance with the statute, due diligence was shown to procure the absent witness, and his testimony was material upon the issue tendered by appellant that the sale to Lary was fraudulent and simulated. | Should an application which shows that the applicant has not used due diligence to procure the attendance of the witness be overruled? |

| | | | | | |
|---|---|---|---|---|---|
| 14516 | Collins v. Frost, 54 Ind. 242, 244 (1876) | 3 | Time to prepare and file an affidavit for continuance is within the discretion of the trial court. | The refusal to grant time to file another affidavit for continuance on account of the absence of the witness Nugent. It is plain that there had been abundant time to prepare such an affidavit. Besides, it is matter of discretion, which can not be revised by this court, unless plainly abused. Again, it is not shown in the bill of exceptions what, if anything, could have been proved by the witness. | Is the time to prepare and file an affidavit for continuance within the discretion of the trial court? |
| 14519 | Jordan v. Jordan, 130 S.C. 330, 336 (S.C. 1924) | 1 | Where amendment allowed during trial takes other side by surprise, case should be continued. | While an amendment can be allowed by the court during the trial, yet, if it takes the other side by surprise, the case should be continued. | "Where an amendment allowed during trial takes the other side by surprise, should the case be continued?" |
| 14530 | Otto v. Young, 227 Mo. 193, 127 S.W. 9, 18 (1910) | 8 | Under our system of pleading it is sufficient if the pleader states the facts and leaves the court to find the law. | Under our system of pleading, it is sufficient if he states the facts and leaves the court to find the law. | Is it sufficient to states the facts and leaves the court to find the law? |
| 14535 | Jordan v. Jordan, 130 S.C. 330, 336 (S.C. 1924) | 1 | Where amendment allowed during trial takes other side by surprise, case should be continued. | It is a suit at law, and his honor was in error in referring it to the master. While an amendment can be allowed by the court during the trial, yet, if it takes the other side by surprise, the case should be continued. | "When an amendment can be allowed by the court during the trial, if it takes the other side by surprise, should the case be continued?" |
| 14538 | Bagley v. Winslow, 34 Misc. 223, 224, 69 N.Y.S. 611, 611 (Sup. Ct. 1901) | 1 | An order to examine an adverse party before trial will not be granted unless the necessity for such an examination before trial is clearly shown, and unless it appears that material facts are in his knowledge which the moving party cannot in any other manner establish. | It may be regarded as settled by the court of appeals that an order to examine a party to an action at the instance of his adversary is a discretionary order. | Will an order to examine an adverse party before trial not be granted unless the necessity for such an examination before a trial is clearly shown? |
| 14575 | Howell v. United States, 25 Ct. Cl. 288, 288 (1890) | 1 | An officer takes rank in his grade from the time when the law entitles him to do so, and not necessarily from the time when he is commissioned. | An officer takes rank in his grade from the time the law entitles *292 him to do so, and not necessarily from the time he is actually commissioned, when the dates are different. | Does an officer take rank in his grade from the time the law entitles him to do so? |
| 14578 | Farris v. Wells, 68 Ga. 604, 605 (Ga. 1882) | 2 | Where a note, draft or check is made payable to order, the indorsement of the payee is necessary to transfer the legal title to another. Without such indorsement, the transferee takes the paper as a mere chose in action, and to recover it must aver and prove the consideration. | We know of no exception to the rule that where an instrument is made payable to order, the indorsement of the payee is necessary to transfer the legal title to another. Without such endorsement the transferee takes it as a mere chose in action, and to recover upon it must aver and prove the consideration. | Is the endorsement of the payee necessary to transfer legal title of a note? |
| 14581 | Cohen & Feldman v. Silbowitz, 146 Misc. 324, 325, 261 N.Y.S. 325, 326 (City Ct. 1923) | 2 | Stopping payment should never be exercised in disregard of rights of innocent holder for value. | Stopping payment is often invoked to give notice of an infirmity in the inception of such instruments or of a defective title in the hands of a holder, but should never be exercised in disregard of the legal rights of innocent holders for value. | Can stopping payment on a check be exercised in disregard of the legal rights of innocent holder? |
| 14585 | Schwaner v. Hayes, 142 Mo. App. 100, 125 S.W. 519, 519 (1910) | 1 | Under Sess. Laws 1901, pp. 234, 235 (Ann. St. 1906, SS 9436, 9441), permitting any taxpayer to pay the amount of his poll tax in money or labor, and providing that, if paid in labor, it should be performed when required by the commissioners, provided the county court may by order of record require all poll taxes to be paid in money, the road commissioner upon receiving notice that taxpayers desire to pay their poll tax in labor must fix the time for doing the work and thereafter warn him out, and, where that was not done so that a taxpayer was not given an opportunity to pay the tax by labor, it cannot be recovered from him; the county court not having ordered poll taxes paid in money. | The law governing the question under review is found in Sess. Laws 1901, pp. 234, 235 (Ann. St. 1906, §§ 9436, 9441). Section 9441 provides as follows: "Any taxpayer may pay the board the amount of poll-tax due for the current year in money or labor, and if in labor it shall be performed when required by the commissioners, or their chosen representatives. | Can payment of poll tax be paid either in money or labor? |
| 14591 | McKell v. Collins Colliery Co., 46 W. Va. 625, 33 S.E. 765 (1899) | 5 | A deposition once taken cannot be retaken without the leave of the court, which will be granted when justice seems to require it. | "It is a general rule that a deposition once taken cannot be retaken without the leave of the court, which will always be granted whenever justice seems to require it." | Can a deposition once taken be retaken without the leave of the court? |

| | | | | | |
|---|---|---|---|---|---|
| 14592 | Hartford Fire Ins. Co. v. Becton, 103 Tex. 236, 237, 125 S.W. 883, 883 (1910) | 2 | Under Rev.St.1895, art. 2284, as amended by Acts 1907, p. 186, c. 91, Rules of Civil Procedure, rule 196, requiring the officer, before whom a deposition has been taken, to "certify" on the envelope inclosing the deposition for its return that he in person deposited the same in the mail for transmission, the certificate indorsed on the envelope must be authenticated by the officer's seal. Error, 124 S.W. 474, 58 Tex.Civ.App. 578, refused. | The officer shall certify that the answers of the witness were signed and sworn to by the witness before him, and shall seal them up in an envelope, together with the commission and interrogatories and cross-interrogatories, if any, and shall write his name across the seal, and indorse on the envelope the names of the parties to the suit and of the witnesses, and shall direct the package to the clerk of the court from which the commission issued, and shall certify on envelope inclosing depositions that he in person deposits the same in the mail for transmission, stating the date, when and the post office in which the same are deposited for transmission. | "After being certified, is the deposition required to be inclosed in an envelope or wrapper sealed and directed to the clerk of the court in which the action is pending?" |
| 14593 | Fisk v. Tank, 12 Wis. 276, 299 (Wis. 1860) | 22 | It is no objection to a deposition that it was reduced to writing by the deponent instead of the commissioner before whom it was taken. | The objection that the deposition was reduced to writing by the deponent, instead of the commissioner, is not supported by the authorities cited. | Is it no objection to a deposition that it was reduced to writing by the deponent instead of the commissioner before whom it was taken? |
| 14622 | N. Am. Acc. Ins. Co. v. Williamson, 118 Ill. App. 670, 674 (Ill. App. Ct. 1905) | 1 | Statute requiring certificate of official character of notary who takes a deposition does not require that certificate shall state that notary was authorized by laws of state where he resides to administer an oath. Smith-Hurd Stats. c. 51, § 30. | All that the statute requires is a certificate of the official character of the notary. The certificate in question fulfills the requirement. It is not required by the statute that the certificate shall state the notary was authorized by the laws of the State where he resides to administer an oath. | "In executing a commission to take the depositions of witnesses residing out of the state, is the certificate of the officer before whom the oath of the commissioner was taken sufficient evidence that he has such authority?" |
| 14624 | Cushman v. Wooster, 45 N.H. 410, 412 (1864) | 4 | Under the requisition of our statute that in taking depositions, when the adverse party does not attend, a copy of the notice left with him, etc., shall be annexed to the certificate of the taking thereof, it is not sufficient to fold the notice with the deposition and inclose it in the same envelope, directed to the court. | The magistrate is required to certify in the caption that the adverse party was or was not notified, was or was not present, &c.; and when the adverse party does not attend it is provided that "a copy of the notice left with the adverse party, his agent or attorney, with the return of the officer or affidavit of the person leaving such notice thereon, stating the time of leaving the same, shall be annexed to the certificate of the taking thereof. | Should the certificate stating the non-attendance of a party at the taking of the deposition be annexed to the certificate of the taking? |
| 14625 | Shoemaker v. Stiles, 102 Pa. 549, 554 (1883) | 2 | Courts have power to make rules respecting the filing of depositions, and cannot be reversed for enforcing them. | Courts have power to make rules respecting the filing of depositions and cannot be reversed for enforcing them. | Do courts have power to make rules respecting the filing of depositions? |
| 14626 | Semmens v. Walters, 55 Wis. 675, 13 N.W. 889, 890 (1882) | 5 | A deposition may be returned to the commissioner for correction by signing his name as commissioner, instead of with his official title. | The depositions were returned to the commissioner in Canada for correction by signing his name as a commissioner instead of consul of the United States. | "Can a deposition be returned to the commissioner for correction by signing his name as commissioner, instead of his official title?" |
| 14627 | State v. Kimball, 50 Me. 409, 421 (1861) | 7 | The certificate of the justice of his official character is prima facie evidence of his qualification. | And when he affixes his name, in the certificate, his official character, it is prima facie evidence of qualification to act in that capacity. | "Is affixture of name by the Justice of peace, in the certificate, as his official character a prima facie evidence of qualification to act in that capacity?" |
| 14628 | S. Pac. R. Co. v. Royal, 23 S.W. 316, 317 (Tex. Civ. App. 1893) | 2 | Where neither the caption nor certificate of a deposition contains the title of the cause, a reference in the caption to the "annexed commission" is not sufficient to identify the case in which the deposition was taken. | The commission is not in the record, and, even if it were, it has been held that the reference to the "annexed commission" would not be sufficient to identify the case in which the depositions were taken, (Slaughter v. Rivenbark, 35 Tex. 68,) and we do not feel disposed to relax the rule on this subject. | "If the commission is not in the record, will a reference to the annexed commission be sufficient to identify the case in which the depositions were taken?" |

| | | | | | |
|---|---|---|---|---|---|
| 14632 | Moore v. McCullough, 6 Mo. 444, 448 (1840) | 2 | That two continuances have been made in the same cause, and one of them at the instance of the party applying for a third, is no ground for a refusal of the application, when the materiality of the testimony is shown, and every degree of diligence that could be expected. | If there were any circumstances that induced the court to refuse the continuance, they were, perhaps, to be found in the fact, that two continuances had been previously made in the same cause, and one of them at the instance of the same party. But I cannot think that even this indulgence should deprive the party of his legal rights, when his affidavit shows the materiality of the testimony desired, and every degree of diligence that could be expected. | Can an application for continuance be refused when every degree of diligence could be expected? |
| 14646 | Uhler v. Semple, 20 N.J. Eq. 288, 292 (Ch. 1869) | 20 | There is no confidential relation between partners until the partnership is formed, and in the course of negotiations between an existing firm and a stranger, where the firm proposes to put in the old stock at a certain price, the maxim "caveat emptor" applies. | There is no confidential relation between partners until the partnership is formed; in the negotiations concerning it the parties are strangers, with adverse interests, each making the best terms for himself that he can obtain, and the established maxim of caveat emptor applies. | Are relations between partners confidential before the partnership is formed? |
| 14648 | In re Butler, 101 N.Y. 307, 307, 4 N.E. 518 (1886) | n/a | It is not an abuse of discretion to deny an oral motion for continuance that is not reduced to writing. | Headnote not in opinion | Is it an abuse of discretion to deny an oral motion for continuance that is not reduced to writing? |
| 14654 | Cokeley v. State, 87 Tex. Crim. 256, 257, 220 S.W. 1099, 1099 (1920) | 1 | Under indictment charging rape on woman mentally unsound, it was requisite for state to show: First, the act; and, second, mental unsoundness of the woman. | The indictment charges that rape was committed upon a mentally unsound woman, and this by appropriate averments. | Does the state have to show that prosecutrix was mentally unsound at the time of intercourse? |
| 14660 | People ex rel. State Auditor v. Illinois Cent. R. Co., 119 Ill. 83, 87, 6 N.E. 469, 471 (1886) | 5 | Laws exempting property from taxation are strictly construed, and nothing will be held to come within the exemption which does not clearly appear to be so, and all reasonable intendments will be indulged in favor of the state. | These considerations have very properly induced courts to adopt what is known as a strict construction in giving effect to such laws. Hence nothing will be held to come within the exemptions which does not clearly appear to be so, and all reasonable intendments will be indulged in favor of the state. | Are all property presumed to be subject to taxation? |
| 14679 | Shockley v. Morgan, 103 Ga. 156, 29 S.E. 694, 694 (1897) | 1 | It was proper to reject answers to interrogatories embracing questions which referred exclusively and in terms to an alleged account, when no account was attached to the interrogatories for exhibition to the witness; objection having been duly made in writing before the commission was issued. | The court, however, offered to continue the case in order to allow the plaintiffs time to sue out proper interrogatories and have the same executed. The plaintiffs declined this offer, and elected that the trial proceed. | Is it proper to reject answers to interrogatories embracing questions which referred exclusively and in terms to an account? |
| 14680 | Burrell v. State, 18 Tex. 713, 729 (Tex. 1857) | 3 | There being no statutory provision for a third continuance, whether it shall be granted or not must rest in the sound discretion of the court. | The law makes no provision for a third continuance; and whether it shall be granted or not must rest in the sound discretion of the trial court. | Can a third application for continuance be addressed to the sound discretion of the trial court? |
| 14687 | Hayes v. Smith, 58 Mont. 306, 192 P. 615, 616 (1920) | 2 | The taxing power of the state does not extend beyond the territorial limits of the state, nor to all subjects actually within the confines of the state, and on which the state has the physical power to impose a tax, but is limited to subjects which have acquired a situs within the state for the purpose of taxation. | It is elementary that the taxing power of the state does not extend beyond the territorial limits of the state, and neither does it extend to all subjects actually within the confines of the state, and upon which the state has the physical power to impose a tax, as, for instance, property being transported in interstate commerce while actually in transit through the state. | Is both the taxing power and the means necessary to exercise it exists in the state? |
| 14689 | Murray v. City of Charleston, 96 U.S. 432, 444 (1877) | 9 | A state has power to levy taxes and to subordinate contracts to that power so far as it is unrestrained by constitutional limitation. | We do not question the existence of a State power to levy taxes as claimed, nor the subordination of contracts to it, so far as it is unrestrained by constitutional limitation. | Does a state have the power to levy taxes and to subordinate contracts to that power? |

| | | | | | |
|---|---|---|---|---|---|
| 14694 | United States v. Reaves, 126 F. 127, 128 (5th Cir. 1903) | 1 | Rev.St. 1419, as amended by Act Feb. 23, 1881 (10 U.S.C.A. SS 5532, 5533), provides that minors between the ages of 14 and 18 years shall not be enlisted for naval service without the consent of their parents or guardians; and section 1420 (10 U.S.C.A. SS 5532, 5533), as amended by the same act, declares that no minor under the age of 14 years shall be enlisted in the navy service. Held, that where a minor under the age of 18 years enlisted in the navy without the consent of his father, then living, on the minor's fraudulent representation that he was over 21 years of age, such enlistment was not void as to the minor, but was voidable only, at the instance of his father. | By a further amendment, March 3, 1899, Act March 3, 1899, c. 413, Sec. 16, 30 Stat. 1008 (U.S. Comp. St. 1901, p. 1007), it was provided that hereafter the term of enlistment of all enlisted men of the navy shall be 4 years. By section 1419, as amended February 23, 1881 (U.S. Comp. St. 1901, p. 1007), minors between the ages of 14 and 18 years shall be enlisted for naval services without the consent of their parents or guardians. | For whose benefit is the written consent of a parent or guardian for enlistment of men under 21 required? |
| 14695 | Katzer v. United States, 49 Ct. Cl. 294, 299 (1914) | 1 | Under the provisions of article 1751 of the Navy Regulations, paymasters' clerks are officers of the navy in the constitutional sense, so as to entitle them to the mileage allowed in Act March 3, 1901. | This court agrees with the opinion of the Attorney General that paymasters' clerks are now officers of the Navy in the constitutional sense so as to entitle them to the mileage allowed in the act of March 3, 1901, supra. | Are paymasters clerks officers of the Navy? |
| 14701 | Kimbro v. Bullitt, 63 U.S. 256, 262 (1859) | 6 | Whenever there are written articles of agreement between partners, their power and authority, inter se, are to be ascertained and regulated by the terms of the written stipulations. | Whenever there are written articles of agreement between the partners, their power and authority, inter se, are to be ascertained and regulated by the terms and conditions of the written stipulations. | Can a partnership be regulated by the written articles of agreement? |
| 14728 | Bean v. United States, 7 F.2d 393, 396 (D. Kan. 1925) | 1 | Contracts of war risk insurance not to be interpreted according to principles governing other contracts of insurance. | Plaintiff having failed to show that he was permanently and totally disabled while his insurance was in force, and the proof offered by the plaintiff failing to sustain the allegations of the petition to the effect 'that it is reasonably certain that during all of said time that plaintiff's total disability will continue throughout the remainder of his life,' and the authorities being uniform to the effect that 'war risk insurance is a special statutory kind of insurance, and contracts issued thereunder are not to be interpreted and construed according to the principles of law governing accident insurance, or other contracts of insurance,' it follows that the claim of plaintiff must be denied, and the judgment in this case must be in favor of the defendant, and for costs of this action. | Should contracts of war risk insurance be interpreted according to the principles governing other contracts of insurance? |
| 14732 | Rodgers v. Harper & Moore, 170 Ala. 647, 649–50, 54 So. 199, 200 (1910) | 1 | One placing objects within a highway calculated to frighten horses of ordinary gentleness is liable for injuries to a person caused by the frightening of a horse of ordinary gentleness. | It is a general principle that one placing objects within the limits of a public highway, which are calculated to frighten horses of ordinary gentleness, is liable therefor; but, in order to fix liability, it is necessary to allege *650 and prove that the object is calculated to frighten a horse of ordinary gentleness. | When is one liable for frightening a horse in a highway? |
| 14734 | Smart v. White, 73 Me. 332, 336 (1882) | 2 | Rev.St. U. S. S 5485, 38 U.S.C.A. S 112, makes taking a greater fee than is fixed by statute for procuring a pension a high misdemeanor; and intent to do wrong or the practice of deceit or fraud is not an element of the offense. Held, that a pensioner can recover an illegal fee paid, although the attorney had no intent to commit a wrong and practiced no fraud or deceit. | The statute does not make the actual intention of its violator an element of the offense. | Is taking a greater fee than which is fixed by statute for procuring a pension a high misdemeanor? |
| 14753 | Witherell v. Ela, 42 N.H. 295, 296 (1861) | 2 | The indorser of a bill or note in full, or in blank, when it is returned to him, may strike out his indorsement and maintain an action on it in his own name. | The indorser of a note, when it is returned to him, after protest, may strike out his own indorsement, although it is in full, and maintain an action on it in his own name. | Can an indorsement of a note when returned to the owner after protest be strike out by the owner and maintain an action in his own name? |
| 14764 | McCleery v. Thompson, 130 Pa. 443, 445, 18 A. 735 (1889) | 2 | A judgment confessed by one partner in the firm name for a firm debt, though void against the others, is good against the partner confessing it; under it partnership goods may be taken in execution; otherwise if the judgment be confessed by a retiring partner after dissolution. | It has long been settled that a judgment confessed by one partner in the firm name, even for a partnership debt, is void against the non-assenting partners, and will be struck off by the court on motion. It is equally well settled, however, that the judgment is good against the partner confessing it, and that the partnership goods may be sold under an execution on such judgment for a firm debt. | Will a judgment confessed by one partner in the firm name be void against the non-assenting partners? |

| 14772 | People v. Snowburger, 113 Mich. 86, 92, 71 N.W. 497, 499 (1897) | 1 | It is competent for the Legislature, under the police power, to provide for the protection of the public health by making it an offense punishable by fine and imprisonment to sell adulterated food or drink, irrespective of the seller's knowledge of the adulteration. | As we have said, it was within the power of the legislature to pass the act making it an offense punishable with fine and imprisonment to sell adulterated food or drink, although the person selling the same has no knowledge that it is adulterated. | Whether knowledge needs to be proved for an offence to sell adulterated milk? |
|---|---|---|---|---|---|
| 14779 | Spurgin v. Denton Cnty. Nat. Bank, 235 S.W. 970, 971 (Tex. Civ. App. 1921) | 7 | The Uniform Negotiable Instrument Act held not applicable to notes which were executed and had matured long before the act became effective. | The notes in controversy could not, in any event, be affected by the "Uniform Negotiable Instruments Act," which was passed by the Thirty–Sixth Legislature, as shown in the acts of 1919, page 190, since they were executed and matured long before the act became effective. | Can the Uniform Negotiable Instrument Act be applied on a note or check executed prior to the passing of the Act? |
| 14796 | R.A. Brown & Co. v. Chancellor, 61 Tex. 437, 441–42 (1884) | 5 | In Act March 20, 1848, requiring three days of grace, etc., a proviso limited its effect to contracts between merchants and their factors and agents. Act Jan. 11, 1862, struck out such proviso, and required three days of grace to be allowed on "all bills of exchange and promissory notes assignable and negotiable by law." Held, that a note payable on demand is not entitled to days of grace, and suit lies thereon without previous demand. | In the absence of the act of March 20, 1848, there can be no doubt *442 that days of grace would have been allowed upon all such paper as was, under the well known rules of the law merchant, entitled to grace; and that act, instead of being intended to give favor to bills and notes negotiable, was held practically to restrict and limit the right which the law merchant gave to such paper, without reference to the parties thereto, and to confine its operation to negotiable paper solely between merchant and merchant, their factors and agents. | Are days of grace allowed to bills payable on demand? |
| 14808 | Galbreath v. Wallrich, 45 Colo. 537, 541, 102 P. 1085, 1086 (1909) | 3 | Assignment of a nonnegotiable contract does not carry a warranty that it will be performed; but assignee merely impliedly warrants it is what it purports to be, and hence, where nonnegotiable contracts to furnish ties to a railroad were assigned, the mere fact that it subsequently canceled them and refused to allow assignees to fill them did not impose any liability on assignors. | The assignment of a nonnegotiable contract does not carry a warranty that it will be performed. The assignee merely impliedly warrants that the contract is what it purports to be; or, in other words, that it is genuine. | Does the assignee of a nonnegotiable contract impliedly warrant that it is genuine? |
| 14812 | Holm v. Montgomery, 62 Wash. 398, 399, 113 P. 1115, 1116 (1911) | 1 | Since the public has only an easement of use in a highway, and the fee rests in the abutting owner, who may make such use of the land within the highway as will not interfere with its use by the public, such owner may use the highway on which to maintain ditches for the benefit of his land, provided he does so without creating a nuisance or interfering with its use as a highway. | It has become the settled rule of this court that the public has only an easement of use in a public street or highway, and that the fee rests in the abutting owner. | Does the public have an easement of use in a public street or highway while the fee rests in the owners of the abutting property? |
| 14815 | Kasson v. Noltner, 43 Wis. 646, 650 (1878) | 6 | A principal is responsible for the act of his agent when he has either given the agent authority to do the act, or justified the party dealing with the agent in believing that the latter had such authority. | The rule of law which controls the decision of this case is, that "a principal is responsible, either when he has given to an agent sufficient authority, or when he justifies a party dealing with his agent in believing that he has given to the agent his authority." | Can a principal be responsible for the act of his agent if he has given the authority? |
| 14836 | Craig v. Heis, 30 Ohio St. 550, 551–52 (1876) | 1 | An assessment levied, under Act March 27, 1867, 64 Ohio Laws, 80, for the construction of a road, is a lien on the land from the time the assessment is made. | That the *552 road improvement was completed, and the assessments to pay for the same made payable in ten equal semi-annual payments, with accruing interest, one-tenth payable on the twentieth day of each December and June thereafter until the whole amount was paid. | Are assessments for road improvements considered liens? |
| 14840 | Haywood v. Ryan, 85 N.J.L. 116, 88 A. 820 (Sup. Ct. 1913) | 1 | That a person walking along a public street in a peaceable manner is followed by a crowd does not make him a disorderly person in violation of Act Concerning Disorderly Persons, S 3. | The mere fact that a person, walking along a public street in a peaceable and quiet manner, is followed by a crowd of people, is not sufficient to justify his conviction of being a disorderly person upon the ground that he obstructed and interfered with persons lawfully upon such street, as provided in section 3 of 'An Act Concerning Disorderly Persons' (2 Comp. St. 1910, p. 1927). | "Is a person walking along a public highway, quietly and peacefully followed by a crowd, a disorderly person?" |
| 14856 | Osgood's Adm'rs v. Artt, 17 F. 575, 577 (C.C.N.D. Ill. 1883) | 3 | By the rules of the law merchant, the purchaser of negotiable paper payable to order, unless it be indorsed by the payee, takes subject to any defense which the payor has against the payee. He becomes, in such case, only the equitable owner of the debt or claim evidenced by the security. | It is a settled doctrine of the law-merchant that the bona fide purchaser for value of negotiable paper, payable to order, if it be indorsed by the payee, takes the legal title unaffected by any equities which the payor may have as against the payee. | Does a bona fide purchaser for value of negotiable paper that is indorsed by the payee take legal title unaffected by any equities the payor has against the payee? |

| | | | | | |
|---|---|---|---|---|---|
| 14878 | Montgomery Furniture Co. v. Hardaway, 104 Ala. 100, 115 (1894) | 1 | The authority of a general agent is, as to third parties, what it appears to be, and must be determined by the nature of the business, and is prima facie coextensive with its requirements. | *** When the general agent transacts the business intrusted **34 to him, within the usual and ordinary scope of such business, he acts within the extent of his authority; the principal is bound, provided the party dealing with the agent acts in good faith, and is not guilty of negligence which proximately contributes to the loss." The agent's authority as to third persons is what it appears to be, and must be determined by the nature of his business, and is prima facie co-existive with the requirements. | Can an agents authority be determined by his business? |
| 14879 | Montgomery Furniture Co. v. Hardaway, 104 Ala. 100, 115 (1894) | 1 | The authority of a general agent is, as to third parties, what it appears to be, and must be determined by the nature of the business, and is prima facie coextensive with its requirements. | When the general agent transacts the business intrusted in the usual and ordinary scope of such business, he acts within the extent of his authority; the principal is bound, provided the party dealing with the agent acts in good faith, and is not guilty of negligence which proximately contributes to the loss." The agent's authority as to third persons is what it appears to be, and must be determined by the nature of his business, and is prima facie co-existive with the requirements. | Is an agents authority prima facie co-existive with its requirements? |
| 14887 | S. Wood Preserving Co. v. Resaca Lumber Co., 29 Ga. App. 501, 116 S.E. 32, 32–33 (1923) | 4 | Conclusions in pleadings are to be disregarded, where the particular facts alleged are contradictory to them, or fail to support them. | Conclusions in pleadings are to be disregarded, where the particular facts alleged are contradictory to them, or fail to support them. | Are conclusions in pleadings disregarded where particular facts alleged are contradictory to them? |
| 14905 | R.S. Oglesby Co. v. Bank of New York, 114 Va. 663, 664, 77 S.E. 468, 469 (1913) | 4 | A negotiable note made in Virginia but payable in New York, and discounted there, is a New York contract, and its validity, when sued on in this State, is to be determined by the laws of New York. A clause in such a note providing for the payment of a fee of ten per cent. for collection by an attorney is, like the provisions for the payment of interest and exchange, a mere incident of the principal contract, and to be governed by the same law, although payment is sought to be enforced in Virginia. | No authority is cited on the point, and it would seem plain that the provision, like those for the payment of interest and exchange, is a mere incident to the principal contract, and to be governed by the same law. | What types of provisions are considered mere incident to a principal contract? |
| 14906 | Farm Mortg. & Loan Co. v. Beale, 113 Neb. 293, 202 N.W. 877, 878 (1925) | 2 | Where persons residing in different states contract, they can select laws of either state to govern it. | Where two or more parties, residing in different states, enter into a contract, it is competent for them to select the laws of either state to govern their contract. | Can the laws of either state be selected to govern a contract between parties residing in different states? |
| 14909 | Genske v. Jensen, 188 Wis. 17, 205 N.W. 548, 549 (1925) | 3 | A contract for exchange of property requiring abstract of title showing it to be "merchantable" means a good, marketable title, such as would be conveyed by an ordinary warranty deed. | We are not cited to any case defining "merchantable" as used in a real estate contract, but it is fair to say that the term was used in the contract in question as meaning a good or marketable title, such as would be conveyed by an ordinary warranty deed. | Does the term merchantable used in contract means a marketable title? |
| 14928 | Ayer v. Ayer, 41 Vt. 346, 349–50 (1868) | 2 | Where a partnership is dissolved, each partner has equal right to collect the debts due; but in making such collection he acts for the partnership, and not in his sole exclusive right, and is accountable as such partner for all that he collects. | Each partner *350 had equal legal right to collect the debts due, but in making such collections he would be acting for the partnership and not in his sole, exclusive right, and would be accountable as partner for whatever he should collect. | "After dissolution, does each partner have the power to collect debts of the partnership?" |
| 14929 | Geiselman v. Anderson, 242 S.W. 798, 800 (Tex. Civ. App. 1922) | 2 | Allegations of partnership can be controverted only by a special plea, denying under oath the fact of the partnership, and, unless so denied, such allegations are taken as confessed. | Allegations of partnership can be controverted only by a special plea denying under oath the fact of the partnership. Unless denied, such allegations are taken as confessed. | Is an allegation of partnership confessed if not denied under an oath? |
| 14950 | City of Detroit v. Detroit United Ry., 172 Mich. 136, 150, 137 N.W. 645, 651 (1912) | 13 | A franchise granted by a municipality to a street railroad company and accepted by it constitutes in law a contract mutually binding on both parties, which is terminated by the limitation therein expressed. | These franchises granted by the complainant municipality to the defendant company and accepted by it constitute in law contracts mutually binding upon both parties. | Is franchise agreement a mutually binding contract upon the parties? |

| | | | | | |
|---|---|---|---|---|---|
| 14952 | Salter v. Condon, 236 Ill. App. 17, 33 (Ill. App. Ct. 1925) | 4 | Good will does not always exist in the case of a partnership and whether it exists or not depends upon the facts and circumstances in each case. | In some cases there may be no good will at all, and in others the value of the good will may be so small as to be negligible. Whether good will exists or not depends upon the facts and circumstances in each case. | Does the fact whether good will exists or not depend upon the facts and circumstances in each case? |
| 14965 | Walling v. Cushman, 238 Mass. 62, 65, 130 N.E. 175, 176 (1921) | 2 | Contract of indorsement being new and separate, its validity is determined generally by laws of state where made, and presumption of common law formulated in Negotiable Instruments Law is that unless contrary appears, indorsement is prima facie made at place where instrument is dated; and in suit against administrators of married woman who indorsed note dated and payable at Denver, Colo., it appearing that one note was made and indorsed in Illinois, there being no showing where others were made and indorsed, domicile of decedent was immaterial to her liability. | As the contract of the indorser is a new and separate one, its validity is determined, as a general rule, by the laws of the state where the contract of indorsement is made; that is, where it takes effect by delivery. | What law determines the validity of the contract of an indorser? |
| 14966 | Thorp, Smith & Hanchett v. Craig, 10 Iowa 461, 463 (1860) | 3 | The law of the place where a bill of exchange is payable governs as to the allowance of days of grace. | Without referring to the many cases in which this question has been decided, and to the various treatises upon bills of exchange in which this subject is fully considered, we conclude that "it is well settled that the law of the place where a draft is made payable is to govern in respect to the allowance of days of grace upon a bill of exchange, or check drawn in one state upon another. | Does the law of the place where a draft is made payable govern the allowance of days of grace? |
| 15003 | Hongkong & Shanghai Banking Corp. v. Lazard-Godchaux Co. of Am., 207 A.D. 174, 179, 201 N.Y.S. 771, 775 (App. Div. 1923) | 2 | The law of the place of payment as to days of grace on a foreign bill of exchange applies. | As to the days of grace, the law of the place of payment applies to a foreign bill of exchange, such as was drawn here. | Will the law of the place of payment apply to a foreign bill of exchange? |
| 15097 | Jindra v. Diederich Flooring, 181 Wis. 2d 579, 599, 511 N.W.2d 855, 861 (1994) | 3 | Party requesting subrogation has burden of proving that there is some basis for asserting subrogation, and that subrogation should be allowed in those circumstances. (Per Day, J., with two Justices concurring and two Justices concurring in result.) | The burden of proof in subrogation cases involves two questions. When a party requests subrogation, that party has the burden of proving its right to subrogation. That involves showing (a) that there is some basis for asserting subrogation, and, (b) that subrogation should be allowed in those circumstances. | Does the party requesting subrogation have burden of proving that there is some basis for asserting subrogation? |
| 15109 | City of Madera v. Black, 181 Cal. 306, 310, 184 P. 397, 400 (1919) | 3 | The word "impost," in its broader sense, means any tax or tribute imposed by authority, and applies as well to a tax on persons as a tax on property. | The word 'impost,' in its broader sense, means 'any tax or tribute imposed by authority, and applies as well to a tax on persons as to a tax on merchandise.' | What does the word impost mean for the purpose of tax? |
| 15110 | Thornton v. Crowther, 24 Mo. 164, 165 (1857) | 2 | An assignment of a promissory note, written on a separate paper, although not transferring the legal ownership, transfers the beneficial ownership in the note, so as to enable the assignee to sue on it in his own name. | The assignee of a bond or note by an assignment made on a separate paper from the bond or note is the real party in interest within the meaning of our practice act, and, therefore, entitled to sue. | Is an assignee of a note entitled to sue in his own name? |
| 15115 | Thorp, Smith & Hanchett v. Craig, 10 Iowa 461, 463 (1860) | 3 | The law of the place where a bill of exchange is payable governs as to the allowance of days of grace. | Without referring to the many cases in which this question has been decided, and to the various treatises upon bills of exchange in which this subject is fully considered, we conclude that "it is well settled that the law of the place where a draft is made payable is to govern in respect to the allowance of days of grace upon a bill of exchange, or check drawn in one state upon another." | Which law governs the allowance of days of grace upon a bill of exchange? |
| 15186 | Chorpenning v. United States, 11 Ct. Cl. 625, 628 (Ct. Cl. 1875) | 3 | To clothe a person with the authority of an arbitrator, the parties must mutually agree to be bound by his decision of the matter in controversy. An arbitrament which concludes only one of the parties would be an anomaly in the law. | And in order to clothe a person with the authority of an arbitrator, the parties must mutually agree to be bound by the decision of the person chosen to determine the matter in controversy. An arbitrament and award which concludes one party only is certainly an anomaly in the law. | How can a person get the authority of an arbitrator? |

| | | | | | |
|---|---|---|---|---|---|
| 15194 | State v. Graves, 74 N.C. 396, 396 (1876) | 1 | Rails, when made up into a fence upon the land, become a part of the realty. | Rails when made into a fence upon the land, become a part of the land, and as much so as a tree or a house. | "Does a rail, when made up into a fence upon the land, become a part of the realty?" |
| 15213 | Perry v. Wilson, 183 Ky. 155, 208 S.W. 776, 780 (1919) | 4 | The title to real estate is governed solely by the law of the place where it is situated. | It is true the will was made by a testator domiciled in the state of Oklahoma, and it might be insisted that section 1404, supra, had no reference to a foreign will, but only to domestic ones, and that the intentions of such a testator should be determined by the law of his domicile, and no doubt, as a general rule, this is correct; but it is certainly incontestable that the title to real estate is governed by the law of the place where it is situated, and solely by such law. | Is title to real estate governed by the laws of the place where it is situated? |
| 15238 | Brady v. Brady, 161 N.C. 324, 77 S.E. 235, 236 (1913) | 3 | Within the rule that a cause of action, when local, may be tried only in the state where the transaction relied on occurred, and, when transitory, may be tried elsewhere, actions are "transitory" when the transactions relied on might have taken place anywhere, and are "local" when they could not occur except in some particular place. | If the cause of action set out in the complaint is local, the courts of Virginia alone have jurisdiction of it; and, if transitory, the action may be maintained in this state. Actions are transitory when the transactions on which they are based might take place anywhere, and are local when they could not occur except in some particular place. | What is the distinction between local and transitory actions? |
| 15257 | Wimmer v. United States, 264 F. 11, 13 (6th Cir. 1920) | 1 | Under the constitutional definition of "treason" as adhering to the enemies, giving them aid and comfort, both adherence and giving aid are necessary, and to favor or support the enemy is insufficient. | Treason is 'adhering to their enemies, giving them aid and comfort.' Both adherence and giving aid are necessary. | Does adherence to the enemy and rendering them aid and comfort constitute treason? |
| 15282 | Leahy v. Haworth, 141 F. 850, 856 (8th Cir. 1905) | 1 | A written assignment on the back of a promissory note payable to the order of the payee, signed by such payee, is the equivalent of a blank indorsement to transfer title to the note free from equities, either under the law merchant or Comp.St.Neb.1901, S 3380, which provides that "all bonds, promissory notes, bills of exchange, foreign and inland, drawn for any sum or sums of money certain, and made payable to any person or order, or to any person or assigns, shall be negotiable by indorsement thereon so as absolutely to transfer and vest the property thereof in each and every indorsee successfully," and under such section a written guaranty, signed by the payee on the back of a note payable to his order, constitutes an indorsement with an enlarged liability, and transfers the legal title free from equities existing between the maker and payee. | 'All bonds, promissory notes, bills of exchange, foreigh and inland, drawn for any sum or sums of money certain, and made payable to any person or order, or to any person or assigns, shall be negotiable by endorsement thereon, so as absolutely to transfer and vest the property thereof in each and every endorsee successively, but nothing in this section shall be construed to make negotiable any such bond, note or bill of exchange, drawn payable to any person or persons alone, and not drawn payable to order, bearer, or assigns: Provided, that all such bonds, promissory notes, and bills of exchange, made payable to bearer shall be transferable by delivery without endorsement thereon. | Does a payee's assignment on the back of the note of all my right and title bind him as an indorser? |
| 15312 | Daniel v. Daniel, 166 Ky. 182, 179 S.W. 5, 6 (1915) | 2 | Where a petition states a cause of action, a general demurrer will not lie because of indefiniteness in the statement of facts; the remedy being by motion to make the petition more specific under Civ.Code Prac. S 134. | A general demurrer will lie when the petition fails to state a cause of action but will not lie where there is indefiniteness in some respects in the statement of the facts constituting the cause of action. In such case the remedy is a motion to make the statements of the petition more specific. | Will a demurrer lie when there is indefiniteness in the statement of facts? |
| 15313 | Chicago Motor Bus Co. v. Chicago Stage Co., 287 Ill. 320, 329 (Ill. 1919) | 4 | Under Public Utilities Act, Laws 1913, p. 495, S 68, it is not sufficient to justify reversal of reasonable order of Public Utilities Commission, made in lawful exercise of its powers, that court of review should be of opinion that order was unwise or inexpedient, but, it must be arbitrary action not resting on reasonable basis for exercise of discretionary powers. | It is not sufficient, to justify a reversal of a reasonable order of the commission made in the lawful exercise of its powers, that a court of review should be of opinion the order was unwise or inexpedient. To reverse and set aside an order on the ground that it is unreasonable it must be an arbitrary action, not resting on a reasonable basis for the exercise of the discretionary powers of the commission. | Is the Public Utilities Commission given arbitrary powers under the statute? |
| 15355 | Greene & Co. v. Raymond Bros., 9 Neb. 295, 2 N.W. 881, 882 (1879) | 2 | It is only in the exceptional cases of fraud mentioned in Code Civ.Proc. S 237, relating to attachments, that an action can properly be commenced on a claim before it is due. | It is only in the exceptional cases of fraud on the part of the debtor, mentioned in section 237 of the Code of Civil Procedure, that an action can be properly brought on a claim before it is due. | When can an action be properly commenced on a claim before it is due? |

| | | | | | |
|---|---|---|---|---|---|
| 15363 | Kramer v. Cleveland & P. R. Co., 5 Ohio St. 140, 150 (1855) | 1 | Under Const. art. 8, S 4, providing that private property shall be inviolate, but subservient to the public welfare, if a compensation is paid to the owner, benefits conferred by the use of land for railroad purposes may be set off against the damages occasioned thereby. | Whether the condition of making compensation in money to the owner, upon which alone the constitution authorized private property to be made 'subservient to the public welfare,' was complied with by the statutory provision authorizing the compensation to be made, in the prospective or speculative benefit which the owner might realize by reason of the railroad; or partly in such benefits, and partly in money, either paid or secured to be paid. | "Is a private property subservient to the public welfare, under the takings law?" |
| 15369 | Bowes v. Indus. Bank of Chicago, 58 Ill. App. 498, 502 (Ill.App. 1 Dist. 1894) | 2 | Every indorsement of bill may be considered as new bill drawn by indorser on acceptor in favor of payee. | "Every indorsement of a bill may be considered as a new bill, drawn by the indorser on the acceptor in favor of the payee." | Should every indorsement of a bill be considered as a new bill? |
| 15376 | Cunard S.S. Co. v. Mellon, 262 U.S. 100, 123, 43 S. Ct. 504, 507, 67 L. Ed. 894 (1923) | 2 | The jurisdiction of a country over a ship flying its flag partakes more of the characteristics of personal than of territorial sovereignty, and has little application in foreign territorial waters beyond what is affirmatively or tacitly permitted by the local sovereign. | The jurisdiction which it is intended to describe arises out of the nationality of the ship, as established by her domicile, registry and use of the flag, and partakes more of the characteristics of personal than of territorial sovereignty. | Does the jurisdiction of law of the flag doctrine partake more of the characteristics of personal than of territorial sovereignty? |
| 15389 | Hanson v. Blum, 53 N.D. 526, 207 N.W. 144, 145 (1926) | 8 | Junior lienholder selling under junior lien waives rights acquired by payment of superior lien. | Where a junior lienholder, in order to save the property on which he claims his lien from foreclosure under a superior lien, pays such superior lien claim, and thereafter forecloses on and sells the property under his junior lien, he will be held thereby to have waived any rights that he might have acquired as equitable assignee of the superior lien by reason of his payment thereof. | Does a junior lienholder selling under a junior lien waive rights acquired by payment of the superior lien? |
| 15401 | In re Brodie, 128 F. 665, 670 (8th Cir. 1904) | 5 | Rules and orders promulgated by the Secretary of War for the government of the army are presumed to be issued by the Secretary with the approbation and under the direction of the President, as commander in chief, though they do not expressly so state. | It is true that in the order promulgating the army regulations the Secretary of War states that they are published by direction of the President for the 'government' of all concerned, and that in the order promulgating the manual for courts-martial the Secretary of War makes no reference to the President, but states that the manual is published for the 'information and guidance' of all concerned. The difference is one of words only. In legal contemplation, the two orders speak by the same authority, and the relation of that authority to those whose conduct is intended to be affected makes what is said a command in each instance. An officer or soldier would see no difference between being governed by a stated regulation issued by his superior, and being guided by such a regulation. Both orders are signed by the Secretary of War, and neither by the President. | Should rules and orders publicly promulgated through the secretary of war be treated as the acts of the president? |
| 15415 | Landers v. Joerger, 15 Ariz. 480, 140 P. 209 (1914) | 1 | While a valid, subsisting appeal is pending in the Supreme Court a writ of error, if prosecuted, will be dismissed. | But, as we understand the law, while a valid, subsisting appeal is pending in this court no other proceeding in the nature of an appeal or writ of error can be prosecuted. | Can a writ of error be prosecuted when a valid subsisting appeal is pending? |
| 15433 | Judge of Prob. v. Abbot, 13 N.H. 21, 21 (1842) | 1 | Before opening his case, plaintiff may become nonsuit as a matter of right; after the opening and before verdict, he may, with consent of the court. | At any time before the plaintiff opens his case to the jury, he may become nonsuit, as a matter of right. The entry of his action does not oblige him to proceed with it. Even if issue be joined, this does not entitle the defendant to a verdict, if the plaintiff elect to abandon his action. 12 Mass. R. 48, Haskell vs. Whitney. | "Before opening his case, can a plaintiff become nonsuit as a matter of right?" |

| | | | | | |
|---|---|---|---|---|---|
| 15455 | Pritchard v. Sec. Tr. Co. of Rochester, 188 N.Y.S. 548, 549 (Sup. Ct. 1921) | 1 | The provisions of Code of Civil Procedure, SS 803 and 807, and of General Rules of Practice, Rule 14, relating to discovery, should not be construed away by technical construction. | These provisions should not be whittled down and should not be construed away by technical construction, as was formerly the case with the provisions relating to examinations before trial. | "Should the provisions relating to discovery, be construed away by technical construction?" |
| 15462 | City of Carondelet, to Use of Reuter v. Picot, 38 Mo. 125 (Mo. 1866) | 3 | A tax, in its essential characteristics, is not a debt, nor in the nature of a debt, but is an impost levied by the government on its citizens for the support of the state. | A tax, in its essential characteristics, is not a debt, nor in the nature of a debt. A tax is an impost levied by authority of government upon its citizens or subjects, for the support of the State. | Is tax a debt in its essential characteristic? |
| 15478 | Singer Mfg. Co. v. Bowne, 81 N.J. Eq. 157, 159, 85 A. 449, 450 (Ch. 1913) | 1 | Wherever letters or papers are evidential in a cause and relevant, and are in the possession of either party, the court of equity has the inherent power to order the production of such papers for inspection by the other party. | There is an inherent power in the court of equity wherever letters or papers *159 are evidential in a cause, and are in the possession of either party to the proceedings to order an inspection. 'The power to direct either party to give to the other an inspection and permission to take copies of any books or papers in his possession is inherent in a court of equity, and can be exercised in the absence of any statute conferring such right.' Lawless v. | Is the power to require a party to permit his opponent to inspect the documents in his possession inherent in the court? |
| 15479 | Thurman v. James, 48 Mo. 235, 236 (1871) | 4 | In practice, the words "discontinuance" and "dismissal" import the same thing-namely, that the cause is sent out of court. | It appears in the case before us that the suit had been dismissed by consent of parties, and the record fails to show, except inferentially, that the order of dismissal had been set aside. The dismissal had the effect of a discontinuance; and, as we have seen, the statute provides that no judgment, after an actual trial or submission, shall be affected by any previous discontinuance of the suit. In practice, a dismissal and a discontinuance amount to the same thing, and are but different words employed to convey the same idea, namely, that the cause is sent out of court. The objection, therefore, that the cause had been previously dismissed, is without force. It has been decided, moreover, that when a verdict on which a judgment has been rendered is set aside and a new trial had, it will be considered that the judgment was also set aside, although the record fails to show that fact. (Lane v. Kingsberry, 11 Mo. 402.) It might on the same principle, as it occurs to me, be considered in this case that the order of dismissal was set aside, since the parties appeared and went into a trial, and the court assumed jurisdiction of the case and rendered a judgment therein. It is to be presumed that courts act regularly unless the contrary appears. | "In practice, do the words ""discontinuance"" and ""dismissal"" import the same thing that the cause is sent out of court?" |
| 15492 | Citizens' Tr. Co. v. Ward, 195 Mo. App. 223, 190 S.W. 364, 365 (Mo.App. 1916) | 2 | The indorsement of a note, "Pay to any bank or banker," is an indorsement for collection, and does not transfer title. | Following the defendant's (appellant's) reasoning, it must be admitted that the indorsement on the note, "Pay to any bank or banker," is an indorsement for collection, and that an indorsement for collection does not transfer title. | Does the indorsement pay to any bank or banker an indorsement for collection and do such indorsement transfer title? |
| 15493 | Shain v. Sullivan, 106 Cal. 208, 210, 39 P. 606, 606 (1895) | 2 | An indorsement may be made upon the face of a note with the same effect as upon the back. | The ordinary mode of indorsing a note is by the indorser writing his name upon the back thereof, but the indorsement may be made upon the face of the note with the same effect as if made upon the back. | Does the indorsement made upon the face of the note has the same effect as if made upon the back? |
| 15496 | County et al. v. Moody, 116 Tex. 299, 300 (Tex. 1926) | 9 | Legislature has full discretion to adopt method of taxing all properties in county at assessed values for cost of highway to be improved within it. | is decisive of the proposition that the Legislature has full discretion to adopt the method of taxing all properties in a county at assessed values for the cost of a highway to be improved within the county. | What are the powers of Legislature with respect to taxation? |

| | | | | | |
|---|---|---|---|---|---|
| 15521 | Locklear v. Sellers, 126 So. 3d 978 (Miss. Ct. App. 2013) | 5 | Admissions pursuant to discovery rule governing admissions, whether express or by default, are conclusive as to the matters admitted. Rules Civ.Proc., Rule 36. | [3] [4] [5]   7. With regard to Mississippi Rule of Civil Procedure 36 admissions: "A matter that is deemed admitted does not require further proof. Any admission that is not amended or withdrawn cannot be rebutted by contrary testimony or ignored by the court even if the party against whom it is directed offers more credible evidence." Young v. Smith, 67 So.3d 732, 742-43 ( 22) (Miss.2011) (citation omitted). "Rule 36 admissions, whether express or by default, are conclusive as to the matters admitted...." Id. at 743 ( 22) (citation omitted). DISCUSSION  8. Locklear lists five issues, but he has briefed just three. We address only those issues supported by argument and citation to authority. M.R.A.P. 28(a)(6); In re Adoption of Minor Child, 931 So.2d 566, 578 ( 34) (Miss.2006). 1. Restoration Costs | "Are admissions, whether express or by default, conclusive as to the matters admitted?" |
| 15529 | Snider v. Cincinnati Car Co., 27 Ohio Dec. 212 (Ohio Com. Pl. 1914) | 2 | Where there is a right to continue a case the better method would be, instead of withdrawing a juror, to discharge the entire jury. | If there be a right to continue a case, and a jury be in the way, clearly the better-the only aboveboard -method is to discharge the entire jury. The absurd fiction that a purposely withdrawn juror is lost, mislaid or destroyed and thus there is a mistrial, is only a deceit and should never be used. | Would the better method be to discharge the entire jury where there is a right to continue a case? |
| 15530 | State ex rel. Pfeiffer v. Taylor, 19 Wis. 566, 566–67 (1865) | 1 | A circuit judge at chambers has power to make an order for a stay of proceedings under a previous order appointing a receiver, etc., made by the circuit court. | This is an application for a rule to show cause why a writ of mandamus should not issue to the judge of the fourth judicial circuit, commanding him to vacate an order made by him at chambers in the case of Pfeiffer against The Fond du Lac Railroad Company, staying proceedings under a previous order made in the same case by the circuit court of Sheboygan county appointing a receiver of the property of *567 the railroad corporation. Due notice of the motion to stay proceedings was given. The defendant had previously appealed from the order appointing a receiver, to this court, and given the usual undertaking to pay costs and damages; and was required as a condition of a stay of proceedings to give another bond or undertaking to pay the judgment mentioned in the order appealed from. The circuit judge clearly had the power to make the order to stay proceedings, at chambers. Sec. 29, ch. 140, R. S.; Laws of 1860, ch. 264, sec. 18. | Does a circuit judge have power to make an order for a stay of proceedings? |
| 15536 | Corinth, Shiloh & Savannah Tpk. Co. v. Gooch, 113 Miss. 50, 73 So. 869, 870 (1917) | 3 | A written order drawn by a company in favor of creditor for payment of money due company from another was a "bill of exchange" under the definition of Code 1906, S 4002. | 23 Therefore, if we treat this suit as one based upon this written order or bill of exchange, then the appellee cannot recover, because the acceptance was not in writing. If we treat it as a suit based upon the check above set out, then the appellant company was not the drawee of that check, neither did it agree in writing to pay it. Consequently, this suit cannot be maintained as one based upon the check. | What does the term bill of exchange encompasses? |

| | | | | | |
|---|---|---|---|---|---|
| 15541 | State ex rel. Rucker v. Feitz, 174 Mo. App. 456, 160 S.W. 585 (1913) | 1 | The erection and maintenance of a post and wire fence upon a part of the public highway constituting an unlawful obstruction thereof was a public nuisance and should be abated. | The court further finds from the evidence that by reason and in consequence of the said obstruction and nuisance hereinbefore described, so erected and maintained by the defendant, the citizens of the state of Missouri, and especially of the county of Chariton, who travel along the said public road and highway, have sustained and are sustaining great loss and damage and inconvenience, for which they cannot be compensated by suit at law, and for which injury, loss, damage, and inconvenience so sustained by them, they have no adequate and complete remedy at law." [1] There can be no reasonable question of the soundness of our decision of the criminal case that the public highway consisted of the entire strip of land lying between the hedge fences and that the erection and maintenance of the post and wire fence upon that strip constituted an unlawful obstruction of the highway and an interference with the rights of the public. It is a public nuisance, a purpresture that should be abated, and the only question we shall discuss and determine is whether or not the aid of equity may properly be invoked for its suppression. | Can the unlawful obstruction of a highway interfere with the rights of the public? |
| 15561 | Stoddart v. Garnhart, 35 Tex. 300, 301 (1872) | 2 | Where a continuance is asked on account of the absence of a witness who lives in the county and has been subpoenaed, a continuance will be denied where the name of the witness is not shown. | The court did not abuse its discretion in overruling the motion for continuance, based upon the absence of an alleged material witness, where it was not shown that such witness lived in the county or had been subpoenaed, and where it appeared that the witness was serving overseas in the United States Army, and there was no reason to expect that he would be present at the next term of the court. Code, 81-1410. | "Where a continuance is asked on account of the absence of a witness who lives in the county, will a continuance be denied where the name of the witness is not shown?" |
| 15566 | Holmes v. Crane, 167 N.Y.S. 735 (Sup. Ct. 1917) | 2 | Where a fiduciary relation exists, the rules prescribed for the examination of a party before trial are relaxed. | Some of those grounds *736 might, perhaps, be good if the action were between parties dealing at arms' length; but they lose their force in this case because of the fiduciary relation which the defendants or their testators, as directors or officers of the corporation, bore to the plaintiffs as stockholders of that corporation. Where a fiduciary relation exists, the rules for such examinations are relaxed. | "Where a fiduciary relation exists, are the rules prescribed for the examination of a party before trial relaxed?" |
| 15568 | Walley v. Gentry, 68 Mo. App. 298, 303–04 (1897) | 1 | The certificate of a notary to depositions taken before him, "that in pursuance of the annexed notice" the witnesses named came before him and were severally sworn to testify the whole truth, etc., touching the matter in controversy, and that they were examined and their examination reduced to writing and subscribed by them, respectively, in his presence, on the day, between the hours, and at the place in that behalf as aforesaid, etc., is sufficient to show that the depositions were taken in conformity to the notice, and it was not necessary for the notary to state the manner of pursuing the notice as to time and place. | The notary before whom the depositions were taken certified "that in pursuance of the annexed notice" the witnesses named came before him and were severally sworn to testify the whole truth, etc., touching the matter in controversy and that they were examined and their examination reduced to writing and subscribed by them respectively in his presence, on the day, between the hours, and at the place in that behalf first aforesaid, etc. <br><br>*304 DEPOSITION: certificate of notary. <br><br>Looking at the notice, caption, and certificate of the notary to the depositions, and we must conclude that sufficient appears there to justify the conclusion that the depositions were taken in conformity to the notice. We do not think that it was essential for the notary to state in his certificate the manner of pursuing the notice. If he took the depositions, as he certified he did, pursuant to the annexed notice, we think this was equivalent to certifying that he took the same at the time and place specified in the notice. | The certificate of a notary to depositions taken before him sufficient to show that the depositions were taken in conformity to the notice? |

| ID | Citation | # | Rule | Opinion Text | Question |
|---|---|---|---|---|---|
| 15574 | . White v. Ballon, 149 N.Y.S.2d 82 (Sup. Ct. 1955), aff'd as modified sub nom. White v. Ballan, 1 A.D.2d 1052, 152 N.Y.S.2d 323 (1956) | 2 | Examinations of defendants by plaintiffs prior to trial are favored by the courts and are not to be thwarted on technicalities, and it is within their power themselves to define the scope where an examination is warranted. Civil Practice Act, S 296. | While the plaintiff fails to specify the items of inquiry except in a general way, such examinations, however, are favored by the courts and they are not inclined to thwart them on technicalities. Donaldson v. Brooklyn Heights R. Co., 119 App.Div. 513, 514, 104 N.Y.S. 178, 179. It is within their power themselves to define the scope where an examination at all is warranted. | Are examinations of defendants by plaintiffs prior to trial favored by the courts and are not to be thwarted on technicalities? |
| 15577 | L. Fullam & Co. v. Abrahams & Epstine, 29 Kan. 725, 729 (1883) | 1 | The general rule that the property of an individual partner is to be first applied to his individual debts, before it can be resorted to by partnership creditors, does not apply as against partnership creditors who have obtained a prior lien on the property of an individual partner by garnishment or other appropriate judicial proceedings. | But this rule has no application except in cases of insolvency or administration. In other cases partnership creditors have no lien on partnership property. Their right to priority of payment out of firm assets, over the individual creditors, is always worked out through the lien of the partners. Where, however, the partners had the possession and control of their own property, they had the right to make any honest disposition of it they saw fit. Fitzpatrick v. Flannagan, 1 Sup. Ct. Rep. 369; Gallagher's Appeal, (Pa.) 7 Atl. Rep. 237; Austin v. Seligman, 18 Fed. Rep. 519; Fisher v. Syfers, (Ind.) 10 N. E. Rep. 307; Bowman v. Spalding, (Ky.) 2 S. W. Rep. 911. So long as a firm is solvent, all its members assenting, the individual debts of the partners may be paid out of the firm assets; but, if the firm is insolvent at the time a transfer of the firm property to make such payment is made, it is fraudulent and void as to existing creditors of the firm. Goodbar v. Cary, 16 Fed. Rep. 317. | Will the property of the individual partners be first applied to the payment of the debts of the individual partners before it is applied to the partnership debts? |
| 15580 | Willard v. Moies, 30 Mo. 142, 142 (1860) | 1 | The holder of a negotiable promissory note may sue thereon without any written assignment thereof. | In the case of Boeka v. Nuella, 28 Mo. 180, it was held that no written assignment was necessary in order to enable the holder of a promissory note to sue thereon in his own name. | Can the holder of a negotiable promissory note sue without a written assignment? |
| 15581 | Ramot v. Schotenfels, 15 Iowa 457 (1864) | 2 | After the maturity of a promissory note the parties made and indorsed thereon the following agreement: "Renewed for an indefinite time at ten dollars interest per month, and the whole amount then to pay when both parties may agree." Held, that the agreement could not be construed as a covenant never to sue, but was a renewal without fixing a definite time of payment; and that the note became due and payable at its date, or at least within a reasonable time thereafter. | At the same time defendant executed a receipt showing that he had borrowed this money, was to pay it in thirty days, and for that "purpose had handed him a draft," etc. This note was not paid, but being returned by plaintiff, Herman and defendant made and signed on the back thereof this agreement (in German): "Renewed for an indefinite time at ten dollars interest per month, and the whole amount then to pay when both parties may agree." The note was indorsed to plaintiff, and he brings this suit, counting upon the note for money had and received, and upon the special circumstances. Defendant relies upon this agreement of renewal in bar of the action. | When is the note payable when no time is fixed for payment? |
| 15586 | Hammitt v. Gaynor, 144 N.Y.S. 123, 125 (1913) | 2 | The use of a public revenue to pay pensions is not a taking of the property of the taxpayers without due process of law. | Thus, as a general proposition, the devotion of public revenues to the payment of pensions is not a taking of the property of taxpayers without due process of law, for the subject is in its character within legislative control, and the question narrows itself to the effect of the particular constitutional restrictions upon the power of the Legislature, to which I have referred above, in their relation to this statute. | Is the use of public revenue to pay a pension constitutional? |

| 15596 | Pankey v. Atchison, T. & S.F. Ry. Co., 180 Mo. App. 185, 168 S.W. 274, 279 (1914) | 1 | To make a custom effective, it must be general, uniform, certain and notorious, and known to the parties, or so general and universal that knowledge must be presumed. | To make a custom effective it must be shown to have been general, uniform, certain, and notorious, known to the parties, or so general and universal in its character that knowledge must be presumed. | Under what circumstances will a custom be effective? |
|---|---|---|---|---|---|
| 15597 | Pankey v. Atchison, T. & S.F. Ry. Co., 180 Mo. App. 185, 168 S.W. 274, 279 (1914) | 1 | To make a custom effective, it must be general, uniform, certain and notorious, and known to the parties, or so general and universal that knowledge must be presumed. | To make a custom effective it must be shown to have been general, uniform, certain, and notorious, known to the parties, or so general and universal in its character that knowledge must be presumed. | When will a custom be effective? |
| 15598 | Strong v. Grand Trunk R. Co., 15 Mich. 206, 220 (1867) | 1 | Before any custom can be admitted into the law, it must appear that it has been general, and uniformly and peaceably acquiesced in, and not subject to contention and dispute. | Before any custom can be admitted into the law, it must appear that the usage has been general and uniform, the custom peaceably acquiesced in, and not subject to contention and dispute | Does a customs usage have to be general and established to be admitted into the law? |
| 15602 | Appeal of Slemmer, 58 Pa. 168, 176 (1868) | 6 | A partner may at any time withdraw and cause a technical dissolution of the firm, subject to liability, to his co-partners if the act is wrongful. | Yet it is in the power of the plaintiff at any time to withdraw and thus cause a technical dissolution of the firm. He could do this independently of any agreement, subject to his liability to his copartners if the act was wrongful: Mason v. | Can a partner withdraw from the partnership at any time? |
| 15603 | Price v. Hunt, 59 Mo. 258, 263 (1875) | 2 | One member of a firm cannot appropriate its property or assets, without the consent of his copartners, to the payment of his individual debts. | It is settled that one member of a firm cannot appropriate the partnership effects, without the consent of his co-partners, to the payment of his individual debts, either with or without the knowledge of the creditors that the property belonged to the firm. | Is mutual consent of all the partners required in a partnership to appropriate the partnership effects for the payment of an individual partners debt? |
| 15606 | Burrill v. Watertown Bank & Loan Co., 1867 WL 6290 (N.Y. Gen. Term. 1867) | 1 | Mere formal defects in the return of a commission for the examination of witnesses will not be regarded on the trial. | Mere formal objections to the return of a commission will not, in general, be regarded at the trial; and I think the practice is a good one which requires the party objecting on such ground, to move the court, before the trial, *116 to suppress the deposition in order to avail himself of them. | Will mere formal defects in the return of a commission for the examination of witnesses not be regarded on the trial? |
| 15621 | Lancaster v. State, 21 Ala. App. 140, 106 So. 609 (Ala. Ct. App. 1925) | 6 | Fact of defendant's being a soldier does not exempt him from crime or change rules of evidence. | On the other hand, the fact of his being a soldier in the service of the state cannot exempt him from crime or change rules of evidence applicable on a trial. | Does the fact that the defendant is a soldier exempt him from a crime or change the rules of evidence? |
| 15623 | Allen v. Com. Credit Co., 155 Ga. 545, 117 S.E. 650, 651 (1923) | 1 | Assignment in writing of note payable to named person or order need not be indorsed thereon or attached thereto to pass the legal title. | The assignment in writing of such an instrument need not be indorsed thereon or attached thereto, to pass the legal title to the holder; and an allegation that the instrument has been duly assigned in writing is sufficient against a general demurrer. | Is it necessary to endorse an assignment in writing to pass legal title to the holder? |
| 15629 | Stubbs v. Fleming, 92 Ga. 354, 17 S.E. 935, 937 (1893) | 1 | A direct interrogatory, added, without notice to the other party, after the interrogatories were crossed, should be disregarded. | The plaintiffs offered an interrogatory propounded to Fleming, and the answer thereto, marked "Rebuttal," as explanatory of the answer of the witness to the cross interrogatory; but the interrogatory so offered was ruled out because it had been attached after the interrogatories had been crossed, and because defendants' counsel had had no notice of it. The testimony thus sought to be introduced was that the settlement with plaintiffs was confined to the return by Fleming of certain collateral notes and mortgages he held for them, and the dismissal of the bail-trover suit which they had brought against him in the superior court. | "Should a direct interrogatory, added, without notice to the other party, be disregarded?" |

| | | | | | |
|---|---|---|---|---|---|
| 15658 | Michigan Land & Iron Co. v. L'Anse Twp., 63 Mich. 700, 703, 30 N.W. 331, 333 (1886) | 5 | It is the policy of the law to raise taxes no faster than they are likely to be needed, and, while all reasonable presumptions may be made in favor of the necessities of a new region, no presumption can stand when overthrown by facts. | All reasonable presumptions may be made in favor of the necessities of a new region, but no presumption can stand when overthrown by facts. We do not propose to discuss any questions not necessary for dealing with this record. We think the judgment is *704 erroneous, and that plaintiff is entitled to recover the whole amount of tax paid under protest. | Is the policy of the law to raise taxes no faster than they are likely to be needed? |
| 15659 | Commonwealth v. Union Pac. R. Co., 214 Ky. 339, 283 S.W. 119, 120 (1926) | 2 | State, in exercising its right to tax, exercises attributes of sovereignty, and may tax only things and persons subject thereto. | 2 Obedient to this principle, a state may lay a personal tax upon persons subject to the jurisdiction of its sovereignty, a property tax upon all property located within its territories, and a license tax upon all acts done therein. | Which attributes is a state exercising in its right to tax? |
| 15664 | Romes v. Commonwealth, 164 Ky. 334, 175 S.W. 669 (1915) | 4 | Proof of general reputation of accused as bribe taker and of his having accepted bribes on other occasions held not the corroboration of a witness required under Ky.St. S 1594, in a prosecution for bribery. | But, if the competency of this evidence should be assumed, it did not corroborate at all the evidence of Don Ramsey. The general reputation of appellant may have been that of a bribe taker, and he may have accepted bribes for his votes at the elections held in 1908, 1909, and 1912, but his bad reputation, or what he did in these years, did not corroborate the evidence of Don Ramsey as to what he did in 1913 or show, independent of his evidence, that appellant, in 1913, accepted a bribe for his vote. | Can evidence of the general reputation of the accused as a bribe-taker corroborate his guilt for accepting the bribe for which he's being prosecuted? |
| 15665 | State v. Hows, 31 Utah 168, 87 P. 163, 163 (1906) | 1 | Under Rev. St. 1898, S 4334, as amended by Sess. Laws 1905, p. 16, c. 19, making it burglary for any person to break and enter a building with intent to commit a larceny or any other felony, an information charging the breaking and entering a building at night with intent to steal goods, without stating their value, sufficiently charges a burglary in the first degree, as larceny within such section includes both a misdemeanor and a felony, and the words "or any other felony" are equivalent to "or any felony other than that embraced within the larceny." | Section 4334, Rev. St. 1898, so far as material in this case, provides that "every person who, in the nighttime, forcibly breaks and enters, or without force enters through any open door, window, or other aperture, any house, room, apartment, *** with intent to commit larceny or any felony, is guilty of burglary." In 1905 the Legislature amended the sections of the statute defining burglary and housebreaking (Sess. Laws 1905, p. 16, c. 19), and, under the law as amended, we have burglary in the first and second degrees instead of burglary and housebreaking. Before amended, section 4334 made it burglary for a person to break and enter, etc., "with intent to commit larceny or any felony." | Does burglary involve intent to commit any felony? |
| 15674 | People ex rel. Wolff v. Wheeler, 60 Ill. App. 351, 353 (Ill. App. Ct. 1895) | 3 | Courts do not sit for the purpose of entering judgment in matters about which there is neither controversy nor necessity for adjudicating, and a court may, sua sponte, dismiss a suit which appears to be a mere mock contention. | Courts do not sit for the purpose of entering judgment in matters about which there is neither controversy nor necessity for adjudicating. A court may sua sponte dismiss a suit which appears to be a mere mock contention. | "Can a court suasponte dismiss a suit which appears to be a mere mock contention?" |
| 15679 | Emerson v. McWhirter, 133 Cal. 510, 511, 65 P. 1036, 1036–37 (1901) | 3 | Where a local regulation required a notice of a mining claim to be posted at each end thereof, and notice was posted at only one end, all other regulations being complied with, the failure to post at both ends did not work a forfeiture, in the absence of a rule so providing. | Defendant contends that Coyle's location was forfeited because he posted but one notice on the claim, whereas the local regulation required two to be posted. We waive the question whether defendant in this case can be heard to dispute the validity of Coyle's location. This court at an early day said: 'The failure to comply with any one of the mining rules and regulations of the camp is not a forfeiture of title. It would be enough to hold the forfeiture as the result of a noncompliance with such of them as make noncompliance a cause of forfeiture.' McGarrity v. Byington, 12 Cal. 426, approved in Bell v. Mining Co., 36 Cal. 214, where it was stated: 'The failure of a party to comply **1037 with a mining rule or regulation cannot work a forfeiture unless the rule so provides.' | Can a failure to comply with the local mining rules and customs work a forfeiture? |

| 15694 | Goolrick v. Wallace, 154 Ky. 596, 157 S.W. 920, 922 (Ky. 1913) | 1 | The purpose of an indorsement without recourse is to transfer the title to the instrument without creating any personal liability on the part of the indorser. | The purpose of an indorsement "without recourse" is to transfer the title to the instrument of writing to the purchaser, without creating any personal liability on the part of the one so transferring and indorsing it. | What is the effect or purpose of indorsement of a note without recourse? |
|---|---|---|---|---|---|
| 15697 | Ricketts v. Harvey, 106 Ind. 564, 6 N.E. 325, 326 (1886) | 3 | If the consideration of a promissory note is in part legal and in part illegal, and is indivisible, there can be no recovery upon such note. | If the consideration of a promissory note is in part illegal, and in part legal, and is indivisible, there can be no recovery upon the note. | Can there be a recovery if the consideration of a promissory note is in part illegal? |
| 15713 | Newcomb v. Peck, 17 Vt. 302, 305 (1845) | 1 | A plea of nil debet is not a good plea to an action of debt on a judgment of another state. | **3 As to the 2d plea,--nil debet;--it has been repeatedly decided, by the highest authority, that nil debet is not a good plea to a declaration upon a judgment from another state. | Is nil debet a good plea to an action founded on a judgment of another state? |
| 15715 | Almand v. Atlanta Consol. St. Ry. Co., 108 Ga. 417, 34 S.E. 6 (1899) | 1 | When a municipal corporation is created, it becomes vested with jurisdiction over the territory embraced within its corporate limits, and the mere fact that there has been a valuable improvement made by the county authorities on one of the streets of an incorporated city does not oust the municipality of its jurisdiction over such street notwithstanding the street improved was, before the incorporation of the city, a part of an established public road of the county. | It is contended, however, that even if the municipal authorities of Oakland City had power to consent to the use of its street by the defendant railway company, that alone is not sufficient to authorize the railway company to lay its tracks along such street, for the reason that the street sought to be appropriated was, before the creation of the municipal corporation, a public road of the county of Fulton, and that after such municipality came into existence the county authorities, with the consent of the municipal authorities, expended a large amount of money in improving that part of the former public road which is embraced within the limits of the town; that the improvement was of such a character as to show that the county authorities still maintained jurisdiction over the street; and that, therefore, the street, though within the town, is a public road of the county, and consent of the county authorities is absolutely essential before there can be any appropriation of the street by the railway company. | Does the creation of a municipal corporation restrict power of the counties over roads? |
| 15717 | Gayon v. McCarthy, 252 U.S. 171, 40 S. Ct. 244, 64 L. Ed. 513 (1920) | 1 | Cr.Code, S 10, as amended by Act May 7, 1917, 18 U.S.C.A. S 22, as to hiring or retaining another to go outside the United States with intent to enlist in the service of a foreign people, uses "retain" as an alternative to "hire," and as meaning something different from the usual employment with payment in money; and one may be retained, in the sense of engaged, to render a service by a verbal promise, and by a prospect for advancement or payment in the future. | 1914A, 614, and Brown v. Elliott and Moore v. Elliott, 225 U. S. 392, 32 Sup. Ct. 812, 56 L. Ed. 1136. [4] The word 'retain' is used in the statute as an alternative to 'hire' and means something different from the usual employment with payment in money. One may be retained, in the sense of engaged, to render a service as effectively by a verbal as by a written promise, by a prospect for advancement or payment in the future as by the immediate payment of cash. As stated long ago by a noted Attorney General, in an opinion dealing with this statute: *178 'A party may be retained by verbal promise or invitation for a declared or known purpose. | Can retain be used as an alternative to hire? |
| 15723 | Elston v. Dewes, 28 Ill. 436, 437 (1862) | 1 | Prior to the act of the general assembly of 1861, Laws 1861, p. 119, days of grace could not be claimed by the maker of a note. | The petition shall be filed with the chairman of the Board at least twenty days prior to the convening of the General Assembly. The Court held that by entering a contract, the State waives its sovereign immunity and consents to be sued for breach thereof. | Did days of grace exist as a right prior to the passing of the act of 1861 with regard to promissory notes? |
| 15732 | Geren v. Gruber, 26 La. Ann. 694, 697 (1874) | 1 | Taxes are not "debts" in the ordinary sense of that word, but forced contributions for the support of the body politic. | Taxes are not debts in the ordinary sense of that word, but forced contributions for the support of the body politic, and it is competent for the sovereign to provide how these contributions shall be collected, and to say whether this right of preference shall exist, and for what length of time. | Are taxes debts in the ordinary sense of the word? |
| 15740 | Missouri Pacific Railroad v. North Arkansas Highway Improvement District, 168 Ark. 141 (Ark. 1925) | 4 | The assessment for local improvements is not a "tax" in the ordinary sense of that term as used within the Constitution and in statutes generally. | The assessment for local improvements is not a tax in the ordinary sense of that term as used in the Constitution and in statutes generally. | Is the assessment for local improvement a tax? |

| ID | Citation | # | Headnote (red) | Full text | Question |
|---|---|---|---|---|---|
| 15741 | Martin Cnty. v. Wachovia Bank & Tr. Co., 178 N.C. 26, 100 S.E. 134, 138 (1919) | 12 | The construction and maintenance of roads and bridges is a matter of general public concern, of benefit to people of the entire state, and Legislature may cast expense thereof upon state at large, or on territory specially and immediately benefited, even though the work may not be a part of the total area attached. | The construction and maintenance of roads and bridges is a matter of general public concern. The whole body of the people of this state is benefited by them. The Legislature may cast the expense of such public works upon the state at large, or upon territory specially and immediately benefited, even though the work may not be within a part of the total area attached. | Is the construction of roads a matter of general public concern? |
| 15750 | Couret v. Conner, 118 Miss. 374, 79 So. 230 (1918) | 9 | That notes in controversy between an assignor and an assignee were payable in Mississippi was immaterial to their rights where the assignment was governed by the law of Louisiana, as the contract of assignment was separate and distinct from that evidenced by the notes. | that the assignment of the notes was made in Louisiana, and that consequently the rights of the parties arising under the assignment must be governed by the laws of that state. [7] [8] [9] That the notes here in controversy were payable in Mississippi is immaterial, for, while the law of the place where a promissory note is payable of course governs as to its nature, validity, interpretation, and effect, no such questions are here presented, for this controversy arises solely out of a contract by which the notes were assigned by a former holder thereof, which contract, as pointed out in Bank of England v. | Does the law of the place where the note is payable govern its interpretation? |
| 15752 | Thorp, Smith & Hanchett v. Craig, 10 Iowa 461 (1860) | 3 | The law of the place where a bill of exchange is payable governs as to the allowance of days of grace. | The laws of the place where the indorsement is signed or is delivered so that it becomes a contract govern the validity and extent of the contract, *301 and therefore the necessity of some presentment, demand, protest, and notice of dishonor. The law of the place where commercial paper is payable governs the days of grace, the time and the manner of making the presentment, the demand, and the protest, and of giving the notice of dishonor. | Which law governs the days of grace with respect to a bill of exchange? |
| 15754 | State ex rel. Little Prairie Special Rd. Dist. of Pemiscot Cty. v. Thompson, 315 Mo. 56, 67 (1926) | 5 | Road district, being municipal corporation, can levy general taxes on property within its boundaries for purposes of district. | A road district, being a municipal corporation, has power to levy general taxes upon property within its boundaries for purposes of the district. | Are road districts municipal corporations? |
| 15759 | Sterling & Snapp v. Bender, 7 Ark. 201, 202 (1846) | 3 | A bill or note indorsed in blank is transferable by delivery only, and so long as the indorsement continues in blank, it makes the bill or note in effect payable to bearer. | A bill or note indorsed in blank is transferable by delivery only, and so long as the indorsement continues in blank, it makes the bill or note in effect payable to bearer. | What happens when an instrument or note is indorsed in blank? |
| 15760 | Corinth, Shiloh & Savannah Tpk. Co. v. Gooch, 113 Miss. 50, 73 So. 869, 870 (1917) | 3 | A written order drawn by a company in favor of creditor for payment of money due company from another was a "bill of exchange" under the definition of Code 1906, S 4002. | Therefore, if we treat this suit as one based upon this written order or bill of exchange, then the appellee cannot recover, because the acceptance was not in writing. If we treat it as a suit based upon the check above set out, then the appellant company was not the drawee of that check, neither did it agree in writing to pay it. Consequently, this suit cannot be maintained as one based upon the check | What is a bill of exchange? |
| 15771 | Daskam v. Ullman, 74 Wis. 474, 43 N.W. 321, 321 (1889) | 2 | By the assignment of a contract in writing at its face value, the assignor impliedly warrants that the maker is liable, unless the contrary clearly appears. | This being so there was surely a warranty implied in law that they had not been paid; for it is the settled law in this state that, in the assignment of an instrument or contract in writing, even not negotiable, for a full and fair price, the assignor impliedly warrants that it is valid, and that the maker is liable upon it, unless it clearly appears that the parties intended to the contrary. | Does the assigner of an instrument impliedly warrant validity? |
| 15772 | Mariner's Bank v. Abbott, 28 Me. 280, 282 (1848) | 7 | Though, if a promise in a note is jointly and severally to pay, it cannot be shown to be otherwise, when the creditor extends the time of payment to one of several debtors the others may prove by parol that they are sureties merely, and that the extension was injurious to them. | Parol evidence is not admissible to vary the meaning of a promissory note. If the promise is jointly and severally to pay, it cannot be shown to be otherwise. All the promisors apparently stand in the same relation to the promisee, and no one of them would be permitted to show, that he was not a joint and several promisor. But when the promisee undertakes to engraft some new provision on the note, by an agreement with one of the promisors, the others have a right to object, if they are injured by it. | Is parol proof admissible to show that a part is a surety? |

| | | | | | |
|---|---|---|---|---|---|
| 15775 | Byrd Printing Co. v. Whitaker Paper Co., 135 Ga. 865, 70 S.E. 798, 800 (1911) | 1 | A bank check is a contract in writing, by the execution and delivery of which the drawer contracts with the payee that the bank will, on presentation, pay to him or his order the amount designated, and is not a mere request upon a third person to pay, and in a suit by the payee thereon it is not necessary to allege the consideration for which the check was given or set forth any further showing than that plaintiff was named as payee, and that the check had been presented for payment, and payment refused. | There is no merit in any of the grounds of demurrer. Certainly the petition stated a cause of action, as against a general demurrer. A check is a contract, and not a "mere request upon a third party to pay money." Haynes v. Wesley, 112 Ga. 668, 37 S. E. 990, 81 Am. St. Rep. 72. Like a promissory note, it imports a consideration, and none need be alleged in the petition in an action to collect the amount due thereon. Inasmuch as the check was made payable to the Whitaker Company, and the petition alleged that the check had been presented for payment and the same refused, no further showing of its right to sue thereon was necessary. | Is a check a contract? |
| 15780 | Cleveland, C., C. & I. Ry. Co. v. Wynant, 114 Ind. 525, 17 N.E. 118, 120–21 (1888) | 9 | The mere fact that an object is in a highway in violation of the statute does not necessarily make the owner liable for damages resulting from fright which the object may have occasioned to horses, but there must have been some natural causative connection between the violation of the statute and the frightening of the horses. | The mere fact that an object is in the highway, in violation of a statute, does not necessarily make the owner liable for damages resulting from fright which the object may have occasioned to horses. *121 There must have been some natural, causative connection between the violation of the statute and the frightening of the horses. | "Is there a natural and causative connection between the violation of a statute, and the frightening of a horse?" |
| 15785 | Swindell v. Latham, 145 N.C. 144, 58 S.E. 1010, 1012 (1907) | 2 | An agent can only contract for his principal within the limits of his authority, and one dealing with an agent with limited powers must generally inquire as to the extent of his authority. | "That an agent can only contract for his principal within the limit of his authority, and persons dealing with an agent having limited powers must generally inquire as to the extent of his authority." | Can an agent contract for his principal? |
| 15786 | Emmons v. Dowe, 2 Wis. 322, 364 (1853) | 14 | An estoppel in pais or by the conduct of a party, may be created as effectually by the acts or conduct of the agent as of the principal; but such acts of the agent, to conclude his principal, must be within the scope of his authority. | "Qui facit per alium, facit per se." An estoppel in pais, or by the conduct of a party, may, for this reason, be created as effectually by the acts or conduct of the agent as by those of the principal; for the agent is esteemed in law but the medium through whom the principal acts. | Is Estoppel in pais created by the act of an agent? |
| 15790 | Pray v. N. Liberties, 31 Pa. 69, 71 (1850) | 6 | A tax is generally understood to mean the imposition of a duty or impost for the support of the government. In that sense it is understood all the world over as contradistinguished from a mere municipal or corporate charge for improvement of property within the corporation or municipal bounds. | A tax is generally understood to mean the imposition of a duty or impost for the support of government. In that sense it is understood all the world over, as contradistinguished from a mere municipal or corporate charge for the improvement of property, within the corporation or municipal bounds. | Is tax an imposition of a duty or impost for the support of government? |
| 15793 | Riggs v. Price, 3 Greene 334, 334–35 (1851) | 2 | A note for a certain sum in property is not negotiable at common law; but such a note is assignable under the statute of Iowa; and when payable to bearer may be sued in the name of any holder. | Independent of our statute, we believe it to be the uniform practice in the commercial world that a note payable to bearer, may be sued in the name of the holder the same as though it had been assigned to him by indorsement; and as uniform is the doctrine that the possession of a *335 note payable to bearer, or indorsed in blank, is prima facie proof of title. 6 Mass., 451; 11 ib., 288; 3 Porter, 226; 1 Baily, 355; 15 Wend., 640. | Can a note payable to bearer be sued in the name of the holder? |

| | | | | | |
|---|---|---|---|---|---|
| 15794 | Packer v. Roberts, 140 Ill. 9, 11, 29 N.E. 668, 668 (1892) | 6 | Note cannot be assigned by separate instrument, and where payee has by deed of assignment, duly assigned all his property, legal title to note is not thereby transferred to assignee so as to preclude payee from suing thereon in his own name for use of assignee. | Conceding, for the sake of argument, that the question of whether the suit is properly brought in the name of the payee of the note—he having, previously to the bringing of the suit, executed a voluntary deed of assignment to an assignee—is before us, the answer must be in the affirmative, upon the authority of Ryan v. May, 14 Ill. 49; Chickering v. Raymond, 15 Ill. 362; Fortier v. Darst, 31 Ill. 213; Badgley v. Votrain, 68 Ill. 25; and Barrett v. Hinckley, 124 Ill. 32, 14 N. E. Rep. 863,—in which it is held that a promissory note cannot, under our statute, be assigned so as to vest the legal title in the assignee by a separate instrument, but that it can only be done by indorsement on the note itself. The judgment is affirmed. | Can title to a promissory note be transferred by a separate instrument in writing? |
| 15797 | Alabama Great S. R. Co. v. Gilbert, 6 Ala. App. 372, 379 (Ala. Ct. App. 1912) | 9 | In a pleading, as a general rule, words are to be taken in their ordinary and popular sense, unless it plainly appears that they were used in a different sense. | "Common or popular words are to be construed in their popular sense, common-law words according to their common-law meaning, and technical words according to their technical sense; as a general rule words are to be taken in their ordinary or popular sense unless it plainly appears that they were used in a different sense. | Are common or popular words construed in their popular sense? |
| 15824 | Thrall v. Newell, 19 Vt. 202, 205 (1847) | 1 | The defendant executed to the plaintiff a written assignment in these words: "I hereby assign to R., a note in my favor against W. and H. dated 13th Nov., 1838, for one hundred and fifty dollars, payable in one year from date, with use, for value received." Held, that the words "for value received" were not merely descriptive of the note assigned, but that, prima facie at least, they imported a sufficient legal consideration for the assignment. | 1. The written assignment contained a warranty, that the note transferred was genuine, and that it was valid and due. 1 Sw. Dig, 435-9. Story on Bills 126. Bayl. on Bills 485, 148, n. 86. Coolidge v. Brigham, 1 Met. 547. Lobdell v. Baker, 3 Met. 469. Herrick v. Whitney, 15 Johns. 240. Markle v. Hatfield, 2 Johns 455. Johnson v. Titus, 2 Hill 606. Eagle Bank v. Smith, 5 Conn. 71. 2 Bl. Con. 451. 1 Chit. Pl. 92. Strong v. Barnes, 11 Vt. 221. | "Do the words ""value received"" furnish evidence of consideration for an assignment?" |
| 15826 | Bank of U.S. v. Tyler, 29 U.S. 366, 367, 7 L. Ed. 888 (1830) | 4 | Where a note was made and signed and payable in Kentucky, the obligations and rights of the parties must depend on the laws of that state. | As this note was drawn, assigned, and payable in Kentucky, the obligations and rights of the parties must depend on the laws of that state. | Which law governs the obligations and rights of the parties to a note? |
| 15827 | Fredenburg v. Lyon Lake M.E. Church, 37 Mich. 476, 478 (1877) | 1 | Estoppels never arise from ambiguous facts, but must be established by such as are unequivocal and not susceptible of two constructions. | Estoppels never arise from ambiguous facts; they must be established by those which are unequivocal, and not susceptible of two constructions. | Does estoppel arise from ambiguous facts? |
| 15863 | Pat. Title Co. v. Stratton, 89 F. 174, 178 (C.C.D. Colo. 1898) | 2 | The rights of the parties to a negotiable note made in Colorado are governed by the laws of the state (Mills' Ann.St. SS 243, 244), rather than by the general principles of the law merchant. | The fact that the note does not contain the words 'to order' or 'to bearer' does not affect its negotiability. The statute does not require the use of these or similar words to make the instrument negotiable. It becomes negotiable by effect and operation of law, and the assignment transfers the interest in the same manner as bills of exchange. | Does the state law govern the rights of parties to a negotiable instrument? |

| | | | | | |
|---|---|---|---|---|---|
| 15873 | Perrin v. Keene, 19 Me. 355, 356–57 (1841) | 1 | A power to one partner to settle the affairs of the partnership, after a dissolution, does not authorize him to contract debts in the name of the firm, so as to bind his copartners; and the fact that the contract is for the loan of money to pay the partnership debts makes no difference. | J. H. Williams, for the plaintiffs. The notes in suit are binding upon Keene, because, upon the dissolution, Weston was authorized to close up and settle the affairs of the firm. Casco Bank v. Hills, 16 Maine R. 155; Murray v. Mumford, 6 Cow. 442. The payment made is to be presumed to have been made with the knowledge and consent of Keene. Graves v. Merry, 6 Cow. 701. Admissions made by one partner, after a dissolution, are received as evidence of indebtedness *357 to bind all the members of the expired firm. Parker v. Merrill, 6 Greenl. 47; Cady v. Shepherd, 11 Pick. 400; Bridge v. Grey, 14 Pick. 60; Getchell v. Heald, 7 Greenl. 26. There is no essential difference between admitting a cause of action in the form of a note, and producing the same effect by verbal admissions. | Does the power to settle and adjust the affairs of the partnership authorize a partner to use the partnerships name for that purpose? |
| 15889 | Close v. Crossland, 47 Minn. 500, 502, 50 N.W. 694, 695 (1891) | 1 | A warranty of title may be implied in a contract of exchange as upon a sale of personal property. | There is no doubt that a warranty of title may be implied in a contract of exchange as upon a sale of personal property. | Can a warranty of title be implied in a contract of exchange? |
| 15900 | State v. Bayles, 121 Wash. 215, 222, 209 P. 20, 22 (1922) | 5 | Workmen's Compensation Act, Rem.Code 1915, S 6604-2, as amended by Laws 1919, p. 340, S 1, and Laws 1920-21, p. 719, S 1, giving the labor department power, after hearing had on its own motion, or on the application of any person interested, to declare any occupation to be extrahazardous, and be under the act, is not unconstitutional, as delegating legislative authority. | 'The Legislature cannot delegate its power to make a law; but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend. To deny this would be to stop the wheels of government. There are many things upon which wise and useful legislation must depend which cannot be known to the law-making power, and must therefore be a subject of inquiry and determination outside of the halls of legislation.' This doctrine was quoted and approved in the case of U. S. v. Grimaud, 220 U. S. 506, 31 Sup. Ct. 480, 55 L. Ed. 563. In the case of Cawsey v. Brickey, 82 Wash. 653, 144 Pac. 938, we sustained a statute which empowered the county game commission to create game perserves. In the case of Carstens v. De Sellem, 82 Wash. 643, 144 Pac. 934, the statute considered delegated to the commissioner of horticulture the power to designate what pests and diseases were injurious to fruit trees, and we held that the act was not subject to the objection that it delegated legislative power. In the case of Spokane Hotel Co. v. Younger, 113 Wash. 359, 194 Pac. 595, we held that a statute which authorized the industrial welfare commission to ascertain certain facts and provide minimum wages and conditions of labor for women and minors was not an unlawful delegation of legislative power. The following cases out of this court also support the view that the legislation involved here is not open to the objection made | "Who can declare an occupation not already included in the Workmens Compensation Act, as extra hazardous?" |
| 15905 | S.S. White Dental Mfg. Co. v. Com., 212 Mass. 35 (Mass. 1912) | 2 | Property tax is not proportional upon all inhabitants of commonwealth if it be assessed upon certain property at different rate from that assessed upon other similar property. | [4] It has been said many times, through the years since the adoption of the Constitution, that any property tax in order to be valid under the Constitution must be proportional, and any such tax assessed upon certain property, at a rate different from that upon other property, is disproportionate. | Can any tax be assessed upon certain property at a rate different from that upon other property? |

| | | | | | |
|---|---|---|---|---|---|
| 15907 | Hunt v. Standart, 15 Ind. 33, 33, 1860 WL 4187, at *1 (Ind. 1860) | 7 | The contract of indorsers is to pay a note generally on certain conditions, not at any particular place, and is governed by the lex loci contractus; and hence the statute placing bills payable at a bank on the same footing as bills of exchange has no application to indorsers, and therefore, if their liability is not fixed by the exercise of due diligence to collect it from the maker, they are discharged. | If by the law of New York, the judgment is right, as the proper steps seem to have been taken to hold the indorsers liable according to that law; such notes being there governed by the law merchant: but if, on the other hand, the law of Indiana is to determine the liability of the indorsers, they can not be held liable upon the facts shown; "due diligence" not having been used to collect the note of the makers, as required by our law, and no excuse appearing for the want of such diligence. In this State, promissory notes payable in a bank in this State, only, are placed upon the footing of bills of exchange, and governed by the law merchant. We suppose it to be clear, that the liability of an indorser of a note, payable generally, without any place of payment being specified, is to be determined by the law of the State. | Does the liability of drawer attach according to the lex loci contractus? |
| 15916 | Black v. Delaware & R. Canal Co., 24 N.J. Eq. 455, 468 (1873) | 6 | The legislature, in the exercise of the right of eminent domain, may take the shares of stock in a corporation and the corporate franchise for public use, on providing for just compensation. | In the exercise of the right of eminent domain, the legislature may authorize shares in corporations, and corporate franchises, to be taken for public uses upon just compensation. | Can franchises be taken for public use? |
| 15983 | Behrman v. Louisiana Ry. & Nav. Co., 127 La. 775, 794, 54 So. 25, 32 (1910) | 7 | A party is not estopped by allegations of law unsuccessfully made in a former suit. | The answer to the first ground of estoppel here urged is that a party is not estopped by allegations of law unsuccessfully made in a former suit. | Is a party estopped by allegations unsuccessfully made in a former suit? |
| 15985 | Stiles v. Farrar, 18 Vt. 444, 446 (1846) | 6 | The interest of the payee in a note not negotiable may be assigned; and if assigned, and notice thereof is given to the maker, and an action is commenced upon the note in the name of the payee for the benefit of the assignee, the equitable interest of the assignee will be protected at law. This is not now an open question. | The county court having adjudged the defendant's rejoinder insufficient and rendered judgment for the plaintiff, the case is brought to this court for revision; and the question raised by the bill of exceptions is, whether the rejoinder is sufficient. The note declared upon is not negotiable, yet the payee's interest in it might well be assigned, and, upon notice of the assignment to the maker, the equitable interest of the assignee would be protected at law. This principle is too well settled to admit of controversy. It is no longer an open question. | Can a note which is not negotiable be assignable? |
| 16087 | Thorne v. Ornauer, 8 Colo. 353, 354, 8 P. 568, 568–69 (1885) | 1 | Written pleadings are only required to be filed in causes originally begun in courts of record. | Written pleadings are only required to be filed in causes originally begun in courts of record | Are written pleadings required in courts of record? |
| 16118 | Greene v. Maxwell, 251 Ill. 335, 336, 96 N.E. 227, 227 (1911) | 1 | The mental capacity required of a grantor to sustain his deed is greater than that required of a testator to sustain his will. It is not enough that the grantor comprehends that he is making a deed of the property, but he must have the ability to transact ordinary business. | E.): 'The real question submitted to the jury, however, is not whether the party had sufficient mental capacity to comprehend and transact ordinary business, but did he, at the time of making the instrument purporting to be his will, have such mind and memory as enabled him to understand the particular business in which he was then engaged? 1 Redf. | Can the mere comprehension of the grantor sustain a transaction? |
| 16135 | United States v. Burr, 25 F. Cas. 55, 177 (C.C.D. Va. 1807) | 4 | If a body of men be actually assembled for the purpose of effecting a treasonable purpose by force, that is levying war. But it must be a warlike assemblage, carrying the appearance of force, a military assemblage in a condition to make war or practice hostility. | It is settled that if a body of men be actually assembled for the purpose of effecting a treasonable purpose by force, that is levying war. But it must be an assemblage in force, a military assemblage in a condition to make war. U. S. v. Burr [Case No. 14,693]. A mere conspiracy to overthrow the government, however atrocious such conspiracy may be, does not of itself amount to the crime of treason. | Must there be actual assemblage of men to meet the levy war element of treason? |
| 16153 | St. Lawrence Cnty. Nat. Bank of Canton v. Watkins, 153 A.D. 551, 553, 138 N.Y.S. 116, 117 (App. Div. 1912) | 1 | An allegation that a written instrument was executed and delivered "for a valuable consideration" is an allegation of fact, and not a conclusion of law. | We may concede this to be true, and assume that our decision relates only to a negative allegation, and is not controlling with respect to an affirmative allegation; still we are of the opinion that the allegation that a written instrument was executed and delivered 'for a valuable consideration' is an allegation of fact, and not a conclusion of law. | Is an allegation for a valuable consideration a statement of fact? |

| | | | | | |
|---|---|---|---|---|---|
| 16202 | Speake v. Prewitt, 6 Tex. 252, 258 (1851) | 2 | A dormant partner is one who participates in the profits of the partnership, but whose name is not mentioned in the firm, or embraced under general terms in the firm name. | "It seems to be most common and most convenient to use the word as indicating a partner who both keeps himself concealed and who refrains from any active interference with the business or management of the firm." Parsons on Partnership, 33. In Jones v. Fegely, 4 Phila. 1, it is *304 held that a dormant partner is one whose name is not mentioned in the title of the firm or embraced in some general term, as "company," "sons," etc. | Who is a dormant partner? |
| 16203 | Mauldin v. Branch Bank of Mobile, 2 Ala. 502, 509–10 (1841) | 5 | Actual notice of the dissolution of a partnership must be given to persons who have had dealings with the firm, or the retiring partner will continue liable for contracts made with them in the name of the firm after dissolution. | the law be as we have supposed, that the notice of the dissolution of the partnership, need only be as notorious as the partnership itself, it would then follow, that as against one who had received a security from one of the partners, after the connection ceased, no notice would be necessary; if he resided, and the transaction took place at a distance, *510 so remote from the scene of the parnership operations, as to render it improbable, that he ever heard of its existence. | Is it necessary to give actual notice of dissolution of partnership to the persons who had dealings with the firm? |
| 16210 | City of Pasadena v. R.R. Comm'n of California, 183 Cal. 526, 534, 192 P. 25, 29 (1920) | 5 | Const. art. 12, S 22, authorizing the Legislature to confer additional powers of the same kind or different from those conferred on the Railroad Commission, does not authorize the Legislature to confer upon the commission powers not germane to the purpose for which it was created. | 'This statement is, however, to be taken subject to the qualification that the powers conferred by the Legislature on the Railroad Commission must be such as are cognate and germane to the purposes for which the Railroad Commission was created; i, e., the regulation and control of public utilities.' | Are the powers conferred on the Railroad commission cognate and germane to the purposes for which it was created? |
| 16215 | Aven v. State, 102 Tex. Crim. 478, 483, 277 S.W. 1080, 1082 (1925) | 7 | One placing poison in mouth of suicide, at suicide's request, knowing intent, guilty of murder. | If the suicide obtains the poison through the agency of another, that other knowing the purpose of the suicide to take his own life, the party furnishing it would not be guilty, yet, if the party furnishing it knowing the purpose of the suicide, and he himself gives the medicine or poison by placing it in the mouth or other portions of the body, which would lead to the destruction of life, then it would be the act of the party giving, and he would not be permitted to defend against the result of such fact. | Is a person guilty of murder if he places poison inside the victims mouth with the intent to help the victim commit suicide? |
| 16254 | McKinley v. United States, 249 U.S. 397, 399, 39 S. Ct. 324, 324, 63 L. Ed. 668 (1919) | 2 | Congress has authority to make rules and regulations for protection of the health and welfare of those composing the armies raised by it. | That Congress has the authority to raise and support armies and to make rules and regulations for the protection of the health and welfare of those composing them, is too well settled to require more than the statement of the proposition. | Does the congress have the authority to raise and support armies? |
| 16265 | People, to Use of Tritch v. Cramer, 15 Colo. 155, 158, 25 P. 302, 303 (1890) | 1 | When a contract, express or implied, is violated, a cause of action at once accrues. The same is true of torts constituting a trespass upon person or property; also of torts in connection with which assumpsit might have been maintained at the common law. | **303 The damages may be much or little, but the cause of action is complete. If the precise extent of the injury be not immediately apparent, it may nevertheless be approximately computed. So also is a tort, if of such a nature as that assumpsit might have been maintained *159 at common law, gives rise to an immediate cause of action, for such torts are always at least quasi ex contractu; as, for instance, where an attorney, by gross negligence or intentional misconduct, violates his implied promise to diligently and faithfully attend to his client's business, and the latter suffers loss. | "Does a cause of action at once accrue when a contract, express or implied, is violated?" |

| | | | | | |
|---|---|---|---|---|---|
| 16273 | Haywood v. Ryan, 85 N.J.L. 116, 116 (1913) | 2 | Act Concerning Disorderly Persons, S 3, applies only to such persons as shall by their act obstruct or interfere with the movement of persons lawfully on the street. | Syllabus by the Court The mere fact that a person, walking along a public street in a peaceable and quiet manner, is followed by a crowd of people, is not sufficient to justify his conviction of being a disorderly person upon the ground that he obstructed and interfered with persons lawfully upon such street, as provided in section 3 of 'An Act Concerning Disorderly Persons.' The statute mentioned applies only to such persons as shall by their acts intentionally obstruct or interfere with the movement of persons lawfully on a street, and therefore when the proof is limited to the fact that a person, while quietly walking on a street, is followed by a crowd, it will not support his conviction of being a disorderly person, under such statute. | Is a person who obstructs or interferes with any person lawfully in streets or public places a disorderly person? |
| 16274 | Long Island Water-Supply Co. v. City of Brooklyn, 166 U.S. 685, 690 (1897) | 2 | A contract is property which may be taken by condemnation proceedings for public use. | A contract is property, and, like any other property, may be taken under condemnation proceedings for public use. | Can a contract be taken under condemnation proceedings for public use? |
| 16307 | Hall v. Windsor Sav. Bank, 97 Vt. 125, 121 A. 582, 585 (1923), aff'd, 97 Vt. 125, 124 A. 593 (1924) | 5 | The right of subrogation, though it may be lost by waiver or estoppel, is unaffected by the conduct of another. | The right of subrogation being enforced for the benefit of the person in whose favor it arises may be lost by a waiver or an estoppel. But being personal, it is unaffected by the conduct of another. So the plaintiff's right is wholly unaffected by Davis' choice to proceed against the plaintiff instead of against the defendant. As we have seen, Davis did not thereby waive his right against the defendant. Much less could his choice bind or affect the plaintiff. These remedies were concurrent and not inconsistent. | Is the right of subrogation unaffected by the conduct of another? |
| 16321 | Moran v. Murphy, 230 Mass. 5, 6 (1918) | 2 | Only way to bring material evidence before full court on appeal in action at law is by exceptions or report. | The only way to bring the material evidence before this court, in an action at law, is by exceptions or by report. | How can material evidence be brought before the court in an action at law? |
| 16323 | Colburn v. Williams, 16 Ariz. 73, 74, 141 P. 120, 120 (1914) | 1 | Where defendant on the overruling of a new trial gave notice of appeal and a few days later filed a bond for costs, which was approved, the appeal was perfected and the trial court lost jurisdiction and could not entertain an application for a writ of error. | Judgment for defendant in error, who was plaintiff below. [1] The judgment was entered January 17, 1913. Motion for new trial was overruled February 21, 1913, on which day defendant gave notice of appeal to this court. Bond for costs on appeal was filed and approved March 4, 1913. April 18, 1913, an order was made extending the time for preparing and filing the reporter's transcript 60 days from that date. | Can a writ of error be prosecuted when a valid subsisting appeal is pending? |
| 16331 | State v. Hackley, Hume & Joyce, 124 La. 854, 863 (1909) | 1 | Ultimate facts of necessity are conclusions from intermediate and evidentiary facts; but legal conclusions cannot be pleaded as ultimate facts. | Ultimate facts of necessity are conclusions drawn from intermediate and **776 evidentiary facts; but legal conclusions cannot be pleaded as ultimate facts.' | "Are ultimate facts of necessity, conclusions drawn from intermediate and evidentiary facts?" |
| 16332 | State v. Hackley, Hume & Joyce, 124 La. 854, 863 (1909) | 3 | Exception of no cause of action admits well-pleaded facts, but not conclusions of law. | An exception of no cause of action admits the well-pleaded facts, not the conclusions of law, contained in the petition. | Does an exception of no cause of action admit well-pleaded facts? |
| 16412 | Gray v. Williams, 91 Vt. 111, 99 A. 735, 739 (1917) | 7 | Generally if a memorandum written on an instrument in the margin is made before or at the time of its execution, it is considered a part of it, and, if it affects the operation of the instrument, it is a material part of it. | The general rule is that if a memorandum written on an instrument in the margin or at the foot is made before or at the time of its execution, it is considered a part of it; and if it affects the operation of the terms of the body of the instrument, it is a material part of it. | Are the memoranda at the side of the note a part of it? |

| | | | | | |
|---|---|---|---|---|---|
| 16426 | State ex rel. McCulloch v. Taylor, 268 Mo. 312, 187 S.W. 1181, 1183 (1916) | 2 | Rev.St.1909, SS 1944-1949, V.A.M.S. SS 510.030 to 510.060, does not authorize requirement that witness produce books and papers on giving deposition. | While ample power has been conferred on the courts to require, on the application of a litigant, the production by the adversary party of books and papers (article 12, c. 21, R. S. 1909) and by the process of a subpœna duces tecum to require other witnesses a like production (Shull v. Boyd, 251 Mo. loc. cit 473, 158 S. W. 313), there is no statute authorizing this procedure in the taking of depositions. In an early case decided by this court (Ex parte Mallinkrodt, 20 Mo. 493) it was held that a notary public had no power to commit a witness for refusing to produce books and papers under a subpœna duces tecum; the reason stated being that the power conferred to take depositions is purely of statutory creation and its terms cannot be extended. This ruling made more than half a century ago has never been questioned, and the statute (now section 6384, R. S. 1909) it construed has not been changed since the revision of 1835, except in other sections to authorize the appointment in cities of over 50000 inhabitants of commissioners to take depositions, who, except as to the right conferred upon them to rule upon the relevancy of testimony offered, are given no greater authority than that conferred upon other officers authorized to take depositions. | Does any statute authorize the requirement that a witness produce books and papers on giving deposition? |
| 16427 | McKell v. Collins Colliery Co.,46 W. Va. 625, 33 S.E. 765, 768–69 (1899) | 5 | A deposition once taken cannot be retaken without the leave of the court, which will be granted when justice seems to require it. | "It is a general rule that a deposition once taken cannot be retaken without the leave of the court, which will always be granted whenever justice seems to require it." | Are depositions retaken without an order of court properly excluded? |
| 16429 | Evans v. Rothschild, 54 Kan. 747, 39 P. 701, 702 (1895) | 2 | The adverse party has a right to be personally present at the taking of any deposition pursuant to notice. Code, S 352. | A party to an action has a right, if he deems it necessary, to be personally present when depositions are being taken affecting his interests. He is not required to employ a multitude of attorneys to protect his interests at different places on the same day, nor does the fact that he chooses to intrust his interests to the care of an attorney, other than the one who tries the case for him, at one place, require him or his principal counsel to attend on the same day at another place. A reasonable construction of the statute, in the light of its evident purpose, constrains us to hold that a party giving notices to take depositions at different places must so arrange the times as to allow the adverse party to attend each one, and that sufficient time must elapse after the conclusion of the taking of one deposition to allow the party at least time sufficient to reach the place where another is to be commenced. | Does the adverse party have a right to be personally present at the taking of any deposition pursuant to notice? |
| 16442 | Davenport v. State, 27 Ga. App. 284, 108 S.E. 131, 132 (1921) | 2 | That defendant in breaking and entering the sheriff's office in the courthouse may have been guilty of larceny from the house under Penal Code 1910, S 180, does not prevent his trial and conviction for burglary from a place of business. | This decision is clearly authority for the proposition that one may be convicted of burglarizing the place of business of another, regardless of the nature of the house in which the place of business is located. | Is breaking and entering a place of business considered a burglary? |
| 16456 | President, etc., of Springfield Bank v. Merrick, 14 Mass. 322, 325 (1817) | 2 | And the words "foreign bills," written underneath the body of a note, may be made to control it, and restrain its otherwise negotiable character. | Fales, cited in the argument; in which case the words foreign bills, at the foot of a note otherwise negotiable, were considered capable of being made, by evidence of the intent of the parties, an essential part of the contract, so as to defeat its negotiability. | Do the words foreign bills at the foot of a note otherwise negotiable form an essential part of the contract so as to defeat its negotiability? |

| 16471 | Nichols & Shepard Co. v. Dedrick, 61 Minn. 513, 513, 63 N.W. 1110, 1110 (1895) | 1 | An agreement to extend the time of payment of a debt is sufficient consideration for the execution by a third party of his note to the creditor as collateral security for the payment of such debt. | An agreement to extend the debtor's payment date is sufficient consideration for a guaranty by a third person. 15 15 Hope Petty Motors v. Hyatt, 310 S.C. 171, 425 S.E.2d 786; see also 38A C.J.S. Guaranty 30 (stating a creditor's agreement to extend the time for payment of a debt is sufficient consideration for a guaranty). | Whether an agreement to extend the time of payment of debt constitutes sufficient consideration? |
| --- | --- | --- | --- | --- | --- |
| 16478 | State ex rel. Spring River Elec. Power Co. v. Thurman, 232 Mo. 130, 132 S.W. 1157, 1165 (1910) | 2 | The circuit court has power to impose, as a condition to the granting of a continuance of a cause which has stood on the docket for about five years and has been repeatedly continued, that the plaintiff pay the accrued costs at least 10 days before the beginning of the next term, and in default of such payment that the cause stand as dismissed. | The gravamen of relator's complaint is, that the trial court had no power to make the provisional order of dismissal, or, in other words, to continue the case upon terms, which were that the plaintiff pay the costs of the then present term 10 days before the first day of the next term, and in default thereof the cause would stand dismissed for want of prosecution. We are unable to lend our assent to that contention. In discussing the power of the court to impose conditions on granting continuances, the author, in volume 9, Cyc. p. 151, says: "A. The court may in its discretion, where the justice of the case so demands, impose terms or conditions upon the granting of a continuance. | Is the trial court vested with the power to impose terms as the condition for granting a continuance? |
| 16482 | Cromwell v. United States, 42 Ct. Cl. 432, 435 (1907) | 2 | The navy personnel act as amended by Act June 7, 1900, c. 859, 31 Stat. 697, 34 U.S.C.A. S 251, is not incompatible with Rev.St. S 1556, fixing the pay of a rear admiral. The earlier statute continues operative as regards the excepted class of officers in service when the navy personnel act was enacted. | Under this general rule we have been unable to say that the navy personnel act as amended was so incompatible with the previous statute fixing pay that the two could not stand. We are still of that opinion, fortified as it is by Rodgers v. United States. (36 C. Cls. R., 266; 185 U. S., 83.) | "Though the general object of the navy personnel act was to equalize army and navy pay, did the act operate to reduce pay previously fixed for naval officers?" |
| 16491 | Steuben Twp. of Steuben Cnty. v. Lake Shore & M.S. Ry. Co., 58 Ind. App. 529, 108 N.E. 545, 549 (1915) | 2 | Highways, including bridges, forming part thereof, belong to state, and an action for destruction of bridge is not maintainable by township or county on theory of property loss; but where bridge has been negligently destroyed, township may sue therefor, unless the county must restore it; and where township failed to repair such bridge, county, repairing it, could sue for injury. | In that case, however, under the facts the question of the proper plaintiff, as between the township and the county, and as respecting the bridges and culverts destroyed, was not presented. [7] However, we do not doubt that, where there has been a negligent injury to or destruction of a bridge, the township may at once maintain an action to recover damages therefor, provided there has been no prior determination that the duty to make repairs or to restore rests upon the county. It may maintain such action by reason of its prima facie or presumptive duty to make repairs. | Can the township or town recover damages from the wrong doer for the injury to the roads and bridges? |
| 16495 | Conner v. Sampson, 22 Tex. 20, 21 (1858) | 1 | An application for a continuance for the absence of a witness must show that the witness has had a reasonable notice by subpoena, and what notice is reasonable depends upon all the circumstances of the case. | The application for a continuance is defective in this, that it does not show that the witness had been served with a subpœna, a reasonable time before the trial, to enable him to be present at the trial. The point was decided at Tyler (1858), that it must appear from the affidavit, unless it otherwise appear of record, that reasonable time has been given the witness to make necessary preparations to attend the court at the time of the trial, otherwise the party could not be held to have used due diligence to procure his attendance. What this reasonable time is, must depend upon the distance of the witness from the court, and other surrounding circumstances. A party should, if practicable, have his witnesses served with a subpœna before the commencement of the court. If, however, he relies upon having done it during the term, he must show that it has been done a reasonable time before the trial. | Must an application for a continuance for the absence of a witness show that the witness has had a reasonable notice by subpoena? |

| 16496 | Humburg v. Namura, 13 Haw. 702, 704 (1901) | 4 | A district magistrate's order continuing an action for rent until the termination of a bankruptcy cause in the federal court, that is to say, for an indefinite and uncertain time, is equivalent to an order of dismissal and is a "final order," and is appealable. | We are of the opinion that when the Magistrate continued the cause until another proceeding in another court was terminated–an indefinite and uncertain time–that this was equivalent to an order of dismissal and that such order was a "final order" in the cause and was appealable. The motion to dismiss the appeal is denied and the cause is remanded to the District Magistrate of South Hilo, with direction to set aside the order of continuance appealed from and for such further proceedings as may be necessary. | Is an indefinite continuance by a magistrate equivalent to an order of dismissal? |
| 16498 | Stevenson v. Illinois Cent. R. Co., 157 Ky. 561, 163 S.W. 747, 751 (1914) | 7 | Under Civ.Code Prac. S 585, a deposition cannot be read in evidence unless it is filed with the papers of the case before the commencement of the trial. | [8] Again, this deposition was not filed in this action at any time, nor offered to be so filed before the commencement of the trial as required by section 585, Civil Code. Under this provision of the Code, before a deposition can be read in an action, it must be filed therein, before the commencement of the trial. | Can a deposition be read in evidence unless it is filed with the papers of the case before the commencement of the trial? |
| 16500 | Ebersole v. S. Bldg. & Loan Ass'n, 147 Ala. 177, 182, 41 So. 150, 152 (1906) | 2 | Under Code 1896, S 1841, making it the duty of a commissioner to reduce the answers of a witness to writing, or cause it to be done by the witness himself or some impartial person, a commissioner is not required to himself take down the answers of a witness in the commissioner's own handwriting. | There is no rule or statute that requires the commissioner, himself, to take down the answers of a witness in his own handwriting. "It is the duty of the commissioner to reduce the answers of the witness to writing, or cause it to be done by the witness himself, or some impartial person, as near as may be, in the language of the witness," etc. Code 1896, 1841. | Should the commissioner require the questions to be reduced to writing? |
| 16506 | Oatman v. Andrew, 43 Vt. 466, 471 (1871) | 4 | After a deposition is filed, the magistrate who took it has no authority to amend the caption; but the court may ratify and render valid such unauthorized amendment. | After a deposition has been once used, or after the party taking it has caused it to be filed as one of the papers in the cause, the magistrate taking it has no more right or authority to make any amendment to or alterations in the caption than a party has to make alterations in his writ after he has entered it in court. The deposition in such a case has become a part of the files in the cause, and is in the custody of the court, and no amendment can properly be made without the permission of the court. | "After a deposition is filed, does the magistrate who took it have no authority to amend the caption?" |
| 16507 | Bishop v. Hilliard, 227 Ill. 382, 387, 81 N.E. 403, 405 (1907) | 5 | It is not necessary that certificates of the official character of the officer before whom depositions are taken accompany the depositions, but they may be produced in court at hearing and the notary's official character there be established. | The defendant offered in evidence before the master certain depositions, to which complainant objected upon the ground that they were not accompanied by commissions to or certificates of the official character of the officer before whom they were taken, as required by statute. We have held that, where the certificate does not accompany the deposition, it may be produced in court at the hearing and the official character of the notary then and there established, and that the true construction of the statute only requires that the official character of the officer taking the deposition should be established before it is read in evidence. | Is it necessary that certificates of the official character of an officer accompany the depositions? |
| 16514 | People's Bank of Mobile v. Moore, 201 Ala. 411, 412 (1918) | 1 | Instruments drawn upon, or payable out of a particular fund, are not negotiable. | It is well settled by the authorities that instruments drawn upon, or payable out of, a particular fund, are not negotiable bills or notes, because they do not carry the general personal credit of the obligor, and payment is contingent upon the sufficiency of the fund referred to. | Are instruments drawn upon or payable out of a particular fund negotiable? |
| 16521 | Harvey v. Osborn, 55 Ind. 535, 543 (1877) | 7 | Where a deposition is taken before the "clerk of a court of record," he must certify to the same under the seal of such court. | **5 The fourth reason assigned in appellant's motion was, that the seal, attached to the certificate of the pretended officer before whom the same were taken, was not his seal. ??ut the seal of the county court. Our answer to this is, that where depositions are taken before the clerk of a court of record, as such, the only proper seal for him to use, in his certificate to such depositions, is the seal of the court of record of which he is clerk. | "Where a deposition is taken before the ""clerk of a court of record,"" must he certify to the same under the seal of such court?" |
| 16523 | Knight v. Nichols, 34 Me. 208, 209 (1852) | 3 | A deposition is admissible though it be not stated in the caption at whose request it was taken. | It is insisted that this deposition was inadmissible, because it did not state in the caption at whose request it had been taken. | Is a deposition admissible though it be not stated in the caption at whose request it was taken? |

| | | | | | |
|---|---|---|---|---|---|
| 16526 | Wilkins v. Gibson, 113 Ga. 31, 38 S.E. 374, 383 (1901) | 6 | Where one advances money to pay off an incumbrance on realty under an agreement that the advance made is to be secured by a lien on the property, delay on the part of an intervening incumbrancer to prosecute his legal remedies and indulgences granted by him to the debtor, brought about by the fact that the lien to which subrogation is asked had been canceled on the records, will, when accompanied by substantial damage to the rights of the intervening incumbrancer, be a sufficient reason for a court of equity to refuse the person advancing the money the right of subrogation and a decree setting aside the cancellation, when the claim of subrogation is not asserted within a reasonable time after knowledge that the prior incumbrance has been canceled of record. | Krein's headnote not found using judicial opinion. | Will subrogation be allowed if the person claiming the right of subrogation has unreasonably delayed in asserting such right? |
| 16531 | Jacobs v. Pierce, 132 Ill. App. 547, 549 (Ill. App. Ct. 1907) | 1 | Where a payee or assignor of a promissory note has been required to take up note, his right of action revives. | If the payee or any assignor of a promissory note has been under the necessity of taking up the note his right of action revives. | When does the right of action revive to the payee of a promissory note? |
| 16537 | Baker v. J.W. McMurry Contracting Co., 282 Mo. 685, 223 S.W. 45, 50 (1920) | 15 | To be binding, a custom must, among other requisites, be certain, uniform, general, and of long existence. | A custom, to be binding, must, among other requisites, be shown to be certain, uniform, general, and of long existence. | Does a custom have to be of long existence in order to be binding? |
| 16538 | Cont'l Coal Co. v. Birdsall, 108 F. 882, 884–85 (4th Cir. 1901) | 1 | A custom of the port in which a charter was made, in order to be admissible to explain the charter must be reasonable, certain, consistent with the contract, and not contrary to law, and so general, and long established that the parties are conclusively presumed to have contracted with reference to it. | But to have that effect there must be no room to doubt the existence of such a custom, and it must be reasonable, certain, consistent with the contract, uniformly acquiesced in, and not contrary to law.<br>The existence of such a custom as would control the charter party- that is to say, that would be tacitly incorporated in it on the ground that the parties must be presumed to have contracted with reference to it, and to have had it in mind when making the contract, and for that reason be required to conform to it- must be so ancient, uniform, notorious, and reasonable that all parties doing business of this kind at the port of Baltimore are conclusively presumed to have been acquainted with it, and impliedly annex it to *885 the language and terms of any contract made which is to be performed at that port. | Does custom have to be uniform and notorious to be presumed to be understood by parties? |
| 16542 | Barrow v. Bement, 239 S.W. 273, 274 (Tex. Civ. App. 1922) | 1 | A motion for a continuance to procure testimony which fails to allege due diligence as required by the statute is fatally defective. | We will only consider the question whether the court erred in overruling the motion, in so far as it sought a continuance to enable appellant to get personal service upon defendant Huber, as the assignment complains of the action of the trial court in this respect only. However, as the propositions under the assignment urge error in refusing a continuance to procure the testimony of Huber, it is proper to say that the motion seems to be fatally defective as a statutory motion, for the failure to allege that appellant has used "due diligence," which is a positive statutory requirement. Crawford v. Saunders (Tex. Civ. App.) 79 S. W. 102; Patton v. Williams (Tex. Civ. App.) 79 S. W. 357, and cases cited. Moreover, the motion was addressed to the sound discretion of the court, and a careful consideration of the allegations therein has convinced us that the discretion was not abused. | "Is an application for a continuance bad which fails to state that the party has used due diligence, although the facts stated may seem to show diligence?" |

| | | | | | |
|---|---|---|---|---|---|
| 16546 | Miller v. McDonald, 13 Wis. 673, 675 (1861) | 3 | Where it appears from the deposition that a portion of the testimony favorable to the party taking it, "was objected to," it will be presumed that the objection was made by the adverse party, it being certified by the officer that such party attended at the taking of the deposition. The word "attended," as used in the statute prescribing the form of certificate to be annexed to a deposition, means some thing more than mere personal presence; it signifies participation in the examination of the witness. | S...) declares that he shall annex to the deposition a certificate containing, among other things, a statement in substance, that the opposite party, or his attorney, attended at the taking, or that a notice, of which the annexed is a copy, was served upon him on a day named. This provision indicates that the legislature intended that when there was an attendance in fact, no proof of service of notice would be necessary. By the word "attended," as here used, the legislature undoubtedly meant something more than mere personal presence. It signifies that the party was present and participated in the examination of the witnesses. | Should the certificate stating the non-attendance of a party at the taking of the deposition be annexed to the certificate of the taking? |
| 16551 | Gay v. Kendig, 2 Rob. (LA) 472, 474 (1842) | 3 | To obtain a third continuance on the ground of the absence of the same witness, the materiality of the testimony must be shown, and such extraordinary diligence as to satisfy the court that it was absolutely impossible to procure the evidence. | The case had been continued twice on the same showing, and we think that to be entitled to a third continuance on the same ground, the defendant should have shown, that he had used, every time, such diligence as to satisfy the court that it was absolutely impossible to procure the evidence, and that there was really a prospect of obtaining the testimony. | Can the materiality of testimony be shown to obtain a third continuance due to absence of same witness? |
| 16552 | In re Custom Contractors, 439 B.R. 544, 548 (S.D. Fla. 2010) | 9 | Doctrine of intergovernmental tax immunity bars only those taxes that are imposed directly on one sovereign by the other or that discriminate against a sovereign or those with whom it deals. | Contrary to the argument of the Defendant, this result does not violate the doctrine of intergovernmental immunity. "[I]ntergovernmental tax immunity bar[s] only those taxes that [are] imposed directly on one sovereign by the other or that discriminate [ ] against a sovereign or those with whom it deal[s]." | What does the doctrine of intergovernmental tax immunity bar? |
| 16581 | Thompson v. Haile, 12 Tex. 139, 140 (1854) | 1 | Where an officer taking a deposition does not certify that it was signed by the witness, it is not admissible in evidence. | The depositions were excluded on the ground that they were not properly certified to by the officer taking the same. The defect was in the omission to certify that they were signed by the witness. | "Where an officer taking a deposition does not certify that it was signed by the witness, is it not admissible in evidence?" |
| 16582 | Hipp v. Huchett, 4 Tex. 20, 20 (1849) | 2 | A third application for continuance is addressed to the sound discretion of the trial court. | 667 by the 1955 legislature the courts of Oklahoma have a long line of decisions holding that it is a settled rule of law that an application for a continuance is addressed to the sole discretion of the trial court. | Can a third application for continuance be addressed to the sound discretion of the trial court? |
| 16583 | Hyde v. Benson, 6 Ark. 396, 396 (1846) | 1 | An authentication of the official character of a judge, before whom depositions were taken, by a deputy clerk, not disclosing the name of his principal, is insufficient. | An authentication of the official character of a judge, before whom depositions were taken, by a deputy clerk, not disclosing the name of his principal, is insufficient. | "According to the requisitions of the statute, is it essential to authenticate the official character of the officer before whom depositions were taken without which it would be consequently rejected by the court??" |
| 16591 | In re Frick's Estate, 277 Pa. 242, 255 (1923) | 4 | A tax can only be imposed by the state when it has either jurisdiction over the person or over his property. | We agree that 'a tax can only be imposed by the state when it has either jurisdiction over a person or jurisdiction over his property.' | Can a tax be imposed by the state only when it has either jurisdiction over the person or over his property? |
| 16599 | Shea v. Nilima, 133 F. 209, 215 (9th Cir. 1904) | 4 | The fact that a mining claim is located by an alien does not render the location illegal or void, but, at most, it is only voidable at the instance of the government; and a subsequent declaration of intention to become a citizen by a locator, or one having an interest in the claim, prior to the inception of any adverse rights, relates back to the date of the location or acquisition of the alien's interest, and validates the transaction. | The fact that a mining claim is located by an alien can only be taken advantage of by the government. The location is not illegal or void, but, at most, is only voidable by the act of the government. A subsequent declaration of intention to become a citizen by a locator, or one having an interest in the claim, prior to the inception of any adverse rights, relates back to the date of the location, or acquisition of the alien's interests therein, and validates the transaction. | Are the location of a mining claim by an alien and all the rights following from such location voidable or void? |
| 16619 | Johnson v. Allstate Ins. Co., 410 So. 2d 978, 980 (Fla. Dist. Ct. App. 1982) | 3 | A party may not ignore a valid order of court except at its peril. | A party may not ignore a valid order of court except at its peril. | Does a party ignore a valid order of court at its own peril? |

| 16624 | Hill v. Roberts, 142 Tenn. 215, 217 S.W. 826, 828 (Tenn. 1920) | 13 | No constitutional restriction upon a state's power to tax will be inferred. | We do not think that article 2, section 29, expresses any prohibition against such procedure by the Legislature, and we have recently held that no constitutional restriction upon the state's power to tax will be inferred. | Can any constitutional restriction upon a state's power to tax be inferred? |
|---|---|---|---|---|---|
| 16625 | People ex rel. Stafford v. Travis, 231 N.Y. 339, 348, 132 N.E. 109, 112 (1921) | 6 | The authority of a state to lay a tax is dependent on jurisdiction of the subject of the tax, and so as far as it affects a nonresident doing business in the state its jurisdiction is over the business done by him in the state. | The authority of the state to lay a tax is necessarily dependent upon jurisdiction of the subject of the tax. Its jurisdiction as far as it affects the relator is over the business done by him in this state. | Is the authority of a state to lay a tax dependent on jurisdiction of the subject of the tax? |
| 16635 | Rush v. French, 1 Ariz. 99, 118, 25 P. 816, 820 (1874) | 7 | Failure of a mining locator to comply with the local miners' rules, under which the location was made, does not work a forfeiture, unless the rules themselves so provide. | In such cases, however, the agent making such location has no power, afterwards to make any change in the same, so as to affect injuriously the right of the party for whose benefit the location was made. A failure to comply with the local rules and customs of the district will not work a forfeiture, unless such failure is declared by such rules and customs to be a forfeiture." The court refused to give the above instruction, to which counsel for defendants excepted, and assigned error 40. | Can a failure to comply with the local mining rules and customs work a forfeiture? |
| 16646 | Cady v. Shepard, 12 Wis. 639, 639 (1860) | 6 | Where a promissory note is indorsed by the payee, and also by another party, the legal inference from the instrument itself, is that the payee is the first indorser. | Where a promissory note is indorsed by the payee, and also by another party, the legal inference from the instrument itself is that the payee is the first indorser. (Followed, Davis vs. Barron, 13 Wis. 227; King vs. Ritchie, 18 Id. 554.) | Whether the payee is the first indorser? |
| 16664 | Commonwealth v. Hufnal, 185 Pa. 376, 378, 39 A. 1052 (1898) | 2 | Act June 26, 1895, P.L. 317, "An act to provide against the adulteration of food," though providing: "An article shall be deemed to be adulterated: * (a) In the case of food: * (3) if any valuable or necessary constituent or ingredient has been wholly or in part abstracted from it,"- does not authorize conviction of one who, under the description of "skimmed milk," sells milk from which the cream has been taken by separator process, known as the "centrifugal method," though thereby more cream is extracted than by the old-fashioned skimming process. | It was therefore incumbent on the commonwealth to prove that the word was used in the statute in a sense different from its ordinary meaning, and sufficient to cover the act charged as a violation. This the commonwealth undertook to do by reference to the third subdivision of section 3, as follows: 'Sec. 3. An article shall be deemed to be adulterated within the meaning of this act: (a) in the case of food: * * * (3) If any valuable or necessary constituent or ingredient has been wholly or in part abstracted from it.' The facts were not really in dispute, and showed that there were in common use three methods of separating the cream from the whole milk: First, the immemorial skimming, by setting the milk in shallow vessels, and allowing the cream to rise, and then removing it by a sliding motion of a paddle or dipper; secondly, the Cooley process, of setting the milk in deep vessels, subjecting it to rapid cooling, and then drawing off the heavier, watery ingredients from the bottom; and, thirdly, the centrifugal method, by which the milk is subjected to a rotary motion, with very high velocity, which separates the watery ingredients from the cream by reason of their greater specific gravity. | Is skimmed milk an exempting clause or not prohibited under adulteration? |

| | | | | | |
|---|---|---|---|---|---|
| 16665 | D.C. v. Lynham, 16 App. D.C. 85, 88-89 (D.C. Cir. 1900) | 1 | It is no defense for a druggist who is prosecuted for selling an adulterated drug in violation of Act Cong. Feb. 17, 1898 (30 Stat. 246), relating the adulteration of foods and drugs in the District of Columbia, to show simply that he was at the time of sale, or of possession for sale, ignorant of the fact that the drug was adulterated, as he must know what he sells, or proposes to sell, and that it conforms to the standard prescribed by law. | Section 2 declares, "that the term 'drug' as used in this act, shall include all medicines for external or internal use, antiseptics, disenfectants and cosmetics." And by section 3 it is provided, "that an article shall be deemed to be adulterated within the meaning of this act: (a) In the case of drugs: First, if, when sold under or by a name recognized in the United States pharmacopoeia, it differs from the standard of strength, quality or purity laid down in the edition thereof at the time official; second, if, when sold under or by a name not recognized in the United States pharmacopoeia, but which is found in the German, French or English pharmacopoeia, it differs from the strength, quality or purity laid down therein; third, if, when sold as a patented medicine, compounded drug or mixture, it is not composed of all the ingredients advertised or printed or written on the bottle, wrapper or labels of or on or with the patented medicine, compounded drug or mixture: Provided, that if the defendant in any prosecution under this act, in respect to the sale of any such patented medicine, compounded drug or mixture, shall prove to the satisfaction of the court that he had purchased the article in question as the same in nature, substance and purity as that demanded of him by the purchaser, and with a written warranty to that effect; that he had no reason to believe at the time when he sold it that the article was otherwise, and that he sold it in the same state as when he purchased it, he shall be discharged from the prosecution." **3 The Hoffman Anodyne, it appears, is recognized and described in the United States pharmacopoeia, and is not of the third class and description of medicines and compounds referred to in the third section of the act of Congress; nor did the defendant attempt to make and establish the defense as provided in the proviso to the third section of the act as may be done, "in respect to the sale of any such patented medicine, compounded drug or | Can a defendant take up a defense of ignorance of adulteration? |
| 16671 | Elston v. Dewes, 28 Ill. 436, 436 (1862) | 1 | Prior to the act of the general assembly of 1861, Laws 1861, p. 119, days of grace could not be claimed by the maker of a note. | Prior to the act of the General Assembly of 1861, days of grace could not be claimed by the maker of a note. | Did days of grace exist as a right prior to the passing of the act of 1861? |
| 16674 | Goodwine v. Vermilion Cnty., 271 Ill. 126, 131, 110 N.E. 890, 892 (1915) | 2 | Power of county board to aid in the construction of roads and bridges under County Law, S 57, S.H.A. ch. 34, S 57, held not limited or modified by Road and Bridge Act, S 126, S.H.A. ch. 121, S 134. | Section 57 was not repealed by the passage of the Road and Bridge Law of 1913, but is still in force, and confers upon the county board power to levy a tax to aid in the construction of roads in the county. People v. Jacksonville & St. Louis Railway Co., 265 Ill. 550, 107 N. E. 237; People v. Wabash Railroad Co., 265 Ill. 530, 107 N. E. 231. This provision gives the county board a discretion to aid any town in the construction of roads and bridges. Section 40 authorizes the board of supervisors to submit to the legal voters of the county the question of issuing bonds whenever they shall deem it necessary to issue bonds to enable them to perform any of the duties imposed upon them by law. | Does the county board have the power to aid in the construction of roads? |
| 16678 | Gayon v. McCarthy, 252 U.S. 171, 177, 40 S. Ct. 244, 247, 64 L. Ed. 513 (1920) | 1 | Cr.Code, S 10, as amended by Act May 7, 1917, 18 U.S.C.A. S 22, as to hiring or retaining another to go outside the United States with intent to enlist in the service of a foreign people, uses "retain" as an alternative to "hire," and as meaning something different from the usual employment with payment in money; and one may be retained, in the sense of engaged, to render a service by a verbal promise, by a prospect for advancement or payment in the future. | 1914A, 614, and Brown v. Elliott and Moore v. Elliott, 225 U. S. 392, 32 Sup. Ct. 812, 56 L. Ed. 1136. [4] The word 'retain' is used in the statute as an alternative to 'hire' and means something different from the usual employment with payment in money. One may be retained, in the sense of engaged, to render a service as effectively by a verbal as by a written promise, by a prospect for advancement or payment in the future as by the immediate payment of cash. As stated long ago by a noted Attorney General, in an opinion dealing with this statute: *178 'A party may be retained by verbal promise or invitation for a declared or known purpose. | Do the terms retain and hire means the same? |

| | | | | | |
|---|---|---|---|---|---|
| 16679 | Perrin v. Keene, 19 Me. 355, 357–58 (1841) | 1 | A power to one partner to settle the affairs of the partnership, after a dissolution, does not authorize him to contract debts in the name of the firm, so as to bind his copartners; and the fact that the contract is for the loan of money to pay the partnership debts makes no difference. | is the account still existing and may it properly be introduced  356 into the writ by way of amendment, by adding a new count for that purpose? In England and New-York a note given on the settlement of an account is not a discharge of such account. In this State and in Massachusetts it is otherwise. But in these States it is held to be only prima facie evidence of a discharge, and, of course, is open to explanation. Hence, in Vancleef v. Therasson, 3 Pick. 14, it was held that when a note was given in New-York, in discharge of an account, and the suit was commenced on the account in New-York, that the plaintiff could not, under leave to amend, file a count on the note, because it was a new and distinct cause of action. The note, by the law of New-York, not being a payment, did not discharge the account. But in Ball v. Claflin, 5 Pick. 303, with perfect consistency, it was held that the giving of a new note is not a payment, and that both may be considered as the same cause of action. So in this State, in Newell v. Hussey, in the county of Lincoln, it was held that when an account is sued and a note had been given for it, that the note could not come in by way of amendment, being a new cause of action. This note, given without authority, does not extinguish the account. If it did, it would be a new cause of action. If not, then the account remains the same subsisting demand and may be brought in by way of amendment. 5 Pick. 303. If the notes were given without authority, they were not a payment of the debt, and the account remains undischarged. It may be said, that the note binds the agent or partner who made it, even if he undertakes to use the copartnership name without authority. The answer is, it can bind him alone, and the plaintiffs did not intend to take the note of Weston alone. They meant to have the security of the copartnership. The note, then, being the note of Weston alone, the presumption of payment is rebutted. | Does the power to settle and adjust the affairs of the partnership authorize the use of the partnership name for that purpose? |
| 16683 | Citizens' Sav. & Loan Ass'n v. City of Topeka, 87 U.S. 655, 663, 22 L. Ed. 455 (1874) | 12 | The power to tax is the strongest and most pervading of all powers of government reaching directly or indirectly to all classes of the people. | The power to tax is, therefore, the strongest, the most pervading of all the powers of government, reaching directly or indirectly to all classes of the people. | Is the power to tax the strongest of all the powers of government? |
| 16695 | Bank of Indian Territory v. First Nat. Bank, 109 Mo. App. 665, 83 S.W. 537, 538 (1904) | 2 | An indorsement on a draft by a bank to whom it is made payable as follows, "Pay to any bank or banker or order," is an indorsement for collection, and not a transfer of the title of the draft. | The indorsement of plaintiff, "to pay to any bank or banker or order," was not such an indorsement as to pass the title to the bill. It merely authorized any bank or banker into whose hands it might come to collect and remit the proceeds. In other words, it was only authority to collect— therefore a restrictive and not an unconditional indorsement passing the title. We think this is clear. The title remained in the plaintiff, and no subsequent indorsements could affect such title. | "Is pay to any bank or banker an indorsement for collection and that such an indorsement, under the general rule did not transfer title?" |
| 16696 | Gibson v. Spikes, 143 Ark. 270, 220 S.W. 56, 57–58 (1920) | 4 | The Legislature has the power to levy road improvement assessments subject only to the right of the owner to have an arbitrary abuse of that power reversed by the courts. | It is next insisted that the Legislature had no power to validate and confirm the assessments which had theretofore been made by the commissioners. Unless the assessment was arbitrary, the Legislature had the power to confirm and validate it. The Legislature had the power in the first instance *58 to have levied the assessment subject only to the right of the landowner to have an arbitrary abuse of that power reviewed by the courts, and it can therefore adopt as correct the assessment made by the commissioners as a reassessment by the Legislature. Coffman v. St. Francis Drainage District, 83 Ark. 54, 103 S. W. 179, and Davies v. Chicot County Drainage Dist., 112 Ark. 357, 166 S. W. 170. | Are the assessments levied by the legislature subjected to the rights of the landowner? |

| 16698 | Mechanics' Bank of Alexandria v. Bank of Columbia, 18 U.S. 326, 337, 5 L. Ed. 100 (1820) | 6 | The liability of the principal depends on whether the act of his agent was done in the exercise and within the limits of the powers delegated. The profession on their face that an agent's acts were in the exercise of his agency does not give them their validity. | But in the diversified exercise of the duties of a general agent, the liability of the principal depends upon the facts, 1. That the act was done in the exercise, and, 2. Within the limits of the powers delegated. These *338 facts are necessarily inquirable into by a Court and jury; and this inquiry is not confined to written instruments, (to which alone the principle contended for could apply,) but to any act with, or without writing, within the scope of the power or confidence reposed in the agent; as, for instance, in the case of money credited in the books of a teller, or proved to have been deposited with him, though he omits to credit it. | What does the liability of the principal depend on? |
|---|---|---|---|---|---|
| 16699 | Kasson v. Noltner, 43 Wis. 646, 650 (1878) | 6 | A principal is responsible for the act of his agent when he has either given the agent authority to do the act, or justified the party dealing with the agent in believing that the latter had such authority. | The rule of law which controls the decision of this case is, that "a principal is responsible, either when he has given to an agent sufficient authority, or when he justifies a party dealing with his agent in believing that he has given to the agent his authority." | When is a principal responsible for the acts of the agent? |
| 16703 | Com. v. Wheeler, 205 Mass. 384, 386, 91 N.E. 415, 416 (1910) | 1 | Rev.Laws, c. 56, SS 56, 57, as amended by St.1908, c. 643, providing punishment for selling or having for sale milk below a certain standard of quality, is a proper exercise of the police power for the prevention of fraud and the promotion of the public health. | at 380, 697 P.2d at 1130 ("The construction, maintenance and repair of sewers may *376 **397 be provided by ordinances and sustained as a valid exercise of the police power in the interest of public health."). As a well known commentator has observed: [I]n many of its aspects the establishment and efficient maintenance of a sewer system is an exercise of the police power for the protection and promotion of the public health and safety.... | Will the quality of milk depend on food that cows are fed? |
| 16704 | Hunt's Ex'r v. Hall, 37 Ala. 702, 705 (1861) | 3 | A note executed in one state, and made payable in another, must bear interest according to the law of the latter state when no rate of interest is expressed. | The note was made payable in Louisiana, and, being silent in respect to the rate of interest, must bear interest according to the law of that State. Dickinson v. Branch Bank, 12 Ala. 54; Story on Conflict of Laws, § 291; Scofield v. Day, 20 Johns. 102; Peck v. Mayo, 14 Vermont, 33. It was an admitted fact in the case, that the legal rate of interest in Louisiana is five per cent. It is clear, therefore, that if we look alone to the note itself, in connection with the admitted law of Louisiana, which is silently incorporated into it as one of its *705 terms, the defendant was only bound to pay interest at the rate of five per cent.; and on that hypothesis, the payments proved satisfied the note. [2.] It is true, however, that although the legal effect of the note was a promise to pay only five per cent. interest; still it was in the power of the parties to modify the written contract, in this respect, by a subsequent verbal agreement, founded on sufficient consideration.--Smith v. Garth, 32 Ala. 373; Stoudenmeier v. Williamson, 29 Ala. 569. And under a complaint counting on the original contract as modified by the subsequent parol agreement, the plaintiff would be entitled to recover the rate of interest stipulated by such agreement. But, in a suit upon the note itself, it is not allowable to prove a subsequent change of its terms, and recover upon the contract as thus modified. That would be, to allege one contract, and recover upon another; which the law will not tolerate.--See Taylor v. Pope, 3 Ala. 190. | Which law governs the interest payable on a note? |
| 16722 | Horton v. Fulton, 130 Ga. 466, 60 S.E. 1059 (1908) | 2 | On an interlocutory hearing for injunction, affidavits not "entitled in the cause," and which make no reference to the case or the court where the case is pending, are not admissible in evidence. | On an interlocutory hearing for injunction, affidavits which are not "entitled in the cause," and which make no reference to the case or the court where the case is pending, are not admissible in evidence. | What is the consequence of affidavits not entitled in the cause? |
| 16723 | Proctor v. Home Tr. Co., 221 Mo. App. 577, 284 S.W. 156, 160 (1926) | 6 | Indorsement is unnecessary to convey title or enable holder to sue on note in his own name as real party in interest. | It is the settled law in this state that a written assignment or indorsement is unnecessary to convey title to commercial paper or to enable the holder to sue thereon in his own name as the real party in interest. | Is a written assignment necessary for the holder to sue in his own name? |

| | | | | | |
|---|---|---|---|---|---|
| 16726 | Howard v. Branner, 23 La. Ann. 369, 369 (1871) | 1 | A note executed in one state, and made payable in another, must bear interest according to the law of the latter state when no rate of interest is expressed. | The defense does not appear to be established by the evidence, but we think there is a small error in the judgment in giving interest upon the note at the rate of six per cent. per annum, according to the law of Tennessee. It is true the note was dated in Tennessee, but it was by its terms made payable in New Orleans. In the absence, therefore, of any express stipulation as to the rate of interest, the rate is determined by the law of Louisiana. 13 L. 92; 8 N. S. 34. | Which law governs interest if a note is dated in one state and payable in another state? |
| 16727 | Smith v. Anderson, 70 Vt. 424, 41 A. 441, 442 (1898) | 5 | Where parties to a note, who lived in different states, did not contract with reference to the law of either state, the law of the place in which the contract was made would determine the right to recover; and hence a charge that whether or not the note had been paid might depend on whether the contract was made in one state or another is not erroneous. | Another question was made with reference to the removal of eight certain piles of lumber. The testimony tended to show the lumber was being injured in the place where it was then piled; that the defendant Ames caused the lumber to be removed, without the consent, knowledge, or authority of the plaintiff, to another part of the mill yard, many rods away, with other piles not covered by the mortgage; and that the piles removed were not marked as required, to indicate that they were covered by the mortgage. This was done to prevent injury to the lumber from water, and subsequently it was burned. The court charged if this was done without the intent of interfering with plaintiff's rights, and of converting the property to his own use, it would be no conversion. This instruction was correct. The removal did not prevent its being held under the mortgage. It was done for the purpose of protecting the joint interests of both the plaintiff and the defendant Ames. The latter exercised no control or dominion over it except to perform such acts as tended to its preservation. Would removing property from a burning building by a mortgagor, to prevent its destruction, be a conversion? We doubt if any one will so contend. Neither would a removal to prevent it from injury by water, although the lumber would not have burned had it been left where it was originally piled, be a conversion. The removal was not the proximate cause of its destruction. Davis v. Railway Co., 66 Vt. 290, 29 Atl. 313. | Which law governs the right to recover? |
| 16733 | Anderson v. Nesbitt, 43 Ind. App. 703, 88 N.E. 523, 524 (1909) | 2 | Owner of cows wrongfully allowing them to run at large on highway is not liable for injuries caused by horse frightened at the cows and running away; there being no special circumstances, such as allowing them to run at large during nighttime, or that they so obstructed the beaten part of highway that a horse would be frightened. | 193." The averments of the complaint in the case at bar are that the cows were negligently permitted to run at large on the public highway, and the negligence consisted in their being at large in the absence of an order made by the commissioners of the county, and nothing more. There is no averment that the owner of the cows did anything but permit them to run at large on the public highway, or that it was in the nighttime when the accident occurred, and the cows had so obstructed the beaten part of the highway that a horse of ordinary gentleness might take fright at same, or any averment that would require the cause submitted to a jury. | "Does an object in the highway in violation of statute, make the owner liable for damages resulting from fright which may have occasioned to horses ?" |
| 16734 | Bollen v. Woodhams, 68 Colo. 322, 322–23, 190 P. 427, 427 (1920) | 2 | A "sham pleading" is one good in form, but false in fact. | A sham pleading is one good in form, but false *323 in fact. | "Is a sham pleading one good in form, but false in fact?" |

| | | | | | |
|---|---|---|---|---|---|
| 16739 | Quint v. O'Connell, 89 Conn. 353, 94 A. 288, 290 (Conn. 1915) | 1 | The "apparent authority" of an agent is to be determined by the acts of the principal and not by the acts of the agent, the principal's liability being determined not merely by what was the apparent authority of the agent, but by what authority a third person, exercising reasonable care, was justified in believing principal had conferred upon the agent. | The apparent power of an agent is to be determined by the acts of the principal, and not by the acts of the agent; a principal is responsible for the acts of an agent within his apparent authority only where the principal by his acts or conduct has clothed the agent with the appearance of authority, and not where the agent's own conduct and statements have created the apparent authority. The liability of the principal is determined in any particular case, however, not merely by what was the apparent authority of the agent, but by what authority the third person, exercising reasonable care and prudence, was justified in believing that the principal had by his acts under the circumstances conferred upon his agent. | Can apparent authority be determined by the acts of the agents principal? |
| 16741 | State ex rel. Spelts v. Rowe, 108 Neb. 232, 188 N.W. 107, 109 (1922) | 4 | A tax law is a legislative enactment defining the measure of every man's duty in support of public burdens, and a tax thus imposed is not founded on contract, and does not establish the relation of debtor and creditor between the taxpayer and the state, and may be repealed or amended by a subsequent Legislature. | A tax law is a legislative enactment which defines the measure of every man's duty in support of the public burdens, and provides the means of enforcing it. A tax is not founded on contract, and does not establish the relation of debtor and creditor between the taxpayer and the state. | What are tax laws? |
| 16749 | Bronner v. Walrath, 208 A.D. 758, 202 N.Y.S. 577, 578 (App. Div. 1924) | 4 | If one of several joint and several makers of a note pays more than his share, he may have contribution from the others. | The presumption created by the form of the Christman note is that the four parties signing it were joint and several makers, and became jointly and severally liable. National Surety Co. v. Seaich, 171 App. Div. 414, 157 N. Y. Supp. 422; Negotiable Instruments Law, § 36. Each was liable to pay the whole amount. But, if one paid more than his share, he might have contribution from the others. | "In case of joint liability on a note, can one person seek contribution from others?" |
| 16779 | Dwight v. Newell, 15 Ill. 333, 335 (1854) | 4 | One of several executors or administrators may assign a note made payable to the testator. | A sale of a chattel by one transfers the title to the purchaser. And one executor may assign a promissory note made payable to the testator. The act of one is regarded as the act of all. | Can an executor assign a promissory note made payable to the testator? |
| 16817 | Town v. Hazen, 51 N.H. 596, 596 (1872) | 1 | A. conveys to B. a lot of land, reserving all the wood and timber standing and down thereon, with one year to remove the same. Whatever wood and timber A. cuts and severs from the soil within the year becomes his personal property, and remains his property after the year has expired, although he cannot remove the same after the expiration of the year without trespassing upon B. | A conveyed to B a lot of land, reserving all the wood and timber standing and down thereon, with one year to remove the same. Whatever wood and timber A cuts and severs from the soil within the year becomes his personal property, and remains his property after the year has expired, although he cannot remove the same after the expiration of the year without trespassing upon B. | Can a wood or tree become a personal property? |
| 16823 | Foot v. Sabin, 1821 WL 1589 (N.Y. Sup. Ct. 1821) | 4 | Where one of two partners subscribes the partnership name as surety to a note, the burden of showing the authority and consent of the other partner is on the holder of the note. | Where one of two partners subscribes the copartnership name to a note as sureties for a third person, without the authority or consent of the other partner, the latter is not bound; and the burden of proving the authority or consent of the other partner, lies on the creditor or holder of the note. | Does the burden of proving that the partner who did not sign consented to be bound lie on the creditor? |

| | | | | | |
|---|---|---|---|---|---|
| 16824 | Shattuck v. Chandler, 40 Kan. 516, 20 P. 225, 227 (1889) | 4 | Comp.Laws 1885, c. 37, art. 2, provides that on the death of a partner the property shall be appraised and remain in the possession of the surviving partner, and if he sees fit to continue its management, and the disposing of the assets, and the payment of the debts, he may do so on giving bond; and the probate court may cite him to an accounting, and adjudicate on his accounts as on those of an administrator; and, in case of his failure to faithfully administer the estate, suit may be brought on his bond; and, if he refuse to give bond and take charge of the property, the deceased partner's administrator shall wind up the business. Held, that these provisions, being ample for their purpose, deprive the surviving partner of the power to transfer his trust by assigning for the benefit of creditors. | This brings up the question, is there any statute in Kansas that conflicts with the rule laid down by the supreme court of the United States in the last case cited? Article 2, c. 37, Comp. Laws 1885, provides for the winding up *227 and settlement of partnership estates. This provides for the appraisement of partnership property, and that the property shall remain in the possession of the surviving partner, and, if he sees fit to continue its management, and the disposing of the partnership assets, and the payment of the partnership debts, he may do so upon condition that he give a bond for the faithful performance of the duties imposed; and the power is given the probate court to cite him, after the giving of such bond, to an accounting, and to adjudicate upon such accounts as in the case of an ordinary administrator, and for an action upon the bond in case of his failure to faithfully administer the partnership estate; and upon his refusal to give the bond and take charge of the partnership property, it becomes the duty of the administrator of the deceased partner's estate to assume the management of the same, and to settle it up. | Does a surviving partner have the power to make an assignment of the partnership estate? |
| 16825 | Madison Cnty. Bank v. Gould, 1843 WL 4538 (N.Y. Sup. Ct. 1843) | 2 | A special partner, transacting any business for the firm, becomes a general partner, and liable for the debts of the firm. | Upon this branch of the case the judge charged the jury that the fact that Gould had, in connection with the Russells, taken the title to the mill in his own name, did not render him liable as a general partner. Assuming the fact to be correctly stated, I could not agree to the law of the case as here laid down. Gould would be liable as a general partner upon the double ground that he had improperly interfered in transacting the business of the partnership, and had withdrawn a large portion of the money which he had improperly contributed to the common stock. But the case was over-stated. Mr. Southwick is the only witness who gave any evidence directly bearing upon the question. He says, that when the co-partnership purchased the mill, the title to the same was taken in the name of all the defendants. I find nothing here from which it can fairly be inferred that Gould had any thing to do with making the purchase, or in taking the conveyance. So far as appears, his name may have been included in the deed without his knowledge or consent; and I cannot think him liable for the wrong done by his co-partners, without showing that he participated in the act. | "If a special partner transacts any business on account of a partnership, will he be deemed to be a general partner?" |
| 16837 | Kingan & Co. v. Silvers, 13 Ind. App. 80, 37 N.E. 413, 416 (1894) | 2 | Legal difference between agent and servant is that agency imports commercial dealing between two parties through another, while service refers to actions on and concerning things and deals with matters of manual or mechanical execution. | Agency, properly speaking, relates to commercial or business transactions, while service has reference to actions upon or concerning things. Service deals with matters of manual or mechanical execution. An agent is the more direct representative of the master, and clothed with higher powers and broader discretion than a servant. Mechem, Ag. §§ 1, 2. The terms "agent" and "servant" are so frequently used interchangeably in the adjudications that the reader is apt to conclude they mean the same thing. We think, however, that the history of the law bearing on this subject shows that there is a difference between them. Agency, in its legal sense, always imports commercial dealings between two parties by and through the medium of another. An agent negotiates or treats with third parties in commercial matters for another. | What does service deal with? |
| 16848 | Oates v. First Nat. Bank of Montgomery, 100 U.S. 239, 239 (1879) | 2 | Act Ala.1873, p. 111, puts "bills of exchange and promissory notes, payable in money at a certain place of payment therein designated," upon the same basis as to immunity from set-off, discount, or equities as bills and notes payable at a bank or private banking house. | 'Bills of exchange and promissory notes, payable in money at a certain place of payment therein designated,' are, by an act of the legislature of Alabama, put upon the same basis as to immunity from set-off, discount, or equities as bills and notes payable at a bank or private banking-house. | What governs the bills of exchange and promissory notes payable in money at banks or private banking house? |

| | | | | | |
|---|---|---|---|---|---|
| 16849 | Lowry Nat. Bank v. Fickett, 122 Ga. 489, 50 S.E. 396, 397–98 (1905) | 4 | The term "renewal," as applied to a note, means the re-establishment of the particular contract for another period of time. | As applied to promissory notes, the term "renewal" has been held to mean "the re-establishment of the particular contract for another period of *398 time." | What is renewal as applied to a promissory note? |
| 16857 | People ex rel. Roberts & Schaefer Co. v. Emmerson, 305 Ill. 348, 351, 137 N.E. 202, 203 (1922) | 2 | Corporation Act of 1919, S 105, Similar provisions Corporation Act 1933, see S.H.A. ch. 32, SS 157.131-157.133, 157.138-157.140, requiring each corporation to pay annual franchise tax on its authorized capital stock, is not a property tax dependent on value of corporate assets, but is to be construed with reference to distinction between "capital stock" and "capital," the capital stock being the sum total fixed by the charter as the amount paid in or to be paid in as capital on which the corporation is to do business; capital may be increased by surplus profits or diminished by losses, but not the capital stock. | The tax required by section 105, above quoted, to be paid by corporations doing business in this state is a tax on the authorized capital stock of such corporations. It is not a property tax, and so the value of the corporate assets does not in any way measure the amount of tax to be paid. In construing section 105 it is necessary to keep in mind the distinction between capital stock and capital. The capital stock of a corporation is the sum total fixed by the charter or articles of incorporation as the amount paid in or to be paid in as the capital upon which the corporation is to do business. The capital may be increased by surplus profits or diminished by losses, but this does not increase or diminish the amount of capital stock. | Is franchise tax paid annually? |
| 16866 | Lienkauf Banking Co. v. Haney, 93 Miss. 613, 46 So. 626, 627 (1908) | 2 | A note executed within the state, but negotiable and payable in another state, must be governed by the law of that state, though given for the price of property and reserving title to the property until full payment. | 462, and ending with the case of Hart v. Foundry Co., 72 Miss. 809, 17 South. 769, it has been held that, where a note is made negotiable and payable in another state, it must be governed by the law of that state. This has been the unbroken authority of our state on this subject. | What law governs a note which is payable in another state? |
| 16870 | Fudge v. Kelly, 4 Ga. App. 630, 62 S.E. 96, 97 (1908) | 1 | Mere breach of warranty will not authorize a rescission of a horse swap. | Upon a closer examination of the brief of the evidence we find that it does not affirmatively appear that the lien or process by which the constable seized the horse was an incumbrance upon it at the date of the trade. The showing of this fact was a prerequisite to a recovery by the plaintiff. The verdict in his favor was therefore contrary to the evidence. | Can mere breach of warranty authorize the rescission of a horse swap? |
| 16872 | Russell v. Phelps, 73 Vt. 390, 50 A. 1101, 1102 (1901) | 1 | A contract of exchange of property is governed by the same rules of law as a contract of sale, and upon breach thereof an action may be maintained for damages for conversion of the property traded for, as well as an action on the contract itself. | A contract of exchange of property is governed by the same rules of law as a contract of sale. Chit.Cont. 397. In cases of sale the buyer to whom the right of property has passed, if not in default, may maintain trover for damages for conversion on the vendor's refusal to deliver, as well as an action on the contract. | Is a contract of exchange of property governed by the same rules of law as a contract for sale? |
| 16878 | Burwell v. Cawood, 43 U.S. 560, 564–65, 11 L. Ed. 378 (1844) | 1 | Though generally every partnership is dissolved by the death of one of the partners where the articles of co-partnership do not stipulate otherwise, yet either one may provide, by his will, for the continuance of the partnership after his death, and bind his estate thereby, or only that portion of it already embarked in the partnership. | If, then, the articles of co-partnership would have bound the general assets of Mandeville had he lived until the 1st September, 1838, (assuming that at that time the firm was insolvent,) then we contend that the codicil makes his estate equally liable for all debts contracted by Daniel Cawood & Co. prior to the 1st September, 1838, although Mandeville died in July, 1837. Because, if he could bind his estate by deed while living, so could he, by will, after his death—and in this case the codicil to his will affirms the obligation and continues his liability under the deed of co-partnership, until the 1st September, 1838. It is conceded, that he might have limited his liability, either in the articles of co-partnership or in the codicil to his will, but not having done so in either, and coupling the two papers *565 together, the only fair construction to be put upon them both, makes his estate generally liable for all debts due from the late firm of Cawood and Co. prior to the 1st September, 1838, less what that firm is able to pay towards their discharge. 7 Pet., 586. | Can a partnership agreement be continued after the death of a partner if the partnership agreement so provides? |

| | | | | | |
|---|---|---|---|---|---|
| 16885 | State v. Clausen, 95 Wash. 214, 223 (1917) | 1 | The power of taxation is incident of sovereignty, possessed by state without being expressly conferred by people, being a legislative power necessarily following the general power to make laws. | The power of taxation is an incident of sovereignty, and is possessed by the state without being expressly conferred by the people. It is a legislative power, and when the people by their Constitution create the department of government upon which they confer the power to make laws, the power of taxation follows as a necessary part of the more general power. | Is the power of taxation an incident of sovereignty? |
| 16900 | Austin v. Aldermen of Boston, 74 U.S. 694, 699, 19 L. Ed. 224 (1868) | 2 | The right of taxation carries with it inherently the power to embarrass and destroy. | Where the constitutional power is given to tax, it has no limits. 'It carries with it inherently the power to embarrass and destroy.' | Does the right of taxation carry with it inherently the power to embarrass and destroy? |
| 16907 | Midland Sav. & Loan Co. v. Solomon, 71 Kan. 185, 79 P. 1077, 1080 (1905) | 2 | The fact that the obligor in a bond for the payment of money has secured it by a mortgage on real estate located in a foreign state, where suit is brought to enforce it, does not abrogate the stipulation that the bond shall be payable in and governed by the laws of the state in which it is executed, and the bond must be interpreted by the laws of the state where it is payable. | It may be that this transaction in fact involved a flagrant scheme concocted by the plaintiff to circumvent the interest laws of this state, that certain provisions of the contract were cunningly inserted for that purpose, and that the defendant was deceived or imposed upon concerning them in such a manner that a court of equity may unmask the fraud. In the investigation of such a question the courts will not halt and parley over words, but will urge their way directly to matters of substance, and will finally render such a judgment as will do justice and vindicate the law. But no such vicious purpose is disclosed by the petition in this case, and, if a fraud upon the law has been committed, the facts must be pleaded and proved. | Does the fact that one of the incidents of the debt consists of a lien on real property in another state change the law that governs a debt? |
| 16908 | Jones v. Rider, 60 N.H. 452, 452 (1881) | 2 | A note is presumed to be payable where dated, if no other place of payment is mentioned therein. | A promissory note is presumed to be payable where dated, if no other place of payment is mentioned in the note. | Is a promissory note presumed to be payable where dated if no other place of payment is mentioned in the note? |
| 16973 | People ex rel. Price v. Illinois Cent. R. Co., 266 Ill. 636, 638, 107 N.E. 803, 804 (1915) | 1 | Under Road and Bridge Law, S 56, S.H.A. ch. 121, S 62, a resolution of the county board directing the county clerk to extend on the tax books road and bridge taxes, is not an approval by the board of the taxes, to render a levy valid. | Under the road and bridge laws of 1913 the original certificate of levy of road and bridge taxes must be filed with the county clerk, and no valid tax can be extended by him upon a copy of the certificate of levy, the original of which is filed with the town clerk as was the practice under the old law. People v. Chicago, Rock Island & Pacific Railway Co., 269 Ill. | Does the county clerk have authority to extend the road and bridge tax? |
| 16977 | Haywood v. Ryan, 85 N.J.L. 116, 116 (1913) | 2 | Act Concerning Disorderly Persons, S 3, applies only to such persons as shall by their act obstruct or interfere with the movement of persons lawfully on the street. | Syllabus by the Court The mere fact that a person, walking along a public street in a peaceable and quiet manner, is followed by a crowd of people, is not sufficient to justify his conviction of being a disorderly person upon the ground that he obstructed and interfered with persons lawfully upon such street, as provided in section 3 of 'An Act Concerning Disorderly Persons.' The statute mentioned applies only to such persons as shall by their acts intentionally obstruct or interfere with the movement of persons lawfully on a street, and therefore when the proof is limited to the fact that a person, while quietly walking on a street, is followed by a crowd, it will not support his conviction of being a disorderly person, under such statute. | Is a person who obstructs or interferes with person lawfully in streets or public places a disorderly person? |

| 16979 | Burleigh v. Hecht, 22 S.D. 301, 117 N.W. 367, 369 (1908) | 1 | The doctrine of laches is applicable only to equitable actions and does not apply to legal actions. | It does not affirmatively appear from the conclusions of law of the court upon what grounds it placed its decision, but in view of the fact that the court held the tax deed under which the defendant Schnauber claimed void on its face, and there was no bar of the statute of limitations applicable to the case, the decision of the court must have been based upon the ground of laches on the part of the plaintiff and her grantors, in failing to assert their title to the premises for a period of more than 20 years. For the purpose therefore of determining whether or not the doctrine of laches is applicable to this case, it is necessary to determine whether or not the action is in the nature of a legal or equitable action, for, if it is a legal action, the doctrine of laches does not apply, as that doctrine is only applicable to equitable actions. McFarlane v. Grover, 70 Ark. 371, 69 S. W. 56, 91 Am. St. Rep. 84; Wilson v. Nichols, 72 Conn. 173, 43 Atl. 1052; Bank v. Baker, 176 Mass. 294, 57 N. E. 603; Wood, Lim. § 60, note "a." | Is the doctrine of laches applicable only to equitable actions and does not apply to legal actions? |
| 16995 | Curtiss v. Hazen, 56 Conn. 146, 14 A. 771, 773 (Conn. 1887) | 3 | Revision 1875, omitting the words "according to the custom of merchants and the law relating to inland bills of exchange," from the statute declaring that a note is negotiable which is "payable to a person or his order, or to the bearer," does not render negotiable a note payable to a person simply, and not to his order or to bearer. | These notes were made payable to Ellen T. Young, the words "or her order," or "or bearer," being omitted. It is conceded that, under the statute as it was until the Revision of 1875, such notes were not negotiable. We would remark, in limine, that these notes were given in 1869, and of course were not negotiable when given. We should hesitate to hold that a subsequent change of the statute made them negotiable. But, aside from that, we are satisfied that the legislature did not intend by the change to change the meaning of the statute. In the Revision of 1866 a note is negotiable which is "payable to any person or his order, or to the bearer, * * * according to the custom of merchants and the law relating to inland bills of exchange." The change consists in omitting the words in italics. As this court decided (Backus v. Danforth, 10 Conn. 297) that a note payable to a particular person, and not to his order or bearer, was not negotiable, and as such was universally understood to be the law by business men and the profession, we think the words were omitted because they had come to be without meaning, and were therefore unnecessary. Moreover, we think the statute, as it now is, "payable to any person or his order, or to the bearer," in view of former decisions and of the general understanding of the law, may well be construed as requiring that the note should be payable to the order of a person, or to the bearer, in order to be negotiable. There is no error in the judgment appealed from. | Is a note payable to the order of a person or to the bearer negotiable? |

| | | | | | |
|---|---|---|---|---|---|
| 17000 | State v. Smith, 10 R.I. 258, 260 (1872) | 3 | An indictment charged defendant with willfully and unlawfully having in his possession with intent to sell and exchange, and with having for sale and exchange, certain watered milk. Held, that evidence of the possession of such milk by defendant's servant, with intent to sell or exchange the same, was not sufficient to convict defendant, without proof that the servant, in so possessing the milk, was acting for and in accordance with the will of the defendant, his master. | The defendant has been found guilty on an indictment charging that wilfully and unlawfully, he did have in his possession with intent to sell and exchange, and did offer for sale and exchange, certain adulterated milk, to which water and other foreign substances had been added. ... If, under the statute under which this indictment has been found, a master can be convicted upon the mere proof of possession with intent to sell or exchange by his servant, then the master may be punished for an act in which he not only did not participate, but which was done contrary to his orders, and for the servant's own private gain. We are not prepared to adopt this view of the statute. In order to charge the master, where the milk is found in possession of a servant, we think there should be evidence, in addition to the proof of possession for sale or exchange by the servant, that the servant in having it so for sale or exchange was acting for and in pursuance of the will of the master, and that such being the proof, the master might be convicted, for in such a case the possession of the servant is in law the possession of the master. We think, therefore, that the court should have instructed the jury that proof of possession by the servant was not sufficient to convict the defendant; adding, of course, if there were other evidence tending to show that the servant, in having the milk for sale or exchange, was acting for and in pursuance of the will of the master, such further instructions as would enable the jury properly to decide in view of such other evidence. | Will milk be adulterated if certain foreign substance are added ? |
| 17040 | McIntosh v. State, 23 Ga. App. 513, 98 S.E. 555, 556 (1919) | 2 | The figures in a check do not control the words in its body denoting the sum called for in determining the legal effect, and are not a material part of instrument, so that their alteration by raising the figures is not a basis for a prosecution for forgery. | Was the alteration of the figures in the check a material one? We think not. It is true the figures follow the words in the body of the check denoting the sum called for, as is frequently the case, and are not strictly marginal; but we do not think they form a material part of the paper. ... "To constitute a charge of alteration and forgery of an instrument it must be averred that it was altered in a material part. It does not appear with certainty whether the alteration was of a material part. Of course, if the accused feloniously forged and altered the figures '2.75' so as to make them read '29.75' by adding '9' to a material part of the order, he is guilty of forgery; in other words, if there was no writing of the amount, and if the order read, pay '2.75,' and was thus altered, it is forgery. But if the '2.75' was merely marginal, or in character marginal, as relates to a writing of the amount, it was not forgery." ... "The alteration of the figures, therefore, did not change the legal effect of the instrument. That was the law as established before the passage of the Negotiable Instrument Act. Other courts have held that an alteration of marginal figures on a check in which the amount payable is plainly expressed in words is not forgery"--citing the Wilson, Lotono, and Means Cases, supra, and Jackson v. State, 72 Ga. 28. | Does alteration of the figures on a negotiable instrument constitute forgery? |
| 17042 | Kershaw v. Burns, 91 S.C. 129, 74 S.E. 378, 378 (1912) | 1 | A right of way with neither of its termini on claimant's premises, not essentially necessary to enjoyment thereof, held not appurtenant, but in gross. | [13] An easement is either "appurtenant" or "in gross." An appendant or appurtenant easement must inhere in the land, concern the premises, have one terminus on the land of the party claiming it, and be essentially necessary to the enjoyment thereof. It attaches to, and passes with, the dominant tenement as an appurtenance thereof. An easement, or right of way, in gross is a mere personal privilege to the owner of the land and incapable of transfer by him, and is not, therefore assignable or inheritable. | "Is a right of way, in gross, incapable of being transferred?" |

| 17088 | Kennedy v. City of New York, 196 N.Y. 19, 23, 89 N.E. 360, 361 (1909) | 3 | A tenant holding over after the expiration of a definite term for a year, or years, may be treated by the landlord as a trespasser, or as a tenant from year to year, holding under the conditions of the original lease except as to duration. Order (1908) 111 N.Y.S. 61, 127 App.Div. 89, reversed. | A tenant who holds over after the expiration of a definite term for a year or years may be treated by his landlord as a trespasser, or as a tenant from year to year. If the landlord elects to treat the tenant as holding over for another year, the conditions of the original lease apply, except as to duration. | Is a tenant who holds over considered a tenant from year to year? |
|---|---|---|---|---|---|
| 17090 | White v. Croft, 1918 WL 3198, at *3 (Pa. Com. Pl. 1918) | 1 | When lease is made for specified time without provision for renewal and tenant holds over after expiration of term, he becomes tenant at sufferance and may be dispossessed at any time, without notice, or may vacate leased premises and be liable for rent only for time he was in possession. | "Where a lease expires at a fixed date, the tenant holding over is strictly a tenant at sufferance": William v. Ladew, 171 Pa. 369. See also Overdeer v. Lewis, 1 W. & S. 90. "A lease was made for a specified time with an express covenant to deliver up possession at the expiration of the term without further notice, and with a reservation of the right of the landlord to enter and repossess the premises *165 at the end of the period or at any time thereafter." It was held that the landlord could maintain ejectment at any time after the expiration of the term without previous notice to quit. Where such a lease is made, a new lease from year to year with a right to three months' notice to quit can not be implied from the act of holding over by the tenant and the mere neglect of the landlord to dispossess the tenant": McCanna v. Johnston, 19 Pa. 434.

If then this plaintiff could dispossess the tenant at any time without any notice, were not the rights reciprocal? Why should the defendant be required to stay on and pay the rent with the knowledge in his mind that he might at any day find his household effects set into the street? We think that under the authorities, unless the lease was renewed, all that he was bound to do was to pay the rent for the time he remained there. | Is a tenant by holding over also a tenant by sufferance? |
| 17151 | Luthmers v. Hazel, 212 Ill. App. 199, 205 (Ill. App. Ct. 1918) | 7 | In action for malicious prosecution and for false arrest, it is always competent to show a discharge for purpose of showing termination of suit. | It is always competent, however, to show a discharge in such a case for the purpose of showing the termination of the suit. | Is discharge in a case sufficient to show termination of the prosecution for malicious prosecution action? |
| 17188 | Deford v. Reynolds, 36 Pa. 325, 332–33 (1860) | 8 | A dormant partner may retire from the firm without giving notice of his withdrawal; but where A and B trade as A & Co., B is not a dormant partner, though a creditor be ignorant of the name of the other partner. | McCulloh & Co., and that the plaintiffs sold the goods, and furnished the stock on the credit of the company, then the liability of the defendant did not cease with the dissolution, although the plaintiffs may not have known who were the members of the firm. **8 The rule doubtless is, that an unknown dormant partner may retire from the firm without giving notice of his retirement, and thenceforth be no longer liable for debts which the firm may incur. Having ceased to be a partner in fact, he is not a party to the contract which creates the debt; and, being unknown, he has not encouraged the creditor to rely upon his responsibility. | Does a dormant partner need to give notice of his retirement? |
| 17195 | State v. Benson, 111 S.E. 869, 871 (N.C. 1922) | 6 | Murder in the second degree is the unlawful killing of a human being with malice, but without premeditation and deliberation. | Murder in the second degree is the unlawful killing of a human being with malice, but without premeditation and deliberation. | What is murder in second degree? |
| 17231 | Boynton v. Renwick, 46 Ill. 280, 283 (Ill., 1867) | 2 | The legal title to a note cannot be transferred by assignment by a separate instrument. | The point of the case is, that by our statute, the legal title to a note cannot be transferred by a separate instrument in writing. | Can the legal title to a note be transferred by assignment by a separate instrument? |
| 17239 | Pillow v. Pillow, 13 Tenn. 420, 421 (1826) | 2 | When a bill or petition for divorce in chancery contains a prayer for particular relief, and also for general relief, if the proof authorizes a decree according to the prayer for particular relief, it must be made, but if not, the court will proceed in the general prayer. | The rule is that if there be a prayer for particular relief, and also a prayer for general relief, and there be evidence suited to the special relief sought, the decree should follow the special relief; but if the evidence be not suited to the special relief, but is, nevertheless, such as entitles the party to some relief, then the court will proceed on the general prayer. | "When the prayer for relief includes a particular relief, a general relief, and a special relief, should the decree follow the special relief?" |

| | | | | | |
|---|---|---|---|---|---|
| 17260 | Ditts v. Lonsdale, 49 Ind. 521, 529 (Ind. 1875) | 2 | Nominal partners are those who appear, or are held out to the world, as partners, but who have no real interest in the firm or business. | Nominal partners, or those who appear or are held out to the world as partners, but who have no real interest in the firm or business. | Does a nominal partner have any interest in the firm? |
| 17282 | Kerley v. the State, 89 Tex. Crim. 199, 199 (1921) | 5 | It is not necessary that an indictment charging rape upon a girl under 18 years of age negative her previous unchastity. | Punishment fixed at confinement in the penitentiary for a period of five years. [1] [2] It is not necessary that an indictment charging rape upon a girl under 18 years of age negative her previous unchastity or refer to the matter of consent. | Is chastity relevant in a rape indictment? |
| 17290 | Oppenheim v. Straus, 210 A.D. 880, 206 N.Y.S. 942 (App. Div. 1924) | n/a | The production of books and papers must be compelled by order of the court. | Headnote not in opinion | Should the production of books and papers be compelled by order of the court? |
| 17323 | Murray v. Thompson, 136 Tenn. 118, 188 S.W. 578, 578 (1916) | 1 | Negotiable Instruments Law, S 22, providing that that indorsement of the instrument by an infant passes the property therein, merely makes the indorsement not void, and does not take away any right to disaffirm. | It was to make certain and uniform the law on this point that section 22 was embodied in the Negotiable Instruments Act. In stipulating that the indorsement of the instrument by an infant "passes property therein," it was meant to provide that the contract of indorsement is not void, and that his indorsee has the right to enforce payment from all parties prior to the infant indorser. | Is the indorsement by an infant on an instrument void? |
| 17325 | Bay v. Shrader, 50 Miss. 326, 329 (1874) | 3 | The test of the materiality of any indorsement or memorandum on the back or foot of a note is the time and the intent of it. If made before or at the time of the execution, it forms a part of it, and may control the obligation in some important particulars. But, being disconnected from the body of the instrument to which the maker's name is signed, it forms no original part of it, until shown to have been upon it when executed. | The answer and the proof leave it in uncertainty and doubt, as to the time of pleading the indorsement on the back of the note, and of its erasure. The legal consequence of the alteration of a memorandum or indorsement on the back of the paper depends very much on its character. It is laid down by Parsons' Bills and Notes, vol. 2, 544, that words written on the back of the note are no part of the body thereof, prima facie, but are presumed to be done after the note is completed. And hence an erasure need not be explained in pursuing a remedy solely on the body of the note. The test of the materiality of such memoranda or indorsement on the back of the instrument is, the time and the intent and purpose of it. If made before or at the time of the execution of the instrument, it may be parcel of it, and may control the obligation in some important particular. ... In the early case of Brooke v. Smith, Moor, 679, which was debt upon an obligation to save harmless certain lands from all incumbrances made by the obligor, upon the back, was a memorandum, that the condition should not extend, to an extent of a statute acknowledged by the obligor to a certain person. Here the memorandum was parcel of the condition — being a written *330 explanation of the intent of the parties—and limiting the operation of the condition. There are many cases to the same point. Steadman v. Purchase, 6 D. & E., 737; Burgh v. Preston, 8 D. & E, 483; Jones v. Fales, 4 Mass, 245; Hartley v. Wilkinson, 4 S. & M., 25; Leeds v. Lancashire, 2 Com., p. 205; Fletcher v. Blodgett, 16 Vermont, 26; Springfield Bank v. Merrick, 14 Mass., 322. If such memoranda are at the foot or on the back of the note or other instrument, when executed, they constitute a part of the contract. But being disconnected from the body of the instrument to which the maker's name is | "Do memoranda or indorsement at the foot or on the back of the note or an instrument, when executed, constitute a part of the contract?" |
| 17347 | Horshaw v. Cook, 16 Ga. 526, 526 (1854) | 1 | The mere absence of counsel, with the papers of the defendant, is not a sufficient ground for the continuance of a cause. | This Court has decided, and upon sound principles, that the mere absence of Counsel is not a sufficient ground for the continuance of a cause. See Allen vs. the State, (11 Ga. R. 85) and the cases there cited. It has recognized the absence of the leading Counsel from Providential cause, as sufficient to authorize a continuance; but nothing short of this. It does not appear that General Hansell was even the leading Counsel *527 in this cause; and it is to be presumed he was not, or it would have been shown; nor does the cause of his absence appear. | Does the mere absence of the counsel constitute a sufficient ground for a continuance? |

| 17355 | Vicksburg, S. & P. Ry. Co. v. Scott, 47 La. Ann. 706, 17 So. 249 (1895) | 3 | Physical inability of counsel to be present and manage the trial of a case is a sufficient ground for continuance. | 3. Physical inability to be present and manage the trial of a cause is good ground for continuance, and, same being refused, and the suit of plaintiff being dismissed, it is good reason why the cause should be reinstated for trial. | Is the illness of a counsel and the counsels inability to be present and manage the trial of a case a sufficient ground for continuance? |
|---|---|---|---|---|---|
| 17356 | Hatcher v. Bowen, 74 Ga. 840, 841 (1885) | 6 | Absence of counsel in attendance on other courts is not a favored ground for a postponement. | Absence of counsel in attendance on other courts is not a favored ground for a postponement. | Is absence of counsel in attendance on other courts not a favoured ground for a postponement? |
| 17357 | City of San Antonio v. Stevens, 126 S.W. 666, 668 (Tex. Civ. App. 1910) | 1 | An application for continuance must state, as provided by Rev.St.1895, art. 1278, Vernon's Ann.Civ.St. art. 2168, the residence of the witnesses for whom continuance is sought. | The application for continuance was properly overruled. If the repairs had been made on the pavement with the full approval of Weiss, that could not have bound him to pay for them, and it was not pretended that he agreed to pay for them. The application is not in form because it failed to state the residence of the witnesses, as required by the statute. Rev.St.1895, art. 1278; Hunter v. Waite, 11 Tex. 85; Parker v. McKelvain, 17 Tex. 157; Burditt v. Glasscock, 25 Tex.Supp. 45; Williams v. Talbot, 27 Tex. 159. The witnesses may not reside in the county or state, and, as said in Burditt v. Glasscock, cited, "A witness whose residence is not within the county or state, might be temporarily in the county where a cause is pending, and might be served with a subpoena while there, when it would not be his duty to obey the subpoena, and the party would have no right to expect his attendance at the trial." | Should an application for continuance state the residence of the witnesses? |
| 17364 | City of Silverton v. Brown, 63 Or. 418, 425 (Or. 1912) | 1 | The general rule is that the width of a highway established entirely by user is limited to the ground actually used. | While it is a general rule that the width of a highway established entirely by user is limited to the ground actually used, the question is usually for the jury, giving a proper consideration to the circumstances and conditions attending the same. | What would be construed as the width of highway? |
| 17369 | Georgia Cas. Co. v. Campbell, 266 S.W. 854, 855 (Tex. Civ. App. 1925) | 4 | Filing of a trial amendment does not necessarily entitle plaintiff to continuance. | The filing of the trial amendment did not necessarily entitle plaintiff to continuance. | Will the filing of a trial amendment entitle a plaintiff to a continuance? |
| 17370 | Horlick's Malted Milk Co. v. A. Spiegel Co., 155 Wis. 201, 144 N.W. 272, 275 (1913) | 6 | It is the purpose of St.1911, S 4096, subds. 3, 5 (W.S.A. 326.10, 326.12), to afford a full discovery of all matters relevant to the controversy. | The theory of the statute is to afford full discovery of all matters relevant to the controversy. | Is it the purpose of statutes to afford a full discovery of all matters relevant to the controversy? |
| 17371 | Brinker v. Brinker, 7 Pa. 53, 55 (1847) | 1 | The orphans' court, not being one of general equity jurisdiction, cannot entertain a bill of discovery. | As the Orphans' Court, therefore, has not the general powers of a court of equity, it cannot entertain a bill of discovery; but it can reject an answer to a petition. | Is a bill of discovery subject to equity jurisdiction only and cannot come up for a correction of error at law? |

| | | | | | |
|---|---|---|---|---|---|
| 17373 | Erlandson v. Erskine, 76 Mont. 537, 248 P. 209, 212 (1926) | 3 | Renewal note is treated as new transaction on new promise, if parties' intention was to extinguish original note. | On delivery of the second note and mortgages, Erlandson demanded the return to him of the original note, but was told that the note was temporarily out of the state and would be delivered to him on its return. … Where a renewal note is given, if it is shown that it was the intention of the parties to extinguish the one by the other, the renewal note is treated as a new transaction on a new promise (Walker v. Dunham, 135 Mo. App. 296, 115 S. W. 1086), and when the maker, in good faith and without notice of the assignment, either pays to the payee of a nonnegotiable note the full amount due thereon, or gives a new note in lieu thereof under such circumstances as clearly show that the new note was given and accepted in extinguishment of the old, proof of such facts constitutes a complete defense to a suit by the assignee of the payee. Seibold v. Ruble, 41 Okl. 267, 137 P. 696; Dickerson v. Higgins, 15 Okl. 588, 82 P. 649; Sykes v. Citizens' Nat. Bank, 69 Kan. 134, 76 P. 393; San José Ranch Co. v. San José Water Co., 132 Cal. 582, 64 P. 1097; Murray v. Reed, 17 Wash. 1, 48 P. 343; Squires v. Adams, 70 Ill. App. 502; Union National Bank v. Post, 93 Ill. App. 339; Id., 192 Ill. 385, 61 N. E. 507; Horne v. Young, 40 Ga. 193; Ellis v. Ballou, 129 Mich. 303, 88 N. W. 298. | When does the renewal of the note extinguish the original debt? |
| 17379 | St. Louis, B. & M. Ry. Co. v. Jenkins, 163 S.W. 621, 624 (Tex. Civ. App. 1914), writ refused (Apr. 22, 1914) | 5 | The absence of the seal on the envelope in which depositions were returned is not a ground for suppressing the depositions; the seal being imprinted where the officers certified to the deposition proper. | The Supreme Court was confronted with the decision in Wisegarver v. Yinger, 122 S. W. 925, wherein Chief Justice Fisher had held that the imprint of the seal on the envelope was essential; and, after a careful analysis of the statutory requirements, it is said by Judge Williams: "We therefore hold that the absence of the seal on the envelope is not a reason for suppressing a deposition where the signature to the certificate is elsewhere on the same deposition authenticated by seal." This may be found where the officer certifies to the deposition proper. These assignments are overruled. | Is the absence of the seal on the envelope in which depositions were returned not a ground for suppressing the depositions? |
| 17381 | Dunham v. Halloway, 2 Okla. 78, 35 P. 949, 950 (1894), aff'd, 1895 OK 33, 3 Okla. 244, 41 P. 140, aff'd sub nom. Holloway v. Dunham, 170 U.S. 615, 18 S. Ct. 784, 42 L. Ed. 1165 (1898) | 1 | Where a certificate fails to show that depositions were taken at the place named in the notice, and where it further appears that the adverse party was not present when such depositions were taken, the depositions should be suppressed. | The statute requiring the officer to show in his certificate the place where the deposition was taken is mandatory, and the reason therefor is so apparent that it hardly needs discussion. This requirement is obviously for the purpose of giving the adverse party an opportunity to be present, if he wishes, when the deposition is taken, and the certificate of the officer taking such deposition should show that the terms of the notice are complied with. If the adverse party had been present, a showing that the deposition was taken at the place designated in the notice would not, perhaps, be necessary, for his being present would waive any irregularity in either the notice to take deposition or the certificate attached thereto. But, where the adverse party does not appear, he waives nothing required in the statute, and he has the right to presume that the deposition will be taken in strict conformity with the statutes, and, in the absence of a certificate showing such fact, may move to suppress the deposition, and such motion should be sustained. | Should depositions be taken at a place designated in notice? |
| 17382 | N. Am. Acc. Ins. Co. v. Williamson, 118 Ill. App. 670, 673 (Ill. App. Ct. 1905) | 2 | A certificate of official character of notary public who took deposition could properly be attached thereto before deposition was read in evidence. Smith-Hurd Stats. c. 51, § 30. | The objection to the deposition is based upon the certificate of the official character of the notary public before whom it was taken. Such certificate is required by section 30, chap. 51, R. | "Is the official certificate of the commissioner before whom a deposition was taken, purporting to be under his hand and seal, presumptive evidence of his official character?" |
| 17389 | Ryan v. May, 14 Ill. 49, 50 (1852) | 2 | The legal title to a note cannot be transferred by assignment by a separate instrument. | By our statute the legal title to a note cannot be transferred by a separate instrument in writing. | Can the legal title to a note be transferred by an assignment through a separate instrument? |

| | | | | | |
|---|---|---|---|---|---|
| 17394 | State v. Commissioners of Haywood Cnty., 122 N.C. 812, 30 S.E. 352, 352 (1898) | 1 | The legislature has power to compel a county to levy a tax for road purposes, and may direct the manner in which the roads shall be worked. Acts 1897, c. 249. | It is further objected that it is unconstitutional for the legislature to provide that the roads of one county shall be worked by taxation while others are worked in another method. There is nothing in the constitution which hampers the legislature by requiring that, in the exercise of its police powers, its regulations must be uniform throughout the state. Brown v. Commissioners, 100 N. C. 92, 5 S. E. 178. It would be exceedingly unfortunate if there was. A mode of working the roads, or regulations as to selling liquor, or the total prohibition of it, or provisions as to fence laws, or the sale of seed cotton, or inspection of fertilizers, or of cattle, which would be highly advantageous in one county, might be very inconvenient or obnoxious in another. Accordingly, such statutes, of local application, have been time and again enacted, and have always been sustained by the court. One of the latest cases, citing many authorities, is Guy v. Commissioners (at this term) 29 S. E. 771. | Does the legislature have power to direct the manner in which the roads shall be worked in a county? |
| 17399 | Gulf City Ins. Co. v. Stephens, 51 Ala. 121, 123 (1874) | 3 | Several depositions may be included in one certificate, if it is sufficiently formal. It is not necessary that a separate certificate should be appended to each deposition. | Several depositions may be included in one certificate, if it is sufficiently formal. This is the case with the deposition of Taylor Gauche, to which no separate certificate is attached, but which is included in the certificate affixed to the two depositions. | Can several depositions be included in one certificate? |
| 17409 | M.C. Lee & Co. v. Stowe & Wilmerding, 57 Tex. 444, 449 (1882) | 2 | So much of a deposition as is not pertinent to the interrogatories propounded, should, when properly objected to, be stricken out. | One of the controverted questions in this cause was, when was the firm composed of M. C. Lee and A. J. Roberson dissolved? In answer to an interrogatory which asked who composed the firm of M. C. Lee & Co. in the month of December, 1871, and the month of January, 1872, the witness answered that the firm was composed during those months of M. C. Lee and A. J. Roberson, and further answered that the two continued until the 15th of April, 1872. The latter part of the answer was objected to, because the answer was not responsive to the interrogatory, and the objection was overruled. This was error; for by the law then in force it was provided that "If any deposition shall contain any testimony not pertinent to the interrogatories propounded, such testimony shall be deemed surplusage and shall be stricken out by the court." Pasch. Dig., 3732. | "When so much of a deposition as is not pertinent to the interrogatories propounded, should it, when properly objected to, be stricken out?" |
| 17410 | Cooper v. Stinson, 5 Minn. 201, 207 (1861) | 4 | Under a commission to take the depositions of three witnesses out of the state, the commissioner returned upon the first deposition that the witness was duly sworn by him. On the other two he returned that the witnesses were "duly sworn as before mentioned." Held, that this was a sufficient compliance with rule 13 of the district court, rule 13 requiring the commissioner to certify at the bottom of each deposition that it was sworn to before him, and that the deposition is admissible. | It was further objected that the depositions should not be *207 received, on the ground that they were not properly certified and returned as required by law. By Rule 13, of the District Court Rules, it is provided that "the witnesses shall severally subscribe their depositions; and the Commissioner or Commissioners taking the same shall certify at the bottom of each deposition that it was subscribed and sworn to before them, and date and sign such certificate; they shall also endorse upon the commission the time or times and place of executing it and whether any Commissioner not attending was notified. They shall annex the depositions to the commission, seal them up in an envelope, and direct to the Clerk of the proper County." | Is it necessary that a separate certificate should be appended to each deposition? |
| 17422 | Gray v. Phillips, 54 Tex. Civ. App. 148, 162 (1909) | 11 | A deposition may be withdrawn and irregularities corrected by the officer taking it under order of the court, and in its presence. | It seems, under the authorities, that a deposition may be withdrawn and irregularities corrected by the officer taking them made under the order of the court. | Can a court permit withdrawal of depositions to correct irregularities? |
| 17440 | Saviers v. Smith, 101 Ohio St. 132, 128 N.E. 269 (1920) | 1 | The power to tax is an attribute of sovereignty, and in Ohio is included in the general legislative power conferred by Const. art. 2, S 1, upon the General Assembly without limitation. | Syllabus by the Court The power to tax is an attribute of sovereignty, and in this state is included in the general legislative power which is conferred by section 1, article II, of the Constitution, upon the General Assembly without limitation. | Is a state's power to tax included in the general legislative power conferred by constitution? |
| 17444 | Langford v. Bivins, 225 S.W. 867, 869 (Tex. Civ. App. 1920) | 2 | Time is of the essence of contracts for the sale of mineral leases and lands. | It seems to be settled law that time is of the essence of contracts for the sale of mineral leases and lands. | Is time of the essence of contracts for the sale of mineral leases? |

| | | | | | |
|---|---|---|---|---|---|
| 17448 | Rhodes v. United States, 79 F. 740, 741 (8th Cir. 1897) | 3 | A disease was contracted within "the line of duty," within Rev.St. SS 4693, 4694, providing for pensions for soldiers "disabled by reason of any wound or injury received, or disease contracted, while in the service of the United States and in the line of duty," only if the service was the cause of the disease. | An attack of epilepsy, for instance, while a soldier in the army, not resulting from any connection with the arm, or any risk, hazard, or danger thereof, but as a result of an hereditary predisposition, would not entitle a soldier to a pension on the ground that he contracted that disease while in the service, because such disease would not have been contracted in the line of duty.' The acts of congress provide that a soldier who was 'disabled by reason of any wound or injury received, or disease contracted, while in the service of the United States and in the line of duty' shall be entitled to a pension. Rev. St. Secs. 4693, 4694. In its petition in the court below, the government alleged that on March 9, 1878, the plaintiff in error filed with the bureau of pensions his application for a pension under these sections of the statutes, and thereby claimed and represented that he contracted catarrhal ophthalmia of both eyes 'while a private in Company K of the 42d regiment of Missouri volunteer infantry, and while in the line of duty as a member of the organization aforesaid'; that upon this statement it allowed and paid him the pension; that he 'did not become disabled by catarrhal ophthalmia of both eyes while a soldier in the armies of the United States, and in the line of his duty as such soldier, as aforesaid, but that he had contracted said disease long before enlisting in the army of the United States, and had said disease and disability prior to engaging in said service, and that said disease and disability were not due to said service, and that the representation made in the application of said defendant for a pension under the pension laws of the United States that he incurred the disability aforesaid while in the army of the United States as aforesaid was false and fraudulent.' The plaintiff in error answered that he made the representation, that it was true, that he did not contract his disease before he entered the service, and that it was contracted | Can an injury caused to a victim in the line of duty entitle him to pension? |
| 17457 | Newman v. People, 23 Colo. 300, 305 (1896) | 2 | To constitute bribery the act of two persons is essential, that of him who gives and of him who receives. Their minds must concur, but it is immaterial whether the giver makes the first advances or gives the money for some personal advantage to himself. | To constitute bribery, the act of at least two persons is essential, -that of him who gives and him who receives. The minds of the two must concur; and, as to the point now before us, it is immaterial whether the giver makes the first advances or gives the money to get some personal advantage to himself. | Is the act of two persons essential to the crime of bribery? |
| 17458 | Mun. Paving Co. v. Donovan Co., 142 S.W. 644, 646 (Tex. Civ. App. 1911) | 8 | A city ordinance prohibited a movement of any engine propelled by steam over any street, except on tracks, but that the section should not apply to any engine used by any contractor engaged in street work, provided the consent of the mayor was first obtained to the use of the engine. Held, that a contractor's steam roller was an engine within the meaning of such ordinance, and that it was not to be construed as limited to requiring the mayor's consent only in case of a steam engine operated or moved on railway tracks provided for such purpose. | The roller in question was propelled by steam, and clearly an engine within the contemplation and meaning of the ordinance. This is manifest from the proviso of the ordinance which declares that section 1 thereof, which prohibits the operation of any engine propelled by steam over any street of the city except upon railway tracks provided for the purpose, shall not apply to engines used by any contractor engaged in constructing, paving, or repairing streets, etc., provided the consent of the mayor is first obtained, to the use of such engine. In harmony with this view, it has been held that a statutory provision prohibiting the use of any street by any engine propelled by steam without sending a person in advance to give warning is applicable to a steam road roller. | Do the statutes provide any warning regarding use of a steam roller in street? |
| 17465 | Boyd v. McCann, 10 Md. 118, 125 (1856) | 2 | The fact that a promissory note is payable to blank order, authorizes the holder to fill it up, at any time, with his own name as payee. | These views dispose of the prayers offered on the part of the defendant. They show that the title of Wylie & Wilson being good, McCann had the right to repose upon it. The fact that the note was in blank, authorized the plaintiff, at any time, to fill it up with his own name as payee. We think the court properly rejected the plaintiff's second prayer. It rests on the single fact, that if the jury should find the names of Rogers & Boyd were kept over the door after the dissolution of the copartnership, then the plaintiff was entitled to recover. This circumstance, apart from all others, manifestly was not sufficient to authorize the recovery of the plaintiff. | Can the holder fill in his own name when the name of payee in a check is left blank? |

| | | | | |
|---|---|---|---|---|
| 17468 | Bright v. Offield, 81 Wash. 442, 447, 143 P. 159, 161 (1914) | 2 | Rem. & Bal.Code, S 3395, subd. 2, held applicable to notes payable at a fixed period after a specified event which is certain to happen, and not to a note payable at all events at a time which may be accelerated on the happening of a contingency. | It is urged that these provisions run counter to sections 1 and 4 of the act (Rem. & Bal. Code, §§ 3392, 3395, supra), in that they render the note not 'payable on demand or at a fixed or determinable future time,' as provided in section 1, and not payable 'on or at a fixed period after the occurrence of a specified event, which is certain to happen,' as the phrase 'determinable future time' is defined in section 4. It will be noted that the negotiable instruments act contains no express provision *448 covering or declaring the effect of a stipulation in the note itself, accelerating the time of payment of the whole debt upon default of the maker in the payment of taxes upon the mortgaged property or upon the note itself. The last section of the act, Rem. & Bal. Code, § 3586, declares that in cases not covered by the act 'the rules of the law merchant shall govern.' In Joergenson v. Joergenson, 28 Wash. 477, 68 Pac. 913, 92 Am. St. Rep. 888, which was decided without reference to the negotiable instruments act, but solely with reference to the old statute, Bal. Code, § 3650, which was there said to be but declaratory of the pre existing law, apparently meaning the law merchant, it was held, following and quoting the Supreme Court of Pennsylvania, in Ernst v. Steckman, 74 Pa. 13, 15 Am. Rep. 542: | Is a negotiable instrument be payable on demand or at a determinable time? |
| 17469 | Gilbert v. Adams, 146 A.D. 864, 866, 131 N.Y.S. 787, 788–89 (App. Div. 1911) | 1 | An instrument which acknowledges an indebtedness from the maker to a person named, and which promises to pay a specified sum to such person, "and in the event of my (maker's) death, I hereby authorize and direct the payment of the same out of the funds of my estate," is a promissory note payable on demand, within Negotiable Instruments Law (Consol.Laws 1909, c. 38) SS 26, 29, declaring that an instrument is payable on demand when no time for payment is expressed, etc.; the quoted clause being surplusage. | I am of the opinion that the instrument at bar is a promissory note, payable upon demand; that the words, "and in the event of my death I hereby authorize and direct the payment of the same out of the funds of my estate," are surplusage, and in no degree affect the preceding statement, "I promise to pay her the sum of thirty thousand **789 dollars," and therefore the time of payment was not postponed until the death of the maker of the note. | What is a promissory note? |
| 17472 | Bullard v. Smith, 28 Mont. 387, 72 P. 761, 762 (1903) | 4 | Laws 1899, p. 124, amending Civ.Code, S 3996, so as to allow negotiable instruments to contain a provision for reasonable attorney's fees, even if construed as affecting notes given prior to its passage, is not objectionable as being retrospective; the only constitutional limitation as to retrospective legislation being article 3, S 11, prohibiting ex post facto laws and laws impairing the obligation of contracts. | The decision of Stadler v. Bank, supra, was rendered on February 20, 1899. The Legislature of Montana was then in session, and passed an act amending section 3996 so as to read as follows: "A negotiable instrument may contain a pledge of collateral security with authority to dispose thereof, also a provision for reasonable attorney fee or both." By section 2 of the same act, the Legislature further provided, "All acts and parts of acts inconsistent herewith are here by repealed." Laws 1899, p. 124. By this action of the Legislature, notes which under the statute of 1895, as construed by this court in Stadler v. Bank, supra, were non negotiable, were made negotiable. In effect, the Legislature took away from the maker of a note a defense which he was allowed to assert only by virtue of the provision of the Code of 1895. This defense was simply a remedy. | Do negotiable instruments contain a provision for attorney's fees? |
| 17483 | Hurlbut v. Quigley, 180 Cal. 265, 269, 180 P. 613, 615 (1919) | 3 | The words above indorsers' name, "I hereby waive presentment," etc., are governed by Civ.Code, § 1660, declaring that a promise made in the singular number, but executed by several persons, is presumed to be joint and several. | The writing above the indorsers' names, therefore, constituted a part of the written contract of indorsement. The contract of an indorser, except so far as he qualifies it in writing, is that if the instrument is dishonored he will, upon compliance by the holder with certain conditions, pay the amount of the note. Civ. Code, § 3116. It constitutes, therefore, a conditional promise to pay the note. 'A promise, made in the singular number, but executed by several persons, is presumed to be joint and several.' Civ. Code, § 1660. | When is a promise presumed to be joint and several? |

| | | | | | |
|---|---|---|---|---|---|
| 17484 | Rogers v. Durant, 140 U.S. 298, 300, 11 S. Ct. 754, 754, 35 L. Ed. 481 (1891) | 1 | Act Ill. Nov. 5, 1849, p. 45, provides in section 2 that "all actions founded upon * * * bills of exchange, orders," etc., "shall be commenced within five years next after the cause of action shall have accrued." Held, that this section includes checks, and that they do not fall within the terms, "other evidence of indebtedness in writing," as to which the limitation is fixed by section 1 at 16 years. | That all actions founded upon any promissory note, simple contract in writing, bond, judgment, or other evidence of indebtedness in writing, made, caused, or entered into after the passage of this act, shall be commenced within sixteen years after the cause of action accrued, and not thereafter. Sec. 2. All actions founded upon accounts, bills of exchange, orders, or upon promises not in writing, express or implied, made after the passage of this act, shall be commenced within five years next after the cause of action shall have accrued, and not thereafter.' An act revising the law as to limitations was passed by the twenty-seventh general assembly, April 4, 1872, (Laws Ill. 1871–72, p. 556,) and forms part of the Revised Statutes of Illinois of 1874, and the act of November 5, 1849, was expressly repealed, with a saving clause, thus expressed in the Revised Statutes: 'When any limitation law has been revised by this or the twenty-seventh general assembly, and the former limitation law repealed, such repeal shall not be construed *301 so as to stop the running of any statute, but the time shall be construed as if such repeal had not been made.' Rev. St. 1874, c. 131, §§ 5, 6; Dickson v. Railroad Co., 77 Ill. 331. | Is order a bill of exchange? |
| 17486 | Curtis v. Davidson, 215 N.Y. 395, 109 N.E. 481 (1915) | | The holder of a note may sue both maker and indorser, or either, and an indorser is absolutely liable; the maker's solvency being no defense. | Krein's headnote not found using judicial opinion. | Can the holder of a note sue both maker and indorser? |
| 17489 | Kimama Highway Dist. v. Oregon Short Line R. Co., 298 F. 431, 433 (9th Cir. 1924) | 1 | A highway district in Idaho is not a political municipality created for governmental purposes, but its powers are specially limited to the construction of highways for the benefit of the inhabitants and property therein. | And as said by the court below in this case: 'When it is remembered that, as declared by the Supreme Court of the state, a highway district is not a political municipality, and is not created for governmental purposes, but is limited in both its purposes and powers to the construction of highways for the benefit of its inhabitants and the property within its borders, and that the road in contemplation here is not to be for such a purpose, and can serve no substantial local need, and will be of no benefit to the plaintiff, the placing of a burden upon its property of substantially the entire cost of the work must be regarded as unreasonable, arbitrary, and in effect confiscatory.' | Is highway district created for governmental purposes? |
| 17492 | Gayon v. McCarthy, 252 U.S. 171, 177, 40 S. Ct. 244, 247, 64 L. Ed. 513 (1920) | 1 | Cr.Code, S 10, as amended by Act May 7, 1917, 18 U.S.C.A. S 22, as to hiring or retaining another to go outside the United States with intent to enlist in the service of a foreign people, uses "retain" as an alternative to "hire," and as meaning something different from the usual employment with payment in money; and one may be retained, in the sense of engaged, to render a service by a verbal promise, and by a prospect for advancement or payment in the future. | The word 'retain' is used in the statute as an alternative to 'hire' and means something different from the usual employment with payment in money. One may be retained, in the sense of engaged, to render a service as effectively by a verbal as by a written promise, by a prospect for advancement or payment in the future as by the immediate payment of cash. As stated long ago by a noted Attorney General, in an opinion dealing with this statute: | What is the meaning of the term retain? |
| 17493 | Shafer v. Randolph, 99 Pa. 250, 253 (1882) | 4 | One who holds himself out or knowingly permits himself to be held out as a partner, on the faith of which others give credit to the firm, will be held liable as such. | Smith, 97, where one holds himself out, or knowingly suffers himself to be held out, as a partner, on the faith of which others give credit to the firm, he will be held, though, in fact, he is not a partner. | Can a person who in reality is not a partner but holds himself out as a partner be considered to be one? |
| 17495 | Crouch v. Bowman, 22 Tenn. 209, 211 (Tenn. 1842) | 1 | Every partner is the agent of the partnership, may transact business in its name, and in all simple contracts relating to the business of the partnership he may bind all the members of the firm; but in order to do this he must act in the name of the firm and in signing notes, bills, &c. he must subscribe the name or style by which they are known as a firm, and in which they do business. | Every partner is an agent of the partnership, and may transact business in its name, and in all simple contracts relating to the business of the partnership he may bind all the members of the firm; but in order to do this he must act in the name of the firm, and in signing notes, bills, etc., he must subscribe the name of, or style by which they are known as a firm, and in which they do business. | Does an act by a partner have to be done in the name of the firm in order to bind the firm? |
| 17504 | Loan Association v. Topeka, 87 U.S. 655, 664 (1874) | 11 | A "tax" is a rate or sum of money assessed on the person or property of a citizen by government for the use of the nation or state and "taxes" are burdens or charges imposed by the legislature upon persons or property to raise money for public purposes. | A 'tax,' says Webster's Dictionary, 'is a rate or sum of money assessed on the person or property of a citizen by government for the use of the nation or state.' 'Taxes are burdens or charges imposed by the legislature upon persons or property to raise money for public purposes. | What is the purpose for taxation? |

| | | | | | |
|---|---|---|---|---|---|
| 17511 | Latham v. Brown, 16 Iowa 118, 120 (1864) | 2 | The amount of promissory notes delivered to a justice of the peace for collection, and wrongfully converted to his own use, is prima facie the measure of damages for such conversion; but the insolvency of the makers may be shown in mitigation of damages. | With regard to the question of the measure of damages, or whether the judgment of the court was not excessive, under the circumstances detailed in the evidence, we find that the same was about for the amount of the face of the notes (not reduced to judgments, or collected), in the hands of Brown, when the demand was made; and this is prima facie the measure of damages, where notes, or choses in action have been improperly converted. | Is the amount of the face value of notes or choses in action which have been improperly converted the measure of its damages? |
| 17512 | Gibson v. Spikes, 143 Ark. 270, 220 S.W. 56, 57 (1920) | 4 | The Legislature has the power to levy road improvement assessments subject only to the right of the owner to have an arbitrary abuse of that power reversed by the courts. | The Legislature had the power in the first instance *58 to have levied the assessment subject only to the right of the landowner to have an arbitrary abuse of that power reviewed by the courts, and it can therefore adopt as correct the assessment made by the commissioners as a reassessment by the Legislature. | Does the Legislature have the power to levy assessments? |
| 17515 | Porges v. United States Mortg. & Tr. Co., 203 N.Y. 181, 188–89, 96 N.E. 424, 426 (1911) | 4 | One dealing with the agent of another without ascertaining the scope and reach of the powers delegated to him does so at his peril. | The extent to which a principal shall authorize his agent is completely within his determination, and a party dealing with the agent must ascertain the scope and reach of the powers delegated *189 to him, and must abide by the consequences if he transcends them. | Should a party dealing with an agent ascertain the scope or extent of the powers delegated to him? |
| 17517 | Kittel v. Augusta, T. & G.R. Co., 65 F. 859, 860 (C.C.S.D.N.Y. 1895) | 1 | A creditor's bill which alleges that the marshal has returned, upon the execution on plaintiff's judgment, that there are no goods and chattels of defendant, but does not show that the marshal made any attempt to find leviable property of other kinds, or that the defendant was insolvent, or that it had no other property than that claimed to have been fraudulently disposed of, does not show that plaintiff has exhausted his remedy at law. | Such return, however, is not a condition precedent to the maintenance of this suit nor to the grant of other relief. But, in order to invoke the aid of a court of equity, it must appear that the fraudulent obstruction prevents the judgment creditor from obtaining satisfaction of his claim. 'The foundation upon which these and many other similar cases rest, is that the judgment and fruitless executions are not necessary to show that the creditor has no adequate legal remedy.' A judgment and fruitless execution are merely matters of evidence to show that the creditor is remediless at law. Case v. Beauregard, supra. The rule is a familiar one that a court of equity will not entertain a case for relief where the complainant has an adequate legal remedy. The complainant party must show, therefore, that he has done all he could do at law to obtain his rights. Adsit v. Butler, supra, and cases cited; 4 Am.& Eng.Enc.Law, 575, and cases cited; Dunlevy v. Tallmage, supra; Geery v. Geery, supra; Jones v. Green, supra. In the present case the bill neither alleges the insolvency of the defendant, nor that at the date of the suit or execution he had no property. It does not appear that the land conveyed by said corporation was all the land owned by it, nor that the marshal made any attempt to find or levy on any lands, equities of redemption, or stock, as commanded in said writ. The absence of these averments is fatal. It does not appear that said conveyances have prevented the satisfaction of the judgment. Crippen v. Hudson, supra; McElwain v. Willis, supra. The demurrer is sustained, with leave to amend within 20 days after the entry of the order. | Are judgments and fruitless executions necessary to show that the creditor has no adequate legal remedy? |
| 17525 | Zuendt v. Doerner, 101 Mo. App. 528, 73 S.W. 873, 875 (1903) | 1 | The surrender and cancellation of an old note is sufficient consideration for the execution of a new one given in lieu thereof. | The surrender and cancellation of the old note was a good and sufficient consideration for the giving of the new one in lieu thereof. | Is surrender of note a good consideration for making another note? |

| | | | | | |
|---|---|---|---|---|---|
| 17526 | Anderson v. Nesbitt, 43 Ind. App. 703, 88 N.E. 523, 523 (1909) | 2 | Owner of cows wrongfully allowing them to run at large on highway is not liable for injuries caused by horse frightened at the cows and running away; there being no special circumstances, such as allowing them to run at large during nighttime, or that they so obstructed the beaten part of highway that a horse would be frightened. | 193." The averments of the complaint in the case at bar are that the cows were negligently permitted to run at large on the public highway, and the negligence consisted in their being at large in the absence of an order made by the commissioners of the county, and nothing more. There is no averment that the owner of the cows did anything but permit them to run at large on the public highway, or that it was in the nighttime when the accident occurred, and the cows had so obstructed the beaten part of the highway that a horse of ordinary gentleness might take fright at same, or any averment that would require the cause submitted to a jury. | Will the object of the highway in violation of statute make the owner liable? |
| 17532 | Johnson v. Arrigoni, 5 Or. 485, 489 (1875) | 7 | An indorser on note, who was discharged by laches of holder in failing to present the demand note for payment to maker until over seven months after time defendant indorser indorsed the note, could be held liable to pay note by his subsequent promise to do so with full knowledge that he had been discharged by such laches. | Having reached the conclusion that the defendant occupied the position of an indorser, and assumed the liability of such, he was entitled to due demand and notice before his liability to pay the note could be made absolute. | When does the indorser incur liability for a note? |
| 17533 | Waters v. Millar, 1 U.S. 369, 370, 1 L. Ed. 180 (Pa. Com. Pl. 1788) | 5 | The sale and delivery of a promissory note, payable to order, without indorsement or assignment, does not entitle the holder to sue in his own name. | The question is, whether the sale and delivery of the note to the Plaintiff is of itself, without any indorsement or assignment, a legal ground of the assumpsit; for no other consideration is laid.<br><br>The note is a negotiable note, payable to Jefferow, or his order; the remedy, therefore, as upon the instrument itself, is confined to Jefferow, or his order; and it would, indeed, be confined to Jefferow himself, as a chose in action, if the act of Parliament, or act of Assembly, did not enable an assignee to sue in his own name. | Does a note payable to order have to be assigned to enable the holder to bring an action in his own name? |
| 17534 | First Nat. Bank v. Moore, 137 F. 505, 507 (9th Cir. 1905) | 1 | In the absence of a statute to the contrary, a written assignment of a negotiable note, payable to order, is not necessary to transfer an equitable title to the note to the transferee. | The notes in controversy were made and transferred in the state of Iowa. We find no statute of that state which requires that such an assignment be in writing, nor have the courts of that state so held. On the contrary, it seems to have been there settled by the adjudications that not only may such an assignment be made by parol, accompanied by delivery, but that the assignee of such a note, so transferred, may maintain an action in his own name to recover thereon. In Conyngham v. Smith, 16 Iowa, 471, it was held that the assignee of a bond by parol contract of assignment may maintain an action thereon in his own name. In Younker v. Martin, 18 Iowa, 143, in an opinion rendered by Judge Dillon, it was held that the transferee by delivery, without indorsement of a promissory note payable to order, may maintain an action thereon in his own name, but without prejudice to the maker's right of set-off of equities existing before notice to him of the transfer. The court said: 'Notes are choses in action— that is, things which must be recovered by action at law—and, like all other things in action, they may be assigned and the title will pass without indorsement.' The doctrine of that decision was reaffirmed in *508 Pearson v. Cummings, 28 Iowa, 344, and Switzer v. Smith & McGowen, 35 Iowa, 269. | Does a note payable to order have to be assigned to enable the holder to bring an action in his own name? |
| 17535 | Carpenter v. Longan, 83 U.S. 271, 274, 21 L. Ed. 313 (1872) | 9 | Where security is given for negotiable note, the transfer of the note carries with it the security, without any formal assignment or delivery, or even mention of the security. | The transfer of the note carries with it the security, without any formal assignment or delivery, or even mention of the latter. If not assignable at law, it is clearly so in equity. | What happens to the security when a note is transferred? |

| | | | | | |
|---|---|---|---|---|---|
| 17536 | Rothwell v. Taylor, 303 Ill. 226, 230, 135 N.E. 419, 421 (1922) | 4 | The burden is on alleged donee of negotiable instruments to prove all facts essential to a valid gift. | By contrast, TILA and Regulation Z do require a Schumer Box to disclose credit card APRs. 15 U.S.C. § 1637(c)(1)(A)(i)(I); 12 C.F.R. § 226.5a(b)(1). This disclosure must be clear and conspicuous, 15 U.S.C. § 1632(a); 12 C.F.R. § 226.5(a)(1), which, for purposes of credit card solicitations, is defined in the official staff commentary to Regulation Z as "in a reasonably understandable form and readily noticeable to the consumer." 12 C.F.R. pt. 226 supp. I12 C.F.R. pt. 226 supp. I, para. 5a(a)(2), cmt. 1; see also Barrer v. Chase Bank USA, N.A., 566 F.3d 883, 887 & n. 4 (9th Cir.2009) (noting that the official staff commentary is owed deference). Thus, Regulation Z prohibits a Schumer Box from making "misleading" APR disclosures, where "misleading" means a disclosure that a reasonable consumer will either not understand or not readily notice. See Barrer, 566 F.3d at 892 (adopting "reasonable cardholder" standard). Put differently, an APR disclosure that is not "clear and conspicuous" is ipso facto "misleading." | Who shares the burden to prove all facts essential to a valid gift? |
| 17537 | Hawley v. Sloo, 12 La. Ann. 815, 817 (1857) | 2 | A promissory note payable generally must bear the rate of interest of the place where it is made. | It follows that a note payable generally must bear the rate of interest of the place where made, for the general rule is that "by the common law the lex loci contractus will in all cases give the rule of interest following out the doctrines of the civil law Quum judicio bonae fidei disceptatur, arbitrio judicis usurarum modus, ex more regionis ubi contractum constituitur; ita tamen ut legi non offendat. | Will the place where the note is made determine the rate of intrest? |
| 17538 | Warner v. Beardsley, 1831 WL 3162 (N.Y. 1831) | 2 | To discharge an indorser on the ground of the omission of the creditor to proceed against the principal debtor when requested so to do, it must appear that the principal was solvent at the time of the request, within the jurisdiction of the state in which the suit against the surety is instituted, and that the creditor, without any reasonable excuse, neglected or refused to proceed until the principal debtor became insolvent and unable to pay. | To discharge a surety on the ground of the omission of the creditor to proceed against the principal debtor when requested so to do, it must appear that the principal was solvent at the time of the request, within the jurisdiction of the state in which the suit against the surety is instituted, and that the creditor, without any reasonable excuse, neglected or refused to proceed until the principal debtor became insolvent and unable to pay. | Will the surety be discharged from a debt when it is due? |
| 17542 | Stow v. Wyse, 7 Conn. 214, 220 (Conn. 1828) | 5 | All persons claiming under and through the party estopped by deed, are bound by the estoppel. | If so, then all persons claiming under and through him are estopped. 1 Stark. Ev. 305. Hoyt v. Dimon, 5 Day 483. 1 Phill. Ev. 10. | Are all persons claiming under a party estopped bound equally by the estoppel? |
| 17552 | Barhydt v. Alexander, 59 Mo.App. 188, 193 (Mo.App. 1894) | 1 | The statement of the venue is an essential part of every affidavit, and its omission is fatal. | The statement of the venue is an essential part of every affidavit and prima facie evidence of the place where it is taken, and its omission is fatal. | Is venue an essential part of every affidavit? |
| 17567 | Rison v. Farr, 24 Ark. 161, 171 (1865) | 6 | Part of a law under which a plea in justification is made, being void for unconstitutionality, and the plea being entire, the whole is bad on demurrer. | A plea bad in part is bad for the whole. | "Is a plea which bad in part, bad in the whole?" |
| 17584 | Critcher v. Ballard, 180 N.C. 111, 104 S.E. 134, 135 (1920) | 3 | Under Negotiable Instruments Act, SS 2178, 2198, 2206, 2212, an indorsement written on a note payable to order, but not signed by the payee, or by any one in his behalf, does not make the transferee of the note a holder in due course, but gives him only an equitable title thereto. | And in section 2198: "Where the holder of an instrument payable to his order transfers it for value without indorsing it, the transfer vests in the transferee such title as the transferrer had therein, and the transferee acquires in addition the right to have the indorsement of the transferrer. But for the purpose of determining whether the transferee is a holder in due course, the negotiation takes effect as of the time when the indorsement is actually made." Without such indorsement, the cases uniformly hold that the holder only acquires the equitable title, and his claim is subject, as stated, to the equities and defenses existent between the original or prior parties. *136 Bank v. McEachern, supra; Jenkins v. Wilkinson, 113 N. C. 532, 18 S. E. 696. | Does a transferee without indorsement acquire only equitable title? |

| | | | | | |
|---|---|---|---|---|---|
| 17585 | Gayoso Sav. Inst. v. Fellows, 46 Tenn. 467, 471-72 (1869) | 2 | When a bond, bill, note or like evidence of debt is assigned, and is transferred by actual manual delivery to the assignee, whether the legal title in the instrument passed by the assignment or not, no notice is required to be given to the debtor, of the assignment. | Whatever may be the law in regard to the necessity for notice to the debtor, in the case of the assignment of a judgment at law, we have no hesitation in holding that such notice is not necessary, where a bond, bill, *472 note, or like evidence of debt, is assigned, and is transferred by actual manual delivery to the assignee; and this, whether the legal title in the instrument passed by the assignment or not. | Is notice to the debtor required for the transfer of title to negotiable instruments? |
| 17587 | Barrett v. Dodge, 16 R.I. 740, 19 A. 530, 531 (1890) | 6 | If no particular place of payment is specified in a note, the law of the place of contract governs as to the obligation and duty imposed on the maker. | Also, the performance of the agreement was to be in Pennsylvania, the designated place of payment. The obligations of the maker of a note are determined by the law of the state designated on the instrument as the place of payment. | Which law governs a note? |
| 17607 | In re Boyer, 65 Ind. App. 408, 117 N.E. 507, 508 (1917) | 2 | Workmen's Compensation Act includes all employ?? in industrial pursuits not expressly excepted therein. | The purpose of the act, as indicated by its title, was to prevent industrial accidents, and to provide compensation and adequate medical and surgical care for those injured by accident while engaged in industrial pursuits. It is manifest that the purpose of the act was to include within its benefits employés in all industrial pursuits, except those expressly mentioned in the exemption proviso, supra. | Does the Workmen's Compensation Act include its benefits all employees in industrial pursuits? |
| 17608 | Packer v. Roberts, for Use of Wetherell, 40 Ill. App. 613, 614 (Ill. App. Ct. 1891) | 4 | The legal title to a note cannot be transferred by assignment by a separate instrument. | The legal title to promissory notes in this State can not be transferred by assignment by a separate instrument. | Can a legal title to a note be transferred by assignment by a separate instrument? |
| 17610 | El Dorado Cnty. v. Davison, 30 Cal. 520, 524 (1866) | 1 | Toll gate erected on public highway may be abated as nuisance. | A toll gate erected upon a highway which belongs to the State or the people thereof is a nuisance, and might be abated as such. | Can toll gate erected on public highway be abated as nuisance? |
| 17611 | Spurck v. Leonard, 9 Ill. App. 174, 177–78 (Ill. App. Ct. 1881) | 8 | After dissolution of a firm, authority of making new contracts is completely revoked. | And the law is well settled that after dissolution of a firm the authority for making new contracts is completely revoked. | Does the dissolution of a partnership operate as a revocation of all authority to make new contracts? |
| 17619 | Banca Italiana Di Sconto v. Columbia Counter Co., 252 Mass. 552, 560, 148 N.E. 105, 109 (1925) | 3 | Maker ordinarily bound under laws of place where note payable. | The maker of a note is ordinarily deemed to be bound in accordance with the laws of the place where it is payable. | Is the maker of a note bound by the law of the place where the note is payable? |
| 17626 | Shafer v. Randolph, 99 Pa. 250, 253 (1882) | 4 | One who holds himself out or knowingly permits himself to be held out as a partner, on the faith of which others give credit to the firm, will be held liable as such. | Smith, 97, where one holds himself out, or knowingly suffers himself to be held out, as a partner, on the faith of which others give credit to the firm, he will be held, though, in fact, he is not a partner. | "Can there be instances where a person is not a partner, but holds himself out as a partner, and is considered to be one?" |
| 17627 | Crouch v. Bowman, 22 Tenn. 209, 211 (Tenn. 1842) | 1 | Every partner is the agent of the partnership, may transact business in its name, and in all simple contracts relating to the business of the partnership he may bind the members of the firm; but in order to do this he must act in the name of the firm and in signing notes, bills, &c. he must subscribe the name or style by which they are known as a firm, and in which they do business. | Every partner is an agent of the partnership, and may transact business in its name, and in all simple contracts relating to the business of the partnership he may bind all the members of the firm. But in order to do this he must act in the name of the firm, and in signing notes, bills, etc., he must subscribe the name of, or style by which they are known as a firm, and in which they do business. | "Does the act by a partner have to be done in the name of the firm, in order to bind the firm?" |
| 17632 | Clark v. Searight, 135 Pa. 173, 175, 19 A. 941, 941 (1890) | 3 | A promissory note not made payable elsewhere is payable at the place where it was made, and bears interest according to the law of the latter place. | An indorser is liable for interest on a protested bill of exchange according to the law of the place on which it is drawn. Mullen v. Morris, 2 Pa. St. 85. When a promissory note is made payable at a particular place, interest is allowed according to the law of the place appointed for payment. | Under what law is interest allowed when it is made payable at a particular place? |

| 17637 | Potter v. Moran, 61 Mich. 60, 62, 27 N.W. 854, 855 (1886) | 1 | Racing along a highway is itself such an act of negligence as to make the racing parties responsible for a collision caused thereby. | Two *63 persons racing make a plain and serious danger to every other person driving along the said highway, and one which it is often impossible to avoid. It is itself an act of such negligence as to make the racing parties responsible for a collision caused by it. | Is racing an act of negligence in itself? |
|---|---|---|---|---|---|
| 17642 | Loan Association v. Topeka, 87 U.S. 655, 663(1874) | 12 | The power to tax is the strongest and most pervading of all powers of government reaching directly or indirectly to all classes of the people. | The power to tax is, therefore, the strongest, the most pervading of all the powers of government, reaching directly or indirectly to all classes of the people. | What is the most pervading power of government? |
| 17644 | Guernsey v. Imperial Bank of Canada, 188 F. 300, 302 (8th Cir. 1911) | 4 | The manner of giving and sufficiency of notice of dishonor is governed by the laws of the place where the note is payable. | There is another reason why the position of counsel for the indorser is not sound. The rule that the manner of giving and the sufficiency of the notice of dishonor are governed by the law of the place of indorsement is impractical, unfair, and unjust because the notary at the place of payment must give the notice, and it is often impossible in the time allowed to him by the law for him to find out where each indorsement was made and what the law of the place of each indorsement is upon the subject of notice of dishonor Guernsey v. Imperial Bank of Canada, 188 F. 300, 302 (8th Cir. 1911) | Which law governs the manner of giving notice? |
| 17646 | Thorp, Smith & Hanchett v. Craig, 10 Iowa 461, 463 (1860) | 3 | The law of the place where a bill of exchange is payable governs as to the allowance of days of grace. | The laws of the place where the indorsement is signed or is delivered so that it becomes a contract govern the validity and extent of the contract, *301 and therefore the necessity of some presentment, demand, protest, and notice of dishonor. The law of the place where commercial paper is payable governs the days of grace, the time and the manner of making the presentment, the demand, and the protest, and of giving the notice of dishonor. | Which law governs the days of grace upon the check? |
| 17666 | Dye v. State, 127 Miss. 492, 90 So. 180, 181 (1922) | 1 | An instruction for the state defining "malice aforethought" as "the felonious design or purpose to effect the death of the person killed" is erroneous, for in this state "malice aforethought" is equivalent to "premeditated design," or "deliberate design." | "The court instructs the jury for the state that the term 'malice aforethought' as used in these instructions, means the felonious design or purpose to effect the death of the person killed, and that it is sufficient in law if such purpose or design existed immediately before or at the time of the killing." It is true that this instruction is erroneous, and is not a correct definition of "malice aforethought." In this state "malice aforethought" is equivalent to "premeditated design," or "deliberate design." | Is malice aforethought equivalent to premeditated design or deliberate design? |
| 17671 | Robbins v. Magee, 76 Ind. 381, 388 (1881) | 9 | A party acting in excusable ignorance of a material fact is not thereby estopped. | The doctrine, that a person who does an act in excusable ignorance of a material fact is not thereby estopped, is founded in sound reason, and is well sustained by authority. | Is a person who acts in excusable ignorance of a material fact estopped? |
| 17701 | Carlisle v. United States, 83 U.S. 147, 154 (1872) | 3 | "Allegiance" is the obligation of fidelity and obedience which the individual owes to the government under which he lives, or to his sovereign in return for the protection he receives, and it may be an absolute and permanent obligation, or it may be a qualified and temporary one. | By allegiance is meant the obligation of fidelity and obedience which the individual owes to the government under which he lives, or to his sovereign in return for the protection he receives. It may be an absolute and permanent obligation, or it may be a qualified and temporary one. | How is allegiance defined? |
| 17717 | Cady v. Bay City Land Co., 102 Or. 5, 8, 201 P. 179, 180 (1921) | 2 | Since one who writes his name on the back of a negotiable instrument may enlarge or restrict his liability without destroying his character as an indorser, a writing by the payee on the back of a promissory note, "Notice of protest waived and payment guaranteed," passed title to his assignee; such guaranty of payment being equivalent to an indorsement, and the rights of the parties, in view of Or.L. S 7910, ORS 71.118, requiring protest only in case of foreign bills of exchange, not being affected by such waiver of notice. | The text-writer in that connection notes further discordance in the decisions in a few states. The very great majority of the precedents, however, is to the effect that a man who writes his name on the back of a negotiable instrument is an indorser, and that he may enlarge his liability or restrict it, without destroying his character as an indorser. Cady v. Bay City Land Co., 102 Or. 5, 10, 201 P. 179, 180 (1921) | Does indorsing a guarantee on a note enlarge liability? |
| 17751 | Town of Hustisford v. Knuth, 190 Wis. 495, 209 N.W. 687, 687 (1926) | 2 | Abutting owners may make such reasonable use of fee to highway as does not interfere with public right. | It is well-settled law that the fee to the highway remains in the abutting owners, and that they may make such use of the highway as may be reasonable, which does not interfere in any way with the public's right in the highway. | Who does the fee to a highway remain with? |

| 17766 | Goodman, Boyne & Sherwood Co. v. Pence, 21 Neb. 459, 32 N.W. 219, 220 (Neb. 1887) | 1 | A mere inchoate right to a mechanic's lien is not assignable. Such lien passes with an assignment of the debt only when it has been perfected under the statute. | In other words, a mere inchoate right to a mechanic's lien is not assignable, although the lien, when acquired, passes with the assignment of the debt. | Is mechanics lien assignable? |
|---|---|---|---|---|---|
| 17768 | Montgomery v. Samory, 99 U.S. 482, 483 (1878) | 5 | Title to real estate is governed by the laws of the place where it is situated. | Courts and jurists everywhere agree that the title to real estate is governed by the laws of the place where it is situated, the universal rule being that the title to such property can only be acquired, passed, or lost according to the lex loci rei sitoe. | Which law governs the title to real estate? |
| 17791 | McLaughlin v. Johnson, 46 Ill. 163, 166 (1867) | 2 | A. lent to B., for use upon B.'s land, the rails in a piece of fence standing upon A.'s land. Held that, upon the sale by A. to B. of the land where the fence stood, the rails were fixtures, and passed under the deed as a part of the realty. | We think the proof is quite conclusive that the removal of the rails was but a temporary severance of them from the *166 realty, and on the sale of the land to the defendant, who had borrowed them before the sale and while they were upon the land, passed to him with the land. McLaughlin v. Johnson, 46 Ill. 163, 165–66 (1867) | "Does a rail, when made up into a fence upon the land, become a part of the realty?" |
| 17798 | Crow v. State, 55 Tex. Crim. 200, 203, 116 S.W. 52, 53 (1909) | 3 | Pen.Code 1895, art. 717 (Vernon's Ann.P.C. art. 1261), provides that the instrument by which a homicide is committed is to be considered in judging of intent, and, if the instrument be one not likely to produce death, it is not to be presumed that death was designed, unless it appears from the manner in which the instrument was used. Article 719 (1263), providing that where a homicide occurs under sudden passion, but by the use of means not in their nature calculated to produce death, the person killing is not deemed guilty of the homicide, unless there was an intention to kill, applies to all homicides, except where the injury is inflicted in a cruel manner, or a manner showing an evil disposition or a design to kill. Held that, in a prosecution for murder alleged to have been committed during a sudden difficulty, by striking with a baseball bat, which is not a deadly weapon per se, where there was evidence that accused did not intend to kill, a failure to charge on his intent in striking was error. | If you further believe from the evidence beyond a reasonable doubt that said baseball bat was an instrument that would have ordinarily produced death without regard to the manner of its use—that is, that said baseball bat was per se a deadly weapon Crow v. State, 55 Tex. Crim. 200, 202, 116 S.W. 52, 53 (1909) | Is a baseball bat considered to be a deadly weapon? |
| 17807 | Adams v. Long, 114 Ill.App. 277, 282–83 (Ill.App. 1 Dist. 1904) | 3 | A partner in a trading firm has prima facie authority to bind the firm by drawing, endorsing or accepting bills in the firm name for partnership purposes. | In the Pease case the Connecticut Supreme Court quote from a text writer approvingly the following: "A partner in a trading firm *283 has prima facie authority to bind the firm by drawing, indorsing or accepting bills in the firm name for partnership purposes. | Can a partner in a non-trading partnership bind a co-partner by a note drawn by him in the firm name? |
| 17846 | N. Tr. Co. v. Consol. Elevator Co., 142 Minn. 132, 138, 171 N.W. 265, 268 (1919) | 6 | Doctrine of subrogation is of purely equitable origin and nature; its object being to place a charge where it ought to rest, by compelling payment of a debt by him who ought in equity to pay it. | If respondent is liable to appellant at **268 all, liability must arise through some application of the rule whereby a surety who *138 has made good the default of his principal is subrogated to the rights and remedies of creditors of the principal against third persons. The doctrine of subrogation is of purely equitable origin and nature. N. Tr. Co. v. Consol. Elevator Co., 142 Minn. 132, 137–38, 171 N.W. 265, 267–68 (1919) | Is the doctrine of subrogation of equitable origin and nature? |

| 17864 | Leahy v. Haworth, 141 F. 850, 856 (8th Cir. 1905) | 1 | A written assignment on the back of a promissory note payable to the order of the payee, signed by such payee, is the equivalent of a blank indorsement to transfer title to the note free from equities, either under the law merchant or Comp.St.Neb.1901, S 3380, which provides that "all bonds, promissory notes, bills of exchange, foreign and inland, drawn for any sum or sums of money certain, and made payable to any person or order, or to any person or assigns, shall be negotiable by indorsement thereon so as absolutely to transfer and vest the property thereof in each and every indorsee successfully," and under such section a written guaranty, signed by the payee on the back of a note payable to his order, constitutes an indorsement with an enlarged liability, and transfers the legal title free from equities existing between the maker and payee. | There is abundant authority for the effect which we give to the indorsement in question. In Markey v. Corey, 108 Mich. 184, 66 N.W. 493, 36 L.R.A. 117, 62 Am.St.Rep. 698, the court, after reviewing and citing many sustaining authorities, held that the following indorsement on the back of a note, namely: 'I hereby assign the within note to Matthew M. Markey and Catherine Sunders'— was a good commercial indorsement, subjecting the payee who signed the same to the liability of indorser under the law merchant. In Adams v. Blethen, 66 Me. 19, 22 Am.Rep. 547, it is held that a defendant, the payee of a negotiable note who signed his name on the back of the note under these words, 'I this day sold and delivered to Catharine M. Adams the with not,' thereby assumed all the liabilities of an endorser. The court there says:<br><br>Leahy v. Haworth, 141 F. 850, 860 (8th Cir. 1905) | Does the payee of a negotiable note who signed his name on the back of the note assume liabilities? |
| 17870 | Gunn v. Cent. R.R., 74 Ga. 509, 512 (1885) | 4 | The powers of a corporation are limited and fixed by the act of incorporation, and besides the powers thus specially granted, it has those which are common to all corporations. The power to form a partnership is not one of those which is common to all corporations; and where the charter of a railroad conferred no such power upon it, it had no authority to enter into a partnership with a natural person to run a line of boats and carry passengers, and its acts and contracts pertaining to the business of such an association are invalid as against the firm and the corporation as a member thereof; and it is not liable to an action for a tort arising from a breach of duty created by a contract of such a firm. | "There is one obvious and important distinction between such a society as this charter creates and that of a partnership. An act of the corporation, done either by direct *513 vote or by agents authorized for the purpose, is the manifestation of the collected will of the society. No member of the corporation, as such, can bind the society. In a partnership each member binds the society as a principal. If, then, this corporation may enter into partnership with an individual, there would be two principals, the legal person and the natural person, each having, within the scope of the society's business, full authority to manage its concerns, including the disposition of its property." Id., 595. Again it is declared (Id., 597) that "the effect of all our statutes, the settled policy of our legislation for the regulation of manufacturing corporations, is that the corporation is to manage its affairs separately and exclusively; certain powers to be exercised by the stockholders, and others by officers who are the servants of the corporation and act in its name and behalf. And the formation of a contract, or the entering into a relation by which the corporation or the officers of its appointments should be divested of that power, or by which its franchises should be vested in a person with equal power to direct and control its business, is entirely inconsistent with the policy.<br>Gunn v. Cent. R.R., 74 Ga. 509, 512–13 (1885) | Do corporations have the power to become members of a partnership? |
| 17899 | Pub. Utilities Comm'n v. Natatorium Co., 36 Idaho 287, 211 P. 533, 537 (1922) | 7 | Where waters flowing from a water company's hot water wells were private waters, the facts of distribution to a selected class of customers for compensation, that the company originally filed notices of location and appropriation of the hot waters of certain springs, and was authorized by its charter to devote such waters to a public use, in the absence of an unequivocal intention to dedicate to a public use, do not of themselves constitute the company a public service corporation, since such waters belong to the company as unqualifiedly as the land upon which the springs were found. | If the waters are public waters as distinguished from private waters, the act of distribution and sale under a franchise or otherwise may have constituted such a public use. But since the waters are not public waters, but private waters, the mere fact of distribution or the receiving of compensation for the use thereof, in the absence of an unequivocal intention to dedicate to a public use, would not be such a use as would make the appellant a public service corporation.<br><br>[…]<br><br>The mere fact that the appellant company filed notices of location or appropriation of the hot waters, in and of itself, was not such an act as would constitute it a public service corporation, whatever its notice may have contained. Nor would the fact that it was authorized by its charter to devote the hot water to a public use. The waters of the wells belonged to the appellant as much as the land upon which they were located. | Is the dedication of the property of a corporation to public use presumed without evidence of unequivocal intention? |

| | | | | | |
|---|---|---|---|---|---|
| 17902 | N. Tr. Co. v. Consol. Elevator Co., 142 Minn. 132, 138, 171 N.W. 265, 268 (1919) | 6 | Doctrine of subrogation is of purely equitable origin and nature; its object being to place a charge where it ought to rest, by compelling payment of a debt by him who ought in equity to pay it. | The doctrine of subrogation is of purely equitable origin and nature. Whether a case for its application arises in favor of a surety as against third persons depends upon the balance of equities between them and the surety. It does not arise where the result would be prejudicial to innocent purchasers. The object of subrogation is to place the charge where it ought to rest by compelling the payment of the debt by him who ought in equity to pay it. | Is the doctrine of subrogation purely equitable origin? |
| 17915 | Stitzel v. Miller, 250 Ill. 72, 75–76 (1911) | 1 | There cannot be any recovery in an ordinary common-law action, where the money is not due at the institution of the suit. | Without question there cannot be *76 any recovery on an ordinary common-law action if the money is not due at the institution of the suit. | Can there be any recovery in an ordinary common-law action? |
| 17919 | Caner v. Owners' Realty Co., 33 Cal. App. 479, 480, 165 P. 727, 727 (Cal. Ct. App. 1917) | 1 | Where no time is specified for performance of contract other than for payment of money, a demand for performance is necessary to put promisor in default. | Where no time is specified for the doing of an act, other than the payment of money, it is the rule of law that a demand for performance is necessary in order to put the promisor in default. | "For an action to lie for a default, should there be a demand and nonperformance?" |
| 17933 | Holzapfel v. Hoboken Manufacturers' R. Co., 92 N.J.L. 193, 195 (1918) | 2 | "It is, of course, elementary at common law that an action cannot be brought to recover money not due." | It is, of course, elementary at common law that an action cannot be brought to recover money not due. | "In an action at law, can a claim maturing after suit was brought be included in judgment?" |
| 17934 | Walden's Lessee v. Craig's Heirs, 39 U.S. 147, 151, 10 L. Ed. 393 (1840) | 1 | At law, lapse of time can only operate by way of evidence. | In Kentucky there is no law which limits a revival of judgments; and at law, lapse of time can only operate by way of evidence. | "At law, can a lapse of time only operate by way of evidence?" |
| 17954 | Pilkington v. Potwin, 163 Iowa 86, 144 N.W. 39, 42 (1913) | 2 | A subsequent appeal or notice by the same party while the first is pending is nugatory. | It has been held that a subsequent appeal by the same party, while such former appeal is pending, is nugatory. | Is a subsequent appeal or notice by the same party while their first appeal is pending considered nugatory? |
| 17963 | State v. Hackley, Hume & Joyce, 124 La. 854, 863 (1909) | 1 | Ultimate facts of necessity are conclusions from intermediate and evidentiary facts; but legal conclusions cannot be pleaded as ultimate facts. | 'Ultimate facts of necessity are conclusions drawn from intermediate and **776 evidentiary facts; but legal conclusions cannot be pleaded as ultimate facts.' 31 Cyc. | Are ultimate facts conclusions drawn from evidentiary facts? |
| 17969 | Paepcke-Leicht Lumber Co. v. Berkowsky, 73 Ill. App. 400, 403 (Ill. App. Ct. 1898) | 2 | Plaintiff is entitled to take a nonsuit at any time before entry of the finding. | Appellant was entitled to take a nonsuit at any time before the entry of the finding | Is a party entitled to take a nonsuit at any time before entry of the finding? |
| 17970 | Weil v. Abeel, 206 S.W. 735, 736 (Tex. Civ. App. 1918) | 2 | The right to take a nonsuit is liberally construed by the courts. | The right to take a nonsuit is liberally construed by the courts, and in cases above referred to it has been held that counsel had the right to discuss the matter with the court, and if the court suggests, or indicates, that he is going to decide against plaintiff, the plaintiff has the right to dismiss. | Is the right to take a nonsuit liberally construed by the courts? |
| 17973 | State ex rel. U. S. Fid. & Guar. Co. v. Harty, 276 Mo. 583, 208 S.W. 835, 838 (1919) | 5 | In a proceeding concerning duty of an officer, an allegation of duty in terms is a mere legal conclusion, it being necessary to allege facts showing existence of duty, and this is especially true as to duties created by statute. | In harmony with this rule, applicable in reason to officers as well as others acting individually, is the well-recognized requirement that an allegation of duty in terms is likewise a mere legal conclusion, and that the facts showing the existence of the duty should be alleged. McPeak v. Railroad, 128 Mo. loc. cit. 636, 30 S. W. 170; Schueler v. Mueller, 193 Ill. 402, 61 N. E. 1044; Baker v. Louisville Terminal, 106 Tenn. 490, 61 S. W. 1029, 53 L. R. A. 474; Pittsburgh, etc., R. R. v. Peck, 165 Ind. loc. cit. 540, 76 N. E. 163. This rule is especially applicable to general allegations as to duties created by statute which are held not to be statements of fact, but conclusions of law. | "Are allegations as to duties created by statute, conclusions of law?" |

| | | | | | |
|---|---|---|---|---|---|
| 17976 | Downer v. Garland, 21 Vt. 362, 363–64 (1849) | 1 | Where the prior defective suit had been entered in court, and the defect pleaded in abatement, and the plaintiff, during the term at which the plea was filed, gave to the defendant a written notice of the discontinuance of the suit, and immediately caused the writ in the second suit to be served, and subsequently, at the same term, entered upon the docket of the court a discontinuance of the first suit, it was held that the second suit was not vexatious, and would not be abated by the pendency of the prior suit. | The defendant pleaded in abatement, that when the writ in this suit was sued out and served upon him, there was pending in court a prior suit against him, in favor of the same plaintiff and for the same cause of action. The plaintiff replied, that the justice of the peace, who issued and signed the writ in the prior suit, and who took the recognizance therein, was attorney for the plaintiff in that suit, and that his name was indorsed upon the writ as attorney; that that suit was entered in court, May Term, 1847, and the defendant pleaded the defect above stated in abatement; that on the 31st day of May, 1847, which was during said term, the plaintiff gave notice to the defendant, in writing, that the prior suit was discontinued, and immediately caused the writ in this suit to be served by attaching the defendant's property; that this suit was commenced and is pending, not for any vexatious purpose, but for the only purpose of securing the plaintiff's debt; and that afterwards, on the third day of June, 1847, which was within a reasonable time, and during the same term, the plaintiff caused the prior suit to be discontinued by an entry of nonsuit upon the docket of the court, and paid to the defendant his costs therein; without this, that the said prior suit yet remained pending and undetermined in the county court at the time when this suit was sued out and served upon the defendant.

[…]

The principle, that a second suit is not vexatious and will not be abated by the pendency of a prior defective suit for the same cause of action, extends only to cases, where the plaintiff has made no attempt to pursue the former suit as a valid process, beyond the mere act of service. | "If a party bring a defective suit, upon discovering the defect, can he discontinue that suit and bring another?" |
| 17977 | Saunders v. Coffin, 16 Ala. 421, 422–23 (1849) | 1 | The court cannot compel the plaintiff to submit to a nonsuit without his consent. | It is the settled *423 practice in this State, that the court cannot order a non-suit or compel the plaintiff without his consent to take a non-suit. | Can the court compel the plaintiff to submit to a nonsuit without his consent? |
| 18002 | In re Farrell, 211 F. 212, 213 (W.D. Wash. 1914) | 2 | A "tax" is a pecuniary burden imposed for the support of the government, and is the enforced proportionate contribution of persons and property levied for the government's support and for all public things. | A 'tax' is defined as a pecuniary burden imposed for the support of the government. United States v. Railroad, 17 Wall. 322, 326, 21 L.Ed. 597. It is the enforced proportionate contribution of persons and property levied for the support of government and for all public things. | "What is a pecuniary burden imposed upon a class of individuals, businesses, or other entities for support of government called?" |
| 18024 | Wightman v. Hart, 37 Ill. 123, 136 (1865) | 1 | The transfer of a note by indorsement is prima facie evidence that a consideration was paid. | The assignment of the notes is prima facie evidence that a consideration was paid, and the complainants' evidence, we think, fails to overcome it, and the sworn answer, and defendant's evidence, which seems to support the transaction as fair. | Is the assignment of a note a prima facie evidence that the consideration was paid? |
| 18025 | State Sav. Bank of Leavenworth v. Krug, 108 Kan. 108, 193 P. 899, 900 (1920) | 1 | Where the name of the indorser placed on the back of the instrument with a rubber stamp by one authorized to do so with intent to indorse it is a valid "indorsement" within Negotiable Instrument Law, SS 37, 38, Gen.St.1915, SS 6557, 6558, and in view of Gen.St.1915, S 10973, subd. 18. | Where the name of the indorser has been placed on the back of the instrument with a rubber stamp by one having authority to do it and with intent to indorse the instrument, it is a valid indorsement within the provision of sections 37 and 38 of the Negotiable Instrument Law (sections 6557, 6558, Gen. St. 1915). | Is affixing a rubber stamp to an instrument is sufficient in law to fulfill the requirement of indorsement? |
| 18045 | McElreath v. State, 55 Ga. 562, 562 (1876) | 1 | As a mill house is not one of the buildings expressly mentioned in the statute defining burglary, and as it may or may not be a place of business, an indictment for burglary which alleges the offense to have been committed by breaking and entering a mill house with intent to steal, and which neither by description nor substantial averment designates the house as a place of business, is fatally defective, and judgment thereon will be arrested. | As a mill-house is not one of the buildings expressly mentioned in the statute defining burglary, and as it may or may not be a place of business, an indictment for burglary which alleges the offense to have been committed by breaking and entering a mill-house with intent to steal, and which neither by description nor substantial averment, designates the house as a place of business, is fatally defective, and judgment thereon will be arrested. | Is breaking and entering a place of business considered a burglary? |

| | | | | | |
|---|---|---|---|---|---|
| 18047 | Davis v. Com., 132 Va. 521, 523 (Va. 1922) | 1 | Breaking, as an element of the crime of burglary, may be either actual or constructive, there being a constructive breaking when an entrance has been obtained by threat of violence, by fraud, or by conspiracy, and an actual breaking where there is the application of some force, slight though it may be, whereby the entrance is effected, and may be the mere pushing open of a door, turning a key, lifting a latch, or use of slight physical force. | There is a constructive breaking when an entrance has been obtained by threat of violence, by fraud, or by conspiracy. Min. Syn. Cr. Law, p. 92; Clarke v. Commonwealth, 25 Grat. (66 Va.) 912. The entrance to the premises in the instant case was not obtained by either of these means, and cannot be classed as a constructive breaking. Actual breaking involves the application of some force, slight though it may be, whereby the entrance is effected. Merely pushing open a door, turning the key, lifting the latch, or resort to other slight physical force is sufficient to constitute this element of the crime. | Can the breaking in a burglary be actual and constructive? |
| 18049 | Fritcher v. Kelley, 34 Idaho 471, 201 P. 1037, 1039 (1921) | 9 | Facts constituting undue influence must be pleaded, and mere conclusions are insufficient. | The allegations concerning undue influence are mere conclusions. The facts constituting undue influence, like those constituting fraud, must be pleaded; it not being sufficient to aver undue influence which is a legal conclusion. | Should facts constituting undue influence be pleaded? |
| 18052 | Sims v. State, 131 Ark. 185, 198 S.W. 883, 885 (1917) | 7 | In determining guilt of state senator for receiving bribe to defeat bill, evidence that he had entered a conspiracy to introduce bills to extort money for their defeat may be considered. | The contention is that there was no evidence to support the theory that appellant entered into a conspiracy with others to introduce bills for the purpose of extorting money from interested parties to have them defeated. [...] If the conspiracy existed, it was proper, as stated by the court in the instruction, for the jury to consider that fact in determining the guilt or innocence of appellant, and it was also proper for them to consider any of the statements of the participants in the conspiracy made during its progress, for if the testimony adduced by the state be accepted as true, appellant entered into the fraudulent design of introducing bills in the Legislature to use in extorting money from interested parties, and that the transaction now under consideration occurred pursuant to that design. | "Is the guilt of a state senator or officer receiving a bribe, on the understanding that his official conduct should be influenced, affected by the absence of intent to bribe on the part of the persons furnishing the money paid to him?" |
| 18055 | Luellen v. City of Aberdeen, 20 Wash. 2d 594, 608, 148 P.2d 849, 857 (1944), overruled by Stenberg v. Pac. Power & Light Co., 104 Wash. 2d 710, 709 P.2d 793 (1985) | 20 | A "pension" is a gratuity extended to an individual by his sovereign as a reward for past services. | A pension is a gratuity extended to an individual by his sovereign as a reward for past services. | Is pension a reward for past services? |
| 18056 | Baillio v. Wilson, 6 Mart.(n.s.) 334, 334–35 (1827) | 3 | The sickness of principal counsel is good cause for a continuance. | The motion for the continuance was supported by affidavit, stating that fact, and the impossibility which the tutrix laboured under in consequence thereof, to render a full account. [...] It has been determined in several instances in the supreme court sitting in the eastern district, that the sickness and consequent incapacity of leading and principal counsel in a cause, to attend to it, is a good ground on which to obtain a continuance. | Is the sickness of principal counsel good cause for a continuance? |
| 18086 | Miller v. Medford National Bank, 115 Or. 366, 370–71 (1925) | 5 | Where check does not operate as an assignment, authority to pay it is revoked on death of drawer. | Where a check operates as an assignment, the death of the drawer will not revoke it, but, where it *371 does not operate as an assignment, the authority to pay the check is revoked upon the death of the drawer. | Does the death of the drawer operate as a revocation of a check? |

| | | | | | |
|---|---|---|---|---|---|
| 18101 | Phillips v. Nash, 47 Ga. 218, 218 (1872) | 4 | But a dormant partner is not liable to those dealing with the firm after his withdrawal, even though he give no notice of his withdrawal, except to those who know of his connection with the firm. To such as had such knowledge he is liable, even for contracts made after his withdrawal, unless they have notice of his withdrawal. | But a dormant partner is not liable to those dealing with the firm after his withdrawal, even though he give no notice of his withdrawal, except to those who know of his connection with the firm. To such as had such knowledge he is liable, even for contracts made after his withdrawal, unless they have notice of his withdrawal. | Does a dormant or a silent partner have liabilities to everyone dealing with the partnership? |
| 18102 | Deford v. Reynolds, 36 Pa. 325, 333 (1860) | 4 | It seems that every partner is considered as dormant unless his name is mentioned in the title of the firm or included in some general term, e.g., "& Co.," "Sons," etc. | In Mitchell v. Dale, 2 Harr. & Gill 172, it was said by MARTIN, J., that every partner is dormant, unless his name appear in the firm, "or is embraced under general terms, as the name of one of the firm and company." | Will a partner be a dormant one if his name does not appear in the firm? |
| 18103 | Babcock v. Stewart, 58 Pa. 179, 180–81 (Pa. 1868) | 4 | An incoming partner is not liable for the prior contracts of the firm, not entered into on his credit. | Nothing is better settled than that an incoming *181 partner is not liable on the contracts and engagements of the firm entered into before he became a member of it. | Is an incoming partner liable on the contracts entered into by the firm before he became a member? |
| 18105 | Guthrie v. Buckeye Cannel Coal Co., 66 Ind. 543, 543–45 (1879) | 1 | Though 2 Rev.St.1876, p. 141, § 256, provides that the deposition shall be subscribed by the deponent after being carefully read to or by him, it is not necessary that the certificate show that such section was complied with. | The statute on the subject of taking and certifying depositions in this State is as follows, 2 R. S. 1876, p. 141: [...] SEC. 256. The deposition shall be written down by the officer, or by the deponent, or by some disinterested person, in the presence, and under the direction of the officer, and after the same has been carefully read to or by the deponent, it shall be subscribed by him. [...] This certificate fills the requirements of the statute. | Shall the deposition be subscribed by the deponent after being carefully read to or by him? |
| 18106 | Petrick v. United States, 12 Cl. Ct. 700, 702 (1987) | 2 | Resignation of military officer is involuntary only when brought about by government action, and subjective feelings of duress on the part of officer, absent government action, or fact that officer is faced with inherently unpleasant alternatives do not make his or her choice involuntary. | A resignation is involuntary only when brought about by government action. Subjective feelings of duress on the part of the plaintiff absent government action, are not relevant to a determination of voluntariness. Christie supra. See also Perlman v. United States, 203 Ct.Cl. 397, 490 F.2d 928 (1974) (retirement held involuntary as a result of government action); McGucken v. United States, 187 Ct.Cl. 284, 407 F.2d 1349 (1969), cert. denied, 396 U.S. 894, 90 S.Ct. 190, 24 L.Ed.2d 170 (1969) (external coercion and duress make a resignation involuntary and not internal misconceptions). The fact that an individual is faced with inherently unpleasant alternatives does not make his or her choice involuntary. | Is a resignation by a military officer involuntary when brought about by government action? |
| 18108 | Farmers' Sav. Bank v. Neel, 193 Iowa 685, 187 N.W. 555, 558 (1922) | 1 | The state Legislature has power to declare what instruments shall be negotiable and what shall not, and has done so by the enactment of the Negotiable Instruments Act (Code Supp. 1913, SS 3060a1, 3060a55, and 3060a56). | No one will question the right or power of the state Legislature to declare what instruments shall be negotiable and what instruments shall not. The Legislature of this state, by the enactment of the Uniform Negotiable Instrument Law has spoken upon this subject defining and specifying the essentials of negotiability. | Does the State have power to determine what instruments are negotiable? |
| 18109 | Russell v. Klink, 53 Mich. 161, 161–63, 18 N.W. 627, 627–28 (1884) | 1 | The payee of a note, by indorsing thereon a guaranty of collection to a third person, transfers the title. | Action was before a justice of the peace by plaintiff, as a corporation, to recover from the defendant a balance claimed to be due on a promissory note which, with the indorsements thereon, are as follows: [...] "For value received, we guaranty the collection of the within note, to Russell & Co. or order, and waive protest, demand, and notice of non-payment thereon. ARBUCKLE & RYAN." [...] The defendant insists that the guaranty indorsed on the back of the note designed by Arbuckle & Ryan did not pass the title of the note to Russell & Co. It was held otherwise by this court in the case of Green v. Burrows, 47 Mich. 70; [S.C. 10 N.W.REP. 111.] | Whether a guaranty of collection indorsed by the payee passes title? |
| 18118 | Brown v. Am. Steel Foundries, 272 Pa. 231, 236 (Pa. 1922) | 1 | A custom to be good should be certain, continued, reasonable, distinct, uncontradicted, and so notorious as to be probably known to the parties. | A custom, to be good, should be certain, continued, reasonable, distinct, uncontradicted, and so notorious as to be probably known to the parties to the contract. | What are the requirements of a valid custom? |

| | | | | | |
|---|---|---|---|---|---|
| 18120 | Pennell v. Delta Transp. Co., 94 Mich. 247, 252 (1892) | 1 | Custom cannot change a definite contract, and no custom is binding which is not certain, definite, uniform, and notorious. | The decisions in this state are uniform that custom cannot change a definite contract, and that no custom is binding which is not certain, definite, uniform, and notorious. | Can custom change a definite contract? |
| 18128 | Carlyle v. Plumer, 11 Wis. 96, 99, 106 (1860) | 6 | Where a deposition is taken under a commission, as well as when taken under the statute, a witness may write in his answers himself. | 99: The testimony of William Cromwell, taken by Abner Oakes, commissioner, under a commission issued out of and under the seal of the circuit court for the county of Bad Ax, which commission is tested November 9, 1857, was offered in evidence.<br><br>106: It was also objected that the answers of the witness were reduced to writing by himself, instead of the commissioner. We do not think this any ground of objection. Certainly, a witness can write his own answers as well as any one can write them for him. | "Where a deposition is taken under a commission, as well as when taken under the statute, can a witness write in his answers himself?" |
| 18129 | Hammond v. Freeman, 9 Ark. 62, 62 (1848) | 1 | The certificate of an officer before whom a deposition is taken, must show that it was reduced to writing in his presence, otherwise it cannot be read. | The certificate of an officer before whom a deposition is taken, must show that it was reduced to writing in his presence, otherwise it cannot be read. | Will it be defective if there is no showing that the examination of the witness was reduced to writing in the presence of the justice? |
| 18130 | J.H. Rottman Distilling Co. v. Van Frank, 88 Mo. App. 50, 53 (1901) | 3 | An application by plaintiff showed that he was at the time of the trial away on a visit to one of his children, but that he intended to be present and make a defense, and that when notified by his attorney, pursuant to agreement with him, of the day for which the cause was set down for trial, he was ill, threatened with pneumonia, and that, being an aged man, past 70 it would have been extremely dangerous for him to undertake the trip. Besides this, it appeared that his testimony was important, and the refusal of the continuance practically prevented him from making any defense. Held, that it was reversible error to overrule the application under the circumstances. | The appellant was shown by the application to be an aged man, past seventy. He was on a visit to one of his children. This visit was not rashly undertaken after he was notified of the suit against him, because there was ample time for him to pay it and return before the cause would come on for trial. The application and the exhibits attached thereto show that he was not neglectful of his interests, but intended to be present and make a defense. His attorney was directed to inform him of the day for which the cause was set down, and did so. When he received the notification he was ill, threatened with pneumonia. It would have been extremely dangerous for a man of his years to undertake a trip across the State in such a condition, and his request for a postponement was perfectly reasonable. The refusal of it practically prevented him from making any defense and should have been granted. In view of these circumstances, the importance of the appellant's testimony and the character of all the evidence in the record, it is plain that injustice was done by overruling the application. | Can an application for continuance be refused when materiality of the evidence on the trial of the cause and proper diligence is shown? |
| 18147 | Flournoy v. First Nat. Bank, 78 Ga. 222, 226–27, 2 S.E. 547, 548 (1887) | 2 | Though the place of execution must appear, it is sufficient to give the county and state; and, if these can be ascertained from the return with due certainty by reasonable construction, it will suffice. | 1. A motion to suppress the interrogatories of a witness was overruled. It was based on three grounds: (1) The lack of anything to identify the witness examined with the witness referred to in the commission; (2) the lack of a preamble to the answers; (3) failure to show the place of execution.<br><br>[...]<br><br>3. It is requisite that the plea of execution appear; and so we think it does in this instance. Immediately under the words, "State of Indiana, Clark County," the commissioners declare that the interrogatories and cross-interrogatories were answered, subscribed, and sworn to before them. The proper construction is that all this occurred in Clark county, Indiana. Rogers v. Truett, 73 Ga. 386. The heading of "Georgia, Muscogee county," is coupled with a statement of the case, and means simply to give the state and county in which the action was pending. When the whole document is construed together, there is not a trace of ambiguity. | "Though the place of execution of interrogatories must appear, is it sufficient to give the county and state?" |
| 18148 | McCleary v. Sankey, 1842 WL 4793, at *1 (Pa. 1842) | 3 | The certificate of a justice taking a deposition must show that it was taken at the time and place mentioned in the notice, or the deposition is not evidence. | A deposition taken in pursuance of a rule of court, cannot be read in evidence unless it appear by the certificate of the justice that it was taken at the time and place mentioned in the notice. | Should the deposition taken in pursuance of a rule of court be read in evidence? |

| | | | | | |
|---|---|---|---|---|---|
| 18166 | Sherrill-Russell Lumber Co. v. Krug Lumber Co., 216 Mo. App. 1, 267 S.W. 14, 16, 17 (1924) | 1 | Contract, made in view of well-established customs of trade to which it relates, is to be construed in light of customs, but, to become part of contract, customs must be reasonable. | The principle has been long accepted that, when a contract is made in view of well–established customs of the trade to which it relates, it is to be construed in the light of the customs. [...] It is equally well established that a custom or usage relied on as a constituent part of a contract must be reasonable. | Should a contract be construed in light of customs? |
| 18167 | St. James v. Embury-Martin Lumber Co., 219 Mich. 115, 122 (1922) | 4 | That a custom is general and established raises a presumption of its reasonableness. | That it is general and established raises a presumption of its reasonableness. | Does a custom that is general and established raise a presumption of reasonableness? |
| 18179 | Dayton v. Bartlett, 38 Ohio St. 357, 364 (1882) | 1 | Where a surviving partner, engaged in winding up the partnership affairs, dies, his administrator is charged with completing the duty, and is entitled to compensation for such service, to be paid from the partnership assets which came to his hands from such surviving partner. | Unless he is relieved from this trust by agreement of the parties, or by a competent court, it is part of his official duty as representative of the survivor to wind up the partnership, and ascertain and distribute the surplus or liability of the deceased partners before he can finally settle the individual estate. In the performance of this duty he is entitled to a reasonable compensation where he has been faithful to his trust. | Is it the duty of all the partners to settle the partnerships affairs? |
| 18180 | Yandes v. Lefavour, 2 Blackf. 371, 372–73 (1830) | 1 | An acknowledgement or promise by one partner, after the dissolution of the firm, does not bind the other partners, so as to take the debt out of the statute of limitations as to them. | We consider the principle settled, on American authority, that, after the dissolution of a partnershlp, one partner can not bind another by the admission of a debt. In *373 Hackley v. Patrick, 3 Johns. R. 536, it was decided that, after the dissolution of a partnership, the power of one partner to bind the others wholly ceases; that there is no reason why his acknowledgment should bind his co-partners, any more than his giving a promissory note in the name of the firm. And, in that case, the acknowledgment was made by the partner who was authorized to settle the partnership accounts. The same principle was recognized in Walden v. Sherburne, 15 Johns. R. 409. It has also been so decided in Kentucky. Walker v. Duberry, 1 Marsh. 189. And the doctrine of these cases is supported by the Supreme Court of the United States. Bell v. Morrison, 1 Peters, 351. We also consider that the principle is substantially settled, that the acknowledgment of one partner will not take a case out of the statute of limitations. | Will one partners acknowledgment after dissolution bind the other partners? |
| 18194 | Young v. United States, 97 U.S. 39, 62, 24 L. Ed. 992 (1877) | 2 | "Treason" is a breach of allegiance and can be committed by him only who owes allegiance either perpetual or temporary. | But there may be aid and comfort without treason; for 'treason is a breach of allegiance, and can be committed by him only who owes allegiance, either perpetual or temporary.' United States v. Wiltberger, 5 Wheat. 96. | Is breach of allegiance committed only by a person who owes allegiance? |

| | | | | | |
|---|---|---|---|---|---|
| 18198 | Wolcott v. Frissell, 134 Mass. 1, 2-3 (1883) | 1 | Under Rev.St.U.S. §§ 4785, 4786, 5485, 43 U.S.C.A. §§ 842-844, or St. U.S. June 20, 1878, c. 367, § 2, 20 Stat. 243, 43 U.S.C.A. § 842 note, an attorney, who has received the fee therein prescribed for services in procuring a pension, is not entitled to maintain an action, against a person other than the pensioner for a larger fee, upon an alleged promise of such person to pay him for his services as much as they were reasonably worth. The statutes clearly prohibit the receiving of additional compensation for such services, not only from the pensioner, but from any person. | The defendant contends that §§ 4785, 4786, 4768, 4769 and 5485 of those statutes prohibit the plaintiff from receiving from any person for his services in securing a pension a greater sum than ten dollars, where no agreement "setting forth the fee agreed upon" has been executed by the parties and filed with the commissioner of pensions; and that, as the plaintiff has already received this sum, he can recover nothing, for services in procuring a pension, in this action. The plaintiff contends that these provisions of the statutes do not apply to a contract for services in procuring a pension made with another person than the pensioner. [...] Whatever may be thought of the policy of establishing statutory fees for services that are not compulsory, such statutes, to be effectual in completely protecting the persons for whom the services are rendered, must prohibit all other compensation than that established by law, and thus compel persons either to receive only the statutory compensation or to abandon the business of rendering the service. | Is it lawful for a person to receive for his services in a pension case a greater sum than that provided by statute? |
| 18199 | Schwab v. Ginkinger, 181 Pa. 8, 37 A. 125 (1897) | 2 | In an action by an administratrix to recover the proceeds of a pension check payable to deceased, and alleged to belong to him at his death, defendant claimed the right to retain the money, and introduced a writing as follows: "And the said (deceased) further agrees that if his said son (defendant) shall provide for him just and right during his natural life, that the balance remaining of his estate shall be for his compensation, etc., in getting said pension." Plaintiff contended that the agreement was void under the pension law, which imposes a limit on the fee chargeable for prosecuting a pension claim. Held, that the writing required explanation, and hence it was error to reject parol evidence that deceased gave the check to defendant solely in consideration that defendant should provide for him during the rest of his life, and not as compensation for getting the pension. | The plaintiff is the administratrix of Samuel Ginkinger, deceased, and the present action has been brought to recover the sum of $1,750.73, with interest, less certain credits, which sum represents the amount of a pension check issued to the decedent, and by him indorsed and delivered to the defendant. The defendant, who is a son of the decedent, admits having received the proceeds of this check, but claims the right to retain them under a written agreement, the material part of which is as follows: 'And the said Samuel Ginkinger further agrees that if his said son, Allen, shall provide for him just and right during his natural life, that the balance remaining of his estate shall be for his compensation in getting said pension.' But the plaintiff contends that this agreement is void, as being in contravention of an act of congress, which, after limiting the fees for the prosecution of pension claims to $10, unless a larger fee, not exceeding $25, is agreed upon, provides as follows: 'Any agent, or attorney or other person instrumental in prosecuting any claims for pension, who shall directly or indirectly contract for, demand or receive or retain any greater compensation for his service or instrumentality in prosecuting a claim for pension than is herein provided, or for payment thereof at any other time, or in any other manner than is herein provided, or who shall wrongfully withhold from any pensioner the whole or any part of the pension allowed and due such pensioner, shall be deemed guilty of a misdemeanor, and upon conviction thereof shall for every such offence be fined not exceeding $500, or imprisoned at hard labor not exceeding two years, or both in the discretion of the court.' We think this position well taken. This power of disposition which an owner has over his own property, while very broad, is not absolute. He may not give it away to the prejudice of his creditors; and we take it to be too plain for argument that he cannot make a | Does receiving pension benefits from a pensioner as compensation violate pension laws? |

| ID | Citation | # | Rule | Holding/Reasoning | Question |
|---|---|---|---|---|---|
| 18200 | Crane v. Inhabitants of Linneus, 77 Me. 59, 61-62 (1885) | 2 | A verbal promise by a pension claimant to pay a debt out of his pension money is not a "pledge, mortgage, assignment, transfer, or sale," under Rev.St.U.S. S 4745 (38 U.S.C.A. S 129). | The plaintiff, however, invokes § 4745, U. S., R. S., which forbids "any pledge, mortgage, assignment, transfer or sale" of the pension claim. The case, however, does not show any such. The town furnished the plaintiff with pauper supplies, as it was by law obliged to. It also advanced him money to procure evidence to obtain his pension. The plaintiff promised to repay the town when he obtained his pension. The question of the town's authority to advance the money is immaterial, as plaintiff cannot recover back on that ground. There was nothing in this transaction that tends to secure to the town any special privilege in the pension claim, or any control over it. Such a promise was no pledge nor mortgage. The town was only a creditor of the plaintiff, without regarding the statute. It had no more legal interest in the pension claim, and no more control over it than his other creditors. It did not receive the money under any alleged pledge. It brought its action as a general creditor and attached the plaintiff's property. Thereupon the plaintiff paid his admitted debt. Such payment was not forbidden by § 4745. | "May a pensioner pledge, mortgage, assign, transfer, or sell his pension benefits?" |
| 18225 | Campbell v. Fourth Nat. Bank, 137 Ky. 555, 126 S.W. 114, 116 (1910) | 3 | The negotiable instrument act is mainly a mere codification of the common-law rules constituting the law merchant, so that where consistent with the prior rule it should be construed as declaratory thereof. | The negotiable instrument act is in the main merely a codification of the commonlaw rules on the subjects to which it relates. It was intended principally to simplify the matter by declaring the rule as established by the weight of authority. There are few innovations in the law merchant as before settled by the courts. Where it lays down a new rule, it controls; but, where its language is consistent with the rule previously recognized, it should be construed as simply declaratory of the law as it was before the adoption of the act. | Is Negotiable Instruments Act a codification of common law? |
| 18226 | Lewis v. Harvey, 18 Mo. 74, 80 (1853) | 3 | When one writes his name on the back of a note of which he is neither payee nor indorsee, parol evidence is admissible to show that he did not sign as maker, but as indorser or guarantor. | "But whatever diversities of interpretation may be found in the authorities, where either a blank indorsement or a full indorsement is made by a third person on the back of a note made payable to the payee or order, or to the payee or bearer, as to whether he is to be deemed an absolute promisor or maker, or a guarantor, or an indorser, there is one principle admitted by all of them, and that is, that the interpretation ought to be just such as carries into effect the true intention of the parties, which may be made out by parol proof of the facts and circumstances which took place at the time of the transaction. If the party indorsing the note intended at the time to be bound only as a guarantor of the maker, he shall not be deemed to be a joint promisor or an absolute promisor to the payee. | Can a party whose name is written on the back of a note be a maker of it? |
| 18227 | Gibson v. Parlin, 13 Neb. 292, 13 N.W. 405, 405 (Neb. 1882) | 4 | The indorser cannot, like a surety, call upon the holder of the note to proceed and collect it of the maker. | and the indorser cannot, like a surety, call upon the holder of the note to proceed and collect it of the maker. | Can an indorser be a surety? |
| 18230 | Anderson v. Border, 75 Mont. 516, 244 P. 494, 516 (Mont. 1926) | 6 | Negotiable instruments, which are not in hand of holders in due course, are subject to same defenses as if they were nonnegotiable (Rev.Codes 1921, S 8401 et seq.). | The Negotiable Instruments Act deals with negotiable instruments only so long as they are in the hands of holders in due course. If in other hands, they are subject to the same defenses as if nonnegotiable. | Will the Negotiable Instruments Act deal with negotiable instruments as long as they are in the hands of holders in due course? |
| 18235 | Goodwine v. Vermilion Cnty., 271 Ill. 126, 137, 110 N.E. 890, 894 (1915) | 2 | Power of county board to aid in the construction of roads and bridges under County Law, S 57, S.H.A. ch. 34, S 57, held not limited or modified by Road and Bridge Act, S 126, S.H.A. ch. 121, S 134. | The powers granted by this section refer only to the constructing, repairing and making of gravel, rock, macadam or other hard roads according to the provisions of the Road and Bridge Act. The limitations imposed apply only to proceedings under that act, and the section does not repeal, limit, or modify section 57 of the County Act.<br>It is not necessary to consider the effect or validity of the curative act.<br>The action of the board of supervisors was within the power conferred upon them by the statute.<br>The decree of the circuit court was right, and it will be affirmed. | Does the county board have the power to aid in the construction of bridges? |

| 18236 | Kimama Highway Dist. v. Oregon Short Line R. Co., 298 F. 431, 433 (9th Cir. 1924) | 1 | A highway district in Idaho is not a political municipality created for governmental purposes, but its powers are specially limited to the construction of highways for the benefit of the inhabitants and property therein. | And as said by the court below in this case: 'When it is remembered that, as declared by the Supreme Court of the state, a highway district is not a political municipality, and is not created for governmental purposes, but is limited in both its purposes and powers to the construction of highways for the benefit of its inhabitants and the property within its borders, and that the road in contemplation here is not to be for such a purpose, and can serve no substantial local need, and will be of no benefit to the plaintiff, the placing of a burden upon its property of substantially the entire cost of the work must be regarded as unreasonable, arbitrary, and in effect confiscatory.' | Is highway district a political municipality? |
| 18246 | Overton v. Hardin, 46 Tenn. 375, 381 (1869) | 2 | An indorser for value, has no remedy against the maker for costs incurred by him in his own defense, but an accommodation indorser may recover from the maker the cost incurred in resisting, in good faith and upon reasonable grounds, a recovery against him upon his indorsement. | An indorser for value, has no remedy against the maker, for costs incurred by him in his own defense. An accommodation indorser, however, may recover from the maker, the costs incurred in resisting, in good faith, and upon reasonable grounds, a recovery against him upon his indorsement: | Does an indorser have a remedy against the maker for the cost incurred in his own defence? |
| 18247 | Turk v. Stahl, 53 Mo. 437, 438–39 (1873) | 1 | Promissory notes, payable at a certain time, are entitled to days of grace, the same as by the law merchant, notwithstanding the statutes respecting bills of exchange. | Thereupon the plaintiff took a non-suit, with leave, &c.,--and now insists, that because § 15 of that chapter of our statute, respecting Bills of Exchange, provides, that "Every promissory note for the payment of money to the payee therein named, or order, or bearer, and expressed to be for value received, shall be due and payable as therein expressed," that it must necessarily follow, that such notes fall due on the day mentioned on their face, and consequently, that days of grace are not allowable on such paper, and the court below erred in so declaring the law. . . . By the law merchant, all bills of exchange, whether payable at sight, on demand, or at a day certain, were entitled to three days of grace. | How many days of grace are promissory notes entitled to? |
| 18252 | People v. McCreery, 34 Cal. 432, 454 (1868) | 1 | Taxes are charges, imposed by or under the authority of the legislature, upon persons or property subject to its jurisdiction. The tax must have its origin in a law enacted for that purpose. | Taxes are charges imposed by or under the authority of the Legislature, upon persons or property subject to its jurisdiction. The power of taxation is a necessary incident to sovereignty, and under our system of government it pertains to the legislative department, for the levying of a tax is necessarily a legislative act. The tax must have its origin in a law, enacted for that purpose. | Who authorize the imposition of taxes? |
| 18255 | Harris v. Bradley, 15 Tenn. 310, 311 (1835) | 3 | The last endorsement of a note or bill is a guaranty of all preceding endorsements; it admits the hand writing of the drawer and all prior endorsers; the last endorser is consequently liable, although the preceding endorsements were forgeries. | This proposition is altogether fallacious. The holder of a bill or note has nothing to do with the preceding endorsements, and, whether genuine or not, his immediate endorser is liable to him. The last endorsement is, in fact, a guaranty of the preceding endorsements, and admits the handwriting of the drawer and prior endorser, although the bill be forged. Chitty on Bills, 197, 198; 3 Kent's Com. 60; 2 Salk. 127. The judge, therefore, properly admitted the note, with its endorsements, to the jury, upon proof having been made of the endorsement by the defendant. | Is the last indorsement of a note a guarantee of all preceding indorsements? |
| 18256 | E.D. Fisher Lumber & Coal Co. v. Robbins, 104 Kan. 619, 180 P. 264, 265 (1919) | 3 | An assignment by a holder of a negotiable note written on the back thereof without limitation, to which a guaranty of payment is added, is a commercial indorsement. | Although questioned, the transfer of the note from the plaintiff to the bank amounted to a commercial indorsement. It was an assignment without limitation and also as a guaranty of payment, and this has been held to pass title to the paper the same as a blank indorsement, as well as a guaranty of payment. The note being negotiable in form, the writing constituted a commercial indorsement which passed full title to the note free from equities as between the maker and the payee. | Will the title of the note be passed by way of commercial indorsement? |
| 18257 | Galbreath v. Wallrich, 45 Colo. 537, 541, 102 P. 1085, 1086 (1909) | 3 | Assignment of a nonnegotiable contract does not carry a warranty that it will be performed; but assignee merely impliedly warrants it is what it purports to be, and hence, where nonnegotiable contracts to furnish ties to a railroad were assigned, the mere fact that it subsequently canceled them and refused to allow assignees to fill them did not impose any liability on assignors. | The assignment of a nonnegotiable contract does not carry a warranty that it will be performed. | Does the assignment of a nonnegotiable contract carry a warranty that it will be performed? |

| | | | | | |
|---|---|---|---|---|---|
| 18262 | Strawberry Point Bank v. Lee, 117 Mich. 122, 123–24 (1898) | 1 | The law of the place where a note or bill of exchange is made and delivered will govern, in the absence of the designation of any other place as the place of payment. | It is unnecessary to cite authorities to show that the law of the place where a promissory note or bill of exchange *124 is made and delivered controls, in the absence of the designation of any other place; and, if any other place is designated, the law of that place controls. | Is the law of the place where a note is payable applicable to the note? |
| 18263 | United States v. First Nat. Bank, 82 F. 410, 411 (C.C.D. Kan. 1897) | 2 | A pension certificate or check drawn to the order of a person then deceased is absolutely void. | The issuance of the check to said Mary L. Beard after she was dead was an act utterly void, and the check itself was absolutely void, and no act of any one could breathe into it the breath of life, or make it of any value whatever. | Is a pension certificate or check drawn to the order of a deceased person absolutely void? |
| 18266 | Ryan v. May, 14 Ill. 49, 50 (1852) | 2 | The legal title to a note cannot be transferred by assignment by a separate instrument. | By our statute the legal title to a note cannot be transferred by a separate instrument in writing. | Can the legal title to a note be transferred by a separate instrument? |
| 18269 | Colburn v. Averill, 30 Me. 310, 318 (1849) | 2 | Where an indorsement by a third party is without date, it is presumed to have been made at the time of the inception of the note, so as to charge the indorser as maker or guarantor. | If made without date, it will be presumed to have been made at the inception of the note. | What will be the presumed date of an indorsement of bill if it has no date? |
| 18272 | Morris v. Preston, 93 Ill. 215, 221 (1879) | 3 | Bills and notes indorsed in blank pass by delivery. The purchaser is not bound to inquire as to the title of the holder, unless he has knowledge of facts which, on inquiry, would lead to notice. So held as to notes placed in the hands of a banker, to sell for the payee as her agent, but who pledged them to secure a debt owing by himself to another bank; there being nothing to excite the pledgee's suspicion that her indorsement in blank did not make him absolute owner. | All know that bank bills, treasury warrants, notes payable to bearer, and bills and notes indorsed in blank, pass by mere delivery. | Can notes indorsed in a blank pass by delivery? |
| 18280 | Packer v. Roberts, for Use of Wetherell, 40 Ill. App. 613, 614 (Ill. App. Ct. 1891) | 4 | The legal title to a note cannot be transferred by assignment by a separate instrument. | The legal title to promissory notes in this State can not be transferred by a separate instrument. | Can the legal title to notes be transferred by a separate instrument? |
| 18282 | Ft. Dearborn Nat. Bank v. Berrott, 23 Tex. Civ. App. 662, 664, 57 S.W. 340, 341 (1900) | 1 | Under Rev.St. Art. 307 (Vernon's Ann.Civ.St. art. 568), providing that when a negotiable instrument has been assigned before its maturity for a valuable consideration without notice of any discount or defense against it, the assignee shall be compelled to allow only just discounts against himself, and which does not prescribe a mode of assignment, such an instrument is assigned when it is transferred from one to another, the form of the transfer, and whether written or verbal being immaterial. | But this is not the law in Texas, for it is provided in article 307, Sayles' Civ. St., that when a negotiable instrument has been assigned to a person before its maturity, for a valuable consideration, without notice of any discount or defense against it, then he shall be compelled to allow only just discounts against himself. The mode of assignment is not prescribed in the statute, and in the case of Word v. Elwood, 90 Tex. 130, 37 S. W. 414, it was held that "an instrument is assigned," within the meaning of this statute, when it is transferred from one to another. The form of the transfer, and whether written or verbal, are immaterial. | Is an instrument assigned when it is transferred from one to another? |
| 18283 | Mullen v. Morris, 2 Pa. 85, 87 (1845) | 4 | The indorser of a bill of exchange is liable for interest according to the law of the place on which it is drawn. | In this he was clearly right, for the law seems to be settled that interest is to be paid according to the law of the place where contracts are to be performed. | Is the rate of intrest on a bill of exchange set according to law of the place of its making? |
| 18291 | Thistle v. Jones, 45 Misc. 215, 218, 92 N.Y.S. 113, 115 (Co. Ct. 1904), rev'd, 123 A.D. 40, 107 N.Y.S. 840 (App. Div. 1907) | 5 | Under Real Property Law (Laws 1896, p. 592, c. 547) S 207, providing that an estate or interest in real property other than a lease for one year cannot be created unless by deed or conveyance in writing subscribed by the person creating or granting the same, deeds conveying lands, or leases thereof, may be signed and executed by the grantor or lessor only; and if accepted by the grantee or lessee, covenants contained therein must be kept by him. | By section 207 of the real property law (Laws 1896, p. 592, c. 547), an estate or interest in real property, other than a lease for a term not exceeding one year, cannot be created, unless by deed or conveyance in writing subscribed by the person creating or granting the same. Thus deeds conveying lands may be signed and executed by the grantor only, but, if accepted by the grantee, covenants contained therein must be kept by him. | "In the case of a deed-poll containing covenants to be performed by the grantee, is the grantee estopped from denying his covenants?" |

| | | | | | |
|---|---|---|---|---|---|
| 18303 | Dr. J. L. Stephens Co. v. United States, 203 F. 817, 819 (6th Cir. 1913) | 2 | An information for misbranding medicine shipped in interstate commerce, in violation of the Pure Food and Drugs Act, was not fatally defective for not alleging that the boxes or packages containing the bottles which were themselves alleged to have been misbranded were also misbranded; the word "package" meaning the package ultimately passing to the consumer, and the words "original unbroken package" relating to the package in the form received by the vendee or consignee. | As was said in the Hipolite Egg Co. Case, 220 U.S. 45 (31 Sup.Ct. 364, 55 L.Ed. 364), the object of the law is to keep adulterated and misbranded articles out of the channels of interstate commerce, and it is immaterial whether the medicine or prescription which was furnished by the defendant company was the mere incident of the employment, or its primary object. It is enough to know that the medicine or prescription was sent through the channels of interstate commerce, and misbranded, within the terms of the act. | Does the law forbid the introduction into a state or territory from another state or territory any article of food or drugs adulterated or misbranded within the meaning of the law? |
| 18308 | Grannis v. Stevens, 216 N.Y. 583, 111 N.E. 263 (1916) | | Act and intention are the essential constituents of a delivery which makes an instrument operative according to its terms. The final question is, Did the obligor do such act in reference to it as evidences an intention to give it, in the possession or control of the obligee, effect and operation according to its terms? | Krein's headnote not found using judicial opinion. | What is the essential ingredient of a delivery? |
| 18310 | Ryan v. May, 14 Ill. 49, 50 (1852) | 2 | The legal title to a note cannot be transferred by assignment by a separate instrument. | By our statute the legal title to a note cannot be transferred by a separate instrument in writing. | Can legal title to a note be transferred by a separate instrument in writing? |
| 18311 | Dwight v. Newell, 15 Ill. 333, 335 (1854) | 4 | One of several executors or administrators may assign a note made payable to the testator. | And one executor may assign a promissory note made payable to the testator. | Can an executor assign a promissory note payable to his intestate? |
| 18315 | Koelling v. Wachsning, 174 Ill. App. 321, 322 (Ill. App. Ct. 1912) | 3 | In action on appeal bond, defendant could not question by plea, validity of judgment, existence of which was admitted by recitals in bond, he executed and which were set out in declaration; in such a case the principal of estoppel is clearly applicable and rightly insisted on by demurrer. | The defendant could not question by plea the validity of a judgment, the existence of which was admitted by recitals in the bond he executed and which were set out in the declaration. | Are obligors estopped to deny the recitals of the bond? |
| 18316 | Gochenour v. Mowry, 33 Ill. 331, 333 (1864) | 2 | A subsequent purchaser from a mortgagor under his after-acquired title is estopped if he had notice. | And a subsequent purchaser from the mortgagor under his after acquired title is also estopped, if he had notice. | Is a subsequent purchaser from a mortgagor under his after acquired title estopped if he had notice? |
| 18328 | Haywood v. Ryan, 85 N.J.L. 116, 116 (1913) | 2 | Act Concerning Disorderly Persons, S 3, applies only to such persons as shall by their act obstruct or interfere with the movement of persons lawfully on the street. | Syllabus by the Court The mere fact that a person, walking along a public street in a peaceable and quiet manner, is followed by a crowd of people, is not sufficient to justify his conviction of being a disorderly person upon the ground that he obstructed and interfered with persons lawfully upon such street, as provided in section 3 of 'An Act Concerning Disorderly Persons.' The statute mentioned applies only to such persons as shall by their acts intentionally obstruct or interfere with the movement of persons lawfully on a street, and therefore when the proof is limited to the fact that a person, while quietly walking on a street, is followed by a crowd, it will not support his conviction of being a disorderly person, under such statute. | Will a person who obstructs a person lawfully in a public place be deemed a disorderly person? |
| 18329 | Haywood v. Ryan, 85 N.J.L. 116, 116 (1913) | 2 | Act Concerning Disorderly Persons, S 3, applies only to such persons as shall by their act obstruct or interfere with the movement of persons lawfully on the street. | Syllabus by the Court The mere fact that a person, walking along a public street in a peaceable and quiet manner, is followed by a crowd of people, is not sufficient to justify his conviction of being a disorderly person upon the ground that he obstructed and interfered with persons lawfully upon such street, as provided in section 3 of 'An Act Concerning Disorderly Persons.' The statute mentioned applies only to such persons as shall by their acts intentionally obstruct or interfere with the movement of persons lawfully on a street, and therefore when the proof is limited to the fact that a person, while quietly walking on a street, is followed by a crowd, it will not support his conviction of being a disorderly person, under such statute. | Will a person who interferes with person lawfully in public place be deemed a disorderly person? |

| | | | | | |
|---|---|---|---|---|---|
| 18330 | Haywood v. Ryan, 85 N.J.L. 116, 116 (1913) | 2 | Act Concerning Disorderly Persons, S 3, applies only to such persons as shall by their act obstruct or interfere with the movement of persons lawfully on the street. | Syllabus by the Court The mere fact that a person, walking along a public street in a peaceable and quiet manner, is followed by a crowd of people, is not sufficient to justify his conviction of being a disorderly person upon the ground that he obstructed and interfered with persons lawfully upon such street, as provided in section 3 of 'An Act Concerning Disorderly Persons' (2 Comp. St. 1910, p. 1927). The statute mentioned applies only to such persons as shall by their acts intentionally obstruct or interfere with the movement of persons lawfully on a street, and therefore when the proof is limited to the fact that a person, while quietly walking on a street, is followed by a crowd, it will not support his conviction of being a disorderly person, under such statute. | Is a person who obstructs a person lawfully in public place is a disorderly person? |
| 18331 | Haywood v. Ryan, 85 N.J.L. 116, 116 (1913) | 2 | Act Concerning Disorderly Persons, S 3, applies only to such persons as shall by their act obstruct or interfere with the movement of persons lawfully on the street. | Syllabus by the Court The mere fact that a person, walking along a public street in a peaceable and quiet manner, is followed by a crowd of people, is not sufficient to justify his conviction of being a disorderly person upon the ground that he obstructed and interfered with persons lawfully upon such street, as provided in section 3 of 'An Act Concerning Disorderly Persons.' The statute mentioned applies only to such persons as shall by their acts intentionally obstruct or interfere with the movement of persons lawfully on a street, and therefore when the proof is limited to the fact that a person, while quietly walking on a street, is followed by a crowd, it will not support his conviction of being a disorderly person, under such statute. | Is a person who interferes with a person lawfully in a public place a disorderly person? |
| 18333 | McKay v. Meyer, 103 Wash. 270, 272 (1918) | 2 | An executory contract for sale of land may be rescinded by mutual consent. | An executory contract for the sale of land may be rescinded by mutual consent. | Can an executory agreement for the sale of land or real estate be rescinded or abrogated by oral rescission or agreement? |
| 18337 | Lapham v. Green, 9 Vt. 407, 409 (1837) | 2 | In contracts, made by agents, without disclosing the principal, the suit to enforce them, may be in the name of the principal or agent. | If an agent do not disclose his principal, the suit may be brought in the name of either. | Who can bring suit for the breach of a contract made when an agent did not disclose his principal? |
| 18338 | Graham v. Insurance Co., 176 N.C. 313, 316 (1918) | 8 | Where one deals with an agent, it behooves him to ascertain correctly the extent of the agent's authority and power to contract. | "When one deals with an agent it behooves him to ascertain correctly the extent of his authority and power to contract." | "Is the principal at the mercy of his agent, however carefully he might limit his authority?" |
| 18340 | Fawsett v. Nat'l Life Ins. Co. of U.S., 97 Ill. 11, 13 (1880) | 3 | The payee of a note indorsed it in blank. The transferee filled up the blank, making the note payable to a bank (without the words "or order") for collection on his account. The bank, failing to collect, returned it to him, indorsed by its cashier, "Without recourse." He then reindorsed and retransferred it to the plaintiff. Held, that the indorsement to the bank written over the payor's signature did not affect the note's negotiability. | An indorsement of a note for collection, or for account of another, is restrictive, and suspends the negotiability of the note while it remains upon it. | Does an indorsement for collection suspends or destroys the negotiability of the note? |
| 18354 | Nat'l State Bank of Mt. Pleasant, Iowa, v. Ricketts, 152 S.W. 646, 649 (Tex. Civ. App. 1912) | 1 | Under Rev.Civ.St.1911, art. 583 (Vernon's Ann.Civ.St. art. 569), permitting the assignee of negotiable instruments to maintain any action in his own name which the original payee might have brought, upon allowing all just discounts, etc., a negotiable note may be assigned either verbally or in writing; indorsement not being necessary. | Under our statutes and the decisions of the courts of this state, it is not necessary that there be an indorsement of a negotiable note to pass the title to the same; but such assignment may be verbal or in writing. Revised Statutes 1911, art. 583; Wood v. Elwood, 90 Tex. 130, 37 S. W. 414; Bank of Commerce v. Kenney, 98 Tex. 293, 83 S. W. 368 | Is an indorsement of the note necessary for an assignment? |
| 18355 | Dwight v. Newell, 15 Ill. 333, 335 (1854) | 1 | One of several executors or administrators may assign a note made payable to the testator. | And one executor may assign a promissory note made payable to the testator. | Can a promissory note be assigned by the executor or administrator? |
| 18358 | Mullen v. Morris, 2 Pa. 85, 85 (1845) | 4 | The indorser of a bill of exchange is liable for interest according to the law of the place on which it is drawn. | Endorser is liable for interest on a bill according to the law of the place on which it is drawn. | According to which law is an endorser liable for interest on the bill? |

| | | | | | |
|---|---|---|---|---|---|
| 18382 | Pollock v. Jones, 124 F. 163, 164 (4th Cir. 1903) | 5 | Under the law of South Carolina, a partner cannot bind his firm by a sealed obligation or conveyance without the authority of ratification of his copartner. | There can be no doubt that under the law of South Carolina a sealed note given by one member of a firm creates no obligation against the firm, unless the partner so signing and sealing has authority from his copartner at the time to do the act, or unless when the act is brought to the knowledge of the other partner he acknowledges it or ratifies and confirms it. | Does a sealed note given by a member of a firm creates obligation against the firm? |
| 18390 | Kingan & Co. v. Silvers, 13 Ind. App. 80, 37 N.E. 413, 416 (1894) | 2 | Legal difference between agent and servant is that agency imports commercial dealing between two parties through another, while service refers to actions on and concerning things and deals with matters of manual or mechanical execution. | Agency, properly speaking, relates to commercial or business transactions, while service has reference to actions upon and concerning things. | Does service have reference to actions concerning things? |
| 18397 | Pittsburgh Steel Co. v. Hollingshead & Blei, 202 Ill. App. 177, 181 (Ill. App. Ct. 1916) | 9 | Presentment for payment was necessary in order to hold defendant as an indorser of draft. S.H.A. ch. 98, S 91. | Presentment for payment was necessary in order to hold the defendant as an indorser. Illinois Rev. St. ch. 98, sec. 70 | Is presentment of bill of exchange for payment necessary to hold a person as an indorser? |
| 18401 | Gulf Ref. Co. v. Cleveland Tr. Co., 166 Miss. 759, 108 So. 158, 158 (1926) | 3 | Franchises of corporation are corporate or general franchises, which are franchises to exist as corporation, and special or secondary franchise, which are certain rights conferred on existing corporations. | The franchises of a corporation are divisible into (1) corporate or general franchises; and (2) "special or secondary franchises." | What are general and secondary franchises? |
| 18402 | Raynor v. New York & L.I. Traction Co., 86 Misc. 201, 207, 149 N.Y.S. 151, 155 (Co. Ct. 1914) | 9 | Where the language of a franchise is ambiguous, it will be construed against the grantee and in favor of the public, but, where free from ambiguity, the court will give the language used its ordinary and accepted meaning. | No doubt the rule of construction that in franchises the grantees are to take only what is clearly granted, and the they shall take nothing by implication which is not necessary for the full and fair enjoyment of the thing granted, has application only to a franchise whose terms are ambiguous and from which it is attempted to spell out privileges or rights not within the ordinary meaning of the words used. In such case the instrument must be construed against the grantee and in favor of the public. | How are franchises construed when ambiguous? |
| 18409 | Jones v. Anheuser-Busch Brewing Ass'n, 189 S.W. 631, 633 (Mo. App. 1916) | 2 | All the partners are necessary parties to a suit for settlement and accounting of partnership affairs. | It is said in 1 Standard Ency. of Procedure, p. 285: "In a suit brought to settle a partnership and for an accounting with reference to its affairs, all the partners are necessary parties." | Are all partners necessary parties to an action for a partnership accounting? |
| 18420 | Wooley v. Lyon, 6 N.E. 885, 886–87 (Ill. 1886) | 3 | Notice and protest of negotiable paper is governed, in case of conflict, by laws of place where instrument is payable. | The notes being payable in this state, and the contract of indorsement being made in Michigan, and the indorser residing there, the law of the place where the notes were payable we consider governed as to time and mode of presentment for payment, manner of protests, and giving notice. 2 Pars. Notes & Bills, 344, 345; 1 Daniel, Neg. Inst. §§ 911, 912; Rothschild v. Currie, 1 Adol. & E. (N. S.) 43; Hirschfeld v. Smith, L. R. 1 C. P. 350. There is a conflict of authority as to what law should govern in the giving of notice of dishnor,—whether the law of the place of payment or the law of the place where the indorsement is made. Aymar v. Sheldon, 12 Wend. 439, and some other American cases, hold the notice should be according to the law of the place of the indorsement; and see Redf. & B. Lead. Cas. Bills & Notes, 712, in note to above case of Aymar v. Sheldon. We are disposed to adopt the rule that the notice should be in accordance with the law of the place where the bill or note is made payable, as resting upon the better reason. | "Does the law of the place a note is payable govern the time and mode of payment, manner of protest and giving notice?" |

| | | | | | |
|---|---|---|---|---|---|
| 18423 | Quinn v. Rike, 194 P. 761, 761-62 (Cal. App. 1st Dist. 1920) | 1 | Defendant payee of a note negotiable in form, but nonnegotiable because secured by deed of trust to a trust company, transferred it for valuable consideration, the transfer being by writing on the back reading that for value received it transferred and assigned to plaintiff all its right, title, and interest in and to the within note, together with all rights under the deed of trust securing it, so far as it related to the note, and waived presentment, demand, and notice of protest. Held, that defendant's intent to become liable as indorser was clearly expressed. | There is no dispute as to the facts: In January, 1916, the defendant N. C. Rike executed and delivered to her codefendant, Ceres Land Company, a promissory note, negotiable in form, in the sum of $2,000. For the purpose of securing payment of the same she made and executed a deed of trust to a certain title insurance and trust company. The note was therefore nonnegotiable. Metropolis Trust & Sav. Bank v. Monnier, 169 Cal. 592, 147 Pac. 265. At the time of the execution of the note here sued upon the land and premises described in the deed of trust was subject to a prior incumbrance of $11,000. Thereafter, and before the maturity of the note here involved, the Ceres Land Company, for a valuable consideration, transferred the note to plaintiff, J. E. Quinn, which was evidenced by a writing on the back thereof, in the following language:<br>"Los Angeles, Cal., March 15, 1918.<br>"For value received I hereby transfer and assign to J. E. Quinn all my right, title, and interest in and to the within note, together with all rights accrued to or to accrue under the deed of trust securing the same so far as the same relates to this note, and hereby waive presentment, demand, and notice of protest.<br>"Ceres Land Company,<br>"By G. C. Harbolt, President."<br>Subsequent to this transfer the first incumbrance upon the premises described in the deed of trust was foreclosed, and by reason thereof the security of the note here involved became valueless. Plaintiff thereupon brought this action and recovered judgment against the Ceres Land Company as an indorser, and this is an appeal from such judgment.<br>Defendant company contended at the trial, and does here, that the indorsement by it was one without recourse upon which no liability as | Can the assignment by the payee of a promissory note of all his interest in the note be a qualified indorsement? |
| 18435 | Providence Bank v. Billings and Pittman, 29 U.S. 514, 561 (1830) | 16 | The taxing power is of vital importance and is essential to the existence of government. | **8 That the taxing power is of vital importance; that it is essential to the existence of government; are truths which it cannot be necessary to reaffirm. | Is the taxing power essential to the existence of government? |
| 18436 | Providence Bank v. Billings and Pittman, 29 U.S. 514, 561 (1830) | 16 | The taxing power is of vital importance and is essential to the existence of government. | **8 That the taxing power is of vital importance; that it is essential to the existence of government; are truths which it cannot be necessary to reaffirm. | Is the taxing power a vital importance to the government? |
| 18437 | Heine v. the Levee Commissioners, 86 U.S. 655, 660-661 (1873) | 5 | The power of taxation belongs to the legislative sovereignty, state or national. | The power we are here asked to exercise is the very delicate *661 one of taxation. This power belongs in this country to the legislative sovereignty, State or National. | Does the power of taxation belong to legislative sovereignty? |
| 18441 | Remsnider v. Union Sav. & Tr. Co., 154 P. 135, 137 (Wash. 1916) | 2 | Where neither the work of a janitor in an office building nor work about an elevator shaft had been classified as extrahazardous by the Industrial Insurance Department as authorized by Workmen's Compensation Act, S 2, an injury to a person engaged in such employment is not governed by the statute. | But neither the work of a janitor in an office building nor working in or about an elevator shaft has yet been classified by the department as extrahazardous, nor has any rate of contribution been fixed as provided in the clause quoted. In the recent case of Guerrieri v. Industrial Insurance Commission, 84 Wash. 266, 146 Pac. 608, after another careful analysis of the statute, we held that one who was employed in operating a passenger or freight elevator or lift in a mercantile establishment was not engaged in a extrahazardous employment within the meaning of the statute. That decision by plain inference is contrary to the appellant's contention here. Respondent was not engaged in an extrahazardous work within the meaning of the act. Though section 2 points out that 'there is a hazard in all employments,' it provides statutory compensation only for injuries received in employments recognized as 'inherently and constantly dangerous' and which it enumerates as extrahazardous. | Does the Workmen's Compensation Act provide compensation for injuries from employments recognized as inherently and constantly dangerous? |

| | | | | | |
|---|---|---|---|---|---|
| 18443 | Wooley v. Lyon, 6 N.E. 885, 886–87 (Ill. 1886) | 3 | Notice and protest of negotiable paper is governed, in case of conflict, by laws of place where instrument is payable. | The notes being payable in this state, and the contract of indorsement being made in Michigan, and the indorser residing there, the law of the place where the notes were payable we consider governed as to time and mode of presentment for payment, manner of protests, and giving notice. 2 Pars. Notes & Bills, 344, 345; 1 Daniel, Neg. Inst. §§ 911, 912; Rothschild v. Currie, 1 Adol. & E. (N. S.) 43; Hirschfeld v. Smith, L. R. 1 C. P. 350. There is a conflict of authority as to what law should govern in the giving of notice of dishonor,—whether the law of the place of payment or the law of the place where the indorsement is made. Aymar v. Sheldon, 12 Wend. 439, and some other American cases, hold the notice should be according to the law of the place of the indorsement; and see Redf. & B. Lead. Cas. Bills & Notes, 712, in note to above case of Aymar v. Sheldon. We are disposed to adopt the rule that the notice should be in accordance with the law of the place where the bill or note is made payable, as resting upon the better reason. | "Does the law of the place where notes are payable govern the time and mode of payment, manner of payment, protest and giving notice?" |
| 18450 | City of Buffalo v. Stevenson, 207 N.Y. 258, 263, 100 N.E. 798, 800 (1913) | 6 | The distinction between the taxing power and the police power is to be found in the purpose for which the particular power is exercised. | The distinction between the taxing power and the police power will be found in the purpose for which the particular power is exercised. | Is there a distinction between the taxing power and the police power? |
| 18451 | Madary v. City of Fresno, 20 Cal. App. 91, 97, 128 P. 340, 343 (Cal. Ct. App. 1912) | 12 | "Taxes" are enforced contributions levied for public needs, and the needs of the government constitute the occasion and the limitation of the taxing power. | "Cooley's definition of taxes as 'enforced contributions levied for public needs' states concisely both the nature and illimitation of taxes. Taxes are the property of the citizens demanded and taken by the government to enable it to discharge its functions. In his work on Tax Titles, Blackwell defines taxes as 'burdens imposed by the legislative power upon persons or property to raise money for public purposes.' The needs of the government constitute then both the occasion and limitation of the taxing power. | What constitutes both the occasion and limitation of the taxing power? |
| 18452 | Waterhouse v. Bd. of Cleveland Pub. Sch., 68 Tenn. 398, 400 (1876) | 1 | The power of taxation belongs to the State in its sovereign capacity. The exercise of the power is legislative. The legislature has no authority to delegate this power except in such cases as the constitution authorizes. | The power of taxation is one that belongs to the State in its sovereign capacity. The exercise of the power is legislative. The legislature has no authority to delegate this power of taxation, except in such cases as the constitution authorizes. | When can the legislature delegate the power of taxation? |
| 18457 | Campbell v. Nichols, 33 N.J.L. 81, 82–83 (N.J. Sup. Ct. 1868) | 4 | A note made to the order of the maker, signed in New Jersey, and first delivered from the possession of the maker in New York, is, in contemplation of law, made in the latter jurisdiction. | The note which forms the subject of this controversy, was put into writing and was signed in this state, but it was passed away and came first into legal existence in the state of New York: in contemplation of law, therefore, it was made in this latter jurisdiction. But although thus made in New York it was, by its terms, payable in New Jersey, and, consequently, in the absence of an expression of a different intention, is to be regulated, with respect to the law of interest, by the statutes of the latter state. | What states law governs a note that is drawn in one state but is brought into existence in another state? |
| 18474 | Rivers v. Thomas, 69 Tenn. 649, 657 (1878) | 1 | One who indorses a past-due note at the request of the maker, pursuant to a contract with the payee for further indulgence, is liable as guarantor. | Justice Clifford says that if the endorsement be subsequent to the making of the note, at the request of the maker, pursuant to a contract with the payee for further indulgence, the endorser is liable as guarantor. | Can an endorser of a note be held liable as a guarantor? |
| 18509 | Alexandria Canal Co. v. Swann, 46 U.S. 83, 1847 WL 5987, at *1 (1847) | 6 | In an action by a corporation, it is immaterial whether the power to submit a case for arbitration is lodged in the president and directors, or in the stockholders assembled in general meeting, for the entire corporation is represented in court by its counsel, whose acts in conducting the suit and in consenting to a reference are presumed to be authorized by the party. | It is immaterial whether the power of reference is lodged in the president and directors or in the stockholders assembled in general meeting; for the entire corporation is represented in court by its counsel, whose acts, in conducting the suit, are presumed to be authorized by the party. | Is trial by arbitrators a mode of prosecuting a suit to judgment? |

| | | | | | |
|---|---|---|---|---|---|
| 18526 | Pollock v. Jones, 124 F. 163, 164–66 (4th Cir. 1903) | 5 | Under the law of South Carolina, a partner cannot bind his firm by a sealed obligation or conveyance without the authority of ratification of his copartner. | There can be no doubt that under the law of South Carolina a sealed note given by one member of a firm creates no obligation against the firm, unless the partner so signing and sealing has authority from his copartner at the time to do the act, or unless when the act is brought to the knowledge of the other partner he acknowledges it or ratifies and confirms it. The evidence in this case shows that Jones never knew of the execution of the note or of mortgage until after the death of Duff, and that he never acknowledged, assented to, or ratified it, although both Duff and Pollock had frequent opportunity of informing him of the transaction. This act of Duff, being unauthorized, did not bind the firm. | Does a seal noted given by a member of a firm creates obligation against the firm? |
| 18527 | State v. Steger, 119 S.E. 682, 683 (W. Va. 1923) | 2 | The use of profane and insulting language by a landowner to a person who is apparently about to trespass on his farm, unaccompanied by threats and causing no fear of personal violence, is not a breach of the peace at common law, and an indictment therefor which does not aver an actual breach of the public peace by the use of the words, is demurrable. | Was abusive and insulting language a breach of the peace at common law? We do not find that it was, unless the use of the language had a tendency to provoke a conflict or a tumult. It is laid down in 9 C. J. p. 388, that-- "Unless so provided by statute, abusive and insulting language will not constitute a breach of the peace, where there is no threat of, or incitement to, immediate violence. Where, however, it has a tendency to create a tumult and provoke a conflict, and especially when denounced by statute or ordinance, the use of such language may constitute an offense, although the other elements mentioned are absent." We can see no threat of violence in the language charged to the defendant in this indictment; and, being 500 yards away, we cannot see that it was provocative of any immediate affray. | Whether the use of abusive language in a public place amounts to breach of the peace? |
| 18533 | Palmer v. Poor, 22 N.E. 984, 985 (Ind. 1889) | 11 | Where an old, infirm and ignorant person was induced by means of a fraudulent conspiracy, and threatened violence, to sign a promissory note, which, immediately after being signed, was snatched up and carried away against his will, there was no delivery of the note. Delivery is a part of the execution of a promissory note, and until delivered is destitute of force. | The defendant was then at his house, on his farm, no one with him but his wife, and she, as was the defendant himself, was old, feeble, and ill. The defendant, through fear of violence, signed his name to the note as he was ordered to do. As soon as it was signed Clark snatched it up, and, against the will of the defendant, carried it away. The defendant demanded the return of the note, but Clark hurried from the house with it. No paint was ever delivered to the defendant, and he never received anything of value from the payee of the note or his confederates. The answer shows a fraudulent conspiracy, and shows, also, that by a cunningly devised scheme the confederates secured the defendant's signature to the note, and it is therefore unquestionably sufficient, irrespective of the allegations of force and violence. It would be good even if it did not show that the appellant was a conspirator, participating in the fraud; for it is well-settled by our decisions that, where a note is obtained by fraud, the holder cannot recover upon it unless he shows that he bought it before maturity without notice, and that he paid value for it. Giberson v. Jolley, ante, 306, (this term;) New v. Walker, 108 Ind. 365, 9 N. E. Rep. 386; Eichelberger v. Bank, 103 Ind. 402, 3 N. E. Rep. 127; Scotten v. Randolph, 96 Ind. 581; Mitchell v. Tomlinson, 91 Ind. 167; Coffing v. Hardy, 86 Ind. 369; Baldwin v. Barrows, Id. 351; Baldwin v. Fagan, 83 Ind. 447; Zook v. Simonson, 72 Ind. 83; Harbison v. Bank, 28 Ind. 133; Smith v. Association, 93 Pa. St. 19; Munroe v. Cooper, 5 Pick. 412. The answer contains one paragraph, duly verified, denying the execution of the note, and under this paragraph it was competent to prove that the note was altered after it had been signed, as well as that it was not delivered. The evidence that there was a material alteration of the note is strong and satisfactory, but so is the evidence that the appellant bought for value, before | Is delivery a part of the execution of a note? |
| 18568 | Drake Med. Co. v. Glessner, 67 N.E. 722, 727 (Ohio 1903) | 2 | The right to protection in the use of a name as a trade-mark will pass by assignment. | The name of the inventor or original maker of an article of traffic, if not used in a way which would be likely to deceive or defraud, will be protected as a trade-mark, and the right to use such trade-mark, and to be protected therein, will pass by assignment. | Do right to trade-marks pass by assignment? |

| | | | | | |
|---|---|---|---|---|---|
| 18569 | Mathews Slate Co. of New York v. Advance Indus. Supply Co., 185 A.D. 74, 77, 172 N.Y.S. 830, 832 (App. Div. 1918) | 3 | "Easements in gross" are always personal, and never inheritable, but "profits ? prendre in gross" may be both inheritable and assignable. | It seems to me that he loses sight of the fact that Ensign might have other heirs or assigns than the heirs and assigns of his farm, and that he fails to note an important distinction between easements and profits à prendre. The existence of the former generally implies the existence of a dominant and a servient estate. Although easements may in some instances be created to be held in gross, yet such easements are always personal, and never inheritable or assignable. On the other hand, profits à prendre in gross may be both inheritable and assignable. | Are easements in gross assignable? |
| 18571 | Bardin v. Grace, 52 So. 425, 426 (Ala. 1910) | 2 | A deed without a grantee named therein is void, and if the grantor signs a deed, leaving the space for the name of the grantee blank, and authorizes some one as his agent to fill in the name of the grantee, and that person fills it in with the name of the designated grantee, the deed will be valid; but, if the blank is filled with the name of another, it is void. | A deed without a grantee named therein is void. It is true that there are authorities to the effect that if a person signs a deed in which the space for the name of the grantee is blank, and authorizes some one as his agent to fill in the name of the grantee, and that person does fill it in with the name of the designated grantee, the deed will be valid. Allen v. Withrow, supra. But in this case there was no such agreement. Sandy thought he was selling to Shreve, and the deed was in fact taken by a man of straw, and subsequently filled in by the name of a man unknown to the grantor. It was consequently void, and the subsequent purchaser is not protected. | Is a deed without a naming a grantee void? |
| 18606 | Young v. United States, 97 U.S. 39, 62, 24 L. Ed. 992 (1877) | 2 | "Treason" is a breach of allegiance and can be committed by him only who owes allegiance either perpetual or temporary. | But there may be aid and comfort without treason; for 'treason is a breach of allegiance, and can be committed by him only who owes allegiance, either perpetual or temporary.' | Does element of treason include the breach of allegiance? |
| 18608 | F. H. Stoltze Land Co. v. Westberg, 63 Mont. 38, 44 (Mont. 1922) | 1 | No particular words or form of expression are necessary to constitute a lease; any language by which the possession and enjoyment of land is granted for a specified time at a stipulated rental being sufficient. | No particular words, technical or otherwise, or form of expression in an instrument are necessary to constitute it a lease. Any language by which the possession and enjoyment of land is granted for a specified time at a stipulated rental creates a tenancy, and is in effect a lease. | Are particular set of words required to constitute a lease? |
| 18619 | United States v. Wong Kim Ark, 169 U.S. 649, 693, 18 S. Ct. 456, 473–74, 42 L. Ed. 890 (1898) | 5 | The fourteenth amendment affirms the ancient rule of citizenship by birth within the territory in the allegiance and under the protection of the country, including all children here born of resident aliens, except the children of foreign sovereigns or their ministers, or born on foreign public ships, or of enemies during a hostile occupation, and children of Indian tribes owing direct tribal allegiance. It includes the children of all other persons, of whatever race or color, domiciled within the United States. | The fourteenth amendment affirms the ancient and fundamental rule of citizenship by birth within the territory, in the allegiance and under the protection of the country, including all children here born of resident aliens, with the exceptions or qualifications (as old as the rule itself) of children of foreign sovereigns or their ministers, or born on foreign public ships, or of enemies within and during a hostile occupation of part of our territory, and with the single additional exception of children of members of the Indian tribes owing direct allegiance to their several tribes. The amendment, in clear words and in manifest intent, includes the children born within the territory of the United States of all other persons, of whatever race or color, domiciled within the United States. | Can an alien be prosecuted for treason? |
| 18625 | Boswell v. Green, 25 N.J.L. 390, 395–96 (N.J. Sup. Ct. 1856) | 6 | Each partner in a firm has entire control over the personal property of the partnership; and a sale by either of the partners, even if fraudulent as to creditors, to a purchaser not cognizant of the fraud, binds the firm. | Each partner has an entire control over the personal property of the partnership. For the purpose of selling the effects, and paying partnership debts, he is considered the authorized agent of the firm. If he acts fraudulently, or in violation of any agreement or term of the partnership, and the party with whom he deals is cognizant of the fact, courts will interfere and give relief; but there does not appear to have been any fraud or any excess of authority in this transaction. The effect of it was simply to prefer, so far as the coal would go, the creditor from whom it had been purchased. | Do the partners of a firm have control over the property of the partnership? |

| ID | Citation | Num | Rule | Full Text | Question |
|---|---|---|---|---|---|
| 18644 | Republica v. McCarty, 2 U.S. 86, 87 (1781) | 1 | Enlisting in the service of an enemy is clearly treason, and nothing will excuse such act but the fear of immediate death. | Inlisting, or procuring any person to be enlisted, in the service of the enemy, is clearly an act of treason. By the defendant's own confession it appears, that he actually enlisted in a corps belonging to the enemy; but, it also appears, that he had previously been taken prisoner by them, and confined at Wilmington.He remained, however, with the British troops for ten or eleven months, during which he might easily have accomplished his escape; and it must be remembered, that, in the eye of the law, nothing will excuse the act of joining an enemy, but the fear of immediate death; not the fear of any inferior personal injury, nor the apprehension of any outrage upon property. | Is enlisting in the service of an enemy an act of treason? |
| 18645 | Shellabarger v. Morris, 115 Mo. App. 566, 91 S.W. 1005, 1005 (1905) | 4 | One maliciously annoying another by means of loud noises, consisting of pounding on tin pans, etc., and thereby injuring the health and business of the latter, is guilty of trespass and liable for the injuries sustained. | The second alleges that defendant, willfully, and maliciously, annoyed, worried, and disturbed plaintiff by loud noises, by screaming, by beating on tin pans, fences, and iron, in consequence of which she was made nervous, and her health was so affected that she could not successfully carry on her business of hand painting and wood carving. | Can an action for trespass be instituted against someone who maliciously annoys another? |
| 18674 | United States v. Arredondo, 31 U.S. 691, 31 (1832) | 24 | Under Spanish law, the acts of the king were not in subordination to the laws of the country. | **10 The principle that the acts of a king are in subordination to the laws of the country, applies only where there is any law of higher obligation than his will; the rule contended for may prevail in a British, certainly not in a Spanish province. | Are acts of a king in subordination to the laws of a country? |
| 18689 | Molina v. Comision Reguladora del Mercado de Henequen, 92 N.J.L. 38, 40, 104 A. 450, 451 (Sup. Ct. 1918) | 2 | A government which has sequestered property occupies to it the position of custodian only. | Where a government has sequestered property, no doubt it also may order a sale. But speaking generally, the position of sequestrators is that of custodians only. | Can a government which sequestered property occupy to it the position of custodian only? |
| 18693 | City of Trinidad v. Hokasona, 178 F. 438, 440 (C.A.8 1910) | 1 | An action begun before the accrual or maturity of the demand is premature and should be dismissed. | An action begun before the accrual or maturity of the demand is premature and should be dismissed. | Can an action begin before the accrual or maturity of the demand? |
| 18724 | Flanagin v. Hambleton, 54 Md. 222, 227 (Md. 1880) | 8 | The word "renewal" has no legal, or strictly technical signification. | The word "renewal" has no legal or strictly technical signification. | Does the word renewal have any legal or technical signification? |
| 18727 | Fendall v. D.C., 16 Ct. Cl. 106, 117 (1880) | 5 | Congress created a territorial government for the District of Columbia, and authorized it to make assessments for sewers upon the property adjoining. A tax, therefore, was levied upon property, for this purpose, by the territorial government, and, in advance of its collection, the board of public works issued certificates of indebtedness, secured by the assessments. These were received by third persons for value, and, while thus outstanding, congress abolished the government, and prohibited the collection of assessments, and afterwards conferred jurisdiction upon the court of claims to entertain actions for the settlement of all outstanding claims. Held, that the holders of these certificates were entitled to judgments for their amounts, not, however, in money, but in 3.65 bonds, as specified in the act. | This certifies that for work done under direction of the board of public works, and chargeable to the private property adjoining and benefited thereby, there is due to the bearer five hundred dollars, payable July 1st, 1874, with eight per centum interest, payable semi-annually as per coupons attached. Issued in accordance with act of legislative assembly, secured by pledge to the commissioners of the sinking fund of assessments made in accordance with act approved June 26, 1873, against private property benefited by improvements, and receivable in payment of such certificates. | What is the interest rate on certificates of assessment? |
| 18732 | Watson v. Watson, 9 Haw. 389, 391 (1894) | 2 | When a discontinuance of a suit will result in injury to any of the parties, it is not allowable, and where each of parties has an interest in the verdict, court will not grant leave to discontinue against objections. | When a discontinuance would result in injury to any of the parties, it is not allowable.  In Estell vs. Franklin, 29 N. J. L, 264, it was held that where both parties are actors and each has an interest in the verdict, the court will not grant leave to discontinue against objections. | "When a discontinuance of a suit will result in injury to any of the parties, is it allowable?" |

| 18733 | Damp v. Town of Dane, 33 Wis. 430, 434 (1873) | 4 | As a rule, the plaintiff in an action has an undoubted right to discontinue it. | The plaintiff had an undoubted right to discontinue his action, and the court ordered it discontinued upon his suggestion contained in the motion to offset the costs. There was therefore no error in that portion of the order. McLeod v. Bertschy, 33 Wis. 176. It is in the sound discretion of the court to grant or refuse leave to interpose a supplemental pleading. Were it otherwise, the statute would not require an application for leave to do so to be made to the court. R. S., ch. 125, sec. 41. | "As a rule, does the plaintiff in an action have an undoubted right to discontinue it?" |
| 18771 | Glenn v. Hunt, 120 Mo. 330, 25 S.W. 181, 183 (1894) | 5 | It is not necessary that interrogatories be annexed to the commission, under Rev.St.1889, S 4439, authorizing the officer to whom the commission is directed to examine the witness "touching his knowledge of anything relating to the matter in controversy." | The commission is the only authority necessary to empower the officer to examine such witnesses as may be named by the party "suing for the same." That the examination may be general, and not confined to interrogatories, is apparent from the language of section 4439, which authorizes the officer to examine the witness "touching his knowledge of anything relating to the matter in controversy." Another section of the statute (4448) makes provision for obtaining from the court, or the judge thereof in vacation, a special commission, which requires that notice of the application shall be given the adverse party, and that interrogatories be annexed to such commission, but plaintiff did not proceed under this section of the statute. | Is it necessary that interrogatories be annexed to the commission? |
| 18777 | Scott v. Bullion Min. Co., 2 Nev. 81, 85 (1866) | 1 | A new trial will be granted when a second deposition is excluded, because one deposition of the same witness about the same subject-matter has been taken, unless it is shown that the first contained a complete examination, and that there was no legal objection to its being used. | If the first depositions were full and complete, covering all the points in the case, and there was no legal objection to their being used on the trial, it would have been proper for the court to reject the second depositions and allow the first to be used; although the better practice in such cases would be to appear and object to the issuance of the second commission. In this case, had it been shown that the first depositions contained a full and complete examination of the witnesses, and that there was no legal objection to their being used, we could not say that the court below erred in ruling out the second depositions. | Can a Court grant or reject the second depositions? |
| 18780 | Johnson v. Frisbie, 15 Mich. 286, 290 (1867) | 1 | A promissory note, made in Michigan and payable "with current rate of exchange on New York," is a negotiable instrument. | The question presented is, whether the addition of the words "with exchange on New York," deprives the note of its negotiable character, and whether the plaintiff in error can be held as indorser of such notes. This question came fairly before this court in the case of Smith v. Kendall, reported in 9 Mich., 241, and the negotiable character of the paper was sustained. | "If a note is made payable in exchange, does it destroy its negotiability or prevent it from being a promissory note?" |
| 18789 | Van Zandt v. Hopkins, 151 Ill. 248, 252, 37 N.E. 845, 846 (1894) | 1 | A memorandum written on a note below the signature at the time of its execution is part of the note. | There seems to be no substantial conflict in the authorities that a memorandum either after the signature to a bill or note, indorsed on the back, or written on the margin, 'contemporaneously with the execution of the instrument, and by agreement of the parties, will form a part of their contract, and bind them the same as if introduced into the body of the instrument.'See Corgan v. Frew, 39 Ill. 31, as recognizing the rule that a memorandum on the margin becomes a part of the instrument. | Is a memorandum written contemporaneously with the execution of the note form a part of the contract? |
| 18799 | Carlton & Manning v. Coffin, 27 Vt. 496, 498 (Vt. 1854) | 3 | Evidence of general reputation is not admissible to prove a partnership. | It appears from the cross-examination of the witness, that the only knowledge he had of the existence of a partnership between the defendants, was derived from general reputation. We think this is not competent evidence to prove a partnership. | Is general reputation admissible as evidence to prove partnership? |

| | | | | | |
|---|---|---|---|---|---|
| 18806 | Potter v. Tucker, 11 Ala. App. 466, 469 (Ala. Ct. App. 1914) | 5 | Date in general is not essential to a bill or note; if there be no date it will be considered as dated at the time it was made. | "Date in general is not essential to a bill or note. If there be no date, it will be considered as dated at the time it was made." | Is date an essential requisite of a promissory note? |
| 18820 | Buckner v. Real Est. Bank, 5 Ark. 536, 544 (1844) | 15 | A deed of assignment made by a corporation, whereby it assigned, transferred and made over all its real estate, real and personal, choses in action and assets, does not transfer the legal interest in a bill of exchange, so as to enable the assignee to sue in his own name. | Upon the case being thus returned to the Circuit Court, the bank replied to said plea that they ought not to be barred, etc., because "the said bill of exchange in said plea and declaration mentioned, was assigned, transferred and made over, by her to said persons in that behalf in said plea mentioned, on said second day of April, A. D. 1842, by her deed of that date duly executed, whereby she conveyed the same, with all other her estate, real and personal, choses in action and assets, to said persons in said plea mentioned, as trustees, in trust for the payment of all her debts and liabilities and in no other way or manner howsoever," concluding with a verification. | Can an assignment authorize the holder to sue in his own name? |
| 18821 | Ryan v. May, 14 Ill. 49, 50 (1852) | 1 | The legal title to a bill or note payable to order can be transferred only by indorsement. | In the section of Daniel on Negotiable Instruments above cited it is said: "Where a bill or note payable to order is transferred without indorsement, the transferee does not acquire the legal, but only the equitable, title. | How is legal title to a bill or note transferred? |
| 18830 | Wannack v. City of Macon, 53 Ga. 162, 163 (1874) | 2 | The place of the execution of the commission attached to interrogatories must appear. Otherwise such evidence should be excluded. | When the statute declares that the place of the execution of interrogatories should appear, we understand it to mean the place where the same were, in fact, actually executed. | Must the place of the execution of the commission attached to interrogatories appear? |
| 18838 | Hartley v. Richardson, 91 Me. 424, 40 A. 336, 337 (Me. 1898) | 1 | A custom, to be binding, must be universal in the locality, and of long existence. | A custom, to be binding, must be universal in the locality, and of long existence. | Does a custom have to be universal in the locality to be binding? |
| 18843 | Moss v. Booth, 34 Mo. 316, 317 (1864) | 1 | The signature to a deposition is good, even if inadvertently put in the wrong place. | The purpose of signing is to signify the assent of the witness to the contents of the deposition; and this is accomplished as well by placing the signature at one place as at another. | "Is the signature to a deposition good, even if inadvertently put in the wrong place?" |
| 18858 | Saunders v. City & Suburban R. Co., 99 Tenn. 130, 41 S.W. 1031, 1035 (1897) | 4 | A deposition taken by defendant, and used by it on the first trial, may be offered in evidence by plaintiff on a second trial, after defeat has closed its evidence without offering the same. And plaintiff's reasonable expectation that it would again be offered by defendant is a sufficient excuse for failing to read it as evidence in chief. | The defendant took her deposition, in which she stated these and other competent and material facts, and used it on a former trial of this case in the court below; but at the last trial, the record of which alone is before this court, the defendant closed its evidence without that deposition. Thereupon the plaintiff sought to read it as his evidence, and the trial judge refused to permit him to do so, and, as a consequence, the deposition did not go to the jury at all. This action of the court was erroneous. A deposition taken and filed in a case by one party, and not used by him, may be read by the other party as his own evidence, if competent. | "Where a deposition is taken by either party to a suit, and it is filed, may such party decline to read it on trial?" |
| 18859 | Spencer v. Perry, 17 Me. 413, 415–16 (1840) | 2 | Where a justice has ordered a continuance of an action, he cannot order a further continuance prior to the day appointed. | The cause being discontinued, the jurisdiction of the defendant was at an end. His subsequent proceedings were coram non judice, and afford him no justification. He acted under a misapprehension of his authority. We perceive no reason to impute to him any thing wilfully wrong, but he has in our opinion rendered himself liable to an action of trespass, having proceeded after his *416 jurisdiction had ceased. Briggs v. Wardwell, 10 Mass. R. 356; Butler v. Potter, 17 Johns. R. 145. | Can a further continuance order be made prior to the day appointed? |
| 18883 | Wilson v. Forder, 20 Ohio St. 89, 96 (1870) | 3 | A renewal note given in the firm name, after dissolution, by a partner without his copartners' assent, may be regarded as divisible, and valid to the extent that the firm debts constituted the consideration, and invalid as to the residue. | The considerations entering into the note now in question, are separate and distinct; and we see no good reason why the note may not be regarded as divisible, and held valid to the extent that the firm debts constituted the consideration, and invalid as to the residue. | Can a partner renew a note in the name of the firm after dissolution? |

| 18884 | Pierson v. Hooker, 1808 WL 1232 (N.Y. Sup. Ct. 1808) | 4 | A release, under seal, by one partner in the firm, of a debt due to the copartnership, is binding on all the partners. | Now, a release signed by one individual partner will not release a copartnership debt, unless it be expressly mentioned as a debt due to the copartnership. If it is not stated to be a copartnership debt, the release operates as a discharge only of the private debts due to the individual. | Is a release by one partner to a debtor obligatory to the other partners? |
|---|---|---|---|---|---|
| 18893 | Pike v. Chicago, M. & St. P. Ry. Co., 40 Wis. 583, 586 (1876) | 1 | As to goods in their possession merely as warehousemen, railroad companies are bound to no more than ordinary care, or such as a man of ordinary prudence would use in respect to his own property placed in like circumstances. | For, as a matter of law, we do not think the failure to provide a night watch or to have some person sleep in a depot situated as that of Boscobel was, in which the daily average value of property stored did not exceed $500, as shown by the evidence, was ordinary negligence. Ordinary negligence is the absence of such care and diligence as a man of ordinary prudence would use in taking care of his own property placed in like circumstances. How many men of ordinary prudence provide a night watch for their stores and warehouses, where only $500 worth of property is kept or stored? Probably few, if any, persons exercise that degree of diligence in taking care of their own property. | What is Ordinary Negligence? |
| 18899 | Armstrong v. United States, 16 F.2d 387, 388–89 (8th Cir. 1926) | 1 | Decision of Director of Veterans' Bureau on right to compensation is ordinarily conclusive. World War Veterans' Act 1924, 38 U.S.C.A. SS 101, 102, 109, 210 et seq., 301, 302, 314, 351, 355, 501, 503, 537 et seq., 611, 621, 625, 626, 741 et seq., 3001, 3010, 3022, 3101 et seq., 3201-3203, 3301, 3304, 3401, 3404, 3405, 3501 et seq., 5001 et seq. | The District Court adopted the views of the government and directed a verdict in favor of the United States. As stated in the brief of defendant in error, plaintiffs at the trial in the lower court proceeded on the theory that they had the right to introduce evidence other than the record and ratings of the Veterans' Bureau for the purpose of having the court determine that the insured was, in effect, entitled to uncollected compensation *389 at the date the insurance contract lapsed for nonpayment of premiums. This single question is presented for determination. It must be conceded at the outset that the decision of the Director upon a right to compensation claimed under the act is final and conclusive and not subject to judicial review, at least unless the decision be wholly unsupported by evidence, wholly dependent upon a question of law, or clearly arbitrary or capricious. This is the precise language of the Supreme Court in Silberschein v. United States, 266 U.S. 221, 45 S.Ct. 69, 69 L.Ed. 256. No claim is made that the decision of the Director upon the compensation awarded was unsupported by evidence, arbitrary, or capricious, nor that he has refused or denied any application for readjustment. | Is the decision of the Director on the right to compensation conclusive? |
| 18901 | Stevens v. Decker, 192 Ill. App. 474, 475 (Ill. App. Ct. 1915) | 1 | Notes which were indorsed by the maker in blank were negotiable by delivery. Negotiable Instruments Act S 34, S.H.A. ch. 98, S 54. | . BILLS AND NOTES, § 460a1--when question of transfer in due course for jury. Evidence tending to show that plaintiff in an action on a note, who was a clerk in the office of his attorneys who were also attorneys for the payee therein, had received same direct from such payee after maturity with knowledge of its infirmity, and held same merely as a depository for the purpose of enforcing payment, held sufficient to present a question for the jury as to whether plaintiff was a holder in due course under section 52 of the Negotiable Instruments Act (J. & A. ¶ 7691). | Can an indorsement in blank be negotiated by delivery? |

| | | | | | |
|---|---|---|---|---|---|
| 18902 | Palmer v. Dodge, 4 Ohio St. 21, 22–23 (1854) | 2 | A surety on a note given by one of the partners after the dissolution of the partnership, duly notified, he being authorized to settle the affairs of the firm, to a creditor of the firm, in the partnership name, has no claim to indemnity from the other partner for any loss he may sustain. | The court refused to give these instructions, but charged the *23 jury, that Short, after the dissolution, could not give a note in the name of the firm so as to bind his copartner thereby; but if Short, in the performance of his agency in settling up the business of the firm, thought it necessary for the interests of the firm to renew the note, and in good faith obtained Dodge as security for that purpose, he (Dodge) might recover from Palmer the amount originally loaned to the firm, with six per cent. interest thereon. | Can a partner execute a note in the name of the firm after its dissolution by renewal of the note of the firm to bind other partners or the firm? |
| 18907 | In re Schuylkill River Rd., 19 Pa. Super. 376, 377 (1902) | 1 | A large manufacturing plant, covering many acres of land, on which are erected a number of mills, shops, offices, etc., and where thousands of persons are employed, and at which there is also a public station on a railroad, is a sufficient terminus for a public road as a "place of necessary public resort," within Act June 13, 1836, P.L. 551, S 11, 36 P.S. S 2731. | Opinion OPINION BY ORLADY, J., February 14, 1902: A part of a public highway known as the Schuylkill Valley road in Lower Merion township was vacated in proceedings in the quarter sessions, under and by which some 317 feet of the public road northerly from its terminus was vacated, and the road now ends at a point on the property of a private corporation operated for profit. It is urged that this ending point is not a sufficient terminus for a public road, although it is conceded that the point is opposite to and at the Pencoyd Iron Works, a large manufacturing plant covering many acres of land on which are erected a number of mills, shops, offices, etc., and where thousands of persons are employed in a great industrial establishment. With the merits of the case we have nothing to do; they raise questions of utility and expediency to be decided by the court of quarter sessions, and it may be taken as legally determined that the portion of the road vacated has become useless, inconvenient and burdensome. | What would be sufficient termini to warrant the confirmation of a public road? |
| 18908 | In re Schuylkill River Rd., 19 Pa. Super. 376, 378 (1902) | 4 | It seems that a public highway may terminate in a cul de sac. | A public highway may terminate in a cul de sac: | Can a public highway terminate in cul de sac? |
| 18914 | Rivers v. Thomas, 69 Tenn. 649, 657 (1878) | 1 | One who indorses a past-due note at the request of the maker, pursuant to a contract with the payee for further indulgence, is liable as guarantor. | Justice Clifford says that if the endorsement be subsequent to the making of the note, at the request of the maker, pursuant to a contract with the payee for further indulgence, the endorser is liable as guarantor. | Can the endorser be liable as guarantor? |
| 18915 | Thompson & Thompson v. Brown, 121 Mo. App. 524, 97 S.W. 242, 243 (1906) | 7 | Limitations having been pleaded in an action brought on a note by those acquiring it from the representatives of the deceased payee, payments alleged to have tolled the statute were proved to have been made by a stranger to the note, whose name appeared as indorser, and who was not a party to the litigation. The claims against the maker arising from such payments by the indorser were barred by limitations, even though the payments were made by the indorser as a guarantor. Held that, since, the payments would keep the note alive as against the indorser, whether made as guarantor or co-maker, and since the outcome of the litigation could not prevent judgment against him, and since he could not by a subsequent payment as a guarantor revive his claim against the maker for past payments, he was not precluded from testifying that he signed the note as a guarantor, by Rev.St.1899, S 4652, V.A.M.S. S 491.010, providing that where one of the parties to a contract in issue is dead the other party cannot testify "in his own favor" in relation thereto. | While it is true that, when the name of a stranger to the note appears indorsed upon the back thereof, he will be presumed to be a maker, yet such presumption will not stand against evidence to the contrary; the real character of his obligation may be shown. Herrick v. Edwards, 106 Mo. App. 633, 81 S. W. 466. | Can a party whose name is written on the back of a note be a maker of it? |

| | | | | | |
|---|---|---|---|---|---|
| 18916 | Clark v. Barrett, 19 Mo. 39, 40 (1853) | 1 | An indorser of a negotiable note is not a security, within the statute providing that in an action on a note, against a security, he may defend by showing that he requested the payee to sue the principal, and that the request was refused. | he note having been made payable to Rucker, and being by him endorsed, is a circumstance which places this case without the in fluence of the principle of the cases of Powell v. Thomas, 7 Mo. and Perry v. Barrett, 18 Mo. The defendant being an endorser of a negotiable promissory note, is not a security within the meaning of the "act concerning securities." That act only contemplates parties who are all originally liable to the payee or obligee of the bill, note or bond. The obligation of the endorser is only collateral. Nor is its character affected by the fact that he endorsed only for the accommodation of the maker. It would greatly impair the utility of negotiable paper as a medium of commerce, to subject it to the provisions of the act concerning securities. It is a well settled principle of the law of commercial paper, that after the liability of all the parties to a bill or note is once fixed, no indulgence or delay of suit will affect their responsibility. The statute concerning bonds and notes having made the assignor liable to the assignee, in the event of his using due diligence in the institution and prosecution of a suit at law against the obligor or maker, clearly shows that it was not designed to extend to the endorser of negotiable securities. | "Can an endorser or indorser of a negotiable note, a security or surety within the meaning of statute concerning securities?" |
| 18919 | Osborn v. Kistler, 35 Ohio St. 99, 102 (1878) | 2 | Under the statutory provision that notes "payable to order, bearer, or assigns shall be negotiated by indorsement thereon," the legal title to a sealed bill, made payable to bearer, can only pass by indorsement; and, if sold and delivered without indorsement, the holder must sue thereon in the name of the transferor. | At common law a note under seal is not negotiable either by delivery or indorsement, so as to enable the holder to maintain an action in his own name upon it. Chitty on Bills, 166. If a seal be affixed to a paper in the ordinary form of a note, its character as such is destroyed; and it is thereby converted into the deed or bond of the maker, who is then termed the obligor, and the instrument is not subject to the peculiar doctrines applicable to mercantile securites. Daniels on Negotiable Instruments, § 32. | Are notes under seal negotiable by delivery or indorsement? |
| 18937 | Beall v. Russell, 76 Misc. 244, 244–45, 134 N.Y.S. 633, 634 (App. Term 1912) | 2 | A negotiable instrument may be assigned before or after maturity, with or without indorsement. | There is, of course, no doubt but that a negotiable instrument *245 is a chose in action, and, like other choses in action, may be assigned, either before or after maturity, with or without indorsement. | Can a negotiable instrument be assigned before maturity? |
| 18938 | Beall v. Russell, 76 Misc. 244, 244–45, 134 N.Y.S. 633, 634 (App. Term 1912) | 2 | A negotiable instrument may be assigned before or after maturity, with or without indorsement. | There is, of course, no doubt but that a negotiable instrument *245 is a chose in action, and, like other choses in action, may be assigned, either before or after maturity, with or without indorsement. | Can a negotiable instrument be assigned after maturity? |
| 18939 | Cent. Sch. Supply House v. Donovan, 70 Ill. App. 208, 209 (Ill. App. Ct. 1897) | 1 | Possession of notes endorsed in blank is prima facie evidence of title thereto. | The character of a promissory note as negotiable paper is established when it is acquired by a bona fide holder before maturity, and notice of original defects does not affect subsequent holders either before or after maturity. Daniels on Neg. Instruments, Secs. 728-803; Story on Prom. | Is possession of notes evidence of title or ownership? |

| | | | | | |
|---|---|---|---|---|---|
| 18947 | Whitlock v. Castro, 22 Tex. 108, 111 (1858) | 1 | A note executed in one state, and made payable in another, must bear interest according to the law of the latter state when no rate of interest is expressed. | The petition showed that the two large notes were made in ""New York," and payable "at office of Commercial and Agricultural Bank of Texas, in New Orleans" (in 1851 and 1852). These words, "New York," and "New Orleans," constitute a part of the notes, without any comment, in connection with them, explaining their locality. Without such averment, the court could not judicially know that they were placed beyond the limits of this state. Cook & Cook v. Crawford, 4 Tex. 420. According to the decision of this court, in the case of Able v. McMurray, 10 Tex. 350, these notes bore interest at whatever rate was payable at New Orleans, whether that place was in, or out of the state of Texas; and not being alleged to have been out of the state, it must be taken to have been within it, as to the judicial determination of this case. | Which law governs the interest payable on a note? |
| 18962 | Latham v. Field, 163 N.C. 356, 79 S.E. 865, 866 (1913) | 1 | The acts of an agent performed within the scope of his real or apparent authority are binding on his principal. | A principal is bound by the acts of his agent within the authority he has actually given him, which includes not only the precise act which he expressly authorizes him to do, but also whatever usually belongs to the doing of it, or is necessary to its performance. | Is a principal bound by the acts of his agent within the authority he has actually given? |
| 18963 | Weeger v. Mueller, 102 Ill. App. 258, 260 (Ill. App. Ct. 1902) | 2 | Instrument promising and ordering payment of certain fixed amount not made payable to bearer or to some person named therein held not promissory note. | The instruments offered in evidence, unless payable to bearer or to some person therein named, are not promissory notes. | Is it mandatory to name the payee on a promissory note? |
| 18970 | Beebe v. Morrell, 76 Mich. 114, 119, 42 N.W. 1119, 1121 (1889) | 3 | The general rule is that an affidavit must be entitled in the suit in which it is to be used, and if it is entitled in a nonpending suit it is a nullity. | The general rule is that the affidavit must be entitled in the suit in which it is to be used. If there be no suit pending at the time, of course, the affidavit must not be entitled. If a suit be pending, and the affidavit is entitled in a suit not pending, the affidavit is a nullity. | Should the affidavit be entitled in the suit in which it is to be used? |
| 18971 | First Nat. Bank of Butte v. Weidenbeck, 97 F. 896, 898 (8th Cir. 1899) | 1 | The placing by a third person of his name on a note as guarantor, by agreement with the payee, and without the privity of the maker, is not a material alteration, which affects the validity of the note as against the maker, nor is the erasure of such name by a subsequent agreement between the same parties. | Treating the opinion in that case as authoritative, as the courts and law writers who have had occasion to discuss this question have very generally done, we are constrained to hold that placing Tong's name on the note as a guarantor, and its subsequent erasure under the circumstances stated in the complaint, was not a material alteration of the note which avoided it. The court in that case said: 'The present case is not one of a change in the terms of the contract, as to amount or time of payment, but simply of the effect of adding another signature, without otherwise altering or defacing the note. | Is the addition of the name of a guarantor to a note a material alteration? |

| ID | Case | # | Rule | Passage | Question |
|---|---|---|---|---|---|
| 18972 | McClain v. Weidemeyer, 25 Mo. 364, 367 (1857) | 1 | An assignment of a promissory note, written on a separate paper, although not transferring the legal ownership, transfers the beneficial ownership in the note, so as to enable the assignee to sue on it in his own name. | The evidence in the cause was amply sufficient to show the assent of the husband to the act of the wife in assigning the note. In the case of Menkins v. Herenghi, 17 Mo. 297, it was held that the endorsement by a married woman of a bill of exchange payable to her order, in the presence of and with the consent of her husband, will pass the title. The authorities in the case to which reference is made show that the wife, with the assent of her husband, could legally transfer a note, payable to herself, by an assignment in her own name. In the case of Thornton v. Crowther, 24 Mo. 164, the note sued on was with others folded in an envelope, and there was written on it a general assignment of them; the court held that under the practice act of 1849 such assignment was sufficient to enable the assignee to sue in his own name. The law of the case of Miller v. Paulsel & Newman, 8 Mo. 355, is altered by the present practice act.<br>**3 An order drawn for the whole of a debt is an equitable assignment of it, and he in whose favor the order is drawn may sue for the debt. | Is an assignee of a note entitled to sue in his own name? |
| 18973 | Noble v. Beeman-Spaulding-Woodward Co., 65 Or. 93, 103, 131 P. 1006, 1010 (1913) | 7 | In the absence of a special agreement to be bound jointly and not severally, accommodation parties to commercial paper are liable to each other in succession as their names appear upon the instrument. | But if we should treat Noble as strictly an indorser and not a guarantor, as far as appears from the note itself and its indorsements, "it is the established rule that the parties to ordinary commercial paper, negotiated for value in the regular course of business, are liable to each other in succession as their *103 names appear upon the instrument; the acceptor of a bill or the maker of a note being the principal debtor and the indorsers being liable severally in the order in which their names are written. The same rule applies in the absence of special agreement to successive accommodation parties, and a subsequent accommodation indorser, who has been compelled to meet the obligation, may maintain an action upon the instrument against any prior accommodation party and recover the whole amount paid, although he knew that the latter's signature was given for accommodation merely. It follows that successive accommodation parties, acceptor and indorser, maker and indorser, or successive indorsers, are not to be considered as cosureties and therefore they are not entitled to contribution among themselves unless they specially agree that they are to be bound jointly and not severally, but where such an agreement exists, contribution may be enforced and the agreement may be proved by parol or may be evidenced by the circumstances of the case." | In what order are indorsers liable? |
| 18977 | Town of Manteno v. Surprenant, 210 Ill. App. 438, 447 (Ill. App. Ct. 1918) | 10 | One of the purposes of videlicet is to dispense with strict proof. | There is no averment of any definite number of feet, except under a videlicet, one purpose of which is to dispense with strict proof. | Is dispensing with strict proof a purpose of a videlicet? |
| 18979 | Lapham v. Green, 9 Vt. 407, 409 (1837) | 2 | In contracts, made by agents, without disclosing the principal, the suit, to enforce them, may be in the name of the principal or agent. | If an agent do not disclose his principal, the suit may be brought in the name of either. Young v. Hunter, 4 Taunton, 582. | "When an agent does not disclose his principal, can an action or suit be brought in the name of both?" |

| | | | | | |
|---|---|---|---|---|---|
| 18980 | Barrett v. Hinkley, 124 Ill. 32, 40, 14 N.E. 863, 865 (1888) | 2 | The legal title to a note cannot be transferred by assignment by a separate instrument. | If the latter, we would say none; because, as to the note, that could not be assigned by a separate instrument, as was done in this case, so as to pass the legal title. | Can a note be transferred by assignment by a separate instrument? |
| 18981 | Boynton v. Renwick, 46 Ill. 280, 283 (Ill., 1867) | 2 | The legal title to a note cannot be transferred by assignment by a separate instrument. | The point of the case is, that by our statute, the legal title to a note cannot be transferred by a separate instrument in writing. | Can a note be transferred by assignment by a separate instrument? |
| 18982 | Billingham v. Bryan, 10 Iowa 317, 317–18 (1860) | 3 | The indorsement of a nonnegotiable promissory note is equivalent to the execution of a new note, and the liability of the indorser is not contingent upon due presentation to the maker, and notice of non-payment. | This ruling of the court is assigned as error by the appellant, and the question presented in this cause is, whether the indorser of a non-negotiable promissory note is liable to the holder, without demand upon the maker, and notice of non-payment. We think this question has been fully settled by this court in the cases *318 of Wilson v. Ralph & Van Shaick, 3 Iowa, 450; Long v. Smyser & Hawthorne, 3 Iowa, 266, and in Hall v. Monahon, 6 Iowa, 450, the court in those cases following the authority as laid down in the case of Seymour v. Van Shaick, 8 Wend., 421, in which it is held that such an indorsement is equivalent to the making of a new note, and is a direct and positive undertaking on the part of the indorser to pay the note to the indorsee, and not a conditional one to pay if the maker does not upon demand, after due notice. | "Whether the indorser of a promissory note not negotiable, is liable to a suit by the holder?" |
| 18986 | Gerard-Fillio Co. v. McNair, 68 Wash. 321, 327, 123 P. 462, 465 (1912) | 3 | A written contract within the statute of frauds (Rem. & Bal.Code, S 5289) may be modified or abrogated by an oral executed contract, but not by an oral executory agreement. | While it is the rule that a written executory agreement to sell or purchase real estate cannot be rescinded or abrogated by an oral executory agreement to rescind or abrogate, it does not follow that such an agreement cannot be modified or abrogated by an executed oral agreement. On the contrary, it is recognized by our own cases above cited, and it is the rule of all the cases in so far as we are advised, that an executed oral contract to modify or abrogate a written contract required by statute to be in writing can be successfully pleaded as a defense to an action on the orginal contract. | Can an executory agreement for the sale of land or real estate be rescinded or abrogated by oral rescission or agreement? |
| 18992 | Biscoe v. Sneed, 11 Ark. 104, 104 (1850) | 2 | General deed of assignment of notes by Real Estate Bank to trustees vested in them the equitable interest in such notes, which they could enforce in chancery; and after the bank forfeited its charter, and they could no longer use its name as a nominal plaintiff in an action at law upon such notes, they could only collect them by bill in chancery. | A note payable to a particular person, or order can only be transferred by endorsement upon the note, or assignment upon paper attached to, or accompanying it so as to vest the legal interest, and right of action, in the assignee.<br>The general deed of assignment made by the Real Estate Bank did not vest, of itself, the legal interest in notes due the bank, in the trustees, so as to enable them to sue at law thereon in their own names.<br>It vested in them the equitable interest in such notes, which they could enforce in chancery; and after the bank forfeited its charter, and they could no longer use its name as a nominal plaintiff in an action at law upon such notes, they could only collect them by bill in chancery. | Can the legal interest in a bill of exchange be transferred? |

| | | | | | |
|---|---|---|---|---|---|
| 18995 | Marion Nat. Bank v. Harden, 83 W. Va. 119, 97 S.E. 600, 603 (1918) | 1 | An assignment of "All right, title and interest in and to the within note" endorsed on the back of an instrument, being a qualified endorsement, in no way affects the negotiability of the paper, and the endorsee having possession thereof is deemed prima facie a holder in due course. | "In Michigan when the payee wrote on the back of the note 'I hereby transfer my right title and interest to the within note to S. C. Y.' the view has been strongly presented that such a transfer was not an endorsement in the sense of the law merchant, but merely passed title, not rendering the assignor liable as an endorser in the event of due dishonor and notice." Citing Aniba v. Yeomans, 39 Mich. 171.<br>But Mr. Daniel does not approve the rule of the Michigan cases. On the contrary he says in the same section that while such an endorsement is a qualified endorsement, it is a commercial endorsement and is not a mere assignment, and does not in law discredit the paper or even bring it under suspicion. And the other cases cited by him show that the great weight of judicial decisions is against the view of the Michigan court. And it seems to us that by a proper construction of sections 33 to 38 of our Negotiable Instrument Law (Code 1913, §§ 4204–4209), practically the same as the Indiana statute, no other conclusion can be reached. Section 33 says:<br>"An endorsement may be either in blank or special; and it may also be either restrictive or qualified, or conditional."The definitions of each of these classes given in the succeeding sections clearly exclude the endorsements on the notes sued on, unless it be a qualified endorsement defined by section 38 as follows:<br>"A qualified endorsement constitutes the endorser a mere assignor of the title to the instrument; it may be made adding to the endorser's signature the words 'without recourse' or any words of similar import; such an endorsement does not impair the negotiable character of the instrument."<br>In Evans v. Freeman, 142 N. C. 61, 54 S. E. 847, the court distinctly holds that such an endorsement as we have under consideration here does not in any | Do words written on the back of an instrument constitute an endorsement? |
| 19019 | John Hancock Mut. Life Ins. Co. v. Fid.-Baltimore Nat. Bank & Tr. Co., 212 Md. 506, 511, 129 A.2d 815, 819 (1957) | 3 | Generally, law governing a bill or note is the law which the parties to the instrument intend to govern, and, therefore, if bill or note contains express provision that it shall be governed by laws of a particular state, such laws will govern. | It seems generally to be conceded that the proper law governing a bill or note is the law which the parties to the instrument intended to govern. Accordingly, if the bill or note contains express provisions that it shall be governed by the laws of a particular state, those laws govern. | What law governs a note? |
| 19027 | Irvine Toll Bridge Co. v. Estill County, 210 Ky. 170, 173 (Ky. Ct. App. 1925) | 6 | Sovereignty may delegate right to grant franchise to municipalities. | At the beginning of the discussion it might be well to keep in mind some fundamental principles affecting the subject-matters involved, among which are that a franchise "is the privilege of doing that 'which does not belong to the citizens of the country generally by common right' "; that no one inherently possesses the right to grant a franchise, except the sovereignty within which it is proposed to be exercised, but that it is competent for such sovereignty to delegate the right to grant the franchise to some or all of its municipalities as political subdivisions of the government, or perhaps it may vest such power in such agencies of government as it sees proper, and: Lastly, that the right to maintain and operate a toll bridge, especially across a navigable stream, can be done only in the exercise of a franchise legally created. | Do municipalities have the right to grant franchises? |

| | | | | | |
|---|---|---|---|---|---|
| 19028 | McRoberts v. Washburne, 10 Minn. 23, 27 (1865) | 6 | The right to operate a public ferry and to charge tolls is a franchise within the control of the legislature; and, where the legislature has granted to an individual the exclusive right of running a ferry within certain limits, the fact that a third party owns lands within these limits does not justify him in establishing a rival ferry therein. | And ferries which by the common law were regarded as "publici juris," and not to be established except on special authority from the crown, have in many if not all the states of the Union, been subjected to the control of the legislature, which has not hesitated by special as well as general enactments, to regulate them as matters of public police, and to confer upon individuals as well as corporations, exclusive rights of ferriage within certain limits, and in no case, so far as we have been able to discover, has the fact that a third party was the owner of a part of the shore within those designated limits, justified him in establishing a rival ferry therein. | Is the right to operate a ferry a franchise? |
| 19066 | Lockwood v. Mitchell, 7 Ohio St. 387, 405 (1857) | 1 | Where a loan was made, the money advanced and to be repaid, and a note and a mortgage delivered in New York, of land in Ohio, it will be regarded as a contract made in New York, and governed by the laws of that state; and the usury laws of that state will apply to it. | The contract for the loan was made in the State of New York; the money was advanced there; the note and mortgage delivered there; and the loan was to be repaid there. The fact that one of the incidents of the debt consisted of a lien, by way of mortgage, upon lands in Ohio, to secure payment, does not change the law in this respect. It was a contract not only made, but to be performed in the State of New York, and must be governed by the laws of that state. | Is a contract governed by the law of the state where it is to be performed? |
| 19067 | Pratt v. Wallbridge, 16 Ind. 147, 149 (1861) | 3 | A note made in the state where suit is brought, and payable generally, is governed by the laws of such state, and not by those of a different state in which the consideration may have arisen. | As the note was made in this State, we are unable to perceive that the law of Ohio has much to do with the determination of this question. The consideration of the note arose in Ohio, but as the note was made here, and is payable here, or rather payable generally, it is to be governed by our own laws. We suppose the pleader, in setting out the law of Ohio prohibiting the taking of more than 6 per cent. interest, intended to exclude any conclusion that the plaintiff, by his various computations and compoundings, had entitled himself to more than 6 per cent. interest on the sum admitted to have been due on October 26, 1855. Any such conclusion, we think, is excluded by the statute pleaded, as well as by the decision of our own Court. Harvey v. Crawford et al., 2 Blackf. 43; Niles v. The Board of Commissioners of the Sinking Fund, 8 id. 158. | Which law will govern when a note is drawn in one place and payable in another? |
| 19068 | Banca Italiana Di Sconto v. Columbia Counter Co., 252 Mass. 552, 560, 148 N.E. 105, 109 (1925) | 3 | Maker ordinarily bound under laws of place where note payable. | The maker of a note is ordinarily deemed to be bound in accordance with the laws of the place where it is payable. | Under what law is a maker of a note bound? |
| 19069 | Badgley v. Votrain, 68 Ill. 25, 31–32 (1873) | 3 | The legal title to a note cannot be transferred by assignment by a separate instrument. | These notes were capable of legal transfer, but only in the mode prescribed by our statute, viz: by indorsement on the back by the payee, *32 and delivery. It could not be done by a separate instrument. | Can a note be assigned so as to vest the legal title in the assignee by a separate instrument? |

| | | | | | |
|---|---|---|---|---|---|
| 19075 | Enfield Toll-Bridge Co. v. Hartford & N. H. R. Co., 17 Conn. 454, 461–62 (Conn. 1846) | 2 | The franchise of the Enfield Toll-Bridge Company, aside from any special legislation regarding it, is subject to the same legislative control, for public use, as any other species of property. | When this case was before us at a former term, we held, that the franchise of this bridge company was subject to the same legislative controul for public use, as any other species of property, whether belonging to corporate or natural persons. We suppose the question made on this argument respecting the constitutional power of the legislature, though varied somewhat in its phraseology, was distinctly raised, and decided by us, on the former hearing, as it had *462 been before, in the case of the town of East-Hartford v. The Hartford Bridge Company, 17 Conn. R. 41. 80. We shall not now discuss again a question so recently, and as we think, correctly settled. | Can franchises be taken for public use? |
| 19117 | Oatman v. Andrew, 43 Vt. 466, 471 (1871) | 4 | After a deposition is filed, the magistrate who took it has no authority to amend the caption; but the court may ratify and render valid such unauthorized amendment. | After a deposition has been once used, or after the party taking it has caused it to be filed as one of the papers in the cause, the magistrate taking it has no more right or authority to make any amendment to or alterations in the caption than a party has to make alterations in his writ after he has entered it in court. The deposition in such a case has become a part of the files in the cause, and is in the custody of the court, and no amendment can properly be made without the permission of the court. | "After a deposition has been filed in court, is it still proper to allow the magistrate to amend his certificate thereon, so as to conform to the facts?" |
| 19120 | Steubenville & Wheeling Traction Co. v. Brandon, 87 Ohio St. 187, 100 N.E. 325 (1912) | 1 | Team driver at crossing has equal rights with street car, and motorman should so control car as to be able to stop if necessary to avoid accident. | A street railway company operating cars on a public street in a much frequented part of a city has not the right to operate its cars at street crossings at a dangerous rate of speed without warning of approach, thus throwing all the burden of care and watchfulness to avoid accidents upon drivers of smaller vehicles seeking to cross, but its duty is to maintain proper control of the car in order to be able to stop or check the same if necessary to avoid accident. The driver of a horse and wagon at such street crossing has equal rights with the company in the street and to use the crossing; the driver in crossing making due allowance for the fact that the car runs upon a fixed track, and, by reason of its greater weight, being less easy to check or stop than the smaller vehicle. | Can the driver of horse and wagon have equal rights with the company in the street? |
| 19139 | Brannock v. Magoon, 141 Mo. App. 316, 536 (Mo.App. 1910) | 2 | The title to a note may be transferred by a separate writing. | It is held that the title to a note may be transferred by a separate writing. | Can the title to a note be transferred by a separate writing? |
| 19155 | Tisdale Lumber Co. v. Read Realty Co., 154 A.D. 270, 138 N.Y.S. 829, 830 (App. Div. 1912) | 2 | The right to file a mechanic's lien is not assignable, under Lien Law, S 2. | The right to file a mechanic's lien is a personal right, limited to the person performing the labor or furnishing the material, and is not assignable. | Is the right to file a mechanics lien assignable? |

| | | | | | |
|---|---|---|---|---|---|
| 19161 | Warner v. Bennett, 31 Conn. 468, 468 (Conn. 1863) | 4 | A deed conveying to the grantees, their heirs and assigns forever, a piece of land, as a site for a school house, contained the following provision: "The conditions of this deed are such that whenever the premises shall be converted to any other use than those named, and the grantees shall knowingly persist therein, the grantees forfeit the right herein conveyed, upon the grantor paying to them the appraised value of such buildings as may be thereon standing." Held, that this provision of the deed was a condition subsequent, and not a limitation, and that the estate of the grantees would continue, after condition broken, until an entry by the grantor or his heirs. | A deed conveyed to the grantees, their heirs and assigns for ever, a piece of land as a site for a school-house; the deed containing the following provision: "The conditions of this deed are such, that whenever the premises shall be converted to any other use than those named, and the grantees shall knowingly persist therein, the grantees forfeit the right herein conveyed, upon the grantor paying to them the appraised value of such buildings as may be thereon standing." Held that this provision of the deed was a condition subsequent, and not a limitation, and that the estate of the grantees would continue, after condition broken, until an entry by the grantor or his heirs. | "Can a right of entry, for conditions broken, be assigned?" |
| 19195 | Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 415, 43 S. Ct. 158, 160, 67 L. Ed. 322 (1922) | 7 | While property may be regulated to a certain extent, if regulation goes too far, it constitutes a taking. | The general rule at least is that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking. | Can excessive regulations be considered a taking? |
| 19202 | First Nat. Bank v. Adams, 123 Miss. 279, 85 So. 308 (1920), rev'd sub nom. First Nat. Bank of Gulfport, Miss., v. Adams, 258 U.S. 362, 42 S. Ct. 323, 66 L. Ed. 661 (1922) | 2 | A demurrer admits all facts well pleaded to be true, but does not admit the facts set forth in improper or illegal pleadings. | The rule with reference to the admission by a demurrer to a pleading is that a demurrer admits all facts well pleaded to be true. It does not admit the facts set forth in improper or illegal pleadings. | Will a demurrer admit facts well pleaded? |
| 19203 | T.H. Rogers Lumber Co. v. McRea, 7 Ind. T. 468, 104 S.W. 803, 804 (Indian Terr. 1907) | 3 | Under the express provisions of Mansf.Dig. § 5062 (Ind.T.Ann.St.1899, § 3267), presumptions of law need not be stated in pleading. | Section 5062, Mans. Dig. [Ind. T. Ann. St. 1899, § 3267], provides: "Neither presumption of law nor matter of which judicial notice is taken need be stated in a pleading." | Should presumptions of law be pleaded? |
| 19210 | Espy v. Bank of Cincinnati, 85 U.S. 604, 620, 21 L. Ed. 947 (1873) | 8 | Bank checks are not "bills of exchange" and laws applicable to bills of exchange may not be applicable to bank checks. | Bank checks are not bills of exchange, and though the rules applicable to each are in many respects the same, they differ in important particulars. | Are the same rules applicable to bank checks and bill of exchange? |
| 19216 | United States v. Piaza, 133 F. 998, 999 (W.D.N.Y. 1904) | 1 | An information in extradition proceedings charging accused with "assault with intent to kill and murder" sufficiently brings the offense within article 10 of the treaty with Great Britain, authorizing extradition of persons charged with "assault with intent to commit murder." | The principal question presented is whether the crime charged by the complaint or information is within the terms of the treaty or extradition. The accusation before the commissioner, as appears by the complaint or information is assault with intent to kill and murder. The offense specified by the extradition treaty with Great Britain (article 10) is assault with intent to commit murder. [...] The phraseology charging the crime unquestionably brings it within the terms of the treaty, and it is extraditable. | Is unjustifiable killing considered murder? |

| | | | | | |
|---|---|---|---|---|---|
| 19223 | Williams v. United States, 23 Ct. Cl. 46, 51 (1888) | 2 | Appointees to the offices of consul, consul general, and commercial agents of the United States are not entitled to the salaries thereof until they have taken such oath, and executed such bond as is required of them by law. | "Every consul-general, consul, and commercial agent, before he receives his commission or enters upon the duties of his office, shall give a bond to the United States, with such sureties, who shall be permanent residents of the United States, as the Secretary of State shall approve." [...] He must take the oath of office, which may be done after the commission is delivered, and, as to the office now under consideration, the appointee must give a bond before he can receive his commission or enter upon the duties of his office. | "Is it necessary for a consul before he receives his commission or enters upon the duties of his office, to give a bond?" |
| 19252 | Kobey v. Hoffman, 229 F. 486, 488, 489 (8th Cir. 1916) | 1 | Whether note executed and payable in Missouri was negotiable, so as to be good in the hands of a bona fide purchaser, held governed by the law of Missouri. | Therefore the only question involved now is whether under the Negotiable Instrument Law this note was negotiable, so as not to be subject to the defense of a failure of consideration, when in the hands of a bona fide purchaser, for value, before maturity. The note was executed and made payable in the state of Missouri, and, although this suit was instituted in the United States District Court for the District of Kansas, must be governed by the laws of the state of Missouri, where it was executed and made payable. | Can a note be governed under the law where it was executed or performed? |
| 19262 | Brown v. Shock, 27 Mo. App. 351, 355 (Mo.App. 1887) | 1 | An action cannot be maintained on a debt not due at the commencement of the action. | An action cannot be maintained on a debt not due at the commencement of the action. | Can an action be maintained on a debt not due at the commencement of the action? |
| 19266 | Pickles v. Anton, 49 N.D. 47, 189 N.W. 684 (1922) | 3 | In an action for malicious prosecution of an inquisition of lunacy, the personal relations previously existing between the parties may be shown for the purpose of showing malice of defendant. | An action will lie in this state for the malicious prosecution, without probable cause, of a proceeding the object of which is to have a person adjudged insane and committed to the state insane asylum. For the purpose of showing the malice of the defendant in instituting such inquisition of lunacy against the plaintiff, the personal relations previously existing between the parties may be shown. | Is evidence of the previous relations of the parties admissible in an action for malicious prosecution? |
| 19267 | Mellor v. Law., 55 Ill. App. 679, 682, 683–84 (Ill. App. Ct. 1894) | 1 | An incoming partner is not liable for the previous debts of the concern, unless he makes himself so by express agreement, or by such conduct as will raise the presumption of a special promise. | Incoming partner is not liable for debts of old firm except by agreement, but such agreement may be inferred from facts and circumstances which justly raise an implication of its existence. [...] In the case of Wright v. Brosseau, 73 Ill. 381, it was *684 said that "it is the clearly established doctrine that a new partner coming into an existing firm will not be liable in respect to debts contracted by the firm previously to his entering it, unless he expressly assumes them." | Is an incoming partner liable for debts of old firm? |
| 19290 | Mellor v. Law., 55 Ill. App. 679, 682, 683–84 (Ill. App. Ct. 1894) | 1 | An incoming partner is not liable for the previous debts of the concern, unless he makes himself so by express agreement, or by such conduct as will raise the presumption of a special promise. | Incoming partner is not liable for debts of old firm except by agreement, but such agreement may be inferred from facts and circumstances which justly raise an implication of its existence. [...] In the case of Wright v. Brosseau, 73 Ill. 381, it was *684 said that "it is the clearly established doctrine that a new partner coming into an existing firm will not be liable in respect to debts contracted by the firm previously to his entering it, unless he expressly assumes them." | Is an incoming partner liable for debts incurred prior to his entering the partnership? |
| 19318 | The Eros, 241 F. 186, 191 (E.D.N.Y. 1916), aff'd, 251 F. 45 (2d Cir. 1918) | 1 | The effect of an arbitration clause in a charter party is to be determined by the law of the forum. | In any event, if such a general arbitration clause would ever apply to a repudiation of the agreement (Jureidini v. National British Millers' Insurance Co., (1915) A.C. 499), it is clear that it goes to the remedy, not to the rights of the parties, and that its effect is to be determined by the law of the forum. | Can an arbitration clause be considered as a remedy and not as a right of the parties? |

| ID | Citation | Num | Rule (left) | Quote (middle) | Question |
|---|---|---|---|---|---|
| 19319 | Bank of Commerce & Sav. v. Randell, 107 Neb. 332, 334-35, 186 N.W. 70, 71 (Neb. 1921) | 4 | The provision of the Negotiable Instruments Law that an instrument is negotiated by delivery if payable to bearer while if payable to order it is negotiated by endorsement of holder completed by delivery was not intended to include all the ways in which the instrument might be negotiated. Rev.St.1913, S 5348. | ... it is held that the provision of the Negotiable Instruments Law that an instrument is negotiated by delivery if payable to bearer, while if payable to order it is negotiated by the indorsement of the holder completed by delivery, was not intended to include all the ways in which an instrument might be negotiated. | When is an instrument negotiated? |
| 19326 | Cent. Bank of W. Lebanon v. Martin, 70 Ind. App. 387, 121 N.E. 57, 58 (Ind.App. 1918) | 8 | If a pleading be good on any theory at all, a demurrer to it should not be sustained. | Nevertheless it is our duty to consider it; for, if the pleading be good on any theory, it would have been error to have sustained the demurrer. | Should a demurrer be sustained if a pleading is good on any theory? |
| 19337 | St. Bernard Trappers' Ass'n v. Michel, 162 La. 366, 377 (La. 1926) | 6 | Dismissal of principal suit carries dismissal of intervention. | The dismissal of plaintiff's suit carries with it the dismissal of the intervention, leaving to interveners the right to proceed by separate suit.' | Does the dismissal of principal suit carry a dismissal of intervention? |
| 19355 | White v. Trowbridge, 216 Pa. 11, 19–20, 64 A. 862 (1906) | 3 | "Good will" is the favor which the management of a business has won from the public, and the probability that old customers will continue their patronage. | 'Good will' has been defined by Judge Cooley as the favor which the management of a business has won from the public, and the probability that old customers will continue their patronage. | What is defined as the goodwill of a partnership? |
| 19360 | Farmers Tr. Co. v. Schenuit, 83 Ill. App. 267, 274 (Ill.App. 1 Dist. 1898) | 4 | Under statute, transfer of a note by an assignment with guaranty of collection and payment upon the identical paper containing the note, passed title to the legal holder. S.H.A. ch. 98, S 2. | In the case before us, however, the appellant transferred the note by an assignment and guaranty of collection and payment upon the identical paper containing the note, and there can be no room for doubt that thereby the title passed to the legal holder. | Does a guaranty of a note operate as an assignment of the legal title? |
| 19363 | Second Nat. Bank v. Martin, 82 Iowa 442, 48 N.W. 735, 736 (1891) | 1 | An indorsement of a note by a corporation, which consists only of the name of the corporation in writing on the back of the note, is valid, although the name of the officer making it is not appended. | The name of the corporation written on the back of the instrument is in fact the signature of the indorser, just as it would be if it were shown that it was made by an officer of the corporation that signs it. | Is the name of the corporation written on the back of the instrument the signature of the indorser made by an officer of the corporation? |
| 19380 | Rentzheimer v. Bush, 2 Pa. 88, 89 (1845) | 4 | The court, in its discretion, may withdraw a juror to prevent an injustice. | When the interest of the party is in danger of being sacrificed, the court can prevent injustice by withdrawing a juror. | Can the court withdraw a juror to prevent injustice? |
| 19384 | Martin v. Scudder, 14 Ohio Dec. 283, 284 (Ohio Com. Pl. 1903) | 1 | Want of consideration is a good defense to an action on a note. | Want of consideration is always a good defense to an action on a promissory note. | Is want of consideration a good defense? |
| 19387 | Chrisman v. Brandes, 137 Iowa 433, 112 N.W. 833, 835 (1907) | 2 | In proceedings by the board of supervisors to vacate highways under Code, S 422, conferring upon them that power, the rule that a vested right may be acquired in the use of a highway is inapplicable. | Public highways are created by statute either directly or through delegated power, and it is manifest that they may be discontinued by the same power that created them, and that no individual can acquire vested rights against the state as will prevent the discontinuance of a particular highway. | Can an individual acquire a vested right of a highway? |
| 19389 | Converse v. Shambaugh, 4 Neb. 376, 378 (1876) | 2 | Before admissions made by one partner can be received in evidence to charge the other, the partnership must be established by evidence independent of the admissions. | The rule is well settled that when a number of persons have associated themselves together in the joint prosecution of a common enterprise, as in ordinary partnerships, that the acts or contracts of one partner, with reference to the partnership business and affairs, are to be deemed the acts or contracts of all. | Is a declaration by one partner on the existence of partnership admissible to charge himself only and not the other parties? |
| 19401 | Davis v. Otto, 206 S.W. 409, 410 (Mo. App. 1918) | 4 | Error, when defendants' attorney on cross-examination asked plaintiff if certain questions were not asked him in taking his deposition, and answers given, the attorney reading answers as shown in deposition prior to correction by plaintiff, held harmless where plaintiff was given opportunity to explain changes in deposition. | Plaintiff was given every opportunity to explain the changes in the deposition, and we fail to see any evidence in the record of unfairness; and while this practice is not to be encouraged, because it was not plaintiff's deposition until he signed it, and therefore contained no admissions on his part, the error, under the circumstances, was harmless. | Is a plaintiff's deposition not such until he signs it? |

| | | | | | |
|---|---|---|---|---|---|
| 19402 | Powell v. Hunter, 257 Mo. 440, 165 S.W. 1009, 1011 (1914) | 2 | A deposition not signed by the witness was properly excluded. | But this testimony was properly excluded, because the deposition containing it was not signed by the witness. | Is a deposition not signed by the witness properly excluded? |
| 19408 | Mayer v. Garvan, 278 F. 27, 32 (1st Cir. 1922) | 5 | Under the law of the United States, war dissolves a partnership between a citizen and subjects of the enemy. | The District Court has ruled that war dissolves a partnership under the law of England and the United States, and this ruling is fully supported by the authorities cited, among which are Griswold v. Waddington, 16 Johns.(N.Y.) 438; The William Bagaley, 5 Wall. 377, 18 L.Ed. 583; Hanger v. Abbott, 6 Wall. 532, 18 L.Ed. 939; The Anglo-Mexican, 118 L.T.N.S. 260 (Privy Council); Hugh Stevenson & Sons, Ltd., v. Aktiengesellschaft Fur Cartonnagen Industrie, (1918) A.C. 239, 118 L.T.N.S. 126 (House of Lords); 115 L. T.N.S. 594 (C. of A.). | Does a war dissolve partnership between citizens of two countries? |
| 19409 | Ash v. Werner, 12 Pa. Super. 39, 43 (1899) | 3 | A new partner, coming into an existing firm, is not liable for debts contracted by the firm previous to his entering it, unless he expressly assumed them. | A partner who enters a firm already established does not thereby become liable for the debts of the old firm. Nothing but an express agreement will render him so liable: Hart v. Kelley, 83 Pa. 286; Shoemaker v. King, 40 Pa. 107. | Is an incoming partner liable on the contracts entered into by the firm before he became a member? |
| 19413 | E.D. Fisher Lumber & Coal Co. v. Robbins, 104 Kan. 619, 180 P. 264, 265 (1919) | 6 | Whenever a negotiable note passes into the hands of the holder in due course, its status as commercial paper is established, and such holder may transfer it to others, even after maturity, with immunity from the equities that may exist between maker and payee. | The note being negotiable in form, the writing constituted a commercial indorsement which passed full title to the note free from equities as between the maker and the payee. | Whether a commercial indorsement is sufficient to pass title to the note? |
| 19414 | Armour Bros. Banking Co. v. Riley Cnty. Bank, 30 Kan. 163, 1 P. 506, 507 (1883) | 2 | An indorsement, "pay A. or order for account of B.," is a restrictive indorsement, and does not pass title. | The ruling of the district court was founded upon the idea that this indorsement was a restrictive indorsement, defining the rights and title of the indorsee, and not open to contradiction or explanation by parol testimony. | Whether an indorsement in the form Pay to or order for account of can be a restrictive indorsement? |
| 19415 | Cairo Nat. Bank of Cairo, Ill., v. Blanton Co., 287 S.W. 839, 840 (Mo. App. 1926) | 4 | Indorsement for collection of bill of exchange is restrictive, and does not vest legal title in indorsee. | We concede that an indorsement for collection (as that to plaintiff) is restrictive, and does not vest in the indorsee the legal title to the paper. | Whether an indorsement for collection is restrictive? |
| 19416 | Grimm v. Warner, 45 Iowa 106, 108 (1876) | 2 | Where a promissory note had been transferred by indorsement as collateral security, and then, before maturity, with the knowledge of the indorsee, the payee had sold it to a third party, into whose possession it did not come until after maturity, held that the latter acquired it free from equities, and occupied the position of a good faith indorsee before maturity. | The indorsement of a promissory note to be taken as collateral security confers the legal title and property of the payee upon the holder. | Whether promissory note taken as collateral security can confer title? |
| 19419 | Hoppe v. Russo-Asiatic Bank, 200 A.D. 460, 465, 193 N.Y.S. 250, 254 (App. Div. 1922) | 2 | Motives influencing assignor in making assignment, or the consideration does not affect validity of assignment as against debtor. | As to the motive of the assignor in making the assignment or the consideration given therefor, it is well settled (5 Corp. Juris, 940) that 'it is of no importance to the debtor what motives influence the assignor in making the assignment,' whether it was for the 'purpose of more convenient enforcement, * * * or to avoid the incapacity of the assignor to bring an action.' | Whether the motive influencing the assignment is important? |
| 19421 | Hurlbut v. Quigley, 180 Cal. 265, 269, 180 P. 613, 614 (1919) | 1 | An indorsement is a wrtten contract, the effect of which the law declares. | An indorsement is a written contract of which the law declares the effect | Is an indorsement a written contract of which the law declares the effect and when counted upon it is the foundation of the action? |
| 19427 | Leque v. Madison Gas & Elec. Co., 133 Wis. 547, 113 N.W. 946, 947 (1907) | 1 | While evidence of a custom obviously dangerous is not admissible, it is not error to admit evidence of a general custom of linemen to step on and make use of dead electric wires in climbing poles, notwithstanding evidence of a warning against usual dangers incident to the employment. | It is doubtless true that evidence of a custom obviously dangerous should not be admitted. | Is evidence of a custom that is obviously dangerous admissible? |

| | | | | | |
|---|---|---|---|---|---|
| 19428 | Swift's Iron & Steel Works v. Dewey, 37 Ohio St. 242, 250 (1881) | 1 | Usage must not be inconsistent with the words of the agreement nor must it be unreasonable. | The usage, however, must not be inconsistent with the words of the agreement nor must it be unreasonable. | May usage be inconsistent with the words of the agreement? |
| 19432 | Newhouse Mill & Lumber Co. v. Keller, 103 Ark. 538, 146 S.W. 855, 858 (1912) | 3 | Motion for continuance, which stated conclusions, and not facts, as to what a proposed witness would testify to, held insufficient. | A motion for a continuance should state facts and not conclusions. | Should a motion for continuance state facts and not conclusions? |
| 19463 | Minot Special Sch. Dist. No. 1 v. Olsness, 53 N.D. 683, 208 N.W. 968 (1926) | 6 | Statute creating state fire and tornado fund held not unconstitutional as delegating taxing power to commissioner of insurance (Laws 1919, c. 159). | Said chapter 159, Laws 1919, is not unconstitutional on the ground that it delegates taxing power to the commissioner of insurance. | Does the insurance commissioner have the power to tax? |
| 19477 | Johnson v. Finkle, 2013 ND 149, ¶ 17, 837 N.W.2d 132, 137 | 14 | The subsequent conveyance under the warranty deed after the terms of a "contract for deed" have been met does not create a new right, but rather perfects the right existing under the contract and gives effect to the parties' intent by perfecting title relating back to the date of the contract. | The subsequent conveyance under the warranty deed after the terms of the contract for deed have been met does not create a new right, but rather perfects the right existing under the contract and gives effect to the parties' intent by perfecting title relating back to the date of the contract. | Are deeds that convey mineral interest subject to the general rules governing contract interpretation? |
| 19479 | Clark v. Brown, 15 Vt. 658, 660 (1843) | 2 | An ex parte deposition need not be filed 30 days before the session of the court next after it is taken, when a term of court intervenes between the time of taking and using of the same. | The statute requires that the deposition should be filed thirty days previous to the session of the court in which it is offered in evidence. We can see no sufficient reason for requiring, nor does the statute require, that the deposition should be filed thirty days before the session of the court next after it was taken. Indeed the case of Smith v. Wood, 3 Vt. 485, appears to be decisive of the question. For neither of the reasons, should the county court have rejected the deposition | "Can an exparte deposition filed with the clerk less than 30 days before court, but remaining there through the term, and till the succeeding term of the court, be read?" |
| 19491 | United States v. Lalone, 44 F. 475, 476 (C.C.E.D. Wis. 1890), rev'd, 164 U.S. 255, 17 S. Ct. 74, 41 L. Ed. 425 (1896) | 1 | The commissioner of pensions is not a judicial officer, and his rulings in granting a pension upon improper or fraudulent testimony do not estop the government from recovering back moneys paid thereunder. | The commissioner of pensions is not a judicial officer, and his rulings do not conclude the government in a case like this. If he grants a pension upon improper or fraudulent testimony, and the government subsequently pays money on that pension, it may be recovered. It | Can the commissioner of pensions be considered a judicial officer? |
| 19501 | Lee v. Union R. Co., 12 R.I. 383, 384 (1879) | 1 | A horse was frightened by the overturning of a sleigh to which it was harnessed, the overturning being caused by a heap of snow and ice wrongfully made and left in a highway by defendant. Plaintiff, who was walking, was injured by the horse running away. Held, that the obstruction was the proximate cause of the injury. | We think the demurrer must be overruled. Everything which happened resulted naturally from the overturning of the sleigh by the embankment of snow and ice, without the intervention of any new responsible cause. In such cases the original cause is in law the proximate cause. See, in addition to the authorities cited for the plaintiff, Cooley on Torts, 68-77. The case of McDonald v. Snelling, 14 Allen, 290, is closely in point. There it was held that if one negligently frightens the horse of another, which thereupon runs away and comes into collision with a second horse and injures him, the owner of the second horse can recover of the person whose negligence caused the first to take fright and run away. See also Clark v. Lebanon, 63 Me. 393. | Who is liable for the damage when one negligently frightens another horse which thereupon injures another? |

| | | | | | |
|---|---|---|---|---|---|
| 19503 | Cole v. Ralph, 252 U.S. 286, 296, 40 S. Ct. 321, 326, 64 L. Ed. 567 (1920) | 5 | Location confers no right in the absence of discovery, nor will assessment work take the place of discovery. | 131415 Location is the act or series of acts whereby the boundaries of the claim are marked, etc., but it confers no right in the absence of discovery, both being dessential to a valid claim. Waskey v. Hammer, 223 U. S. 85, 90, 91, 32 Sup. Ct. 187, 56 L. Ed. 359; Beals v. Cone, 27 Colo. 473, 484, 495, 62 Pac. 948, 83 Am. St. Rep. 92; Round Mountain Mining Co. v. Round Mountain Sphinx Mining Co., 36 Nev. 543, 560, 138 Pac. 71; New England Oil Co. v. Congdon, 152 Cal. 211, 213, 92 Pac. 180. Nor does assessment work take the place of discovery, for the requirement relating to such work is in the nature of a condition subsequent to a perfected and valid claim and has 'nothing to do with locating or holding a claim before discovery.' | Does location or compliance with location requirements confer rights in the absence of a valid discovery? |
| 19514 | Fordyce v. Nelson, 91 Ind. 447, 448 (1883) | 3 | The assignment by one of two holders of a note of his half to the other is a good assignment in equity. | Where a note is owned by two, an assignment by one of them of his half of the note is a good assignment in equity. | "In equity, can assignment of a part of a debt be considered good?" |
| 19516 | People v. Lauder, 82 Mich. 109, 112–13, 46 N.W. 956, 956–57 (1890) | 1 | A plea in abatement to an indictment set forth that defendant, being ignorant that any charge was made against him, was, under compulsion of a subpoena, brought before the grand jury, and there compelled to give his oath, and without opportunity to consult or have the aid of counsel was compelled to testify, and did testify, "to facts material and necessary to prove the truth of said charges," and to sustain the indictment as a true bill; and that upon such testimony, and that of certain other witnesses, the indictment was found to be a true bill. Held, the plea was bad for uncertainty and insufficiency. | that in so testifying, and because the said defendant did not have the assistance of counsel to bring out all the facts and circumstances of the case, and while under legal restraint as aforesaid, he, the said defendant, in response to the questions and interrogatories put to him, did **957 testify to facts material and necessary to prove the truth of said charges of bribery, and to sustain and *113 establish the said indictment as a true bill; that upon the testimony of the said witnesses for the people, and the testimony of said defendant so given before the said grand jury as aforesaid, the said grand jury did find the said indictment to be a true bill, and did, to-wit, on the 24th day of September, 1889, present the said indictment to said court; and this the said defendant is ready to verify, and he prays judgment of said indictment, and that the same may be quashed, etc. JAMES B. LAUDER, Defendant. FRED. H. WARREN, Attorney for Defendant. F. A. BAKER, of Counsel. | Is a person testifying to the giving of a bribe which has been accepted liable to prosecution? |
| 19519 | Ward v. Clark, 232 N.Y. 195, 198, 133 N.E. 443, 443 (1921) | 1 | The supreme rule of the road as to automobilists at street intersections in cities is the rule of mutual forbearance. | The supreme rule of the road is the rule of mutual forbearance. | "Is mutual forbearance, the supreme rule of the road?" |

| | | | | | |
|---|---|---|---|---|---|
| 19536 | Hallet v. Desban, 14 La. Ann. 529, 530, 532 (1859) | 2 | A party who, without any interest in the property, is, by agreement, to receive as compensation for his services, and only as compensation therefor, a certain proportion of the profits, and is neither held out to the world as a partner nor through the negligence of the owner, permitted to hold himself out as partner, is not a partner either as to the owner or third person. | Judge Story says, "There may be a community of interest in the profits between the parties, without any community of interest in the property itself. But this participation in the profits will not (as we have seen) create a partnership between the parties themselves, as to the property, as well as the profits, contrary to their intentions. Nor will it necessarily create such a partnership in all cases, as to third persons."......<br><br>...<br><br>"An agent who is paid by a proportion of the profits of the adventure, is not therefore a partner in the goods." Meyer v. Sharpe, 5 Taunt. 74.<br><br>...<br><br>Under this view of the case,--it appearing that the defendant was not in reality a partner, and did not hold himself out as such, and especially, that that was the plaintiff's own understanding at the time,--judgment must be rendered in favor of the defendant. | When can a person be held liable to third persons as a partner? |
| 19541 | Raymond v. Middleton, 29 Pa. 529, 531 (1858) | 1 | It was held, that a note, made negotiable at a certain bank, without other words of negotiability, does not become a negotiable instrument until actually negotiated in the first place at the designated bank. | A note drawn in this form, does not become negotiable, unless actually discounted by the bank designated in the instrument. | When does a note become negotiable? |
| 19548 | J.L. Mott Iron Works v. Metro. Bank, 78 Wash. 294, 307–08, 139 P. 36, 41 (1914) | 2 | A bank, in the absence of limitation of authority known to it, need not inquire as to the disposition of the proceeds of a check indorsed by a general agent, even where the general agent indorses the check to himself and has it credited to his private account, and, as to agents of limited authority, the matter falls under the general rule as to the scope of the authority that the principal holds out. | The instruction numbered 5 we think is clearly erroneous. It is not a general rule of law that an agent having general authority to indorse checks belonging to his principal may not assign title of such check to himself. Nor is it a general rule of law in such a case that, when an agent does indorse a check with his principal's name and offers it for deposit to his private account in a bank, the bank must inquire as to his authority to so deposit it before accepting the check on the pain of being liable to the principal for the proceeds of the check. An agent, having general authority to indorse checks of his principal, must of necessity have authority to direct the disposition of the proceeds of the checks.<br><br>...<br><br>The principle which pervades all cases of agency, whether it be a general or special agency, is this: The principal is bound by all acts of his agent within the scope of the authority which he holds him out to the world to possess, although he may have given him more limited private instructions, unknown to the person dealing with him. | Is it law that a limited authority to indorse checks for deposit or collection only does not carry with it authority generally to assign or transfer title to the check from the payee? |
| 19549 | Best v. Nokomis Nat. Bank, 76 Ill. 608, 610 (1875) | 1 | An indorsement of a note or bill for collection does not transfer title therein. | But the indorsements, if on the bills, are shown to have been for collection merely, and for no other purpose, and did not transfer the title. | "Do indorsement for collection merely, and for no other purpose transfer title?" |

| | | | | | |
|---|---|---|---|---|---|
| 19551 | Com. v. Vandyke, 13 Pa. Super. 484, 488 (1900) | 7 | The intention of the legislature to be extracted from the Act of May 5, 1899, 31 P.S. SS 804, 807, 808, regulating the manufacture and sale of oleomargarine, is to prohibit the imitation of yellow butter by any admixture or addition to oleomargarine during or after manufacture; and the effect of the statute is that butter may be colored yellow, but oleomargarine may not be so colored. | The word coloration means the act or practice of coloring, or the state of being colored, and it is the act or practice of coloring oleomargarine which the act of 1899, is intended to prohibit. The use of the words "admixture or addition" in the statute indicates that the intention of the legislature is to prohibit the imitation of yellow butter by any admixture or addition to oleomargarine during or after manufacture. The statement in this case concedes that the coloring matter used in the oleomargarine sold by the defendant is not deleterious to health, so that no objection to it exists on that account, but it is alleged that it was "an imitation of yellow butter" and was "not free from coloration or ingredients that caused it to look like butter, which said coloring matter was the same as used in the coloring of pure butter" so that it comes under the ban of the statute. | "Is the sale of any article manufactured from animal fat, animal, or vegetable oils prohibited?" |
| 19552 | Mullen v. Morris, 2 Pa. 85, 85 (1845) | 4 | The indorser of a bill of exchange is liable for interest according to the law of the place on which it is drawn. | 4. Endorser is liable for interest on a bill according to the law of the place on which it is drawn. | Which law governs the interest payable on a bill? |
| 19553 | Case v. McKinnis, 107 Or. 223, 236, 213 P. 422, 426 (1923) | 2 | Where the Negotiable Instruments Law speaks it controls. | The Negotiable Instruments Law was adopted in this state in 1899 (Laws 1899, p. 18), and where the act speaks it controls. | Is it necessary for the Negotiable Instruments Law to control when it speaks? |
| 19554 | Huse v. Hamblin, 29 Iowa 501, 504 (1870) | 5 | The law of the place where the indorsement of paper is made will govern as to the rights and liability of the indorser and indorsee, rather than the law of the place where the instrument indorsed was made. | It is ruled in Thorp, Smith & Hanchett v. Craig, 10 Iowa, 461, that the law of the place of the contract of indorsement must govern the liability of the indorser. | Does the law where the contract took place govern the liability of the indorser? |
| 19565 | Grimm v. Warner, 45 Iowa 106, 107 (1876) | 2 | Where a promissory note had been transferred by indorsement as collateral security, and then, before maturity, with the knowledge of the indorsee, the payee had sold it to a third party, into whose possession it did not come until after maturity, held that the latter acquired it free from equities, and occupied the position of a good faith indorsee before maturity. | There was evidence introduced upon the trial of the case in the court below, tending to show that, prior to the maturity of the note in suit, the payee indorsed it in blank and deposited it in a bank as collateral security upon a loan he had effected there; that prior to the payment of his own paper and before the maturity of the note, he sold this note to plaintiff, receiving consideration therefor. There was no indorsement or transfer of the note in writing to plaintiff, and it remained in the possession of the bank until after maturity, when it was delivered to plaintiff, the indebtedness of the maker for which it was pledged being then paid. | Does promissory note taken as collateral security confer title upon the holder? |
| 19566 | Bishop v. Chase, 156 Mo. 158, 56 S.W. 1080, 1083 (1900) | 1 | An indorsement of a note written on a separate piece of paper, reciting that the note, with deed of trust accompanying, was placed as collateral security for a loan on another note, and attached to the original and collateral notes by a pin, where there is plenty of room on the note for the indorsement, was insufficient to invest the transferee with the rights of a bona fide purchaser. | But defendants insist that when the transfer of a negotiable note before due, for value, is accompanied by a written paper pinned to the note, setting forth a qualified indorsement of it, as in this case, this is a sufficient indorsement of the note to invest its transferee with all the rights of a bona fide purchaser, the same as if the indorsement had been written upon the note itself. As a general rule, an assignment of a negotiable instrument must be indorsed upon it,—that is, written upon its back,—but there is an exception to this rule when the back of the instrument is so covered as to make it necessary, then "an extra piece of paper may be attached or pasted on the instrument, and all future indorsements may be written on the attached paper." | Can an indorsement be made in another attached paper as part of the note? |

| | | | | | | |
|---|---|---|---|---|---|---|
| 19572 | Chumasero v. Gilbert, 24 Ill. 293, 294–95 (1860) | 1 | A party will only be allowed to recover interest according to the law of the forum, in the absence of an express agreement, unless it be alleged and proved that the law of the place of execution of the note sued fixes a higher rate. | The note read in evidence in this case, specified no rate of interest, and in the absence of any specific rate, the presumption is, that the rate is the same at the place of its execution, as it is within the jurisdiction of the court. Where no place is specified, our statute has authorized the recovery of only six *295 per cent., and the party, to recover more, should have shown by averment in his declaration, that the laws of New York authorized a recovery of a greater rate of interest, and should have sustained the averment by proof. In this case there was no such averment, and there was, consequently, error in permitting proof of that fact. | Which law governs a note if no rate of interest is specified? |
| 19579 | Patrick v. McManus, 14 Colo. 65, 68 (1890) | 1 | The essential element of a sham plea is its falsity. | It will be seen, from these definitions, that the essential element of a sham plea is its falsity; and yet it is evident that not every false plea can be stricken out upon motion supported by affidavit, as this would be to substitute a trial to the court upon affidavits for a jury trial. | Is falsity the essential element of a sham plea? |
| 19603 | Bank of Commerce & Sav. v. Randell, 107 Neb. 332, 334-35, 186 N.W. 70, 71 (Neb. 1921) | 4 | The provision of the Negotiable Instruments Law that an instrument is negotiated by delivery if payable to bearer while if payable to order it is negotiated by endorsement of holder completed by delivery was not intended to include all the ways in which the instrument might be negotiated. Rev.St.1913, S 5348. | ... it is held that the provision of the Negotiable Instruments Law that an instrument is negotiated by delivery if payable to bearer, while if payable to order it is negotiated by the indorsement of the holder completed by delivery, was not intended to include all the ways in which an instrument might be negotiated. | Can an instrument be negotiated by transferring from one person to another? |
| 19611 | Steubenville & Wheeling Traction Co. v. Brandon, 87 Ohio St. 187, 100 N.E. 325 (1912) | 1 | Team driver at crossing has equal rights with street car, and motorman should so control car as to be able to stop if necessary to avoid accident. | A street railway company operating cars on a public street in a much frequented part of a city has not the right to operate its cars at street crossings at a dangerous rate of speed without warning of approach, thus throwing all the burden of care and watchfulness to avoid accidents upon drivers of smaller vehicles seeking to cross, but its duty is to maintain proper control of the car in order to be able to stop or check the same if necessary to avoid accident. The driver of a horse and wagon at such street crossing has equal rights with the company in the street and to use the crossing; the driver in crossing making due allowance for the fact that the car runs upon a fixed track, and, by reason of its greater weight, being less easy to check or stop than the smaller vehicle. | Can the rights of a driver of a horse and wagon be equal? |
| 19623 | Tradesmen's Nat. Bank of Philadelphia v. Green, 57 Md. 602, 603 (1882) | 3 | The plaintiff was the holder for value of the following paper: We the undersigned, Commissioners of Madison Square, hereby promise to pay to the order of A. Petticord or bearer, the sum of $476.60, out of the appropriation for the said square for the year 1879, for lamps and fixtures furnished at Madison Square, according to contract, which is hereby approved: signed by the defendants, Commissioners of Madison Square. On this paper, set out in his narr., the plaintiff sued the defendants. The narr. did not contain the averment "for money payable by the defendants to the plaintiff." The defendants demurred, and judgment was entered for them. Held that the demurrer was well taken, on the ground that the instrument declared on was not negotiable, and, therefore, under the Code, Art. 9, sec. 1, the plaintiff could not maintain the suit in his own name; that there being no assignment of the paper in writing, the suit should have been instituted in the name of A.P. to the use of the holder. | **1 *602 APPEAL from the Baltimore City Court. The action in this case was begun in the Court below the 11th July, 1879. On the 19th January, 1881, by *603 leave of Court, the following amended declaration was filed: The plaintiff, by Robert D. Morrison, its attorney, sues the defendants for that the defendants, on the 26th day of June, 1878, made and executed a certain writing in the words following, to wit: Baltimore, 26th June, 1878. We, the undersigned, Commissioners of Madison Square, hereby promise to pay to the order of A. Petticord, or bearer, the sum of four hundred and seventy-six dollars and sixty cents, out of the appropriation for the said square for the year 1879, for lamps and fixtures furnished at Madison Square, according to contract, which is hereby approved. Jacob Green, Daniel Donnelly, Joshua E. Armiger, Commissioners of Madison Square. And the same was afterwards delivered to the plaintiff for value; and the said appropriation was duly made; and after the appropriation was made as aforesaid, the said paper was duly presented to the defendants for payment, but the defendants did not pay the same. | Is an assignment in writing necessary for a person to sue in his own name where the note is nonnegotiable? |
| 19625 | Badgley v. Votrain, 68 Ill. 25, 31–32 (1873) | 3 | The legal title to a note cannot be transferred by assignment by a separate instrument. | These notes were capable of legal transfer, but only in the mode prescribed by our statute, viz: by indorsement on the back by the payee, *32 and delivery. It could not be done by a separate instrument. | Can a note be assigned so as to vest the legal title in the assignee by a separate instrument? |

| | | | | | |
|---|---|---|---|---|---|
| 19631 | Chrysler Sales Corp. v. Smith, 9 F.2d 666, 670 (D.C.WIS. 1925) | 1 | In legal concept, insurance does not attach to property, but to persons. | But this idea is erroneous for at least two reasons: (1) The insurance never has effective existence until the sale at retail, by its very terms, or, as it may differently be stated, it is only to be made operative by an act of the retail dealer; and (2) the legal concept of insurance is that, in the absence of special circumstances, it does not attach to property but to persons. | Does insurance attach to property besides persons? |
| 19641 | Hoppe v. Russo-Asiatic Bank, 200 A.D. 460, 465, 193 N.Y.S. 250, 254 (App. Div. 1922), aff'd, 235 N.Y. 37, 138 N.E. 497 (1923) | 2 | Motives influencing assignor in making assignment, or the consideration does not affect validity of assignment as against debtor. | As to the motive of the assignor in making the assignment or the consideration given therefor, it is well settled (5 Corp. Juris, 940) that 'it is of no importance to the debtor what motives influence the assignor in making the assignment | Is the motive influencing an assignment important? |
| 19645 | Foster v. Berkey, 8 Minn. 351, 354–55, 359 (1863) | 1 | Title to a promissory note may be transferred without indorsement or delivery of such note. | Hence no manual delivery or endorsement of the notes was essential *355 to pass title.<br><br>...<br><br>But in Pease, Chalfant & Co. vs. Rush, Pratt et als., 2 Minn., 107, it was held that a promissory note can be transferred by mere delivery, so as to pass the title and the right to sue in the name of the holder; although a note payable to order passed without endorsement, is not taken in the regular course of business, and is subject to the same disabilities as if it had been taken after due; but the title passes sufficiently to maintain a suit in the name of the owner. | Is indorsement necessary for the transfer of title of a note? |
| 19649 | Richardson v. Gregory, 27 Ill. App. 621, 624 (Ill. App. Ct. 1887) | 2 | The partnership closes when there is an end put to the business itself. | A partnership closes when there is an end put to the business itself. | Does a partnership close when there is an end put to the business itself? |
| 19654 | Erskine v. Gardiner, 162 La. 83, 110 So. 97, 90 (La. 1926) | 1 | Dismissal of plaintiff's suit carries with it dismissal of intervention. | This court has repeatedly held that the dismissal of the plaintiff's suit carries with it the dismissal of the intervention. | Does a dismissal of plaintiff's suit carry with it dismissal of intervention? |
| 19661 | Jones v. Rider, 60 N.H. 452, 452 (1881) | 2 | A note is presumed to be payable where dated, if no other place of payment is mentioned therein. | A promissory note is presumed to be payable where dated, if no other place of payment is mentioned in the note. | Where is a note presumed to be payable? |
| 19662 | Chase v. Dow, 47 N.H. 405, 406 (N.H. 1867) | 1 | Where no place of payment is stipulated on a note running with interest, the law of the place where the contract was made will govern as to the rate of interest, though the note is secured by a mortgage on lands in another state, unless the circumstances show that the parties had in view the laws of the latter state in respect to the interest. | The law is well settled that when interest is expressly stipulated for in the contract, such interest is to be paid according to the law of the place where the contract was made, unless some other place of payment was stipulated, in which case interest is to be paid according to the law of the place where the contract was to be performed. And where no place of payment is stipulated the law of the place where the contract was made will govern as to the rate of interest, though the loan be secured by a mortgage on lands in another State, unless the circumstances show that the parties had in view the laws of the latter State, in respect to the interest. | According to which law is the interest to be paid? |

| | | | | | |
|---|---|---|---|---|---|
| 19668 | City of Joseph v. Joseph Waterworks Co., 57 Or. 586, 589, 111 P. 864 (1910) | 4 | A municipality has no authority to grant a perpetual utility franchise. | A municipality cannot, at least without statutory authority, grant a perpetual utility franchise. | Can municipalities grant perpetual franchises? |
| 19680 | Butler v. Paine, 8 Minn. 324, 328 (1863) | 1 | A promissory note or bill of exchange, payable in currency, is payable in money, and is negotiable. | On the other hand, we find in the case of Cockerill vs. Kirkpatrick, 9 Missouri, 697, it was held a note payable in "the currency of this State," is payable in gold or silver coin or in the notes of the Bank of Missouri, and a note payable "in the current money of Missouri," is payable in gold or silver coin alone. In Judah vs. Harris, 19 John. R., 144, it was held that a note payable "in bank notes, current in the city of New York," is a negotiable note. A note payable to B., or bearer, in "York State bills or specie," is a negotiable note. Keith vs. Jones, 9 John. R., 120. A note or bond payable "in good current money of the State," is payable in gold or silver." Graham vs. Adams, 5 Pike, Arkansas R. 261. In this case, the Court put the question upon the word "good," intimating that without it the words would not mean gold or silver, holding that the words "good, current money of the State," are distinguishable from "currency of this State," "current bank paper of the State," or "current notes of the State." See also, 1 Eng. Ark. R., 255; 4 Ala. 88. | Should a negotiable bill or note be payable in money? |
| 19682 | Johnson v. Henderson, 76 N.C. 227, 228 (1877) | 3 | A certificate of deposit, when expressed in negotiable words, is negotiable, and subject to the same rules that control other negotiable paper. | It seems to be settled now, after many conflicting decisions, that certificates of deposit are negotiable, when expressed in negotiable words, and that the transfer of them is governed by the same rules which control other promissory notes, and that the liability of the endorser is the same as upon the endorsement of any other promissory note. But in order to make a certificate of deposit negotiable, it must have the same certainty as to parties, time and mode of payment, as bills and notes; and the same causes which would make bills and notes unnegotiable, will make a certificate of deposit unnegotiable. 2 Daniel on Negotiable Instruments, 604-6. | Are certificates of deposit negotiable? |
| 19685 | Turner v. Howard, 91 Vt. 49, 99 A. 236, 236–37 (1916) | 3 | An exchange of personal property, including horses, is governed by the same rules of law as a contract of sale, and the parties are liable for fraud. | There is a more or less prevalent notion, outside the profession at least, that an exchange of personal property, particularly a "swapping" of horses, is governed by different legal principles than a sale of the same property. But the law recognizes no such distinction. A contract of exchange is governed by the same rules of law as a contract of sale. *237 Russell v. Phelps, 73 Vt. 390, 50 Atl. 1101. Thus it was held in Patee v. Pelton, 48 Vt. 182, that a warranty of title is implied in a contract of exchange the same as in a contract of sale. The rule as to liability for fraud in the sale of property was applied to the exchange of real estate in Shanks v. Whitney, 66 Vt. 405, 29 Atl. 367, and to an exchange of horses in Rand v. Bordo, 85 Vt. 97, 81 Atl. 251. It may be conceded that both fraud and damage must concur to establish liability in such an action; but the defendant misconceives the correct rule of damages, claiming one rule for a sale and another for an exchange. | Is a contract or law of exchange the same as that of sale? |
| 19688 | Pittsburgh, C., C. & St. L.R. Co. v. Iddings, 28 Ind. App. 504, 62 N.E. 112, 114 (1901) | 8 | The amount of damages is the amount which has been or will be expended necessarily in making the repairs. | The amount of damages may be estimated, being the amount which has been or will be expended necessarily in making the repairs. Town of Troy v. | How is the amount of damages estimated for making repairs? |

| | | | | | |
|---|---|---|---|---|---|
| 19689 | Cowart v. Perrine, 18 N.J. Eq. 454, 457 (Ch. 1867) | 3 | In equity the statute of limitations is a bar to an account between partners. | The statute of limitations expressly includes actions of account, which will lie at law or in equity between partners, and the statute is therefore held to be a bar in equity, to an account, and to an account between partners. Angell on Limitations, § 27; Collyer on Part., § 374-5-6; Barber v. Barber, 18 Ves. 286; Tatam v. Williams, 3 Hare 355; Atwater v. Fowler, 1 Edw. C. R. 423. | Is statute of limitation a bar to a bill filed for an account of partnership transactions? |
| 19694 | Nathan v. Louisiana, 49 U.S. 73, 82 (1850) | 5 | The taxing power of the state is an attribute of sovereignty and where there has been no compact with the federal government or cession of jurisdiction for the purposes specified in the constitution such power reaches all property and business within the state not properly denominated the means of central, general government. | The taxing power of a state is one of its attributes of sovereignty. And where there has been no compact with the Federal government, or cession of jurisdiction for the purposes specified in the Constitution, this power reaches all the property and business within the state, which are not properly denominated the means of the general government; and, as laid down by this court, it may be exercised at the discretion of the state. | Is the taxing power of a state one of its attributes of sovereignty? |
| 19704 | Shaffer v. Carter, 252 U.S. 37, 49 (1920) | 11 | Governmental jurisdiction in matters of taxation depends upon the power to enforce the mandate of the state by action taken within its borders, either in personam or in rem, according to the circumstances of the case, and the jurisdiction to act remains, even though all permissible measures are not resorted to. | Governmental jurisdiction in matters of taxation, as in the exercise of the judicial function, depends upon the power to enforce the mandate of the state by action taken within its borders, either in personam or in rem according to the circumstances of the case, as by arrest of the person, seizure of goods or lands, garnishment of credits, sequestration of rents and profits, forfeiture of franchise, or the like; and the jurisdiction to act remains even though all permissible measures be not resorted to. | Is the power of taxation of a state limited to subjects within its jurisdiction? |
| 19706 | Jones v. Rider, 60 N.H. 452, 455–56 (1881) | 2 | A note is presumed to be payable where dated, if no other place of payment is mentioned therein. | The note in suit is dated in Boston, and is presumed to be payable where dated (2 Par. Cont. 585, Tillotson v. Tillotson, 34 Conn. 335, and Chase v. Dow, 47 N. H. 405), and the contract is governed by the laws of Massachusetts. The referee has not found as a fact that it is unlawful in Massachusetts to stipulate for interest at the rate of ten per cent. per annum. The unlawfulness *456 cannot be presumed. The defendants having stipulated to pay interest at the rate of ten per cent., interest must be computed accordingly. Orcutt v. Hough, 54 N. H. 472; Lawrence v. Bassett, 5 Allen 140; 2 Par. Cont. 583. | When is a promissory note presumed to be payable? |
| 19710 | Williams v. Osbon, 75 Ind. 280, 283 (1881) | 2 | The term "assign" implies that the assignment was made on a separate instrument. | The word "assigned" has no such signification, but implies that the assignment was made upon a separate instrument. | Does the word assigned imply that the assignment was made upon separate instrument? |
| 19711 | Stagg v. Linnenfelser, 59 Mo. 336, 341–42 (1875) | 1 | Although, under Wag. St. p. 216, S 15, promissory notes expressed to be for value received shall "be negotiable in like manner as inland bills of exchange," under the provisions of Wag. St. p. 89, S 40, notes payable to a decedent can be assigned after his death only by a duly qualified executor or administrator, and then only to discharge the claims of creditors, legatees, or distributees equal to the amount of the notes. | But this doctrine of the common law does not prevail in this State, and the power of the personal representative of the decedent, whether testator or intestate, to dispose of the assets is limited and regulated by law. This was the express ruling of this court in Stagg vs. Greene, (47 Mo., 500) where it was held, that until an executrix has taken the steps prescribed by the statute, and become thus qualified according to law, she possessed no power to transfer a promissory note made payable to her testator; and that the petition which failed to aver her compliance with the statutory requirement, was bad on demurrer, as showing no title in the plaintiff to the instrument sued on. Again, our legislature has pointed out only *342 one instance in which executors or administrators may assign notes and bonds of the estate, and that is in discharge of the claims of creditors, legatees or distributees, equal to the amount of the bond or note. (Wagn. Stat., 89, § 40.) | Is a note negotiable after the death of the payee? |
| 19712 | Glennan v. Rochester Tr. & Safe Deposit Co., 209 N.Y. 12, 16–17, 102 N.E. 537, 539 (1913) | 2 | The death of the drawer of a check revokes the authority of the payee to collect the check. | That the death of the principal revokes the authority of the agent to collect the check in those jurisdictions where the check is considered a mere order must also be conceded. Fordred v. Seamen's Bank, supra; Atty. Genl. v. Continental Life Ins. Co ., supra; *17 Long v. Thayer, 150 U. S. 520, 14 Sup. Ct. 189, 37 L. Ed. 1167. | Does the death of the principal revokes the authority of its agent to collect a check? |

| 19724 | Van Ness v. Hyatt, 38 U.S. 294, 298, 10 L. Ed. 168 (1839) | 3 | At common law, an equitable interest, such as an equity of redemption, is not liable to execution. | The principle of the common law undoubtedly is, that no property but that in which the debtor has a legal title is liable to be taken in execution; and, accordingly, it is well settled in the English Courts, that an equitable interest is not liable to execution. | Are equitable interests liable to execution? |
|---|---|---|---|---|---|
| 19762 | Anderson v. Nesbitt, 43 Ind. App. 703, 88 N.E. 523, 524 (1909) | 2 | Owner of cows wrongfully allowing them to run at large on highway is not liable for injuries caused by horse frightened at the cows and running away; there being no special circumstances, such as allowing them to run at large during nighttime, or that they so obstructed the beaten part of highway that a horse would be frightened. | There is no averment that the owner of the cows did anything but permit them to run at large on the public highway, or that it was in the nighttime when the accident occurred, and the cows had so obstructed the beaten part of the highway that a horse of ordinary gentleness might take fright at same, or any averment that would require the cause submitted to a jury. We can therefore say, as a matter of law, that appellee was not guilty of such negligence as will make him liable in damages to the appellant on account of his horse taking fright at the cattle upon the public highway. We find no reversible error. | Will the object in the highway in violation of statute make the owner liable for the damages which the object may have occasioned to the horses? |
| 19763 | New v. Walker, 108 Ind. 365, 9 N.E. 386, 390 (1886) | 14 | Where a statute, in direct terms, declares void a promissory note when given for a vicious consideration, it is ineffective even in the hands of a good-faith holder. | There is a well-defined and fully-recognized distinction between promissory notes made illegal by statute, and those made inoperative between the immediate parties, because the consideration is one that the general rules of law condemn. It is, indeed, generally held that a promissory note, expressly declared by statute to be void when given for a vicious consideration, is ineffective even in the hands of a bona fide holder. 1 Pars. Notes & Bills, 276; 1 Daniel, Neg. Inst. § 197. | When is a note void? |
| 19768 | Chickering v. Raymond, 15 Ill. 362, 364 (Ill. 1854) | 2 | The legal title to a note cannot be transferred by assignment by a separate instrument. | The deed of assignment did not vest them with the legal title to the note, so as to authorize them to sue upon it in their own names. Under our statute, the title to a promissory note can not be transferred by a separate instrument of writing | Can title to a promissory note be transferred by a separate instrument in writing? |
| 19785 | Mahr v. Young, 13 Wis. 634, 636 (1861) | 8 | The object of an appeal is to try the case on its merits, and it does not perform the function of a certiorari. | The object of an appeal from a justice, where the judgment exceeds $15, is to try the case on its merits. Barnum vs. Fitzpatrick, 11 Wis., 81, and cases cited. Such an appeal is not designed to perform the function of a certiorari. | What is the object of an appeal from the judgment of a justice? |
| 19814 | W. Union Tel. Co. v. Pennsylvania R. Co., 120 F. 362, 382–83 (C.C.W.D Pa.), aff'd, 123 F. 33 (3d Cir. 1903), aff'd, 195 U.S. 540, 25 S. Ct. 133, 49 L. Ed. 312 (1904), and aff'd, 195 U.S. 594, 25 S. Ct. 150, 49 L. Ed. 332 (1904) | 3 | A telegraph company, which for more than 20 years has occupied and used by its lines a part of the right of way of a railroad under a lease, and during such time has paid rental monthly, so long as it continues such occupancy is estopped by the relation of landlord and tenant to deny the title of the railroad company, or its right to re-enter and take possession of the ground so occupied after the lease has been terminated in accordance with its terms, on the ground that when the lease was made the telegraph company was already in possession under the right of a third party, paramount to that of the railroad company, which it had no power to release. | The *383 estoppel the law here enforces is not an estoppel by deed. It is not based on the validity of this release. It stands on higher ground. It 'originates in the relation between lessor and lessee' (Blight's Lessee v. Rochester, supra); and it may exist even though the lessor or lessee be incompetent to contract (Wilson v. James, 79 N.C. 349; Helmes v. Stewart, 26 Mo. 529; Ramires v. Kent, 2 Cal. 558; Daniels v. Tearney, 102 U.S. 415, 26 L.Ed. 187). In view of the relation of tenancy existing between these parties (a relation running over a period of more than 20 years, and reaffirmed and acknowledged each month by the payment of rent), and the absence of any repudiation of such relation during all those years, we are firmly of opinion that a court of equity should, in support of this wholesome rule, hold, as we do, that the tenant is estopped from setting up in this bill as a ground for denying the landlord re-entry that the latter has no title to that which the complainant still holds under the lease. | Is the title of the lessee in fact the title of the lessor? |

| ID | Citation | # | Rule | Opinion Text | Question |
|---|---|---|---|---|---|
| 19826 | Barr v. Essex Trades Council, 53 N.J. Eq. 101, 112–13, 30 A. 881, 885 (Ch. 1894) | 4 | A person's business is property, entitled under the constitution to protection from unlawful interference. Every person has a right, as between his fellow citizens and himself, to carry on his business, within legal limits, according to his own discretion and choice, with any means which are safe and healthful, and to employ therein such persons as he may select; and every other person is subject to the correlative duty arising therefrom, to refrain from any obstruction of the fullest exercise of this right, which can be made compatible with the exercise of similar rights by others. | A man's business is property. By the first section of the bill of rights of the constitution of New Jersey, the right of acquiring, possessing, and protecting property is classed, as a natural and inalienable right which all men have, with those of enjoying and defending life and liberty, and of pursuing and obtaining safety and happiness. This is an echo of Magna Charta, repeated in the Declaration of Independence. Mr. Justice Bradley, in the Slaughterhouse Cases, 16 Wall. 36, at page 116, says: "For the preservation, exercise, and enjoyment of these rights [life, liberty, and the pursuit of happiness], the individual citizen, as a necessity, must be left free to adopt such calling, profession, or trade as may seem to him most conducive to that end. Without this right he cannot be a freeman. This right to choose one's calling is an essential part of that liberty which it is the object of the government to protect, and a calling, when chosen, is a man's property and right. Liberty and property are not protected where these rights are arbitrarily assailed." Mr. Barr's business of publishing the paper, with the incidents of its circulation and advertising, was as much his property as were the type and presses upon which the paper was printed. A harmful interference with the circulation and with the advertising in his paper was therefore an injury to his property. It was Mr. Barr's personal right, without interference or dictation from any person or persons, to employ in the prosecution of his business such mechanical appliances as were safe and healthful, and to employ in the production of his paper such persons and lawful means as he might choose. It is said in Hilton v. Eckersley, 6 El & Bl., at page 74: "It is the privilege of a trader in a free country, in all matters not contrary to law, to regulate his own mode of carrying it [his business] on according to his own discretion and choice." Beatty, J., in Coeur, etc., Min. Co. v. Miners' Union, 51 Fed. 260, says: "Whatever enthusiasts may | Does a person have a legal right to dispose of his own labor as he wishes? |
| 19834 | W. Elec. Co. v. Cooley, 79 Cal. App. 770, 777–78, 251 P. 331, 334 (Cal. Ct. App. 1926) | 3 | Electric power line is "structure," within statute giving lien on building or other structure. Code Civ.Proc. S 1183. | That decisions from other states are of little value in considering our statute arises from the fact that, in almost every instance which we have examined, there is a difference in the wording employed by the Legislature, but in the Oregon case the language is identical with our own, and *778 we think the holding of the court in that case conforms with the intent of section 15 of article 20 of our Constitution and the enactments of the Legislature, as expressed in section 1183, Code of Civil Procedure, and that an electric power line, consisting of poles and wires strung thereon, insulators, and such materials as enter into the work, constitutes a structure upon which materialmen may be entitled to a lien, other provisions of the law necessary to the enforcement thereof being complied with. | Are electric poles supporting power lines considered structures? |
| 19850 | Chancely v. Bailey, 37 Ga. 532, 540 (1868) | 3 | Treason is offense against political sovereignty of government. | Treason is an offence committed against the political sovereignty of the government. | Is treason an offense against the political sovereignty of the government? |
| 19858 | Allen v. Hawley, 6 Fla. 142, 155–56 (Fla. 1855) | 9 | As a general rule, the several owners of a merchant vessel or steamboat hold their respective interests as tenants in common, and not as copartners, and are to be governed by the laws applicable to that species of tenure; but to this rule there may be exceptions, either growing out of the express agreement of the parties, or to be implied from the nature and character of the business or adventure in which they may be about to engage. | The result of our investigations is that as a general rule, the several owners of a merchant vessel or steamboat, hold their respective interests as tenants in common, and not as copartners, and consequently are to be governed by the rules of law applicable to that species of tenure; but *156 that, to this rule, there may be exceptions, either growing out of the express agreement of the partners, or to be implied from the nature and character of the business or adventure, in which they may be about to engage. | How is a part-ownership of a ship different from the partnership? |
| 19860 | Grimison v. Russell, 14 Neb. 521, 16 N.W. 819, 819 (1883) | 1 | A memorandum on the back of a note, made at the time of its execution, stating that the note is binding only on a certain condition, must be taken as part of the note. | There can be no doubt, upon the authorities, that the writing on the back of the note must be taken as a part of it, the same as though it were written on its face and above the signature. | Is memorandum on the back of a note a part of the instrument? |

| | | | | | |
|---|---|---|---|---|---|
| 19881 | Zimmerman v. Huber, 29 Ala. 379, 380 (1856) | 2 | One partner is not entitled to compensation from the partnership for his services in attending to the partnership affairs, unless there is a contract therefor express or implied. | Each partner was bound to bestow his services and attention in promotion of the general interest, and neither partner is entitled to any compensation for such services and attention, there being no agreement to that effect.-- Bradford v. Kimberly, 3 Johns. Ch. 431; Collyer on Partnership, (Perkins' ed.) § 183. | Is a partner entitled to charge the partnership for his services to it? |
| 19895 | Simpson v. Payne, 79 Cal. App. 780, 786, 251 P. 324, 326–27 (Cal. Ct. App. 1926) | 5 | "Clerks of municipal courts" are not "officers of an inferior court," or "county officers". Const. art. 11, S 71/212. | Holding, as we do, that the municipal courts are not inferior courts within the meaning and intent of section 7½ of article 11 of the Constitution, the attachés of that court are not officers of an inferior court **327 within its meaning. Nor must we confuse their status with that of the county clerk and his deputies, who are county officers. Clerks and attachés of the municipal court are necessary adjuncts of that court. | Are clerks of municipal courts officers of an inferior court? |
| 19905 | Raritan & D.B.R. Co. v. Delaware & R. Canal Co., 18 N.J. Eq. 546, 570–71 (1867) | 4 | The franchise of taking tolls upon public ferries, bridges, or highways, is a part of the sovereign prerogative, which can only be obtained by grant. Railroads for popular use, and for tolls, are publici juris. | A franchise to build a railroad for public use and to take tolls, the title to which is held for the sovereign; and, like every other thing susceptible of private ownership, it must, of necessity, be under *571 the protection of the laws. | "Is the title of the property of a franchise held for the sovereign, which is a necessity by law?" |
| 19910 | Cruzen v. Merchants' State Bank of St. Hilaire, 109 Minn. 303, 304, 123 N.W. 666, 666–67 (1909) | 1 | A second appeal cannot be taken while a former appeal is pending. | The dismissal of an appeal in this court does not preclude the taking of another appeal in the same cause **667 within the time limited (Rev. Laws 1905, § 4377); but the question here to be decided is whether a party having taken an appeal to this court may, while it is pending, take another appeal from the same order or judgment. We hold that it cannot, for the reason that such a case is not within the provision of the statute providing for a second appeal from the same order or judgment. | Can a second appeal be taken while a former appeal is pending? |
| 19911 | Tremont Lumber Co. v. May, 143 La. 389, 411, 78 So. 650, 657–58 (1918) | 15 | Where document alleged to be made part of petition is not in fact annexed and filed, although court is of opinion that it discloses no cause of action, it may at any time before exception allow plaintiff to amend. | In Lamorere v. Cox, 32 La. Ann. 1045, being a suit upon a mortgage and certain judicial proceedings, which were alleged to be annexed to the petition but were not so annexed, the court said (inter alia): 'We have, however, no hesitation in stating that where the allegation is formally made that a document, record, or other writing is annexed and made a part of a petition, and it is not so annexed, nor even filed in evidence, when exception is made [tried] to the cause of action or sufficiency of the petition, * * * it should not be considered as forming part of the petition.' (Italics by present writer.) **658 It was found in the case cited, however, that the allegations of the petition, without the missing documents, disclosed a cause of action, and the judgment, maintaining the exception of no cause of action, was reversed and the case remanded. | Can a suit which does not allege a cause of action be amended? |
| 19917 | Hoy v. Smith, 2 Wyo. 459, 461 (1882) | 3 | The meaning of a "non-suit" is that plaintiff does not proceed to a trial, and a non-suited plaintiff need not move for a new trial as a condition precedent to taking an appeal. | It was not necessary, we think, to move for a new trial, which the plaintiff in error did out of abundant caution. There was no trial; the meaning of a non-suit is that the plaintiff does not proceed to a trial. | Is an instance where the plaintiff does not proceed to trial be a non-suit? |
| 19923 | Kettlewell v. Peters, 23 Md. 312, 317 (1865) | 1 | A non-suit must be the voluntary act of the plaintiff. | A non-suit must be the voluntary act of the plaintiff. Evans' Prac., 314. | Should a non-suit be the voluntary act of the plaintiff? |
| 19935 | In re Codding, 9 F. 849, 849 (W.D. Pa. 1881) | 2 | A judgment against a partnership for a partnership debt, entered by confession of all the partners, is a lien upon the partnership real estate. | The question upon which the case turns is whether a judgment against a partnership, for a partnership debt, entered by confession of the firm, and at the suggestion of all the partners, is a lien against the partnership real estate. | Can a judgment against a firm operate as a lien on the real estate of the partners? |
| 19944 | Baltzer v. Chicago, M. & N.R. Co., 89 Wis. 257, 60 N.W. 716, 717 (1894) | 2 | A witness may be permitted to amend his deposition. | Permitting the witness to amend his deposition. This, as we understand it, was the correction of his own testimony, and that was proper. That should not be denied to any witness. | May a witness be permitted to amend his deposition? |

| | | | | | |
|---|---|---|---|---|---|
| 19956 | Graham v. Whitely, 26 N.J.L. 254, 257 (Sup. Ct. 1857) | 2 | The interrogatories must be signed either by the party or his counsel. | The statute authorizing commissions and the taking of depositions (Nix. Dig. 884, § 1,) requires that the interrogatories for the examination of the witness shall be signed by the parties, or their counsel in the cause, or such of them as shall request the said commission. | Should the interrogatories be signed either by the party or his counsel? |
| 19959 | Respublica v. De Longchamps, 1 U.S. 111, 1 L. Ed. 59 (Pa. O. & T. 1784) | 1 | A French subject was indicted for assaulting a consul general of France to the United States and consul for Pennsylvania, residing at Philadelphia. Held, that he should be tried on the principles of the laws of nations, which form a part of the municipal law of Pennsylvania. | Charles Julian De Longchamps, commonly called the Chevalier De Longchamps, was indicted, that 'he on the 17th of May, 1784, in the dwelling-house of his Excellency the French Minister Plenipotentiary, in the presence of Francis Barbe Marbois, unlawfully and insolently did threaten and menace bodily harm and violence to the person of the said Francis Barbe Marbois, he being Consul General of France to the United States, Consul for the State of Pennsylvania, Secretary of the French Legation &c. resident in the house aforesaid, and under the protection of the law of nations and this Commonwealth.' And that 'afterwards, to wit on the 19th of May in the public street &c. he the said Charles Julian de Longchamps unlawfully, premeditatedly and violently, in and upon the person of the said Francis Barbe Marbois under the protection of the laws of nations, and in the peace of this Commonwealth, then and there being, an assault did make, and him the said Francis Barbe Marbois unlawfully and violently did strike and otherwise &c. in violation of the laws of nations, against the peace and dignity of the United States and of the Commonwealth of Pennsylvania.' | Is the law of Nations part of state law? |
| 19961 | Gould v. Elgin City Banking Co., 136 Ill. 60, 63–64, 26 N.E. 497, 498 (1891) | 1 | Where party has two attorneys, absence of one is no ground for continuance, where it is not shown that other is unable to conduct case. | The defendants were represented by two solicitors,—one was present and the other absent,—and, so far as appears, the solicitor who was present was entirely competent to present the cause for the defendants, and we do not think it was error to refuse a continuance of the cause. In any ordinary case, one solicitor can try the cause as well as several, and, if the absence of one of several solicitors employed in a cause was held to be ground for a continuance, it might in many cases be impossible to obtain trial without great and unnecessary delay. Had it appeared to the court that a trial could *64 not be had without injury to the defendants, and the absence of counsel was unavoidable, in the exercise of a sound discretion, a postponement or continuance might have been ordered; but such was not the case. | "Where a party has two attorneys, is absence of a ground for continuance?" |

| | | | | | |
|---|---|---|---|---|---|
| 19971 | Grafton Bank v. Moore, 13 N.H. 99, 101–02 (1842) | 3 | In order to prove that defendant was a partner with others, evidence was introduced that a person who wished to ascertain if the firm were solvent called on defendant, who told him that E. (a member of the firm) had done the business of the company, and that he (defendant) knew nothing about it. Held, that as it did not appear what was the conversation between the parties prior to the remark made by defendant, and which might explain it, this declaration did not prove that he was a member of the firm. | Evidence is also offered to prove that Moore is a partner, by his admissions. The agent of a factory at Gilmanton desired to know whether the firm of Ellis, Little and Company were responsible. But his object was not to know who constituted the partnership. He called on Moore, who told him that Little had done the business of the company, and that he knew nothing about it. Is this declaration competent to be submitted to the jury, as tending to prove that Moore admitted himself to be a member of the firm? If the agent had asserted, in Moore's presence, that he was a member of the firm; or if Moore must have understood, from *102 the manner in which the inquiries were made, that the agent was addressing him as a partner, his omission to deny his liability might be competent evidence that he was liable. But the case does not state what was said to Moore, or the manner in which it was said; all we know is, that in answer to something said by the agent, Moore said that Little had done the business of the firm, and that he, Moore, knew nothing about it. The agent might have addressed him as an indifferent person; as one who had access to no better sources of information than those common to all. This is not improbable; or, at least, there is nothing in the answer of Moore which might not, probably, have been said by any person in the vicinity who knew that there was such a firm. It implies no particular knowledge of the affairs of the partnership. His remark might have been made in entire ignorance that he was supposed to be liable. And it would be extremely unjust to hold that he had admitted a fact which he was interested to deny, unless it should appear that it was done intelligently, and unless his language should be susceptible of only one sensible construction. And as we are not informed what was the conversation between the parties which preceded the remark of Moore, and might be explanatory of it, we think the evidence as it now appears does not | Is a declaration by one partner on the existence of partnership admissible to charge himself only and not the other parties? |
| 19976 | Tryon v. Clinch, 44 Cal. App. 629, 632, 186 P. 1042, 1043 (Cal. Ct. App. 1919) | 5 | A principal's ratification of the act of his agent requires no new consideration. | We may make the added remark, however, that in case of ratification of a contract by a principal there need be no new consideration particularly referable to the doing of the act of ratification. | Does ratification require new consideration? |
| 19979 | In re McLean, 16 F. Cas. 240, 245 (D. Del. 1877) | 3 | Under the bankrupt acts of 1841 and 1867, providing that the net proceeds of the joint stock shall be appropriated to pay the creditors of the co-partnership, and the net proceeds of the separate estate of each partner shall be appropriated to pay his separate creditors, the individual and firm creditors have the primary right to resort to the respective estates, and neither class has a right to go on the funds primarily belonging to the other until the creditors having priority are fully satisfied. | The statute under which these proceedings in insolvency were instituted, and by virtue of which the assignees hold these assets, has declared that, in cases where proceedings are thus instituted against a copartnership, all the estate of the partnership and all the separate estate of the individual partner shall be passed into the hands of the assignees, that the avails thereof shall be kept distinct, and, 'that the net proceeds of the joint stock shall be appropriated to pay the creditors of the company, and the net proceeds of the separate estate of each partner shall be appropriated to pay his separate creditors; and if there shall be any balance of the separate estate of any partner after the payment of his separate debts, such balance shall be added to the joint stock for the payment of joint creditors; and if there shall be any balance of the joint stock, after the payment of the joint debts, such balance shall be divided and appropriated to and among the separate estates of the several partners." St. 1838, c. 163, § 21. | Will the property of the individual partners be first applied to the payment of the debts of the individual partners before it is applied to the partnership debts? |
| 19980 | Brock v. Bateman, 25 Ohio St. 609, 616 (1874) | 1 | Where a partnership and the several members of the firm are insolvent, and there are no partnership funds for distribution among the creditors, the firm creditors are entitled to share equally with the creditors of each partner in the distribution of his individual assets; the amount so distributed to the creditors of the firm, however, not to exceed the amount of their claims. | It seems to us, however, that the better authorities, both English and American, as well as reason, establish the justice of the rule adopted by the court below. In other words, equity will apply the assets of an insolvent partnership in payment of the creditors of the firm, to the exclusion of creditors of its individual members, and if there be no partnership assets for distribution, as was the case here, the creditors of the firm have a right to share equally with the creditors of each individual member of the firm in the pro rata distribution of his assets. Of course, the aggregate amount so distributed to the creditors of the firm must not, in any case, exceed the amount of their claims. | How will the partnership creditors be paid their share when there is no partnership property? |

| | | | | | |
|---|---|---|---|---|---|
| 19982 | Sheriff v. Hull, 37 Iowa 174, 175–76 (1873) | 2 | If it be shown that Revision, S 4082, requiring that both or neither of the parties shall be present at the taking of a deposition, has not been complied with, the deposition will on motion be suppressed. | Our statute enacts (Revision, § 4082): "Where a deposition is taken upon interrogatories, neither party, nor his agent or attorney, shall be present at the examination of a witness, unless both parties are present, or represented by an agent or attorney, and the certificate shall state such fact, if party or agent is present." Nutter v. Ricketts, 6 Iowa, 92, arose and *176 was decided before this statute was enacted, and hence is no authority for construing the statute. It is clear in this case, that the above section was violated. The objection to the deposition was, therefore, well taken. | "On taking a deposition on interrogatories, should party be present at the examination of a witness?" |
| 19984 | House v. Peacock, 84 Conn. 54, 78 A. 723, 724 (Conn. 1911) | 2 | Where a negotiable note was payable on demand after date, it was payable on demand, though providing that it should bear interest from date, and hence, as between the maker and payee, it was due and payable at once, and limitations began to run immediately. | A negotiable instrument expressed to be payable "on demand after date" is payable on demand, and it is so payable, although it is made to bear interest from date. Fenno v. Gray, 146 Mass. 118, 15 N. E. 87; O'Neill v. Magner, 81 Cal. 631, 633, 22 Pac. 876, 15 Am. St. Rep. 88; Turner v. Iron Chief Mining Co., 74 Wis. 355, 358, 43 N. W. 149, 5 L. R. A. 533, 17 Am. St. Rep. 168; Peninsular Savings Bank v. Hosie, 112 Mich. 351, 355, 70 N. W. 890. Such demand obligations are as between the maker and payee due and payable immediately, and suit can be brought upon them immediately. Winsted Savings Bank v. New Hartford, 78 Conn. 319, 328, 62 Atl. 81; Curtis v. Smith, 75 Conn. 429, 431, 53 Atl. 902; Trustees of Alms–House Farm v. Smith, 52 Conn. 434, 437; Lockwood v. Crawford, 18 Conn. 361, 371. The statute of limitations begins to run against them immediately. Trustees of Alms–House Farm v. Smith, 52 Conn. 434, 437. | Is an instrument payable on demand after date payable or not? |
| 19985 | McLeod v. Despain, 49 Or. 536, 549, 90 P. 492, 497 (1907) | 4 | Appearance of the word "trustee," added to a payee's name in a note, or to a grantee's name in a deed or mortgage, or in connection with the name of a party to a written instrument, is sufficient to put persons dealing with such trustee upon inquiry, and, in the absence of inquiry, they will be presumed to have known what they might have discovered. | This point has not heretofore been directly before this court; but we find the great weight of authority, as well as the better reasoning, support the rule that the word "trustee," added to a payee's name in a written instrument, is sufficient to put the purchaser upon inquiry as to all the terms and conditions under which it may have been executed, and in the absence of such inquiry knowledge thereof will be presumed. | Does the word sheriff on a note denote descriptio personae? |
| 19987 | State v. La Flame, 30 N.D. 489, 152 N.W. 810, 812 (1915) | 2 | The crime of giving a bribe to a deputy sheriff held complete when the money was feloniously paid to influence future acts with reference to a possible future violation of law. | And what is true of accepting a bribe must be equally true as to the giving of one. It is immaterial, therefore, whether the officer was not performing or about to perform a duty of arresting for violation of the prohibition laws, or that the defendant had not, in fact, committed a violation of that law. The crime was complete when the offer was made feloniously or corruptly to influence official conduct with reference to a possible future violation of law, or to purchase future exemption from arrest with respect thereto. The information was not subject to these grounds of demurrer. | Is an attempt to bribe a deputy an attempt to bribe the sheriff? |
| 19990 | Hall v. Houghton, 37 Me. 411, 412 (1854) | 2 | The magistrate's certificate that the party did not object is extraofficial. | The magistrate's certificate, that the defendant was present and did not object, &c., is extra official, and not to be regarded. | Is a magistrate's certificate that a party does not object to extraofficial? |
| 19993 | Watts v. Eufaula Nat. Bank, 76 Ala. 474 (1884) | 6 | Where a surety pays for the defaults of his principal, he need not, to entitle him to the right of subrogation, at the time of payment signify his election and acceptance of such right; but it is sufficient if he show suretyship, payment of the debt, and a lien held by the creditor, in the absence of some act by him which amounts to a waiver. | We can not assent to the proposition, insisted on by appellant, that the surety must do some act, at the time of payment, signifying his election and acceptance of the right of subrogation. Suretyship, payment of the debt by the surety, and a lien held by the creditor for the payment of the debt, generally, ipso facto, create the right, which continues until lost by laches, or until the surety does something that amounts to a waiver. | Is the waiver of the right of subrogation a question of intention? |

| | | | | | |
|---|---|---|---|---|---|
| 19995 | Fuller v. United States, 30 Ct. Cl. 108, 114 (1895), aff'd, 160 U.S. 593, 16 S. Ct. 386, 40 L. Ed. 549 (1896) | 2 | The Navy Regulations, 1893, which declare that "mates are petty officers," are authorized by law. | In the latter the Revised Statutes were not deemed to have effected any change in the law, and mates continued to be treated as the lineal descendants of "warranted masters' mates," and consequently as warrant officers. At last the Navy Department spoke definitively by the Navy Regulations, 1893, "mates are petty officers," article 28. The subject belongs to the Navy Department, and the Navy Regulations are not the hasty utterance of transitory orders, but the well-considered act of the President himself for the guidance of the entire Navy--a work, in short, authorized by law and having in the Navy the force of law. | Are mates considered petty officers? |
| 19996 | Johanson v. Rowland, 196 Iowa 724, 195 N.W. 358, 358 (1923) | 3 | Automobile used by the owner, the head of a family, in earning a living held exempt from execution to satisfy judgment on purchase-money note in favor of assignee, notwithstanding Code, S 4015, making exemptions inapplicable against an execution issued for the purchase money of property claimed to be exempt, and on which such execution is levied. | The facts stipulated show that appellee used the automobile with which to earn a living, and it is conceded that, under our holding in Lames v. Armstrong, 162 Iowa, 327, 144 N. W. 1, 49 L. R. A. (N. S.) 691, Ann. Cas. 1916B, 511, and Waterhouse v. Johnson, 194 Iowa, 343, 189 N. W. 669, the automobile is exempt from execution to appellee as the head of a family, unless the claim of appellant bank is for the purchase price of the automobile. The exception stated in section 4015 of the Code is as follows: "None of the exemptions prescribed in this chapter shall be allowed against an execution issued for the purchase money of property claimed to be exempt, and on which such execution is levied." | When will the assignor have no claim against the maker of the note for purchase money? |
| 19998 | Ambler v. Phillips, 132 Pa. 167, 173–74, 19 A. 71, 72 (1890) | 1 | A good custom should be certain, continued, reasonable, distinct, uncontradicted and so notorious as to probably have been known to the parties to the contract. | Before a mere usage of trade or a custom can become so firmly imbedded in the law as to govern the rights of parties, it must be so certain, uniform, and notorious as probably to be known to and understood by the parties entering into *174 the contract. And such usage or custom cannot be proved by single, isolated instances. Cope v. Dodd, 13 Pa. St. 33; McMasters v. Railroad Co., 69 Pa. St. 374. In the latter case it was held that, 'to establish such custom, it should be reasonable, continued, and acquiesced in by all acting within its operations.' | When can usage of trade or custom become so firmly imbedded in the law as to govern the rights of parties? |
| 20019 | Spear v. Coon, 32 Conn. 292, 293 (Conn. 1864) | 2 | It is not indispensable that magistrate should have certified upon deposition that it was sealed up by him. | It seems that it is not indispensable, where a deposition is sealed up and sent to the court, that the magistrate should have certified upon the deposition that it was sealed up by him. | Is it not indispensable that a magistrate should have certified upon deposition that it was sealed up by him? |
| 20023 | Van Valkenburg v. Bradley, 14 Iowa 108, 110–11 (1862) | 4 | A general authority to one partner, after the dissolution of a copartnership, to settle the business of the firm does not authorize him to renew in the name of the firm a pre-existing copartnership note, but an authority to so bind the firm may be given in the terms of dissolution, or by the assent of the other partners at the time of such renewal. | Some eleven years since, in the case of Kemp & Doggett v. Coffin, 3 G. Greene, 190, this court held to the affirmative of this proposition. It is insisted, however, that such is not the law, and that it is against both its reason and the weight of authority. In this opinion we are inclined to concur, and to fall back upon the doctrine so long and well settled, that a general authority to one partner, upon a dissolution, to settle the business of the firm, does not authorize him to give a note in the name of the firm, for a pre-existing firm debt, or to renew a partnership note, nor to indorse a note, previously given to the firm. 3 Kent, *111 (9th ed.) 63 (marg.) and the many authorities there cited; Story on Part., §§ 322-328. It is competent, however, for the settling partner to bind the firm by note in the settlement of pre-existing debt, if consent or authority was given by the retiring partner or partners, in the terms of its dissolution, or at the time of the execution of such notes. | Does the power to bind the firm cease after dissolution of a partnership? |

| 20037 | Bridge v. Hubbard, 15 Mass. 96, 98 (1818) | 8 | Where A., being the maker of a note to B., which was void for usury, asked for credit beyond the maturity of the note, and B. agreed to give further credit if he could obtain other security, and A. obtained and furnished, for that purpose, a new note, made by C., payable to and indorsed by D., which was received by B. in exchange for the former note, which was given up and canceled, it was held that this latter note was void in the hands of a bona fide indorsee without notice, being a mere substitute for the first note. | Whereas both notes, given under such circumstances, would be void--being evidence of one contract, and that an unlawful one. And if it were not so, the statute of usury would be effectually repealed by the Court, which is bound to execute it.<br>The report states that Blanchard & Ford, the borrowers, being called on to pay this void note, asked for a longer credit, and that, Eaton consenting to give it on obtaining other security, the note now in suit was procured for the purpose of obtaining this credit. Hubbard, the defendant, who was liable on the first note, as endorser, made this note payable to Sumner, who endorsed it in blank, and it was delivered over by Blanchard & Ford to Eaton, from whom it came, without any endorsement, to the plaintiffs. | Can a note be void if it is given for usurious consideration? |
| 20038 | Coolidge v. Payson, 15 U.S. 66, 72 (1817) | 2 | If a letter be not shown, its contents, whatever they may be, can give no credit to a bill of exchange. | The great motive for construing a promise to accept, as an acceptance, is, that it gives credit to the bill, and may induce a third person to take it. If the letter be not shown, its contents, whatever they may be, can give no credit to the bill; and if it be shown, an absolute promise to accept will give all the credit to the bill which a full confidence that it will be accepted can give it. | When does a promise to accept a bill become acceptance? |
| 20046 | Peterson & Fitch v. State, 32 Tex. 477, 478 (1870) | 3 | Where a partnership is guilty of a criminal offense, the partners should be indicted as individuals, and not as a firm. | The defendants should have been indicted as individuals, and not as a partnership firm. | "When a partnership is guilty of a crime, should an indictment be against the members as individuals and not the firm?" |
| 20049 | Galbreath v. Wallrich, 45 Colo. 537, 541, 102 P. 1085, 1086 (1909) | 3 | Assignment of a nonnegotiable contract does not carry a warranty that it will be performed; but assignee merely impliedly warrants it is what it purports to be, and hence, where nonnegotiable contracts to furnish ties to a railroad were assigned, the mere fact that it subsequently canceled them and refused to allow assignees to fill them did not impose any liability on assignors. | The assignment of a nonnegotiable contract does not carry a warranty that it will be performed. The assignee merely impliedly warrants that the contract is what it purports to be; or, in other words, that it is genuine. | When the assignee warrants the contract will it be genuine? |
| 20050 | Mann v. Merchants' Loan & Tr. Co., 100 Ill. App. 224, 227 (Ill. App. Ct. 1902) | 2 | A note indorsed in blank passes by delivery. | In this State, notes indorsed in blank pass by mere delivery. | Is a note indorsed in blank transferable by delivery? |

| | | | | | |
|---|---|---|---|---|---|
| 20056 | Champion v. Gordon, 70 Pa. 474 (1872) | 9 | The Act of May 16, 1901, P.L. 194, S 85, 56 P.S. S 186, provides that "every negotiable instrument is payable at the time fixed therein without grace. When the day of maturity falls upon Sunday or a holiday the instrument is payable on the next succeeding business day. Instruments falling due on Saturday are to be presented for payment on the next succeeding business day, except that instruments payable on demand may, at the option of the holder, be presented for payment before twelve o'clock noon on Saturday when that entire day is not a holiday. See also Act of June 18, 1895, P.L. 198, 56 P.S. S 184 note, which provides that "all drafts and bills of exchange drawn at sight shall be and become due and payable on presentation, without grace, and shall and may, if dishonored, be protested on and immediately after such presentation. On all notes, drafts, checks, acceptances, bills of exchange, bonds or other evidences of indebtedness made, drawn or accepted by any person or corporation after this act shall take effect, and in which there is no expressed stipulation to the contrary, no grace, according to the custom of merchants, shall be allowed, but the same shall be due and payable as therein expressed without grace. All such notes, drafts, bills of exchange, checks or other paper falling due on Sunday or a legal holiday or day observed as such, or any half holiday, shall be deemed to be due on the next secular business day thereafter: provided, however, that all such notes, bills of exchange, drafts, checks, etc., shall not be protested on any Saturday but must be protested on the next secular or business day." A post-dated check under the prior law also was not entitled to days of grace. | <== This headnote is not in the opinion | Is days of grace given to postdated check? |
| 20063 | Cozzens v. Chicago Hydraulic Press Brick Co., 166 Ill. 213, 219, 46 N.E. 788, 790 (1897) | 2 | A second indorsement of a note by the payees raises no presumption that their contract is one of guaranty, and not of indorsement. | The fact that they signed their names a second time did not raise a presumption that their contract was one of guaranty, and not of indorsement. | Is parol evidence admissible to contradict or vary a contract of indorsement? |
| 20064 | Porges v. United States Mortg. & Tr. Co., 203 N.Y. 181, 188–89, 96 N.E. 424, 426 (1911) | 4 | One dealing with the agent of another without ascertaining the scope and reach of the powers delegated to him does so at his peril. | The extent to which a principal shall authorize his agent is completely within his determination, and a party dealing with the agent must ascertain the scope and reach of the powers delegated *189 to him, and must abide by the consequences if he transcends them. | "Should a party dealing with an agent, abide by the consequences if he transcends them?" |
| 20067 | Wolfe v. Tyler, 48 Tenn. 313, 316–17 (1870) | 3 | An instrument made payable in current bank notes is not a negotiable paper, in the sense of the law merchant. | The principle in Kirkpatrick v. McCullough, 3 Hum., 171, and numerous other cases, that a note payable in current bank notes is not a note for money, and, therefore, not negotiable, rests upon a highly technical distinction, as is manifested by the subsequent *317 cases of Crutchfield v. Robins, Tingley & Co., 5 Hum., 15; Graham v. The State, 5 Hum., 40; Hopson v. Fountain, 5 Hum., 140; Baker v. Jordan, 5 Hum., 485; Whiteman v. Childress, 6 Hum., 305-6; and Draper v. The State, 1 Head, 263, 264. | Is a note payable in bank notes negotiable? |
| 20070 | Huse v. Hamblin, 29 Iowa 501, 504 (1870) | 5 | The law of the place where the indorsement of paper is made will govern as to the rights and liability of the indorser and indorsee, rather than the law of the place where the instrument indorsed was made. | Admitting the certificates of deposit to be negotiable under the law of New York, the state where they were issued and made payable, the question arises whether the rule of that state controls the rights and obligations of the holders and indorsees of the paper. The indorsements were made in this state. It is ruled in Thorp, Smith & Hanchett v. Craig, 10 Iowa, 461, that the law of the place of the contract of indorsement must govern the liability of the indorser. In that case it was held that a party who indorsed commercial paper in Iowa, payable in New York, must be notified of its dishonor according to our law, in order to be held liable thereon. | Which law governs the liability of the indorser? |

| | | | | | |
|---|---|---|---|---|---|
| 20080 | Brannock v. Magoon, 141 Mo. App. 316, 536 (Mo.App. 1910) | 2 | The title to a note may be transferred by a separate writing. | It is held that the title to a note may be transferred by a separate writing. | How can the title to a note be transferred? |
| 20081 | Duke v. Hall, 68 Tenn. 282, 286 (1878), overruled by Roach v. Woodall, 91 Tenn. 206, 18 S.W. 407 (1892) | 4 | An assignment in trust of negotiable paper or choses in action need not be registered, under the law relating to the registration of mortgages and trusts of personalty. | The next section is, "the provisions of the foregoing section do not apply to choses in action;" that is, a mortgage or deed of trust of these need not be registered, and are thus excepted out of the general provision on the subject. Registration, therefore, not being required as to choses in action, can have no effect as notice of the title thus acquired, that is by mortgage or deed of trust. | Is transfer of a chose in action required to be registered? |
| 20083 | Cohn v. Hitt, 133 Tenn. 466, 182 S.W. 235, 236 (1916) | 1 | Both at common law and under Negotiable Instruments Law, SS 64, 68, defendant who first indorsed a note for the accommodation of the maker, held liable at the suit of the subsequent accommodation indorser. | "This is the regular course of business, when notes are indorsed for value; nor is the case altered, as it is contended, where the indorsements are made for the accommodation of the drawer. Where there is no contract between the parties, other than is created by their respective indorsements provided by the act of indorsement, the first indorser gives his name to the maker of the note for the purpose of using it in order to raise the money mentioned on its face; he makes himself responsible for the whole sum, upon the sole credit of the maker. His undertaking is undivided, and he is responsible for the whole." Marr v. Johnson, 9 Yerg. (17 Tenn.) 1; Wallace v. Greenlaw, 9 Lea (77 Tenn.) 115.<br>The Negotiable Instrument Law (Act 1899, c. 94) recognizes and embodies, and does not change, this rule. | Can a prior agreement release prior indorsers for accommodation against a subsequent indorser? |
| 20084 | Chumasero v. Gilbert, 24 Ill. 293, 294–95 (1860) | 1 | A party will only be allowed to recover interest according to the law of the forum, in the absence of an express agreement, unless it be alleged and proved that the law of the place of execution of the note sued fixes a higher rate. | The note read in evidence in this case, specified no rate of interest, and in the absence of any specific rate, the presumption is, that the rate is the same at the place of its execution, as it is within the jurisdiction of the court. Where no rate is specified, our statute has authorized the recovery of only six *295 per cent., and the party, to recover more, should have shown by averment in his declaration, that the laws of New York authorized a recovery of a greater rate of interest, and should have sustained the averment by proof. | When no rate of intrest is specified will the laws of the state of execution determine its rate? |
| 20088 | First Nat. Bank v. Payne, 111 Mo. 291, 20 S.W. 41, 42–43 (1892) | 1 | The doctrine that, when a person not a party to a note puts his name upon it before delivery, he thereby makes himself an original promisor, does not apply to a note payable to the maker, and indorsed before indorsement or negotiation by the maker. | The doctrine that when a person, not a party to a note, puts his name upon it before it is delivered as a valid contract, he thereby makes himself an original promisor, so long maintained in this state, was taken from Massachusetts,—the case of Powell v. Thomas, supra, being bottomed on Mories v. Bird, 11 Mass. 440; and while the doctrine was maintained there in a long line of decisions with the same persistency as here until set aside by legislative enactment in 1874, (Pub. St. Mass. c. 77, § 15,) yet in 1859, long before such legislative interference, the supreme court of that state *43 refused to extend the principle to the case of a note payable by the drawer to himself and indorsed by a stranger to the note before negotiation by the drawer; that court saying, in Clapp v. Rice, 13 Gray, 403, that "the correctness of these decisions, however much they may be obnoxious to criticism upon principle, it is too late to question. | Can a party who writes his name on the back of note of which he is not a payee or an endorse be considered as the maker of the note? |
| 20099 | Meyer v. Weil, 37 La. Ann. 160, 160–61 (1885) | 2 | The words, "This is to certify that I am to pay," amount to a promise, and the unconditional obligation containing them is a promissory note. | The word "promise" is not sacramental in a promissory note. No particular form is required by law. It is enough if the note contain a legal promise for the certain payment of a specified sum, and, that the maker and payee be designated with sufficient certainty.<br>*161 The language used in this case, is precise, positive, peremptory. It is of, at least, equivalent force and similar meaning. It is rather emphatic. It certifies that the maker is to pay, that is, must and shall pay. It clearly meets all legal exigencies in that respect, and makes the instrument an unconditional obligation to pay. | Is a promissory note an unconditional promise to pay? |

| | | | | | |
|---|---|---|---|---|---|
| 20100 | Mkt. & Fulton Nat. Bank v. Ettenson's Est., 172 Mo. App. 404, 158 S.W. 448, 450 (1913) | 7 | Where an accommodation joint maker of a note payable to the maker's order sent it to other maker with implied instructions to indorse and deliver it in renewal of another note, which was done without knowledge of his death, his estate was estopped to invoke the rule that death revokes authority granted, whether express or implied. | The rule is that "the death of a party is a general revocation of all authorities granted by him, whether express or implied." Smith's Executors v. Wyckoff, 3 Sandf. Ch. (N. Y.) 77. But if Ettenson signed the note and returned it to Lesser with implied instructions to indorse and deliver it to plaintiff in renewal of the old note, and without knowing of his death plaintiff and Lesser completed the transaction as intended by him, we would hold the defendant estate estopped from invoking the rule just stated. | Can one joint payee indorse on behalf of the other? |
| 20101 | Bliler v. Boswell, 9 Wyo. 57, 59 P. 798, 801–02 (1900) | 10 | Though Mills' Ann.St.Colo. S 2914, provides that, where the person to whom a cause of action on notes accrues is a married woman, the statute of limitations does not run until the disability of coverture is removed, the subsequent marriage of a woman who was single when her right to sue on notes accrued does not prevent the running of the statute; and hence, under Rev.St. S 3464, providing that a cause of action is barred in this state if barred in the state where it arose, plaintiff, after the time limited by the Colorado statute, cannot maintain an action on a note executed to decedent, when the cause arose in Colorado while decedent was single, though she married before the action was barred. | Under the laws of the state of Colorado, the time limited for bringing an action upon the notes and is six years after they respectively accrued; but, in case *802 the person entitled to bring the action shall at the time when the cause of action accrues be a married woman, she may bring the same within the same period (six years) after such disability shall be removed. In this state the limitation is five years upon any specialty or any agreement, contract, or promise in writing, except that if when a cause of action accrues against a person he is out of the state, or has absconded or concealed himself, the period limited shall not begin to run until he comes into the state, or while he is so absconded or concealed; and if after the cause of action accrues he depart from the state, or abscond or conceal himself, the time of his absence or concealment shall not be computed as a part of the period within which an action must be brought. Rev. St. §§ 3454, 3463. It is not claimed that the action was barred under these provisions of our law. It is, however, contended that the bar existed, and still exists, by reason of the following provision of our statute: "If by the laws of the state or country where the cause of action arose, the action is barred, it is also barred in this state." | "When a note is executed in one state, but made payable in another, will it be governed by the laws of the state where the note is made payable?" |
| 20105 | Kimball v. Schoff, 40 N.H. 190, 196–97 (1860) | 5 | S. conveyed with warranty to K. land claimed by S.'s father, and after the father's death purchased the land of the heirs, one of whom was the wife of K., and released, with her husband, all her right. Held, that K. could not claim against his own deed the share of his wife, though all the residue inured to him by estoppel, since it is a case of estoppel against estoppel, which sets the matter at large. | Mrs. Kimball, the wife of G. Kimball, was one of the heirs of Henry Schoff, and she and her husband joined in a conveyance to the defendant of all her right and interest, as one of the heirs of her father, Henry Schoff, in his estate, with covenants of warranty. G. Kimball is consequently estopped by his own covenants of warranty to claim the share of *197 his wife; and the plaintiff, his grantee, is equally bound. Here, then, we have an estoppel on each side--an estoppel against an estoppel-- and that, as the authorities say, sets the matter at large; in other words, the parties are in the same situation as if there were no warranties. Bro. Abr. 303, b. 183; Com. Dig., Estoppel, E. 9; Co. Litt. 352, b. (I.); Carpenter v. Thompson, 3 N. H. 204. The defendant, therefore, may hold the share of Mrs. Kimball in the island, if she has any, as heir of her father, but the plaintiff will be entitled to recover the residue. | Does an estoppel against an estoppel set the matter at large? |

| | | | | | |
|---|---|---|---|---|---|
| 20113 | Cahn v. Reid, 18 Mo. App. 115, 122–23 (1885) | 4 | Where defendant by false and fraudulent misrepresentations induced plaintiff to trade a stock of merchandise for land, a proposition by plaintiff to rescind the trade, and a tender by him of a deed to the land, the proposition and tender being made before the institution of a replevin action to recover the goods, were a sufficient rescission to support the action; but, if not made until after the making of the affidavit, the filing of the suit, and issuance of the writ, the action was premature. | In this we think he is mistaken; for where the possession of goods has been parted with by means of false and fraudulent representations, the victim of the design and artifice has his election to stand by the contract and sue for damages, or treat the contract as void and rescind it. Fraud, trick, and deceit will, at the election of the party injured, entitle him to treat the entire negotiation as void from its inception, and authorize a court in holding that, notwithstanding the possession of the property has changed, yet the title--the property in the goods--has not passed. *123 Upon his offer to rescind, or, rather, upon his rescission, the title to the property immediately revests in him, with the consequent right of possession. Detention from one who has both right of property and right of possession, is, necessarily, wrongful. Besides Wells on Replevin, the authorities hereinafter cited on the question of rescission fully demonstrate the proposition that this action was properly brought in so far as the right to maintain replevin in a case of this sort, where a proper rescission is conceded. But in such cases it is absolutely essential that the party wishing to assert this right should, immediately on discovering the bad faith of the one with whom he has dealt, rescind the contract by making him statu quo. The rescission must be in toto, for one will not be permitted to adopt so much of a voidable contract as he deems beneficial and reject that portion which may be thought to be onerous. In this connection defendant claims that the action was brought prematurely; that there is no evidence in the cause showing a rescission until after the filing of the suit, making the affidavit, and the issuance of the writ. Whether the court below regarded any of the evidence as tending to show an offer to rescind before instituting the suit, or whether the court deemed that an immaterial matter, we cannot gather from the record. | "Where land has been conveyed in exchange for personal property, and the grantee seeks to repudiate the bargain for fraud, is a mere offer to trade back without tendering a re-conveyance a rescission?" |
| 20115 | Thompson v. Michigan Mut. Life Ins. Co., 56 Ind. App. 502, 105 N.E. 780, 782 (1914) | 9 | Powers of special agent and general agent are governed by same principles; acts by either within scope of his authority binding principal, difference being that general agent is authorized to transact all of principal's business or all of business of particular kind or at particular place, while authority of special agent is confined to one or more specific acts. | "A general agent is one who is authorized to transact all the business of his principal, or all his business of some particular kind, or at some particular place. *** The authority of an agent being limited to a particular business does not make it special; it may be as general in regard to that, as though its range were unlimited. Anderson v. Coonley, 21 Wend. [N. Y.] 279. A special agent is one who is authorized to do one or more specific acts, in pursuance of particular instructions or within restrictions necessarily implied from the act to be done. | Does limiting the authority of an agent make him a special agent? |
| 20126 | Border Nat. Bank of Eagle Pass, Tex., v. Am. Nat. Bank of San Francisco, 282 F. 73, 79 (C.A.5 1922) | 16 | The acceptance of a draft affords a presumption of funds of the drawer in the hands of the acceptor. | Likewise the acceptance of a draft 'affords a presumption of funds of the drawer in the hands of the acceptor.' | Can a promise to accept be equivalent to its acceptance? |
| 20127 | Bryant v. Edson, 8 Vt. 325, 333 (1836) | 3 | Days of grace are regulated by the law of the place of contract if no place of payment is specified. | But, as already shown, the days of grace are regulated generally by the place of payment. This note has in it expressly no place of payment. It is a promise to pay, generally. | Which law regulates the days of grace? |
| 20130 | Erskine v. Gardiner, 162 La. 83, 110 So. 97, 88 (La. 1926) | 1 | Dismissal of plaintiff's suit carries with it dismissal of intervention. | This court has repeatedly held that the dismissal of the plaintiff's suit carries with it the dismissal of the intervention. | Does dismissal of a plaintiff's suit carry with it dismissal of intervention? |

| | | | | | |
|---|---|---|---|---|---|
| 20134 | Brown v. Worthington, 162 Mo. App. 508, 142 S.W. 1082, 1086 (1912) | 8 | Plaintiff, having an option to purchase a lot of hogs from defendant, resold a portion of them, after which defendant demanded a sum in excess of the contract price, which plaintiff paid in order to get possession of the hogs for delivery to his vendee; the excess payment being made by means of a check and promissory note. Held, the check and note having been paid, that it was a question for the jury whether plaintiff had ratified the payment of the excess, it appearing that defendant retained a portion of the hogs as security for payment of the note, and that the note had been indorsed without recourse and was governed by the law of Michigan, where presumably possession of a note payable to order and duly indorsed by the payee is prima facie evidence of title in the holder, though defendant testified that he indorsed the note to a bank for collection. | The matter of ratification is an affirmative defense touching which the burden of proof rests with defendant, and the rule is that, though evidence for one holding the burden of proof is uncontradicted, the question of the veracity of the witness and the weight and value of the testimony are nevertheless for the jury, unless a clear admission appears. See Gannon v. Laclede Gaslight Co., 145 Mo. 502, 46 S. W. 968, 47 S. W. 907, 43 L. R. A. 505. It is obvious that we may not declare a ratification conclusively appears here, but the question is one for the jury, which should be inquired into and ascertained upon a retrial. | "If a note is executed under duress, does subsequent payment or action on the basis of the note, amount to ratification or validation of the note?" |
| 20135 | Merchants' Nat. Bank of St. Paul v. Hanson, 33 Minn. 40, 43–44, 21 N.W. 849, 851 (1884) | 3 | L., an individual doing business under name of the Bank of B., holding several notes payable to himself by his name, or by the name of the Bank of B., indorsed the notes, and sent them to plaintiff, another bank, requesting plaintiff to discount them, and place the proceeds to his credit, which plaintiff did. Afterwards plaintiff returned the notes to L. for collection, having indorsed them, "Pay Bank of B., or order, for collection account of" plaintiff. L. having received the notes for collection, transferred them by indorsement before their maturity, with plaintiff's indorsements uncanceled upon them, to defendant, in payment of a pre-existing debt from L. to defendant. Defendant noticed the indorsements when he received the notes, but asked no questions, and no notice to him of plaintiff's rights was shown, except such as might be inferred from the facts stated. Held, that the indorsements were notice to defendant of plaintiff's title, and that defendant's conduct in forbearing to make inquiries was not merely proof of negligence, but, in the absence of anything to support a contrary conclusion, was proof of mala fides. | Luce, assuming to transfer the notes in payment of his own pre-existing debt, presented them to the defendant bearing indorsements, uncanceled and unexplained, which upon their face indicated that Luce had no right to dispose of the property, but that it belonged to another. Such was the unmistakable import of the indorsements. It was not to be presumed that the indorsements had been wrongfully or surreptitiously placed upon the notes. It was an extraordinary circumstance that Luce, if he was the owner of the paper, should, when assuming to dispose of it as his own, suffer such indorsements, impugning his own *44 title, to remain upon the paper unexplained. The defendant noticed the indorsements, but asked no questions. He testified in his own behalf, but no explanation or fact is presented going to oppose the conclusion which should be drawn from the circumstances which we have stated. The defendant's purpose in acquiring the notes from Luce was, of course, to make collection from the maker for his own benefit. Having express notice by the indorsements that Luce probably did not own the property, but that this plaintiff was the owner, he could not willfully disregard the apparent rights of the plaintiff, and by carefully abstaining from such inquiry as the circumstances suggested, assert the right to defeat plaintiff's title under the claim of being an indorsee in good faith. His conduct in disregarding the notice, and forbearing to make inquiries, is inexplicable except upon the assumption that he was regardless of the plaintiff's apparent rights, and willfully abstained from inquiry lest it should confirm the fact of which the indorsements notified him, and he should thus be unable to so acquire the notes that he might protect himself against the plaintiff's superior title. This was not merely negligence concerning his own interests or the rights of | Is indorsement necessary for the transfer of title of a note? |
| 20144 | Case v. McKinnis, 107 Or. 223, 236, 213 P. 422, 426 (1923) | 2 | Where the Negotiable Instruments Law speaks it controls. | The Negotiable Instruments Law was adopted in this state in 1899 (Laws 1899, p. 18), and where the act speaks it controls. | Where does the Negotiable Instruments Law control? |
| 20150 | Friedburgher v. Jaberg, 1887 WL 2752 (N.Y. Sup. Ct. 1887) | 1 | An assignment of partnership property, which is shown to be fraudulent as to firm creditors by reason of the transfer, immediately before the assignment, of firm assets to an individual creditor of one of the partners, is not rendered valid by a subsequent attempt to restore the proceeds of the property so transferred. | When the schedules were made this property was omitted, and it is manifest that it was intended to conceal the transfer from the firm's creditors. The subsequent attempt at restoration of the proceeds of the sale of that property does not affect the intent of the assignor in making the assignment. | Can a partner make an assignment of partnership property to a trustee without the assent of his co-partners? |
| 20156 | Wooley v. Lyon, 117 Ill. 244, 248, 6 N.E. 885, 886 (1886) | 3 | Notice and protest of negotiable paper is governed, in case of conflict, by laws of place where instrument is payable. | The notes being payable in this state, and the contract of indorsement being made in Michigan, and the indorser residing there, the law of the place where the notes were payable we consider governed as to time and mode of presentment for payment, manner of protests, and giving notice. | Which law governs the manner of protests of a note? |

| | | | | | |
|---|---|---|---|---|---|
| 20157 | Bryant v. Edson, 8 Vt. 325, 334 (1836) | 1 | The allowance of grace on a bill of exchange is determined by the law of the place of payment. | This note must then be governed by the law of Massachusetts, where it was made. And this brings us to the single question, is grace allowed on such a note by the law of Massachusetts? It is insisted by the plaintiff's counsel, that in order to have grace, the note must, upon its face, expressly be payable in Massachusetts. This argument arises wholly from a mistaken reading of the Massachusetts statute, in the argument for the plaintiff.--The plaintiff's counsel quote the statute as if bills, notes, drafts, &c. were all put on the same footing; but this is not so. The first clause of the statute, and in which alone the word expressed is used, relates exclusively to bills of exchange. The latter clause of the statute relating to negotiable notes, orders or drafts, gives grace on all payable on a future day certain, within the state. This includes all, whether expressly or exclusively payable there, or by being actually made there and payable on time, generally, are by the general law payable where made, as already shown; and so includes this note. | Does the usage of the place where payment of a bill or note is to be made govern the days of grace? |
| 20158 | Wooley v. Lyon, 117 Ill. 244, 247–48, 6 N.E. 885, 886 (1886) | 5 | Indorser's liability on note becomes fixed on presentment, demand of payment, protest for nonpayment, and notice addressed to indorser and when this is done his subsequent promise is immaterial and erroneous instruction as to effect of promise was harmless error as against him. | This instruction, if faulty, could have done the defendant no *248 harm, for the reason that the necessary steps under the law of this state were taken to charge defendant as indorser, viz., demand of payment, protest for non-payment, and notice of non-payment addressed to defendant at a proper place, all which the evidence shows were duly made and given in accordance with our own law, where the defendant's liability became fixed, and it was immaterial whether or not he made a subsequent promise to pay the notes. | Which law governs the time and mode of presentment for payment of a note? |
| 20161 | Oahu Ry. & Land Co. v. Shaw, 12 Haw. 76, 80–81 (1899) | 2 | The fact that a railroad used coal plant for a number of years in a manner to render it liable to taxation under statute did not require taxation of coal plant after its use had been so changed as to bring the property within the clause of the statute authorizing exemption of railroad properties fairly necessary to the reasonable construction and operation of the road. | Because the Oahu R. & L. Co. used the coal plant in former years in a manner to render it liable to taxation, it by no means follows that it must be taxed in *81 1898 if it has so changed the use as to bring the property within the exemption clause. | How should a court construe a statute exempting property from taxation? |
| 20162 | Austin v. Aldermen of Bos., 74 U.S. 694, 699, 19 L. Ed. 224 (1868) | 3 | The right of taxation where it exists is unlimited in its nature. | The right of taxation, where it exists, is necessarily unlimited in its nature. | Is the right of taxation necessarily unlimited in its nature? |

| | | | | | |
|---|---|---|---|---|---|
| 20164 | Duke v. Hall, 68 Tenn. 282, 285–86 (1878), overruled by Roach v. Woodall, 91 Tenn. 206, 18 S.W. 407 (1892) | 4 | An assignment in trust of negotiable paper or choses in action need not be registered, under the law relating to the registration of mortgages and trusts of personalty. | Before the Code, we consider this question was settled by the case of Allen v. Bain et al., 2 Head, 108, and Mayer & Co. v. Pulliam et al., ibid, 350, and that such a transfer of negotiable paper or chose in action was *286 not required to be registered, and consequently, "the fact of registration did not operate as notice." We have followed this view in the case of Kelley, Ex'r, v. Thompson, 2 Heis., 281, since the Code, saying there was but little difference in the act of 1831 and 1839 and the Code, and no difference in their meaning. It is probably true the precise point now made was not then suggested, based on the definitions of the Code, sec. 51, that the words "personal property includes slaves, money, goods, chattels, things in action, and evidences of debt"; yet, conceding the difficulty presented when taken in connection with our general registration laws, still we think sections 2003 and 2004 of the Code are conclusive of this aspect of the case. The first section found in a chapter entitled "Of Personal Property," provides, "all mortgages and trusts of personalty shall be in writing, and proved and registered as hereinafter provided, to be valid against the creditors of the bargainor or purchaser under him for value, and without notice." The next section is, "the provisions of the foregoing section do not apply to choses in action;" that is, a mortgage or deed of trust of these need not be registered, and are thus excepted out of the general provision on the subject. Registration, therefore, not being required as to choses in action, can have no effect as notice of the title thus acquired, that is by mortgage or deed of trust. | Is it necessary to register a chose in action? |
| 20176 | Hughes v. Beall, 264 S.W. 171, 172 (Tex. Civ. App. 1924) | 3 | The expectancy of an heir is a subject-matter of a sale and conveyance. | The expectancy of an heir is the subject-matter of a sale and conveyance. | Is the subject matter of a sale and conveyance related to the expectancy of an heir? |
| 20189 | Suberville v. Adams, 47 La. Ann. 68, 16 So. 652 (1895) | 1 | A defendant, whose judgment on a reconventional demand has been reversed, and the case remanded, may discontinue same; final judgment having been rendered against plaintiff on the principal demand, and that judgment having been affirmed on appeal. | A defendant, whose judgment on a reconventional demand has been reversed, and the case remanded for a new trial thereof, may discontinue same in the lower court, final judgment having been rendered against the plaintiff on the principal demand, and that judgment having been affirmed on appeal to this court. | Can a plaintiff discontinue his suit at any time prior to rendition of judgment? |
| 20191 | Read v. Patterson, 79 Tenn. 430, 433 (1883) | 7 | Neither the caption nor certificate need set forth the official character of the magistrate who takes a deposition, if his official character appears in his signature. | The seventh and last exception is because the official character of the justice taking the deposition is not shown in the caption or certificate. The form in the Code, section 3848, does not contain any recital in the caption or certificate of the official character of the officer taking the deposition. It is sufficient if that fact fully appears in the signature of the officer as it does in this case at the end of his certificate. | Should a deponent sign at the end of the deposition? |
| 20204 | First Nat. Bank v. Sprout, 78 Neb. 187, 110 N.W. 713, 714 (1907) | 1 | The transferee of a negotiable promissory note, who has purchased the same in the usual course for value, may bring an action at law against the maker without proof of indorsement. | It appears from the discussion of counsel that the reason which prompted the trial court to direct a verdict for the defendant was that the offer of the note in evidence did not include the indorsement of the payee, and because of the failure to prove the indorsement the plaintiff was not entitled to recover. Proof of the indorsement, however, under the allegations of the petition and the evidence of ownership, was not indispensable to the plaintiff's case. | Can a promissory note payable to husband be transferred to wife without indorsement and without valuable consideration for title? |
| 20217 | Kane v. Clough, 36 Mich. 436, 439 (1877) | 2 | A mere possibility is not the subject of assignment. | It has often been decided that a mere possibility is not the subject of assignment. | Could mere possibility be the subject of an assignment? |

| | | | | | |
|---|---|---|---|---|---|
| 20251 | Mason v. Warner, 31 Mo. 508, 510 (1862) | 2 | The test of local or transitory actions is the subject-matter to which the injury is done, not the subject causing the injury. Injuries to persons and personal property are transitory, not local. | The only question involved in this case is whether, where the defendant is found here, our courts can lawfully take cognizance of actions for injuries to personal property committed beyond the limits of the state. Actions are either transitory or local. They are said to be transitory where the transactions on which they are founded might have taken place anywhere, but are local where their cause is in its nature necessarily local. (1 Brock. 209.) The distinction exists in the nature of the subject of the injury complained of, and not in the means by which, or the place at which, the injury was effected. | What is the distinction between local and transitory actions? |
| 20260 | People v. Shimonaka, 16 Cal. App. 117, 120–21, 116 P. 327, 329 (Cal. Ct. App. 1911) | 3 | The crime of murder includes manslaughter. | It is settled that the crime of murder necessarily includes the crime of manslaughter. | Does the crime of murder include manslaughter? |
| 20268 | Allen v. Hawley, 6 Fla. 142, 155–56 (Fla. 1855) | 9 | As a general rule, the several owners of a merchant vessel or steamboat hold their respective interests as tenants in common, and not as copartners, and are to be governed by the laws applicable to that species of tenure; but to this rule there may be exceptions, either growing out of the express agreement of the parties, or to be implied from the nature and character of the business or adventure in which they may be about to engage. | The result of our investigations is that as a general rule, the several owners of a merchant vessel or steamboat, hold their respective interests as tenants in common, and not as copartners, and consequently are to be governed by the rules of law applicable to that species of tenure; but *156 that, to this rule, there may be exceptions, either growing out of the express agreement of the partners, or to be implied from the nature and character of the business or adventure, in which they may be about to engage. | "Can a part owner of a ship in the character of partner, sell only his own share?" |
| 20335 | Jackson v. Merritt, No. 28735, 1892 WL 11463, at *6 (D.C. Nov. 28, 1892) | 4 | The court cannot compel the plaintiff to submit to a nonsuit without his consent. | "But as it has been repeatedly decided that the courts of the United States have no power to order a peremptory nonsuit, against the will of the plaintiff, it is not necessary to examine the grounds of the motion." | Can the court compel the plaintiff to submit to a nonsuit without his consent? |
| 20362 | Mosely v. Graydon, 35 S.C.L. 7, 10 (S.C. App. L. 1849) | 3 | An indorsement of a note to one to collect, and, if he fail to collect, the indorser to pay the same to the indorsee, though made on a separate piece of paper, which was not affixed to the note, was held to be a valid indorsement of the note, so as to render the indorser liable to the indorsee. | The next thing to be noticed is the objection, that this writing of indorsement is not on the note but on a separate paper. Although the term ""indorsement," in its strict definition, would seem to be a writing on the back of a bill or note, yet it is now settled, if it be on the face, or on an annexed piece of paper to the bill or note, called an allonge, it is sufficient. | Is an indorsement on an annexed piece of paper to the bill or note a sufficient indorsement? |
| 20363 | Closson v. Stearns, 4 Vt. 11, 11 (1831) | 1 | An indorsement written and signed with a pencil is a valid indorsement. | In a more recent case, Geary vs. Physic, 5 Barn. and Creswell, 234, the very point made in this case was raised and discussed; and it was decided that an indorsement upon a promissory note, written with a pencil, was a valid indorsement within the custom of merchants. We see no reason for disregarding these authorities and establishing a different principle in this state. | Is an indorsement written and signed with a pencil a valid indorsement? |
| 20379 | Doll v. Getzschmann, 90 Neb. 370, 133 N.W. 417, 418 (1911) | 1 | Where a vendor of realty takes a series of notes for deferred payments, and, when executed, indorses one of them paid and surrenders it pursuant to the contract, the indorsement is a substantive part of the note and must be construed with the contract of sale to show the agreed consideration for the sale. | The indorsement was made at the time of the execution of the note which was never in fact delivered. The indorsement was an inducement to defendants to sign the contract of sale. Plaintiffs' agent made the indorsement for the purpose of selling his principals' property. It was clearly a part of the contract and note. The parties had a right to transact business in that manner, though it is not the usual method. The general rule is that a memorandum or indorsement on the back of a note when it is executed is a substantive part of the contract. | Is a memorandum at the back of an instrument a substantive part of the instrument? |
| 20387 | Guthrie v. Buckeye Cannel Coal Co., 66 Ind. 543, 544 (1879) | 1 | Though 2 Rev.St.1876, p. 141, S 256, provides that the deposition shall be subscribed by the deponent after being carefully read to or by him, it is not necessary that the certificate show that such section was complied with. | SEC. 256. The deposition shall be written down by the officer, or by the deponent, or by some disinterested person, in the presence, and under the direction of the officer, and after the same has been carefully read to or by the deponent, it shall be subscribed by him. | Shall a deposition be written down by a disinterested person? |

| 20395 | Freeland v. Prince, 41 Me. 105, 108 (1856) | 1 | The fact that the caption of a deposition did not show that the deponent was duly sworn before giving his deposition, as required by statute governing depositions taken within the state, does not render it inadmissible when taken out of the state; 2 Rev.St. c. 133, S 22, providing that depositions taken out of the state by persons lawfully empowered may be admitted or rejected by the court at their discretion. | So too in Brighton v. Walker, 35 Maine, 132, a deposition was held inadmissible, because the caption did not show, that the deponent was duly sworn before giving his deposition. In these cases, however, the depositions were taken within the State. But it has been decided that a deposition taken out of the State may be admitted, at the discretion of the Court, though it does not appear by the caption, that the deponent was duly sworn before deposing. | "Is a recital in the caption that the deponent sworn ""to testify the truth and nothing but the truth"" fatally defective?" |
| 20398 | Parks v. Brown, 16 Ill. 454, 454 (1855) | 1 | A blank indorsement may be stricken out at the trial. | The only question presented is, whether a plaintiff can strike out a blank indorsement, on a promissory note payable to order, on the trial. We have no doubt but that this is the true rule, and may be done. | Can a blank indorsement be stricken out at the trial? |
| 20403 | Am. Fid. Co. of Montpelier, Vt. v. E. Ohio Sewer Pipe Co., 53 Ind. App. 335, 101 N.E. 671, 674 (1913) | 3 | Municipal contractor's surety, who did not assert right to subrogation to money in city's hands until long after assignment of money and commencement of materialman's action against surety, cannot, because of laches, claim subrogation to money due principal. | The right of subrogation is one of equity merely, and due diligence must be exercised in ascertaining it. Laches in taking advantage of the right will forfeit it, and subrogation is not allowed in favor of one who has permitted his equity to sleep in secrecy until the rights of others would be injuriously affected by its enforcement. | Will subrogation be allowed if the person claiming the right of subrogation has unreasonably delayed in asserting such right? |
| 20407 | Kelly v. Carroll, 223 Ill. App. 309, 315 (Ill. App. Ct. 1921) | 2 | A usage or custom, to be binding, must be so uniform, long established, and generally acquiesced in and so well known as to induce the belief that the parties contracted with reference to it, in the absence of anything to the contrary in their contract. | A usage or custom to be binding must be so uniform, long-established and generally acquiesced in and so well known as to induce the belief that the parties contracted with reference to it, nothing appearing in their contract to the contrary, and the existence of such a custom or usage cannot be considered established when the proof consists of a few isolated instances. | What are the elements of a valid custom? |
| 20408 | Hughes v. Stanley, 45 Iowa 622, 625 (1877) | 5 | It is competent for parties to enter into a contract in accord with an established usage or custom recognized by both, and the contract will be binding upon them. | It is, surely, competent for parties so to contract. They may make their contracts to accord with customs or usages and with reference thereto. This is an elementary principle of the law. | Can parties use custom known to them in contracts? |
| 20413 | McMillan v. City of Tacoma, 26 Wash. 358, 360, 67 P. 68, 68 (1901) | 4 | The word "tax," as used in Amendatory Revenue Law 1899, p. 302, S 20, declaring that the holder of a general tax certificate, before bringing an action to foreclose the lien, shall "pay the taxes that have accrued on the property," does not include assessments for street improvements. | Appellant's contention is that, before respondent is entitled to judgment foreclosing his lien, he is required to 'pay all taxes that have accrued on the property,' as provided by section 20, page 302, of the amendatory revenue law of 1899, and that the word 'taxes,' as there used, means local assessments as well as general taxes. | What are local assessments enforced to serve? |
| 20422 | Reed v. Munn, 148 F. 737, 742 (8th Cir. 1906) | 6 | Where a bill seeks to enforce an unrecorded trust interest in a mining claim, the legal title to which is an assignee of the locator, under a syndicate agreement, to the constitution of which the bill alleges the beneficiaries assented, it is error to decree a revocation and revest the title of the mine in the beneficiaries who had waived a right to reclaim the mine itself, whether recovery should be limited to a share in the proceeds of the lease and sale under the syndicate agreement. | Where a bill in equity seeks to enforce an unrecorded trust interest in a mining claim, the legal title to which is in an assignee of the locator, under a syndicate agreement, to the constitution of which the bill alleges the cestui que trust assented, held, to be error to decree a revocation of such conveyance, and to revest the title to the mine in the cestui que trust as he had waived his right to reclaim the mine itself. His recovery should be limited to his share in the proceeds of the lease and sale under the syndicate agreement. | Is there a relation of trust or confidence between mining partners which is violated by the sale and assignment by one partner of his share in the property and business to a stranger? |
| 20425 | Burriss v. Wise, 2 Ark. 33, 39 (1839) | 8 | Where, at December Term, 1838, a cause was continued on account of the absence of A and B, two of defendant's witnesses; and at May Term, 1839, another affidavit for continuance is filed by him on account of the absence of A, one of the same witnesses, a continuance cannot be granted, because no suit can be twice continued for the same cause. | The affidavit that was then filed and sworn to, shows that the continuance at the December term, 1838, was asked for and obtained on account of the absence and materiality of the evidence of James Wise and James F. Ellis, two of the defendant's witnesses. The affidavit which was filed and sworn to at the May term, 1839, shows that the motion which was made for a second continuance of the cause, was asked for on account of the materiality and absence of the testimony of James F. Ellis alone. The cause was once continued for James F. Ellis' testimony, and the second continuance was refused on the appellant's motion for the same identical evidence. The statute in regard to the subject of continuances declares, "that no suit shall be twice continued for the same cause." | Can a suit be continued twice for the same cause? |

| ID | Citation | # | Rule | Holding/Reasoning | Question |
|---|---|---|---|---|---|
| 20436 | Atchison, T. & S. F. R. Co. v. Pearson, 6 Kan. App. 825, 826 (Kan.App. 1897) | 3 | Under a statute requiring the certificate of an officer before whom a deposition has been taken to show that the deponent was first sworn "to testify the truth, the whole truth, and nothing but the truth," a certificate which shows that the deponents were sworn "to testify the whole truth of their knowledge touching the matter in controversy" is insufficient. | "Our statute requires the certificate of an officer before whom a deposition has been taken to show that the deponent was first sworn 'to testify the truth, the whole truth, and nothing but the truth.' A certificate by such officer which shows that the deponents were sworn 'to testify the whole truth of their knowledge touching the matter in controversy' is defective, and it is error to overrule a motion to suppress such deposition, alleging such defect as ground therefor." | Can a deposition be read in evidence unless it plainly and satisfactorily appears from the certificate of the justice that all the requirements of the statute have been fully complied with? |
| 20452 | State v. Lehman, 182 Mo. 424, 81 S.W. 1118, 1124 (1904) | 6 | Rev.St.1899, S 2085 (V.A.M.S. S 558.020), declares that any public officer of a city, who shall directly or indirectly accept or receive any gift, etc., "or any promise or undertaking to make the same," under any agreement that his vote, opinion, judgment, or decision shall be given in any particular manner in any matter pending before him, shall be deemed guilty of bribery. An indictment charged that defendants, members of a house of delegates of a city, unlawfully entered into a certain corrupt bargain, agreement, etc., with B., by which money was by B. placed in the hands of one of the defendants thereupon selected by defendants to receive said sum, on the promise of said defendants that they would give their vote in favor of a certain measure. Held that, as the offense charged was having accepted a promise to make a gift in pursuance of an agreement to vote, the defendants need not be charged separately by indictment, and the indictment was sufficient, under section 2531 (V.A.M.S. S 545.210), providing that indictments shall not be deemed invalid for any defect or imperfection not tending to prejudice the substantial rights of the defendant on the merits. | The count in the indictment upon which this conviction was had is predicated upon the first subdivision of section 2085, Rev. St. 1899. It provides: "Every judge or justice of any court, justice of the peace, member of the Legislature, or officer or employee thereof, and any other public officer of this state, or of any county or city, town or township thereof, who shall, directly or indirectly, accept or receive any gift, consideration, gratuity or reward, or promise or undertaking to make the same: First, under any agreement that his vote, opinion, judgment or decision shall be given for any particular person, or in any particular manner, or upon any particular side, or more favorable to one side than the other, in any question, election, matter, cause or proceeding which may be pending or be brought before him in his official capacity, or that he shall neglect or omit to perform any official duty, or perform the same with partiality or favor, or otherwise than according to law." | "Is it necessary, in order to constitute bribery, that the vote of the public official bribed should be on a measure that can be enforced?" |
| 20462 | Stranahan Bros. Catering Co. v. Coit, 55 Ohio St. 398, 45 N.E. 634 (1896) | 3 | Where one under contract to deliver to a cheese and butter factory pure milk, and knowing that the milk is to be mixed with the milk of other patrons, intrusts the delivery to a servant, who, in the course of such employment, delivers adulterated milk, the master is liable for damages necessarily and directly resulting; and it is no defense that the servant adulterated such milk without authority, and merely to gratify his malice towards his employer, intending to injure him. | Where a master is under contract to deliver to the proprietor of a cheese and butter factory pure milk, and has knowledge that the milk so delivered is to be mixed with the milk of other patrons, and intrusts the delivery to a servant, who, in the course of such employment, delivers adulterated milk, the master is liable for damages necessarily and directly resulting by reason of such delivery; and it is not a defense to show that the servant, without authority and purposely, and to gratify his malice towards his employer, and with intent to injure him, adulterated the milk so delivered by mixing with it water, and that the master had no knowledge of such adulteration. | Is the employer or master liable for the delivery of adulterated milk by his employee or servant in the course of his employment? |
| 20467 | Tait's Ex'rs v. Hannum, 10 Tenn. 350, 353 (1830) | 2 | If a note is executed upon a usurious consideration, it is void, whether it is executed to the lender, or to a creditor of his by his direction. | A bill of exchange or a promissory note is an assurance within the statute, (Ord on Usury, 91,) and this assurance, if it be given upon a usurious contract or consideration, is declared a nullity. | Can a note be void if it is given for usurious consideration? |
| 20472 | Minter v. State, 70 Tex. Crim. 634, 644, 159 S.W. 286, 293 (1913) | 5 | Indictment for bribing policeman not to arrest accused in violation of his duties held not defective because of its failure to allege what his duties were. | In accordance with these authorities, the indictment herein is not defective, in failing to charge, if it does, that appellant had committed an offense for which he could bribe an officer not to arrest him. Nor is it necessary for the indictment to allege what were the duties of the police officer. | "Where the defendant offered to bribe a witness to avoid the service of legal process, does the indictment have to allege that a subpna or other process had previously been issued?" |
| 20477 | City of New London v. New York, N.H. & H.R. Co., 85 Conn. 595, 84 A. 114, 116 (Conn. 1912) | 4 | A town's approbation, required under Comp.Pub.St.1838, pp. 344, 346, in order that selectmen may discontinue a road, may be given either before or after action by the selectmen. | The selectmen could discontinue only with the approbation of the town. Comp. Pub. Laws 1838, pp. 344, 346. This might be given before or after action by the selectmen. | When is approbation given? |

| | | | | | |
|---|---|---|---|---|---|
| 20481 | Gomes v. Sociedade Lusitana Beneficente de Hawaii, 21 Haw. 683, 687 (1913) | 7 | The making of a mark by a member of a benefit society on a declaration disposing of mortuary benefit was a sufficient signature where it was intended as a signature. | The making of a mark by the declarant was a sufficient signing of the declaration it having been intended as a signature. | Can a mark be a signature? |
| 20482 | Nevill v. Hancock, 15 Ark. 511, 517–18 (1855) | 8 | Bonds for money, by the statute of assignments, are placed upon the same footing as notes and other negotiable instruments, and an indorsement in blank transfers all the interest of the assignor which becomes vested in the holder or bearer. | That, by the endorsement, the payee divests himself of the legal interest in the bill or note, and it is vested by delivery in the holder. That an endorsement in blank, constitutes a perfect transfer of the interest in the bill or note, and without the addition of other words, will vest the right of action, and all other rights, in the transferee and subsequent holders. *518 That case is precisely like the one now before us, except that was a suit upon a note, and this is a suit upon a bond. Our statute of assignments, and the course of decisions under it, have, we think, placed bonds for money upon the same footing with notes, as negotiable instruments, and we see no good reason for making a distinction between them. | Can a bill or note indorsed in blank is payable to bearer? |
| 20486 | Gayon v. McCarthy, 252 U.S. 171, 177, 40 S. Ct. 244, 247, 64 L. Ed. 513 (1920) | 1 | Cr.Code, S 10, as amended by Act May 7, 1917, 18 U.S.C.A. S 22, as to hiring or retaining another to go outside the United States with intent to enlist in the service of a foreign people, uses "retain" as an alternative to "hire," and as meaning something different from the usual employment with payment in money; and one may be retained, in the sense of engaged, to render a service by a verbal promise, and by a prospect for advancement or payment in the future. | The word 'retain' is used in the statute as an alternative to 'hire' and means something different from the usual employment with payment in money. One may be retained, in the sense of engaged, to render a service as effectively by a verbal as by a written promise, by a prospect for advancement or payment in the future as by the immediate payment of cash. | Can a party be retained by a verbal promise? |
| 20493 | Hodges v. Torrey, 28 Mo. 99, 103 (1859) | 1 | In order to make out a failure of consideration of a note given for land, so as to entitle the purchaser to relief, on the ground that the vendor made fraudulent misrepresentations as to certain improvements upon the land sold, it must appear that the misrepresentation was of something material, and constituting an inducement or motive to the contract. | There is no allegation that the misrepresentation was of something material, constituting an inducement or motive to the contract. It is stated that reliance was placed on the representations of the plaintiff, but it is nowhere averred that the improvements were the inducement to the purchase. | Is a purchaser entitled to relief against a vendor for a false affirmation of value for estate? |
| 20495 | John Deere Co. v. Metzler, 51 Ill. App. 2d 340, 355, 201 N.E.2d 478, 486 (Ill. App. Ct. 1964) | 3 | A conspiracy does not exist between a principal and agent. | Thus a conspiracy does not exist between a principal and agent. | Can a conspiracy exist between a principal and an agent? |
| 20498 | Holmes v. Williams, 69 Ill. App. 114, 115 (Ill. App. Ct. 1897), rev'd, 177 Ill. 386, 53 N.E. 93 (1898) | 1 | Blank endorsement on note was prima facie a guaranty, and holder of paper was authorized to write guaranty over signature. | Her blank indorsement is, prima facie, a guaranty. Kingsland v. Koeppe, 35 Ill. App. 81; S. C., 137 Ill. 544. The holder of the paper was authorized to write the guaranty over the signature. | Is a blank indorsement a prima facie guaranty |
| 20503 | Meyer v. Weil, 37 La. Ann. 160, 160–61 (1885) | 2 | The words, "This is to certify that I am to pay," amount to a promise, and the unconditional obligation containing them is a promissory note. | The word "promise" is not sacramental in a promissory note. No particular form is required by law. It is enough if the note contain a legal promise for the certain payment of a specified sum, and, that the maker and payee be designated with sufficient certainty. *161 The language used in this case, is precise, positive, peremptory. It is of, at least, equivalent force and similar meaning. It is rather emphatic. It certifies that the maker is to pay, that is, must and shall pay. It clearly meets all legal exigencies in that respect, and makes the instrument an unconditional obligation to pay. | "If an obligation in a contract is unconditional, is it a promissory note?" |

| | | | | | |
|---|---|---|---|---|---|
| 20504 | Kelly v. Thompson, 49 Tenn. 278, 281–82 (1871) | 4 | An assignment, trust deed, of choses in action, as legacies to secure creditors, is good against all persons, without registration. 1831, c. 90; 1839, c. 26. Code, 2030. | It has been repeatedly held in this State, that a title bond may be assigned without registration;a1 and if *282 done in good faith, the assignment is good against all persons. | Is transfer of a chose in action required to be registered? |
| 20505 | Cohn v. Hitt, 133 Tenn. 466, 182 S.W. 235, 236 (1916) | 1 | Both at common law and under Negotiable Instruments Law, SS 64, 68, defendant who first indorsed a note for the accommodation of the maker, held liable at the suit of the subsequent accommodation indorser. | At an early day it was held in this state, following the decision of the Supreme Court of the United States in McDonald v. Magruder, 3 Pet. 474, 7 L. Ed. 744, that a prior indorser is liable to every person whose name is placed on the note subsequent to his own, and who has been compelled to pay its amount. | What is the extent of liability faced by an accommodation indorser over other accommodation indorsers? |
| 20506 | Huntington v. Attrill, 146 U.S. 657, 676–77, 13 S. Ct. 224, 231, 36 L. Ed. 1123 (1892) | 4 | Laws N.Y.1875, c. 611, SS 21, 37, making the officers of a corporation liable for its debts in case they make any false certificate or report, and also, in the case of limited liability companies, rendering the stockholders liable to the full amount of the stock held by them, respectively, for all debts contracted by the company before the whole amount of capital stock has been paid in, is not a penal statute, in the international sense, so that a judgment recovered thereunder cannot be enforced in another state, and the decision of a court of another state that the judgment is not enforceable therein is a failure to give such judgment the full faith and credit required by the constitution of the United States (U.S.C.A. Const. article 4, S 1) and by Rev.St. S 905 (28 U.S.C.A. S 1738). | The provision of the statute of New York now in question, making the officers of a corporation, who sign and record a false certificate of the amount of its capital stock, liable for all its debts, is in no sense a criminal or quasi criminal law. The statute, while it enables persons complying with its provisions to do business as a corporation, without being subject to the liability of general partners, takes pains to secure and maintain a proper corporate fund for the payment of the corporate debts. With this aim, it makes the stockholders individually liable to the debts of the corporation until the capital stock is paid in, and a certificate of the payment made by the officers, and makes the officers liable for any false and material representation in that certificate. The individual liability of the stockholders takes the place of a corporate fund, until that fund has been duly created; and the individual liability of the officers takes the place of the fund, in case their statement that it has been duly created is false. If the officers do not truly state and record the facts which exempt them from liability, they are made liable directly to every creditor of the company, who by reason of their wrongful acts has not the security, for the payment of his debt out of the corporate property, on which he had a right to rely. As the statute imposes a burdensome liability on the officers for their wrongful act, it may well be considered penal, in the sense that it should be strictly construed. But as it gives a civil remedy, at the private suit of the creditor only, and measured by the amount of his debt, it is as to him clearly remedial. To maintain such a suit is not to administer a punishment imposed upon an offender against *677 the state, but simply to enforce a private right secured under its laws to an individual. We can see no just ground, on principle, for holding such a statute to be a penal law, in the sense that it cannot be enforced in a foreign state or country. | Are statutes giving private action penal in nature? |
| 20510 | Johnston v. Griest, 85 Ind. 503, 503–04 (1882) | 5 | An instrument: "This will certify that I do give to J. $100, the money to be paid as soon as my financial condition will allow; and, if I do not live to pay it, I wish it paid out of my estate,"-is not the subject of an action. | The instrument upon which the appellant's complaint is founded reads thus: *504 "January 1st, 1876. This will certify that I do give to Charles E. Johnston $100, the money to be paid as soon as my financial condition will allow; and if I do not live to pay it, I wish it paid out of my estate." | Can an action lie from a note if no obligation to pay is created? |
| 20516 | Ransom & Co. v. Stanberry, 22 Iowa 334, 336 (1867) | 3 | Matter in estoppel must be specially pleaded, and it is error to admit evidence thereof unless so pleaded. | At the common law, matter of estoppel should be specially pleaded as such. | Should a matter of estoppel be specially pleaded? |
| 20527 | Lapham v. Barrett, 1 Vt. 247, 250 (1828) | 2 | Acknowledgment of "value received" in contract to indemnify another for paying a note imports a consideration. | The contract of Barrett is prima facie good. The words ""value received" import a consideration. | "Are the words ""value received"" sufficient evidence of consideration?" |
| 20530 | Elliott v. Deason, 64 Ga. 63, 68 (1879) | 3 | When negotiable paper is assigned to a married woman, or to a naked trustee for her use, both being absent, delivery may be made to a friend acting on her behalf, and the same will be as effective if made directly to her or to the trustee. | 3. Delivery can be made to the absent. Any friend may receive the instrument on behalf of the transferee or beneficiary. This followed by ratification would suffice. 4. A married woman may, in Georgia, take and hold property just as another person. When a mortgage is assigned to her, and the note to a naked trustee for her use, she is the owner of both, and may foreclose in her own name. | Does delivery have to be made to the grantee? |

| 20549 | Fowler v. Brantly, 39 U.S. 318, 318, 10 L. Ed. 473 (1840) | 1 | After the maturity of a negotiable promissory note or bill of exchange, it ceases to be negotiable. | A note over-due, or a bill dishonoured, is a circumstance of suspicion to put those dealing for it afterwards on their guard; and in whose hands it is open to the same defences it was in the hands of the holder, when it fell due. After maturity, such paper cannot be negotiated. | Does a note or a bill negotiable after maturity? |
| 20551 | People v. Detroit United Ry., 162 Mich. 460, 465 (1910) | 1 | The terms of a franchise must be construed strictly against the grantee. | We agree with Chief Justice Montgomery that the cases presented do not involve an interference with any vested right of the company as assignee of the Fairview Railway, but resolves itself into a question of the construction of the ordinance. The rule that the terms of the franchise must be construed strictly against the respondent, as held in West Bloomfield Township v. | Should franchises be strictly construed? |
| 20557 | Bank of Orange Cnty. v. Colby, 12 N.H. 520, 523 (1842) | 1 | A note naming no place of payment must be construed according to the lex loci contractus. | No place is designated where it is to be paid, and it is therefore payable generally. There is nothing in the case, then, to take it out of the general rule, that the lex loci contractus must determine the construction to be given to it, and the obligation and duty it imposes. | Does lex loci contractus determine the construction of a note? |
| 20558 | Bank of Orange Cnty. v. Colby, 12 N.H. 520, 523 (1842) | 1 | A note naming no place of payment must be construed according to the lex loci contractus. | No place is designated where it is to be paid, and it is therefore payable generally. There is nothing in the case, then, to take it out of the general rule, that the lex loci contractus must determine the construction to be given to it, and the obligation and duty it imposes. | What must the lex loci contractus determine? |
| 20564 | Pittsburgh, C., C. & St. L.R. Co. v. Iddings, 28 Ind. App. 504, 62 N.E. 112, 114 (1901) | 9 | The right of action has accrued when the injury has been consummated. | The right of action has accrued when the injury has been consummated. The amount of damages may be estimated, being the amount which has been or will be expended necessarily in making the repairs. | When has the right of action accrued? |
| 20573 | Smoot v. Judd, 161 Mo. 673, 61 S.W. 854, 856 (1901), overruled by Smoot v. Judd, 184 Mo. 508, 83 S.W. 481 (1904) | 2 | The law of the place where a contract is to be performed is the law of the contract, and a note signed by a married woman in Kentucky, which was returned to her husband at their home in Missouri, who signed and returned it to Kentucky, where it was delivered to the payee, a resident of that state, is a Missouri contract, no place of payment being mentioned, and the property charged with its payment being in Missouri. | The case was tried on the theory that the note was a Missouri contract, and subject to our laws, and that was probably correct, although it was signed by Mrs. Smoot in Kentucky, mailed to her husband here, who signed it, and returned it to Kentucky, where it was delivered to the payee, who was a resident of that state. No place of payment is mentioned in the note, but as the makers lived here, and, so far as the married woman's obligation is concerned, the property charged with its payment being in Missouri, this may be considered as the place intended for the performance of the contract. The law of the place where the contract is to be performed is the law of the contract. | Is the law of the place where the contract is to be performed is the law of the contract? |
| 20574 | Smoot v. Judd, 161 Mo. 673, 61 S.W. 854, 856 (1901), overruled by Smoot v. Judd, 184 Mo. 508, 83 S.W. 481 (1904) | 2 | The law of the place where a contract is to be performed is the law of the contract, and a note signed by a married woman in Kentucky, which was returned to her husband at their home in Missouri, who signed and returned it to Kentucky, where it was delivered to the payee, a resident of that state, is a Missouri contract, no place of payment being mentioned, and the property charged with its payment being in Missouri. | The case was tried on the theory that the note was a Missouri contract, and subject to our laws, and that was probably correct, although it was signed by Mrs. Smoot in Kentucky, mailed to her husband here, who signed it, and returned it to Kentucky, where it was delivered to the payee, who was a resident of that state. No place of payment is mentioned in the note, but as the makers lived here, and, so far as the married woman's obligation is concerned, the property charged with its payment being in Missouri, this may be considered as the place intended for the performance of the contract. The law of the place where the contract is to be performed is the law of the contract. | Is the law of the place where the contract is to be performed the law of the contract? |
| 20575 | Shoe & Leather Nat. Bank v. Wood, 142 Mass. 563, 568, 8 N.E. 753, 756 (1886) | 2 | In general, commercial paper executed in one state, and made payable in another, is governed by the laws of the state in which it is payable. | Generally, a negotiable instrument, made in one place and payable in another, is governed by the laws of the latter place. | Which law controls when a note is signed in one state and delivered in another state? |

| | | | | | |
|---|---|---|---|---|---|
| 20579 | State v. State Bd. of Assessors, 65 N.J.L. 516, 516 (Sup. Ct. 1900) | 2 | A purely educational association is not subject to assessment under "An act to provide for the imposition of state taxes upon certain corporations and for the collection thereof," approved April 18, 1884, and its supplements, 3 Gen.St. p. 3335 et seq., N.J.S.A. 54:13-11 to 15, 54:14-1 to 6, although formed under the general corporation act, with capital stock, and conducted for the private benefit of the stockholders. | A purely educational association is not subject to assessment under 'An act to provide for the imposition of state taxes upon certain corporations and for the collection thereof,' approved April 18, 1884, and its supplements (3 Gen. St. p. 3335 et seq.), although formed under the general corporation act, with capital stock, and conducted for the private benefit of the stockholders. | Does the general tax act give a general exemption from taxation to school houses? |
| 20581 | Hawthorne v. State, 58 Miss. 778, 787 (1881) | 3 | A charge, upon a trial for murder, stating in effect that, if the homicide is proved under certain circumstances, the law presumes murder, and that it devolves upon the accused to show circumstances excusing his act, was erroneous; it not being coupled with the charge that such circumstances might be made to appear by the evidence introduced by the state, as well as by that introduced by the accused. | <==unable to locate portion of opinion reasonably corresponding to HN | Is malice aforethought equivalent to premeditated design or deliberate design? |
| 20605 | People v. Creegan, 121 Cal. 554, 557, 53 P. 1082 (1898) | 7 | Where the only corroborating evidence given under Pen.Code, S 1111, requiring the testimony of an accomplice to be corroborated, was by a witness claimed to be also an accomplice, the question whether he was such was for the jury, and its verdict, from which it must be assumed (defendant being found guilty) that he was found not to be an accomplice, is conclusive of that fact, if the evidence thereon was properly received. | The connection of Creegan with the forgery depends upon the testimony of Seaver and McCosta. Seaver was, by his own admission, an accomplice, and in order to permit his testimony to be considered by the jury it was necessary to have other evidence which, in itself, without the testimony of Seaver, tended to connect Creegan with the commission of the crime. Section 1111 of the Penal Code is as follows: "A conviction cannot be had on the testimony of an accomplice unless he is corroborated by other evidence which, in itself, and without the aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense, or the circumstances thereof." The testimony of McCosta is the link in the chain of evidence by which the prosecution sought to show that Creegan was implicated in the forgery, and to make the testimony of Seaver available against him. But if McCosta was also an accomplice the jury would be required to disregard his testimony, equally with that of Seaver. Whether he was an accomplice was, therefore, a vital fact to be determined by the jury. The relation which it was shown he bore to the transaction was such as to authorize the defendants to claim that he was particeps criminis, while the prosecution vigorously sought to resist this claim, and the jury were instructed by the court in accordance with the above provisions of section 1111 of the Penal Code. It must be assumed from the verdict that, upon the evidence before them, the jury found that he was not an accomplice, and, if this evidence was properly received, their verdict must be accepted as conclusive of the fact. | Is the question whether a person was an accomplice determined by the jury? |
| 20607 | Mix v. McCoy, 22 Mo. App. 488, 491 (1886) | 4 | In an action for slander, evidence of drunkenness is not admissible to rebut the presumption of malice and mitigate damages. | In my judgment, drunkenness is not mitigation in an action of slander; if not, it was properly excluded, whether pleaded or not. | Is drunkenness a mitigating circumstance in an action for slander? |

| ID | Case | # | Rule | Holding/Reasoning | Question |
|---|---|---|---|---|---|
| 20616 | Friedburgher v. Jaberg, 1887 WL 2752 (N.Y. Sup. Ct. 1887) | 2 | Where a partner, three days before an assignment of the firm property for the benefit of creditors, transferred firm assets in payment of his individual debt, and selected his creditor as assignee of the firm, the facts were held sufficient to show fraudulent intent. | On the third ground--namely, acts on the part of Jaberg, committed about the time the assignment was made, showing an intent to hinder, delay and defraud creditors--I think a case has been made out entitling the plaintiffs to have the instrument set aside. Jaberg was the only actor in making the assignment, and three days before it was made, and when he knew of the insolvency of his firm, he transferred merchandise of considerable value belonging to the firm, to his individual creditor, for his individual debt, and that creditor he selected to be the assignee of the firm property. He knowingly took this merchandise from the firm creditors, and it was done in such close proximity of time to the fact of the assignment that its purpose cannot be doubted, and the making of the general assignment to the very person to whom he had given the merchandise is a circumstance of great significance. | Does the assignment by one partner of all his interest in the partnership and its property to trustees for the payment of debts lead to dissolution of partnership? |
| 20626 | Prestridge v. Lazar, 132 Miss. 168, 95 So. 837, 838 (1923) | 1 | The doctrine of subrogation applies wherever any person other than a mere volunteer pays a debt or demand which in equity or good conscience should have been satisfied by another, or where one person finds it necessary for his own protection to pay the debt for which another is primarily liable, or where one has such an interest in property as makes it necessary for him to get in an outstanding claim or equity for its protection. | The courts should rather incline to extend than restrict the operation of the doctrine. It applies wherever any person other than a mere volunteer pays a debt or demand which in equity and good conscience should have been satisfied by another, or where one person finds it necessary for his own protection to pay the debt for which another is primarily liable, or where a party has such an interest in property as makes it incumbent on him to get in an outstanding claim or equity for its protection. | Is the doctrine of subrogation one of equity and benevolence? |
| 20631 | George v. Haas, 311 Ill. 382, 386 (1924) | 3 | Parties presumed to contract with reference to law of state where contract is to be performed. | Parties are presumed to contract with reference to the law of the state where their contract is to be performed, and to be governed by such law, rather than the law of the state where the contract was entered into. | Which law governs if a contract is executed in one state to be performed in another state or country |
| 20644 | Broadwell v. Imms, 14 Ala. App. 437, 441, 70 So. 294, 295 (Ala. Ct. App. 1915) | 1 | Contingent rights are assignable; but, where the right to receive payment under an executory contract is assigned, the assignee cannot recover unless the assignor has so performed that he could recover. | It is well settled that contingent rights are assignable at law when coupled with a present interest in the assignor. For instance, if the assignor is under an existing contract with another to perform some service or to do some act, he may validly assign the wages or compensation that in the future will accrue to him upon the performance of the act or service, and this in consideration of and as security for either a present indebtedness or for advances which he may find it necessary to obtain. Wellborn v. Buck, 114 Ala. 277, 21 South. 786; Southern Wesco Supply Co. v. Hammond, 11 Ala.App. 493, 66 South. 961; Park Robertson Hdw. Co. v. Copeland, 11 Ala.pp. 447, 66 South. 880; American Trust & Savings Bank v. O'Barr, 67 South. 794. However, since such an assignment is an assignment of something that has at the time merely a potentiality, and not an actuality-compensation to be thereafter earned by the assignor under an existing contract, and not compensation already earned by him-the assignee's right thereto is, like the assignor's right would be in the absence of such an assignment, contingent, depending for its maturity, or for its ripening into an absolute right, upon the performance by the assignor of the service for which the compensation was promised. Therefore the assignee cannot recover anything unless at the time of bringing the suit the assignor has fully performed the contract so as to entitle him, in the event there had been no assignment, to recover thereon; or unless he has so far performed it as that he could, but for the assignment, recover on a quantum meruit. | Can contingent rights be assigned? |
| 20666 | Hamilton v. United States, 26 App. D.C. 382, 385 (D.C. Cir. 1905) | 6 | The definition of murder in Code, S 798, D.C.Code 1929, T. 6, S 21, is declaratory of the common law, and is not a new or statutory definition. | The definition of murder in section 798 of the Code is the common-law definition of the crime. It is not, therefore, a new or statutory definition. | Is murder a common law crime? |

| | | | | | |
|---|---|---|---|---|---|
| 20675 | Johnson v. Citimortgage, Inc., 351 F. Supp. 2d 1368, 1377 (N.D. Ga. 2004) | 14 | Under Georgia law, malice is inferred from nature of defamation. West's Ga.Code Ann. S 51-5-1. | Malice is inferred from the nature of the defamation. | How is malice inferred in defamation? |
| 20677 | Sugg v. Hopkins, 11 F.2d 517, 519 (5th Cir. 1926) | 3 | One is not a partner who has no proprietary interest in profits as profits. | One is not a partner who has no proprietary interest in profits as profits. | Is proprietary interest in the business a necessary element in partnership? |
| 20679 | Whipple v. Hill, 14 La. Ann. 437, 437-438 (1859) | 1 | The ownership of a steamboat used in carrying persons and merchandise remains in the partners individually, the use only being brought into the partnership which such transactions create. Therefore the ordinary partnership creditors of the owners have no right to be paid in preference to the individual creditors out of the proceeds of the boat received on policies of insurance. | 437: In the case of Violett v. Fairchild, the court say: "We adhere to the rule laid down in the case of Byrne v. Harper, 2 R. R. 229, that when owners of a steam boat use it to carry persons and merchandise, the use of the boat only is brought into the partnership, unless there is an express stipulation to the contrary, and that as it may be enjoyed without being destroyed, the ownership remains in the partners individually, under Art. 2834 of the Civil Code, subject to the privileges which the law allows in such cases to the creditors of the partnership."<br><br>438: As the boat itself is not, therefore, partnership property, the ordinary partnership creditors of the owners, have no right to be paid by preference, to the individual creditors, out of the proceeds of the boat, whether these proceeds result from sales, or have been received on policies of insurance. | Are part owners of a ship partners to each other? |
| 20692 | State v. Connelly, 104 N.C. 794, 10 S.E. 469, 469 (1889) | 1 | Code, § 1014, which declares that, if any officer, agent, etc., of any corporation shall embezzle any money, he shall be guilty of a felony, does not embrace clerks of the superior courts and like public officers. | It was contended on the argument for the defendant that the indictment does not charge an offense under the statute, (Code, § 1014,) because it was said the latter does not extend to and embrace within its meaning public officers, such as clerks of the superior and other courts, sheriffs, constables, and the like officers, nor is there any statutory provision on the subject of embezzlement that does. Hence it becomes necessary to interpret the statute just cited in an important aspect of it. It prescribes that "if any officer, agent, clerk, employe, or servant of any corporation, person, or copartnership (except apprentices and other persons under the age of sixteen years) shall embezzle or fraudulently convert to his own use, or shall take, make away with, or secrete with intent to embezzle, or fraudulently convert to his own use, any money, goods, or other chattels, bank-note, check, or order for the payment of money issued by or drawn on any bank or other corporation, or any treasury warrant, treasury note, bond, or obligation for the payment of money issued by the United States or by any state, or any other valuable security whatsoever, belonging to any other person or corporation, which shall have come into his possession or under his care, he shall be guilty of felony, and punished as in cases of larceny." | Is a clerk of a court a public officer? |
| 20715 | Best v. Nokomis Nat. Bank, 76 Ill. 608, 610 (1875) | 2 | A payee of a note, although he may have written an assignment on the back of it, can maintain an action thereon in his own name, and his describing himself as "assignee" of the person to whom he made the assignment may be rejected as surplusage. | This court held, in Brinkley v. Going, Breese, 366, 2d ed., that a payee of a note, although he may have written an assignment on the back of it, can maintain an action thereon in his own name. The indorsement is in the power and control of the payee, and he may strike it out or not, as he thinks proper, and the possession of the note by the payee is, unless the contrary appears, evidence that he is the bona fide holder of it. | Can a payee strike out the endorsement or the assignment indorsed on the back of the note if he chooses? |
| 20719 | Potter v. Tucker, 11 Ala. App. 466, 469 (Ala. Ct. App. 1914) | 5 | Date in general is not essential to a bill or note; if there be no date it will be considered as dated at the time it was made. | "Date in general is not essential to a bill or note. If there be no date, it will be considered as dated at the time it was made." | What happens when no date is expressed in the bill or note? |

| | | | | | |
|---|---|---|---|---|---|
| 20726 | Johnston v. Dean, 48 La. Ann. 100, 101, 18 So. 902, 902 (1896) | 1 | It was proper to refuse a continuance on account of the absence of leading counsel, not shown to have been absent on account of sickness, when associate counsel was present. | On this day the associate counsel moved again for a continuance, assigning as a reason therefor the absence of the leading counsel in the case. At the same time an affidavit of one of the leading counsel was filed, which recited that the notice of the fixing of the case reached the absent counsel on May 29th, and that, by reason of their presence being required in other courts of the state,—their employment and engagement in said courts having been made prior to the fixing of the case for trial,—it was impossible for either of the leading counsel to be present on the day fixed for the trial. This motion was overruled, and the trial of the case ordered to be proceeded with. Plaintiff filed a bill of exceptions to the ruling, and declined to participate in the trial. There was judgment of dismissal as in case of nonsuit.<br><br>No legal showing was made for a continuance, and we cannot disturb the judgment. No statement was made that the counsel were absent because of physical disability. It has been repeatedly held that a continuance will not be granted on account of the absence of counsel engaged in professional business elsewhere. Cameron v. Lane, 36 La. Ann. 716; Kohn v. Short, 18 La. Ann. 291; Brown v. Faulk, 12 La. 599. In cases of continuance the judge is vested with large discretion, and we will not disturb his ruling unless it is manifestly a gross abuse of the discretion with which he is vested. In this case an associate counsel was present, and we presume the case could have been tried without manifest injury to plaintiff. Evidently, this was the opinion of the district judge, and, as his ruling was based on several decisions of this court, we will affirm it. | Will a continuance not be granted on account of the inability of counsel to attend in court? |
| 20786 | Vasko v. Hermansky, 109 Neb. 563, 191 N.W. 702, 704 (1922) | 2 | In an action on notes, evidence held to sustain finding for defendant makers, for the reason that the consideration, the assignment of a lease, failed, because of the inability of the payee to perform. | Not only does he testify that he could not get an assignment of the lease, but he also swears positively that he never received any consideration whatever for the notes or for the $1,000 in cash which he paid at the time that he executed the same. In any event, it is quite certain that the value of a one–half interest in the enumerated articles of personal property was well within the $1,000 which he paid. Considering these facts and circumstances, we cannot say that the district court was not justified in finding from the evidence that the entire consideration of the notes was the transfer of the lease in question, and that, not receiving the agreed assignment of the lease, the consideration of the notes failed in toto.<br>1 If the consideration of a note fails, no recovery can be had upon said note by the payee thereof or by his indorsee, unless such indorsee be an innocent and bona fide holder. Warder, Bushnell & Glessner Co. v. Myers, 70 Neb. 15, 96 N. W. 992; Johnson v. Chilson, 29 Neb. 301, 45 N. W. 462; Newton Wagon Co. v. Diers, 10 Neb. 284, 4 N. W. 995.<br>2 There was sufficient evidence from which the trial court might properly find, as it evidently did, in favor of the defendant on all the points raised. And where there is sufficient evidence to sustain the verdict of the trial court, this court will not undertake to reverse its judgment, unless the same is manifestly wrong | Can there be recovery if the consideration of a note fails? |
| 20787 | Kennedy v. Heyman, 183 A.D. 421, 423, 170 N.Y.S. 828, 829 (App. Div. 1918) | 3 | A note given for the accommodation of the payee has no inception until it is delivered for value. | As between the maker and the accommodated party, of course, the note represented no obligation whatever. It had no inception until it was delivered for value. | Can the note have no inception? |

| | | | | | |
|---|---|---|---|---|---|
| 20788 | The Elmbank, 72 F. 610, 616–17 (C.C.N.D. Cal. 1896) | 3 | One taking an equitable assignment of part of a fund or chose in action, as security for a pre-existing debt alone, is not a bona fide purchaser for value, and cannot acquire priority over a previous assignment of the same character, by first giving notice of the assignment to the person holding the fund. | In 1 Am.& Eng.Law, p. 840, the rule is thus stated: 'If the assignee does not perfect his title by giving notice, a subsequent bona fide purchaser for value from the assignor of the same obligation, giving notice of his assignment, will thereby acquire priority. Between different assignees, the one who first gives notice to the debtor will, as a general rule, have the prior right.' See the cases there cited. But it is not only necessary that a subsequent assignee should give prior notice; he must, also, be a bona fide purchaser for value. Otherwise, priority of notice will not avail to divest a prior assignment or to supersede it. | "In equity, can assignment of a part of a debt be considered good?" |
| 20790 | Brannock v. Magoon, 141 Mo. App. 316, 125 S.W. 535, 536 (1910) | 3 | It is not necessary to a good consideration that the person contracting should receive any benefit; it is sufficient if the other party be subjected to loss or inconvenience. | "A consideration may be good in law, though it be of no value to the party to whom it moves. If it be a damage or inconvenience to the other party, that will be sufficient." Williams v. Jensen, 75 Mo. 681; Houck v. Frisbee, 66 Mo. App. 16; Lamp Co. v. Mfg. Co., 64 Mo. App. 115. | If a consideration causes damage would it be a sufficient consideration? |
| 20794 | Lucas v. Byrne, 35 Md. 485, 493 (1872) | 4 | A bill, note, or draft indorsed in blank is transferable by delivery only. | Chesley vs. Taylor, 3 Gill, 255, decides, that the blank endorsement and delivery of the bill, constituted the party to whom it was delivered the absolute owner of the bill, and conferred upon the holder the power to fill up the blank with a full assignment of the interest to himself— | "Does a blank endorsement and delivery of the bill constitute the party to whom it was delivered, absolute ownership of the bill?" |
| 20795 | Meyer v. Weil, 37 La. Ann. 160, 161 (1885) | 2 | The words, "This is to certify that I am to pay," amount to a promise, and the unconditional obligation containing them is a promissory note. | [This is to certify that I am to pay Joseph Meyer, the sum of three thousand dollars, on the first day of February, 1884, said sum being agreed upon as per contract signed before C. W. Barrow, clerk, this day, and being his interest in the property of the store of Simon Weil, upper store.] We have failed to discover any such understanding or provision in the contract, which is a compromise of a pending suit, and, therefore, conclude that the obligation sued on is an unconditional one, therefore a promissory note. | Does a promissory note have to be unconditional? |
| 20798 | State v. Ober, 34 La. Ann. 359, 361 (1882) | 1 | The doctrine of estoppel applies to the state as well as to private individuals. | The doctrine of estoppel applies to the State just as it does to individuals. | Does the doctrine of estoppel apply to the state just as it does to individuals? |
| 20799 | McKean v. Carroll Cty.,Myers, 324 Ill. 243, 243–44, 48 (1926) | 1 | County may pay for rights of way for construction of state hard roads. Bond Issue Act 1917, S 12, S.H.A. ch. 121, S 277; State Highways Act 1921, SS 7, 11, S.H.A. ch. 121, SS 297, 301; Hard Road Construction Act 1921, S 2, S.H.A. ch. 121, S 283; Laws 1925, p. 326, S.H.A. ch. 34, S 25, cl. 11. | [A]Appellants filed their bill in the circuit court of Carroll county against the county of Carroll, A. B. Adams, county clerk, and Ed. C. Myers, county treasurer, alleging that the county of Carroll, through its board of supervisors, was about to expend large sums of money for the payment of rights of way to be obtained for the construction of state hard roads under the $60,000,000 Bond Issue Act of 1917 [B] While the general scheme of the special act with reference to durable, hard-surfaced roads of the system of state highways is opposed to the exercise of the right of eminent domain by counties in connection with such highways, there is nothing in the act which prevents the members of the board of supervisors of a county, in the exercise of their discretion, when in their judgment local interest warrants them in so doing, from aiding the department of public works and buildings either by donations of rights of way or by money to pay for the same. | Does the county board have the power to aid in the construction of roads? |
| 20803 | Cosmopolitan Tr. Co. v. Leonard Watch Co., 249 Mass. 14, 19, 143 N.E. 827, 829 (1924) | 3 | Assignments made by words or acts. | A valid assignment may be made by any words or acts which fairly indicate an intention to make the assignee the owner of a claim. | Can assignments be made by acts? |

| | | | | | |
|---|---|---|---|---|---|
| 20804 | Forsyth v. Day, 41 Me. 382, 383 (1856) | 2 | In an action on a note to which the defendant's name was signed by another person, other notes signed in the same manner and by the same person, subsequent to the date of the note in suit, or of whose existence the defendant was not shown to have knowledge before its execution and delivery, are not competent evidence from which the jury can infer original authority from the defendant to the party signing the note in suit, or a subsequent ratification or adoption of such signing. | In an action upon a note, to which the defendant's name had been signed by a third person, other notes, to which the defendant's name had been forged by the same person, either dated subsequent to the inception of the one in suit, or the existence of them not known to the defendant until after that time, and which the defendant had paid or had promised to pay, are not admissible evidence to show original implied authority on the part of such third person to sign the note in suit. Neither are they competent evidence to establish the ratification or adoption by the defendant of the act of such third person in signing his name to the note. | Can there be authority for indorsements when a man had permitted his friend to forge his name as indorser of numerous bills? |
| 20806 | Williams v. Osbon, 75 Ind. 280, 283 (1881) | 1 | The term "indorsement" implies a transfer by writing upon the instrument. | The word ""endorsement" has a known legal signification, and implies a transfer by a writing upon the instrument. Cooper v. Drouillard, 5 Blackf. 152; Kern v. Hazlerigg, 11 Ind. 443. | What does the term endorsement imply? |
| 20808 | Kent v. Curtis, 4 Mo. App. 121, 123 (1877) | 1 | An insolvent purchased land the deed to which was taken in the name of his wife, who furnished only a small part of the consideration. Nearly the whole of the purchase price was paid by the debtor with his own money and with money belonging to a third person arising out of sales of the third person's goods by the debtor. The debtor after the conveyance erected buildings on the land, which were paid for by him out of his own money and out of the proceeds of the sales of the third person's goods. The debtor had no property out of which the claim of the third person could be satisfied. Held, that the third person could not maintain a creditor's bill against the debtor without first having obtained a judgment at law against him, though such judgment would have been unavailing. | ...and states that it was conveyed to the defendant Eliza, wife of F. B. Curtis, in whose name it is; that only a small part of the price, $1,000, was paid out of her money, and nearly the whole price, $12,000, was paid, after the demand of the plaintiffs against F. B. Curtis accrued, by him, with and out of his money or property, and out of the proceeds of goods of the plaintiffs; that after such conveyance, F. B. Curtis, subsequently to the time the demand accrued, caused buildings to be erected on the land, which were paid for by him out of his money and out of the proceeds of plaintiffs' goods; that F. B. Curtis is completely insolvent, owns or holds no property out of which the claim could be satisfied, and that a judgment at law against him would be unavailing. | If a claim is to be satisfied out of a fund which is accessible only by the aid of a court of chancery where should the application be made? |
| 20809 | Mercer v. Lancaster, 5 Pa. 160, 162 (1847) | 4 | If any of the elements of such test be established, the consideration becomes sufficient to support a promise, although its inadequacy may be grossly disproportionate to the promise. The smallest spark of benefit or accommodation is sufficient to sustain an action of assumpsit. | And in addition to this view of *162 the case, which would be decisive, it is obvious it puts Lancaster in a worse position than he would have been had not the note been executed, and this has been repeatedly held to be a consideration sufficient to support a promise. The original notes, for which the note in suit was, a substitute, having arrived at maturity, .... A consideration is sufficient, if it arise from any act of the plaintiff, from which the defendant or a stranger derives any benefit, however small, if such act is performed by the plaintiff, with the assent, express or implied, of the defendant; or by reason of any damage, or any suspension, or forbearance of the plaintiff's right at law, or in equity, or any possibility of loss occasioned to the plaintiff by the promise of another, although no actual benefit accrues to the party undertaking; Hind v. Holdship, 2 Watts, 104. Here then was a detriment to the plaintiff, and forbearance or suspension of an equitable right, which, as we have seen, constitutes a sufficient consideration. | What constitutes sufficient consideration? |
| 20812 | Kennedy v. Heyman, 183 A.D. 421, 423, 170 N.Y.S. 828, 829 (App. Div. 1918) | 3 | A note given for the accommodation of the payee has no inception until it is delivered for value. | As between the maker and the accommodated party, of course, the note represented no obligation whatever. It had no inception until it was delivered for value. | Can the note have no inception? |

| ID | Citation | # | Summary | Full Text | Question |
|----|----------|---|---------|-----------|----------|
| 20814 | Farmers' & Traders' Bank v. Laird, 188 Mo. App. 322, 175 S.W. 116, 118 (1915) | 3 | An agreement to renew a note is not void for uncertainty because it does not state how many renewals there may be or for how long. | [6] We do not sanction the view of plaintiff that the agreement for a renewal is void for uncertainty. Where such agreement does not state the number of renewals it must be construed as an agreement to renew once only (1 Daniel on Negotiable Instruments [6th Ed.]  159), and where it does not specify the time, the parties should be understood as contemplating that the terms of the original note would be repeated in the renewal, and that the new period of time allotted for the payment would be of the same duration as that provided in the original note. | "Where an agreement to renew the note does not state the number of renewals, how do courts construe such agreements?" |
| 20816 | Cumming v. Bd. of Ed. of Richmond Cnty., 175 U.S. 528, 544–45, 20 S. Ct. 197, 200–01, 44 L. Ed. 262 (1899) | 1 | A decision by a state court, denying an injunction against the maintenance by a board of education of a high school for white children, while failing to maintain one for colored children also, for the reason that the funds were not sufficient to maintain it in addition to needed primary schools for colored children, does not constitute a denial to colored persons of the equal protection of the law or equal privileges of citizens of the United States. | We are not permitted by the evidence in the record to regard that decision as having been made with any desire or purpose on the part of the board to discriminate against any of the colored school children of the county on account of their race. But if it be assumed that the board erred in supposing that its duty was to provide educational facilities for the 300 colored children who **201 were without an opportunity in primary schools to learn the alphabet and to read and write, rather than to maintain a school for the benefit of the 60 colored children who wished to attend a high *545 school, that was not an error which a court of equity should attempt to remedy by an injunction that would compel the board to withhold all assistance from the high school maintained for white children. If, in some appropriate proceeding instituted directly for that purpose, the plaintiffs had sought to compel the board of education, out of the funds in its hands or under its control, to establish and maintain a high school for colored children, and if it appeared that the board's refusal to maintain such a school was in fact an abuse of its discretion and in hostility to the colored population because of their race, different questions might have arisen in the state court. | Does a State has the right to separate races for education? |
| 20817 | Chapman v. Sollars, 38 Ohio St. 378 (1882) | 1 | A purchaser at a tax sale of land delinquent for the nonpayment of assessments under the two mile road improvement law, after the sale has proved invalid on account of a defective description, may recover from the owner the tax, interest, and penalty, interest subsequently accruing, and taxes afterwards paid. | A purchaser at a tax sale of land delinquent for the non-payment of assessments under the TWO-Mile Road Improvement Law, after the same has proved invalid, on account of a defective description of the lands upon the tax duplicate, may prosecute an action against the owner to recover the amount of taxes, interest and penalties due at time of sale, interest subsequently accruing, and all legal taxes by him afterwards paid, under authority of section 32 of the act relating to county auditors (S, & C. 104), and section 106 of the tax law of 1859 (S. & C. 1473). | Are assessments for road improvements considered liens? |
| 20819 | Williams v. Osbon, 75 Ind. 280, 283–84 (1881) | 2 | The term "assign" implies that the assignment was made on a separate instrument. | The word "assigned" has no such signification, but implies that the assignment was made upon a separate instrument. | What does the word assigned imply? |
| 20820 | In re McCord, 174 F. 72, 75 (S.D.N.Y. 1909) | 1 | The mere fact that indorsers of a note are accommodation indorsers, and known to each other to be so, is not sufficient to change the general rule of law that prior indorsers are liable in solido to subsequent indorsers who have paid the note; but an express agreement is necessary to render them liable ratably as between themselves. | I do not understand that the mere fact that indorsers are accommodation indorsers, and known to each other to be so, is sufficient, without proof of an express agreement, to change the general rule of law that prior indorsers are liable in solido to subsequent indorsers who have paid a note. There must be, as I understand the rule, a specific agreement, as between the various indorsers, that they shall only be liable ratably. | What is the extent of liability faced by an accommodation indorser over other accommodation indorsers? |

| | | | | | |
|---|---|---|---|---|---|
| 20821 | Bishop v. Chase, 156 Mo. 158, 56 S.W. 1080, 1083 (1900) | 1 | An indorsement of a note written on a separate piece of paper, reciting that the note, with deed of trust accompanying, was placed as collateral security for a loan on another note, and attached to the original and collateral notes by a pin, where there is plenty of room on the note for the indorsement, was insufficient to invest the transferee with the rights of a bona fide purchaser. | But defendants insist that when the transfer of a negotiable note before due, for value, is accompanied by a written paper pinned to the note, setting forth a qualified indorsement of it, as in this case, this is a sufficient indorsement of the note to invest its transferee with all the rights of a bona fide purchaser, the same as if the indorsement had been written upon the note itself. ... In the case at bar there was plenty of room upon the back of the note to have made the indorsement, and the only excuse for not doing so was that it was more convenient to assign it on a separate paper, which defendants insist was a sufficient indorsement of the note to invest Lahme with all the rights of a bona fide purchaser, the same as if the indorsement had been written on the note itself. ... While there was room on the $3,700 Hicks note to have written the collateral contract given to Lahme, there was not sufficient room on the coupon notes to have written the same. The collateral agreement was put on another piece of paper, and pinned to the notes, because it was more convenient to do it that way. | What can be done when there is physical impossibility of writing of an indorsement on the note itself? |
| 20822 | Carroll Cnty. Sav. Bank v. Strother, 28 S.C. 504, 6 S.E. 313, 319 (1888) | 5 | A contract to pay money which authorizes the payee to declare it due whenever deemed insecure is not a negotiable note. | As to the other stipulation whereby the payee is invested with authority to declare the so-called note due whenever it is deemed insecure, it seems to us clear that it is sufficient, not only to deprive the paper of its negotiability, but also of its character as a note; for it renders the time of payment altogether uncertain, and dependent only upon the option of the payee. See Bank v. Bynum, supra; Glidden v. Henry, 104 Ind. 278, 1 N. E. Rep. 369: Mahoney v. Fitzpatrick, 133 Mass. 151, 43 Amer. Rep. 502: Woodbury v. Roberts, 59 Iowa, 348, 13 N. W. Rep. 312. | Are notes promising to pay specified sums of money for the hire of slaves promissory notes? |
| 20823 | Shrewsbury v. Pocahontas Coal & Coke Co., 219 F. 142, 147–48 (4th Cir. 1914) | 3 | A conveyance to the grantor of land subsequent to his deed to another with warranty inures to the benefit of his grantee. | 'A conveyance without warranty by mere estoppel cuts off the assertion of any title or claim which the grantor had at the time of the conveyance, but it will not operate to pass to the grantee any title afterwards acquired by the grantor. If, however, there is a general warranty in the deed, it not only cuts off the existing title of the grantor, but precludes him from setting up any after-acquired title. It does more. Such after-acquired title inures to the benefit of the grantee and passes to him.' And the same court, in Clark v. Sayers, 55 W.Va. 527, 47 S.E. 318, after referring to a number of cases, states the proposition as follows: 'In most states the covenant of general warranty is held not only to estop the grantor and his heirs from setting up an after-acquired title, but also actually to transfer the estate subsequently acquired, as if it had passed by the deed in the first instance.' | Does a conveyance without warranty by mere estoppel cut off the assertion of any title or claim which the grantor had at the time of the conveyance? |

| 20828 | Mason v. Metcalf, 63 Tenn. 440, 442 (1874) | 2 | A promise in writing to refund a sum of money received from another, upon condition that a certain receipt be produced, is not a promissory note, and where judgment was rendered thereon for the holder by a magistrate, from which the other party appealed, it was error in the circuit court to render judgment against the sureties on the appeal bond for the amount of the justice's judgment, damages and costs as provided by S 3162 of the Code, although the penalty in the bond was in double that amount, and conditioned to comply with and perform the judgment of the circuit court. The judgment against the sureties should have been for damages and costs only under S 3163 of the Code. | **2 The definition of a promissory note given by Story and Parsons, and approved by this court, requires that it shall contain an absolute and unconditional promise to pay--that the promise shall not be contingent. Tested by this definition, we are forced to hold, that the written instrument sued on in this case is not a *443 promissory note. The promise to pay is not absolute and unconditional, but it is made to depend on the contingency that Hambleton ""produces said Alman's receipt." If this receipt is not produced, then the promise is not binding. The production of the receipt is a condition precedent to the obligatory character of the promise. As it was not certain that the receipt would be produced, for that reason this contingency is fatal to the character of the paper as a promissory note. Upon the production of the receipt the promise becomes absolute, and for its breach suit might be brought, but not on the paper as a promissory note, but on it as the evidence of a contract between the parties upon which a recovery would be had in damages. It follows that the Court below erred in giving judgment against Metcalf and Syler for the amount of the Justice's judgment. It should only have been given for damages and costs, under sec. 3163 of the Code. | Is a promissory note an unconditional promise to pay? |
| 20830 | Ewing v. Sills, 1 Ind. 125, 126 (1848) | 3 | Where the date of an assignment is not shown, it will be presumed to have been at the date of the note. | Here, the date of the assignment is not given, and we must presume it the same as the date of the note. | If a date is not listed is it presumed as the date of the note? |
| 20831 | Davis v. Solomon, 101 Conn. 465, 126 A. 724, 725 (Conn. 1924) | 1 | In action by accommodation indorsers against prior accommodation indorser, who was also payee, to fix liability under Gen.St.1918, S 4426 (Rev.1949, S 6360), in which payee alleged that there was an agreement between all indorsers to be jointly liable, evidence of payee as to statement by maker relative to agreement by plaintiffs as to liability of indorsers, without further proof, held hearsay as to existence of such agreement, where statements were made in absence of plaintiffs. | ... The defendant in his answer further alleged, in substance, that the plaintiffs and the defendant agreed between themselves to indorse the note as accommodation indorsers and to become jointly liable in case the note was not paid by the maker. This allegation the plaintiffs denied. .... The statements claimed to have been made to Solomon by Shalett in the absence of the plaintiffs and without proof connecting Keefe and Davis with the making of any such agreement were mere hearsay statements as to the existence of such an agreement. There were no such offers of further proof accompanying the statements offered as would justify the court in admitting them. | In what order are accommodation parties liable? |
| 20842 | Jones v. Elliott, 4 La. Ann. 303, 303 (1849) | 2 | The assignee of a promissory note, transferred by a separate instrument, may sue in his own name. | Phelps is the payee of the note, upon which this suit is brought against Elliott, the maker,. The transfer of the title to a promissory note is not restricted to the form of an endorsement merely. It may be assigned by an independent instrument. In a court of common law the mere assignee of a negotiable instrument, not endorsed by the payee, would not be permitted to sue in his own name; but a court of equity would aid the assignee in its collection, and certainly there is no objection under our system to the assignee suing in his own name. See Hughes v. Harrison, 2 La. 92. | Can an assignee maintain an action or sue in his own name? |
| 20844 | Shackelford v. Hooker, 54 Miss. 716, 719 (1877) | 2 | A conditional acceptance by the drawee of a bill of exchange, held not to render him liable thereon till the fulfillment of the condition. | It is the right of the holder of a bill of exchange to insist upon an absolute unconditional acceptance, and he may decline a conditional one, and protest. 1 Daniel on Negotiable Instruments, § 508. If he takes a qualified or conditional acceptance, he does so at his own risk. A conditional acceptance makes a new contract between the payee and acceptor, expressed in the terms employed by the acceptor. He names the condition *720 on which he will pay, and can only be held bound by averment and proof that the condition has been performed. | What is a conditional acceptance of a bill of exchange? |

| | | | | | |
|---|---|---|---|---|---|
| 20862 | Smith v. Nelson Land & Cattle Co., 212 F. 56, 60 (8th Cir. 1914) | 3 | The time of payment of certain notes, negotiable in form, was not rendered uncertain and their negotiability destroyed by a provision of a mortgage, securing them, that the whole sum might be declared due and payable in the event of certain contingencies. | The time of payment named in the notes was certain when they were made. It was certain when they came into the hands of Luikart, Anthes & Smith and George H. Smith. It is certain now, and still it is claimed that, ever since the notes were made, the time of payment has been uncertain. The time of payment of any promissory note may be extended, and no one has ever thought of urging that fact to destroy its negotiability.... It is also urged that the provision in the mortgage which was given to secure the notes that in the event of certain contingencies the whole sum for which the notes were given might be declared due and payable render the time of payment of the notes uncertain, and therefore destroy their negotiability. | "An instrument to be negotiable, should it be payable on demand at a determinable future time?" |
| 20863 | State v. Mayor, Etc., 56 N.J.L. 471, 472–73 (Sup. Ct. 1894) | 1 | The franchise of a corporation is not taxable under Act 1866, Revision, p. 1150, wherein, section 3, real estate is declared to include all lands, all water power thereon or appurtenant thereto, and all buildings and erections thereon or affixed to the same, trees and underwood growing thereon, and all mines, quarries, peat and marl beds, and all fisheries, and that personal estate shall include goods and chattels of every description, including steamboats and other vessels, money, debts due or owing from solvent debtors, public stocks, and stocks in corporations; nor under Revision, p. 196, S 105, providing that "the real and personal estate of every corporation shall be taxed the same as the real and personal estate of an individual." | This suggestion is strengthened by the third section, which declares that the term "real estate" shall be construed to include all lands, all water power thereon or appurtenant thereto, and all buildings and erections thereon, or affixed to the same, trees and underwood growing thereon, and all mines, quarries, peat and marl beds, and all fisheries, and that the term "personal estate" shall be construed to include goods and chattels of every description, including steamboats and other vessels, money, debts due or owing from solvent debtors, public stocks, and stocks in corporations. What sort of property thus enumerated is commonly owned both by individuals and by corporations. | Is franchise a taxable property? |
| 20866 | Butler v. Paine, 8 Minn. 324, 324 (1863) | 1 | A promissory note or bill of exchange, payable in currency, is payable in money, and is negotiable. | A draft payable in "currency" is, in legal acceptation, payable in money, and, consequently negotiable. | "Is a note payable in currency or in current funds, prima facie negotiable?" |
| 20867 | Easley v. E. Tennessee Nat. Bank, 138 Tenn. 369, 374 ( Tenn. 1917) | 3 | Demand certificate of deposit, stipulating no interest after 12 months, negotiated more than year after its date, is negotiated unreasonable time after issuance, and one who takes it is not holder in due course, under Thompson's Shannon's Code, S 3516a52. | Accordingly, we think that a demand certificate of deposit such as the one before us, stipulating "no interest after 12 months," negotiated more than a year after its date, is negotiated an unreasonable length of time after its issue, and one who takes it is not a holder in due course. | Can there be an extension of time on a note payable on demand? |
| 20869 | Larey v. Taliaferro, 57 Ga. 443, 443 (1876) | 2 | When one, in trading property, says he will warrant it to be sound in every respect, his declaration may amount to a representation as well as to a warranty. | When one, in trading property, says he will warrant it to be sound in every respect, his declaration may amount to a representation as well as to a warranty. | Can a declaration amount to a warranty? |
| 20875 | Inhabitants or Northampton v. Commissioners of Hampshire Cnty., 145 Mass. 108, 108, 13 N.E. 388, 388–89 (1887) | 1 | St.1849, c. 96, S 4, providing that funds of corporation known as "Smith Charities," for taxation purposes be equally apportioned among eight towns, named in the testamentary trust, or such of them as should not have forfeited their rights therein, apportionment to be made and assessors of each town notified by the trustees, on or before May 1st in each year, and that portions of funds thus assigned to the towns respectively, might be assessed therein in all the taxes legally rated and assessed by the towns, does not conflict with Const. pt. 2, c. 1, S 1, art. 4, requiring proportional and reasonable assessments, rates, and taxes. | So much of section 4, c. 96, Acts 1849, as says: "But, for the purposes of taxation, said funds shall be equally apportioned among the eight towns named in said will, to- wit, Northampton, Hadley, Amherst, Hatfield, Williamsburg, Whately, Deerfield, and Greenfield, or such of them as shall not have forfeited their rights therein; and said apportionment shall be made, and the assessors of each of said towns shall be notified of the same by the trustees provided for in said will, on or before the first day of May annually, and the portions of said funds thus assigned to said towns, respectively, may be assessed therein in all the taxes legally rated and assessed by said towns,"- is unconstitutional, within the meaning of part 2, c. 1, 1, art. 4, Const.Mass. The provision is unreasonable, within the meaning of said article 4. | Should the tax rate be identical in all municipal corporations throughout the state? |

| | | | | | |
|---|---|---|---|---|---|
| 20876 | Clarey v. Union Cent. Life Ins. Co., 143 Ky. 540, 136 S.W. 1014, 1015 (1911) | 3 | An insurance policy which provided that no action might be brought upon it more than one year after the death of the insured was issued by an Ohio corporation to a resident of Wisconsin. After the contract was made, the insured removed to Kentucky, where he lived for some years before his death. In a suit on the policy, brought more than a year after the death of insured, the plaintiff in her pleadings admitted that the condition, as to the bringing of the suit, was valid both in Ohio and Wisconsin. Held, that the law of one of those two states governed the construction of the contract, and the condition as to the time of suit being valid in those states it will be recognized as valid in Kentucky, though such condition is regarded as contrary to the public policy of Kentucky. | There is no dispute whatever as to the facts. At the time the contract was entered into, the plaintiff resided in Wisconsin, and the insurance company is an Ohio corporation. It is conceded that, under the laws of both Wisconsin and Ohio, the provision under consideration is a valid, binding, and enforceable provision, so that, if this contract is to be controlled, either by the laws of the state of Wisconsin, where it was made, or the laws of the state of Ohio, the residence of the insurance company, plaintiff lost any right that she had to maintain the suit by permitting more than a year to run before instituting same. On the other hand, if the contract is to be construed according to the laws of this state, where the insured died, then, under the rule announced by this court, in Union Central Life Insurance Co. v. Spinks, 119 Ky. 261, 83 S. W. 615, 84 S. W. 1160, 69 L. R. A. 264, 26 Ky. Law Rep. 1205, 27 Ky. Law Rep. 453, such provision cannot be accepted as a bar to plaintiff's right to prosecute the suit for the reason that in the Spinks Case it was expressly held that such a provision was against the public policy of this state, and for that reason void. The contract in the Spinks Case was controlled by the laws of this state, for the reason that it was made and entered into in this state; Spinks being a resident of this state at the time. For the appellant it is insisted that, inasmuch as the insured had made Kentucky his home for several years prior to his death, and died here and his estate was administered here, the rule announced in the Spinks Case must control. For appellee it is insisted that the contract must be controlled by the laws of the place where it was made and entered into or to be performed, and that, for the purposes of this case, it is immaterial whether it is controlled by the laws of the state of Wisconsin or the state of Ohio, and that it is entirely immaterial where the insured resided after the contract was made and entered into, or where he died and his estate | "If a note is executed by a maker in a payee in one state, will the law of that state control?" |
| 20877 | Johnston v. Gawtry, 83 Mo. 339, 342 (1884) | 1 | The state in which a note is made payable, and in which it is delivered in consummation of a bargain, is the place of the contract. | 322, and it is there held that the state in which a note is made payable, and in which it is delivered in consummation of a bargain, is the place of the contract, though the note is executed in another state; that in an equity proceeding in the courts of this state, where nothing to the contrary appears, it will be presumed that the equity doctrine of a sister state is the same as that of the forum, where the courts of both states have an equity jurisdiction; that a married woman in this state is deemed a feme sole for the purpose of charging her separate estate with the payment of a debt, and in an action to enforce her foreign contract against her separate estate in this state, the law of the forum governs as to her power to make it and its validity. | Does delivery of a note complete the contract? |
| 20878 | Bell v. Packard, 69 Me. 105, 107–08 (1879) | 1 | A promissory note written in Maine, but signed in Massachusetts by citizens there, and then returned by mail to the payee in Maine, is a note made in Maine, and to be construed by the laws thereof. So, where one of the makers of such a note, thus written and signed, was a married woman, who signed it as surety for her husband, and by the laws of Massachusetts she could not thus bind herself there, the note is to be construed by the laws of Maine, which authorize her to contract for any lawful purpose. | The note is written and dated at Skowhegan, Maine; it was signed and executed at Cambridge, Massachusetts, and there deposited in a letter in the post office, directed to plaintiff at Skowhegan; all this at request of plaintiff.<br><br>The fact that the old note was to be returned or sent from Skowhegan to Cambridge does not affect the place of contract.<br><br>By the report, the defendant at the time she signed the note *110 was a married woman, and had received no consideration, or any benefit to her separate estate, and is not bound as a surety on a note given by her husband; and her promise was wholly void. Gen. Sts. of Mass. c. 108, § 3. Athol Machine Co. v. Fuller, 107 Mass. 437. Willard v. Eastham, 15 Gray, 328. Heburn v. Warner, 112 Mass. 271. Burns v. Lynde, 6 Allen, 313. | Does delivery of a note complete the contract? |

| | | | | | |
|---|---|---|---|---|---|
| 20882 | Bd. of Directors of St. Francis Levee Dist. v. Bodkin, 108 Tenn. 700, 69 S.W. 270, 270 (1902) | 5 | An Act of the Legislature incorporating a Board of Directors and authorizing it to build, rebuild, and repair levees for the protection of a large district from overflow; to make all necessary contracts, and to levy taxes upon the inhabitants of the district and collect them, and to issue bonds for said purposes, constitutes such Board of Directors a public corporation, clothed with governmental duties and functions of the same general class as cities and counties. | The act then designates certain individuals as directors, and provides that they and their successors in office shall constitute a body politic and corporate by the name and style of the "Board of Directors St. Francis Levee District," and by that name may sue and be sued, and have perpetual succession for the purposes thereinafter designated. The duties of said board are declared to be to levee the St. Francis front, in the state of Arkansas, and to protect and maintain the same by building, rebuilding, repairing or raising levees on the right bank of the Mississippi river, or such other places as said board may select. It is further provided that for the purpose of building, repairing, or maintaining the levee aforesaid, and for carrying into effect the object and purposes of the act, the board of levee directors shall have the power, and it is made their duty, to assess and levy an annual tax on all lands within said levee district, comprising two–thirds of the landowners, after being duly notified, vote for such assessment. Said board of levee directors are given power to employ all agents necessary to the execution of their duties, and to make contracts for the construction or performance of said work. By an act approved March 13, 1899 (Laws Ark. 1899, p. 101), said board was authorized to issue bonds for the purpose of building, repairing, and maintaining levees on the right bank of the Mississippi river.

The supreme court of Arkansas has had occasion to consider the nature and character of this board, and has adjudged it a public corporation clothed with governmental duties and functions, including the power to buy and collect public taxes. Carson v. St. Francis Levee Dist., 59 Ark. 536, 27 S. W. 590; Memphis Land & Timber Co. v. St. Francis Levee Dist., 64 Ark. 258, 42 S. W. 763. | Can lands held for public purposes be levied or sold? |
| 20897 | A.L. Jones Co. v. Bowman Dairy Co., 209 Ill. App. 579, 580 (Ill. App. Ct. 1918) | 2 | Evidence was insufficient to establish a general custom to the effect that a person hired to draw away manure from a barn became the owner thereof and could dispose of it for his own profit so as to entitle plaintiff to recover for breach of contract whereby plaintiff was to remove manure from defendant's barn during the period of one year for the sum of $50 per month. | CUSTOMS AND USAGES, § 27a1--When evidence insufficient to establish custom. Where there is no testimony tending to show a general custom as claimed by plaintiff and his own witnesses testify that they know nothing of a custom with other dealers and that their conclusions are drawn from their own experiences, such evidence is insufficient to establish a custom. | Can custom be found when parties are unable to articulate standards used by opposing parties? |
| 20902 | Mills v. Stark, 4 N.H. 512, 512 (1829) | 1 | Where cattle escape from the close of A., owing to a defect in his fence, and cross the highway into the close of B., which is opposite, through a defect in the fence of B., the latter may lawfully take the cattle as a distress for the damage they have done. | A owned a close adjoining a highway, and B owned another close adjoining the same highway, and opposite the close of A. A's cattle strayed from his said close, through defects in his fence, into the highway, and thence into the close of B, through defect of B's fence--it was held that B might lawfully take the cattle as a distress for the damage they had done. | Can cattles be driven in public highways? |
| 20905 | Nies v. Dist. Ct. in & for Woodbury Cnty., 179 Iowa 326, 161 N.W. 316, 321–22 (1917) | 1 | If landlord of hotel knew that soft drinks were to be served and did not know that intoxicating liquors were to be served, she was not criminally liable for contempt by violating injunction against sales of intoxicating liquors; but, if she knew that a drink called "malta" was to be sold and it was in fact intoxicating, she was criminally liable, though she thought it was a soft drink. | We are not overlooking that her actual intent or want of knowledge is in one sense immaterial. If she knew that malta was being put in and it turns out that malta was an intoxicating liquor, then, in contemplation of law, she knew that the injunction against her was being violated, and consented to the violation. The distinction is this: If all she knew in fact was that soft drinks were about to be put in, she is not criminally liable, because a soft drink is not intoxicating liquor. If she knew that malta was being put in and that was in fact an intoxicating beverage, then it is not material that she believed malta was not an intoxicating liquor. As somewhat bearing on this point and another, we call attention to Potter v. Harvey, 30 Iowa, 502, which holds that, though it is the rule that one who pays after he knows representations made at the sale are false is estopped to claim damages on account of such representations, yet, this is not so if his contract was made through an agent and the principal was ignorant of the false representations having been made, although *322 he knew the facts showing their falsity. | Is a person who knows that the representations of seller were false estopped from afterward claiming damage for such false representations? |

| | | | | | |
|---|---|---|---|---|---|
| 20906 | People v. Snowburger, 113 Mich. 86, 87, 89, 91–92, 71 N.W. 497, 499 (1897) | 2 | The seller's ignorance of the adulteration is no defense to a prosecution under Pub.Acts 1895, No. 193, SS 1-3, providing that no person shall sell or offer for sale any adulterated article of food or drink; section 8 forbidding any person to "knowingly" offer for sale falsely labeled cheese, and there being no like qualification of the other prohibitions of the act. | Section 1 provides: "No person shall within this state manufacture for sale, offer for sale or sell any article of food which is adulterated within the meaning of this act."<br><br>Section 8 of the act shows conclusively that the legislature did not intend to make criminal intent or guilty knowledge a necessary ingredient of the offense.<br><br>It cannot be doubted that the legislature intended by this act to protect the public against the harmful consequences of sales of adulterated food, and, to the end that its purpose might not be defeated, to require the seller, at his peril, to know that the article which he offers for sale is not adulterated. As was said by the supreme court of Ohio in State v. Kelly, 43 N. E. 163: "If this statute had imposed upon the state the burden of proving *** his knowledge of its adulteration, it would thereby have defeated its declared purpose." In State v. Smith, 10 R. I. 260, the court, in speaking of the offense of selling adulterated milk, said: "Counsel for defendant asked the court to charge that there must be evidence of guilty intent on the part of the defendant, and a guilty knowledge, in order to convict him. | Whether knowledge needs to be proved for an offence to sell adulterated milk? |
| 20917 | People v. Warner, 104 Mich. 337, 340, 62 N.W. 405, 406 (1895) | 5 | Though the names of both the drawee and the payee of a forged check be fictitious, the false making of it within intent to defraud constitutes forgery. | The authorities, moreover, lay down the rule as follows: "Signing fictitious names, or the names of nonexisting firms or persons, to an instrument, with an intention to defraud, is a false making, and constitutes forgery." 8 Am. & Eng. Enc. Law, 471, and authorities there cited. The judgment is affirmed. The other justices concurred. | What is forgery under common law? |
| 20920 | Grannis v. Ordean, 234 U.S. 385, 394 (1914) | 1 | Service by publication and mailing of summons in partition, conformably to the local law, naming as party defendant Albert Guilfuss, assignee, and Albert B. Guilfuss, satisfied the due process of law clause of U.S.C.A. Const.Amend. 14, conferring jurisdiction, so as to render a judgment binding on Albert B. Guilfuss, assignee as to his lien; he not having appeared. | The fundamental requisite of due process of law is the opportunity to be heard. Louisville & N. R. Co. v. Schmidt, 177 U. S. 230, 236, 44 L. ed. 747, 750, 20 Sup. Ct. Rep. 620; Simon v. Craft, 182 U. S. 427, 436, 45 L. ed. 1165, 1170, 21 Sup. Ct. Rep. 836. And it is to this end, of course, that summons or equivalent notice is employed. | What are the requisites of a notice under due process? |
| 20923 | Cox v. Weed Sewing-Mach. Co., 57 Miss. 350, 355 (1879) | 1 | The sureties on a bond conditioned to answer for the defaults of a sewing-machine agent, who is the principal obligor, and to whom the bond is delivered, are neither guarantors nor sureties on a guaranty, and are not entitled to notice of the obligee's acceptance of the bond, or of the agent's subsequently contracted debts. | The words 'surety' and 'guarantor' are often used indiscriminately as synonymous terms; but while a surety and a guarantor have this in common, that they are both bound for another person, yet there are points of difference between them which should be carefully noted." | How is a surety different from a guarantor? |
| 20925 | Clough v. Cook, 10 Del. Ch. 175, 87 A. 1017, 1019 (1913) | 5 | A covenant to renew from year to year at the lessee's option in a lease of real estate is enforceable against a purchaser of the property with notice of the lease and the covenant to renew. | Or the second purchaser, if he have notice at the time of the purchase of the previous contract, will be compelled to convey the property to the first purchaser. | "Can a second purchaser, having notice of a previous contract, be compelled to convey to a former purchaser holding such previous contract?" |
| 20926 | Bonnell v. Bargeron, 162 Ga. 804, 134 S.E. 779, 780 (1926) | 1 | Where, under deed in trust to pay usufruct to grantee's wife and to convey to persons wife by will should appoint, and in default of appointment land was to belong to wife's children, grantee held legal title in trust, not only to wife's interest, but to contingent remainders of children, parties holding adversely under color of title for more than prescriptive period before wife's death held to have good title thereto. | The general rule is that, where an estate is expressly given for life, with an added power of disposal given to the life tenant, this does not enlarge the life estate into an estate in fee. | What happens when a life tenant conveys a greater estate than they possess? |
| 20936 | Palmer v. Scott, 68 Ala. 380, 383 (1880) | 1 | Where an agent collected money belonging to his principal and mingled it with the money of a firm of which he was a member, and it was used by the firm, a partnership liability was created, though the other partner was ignorant of the conversion. | Hogan & Co. v. Reynolds, 8 Ala. 59, and authorities on the briefs of counsel. Mercantile partnerships are presumed to have authority to borrow money, and each partner is presumed to have authority to sign the partnership name to paper, commercial or otherwise, in evidence or liquidation of the firm's debts. | Do mercantile partnerships have the right to borrow money? |

| | | | | | | |
|---|---|---|---|---|---|---|
| 20938 | Palmer v. Scott, 68 Ala. 380, 383 (1880) | 1 | Where an agent collected money belonging to his principal and mingled it with the money of a firm of which he was a member, and it was used by the firm, a partnership liability was created, though the other partner was ignorant of the conversion. | Hogan & Co. v. Reynolds, 8 Ala. 59, and authorities on the briefs of counsel. Mercantile partnerships are presumed to have authority to borrow money, and each partner is presumed to have authority to sign the partnership name to paper, commercial or otherwise, in evidence or liquidation of the firm's debts. | Do mercantile partnerships have the right to borrow money? |
| 20961 | Miller, DuBrul & Peters Mfg. Co. v. Laidlaw-Dunn-Gordon Co., 17 Ohio Dec. 499, 499 (Ohio Com. Pl. 1905) | 2 | An association composed of numerous persons, firms and corporations engaged in the metal trades, in order to adopt a uniform basis of just and equitable dealings between members and their employees and to investigate and adjust any question arising between members and employees, was not a copartnership nor an organization for profit, and membership therein by a corporation was not inconsistent with the character of the corporation, nor was there an unlawful delegation of powers from the directors. | Corporations have no power to become members of a partnership. | Do corporations have the power to become members of a partnership? |
| 20996 | Walmsley v. Whitfield, 24 La. Ann. 258, 258 (1872) | 1 | The dismissal, on motion of the defendant, of the main action, carries with it the dismissal of an intervention filed in the case. | The defendant, appellee, contends that with the dismissal of the principal suit intervention necessarily fell to the ground, and cites 3 An. 331; 4 An. 279; 9 An. 54; 14 An. 426. | Does the dismissal of principal suit carry a dismissal of intervention? |
| 21007 | Swenson v. Erickson, 90 Ill. App. 358, 359 (Ill. App. Ct. 1899) | 4 | Partner could not be held liable in action for malicious prosecution instituted solely by another partner in name of firm, since tort of one partner was not imputable to another partner who took no part in it. | A partner is not liable for tort of copartner not committed within the scope of partnership business. | Is a partner liable for tort of a copartner not committed within the scope of partnership? |
| 21012 | Kaletha v. Hall Mercantile Co., 157 Minn. 290, 294, 196 N.W. 261, 262 (1923) | 2 | It was the intention of the Legislature that an employee's recovery under the Workmen's Compensation Act should be speedy, certain, and definite. | The employer was not negligent in furnishing the beard, but the right of appellant to compensation does not arise out of tort, but exists by reason of the Workmen's Compensation Act (Gen. St. 1913, §§ 8195-8230). | "Does the right to workmens compensation arise out of tort, or does it exist by reason of the Workmens Compensation Act?" |
| 21013 | Cummings v. Gassett, 19 Vt. 308, 310 (1847) | 5 | A memorandum on the margin of a note, merely specifying certain items of property at certain sums, the sum total of which, as added together, was equal to the sum on the face of the note, cannot be treated as part of the note for the purpose of showing that the consideration was other than money, so as to defeat an action for money had and received. | The memoranda at the side of the note are no part of it, as those memoranda, only, are so considered, which contain "an important qualification of the contract." | Are the memoranda at the side of the note a part of it? |
| 21016 | Guie v. Byers, 95 Wash. 492, 496 (1917) | 1 | In general, "renewal," as applied to promissory instruments, means change of something old for something new. | In general a renewal, as applied to promissory instruments, means 'a change of something old for something new'; as the renewal of a note.' | Can there be a renewal if the obligation changes? |
| 21035 | Stephens v. Joyal, 45 Vt. 325, 329 (1873) | 1 | A deposition under a citation and caption as in a suit of "A.S. v. M.J., Administratrix," in a case docketed as "A.S. v. J.J.'s Estate," held to be admissible, M.J. being the defendant in fact. | It was held in Dupy v. Wickwire, qui tam, 1 D. Chip. 237, referred to by the defendant, that the caption of a deposition in a suit brought qui tam, need name only the prosecutor as plaintiff, omitting the qui tam. | "In the caption of a deposition, must all parties be individually and correctly named?" |
| 21037 | Salmer v. Lathrop, 10 S.D. 216, 72 N.W. 570, 571 (1897) | 1 | It is no ground for exclusion of deposition that after it was taken for plaintiff, and returned in envelope bearing title of the cause, as prescribed by Comp. Laws, S 5292, other persons were, by amendment, made plaintiffs; the issues not being materially changed or defendant prejudiced thereby. | "Statutes directing that the envelope or wrapper covering a deposition shall be indorsed with the style of the cause and otherwise have been liberally construed, the prevailing object being only to preserve the purity of the deposition." | Does return on a deposition envelope serve the purpose to preserve the purity of the return? |

| | | | | | |
|---|---|---|---|---|---|
| 21059 | Perkins v. Caldwell, 363 S.W.3d 149, 153 (Mo. Ct. App. 2012) | 3 | Despite former alderman's impeachment and removal, she would no longer be occupying her elected position of alderman, and thus, her claim that she was entitled to reinstatement as alderman because the trial court erred in upholding board of aldermen's impeachment and removal of former alderman from her office, and that the board should have disqualified mayor and allowed former alderman to question the board as to any bias or prejudgment it may have had against her, were moot; expiration of former alderman's term of office made the relief sought impossible, and to reinstate alderman would have required ousting the present duly elected office holder. V.A.M.S. S 536.063(3). | When an event occurs that makes a court's decision unnecessary or makes granting effectual relief by the court impossible, the case is moot and generally should be dismissed. | Will a case be moot and dismissed if an event occurs that makes a court's decision unnecessary? |
| 21069 | Sibley v. Phelps, 60 Mass. 172, 173 (1850) | 1 | Negotiability is not an essential element of a note. | Negotiability is not an essential quality of a promissory note | Is negotiability an essential ability of a promissory note? |
| 21076 | S. Nat. Life Realty Corp. v. People's Bank of Bardstown, 178 Ky. 80, 198 S.W. 543, 547 (1917), modified sub nom. S. Nat'l Life Realty Corp. v. People's Bank of Bardstown, 179 Ky. 113, 200 S.W. 313 (1918) | 3 | Negotiable Instruments Act, S 58, in view of sections 29, 52, 119, 120, and 191, held not to affect defense of sureties on note that payee, in whose hands it remained, surrendered collateral deposited by principal maker. | The act does not lay down any new rule with reference to the effect, upon the liability of sureties to the original payee, of his surrender of collateral securities to the principal maker, or treat of collateral securities at all, but, upon the other hand, does specify that in the hands of a holder, such as we have seen plaintiff here was, a negotiable instrument shall be subject to the same defenses as if nonnegotiable. | Is Negotiable Instruments Act a codification of common law? |
| 21077 | Mason v. Metcalf, 63 Tenn. 440, 441 (1874) | 2 | A promise in writing to refund a sum of money received from another, upon condition that a certain receipt be produced, is not a promissory note, and where judgment was rendered thereon for the holder by a magistrate, from which the other party appealed, it was error in the circuit court to render judgment against the sureties on the appeal bond for the amount of the justice's judgment, damages and costs as provided by S 3162 of the Code, although the penalty in the bond was in double that amount, and conditioned to comply with and perform the judgment of the circuit court. The judgment against the sureties should have been for damages and costs only under S 3163 of the Code. | The Justice of the Peace gave judgment against Goar for $143.69, from which he appealed to the Circuit Court, giving Metcalf & Syler as his sureties on his appeal bond, which was in the penalty of $287, and conditioned to comply with and perform the judgment of the Circuit Court. On the trial in the Circuit Court, judgment was rendered for $164.96 against Hudgins, as administrator of Goar, principal, and Metcalf & Syler as sureties on the appeal bond. Metcalf and Syler have appealed. The question presented by the record is, whether the Circuit Judge erred in giving judgment on the appeal bond against Metcalf & Syler for anything more than for damages and costs? This depends upon the question, whether the instrument on which the judgment was rendered, is either of those specified in sec. 3162 of the Code? It is obvious that if it is either of those instruments, it is a promissory note. In the case of Whiteman v. | Does a promissory note have to be unconditional? |
| 21085 | Lane County v. Oregon, 74 U.S. 71, 75 (1868) | 13 | Taxes imposed by a state government on the people of the state are not "debts" within the meaning of the legal tender acts. | We proceed then to inquire whether, upon a sound construction of the acts, taxes imposed by a State government upon the people of the State, are debts within their true meaning. | Should liabilities for taxes be treated as debts? |
| 21095 | Hall v. Burton, 29 Ill. 321, 321 (1862) | 1 | A note made payable to the order of the maker becomes, by his indorsement and delivery, like a note made to the order of any other person. | A note made payable to the order of the maker, becomes by his indorsement and delivery, like a note made to the order of any other person. | When does a note become fully invested with the attributes of the instruments? |
| 21096 | Hall v. Burton, 29 Ill. 321, 321 (1862) | 1 | A note made payable to the order of the maker becomes, by his indorsement and delivery, like a note made to the order of any other person. | A note made payable to the order of the maker, becomes by his indorsement and delivery, like a note made to the order of any other person. | When does a note become subject to all of its incidents? |

| | | | | | |
|---|---|---|---|---|---|
| 21097 | McKindly v. Dunham, 55 Wis. 515, 13 N.W. 485, 486 (1882) | 2 | An agent who merely solicits orders for goods, and forwards them to his principal to be filled, has no implied authority to receive payment therefor. | A principal is responsible for any act of his agent which justifies a party dealing with him in believing that he has given the agent his authority to do such act. | Is a principal responsible for an agents act if he justified the party dealing with the agent in believing that he has given the agent authority? |
| 21098 | Everdell v. Carrington, 154 A.D. 500, 139 N.Y.S. 119, 121 (App. Div. 1913) | 4 | A person dealing with an agent is bound at his peril to inquire and ascertain the extent of the agent's authority. | Cleary to receive the sum paid; otherwise, he paid at his peril. The general rule is that a party dealing with an agent must ascertain the extent of the powers delegated to him, and 'must abide by the consequences if he transcends them.' | "Should a party dealing with an agent, abide by the consequences if he transcends them?" |
| 21100 | Davis v. Miller, 88 Iowa 114, 55 N.W. 89, 90 (1893) | 1 | Code, 1873, S 2586 (I.C.A. S 616.17), provides that, with certain exceptions, personal actions must be brought in a county wherein some of the defendants actually reside. Section 2581 (I.C.A. S 616.7) provides that, when a written contract is to be performed in any particular place, action for a breach thereof may be brought in the county wherein such place is situated. Held, that the blank indorsement of a note payable at a particular place does not require the indorser to pay at that place, and, unless, therefore, he is a resident of the county, no action can be brought against him therein. | It follows that on the showing made by the petition, if defendant is liable for the payment of the note, his liability is that of an indorser. We are next required to determine whether the blank indorsement of a negotiable promissory note, payable by its terms, at a designated place, requires the indorser, when his liability becomes fixed, to pay the note at such place, when he resides outside the county where it is situated. Section 2586 of the Code is as follows: "Except where otherwise provided herein, personal actions must be brought in a county wherein some of the defendants actually reside. But, if none of them have any residence within the state, they may be sued in any county wherein either of them may be found. | Does the law where the contract took place govern the liability of the indorser? |
| 21103 | Parkinson v. Finch, 45 Ind. 122, 126 (1873) | 1 | A person who signs a note purporting to be negotiable and payable at a bank in Indiana, in an action brought by a bona fide holder, is not estopped from showing that there was no such bank as the one described in the note. | The real question for our decision is, whether a person who signs a note purporting to be negotiable and payable in a bank of this State is thereby estopped, in an action brought by a bona fide purchaser for value and before maturity, from asserting and proving that there was no such bank as the one described in the note. | Is it necessary for a note to be paid in chartered bank? |
| 21105 | Farmers' & Traders' Bank v. Laird, 188 Mo. App. 322, 175 S.W. 116, 118 (1915) | 3 | An agreement to renew a note is not void for uncertainty because it does not state how many renewals there may be or for how long. | [6] We do not sanction the view of plaintiff that the agreement for a renewal is void for uncertainty. Where such agreement does not state the number of renewals it must be construed as an agreement to renew once only (1 Daniel on Negotiable Instruments [6th Ed.] 159), and where it does not specify the time, the parties should be understood as contemplating that the terms of the original note would be repeated in the renewal, and that the new period of time allotted for the payment would be of the same duration as that provided in the original note. | What happens when an agreement does not state the number of renewals? |
| 21109 | Burton v. Hansford, 10 W. Va. 470, 486 (1877) | 1 | A stranger who indorses negotiable paper at the time is made is prima facie liable to the payee, at his election at any time, either as original promisor or as guarantor. | . In this case it is only necessary to decide that a stranger who endorses negotiable paper at the time it was made is prima facie liable to the payee as original promisor if he chooses to so regard him. ** | When can a third person be held as a guarantor? |
| 21110 | Gay v. Rooke, 151 Mass. 115, 115–16, 23 N.E. 835, 835 (1890) | 2 | An instrument in writing, in the form: "I O U, E. A. Gay, the sum of seventeen dolls. 5/100, for value received. John R. Rooke,"-is not a promissory note. | In this view, *116 the instrument sued on cannot be considered a promissory note. It is an acknowledgment of a debt only; and, although from such an acknowledgment a promise to pay may be legally implied, it is an implication from the existence of the debt, and not from any promissory language. | Can an instrument constitute a promissory note if there is no express promise to pay? |
| 21116 | Freas v. Jones, 15 N.J.L. 20, 21 (1835) | 2 | A date is not essential to an affidavit, and, if a date is stated erroneously, the mistake may be shown. | A date is not essential to an affidavit. | Is date an essential part of an affidavit? |
| 21117 | Gay v. Rooke, 151 Mass. 115, 115–16, 23 N.E. 835, 835 (1890) | 1 | The following instrument: "I O U, E. A. Gay, the sum of seventeen dolls. 5/100, for value received. John R. Rooke"-is an acknowledgment of debt by the maker, and not a note. | In this view, *116 the instrument sued on cannot be considered a promissory note. It is an acknowledgment of a debt only; and, although from such an acknowledgment a promise to pay may be legally implied, it is an implication from the existence of the debt, and not from any promissory language. | Is acknowledgement of a debt a promissory note? |

| | | | | | |
|---|---|---|---|---|---|
| 21119 | Anderson v. Border, 75 Mont. 516, 244 P. 494, 498 (1926) | 10 | Parol evidence held admissible to show that accommodation indorsers of note had not bound themselves personally (Rev.Codes 1921, SS 7538, 8459, 8475, 10517, 10521). | As to one another, all the indorsers are liable in the order of their indorsement; | In what order are indorsers liable? |
| 21130 | Ex parte Orozco, 201 F. 106, 110 (W.D. Tex. 1912) | 2 | Pen.Code, S 14, 22 U.S.C.A. S 461, held not to authorize the president to use the military power in time of peace to arrest without a warrant and imprison without the benefit of a trial a person within the United States merely suspected of intention to organize an expedition in aid of a revolution in his own country with which the United States is at peace. | In discussing the question it was said by the *116 learned justice at pages 147, 148, of 44 Ill., at pages 163, 164, of 92 Am. Dec.: 'That the President of the United States has the rightful power in time of peace to cause a marshal to arrest a citizen of Illinois without process and without any charge of crime legally preferred, and convey him to a distant state, and there imprison him without judicial writ or warrant in a military fortress, is a proposition which no one would have the hardihood to assert.<br><br>But in using the army to prevent the carrying on of a military expedition against Mexico we may go further, and arrest, without warrant and imprison without the benefit of a trial, persons who are suspected of organizing such expeditions? | Can the President employ the army in preventing the carrying on of a military expedition and does his discretion in calling out the military forces for that purpose subject to the review and control of the courts? |
| 21131 | United States v. Murphy, 84 F. 609, 614 (D. Del. 1898) | 1 | A combination of a number of men in the United States, with a common intent to proceed in a body to a foreign territory, and engage in hostilities, either by themselves or in co-operation with others, against a power with whom the United States are at peace, constitutes a military expedition, when they actually proceed from the United States, whether they are then provided with arms, or intend to secure them in transit. It is not necessary that all the persons shall be brought in personal contact with each other in the United States, or that they shall be drilled, uniformed, or prepared for efficient service. | The words 'military enterprise' are somewhat broader in meaning than the words 'military expedition.' Where a number of men, whether few or many, combine and band themselves together, and thereby organize themselves into a body, within the limits of the United States, with a common intent or purpose on their part at the time to proceed in a body to foreign territory, there to engage in carrying on armed hostilities, either by themselves or in co-operation with other forces, against the territory or dominions of any foreign power with which the United States is at peace, and with such intent or purpose proceed from the limits of the United States on their way to such territory, either provided with arms or implements of war, or intending and expecting and with preparation to secure them during transit, or before reaching the scene of hostilities, in such case all the essential elements of a military enterprise exist. It is not necessary that the men shall be drilled or uniformed or prepared for efficient service, nor that they shall have been organized, according to the tactics, as infantry, artillery or cavalry. | "In terms of military, is the word 'military enterprise broader than the word 'military expedition'?" |
| 21135 | Smoot v. Judd, 161 Mo. 673, 61 S.W. 854 (1901), overruled by Smoot v. Judd, 184 Mo. 508, 83 S.W. 481 (1904) | 2 | The law of the place where a contract is to be performed is the law of the contract, and a note signed by a married woman in Kentucky, which was returned to her husband at their home in Missouri, who signed and returned it to Kentucky, where it was delivered to the payee, a resident of that state, is a Missouri contract, no place of payment being mentioned, and the property charged with its payment being in Missouri. | The case was tried on the theory that the note was a Missouri contract, and subject to our laws, and that was probably correct, although it was signed by Mrs. Smoot in Kentucky, mailed to her husband here, who signed it, and returned it to Kentucky, where it was delivered to the payee, who was a resident of that state. No place of payment is mentioned in the note, but as the married woman lived here, and, so far as the married woman's obligation is concerned, the property charged with its payment being in Missouri, this may be considered as the place intended for the performance of the contract. The law of the place where the contract is to be performed is the law of the contract. | What law governs a contract? |
| 21140 | Coursey v. Coursey, 141 Ga. 65, 464 (1913) | 3 | "Estoppel" is not a conveyance of title. Its office is to prevent denial by one affected by it, not to affirmatively transfer title. | But estoppel is not a conveyance of title. Its office is to prevent denial by one affected by it, not to affirmatively transfer title. | Is estoppel a conveyance of title? |

| 21145 | Monroe v. Hamilton, 60 Ala. 226, 231 (1877) | 2 | H., who was an equal partner of M. in cultivating a crop, executed to M. a mortgage on his entire interest as security for an individual debt which M. had become liable to pay, and stipulating that, since the crop would be gathered before the maturity of the debt, M. should take possession and dispose of the crop for their mutual benefit; M. to hold H.'s half of the net profits in trust for H., to be applied to the payment of the secured debt, and the balance of H.'s moiety to be paid over to H. Held, that the mortgage did not operate a dissolution, nor affect the duties and liabilities of H. as a partner. | An assignment by a partner, of all his interest in the partnership property, to a stranger, operates a dissolution of the partnership, of necessity: "it gives rise to a state of things altogether incompatible with the prosecution of a partnership concern." | Does an assignment by one partner of all his interest in the partnership to a stranger dissolve the partnership? |
| 21158 | Lewin v. Telluride Iron Works Co., 272 F. 590, 598 (8th Cir. 1921) | 7 | "Estoppel" is an indispensable element of a waiver, and estoppel does not exist unless there is ignorance by the party who invokes the estoppel, a misrepresentation by the other party and a detrimental change by the party asserting estoppel in reliance upon misrepresentation, so that a landlord does not waive his lien by mere inaction which did not mislead the lessee or his trustee in bankruptcy as to the true situation. | But an estoppel is an indispensable element of a waiver. Where there is no estoppel, there is no waiver. Hampton Stave Co. v. Gardner, 154 Fed. (8 th C.C.A.) 805, 808, 83 C.C.A. 521; Ins. Co. v. Wolff, 95 U.S. 326, 332, 24 L.Ed. 387; Assurance Co. v. Building Ass'n, 183 U.S. 308, 357, 22 Sup.Ct. 133, 46 L.Ed. 213; Society v. McElroy, 28 C.C.A. 365, 372, 83 Fed. 631, 640; Rice v. Fidelity & Deposit Co., 103 Fed. 427, 435, 43 C.C.A. 42, 45; United Firemen's Ins. Co. v. Thomas, 82 Fed. 406, 27 C.C.A. 42, 92 Fed. 127, 34 C.C.A. 240, 47 L.R.A. 450; Williams v. Neely, 67 C.C.A. 171, 180, 134 Fed. 1, 11, 69 L.R.A. 232. And the indispensable elements of an estoppel are: (1) Ignorance of the party who invokes the estoppel, or of him from whom such party derives his claim, in this case the trustee or the bankrupt; (2) a representation by the party estopped which misleads; (3) and an innocent and detrimental change of the party asserting the estoppel in reliance upon the representation. | Is there no waiver where there is no estoppel? |
| 21162 | Bank of Orange Cnty. v. Colby, 12 N.H. 520, 523 (1842) | 1 | A note naming no place of payment must be construed according to the lex loci contractus. | The note was executed within the state of Massachusetts. No place is designated where it is to be paid, and it is therefore payable generally. There is nothing in the case, then, to take it out of the general rule, that the lex loci contractus must determine the construction to be given to it, and the obligation and duty it imposes. 6 N. H. Rep. 150, Douglass vs. Oldham, and cases cited; Dow vs. Rowell, 12 N.H. 49. "To bring a contract within the general rule of the lex loci, it is not necessary that it should be payable exclusively in the place of its origin. If payable every where, then it is governed by the law of the place where it is made, for the plain reason that it cannot be said to have the law of any other place in contemplation to govern its validity, its obligation, or its interpretation." Story's Confl. of Laws 264, § 317. And the holder takes it as it was originally made, and as it was in the place where it was made. Ditto 264, 284, 286. | Should lex loci contractus determine the obligation and duty a note imposes? |
| 21163 | Barefield v. State, 14 Ala. 603, 605–06 (1848) | 1 | An offer to bribe a justice of the peace corruptly to decide a cause not then pending, but afterwards to be instituted before him, the bribe not being accepted or the suit instituted, though indictable at common law, is not punishable by confinement in the penitentiary, under the statute of Alabama. | It is an attempt to corrupt the fountain of justice, and to pervert the object and end of government. Such an offence was severely punished at the common law, and might well have been made a penitentiary crime. But we cannot come to the conclusion, that the statute *606 intended to punish by imprisonment in the penitentiary, the mere offer to bribe. To perfect the crime, there must be an acceptance of the promise, or gift, either express, or implied. But if the bribe is rejected, the offence is punishable at the common law, by fine and imprisonment. | Does an act of bribery require that the cause or proceeding be pending before the officer at the time the gift or promise was made? |

| ID | Citation | # | Column A | Column B | Question |
|---|---|---|---|---|---|
| 21168 | Clarey v. Union Cent. Life Ins. Co., 143 Ky. 540, 136 S.W. 1014, 1015 (1911) | 3 | An insurance policy which provided that no action might be brought upon it more than one year after the death of the insured was issued by an Ohio corporation to a resident of Wisconsin. After the contract was made, the insured removed to Kentucky, where he lived for some years before his death. In a suit on the policy, brought more than a year after the death of insured, the plaintiff in her pleadings admitted that the condition, as to the bringing of the suit, was valid both in Ohio and Wisconsin. Held, that the law of one of those two states governed the construction of the contract, and the condition as to the time of suit being valid in those states it will be recognized as valid in Kentucky, though such condition is regarded as contrary to the public policy of Kentucky. | It further pleaded the provision of the policy to the effect that no suit to recover under it should be brought after one year from the death of the insured, that the contract was entered into and to be performed in the state of Wisconsin, and that, under the laws of Wisconsin, where the contract was made, and the laws of the state of Ohio as well, where the policy was issued, such a condition is valid, binding, and enforceable. The plaintiff traversed all of the material allegations of the answer, except that she admitted that under the laws of the states of Wisconsin and Ohio the clause in the contract, providing that no suit should be brought to recover under the policy after one year from the death of the insured, was a binding, legal, and enforceable obligation. But she pleaded that, as the insured died in Kentucky, the contract should be construed according to the laws of this state, and not of the state where the contract was made or to be performed. Several issues of law and fact were made by the pleadings, and upon motion the case was transferred to equity and tried by the chancellor. Upon a full consideration he adjudged that the plaintiff was not entitled to recover, and dismissed her suit. | Which law determines the legal effect of a note made between the maker and payee? |
| 21173 | Bordentown & S.A. Tpk. Rd. v. Camden & A.R. & Transp. Co., 17 N.J.L. 314, 317 (N.J. 1839) | 1 | Case will lie for the disturbance of a franchise. | For a disturbance of a franchise, case is clearly the proper form of remedy. | Can a legal action lie for the disturbance of franchise? |
| 21191 | Gatewood v. Gatewood, 75 Va. 407, 410 (1881) | 1 | The right arising from the assignment of a mortgage must be distinguished from a mere right of subrogation to the lien of the mortgage creditor. Assignment is the act of the parties, and depends generally upon intention. When the nature of the transaction is such as imports a payment of the debt, and a consequent discharge of the mortgage, there can, of course, be no assignment, for the lien of the mortgage is extinguished by the payment. | In the first place, we must be careful to distinguish between an assignment of the mortgage debt, and a mere right of subrogation to the lien of the mortgage creditor. Assignment is the act of the parties, and depends generally upon intention. Where the nature of the transaction is such as imports a payment of the debt, and a consequent discharge of the mortgage, there can of course be no assignment, for the lien of the mortgage is extinguished by the payment. | Is the right of subrogation founded upon contract? |
| 21197 | Williamson v. Osenton, 232 U.S. 619, 626, 34 S. Ct. 442, 443, 58 L. Ed. 758 (1914) | 1 | Where a wife justifiably left her husband and removed to another state with no intent of living elsewhere, she acquired a domicile in the latter state, so that she could sue a citizen of the state in which her husband resided in the federal court. | We see no reason why the wife who justifiably has left her husband should not have the same choice of domicil for an action for damages that she has against her husband for a divorce. We answer the question, Yes. | "Is ""domicile"" a technically pre-eminent headquarters that every person is compelled to have in order that certain rights and duties that have been attached to it by the law may be determined?" |
| 21202 | Harris v. McKay, 138 Va. 448, 457 (1924) | 1 | Where an agent's authority is proved, no question of privity can arise. The doctrine of principal and agent, whether disclosed or undisclosed, recognizes that privity of contract exists between the principal and one dealing with the agent. The act of the agent is the act of the principal. | Where, as here, the agent's authority is proved, no question of privity can arise. The doctrine of principal and agent--whether disclosed or undisclosed--recognizes that privity of contract exists. The act of the agent is the act of the principal. | Is the act of the agent the act of the principal? |

| | | | | | |
|---|---|---|---|---|---|
| 21219 | Sheldon v. Kivett, 110 N.C. 408, 14 S.E. 970, 970 (1892) | 3 | Where an affidavit for attachment in a justice's court, on the ground that defendant is a nonresident, is defective in failing to state that the amount claimed is due on a justice's judgment, or that defendant cannot be found in the state after due diligence, the superior court, on appeal, may amend so as to state such facts, under Code, S 908, providing that in such cases the court may amend "either in form or in substance." | "A. W. Graham, attorney for the plaintiff above named, being duly sworn, deposes and says: (1) That the defendant, W. R. Kivett, is indebted to the plaintiff in the sum of two hundred dollars, due by justice's judgment; (2) that the said defendant is not a resident of the state of North Carolina, and after due diligence cannot be found in North Carolina, and has money, things of value, and property in this state, and that he has a judgment to the amount of $125 against B. H. Cozart, recovered at April term, 1891, of Granville superior court.<br><br>For a stronger reason the power of amendment existed here, where the action began in a magistrate's court, in which the same regularity of procedure is not to be expected, and the Code, § 908, provides that in such cases the court can amend "either in form or substance." State v. Norman, 14 S. E. Rep. 968, (at this term;) Manufacturing Co. v. Barrett, 95 N. C. 36. | Should an affidavit be re-sworn after amendment? |
| 21235 | Murrell v. Murrell, 33 La. Ann. 1233, 1238 (1881) | 2 | A partnership not embracing all the property of each partner is not a universal partnership. | Plaintiffs contend, and defendants deny, that it was a universal partnership. In our Civil Code, Art. 2829, a universal partnership is defined to be a contract by which the parties agree to make a common stock of all the property they respectively possess. | What are the elements of a universal partnership? |
| 21237 | Musson v. Lake, 45 U.S. 262, 278, 11 L. Ed. 967 (1846) | 4 | Liabilities of drawers and endorsers of bill of exchange were governed by law of state where bill was drawn and endorsed. | There is, however, another question, entirely independent of the statute and the decision of the Supreme Court of Louisiana, which may be decisive of the case before this court; and that question is, Whether the contract between the holder and indorser of the bill in controversy is to be governed by the law of Louisiana, where the bill was payable, or by the law of Mississippi, where it was drawn and indorsed. The place where the contract is to be performed is to govern the liabilities of the person who has undertaken to perform it. | Does the law of the place of performance of a contract govern the contract and the liabilities of the person contracting? |
| 21258 | N. Tr. Co. v. Nat'l Bank, 149 U.S. 298, 302, 13 S. Ct. 900, 901, 37 L. Ed. 743 (1893) | 4 | It is not essential to a bill of exchange that it should contain the words "for value received." | Every negotiable promissory note, even if not purporting to be 'for value received,' imports a consideration. | Do the words for value received import consideration to promissory note? |
| 21264 | N. Tr. Co. v. Consol. Elevator Co., 142 Minn. 132, 138 (1919) | 6 | Right of subrogation expires if it appears that at time of payment the purpose was not to keep debt alive, but to extinguish it; and, when it is sought to enforce the right, something more must be shown than that defendant could have been compelled by original creditor to pay debt. | The right may be modified or extinguished by contract. It expires if it appears that at the time of payment the purpose was not to keep the debt alive, but to extinguish it. When it is sought to enforce the right, something more must be shown than that defendant could have been compelled by the original creditor to pay the debt. | Can a right of subrogation be modified or extinguished by contract? |
| 21265 | Bombolaski v. First Nat. Bank, 55 Ind. App. 172, 103 N.E. 422, 423 (1913) | 2 | As between the original parties, delivery involves not only a change of possession but also an intent that the note shall become effective. | [4] [5] As a general rule the delivery of a written instrument involves not only a change of possession but also an intent on the part of the one making the delivery that the instrument shall by that act become effective. | Can a note become negotiable after it is transmitted to another jurisdiction? |
| 21305 | Sims v. Ahrens, 167 Ark. 557, 584 (1925) | 2 | Legislature may select subjects of taxes and classify them under Constitution. Per Hart and Humphreys, JJ. | It results from the authorities cited above that the Legislature may select the subjects of taxes and classify them under the Constitution. Taxes may be imposed on any subject in just proportion to the benefits and protection which such subject receives. | Can the right to impose taxes upon citizens and property be restricted by the constitution? |

| 21306 | Cosmopolitan Tr. Co. v. Leonard Watch Co., 249 Mass. 14, 19, 143 N.E. 827, 829 (1924) | 3 | Assignments made by words or acts. | A valid assignment may be made by any words or acts which fairly indicate an intention to make the assignee the owner of a claim.' Cosmopolitan Trust Co. | Does a valid assignment of a note require intent to make the assignee owner of a claim? |
|---|---|---|---|---|---|
| 21308 | McMillan v. City of Tacoma, 26 Wash. 358, 360, 67 P. 68, 68 (1901) | 4 | The word "tax," as used in Amendatory Revenue Laws 1899, p. 302, S 20, declaring that the holder of a general tax certificate, before bringing an action to foreclose the lien, shall "pay the taxes that have accrued on the property," does not include assessments for street improvements. | *360 Appellant's contention is that, before respondent is entitled to judgment foreclosing his lien, he is required to 'pay all taxes that have accrued on the property,' as provided by section 20, page 302, of the amendatory revenue law of 1899, and that the word 'taxes,' as there used, means local assessments as well as general taxes. In support of the above position our attention is directed to certain portions of the revenue law, and from certain words used it is argued that the legislature meant to include local assessments in the provision above mentioned. | Is general taxation enforced to serve the necessary purposes of government? |
| 21318 | Sw. Oil Co. v. State of Tex., 217 U.S. 114, 120, 30 S. Ct. 496, 498, 54 L. Ed. 688 (1910) | 5 | The possible invalidity under the due process of law clause of the federal Constitution of the provisions as to penalties, contained in Gen.Laws Tex.1905, c. 148, S 9, taxing wholesale dealers in oils, does not invalidate the wholly independent provisions of that statute for the collection by civil suit of the taxes due the state. | The right of the state, by a civil suit, to recover the taxes imposed, is wholly independent of its right, by suit or prosecution, to recover the prescribed penalties. If the provisions as to penalties should be stricken down, there will still be left a complete act providing for the collection by civil suit of the taxes due the *121 state. The rule is well settled that if one part of a statute is valid and another invalid, the former may be enforced, if it be not so connected with or dependent on the other as to make it clear that the legislature would not have passed that part without the part that may be deemed invalid. | Is the state required by Constitution to adopt the best possible taxation system? |
| 21326 | Burrows v. W.U. Tel. Co., 86 Minn. 499 (1902) | 1 | A telegraph company which, upon order by telegraph, issues and delivers its check by mistake to the wrong party, is liable in the amount thereof to an innocent purchaser for value, who takes the same upon his indorsement. Prima facie such indorser is the payee intended, and a purchaser who takes the check from him in good faith, believing him to be the payee, is not called upon to inquire any further than may be necessary to establish the identity of the indorser and the party to whom the check was delivered as payee. | A telegraph company which, upon order by telegraph, issues and delivers its check by mistake to the wrong party, is liable in the amount thereof to an innocent purchaser for value, who takes the same upon his indorsement. Prima facie such indorser is the payee intended, and a purchaser who takes the check from him in good faith, believing him to be the payee, is not called upon to inquire any further than may be necessary to establish the identity of the indorser and the party to whom the check was delivered as payee. | "Should the drawer of a check, draft or bill of exchange, who delivers it to an impostor, supposing him to be the person whose name he has assumed, bear the loss where the impostor obtains payment of or negotiates the same?" |
| 21331 | Duffield v. San Francisco Chem. Co., 205 F. 480, 485 (9th Cir. 1913) | 2 | A lode claim peaceably located within the boundaries of a void placer claim which was at the time actually unoccupied held valid. | The appellee's placer claims had been located after discovery, but at the time when the appellants' lode locations were made the premises were unoccupied. | What is a placer claim? |
| 21332 | Duffield v. San Francisco Chem. Co., 205 F. 480, 484 (9th Cir. 1913) | 1 | A deposit of calcium phosphate in veins or beds between well-defined rock walls held subject to location only as a lode claim under Rev.St. S 2320 (30 U.S.C.A. S 23). | By 'veins or lodes,' as here used, are meant lines or aggregations of metal imbedded in quartz or other rock in place | Are veins or lodes meant lines or aggregations of metal imbedded in quartz or other rock in place? |
| 21335 | Burrows v. W.U. Tel. Co., 86 Minn. 499, 499-500 (1902) | 1 | A telegraph company which, upon order by telegraph, issues and delivers its check by mistake to the wrong party, is liable in the amount thereof to an innocent purchaser for value, who takes the same upon his indorsement. Prima facie such indorser is the payee intended, and a purchaser who takes the check from him in good faith, believing him to be the payee, is not called upon to inquire any further than may be necessary to establish the identity of the indorser and the party to whom the check was delivered as payee. | A telegraph company which, upon order by telegraph, issues and delivers its check by mistake to the wrong party, is liable in the amount thereof to an innocent purchaser for value, who takes the same upon his indorsement. Prima facie such indorser is the payee intended, and a purchaser who takes the check from him in good faith, believing him to be the payee, is not called upon to inquire any further than may be necessary to establish the identity of the indorser and the party to whom the check was delivered as payee. | "What is the liability of drawer of check, who delivers it to an imposter?" |

| ID | Case | Num | Holding (summary) | Holding (full) | Question |
|---|---|---|---|---|---|
| 21336 | Bank of Conway v. Stary, 51 N.D. 399, 200 N.W. 505 (1924) | 3 | Accommodation indorser, indorsing note before delivery under Comp. Laws 1913, SS 6914, 6948, 6949, is not surety within sections 6675-6689, so as to have right under section 6683 thereof to require creditor, on penalty of exoneration of surety, to proceed against principal or to pursue any other remedy in his power which surety cannot himself pursue. | An accommodation indorser, who indorses a promissory note before delivery, under sections 6914, 6948, 6949, C. L. 1913 (sections 29, 63, and 64 of the Uniform Negotiable Instruments Act), is not a surety within the provisions of chapter 85 of the Civil Code (sections 6675 to 6689, C. L. 1913) so as to have the right, under section 6683 thereof, to require the creditor "to proceed against the principal or to pursue any other remedy in his power, which the surety cannot himself pursue and which would lighten his burden," with resulting exoneration from liability if the creditor fails, refuses, or neglects to sue the principal and enforce payment by the principal in appropriate legal proceedings. | Can an indorser be a surety? |
| 21342 | In re Forked Deer Drainage Dist., 133 Tenn. 684, 182 S.W. 237, 238 (1916) | 3 | A drainage district is a governmental agency to which power to levy special assessments may be properly delegated. | Such drainage districts are governmental agencies, and the powers respecting such are properly to be delegated to counties or to any other body the Legislature may see fit. | Can the power of taxation be delegated to incorporated towns by the Legislature? |
| 21353 | Klauber v. Biggerstaff, 47 Wis. 551, 3 N.W. 357, 362 (1879) | 2 | The word "currency," in a certificate of deposit, means money, including bank notes, which, though not an absolute legal tender, are issued for circulation by authority of law, and are in actual and general circulation at the locus in quo at par with coin. | In this use of the term, currency includes only such bank-notes as are current de jure et de facto at the locus in quo; that is, bank-notes which are issued for circulation by authority of law, and are in actual and general circulation at par with coin, as a substitute for coin, interchangeable with coin; bank-notes which actually represent dollars and cents, and are paid and received for dollars and cents at their legal standard value. | Are bank notes equivalent to money? |
| 21354 | Metzerott v. Ward, 10 App. D.C. 514, 521 (D.C. Cir. 1897) | 1 | Where the giving of a note suspends all right of action on the original indebtedness for the amount of which the note is given, such suspension is a sufficient consideration for the note to bind all parties who sign it, whether they all derive personal benefit from such suspension or not. | This, by necessary implication, suspended the remedy for the recovery of the amount of the bonds until the note became due; and this suspension of remedy for the recovery of the bonds or their value was sufficient consideration for the note to bind all the parties who signed it, whether they all derived personal benefit by the suspension of the remedy for the bonds or not. It was their joint and several act that induced the suspension of the remedy for the bonds, and that formed the consideration. | When can a third person be held as an endorser? |
| 21357 | Carroll Cnty. Sav. Bank v. Strother, 28 S.C. 504, 6 S.E. 313, 319 (1888) | 5 | A contract to pay money which authorizes the payee to declare it due whenever deemed insecure is not a negotiable note. | 209, and cases cited in note. As to the other stipulation whereby the payee is invested with authority to declare the so-called note due whenever it is deemed insecure, it seems to us clear that it is sufficient, not only to deprive the paper of its negotiability, but also of its character as a note; for it renders the time of payment altogether uncertain, and dependent only upon the option of the payee. | Can a promissory note be used to hire a slave? |
| 21375 | Payne v. Slate & Gardner, 39 Barb. 634, 1863 WL 4146, at *2 (N.Y. Gen. Term. 1863) | 2 | Whoever makes a promise or an acknowledgment, either orally or in writing, which is to have the effect to rescue a debt from the statute of limitations, must be the party to be charged, or duly authorized by such party. | And whoever makes a promise or an acknowledgment either orally, in writing, or by a payment of principal or interest, which is to have the effect to rescue a debt from the force of the statute of limitations must be the party to be charged or be duly authorized by the person to be charged. | Does the dissolution of a partnership operate as a revocation of all authority to make new contracts? |
| 21377 | Tenney v. E. Warren Lumber Co., 43 N.H. 343, 347 (1861) | 5 | A deed in this form: "We, the E. W. L. Co., in consideration of $5,000 to us paid, etc., do give, grant," etc.; "we, the E. W. L. Co., do hereby covenant," etc.; "if the E. W. L. Co. shall pay," etc.; and concluding, "In witness whereof we have hereunto set our hands and seals," etc.; signed, "D. E. F., President," etc., and seal, "E. S. C., Treasurer," etc., and seal,-is the deed of the corporation, if the agents were authorized to execute it. | "It seems to have been settled or recognized as law in courts of justice, by judges distinguished by their learning and wisdom, in successive generations, and under different governments, that, in order to bind the principal or constituent, and make the instrument his deed, the agent or attorney must set to it the name and seal of the principal or constituent, and not merely his own." | Does an agent need to name the principal in order to bind him? |
| 21385 | Finney v. Terrell, 276 S.W. 340, 342 (Tex. Civ. App. 1925) | 3 | "Joint adventure" similar to partnership, except that it generally relates to a single transaction. | And, while some jurisdictions hold that the joint adventure is not identical with partnership, it is everywhere regarded as of a similar nature and governed by the same rules of law. | Are joint ventures regarded as within the principles governing partnerships? |

| | | | | | |
|---|---|---|---|---|---|
| 21391 | McKissick v. Pickle, 16 Pa. 140, 147 (1851) | 13 | The declaration or admission of one of the trustees of a charitable trust in real estate, that the trust title had been devested, cannot affect the right of the persons interested under the trust. The trustees have no right to relinquish the trust property. | The court say, "there was a contingent interest, which the devisor might have disposed of, if he pleased, to take effect on the forfeiture of the estate." | Can all possible contingent interests in land be taken in execution? |
| 21396 | Grannis v. Ordean, 234 U.S. 385, 394, 34 S. Ct. 779, 783, 58 L. Ed. 1363 (1914) | 1 | Service by publication and mailing of summons in partition, conformably to the local law, naming as party defendant Albert Guilfuss, assignee, and Albert B. Guilfuss, satisfied the due process of law clause of U.S.C.A. Const.Amend. 14, conferring jurisdiction, so as to render a judgment binding on Albert B. Guilfuss, assignee as to his lien; he not having appeared. | The fundamental requisite of due process of law is the opportunity to be heard. | What are the fundamental components of due process? |
| 21399 | Cosmopolitan Tr. Co. v. Leonard Watch Co., 249 Mass. 14, 19, 143 N.E. 827, 829 (1924) | 3 | Assignments made by words or acts. | A valid assignment may be made by any words or acts which fairly indicate an intention to make the assignee the owner of a claim. | Is it necessary to indicate the intention of the owner in an assignment? |
| 21402 | Easley v. E. Tennessee Nat. Bank, 138 Tenn. 369, 374 ( Tenn. 1917) | 3 | Demand certificate of deposit, stipulating no interest after 12 months, negotiated more than year after date, is negotiated unreasonable time after issuance, and one who takes it is not holder in due course, under Thompson's Shannon's Code, S 3516a52. | Accordingly, we think that a demand certificate of deposit such as the one before us, stipulating "no interest after 12 months," negotiated more than a year after its date, is negotiated an unreasonable length of time after its issue, and one who takes it is not a holder in due course. | The trial court has broad discretion in dismissing frivolous or malicious in forma pauperis actions? |
| 21408 | Burton v. Hansford, 10 W. Va. 470, 481–82 (1877) | 1 | A stranger who indorses negotiable paper at the time it is made is prima facie liable to the payee, at his election at any time, either as original promisor or as guarantor. | If a third person endorses *482 at the time it is made, a negotiable note not drawn payable to him, he thereby indicates that he intends to bind himself for the payment of the note in some form, and if he has failed to indicate in what form it is fair to presume that he intended to be bound in any manner that the payee might elect. | When can a third person be held as an endorser? |
| 21409 | Matson v. Frank, 86 Wash. 669, 671, 151 P. 89, 89 (1915) | 1 | Under Rem. & Bal.Code, SS 474, 475, RCW 4.84.010, 4.84.020, an attorney's fee held properly taxed as costs, where the note provided for such fee, but the mortgage did not. | In Potwin v. Blasher, 9 Wash. 460, 37 Pac. 710, we held the notes and mortgage were to be construed as one transaction. | Can notes and mortgage be construed as one transaction? |
| 21423 | Ex parte Algoe, 74 Neb. 353, 104 N.W. 751, 751 (1905) | 1 | Laws 1901, p. 493, c. 93, providing penalties for blackmail, extortion, and kindred felonies, expresses the subject of the act in the title with sufficient clearness to meet the requirements of Const. art. 3, S 11. | "Blackmail is an extortion of hush money; obtaining value from a person as a condition of refraining from making an accusation against him, or disclosing some secret calculated to operate to his prejudice." | Does blackmail imply an extortion of hush money? |
| 21433 | Goesele v. Bimeler, 55 U.S. 589, 595, 14 L. Ed. 554 (1852) | 2 | An association of separatists emigrated from Germany to this country; and B., their leader, purchased a tract of wild land in Ohio on credit, and took a deed thereof in his own name; and it was verbally agreed between the members of the association that each family should select as much land as it could cultivate, and pay for the same with the fruits of its industry. The members afterwards signed articles of association, renouncing all individual property, and agreeing to hold all their property in common, under the management of a board of directors elected by this society, and to labor in common for the good of the whole community, and for the comfortable maintenance of each member. The association afterwards obtained an act of incorporation and B. signed the articles, and put the lands under the control of the society. Held, that the heirs of one of the members who signed the articles of association could not maintain a bill in equity against B. and the other members for a partition of the lands. | These universal partnerships have been adopted into the common law. | What are the elements of a universal partnership? |

| | | | | | |
|---|---|---|---|---|---|
| 21453 | Witte v. Williams, 8 S.C. 290, 306 (1876) | 1 | A bill of exchange is not invalid as a regular and formal bill of exchange because it is payable to the drawee. | "It is not, however, necessary that there should be three parties to a bill; there are sometimes only two; as where a person draws on another payable to his own order; and, indeed, a bill will be valid where there is only one party to it, for a man may draw on himself payable to his own order. In such cases, however, the instrument may be treated as, in legal operation, a promissory note, and declared on accordingly, but in practice it is usual to declare upon the instrument as if it were a bill not admitting the identity of drawer and drawee." | Is it necessary that there should be three different parties to a bill of exchange? |
| 21489 | Frisbie v. United States, 157 U.S. 160, 166, 15 S. Ct. 586, 588, 39 L. Ed. 657 (1895) | 9 | Act June 27, 1890 (26 Stat. 182), S 4 (38 U.S.C.A. S 324), making it misdemeanor for an attorney to receive more than $10 for prosecuting a claim for a pension, is not unconstitutional as an interference with the liberty of contract, as a pension is a bounty, over which congress has full control. | 'No pensioner has a vested legal right to his pension. | Is pension a vested right? |
| 21497 | Snodgrass v. State, 67 Tex. Crim. 451, 452, 148 S.W. 1095, 1096 (1912) | 1 | An indictment simply charging burglary, without stating whether committed by day or night, is sufficient for daytime burglary. | And, where a private residence is burglariously entered in the daytime, the punishment is the same as for any other ordinary burglary. | What is the punishment for daytime burglary? |
| 21500 | Cator v. Martin, 57 Md. 397, 406 (1882) | 1 | A joint proceeding against several as partners will not lie under the insolvent law. Proceedings must be taken against each separately. | This it ought to do. A partnership cannot be said to be insolvent while any of the partners are able to pay its debts. | Can a partnership be called insolvent if any of the partners are able to pay its debts? |
| 21512 | United States v. Galbreath, 8 F.2d 360, 361 (N.D. Cal. 1925) | 1 | Where money paid as bribe and recipient convicted of extortion, held money should be deposited in registry of court, under Act Jan. 7, 1925, 18 U.S.C.A. S 3612, and liquor law violator who made such payment was not entitled to recover it, regardless of 18 U.S.C.A. S 201. | It is of course unthinkable that a court of justice will assist in the recovery of property voluntarily surrendered under such circumstances. Let the order be that the money be deposited in the registry of the court, in accordance with the provisions of the Act of January 7, 1925 (Comp. St. Supp. 1925, Sec. 10294a). | Can a person holding himself out as an officer defeat a charge of bribery on the ground that he had no legal right to act in the capacity he assumed? |
| 21513 | Sturges v. Buckley, 32 Conn. 18 (Conn. 1864) | 1 | The custom, to be binding, must be followed in all cases by all persons following the business, and must have been established so long that all persons in the business to which the custom relates, living in the vicinity, could be presumed to have known of it, and acted in reference thereto. | Headnote not in opinion | Does a custom have to be reasonable? |
| 21526 | Tate v. Clements, 16 Fla. 339, 360–61 (1878) | 1 | An admission or promise by a partner after dissolution of the partnership, and before suit is barred on a firm debt, to pay such debt, does not prevent the running of the statute as to other partners, though the creditor is ignorant of the dissolution. | In Tennessee, 7 Yerger, 534; 2 Humph., 166; in Pennsylvania, 17 S. & R., 126; 1 Pen. & Watts, 135; 10 Harris, 156; 7 Barr, 433; 71 Penn. St. Rep., 208; in Indiana, 2 Blackf., 371; in Illinois, 59 Ill., 524; it is held that a promise by one partner, after the dissolution of the partnership, to pay a note made by the firm, or pay a debt of *361 the firm, does not take the case out of the statute as to other partners. | Can a partner bind his copartners by a contract not within the scope of the partnership business? |
| 21540 | Trimble v. State, 4 Blackf. 435, 437 (1837) | 4 | If the declaration show that the defendant is estopped to deny the facts contained in his plea, the plaintiff need not reply the estoppel, but demur. | When the declaration sets forth the bond and condition, and the matter of estoppel appears upon its face, the plaintiff need not reply the estoppel, but may demur. | "In an administration bond, are the obligors estopped from denying the appointment of the administrator?" |
| 21541 | Schultes v. Eberly, 82 Ala. 242, 247, 2 So. 345, 348 (1887) | 1 | The legislative assembly has no right to delegate the power of taxation to a school district. | Considering all the provisions of the constitution, and all the public rights and interests involved, we are forced to hold that the general assembly had no authority to delegate the power to tax to the trustees of the Cullman school–district. | Whom can the power to tax be delegated to? |

| | | | | | |
|---|---|---|---|---|---|
| 21542 | Welsh v. Ebersole, 75 Va. 651, 661–62 (1881) | 2 | In an action to recover the amount of a bond, executed by a third person to defendant, transferred to plaintiff with defendant's name indorsed thereon in blank, the declaration contained three counts. In the first count plaintiff declared on the bond as assigned to him by defendant. The second count alleged that the third person was indebted to plaintiff for the purchase-money for a tract of land sold by plaintiff to him, and that the third person preferred to give personal security for the debt rather than a loan on the land, and offered defendant as a guarantor, who, in consideration of the premises and the fact that plaintiff would not reserve a vendor's lien, guarantied the payment of the debt, which guaranty was evidenced by the bond of the third person payable to defendant, and indorsed by him to plaintiff; that plaintiff obtained judgment on the bond against the third person, but recovered nothing. Held, that plaintiff was not precluded from proving his case by parol testimony, and recovering on it when so proved. | In the case of negotiable securities, the endorsement is not a mere transfer, but a new contract embodying all the terms of the instrument, and derives its efficacy from the instrument itself. The legal import of the contract being clear and definite, parol testimony is held to be inadmissible to give a different effect to the endorsement from what the law implies. In the case of a non-negotiable security, however, the endorsement does not pass the legal title. It has no direct legal import. It may mean an assignment where there is a subsisting obligation, or, as in the present case, a guaranty or some other form of undertaking to be established by the evidence. I think, therefore, *662 it was competent for the plaintiff to declare upon the endorsement as a guaranty, if such was the understanding. | Is the endorsement of a non-negotiable note equivalent to its assignment? |
| 21543 | Morris v. Preston, 93 Ill. 215, 221 (1879) | 3 | Bills and notes indorsed in blank pass by delivery. The purchaser is not bound to inquire as to the title of the holder, unless he has knowledge of facts which, on inquiry, would lead to notice. So held as to notes placed in the hands of a banker, to sell for the payee as her agent, but who pledged them to secure a debt owing by himself to another bank; there being nothing to excite the pledgee's suspicion that her indorsement in blank did not make him absolute owner. | All know that bank bills, treasury warrants, notes payable to bearer, and bills and notes indorsed in blank, pass by mere delivery. Nor, when such paper is offered in payment or for sale, is the person receiving or purchasing it required to inquire as to the title of the holder unless he has notice or is put on inquiry. If he purchases in good faith the law will protect him. With all such paper possession is evidence of ownership, and the commercial value of such paper would be greatly impaired and its negotiability would be destroyed if the taker was required to investigate the title and to seek for latent equities before receiving it. But the law has imposed no such burthen upon him until he has notice, or knowledge of facts which on inquiry would lead to notice. | Is possession of notes evidence of title or ownership? |
| 21553 | First Nat. Bank v. Sprout, 78 Neb. 187, 110 N.W. 713, 714 (1907) | 1 | The transferee of a negotiable promissory note, who has purchased the same in the usual course for value, may bring an action at law against the maker without proof of indorsement. | A person who has acquired the ownership and possession of a promissory note may bring suit thereon in his own name as the real party in interest, though no indorsement of the note has been made to him by the payee. | Is a parol transfer by the payee of a check payable to order accompanied by manual delivery valid? |
| 21565 | Chamberlain v. New Hampshire Fire Ins. Co., 55 N.H. 249 (1875) | 3 | A mortgagee, who, with the mortgagor's consent, obtains a fire policy upon the mortgaged premises, payable in case of loss to the mortgagee, who paid the premium, the mortgagor having no negotiations with the company, is the proper party to maintain an action on the policy to recover, not only the extent of his own interest, but also the interest of the mortgagor secured by the policy. | Headnote not in opinion | Can an assignee sue in the name of the assignor? |
| 21573 | Levine v. Michel, 35 La. Ann. 1121, 1124 (1883) | 2 | The Louisiana pilot laws do not inhibit a partnership or association of pilots to further their common interests. | The second article of the said association or partnership accordingly declares that: "The objects and purposes of the said partnership shall be to mutually protect the common interest of the said partners thereto in the pursuance of their profession as branch pilots of the port of New Orleans." | Is partnership an association? |

| ID | Citation | # | Headnote | Opinion text | Question |
|---|---|---|---|---|---|
| 21583 | James L. Haven & Co. v. Goodel, 1855 WL 3937, at *2 (Ohio Super. Apr. 1855) | 1 | One member of a firm cannot bind another by making or indorsing negotiable paper in the firm name after the dissolution of the partnership, though the proceeds of the paper are applied to the payment of partnership debts. | If, as the law is broadly laid down, the duties and the rights of the copartnership cease, so far as the one requires the personal attention of the individual members to the common property; and the other, so far as they could have bound the copartnership, whenever the contract of copartnership is dissolved; if, at that period, neither partner can use the name of the other, by indorsement, or any other form of contract, we can not understand why it is claimed that one partner can borrow money in th?? name of the original firm, and its subsequent application confirm the act that could not be supported if such application had not been made. The assent of the other partners is not thus given to the conduct of the *467 individual, who pledges the name of the firm, and no authority can be inferred from the act itself. | Does the power to settle and adjust the affairs of the partnership authorize a partner to use the partnerships name for that purpose? |
| 21584 | McCall v. Moss, 112 Ill. 493, 515–16 (1884) | 8 | An entry or charge on the books of a defunct partnership may be explained by proof and corrected although three years after the charge was made the bookkeeper transferred the account to the books of a succeeding firm, in which one of the members of the original firm was not a partner. | The entry on the books was made by the book-keeper, Dunne. Three years after this *516 entry was made on the books of firm No. 2 and 3, Dunlevy transferred the account to the books of firm No. 4. McCall was not a member of firm No. 4, and if this account belonged to firm No. 2 and 3, of which he was a member, the transfer took $10,000 out of his pocket, and gave it to other parties. | Can a written contract for a partnership be altered orally? |
| 21594 | State ex rel. Davis v. Rogers, 79 Mo. 283, 290 (1883) | 4 | Under Rev. St. U. S. S 3701, 31 U.S.C.A. S 742, declaring that all stocks, bonds, treasury notes, and other obligations of the United States shall be exempt from taxation by state or municipal authority, the capital of a private bank consisting of United States bonds is not subject to taxation by the state. | Section 3701, Revised Statutes United States, declares that "all stocks, bonds treasury notes and other obligations of the United States shall be exempt from taxation by or under state or municipal or local authority." | Is it legal to tax on government stock? |
| 21595 | Pugh v. Cameron's Adm'r, 11 W. Va. 523, 531 (1877) | 1 | When the defense of usury is not available to the principal, it cannot be to the surety; and where a bill made by the principal in Ohio, and taken to Virginia and there signed by the surety, was usurious by the law of Virginia, but valid in Ohio, the surety cannot defend by recourse to the law of Virginia. | This agreement is only accessorial to that of the principal, and in this case, we conclude, if the principal in the bond could not have pleaded usury as a valid defense, the surety could not. | Is a note made in a particular country deemed a note governed by the law of that country? |
| 21598 | Bull v. Sykes, 7 Wis. 449 (1859) | 3 | Where a vendee of land, who has paid part of the purchase money and made improvements, mortgages his interest, and subsequently assigns his rights under the contract to one having notice, the title of the purchaser, if completed by the assignee, inures to the benefit of the mortgage. | Headnote not in opinion | Can franchises be mortgaged? |
| 21604 | Van Staphorst v. Pearce, 4 Mass. 258 (1808) | 4 | An acceptor of a bill of exchange cannot set up, as a defense to the indorsee, that he has been intrusted by the creditors of the indorser through whom as factor, the plaintiff derives his title. | Headnote not in opinion | Should every indorsement of a bill be considered as a new bill? |
| 21607 | Hempstead v. Easton, 33 Mo. 142, 147 (1862) | 1 | Estoppels by deed must be mutual and bind both parties or neither. | The recital in the deed from Denoyer and wife to Russell is not an estoppel upon Russell and the defendant claiming under Russell. There can be no estoppel upon one party unless the other is equally estopped. Mutuality is a necessary ingredient of an estoppel. | Is mutuality a necessary ingredient of an estoppel? |
| 21609 | Bell v. Norwood, 7 La. 95, 105 (1834) | 2 | Parol evidence cannot be received of a promise to pay interest on a note which bears none. | Parole evidence to prove an agreement to pay interest at ten per cent., is clearly illegal and inadmissible. | Is re-possession of a bill or note considered as evidence of title? |
| 21621 | State v. Swayze, 30 La. Ann. 1323, 1325 (1878) | 3 | The jury are to infer malice only from the surrounding circumstances. It is not an implication of law from the act of killing. | The circumstances which surround the act either attest or negative a criminal intent: if none exist, the court-as said by Mr. Greenleaf-is justified in charging that, from the act of killing, unaccompanied by circumstances of extenuation, malice is presumed, (he should have said "may be inferred") and that the burden of disproving it is then thrown upon the accused. This rule is as correct as rational and its application would prevent an otherwise unavoidable conflict between the presumptions established by law in favor of the State, and of the prisoner. The intention may be inferred from the act; but this, in principle, is an inference of fact to be drawn by the jury, and not an implication of law to be applied by the court. | Will homicide always be a criminal act? |

| | | | | | |
|---|---|---|---|---|---|
| 21634 | In re Davis' Est., 1840 WL 3922, at *1 (Pa. 1840) | 2 | After the dissolution of a partnership by agreement, the partner who is authorized to settle the estate may borrow money on the credit of the firm for the purpose of paying the debts of the firm; and if the credit is given in good faith, though with a knowledge of the dissolution, and the money is faithfully applied to the liquidation of the joint debts, the creditor has a claim against the firm, and is not to be considered as a creditor merely of the partner borrowing. | . After the dissolution of a partnership by agreement, the partner who is authorised to settle the estate, may borrow money on the credit of the firm, for the purpose of paying the debts of the firm; and if the credit is given in good faith, though with a knowledge of the dissolution, and the money is faithfully applied to the liquidation of the joint debts, the creditor has a claim against the firm, and is not to be considered as a creditor merely of the partner borrowing. | Can a partnership come to an end by an act of god? |
| 21651 | Boyd v. Corbitt, 37 Mich. 52, 52–53 (1877) | 1 | An indorsee of a note for purposes of collection merely can maintain an action on the note in his own name. | The only question in this case is, whether a collection agent who holds for collection a note payable to order and which has been indorsed in blank by the owner *53 for the purposes of collection, can bring suit in his own name. We have no doubt he may do so. | Whether a guaranty of collection indorsed by the payee passes title? |
| 21656 | Williamson v. Osenton, 232 U.S. 619, 624, 34 S. Ct. 442, 442, 58 L. Ed. 758 (1914) | 2 | A change of domicile is effected by removal from one state to another with intent of making a home there for an indefinite time, though the motive for the change is the bringing of a suit in a federal court on the ground of diverse citizenship. | The essential fact that raises a change of abode to a change of domicil is the absence of any intention to live elsewhere (Story, Conflict of Laws, § 43); or, as Mr. Dicey puts it in his admirable book, 'the absence of any present intention of not residing permanently or indefinitely in' the new abode. Confl. L. 2d ed. 111. We may admit that if this case had been before a jury on testimony merely that the plaintiff intended to live in Virginia for an indefinite time, it might have been argued that the motive assigned for the change, the bringing of this action, showed that the plaintiff, even if telling the literal truth, only meant that she could not tell when the lawsuit would end. | "Is ""domicile"" a technically pre-eminent headquarters that every person is compelled to have in order that certain rights and duties that have been attached to it by the law may be determined?" |
| 21664 | Brush v. Scribner, 11 Conn. 388 (Conn. 1836) | 1 | A promissory note, made by A., and indorsed in blank by B., was intrusted to C., who had no interest in it, to get it discounted at the bank for A.'s benefit. C. fraudulently delivered it to D., who, acting fairly, and without knowledge of the fraud, received it in satisfaction and extinction of a pre-existing debt against C. In an action by D. against B. as indorser, it was held that D. was a bona fide holder of the note for a valuable consideration, and as such was entitled to recover. | Headnote not in opinion | Is a preexisting debt a sufficient consideration? |
| 21665 | First Nat. Bank v. Foote, 12 Utah 157, 42 P. 205, 207 (1895) | 2 | A bank that takes for value a note signed by its cashier and others, without knowledge of a representation by the cashier to his co-makers that it would not be delivered until signed by the president of the bank, does not thereby ratify the cashier's representations. | The respondent, by taking the note, apparently complete upon its face, for which it had parted with full value, without knowledge of the condition that it was to be signed by Whitmore, did not thereby ratify the representations of one maker to his comakers, nor become responsible therefor. | Is an agents knowledge imputed to the principal? |
| 21667 | Philadelphia Ass'n for relief of Disabled Firemen v. Wood, 39 Pa. 73, 82 (1861) | 1 | It is inherent in the very definition and nature of a tax that it shall be laid for a public purpose only. | We have said this is not a tax. It does not profess to be. It has none of the forms of taxation in the mode of its collection. And if it were called a tax, it could not be one; for a name arbitrarily given cannot change its nature. A tax is an imposition for the supply of the public treasury, and not for the supply of individuals or private corporations, however benevolent they may be. | Can taxing power be delegated? |
| 21668 | Heald v. City of Cleveland, 27 Ohio Dec. 435, 460 (Ohio Com. Pl. 1916) | 16 | A city, under its home rule charter as provided by the 1912 amendment to the constitution, S 3, art. 18, under Gen.Code, S 3939, and under S 3, art. 1 of the Constitution, relating to right of people to assemble, had no authority to issue bonds to be used primarily for a building for exposition purposes, or to use portions of the auditorium for lodge rooms, concert halls, show rooms, or theaters as purely private enterprises. | But the city has no authority, under the constitution of Ohio or the statutes of the state or its charter, to issue bonds to be used primarily for a building for exposition purposes; or to so use portions of the auditorium for lodge rooms, concert halls, show rooms, or theaters as purely private enterprises. | Are there any authorities that allow the money raised through taxation not to go into the public treasury? |

| 21671 | Groff v. State, 171 Ind. 547, 85 N.E. 769, 770 (1908) | 1 | Acts 1907, p. 153, c. 104, S 2 (Burns' Ann.St. S 35-1202), makes it unlawful for any person to offer for sale or sell any adulterated or misbranded article of food. Held, that guilty knowledge or intent was not an element of such offense. | The offense under consideration is thus defined: "It shall be unlawful for any person to manufacture for sale within this state, offer for sale therein, or sell within this state, any drug, or article of food which is adulterated, or misbranded. *** For the purpose of this act, an article shall be deemed as adulterated: *** Second. If any substance has been substituted wholly, or in part, for the article." Acts 1907, p. 153, c. 104, § 2. Guilty intent is not an ingredient in the crime, as we have seen; hence the rule that governs in that large class of offenses, which rest upon criminal intent, has no application here. | Is the principal liable when his employee disobeys the law in the manner of selling? |
| 21672 | Shoe & Leather Nat. Bank v. Wood, 142 Mass. 563, 568, 8 N.E. 753, 756 (1886) | 5 | Statute giving maker right to set up defenses against payee or intermediate assignee before notice of assignment is constitutional and valid although changing operation of law merchant so far as it affects contracts within state. | We see no reason why Kentucky may not enact a law making the liabilities of signers of commercial paper, made and payable within its limits, entirely different from the laws of other states respecting such liabilities, and by statute change absolutely the operation of the law-merchant, so far as it affects contracts made and to be performed within the state. | Is an assignment an indorsement? |
| 21675 | Newton v. Bramlett, 55 Ill. App. 661, 663–64 (Ill. App. Ct. 1894) | 5 | Where an incorrect addition was made to an endorsement of a note in open court after introduction of proof supposed to be sufficient to show intention to guaranty the note, it could be stricken out, and there being no fraud and no injury, it would not discharge the endorser from the contract really made. | The same principle should control where an incorrect addition is made to an indorsement; it may be stricken out, and where no fraud is designed and no injury produced it *664 should not discharge the indorser from the contract really made. | When a writing states the contract incorrectly is it proper to correct it? |
| 21695 | Corbett v. Riddle, 209 F. 811, 815–16 (4th Cir. 1913) | 1 | A bankruptcy court having first acquired jurisdiction of the bankrupt's estate by the filing of a petition in bankruptcy, such jurisdiction is exclusive of the right of the state court to entertain jurisdiction of an action in detinue by a claimant to recover property alleged to belong to the estate. | 8 We are not called upon to comment upon the cases further than to say that the law is now well settled that 'the filing of the petition is an assertion of jurisdiction with a view to the determination of the status of the bankrupt and a settlement and distribution of his estate. The exclusive jurisdiction of the bankruptcy court is so far in rem that the estate is regarded as in custodia legis from the filing of the petition.' *816 Acme Harvester Co. v. Beekman Lumber Co., 222 U.S. 307, 32 Sup.Ct. 96, 56 L.Ed. 208; Hebert v. Crawford, 228 U.S. 204, 33 Sup.Ct. 484, 57 L.Ed. 800; Everett v. Judson, 22, U.S. 478, 33 Sup.Ct. 568, 57 L.Ed. 927; State Bank of Chicago v. Cox, 143 Fed. 91, 74 C.C.A. 285; Board of County Com'rs v. Hurley, 169 Fed. 92, 94 C.C.A. 362.<br>9 For some purposes the bankruptcy jurisdiction of the federal courts is, of course, paramount to that of the state tribunals. Even, however, if it were merely concurrent in this case, the same result would follow. When in a federal court of competent jurisdiction a bill for a receiver is pending, no state court may, in a proceeding subsequently instituted, direct the seizure of any part of the property to which the bill relates. If the request for a receiver is first made in a state court, the same rule ties the hands of the federal. | Under what law is the liability of property to be sold under execution determined by? |
| 21708 | City of New London v. Miller, 60 Conn. 112, 22 A. 499, 500 (Conn. 1891) | 2 | An assessment for street improvements cannot be made against one only of several joint owners of abutting property, for the benefits accruing to the whole property, but must be either separately against each owner or jointly against all. | An assessment for benefits is a kind of taxation; and, like all taxes, it must be wholly joint or wholly several. It cannot be joint and several. There is no joint and several liability for taxes. One person is never liable for the taxes of another. A certificate of such an assessment, in order to be valid, must, unless it be a case where it is otherwise provided, describe an assessment made against a party liable severally, or against the parties liable jointly, to pay it. | "Is an assessment for benefits included in the term ""taxes""?" |

| | | | | | |
|---|---|---|---|---|---|
| 21715 | City of St. Louis v. Polinsky, 190 Mo. 516, 89 S.W. 625, 626 (1905) | 1 | An ordinance forbidding the sale of milk and cream containing coloring matter, being to prevent deception on the public and unfair advantage over honest competitors, is within the authority granted by the city charter to inspect milk, to secure the general health by any necessary measure, and to pass all ordinances expedient in maintaining the health and welfare of the city, its trade, commerce, and manufactures. | By adding annatto to the white milk or cream given by winter fed or poorly fed cows, a deception is practiced upon the milk-consuming public by making this milk of inferior quality assume the rich and golden appearance of superior milk. Such conduct is a fraud deception upon the public, and an unfair advantage over honest competitors who refuse to resort to such deception against which the ordinance is leveled, and we hold it was clearly within the charter power of the city referred in St. Louis v. Liessing; Weigand v. Dist. Columbia, 22 D. C. App. 559, 571; Plumley v. Massachusetts, 155 U. S. 461, 575, 15 Sup. Ct. 154, 39 L. Ed. 223, and cases cited; Capital City Dairy Co. v. Ohio, 183 U. S. 238, 22 Sup. Ct. 120, 46 L. Ed. 171; State v. Schlenker, 112 Iowa, 642, 84 N. W. 698, 51 L. R. A. 347, 84 Am. St. Rep. 360; State v. Campbell, 64 N. H. 402, 13 Atl. 585, 10 Am. St. Rep. 419. | Will the quality of milk depend on food that cows are fed? |
| 21717 | Cox v. Reinhardt, 41 Tex. 591, 592–93 (1874), overruled by Gimbel v. Gomprecht, 89 Tex. 497, 35 S.W. 470 (1896) | 1 | Suit cannot be brought upon a note on the day it is payable, unless by attachment, and as upon a debt not due. | It would still be obvious that the suit was prematurely brought, on a demand not due, unless it was warranted by the attachment, which was obtained contemporaneously with the bringing of the suit. The debtor had the entire day upon which the note fell due, and upon which the suit was brought within which to pay it. Consequently *593 suit could not be brought upon the mere ground of the debtor's default in its payment when due until the next day. | Is days of grace allowed in contracts between merchant and merchant? |
| 21752 | State v. Ice & Fuel Co., 166 N.C. 366, 81 S.E. 737, 738 (1914) | 1 | In view of section 2831, subd. 6, defining "person" as including bodies corporate, a corporation may be convicted of obtaining money by false pretenses under Revisal, S 3432, though it cannot be imprisoned. | Indeed, Revisal, § 2831 (6), provides: "The word 'person' shall extend and be applied to bodies politic and corporate, as well as to individuals, unless the context clearly show to the contrary." The word "person," in Revisal, § 3432, therefore embraces corporations. This is fully discussed and sustained upon a similar statute in State v. Creamery Co., 83 Kan. 389, 111 Pac. 474. Indeed, so many businesses of every kind are now carried on by corporations that it would render nugatory many criminal statutes for the protection of the public if they did not apply to the misconduct of corporations when the statute would apply to the same conduct by an individual. In this present case the business of selling coal and ice is carried on by a corporation, and it violated the statute by the false pretense of selling a ton of coal when it delivered in fact only 1,750 pounds, intending to cheat, as fully as an individual could have done. It is true that, when the statute imposes a penalty of a fine or imprisonment, only the fine can be placed upon a corporation But this is no reason why that should not be imposed. The corporation should not be wholly exempted from punishment, because it cannot be imprisoned. | Can a corporation form a criminal intent? |
| 21785 | Groff v. State, 171 Ind. 547, 85 N.E. 769, 770 (1908) | 1 | Acts 1907, p. 153, c. 104, S 2 (Burns' Ann.St. S 35-1202), makes it unlawful for any person to offer for sale or sell any adulterated or misbranded article of food. Held, that guilty knowledge or intent was not an element of such offense. | The offense under consideration is thus defined: "It shall be unlawful for any person to manufacture for sale within this state, offer for sale therein, or sell within this state, any drug, or article of food which is adulterated, or misbranded. *** For the purpose of this act, an article shall be deemed as adulterated: *** Second. If any substance has been substituted wholly, or in part, for the article." Acts 1907, p. 153, c. 104, § 2. Guilty intent is not an ingredient in the crime, as we have seen; hence the rule that governs in that large class of offenses, which rest upon criminal intent, has no application here. | Should the employee who sells the article to the public obey the law in the manner of selling it? |
| 21786 | Palmer v. Poor, 121 Ind. 135, 22 N.E. 984, 985 (1889) | 14 | Proof that note had been altered after execution was admissible under answer denying defendant made note, and it was competent to prove want of delivery. | The answer contains one paragraph, duly verified, denying the execution of the note, and under this paragraph it was competent to prove that the note was altered after it had been signed, as well as that it was not delivered. | Does changing interest terms constitute a material alteration? |
| 21787 | Yale v. Flanders, 4 Wis. 96 (1855) | 4 | It is not necessary that every one signing should have a separate seal, or that there shall be as many seals as signatures, but one may sign and adopt the seal of another party. | <==unable to identify section reasonably corresponding to headnote in opinion | Can a note be assigned by parol? |

| | | | | | |
|---|---|---|---|---|---|
| 21788 | Nelson v. First Nat. Bank of Killingley, 69 F. 798, 803 (8th Cir. 1895) | 4 | On an issue of the value of stock of a corporation in the hands of a receiver under a statute of the state creating it, in proceedings for its dissolution as insolvent, the opinions of competent witnesses as to the value of stock are admissible. | Our conclusion is that the general rule adopted by the court below as correct, that proof of the value of the assets and of the amount of the liabilities of these insolvent corporations, and proof of the amount realized from their assets at auction sales made under orders of the court, and the opinions of witnesses as to the value of the stock and the value of the assets, were all competent evidence tending to show the value of this stock and of the liability of these corporations upon it. | "Is a bill of exchange drawn in one of the states of the United States, payable in another, a foreign bill?" |
| 21801 | Battle v. Corp. of Mobile, 9 Ala. 234, 236 (1846) | 2 | The city of Mobile, under its charter authority to tax real and personal property within the city, may lawfully assess a steamboat plying on the Alabama river, if owned by citizens of the state resident in Mobile, though it is registered and enrolled as a coasting vessel under the laws of the United States. | Headnote not in opinion | What does the power of taxation operate on? |
| 21802 | Maddox v. Duncan, 143 Mo. 613, 45 S.W. 688, 689 (1898) | 1 | The indorser of a note does not become a guarantor by an indorsement waiving notice and demand, and guarantying payment. Judgment (1895) 62 Mo. App. 474, reversed. | By guarantying the payment of the note, the position of the indorser and payee was not changed from that of indorser to that of guarantor. | Is an endorsement considered an original contract? |
| 21805 | Howe v. Waysman, 12 Mo. 169, 172 (1848) | 1 | A father who was in failing circumstances bought property with his own money, and procured it to be conveyed to his minor children, and afterwards sold the same for a valuable consideration. Held, in an action of trover by the minors to recover the value of the property, that the conveyance to the minors was void as to the subsequent purchaser from the father. | Headnote not in opinion | Can money be taken in execution? |
| 21816 | Culbertson v. Nelson, 93 Iowa 187, 61 N.W. 854, 857 (1895) | 6 | A bill of exchange drawn for a stated sum "with exchange" is not a negotiable instrument by the law merchant, for want of certainty in the sum to be paid. | So it has been held that a note payable "in currency," or "in current funds," is not prima facie negotiable. | "Is a note payable 'in currency' or 'in current funds,' prima facie negotiable" |
| 21817 | Schouwink v. Ferguson, 191 Mich. 284, 286, 157 N.W. 726, 726 (1916) | 1 | Where certificate of authority of surety company on bond offered by operator of motor bus under municipal ordinance expires before presentation on writ of certiorari of ruling on petition for mandamus to compel acceptance of bond, writ of certiorari will be dismissed. | The questions involved are moot questions, and the case becomes a moot case, which we must decline to consider. When it appears by the record that action by the court would be futile, by reason of the lapse of time, the case will be dismissed. | "Will a case be dismissed when it appears by record that action by court would be futile, by reason of lapse of time?" |
| 21858 | Morss v. Palmer, 15 Pa. 51, 55 (1850) | 1 | Several depositions may be included in one certificate, if it is sufficiently formal. It is not necessary that a separate certificate should be appended to each deposition. | The caption and certificate of the justice show all that is necessary to admit the depositions. A general certificate is sufficient. The justice need not certify at the conclusion of each. | "To be admissible, should a commission required to show the return of the commissioner as to the manner of its execution?" |
| 21874 | Biggs v. N. Carolina Home Ins. Co., 88 N.C. 141, 143 (1883) | 1 | A provision in a fire policy, rendering it void if the title to the property insured be changed in any way other than by succession by reason of death, or if the policy be assigned without written assent of the company indorsed thereon, is reasonable and just; but it does not apply to a stock of goods disposed of in the ordinary course of trade, unless the sale be in mass or a new member be admitted into the firm. | Under any other rule, every principal would be at the mercy of his agent, however carefully he might limit his authority. | "Is the principal at the mercy of his agent, however carefully he might limit his authority?" |

# EXHIBIT C

| Row # | Citation | Headnote # | Headnote Text | Judicial Text | Memo Question |
|---|---|---|---|---|---|
| 28 | United States v. All Assets Held in Account Number XXXXXXXX, 83 F. Supp. 3d 360, 371 (D.D.C. 2015) | 10 | One of the major concerns underlying the act of state doctrine is the strong sense of the judicial branch that its engagement in the task of passing on the validity of foreign acts of a state may hinder rather than further this country's pursuit of goals both for itself and for the community of nations as a whole in the international sphere. | One of the major concerns underlying the act of state doctrine is 'the strong sense of the judicial branch that its engagement in the task of passing on the validity of foreign acts of a state may hinder rather than further this country's pursuit of goals both for itself and for the community of nations as a whole in the international sphere. | Is one of the major concerns underlying the act of state doctrine the strong sense of the judicial branch that its engagement in the task of passing on the validity of foreign acts of a state may hinder rather than further this country's pursuit of goals both for itself and for the community of nations as a whole in the international sphere? |
| 80 | First Horizon Merch. Servs. v. Wellspring Capital Mgmt., 166 P.3d 166, 179 (Colo. App. 2007) | 40 | It is not manifestly arbitrary, unreasonable, or unfair, and thus not an abuse of discretion, to require a plaintiff to assert facts sufficient to satisfy the trial court that discovery might reveal evidence showing personal jurisdiction before requiring a defendant to bear the cost and burden of responding to discovery. | It is not manifestly arbitrary, unreasonable, or unfair, and thus not an abuse of discretion, to require a plaintiff to assert facts sufficient to satisfy the trial court that discovery might reveal evidence showing personal jurisdiction before requiring a defendant to bear the cost and burden of responding to discovery. | "Is it not manifestly arbitrary, unreasonable, or unfair, and thus not an abuse of discretion, to require a plaintiff to assert facts sufficient to satisfy the trial court that discovery might reveal evidence showing personal jurisdiction?" |
| 116 | Baldwin Cty. Elec. Membership Corp. v. City of Fairhope, 999 So. 2d 448, 454 (Ala. 2008) | 5 | A motion in limine seeking to exclude evidence, which is denied by the trial court, is, unless the court clearly indicates to the contrary, the legal equivalent of an announcement by the court that it reserves the right to rule on the subject evidence when it is offered and is not a final ruling made in a pretrial context. | A motion in limine seeking to exclude evidence, which is denied by the trial court, is, "unless the court clearly indicates to the contrary, the legal equivalent of an announcement by the court that it reserves the right to rule on the subject evidence when it is offered and is not a final ruling made in a pre-trial context." | "Is a motion in limine seeking to exclude evidence, which is denied by the trial court, unless the court clearly indicates to the contrary, the legal equivalent of an announcement by the court that it reserves the right to rule on the subject evidence when it is offered and is not a final ruling made in a pretrial context?" |
| 196 | Washington Mut. Bank, FA v. Aultman, 172 Ohio App. 3d 584, 589-90 (2007) | 4 | Equitable subrogation arises by operation of law when one having a liability or right or a fiduciary relation in the premises pays a debt by another under such circumstances that he is in equity entitled to the security or obligation held by the creditor whom he has paid. | Equitable subrogation " 'arises by operation of law when one having a liability or right or a fiduciary relation in the premises pays a debt due by another under such circumstances that he is in equity entitled to the security or obligation held by the creditor *590 whom he has paid.' " | Does equitable subrogation arise by operation of law when one having a liability or right or a fiduciary relation in the premises pays a debt by another under such circumstances that he is in equity entitled to the security or obligation held by the creditor whom he has paid? |

| 199 | United States v. Sum of $70,990,605, 234 F. Supp. 3d 212, 243 (D.D.C. 2017) | 23 | The act of state doctrine does not establish an exception for cases or controversies that may embarrass foreign governments, but merely requires that, in the process of deciding, the acts of foreign sovereigns taken within their own jurisdiction shall be deemed valid. | The act of state doctrine does not establish an exception for cases or controversies that may embarrass foreign governments, but merely requires that, in the process of deciding, the acts of foreign sovereigns taken within their own jurisdiction shall be deemed valid. | "Does the act of state doctrine establish an exception for cases or controversies that may embarrass foreign governments, but merely requires that, in the process of deciding, the acts of foreign sovereigns taken within their own jurisdiction shall be deemed valid?" |
|---|---|---|---|---|---|
| 207 | Scalice v. Performance Cleaning Sys., 50 Cal. App. 4th 221, 57 Cal.Rptr.2d 711, 718 (1996) | 7 | Foundation of workers' compensation system is presumed compensation bargain, wherein employer assumes liability for industrial injury or death without regard to fault and employee is afforded relatively quick payment of benefits. | The foundation of the workers' compensation system is the presumed compensation bargain, wherein the employer assumes liability for industrial injury or death without regard to fault and the employee is afforded relatively quick payment of benefits. | "Is the foundation of the workers compensation system presumed on a compensation bargain, wherein the employer assumes liability for industrial injury or death without regard to fault and the employee is afforded relatively quick payment of benefits?" |
| 254 | Smith v. Arkansas Dep't of Human Servs., 93 Ark. App. 395, 401 (2005) | 4 | When deciding whether a continuance should be granted, the trial court should consider the following factors (1) the diligence of the movant; (2) the probable effect of the testimony at trial; (3) the likelihood of procuring the witness's attendance in the event of postponement; (4) the filing of an affidavit, stating not only what facts the witness would prove, but also that the appellant believes them to be true. | When deciding whether a continuance should be granted, the trial court should consider the following factors (1) the diligence of the movant; (2) the probable effect of the testimony at trial; (3) the likelihood of procuring the witness's attendance in the event of postponement; (4) the filing of an affidavit, stating not only what facts the witness would prove, but also that the appellant believes them to be true. | "When deciding whether a continuance should be granted, should the court consider diligence, effect of the testimony, likelihood of attendance, and the filing of an affidavit?" |
| 256 | Payne v. Superior Ct., 17 Cal. 3d 908, 924–25, 553 P.2d 565, 577 (1976) | 14 | If a court determines that a prisoner's personal testimony is needed to preserve due process rights in a civil suit, but the department of corrections refuses accommodation, the court may order a continuance or employ other alternatives to transporting the prisoner, such as recording his testimony or, if feasible, holding a portion of the trial at the prison. | if a *925 court determines that a prisoner's personal testimony is needed to preserve due process rights, but the Department of Corrections refuses accommodation, the court may order a continuance or employ other alternatives to transporting the prisoner, such as recording his testimony or if feasible holding a portion of the trial at the prison. | "If a court determines that a prisoner's personal testimony is needed to preserve due process rights in a civil suit, may the court order a continuance or employ other alternatives to transporting the prisoner?" |
| 296 | Rock River Lumber Corp. v. Universal Mortg. Corp. of Wisconsin, 82 Wis. 2d 235, 240-41 (1978) | 1 | Subrogation is an equitable doctrine invoked to avoid unjust enrichment, and may properly be applied whenever a person other than a mere volunteer pays a debt which in equity and good conscience should be satisfied by another. | Subrogation is an equitable doctrine invoked to avoid unjust enrichment, and may properly be applied whenever a person other than a mere volunteer pays a debt which in equity and good conscience should be satisfied *241 by another. | Is subrogation an equitable doctrine invoked to avoid unjust enrichment and may properly be applied whenever a person other than a mere volunteer pays a debt which in equity and good conscience should be satisfied by another? |

| 303 | Pellegrini v. Weiss, 165 Cal. App. 4th 515, 530 (2008) | 19 | Generally speaking, in limine motions are disfavored in cases in which they are used not to determine in advance the court's projected ruling if presented with an evidentiary objection during trial, but instead to serve as a substitute for a dispositive statutory motion. | Generally speaking, in limine motions are disfavored in cases in which they are used not to determine in advance the court's projected ruling if presented with an evidentiary objection during trial, but instead to serve as a substitute for a dispositive statutory motion. | "Generally speaking, are in limine motions disfavored in cases in which they are used not to determine in advance the court's projected ruling if presented with an evidentiary objection during trial, but instead to serve as a substitute for a dispositive statutory motion?" |
|---|---|---|---|---|---|
| 338 | Temple v. Guideone Specialty Mut. Ins. Co., 330 S.W.3d 318, 322 (Tex. App. 2009) | 4 | When deciding whether to dismiss a case for want of prosecution, the trial court may consider the entire history of the case, including the amount of activity in the case, the length of time the case was on file, requests for a trial date, and the existence of reasonable excuses for delay; no single factor is dispositive. | When deciding whether to dismiss a case for want of prosecution, the trial court may consider the entire history of the case, including the amount of activity in the case, the length of time the case was on file, requests for a trial date, and the existence of reasonable excuses for delay. 7 No single factor is dispositive. | "Should a court consider the entire history of the case including, requests for a trial date, and the existence of reasonable excuses for delay, when deciding whether to dismiss a case for want of prosecution?" |
| 344 | In re ExxonMobil Corp., 153 S.W.3d 605, 618 (Tex. App. 2004) | 14 | When the Legislature has given exclusive jurisdiction to an administrative body, a litigant's failure to exhaust all administrative remedies before seeking judicial review of the administrative body's action deprives the court of subject matter jurisdiction over claims within the body's exclusive jurisdiction, and the court must dismiss such claims without prejudice. | When the Legislature has given exclusive jurisdiction to an administrative body, a litigant's failure to exhaust all administrative remedies before seeking judicial review of the administrative body's action deprives the court of subject matter jurisdiction over claims within the body's exclusive jurisdiction, and the court must dismiss such claims without prejudice. | Does a litigant's failure to exhaust all administrative remedies before seeking judicial review of the administrative body's action deprive the court of subject matter jurisdiction over claims within the body's exclusive jurisdiction? |
| 355 | State v. Sater, 588 N.W.2d 512, 514 (Minn. Ct. App. 1998) | 2 | A defendant who is acquitted or convicted of one among several criminal charges, tried in a single proceeding and arising from a single course of conduct, may be retried for any charges on which the jury did not reach a verdict because those charges have not been "disposed of" by conviction, acquittal, entry of a plea, or dismissal. | A defendant who is acquitted or convicted of one among several criminal charges, tried in a single proceeding and arising from a single course of conduct, may be retried for any charges on which the jury did not reach a verdict because those charges have not been "disposed of" by conviction, acquittal, entry of a plea, or dismissal. | "Can a defendant who is acquitted or convicted of one among several criminal charges, tried in a single proceeding and arising from a single course of conduct, be retried for any charges on which the jury did not reach a verdict?" |

| | | | | |
|---|---|---|---|---|
| 387 | Bell v. Treasurer of Cambridge, 310 Mass. 484, 488 (1941) | 4 | A party moving for a continuance due to the unavailability of a witness must show: (1) the materiality and importance of the witness to the issues to be tried; (2) due diligence in an attempt to procure the attendance of the witness; (3) that a good possibility exists that the testimony will be secured at some later date; and (4) that the postponement would not be likely to cause an unreasonable delay or disruption in the orderly process of justice. | A party moving for a continuance due to the unavailability of a witness must show: (1) the materiality and importance of the witness to the issues to be tried; (2) due diligence in an attempt to procure the attendance of the witness; (3) that a good possibility exists that the testimony will be secured at some later date; and (4) that the postponement would not be likely to cause an unreasonable delay or disruption in the orderly process of justice. | What must a party who moves for a continuance due to the unavailability of a witness show? |
| 437 | Nat'l City Mortg. Co. v. Ross, 34 Kan.App.2d 282, 294 (Kan.App.,2005) | 8 | The right of subrogation or of equitable assignment is not founded upon contract alone, nor upon the absence of contract, but is founded upon the facts and circumstances of the particular case and upon principles of natural justice; and generally, where it is equitable that a person furnishing money to pay a debt should be substituted for the creditor or in the place of the creditor, such person will be so substituted. | [T]he right of subrogation or of equitable assignment is not founded upon contract alone, nor upon the absence of contract, but is founded upon the facts and circumstances of the particular case and upon principles of natural justice; and generally, where it is equitable that a person furnishing money to pay a debt should be substituted for the creditor or in the place of the creditor, such person will be so substituted | "Is the right of subrogation or of equitable assignment founded upon contract alone, but is founded upon the facts and circumstances of the particular case and upon principles of natural justice?" |
| 450 | Lipsey v. State, 50 So. 3d 341, 349 (Miss. Ct. App. 2010) | 6 | A trial court does not abuse its discretion in granting a motion in limine where the court determines that: (1) the material or evidence in question will be inadmissible at a trial under the rules of evidence; and (2) the mere offer, reference, or statements made during trial concerning the material will tend to prejudice the jury. | A trial court does not abuse its discretion in granting a motion in limine where the court determines that: "(1) the material or evidence in question will be inadmissible at a trial under the rules of evidence; and (2) the mere offer, reference, or statements made during trial concerning the material will tend to prejudice the jury. | "Should a motion in limine be granted only if the material or evidence in question will be inadmissible at a trial under the rules of evidence and the mere offer, reference, or statements made during trial concerning the material will tend to prejudice the jury?" |
| 451 | Dyer v. Cotton, 333 S.W.3d 703, 715 (Tex. App. 2010) | 17 | The purpose of a motion in limine is to prevent the opposing party from asking questions to elicit or otherwise introducing unfairly prejudicial evidence without first approaching the bench for a formal ruling. | The purpose of a motion in limine is to prevent the opposing party from asking questions to elicit or otherwise introducing unfairly prejudicial evidence without first approaching the bench for a formal ruling. | Is the purpose of a motion in limine to prevent the opposing party from asking questions to elicit or otherwise introducing unfairly prejudicial evidence without first approaching the bench for a formal ruling? |

| | | | | |
|---|---|---|---|---|
| 465 | Wolfe v. Sibley, Lindsay & Curr Co., 36 N.Y.2d 505, 508, 330 N.E.2d 603, 605 (1975) | 1 | Workmen's compensation, as distinguished from tort liability which is essentially based on fault, is designed to shift risk of loss of earning capacity caused by industrial accidents from worker to industry and ultimately to consumer. | Workmen's compensation, as distinguished from tort liability which is essentially based on fault, is designed to shift the risk of loss of earning capacity caused by industrial accidents from the worker to industry and ultimately the consumer. | "Is the workmens compensation statute, as distinguished from tort liability which is essentially based on fault, designed to shift risk of loss of earning capacity caused by industrial accidents from the worker to industry and ultimately to the consumer?" |
| 535 | Compton v. Ubilluz, 353 Ill. App. 3d 863, 871 (2004) | 15 | Trial judges should attempt to enter narrow in limine orders, anticipate proper evidence that might be excluded by the orders, and make the orders clear and precise so that all parties concerned have an accurate understanding of their limitations. | Trial judges should attempt to enter narrow in limine orders, anticipate proper evidence that might be excluded by the orders, and make the orders clear and precise so that all parties concerned have an accurate understanding of their limitations. | "Should trial judges attempt to enter narrow in limine orders, anticipate proper evidence that might be excluded by the orders, and make the orders clear and precise so that all parties concerned have an accurate understanding of their limitations?" |
| 604 | Duarte v. Snap-on Inc., 216 So. 3d 771, 775 (Fla. App. 2017) | 5 | Generally, unless it appears that the process of trial has itself been subverted, factual inconsistencies or even false statements are well managed through the use of impeachment at trial or other traditional discovery sanctions, not through dismissal of a possibly meritorious claim. | Generally, unless it appears that the process of trial has itself been subverted, factual inconsistencies or even false statements are well managed through the use of impeachment at trial or other traditional discovery sanctions, not through dismissal of a possibly meritorious claim. | "Unless it appears that the process of trial has itself been subverted, are factual inconsistencies or even false statements well managed through the use of impeachment or other traditional discovery sanctions?" |
| 605 | Villasenor v. Martinez, 991 So. 2d 433, 435–36 (Fla. Dist. Ct. App. 2008) | 2 | Fraud warranting the severe sanction of dismissal occurs when it is established by clear and convincing evidence that a party has sentiently set in motion an unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier of fact or unfairly hampering the presentation of the opposing party's claim or defense. | Fraud warranting the severe sanction of dismissal occurs when it is established by clear and convincing evidence "that a party has sentiently set in motion an unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier of fact or unfairly hampering *436 the presentation of the opposing party's claim or defense." | When does fraud warrant the severe sanction of dismissal? |
| 654 | In re L.W., 362 Ill. App. 3d 1106In re L.W., 362 Ill. App. 3d 1106, 1118 (2005) | 9 | A motion in limine is a pretrial motion that seeks an order excluding inadmissible evidence and prohibiting questions concerning such evidence, without the necessity of having the questions asked and objections thereto made in front of the jury. | A motion in limine is a pretrial motion that seeks an order excluding inadmissible evidence and prohibiting questions concerning such evidence, without the necessity of having the questions asked and objections thereto made in front of the jury. | "Is a motion in limine a pretrial motion that seeks an order excluding inadmissible evidence and prohibiting questions concerning such evidence, without the necessity of having the questions asked and objections thereto made in front of the jury?" |

| 657 | Gross v. German Found. Indus. Initiative, 456 F.3d 363, 391-92 (3d Cir. 2006) | 11 | Courts must dismiss under the "act of state doctrine" when resolution of a suit would require the court to declare invalid and ineffective as a rule of decision for the courts of this country the official act of a foreign sovereign. | Courts must dismiss under the act of state doctrine *392 when resolution of a suit would require the court to declare invalid and ineffective as "a rule of decision for the courts of this country" the official act of a foreign sovereign. | Must courts dismiss under the act of state doctrine when resolution of a suit would require the court to declare invalid and ineffective as a rule of decision for the courts of this country the official act of a foreign sovereign? |
|---|---|---|---|---|---|
| 672 | Jones-Lee v. Arkansas Dep't of Human Servs., 2009 Ark. App. 160, 23 (2009) | 11 | When deciding whether a continuance should be granted, the circuit court should consider the following factors: (1) the diligence of the movant; (2) the probable effect of the testimony at trial; (3) the likelihood of procuring the witness's attendance in the event of postponement; and (4) the filing of an affidavit, stating not only what facts the witness would prove, but also that the appellant believes them to be true. | When deciding whether a continuance should be granted, the circuit court should consider the following factors: (1) the diligence of the movant; (2) the probable effect of the testimony at trial; (3) the likelihood of procuring the witness's attendance in the event of postponement; and (4) the filing of an affidavit, stating not only what facts the witness would prove, but also that the appellant believes them to be true. | "While deciding whether a continuance should be granted, what are the factors that a court should consider?" |
| 674 | Gen. Motors Acceptance Corp. v. Falcone, 130 N.J. Super. 517, 520 (1974) | 5 | Workmen's compensation affords an injured worker a measure of economic security during the period of time he is recuperating from a work-related accident, and further compensates him for permanent disability which reduces his future earning capacity. | Workmen's compensation affords an injured worker a measure of economic security during the period of time he is recuperating from a work-related accident, and further compensates him for permanent disability which reduces his future earning capacity. | "Does Workmens Compensation afford an injured worker a measure of economic security during the period of time he is recuperating from a work-related accident, and further compensate him for permanent disability which reduces his future earning capacity?" |
| 701 | Benjamin v. Ernst & Young, L.L.P.,167 Ohio App. 3d 350, 354 (2006) | 5 | In order for a trial court to grant a motion to dismiss for lack of jurisdiction over the subject matter, the standard to apply is whether the plaintiff has alleged any cause of action cognizable by the forum. | In order for a trial court to grant a motion to dismiss for lack of jurisdiction over the subject matter, the standard to apply is whether the plaintiff has alleged any cause of action cognizable by the forum. | "In order for a trial court to grant a motion to dismiss for lack of jurisdiction over the subject matter, is the standard to apply whether the plaintiff has alleged any cause of action cognizable by the forum?" |
| 711 | Ahearn v. Bloomfield Charter Twp., 235 Mich. App. 486, 493 (1999) | 2 | Unlike a tax, which is imposed to raise revenue for general governmental purposes, a special assessment is designed to recover the costs of improvements that confer local and peculiar benefits upon property within a defined area. | Unlike a tax, which is imposed to raise revenue for general governmental purposes, a special assessment is designed to recover the costs of improvements that confer local and peculiar benefits upon property within a defined area. | Are special assessment designed to recover the costs of improvements that confer local and peculiar benefits upon property within a defined area? |
| 735 | Avery v. New Hampshire Dep't of Educ., 162 N.H. 604, 606 (2011) | 1 | Generally, in ruling upon a motion to dismiss, the trial court is required to determine whether the allegations contained in the petitioners' pleadings are sufficient to state a basis upon which relief may be granted. | Generally, in ruling upon a motion to dismiss, the trial court is required to determine whether the allegations contained in the petitioners' pleadings are sufficient to state a basis upon which relief may be granted. | "In ruling upon a motion to dismiss, is the trial court is required to determine whether the allegations contained in the petitioners' pleadings are sufficient to state a basis upon which relief can be granted?" |

| 773 | Fireman's Fund Ins. Co. v. Maryland Cas. Co., 65 Cal. App. 4th 1279, 1291, 77 Cal. Rptr. 2d 296, 302 (1998) | 3 | "Subrogation" is defined as the substitution of another person in place of the creditor or claimant to whose rights he or she succeeds in relation to the debt or claim; by undertaking to indemnify or pay the principal debtor's obligation to the creditor or claimant, the "subrogee" is equitably subrogated to the claimant, or "subrogor," and succeeds to the subrogor's rights against the obligor. | Subrogation is defined as the substitution of another person in place of the creditor or claimant to whose rights he or she succeeds in relation to the debt or claim. By undertaking to indemnify or pay the principal debtor's obligation to the creditor or claimant, the "subrogee" is equitably subrogated to the claimant (or "subrogor"), and succeeds to the subrogor's rights against the obligor. | Is subrogation defined as the substitution of another person in place of the creditor or claimant to whose rights he or she succeeds in relation to the debt or claim? |
| 774 | Ysasaga v. Nationwide Mut. Ins. Co., 279 S.W.3d 858, 865 (Tex. App. 2009) | 19 | Equitable, or legal, subrogation does not depend on contract, but arises in every instance in which one person, not acting voluntarily, has paid a debt for which another was primarily liable, and which in equity should have been paid by the latter. | Equitable (or legal) subrogation does not depend on contract but arises in every instance in which one person, not acting voluntarily, has paid a debt for which another was primarily liable and which in equity should have been paid by the latter. | "Does equitable, or legal, subrogation depend on contract, but arises in every instance in which one person, not acting voluntarily, has paid a debt for which another was primarily liable, and which in equity should have been paid by the latter?" |
| 790 | Levy v. HLI Operating Co., 924 A.2d 210, 221 (Del. Ch. 2007) | 9 | Subrogation differs from contribution because its operation rests on concepts of primary and secondary liability among obligors; thus, it acts to place an entire loss, not just a portion, on another party. | Subrogation differs from contribution because its operation rests on concepts of primary and secondary liability among obligors. 25 Thus, it acts to place an entire loss, not just a portion, on another party. | "Does subrogation differ from contribution because its operation rests on concepts of primary and secondary liability among obligors and acts to place an entire loss, not just a portion, on another party?" |
| 795 | Rapture Shipping, Ltd. v. Allround Fuel Trading B.V., 350 F. Supp. 2d 369, 373 (S.D.N.Y., 2004) | 3 | Under the principles of international comity, United States courts ordinarily refuse to review acts of foreign governments and defer to proceedings taking place in foreign countries, allowing those acts and proceedings to have extraterritorial effect in the United States. | Under the principles of international comity, United States courts ordinarily refuse to review acts of foreign governments and defer to proceedings taking place in foreign countries, allowing those acts and proceedings to have extraterritorial effect in the United States. | "Under the principles of international comity, do United States courts ordinarily refuse to review acts of foreign governments and defer to proceedings taking place in foreign countries?" |
| 859 | Staats v. McKinnon, 206 S.W.3d 532, 542–43 (Tenn. Ct. App. 2006) | 12 | If a complaint attacked on its face competently alleges any facts which, if true, would establish grounds for subject matter jurisdiction, the court must uncritically accept those facts, end its inquiry, and deny the dismissal motion. | If a complaint attacked on its face competently alleges any facts which, if true, would establish grounds for subject matter jurisdiction, the court must uncritically accept those facts, end its inquiry, *543 and deny the dismissal motion. | "When a complaint challenged on subject matter jurisdiction, on its face competently alleges any facts which, if true, would establish grounds for subject matter jurisdiction, should the court uncritically accept those facts?" |

| 939 | Goldberg v. State Farm Auto. Mut. Ins. Co., 922 So. 2d 983, 983 (Fla. App. 2005) | 2 | To state a cause of action for equitable subrogation, the allegations of the complaint must demonstrate that: (1) the subrogee made the payment to protect his or her own interest, (2) the subrogee did not act as a volunteer, (3) the subrogee was not primarily liable for the debt, (4) the subrogee paid off the entire debt, and (5) subrogation would not work any injustice to the rights of a third party. | To state a cause of action for equitable subrogation, the allegations of the complaint must demonstrate that: "(1) the subrogee made the payment to protect his or her own interest, (2) the subrogee did not act as a volunteer, (3) the subrogee was not primarily liable for the debt, (4) the subrogee paid off the entire debt, and (5) subrogation would not work any injustice to the rights of a third party." | What must the allegations of the complaint demonstrate to state a cause of action for equitable subrogation? |
| 940 | Casstevens v. Smith, 269 S.W.3d 222, 228 (Tex. App. 2008) | 8 | Equitable subrogation is a legal fiction whereby an obligation that is extinguished by a third party is treated as still existing to allow the creditor to seek recovery from the party primarily liable. | Equitable subrogation is a legal fiction whereby an obligation that is extinguished by a third party is treated as still existing to allow the creditor to seek recovery from the party primarily liable. | Is equitable subrogation a legal fiction whereby an obligation that is extinguished by a third party is treated as still existing to allow the creditor to seek recovery from the party primarily liable? |
| 1015 | Lucas v. Clark, 347 S.W.3d 800, 803 (Tex. App. 2011) | 4 | Generally, when a party fails to respond to a request for admission, either by timely answer, written objection, or motion to file late answers, the facts contained in the request are deemed admitted. | Generally, when a party fails to respond to a request for admission, either by timely answer, written objection, or motion to file late answers, the facts contained in the request are deemed admitted. | "Generally, when a party fails to respond to a request for admission, either by the timely answer, written objection, or motion to file late answers, are the facts contained in the request deemed admitted?" |
| 1022 | City of Evanston v. Piotrowicz, 20 Ill. 2d 512, 518 (1960) | 7 | Agency may be established and its nature and extent shown by parol evidence, whether direct or circumstantial, and reference may be had to the situations of parties and property, acts of parties, and other circumstances germane to the question and if the evidence shows one acting for another under circumstances implying knowledge on the part of the supposed principal of such acts, a prima facie case of agency is established. | Agency may be established and its nature and extent shown by parol evidence, whether direct or circumstantial, and reference may be had to the situations of parties and property, acts of parties, and other circumstances germane to the question, and if the evidence shows one acting for another under circumstances implying knowledge on the part of the supposed principal of such acts, a prima facie case of agency is established. | How is the nature and extent of agency shown by parol evidence? |
| 1030 | Nat. Gas Pipeline Co. of Am. v. Pool, 30 S.W.3d 618, 630 (Tex. App. 2000) | 22 | Good faith, as it applies to a trespasser under a mineral lease, is not determined by whether the entry is permissive, but by the belief of the one who enters that he had the right to enter and develop the minerals under the lease, and the damages for which a good faith trespasser is liable are limited to the value of the minerals removed, less drilling and operating costs. | Good faith, as it applies to a trespasser under a mineral lease is not determined by whether the entry is permissive, but by the belief of the one who enters that he had the right to enter and develop the minerals under the lease, and the damages for which a good faith trespasser is liable are limited to the value of the minerals removed, less drilling and operating costs. | Is a good faith trespasser liable in damages only for the value of the minerals removed less drilling and operating costs? |

| 1053 | Stringer v. Packaging Corp. of Am., 351 Ill. App. 3d 1135, 1139 (2004) | 5 | An order to dismiss with prejudice or the imposition of a sanction that results in a default judgment should be used only in those cases where a party's actions show a deliberate, contumacious, or unwarranted disregard of the court's authority. | An order to dismiss with prejudice or the imposition of a sanction that results in a default judgment should be used only in those cases where a party's actions show a deliberate, contumacious, or unwarranted disregard of the court's authority. | "Should an order to dismiss with prejudice that results in a default judgment be used only in those cases where a party's actions show a deliberate, contumacious, or unwarranted disregard of the court's authority?" |
| 1080 | Easter Seal Rehab. Ctr. for Will-Grundy Ctys. v. Current Dev. Corp., 307 Ill. App. 3d 48, 51 (1999) | 5 | The sanctions of dismissal of a plaintiff's action or entry of a judgment against a defendant is the most drastic of sanctions and should be imposed reluctantly and only as a last resort when all other enforcement powers at the court's disposal have failed to advance the litigation. | The sanctions of dismissal of a plaintiff's action or entry of a judgment against a defendant is the most drastic of sanctions and should be imposed reluctantly and only as a last resort when all other enforcement powers at the court's disposal have failed to advance the litigation. | Should the sanctions of dismissal of a plaintiff's action or entry of a judgment against a defendant be imposed only as a last resort when all other enforcement powers at the court's disposal have failed to advance the litigation? |
| 1123 | Wheeler v. Eftink, 507 S.W.3d 598, 601 (Mo.App. E.D., 2016) | 7 | A fair test of whether a trial court abused its discretion in dismissing a case for failure to prosecute with due diligence is whether the plaintiff had a reasonable opportunity to resolve the matter at trial. | A fair test of whether a trial court abused its discretion in dismissing a case for failure to prosecute with due diligence is whether the plaintiff had a reasonable opportunity to resolve the matter at trial. | Is it a fair test of whether a trial court abused its discretion in dismissing a case for failure to prosecute with due diligence by seeing whether the plaintiff had a reasonable opportunity to resolve the matter at trial? |
| 1126 | Hollander v. Nance, 888 So. 2d 1275, 1277-78 (Ala. Civ. App. 2004) | 1 | The dismissal of a civil action for want of prosecution because of the plaintiff's failure to appear at trial falls within the judicial discretion of a trial court and will not be reversed upon an appeal except for an abusive use of that discretionary power. | The dismissal of a civil action for want of prosecution because of the plaintiff's *1278 failure to appear at trial falls within the judicial discretion of a trial court and will not be reversed upon an appeal except for an abusive use of that discretionary power. | Does the dismissal of a civil action for want of prosecution because of the plaintiff's failure to appear at trial fall within the judicial discretion of a court? |
| 1278 | In re Ulm's Estate, 345 So. 2d 1099, 1100 (1977) | 1 | Although a trial court has the inherent power to impose the sanction of dismissal as a coercive and disciplinary measure, the law abhors denial of access to the courts for any reason other than the willful abuse of the processes of the court. | Although a trial court has the inherent power to impose the sanction of dismissal as a coercive and disciplinary measure, the law abhors denial of access to the courts for any reason other than the willful abuse of the processes of the court. | "Although a trial court has the inherent power to impose the sanction of dismissal as a coercive and disciplinary measure, does the law abhor denial of access to the courts for any reason?" |
| 1307 | Jones v Trustees of Union College, No. 512204, 937 N.Y.S.2d 475, 476–77, 2012 N.Y. Slip Op. 00683, 2012 WL 300745 (N.Y.A.D. 3 Dept., Feb. 02, 2012) | 1 | In the context of a motion to dismiss for failure to state a cause of action, courts must afford the pleadings a liberal construction, take the allegations of the complaint as true, and provide plaintiff the benefit of every possible inference. | In the context of a motion to dismiss for failure to state a cause of action, "court[s] must afford the pleadings a liberal construction, take the allegations of the complaint as true and provide plaintiff the benefit of every possible inference" | "In the context of a motion to dismiss for failure to state a cause of action, should courts afford the pleadings a liberal construction?" |

| | | | | | |
|---|---|---|---|---|---|
| 1308 | Peoples Bank v. Carter, 132 S.W.3d 302, 304 (Mo.App. W.D., 2004) | 1 | In general, a trial court's decision on a motion to dismiss for lack for subject-matter jurisdiction is a question of fact left to its sound discretion and will not be reversed on appeal absent an abuse of that discretion. | In general, a trial court's decision on a motion to dismiss for lack for subject-matter jurisdiction is a question of fact left to its sound discretion and "will not be reversed on appeal absent an abuse of that discretion." | Is a trial court decision on a motion to dismiss for lack for subject-matter jurisdiction a question of fact left to its sound discretion and will not be reversed on appeal absent an abuse of that discretion? |
| 1335 | Nowicki v. Cannon Steel Erection Co., 711 N.E.2d 536, 539 (Ind.App., 1999) | 1 | When determining whether an on-the-job injury claim should be dismissed for lack of subject matter jurisdiction, the trial court may consider the pleadings, affidavits and any other evidence submitted; in addition, the court may weigh the evidence to determine the existence of the requisite jurisdictional facts and resolve factual disputes. | When determining whether an on-the- job injury claim should be dismissed for lack of subject matter jurisdiction, the trial court may consider the pleadings, affidavits, and any other evidence submitted. In addition, the court may weigh the evidence to determine the existence of the requisite jurisdictional facts and resolve factual disputes. | "When determining whether an on-the-job injury claim should be dismissed for lack of subject matter jurisdiction, can the trial court consider the pleadings, affidavits and any other evidence submitted?" |
| 1340 | Rogers v. Gann, 982 So. 2d 1105, 1108 (Ala.Civ.App., 2007) | 3 | A trial court may dismiss an action, with prejudice, for lack of prosecution only when there is a clear record of delay or contumacious conduct by the plaintiff or a serious showing of willful default. | A trial court may dismiss an action, with prejudice, for lack of prosecution only when there is a clear record of delay or contumacious conduct by the plaintiff or a serious showing of willful default. | "Can a trial court dismiss an action, with prejudice, for lack of prosecution only when there is a clear record of delay or contumacious conduct by the plaintiff or a serious showing of willful default?" |
| 1396 | Garrity v. Rural Mut. Ins. Co., 77 Wis. 2d 537, 541 (1977) | 3 | Subrogation rests upon the equitable principle that one, other than a volunteer, who pays for the wrong of another should be permitted to look to the wrongdoer to the extent he has paid and be subject to the defenses of the wrongdoer. | Subrogation rests upon the equitable principle that one, other than a volunteer, who pays for the wrong of another should be permitted to look to the wrongdoer to the extent he has paid and be subject to the defenses of the wrongdoer. | "Does subrogation rest upon the equitable principle that one, other than volunteer, who pays for the wrong of another should be permitted to look to the wrongdoer to the extent he has paid and be subject to the defenses of the wrongdoer?" |
| 1418 | Livingstone v. Greater Washington Anesthesiology & Pain Consultants, P.C., 187 Md. App. 346, 370–71 (2009) | 8 | In order for a party to preserve a ruling on a motion in limine which seeks to exclude the admission of evidence at trial, the party challenging the admission must object at the time the evidence is actually offered. | In order for a party to *371 preserve a ruling on a motion in limine which seeks to exclude the admission of evidence at trial, the party challenging the admission must object at the time the evidence is actually offered. | "In order for a party to preserve a ruling on a motion in limine which seeks to exclude the admission of evidence at trial, must the party challenging the admission object at the time the evidence is actually offered and does the court need to take great care?" |
| 1421 | Honaker v. Mahon, 210 W. Va. 53, 60 (2001) | 16 | The purpose of a motion in limine is to prevent an opposing party from asking prejudicial questions, or introducing prejudicial evidence, in front of the jury without asking the trial court's permission. | The purpose of a motion in limine is to prevent an opposing party from asking prejudicial questions, or introducing prejudicial evidence, in front of the jury without asking the trial court's permission. | "Is the purpose of a motion in limine to prevent an opposing party from asking prejudicial questions, or introducing prejudicial evidence, in front of the jury without asking the trial court's permission?" |

| 1433 | Woolam v. Tussing, 54 S.W.3d 442, 448 (Tex. App. 2001) | 3 | In determining whether a cause of action was pleaded, the plaintiff's pleadings must be adequate for the court to be able, from an examination of the pleadings alone, to ascertain with reasonable certainty and without resorting to information from another source, the elements of the plaintiff's cause of action and the relief sought with sufficient information on which to base a judgment. | In determining whether a cause of action was pleaded, the plaintiff's pleadings must be adequate for the court to be able, from an examination of the pleadings alone, to ascertain with reasonable certainty and without resorting to information from another source, the elements of the plaintiff's cause of action and the relief sought with sufficient information on which to base a judgment. | Must the court look to the pleadings alone in determining whether a cause of action has been stated? |
|---|---|---|---|---|---|
| 1459 | Hammers v. Hammers, 890 So. 2d 944, 956 (Miss. App. 2004) | 22 | Trial judges are afforded considerable discretion in managing the pre-trial discovery process in their courts, including the entry of scheduling orders setting out various deadlines to assure orderly pre-trial preparation resulting in timely disposition of the cases. | Trial judges are afforded considerable discretion in managing the pre-trial discovery process in their courts, including the entry of scheduling orders setting out various deadlines to assure orderly pre-trial preparation resulting in timely disposition of the cases. | Are trial judges afforded considerable discretion in managing the pre-trial discovery process in their courts? |
| 1463 | Cochran v. Mullinax, 276 Ga. App. 81, 84 (2005) | 1 | It generally is recognized that, unless the pretrial order is modified at or before trial, a party may not advance theories or offer evidence that violate the terms of the pretrial order; once entered, the pretrial order controls the subsequent course of the action unless modified at the trial to prevent manifest injustice. | It generally is recognized that, unless the pretrial order is modified at or before trial, a party may not advance theories or offer evidence that violate the terms of the pretrial order. Once entered, the pretrial order controls the subsequent course of the action unless modified at the trial to prevent manifest injustice. | Will a party advance theories or offer evidence that violate terms of pre-trial order unless pre-trial order is modified at or before trial? |
| 1469 | Structural Pres. Sys. v. Petty, 927 A.2d 1069, 1076 (D.C., 2007) | 12 | The pre-trial order limits the issues for trial and controls the subsequent course of the action, thereby precluding the interjection of new issues, absent modification of the order upon good cause. | The pre-trial order limits the issues for trial and controls the subsequent course of the action, thereby precluding the interjection of new issues, absent modification of the order upon good cause. | "Does the pre-trial order limit the issues for trial and controls the subsequent course of the action and does that result in precluding the interjection of new issues, absent modification of the order upon good cause?" |
| 1504 | Inloes v. Inloes, 567 S.W.2d 732, 734-35 (Mo. App. 1978) | 3 | A trial court has the right to control its docket, and the unavoidable absence of a party or his attorney due to an engagement elsewhere, illness, or weather conditions does not compel a continuance. | A trial court has the right to control its docket, and the unavoidable absence of a party or his attorney due to an engagement elsewhere, illness, or weather conditions does not compel a continuance. | "Does a trial court have the right to control its docket, and the unavoidable absence of a party or his attorney due to an engagement elsewhere, illness, or weather conditions does not compel a continuance?" |

| | | | | | |
|---|---|---|---|---|---|
| 1511 | Warburton/Buttner v. Superior Court, 103 Cal. App. 4th 1170, 1181 (Cal.App. 4 Dist., 2002) | 6 | California law permits a plaintiff seeking to assert claims against a corporation to obtain discovery against it about whether it has been doing business in the state, since such facts are normally within the knowledge of the corporate officers and such jurisdictional issues are subject to discovery. | California law permits a plaintiff seeking to assert claims against a corporation to obtain discovery against it about whether it has been doing business in this state, since such facts are normally within the knowledge of the corporate officers and such jurisdictional issues are subject to discovery. | Does law permit a plaintiff seeking to assert claims against a corporation to obtain discovery against it about whether it has been doing business in the state? |
| 1534 | Wallingford v. Trinity Universal Ins. Co., 253 S.W.3d 720, 723 (Tex.App. Amarillo,2007 | 1 | A motion to dismiss based on the absence of subject matter jurisdiction is the functional equivalent to a plea to the jurisdiction challenging the trial court's authority to determine the subject matter of a cause of action. | A motion to dismiss based on the absence of subject matter jurisdiction is the functional equivalent to a plea to the jurisdiction challenging the trial court's authority to determine the subject matter of a cause of action. | Is a motion to dismiss based on the absence of subject matter jurisdiction the functional equivalent to a plea to the jurisdiction challenging the trial court authority to determine the subject matter of a cause of action? |
| 1538 | Patton v. Jones, 212 S.W.3d 541, 545 (Tex. App. 2006) | 1 | A motion to dismiss based on a lack of subject matter jurisdiction is functionally equivalent to a plea to the jurisdiction challenging the trial court's authority to determine the subject matter of a cause of action. | A motion to dismiss based on a lack of subject matter jurisdiction is functionally equivalent to a plea to the jurisdiction challenging the trial court's authority to determine the subject matter of a cause of action. | Is a motion to dismiss based on a lack of subject matter jurisdiction functionally equivalent to a plea to the jurisdiction challenging the trial court's authority to determine the subject matter of a cause of action? |
| 1542 | Lake Rd. Tr. Ltd. v. ABB Powertech (Pty) Ltd., 136 Conn. App. 671, 677–78 (2012) | 6 | When a motion to dismiss for lack of personal jurisdiction raises a factual question which is not determinable from the face of the record, the burden of proof is on the plaintiff to present evidence which will establish jurisdiction. | When a motion to dismiss for lack of personal jurisdiction raises a factual question which is not determinable from the face of the record, the burden of proof is on the plaintiff to present evidence which will establish jurisdiction. | "When a motion to dismiss for lack of personal jurisdiction raises a factual question which is not determinable from the face of the record, is the burden of proof on the plaintiff to present evidence which will establish jurisdiction?" |
| 1553 | Wheeler v. State, 160 Md. App. 566, 573 (2005) | 3 | A case should not be dismissed as moot if the case presents unresolved issues in matters of important public concern that, if decided, will establish a rule for future conduct, or the issue presented is capable of repetition, yet evading review. | A case should not be dismissed as moot if the case "presents 'unresolved issues in matters of important public concern that, if decided, will establish a rule for future conduct,' the issue presented is 'capable of repetition, yet evading review | "Should a case be dismissed as moot if the case presents unresolved issues in matters of important public concern that, if decided, will establish a rule for future conduct?" |
| 1575 | Rogers v. Gann, 982 So. 2d 1105, 1108 (Ala.Civ.App., 2007) | 3 | A trial court may dismiss an action, with prejudice, for lack of prosecution only when there is a clear record of delay or contumacious conduct by the plaintiff or a serious showing of willful default. | A trial court may dismiss an action, with prejudice, for lack of prosecution only when there is a clear record of delay or contumacious conduct by the plaintiff or a serious showing of willful default. | "Can a court dismiss an action, with prejudice, for lack of prosecution only when there is a clear record of delay or contumacious conduct by the plaintiff or a serious showing of willful default?" |

| | | | | |
|---|---|---|---|---|
| 1685 | Livingstone v. Greater Washington Anesthesiology & Pain Consultants, P.C., 187 Md. App. 346, 370–71 (2009) | 8 | In order for a party to preserve a ruling on a motion in limine which seeks to exclude the admission of evidence at trial, the party challenging the admission must object at the time the evidence is actually offered. | In order for a party to *371 preserve a ruling on a motion in limine which seeks to exclude the admission of evidence at trial, the party challenging the admission must object at the time the evidence is actually offered. | "In order for a party to preserve a ruling on a motion in limine which seeks to exclude the admission of evidence at trial, must the party challenging the admission object at the time the evidence is actually offered?" |
| 1698 | Nationwide Mut. Fire Ins. Co. v. Gamelin, 173 Vt. 45, 52 (Vt., 2001) | 4 | Subrogation is an equitable doctrine that enables a secondarily liable party who has been compelled to pay a debt to be made whole by collecting that debt from the primarily liable party, who, in good conscience, should be required to pay. | Subrogation is an equitable doctrine that enables a secondarily liable party who has been compelled to pay a debt to be made whole by collecting that debt from the primarily liable party, who, in good conscience, should be required to pay. | "Does subrogation or doctrine of equitable subrogation enable a secondarily liable party who has been compelled to pay a debt to be made whole by collecting that debt from a party that was primarily liable party, who, in good conscience, should be required to pay?" |
| 1723 | W. Sur. Co. v. Loy, 3 Kan. App. 2d 310, 312 (Kan.App., 1979) | 4 | Where subrogation is sought by surety to the rights of the original creditor as against third parties, there must have been either participation in original wrongful act or negligence on the part of the third party sought to be charged, but it is not necessary that such negligence be culpable or gross. | (W)here subrogation is sought by a surety to the rights of the original creditor as against third parties, there must have been either participation in the original wrongful act or negligence on the part of the third party sought to be charged. But it is not necessary that such negligence be culpable or gross. | "Where subrogation is sought by a surety to the rights of the original creditor as against third parties, should there be participation in an original wrongful act or negligence on the part of the third party sought to be charged?" |
| 1763 | Zechman v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 742 F. Supp. 1359, 1364 (N.D. Ill. 1990) | 5 | Where one term of arbitration agreement has failed, decision between substituting a new term for the failed provision and refusing to enforce the agreement altogether turns on the intent of the parties at the time the agreement was executed, as determined from the language of the contract and the surrounding circumstances. | Where one term of an arbitration agreement has failed, the decision between substituting a new term for the failed provision and refusing to enforce the agreement altogether turns on the intent of the parties "at the time the agreement was executed, as determined from the language of the contract and the surrounding circumstances. | Do courts look to the intent of the parties in deciding whether to substitute a new term for a failed provision or refusing to enforce the agreement altogether? |
| 1817 | Ridgeway v. Ridgeway, 180 Conn. 533, 538 (Conn., 1980) | 4 | As a general rule, a somewhat stronger showing must be made to support a motion for a continuance where the moving party has obtained prior continuances, particularly where the claim is premised on the ill health of a party. | As a general rule, a somewhat stronger showing must be made to support a motion for a continuance where the moving party has obtained prior continuances, particularly where the claim is premised on the ill health of a party. | "Can a stronger showing be made to support a motion for a continuance where the moving party has obtained prior continuances, where the claim is premised on the ill health of a party?" |
| 1831 | Greenlee v. Dukes Plastering Serv., 75 S.W.3d 273, 276 (Mo. 2002) | 3 | Workers' compensation law is entirely a creature of statute, and when interpreting the law the court must ascertain the intent of the legislature by considering the plain and ordinary meaning of the terms and give effect to that intent if possible. | Workers' compensation law is entirely a creature of statute, and when interpreting the law the court must ascertain the intent of the legislature by considering the plain and ordinary meaning of the terms and give effect to that intent if possible. | "When interpreting a statute, like workers compensation law, must a court ascertain the intent of the legislature and give effect to that intent if possible?" |

| 1866 | Duarte v. Snap-on Inc., 216 So. 3d 771, 775 (Fla. App. 2017) | 5 | Generally, unless it appears that the process of trial has itself been subverted, factual inconsistencies or even false statements are well managed through the use of impeachment at trial or other traditional discovery sanctions, not through dismissal of a possibly meritorious claim. | Generally, unless it appears that the process of trial has itself been subverted, factual inconsistencies or even false statements are well managed through the use of impeachment at trial or other traditional discovery sanctions, not through dismissal of a possibly meritorious claim. | "Are factual inconsistencies, including false statements, are well managed through the use of impeachment and traditional discovery sanctions?" |
|------|------|------|------|------|------|
| 1870 | Cole v. Carnahan, 272 S.W.3d 392, 395 (Mo. App. 2008) | 6 | A case is moot and generally should be dismissed if a judgment rendered has no practical effect upon an existing controversy or when an event occurs that makes a court's decision unnecessary or makes granting effectual relief by the court impossible. | A case is moot and generally should be dismissed if a judgment rendered has no practical effect upon an existing controversy or when an event occurs that makes a court's decision unnecessary or makes granting effectual relief by the court impossible. | Will a case be rendered moot when an event occurs that makes a court's decision unnecessary or makes granting any relief by the court impossible? |
| 1880 | Henderson v. Blalock, 465 S.W.3d 318, 321 (Tex. App. 2015) | 6 | A trial court generally will consider four factors in deciding whether to dismiss a case for want of prosecution: (1) the length of time the case has been on file; (2) the extent of activity in the case; (3) whether a trial setting was requested; and (4) the existence of reasonable excuses for the delay. | A trial court generally will consider four factors in deciding whether to dismiss a case for want of prosecution: (1) the length of time the case has been on file; (2) the extent of activity in the case; (3) whether a trial setting was requested; and (4) the existence of reasonable excuses for the delay. | What are the four factors that a court will consider in deciding whether to dismiss a case for want of prosecution? |
| 1898 | Zollo v. Comm'r of Correction, 133 Conn. App. 266, 276, 35 A.3d 337, 344 (2012) | 4 | In ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. | In ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader | "In ruling upon whether a complaint survives a motion to dismiss, should a court take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations?" |
| 2010 | Lambert v. Coonrod, 2012 IL App (4th) 110518, ¶ 18 (2012) | 1 | A trial judge has discretion in granting a motion in limine and a reviewing court will not reverse a trial court's order allowing or excluding evidence unless that discretion was clearly abused. | A trial judge has discretion in granting a motion in limine and a reviewing court will not reverse a trial court's order allowing or excluding evidence unless that discretion was clearly abused. | Does a trial judge have discretion in granting a motion in limine and a reviewing court will not reverse a trial court's order allowing or excluding evidence unless that discretion was clearly abused? |
| 2011 | Weidner v. Sanchez, 14 S.W.3d 353, 363 (Tex. App. 2000) | 21 | The purpose of a motion in limine is to prevent the other party from asking prejudicial questions and introducing prejudicial evidence in front of the jury without first asking the court's permission. | The purpose of a motion in limine is to prevent the other party from asking prejudicial questions and introducing prejudicial evidence in front of the jury without first asking the court's permission. | Is the purpose of a motion in limine to prevent the other party from asking prejudicial questions and introducing prejudicial evidence in front of the jury without first asking the court's permission? |

| | | | | |
|---|---|---|---|---|
| 2014 | Koffman v. Leichtfuss, 2001 WI 111, ¶ 33, 246 Wis. 2d 31, 50 (2001) | 11 | Subrogation exists to ensure that the loss is ultimately placed upon the wrongdoer and to prevent the subrogor from being unjustly enriched through a double recovery, i.e., a recovery from the subrogated party and the liable third party. | Subrogation exists to ensure that the loss is ultimately placed upon the wrongdoer and to prevent the subrogor from being unjustly enriched through a double recovery, i.e., a recovery from the subrogated party and the liable third party. | Does subrogation exist to ensure that the loss is ultimately placed upon the wrongdoer and to prevent the subrogor from being unjustly enriched through a double recovery? |
| 2024 | Agnew v. Shaw, 355 Ill. App. 3d 981, 990 (2005) | 5 | Motions in limine are addressed to the trial court's inherent power to admit or exclude evidence; generally, a reviewing court will not disturb the trial court's ruling on motions in limine absent an abuse of discretion, so long as the trial court exercises its discretion within the bounds of the law. | Motions in limine are addressed to the trial court's inherent power to admit or exclude evidence; generally, a reviewing court will not disturb the trial court's ruling on motions in limine absent an abuse of discretion, so long as the trial court exercises its discretion within the bounds of the law. | Are motions in limine addressed to the trial court's inherent power to admit or exclude evidence? |
| 2025 | Kaufman v. Comm'n for Lawyer Discipline, 197 S.W.3d 867, 873 (Tex. App. 2006) | 9 | A motion in limine is a procedural device that permits a party to identify, prior to trial, certain evidentiary issues the court may be asked to rule upon. | A motion in limine is a procedural device that permits a party to identify, prior to trial, certain evidentiary issues the court may be asked to rule upon. | "Can a motion in limine permit a party to identify, prior to trial, certain evidentiary issues the court may be asked to rule upon?" |
| 2032 | United States v. Sum of $70,990,605, 234 F.Supp.3d 212, 243 (D.D.C., 2017) | 23 | The act of state doctrine does not establish an exception for cases or controversies that may embarrass foreign governments, but merely requires that, in the process of deciding, the acts of foreign sovereigns taken within their own jurisdiction shall be deemed valid. | The act of state doctrine does not establish an exception for cases or controversies that may embarrass foreign governments, but merely requires that, in the process of deciding, the acts of foreign sovereigns taken within their own jurisdiction shall be deemed valid. | "Is the ""Act of state doctrine"" an exception for cases and controversies that may embarrass foreign governments?" |
| 2033 | In re Adoption of Doe, 58 A.D.3d 186, 194, 868 N.Y.S.2d 40, 46 (2008) | 3 | The act of state doctrine requires an American court to refrain from examining the validity of an act of a foreign state by which that state has exercised its jurisdiction to give effect to its public concerns. | The act of state doctrine requires an American court to refrain from examining the validity of an act of a foreign state by which that state has exercised its jurisdiction to give effect to its public concerns. | Does the act of state doctrine require an American court to refrain from examining the validity of an act of a foreign state by which that state has exercised its jurisdiction to give effect to its public concerns? |
| 2040 | Hardy v. Cordero, 399 Ill. App. 3d 1126, 1134-35 (2010) | 11 | The purpose of an in limine order is to exclude inadmissible evidence, not to create a trap which results in a new trial if the court in retrospect determines the rule was violated. | The purpose of an in limine order is to exclude inadmissible evidence, not to create a trap which results in a new trial if the court in retrospect determines the rule was violated. | "Is the purpose of an in limine order to exclude inadmissible evidence, not to create a trap which results in a new trial if the court in retrospect determines the rule was violated?" |
| 2044 | Turner v. Peril, 50 S.W.3d 742, 745 (Tex.App.-Dallas, 2001) | 2 | A trial court's grant of a motion in limine simply prohibits references to specific issues without first obtaining a ruling outside the presence of the jury. | A trial court's grant of a motion in limine simply prohibits references to specific issues without first obtaining a ruling outside the presence of the jury. | Does a trial court's grant of a motion in limine prohibit references to specific issues without obtaining a ruling outside the presence of the jury? |

| | | | | |
|---|---|---|---|---|
| 2046 | Vela v. Wagner & Brown, Ltd., 203 S.W.3d 37, 54 (Tex.App. San Antonio,2006) | 24 | A motion in limine is a procedural device that permits a party to identify, pre-trial, certain evidentiary issues the court may be asked to rule upon. | A motion in limine is a procedural device that permits a party to identify, pre-trial, certain evidentiary issues the court may be asked to rule upon. | "Is a motion in limine a procedural device that permits a party to identify, pre-trial, certain evidentiary issues the court may be asked to rule upon?" |
| 2047 | Vela v. Wagner & Brown, Ltd., 203 S.W.3d 37, 54 (Tex.App. San Antonio,2006) | 27 | The imposition of sanctions for violation of an order in limine is left to the sound discretion of the trial court, and an appellate court will not reverse a trial court's decision on sanctions absent a clear abuse of discretion. | The imposition of sanctions for violation of an order in limine is left to the sound discretion of the trial court, and an appellate court will not reverse a trial court's decision on sanctions absent a clear abuse of discretion. | "Is the imposition of sanctions for violation of an order in limine left to the sound discretion of the trial court, and an appellate court will not reverse a trial court's decision on sanctions absent a clear abuse of discretion?" |
| 2065 | Evans v. Thobe, 195 Ohio App.3d 1, 6 (2011) | 3 | An order granting or denying a motion in limine is a tentative, preliminary, or presumptive ruling about an evidentiary issue that is anticipated but has not yet been presented in its full context. | An order granting or denying a motion in limine is a tentative, preliminary, or presumptive ruling about an evidentiary issue that is anticipated but has not yet been presented in its full context. | "Is an order granting or denying a motion in limine a tentative, preliminary, or presumptive ruling about an evidentiary issue that is anticipated but has not yet been presented in its full context?" |
| 2073 | Vela v. Wagner & Brown, Ltd., 203 S.W.3d 37, 54 (Tex.App. San Antonio,2006) | 24 | A motion in limine is a procedural device that permits a party to identify, pre-trial, certain evidentiary issues the court may be asked to rule upon. | A motion in limine is a procedural device that permits a party to identify, pre-trial, certain evidentiary issues the court may be asked to rule upon. | "Is a motion in limine a procedural device that permits a party to identify, pre-trial, certain evidentiary issues the court may be asked to rule upon, in order to avoid prejudicing the jury?" |
| 2074 | Honaker v. Mahon, 210 W. Va. 53, 60 (2001) | 16 | The purpose of a motion in limine is to prevent an opposing party from asking prejudicial questions, or introducing prejudicial evidence, in front of the jury without asking the trial court's permission. | The purpose of a motion in limine is to prevent an opposing party from asking prejudicial questions, or introducing prejudicial evidence, in front of the jury without asking the trial court's permission. | Is the purpose of a motion in limine to prevent an opposing party from asking prejudicial questions in front of the jury without asking the trial court's permission? |
| 2128 | Morton Salt Co. v. City of S. Hutchinson, 159 F.2d 897, 901–02 (10th Cir. 1947) | 14 | Every burden which the state imposes upon its citizens with the view of revenue for support of its government or any of its political subdivisions is levied under the power of taxation whether under the name of a tax or some other designation. | Every burden which the state imposes upon its citizens with the view of revenue for support of its government or any of its political subdivisions, is levied under the *902 power of taxation, whether under the name of a tax or some other designation. | Is every burden that the state imposes upon its citizens with the view of revenue for support of its government levied under the power of taxation? |
| 2168 | City of Indus. v. City of Fillmore, 198 Cal. App. 4th 191, 210 (2011) | 18 | Application of the primary jurisdiction doctrine results in a stay of the action pending the resolution of the issues within the expertise of the administrative body, rather than a dismissal. | Application of the primary jurisdiction doctrine results in a stay of the action pending the resolution of the issues within the expertise of the administrative body, rather than a dismissal. | "Does application of the primary jurisdiction doctrine result in a stay of the action pending the resolution of the issues within the expertise of the administrative body, rather than a dismissal?" |

| | | | | | |
|---|---|---|---|---|---|
| 2176 | Sawyer v. First City Financial Corp., 124 Cal.App.3d 390, 404 (Cal.App., 1981) | 6 | A court is not required to grant a continuance of a trial when the pleadings have been completed, adequate time for discovery has been provided, the issues are joined, and one side is ready for trial, even though the moving party alleges newly discovered facts or newly found issues which suggest more discovery or amendment to the pleadings. | A court is not required to grant a continuance of a trial when the pleadings have been completed, adequate time for discovery has been provided, the issues are joined, and one side is ready for trial, even though the moving party alleges newly discovered facts or newly found issues which suggest more discovery or an amendment to the pleadings. | "When an amendment is made containing substantially new and material allegations, must the opposing party be given a continuance to meet new allegations and prepare for trial?" |
| 2213 | Johnson v. Elayyan, No. 14-01-00381-CV, 2002 WL 959518, at *2 (Tex. App. May 9, 2002) | 5 | The conclusion that disobeyance of its order was willful or consciously indifferent is sufficient basis for the trial court to impose the ultimate sanction of dismissing the case or striking pleadings and rendering judgment by default. | The conclusion that disobeyance of its order was willful or consciously indifferent is sufficient basis for the trial court to impose the ultimate sanction of dismissing the case or striking pleadings and rendering judgment by default. | "Is the conclusion that disobeyance of its order was willful or consciously indifferent, a sufficient basis for a trial court to dismiss the case?" |
| 2233 | Henderson v. Blalock, 465 S.W.3d 318, 321 (Tex. App. 2015) | 6 | A trial court generally will consider four factors in deciding whether to dismiss a case for want of prosecution: (1) the length of time the case has been on file; (2) the extent of activity in the case; (3) whether a trial setting was requested; and (4) the existence of reasonable excuses for the delay. | A trial court generally will consider four factors in deciding whether to dismiss a case for want of prosecution: (1) the length of time the case has been on file; (2) the extent of activity in the case; (3) whether a trial setting was requested; and (4) the existence of reasonable excuses for the delay. | "Will a court consider the extent of activity in the case, in determining whether to dismiss an action for want of prosecution?" |
| 2237 | Powell v. Maryland Dep't of Health, 168 A.3d 857, 868 (Md., 2017) | 6 | When a circuit court considers a motion to dismiss a complaint for failure to state a claim, the court accepts the well-pleaded facts of the complaint, and reasonable inferences that may be drawn from those allegations, in the light most favorable to the plaintiff; the court's decision is thus based on its application of the law to those facts and inferences. | When a circuit court considers a motion to dismiss a complaint for failure to state a claim, the court accepts the well-pleaded facts of the complaint, and reasonable inferences that may be drawn from those allegations, in the light most favorable to the plaintiff. The court's decision is thus based on its application of the law to those facts and inferences. | "When a circuit court considers a motion to dismiss a complaint for failure to state a claim, does the court accept the well-pleaded facts of the complaint?" |
| 2257 | Talkington v. Womens Servs., P.C., 7 Neb. App. 378, 381-382 (1998) | 7 | Four factors must be considered in assessing the propriety of a dismissal for lack of prosecution: (1) the length of delay in the proceedings, (2) reasons for the delay in the proceedings, (3) whether any dismissals for lack of prosecution had been entered previously and then rescinded, and (4) whether a new lawsuit would be barred by the applicable statute of limitations. | Four factors must be considered in assessing the propriety of a dismissal for lack of prosecution: (1) the length of delay in the proceedings, (2) reasons for the delay in the proceedings, (3) whether any dismissals for lack of prosecution had been entered previously and then rescinded, and (4) whether a new lawsuit would be barred by the applicable statute of limitations. | Should the length of delay in the proceedings be considered in assessing the propriety of a dismissal for lack of prosecution? |

| 2267 | Buckles by & through Buckles v. Cont'l Res., 402 P.3d 1213, 1216 (Mont. 2017) | 2 | Motions to dismiss are construed in a light most favorable to the nonmoving party and should not be granted unless, taking all well-pled allegations of fact as true, it appears beyond doubt that the plaintiffs can prove no set of facts in support of their claim which would entitle them to relief. | Motions to dismiss are construed in a light most favorable to the nonmoving party and should not be granted unless, taking all well-pled allegations of fact as true, it appears beyond doubt that the plaintiffs can prove no set of facts in support of their claim which would entitle them to relief. | Are motions to dismiss construed in a light most favorable to the nonmoving party? |
|---|---|---|---|---|---|
| 2277 | Bryant v. Smith Interior Design Grp., No. ED 91924, 2009 WL 981958, at *3 (Miss. App. 2009) | 3 | When presented with a motion to dismiss for lack of personal jurisdiction, a trial court is limited to examining the petition on its face and the supporting affidavits in determining the limited question of personal jurisdiction. | When presented with a motion to dismiss for lack of personal jurisdiction, a trial court is limited to examining the petition on its face and the supporting affidavits in determining the limited question of personal jurisdiction. | "When presented with a motion to dismiss for lack of personal jurisdiction, is a trial court limited to examining the petition on its face and the supporting affidavits in determining the limited question of personal jurisdiction?" |
| 2359 | Chicago Title Ins. Co. v. AMZ Ins. Servs., 188 Cal. App. 4th 401, 432 (2010) | 45 | A party claiming to be equitably subrogated to the rights of a creditor must meet these requirements: (1) the subrogee made payment to protect the subrogee's own interest; (2) the subrogee must not have acted as a volunteer; (3) the debt paid must be one for which the subrogee was not primarily liable; (4) the entire debt must have been paid; and (5) subrogation must not cause injustice to the rights of others. | A party claiming to be equitably subrogated to the rights of a creditor must meet these requirements: (1) the subrogee made payment to protect the subrogee's own interest; (2) the subrogee must not have acted as a volunteer; (3) the debt paid must be one for which the subrogee was not primarily liable; (4) the entire debt must have been paid; and (5) subrogation must not cause injustice to the rights of others. | What requirements must a party claiming to be equitably subrogated meet? |
| 2360 | Bengal House Ltd. v. 989 3rd Ave., Inc., 118 A.D.3d 575, 575–76, 988 N.Y.S.2d 586, 587 (2014) | 1 | On an application to vacate the dismissal of a complaint, assessment of the sufficiency of the excuse proffered for the delay and the adequacy of the merit of the action are consigned to the sound discretion of the court. | On an application to vacate the dismissal of a complaint, assessment of the sufficiency of the excuse proffered for the delay and the adequacy of the merit of the action are consigned to the sound discretion of the court | "On an application to vacate the dismissal of a complaint, are assessment of the sufficiency of the excuse proffered for the delay and the adequacy of the merit of the action consigned to the sound discretion of the court? " |
| 2362 | State Farm Mut. Auto. Ins. Co. v. Johnson, 18 So. 3d 1099, 1100 (Fla.App. 2 Dist., 2009) | 6 | A cause of action for equitable subrogation arises where: (1) the subrogee made the payment to protect his or her own interest, (2) the subrogee did not act as a volunteer, (3) the subrogee was not primarily liable for the debt, (4) the subrogee paid off the entire debt, and (5) subrogation would not work any injustice to the rights of a third party. | A cause of action for equitable subrogation arises where: (1) the subrogee made the payment to protect his or her own interest, (2) the subrogee did not act as a volunteer, (3) the subrogee was not primarily liable for the debt, (4) the subrogee paid off the entire debt, and (5) subrogation would not work any injustice to the rights of a third party. | Does a cause of action for equitable subrogation arise where the subrogee paid off the entire debt? |

| 2373 | Smart v. Tower Land & Inv. Co., 597 S.W.2d 333, 337 (Tex., 1980) | 5 | Equitable subrogation may be invoked to prevent unjust enrichment when one person confers upon another a benefit that is not required by legal duty or contract. | Equitable subrogation may be invoked to prevent unjust enrichment when one person confers upon another a benefit that is not required by legal duty or contract. | Does the doctrine of equitable subrogation prevent unjust enrichment when one person confers upon another a benefit that is not required by legal duty or contract? |
|---|---|---|---|---|---|
| 2404 | Stanton v. Metro Corp., 438 F.3d 119, 124 (C.A.1 (Mass.), 2006) | 3 | To succeed on a defamation claim under Massachusetts law, a plaintiff must show that the defendant was at fault for the publication of a false statement of and concerning the plaintiff which was capable of damaging his or her reputation in the community and which either caused economic loss or is actionable without proof of economic loss. | To succeed on a defamation claim under Massachusetts law, a plaintiff must show that the defendant was at fault for the publication of a false statement of and concerning the plaintiff which was capable of damaging his or her reputation in the community and which either caused economic loss or is actionable without proof of economic loss. | What must a Plaintiff show in order to succeed on a defamation claim? |
| 2406 | N. Area Pers. Care Home Adm'rs Ass'n v. Com., Dep't of Pub. Welfare, 899 A.2d 1182, 1191 (Pa.Cmwlth.,2006) | 7 | Where a property owner is legally compelled to engage in a price-regulated activity, for example, a public utility, the imposition of regulations may give rise to a taking, but when a service provider voluntarily participates in a price-regulated program or activity, there is no legal compulsion to provide service and, thus, there can be no taking. | Where a property owner is legally compelled to engage in a price- regulated activity, for example, a public utility, the imposition of regulations may give rise to a taking, but when a service provider voluntarily participates in a price-regulated program or activity, there is no legal compulsion to provide service and, thus, there can be no taking. | "If a property owner is legally compelled to engage in a price-regulated activity, does it amount to a taking?" |
| 2408 | Kaufman v. Comm'n for Lawyer Discipline, 197 S.W.3d 867, 873 (Tex. App. 2006) | 9 | A motion in limine is a procedural device that permits a party to identify, prior to trial, certain evidentiary issues the court may be asked to rule upon. | A motion in limine is a procedural device that permits a party to identify, prior to trial, certain evidentiary issues the court may be asked to rule upon. | "Is a motion in limine a procedural device that permits a party to identify, before trial, certain evidentiary rulings that the court may be asked to make so as to prevent the asking of prejudicial questions and the making of prejudicial statements in the presence of the jury?" |
| 2485 | Muse v. Dunbar, 716 So. 2d 110, 117 (1998) | 16 | A voluntary dismissal, without prejudice, restores matters to the status occupied before the suit was instituted and leaves the party free again to come into court with his complaint. | A voluntary dismissal, without prejudice, restores matters to the status occupied before the suit was instituted and leaves the party free again to come into court with his complaint. | "Does a voluntary dismissal, without prejudice, restore matters to the status occupied before the suit was instituted and leaves the party free again to come into court with his complaint?" |
| 2504 | Inloes v. Inloes, 567 S.W.2d 732, 734-35 (Mo. App. 1978) | 3 | A trial court has the right to control its docket, and the unavoidable absence of a party or his attorney due to an engagement elsewhere, illness, or weather conditions does not compel a continuance. | A trial court has the right to control its docket, and the unavoidable absence of a party or his attorney due to an engagement elsewhere, illness, or weather conditions does not compel a continuance. | "Does a trial court have the right to control its docket, and the unavoidable absence of a party or his attorney due to an engagement elsewhere does not compel a continuance?" |

| 2534 | Prigg v. Preston, 28 Pa. Super. 272, 277–78 (1905) | 3 | Before a mere usage of trade or a custom can become so firmly imbedded in the law as to govern the rights of parties, it must be so certain, uniform, and notorious as probably to be known to and understood by the parties entering into the contract. | Before a mere usage of trade or a custom can become so firmly imbedded in the law as to govern the rights of parties, it must be so certain, uniform and notorious as probably to be known to and understood by the parties entering into the contract | When can the mere usage of trade or a custom become so firmly imbedded in the law as to govern the rights of parties? |
| 2541 | Patton v. Jones, 212 S.W.3d 541, 545 (Tex. App. 2006) | 1 | A motion to dismiss based on a lack of subject matter jurisdiction is functionally equivalent to a plea to the jurisdiction challenging the trial court's authority to determine the subject matter of a cause of action. | A motion to dismiss based on a lack of subject matter jurisdiction is functionally equivalent to a plea to the jurisdiction challenging the trial court's authority to determine the subject matter of a cause of action. | Is a motion to dismiss the functional equivalent of a plea to the jurisdiction challenging the trial court's authority to determine the subject matter of a cause of action? |
| 2547 | Hayes v. Show Me Believers, 192 S.W.3d 706, 707 (Mo. 2006) | 2 | Workers' compensation law is entirely a creature of statute, and when interpreting the law the court must ascertain the intent of the legislature by considering the plain and ordinary meaning of the terms and give effect to that intent if possible. | Workers' compensation law is entirely a creature of statute, and when interpreting the law the court must ascertain the intent of the legislature by considering the plain and ordinary meaning of the terms and give effect to that intent if possible. | "Since workers compensation law is entirely a creature of statute, when should the court ascertain the intent of the legislature?" |
| 2552 | Capasso Restoration v. City of New Haven, 88 Conn. App. 754, 758 (2005) | 3 | A motion to dismiss for lack of standing attacks the jurisdiction of the court, asserting essentially that the plaintiff cannot as a matter of law or fact state a claim that should be heard by the court. | A motion to dismiss for lack of standing attacks the jurisdiction of the court, asserting essentially that the plaintiff cannot as a matter of law or fact state a claim that should be heard by the court. | Does a motion to dismiss for lack of standing attack the jurisdiction of the court asserting that as a matter of law or fact the plaintiff cannot state a claim that should be heard by the court? |
| 2591 | Halim v. Great Gatsby's Auction Gallery, 516 F.3d 557, 562 (2008) | 6 | Although a variety of factors may be considered, diligence or a lack thereof should weigh heavily in the court's determination of whether a party implicitly waived its right to arbitrate. | Although a variety of factors may be considered, diligence or a lack thereof should weigh heavily in the court's determination of whether a party implicitly waived its right to arbitrate. | Is diligence or a lack thereof weighed heavily by the courts in determining whether a party implicitly waived its right to arbitrate? |
| 2604 | Wray v. State, 474 S.W.3d 230, 237 (Mo. Ct. App. 2015) | 8 | Because direct proof of the requisite mental state for the crime of child molestation is seldom available, the existence of such intent is usually inferred from circumstantial evidence and the permissible inferences that can be drawn therefrom. | Because direct proof of the requisite mental state for the crime of child molestation is seldom available, the existence of such intent is usually inferred from circumstantial evidence and the permissible inferences that can be drawn therefrom. | Can intent for the crime of child molestation be inferred from circumstantial evidence if direct proof of mental state is not available? |
| 2648 | Henderson v. Blalock, 465 S.W.3d 318, 321 (Tex. App. 2015) | 6 | A trial court generally will consider four factors in deciding whether to dismiss a case for want of prosecution: (1) the length of time the case has been on file; (2) the extent of activity in the case; (3) whether a trial setting was requested; and (4) the existence of reasonable excuses for the delay. | A trial court generally will consider four factors in deciding whether to dismiss a case for want of prosecution: (1) the length of time the case has been on file; (2) the extent of activity in the case; (3) whether a trial setting was requested; and (4) the existence of reasonable excuses for the delay. | What are the factors considered by trial court before dismissing case for want of prosecution? |

| 2650 | Seminole Tribe of Florida v. McCor, 903 So. 2d 353, 357 (Fla.App. 2 Dist., 2005) | 3 | In considering a motion to dismiss challenging subject matter jurisdiction, a trial court may properly go beyond the four corners of the complaint and consider affidavits. | In considering a motion to dismiss challenging subject matter jurisdiction, a trial court may properly go beyond the four corners of the complaint and consider affidavits. | "In considering a motion to dismiss challenging subject matter jurisdiction, can a trial court properly go beyond the four corners of the complaint and consider affidavits?" |
|---|---|---|---|---|---|
| 2657 | The Florida Bar v. Greene, 926 So. 2d 1195, 1199 (Fla., 2006) | 1 | A motion to dismiss is designed to test the legal sufficiency of the complaint, not to determine factual issues, and the allegations of the complaint must be taken as true and all reasonable inferences therefrom construed in favor of the nonmoving party. | A motion to dismiss is designed to test the legal sufficiency of the complaint, not to determine factual issues, and the allegations of the complaint must be taken as true and all reasonable inferences therefrom construed in favor of the nonmoving party. | "Is a motion to dismiss designed to test the legal sufficiency of the complaint, not to determine factual issues?" |
| 2667 | Consol. Elec. & Mechanicals v. Schuerman, 185 S.W.3d 773, 776 (2006) | 3 | When a motion to dismiss for lack of personal jurisdiction is made on a matter not appearing on the record, the trial court may hear it on affidavits presented by the parties, or the court may direct the matter be heard wholly or partly on oral testimony or deposition. | When a motion to dismiss for lack of personal jurisdiction is made on a matter not appearing on the record, the trial court may hear it on affidavits presented by the parties, or the court may direct the matter be heard wholly or partly on oral testimony or deposition. | "When a motion is based on facts not appearing of record, can a trial court hear a matter on affidavits presented and believe or disbelieve statements contained in affidavits?" |
| 2674 | Deutsche Bank Nat. Tr. Co. v. Lippi, 78 So. 3d 81, 85-86 (Fla. App. 2012) | 15 | Although no "magic words" are required when a court dismisses a case with prejudice, the court must find the conduct leading to the order was willful or constituted a deliberate disregard of the court's directives. | Although no "magic words" are required when a court dismisses a case with prejudice, the court must find the conduct leading to the order was willful or *86 constituted a deliberate disregard of the court's directives. | "Although no ""magic words"" are required when a court dismisses a case with prejudice, should the court find the conduct leading to the order was willful?" |
| 2687 | Gass v. Anna Hosp. Corp., 392 Ill. App. 3d 179, 185 (2009) | 10 | Stock ownership alone in one corporation by another neither creates an identity of corporate interest between the two companies nor renders the stockholding company the owner of the property of the other nor creates the relation of principal and agent, representative, or alter ego between the two. | Stock ownership alone in one corporation by another neither creates an identity of corporate interest between the two companies nor renders the stockholding company the owner of the property of the other nor creates the relation of principal and agent, representative, or alter ego between the two. | Can stock ownership in one corporation by another create the relation of principal and agent? |
| 2763 | In re Air Crash Disaster Near Peggy's Cove, Nova Scotia on Sept. 2, 1998, 210 F. Supp. 2d 570, 574 (E.D. Pa. 2002) | 2 | Under generally accepted principles of international law, the navigable sea is divided into three zones: inland waters; territorial waters extending seaward from a defined coastal baseline; and the high seas, international waters beyond the limit of a sovereign's territorial sea. | Under generally accepted principles of international law, the navigable sea is divided into three zones: inland waters; territorial waters extending seaward from a defined coastal baseline; and the high seas, international waters beyond the limit of a sovereign's territorial sea. | Under generally accepted principles of international law into how many zones is the navigable sea divided? |
| 2766 | Doe I v. State of Israel, 400 F.Supp.2d 86, 113 (D.D.C.,2005) | 57 | When it applies, the act of state doctrine is a rule of law that requires courts to presume that actions taken within a foreign sovereign's own territory are valid. | When it applies, the act of state doctrine is a rule of law that requires courts to presume that actions taken within a foreign sovereign's own territory are valid. | Is the act of state doctrine a rule of law that requires courts to presume that actions taken within a foreign sovereign's own territory are valid? |

| | | | | | |
|---|---|---|---|---|---|
| 2785 | Seureau v. ExxonMobil Corp., 274 S.W.3d 206, 222 (Tex. App. 2008) | 24 | The essential elements of a joint enterprise, which interrelate, require: (1) an agreement, express or implied, among the group members; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that common purpose, among the members; and (4) an equal right to a voice in the direction of the enterprise, giving rise to an equal right of control over the enterprise or project formed to carry out that purpose. | The essential elements of a joint enterprise, which interrelate, require (1) an agreement, express or implied, among the group members; (2) a common purpose to be carried out by the group; (3) a "community of pecuniary interest" in that common purpose, among the members; and (4) an equal right to a voice in the direction of the enterprise, giving rise to an equal right of control over the enterprise or project formed to carry out that purpose. | What are the essential elements of a joint venture? |
| 2805 | Hendrickson v. Carpenter, 88 Ark. App. 369, 373 (2004) | 8 | Subrogation is an equitable remedy that rests upon principles of unjust enrichment and attempts to accomplish complete and perfect justice among parties. | Subrogation is an equitable remedy that rests upon principles of unjust enrichment and attempts to accomplish complete and perfect justice among parties. | Is subrogation an equitable remedy that rests upon principles of unjust enrichment and attempts to accomplish complete and perfect justice among parties? |
| 2813 | In Interest of R.V., Jr., 977 S.W.2d 777, 780 (Tex. App. 1998) | 4 | A motion in limine merely precludes reference to certain issues without first obtaining a ruling on the admissibility of those issues outside the presence of the jury. | A motion in limine merely precludes reference to certain issues without first obtaining a ruling on the admissibility of those issues outside the presence of the jury. | Does a motion in limine merely preclude reference to certain issues without first obtaining a ruling on the admissibility of those issues outside the presence of the jury? |
| 2816 | Compton v. Ubilluz, 353 Ill. App. 3d 863, 871 (2004) | 19 | The purpose of an in limine order is to exclude inadmissible evidence, not to create a trap that results in a new trial if the court determines in retrospect that the order was violated. | The purpose of an in limine order is to exclude inadmissible evidence, not to create a trap that results in a new trial if the court determines in retrospect that the order was violated. | "Is the purpose of an in limine order to exclude inadmissible evidence, and not to create a trap that results in a new trial if the court determines in retrospect that the order was violated?" |
| 2837 | In re Wyatt Field Serv. Co., 454 S.W.3d 145, 161 (Tex. App. 2014) | 19 | The purpose of a motion in limine is to prevent the other party from asking prejudicial questions and introducing evidence in front of the jury without first asking the court's permission. | The purpose of a motion in limine is to prevent the other party from asking prejudicial questions and introducing evidence in front of the jury without first asking the court's permission. | Is the purpose of a motion in limine to prevent the other party from asking prejudicial questions in front of the jury without first asking the court's permission? |
| 2838 | City of Wichita v. Denton, 296 Kan. 244, 255-56 (Kan. 2013) | 10 | The purpose of an order in limine is to assure a fair and impartial trial to all parties by excluding from trial inadmissible evidence, prejudicial statements, and improper questions. | The purpose of an order in limine is to assure a fair and impartial trial to all parties by excluding from trial inadmissible *256 evidence, prejudicial statements, and improper questions. | "Is the purpose of an order in limine to assure a fair and impartial trial to all parties by excluding from trial inadmissible evidence, prejudicial statements, and improper questions?" |

| 2851 | Phoenix Canada Oil Co. Ltd. v. Texaco Inc., 560 F.Supp. 1372, 1381 (D.Del., 1983) | 6 | If applicable, a court utilizes the act of state doctrine to accord a foreign act an irrebuttable presumption of validity and then proceeds to adjudicate the merits of the claim. | If applicable, a Court utilizes the act of state doctrine to accord a foreign act an irrebuttable presumption of validity and then proceeds to adjudicate the merits of the claim. | "If applicable, does a court utilize the act of state doctrine to accord a foreign act an irrebuttable presumption of validity and then proceeds to adjudicate the merits of the claim?" |
|------|------|------|------|------|------|
| 2863 | Turner v. Peril, 50 S.W.3d 742, 745 (Tex.App. Dallas,2001) | 2 | A trial court's grant of a motion in limine simply prohibits references to specific issues without first obtaining a ruling outside the presence of the jury. | A trial court's grant of a motion in limine simply prohibits references to specific issues without first obtaining a ruling outside the presence of the jury. | Does a trial court's grant of a motion in limine simply prohibit references to specific issues outside the presence of the jury? |
| 2885 | Antol v. Dayton Malleable Iron Co., 38 N.E.2d 100, 102 (Ohio App. 1941) | 12 | Even though there may have been a right to an injunction as matters stood at the institution of the action, an injunction will not be granted if, at the time of the hearing, conditions are so changed that no unlawful act is then threatened or that the injunction would be of no avail to the parties seeking it. | Even though there may have been a right to an injunction as matters stood at the institution of the action, an injunction will not be granted if at the time of the hearing conditions are so changed that no unlawful act is then threatened or that the injunction would be of no avail to the parties seeking it | "Will an injunction be granted if, at the time of the hearing, conditions are so changed that no unlawful act is then threatened?" |
| 2886 | James v. Calkins, 446 S.W.3d 135, 143 (Tex. App. 2014) | 9 | Although typically parties have an absolute right to a nonsuit, the decision to nonsuit does not affect a non-moving party's independent claims for affirmative relief, which may include a motion for sanctions. | Although typically parties have an absolute right to a nonsuit, the decision to nonsuit does not affect a non-moving party's independent claims for affirmative relief, which may include a motion for sanctions. | "Although typically parties have an absolute right to a nonsuit, will the decision to nonsuit affect a non-moving party's independent claims for affirmative relief?" |
| 2898 | In re Advanced Powder Sols., 496 S.W.3d 838, 854 (Tex. App. 2016) | 26 | When a reasonable person would conclude from the severity of an accident or other circumstances that a substantial chance of litigation exists, a duty to preserve evidence arises. | When a reasonable person would conclude from the severity of an accident or other circumstances that a substantial chance of litigation exists, a duty to preserve evidence arises. | "When a reasonable person would conclude from the severity of an accident or other circumstances that a substantial chance of litigation exists, does a duty to preserve evidence arise?" |
| 2951 | US-1 Van Lines of Georgia, Inc. v. Ho, 240 Ga. App. 417, 418, 523 S.E.2d 643, 645 (1999) | 2 | A trial court's denial of a continuance is proper when the defendant negligently fails to employ counsel promptly or where it appears the defendant is using the tactic for delay. | A trial court's denial of a continuance is proper when the defendant negligently fails to employ counsel promptly or where it appears the defendant is using the tactic for delay. | Is a trial court's denial of a continuance proper when the defendant negligently fails to employ counsel promptly or where it appears the defendant is using the tactic for delay? |
| 2961 | In re Posadas USA, Inc., 100 S.W.3d 254, 258 (Tex.App. 2001) | 13 | When an attorney is permitted to withdraw, the trial court must give the party time to secure new counsel and time for new counsel to investigate the case and prepare for trial. | When an attorney is permitted to withdraw, the trial court must give the party time to secure new counsel and time for new counsel to investigate the case and prepare for trial. | "When an attorney is permitted to withdraw, must the trial court give the party time to secure new counsel and time for new counsel to investigate the case and prepare for trial?" |

| 2962 | Computize, Inc. v. NHS Communications Group, Inc., 992 S.W.2d 608, 613 (Tex.App.-Texarkana, 1999) | 8 | When a trial court allows an attorney to voluntarily withdraw, it must give the party time to secure new counsel and time for the new counsel to investigate the case and prepare for trial. | When a trial court allows an attorney to voluntarily withdraw, it must give the party time to secure new counsel and time for the new counsel to investigate the case and prepare for trial. | "When an attorney is permitted to withdraw, must the trial court give the party time to secure new counsel and time for new counsel to investigate the case and prepare for trial?" |
|---|---|---|---|---|---|
| 2987 | State Highway Comm'n v. Stadler, 158 Kan. 289, 148 P.2d 296, 296 (1944) | 6 | Under statute providing that person causing injury to highway or highway structure shall be responsible for all damage which the highway or structure may sustain as result of conduct prohibited by the statute, the proper measure of damages for destruction of highway or highway structure is actual amount it would take to replace the highway or highway structure at time it was destroyed. Gen.St.Supp.1943, 8-5,124. | Under statute providing that person causing injury to highway or highway structure shall be responsible for all damage which the highway or structure may sustain as result of conduct prohibited by the statute, the proper measure of damages for destruction of highway or highway structure is actual amount it would take to replace the highway or highway structure at time it was destroyed. Gen.St.Supp. 1943, 8–5,124. | Would a person causing damage to the highway be held liable? |
| 3003 | Poorman v. D.O. Mills & Co., 39 Cal. 345, 350 (1870) | 1 | The words written in the body of a certificate, bill, or note, when plain, definite, and certain, must control, without regard to the superscription in figures. | The words written in the body of a certificate, bill or note, when plain, definite and certain, must control, without regard to the superscription in figures. | Do the words written in the body of a certificate bill or note when plain definite and certain must control without regard the superscription in figures? |
| 3037 | First Horizon Merchant Services, Inc. v. Wellspring Capital Management, LLC, 166 P.3d 166, 179 (Colo.App., 2007) | 39 | Where a plaintiff has failed to present facts that show how personal jurisdiction might be established if discovery were permitted, it is not an abuse of discretion to deny discovery on the issue. | Where a plaintiff has failed to present facts that show how personal jurisdiction might be established if discovery were permitted, it is not an abuse of discretion to deny discovery on the issue. | "Where a plaintiff has failed to present facts that show how personal jurisdiction might be established if discovery were permitted, is it not an abuse of discretion to deny discovery on the issue?" |
| 3053 | In re Risk Level Determination of J.V., 741 N.W.2d 612, 614–15 (Minn.App.,2007) | 7 | If a party lacks the requisite personal interest and the court is unable to grant "effectual relief," the issue raised is deemed to be moot and may be dismissed. | If a party lacks the requisite personal interest and the court is unable to grant "effectual relief," the issue *615 raised is deemed to be moot and may be dismissed. | Is the issue raised deemed to be moot if a party lacks the requisite personal interest and the court is unable to grant effectual relief? |
| 3056 | Cole v. Carnahan, 272 S.W.3d 392, 395 (Mo.App. W.D.,2008) | 6 | A case is moot and generally should be dismissed if a judgment rendered has no practical effect upon an existing controversy or when an event occurs that makes a court's decision unnecessary or makes granting effectual relief by the court impossible. | A case is moot and generally should be dismissed if a judgment rendered has no practical effect upon an existing controversy or when an event occurs that makes a court's decision unnecessary or makes granting effectual relief by the court impossible. | Will a case be moot if a judgment rendered has no practical effect upon an existing controversy? |
| 3063 | In re Campbell's Est., 195 Misc. 520, 521, 89 N.Y.S.2d 310, 312 (Sur. 1949) | 2 | Pension payments must be made and accepted in exact conformity with the terms of grant and subject to all the limitations, conditions, and exceptions therein contained. | Pension payments must be made and accepted in exact conformity with the terms of the grant, and subject to all of the limitations, conditions and exceptions therein contained. | "Must pension payments be made and accepted in exact conformity with the terms of the grant and be subject to all the limitations, conditions, and exceptions therein contained?" |

| 3081 | England v. Baird, 772 So.2d 905, 908, 1999-2093 La.App. 1 Cir. 11/3/00, 5 (La.App. 1 Cir.,2000) | 5 | A dismissal for failure to prosecute constitutes error if the trial court has not considered a broad range of less severe alternatives prior to entering dismissal. | A dismissal for failure to prosecute constitutes error if the trial court has not considered a broad range of less severe alternatives prior to entering dismissal. | Does a dismissal for failure to prosecute constitute error if the trial court has not considered a broad range of less severe alternatives prior to entering dismissal? |
|---|---|---|---|---|---|
| 3085 | The Florida Bar v. Greene, 926 So. 2d 1195, 1199 (Fla., 2006) | 1 | A motion to dismiss is designed to test the legal sufficiency of the complaint, not to determine factual issues, and the allegations of the complaint must be taken as true and all reasonable inferences therefrom construed in favor of the nonmoving party. | A motion to dismiss is designed to test the legal sufficiency of the complaint, not to determine factual issues, and the allegations of the complaint must be taken as true and all reasonable inferences therefrom construed in favor of the nonmoving party. | Is the purpose of a motion to dismiss is to test the legal sufficiency of a complaint and not to determine factual issues? |
| 3138 | Ex parte Kohlberg Kravis Roberts & Co., L.P., 78 So.3d 959, 966 (Ala., 2011) | 5 | When a defendant files a motion to dismiss for lack of personal jurisdiction and supports that motion with an affidavit, the plaintiff is then required to controvert that affidavit with his or her own affidavit or other competent evidence to survive the motion to dismiss. | When a defendant files a motion to dismiss for lack of personal jurisdiction and supports that motion with an affidavit, the plaintiff is then required to controvert that affidavit with his or her own affidavit or other competent evidence to survive the motion to dismiss. | "When a defendant files a motion to dismiss for lack of personal jurisdiction and supports that motion with an affidavit, is the plaintiff then required to controvert that affidavit with his or her own affidavit or other competent evidence to survive the motion to dismiss?" |
| 3140 | Obenschain v. Williams, 750 So.2d 771, 772–73 (Fla.App. 1 Dist.,2000) | 1 | Dismissal of a complaint with prejudice is a severe sanction which should be granted only when the pleader has failed to state a cause of action, and it conclusively appears that there is no possible way to amend the complaint to state a cause of action. | Dismissal of a complaint with prejudice is a severe sanction which should be granted only when the pleader has failed to state a cause of action, and it *773 conclusively appears that there is no possible way to amend the complaint to state a cause of action. | "Is dismissal with prejudice a severe sanction, which should be granted only when the pleader has failed to state a cause of action and it conclusively appears that the pleader cannot possibly amend?" |
| 3142 | Nw. Energetic Servs., LLC v. California Franchise Tax Bd., 159 Cal. App. 4th 841, 858, 71 Cal. Rptr. 3d 642, 654 (2008), as modified on denial of reh'g (Mar. 3, 2008) | 4 | To show a fee is a regulatory fee and not a special tax, the government should prove (1) the estimated costs of the service or regulatory activity, and (2) the basis for determining the manner in which the costs are apportioned, so that charges allocated to a payor bear a fair or reasonable relationship to the payor's burdens on or benefits from the regulatory activity. | [T]o show a fee is a regulatory fee and not a special tax, the government should prove (1) the estimated costs of the service or regulatory activity, and (2) the basis for determining the manner in which the costs are apportioned, so that charges allocated to a payor bear a fair or reasonable relationship to the payor's burdens on or benefits from the regulatory activity. | What does the government have to prove in order to show a fee is a regulatory fee and not a special tax? |
| 3154 | Gass v. Anna Hosp. Corp., 392 Ill. App. 3d 179, 185 (2009) | 10 | Stock ownership alone in one corporation by another neither creates an identity of corporate interest between the two companies nor renders the stockholding company the owner of the property of the other nor creates the relation of principal and agent, representative, or alter ego between the two. | Stock ownership alone in one corporation by another neither creates an identity of corporate interest between the two companies nor renders the stockholding company the owner of the property of the other nor creates the relation of principal and agent, representative, or alter ego between the two. | "Can stock ownership in one corporation by another, create an identity of interest?" |

| 3168 | Chu v. Jones, 151 A.D.3d 1341, 1342, 58 N.Y.S.3d 184, 185 (2017) | 1 | Administrative decisions of educational institutions involve the exercise of highly specialized professional judgment and these institutions are, for the most part, better suited than courts to make relatively final decisions concerning wholly internal matters. | [A]dministrative decisions of educational institutions involve the exercise of highly specialized professional judgment and these institutions are, for the most part, better suited than courts to make relatively final decisions concerning wholly internal matters | Are educational institutions better suited than courts to make final decisions concerning internal matters? |
|---|---|---|---|---|---|
| 3172 | K.R. Exchange Services, Inc. v. Fuerst, Humphrey, Ittleman, PL, 48 So.3d 889, 895–96 (Fla. App. 3 Dist., 2010) | 11 | In most circumstances, the trial court's dismissal of a complaint for failure to state a cause of action should be without prejudice to the plaintiff's amendment to the complaint to cure the deficiencies. | In most circumstances, the trial court's dismissal of a complaint for failure to state a cause of action should be without prejudice to the plaintiff's amendment to the complaint to cure the deficiencies. | "In most circumstances, should the trial court's dismissal of a complaint for failure to state a cause of action be without prejudice to the plaintiff's amendment of the complaint to cure the deficiencies?" |
| 3178 | Lewandowski v. Nuclear Mgt., 272 Mich.App. 120, 126–27 (Mich.App.,2006) | 10 | Leave to amend the pleadings should be freely granted to the nonprevailing party upon a grant of summary disposition unless the amendment would be futile or otherwise unjustified. | Leave to amend the pleadings should be freely granted to the nonprevailing **723 party upon a grant of summary disposition unless the amendment would be futile or *127 otherwise unjustified. | Should leave to amend the pleadings be freely granted to the nonprevailing party upon a grant of summary disposition unless the amendment would be futile or otherwise unjustified? |
| 3179 | Dominion of Canada v. State Farm Fire and Cas. Co., 754 So.2d 852, 857 (Fla.App. 2 Dist.,2000) | 13 | When a complaint appears amenable to amendment to state a proper cause of action, it should not be dismissed with prejudice without first affording the plaintiff an opportunity to amend. | When a complaint appears amenable to amendment to state a proper cause of action, it should not be dismissed with prejudice without first affording the plaintiff an opportunity to amend. | "When a complaint appears amenable to amendment to state a proper cause of action, should it not be dismissed with prejudice without first affording the plaintiff an opportunity to amend?" |
| 3199 | Com. v. Riley, 7 N.E.3d 1060, 1079, 467 Mass. 799, 821–22 (Mass.,2014) | 15 | To prove malice, the Commonwealth must prove one of three prongs: (1) intent to kill the victim; (2) intent to cause grievous bodily harm to the victim; or (3) commission of an act that, in the circumstances known to the defendant, a reasonable person would have known created a plain and strong likelihood of death. | To prove malice, the Commonwealth must prove one of three prongs: (1) intent to kill the victim; (2) intent to cause grievous bodily harm to the victim; or (3) commission of an act that, in the circumstances known to the defendant, a reasonable person would have known created a plain and strong likelihood of death. | What are the prongs used to prove malice? |
| 3246 | Scott v. State, 107 Ohio St. 475, 476 (Ohio 1923) | 4 | Upon an indictment for bribery, the state must establish beyond a reasonable doubt the guilt of the defendant of the crime charged and every material allegation of the indictment, including criminal intent. | Upon an indictment for bribery, the state must establish beyond a reasonable doubt the guilt of the defendant of the crime charged and every material allegation of the indictment, including criminal intent. | "Upon an indictment for bribery, should the state establish beyond a reasonable doubt the defendants criminal intent? " |

| 3309 | Garrity v. Rural Mut. Ins. Co., 77 Wis.2d 537, 541 (1977) | 3 | Subrogation rests upon the equitable principle that one, other than a volunteer, who pays for the wrong of another should be permitted to look to the wrongdoer to the extent he has paid and be subject to the defenses of the wrongdoer. | Subrogation rests upon the equitable principle that one, other than a volunteer, who pays for the wrong of another should be permitted to look to the wrongdoer to the extent he has paid and be subject to the defenses of the wrongdoer. | "Should equity generally grant that one, other than a volunteer, who pays for the wrong of another should be permitted to look to the wrongdoer to the extent he or she has paid, and be subject to the defenses of the wrongdoer?" |
|---|---|---|---|---|---|
| 3344 | Agnew v. Shaw, 355 Ill.App.3d 981, 990 (Ill.App. 1 Dist.,2005) | 5 | Motions in limine are addressed to the trial court's inherent power to admit or exclude evidence; generally, a reviewing court will not disturb the trial court's ruling on motions in limine absent an abuse of discretion, so long as the trial court exercises its discretion within the bounds of the law. | Motions in limine are addressed to the trial court's inherent power to admit or exclude evidence; generally, a reviewing court will not disturb the trial court's ruling on motions in limine absent an abuse of discretion, so long as the trial court exercises its discretion within the bounds of the law. | What inherent power of the trial court are motions in limine addressed to? |
| 3385 | Van Welden v. Ramsay's Inc., 199 Kan. 417, 421, 430 P.2d 298, 302 (1967) | 4 | It is the responsibility of both trial judge and counsel to see that a proper record is made of a pretrial conference and the results properly noted by judgment or order. | It is the responsibility of both trial judge and counsel to see that a proper record is made of a pretrial conference and the results properly noted by judgment or order. | Is it the responsibility of both a trial judge and counsel to see that a proper record is made of a pre-trial conference and the results properly noted by judgment or order? |
| 3416 | Wilson v. McHugh, 842 F. Supp. 2d 310, 318 (D.D.C. 2012) | 9 | A party alleging that an armed services member's facially valid resignation was in fact the product of unlawful duress must prove three elements: (1) one side involuntarily accepted the terms of another; (2) the circumstances permitted no other alternative; and (3) the circumstances were the result of coercive acts of the opposite party. | [A] party alleging that a facially valid resignation was in fact the product of unlawful duress must prove three elements: (1) one side involuntarily accepted the terms of another; (2) the circumstances permitted no other alternative; and (3) the circumstances were the result of coercive acts of the opposite party. | What is the test for whether a resignation is a product of duress? |
| 3425 | Tran v. Nguyen, 480 S.W.3d 119, 124-125 (Tex.App.-Hous. (14 Dist.), 2015) | 5 | In civil cases in which the absence of counsel has been urged as a ground for continuance, courts generally require a showing that the failure to be represented at trial was not due to the party's own fault or negligence. | In civil cases in which the absence of counsel has been urged as a ground for continuance, courts generally require a showing that the failure to be represented at trial was not due to the party's own *125 fault or negligence. | Do courts generally require a showing that the failure to be represented at trial was not due to the party's own fault or negligence? |
| 3466 | Tenet Healthcare Corp. v. Louisiana Forum Corp., 273 Ga. 206, 210 (2000) | 10 | Through the discovery process, non-privileged information which is in the possession of one party and which gives that party a tactical advantage may be required to be shared with the opposing side. | Through the discovery process, non-privileged information which is in the possession of one party and which gives that party a tactical advantage may be required to be shared with the opposing side. | "Through the discovery process, can non-privileged information which is in the possession of one party and which gives that party a tactical advantage be required to be shared with the opposing side?" |

| 3488 | In re Automobile Antitrust Cases I & II, 135 Cal.App.4th 100, 127 (2005) | 52 | A plaintiff attempting to assert jurisdiction over a nonresident defendant is entitled to an opportunity to conduct discovery of the jurisdictional facts necessary to sustain its burden of proof. | A plaintiff attempting to assert jurisdiction over a nonresident defendant is entitled to an opportunity to conduct discovery of the jurisdictional facts necessary to sustain its burden of proof. | Is a plaintiff attempting to assert jurisdiction over a non-resident defendant entitled to an opportunity to conduct discovery of the jurisdictional facts necessary to sustain its burden of proof? |
|---|---|---|---|---|---|
| 3520 | Wenwei Sun v. Aviles, 53 So. 3d 1075, 1076 (Fla. Dist. Ct. App. 2010) | 2 | Although trial courts have the inherent authority to dismiss actions based on fraud and collusion, that power should be used cautiously and sparingly, and only upon the most blatant showing of fraud, pretense, collusion, or other similar wrong doing. | Although trial courts have the inherent authority to dismiss actions based on fraud and collusion, that power should be used "cautiously and sparingly," and only upon the most blatant showing of fraud, pretense, collusion, or other similar wrong doing. | Should a trial court's authority to dismiss a lawsuit based on fraud on the court be used cautiously and sparingly? |
| 3573 | Draper v. Medical Center of Delaware, 767 A.2d 796, 799 (Del.Supr.,2001) | 7 | Litigants, whether represented by counsel or appearing pro se, must diligently prepare their cases for trial or risk dismissal for failure to prosecute. | Litigants, whether represented by counsel or appearing pro se, must diligently prepare their cases for trial or risk dismissal for failure to prosecute. | "Should litigants, whether represented by counsel or appearing pro se, diligently prepare their cases for trial or risk dismissal for failure to prosecute?" |
| 3581 | Green Tree Servicing, LLC v. Chicago Title Insurance Company, 499 S.W.3d 771, 774 (Mo. App. 2016) | 2 | A motion to dismiss for failure to state a cause of action is solely a test of the adequacy of plaintiff's petition; it assumes that all of plaintiff's averments are true, and liberally grants to plaintiff all reasonable inferences therefrom. | A motion to dismiss for failure to state a cause of action is solely a test of the adequacy of plaintiff's petition; it assumes that all of plaintiff's averments are true, and liberally grants to plaintiff all reasonable inferences therefrom. | Does a motion to dismiss for failure to state a cause of action assume that all of a plaintiff's averments are true? |
| 3606 | U.S. Project Mgmt. v. Parc Royale E. Dev., 861 So. 2d 74, 76 (Fla.App. 4 Dist., 2003) | 1 | To rule on a motion to dismiss, a court's gaze is limited to the four corners of the complaint, including the attachments incorporated in it, and all well pleaded allegations are taken as true. | To rule on a motion to dismiss, a court's gaze is limited to the four corners of the complaint, including the attachments incorporated in it, and all well pleaded allegations are taken as true. | "To rule on a motion to dismiss, is a court's gaze limited to the four corners of the complaint, including the attachments incorporated in it?" |
| 3629 | Tolliver ex rel. Wrongful Death Beneficiaries of Green v. Mladineo, 987 So. 2d 989, 997 (Miss.App., 2007) | 13 | A trial court's order of dismissal with prejudice is an extreme and harsh sanction that deprives a litigant of the opportunity to pursue his claim, and any dismissals with prejudice are reserved for the most egregious cases. | A trial court's order of dismissal with prejudice is an extreme and harsh sanction that deprives a litigant of the opportunity to pursue his claim, and any dismissals with prejudice are reserved for the most egregious cases. | Is a trial court's order of dismissal with prejudice an extreme and harsh sanction that deprives a litigant of the opportunity to pursue his claim? |
| 3693 | Khaykin v. Adelphi Acad. of Brooklyn, 124 A.D.3d 781, 782, 1 N.Y.S.3d 356, 357 (2015) | 2 | Judicial review of the actions of a private school in disciplinary matters is limited to a determination as to whether the school acted arbitrarily and capriciously or whether it substantially complied with its own rules and regulations. | Judicial review of the actions of a private school in disciplinary matters is limited to a determination as to whether the school acted arbitrarily and capriciously or whether it substantially complied with its own rules and regulations | Is Judicial Review of private school disciplinary matters limited to a determination as to whether the school acted arbitrarily and capriciously? |

| | | | | | |
|---|---|---|---|---|---|
| 3716 | Lamprey v. Britton Const., Inc., 163 N.H. 252, 261 (N.H., 2012) | 21 | Plaintiffs must be given leave to amend their writs to correct perceived deficiencies before a dismissal for failure to state a claim has preclusive effect. | Plaintiffs must be given leave to amend their writs to correct perceived deficiencies before a dismissal for failure to state a claim has preclusive effect. | Should plaintiffs be given leave to amend their writs to correct perceived deficiencies before a dismissal for failure to state a claim has preclusive effect? |
| 3745 | State Farm Fire & Cas. Co. v. Broan Mfg. Co., 523 F. Supp. 2d 992, 995 (W.Va., 2002) | 2 | Arizona law imposes upon litigants a duty to preserve evidence which they know or should know is relevant in the action or is reasonably likely to be requested during discovery. | Arizona law imposes upon litigants a duty to preserve evidence which they know or should know is relevant in the action or is reasonably likely to be requested during discovery. | Does the law impose upon litigants a duty to preserve evidence which they know or should know is relevant in the action or is reasonably likely to be requested during discovery? |
| 3747 | SMM Properties, Inc. v. City of North Lauderdale, 760 So.2d 998, 1001 (Fla.App. 4 Dist.,2000) | 1 | A special assessment must satisfy a two-prong test in order to be considered a valid special assessment rather than a tax: (1) the services at issue must provide a special benefit to assessed property, and (2) the assessment must be properly apportioned. | A special assessment must satisfy a two-prong test in order to be considered a valid special assessment rather than a tax: (1) the services at issue must provide a special benefit to assessed property, and (2) the assessment must be properly apportioned. | What is the two-prong test a special assessment must satisfy in order to be considered a valid special assessment rather than a tax? |
| 3760 | Doe v. Amherst College, 238 F.Supp.3d 195, 215 (D.Mass., 2017) | 6 | Under Massachusetts law, courts apply the standard of reasonable expectation when considering a breach of contract claim brought against a private school by a student or former student. | Under Massachusetts law, courts apply the standard of reasonable expectation when considering a breach of contract claim brought against a private school by a student or former student. | Do courts apply the standard of reasonable expectation when considering a breach of contract claim brought against a private school by a student? |
| 3766 | Pulte Home Corp. v. Parex, Inc., 174 Md. App. 681, 743 (Md. App., 2007) | 42 | The elements of legal subrogation are: (1) the existence of a debt or obligation for which a party, other than the subrogee, is primarily liable, which (2) the subrogee, who is neither a volunteer nor an intermeddler, pays or discharges in order to protect his own rights or interests. | The elements of legal subrogation are: (1) the existence of a debt or obligation for which a party, other than the subrogee, is primarily liable, which (2) the subrogee, who is neither a volunteer nor an intermeddler, pays or discharges in order to protect his own rights or interests. | "Does the element of legal subrogation include the existence of a debt or obligation for which a party, other than the subrogee, is primarily liable?" |
| 3781 | People v. Wooten, 44 Cal. App. 4th 1834, 1848–49, 52 Cal. Rptr. 2d 765 (1996) | 19 | In effect, claim of right defense provides that, if defendant takes property in good faith belief that it belongs to him, defendant lacks intent necessary to commit embezzlement. | In effect, the claim of right defense provides that, if a defendant takes property in the good faith belief that it belongs to him, the defendant lacks the intent necessary to commit embezzlement. | "If a person takes property in the good faith belief that it belongs to him, does the person lacks the intent necessary to commit embezzlement?" |
| 3800 | Southern Farm Bureau Cas. Ins. Co. v. Tallant, 362 Ark. 17, 23 (2005) | 3 | A right in equity to subrogation may arise by convention, or in other words, by way of a subrogation provision in a contract; however, it may also arise as legal or equitable subrogation, or in other words by operation of law based on facts giving rise to a right of subrogation. | A right in equity to subrogation may arise by convention, or in other words, by way of a subrogation provision in a contract; however, it may also arise as legal or equitable subrogation, or in other words by operation of law based on facts giving rise to a right of subrogation. | Does legal or equitable subrogation arise by operation of law based on the facts or underlying circumstances of the case? |

| | | | | | |
|---|---|---|---|---|---|
| 3804 | Home Ins. Co. v. Cincinnati Ins. Co., 213 Ill. 2d 307, 316 (2004) | 7 | In contrast to contribution, subrogation and indemnification are devices for placing the entire burden for a loss on the party ultimately liable or responsible for it and by whom it should have been discharged. | In contrast to contribution, subrogation and indemnification are devices for placing the entire burden for a loss on the party ultimately liable or responsible for it and by whom it should have been discharged. | "In contrast to contribution, are subrogation and indemnification devices for placing the entire burden for a loss on the party ultimately liable or responsible for it and by whom it should have been discharged?" |
| 3817 | Foster v. Klaumann, 42 Kan. App. 2d 634, 681 (2009) | 27 | When a party alleges that an order in limine has been violated, the trial court must determine (1) whether the order has been violated and, if so, (2) whether the party alleging the violation has established substantial prejudice resulting from that violation. | When a party alleges that an order in limine has been violated, the trial court must determine (1) whether the order has been violated and, if so, (2) whether the party alleging the violation has established substantial prejudice resulting from that violation. | "When a party alleges that an order in limine has been violated, must the trial court determine whether the order has been violated and whether the party alleging the violation has established substantial prejudice resulting from that violation?" |
| 3818 | Compton v. Ubilluz, 819 N.E.2d 767, 776, 289 Ill.Dec. 271, 280, 353 Ill.App.3d 863, 871 (Ill.App. 2 Dist.,2004) | 14 | A motion in limine permits a party to obtain an order excluding inadmissible evidence and prohibiting comment concerning such evidence during closing argument. | A motion in limine permits a party to obtain an order excluding inadmissible evidence and prohibiting comment concerning such evidence during closing argument. | Does a motion in limine permit a party to obtain an order excluding inadmissible evidence and prohibiting comment concerning such evidence during closing argument? |
| 3819 | In re Reliable Mfg. Corp., 17 B.R. 899, 903 (D.C.Ill. 1981) | 4 | Once the guarantor pays a creditor, he steps into the shoes of the debtor whose debt he has paid and acquires that debtor's rights with respect to the obligation he has satisfied; this is the equitable doctrine of subrogation. | Once the guarantor pays a creditor, he steps into the shoes of the debtor whose debt he has paid and acquires that debtor's rights with respect to the obligation he has satisfied. This is the equitable doctrine of subrogation. | "Once the guarantor pays a creditor, does he step into the shoes of the debtor whose debt he has paid and acquire that debtor's rights with respect to the obligation he has satisfied?" |
| 3829 | Lizarbe v. Rondon, 642 F.Supp.2d 473, 487 (D.Md., 2009) | 19 | The act of state doctrine prevents courts from adjudicating a dispute if the matter involves assessing official actions of a foreign sovereign. | The act of state doctrine prevents courts from adjudicating a dispute if the matter involves assessing official actions of a foreign sovereign. | Does the act of state doctrine prevent courts from adjudicating a dispute if the matter involves assessing official actions of a foreign sovereign? |
| 3831 | Peterson v. Royal Kingdom of Saudi Arabia, 332 F.Supp.2d 189, 201 (D.D.C.,2004) | 36 | The act of state doctrine permits courts to avoid passing judgment on foreign sovereigns in order to preserve comity between nations. | The act of state doctrine permits courts to avoid passing judgment on foreign sovereigns in order to preserve comity between nations. | Does the act of state doctrine permit courts to avoid passing judgment on foreign sovereigns in order to preserve comity between nations? |
| 3838 | Schaefer v. Kumar, 804 N.E.2d 184, 188 (Ind. Ct. App. 2004) | 9 | The purpose of a motion in limine is to prevent the display of potentially prejudicial material to the jury until the trial court has the opportunity to rule on its admissibility. | The purpose of a motion in limine is to prevent the display of potentially prejudicial material to the jury until the trial court has the opportunity to rule on its admissibility. | Is the purpose of a motion in limine to prevent the display of potentially prejudicial material to the jury until the trial court has the opportunity to rule on its admissibility? |
| 3870 | City of Quincy v. Diamond Const. Co., 762 N.E.2d 710, 714, 261 Ill.Dec. 141, 145, 327 Ill.App.3d 338, 342–43 (Ill.App. 4 Dist.,2002) | 2 | A trial court has broad discretion to grant or deny a motion in limine as part of its inherent power to admit or exclude evidence. | A trial court has broad discretion to grant or deny a motion in limine as part of its inherent power to admit or exclude evidence. | Does a trial court have broad discretion to grant or deny a motion in limine as part of its inherent power to admit or exclude evidence? |

| | | | | | |
|---|---|---|---|---|---|
| 3927 | In re HEB Grocery Co., L.P., 375 S.W.3d 497, 500 (Tex. App. 2012) | 6 | Discovery orders requiring document production from an unreasonably long time period or from distant and unrelated locales are impermissibly overbroad. | Discovery orders requiring document production from an unreasonably long time period or from distant and unrelated locales are impermissibly overbroad. | Are discovery orders requiring document production from an unreasonably long time period or from distant and unrelated locales impermissibly overbroad? |
| 3933 | Clark v. Randalls Food, 317 S.W.3d 351, 357 (Tex.App.-Hous. (1 Dist.), 2010) | 10 | A party must preserve what it knows, or reasonably should know is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery, or is the subject of a pending discovery sanction. | A party must preserve what it knows, or reasonably should know is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery, or is the subject of a pending discovery sanction. | "Should a party preserve what it knows, or reasonably should know is relevant in the action, which is reasonably calculated to lead to the discovery of admissible evidence?" |
| 3939 | Fada Indus. v. Falchi Bldg. Co., L.P., 189 Misc. 2d 1, 3 (Sup. Ct. 2001) | 35 | Where a party is on notice that litigation is likely to be commenced, the obligation to preserve evidence may even arise prior to the filing of a complaint. | Where a party is on notice that litigation is likely to be commenced, the obligation to preserve evidence may even arise prior to the filing of a complaint. | "Where a party is on notice that litigation is likely to be commenced, may the obligation to preserve evidence even arise prior to the filing of a complaint?" |
| 3941 | James v. Calkins, 446 S.W.3d 135, 143–44 (Tex. App. 2014) | 10 | Whether a particular sanction is considered a claim for affirmative relief that survives a nonsuit for later enforcement or appeal depends on the purpose of the sanction. | Whether a particular sanction is considered a claim for affirmative relief *144 that survives a nonsuit for later enforcement or appeal depends on the purpose of the sanction. | Is the question of whether a particular sanction considered a claim for affirmative relief that survives a nonsuit for later enforcement or appeal depends on the purpose of the sanction? |
| 3995 | Wells v. Salyer, 452 S.W.2d 392, 395–96 (Ky. 1970) | 8 | Generally, when absent counsel has never entered an appearance of record and other competent counsel is present, there is no abuse of discretion in refusing to grant a continuance. | Generally, when absent counsel has never entered an appearance of record and other competent counsel is present, there is no abuse of discretion in refusing to grant a continuance. | "Generally, when absent counsel has never entered an appearance of record and other competent counsel is present, there is no abuse of discretion in refusing to grant a continuance?" |
| 4005 | Resurgence Financial, LLC v. Taylor, 295 S.W.3d 429, 433 (Tex. App. 2009) | 7 | Once admissions are deemed admitted by operation of law and fully support each element of a cause of action, including damages, they will fully support a judgment thereon. | Once admissions are deemed admitted by operation of law and fully support each element of a cause of action, including damages, they will fully support a judgment thereon. | "Once admissions are deemed admitted by operation of law and fully support each element of a cause of action, including damages, will they fully support a judgment thereon?" |
| 4017 | Tran v. Nguyen, 480 S.W.3d 119, 124-125 (Tex.App.-Hous. (14 Dist.), 2015) | 5 | In civil cases in which the absence of counsel has been urged as a ground for continuance, courts generally require a showing that the failure to be represented at trial was not due to the party's own fault or negligence. | In civil cases in which the absence of counsel has been urged as a ground for continuance, courts generally require a showing that the failure to be represented at trial was not due to the party's own *125 fault or negligence. | "When the ground for continuance is the withdrawal of counsel, should the movants show that the failure to be represented at trial was not due to their own fault or negligence?" |
| 4029 | Walker v. Aulds, 28,968 (La. App. 2 Cir. 12/11/96), 685 So. 2d 421, 423 | 4 | Generally, litigant whose lawyer withdraws at or near trial may be entitled to continuance to employ another attorney, but inability to obtain counsel does not entitle party to indefinite continuances. | Generally, a litigant whose lawyer withdraws at or near trial may be entitled to a continuance to employ another attorney. However, a party is not entitled to indefinite continuances simply because he is unable to obtain counsel. | Will a litigant whose lawyer withdraws at or near trial be entitled to continuation to employ another attorney? |

| | | | | | |
|---|---|---|---|---|---|
| 4039 | Cochran v. Mullinax, 622 S.E.2d 455, 458, 276 Ga.App. 81, 84 (Ga.App.,2005) | 1 | It generally is recognized that, unless pretrial order is modified at or before trial, a party may not advance theories or offer evidence that violate the terms of the pretrial order; once entered, the pretrial order controls the subsequent course of the action unless modified at the trial to prevent manifest injustice. | It generally is recognized that, unless the pretrial order is modified at or before trial, a party may not advance theories or offer evidence that violate the terms of the pretrial order. Once entered, the pretrial order controls the subsequent course of the action unless modified at the trial to prevent manifest injustice. | "Where a pre-trial order defining the issues was not modified either before or during the trial, does the order control the course of the trial?" |
| 4076 | FutureSelect Portfolio Mgmt. v. Tremont Grp. Holdings, 175 Wash. App. 840, 885–86 (2013) | 31 | The plaintiff has the burden of demonstrating jurisdiction, but when a motion to dismiss for lack of personal jurisdiction is resolved without an evidentiary hearing, only a prima facie showing of jurisdiction is required. | The plaintiff has the burden of demonstrating jurisdiction, but when a motion to dismiss for lack *886 of personal jurisdiction is resolved without an evidentiary hearing " 'only a prima facie showing of jurisdiction is required.' " | "When a motion to dismiss for lack of personal jurisdiction is resolved without an evidentiary hearing, is only a prima facie showing of jurisdiction required?" |
| 4077 | Eoff v. Central Mutual Insurance Company, 461 S.W.3d 648, 653 (Tex.App.-Dallas, 2015) | 6 | Until the claimant has exhausted applicable administrative remedies, the trial court lacks subject matter jurisdiction and must dismiss the claims within the agency's exclusive jurisdiction. | Until the claimant has exhausted applicable administrative remedies, the trial court lacks subject matter jurisdiction and must dismiss the claims within the agency's exclusive jurisdiction. | Does the trial court lack subject matter jurisdiction until the claimant has exhausted applicable administrative remedies? |
| 4083 | U.S. v. 4,432 Mastercases of Cigarettes, More Or Less, 448 F.3d 1168, 1185 (C.A.9 (Cal.), 2006) | 19 | An excise tax, because it is based on a particular transaction or activity, can be imposed only once per act, whereas an ad valorem property tax can be imposed annually, as is typical of property taxes. | An excise tax, because it is based on a particular transaction or activity, can be imposed only once per act, whereas an ad valorem property tax can be imposed annually, as is typical of property taxes. | "Can an excise tax, because it is based on a particular transaction or activity, be imposed only once per act, whereas an ad valorem property tax be imposed annually, as is typical of property taxes?" |
| 4086 | Lujan v. Alorica, 445 S.W.3d 443, 447 (Tex. App. 2014) | 1 | The proper procedural mechanism for enforcing a valid forum-selection clause that a party to the agreement has violated in filing suit is a motion to dismiss. | The proper procedural mechanism for enforcing a valid forum-selection clause that a party to the agreement has violated in filing suit is a motion to dismiss. | Is the proper procedural mechanism for enforcing a valid forum-selection clause that a party to the agreement has violated in filing suit a motion to dismiss? |
| 4093 | Curley v. Kaiser, 962 A.2d 167, 176, 112 Conn.App. 213, 229–30 (Conn.App.,2009) | 10 | Mootness is a threshold issue that implicates subject-matter jurisdiction, which imposes a duty on the court to dismiss a case if the court can no longer grant practical relief to the parties. | Mootness is a threshold issue that implicates subject matter jurisdiction, which imposes a duty on the court to dismiss a case if the court can no longer grant practical relief to the parties | Is mootness a threshold issue which imposes a duty of a court to dismiss a case if the court can no longer grant practical relief to the parties? |
| 4119 | Iacurci v. Wells, 108 Conn.App. 274, 276 (2008) | 1 | Mootness is a threshold issue that implicates subject matter jurisdiction, which imposes a duty on the court to dismiss a case if the court can no longer grant practical relief to the parties. | Mootness is a threshold issue that implicates subject matter jurisdiction, which imposes a duty on the court to dismiss a case if the court can no longer grant practical relief to the parties | Does mootness impose a duty on the court to dismiss a case if the court can no longer grant practical relief to the parties? |

| | | | | | |
|---|---|---|---|---|---|
| 4125 | Kinder v. Nixon, 2000 WL 684860, at *5 (Mo.App. W.D., 2000) | 9 | When an intervenient event occurs which makes a court's decision unnecessary or granting effectual relief impossible, the case is moot and generally should be dismissed. | When an intervenient event occurs which makes a court's decision unnecessary or granting effectual relief impossible, the case is moot and generally should be dismissed. | Will a case be moot when an intervenient event occurs which makes a court's decision unnecessary or granting effectual relief impossible? |
| 4147 | In re Bledsoe, 41 S.W.3d 807, 813 (Tex.App. 2001) | 13 | Death penalty sanctions cannot be used to adjudicate the merits of a party's claims or defenses unless the party's conduct justifies a presumption that its claims or defenses lack merit. | Death penalty sanctions cannot be used to adjudicate the merits of a party's claims or defenses unless the party's conduct justifies a presumption that its claims or defenses lack merit. | Can death penalty sanctions be used to adjudicate the merits of a party's claims or defenses unless the party's conduct justifies a presumption that its claims or defenses lack merit? |
| 4196 | Palumbo v. Moore, 777 So.2d 1177, 1178 (Fla. App. 5 Dist., 2001) | 4 | A motion to dismiss for failure to state a cause of action admits all well pleaded facts as true, as well as reasonable inferences that may arise from those facts. | A motion to dismiss for failure to state a cause of action admits all well pleaded facts as true, as well as reasonable inferences that may arise from those facts. | "Should the party moving for dismissal for failure to state a cause of action admit all well pleaded facts as true, as well as reasonable inferences that can arise from those facts?" |
| 4203 | Haycook v. Ostman, 397 So.2d 743, 743–44 (Fla. App. 1981) | 1 | A promissory note, mature and regular on its face, is admissible in evidence without extrinsic proof of its execution or authenticity and, as evidence, is sufficient to establish a prima facie case. | A *744 promissory note, mature and regular on its face, is admissible into evidence without extrinsic proof of its execution or authenticity and, as evidence, is sufficient to establish a prima facie case. | "Is a promissory note, that is mature and regular on its face, admissible and is sufficient to establish a prima facie case?" |
| 4218 | Hillbert v. State, 66 So.3d 779, 783 (Ala.Civ.App., 2010) | 6 | The absence of a necessary and indispensable party necessitates the dismissal of the cause without prejudice or a reversal with directions to allow the cause to stand over for amendment. | The absence of a necessary and indispensable party necessitates the dismissal of the cause without prejudice or a reversal with directions to allow the cause to stand over for amendment. | Does the absence of a necessary and indispensable party necessitate the dismissal of the cause without prejudice or a reversal with directions to allow the cause to stand over for amendment? |
| 4250 | Couchman v. Cardona, 471 S.W.3d 20, 25 (Tex.App.-Hous. (1 Dist.), 2015) | 13 | Even after a dismissal without prejudice is entered following a plaintiff's nonsuit, the party seeking dismissal with prejudice can appeal the denial of the sanctions relief. | Even after a dismissal without prejudice is entered following a plaintiff's nonsuit, the party seeking dismissal with prejudice can appeal the denial of the sanctions relief. | "Even after a dismissal without prejudice is entered following a plaintiff's nonsuit, can the party seeking dismissal with prejudice appeal the denial of the sanctions relief?" |
| 4281 | Barazi v. Eckoldt, 180 S.W.3d 507, 511 (Mo.App. E.D.,2005) | 9 | Although trial courts have the inherent authority to dismiss a case for failure to prosecute with due diligence, the decision must be made within the exercise of sound judicial discretion. | Although trial courts have the inherent authority to dismiss a case for failure to prosecute with due diligence, the decision must be made within the exercise of sound judicial discretion. | Do courts have the inherent authority to dismiss a case for failure to prosecute with due diligence? |
| 4362 | Gherebi v. Bush, 352 F.3d 1278, 1294 (9th Cir. 2003) | 5 | Sovereignty may be gained by a demonstration of intent to exercise sovereign control on the part of a country that is in possession of the territory in question and that has the power to enforce its will. | Sovereignty may be gained by a demonstration of intent to exercise sovereign control on the part of a country that is in possession of the territory in question and that has the power to enforce its will. | Can sovereignty be gained by a demonstration of intent to exercise sovereign control on the party of a country that is in possession of the territory in question and that has the power to enforce its will? |

| 4376 | Vause v. Bay Med. Ctr., 687 So. 2d 258, 261 (Fla. Dist. Ct. App. 1996) | 3 | If court is required to consider matters outside the four corners of complaint, then the cause is not subject to dismissal on basis of affirmative defense. | If the court is required to consider matters outside the four corners of the complaint, then the cause is not subject to dismissal on the basis of the affirmative defense. | Will the cause be subject to dismissal on basis of affirmative defense if court is required to consider matters outside the four corners of complaint? |
|---|---|---|---|---|---|
| 4384 | Dade Cnty. School Bd. v. Radio Station WQBA, 731 So.2d 638, 646 (Fla., 1999) | 16 | Equitable subrogation is generally appropriate where: (1) the subrogee made the payment to protect his or her own interest, (2) the subrogee did not act as a volunteer, (3) the subrogee was not primarily liable for the debt, (4) the subrogee paid off the entire debt, and (5) subrogation would not work any injustice to the rights of a third party. | Equitable subrogation is generally appropriate where: (1) the subrogee made the payment to protect his or her own interest, (2) the subrogee did not act as a volunteer, (3) the subrogee was not primarily liable for the debt, (4) the subrogee paid off the entire debt, and (5) subrogation would not work any injustice to the rights of a third party. | Does equitable subrogation require a party to show that the entire debt was paid? |
| 4423 | Dobbs v. Dobbs Tire & Auto Centers, Inc., 969 S.W.2d 894, 897 (Mo.App. E.D.,1998) | 1 | Under the in pari delicto doctrine, a person cannot maintain an action if, in order to establish his cause of action, he must rely, in whole or in part, on an illegal or immoral act or transaction to which he is a party. | Under the in pari delicto doctrine, a person cannot maintain an action if, in order to establish his cause of action, he must rely, in whole or in part, on an illegal or immoral act or transaction to which he is a party. | Does the in pari delicto doctrine permit a person to maintain an action if he is a party to the immoral act or wrongdoing? |
| 4428 | Iowa State Bar Ass'n v. Kraschel, 260 Iowa 187, 193 (Iowa 1967) | 4 | The extent of persuasion required of the prosecution in disbarment proceedings does not vary according to the type of conduct charged, regardless of whether it amounts to a crime or merely professional misconduct. | The extent of persuasion required of the prosecution in disbarment proceedings does not vary according to the type of conduct charged, regardless of whether it amounts to a crime or merely professional misconduct. | Does the extent of persuasion which prosecutors in disbarment proceedings must effect vary according to the type of conduct charged? |
| 4466 | In re Petition of Board of Directors of Hopewell Intern. Ins., Ltd., 272 B.R. 396, 412 (S.D.N.Y. 2002) | 22 | No nation is under an unremitting obligation to enforce foreign interests which are fundamentally prejudicial to those of the domestic forum; the obligation of comity expires when the strong public policies of the forum are vitiated by the foreign act. | No nation is under an unremitting obligation to enforce foreign interests which are fundamentally prejudicial to those of the domestic forum... the obligation of comity expires when the strong public policies of the forum are vitiated by the foreign act. | Does the obligation of comity expire when the strong public policies of the forum are vitiated by the foreign act? |
| 4471 | Folsom v. City of Livingston, 2016 MT 238, ¶ 11 | 1 | A motion in limine can seek to prevent or limit the introduction of evidence at trial, and the authority to grant or deny the motion rests in the inherent power of the district court to admit or exclude evidence so as to ensure a fair trial. | A motion in limine can seek to prevent or limit the introduction of evidence at trial, and the authority to grant or deny the motion rests in the inherent power of the district court to admit or exclude evidence so as to ensure a fair trial. | "Do trial courts have broad discretion when ruling on a motion in limine, so appellate court reviews the district court's decision to grant or deny a motion in limine for abuse of discretion?" |
| 4472 | Vela v. Wagner & Brown, Ltd., 203 S.W.3d 37, 54 (Tex. App. 2006) | 27 | The imposition of sanctions for violation of an order in limine is left to the sound discretion of the trial court, and an appellate court will not reverse a trial court's decision on sanctions absent a clear abuse of discretion. | The imposition of sanctions for violation of an order in limine is left to the sound discretion of the trial court, and an appellate court will not reverse a trial court's decision on sanctions absent a clear abuse of discretion. | "Is the imposition of sanctions for violations of orders limine is left to the sound discretion of the trial court, and when will the court of appeals reverse such sanctions?" |

| | | | | | |
|---|---|---|---|---|---|
| 4490 | Compton v. Ubilluz, 819 N.E.2d 767, 776, 289 Ill.Dec. 271, 280, 353 Ill.App.3d 863, 871 (Ill.App. 2 Dist.,2004) | 15 | Trial judges should attempt to enter narrow in limine orders, anticipate proper evidence that might be excluded by the orders, and make the orders clear and precise so that all parties concerned have an accurate understanding of their limitations. | Trial judges should attempt to enter narrow in limine orders, anticipate proper evidence that might be excluded by the orders, and make the orders clear and precise so that all parties concerned have an accurate understanding of their limitations. | Should trial judges attempt to enter narrow in limine orders? |
| 4491 | Compton v. Ubilluz, 819 N.E.2d 767, 776, 289 Ill.Dec. 271, 280, 353 Ill.App.3d 863, 871 (Ill.App. 2 Dist.,2004) | 14 | A motion in limine permits a party to obtain an order excluding inadmissible evidence and prohibiting comment concerning such evidence during closing argument. | A motion in limine permits a party to obtain an order excluding inadmissible evidence and prohibiting comment concerning such evidence during closing argument. | Does a motion in limine permit a party to obtain an order prohibiting comment concerning inadmissible evidence during closing argument?c |
| 4506 | In re Air Crash Disaster Near Peggy's Cove, Nova Scotia on September 2, 1998, 210 F.Supp.2d 570, 574 (E.D. Pa. 2002) | 2 | Under generally accepted principles of international law, the navigable sea is divided into three zones: inland waters; territorial waters extending seaward from a defined coastal baseline; and the high seas, international waters beyond the limit of a sovereign's territorial sea. | Under generally accepted principles of international law, the navigable sea is divided into three zones: inland waters; territorial waters extending seaward from a defined coastal baseline; and the high seas, international waters beyond the limit of a sovereign's territorial sea. | Is the navigable sea divided into three zones? |
| 4509 | Compton v. Ubilluz, 819 N.E.2d 767, 776, 289 Ill.Dec. 271, 280, 353 Ill.App.3d 863, 871 (Ill.App. 2 Dist.,2004) | 15 | Trial judges should attempt to enter narrow in limine orders, anticipate proper evidence that might be excluded by the orders, and make the orders clear and precise so that all parties concerned have an accurate understanding of their limitations. | Trial judges should attempt to enter narrow in limine orders, anticipate proper evidence that might be excluded by the orders, and make the orders clear and precise so that all parties concerned have an accurate understanding of their limitations. | Should trial judges attempt to enter narrow in limine orders as an unclear order in limine is worse than no order at all? |
| 4510 | Agnew v. Shaw, 355 Ill.App.3d 981, 990 (Ill.App. 1 Dist.,2005) | 5 | Motions in limine are addressed to the trial court's inherent power to admit or exclude evidence; generally, a reviewing court will not disturb the trial court's ruling on motions in limine absent an abuse of discretion, so long as the trial court exercises its discretion within the bounds of the law. | Motions in limine are addressed to the trial court's inherent power to admit or exclude evidence; generally, a reviewing court will not disturb the trial court's ruling on motions in limine absent an abuse of discretion, so long as the trial court exercises its discretion within the bounds of the law. | When is an order in limine considered an abuse of the trial courts discretion? |
| 4561 | Cochran v. Mullinax, 622 S.E.2d 455, 458, 276 Ga.App. 81, 84 (Ga.App.,2005) | 1 | It generally is recognized that, unless the pretrial order is modified at or before trial, a party may not advance theories or offer evidence that violate the terms of the pretrial order; once entered, the pretrial order controls the subsequent course of the action unless modified at the trial to prevent manifest injustice. | It generally is recognized that, unless the pretrial order is modified at or before trial, a party may not advance theories or offer evidence that violate the terms of the pretrial order. Once entered, the pretrial order controls the subsequent course of the action unless modified at the trial to prevent manifest injustice. | "Can a party advance theory or offer evidence that violate the terms of a pretrial order, unless the pretrial order is modified at or before trial?" |

| 4597 | Dodson v. Allstate Ins. Co., 47 S.W.3d 866, 874, 345 Ark. 430, 443 (Ark., 2001) | 9 | A motion for production of documents must be considered in the light of the particular circumstances which give rise to it, and the need of the movant for the information requested. | A motion for production of documents must be considered in the light of the particular circumstances which give rise to it, and the need of the movant for the information requested. | "Can a motion for production of documents be considered in the light of the particular circumstances which give rise to it, and the need of the movant for the information requested?" |
|---|---|---|---|---|---|
| 4671 | Bellman v. Town of West Hartford, 900 A.2d 82, 88, 96 Conn.App. 387, 392 (Conn.App.,2006) | 7 | In general, a motion to dismiss is the proper procedural vehicle to raise a claim that the court lacks subject matter jurisdiction over the action. | In general, a motion to dismiss is the proper procedural vehicle to raise a claim that the court lacks subject matter jurisdiction over the action. | Is a motion to dismiss the proper procedural vehicle to raise a claim that the court lacks subject matter jurisdiction over the action? |
| 4679 | In re Conservatorship of Kayle, 134 Cal. App. 4th 1, 8 (2005) | 8 | In general, even without express statutory authority, a trial court has certain inherent discretionary powers to dismiss claims; however, these grounds are typically limited to lack of jurisdiction, forum non conveniens, absence of a justiciable controversy, plaintiff's failure to give security for costs, failure to appeal at trial, or failure to amend the complaint. | In general, even without express statutory authority, a trial court has certain inherent discretionary powers to dismiss claims. However, these grounds are typically limited to lack of jurisdiction, forum non conveniens, absence of a justiciable controversy, plaintiff's failure to give security for costs, failure to appeal at trial, or failure to amend the complaint. | "Even without express statutory authority, does a trial court have certain inherent discretionary powers to dismiss claims?" |
| 4704 | United States v. Spencer, 369 F. Supp. 100, 101-102 (E.D.Wis., 1974) | 2 | Because of the narrow scope of judicial review of local draft board proceedings, it becomes important that the Selective Service Administration regularly and strictly follow its own procedures. | Because of the narrow scope of judicial review of local draft board proceedings, it becomes important that the Selective Service administration *102 regularly and strictly follow its own procedures. | Is it important for the Selective Service administration to follow its own rules and procedures since there is a narrow scope of judicial review? |
| 4706 | Lujan v. Alorica, 445 S.W.3d 443, 447 (Tex. App. 2014) | 1 | The proper procedural mechanism for enforcing a valid forum-selection clause that a party to the agreement has violated in filing suit is a motion to dismiss. | The proper procedural mechanism for enforcing a valid forum-selection clause that a party to the agreement has violated in filing suit is a motion to dismiss. | Is a motion to dismiss the proper procedural mechanism for enforcing a forum-selection clause that a party to the agreement has violated in filing suit? |
| 4709 | Morgan v. Hartford Hosp., 301 Conn. 388, 401 (Conn., 2011) | 6 | Failure to comply with the statutory requirements of service renders a complaint subject to a motion to dismiss on the ground of lack of personal jurisdiction. | Failure to comply with the statutory requirements of service renders a complaint subject to a motion to dismiss on the ground of lack of personal jurisdiction. | Does a failure to comply with the statutory requirements of service render a complaint subject to a motion to dismiss for lack of personal jurisdiction? |
| 4716 | In re Risk Level Determination of J.V., 741 N.W.2d 612, 614 (Minn.App.,2007) | 6 | A matter may be dismissed as moot if an event occurs that resolves the issue or renders it impossible for the court to grant effectual relief. | A matter may be dismissed as moot if an event occurs that resolves the issue or renders it impossible for the court to grant effectual relief. | Will a matter be dismissed as moot if an event occurs that resolves the issue or renders it impossible for the court to grant effectual relief? |

| 4719 | State ex rel. Sviggum v. Hanson, 732 N.W.2d 312, 321 (Minn.App., 2007) | 11 | The concept of justiciability forms a threshold for judicial action and requires, in addition to adverse interests and concrete assertions of rights, a controversy that allows for specific relief by a decree or judgment of a specific character as distinguished from an advisory opinion predicated on hypothetical facts. | The concept of justiciability forms a threshold for judicial action and requires, in addition to adverse interests and concrete assertions of rights, a controversy that allows for specific relief by a decree or judgment of a specific character as distinguished from an advisory opinion predicated on hypothetical facts. | Will the case be dismissed for lack of justiciability when there is no injury that a court can redress? |
|---|---|---|---|---|---|
| 4734 | Koresko v. Farley, 844 A.2d 607, 617 (Pa.Cmwlth.,2004) | 21 | The general rule is that an actual case or controversy must exist at all stages of the judicial or administrative process or the matter will be dismissed as moot. | The general rule is that an actual case or controversy must exist at all stages of the judicial or administrative process or the matter will be dismissed as moot. | Is there a rule that an actual case or controversy must exist at all stages of the judicial or administrative process or the matter will be dismissed as moot? |
| 4735 | Elton v. Davis, 123 S.W.3d 205, 214 (Mo.App. W.D.,2003) | 25 | Where an event occurs that makes a court's decision unnecessary or makes granting effectual relief by the court impossible, the case is moot and generally should be dismissed. | Where an event occurs that makes a court's decision unnecessary or makes granting effectual relief by the court impossible, the case is moot and generally should be dismissed. | Is a case moot and to be dismissed where an event occurs that makes a court's decision unnecessary or makes granting effectual relief by the court impossible? |
| 4785 | Intech Metals, Inc. v. Meyer, Wagner & Jacobs, 153 A.3d 406, 410 (Pa.Super., 2016) | 1 | To dismiss a case for inactivity pursuant to a defendant's motion for non pros, there must first be a lack of due diligence on the part of the plaintiff in failing to proceed with reasonable promptitude; second, the plaintiff must have no compelling reason for the delay; finally, the delay must cause actual prejudice to the defendant. | To dismiss a case for inactivity pursuant to a defendant's motion for non pros there must first be a lack of due diligence on the part of the plaintiff in failing to proceed with reasonable promptitude. Second, the plaintiff must have no compelling reason for the delay. Finally, the delay must cause actual prejudice to the defendant. | Where can judgment of non pros be entered? |
| 4815 | Gens v. Casady Sch., 2008 OK 5, ¶ 8, 177 P.3d 565, 569 | 8 | Where not all claims appear to be frivolous on their face or without merit, dismissals for failure to state a claim upon which relief may be granted are premature. | Where not all claims appear to be frivolous on their face or without merit, dismissals for failure to state a claim upon which relief may be granted are premature. | "Where not all claims appear to be frivolous on their face or without merit, is dismissal for failure to state a claim upon which relief can be granted premature?" |
| 4820 | Woody v. Cates, 213 N.C. 792, 197 S.E. 561, 562 (1938) | 1 | A warranty deed by one having only a contingent remainder in land passes the title by way of estoppel to the grantee as soon as the remainder vests by the happening of the contingency upon which such vesting depends. | A warranty deed by one having only a contingent remainder in land passes the title, by way of estoppel, to the grantee, as soon as the remainder vests by the happening of the contingency upon which such vesting depends. | Does a warranty deed by one having a contingent remainder in land by way of estoppel pass title to the grantee? |
| 4823 | Chochorowski v. Home Depot U.S.A., Inc., 295 S.W.3d 194, 198 (Mo.App. E.D.,2009) | 8 | A court may not grant a motion to dismiss for failure to state a claim based on a conclusion that the plaintiff is not entitled to relief on the merits of that claim. | A court may not grant a motion to dismiss for failure to state a claim based on a conclusion that the plaintiff is not entitled to relief on the merits of that claim. | Can a court not grant a motion to dismiss for failure to state a claim based on a conclusion that the plaintiff is not entitled to relief on the merits of that claim? |

| 4861 | Atkinson v. Elk Corp., 109 Cal. App. 4th 739, 748, 135 Cal. Rptr. 2d 433, 439 (2003) | 6 | In the absence of express statutory authority, a trial court may, under certain circumstances, invoke its limited, inherent discretionary power to dismiss claims with prejudice. | In the absence of express statutory authority, a trial court may, under certain circumstances, invoke its limited, inherent discretionary power to dismiss claims with prejudice. | "Can a trial court invoke its limited, inherent discretionary power to dismiss claims with prejudice?" |
|---|---|---|---|---|---|
| 4869 | Wheeler v. Eftink, 507 S.W.3d 598, 600 (Mo. Ct. App. 2016) | 1 | While exercising sound judicial discretion, trial courts have an inherent power to dismiss a case for failure to prosecute with due diligence. | While exercising sound judicial discretion, trial courts have an inherent power to dismiss a case for failure to prosecute with due diligence. | "Do courts have an inherent power to dismiss a case for failure to prosecute with due diligence, while exercising sound judicial discretion?" |
| 4888 | McComas v. Ross, 626 S.E.2d 902, 904, 368 S.C. 59, 62 (S.C.App.,2006) | 2 | Whether an action should be dismissed for failure to prosecute is left to the discretion of the trial court judge, and his decision will not be disturbed, except upon a clear showing of an abuse of discretion. | Whether an action should be dismissed for failure to prosecute is left to the discretion of the trial court judge, and his decision will not be disturbed, except upon a clear showing of an abuse of discretion. | Is the question of whether an action should be dismissed for failure to prosecute left to the discretion of the trial court judge? |
| 4892 | Thomas v. Layton, 324 S.W.3d 150, 153–54 (Tex. App. 2010) | 10 | The managing partner owes the duty to keep an accurate account of his transactions with or for the partnership; if he fails to do so, all doubts with respect to particular items will ordinarily be resolved against him on an accounting. | The managing partner owes the duty to keep an accurate *154 account of his transactions with or for the partnership. Id. If he fails to do so, all doubts with respect to particular items will ordinarily be resolved against him on an accounting. | "If a managing partner fails to keep an accurate account, do all doubts respecting particular items get resolved against him on accounting?" |
| 4905 | Barazi v. Eckoldt, 180 S.W.3d 507, 511 (Mo.App. E.D.,2005) | 9 | Although trial courts have the inherent authority to dismiss a case for failure to prosecute with due diligence, the decision must be made within the exercise of sound judicial discretion. | Although trial courts have the inherent authority to dismiss a case for failure to prosecute with due diligence, the dismiss must be made within the exercise of sound judicial discretion. | "Does a court have the inherent authority, in its discretion, to dismiss a case for failure to prosecute?" |
| 4938 | Compton v. Ubilluz, 819 N.E.2d 767, 776, 289 Ill.Dec. 271, 280, 353 Ill.App.3d 863, 871 (Ill.App. 2 Dist.,2004) | 14 | A motion in limine permits a party to obtain an order excluding inadmissible evidence and prohibiting comment concerning such evidence during closing argument. | A motion in limine permits a party to obtain an order excluding inadmissible evidence and prohibiting comment concerning such evidence during closing argument. | Does a motion in limine permit a party to obtain an order prohibiting comment concerning inadmissible evidence during closing argument? |
| 4943 | Marin v. IESI TX Corp., 317 S.W.3d 314, 331–32 (Tex. App. 2010) | 20 | Texas follows a "fair notice" standard for pleading, which looks to whether the opposing party can ascertain from the pleading the nature and basic issues of the controversy and what testimony will be relevant. | Texas follows a "fair notice" standard *332 for pleading, which looks to whether the opposing party can ascertain from the pleading the nature and basic issues of the controversy and what testimony will be relevant. | Does the fair-notice standard consider whether the opposing party can ascertain from the pleading the nature and basic issues of the controversy? |
| 4978 | Fallarino v. Fallarino, 56 Misc. 3d 67, 68–69, 56 N.Y.S.3d 414, 416 (N.Y. App. Term. 2017) | 3 | Because the life tenant has the exclusive right to the property during his or her life, the remainderman or reversioner has no right to possession or any present right of enjoyment, or tangible or physical ownership, of the land' during the term of the life tenancy. | Because the life tenant has the exclusive right to the property during his or her life, the remainderman or reversioner has no right to possession or any present right of enjoyment, or tangible or physical ownership, of the land' during the term of the life tenancy | Does the remainderman or reversioner have a right to possession or any present right of enjoyment of the land during the term of the life tenant? |

| | | | | | |
|---|---|---|---|---|---|
| 4987 | Bord v. Hillman, 780 S.E.2d 725, 728–29, 335 Ga.App. 18, 21 (Ga.App., 2015) | 3 | To establish proximate cause, a plaintiff must show a legally attributable causal connection between the defendant's conduct and the alleged injury; the plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. | To establish proximate cause, a plaintiff must show a legally attributable causal connection between the defendant's conduct and the alleged injury. The plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more **729 likely than not that the conduct of the defendant was a cause in fact of the result. | Is there a need to establish proximate cause in nuisance and trespass claims? |
| 5026 | State Farm Mut. Auto. Ins. Co. v. Johnson, 18 So. 3d 1099, 1100 (Fla.App. 2 Dist., 2009) | 6 | A cause of action for equitable subrogation arises where: (1) the subrogee made the payment to protect his or her own interest, (2) the subrogee did not act as a volunteer, (3) the subrogee was not primarily liable for the debt, (4) the subrogee paid off the entire debt, and (5) subrogation would not work any injustice to the rights of a third party. | A cause of action for equitable subrogation arises where: (1) the subrogee made the payment to protect his or her own interest, (2) the subrogee did not act as a volunteer, (3) the subrogee was not primarily liable for the debt, (4) the subrogee paid off the entire debt, and (5) subrogation would not work any injustice to the rights of a third party. | When does legal or equitable subrogation arise? |
| 5027 | Southern Farm Bureau Cas. Ins. Co. v. Tallant, 362 Ark. 17, 23 (2005) | 3 | A right in equity to subrogation may arise by convention, or in other words, by way of a subrogation provision in a contract; however, it may also arise as legal or equitable subrogation, or in other words by operation of law based on facts giving rise to a right of subrogation. | A right in equity to subrogation may arise by convention, or in other words, by way of a subrogation provision in a contract; however, it may also arise as legal or equitable subrogation, or in other words by operation of law based on facts giving rise to a right of subrogation. | Can subrogation rights arise by contract or by operation of law? |
| 5038 | Schwartz v. Hasty, 175 S.W.3d 621, 626 (Ky. Ct. App. 2005) | 9 | Subrogation is designed to prevent unjust enrichment by requiring one who benefits from the payment of the debt of another to ultimately pay it themselves. | Subrogation is designed to prevent unjust enrichment by requiring one who benefits from the payment of the debt of another to ultimately pay it themselves. | Is subrogation designed to prevent unjust enrichment by requiring one who benefits from the payment of the debt of another to ultimately pay it themselves? |
| 5049 | In re Marriage of Bhati and Singh, 920 N.E.2d 1147, 1158, 336 Ill.Dec. 557, 568, 397 Ill.App.3d 53, 68 (Ill.App. 1 Dist., 2009) | 9 | A trial court has discretion in granting a motion in limine, and a reviewing court will not reverse a trial court's order allowing or excluding evidence unless that discretion was clearly abused. | A trial court has discretion in granting a motion in limine and a reviewing court will not reverse a trial court's order allowing or excluding evidence unless that discretion was clearly abused. | Will a trial courts decision to grant a motion in limine be reversed by the reviewing court unless that discretion was clearly abused? |
| 5103 | Martin v. Sally, 341 Ill.App.3d 308, 314 (Ill.App. 2 Dist., 2003) | 2 | On review, a trial court judge maintains broad discretion in the admission of evidence and in ruling upon a motion in limine. | On review, a trial court judge maintains broad discretion in the admission of evidence and in ruling upon a motion in limine. | "On review, dDoes a trial court judge maintain broad discretion in the admission of evidence and in ruling upon a motion in limine?" |

| 5104 | Mardirossian & Associates, Inc. v. Ersoff, 153 Cal.App.4th 257, 269 (Cal.App. 2 Dist.,2007) | 2 | Although in limine motions are typically brought at the beginning of trial, they may also be brought during trial when evidentiary issues are anticipated by the parties. | Although in limine motions are typically brought at the beginning of trial, they may also be brought during trial when evidentiary issues are anticipated by the parties. | "Although in limine motions are typically brought at the beginning of trial, may they also be brought during trial when evidentiary issues are anticipated by the parties?" |
|---|---|---|---|---|---|
| 5105 | Linstrom v. Normile, 2017 ND 194, ¶ 10, 899 N.W.2d 287, 291 (2017) | 8 | A motion in limine seeking an evidentiary ruling must be decided without the benefit of evaluating the evidence in the context of trial. | A motion in limine seeking an evidentiary ruling must be decided without the benefit of evaluating the evidence in the context of trial. | Must a motion in limine seeking an evidentiary ruling be decided without the benefit of evaluating the evidence in the context of trial? |
| 5108 | Honaker v. Mahon, 210 W. Va. 53, 60 (2001) | 16 | The purpose of a motion in limine is to prevent an opposing party from asking prejudicial questions, or introducing prejudicial evidence, in front of the jury without asking the trial court's permission. | The purpose of a motion in limine is to prevent an opposing party from asking prejudicial questions, or introducing prejudicial evidence, in front of the jury without asking the trial court's permission. | Is the purpose of a motion in limine to prevent an opposing party from asking prejudicial questions? |
| 5109 | Castaneda v. Dept. of Protective Serv, 148 S.W.3d 509, 520 (Tex. App. 2004) | 1 | A motion in limine is designed solely to require an offering party to approach the bench and inquire into the admissibility of the evidence at issue before introducing that evidence to the jury. | A motion in limine is designed solely to require an offering party to approach the bench and inquire into the admissibility of the evidence at issue before introducing that evidence to the jury. | Is a motion in limine designed solely to require a court to inquire into the admissibility of the evidence at issue before introducing that evidence to the jury? |
| 5139 | Wood v. Strickland, 420 U.S. 308, 326, 95 S. Ct. 992, 1003, 43 L. Ed. 2d 214 (1975) | 9 | It is not the role of the federal courts to set aside decisions of school administrators which the court may view as lacking a basis in wisdom or compassion. | It is not the role of the federal courts to set aside decisions of school administrators which the court may view as lacking a basis in wisdom or compassion. | Is it the role of the federal courts to set aside decisions of school administrators which it views as lacking in wisdom or compassion? |
| 5146 | Gregoire v. Rumsfeld, 463 F. Supp. 2d 1209, 1218 (Wash. 2006) | 4 | The constitutional power of Congress to raise and support armies and to make all laws necessary and proper to that end is broad and sweeping. | "The constitutional power of Congress to raise and support armies and to make all laws necessary and proper to that end is broad and sweeping." | Is the constitutional power of Congress to raise and support armies and to make all laws necessary and proper to that end broad and sweeping? |
| 5147 | Heritage Mut. Ins. Co. v. Graser, 2002 WI App 125, 254 Wis. 2d 851, 856 (2002) | 3 | By virtue and to the extent of payments made on behalf of another, a subrogated party obtains a right of recovery in an action against a third-party tortfeasor and is a necessary party in an action against such a tortfeasor. | By virtue and to the extent of payments made on behalf of another, a subrogated party obtains a right of recovery in an action against a third-party tortfeasor and is a necessary party in an action against such a tortfeasor. | "By virtue and to the extent of payments made on behalf of the injured party, does the payor generally obtain a right of recovery in an action against the tortfeasor?" |
| 5179 | Clark v. Randalls Food, 317 S.W.3d 351, 358 (Tex.App.-Hous. (1 Dist.), 2010) | 16 | While parties need not take extraordinary measures to preserve evidence, they have a duty to exercise reasonable care in preserving potentially relevant evidence. | While parties need not take extraordinary measures to preserve evidence, they have a duty to exercise reasonable care in preserving potentially relevant evidence. | "While parties need not take extraordinary measures to preserve evidence, do they have a duty to exercise reasonable care in preserving potentially relevant evidence?" |

| | | | | | |
|---|---|---|---|---|---|
| 5210 | Deutsche Bank National Trust Co. v. McGurk, 141 Cal.Rptr.3d 603, 611, 206 Cal.App.4th 201, 212 (Cal.App. 2 Dist., 2012) | 2 | A plaintiff's voluntary dismissal of his action has the effect of an absolute withdrawal of his claim and leaves the defendant as though he had never been a party. | A plaintiff's voluntary dismissal of his action has the effect of an absolute withdrawal of his claim and leaves the defendant as though he had never been a party. | Does a plaintiff's voluntary dismissal of his action has the effect of an absolute withdrawal of his claim and leaves the defendant as though he had never been a party? |
| 5214 | Spice v. Pierce Cnty., 149 Wash.App. 461, 467 (2009) | 6 | The effect of a party's voluntary dismissal or withdrawal of an action renders the proceeding a nullity and leaves the parties in the same position as if the action had never occurred. | The effect of a party's voluntary dismissal or withdrawal of an action renders the proceeding a nullity and leaves the parties in the same position as if the action had never occurred. | Does the effect of a party's voluntary dismissal or withdrawal of an action render the proceeding a nullity and leaves the parties in the same position as if the action had never occurred? |
| 5226 | Thomas v. United States, 42 Fed. Cl. 449, 453 (1998) | 6 | A serviceman who has been improperly discharged is entitled to recover pay and allowances only to the date on which his term of enlistment would otherwise have expired. | A serviceman who has been improperly discharged is entitled to recover pay and allowances only to the date on which his term of enlistment would otherwise have expired. | Is a serviceman who has been improperly discharged entitled to recover pay and allowances only to the date on which his term of enlistment would otherwise have expired? |
| 5248 | Lucas v. Clark, 347 S.W.3d 800, 803 (Tex. App. 2011) | 4 | Generally, when a party fails to respond to a request for admission, either by timely answer, written objection, or motion to file late answers, the facts contained in the request are deemed admitted. | Generally, when a party fails to respond to a request for admission, either by timely answer, written objection, or motion to file late answers, the facts contained in the request are deemed admitted. | "When party receiving request for admissions fails to respond to request by any means, is the fact deemed admitted?" |
| 5261 | Lucas v. Clark, 347 S.W.3d 800, 803 (Tex. App. 2011) | 4 | Generally, when a party fails to respond to a request for admission, either by timely answer, written objection, or motion to file late answers, the facts contained in the request are deemed admitted. | Generally, when a party fails to respond to a request for admission, either by timely answer, written objection, or motion to file late answers, the facts contained in the request are deemed admitted. | "Is the statute providing that requests for admission shall be deemed admitted if party fails to respond to requests prior to hearing on opponent's motion mandatory in nature, and does not permit an ""interest of justice"" exception?" |
| 5286 | Cleland v. 60-02 Woodside Corp., 221 A.D.2d 307, 308, 633 N.Y.S.2d 529, 529 (1995) | 1 | Evidence of subsequent repairs and remedial measures is not discoverable or admissible in negligence case unless there is issue of maintenance or control. | Evidence of subsequent repairs and remedial measures is not discoverable or admissible in a negligence case unless there is an issue of maintenance or control | Is evidence of subsequent repairs and remedial measures not discoverable or admissible in negligence case unless there is issue of maintenance or control? |
| 5319 | Matter of Brandon's Est., 55 N.Y.2d 206, 211, 433 N.E.2d 501, 503 (1982) | 3 | Where guilty knowledge or an unlawful intent is in issue, evidence of other similar acts is admissible to negate existence of innocent state of mind. | Where guilty knowledge or an unlawful intent is in issue, evidence of other similar acts is admissible to negate the existence of an innocent state of mind. | "Where unlawful intent is in issue, will evidence of other similar acts be admissible at trial to negate the existence of an innocent state of mind?" |
| 5336 | City of Slater v. State, 494 S.W.3d 580, 586 (Mo.App. W.D., 2016) | 4 | If a party is without standing to bring a particular claim, a court shall dismiss the claim because the court lacks the authority to decide the merits of the claim. | If a party is without standing to bring a particular claim, a court shall dismiss the claim because the court lacks the authority to decide the merits of the claim. | "If a party is without standing to bring a particular claim, shall a court dismiss the claim because the court lacks the authority to decide the merits of the claim?" |

| | | | | |
|---|---|---|---|---|
| 5337 | Dunn v. Jasper Cty., 490 S.W.3d 723, 726 (Mo.App.S.D., 2015) | 3 | If a party is without standing to bring a particular claim, a court shall dismiss the claim because the court lacks the authority to decide the merits of the claim. | If a party is without standing to bring a particular claim, a court shall dismiss the claim because the court lacks the authority to decide the merits of the claim. | "If a party is without standing to bring a particular claim, shall a court dismiss the claim because the court lacks the authority to decide the merits of the claim?" |
| 5346 | Broward Cnty. v. Eller Drive Ltd. Partnership, 939 So.2d 130, 133 (Fla.App. 4 Dist.,2006) | 3 | In the field of taxation, administrators of the laws and the courts are concerned with substance and realities, and formal written documents are not rigidly binding. | In the field of taxation, administrators of the laws and the courts are concerned with substance and realities, and formal written documents are not rigidly binding. | In the field of taxation are the administrators of the laws and the courts concerned with substance and realities and that formal written documents are not rigidly binding? |
| 5351 | Jay Zabel & Assocs., Ltd. v. Compass Bank, 527 S.W.3d 545, 553 (Tex. App. 2017) | 9 | A court should dismiss a lawsuit against a nonresident defendant if the exercise of personal jurisdiction lacks an adequate factual or legal basis. | A court should dismiss a lawsuit against a nonresident defendant if exercise of personal jurisdiction lacks an adequate factual or legal basis. | Should a court dismiss a lawsuit against a nonresident defendant if the exercise of personal jurisdiction lacks an adequate factual or legal basis? |
| 5362 | Hanna v. City of Chicago, 382 Ill. App. 3d 672, 676-77 (2008) | 2 | When the issues have ceased to exist and there is no longer an actual controversy between the parties, the alleged cause of action has been negated and should be dismissed as moot. | When the issues have ceased to exist and there is no longer an actual controversy between the parties, the alleged cause of action has been negated and should be dismissed as *677 moot. | Is the alleged cause of action negated and to be dismissed as moot when the issues have ceased to exist and there is no longer an actual controversy between the parties? |
| 5369 | Norma Faye Pyles Lynch Family Purpose LLC v. Putnam Cnty., 301 S.W.3d 196, 204 (Tenn.,2009) | 5 | In the absence of an explicit constitutional imperative, decisions to dismiss a case on the ground of mootness require the exercise of judgment based on the facts and circumstances of the case. | In the absence of an explicit constitutional imperative, decisions to dismiss a case on the ground of mootness require the exercise of judgment based on the facts and circumstances of the case. | "Do decisions to dismiss a case on the ground of mootness, require the exercise of judgment based on the facts and circumstances of the case?" |
| 5371 | Bass v. City of Pembroke Pines, 991 So.2d 1008, 1011 (Fla.App. 4 Dist.,2008) | 3 | A trial court possesses the discretion to dismiss a complaint when there is clear and convincing evidence that the plaintiff has committed fraud upon the court. | A trial court possesses the discretion to dismiss a complaint when there is clear and convincing evidence that the plaintiff has committed fraud upon the court. | Does a trial court possess the discretion to dismiss a complaint when there is clear and convincing evidence that the plaintiff has committed fraud upon the court? |
| 5382 | El Paso Mental Health and Mental Retardation Center v. Crissman, 241 S.W.3d 578, 581 (Tex.App. El Paso,2007) | 1 | When a lawsuit is barred by sovereign immunity, the trial court lacks subject matter jurisdiction, and dismissal with prejudice is proper. | When a lawsuit is barred by sovereign immunity, the trial court lacks subject matter jurisdiction, and dismissal with prejudice is proper. | "When a lawsuit is barred by sovereign immunity, does the trial court lack subject matter jurisdiction and dismissal with prejudice is proper?" |
| 5394 | St. Louis Association of Realtors v. City of Ferguson, 448 S.W.3d 340, 342 (Mo.App. E.D., 2014) | 2 | Where another enactment supersedes the statute on which the litigants rely to define their rights, there is no longer an actual controversy, and the case must be dismissed as moot. | Where another enactment supersedes the statute on which the litigants rely to define their rights, there is no longer an actual controversy, and the case must be dismissed as moot. | Can a case be dismissed as moot where another enactment supersedes the statute on which the litigants rely to define their rights? |

| 5395 | Mosley v. State, 908 N.E.2d 599, 603 (Ind.,2009) | 2 | When the concrete controversy at issue in a case has been ended or settled, or in some manner disposed of, so as to render it unnecessary to decide the question involved, the case will usually be dismissed. | When the concrete controversy at issue in a case has been ended or settled, or in some manner disposed of, so as to render it unnecessary to decide the question involved, the case will usually be dismissed. | "Can a case be dismissed when the controversy at issue in a case has been ended or settled, so as to render it unnecessary to decide the question involved?" |
|---|---|---|---|---|---|
| 5400 | Rockett v. Radar, Inc., 97 S.W.3d 535, 536 (Mo.App. E.D.,2003) | 3 | When an event occurs that makes a decision unnecessary or makes granting any relief by the court impossible, then the case is rendered moot and generally should be dismissed. | When an event occurs that makes a decision unnecessary or makes granting any relief by the court impossible, then the case is rendered moot and generally should be dismissed. | Is a case rendered moot when an event occurs that makes a decision unnecessary or makes granting any relief by the court impossible? |
| 5433 | Watt v. Lee, 238 Ala. 451, 455, 191 So. 628, 630–31 (1939) | 5 | A party who obtains or defeats a judgment, by pleading or representing a thing or judgment in one aspect, is estopped from giving it another in a suit founded upon the same subject-matter. | A party who obtains or defeats a judgment, by pleading or representing a **631 thing or judgment in one aspect, is estopped from giving it another in a suit founded upon the same subject–matter. | Is a party who obtains or defeats a judgment estopped from giving it another in a suit founded upon the same subject matter? |
| 5438 | Van Tieghem v. Sushenka, 254 Ill. App. 409, 414 (Ill. App. Ct. 1929) | 4 | The court may dismiss a cause for noncompliance with a rule entered against a plaintiff to file a pleading or take some other step in the cause, where no sufficient excuse is given. | The court may dismiss a cause for noncompliance with a rule entered against a plaintiff to file a pleading or take some other step in the cause, where no sufficient excuse is given. | Can the court dismiss a cause for noncompliance with a rule entered against a plaintiff to file a pleading or take some other step in the cause? |
| 5461 | Adem v. Des Peres Hospital, Inc., 515 S.W.3d 810, 815 (Mo.App. E.D., 2017 | 7 | Where the pleadings fail to state a cause of action under the law or fail to state facts entitling the party to relief, the trial court may dismiss the lawsuit. | Where the pleadings fail to state a cause of action under the law or fail to state facts entitling the party to relief, the trial court may dismiss the lawsuit. | Can a trial court dismiss a claim when a party fails to state a cause of action or fails to state facts entitling him to relief? |
| 5462 | Darby v. Wal-Mart, Inc., 34,335 (La. App. 2 Cir. 12/6/00), 775 So. 2d 592, 595 | 9 | Dismissal of a claim is justified only when the allegations of the petition itself clearly show that the plaintiff does not have a cause of action, or when its allegations show the existence of an affirmative defense that appears clearly on the face of the pleadings. | Dismissal of a claim is justified only when the allegations of the petition itself clearly show that the plaintiff does not have a cause of action, or when its allegations show the existence of an affirmative defense that appears clearly on the face of the pleadings. | Is it justified to dismiss a claim when the allegations of the petition clearly show that the plaintiff does not have a cause of action? |
| 5467 | Byrne & Jones Enterprises, Inc. v. Monroe City R-1 School District, 493 S.W.3d 847, 851 (Mo., 2016) | 3 | In reviewing the dismissal of a petition, the sole issue to be decided is whether, after allowing the pleading its broadest intendment, treating all facts alleged as true and construing all allegations favorably to the plaintiff, the plaintiff is entitled to relief. | In reviewing the dismissal of a petition, the sole issue to be decided is whether, after allowing the pleading its broadest intendment, treating all facts alleged as true and construing all allegations favorably to the plaintiff, the plaintiff is entitled to relief. | "In reviewing the dismissal of a petition, what is the sole issue to be decided?" |
| 5538 | Palm v. 2800 Lake Shore Drive Condo. Ass'n, 2014 IL App (1st) 111290, ¶ 42 (2014) | 8 | The effect of a dismissal without prejudice is to render the proceedings a nullity and leave the parties in the same position as if the case had never been filed. | The effect of a dismissal without prejudice is to render the proceedings a nullity and leave the parties in the same position as if the case had never been filed. | Is the effect of a dismissal without prejudice to render the proceedings a nullity and leave the parties in the same position as if the case had never been filed? |

| 5539 | Meadows v. Cross Gates, 878 So. 2d 674, 676 (2004) | 1 | Although a judgment of dismissal without prejudice does not bar the filing of another suit on the same cause of action, it does terminate the instant suit. | Although a judgment of dismissal without prejudice does not bar the filing of another suit on the same cause of action, it does terminate the instant suit. | "Although a judgment of dismissal without prejudice does not bar the filing of another suit on the same cause of action, does it terminate the instant suit?" |
| --- | --- | --- | --- | --- | --- |
| 5554 | City of Revere v. Massachusetts Gaming Comm'n, 476 Mass. 591, 609–10, 71 N.E.3d 457, 474 (2017) | 31 | A complaint only survives a motion to dismiss if it includes enough factual heft to raise a right to relief above the speculative level. | A complaint only survives a motion to dismiss if it includes enough factual heft "to raise a right to relief above the speculative level. | Does a complaint only survive a motion to dismiss if it includes enough factual heft to raise a right to relief above the speculative level? |
| 5619 | Berryhill v. Entergy New Orleans Inc., 925 So. 2d 12, 15 (La. Ct. App. 2005) | 4 | The intention of a person to be a resident of a particular place is determined by his expressions at times not suspicious, and his testimony, when called on, considered in the light of his conduct and the circumstances of his life. | The intention of a person to be a resident of a particular place is determined by his expressions at times not suspicious, and his testimony, when called on, considered in the light of his conduct and the circumstances of his life. | "Is the intention of a person to be a resident of a particular place determined by his expressions at times not suspicious, and his testimony?" |
| 5624 | State v. Long, 405 Md. 527, 536 (2008) | 2 | Despite the fact that the Maryland Constitution lacks an explicit Double Jeopardy Clause, Maryland common law provides well-established protections for individuals against being twice put in jeopardy. | Despite the fact that the Maryland Constitution lacks an explicit double jeopardy clause, Maryland common law provides well-established protections for individuals against being twice put in jeopardy. | Does state common law provide well-established protections for individuals against being twice put in jeopardy? |
| 5655 | Compton v. Ubilluz, 353 Ill. App. 3d 863, 871, 819 N.E.2d 767, 776 (2004) | 16 | An unclear order in limine is worse than no order at all; even if the court concludes that the evidence is inadmissible, it has the discretion to deny the motion in limine before trial. | An unclear order in limine is worse than no order at all; even if the court concludes that the evidence is inadmissible, it has the discretion to deny the motion in limine before trial. | Is an unclear order in limine worse than no order at all; and even if the court concludes that the evidence is inadmissible does it has the discretion to deny the motion in limine before trial? |
| 5659 | Hutchison v. Seariver Mar., 22 So. 3d 989, 994 (La. Ct. App. 2009) | 7 | A joint motion to continue without date or indefinitely is not considered a step in the prosecution of a case, since by its very nature, an indefinite continuance is not intended to hasten the matter to judgment. | A joint motion to continue without date or indefinitely is not considered a step in the prosecution of a case, since by its very nature, an indefinite continuance is not intended to hasten the matter to judgment. | Is a joint motion to continue without date or indefinitely not considered a step in the prosecution of a case? |
| 5679 | Wayne Knorr, Inc. v. Dept. of Transp., 973 A.2d 1061, 1088 (Pa. Cmmw. 2009) | 12 | A party is first able to litigate a claim when the amount due under the claim is known and the claimant is able to prepare a concise and specific statement of his claim. | A party is first able to litigate a claim when the amount due under the claim is known and the claimant is able to prepare a concise and specific statement of his claim. | Is a party first able to litigate a claim when the amount due under the claim is known and the claimant is able to prepare a concise and specific statement of his claim? |
| 5684 | Poff v. Elkins, 2014 Ark. App. 663, 7 (2014) | 11 | A trial court's ruling on a motion in limine is not a final ruling on the admissibility of the evidence in question, but only interlocutory, tentative, or preliminary in nature. | A trial court's ruling on a motion in limine is not a final ruling on the admissibility of the evidence in question, but only interlocutory, tentative, or preliminary in nature. | "Is a trial court's ruling on a motion in limine a final ruling on the admissibility of the evidence in question, but only interlocutory, tentative, or preliminary in nature? " |

| | | | | | |
|---|---|---|---|---|---|
| 5693 | Pulte Home Corp. v. Parex, 174 Md. App. 681, 742 (2007) | 41 | The rationale underlying the doctrine of subrogation is to prevent the party primarily liable on the debt from being unjustly enriched when someone pays his debt. | The rationale underlying the doctrine of subrogation is to prevent the party primarily liable on the debt from being unjustly enriched when someone pays his debt. | Is the rationale underlying the doctrine of subrogation to prevent the party primarily liable on the debt from being unjustly enriched when someone pays his debt? |
| 5747 | Com. v. Casanova, 429 Mass. 293, 295, 708 N.E.2d 86, 87 (1999) | 1 | At common law, a defendant could not be prosecuted for murder unless his victim died within a year and a day of the act inflicting injury. | At common law, a defendant could not be prosecuted for murder unless his victim died within a year and a day of the act inflicting injury. | Can a defendant be prosecuted for murder or homicide if the victim died after a year and a day of the act inflicting injury? |
| 5748 | Morrison v. Labor and Indus. Relations Com'n, 23 S.W.3d 902, 908 (Mo. Ct. App. 2000) | 7 | In the absence of a written contract creating a partnership, a partnership can be implied only if the purported partners have made a definite and specific agreement proved by cogent, clear and convincing evidence, or at least by a preponderance of the credible evidence. | In the absence of a written contract creating a partnership, a partnership can be implied only if "the purported partners have made a definite and specific agreement proved by cogent, clear and convincing evidence, or at least by a preponderance of the credible evidence | What evidence is required to prove the existence of a partnership when there is no written partnership agreement? |
| 5785 | S. Ry. Co. v. Overnite Transp. Co., 223 Ga. 825, 830 (1967) | 12 | Legal subrogation takes place as a matter of equity, without any agreement to that effect made with the person paying the debt, and is independent of both creditor and debtor. | Legal subrogation takes place as a matter of equity, without any agreement to that effect made with the person paying the debt, and is independent of both creditor and debtor. | "Does legal subrogation take place as a matter of equity, without any agreement to that effect?" |
| 5787 | Middlebrook Tech v. Moore, 157 Md. App. 40, 59 (2004) | 3 | Ultimate liability rests upon the principal obligor rather than the surety, but the obligee has a remedy against both; the surety, however, becomes subrogated to the rights of the obligee when the surety pays the debt for the principal obligor. | Ultimate liability rests upon the principal obligor rather than the surety, but the obligee has a remedy against both. The surety, however, becomes subrogated to the rights of the obligee when the surety pays the debt for the principal obligor." | Does the surety become subrogated to the rights of the obligee when the surety pays the debt for the principal obligor? |
| 5815 | Doe v. Roman Catholic Diocese of Galveston-Houston, 408 F. Supp. 2d 272, 278 (S.D. Tex. 2005) | 4 | Although not every case impacting foreign affairs is nonjusticiable, cases involving foreign heads of state are routinely found nonjusticiable or justiciable but subject to absolute immunity for the foreign heads of state. | Although not every case impacting foreign affairs is nonjusticiable, cases involving foreign heads of state are routinely found nonjusticiable or justiciable but subject to absolute immunity for the foreign heads of state. | Are cases involving foreign heads of state routinely found nonjusticiable or justiciable? |
| 5817 | Francis v. State, 758 N.E.2d 528, 533 (Ind. 2001) | 6 | Granting a motion in limine does not determine the ultimate admissibility of the evidence; rather, the purpose of a ruling in limine is to prevent the presentation of potentially prejudicial evidence until the trial court can rule on the admissibility of the evidence in the context of the trial itself. | Granting a motion in limine does not determine the ultimate admissibility of the evidence. Rather, the purpose of a ruling in limine is to prevent the presentation of potentially prejudicial evidence until the trial court can rule on the admissibility of the evidence in the context of the trial itself. | Is the purpose of a ruling in limine to prevent the presentation of potentially prejudicial evidence until the trial court can rule on the admissibility of the evidence in the context of the trial itself? |

| | | | | |
|---|---|---|---|---|
| 5835 | Weidner v. Sanchez, 14 S.W.3d 353, 363 (Tex. App.--Hous. [14th Dist.] 2000) | 23 | Where a trial court's order on a motion in limine is violated, an appellate court reviews the violations to see if they are curable by an instruction to the jury to disregard them. | Where a trial court's order on a motion in limine is violated, an appellate court reviews the violations to see if they are curable by an instruction to the jury to disregard them. | Does an appellate court review a violation of an order granting a motion in limine to see if the violation is curable by an instruction to the jury to disregard it? |
| 5905 | Total Car Franchising Corp. v. Squire, 259 Ga. App. 114, 116, 576 S.E.2d 90, 92 (2003) | 3 | The purpose of the pretrial order is to formulate and simplify the issues for trial, but these objectives should not operate contrary to the spirit of the Civil Practice Act which is to ensure that cases be decided on their merits and that decisions based on other considerations be avoided. | The purpose of the pretrial order is to formulate and simplify the issues for trial, but these objectives should not operate contrary to the spirit of the Civil Practice Act which is to ensure that "cases be decided on their merits and that decisions based on other considerations be avoided. | What are the purposes of pretrial orders? |
| 5908 | Parks v. Breedlove, 241 Ga. App. 72, 73 (1999) | 3 | A pretrial order limits the issues for trial and controls the subsequent course of the action unless modified at trial to prevent manifest injustice. | A pretrial order limits the issues for trial and controls the subsequent course of the action unless modified at trial to prevent manifest injustice. | "Does a pretrial order control the subsequent course of action, unless modified to prevent manifest injustice?" |
| 5913 | Town of Tiburon v. Bonander, 180 Cal. App. 4th 1057, 1073, 103 Cal. Rptr. 3d 485, 496 (2009) | 2 | Unlike a special assessment, a tax may be levied without regard to whether the property or person subject to the tax receives a particular benefit. | Unlike a special assessment, a tax may be levied without regard to whether the property or person subject to the tax receives a particular benefit. | Can a tax be levied without regard to whether the property or person subject to a tax receives a particular benefit? |
| 6066 | Patton v. Jones, 212 S.W.3d 541, 545 (Tex. App. 2006) | 1 | A motion to dismiss based on a lack of subject matter jurisdiction is functionally equivalent to a plea to the jurisdiction challenging the trial court's authority to determine the subject matter of a cause of action. | A motion to dismiss based on a lack of subject matter jurisdiction is functionally equivalent to a plea to the jurisdiction challenging the trial court's authority to determine the subject matter of a cause of action. | Is a motion to dismiss based upon a lack of jurisdiction the functional equivalent of a plea to the jurisdiction? |
| 6069 | City of El Paso v. Wilkins, 281 S.W.3d 73, 75 (Tex. App. 2008) | 2 | A trial court lacks subject matter jurisdiction when a cause of action is barred by sovereign immunity, and dismissal with prejudice is proper. | A trial court lacks subject matter jurisdiction when a cause of action is barred by sovereign immunity, and dismissal with prejudice is proper. | Does a trial court lack subject matter jurisdiction when a cause of action is barred by sovereign immunity? |
| 6092 | Cooper v. Kirkwood Cmty. Coll., 782 N.W.2d 160, 164 (Iowa Ct. App. 2010) | 9 | Once a court determines that it lacks subject-matter jurisdiction over a claim, it has no power to enter a judgment on the merits and must dismiss the action. | Once a court determines that it lacks subject matter jurisdiction over a claim, it has no power to enter a judgment on the merits and must dismiss the action. | "Once a court determines that it lacks subject-matter jurisdiction over a claim, does it have no power to enter a judgment on the merits and must dismiss the action?" |
| 6179 | Patton v. Wells Fargo Fin. Maryland, 437 Md. 83, 95 (2014) | 1 | In deciding a motion to dismiss a complaint, a circuit court assumes the truth of the complaint's factual allegations, and any reasonable inferences, in the light most favorable to the plaintiff. | In deciding a motion to dismiss a complaint, a circuit court assumes the truth of the complaint's factual allegations, and any reasonable inferences, in the light most favorable to the plaintiff. | "In deciding a motion to dismiss a complaint, does a circuit court assume the truth of the complaints factual allegations?" |

| | | | | | |
|---|---|---|---|---|---|
| 6236 | Wilson v. Edward Hosp., 981 N.E.2d 971, 978 (Ill. 2012) | 8 | Proof of actual agency, or respondeat superior, requires a showing that: (1) a principal/agent, master/servant, or employer/employee relationship existed, (2) the principal controlled or had the right to control the conduct of the alleged employee or agent, and (3) the alleged conduct of the agent or employee fell within the scope of the agency or employment. | Proof of actual agency, or respondeat superior, requires a showing that (1) a principal/agent, master/servant, or employer/employee relationship existed; (2) the principal controlled or had the right to control the conduct of the alleged employee or agent; and (3) the alleged conduct of the agent or employee fell within the scope of the agency or employment | How is actual agency proven? |
| 6239 | Clean Water Coal. v. The M Resort, 127 Nev. 301, 315, 255 P.3d 247, 256 (2011) | 12 | While a tax is compulsory and it entitles the taxpayer to receive nothing except the governmental rights enjoyed by all citizens, a "user fee" is optional and applies to a specific charge for the use of publicly provided services. | While a tax is compulsory and it entitles the taxpayer to receive nothing except the governmental rights enjoyed by all citizens, a user fee is optional and applies to a specific charge for the use of publicly provided services. | Does a tax entitle the taxpayer to receive anything in return? |
| 6256 | Seldonridge v. General Mills Operations, Inc., 140 S.W.3d 58, 64 (Mo. Ct. App. 2004) | 11 | A dismissal for lack of subject matter jurisdiction must be without prejudice because the court has no authority to decide the case on the merits. | A dismissal for lack of subject *64 matter jurisdiction must be without prejudice because the court has no authority to decide the case on the merits. | Should a dismissal for lack of subject matter jurisdiction be without prejudice because the court has no authority to decide the case on the merits? |
| 6268 | Wilson v. Edward Hosp., 981 N.E.2d 971, 978 (Ill. 2012) | 8 | Proof of actual agency, or respondeat superior, requires a showing that: (1) a principal/agent, master/servant, or employer/employee relationship existed, (2) the principal controlled or had the right to control the conduct of the alleged employee or agent, and (3) the alleged conduct of the agent or employee fell within the scope of the agency or employment. | Proof of actual agency, or respondeat superior, requires a showing that (1) a principal/agent, master/servant, or employer/employee relationship existed; (2) the principal controlled or had the right to control the conduct of the alleged employee or agent; and (3) the alleged conduct of the agent or employee fell within the scope of the agency or employment. | What does actual agency consist of? |
| 6280 | Bagwell v. Bagwell, 290 Ga. 378, 380, 721 S.E.2d 847, 850 (2012) | 5 | Once an order of dismissal is entered it may not be modified by the trial court outside the term of court in which it was issued in order to specify that it was without prejudice. | Once an order of dismissal is entered it may not be modified by the trial court outside the term of court in which it was issued in order to specify that it was without prejudice. | "Once an order of dismissal is entered, can it not be modified by the trial court outside the term of court in which it was issued in order to specify that it was without prejudice?" |
| 6302 | Guest v. Dixon, 223 S.W.3d 531, 533 (Tex. App. 2006) | 3 | The trial court has the inherent power to dismiss a suit for failure to prosecute with due diligence, and the determination rests within the sound discretion of the trial court. | The trial court has the inherent power to dismiss a suit for failure to prosecute with due diligence, and the determination rests within the sound discretion of the trial court. | Does the trial court have the inherent power to dismiss a suit for failure to prosecute with due diligence? |
| 6313 | Atkins v. Jester, 309 S.W.3d 418, 422 (Mo. Ct. App. 2010) | 4 | In a case of a dismissal without prejudice, a plaintiff typically can cure the dismissal by filing another suit in the same court; hence, a dismissal without prejudice is not a final judgment for purposes of appeal. | In a case of a dismissal without prejudice, a plaintiff typically can cure the dismissal by filing another suit in the same court; hence, a dismissal without prejudice is not a final judgment for purposes of appeal. | "Following a dismissal without prejudice, can a plaintiff cure the dismissal by filing another suit in the same court?" |

| | | | | | |
|---|---|---|---|---|---|
| 6377 | Liberty Mutual Insurance Company v. Westport Ins. Corp., 664 F. Supp. 2d 587, 596 (D.S.C. 2009) | 10 | Under South Carolina law, a claim for equitable subrogation requires (1) the party claiming subrogation has paid the debt; (2) the party was not a volunteer but had a direct interest in the discharge of the debt or lien; (3) the party was secondarily liable for the debt or for the discharge of the lien; and (4) no injustice will be done to the other party by the allowance of the equity. | Under South Carolina law, a claim for equitable subrogation requires: (1) the party claiming subrogation has paid the debt; (2) the party was not a volunteer but had a direct interest in the discharge of the debt or lien; (3) the party was secondarily liable for the debt or for the discharge of the lien; and (4) no injustice will be done to the other party by the allowance of the equity. | What does a claim for equitable subrogation require? |
| 6385 | Martin v. Sally, 341 Ill. App. 3d 308, 314 (2003) | 2 | On review, a trial court judge maintains broad discretion in the admission of evidence and in ruling upon a motion in limine. | On review, a trial court judge maintains broad discretion in the admission of evidence and in ruling upon a motion in limine. | Does a trial court judge maintain broad discretion in the admission of evidence and in ruling upon a motion in limine? |
| 6412 | Vela v. Wagner & Brown, Ltd., 203 S.W.3d 37, 54 (Tex. App.--San Antonio 2006) | 27 | The imposition of sanctions for violation of an order in limine is left to the sound discretion of the trial court, and an appellate court will not reverse a trial court's decision on sanctions absent a clear abuse of discretion. | The imposition of sanctions for violation of an order in limine is left to the sound discretion of the trial court, and an appellate court will not reverse a trial court's decision on sanctions absent a clear abuse of discretion. | Will an appellate court reverse a trial court's decision on sanction for the violation of an order in limine? |
| 6413 | North American Ins. v. Kemper National Ins. Co., 325 Ill. App. 3d 477, 481 (2001) | 3 | The doctrine of subrogation is broad enough to include every instance in which one person, not a mere volunteer, pays a debt for which another is primarily liable and in which equity and good conscience should have been discharged by the latter. | The doctrine of subrogation is broad enough to include every instance in which one person, not a mere volunteer, pays a debt for which another is primarily liable and in which equity and good conscience should have been discharged by the latter. | "Is subrogation the substitution of another person in the place of a claimant whose rights he succeeds to in relation to the debt or claim asserted, which he has paid involuntarily? " |
| 6428 | Aegis Investigative Group v. Metropolitan Government of Nashville & Davidson County, 98 S.W.3d 159, 163 (Tenn. Ct. App. 2002) | 3 | Although bailments are generally founded on a contractual relation, the agreement of the parties may be quasi and constructive and an actual contract or one implied in fact is not always necessary to create a bailment. | Although bailments are generally founded on a contractual relation, the agreement of the parties may be quasi and constructive and an actual contract or one implied in fact is not always necessary to create a bailment. | Is a contract always necessary to create a bailment? |
| 6442 | Texas Woman's Univ. v. Methodist Hosp, 221 S.W.3d 267, 286 (Tex. App. 2006) | 19 | To recover damages for trespass to real property, a plaintiff must prove that (1) the plaintiff owns or has a lawful right to possess real property, (2) the defendant entered the plaintiff's land and the entry was physical, intentional, and voluntary, and (3) the defendant's trespass caused injury to the plaintiff. | To recover damages for trespass to real property, a plaintiff must prove that (1) the plaintiff owns or has a lawful right to possess real property, (2) the defendant entered the plaintiff's land and the entry was physical, intentional, and voluntary, and (3) the defendant's trespass caused injury to the plaintiff. | How can damages be recovered under trespass? |

| | | | | | |
|---|---|---|---|---|---|
| 6447 | Harasz v. Katz, 239 F. Supp. 3d 461, 476 (D. Conn. 2017) | 12 | Under both federal and Connecticut choice-of-law rules, a claim for malicious prosecution is governed by the laws of the state in which the legal proceedings took place, unless a more significant relationship exists in another state. | Under both federal and Connecticut choice-of-law rules, a claim for malicious prosecution is governed by the laws of the state in which the legal proceedings took place, unless a more significant relationship exists in another state. | What law governs a claim of malicious prosecution? |
| 6503 | Home Ins. Co. v. Cincinnati Ins. Co., 213 Ill. 2d 307, 316 (2004) | 7 | In contrast to contribution, subrogation and indemnification are devices for placing the entire burden for a loss on the party ultimately liable or responsible for it and by whom it should have been discharged. | In contrast to contribution, subrogation and indemnification are devices for placing the entire burden for a loss on the party ultimately liable or responsible for it and by whom it should have been discharged. | Are indemnification and subrogation devices that are used to place the entire burden for a loss on the party that is ultimately liable for it? |
| 6510 | Thomas v. Lloyd, 17 S.W.3d 177, 183 (Mo. Ct. App. 2000) | 2 | Whether real estate titled in the names of individual partners is partnership property is a question of fact and the burden of proof is on the one alleging that the ownership does not accord with the legal title. | Whether real estate titled in the names of individual partners is partnership property is a question of fact and the burden of proof is on the one alleging that the ownership does not accord with the legal title. | Is property titled in the name of an individual partner a partnership property? |
| 6516 | Three Way v. Burton Enterprises, 2008 WY 18, ¶ 18, 177 P.3d 219, 225 (Wyo. 2008) | 5 | As with other evidentiary decisions, the question of whether or not to grant a motion in limine is left to the sound discretion of the district court. | As with other evidentiary decisions, the question of whether or not to grant a motion in limine is left to the sound discretion of the district court. | Is the question of whether or not to grant a motion in limine left to the sound discretion of the district court as with other evidentiary decisions? |
| 6519 | Ward v. Stanford, 443 S.W.3d 334, 346 (Tex. App.--Dallas 2014) | 12 | As a general rule, a cause of action accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred. | As a general rule, a cause of action accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred. | Does a cause of action accrue when a wrongful act causes some legal injury? |
| 6527 | Menendez v. Saks & Co., 485 F.2d 1355, 1364 (2d Cir. 1973) | 6 | For purposes of the act of state doctrine, a debt is not "located" within a foreign state unless that state has the power to enforce or collect it. | For purposes of the act of state doctrine, a debt is not "located" within a foreign state unless that state has the power to enforce or collect it. | "For the act of state doctrine purposes, is debt located within a foreign state unless that state has the power to enforce or collect it?" |
| 6531 | Evans v. Wal-Mart Stores, Inc., 976 S.W.2d 582, 584 (Mo. App. E. Dist. 1998) | 3 | An in limine ruling is merely a preliminary expression of the court's opinion as to the admissibility of the evidence and is subject to change when presented in the proper perspective in the trial of the case. | An in limine ruling "is merely a preliminary expression of the court's opinion as to the admissibility of the evidence" and is subject to change when presented in the proper perspective in the trial of the case. | Is an in limine ruling a preliminary expression of the court's opinion regarding the admissibility of the evidence at issue? |
| 6532 | Gregory v. Kilbride, 150 N.C. App. 601, 611 (2002) | 18 | A trial court's ruling on a motion in limine is preliminary and is subject to change depending on the actual evidence offered at trial. | A trial court's ruling on a motion in limine is preliminary and is subject to change depending on the actual evidence offered at trial. | Is a trial court's ruling on a motion in limine preliminary and is subject to change depending on the actual evidence offered at trial? |

| | | | | | |
|---|---|---|---|---|---|
| 6538 | Blanks v. Shaw, 171 Cal. App. 4th 336, 375, 89 Cal. Rptr. 3d 710, 741 (2009) | 35 | The usual purpose of motions in limine is to preclude the presentation of evidence deemed inadmissible and prejudicial by the moving party. | The usual purpose of motions in limine is to preclude the presentation of evidence deemed inadmissible and prejudicial by the moving party. | Is the usual purpose of motions in limine to preclude the presentation of evidence deemed inadmissible and prejudicial by moving party? |
| 6551 | United States v. Hamdan, 801 F. Supp. 2d 1247, 1269 (USCMCR 2011) | 22 | The protective principle in international law provides a basis for jurisdiction of offenses occurring outside the United States. | The protective principle in international law provides a basis for jurisdiction of offenses occurring outside the United States. | Does the protective principle in international law provide a basis for jurisdiction of offenses occurring outside the United States? |
| 6560 | Lambert v. Coonrod, 2012 IL App (4th) 110518, ¶ 18 (2012) | 1 | A trial judge has discretion in granting a motion in limine and a reviewing court will not reverse a trial court's order allowing or excluding evidence unless that discretion was clearly abused. | A trial judge has discretion in granting a motion in limine and a reviewing court will not reverse a trial court's order allowing or excluding evidence unless that discretion was clearly abused. | Will a reviewing court reverse a trial courts motion in limine if the trial courts discretion was not abused? |
| 6563 | Vela v. Wagner & Brown, Ltd., 203 S.W.3d 37, 54 (Tex. App.-- San Antonio 2006) | 27 | The imposition of sanctions for violation of an order in limine is left to the sound discretion of the trial court, and an appellate court will not reverse a trial court's decision on sanctions absent a clear abuse of discretion. | The imposition of sanctions for violation of an order in limine is left to the sound discretion of the trial court, and an appellate court will not reverse a trial court's decision on sanctions absent a clear abuse of discretion. | Are sanctions for the violation of an order in limine left to the sound discretion of the trial? |
| 6564 | Matter of Hemphill, 18 B.R. 38, 47 (Bankr. S.D. Iowa 1982) | 3 | Under Iowa law a guarantor required to pay the debt of his principal has an enforceable right of subrogation in the collateral securing the obligation. | Under Iowa law a guarantor required to pay the debt of his principal has an enforceable right of subrogation in the collateral securing the obligation. | Does a guarantor who is required to pay the debt of his principal have an enforceable right of subrogation in the collateral securing the obligation? |
| 6599 | Chase v. Ameriquest Mortg. Co., 155 N.H. 19, 26 (N.H. 2007) | 16 | In any subrogation case, the burden of proving entitlement is on the subrogee, which generally includes proof of the existence and applicability of equitable principles or contractual provisions as to subrogation and reimbursement. | In any subrogation case, the burden of proving entitlement is on the subrogee, which generally includes proof of: the existence and applicability of equitable principles or contractual provisions as to subrogation and reimbursement. | "Is the burden of proving entitlement on the subrogee, which generally must prove the existence and applicabiity of equitable principle?" |
| 6614 | Tesoro Petroleum Corp. v. Nabors Drilling USA, 106 S.W.3d 118, 133 (Tex. App. 2002) | 32 | Where a party to an indemnity contract relating to an oil and gas well is not contractually obligated to enforce a waiver of subrogation, the other party cannot insist that it assert a waiver of subrogation. | Where a party to an indemnity contract relating to an oil and gas well is not contractually obligated to enforce a waiver of subrogation, the other party cannot insist that it assert a waiver of subrogation. | "Where a party to an indemnity contract is not contractually obligated to enforce a waiver of subrogation, can the other party insist that it assert a waiver of subrogation?" |
| 6677 | Midland Title Sec. v. Carlson, 171 Ohio App. 3d 678, 682 (2007) | 2 | A dismissal without prejudice relieves the court of all jurisdiction over the matter, and the action is treated as though it had never been commenced. | A dismissal without prejudice relieves the court of all jurisdiction over the matter, and the action is treated as though it had never been commenced. | "Does a dismissal without prejudice relieve the court of all jurisdictions over the matter, and the action is treated as though it had never been commenced?" |

| | | | | | |
|---|---|---|---|---|---|
| 6686 | United States v. Fernandez, 722 F.3d 1, 19 (1st Cir. 2013) | 18 | Although the timing of the payment may not provide a conclusive answer as to whether that payment is a bribe or a gratuity, the timing of the agreement to make or receive a payment may: one cannot agree to perform an act in exchange for payment when that act has already been performed. | Although the timing of the payment may not provide a conclusive answer as to whether that payment is a bribe or a gratuity, the timing of the agreement to make or receive a payment may: one cannot agree to perform an act in exchange for payment when that act has already been performed. | "If the agreement to exchange a thing of value for an act is made after that act has been performed, can that agreement be properly viewed as an agreement to offer or accept a bribe?" |
| 6688 | Williams v. Martin, 615 S.E.2d 774, 776 (Ga. App. 2005) | 5 | Once entered, the pretrial order controls the subsequent course of the action unless modified at the trial to prevent manifest injustice. | "[O]nce entered, the pretrial order controls the subsequent course of the action unless modified at the trial to prevent manifest injustice." | Can a pretrial order control the subsequent course of action unless modified at the trial to prevent manifest injustice? |
| 6690 | Vela v. Wagner & Brown, Ltd., 203 S.W.3d 37, 58 (Tex. App.-- San Antonio 2006) | 35 | A party's duty to preserve evidence that it knows or reasonably should know is relevant to imminent or on-going litigation arises as soon as the party has notice that it possesses or controls material evidence relevant to the litigation. | A party's duty to preserve evidence that it knows or reasonably should know is relevant to imminent or on-going litigation arises as soon as the party has notice that it possesses or controls material evidence relevant to the litigation. | When does the partys duty to preserve evidence known to be relevant to an on-going litigation arise? |
| 6713 | Approximately $14,980.00 v. State, 261 S.W.3d 182, 185 (Tex. App. 2008) | 1 | The decision to allow or deny the withdrawal of deemed admissions lies within the broad discretion of the trial court. | The decision to allow or deny the withdrawal of deemed admissions lies within the broad discretion of the trial court. | Does the decision to allow or deny the withdrawal of deemed admissions lie within the broad discretion of the trial court? |
| 6719 | Hanh H. Duong v. Bank One, N.A., 169 S.W.3d 246, 252 (Tex. App. 2005) | 8 | A party may substitute a new response to a request for admission by showing: (1) good cause for the substitution, (2) that the party relying on the response will not be unduly prejudiced, and (3) that the presentation of the merits of the action will be preserved. | A party may substitute a new response to a request for admission by showing (1) good cause for the substitution, (2) that the party relying on the response will not be unduly prejudiced, and (3) that the presentation of the merits of the action will be preserved. | What may a party substitute a new response to a request for admission? |
| 6731 | Beard Research v. Kates, 981 A.2d 1175, 1185 (Del. Ch. 2009) | 1 | A party in litigation or who has reason to anticipate litigation has an affirmative duty to preserve evidence that might be relevant to the issues in the lawsuit. | A party in litigation or who has reason to anticipate litigation has an affirmative duty to preserve evidence that might be relevant to the issues in the lawsuit. | Does a party in litigation or who has reason to anticipate litigation have an affirmative duty to preserve evidence that might be relevant to the issues in the lawsuit? |
| 6758 | Lucas v. Clark, 347 S.W.3d 800, 803 (Tex. App. 2011) | 4 | Generally, when a party fails to respond to a request for admission, either by timely answer, written objection, or motion to file late answers, the facts contained in the request are deemed admitted. | Generally, when a party fails to respond to a request for admission, either by timely answer, written objection, or motion to file late answers, the facts contained in the request are deemed admitted. | Are the facts in a failure to answer a request for admissions deemed admitted? |
| 6764 | Ex parte Lowengart, 59 So. 3d 673, 678 (Ala. 2010) | 4 | In order to be entitled to jurisdictional discovery, the plaintiff must allege facts that would support a colorable claim of jurisdiction. | In order to be entitled to jurisdictional discovery, the plaintiff must allege facts that would support a colorable claim of jurisdiction. | "In order to be entitled to jurisdictional discovery, must the plaintiff allege facts that would support a colorable claim of jurisdiction?" |

| | | | | | |
|---|---|---|---|---|---|
| 6769 | State v. Farrar, 190 N.C. App. 202, 203 (2008) | 1 | The elements of burglary in the first degree are: (1) the breaking (2) and entering (3) in the nighttime (4) into a dwelling house or a room used as a sleeping apartment (5) which is actually occupied at the time of the offense (6) with the intent to commit a felony therein. | The elements of burglary in the first degree are: (1) the breaking (2) and entering (3) in the nighttime (4) into a dwelling house or a room used as a sleeping apartment (5) which is actually occupied at the time of the offense (6) with the intent to commit a felony therein. | Is night time an element of burglary? |
| 6782 | In re Revocation of Access of Block No. 1901, Lot No. 1, Borough of Paramus, Bergen Cnty. Parkway 17 Associates, 735 A.2d 594, 605 (N.J. Super. App. Div. 1999) | 20 | Discovery does not normally include the right to explore the mental processes of government officials respecting why they did or did not take a particular course of action or adopt a particular proposal. | Discovery does not normally include the right to explore the mental processes of government officials respecting why they did or did not take a particular course of action or adopt a particular proposal. | Does discovery include the right to explore the mental processes of government officials? |
| 6788 | Fields Bros. Gen. Contractors v. Ruecksties, 288 Ga. App. 674, 676, 655 S.E.2d 282, 284–85 (2007) | 2 | A pretrial order is to be construed liberally to allow the consideration of all questions fairly within the ambit of contested issues. | A pretrial order is to be construed liberally to allow the consideration of all questions fairly within the ambit of contested **285 issues. | Should a pretrial order be construed liberally to allow the consideration of all questions fairly within the ambit of contested issues? |
| 6834 | Hentz v. Asheville City Bd. of Educ., 189 N.C. App. 520, 522, 658 S.E.2d 520, 522 (2008) | 3 | An action is properly dismissed for lack of subject matter jurisdiction when the plaintiff has failed to exhaust his administrative remedies. | An action is properly dismissed for lack of subject matter jurisdiction when the plaintiff has failed to exhaust his administrative remedies. | Is an action properly dismissed for lack of subject matter jurisdiction when the plaintiff has failed to exhaust his administrative remedies? |
| 6842 | W. S. Newell, Inc. v. Randall, 373 So. 2d 1068, 1070 (Ala. 1979) | 3 | Although there is no precise definition of the term "mineral," it necessarily implies a substance rare and exceptional in character possessing special value, something other than the soil itself. | Although there is no precise definition of the term "mineral," it necessarily implies a substance rare and exceptional in character possessing special value something other than the soil itself. | Does the term mineral necessarily imply a substance rare and exceptional in character? |
| 6846 | Neff v. Brady, 527 S.W.3d 511, 521 (Tex. App. 2017) | 16 | If the plaintiff lacks standing to bring all of his claims, the court must dismiss the whole action for want of jurisdiction. | If the plaintiff lacks standing to bring all of his claims, the court must dismiss the whole action for want of jurisdiction. | "If the plaintiff lacks standing to bring all of his claims, must the court dismiss the whole action for want of jurisdiction?" |
| 6866 | City of El Paso v. Wilkins, 281 S.W.3d 73, 75 (Tex. App. 2008) | 2 | A trial court lacks subject matter jurisdiction when a cause of action is barred by sovereign immunity, and dismissal with prejudice is proper. | A trial court lacks subject matter jurisdiction when a cause of action is barred by sovereign immunity, and dismissal with prejudice is proper. | "When a claim is barred by sovereign immunity and the trial court lacks jurisdiction, is dismissal with prejudice proper?" |
| 6881 | Urbanowicz v. Plan. and Zoning Commn. of Town of Enfield, 865 A.2d 474, 480 (Conn. App. 2005) | 1 | A party may challenge a court's subject matter jurisdiction at any time, and whenever a court discovers that it has no jurisdiction, it is bound to dismiss the case, without regard to its previous rulings. | A party may challenge a court's subject matter jurisdiction at any time, and whenever a court discovers that it has no jurisdiction, it is bound to dismiss the case, without regard to [its] previous rulings. | Can a party challenge a court's subject matter jurisdiction at any time? |
| 6890 | Bryant v. Mezo, 226 So. 3d 254, 256 (Fla. Dist. Ct. App. 2017) | 3 | Where repeated fabrications undermine the integrity of a party's entire case, a dismissal for fraud upon the court is proper. | Where repeated fabrications undermine the integrity of a party's entire case, a dismissal for fraud upon the court is proper. | "Where repeated fabrications undermine the integrity of a party's entire case, is a dismissal for fraud upon the court proper?" |

| 6905 | Caperton v. A.T. Massey Coal Co., 225 W. Va. 128, 139, 690 S.E.2d 322, 333 (2009) | 1 | Courts generally consider a motion to dismiss, based upon a forum selection clause, as a motion to dismiss for improper venue. | Courts generally consider a motion to dismiss, based upon a forum selection clause, as a motion to dismiss for improper venue. | "Do courts generally consider a motion to dismiss, based upon a forum selection clause, as a motion to dismiss for improper venue?" |
|---|---|---|---|---|---|
| 6909 | Shipe v. Pub. Wholesale Water Supply Dist. No. 25, 289 Kan. 160, 160  (2009) | 6 | If a party does not have standing to challenge an action or to request a particular type of relief, then there is no justiciable case or controversy and the suit must be dismissed. | If a party does not have standing to challenge an action or to request a particular type of relief, then there is no justiciable case or controversy and the suit must be dismissed. | Should a suit be dismissed if a party does not have standing to challenge an action or to request a particular type of relief? |
| 6941 | Dick Poe Motors v. DaimlerChrysler Corp., 169 S.W.3d 478, 485 (Tex. App. 2005) | 9 | An order of dismissal for want of prosecution is not an adjudication of the rights of the parties; rather, it simply places the parties in the position they were in prior to filing the suit. | An order of dismissal for want of prosecution is not an adjudication of the rights of the parties; rather, it simply places the parties in the position they were in prior to filing the suit. | "Should an order of dismissal for want of prosecution, place the parties in the position they were in prior to filing the suit?" |
| 6959 | Mendoza v. Rast Produce Co., 140 Cal. App. 4th 1395, 1402 (2006) | 6 | When a pleader is in doubt about what actually occurred or what can be established by the evidence, the modern practice allows that party to plead in the alternative and make inconsistent allegations. | When a pleader is in doubt about what actually occurred or what can be established by the evidence, the modern practice allows that party to plead in the alternative and make inconsistent allegations. | Does the modern practice allow the party to plead in the alternative and make inconsistent allegations? |
| 7012 | Riehle v. Riehle, 504 S.W.3d 7, 8 (Ky. 2016) | 2 | The issue of whether a case should have been dismissed for failure to state a claim raises a question of law and is reviewed de novo. | The issue of whether a case should have been dismissed for failure to state a claim raises a question of law and is reviewed de novo. | Does the issue of whether a case should have been dismissed for failure to state a claim raise a question of law and is reviewed de novo? |
| 7024 | Abate v. Fremont Inv. & Loan, 470 Mass. 821, 829 (Mass. 2015) | 9 | In a typical case, a plaintiff is required to prove jurisdictional facts if those facts are challenged by an opposing party through evidence accompanying a motion to dismiss. | In a typical case, a plaintiff is required to prove jurisdictional facts if those facts are challenged by an opposing party through evidence accompanying a motion to dismiss. | "In a typical case, is a plaintiff required to prove jurisdictional facts if those facts are challenged by an opposing party?" |
| 7039 | Glaser v. LeBus, 2012-NMSC-012, 276 P.3d 959, 962 (N.M. 2012) | 4 | A judgment on the pleadings is treated as a motion to dismiss when the district court considers matters contained solely within the pleadings. | A judgment on the pleadings is treated as a motion to dismiss when the district court considers matters contained solely within the pleadings. | Is a judgment on the pleadings treated as a motion to dismiss when the district court considers matters contained solely within the pleadings? |
| 7096 | Bourne v. Temple Univ. Hosp., 2007 PA Super 231, ¶ 6, 932 A.2d 114, 116 (2007) | 4 | Once a judgment of non pros has been entered, the burden rests on the plaintiff to demonstrate that there is good cause for reactivating the case. | Once a judgment of non pros has been entered, the burden rests on the plaintiff to demonstrate that there is good cause for reactivating the case. | "Once a judgment of non pros has been entered, does the burden rest on the plaintiff to demonstrate that there is good cause for reactivating the case?" |
| 7117 | UUniv. of Houston v. Elthon, 9 S.W.3d 351, 355 (Tex. App. 1999) | 18 | If the petition fails to allege jurisdictional facts, the plaintiff has a right to amend before the trial court dismisses the cause. | If the petition fails to allege jurisdictional facts, the plaintiff has a right to amend before the trial court dismisses the cause. | "If the petition fails to allege jurisdictional facts, does the plaintiff have a right to amend before the trial court dismisses the cause?" |

| | | | | | |
|---|---|---|---|---|---|
| 7122 | Barry v. Reeves, 47 So. 3d 689, 692 (Miss. 2010) | 2 | The courts of this state have the inherent power to dismiss a case for want of prosecution, and a trial court may dismiss a case on that basis for the sake of expediting justice and controlling its own docket. | The courts of this state have the inherent power to dismiss a case for want of prosecution, and a trial court may dismiss a case on that basis for the sake of expediting justice and controlling its own docket. | Should the courts of the states have the inherent power to dismiss a case for want of prosecution? |
| 7225 | In re Goodman Indus., 21 B.R. 512, 519 (D. Mass. 1982) | 7 | In equity, where a guarantor is required to pay the obligation of the principal debtor on a note, the guarantor becomes subrogated to the rights of the creditor against the debtor. | In equity, where a guarantor is required to pay the obligation of the principal debtor on a note, the guarantor becomes subrogated to the rights of the creditor against the debtor. | "Does the guarantor become subrogated to the rights of the creditor against the debtor in equity, where the guarantor is required to pay the obligation of the principal debtor on a note? " |
| 7250 | Rufo v. Simpson, 86 Cal. App. 4th 573, 608, 103 Cal. Rptr. 2d 492, 516 (2001)3 | 16 | A ruling on a pretrial motion in limine is necessarily tentative because subsequent evidentiary developments may change the context. | A ruling on a pretrial motion in limine is necessarily tentative because subsequent evidentiary developments may change the context. | Is a ruling on a pretrial motion in limine necessarily tentative because subsequent evidentiary developments may change the context? |
| 7255 | Tesoro Petroleum Corp. v. Nabors Drilling USA, 106 S.W.3d 118, 133 (Tex. App. 2002) | 32 | Where a party to an indemnity contract relating to an oil and gas well is not contractually obligated to enforce a waiver of subrogation, the other party cannot insist that it assert a waiver of subrogation. | Where a party to an indemnity contract relating to an oil and gas well is not contractually obligated to enforce a waiver of subrogation, the other party cannot insist that it assert a waiver of subrogation. | "Wherea party to an indemnity contract is not contractually obligated to enforce a waiver of subrogation, can the other party insist that it assert a waiver of subrogation?" |
| 7270 | Howard Univ. v. Roberts-Williams, 37 A.3d 896, 906 (D.C. App. 2012) | 10 | In order for a custom and practice to be binding on the parties to a transaction, it must be proved that the custom is definite, uniform, and well known, and it must be established by clear and satisfactory evidence. | In order for a custom and practice to be binding on the parties to a transaction, it must be proved that the custom is definite, uniform, and well known, and it must be established by clear and satisfactory evidence. | What must be proved in order for a custom and practice to be binding on the parties to a transaction? |
| 7287 | Julka v. U.S. Bank National Association, 516 S.W.3d 84, 87 (Tex. App. 2017) | 1 | A guaranty agreement creates a secondary obligation whereby the guarantor promises to be responsible for the debt of another and may be called upon to perform if the primary obligor fails to perform. | A guaranty agreement creates a secondary obligation whereby the guarantor promises to be responsible for the debt of another and may be called upon to perform if the primary obligor fails to perform. | How does a guaranty create a secondary obligation on the guarantor? |
| 7300 | Harris v. City of Santa Monica, 56 Cal. 4th 203, 240 (2013) | 20 | The primary function of a pleading is to give the other party notice so that it may prepare its case, and a defect in a pleading that otherwise properly notifies a party cannot be said to affect substantial rights. | The primary function of a pleading is to give the other party notice so that it may prepare its case, and a defect in a pleading that otherwise properly notifies a party cannot be said to affect substantial rights. | Is giving notice to the other party the primary function of pleading? |
| 7363 | Sanderson v. Heath Mesa Homeowners Ass'n, 183 P.3d 679, 682 (Colo. App. 2008) | 4 | A landowner who sets in motion a force which, in the usual course of events, will damage property of another is guilty of a trespass on such property. | A landowner who sets in motion a force which, in the usual course of events, will damage property of another is guilty of a trespass on such property. | "Can a landowner who sets in motion a force which, in the usual course of events, damages the property of another, be held liable for trespass?" |

| | | | | | |
|---|---|---|---|---|---|
| 7374 | Santiago v. Pennsylvania Nat. Mut. Cas. Ins. Co., 418 Pa. Super. 178, 184 (1992) | 4 | In reviewing preliminary objections, only facts that are well-pleaded, material, and relevant will be considered as true, together with such reasonable inferences that may be drawn from those facts, and preliminary objections will be sustained only if they are clear and free from doubt. | In reviewing preliminary objections, only facts that are well pleaded, material, and relevant will be considered as true, together with such reasonable inferences that may be drawn from those facts, and preliminary objections will be sustained only if they are clear and free from doubt. | "In reviewing preliminary objections, when are facts considered as true?" |
| 7375 | Santiago v. Pennsylvania Nat. Mut. Cas. Ins. Co., 418 Pa. Super. 178, 184 (1992) | 4 | In reviewing preliminary objections, only facts that are well-pleaded, material, and relevant will be considered as true, together with such reasonable inferences that may be drawn from those facts, and preliminary objections will be sustained only if they are clear and free from doubt. | In reviewing preliminary objections, only facts that are well pleaded, material, and relevant will be considered as true, together with such reasonable inferences that may be drawn from those facts, and preliminary objections will be sustained only if they are clear and free from doubt. | Should preliminary objections be sustained only if they are clear and free from doubt? |
| 7387 | XL Specialty Ins. Co. v. Commonwealth, Dep't of Transp., 47 Va. App. 424, 436, 624 S.E.2d 658, 663 (2006) | 7 | The right of subrogation is not founded on contract; it is a creation of equity, is enforced solely for the purpose of accomplishing the ends of substantial justice, and is independent of any contractual relations between the parties. | The right of subrogation is not founded on contract. It is a creation of equity; is enforced solely for the purpose of accomplishing the ends of substantial justice, and is independent of any contractual relations between the parties. | Is the right of subrogation founded on contract or a creation of equity? |
| 7388 | N. Am. Ins. Co. v. Kemper Nat. Ins. Co., 325 Ill. App. 3d 477, 481 (2001) | 3 | The doctrine of subrogation is broad enough to include every instance in which one person, not a mere volunteer, pays a debt for which another is primarily liable and in which equity and good conscience should have been discharged by the latter. | The doctrine of subrogation is broad enough to include every instance in which one person, not a mere volunteer, pays a debt for which another is primarily liable and in which equity and good conscience should have been discharged by the latter. | Can the right of subrogation be grounded in equity and also be founded upon an express or implied agreement? |
| 7392 | State v. Dyson, 220 So. 3d 785, 796 (2017) | 8 | The discharge of a firearm at close range aimed at a person indicates a specific intent to kill or inflict great bodily harm upon that person. | The discharge of a firearm at close range aimed at a person indicates a specific intent to kill or inflict great bodily harm upon that person. | Is the discharge of a firearm at close range aimed at a person considered to be an intent to kill or murder? |
| 7395 | Jones v. Rallos, 384 Ill. App. 3d 73, 87–88 (2008) | 14 | A ruling on a motion in limine is a determination addressing an admissibility of evidence issue likely to arise at trial and is subject to reconsideration. | A ruling on a motion in limine is a determination addressing an admissibility of evidence issue likely to arise at trial and is subject to reconsideration. | Is a ruling on a motion in limine an admissibility determination that is likely to arise at trial and is subject to reconsideration? |
| 7397 | Jefferson v. Lyon Sheet Metal Works, 376 S.W.3d 37, 41 (Mo. Ct. App. 2012) | 2 | Ordinarily, a motion in limine is used to exclude evidence in a jury trial which would be unfairly prejudicial or inflammatory; it is appropriate when the mere asking of an improper question in front of a jury may be so prejudicial that a party will be denied a right to a fair trial. | Ordinarily, a motion in limine is used to exclude evidence in a jury trial which would be unfairly prejudicial or inflammatory. It is appropriate when the mere asking of an improper question in front of a jury may be so prejudicial that a party will be denied a right to a fair trial. | Is a motion in limine used to exclude evidence in a jury trial which would be unfairly prejudicial or inflammatory? |

| | | | | | |
|---|---|---|---|---|---|
| 7398 | Cannon v. William Chevrolet/Geo, 341 Ill.App.3d 674, 681, 794 N.E.2d 843, 849, 276 Ill.Dec. 593, 599 (Ill.App. 1 Dist.,2003) | 6 | Motions in limine are not designed to obtain rulings on dispositive matters but, rather, are designed to obtain rulings on evidentiary matters outside the presence of the jury. | Motions in limine are not designed to obtain rulings on dispositive matters but, rather, are designed to obtain rulings on evidentiary matters outside the presence of the jury. | Are motions in limine designed to obtain rulings on dispositive matters or are they designed to obtain rulings on evidentiary matters outside the presence of the jury? |
| 7419 | Woods v. SunTrust Bank, 81 So. 3d 357, 366–67 (Ala. Civ. App. 2011) | 13 | The decision to grant or deny a motion in limine rests within the sound discretion of the trial court, and that decision will not be overturned on appeal unless the trial court exceeds the limits of its discretion. | The decision to grant or deny a motion in limine rests within the sound discretion of the trial court, and that decision *367 will not be overturned on appeal unless the trial court exceeds the limits of its discretion. | When will a decision to grant or deny a motion in limine be overturned on appeal? |
| 7428 | Doe v. Qi, 349 F. Supp. 2d 1258, 1292 (N.D. Cal. 2004) | 17 | Whether the acts of individual officials are attributable to the foreign state so as to constitute acts of state turns not on international law, but on domestic law and policy of the foreign state. | Whether the acts of individual officials are attributable to the foreign state so as to constitute acts of state turns not on international law, but on domestic law and policy of the foreign state. | Does the question of whether the acts of individual officials are attributable to the foreign state as to constitute acts of state not on international law? |
| 7464 | Cent. Carolina Developers v. Moore Water & Sewer Auth., 148 N.C. App. 564, 566, 559 S.E.2d 230, 231 (2002) | 2 | Inverse condemnation is simply a device to force a governmental body to exercise its power of condemnation, even though it may have no desire to do so. | Inverse condemnation is simply a device to force a governmental body to exercise its power of condemnation, even though it may have no desire to do so. | What forces a governmental body to exercise its power of condemnation even though it may have no desire to do so? |
| 7489 | Glencoe v. Neue Sentimental Film AG, 168 Cal. App. 4th 874, 877-78 (2008) | 3 | It is not the stage of the proceedings which distinguishes a voluntary dismissal from an involuntary one; rather, the key is the plaintiff's role, if any, in bringing it about. | It is not the stage of the proceedings which distinguishes a voluntary dismissal from an involuntary one. Rather, the key is the plaintiff's role, if any, in bringing it about. | "Is it the stage of the proceedings which distinguishes a voluntary dismissal from an involuntary one or is the plaintiff's role in bringing it about, the key? |
| 7504 | (N G) v. United States, 94 Fed.Cl. 375, 387 (2010) | 17 | Command influence may be found to exist if a reasonable citizen, knowing all of the facts of a given case, would believe the military justice system to be unfair and, as such, lose confidence in the entire system; the mere appearance of command influence is sufficient. | Command influence may be found to exist if a reasonable citizen, knowing all of the facts of a given case, would believe the military justice system to be unfair and, as such, lose confidence in the entire system; | When does command influence exist? |
| 7567 | Straub v. Smith, No. 31955, 2006 WL 1982878, at *4 (Idaho Ct. App. July 18, 2006) | 9 | Collateral issues that do not go to the merits of an action, including requests for costs and attorney fees, can be determined by the district court after termination or dismissal of the action. | Collateral issues that do not go to the merits of an action, including requests for costs and attorney fees, can be determined by the district court after termination or dismissal of the action. | Can collateral issues that do not go to the merits of an action be determined by the district court after termination or dismissal of the action? |
| 7625 | Chapmond v. Fryar, 559 S.W.2d 931, 932 (Ark. 1978) | 3 | A trial court may grant a continuance after pleadings are amended if satisfied the adverse party could not be ready for trial. | A trial court may grant a continuance after pleadings are amended if satisfied the adverse party could not be ready for trial. | Can a trial court grant a continuance after pleadings are amended if satisfied the adverse party could not be ready for trial? |
| 7680 | Chandler v. Illinois Cent. R. Co., 207 Ill. 2d 331, 348, 798 N.E.2d 724, 733 (2003) | 9 | Although a complaint is deficient when it fails to allege the facts necessary for recovery, the plaintiff is not required to set out evidence; only the ultimate facts to be proved should be alleged, not the evidentiary facts tending to prove such ultimate facts. | Although a complaint is deficient when it fails to allege the facts necessary for recovery, the plaintiff is not required to set out evidence; only the ultimate facts to be proved should be alleged, not the evidentiary facts tending to prove such ultimate facts. | Is a complaint deficient when it fails to allege the facts necessary for the plaintiff to recover? |

| | | | | | |
|---|---|---|---|---|---|
| 7685 | Wallingford v. Trinity Universal Ins. Co., 253 S.W.3d 720, 723 (Tex. App. 2007) | 1 | A motion to dismiss based on the absence of subject matter jurisdiction is the functional equivalent to a plea to the jurisdiction challenging the trial court's authority to determine the subject matter of a cause of action. | A motion to dismiss based on the absence of subject matter jurisdiction is the functional equivalent to a plea to the jurisdiction challenging the trial court's authority to determine the subject matter of a cause of action. | Is a motion to dismiss due to a lack of subject-matter jurisdiction the functional equivalent of a plea to the jurisdiction? |
| 7690 | Kim v. Magnotta, 249 Conn. 94, 102 (1999) | 3 | Because a lack of personal jurisdiction may be waived by the defendant, the rules of practice require the defendant to challenge that jurisdiction by a motion to dismiss. | Because a lack of personal jurisdiction may be waived by the defendant, the rules of practice require the defendant to challenge that jurisdiction by a motion to dismiss. | "Because a lack of personal jurisdiction may be waived by the defendant, do the rules of practice require the defendant to challenge that jurisdiction by a motion to dismiss?" |
| 7718 | Comm'r Of Prob. v. Adams, 65 Mass. App. Ct. 725, 730, 843 N.E.2d 1101, 1106 (2006) | 6 | A court must be sufficiently empowered in order to prevent fraud on the court, because allowing the court to be manipulated by fraud poses a danger to its authority. | A court must be sufficiently empowered in order to prevent fraud on the court, because allowing the court to be manipulated by fraud poses a danger to its authority. | Should a court be sufficiently empowered in order to prevent fraud on the court because allowing the court to be manipulated by fraud poses a danger to its authority? |
| 7722 | State ex rel. DeSelm v. Jordan, 296 S.W.3d 530, 533 (Tenn. Ct. App. 2008) | 2 | A case must maintain its justiciability throughout the entire course of the litigation in order to avoid being dismissed as moot. | A case must maintain its justiciability throughout the entire course of the litigation in order to avoid being dismissed as moot. | Should a case maintain its justiciability throughout the entire course of the litigation in order to avoid being dismissed as moot? |
| 7762 | Saul v. Cahan, 153 A.D.3d 947, 948, 61 N.Y.S.3d 265, 268 (2017) | 2 | The elements of a cause of action to recover damages for breach of fiduciary duty are (1) the existence of a fiduciary relationship; (2) misconduct by the defendant; and (3) damages directly caused by the defendant's misconduct. | The elements of a cause of action to recover damages for breach of fiduciary duty are (1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct" | "Is the existence of a fiduciary relationship, an element of a cause of action to recover damages for breach of fiduciary duty?" |
| 7763 | Jefferson Apartments, Inc. v. Mauceri, 52 Misc. 3d 1012, 36 N.Y.S.3d 789 (N.Y. Sup. 2016) | 18 | In order to plead a prima facie case of fraud, a plaintiff must allege each of the elements of fraud with particularity and must support each element with an allegation of fact. McKinney's CPLR 3016(b). | In order to plead a prima facie case of fraud, a plaintiff must allege each of the elements of fraud with particularity and must support each element with an allegation of fact. McKinney's CPLR 3016(b). | Should a plaintiff allege each of the elements of fraud to plead a prima facie case of fraud? |
| 7765 | Cornelius v. River Ridge Ranch Landowners Ass'n, 202 P.3d 564, 569 (Colo. 2009) | 6 | To succeed in a motion to dismiss for failure to prosecute, the movant must prove the plaintiff has unusually or unreasonably delayed prosecution. | To succeed in a motion to dismiss for failure to prosecute, the movant must prove the plaintiff has unusually or unreasonably delayed prosecution. | "Should a movant prove that plaintiff has unusually or unreasonably delayed prosecution, to succeed in a motion to dismiss for failure to prosecute?" |
| 7770 | Temple v. Guideone Specialty Mut. Ins. Co., 330 S.W.3d 318, 325 (Tex. App. 2009) | 18 | A dismissal for want of prosecution is not intended to be an adjudication of the merits of the case or the rights of the parties; it merely returns the parties to the position that they were in before suit was filed. | A dismissal for want of prosecution is not intended to be an adjudication of the merits of the case or the rights of the parties; it merely returns the parties to the position that they were in before suit was filed. | "Is a dismissal for want of prosecution, intended to be an adjudication of the merits of the case or the rights of the parties?" |

| | | | | | |
|---|---|---|---|---|---|
| 7777 | K's Merch. Mart v. Northgate Ltd. P'ship, 359 Ill. App. 3d 1137, 1144 (2005) | 16 | A party who executes an estoppel certificate that there are no defaults is under a duty to inquire and determine, insofar as reasonably possible, what claims exist. | A party who executes an estoppel certificate that there are no defaults is under a duty to inquire and determine, insofar as reasonably possible, what claims exist. | Is a party who executes an estoppel certificate that there are no defaults under a duty to inquire and determine what claims exist? |
| 7779 | Woods v. D.C., 63 A.3d 551, 552–53 (D.C. 2013) | 1 | To survive a motion to dismiss, a complaint must set forth sufficient facts to establish the elements of a legally cognizable claim. | To survive a motion to dismiss, a complaint must set forth sufficient facts to establish the elements of a legally cognizable *553 claim. | "To survive a motion to dismiss, should a plaintiff's complaint set forth sufficient information to outline the elements of his claim?" |
| 7805 | Value Rent-A-Car, Inc. v. Grace, 794 So. 2d 619, 620 (Fla. Dist. Ct. App. 2001) | 3 | An affirmative defense may serve as a basis for a motion to dismiss only if the defense appears within the four corners of the complaint. | An affirmative defense may serve as a basis for a motion to dismiss only if the defense appears within the four corners of the complaint. | Does an affirmative defense serve as a basis for a motion to dismiss only if defense appears within the four corners of the complaint? |
| 7808 | Churchill v. Mayo, 224 S.W.3d 340, 346–47 (Tex. App. 2006) | 14 | An affidavit that does not state that the facts recited are true, but is based on personal knowledge and is subscribed to and sworn before a notary public, is not defective. | An affidavit that does not state that the facts recited are true, but is based on personal knowledge and is subscribed to and sworn before a notary public, is not defective. | "Is an affidavit, which is based on personal knowledge and sworn to before a notary effective even if it does not state that the facts recited are true?" |
| 7845 | Spence v. Spence, 368 S.C. 106, 128 (2006) | 27 | Dismissal of a case "without prejudice" means a plaintiff may reassert her complaint by curing defects that led to the dismissal. | Dismissal of a case "without prejudice" means a plaintiff may reassert her **881 complaint by curing defects that led to the dismissal. | "Does a dismissal of a case ""without prejudice"" mean a plaintiff can reassert her complaint by curing defects that led to the dismissal?" |
| 7846 | Valero Terrestrial Corp. v. Caffrey, 205 F.3d 130, 134 (4th Cir. 2000) | 5 | To determine whether a particular charge is a "fee" or a "tax," the general inquiry is to assess whether the charge is for revenue raising purposes, making it a "tax," or for regulatory or punitive purposes, making it a "fee." | To determine whether a particular charge is a "fee" or a "tax," the general inquiry is to assess whether the charge is for revenue raising purposes, making it a "tax," or for regulatory or punitive purposes, making it a "fee." | What is the general inquiry to determine whether a particular charge is a fee or a tax? |
| 7858 | Ritter v. BJC Barnes Jewish Christian Health Sys., 987 S.W.2d 377, 385 (Mo. Ct. App. 1999) | 20 | The following elements are required to create an agency relationship sufficient to establish vicarious liability: (1) the principal must consent, expressly or impliedly, to the agent's acting on the principal's behalf; and, (2) the agent must be subject to the principal's control. | The following elements are required to create an agency relationship sufficient to establish vicarious liability: (1) the principal must consent, expressly or impliedly, to the agent's acting on the principal's behalf; and, (2) the agent must be subject to the principal's control. | How is vicarious liability established? |
| 7913 | Wheeler v. Eftink, 507 S.W.3d 598, 600 (Mo. Ct. App. 2016) | 1 | While exercising sound judicial discretion, trial courts have an inherent power to dismiss a case for failure to prosecute with due diligence. | While exercising sound judicial discretion, trial courts have an inherent power to dismiss a case for failure to prosecute with due diligence. | Does the court have the inherent power to dismiss a case for failure to prosecute with due diligence? |
| 7915 | Bus. Servs. of Am. II v. WaferTech LLC, 159 Wash. App. 591, 599, 245 P.3d 257, 261 (2011) | 8 | A court of general jurisdiction has the inherent power to dismiss actions for lack of prosecution, but only when no court rule or statute governs the circumstances presented. | A court of general jurisdiction has the inherent power to dismiss actions for lack of prosecution, but only when no court rule or statute governs the circumstances presented. | Does the court of general jurisdiction have the inherent power to dismiss actions for lack of prosecution? |

| 7916 | State ex rel. Nixon v. Summit Inv. Co., 186 S.W.3d 428, 434 (Mo. Ct. App. 2006) | 10 | The court's discretion to dismiss a case for failure to prosecute is not a mental discretion, but a legal discretion, to be exercised in conformity with the spirit of the law, and in a manner to serve the ends of substantial justice. | "The court's discretion to dismiss a case for failure to prosecute 'is not a mental discretion, but a legal discretion, to be exercised in conformity with the spirit of the law, and in a manner to serve the ends of substantial justice.' " | Is the court's discretion to dismiss a case for failure to prosecute a mental discretion? |
|---|---|---|---|---|---|
| 7980 | Odyssey Marine Exploration v. Unidentified Shipwrecked Vessel, 657 F.3d 1159, 1171 (11th Cir. 2011) | 13 | Although federal courts have the exclusive power to adjudicate in rem suits against a vessel, that power is dependent on the court's jurisdiction over the res, the property named as the defendant. | Although federal courts have the exclusive power to adjudicate in rem suits against a vessel, that power is dependent on the court's jurisdiction over the res, the property named as the defendant. | Do federal courts have the exclusive power to adjudicate in rem suits against a vessel? |
| 7995 | Barratt Am. Inc. v. City of Rancho Cucamonga, 37 Cal. 4th 685, 700 (2005) | 5 | In general, taxes are imposed for revenue purposes, rather than in return for a specific benefit conferred or privilege granted. | In general, taxes are imposed for revenue purposes, rather than in return for a specific benefit conferred or privilege granted. | Are taxes imposed for revenue purposes rather than in return for a specific benefit conferred or privilege granted? |
| 8002 | Lothspeich v. Sam Fong, 6 Haw. App. 118, 119 (1985) | 5 | A defendant in a pending action may not be required before judgment to give information concerning his assets, as such information is not relevant to the subject matter. | A defendant in a pending action may not be required before judgment to give information concerning his assets, as such information is not relevant to the subject matter. | Can a defendant in a pending action not be required before judgment to give information concerning his assets as such information is not relevant? |
| 8031 | S. Farm Bureau Cas. Ins. Co. v. Tallant, 362 Ark. 17, 23 (2005) | 3 | A right in equity to subrogation may arise by convention, or in other words, by way of a subrogation provision in a contract; however, it may also arise as legal or equitable subrogation, or in other words by operation of law based on facts giving rise to a right of subrogation. | A right in equity to subrogation may arise by convention, or in other words, by way of a subrogation provision in a contract; however, it may also arise as legal or equitable subrogation, or in other words by operation of law based on facts giving rise to a right of subrogation. | How do subrogation rights arise? |
| 8041 | Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd., 139 F.3d 1061, 1065 (5th Cir. 1998) | 3 | Determining whether the parties agreed to arbitrate the dispute in question involves two considerations: (1) whether a valid agreement to arbitrate between the parties exists; and (2) whether the dispute in question falls within the scope of that arbitration agreement. | Determining whether the parties agreed to arbitrate the dispute in question involves two considerations: (1) whether a valid agreement to arbitrate between the parties exists; and (2) whether the dispute in question falls within the scope of that arbitration agreement. | What are the factors to be considered for determining whether the parties agree to arbitrate the dispute? |
| 8055 | In re Belfry, 862 F.2d 661, 662 (C.A.8 (Minn.), 1988) | 5 | One cannot embezzle one's own property. | One cannot embezzle one's own property. | Can a person embezzle from himself or his own property? |
| 8065 | Pivar v. Graduate Sch. of Figurative Art of the New York Acad. of Art, 290 A.D.2d 212, 213, 735 N.Y.S.2d 522, 524 (2002) | 3 | A bailment may be created by operation of law; it is the element of lawful possession, and the duty to account for the thing as the property of another, that creates the bailment, whether such possession results from contract or is otherwise lawfully obtained. | A bailment "may be created by operation of law. It is the element of lawful possession, and the duty to account for the thing as the property of another, that creates the bailment, whether such possession results from contract or is otherwise lawfully obtained. | Does lawful possession of property create a bailment? |

| | | | | | |
|---|---|---|---|---|---|
| 8079 | State v. Torres, 66 Haw. 281, 281, 660 P.2d 522, 523 (1983) | 3 | Where the offense charged is a felony defined by the penal code and no legislative purpose to impose absolute liability for the offense or any of its elements clearly appears, its establishment requires a showing that the defendant acted intentionally. | Where the offense charged is a felony defined by the Penal Code and no legislative purpose to impose absolute liability for the offense or any of its elements clearly appears, its establishment requires a showing that the defendant acted intentionally. | Is intent a necessary element to show that a crime of incest has been committed? |
| 8091 | Compucom Sys. v. Getronics Fin. Holdings B.V., 635 F. Supp. 2d 371, 377–78 (D. Del. 2009) | 3 | If two parties enter into a valid agreement and a specific dispute falls within the scope of an arbitration clause in that agreement, public policy favors the enforcement of the arbitration clause. | If two parties enter into a valid agreement and a specific dispute falls within the scope of an arbitration clause in that agreement, public policy favors the enforcement of the arbitration clause. | When does public policy favor the enforcement of the arbitration clause? |
| 8095 | First Assembly of God v. Texas Utilities Elec. Co., 52 S.W.3d 482, 491 (Tex. App. 2001) | 20 | Generally, a public utility has a duty to exercise ordinary and reasonable care, but the degree of care required must be commensurate with the danger. | Generally, a public utility has a duty to exercise ordinary and reasonable care, but the degree of care required must be commensurate with the danger. | Should the duty to exercise ordinary and reasonable care of the public utility commensurate with the danger? |
| 8111 | State v. Green, 182 Wash. App. 133, 142–43 (2014) | 1 | The corpus delicti principle requires that the State prove that some crime actually occurred, which for a homicide involves establishing (1) the fact of death, and (2) a causal connection between the death and a criminal act. | The corpus delicti principle requires that the State prove that some crime actually occurred, which for a *143 homicide involves establishing (1) the fact of death, and (2) a causal connection between the death and a criminal act. | Is fact of death an element of corpus delicti? |
| 8114 | S.F. v. Arkansas Dep't of Health & Human Servs., 101 Ark. App. 236, 240–41 (2008) | 1 | In malicious prosecution cases, the advice-of-counsel defense applies if the parties have made a full disclosure of all relevant facts to competent counsel and have acted in bona fide reliance thereon. | In malicious-prosecution cases, the advice-of- counsel defense applies if the parties have made a full disclosure of all relevant facts to competent counsel and have acted *241 in bona fide reliance thereon. | When does the advice of counsel defense apply to a malicious prosecution claim? |
| 8122 | People v. Knapp, 155 N.E.2d 565, 568, 15 Ill.2d 450, 454 (Ill. 1959) | 3 | The gravamen of the crime of incest, as of sodomy, is the unlawful carnal knowledge of the body. | The gravamen of the crime of incest, as of sodomy, is the unlawful carnal knowledge of the body | Is carnal knowledge an element of the crime of incest? |
| 8143 | Grunwald v. McCall, 2014 Ark. App. 596, 446 S.W.3d 217, 221 (2014) | 2 | When the court declines to rule on a motion in limine, it is necessary for counsel to make a specific objection during the trial. | When the court declines to rule on a motion in limine, it is necessary for counsel to make a specific objection during the trial. | "When the court declines to rule on a motion in limine, is it necessary for counsel to make a specific objection during the trial?" |
| 8147 | State Farm Mut. Auto. Ins. Co. v. Illinois Farmers Ins. Co., 368 Ill. App. 3d 914, 921 (2006) | 7 | "Indemnification" involves an entity pursuing its rights in its own name, while "subrogation" involves a subrogee succeeding to another's right to payment. | Indemnification involves an entity pursuing its rights in its own name, while subrogation involves a subrogee succeeding to another's right to payment. | "Does indemnification involve an entity pursuing its rights in its own name, while subrogation involves a subrogee succeeding to another's right to payment?" |
| 8148 | Bennett Truck Transp. v. Williams Bros. Const., 256 S.W.3d 730, 734 (Tex. App. 2008) | 9 | Equitable subrogation is an equitable remedy that involves balancing of all the equities in the circumstances, including any negligence of the party seeking subrogation. | Equitable subrogation is an equitable remedy that involves balancing of all the equities in the circumstances, including any negligence of the party seeking subrogation. | "Is equitable subrogation an equitable remedy that involves balancing of all the equities in the circumstances, including any negligence of the party seeking subrogation?" |

| | | | | | |
|---|---|---|---|---|---|
| 8158 | Colella v. JMS Trucking Co. of Illinois, 403 Ill. App. 3d 82, 92–93, 932 N.E.2d 1163, 1174 (2010) | 17 | A trial court maintains broad discretion in both the admission of evidence and in ruling upon a motion in limine, and a decision on a motion in limine will not be disturbed absent an abuse of that discretion. | A trial court maintains broad discretion in both the admission of *93 evidence and in ruling upon a motion in limine, and a decision on a motion in limine will not be disturbed absent an abuse of that discretion. | Will a decision on a motion in limine be disturbed absent an abuse of discretion? |
| 8159 | City of Livermore v. Baca, 205 Cal. App. 4th 1460, 1465, 141 Cal. Rptr. 3d 271, 276 (2012) | 1 | In limine motions are designed to facilitate the management of a case, generally by deciding difficult evidentiary issues in advance of trial. | In limine motions are designed to facilitate the management of a case, generally by deciding difficult evidentiary issues in advance of trial. | Are in limine motions designed to decide difficult evidentiary issues in advance of trial? |
| 8161 | Chacon v. Jones-Schilds, 904 N.E.2d 286, 288–89 (Ind. Ct. App. 2009) | 2 | The granting of a motion in limine is an adjunct of the inherent power of trial courts to admit and exclude evidence. | The granting of a motion in *289 limine is an adjunct of the inherent power of trial courts to admit and exclude evidence. | Is the granting of a motion in limine an adjunct of the inherent power of trial courts to admit and exclude evidence? |
| 8163 | Lambert v. Coonrod, 2012 IL App (4th) 110518, ¶ 18 (2012) | 1 | A trial judge has discretion in granting a motion in limine and a reviewing court will not reverse a trial court's order allowing or excluding evidence unless that discretion was clearly abused. | A trial judge has discretion in granting a motion in limine and a reviewing court will not reverse a trial court's order allowing or excluding evidence unless that discretion was clearly abused. | Does a trial judge have discretion in granting a motion in limine? |
| 8172 | Van Hoof v. Van Hoof, 997 So. 2d 278, 296 (Ala. 2007) | 21 | A cause of action accrues at the time the complained-of action first gives rise to injury, even if the full extent of the injury is not apparent at the time. | A cause of action accrues at the time the complained-of action first gives rise to injury, even if the full extent of the injury is not apparent at the time. | Does a cause of action accrue at the time the complained-of action first gives rise to injury? |
| 8194 | Appel v. LePage, 135 Idaho 133, 135, 15 P.3d 1141, 1143 (2000) | 1 | Trial courts have broad discretion in determining the admissibility of evidence in cases before them and ruling on motions in limine. | Trial courts have broad discretion in determining the admissibility of evidence in cases before them and ruling on motions in limine. | Do trial courts have broad discretion in determining the admissibility of evidence in cases before them and ruling on motions in limine? |
| 8209 | Sarhank Grp. v. Oracle Corp., 404 F.3d 657, 661 (2d Cir. 2005) | 4 | Agreement to arbitrate must be voluntarily made, and the court decides, based on general principles of domestic contract law, whether the parties agreed to submit the issue of arbitrability to the arbitrators. | agreement to arbitrate must be voluntarily made, and the Court decides, based on general principles of domestic contract law, whether the parties agreed to submit the issue of arbitrability to the arbitrators. | Can agreements to arbitrate be made voluntarily? |
| 8224 | In re Commitment of Kelley, 2012 IL App (1st) 110240, 972 N.E.2d 667, 675 (2012) | 2 | A ruling on a motion in limine is a matter within the discretion of the trial court and will not be reversed absent an abuse of that discretion. | A ruling on a motion in limine is a matter within the discretion of the trial court and will not be reversed absent an abuse of that discretion. | Is a ruling on a motion in limine a matter within the discretion of the trial court that will not be reversed absent an abuse of that discretion? |
| 8226 | Colella v. JMS Trucking Co. of Illinois, 403 Ill. App. 3d 82, 92–93, 932 N.E.2d 1163, 1174 (2010) | 17 | A trial court maintains broad discretion in both the admission of evidence and in ruling upon a motion in limine, and a decision on a motion in limine will not be disturbed absent an abuse of that discretion. | A trial court maintains broad discretion in both the admission of *93 evidence and in ruling upon a motion in limine, and a decision on a motion in limine will not be disturbed absent an abuse of that discretion. | "Are rulings on evidence motions, such as motions in limine, left undisturbed on review absent an abuse of discretion?" |

| 8229 | Enbridge Energy (Illinois) v. Kuerth, 2016 IL App (4th) 150519, ¶¶ 89-90, 69 N.E.3d 287, 304 | 6 | Generally, evidentiary motions, such as motions in limine, are directed to the trial court's sound discretion, and reviewing courts will not disturb a trial court's evidentiary rulings absent an abuse of discretion. | Generally, evidentiary motions, such as motions in limine, are directed to the trial court's sound discretion, and reviewing courts will not disturb a trial court's evidentiary rulings absent an abuse of discretion. | Is an evidentiary ruling on a motion in limine left to the sound discretion of the trial judge and only reversed upon a clear showing of an abuse of discretion? |
|---|---|---|---|---|---|
| 8230 | Kirk v. Ford Motor Co., 141 Idaho 697, 701 (2005) | 8 | When presented with a motion in limine, a trial court has the authority to deny the motion and wait until trial to determine if the evidence should or should not be excluded. | When presented with a motion in limine, a trial court has the authority to deny the motion and wait until trial to determine if the evidence should or should not be excluded. | "When presented with a motion in limine, does a trial court have the authority to deny the motion and wait until trial to determine if the evidence should be excluded?" |
| 8251 | Lambert v. Coonrod, 2012 IL App (4th) 110518, ¶ 18 (2012) | 1 | A trial judge has discretion in granting a motion in limine and a reviewing court will not reverse a trial court's order allowing or excluding evidence unless that discretion was clearly abused. | A trial judge has discretion in granting a motion in limine and a reviewing court will not reverse a trial court's order allowing or excluding evidence unless that discretion was clearly abused. | Is the granting of a motion in limine left to the sound discretion of the trial judge? |
| 8258 | Mem'l Hosp. v. Heckler, 706 F.2d 1130, 1137 (11th Cir. 1983) | 7 | Until appellate rights are exhausted, even an otherwise valid judgment may be negated by supervening legislation. | Until appellate rights are exhausted, even an otherwise valid judgment may be negated by supervening legislation. | "Until appellate rights are exhausted, may even an otherwise valid judgment be negated by supervening legislation?" |
| 8296 | Chase v. Ameriquest Mortg. Co., 155 N.H. 19, 26 (N.H. 2007) | 16 | In any subrogation case, the burden of proving entitlement is on the subrogee, which generally includes proof of the existence and applicability of equitable principles or contractual provisions as to subrogation and reimbursement. | In any subrogation case, the burden of proving entitlement is on the subrogee, which generally includes proof of: the existence and applicability of equitable principles or contractual provisions as to subrogation and reimbursement. | "Is the burden of proving entitlement on the subrogee, in a subrogation case?" |
| 8338 | Norton Farms, Inc. v. Anadarko Petroleum Corp., 32 Kan. App. 2d 899, 904 (Kan. Ct. App. 2004) | 2 | The essential purpose of pretrial conference procedure is to prevent surprise and enable the parties to prepare for trial with the assurance that contentions, issues, and evidence will not be moving targets. | The essential purpose of pretrial conference procedure is to prevent surprise and enable the parties to prepare for trial with the assurance that contentions, issues, and evidence will not be moving targets. | What is the essential purpose of a pretrial conference procedure? |
| 8345 | Stringer v. Packaging Corp., 351 Ill. App. 3d 1135, 1138 (2004) | 2 | Potential litigants have a duty to take reasonable measures to preserve the integrity of relevant and material evidence. | Potential litigants have a duty to take reasonable measures to preserve the integrity of relevant and material evidence. | Do potential litigants have a duty to take reasonable measures to preserve the integrity of relevant and material evidence? |
| 8366 | Stringer v. Packaging Corp., 351 Ill. App. 3d 1135, 1138 (2004) | 2 | Potential litigants have a duty to take reasonable measures to preserve the integrity of relevant and material evidence. | Potential litigants have a duty to take reasonable measures to preserve the integrity of relevant and material evidence. | Does a potential litigant have a duty to take reasonable measures to preserve the integrity of relevant and material evidence? |
| 8411 | Board of County Comm'rs v. Allen, 175 Kan. 460, 264 P.2d 916 (Kan. 1953) | 3 | The entire matter of taxation, including the levy and collection of taxes, is statutory and does not exist apart from statute. | The entire matter of taxation, including the levy and collection of taxes, is statutory and does not exist apart from statute. | "Is the entire matter of taxation, including the levy and collection of taxes, statutory and does not exist apart from statute?" |

| | | | | | |
|---|---|---|---|---|---|
| 8434 | Grynberg v. Karlin, 134 P.3d 563, 565 (Colo.App., 2006) | 1 | When a party fails to respond in a timely way to a request for admission, it admits the relevant subject matter of the request. | When a party fails to respond in a timely way to a request for admission, it admits the relevant subject matter of the request. | "When a party fails to respond in a timely way to a request for admission, does it admit the relevant subject matter of the request?" |
| 8492 | United States v. Fernandez, 722 F.3d 1, 19 (1st Cir. 2013) | 18 | Although the timing of the payment may not provide a conclusive answer as to whether that payment is a bribe or a gratuity, the timing of the agreement to make or receive a payment may: one cannot agree to perform an act in exchange for payment when that act has already been performed. | Although the timing of the payment may not provide a conclusive answer as to whether that payment is a bribe or a gratuity, the timing of the agreement to make or receive a payment may: one cannot agree to perform an act in exchange for payment when that act has already been performed. | Can a gratuity for a past act be distinguished from a bribe? |
| 8496 | Cook v. Nacogdoches Anesthesia Group, 167 S.W.3d 476, 482 (Tex. App. 2005) | 25 | A plaintiff's right to a nonsuit exists from the time the plaintiff files a motion for nonsuit or asks for one in open court. | A plaintiff's right to a nonsuit exists from the time the plaintiff files a motion for nonsuit or asks for one in open court. | Does a plaintiff's right to a nonsuit exist from the time the plaintiff files a motion for nonsuit or asks for one in open court? |
| 8509 | Deutsche Bank National Trust Co. v. McGurk, 206 Cal.App.4th 201, 212, 141 Cal. Rptr. 3d 603, 12 Cal. Daily Op. Serv. 5587, 2012 Daily Journal D.A.R. 6683 (Cal. Ct. App. 2012) | 3 | When an action is wilfully dismissed by the plaintiff against one or more of several defendants the effect is the same as if the action had been originally brought against the remaining defendants. | When an action is wilfully dismissed by the plaintiff against one or more of several defendants the effect is the same as if the action had been originally brought against the remaining defendants. | "When an action is wilfully dismissed by a plaintiff against one or more of several defendants, is the effect same as if the action had been originally brought against only the remaining defendants?" |
| 8524 | Alpha School Bus Co. v. Wagner, 391 Ill. App. 3d 722, 748, 910 N.E.2d 1134 (Ill. App. Ct. 2009) | 58 | As a general rule, a trial court should exercise its discretion liberally in favor of allowing amendments if doing so will further the ends of justice, and it should resolve any doubts in favor of allowing amendments. | As a general rule, a trial court should exercise its discretion liberally in favor of allowing amendments if doing so will further the ends of justice, and it should resolve any doubts in favor of allowing amendments. | Should a trial court exercise its discretion liberally in favor of allowing amendments to pleadings? |
| 8560 | Annexation Ordinance v. City of Evansville, 955 N.E.2d 769, 776 (Ind. Ct. App. 2011) | 11 | When a dispositive issue in a case has been resolved in such a way as to render it unnecessary to decide the question involved, the case will be dismissed. | When a dispositive issue in a case has been resolved in such a way as to render it unnecessary to decide the question involved, the case will be dismissed. | Will the case be dismissed if a dispositive issue in a case has been resolved in such a way as to render it unnecessary to decide the question involved? |
| 8585 | In re Est. of Whittaker, 261 S.W.3d 615, 617 (Mo. Ct. App. 2008) | 2 | When a party lacks standing, a court has no jurisdiction to grant the relief requested and the case must be dismissed. | When a party lacks standing, a court has no jurisdiction to grant the relief requested and the case must be dismissed. | "When a party lacks standing, does a court have jurisdiction to grant the relief requested and the case must be dismissed?" |
| 8614 | Romine v. Romine, 100 N.M. 403, 404 (1983) | 3 | An action is properly dismissed if the issues therein become moot, leaving the court without jurisdiction. | An action is properly dismissed if the issues therein become moot, leaving the court without jurisdiction. | "Is an action properly dismissed if the issues therein become moot, leaving the court without jurisdiction?" |

| 8651 | Brown v. Eubank, 443 S.W.2d 386, 389 (Tex. Civ. App. 1969) | 1 | The general rule is that either party may revoke a common-law submission to arbitration at any time before an award has been made, leaving to the aggrieved party his action for damages for breach of contract. | The general rule is that either party may revoke a common law submission to arbitration at any time before an award has been made, leaving to the aggrieved party his action for damages for breach of contract. | What is the remedy for the aggrieved party if the submission to arbitration is revoked? |
|---|---|---|---|---|---|
| 8692 | Crowell v. Cox, 525 S.W.3d 578, 583 (Mo. Ct. App. 2017) | 7 | In addressing a motion to dismiss for failure to state a claim, the circuit court is to review the petition to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in that case. | In addressing a motion to dismiss for failure to state a claim, the circuit court is to review the petition "to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in that case. | "In reviewing the petition to determine if it states a claim, do courts accept the allegations in the petition as true?" |
| 8693 | Belcher Center LLC v. Belcher Center, Inc., 883 So. 2d 338, 339 (Fla. Dist. Ct. App. 2004) | 3 | If the court is required to consider matters outside of the four corners of the complaint, then the cause is not subject to dismissal on the basis of an affirmative defense. | If the court is required to consider matters outside of the four corners of the complaint, then the cause is not subject to dismissal on the basis of an affirmative defense. | Is the court required to consider matters outside of the four corners of the complaint? |
| 8722 | Fatpipe, Inc. v. State, 2012 Ark. 248, ¶ 6 (Ark. 2012) | 4 | In testing the sufficiency of a complaint on a motion to dismiss, all reasonable inferences must be resolved in favor of the complaint, and all pleadings are to be liberally construed. | In testing the sufficiency of a complaint **578 on a motion to dismiss, all reasonable inferences must be resolved in favor of the complaint, and all pleadings are to be liberally construed. | "In testing the sufficiency of a complaint on a motion to dismiss, should all reasonable inferences be resolved in favor of the complaint?" |
| 8733 | Shedden v. Anadarko E. & P. Co., 635 Pa. 381, 393 (2016) | 10 | The doctrine of equitable estoppel prevents one from doing an act differently than the manner in which another was induced by word or deed to expect. | The doctrine of equitable estoppel prevents one from doing an act differently than the manner in which another was induced by word or deed to expect. | Does equitable estoppel prevent one from doing an act differently from the manner in which another was induced to expect? |
| 8781 | Thibodeaux v. Ferrellgas Inc., 717 So. 2d 668, 674 (La. Ct. App. 1998) | 8 | Until a judgment dismissing a suit is filed, the proceeding is still pending even if the parties have settled the matter. | Until a judgment dismissing a suit is filed, the proceeding is still pending even if the parties have settled the matter. | "Until a judgment dismissing a suit is filed, is the proceeding still pending even if the parties have settled the matter?" |
| 8810 | Crooked Creek, III, Inc. v. City of Greenwood, 352 Ark. 465, 465 (Ark. 2003) | 8 | Where a dismissal is with prejudice, it is conclusive of the rights of the parties as if the suit had been prosecuted to a final adjudication adverse to the plaintiff. | Where a dismissal is with prejudice, it is conclusive of the rights of the parties as if the suit had been prosecuted to a final adjudication adverse to the plaintiff. | "Where a dismissal is with prejudice, is it conclusive of the rights of the parties as if the suit had been prosecuted to a final adjudication adverse to the plaintiff?" |
| 8811 | N.M. Uninsured Emp'rs Fund v. Gallegos, 395 P.3d 533, 542-43 (N.M. Ct. App. 2017) | 9 | When a case is dismissed without prejudice for failure to prosecute, the dismissal operates to leave the parties as if no action had been brought at all. | When a case is dismissed without prejudice for failure to prosecute, the dismissal operates to leave the parties as if no action has been brought at all. | "When a case is dismissed without prejudice for failure to prosecute, does the dismissal operate to leave the parties as if no action has been brought at all?" |

| 8820 | Mcafee, Inc. v. Agilysys, Inc., 316 S.W.3d 820, 829 (Tex. App. 2010) | 20 | The critical element of an agency relationship is the right to control, and the principal must have control of both the means and details of the process by which the agent is to accomplish his task in order for an agency relationship to exist. | The critical element of an agency relationship is the right to control, and the principal must have control of both the means and details of the process by which the agent is to accomplish his task in order for an agency relationship to exist. | "Is right to control, the critical element of agency relationship?" |
|---|---|---|---|---|---|
| 8853 | Streu v. City of Colorado Springs, 239 P.3d 1264, 1268 (Colo. 2010) | 3 | The decision to dismiss an action for failure to prosecute lies within the sound discretion of the water court. | The decision to dismiss an action for failure to prosecute lies within the sound discretion of the water court. | Does the decision to dismiss an action for failure to prosecute lie within the sound discretion of the water court? |
| 8869 | Morrison v. Labor and Ind. Rel. Comm, 23 S.W.3d 902, 909 (Mo. Ct. App. 2000) | 11 | Indicia of a partnership relationship includes a right to a voice in management of the partnership business, a share of the profits of the partnership business, and a corresponding risk of loss and liability to partnership creditors. | Indicia of a partnership relationship includes a right to a voice in management of the partnership business, a share of the profits of the partnership business, and a corresponding risk of loss and liability to partnership creditors. | Is right to a voice in management of the partnership business an indicia of a partnership relationship? |
| 8870 | Barrett v. City of Margate, 743 So. 2d 1160, 1162 (Fla. Dist. Ct. App. 1999) | 1 | Dismissing an action with prejudice due to defective pleading is not proper unless the plaintiff has been given an opportunity to amend. | Dismissing an action with prejudice due to defective pleading is not proper unless the plaintiff has been given an opportunity to amend. | Is dismissing an action with prejudice due to defective pleading proper without giving the plaintiff an opportunity to amend? |
| 8921 | Perez v. State, 596 S.E.2d 191, 193, 266 Ga.App. 82, 84 (Ga.App.,2004) | 2 | Jeopardy attaches once a jury is impaneled and sworn, and a defendant has a valuable right under the Double Jeopardy Clause to be tried by the original impaneled jury. | Jeopardy attaches once a jury is impaneled and sworn, and a defendant has a valuable right under the Double Jeopardy Clause to be tried by the original impaneled jury. | Does jeopardy attach once a jury is impaneled to try the issue of guilt? |
| 8940 | First Louisiana Bank v. Morris, 6 So. 3d 1047, 1050 (La. Ct. App. 2009) | 4 | The same actions or omissions may constitute breaches of general duties as well as contractual duties, giving rise to causes of actions in tort and contracts. | The same actions or omissions may constitute breaches of general duties as well as contractual duties, giving rise to causes of actions in tort and contracts. | Can the same actions or omissions constitute breaches of general duties as well as contractual duties? |
| 8969 | CRANE v. RICHARDSON BIKE MART, 295 S.W.3d 1, 4-5 (Tex. App. 2009) | 9 | The accrual of a cause of action means the right to institute and maintain a suit, and whenever one person may sue another a cause of action has accrued. | The accrual of a cause of action means the right to institute and maintain a suit, and whenever one person may sue another a cause of action has accrued. | "Does a cause of action accrue when suit may be maintained thereon, for purposes of determining standing to sue?" |
| 8992 | I.N.S. v. Lopez-Mendoza, 104 S.Ct. 3479, 3483–84, 468 U.S. 1032, 1039 (U.S.,1984) | 5 | The "body" or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred. | The "body" or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, **3484 or interrogation occurred. | Is the identity of a respondent suppressible in a civil proceeding? |

| | | | | | |
|---|---|---|---|---|---|
| 8998 | WMC Mortg. Corp. v. Starkey, 200 S.W.3d 749, 752 (Tex. App. 2006) | 5 | The trial court may dismiss a case for want of prosecution under its inherent power to control its docket if the case has not been prosecuted with diligence. | The trial court may dismiss a case for want of prosecution under its inherent power to control its docket if the case has not been prosecuted with diligence. | Can a court dismiss a case for want of prosecution under its inherent power to control its docket if the case has not been prosecuted with diligence? |
| 9004 | Santana v. Henry, 12 So. 3d 843, 847 (Fla. Dist. Ct. App. 2009) | 11 | A trial judge may not sua sponte dismiss an action based on affirmative defenses not raised by proper pleadings. | A trial judge may not sua sponte dismiss an action based on affirmative defenses not raised by proper pleadings. | Can a judge dismiss an action based on affirmative defenses not raised by proper pleadings? |
| 9176 | Colella v. JMS Trucking Co., 942 N.E.2d 452, 238 Ill. 2d 648 (Ill. 2010) | 17 | A trial court maintains broad discretion in both the admission of evidence and in ruling upon a motion in limine, and a decision on a motion in limine will not be disturbed absent an abuse of that discretion. | A trial court maintains broad discretion in both the admission of *93 evidence and in ruling upon a motion in limine, and a decision on a motion in limine will not be disturbed absent an abuse of that discretion. | Does the trial court have wide discretion when ruling on a motion in limine? |
| 9177 | Perry v. Gulf Stream Coach, 871 N.E.2d 1038, 1047 (Ind. Ct. App. 2007) | 3 | The granting of a motion in limine is an adjunct of the inherent power of trial courts to admit and exclude evidence. | The granting of a motion in limine is an adjunct of the inherent power of trial courts to admit and exclude evidence. | Is the grant or denial of a motion in limine within the sound discretion of the trial court and is an adjunct of the power of trial courts to admit and exclude evidence? |
| 9225 | City of Wichita v. Denton, 296 Kan. 244, 255-56 (Kan. 2013) | 10 | The purpose of an order in limine is to assure a fair and impartial trial to all parties by excluding from trial inadmissible evidence, prejudicial statements, and improper questions. | The purpose of an order in limine is to assure a fair and impartial trial to all parties by excluding from trial inadmissible *256 evidence, prejudicial statements, and improper questions. | Does the purpose of an order in limine include fair and impartial trial? |
| 9238 | Ayala v. Lee, 215 Md. App. 457, 475 (Md. Ct. Spec. App. 2013) | 11 | An evidentiary ruling on a motion in limine is left to the sound discretion of the trial judge and will only be reversed upon a clear showing of abuse of discretion. | An evidentiary ruling on a motion in limine "is left to the sound discretion of the trial judge and will only be *475 reversed upon a clear showing of abuse of discretion." | Is the granting of a motion in limine left to the sound discretion of the trial judge? |
| 9314 | State ex rel. Oklahoma Bar Ass'n v. Busch, 976 P.2d 38, 45 (1998) | 9 | A well-crafted pretrial order makes specific the legal theories on which each party is proceeding and crystallizes the issues to be tried. | A well-crafted pretrial order makes specific the legal theories on which each party is proceeding and crystallizes the issues to be tried. | Does a well-crafted pretrial order make specific the legal theories on which each party is proceeding? |
| 9575 | M.L. v. Eskenazi Health / Midtown Mental Health CMHC, 80 N.E.3d 219, 222 (Ind. App. 2017) | 2 | When a court is unable to render effective relief to a party, the case is deemed moot and usually dismissed. | When a court is unable to render effective relief to a party, the case is deemed moot and usually dismissed. | Is the case deemed moot and then dismissed if a court is unable to render effective relief to a party? |
| 9592 | Union v. Family, 255 S.W.3d 586, 590 (Tenn. Ct. App. 2008) | 5 | In the absence of exceptional circumstances justifying an exception to the mootness doctrine, if a cause of action loses its character as a live controversy, it will be dismissed as moot. | In the absence of exceptional circumstances justifying an exception to the mootness doctrine, if a cause of action loses its character as a live controversy, it will be dismissed as moot. | Can a cause of action be dismissed as moot if it loses its character as a live controversy? |

| | | | | | |
|---|---|---|---|---|---|
| 9784 | Hardin v. Bishop, 2013 Ark. 395, 7, 430 S.W.3d 49, 54 (Ark. 2013) | 7 | The two essential elements of an agency relationship are (1) that an agent have the authority to act for the principal, and (2) that the agent act on the principal's behalf and be subject to the principal's control. | The two essential elements of an agency relationship are (1) that an agent have the authority to act for the principal, and (2) that the agent act on the principal's behalf and be subject to the principal's control. | Is the authority of an agent to act on behalf of a principal an essential element of agency relationship? |
| 10125 | Williams v. Stewart, 112 P.3d 281, 285, 137 N.M. 420, 424, 2005 -NMCA- 061, ¶ 12 (N.M.App., 2005) | 7 | The discovery rule provides that the cause of action accrues when the plaintiff discovers or with reasonable diligence should have discovered that a claim exists. | The discovery rule provides that "the cause of action accrues when the plaintiff discovers or with reasonable diligence should have discovered that a claim exists." | Does a cause of action arise when the plaintiff discovers or with reasonable diligence should have discovered that a claim exists? |
| 10145 | Bartlett Mill. v. Walnut Grove Auction Realty, 192 N.C. App. 74, 90 (N.C. Ct. App. 2008) | 33 | A motion in limine is interlocutory, and by its nature subject to being revisited by the trial court, as circumstances warrant. | A motion in limine is interlocutory, and by its nature subject to being revisited by the trial court, as circumstances warrant. | "Is a motion in limine interlocutory, and by its nature subject to being revisited by the trial court, as circumstances warrant?" |
| 10213 | State v. Deines, 268 Kan. 432, 432 (2000) | 9 | Where there is an obstruction across a public right-of-way which obstructs the travel of an individual, the obstruction is a nuisance per se and the affected individual may remove the obstruction by way of abatement. | Where there is an obstruction across a public right-of-way which obstructs the travel of an individual, the obstruction is a nuisance per se and the affected individual may remove the obstruction by way of abatement. | Can an individual remove the obstruction by way of abatement which obstructs his travel across a highway? |
| 10241 | James v. Calkins, 446 S.W.3d 135, 143 (Tex. App. 2014) | 9 | Although typically parties have an absolute right to a nonsuit, the decision to nonsuit does not affect a non-moving party's independent claims for affirmative relief, which may include a motion for sanctions. | Although typically parties have an absolute right to a nonsuit, the decision to nonsuit does not affect a non-moving party's independent claims for affirmative relief, which may include a motion for sanctions. | "Can a party nonsuit a cause of action, a claim, or a party?" |
| 10508 | In re R.M, 234 S.W.3d 619, 624 (Mo. Ct. App. 2007) | 6 | Dismissal for lack of subject matter jurisdiction is proper when it appears, by a preponderance of the evidence, that the court is without jurisdiction. | Dismissal for lack of subject matter jurisdiction is proper when it appears, by a preponderance of the evidence, that the court is without jurisdiction. | "Is a dismissal for lack of subject matter jurisdiction proper when it appears, by a preponderance of the evidence?" |
| 10514 | Northwestern Mut. Life Ins. Co. v. State Bd. of Equalization, 166 P.2d 917, 919, 73 Cal.App.2d 548, 551 (Cal.App. 1 Dist. 1946) | 1 | The terms "tax" and "assessment" except in the case of specific taxation both include the idea of some ratio or rule of apportionment. | The terms 'tax' and 'assessment,' except in the case of specific taxation, both include the idea of some ratio or rule of apportionment. | Do the terms tax and assessment both include the idea of some ratio or rule of apportionment? |
| 10539 | Steward v. Green, 189 N.C. App. 131 (2008) | 1 | When a party has not exhausted administrative remedies, the case should be dismissed for lack of subject matter jurisdiction. | When a party has not exhausted administrative remedies, the case should be dismissed for lack of subject matter jurisdiction. | "When a party has not exhausted administrative remedies, should the case be dismissed for lack of subject matter jurisdiction?" |
| 10787 | Texas Parks & Wildlife Dep't v. Garland, 313 S.W.3d 920, 926 (Tex. App. 2010) | 23 | Generally, the proper remedy when a court lacks subject matter jurisdiction is to dismiss the case without prejudice, but when a dispositive defect cannot be remedied, dismissal with prejudice is proper. | Generally, the proper remedy when a court lacks subject matter jurisdiction is to dismiss the case without prejudice, but when a dispositive defect cannot be remedied, dismissal with prejudice is proper. | "When a dispositive defect cannot be remedied, is dismissal with prejudice proper?" |

| | | | | | |
|---|---|---|---|---|---|
| 10804 | Obenschain v. Williams, 750 So. 2d 771, 773 (Fla. Dist. Ct. App. 2000) | 4 | Dismissal with prejudice is an abuse of discretion where a pleader may be able to allege additional facts to support its cause of action or support another cause of action under a different legal theory. | Dismissal with prejudice is an abuse of discretion where a pleader may be able to allege additional facts to support its cause of action or support another cause of action under a different legal theory. | Should a court dismiss a complaint with prejudice if it is actionable on any ground? |
| 10869 | Wheeler v. Eftink, 507 S.W.3d 598, 600 (Mo. Ct. App. 2016) | 1 | While exercising sound judicial discretion, trial courts have an inherent power to dismiss a case for failure to prosecute with due diligence. | While exercising sound judicial discretion, trial courts have an inherent power to dismiss a case for failure to prosecute with due diligence. | Is the ultimate determination regarding a motion to dismiss for lack of diligence within the sound discretion of the trial court? |
| 11006 | Pitman Place Development, LLC v. Howard Investments, LLC, 330 S.W.3d 519, 527 (Mo. Ct. App. 2011) | 7 | "Apparent authority" exists when a principal, either by its acts or representations, has led third persons to believe authority has been conferred upon an agent. | "Apparent authority" exists when a principal, either by its acts or representations, has led third persons to believe authority has been conferred upon an agent. | To establish apparent authority should a third person have reason to believe that the agent possessed that authority? |
| 11016 | Mcafee, Inc. v. Agilysys, Inc., 316 S.W.3d 820, 829 (Tex. App. 2010) | 20 | The critical element of an agency relationship is the right to control, and the principal must have control of both the means and details of the process by which the agent is to accomplish his task in order for an agency relationship to exist. | The critical element of an agency relationship is the right to control, and the principal must have control of both the means and details of the process by which the agent is to accomplish his task in order for an agency relationship to exist. | What is the critical element of agency relationship? |
| 11018 | Bus. Servs. of Am. II, Inc. v. WaferTech LLC, 174 Wash. 2d 304 (Wash. 2012) | 4 | The dismissal of an action for want of prosecution is in the discretion of the court in the absence of a guiding statute or rule of court. | The dismissal of an action for want of prosecution is in the discretion of the court in the absence of a guiding statute or rule of court. | Is the dismissal of an action for want of prosecution in the discretion of the court in the absence of a guiding statute or rule of court? |
| 11025 | Nationwide Mut. Fire Ins. Co. v. T & N Master Builder & Renovators, 2011 IL App (2d) 101143, ¶ 9, 959 N.E.2d 201, 205 | 7 | As an action in equity, a claim may be subrogated only in order to prevent injustice or unjust enrichment and will not be maintained when it would be inequitable to do so. | As an action in equity, a claim may be subrogated only in order to prevent injustice or unjust enrichment and will not be maintained when it would be inequitable to do so. | Can a claim be subrogated only in order to prevent injustice as an action in equity? |
| 11045 | City of Quincy v. Diamond Construction Co., 327 Ill. App. 3d 338, 343 (Ill. App. Ct. 2002) | 2 | A trial court has broad discretion to grant or deny a motion in limine as part of its inherent power to admit or exclude evidence. | A trial court has broad discretion to grant or deny a motion in limine as part of its inherent power to admit or exclude evidence. | Is it within the discretion of the trial judge to grant or deny a motion in limine? |
| 11097 | Lindeman v. Lesnick, 268 Va. 532, 537 (Va. 2004) | 2 | Absolute privilege, sometimes called judicial privilege, is broad in scope and applies to communications made in proceedings pending in a court or before a quasi-judicial body. | Absolute privilege, sometimes called judicial privilege, is broad in scope and applies to communications made in proceedings pending in a court or before a quasi- judicial body. | What ae the statements to which absolute judicial privilege applies? |
| 11109 | Keymer v. Mgmt. Recruiters Int'l, 169 F.3d 501, 505 (8th Cir. 1999) | 19 | Although federal policy favors arbitration, it does not disregard the intent of the contracting parties as evidenced by their agreement. | Although federal policy favors arbitration, it does not disregard the intent of the contracting parties as evidenced by their agreement. | Does the federal policy favoring arbitration disregard the intent of the contracting parties? |

| 11115 | Norber v. Marcotte, 134 S.W.3d 651, 658 (Mo. Ct. App. 2004) | 9 | A partnership agreement may be oral or written, express or implied, from the acts and conduct of the parties; however, the primary criteria in determining the creation of a partnership is the intention of the parties. | A partnership agreement may be oral or written, express or implied, from the acts and conduct of the parties; however, the primary criteria in determining the creation of a partnership is the intention of the parties. | Can the partnership agreement be an oral agreement? |
|---|---|---|---|---|---|
| 11146 | Hostler v. Green Park Dev. Co., 986 S.W.2d 500 (Mo. Ct. App. 1999) | 10 | Liability for trespass exists whether or not done in good faith and with reasonable care, in ignorance or under mistake of law or fact. | Liability for trespass exists whether or not done in good faith and with reasonable care, in ignorance or under mistake of law or fact. | Can a liability for trespass exist when acts are done in good faith? |
| 11149 | Morrison v. Lab. & Indus. Rels. Comm'n, 23 S.W.3d 902, 907–08 (Mo. Ct. App. 2000) | 4 | The law never presumes that a partnership exists, but rather the burden is upon the party asserting its existence to establish all elements of a partnership by clear, cogent and convincing evidence. | The law never presumes that a partnership exists, but rather the burden is upon the party asserting its *908 existence to establish all elements of a partnership by clear, cogent and convincing evidence. | Can the existence of a partnership be presumed? |
| 11152 | Hous. Auth. & Urban Redevelopment Agency of City of Atl. City v. Taylor, 171 N.J. 580, 586 (N.J. 2002) | 1 | A court must enforce a lease as it is written, absent some superior contravening public policy. | A court must enforce a lease as it is written, absent some superior contravening public policy. | Must a court enforce a lease as it is written if it does not violate a superior contravening public policy? |
| 11164 | Am. Ins. Co. v. City of Milwaukee, 51 Wis. 2d 346, 352–53, 187 N.W.2d 142, 145 (1971) | 2 | Subrogation is recognized or denied on equitable principles, without differentiation between legal subrogation, arising by application of equity, or conventional subrogation, arising from contracts or acts of the parties. | Subrogation is recognized or denied upon equitable principles, without differentiation between 'legal subrogation,' arising by application of equity, or *353 'conventional subrogation,' arising from contracts or acts of the parties. | Is subrogation applied or denied on equitable principles? |
| 11166 | Daniczek v. Spencer, 156 F. Supp. 3d 739, 756 (E.D. Va. 2016) | 23 | In Virginia, under certain circumstances, the want of probable cause alone can serve as legally sufficient evidence to support an inference of malice. | In Virginia, under certain circumstances, the want of probable cause alone can serve as legally sufficient evidence to support an inference of malice. | Can lack of probable cause alone infer malice for malicious prosecution? |
| 11213 | Poff v. Elkins, 2014 Ark. App. 663, 7 (2014) | 11 | A trial court's ruling on a motion in limine is not a final ruling on the admissibility of the evidence in question, but only interlocutory, tentative, or preliminary in nature. | A trial court's ruling on a motion in limine is not a final ruling on the admissibility of the evidence in question, but only interlocutory, tentative, or preliminary in nature. | Is a trial court's decision to grant or deny a motion in limine an interlocutory and preliminary order? |
| 11215 | Ayala v. Lee, 215 Md. App. 457, 475 (Md. Ct. Spec. App. 2013) | 11 | An evidentiary ruling on a motion in limine is left to the sound discretion of the trial judge and will only be reversed upon a clear showing of abuse of discretion. | An evidentiary ruling on a motion in limine "is left to the sound discretion of the trial judge and will only be *475 reversed upon a clear showing of abuse of discretion." | Does a trial judge have discretion in granting a motion in limine? |
| 11216 | Gerken v. Hy Vee, 11 Neb. App. 778, 783 (2003) | 9 | It is not the office of a motion in limine to obtain a final ruling upon the ultimate admissibility of the evidence. | It is not the office of a motion in limine to obtain a final ruling upon the ultimate admissibility of the evidence. | Is it the purpose of a motion in limine to obtain a final ruling upon the ultimate admissibility of the evidence? |

| | | | | | |
|---|---|---|---|---|---|
| 11224 | Jones v. Jitney Jungle Stores of Am., 730 So. 2d 555, 557 (Miss. 1998) | 2 | For custom and usage evidence to be admissible, its relevancy and probative value must be clearly shown and must outweigh its prejudicial effect. | For custom and usage evidence to be admissible, its relevancy and probative value must be clearly shown and must outweigh its prejudicial effect. | What must be shown for custom and usage evidence to be admissible? |
| 11228 | Bacon v. Wahrhaftig, 97 Cal. App. 2d 599, 605, 218 P.2d 144, 148–49 (1950) | 11 | A demurrer which attacks an entire pleading should be overruled if one of the counts therein is not vulnerable to the objection. | A **149 demurrer which attacks an entire pleading should be overruled if one of the counts therein is not vulnerable to the objection. | Should a demurrer which attacks an entire pleading be overruled if one of the counts is not vulnerable to the objection? |
| 11232 | In re Commitment of Kelley, 2012 IL App (1st) 110240, 972 N.E.2d 667, 675 (2012) | 2 | A ruling on a motion in limine is a matter within the discretion of the trial court and will not be reversed absent an abuse of that discretion. | A ruling on a motion in limine is a matter within the discretion of the trial court and will not be reversed absent an abuse of that discretion. | "Is the admission of evidence, including a ruling on a motion in limine, a matter resting within the sound discretion of the trial court?" |
| 11233 | Jefferson v. Lyon Sheet Metal Works, 376 S.W.3d 37, 41 (Mo. Ct. App. 2012) | 2 | Ordinarily, a motion in limine is used to exclude evidence in a jury trial which would be unfairly prejudicial or inflammatory; it is appropriate when the mere asking of an improper question in front of a jury may be so prejudicial that a party will be denied a right to a fair trial. | Ordinarily, a motion in limine is used to exclude evidence in a jury trial which would be unfairly prejudicial or inflammatory. It is appropriate when the mere asking of an improper question in front of a jury may be so prejudicial that a party will be denied a right to a fair trial. | Should a motion in limine be used as a substitute for a dispositive motion such as a motion for summary judgment? |
| 11249 | Chacon v. Jones-Schilds, 904 N.E.2d 286, 288, 289 (Ind. Ct. App. 2009) | 2 | The granting of a motion in limine is an adjunct of the inherent power of trial courts to admit and exclude evidence. | The granting of a motion in *289 limine is an adjunct of the inherent power of trial courts to admit and exclude evidence. | Is the granting or denying of a motion in limine within the sound discretion of the trial court as an adjunct of the trial courts inherent power? |
| 11250 | Chacon v. Jones-Schilds, 904 N.E.2d 286(Duplicate of 7501) | 2 | The granting of a motion in limine is an adjunct of the inherent power of trial courts to admit and exclude evidence. | The granting of a motion in *289 limine is an adjunct of the inherent power of trial courts to admit and exclude evidence. | Is the granting of a motion in limine an adjunct of the inherent power of trial courts which will not be reversed absent an abuse of discretion? |
| 11252 | Castaneda v. Dept. of Protective Serv, 148 S.W.3d 509, 520 (Tex. App. 2004) | 2 | The grant or denial of a motion in limine has no bearing on the ultimate admissibility of the evidence and is never reversible error. | The grant or denial of a motion in limine has no bearing on the ultimate admissibility of the evidence and is never reversible error. | Does the grant or denial of a motion in limine have any bearing on the ultimate admissibility of the evidence? |
| 11257 | XL Specialty Ins. Co. v. Commonwealth, Dep't of Transp., 47 Va. App. 424, 436, 624 S.E.2d 658, 663 (2006) | 7 | The right of subrogation is not founded on contract; it is a creation of equity, is enforced solely for the purpose of accomplishing the ends of substantial justice, and is independent of any contractual relations between the parties. | The right of subrogation is not founded on contract. It is a creation of equity; is enforced solely for the purpose of accomplishing the ends of substantial justice, and is independent of any contractual relations between the parties. | Is equitable subrogation administered in the furtherance of justice? |
| 11274 | Nationwide Mut. Ins. Co. v. Marcinko, 436 N.E.2d 551, 556 (Ohio Com. Pl. 1980) | 3 | A cause of action does not "accrue" until suit may be legally instituted upon it, that is, when it becomes immediately enforceable. | A cause of action does not "accrue" until suit may be legally instituted upon it, that is, when it becomes immediately enforceable. | Does a cause of action accrue until suit may be legally instituted upon it? |

| | | | | | |
|---|---|---|---|---|---|
| 11306 | Ellis v. Am. Fed'n of Labor, 48 Cal. App. 2d 440Ellis v. Am. Fed'n of Lab., 48 Cal. App. 2d 440, 445, 120 P.2d 79, 81 (1941) | 6 | In an action for injunction the issues are to be determined on the basis of the situation as it exists at the time of the trial, not at the time of bringing the action. | In an action for injunction the issues are to be determined on the basis of the situation as it exists at the time of the trial, not at the time of bringing the action. | Should the issues in an action for injunction be determined on the basis of the situation as it exists at the time of the trial? |
| 11310 | Sw. Bell Tel. v. Emmett, 459 S.W.3d 578, 583 (Tex. 2015) | 4 | Under the common law, a utility company must relocate facilities located in a public right-of-way at its own expense. | Under the common law, a utility company must relocate facilities located in a public right-of-way at its own expense. | Should a utility company relocate facilities located in a public right-of-way at its own expense? |
| 11314 | Bank of New York Mellon v. Deane, 41 Misc. 3d 494, 502, 970 N.Y.S.2d 427, 433–34 (Sup. Ct. 2013) | 6 | Whatever the rights of a person to enforce an instrument by reason of delivery or assignment, a person is not a "holder" by reason of delivery or assignment alone, unless delivery is made of a bearer instrument. | Whatever the rights of a person to enforce an instrument by reason of delivery or assignment, a person is not a "holder" by reason of **434 delivery or assignment alone, unless delivery is made of a bearer instrument. | Does a person become a holder by reason of delivery or assignment alone? |
| 11333 | Whitlow v. California, 203 F. Supp. 3d 1079, 1092 (S.D. Cal. 2016) | 18 | One does not have to await the consummation of threatened injury to obtain preventive relief; if the injury is certainly impending, that is enough. | One does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending, that is enough. | Should one await the consummation of the threatened injury to obtain preventive relief? |
| 11340 | Ransom v. Robinson, 249 N.C. 634, 636 (1959) | 1 | Unless otherwise provided by stipulation, only the documents constituting the record proper are before the court at pretrial conference. | Unless otherwise provided by stipulation, only the documents constituting the record proper are before the court at pretrial conference. | What documents are filed before the court at pretrial conference unless otherwise provided by stipulation? |
| 11349 | Johnson v. Smith, 215 N.C. 322, 1 S.E.2d 834, 836 (1939) | 1 | The decision to allow amendment to pleadings is vested within the sound discretion of the district court and is, therefore, subject to reversal only for an abuse of discretion. | The decision to allow amendment to pleadings is vested within the sound discretion of the district court and is, therefore, subject to reversal only for an abuse of discretion. | When is the decision to allow amendment to pleadings reversed? |
| 11354 | Awanderlust Travel v. Kochevar, 21 P.3d 876, 878 (Colo. App. 2001) | 4 | When no objection is made to a pre-trial order, the matters determined by the order have the force and effect of a stipulation among the parties. | When no objection is made to a pre-trial order, the matters determined by the order have the force and effect of a stipulation among the parties. | Do the matters determined by the order have the force and effect of a stipulation among the parties? |
| 11367 | Structural Pres. Sys. v. Petty, 927 A.2d 1069, 1076 (D.C. 2007) | 12 | The pre-trial order limits the issues for trial and controls the subsequent course of the action, thereby precluding the interjection of new issues, absent modification of the order upon good cause. | The pre-trial order limits the issues for trial and controls the subsequent course of the action, thereby precluding the interjection of new issues, absent modification of the order upon good cause. | What does a pretrial order do? |
| 11370 | Banks ex rel. Banks v. Sunrise Hosp., 120 Nev. 822, 830, 831 (Nev. 2004) | 3 | When a potential for litigation exists, the litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action. | When a potential for litigation exists, " 'the litigant is under a duty to preserve evidence which it knows or reasonably should *831 know is relevant to the action.' | "When a potential for litigation exists, is the litigant under a duty to preserve evidence which it knows or reasonably should know is relevant to the action?" |
| 11374 | White v. Tariq, 299 S.W.3d 1, 4 (Mo. Ct. App. 2009) | 5 | A voluntary dismissal without prejudice renders that cause of action a nullity; it is treated as never having been filed. | A voluntary dismissal without prejudice renders that cause of action a nullity; it is treated as never having been filed. | Does a voluntary dismissal without prejudice render that cause of action a nullity? |

| | | | | | |
|---|---|---|---|---|---|
| 11399 | Shelter Mut. Ins. Co. v. Vulgamott, 96 S.W.3d 96, 104 (Mo. Ct. App. 2003) | 17 | Once a plaintiff voluntarily dismisses a claim prior to the introduction of evidence, it is as if the suit were never brought. | Once a plaintiff voluntarily dismisses a claim prior to the introduction of evidence, it is as if the suit were never brought. | "Once a plaintiff voluntarily dismisses a claim prior to the introduction of evidence, is it as if the suit were never brought?" |
| 11436 | Time Savers v. LaSalle Bank, N.A., 371 Ill. App. 3d 759, 771 (Ill. App. Ct. 2007) | 13 | A complaint for common-law fraud must allege, with specificity and particularity, facts from which fraud is the necessary or probable inference, including what misrepresentations were made, when they were made, who made the misrepresentations, and to whom they were made. | A complaint for common-law fraud "must allege, with specificity and particularity, facts from which fraud is the necessary or probable inference, including what misrepresentations were made, when they were made, who made the misrepresentations and to whom they were made | Will conclusionary allegations of fraud substitute for well-pled facts with specificity and particularity? |
| 11440 | Mosley v. Bridges, 65 Ga. App. 64, 15 S.E.2d 260, 260 (1941) | 2 | Where counsel, requesting continuance on ground that his client, was providentially prevented from attending trial, stated only that client "was ill and unable to appear in court," court did not err in refusing continuance and denying motion to set aside verdict on ground of error in denying continuance. Code, S 81-1412. | Where counsel, requesting continuance on ground that his client was providentially prevented from attending trial, stated only that client "was ill and unable to appear in court", court did not err in refusing continuance and denying motion to set aside verdict on ground of error in denying continuance. Code, § 81-1412. | "Can an attorney, in case of illness of his client, make a showing for a continuance of a case?" |
| 11462 | Knapp v. Vill. of Beaver City, 273 Neb. 156, 162 (Neb. 2007) | 9 | A dismissal without prejudice and a continuance are not the same; the former removes the case from the court's docket and subjects the plaintiff to the running of a limitations period, while the latter does not. | A dismissal without prejudice and a continuance are not the same. The former removes the case from the court's docket and subjects the plaintiff to the running of a limitations period, while the latter does not. | Is dismissal without prejudice and a continuance the same? |
| 11486 | Peter Polly Togs v. Silverman, 169 Misc. 780, 780, 9 N.Y.S.2d 24, 24 (App. Term 1938) | 1 | The limitations prevailing in regard to an examination before trial in a negligence suit do not apply to an action for fraud. | The limitations prevailing in an examination before trial in a negligence suit do not apply to an action to recover damages for fraud. | Do the limitations prevailing in regard to an examination before trial in a negligence suit not apply to an action for fraud? |
| 11505 | Knapp v. Vill. of Beaver City, 273 Neb. 156, 162 (Neb. 2007) | 9 | A dismissal without prejudice and a continuance are not the same; the former removes the case from the court's docket and subjects the plaintiff to the running of a limitations period, while the latter does not. | A dismissal without prejudice and a continuance are not the same. The former removes the case from the court's docket and subjects the plaintiff to the running of a limitations period, while the latter does not. | Is a dismissal without prejudice and a continuance the same? |
| 11534 | Texas Parks & Wildlife Dep't v. Garland, 313 S.W.3d 920, 923 (Tex. App. 2010) | 5 | If a trial court lacks jurisdiction over some claims but not others, the trial court should dismiss those claims over which it does not have subject matter jurisdiction but retain those claims over which it does. | If a trial court lacks jurisdiction over some claims but not others, the trial court should dismiss those claims over which it does not have subject matter jurisdiction but retain those claims over which it does. | "If a trial court lacks jurisdiction over some claims but not others, should the trial court dismiss those claims over which it does not have subject matter jurisdiction?" |

| 11581 | In re Kellogg Brown & Root, 166 S.W.3d 732, 739 (Tex. 2005) | 10 | Under "direct benefits estoppel," a non-signatory plaintiff seeking the benefits of a contract is estopped from simultaneously attempting to avoid the contract's burdens, such as the obligation to arbitrate disputes. | Under "direct benefits estoppel," a non-signatory plaintiff seeking the benefits of a contract is estopped from simultaneously attempting to avoid the contract's burdens, such as the obligation to arbitrate disputes. | When does direct benefits estoppel apply in arbitration? |
|---|---|---|---|---|---|
| 11594 | Lindquist v. Mid-Am. Orthopaedic Surgery, 325 S.W.3d 461, 464 (Mo. Ct. App. 2010) | 3 | A case must be dismissed as moot whenever an event occurs that renders a decision unnecessary. | A case must be dismissed as moot whenever an event occurs that renders a decision unnecessary. | "Should a case be dismissed as moot, whenever an event occurs that renders a decision unnecessary?" |
| 11605 | Long v. Silver, 248 F.3d 309, 320 (4th Cir. 2001) | 21 | A non-signatory may invoke an arbitration clause under ordinary state-law principles of agency or contract. | A non-signatory may invoke an arbitration clause under ordinary state-law principles of agency or contract. | Can a non-signatory invoke an arbitration clause under ordinary state-law principles of agency or contract? |
| 11649 | Carlson v. Hannah, 6 N.J. 202, 212 (N.J. 1951) | 2 | The power of an agent to bind his principal is limited to such acts as are within his actual or apparent authority. | The power of an agent to bind his principal is limited to such acts as are within his actual or apparent authority. | Is the power of an agent to bind his principal with his acts within his actual or apparent authority? |
| 11650 | Zeeb v. Atlas Powder Co., 32 Del. Ch. 486, 493–94, 87 A.2d 123, 127 (1952) | 7 | Except as to acts so peculiarly personal that their performance may not be delegated, or except as to acts regulated by statute which are required to be performed personally, generally an individual may do all acts through an agent which he could do himself. | Except as to acts so peculiarly personal that their performance may not be delegated, or except as to acts regulated by statute which are required to be performed personally, as a general rule an individual may do *494 all acts through an agent which he could do himself. | Can peculiarly personal acts be delegated through an agent? |
| 11657 | Masgas v. Anderson, 310 S.W.3d 567, 571 (Tex. App. 2010) | 6 | Estoppel by deed or contract precludes parties to a valid instrument from denying its force and effect. | Estoppel by deed or contract precludes parties to a valid instrument from denying its force and effect. | Does estoppel by contract preclude parties to a valid instrument from denying its force and effect? |
| 11659 | Barry v. The D.M. Drennen & Emma Houston Drennen & Drennen Mem'l Tr. of Saint Mary's Church, 982 So. 2d 478, 482 (Ala. 2007) | 3 | Because there was a prohibition against vacation of a public road at common law, statutes authorizing such a vacation are in derogation of the common law and therefore must be strictly construed. | Because there was a prohibition against vacation of a public road at common law, statutes authorizing such a vacation are in derogation of the common law and therefore must be strictly construed. | Should statutes authorizing road vacation be strictly construed? |
| 11661 | Nelson v. Mercy Health Ctr., 241 P.3d 276, 278 (Okla. Civ. App. 2010) | 2 | A dismissal for failure to prosecute should not be used against the momentarily negligent, but should be used to prod attorneys to bring cases to trial and to dismiss the truly dormant cases. | A dismissal for failure to prosecute should not be used against the momentarily negligent, but should be used to prod attorneys to bring cases to trial and to dismiss the truly dormant cases. | Should a dismissal for failure to prosecute be used against the momentarily negligent? |
| 11664 | XTO Energy Inc. v. Nikolai, 357 S.W.3d 47, 55–56 (Tex. App. 2011) | 4 | A "recital" in a deed is a statement that is used to explain the reasons upon which the transaction is based; the recital of facts binds both the parties to the deed and their privies. | A "recital" in a deed is a "statement … that is used to explain the reasons upon which the transaction is based. *56 The recital of facts binds both the parties to the deed and their privies." | Does the recital of facts bind both the parties to the deed and their privies? |

| | | | | | |
|---|---|---|---|---|---|
| 11703 | Gens v. Casady Sch., 2008 OK 5, ¶ 8, 177 P.3d 565, 569 | 5 | No dismissal for failure to state a claim upon which relief may be granted should be allowed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle relief; plaintiffs need neither identify a specific theory of recovery nor set out the correct remedy or relief to which they may be entitled. | No dismissal for failure to state a claim upon which relief may be granted should be allowed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle relief.[7] Plaintiffs need neither identify a specific theory of recovery nor set out the correct remedy or relief to which they may be entitled. | Is a plaintiff required to identify a specific theory of recovery? |
| 11726 | Univ. of Med. & Dentistry of New Jersey v. Univ. of Med. & Dentistry of New Jersey, Council of Am. Ass'n of Univ. Professors Chapters, 223 N.J. Super. 323, 331, 538 A.2d 840, 844 (App. Div. 1988), aff'd sub nom. Matter of Univ. of Med. & Dentistry of New Jersey, Univ. of Med. & Dentistry of New Jersey Council of Am. Ass'n of Univ. Professors Chapters, 115 N.J. 29, 556 A.2d 1190 (1989) | 1 | Public institutions of higher education are creatures of the State and can exercise only those powers granted to them by legislation, either expressly or by necessary implication. | Public institutions of higher education are creatures of the State and can exercise only those powers granted to them by legislation, either expressly or by necessary implication. | Are institutions of higher education creatures of the State? |
| 11767 | Klineline v. Klineline, 481 S.W.3d 551, 553 (Mo. Ct. App. 2015) | 3 | When an affirmative defense is asserted, such as a statute of limitations, the petition may not be dismissed unless it clearly establishes on its face, and without exception, that the action is barred. | When an affirmative defense is asserted, such as a statute of limitations, the petition may not be dismissed unless it clearly establishes on its face, and without exception, that the action is barred. | Can affirmative defense be sustained upon motion to dismiss? |
| 11769 | Klineline v. Klineline, 481 S.W.3d 551, 553-54 (Mo. Ct. App. 2015) | 3 | When an affirmative defense is asserted, such as a statute of limitations, the petition may not be dismissed unless it clearly establishes on its face, and without exception, that the action is barred. | When an affirmative defense is asserted, such as a statute of limitations, the petition may not be dismissed unless it clearly establishes on its face, and without exception, that the action is barred. | Can affirmative defense be established by plaintiffs' pleadings? |
| 11778 | Bowman v. Benouttas, 519 S.W.3d 586, 597 (Tenn. Ct. App. 2016) | 11 | The most indicative factor in determining whether a principal-agent relationship exists is the right of the principal to control the conduct of the work of the agent. | The most indicative factor in determining whether a principal-agent relationship exists is the right of the principal to control the conduct of the work of the agent. | What factors determine whether a principal-agent relationship exists? |
| 11797 | Duk Hea Oh v. Natl Capital Revitalization Corp., 7 A.3d 997, 1003(D.C. 2010) | 4 | Unless facts supporting an affirmative defense are particularized in an answer or are detailed on the face of the complaint, an affirmative defense expressed only as a legal conclusion is insufficient. | Unless facts supporting an affirmative defense are particularized in an answer or are detailed on the face of the complaint, an affirmative defense expressed only as a legal conclusion is insufficient. | When is an affirmative defense expressed as a legal conclusion only sufficient? |

| 11838 | Chamness v. Mays, 2014 IL App (5th) 130381 | 4 | An established public highway does not lose its character as a public road unless it is either vacated by the authorities in the manner prescribed by statute or abandoned. | An established public highway does not lose its character as a public road unless it is either vacated by the authorities in the manner prescribed by statute or abandoned. | Can a public highway lose its character as a public road? |
|---|---|---|---|---|---|
| 11842 | In re Gen. Motors Corp., 296 S.W.3d 813, 827 (Tex. App. 2009) | 23 | Every court has power, in the absence of statutory prohibition, to dismiss a suit for want of prosecution. | Every court has power, in the absence of statutory prohibition, to dismiss a suit for want of prosecution. | "Does a court have the power, in the absence of statutory prohibition, to dismiss a suit for want of prosecution?" |
| 11852 | Khan v. Valliani, 439 S.W.3d 528, 537 (Tex. App. 2014) | 21 | A trial court has the inherent authority to manage its own docket and dismiss a case for want of prosecution. | A trial court has the inherent authority to manage its own docket and dismiss a case for want of prosecution. | Does a court have the inherent authority to manage its own docket and dismiss a case for want of prosecution? |
| 11892 | State v. Duplechin, 922 So. 2d 655, 658 (La. Ct. App. 2006) | 6 | Enhancement proceedings such as habitual offender adjudications are generally not subject to double jeopardy considerations. | Enhancement proceedings such as habitual offender adjudications are generally not subject to double jeopardy considerations. | Are enhancement proceedings such as habitual offender adjudications not subject to double jeopardy considerations? |
| 11903 | David v. Hett, 293 Kan. 679, 701, 270 P.3d 1102, 1114 (2011) | 8 | Whether a claim sounds in tort or contract is determined by the nature and substance of the facts alleged in the pleadings. | Whether a claim sounds in tort or contract is determined by the nature and substance of the facts alleged in the pleadings. | "Is the nature of a claim, whether it sounds in tort or contracts, determined from the pleadings?" |
| 11917 | Gable v. Raftery, 65 N.Y.S.2d 513, 518 (1945) | 4 | Persons notified of an action or proceeding in which they are directly interested may be required to exercise reasonable diligence to protect their interests. | Persons notified of an action or proceeding in which they are directly interested may be required to exercise reasonable diligence to protect their interests. | What is required from a person who is notified of an action or proceeding in which he is directly interested? |
| 11960 | State Farm Mut. Auto. Ins. Co. v. Du Page Cty., 2011 IL App (2d) 100580, ¶ 33 | 8 | The right of equitable subrogation arises when a party pays a debt for which another is primarily liable and that in equity and good conscience should have been discharged by the latter. | The right of equitable subrogation arises when a party pays a debt for which another is primarily liable and that in equity and good conscience should have been discharged by the latter. | When does the right of equitable subrogation arise? |
| 12016 | Weeks v. Harden Mfg. Corp., 291 F.3d 1307, 1312 (11th Cir. 2002) | 7 | Although previously disfavored by the courts, arbitration agreements to resolve disputes between parties have now received near universal approval. | Although previously disfavored by the courts, arbitration agreements to resolve disputes between parties have now received near universal approval. | Has arbitration as an alternative dispute resolution received universal approval? |
| 12027 | Navajo Health Found.-Sage Mem'l Hosp., Inc v. Burwell, 220 F. Supp. 3d 1190, 1224 (D.N.M. 2016) | 21 | The Indian canon of construction requires that courts liberally construe treaties, agreements, statutes, and executive orders in favor of American Indians. | The Indian canon of construction requires that courts liberally construe treaties, agreements, statutes, and executive orders in favor of American Indians. | Will the courts construe Indian law liberally? |
| 12069 | Clark v. TAP Pharm. Prod., 343 Ill. App. 3d 295, 301 (Ill. App. Ct. 2003) | 17 | It is in the best interest of the public that when a dispute arises over a product that is purchased locally, the best interests of justice are served by resolving that dispute in local courts. | It is in the best interest of the public that when a dispute arises over a product that is purchased locally, the best interests of justice are served by resolving that dispute in local courts. | Is it in the best interest of the public that local disputes are settled in local courts? |

| | | | | | |
|---|---|---|---|---|---|
| 12079 | Ysasaga v. Nationwide Mut. Ins. Co., 279 S.W.3d 858, 865 (Tex. App. 2009) | 20 | Contractual subrogation clauses express the parties' intent that reimbursement should be controlled by agreed contract terms rather than external rules imposed by the courts. | Contractual subrogation clauses express the parties' intent that reimbursement should be controlled by agreed contract terms rather than external rules imposed by the courts. | How is a contractual subrogation created? |
| 12084 | Waltier v. Thomson, 189 F. Supp. 319, 320 (S.D.N.Y. 1960) | 2 | A consular official is immune from suit when acts complained of were performed in course of his official duties. | A consular official is immune from suit when the acts complained of were performed in the course of his official duties. | Is a consular official immune form suit when the acts complained of were performed in the course of his official duties? |
| 12104 | Ryan v. Case New Holland, 211 So. 3d 611, 621 (La. Ct. App. 2016) | 9 | A motion in limine presents an evidentiary matter that is subject to the great discretion of the trial court. | A motion in limine presents an evidentiary matter that is subject to the great discretion of the trial court. | Does the trial court have great discretion in its consideration of evidentiary matters such as motions in limine? |
| 12130 | Chacon v. Jones-Schilds, 904 N.E.2d 286, 288 (Ind.App.,2009) | 1 | The granting or denying of a motion in limine is within the sound discretion of the trial court. | The granting or denying of a motion in limine is within the sound discretion of the trial court. | Is the granting or denying of a motion in limine within the sound discretion of the trial court? |
| 12159 | In re Kandu, 315 B.R. 123, 133 (W.D. Wash. 2004) | 10 | As a general matter, the laws of one nation do not have force or effect beyond its borders. | As a general matter, the laws of one nation do not have force or effect beyond its borders. | Do laws of one nation as a general matter have force or effect beyond its borders? |
| 12163 | Peoples v. Fred's Stores of Tennessee, 38 So. 3d 1209, 1224 (2010) | 6 | A motion in limine is an evidentiary matter in which the trial court is afforded great discretion. | A motion in limine is an evidentiary matter in which the trial court is afforded great discretion. | Is a motion in limine an evidentiary matter in which the trial court is afforded great discretion? |
| 12164 | Anderson v. Bd. of Sup'rs of Louisiana State Univ. & Agr. & Mech. Coll. ex rel. Louisiana State Univ. Health Sci. Ctr., 943 So.2d 1198, 1202 (La.App. 5 Cir.,2006) | 6 | The trial court has great discretion when ruling on evidentiary matters, such as motions in limine. | The trial court has great discretion when ruling on evidentiary matters, such as motions in limine. | "Does the trial court have great discretion when ruling on evidentiary matters, such as motions in limine?" |
| 12195 | Weidner v. Sanchez, 14 S.W.3d 353, 363 (Tex. App. 2000) | 22 | The cumulative effect of repeated violations of a trial court's order in limine may be grounds for reversal. | The cumulative effect of repeated violations of a trial court's order in limine may be grounds for reversal. | Can repeated violations of a court order granting a motion in limine be grounds for reversal? |
| 12196 | Weidner v. Sanchez, 14 S.W.3d 353, 363 (Tex. App. 2000) | 23 | Where a trial court's order on a motion in limine is violated, an appellate court reviews the violations to see if they are curable by an instruction to the jury to disregard them. | Where a trial court's order on a motion in limine is violated, an appellate court reviews the violations to see if they are curable by an instruction to the jury to disregard them. | When are violations of a court order granting a motion in limine incurable? |
| 12197 | City of Wichita v. Denton, 296 Kan. 244, 255-56 (Kan. 2013) | 10 | The purpose of an order in limine is to assure a fair and impartial trial to all parties by excluding from trial inadmissible evidence, prejudicial statements, and improper questions. | The purpose of an order in limine is to assure a fair and impartial trial to all parties by excluding from trial inadmissible *256 evidence, prejudicial statements, and improper questions. | Is a motion in limine used to provide an impartial trial? |
| 12203 | Leatherby Ins. Co. v. City of Tustin, 76 Cal. App. 3d 678, 685, 143 Cal. Rptr. 153, 157 (Ct. App. 1977) | 1 | When a surety pays the obligation of its principal, it is subrogated to all the rights the payees may have against others. | When a surety pays the obligation of its principal, it is subrogated to all the rights the payees may have against others. | "When a surety pays the obligation of its principal, is it subrogated to all the rights the payees may have against others?" |

| 12226 | Boulder City v. Miles, 85 Nev. 46, 49 (1969) | 4 | A cause of action accrues only when the forces wrongfully put in motion produce an injury. | A cause of action accrues only when the forces wrongfully put in motion produce an injury. | Does a cause of action accrue only when the forces wrongfully put in motion produce an injury? |
|---|---|---|---|---|---|
| 12325 | 150 Centreville, LLC v. Lin Assocs. Architects, PC, 39 Misc. 3d 513, 524, 963 N.Y.S.2d 819, 828 (Sup. Ct. 2013), aff'd sub nom. 150 Centreville, LLC v. Lin Assocs. Architects, P.C., 151 A.D.3d 912, 54 N.Y.S.3d 699 (2017) | 2 | A party has a duty to preserve, protect, and safeguard evidence when it has notice that the evidence is relevant to litigation or should have known that the evidence might be relevant to future litigation. | A party has a duty to preserve, protect, and safeguard evidence when it has notice that the evidence is relevant to litigation or should have known that the evidence might be relevant to future litigation. | Does a party in litigation have an affirmative duty to preserve potentially relevant evidence? |
| 12331 | Town of Tiburon v. Bonander, 180 Cal. App. 4th 1057, 1073 (Cal. Ct. App. 2009) | 2 | Unlike a special assessment, a tax may be levied without regard to whether the property or person subject to the tax receives a particular benefit. | Unlike a special assessment, a tax may be levied without regard to whether the property or person subject to the tax receives a particular benefit. | Is special assessment similar to tax? |
| 12384 | Simpkins v. Gen. Motors Corp. Delco Moraine Div., 3 Ohio App. 3d 275, 276 (1981) | 1 | The essential element of the workers' compensation legislation is the legal relationship between employer and employee. | The essential element of the workers' compensation legislation is the legal relationship between employer and employee. | Is the legal relationship between employer and employee the essential element of the workers compensation legislation? |
| 12417 | Chicago Title Land Tr. Co. v. JS II, 2012 IL App (1st) 063420 (Ill. App. Ct. 2012) *No page number | 24 | In the context of easements, trespass occurs when there is a material interference with the right of the owner of the dominant estate to reasonable use of the easement. | In the context of easements, trespass occurs when there is a material interference with the right of the owner of the dominant estate to reasonable use of the easement. | Can a trespass occur when a person interferes with another's right to use an easement? |
| 12570 | Arpino v. F.J.F. & Sons Elec. Co., 102 A.D.3d 201, 210, 959 N.Y.S.2d 74, 81 (2012) | 4 | Public policy strongly favors the resolution of actions on the merits whenever possible. | Public policy strongly favors the resolution of actions on the merits whenever possible | Does public policy strongly favor the resolution of actions on the merits whenever possible? |
| 12600 | United States v. Pepper, 697 F. Supp. 2d 1171, 1175 (E.D. Cal. 2009) | 2 | While the regulation of mining per se is not within Forest Service jurisdiction, where mining activity disturbs National Forest System lands, Forest Service regulation is proper. | While the regulation of mining per se is not within Forest Service jurisdiction, where mining activity disturbs National Forest System lands, Forest Service regulation is proper. | Does the Secretary of Agriculture have the power to adopt reasonable rules and regulations regarding mining operations within the national forests? |
| 12601 | James v. Comm. for Lawyer, 310 S.W.3d 598, 608 (Tex. App. 2010) | 3 | A pleading's purpose is to give fair notice of a party's claims and the relief sought. | A pleading's purpose is to give fair notice of a party's claims and the relief sought. | Is giving fair notice of a party's claims and the relief sought the purpose of pleading? |
| 12611 | Carolina Marina & Yacht Club v. New Hanover Cty. Bd. of Comm'rs, 207 N.C. App. 250, 252 (N.C. App. 2010) | 3 | If the issues before a court or administrative body become moot at any time during the course of the proceedings, the usual response should be to dismiss the action. | If the issues before a court or administrative body become moot at any time during the course of the proceedings, the usual response should be to dismiss the action. | Will an action be dismissed if the issues become moot? |
| 12641 | R.W. v. Schrein, 263 Neb. 708, 709 (Neb. 2002) | 14 | An intent to inflict injury can be inferred as a matter of law in cases of sexual abuse. | An intent to inflict injury can be inferred as a matter of law in cases of sexual abuse. | Can intent to inflict injury be inferred as a matter of law in sexual abuse cases? |
| 12671 | HUMANE SOC. v. FEDERATED HUMANE SOC, 611 N.W.2d 587, 590 (Minn. Ct. App. 2000) | 8 | Because parties to civil litigation have no legal duty to settle, a refusal to do so is not tantamount to a refusal to prosecute. | Because parties to civil litigation have no legal duty to settle, a refusal to do so is not tantamount to a refusal to prosecute. | Is a refusal to settle tantamount to a refusal to prosecute since parties to civil litigation have no legal duty to settle? |

| | | | | | |
|---|---|---|---|---|---|
| 12680 | HUMANE SOC. v. FEDERATED HUMANE SOC, 611 N.W.2d 587, 590 (Minn. Ct. App. 2000) | 9 | Although a court might sanction a party for conduct in settlement negotiations, the court cannot dismiss a case for refusal to settle. | Although a court might sanction a party for conduct in settlement negotiations, the court cannot dismiss a case for refusal to settle. | Can a court sanction a party for conduct in settlement negotiations? |
| 12733 | Saunders v. Tisher, 902 A.2d 830, 832 (Me. 2006) | 2 | On a motion to dismiss, facts are not adjudicated, but rather there is an evaluation of the allegations in the complaint in relation to any cause of action that may reasonably be inferred from the complaint. | On a motion to dismiss, facts are not adjudicated, but rather there is an evaluation of the allegations in the complaint in relation to any cause of action that may reasonably be inferred from the complaint. | "When the trial court acts on a motion to dismiss for failure to state a claim upon which relief can be granted, are facts not adjudicated?" |
| 12757 | Scranton v. O'Malley Mfg. Co., 341 Pa. 200, 201 (Pa. 1941) | 2 | Liability to pay taxes arises from no contractual relation between the taxable and the state, and cannot be enforced by common-law proceedings unless a statute so provides. | Liability to pay taxes arises from no contractual relation between the taxable and the state and cannot be enforced by common law proceedings unless a statute so provides. | Can liability to pay taxes be enforced by common law proceedings? |
| 12762 | State v. Deines, 268 Kan. 432, 432 (2000) | 9 | Where there is an obstruction across a public right-of-way which obstructs the travel of an individual, the obstruction is a nuisance per se and the affected individual may remove the obstruction by way of abatement. | Where there is an obstruction across a public right-of-way which obstructs the travel of an individual, the obstruction is a nuisance per se and the affected individual may remove the obstruction by way of abatement. | Can an individual remove the obstruction by way of abatement? |
| 12766 | Citibank, N.A. v. Martin, 11 Misc. 3d 219, 226 (N.Y. Civ. Ct. 2005) | 12 | A lack of standing renders the litigation a nullity, subject to dismissal without prejudice. | A lack of standing renders the litigation a nullity, subject to dismissal without prejudice | "Does a lack of standing render the litigation a nullity, subject to dismissal without prejudice?" |
| 12818 | Keough v. Cyrus USA, Inc., 204 S.W.3d 1, 4 (Tex. App. 2006) | 5 | In the absence of evidence, a trial court does not abuse its discretion by denying a motion to reinstate. | In the absence of evidence, a trial court does not abuse its discretion by denying a motion to reinstate. | "In the absence of evidence, does a trial court not abuse its discretion by denying a motion to reinstate?" |
| 12856 | Shell Oil v. Jackson Cty, 193 S.W.2d 268, 271 (Tex. Civ. App. 1946) | 3 | Public roads belong to the state and are subject to legislative control, which control may be delegated to local authorities. | Public roads belong to the State and are subject to legislative control, which control may be delegated to local authorities. | Are public roads belonging to the State subject to legislative control? |
| 12926 | In re Strickland, 2002 WL 58482, at *1 (Tex. App. Jan. 17, 2002) | 1 | A reinstatement order rendered after expiration of the trial court's plenary power is void. | A reinstatement order rendered after expiration of the trial court's plenary power is void. | Is a reinstatement order rendered after expiration of the trial court's plenary power void? |
| 12950 | People v. Tolliver, 347 Ill. App. 3d 203, 228 (2004) | 45 | A deadlocked jury is a manifest necessity justifying the declaration of a mistrial and the retrial of the defendant. | A deadlocked jury is a manifest necessity justifying the declaration of a mistrial and the retrial of the defendant. | Is a deadlocked jury a manifest necessity justifying the declaration of a mistrial and a retrial of a defendant? |
| 12962 | Station #2 v. Lynch, 695 S.E.2d 537, 540 (2010) | 6 | An omission or non-performance of a duty may sound both in contract and in tort, but only where the omission or non-performance of the contractual duty also violates a common law duty. | An omission or non-performance of a duty may sound both in contract and in tort, but only where the omission or non-performance of the contractual duty also violates a common law duty. | Can an omission or non-performance of a duty sound both in contract and in tort? |

| | | | | | |
|---|---|---|---|---|---|
| 12980 | Commerce Trust Co. v. Air 1st Aviation Companies, Inc., 366 Ill. App. 3d 135, 137 (Ill. App. Ct. 2006) | 4 | It is the responsibility of the party filing a motion to request the trial court to rule on the motion, and when no ruling has been made on a motion, it is presumed to have been abandoned absent circumstances indicating otherwise. | It is the responsibility of the party filing a motion to request the trial court to rule on the motion, and when no ruling has been made on a motion, it is presumed to have been abandoned absent circumstances indicating otherwise. | "When a party moves to strike an affidavit will its failure to obtain a ruling on its motion to strike, operate as a waiver of the objections to the affidavit?" |
| 12991 | Treaster v. Betts, 324 S.W.3d 487, 490 (Mo. Ct. App. 2010) | 2 | A pre-trial dismissal based on an affirmative defense must be granted under the standards of summary judgment. | A pre-trial dismissal based on an affirmative defense must be granted under the standards of summary judgment. | Will a pre-trial dismissal based on affirmative defense be granted under the standards of summary judgement? |
| 12996 | United States v. Gundy, 842 F.3d 1156, 1164 (11th Cir. 2016) | 14 | The generic, contemporary definition of burglary consists of these elements: (1) an unlawful or unprivileged entry into, or remaining in, (2) a building or other structure, (3) with intent to commit a crime therein. | The generic, contemporary definition of burglary consists of these elements: (1) an unlawful or unprivileged entry into, or remaining in, (2) a building or other structure, (3) with intent to commit a crime therein. | What are the elements of burglary? |
| 13043 | In re Commitment of Kelley, 2012 IL App (1st) 110240, 972 N.E.2d 667, 675 (2012) | 2 | A ruling on a motion in limine is a matter within the discretion of the trial court and will not be reversed absent an abuse of that discretion. | A ruling on a motion in limine is a matter within the discretion of the trial court and will not be reversed absent an abuse of that discretion. | Is a ruling on a motion in limine reversed absent an abuse of that discretion? |
| 13045 | Musburger v. Meier, 394 Ill. App. 3d 781, 802 (Ill. App. Ct. 2009) | 29 | Motions in limine are designed to produce a trial without the introduction of prejudicial material. | Motions in limine are designed to produce a trial without the introduction of prejudicial material. | Are motions in limine designed to produce a trial without the introduction of prejudicial material? |
| 13048 | Gen. Motors Corp. v. Pamela Equities Corp., 146 F.3d 242, 246 (5th Cir. 1998) | 3 | Parties may agree to the submission to arbitration of existing controversies without any previous contract to do so. | Parties may agree to the submission to arbitration of existing controversies without any previous contract to do so. | Can parties agree to arbitrate existing controversies without any previous contract to do so? |
| 13131 | Sherman v. Boston, 486 S.W.3d 88, 95 (Tex. App. 2016) | 14 | Legal entities, such as a corporation or a limited liability company, generally may appear in a district or county court only through a licensed attorney. | Legal entities, such as a corporation or a limited liability company, generally may appear in a district or county court only through a licensed attorney. | Does a corporation or a partnership need to be represented by a licensed attorney? |
| 13147 | Hahn v. Neth, 270 Neb. 164, 164 (Neb. 2005) | 5 | As a general rule, administrative agencies have no general judicial powers, even though they may perform some quasi-judicial duties. | As a general rule, administrative agencies have no general judicial powers, even though they may perform some quasi-judicial duties. | Do administrative agencies have general judicial powers? |
| 13162 | Mecum v. Weilert Custom Homes, LLC, 239 F. Supp. 3d 1093, 1095 (N.D. Ill. 2017) | 7 | Whether a binding arbitration agreement exists is determined under the principles of state contract law. | Whether a binding arbitration agreement exists is determined under the principles of state contract law. | Which principles of law are utilized to determine the existence of a binding arbitration agreement? |
| 13163 | Bahoor v. Varonis Sys., Inc., 152 F. Supp. 3d 1091, 1097 (N.D. Ill. 2015) | 10 | Whether a binding arbitration agreement exists is determined under principles of state contract law. | Whether a binding arbitration agreement exists is determined under principles of state contract law. | Which principles of law are utilized to determine the existence of a binding arbitration agreement? |
| 13214 | Perry v. Gulf Stream Coach, 871 N.E.2d 1038, 1047 (Ind. Ct. App. 2007) | 4 | Ordinarily the denial of a motion in limine can occasion no error; the objectionable occurrence is the improper admission of items in evidence. | Ordinarily the denial of a motion in limine can occasion no error; the objectionable occurrence is the improper admission of items in evidence. | Can the denial of a motion in limine occasion no error? |

| | | | | | |
|---|---|---|---|---|---|
| 13217 | Poff v. Elkins, 2014 Ark. App. 663, 7 (2014) | 11 | A trial court's ruling on a motion in limine is not a final ruling on the admissibility of the evidence in question, but only interlocutory, tentative, or preliminary in nature. | A trial court's ruling on a motion in limine is not a final ruling on the admissibility of the evidence in question, but only interlocutory, tentative, or preliminary in nature. | "Is the denial of a motion to exclude evidence in all circumstances a binding declaration that all such evidence is admissible, immune from further review during trial?" |
| 13244 | Doe v. Qi, 349 F. Supp. 2d 1258, 1301 (N.D. Cal. 2004) | 24 | The more intrusive the remedy upon the sovereignty of the foreign state, the more the concerns of the act of state doctrine are implicated. | The more intrusive the remedy upon the sovereignty of the foreign state, the more the concerns of the act of state doctrine are implicated. | Are the concerns of the act of state doctrine implicated when remedies are intrusive? |
| 13257 | Compton v. Ubilluz, 353 Ill. App. 3d 863, 871 (Ill. App. Ct. 2004) | 16 | An unclear order in limine is worse than no order at all; even if the court concludes that the evidence is inadmissible, it has the discretion to deny the motion in limine before trial. | An unclear order in limine is worse than no order at all; even if the court concludes that the evidence is inadmissible, it has the discretion to deny the motion in limine before trial. | Is an unclear order in limine worse than no order at all? |
| 13299 | Murray v. Cadle Co., 257 S.W.3d 291, 300 (Tex. App. 2008) | 20 | The trial court must balance the equities in view of the totality of the circumstances to determine whether a party is entitled to equitable subrogation. | The trial court must balance the equities in view of the totality of the circumstances to determine whether a party is entitled to equitable subrogation. | Does subrogation depends on a balancing of equities? |
| 13367 | Cook v. Nacogdoches Anesthesia Group, 167 S.W.3d 476, 482 (Tex. App. 2005) | 24 | The party requesting a nonsuit has an absolute right to a nonsuit at the moment the motion is filed with the clerk, so long as the motion is timely filed. | The party requesting a nonsuit has an absolute right to a nonsuit at the moment the motion is filed with the clerk, so long as the motion is timely filed. | Does a moving party have an absolute right to nonsuit when a motion for voluntary nonsuit is timely? |
| 13384 | 150 Centreville, LLC v. Lin Assocs. Architects, PC, 39 Misc. 3d 513, 524, 963 N.Y.S.2d 819, 828 (Sup. Ct. 2013) | 2 | A party has a duty to preserve, protect, and safeguard evidence when it has notice that the evidence is relevant to litigation or should have known that the evidence might be relevant to future litigation. | A party has a duty to preserve, protect, and safeguard evidence when it has notice that the evidence is relevant to litigation or should have known that the evidence might be relevant to future litigation. | "Do litigants have a duty to preserve evidence which they know, or reasonably should know, is relevant in the action?" |
| 13385 | Wenrich v. Emps. Mut. Ins. Companies, 35 Kan. App. 2d 582, 582, 132 P.3d 970, 973 (2006) | 13 | In the absence of an attempt to modify the pretrial order, such order is binding and controls the subsequent course of trial. | In the absence of an attempt to modify the pretrial order, such order is binding and controls the subsequent course of trial. | Does a pretrial order bind and control the subsequent course of trial? |
| 13428 | Ex Parte Spurlock, 66 F. Supp. 997, 1004 (D. Haw. 1944) | 8 | Under our form of government, the military, even in time of war, is subordinate to the civil power not superior to it. | Under our form of government the military even in time of war is subordinate to the civil power, not superior to it. | "Is the military, even in time of war, subordinate to the civil power?" |
| 13478 | Gilcrease v. Bacarisse, 26,318 (La. App. 2 Cir. 12/7/94), 647 So. 2d 1219, 1223. | 10 | Party is not entitled to indefinite continuances simply because she contends she is unable to secure counsel. | Plaintiff is not entitled to indefinite continuances simply because she contends she is unable to secure counsel. | Is a party not entitled to indefinite continuances simply because she contends she is unable to secure counsel? |
| 13496 | State v. Ewing, 298 S.W.2d 439, 443 (Mo. 1957) | 2 | To sustain a charge of second degree burglary, it is essential to show, directly or circumstantially, that some force was used to effect entry. | To sustain a charge of second degree burglary, it is essential to show, directly or circumstantially, that some force was used to effect entry. | Does burglary involve entry by use of force? |

| | | | | | |
|---|---|---|---|---|---|
| 13515 | Beam v. Stewart, 845 A.2d 1040, 1056 (Del. 2004) | 26 | In general, derivative plaintiffs are not entitled to discovery in order to demonstrate demand futility. | In general, derivative plaintiffs are not entitled to discovery in order to demonstrate demand futility. | Are derivative plaintiffs entitled to discovery in order to demonstrate demand futility? |
| 13554 | Burton V. Airborne Express, Inc., 367 Ill. App. 3d 1026, 1034 (Il. App. Ct. 2006) | 14 | Exhibits are a part of the complaint to which they are attached, and the factual allegations contained within an exhibit attached to a complaint serve to negate inconsistent allegations of fact contained within the body of the complaint. | Exhibits are a part of the complaint to which they are attached, and the factual allegations contained within an exhibit attached to a complaint serve to negate inconsistent allegations of fact contained within the body of the complaint. | Are exhibits attached to a complaint part of that complaint? |
| 13563 | Texas Parks & Wildlife Dep't v. Garland, 313 S.W.3d 920, 923 (Tex. App. 2010) | 5 | If a trial court lacks jurisdiction over some claims but not others, the trial court should dismiss those claims over which it does not have subject matter jurisdiction but retain those claims over which it does. | If a trial court lacks jurisdiction over some claims but not others, the trial court should dismiss those claims over which it does not have subject matter jurisdiction but retain those claims over which it does. | Will a trial court dismiss claims over which it has no subject matter jurisdiction? |
| 13582 | Seacrist v. S. Cal. Edison Co., 197 Cal. Rptr. 3d 834, 840 (Cal. Ct. App. 2016) | 3 | Judicial admissions may be made in a pleading, by stipulation during trial, or by response to request for admission. | Judicial admissions may be made in a pleading, by stipulation during trial, or by response to request for admission. | "Can Judicial admissions be made in a pleading, by stipulation during trial, or by response to request for admission?" |
| 13643 | Orgain v. Butler, 478 S.W.2d 610, 613 (Tex. Civ. App. 1972) | 8 | For a variance between pleadings and proof to be fatal, the variance must be substantial, misleading, and a prejudicial departure. | For a variance between pleadings and proof to be fatal, the variance must be substantial, misleading, and a prejudicial departure. | "Must a variance between pleadings and proof be substantial, misleading and prejudicial for it to be fatal?" |
| 13648 | Jameson Realty Group v. Kostiner, 351 Ill. App. 3d 416, 432 (Ill. App. Ct. 2004) | 24 | The defense of laches may be considered on a motion to dismiss a complaint if its applicability appears from the face of the complaint or by affidavit submitted with the motion. | The defense of laches may be considered on a motion to dismiss a complaint if its applicability appears from the face of the complaint or by affidavit submitted with the motion. | Can defenses be considered on motion to dismiss a complaint? |
| 13671 | HUMANE SOC. v. FEDERATED HUMANE SOC, 611 N.W.2d 587, 590 (Minn. Ct. App. 2000) | 9 | Although a court might sanction a party for conduct in settlement negotiations, the court cannot dismiss a case for refusal to settle. | Although a court might sanction a party for conduct in settlement negotiations, the court cannot dismiss a case for refusal to settle. | Can the court dismiss a case for refusal to settle? |
| 13695 | Wilson v. Cnty. of Orange, 881 So. 2d 625, 629 (Fla. Dist. Ct. App. 2004) | 3 | Dismissal should not be granted on the basis of an affirmative defense, except when the face of the complaint is sufficient to demonstrate the existence of that defense. | Dismissal should not be granted on the basis of an affirmative defense, except when the face of the complaint is sufficient to demonstrate the existence of that defense. | Would the face of the complaint be sufficient to demonstrate the existence of that defense? |
| 13706 | Marshall v. Burger King Corp., 222 Ill. 2d 422, 430 (Ill. 2006) | 8 | Whether a duty exists in a particular case is a question of law for the court to decide. | Whether a duty exists in a particular case is a question of law for the ***903 **1054 court to decide. | Does a duty that exists in a particular case a question of law for the court to decide? |
| 13707 | Adams v. USAA Casualty Insurance Co., 317 S.W.3d 66, 75 (Mo. Ct. App. 2010) | 9 | Determination of factual questions or whether the party is entitled to relief on the merits is not appropriate on a motion to dismiss. | Determination of factual questions or whether the party is entitled to relief on the merits is not appropriate on a motion to dismiss. | Is a court's determination of factual questions not appropriate on a motion to dismiss? |

| | | | | |
|---|---|---|---|---|
| 13736 | Mathis v. DCR Mortg. III Sub I, L.L.C., 389 S.W.3d 494, 507 (Tex. App. 2012) | 14 | A court's primary duty in construing a note and deed of trust, as when construing a contract, is to ascertain the parties' intent from the instrument's language. | A court's primary duty in construing a note and deed of trust, as when construing a contract, is to ascertain the parties' intent from the instrument's language. | What is the primary objective of a court when construing a promissory note? |
| 13767 | Arrow Marble, LLC v. Estate of Killion, 441 S.W.3d 702, 707 (Tex. App. 2014) | 11 | While admittedly erroneous, a dismissal with prejudice that should have been without prejudice is not automatically void-it is merely voidable. | While admittedly erroneous, a dismissal with prejudice that should have been without prejudice is not automatically void-it is merely voidable. | "While admittedly erroneous, is a dismissal with prejudice that should have been without prejudice not automatically void-it is merely voidable?" |
| 13796 | In re Hughes, 513 S.W.3d 28, 34 (Tex. App. 2016) | 12 | For an agency relationship to exist, there must be (1) a meeting of the minds between the parties to establish the relationship, and (2) some act constituting the appointment of the agent. | For an agency relationship to exist, there must be (1) a meeting of the minds between the parties to establish the relationship, and (2) some act constituting the appointment of the agent. | Should there be meeting of minds between the parties for an agency to exist? |
| 13831 | Cochran v. Ozark Country Club, 339 So. 2d 1023, 1024 (Ala. 1976) | 3 | Plaintiff cannot, by way of estoppel, endow with validity a transaction which is illegal and against public policy. | Plaintiff cannot, by way of estoppel, endow with validity a transaction which is illegal and against public policy. | Can one by way of estoppel endow with validity a transaction which is illegal and against public policy? |
| 13863 | Prairie View A & M Univ. of Texas v. Mitchell, 27 S.W.3d 323, 326 (Tex. App. 2000) | 5 | It is not proper to dismiss an action when a legitimate pleading amendment will demonstrate the court's jurisdiction. | It is not proper to dismiss an action when a legitimate pleading amendment will demonstrate the court's jurisdiction. | Does an appellate court not dismiss an action where a legitimate pleading amendment will demonstrate jurisdiction? |
| 13864 | Lane v. Lensmeyer, 158 S.W.3d 218, 224 (Mo. 2005) | 9 | Once a petition is dismissed with prejudice, the trial court is powerless to reinstate it, including the filing of an amended petition. | Once a petition is dismissed with prejudice, the trial court is powerless to reinstate it, including the filing of an amended petition. | "Once a petition is dismissed with prejudice, is the trial court powerless to reinstate it?" |
| 13888 | Sawgrass Builders v. Realty Co-op., 172 Ga. App. 324, 324 (1984) | 1 | A check is an unconditional promise to pay and a stop payment order does not discharge the maker's liability on the check. | A check is an unconditional promise to pay, and a stop payment order does not discharge the maker's liability on the check. | Does a stop payment order discharge the maker's liability on a check? |
| 13916 | Holmstrom v. Lee, 26 S.W.3d 526, 533 (Tex. App. 2000) | 17 | Only relief consistent with the facts and pleaded theories may be granted under a general prayer. | Only relief consistent with the facts and pleaded theories may be granted under a general prayer. | Will only the reliefs consistent with the facts and pleaded theories be granted under a general prayer? |
| 13951 | In re Hass, 273 B.R. 45, 50 (S.D.N.Y. 2002) | 9 | Consensual resolution of litigation has been favored in the law from time immemorial, whether by the parties themselves, or through mediation or other techniques of dispute resolution. | Consensual resolution of litigation has been favored in the law from time immemorial, whether by the parties themselves, or through mediation or other techniques of dispute resolution. | Is consensual resolution of litigation favored in law? |
| 14049 | Crooks v. Moses, 138 S.W.3d 629 639 (Tex.App.-Dallas, 2004) | 20 | For the negligent activity theory of liability to be applicable, the evidence must show that the injuries were directly related to the activity itself. | For the negligent activity theory of liability to be applicable, the evidence must show that the injuries were directly related to the activity itself. | When does the negligent activity theory of liability be applicable in an action? |
| 14074 | Reeves v. Meridian S. Ry., 61 So. 3d 964, 969 (Miss. Ct. App. 2011) | 10 | A trespass is committed even if the trespasser has a good-faith belief that he has a right to enter the land. | A trespass is committed even if the trespasser has a good-faith belief that he has a right to enter the land. | Can a trespass be committed even if the trespasser has a good-faith belief that he has a right to enter the land ? |

| | | | | |
|---|---|---|---|---|
| 14089 | Jonkers v. Summit Twp., 278 Mich. App. 263, 271 (Mich. Ct. App. 2008) | 13 | In cases in which the adverse claimant claims title under color of deed, disseisin occurs when the record owner first receives notice of the adverse deed. | In cases in which the adverse claimant claims title under color of deed, disseisin occurs when the record owner first receives notice of the adverse deed. | When does Disseisin occur? |
| 14098 | Cassidy v. Pavlonnis, 227 Or. App. 259, 265 (Or. Ct. App. 2009) | 6 | A property owner's right to convey the property in exchange for money is a real property interest. | A property owner's right to convey the property in exchange for money is a real property interest. | Can a property owner's right to convey the property in exchange for money be termed as a real property interest? |
| 14104 | PBM Prod. v. Mead Johnson Nutrition Co., 678 F. Supp. 2d 390, 398 (E.D. Va. 2009) | 1 | Virginia applies the lex loci delicti rule, that is, the law of the place of the wrong, to defamation actions. | Virginia applies the lex loci delicti rule, that is, the law of the place of the wrong, to defamation actions. | Is lex loci delicti applied to defamation cases? |
| 14159 | Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. KPMG Peat Marwick, 742 So. 2d 328, 332 (Fla. Dist. Ct. App. 1999) | 10 | The right to subrogation is not absolute, but depends upon the equities and attending facts of each case. | The right to subrogation is not absolute, but depends upon the equities and attending facts of each case. | Is a party's entitlement to subrogation dependent upon the equities and attendant facts of each case? |
| 14166 | Bradley v. State Farm Mut. Auto. Ins. Co., 290 Mich. App. 156, 389 (Mich. Ct. App. 2010) | 7 | Subrogation rights can be acquired by way of contractual assignment or under principles of equity. | Subrogation rights can be acquired by way of contractual assignment or under principles of equity. | Can subrogation rights be acquired by way of contractual assignment or under principles of equity? |
| 14172 | BNSF R. Co. v. Phillips, 434 S.W.3d 675, 699 (Tex. App. 2014) | 38 | The granting of a motion in limine is not a ruling on the admissibility of the evidence and does not preserve error; a motion in limine simply prohibits references to specific issues without first obtaining a ruling on the admissibility of those issues outside the presence of the jury. | The granting of a motion in limine is not a ruling on the admissibility of the evidence and does not preserve error. 38 A motion in limine simply prohibits references to specific issues without first obtaining a ruling on the admissibility of those issues outside the presence of the jury. | Is the granting of a motion in limine a ruling on the admissibility of the evidence and does not preserve error? |
| 14180 | Hicks v. Londre, 107 P.3d 1009, 1011 (Colo. App. 2005) | 6 | Equitable subrogation is a highly favored doctrine and has been given liberal application. | Equitable subrogation is a highly favored doctrine and has been given liberal application. | Is equitable subrogation a highly favored doctrine and has been given liberal application? |
| 14182 | In re Kuehn, 563 F.3d 289, 293 (7th Cir. 2009) | 6 | Under Wisconsin common law, property rights may arise from custom and usage. | Under Wisconsin common law, property rights may arise from custom and usage. | Can property rights arise under common law by custom or usage? |
| 14184 | In re Agent Orange Prod. Liab. Litig., 373 F. Supp. 2d 7, 58 (E.D.N.Y. 2005) | 16 | A corporation is not immune from civil legal action based on international law. | A corporation is not immune from civil legal action based on international law. | Is a corporation immune from civil legal action based on international law? |
| 14192 | Huckaby v. A.G. Perry & Son, 20 S.W.3d 194, 204 (Tex. App. 2000) | 20 | The trial court has authority to make a pretrial ruling on the admissibility of evidence. | The trial court has authority to make a pretrial ruling on the admissibility of evidence. | Does the trial court have authority to make a pretrial ruling on the admissibility of evidence? |
| 14193 | Armstrong Remodeling & Const. v. Cardenas, 2012 Ark. App. 387, 754 (Ark. Ct. App. 2012) | 7 | When a motion in limine is made, the proponent of the evidence has the burden of showing that the evidence is admissible. | When a motion in limine is made, the proponent of the evidence has the burden of showing that the evidence is admissible. | "When a motion in limine is made, does the proponent of the evidence have the burden of showing that the evidence is admissible?" |

| 14209 | Kanon v. Methodist Hosp., 9 S.W.3d 365, 368 (Tex. App. 1999) | 1 | Generally, a cause of action accrues when a wrongful act causes an injury, regardless of when the plaintiff learns of the injury. | Generally, a cause of action accrues when a wrongful act causes an injury, regardless of when the plaintiff learns of the injury. | Does a cause of action accrue when a wrongful act causes an injury? |
|---|---|---|---|---|---|
| 14213 | United States v. Ganim, 510 F.3d 134, 148 (2d Cir. 2007) | 9 | Like extortion, the crime of bribery requires a quid pro quo. | Like extortion, the crime of bribery requires a quid pro quo. | Does the crime of bribery require a quid pro quo like extortion? |
| 14216 | Bd. of Regents of Univ. of Houston Sys. v. FKM P'ship, Ltd., 178 S.W.3d 1, 5 (Tex. App. 2005) | 7 | Like other civil cases, an eminent domain proceeding is subject to the rules of civil procedure. | Like other civil cases, an eminent domain proceeding is subject to the rules of civil procedure. | Are eminent domain proceedings subject to the rules of civil procedure? |
| 14219 | United States v. Roberts, 1 F. Supp. 2d 601, 605 (E.D. La. 1998) | 3 | The "high seas" encompasses that part of the ocean which is beyond the territorial sea of any country. | The "high seas" encompasses that part of the ocean which is beyond the territorial sea of any country. | Does the term high seas encompass the part of the ocean which is beyond the territorial sea of any country? |
| 14225 | Moonan v. Louisiana Med. Mut. Ins. Co., 202 So. 3d 529, 534 (La. Ct. App. 2016) | 6 | A motion in limine presents an evidentiary matter that is subject to the great discretion of the trial court. | A motion in limine presents an evidentiary matter that is subject to the great discretion of the trial court. | Does the trial court have great discretion in its consideration of motions in limine? |
| 14227 | Petraski v. Thedos, 382 Ill. App. 3d 22, 26 (2008) | 1 | Whether a motion in limine should be granted is subject to the trial court's discretion. | Whether a motion in limine should be granted is subject to the trial court's discretion. | Is the question of whether a motion in limine should be granted subject to the trial court's discretion? |
| 14232 | PaineWebber v. Fowler, 791 F. Supp. 821, 826 (D. Kan. 1992) | 2 | Agreements to arbitrate issues exclusively in a particular forum are enforceable as a matter of contract law. | Agreements to arbitrate issues exclusively in a particular forum are enforceable as a matter of contract law. | Is an agreement to arbitrate issues in a particular forum enforceable? |
| 14248 | Nationwide Mut. Fire Ins. Co. v. T & N Master Builder & Renovators, 2011 IL App (2d) 101143, ¶ 9, 959 N.E.2d 201, 205 | 7 | As an action in equity, a claim may be subrogated only in order to prevent injustice or unjust enrichment and will not be maintained when it would be inequitable to do so. | As an action in equity, a claim may be subrogated only in order to prevent injustice or unjust enrichment and will not be maintained when it would be inequitable to do so. | Will subrogation be allowed where it would be inequitable? |
| 14256 | Caverno v. Fellows, 286 Mass. 440, 443 (Mass. 1934) | 6 | Great detail in pleading well-known torts or infringement of legal rights is not required. | Great detail in pleading well known torts or infringement of legal rights is not required. | Is great detail required in pleading well known torts or infringement of legal rights? |
| 14258 | Jones v. Boswell, 250 S.W.3d 140, 143 (Tex. App. 2008) | 2 | Trespass to chattel is the wrongful interference with the use or possession of another's property. | Trespass to chattel is the wrongful interference with the use or possession of another's property. | Is wrongful interference with the use or possession of another's property considered trespass to chattel? |
| 14266 | Kirk v. Ford Motor Co., 141 Idaho 697, 701 (Idaho 2005) | 8 | When presented with a motion in limine, a trial court has the authority to deny the motion and wait until trial to determine if the evidence should or should not be excluded. | When presented with a motion in limine, a trial court has the authority to deny the motion and wait until trial to determine if the evidence should or should not be excluded. | Can the trial court deny the motion in limine? |
| 14285 | Watson v. City of E. Point, 223 Ga. 185, 186, 154 S.E.2d 15, 16 (1967) | 2 | An allegation that a party is the owner of specified land is an allegation of an ultimate fact and not a conclusion of law. | An allegation that a party is the owner of specified land is an allegation of an ultimate fact and not a conclusion of law. | "Is the allegation that a party is the owner of a specified land, an allegation of ultimate fact?" |

| 14303 | Blair v. Scott Specialty Gases, 283 F.3d 595, 603 (3d Cir. 2002) | 10 | When both parties have agreed to be bound by arbitration, adequate consideration exists, and the arbitration agreement should be enforced. | When both parties have agreed to be bound by arbitration, adequate consideration exists and the arbitration agreement should be enforced. | Do courts presume that adequate consideration exists when both parties agreed to be bound by arbitration? |
|---|---|---|---|---|---|
| 14344 | Schroeder v. Schroeder, 223 Neb. 684, 686 (1986) | 2 | Collateral consequences, such as subjection to further litigation, do not interfere with one's right of dismissal. | Collateral consequences, such as subjection to further litigation, do not interfere with one's right of dismissal. | "Do collateral consequences, such as subjection to further litigation, interfere with one's right of dismissal?" |
| 14357 | McIntyre v. Seminole Cty. Sch. Bd., 779 So. 2d 639, 641 (Fla. Dist. Ct. App. 2001) | 3 | A teacher or contractual employee who can only be terminated for cause has a contractual property interest in his job. | A teacher or contractual employee who can only be terminated for cause has a contractual property interest in his job. | Does a teacher or a contractual employee who can only be terminated for cause have a contractual property interest in his job? |
| 14359 | Zumbrun v. Univ. of S. California, 25 Cal. App. 3d 1, 12, 101 Cal. Rptr. 499, 505 (Ct. App. 1972) | 12 | Allegations of damages without allegations of fact to support them are but conclusions of law, which are not admitted by demurrer. | Allegations of damages without allegations of fact to support them are but conclusions of law, which are not admitted by demurrer. | "Are allegations of damages without allegations of fact to support them, admitted by demurrer?" |
| 14396 | Parks v. Breedlove, 241 Ga. App. 72, 73 (Ga. Ct. App. 1999) | 3 | A pretrial order limits the issues for trial and controls the subsequent course of the action unless modified at trial to prevent manifest injustice. | A pretrial order limits the issues for trial and controls the subsequent course of the action unless modified at trial to prevent manifest injustice. | Is a pre-trial order to be construed liberally to allow the consideration of all questions fairly within the ambit of contested issues? |
| 14400 | Shawe v. Elting, 157 A.3d 142, 150 (Del. 2017) | 9 | A party in litigation has an affirmative duty to preserve potentially relevant evidence. | A party in litigation has an affirmative duty to preserve potentially relevant evidence. | Does a party in litigation have an affirmative duty to preserve potentially relevant evidence? |
| 14401 | Hibbert v. Ransdell, 26 P.3d 721, 726 (Kan. App. 2001) | 12 | In general, a pretrial order should supersede pleadings and control the future course of the action unless modified to prevent injustice. | In general, a pretrial order should supersede pleadings and control the future course of the action unless modified to prevent injustice. | Will a pre-trial order supersede the pleadings? |
| 14420 | Wenrich v. Emps. Mut. Ins. Companies, 35 Kan. App. 2d 582, 590–91, 132 P.3d 970, 977 (2006) | 13 | In the absence of an attempt to modify the pretrial order, such order is binding and controls the subsequent course of trial. | In the absence of an attempt to modify the pretrial *591 order, such order is binding and controls the subsequent course of trial. | "Where a pretrial order was not modified, does it control a subsequent course of action?" |
| 14426 | Michigan State Highway Comm'n v. Redmon, 42 Mich. App. 642, 646 (Mich. Ct. App. 1972) | 3 | Counsel cannot sit idly by and then for the first time interpose objections at trial. | counsel cannot sit idly by and then for the first time interpose objections at trial. | Can counsel sit idly by and then for the first time interpose objections at trial? |
| 14477 | Hodge v. Johnson, 852 N.E.2d 650, 652 (Ind. App. 2006) | 7 | Where an action is voluntarily dismissed without prejudice, the situation is as though no action had been brought. | Where an action is voluntarily dismissed without prejudice the situation is as though no action had been brought. | "Where an action is voluntarily dismissed without prejudice, is the situation as though no action had been brought?" |
| 14488 | Parks Hiway Enterprises v. CEM Leasing, 995 P.2d 657, 664 (Alaska 2000) | 8 | Trespass is an unauthorized intrusion or invasion of another's land, including subsurface areas. | Trespass is an unauthorized intrusion or invasion of another's land, 23 including subsurface areas. | "Can trespass include intrusion or invasion of another's land, including subsurface areas?" |

| 14512 | Chatham Surgicore, Ltd. v. Health Care Serv. Corp., 356 Ill. App. 3d 795, 799 (Ill. App. Ct. 2005) | 7 | A complaint need only allege facts which establish the right to recovery; not only are allegations of law or conclusions not required, they are improper. | A complaint need only allege facts which establish the right to recovery; not only are allegations of law or conclusions not required, they are improper. | Are allegations of law or conclusions in complaint improper? |
| 14529 | N. Indiana Transit v. Burk, 228 Ind. 162, 164 (Ind. 1950) | 10 | At common law, the right to stop at a reasonable place and in a reasonable manner is an incident of the right to travel. | At common law the right to stop at a reasonable place and in a reasonable manner is an incident of the right to travel. | Is the right to stop at a reasonable place and in a reasonable manner an incident of the right to travel? |
| 14550 | Edgett v. State, 43 So. 3d 541, 544 (Miss. Ct. App. 2010) | 5 | Because the offense of burglary itself requires an underlying crime, an indictment for burglary that does not specify what crime the accused intended to commit is fatally defective. | Because the offense of burglary itself requires an underlying crime, an indictment for burglary that does not specify what crime the accused intended to commit is fatally defective. | Does burglary require an underlying crime? |
| 14561 | Kinnon v. Arcoub, Gopman & Assocs., 490 F.3d 886, 890 (11th Cir. 2007) | 3 | Under Florida law, an agent who makes a contract on behalf of an undisclosed principal is a party to the contract. | Under Florida law, an agent who makes a contract on behalf of an undisclosed principal is a party to the contract. | "Is an agent who makes a contract on behalf of an undisclosed principal, a party to the contract?" |
| 14562 | Reed v. Trovatten, 209 Minn. 348, 352 (Minn. 1941) | 3 | The right to a writ of mandamus is determined as of the time of the hearing rather than of the application. | The right to a writ of mandamus is determined as of the time of the hearing rather than of the application. | Is the right to a writ of mandamus determined as of the time of the hearing rather than of the application? |
| 14589 | City of Tampa v. State ex rel. Evans, 155 Fla. 177, 178 (Fla. 1944) | 1 | The Legislature has power to grant pensions as a gratuity for public service rendered. | The legislature has power to grant pensions as a gratuity for public service rendered. | Does the Legislature have the power to grant pensions as a gratuity for public services rendered? |
| 14590 | In re Estate of Lowe, 156 N.C. App. 616, 619 (N.C. Ct. App. 2003) | 3 | The grant or denial of a motion to withdraw an admission is discretionary with the trial court. | The grant or denial of a motion to withdraw an admission is discretionary with the trial court. | Is the grant or denial of a motion to withdraw an admission discretionary with the trial court? |
| 14631 | In re C.M.C., 192 S.W.3d 866, 870 (Tex. App. 2006) | 9 | Without subject-matter jurisdiction, the trial court must dismiss the case. | Without subject-matter jurisdiction, the trial court must dismiss the case. | "Without subject-matter jurisdiction, must the trial court dismiss the case?" |
| 14636 | Great Lakes Dredge & Dock Co. v. Charlet, 134 F.2d 213, 216 (5th Cir. 1943) | 5 | The power of a state to tax, as well as its power to govern men and things, will not be lightly stricken down by implication. | The power of a state to tax, as well as its power to govern men and things, will not be lightly stricken down by implication. | Can the power of a state to tax be lightly stricken down by implication? |
| 14647 | In re Stevens' Est., 261 A.D. 48, 50, 24 N.Y.S.2d 786, 788 (App. Div. 1941) | 3 | A pension is given to a soldier by the United States government exclusively for his own benefit. | A pension is given to a soldier by the United States government exclusively for his own benefit. | Is a pension given to a soldier by the United States government exclusively for his own benefit? |
| 14650 | Thorpe v. Gelbwaks, 953 So. 2d 606, 609 (Fla. Dist. Ct. App. 2007) | 5 | A defendant contesting personal jurisdiction must file a motion to dismiss. | A defendant contesting personal jurisdiction must file a motion to dismiss. | Must a defendant contesting personal jurisdiction file a motion to dismiss? |
| 14663 | Livingston v. Town of Mt. Pleasant, 356 S.C. 354, 358, 588 S.E.2d 630, 633 (Ct. App. 2003) | 4 | Normally, taxes are imposed on all property for the maintenance of the government, while assessments are imposed only on the property that is to be benefited. | Normally, taxes are imposed on all property for the maintenance of the government, while assessments are imposed only on the property that is to be benefited. | "Are taxes normally imposed on all property for the maintenance of the government, while assessments are imposed only on the property that is to be benefited?" |

| | | | | |
|---|---|---|---|---|
| 14668 | Howard v. United States, 28 F. Supp. 985, 996 (W.D. Wash. 1939) | 6 | A policy of liberalism permeates the entire structure of war risk insurance. | A policy of liberalism permeates the entire structure of war risk insurance. | Does a policy of liberalism permeate the entire structure of war risk insurance? |
| 14702 | Benfield v. Costner, 67 N.C. App. 444, 445 (N.C. Ct. App. 1984) | 1 | North Carolina is a notice pleading state, and detailed fact pleading generally is no longer required. | North Carolina is a notice pleading State, and detailed fact pleading generally is no longer required. | Is detailed fact pleading required in a notice pleading state? |
| 14707 | Freeman v. JI Specialty Servs., 505 S.W.3d 14, 17 (Tex. App. | 3 | A motion to dismiss due to a lack of subject-matter jurisdiction is the functional equivalent of a plea to the jurisdiction. | A motion to dismiss due to a lack of subject-matter jurisdiction is the functional equivalent of a plea to the jurisdiction. | Is a motion to dismiss based on a lack of subject matter jurisdiction the functional equivalent of a plea to the jurisdiction? |
| 14713 | City of El Paso v. Tom Brown Ministries, 505 S.W.3d 124, 137 (Tex. App. 2016) | 12 | A court has no subject-matter jurisdiction over a claim made by a party who lacks standing to assert it. | A court has no subject-matter jurisdiction over a claim made by a party who lacks standing to assert it. | Does a court have jurisdiction over a claim made by a plaintiff who lacks standing to assert it? |
| 14714 | Annexation Ordinance F-2008-15 v. City of Evansville, 955 N.E.2d 769, 776 (Ind. Ct. App. 2011) | 11 | When a dispositive issue in a case has been resolved in such a way as to render it unnecessary to decide the question involved, the case will be dismissed. | When a dispositive issue in a case has been resolved in such a way as to render it unnecessary to decide the question involved, the case will be dismissed. . | Will a case be dismissed as moot when a dispositive issue in a case has been resolved? |
| 14735 | People v. Birch Sec. Co., 86 Cal. App. 2d 703, 708, 196 P.2d 143, 146 (1948) | 8 | When facts are available from public records, it is ordinarily improper to allege such facts on mere information and belief. | When facts are available from public records, it is ordinarily improper to allege such facts on mere information and belief. | Is it improper to allege facts on mere information and belief? |
| 14737 | Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 554 (Tex. 2000) | 10 | A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action without regard to whether the claims asserted have merit. | A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action without regard to whether the claims asserted have merit. | Is a plea to the jurisdiction a dilatory plea? |
| 14778 | In re Burm, 554 B.R. 5, 20 (D. Mass. 2016) | 12 | Under Massachusetts law, a promissory note is nothing more than a written contract for the payment of money, subject to the fundamental rules governing contract law. | Under Massachusetts law, a promissory note is nothing more than a written contract for the payment of money, subject to the fundamental rules governing contract law. | Is promissory note a contract? |
| 14800 | K's Merch. Mart v. Northgate Ltd. P'ship, 359 Ill. App. 3d 1137, 1144 (2005) | 14 | In an estoppel certificate, the signer is certifying the course of performance has not produced any defaults. | In an estoppel certificate, the signer is certifying the course of performance has not produced any defaults. | "In an estoppel certificate, does the signer certify the course of performance has not produced any defaults?" |
| 14804 | Johnson v. Smith, 215 N.C. 322, 1 S.E.2d 834, 836 (1939) | 26 | The standard a plaintiff must meet at the motion to dismiss stage is low. | The standard a plaintiff must meet at the motion to dismiss stage is low. | Is the standard a plaintiff must meet at the motion to dismiss stage low? |
| 14807 | Stoltz v. Aurora Loan Servs., 194 So. 3d 1097, 1098 (Fla. Dist. Ct. App. 2016) | 2 | An indorsement in blank is sufficient to prove that the person in possession of the note is its holder. | An indorsement in blank is sufficient to prove that the person in possession of the note is its holder. | Is indorsement in blank sufficient to prove that the person in possession of the note is its holder? |
| 14814 | Carlson v. Hannah, 6 N.J. 202, 212 (N.J. 1951) | 2 | The power of an agent to bind his principal is limited to such acts as are within his actual or apparent authority. | The power of an agent to bind his principal is limited to such acts as are within his actual or apparent authority. | Can an agent bind his principal for acts within his authority? |

| 14816 | Walker v. President & Fellows of Harvard Coll., 82 F. Supp. 3d 524, 528 (D. Mass. 2014), aff'd, 840 F.3d 57 (1st Cir. 2016) | 1 | An entering student forms a contractual relationship with her university, and a disciplinary code can be part of that contract. | "[A]n entering student forms a contractual relationship with her university and … a disciplinary code can be part of that contract." | Can the university disciplinary code be part of the contract with the students? |
| --- | --- | --- | --- | --- | --- |
| 14837 | Unruh v. Purina Mills, LLC, 289 Kan. 1185, 1191, 221 P.3d 1130, 1137 (2009) | 5 | Whether a pleading is sufficient to state a cause of action is a question of law. | Whether a pleading is sufficient to state a cause of action is a question of law. | Is whether a pleading is sufficient to state a cause of action a question of law? |
| 14858 | Mathis v. DCR Mortg. III Sub I, 389 S.W.3d 494, 507 (Tex. App. 2012) | 14 | A court's primary duty in construing a note and deed of trust, as when construing a contract, is to ascertain the parties' intent from the instrument's language. | A court's primary duty in construing a note and deed of trust, as when construing a contract, is to ascertain the parties' intent from the instrument's language. | Should the intention of parties be given effect when interpreting a promissory note? |
| 14860 | Montgomery Cty. v. Fuqua, 22 S.W.3d 662, 669 (Tex. App. 2000) | 20 | Affirmative defenses are "pleas in bar," and do not provide a justification for summary dismissal on the pleadings. | Affirmative defenses are "pleas in bar," and do not provide a justification for summary dismissal on the pleadings. | Do affirmative defenses provide a justification for summary dismissal on the pleadings? |
| 14861 | Univ. of Houston v. Elthon, 9 S.W.3d 351, 356 (Tex. App. 1999), disapproved of by Texas Dep't of Parks & Wildlife v. Miranda, 133 S.W.3d 217 (Tex. 2004), and abrogated by Texas A & M Univ. Sys. v. Koseoglu, 233 S.W.3d 835 (Tex. 2007) | 24 | Affirmative defenses are pleas in bar, and do not provide a justification for summary dismissal on the pleadings. | Affirmative defenses are pleas in bar, and do not provide a justification for summary dismissal on the pleadings. | Do affirmative defenses provide a justification for summary dismissal on the pleadings? |
| 14870 | Forney 921 Lot Dev. Partners I v. Paul Taylor Homes, Ltd., 349 S.W.3d 258, 268 (Tex. App. 2011) | 11 | Unlike equitable estoppel, quasi-estoppel does not require a showing of a false representation or detrimental reliance. | Unlike equitable estoppel, quasi-estoppel does not require a showing of a false representation or detrimental reliance. | Does quasi-estoppel not require a false representation or detrimental reliance? |
| 14873 | Corsello v. Verizon New York, Inc., 77 A.D.3d 344, 370, 908 N.Y.S.2d 57, 78 (2010) | 35 | A cause of action is duplicative of another when they both arise out of the same facts and allege the same damages. | A cause of action is duplicative of another when they both arise out of the same facts and allege the same damages | Is a cause of action duplicative of another when they both arise out of the same facts and allege the same damages? |
| 14874 | Crooked Creek, III, Inc. v. City of Greenwood, 352 Ark. 465, 465 (Ark. 2003) | 8 | Where a dismissal is with prejudice, it is conclusive of the rights of the parties as if the suit had been prosecuted to a final adjudication adverse to the plaintiff. | Where a dismissal is with prejudice, it is conclusive of the rights of the parties as if the suit had been prosecuted to a final adjudication adverse to the plaintiff. | Is the dismissal of a claim with prejudice conclusive as to the rights of the parties on that claim? |
| 14917 | Cole v. McWillie, 464 S.W.3d 896, 901 (Tex. App. 2015) | 7 | For an agency relationship to exist, there must be both a meeting of the minds between the parties and some act constituting the appointment of an agent. | For an agency relationship to exist, there must be both a meeting of the minds between the parties and some act constituting the appointment of an agent. | Should there be meeting of minds between the parties for an agency to exist? |
| 14931 | Braddock v. Zimmerman, 906 A.2d 776, 786 (Del. 2006) | 13 | A complaint that is dismissed without prejudice but with express leave to amend is nevertheless a dismissed complaint. | A complaint that is dismissed without prejudice but with express leave to amend is nevertheless a dismissed complaint. | Is a complaint that is dismissed without prejudice but with express leave to amend nevertheless a dismissed complaint? |

| 14956 | Keough v. Cyrus USA, 204 S.W.3d 1, 4 (Tex. App. 2006) | 3 | The movant for reinstatement bears the burden to produce evidence supporting the motion. | The *4 movant for reinstatement bears the burden to produce evidence supporting the motion. | Does the movant for reinstatement bear the burden to produce evidence supporting the motion? |
|---|---|---|---|---|---|
| 14978 | Dobson v. Mortg. Elec. Registration Sys./GMAC Mortg. Corp., 259 S.W.3d 19, 22 (Mo. Ct. App. 2008) | 3 | Because the failure to state a cause of action is a jurisdictional defect, it may be raised at any time during the proceedings. | Because the failure to state a cause of action is a jurisdictional defect, it may be raised at any time during the proceedings. | Is the failure to state a cause of action a jurisdictional defect? |
| 14980 | Braddock v. Zimmerman, 906 A.2d 776, 786 (Del. 2006) | 13 | A complaint that is dismissed without prejudice but with express leave to amend is nevertheless a dismissed complaint. | A complaint that is dismissed without prejudice but with express leave to amend is nevertheless a dismissed complaint. | Is a complaint that is dismissed without prejudice with express leave to amend nevertheless a dismissed complaint? |
| 14981 | Pinson v. Grimes, 42 So. 3d 650, 651 (Miss. Ct. App. 2010) | 2 | The circuit court has the inherent power to dismiss an action for the failure to prosecute. | The circuit court has the inherent power to dismiss an action for the failure to prosecute. | Does the circuit court have the inherent power to dismiss an action for the failure to prosecute? |
| 14992 | Hillme v. Chastain, 75 S.W.3d 315, 318 (Mo. Ct. App. 2002) | 12 | A voice in the management of the partnership business, a share of the profits of the partnership business, and a corresponding risk of loss and liability to partnership creditors are all indications of a partnership. | A voice in the management of the partnership business, a share of the profits of the partnership business, and a corresponding risk of loss and liability to partnership creditors are all indications of a partnership. | Is right to a voice in management of the partnership business an indicia of a partnership relationship? |
| 14994 | Cornelius v. River Ridge Ranch Landowners Ass'n, 202 P.3d 564, 569 (Colo. 2009) | 1 | The power to dismiss for failure to prosecute is in the sound discretion of the trial court. | The power to dismiss for failure to prosecute is in the sound discretion of the trial court. | Is the power to dismiss for failure to prosecute in the sound discretion of the trial court? |
| 15041 | In re Estate of Long, 311 Ill. App. 3d 959, 964 (Ill. App. Ct. 2000) | 8 | A farm tenancy is a personal services contract in which the tenant is expected to perform services that require skill and judgment. | A farm tenancy is a personal services contract in which the tenant is expected to perform services that require skill and judgment. | Are farm tenancies considered personal service contracts? |
| 15042 | Gregg v. Rauner, 84 N.E.3d 572, 578 (Ill. App. Ct. 2017) | 3 | The Governor's executive clemency powers are extremely broad and cannot be controlled by either the courts or the legislature. | The Governor's executive clemency powers are extremely broad and cannot be controlled by either the courts or the legislature. | Can the Governors clemency power be controlled by the legislature or the courts? |
| 15045 | City of Tyler v. Beck, 198 S.W.3d 1, 3 (Tex. 2004) | 7 | The trial court has inherent authority to dismiss any case before it for want of prosecution. | The trial court has inherent authority to dismiss any case before it for want of prosecution. | Does the trial court have the inherent authority to dismiss any case before it for want of prosecution? |
| 15048 | Andrews v. Pal-Mar Water Control Dist. Dep't of Revenue, 388 So. 2d 4, 5 (Fla. Dist. Ct. App. 1980) | 1 | The state and its political subdivisions are immune from taxation since there is no power to tax them. | The state and its political subdivisions are immune from taxation since there is no power to tax them. | Is the state and its political subdivisions immune from taxation since there is no power to tax them? |
| 15085 | Rivas v. Napolitano, 714 F.3d 1108, 1110 (9th Cir. 2013) | 1 | Federal courts are generally without power to review the actions of consular officials. | Federal courts are generally without power to review the actions of consular officials. | Do federal courts have power to review the actions of consular officials? |
| 15131 | Pinnacle Properties V v. Mainline Supply of Atlanta, 319 Ga. App. 94, 99 (2012) | 14 | Every legal interest in real and personal property can be seized and sold. | Every legal interest in real and personal property can be seized and sold." | Can every legal interest in real and personal property be seized and sold? |

| | | | | | |
|---|---|---|---|---|---|
| 15133 | Wilson v. Cnty. of Orange, 881 So. 2d 625, 629 (Fla. Dist. Ct. App. 2004) | 3 | Dismissal should not be granted on the basis of an affirmative defense, except when the face of the complaint is sufficient to demonstrate the existence of that defense. | Dismissal should not be granted on the basis of an affirmative defense, except when the face of the complaint is sufficient to demonstrate the existence of that defense. | Should a dismissal be granted on the basis of an affirmative defense? |
| 15137 | Pusl v. Means, 2009 PA Super 192, 557 (Pa. Super. Ct. 2009) | 12 | The goal of subrogation is to place the burden of the debt upon the person who should bear it. | The goal of subrogation is to place the burden of the debt upon the person who should bear it. | Should the goal of subrogation be to place the burden on the debt upon the person who should bear it? |
| 15145 | In re Bill Heard Enterprises, 423 B.R. 771, 787 (N.D. Ala. 2010) | 33 | Equity rules are not absolute and competing equities must be considered in any subrogation-restitution situation; the subrogee must have clear equity, and subrogation is defeated by countervailing equities. | Equity rules are not absolute and competing equities must be considered in any subrogation-restitution situation. The subrogee must have clear equity and subrogation is defeated by countervailing equities. | Are equity rules absolute? |
| 15154 | DeCespedes v. Prudence Mut. Cas. Co. of Chicago, Ill., 193 So. 2d 224, 227 (Fla. Dist. Ct. App. 1967) | 4 | The contract of insurance is said to be a contract of utmost good faith, and the law of insurance may be thought of as an extension of the law of suretyship. | The contract of insurance is said to be a contract of utmost good faith, 3 and the law of insurance may be thought of as an extension of the law of suretyship. | Are insurance contracts considered as contract of good faith? |
| 15203 | Glassey v. Cont'l Ins. Co., 176 Wis. 2d 587, 602 (1993) | 13 | Strict liability and negligence are alternative theories of recovery in Wisconsin products liability cases. | Strict liability and negligence are alternative theories of recovery in Wisconsin products liability cases. | Is strict liability an alternative to the negligence theory of recovery? |
| 15205 | Citizens Nat. Bank of Kirksville, Mo., v. Comm'r of Internal Revenue, 122 F.2d 1011, 1014 (8th Cir. 1941) | 5 | An "equitable title" is a right possessed by a person to have the legal title to property transferred to him upon the performance of specified conditions. | An "equitable title" is a right possessed by a person to have the legal title to property transferred to him upon the performance of specified conditions. | What is an equitable title under property law? |
| 15244 | Long v. Fulton Cnty. Sch. Dist., 807 F. Supp. 2d 1274, 1286 (N.D. Ga. 2011) | 7 | Whether a litigant has a cause of action is analytically distinct and prior to the question of what relief, if any, a litigant may be entitled to receive. | "Whether a litigant has a cause of action is analytically distinct and prior to the question of what relief, if any, a litigant may be entitled to receive." | Can a litigant have cause of action? |
| 15254 | Gen. Prod. Co. v. Meredith Corp., 526 F. Supp. 546, 549 (E.D. Va. 1981) | 2 | A corporation may be defamed by statements which cast aspersion on its honesty, credit, efficiency or its prestige or standing in its field of business. | A corporation may be defamed by statements which cast aspersion on its honesty, *550 credit, efficiency or its prestige or standing in its field of business. | How can a corporation be defamed? |
| 15265 | First Nat. Bank & Tr. Co. In Larned v. Wetzel, 42 Kan. App. 2d 924, 929 (Kan. Ct. App. 2009) | 10 | At both law and equity, an injured party cannot obtain a remedy unless there is a corresponding wrong for which a remedy is necessary. | At both law and equity, an injured party cannot obtain a remedy unless there is a corresponding wrong for which a remedy is necessary. | Can a party obtain an equitable remedy without a wrong for which a remedy is necessary? |
| 15287 | Fed. Mgt. Co. v. Coopers & Lybrand, 137 Ohio App. 3d 366, 397 (Ohio Ct. App. 2000) | 35 | A motion in limine may be properly brought on the basis of collateral estoppel. | A motion in limine may be properly brought on the basis of collateral estoppel. | Can a motion in limine be properly brought on the basis of collateral estoppel? |
| 15289 | Three Way v. Burton Enterprises, 177 P.3d 219, 225 ¶ 18 (Wyo. 2008) | 6 | Evidence that is not relevant may be found inadmissible via a motion in limine. | Evidence that is not relevant may be found inadmissible via a motion in limine. | Can evidence that is not relevant be found inadmissible via a motion in limine? |

| 15290 | Certain Underwriters at Lloyd's, London v. S. Nat. Gas Co., 142 So. 3d 436, 459 (Ala. 2013) | 29 | A trial court has broad discretion in determining whether to grant a motion in limine. | A trial court has broad discretion in determining whether to grant a motion in limine. | Do trial courts have broad discretion when ruling on a motion in limine? |
|---|---|---|---|---|---|
| 15299 | Hodge v. Serv. Mach. Co., 438 F.2d 347, 349 (6th Cir. 1971) | 3 | A suit may not be brought upon a cause of action until it exists, and a cause of action does not exist until all its elements coalesce. | A suit may not be brought upon a cause of action until it exists, and a cause of action does not exist until all its elements coalesce. | Can a suit be brought upon a cause of action before it exists? |
| 15314 | Broadvox-CLEC v. AT&T Corp., 184 F. Supp. 3d 192, 201 (D. Md. 2016) | 6 | When a tariff is clear and unambiguous on its face, no construction by the court is necessary, and the parties are bound by its terms. | When a tariff is clear and unambiguous on its face, no construction by the court is necessary, and the parties are bound by its terms. | Are parties bound by the terms of a tariff if it is unambiguous? |
| 15317 | Doe v. Corrections Dep't, 249 Mich. App. 49, 61-62 (Mich. Ct. App. 2001) | 3 | A cause of action becomes a vested right when it accrues and all the facts become operative and known. | A cause of action becomes a vested right when it accrues and all the *62 facts become operative and known. | Does a cause of action become a vested right when it accrues? |
| 15328 | In re Commitment of Kelley, 2012 IL App (1st) 110240, 972 N.E.2d 667, 675 (2012) | 2 | A ruling on a motion in limine is a matter within the discretion of the trial court and will not be reversed absent an abuse of that discretion. | A ruling on a motion in limine is a matter within the discretion of the trial court and will not be reversed absent an abuse of that discretion. | When will ruling on a motion in limine be reversed? |
| 15333 | First Assembly of God v. T.U, 52 S.W.3d 482, 489 (Tex. App. 2001) | 9 | Unless found to be unreasonable, filed tariffs govern a utility's relationship with its customers and have the force and effect of law. | Unless found to be unreasonable, filed tariffs govern a utility's relationship with its customers and have the force and effect of law. | Is the burden to prove the unreasonableness of a tariff on the customer? |
| 15334 | National Union Fire v. KPMG, 742 So. 2d 328, 332 (Fla. Dist. Ct. App. 1999) | 10 | The right to subrogation is not absolute, but depends upon the equities and attending facts of each case. | The right to subrogation is not absolute, but depends upon the equities and attending facts of each case. | Is a party's entitlement to subrogation dependent upon the attendant facts of each case? |
| 15335 | Argonaut Ins. Co. v. C S Bank, 140 Ga. App. 807, 811 (Ga. Ct. App. 1976) | 3 | Subrogation is not founded upon contract, express or implied, but upon principles of equity and justice. | Subrogation is not founded upon contract, express or implied, but upon principles of equity and justice. | Is the right of subrogation founded upon express or implied contract? |
| 15341 | Schwaner v. Department of Army, 370 F. Supp. 2d 408, 415 (E.D. Va. 2004) | 8 | Army regulations must be in accord with directives promulgated by the Department of Defense. | Army regulations must be in accord with directives promulgated by the Department of Defense. | Do army regulations have to be in accord with the directives promulgated by the Department of Defense? |
| 15343 | Anderson v. Bd. of Sup'rs of Louisiana State Univ. & Agr. & Mech. Coll. ex rel. Louisiana State Univ. Health Sci. Ctr., 943 So.2d 1198, 1202 (La.App. 5 Cir.,2006) | 6 | The trial court has great discretion when ruling on evidentiary matters, such as motions in limine. | The trial court has great discretion when ruling on evidentiary matters, such as motions in limine. | Do trial courts have the discretion to defer a ruling on a motion in limine? |
| 15346 | Scottsdale Ins. Co. v. Addison Ins. Co., 448 S.W.3d 818, 830 (Mo. 2014) | 21 | Subrogation is classified as either equitable, the right to which is imposed by law, or conventional, the right to which arises from a contract. | Subrogation is classified as either equitable, the right to which is imposed by law, or conventional, the right to which arises from a contract. | Do subrogation rights arise by contract or by operation of law? |
| 15354 | State, ex Rel. Local Union 377, v. Youngstown, 50 Ohio St. 2d 200, 203 (1977) | 1 | Normally, a cause of action does not accrue until such time as the infringement of a right arises. | Normally, a cause of action does not accrue until such time as the infringement of a right arises. | Does a cause of action accrue until such time as the infringement of a right arises? |

| 15385 | Co. Bd. of Ed., Jones Co. v. Smith, 239 Miss. 53 (Miss. 1960) | 2 | Courts must enforce the school laws in accordance with the mandate from the Legislature. | Courts must enforce the school laws in accordance with the mandate from the legislature. | Should the courts enforce the school laws in accordance with the mandate from the Legislature? |
|---|---|---|---|---|---|
| 15409 | Colt v. Mt. Princeton Trout, 78 P.3d 1115, 1120 (Colo. App. 2003) | 8 | In a closely held corporation, the relationship between directors and shareholders is akin to a relationship among partners; directors owe the highest degree of loyalty and trust to the other shareholders, are required to exercise good faith, and may not use their power to harm the other shareholders. | In a closely held corporation, the relationship between directors and shareholders is akin to a relationship among partners. Directors owe the highest degree of loyalty and trust to the other shareholders, are required to exercise good faith, and may not use their power to harm the other shareholders. | Is the relationship between shareholders in a closely held corporation analogous to that of partners? |
| 15414 | Sea Pines Ass'n for the Protection of Wildlife, Inc. v. South Carolina Department of Natural Resources, 345 S.C. 594, 599 (2001) | 2 | A real party in interest is one who has a real, material, or substantial interest in the subject matter of the action, as opposed to one who has only a nominal or technical interest in the action. | A real party in interest is one who has a real, material, or substantial interest in the subject matter of the action, as opposed to one who has only a nominal or technical interest in the action. | Who is a real party in interest? |
| 15426 | Wood v. Strickland, 420 U.S. 308, 326, 95 S. Ct. 992, 1003, 43 L. Ed. 2d 214 (1975) | 9 | It is not the role of the federal courts to set aside decisions of school administrators which the court may view as lacking a basis in wisdom or compassion. | It is not the role of the federal courts to set aside decisions of school administrators which the court may view as lacking a basis in wisdom or compassion. | Do public high school students have substantive and procedural rights while at school? |
| 15436 | Nitro Distrib., Inc. v. Alticor, Inc., 453 F.3d 995, 999 (8th Cir. 2006) | 4 | An agent is subject to the same contractual provisions, including arbitration contracts, to which the principal is bound. | An agent is subject to the same contractual provisions, including arbitration contracts, to which the principal is bound. | Is an agent subject to the same contractual provisions to which the principal is bound? |
| 15446 | Hutchison v. Seariver Mar., 22 So. 3d 989, 996 (La. Ct. App. 2009) | 12 | The ultimate purpose of a scheduling order is to hasten the matter to judgment by selecting deadlines for the parties to conclude all pretrial matters. | The ultimate purpose of a scheduling order is to hasten the matter to judgment by selecting deadlines for the parties to conclude all pretrial **10 matters. | What is the purpose of a scheduling order? |
| 15457 | Shelter Mut. Ins. Co. v. Vulgamott, 96 S.W.3d 96, 104 (Mo. Ct. App. 2003) | 17 | Once a plaintiff voluntarily dismisses a claim prior to the introduction of evidence, it is as if the suit were never brought. | Once a plaintiff voluntarily dismisses a claim prior to the introduction of evidence, it is as if the suit were never brought. | "Once a plaintiff files a voluntary dismissal of a claim, is it as if the claim had never been brought?" |
| 15461 | Amalgamated Transit Union Loc. 587 v. State, 142 Wash. 2d 183, 220, 11 P.3d 762, 787 (2000), as amended (Nov. 27, 2000), opinion corrected, 27 P.3d 608 (Wash. 2001) | 62 | "Tax" is a pecuniary burden laid upon individuals or property to support the government, and is a payment exacted by legislative authority; essential characteristics of a tax are that it is not a voluntary payment or donation, but an enforced contribution, exacted pursuant to legislative authority. | Tax is a pecuniary burden laid upon individuals or property to support the government, and is a payment exacted by legislative authority. Essential characteristics of a tax are that it is not a voluntary payment or donation, but an enforced contribution, exacted pursuant to legislative authority. | What are the essential characteristics of a tax? |
| 15463 | Okeson v. the City of Seattle, 150 Wash. 2d 540, 551 (Wash. 2003) | 13 | Generally speaking, taxes are imposed to raise money for the public treasury. | Generally speaking, taxes are imposed to raise money for the public treasury. | Are taxes generally imposed to raise money for the public treasury? |

| | | | | | |
|---|---|---|---|---|---|
| 15490 | Wright v. United States, 81 Fed. Cl. 369, 375 (2008) | 7 | A servicemember cannot invoke the constructive service doctrine if he voluntarily retires from the military. | A servicemember cannot invoke the constructive service doctrine if he voluntarily retires from the military. | Can a service member invoke the constructive service doctrine if he voluntarily retired from the military? |
| 15491 | Thomas v. United States, 42 Fed. Cl. 449, 453 (1998) | 5 | No one has a right to enlist or re-enlist in the armed forces unless specially granted such a right by statute or regulation. | No one has a right to enlist or re-enlist in the armed forces unless specially granted such a right by statute or regulation. | Does a servicemen have the right to enlist or reenlist in the armed forces? |
| 15508 | Bloomingdales, Inc. v. New York City Transit Auth., 13 N.Y.3d 61, 66, 915 N.E.2d 608, 610 (2009) | 2 | The essence of trespass to real property is injury to the right of possession, and such trespass may occur under the surface of the ground. | The essence of trespass to real property is injury to the right of possession, and such trespass may occur under the surface of the ground. | Can trespass occur under the surface of the ground? |
| 15532 | First National Acceptance Co. v. Bishop, 187 S.W.3d 710, 714-715 (Tex. App. 2006) | 8 | An agent may make a contract for an undisclosed principal in his own name, and the latter may sue or be sued on the contract. | An agent may make a contract for an undisclosed principal in his own name, and the *715 latter may sue or be sued on the contract. | Can an agent acting on behalf of undisclosed principal sue on his own name? |
| 15556 | Bank of New York Mellon v. Deane, 41 Misc. 3d 494, 502, 970 N.Y.S.2d 427, 433–34 (Sup. Ct. 2013) | 6 | Whatever the rights of a person to enforce an instrument by reason of delivery or assignment, a person is not a "holder" by reason of delivery or assignment alone, unless delivery is made of a bearer instrument. | Whatever the rights of a person to enforce an instrument by reason of delivery or assignment, a person is not a "holder" by reason of **434 delivery or assignment alone, unless delivery is made of a bearer instrument. | Who is a holder of an instrument? |
| 15607 | Thorpe v. Gelbwaks, 953 So. 2d 606, 609 (Fla. Dist. Ct. App. 2007) | 5 | A defendant contesting personal jurisdiction must file a motion to dismiss. | A defendant contesting personal jurisdiction must file a motion to dismiss. | Can a defendant contesting personal jurisdiction file a motion to dismiss? |
| 15608 | S. Serv. Co. v. Los Angeles Cnty., 15 Cal. 2d 1, 11, 97 P.2d 963, 969 (1940) | 12 | The general relationship of sovereign and taxpayer is not founded on nor does it create any contractual rights. | The general relationship of sovereign and taxpayer is not founded on nor does it create any contractual rights. | Is the general relationship of sovereign and taxpayer founded on any contractual rights? |
| 15609 | S. Serv. Co. v. Los Angeles Cnty., 15 Cal. 2d 1, 11, 97 P.2d 963, 969 (1940) | 12 | The general relationship of sovereign and taxpayer is not founded on nor does it create any contractual rights. | The general relationship of sovereign and taxpayer is not founded on nor does it create any contractual rights. | Does the general relationship of sovereign and taxpayer create any contractual rights? |
| 15630 | Steiner Transocean Ltd. v. Efremova, 109 So. 3d 871, 873 (Fla. Dist. Ct. App. 2013) | 3 | As a general rule, when considering a motion to dismiss, a trial court is limited to the allegations within the four corners of the complaint and any attachments. | As a general rule, when considering a motion to dismiss, a trial court is limited to the allegations within the four corners of the complaint and any attachments. | "When considering a motion to dismiss, is a trial court permitted to consider evidence outside the four corners of the complaint?" |
| 15631 | M.L. v. Eskenazi Health / Midtown Mental Health CMHC, 80 N.E.3d 219, 222 (Ind. App. 2017) | 2 | When a court is unable to render effective relief to a party, the case is deemed moot and usually dismissed. | When a court is unable to render effective relief to a party, the case is deemed moot and usually dismissed. | Will a case that is rendered moot be dismissed? |
| 15632 | Merhish v. H.A. Folsom Associates, 646 P.2d 731, 733 (Utah 1982) | 5 | Once a controversy has become moot, a trial court should enter an order of dismissal. | Once a controversy has become moot, a trial court should enter an order of dismissal. | Should a trial enter an order of dismissal once a controversy has become moot? |
| 15653 | State v. Langley, 232 S.W.3d 363, 366 (Tex. App. 2007) | 4 | If a trial court lacks jurisdiction over some claims but not others, the trial court should dismiss those claims over which it does not have subject matter jurisdiction but retain those claims over which it does. | If a trial court lacks jurisdiction over some claims but not others, the trial court should dismiss those claims over which it does not have subject matter jurisdiction but retain those claims over which it does. | Do the court retain the power to dismiss claims over which it does not have jurisdiction? |

| 15654 | St. Louis Police Leadership Organizing v. St. Louis Bd. of Police Comm'rs, 465 S.W.3d 501, 506 (Mo. Ct. App. 2015) | 3 | A moot case raises the issue of justiciability, and therefore courts may dismiss it sua sponte. | A moot case raises the issue of justiciability, and therefore courts may dismiss it sua sponte. | "Should a courts dismiss a moot suasponte,if it raises the issue of justiciability?" |
|---|---|---|---|---|---|
| 15675 | In re D.W, 202 N.C. App. 624, 627 (N.C. Ct. App. 2010) | 2 | Continuances are not favored and the party seeking a continuance has the burden of showing sufficient grounds for it. | Continuances are not favored and the party seeking a continuance has the burden of showing sufficient grounds for it. | Does a party seeking a continuance have the burden of showing sufficient grounds for granting the motion? |
| 15688 | People v. Willis, 79 A.D.3d 1739, 1740, 917 N.Y.S.2d 788, 790 (2010) | 3 | Because the question of whether a person was seeking sexual gratification is generally a subjective inquiry, it can be inferred from the conduct of the perpetrator. | Because the question of whether a person was seeking sexual gratification is generally a subjective inquiry, it can be inferred from the conduct of the perpetrator | Can sexual gratification be inferred from the defendants action? |
| 15692 | Baker v. Conoco Pipeline Co., 280 F. Supp. 2d 1285, 1300 (N.D.Okla.,2003) | 21 | The mere passage of time cannot be relied upon as a waiver of the right to arbitrate. | The mere passage of time cannot be relied upon as a waiver of the right to arbitrate. | Can passage of time be relied upon as a waiver of the right to arbitrate? |
| 15705 | Leabo v. Lininski, 2 Conn. App. 715, 720 (Conn. App. Ct. 1984) | 1 | A formalistic or highly technical construction of pleadings is contrary to a proper view of pleading requirements. | A formalistic or highly technical construction of pleadings is contrary to a proper view of pleading requirements. | Is a formalistic or highly technical construction of pleadings required? |
| 15722 | Bullock v. Texas Monthly Inc., 731 S.W.2d 160, 162 (Tex. App. 1987) | 1 | It is inherent in the exercise of the power to tax that a state be free to select the subjects of taxation and to grant exemptions. | It is inherent in the exercise of the power to tax that a state be free to select the subjects of taxation and to grant exemptions. | Is the government free to select the subjects of taxation? |
| 15731 | G.H. Skala Const. Co. v. NPW, 704 N.E.2d 1044, 1048 (Ind. Ct. App. 1999) | 9 | It is a party's responsibility to keep informed of hearing dates through an attorney or his own initiative. | It is a party's responsibility to keep informed of hearing dates through an attorney or his own initiative. | Is it a party's responsibility to be informed of hearing dates through an attorney or his own initiative? |
| 15746 | Carlson v. Hannah, 6 N.J. 202, 212, 78 A.2d 83, 88 (1951) | 2 | The power of an agent to bind his principal is limited to such acts as are within his actual or apparent authority. | The power of an agent to bind his principal is limited to such acts as are within his actual or apparent authority. | Is the power of an agent to bind is his principal limited? |
| 15778 | Ray v. Wilmington Coll., 106 Ohio App. 3d 707, 711 (1995) | 4 | Private schools have broad discretion in making rules and setting up procedures to enforce those rules. | Private schools have broad discretion in making rules and setting up procedures to enforce those rules. | Does a private school have broad discretion in making rules? |
| 15830 | Minnesota Humane Soc. v. Minnesota Federated Humane Societies, 611 N.W.2d 587, 590 (Minn. Ct. App. 2000) | 2 | Because a dismissal with prejudice is the most punitive sanction that can be imposed for failure to prosecute, it should be granted only under exceptional circumstances. | Because a dismissal with prejudice is the most punitive sanction that can be imposed for failure to prosecute, it should be granted only under exceptional circumstances. | Should a dismissal with prejudice be granted only under exceptional circumstances? |
| 15867 | Levin-Richmond Terminal Corp. v. Int'l Longshoremen's & Warehousemen's Union, Local 10, 751 F. Supp. 1373, 1377 (N.D. Cal. 1990) | 3 | Equitable estoppel principles are applicable to actions arising under federal law. | Equitable estoppel principles are applicable to actions arising under federal law. | Are estoppel principles applicable in actions arising under federal law? |
| 15887 | Johnson v. Structured Asset Servs., 148 S.W.3d 711, 722 (Tex. App. 2004) | 22 | A waiver does not need to be founded upon a new agreement, supported by consideration, or based upon estoppel. | A waiver does not need to be founded upon a new agreement, supported by consideration, or based upon estoppel. | Does waiver need to be founded on a new agreement? |

| | | | | | |
|---|---|---|---|---|---|
| 15894 | Braddock v. Zimmerman, 906 A.2d 776, 786 (Del. 2006) | 13 | A complaint that is dismissed without prejudice but with express leave to amend is nevertheless a dismissed complaint. | A complaint that is dismissed without prejudice but with express leave to amend is nevertheless a dismissed complaint. | "Is a complaint that is dismissed without prejudice with express leave to amend, a dismissed complaint?" |
| 15895 | Finlan v. Peavy, 205 S.W.3d 647, 651 (Tex. App. 2006) | 2 | A trial court has broad discretion in determining whether to dismiss a lawsuit. | A trial court has broad discretion in determining whether to dismiss a lawsuit. | Does a court have broad discretion in determining whether to dismiss a lawsuit? |
| 15927 | Independent Technical Services v. Campo's Exp., 812 A.2d 1238, 1240 (2002) | 3 | The trial court, as all judiciary, has a duty to encourage the timely resolution of all disputes. | The trial court, as all judiciary, has a duty to encourage the timely resolution of all disputes. | "Do courts, as all judiciary, have a duty to encourage the timely resolution of all disputes?" |
| 15957 | Wilmington Tr. Co. v. Clark, 289 Md. 313, 328, 424 A.2d 744, 754 (1981) | 15 | Under the English common law, suicide was a felony punishable by ignominious burial on the highway and forfeiture of the suicide's goods and chattels to the king. | Under the English common law, suicide was a felony punishable by ignominious burial on the highway and forfeiture of the suicide's goods and chattels to the king. | Is suicide a felony? |
| 15959 | Davis v. Kraff, 405 Ill. App. 3d 20, 28, 937 N.E.2d 306, 314 (2010) | 2 | Whether a motion in limine should be granted is subject to the trial court's discretion. | Whether a motion in limine should be granted is subject to the trial court's discretion. | Is a motion in limine granted subject to the discretion of the trial court and will not be reversed on appeal absent a clear showing of an abuse of that discretion? |
| 15984 | Lyerly v. Yeadon, 199 S.C. 363, 19 S.E.2d 648, 654 (1942) | 4 | An assignee steps into the shoes of its assignor; it acquires no greater rights than those held by the assignor at the time of the assignment. | An assignee steps into the shoes of its assignor; it acquires no greater rights than those held by the assignor at the time of the assignment. | Can an assignee acquire greater rights than which the assignor has? |
| 16017 | Brasher v. Craig, 483 S.W.3d 446, 450–51 (Mo. Ct. App. 2016) | 1 | The theories of boundary by acquiescence and adverse possession are separate and distinct legal doctrines. | The theories of boundary by acquiescence and adverse possession are separate *451 and distinct legal doctrines. | Are the doctrines of boundary by acquiescence and adverse possession one and the same? |
| 16023 | Riker v. Lemmon, 798 F.3d 546, 551 (7th Cir. 2015) | 3 | The Constitution protects a prisoner's fundamental right to marry; individuals do not lose this constitutional protection simply because they are imprisoned. | The Constitution protects a prisoner's fundamental right to marry; individuals do not lose this constitutional protection simply because they are imprisoned. | Do prisoners have a fundamental right to marry? |
| 16045 | City of San Antonio v. Pub. Util. Comm'n of Texas, 506 S.W.3d 630, 646 (Tex. App. 2016) | 7 | In general, a reviewing court must construe administrative rules, which have the same force as statutes, in the same manner as statutes. | In general, a reviewing court must construe administrative rules, which have the same force as statutes, in the same manner as statutes. | Are administrative rules construed like statutes? |
| 16059 | Wausau Ins. Co. v. All Chicagoland Moving & Storage Co., 333 Ill. App. 3d 1116, 1121, 777 N.E.2d 1062, 1068 (2002) | 5 | A prima facie case of bailment creates a rebuttable presumption that the defendant acted negligently. | A prima facie case of bailment creates a rebuttable presumption that the defendant acted negligently. | Is the presumption of negligence rebuttable in a bailment? |
| 16106 | Law v. S.C. Dep't of Corr., 368 S.C. 424, 437 (2006) | 19 | In an action for malicious prosecution, malice may be inferred from a lack of probable cause to institute the prosecution. | In an action for malicious prosecution, malice may be inferred from a lack of probable cause to institute the prosecution. | When is malice inferred in a malicious prosecution claim? |

| | | | | |
|---|---|---|---|---|
| 16109 | Merritt v. Mountain Laurel Chalets, 96 F. Supp. 3d 801, 821 (E.D. Tenn. 2015) | 46 | Whether a partnership exists in a given case depends upon applicable state law. | Whether a partnership exists in a given case depends upon applicable state law. | Is the existence of a partnership decided by state law? |
| 16116 | Schlader v. Interstate Power Co., 591 N.W.2d 10, 12 (Iowa 1999) | 7 | Strict liability does not arise merely because a public utility is involved. | Strict liability does not arise merely because a public utility is involved. | Does strict liability arise merely because a public utility is involved? |
| 16120 | Mahurin v. St. Luke's Hosp. of Kansas City, 809 S.W.2d 418, 422 (Mo. Ct. App. 1991) | 8 | An operation performed without a patient's consent is a battery or trespass. | An operation performed without a patient's consent is a battery or trespass. | Can an operation performed without a patient's consent be considered as a battery or trespass? |
| 16122 | City of Fairhope v. Raddcliffe, 48 Ala. App. 224, 227, 263 So. 2d 682, 684 (Civ. App. 1972) | 2 | To be a trespass there must be an act of direct force producing injury or damage. | To be a trespass there must be an act of direct force producing injury or damage. | Is direct force producing injury or damage required to constitute a trespass? |
| 16178 | Jackson v. Joyner, 309 S.W.3d 910, 915 (Tenn. Ct. App. 2009) | 3 | A motion in limine is not subject to the same safeguards as a motion for summary judgment or for partial summary judgment. | A motion in limine is not subject to the same safeguards as a motion for summary judgment or for partial summary judgment. | Is a motion in limine subject to the same safeguards as a motion for summary judgment or for partial summary judgment? |
| 16185 | Dolezal v. Bockes, 602 N.W.2d 348, 351 (Iowa 1999) | 4 | When a cause of action has accrued, the party owning the action has a vested interest in it. | When a cause of action has accrued, the party owning the action has a vested interest in it. | Does the party owning the action has a vested interest when a cause of action has accrued? |
| 16189 | Shuck v. Bank of Am., N.A., 862 So. 2d 20, 24 (Fla. Dist. Ct. App. 2003) | 2 | All elements of a cause of action must exist and be complete before an action may properly be commenced. | All elements of a cause of action must exist and be complete before an action may properly be commenced. | Should a cause of action exist and be completed before an action can be commenced? |
| 16190 | In re Mueller, 19 Misc. 3d 536, 540, 853 N.Y.S.2d 245, 248 (Sur. 2008) | 2 | It is the character of the claim which governs the accrual time for a cause of action. | It is the character of the claim which governs the accrual time for a cause of action. | Is it the character of the claim which governs the accrual time for a cause of action? |
| 16191 | Spicewood Summit Office Condominiums Ass'n v. Am. First Lloyd's Ins. Co., 287 S.W.3d 461, 465 (Tex. App. 2009) | 3 | A party is unable to bring suit until the party's cause of action has accrued. | A party is unable to bring suit until the party's cause of action has accrued. | Is a party unable to bring suit until the party's cause of action has accrued? |
| 16200 | Access Telecom v. MCI Telecommunications Corp., 197 F.3d 694, 714 (5th Cir. 1999) | 38 | Recognizing the difficulty of interpreting foreign law, courts may defer to foreign government interpretations. | Recognizing the difficulty of interpreting foreign law, courts may defer to foreign government interpretations. | Can courts defer to a foreign government interpretation? |
| 16213 | PECO Energy Co. v. Twp. of Upper Dublin, 922 A.2d 996, 1004 (Pa. Commw. Ct. 2007) | 7 | Public utility tariffs have the force and effect of law, and are binding on the customer as well as the utility. | Public utility tariffs have the force and effect of law, and are binding on the customer as well as the utility. | Are public utility tariffs binding on the customer and the utility? |
| 16219 | Adams v. Suozzi, 433 F.3d 220, 226 (2d Cir. 2005) | 7 | If the contract embodying a purported arbitration agreement never existed, the arbitration agreement itself does not exist. | If the contract embodying a purported arbitration agreement never existed, the arbitration agreement itself does not exist. | How do courts construe an arbitration agreement if the contract embodying the purported arbitration agreement never existed? |
| 16221 | Sapiro v. VeriSign, 310 F. Supp. 2d 208, 213–14 (D.D.C. 2004) | 10 | Mutual agreements to arbitrate are independently sufficient forms of consideration. | Mutual agreements to arbitrate are independently sufficient forms of consideration. | Are mutual agreements to arbitrate independently sufficient forms of consideration? |

| | | | | | |
|---|---|---|---|---|---|
| 16238 | Compton v. Ubilluz, 353 Ill. App. 3d 863, 871, 819 N.E.2d 767, 776 (2004) | 17 | To prevent confusion and misunderstanding during trial, both the motion in limine and the resulting order should be in writing. | To prevent confusion and misunderstanding during trial, both the motion in limine and the resulting order should be in writing. | Should both the motion in limine and the resulting order be in writing? |
| 16243 | Foster v. Shubert Holding Co., 316 Mass. 470, 474 (1944) | 7 | Conclusions of fact unless they are necessary inferences from the particular facts alleged are not admitted by a demurrer. | Conclusions of fact unless they are necessary inferences from the particular facts alleged are not admitted by a demurrer. | Are necessary inferences from facts admitted by a demurrer? |
| 16245 | Petition of New England Tel. & Tel. Co., 115 Vt. 494, 510 (1949) | 21 | The function of a public service commission is that of control and not of management, and regulation should not obtrude itself into the place of management. | The function of a public service commission is that of control and not of management, and regulation should not obtrude itself into the place of management. | Is management the function of the Public Service Commission? |
| 16284 | S. Mut. Church Ins. Co. v. ARS Mech., 306 Ga. App. 748, 751 (2010) | 3 | The party seeking to recover payment bears the burden of showing that the voluntary-payment doctrine does not apply. | The party seeking to recover payment bears the burden of showing that the voluntary payment doctrine does not apply. | "Who bears the burden of showing the inapplicability of the voluntary payment doctrine, under law?" |
| 16287 | Jose v. Lyman, 316 Mass. 271, 282 (1944) | 18 | Laches is not to be imputed to a minor and no exception is made of infants under guardianship. | Laches is not to be imputed to a minor, and no exception is made of infants under guardianship. | Is laches to be imputed to a minor and no exception is made of infants under guardianship? |
| 16296 | Fruehauf Trailer Co. v. City of Detroit, 325 Mich. 407, 418 (1949) | 8 | A litigant may not sue first and obtain his right of action afterwards. | A litigant may **904 not sue first and obtain his right of action afterwards.' | Can one sue first and obtain his right of action afterwards? |
| 16337 | Bedgood v. Stevens, 200 Ga. 244, 246, 36 S.E.2d 793, 794 (1946) | 2 | A motion to dismiss a pending cause should be construed as a motion to strike the case from the docket. | A motion to dismiss a pending cause should be construed as a motion to strike the case from the docket. | Can a motion to dismiss construed as a motion to strike a case from a docket? |
| 16376 | Reid v. Doe Run Res. Corp.,701 F.3d 840, 846 (8th Cir. 2012) | 11 | A nonsignatory attempting to bind a signatory to an arbitration agreement is distinct from a signatory attempting to bind a nonsignatory. | A nonsignatory attempting to bind a signatory to an arbitration agreement is distinct from a signatory attempting to bind a nonsignatory. | Is a nonsignatory attempting to bind a signatory to an arbitration agreement distinct from a signatory attempting to bind a nonsignatory? |
| 16379 | Welder v. Green, 985 S.W.2d 170, 175 (Tex. App. 1998) | 13 | Managing partners owe their partners the highest fiduciary duty recognized in the law. | Managing partners owe their partners the highest fiduciary duty recognized in the law. | Do the managing partners owe their partners the highest fiduciary duty? |
| 16383 | Wachovia SBA Lending, Inc. v. Kraft, 165 Wash. 2d 481, 492, 200 P.3d 683, 688 (2009) | 9 | A voluntary dismissal leaves the parties as if the action had never been brought. | A voluntary dismissal leaves the parties as if the action had never been brought. | Does a voluntary dismissal leave the parties as if the action had never been brought? |
| 16395 | Faber v. Loveless, 88 NW 2d 112, 116 (Iowa: Supreme Court 1958) | 10 | While the name given a tax by the legislature is not determinative, such legislative designation is an important factor in determining the character of the tax. | While the name given a tax by the legislature is not determinative, such legislative designation is an important factor in determining the character of the tax | Is the legislative designation of a particular tax determinative as to its nature? |
| 16400 | In re Nantucket Island Associates Ltd. Partnership Unitholders Litigation, 810 A.2d 351, 361 (Del. Ch. 2002) | 5 | When a limited partnership agreement is ambiguous, the interpretative principle of construction against the drafter tends to be implicated. | When a limited partnership agreement is ambiguous, the interpretative principle of construction against the drafter tends to be implicated. | How will an ambiguous limited partnership agreement be construed? |
| 16401 | Carroll v. Caldwell, 12 Ill. 2d 487, 494, 147 N.E.2d 69, 73 (1957) | 8 | Statements by way of general conclusions of fraud are not sufficient in a pleading. | Statements by way of general conclusions of fraud are not sufficient in a pleading. | Are statements by way of general conclusions of fraud sufficient in a pleading? |

| 16403 | Makuakane v. Tanigawa, 50 Haw. 493, 495 (1968) | 6 | After a pre-trial conference, a trial judge should not commence with the trial until a pre-trial order has been signed. | After a pre-trial conference, a trial judge should not commence with the trial until a pre-trial order has been signed. | "After a pre-trial conference, should a trial judge commence with the trial until a pre-trial order has been signed?" |
|---|---|---|---|---|---|
| 16410 | Perron v. ITT Wire & Cable Div., 103 R.I. 336, 343 (1968) | 5 | The Workmen's Compensation Act is social legislation remedial in nature. | The workmen's compensation act is social legislation remedial in nature. | "Is the Workmens Compensation Act a social legislation, remedial in nature?" |
| 16503 | Hefty v. Strickhouser, 2008 WI 96, ¶ 76, 312 Wis. 2d 530, 564, 752 N.W.2d 820, 836 | 19 | Litigants are expected to follow circuit court scheduling orders. | Litigants are expected to follow circuit court scheduling orders. | Are litigants expected to follow circuit court scheduling orders? |
| 16528 | Sciscoe v. Enbridge Gathering (N. Texas), 519 S.W.3d 171, 183 (Tex. App. 2015) | 20 | A trespass does not have to be committed in person but may be caused by allowing or causing something to cross the boundary of the property in question. | A trespass does not have to be committed in person but may be caused by allowing or causing something to cross the boundary of the property in question. | Does a trespass need to be committed in person? |
| 16541 | Teselle v. McLoughlin, 173 Cal. App. 4th 156, 173 (2009) | 13 | A complaint measures the materiality of the facts asserted as a cause of action; it ordinarily does not assert an evidentiary fact. | A complaint measures the materiality of the facts asserted as a cause of action. It ordinarily does not assert an evidentiary fact. | Does a complaint measure the materiality of the facts asserted as a cause of action? |
| 16554 | Summit Claims Mgmt. v. Lawyers Exp. Trucking, 913 So. 2d 1182, 1184 (Fla. Dist. Ct. App. 2005) | 4 | Workers' compensation is a branch of law which is entirely statutory in origin. | Workers' compensation is a branch of law which is entirely statutory in origin. | Is workers compensation a branch of law which is entirely statutory in origin? |
| 16587 | M.L. v. Eskenazi Health / Midtown Mental Health CMHC, 80 N.E.3d 219, 222 (Ind. Ct. App. 2017) | 2 | When a court is unable to render effective relief to a party, the case is deemed moot and usually dismissed. | When a court is unable to render effective relief to a party, the case is deemed moot and usually dismissed. | Should moot cases be dismissed? |
| 16588 | Sadler v. Creekmur, 354 Ill. App. 3d 1029, 1040 (2004) | 14 | An action will be dismissed as moot once the plaintiff has secured what was originally sought. | An action will be dismissed as moot once the plaintiff has secured what was originally sought. | Will an action be dismissed as moot once the plaintiff has secured what was originally sought? |
| 16606 | Tomlinson-McKenzie v. Prince, 718 So. 2d 394, 396 (Fla. Dist. Ct. App. 1998) | 5 | Excluding the testimony of a witness is a harsh remedy which should be invoked sparingly. | Excluding the testimony of a witness is a harsh remedy which should be invoked sparingly. | Is excluding the testimony of a witness a harsh remedy which should be sparingly invoked? |
| 16608 | Flores v. Cooper Tire & Rubber Co., 218 Ariz. 52, 59 (Ct. App. 2008) | 12 | The decision to dismiss a case based on mootness is largely discretionary. | The decision to dismiss a case based on mootness is largely discretionary. | "Is the decision to dismiss a case based on mootness, largely discretionary?" |
| 16618 | Sadler v. Creekmur, 354 Ill. App. 3d 1029, 1040 (2004) | 14 | An action will be dismissed as moot once the plaintiff has secured what was originally sought. | An action will be dismissed as moot once the plaintiff has secured what was originally sought. | Will actions be dismissed as moot once plaintiffs have secured what was originally sought? |
| 16621 | Ronwin v. Piper, Jaffray & Hopwood, 113 Ill. App. 3d 687, 693 (1983) | 6 | A court has inherent power to protect itself from frivolous and vexatious litigation. | A court has inherent power to protect itself from frivolous and vexatious litigation. | Does a court have inherent power to protect itself from frivolous and vexatious litigation? |
| 16680 | State ex rel. Nixon v. Summit Inv. Co., 186 S.W.3d 428, 434 (Mo. Ct. App. 2006) | 12 | Although delay in prosecuting an action does not, of itself, justify dismissal for failure to prosecute, it is a factor to be considered. | Although delay in prosecuting an action does not, of itself, justify dismissal for failure to prosecute, it is a factor to be considered. | "Does a delay in prosecuting an action, justify dismissal for failure to prosecute?" |

| 16694 | Stoltz v. Aurora Loan Servs., 194 So. 3d 1097, 1098 (Fla. Dist. Ct. App. 2016) | 2 | An indorsement in blank is sufficient to prove that the person in possession of the note is its holder. | An indorsement in blank is sufficient to prove that the person in possession of the note is its holder. | What is sufficient to prove that the person in possession of the note is its holder? |
|---|---|---|---|---|---|
| 16735 | Wallisville Corp. v. McGuinness, 154 So. 3d 501, 503 (Fla. Dist. App. 2015) | 1 | An order dismissing a complaint for failure to state a cause of action is reviewed de novo. | An order dismissing a complaint for failure to state a cause of action is reviewed de novo. | "Should the party moving for dismissal for failure to state a cause of action admit all well pleaded facts as true, as well as reasonable inferences that can arise from those facts?" |
| 16736 | Ellis v. Harland Bartholomew & Assocs., 1 Haw. App. 420, 427, 620 P.2d 744, 749 (1980) | 4 | Where there has been a clear record of delay by the plaintiff, dismissal is properly granted. | Where there has been a clear record of delay by the plaintiff, dismissal is properly granted. | Is a dismissal properly granted where there has been a clear record of delay by the plaintiff? |
| 16746 | Henson v. Bank of Am., 935 F. Supp. 2d 1128, 1133 (D. Colo. 2013) | 1 | Under Colorado law, a promissory note is a negotiable instrument that is freely assignable. | Under Colorado law, a promissory note is a negotiable instrument that is freely assignable. | Can a negotiable instrument which is freely assignable be called a promissory note? |
| 16766 | City of Waco v. Texas Coffin Co., 472 S.W.2d 800, 804 (Tex. Civ. App. 1971) | 3 | A case should not be dismissed on the ground of abandonment unless such abandonment clearly appears. | A case should not be dismissed on the ground of abandonment unless such abandonment clearly appears. | Should a case be dismissed on the ground of abandonment unless such abandonment clearly appears? |
| 16797 | Frazier v. Progressive Companies, 27 S.W.3d 592, 594 (Tex. App. 2000) | 2 | The general rule is that a dismissal for want of prosecution is a dismissal without prejudice. | The general rule is that a dismissal for want of prosecution is a dismissal without prejudice. | Is the general rule that a dismissal for want of prosecution is a dismissal without prejudice? |
| 16799 | Osborne v. Osborne, 2 Conn. App. 635, 638 (1984) | 2 | An order of nonsuit terminates an action when it is issued and no further proceedings are necessary. | An order of nonsuit terminates an action when it is issued and no further proceedings are necessary. | Does an order of nonsuit terminate an action when it is issued and no further proceedings are necessary? |
| 16806 | Townsend v. Univ. Hosp.-Univ. of Colorado, 83 S.W.3d 913, 921 (Tex. App. 2002) | 21 | An agency relationship may be found from underlying facts or direct and circumstantial evidence showing the relationship of the parties. | An agency relationship may be found from underlying facts or direct and circumstantial evidence showing the relationship of the parties. | Can agency be proven by circumstantial evidence? |
| 16807 | Whitley v. Taylor Bean & Whitacker Mortg. Corp., 607 F. Supp. 2d 885, 895 (N.D. Ill. 2009) | 11 | The parties must consent to a principal-agent relationship, which may be created by conduct or contract. | The parties must consent to a principal-agent relationship, which may be created by conduct or contract. | Must the parties consent to a principal-agent relationship? |
| 16820 | Ervin v. City of Pittsburgh, 339 Pa. 241, 250, 14 A.2d 297, 300 (1940) | 2 | The doctrine of "estoppel" is founded on considerations of sound public policy. | The doctrine of estoppel is founded on considerations of sound public policy. | Is the doctrine of estoppel founded on considerations of sound public policy? |
| 16829 | Munster v. Bill Watson Ford, 970 So. 2d 36, 40 (2007) | 5 | A dismissal with prejudice is a severe penalty that should be reserved only for extreme circumstances. | A dismissal with prejudice is a severe penalty that should be reserved only for extreme circumstances. | Is a dismissal with prejudice a severe penalty that should be reserved only for extreme circumstances? |
| 16830 | Couchman v. Cardona, 471 S.W.3d 20, 25 (Tex. App. 2015) | 12 | A motion to dismiss with prejudice survives a nonsuit filed by a plaintiff. | A motion to dismiss with prejudice survives a nonsuit filed by a plaintiff. | Does a motion to dismiss with prejudice survive a nonsuit filed by a plaintiff? |
| 16863 | Dyno Nobel v. Dir. of Revenue, 75 S.W.3d 240, 243 (Mo. 2002) | 5 | Use tax and sales tax are designed to complement one another. | Use tax and sales tax are designed to complement one another. | Are use tax and sales tax designed to complement one another? |

| 16868 | AeroGlobal Capital Mgmt. v. Cirrus Indus., 871 A.2d 428, 444 (Del. 2005) | 23 | The facts relied upon to prove waiver must be unequivocal. | The facts relied upon to prove waiver must be unequivocal. | Must the facts relied upon to prove waiver be unequivocal? |
|---|---|---|---|---|---|
| 16898 | Glazebrook v. Bd. of Sup'rs of Spotsylvania Cty., 266 Va. 550, 554 (2003) | 1 | A demurrer tests the legal sufficiency of facts alleged in pleadings, not the strength of proof. | A demurrer tests the legal sufficiency of facts alleged in pleadings, not the strength of proof. | Does a demurrer test the legal sufficiency of a pleading? |
| 16964 | Casstevens v. Smith, 269 S.W.3d 222, 228, (Tex.App.-Texarkana, 2008) | 7 | The right of equitable subrogation arises when one pays the debt of another for which the other is primarily liable. | The right of equitable subrogation arises when one pays the debt of another for which the other is primarily liable. | Is the purpose of equitable subrogation to prevent the unjust enrichment of the debtor who was primarily liable? |
| 16989 | Roark v. Macoupin Creek Drainage Dist., 316 Ill. App. 3d 835, 848-849 (Ill.App. 4 Dist., 2000) | 25 | A plaintiff is not required to plead evidence in his complaint but is only required to allege ultimate facts. | A plaintiff is not required to plead evidence in his complaint but is *849 only required to allege ultimate facts. | Is a plaintiff only required to allege ultimate facts in his complaint? |
| 16991 | Parker v. Standard Oil Co. of Kan., 250 S.W.2d 671, 680, (Tex.Civ.App.-Galveston, 1952) | 8 | A mineral lease is the conveyance of a determinable fee interest in land. | A mineral lease is the conveyance of a determinable fee interest in land. | Is a mineral lease the conveyance of a determinable fee interest in land? |
| 16997 | FV-I for Morgan Stanley Mortg. Capital Holdings v. Kallevig, 392 P.3d 1248, 1265 (Kan. 2017) | 36 | The proper remedy for a lack of standing is dismissal without prejudice. | The proper remedy for a lack of standing is dismissal without prejudice. | Is the proper remedy for a lack of standing dismissal without prejudice? |
| 17018 | In re Kizzee-Jordan, 626 F.3d 239, 245 (5th Cir. 2010) | 5 | Texas recognizes three types of subrogation: equitable, contractual, and statutory. | Texas recognizes three types of subrogation: equitable, contractual, and statutory. | "Are the three types of subrogation contractual, statutory, and equitable?" |
| 17019 | Scottsdale Ins. Co. v. Addison Ins. Co., 448 S.W.3d 818, 831, (Mo., 2014) | 24 | Determination of whether a party has a right to equitable subrogation depends on the facts of the case. | Determination of whether a party has a right to equitable subrogation depends on the facts of the case. | Does the application of equitable subrogation always depend on the facts of a particular case? |
| 17036 | Guthrie v. Nat'l Advert. Co., 556 N.E.2d 337, 338 (Ind. App. 1990) | 3 | Notice is actual where the purchaser is aware of the adverse claim or title or has such information as would lead to knowledge. | Notice is actual where the purchaser is aware of the adverse claim or title or has such information as would lead to knowledge. | When can a notice be inferred as an actual notice? |
| 17041 | Tyson v. Masten Lumber & Supply, 44 Md. App. 293, 302, (Md.App., 1979) | 2 | Actual knowledge may supplant formal statutory notification. | Actual knowledge may supplant formal statutory notification. | Will actual knowledge supplant a formal statutory notification? |
| 17058 | Lindsey v. Lindsey, 392 P.3d 968, 975 (Utah App., 2017) | 11 | Married persons have a right to separately own and enjoy property, and that right does not dissipate upon divorce. | Married persons have a right to separately own and enjoy property, and that right does not dissipate upon divorce. | Can a married person own separate property during marriage? |
| 17065 | Rader v. ShareBuilder Corp., 772 F. Supp. 2d 599, 606, (D.Del., 2011) | 10 | Blackmail and extortion are, in almost all jurisdictions, crimes, not civil causes of action. | Blackmail and extortion are, in almost all jurisdictions, crimes, not civil causes of action. | Can extortion and blackmail create civil causes of action? |
| 17078 | Aguilar v. Trujillo, 162 S.W.3d 839, 851, (Tex.App.-El Paso, 2005) | 19 | A trespass can be either by entry of a person on another's land or by causing or permitting a thing to cross the boundary of the premises. | A trespass can be either by entry of a person on another's land or by causing or permitting a thing to cross the boundary of the premises. | Are actual damages an element of the tort of trespass? |
| 17118 | State v. Myers, 171 W. Va. 277, 280 (1982) | 7 | In any case of homicide, there must be proof of the identity of the deceased and the causation of death. | In any case of homicide there must be proof of the identity of the deceased and the causation of death. | Is proof of causation of death required in a case of homicide? |

| 17138 | Pawley v. State, 217 So. 3d 128, 130 (Fla. Dist. Ct. App. 2017) | 3 | No party, whether represented or pro se, has the "right" to file frivolous claims. | No party, whether represented or pro se, has the "right" to file frivolous claims. | Does a party have the right to file a frivolous claim? |
|---|---|---|---|---|---|
| 17145 | Hillme v. Chastain, 75 S.W.3d 315, 318, (Mo. Ct. App. 2002) | 10 | Partnership property that is held only in an individual name does not affect the partnership status. | Partnership property that is held only in an individual name does not affect the partnership status. | Does it affect the partnership status if the partnership property is held only in the name of one partner? |
| 17152 | Stone v. Washington Reg'l Med. Ctr., 515 S.W.3d 104, 110, (Ark., 2017) | 17 | When a charitable trust is created, legal title is passed to the trustee to hold it for the benefit of a charitable purpose. | When a charitable trust is created, legal title is passed to the trustee to hold it for the benefit of a charitable purpose. | What happens when a charitable trust is created? |
| 17168 | Davis v. May, 135 S.W.3d 747, 749, (Tex.App.-San Antonio, 2003) | 1 | The ultimate question of whether the facts constitute a taking is a question of law, not a question of fact. | The ultimate question of whether the facts constitute a taking is a question of law, not a question of fact. | Is the ultimate question of whether the facts constitute a taking a question of fact? |
| 17170 | Sorenson v. Bowen, 199 Or. 607, 611 (1953) | 8 | A general averment of indebtedness without any statement of facts supporting it is a mere "conclusion of law." | A general averment of indebtedness without any statement of facts supporting it is a mere conclusion of law. | Is an allegation of indebtedness a conclusion of law? |
| 17176 | Matter of Estate of Musgrove, 144 Ariz. 168, 169, (Ariz.App. Div. 1, 1985) | 2 | The general rule is that a cause of action accrues whenever one person may sue another. | The general rule is that a cause of action accrues whenever one person may sue another. | Does cause of action arise when party has a right to file suit? |
| 17200 | Orgain v. Butler, 478 S.W.2d 610, 613, (Tex.Civ.App.-Austin 1972) | 8 | For a variance between pleadings and proof to be fatal, the variance must be substantial, misleading, and a prejudicial departure. | For a variance between pleadings and proof to be fatal, the variance must be substantial, misleading, and a prejudicial departure. | When will a variance between the pleading and the proof of claim be fatal? |
| 17202 | Jackson v. Joyner, 309 S.W.3d 910, 915 (Tenn.Ct.App., 2009) | 3 | A motion in limine is not subject to the same safeguards as a motion for summary judgment or for partial summary judgment. | A motion in limine is not subject to the same safeguards as a motion for summary judgment or for partial summary judgment. | Is a motion in limine subject to the same safeguards as a motion for summary judgment? |
| 17210 | Burshan v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, 805 So. 2d 835, 846, (Fla.App. 4 Dist., 2001) | 26 | Trespass to personal property is the intentional use of, or interference with, a chattel which is in the possession of another, without justification. | Trespass to personal property is the intentional use of, or interference with, a chattel which is in the possession of another, without justification. | Can a bank account be regarded as chattel and the subject of a trespass? |
| 17226 | Pasternak v. Robin, 511 P.2d 529, 530-531 (Colo.App., 1973) | 3 | Mere delay, short of the running of the applicable statute of limitations, does not in and of itself constitute "laches." | Mere delay, short of the running of the applicable statute of limitations, does not in and of itself *531 constitute laches. | "Does a mere delay in and of itself constitute ""laches""?" |
| 17234 | Chase Manhattan Mortg. Corp. v. Cook, 141 S.W.3d 709, 714, (Tex.App.-Eastland, 2004) | 9 | A party claiming subrogation must plead and prove the right to subrogation. | A party claiming subrogation must plead and prove the right to subrogation. | Should a party claiming subrogation plead and prove the right to subrogation? |
| 17235 | Haynes v. Williams Fence & Aluminum, 805 So. 2d 215, 228 (La. App. 2001) | 7 | The Workers' Compensation Act is intended to be remedial and not superfluously litigious in nature. | The Workers' Compensation Act is intended to be remedial and not superfluously litigious in nature. | Is the workers compensation act remedial in nature? |
| 17271 | Bibb v. State, 352 So. 2d 840, 841 (Ala. Crim. App. 1977) | 1 | Intent to steal or commit a felony is an essential part of the gravamen of the crime of burglary. | Intent to steal or commit a felony is an essential part of the gravamen of the crime of burglary. | Is intent an essential part of burglary? |

| | | | | | |
|---|---|---|---|---|---|
| 17289 | Priest v. McConnell, 219 Neb. 328, 331 (1985) | 1 | Pretrial conferences are conducted to simplify and narrow issues of case and to avoid traps and surprises. | Pretrial conferences are conducted in order to simplify and narrow the issues of the case and to avoid traps and surprises. | Why are pretrial conferences conducted? |
| 17294 | American Life Acc. Ins. Co. v. Com, 173 S.W.3d 910, 913 (Ky. Ct. App. 2005) | 1 | The character of a tax is determined by its operation, effect, and incidents, not by the label the legislature appends in the statute. | The character of a tax is determined by its operation, effect, and incidents, not by the label the legislature appends in the statute. | How is the character of a tax determined? |
| 17307 | Hochstedler v. St. Joseph Cty. Solid Waste Mgmt. Dist., 770 N.E.2d 910, 915 (Ind. Ct. App. 2002) | 6 | Generally, a tax is an enforced contribution to provide for the support of government, whereas a fee is a charge for a particular benefit to the payer. | Generally, a tax is an enforced contribution to provide for the support of government, whereas a fee is a charge for a particular benefit to the payer. | Can taxation be considered as optional? |
| 17308 | Austin v. Center Point Energy Arkla, 365 Ark. 138, 147 (Ark. 2006) | 7 | A "tax" is a burden imposed by a government upon a taxpayer for the use and benefit of that government. | A "tax" is a "burden imposed by a government upon a taxpayer for the use and benefit of that government." | "Is ""tax"" imposed for the use and benefit of the government?" |
| 17324 | In re Bakri's Estate, 109 N.Y.S.2d 654, 655 (1951) | 1 | A check is a mere order upon a bank to pay from the drawer's account, and, until presented and paid, is revocable by drawer. | A check is a mere order upon a bank to pay from the drawer's account, and, until presented and paid, is revocable by the drawer. | When can a drawer revoke a check? |
| 17392 | U.S. v. Ganim, 510 F.3d 134, 256 F. App'x 399, 148 (2d Cir. 2007) | 9 | Like extortion, the crime of bribery requires a quid pro quo. | Like extortion, the crime of bribery requires a quid pro quo. | Does extortion require a quid pro quo? |
| 17406 | Roark v. Macoupin Creek Drainage District, 316 Ill. App. 3d 835, 848-49 (Ill. App. Ct. 2000) | 25 | A plaintiff is not required to plead evidence in his complaint but is only required to allege ultimate facts. | A plaintiff is not required to plead evidence in his complaint but is *849 only required to allege ultimate facts. | Is a plaintiff required to plead evidence in his complaint? |
| 17417 | Deputy v. Lehman Bros., Inc., 374 F. Supp. 2d 695, 27 (E.D. Wis. 2005) | 24 | A court may dismiss a case if all of the issues raised before it are arbitrable. | A court may dismiss a case if all of the issues raised before it are arbitrable. | Can a court dismiss a case if all the issues raised before it are arbitrable? |
| 17441 | 7 Utes Corp. v. District Court in & for the Eighth Judicial District, 702 P.2d 262, 266 (Colo. 1985) | 7 | In determining the proper venue for an action, the substance rather than the form of the action controls. | In determining the proper venue for an action, the substance rather than the form of the action controls. | Is it the substance of the action or the form of the action which controls the venue of the case? |
| 17451 | Mistich v. Com, 863 A.2d 116, 119 (Pa. Cmmw. Ct. 2004) | 1 | Generally, a case will be dismissed as moot if there exists no actual case or controversy. | Generally, a case will be dismissed as moot if there exists no actual case or controversy. | Can a case be dismissed as moot if there exists no actual case or controversy? |
| 17460 | Arrow Marble, LLC v. Estate of Killion, 441 S.W.3d 702, 707 (Tex. App. 2014) | 9 | A dismissal for failure to appear at trial or for want of prosecution should be without prejudice. | A dismissal for failure to appear at trial or for want of prosecution should be without prejudice. | Is a dismissal for failure to prosecute to be without prejudice? |
| 17499 | State v. Cole Oil and Tire, 822 So. 2d 229, 232 (La. Ct. App. 2002) | 6 | Abandonment statutes are intended to dismiss those actions in which a plaintiff's inaction has clearly demonstrated his abandonment of the case, and not to dismiss those cases in which a plaintiff has clearly demonstrated that he does not intend to abandon the action. | Abandonment statutes are intended to dismiss those actions in which a plaintiff's inaction has clearly demonstrated his abandonment of the case and not to dismiss those cases in which a plaintiff has clearly demonstrated that he does not intend to abandon the action. | What is an abandonment statute intended to do? |

| 17514 | Theos & Sons, Inc. v. Mack Trucks, Inc., 1999 Mass. App. Div. 14 (Dist. Ct. 1999), aff'd, 431 Mass. 736, 729 N.E.2d 1113 (2000) | 9 | The essence of the principal-agent relationship is the right of power or control by the alleged principal over the conduct of the alleged agent. | The essence of the principal-agent relationship is the right of power or control by the alleged principal over the conduct of the alleged agent. | Does an agent serve under the control and supervision of his principal? |
|---|---|---|---|---|---|
| 17590 | Missouri Pac. R. Co. v. American Statesman, 552 S.W.2d 99, 105 (Tex. 1977) | 12 | The function of waiver or estoppel is to preserve rights, not to create independent causes of action. | The function of waiver or estoppel is to preserve rights, not to create independent causes of action. | Is the function of estoppel to preserve rights? |
| 17600 | Hodge v. Johnson, 852 N.E.2d 650, 652 (Ind. App. 2006) | 8 | An open and voluntary renunciation by a plaintiff of his suit, a "retraxit," operates as a dismissal with prejudice. | An open and voluntary renunciation by a plaintiff of his suit, a retraxit, operates as a dismissal with prejudice. | Does a dismissal with prejudice operate as a retraxit under law? |
| 17604 | Whitley v. Taylor Bean & Whitacker Mortg. Corp., 607 F. Supp. 2d 885, 895 (N.D. Ill. 2009) | 11 | The parties must consent to a principal-agent relationship, which may be created by conduct or contract. | The parties must consent to a principal-agent relationship, which may be created by conduct or contract. | Can the principal-agent relationship be created by contract? |
| 17620 | Hill v. Bartlette, 181 S.W.3d 541, 546 (Tex. App. 2005) | 4 | Equitable estoppel arises only in situations where one party has refused to do what he or she has a duty to do. | Equitable estoppel arises only in situations where one party has refused to do what he or she has a duty to do. | Can estoppel arise only when a party has refused to do that which he or she has a duty to do? |
| 17636 | Conseco Finance Serv. Corp. v. Wilder, 47 S.W.3d 335, 344 (Ky. Ct. App. 2001) | 16 | A waiver may be either express or implied, although waiver will not be inferred lightly. | A waiver may be either express or implied, although waiver will not be inferred lightly. | May a waiver either be express or implied? |
| 17677 | Serv. Am. Corp. v. Cnty. of San Diego, 15 Cal. App. 4th 1232, 1235, 19 Cal. Rptr. 2d 165, 167 (1993) | 1 | Property owned by governmental entities is generally exempt from taxation. | Property owned by governmental entities is generally exempt from taxation. | Are properties owned by governmental entities exempt from taxation? |
| 17678 | Easley v. City of Lincoln, 213 Neb. 450, 330 N.W.2d 130, 452 (Neb. 1983) | 1 | Ordinarily, public property is exempt from general purpose taxation. | Ordinarily, public property is exempt from general purpose taxation. | Is a public property exempt from the general taxation purposes? |
| 17702 | Arrow Marble, LLC v. Estate of Killion, 441 S.W.3d 702, 707 (Tex. App. 2014) | 9 | A dismissal for failure to appear at trial or for want of prosecution should be without prejudice. | A dismissal for failure to appear at trial or for want of prosecution should be without prejudice. | Should a dismissal for failure to prosecute be without prejudice? |
| 17706 | Argonaut Ins. Co. v. C S Bank, 140 Ga. App. 807, 232 S.E.2d 135, 811 (Ga. Ct. App. 1976) | 3 | Subrogation is not founded upon contract, express or implied, but upon principles of equity and justice. | Subrogation is not founded upon contract, express or implied, but upon principles of equity and justice. | Is the right of subrogation founded upon contract? |
| 17708 | Helmerich & Payne Int'l Drilling Co. v. Bolivarian Republic of Venezuela, 971 F. Supp. 2d 49, 62 (D.C. 2013) | 15 | The act of state doctrine goes to the merits, and is not a jurisdictional defense. | The act of state doctrine goes to the merits, and is not a jurisdictional defense. | Does the act of state doctrine go to the merits and is not a jurisdictional defense? |
| 17719 | Director of Ins. v. a a Midwest Rebuilders, 383 Ill. App. 3d 721, 891 N.E.2d 500, 722 (Ill. App. Ct. 2008) | 2 | An order of dismissal may be final even though it is not with prejudice. | An order of dismissal may be final even though it is not with prejudice. | Can an order of dismissal be final even though it is not with prejudice? |
| 17727 | Dakota Provisions, LLC v. Hillshire Brands Co., 226 F. Supp. 3d 945, 952 (D.S.D. 2016) | 8 | Agency is a creature of state law and, in South Dakota, is governed by both statutory and common law. | Agency is a creature of state law and, in South Dakota, is governed by both statutory and common law. | Is an agency a creature of state law? |
| 17729 | In re Houston, 409 B.R. 799, 807 (D.S.C. 2009) | 13 | Under South Carolina law, subrogation arises by statute, by contract, or in equity. | Under South Carolina law, subrogation arises by statute, by contract, or in equity. | "Does subrogation arise by statute, by contract, or in equity?" |

| 17735 | Okeson v. the City of Seattle, 150 Wn. 2d 540, 551 (Wash. 2003) | 13 | Generally speaking, taxes are imposed to raise money for the public treasury. | Generally speaking, taxes are imposed to raise money for the public treasury. | Is tax a charge imposed to raise money for the public treasury? |
|---|---|---|---|---|---|
| 17787 | First American Title Ins. Co. v. Broadstreet, 260 Ga. App. 705, 707 (Ga. Ct. App. 2003) | 5 | A judgment or order issued by a court without venue is void. | A judgment or order issued by a court without venue is void. | Is a judgment of a trial court without venue void? |
| 17808 | Lewis v. Jackson Energy Co-op. Corp., 189 S.W.3d 87, 95 (Ky. 2006) | 15 | A public utility may not accomplish indirectly what it is forbidden to do directly. | A public utility may not accomplish indirectly what it is forbidden to do directly. | Can a public utility accomplish indirectly what it is disallowed to do directly? |
| 17831 | White v. Chrysler Corp., 421 Mich. 192, 204, 364 N.W.2d 619, 624 (1984) | 6 | A common-law cause of action should not be evolved solely or primarily to avoid a statutory limitation. | A common-law cause of action should not be evolved solely or primarily to avoid a statutory limitation. | How do causes of action at common law evolve? |
| 17832 | Groves v. Dep't of Corr., 295 Mich. App. 1, 811 N.W.2d 563, 566 (Mich. App. 2011) | 2 | Whether a party has standing is a question of law subject to review de novo. | Whether a party has standing is a question of law subject to review de novo. | Is a party's standing to sue be reviewed de novo? |
| 17843 | McClennen v. Commissioner of Internal Revenue, 131 F.2d 165, 167 (1st Cir. 1942) | 1 | In the absence of a controlling agreement in the partnership articles, the death of a partner dissolves the partnership. | In the absence of a controlling agreement in the partnership articles the death of a partner dissolves the partnership. | Does a partnership get dissolved upon the death of a partner? |
| 17881 | Fredericksen v. Knight Land Corp., 667 P.2d 34, 36 (Utah 1983) | 1 | The statute of limitations begins to run at the moment that a cause of action arises. | The statute of limitations begins to run at the moment that a cause of action arises. | Does a cause or right of action arise the moment action may be maintained to enforce it? |
| 17903 | Philadelphia Indem. Ins. Co. v. Pace Suburban Bus Serv., 2016 IL App (1st) 151659, ¶ 25, 67 N.E.3d 556, 565 | 11 | Subrogation is allowed to prevent injustice and unjust enrichment but will not be allowed where it would be inequitable to do so. | Subrogation is allowed to prevent injustice and unjust enrichment but will not be allowed where it would be inequitable to do so. | Will subrogation be allowed where it would be inequitable? |
| 17944 | Lexington Ins. v. Entrex Comm, 275 Neb. 702, 702 (Neb. 2008) | 6 | A contractual waiver of subrogation is enforceable against gross negligence claims. | A contractual waiver of subrogation is enforceable against gross negligence claims. | Can you contractual waive subrogation and have it enforceable against gross negligence claims? |
| 17960 | People v. Shipley, 256 Mich. App. 367, 376 (2003) | 9 | Breaking and entering is not a continuing offense, but rather is completed once the offender has entered the building. | Breaking and entering is not a continuing offense, but rather is completed once the offender has entered the building. | Is breaking and entering a continuing offense? |
| 17968 | Aragona v. Allstate Ins. Co., 41 Misc. 3d 242, 248, 969 N.Y.S.2d 863, 868 (Dist. Ct. 2013) | 15 | Absent special circumstances, a party should not be compelled to litigate. | Absent special circumstances, a party should not be compelled to litigate. | Should a party be compelled to litigate absent special circumstances? |
| 17979 | Joe Williamson Const. Co. v. Raymondville Indep. Sch. Dist., 251 S.W.3d 800, 805 (Tex. App. 2008) | 8 | A non-suit is effective as soon as the plaintiff files a motion for non-suit. | A non-suit is effective as soon as the plaintiff files a motion for non-suit. | Is a non-suit effective as soon as the plaintiff files a motion for non-suit? |
| 17980 | Okeson v. the City of Seattle, 150 Wn. 2d 540, 551 (Wash. 2003) | 13 | Generally speaking, taxes are imposed to raise money for the public treasury. | Generally speaking, taxes are imposed to raise money for the public treasury. | Are taxes imposed to raise money? |
| 17982 | S.A. MINERACAO DA TRINDADE-SAMITRI v. UTAH, 745 F.2d 190, 195 (2d Cir. 1984) | 4 | Unless excluded, claims of fraud in the inducement of a contract are arbitrable. | Unless excluded, claims of fraud in the inducement of a contract are arbitrable. | Are claims of fraud in the inducement of a contract arbitrable? |

| | | | | | |
|---|---|---|---|---|---|
| 18001 | Stroman v. Tautenhahn, 465 S.W.3d 715, 717 (Tex. App. 2015) | 1 | A nonsuit terminates a case from the moment the notice of nonsuit is filed. Tex. R. Civ. P. 162. | A nonsuit terminates a case from the moment the notice of nonsuit is filed. Tex.R. Civ. P. 162. | Does a nonsuit terminate a case from the moment the notice of nonsuit filed? |
| 18010 | Forsberg v. City of Chicago, 151 Ill. App. 3d 354, 367 (1986) | 33 | A tax is not an assessment of benefits, but instead is a means of distributing the burden of the cost of government. | A tax is not an assessment of benefits, but instead is a means of distributing the burden of the cost of government. | Is tax an assessment of benefits? |
| 18013 | In re Norwest Bank of New Mexico, N.A., 134 N.M. 516, 2003 NMCA 128, 80 P.3d 98, 525 (N.M. Ct. App. 2003) | 18 | Generally, only those theories of liability contained in a pretrial order will be considered at trial. | Generally, only those theories of liability contained in a pretrial order will be considered at trial. | What theories of liability will be considered at trial? |
| 18023 | State v. Hunt Oil Company, 49 Ala. App. 445, 453 (Civ. App. 1972) | 8 | Unavoidable inequalities which are due only to inequalities in business conditions and activities are not sufficient to render a tax statute invalid. | Unavoidable inequalities which are due only to inequalities in business conditions and activities are not sufficient to render a tax statute invalid. | Can a legislation upon the subject of taxation be declared invalid? |
| 18031 | Haugh v. Simms, 64 Mass. App. Ct. 781, 789 (Mass. App. Ct. 2005) | 6 | Whether a way is public or private is based on the use of the way, not solely on who owns it. | Whether a way is public or private is based on the use of the way, not solely on who owns it. | What determines whether a way is public or private? |
| 18038 | Hamilton Nat. Bk. v. Richardson, 42 Tenn. App. 486, 491 (1957) | 5 | A tax is not predicated on contract and cannot be discharged by reason of contractual considerations. | A tax is not predicated on contract and cannot be discharged by reason of contractual considerations. | Can a tax be discharged by reason of contractual considerations? |
| 18099 | Lexington Ins. v. Entrex Comm, 275 Neb. 702, 702 (Neb. 2008) | 6 | A contractual waiver of subrogation is enforceable against gross negligence claims. | A contractual waiver of subrogation is enforceable against gross negligence claims. | Do public policy favor enforcement of waivers of subrogation even in the face of claims of gross negligence? |
| 18115 | Lexington Ins. v. Entrex Comm, 275 Neb. 702, 702 (Neb. 2008) | 6 | A contractual waiver of subrogation is enforceable against gross negligence claims. | A contractual waiver of subrogation is enforceable against gross negligence claims. | Can a waiver of subrogation be enforced against a gross negligence claim? |
| 18134 | Propark Am. New York v. City of Hoboken, 27 N.J. Tax 565, 569 (2014) | 2 | The power to tax reposes in the State; municipalities have no inherent power to tax and can do so only pursuant to a delegation of the State's power. | The power to tax reposes in the State; municipalities have no inherent power to tax and can do so only pursuant to a delegation of the State's power. | Do municipalities have inherent power to tax? |
| 18149 | Development Corp. of Palm Beach v. WBC Construction, L.L.C., 925 So. 2d 1156, 1160 (Fla. Dist. Ct. App. 2006) | 6 | When a defendant challenges jurisdiction, the defendant files a motion to dismiss. | When a defendant challenges jurisdiction, the defendant files a motion to dismiss. | "When a defendant challenges jurisdiction, does the defendant file a motion to dismiss?" |
| 18153 | Oswald v. Hamer, 73 N.E.3d 536, 540 (Ill. App. Ct. 2016) | 3 | The legislature's power to tax is plenary; it is restricted only by the federal and state constitutions. | The legislature's power to tax is plenary; it is restricted only by the federal and state constitutions. | Is the power of state to tax plenary? |
| 18155 | Bluebeard's Castle v. Govt., Virgin Islands, 321 F.3d 394, 397 (3d Cir. 2003) | 1 | Property taxes are generally governed by state law. | Property taxes are generally governed by state law. | Are property taxes generally governed by state law? |
| 18170 | Mistich v. Com, 863 A.2d 116, 119 (Pa. Cmmw. Ct. 2004) | 1 | Generally, a case will be dismissed as moot if there exists no actual case or controversy. | Generally, a case will be dismissed as moot if there exists no actual case or controversy. | Will a case be moot and be dismissed when the controversy that existed between litigants has ceased to exist? |
| 18182 | WorldPeace v. Comm'n for Law. Discipline, 183 S.W.3d 451, 457 (Tex. App. 2005) | 5 | Pleadings should generally be construed as favorably as possible to the pleader. | Pleadings should generally be construed as favorably as possible to the pleader. | Are pleadings generally construed as favorably as possible to the pleader? |

| 18183 | Texas Dept. v. Garcia, 243 S.W.3d 759, 763 (Tex. App. 2007) | 9 | A court's lack of jurisdiction requires dismissal of a case. | A court's lack of jurisdiction requires dismissal of a case. | Does a court lack of jurisdiction require dismissal of a case? |
|---|---|---|---|---|---|
| 18191 | Hartman v. Clarke County Homemakers, 520 N.W.2d 323, 327 (Iowa Ct. App. 1994) | 11 | Workers' compensation is statutory and must be construed according to its language. | Workers' compensation is statutory and must be construed according to its language. | Should workers compensation be construed according to its language or its terms? |
| 18201 | Glisson v. City of Marion, 188 Ill. 2d 211, 224 (1999) | 10 | Lack of standing is an affirmative defense, which the defendant bears the burden to plead and prove. | Lack of standing is an affirmative defense, which the defendant bears the burden to plead and prove. | Is lack of standing an affirmative matter? |
| 18244 | Welch v. Henry, 305 U.S. 134, 144, 59 S. Ct. 121, 124, 83 L. Ed. 87 (1938) | 3 | Any classification of taxation which has reasonable relation to a legitimate end of governmental action is permissible. | Any classification of taxation is permissible which has reasonable relation to a legitimate end of governmental action. | What classification is permissible for purpose of taxation? |
| 18276 | In re First Interstate Bancorp, 729 A.2d 851, 863 (Del. Ch. 1998) | 14 | Only well-pleaded facts are operative in the context of a motion to dismiss. | Only well-pleaded facts are operative in the context of a motion to dismiss. | Are only well-pleaded facts operative in the context of a motion to dismiss? |
| 18296 | Fenlon v. Union Elec. Co., 266 S.W.3d 852, 856 (Mo. Ct. App. 2008) | 8 | Determination of a fact question is not appropriate on a motion to dismiss. | Determination of a fact question is not appropriate on a motion to dismiss. | Is a determination of a fact question not appropriate on a motion to dismiss? |
| 18305 | Minyard v. S Pipe Supply, Inc., 563 S.W.2d 332, 333 (Tex. Civ. App. 1978) | 2 | Mere clerical omissions which do not obscure meaning will not invalidate an affidavit. | Mere clerical omissions which do not obscure meaning will not invalidate an affidavit. | Do mere clerical omissions invalidate an affidavit? |
| 18322 | Leon County v. Dobson, 917 So. 2d 278, 280 (Fla. Dist. Ct. App. 2005) | 3 | When there are factual issues in dispute, an issue should not be resolved with a motion to dismiss. | When there are factual issues in dispute, an issue should not be resolved with a motion to dismiss. | "When there are factual issues in dispute, should an issue not be resolved with a motion to dismiss?" |
| 18332 | Watson Clinic, LLP v. Verzosa, 816 So. 2d 832, 834 (Fla. Dist. Ct. App. 2002) | 3 | Equitable estoppel must be applied with great caution. | Equitable estoppel must be applied with great caution. | Must equitable estoppel be applied with great caution? |
| 18368 | JB Int'l, Inc. v. Mega Flight, Inc., 840 So. 2d 1147, 1150 (Fla. Dist. Ct. App. 2003) | 5 | Prior rulings in a dismissed case have no preclusive effect. | Prior rulings in a dismissed case have no preclusive effect. | Do prior rulings in a dismissed case have no preclusive effect? |
| 18384 | Gardner v. County, 178 P.3d 893, 905 (Utah 2008) | 21 | Ordinarily, dismissal with prejudice constitutes a final judgment. | Ordinarily, dismissal with prejudice constitutes a final judgment. | "Ordinarily, does dismissal with prejudice constitute a final judgment?" |
| 18387 | Director of Ins. v. a a Midwest Rebuilders, 383 Ill. App. 3d 721, 891 N.E.2d 500, 722 (Ill. App. Ct. 2008) | 2 | An order of dismissal may be final even though it is not with prejudice. | An order of dismissal may be final even though it is not with prejudice. | Can an order of dismissal be final even though it is not with prejudie? |
| 18403 | City of Lakewood v. Pierce County, 106 Wn. App. 63, 106 Wash. App. 63, 23 P.3d 1, 74 (Wash. Ct. App. 2001) | 17 | Until both parties accept the terms of a franchise, it lacks the essentials of a contract; it is a mere proposition. | Until both parties accept the terms of a franchise, it lacks the essentials of a contract; it is a mere proposition. | Does a franchise require acceptance by both parties? |
| 18416 | Anthony, Inc. v. City of Omaha, 283 Neb. 868, 813 N.W.2d 467, 869 (Neb. 2012) | 9 | Both occupation taxes and sales taxes can be calculated upon gross receipts. | Both occupation taxes and sales taxes can be calculated upon gross receipts. | Can both occupation taxes and sales taxes be calculated upon gross receipts? |

| 18468 | Forsberg v. City of Chicago, 151 Ill. App. 3d 354, 367 (1986) | 33 | A tax is not an assessment of benefits, but instead is a means of distributing the burden of the cost of government. | A tax is not an assessment of benefits, but instead is a means of distributing the burden of the cost of government. | Is a tax an assessment of benefits? |
| 18475 | U.S. v. Holmes, 618 F. Supp. 2d 529, 538 (E.D. Va. 2009) | 4 | Domicile is distinguished from residence in that an individual may have more than one residence but only one domicile. | Domicile is distinguished from residence 6 in that an individual may have more than one residence but only one domicile. | Is domicile distinguished from residence in that an individual may have more than one residence and only one domicile? |
| 18477 | State Farm Mut. Auto. Ins. v. Colon, 880 So. 2d 782, 783 (Fla. Dist. Ct. App. 2004) | 3 | A determination of residency involves consideration of both fact and intention. | A determination of residency involves consideration of both fact and intention. | Does a determination of residency involve consideration of both fact and intention? |
| 18543 | Nabelek v. Dist. Atty. of Harris Co., 290 S.W.3d 222, 233 (Tex. App. 2006) | 21 | A dismissal with prejudice is improper if the plaintiff's failure can be remedied. | A dismissal with prejudice is improper if the plaintiff's failure can be remedied. | Is a dismissal with prejudice improper if the plaintiff's failure can be remedied? |
| 18553 | Bainbridge, Inc. v. Travelers Cas. Co. of Connecticut, 159 P.3d 748, 751 (Colo. App. 2006) | 5 | Subrogation can occur by contract or through application of the principles of equity. | Subrogation can occur by contract or through application of the principles of equity. | Can subrogation occur by contract or through application of the principles of equity? |
| 18557 | Scottsdale Ins. Co. v. Addison Ins. Co., 448 S.W.3d 818, 830 (Mo. 2014) | 21 | Subrogation is classified as either equitable, the right to which is imposed by law, or conventional, the right to which arises from a contract. | Subrogation is classified as either equitable, the right to which is imposed by law, or conventional, the right to which arises from a contract. | What are the types of subrogation rights? |
| 18574 | La. Ass'n of Self–Insured Employers v. La. Workforce Comm'n, 92 So. 3d 397, 401 (La. Ct. App. 2012) | 4 | What constitutes substantial compliance with a statute is a matter depending on the facts of each particular case. | What constitutes substantial compliance with a statute is a matter depending on the facts of each particular case. | What is substantial compliance with the Administrative Procedure Act rulemaking procedure mean? |
| 18577 | Lewis v. Jacksonville Bldg. & Loan Ass'n, 540 S.W.2d 307, 310 (Tex. 1976) | 2 | Administrative rules are ordinarily construed like statutes. | Administrative rules are ordinarily construed like statutes. | Are administrative rules construed like statutes? |
| 18585 | Horton v. Blackrock Aggregates, LLC, 213 So. 3d 429, 435 (La. Ct. App. 2017) | 2 | Liability in a negligence action is determined by employing a duty/risk analysis. | Liability in a negligence action is determined by employing a duty/risk analysis. | How is liability determined in a negligence action? |
| 18589 | People v. Elmore, 59 Cal. 4th 121, 132 (2014) | 1 | Homicide, the killing of one human being by another, is not always criminal. | Homicide, the killing of one human being by another, is not always criminal. | Is killing of a human being by another human being consider as homicide? |
| 18598 | Donner v. Blue, 187 Wash. App. 51, 347 P.3d 881, 187 Wn. App. 51, 65 (Wash. Ct. App. 2015) | 9 | Nuisance and trespass are related claims focusing on the invasion of a property interest. | Nuisance and trespass are related claims focusing on the invasion of a property interest. | How are negligent nuisance and negligent trespass related? |
| 18607 | Tarnavsky v. Tarnavsky, 666 N.W.2d 444, 446 (2003) | 3 | The critical elements of a partnership are (1) an intention to be partners, (2) co-ownership of the business, and (3) a profit motive. | The critical elements of a partnership are (1) an intention to be partners, (2) co-ownership of the business, and (3) a profit motive. | What are the essential elements of partnership? |
| 18609 | RME Mgmt., LLC v. Chapel H.O.M. Assocs., LLC, 795 S.E.2d 641, 645 (2017) | 5 | A lease is a contract which contains both property rights and contractual rights. | A lease is a contract which contains both property rights and contractual rights. | Do leases contain both property rights and contractual rights? |
| 18630 | Valencis v. Nyberg, 160 Conn. App. 777, 796, 125 A.3d 1026, 1039 (2015) | 26 | The terms cause of action and claim are not always synonymous. | The terms cause of action and claim are not always synonymous. | Are the terms cause of action and claim synonymous? |

| 18637 | Mengel v. Nashville Paper Prod, 221 F.2d 644, 647 (6th Cir. 1955) | 2 | Compulsory arbitration, without right to have the issue determined by court action, is invalid. | Compulsory arbitration, without right to have the issue determined by court action, is invalid. | Is there a common law right of arbitration? |
|---|---|---|---|---|---|
| 18652 | Almadova v. Arnold, 130 Ariz. 115, 634 P.2d 403, 115 (Ariz. Ct. App. 1981) | 1 | Venue rulings are appropriately reviewable by special action. | Venue rulings are appropriately reviewable by special action. | Are venue rulings reviewable by special action? |
| 18713 | Boudreaux v. Scott's Boat Rentals, 184 F. Supp. 3d 343, 347 (E.D. La. 2016) | 1 | Louisiana law generally allows waivers of subrogation. | Louisiana law generally allows waivers of subrogation. | Does law generally allow waivers of subrogation? |
| 18752 | Chisolm v. United States, 49 Fed. Cl. 614 617 (Fed.Cl.,2001) | 1 | Procedural matters involved in military decisions are justiciable; merits of the decision are not. | Procedural matters involved in military decisions are justiciable; merits of the decision are not. | Are the merits of a military decision justiciable? |
| 18754 | People v. Walters, 249 Cal. App. 2d 547, 551, 57 Cal. Rptr. 484, 486 (Ct. App. 1967) | 4 | The slightest entry is sufficient to constitute crime of burglary, if it be with felonious intent. | The slightest entry is sufficient to constitute the crime of burglary, if it be with felonious intent. | Is burglary a crime involving entry? |
| 18870 | Lichter v. Land Title Guarantee & Tr. Co., 150 N.E.2d 70, 75 (Ohio Ct. App. 1957) | 5 | Usages are presumed to be reasonable and the person attacking them has the burden of showing their unreasonableness. | Usages are presumed to be reasonable and the person attacking them has the burden of showing their unreasonableness | Are usages presumed to be reasonable? |
| 18910 | Jones v. Hous. Auth. of Fulton Cnty., 315 Ga. App. 15, 18 (Ga. Ct. App. 2012) | 2 | When a principal ratifies the acts of his agent, he is as responsible for those acts as if he had done the acts himself. | When a principal ratifies the acts of his agent, he is as responsible for those acts as if he had done the acts himself. | "If a principal ratifies the acts of his agent, is he responsible for those acts?" |
| 18949 | Bd. of Cty. Comm'rs of Cty. of Morgan v. Kobobel, 74 P.3d 401, 406 (Colo.App., 2002) | 8 | Ordinarily, public highways remain public unless and until vacated or abandoned by some appropriate action. | Ordinarily, public highways remain public unless and until vacated or abandoned by some appropriate action. | When do highways cease to be public? |
| 18976 | Vallera v. Vallera, 64 Cal. App. 2d 266, 272, 148 P.2d 694, 697 (1944) | 7 | Form is subordinated to substance in pleading and practice in civil cases. | Form is subordinated to substance in pleading and practice in civil cases. | "Is form subordinated to substance, in pleading?" |
| 19032 | Amalgamated Bank v. Yahoo! Inc., 132 A.3d 752, 797 (Del. Ch. 2016) | 53 | A plaintiff generally is master of its complaint and can choose what it wants to plead. | A plaintiff generally is master of its complaint and can choose what it wants to plead. | Is a plaintiff generally the master of its complaint? |
| 19062 | Sabine Oil & Gas Corp. v. HPIP Gonzales Holdings, LLC (In re Sabine Oil & Gas Corp.), 550 B.R. 59, 66 (Bankr. S.D.N.Y. 2016) | 8 | Under Texas law, a royalty interest is per se a mineral interest. | Under Texas law, a royalty interest is per se a mineral interest. | Is a royalty interest also a mineral interest under Texas law? |
| 19119 | Paton v. Prade, 524 F.2d 862, 871 (3d Cir. 1975) | 11 | Opinion testimony that would be admissible at the actual trial may be submitted in an affidavit. | Opinion testimony that would be admissible at the actual trial may be submitted in an affidavit. | Can opinions be included in an affidavit? |
| 19125 | Commonwealth v. Packer, 168 A.3d 161, 168-169 (Pa. 2017) | 5 | A killing perpetrated with malice differentiates murder from all other homicides. | A killing perpetrated with malice differentiates murder from all other homicides. | Does killing with malice differentiate murder from all other homicides? |
| 19143 | In re Kizzee-Jordan, 626 F.3d 239, 245 (5th Cir. 2010) | 5 | Texas recognizes three types of subrogation: equitable, contractual, and statutory. | Texas recognizes three types of subrogation: equitable, contractual, and statutory. | How many types of subrogation are recognized? |
| 19147 | Dolan v. O'Callaghan, 2012 Ill. App. 111505, ¶ 51 (Ill.App. 1 Dist., 2012) | 12 | The general purpose of notice is to apprise the person affected of the nature and purpose of a proceeding. | The general purpose of notice is to apprise the person affected of the nature and purpose of a proceeding. | What is the purpose of the notice provision under the law? |

| 19157 | Hughes v. New Life Dev. Corp., 387 S.W.3d 453, 474 (Tenn. 2012) | 22 | A property owner's right to own, use, and enjoy private property is a fundamental right. | A property owner's right to own, use, and enjoy private property is a fundamental right. | Is right to property a fundamental right? |
|---|---|---|---|---|---|
| 19159 | Noble Resources Pte. Ltd. v. Metinvest Holding Ltd., 622 F. Supp. 2d 77, 84 (S.D.N.Y. 2009) | 8 | Admiralty jurisdiction does not arise simply because a contract refers to a ship, or to the transportation of goods by ship. | Admiralty jurisdiction does not arise simply because a contract refers to a ship, or to the transportation of goods by ship. | When will courts consider a contract as a maritime contract? |
| 19165 | People v. Elmore, 59 Cal. 4th 121, 132 (2014) | 1 | Homicide, the killing of one human being by another, is not always criminal. | Homicide, the killing of one human being by another, is not always criminal. | Will homicide always be a criminal act? |
| 19167 | Kozlowski v. Kozlowski, 80 N.J. 378, 387 (1979) | 7 | A male, married or unmarried, can be guilty of adultery only if he has sexual relations with a married woman. | A male, married or unmarried, can be guilty of adultery only if he has sexual relations with a married woman. | Do both parties require to be married in order to constitute adultery? |
| 19170 | State v. Costich, 117 Wash. App. 491, 499 (2003) | 3 | The power of eminent domain is strictly construed against the government. | The power of eminent domain is strictly construed against the government. | Against whom should the power of eminent domain be construed? |
| 19179 | Penix v. Delong, 473 S.W.3d 609, 614 (Ky. 2015) | 11 | Reckless conduct may constitute a willful trespass. | Reckless conduct may constitute a willful trespass. | Can reckless conduct constitute a wilful trespass? |
| 19236 | Fortis Benefits v. Cantu, 234 S.W.3d 642, 648 (Tex. 2007) | 4 | The three varieties of subrogation-equitable, contractual, and statutory-represent three separate and distinct rights that, while related, are independent of each other. | The three varieties of subrogation-equitable, contractual, and statutory-represent three separate and distinct rights that, while related, are independent of each other. | Are there three varieties of subrogation? |
| 19238 | Bombardier Corp. v. Nat'l. R.R. Passenger, 333 F.3d 250, 253 (D.C. Cir. 2003) | 6 | In general, statutes authorizing appeals should be narrowly construed. | In general, statutes authorizing appeals should be narrowly construed. | Whether Statutes authorizing appeals are to be strictly construed? |
| 19259 | United States v. Ushi Shiroma, 123 F. Supp. 145, 148 (D. Haw. 1954) | 3 | Sovereignty over a territory may be transferred by an agreement of cession. | Sovereignty over a territory may be transferred by an agreement of cession. | Can sovereignty over a treaty be transferred by an agreement of cession? |
| 19260 | People v. Stevenson, 12 N.E.3d 179, 12 (Ill. App. Ct. 2014) | 4 | Motions in limine are used to bring the trial court's attention to potentially irrelevant, inadmissible, or prejudicial evidence and obtain a pretrial order from the court excluding or permitting the evidence. | Motions in limine are used to bring the trial court's attention to potentially irrelevant, inadmissible, or prejudicial evidence and obtain a pretrial order from the court excluding or permitting the evidence. | Is an unclear order in limine worse than no order at all; and even if the court concludes that the evidence is inadmissible does it has the discretion to deny the motion in limine before trial? |
| 19272 | STATE FA. MU. AUT. IS. CO. v. DU PAGE CTY., 2011 IL App (2d) 100580, ¶ 33 | 7 | Equitable subrogation is a remedial device that prevents unjust enrichment. | Equitable subrogation is a remedial device that prevents unjust enrichment. | What is the doctrine of equitable subrogation designed to prevent? |
| 19285 | Baker v. Peace, 172 S.W.3d 82, 87 (Tex. App. 2005) | 4 | Once dedicated, the owner of the land reserves no rights that are incompatible with the full enjoyment of the public. | Once dedicated, the owner of the land reserves no rights that are incompatible with the full enjoyment of the public. | What does the term dedication imply under the taking laws? |
| 19325 | Marshall v. Cliett, 97 Fla. 11, 15, 119 So. 518, 519 (1929) | 2 | Conclusions of law will not warrant relief in equity. | Conclusions of law will not warrant relief in equity. | Can conclusions of law warrant relief in equity? |

| | | | | | |
|---|---|---|---|---|---|
| 19333 | United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union v. TriMas Corp., 531 F.3d 531, 536 (7th Cir. 2008) | 9 | The scope of the arbitration clause is established by the text of the arbitration clause itself. | The scope of the arbitration clause is established by the text of the arbitration clause itself | Does the text of an arbitration clause establish the scope of the arbitration clause? |
| 19339 | Parks v. Breedlove, 241 Ga. App. 72, 73 (Ga. Ct. App. 1999) | 4 | An issue is waived if not included in the pretrial order. | An issue is waived if not included in the pretrial order. | Is an issue waived if not included in the pretrial order? |
| 19341 | Free Speech, LLC v. City of Philadelphia, 884 A.2d 966, 971 (Pa. 2005) | 3 | The primary purpose of taxes is always to raise money for the taxing authority. | The primary purpose of taxes is always to raise money for the taxing authority. | What is the primary purpose of imposing a tax? |
| 19397 | La Villarena, Inc. v. Acosta, 597 So. 2d 336, 338 (Fla. Dist. Ct. App. 1992) | 6 | Surveillance evidence is subject to discovery before trial. | Surveillance evidence is subject to discovery before trial. | Is surveillance evidence subject to discovery before trial? |
| 19398 | Vernon v. Wade Corr. Inst., 26,053 (La. App. 2 Cir. 8/19/94), 642 So. 2d 684, 688 | 2 | The theory inherent in pretrial procedure is avoidance of surprise and allowance of orderly disposition of case. | The theory inherent in pretrial procedure is the avoidance of surprise and the allowance of the orderly disposition of the case. | Does a trial court have wide discretion to provide for pre-trial orders and to ensure that the terms of the order are enforced? |
| 19399 | Vernon v. Wade Corr. Inst., 26,053 (La. App. 2 Cir. 8/19/94), 642 So. 2d 684, 688 | 2 | The theory inherent in pretrial procedure is avoidance of surprise and allowance of orderly disposition of case. | The theory inherent in pretrial procedure is the avoidance of surprise and the allowance of the orderly disposition of the case. | Do courts have wide discretion to implement pre-trial orders and insure that their terms are enforced? |
| 19424 | Trinity Universal Insurance Co. v. Bill Cox Construction, Inc., 75 S.W.3d 6, 8 (Tex. App. 2001) | 2 | Subrogation rights may be waived or altered by contract. | Subrogation rights may be waived or altered by contract. | "Can a right to subrogation be modified or extinguished by contract, waived either expressly or by implication?" |
| 19436 | Kemp v. Raudabaugh, 602 N.E.2d 389, 391 (1991) | 2 | States have wide discretion in setting taxes. | States have wide discretion in setting taxes. | Do states have wide discretion in setting taxes? |
| 19444 | Brown v. Patella, 24 Cal. App. 2d 362, 364, 75 P.2d 119, 120 (1938) | 2 | An oral assignment of a promissory note is valid. | An oral assignment of a promissory note is valid. | Are oral assignments of a promissory note valid? |
| 19456 | In re Dunn, 225 N.C. App. 43, 45 (2013) | 1 | Where the court lacks jurisdiction, dismissal is appropriate. | Where the court lacks jurisdiction, dismissal is appropriate. | "Where the court lacks jurisdiction, is dismissal appropriate?" |
| 19468 | Victory Transp. Inc. v. Comisaria Gen. de Abastecimientos y Transportes, 336 F.2d 354, 364 (2d Cir. 1964) | 14 | Implicit in agreement to arbitrate is consent to enforcement of that agreement. | Implicit in the agreement to arbitrate is consent to enforcement of that agreement. | Is consent to enforce the agreement to arbitrate implicit? |
| 19481 | In re Elamex, S.A. de C.V., 367 S.W.3d 891, 897 (Tex. App. 2012) | 10 | Whether a trial court has subject-matter jurisdiction is a question of law subject to de novo review. | Whether a trial court has subject-matter jurisdiction is a question of law subject to de novo review. | "Should a trial court consider evidence in determining a plea to the jurisdiction or a motion to dismiss, and must do so when necessary to resolve the question of subject-matter jurisdiction?" |
| 19527 | Southtrust Bank v. Donely, 925 So. 2d 934, 941 (Ala. 2005) | 10 | A negotiable instrument is a chose in action that is subject to conversion. | A negotiable instrument is a chose in action that is subject to conversion. | Is a negotiable instrument a chose in action? |

| | | | | | |
|---|---|---|---|---|---|
| 19531 | Tedder v. Deutsche Bank Nat'l Trust Co., 863 F. Supp. 2d 1020, 1031 (D. Haw. 2012) | 8 | Lenders generally owe no fiduciary duties to their borrowers. | Lenders generally owe no fiduciary duties to their borrowers. | Does a fiduciary duty exist between the borrower and the lender? |
| 19532 | In re Irving-Austin Bldg. Corporation, 100 F.2d 574, 578 (7th Cir. 1939) | 10 | Liability for debts is traceable to contractual origin. | Liability for debts is traceable to contractual origin. | Is liability for debts traceable to contractual origin? |
| 19543 | First Nat. Bank v. Carr, 572 So. 2d 1106, 1109 (La. Ct. App. 1990) | 4 | Bearer paper is transferable by mere delivery. LSA-R.S. 10:3-202(1). | Bearer paper is transferable by mere delivery. LSA-R.S. 10:3-202(1) | Is bearer paper transferable by mere delivery? |
| 19545 | Angell v. Bailey, 225 S.W.3d 834, 842 (Tex. App. 2007) | 18 | Estoppel by deed is the product of a good and valid deed. | Estoppel by deed is the product of a good and valid deed. | Is estoppel by deed the product of a good and valid deed? |
| 19580 | Adams v. State, 264 S.W.3d 424, 426 (Tex. App. 2008) | 2 | Pleadings are not required to take any particular form. | Pleadings are not required to take any particular form. | Are pleadings required to take any particular form? |
| 19584 | Cullum v. Packo, 947 So. 2d 533, 536 (Fla. Dist. Ct. App. 2006) | 5 | An agent both speaks on behalf of and binds the principal. | An agent both speaks on behalf of and binds the principal. | Can an agent speak on behalf of and bind the principal? |
| 19589 | In re Portnow, 253 A.D. 395, 398, 2 N.Y.S.2d 553, 556 (App. Div. 1938) | 1 | Thos who make affidavits are held to a strict accountability for the truth and accuracy of their contents. | Those who make affidavits are held to a strict accountability for the truth and accuracy of their contents. | Should an affidavit always state the truth? |
| 19669 | McAnarney v. Newark Fire Ins. Co., 247 N.Y. 176, 184, 159 N.E. 902, 904 (1928) | 3 | Indemnity is the basis and foundation of all insurance law. | Indemnity is the basis and foundation of all insurance law. | Is indemnity the basis and foundation of all insurance laws? |
| 19671 | Fort Bragg Unified Sch. Dist. v. Colonial Am. Cas. & Sur. Co., 194 Cal. App. 4th 891, 910 (2011) | 8 | A construction performance bond is not an insurance policy. | A construction performance bond is not an insurance policy. | Is a construction performance bond or a performance bond an insurance policy? |
| 19740 | Thomas v. Board of Sup'rs. of Panola County, 45 So. 3d 1173, 1180 (Miss. 2010) | 1 | Issues of zoning are not judicial, but rather, legislative in nature. | Issues of zoning are not judicial, but rather, legislative in nature. | Are zoning issues legislative in nature? |
| 19751 | Evans v. Utah, 21 F. Supp. 3d 1192, 1206 (D. Utah 2014) | 13 | Under Utah law, a marriage becomes valid on the date of solemnization. | Under Utah law, a marriage becomes valid on the date of solemnization. | Issue: Is a marriage valid without solemnization? |
| 19754 | In re Marriage of Lafkas, 153 Cal.App.4th 1429, 64 Cal. Rptr. 3d 100, 1432 (Cal. Ct. App. 2007) | 2 | Appellate jurisdiction cannot be created by consent, waiver, or estoppel. | Appellate jurisdiction cannot be created by consent, waiver, or estoppel. | Can appellate jurisdiction be invoked by waiver or consent of the parties? |
| 19758 | Chisolm v. United States, 49 Fed. Cl. 614 617 (Fed.Cl.,2001) | 1 | Procedural matters involved in military decisions are justiciable; merits of the decision are not. | Procedural matters involved in military decisions are justiciable; merits of the decision are not. | Is a claim of a procedural violation in the military justiciable? |
| 19770 | Cumberland Contractors, Inc. v. State Bank & Trust Co., 755 S.E.2d 511, 327 Ga. App. 121, 517 (Ga. Ct. App. 2014) | 11 | If material allegations are missing from a pleading, then the pleading fails. | If material allegations are missing from a pleading, then the pleading fails. | "If material allegations are missing from the pleading, will it fail? " |
| 19786 | Fortis Benefits v. Cantu, 234 S.W.3d 642, 648 (Tex. 2007) | 4 | The three varieties of subrogation-equitable, contractual, and statutory-represent three separate and distinct rights that, while related, are independent of each other. | The three varieties of subrogation-equitable, contractual, and statutory-represent three separate and distinct rights that, while related, are independent of each other. | What are the three varieties of subrogation? |

| 19796 | State ex rel. Indus. Comm'n of Arizona v. Wright, 202 Ariz. 255, 259 (Ct. App. 2002) | 7 | Vested future interests are assignable at law. | Vested future interests are assignable at law. | Is a vested future interest assignable? |
|---|---|---|---|---|---|
| 19831 | Statham v. Statham, 282 Ala. 322, 325 (1968) | 9 | Judicial notice is a matter of evidence and not pleading. | Judicial notice is a matter of evidence, and not pleading. | Is judicial notice a matter of pleading? |
| 19833 | State In Interest of T. J., 219 So. 3d 414, 418 (2017) | 1 | It is the content of the pleading, rather than its caption, that determines its nature. | It is the content of the pleading, rather than its caption, that determines its nature. | What determines the nature of a pleading? |
| 19889 | Com. v. White, 366 Pa. Super. 538, 531 A.2d 806, 549 (Pa. Super. Ct. 1987) | 6 | Malice is the gravamen of third-degree murder and it is the distinguishing factor between murder and manslaughter. | Malice is the gravamen of third degree murder and it is the distinguishing factor between murder and manslaughter. | Is malice the gravamen of third degree murder? |
| 19890 | James v. Powell, 154 Va. 96, 96 (1930) | 9 | To charge one with robbery is libelous and actionable per se. | To charge one with robbery is libelous and actionable per se. | Are words that falsely impute that a person is guilty of the crime of robbery actionable per se? |
| 19907 | Trinity Universal Insurance Co. v. Bill Cox Construction, Inc., 75 S.W.3d 6, 8 (Tex. App. 2001) | 2 | Subrogation rights may be waived or altered by contract. | Subrogation rights may be waived or altered by contract. | Can a party waive subrogation in a contract? |
| 19925 | Okeson v. the City of Seattle, 150 Wn. 2d 540, 551 (Wash. 2003) | 13 | Generally speaking, taxes are imposed to raise money for the public treasury. | Generally speaking, taxes are imposed to raise money for the public treasury. | What is a tax? |
| 19936 | Preferred Pictures Corp. v. Thompson, 170 Neb. 694, 695 (1960) | 5 | A general charge of fraud or misrepresentation is a conclusion and presents no issue of fact. | A general charge of fraud or misrepresentation is a conclusion and presents no issue of fact. | Does a mere charge of fraud present an issue? |
| 19954 | Cent. Sav. Bank & Tr. Co. v. Succession of Brandon, 167 So. 515, 517 (La.App. 2 Cir. 1936) | 2 | Intermediate facts need not be alleged, but ultimate facts must be alleged. | Intermediate facts need not be alleged, but ultimate facts must be alleged. | Should intermediate facts be alleged? |
| 20060 | Teal Trading & Development, LP v. Champee Springs Ranches Property Owners Ass'n, 432 S.W.3d 381, 388 (Tex. App. 2014) | 2 | Estoppel by deed binds not only the parties to the deed, but also their successors-in-interest. | Estoppel by deed binds, not only the parties to the deed, but also their successors-in-interest. | Does the recital of one deed in another bind the parties and form a muniment of title? |
| 20152 | In re Acadia Ins. Co., 279 S.W.3d 777, 779 (Tex. App. 2007) | 11 | Whether waiver has occurred is a question of fact for the trier of fact. | Whether waiver has occurred is a question of fact for the trier of fact. | Is waiver a question of fact? |
| 20154 | Churella v. Pioneer State Mutual Insurance Co., 258 Mich. App. 260, 671 N.W.2d 125, 267 (Mich. Ct. App. 2003) | 7 | Because of their ownership interest, policyholders of mutual insurance companies are both insureds and insurers. | Because of their ownership interest, policyholders of mutual insurance companies are both insureds and insurers. | Are policy holders of mutual insurance companies insured or insurers? |
| 20205 | Ludman v. Davenport Assumption High Sch., 895 N.W.2d 902, 918 (Iowa 2017) | 23 | Generally, if there is a conflict between a statute and custom, the statute controls. | Generally, if there is a conflict between a statute and custom, the statute controls. | If there is a conflict between a statute and custom which controls? |

| | | | | | |
|---|---|---|---|---|---|
| 20234 | Rhodes v. E.I. du Pont de Nemours & Co., 636 F.3d 88, 95 (4th Cir. 2011) | 5 | In order to prove a battery under West Virginia law, a plaintiff generally must demonstrate that the defendant inflicted a harmful bodily contact on the plaintiff. | In order to prove a battery under West Virginia law, a plaintiff generally must demonstrate that the defendant inflicted a harmful bodily contact on the plaintiff. | Does an actual nonconsensual invasion of the plaintiffs property need to be proved to sustain an action for trespass? |
| 20295 | In re Dir. of Prop. Valuation, 284 Kan. 592, 604 (2007) | 16 | A tariff approved by a regulatory agency conclusively establishes the legal and contractual relationship between the regulated entity and its customers. | A tariff approved by a regulatory agency conclusively establishes the legal and contractual relationship between the regulated entity and its customers. | Are tariffs terms and conditions that govern the relationship between a utility and its customers? |
| 20301 | Jones v. Crittenden, 96 S.W.3d 13, 16 (Ky. 2002) | 1 | Restrictions on constitutional rights which might have no rational basis in civilian society will survive in the military context because the unique war-making purpose of the armed forces makes such restrictions compelling. | Restrictions on constitutional rights which might have no rational basis in civilian society will survive in the military context because the unique war- making purpose of the armed forces makes such restrictions compelling. | Is the military a specialized community that is governed by laws separate from civilian society? |
| 20302 | Cook v. City of Topeka, 232 Kan. 334, 338 (Kan.,1982) | 4 | One test used to determine whether a clerk of a court is engaged in a judicial, quasi-judicial, or ministerial task is to see if a statute imposes a duty upon the clerk to act in a certain way leaving the clerk no discretion. | One test used to determine whether a clerk of a court is engaged in a judicial, quasi-judicial or ministerial task is to see if a statute imposes a duty upon the clerk to act in a certain way leaving the clerk no discretion. | Are judicial functions distinguished from ministerial acts? |
| 20310 | Virgilio v. U.S. Rubber Co., 85 R.I. 136 | 7 | Equity speaks as of the time of its decree. | Equity speaks as of the time of its decree. | Does equity speak as of the time of its decree? |
| 20316 | Boudreaux v. Scott's Boat Rentals, 184 F. Supp. 3d 343, 347 (E.D. La. 2016) | 1 | Louisiana law generally allows waivers of subrogation. | Louisiana law generally allows waivers of subrogation. | Are waivers of subrogation legal? |
| 20344 | City of Vacaville v. Pitamber, 124 Cal.App.4th 739, 21 Cal. Rptr. 3d 396, 744 (Cal. Ct. App. 2004) | 4 | Statutes imposing taxes are regulatory statutes. | Statutes imposing taxes are regulatory statutes. | Are statutes imposing taxes regulatory statutes? |
| 20347 | City of Prichard v. Moulton, 277 Ala. 231, 168 So. 2d 602, 236 (Ala. 1964) | 9 | Fraud cannot be pleaded by way of conclusion only. | Fraud cannot be pleaded by way of conclusion only. | Can fraud be pleaded by way of conclusions only? |
| 20353 | United States v. Lisinski, 728 F.2d 887, 892 (7th Cir. 1984) | 3 | Bribery and extortion are not mutually exclusive. | Bribery and extortion are not mutually exclusive. | Are bribery and extortion are mutually exclusive? |
| 20366 | United States v. Lisinski, 728 F.2d 887, 892 (7th Cir. 1984) | 3 | Bribery and extortion are not mutually exclusive. | Bribery and extortion are not mutually exclusive. | Are bribery and extortion mutually exclusive? |
| 20412 | Strickland v. Communications Cable of Chicago, 304 Ill. App. 3d 679, 686 (1999) | 8 | The right to amend a complaint is not absolute. | The right to amend a complaint is not absolute. | Is the right to amend a complaint absolute? |
| 20429 | Amer. Nat'l Bk. Tr. Co. v. Dep't of Revenue, 242 Ill. App. 3d 716, 722 (Ill. App. Ct. 1993) | 8 | All property is presumed to be subject to taxation. | All property is presumed to be subject to taxation. | Is property presumed to be subject to taxation? |

| | | | | |
|---|---|---|---|---|
| 20434 | Dellinger Septic Tank Co. v. Sherrill, 94 N.C. App. 105, 379 S.E.2d 688, 108 (N.C. Ct. App. 1989) | 2 | A party is not required to plead evidence. | A party is not required to plead evidence. | Is a party required to plead evidence? |
| 20563 | Nulter v. State Rd. Comm'n of W. Virginia, 119 W. Va. 312, 193 S.E. 549, 549 (1937) | 9 | A state highway is the property of the state, and its use is subject to state's control. | A state highway is the property of the state, and use of the highway is subject to the control of the state. | Do public highways belong to the State? |
| 20577 | Certification from the United States Dist. Court for the E. Dist. of Washington in Crossler v. Hille, 136 Wash. 2d 287, 293 (Wash.,1998) | 4 | Absent specific authority to the contrary, a board of county commissioners has no authority to interfere with an elected official's hiring decision. | Absent specific authority to the contrary, a board of county commissioners has no authority to interfere with an elected official's hiring decision. | Who is an official accountable to when he makes a poor hiring decision? |
| 20624 | Wolters v. Am. Republic Ins. Co., 149 N.H. 599 | 4 | The doctrine of subrogation has its origins in equity. | The doctrine of subrogation has its origins in equity. | Does doctrine of subrogation has its origins in equity? |
| 20628 | People v. Ebert, 401 Ill. App. 3d 958, 960 (2010) | 2 | When a motorist files a motion in limine to bar breath test results, the State must establish a sufficient foundation for admission of the evidence. | When a motorist files a motion in limine to bar breath test results, the State must establish a sufficient foundation for admission of the evidence. | Is the decision to grant or deny a motion in limine left to the discretion of the trial court? |
| 20723 | Obermiller v. Baasch, 284 Neb. 542, 558 (Neb. 2012) | 15 | A trespass can be committed on, above, or beneath the surface of the land. | A trespass can be committed on, above, or beneath the surface of the land. | Where can a trespass be committed? |
| 20735 | Moncier v. Green, 182 Va. 127, 131 (1943) | 2 | A contract can only be ratified by the person who had the power to authorize it. | A contract can only be ratified by the person who had the power to authorize it. | Who can ratify a contract? |
| 20751 | Congregation B'nai Sholom v. Martin, 382 Mich. 659, 173 N.W.2d 504, 668 (Mich. 1969) | 2 | Custom cannot change a definite contract. | Custom cannot change a definite contract. | Can custom change a definite contract? |
| 20918 | LSREF2 Cobalt (TX), LLC v. 410 Ctr. LLC, 501 S.W.3d 626, 636 (Tex. App. 2016) | 16 | A guaranty is not a negotiable instrument. | A guaranty is not a negotiable instrument. | Is guaranty a negotiable instrument? |
| 20922 | Kunkel v. Fisher, 106 Wn. App. 599, 602 (Wash. Ct. App. 2001) | 5 | Under the doctrines of both prescriptive easement and adverse possession, a use is not adverse if it is permissive. | Under the doctrines of both prescriptive easement and adverse possession, a use is not adverse if it is permissive. | What purpose does the doctrine of adverse possession serve? |
| 20954 | Consumers Energy Company v. U.S., No. 02-1894 C, 3 (Fed. Cl. Sep. 30, 2008) | 1 | To allege a taking a plaintiff must possess a valid property right affected by government action that purportedly constitutes a taking. | To allege a taking a plaintiff must possess a valid property right affected by government action that purportedly constitutes a taking. | How does a taking by direct government appropriation or physical invasion of private property effects? |
| 20964 | Gateway United Methodist Church of Gulfport, Mississippi v. Mississippi Transp. Comm'n, 147 So. 3d 900, 903 (2014) | 1 | An appellate court's standard of review regarding the admission or exclusion of evidence is abuse of discretion. | An appellate court's standard of review regarding the admission or exclusion of evidence is abuse of discretion. | Is there an abuse of discretion in granting a motion in limine if material is inadmissible and statements are prejudicial? |

| | | | | | |
|---|---|---|---|---|---|
| 20965 | Pagosa Oil and Gas v. Marrs and Smith, 323 S.W.3d 203, 216 (Tex. App. 2010) | 26 | A claim is mature when it has accrued. | A claim is mature when it has accrued. | Is a claim mature when it has accrued? |
| 21174 | Chicago, R.I. P.R. Co. v. City of Iowa City, 288 N.W.2d 536, 539 (Iowa 1980) | 2 | A franchise is not an alienable possessory interest. | A franchise is not an alienable possessory interest. | Are franchises alienable? |
| 21288 | McAleer v. McAleer, 394 S.W.3d 613, 617 (Tex. App. 2012) | 2 | The trial court has broad discretion to deny or grant a motion for continuance, and the appellate court will not reverse the trial court's decision absent a clear abuse of discretion. | The trial court has broad discretion to deny or grant a motion for continuance, and the appellate court will not reverse the trial court's decision absent a clear abuse of discretion. | "When the ground for a continuance is the withdrawal of counsel, must the movant show that the failure to be represented at trial was not due to her own fault or negligence?" |
| 21322 | Grove Isle Ass'n v. Grove Isle Assocs., LLLP, 137 So. 3d 1081, 1089 (Fla. App. 2014) | 3 | A trial court's order granting a motion to dismiss is reviewed de novo. | A trial court's order granting a motion to dismiss is reviewed de novo. | Are affirmative defenses generally matters raised in an answer and not a motion to dismiss? |
| 21328 | Treat v. Pierce, 53 Me. 71 | 1 | The unauthorized signing and publishing of a notice of foreclosure cannot, by a subsequent ratification by the mortgagee, be rendered operative from the time of its first publication. When the first publication of a notice is invalid, the foreclosure is void. | The unauthorized signing and publishing of a notice of foreclosure, cannot, by a subsequent ratification by the mortgagee, be rendered operative from the time of its first publication. When the first publication of a notice is invalid, the foreclosure is void. | How does ratification of an indorsement without authority by payee operate? |
| 21461 | Estate of Mills ex rel. Mills v. Mangosing, 44 Kan. App. 2d 399, 430 (2010) | 15 | If the evidence, when considered in the light most favorable to the prevailing party, supports the verdict, the appellate court should not intervene. | If the evidence, when considered in the light most favorable to the prevailing party, supports the verdict, the appellate court should not intervene. | "When a party alleges that an order in limine has been violated, what must the trial court determine?" |
| 21468 | Los Angeles Cty. v. Metro. Cas. Ins. Co. ofNew York, 135 Cal. App. 26 | 1 | A cause of action does not "accrue" until the party owning it is entitled to begin and prosecute action thereon. | A cause of action does not "accrue" until the party owning it is entitled to begin and prosecute an action thereon. | Does the word accrue means to become a present and enforceable demand? |
| 21518 | Harris Cty. Hous. Auth. v. Rankin, 414 S.W.3d 198, 201 (Tex. App. 2013) | 4 | Whether a trial court has subject-matter jurisdiction is a question of law and is reviewed de novo. | Whether a trial court has subject-matter jurisdiction is a question of law and is reviewed de novo. | May the absence of subject-matter jurisdiction be raised in various procedural vehicles such as a motion to dismiss for lack of jurisdiction? |
| 21552 | Steed v. Bain-Holloway, 356 P.3d 62, 65 (Okla. Civ. App. 2015) | 3 | A trial court's judgment dismissing a petition is reviewed de novo. | A trial court's judgment dismissing a petition is reviewed de novo. | Can a petition generally be dismissed only for lack of any cognizable legal theory to support the claim or for insufficient facts under a cognizable legal theory? |
| 21707 | Elsner v. E-Commerce Coffee Club, 126 So. 3d 1261, 1263 (Fla. Dist. Ct. App. 2013) | 7 | Trial court rulings on discovery issues must stand except in extraordinary cases. | Trial court rulings on discovery issues must stand except in extraordinary cases. | "Can the disclosure of personal financial information during discovery cause irreparable harm to a person forced to disclose it, in a case in which the information is not relevant?" |

| 21849 | Bradley v. Bradley, 206 N.C. App. 249 (N.C. Ct. App. 2010) | 11 | When properly on appeal, orders concerning the appointment of a receiver are reviewed under an abuse of discretion standard. | When properly on appeal, orders concerning the appointment of a receiver are reviewed under an abuse of discretion standard. | "Can a voluntary dismissal be considered a ""proceeding"" for purposes of rule allowing relief?" |
|---|---|---|---|---|---|
| 21876 | Graham v. Town of Latta, S.C., 417 S.C. 164, 183 (S.C. App. 2016) | 6 | The grant or denial of new trial motions rests within the sound discretion of the trial judge and her decision will not be disturbed on appeal unless the findings are wholly unsupported by the evidence or the conclusions reached are controlled by error of law. | The grant or denial of new trial motions rests within the sound discretion of the trial judge and her decision will not be disturbed on appeal unless the findings "are wholly unsupported by the evidence or the conclusions reached are controlled by error of law." | Is trespass to land an interference with another's present right of possession? |